# ICSID CONVENTION, REGULATIONS AND RULES

**International Centre for**
**Settlement of Investment Disputes**
1818 H Street, N.W.
Washington, D.C. 20433, U.S.A.

**ICSID/15**
**April 2006**

· Not for resale ·

## Summary Table of Contents

|  | *Page* |
|---|---|
| Introduction | 5 |
| Convention on the Settlement of Investment Disputes between States and Nationals of Other States | 7 |
| Report of the Executive Directors of the International Bank for Reconstruction and Development on the Convention on the Settlement of Investment Disputes between States and Nationals of Other States | 35 |
| Administrative and Financial Regulations | 51 |
| Rules of Procedure for the Institution of Conciliation and Arbitration Proceedings (Institution Rules) | 73 |
| Rules of Procedure for Conciliation Proceedings (Conciliation Rules) | 81 |
| Rules of Procedure for Arbitration Proceedings (Arbitration Rules) | 99 |

# Introduction

The International Centre for Settlement of Investment Disputes (ICSID or the Centre) is established by the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the ICSID Convention or the Convention). The Convention was formulated by the Executive Directors of the International Bank for Reconstruction and Development (the World Bank). On March 18, 1965, the Executive Directors submitted the Convention, with an accompanying Report, to member governments of the World Bank for their consideration of the Convention with a view to its signature and ratification. The Convention entered into force on October 14, 1966, when it had been ratified by 20 countries. As at April 10, 2006, 143 countries have ratified the Convention to become Contracting States.

In accordance with the provisions of the Convention, ICSID provides facilities for conciliation and arbitration of investment disputes between Contracting States and nationals of other Contracting States. The provisions of the ICSID Convention are complemented by Regulations and Rules adopted by the Administrative Council of the Centre pursuant to Article 6(1)(a)–(c) of the Convention (the ICSID Regulations and Rules).

The ICSID Regulations and Rules comprise Administrative and Financial Regulations; Rules of Procedure for the Institution of Conciliation and Arbitration Proceedings (Institution Rules); Rules of Procedure for Conciliation Proceedings (Conciliation Rules); and Rules of Procedure for Arbitration Proceedings (Arbitration Rules). The latest amendments of the ICSID Regulations and Rules adopted by the Administrative Council of the Centre came into effect on April 10, 2006.

Reprinted in this booklet are the ICSID Convention, the Report of the Executive Directors of the World Bank on the Convention, and the ICSID Regulations and Rules as amended effective April 10, 2006.

Convention

# CONVENTION ON THE SETTLEMENT OF INVESTMENT DISPUTES BETWEEN STATES AND NATIONALS OF OTHER STATES

# CONVENTION ON THE SETTLEMENT OF INVESTMENT DISPUTES BETWEEN STATES AND NATIONALS OF OTHER STATES

## Table of Contents

| *Chapter* | *Section* | | *Articles* | *Page* |
|---|---|---|---|---|
| | | **Preamble** | | **11** |
| **I** | | **International Centre for Settlement of Investment Disputes** | **1-24** | **12** |
| | 1 | Establishment and Organization | 1-3 | 12 |
| | 2 | The Administrative Council | 4-8 | 12 |
| | 3 | The Secretariat | 9-11 | 14 |
| | 4 | The Panels | 12-16 | 15 |
| | 5 | Financing the Centre | 17 | 16 |
| | 6 | Status, Immunities and Privileges | 18-24 | 16 |
| **II** | | **Jurisdiction of the Centre** | **25-27** | **18** |
| **III** | | **Conciliation** | **28-35** | **19** |
| | 1 | Request for Conciliation | 28 | 19 |
| | 2 | Constitution of the Conciliation Commission | 29-31 | 20 |
| | 3 | Conciliation Proceedings | 32-35 | 20 |
| **IV** | | **Arbitration** | **36-55** | **22** |
| | 1 | Request for Arbitration | 36 | 22 |
| | 2 | Constitution of the Tribunal | 37-40 | 22 |
| | 3 | Powers and Functions of the Tribunal | 41-47 | 23 |
| | 4 | The Award | 48-49 | 25 |
| | 5 | Interpretation, Revision and Annulment of the Award | 50-52 | 25 |
| | 6 | Recognition and Enforcement of the Award | 53-55 | 27 |
| **V** | | **Replacement and Disqualification of Conciliators and Arbitrators** | **56-58** | **28** |
| **VI** | | **Cost of Proceedings** | **59-61** | **29** |
| **VII** | | **Place of Proceedings** | **62-63** | **30** |

Convention

Convention

| VIII | Disputes Between Contracting States | 64 | 30 |
|------|-------------------------------------|-------|----|
| IX | Amendment | 65-66 | 30 |
| X | Final Provisions | 67-75 | 31 |
| | Signature Clause | | 33 |

# CONVENTION ON THE SETTLEMENT OF INVESTMENT DISPUTES BETWEEN STATES AND NATIONALS OF OTHER STATES

## Preamble

**The Contracting States**

**Considering** the need for international cooperation for economic development, and the role of private international investment therein;

**Bearing in mind** the possibility that from time to time disputes may arise in connection with such investment between Contracting States and nationals of other Contracting States;

**Recognizing** that while such disputes would usually be subject to national legal processes, international methods of settlement may be appropriate in certain cases;

**Attaching particular importance** to the availability of facilities for international conciliation or arbitration to which Contracting States and nationals of other Contracting States may submit such disputes if they so desire;

**Desiring** to establish such facilities under the auspices of the International Bank for Reconstruction and Development;

**Recognizing** that mutual consent by the parties to submit such disputes to conciliation or to arbitration through such facilities constitutes a binding agreement which requires in particular that due consideration be given to any recommendation of conciliators, and that any arbitral award be complied with; and

**Declaring** that no Contracting State shall by the mere fact of its ratification, acceptance or approval of this Convention and without its consent be deemed to be under any obligation to submit any particular dispute to conciliation or arbitration,

**Have agreed** as follows:

Convention

# Chapter I
# International Centre for
# Settlement of Investment Disputes

## Section 1
## Establishment and Organization

### Article 1

(1) There is hereby established the International Centre for Settlement of Investment Disputes (hereinafter called the Centre).

(2) The purpose of the Centre shall be to provide facilities for conciliation and arbitration of investment disputes between Contracting States and nationals of other Contracting States in accordance with the provisions of this Convention.

### Article 2

The seat of the Centre shall be at the principal office of the International Bank for Reconstruction and Development (hereinafter called the Bank). The seat may be moved to another place by decision of the Administrative Council adopted by a majority of two-thirds of its members.

### Article 3

The Centre shall have an Administrative Council and a Secretariat and shall maintain a Panel of Conciliators and a Panel of Arbitrators.

## Section 2
## The Administrative Council

### Article 4

(1) The Administrative Council shall be composed of one representative of each Contracting State. An alternate may act as representative in case of his principal's absence from a meeting or inability to act.

(2) In the absence of a contrary designation, each governor and alternate governor of the Bank appointed by a Contracting State shall be *ex officio* its representative and its alternate respectively.

### Article 5

The President of the Bank shall be *ex officio* Chairman of the Administrative Council (hereinafter called the Chairman) but shall

have no vote. During his absence or inability to act and during any vacancy in the office of President of the Bank, the person for the time being acting as President shall act as Chairman of the Administrative Council.

### Article 6

(1) Without prejudice to the powers and functions vested in it by other provisions of this Convention, the Administrative Council shall:

> (a) adopt the administrative and financial regulations of the Centre;
>
> (b) adopt the rules of procedure for the institution of conciliation and arbitration proceedings;
>
> (c) adopt the rules of procedure for conciliation and arbitration proceedings (hereinafter called the Conciliation Rules and the Arbitration Rules);
>
> (d) approve arrangements with the Bank for the use of the Bank's administrative facilities and services;
>
> (e) determine the conditions of service of the Secretary-General and of any Deputy Secretary-General;
>
> (f) adopt the annual budget of revenues and expenditures of the Centre;
>
> (g) approve the annual report on the operation of the Centre.

The decisions referred to in sub-paragraphs (a), (b), (c) and (f) above shall be adopted by a majority of two-thirds of the members of the Administrative Council.

(2) The Administrative Council may appoint such committees as it considers necessary.

(3) The Administrative Council shall also exercise such other powers and perform such other functions as it shall determine to be necessary for the implementation of the provisions of this Convention.

### Article 7

(1) The Administrative Council shall hold an annual meeting and such other meetings as may be determined by the Council, or convened by the Chairman, or convened by the Secretary-General at the request of not less than five members of the Council.

(2) Each member of the Administrative Council shall have one vote and, except as otherwise herein provided, all matters before the Council shall be decided by a majority of the votes cast.

(3) A quorum for any meeting of the Administrative Council shall be a majority of its members.

**Convention**

(4) The Administrative Council may establish, by a majority of two-thirds of its members, a procedure whereby the Chairman may seek a vote of the Council without convening a meeting of the Council. The vote shall be considered valid only if the majority of the members of the Council cast their votes within the time limit fixed by the said procedure.

**Article 8**

Members of the Administrative Council and the Chairman shall serve without remuneration from the Centre.

## Section 3
## The Secretariat

**Article 9**

The Secretariat shall consist of a Secretary-General, one or more Deputy Secretaries-General and staff.

**Article 10**

(1) The Secretary-General and any Deputy Secretary-General shall be elected by the Administrative Council by a majority of two-thirds of its members upon the nomination of the Chairman for a term of service not exceeding six years and shall be eligible for re-election. After consulting the members of the Administrative Council, the Chairman shall propose one or more candidates for each such office.

(2) The offices of Secretary-General and Deputy Secretary-General shall be incompatible with the exercise of any political function. Neither the Secretary-General nor any Deputy Secretary-General may hold any other employment or engage in any other occupation except with the approval of the Administrative Council.

(3) During the Secretary-General's absence or inability to act, and during any vacancy of the office of Secretary-General, the Deputy Secretary-General shall act as Secretary-General. If there shall be more than one Deputy Secretary-General, the Administrative Council shall determine in advance the order in which they shall act as Secretary-General.

**Article 11**

The Secretary-General shall be the legal representative and the principal officer of the Centre and shall be responsible for its administration, including the appointment of staff, in accordance with the provisions of this Convention and the rules adopted by the Administrative

Convention

Council. He shall perform the function of registrar and shall have the power to authenticate arbitral awards rendered pursuant to this Convention, and to certify copies thereof.

## Section 4
## The Panels

**Convention**

### Article 12

The Panel of Conciliators and the Panel of Arbitrators shall each consist of qualified persons, designated as hereinafter provided, who are willing to serve thereon.

### Article 13

(1) Each Contracting State may designate to each Panel four persons who may but need not be its nationals.

(2) The Chairman may designate ten persons to each Panel. The persons so designated to a Panel shall each have a different nationality.

### Article 14

(1) Persons designated to serve on the Panels shall be persons of high moral character and recognized competence in the fields of law, commerce, industry or finance, who may be relied upon to exercise independent judgment. Competence in the field of law shall be of particular importance in the case of persons on the Panel of Arbitrators.

(2) The Chairman, in designating persons to serve on the Panels, shall in addition pay due regard to the importance of assuring representation on the Panels of the principal legal systems of the world and of the main forms of economic activity.

### Article 15

(1) Panel members shall serve for renewable periods of six years.

(2) In case of death or resignation of a member of a Panel, the authority which designated the member shall have the right to designate another person to serve for the remainder of that member's term.

(3) Panel members shall continue in office until their successors have been designated.

### Article 16

(1) A person may serve on both Panels.

(2) If a person shall have been designated to serve on the same Panel by more than one Contracting State, or by one or more Contracting States and the Chairman, he shall be deemed to have been designated by the authority which first designated him or, if one such authority is the State of which he is a national, by that State.

(3) All designations shall be notified to the Secretary-General and shall take effect from the date on which the notification is received.

## Section 5
## Financing the Centre

### Article 17

If the expenditure of the Centre cannot be met out of charges for the use of its facilities, or out of other receipts, the excess shall be borne by Contracting States which are members of the Bank in proportion to their respective subscriptions to the capital stock of the Bank, and by Contracting States which are not members of the Bank in accordance with rules adopted by the Administrative Council.

## Section 6
## Status, Immunities and Privileges

### Article 18

The Centre shall have full international legal personality. The legal capacity of the Centre shall include the capacity:

> (a)  to contract;
>
> (b)  to acquire and dispose of movable and immovable property;
>
> (c)  to institute legal proceedings.

### Article 19

To enable the Centre to fulfil its functions, it shall enjoy in the territories of each Contracting State the immunities and privileges set forth in this Section.

### Article 20

The Centre, its property and assets shall enjoy immunity from all legal process, except when the Centre waives this immunity.

### Article 21

The Chairman, the members of the Administrative Council, persons acting as conciliators or arbitrators or members of a Committee appointed pursuant to paragraph (3) of Article 52, and the officers and employees of the Secretariat

> (a) shall enjoy immunity from legal process with respect to acts performed by them in the exercise of their functions, except when the Centre waives this immunity;

> (b) not being local nationals, shall enjoy the same immunities from immigration restrictions, alien registration requirements and national service obligations, the same facilities as regards exchange restrictions and the same treatment in respect of travelling facilities as are accorded by Contracting States to the representatives, officials and employees of comparable rank of other Contracting States.

### Article 22

The provisions of Article 21 shall apply to persons appearing in proceedings under this Convention as parties, agents, counsel, advocates, witnesses or experts; provided, however, that sub-paragraph (b) thereof shall apply only in connection with their travel to and from, and their stay at, the place where the proceedings are held.

### Article 23

(1) The archives of the Centre shall be inviolable, wherever they may be.

(2) With regard to its official communications, the Centre shall be accorded by each Contracting State treatment not less favourable than that accorded to other international organizations.

### Article 24

(1) The Centre, its assets, property and income, and its operations and transactions authorized by this Convention shall be exempt from all taxation and customs duties. The Centre shall also be exempt from liability for the collection or payment of any taxes or customs duties.

(2) Except in the case of local nationals, no tax shall be levied on or in respect of expense allowances paid by the Centre to the Chairman or members of the Administrative Council, or on or in respect of salaries, expense allowances or other emoluments paid by the Centre to officials or employees of the Secretariat.

(3) No tax shall be levied on or in respect of fees or expense allowances received by persons acting as conciliators, or arbitrators, or

**Convention**

members of a Committee appointed pursuant to paragraph (3) of Article 52, in proceedings under this Convention, if the sole jurisdictional basis for such tax is the location of the Centre or the place where such proceedings are conducted or the place where such fees or allowances are paid.

# Chapter II
## Jurisdiction of the Centre

### Article 25

(1) The jurisdiction of the Centre shall extend to any legal dispute arising directly out of an investment, between a Contracting State (or any constituent subdivision or agency of a Contracting State designated to the Centre by that State) and a national of another Contracting State, which the parties to the dispute consent in writing to submit to the Centre. When the parties have given their consent, no party may withdraw its consent unilaterally.

(2) "National of another Contracting State" means:

(a) any natural person who had the nationality of a Contracting State other than the State party to the dispute on the date on which the parties consented to submit such dispute to conciliation or arbitration as well as on the date on which the request was registered pursuant to paragraph (3) of Article 28 or paragraph (3) of Article 36, but does not include any person who on either date also had the nationality of the Contracting State party to the dispute; and

(b) any juridical person which had the nationality of a Contracting State other than the State party to the dispute on the date on which the parties consented to submit such dispute to conciliation or arbitration and any juridical person which had the nationality of the Contracting State party to the dispute on that date and which, because of foreign control, the parties have agreed should be treated as a national of another Contracting State for the purposes of this Convention.

(3) Consent by a constituent subdivision or agency of a Contracting State shall require the approval of that State unless that State notifies the Centre that no such approval is required.

(4) Any Contracting State may, at the time of ratification, acceptance or approval of this Convention or at any time thereafter, notify the Centre of the class or classes of disputes which it would or would not consider submitting to the jurisdiction of the Centre. The Secretary-General shall forthwith transmit such notification to all Contracting

Convention

States. Such notification shall not constitute the consent required by paragraph (1).

### Article 26

Consent of the parties to arbitration under this Convention shall, unless otherwise stated, be deemed consent to such arbitration to the exclusion of any other remedy. A Contracting State may require the exhaustion of local administrative or judicial remedies as a condition of its consent to arbitration under this Convention.

### Article 27

(1) No Contracting State shall give diplomatic protection, or bring an international claim, in respect of a dispute which one of its nationals and another Contracting State shall have consented to submit or shall have submitted to arbitration under this Convention, unless such other Contracting State shall have failed to abide by and comply with the award rendered in such dispute.

(2) Diplomatic protection, for the purposes of paragraph (1), shall not include informal diplomatic exchanges for the sole purpose of facilitating a settlement of the dispute.

# Chapter III
# Conciliation

## Section 1
## Request for Conciliation

### Article 28

(1) Any Contracting State or any national of a Contracting State wishing to institute conciliation proceedings shall address a request to that effect in writing to the Secretary-General who shall send a copy of the request to the other party.

(2) The request shall contain information concerning the issues in dispute, the identity of the parties and their consent to conciliation in accordance with the rules of procedure for the institution of conciliation and arbitration proceedings.

(3) The Secretary-General shall register the request unless he finds, on the basis of the information contained in the request, that the dispute is manifestly outside the jurisdiction of the Centre. He shall forthwith notify the parties of registration or refusal to register.

Convention

## Section 2
## Constitution of the Conciliation Commission

**Article 29**

Convention

(1) The Conciliation Commission (hereinafter called the Commission) shall be constituted as soon as possible after registration of a request pursuant to Article 28.

(2) (a) The Commission shall consist of a sole conciliator or any uneven number of conciliators appointed as the parties shall agree.

(b) Where the parties do not agree upon the number of conciliators and the method of their appointment, the Commission shall consist of three conciliators, one conciliator appointed by each party and the third, who shall be the president of the Commission, appointed by agreement of the parties.

**Article 30**

If the Commission shall not have been constituted within 90 days after notice of registration of the request has been dispatched by the Secretary-General in accordance with paragraph (3) of Article 28, or such other period as the parties may agree, the Chairman shall, at the request of either party and after consulting both parties as far as possible, appoint the conciliator or conciliators not yet appointed.

**Article 31**

(1) Conciliators may be appointed from outside the Panel of Conciliators, except in the case of appointments by the Chairman pursuant to Article 30.

(2) Conciliators appointed from outside the Panel of Conciliators shall possess the qualities stated in paragraph (1) of Article 14.

## Section 3
## Conciliation Proceedings

**Article 32**

(1) The Commission shall be the judge of its own competence.

(2) Any objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Commission, shall be considered by the Com-

mission which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute.

### Article 33

Any conciliation proceeding shall be conducted in accordance with the provisions of this Section and, except as the parties otherwise agree, in accordance with the Conciliation Rules in effect on the date on which the parties consented to conciliation. If any question of procedure arises which is not covered by this Section or the Conciliation Rules or any rules agreed by the parties, the Commission shall decide the question.

### Article 34

(1) It shall be the duty of the Commission to clarify the issues in dispute between the parties and to endeavour to bring about agreement between them upon mutually acceptable terms. To that end, the Commission may at any stage of the proceedings and from time to time recommend terms of settlement to the parties. The parties shall cooperate in good faith with the Commission in order to enable the Commission to carry out its functions, and shall give their most serious consideration to its recommendations.

(2) If the parties reach agreement, the Commission shall draw up a report noting the issues in dispute and recording that the parties have reached agreement. If, at any stage of the proceedings, it appears to the Commission that there is no likelihood of agreement between the parties, it shall close the proceedings and shall draw up a report noting the submission of the dispute and recording the failure of the parties to reach agreement. If one party fails to appear or participate in the proceedings, the Commission shall close the proceedings and shall draw up a report noting that party's failure to appear or participate.

### Article 35

Except as the parties to the dispute shall otherwise agree, neither party to a conciliation proceeding shall be entitled in any other proceeding, whether before arbitrators or in a court of law or otherwise, to invoke or rely on any views expressed or statements or admissions or offers of settlement made by the other party in the conciliation proceedings, or the report or any recommendations made by the Commission.

**Convention**

# Chapter IV
# Arbitration

## Section 1
## Request for Arbitration

### Article 36

(1) Any Contracting State or any national of a Contracting State wishing to institute arbitration proceedings shall address a request to that effect in writing to the Secretary-General who shall send a copy of the request to the other party.

