## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NEXTERA ENERGY GLOBAL HOLDINGS B.V. *and* NEXTERA ENERGY SPAIN HOLDINGS B.V., | |
| Petitioners, | Civil Action No. 19-cv-01618-TSC |
| v. | |
| KINGDOM OF SPAIN, | |
| Respondent. | |

## MOTION OF THE KINGDOM OF SPAIN TO DISMISS, OR STAY, PETITIONERS' PETITION TO ENFORCE ARBITRAL AWARD (<u>ORAL HEARING REQUESTED</u>)

Respondent the Kingdom of Spain ("Spain") hereby moves to dismiss Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V.'s Petition to Enforce Arbitral Award, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6). In the alternative, Spain requests an order staying these proceedings.   Pursuant to Local Civil Rule 7(m), counsel for Spain has conferred with counsel for Petitioners regarding Spain's alternative request for a stay; counsel for Petitioners has advised that Petitioners oppose Spain's non-dispositive request for a stay.

Pursuant to Local Civil Rule 7(f), Spain respectfully requests that the Court schedule an oral hearing on its motion.

This motion is based upon the accompanying Memorandum of Points and Authorities in Support of Motion to Stay, and Ultimately Dismiss, Petitioners' Petition to Enforce Arbitral Award, as well as the Declarations of Steffen Hindelang and Matthew J. Weldon, Esq., and the exhibits attached thereto, filed concurrently with this motion.

WHEREFORE, Spain respectfully requests that its motion to dismiss be granted or, in the alternative, that its request for a stay be granted.

Dated: October 11, 2019

Respectfully submitted,

By:    */s/ Brian D. Koosed*

Brian D. Koosed
D.C. Bar Number 1034733
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9204
Brian.Koosed@klgates.com

Michael DeMarco (*pro hac vice*)
New York Bar Number 4142477
1 Lincoln St.
Boston, MA 02111
(617) 951-9111
Michael.DeMarco@klgates.com

Matthew J. Weldon (*pro hac vice*)
New York Bar Number 4832408
599 Lexington Avenue
New York, New York 10022
(212) 536-4042
Matthew.Weldon@klgates.com

*Counsel for Respondent Kingdom of Spain*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 11, 2019, I caused a true and correct copy of the foregoing Memorandum of Law to be filed using the Court's Electronic Case Filing System ("ECF").   The document is available for review and downloading via the ECF system, and will be served by operation of the ECF system upon all counsel of record.

*/s/ Brian D. Koosed*
Brian D. Koosed

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEXTERA ENERGY GLOBAL HOLDINGS B.V. *and* NEXTERA ENERGY SPAIN HOLDINGS B.V., <br><br> Petitioners, <br><br> v. <br><br> KINGDOM OF SPAIN, <br><br> Respondent. | No. 19-cv-01618-TSC |

**THE KINGDOM OF SPAIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 5

    **I.**   **Summary Of Background Facts** ........................................................................ 6

        A.   Petitioners Invest In Spain And Are Subject To EU Law and Spain's Legal And Regulatory Regime ........................................................................................ 6

        B.   Petitioners Obtain An ICSID Award ........................................................... 7

        C.   Spain Files Its Application To Annul The Award And Enforcement of the Award is Stayed ............................................................................................................ 8

    **II.**   **Summary Of Laws, Treaties, And Relevant CJEU Rulings, Etc.** ........................... 9

        A.   The Foreign Sovereign Immunities Act. ...................................................... 9

        B.   The ICSID Convention ................................................................................ 10

        C.   The Energy Charter Treaty .......................................................................... 11

        D.   The Treaty on the Functioning of the European Union ............................... 11

        E.   *Slovack Republic v. Achmea B.V.* ............................................................... 12

        F.   The Application Of *Achmea* In The EU, The European Commission's Position, And The Joint Declaration ....................................................................................... 14

ARGUMENT .................................................................................................................... 15

    **I.**   **The Court Should Stay This Proceeding Pending Spain's Application To Annul the Award** ....................................................................................................................... 16

    **II.**   **The Petition Should Be Dismissed Pursuant To *Forum Non Conveniens*** ............... 19

        A.   The Court May Dismiss For *Forum Non Conveniens* Without Ruling On Its Jurisdiction ........................................................................................................ 19

        B.   *Forum Non Conveniens* Considerations Weigh Heavily In Favor Of Dismissal ....... 20

        C.   This Case Is Distinguishable From *TMR Energy* ....................................... 24

    **III.**   **If The Court Rules On Its Jurisdiction, The Petition Should Be Dismissed** .......... 29

        A.   No FSIA Exception Exists Because There Was Never A Valid Agreement To Arbitrate .......................................................................................................... 30

        B.   Even If A FSIA Exception Existed, The Award Would Not Be Entitled To Full Faith And Credit .......................................................................................................... 36

        C.   The Award Cannot Be Enforced Pursuant To The Foreign Sovereign Compulsion Doctrine And Act of State Doctrine ................................................................... 41

CONCLUSION ................................................................................................................. 44

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Abbott*,
   560 U.S. 1 (2010) ...................................................................................................32

*In re Air Crash Over Southern Indian Ocean*,
   352 F. Supp. 3d 19 (D.D.C. 2018) .................................................................19, 20

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*,
   138 S. Ct. 1865 (2018) ...........................................................................................32

*Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*,
   142 F. Supp. 3d 110 (D.D.C. 2015) .......................................................................18

*Chevron Corp. v. Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015) .............................................................................5, 9

*Creighton Ltd. v. Government of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ..........................................................................35, 36

*Dennis v. Edwards*,
   831 A.2d 1006 (D.C. Cir. 2003) .............................................................................21

*Eastern Airlines, Inc. v. Floyd*,
   499 U.S. 530 (1991) ................................................................................................32

*El Al Isr. Airlines, Ltd. v. Tseng*,
   525 U.S. 155 (1999) ................................................................................................32

*Eric T. v. National Medical Enterprises, Inc.*,
   700 A.2d 749 .............................................................................................................23

*Espana v. ABSG Consulting, Inc.*,
   334 F. App'x. 383 (2d Cir. 2009) ...........................................................................23

*European Cmty. v. RJR Nabisco Inc.*,
   764 F.3d 129 (2d Cir. 2014), *rev'd on other grounds* 136 S. Ct. 2090 (2016) .......................41

*Figuerido Ferraz E Engenharia de Projeto Ltda v. Republic of Peru*,
   665 F.3d 384 (2d Cir. 2011) ....................................................................................28

*Fitsock v. Kaiser Foundation Health Plan of Mid-States Inc.*,
  1990 WL 179942 (D.D.C. Oct. 30, 1990) ............................................................23

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) .........................................................................35

*Friends of All Children, Inc. v. Lockheed Aircraft Corp.*,
  717 F.2d 602 (D.C. Cir. 1983) .........................................................................22

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*,
  636 F.2d 1300 (D.C. Cir. 1980) .......................................................................41

*Gulf Oil Court v. Gilbert*,
  330 U.S. 501 (1947) ..........................................................................................22

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
  139 S. Ct. 524 (2019) ..................................................................................28, 36

*Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. v. The
  Kingdom of Spain*,
  No. 18-1753 (EGS) (Aug. 28, 2019) ...............................................................18

*Irwin v. World Wildlife Fund, Inc.*,
  448 F. Supp. 2d 29 (D.D.C. 2006) ...................................................................22

*Lafarge Canada, Inc. v. Bank of China*,
  2000 WL 1457012 (S.D.N.Y. 2000) .................................................................26

*Maritime Int'l Nominees Establishment v. Republic of Guinea*,
  693 F.2d 1094 (D.C. Cir. 1982) .......................................................................37

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
  2019 WL 4564533 (D.D.C. Sept. 18, 2019) ............................................... *passim*

*McLellan v. American Eurocopter, Inc.*,
  26 F. Supp. 2d 947 (S.D. Tex. 1998) ...............................................................27

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
  158 F. Supp. 2d 377 (S.D.N.Y. 2001), aff'd by 311 F.3d 488 (2d. Cir. 2002)......................26

*Nygard v. DiPaolo*,
  753 F. App'x 716 (11th Cir. 2018) ...................................................................23

*O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*,
  830 F.2d 449 (2d Cir. 1987).............................................................................41

iii

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Investment Securities*
  *LLC*,
  917 F.3d 85 (2d Cir. 2019) ................................................................................23

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ...............................................................................21, 22

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ...............................................................3, 26

*Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*,
  486 F.3d 1342 (D.C. Cir. 2007) ................................................................16

*Puligiencia Facility Esco SpA (PFE) v. Airgest SpA*,
  Case C-689/13 (Apr. 5, 2016) ...................................................................12

*Royal Wulff Ventures LLC v. Primero Mining Corp.*,
  No. 17-56367, 2019 WL 4419677 (9th Cir. Sept. 17, 2019) ...........................42, 43

*In re Sealed Case*,
  825 F.2d 494 (D.C. Cir. 1987) ..................................................................42

*Simon v. Republic of Hungary*,
  911 F.3d 1172 (D.C. Cir. 2018) .....................................................25, 26, 27

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ....................................................................................19

*Slovak Republic v. Achmea B.V.*,
  Case No. C-284/16 (Mar. 6, 2018) ............................................................. *passim*

*Stati v. Republic of Kazakhstan*,
  199 F. Supp. 3d 179 (D.D.C. 2016) ...........................................................34

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*,
  589 F.3d 417 (7th Cir. 2009) .....................................................................27

*Sumitomo Shoji Am., Inc. v. Avagliano*,
  457 U.S. 176 (1982) ....................................................................................31

*Taftnet v. Ukraine*,
  301 F. Supp. 3d 175 (D.D.C. 2018) ...........................................................36

*Telcordia Technologies, Inc. v. Telkom SA, Ltd.*,
  95 F. App'x 361 (D.C. Cir. 2004) .............................................................18

*Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar.*
   *Ass'n,*
   455 U.S. 691 (1982)..................................................................................................37, 38

*Van Cauwenberghe v. Biard,*
   486 U.S. 517 (1988)......................................................................................................21

*In re West Caribbean Crew Members,*
   2008 WL 11331752 (S.D. Fla. Oct. 1, 2008).................................................................11

*World Wide Minerals, LTD v. Republic of Kazakhstan,*
   296 F.3d 1154 (D.C. Cir. 2002) ..........................................................................35, 42, 43

## Statutes

22 U.S.C. § 1650(a) ......................................................................................................10, 27

22 U.S.C. § 1650a...............................................................................................................36

22 U.S.C. § 1650a(a)...........................................................................................................37

28 U.S.C. § 1605(a)(6)...................................................................................................9, 10, 30

28 U.S.C. § 1610.............................................................................................................24, 27

28 U.S.C. § 1610(a)(3)........................................................................................................27

## INTRODUCTION

The Kingdom of Spain ("Spain") submits this memorandum in support of its motion to stay this action, and to ultimately dismiss the Petition of two foreign parties, NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. ("Petitioners"). Petitioners ask this Court to enforce an award ("Award") rendered in a yet-to-be concluded arbitration conducted under the auspices of the International Centre for Settlement of Investment Disputes ("ICSID")[1] pursuant to an alleged arbitration agreement set out in the Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95 (the "ECT"), which is not an arbitration agreement between Spain and Petitioners as a matter of European Union ("EU") law.

