# EXHIBIT 14

JUDGMENT OF THE COURT
27 FEBRUARY 1962[1]

# Commission of the European Economic Community v Government of the Italian Republic[2]

**Case 10/61**

Summary

1. *Customs Duties — Abolition — Duties applied within the meaning of Articles 12 and 14 of the EEC Treaty — Concept*
    *(EEC Treaty, Articles 12, 14 and 19)*

2. *External relations of Member States of the EEC — Agreements made prior to the EEC Treaty — Rights and obligations of Member States*
    *(EEC Treaty, Article 234)*

1. It follows from a literal interpretation of Articles 12 and 14 of the EEC Treaty that the term 'duties applied', as used in these two Articles, means the duties actually applied rather than those legally applicable. This interpretation is confirmed by the third subparagraph of Article 19 (2) of the EEC Treaty which, while it refers only to the common customs tariff, is not limited in scope to this area but allows the conclusion to be drawn that the authors of the Treaty were aware of the difference between those duties legally applicable and those actually applied and that by using the words 'duties applied' they intended to refer to those duties which were actually applied.

2. According to the principles of international law, a Member State which, by virtue of the entry into force of the EEC Treaty, assumes new obligations which conflict with rights held under an earlier agreement, refrains from exercising such rights to the extent necessary for the performance of its new obligations; Article 234 of the EEC Treaty only guarantees the rights held by third countries under earlier agreements.

In Case 10/61

COMMISSION OF THE EUROPEAN ECONOMIC COMMUNITY, represented by its Legal Adviser, Hubert Ehring, acting as Agent, with an address for service

---

1 — Language of the Case: Italian.
2 — CMLR.

1

in Luxembourg at the Chambers of Henri Manzanarès, Secretary of the Legal Department of the European Executives, 2 Place de Metz,

applicant,

v

GOVERNMENT OF THE ITALIAN REPUBLIC, represented by Professor Riccardo Monaco, Head of the Diplomatic Legal Department of the Foreign Ministry (replaced at the oral procedure by Dr Paolo Massimo Antici, Counsellor at the Italian Embassy in Luxembourg), acting as Agent, assisted by Pietro Peronaci, Deputy State Advocate-General, acting as Adviser, with an address for service in Luxembourg at the Italian Embassy, 5 rue Marie-Adélaïde,

defendant,

Application for a ruling that by applying a fixed minimum duty of 150 lire, after the entry into force of the Treaty establishing the European Economic Community, and by taking that duty as the basis for the calculation of the successive reductions in customs duties in relation to other Member States on tubes, valves and lamps for imported radio receivers from other Member States, with a dutiable value not exceeding 428 lire per article, the Italian Republic has failed in its obligations under the Treaty establishing the EEC;

THE COURT

composed of: A. M. Donner, President, O. Riese and J. Rueff (Presidents of Chambers), L. Delvaux (Rapporteur), Ch. L. Hammes, R. Rossi and N. Catalano, Judges,

Advocate-General: M. Lagrange
Registrar: A. Van Houtte

gives the following

## JUDGMENT

### Issues of fact and of law

I — Conclusions of the parties

The *applicant* claims that the Court should:

'rule that, by applying a fixed minimum duty of 150 lire after the entry into force of the Treaty, and by taking that duty as the basis for the calculation of the successive reductions in customs duties in relation to other Member States on imported tubes, valves and lamps for radio receivers from other Member States with a dutiable value not exceeding

428 lire per article, the Italian Republic has failed in its obligations under the Treaty; and

order the Italian Republic to pay the costs'.

The defendant contends that the Court should:

'reject the Commission's application; and

order the Commission to pay the costs'.

II — Facts

The facts may be summarized as follows:

Case 10/61 concerns the duty in the Italian customs tariff on tubes, valves and lamps for radio receivers.

Following the tariff conference held at Annecy in 1949, Italy imposed a duty of 35% on the goods in question. Following the tariff conference held at Geneva during the first half of 1956 between the contracting parties to the 'General Agreement on Tariffs and Trade' (GATT), this duty was unbound and a joint duty of 30%, subject to a fixed minimum levy of 150 lire per article, was bound in its place. This new duty came into force provisionally in Italy on 14 July 1956, by Decree No 657 of 12 July 1956 of the President of the Republic. At the same time, this Decree rescinded the temporary reduction of 10%, which, since 4 November 1951, had applied to the customs duty of 35%.

