# EXHIBIT 17

conflicting provision of current national law but — in so far as they are an integral part of, and take precedence in, the legal order applicable in the territory of each of the Member States — also preclude the valid adoption of new national legislative measures to the extent to which they would be incompatible with Community provisions.

Any recognition that national legislative measures which encroach upon the field within which the Community exercises its legislative power or which are otherwise incompatible with the provisions of Community law had any legal effect would amount to a corresponding denial of the effectiveness of obligations undertaken unconditionally and irrevocably by Member States pursuant to the Treaty and would thus imperil the very foundations of the Community.

4. A national court which is called upon, within the limits of its jurisdiction, to apply provisions of Community law is under a duty to give full effect to those provisions, if necessary refusing of its own motion to apply any conflicting provision of national legislation, even if adopted subsequently, and it is not necessary for the court to request or await the prior setting aside of such provisions by legislative or other constitutional means.

In Case 106/77

REFERENCE to the Court under Article 177 of the EEC Treaty by the Pretore di Susa (Italy) for a preliminary ruling in the action pending before that court between

AMMINISTRAZIONE DELLE FINANZE DELLO STATO (Italian Finance Administration)

and

SIMMENTHAL S.P.A., having its registered office at Monza,

on the interpretation of Article 189 of the EEC Treaty and, in particular, on the effects of the direct applicability of Community law if it is inconsistent with any provisions of national law which may conflict with it.

THE COURT

composed of: H. Kutscher, President, M. Sørensen and G. Bosco (Presidents of Chambers), A. M. Donner, P. Pescatore, Lord Mackenzie Stuart and A. O'Keeffe, Judges,

Advocate General: G. Reischl
Registrar: A. Van Houtte

gives the following

AMMINISTRAZIONE DELLE FINANZE DELLO STATO v SIMMENTHAL

# JUDGMENT

# Facts and Issues

The facts of the case, the course of the procedure and the written observations submitted pursuant to Article 20 of the Protocol on the Statute of the Court of Justice of the EEC may be summarized as follows:

I — Facts and procedure

On 26 July 1973 Simmenthal S.p.A., a company having its registered office in Monza, imported from France via Modane a consignment of beef for human consumption.

A fee of Lit 581 480 was charged for the veterinary and public health inspection of the imported beef.

Ths inspection is prescribed by Article 32 of the Italian consolidated health laws (Royal Decree No 1265/34 of 27 July 1934; Gazzetta Ufficiale No 186 of 9 August 1934) The implementing provisions of this article are laid down in Article 45 of the regulation on veterinary health inspections (Decree No 320 of 8 February 1954 of the President of the Republic, Gazzetta Ufficiale No 142 of 24 June 1954). The scale of fees chargeable in 1973 was fixed by Law No 1239/70 of 30 December 1970 (Gazzetta Ufficiale No 26 of 1 February 1971).

As Simmenthal was of the opinion that the veterinary and public health inspections of the beef when it crossed the frontier and the fees charged for such inspections were obstacles to the free movement of goods and as such forbidden under Community law, it brought an action before the Pretore di Susa on 13 March 1976 for repayment of the fees which in its view it had paid without any legal justification.

During the proceedings in Simmenthal's action the Pretore di Susa felt it necessary by order of 6 April 1976 to refer certain questions to the Court of Justice for a preliminary ruling pursuant to Article 177 of the EEC Treaty. This reference led to the Court's judgment of 15 December 1976 in Case 35/76 (*Simmenthal S.p.A.* v *Italian Minister of Finance* [1976] ECR 1871.

The Court of Justice held in the operative part of that judgment that veterinary and public health inspections at the frontier, whether carried out systematically or not, on the occasion of the importation of animals or meat intended for human consumption constitute measures having an effect equivalent to quantitative restrictions within the meaning of Article 30 of the Treaty and that pecuniary charges imposed by reason of veterinary or public health inspections of products on the occasion of their crossing the frontier are to be regarded in principle as charges having an effect equivalent to customs duties.

In view of that judgment the Pretore di Susa by an order of 24 January 1977 ordered the Amministrazione delle Finanze dello Stato to repay the fees illegally charged, together with interest.

The Amministrazione appealed on 23 February 1977 against the order to repay.

In view of the arguments put forward by the Amministrazione the Pretore di Susa found that the issue before him was the incompatibility of certain rules of Community law with a subsequent national law, in this case Law No 1239/70.

