# EXHIBIT 22

JUDGMENT OF 28. 4. 1988 — CASE 120/86

# JUDGMENT OF THE COURT
## 28 April 1988 *

In Case 120/86

REFERENCE to the Court under Article 177 of the EEC Treaty by the College van Beroep voor het Bedrijfsleven (Administrative court of last instance in matters of trade and industry), The Hague, for a preliminary ruling in the proceedings pending before that court between

**J. Mulder**

and

**Minister van Landbouw en Visserij** (Minister for Agriculture and Fisheries)

on the validity and interpretation of Council Regulation (EEC) No 857/84 of 31 March 1984 adopting general rules for the application of the levy referred to in Article 5c of Regulation (EEC) No 804/68 in the milk and milk products sector (Official Journal 1984, L 90, p. 13), as supplemented by Commission Regulation No 1371/84 of 16 May 1984 laying down detailed rules for the application of the additional levy referred to in Article 5c of Regulation (EEC) No 804/68 (Official Journal 1984, L 132, p. 11),

THE COURT

composed of: G. Bosco, President of Chamber, acting as President, O. Due and J. C. Moitinho de Almeida (Presidents of Chambers), T. Koopmans, U. Everling, K. Bahlmann, Y. Galmot, C. Kakouris, R. Joliet, T. F. O'Higgins and F. Schockweiler, Judges,

Advocate General: Sir Gordon Slynn
Registrar: H. A. Rühl, Principal Administrator

after considering the observations submitted on behalf of

---

\* Language of the Case: Dutch.

MULDER v MINISTER VAN LANDBOUW EN VISSERIJ

J. Mulder, the plaintiff in the main proceedings, by H. J. Bronkhorst, of The Hague Bar, and E. H. Pijnacker Hordijk, of the Amsterdam Bar,

the Netherlands Government, by I. Verkade, Secretary-General in the Ministry of Foreign Affairs, and A. Fierstra, acting as Agent,

the Council of the European Communities, by A. Brautigam, Principal Administrator in the Council's Legal Department, acting as Agent,

the Commission of the European Communities, by its Legal Adviser R. C. Fischer, acting as Agent, and by M. Cless, expert,

having regard to the Report for the Hearing and further to the hearing on 29 September 1987,

after hearing the Opinion of the Advocate General delivered at the sitting on 13 January 1988,

gives the following

## Judgment

1  By a judgment of 14 March 1986, which was received at the Court on 23 May 1986, the College van Beroep voor het Bedrijfsleven (Administrative court of last instance in matters of trade and industry), The Hague, referred to the Court for a preliminary ruling under Article 177 of the EEC Treaty three questions on the interpretation and validity of the Community regulations on the additional levy on milk.

2  The questions were raised in proceedings brought by J. Mulder, a farmer, against the Netherlands Minister for Agriculture and Fisheries. Mr Mulder, who until October 1979 had kept a dairy herd and delivered about 500 000 kg of milk per year to the dairy, undertook in October 1979 by virtue of an agreement entered into with the Stichting Ontwikkelings- en Saneringsfonds voor de Landbouw

JUDGMENT OF 28. 4. 1988 — CASE 120/86

(Agricultural Development and Restructuring Fund) not to deliver milk or dairy products for a period of five years from 1 October 1979 to 30 September 1984. In return, he received a non-marketing premium in a total amount of HFL 193 418 under Council Regulation No 1078/77 of 17 May 1977 introducing a system of premiums for the non-marketing of milk and milk products and for the conversion of dairy herds (Official Journal 1977, L 131, p. 1).

3   After making certain investments, in and after August 1983, with a view to resuming dairy production at the end of the five-year non-marketing period, he applied to the competent Netherlands authorities on 28 May 1984 for the allocation to him of a reference quantity of 726 000 kg (132 cows x 5 500 kg) of milk, under the additional levy system which had been introduced in the mean time by Council Regulation No 856/84 of 31 March 1984 amending Regulation No 804/68 on the common organization of the market in milk and milk products (Official Journal 1984, L 90, p. 10), supplemented by Council Regulation No 857/84 of 31 March 1984 adopting general rules for the application of the levy referred to in Article 5c of Regulation (EEC) No 804/68 in the milk and milk products sector (Official Journal 1984, L 90, p. 13) and by Commission Regulation No 1371/84 of 16 May 1984 laying down detailed rules for the application of the additional levy referred to in Article 5c of Regulation (EEC) No 804/68 (Official Journal 1984, L 132, p. 11).

