# EXHIBIT 38

JUDGMENT OF THE COURT (Third Chamber)

21 January 2010 (*)

(Failure of a Member State to fulfil obligations – Freedom to provide services – Article 49 EC – Annex XII to the Act of Accession – List referred to in Article 24 of the Act of Accession: Poland – Chapter 2, paragraph 13 – Possibility of derogation by the Federal Republic of Germany from the first paragraph of Article 49 EC – 'Standstill' clause – Agreement of 31 January 1990 between the Government of the Federal Republic of Germany and the Government of the Republic of Poland on the posting of workers from Polish undertakings to carry out works contracts – Exclusion of the possibility for undertakings established in other Member States to conclude works contracts with Polish undertakings for work to be carried out in Germany – Extension of the restrictions existing at the date of signature of the Treaty of Accession relating to the access of Polish workers to the German labour market)

In Case C‑546/07,

ACTION under Article 226 EC for failure to fulfil obligations, brought on 5 December 2007,

**European Commission,** represented by E. Traversa and P. Dejmek, acting as Agents, with an address for service in Luxembourg,

applicant,

supported by

**Republic of Poland,** represented by M. Dowgielewicz, acting as Agent,

intervener,

v

**Federal Republic of Germany,** represented by J. Möller, M. Lumma and C. Blaschke, acting as Agents, with an address for service in Luxembourg,

defendant,

THE COURT (Third Chamber),

composed of J.N. Cunha Rodrigues (Rapporteur), President of the Second Chamber, acting as President of the Third Chamber, A. Rosas, U. Lõhmus, A. Ó Caoimh and A. Arabadjiev, Judges,

Advocate General: J. Mazák,

Registrar: R. Grass,

after hearing the Opinion of the Advocate General at the sitting on 30 September 2009,

gives the following

**Judgment**

1   By its application, the Commission of the European Communities requests the Court to declare that:

  –   by interpreting, in its administrative practice, the term 'undertaking from the other side' in Paragraph 1(1) of the Agreement of 31 January 1990 between the Government of the Federal Republic of Germany and the Government of the Republic of Poland on the posting of workers from Polish undertakings to carry out works contracts, as amended on 1 March and 30 April 1993 (BGBl. 1993 II, p. 1125; 'the German-Polish Agreement'), as meaning 'a German undertaking', and

  –   by having extended, pursuant to the labour market protection clause contained in Leaflet 16a of the Federal Employment Agency of the Federal Republic of Germany, entitled 'Employment of foreign workers from the new Member States of the European Union under works contracts in the Federal Republic of Germany' (Merkblatt 16a, 'Beschäftigung ausländischer Arbeitnehmer aus den neuen Mitgliedstaaten der EU im Rahmen von Werkverträgen in der Bundesrepublik Deutschland'; 'Leaflet 16a'), regional restrictions on access to the labour market after 16 April 2003, the date of signature of the Treaty of Accession of the Republic of Poland to the European Union (OJ 2003 L 236, p. 17; 'the Treaty of Accession'),

the Federal Republic of Germany has failed to fulfil its obligations under Article 49 EC and has infringed the 'standstill' clause in Chapter 2, paragraph 13, of Annex XII to the Act concerning the conditions of accession of the Czech Republic, the Republic of Estonia, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the

Republic of Poland, the Republic of Slovenia and the Slovak Republic and the adjustments to the Treaties on which the European Union is founded (OJ 2003 L 236, p. 33; 'the Act of Accession').

**Legal context**

*Community legislation*

The Act of Accession

2   Article 24 of the Act of Accession stipulates:

'The measures listed in Annexes V, VI, VII, VIII, IX, X, XI, XII, XIII and XIV to this Act shall apply in respect of the new Member States under the conditions laid down in those Annexes.'

