# EXHIBIT 41



Reports of Cases

JUDGMENT OF THE COURT (Grand Chamber)

26 February 2013 *

(Police and judicial cooperation in criminal matters — European arrest warrant —
Surrender procedures between Member States — Decisions rendered at the end of proceedings in
which the person concerned has not appeared in person — Execution of a sentence pronounced in
absentia — Possibility of review of the judgment)

In Case C-399/11,

REQUEST for a preliminary ruling under Article 267 TFEU from the Tribunal Constitucional (Spain),
made by decision of 9 June 2011, received at the Court on 28 July 2011, in the proceedings

**Stefano Melloni**

v

**Ministerio Fiscal,**

THE COURT (Grand Chamber),

composed of V. Skouris, President, K. Lenaerts, Vice-President, A. Tizzano, R. Silva de Lapuerta, L. Bay
Larsen, T. von Danwitz, A. Rosas and E. Jarašiūnas, Presidents of Chambers, E. Levits, A. Ó Caoimh,
J.-C. Bonichot, M. Safjan (Rapporteur) and C.G. Fernlund, Judges,

Advocate General: Y. Bot,

Registrar: M. Ferreira, Principal Administrator,

having regard to the written procedure and further to the hearing on 3 July 2012,

after considering the observations submitted on behalf of:

— Mr Melloni, by L. Casaubón Carles, abogado,

— the Ministerio Fiscal, by J.M. Caballero Sánchez-Izquierdo, acting as Agent,

— the Spanish Government, by S. Centeno Huerta, acting as Agent,

— the Belgian Government, by C. Pochet and T. Materne, acting as Agents,

— the German Government, by J. Kemper and T. Henze, acting as Agents,

---

* Language of the case: Spanish.



— the Italian Government, by G. Palmieri, acting as Agent, assisted by G. Palatiello, avvocato dello Stato,

— the Netherlands Government, by J. Langer and C. Wissels, acting as Agents,

— the Austrian Government, by C. Pesendorfer, acting as Agent,

— the Polish Government, by M. Szpunar, acting as Agent,

— the Portuguese Government, by L. Inez Fernandes, acting as Agent,

— the United Kingdom Government, by H. Walker, acting as Agent,

— the Council of the European Union, by P. Plaza García and T. Blanchet, acting as Agents,

— the European Commission, by I. Martínez del Peral and by H. Krämer and W. Bogensberger, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 2 October 2012,

gives the following

### Judgment

1   This request for a preliminary ruling concerns the interpretation and, if necessary, the validity of Article 4a(1) of Council Framework Decision 2002/584/JHA of 13 June 2002 on the European arrest warrant and the surrender procedures between Member States (OJ 2002 L 190, p. 1), as amended by Council Framework Decision 2009/299/JHA of 26 February 2009 (OJ 2009 L 81, p. 24) ('Framework Decision 2002/584'). It also asks the Court to examine, if necessary, the issue of whether a Member State may refuse to execute a European arrest warrant on the basis of Article 53 of the Charter of Fundamental Rights of the European Union ('the Charter') on grounds of infringement of the fundamental rights of the person concerned guaranteed by the national constitution.

2   The request has been made in proceedings between Mr Melloni and the Ministerio Fiscal concerning the execution of a European arrest warrant issued by the Italian authorities for the execution of a prison sentence handed down by judgment *in absentia* against Mr Melloni.

### Legal context

*The Charter*

3   The second paragraph of Article 47 of the Charter provides:

'Everyone is entitled to a fair and public hearing within a reasonable time by an independent and impartial tribunal previously established by law. Everyone shall have the possibility of being advised, defended and represented.'

4   Article 48(2) of the Charter states:

'Respect for the rights of the defence of anyone who has been charged shall be guaranteed.'

5  Paragraph 52(3) of the Charter states:

'In so far as this Charter contains rights which correspond to rights guaranteed by the Convention for the Protection of Human Rights and Fundamental Freedoms [signed in Rome on 4 November 1950, "the ECHR"], the meaning and scope of those rights shall be the same as those laid down by the said Convention. This provision shall not prevent Union law providing more extensive protection.'

6  Article 53 of the Charter, entitled 'Level of protection', states:

'Nothing in this Charter shall be interpreted as restricting or adversely affecting human rights and fundamental freedoms as recognised, in their respective fields of application, by Union law and international law and by international agreements to which the [European] Union or all the Member States are party, including the [ECHR] and by the Member States' constitutions.'

*Framework Decisions 2002/584 and 2009/299*

7  Article 1(2) and (3) of Framework Decision 2002/584 provides:

'2. Member States shall execute any European arrest warrant on the basis of the principle of mutual recognition and in accordance with the provisions of this Framework Decision.

3. This Framework Decision shall not have the effect of modifying the obligation to respect fundamental rights and fundamental legal principles as enshrined in Article 6 of the Treaty on European Union.'

