# EXHIBIT 44



# Reports of Cases

## JUDGMENT OF THE COURT (Grand Chamber)

## 5 April 2016*

(Reference for a preliminary ruling — Public service contracts — Directive 89/665/EEC — Article 1(1) and (3) — Review procedures — Application for annulment of the decision awarding a public contract by a tenderer whose bid was not successful — Counterclaim brought by the successful tenderer — Rule derived from national case-law under which the counterclaim must be examined first and, if the counterclaim is well founded, the main action must be dismissed as inadmissible without any examination of the merits — Whether compatible with EU law — Article 267 TFEU — Principle of the primacy of EU law — Principle of law stated by decision of the plenary session of the supreme administrative court of a Member State — National legislation which provides that that decision is binding on the chambers of that court — Obligation on the part of the chamber required to adjudicate on a question of EU law to refer that question to the plenary session if it disagrees with the decision of the plenary session — Whether the chamber has a discretion or is under an obligation to request a preliminary ruling from the Court of Justice)

In Case C-689/13,

REQUEST for a preliminary ruling under Article 267 TFEU from the Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily, Italy), made by decision of 26 September 2013, received at the Court on 24 December 2013, in the proceedings

**Puligienica Facility Esco SpA (PFE)**

v

**Airgest SpA,**

intervening parties:

**Gestione Servizi Ambientali Srl (GSA),**

**Zenith Services Group Srl (ZS),**

THE COURT (Grand Chamber),

composed of K. Lenaerts, President, R. Silva de Lapuerta, M. Ilešič, T. von Danwitz, J.L. da Cruz Vilaça, D. Šváby and F. Biltgen, Presidents of Chambers, A. Rosas, E. Juhász (Rapporteur), A. Borg Barthet, J. Malenovský, J.-C. Bonichot, C. Vajda, S. Rodin and K. Jürimäe, Judges,

Advocate General: M. Wathelet,

Registrar: I. Illéssy and, subsequently, V. Giacobbo-Peyronnel, Administrators,

---

\* Language of the case: Italian.



ECLI:EU:C:2016:199    1

having regard to the written procedure and further to the hearing on 11 March 2015,

after considering the observations submitted on behalf of:

— Puligienica Facility Esco SpA (PFE), by U. Ilardo, avvocato,

— Gestione Servizi Ambientali Srl (GSA) and Zenith Services Group Srl (ZS), by D. Gentile and D. Galli, avvocati,

— the Italian Government, by G. Palmieri, acting as Agent, and S. Varone, avvocato dello Stato,

— the European Commission, by D. Recchia and A. Tokár, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 23 April 2015,

having regard to the order of 16 July 2015 reopening the oral procedure and further to the hearing on 15 September 2015,

after considering the observations submitted on behalf of:

— the Italian Government, by G. Palmieri, acting as Agent, and S. Varone, avvocato dello Stato,

— the Netherlands Government, by M. Bulterman and J. Langer, acting as Agents,

— the Polish Government, by B. Majczyna, acting as Agent,

— the European Commission, by D. Recchia and A. Tokár, acting as Agents,

after hearing the additional Opinion of the Advocate General at the sitting on 15 October 2015,

gives the following

## Judgment

1  This request for a preliminary ruling concerns the interpretation of Article 1(3) of Council Directive 89/665/EEC of 21 December 1989 on the coordination of the laws, regulations and administrative provisions relating to the application of review procedures to the award of public supply and public works contracts (OJ 1989 L 395, p. 33), as amended by Directive 2007/66/EC of the European Parliament and of the Council of 11 December 2007 (OJ 2007 L 335, p. 31) ('Directive 89/665'), of Article 267 TFEU and of the principles of effectiveness and the primacy of EU law.

2  The request has been made in proceedings between Puligienica Facility Esco SpA (PFE) ('PFE') and Airgest SpA ('Airgest') concerning the lawfulness of the award by Airgest of a public services contract to Gestione Servizi Ambientali Srl (GSA) ('GSA') and Zenith Services Group Srl.

