# EXHIBIT 52

## DECLARATION OF THE REPRESENTATIVES OF THE GOVERNMENTS OF THE MEMBER STATES,

### OF 15 JANUARY 2019

## ON THE LEGAL CONSEQUENCES OF THE JUDGMENT OF THE COURT OF JUSTICE IN *ACHMEA* AND ON INVESTMENT PROTECTION IN THE EUROPEAN UNION

THE REPRESENTATIVES OF THE GOVERNMENTS OF THE MEMBER STATES, HAVE ADOPTED THE FOLLOWING DECLARATION

In its judgment of 6 March 2018 in Case C-284/16, Achmea v Slovak Republic ('the *Achmea* judgment'), the Court of Justice of the European Union held that "*Articles 267 and 344 [... of the Treaty on the Functioning of the European Union] must be interpreted as precluding a provision in an international agreement concluded between Member States, [...] under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept*" ("investor-State arbitration clauses").

Member States are bound to draw all necessary consequences from that judgment pursuant to their obligations under Union law.

Union law takes precedence over bilateral investment treaties concluded between Member States.[1] As a consequence, all investor-State arbitration clauses contained in bilateral investment treaties concluded between Member States are contrary to Union law and thus inapplicable. They do not produce effects including as regards provisions that provide for extended protection of investments made prior to termination for a further period of time (so-called sunset or grandfathering clauses). An arbitral tribunal established on the basis of investor-State arbitration clauses lacks jurisdiction, due to a lack of a valid offer to arbitrate by the Member State party to the underlying bilateral investment Treaty.

---

[1] With regard to agreements concluded between Member States, see judgments in *Matteucci*, 235/87, EU:C:1988:460, paragraph 21; and *Budějovický Budvar*, EU:C:2009:521, C-478/07, paragraphs 98 and 99 and Declaration 17 to the Treaty of Lisbon on primacy of Union law. The same result follows also under general public international law, in particular from the relevant provisions of the Vienna Convention on the Law of the Treaties and customary international law (*lex posterior*).

1

Furthermore, international agreements concluded by the Union, including the Energy Charter Treaty, are an integral part of the EU legal order and must therefore be compatible with the Treaties.[2] Arbitral tribunals have interpreted the Energy Charter Treaty as also containing an investor-State arbitration clause applicable between Member States.[3] Interpreted in such a manner, that clause would be incompatible with the Treaties and thus would have to be disapplied.[4]

When investors from Member States exercise one of the fundamental freedoms, such as the freedom of establishment or the free movement of capital, they act within the scope of application of Union law and therefore enjoy the protection granted by those freedoms and, as the case may be, by the relevant secondary legislation, by the Charter of Fundamental Rights of the European Union, and by the general principles of Union law, which include in particular non-discrimination, proportionality, legal certainty and the protection of legitimate expectations.[5] Where a Member State enacts a measure that derogates from one of the fundamental freedoms guaranteed by Union law, that measure falls within the scope of Union law and the fundamental rights guaranteed by the Charter also apply.[6]

Member States are obliged to provide remedies sufficient to ensure the effective legal protection of investors' rights under Union law.[7] In particular, every Member State must ensure that its courts or tribunals, within the meaning of Union law, meet the requirements of effective judicial protection.[8]

Member States underline the importance of providing guidance on how Union law protects intra-EU investments, including on legal remedies. In this context, Member States take note of the Communication "Protection of intra-EU investment" adopted by the Commission on 19 July 2018.[9]

---

[2] Judgment in *Western Sahara*, C-266/16, EU:C:2018:118, paragraphs 42 to 51. For the Energy Charter Treaty, its systemic interpretation in conformity with the Treaties precludes intra-EU investor-State arbitration.
[3] Article 26(3) of the Energy Charter Treaty. This interpretation is currently contested before a national court in Case No 4658-18 Svea Court of Appeal, Novenergia II - Energy & Environment (SCA) (Grand Duchy of Luxembourg), SICAR vs the Kingdom of Spain, SCC Arbitration (2015/06).
[4] See Communication "Protection of intra-EU investment" adopted by the Commission on 19 July 2018 (COM(2018)547 final), pages 3-4.
[5] Judgment in *Pfleger*, C-390/12, EU:C:2014:281, paragraphs 30 to 37.
[6] Judgment in *Online Games Handels*, C-685/15, EU:C:2017:452, paragraphs 55 and 56.
[7] Article 19(1) Treaty on European Union (TEU), second sub-paragraph.
[8] Judgment in *Associação Sindical dos Juízes Portugueses*, C-64/16, EU:C:2018:117, paragraphs 31 to 37.
[9] COM(2018)547 final.