(2) The request shall contain information concerning the issues in dispute, the identity of the parties and their consent to arbitration in accordance with the rules of procedure for the institution of conciliation and arbitration proceedings.

(3) The Secretary-General shall register the request unless he finds, on the basis of the information contained in the request, that the dispute is manifestly outside the jurisdiction of the Centre. He shall forthwith notify the parties of registration or refusal to register.

## Section 2
## Constitution of the Tribunal

### Article 37

(1) The Arbitral Tribunal (hereinafter called the Tribunal) shall be constituted as soon as possible after registration of a request pursuant to Article 36.

(2) (a) The Tribunal shall consist of a sole arbitrator or any uneven number of arbitrators appointed as the parties shall agree.

(b) Where the parties do not agree upon the number of arbitrators and the method of their appointment, the Tribunal shall consist of three arbitrators, one arbitrator appointed by each party and the third, who shall be the president of the Tribunal, appointed by agreement of the parties.

### Article 38

If the Tribunal shall not have been constituted within 90 days after notice of registration of the request has been dispatched by the Secretary-General in accordance with paragraph (3) of Article 36, or such other period as the parties may agree, the Chairman shall, at the request of either party and after consulting both parties as far as possible,

appoint the arbitrator or arbitrators not yet appointed. Arbitrators appointed by the Chairman pursuant to this Article shall not be nationals of the Contracting State party to the dispute or of the Contracting State whose national is a party to the dispute.

### Article 39

The majority of the arbitrators shall be nationals of States other than the Contracting State party to the dispute and the Contracting State whose national is a party to the dispute; provided, however, that the foregoing provisions of this Article shall not apply if the sole arbitrator or each individual member of the Tribunal has been appointed by agreement of the parties.

### Article 40

(1) Arbitrators may be appointed from outside the Panel of Arbitrators, except in the case of appointments by the Chairman pursuant to Article 38.

(2) Arbitrators appointed from outside the Panel of Arbitrators shall possess the qualities stated in paragraph (1) of Article 14.

## Section 3
## Powers and Functions of the Tribunal

### Article 41

(1) The Tribunal shall be the judge of its own competence.

(2) Any objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Tribunal, shall be considered by the Tribunal which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute.

### Article 42

(1) The Tribunal shall decide a dispute in accordance with such rules of law as may be agreed by the parties. In the absence of such agreement, the Tribunal shall apply the law of the Contracting State party to the dispute (including its rules on the conflict of laws) and such rules of international law as may be applicable.

(2) The Tribunal may not bring in a finding of *non liquet* on the ground of silence or obscurity of the law.

(3) The provisions of paragraphs (1) and (2) shall not prejudice the power of the Tribunal to decide a dispute *ex aequo et bono* if the parties so agree.

**Convention**

### Article 43

Except as the parties otherwise agree, the Tribunal may, if it deems it necessary at any stage of the proceedings,

> (a) call upon the parties to produce documents or other evidence, and
>
> (b) visit the scene connected with the dispute, and conduct such inquiries there as it may deem appropriate.

### Article 44

Any arbitration proceeding shall be conducted in accordance with the provisions of this Section and, except as the parties otherwise agree, in accordance with the Arbitration Rules in effect on the date on which the parties consented to arbitration. If any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question.

### Article 45

(1) Failure of a party to appear or to present his case shall not be deemed an admission of the other party's assertions.

(2) If a party fails to appear or to present his case at any stage of the proceedings the other party may request the Tribunal to deal with the questions submitted to it and to render an award. Before rendering an award, the Tribunal shall notify, and grant a period of grace to, the party failing to appear or to present its case, unless it is satisfied that that party does not intend to do so.

### Article 46

Except as the parties otherwise agree, the Tribunal shall, if requested by a party, determine any incidental or additional claims or counterclaims arising directly out of the subject-matter of the dispute provided that they are within the scope of the consent of the parties and are otherwise within the jurisdiction of the Centre.

### Article 47

Except as the parties otherwise agree, the Tribunal may, if it considers that the circumstances so require, recommend any provisional measures which should be taken to preserve the respective rights of either party.

**Convention**

24

## Section 4
## The Award

**Article 48**

(1)  The Tribunal shall decide questions by a majority of the votes of all its members.

(2)  The award of the Tribunal shall be in writing and shall be signed by the members of the Tribunal who voted for it.

(3)  The award shall deal with every question submitted to the Tribunal, and shall state the reasons upon which it is based.

(4)  Any member of the Tribunal may attach his individual opinion to the award, whether he dissents from the majority or not, or a statement of his dissent.

(5)  The Centre shall not publish the award without the consent of the parties.

**Article 49**

(1)  The Secretary-General shall promptly dispatch certified copies of the award to the parties. The award shall be deemed to have been rendered on the date on which the certified copies were dispatched.

(2)  The Tribunal upon the request of a party made within 45 days after the date on which the award was rendered may after notice to the other party decide any question which it had omitted to decide in the award, and shall rectify any clerical, arithmetical or similar error in the award. Its decision shall become part of the award and shall be notified to the parties in the same manner as the award. The periods of time provided for under paragraph (2) of Article 51 and paragraph (2) of Article 52 shall run from the date on which the decision was rendered.

## Section 5
## Interpretation, Revision and
## Annulment of the Award

**Article 50**

(1)  If any dispute shall arise between the parties as to the meaning or scope of an award, either party may request interpretation of the award by an application in writing addressed to the Secretary-General.

(2)  The request shall, if possible, be submitted to the Tribunal which rendered the award. If this shall not be possible, a new Tribunal shall be constituted in accordance with Section 2 of this Chapter. The

Convention

Tribunal may, if it considers that the circumstances so require, stay enforcement of the award pending its decision.

### Article 51

(1) Either party may request revision of the award by an application in writing addressed to the Secretary-General on the ground of discovery of some fact of such a nature as decisively to affect the award, provided that when the award was rendered that fact was unknown to the Tribunal and to the applicant and that the applicant's ignorance of that fact was not due to negligence.

(2) The application shall be made within 90 days after the discovery of such fact and in any event within three years after the date on which the award was rendered.

(3) The request shall, if possible, be submitted to the Tribunal which rendered the award. If this shall not be possible, a new Tribunal shall be constituted in accordance with Section 2 of this Chapter.

(4) The Tribunal may, if it considers that the circumstances so require, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Tribunal rules on such request.

### Article 52

(1) Either party may request annulment of the award by an application in writing addressed to the Secretary-General on one or more of the following grounds:

> (a) that the Tribunal was not properly constituted;
> (b) that the Tribunal has manifestly exceeded its powers;
> (c) that there was corruption on the part of a member of the Tribunal;
> (d) that there has been a serious departure from a fundamental rule of procedure; or
> (e) that the award has failed to state the reasons on which it is based.

(2) The application shall be made within 120 days after the date on which the award was rendered except that when annulment is requested on the ground of corruption such application shall be made within 120 days after discovery of the corruption and in any event within three years after the date on which the award was rendered.

(3) On receipt of the request the Chairman shall forthwith appoint from the Panel of Arbitrators an *ad hoc* Committee of three persons. None of the members of the Committee shall have been a member of

the Tribunal which rendered the award, shall be of the same nationality as any such member, shall be a national of the State party to the dispute or of the State whose national is a party to the dispute, shall have been designated to the Panel of Arbitrators by either of those States, or shall have acted as a conciliator in the same dispute. The Committee shall have the authority to annul the award or any part thereof on any of the grounds set forth in paragraph (1).

(4)  The provisions of Articles 41-45, 48, 49, 53 and 54, and of Chapters VI and VII shall apply *mutatis mutandis* to proceedings before the Committee.

(5)  The Committee may, if it considers that the circumstances so require, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request.

(6)  If the award is annulled the dispute shall, at the request of either party, be submitted to a new Tribunal constituted in accordance with Section 2 of this Chapter.

## Section 6
## Recognition and Enforcement
## of the Award

**Article 53**

(1)  The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

(2)  For the purposes of this Section, "award" shall include any decision interpreting, revising or annulling such award pursuant to Articles 50, 51 or 52.

**Article 54**

(1)  Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

Convention

(2) A party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General. Each Contracting State shall notify the Secretary-General of the designation of the competent court or other authority for this purpose and of any subsequent change in such designation.

(3) Execution of the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought.

### Article 55

Nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to immunity of that State or of any foreign State from execution.

# Chapter V
# Replacement and Disqualification
# of Conciliators and Arbitrators

### Article 56

(1) After a Commission or a Tribunal has been constituted and proceedings have begun, its composition shall remain unchanged; provided, however, that if a conciliator or an arbitrator should die, become incapacitated, or resign, the resulting vacancy shall be filled in accordance with the provisions of Section 2 of Chapter III or Section 2 of Chapter IV.

(2) A member of a Commission or Tribunal shall continue to serve in that capacity notwithstanding that he shall have ceased to be a member of the Panel.

(3) If a conciliator or arbitrator appointed by a party shall have resigned without the consent of the Commission or Tribunal of which he was a member, the Chairman shall appoint a person from the appropriate Panel to fill the resulting vacancy.

### Article 57

A party may propose to a Commission or Tribunal the disqualification of any of its members on account of any fact indicating a manifest lack of the qualities required by paragraph (1) of Article 14. A party to arbitration proceedings may, in addition, propose the disqualification

of an arbitrator on the ground that he was ineligible for appointment to the Tribunal under Section 2 of Chapter IV.

### Article 58

The decision on any proposal to disqualify a conciliator or arbitrator shall be taken by the other members of the Commission or Tribunal as the case may be, provided that where those members are equally divided, or in the case of a proposal to disqualify a sole conciliator or arbitrator, or a majority of the conciliators or arbitrators, the Chairman shall take that decision. If it is decided that the proposal is well-founded the conciliator or arbitrator to whom the decision relates shall be replaced in accordance with the provisions of Section 2 of Chapter III or Section 2 of Chapter IV.

## Chapter VI
## Cost of Proceedings

### Article 59

The charges payable by the parties for the use of the facilities of the Centre shall be determined by the Secretary-General in accordance with the regulations adopted by the Administrative Council.

### Article 60

(1) Each Commission and each Tribunal shall determine the fees and expenses of its members within limits established from time to time by the Administrative Council and after consultation with the Secretary-General.

(2) Nothing in paragraph (1) of this Article shall preclude the parties from agreeing in advance with the Commission or Tribunal concerned upon the fees and expenses of its members.

### Article 61

(1) In the case of conciliation proceedings the fees and expenses of members of the Commission as well as the charges for the use of the facilities of the Centre, shall be borne equally by the parties. Each party shall bear any other expenses it incurs in connection with the proceedings.

(2) In the case of arbitration proceedings the Tribunal shall, except as the parties otherwise agree, assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tri-

Convention

bunal and the charges for the use of the facilities of the Centre shall be paid. Such decision shall form part of the award.

# Chapter VII
# Place of Proceedings

**Article 62**

Conciliation and arbitration proceedings shall be held at the seat of the Centre except as hereinafter provided.

**Article 63**

Conciliation and arbitration proceedings may be held, if the parties so agree,

> (a) at the seat of the Permanent Court of Arbitration or of any other appropriate institution, whether private or public, with which the Centre may make arrangements for that purpose; or
> (b) at any other place approved by the Commission or Tribunal after consultation with the Secretary-General.

# Chapter VIII
# Disputes Between Contracting States

**Article 64**

Any dispute arising between Contracting States concerning the interpretation or application of this Convention which is not settled by negotiation shall be referred to the International Court of Justice by the application of any party to such dispute, unless the States concerned agree to another method of settlement.

# Chapter IX
# Amendment

**Article 65**

Any Contracting State may propose amendment of this Convention. The text of a proposed amendment shall be communicated to the Secretary-General not less than 90 days prior to the meeting of the Administrative Council at which such amendment is to be considered

and shall forthwith be transmitted by him to all the members of the Administrative Council.

**Article 66**

(1) If the Administrative Council shall so decide by a majority of two-thirds of its members, the proposed amendment shall be circulated to all Contracting States for ratification, acceptance or approval. Each amendment shall enter into force 30 days after dispatch by the depositary of this Convention of a notification to Contracting States that all Contracting States have ratified, accepted or approved the amendment.

(2) No amendment shall affect the rights and obligations under this Convention of any Contracting State or of any of its constituent subdivisions or agencies, or of any national of such State arising out of consent to the jurisdiction of the Centre given before the date of entry into force of the amendment.

# Chapter X
# Final Provisions

**Article 67**

This Convention shall be open for signature on behalf of States members of the Bank. It shall also be open for signature on behalf of any other State which is a party to the Statute of the International Court of Justice and which the Administrative Council, by a vote of two-thirds of its members, shall have invited to sign the Convention.

**Article 68**

(1) This Convention shall be subject to ratification, acceptance or approval by the signatory States in accordance with their respective constitutional procedures.

(2) This Convention shall enter into force 30 days after the date of deposit of the twentieth instrument of ratification, acceptance or approval. It shall enter into force for each State which subsequently deposits its instrument of ratification, acceptance or approval 30 days after the date of such deposit.

**Article 69**

Each Contracting State shall take such legislative or other measures as may be necessary for making the provisions of this Convention effective in its territories.

Convention

### Article 70

This Convention shall apply to all territories for whose international relations a Contracting State is responsible, except those which are excluded by such State by written notice to the depositary of this Convention either at the time of ratification, acceptance or approval or subsequently.

### Article 71

Any Contracting State may denounce this Convention by written notice to the depositary of this Convention. The denunciation shall take effect six months after receipt of such notice.

### Article 72

Notice by a Contracting State pursuant to Articles 70 or 71 shall not affect the rights or obligations under this Convention of that State or of any of its constituent subdivisions or agencies or of any national of that State arising out of consent to the jurisdiction of the Centre given by one of them before such notice was received by the depositary.

### Article 73

Instruments of ratification, acceptance or approval of this Convention and of amendments thereto shall be deposited with the Bank which shall act as the depositary of this Convention. The depositary shall transmit certified copies of this Convention to States members of the Bank and to any other State invited to sign the Convention.

### Article 74

The depositary shall register this Convention with the Secretariat of the United Nations in accordance with Article 102 of the Charter of the United Nations and the Regulations thereunder adopted by the General Assembly.

### Article 75

The depositary shall notify all signatory States of the following:

(a) signatures in accordance with Article 67;

(b) deposits of instruments of ratification, acceptance and approval in accordance with Article 73;

(c) the date on which this Convention enters into force in accordance with Article 68;

(d) exclusions from territorial application pursuant to Article 70;

(e) the date on which any amendment of this Convention enters into force in accordance with Article 66; and

(f) denunciations in accordance with Article 71.

DONE at Washington, in the English, French and Spanish languages, all three texts being equally authentic, in a single copy which shall remain deposited in the archives of the International Bank for Reconstruction and Development, which has indicated by its signature below its agreement to fulfil the functions with which it is charged under this Convention.

**Convention**

33

# REPORT OF THE EXECUTIVE DIRECTORS ON THE CONVENTION ON THE SETTLEMENT OF INVESTMENT DISPUTES BETWEEN STATES AND NATIONALS OF OTHER STATES

**Report of the Executive Directors on the Convention**

International Bank for Reconstruction and Development

March 18, 1965

# REPORT OF THE EXECUTIVE DIRECTORS
# ON THE CONVENTION

## Table of Contents

| Section | Paragraph | | Page |
|---------|-----------|---|------|
| **I–III** | 1-14 | ........................................... | 38 |
| **IV** | | **The International Centre for Settlement of Investment Disputes** | |
| | 15-18 | General ................................. | 41 |
| | 19 | Functions of the Administrative Council ..... | 42 |
| | 20 | Functions of the Secretary-General .......... | 42 |
| | 21 | The Panels .............................. | 43 |
| **V** | | **Jurisdiction of the Centre** | |
| | 22 | ........................................... | 43 |
| | 23-25 | Consent ................................ | 43 |
| | 26-27 | Nature of the Dispute ..................... | 44 |
| | 28-30 | Parties to the Dispute ..................... | 44 |
| | 31 | Notifications by Contracting States .......... | 44 |
| | 32 | Arbitration as Exclusive Remedy ............ | 45 |
| | 33 | Claims by the Investor's State .............. | 45 |
| **VI** | | **Proceedings under the Convention** | |
| | 34 | Institution of Proceedings ................. | 45 |
| | 35-36 | Constitution of Conciliation Commissions and Arbitral Tribunals .................... | 46 |
| | 37-40 | Conciliation Proceedings; Powers and Functions of Arbitral Tribunals ......... | 46 |
| | 41-43 | Recognition and Enforcement of Arbitral Awards ......................... | 47 |
| **VII** | **44** | **Place of Proceedings .......................** | **48** |
| **VIII** | **45** | **Disputes Between Contracting States .......** | **48** |
| **IX** | **46** | **Entry into Force ..........................** | **48** |

Report of the Executive Directors
on the Convention

# Report of the Executive Directors on the Convention on the Settlement of Investment Disputes between States and Nationals of Other States

## I

1.   Resolution No. 214, adopted by the Board of Governors of the International Bank for Reconstruction and Development on September 10, 1964, provides as follows:

> "RESOLVED:
>
> (a) The report of the Executive Directors on "Settlement of Investment Disputes," dated August 6, 1964, is hereby approved.
>
> (b) The Executive Directors are requested to formulate a convention establishing facilities and procedures which would be available on a voluntary basis for the settlement of investment disputes between contracting States and Nationals of other contracting States through conciliation and arbitration.
>
> (c) In formulating such a convention, the Executive Directors shall take into account the views of member governments and shall keep in mind the desirability of arriving at a text which could be accepted by the largest possible number of governments.
>
> (d) The Executive Directors shall submit the text of such a convention to member governments with such recommendations as they shall deem appropriate."

2.   The Executive Directors of the Bank, acting pursuant to the foregoing Resolution, have formulated a Convention on the Settlement of Investment Disputes between States and Nationals of Other States and, on March 18, 1965, approved the submission of the text of the Convention, as attached hereto, to member governments of the Bank. This action by the Executive Directors does not, of course, imply that the governments represented by the individual Executive Directors are committed to take action on the Convention.

3.   The action by the Executive Directors was preceded by extensive preparatory work, details of which are given in paragraphs 6-8 below. The Executive Directors are satisfied that the Convention in the form attached hereto represents a broad consensus of the views of those governments which accept the principle of establishing by inter-gov-

ernmental agreement facilities and procedures for the settlement of investment disputes which States and foreign investors wish to submit to conciliation or arbitration. They are also satisfied that the Convention constitutes a suitable framework for such facilities and procedures. Accordingly, the text of the Convention is submitted to member governments for consideration with a view to signature and ratification, acceptance or approval.

4.   The Executive Directors invite attention to the provision of Article 68(2) pursuant to which the Convention will enter into force as between the Contracting States 30 days after deposit with the Bank, the depositary of the Convention, of the twentieth instrument of ratification, acceptance or approval.

5.   The attached text of the Convention in the English, French and Spanish languages has been deposited in the archives of the Bank, as depositary, and is open for signature.

## II

6.   The question of the desirability and practicability of establishing institutional facilities, sponsored by the Bank, for the settlement through conciliation and arbitration of investment disputes between States and foreign investors was first placed before the Board of Governors of the Bank at its Seventeenth Annual Meeting, held in Washington, D.C. in September 1962. At that Meeting the Board of Governors, by Resolution No. 174, adopted on September 18, 1962, requested the Executive Directors to study the question.

7.   After a series of informal discussions on the basis of working papers prepared by the staff of the Bank, the Executive Directors decided that the Bank should convene consultative meetings of legal experts designated by member governments to consider the subject in greater detail. The consultative meetings were held on a regional basis in Addis Ababa (December 16-20, 1963), Santiago de Chile (February 3-7, 1964), Geneva (February 17-21, 1964) and Bangkok (April 27-May 1, 1964), with the administrative assistance of the United Nations Economic Commissions and the European Office of the United Nations, and took as the basis for discussion a Preliminary Draft of a Convention on Settlement of Investment Disputes between States and Nationals of Other States prepared by the staff of the Bank in the light of the discussions of the Executive Directors and the views of governments. The meetings were attended by legal experts from 86 countries.