Specifically, in early 2018, the Court of Justice of the European Union ("CJEU") ruled that Member States (such as Spain) are unable to enter into, and therefore never entered into, investor-state dispute settlement ("ISDS") mechanisms—arbitration agreements—with investors from other Member States (such as Petitioners), *i.e.*, in regard to intra-EU disputes, because such mechanisms are incompatible with EU law. *Slovak Republic v. Achmea B.V.*, Case No. C-284/16 (Mar. 6, 2018) ("*Achmea* Decision"). That is, the arbitration of intra-EU disputes through ISDS mechanisms violates the principle of primacy and the principle of autonomy, as reflected in Articles 267 and 344 of the Treaty on the Functioning of the European Union ("TFEU"), which invalidates any such alleged arbitration agreement because the TFEU and the Treaty on European Union ("TEU") (together, the "EU Treaties"), **take precedence over any other EU law, including other treaties, including the Energy Charter Treaty ("ECT").**

---

[1] ICSID was established in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 ("ICSID Convention").

While the *Achmea* case arose in relation to an arbitration agreement in a bilateral investment treaty (BIT), it has been widely read as applying to all intra EU ISDS arbitration agreements, and 22 Member States have unequivocally stated that the *Achmea* Decision applies to the ECT in a joint declaration ("Joint Declaration").   As a result, no arbitration agreement could have existed between Petitioners and Spain.   The European Commission has similarly submitted an *amicus brief* on behalf of the European Union in a case pending in this District, as well as in the underlying arbitration, explaining why Spain did not, and under EU law (the EU Treaties) could not, enter into a valid arbitration agreement with investors from other EU Member States in connection with the ECT.   *See* Declaration of Matthew J. Weldon dated October 11, 2019 ("Weldon Decl."), Ex. 3.   The EU's highest court and the EU are in accord.

Petitioners thus ask this Court to overlook the procedural posture of the arbitration resulting in the very Award Petitioners seek to enforce, ignore well-settled principles of *forum non conveniens* and international comity, disregard Spain's presumption of sovereign immunity, and ultimately exercise jurisdiction where none exists.   Because each such request is meritless, this action should be immediately stayed and, ultimately, the Petition should be dismissed, for the following reasons.

*First*, the Petition is premature as it seeks to enforce an Award that expressly cannot be enforced under the ICSID Rules of Procedure for Arbitration Proceedings ("ICSID Arbitration Rules").[2]   *See* Petition, ¶ 3 (DE 1) (based upon the premise that under the ICSID Convention awards "shall be enforced" under certain standards, requesting that the Court "enter an order recognizing and confirming the Award" and "enter judgment for NextEra."); ICSID Convention,

---

[2] ICSID Convention, Regulations and Rules, *available at* https://icsid.worldbank.org/en/Documents/icsiddocs/ICSID%20Convention%20English.pdf.

Article 52 (providing that if an applicant requests a stay of enforcement in its annulment application, "enforcement shall be stayed" until an annulment Committee has been constituted and rules on the request); ICSID Arbitration Rule 54.

On September 27, 2019, Spain filed its application for an annulment of the Award and requested a stay of enforcement, and on October 2, 2019, ICSID informed that the parties that the enforcement was of the Award was stayed in accordance with Article 52 of the ICSID Convention, and ICSID Arbitration Rule 54.   *See* Weldon Decl., Ex. 1.   Therefore, Spain respectfully requests that this Court decline Petitioners' inappropriate invitation to consider the merits of this matter, which may be changed, or fully mooted, by the pending ICSID annulment proceedings.   Indeed, Judge Boaburg recently stayed an ICSID award enforcement action brought against Spain under the ECT, explaining that judicial economy, the international character of the dispute, implications of comity, and the balancing of the hardships all favored a stay.   *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 2019 WL 4564533 (D.D.C. Sept. 18, 2019).   Each of those factors weighs equally heavily in favor of a stay in this case as well.

*Second*, in the event that the Award is not annulled entirely, the Petition should be dismissed under the doctrine of *forum non conveniens*, which "remains fully applicable in FSIA cases."   *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 100 (D.C. Cir. 2002). While the D.C. Circuit has opined on the use of *forum non conveniens* in enforcing awards under the New York Convention **after** a court has recognized its jurisdiction under FSIA, the question of whether a court may dismiss an enforcement petition under the ICSID Convention before and without ruling on its jurisdiction is an issue of first impression in this Circuit.

The core question at issue in this dispute is whether under EU law: (1) a valid arbitration

agreement existed between a Member State of the EU (Spain), on the one hand, and citizen investors of a different Member State of the EU (Petitioners, existing under the laws of the Netherlands), on the other, an intra-EU dispute, (2) regarding a dispute arising out a complex series of laws and regulations under Spanish law, (3) pursuant to a multilateral investment treaty to which the United States is not a party, (4) in light of the CJEU's recent decision in *Achmea* and a subsequent official Joint Declaration of 22 EU Member States.

Put differently, Petitioners are foreign plaintiffs with no connection to this District, asking the Court, as a matter of first impression in the world, to conduct a complex exercise in analyzing, interpreting, applying and even making EU law, in a dispute that bears no connection to the United States at all.   Moreover, given the clear guidance of the CJEU, Petitioners' choice of this forum constitutes the exact forum shopping that *forum non conveniens* intends to discourage and prevent.   Petitioner could have (and should have) applied for enforcement and recognition of the award in a European court, and the issues of this case could then be decided by the CJEU in the first instance.   Each of these three factors in the *forum non conveniens* analysis weighs in favor of dismissal, and each is magnified by the principle of international comity insofar as Petitioners ask this Court to make EU law that is inconsistent with the rulings of the EU's highest court, the Joint Declaration, and the stance of the EU as articulated by the European Union as *amicus curie*.   As such, it is difficult to imagine a case more appropriate for dismissal under the doctrine of *forum non conveniens*.

*Third*, to the extent that this Court elects not to dismiss the action pursuant to *forum non conveniens,* and reaches the question of its jurisdiction, it must conclude that no such jurisdiction exists.   Spain is entitled to a presumption of sovereign immunity, and this Court lacks subject matter jurisdiction unless Petitioners demonstrate the applicability of an exception to that

immunity.   To overcome the presumption, Petitioners circuitously argue that the Court has jurisdiction to enforce an arbitration award because the disputed arbitration award confers jurisdiction.   This ignores clear guidance from the D.C. Circuit, which unambiguously held that "[i]f there is no arbitration agreement to enforce, the District Court lacks jurisdiction over the foreign state and the action must be dismissed."   *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015).   As noted, no valid arbitration exists between Petitioners and Spain, and that ends the jurisdictional inquiry.   Indeed, the Court should avoid finding otherwise because it would violate the foreign sovereign compulsion doctrine and act of state doctrine.

## BACKGROUND

It is undisputed that "Spain is a foreign state within the meaning of the Foreign Sovereign Immunities Act."   Petition, ¶ 5 (DE 1).   Spain is also a Member State of the EU, while Petitioners "are private limited liability companies incorporated under the laws of the Netherlands," *i.e.*, nationals of an EU Member State.   *See id.*, ¶ 4.   In other words, Petitioners seek to enforce an arbitration agreement as citizens of one EU Member State against a different EU Member State.   To do so, Petitioners allege that the ECT constitutes an agreement by Spain to arbitrate claims with citizens of other EU Member States under the ICSID Convention.   As a result, and as in the *Masdar* case, this Petition invites the Court to wade into a "thorny dispute over the implications of multiple treaty obligations and a shifting legal landscape in the European Union."   2019 WL 4564533, at *1.   Therefore, this memorandum briefly summarizes the factual background and legal obligations related to these "treaty obligations and [] shifting legal landscape" before turning to the legal bases in support of Spain's motion, as more fully set out in the Declaration of Prof. Dr. Steffen Hindelang filed herewith (the "Hindelang Dec.").

## I.    Summary Of Background Facts

### A.    Petitioners Invest In Spain And Are Subject To EU Law and Spain's Legal And Regulatory Regime

Spain has long been committed to the development of renewable energy production in accordance with both its national interest and the EU's binding objectives to produce clean energy and reduce greenhouse gasses.  For example, Spain is a signatory to the 1992 Framework on Climate Change and the 1997 Kyoto Protocol, and has enacted national and regulatory regimes for its electricity sector to further those objectives.  Award (D.E. 1-4), ¶ 100.  As Nextera concedes, "the Spanish system is formed by different types of instruments, namely, the Spanish Constitution, Organic Laws, Ordinary Laws, Royal Decree-Laws ("**RDL**"), Royal-Decrees ("**RD**"), Ministerial Orders and Resolutions."  *Id.*, ¶ 99.

In that context, on November 27, 1998, Spain enacted Law 54/1997 on the Electricity Sector (the "**Electricity Law**"), which required, among other things, that "in order for renewable energy sources to cover at least 12% of Spain's total energy demand by the year 2010, a plan should be drawn up to promote renewable energies and whose objectives shall be taken into account in the setting of premiums." *Id.*, ¶¶ 102, 107 (citation omitted).  "The Electricity Law also required that every year, or when required by special circumstances, the Government would approve or amend a reference or average electricity tariff through a Royal Decree." *Id.* ¶ 109; *see also id.,* ¶¶ 110-67 (summarizing the complex legal and regulatory framework governing renewable energy under Spanish law).

Petitioners' involvement began in 2007, when a subsidiary of Petitioners entered into a series of agreements "relating to land easements, water rights, and the development of up to four 49.9 MW CSP plants in Extremadura."  *Id.*, ¶ 168.  Shortly thereafter, following the implementation of RD 661/2007 and in parallel with the international financial crisis that began

in 2008, Spain diligently evaluated the relationship between the income generated from granting access to electricity grids and the costs of the grids that the income was supposed to cover. *See id.*, ¶ 118. Similarly, on April 30, 2009, Spain adopted RDL 6/2009, the Preamble of which "observed . . . the growing tariff deficit in Spain" and explicitly stated its objective to "control costs and reduce the deficit." *Id.,* ¶ 128. Spain enacted various legislation and regulation from 2009 forward to facilitate that objective. *Id.*, ¶¶ 130-61. Petitioner alleges that these laws and regulations negatively and unfairly impacted Petitioners' business and violated the ECT, and in 2015 Petitioners were placed in mandatory liquidation. *Id.*, ¶¶ 179-80.