While awaiting ratification by Italy of the Sixth Protocol on additional concessions annexed to GATT, in which the provisions concerning the new duty had been entered, two customs duties were thus applicable to tubes, valves and lamps for radio receivers imported into Italy from other Member States, that is to say, the duty of 35% and the duty of 30% subject to a fixed minimum of 150 lire per article. In these circumstances the Italian customs authorities were required, by Circular No 3526 of 13 July 1956 from the Directorate-General of Customs at the Ministry of Finance and by the third paragraph of the notice contained in the Italian tariff of import duties, to apply whichever of the two duties was the more favourable to the importer.

The above-mentioned Sixth Protocol was ratified in Italy by Law No 25 of 2 January 1958, which put it into effect as from 9 February 1958. Consequently Circular No 1086 of 1 April 1958 from the Directorate-General of Customs at the Ministry of Finance provided that the Italian customs authorities should in future apply only the 30% duty, subject to the fixed minimum of 150 lire, to all radio tubes, valves and lamps imported into Italy, including those with a dutiable value not exceeding 428 lire per article.

The first reduction of 10% in the customs duties in force on 1 January 1957, provided for by Article 14 of the EEC Treaty, was, by Decree No 1103 of 29 December 1958 of the President of the Republic, applied in Italy from 1 January 1959 with respect to imported goods from other Member States. However, Circular No 2416 of 13 December 1958 from the Directorate-General of Customs at the Ministry of Finance instructed the Italian Customs authorities not to reconstruct the customs situation of 1 January 1957, but to apply from 1 January 1959 a reduction of 10% in the duties in force at that date. Consequently, a duty of 27% subject to a fixed minimum of 135 lire per article was applied to imported radio tubes, valves and lamps.

The second reduction of 10% was applied with effect from 1 July 1960 by Decree No 588 of 28 June 1960 of the President of the Republic but Circular No 2251 of 27 June 1960 from the Directorate-General of Customs at the Ministry of Finance provided that the Italian customs authorities should apply a duty of 24%, subject to a fixed minimum of 120 lire, to imported tubes, valves and lamps for radio receivers from other Member States.

3

By a letter dated 31 March 1960, addressed to the Minister of Foreign Affairs of the Italian Republic, the Commission drew attention to the fact that on 1 January 1957 two customs duties were applicable to the imports in question, that is to say, first the conventional duty of 35% and secondly the joint *ad valorem* duty of 30% subject to a minimum of 150 lire per article, and that importers were able to choose the more favourable of these two duties. According to the Commission, having regard to the provisions of Article 14 (1) and (3) of the EEC Treaty, the Italian Government should, on 1 January 1959, have retained the two duties in force on 1 January 1957, and should have applied to each a reduction of 10%. The abolition of the duty of 35%, involving an increase in the customs duty for tubes and valves not exceeding 428 lire per article, constituted, according to the Commission, an infringement of the provisions of Articles 12 and 14(1) and (3) of the EEC Treaty.

In its replies of 31 May and 21 October 1960, the Italian Government pointed out that the duty of 30% with the minimum of 150 lire per article was the only duty legally in force on 1 January 1957, and that it was for this reason that it was taken as the basic duty within the meaning of Article 14 of the EEC Treaty. According to the Italian Government, the simultaneous application at this date of the 35% duty resulted from a mere circular of no binding force and temporary effect which could not be used as a basis for perpetuating an abnormal system of customs taxation, as it was impossible to impose fiscal charges otherwise than by means of a measure having the force of law.

Rejecting this point of view, the Commission, on 8 December 1960, delivered to the Italian Government a reasoned opinion in accordance with Article 169, setting out the alleged infringement of Articles 12 and 14 of the EEC Treaty and calling upon the Government to put an end to the infringement within a period of thirty days.

By letters dated 11 and 25 January 1961, the Italian Government informed the Commission that it could not comply with the reasoned opinion and on 12 April 1961 the Commission brought this action before the Court of Justice.

III — Submissions and arguments of the parties

The submissions and arguments of the parties may be summarized as follows:

A — *On admissibility*

The *defendant* does not question the admissibility of the action.

B — *On the substance of the case*

1. The Commission of the EEC, the *applicant* in this action, claims that Articles 12, 13 and 14 of the EEC Treaty have been infringed by the application of a minimum duty of 150 lire to tubes, valves and lamps, the dutiable value of which does not exceed 428 lire. This submission is developed under heads (a), (b), (c), (d), (e) and (f) below.

(a) Italy has failed in its obligation under Article 12 of the EEC Treaty not to increase customs duties on imports applied on 1 January 1958, the date of entry into force of EEC Treaty, in its trade with other Member States.