631

JUDGMENT OF 9. 3. 1978 — CASE 106/77

According to recently decided cases of the Corte Costituzionale (the Italian Constitutional Court), with special reference to Judgment No 232 of 30 October 1975, Judgment No 205 of 28 July 1976 and Order No 206 of the same date. It is necessary for the determination of this issue that the question whether Law 1239/70 is unconstitutional having regard to Article 11 of the Constitution be referred to the Constitutional Court itself. On the other hand the well-established case-law of the Court of Justice on the applicability of Community law in the national legal systems of the Member States cannot be disregarded: according to this case-law directly applicable Community provisions produce direct effect and as such confer upon individuals rights which national courts must protect; no action can be taken by any official body which might jeopardize or delay their full, complete and uniform application in the Member States.

It is therefore impossible to underestimate the disadvantages arising from a situation in which the trial judge, instead of declaring that the subsequent law impeding the implementation of Community law is directly inapplicable, must each time raise the question whether it is unconstitutional with the result that, until the Constitutional Court delivers judgment, Community law cannot have full effect and furthermore, since the judgment of the Constitutional Court takes effect *ex nunc*, it is even impossible to make good retroactively the State's failure to fulfil its international obligations or to guarantee the absolute protection of the subjective rights of the individual created by Community provisions and governed by them.

It is therefore logical to deal first of all with the question of the interpretation of Community law relating to the actual scope of the concept provisions which are directly applicable.

Accordingly the Pretore di Susa by order of 28 July 1977 decided pusuant to Article 177 of the EEC Treaty to stay the proceedings until the Court of Justice has given its preliminary ruling on the following questions:

"(a) Since, in accordance with Article 189 of the EEC Treaty and the established case-law of the Court of Justice of the European Communities, directly applicable Community provisions must, notwithstanding any internal rule or practice whatsoever of the Member States, have full, complete and uniform effect in their legal systems in order to protect subjective legal rights created in favour of individuals, is the scope of the said provisions to be interpreted to the effect that any subsequent national measures which conflict with those provisions must be forthwith disregarded without waiting until those measures have been eliminated by action on the part of the national legislature concerned (repeal) or of other constitutional authorities (declaration that they are unconstitutional) especially, in the case of the latter alternative, where, since the national law continues to be fully effective pending such declaration, it is impossible to apply the Community provisions and, in consequence, to ensure that they are fully, completely and uniformly applied and to protect the legal rights created in favour of individuals?

(b) Arising out of the previous question, in circumstances where Community law recognizes that the protection of subjective legal rights created as a result of 'directly aplicable' Community provisions may be suspended until any conflicting national measures are actually repealed by the

632

competent national authorities, is such repeal in all cases to have a wholly retroactive effect so as to avoid any adverse effects on those subjective legal rights?"

The order of the Pretore di Susa was received at the Court Registry on 2 December 1976.

Pursuant to Article 20 of the Protocol on the Statute of the Court of Justice of the EEC written observations were submitted on 28 October 1977 by the Commision of the European Communities, on 16 November 1977 by Simmenthal, the defendant in the main action, and on 25 November 1977 by the Government of the Italian Republic.

Upon hearing the report of the Judg-Rapporteur and the views of the Advocate General, the Court dicided to open the oral procedure without any preparatory inquiry.

II — Written observations submitted to the Court

*Simmenthal*, the defendant in the main action, considers first of all the problem of the relationship between the Community legal order and the national legal order from the standpoint of an Italian lawyer. It explains how the case-law of the Italian Constitutional Court has developed in this field with special reference to Judgment No 183 of 27 December 1973, Judgment No 232 of 1975 and Judgment No 205 and Order No 206 of 1976; if there is a conflict of legislation there are in fact only two alternatives, the repeal by legislative means of the national rule which is incompatible with the earlier Community provisions or a declaration by the Constitutional Court that it is unconstitutional. Judgment No 232 of 1975 brought to a standstill and gave a definite form to the development of the case-law with a solution which was strictly circumscribed as regards form and procedure, offered no prospects or alternatives and was encumbered, in the purely domestic field, with disadvantages and consequences which were in many respects negative: more time taken by the proceedings, an increase of legal costs and proliferation of judical procedures, a backlog of references to the Constitutional Court, intervention of the latter court in actions raising few problems or none, devaluation of the duties of the Constitutional Court.

Given the actual context of this reference for a preliminary ruling it must essentially lead the Court to determine the actual scope of a directly applicable Community provision with reference to subsequent national provisions in conflict with it; the second question is supplementary and its aim is to ascertain the minimum guarantees which the individual to whom Community rules are intended to apply must be able to invoke in order to be able to be genuinely governed by the Community legal order.