4   That application was rejected by a decision of the Minister for Agriculture and Fisheries on 24 September 1984 on the ground that Mr Mulder had not provided proof of milk production during 1983, the reference year adopted for the purpose of applying the new system, and that the lack of any production was not due to *force majeure*. Mr Mulder appealed against that decision to the College van Beroep voor het Bedrijfsleven.

5   Considering that the judgment to be given depended upon the interpretation and validity of the Community regulations on the additional levy on milk, the College van Beroep voor het Bedrijfsleven stayed the proceedings and referred the following questions to the Court for a preliminary ruling:

'1. Having regard to the third recital in its preamble, must Council Regulation (EEC) No 857/84, as supplemented by Commission Regulation (EEC) No 1371/84, be interpreted as meaning that in establishing the reference quantities referred to in Article 2 Member States may not take into account situations

2346

which are not provided for in the Community regulations, in particular the situation of persons who in accordance with Council Regulation (EEC) No 1078/77 have delivered no milk in a reference year, and may not adopt measures permitting the grant to such persons of a special quantity?

2. If the answer to the first question is in the affirmative, is Regulation No 857/84 invalid on the ground that it is contrary to Community law as it now stands, in particular:

   a. the principle of legal certainty
   b. the principle of proportionality
   c. the right to enjoy property
   d. the prohibition of discrimination laid down in Article 40 (3) of the EEC Treaty
   e. the prohibition of the misuse of powers,

   since the regulation does not take into account persons who in accordance with Regulation (EEC) No 1078/77 have delivered no milk in a reference year?

3. If the answer to the first question is in the negative, does a Member State infringe Community law as it now stands when it fails to make provision as referred to in the first question for persons who in accordance with Regulation (EEC) No 1078/77 have delivered no milk in a reference year?'

6   Reference is made to the Report for the Hearing for a fuller account of the facts of the main proceedings, the relevant Community legislation, the course of the procedure and the observations submitted to the Court, which are mentioned or discussed hereinafter only in so far as is necessary for the reasoning of the Court.

Legislative background

7   In order to answer the questions submitted, it is necessary first of all to review the applicable Community regulations.

8   In order to limit surplus production of milk and milk products in the common market, Regulation No 1078/77 introduced for a specific period a system of premiums for producers who undertook either not to market milk and milk products (non-marketing premium) or to convert their dairy herds to meat production (conversion premium). The non-marketing premiums at issue in this case were granted upon application to any milk producer who undertook not to dispose of milk or milk products, for a consideration or free of charge, from his holding for a period of five years (Articles 1 and 2).

9   Faced with constantly increasing milk production, by Council Regulation No 856/84 the Council also introduced an additional levy payable, by virtue of Article 1, on the quantities of milk delivered in excess of a reference quantity to be determined; it is payable either by milk producers (Formula A) or by purchasers of milk or other milk products, who are to pass it on to producers who have increased their deliveries, in proportion to their contribution to the purchaser's reference quantity being exceeded (Formula B).

10  The procedure for calculating the reference quantity, that is to say the quantities exempt from the additional levy, was laid down by Council Regulation No 857/84. Pursuant to Article 2 (1) the reference quantity is to be equal to the quantity of milk or milk equivalent delivered by the producer during the 1981 calendar year, plus 1%. Under Article 2 (2), however, the Member States may provide that on their territory the reference quantity shall be equal to the quantity of milk or milk equivalent delivered or purchased during the 1982 or 1983 calendar year, weighted by a percentage established so as not to exceed the guaranteed quantity laid down for the Member State concerned.

11  Derogations from those rules are envisaged, for certain special situations, in Articles 3, 4 and 4a of the regulation. Thus, under Article 3, the Member States are authorized to grant a special reference quantity to producers who have adopted milk production development plans under Council Directive 72/159/EEC of 17 April 1972 on the modernization of farms (Official Journal, English Special Edition 1972 (II), p. 324), lodged before 1 March 1984, or to producers who have carried out investments without a development plan (Article 3 (1)), and to young farmers setting up after 31 December 1980 (Article 3 (2)). Furthermore, producers whose milk production during the reference year adopted was affected by exceptional events, such as a serious natural disaster, the accidental destruction of the producer's resources or buildings or an epizootic, are to obtain, on request, reference to another calendar reference year within the 1981 to 1983 period (Article 3 (3)). That list of special situations was supplemented by Article 3 of Commission Regulation No 1371/84.