3   Annex XII to the Act of Accession is entitled 'List referred to in Article 24 of the Act of Accession: Poland'. Chapter 2 of that annex, entitled 'Freedom of movement for persons', provides, in paragraph 13:

'In order to address serious disturbances or the threat thereof in specific sensitive service sectors on their labour markets, which could arise in certain regions from the transnational provision of services, as defined in Article 1 of Directive 96/71/EC, and as long as they apply, by virtue of the transitional provisions laid down above, national measures or those resulting from bilateral agreements to the free movement of Polish workers, Germany and Austria may, after notifying the Commission, derogate from the first paragraph of Article 49 of the EC Treaty with a view to limit, in the context of the provision of services by companies established in Poland, the temporary movement of workers whose right to take up work in Germany and Austria is subject to national measures.

…

The effect of the application of this paragraph shall not result in conditions for the temporary movement of workers in the context of the transnational provision of services between Germany or Austria and Poland which are more restrictive than those prevailing on the date of signature of the Treaty of Accession.'

*The German-Polish Agreement*

4   In accordance with Article 1(1) of the German-Polish Agreement:

'Work permits shall be issued to Polish workers who are detached for temporary employment on a works contract between a Polish employer and an undertaking from the other side (contractual workers) regardless of the situation and trends of the labour market.'

5   Article 2(5) of that agreement provides:

'In implementing this Agreement in cooperation with the Ministry of Labour and Social Policy of the Republic of Poland, the Federal Employment Agency of the Federal Republic of Germany shall ensure that the concentration of employed contractual workers in a given region or sector does not occur. The present Agreement shall not apply to workers in the fire-retardant and chimney construction sector.'

*Implementing instructions of the Federal Employment Agency of the Federal Republic of Germany*

6   The implementing instructions adopted by the Federal Employment Agency include those set out in Leaflet 16a, which concerns employment of foreign workers from the new Member States of the European Union under works contracts in the Federal Republic of Germany. Leaflet 16a contains a labour market protection clause. Under that clause, works contracts involving foreign workers are in principle prohibited in cases where the work is to be carried out in districts of the Federal Employment Agency in which the average unemployment rate for the previous six months has been at least 30% higher than the unemployment rate for the Federal Republic of Germany as a whole. The list of the districts to which that clause applies is updated every quarter.

**Pre-litigation procedure**

7   By letter of formal notice of 3 April 1996, the Commission drew the attention of the Federal Republic of Germany to the fact that German administrative practice with regard to application of the German-Polish Agreement was incompatible with Article 49 EC, in that the competent German authorities interpreted the term 'undertaking from the other side' in Article 1(1) of that agreement as referring only to German undertakings. As a result of that practice, unlike German undertakings, undertakings from Member States other than the Federal Republic of Germany supplying services in the construction sector in that Member State were prevented from concluding works contracts with Polish undertakings.

8   By letter of 28 June 1996, the Federal Republic of Germany informed the Commission that it did not share that institution's point of view as set out in its letter of 3 April 1996.

9   On 12 November 1997, the Commission sent a reasoned opinion to the Federal Republic of Germany in which it reiterated that point of view and called on it to take the measures necessary to comply with that opinion.

10      Following a meeting between representatives of the Commission and of the Federal Republic of Germany on 5 May 1998, the latter stated, in a letter of 19 July 1998, that efforts were being made to find a political solution in the context of the Europe Agreement establishing an association between the European Communities and their Member States, of the one part, and the Republic of Poland, of the other part, signed in Brussels on 16 December 1991. However, those efforts proved to be unsuccessful.

11      In reply to an enquiry from the Commission of 15 June 2004, the Federal Republic of Germany stated, by letter of 6 December 2004, that it stood by its interpretative practice with regard to the German-Polish Agreement and that, in view of the lack of action on the part of the Commission for almost seven years, it was entitled to suppose that the procedure for failure to fulfil obligations would no longer be continued.

12      In a supplementary letter of formal notice of 10 April 2006, the Commission drew the attention of the Federal Republic of Germany to the fact that it was maintaining its allegation that Article 49 EC was being infringed. In addition, it claimed that that Member State was also contravening the 'standstill' clause set out in Chapter 2, paragraph 13, of Annex XII to the Act of Accession ('the "standstill" clause') in so far as the extension of the regional restrictions imposed under the labour market protection clause, based on Article 2(5) of the German-Polish Agreement and contained in Leaflet 16a, infringed the prohibition on extending restrictions existing at the date on which the Act of Accession was signed.