8  Article 5 of that framework decision, in its initial version, was worded as follows:

'The execution of the European arrest warrant by the executing judicial authority may, by the law of the executing Member State, be subject to the following conditions:

1.  where the European arrest warrant has been issued for the purposes of executing a sentence or a detention order imposed by a decision rendered *in absentia* and if the person concerned has not been summoned in person or otherwise informed of the date and place of the hearing which led to the decision rendered *in absentia*, surrender may be subject to the condition that the issuing judicial authority gives an assurance deemed adequate to guarantee the person who is the subject of the European arrest warrant that he or she will have an opportunity to apply for a retrial of the case in the issuing Member State and to be present at the judgment;

…'

9  Framework Decision 2009/299 sets out the grounds for refusing to execute a European arrest warrant where the person concerned did not appear in person at his trial. Recitals 1 to 4 and 10 state:

'1.  The right of an accused person to appear in person at the trial is included in the right to a fair trial provided for in Article 6 of the [ECHR], as interpreted by the European Court of Human Rights. The Court has also declared that the right of the accused person to appear in person at the trial is not absolute and that under certain conditions the accused person may, of his or her own free will, expressly or tacitly but unequivocally, waive that right.

2.  The various Framework Decisions implementing the principle of mutual recognition of final judicial decisions do not deal consistently with the issue of decisions rendered following a trial at which the person concerned did not appear in person. This diversity could complicate the work of the practitioner and hamper judicial cooperation.

3. … Framework Decision 2002/584/JHA … allows the executing authority to require the issuing authority to give an assurance deemed adequate to guarantee the person who is the subject of the European arrest warrant that he or she will have an opportunity to apply for a retrial of the case in the issuing Member State and to be present when the judgment is given. The adequacy of such an assurance is a matter to be decided by the executing authority, and it is therefore difficult to know exactly when execution may be refused.

4. It is therefore necessary to provide clear and common grounds for non-recognition of decisions rendered following a trial at which the person concerned did not appear in person. This Framework Decision is aimed at refining the definition of such common grounds allowing the executing authority to execute the decision despite the absence of the person at the trial, while fully respecting the person's right of defence. This Framework Decision is not designed to regulate the forms and methods, including procedural requirements, that are used to achieve the results specified in this Framework Decision, which are a matter for the national laws of the Member States.

…

10. The recognition and execution of a decision rendered following a trial at which the person concerned did not appear in person should not be refused where the person concerned, being aware of the scheduled trial, was defended at the trial by a legal counsellor to whom he or she had given a mandate to do so, ensuring that legal assistance is practical and effective. In this context, it should not matter whether the legal counsellor was chosen, appointed and paid by the person concerned, or whether this legal counsellor was appointed and paid by the State, it being understood that the person concerned should deliberately have chosen to be represented by a legal counsellor instead of appearing in person at the trial. …'

10  According to Article 1(1) and (2) of Framework Decision 2009/299:

'1. The objectives of this Framework Decision are to enhance the procedural rights of persons subject to criminal proceedings, to facilitate judicial cooperation in criminal matters and, in particular, to improve mutual recognition of judicial decisions between Member States.

2. This Framework Decision shall not have the effect of modifying the obligation to respect fundamental rights and fundamental legal principles as enshrined in Article 6 of the [EU Treaty, in the version prior to the Treaty of Lisbon], including the right of defence of persons subject to criminal proceedings, and any obligations incumbent upon judicial authorities in this respect shall remain unaffected.'

11   Article 2 of Framework Decision 2009/299 repealed Article 5(1) of Framework Decision 2002/584 and introduced therein an Article 4a relating to decisions rendered following a trial at which the person concerned did not appear in person, which is worded as follows:

'1. The executing judicial authority may also refuse to execute the European arrest warrant issued for the purpose of executing a custodial sentence or a detention order if the person did not appear in person at the trial resulting in the decision, unless the European arrest warrant states that the person, in accordance with further procedural requirements defined in the national law of the issuing Member State:

(a)  in due time:

  (i)   either was summoned in person and thereby informed of the scheduled date and place of the trial which resulted in the decision, or by other means actually received official information of the scheduled date and place of that trial in such a manner that it was unequivocally established that he or she was aware of the scheduled trial;

    and

  (ii)  was informed that a decision may be handed down if he or she does not appear for the trial;

    or

(b)  being aware of the scheduled trial, had given a mandate to a legal counsellor, who was either appointed by the person concerned or by the State, to defend him or her at the trial, and was indeed defended by that counsellor at the trial;

  or

(c)  after being served with the decision and being expressly informed of the right to a retrial, or an appeal, in which he or she has the right to participate and which allows the merits of the case, including fresh evidence, to be re-examined, and which may lead to the original decision being reversed:

  (i)   expressly stated that he or she does not contest the decision;

    or

  (ii)  did not request a retrial or appeal within the applicable time frame;

    or

(d)  was not personally served with the decision but:

  (i)   will be personally served with it without delay after the surrender and will be expressly informed of his or her right to a retrial, or an appeal, in which the person has the right to participate and which allows the merits of the case, including fresh evidence, to be re-examined, and which may lead to the original decision being reversed;

    and

  (ii)  will be informed of the time frame within which he or she has to request such a retrial or appeal, as mentioned in the relevant European arrest warrant.