**Legal context**

*EU law*

3   Article 1 of Directive 89/665, entitled 'Scope and availability of review procedures', provides as follows:

'1. This Directive applies to contracts referred to in Directive 2004/18/EC of the European Parliament and of the Council of 31 March 2004 on the coordination of procedures for the award of public works contracts, public supply contracts and public service contracts [(OJ 2004 L 134, p. 114)], unless such contracts are excluded in accordance with Articles 10 to 18 of that Directive.

Contracts within the meaning of this Directive include public contracts, framework agreements, public works concessions and dynamic purchasing systems.

Member States shall take the measures necessary to ensure that, as regards contracts falling within the scope of [Directive 2004/18], decisions taken by the contracting authorities may be reviewed effectively and, in particular, as rapidly as possible in accordance with the conditions set out in Articles 2 to 2f of this Directive, on the grounds that such decisions have infringed Community law in the field of public procurement or national rules transposing that law.

…

3. Member States shall ensure that review procedures are available, under detailed rules which Member States may establish, at least to any person having or having had an interest in obtaining a particular contract who has been or risks being harmed by an alleged infringement.

…'

…'

4   Article 2(1) of Directive 89/665 is worded as follows:

'Member States shall ensure that the measures taken concerning the review procedures specified in Article 1 include provision for powers to:

…

(b)   either set aside or ensure the setting aside of decisions taken unlawfully …

…'

*Italian law*

5   The Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily) was established by Legislative Decree No 654 laying down rules for the exercise in the Region of Sicily of the functions of the Council of State (decreto legislativo n. 654 — Norme per l'esercizio nella Regione siciliana delle funzioni spettanti al Consiglio di Stato) of 6 May 1948 (GURI No 135 of 12 June 1948). It performs in that region the same advisory and judicial functions as the Consiglio di Stato (Council of State).

6   Legislative Decree No 104 implementing Article 44 of the Law No 69 of 18 June 2009 delegating powers to the Government for the reorganisation of administrative procedure' (decreto legislativo n. 104 — Attuazione dell'articolo 44 della legge 18 giugno 2009, n. 69, recante delega al governo per il riordino del processo amministrativo), of 2 July 2010 ('Ordinary Supplement to GURI No 156, 7 July 2010) concerns the adoption of the Code of Administrative Procedure.

7   Article 6 of the Code of Administrative Procedure provides as follows:

'1.  The Consiglio di Stato (Council of State) is the administrative court of final instance.

…

6. Appeals against decisions of the Tribunale amministrativo regionale della Sicilia (Regional Administrative Court, Sicily) shall be lodged with the Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily) in accordance with the provisions of that region's Special Statute and the relevant implementing provisions.'

8   Article 42(1) of the Administrative Code of Procedure states as follows:

'Defendants and intervening parties may submit applications, where the object of such applications is related to the application in the main proceedings, by way of counterclaim.'

9   Article 99 of the Administrative Code of Procedure reads as follows:

'1. Where the Chamber to which the appeal is assigned considers that the point of law submitted for its consideration has given rise, or might give rise, to divergences in judicial decisions, it may, by order made on application by one of the parties or of its own motion, refer the case to be heard by the court in plenary session. The plenary session may, if it deems appropriate, refer the matter back to the Chamber.

2. Before a decision is delivered, the President of the Consiglio di Stato (Council of State) may, on application by one of the parties or of his own motion, refer any appeal to the court in plenary session for a ruling on questions of principle of particular importance or with a view to resolving divergences in judicial decisions.

3. If the Chamber to which the appeal is assigned does not concur with a principle of law stated by the plenary session, it shall, by reasoned order, refer the decision on the appeal to the plenary session.

4. The plenary session shall rule on the dispute in its entirety unless it decides to state a principle of law and to refer the case, as to the remainder, back to the referring chamber.

5. If it considers the question to be of particular importance, the plenary session may in any event state the relevant principle of law in the interests of the law, even where it rules that the action is in any way inadmissible or unfounded or that the proceedings must be terminated. In such cases, the decision of the plenary session shall have no effect on the contested measure.'

10  Article 100 of the Code of Administrative Procedure provides as follows:

'Appeals against the decisions of regional administrative courts may be brought before the Consiglio di Stato (Council of State) without prejudice to the jurisdiction of the Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily) to hear appeals against decisions of the Tribunale amministrativo regionale per la Sicilia (Regional Administrative Court, Sicily).'