In light of the ECOFIN Council conclusions of 11 July 2017, Member States and the Commission will intensify discussions without undue delay with the aim of better ensuring complete, strong and effective protection of investments within the European Union. Those discussions include the assessment of existing processes and mechanisms of dispute resolution, as well as of the need and, if the need is ascertained, the means to create new or to improve existing relevant tools and mechanisms under Union law.[10]

This declaration is without prejudice to the division of competences between the Member States and the Union.

Taking into account the foregoing, Member States declare that they will undertake the following actions without undue delay:

1. By the present declaration, Member States inform investment arbitration tribunals about the legal consequences of the *Achmea* judgment, as set out in this declaration, in all pending intra-EU investment arbitration proceedings brought either under bilateral investment treaties concluded between Member States or under the Energy Charter Treaty.

2. In cooperation with a defending Member State, the Member State, in which an investor that has brought such an action is established, will take the necessary measures to inform the investment arbitration tribunals concerned of those consequences. Similarly, defending Member States will request the courts, including in any third country, which are to decide in proceedings relating to an intra-EU investment arbitration award, to set these awards aside or not to enforce them due to a lack of valid consent.

3. By the present declaration, Member States inform the investor community that no new intra-EU investment arbitration proceeding should be initiated.

4. Member States which control undertakings that have brought investment arbitration cases against another Member State will take steps under their national laws

---

[10] Council conclusions on the Communication of the Commission on the mid-term review of the Capital Markets Union Action Plan; http://www.consilium.europa.eu/en/press/press-releases/2017/07/11/conclusions-mid-term-review-capital-markets-union-action-plan/

3

governing such undertakings, in compliance with Union law, so that those undertakings withdraw pending investment arbitration cases.

5. In light of the *Achmea* judgment, Member States will terminate all bilateral investment treaties concluded between them by means of a plurilateral treaty or, where that is mutually recognised as more expedient, bilaterally.

6. Member States will ensure effective legal protection pursuant to the second subparagraph of Article 19(1) TEU under the control of the Court of Justice against State measures that are the object of pending intra-EU investment arbitration proceedings.

7. Settlements and arbitral awards in intra-EU investment arbitration cases that can no longer be annulled or set aside and were voluntarily complied with or definitively enforced before the Achmea judgment should not be challenged. Member States will discuss, in the context of the plurilateral Treaty or in the context of bilateral terminations, practical arrangements, in conformity with Union law, for such arbitral awards and settlements. This is without prejudice to the lack of jurisdiction of arbitral tribunals in pending intra-EU cases.

8. Member States will make best efforts to deposit their instruments of ratification, approval or acceptance of that plurilateral treaty or of any bilateral treaty terminating bilateral investment treaties between Member States no later than 6 December 2019. They will inform each other and the Secretary General of the Council of the European Union in due time of any obstacle they encounter, and of measures they envisage in order to overcome that obstacle.

9. Beyond actions concerning the Energy Charter Treaty based on this declaration, Member States together with the Commission will discuss without undue delay whether any additional steps are necessary to draw all the consequences from the *Achmea* judgment in relation to the intra-EU application of the Energy Charter Treaty.

Further signatories may be added at any time.

Done in Brussels on 15 January 2019.

Royaume de Belgique/
Koninkrijk België

Република България

Česká republika

Kongeriget Danmark

Bundesrepublik Deutschland

Eesti Vabariik

Éire/Ireland

Ελληνική Δημοκρατία

Reino de España

[ See text attached ]
République française

Republika Hrvatska

Repubblica italiana

Κυπριακή Δημοκρατία

Latvijas Republika

5

*[signature]*
Lietuvos Respublika

*[signature]*
Koninkrijk der Nederlanden

*[signature]*
Republik Österreich

*[signature]*
Rzeczpospolita Polska

*Nuno Brito*
República Portuguesa

*[signature]*
România

*[signature]*
Slovenská republika

*[signature]*
United Kingdom of Great Britain
and Northern Ireland

6

# DÉCLARATION DES REPRÉSENTANTS DES GOUVERNEMENTS DES ÉTATS MEMBRES,

# DU 15 JANVIER 2019,

# RELATIVE AUX CONSÉQUENCES JURIDIQUES DE L'ARRÊT *ACHMEA* RENDU PAR LA COUR DE JUSTICE ET À LA PROTECTION DES INVESTISSEMENTS DANS L'UNION EUROPÉENNE