8.   In the light of the preparatory work and of the views expressed at the consultative meetings, the Executive Directors reported to the Board of Governors at its Nineteenth Annual Meeting in Tokyo, in September 1964, that it would be desirable to establish the institutional facilities envisaged, and to do so within the framework of an inter-gov-

Report of the Executive Directors
on the Convention

ernmental agreement. The Board of Governors adopted the Resolution set forth in paragraph 1 of this Report, whereupon the Executive Directors undertook the formulation of the present Convention. With a view to arriving at a text which could be accepted by the largest possible number of governments, the Bank invited its members to designate representatives to a Legal Committee which would assist the Executive Directors in their task. This Committee met in Washington from November 23 through December 11, 1964, and the Executive Directors gratefully acknowledge the valuable advice they received from the representatives of the 61 member countries who served on the Committee.

## III

9. In submitting the attached Convention to governments, the Executive Directors are prompted by the desire to strengthen the partnership between countries in the cause of economic development. The creation of an institution designed to facilitate the settlement of disputes between States and foreign investors can be a major step toward promoting an atmosphere of mutual confidence and thus stimulating a larger flow of private international capital into those countries which wish to attract it.

10. The Executive Directors recognize that investment disputes are as a rule settled through administrative, judicial or arbitral procedures available under the laws of the country in which the investment concerned is made. However, experience shows that disputes may arise which the parties wish to settle by other methods; and investment agreements entered into in recent years show that both States and investors frequently consider that it is in their mutual interest to agree to resort to international methods of settlement.

11. The present Convention would offer international methods of settlement designed to take account of the special characteristics of the disputes covered, as well as of the parties to whom it would apply. It would provide facilities for conciliation and arbitration by specially qualified persons of independent judgment carried out according to rules known and accepted in advance by the parties concerned. In particular, it would ensure that once a government or investor had given consent to conciliation or arbitration under the auspices of the Centre, such consent could not be unilaterally withdrawn.

12. The Executive Directors believe that private capital will continue to flow to countries offering a favorable climate for attractive and sound investments, even if such countries did not become parties to the Convention or, having joined, did not make use of the facilities of the Centre. On the other hand, adherence to the Convention by a country would provide additional inducement and stimulate a larger flow of private international investment into its territories, which is the primary purpose of the Convention.

13.  While the broad objective of the Convention is to encourage a larger flow of private international investment, the provisions of the Convention maintain a careful balance between the interests of investors and those of host States. Moreover, the Convention permits the institution of proceedings by host States as well as by investors and the Executive Directors have constantly had in mind that the provisions of the Convention should be equally adapted to the requirements of both cases.

14.  The provisions of the attached Convention are for the most part self-explanatory. Brief comment on a few principal features may, however, be useful to member governments in their consideration of the Convention.

# IV
## The International Centre for Settlement of Investment Disputes

**General**

15.  The Convention establishes the International Centre for Settlement of Investment Disputes as an autonomous international institution (Articles 18-24). The purpose of the Centre is "to provide facilities for conciliation and arbitration of investment disputes * * *" (Article 1(2)). The Centre will not itself engage in conciliation or arbitration activities. This will be the task of Conciliation Commissions and Arbitral Tribunals constituted in accordance with the provisions of the Convention.

16.  As sponsor of the establishment of the institution the Bank will provide the Centre with premises for its seat (Article 2) and, pursuant to arrangements between the two institutions, with other administrative facilities and services (Article 6(d)).

17.  With respect to the financing of the Centre (Article 17), the Executive Directors have decided that the Bank should be prepared to provide the Centre with office accommodation free of charge as long as the Centre has its seat at the Bank's headquarters and to underwrite, within reasonable limits, the basic overhead expenditure of the Centre for a period of years to be determined after the Centre is established.

18.  Simplicity and economy consistent with the efficient discharge of the functions of the Centre characterize its structure. The organs of the Centre are the Administrative Council (Articles 4-8) and the Secretariat (Article 9-11). The Administrative Council will be composed of one representative of each Contracting State, serving without remuneration from the Centre. Each member of the Council casts one vote and matters before the Council are decided by a majority of the votes cast unless a different majority is required by the Convention. The President

of the Bank will serve *ex officio* as the Council's Chairman but will have no vote. The Secretariat will consist of a Secretary-General, one or more Deputy Secretaries-General and staff. In the interest of flexibility the Convention provides for the possibility of there being more than one Deputy Secretary-General, but the Executive Directors do not now foresee a need for more than one or two full time high officials of the Centre. Article 10, which requires that the Secretary-General and any Deputy Secretary-General be elected by the Administrative Council by a majority of two-thirds of its members, on the nomination of the Chairman, limits their terms of office to a period not exceeding six years and permits their re-election. The Executive Directors believe that the initial election, which will take place shortly after the Convention will have come into force, should be for a short term so as not to deprive the States which ratify the Convention after its entry into force of the possibility of participating in the selection of the high officials of the Centre. Article 10 also limits the extent to which these officials may engage in activities other than their official functions.

**Functions of the Administrative Council**

19. The principal functions of the Administrative Council are the election of the Secretary-General and any Deputy Secretary-General, the adoption of the budget of the Centre and the adoption of administrative and financial regulations, rules governing the institution of proceedings and rules of procedure for conciliation and arbitration proceedings. Action on all these matters requires a majority of two-thirds of the members of the Council.

**Functions of the Secretary-General**

20. The Convention requires the Secretary-General to perform a variety of administrative functions as legal representative, registrar and principal officer of the Centre (Articles 7(1), 11, 16(3), 25(4), 28, 36, 49(1), 50(1), 51(1), 52(1), 54(2), 59, 60(1), 63(b) and 65). In addition, the Secretary-General is given the power to refuse registration of a request for conciliation proceedings or arbitration proceedings, and thereby to prevent the institution of such proceedings, if on the basis of the information furnished by the applicant he finds that the dispute is *manifestly* outside the jurisdiction of the Centre (Article 28(3) and 36(3)). The Secretary-General is given this limited power to "screen" requests for conciliation or arbitration proceedings with a view to avoiding the embarrassment to a party (particularly a State) which might result from the institution of proceedings against it in a dispute which it had not consented to submit to the Centre, as well as the possibility that the machinery of the Centre would be set in motion in cases which for other reasons were obviously outside the jurisdiction of the

Centre e.g., because either the applicant or the other party was not eligible to be a party in proceedings under the Convention.

### The Panels

21.   Article 3 requires the Centre to maintain a Panel of Conciliators and a Panel of Arbitrators, while Articles 12-16 outline the manner and terms of designation of Panel members. In particular, Article 14(1) seeks to ensure that Panel members will possess a high degree of competence and be capable of exercising independent judgment. In keeping with the essentially flexible character of the proceedings, the Convention permits the parties to appoint conciliators and arbitrators from outside the Panels but requires (Articles 31(2) and 40(2)) that such appointees possess the qualities stated in Article 14(1). The Chairman, when called upon to appoint a conciliator or arbitrator pursuant to Article 30 or 38, is restricted in his choice to Panel members.

## V
## Jurisdiction of the Centre

22.   The term "jurisdiction of the Centre" is used in the Convention as a convenient expression to mean the limits within which the provisions of the Convention will apply and the facilities of the Centre will be available for conciliation and arbitration proceedings. The jurisdiction of the Centre is dealt with in Chapter II of the Convention (Articles 25-27).

### Consent

23.   Consent of the parties is the cornerstone of the jurisdiction of the Centre. Consent to jurisdiction must be in writing and once given cannot be withdrawn unilaterally (Article 25(1)).

24.   Consent of the parties must exist when the Centre is seized (Articles 28(3) and 36(3)) but the Convention does not otherwise specify the time at which consent should be given. Consent may be given, for example, in a clause included in an investment agreement, providing for the submission to the Centre of future disputes arising out of that agreement, or in a *compromis* regarding a dispute which has already arisen. Nor does the Convention require that the consent of both parties be expressed in a single instrument. Thus, a host State might in its investment promotion legislation offer to submit disputes arising out of certain classes of investments to the jurisdiction of the Centre, and the investor might give his consent by accepting the offer in writing.

25.   While consent of the parties is an essential prerequisite for the jurisdiction of the Centre, consent alone will not suffice to bring a dispute within its jurisdiction. In keeping with the purpose of the Con-

vention, the jurisdiction of the Centre is further limited by reference to the nature of the dispute and the parties thereto.

### Nature of the Dispute

26.  Article 25(1) requires that the dispute must be a "legal dispute arising directly out of an investment." The expression "legal dispute" has been used to make clear that while conflicts of rights are within the jurisdiction of the Centre, mere conflicts of interests are not. The dispute must concern the existence or scope of a legal right or obligation, or the nature or extent of the reparation to be made for breach of a legal obligation.

27.  No attempt was made to define the term "investment" given the essential requirement of consent by the parties, and the mechanism through which Contracting States can make known in advance, if they so desire, the classes of disputes which they would or would not consider submitting to the Centre (Article 25(4)).

### Parties to the Dispute

28.  For a dispute to be within the jurisdiction of the Centre one of the parties must be a Contracting State (or a constituent subdivision or agency of a Contracting State) and the other party must be a "national of another Contracting State." The latter term as defined in paragraph (2) of Article 25 covers both natural persons and juridical persons.

29.  It should be noted that under clause (a) of Article 25(2) a natural person who was a national of the State party to the dispute would not be eligible to be a party in proceedings under the auspices of the Centre, even if at the same time he had the nationality of another State. This ineligibility is absolute and cannot be cured even if the State party to the dispute had given its consent.

30.  Clause (b) of Article 25(2), which deals with juridical persons, is more flexible. A juridical person which had the nationality of the State party to the dispute would be eligible to be a party to proceedings under the auspices of the Centre if that State had agreed to treat it as a national of another Contracting State because of foreign control.

### Notifications by Contracting States

31. While no conciliation or arbitration proceedings could be brought against a Contracting State without its consent and while no Contracting State is under any obligation to give its consent to such proceedings, it was nevertheless felt that adherence to the Convention might be interpreted as holding out an expectation that Contracting States would give favorable consideration to requests by investors for the submission of a dispute to the Centre. It was pointed out in that connection that there might be classes of investment disputes which

governments would consider unsuitable for submission to the Centre or which, under their own law, they were not permitted to submit to the Centre. In order to avoid any risk of misunderstanding on this score, Article 25(4) expressly permits Contracting States to make known to the Centre in advance, if they so desire, the classes of disputes which they would or would not consider submitting to the Centre. The provision makes clear that a statement by a Contracting State that it would consider submitting a certain class of dispute to the Centre would serve for purposes of information only and would not constitute the consent required to give the Centre jurisdiction. Of course, a statement excluding certain classes of disputes from consideration would not constitute a reservation to the Convention.

### Arbitration as Exclusive Remedy

32.  It may be presumed that when a State and an investor agree to have recourse to arbitration, and do not reserve the right to have recourse to other remedies or require the prior exhaustion of other remedies, the intention of the parties is to have recourse to arbitration to the exclusion of any other remedy. This rule of interpretation is embodied in the first sentence of Article 26. In order to make clear that it was not intended thereby to modify the rules of international law regarding the exhaustion of local remedies, the second sentence explicitly recognizes the right of a State to require the prior exhaustion of local remedies.

### Claims by the Investor's State

33.  When a host State consents to the submission of a dispute with an investor to the Centre, thereby giving the investor direct access to an international jurisdiction, the investor should not be in a position to ask his State to espouse his case and that State should not be permitted to do so. Accordingly, Article 27 expressly prohibits a Contracting State from giving diplomatic protection, or bringing an international claim, in respect of a dispute which one of its nationals and another Contracting State have consented to submit, or have submitted, to arbitration under the Convention, unless the State party to the dispute fails to honor the award rendered in that dispute.

## VI
## Proceedings under the Convention

### Institution of Proceedings

34. Proceedings are instituted by means of a request addressed to the Secretary-General (Articles 28 and 36). After registration of the request the Conciliation Commission or Arbitral Tribunal, as the case

may be, will be constituted. Reference is made to paragraph 20 above on the power of the Secretary-General to refuse registration.

### Constitution of Conciliation Commissions and Arbitral Tribunals

35. Although the Convention leaves the parties a large measure of freedom as regards the constitution of Commissions and Tribunals, it assures that a lack of agreement between the parties on these matters or the unwillingness of a party to cooperate will not frustrate proceedings (Articles 29-30 and 37-38, respectively).

36. Mention has already been made of the fact that the parties are free to appoint conciliators and arbitrators from outside the Panels (see paragraph 21 above). While the Convention does not restrict the appointment of conciliators with reference to nationality, Article 39 lays down the rule that the majority of the members of an Arbitral Tribunal should not be nationals of the State party to the dispute or of the State whose national is a party to the dispute. This rule is likely to have the effect of excluding persons having these nationalities from serving on a Tribunal composed of not more than three members. However, the rule will not apply where each and every arbitrator on the Tribunal has been appointed by agreement of the parties.

### Conciliation Proceedings; Powers and Functions of Arbitral Tribunals

37. In general, the provisions of Articles 32-35 dealing with conciliation proceedings and of Articles 41-49, dealing with the powers and functions of Arbitral Tribunals and awards rendered by such Tribunals, are self-explanatory. The differences between the two sets of provisions reflect the basic distinction between the process of conciliation which seeks to bring the parties to agreement and that of arbitration which aims at a binding determination of the dispute by the Tribunal.

38. Article 41 reiterates the well-established principle that international tribunals are to be the judges of their own competence and Article 32 applies the same principle to Conciliation Commissions. It is to be noted in this connection that the power of the Secretary-General to refuse registration of a request for conciliation or arbitration (see paragraph 20 above) is so narrowly defined as not to encroach on the prerogative of Commissions and Tribunals to determine their own competence and, on the other hand, that registration of a request by the Secretary-General does not, of course, preclude a Commission or Tribunal from finding that the dispute is outside the jurisdiction of the Centre.

39. In keeping with the consensual character of proceedings under the Convention, the parties to conciliation or arbitration proceedings

Report of the Executive Directors on the Convention

may agree on the rules of procedure which will apply in those proceedings. However, if or to the extent that they have not so agreed the Conciliation Rules and Arbitration Rules adopted by the Administrative Council will apply (Articles 33 and 44).

40.  Under the Convention an Arbitral Tribunal is required to apply the law agreed by the parties. Failing such agreement, the Tribunal must apply the law of the State party to the dispute (unless that law calls for the application of some other law), as well as such rules of international law as may be applicable. The term "international law" as used in this context should be understood in the sense given to it by Article 38(1) of the Statute of the International Court of Justice, allowance being made for the fact that Article 38 was designed to apply to inter-State disputes.[1]

### Recognition and Enforcement of Arbitral Awards

41.  Article 53 declares that the parties are bound by the award and that it shall not be subject to appeal or to any other remedy except those provided for in the Convention. The remedies provided for are revision (Article 51) and annulment (Article 52). In addition, a party may ask a Tribunal which omitted to decide any question submitted to it, to supplement its award (Article 49(2)) and may request interpretation of the award (Article 50).

42.  Subject to any stay of enforcement in connection with any of the above proceedings in accordance with the provisions of the Convention, the parties are obliged to abide by and comply with the award and Article 54 requires every Contracting State to recognize the award as binding and to enforce the pecuniary obligations imposed by the award as if it were a final decision of a domestic court. Because of the different legal techniques followed in common law and civil law jurisdictions and the different judicial systems found in unitary and federal or other non-unitary States, Article 54 does not prescribe any particular method to be followed in its domestic implementation, but requires each Contracting State to meet the requirements of the Article in accordance with its own legal system.

43.  The doctrine of sovereign immunity may prevent the forced execution in a State of judgments obtained against foreign States or

<div style="float:right">

**Report of the Executive Directors
on the Convention**

</div>

---

[1] Article 38(1) of the Statute of the International Court of Justice reads as follows:
  "1.  The Court, whose function it is to decide in accordance with international law such disputes as are submitted to it, shall apply:
    a.  international conventions, whether general or particular, establishing rules expressly recognized by the contesting states;
    b.  international custom, as evidence of a general practice accepted as law;
    c.  the general principles of law recognized by civilized nations;
    d.  subject to the provisions of Article 59, judicial decisions and the teachings of the most highly qualified publicists of the various nations, as subsidiary means for the determination of rules of law."

against the State in which execution is sought. Article 54 requires Contracting States to equate an award rendered pursuant to the Convention with a final judgment of its own courts. It does not require them to go beyond that and to undertake forced execution of awards rendered pursuant to the Convention in cases in which final judgments could not be executed. In order to leave no doubt on this point Article 55 provides that nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to immunity of that State or of any foreign State from execution.

## VII
## Place of Proceedings

44.  In dealing with proceedings away from the Centre, Article 63 provides that proceedings may be held, if the parties so agree, at the seat of the Permanent Court of Arbitration or of any other appropriate institution with which the Centre may enter into arrangements for that purpose. These arrangements are likely to vary with the type of institution and to range from merely making premises available for the proceedings to the provision of complete secretariat services.

## VIII
## Disputes Between Contracting States

45.  Article 64 confers on the International Court of Justice jurisdiction over disputes between Contracting States regarding the interpretation or application of the Convention which are not settled by negotiation and which the parties do not agree to settle by other methods. While the provision is couched in general terms, it must be read in the context of the Convention as a whole. Specifically, the provision does not confer jurisdiction on the Court to review the decision of a Conciliation Commission or Arbitral Tribunal as to its competence with respect to any dispute before it. Nor does it empower a State to institute proceedings before the Court in respect of a dispute which one of its nationals and another Contracting State have consented to submit or have submitted to arbitration, since such proceedings would contravene the provisions of Article 27, unless the other Contracting State had failed to abide by and comply with the award rendered in that dispute.

## IX
## Entry into Force

46.  The Convention is open for signature on behalf of States members of the Bank. It will also be open for signature on behalf of any other State which is a party to the Statute of the International Court of Justice and which the Administrative Council, by a vote of two-thirds of its

members, shall have invited to sign. No time limit has been prescribed for signature. Signature is required both of States joining before the Convention enters into force and those joining thereafter (Article 67). The Convention is subject to ratification, acceptance or approval by the signatory States in accordance with their constitutional procedures (Article 68). As already stated, the Convention will enter into force upon the deposit of the twentieth instrument of ratification, acceptance or approval.

**Report of the Executive Directors on the Convention**

# ADMINISTRATIVE AND FINANCIAL REGULATIONS

Administrative and
Financial Regulations

# ADMINISTRATIVE AND FINANCIAL REGULATIONS

## Table of Contents

| *Chapter* | *Regulation* | | *Page* |
|---|---|---|---|
| **I** | | **Procedures of the Administrative Council** | |
| | 1 | Date and Place of the Annual Meeting ....... | 55 |
| | 2 | Notice of Meetings ...................... | 55 |
| | 3 | Agenda for Meetings ..................... | 56 |
| | 4 | Presiding Officer ........................ | 56 |
| | 5 | Secretary of the Council .................. | 56 |
| | 6 | Attendance at Meetings .................. | 57 |
| | 7 | Voting ................................ | 57 |
| **II** | | **The Secretariat** | |
| | 8 | Election of the Secretary-General and His Deputies ......................... | 58 |
| | 9 | Acting Secretary-General .................. | 58 |
| | 10 | Appointment of Staff Members ............. | 59 |
| | 11 | Conditions of Employment ................ | 59 |
| | 12 | Authority of the Secretary-General .......... | 59 |
| | 13 | Incompatibility of Functions ............... | 59 |
| **III** | | **Financial Provisions** | |
| | 14 | Direct Costs of Individual Proceedings ....... | 60 |
| | 15 | Special Services to Parties ................. | 62 |
| | 16 | Fee for Lodging Requests .................. | 62 |
| | 17 | The Budget ............................ | 63 |
| | 18 | Assessment of Contributions ............... | 63 |
| | 19 | Audits ................................ | 64 |
| **IV** | | **General Functions of the Secretariat** | |
| | 20 | List of Contracting States .................. | 64 |
| | 21 | Establishment of Panels ................... | 65 |
| | 22 | Publication ............................ | 66 |
| **V** | | **Functions with Respect to Individual Proceedings** | |
| | 23 | The Registers .......................... | 66 |
| | 24 | Means of Communication ................. | 67 |
| | 25 | Secretary .............................. | 67 |
| | 26 | Place of Proceedings ..................... | 68 |

|      | 27   | Other Assistance ........................... | 68 |
|      | 28   | Depositary Functions ...................... | 68 |

| **VI**  |      | **Special Provisions Relating to Proceedings** |    |
|      | 29   | Time Limits ............................... | 69 |
|      | 30   | Supporting Documentation ................. | 69 |

| **VII** |      | **Immunities and Privileges** |    |
|      | 31   | Certificate of Official Travel ................ | 70 |
|      | 32   | Waiver of Immunities ...................... | 70 |

| **VIII** |     | **Miscellaneous** |    |
|      | 33   | Communications with Contracting States .... | 71 |
|      | 34   | Official Languages ......................... | 71 |

**Administrative and
Financial Regulations**

*The Administrative and Financial Regulations of ICSID were adopted by the Administrative Council of the Centre pursuant to Article 6(1)(a) of the ICSID Convention.*

*The Regulations of particular interest to parties to proceedings under the Convention are: 14-16, 22-31 and 34(1). They are intended to be complementary both to the Convention and to the Institution, Conciliation and Arbitration Rules adopted pursuant to Article 6(1)(b) and (c) of the Convention.*

# Administrative and Financial Regulations

## Chapter I
## Procedures of the
## Administrative Council

### Regulation 1
### Date and Place of the Annual Meeting

(1) The Annual Meeting of the Administrative Council shall take place in conjunction with the Annual Meeting of the Board of Governors of the International Bank for Reconstruction and Development (hereinafter referred to as the "Bank"), unless the Council specifies otherwise.