      B.  <u>Petitioners Obtain An ICSID Award</u>

On May 12, 2014, Petitioners initiated an ICSID arbitration. Therein, Petitioners alleged that (1) Article 10.1 of the ECT imposed an obligation on Spain to protect Petitioners' legitimate and reasonable expectations, maintain reasonable stability in its legal framework, act in good faith, act proportionately, and respect due process; (2) Spain's revisions to its electricity regime violated those obligations; and (3) Article 26 of the ECT contains an offer to arbitrate between Spain and Petitioners. *Id.*, ¶¶ 6, 393, 412-54. On September 9, 2015, Spain submitted a Memorial on Jurisdiction and Request for Bifurcation, arguing that the Tribunal lacked jurisdiction because, among other reasons, there was no agreement to arbitrate between Spain and Petitioners. *See id.*, ¶ 15.

On November 14, 2014, the European Commission ("the **EC**") filed an application for Leave to Intervene as a Non-Disputing Party. *Id.*, ¶ 54. The requested leave was granted, and the EC submitted its written submission on September 5, 2016. *Id.*, ¶ 65.

Then, on May 16, 2018, "the EC submitted a communication stating that 'in case the Tribunal would deem that useful for its deliberations, the Commission would be available to

update its written observations in light of the recent judgment of the European Court of Justice in Case C-284/16 *Achmea v. Slovak Republic*, and in particular to set out its view of the consequences of that judgment for pending arbitration cases based on the Energy Charter Treaty." *Id.*, ¶ 87 (emphasis omitted).   However, the Tribunal refused to accept a submission from the EC on the significance of *Achmea.   Id.*, ¶ 89.

On March 12, 2019, the Tribunal denied Spain's request for bifurcation, issued a decision on jurisdiction and liability, and ruled in Petitioners' favor in both regards.   *See id.*

C.   Spain Files Its Application To Annul The Award And Enforcement of the Award is
Stayed

On September 26, 2019 Spain filed a timely application to annul the award before an ICSID *ad hoc* Committee pursuant to Article 52(1)(b) of the ICSID Convention.   Among other things, Spain argued that the award should be annulled because the Tribunal manifestly exceeded its powers because no jurisdiction existed.

Specifically, Spain challenged the Tribunal's jurisdiction for several reasons, most important among them implicating the core issue that this Court would need to resolve if it reached the question of its own jurisdiction: there is no valid arbitration agreement between Spain and Petitioners (the so-called intra-EU objection).   Notably, Spain objects to the Award as it is not based upon a correct application of public international law, focused on a myopic application of pure treaty law rather than a proper application of customary international law rules of treaty interpretation, and in any event, even if Article 26 of the ECT would be interpreted to encompass intra-EU disputes, the Award does not address the conflict between such an interpretation and the EU Treaties (EU law).   As Spain pointed out, the interpretation of Article 26 advanced by Petitioners would undermine the principle of the primacy of EU law, *i.e.*, the very foundation of the validity of the EU.

8

The Committee has not yet been constituted and, pursuant to Article 52(5), enforcement of the Award is automatically stayed. *See* Weldon Decl., Ex. 1.

## II.    Summary Of Laws, Treaties, And Relevant CJEU Rulings, Etc.

Petitioners seek to enforce an ICSID Award purportedly issued under the ECT, which Spain now moves to dismiss as, among other deficiencies, lacking jurisdiction under the FSIA pursuant to numerous authorities of foreign law.   These various legal regimes are summarized briefly below.

### A.  The Foreign Sovereign Immunities Act.

"As a general matter, the FSIA grants foreign states immunity from the jurisdiction of the courts of the United States." *Chevron*, 795 F.3d at 203 (citing 28 U.S.C. § 1604).   "In enacting the FSIA, however, Congress enumerated several exceptions to this jurisdictional restriction." *Id.*   "**These exceptions provide the sole basis for obtaining jurisdiction over a foreign state in federal court.**" *Id.* (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989) (quotations omitted) (emphasis added).

As such, because Spain is a foreign sovereign, the only basis for obtaining jurisdiction over Spain is the exceptions set forth in the FSIA, subject to limited exceptions.   To that end, Petitioners attempt to invoke 28 U.S.C. § 1605(a)(6), which provides:

> A foreign state shall not be immune from jurisdiction of courts of the United States or of the States in any case in which the action is brought . . . to confirm an award made pursuant to an **agreement to arbitrate** if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

*See* Petition, ¶ 7 (emphasis added) (DE 1).   Petitioners correctly note that the ICSID is

one such treaty.[3]  As detailed below, however, Petitioners overlook the threshold requirement that an agreement to arbitrate must exist for Section 1605(a)(6) to be implicated.

    B.  The ICSID Convention

The ICSID Convention is an international treaty establishing a mechanism for resolving investment disputes and creating a self-contained arbitration regime separate and apart from the regimes which govern other international arbitration agreements and awards.  *See* Christoph Schreuer, The ICSID Convention: A Commentary, 1103, 1154 (2d Ed. 2009).   While Article 54 of the ICSID Convention prohibits contracting states from reviewing awards on the merits, Article 55 unequivocally states that "nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to the immunity of that State or of any foreign State from execution."   The United States further bolstered these express terms when it implemented the ICSID Convention in 1966 by explicitly noting that the Federal Arbitration Act "shall not apply to enforcement of awards rendered pursuant to the [ICSID] Convention."   22 U.S.C. § 1650(a).   During congressional hearings for the enactment of this Section, a member of the United States delegation to the ICSID Convention testified:

> As to whether [a district court] has jurisdiction over a party, there is nothing in the convention that will change the defense of sovereign immunity.  If somebody wants to sue Jersey Standard in the United States, on an award, no problem.  If somebody wants to sue Peru or the Peruvian Oil Institute, [] it would depend on whether in the particular case that entity would or would not be entitled to sovereign immunity.

*Convention on the Settlement of Investment Disputes: Hearing on S. 3498 Before the Subcomm. on Int'l Orgs. & Movement of the H. Comm. On Foreign Affairs, Hearing of the*

---

[3]  Petitioners also incorrectly attempt to assert a second basis for jurisdiction by alleging that "Spain's accession to the ICSID Convention operates to waive immunity from an action to recognize an award governed by the ICSID Convention."   *Id.*, ¶ 8.

*House Subcomm.,* 89th Cong. 18 (Jan 15, 1966).   Accordingly, the FSIA and ICSID co-exist and both remain applicable to this dispute.

    C.  <u>The Energy Charter Treaty</u>

    Petitioners purport to invoke the ICSID Convention by alleging that an agreement to arbitrate between Spain and Petitioners arises out of the ECT.   Pursuant to its Article 2, the purpose of the ECT is to "establish[] a legal framework in order to promote long-term cooperation in the energy field, based on complementarities and mutual benefits."   Article 26 of the ECT, in turn, provides for the resolution of disputes between investors of one contracting party, on the one hand, and another contracting party, on the other, before an ICSID Tribunal through an arbitral process that is subject to certain conditions.   Article 26(6) provides one such condition and requires that the tribunal be bound by "all applicable rules and principles of international law."   Because EU law is a product of international treaties among EU Member States, and because EU law governs the relationship between Spain and Petitioners, the "applicable rules and principles" under Article 26(6) must include and incorporate EU law.   *See* Hindelang Dec., ¶¶ 11-14.

    D.  <u>The Treaty on the Functioning of the European Union</u>

    The EU law at issue in this dispute relates to the interpretation of the TFEU, the significance of which cannot be overstated.   *Id.*, ¶ 12.   The TFEU, among other things, establishes the CJEU, which, "pursuant to several treaties executed by the Member States, is the highest court in the EU."   *In re West Caribbean Crew Members*, 2008 WL 11331752, at *4 (S.D. Fla. Oct. 1, 2008).   Generally, EU law and the CJEU's interpretations of EU law have supremacy over the Member States' law.   *Id.*; Hindelang Decl. ¶¶ 11-13.

    Pursuant to Article 267 of the TFEU, the highest court of each EU Member State

is required to refer questions of EU law to the CJEU for a preliminary ruling.   A "judgment in which the [CJEU] gives a preliminary ruling is binding," and national courts are "required to do everything necessary to ensure that interpretation of EU law is applied." *Puligiencia Facility Esco SpA (PFE) v. Airgest SpA*, Case C-689/13 (Apr. 5, 2016); Hindelang Decl. ¶ 32.   Likewise, Article 344 explicitly provides that "Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for therein."   In other words, **Member States are expressly prohibited from submitting disputes to arbitral tribunals that might interpret or otherwise apply EU law outside of the EU judicial system**. Hindelang Dec., ¶¶ 27-34.

E.   *Slovack Republic v. Achmea B.V.*

In 2018, the CJEU issued a ruling as to whether an investment treaty between the Netherlands and the Slovak Republic contained a valid agreement to arbitrate and, as a result, whether a valid arbitration agreement existed between a Member State of the EU (Slovakia) and Achmea, a company incorporated under the laws of another Member State (The Netherlands).   *Slovak Republic v. Achmea B.V.*, Case No. C-284/16 (Mar. 6, 2018); Hindelang Dec., Ex. 46.   Under Article 8 of the relevant investment treaty, each contracting state consented to arbitration with investors of the other contracting state, and called upon the arbitral tribunal to rely on the law in force of the contracting state concerned; the provisions of this Agreement, and other relevant agreements between the contracting parties; the provisions of special agreements relating to the investments; and "general principles of international law."   *Id.*, ¶ 4.   The Tribunal rejected Slovakia's jurisdictional objection and issued an award in favor of Achmea.   *Id.*, ¶ 12.   Slovakia

applied to have the award set aside by German courts on the ground that the alleged arbitration agreement between Slovakia and Achmea was incompatible with Articles 267 and 344 of the TFEU. *Id.*, ¶¶ 5, 12, 14. After the case reached Germany's highest court of civil jurisdiction on appeal, that court referred the matter to the CJEU for a preliminary ruling as to whether Articles 267 and 344 of the TFEU precluded the enforcement of an arbitration agreement between an EU Member State, on the one hand, and the investor of an EU Member State, on the other. *Id.*, ¶ 23.

The CJEU began its analysis by emphasizing that "according to settled case-law of the [CJEU], an international agreement cannot affect the allocation of powers fixed by the [EU] Treaties or, consequently, the autonomy of the EU legal system." *Id.*, ¶ 32 (citations omitted). Likewise, "the autonomy of EU law with respect both to the Member States and to international law" is justified by EU law's "primacy over the laws of the Member States, and by the direct effect of a whole series of provisions which are applicable to their nationals and to the Member States themselves." *Id.,* ¶ 33.

Accordingly, the CJEU held that "it is for the national courts and tribunals and the [CJEU] to ensure the full application of EU law in all Member States and to ensure judicial protection of the rights of individuals under that law." *Id.*, ¶ 36. Crucially, the CJEU further held that the arbitral tribunal constituted pursuant to an investment treaty involving a Member State was required to interpret and apply EU law,[4] but as it was not part of the EU judicial system, it was prohibited from interpreting and applying EU law in a binding

---

[4] Due to the nature of EU law, the CJEU found that for disputes the arbitral tribunal was called on to resolve under the BIT, it was liable to relate to the interpretation or application of EU law because it would need to take account in particular of the law in force of the contracting party concerned and other relevant agreements between the contracting parties. *Id.*, ¶¶ 39-42.

fashion.  *Id.*, ¶¶ 45-46, 48-49; Hindelang Decl. ¶ 43.   As such, the CJEU concluded:

> Articles 267 and 344 [of the] TFEU must be interpreted **as precluding** a provision in an international agreement concluded between Member States . . . under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept.