Imposition of a minimum duty of 150 lire on tubes, valves and lamps the dutiable value of which does not exceed 428 lire per article amounts in fact to an increase in relation to the duty of 35% applied by Italy on 1 January 1958 in trade with the other Member States.

(b) Italy has failed in one of its obligations under Articles 13 and 14 of the EEC treaty, that is, *to make the two successive reductions of 10% in the basic duty*, the first one year after the entry into force of the Treaty and the second 18 months later.

4

The fixed minimum duty on tubes, valves and lamps the dutiable value of which did not exceed 428 lire per article was 135 lire from 1 January 1959 and 120 lire from 1 July 1960, although this duty should have been restricted to 31.5% and 28% respectively had the duty of 35% applied on 1 January 1957 been taken as the basis.

(c) The grounds of complaint set out under (a) and (b) above do not depend for their validity on whether the duty of 35% was applied on 1 January 1957 and on 1 January 1958 as being the duty in force at that time or as the result of an internal discretionary measure taken by the Italian administration of finance temporarily suspending implementation of the tariff duty in force. Articles 12 and 14 (1) refer to duties 'applied' without *designating the basis*, whether legal, statutory or administrative, *of such application.*

(d) Nor are the grounds of complaint set out under (a) and (b) above invalidated by the fact that provision had been made, in the Sixth Protocol on additional concessions annexed to the General Agreement on Tariffs and Trade signed at Geneva on 23 May 1956, for the abolition of the duty of 35%. Articles 12 and 14 (1) of the EEC Treaty refer to duties applied, *without in any way distinguishing between the temporary or permanent nature of their application.*

The following arguments support this interpretation.

(1) For the purpose of calculating the common customs tariff, the third subparagraph of Article 19 (2) of the EEC Treaty substitutes for the duties applied on 1 January 1957 those shown in List A of Annex I to the EEC Treaty, that is, the duties in the French customs tariff which on 1 January 1957 were subject to temporary suspension, although some of them were reintroduced and actually levied only 6 months later. The applicant states therefore that a customs duty which, at the reference date shown in the Treaty, was actually applied but which it was intended to abolish within a short period, is nonetheless a duty applied at that date within the meaning of the Treaty.

(2) In the EEC Treaty there are no criteria for the definition of duties of a temporary nature, which, according to the interpretation of the Italian Government, may be left out of account in the performance of obligations arising under Articles 12 and 14.

(3) Article 14 (7) of the EEC Treaty states that the provisions of this Article may be amended by the Council, acting unanimously on a proposal from the Commission and after consulting the Assembly. It is by this procedure therefore that those duties actually applied on 1 January 1957, the adjustment of which had begun before that date may be abolished as basic duties for the calculation of the successive reductions.

(4) By virtue of the third subparagraph of Article 19 (2), there are prescribed case by case the exceptions to the principle that any duty actually imposed is a duty applied within the meaning of the Treaty. These exceptions relate to customs duties, the application of which on the reference date was unusual and temporary, and their effect is expressly limited to the calculation of the common customs tariff and cannot be extended to the calculation of the successive reductions.

(e) By signing the EEC Treaty, and thus giving up the freedom to increase customs duties (Article 12), Italy lost the right to increase the duty of 35% which it had unbound by signing on 23 May 1956 the Sixth Protocol on additional concessions annexed to the

5

JUDGMENT OF 27. 2. 1962 — CASE 10/61

General Agreement on Tariffs and Trade. In fact, in Article 12 the undertaking not to increase customs duties refers to duties applied, without any limitation, and must be held therefore to refer as much to non-bound customs duties as to bound duties.

The unbinding of the 35% customs duty on tubes, valves and lamps for radio receivers is even less likely to justify the choice of a higher customs duty as the basis on which to calculate the successive reductions in customs duties between Member States. The reference in Article 14 (1) of the EEC Treaty to duties applied is as wide as that in Article 12 and does not therefore admit of any distinction between applied and non-bound customs duties.

(f) *The binding of the customs duty* of 30% subject to the fixed minimum duty of 150 lire involves for Italy the obligation not to impose a customs duty higher than the bound duty. However, it *does not prevent the application of a lower customs duty*.

It follows that, by continuing to impose the duty of 35% after 1 April 1958 and by treating it, in relation to other Member States, as the basic duty for the purposes of calculating the successive reductions in customs duties on tubes, valves and lamps for radio receivers, the dutiable value of which does not exceed 428 lire per article, Italy would not have failed in its obligations towards the other contracting parties to the General Agreement on Tariffs and Trade.