Since the judgment of 5 February 1963 (Case 26/62, *N. V. Algemene Transporten Expeditie Onderneming van Gend & Loos* v *Nederlandse Administratie der Belastingen* [1963] ECR 1) the decided cases of the Court of Justice have defined step by step the principal aspects and features of the concept of the "direct applicability" of Community law. The foundations of this jurisprudential policy are as follows:

The Community legal system constitutes a new legal order of international law, the subjects of which comprise not only the Member States but also their nationals; it is a legal system in its own right which forms part of the legal system of the Member States and must be recognized by their courts. Community law is mandatory and absolute; this means that the competent national authorities are automatically forbidden to apply a national provision found to be incompatible with the

Treaty, and must, where necessary, take all appropriate steps which help to ensure that Community law is given full force and effect. The rules of Community law must be automatically applied, at the same time and with identical effect throughout the entire territory of the Community. They must be accorded absolute precedence over the domestic law of Member States, even over a subsequent legislative measure; the Member States cannot argue that there are derogations from Community law which derive from their legislature or judicial systems, even if a constitutional system or provisions are concerned. Community law produces direct effect and as such is capable of creating individual rights which national courts must protect.

The solution prescribed in Italy by the Constitutional Court has, in the light of the principles laid down by the case-law of the Court of Justice, very serious disadvantages.

On the most favourable presumptions it justifies the application of national laws incompatible with Community law until the date of the decision of the Constitutional Court declaring that such laws are unconstitutional.

Furthermore the retroactive effect of the declaration that the Italian laws are unconstitutional is only partial: it does not attach to legal relations which are said to be "exhausted", that is to say to those which appear to have been finally and irrevocably determined pursuant to acts or events which in fact preclude completely any change in such relations (res judicata, limitation, forfeiture or loss of rights, administrative measures against which there is no longer any appeal, simple contracts of a substantive nature); since the provision declared to be unconstitutional has in fact formed part of the national legal system, it may have had effects which are irreversible. Thus the decision of the Constitutional Court cannot in every case result in a complete revival of the subjective right conferred upon individuals by the Community provision.

Moreover, since only the Italian law is applicable until it is declared to be unconstitutional the ordinary courts cannot avail themselves of the procedure provided for by Article 177 of the EEC Treaty.

These findings also apply to "re-enacting" laws which, disregarding the direct and immediate applicability of Community regulations, reproduce their provisions in whole or in part.

The solution imposed by the Constitutional Court has particularly serious implications for the protection of individuals: the latter would be unable to secure complete and immediate protection of the rights conferred upon them by Community provisions until there had been a decision of the Constitutional Court in their favour; they would be discouraged from embarking upon legal proceedings by cumbersome and complex legal machinery; the public services would not be encouraged to apply Community law punctiliously and in its entirety to Italian traders or the nationals of other Member States.

Thus the following principles would be disregarded: the principle of the precedence of Community law, since the latter would have to yield to subsequent national law, the principle that it must be applied uniformly and in its entirety, since, for the time being at any rate, its effects would be paralysed in one Member State, and the principle of direct effect, since individuals could not derive any benefit from the rights created for them by Community provisions and national courts could not protect such rights.

The Constitutional Court itself acknowledged that these disadvantages exist: since it considers that it cannot itself remove them, it has specifically invited the Italian legislature to take the necessary action to repeal those

provisions which are incompatible with Community law and in future not to prejudice the unrestricted application of that law.

However a solution complying with the principles laid down by the Court of Justice is possible: all that need be done is to give the ordinary courts, as in the other Member States, the power not to apply domestic provisions which are incompatible with Community law.

*The Government of the Italian Republic* calls in question the relevance of the questions referred to the Court for a preliminary ruling and accordingly the applicability of Article 177 in this case; the court making the reference appears itself to concede that it does not have jurisdiction to deal with the claim which is the subject-matter of the dispute between the parties to the main action; in these circumstances the answers to the questions referred to the Court cannot be regarded as "necessary" for the delivery of a judgment on the substance of the case.

In any event the same questions have already been referred to the Court. Thus in its judgment of 3 February 1977 (Case 52/76, *Luigi Benedetti* v *Munari F.lli s.a.s.* [1977] ECR 163) the latter, after stating that it is not for the Court of Justice within the framework of proceedings under Article 177 to interpret questions of national law, held that "The purpose of a preliminary ruling is to decide a question of law and that ruling is binding on the national court as to the interpretation of the Community provisions and acts in question"; this principle is the prerequisite of, but also the limit of the relevance which under the Community legal order, may be attributed to, the questions referred to the Court in the present case.

When the national court determines a dispute it clearly cannot apply domestic legal rules which it considers conflict or are incompatible with Community law, especially if the prior interpretation by the Court of Justice of the Community law leaves no room to doubt that the later national provision is incompatible with it. It is obvious that the effectiveness of directly applicable Community provisions which confer upon individuals rights which the courts must protect cannot either be imperilled or impeded by contrary provisions of domestic law.