12  Article 4 (1) of Regulation No 857/84 empowers the Member States, in order to complete the restructuring of milk production, *inter alia* to grant additional reference quantities to producers realizing a milk production development plan approved after the entry into force of Regulation No 857/84 under Directive 72/159/EEC, and to producers undertaking farming as their main occupation.

13  Moreover, Article 4a, inserted by Council Regulation No 590/85 of 26 February 1985 (Official Journal 1985, L 68, p. 1), authorizes the Member States for a limited period to allocate non-utilized reference quantities of producers or purchasers to producers or purchasers in the same region and, if necessary, in other regions. Finally, Article 7 provides that where an undertaking is sold, leased or transferred by inheritance, all or part of the corresponding reference quantity is to be transferred to the purchaser, tenant or heir.

### The first question

14  As regards the interpretation of the regulations in question, all the parties which have submitted observations to the Court consider that they contain an exhaustive list of the situations in which a milk producer can obtain a reference quantity under the additional milk levy system. They differ, however, as to the extent to which either of the provisions in question can be applied where, as in the present

case, the producer concerned, in fulfilment of an undertaking given under Regulation No 1078/77, delivered no milk during the reference year adopted.

15 An analysis of the scheme and purpose of Articles 3 and 4 of Council Regulation No 857/84 shows that they list exhaustively the situations in which special or additional reference quantities may be allocated by the Member States. Those provisions do not cover the situation of a producer who delivered no milk during the reference year because of a non-marketing undertaking entered into under Regulation No 1078/77; consequently, such a producer may claim a reference quantity only if he falls within one or more of the situations specifically envisaged for that purpose.

16 It appears that the situations provided for do not cover all the circumstances in which producers who have entered into non-marketing undertakings may find themselves. That is true in particular of producers whose non-marketing period expires after the reference year and who have not adopted an investment plan or made investments under the conditions laid down in Article 3 of Regulation No 857/84.

17 It should be added that the Member States may take account of the special situations envisaged in Articles 3 and 4 of Regulation No 857/84 only within the limits of the quantities available for that purpose. This is expressly laid down in Article 5 of the regulation, pursuant to which additional reference quantities may be granted only within the guaranteed quantity limit for the Member State concerned, the additional quantities in question being drawn from a reserve constituted by the Member State within its guaranteed quantity.

18 As regards Article 4a of Regulation No 857/84, it must be observed that it accords the Member States a wide margin of discretion regarding allocation of the non-utilized reference quantities of producers or purchasers. The Member States may, on the basis of that provision, also take into account the special situation of producers who entered into an undertaking not to market milk for a period of five years. However, that power is limited by the rule laid down in the second

subparagraph of Article 4a (1), pursuant to which such quantities must be allocated in order of priority within the same region. Moreover, the application of that provision is limited in time, even if the initial period of 12 months was subsequently extended. Finally, the application of that provision depends upon the extent to which reference quantities are not used by producers or purchasers and are therefore available for re-allocation.

19  It follows that the legislation in question does not in all cases ensure that a producer in circumstances such as those with which the main proceedings are concerned can obtain a reference quantity under the additional levy system.

20  It must therefore be stated in reply to the first question that Council Regulation (EEC) No 857/84 of 31 March 1984, as supplemented by Commission Regulation (EEC) No 1371/84 of 16 May 1984, must be interpreted as meaning that for the purpose of fixing the reference quantities referred to in Article 2 of that regulation the Member States may take into account the circumstances of producers who, pursuant to an undertaking entered into under Council Regulation (EEC) No 1078/77 of 17 May 1977, did not deliver milk during the reference year adopted only in so far as each producer fulfils the specific conditions laid down in Regulation No 857/84 and if the Member States have reference quantities available for that purpose.

**The second question**

21  Mr Mulder maintains that the legislation in question infringes general principles of Community law and is therefore invalid. He claims in the first place that Regulation No 857/84 infringes the principles of legal certainty and protection of legitimate expectations, since those persons who took advantage of the system introduced by Regulation No 1078/77 were entitled to expect to be able to resume production upon the expiry of their non-marketing undertaking. He also claims that the legislation in question infringes the principle of proportionality and the prohibition of discrimination between producers, and amounts to *de facto* expropriation of his holding. Finally, Mr Mulder considers that the Community legislature misused its powers by using a market-regulating instrument in order to adopt a measure of structural policy.