13      By letter of 8 June 2006, the Federal Republic of Germany, in response to the first complaint, submitted to the Commission that application of the German-Polish Agreement to all Member States and their undertakings was not appropriate. In addition, it referred to the public-order reservation laid down in Article 46 EC, submitting that it was appropriate to ensure that that agreement was applied correctly, that the necessary review of compliance with the rules in force was carried out and that infringements were efficiently dealt with. It was, however, in the submission of that Member State, impossible to recover, in a rapid and reliable manner, social security debts from undertakings established in other Member States. With regard to the second complaint, the Federal Republic of Germany submitted that the extension of the regional restrictions based on the labour market protection clause to areas not covered in April 2003 did not infringe the 'standstill' clause, as the updating of the list of regional restrictions imposed pursuant to Article 2(5) of that agreement did not constitute an amendment to the rules as such, but was simply the result of changes noted in the regional labour markets.

14      In its supplementary reasoned opinion of 15 December 2006, the Commission repeated its complaints, while, in its reply of 19 February 2007, the Federal Republic of Germany maintained its point of view.

15      In those circumstances, the Commission decided to bring the present action.

**The action**

*Admissibility*

Arguments of the parties

16      The Federal Republic of Germany submits that the action must be declared inadmissible, at least with regard to the complaint alleging infringement of Article 49 EC.

17      In that regard, that Member State claims that it was entitled legitimately to suppose that the Commission's inaction between November 1997 and June 2004, that is to say, over a period of almost seven years, amounted to abandonment of that complaint. The legitimate expectation of the German authorities that that complaint would be abandoned was all the more justified because, according to a letter which Mr Monti, a Member of the Commission, had sent to them in July 1998, the institution was not favourable to termination of the German-Polish Agreement and would wait until November 1998 in order to determine whether there were any other possible solutions. Since the Commission did not take any action thereafter, the German authorities were entitled to assume that the Commission had abandoned its complaint alleging infringement of Article 49 EC.

18      It was only after signature of the Treaty of Accession, that is to say, at a time when the Federal Republic of Germany was no longer in a position to rescind the German-Polish Agreement without failing to fulfil its 'standstill' obligation, that the Commission unreasonably took further procedural measures, even though it was specifically at the request of the Commission that Germany had agreed not to rescind that agreement.

19      The Commission contends that although, in certain cases, excessive duration of the pre-litigation procedure provided for in Article 226 EC may make it more difficult for the Member State concerned to refute the Commission's arguments and thus infringe its rights of defence, that is not the situation in the present case. In addition, the fact that further action on a reasoned opinion was not taken immediately or shortly after it had been issued cannot create, on the part of the Member State concerned, a legitimate expectation that the procedure has been closed.

20      The Commission adds that Mr Monti's letter, referred to in paragraph 17 of the present judgment, stated expressly that the procedure could not be closed in the light of the rules of the internal market and that the institution did not at any time give reason for a belief that it would abandon the first complaint.

Findings of the Court

21   In accordance with settled case-law, it is for the Commission to judge at what time it will bring an action for failure to fulfil obligations; the considerations which determine its choice of time cannot affect the admissibility of the action (see, inter alia, Case C-317/92 *Commission* v *Germany* [1994] ECR I-2039, paragraph 4).

22   The rules of Article 226 EC must be applied and the Commission is not obliged to act within a specific period, save where the excessive duration of the pre-litigation procedure in that provision is capable of making it more difficult for the Member State concerned to refute the Commission's arguments and of thus infringing the rights of the defence. It is for the Member State concerned to provide evidence that it has been so affected (see, inter alia, Case C-490/04 *Commission* v *Germany* [2007] ECR I-6095, paragraph 26).

23   In the present case, the Federal Republic of Germany has not proved that the inhabitual duration of the procedure has had any effect on the manner in which it organised its defence.