…'

12    Under Article 8(1) to (3) of Framework Decision 2009/299:

'1. Member States shall take the necessary measures to comply with the provisions of this Framework Decision by 28 March 2011.

2. This Framework Decision shall apply as from the date mentioned in paragraph 1 to the recognition and enforcement of decisions rendered in the absence of the person concerned at the trial.

3. If a Member State has declared, on the adoption of this Framework Decision, to have serious reasons to assume that it will not be able to comply with the provisions of this Framework Decision by the date referred to in paragraph 1, this Framework Decision shall apply as from 1 January 2014 at the latest to the recognition and enforcement of decisions, rendered in the absence of the person concerned at the trial which are issued by the competent authorities of that Member State. …'

**The dispute in the main proceedings and the questions referred for a preliminary ruling**

13    By order of 1 October 1996, the First Section of the Sala de lo Penal of the Audiencia Nacional (Criminal Division of the High Court) (Spain) authorised the extradition to Italy of Mr Melloni, in order for him to be tried there in relation to the facts set out in arrest warrants Nos 554/1993 and 444/1993, issued on 13 May and 15 June 1993 respectively by the Tribunale di Ferrara (District Court, Ferrara) (Italy). After being released on bail of ESP 5 000 000, which he provided on 30 April 1996, Mr Melloni fled, so that he could not be surrendered to the Italian authorities.

14    By order of 27 March 1997, the Tribunale di Ferrara declared that Mr Melloni had failed to make appearance in court and directed that notice should in future be given to the lawyers who had been chosen and appointed by him. By judgment of 21 June 2000 of the Tribunale di Ferrara, subsequently confirmed by judgment of 14 March 2003 of the Corte d'appello di Bologna (Bologna Appeal Court) (Italy), Mr Melloni was sentenced *in absentia* to 10 years' imprisonment for bankruptcy fraud. By judgment of 7 June 2004, the Fifth Criminal Division of the Corte suprema di cassazione (Supreme Court of Cassation) (Italy) dismissed the appeal lodged by Mr Melloni's lawyers. On 8 June 2004, the Procura Generale della Repubblica (Italian Public Prosecutor's Office) in the Corte d'appello di Bologna issued European arrest warrant No 271/2004 for execution of the sentence imposed by the Tribunale di Ferrara.

15    Following Mr Melloni's arrest by the Spanish police on 1 August 2008, the Juzgado Central de Instrucción (Central Investigating Court) No 6 (Spain), by order of 2 August 2008, resolved to refer the matter of European arrest warrant No 271/2004 to the First Section of the Sala de lo Penal of the Audiencia Nacional.

16    Mr Melloni opposed surrender to the Italian authorities, contending, first, that at the appeal stage he had appointed another lawyer, revoking the appointment of the two previous lawyers, despite which notice was still being given to them. Second, he contended that under Italian procedural law it is impossible to appeal against sentences imposed *in absentia*, for which reason the execution of the European arrest warrant should, where appropriate, be made conditional upon Italy's guaranteeing the possibility of appealing against that judgment.

17    By order of 12 September 2008, the First Section of the Sala de lo Penal of the Audiencia Nacional authorised surrender of Mr Melloni to the Italian authorities in order to serve the sentence imposed upon him by the Tribunale di Ferrara as perpetrator of a bankruptcy fraud. It considered that it was not proved that the lawyers appointed by Mr Melloni had ceased to represent him as from 2001, and that his rights of defence had been respected, since he had been aware from the outset of the

forthcoming trial, deliberately absented himself and appointed two lawyers to represent and defend him, who had acted in that capacity at first instance and in the appeal and cassation proceedings, thus exhausting all remedies.

18  Mr Melloni filed a 'recurso de amparo' (petition for constitutional protection) against that order before the Tribunal Constitucional (Constitutional Court). In support of that petition, he alleged infringement of the absolute requirements deriving from the right to a fair trial proclaimed in Article 24(2) of the Spanish Constitution. In his submission, the very essence of a fair trial had been vitiated in such a way as to undermine human dignity, as a result of allowing surrender to countries which, in the event of very serious offences, validate findings of guilt made in absentia, without making surrender subject to the condition that the convicted party is able to challenge them in order to safeguard his rights of defence.