11  Legislative Decree No 373 laying down rules for the implementation of the Special Statute of the Region of Sicily with regard to the exercise in that region of the functions assigned to the Consiglio di Stato (decreto legislativo n. 373 — Norme di attuazione dello Statuto speciale della Regione siciliana concernenti l'esercizio nella regione delle funzioni spettanti al Consiglio di Stato) of 24 December 2003 (GURI No 10 of 14 January 2004, p. 4) ('Legislative Decree No 373') provides, in Article 1(2) thereof, that the chambers of the Consiglio di giustizia amministrativa per la Regione siciliana (Council of

Administrative Justice for the Region of Sicily, Italy) are to function as local chambers of the Consiglio di Stato (Council of State) and, in Article 4(3) thereof, that in judicial matters, the Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily, Italy) has jurisdiction, as an appellate body, to hear appeals against decisions delivered by the Tribunale amministrativo regionale per la Sicilia (Regional Administrative Court, Sicily).

**The dispute in the main proceedings and the questions referred for a preliminary ruling**

12  By notice published on 18 January 2012, Airgest, the company responsible for the management of Trapani Birgi civil airport (Italy), launched an open call for tenders for the award of a contract for the provision of cleaning and ground maintenance services at the airport for a period of three years. The contract price, net of value added tax, was EUR 1995496.35 and the contract was to be awarded to the most economically advantageous tender. The contract was awarded, by definitive award decision of 22 May 2012, to the temporary joint venture consisting of GSA and Zenith Services Group Srl (ZS).

13  PFE, which participated in the procedure and was ranked second, brought an action before the Tribunale amministrativo regionale per la Sicilia (Regional Administrative Court, Sicily) seeking, inter alia, the annulment of the decision awarding the contract and, as a consequence, an order that the contract be awarded to PFE and the related contract concluded with it. The other tenderers did not challenge the decision awarding the contract.

14  GSA, group leader of the temporary joint venture to which the contract had been awarded, was joined to the proceedings and filed a counter-claim alleging that PFE, the applicant in the main proceedings, had no legal interest in bringing the proceedings as it did not fulfil the eligibility requirements for the tendering procedure and should therefore have been excluded from the procedure. The Tribunale amministrativo regionale per la Sicilia (Regional Administrative Court, Sicily) examined the arguments of both parties and upheld both actions. Following that decision, Airgest, as contracting authority, excluded the two applicants as well as all the other tenderers who had initially been ranked because their respective bids did not conform to the tendering specifications. Those other tenderers did not appeal against the decision awarding the contract. A further call for tenders by way of negotiated procedure was launched for the award of the contract in question.

15  PFE lodged an appeal against the judgment of the Tribunale amministrativo regionale per la Sicilia (Regional Administrative Court, Sicily) before the Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily). GSA, in turn, lodged a cross-appeal before that court on the ground, in particular, that, by examining the submissions in the main proceedings, the Tribunale amministrativo regionale per la Sicilia (Regional Administrative Court, Sicily) had failed to have regard to the rules governing the order in which actions are to be examined laid down by Judgment No 4 of 7 April 2011, delivered by the Consiglio di Stato (Council of State) sitting in plenary session. According to that judgment, if a counterclaim has been brought challenging the main action on the ground that it is inadmissible, the counterclaim must be given precedence and examined before the main action. Under the national legal system, such a counterclaim is classified as 'exclusive' or 'paralysing' on the basis that, where the counterclaim is deemed well founded, the court seised is required to dismiss the main action as inadmissible without assessing its merits.

16  The referring court observes that, in its judgment in *Fastweb* (C-100/12, EU:C:2013:448), delivered after the judgment of the Consiglio di Stato (Council of State) sitting in plenary session referred to above, the Court of Justice held that Article 1(3) of Directive 89/665 is to be interpreted as precluding the rules laid down by the latter judgment set out in the preceding paragraph. The case which gave rise to the judgment in *Fastweb* (C-100/12, EU:C:2013:448) concerned two tenderers who had been selected by the contracting authority and invited to submit tenders. Following the action brought by

the unsuccessful tenderer, the successful tenderer lodged a counterclaim, contending that the unsuccessful bid should have been excluded on the ground that it did not satisfy the minimum requirements laid down in the specifications.