LES REPRÉSENTANTS DES GOUVERNEMENTS DES ÉTATS MEMBRES ONT ADOPTÉ LA DÉCLARATION SUIVANTE:

Dans l'arrêt qu'elle a rendu le 6 mars 2018 dans l'affaire C-284/16, République slovaque/Achmea (ci-après l'«arrêt *Achmea*»), la Cour de justice de l'Union européenne a jugé que *«les articles 267 et 344 [du traité sur le fonctionnement de l'Union européenne] doivent être interprétés en ce sens qu'ils s'opposent à une disposition contenue dans un accord international conclu entre les États membres [...] aux termes de laquelle un investisseur de l'un de ces États membres peut, en cas de litige concernant des investissements dans l'autre État membre, introduire une procédure contre ce dernier État membre devant un tribunal arbitral, dont cet État membre s'est obligé à accepter la compétence»* (ci-après les «clauses d'arbitrage entre investisseurs et États»).

Conformément aux obligations qui leur incombent en droit de l'Union, les États membres doivent tirer toutes les conséquences nécessaires de cet arrêt.

Le droit de l'Union prime les traités bilatéraux d'investissement conclus entre États membres.[1] En conséquence, toutes les clauses d'arbitrage entre investisseurs et États contenues dans les traités bilatéraux d'investissement conclus entre États membres sont contraires au droit de l'Union et, de ce fait, inapplicables. Ces clauses, et notamment les dispositions prévoyant une prolongation de la durée de protection des investissements réalisés avant l'extinction du traité (communément appelées «clauses d'extinction» ou «clauses de grand-père»), ne produisent pas d'effets. Un tribunal arbitral établi sur la base de telles

---

[1] Pour ce qui concerne les conventions conclues entre États membres, voir les arrêts rendus dans les affaires 235/87, *Matteucci*, EU:C:1988:460, point 21, et C-478/08, *Budějovický Budvar*, EU:C:2009:521, points 98 et 99, ainsi que la déclaration 17 annexée au traité de Lisbonne relative à la primauté du droit de l'Union. Le principe de primauté est également consacré par le droit international public général, et en particulier par les dispositions pertinentes de la Convention de Vienne sur le droit des traités et du droit international coutumier (*lex posterior*).

1

clauses est incompétent, du fait que l'État membre partie au traité bilatéral d'investissement sous-jacent n'a pas présenté une offre d'arbitrage valide.

Par ailleurs, les conventions internationales conclues par l'Union, notamment le traité sur la Charte de l'énergie, font partie intégrante de l'ordre juridique de l'UE et doivent donc être compatibles avec les traités européens.[2] Des tribunaux arbitraux ont jugé que le traité sur la Charte de l'énergie contenait également une clause d'arbitrage entre investisseurs et États applicable entre États membres.[3] Ainsi interprétée, cette clause serait incompatible avec les traités, et son application devrait dès lors être écartée.[4]

Lorsque les investisseurs des États membres exercent une liberté fondamentale, telle que la liberté d'établissement ou la libre circulation des capitaux, ils agissent dans le champ d'application du droit de l'Union et bénéficient dès lors de la protection conférée par ces libertés et, selon le cas, le droit dérivé applicable, par la charte des droits fondamentaux de l'Union européenne et par les principes généraux du droit de l'Union, notamment les principes de non-discrimination, de proportionnalité, de sécurité juridique et de protection de la confiance légitime.[5] Lorsqu'un État membre édicte une mesure dérogeant à une liberté fondamentale garantie par le droit de l'Union, cette mesure entre dans le champ d'application du droit de l'Union, et les droits fondamentaux garantis par la Charte s'appliquent également.[6]

Les États membres sont tenus d'établir les voies de recours nécessaires pour assurer une protection juridictionnelle effective des droits des investisseurs consacrés par le droit de l'Union.[7] En particulier, tout État membre doit assurer que ses juridictions, au sens défini par le droit de l'Union, satisfont aux exigences d'une protection juridictionnelle effective.[8]