(2) The Secretary-General shall coordinate the arrangements for the Annual Meeting of the Administrative Council with the appropriate officers of the Bank.

### Regulation 2
### Notice of Meetings

(1) The Secretary-General shall, by any rapid means of communication, give each member notice of the time and place of each meeting of the Administrative Council, which notice shall be dispatched not less than 42 days prior to the date set for such meeting, except that in urgent cases such notice shall be sufficient if dispatched by telegram or cable not less than 10 days prior to the date set for such meeting.

(2) Any meeting of the Administrative Council at which no quorum is present may be adjourned from time to time by a majority of the members present and notice of the adjourned meeting need not be given.

## Regulation 3
## Agenda for Meetings

(1) Under the direction of the Chairman, the Secretary-General shall prepare a brief agenda for each meeting of the Administrative Council and shall transmit such agenda to each member with the notice of such meeting.

(2) Additional subjects may be placed on the agenda for any meeting of the Administrative Council by any member provided that he shall give notice thereof to the Secretary-General not less than seven days prior to the date set for such meeting. In special circumstances the Chairman, or the Secretary-General after consulting the Chairman, may at any time place additional subjects on the agenda for any meeting of the Council. The Secretary-General shall as promptly as possible give each member notice of the addition of any subject to the agenda for any meeting.

(3) The Administrative Council may at any time authorize any subject to be placed on the agenda for any meeting even though the notice required by this Regulation shall not have been given.

## Regulation 4
## Presiding Officer

(1) The Chairman shall be the Presiding Officer at meetings of the Administrative Council.

(2) If the Chairman is unable to preside over all or part of a meeting of the Council, one of the members of the Administrative Council shall act as temporary Presiding Officer. This member shall be the Representative, Alternate Representative or temporary Alternate Representative of that Contracting State represented at the meeting that stands highest on a list of Contracting States arranged chronologically according to the date of the deposit of instruments of ratification, acceptance or approval of the Convention, starting with the State following the one that had on the last previous occasion provided a temporary Presiding Officer. A temporary Presiding Officer may cast the vote of the State he represents, or he may assign another member of his delegation to do so.

## Regulation 5
## Secretary of the Council

(1) The Secretary-General shall serve as Secretary of the Administrative Council.

(2) Except as otherwise specifically directed by the Administrative Council, the Secretary-General, in consultation with the Chairman,

Administrative and
Financial Regulations

shall have charge of all arrangements for the holding of meetings of the Council.

(3) The Secretary-General shall keep a summary record of the proceedings of the Administrative Council, copies of which shall be provided to all members.

(4) The Secretary-General shall present to each Annual Meeting of the Administrative Council, for its approval pursuant to Article 6(1)(g) of the Convention, the annual report on the operation of the Centre.

## Regulation 6
## Attendance at Meetings

(1) The Secretary-General and the Deputy Secretaries-General may attend all meetings of the Administrative Council.

(2) The Secretary-General, in consultation with the Chairman, may invite observers to attend any meeting of the Administrative Council.

## Regulation 7
## Voting

(1) Except as otherwise specifically provided in the Convention, all decisions of the Administrative Council shall be taken by a majority of the votes cast. At any meeting the Presiding Officer may ascertain the sense of the meeting in lieu of a formal vote but he shall require a formal vote upon the request of any member. Whenever a formal vote is required the written text of the motion shall be distributed to the members.

(2) No member of the Administrative Council may vote by proxy or by any other method than in person, but the representative of a Contracting State may designate a temporary alternate to vote for him at any meeting at which the regular alternate is not present.

(3) Whenever, in the judgment of the Chairman, any action must be taken by the Administrative Council which should not be postponed until the next Annual Meeting of the Council and does not warrant the calling of a special meeting, the Secretary-General shall transmit to each member by any rapid means of communication a motion embodying the proposed action with a request for a vote by the members of the Council. Votes shall be cast during a period ending 21 days after such dispatch, unless a longer period is approved by the Chairman. At the expiration of the established period, the Secretary-General shall record the results and notify all members of the Council. If the replies received do not include those of a majority of the members, the motion shall be considered lost.

Administrative and
Financial Regulations

(4) Whenever at a meeting of the Administrative Council at which all Contracting States are not represented, the votes necessary to adopt a proposed decision by a majority of two-thirds of the members of the Council are not obtained, the Council with the concurrence of the Chairman may decide that the votes of those members of the Council represented at the meeting shall be registered and the votes of the absent members shall be solicited in accordance with paragraph (3) of this Regulation. Votes registered at the meeting may be changed by the member before the expiration of the voting period established pursuant to that paragraph.

# Chapter II
# The Secretariat

## Regulation 8
## Election of the Secretary-General
## and His Deputies

In proposing to the Administrative Council one or more candidates for the office of Secretary-General or any Deputy Secretary-General, the Chairman shall at the same time make proposals with respect to:

    (a) the length of the term of service;

    (b) approval for any of the candidates to hold, if elected, any other employment or to engage in any other occupation;

    (c) the conditions of service, taking into account any proposals made pursuant to paragraph (b).

## Regulation 9
## Acting Secretary-General

(1) If, on the election of a Deputy Secretary-General, there should at any time be more than one Deputy Secretary-General, the Chairman shall immediately after such election propose to the Administrative Council the order in which these Deputies shall act as Secretary-General pursuant to Article 10(3) of the Convention. In the absence of such a decision the order shall be that of seniority in the post of Deputy.

(2) The Secretary-General shall designate the member of the staff of the Centre who shall act for him during his absence or inability to act, if all Deputy Secretaries-General should also be absent or unable to act or if the office of Deputy should be vacant. If there should be a simultaneous vacancy in the offices of Secretary-General and Deputy Secretary-General, the Chairman shall designate the member of the staff who shall act for the Secretary-General.

## Regulation 10
## Appointment of Staff Members

The Secretary-General shall appoint the members of the staff of the Centre. Appointments may be made directly or by secondment.

## Regulation 11
## Conditions of Employment

(1) The conditions of service of the members of the staff of the Centre shall be the same as those of the staff of the Bank.

(2) The Secretary-General shall make arrangements with the Bank, within the framework of the general administrative arrangements approved by the Administrative Council pursuant to Article 6(1)(d) of the Convention, for the participation of members of the Secretariat in the Staff Retirement Plan of the Bank as well as in other facilities and contractual arrangements established for the benefit of the staff of the Bank.

## Regulation 12
## Authority of the Secretary-General

(1) Deputy Secretaries-General and the members of the staff, whether on direct appointment or on secondment, shall act solely under the direction of the Secretary-General.

(2) The Secretary-General shall have authority to dismiss members of the Secretariat and to impose disciplinary measures. In the case of Deputy Secretaries-General dismissal may only be imposed with the concurrence of the Administrative Council.

## Regulation 13
## Incompatibility of Functions

The Secretary-General, the Deputy Secretaries-General and the members of the staff may not serve on the Panel of Conciliators or of Arbitrators, or as members of any Commission or Tribunal.

**Administrative and Financial Regulations**

# Chapter III
## Financial Provisions

### Regulation 14
### Direct Costs of Individual Proceedings

(1) Unless otherwise agreed pursuant to Article 60(2) of the Convention, and in addition to receiving reimbursement for any direct expenses reasonably incurred, each member of a Commission, a Tribunal or an *ad hoc* Committee appointed from the Panel of Arbitrators pursuant to Article 52(3) of the Convention (hereinafter referred to as "Committee") shall receive:

> (a) a fee for each day on which he participates in meetings of the body of which he is a member;
>
> (b) a fee for the equivalent of each eight-hour day of other work performed in connection with the proceedings;
>
> (c) in lieu of reimbursement of subsistence expenses when away from his normal place of residence, a *per diem* allowance based on the allowance established from time to time for the Executive Directors of the Bank;
>
> (d) travel expenses in connection with meetings of the body of which he is a member based on the norms established from time to time for the Executive Directors of the Bank.

The amounts of the fees referred to in paragraphs (a) and (b) above shall be determined from time to time by the Secretary-General, with the approval of the Chairman. Any request for a higher amount shall be made through the Secretary-General.

(2) All payments, including reimbursement of expenses, to the following shall in all cases be made by the Centre and not by or through either party to the proceeding:

> (a) members of Commissions, Tribunals and Committees;
>
> (b) witnesses and experts summoned at the initiative of a Commission, Tribunal or Committee, and not of one of the parties;
>
> (c) members of the Secretariat of the Centre, including persons (such as interpreters, translators, reporters or secretaries) especially engaged by the Centre for a particular proceeding;
>
> (d) the host of any proceeding held away from the seat of the Centre pursuant to Article 63 of the Convention.

(3) In order to enable the Centre to make the payments provided for in paragraph (2), as well as to incur other direct expenses in connection with a proceeding (other than expenses covered by Regulation 15):

    (a) the parties shall make advance payments to the Centre as follows:

        (i) initially as soon as a Commission or Tribunal has been constituted, the Secretary-General shall, after consultation with the President of the body in question and, as far as possible, the parties, estimate the expenses that will be incurred by the Centre during the next three to six months and request the parties to make an advance payment of this amount;

        (ii) if at any time the Secretary-General determines, after consultation with the President of the body in question and as far as possible the parties, that the advances made by the parties will not cover a revised estimate of expenses for the period or any subsequent period, he shall request the parties to make supplementary advance payments.

    (b) the Centre shall not be required to provide any service in connection with a proceeding or to pay the fees, allowances or expenses of the members of any Commission, Tribunal or Committee, unless sufficient advance payments shall previously have been made;

    (c) if the initial advance payments are insufficient to cover estimated future expenses, prior to requesting the parties to make additional advance payments, the Secretary-General shall ascertain the actual expenses incurred and commitments entered into by the Centre with regard to each proceeding and shall appropriately charge or credit the parties;

    (d) in connection with every conciliation proceeding, and in connection with every arbitration proceeding unless a different division is provided for in the Arbitration Rules or is decided by the parties or the Tribunal, each party shall pay one half of each advance or supplemental charge, without prejudice to the final decision on the payment of the cost of an arbitration proceeding to be made by the Tribunal pursuant to Article 61(2) of the Convention. All advances and charges shall be payable, at the place and in the currencies specified by the Secretary-General, as soon as a request for payment is made by him. If the amounts requested are not paid in full within 30 days, then the Secretary-General shall inform both parties of the default and give an opportunity to either of them to make the required payment. At any time 15 days after such information is sent by the Secre-

**Administrative and Financial Regulations**

tary-General, he may move that the Commission or Tribunal stay the proceeding, if by the date of such motion any part of the required payment is still outstanding. If any proceeding is stayed for non-payment for a consecutive period in excess of six months, the Secretary-General may, after notice to and as far as possible in consultation with the parties, move that the competent body discontinue the proceeding;

(e) in the event that an application for annulment of an award is registered, the above provisions of this Rule shall apply *mutatis mutandis,* except that the applicant shall be solely responsible for making the advance payments requested by the Secretary-General to cover expenses following the constitution of the Committee, and without prejudice to the right of the Committee in accordance with Article 52(4) of the Convention to decide how and by whom expenses incurred in connection with the annulment proceeding shall be paid.

## Regulation 15
## Special Services to Parties

(1) The Centre shall only perform any special service for a party in connection with a proceeding (for example, the provision of translations or copies) if the party shall in advance have deposited an amount sufficient to cover the charge for such service.

(2) Charges for special services shall normally be based on a schedule of fees to be promulgated from time to time by the Secretary-General and communicated by him to all Contracting States as well as to the parties to all pending proceedings.

## Regulation 16
## Fee for Lodging Requests

The party or parties (if a request is made jointly) wishing to institute a conciliation or arbitration proceeding, requesting a supplementary decision to, or the rectification, interpretation, revision or annulment of an arbitral award, or requesting resubmission of a dispute to a new Tribunal after the annulment of an arbitral award, shall pay to the Centre a non-refundable fee determined from time to time by the Secretary-General.

## Regulation 17
## The Budget

(1) The fiscal year of the Centre shall run from July 1 of each year to June 30 of the following year.

(2) Before the end of each fiscal year the Secretary-General shall prepare and submit, for adoption by the Administrative Council at its next Annual Meeting and in accordance with Article 6(1)(f) of the Convention, a budget for the following fiscal year. This budget is to indicate the expected expenditures of the Centre (excepting those to be incurred on a reimbursable basis) and the expected revenues (excepting reimbursements).

(3) If, during the course of a fiscal year, the Secretary-General determines that the expected expenditures will exceed those authorized in the budget, or if he should wish to incur expenditures not previously authorized, he shall, in consultation with the Chairman, prepare a supplementary budget, which he shall submit to the Administrative Council for adoption, either at the Annual Meeting or at any other meeting, or in accordance with Regulation 7(3).

(4) The adoption of a budget constitutes authority for the Secretary-General to make expenditures and incur obligations for the purposes and within the limits specified in the budget. Unless otherwise provided by the Administrative Council, the Secretary-General may exceed the amount specified for any given budget item, provided that the total amount of the budget is not exceeded.

(5) Pending the adoption of the budget by the Administrative Council, the Secretary-General may incur expenditures for the purposes and within the limits specified in the budget he submitted to the Council, up to one quarter of the amount authorized to be expended in the previous fiscal year but in no event exceeding the amount that the Bank has agreed to make available for the current fiscal year.

## Regulation 18
## Assessment of Contributions

(1) Any excess of expected expenditures over expected revenues shall be assessed on the Contracting States. Each State that is not a member of the Bank shall be assessed a fraction of the total assessment equal to the fraction of the budget of the International Court of Justice that it would have to bear if that budget were divided only among the Contracting States in proportion to the then current scale of contributions applicable to the budget of the Court; the balance of the total assessment shall be divided among the Contracting States that are members of the Bank in proportion to their respective subscription to the capital stock of the Bank. The assessments shall be calculated by the

**Administrative and
Financial Regulations**

Secretary-General immediately after the adoption of the annual budget, on the basis of the then current membership of the Centre, and shall be promptly communicated to all Contracting States. The assessments shall be payable as soon as they are thus communicated.

(2)  On the adoption of a supplementary budget, the Secretary-General shall immediately calculate supplementary assessments, which shall be payable as soon as they are communicated to the Contracting States.

(3)  A State which is party to the Convention during any part of a fiscal year shall be assessed for the entire fiscal year. If a State becomes a party to the Convention after the assessments for a given fiscal year have been calculated, its assessment shall be calculated by the application of the same appropriate factor as was applied in calculating the original assessments, and no recalculation of the assessments of the other Contracting States shall be made.

(4)  If, after the close of a fiscal year, it is determined that there is a cash surplus, such surplus shall, unless the Administrative Council otherwise decides, be credited to the Contracting States in proportion to the assessed contributions they had paid for that fiscal year. These credits shall be made with respect to the assessments for the fiscal year commencing two years after the end of the fiscal year to which the surplus pertains.

### Regulation 19
### Audits

The Secretary-General shall have an audit of the accounts of the Centre made once each year and on the basis of this audit submit a financial statement to the Administrative Council for consideration at the Annual Meeting.

## Chapter IV
## General Functions
## of the Secretariat

### Regulation 20
### List of Contracting States

The Secretary-General shall maintain a list, which he shall transmit from time to time to all Contracting States and on request to any State or person, of the Contracting States (including former Contracting States, showing the date on which their notice of denunciation was received by the depositary), indicating for each:

Administrative and
Financial Regulations

(a) the date on which the Convention entered into force with respect to it;

(b) any territories excluded pursuant to Article 70 of the Convention and the dates on which the notice of exclusion and any modification of such notice were received by the depositary;

(c) any designation, pursuant to Article 25(1) of the Convention, of constituent subdivisions or agencies to whose investment disputes the jurisdiction of the Centre extends;

(d) any notification, pursuant to Article 25(3) of the Convention, that no approval by the State is required for the consent by a constituent subdivision or agency to the jurisdiction of the Centre;

(e) any notification, pursuant to Article 25(4) of the Convention, of the class or classes of disputes which the State would or would not consider submitting to the jurisdiction of the Centre;

(f) the competent court or other authority for the recognition and enforcement of arbitral awards, designated pursuant to Article 54(2) of the Convention;

(g) any legislative or other measures taken, pursuant to Article 69 of the Convention, for making its provisions effective in the territories of the State and communicated by the State to the Centre.

**Administrative and Financial Regulations**

## Regulation 21
## Establishment of Panels

(1) Whenever a Contracting State has the right to make one or more designations to the Panel of Conciliators or of Arbitrators, the Secretary-General shall invite the State to make such designations.

(2) Each designation made by a Contracting State or by the Chairman shall indicate the name, address and nationality of the designee, and include a statement of his qualifications, with particular reference to his competence in the fields of law, commerce, industry and finance.

(3) As soon as the Secretary-General is notified of a designation, he shall inform the designee thereof, indicating to him the designating authority and the terminal date of the period of designation, and requesting confirmation that the designee is willing to serve.

(4) The Secretary-General shall maintain lists, which he shall transmit from time to time to all Contracting States and on request to any State or person, of the members of the Panels of Conciliators and of Arbitrators, indicating for each member:

(a) his address;

(b) his nationality;

(c) the terminal date of the current designation;

(d) the designating authority;

(e) his qualifications.

### Regulation 22
### Publication

(1) The Secretary-General shall appropriately publish information about the operation of the Centre, including the registration of all requests for conciliation or arbitration and in due course an indication of the date and method of the termination of each proceeding.

(2) If both parties to a proceeding consent to the publication of:

(a) reports of Conciliation Commissions;

(b) arbitral awards; or

(c) the minutes and other records of proceedings,

the Secretary-General shall arrange for the publication thereof, in an appropriate form with a view to furthering the development of international law in relation to investments.

## Chapter V
## Functions with Respect
## to Individual Proceedings

### Regulation 23
### The Registers

(1) The Secretary-General shall maintain, in accordance with rules to be promulgated by him, separate Registers for requests for conciliation and requests for arbitration. In these he shall enter all significant data concerning the institution, conduct and disposition of each proceeding, including in particular the method of constitution and the membership of each Commission, Tribunal and Committee. On the Arbitration Register he shall also enter, with respect to each award, all significant data concerning any request for the supplementation, rectification, interpretation, revision or annulment of the award, and any stay of enforcement.

(2) The Registers shall be open for inspection by any person. The Secretary-General shall promulgate rules concerning access to the Reg-

isters, and a schedule of charges for the provision of certified and uncertified extracts therefrom.

## Regulation 24
## Means of Communication

(1)  During the pendency of any proceeding the Secretary-General shall be the official channel of written communications among the parties, the Commission, Tribunal or Committee, and the Chairman of the Administrative Council, except that:

> (a)  the parties may communicate directly with each other unless the communication is one required by the Convention or the Institution, Conciliation or Arbitration Rules (hereinafter referred to as the "Rules");
>
> (b)  the members of any Commission, Tribunal or Committee shall communicate directly with each other.