*Id.*, ¶ 62.   The CJEU thus held that purported such purported arbitration agreements between EU Member States and nationals of other EU Member States are unenforceable, and thus that no valid arbitration agreement exists between those parties (i.e., intra-EU disputes).

### F.   The Application Of *Achmea* In The EU, The European Commission's Position, And The Joint Declaration

Following the *Achmea* Judgment, the European Commission explicitly acknowledged that investors in Member States may not "have recourse to arbitration tribunals established … under the Energy Charter Treaty." *Communication from the Commission to the European Parliament and the Council*: *Protection of intra-EU investment* at 26, COM (2018) 547 final (July 19, 2018) ("EC Communication 547"); Hindelang Decl. ¶ 56.

Moreover, 22 Members of the EU, including Spain and the Netherlands (Petitioners' home State), confirmed that an arbitration agreement cannot be formed under Article 26 of the ECT between an EU Member State and a national of another Member State.   *See Declaration of the Representatives of the Governments of the Member States on the Enforcement of the Judgment of the Court of Justice in* Achmea *and on Investment Protection in the European Union* (Jan. 15, 2019) ("Joint Declaration") at 1; Hindelang Dec., Ex. 52).   In reaching this conclusion, the EU Member States explicitly explained in the Joint Declaration: "For the Energy Charter Treaty, its systemic interpretation in conformity with the [EU] Treaties precludes intra-EU

investor-State arbitration." *Id.*, n.2.

## ARGUMENT

Despite the unambiguous holding by Europe's highest court, and the Joint Declaration, that no arbitration could exist between Spain and Petitioners as a matter of law, Petitioners "jumped across the Atlantic and filed the present action here."  *Masdar*, 2019 WL 4564533, at *2.[5]   The Court must send Petitioners back "across the Atlantic" for three reasons.

First, this action should be stayed in the interests of judicial economy, in light of the international nature of the issues involved, and because the balance of the hardships overwhelmingly favors a stay.

Second, if the stay is denied or when the stay is lifted, the Petition should be dismissed pursuant to the doctrine of *forum non conveniens.*  Petitioners are foreign plaintiffs with no connection to this district, so their choice of forum should be granted little to no weight.   On the other hand, this dispute hinges on a complex resolution of EU law as applied to international treaties, including the TFEU.   All private and public factors favor transfer, and both Spanish and Dutch courts are reasonable alternative forums, and can refer questions of EU law to the CJEU, as required under the EU Treaties.[6]

Third, and finally, in the event that the court declines to stay this proceeding, and opts not

---

[5] Petitioners undoubtedly knew that the 120-day period by which Spain must file for annulment had not lapsed when it filed its petition, and knew or should have known that Spain would move to annul based on Spain's jurisdictional arguments before the Tribunal and motions to annul each and every other award that tribunals lacking jurisdiction had previously issued against Spain.
[6] As detailed below, *TMR Energy Ltd. v. State Property Fund of Ukraine* is fully distinguishable. 411 F.3d 296 (D.C. Cir. 2005).   The courts in *TMR* and its progeny recognized jurisdiction under the FSIA and then held that *forum non conveniens* was not an available defense against the enforcement of valid arbitration awards under the New York Convention.   Moreover, even if *TMR* did apply to the unique facts of this case, *Masdar* would be out of sync with the law in other circuits and ripe for clarification from the Supreme Court.

to dismiss the case pursuant to *forum non conveniens*, the Petition should still be dismissed because the court lacks jurisdiction under the FSIA. The law is clear that an exception to sovereign immunity exists only if a valid arbitration agreement exists, and EU law is unambiguous that no valid arbitration agreement ever existed between Spain and Petitioners.

**I.     The Court Should Stay This Proceeding Pending Spain's Application To Annul The Award**

While courts generally begin by assuring themselves of jurisdiction, "in rare cases . . . they may avoid a jurisdictional analysis and render a decision on a non-jurisdictional ground." *Masdar* 2019 WL 4564533, at *3. In other words, "certain non-merits, nonjurisdictional issues may be addressed preliminarily, because jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quotations omitted). "The stay of a petition to enforce an arbitration award is one such threshold issue that the Court may properly consider before jurisdiction." *Masdar*, 2019 WL 4565333, at *3. "Indeed, without first resolving outstanding questions about their jurisdiction, both the D.C. Circuit and other courts in this district have determined it appropriate to stay such a petition where there were ongoing proceedings related to the award in a foreign jurisdiction." *Id.* (citing cases).

The procedural posture in *Masdar* is virtually identical to this case: there, as here, Spain sought an annulment of the Tribunal's award, purportedly issued pursuant to the ECT, before an ICSID Committee, which resulted in an automatic stay of enforcement of the award. *Id.*, at *2. Against that backdrop, the *Masdar* court began its analysis by acknowledging the "unique concerns" posed by motions to stay arbitral enforcement:

> On the one hand, such a motion may implicate federal court's obligations under international treaties to promptly recognize these awards, but on the other hand, premature enforcement risks conflicting results and a consequent offense to

international comity.

*Id.*, at \*3 (citing *Europcar Italia*, *S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998)).   With those competing interests in mind, the *Masdar* court granted the stay for three reasons. "First, given the circumstances of the case, considerations of judicial economy favor[ed] a stay" because "more expensive litigation involving more complex issues would result should this Court confirm an award that the ICSID committee annuls or modifies   The Court explained that judicial economy would favor a stay even if the Committee denied the request for annulment altogether, concluding that "[a]t bottom, litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interest."   *Id.*

Second, "the international character of this action and the intricacies of the issues involved support[ed] the issuance of a stay." *Id.*, at \*4.   In this regard, the court noted that "interests of comity, judicial economy, and the convenience of the parties and the courts . . . are especially strong where a foreign parallel proceeding is ongoing . . . and there is a possibility that the award will be set aside, since a court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings."   *Id.*   Moreover, these "considerations of comity [were] particularly resonant . . . given that resolving this case [would mandate] addressing a conflict between decades-old treaties and newly minted EU case law."   *Id.*

Finally "the balancing of the hardships to each party favor[ed Spain because Spain would] undeniably be burdened by having to attack the validity of the arbitral award in two forums, and perhaps in ultimately having to recover assets seized during this action should the annulment proceeding go its way [and this proceeding go Petitioner's way]."   *Id.* at \*5.

While *Masdar* is the most recent court to "stay the instant case in the interest of avoiding cross-border, piecemeal litigation," it is far from the first to do so.   For example, in *Hulley*

*Enterprises Ltd. v. The Russian Federation*, Chief Judge Howell explained that the "Supreme Court has expressly held that a court may, for the sake of efficiency, decline to determine its subject matter jurisdiction prior to deciding a 'threshold, nonmerits issue' presented by a case." 211 F. Supp. 3d 269, 279-80 (D.D.C. 2016) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007)).   Chief Judge Howell also cited to D.C. Circuit guidance regarding the importance of annulment proceedings:

> Primary jurisdiction courts may annul an award on grounds inconsistent with the laws of a secondary jurisdiction country, but nonetheless that annulment decision may not be routinely second-guessed, and when a competent foreign court has nullified an arbitration award, United States courts should not go behind that decision absent extraordinary circumstances.  Consequently, when an arbitration award was lawfully nullified by the country in which the award was made, parties seeking to enforce the award have no cause of action in the United States to seek enforcement of the award.

*Id* at 282. (citing *E.S.P. v. Electranta S.P. (TermoRio II)* 487 F.3d 928, 937 (D.C. Cir. 2007)) (internal citations omitted).   Accordingly, the court refused the invitation to rule on its jurisdiction before the annulment proceedings concluded.   *Id.; see also Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 114 (D.D.C. 2015) (granting stay pending annulment proceedings); *Id.*, Order, No. 14-cv-1616-RBW (D.D.C. January 5, 2016), Weldon Decl., Ex. 4 (ordering the parties to submit entirely new, rather than supplemental, briefs on the merits following the annulment decision because "prior submissions between the parties may contain information that is no longer relevant to this case"); *Telcordia Technologies, Inc. v. Telkom SA, Ltd.*, 95 F. App'x   361, 362 (D.C. Cir. 2004) (affirming district court's decision to stay enforcement of arbitral award pending appeal of decision to high court in South Africa); *Infrastructure Services Luxembourg S.A.R.L. and Energia Termosolar B.V. v. The Kingdom of Spain*, No. 18-1753 (EGS) (Aug. 28, 2019) ( Finding that the pendency of annulment proceedings and the provision stay entered by ICSID warranted saying

18

the enforcement action).

## II.    The Petition Should Be Dismissed Pursuant To *Forum Non Conveniens*

Despite (1) a pending annulment proceeding, (2) the CJEU's ruling in *Achmea*, and (3) the reaction to that case by various European courts and institutions and the EU Member States, Petitioners nevertheless seeks to enforce an award premised on the notion that an EU Member State can validly arbitrate a dispute with an investor from a different Member State under Article 26 of the ECT.   As a result, Petitioners ask this Court to evaluate complex issues of foreign law, as well as the relationship between that law, international treaties, and FSIA, and reach a conclusion implicating the governing document of the EU and EU primacy, all without any legitimate connection to this forum.   Spain respectfully submits that this Court should decline that invitation, and dismiss this action pursuant to *forum non conveniens*, for three reasons.

First, it is well recognized that the Court can dismiss for *forum non conveniens* without ruling on its jurisdiction under FSIA.   Second, under traditional *forum non conveniens* analysis, all factors favor dismissal.   Finally, neither *TMR Energy* nor any other authority precludes such a dismissal.

### A.   The Court May Dismiss For *Forum Non Conveniens* Without Ruling On Its Jurisdiction

Just as courts can properly grant a stay without ruling on its jurisdiction, so too can the Court dismiss the matter entirely pursuant to *forum non conveniens*.   *See Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007).   As the Supreme Court explained:

> A *forum non conveniens* dismissal denies audience to a case on the merits; it is a determination that the merits should be adjudicated elsewhere . . . A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.

*Id.*, at 432; *see also In re Air Crash Over Southern Indian Ocean*, 352 F. Supp. 3d 19, 35 (D.D.C.

2018) ("[I]t is well established that a court may opt to decide a *forum non conveniens* motion before considering any jurisdictional issues.")