The Italian Government, *the defendant* in this action, replies that on 1 January 1957 the only duty *legally applicable* in Italy to the goods in question was the duty of 30% with a minimum of 150 lire per article and that this alone was to be regarded as the basic duty within the meaning of Articles 12 and 14 of the EEC Treaty. In fact, although on the one hand this duty was imposed by Presidential Decree No 657 of 12 July 1956, which is a measure having the force of law published following a delegation of legislative power (Law of 24 December 1949, the effects of which were extended on 7 December 1952 and 3 November 1954), on the other hand Circular No 3256 of 13 July 1956 from the Directorate-General of Customs, authorizing customs authorities to apply the duty of 35% where it was more favourable to the importer, cannot be regarded as a source of law and may not be considered under the terms of Article 14 of the Treaty which refers to the legal duty.

Moreover, the defendant refers to the second subparagraph of Article 19 (2) of the EEC Treaty which, referring specifically to the Italian tariff, provides that, with respect to items on which the Italian tariff contains a conventional duty, this duty shall be substituted for the duty applied. Thus, the defendant contends that it is impossible to imagine a simultaneous binding of two basic duties; the basic duty can only be a single duty.

The applicant replies to this objection that, if the true purpose of this provision is, in certain cases and under certain conditions, to substitute a conventional duty for the duty applied, it does not determine which of the two duties was in this case to be taken into consideration on 1 January 1957. In fact both were conventional duties, the duty of 35% without fixed minimum having been bound under the Annecy Protocol of 1949 and the duty of 30% under the Geneva Protocol of 1956. According to the applicant, the text referred to does not determine which was the duty applicable, or whether they were applicable concurrently.

At the hearing, the parties were asked by one of the Members of the Court which duty had been used in the calculation of the arithmetical average which had served as the basis in setting up the common external tariff. Article 19(1) of the EEC Treaty provides that, in making this calculation, 'the arithmetical average of the duties applied in

the four customs territories comprised in the Community' shall be taken into account.

The defendant replied that the duties in the second tariff, that is, the duty of 30% with fixed minimum of 150 lire per article, were taken into account by the experts on this occasion. It was on this basis that, in order to take into account the existence of the fixed minimum at a more or less flat rate, the duty was assessed at 33% for the complete tariff range.

The applicant replied that, in its opinion, in view of the multiplicity of factors involved in the calculation, the result would have been no different if the simultaneous application of the two duties for that section of the tariff heading dealing with tubes, valves and lamps for radio receivers had been taken into account.

2. Alternatively, the *applicant* maintains that on 1 January 1957 and 1 January 1958 only the duty of 35% without fixed minimum had been bound in a convention ratified by the Italian Parliament, that is to say, the tariff conference held at Annecy in 1949. The delegation of powers allowed to the executive enabled the Italian Government to enact temporary measures suspending or reducing the legal tariffs, but not to increase them. Therefore, the Presidential Decree of 12 July 1956, applying provisionally — until its ratification by the Italian Parliament— the Geneva Agreement of 1956 which imposed the duty of 30% with a minimum of 150 lire per article for the whole of tariff heading 1204 d, was only legal to the extent that the new duty was as favourable to the importer as the duty of 35% without fixed minimum. The Circular of 13 July 1956 had therefore rightly interpreted the Presidential Decree as instructing the customs authorities to apply the new duty only where it was more favourable to the importer than the old duty.

The *Italian Government* replies that the Presidential Decree is legal since it in no way increases the lawful tariffs; in fact, the general customs tariff provided for tariff heading 1204 d a duty of 40% with a minimum of 200 lire per article, and this was reduced by the Presidential Decree from 40 to 30% with a minimum of 150 rather than 200 lire per article.

3. The *Italian Government* raises an objection based on Article 234 of the EEC Treaty, which states that 'the rights and obligations arising from agreements concluded before the entry into force of this Treaty between one or more Member States on the one hand, and one or more third countries on the other, shall not be affected by the provisions of this Treaty'.

By GATT, signed at Geneva on 23 May 1956, before the entry into force of the EEC Treaty (1 January 1958), Italy agreed to abolish the duty of 35% in force at that time and to replace it by a duty of 30%; in return, however, Italy obtained the right to impose a minimum duty of 150 lire per article. Under this Agreement, Italy has not only obligations but also rights which must be maintained in accordance with Article 234 of the EEC Treaty.