Nevertheless, as far as the way of ensuring the non-application of the conflicting provision of domestic law is concerned, since the issue is one of domestic law, the specific solution can only depend on the different constitutional systems of the Member States; any inconsistency between the national rule and the Community provisions must be eliminated by the means available under each of the national legal systems.

Such a conflict can moreover only arise in the case of national legal rules enacted after the Community provisions were adopted: previously enacted national rules, which conflict with Community law are by implication repealed by the conflicting Community law adopted afterwards. As far as concerns later national legal provisions any conflict may in practice be removed by applying the principle of interpretation that Community law is *ratione materiae* a special law. If any such conflict of laws cannot be determined or resolved in this way the supremacy of Community law must be guaranteed; such a guarantee can only be secured by the means available under the constitutional system of the various Member States.

The Constitutional Court confirmed in its judgment No 232 of 1975 that the Italian legal order does not allow a court "not to apply" a legal rule; this ruling is in accordance with the principle of the separation of powers.

635

A legislative provision, even if it is contrary to the principles set out in the constitution, must, if it is not to be applied, be repealed or declared to be unconstitutional by the competent constitutional authority. This legal procedure appears to be effective and also suitable for eliminating and resolving any conflict between rules of national law and Community law, since the Constitutional Court has acknowledged in its Judgment No 183 of 1973 that national rules of law which re-enact Community provisions and conflict or are incompatible with Community law are unconstitutional.

The fact that a rule of national law declared to be unconstitutional because it is inconsistent with Community law "ceases to apply on the day following that on which the decision is published" cannot be an obstacle to the protection of rights conferred upon individuals by Community rules: this criterion does not prevent individuals invoking the direct applicability of Community rules; a declaration of unconstitutionality also allows an individual who had not previously paid attention to the matter to safeguard his rights under Community law, the only limits applicable in such a case being prescription and neglect in the pursuit of one's rights which, as the Court of Justice has specifically held, constitute under the Community legal system a bar to proceeding with an action.

A declaration that a rule of law is unconstitutional in fact has retroactive effect and applies to the rule *ab initio*, eliminating it *ex tunc* from the legal system as from the date on which it entered into force if it is subsequent to the date when the constitution entered into force or from the date when the constitution entered into force in the case of an earlier rule.

The solution available under the Italian legal system has considerable advantages because it is better able to secure the uniform application of Community law.

If the national court is acknowledged to have the power not to apply a national law which is incompatible with Community law that is tantamount to guaranteeing the application of the Community legal rule only in the case actually before that court and protecting the specific right claimed in that case; but the national provision remains in force and is in fact exclusively applicable if there has not been a submission to the court that there may have been a breach of the rights conferred upon individuals by Community rules. Whenever the incompatibility of the national legal rule with Community law has been overlooked by the national legislature it would have to be made good by the complex procedure specified in Article 169 of the EEC Treaty which would merely result in bringing to the notice of the Member State in question the need to amend the national rule of law inconsistent with Community law.

A declaration that a legislative provision is unconstitutional is clearly more effective and more significant: it is a suitable way of guaranteeing observance of Community law *in concreto, erga omnes*, and therefore more extensively than is the case when only a single Court refrains from applying it.

The incompatibility of a national legal provision with Community rules, even if the Community rule has already been interpreted by the Court of Justice, may turn out to be open to question, because the appraisal and any review of the national legal rule are not within the jurisdiction of the Court of Justice in the giving of preliminary rulings by way of interpretation; to acknowledge that in such circumstances each national court has the power not to apply a national legal provision is tantamount to making observance of Community law dependent on the inconsistent and

fortuitous judgments of each national court and on the different grades of jurisdiction and there will still be no effective guarantee that Community law will be applied uniformly.

On the other hand a declaration of unconstitutionality, which is alone capable of expunging from national law the national legal provision conflicting with Community law and of doing so in such a conclusive way that even "non-application" by the court of last instance cannot lead to the same result, clearly determines the issue.

These considerations apply to cases in which the effect of the relevant interpretation of the Community rule is to give the national court the task of ascertaining whether the national legal rule might have consequences inconsistent with Community law; they apply even more clearly in those cases in which the judgment given by the Court of Justice on the question whether certain national rules may be compatible with Community law invokes the concepts of "reasonableness" and "proportionality". To acknowledge that the national courts are entitled in such circumstances to determine whether a national legal rule is to be applied or not is tantamount to leaving such questions to subjective and inconsistent individual judgments. The principle of legal certainty would thereby be called in question; the national legal rule would be considered to be compatible or not with the Community rule according to each national court's view of the possible consequences which the national legal rule might have and of the reasonableness and proportionality of those consequences: in the end — and it would be for the parties to take the initiative — there would have to be a decision of the court of last instance; this solution would entail a court application in each case in order to protect rights conferred upon individuals.