22   On the other hand, the Netherlands Government, the Council and the Commission all contend that the legislation in question is valid. The Council and the Commission base their view mainly upon the argument that the Member States have available to them several ways of granting quotas not subject to the additional levy to those producers who, during the reference year, received a premium under Regulation No 1078/77. The Netherlands Government and the Commission — in an alternative submission — analyse the scope of the general principles relied upon and conclude that they have been properly respected in this case. As regards more particularly the principles of legal certainty and protection of legitimate expectations, the Netherlands Government and the Commission contend that they have not been infringed because the producers concerned were not entitled to expect that, upon the expiry of their five-year undertaking, they would have an unlimited right to resume milk production.

23   It must be conceded, as the Netherlands Government and the Commission have correctly observed, that a producer who has voluntarily ceased production for a certain period cannot legitimately expect to be able to resume production under the same conditions as those which previously applied and not to be subject to any rules of market or structural policy adopted in the mean time.

24   The fact remains that where such a producer, as in the present case, has been encouraged by a Community measure to suspend marketing for a limited period in the general interest and against payment of a premium he may legitimately expect not to be subject, upon the expiry of his undertaking, to restrictions which specifically affect him precisely because he availed himself of the possibilities offered by the Community provisions.

25   However, the regulations on the additional levy on milk give rise to such restrictions for producers who, pursuant to an undertaking entered into under Regulation No 1078/77, did not deliver milk during the reference year. As stated in the reply to the first question, those producers may in fact be denied a reference quantity under the new system precisely because of that undertaking if they do not fulfil the specific conditions laid down in Regulation No 857/84 or if the Member States have no reference quantities available.

26   Contrary to the Commission's contention, total and continuous exclusion of that kind for the entire period of application of the regulations on the additional levy, preventing the producers concerned from resuming the marketing of milk at the end of the five-year period, was not an occurrence which those producers could have foreseen when they entered into an undertaking, for a limited period, not to deliver milk. There is nothing in the provisions of Regulation No 1078/77 or in its preamble to show that the non-marketing undertaking entered into under that regulation might, upon its expiry, entail a bar to resumption of the activity in question. Such an effect therefore frustrates those producers' legitimate expectation that the effects of the system to which they had rendered themselves subject would be limited.

27   It follows that the regulations on the additional levy on milk were adopted in breach of the principle of protection of legitimate expectations. Those regulations must therefore be declared invalid on that ground, and it is unnecessary to consider the other arguments as to their invalidity put forward in the course of the proceedings.

28   The reply to the second question submitted must therefore be that Council Regulation (EEC) No 857/84 of 31 March 1984, as supplemented by Commission Regulation (EEC) No 1371/84 of 16 May 1984, is invalid in so far as it does not provide for the allocation of a reference quantity to producers who, pursuant to an undertaking entered into under Council Regulation (EEC) No 1078/77 of 17 May 1977, did not deliver milk during the reference year adopted by the Member State concerned.

## The third question

29   In view of the reply given to the first and second questions, no reply need be given to the third question.

## Costs

30   The costs incurred by the Netherlands Government, the Council of the European Communities and the Commission of the European Communities, which have submitted observations to the Court, are not recoverable. Since these proceedings are, in so far as the parties to the main proceedings are concerned, in the nature of a step in the action pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT,

in reply to the questions submitted to it by the College van Beroep voor het Bedrijfsleven by a judgment of 14 March 1986, hereby rules:

(1) Council Regulation (EEC) No 857/84 of 31 March 1984, as supplemented by Commission Regulation (EEC) No 1371/84 of 16 May 1984, must be interpreted as meaning that for the purpose of fixing the reference quantities referred to in Article 2 of that regulation the Member States may take into account the circumstances of producers who, pursuant to an undertaking entered into under Council Regulation (EEC) No 1078/77 of 17 May 1977, did not deliver milk during the reference year adopted only in so far as each producer fulfils the specific conditions laid down in Regulation No 857/84 and if the Member States have reference quantities available for that purpose.

(2) Council Regulation (EEC) No 857/84 of 31 March 1984, as supplemented by Commission Regulation (EEC) No 1371/84 of 16 May 1984, is invalid in so far as it does not provide for the allocation of a reference quantity to producers who, pursuant to an undertaking entered into under Council Regulation (EEC) No 1078/77 of 17 May 1977, did not deliver milk during the reference year adopted by the Member State concerned.

Bosco        Due        Moitinho de Almeida        Koopmans        Everling

Bahlmann        Galmot        Kakouris        Joliet        O'Higgins        Schockweiler

Delivered in open court in Luxembourg on 28 April 1988.

J.-G. Giraud  
Registrar

A. J. Mackenzie Stuart  
President