24   As the Advocate General observed in point 21 of his Opinion, the fact that, while the pre-litigation procedure was under way, the 'standstill' clause entered into force, which, according to the Federal Republic of Germany, prevented it from rescinding the Agreement with Poland, could not, as such, make it more difficult for that Member State to refute the arguments advanced by the Commission with regard to the complaint alleging infringement of Article 49 EC. In addition, as the Commission notes, the fact that it issued the supplementary letter of formal notice of 10 April 2006 and the supplementary reasoned opinion of 15 December 2006, the purpose of which was, in particular, to repeat the original complaint, enabled the Federal Republic of Germany to set out, in full knowledge of the facts, the reasons why it was contesting that complaint.

25   Furthermore, the procedure for a declaration of a failure on the part of a Member State to fulfil its obligations is based on the objective finding that a Member State has failed to fulfil its obligations under Community law, and the principle of protection of legitimate expectations cannot, in a case such as the present, be relied on by a Member State in order to preclude an objective finding of a failure on its part to fulfil its obligations, since to admit that justification would run counter to the aim pursued by the procedure under Article 226 EC (see, inter alia, Case C-523/04 *Commission* v *Netherlands* [2007] ECR I-3267, paragraph 28).

26   It is apparent from the Court's case-law that the fact that the Commission did not take further action on a reasoned opinion immediately or shortly after its issue cannot create, on the part of the Member State concerned, a legitimate expectation that the procedure has been closed (see, inter alia, Case C-317/92 *Commission* v *Germany*, paragraph 4). That is *a fortiori* the position where, as in the present case, it is not in dispute that efforts were made during the alleged period of inactivity, inter alia in the context of the Europe Agreement referred to in paragraph 10 of this judgment, to find a solution which would put an end to the alleged infringement.

27   Finally, as no position was adopted by the Commission indicating that it was going to close the procedure instituted for a declaration of a failure to fulfil obligations, whether in the letter from Mr Monti referred to in paragraphs 17 and 20 of the present judgment or at any other stage of the procedure, a fact which the Federal Republic of Germany does not contest, that Member State cannot validly claim that the Commission infringed the principle of legitimate expectations by not closing that procedure.

28   It follows that the plea of inadmissibility raised by the Federal Republic of Germany must be rejected and that the action brought by the Commission is admissible.

*Substance*

The first complaint

–   Arguments of the parties

29   The Commission submits that, by interpreting the expression 'undertaking from the other side' in Article 1(1) of the German-Polish Agreement as referring only to German undertakings, the German authorities are preventing undertakings from other Member States which wish to carry out work in Germany from concluding contracts with a Polish contractor, unless the undertakings from those other Member States establish a subsidiary in Germany. Such an interpretation, which does not necessarily follow, would have the effect of dissuading the latter undertakings from exercising their right under article 49 EC freely to provide services with a view to concluding, in accordance with the German-Polish Agreement, works contracts for the performance of works in Germany using the quota of Polish workers provided for by that agreement.

30   The Commission submits that such an interpretation of Article 1(1) of the German-Polish Agreement constitutes discrimination directly based on the nationality of the undertaking or the location of its registered office, which cannot be justified other than on grounds of public policy, public security or public health. Recourse to such grounds presupposes that it is necessary to maintain a discriminatory measure in order to prevent a genuine and sufficiently serious threat affecting one of the fundamental interests of society. That, the Commission submits, is not the case here.

31   The mere fact that undertakings which wish to conclude a works contract with a Polish entrepreneur are not established in Germany does not prevent monitoring of the proper application of the German-Polish Agreement. As regards the need to ensure effective enforcement of the undertaking's liability in the event of non-payment of social security contributions, the Commission observes that purely administrative considerations do not constitute an overriding requirement in the public interest and cannot therefore justify restrictions on a fundamental freedom guaranteed by the Treaty. Furthermore, contrary to the assertions of the Federal Republic of Germany, there is no reason to fear that an extension of the German-Polish Agreement to undertakings from other Member States will

entail or encourage the inappropriate application or circumvention of the transitional provisions of the Treaty of Accession, in addition to the fact that such a fear in no way constitutes a sufficiently serious and real risk to public order or security such as to justify a discriminatory restriction on the freedom to provide services.