19  By order of 18 September 2008, the First Section of the Tribunal Constitucional acknowledged that the 'recurso de amparo' was admissible and suspended enforcement of the order of 12 September 2008. By order of 1 March 2011, the Plenary Chamber of the Tribunal Constitucional decided, on a proposal from the First Section, that it would itself examine the 'recurso de amparo'.

20  The national court points out that, in its judgment 91/2000 of 30 March 2000, it recognised that the binding nature of fundamental rights when applied 'externally' is attenuated, since only the most basic or elementary requirements may be linked to Article 24 of the Spanish Constitution and give rise to a finding of 'indirect' unconstitutionality. Nevertheless, a decision of the Spanish judicial authorities to consent to extradition to countries which, in cases of very serious offences, allow convictions in absentia without making the surrender conditional upon the convicted party being able to challenge the same in order to safeguard his rights of defence, gives rise to an 'indirect' infringement of the requirements deriving from the right to a fair trial, in that such a decision undermines the essence of a fair trial in a way which affects human dignity.

21  The national court also points out that that precedent is also applicable to the system of surrender established by Framework Decision 2002/584, for two reasons, namely that the condition for the surrender of a convicted person is inherent in the essence of the constitutional right to a fair trial and that Article 5(1) of that framework decision, in the wording thereof then in force, contemplated the possibility that the execution of a European arrest warrant issued for the execution of a sentence imposed in absentia should be subject, 'in accordance with the law of the executing Member State', to, among others, the condition that 'the issuing judicial authority should furnish guarantees that are regarded as sufficient to ensure that the person requested under a European arrest warrant will have an opportunity to apply for a retrial such as to safeguard his rights of defence in the issuing Member State and to be present at the hearing' (judgment 177/2006 of the Tribunal Constitucional).

22  The national court recalls, finally, that in its judgment 199/2009 of 28 September 2009, it upheld the 'recurso de amparo' filed in relation to an order for surrender of the person concerned to Romania, in implementation of a European arrest warrant issued for the purposes of execution of a sentence of four years' imprisonment imposed in absentia, without mentioning the requirement that the conviction in question be amenable to review. In that regard, the Tribunal Constitucional rejected the Audiencia Nacional's argument to the effect that a conviction in absentia had not in fact occurred, since the applicant had given a power of attorney to a lawyer who appeared in the trial as his private defence counsellor.

23  According to the Tribunal Constitucional, the difficulty arises from the fact that Framework Decision 2009/299 repealed Article 5(1) of Framework Decision 2002/584 and introduced therein a new Article 4a. Article 4a precludes a refusal 'to execute the European arrest warrant issued for the purpose of executing a custodial sentence or a detention order if the person did not appear in person at the trial resulting in the decision' where the person concerned, 'being aware of the scheduled trial, had given a mandate to a legal counsellor, who was either appointed by the person concerned or by the

State, to defend him or her at the trial, and was indeed defended by that counsellor at the trial'. The national court points out that, in the case which has given rise to these constitutionality review proceedings, it is established that Mr Melloni had appointed two trusted lawyers, whom the Tribunale di Ferrara notified of the forthcoming trial, so that he was aware of it. It is also established that Mr Melloni was actually defended by those two lawyers at the ensuing trial at first instance and also in the subsequent appeal and cassation proceedings.

24    For the Tribunal Constitucional, the question therefore arises whether Framework Decision 2002/584 precludes the Spanish courts from making surrender of Mr Melloni conditional on the right to have the conviction in question reviewed.

25    The Tribunal Constitucional rejects the contention of the Ministerio Fiscal to the effect that a request for a preliminary ruling is not necessary because Framework Decision 2009/299 is not applicable, *ratione temporis*, to the main proceedings. The object of the main proceedings is to determine not whether the order of 12 September 2008 infringed that framework decision, but whether it indirectly infringed the right to a fair trial protected by Article 24(2) of the Spanish Constitution. Framework Decision 2009/299 should be taken into account for determining what part of that right has 'external' effects, because it constitutes the European Union ('EU') law applicable at the time constitutionality is assessed. It must also be taken into account by virtue of the principle that national law is to be interpreted in accordance with framework decisions (Case C-105/03 *Pupino* [2005] ECR I-5285, paragraph 43).

26    In the light of those considerations, the Tribunal Constitucional decided to stay the proceedings and to refer the following questions to the Court for a preliminary ruling:

'1.    Must Article 4a(1) of Framework Decision 2002/584/JHA, as inserted by Council Framework Decision 2009/299/JHA, be interpreted as precluding national judicial authorities, in the circumstances specified in that provision, from making the execution of a European arrest warrant conditional upon the conviction in question being open to review, in order to guarantee the rights of defence of the person requested under the warrant?