17  The referring court is uncertain, first, whether the interpretation given by the Court of Justice in *Fastweb* (C-100/12, EU:C:2013:448) is equally applicable in the present case because, in the case which gave rise to that judgment, only two undertakings submitted tenders and both of them had conflicting interests in the main action for annulment brought by the undertaking whose bid had been unsuccessful and in the counterclaim brought by the successful tenderer, whereas, in the present case, more than two undertakings submitted bids, even though only two of them have brought proceedings.

18  Second, the referring court states that, in accordance with Article 1(2) of Legislative Decree No 373 of 24 December 2003 laying down rules for the implementation of the Special Statute of the Region of Sicily with regard to the exercise in that region of the functions assigned to the Consiglio di Stato, it constitutes a chamber of the Consiglio di Stato (Council of State) and, as such, it is a court against whose decisions there is no judicial remedy under national law, within the meaning of the third paragraph of Article 267 TFEU. However, it is required, under the procedural rule laid down in Article 99(3) of the Code of Administrative Procedure, to apply the principles of law established by the Consiglio di Stato (Council of State) sitting in plenary session, even in respect of questions concerning the interpretation and application of EU law, subject to the option available to the chamber, where it wishes to depart from those principles, to refer the matter to the plenary session in order to seek a reversal of its decisions.

19  The referring court highlights the conflicts between judgment No 4 of the plenary session of the Consiglio di Stato (Council of State) of 7 April 2011 and the judgment in *Fastweb* (C-100/12, EU:C:2013:448) in order to point out that, if the procedural requirement described in the preceding paragraph were also to be applied to matters governed by EU law, that requirement would be incompatible with the principle that the Court of Justice has sole jurisdiction to interpret EU law and with the obligation all the courts of final instance of the Member States are under to submit a request to the Court of Justice for a preliminary ruling when questions arise concerning the interpretation of that law.

20  In those circumstances, the Consiglio di giustizia amministrativa per la Regione siciliana (Council of Administrative Justice for the Region of Sicily) decided to stay proceedings and to refer the following questions to the Court of Justice for a preliminary ruling:

'(1) Do the principles laid down by the Court of Justice in its judgment in *Fastweb* [Case C-100/12, EU:C:2013:448] concerning the specific set of circumstances forming the subject-matter of the request for a preliminary ruling in that case, in which only two undertakings participated in a public procurement procedure, also apply — given the considerable similarities between those circumstances and the facts in the present case — to the case currently before this Council, in which the undertakings participating in the tendering procedure, even though more than two undertakings were admitted, were all excluded by the contracting authority without those exclusion decisions being challenged by undertakings other than those involved in the present proceedings, with the result that, in the dispute currently before this Council, only two undertakings are concerned?

(2) In respect solely of issues which can be settled through the application of EU law, is it the case that, upon a proper construction of EU law and, in particular, of Article 267 TFEU, Article 99(3) of the Italian Code of Administrative Procedure is precluded to the extent that it makes all principles of law stated by the plenary session of the Consiglio di Stato (Council of State) binding

upon all Chambers and Divisions of the Consiglio di Stato, even where it is clearly the case that the plenary session has stated, or may have stated, a principle that is contrary to or incompatible with EU law? Specifically:

— in the event that doubts arise as to whether a principle of law already stated by the Consiglio di Stato (Council of State) in plenary session is in conformity with or is compatible with EU law, is the Chamber or Division of the Consiglio di Stato (Council of State) to which the case is assigned under an obligation to make a reasoned order referring the decision on the appeal back to the plenary session, even before it is able to make a request to the Court of Justice for a preliminary ruling as to whether the principle of law in question is in conformity with or is compatible with EU law; or, instead, may — or, rather, must — the Chamber or Division of the Consiglio di Stato (Council of State), being a national court against whose decisions no appeal lies, independently refer — as an ordinary court applying EU law — a question to the Court of Justice for a preliminary ruling so as to obtain the correct interpretation of EU law?