Les États membres soulignent l'importance de fournir des orientations sur la manière dont le droit de l'Union protège les investissements intra-UE, et notamment sur les voies de recours. Dans ce contexte, les États membres prennent note de la communication intitulée «Protection

---

[2] Arrêt dans l'affaire C-266/16, *Western Sahara*, EU:C:2018:118, points 42 à 51. Dans le cas du traité sur la Charte de l'énergie, une interprétation systémique, compatible avec les traités, exclut tout arbitrage entre investisseurs et États intra-UE.
[3] Article 26, paragraphe 3, du traité sur la Charte de l'énergie. Cette interprétation fait actuellement l'objet d'un recours devant une juridiction nationale, dans l'affaire nº 4658-18, Svea Court of Appeal, Novenergia II - Energy & Environment (SCA) (Grand-Duché de Luxembourg), SICAR/Royaume d'Espagne, SCC Arbitration (2015/06).
[4] Voir la communication intitulée «Protection des investissements intra-UE», adoptée par la Commission le 19 juillet 2018 [COM(2018) 547 final], pp. 3 et 4.
[5] Arrêt dans l'affaire C-390/12, *Pfleger*, EU:C:2014:281, points 30 à 37.
[6] Arrêt dans l'affaire C-685/15, *Online Games Handels*, EU:C:2017:452, points 55 et 56.
[7] Article 19, paragraphe 1, second alinéa, du traité sur l'Union européenne (TUE).
[8] Arrêt dans l'affaire C-64/16, *Associação Sindical dos Juízes Portugueses*, EU:C:2018:117, points 31 à 37.

2

des investissements intra-UE», qu'a adoptée la Commission le 19 juillet 2018.[9]

À la lumière des conclusions du Conseil Ecofin du 11 juillet 2017, les États membres et la Commission intensifieront à bref délai leurs discussions en vue de mieux assurer une protection complète, solide et efficace des investissements au sein de l'Union européenne. Il s'agira notamment d'évaluer les procédures et mécanismes existants pour la résolution des litiges, ainsi que la nécessité et, le cas échéant, les moyens de créer de nouveaux outils et dispositifs pertinents ou d'améliorer ceux prévus par le droit de l'Union.[10]

La présente déclaration est sans préjudice de la répartition des compétences entre les États membres et l'Union.

Eu égard aux considérations qui précèdent, les États membres déclarent qu'ils prendront les mesures suivantes dans les meilleurs délais:

1. Par la présente déclaration, les États membres informent les tribunaux d'arbitrage en matière d'investissements des conséquences juridiques de l'arrêt *Achmea*, telles qu'elles sont exposées dans la présente déclaration, pour toutes les procédures arbitrales pendantes relatives à des investissements intra-UE qui ont été engagées au titre soit de traités bilatéraux d'investissement conclus entre États membres, soit du traité sur la Charte de l'énergie.

2. En concertation avec l'État membre défendeur, l'État membre dans lequel est établi un investisseur ayant engagé ce type de recours prendra les mesures nécessaires pour informer le tribunal d'arbitrage en matière d'investissements concerné des conséquences de cet arrêt. De même, les États membres défendeurs demanderont aux juridictions, y compris de pays tiers, qui doivent prononcer une sentence arbitrale relative à des investissements intra-UE, d'annuler ou de ne pas exécuter lesdites sentences en raison de l'absence d'un consentement valide.

3. Par la présente déclaration, les États membres informent la communauté des investisseurs qu'aucune nouvelle procédure d'arbitrage en matière d'investissements intra-UE ne devrait être engagée.

4. Les États membres qui contrôlent des entreprises ayant engagé une procédure d'arbitrage

---

[9] COM(2018) 547 final.
[10] Conclusions du Conseil sur la communication de la Commission sur l'examen à mi-parcours du plan d'action concernant l'union des marchés des capitaux: https://www.consilium.europa.eu/fr/press/press-releases/2017/07/11/conclusions-mid-term-review-capital-markets-union-action-plan/

3

relative à un investissement à l'encontre d'un autre État membre prendront des mesures au titre de leurs dispositions législatives nationales régissant ces entreprises, dans le respect du droit de l'Union, afin que ces entreprises retirent leurs recours encore pendants.