(2)  Instruments and documents shall be introduced into the proceeding by transmitting them to the Secretary-General, who shall retain the original for the files of the Centre and arrange for appropriate distribution of copies. If the instrument or document does not meet the applicable requirements, the Secretary-General:

> (a)  shall inform the party submitting it of the deficiency, and of any consequent action the Secretary-General is taking;
>
> (b)  may, if the deficiency is merely a formal one, accept it subject to subsequent correction;
>
> (c)  may, if the deficiency consists merely of an insufficiency in the number of copies or the lack of required translations, provide the necessary copies or translations at the cost of the party concerned.

## Regulation 25
## Secretary

The Secretary-General shall appoint a Secretary for each Commission, Tribunal and Committee. The Secretary may be drawn from among the Secretariat of the Centre, and shall in any case, while serving in that capacity, be considered as a member of its staff. He shall:

> (a)  represent the Secretary-General and may perform all functions assigned to the latter by these Regulations or the Rules with regard to individual proceedings or assigned to the latter by the Convention, and delegated by him to the Secretary;
>
> (b)  be the channel through which the parties may request particular services from the Centre;

**Administrative and
Financial Regulations**

     (c) keep summary minutes of hearings, unless the parties agree with the Commission, Tribunal or Committee on another manner of keeping the record of the hearings; and

     (d) perform other functions with respect to the proceeding at the request of the President of the Commission, Tribunal or Committee, or at the direction of the Secretary-General.

## Regulation 26
## Place of Proceedings

(1) The Secretary-General shall make arrangements for the holding of conciliation and arbitration proceedings at the seat of the Centre or shall, at the request of the parties and as provided in Article 63 of the Convention, make or supervise arrangements if proceedings are held elsewhere.

(2) The Secretary-General shall assist a Commission or Tribunal, at its request, in visiting any place connected with a dispute or in conducting inquiries there.

## Regulation 27
## Other Assistance

(1) The Secretary-General shall provide such other assistance as may be required in connection with all meetings of Commissions, Tribunals and Committees, in particular in making translations and interpretations from one official language of the Centre into another.

(2) The Secretary-General may also provide, by use of the staff and equipment of the Centre or of persons employed and equipment acquired on a short-time basis, other services required for the conduct of proceedings, such as the duplication and translation of documents, or interpretations from and to a language other than an official language of the Centre.

## Regulation 28
## Depositary Functions

(1) The Secretary-General shall deposit in the archives of the Centre and shall make arrangements for the permanent retention of the original text:

     (a) of the request and of all instruments and documents filed or prepared in connection with any proceeding, including the minutes of any hearing;

     (b) of any report by a Commission or of any award or decision by a Tribunal or Committee.

**Administrative and Financial Regulations**

(2) Subject to the Rules and to the agreement of the parties to particular proceedings, and upon payment of any charges in accordance with a schedule to be promulgated by the Secretary-General, he shall make available to the parties certified copies of reports and awards (reflecting thereon any supplementary decision, rectification, interpretation, revision or annulment duly made, and any stay of enforcement while it is in effect), as well as of other instruments, documents and minutes.

# Chapter VI
# Special Provisions Relating to Proceedings

## Regulation 29
## Time Limits

(1) All time limits, specified in the Convention or the Rules or fixed by a Commission, Tribunal, Committee or the Secretary-General, shall be computed from the date on which the limit is announced in the presence of the parties or their representatives or on which the Secretary-General dispatches the pertinent notification or instrument (which date shall be marked on it). The day of such announcement or dispatch shall be excluded from the calculation.

(2) A time limit shall be satisfied if a notification or instrument dispatched by a party is delivered at the seat of the Centre, or to the Secretary of the competent Commission, Tribunal or Committee that is meeting away from the seat of the Centre, before the close of business on the indicated date or, if that day is a Saturday, a Sunday, a public holiday observed at the place of delivery or a day on which for any reason regular mail delivery is restricted at the place of delivery, then before the close of business on the next subsequent day on which regular mail service is available.

## Regulation 30
## Supporting Documentation

(1) Documentation filed in support of any request, pleading, application, written observation or other instrument introduced into a proceeding shall consist of one original and of the number of additional copies specified in paragraph (2). The original shall, unless otherwise agreed by the parties or ordered by the competent Commission, Tribunal or Committee, consist of the complete document or of a duly certified copy or extract, except if the party is unable to obtain such document or certified copy or extract (in which case the reason for such inability must be stated).

**Administrative and
Financial Regulations**

(2) The number of additional copies of any document shall be equal to the number of additional copies required of the instrument to which the documentation relates, except that no such copies are required if the document has been published and is readily available. Each additional copy shall be certified by the party presenting it to be a true and complete copy of the original, except that if the document is lengthy and relevant only in part, it is sufficient if it is certified to be a true and complete extract of the relevant parts, which must be precisely specified.

(3) Each original and additional copy of a document which is not in a language approved for the proceeding in question, shall, unless otherwise ordered by the competent Commission, Tribunal or Committee, be accompanied by a certified translation into such a language. However, if the document is lengthy and relevant only in part, it is sufficient if only the relevant parts, which must be precisely specified, are translated, provided that the competent body may require a fuller or a complete translation.

(4) Whenever an extract of an original document is presented pursuant to paragraph (1) or a partial copy or translation pursuant to paragraph (2) or (3), each such extract, copy and translation shall be accompanied by a statement that the omission of the remainder of the text does not render the portion presented misleading.

# Chapter VII
# Immunities and Privileges

## Regulation 31
## Certificates of Official Travel

The Secretary-General may issue certificates to members of Commissions, Tribunals or Committees, to officers and employees of the Secretariat and to the parties, agents, counsel, advocates, witnesses and experts appearing in proceedings, indicating that they are traveling in connection with a proceeding under the Convention.

## Regulation 32
## Waiver of Immunities

(1) The Secretary-General may waive the immunity of:
   (a) the Centre;
   (b) members of the staff of the Centre.

(2) The Chairman of the Council may waive the immunity of:
   (a) the Secretary-General or any Deputy Secretary-General;
   (b) members of a Commission, Tribunal or Committee;

Administrative and
Financial Regulations

(c) the parties, agents, counsel, advocates, witnesses or experts appearing in a proceeding, if a recommendation for such waiver is made by the Commission, Tribunal or Committee concerned.

(3) The Administrative Council may waive the immunity of:

(a) the Chairman and members of the Council;

(b) the parties, agents, counsel, advocates, witnesses or experts appearing in a proceeding, even if no recommendation for such a waiver is made by the Commission, Tribunal or Committee concerned;

(c) the Centre or any person mentioned in paragraph (1) or (2).

# Chapter VIII
# Miscellaneous

### Regulation 33
### Communications with
### Contracting States

Unless another channel of communications is specified by the State concerned, all communications required by the Convention or these Regulations to be sent to Contracting States shall be addressed to the State's representative on the Administrative Council.

### Regulation 34
### Official Languages

(1) The official languages of the Centre shall be English, French and Spanish.

(2) The texts of these Regulations in each official language shall be equally authentic.

**Administrative and
Financial Regulations**

# RULES OF PROCEDURE FOR THE INSTITUTION OF CONCILIATION AND ARBITRATION PROCEEDINGS (INSTITUTION RULES)

Institution Rules

# RULES OF PROCEDURE FOR THE INSTITUTION OF CONCILIATION AND ARBITRATION PROCEEDINGS (INSTITUTION RULES)

## Table of Contents

| *Rule* | | *Page* |
|---|---|---|
| 1 | The Request | 76 |
| 2 | Contents of the Request | 76 |
| 3 | Optional Information in the Request | 77 |
| 4 | Copies of the Request | 77 |
| 5 | Acknowledgement of the Request | 78 |
| 6 | Registration of the Request | 78 |
| 7 | Notice of Registration | 78 |
| 8 | Withdrawal of the Request | 79 |
| 9 | Final Provisions | 79 |

Institution Rules

*The Rules of Procedure for the Institution of Conciliation and Arbitration Proceedings (the Institution Rules) of ICSID were adopted by the Administrative Council of the Centre pursuant to Article 6(1)(b) of the ICSID Convention.*

*The Institution Rules are supplemented by the Administrative and Financial Regulations of the Centre, in particular by Regulations 16, 22(1), 23, 24, 30 and 34(1).*

*The Institution Rules are restricted in scope to the period of time from the filing of a request to the dispatch of the notice of registration.  All transactions subsequent to that time are to be regulated in accordance with the Conciliation and the Arbitration Rules.*

# Institution Rules

### Rule 1
### The Request

(1) Any Contracting State or any national of a Contracting State wishing to institute conciliation or arbitration proceedings under the Convention shall address a request to that effect in writing to the Secretary-General at the seat of the Centre. The request shall indicate whether it relates to a conciliation or an arbitration proceeding. It shall be drawn up in an official language of the Centre, shall be dated, and shall be signed by the requesting party or its duly authorized representative.

(2) The request may be made jointly by the parties to the dispute.

### Rule 2
### Contents of the Request

(1) The request shall:

    (a) designate precisely each party to the dispute and state the address of each;

    (b) state, if one of the parties is a constituent subdivision or agency of a Contracting State, that it has been designated to the Centre by that State pursuant to Article 25(1) of the Convention;

    (c) indicate the date of consent and the instruments in which it is recorded, including, if one party is a constituent subdivision or agency of a Contracting State, similar data on the approval of such consent by that State unless it had notified the Centre that no such approval is required;

    (d) indicate with respect to the party that is a national of a Contracting State:

      (i) its nationality on the date of consent; and

      (ii) if the party is a natural person:

        (A) his nationality on the date of the request; and

        (B) that he did not have the nationality of the Contracting State party to the dispute either on the date of consent or on the date of the request; or

      (iii) if the party is a juridical person which on the date of consent had the nationality of the Contracting State party to the dispute, the agreement of the parties that it should be treated as a national of another Contracting State for the purposes of the Convention;

    (e) contain information concerning the issues in dispute indicating that there is, between the parties, a legal dispute arising directly out of an investment; and

    (f) state, if the requesting party is a juridical person, that it has taken all necessary internal actions to authorize the request.

(2) The information required by subparagraphs (1)(c), (1)(d)(iii) and (1)(f) shall be supported by documentation.

(3) "Date of consent" means the date on which the parties to the dispute consented in writing to submit it to the Centre; if both parties did not act on the same day, it means the date on which the second party acted.

### Rule 3
### Optional Information
### in the Request

The request may in addition set forth any provisions agreed by the parties regarding the number of conciliators or arbitrators and the method of their appointment, as well as any other provisions agreed concerning the settlement of the dispute.

### Rule 4
### Copies of the Request

(1) The request shall be accompanied by five additional signed copies. The Secretary-General may require such further copies as he may deem necessary.

*Institution Rules*

(2) Any documentation submitted with the request shall conform to the requirements of Administrative and Financial Regulation 30.

### Rule 5
### Acknowledgement of the Request

(1) On receiving a request the Secretary-General shall:

- (a) send an acknowledgement to the requesting party;
- (b) take no other action with respect to the request until he has received payment of the prescribed fee.

(2) As soon as he has received the fee for lodging the request, the Secretary-General shall transmit a copy of the request and of the accompanying documentation to the other party.

### Rule 6
### Registration of the Request

(1) The Secretary-General shall, subject to Rule 5(1)(b), as soon as possible, either:

- (a) register the request in the Conciliation or the Arbitration Register and on the same day notify the parties of the registration; or
- (b) if he finds, on the basis of the information contained in the request, that the dispute is manifestly outside the jurisdiction of the Centre, notify the parties of his refusal to register the request and of the reasons therefor.

(2) A proceeding under the Convention shall be deemed to have been instituted on the date of the registration of the request.

### Rule 7
### Notice of Registration

The notice of registration of a request shall:

- (a) record that the request is registered and indicate the date of the registration and of the dispatch of that notice;
- (b) notify each party that all communications and notices in connection with the proceeding will be sent to the address stated in the request, unless another address is indicated to the Centre;
- (c) unless such information has already been provided, invite the parties to communicate to the Secretary-General any

Institution Rules

provisions agreed by them regarding the number and the method of appointment of the conciliators or arbitrators;

(d) invite the parties to proceed, as soon as possible, to constitute a Conciliation Commission in accordance with Articles 29 to 31 of the Convention, or an Arbitral Tribunal in accordance with Articles 37 to 40;

(e) remind the parties that the registration of the request is without prejudice to the powers and functions of the Conciliation Commission or Arbitral Tribunal in regard to jurisdiction, competence and the merits; and

(f) be accompanied by a list of the members of the Panel of Conciliators or of Arbitrators of the Centre.

## Rule 8
## Withdrawal of the Request

The requesting party may, by written notice to the Secretary-General, withdraw the request before it has been registered. The Secretary-General shall promptly notify the other party, unless, pursuant to Rule 5(1)(b), the request had not been transmitted to it.

## Rule 9
## Final Provisions

(1) The texts of these Rules in each official language of the Centre shall be equally authentic.

(2) These Rules may be cited as the "Institution Rules" of the Centre.

**Institution Rules**

# RULES OF PROCEDURE
# FOR CONCILIATION PROCEEDINGS
# (CONCILIATION RULES)

Conciliation Rules

# RULES OF PROCEDURE
# FOR CONCILIATION PROCEEDINGS
# (CONCILIATION RULES)

## Table of Contents

| *Chapter* | *Rule* | | *Page* |
|---|---|---|---|
| **I** | | **Establishment of the Commission** | |
| | 1 | General Obligations . . . . . . . . . . . . . . . . . . . . . . . . | 85 |
| | 2 | Method of Constituting the Commission in the Absence of Previous Agreement . . . . . . . . . | 85 |
| | 3 | Appointment of Conciliators to a Commission Constituted in Accordance with Convention Article 29(2)(b) . . . . . . . . . . . . . . | 86 |
| | 4 | Appointment of Conciliators by the Chairman of the Administrative Council . . . . . . . . | 87 |
| | 5 | Acceptance of Appointments . . . . . . . . . . . . . . . . . . | 87 |
| | 6 | Constitution of the Commission . . . . . . . . . . . . . . | 88 |
| | 7 | Replacement of Conciliators . . . . . . . . . . . . . . . . . . | 88 |
| | 8 | Incapacity or Resignation of Conciliators . . . . . . . | 88 |
| | 9 | Disqualification of Conciliators . . . . . . . . . . . . . . . | 89 |
| | 10 | Procedure during a Vacancy on the Commission . | 89 |
| | 11 | Filling Vacancies on the Commission . . . . . . . . . . . | 90 |
| | 12 | Resumption of Proceeding after Filling a Vacancy | 90 |
| **II** | | **Working of the Commission** | |
| | 13 | Sessions of the Commission . . . . . . . . . . . . . . . . . . | 90 |
| | 14 | Sittings of the Commission . . . . . . . . . . . . . . . . . . . | 91 |
| | 15 | Deliberations of the Commission . . . . . . . . . . . . . . | 91 |
| | 16 | Decisions of the Commission . . . . . . . . . . . . . . . . . | 92 |
| | 17 | Incapacity of the President . . . . . . . . . . . . . . . . . . . | 92 |
| | 18 | Representation of the Parties . . . . . . . . . . . . . . . . . . | 92 |
| **III** | | **General Procedural Provisions** | |
| | 19 | Procedural Orders . . . . . . . . . . . . . . . . . . . . . . . . . . | 92 |
| | 20 | Preliminary Procedural Consultation . . . . . . . . . . . | 93 |
| | 21 | Procedural Languages . . . . . . . . . . . . . . . . . . . . . . . | 93 |
| **IV** | | **Conciliation Procedures** | |
| | 22 | Functions of the Commission . . . . . . . . . . . . . . . . . | 94 |
| | 23 | Cooperation of the Parties . . . . . . . . . . . . . . . . . . . | 94 |
| | 24 | Transmission of the Request . . . . . . . . . . . . . . . . . . | 95 |
| | 25 | Written Statements . . . . . . . . . . . . . . . . . . . . . . . . . | 95 |

Conciliation Rules

| | 26 | Supporting Documentation . . . . . . . . . . . . . . . . . . . . | 95 |
| | 27 | Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 95 |
| | 28 | Witnesses and Experts . . . . . . . . . . . . . . . . . . . . . . . | 96 |
| **V** | | **Termination of the Proceeding** | |
| | 29 | Objections to Jurisdiction . . . . . . . . . . . . . . . . . . . . | 96 |
| | 30 | Closure of the Proceeding . . . . . . . . . . . . . . . . . . . . | 97 |
| | 31 | Preparation of the Report . . . . . . . . . . . . . . . . . . . . | 97 |
| | 32 | The Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 97 |
| | 33 | Communication of the Report . . . . . . . . . . . . . . . . | 98 |
| **VI** | | **General Provisions** | |
| | 34 | Final Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 98 |

Conciliation Rules

*The Rules of Procedure for Conciliation Proceedings (the Conciliation Rules) of ICSID were adopted by the Administrative Council of the Centre pursuant to Article 6(1)(c) of the ICSID Convention.*

*The Conciliation Rules are supplemented by the Administrative and Financial Regulations of the Centre, in particular by Regulations 14-16, 22-31 and 34(1).*

*The Conciliation Rules cover the period of time from the dispatch of the notice of registration of a request for conciliation until a report is drawn up. The transactions previous to that time are to be regulated in accordance with the Institution Rules.*

# Conciliation Rules

## Chapter I
## Establishment of the Commission

### Rule 1
### General Obligations

(1) Upon notification of the registration of the request for conciliation, the parties shall, with all possible dispatch, proceed to constitute a Commission, with due regard to Section 2 of Chapter III of the Convention.

(2) Unless such information is provided in the request, the parties shall communicate to the Secretary-General as soon as possible any provisions agreed by them regarding the number of conciliators and the method of their appointment.

### Rule 2
### Method of Constituting the Commission in the Absence of Previous Agreement

(1) If the parties, at the time of the registration of the request for conciliation, have not agreed upon the number of conciliators and the method of their appointment, they shall, unless they agree otherwise, follow the following procedure:

(a) the requesting party shall, within 10 days after the registration of the request, propose to the other party the appointment of a sole conciliator or of a specified uneven number of conciliators and specify the method proposed for their appointment;

Conciliation Rules

(b) within 20 days after receipt of the proposals made by the requesting party, the other party shall:

    (i) accept such proposals; or

    (ii) make other proposals regarding the number of conciliators and the method of their appointment;

(c) within 20 days after receipt of the reply containing any such other proposals, the requesting party shall notify the other party whether it accepts or rejects such proposals.

(2) The communications provided for in paragraph (1) shall be made or promptly confirmed in writing and shall either be transmitted through the Secretary-General or directly between the parties with a copy to the Secretary-General. The parties shall promptly notify the Secretary-General of the contents of any agreement reached.

(3) At any time 60 days after the registration of the request, if no agreement on another procedure is reached, either party may inform the Secretary-General that it chooses the formula provided for in Article 29(2)(b) of the Convention. The Secretary-General shall thereupon promptly inform the other party that the Commission is to be constituted in accordance with that Article.

### Rule 3
### Appointment of Conciliators
### to a Commission Constituted in Accordance
### with Convention Article 29(2)(b)

(1) If the Commission is to be constituted in accordance with Article 29(2)(b) of the Convention:

(a) either party shall, in a communication to the other party:

    (i) name two persons, identifying one of them as the conciliator appointed by it and the other as the conciliator proposed to be the President of the Commission; and

    (ii) invite the other party to concur in the appointment of the conciliator proposed to be the President of the Commission and to appoint another conciliator;

(b) promptly upon receipt of this communication the other party shall, in its reply:

    (i) name a person as the conciliator appointed by it; and

    (ii) concur in the appointment of the conciliator proposed to be the President of the Commission or name another person as the conciliator proposed to be President;

**Conciliation Rules**

(c) promptly upon receipt of the reply containing such a proposal, the initiating party shall notify the other party whether it concurs in the appointment of the conciliator proposed by that party to be the President of the Commission.

(2) The communications provided for in this Rule shall be made or promptly confirmed in writing and shall either be transmitted through the Secretary-General or directly between the parties with a copy to the Secretary-General.

## Rule 4
### Appointment of Conciliators by the Chairman of the Administrative Council

(1) If the Commission is not constituted within 90 days after the dispatch by the Secretary-General of the notice of registration, or such other period as the parties may agree, either party may, through the Secretary-General, address to the Chairman of the Administrative Council a request in writing to appoint the conciliator or conciliators not yet appointed and to designate a conciliator to be the President of the Commission.