Accordingly, in *Dahman v. Embassy of Qatar*, the court dismissed an action pursuant to *forum non conveniens* before ruling on whether jurisdiction existed under an FSIA exception. 364 F. Supp. 3d 1, 4 (D.D.C. 2019).   In so doing, the Court explained that dismissal before ruling on jurisdiction was appropriate because the "*forum non conveniens* considerations do weigh heavily in favor of dismissal, while the jurisdictional question—namely, whether an exception to the Foreign Sovereign Immunities Act applies here to allow the suit to proceed—is a much closer question." *Id.*   Likewise, in *Azima v. RAK Investment Authority*, the D.C. Circuit felt that dismissal under *forum non conveniens* was so appropriate that it dismissed the case without remanding it to the District Court and without opining on whether jurisdiction existed under the FSIA.   926 F.3d 870, 880 (D.C. Cir. 2019).

B.   *Forum Non Conveniens* Considerations Weigh Heavily In Favor Of Dismissal

To dismiss based on *forum non conveniens*, "[t]he movant bears the burden of showing that (1) there is an available and adequate forum, and (2) the balance of the various public and private interest factors indicates that maintaining the case in the current forum is comparatively inconvenient."   *Southern Indian Ocean*, 352 F. Supp. 3d at 35.

As to the first requirement, a "foreign forum is available and adequate when it provides the plaintiff with some remedy, even if the damages available to the plaintiff would be less than those available in the United States, and even if certain theories of liability are not recognized." *Id.* at 36.[7]   Here, Petitioners cannot allege any shortage of available and adequate forums

---

[7] "On the other hand, where the forum could not award any relief to a plaintiff at all, courts will not find that the forum is adequate."   *Id.*   However, it would take remarkable mental gymnastics for Petitioners to argue that no adequate forum exists because all other forums would correctly apply EU law and rule that no valid arbitration

because Article 54 of the ICSID Convention provides that an ICSID Award can be confirmed by

any Contracting State.   Such Contracting States include, but are not limited to, the country where

the events occurred (Spain) and the country in which Petitioners are based (the Netherlands).

As to the balance of public and private factors,

the public interest factors for consideration include: (1) administrative difficulties caused by local court dockets congested with foreign litigation; (2) the local interest in having localized controversies decided at home; (3) the unfairness of imposing the burden of jury duty on citizens of the forum having no relation to the litigation; and (4) the avoidance of unnecessary problems in conflict of laws in the interpretation of the laws of another jurisdiction.

*Dennis v. Edwards*, 831 A.2d 1006, 1010-11 (D.C. Cir. 2003).   The private interest factors

include:

(1) the relative ease of access to proof; (2) the availability of compulsory process to secure the attendance of unwilling witnesses and the cost of securing the attendance of willing witnesses; (3) other practical problems related to the ease, expense, and expedition of trial; (4) any evidence that the choice of forum was made to harass defendant; and (5) the relative advantages or disadvantages to a fair trial.

*Id.,* at 1013.   In balancing these factors, "the district court is accorded substantial flexibility in

evaluating a *forum non conveniens* motion, and each case turns on its facts."   *Van Cauwenberghe*

*v. Biard*, 486 U.S. 517, 529 (1988).

In weighing those factors, four considerations are paramount.   First, Petitioners are

foreign parties with no connection to this District, and as such the presumption in favor of their

selected forum is significantly diminished.   *See, e.g., Piper Aircraft Co.*, 454 U.S. at 255.

Accordingly, in *Gulf Restoration Network v. Jewell*, the plaintiff's "choice of forum [was]

afforded *some* deference because of the District of Columbia's meaningful ties to the Project, but

not 'substantial deference' because [Plaintiff] is not a resident in this forum."   87 F. Supp. 3d

---

agreement exists, only to then argue that this Court has jurisdiction pursuant to a FSIA exception because a valid arbitration agreement does exist.

303, 312 (D.D.C. 2015) (emphasis in original).    The Court then dismissed the case pursuant to *forum non conveniens.*

Here, Petitioners are neither residents in this forum nor able to point to any meaningful ties to the forum, and minimal weight should be afforded.    *Id.; see also Friends of All Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 605 (D.C. Cir. 1983) (noting that "the district court was mistaken in supposing that a foreign plaintiff's choice of a United States forum is entitled to so much deference"); *Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 33 (D.D.C. 2006) ("[P]laintiff's choice of forum . . . is entitled to less deference if she is a citizen and resident of a foreign state.").

Second, "[t]he doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law."    *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981).    "As [the Supreme Court] stated in *Gilbert*, the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'"    *Id.* (quoting *Gulf Oil Court v. Gilbert*, 330 U.S. 501, 509 (1947)). Accordingly, in *MBI Grp. Inc. v. Credit Foncier du Cameroun*, the Court explained that "significantly, this Court's lack of familiarity with Cameroonian law, and other issues involved with the application of foreign law, weighs **heavily** in favor of dismissal."    558 F. Supp. 2d 21, 35 (D.D.C. 2008) (emphasis added).    Likewise, in *Stromberg v. Marriot Intern., Inc.*, the court dismissed pursuant to *forum non conveniens* because the "court [was] aware that its counterparts in Mexico [were] far better suited to apply their own laws than it [was], and the court [was] sensitive to the desirability of avoiding the unnecessary review of foreign disputes."    474 F. Supp. 2d 57, 62 (D.D.C. 2007).    Here, determining whether Spain and Petitioners agreed to arbitrate this dispute in the ECT (in order to determine whether the Court has jurisdiction under

a FSIA exception) would require the Court to untangle treaty obligations (including the supreme EU Treaties fundamental to the foundation and working of the EU), other EU law, several CJEU opinions, particularly the *Achmea* one, and various other foreign legal concepts with which this Court lacks familiarity and which the Court's counterparts in the EU are far better suited to interpret.

Third, courts routinely use *forum non conveniens* to prevent the naked forum shopping that Petitioners employ here.  *See, e.g., Fitsock v. Kaiser Foundation Health Plan of Mid-States Inc.,* 1990 WL 179942 (D.D.C. Oct. 30, 1990) (transferring a case in part in recognition of the public interest "in the prevention of forum shopping") (citing cases); *Eric T. v. National Medical Enterprises, Inc.*, 700 A.2d 749, 755 ("One of the purposes of the doctrine of *forum non conveniens* is to avoid forum shopping.").

Finally, principles of comity weigh heavily in favor of dismissal.  Comity "may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts."  *In re Picard, Trustee for Liquidation of Bernard L. Madoff Investment Securities LLC*, 917 F.3d 85, 103 (2d Cir. 2019).   Accordingly, "the possibility of inconsistent rulings with foreign countries raises international comity concerns that should be considered in the *forum non conveniens* analysis."  *Nygard v. DiPaolo*, 753 F. App'x 716, 728 (11th Cir. 2018) (affirming district court's decision to dismiss for *forum non conveniens*).[8]   Both the CJEU and Germany's high court have ruled that no valid arbitration agreement exists under a BIT, and 22 EU Member States have

---

[8]  Alternatively, international comity can be understood as an independent basis to decline jurisdiction.  *See, e.g., Espana v. ABSG Consulting, Inc.*, 334 F. App'x. 383 (2d Cir. 2009) ("On remand, [the district court] may consider whether principles of *forum non conveniens* or international comity support a discretionary decision not to exercise jurisdiction.") (citing cases).

declared in the Joint Declaration that the same result holds for multilateral investment treaties such as the ECT.[9]   Petitioners' attempt to obtain an inconsistent ruling from this court on a case that is properly adjudicated in a foreign state should be denied.

      C.   <u>This Case Is Distinguishable From *TMR Energy*</u>

For the reasons set forth above, the private and public factors all weigh heavily in favor of dismissal, particularly in light of the grave international comity concerns invoked.   As such, Petitioners' only colorable argument against Spain's *forum non conveniens* request is that any such request is preempted by *TMR Energy Ltd. v. State Property Fund of Ukraine,* which held that *forum non conveniens* was not an available defense to foreign sovereigns resisting enforcement of awards issued under the New York Convention.   411 F.3d 296 (D.C. Cir. 2005). The *TMR* court held that no other forum was adequate in such an enforcement action because only a United States court may attach the commercial property of a foreign nation located in the United States pursuant to 28 U.S.C. § 1610.   *Id.* at 304. Specifically, Section 1610(a)(6) permits the attachment of the property of a foreign state upon a judgment confirming an arbitral award.

But that argument ultimately fares no better for two reasons.   First, *TMR* and its progeny all evaluated *forum non conveniens* **after recognizing jurisdiction under FSIA**.   That distinguishes that precedent from this matter, which instead falls under well-established D.C. Circuit precedent holding that *forum non conveniens* is a key mechanism available to courts **before** ruling on FSIA jurisdiction.

---

[9]  Indeed, the *Achmea* declaration is itself an act of disconnection.   EU Member States are permitted to disconnect from international conventions for intra-EU affairs in favor of EU Law through a declaration.   For example, although the Convention on Civil Liability for Bunker Oil Pollution Damage, 2001 (Bunkers Convention) has no disconnection clause, EU Member State parties to the Bunkers Convention declared that they would apply between themselves EU law (Brussels I) instead of the rules of the Convention.

Second, *TMR* and its progeny considered adequate forums for the enforcement of awards under the New York Convention, and the precedent is therefore factually distinct from enforcement under the ICSID Convention.   In fact, the availability of *forum non conveniens* in ICSID enforcement actions is a matter of first impression in this Circuit.

i.   Forum Non Conveniens *Co-Exists With FSIA As A Matter Of Law*

In *TMR*, the defendant did "not dispute that [the] case [came] within . . . the exception to immunity for any action brought to confirm an arbitration award that is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."   *Id.,* at 324.   With FSIA jurisdiction established, the court then affirmed the district court's holding that no adequate alternative forum existed.   *Id.*, at 327. In every case that relied on *TMR* in this district, the Court first established its jurisdiction pursuant to an FSIA exception, and then refused to dismiss under *forum non conveniens.*

Here, the posture is reversed: Spain asks the Court to dismiss pursuant to *forum non conveniens **before*** ruling on its jurisdiction under the FSIA.   In this regard, the D.C. Circuit has offered explicit guidance regarding the relationship between *forum non conveniens* and the FSIA, noting that "*forum non conveniens* predates the FSIA by centuries, and it was an embedded principle of the common-law jurisprudential backdrop against which the FSIA was written." *Simon v. Republic of Hungary*, 911 F.3d 1172, 1182 (D.C. Cir. 2018).   In other words, "the ancient doctrine of *forum non conveniens* is not displaced by the FSIA."   *Id.* at 1181. Accordingly, in *Simon,* the D.C. Circuit affirmed that a court could dismiss on *forum non conveniens* grounds **before** ruling on jurisdiction under FSIA, although the court ultimately found

that dismissal was not appropriate under the specific facts in that case.[10]

Likewise, in *Price v. Socialist People's Libyan Arab Jamahiriya*, the D.C. Circuit noted that "the doctrine of *forum non conveniens* remains fully applicable in FSIA cases," and approvingly cited a Second Circuit case that suggested that "the *forum non conveniens* doctrine helps mitigate the concern that United States courts will become the courts of choice for local disputes between foreign plaintiffs and foreign sovereign defendants and thus be reduced to international courts of claims."   294 F.3d 82 (D.C. Cir. 2002) (citing *Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390, 394 (2d Cir. 1985)) (quotations omitted).   "Under this analysis, the FSIA and *forum non conveniens* not only are compatible, they are complementary . . . If *forum non conveniens* were not applicable to actions under the FSIA, the federal courts would effectively be stripped of one tool that helps prevent this country's judicial system from becoming the courthouse to the world."   *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 382 (S.D.N.Y. 2001), aff'd by 311 F.3d 488 (2d. Cir. 2002); *see also Lafarge Canada, Inc. v. Bank of China*, 2000 WL 1457012, at *2 (S.D.N.Y. 2000).

      ii.    Whether *Forum Non Conveniens* Applies To ICSID Enforcement Is An Issue Of First Impression In This Circuit

As noted, *TMR* evaluated whether an adequate remedy was available for an enforcement action under the New York Convention, not the ICSID Convention.   However, as Petitioners correctly note, the New York Convention "does not apply to enforcement of awards rendered pursuant to the ICSID Convention, so its jurisdictional requirements play no role here."   Petition,

---

[10] As with all *forum non conveniens* analysis, the factual details drove the outcome.   In *Simon*, "[f]ourteen of the very few survivors of the Hungarian government's pogrom [during the Holocaust], including four United States citizens, filed suit against the Republic of Hungary and . . . Hungary's state-owned railway company."   *Id.*, at 1175.