It is impossible to raise the objection that GATT, which was signed on 23 May 1956, was only ratified by Italian Law No 25 of 2 January 1958 after the entry into force of the EEC Treaty, as the text of Article 234 of the EEC Treaty applies to agreements *concluded* before this date, and not to conventions ratified before it.

The *Commission* replies that the terms 'rights and obligations' in Article 234 of the EEC Treaty refer, as regards the word 'rights', to the *rights of third countries* and, as regards the word 'obligations', to the *obligations of Member States*. The Commission states that it is a recognized fact of international law that by assuming an obligation which conflicts with rights held under earlier treaties, a State undertakes to refrain

7

from exercising such rights to the extent necessary for the performance of its new obligations. It is therefore no longer the practice to insert into international treaties a general reservation in favour of such rights and in Article 234 the authors of the EEC Treaty were only able to provide for a procedure allowing departures from the terms of the Treaty in favour of *obligations* assumed in the past by Member States in relation to third countries.

IV — Procedure

The procedure followed the normal course.

Upon hearing the report of the Judge-Rapporteur and the opinion of the Advocate-General, the Court decided on 4 October 1961 not to make any preparatory inquiry.

## Grounds of judgment

I — As to admissibility

There is no dispute as to the admissibility of the action and there is no reason for the Court to raise the matter of its own motion. The action is therefore admissible.

II — On the substance of the case

A. One must first examine the meaning given by Articles 12 and 14 respectively to the words 'customs duties . . . or any charges having equivalent effect . . . which (Member States) . . . already apply in their trade with each other' (Article 12) and 'the duty applied on 1 January 1957' (Article 14).

The applicant alleges that these provisions relate to the duties actually applied on 1 January 1958 (Article 12) and on 1 January 1957 (Article 14) respectively and therefore concludes that, in this case, only the duty arising from the application of the tariff which is the more favourable to importers, as provided in the Ministerial Circular of 13 July 1956, should be retained.

On the other hand, the defendant maintains that the words 'duties applied' within the meaning of Articles 12 and 14 must refer to those duties applicable by law, and that the above-mentioned Circular cannot be invoked as against the legally imposed tariff, namely the duty of 30% with fixed minimum of 150 lire in accordance with the Decree of the President of the Italian Republic dated 12 July 1956.

COMMISSION v ITALY

The argument put forward by the applicant accords with a literal interpretation of the Treaty: in fact, the provisions in question refer to duties which the Member States 'apply' (Article 12) or to the duty 'applied' (Article 14).

Support for this argument is found in the fact that the view held by the defendant would lead to unacceptable results.

In fact, as is shown by the discussion between the parties concerning the circumstances surrounding the issue of the Circular of 13 July 1956, the argument of the defendant would oblige the Commission and possibly the Court itself to consider in each specific case the validity of national administrative measures in relation to the law of the Member State concerned; such consideration would fall outside the rôle of ensuring the proper application of the Treaty given to those institutions by the Treaty itself.

Moreover, it should be remembered that by means of the Circular to which reference has been made the Ministry of Finance, which was responsible for the application of the Decree of 12 July 1956, provided an official interpretation of the provisions contained in that Decree and that those provisions were uniformly applied according to the requirements of the Circular.

In support of its argument, the applicant again refers to Article 19 of the Treaty and in particular to the third subparagraph of Article 19 (2) which provides that, with regard to the tariff headings specified in List A, the duties appearing in that List shall be substituted for the duties applied.

This concerned the duties in the French customs tariff, which had been temporarily suspended on 1 January 1957 and for the reintroduction of which provision had been made. An exception was made to the rule and these duties were retained as a basis for calculating the duties in the common external tariff without taking into account the fact that they were not applied on 1 January 1957.

It is true that this provision does not refer to the abolition of customs tariffs between Member States but only to the common external tariff.

However, it has a wider application in the sense that it can be inferred that the authors of the Treaty realized the difference between duties which may legally be applied and those which are actually applied and that by using the words 'duties applied' they intended to refer to those actually applied.

9

The defendant also refers to the second subparagraph of Article 19 (2), which provides that, in the case of the Italian customs tariff, with respect to items on which this tariff contains a conventional duty, this duty shall be substituted for the duty applied.

This provision is an exception to the rule that the duties taken as the basis for calculating the common customs tariff shall be those applied on 1 January 1957. Its sole purpose is to determine the duties which are to be taken as the basis for calculating the common customs tariff.