Such disadvantages, and especially the considerable amount of time required to be able to succeed in barring irreversibly the application of a national rule of law which is incompatible with Community law, are avoided in those legal systems, such as the Italian legal system, which do not empower their national courts not to apply the law. In such cases which require a prior consideration of the actual constitutionality of the national rule, an assessment of its compatibility with Community law and its reasonableness and proportionality, which is reserved to the national courts and is subject to conditions laid down by Community rules as interpreted by the Court of Justice, culminates in a single decision which applies *erga omnes* and helps to secure a definitive and uniform application of Community law.

The Court should therefore rule that national courts cannot apply national legal rules which conflict with Community law and that the elimination of this incompatibility must be effected by the means and in accordance with the procedures laid down by national legal systems.

The *Commission* points out that, in the matter of conflicts between national and Community law, in Italy the most serious problems have been caused by the many laws re-enacting Community rules having direct effect. Although they are open to criticism on technical grounds most of them only re-enact Community rules with a view to introducing lawful implementing measures; they can and must be interpreted in such a way as not to preclude the principle of direct applicability. The national court must in the first place seek the interpretation which will comply with Community law; that is the normal situation in a State which applies the principle *"pacta sunt servanda"* and which has also assumed the obligations arising under the Treaty and especially under Article 5 thereof.

637

JUDGMENT OF 9. 3. 1978 — CASE 106/77

Italian legal theory and case-law have had no difficulty in acknowledging that Community law having direct effect prevails over conflicting national law which has been previously enacted.

As far as concerns subsequent conflicting national law the Italian Constitutional Court in its Judgment No 14 of 7 March 1964 held that the EEC Treaty, made enforceable in Italy by an ordinary law, does not have any greater effect than the latter; therefore when confronted with a subsequent law which is incompatible with the Treaty the principle *"lex posterior derogat priori"* must be applied. The only way of remedying this breach of international law is by fresh action on the part of the legislature. Since that judgment the case-law of the Constitutional Court has developed; this is borne out for example by Judgment No 183 of 1973 and in particular by Judgment No 232 of 1975. According to the latter judgment a breach of Community law having direct effect by a subsequent national law attracts a particularly serious penalty under national law, namely a declaration that the latter law is unconstitutional by the Constitutional Court before which the court hearing the main action has brought the matter.

This specific acknowledgment of the supremacy of Community law is nevertheless subject to one limitation: the national court before which the matter is brought is not itself empowered to set aside the subsequent law which is incompatible with the Community rule; it must first refer the question to the Constitutional Court and wait until the latter court has made a declaration that the law is unconstitutional.

Compared with the previous situation these decided cases represent a significant advance. The declaration of constitutional illegality is not binding only upon the national court which has brought the matter before the Constitutional Court and does not apply therefore only *inter partes* in the case to be decided, it binds all national courts and applies *erga omnes*. From the point of view of the time factor the intervention at an advanced stage of the only Court with jurisdiction in matters of constitutional law may offer an advantage. Article 136 of the Constitution, which provides that a legislative provision which is declared unconstitutional ceases to have effect as from the day following the day when the judgment is published, is interpreted as meaning that as from that date the provision in question must be treated as no longer forming part of the legislative system in force; the national court must therefore no longer apply it in relation to the past either, and this is tantamount to its becoming inapplicable *ex tunc;* it is only those matters which have been definitively settled in accordance with that law which cannot be re-opened.

Nevertheless the fact that the national court is forbidden to apply the Community rule until the subsequent conflicting law has been set aside by the Constitutional Court cannot be reconciled with the principle of the precedence of Community law which is of the essence of the Community legal order.

This principle of the precedence of Community law does not spring from the various constitutions of the Member States, which would involve clear danger that the solutions would vary according to the wording of those constitutions, but from Community law itself. The principles of the precedence and of the direct effect of Community law imply that inconsistent national laws can *ipso jure* not be set up against it without its being necessary to await their repeal by the national legislature or their annulment by a Constitutional Court.

638

AMMINISTRAZIONE DELLE FINANZE DELLO STATO v SIMMENTHAL

A law conflicting with Community law cannot be set up against the latter; such a law is not an obstacle which it is essential to remove first of all by repealing it or by declaring it unconstitutional.

Forbidding the national court to apply Community law before the declaration of unconstitutionality, which is unacceptable as a matter of principle, would in practice make the procedure unnecessarily cumbersome in all cases where it is obvious that a national law is incompatible with Community law. It is for the Court of Justice to interpret Community law; once the Court has given its ruling under Article 177 the sole discretion left to be exercised by the national authorities is a review of the national law for the purpose of checking whether it is in conformity with the Community rule thus interpreted. In general this discretion is very limited; it ceases to exist if the Court of Justice has already found that there · has been a breach of the Community rule under Article 169. In such circumstances a lengthy stay of proceedings while awaiting the judgment of the Constitutional Court would not be justified by any advantage in terms of legal certainty. Since furthermore the declaration of unconstitutionality is to all intents and purposes automatic, the very rôle of the Constitutional Court would thereby be devalued.