32   Finally, the Commission points out, referring in this regard to, inter alia, Case C-55/00 *Gottardo* [2002] ECR I-413, paragraph 34, that, when a Member State concludes a bilateral convention with a non-member country, the fundamental principle of equal treatment requires that that Member State grant nationals of other Member States the same advantages as those which its own nationals enjoy under that convention unless it can provide objective justification for refusing to do so. That, however, is not the case here.

33   The Republic of Poland, intervening in support of the form of order sought by the Commission, submits, inter alia, that, by reason of the interpretation of Article 1(1) of the German-Polish Agreement enshrined in German administrative practice, Polish undertakings cannot carry out, on German territory, contracts concluded with undertakings from Member States other than the Federal Republic of Germany, in the same way as undertakings established in those other Member States and providing services in Germany cannot use Polish undertakings as subcontractors. Like the Commission, the Republic of Poland concludes that that practice amounts to an infringement of the principle of national treatment which cannot be justified on any of the grounds set out in Article 46 EC and that there is nothing to prevent extension of the advantages of that agreement to undertakings from Member States other than the Federal Republic of Germany.

34   The Federal Republic of Germany argues that the disputed interpretation is consistent with the wording of the German-Polish Agreement. The fact that that agreement confers rights only on German undertakings does not, it contends, constitute a prohibited restriction within the meaning of Article 49 EC. Entrepreneurs from other Member States are, in principle, entitled to provide services in Germany, but are merely not able to take advantage of Article 1(1) of that agreement to have Polish undertakings carry out work in performance of a contract.

35   Moreover, the German undertakings which can take advantage of the German-Polish Agreement are all undertakings established in Germany, including branches of undertakings from other Member States.

36   In addition, according to the Federal Republic of Germany, German undertakings and foreign undertakings are not in comparable situations, which in principle rules out the existence of any prohibited discrimination. Furthermore, the German-Polish Agreement is a balanced agreement, based on reciprocity, from which it is not possible simply to detach specific rights in order to benefit nationals of a Member State which is not a party to that agreement. With regard to those two arguments, the Federal Republic of Germany refers, in particular, to Case C-376/03 *D.* [2005] ECR I-5821, paragraph 61 et seq.).

37   What is more, an extensive interpretation of Article 49 EC would have the effect of rendering meaningless the transitional provisions in the Act of Accession, the context and purpose of which were to bring an end to the repercussions resulting from differences in conditions of competition in strongly service-oriented sectors and to prevent imbalances in the labour market.

38   In any event, even if the interpretation of Article 1(1) of the German-Polish Agreement enshrined in German administrative practice were considered to constitute a restriction within the meaning of Article 49 EC, that would be justified by virtue of the combined provisions of Articles 55 EC and 46 EC on the ground that the extension of the benefit of that agreement to undertakings not established in Germany would no longer ensure adequate control, without incurring disproportionate administrative costs, of the proper performance of that agreement, and would not make it possible to ensure effective enforcement of the liability of an undertaking which engages a Polish subcontracting undertaking to carry out works in the event of non-payment of social security contributions by the latter.

–   Findings of the Court

39   It is clear from settled case-law that the freedom to provide services implies, in particular, the abolition of any discrimination against a service provider on account of its nationality or the fact that it is established in a Member State other than that in which the service is provided (see, inter alia, C-490/04 *Commission* v *Germany*, paragraph 83 and the case-law cited). The requirement that an undertaking create a permanent establishment or branch in the Member State in which the services are provided runs directly counter to the freedom to provide services since it renders impossible the provision of services, in that Member State, by undertakings established in other Member States (see, to that effect, inter alia, Case 205/84 *Commission* v *Germany* [1986] ECR 3755, paragraph 52; Case C-279/00 *Commission* v *Italy* [2002] ECR I-1425, paragraph 17; and Case C-496/01 *Commission* v *France* [2004] ECR I-2351, paragraph 65).

40   In that regard, it must be held that Article 1(1) of the German-Polish Agreement, as interpreted in German administrative practice, creates direct discrimination, contrary to Article 49 EC, against service providers established in Member States other than the Federal Republic of Germany which wish to conclude a works contract with a Polish undertaking in order to provide services in Germany.