2.    In the event of the first question being answered in the affirmative, is Article 4a(1) of Framework Decision 2002/584/JHA compatible with the requirements deriving from the right to an effective judicial remedy and to a fair trial, provided for in Article 47 of the Charter …, and from the rights of defence guaranteed under Article 48(2) of the Charter?

3.    In the event of the second question being answered in the affirmative, does Article 53 of the Charter, interpreted schematically in conjunction with the rights recognised under Articles 47 and 48 of the Charter, allow a Member State to make the surrender of a person convicted *in absentia* conditional upon the conviction being open to review in the requesting State, thus affording those rights a greater level of protection than that deriving from European Union law, in order to avoid an interpretation which restricts or adversely affects a fundamental right recognised by the constitution of the first-mentioned Member State?'

## Consideration of the questions referred

### Admissibility of the request for a preliminary ruling

27    Some of the parties concerned have submitted observations to the Court contending that the present request for a preliminary ruling should be dismissed as inadmissible on the ground that Article 4a of Framework Decision 2002/584 is inapplicable *ratione temporis* to the surrender procedure in the main proceedings. They argue that the date of 12 September 2008, the date of the order by which the

Audiencia Nacional decided to surrender Mr Melloni to the Italian authorities, precedes the date on which the deadline for transposing Framework Decision 2009/299, fixed at 28 March 2011 by Article 8(1) thereof, expired. They argue that, in any event, the Italian Republic availed itself of the opportunity offered by Article 8(3) to defer until 1 January 2014 the application of Framework Decision 2009/299 to the recognition and enforcement of decisions rendered in the absence of the person concerned at the trial by the competent Italian authorities. The conditions for the surrender of Mr Melloni by the Spanish authorities to the Italian authorities are therefore still governed by Article 5(1) of Framework Decision 2002/584.

28  In that regard it should be recalled at the outset that, in proceedings under Article 267 TFEU, it is solely for the national court before which the dispute has been brought, and which must assume responsibility for the subsequent judicial decision, to determine in the light of the particular circumstances of the case, both the need for a preliminary ruling in order to enable it to deliver judgment and the relevance of the questions which it submits to the Court. Consequently, where the questions submitted concern the interpretation of EU law, the Court is in principle bound to give a ruling (see, inter alia, Joined Cases C-78/08 to C-80/08 *Paint Graphos and Others* [2011] ECR I-7611, paragraph 30 and the case-law cited).

29  The presumption of relevance attaching to questions referred for a preliminary ruling by a national court may be set aside only exceptionally, where it is quite obvious that the interpretation of the provisions of EU law that is sought bears no relation to the actual facts of the main action or its purpose, where the problem is hypothetical, or where the Court does not have before it the factual or legal material necessary to give a useful answer to the questions submitted to it (see, to that effect, inter alia *Paint Graphos and Others*, paragraph 31 and the case-law cited).

30  In the present case, it is not quite obvious that the interpretation of Article 4a of Framework Decision 2002/584, sought by the national court, bears no relation to the actual facts of the main action or its purpose or that the problem is hypothetical.

31  It should be observed, in the first place, with respect to the applicability *ratione temporis* of Article 4a of Framework Decision 2002/584, that the very wording of Article 8(2) of Framework Decision 2009/299 makes it clear that, as from 28 March 2011, that decision 'shall apply to the recognition and enforcement of decisions rendered in the absence of the person concerned at the trial', without any distinction whatsoever being drawn between decisions rendered prior or subsequently to that date.

32  A literal interpretation is confirmed by the fact that since the provisions of Article 4a of Framework Decision 2002/584 are to be considered procedural rules (see, by analogy, Joined Cases C-361/02 and C-362/02 *Tsapalos and Diamantakis* [2004] ECR I-6405, paragraph 20, and Case C-296/08 PPU *Santesteban Goicoechea* [2008] ECR I-6307, paragraph 80), they are applicable to the surrender procedure in the main proceedings, which is still pending. According to settled case-law, procedural rules are generally held to apply to all proceedings pending at the time when they enter into force, whereas substantive rules are usually interpreted as not applying to situations existing before their entry into force (see, inter alia, Joined Cases 212/80 to 217/80 *Meridionale Industria Salumi and Others* [1981] ECR 2735, paragraph 9; Case C-467/05 *Dell'Orto* [2007] ECR I-5557, paragraph 48; and *Santesteban Goicoechea*, paragraph 80).

33  In the second place, the fact that the Italian Republic availed itself of the opportunity offered by Article 8(3) of Framework Decision 2009/299 to defer until 1 January 2014 at the latest the application of the Framework Decision to the recognition and enforcement of decisions rendered in the absence of the person concerned at the trial by the competent Italian authorities does not make the present request for a preliminary ruling inadmissible. It is apparent from the order for reference that, in order to interpret the fundamental rights recognised under the Spanish Constitution in

accordance with the international treaties ratified by the Kingdom of Spain, the national court wishes to take into consideration the relevant provisions of EU law to determine the substantive content of the right to a fair trial guaranteed by Article 24(2) of that constitution.