— In the event that the answer to the question asked in the preceding paragraph is that each Chamber and Division of the Consiglio di Stato (Council of State) is recognised as having the power or the obligation to refer questions directly to the Court of Justice for a preliminary ruling, or in every case in which the Court of Justice has taken a position — especially if it has done so at a time subsequent to the plenary session of the Consiglio di Stato (Council of State) — to the effect that the principle of law stated in the plenary session is not in conformity or not wholly in conformity with the correct interpretation of EU law, may or must each Chamber and each Division of the Consiglio di Stato (Council of State), being ordinary courts applying EU law and against whose decisions no appeal lies, immediately apply the correct interpretation of EU law as provided by the Court of Justice or, instead, are they under an obligation, even in such cases, to make a reasoned order referring the decision on the appeal back to the plenary session of the Consiglio di Stato (Council of State), thereby deferring to the authority of the plenary session of the Consiglio di Stato (Council of State) and to its discretion all assessment of the application of EU law already declared binding by the Court of Justice?

— Lastly, is it not the case that an interpretation of the administrative procedural rules of the Italian Republic as meaning that any potential decision relating to a request to the Court of Justice for a preliminary ruling — or even merely the resolution of the case whenever that flows directly from the application of EU legal principles already set out by the Court of Justice — is a matter exclusively for the plenary session of the Consiglio di Stato (Council of State) constitutes an obstacle, not only to the principles that proceedings are to be concluded within a reasonable period and that a review is to be available speedily in relation to procedures for the award of public contracts, but also to the requirement that EU law is to be promptly applied in full by all courts in all Member States, in a manner which must be consistent with its proper interpretation as provided by the Court of Justice, and moreover for the purposes of ensuring the broadest possible application of the principle of 'effectiveness' (*effet utile*) and the principle of the primacy (in terms not only of substance but also of procedure) of EU law over the national law of every single Member State (in the present case: over Article 99(3) of the Italian Code of Administrative Procedure)?'

*Question 1*

21  By its first question, the referring court seeks to ascertain, in essence, whether the third subparagraph of Article 1(1) and Article 1(3) of Directive 89/665 are to be interpreted as meaning that a main action for review brought by a tenderer with an interest in obtaining a particular contract who has been or may be adversely affected by an alleged breach of EU public procurement law or rules transposing that

law, with a view to excluding another tenderer, cannot be dismissed as inadmissible under national procedural rules which provide that the counterclaim lodged by the other tenderer must be examined first.

22  The referring court seeks to ascertain in particular whether the Court's interpretation of Article 1(3) of Directive 89/665 in its judgment in *Fastweb* (C-100/12, EU:C:2013:448) is applicable in a case in which, although more than two undertakings were originally admitted to the procurement procedure concerned, all the participating undertaking have all been excluded by the contracting authority and proceedings have not been brought by any undertaking other than the two involved in the main action.

23  It should be noted in that regard that, in accordance with the third subparagraph of Article 1(1) and Article 1(3) of Directive 89/665, in order for the review of decisions taken by contracting authorities to be regarded as effective, review procedures must be available at least to any person having or having had an interest in obtaining a particular contract who has been or risks being harmed by an alleged infringement.

24  At paragraph 33 of the judgment in *Fastweb* (C-100/12, EU:C:2013:448), the Court considered that a counterclaim filed by the successful tenderer cannot bring about the dismissal of an action for review brought by an unsuccessful tenderer where the validity of the bid submitted by each of the operators is challenged in the course of the same proceedings, given that, in such a situation, each competitor can claim a legitimate interest in the exclusion of the bid submitted by the other, which may lead to a finding that the contracting authority is unable to select a lawful bid.

25  At paragraph 34 of that judgment, the Court therefore interpreted Article 1(3) of Directive 89/665 as meaning that an action for review by a tenderer whose bid has been unsuccessful cannot be declared inadmissible as a consequence of the examination of the preliminary plea of inadmissibility raised in the counterclaim filed by the successful tenderer, in the absence of a ruling as to whether the contract specifications are met by both the bids submitted.

26  That judgment gives concrete expression to the requirements of the provisions of EU law referred to in paragraph 23 above in a situation in which, following a public procurement procedure, two tenderers bring an action for review, each seeking the exclusion of the other.