5. À la lumière de l'arrêt *Achmea*, les États membres résilieront tous les traités bilatéraux d'investissement conclus entre eux, par la voie d'un traité plurilatéral ou, si cela est mutuellement jugé plus opportun, bilatéralement.

6. Conformément à l'article 19, paragraphe 1, second alinéa, du TUE, les États membres garantiront sous le contrôle de la Cour de justice, une protection juridictionnelle effective contre des mesures d'État qui font l'objet d'une procédure d'arbitrage en matière d'investissements intra-UE encore pendante.

7. Les arrêts et les sentences arbitrales rendus dans des affaires d'arbitrage relatives à des investissements intra-UE qui ne peuvent plus être annulés ni suspendus et qui ont été volontairement respectés ou définitivement exécutés avant l'arrêt *Achmea* ne devraient pas être contestés. Les États membres examineront, dans le cadre du traité plurilatéral ou de résiliations bilatérales et dans le respect du droit de l'Union, les modalités pratiques à adopter pour ces arrêts et sentences arbitrales. Cette démarche est sans préjudice de l'absence de compétence des tribunaux arbitraux dans les affaires intra-UE pendantes.

8. Les États membres mettront tout en œuvre pour déposer le 6 décembre 2019 au plus tard leurs instruments de ratification, d'approbation ou d'acceptation de ce traité plurilatéral ou de tout traité bilatéral résiliant des traités bilatéraux d'investissement conclus entre États membres. Ils s'informeront mutuellement et informeront le Secrétaire général du Conseil de l'Union européenne en temps utile de tout obstacle qu'ils rencontrent, et des mesures qu'ils envisagent de prendre pour surmonter cet obstacle.

9. Au-delà des mesures concernant le traité sur la Charte de l'énergie fondées sur la présente déclaration, les États membres examineront dans les meilleurs délais avec la Commission si des mesures supplémentaires sont nécessaires pour tirer toutes les conséquences de l'arrêt *Achmea* en ce qui concerne l'application intra-UE du traité sur la Charte de l'énergie.

4

D'autres signataires peuvent être ajoutés à tout moment.

Fait à Bruxelles, le 16 janvier 2019.

Pour la République française,

Philippe Léglise-Costa,

Ambassadeur, Représentant permanent auprès de l'Union européenne

**Royaume de Belgique/
Koninkrijk België**

ROUX François
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Belgium to the EU

**Република България**

TZANTCHEV Dimiter
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Bulgaria to the EU

**Česká republika**

DÜRR Jakub
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of the Czech Republic to the EU

**Kongeriget Danmark**

ANDERSEN Per Fabricius
Ambassador
Deputy Permanent Representative of Denmark to the EU

**Bundesrepublik Deutschland**

CLAUSS Michael
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Germany to the EU

**Eesti Vabariik**

TAEL Kaja
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Estonia to the EU

**Éire/Ireland**

KELLEHER Declan
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Ireland to the EU

**Ελληνική Δημοκρατία**

PAPASTAVROU Andreas
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Greece to the EU

**Reino de España**

GARCÍA-BERDOY Pablo
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Spain to the EU

**République française**

LÉGLISE-COSTA Philippe
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of France to the EU

**Republika Hrvatska**

ŠKRABALO Mato
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Croatia to the EU

**Repubblica italiana**

MASSARI Maurizio
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Italy to the EU

**Κυπριακή Δημοκρατία**

EMILIOU Nicholas
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Cyprus to the EU

**Latvijas Republika**

PAVĻUTA-DESLANDES Sanita
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Latvia to the EU

**Lietuvos Respublika**

NELIUPŠIENĖ Jovita
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Lithuania to the EU

**Koninkrijk der Nederlanden**

DE GROOT Robert
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of the Netherlands to the EU

**Republik Österreich**

KMENTT Alexander
Ambassador
Permanent Representative to the Political and Security Committee

**Rzeczpospolita Polska**

SADOŚ Andrzej
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Poland to the EU

**República Portuguesa**

BRITO Nuno
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Portugal to the EU

**România**

STOICA Călin-Rolo
Minister Plenipotentiary
Permanent Representative to the Political and Security Committee

**Slovenská republika**

JAVORČIK Peter
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of Slovakia to the EU

**United Kingdom of Great Britain and Northern Ireland**

BARROW Tim
Ambassador Extraordinary and Plenipotentiary
Permanent Representative of the United Kingdom to the EU