(2) The provision of paragraph (1) shall apply *mutatis mutandis* in the event that the parties have agreed that the conciliators shall elect the President of the Commission and they fail to do so.

(3) The Secretary-General shall forthwith send a copy of the request to the other party.

(4) The Chairman shall use his best efforts to comply with that request within 30 days after its receipt.  Before he proceeds to make an appointment or designation, with due regard to Article 31(1) of the Convention, he shall consult both parties as far as possible.

(5) The Secretary-General shall promptly notify the parties of any appointment or designation made by the Chairman.

## Rule 5
### Acceptance of Appointments

(1) The party or parties concerned shall notify the Secretary-General of the appointment of each conciliator and indicate the method of his appointment.

(2) As soon as the Secretary-General has been informed by a party or the Chairman of the Administrative Council of the appointment of a conciliator, he shall seek an acceptance from the appointee.

(3) If a conciliator fails to accept his appointment within 15 days, the Secretary-General shall promptly notify the parties, and if appropriate the Chairman, and invite them to proceed to the appointment of

Conciliation Rules

another conciliator in accordance with the method followed for the previous appointment.

## Rule 6
## Constitution of the Commission

(1) The Commission shall be deemed to be constituted and the proceeding to have begun on the date the Secretary-General notifies the parties that all the conciliators have accepted their appointment.

(2) Before or at the first session of the Commission, each conciliator shall sign a declaration in the following form:

"To the best of my knowledge there is no reason why I should not serve on the Conciliation Commission constituted by the International Centre for Settlement of Investment Disputes with respect to a dispute between _____and _____.

"I shall keep confidential all information coming to my knowledge as a result of my participation in this proceeding, as well as the contents of any report drawn up by the Commission.

"I shall not accept any instruction or compensation with regard to the proceeding from any source except as provided in the Convention on the Settlement of Investment Disputes between States and Nationals of Other States and in the Regulations and Rules made pursuant thereto.

"A statement of my past and present professional, business and other relationships (if any) with the parties is attached hereto."

Any conciliator failing to sign such a declaration by the end of the first session of the Commission shall be deemed to have resigned.

## Rule 7
## Replacement of Conciliators

At any time before the Commission is constituted, each party may replace any conciliator appointed by it and the parties may by common consent agree to replace any conciliator. The procedure of such replacement shall be in accordance with Rules 1, 5 and 6.

## Rule 8
## Incapacity or Resignation of Conciliators

(1) If a conciliator becomes incapacitated or unable to perform the duties of his office, the procedure in respect of the disqualification of conciliators set forth in Rule 9 shall apply.

(2) A conciliator may resign by submitting his resignation to the other members of the Commission and the Secretary-General. If the

conciliator was appointed by one of the parties, the Commission shall promptly consider the reasons for his resignation and decide whether it consents thereto. The Commission shall promptly notify the Secretary-General of its decision.

## Rule 9
## Disqualification of Conciliators

(1)  A party proposing the disqualification of a conciliator pursuant to Article 57 of the Convention shall promptly, and in any event before the Commission first recommends terms of settlement of the dispute to the parties or when the proceeding is closed (whichever occurs earlier), file its proposal with the Secretary-General, stating its reasons therefor.

(2)  The Secretary-General shall forthwith:

    (a)  transmit the proposal to the members of the Commission and, if it relates to a sole conciliator or to a majority of the members of the Commission, to the Chairman of the Administrative Council; and

    (b)  notify the other party of the proposal.

(3)  The conciliator to whom the proposal relates may, without delay, furnish explanations to the Commission or the Chairman, as the case may be.

(4)  Unless the proposal relates to a majority of the members of the Commission, the other members shall promptly consider and vote on the proposal in the absence of the conciliator concerned. If those members are equally divided, they shall, through the Secretary-General, promptly notify the Chairman of the proposal, of any explanation furnished by the conciliator concerned and of their failure to reach a decision.

(5)  Whenever the Chairman has to decide on a proposal to disqualify a conciliator, he shall use his best efforts to take that decision within 30 days after he has received the proposal.

(6)  The proceeding shall be suspended until a decision has been taken on the proposal.

## Rule 10
## Procedure during a Vacancy
## on the Commission

(1)  The Secretary-General shall forthwith notify the parties and, if necessary, the Chairman of the Administrative Council of the disqualification, death, incapacity or resignation of a conciliator and of the consent, if any, of the Commission to a resignation.

**Conciliation Rules**

(2) Upon the notification by the Secretary-General of a vacancy on the Commission, the proceeding shall be or remain suspended until the vacancy has been filled.

### Rule 11
### Filling Vacancies
### on the Commission

(1) Except as provided in paragraph (2), a vacancy resulting from the disqualification, death, incapacity or resignation of a conciliator shall be promptly filled by the same method by which his appointment had been made.

(2) In addition to filling vacancies relating to conciliators appointed by him, the Chairman of the Administrative Council shall appoint a person from the Panel of Conciliators:

> (a) to fill a vacancy caused by the resignation, without the consent of the Commission, of a conciliator appointed by a party; or
>
> (b) at the request of either party, to fill any other vacancy, if no new appointment is made and accepted within 45 days of the notification of the vacancy by the Secretary-General.

(3) The procedure for filling a vacancy shall be in accordance with Rules 1, 4(4), 4(5), 5 and, *mutatis mutandis,* 6(2).

### Rule 12
### Resumption of Proceeding
### after Filling a Vacancy

As soon as a vacancy on the Commission has been filled, the proceeding shall continue from the point it had reached at the time the vacancy occurred. The newly appointed conciliator may, however, require that any hearings be repeated in whole or in part.

# Chapter II
# Working of the Commission

### Rule 13
### Sessions of the Commission

(1) The Commission shall hold its first session within 60 days after its constitution or such other period as the parties may agree. The dates of that session shall be fixed by the President of the Commission after consultation with its members and the Secretary-General. If upon its

Conciliation Rules

constitution the Commission has no President because the parties have agreed that the President shall be elected by its members, the Secretary-General shall fix the dates of that session. In both cases, the parties shall be consulted as far as possible.

(2) The dates of subsequent sessions shall be determined by the Commission, after consultation with the Secretary-General and with the parties as far as possible.

(3) The Commission shall meet at the seat of the Centre or at such other place as may have been agreed by the parties in accordance with Article 63 of the Convention. If the parties agree that the proceeding shall be held at a place other than the Centre or an institution with which the Centre has made the necessary arrangements, they shall consult with the Secretary-General and request the approval of the Commission. Failing such approval, the Commission shall meet at the seat of the Centre.

(4) The Secretary-General shall notify the members of the Commission and the parties of the dates and place of the sessions of the Commission in good time.

### Rule 14
### Sittings of the Commission

(1) The President of the Commission shall conduct its hearings and preside at its deliberations.

(2) Except as the parties otherwise agree, the presence of a majority of the members of the Commission shall be required at its sittings.

(3) The President of the Commission shall fix the date and hour of its sittings.

### Rule 15
### Deliberations of
### the Commission

(1) The deliberations of the Commission shall take place in private and remain secret.

(2) Only members of the Commission shall take part in its deliberations. No other person shall be admitted unless the Commission decides otherwise.

**Conciliation Rules**

91

### Rule 16
### Decisions of
### the Commission

(1) Decisions of the Commission shall be taken by a majority of the votes of all its members. Abstention shall count as a negative vote.

(2) Except as otherwise provided by these Rules or decided by the Commission, it may take any decision by correspondence among its members, provided that all of them are consulted. Decisions so taken shall be certified by the President of the Commission.

### Rule 17
### Incapacity of
### the President

If at any time the President of the Commission should be unable to act, his functions shall be performed by one of the other members of the Commission, acting in the order in which the Secretary-General had received the notice of their acceptance of their appointment to the Commission.

### Rule 18
### Representation of
### the Parties

(1) Each party may be represented or assisted by agents, counsel or advocates whose names and authority shall be notified by that party to the Secretary-General, who shall promptly inform the Commission and the other party.

(2) For the purposes of these Rules, the expression "party" includes, where the context so admits, an agent, counsel or advocate authorized to represent that party.

## Chapter III
## General Procedural Provisions

### Rule 19
### Procedural Orders

The Commission shall make the orders required for the conduct of the proceeding.

Conciliation Rules

## Rule 20
### Preliminary Procedural
### Consultation

(1) As early as possible after the constitution of a Commission, its President shall endeavor to ascertain the views of the parties regarding questions of procedure. For this purpose he may request the parties to meet him. He shall, in particular, seek their views on the following matters:

(a) the number of members of the Commission required to constitute a quorum at its sittings;

(b) the language or languages to be used in the proceeding;

(c) the evidence, oral or written, which each party intends to produce or to request the Commission to call for, and the written statements which each party intends to file, as well as the time limits within which such evidence should be produced and such statements filed;

(d) the number of copies desired by each party of instruments filed by the other; and

(e) the manner in which the record of the hearings shall be kept.

(2) In the conduct of the proceeding the Commission shall apply any agreement between the parties on procedural matters, except as otherwise provided in the Convention or the Administrative and Financial Regulations.

## Rule 21
### Procedural Languages

(1) The parties may agree on the use of one or two languages to be used in the proceeding, provided that, if they agree on any language that is not an official language of the Centre, the Commission, after consultation with the Secretary-General, gives its approval. If the parties do not agree on any such procedural language, each of them may select one of the official languages (i.e., English, French and Spanish) for this purpose.

(2) If two procedural languages are selected by the parties, any instrument may be filed in either language. Either language may be used at the hearings, subject, if the Commission so requires, to translation and interpretation. The recommendations and the report of the Commission shall be rendered and the record kept in both procedural languages, both versions being equally authentic.

**Conciliation Rules**

# Chapter IV
# Conciliation Procedures

### Rule 22
### Functions of
### the Commission

(1)  In order to clarify the issues in dispute between the parties, the Commission shall hear the parties and shall endeavor to obtain any information that might serve this end. The parties shall be associated with its work as closely as possible.

(2) In order to bring about agreement between the parties, the Commission may, from time to time at any stage of the proceeding, make—orally or in writing—recommendations to the parties. It may recommend that the parties accept specific terms of settlement or that they refrain, while it seeks to bring about agreement between them, from specific acts that might aggravate the dispute; it shall point out to the parties the arguments in favor of its recommendations. It may fix time limits within which each party shall inform the Commission of its decision concerning the recommendations made.

(3) The Commission, in order to obtain information that might enable it to discharge its functions, may at any stage of the proceeding:

> (a) request from either party oral explanations, documents and other information;
>
> (b) request evidence from other persons; and
>
> (c) with the consent of the party concerned, visit any place connected with the dispute or conduct inquiries there, provided that the parties may participate in any such visits and inquiries.

### Rule 23
### Cooperation of the Parties

(1)  The parties shall cooperate in good faith with the Commission and, in particular, at its request furnish all relevant documents, information and explanations as well as use the means at their disposal to enable the Commission to hear witnesses and experts whom it desires to call. The parties shall also facilitate visits to and inquiries at any place connected with the dispute that the Commission desires to undertake.

(2) The parties shall comply with any time limits agreed with or fixed by the Commission.

## Rule 24
### Transmission of the Request

As soon as the Commission is constituted, the Secretary-General shall transmit to each member a copy of the request by which the proceeding was initiated, of the supporting documentation, of the notice of registration and of any communication received from either party in response thereto.

## Rule 25
### Written Statements

(1) Upon the constitution of the Commission, its President shall invite each party to file, within 30 days or such longer time limit as he may fix, a written statement of its position. If, upon its constitution, the Commission has no President, such invitation shall be issued and any such longer time limit shall be fixed by the Secretary-General. At any stage of the proceeding, within such time limits as the Commission shall fix, either party may file such other written statements as it deems useful and relevant.

(2) Except as otherwise provided by the Commission after consultation with the parties and the Secretary-General, every written statement or other instrument shall be filed in the form of a signed original accompanied by additional copies whose number shall be two more than the number of members of the Commission.

## Rule 26
### Supporting Documentation

(1) Every written statement or other instrument filed by a party may be accompanied by supporting documentation, in such form and number of copies as required by Administrative and Financial Regulation 30.

(2) Supporting documentation shall ordinarily be filed together with the instrument to which it relates, and in any case within the time limit fixed for the filing of such instrument.

## Rule 27
### Hearings

(1) The hearings of the Commission shall take place in private and, except as the parties otherwise agree, shall remain secret.

(2) The Commission shall decide, with the consent of the parties, which other persons besides the parties, their agents, counsel and advo-

**Conciliation Rules**

cates, witnesses and experts during their testimony, and officers of the Commission may attend the hearings.

### Rule 28
### Witnesses and Experts

(1)  Each party may, at any stage of the proceeding, request that the Commission hear the witnesses and experts whose evidence the party considers relevant. The Commission shall fix a time limit within which such hearing shall take place.

(2)  Witnesses and experts shall, as a rule, be examined before the Commission by the parties under the control of its President. Questions may also be put to them by any member of the Commission.

(3)  If a witness or expert is unable to appear before it, the Commission, in agreement with the parties, may make appropriate arrangements for the evidence to be given in a written deposition or to be taken by examination elsewhere. The parties may participate in any such examination.

## Chapter V
## Termination of the Proceeding

### Rule 29
### Objections to Jurisdiction

(1)  Any objection that the dispute is not within the jurisdiction of the Centre or, for other reasons, is not within the competence of the Commission shall be made as early as possible. A party shall file the objection with the Secretary-General no later than in its first written statement or at the first hearing if that occurs earlier, unless the facts on which the objection is based are unknown to the party at that time.

(2)  The Commission may on its own initiative consider, at any stage of the proceeding, whether the dispute before it is within the jurisdiction of the Centre and within its own competence.

(3)  Upon the formal raising of an objection, the proceeding on the merits shall be suspended. The Commission shall obtain the views of the parties on the objection.

(4)  The Commission may deal with the objection as a preliminary question or join it to the merits of the dispute. If the Commission overrules the objection or joins it to the merits, it shall resume consideration of the latter without delay.

(5)  If the Commission decides that the dispute is not within the jurisdiction of the Centre or not within its own competence, it shall

Conciliation Rules

close the proceeding and draw up a report to that effect, in which it shall state its reasons.

## Rule 30
## Closure of the Proceeding

(1) If the parties reach agreement on the issues in dispute, the Commission shall close the proceeding and draw up its report noting the issues in dispute and recording that the parties have reached agreement. At the request of the parties, the report shall record the detailed terms and conditions of their agreement.

(2) If at any stage of the proceeding it appears to the Commission that there is no likelihood of agreement between the parties, the Commission shall, after notice to the parties, close the proceeding and draw up its report noting the submission of the dispute to conciliation and recording the failure of the parties to reach agreement.

(3) If one party fails to appear or participate in the proceeding, the Commission shall, after notice to the parties, close the proceeding and draw up its report noting the submission of the dispute to conciliation and recording the failure of that party to appear or participate.

## Rule 31
## Preparation of the Report

The report of the Commission shall be drawn up and signed within 60 days after the closure of the proceeding.

## Rule 32
## The Report

(1) The report shall be in writing and shall contain, in addition to the material specified in paragraph (2) and in Rule 30:

> (a) a precise designation of each party;
>
> (b) a statement that the Commission was established under the Convention, and a description of the method of its constitution;
>
> (c) the names of the members of the Commission, and an identification of the appointing authority of each;
>
> (d) the names of the agents, counsel and advocates of the parties;
>
> (e) the dates and place of the sittings of the Commission; and
>
> (f) a summary of the proceeding.

Conciliation Rules

(2) The report shall also record any agreement of the parties, pursuant to Article 35 of the Convention, concerning the use in other proceedings of the views expressed or statements or admissions or offers of settlement made in the proceeding before the Commission or of the report or any recommendation made by the Commission.

(3) The report shall be signed by the members of the Commission; the date of each signature shall be indicated. The fact that a member refuses to sign the report shall be recorded therein.

### Rule 33
### Communication
### of the Report

(1) Upon signature by the last conciliator to sign, the Secretary-General shall promptly:

> (a) authenticate the original text of the report and deposit it in the archives of the Centre; and

> (b) dispatch a certified copy to each party, indicating the date of dispatch on the original text and on all copies.

(2) The Secretary-General shall, upon request, make available to a party additional certified copies of the report.

(3) The Centre shall not publish the report without the consent of the parties.

## Chapter VI
## General Provisions

### Rule 34
### Final Provisions

(1) The texts of these Rules in each official language of the Centre shall be equally authentic.

(2) These Rules may be cited as the "Conciliation Rules" of the Centre.

Conciliation Rules

# RULES OF PROCEDURE FOR ARBITRATION PROCEEDINGS (ARBITRATION RULES)

**Arbitration Rules**

# RULES OF PROCEDURE FOR ARBITRATION PROCEEDINGS (ARBITRATION RULES)

## Table of Contents

| *Chapter* | *Rule* | | *Page* |
|---|---|---|---|
| **I** | | **Establishment of the Tribunal** | |
| | 1 | General Obligations .......................... | 103 |
| | 2 | Method of Constituting the Tribunal in the Absence of Previous Agreement .......... | 104 |
| | 3 | Appointment of Arbitrators to a Tribunal Constituted in Accordance with Convention Article 37(2)(b) .............. | 104 |
| | 4 | Appointment of Arbitrators by the Chairman of the Administrative Council ........ | 105 |
| | 5 | Acceptance of Appointments ................... | 106 |
| | 6 | Constitution of the Tribunal .................. | 106 |
| | 7 | Replacement of Arbitrators ................... | 107 |
| | 8 | Incapacity or Resignation of Arbitrators ........ | 107 |
| | 9 | Disqualification of Arbitrators ................. | 107 |
| | 10 | Procedure during a Vacancy on the Tribunal ..... | 108 |
| | 11 | Filling Vacancies on the Tribunal .............. | 108 |
| | 12 | Resumption of Proceeding after Filling a Vacancy ........................... | 109 |
| **II** | | **Working of the Tribunal** | |
| | 13 | Sessions of the Tribunal ...................... | 109 |
| | 14 | Sittings of the Tribunal ....................... | 110 |
| | 15 | Deliberations of the Tribunal ................. | 110 |
| | 16 | Decisions of the Tribunal ..................... | 110 |
| | 17 | Incapacity of the President ................... | 110 |
| | 18 | Representation of the Parties .................. | 110 |
| **III** | | **General Procedural Provisions** | |
| | 19 | Procedural Orders ........................... | 111 |
| | 20 | Preliminary Procedural Consultation ........... | 111 |
| | 21 | Pre-Hearing Conference ...................... | 111 |
| | 22 | Procedural Languages ........................ | 112 |
| | 23 | Copies of Instruments ....................... | 112 |
| | 24 | Supporting Documentation ................... | 112 |
| | 25 | Correction of Errors ......................... | 113 |
| | 26 | Time Limits ................................. | 113 |

**Arbitration Rules**

|  | 27 | Waiver ...................................... | 113 |
|  | 28 | Cost of Proceeding ......................... | 113 |

| **IV** |  | **Written and Oral Procedures** |  |
|  | 29 | Normal Procedures .......................... | 114 |
|  | 30 | Transmission of the Request ................. | 114 |
|  | 31 | The Written Procedure ...................... | 114 |
|  | 32 | The Oral Procedure ......................... | 115 |
|  | 33 | Marshalling of Evidence ..................... | 115 |
|  | 34 | Evidence: General Principles ................. | 115 |
|  | 35 | Examination of Witnesses and Experts ......... | 116 |
|  | 36 | Witnesses and Experts: Special Rules .......... | 116 |
|  | 37 | Visits and Inquiries; Submissions of Non-disputing Parties ........................ | 117 |
|  | 38 | Closure of the Proceeding ................... | 117 |

| **V** |  | **Particular Procedures** |  |
|  | 39 | Provisional Measures ........................ | 118 |
|  | 40 | Ancillary Claims ............................ | 118 |
|  | 41 | Preliminary Objections ...................... | 119 |
|  | 42 | Default ..................................... | 120 |
|  | 43 | Settlement and Discontinuance ................ | 120 |
|  | 44 | Discontinuance at Request of a Party .......... | 121 |
|  | 45 | Discontinuance for Failure of Parties to Act ..... | 121 |

| **VI** |  | **The Award** |  |
|  | 46 | Preparation of the Award .................... | 121 |
|  | 47 | The Award ................................. | 121 |
|  | 48 | Rendering of the Award ..................... | 122 |
|  | 49 | Supplementary Decisions and Rectification ...... | 123 |

| **VII** |  | **Interpretation, Revision and Annulment of the Award** |  |
|  | 50 | The Application ............................. | 124 |
|  | 51 | Interpretation or Revision: Further Procedures ... | 125 |
|  | 52 | Annulment: Further Procedures ............... | 126 |
|  | 53 | Rules of Procedure ......................... | 126 |
|  | 54 | Stay of Enforcement of the Award ............. | 126 |
|  | 55 | Resubmission of Dispute after an Annulment .... | 127 |

| **VIII** |  | **General Provisions** |  |
|  | 56 | Final Provisions ............................ | 128 |

*The Rules of Procedure for Arbitration Proceedings (the Arbitration Rules) of ICSID were adopted by the Administrative Council of the Centre pursuant to Article 6(1)(c) of the ICSID Convention.*

*The Arbitration Rules are supplemented by the Administrative and Financial Regulations of the Centre, in particular by Regulations 14-16, 22-31 and 34(1).*

*The Arbitration Rules cover the period of time from the dispatch of the notice of registration of a request for arbitration until an award is rendered and all challenges possible to it under the Convention have been exhausted. The transactions previous to that time are to be regulated in accordance with the Institution Rules.*

# Arbitration Rules

## Chapter I
## Establishment of the Tribunal

### Rule 1
### General Obligations

(1)  Upon notification of the registration of the request for arbitration, the parties shall, with all possible dispatch, proceed to constitute a Tribunal, with due regard to Section 2 of Chapter IV of the Convention.