¶ 11 (DE 1); *see also* 22 U.S.C. § 1650(a), and thus TMR is not applicable.  Further, like all elements of *forum non conveniens*, whether a forum is adequate is a fact-specific inquiry.  *See, e.g., McLellan v. American Eurocopter, Inc.*, 26 F. Supp. 2d 947, 950 (S.D. Tex. 1998); *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 423 (7th Cir. 2009).

The narrow application of *TMR* is evidenced by the D.C. Circuit's approach in *Simon*. The *Simon* plaintiffs alleged, among other things, that a foreign sovereign engaged in "wanton thievery . . . and grotesque violations of international law."  1:10-cv-01770-BAH, Doc. 1, ¶ 3. Specifically, the Complaint alleged that the plaintiffs: (1) "owned and had the right to possess real personal property that was taken from them by defendants," and (2) "the defendants' wrongdoing as alleged hereinabove violated customary international and treaty law actionable in this court."  *Id.*, ¶¶ 152, 193.  If plaintiffs prevailed, they intended to obtain "a judgment establishing rights in property which has been taken in violation of international law," and therefore seek attachment under Section 1610.  *See* 28 U.S.C. § 1610(a)(3).

If *TMR* applied whenever the plaintiffs sought a judgment that would entitle them to attachment of foreign assets located in the United States, then the D.C. Circuit in *Simon* would have resolved the *forum non conveniens* analysis by reference to *TMR*.  Instead, the court expressly affirmed the **availability** of *forum non conveniens* in such circumstances, *i.e.*, where a court is evaluating whether FSIA jurisdiction exists.  *Simon*, 911 F.3d at 1182.  The court reversed the *forum non conveniens* dismissal not because no alternative forum existed, but because the private and public interest factors did not merit dismissal.  *Id.*

Further, here, there are annulment proceedings currently pending, and the fundamental issue is whether Spain agreed to arbitrate with Petitioners in the ECT.  The question of whether

there is an applicable arbitration agreement is a gateway issue to be determined by courts. *See Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S. Ct. 524 (2019). This court simply is not the right Court to determine whether these parties agreed to arbitrate under EU law in the EU under the ECT, which is abundantly clear based upon the *forum non conveniens* analysis.

### iii.    This Court Should Follow The Guidance Of The Second Circuit

Because the D.C. Circuit has not spoken on the applicability of *forum non conveniens* before a finding of jurisdiction in ICSID cases, this court can and should seek guidance from other circuits, and specifically from the Second Circuit. There, in *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, the respondent challenged whether a valid arbitration agreement existed sufficient to trigger the FSIA exception. 311 F.3d 488, 494 (2d Cir. 2002). Rather than rule on the FSIA jurisdiction, the district court dismissed the case pursuant to *forum non conveniens*, and the petitioner appealed. *Id.* The Second Circuit affirmed, and explicitly approved of the dismissal under *forum non conveniens* before ruling on whether the court had jurisdiction under the FSIA to enforce an arbitral award against a foreign sovereign.

In sum, Petitioners, with no contact to this forum, seek to enforce an arbitral award arising out of a treaty with no contact with this forum, by invoking immunity pursuant to a complex question of European law. The matter should be dismissed pursuant to *forum non conveniens,* and *TMR* does not necessitate a different result.[11]

---

[11] Spain further notes that there is a Circuit split as to whether *TMR* is good law as applied to cases where jurisdiction has been established in enforcement proceedings under the New York Convention. *See Figuerido Ferraz E Engenharia de Projeto Ltda v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011) (rejecting the *TMR* holding because, if that analysis were correct, "every suit having the ultimate objective of executing upon assets located in this country could never be dismissed because of [*forum non conveniens*])." In the event that this Court deems *TMR*

### III.    If The Court Rules On Its Jurisdiction, The Petition Should Be Dismissed

For the reasons stated above, Spain submits that the Court should not reach the question of its jurisdiction, and should instead stay the action pending annulment and/or dismiss the action pursuant to *forum non conveniens*.   However, in the event the Court does reach the question of its jurisdiction, the ultimate outcome should be the same: dismissal of the Petition.

Petitioners asks this Court to enforce the award even though (1) the Treaty of Lisbon (amending the EU Treaties after the ECT) reiterates the principle of primacy of EU law for intra-EU affairs and attributes the competences on foreign investments, of which ISDS is an essential part, to the EU,[12] (2) the CJEU ruled in *Achmea* that the EU Treaties preclude arbitration provisions between EU Member States and citizens of other EU Member States, like the situation in this case,[13] (3) Germany's highest court applied *Achmea* to annul an award that was premised on such an arbitration provision; and (4) the Joint Declaration explicitly set out the consensus position that *Achmea* applies to the ECT, and is itself a disconnection from the ECT. With that in mind, the Court should deny Petitioners' request for three reasons.

First, the arbitration provision in the ECT was void *ab initio*, rendering the alleged exceptions to Spain's sovereign immunity inapplicable.   Because no exception to the FSIA exists, no jurisdiction exists.

Second, even if jurisdiction did exist under the FSIA, enforcement would be precluded

---

applicable to this case's posture, Spain preserves all arguments that the D.C. Circuit should reverse *TMR* or that the Supreme Court should resolve the Circuit split in favor of the Second Circuit's interpretation.

[12] Thus, arguably, the Member States explicitly do not have the authority to act in the area of intra-EU ISDS mechanisms, such as that contained in the ECT, and disconnection was obtained through the Lisbon Treaty.

[13]  That is, even if the Member States had the authority to act in the area of ISDS mechanisms, principle of primacy of EU law as a conflict rule would render void the ISDS mechanism in the ECT as between Petitioners and Spain (as an *ultra vires* act).

by the express terms of the ICSID implementing statute.   That statute expressly requires that ICSID awards be treated as state court judgments, and thus enforced subject to the limitations on full faith and credit.   One such limitation, universally recognized by federal courts, is that a judgment rendered by a state court that lacked jurisdiction is void and not entitled to enforcement.

Finally, this Court cannot find jurisdiction here due to the foreign sovereign compulsion doctrine and the act of state doctrine.   As to the former, a finding of jurisdiction (and thus enforcement of the award) would violate the foreign sovereign compulsion doctrine because Spain is bound by a Decision of the European Commission prohibiting Spain from paying the pecuniary obligations that the Award imposes.   Similarly, as to the latter, this Court cannot determine that it has jurisdiction without violating the "act of state" doctrine.   Specifically, in order for the Court to determine that a valid agreement to arbitrate exists, the Court would have to effectively declare invalid the principles set out in *Achmea*, the Joint Declaration of 22 EU Member States, and indeed the EU Treaties, which taken together preclude the formation of agreement to arbitration under the ECT between Spain and the Petitioners.

A.   No FSIA Exception Exists Because There Was Never A Valid Agreement To Arbitrate

i.   *There Is No 1605(a)(6) Exception Because There Is No Agreement To Arbitrate*

The primary exception upon which Petitioners purport to rely is 28 U.S.C. § 1605(a)(6), which provides that immunity shall not exist in a case "to confirm an award based on an **agreement to arbitrate** where the agreement or award is or may be governed by treaty . . ." Petition, ¶ 7 (emphasis added).   Therefore, under Petitioners' own framework, without an agreement to arbitrate, there is no exception under Section 1605(a)(6).

Article 26(6) of the ECT provides: "A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law." ECT art. 26(6).  The "applicable rules and principles of international law" include the EU Treaties, as authoritatively interpreted by the CJEU. It is axiomatic that the EU Treaties constitute rules of international law. *See, e.g.*, Cong. Research Serv., 106th Cong., *Treaties and Other International Agreements: The Role of the United States Senate: A Study Prepared for the Committee on Foreign Relations* 1 ("Internationally, once in force, treaties are binding on the parties and become part of international law.").   Thus, any dispute resolved under Article 26(6) of the ECT, including a dispute on the existence or validity of the arbitration agreement, must be decided in accordance with EU law, giving priority to the EU Treaties. Hindelang Decl. at¶¶ 49-51

As noted above, the CJEU, *i.e.*, the highest authority on EU law, unambiguously held in *Achmea* that a BIT did not and cannot contain an offer to arbitrate between Member States and investor-citizens of other Member States (intra-EU disputes) where a tribunal constituted thereunder may be called upon to interpret EU law.   While the CJEU has not explicitly ruled that this logic applies to **multilateral** investment treaties, 22 EU states—including the two Member States with interests here, Spain and The Netherlands—have unequivocally announced that the logic applies in full force to the ECT.   Hindelang Decl. at ¶27.   The significance of this cannot be overstated.   As the Supreme Court explained long ago, where parties to a treaty "agree as to the meaning of a treaty provision, and that interpretation follows from the clear treaty language, [a court] must, absent extraordinarily strong contrary evidence, defer to that interpretation." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982).   And, as the Supreme Court recently affirmed, courts must grant deference to a foreign sovereign's interpretation of its own

laws. *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018); *Abbott v. Abbott*, 560 U.S. 1, 16–19 (2010) (citing decisions by courts of England, Israel, Austria, South Africa, Germany, Canada, and France, all parties to the treaty at issue); *El Al Isr. Airlines, Ltd. v. Tseng*, 525 U.S. 155, 175 (1999) (citing judicial decision by the British House of Lords); *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 550–51 (1991) (citing Supreme Court of Israel).