Without the need to consider the other submissions of the parties, it must be inferred from the foregoing that Articles 12 and 14 of the Treaty refer to the duties actually applied on 1 January 1958 and 1 January 1957 respectively and that in this case therefore the practice of the Italian Customs Administration conforms with the official instructions from the competent authorities contained in the Circular of 13 July 1956.

B.   The defendant raises an objection based upon the first paragraph of Article 234, relating to the maintenance of rights and obligations arising from prior agreements concluded with third countries. The defendant maintains that this text permits and even obliges it to impose in every case the duty of 30% subject to the fixed minimum established under the Geneva Agreements of 1956.

Indeed, the defendant maintains that, although the Italian Republic consented to the abolition of the duty of 35% in force at that date, and to its replacement by the duty of 30%, this was because in return it had secured the right to introduce a minimum levy of 150 lire per article.

The applicant replies that the terms 'rights and obligations' in Article 234 refer, as regards the 'rights', to the rights of third countries and, as regards the 'obligations', to the obligations of Member States and that, by virtue of the principles of international law, by assuming a new obligation which is incompatible with rights held under a prior treaty a State *ipso facto* gives up the exercise of these rights to the extent necessary for the performance of its new obligations.

The applicant's interpretation is well founded and the objection raised by the defence must be dismissed.

In fact, in matters governed by the EEC Treaty, that Treaty takes precedence over agreements concluded between Member States before its entry into force, including agreements made within the framework of GATT.

COMMISSION v ITALY

By virtue of Article 14 of the Treaty, the system laid down in the Circular of the Ministry of Finance of 13 July 1956 must be referred to in order to determine the basic duty for the reductions made after 1 January 1957.

The defendant is therefore unjustified in claiming that, by virtue of the Geneva Agreements of 1956, it had the right to apply, in relation to other Member States, the single *ad valorem* duty of 30% subject to the fixed minimum of 150 lire.

Moreover, the correct application of Article 14 does not adversely affect the rights and obligations of Member States in relation to third countries which arise from agreements concluded before the entry into force of the EEC Treaty.

As a result of Article 234 different tariffs are applied to Member States and third countries, even though they are parties to the same Geneva Agreement of 1956. This is the normal effect of the Treaty establishing the EEC. The manner in which Member States proceed to reduce customs duties amongst themselves cannot be criticized by third countries since this abolition of customs duties is accomplished according to the provisions of the Treaty and does not interfere with the rights held by third countries under agreements still in force.

The application is therefore well-founded.

III — Costs

By Article 69 (2) of the Rules of Procedure, the unsuccessful party shall be ordered to pay the costs.

The defendant has failed in all its submissions and must therefore bear the costs.

On those grounds,

Upon reading the pleadings;
Upon hearing the report of the Judge-Rapporteur;
Upon hearing the parties;
Upon hearing the opinion of the Advocate-General;
Having regard to Articles 12, 13, 14, 19, 169, 171 and 234 of the Treaty establishing the European Economic Community;
Having regard to the Protocol on the Statute of the Court of Justice of the European Economic Community;

Having regard to the Rules of Procedure of the Court of Justice of the European Communities;

THE COURT

hereby:

1. **Rules that, by applying the fixed customs duty of 150 lire on the goods in question from other Member States with a dutiable value not exceeding 428 lire per article, after the entry into force of the Treaty, and by taking that duty as the basis for the calculation of the successive reductions in customs duties, the Italian Government has failed in its obligations under Articles 12 and 14 (1) of the Treaty;**

2. **Orders the defendant to pay the costs.**

|  Donner |  | Riese |  | Rueff |  |
|---|---|---|---|---|---|
| Delvaux |  | Hammes |  | Rossi | Catalano |

Delivered in open court in Luxembourg on 27 February 1962.

A. Van Houtte                                                                      A. M. Donner
Registrar                                                                                      President

## OPINION OF MR ADVOCATE-GENERAL LAGRANGE
## DELIVERED ON 7 DECEMBER 1961[1]

*Mr President,*
*Members of the Court,*

This second dispute relating to the application of the Treaty of Rome is between the same parties and follows the same procedure as the first, that is to say, by application of Articles 169 and 171 concerning a ruling by the Court, on the application of the Commission, that a Member State has failed to fulfil one of its obligations under the Treaty. As in the first case it concerns the application of the 'standstill' rule, but in this instance it relates to a customs duty and not to a quantitative restriction (Articles 12 and 14).

Article 12 provides:

'Member States shall refrain from introducing between themselves any new customs duties on imports or exports or any charges having equivalent effect, and from increasing those which they

---

1 — Translated from the French.