The new procedure available in Italy for setting aside national laws which are incompatible with Community law, namely a declaration of unconstitutionality, may be regarded as equivalent to strengthening Community law and prove to be useful in certain complex cases capable of giving rise to lengthy, multiple proceedings; but it cannot,. by becoming mandatory, be made a substitute for the direct method which the court hearing the main action must adopt in every other case and which consists in applying the Community rule and not the conflicting national rule. The question whether these concurrent solutions are admissible under the Italian constitutional system is not relevant to the present case.

As far as concerns the second question referred to the Court it is evident that if, for example, the national court, in order to be able to apply Community law having direct effect, were obliged to wait for the setting aside of the conflicting law, the latter must have retroactive effect as from the date when the Community rule entered into force; otherwise there could be no remedy for past breaches of subjective rights based on that rule.

The requirement of retroactive effect cannot however be absolute; it must be reconciled with the fundamental principle of legal certainty, which is the justification for fixing periods of limitation and time-limits for initiating proceedings and also for the prohibition on calling in question judgments which have acquired the force of *res judicata.*

The questions referred to the Court by the Pretore di Susa may be answered as follows:

Community provisions having direct effect cannot be affected by conflicting national legislative provisions, whether prior or subsequent to them. The fact that the legislature may repeal the conflicting law or a constitutional court may declare that it is unconstitutional may help to ensure observance of Community law but it cannot take away from the national court the power to apply Community provisions having direct effect notwithstanding the existence of such legislative provisions.

Subjective rights created by Community provisions having direct effect must be protected as from the entrance into force of those provisions. Whatever means the national court adopts to put an end to the application of national laws which are incompatible with

639

Community provisions it must ensure that the latter are observed as from their entrance into force, that is to say in respect of the past as well, save only in the case of rights affected by limitation, by effluxion of time or by the force of *res judicata*.

III — Oral procedure

Simmenthal, the defendant in the main action, represented by Emilio Cappelli of the Rome Bar, the Government of the Italian Republic, represented by Arturo Marzano, Avvocato dello Stato, and the Commission of the European Communities, represented by Giancarlo Olmi, Assistant Director General of its Legal Department, submitted oral observations and answered the questions put by the Court at the hearing on 26 January 1978.

*The Government of the Italian Republic* stressed the fact that the questions raised by the Pretore di Susa had ceased to have any relevance during the proceedings, since Law No 889 of 14 November 1977 (Gazzetta Ufficiale No 337 of 12 December 1977) provides that "fees for veterinary and public health inspection fixed under the scale annexed to Law No 1239 are not payable in respect of products covered by the common organization of agricultural markets" and the Constitutional Court has by its Judgment No 163 of 29 December 1977 declared that the sole article of Law No 1239 as well as the scale annexed thereto of fees relating to veterinary and public health inspections on the import into Italy of animals for slaughter, meats, products and skins of animal origin is unconstitutional.

The *Advocate General* delivered his opinion at the hearing on 16 February 1978.

# Decision

1   By an order of 28 July 1977, received at the Court on 29 August 1977, the Pretore di Susa referred to the Court for a ruling pursuant to Article 177 of the EEC Treaty, two questions relating to the principle of the direct applicability of Community law as set out in Article 189 of the Treaty for the purpose of determining the effects of that principle when a rule of Community law conflicts with a subsequent provision of national law.

2   It is appropriate to draw attention to the fact that at a previous stage of the proceedings the Pretore referred to the Court for a preliminary ruling questions designed to enable him to determine whether veterinary and public health fees levied on imports of beef and veal under the consolidated text of the Italien veterinary and public health laws, the rate of which was last fixed by the scale annexed to Law No 1239 of 30 December 1970 (Gazzeta Ufficiale No 26 of 1 February 1971), were compatible with the Treaty and with certain regulations — in particular Regulation (EEC) No 805/68 of the Council of 27 June 1968 on the common organization of the

AMMINISTRAZIONE DELLE FINANZE DELLO STATO v SIMMENTHAL

market in beef and veal (Official Journal, English Special Edition 1968 (I), p. 187).

3. Having regard to the answers given by the Court in its judgment of 15 December 1976 in Case 35/76 *(Simmenthal S.p.A.* v *Italian Minister for Finance* [1976] ECR 1871) the Pretore held that the levying of the fees in question was incompatible with the provisions of Community law and ordered the Amministrazione delle Finanze dello Stato (Italian Finance Administration) to repay the fees unlawfully charged, together with interest.