41   According to the interpretation of that article applied in German administrative practice, only undertakings which have their registered office or a permanent establishment in Germany may conclude works contracts with a Polish undertaking and thus benefit, by providing services in Germany, from the quota for Polish workers guaranteed under the German-Polish Agreement, notwithstanding the transitional provisions in the Act of Accession.

42   In so far as the Federal Republic of Germany submits that the disputed administrative practice is justified by the fact that the provision in question is contained in a bilateral international agreement, it must be noted that, when giving effect to commitments assumed under international agreements, be it an agreement between Member States or an agreement between a Member State and one or more non-

member countries, Member States are required, subject to the provisions of Article 307 EC, to comply with the obligations that Community law imposes on them (see, inter alia, *Gottardo*, paragraph 33).

43    The Court has, admittedly, held that disturbing the balance and reciprocity of a bilateral international agreement concluded between a Member State and a non-member country may constitute an objective justification for the refusal by a Member State party to that agreement to extend to nationals of other Member States the advantages which its own nationals derive from that agreement (see, inter alia, Case C-307/97 *Saint-Gobain ZN* [1999] ECR I-6161, paragraph 60, and *Gottardo*, paragraph 36).

44    Nevertheless, contrary to the situations at issue in those cases and that which gave rise to the judgment in *D.*, on which the Federal Republic of Germany relies, application of the German-Polish Agreement concerns, since the accession of the Republic of Poland to the Union, two Member States, with the result that the provisions of that agreement can apply to relations between those Member States only in compliance with Community law, in particular with the Treaty rules on the free provision of services (see, by analogy, inter alia, Case 235/87 *Matteucci* [1988] ECR 5589, paragraphs 16 and 19 to 21, and Case C-478/07 *Budějovický Budvar* [2009] ECR I-0000, paragraphs 97 and 98).

45    To that must be added, as the Republic of Poland rightly points out, that the extension, to undertakings established in Member States other than the Federal Republic of Germany, of the right to conclude works contracts with subcontracting Polish undertakings is not liable to affect, as such, the quota fixed pursuant to Article 2(5) of the German-Polish Agreement.

46    Likewise, contrary to the submissions of the Federal Republic of Germany, there is nothing to support the view that an undertaking established in another Member State is in a situation different from that of undertakings established in Germany so far as concerns the possibility of entering into works contracts with Polish undertakings with a view to providing services in Germany.

47    Furthermore, it is apparent from the case-law of the Court that provisions such as those of the German-Polish Agreement here at issue will not be consistent with Community law unless they fall within an express derogating provision such as Article 46 EC, to which Article 55 EC refers (see, inter alia, Case C-490/04 *Commission* v *Germany*, paragraph 86).

48    It follows from Article 46 EC, which must be interpreted strictly, that discriminatory rules may be justified only on grounds of public policy, public security or public health (see, inter alia, Case C-490/04 *Commission* v *Germany*, paragraph 86).

49    None the less, recourse to such justification presupposes the existence of a genuine and sufficiently serious threat affecting one of the fundamental interests of society (see, to that effect, inter alia, Case C-114/97 *Commission* v *Spain* [1998] ECR I-6717, paragraph 46, and Case C-567/07 *Woningstichting Sint Servatius* [2009] ECR I-0000, paragraph 28).

50    In order to justify the prohibition of the posting by Polish undertakings of Polish workers under works contracts concluded with undertakings which do not have their registered office or a permanent establishment in Germany, the Federal Republic of Germany argues in particular that it is necessary to ensure efficient monitoring of the proper application of the German-Polish Agreement, which, in its view, can be ensured in respect of undertakings established in other Member States only by incurring excessive additional administrative costs, and that there are potential problems in the recovery of social security debts from undertakings responsible for paying amounts corresponding to those debts under the German rules if they do not have a permanent establishment in Germany.

51    In so doing, the Federal Republic of Germany has failed to put forward any convincing argument which could be based on one of the grounds set out in Article 46 EC, since economic considerations and mere practical difficulties in the implementation of the German-Polish Agreement are not, in any event, sufficient to justify restrictions on a fundamental freedom (see, by analogy, inter alia, Case C-18/95 *Terhoeve* [1999] ECR I-345, paragraph 45) or, *a fortiori*, a derogation under Article 46 EC, which presupposes the existence of a genuine and sufficiently serious threat affecting one of the fundamental interests of society.