34    It follows from all of the foregoing considerations that the request for a preliminary ruling from the Tribunal Constitucional is admissible.

*Substance*

The first question

35    By its first question, the Tribunal Constitucional asks, in essence, whether Article 4a(1) of Framework Decision 2002/584 must be interpreted as precluding the executing judicial authorities, in the circumstances specified in that provision, from making the execution of a European arrest warrant issued for the purposes of executing a sentence conditional upon the conviction rendered *in absentia* being open to review in the issuing Member State.

36    It should be recalled that, as is apparent in particular from Article 1(1) and (2) of Framework Decision 2002/584 and from recitals 5 and 7 in the preamble thereto, the purpose of that decision is to replace the multilateral system of extradition between Member States with a system of surrender, as between judicial authorities, of convicted persons or suspects for the purpose of enforcing judgments or of conducting prosecutions, that system of surrender being based on the principle of mutual recognition (see Case C-396/11 *Radu* [2013] ECR, paragraph 33).

37    Framework Decision 2002/584 thus seeks, by the establishment of a new simplified and more effective system for the surrender of persons convicted or suspected of having infringed criminal law, to facilitate and accelerate judicial cooperation with a view to contributing to the objective set for the European Union to become an area of freedom, security and justice by basing itself on the high degree of confidence which should exist between the Member States (*Radu*, paragraph 34).

38    Under Article 1(2) of Framework Decision 2002/584, the Member States are in principle obliged to act upon a European arrest warrant. According to the provisions of that framework decision, the Member States may refuse to execute such a warrant only in the cases of mandatory non-execution provided for in Article 3 thereof and in the cases of optional non-execution listed in Articles 4 and 4a. Furthermore, the executing judicial authority may make the execution of a European arrest warrant subject solely to the conditions set out in Article 5 of that framework decision (*Radu*, paragraphs 35 and 36).

39    In order to determine the scope of Article 4a(1) of Framework Decision 2002/584, which is the subject-matter of the present question, it is necessary to examine its wording, scheme and purpose.

40    It is apparent from the wording of Article 4a(1) of Framework Decision 2002/584 that it provides for an optional ground for non-execution of a European arrest warrant issued for the purpose of executing a custodial sentence or a detention order, where the person concerned has not appeared in person at the trial which resulted in the conviction. That option is nevertheless accompanied by four exceptions in which the executing judicial authority may not refuse to execute the European arrest warrant in question. Article 4a(1) thus precludes, in the four situations set out therein, the executing judicial authority from making the surrender of a person convicted *in absentia* conditional upon the conviction being open to review in his presence.

41    This literal interpretation of Article 4a(1) of Framework Decision 2002/584 is confirmed by an analysis of the purpose of the provision. The object of Framework Decision 2009/299 is, firstly, to repeal Article 5(1) of Framework Decision 2002/584, which, subject to certain conditions, allowed for the execution of a European arrest warrant issued for the purposes of executing a sentence rendered *in*

*absentia* to be made conditional on there being a guarantee of a retrial of the case in the presence of the person concerned in the issuing Member State and, secondly, to replace that provision by Article 4a. That provision henceforth restricts the opportunities for refusing to execute such a warrant by setting out, as indicated in recital 6 of Framework Decision 2009/299, 'conditions under which the recognition and execution of a decision rendered following a trial at which the person concerned did not appear in person should not be refused'.

42    In particular, Article 4a(1)(a) and (b) of Framework Decision 2002/584 provides in essence, that, once the person convicted *in absentia* was aware, in due time, of the scheduled trial and was informed that a decision could be handed down if he did not appear for the trial or, being aware of the scheduled trial, gave a mandate to a legal counsellor to defend him at the trial, the executing judicial authority is required to surrender that person, with the result that it cannot make that surrender subject to there being an opportunity for a retrial of the case at which he is present in the issuing Member State.

43    This interpretation of Article 4a is also confirmed by the objectives pursued by the EU legislature. It is apparent from recitals 2 to 4 and also Article 1 of Framework Decision 2009/299 that the European Union, in adopting that decision, intended to facilitate judicial cooperation in criminal matters by improving mutual recognition of judicial decisions between Member States through harmonisation of the grounds for non-recognition of decisions rendered following a trial at which the person concerned did not appear in person. As is apparent in particular from recital 4, the EU legislature, in defining those common grounds, wished to allow 'the executing authority to execute the decision despite the absence of the person at the trial, while fully respecting the person's right of defence'.