27  In such a situation, both of the tenderers have an interest in obtaining a particular contract. On the one hand, the exclusion of one tenderer may lead to the other being awarded the contract directly in the same procedure. On the other, if both tenderers are excluded and a new public procurement procedure is launched, each of those tenderers may participate in the new procedure and thus obtain the contract indirectly.

28  The interpretation given by the Court in *Fastweb* (C-100/12, EU:C:2013:448), referred to in paragraphs 24 and 25 above, is applicable in a context such as that of the main proceedings. First, each of the parties to the proceedings has a legitimate interest in the exclusion of the bids submitted by the other competitors. Second, as observed by the Advocate General at point 37 of his Opinion, it cannot be ruled out that one of the irregularities justifying the exclusion of both the successful tenderer's bid and that of the tenderer challenging the contracting authority's decision may also vitiate the other bids submitted in the tendering procedure, which may result in that authority having to launch a new procedure.

29  The number of participants in the public procurement procedure concerned as well as the number of participants who have instigated review procedures and the differing legal grounds relied on by those participants are irrelevant to the question of the applicability of the principle established by the *Fastweb* (C-100/12, EU:C:2013:448) case-law.

30  In the light of the foregoing considerations, the answer to the first question is that the third subparagraph of Article 1(1) and Article 1(3) of Directive 89/665 are to be interpreted as meaning that a main action for review brought by a tenderer with an interest in obtaining a particular contract who has been or may be adversely affected by an alleged breach of EU public procurement law or rules transposing that law, with a view to excluding another tenderer, cannot be dismissed as inadmissible under national procedural rules which provide that the counterclaim lodged by the other tenderer must be examined first.

*Question 2*

First part of Question 2

31  By the first part of its second question, the referring court seeks to ascertain, in essence, whether Article 267 TFEU is to be interpreted as precluding a provision of national law, in so far as that provision is interpreted to the effect that, where a question concerning the interpretation or validity of EU law arises, a chamber of a court of final instance must, if it does not concur with the position adopted by decision of that court sitting in plenary session, refer the question to the plenary session and is thus precluded from itself making a request to the Court of Justice for a preliminary ruling.

32  As the Court has repeatedly held, national courts have the widest discretion in referring questions to the Court involving interpretation of relevant provisions of EU law (see, to that effect, judgment in *Rheinmühlen-Düsseldorf*, 166/73, EU:C:1974:3, paragraph 3), that discretion being replaced by an obligation for courts of final instance, subject to certain exceptions recognised by the Court's case-law (see, to that effect, judgment in *Cilfit and Others*, 283/81, EU:C:1982:335, paragraph 21 and operative part). A rule of national law cannot prevent a national court, where appropriate, from using that discretion, (see to that effect, judgments in *Rheinmühlen-Düsseldorf*, 166/73, EU:C:1974:3, paragraph 4; *Melki and Abdeli*, C-188/10 and C-189/10, EU:C:2010:363, paragraph 42, and *Elchinov*, C-173/09, EU:C:2010:581, paragraph 27) or complying with that obligation.

33  Both that discretion and that obligation are an inherent part of the system of cooperation between the national courts and the Court of Justice established by Article 267 TFEU and of the functions of the court responsible for the application of EU law entrusted by that provision to the national courts.

34  As a consequence, where a national court before which a case is pending considers that a question concerning the interpretation or validity of EU law has arisen in that case, it has the discretion, or is under an obligation, to request a preliminary ruling from the Court of Justice, and national rules imposed by legislation or case-law cannot interfere with that discretion or that obligation.

35  In the present case, a provision of national law cannot prevent a chamber of a court of final instance faced with a question concerning the interpretation of Directive 89/665 from referring the matter to the Court of Justice for a preliminary ruling.

36  In the light of the foregoing considerations, the answer to the first part of the second question is that Article 267 TFEU must be interpreted as precluding a provision of national law, in so far as that provision is interpreted to the effect that, where a question concerning the interpretation or validity of EU law arises, a chamber of a court of final instance must, if it does not concur with the position adopted by decision of that court sitting in plenary session, refer the question to the plenary session and is thus precluded from itself making a request to the Court of Justice for a preliminary ruling.