(2)  Unless such information is provided in the request, the parties shall communicate to the Secretary-General as soon as possible any provisions agreed by them regarding the number of arbitrators and the method of their appointment.

(3)  The majority of the arbitrators shall be nationals of States other than the State party to the dispute and of the State whose national is a party to the dispute, unless the sole arbitrator or each individual member of the Tribunal is appointed by agreement of the parties. Where the Tribunal is to consist of three members, a national of either of these States may not be appointed as an arbitrator by a party without the agreement of the other party to the dispute.  Where the Tribunal is to consist of five or more members, nationals of either of these States may not be appointed as arbitrators by a party if appointment by the other party of the same number of arbitrators of either of these nationalities would result in a majority of arbitrators of these nationalities.

(4)  No person who had previously acted as a conciliator or arbitrator in any proceeding for the settlement of the dispute may be appointed as a member of the Tribunal.

### Rule 2
### Method of Constituting
### the Tribunal in the Absence
### of Previous Agreement

(1) If the parties, at the time of the registration of the request for arbitration, have not agreed upon the number of arbitrators and the method of their appointment, they shall, unless they agree otherwise, follow the following procedure:

> (a) the requesting party shall, within 10 days after the registration of the request, propose to the other party the appointment of a sole arbitrator or of a specified uneven number of arbitrators and specify the method proposed for their appointment;

> (b) within 20 days after receipt of the proposals made by the requesting party, the other party shall:

>> (i)   accept such proposals; or

>> (ii)  make other proposals regarding the number of arbitrators and the method of their appointment;

> (c) within 20 days after receipt of the reply containing any such other proposals, the requesting party shall notify the other party whether it accepts or rejects such proposals.

(2) The communications provided for in paragraph (1) shall be made or promptly confirmed in writing and shall either be transmitted through the Secretary-General or directly between the parties with a copy to the Secretary-General. The parties shall promptly notify the Secretary-General of the contents of any agreement reached.

(3) At any time 60 days after the registration of the request, if no agreement on another procedure is reached, either party may inform the Secretary-General that it chooses the formula provided for in Article 37(2)(b) of the Convention. The Secretary-General shall thereupon promptly inform the other party that the Tribunal is to be constituted in accordance with that Article.

### Rule 3
### Appointment of Arbitrators
### to a Tribunal Constituted in Accordance
### with Convention Article 37(2)(b)

(1) If the Tribunal is to be constituted in accordance with Article 37(2)(b) of the Convention:

> (a) either party shall in a communication to the other party:

**Arbitration Rules**

<ol type="i">
<li>name two persons, identifying one of them, who shall not have the same nationality as nor be a national of either party, as the arbitrator appointed by it, and the other as the arbitrator proposed to be the President of the Tribunal; and</li>
<li>invite the other party to concur in the appointment of the arbitrator proposed to be the President of the Tribunal and to appoint another arbitrator;</li>
</ol>

(b) promptly upon receipt of this communication the other party shall, in its reply:

<ol type="i">
<li>name a person as the arbitrator appointed by it, who shall not have the same nationality as nor be a national of either party; and</li>
<li>concur in the appointment of the arbitrator proposed to be the President of the Tribunal or name another person as the arbitrator proposed to be President;</li>
</ol>

(c) promptly upon receipt of the reply containing such a proposal, the initiating party shall notify the other party whether it concurs in the appointment of the arbitrator proposed by that party to be the President of the Tribunal.

(2) The communications provided for in this Rule shall be made or promptly confirmed in writing and shall either be transmitted through the Secretary-General or directly between the parties with a copy to the Secretary-General.

### Rule 4
### Appointment of Arbitrators
### by the Chairman of
### the Administrative Council

(1) If the Tribunal is not constituted within 90 days after the dispatch by the Secretary-General of the notice of registration, or such other period as the parties may agree, either party may, through the Secretary-General, address to the Chairman of the Administrative Council a request in writing to appoint the arbitrator or arbitrators not yet appointed and to designate an arbitrator to be the President of the Tribunal.

(2) The provision of paragraph (1) shall apply *mutatis mutandis* in the event that the parties have agreed that the arbitrators shall elect the President of the Tribunal and they fail to do so.

(3) The Secretary-General shall forthwith send a copy of the request to the other party.

**Arbitration Rules**

(4) The Chairman shall use his best efforts to comply with that request within 30 days after its receipt. Before he proceeds to make an appointment or designation, with due regard to Articles 38 and 40(1) of the Convention, he shall consult both parties as far as possible.

(5) The Secretary-General shall promptly notify the parties of any appointment or designation made by the Chairman.

### Rule 5
### Acceptance of Appointments

(1) The party or parties concerned shall notify the Secretary-General of the appointment of each arbitrator and indicate the method of his appointment.

(2) As soon as the Secretary-General has been informed by a party or the Chairman of the Administrative Council of the appointment of an arbitrator, he shall seek an acceptance from the appointee.

(3) If an arbitrator fails to accept his appointment within 15 days, the Secretary-General shall promptly notify the parties, and if appropriate the Chairman, and invite them to proceed to the appointment of another arbitrator in accordance with the method followed for the previous appointment.

### Rule 6
### Constitution of the Tribunal

(1) The Tribunal shall be deemed to be constituted and the proceeding to have begun on the date the Secretary-General notifies the parties that all the arbitrators have accepted their appointment.

(2) Before or at the first session of the Tribunal, each arbitrator shall sign a declaration in the following form:

"To the best of my knowledge there is no reason why I should not serve on the Arbitral Tribunal constituted by the International Centre for Settlement of Investment Disputes with respect to a dispute between _____and_____.

"I shall keep confidential all information coming to my knowledge as a result of my participation in this proceeding, as well as the contents of any award made by the Tribunal.

"I shall judge fairly as between the parties, according to the applicable law, and shall not accept any instruction or compensation with regard to the proceeding from any source except as provided in the Convention on the Settlement of Investment Disputes between States and Nationals of Other States and in the Regulations and Rules made pursuant thereto.

"Attached is a statement of (a) my past and present professional, business and other relationships (if any) with the parties and (b) any other circumstance that might cause my reliability for independent judgment to be questioned by a party. I acknowledge that by signing this declaration, I assume a continuing obligation promptly to notify the Secretary-General of the Centre of any such relationship or circumstance that subsequently arises during this proceeding."

Any arbitrator failing to sign a declaration by the end of the first session of the Tribunal shall be deemed to have resigned.

## Rule 7
## Replacement of Arbitrators

At any time before the Tribunal is constituted, each party may replace any arbitrator appointed by it and the parties may by common consent agree to replace any arbitrator. The procedure of such replacement shall be in accordance with Rules 1, 5 and 6.

## Rule 8
## Incapacity or Resignation
## of Arbitrators

(1)  If an arbitrator becomes incapacitated or unable to perform the duties of his office, the procedure in respect of the disqualification of arbitrators set forth in Rule 9 shall apply.

(2)  An arbitrator may resign by submitting his resignation to the other members of the Tribunal and the Secretary-General. If the arbitrator was appointed by one of the parties, the Tribunal shall promptly consider the reasons for his resignation and decide whether it consents thereto. The Tribunal shall promptly notify the Secretary-General of its decision.

## Rule 9
## Disqualification of Arbitrators

(1) A party proposing the disqualification of an arbitrator pursuant to Article 57 of the Convention shall promptly, and in any event before the proceeding is declared closed, file its proposal with the Secretary-General, stating its reasons therefor.

(2) The Secretary-General shall forthwith:

    (a) transmit the proposal to the members of the Tribunal and, if it relates to a sole arbitrator or to a majority of the members of the Tribunal, to the Chairman of the Administrative Council; and

**Arbitration Rules**

(b)  notify the other party of the proposal.

(3)  The arbitrator to whom the proposal relates may, without delay, furnish explanations to the Tribunal or the Chairman, as the case may be.

(4)  Unless the proposal relates to a majority of the members of the Tribunal, the other members shall promptly consider and vote on the proposal in the absence of the arbitrator concerned. If those members are equally divided, they shall, through the Secretary-General, promptly notify the Chairman of the proposal, of any explanation furnished by the arbitrator concerned and of their failure to reach a decision.

(5)  Whenever the Chairman has to decide on a proposal to disqualify an arbitrator, he shall use his best efforts to take that decision within 30 days after he has received the proposal.

(6)  The proceeding shall be suspended until a decision has been taken on the proposal.

### Rule 10
### Procedure during a Vacancy
### on the Tribunal

(1)  The Secretary-General shall forthwith notify the parties and, if necessary, the Chairman of the Administrative Council of the disqualification, death, incapacity or resignation of an arbitrator and of the consent, if any, of the Tribunal to a resignation.

(2)  Upon the notification by the Secretary-General of a vacancy on the Tribunal, the proceeding shall be or remain suspended until the vacancy has been filled.

### Rule 11
### Filling Vacancies
### on the Tribunal

(1)  Except as provided in paragraph (2), a vacancy resulting from the disqualification, death, incapacity or resignation of an arbitrator shall be promptly filled by the same method by which his appointment had been made.

(2)  In addition to filling vacancies relating to arbitrators appointed by him, the Chairman of the Administrative Council shall appoint a person from the Panel of Arbitrators:

> (a)  to fill a vacancy caused by the resignation, without the consent of the Tribunal, of an arbitrator appointed by a party; or

**Arbitration Rules**

(b) at the request of either party, to fill any other vacancy, if no new appointment is made and accepted within 45 days of the notification of the vacancy by the Secretary-General.

(3) The procedure for filling a vacancy shall be in accordance with Rules 1, 4(4), 4(5), 5 and, *mutatis mutandis,* 6(2).

### Rule 12
### Resumption of Proceeding after Filling a Vacancy

As soon as a vacancy on the Tribunal has been filled, the proceeding shall continue from the point it had reached at the time the vacancy occurred. The newly appointed arbitrator may, however, require that the oral procedure be recommenced, if this had already been started.

## Chapter II
## Working of the Tribunal

### Rule 13
### Sessions of the Tribunal

(1) The Tribunal shall hold its first session within 60 days after its constitution or such other period as the parties may agree. The dates of that session shall be fixed by the President of the Tribunal after consultation with its members and the Secretary-General. If upon its constitution the Tribunal has no President because the parties have agreed that the President shall be elected by its members, the Secretary-General shall fix the dates of that session. In both cases, the parties shall be consulted as far as possible.

(2) The dates of subsequent sessions shall be determined by the Tribunal, after consultation with the Secretary-General and with the parties as far as possible.

(3) The Tribunal shall meet at the seat of the Centre or at such other place as may have been agreed by the parties in accordance with Article 63 of the Convention. If the parties agree that the proceeding shall be held at a place other than the Centre or an institution with which the Centre has made the necessary arrangements, they shall consult with the Secretary-General and request the approval of the Tribunal. Failing such approval, the Tribunal shall meet at the seat of the Centre.

(4) The Secretary-General shall notify the members of the Tribunal and the parties of the dates and place of the sessions of the Tribunal in good time.

Arbitration Rules

## Rule 14
### Sittings of the Tribunal

(1) The President of the Tribunal shall conduct its hearings and preside at its deliberations.

(2) Except as the parties otherwise agree, the presence of a majority of the members of the Tribunal shall be required at its sittings.

(3) The President of the Tribunal shall fix the date and hour of its sittings.

## Rule 15
### Deliberations of the Tribunal

(1) The deliberations of the Tribunal shall take place in private and remain secret.

(2) Only members of the Tribunal shall take part in its deliberations. No other person shall be admitted unless the Tribunal decides otherwise.

## Rule 16
### Decisions of the Tribunal

(1) Decisions of the Tribunal shall be taken by a majority of the votes of all its members. Abstention shall count as a negative vote.

(2) Except as otherwise provided by these Rules or decided by the Tribunal, it may take any decision by correspondence among its members, provided that all of them are consulted. Decisions so taken shall be certified by the President of the Tribunal.

## Rule 17
### Incapacity of the President

If at any time the President of the Tribunal should be unable to act, his functions shall be performed by one of the other members of the Tribunal, acting in the order in which the Secretary-General had received the notice of their acceptance of their appointment to the Tribunal.

## Rule 18
### Representation of the Parties

(1) Each party may be represented or assisted by agents, counsel or advocates whose names and authority shall be notified by that party to the Secretary-General, who shall promptly inform the Tribunal and the other party.

**Arbitration Rules**

(2) For the purposes of these Rules, the expression "party" includes, where the context so admits, an agent, counsel or advocate authorized to represent that party.

# Chapter III
# General Procedural Provisions

## Rule 19
## Procedural Orders

The Tribunal shall make the orders required for the conduct of the proceeding.

## Rule 20
## Preliminary Procedural Consultation

(1) As early as possible after the constitution of a Tribunal, its President shall endeavor to ascertain the views of the parties regarding questions of procedure. For this purpose he may request the parties to meet him. He shall, in particular, seek their views on the following matters:

> (a) the number of members of the Tribunal required to constitute a quorum at its sittings;
>
> (b) the language or languages to be used in the proceeding;
>
> (c) the number and sequence of the pleadings and the time limits within which they are to be filed;
>
> (d) the number of copies desired by each party of instruments filed by the other;
>
> (e) dispensing with the written or the oral procedure;
>
> (f) the manner in which the cost of the proceeding is to be apportioned; and
>
> (g) the manner in which the record of the hearings shall be kept.

(2) In the conduct of the proceeding the Tribunal shall apply any agreement between the parties on procedural matters, except as otherwise provided in the Convention or the Administrative and Financial Regulations.

## Rule 21
## Pre-Hearing Conference

(1) At the request of the Secretary-General or at the discretion of the President of the Tribunal, a pre-hearing conference between the Tri-

Arbitration Rules

bunal and the parties may be held to arrange for an exchange of information and the stipulation of uncontested facts in order to expedite the proceeding.

(2) At the request of the parties, a pre-hearing conference between the Tribunal and the parties, duly represented by their authorized representatives, may be held to consider the issues in dispute with a view to reaching an amicable settlement.

## Rule 22
## Procedural Languages

(1) The parties may agree on the use of one or two languages to be used in the proceeding, provided, that, if they agree on any language that is not an official language of the Centre, the Tribunal, after consultation with the Secretary-General, gives its approval. If the parties do not agree on any such procedural language, each of them may select one of the official languages (i.e., English, French and Spanish) for this purpose.

(2) If two procedural languages are selected by the parties, any instrument may be filed in either language. Either language may be used at the hearings, subject, if the Tribunal so requires, to translation and interpretation. The orders and the award of the Tribunal shall be rendered and the record kept in both procedural languages, both versions being equally authentic.

## Rule 23
## Copies of Instruments

Except as otherwise provided by the Tribunal after consultation with the parties and the Secretary-General, every request, pleading, application, written observation, supporting documentation, if any, or other instrument shall be filed in the form of a signed original accompanied by the following number of additional copies:

(a) before the number of members of the Tribunal has been determined: five;

(b) after the number of members of the Tribunal has been determined: two more than the number of its members.

## Rule 24
## Supporting Documentation

Supporting documentation shall ordinarily be filed together with the instrument to which it relates, and in any case within the time limit fixed for the filing of such instrument.

**Arbitration Rules**

## Rule 25
## Correction of Errors

An accidental error in any instrument or supporting document may, with the consent of the other party or by leave of the Tribunal, be corrected at any time before the award is rendered.

## Rule 26
## Time Limits

(1) Where required, time limits shall be fixed by the Tribunal by assigning dates for the completion of the various steps in the proceeding. The Tribunal may delegate this power to its President.

(2) The Tribunal may extend any time limit that it has fixed. If the Tribunal is not in session, this power shall be exercised by its President.

(3) Any step taken after expiration of the applicable time limit shall be disregarded unless the Tribunal, in special circumstances and after giving the other party an opportunity of stating its views, decides otherwise.

## Rule 27
## Waiver

A party which knows or should have known that a provision of the Administrative and Financial Regulations, of these Rules, of any other rules or agreement applicable to the proceeding, or of an order of the Tribunal has not been complied with and which fails to state promptly its objections thereto, shall be deemed—subject to Article 45 of the Convention—to have waived its right to object.

## Rule 28
## Cost of Proceeding

(1) Without prejudice to the final decision on the payment of the cost of the proceeding, the Tribunal may, unless otherwise agreed by the parties, decide:

> (a) at any stage of the proceeding, the portion which each party shall pay, pursuant to Administrative and Financial Regulation 14, of the fees and expenses of the Tribunal and the charges for the use of the facilities of the Centre;

> (b) with respect to any part of the proceeding, that the related costs (as determined by the Secretary-General) shall be borne entirely or in a particular share by one of the parties.

**Arbitration Rules**

(2) Promptly after the closure of the proceeding, each party shall submit to the Tribunal a statement of costs reasonably incurred or borne by it in the proceeding and the Secretary-General shall submit to the Tribunal an account of all amounts paid by each party to the Centre and of all costs incurred by the Centre for the proceeding. The Tribunal may, before the award has been rendered, request the parties and the Secretary-General to provide additional information concerning the cost of the proceeding.

# Chapter IV
# Written and Oral Procedures

## Rule 29
## Normal Procedures

Except if the parties otherwise agree, the proceeding shall comprise two distinct phases: a written procedure followed by an oral one.

## Rule 30
## Transmission of the Request

As soon as the Tribunal is constituted, the Secretary-General shall transmit to each member a copy of the request by which the proceeding was initiated, of the supporting documentation, of the notice of registration and of any communication received from either party in response thereto.

## Rule 31
## The Written Procedure

(1) In addition to the request for arbitration, the written procedure shall consist of the following pleadings, filed within time limits set by the Tribunal:

    (a) a memorial by the requesting party;

    (b) a counter-memorial by the other party;

and, if the parties so agree or the Tribunal deems it necessary:

    (c) a reply by the requesting party; and

    (d) a rejoinder by the other party.

(2) If the request was made jointly, each party shall, within the same time limit determined by the Tribunal, file its memorial and, if the parties so agree or the Tribunal deems it necessary, its reply; however,

**Arbitration Rules**

the parties may instead agree that one of them shall, for the purposes of paragraph (1), be considered as the requesting party.

(3) A memorial shall contain: a statement of the relevant facts; a statement of law; and the submissions. A counter-memorial, reply or rejoinder shall contain an admission or denial of the facts stated in the last previous pleading; any additional facts, if necessary; observations concerning the statement of law in the last previous pleading; a statement of law in answer thereto; and the submissions.

## Rule 32
## The Oral Procedure

(1) The oral procedure shall consist of the hearing by the Tribunal of the parties, their agents, counsel and advocates, and of witnesses and experts.