Moreover, even if this Court granted no deference to Spain's interpretation of its own laws as a foreign sovereign, or to the EU's interpretation of those same laws, there is no colorable basis for distinguishing between the *Achmea* rule as applied to tribunals formed under the ECT. *Achmea* found that no arbitration agreement existed because: (1) tribunals formed under the BIT were not courts or tribunals within the EU legal system; (2) those tribunals may be called upon to interpret and apply EU law; (3) those tribunals cannot refer those questions of EU law to CJEU under Article 267 of the TFEU. *See* Hindelang Decl. ¶¶ 44-46.

Here, similarly, tribunals formed under Article 26 of the ECT are neither courts nor tribunals within the EU legal system, and they therefore lack the requisite "links with the judicial systems of the Member States." *Achmea*, ¶ 48. As the European Commission explained in submitting an Amicus Brief to a court in this district that was considering the validity of purported arbitration agreements under Article 26: ECT Tribunals are no more a part of the EU judicial system than are arbitral tribunals convened under BITs. *Masdar*, No. 1:18-cv-2254, Doc. 20 ("**EU Amicus Brief**"). Weldon Decl., Ex 3

Likewise, ECT tribunals may be called upon to interpret EU law. As the EU explains: "Just as in investment disputes arising out of intra-EU investments under a BIT, disputes arising out of intra-EU investments under the ECT 'are liable to relate to the interpretation or application of EU law.'" *Id.* (quoting *Achmea* Judgment ¶ 39); *see also* Hindelang Decl. ¶ 53. Indeed,

Article 26(6) of the ECT establishes EU as the applicable law, and, consequently, an arbitral tribunal instituted thereunder plainly would by necessity be required to interpret or apply it.   *See Achmea* Judgment ¶¶ 36-40; Hindelang Decl. ¶ 54.

Finally, ECT tribunals, like the tribunal at issue in *Achmea*, cannot refer questions of EU law to the CJEU under Article 267 of the TFEU.   They therefore cannot avail themselves of the procedural mechanism established by the TFEU to ensure the uniform application of EU law. *See Achmea* Judgment ¶¶ 42-49, 50-56; *see also* Hindelang Decl. ¶ 55.   As such, ECT Tribunals are no less likely than BIT tribunals to be conducted "in a manner that ensures the full effectiveness of EU law, even though they might concern the interpretation or application of that law." *Id.* ¶ 56.   As a result, an ECT Tribunal's "pronouncements on EU law (or failure to take EU law into account) threaten the integrity of the EU legal order and the principles of sincere cooperate and mutual trust between EU and its Member States."   EU Amicus Brief, pp. 15-16;[14] Hindelang Decl. ¶ 56.

ii.     *Spain Did Not Waive Its Immunity Under Section 1605(a)(1)*

Petitioners offer an alternative basis for jurisdiction by alleging that "Spain's accession to the ICSID Convention operates to waive immunity from an action to recognize an award governed by the ICSID Convention."   In so doing, Petitioners appear to argue that: (1) Spain agreed that valid arbitration awards, rendered by duly constituted tribunals with proper jurisdiction, would be enforceable under the ICSID Convention; so (2) Spain waived its sovereign

---

[14]  As the EU further points out, this "is in contrast to, for example, the Comprehensive Economic and Trade Agreement (CETA) between Canada and the EU and its Member States. Given that Canada is not a party to the EU Treaties, in CETA context, EU law is merely 'domestic law of a Party" and may only be considered as a matter of fact, in accordance with the prevailing interpretation of EU courts.   As such, Petitioners should resist the temptation to overstate the significance on ICSID generally that a narrow ruling on the validity of arbitration agreements between Member States and citizens of other Member States would have.

immunity in any action where the petitioner **alleges** the existence of a valid agreement to arbitrate. Such an argument is expressly rejected by the plain language of the ICSID Convention itself, guidance from this district, and precedent regarding the very exception that Petitioners purport to invoke.

It is beyond dispute that the mere ratification of the ICSID Convention is not an agreement to arbitrate a dispute in accordance with the ICSID Convention.[15]   Thus, Petitioners' request that Spain be deemed to have waiver jurisdiction under FSIA flies in the face of this express language, and puts the horse before the cart.

Another court in this District likewise recently confirmed that a valid arbitration agreement is necessary before any waiver can be deemed to exist.   *See Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 188 (D.D.C. 2016).   In *Stati*, the court explained:

> The Court of Appeals has found implied waivers of foreign sovereign immunity in three circumstances: when (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.

*Id.*   In evaluating whether a waiver existed, the court explicitly stated that the "question of whether *Kazakhstan* agreed to arbitrate [was] central to the parties' dispute in this case."   *Id.* In other words, despite the fact that Kazakhstan is generally a signatory to the New York Convention, the Court held that it nevertheless must establish an agreement to arbitrate with the petitioner before finding a waiver to sovereign immunity.   *Id.*   Indeed, it is well-settled that mere signing of the ICSID Convention does not constitute an agreement to arbitrate a dispute in an ICSID arbitration, and rather a separate consent to arbitrate a specific dispute at ICSID is required.

---

[15]  *See, e.g.*, ICSID Convention, Preamble ("No Contracting State shall by the mere fact of its ratification, acceptance or approval of this Convention and without its consent be deemed to be under any obligation to submit any particular dispute to conciliation or arbitration.").

*See* ICSID Convention, Preamble ("Declaring that no Contracting State shall by the mere fact of its ratification, acceptance or approval of this Convention and without its consent be deemed to be under any obligation to submit any particular dispute to conciliation or arbitration.")   Hence, enforcement through the ICSID Convention is wholly dependent upon the existence of a separate consent in writing to arbitrate a particular dispute.

With that in mind, the weight of authority establishes that Spain did not waive its immunity "explicitly or by implication" as required by Section 1605(a)(1).   "An express waiver under section 1605(a)(1) must give a clear, complete, unambiguous, and unmistakable manifestation of the sovereign's intent to waive its immunity."   *World Wide Minerals, LTD v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)."   Spain's "accession" to the ICSID Convention contains the exact opposite of an unmistakable manifestation to waive immunity: the signatories to that Convention unequivocally disclaimed any such intention.[16]

Petitioners' reference to an implied waiver fares no better. There is "virtually unanimous" consensus that the FSIA's "implied waiver provision" must be construed "narrowly." *Creighton Ltd. v. Government of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) (quoting *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991)); *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (observing that "cases involving arbitration clauses illustrate that provisions allegedly waiving sovereign immunity are narrowly construed") (citations omitted).   Crucially, the D.C. Circuit has held that, in the context of actions to enforce arbitral awards, a purported waiver requires

---

[16] As noted above, the United States similarly rejected a theory that signing ICSID would itself constitute a wavier of sovereign immunity.   The United States, like all signatories, intended for ICSID and sovereign immunity to co-exist, and Petitioners' proffered reading would destroy that goal.

an affirmative indication that the foreign sovereign intended to waive its immunity with respect to the particular dispute being arbitrated.   *Creighton*, 181 F.3d at 122.

Moreover, Petitioners' citation to *Blue Ridge Investments, LLC v. Republic of Argentina* does not change the analysis.   735 F.3d 72 (2d Cir. 2013).   Both the District Court and the Second Circuit evaluated the waiver question in the context of a **valid agreement to arbitrate between the petitioner and the respondent,** and then held that the waiver exception applied.   *See id.* (finding that both the implied waiver exception and the arbitral award exception applied).   The holding in *Tatneft v. Ukraine* similarly depends on a valid award. *See* 771 F. App'x 9 (D.C. Cir. 2019).   Both cases reflect the conventional wisdom that "it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide," and thus that foreign sovereigns should not sidestep a contractually agreed-upon delegation via the FSIA.    *Taftnet v. Ukraine*, 301 F. Supp. 3d 175, 190 (D.D.C. 2018). The Supreme Court recently affirmed that questions of arbitrability can be delegated to arbitrators in *Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S. Ct. 524 (2019).   In so doing, however, the Court also reiterated that "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."   *Id.*, at 530. Thus, without a valid arbitration agreement, the logic underpinning the *Blue Ridge* and *Taftnet* holdings evaporates.

### B.   Even If A FSIA Exception Existed, The Award Would Not Be Entitled To Full Faith And Credit

Even if the Court had jurisdiction under the FSIA to adjudicate the Petition (which it does not), the Petition should still be dismissed because the Award is not entitled to full faith and credit. Congress implemented the ICSID Convention by enacting 22 U.S.C. § 1650a, which provides that:

An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID

> Convention] shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the **same full faith and credit** as if the award were a final judgment of a court of general jurisdiction of one of the several States.

22 U.S.C. § 1650a(a) (emphasis added)

Enforcement of an ICSID award's pecuniary obligations is thus subject to the same full faith and credit principles applicable to a final state court judgment. *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1103 n.14 (D.C. Cir. 1982) ("ICSID arbitrations are to be enforced as judgments of sister states.").

As detailed below, two limitations on full faith and credit bar the Award's enforcement here. First, the Award is void because Spain did not enter an arbitration agreement with Petitioners and therefore the tribunal lacked jurisdiction to issue any award. Second, the Award is void because the tribunal exceeded its jurisdiction by issuing state aid.

    i.    *The Absence of A Valid Arbitration Agreement Renders The Award Void*

The Supreme Court has emphasized there are "basic limitations on the full-faith-and-credit principles." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982). "Chief among these limitations is the caveat, consistently recognized by this Court, that a judgment of a court in one State is conclusive upon the merits in another State **only if the court in the first State had power to pass on the merits – had jurisdiction, that is, to render the judgment.**" *Id.* (citations omitted) (emphasis added). "Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Id.; see also V.L. vs. E.L.*, 136 S. Ct. 1017, 1020 (2016) (holding only final judgments "rendered by a court with adjudicatory authority over the subject matter and persons governed

by the judgment" qualify for full faith and credit).

The Supreme Court has explained:

> This limitation flows directly from the principles underlying the Full Faith and Credit Clause. It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties. One State's refusal to enforce a judgment rendered in another State when the judgment is void for lack of jurisdiction merely gives to that judgment the same "credit, validity, and effect" that it would receive in a court of the rendering State.

*Underwriters Nat'l Assurance*, 455 U.S. at 704 n.10.

Accordingly, the award cannot be given full faith and credit because Spain has "disproved" the existence of the putative arbitration agreement upon which the Tribunal purported to exercise jurisdiction. *V.L.*, 136 S. Ct. at 1020. Specifically, and for the reasons set forth above, any offer by Spain to arbitrate with investors from other EU Member States would violate EU law and would therefore be void *ab initio*. Consequently, Petitioner could not have accepted any such offer and no arbitration agreement could have been concluded. In the absence of an arbitration agreement, the Tribunal lacked jurisdiction, and no award rendered by it is entitled to full faith and credit.

> ii. *The Award Is Not Entitled To Full Faith And Credit Because The Tribunal Exceeded Whatever Jurisdiction It Might Have Had*

Assuming *arguendo* that the Tribunal was properly constituted pursuant to a valid arbitration agreement between Spain and Petitioners—despite all of the evidence to the contrary set forth above—the award would **still** not be entitled to full faith and credit. Article 26 of the ECT limits the scope of tribunals' jurisdiction by mandating that tribunals must "decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law." As there is no meaningful dispute that EU law forms a part of those applicable rules and principles of international law, ECT tribunals' jurisdiction can be, and is,

limited by EU law.