4. The Amministrazione appealed against that order.

5. The Pretore, taking into account the arguments put forward by the parties during the proceedings arising out of this appeal, held that the issue before him involved a conflict between certain rules of Community law and a subsequent national law, namely the said Law No 1239/70.

6. He pointed out that to resolve an issue of this kind, according to recently decided cases of the Italian Constitutional Court (Judgments No 232/75 and No 205/76 and Order No 206/76), the question whether the law in question was unconstitutional under Article 11 of the Constitution must be referred to the Constitutional Court itself.

7. The Pretore, having regard, on the one hand, to the well-established case-law of the Court of Justice relating to the applicability of Community law in the legal systems of the Member States and, on the other hand, to the disadvantages which might arise if the national court, instead of declaring of its own motion that a law impeding the full force and effect of Community law was inapplicable, were required to raise the issue of constitutionality, referred to the Court two questions framed as follows:

(a) Since, in accordance with Article 189 of the EEC Treaty and the established case-law of the Court of Justice of the European Communities, directly applicable Community provisions must, notwithstanding any internal rule or practice whatsoever of the Member States, have full, complete and uniform effect in their legal systems in order to protect subjective legal rights created in favour of individuals, is the scope of the said provisions to be interpreted to the effect that any subsequent national measures which conflict with those provisions must be forthwith disregarded without waiting until those measures have been eliminated by action on the part of the national legislature concerned

641

JUDGMENT OF 9. 3. 1978 — CASE 106/77

(repeal) or of other constitutional authorities (declaration that they are unconstitutional) especially, in the case of the latter alternative, where, since the national law continues to be fully effective pending such declaration, it is impossible to apply the Community provisions and, in consequence, to ensure that they are fully, completely and uniformly applied and to protect the legal rights created in favour of individuals?

(b) Arising out of the previous question, in circumstances where Community law recognizes that the protection of subjective legal rights created as a result of "directly applicable" Community provisions may be suspended until any conflicting national measures are actually repealed by the competent national authorities, is such repeal in all cases to have a wholly retroactive effect so as to avoid any adverse effects on those subjective legal rights?

The reference to the Court

8   The Agent of the Italian Government in his oral observations drew the attention of the Court to a judgment of the Italian Constitutional Court No 163/77 of 22 December 1977 delivered in answer to questions of constitutionality raised by the courts of Milan und Rome, which declared that certain of the provisions of Law No 1239 of 30 December 1970 including those at issue in the action pending before the Pretore di Susa, were unconstitutional.

9   It was suggested that since the disputed provisions have been set aside by the declaration that they are unconstitutional, the questions raised by the Pretore no longer have relevance so that it is no longer necessary to answer them.

10  On this issue it should be borne in mind that in accordance with its unvarying practice the Court of Justice considers a reference for a preliminary ruling, pursuant to Article 177 of the Treaty, as having been validly brought before it so long as the reference has not been withdrawn by the court from which it emanates or has not been quashed on appeal by a superior court.

11  The judgment referred to, which was delivered in proceedings in no way connected with the action giving rise to the reference to this Court, cannot have such a result and the Court cannot determine its effect on third parties.

AMMINISTRAZIONE DELLE FINANZE DELLO STATO v SIMMENTHAL

12  The preliminary objection raised by the Italian Government must therefore be overruled.

## The substance of the case

13  The main purpose of the *first question* is to ascertain what consequences flow from the direct applicability of a provision of Community law in the event of incompatibility with a subsequent legislative provision of a Member State.

14  Direct applicability in such circumstances means that rules of Community law must be fully and uniformly applied in all the Member States from the date of their entry into force and for so long as they continue in force.

15  These provisions are therefore a direct source of rights and duties for all those affected thereby, whether Member States or individuals, who are parties to legal relationships under Community law.

16  This consequence also concerns any national court whose task it is as an organ of a Member State to protect, in a case within its jurisdiction, the rights conferred upon individuals by Community law.

17  Furthermore, in accordance with the principle of the precedence of Community law, the relationship between provisions of the Treaty and directly applicable measures of the institutions on the one hand and the national law of the Member States on the other is such that those provisions and measures not only by their entry into force render automatically inapplicable any conflicting provision of current national law but — in so far as they are an integral part of, and take precedence in, the legal order applicable in the territory of each of the Member States — also preclude the valid adoption of new national legislative measures to the extent to which they would be incompatible with Community provisions.

18  Indeed any recognition that national legislative measures which encroach upon the field within which the Community exercises its legislative power or which are otherwise incompatible with the provisions of Community law had any legal effect would amount to a corresponding denial of the effectiveness of obligations undertaken unconditionally and irrevocably by Member States pursuant to the Treaty and would thus imperil the very foundations of the Community.