52    Finally, with regard to the alleged risk of circumvention of the transitional provisions favourable to the Federal Republic of Germany which were inserted into the Treaty of Accession in order to prevent serious disturbance to the German labour market, suffice it to note that the extension to undertakings established in other Member States of the right to enter into works contracts with Polish undertakings, in order that the former may benefit from the quota for Polish workers set pursuant to Article 2(5) of the German-Polish Agreement, is not liable to have such an effect, since the number of work permits granted to Polish workers is not, in any event, altered by the fact of such an extension in favour of undertakings established in other Member States.

53    In those circumstances, the first complaint must be upheld.

The second complaint

– Arguments of the parties

54    The Commission submits that, apart from the fact that it is doubtful whether it can find a basis in Article 2(5) of the German-Polish Agreement, the labour market protection clause in Leaflet 16a infringes the 'standstill' clause.

55    That 'standstill' clause prohibits any intensification of the restrictions existing at the date of signature of the Treaty of Accession, namely 16 April 2003, whether it is based on the application of existing legislation or of legislation adopted after that date, as to hold otherwise would render that clause ineffective. After 16 April 2003, however, new districts, including Bremerhaven, Bochum,

Dortmund, Duisburg, Essen, Wuppertal, Dresden, Cologne, Oberhausen and Recklinghausen, were added to the list of districts subject to the labour market protection clause in Leaflet 16a. Application of that clause has therefore resulted, for Polish workers, in an effective deterioration of access to the German labour market in comparison with the situation which existed before the date on which the Treaty of Accession was signed, something which manifestly runs counter to the 'standstill' clause.

56   The Republic of Poland observes, inter alia, that the labour market protection clause in Leaflet 16a does not constitute implementation of Article 2(5) of the German-Polish Agreement, since that clause does not seek to make the number of workers in a given district dependent on whether there is already a concentration of employed contractual workers there, but rather precludes the conclusion of any works contracts for that district. Furthermore, the inclusion of a district on the list drawn up by the Federal Employment Agency of the Federal Republic of Germany is subject to the level of unemployment in that district and not to the concentration of Polish workers posted there to carry out works contracts.

57   In reply, the Federal Republic of Germany contends that, with regard to the assessment of the situation under Community law, even though it is immaterial whether Article 2(5) of the German-Polish Agreement has been correctly implemented by the labour market protection clause in Leaflet 16a, that is in fact the case.

58   Furthermore, the Federal Republic of Germany claims, that labour market protection clause does not contravene the 'standstill' clause. It argues that the only important point for the purpose of compliance with that clause is that there has been no negative change in the legal situation or administrative practice since signature of the Treaty of Accession, referring in that regard to the following judgments: Case C‑37/98 *Savas* [2000] ECR I‑2927, paragraph 69; Case C‑16/05 *Tum and Dari* [2007] ECR I‑7415, paragraph 49; Joined Cases C‑317/01 and C‑369/01 *Abatay and Others* [2003] ECR I‑12301, paragraph 81; Case C‑302/97 *Konle* [1999] ECR I‑3099, paragraph 52 et seq.; and Case C‑157/05 *Holböck* [2007] ECR I‑4051, paragraph 41.

59   Application of that labour market protection clause, the content of which has not changed since 4 January 1993, has, however, in the submission of the Federal Republic of Germany, led neither to an unfavourable alteration in the legal situation nor to a change in the administrative practice as regards the Republic of Poland. The situation on the German labour market is the only factor which has changed since the entry into force of the 'standstill' clause. There can be no infringement of such a clause because, as in the present case, the administration is applying, in the same way as previously, a provision which has not been amended.

– Findings of the Court

60   Under the labour market protection clause in Leaflet 16a, the content of which, it is common ground, has not been amended since 1993, contracts involving foreign workers are in principle prohibited in cases where the work is to be carried out in districts of the Federal Employment Agency in which the average unemployment rate for the previous six months has been at least 30% higher than the unemployment rate for the Federal Republic of Germany as a whole. The list of the districts to which that clause applies is updated every quarter.