44    As observed by the Advocate General in points 65 and 70 of his Opinion, the solution which the EU legislature found, consisting in providing an exhaustive list of the circumstances in which the execution of a European arrest warrant issued in order to enforce a decision rendered *in absentia* must be regarded as not infringing the rights of the defence, is incompatible with any retention of the possibility for the executing judicial authority to make that execution conditional on the conviction in question being open to review in order to guarantee the rights of defence of the person concerned.

45    As to the national court's argument to the effect that the obligation to respect fundamental rights as enshrined in Article 6 TEU allows the executing judicial authorities to refuse to execute the European arrest warrant, including in the situations referred to in Article 4a(1) of Framework Decision 2002/584, where the person concerned is not entitled to a retrial, it should be noted that that argument, in reality, raises the question of the compatibility of Article 4a of Framework Decision 2002/584 with the fundamental rights protected in the legal order of the European Union, which is the subject of the second question.

46    It follows from all of the foregoing considerations that Article 4a(1) of Framework Decision 2002/584 must be interpreted as precluding the executing judicial authorities, in the circumstances specified in that provision, from making the execution of a European arrest warrant issued for the purposes of executing a sentence conditional upon the conviction rendered *in absentia* being open to review in the issuing Member State.

The second question

47    By its second question, the national court asks the Court, in essence, whether Article 4a(1) of Framework Decision 2002/584 is compatible with the requirements deriving from the right to an effective judicial remedy and to a fair trial, provided for in Article 47 of the Charter and from the rights of the defence guaranteed under Article 48(2) of the Charter.

48    It must be borne in mind that, under Article 6(1) TEU, the Union recognises the rights, freedoms and principles set out in the Charter, 'which shall have the same legal value as the Treaties'.

49  Regarding the scope of the right to an effective judicial remedy and to a fair trial provided for in Article 47 of the Charter, and the rights of the defence guaranteed by Article 48(2) thereof, it should be observed that, although the right of the accused to appear in person at his trial is an essential component of the right to a fair trial, that right is not absolute (see, inter alia, Case C-619/10 *Trade Agency* [2012] ECR, paragraphs 52 and 55). The accused may waive that right of his own free will, either expressly or tacitly, provided that the waiver is established in an unequivocal manner, is attended by minimum safeguards commensurate to its importance and does not run counter to any important public interest. In particular, violation of the right to a fair trial has not been established, even where the accused did not appear in person, if he was informed of the date and place of the trial or was defended by a legal counsellor to whom he had given a mandate to do so.

50  This interpretation of Articles 47 and 48(2) of the Charter is in keeping with the scope that has been recognised for the rights guaranteed by Article 6(1) and (3) of the ECHR by the case-law of the European Court of Human Rights (see, inter alia, ECtHR, *Medenica v. Switzerland*, no. 20491/92, § 56 to 59, ECHR 2001-VI; *Sejdovic v. Italy* [GC], no. 56581/00, § 84, 86 and 98, ECHR 2006-II; and *Haralampiev v. Bulgaria*, no. 29648/03, § 32 and 33, 24 April 2012).

51  Furthermore, as indicated by Article 1 of Framework Decision 2009/299, the objective of the harmonisation of the conditions of execution of European arrest warrants issued for the purposes of executing decisions rendered at the end of trials at which the person concerned has not appeared in person, effected by that framework decision, is to enhance the procedural rights of persons subject to criminal proceedings whilst improving mutual recognition of judicial decisions between Member States.

52  Accordingly, Article 4a(1)(a) and (b) of Framework Decision 2002/584 lays down the circumstances in which the person concerned must be deemed to have waived, voluntarily and unambiguously, his right to be present at his trial, with the result that the execution of a European arrest warrant issued for the purposes of executing the sentence of a person convicted *in absentia* cannot be made subject to the condition that that person may claim the benefit of a retrial at which he is present in the issuing Member State. This is so either where, as referred to in Article 4a(1)(a), the person did not appear in person at the trial despite having been summoned in person or officially informed of the scheduled date and place of the trial or, as referred to in Article 4a(1)(b), the person, being aware of the scheduled trial, deliberately chose to be represented by a legal counsellor instead of appearing in person. Article 4a(1)(c) and (d) refers to circumstances where the executing judicial authority is required to execute the European arrest warrant, even though the person concerned is entitled to a retrial, because the arrest warrant states that the person concerned either did not ask for a retrial or that he will be expressly informed of his right to a retrial.

53  In the light of the foregoing, Article 4a(1) of Framework Decision 2002/584 does not disregard either the right to an effective judicial remedy and to a fair trial or the rights of the defence guaranteed by Articles 47 and 48(2) of the Charter respectively.

54  It follows from the foregoing considerations that the answer to the second question is that Article 4a(1) of Framework Decision 2002/584 is compatible with the requirements under Articles 47 and 48(2) of the Charter.