Second and third parts of Question 2

37  By the second and third parts of its second question, which it is appropriate to examine together, the referring court seeks to ascertain, in essence, whether Article 267 TFEU is to be interpreted as meaning that, after receiving the Court's answer to a question concerning the interpretation of EU law which it has submitted to the Court, or where the Court's case-law already provides a clear answer to that question, the referring court is itself required to do everything necessary to ensure that that interpretation of EU law is applied.

38  It should be noted in that regard that a judgment in which the Court gives a preliminary ruling is binding on the national court, as regards the interpretation or the validity of the acts of the EU institutions in question, for the purposes of the decision to be given in the main proceedings (see, to that effect, judgment in *Elchinov*, C-173/09, EU:C:2010:581, paragraph 29 and the case-law cited). Accordingly, the national court which, adjudicating as court of final instance, has complied with its obligation to make a reference to the Court for a preliminary ruling under the third paragraph of Article 267 TFEU, is bound, for the purposes of the decision to be given in the main proceedings, by the interpretation of the provisions at issue given by the Court and must, if necessary, disregard any national case-law which it considers inconsistent with EU law (see, to that effect, judgment in *Elchinov*, C-173/09, EU:C:2010:581, paragraph 30).

39  It should also be noted that the effectiveness of Article 267 TFEU would be impaired if the national court were prevented from forthwith applying EU law in accordance with the decision or the case-law of the Court (see, to that effect, judgment in *Simmenthal*, 106/77, EU:C:1978:49, paragraph 20).

40  A national court which is called upon, within the exercise of its jurisdiction, to apply provisions of EU law is under a duty to give full effect to those provisions, if necessary refusing of its own motion to apply any conflicting provision of national legislation, even if adopted subsequently, and it is not necessary for the court to request or await the prior setting aside of such provision by legislative or other constitutional means (see, first, judgment in *Simmenthal*, 106/77, EU:C:1978:49, paragraphs 21 and 24, and, most recently, judgment in *A*, C-112/13, EU:C:2014:2195, paragraph 36 and the case-law cited).

41  Any provision of a national legal system and any legislative, administrative or judicial practice that might impair the effectiveness of EU law by withholding from the national court with jurisdiction to apply such law the power to do everything necessary at the moment of its application to set aside national legislative provisions that might prevent EU rules from having full force and effect are incompatible with those requirements, which are the very essence of EU law (see judgments in *Simmenthal*, 106/77, EU:C:1978:49, paragraph 22, and *A*, C-112/13, EU:C:2014:2195, paragraph 37 and the case-law cited).

42  In the light of the foregoing considerations, the answer to the second and third parts of Question 2 is that Article 267 TFEU is to be interpreted as meaning that, after receiving the Court's answer to a question concerning the interpretation of EU law which it has submitted to the Court, or where the Court's case-law already provides a clear answer to that question, a chamber of a court of final instance is itself required to do everything necessary to ensure that that interpretation of EU law is applied.

**Costs**

43  Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

1. **The third subparagraph of Article 1(1) and Article 1(3) of Council Directive 89/665/EEC of 21 December 1989 on the coordination of the laws, regulations and administrative provisions relating to the application of review procedures to the award of public supply and public works contracts, as amended by Directive 2007/66/EC of the European Parliament and of the Council of 11 December 2007, are to be interpreted as meaning that a main action for review brought by a tenderer with an interest in obtaining a particular contract who has been or may be adversely affected by an alleged breach of EU public procurement law or rules transposing that law, with a view to excluding another tenderer, cannot be dismissed as inadmissible under national procedural rules which provide that the counterclaim lodged by the other tenderer must be examined first.**

2. **Article 267 TFEU must be interpreted as precluding a provision of national law, in so far as that provision is interpreted to the effect that, where a question concerning the interpretation or validity of EU law arises, a chamber of a court of final instance must, if it does not concur with the position adopted by decision of that court sitting in plenary session, refer the question to the plenary session and is thus precluded from itself making a request to the Court of Justice for a preliminary ruling.**

3. **Article 267 TFEU is to be interpreted as meaning that, after receiving the answer of the Court of Justice of the European Union to a question concerning the interpretation of EU law which it has submitted to the Court, or where the case-law of the Court of Justice of the European Union already provides a clear answer to that question, a chamber of a court of final instance is itself required to do everything necessary to ensure that that interpretation of EU law is applied.**

[Signatures]