(2) Unless either party objects, the Tribunal, after consultation with the Secretary-General, may allow other persons, besides the parties, their agents, counsel and advocates, witnesses and experts during their testimony, and officers of the Tribunal, to attend or observe all or part of the hearings, subject to appropriate logistical arrangements. The Tribunal shall for such cases establish procedures for the protection of proprietary or privileged information.

(3) The members of the Tribunal may, during the hearings, put questions to the parties, their agents, counsel and advocates, and ask them for explanations.

## Rule 33
## Marshalling of Evidence

Without prejudice to the rules concerning the production of documents, each party shall, within time limits fixed by the Tribunal, communicate to the Secretary-General, for transmission to the Tribunal and the other party, precise information regarding the evidence which it intends to produce and that which it intends to request the Tribunal to call for, together with an indication of the points to which such evidence will be directed.

## Rule 34
## Evidence: General Principles

(1) The Tribunal shall be the judge of the admissibility of any evidence adduced and of its probative value.

(2) The Tribunal may, if it deems it necessary at any stage of the proceeding:

**Arbitration Rules**

115

> > (a) call upon the parties to produce documents, witnesses and experts; and
> >
> > (b) visit any place connected with the dispute or conduct inquiries there.

(3) The parties shall cooperate with the Tribunal in the production of the evidence and in the other measures provided for in paragraph (2). The Tribunal shall take formal note of the failure of a party to comply with its obligations under this paragraph and of any reasons given for such failure.

(4) Expenses incurred in producing evidence and in taking other measures in accordance with paragraph (2) shall be deemed to constitute part of the expenses incurred by the parties within the meaning of Article 61(2) of the Convention.

## Rule 35
### Examination of Witnesses and Experts

(1) Witnesses and experts shall be examined before the Tribunal by the parties under the control of its President. Questions may also be put to them by any member of the Tribunal.

(2) Each witness shall make the following declaration before giving his evidence:

"I solemnly declare upon my honour and conscience that I shall speak the truth, the whole truth and nothing but the truth."

(3) Each expert shall make the following declaration before making his statement:

"I solemnly declare upon my honour and conscience that my statement will be in accordance with my sincere belief."

## Rule 36
### Witnesses and Experts: Special Rules

Notwithstanding Rule 35 the Tribunal may:

> (a) admit evidence given by a witness or expert in a written deposition; and
>
> (b) with the consent of both parties, arrange for the examination of a witness or expert otherwise than before the Tribunal itself. The Tribunal shall define the subject of the examination, the time limit, the procedure to be followed and other particulars. The parties may participate in the examination.

### Rule 37
### Visits and Inquiries;
### Submissions of Non-disputing Parties

(1) If the Tribunal considers it necessary to visit any place connected with the dispute or to conduct an inquiry there, it shall make an order to this effect. The order shall define the scope of the visit or the subject of the inquiry, the time limit, the procedure to be followed and other particulars.  The parties may participate in any visit or inquiry.

(2) After consulting both parties, the Tribunal may allow a person or entity that is not a party to the dispute (in this Rule called the "non-disputing party") to file a written submission with the Tribunal regarding a matter within the scope of the dispute. In determining whether to allow such a filing, the Tribunal shall consider, among other things, the extent to which:

> (a) the non-disputing party submission would assist the Tribunal in the determination of a factual or legal issue related to the proceeding by bringing a perspective, particular knowledge or insight that is different from that of the disputing parties;
>
> (b) the non-disputing party submission would address a matter within the scope of the dispute;
>
> (c) the non-disputing party has a significant interest in the proceeding.

The Tribunal shall ensure that the non-disputing party submission does not disrupt the proceeding or unduly burden or unfairly prejudice either party, and that both parties are given an opportunity to present their observations on the non-disputing party submission.

### Rule 38
### Closure of the Proceeding

(1) When the presentation of the case by the parties is completed, the proceeding shall be declared closed.

(2) Exceptionally, the Tribunal may, before the award has been rendered, reopen the proceeding on the ground that new evidence is forthcoming of such a nature as to constitute a decisive factor, or that there is a vital need for clarification on certain specific points.

**Arbitration Rules**

117

# Chapter V
# Particular Procedures

### Rule 39
### Provisional Measures

(1) At any time after the institution of the proceeding, a party may request that provisional measures for the preservation of its rights be recommended by the Tribunal. The request shall specify the rights to be preserved, the measures the recommendation of which is requested, and the circumstances that require such measures.

(2) The Tribunal shall give priority to the consideration of a request made pursuant to paragraph (1).

(3) The Tribunal may also recommend provisional measures on its own initiative or recommend measures other than those specified in a request. It may at any time modify or revoke its recommendations.

(4) The Tribunal shall only recommend provisional measures, or modify or revoke its recommendations, after giving each party an opportunity of presenting its observations.

(5) If a party makes a request pursuant to paragraph (1) before the constitution of the Tribunal, the Secretary-General shall, on the application of either party, fix time limits for the parties to present observations on the request, so that the request and observations may be considered by the Tribunal promptly upon its constitution.

(6) Nothing in this Rule shall prevent the parties, provided that they have so stipulated in the agreement recording their consent, from requesting any judicial or other authority to order provisional measures, prior to or after the institution of the proceeding, for the preservation of their respective rights and interests.

### Rule 40
### Ancillary Claims

(1) Except as the parties otherwise agree, a party may present an incidental or additional claim or counter-claim arising directly out of the subject-matter of the dispute, provided that such ancillary claim is within the scope of the consent of the parties and is otherwise within the jurisdiction of the Centre.

(2) An incidental or additional claim shall be presented not later than in the reply and a counter-claim no later than in the counter-memorial, unless the Tribunal, upon justification by the party presenting the ancillary claim and upon considering any objection of the other party, authorizes the presentation of the claim at a later stage in the proceeding.

(3) The Tribunal shall fix a time limit within which the party against which an ancillary claim is presented may file its observations thereon.

## Rule 41
## Preliminary Objections

(1) Any objection that the dispute or any ancillary claim is not within the jurisdiction of the Centre or, for other reasons, is not within the competence of the Tribunal shall be made as early as possible. A party shall file the objection with the Secretary-General no later than the expiration of the time limit fixed for the filing of the counter-memorial, or, if the objection relates to an ancillary claim, for the filing of the rejoinder—unless the facts on which the objection is based are unknown to the party at that time.

(2) The Tribunal may on its own initiative consider, at any stage of the proceeding, whether the dispute or any ancillary claim before it is within the jurisdiction of the Centre and within its own competence.

(3) Upon the formal raising of an objection relating to the dispute, the Tribunal may decide to suspend the proceeding on the merits. The President of the Tribunal, after consultation with its other members, shall fix a time limit within which the parties may file observations on the objection.

(4) The Tribunal shall decide whether or not the further procedures relating to the objection made pursuant to paragraph (1) shall be oral. It may deal with the objection as a preliminary question or join it to the merits of the dispute. If the Tribunal overrules the objection or joins it to the merits, it shall once more fix time limits for the further procedures.

(5) Unless the parties have agreed to another expedited procedure for making preliminary objections, a party may, no later than 30 days after the constitution of the Tribunal, and in any event before the first session of the Tribunal, file an objection that a claim is manifestly without legal merit. The party shall specify as precisely as possible the basis for the objection. The Tribunal, after giving the parties the opportunity to present their observations on the objection, shall, at its first session or promptly thereafter, notify the parties of its decision on the objection. The decision of the Tribunal shall be without prejudice to the right of a party to file an objection pursuant to paragraph (1) or to object, in the course of the proceeding, that a claim lacks legal merit.

(6) If the Tribunal decides that the dispute is not within the jurisdiction of the Centre or not within its own competence, or that all claims are manifestly without legal merit, it shall render an award to that effect.

**Arbitration Rules**

## Rule 42
## Default

(1) If a party (in this Rule called the "defaulting party") fails to appear or to present its case at any stage of the proceeding, the other party may, at any time prior to the discontinuance of the proceeding, request the Tribunal to deal with the questions submitted to it and to render an award.

(2) The Tribunal shall promptly notify the defaulting party of such a request. Unless it is satisfied that that party does not intend to appear or to present its case in the proceeding, it shall, at the same time, grant a period of grace and to this end:

> (a) if that party had failed to file a pleading or any other instrument within the time limit fixed therefor, fix a new time limit for its filing; or
>
> (b) if that party had failed to appear or present its case at a hearing, fix a new date for the hearing.

The period of grace shall not, without the consent of the other party, exceed 60 days.

(3) After the expiration of the period of grace or when, in accordance with paragraph (2), no such period is granted, the Tribunal shall resume the consideration of the dispute. Failure of the defaulting party to appear or to present its case shall not be deemed an admission of the assertions made by the other party.

(4) The Tribunal shall examine the jurisdiction of the Centre and its own competence in the dispute and, if it is satisfied, decide whether the submissions made are well-founded in fact and in law. To this end, it may, at any stage of the proceeding, call on the party appearing to file observations, produce evidence or submit oral explanations.

## Rule 43
## Settlement and Discontinuance

(1) If, before the award is rendered, the parties agree on a settlement of the dispute or otherwise to discontinue the proceeding, the Tribunal, or the Secretary-General if the Tribunal has not yet been constituted, shall, at their written request, in an order take note of the discontinuance of the proceeding.

(2) If the parties file with the Secretary-General the full and signed text of their settlement and in writing request the Tribunal to embody such settlement in an award, the Tribunal may record the settlement in the form of its award.

## Rule 44
## Discontinuance at Request of a Party

If a party requests the discontinuance of the proceeding, the Tribunal, or the Secretary-General if the Tribunal has not yet been constituted, shall in an order fix a time limit within which the other party may state whether it opposes the discontinuance. If no objection is made in writing within the time limit, the other party shall be deemed to have acquiesced in the discontinuance and the Tribunal, or if appropriate the Secretary-General, shall in an order take note of the discontinuance of the proceeding. If objection is made, the proceeding shall continue.

## Rule 45
## Discontinuance for Failure
## of Parties to Act

If the parties fail to take any steps in the proceeding during six consecutive months or such period as they may agree with the approval of the Tribunal, or of the Secretary-General if the Tribunal has not yet been constituted, they shall be deemed to have discontinued the proceeding and the Tribunal, or if appropriate the Secretary-General, shall, after notice to the parties, in an order take note of the discontinuance.

# Chapter VI
# The Award

## Rule 46
## Preparation of the Award

The award (including any individual or dissenting opinion) shall be drawn up and signed within 120 days after closure of the proceeding. The Tribunal may, however, extend this period by a further 60 days if it would otherwise be unable to draw up the award.

## Rule 47
## The Award

(1) The award shall be in writing and shall contain:

    (a) a precise designation of each party;

    (b) a statement that the Tribunal was established under the Convention, and a description of the method of its constitution;

**Arbitration Rules**

(c) the name of each member of the Tribunal, and an identification of the appointing authority of each;

(d) the names of the agents, counsel and advocates of the parties;

(e) the dates and place of the sittings of the Tribunal;

(f) a summary of the proceeding;

(g) a statement of the facts as found by the Tribunal;

(h) the submissions of the parties;

(i) the decision of the Tribunal on every question submitted to it, together with the reasons upon which the decision is based; and

(j) any decision of the Tribunal regarding the cost of the proceeding.

(2) The award shall be signed by the members of the Tribunal who voted for it; the date of each signature shall be indicated.

(3) Any member of the Tribunal may attach his individual opinion to the award, whether he dissents from the majority or not, or a statement of his dissent.

## Rule 48
### Rendering of the Award

(1) Upon signature by the last arbitrator to sign, the Secretary-General shall promptly:

(a) authenticate the original text of the award and deposit it in the archives of the Centre, together with any individual opinions and statements of dissent; and

(b) dispatch a certified copy of the award (including individual opinions and statements of dissent) to each party, indicating the date of dispatch on the original text and on all copies.

(2) The award shall be deemed to have been rendered on the date on which the certified copies were dispatched.

(3) The Secretary-General shall, upon request, make available to a party additional certified copies of the award.

(4) The Centre shall not publish the award without the consent of the parties. The Centre shall, however, promptly include in its publications excerpts of the legal reasoning of the Tribunal.

## Rule 49
### Supplementary Decisions and Rectification

(1)  Within 45 days after the date on which the award was rendered, either party may request, pursuant to Article 49(2) of the Convention, a supplementary decision on, or the rectification of, the award. Such a request shall be addressed in writing to the Secretary-General. The request shall:

>        (a)  identify the award to which it relates;

>        (b)  indicate the date of the request;

>        (c)  state in detail:

>>              (i)  any question which, in the opinion of the requesting party, the Tribunal omitted to decide in the award; and

>>              (ii)  any error in the award which the requesting party seeks to have rectified; and

>        (d)  be accompanied by a fee for lodging the request.

(2)  Upon receipt of the request and of the lodging fee, the Secretary-General shall forthwith:

>        (a)  register the request;

>        (b)  notify the parties of the registration;

>        (c)  transmit to the other party a copy of the request and of any accompanying documentation; and

>        (d)  transmit to each member of the Tribunal a copy of the notice of registration, together with a copy of the request and of any accompanying documentation.

(3)  The President of the Tribunal shall consult the members on whether it is necessary for the Tribunal to meet in order to consider the request. The Tribunal shall fix a time limit for the parties to file their observations on the request and shall determine the procedure for its consideration.

(4)  Rules 46-48 shall apply, *mutatis mutandis,* to any decision of the Tribunal pursuant to this Rule.

(5)  If a request is received by the Secretary-General more than 45 days after the award was rendered, he shall refuse to register the request and so inform forthwith the requesting party.

**Arbitration Rules**

# Chapter VII
# Interpretation, Revision and Annulment of the Award

## Rule 50
## The Application

(1) An application for the interpretation, revision or annulment of an award shall be addressed in writing to the Secretary-General and shall:

(a) identify the award to which it relates;

(b) indicate the date of the application;

(c) state in detail:

(i) in an application for interpretation, the precise points in dispute;

(ii) in an application for revision, pursuant to Article 51(1) of the Convention, the change sought in the award, the discovery of some fact of such a nature as decisively to affect the award, and evidence that when the award was rendered that fact was unknown to the Tribunal and to the applicant, and that the applicant's ignorance of that fact was not due to negligence;

(iii) in an application for annulment, pursuant to Article 52(1) of the Convention, the grounds on which it is based. These grounds are limited to the following:

– that the Tribunal was not properly constituted;

– that the Tribunal has manifestly exceeded its powers;

– that there was corruption on the part of a member of the Tribunal;

– that there has been a serious departure from a fundamental rule of procedure;

– that the award has failed to state the reasons on which it is based;

(d) be accompanied by the payment of a fee for lodging the application.

(2) Without prejudice to the provisions of paragraph (3), upon receiving an application and the lodging fee, the Secretary-General shall forthwith:

(a) register the application;

(b) notify the parties of the registration; and

**Arbitration Rules**

(c) transmit to the other party a copy of the application and of any accompanying documentation.

(3) The Secretary-General shall refuse to register an application for:

(a) revision, if, in accordance with Article 51(2) of the Convention, it is not made within 90 days after the discovery of the new fact and in any event within three years after the date on which the award was rendered (or any subsequent decision or correction);

(b) annulment, if, in accordance with Article 52(2) of the Convention, it is not made:

(i) within 120 days after the date on which the award was rendered (or any subsequent decision or correction) if the application is based on any of the following grounds:

– the Tribunal was not properly constituted;

– the Tribunal has manifestly exceeded its powers;

– there has been a serious departure from a fundamental rule of procedure;

– the award has failed to state the reasons on which it is based;

(ii) in the case of corruption on the part of a member of the Tribunal, within 120 days after discovery thereof, and in any event within three years after the date on which the award was rendered (or any subsequent decision or correction).

(4) If the Secretary-General refuses to register an application for revision, or annulment, he shall forthwith notify the requesting party of his refusal.

### Rule 51
### Interpretation or Revision:
### Further Procedures

(1) Upon registration of an application for the interpretation or revision of an award, the Secretary-General shall forthwith:

(a) transmit to each member of the original Tribunal a copy of the notice of registration, together with a copy of the application and of any accompanying documentation; and

(b) request each member of the Tribunal to inform him within a specified time limit whether that member is willing to take part in the consideration of the application.

Arbitration Rules

(2)  If all members of the Tribunal express their willingness to take part in the consideration of the application, the Secretary-General shall so notify the members of the Tribunal and the parties. Upon dispatch of these notices the Tribunal shall be deemed to be reconstituted.

(3) If the Tribunal cannot be reconstituted in accordance with paragraph (2), the Secretary-General shall so notify the parties and invite them to proceed, as soon as possible, to constitute a new Tribunal, including the same number of arbitrators, and appointed by the same method, as the original one.

## Rule 52
### Annulment: Further Procedures

(1)  Upon registration of an application for the annulment of an award, the Secretary-General shall forthwith request the Chairman of the Administrative Council to appoint an *ad hoc* Committee in accordance with Article 52(3) of the Convention.

(2)  The Committee shall be deemed to be constituted on the date the Secretary-General notifies the parties that all members have accepted their appointment. Before or at the first session of the Committee, each member shall sign a declaration conforming to that set forth in Rule 6(2).

## Rule 53
### Rules of Procedure

The provisions of these Rules shall apply *mutatis mutandis* to any procedure relating to the interpretation, revision or annulment of an award and to the decision of the Tribunal or Committee.

## Rule 54
### Stay of Enforcement
### of the Award

(1)  The party applying for the interpretation, revision or annulment of an award may in its application, and either party may at any time before the final disposition of the application, request a stay in the enforcement of part or all of the award to which the application relates. The Tribunal or Committee shall give priority to the consideration of such a request.

(2)  If an application for the revision or annulment of an award contains a request for a stay of its enforcement, the Secretary-General shall, together with the notice of registration, inform both parties of the provisional stay of the award. As soon as the Tribunal or Committee is constituted it shall, if either party requests, rule within 30 days on

**Arbitration Rules**

whether such stay should be continued; unless it decides to continue the stay, it shall automatically be terminated.

(3) If a stay of enforcement has been granted pursuant to paragraph (1) or continued pursuant to paragraph (2), the Tribunal or Committee may at any time modify or terminate the stay at the request of either party. All stays shall automatically terminate on the date on which a final decision is rendered on the application, except that a Committee granting the partial annulment of an award may order the temporary stay of enforcement of the unannulled portion in order to give either party an opportunity to request any new Tribunal constituted pursuant to Article 52(6) of the Convention to grant a stay pursuant to Rule 55(3).

(4) A request pursuant to paragraph (1), (2) (second sentence) or (3) shall specify the circumstances that require the stay or its modification or termination. A request shall only be granted after the Tribunal or Committee has given each party an opportunity of presenting its observations.

(5) The Secretary-General shall promptly notify both parties of the stay of enforcement of any award and of the modification or termination of such a stay, which shall become effective on the date on which he dispatches such notification.

## Rule 55
## Resubmission of Dispute
## after an Annulment

(1) If a Committee annuls part or all of an award, either party may request the resubmission of the dispute to a new Tribunal. Such a request shall be addressed in writing to the Secretary-General and shall:

    (a) identify the award to which it relates;

    (b) indicate the date of the request;

    (c) explain in detail what aspect of the dispute is to be submitted to the Tribunal; and

    (d) be accompanied by a fee for lodging the request.

(2) Upon receipt of the request and of the lodging fee, the Secretary-General shall forthwith:

    (a) register it in the Arbitration Register;

    (b) notify both parties of the registration;

    (c) transmit to the other party a copy of the request and of any accompanying documentation; and

    (d) invite the parties to proceed, as soon as possible, to constitute a new Tribunal, including the same number of arbi-

**Arbitration Rules**

trators, and appointed by the same method, as the original one.

(3) If the original award had only been annulled in part, the new Tribunal shall not reconsider any portion of the award not so annulled. It may, however, in accordance with the procedures set forth in Rule 54, stay or continue to stay the enforcement of the unannulled portion of the award until the date its own award is rendered.

(4) Except as otherwise provided in paragraphs (1)–(3), these Rules shall apply to a proceeding on a resubmitted dispute in the same manner as if such dispute had been submitted pursuant to the Institution Rules.

# Chapter VIII
# General Provisions

## Rule 56
## Final Provisions

(1) The texts of these Rules in each official language of the Centre shall be equally authentic.

(2) These Rules may be cited as the "Arbitration Rules" of the Centre.