Specifically, EU law provides that only the European Commission may authorize Member States to provide state aid (*i.e.*, granting any subsidies to private actors). TFEU, Articles 107(1), 108(3); Hindelang Decl. ¶ 60.    In other words, European law explicitly prohibits arbitral tribunals from doing so. *Id.*, Articles 108(2)-(3).    More importantly, the European Commission's November 10, 2017 Decision regarding Spain determined that "any compensation which an Arbitral Tribunal were to grant to an investor" would be unauthorized state aid that Spain is prohibited from paying. European Commission Decision 2017/7384 ¶ 165. The EU thus explains: "Spain has a legal obligation not to pay the compensation awarded by any ECT investment tribunal unless and until the Commission authorizes such payment in accordance with the applicable State aid rules." *Amicus Brief* at 24. As a result, "Spain is precluded as a matter of EU law from implementing the award, absent authorization from the Commission." *Id.* at 25; Hindelang Decl. ¶ 62-63.

The relationship between European Commission Decisions and enforcement is well recognized throughout the EU, as evidenced by a recent decision where the European Commission explicitly addressed the legality of ICSID Awards against Member States that purport to give state aid.   *See* European Commission Decision 2015/1470; Hindelang Decl. ¶ 61. There, the European Commission evaluated an ICSID arbitral award where the tribunal awarded compensation to five claimants for Romania's alleged failure to provide fair and equitable treatment under a bilateral investment treaty between Romania and Sweden.  *Id.*, ¶ 1(1).   The European Commission ultimately determined that "payment of the compensation awarded by the Tribunal to the claimants amounts to the granting of incompatible new aid which is incompatible with the Treaty."   *Id.* ¶ 153. The Commission therefore ordered that "any

payment of the compensation awarded to the claimants by the Tribunal must be recovered by Romania … without delay." *Id.* ¶ 160; *see also* Hindelang Dec., ¶ 58 .

The claimants nevertheless sought to enforce the award.  When they tried to do so in Luxembourg, however, the Luxembourg Court of Appeal explained that the European Commission's Decision "is binding in its entirety" and therefore "resulted in the Award losing its relevancy and efficacy and therefore its enforceability." Cour Supérieure de Justice [Superior Court of Justice], Cour d'Appel [Court of Appeal], Mar. 21, 2018, No. 81/18 – VII – REF, *State of Romania v. Viorel Micula* at 20 (Lux.); Hindelang Decl. ¶ 64 (citing Exs. 57, 59, and 65). Similarly, in Sweden, another court in which enforcement was sought, ruled: "[T]here is no doubt … that enforcement in Sweden would mean that Romania… would be forced to pay, and would therefore be in breach of the Commission's prohibition on payment." Nacka Tingsrätt [NTR] [Nacka District Court] 2019-01-23 Ä 2550-1 at 12 (Swed.); Hindelang Dec., ¶ 64 (citing Exs. 57, 59, and 65).

The same claimants' enforcement efforts in Belgium have been rebuffed there as well. *See* Tribunal de première instance francophone de Bruxelles [French-speaking Tribunal of First Instance of Brussels], Section Civile, ch. des saisies, Jan. 25, 2016, Nos. 15/7241/A and 15/7242/A at 16 (Belg.) ("[T]he decision of the European Commission – as it remains – justifies non-compliance with this award and thus makes it lose its relevance and, consequently, its enforceability. It therefore renders its execution illegal.").[17]

Notwithstanding this restriction on the tribunal's jurisdiction, the award ordered Spain

---

17 The questions of EU law that form the basis for the claimants' appeal of that decision to the Brussels Court of Appeal have been referred to the CJEU. Cour d'appel Bruxelles [Court of Appeal of Brussels], 17e ch. des affaires civiles, Mar. 12, 2019, Nos. 2016/AR/393 and 2016/AR/394, *State of Romania v. Viorel Micula* (Belg.) Hindelang Decl. ¶ 64.

to pay compensation to Petitioner that constitutes unauthorized state aid.   By ignoring, and usurping, the Commission's exclusive jurisdiction, the tribunal's *ultra vires* award exceeds any jurisdiction it could have under Article 26 of the ECT. The Award is therefore void and not entitled to full faith and credit.

      C.   The Award Cannot Be Enforced Pursuant To The Foreign Sovereign Compulsion Doctrine And Act of State Doctrine

Even if the Court had jurisdiction and the Award was entitled to full faith and credit, the Petition must still be dismissed for yet another reason: finding jurisdiction would violate the foreign sovereign compulsion doctrine and the act of state doctrine.

The foreign sovereign compulsion doctrine provides a complete defense where the judgment of a United States court would conflict with a defendant's legal obligations elsewhere.  *See, e.g., O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*, 830 F.2d 449, 453 (2d Cir. 1987).   Specifically, it provides foreign sovereigns with "protection from being caught between the jaws of [a U.S. court] judgment and the operation of laws in foreign countries." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 441 (Am.Law Inst. 1987), reporter's notes 1. This is fully consistent with the well-established principle that courts make every effort to "not take action that may cause the violation of another nation's laws." *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1327 n.150 (D.C. Cir. 1980).

For the purposes of this doctrine, the EU is the equivalent of a foreign state.  *See European Cmty. v. RJR Nabisco Inc.*, 764 F.3d 129, 143-47 (2d Cir. 2014), *rev'd on other grounds* 136 S. Ct. 2090 (2016).   The EC, as the enforcement arm of that foreign state, has rendered a legally binding Decision that prohibits Spain from paying the award because doing so would violate the EU Treaties. European Commission Decision 2017/7384 ¶ 165.

Granting the Petition would therefore contradict—and compel Spain to violate—the legal obligations to which it is subject under EU law.

As the D.C. Circuit has ruled, it would cause "considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987). Here, the "discomfort" is exacerbated considerably by the fact that Spain is, itself, a foreign sovereign, and the relief Petitioners seek would order that foreign sovereign to violate its own laws and international treaties.

Likewise, and as discussed above, in order for the Court to determine that it possesses jurisdiction based on the FSIA exception relied on by Petitioners, the Court would first have to find that an agreement to arbitrate existed under the ECT between Spain and Petitioners. Such a determination by the Court, however, would necessarily violate the act of state doctrine, as it would effectively declare invalid *Achmea*, the Joint Declaration, and the EC's official position.

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964)). "In its modern formulation, the doctrine bars suit where (1) there is an official act of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act." *Royal Wulff Ventures LLC v. Primero Mining Corp.*, No. 17-56367, 2019 WL 4419677, at *5 (9th Cir. Sept. 17, 2019) (internal quotations omitted) (alterations in original).

Twenty-two Member States of the EU, including Spain and the Netherlands (Petitioners' home State), have issued a Joint Declaration confirming that an arbitration agreement cannot be formed under Article 26 of the ECT between an EU Member State and a national of another Member State.   The Joint Declaration is based upon the *Achmea* Decision, rendered by the EU's highest court, and is in accord with the official submissions of the European Commission.   Thus, in order for this Court to determine that a valid arbitration agreement did, in fact, exist for purposes of FSIA jurisdiction the Court would be required to invalidate the Joint Declaration of these 22 Member States, as well as the *Achmea* Decision which the Joint Declaration is based upon.   Indeed, it would require this Court to effectively declare invalid the very EU Treaties as interpreted and applied by the CJEU and the European Commission.   Accordingly, the act of state doctrine bars this Court from determining that jurisdiction exists on the basis of the existence of a valid arbitration agreement.   *See World Wide Minerals*, 296 F.3d at 1164-67 (dismissing claims under the act of state doctrine because the relief sought required the court to question the legality of Kazakhstan's denial of the export license); *Oceanic Expl. Co.*, 2006 WL 2711527, at *5-*8 (dismissing claims under act of state doctrine where relief sought required the court to invalidate government agency's contract awards); *Royal Wulff Ventures*, 2019 WL 4419677, at *5-*7 (holding claims barred by act of state doctrine because they required the court to determine whether Mexican Tax authority's ruling was properly issued).

In sum, Spain respectfully submits that there is unambiguously no arbitration agreement between Spain and Petitioners, and therefore no jurisdiction under the FSIA and no entitlement to full faith and credit.   However, to the extent that there is any ambiguity, the Court should resolve that ambiguity in a manner that does not violate the foreign sovereign

compulsion doctrine, the act of state doctrine, and all other principles of international comity.

## CONCLUSION

The Award that Petitioners purport to enforce is not yet final under ICSID Rules and has been automatically stayed pending Spain's annulment application.   In that application, Spain asks the ICSID to follow the guidance of EU law, EU's highest court, the European Commission, EU amicus briefs, and the Joint Declaration from 22 Member States.   In the event that the ICSID refuses to do so, and the Award is not annulled, Spain requests that this Court decline the invitation to wade into a thorny dispute requiring resolution of a multilateral treaty that does not involve the United States and a recent CJEU opinion that courts in the EU are better equipped to understand and enforce.   Insofar as the Court chooses not to apply *forum non conveniens*, and instead opts to rule on its own jurisdiction, this petition should be dismissed because no such jurisdiction exists.   Article 26 of the ECT upon which Petitioners rely cannot constitute an agreement to arbitrate between Spain and Petitioners as a matter of law.   Without a valid agreement to arbitrate, no exception to the FSIA applies, and this Court thus lacks subject matter jurisdiction.   Moreover, even if Petitioners' jurisdictional argument were not fatally flawed, the absence of a valid arbitration agreement would strip the award of any full faith and credit to which it would otherwise be entitled.   Therefore, and for the reasons set forth in detail above, Spain requests that this action be stayed pending a ruling on Spain's annulment request and, ultimately, dismissed.

Dated: October 11, 2019

Respectfully submitted,

By:    /s/ Brian D. Koosed                        

Brian D. Koosed
D.C. Bar Number 1034733
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9204
Brian.Koosed@klgates.com

Michael DeMarco (*pro hac vice*)
New York Bar Number 4142477
1 Lincoln St.
Boston, MA 02111
(617) 951-9111
Michael.DeMarco@klgates.com

Matthew J. Weldon (*pro hac vice*)
New York Bar Number 4832408
599 Lexington Avenue
New York, New York 10022
(212) 536-4042
Matthew.Weldon@klgates.com

Luke E. Steinberger (*pro hac vice application
forthcoming*)
New York Bar Number 5282181
599 Lexington Avenue
New York, New York 10022
(212) 536-4852
Luke.Steinberger@klgates.com


*Counsel for Respondent Kingdom of Spain*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 11, 2019, I caused a true and correct copy of the foregoing Memorandum of Law to be filed using the Court's Electronic Case Filing System ("ECF").   The document is available for review and downloading via the ECF system, and will be served by operation of the ECF system upon all counsel of record.

<u>/s/ Brian D. Koosed</u>
Brian D. Koosed