Case 1:19-cv-01618-TSC   Document 15-23   Filed 10/11/19   Page 16 of 18

JUDGMENT OF 9. 3. 1978 — CASE 106/77

19   The same conclusion emerges from the structure of Article 177 of the Treaty which provides that any court or tribunal of a Member State is entitled to make a reference to the Court whenever it considers that a preliminary ruling on a question of interpretation or validity relating to Community law is necessary to enable it to give judgment.

20   The effectiveness of that provision would be impaired if the national court were prevented from forthwith applying Community law in accordance with the decision or the case-law of the Court.

21   It follows from the foregoing that every national court must, in a case within its jurisdiction, apply Community law in its entirety and protect rights which the latter confers on individuals and must accordingly set aside any provision of national law which may conflict with it, whether prior or subsequent to the Community rule.

22   Accordingly any provision of a national legal system and any legislative, administrative or judicial practice which might impair the effectiveness of Community law by withholding from the national court having jurisdiction to apply such law the power to do everything necessary at the moment of its application to set aside national legislative provisions which might prevent Community rules from having full force and effect are incompatible with those requirements which are the very essence of Community law.

23   This would be the case in the event of a conflict between a provision of Community law and a subsequent national law if the solution of the conflict were to be reserved for an authority with a discretion of its own, other than the court called upon to apply Community law, even if such an impediment to the full effectiveness of Community law were only temporary.

24   The first question should therefore be answered to the effect that a national court which is called upon, within the limits of its jurisdiction, to apply provisions of Community law is under a duty to give full effect to those provisions, if necessary refusing of its own motion to apply any conflicting provision of national legislation, even if adopted subsequently, and it is not necessary for the court to request or await the prior setting aside of such provision by legislative or other constitutional means.

25   The essential point of the *second question* is whether — assuming it to be accepted that the protection of rights conferred by provisions of Community

644

AMMINISTRAZIONE DELLE FINANZE DELLO STATO v SIMMENTHAL

law can be suspended until any national provisions which might conflict with them have been in fact set aside by the competent national authorities — such setting aside must in every case have unrestricted retroactive effect so as to prevent the rights in question from being in any way adversely affected.

26  It follows from the answer to the first question that national courts must protect rights conferred by provisions of the Community legal order and that it is not necessary for such courts to request or await the actual setting aside by the national authorities empowered so to act of any national measures which might impede the direct and immediate application of Community rules.

27  The second question therefore appears to have no purpose.

Costs

28  The costs incurred by the Government of the Italian Republic and by the Commission of the European Communities which have submitted observations to the Court are not recoverable.

29  As these proceedings are, in so far as the parties to the main action are concerned, in the nature of a step in the action pending before the Pretore di Susa, the decision on costs is a matter for that court.

On those grounds

THE COURT,

in answer to the questions referred to it by the Pretore di Susa by order of 28 July 1977, hereby rules:

> A national court which is called upon, within the limits of its jurisdiction, to apply provisions of Community law is under a duty to give full effect to those provisions, if necessary refusing of its own motion to apply any conflicting provision of national legislation, even if adopted subsequently, and it is not necessary for the court to request or

645

await the prior setting aside of such provisions by legislative or other constitutional means.

| Kutscher | Sørensen | Bosco |
|---|---|---|
| Donner | Pescatore | Mackenzie Stuart | O'Keeffe |

Delivered in open court in Luxembourg on 9 March 1978.

A. Van Houtte  
Registrar

H. Kutscher  
President

# OPINION OF MR ADVOCATE GENERAL REISCHL
## DELIVERED ON 16 FEBRUARY 1978 [1]

*Mr President,*
*Members of the Court,*

In July 1973 the defendant in the main action imported some beef for human consumption into Italy from France. At the frontier it underwent a veterinary and public health inspection in accordance with an Italian law dating back to 1934. Fees had to be paid for the inspection at the scale in force at the date of importation which had been laid down under a law of 30 December 1970.

The Simmenthal company takes the view that this is incompatible with Community provisions on the free movement of goods and for that reason has brought an action before the Pretore di Susa for repayment of the fees. During these proceedings an application was made for a preliminary ruling (Case 35/76, *Simmenthal S.p.A. v Italian Minister for Finance* [1976] ECR 1871 *et seq.*) and in the operative part of its judgment of 15 December 1976 the Court ruled as follows:

"1. (a) — Veterinary and public health inspections at the frontier, whether carried out systematically or not, on the occasion of the importation of animals or meat intended for human consumption constitute measures having an effect equivalent to quantitative restrictions within the meaning of Article 30 of the Treaty, which are prohibited by that provision, subject to the exceptions laid down by Community law and in particular by Article 36 of the Treaty.

1 — Translated from the German.

646