61   As the Federal Republic of Germany has correctly pointed out, the Court is not being called upon, by the present complaint, to determine whether that clause and its application by the German administrative authorities constitute a correct implementation of Article 2(5) of the German-Polish Agreement but to examine whether, as the Commission submits, that clause, as applied by the German administrative authorities, contravenes the 'standstill' clause.

62   Chapter 2, paragraph 13, of Annex XII to the Act of Accession authorises the Federal Republic of Germany to derogate from the first paragraph of Article 49 EC with a view to limit, in the context of the provision of services by companies established in Poland, the temporary movement of workers whose right to take up work in Germany is subject to national measures. That derogation is designed to enable the Federal Republic of Germany to address serious disturbances, or the threat thereof, in specific sensitive service sectors on its labour market, which could arise in certain regions from the transnational provision of services and as long as that Member State applies, by virtue of the transitional provisions, national measures or those resulting from bilateral agreements to the free movement of Polish workers.

63   Furthermore, the abovementioned paragraph 13 contains a 'standstill' clause, pursuant to which application of that provision may not result in conditions for the temporary movement of workers in the context of the transnational provision of services between Germany and Poland which are more restrictive than those prevailing on the date of signature of the Treaty of Accession.

64   Contrary to the Commission's argument, the fact that, after that date, new districts were added to the list of those in which works contracts under the German-Polish Agreement are not authorised does not amount to contravention of the 'standstill' clause.

65   That clause prohibits the creation of 'conditions … which are more restrictive' for the temporary movement of workers than those existing at the date of signature of the Treaty of Accession. That is manifestly not the case where the reduction in the number of Polish workers liable to be posted in the context of the provision of services in Germany is simply the consequence of the application, after that date, of a clause, the terms of which have remained identical, to a factual situation which has developed in the labour market. As the Federal Republic of Germany has correctly pointed out, the list, which is updated every quarter, of districts subject to the prohibition under the labour market protection clause in Leaflet 16a is, in that context, purely declaratory, since there has not been any deterioration in the legal situation or any unfavourable change to German administrative practice.

66   That interpretation is confirmed by the purpose of such 'standstill' clauses, which prohibit generally the introduction of any new measure by a Member State having the object or effect of creating more restrictive conditions than those which applied before the date

from which those clauses come into force (see, to that effect, inter alia, *Savas*, paragraph 69, and Case C-242/06 *Sahin* [2009] ECR I-0000, paragraph 63).

67  In those circumstances, the second complaint must be rejected as unfounded.

68  In the light of all the foregoing considerations, it must be held that, by interpreting, in its administrative practice, the term 'undertaking from the other side' in Paragraph 1(1) of the German-Polish Agreement as meaning 'a German undertaking', the Federal Republic of Germany has failed to fulfil its obligations under Article 49 EC.

**Costs**

69  Under Article 69(2) of the Rules of Procedure, the unsuccessful party is to be ordered to pay the costs if they have been applied for in the successful party's pleadings. Under Article 69(3) of those Rules, where each party succeeds on some and fails on other heads, or where the circumstances are exceptional, the Court may order that the costs be shared or that the parties bear their own costs.

70  In the present case, it is appropriate that the Commission and the Federal Republic of Germany bear their own costs.

71  In accordance with Article 69(4) of the Rules of Procedure, the Republic of Poland is to bear its own costs.

On those grounds, the Court (Third Chamber) hereby:

1. **Declares that, by interpreting, in its administrative practice, the term 'undertaking from the other side' in Paragraph 1(1) of the Agreement of 31 January 1990 between the Government of the Federal Republic of Germany and the Government of the Republic of Poland on the posting of workers from Polish undertakings to carry out works contracts, as amended on 1 March and 30 April 1993, as meaning 'a German undertaking', the Federal Republic of Germany has failed to fulfil its obligations under Article 49 EC;**

2. **Dismisses the remainder of the action;**

3. **Orders the European Commission and the Federal Republic of Germany to bear their own respective costs;**

4. **Orders the Republic of Poland to bear its own costs.**

[Signatures]

---

\* Language of the case: German.