The third question

55  By its third question, the national court asks, in essence, whether Article 53 of the Charter must be interpreted as allowing the executing Member State to make the surrender of a person convicted *in absentia* conditional upon the conviction being open to review in the issuing Member State, in order to avoid an adverse effect on the right to a fair trial and the rights of the defence guaranteed by its constitution.

56   The interpretation envisaged by the national court at the outset is that Article 53 of the Charter gives general authorisation to a Member State to apply the standard of protection of fundamental rights guaranteed by its constitution when that standard is higher than that deriving from the Charter and, where necessary, to give it priority over the application of provisions of EU law. Such an interpretation would, in particular, allow a Member State to make the execution of a European arrest warrant issued for the purposes of executing a sentence rendered *in absentia* subject to conditions intended to avoid an interpretation which restricts or adversely affects fundamental rights recognised by its constitution, even though the application of such conditions is not allowed under Article 4a(1) of Framework Decision 2002/584.

57   Such an interpretation of Article 53 of the Charter cannot be accepted.

58   That interpretation of Article 53 of the Charter would undermine the principle of the primacy of EU law inasmuch as it would allow a Member State to disapply EU legal rules which are fully in compliance with the Charter where they infringe the fundamental rights guaranteed by that State's constitution.

59   It is settled case-law that, by virtue of the principle of primacy of EU law, which is an essential feature of the EU legal order (see Opinion 1/91 [1991] ECR I-6079, paragraph 21, and Opinion 1/09 [2011] ECR I-1137, paragraph 65), rules of national law, even of a constitutional order, cannot be allowed to undermine the effectiveness of EU law on the territory of that State (see, to that effect, inter alia, Case 11/70 *Internationale Handelsgesellschaft* [1970] ECR 1125, paragraph 3, and Case C-409/06 *Winner Wetten* [2010] ECR I-8015, paragraph 61).

60   It is true that Article 53 of the Charter confirms that, where an EU legal act calls for national implementing measures, national authorities and courts remain free to apply national standards of protection of fundamental rights, provided that the level of protection provided for by the Charter, as interpreted by the Court, and the primacy, unity and effectiveness of EU law are not thereby compromised.

61   However, as is apparent from paragraph 40 of this judgment, Article 4a(1) of Framework Decision 2002/584 does not allow Member States to refuse to execute a European arrest warrant when the person concerned is in one of the situations provided for therein.

62   It should also be borne in mind that the adoption of Framework Decision 2009/299, which inserted that provision into Framework Decision 2002/584, is intended to remedy the difficulties associated with the mutual recognition of decisions rendered in the absence of the person concerned at his trial arising from the differences as among the Member States in the protection of fundamental rights. That framework decision effects a harmonisation of the conditions of execution of a European arrest warrant in the event of a conviction rendered *in absentia*, which reflects the consensus reached by all the Member States regarding the scope to be given under EU law to the procedural rights enjoyed by persons convicted *in absentia* who are the subject of a European arrest warrant.

63   Consequently, allowing a Member State to avail itself of Article 53 of the Charter to make the surrender of a person convicted *in absentia* conditional upon the conviction being open to review in the issuing Member State, a possibility not provided for under Framework Decision 2009/299, in order to avoid an adverse effect on the right to a fair trial and the rights of the defence guaranteed by the constitution of the executing Member State, by casting doubt on the uniformity of the standard of protection of fundamental rights as defined in that framework decision, would undermine the principles of mutual trust and recognition which that decision purports to uphold and would, therefore, compromise the efficacy of that framework decision.

64  In the light of the foregoing considerations, the answer to the third question is that Article 53 of the Charter must be interpreted as not allowing a Member State to make the surrender of a person convicted *in absentia* conditional upon the conviction being open to review in the issuing Member State, in order to avoid an adverse effect on the right to a fair trial and the rights of the defence guaranteed by its constitution.

**Costs**

65  Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

1. **Article 4a(1) of Council Framework Decision 2002/584/JHA of 13 June 2002 on the European arrest warrant and the surrender procedures between Member States, as amended by Council Framework Decision 2009/299/JHA of 26 February 2009, must be interpreted as precluding the executing judicial authorities, in the circumstances specified in that provision, from making the execution of a European arrest warrant issued for the purposes of executing a sentence conditional upon the conviction rendered *in absentia* being open to review in the issuing Member State.**

2. **Article 4a(1) of Framework Decision 2002/584, as amended by Framework Decision 2009/299, is compatible with the requirements under Articles 47 and 48(2) of the Charter of Fundamental Rights of the European Union.**

3. **Article 53 of the Charter of Fundamental Rights of the European Union must be interpreted as not allowing a Member State to make the surrender of a person convicted *in absentia* conditional upon the conviction being open to review in the issuing Member State, in order to avoid an adverse effect on the right to a fair trial and the rights of the defence guaranteed by its constitution.**

[Signatures]