# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                            :
NEXTERA ENERGY GLOBAL HOLDINGS              :
B.V. and NEXTERA ENERGY SPAIN              :
HOLDINGS B.V.,                              :
                                            :
                        Petitioners,        :    Civil Action No. 19-cv-01618-TSC
                                            :
            v.                              :
                                            :
KINGDOM OF SPAIN                            :
                                            :
                        Respondent          :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## NEXTERA'S MEMORANDUM IN OPPOSITION TO THE KINGDOM OF SPAIN'S MOTION TO DISMISS OR STAY, AND REPLY IN FURTHER  SUPPORT OF ITS PETITION TO CONFIRM AN INTERNATIONAL ARBITRATION AWARD

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 6

     A.    The Parties .......................................................................................... 6

     B.    NextEra's Investment In Spain's Renewables Sector ............................... 6

     C.    The Treaty Framework Governing NextEra's Rights and Claims .......................... 7

          1.    The Energy Charter Treaty ........................................................... 7

          2.    The ICSID Convention ................................................................ 8

     D.    NextEra Commences an ICSID Convention Arbitration Against Spain ................ 9

     E.    The Tribunal's March 2019 Decision Finding Spain Liable for Breaching the ECT – and Dismissing Spain's Jurisdictional Objections and "Intra-EU" Arguments ................................................................................... 10

     F.    The Tribunal's May 2019 Award of € 290.6 Million ............................... 11

     G.    Spain's Annulment Application ........................................................... 11

     H.    The Current Action – NextEra's Petition to Confirm the ICSID Arbitration Award ................................................................................... 12

     I.    Other ECT/"Solar" Award Enforcement Actions against Spain in U.S. Courts ............................................................................................... 12

I.    SUBJECT MATTER JURISDICTION EXISTS BECAUSE SPAIN, HAVING RATIFIED THE ICSID CONVENTION, HAS WAIVED ANY OBJECTION TO A SUIT TO ENFORCE THE AWARD IN THE UNITED STATES COURTS ............ 14

II.    SUBJECT MATTER JURISDICTION ALSO EXISTS BECAUSE THIS ACTION FALLS WITHIN THE FSIA ARBITRATION EXCEPTION .......................... 17

     A.    There Is No Room for Dispute that an ICSID Award Satisfies the Relevant Criteria Under FSIA Section 1605(a)(6) .............................................. 17

     B.    An Arbitration Agreement Indisputably Exists Between Spain and NextEra ....................................................................................... 18

1.    The Arbitration Exception Requires Only the Existence of An Award and an Arbitration Agreement – It Does Not Allow Relitigation of an ICSID Award ................................................................................................ 18

2.    Non-ICSID Case Law Further Shows that the Arbitration Exception Is Satisfied – and that the FSIA Does Not Allow Awards to be Subject to Collateral Attack ............................................................................................ 20

3.    The Facts Moreover Show that Spain Agreed to Delegate Questions of Arbitrability to the ICSID Convention Tribunal .................................................. 21

C.    Even if the Substance of Spain's ECT and "*Achmea*" Arguments Could  be Reached in this Proceeding, Spain's Arguments Still Fail .................................... 22

1.    Under International Law, Which Governs the ECT, Spain's Consent To Arbitrate Cannot be Invalidated by Internal European Union Law .................... 22

2.    In Any Event, EU law Does Not Bar Arbitration  of Intra-EU Claims under the ECT ........................................................................................ 26

3.    Spain's Other European "Authorities" Are Unpersuasive .................................... 30

III.    SPAIN'S *FORUM NON CONVENIENS* ARGUMENT IS MERITLESS ........................ 32

IV.    SPAIN'S REMAINING OBJECTIONS TO THE PETITION SHOULD BE DENIED ............................................................................................................ 36

A.    The Full Faith and Credit Principle Fully Supports NextEra – And Shields the Award from Collateral Attack .......................................................... 36

1.    The Intra-EU/*Achmea* Argument is not a Proper Basis for Opposing Enforcement ......................................................................................... 36

2.    Spain's "State Aid" Argument is Not a Proper Basis for Resisting Enforcement ......................................................................................... 37

B.    Spain's Reliance Upon the So-Called "Foreign Sovereign Compulsion" Doctrine is Unavailing ......................................................................... 38

C.    The Act of State Doctrine Has No Application Here ........................................... 39

V.    SPAIN'S APPLICATION FOR A DISCRETIONARY STAY OF PROCEEDINGS SHOULD BE DENIED ...................................................................... 41

CONCLUSION ................................................................................................... 45

# TABLE OF AUTHORITIES

## CASES

*9REN Holding S.À.R.L. v. Kingdom of Spain*,
No. 1:19-cv-01871-TSC (D.D.C. filed June 25, 2019)......................................................13

*9REN Holding S.à.r.l. v. Kingdom of Spain*,
No. ARB/15/15, Award (ICSID 2019) ...........................................................................29

*Aldana v. Del Monte Fresh Produce N.A.*,
547 F. 3d 1283 (11th Cir. 2009) ...................................................................................35

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964).......................................................................................................40

*BCB Holdings Ltd. v. Belize*,
110 F. Supp. 3d 233 (D.D.C. 2015), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016)................33

*Belize Social Development Ltd. v. Government of Belize*,
668 F.3d 724 (D.C. Cir. 2012)......................................................................................44

*BG Group, PLC v. Republic of Argentina*,
572 U.S. 25 (2014)...............................................................................................19, 22

*Blue Ridge Investments L.L.C. v. Republic of Argentina*,
735 F.3d 72 (2d. Cir. 2013)..................................................................................16, 18

*Blusun S.A v. Italy*,
No. ARB/14/3, Award (ICSID 2016) ............................................................................26

*Chevron Corp v. Ecuador*,
795 F.3d 200 (D.C. Cir. 2015)..................................................................19, 20, 21, 22,

*Chevron Corp. v. Republic of Ecuador*,
949 F. Supp. 2d 57 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015) ..................22, 43

*Chubb & Son, Inc. v. Asiana Airlines*,
214 F.3d 301 (2d Cir. 2000)...........................................................................................24

*Continental Casualty Co. v. Argentine Republic*,
893 F. Supp. 2d 747 (E.D. Va. 2012) .....................................................................16, 18

*Continental Transfer Technique Ltd. v. Federal Government of Nigeria*,
697 F. Supp. 2d 46 (D.D.C. 2010) .........................................................................33, 36

*Creative Technoloty Ltd. v. Aztech System Pte., Ltd.*,
61 F. 3d 696 (9th Cir. 1995) .........................................................................................35

*Creighton Ltd. v. Government of State of Qatar*,
    181 F.3d 118 (D.C. Cir. 1999) ...................................................................................3, 15

*Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
    244 F. Supp. 3d 100 (D.D.C. 2017), *aff'd*, 760 F. App'x 1 (D.C. Cir. 2019) ....................22

*Cube Infrastructure Fund SICAV v. Spain*,
    No. ARB/15/20, Decision on Jurisdiction, Liability and Partial Decision on
    Quantum (ICSID 2019) ..........................................................................................26

*Deb v. SIRVA, Inc.*,
    832 F. 3d 800 (7th Cir. 2016) ..................................................................................32

*Dennis v. Edwards*,
    831 A.2d 1006 (D.C. Cir. 2003) ...............................................................................34

*Doe v. Exxon Mobil Corp.*,
    69 F. Supp. 3d 75 (D.D.C. 2014) ..............................................................................35

*Eiser Infrastructure Ltd. v. Kingdom of Spain*,
    No. 1:18-cv-1686-CKK (D.D.C. filed July 19, 2018) ......................................................13

*Espana v. ABSG Consulting, Inc.*,
    334 F. App'x. 383 (2d Cir. 2009) ..............................................................................34

*Europcar Italia, S.pA. v. Maiellano Tours, Inc.*,
    156 F.3d 310 (2d Cir. 1998)......................................................................................43

*Fauntleroy v. Lum*,
    210 U.S. 230 (1908)................................................................................................36

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
    665 F.3d 384 (2d Cir. 2011)......................................................................................34

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
    905 F.2d 438 (D.C. Cir. 1990) ..................................................................................15

*Foresight Luxembourg S.À.R.L. v. Kingdom of Spain*,
    No. 1:19-cv-03171-ER (S.D.N.Y. originally commenced Dec. 4, 2018) ...........................13

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*,
    636 F.2d 1300 (D.C. Cir. 1980) ................................................................................38

*\*Gold Reserve Inc. v. Bolivarian Republic of Venezuela*,
    146 F. Supp. 3d 112 (D.D.C. 2015), *appeal filed*, No. 15-7158 (D.C. Cir. Dec. 30,
    2015) ...............................................................................................................22, 43

*Greentech Energy Systems A/S v. Italy*,
  No. 2015/095, Final Award (SCC 2018) .......................................................26

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947).....................................................................................32

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)...................................................................................21

*Infrastructure Services Luxembourg S.À.R.L. v. Kingdom of Spain*,
  No. 1:18-cv-1753-EGS (D.D.C. filed July 27, 2018) ......................................13

*Iragorri v. United Technologies Corp.*,
  274 F. 3d 65 (2d Cir. 2001)...........................................................................36

*Landis v. North America Co.*,
  299 U.S. 248 (1936)......................................................................................44

*Mannington Mills, Inc. v. Congoleum Corp.*,
  595 F.2d 1287 (3d Cir. 1979)........................................................................38

*Maritime Int'l Nominees Establishment v. Rep. of Guinea*,
  693 F.2d 1094 (D.C. Cir. 1982) .....................................................................36

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
  397 F. Supp. 3d 34 (D.D.C. 2019)..................................................................42

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
  No. ARB/14/1, Award (ICSID 2018) ..............................................................29

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
  No. 1:18-cv-2254-JEB (D.D.C. filed Sept. 28, 2018)......................................13

*Maygar Farming Co. v. Hungary*,
  No. ARB/17/27, Award (ICSID 2019) .............................................................32

*Micula v. Government of Romania*,
  No. 17-02332 (APM), 2019 WL 4305533 (D.D.C. Sept. 11, 2019), *appeal filed*,
  No. 19-7127 (D.C. Cir. Oct. 11, 2019) ..........................................18, 20, 30, 38

*\*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017).....................................................................8, 20, 36

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
  158 F. Supp. 2d 377 (S.D.N.Y. 2001).............................................................34

*Novenergia II – Energy & Environment (SCA) v. Kingdom of Spain*,
  No. 1:18-cv-1148-TSC (D.D.C. filed May 16, 2018)........................................13

*Nygard v. DiPaolo*,
    753 F. App'x 716 (11th Cir. 2018)............................................................34

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
    No. 04-332 (EGS), 2006 WL 2711527 (D.D.C. Sept. 21, 2006)......................40

*O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*,
    830 F.2d 449 (2d Cir. 1987)..................................................................38

*Pao Tatneft v. Ukraine*,
    301 F. Supp. 3d 175 (D.D.C. 2018) ....................................................15, 17

*Pao Tatneft v. Ukraine*,
    771 F. App'x 9 (D.C. Cir. 2019), *petition for cert. docketed*, No. 19-606 (U.S.
    Nov. 12, 2019) .............................................................................15, 17

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981).................................................................32, 33, 35

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ................................................................34

*Princz v. Federal Republic of Germany*,
    26 F.3d 1166 (D.C. Cir. 1994) ..............................................................14

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)............................................................................22

*Re Picard, Tr. for Liquidation of Bernard L. Madoff Investment Secs. LLC*,
    917 F.3d 85 (2d Cir. 2019)...................................................................38

*Re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987) ..............................................................38

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004)...........................................................................39

*Rockhopper Italia S.p.A. v. Italy*,
    No. ARB/17/14, Decision on the Intra-EU Jurisdictional
    Objection (ICSID 2019)...............................................................26, 29, 31

*Royal Wulff Ventures LLC v. Primero Mining Corp.*,
    938 F.3d 1085 (9th Cir. 2019) ...............................................................40

*San Remo Hotel, L.P. v. City of San Francisco*,
    545 U.S. 323 (2005)...........................................................................37

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)..........................................................................................14

*Shi v. New Mighty U.S. Trust*,
    918 F.3d 944 (D.C. Cir. 2019), *cert. denied*, No. 19-232, 2019 WL 5301490
    (U.S. Oct. 21, 2019) ........................................................................................35

*Simon v. Republic of Hungary*,
    911 F.3d 1172 (D.C. Cir. 2018) ......................................................................34

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
    549 U.S. 422 (2007)........................................................................................32

*\*Slovak Republic v. Achmea B.V.*,
    Case C-284/16 (E.C.J. 2018) ...............................................................3, 26, 27

*SolEs Badajoz GmbH v. Spain*,
    No. ARB/15/38, Award (ICSID 2018) ...........................................................29

*Stati v. Republic of Kazakhstan*,
    199 F. Supp. 3d 179 (D.D.C. 2016)....................................................15, 19, 22

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
    No. 17-102 (RDM), 2018 WL 4705794 (D.D.C. Sept. 30, 2018), *appeal docketed*,
    No. 19-7153 (D.C. Cir. Dec. 9, 2019)..............................................................20

*\*Tidewater Investment SRL v. Bolivarian Republic of Venezuela*,
    No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) .....................3, 18, 19, 20

*\*TMR Energy Ltd. v. State Property Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005) ...............................................................4, 14, 33

*Underwriters National Assurance Co. v. North Carolina Life & Accident & Health
    Insurance Guaranty Association*,
    455 U.S. 691 (1982)........................................................................................37

*United States v. Ali*,
    718 F.3d 929 (D.C. Cir. 2013) ........................................................................24

*United States v. City of New Britain*,
    347 U.S. 81 (1954)..........................................................................................44

*UP and C.D Holding Internationale v. Hungary*,
    No. ARB/13/35, Award (ICSID 2018) ...........................................................28

*V.L. v. E.L.*,
    136 S. Ct. 1017 (2016)....................................................................................36

*Vattenfall AB. v. Germany,*
    No. ARB/12/12 (ICSID 2018) ...............................................................23, 26

*Verlinden B.V. v. Central Bank of Nigeria,*
    461 U.S. 480 (1983) ...............................................................................14

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
    296 F.3d 1154 (D.C. Cir. 2002) ........................................................15, 39

## STATUTES

22 U.S.C. § 1605a ............................................................................................2

22 U.S.C. § 1650a ..................................................2, 9, 13, 19, 20, 34, 36

28 U.S.C. § 1404 ............................................................................................14

28 U.S.C. § 1604 ............................................................................................14

28 U.S.C. § 1605(a) ............................................................................14, 17, 18

28 U.S.C. § 1610(c) ........................................................................................44

28 U.S.C. § 1603(a) ..........................................................................................6

9 U.S.C. § 201 ................................................................................................43

U.S. Constitution, art. IV, § 1 ......................................................................37

## RULES

Federal Rules of Civil Procedure 62(a) ........................................................44

Federal Rules of Civil Procedure 62(b) ........................................................44

## OTHER AUTHORITIES

Alan Scott Rau, *The Errors of Comity: Forum Non Conveniens Returns to the Second
    Circuit,* 23 Am. Rev. Int'l Arb. 1 (2012) ...........................................34

*Applicability of the Obligation to Arbitrate under Section 21 of the United Nations
    Headquarters Agreement of 26 June 1947,* Advisory Opinion, I.C.J. Rep., 1988 ...........25

Gary B. Born, *International Commercial Arbitration* (2d ed. 2014) ...........................19

Convention on the Settlement of Investment Disputes between States and Nationals of
    Other States, Nov. 18, 1965, 575 U.N.T.S. 159 ....................................... *passim*

Declaration of the Representatives of the Governments of the Member States on the
    Enforcement of the Judgment of the Court of Justice in *Achmea* and on
    Investment Protection in the European Union (Jan. 16, 2019) ...........................................31

Declaration of the Representative of the Government of Hungary on the Legal
    Consequences of the Judgment of the Court of Justice in Achmea and on
    Investment Protection in the European Union (Jan. 16, 2019) ...........................................31

Declaration of the Representatives of the Governments of the Member States on the
    Legal Consequences of the Judgment of the Court of Justice in *Achmea* and on
    Investment Protection in the European Union (Jan. 15, 2019) ...........................................31

Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95 ................................................... *passim*

Advisory Opinion, 1930, P.C.I.J., Series B, No. 17 ...................................................................25

International Commercial Disputes Committee of the Association of the Bar of the City
    of New York, *Lack of Jurisdiction and Forum Non Conveniens as Defenses to the
    Enforcement of Foreign Arbitral Awards* 18 (2005) .........................................................34

Linda J. Silberman, *Civil Procedure Meets International Arbitration: A Tribute to Hans
    Smit*, 23 Am. Rev. Int'l Arb. 439 (2012) ..........................................................................34

Matthew H. Adler, *Figueiredo v. Peru: A Step Backward for Arbitration Enforcement*, 32
    N.W. J. Int'l L. & Bus. 38A (2012) ...................................................................................34

Netherlands-Slovakia Bilateral Investment Treaty ..............................................................27, 29

Opinion 1/17(CETA), EU:C:2019:341 (ECJ Apr. 30, 2019) .....................................................28

Peter B. Rutledge, *Symposium: With Apologies to Paxton Blair*,
    45 N.Y.U. J. Int'l L. & Pol. 1063 (2013) ...........................................................................34

Restatement (Third) of U.S. Law of International Commercial Arbitration § 4.27(a) (Am.
    Law Inst., Proposed Final Draft, 2019)........................................................................33, 34

Restatement (Fourth) of Foreign Relations Law ........................................................................40

Secretary of State Rogers' Report to the President, 65 Dep't St. Bull 684 (1971) .......................24

*S.S. "Wimbledon*," 1923, P.C.I.J., Series A, No. 1.....................................................................25

Treaty on the Functioning of the European Union ......................................................................19

Vienna Convention on the Law of Treaties, May 23, 1969, 1155 U.N.T.S. 331       24

Petitioners NextEra Energy Global Holdings B.V., and NextEra Energy Spain Holdings B.V. (collectively "NextEra" or "Petitioners") submit this Memorandum in Opposition to the motion of Respondent the Kingdom of Spain ("Spain") to dismiss or stay this action and Reply in Support of the Petition to Confirm an International Arbitration Award.

## PRELIMINARY STATEMENT

NextEra holds an international arbitration award ordering Spain to pay € 290.6 million in damages, plus interest and attorneys' fees, to compensate NextEra for losses arising from a large investment it made in solar energy projects within Spain. After a five-year proceeding, including a six day evidentiary hearing in London, a three-member arbitral tribunal unanimously concluded that Spain's conduct, including its "fundamental[] and radical[] chang[es]" to the regulatory framework on which NextEra relied when making its investment, violated Spain's obligations under the 1994 Energy Charter Treaty ("ECT").[1] The arbitration was conducted, and the award rendered, under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Nov. 18, 1965, 575 U.N.T.S. 159 (Nelson Decl. Ex. 2) (the "ICSID Convention"), to which both Spain and the United States are party.

***Standards for Recognition of an ICSID Award.*** Recognition of the Award in this case should be straightforward because the applicable law is clear. A central feature of the ICSID

---

[1] *NextEra Energy Global Holdings B.V. v. Spain*, No. ARB/14/11, Award ¶ 599 (ICSID 2009); June 3, 2019 Declaration of Timothy G. Nelson ("Nelson I Decl."), Ex. 1 (hereinafter "Award"); *see also* ECT (Nelson I Decl. Ex. 3). This Memorandum also refers to: (1) the Decision on Jurisdiction, Liability and Quantum Principles dated March 12, 2019 (Nelson I Decl. Ex. 1 (Annex A)) ("Liability Decision"); (2) the Petition filed on June 3, 2019 ("Petition"); (3) Petitioners' June 3, 2019 Memorandum of Law ("Pet. Mem."); (4) Spain's October 11, 2019 Memorandum of Law ("Spain MTD"), and accompanying Declaration of Professor Dr. Steffan Hindelang ("Hindelang Decl.") and exhibits; and (5) the accompanying Expert Declaration of Professor George Bermann ("Bermann Decl.") and Second Declaration of Timothy G. Nelson ("Nelson II Decl."), with their respective exhibits.

Convention is its mandatory rules for recognition and enforcement of ICSID awards. This is reflected through the Convention on Settlement of Investment Disputes Act of 1966, which provides that the "pecuniary obligations" imposed by an ICSID Convention award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. 22 U.S.C. § 1650a(a).[2] This statute effectuates Article 54 of the ICSID Convention, which mandates that "[e]ach Contracting State [to the ICSID Convention]," including the United States, "shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention art. 54(1).

Paying no heed to these principles, however, Spain seeks to engage in a wholesale collateral attack on some of the key jurisdictional findings underpinning the Award. Spain seeks to persuade this Court that: (i) subject matter jurisdiction is lacking, for purposes of the Foreign Sovereign Immunities Act ("FSIA"), because, it claims, it never validly agreed to arbitration of disputes with NextEra; (ii) the Court should elect to decline jurisdiction (supposedly on *forum non conveniens* principles); and (iii) enforcement of the Award should be declined because it would violate European Union ("EU") law on "state aid." None of these defenses are compatible with the United States statutory regime governing an ICSID Convention award.

***The FSIA Waiver Exception Applies.*** Under Article 54 of the ICSID Convention, all Contracting States, including Spain and the United States, have unconditionally agreed that their "national courts" shall enforce ICSID awards and grant them the same status as a final national court judgment. ICSID Convention, art. 54(1). As a matter of law, Spain's accession to a

---

[2]    The minimal proof requirements of an enforcement action are met here. *See* Nelson II Decl. Ex. 6 (certified copy of ICSID Award); ECF No. 12 (Spain acknowledging service).

multilateral convention that provides for enforcement of awards in each Contracting State operates to waive sovereign immunity in such enforcement actions, thus satisfying the FSIA's "waiver exception." *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122-23 (D.C. Cir. 1999) (*citing* 28 U.S.C. § 1605(a)(1)).

   ***The FSIA Arbitration Exception Applies.***   Although subject matter jurisdiction exists based on the "waiver exception" alone, the FSIA "arbitration exception" is also met here. Unquestionably, an arbitration agreement exists. Spain admits it has at all material times been a party to the ECT and ICSID Convention. By Article 26 of the ECT, Spain agreed that any national of any ECT Contracting Party, including NextEra (which is incorporated in the Netherlands), could arbitrate disputes arising from the ECT before a tribunal constituted under the ICSID Convention. (*See infra* at 7.) Standing alone, these facts satisfy the arbitration exception.

   Spain's "intra-EU" or "*Achmea*" argument does not challenge that the treaty, on its face, creates an agreement to arbitrate; it merely claims that the agreement is invalid under EU law. However, this point was fully argued and rejected by the ICSID tribunal in this case. *See* Liability Decision ¶¶ 272-357. The ICSID tribunal received extensive arguments on this point, and even allowed the European Commission to submit observations on the same issue, before the tribunal concluded that the ECT applies on an intra-EU basis. That adjudication is *res judicata* between the parties and cannot be relitigated in these proceedings. *See Tidewater Inv. SRL v. Bolivarian Rep. of Venez.*, 17-1457 (TJK), 2018 WL 6605633, at *6 n.4 (D.D.C. Dec. 17, 2018) ("[E]ven as to questions of ICSID's jurisdiction, provided that the question has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter here"). Nor can it be relitigated through a discussion of the FSIA arbitration exception. [3]

_____

[3]    Spain and its expert place considerable weight on the 2018 decision by the Court of Justice of the European Union ("CJEU") in *Slovak Republic v. Achmea B.V.*, Case No. C-284/16 (ECJ

Even if the merits of Spain's intra-EU arguments could be reached, they are untenable:

(i)     the relevant text of the ECT is clear on its face, and it contains no carve-out for intra-EU disputes.  In fact, the treaty drafters considered including such a "disconnection clause," but ultimately rejected the proposal.  Spain is effectively asking this Court to rewrite the ECT.

(ii)    Unlike the *Achmea* case, which arose out of a bilateral treaty between two EU Member States, the ECT is a multilateral treaty to which the European Union itself is a party.  Also unlike *Achmea*, enforcement of the Award is governed by the ICSID Convention.

(iii)   Additionally, the ECT contains an express conflicts rule  stating that the ECT takes primacy over any contrary treaties that concern the same subject-matter. *See* ECT art. 16(2).

(iv)    International law, which supplements the ECT, has long held that a state cannot utilize its internal or domestic law as a basis for avoiding a treaty obligation.  *See infra* at 23-24; Bermann Decl. ¶¶ 136-37.

(v)     The only way to invalidate Article 26 of the ECT would be for its members (which include numerous EU Member States) to formally modify its terms, but this has not been done.

In sum, every one of Spain's efforts to use internal EU law as a means of avoiding its obligation to arbitrate disputes under the ECT is unavailing.

   ***Spain's forum non conveniens motion is wholly without merit.***  The D.C. Circuit has made clear that *forum non conveniens* is not an appropriate basis to oppose enforcement of an international arbitration award in the United States, for the basic and obvious reason that it is the only possible forum in which enforcement can be had against assets located in the United States. *TMR Energy Ltd. v. State Prop. Fund of Ukr.,* 411 F.3d 296, 303 (D.C. Cir. 2005).  Spain also omits to inform the Court that there are already seven other ECT award enforcement cases pending

_____

2018) ("*Achmea*") (Hindelang Ex. 46), holding that arbitration of an investment dispute arising from a Netherlands-Slovakia Bilateral Investment Treaty was incompatible with EU law.  But *Achmea*'s holding does not purport to apply to the ECT, a wholly distinct treaty – not least because the European Union itself is a party to the ECT.  Bermann Decl. ¶ 115.  *Achmea* represents no more than an internal decision on EU law (as applicable in EU member states) which is not a proper basis for invalidating obligations that arise under the ECT.  Bermann Decl. ¶¶ 115-21.  Not surprisingly, every international tribunal to hear and adjudicate the arguments now advanced by Spain and its expert has rejected them. *See id.* ¶ 116; *infra* at 29.

against it in the courts of this District and in the Southern District of New York – and that in none of those other cases did it seek *forum non conveniens* dismissal.  On the contrary, in one of them, it pointed to the pendency of cases in this District (including one before *this Court*) as indicating that this District was the ideal forum to handle such disputes.

**Spain's Substantive Points in Opposition to the Petition Also Lack Merit.**  Spain's remaining legal objections conflict with the statutory requirement that the Award be given "full faith and credit" (which forecloses any kind of substantive review).  Thus, its claim that enforcement somehow might violate Spain's internal policy against granting "state aid" is wholly inadmissible, as is its residual challenge to this Court's jurisdiction.

**Spain's Application for a Lengthy Stay Should be Denied – and the Case Should be Fully Adjudicated as Soon as the ICSID annulment committee lifts the present ICSID Stay of Enforcement.**  Spain claims that the pendency of internal review within ICSID (its pending "annulment" application) warrants a stay of these proceedings pending a final decision on the annulment application.  It is true that the filing of that annulment application triggered an automatic provisional stay of enforcement of the Award pursuant to Article 52(5) of the ICSID Convention, meaning that the Court should not allow final enforcement of the Award at this time.  However, Article 52 expressly designates the ICSID *ad hoc* annulment committee as the competent body to decide whether the provisional stay should be continued or lifted.  The annulment committee has now been formed and will soon be called on to determine that very question.  It is likely to render a decision in the first quarter of 2020.  *See infra* at 11.  The most that Spain can ask for, therefore, is a purely temporary stay of these proceedings until the *ad hoc* annulment committee decides whether to stay enforcement.  At that point, if the *ad hoc* annulment committee lifts the stay, NextEra can and should be granted final judgment upon the Award.

## FACTUAL BACKGROUND

### A.    The Parties

Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. are private limited liability companies incorporated under the laws of the Netherlands.

Respondent the Kingdom of Spain is a foreign state within the meaning of the FSIA, *See* 28 U.S.C. § 1603(a).

### B.    NextEra's Investment In Spain's Renewables Sector

The underlying dispute in this case arises out of investments that NextEra made in two concentrated solar power ("CSP") projects in Spain.

In 2007, Spain passed legislation aimed at promoting domestic investment in solar power projects.  The measures marked an attempt to "encourage[] investment in new capacity" by minimizing regulatory uncertainty and providing "transparency and predictability."  Liability Decision ¶ 116 (citation omitted).  In reliance on that legislation and explicit assurances by Spanish authorities, including "[s]tatements made in writing to NextEra by Spanish officials," *id.* ¶ 588(1), NextEra invested in the construction, development, and operation of two CSP projects in Spain, at a total cost of approximately 750 million euros.  *Id.* ¶¶ 93, 97.

After a government transition, Spain enacted a series of laws between 2012 and 2014 that "fundamentally and radically changed" the investment regime on which NextEra relied when making its investment.  *Id.* ¶ 599.  The changes created an entirely new regulatory system by 2014, contradicting written government assurances to NextEra and going "beyond anything that might have been reasonably expected" by NextEra when it "undertook [the] investment."  *Id.*  NextEra suffered significant harm as a result.  *See id.* ¶¶ 678-80 (concluding that "Claimants are entitled to damages" and inviting further quantum claim submissions).

C.    **The Treaty Framework Governing NextEra's Rights and Claims**

1.    The Energy Charter Treaty

At all material times, NextEra's solar power investments were protected by the ECT (Nelson Decl. Ex. 3).  The ECT, a multinational treaty that has been ratified by more than 50 countries across the globe, including both Spain and the Netherlands (as well as the European Union itself), creates "a legal framework in order to promote long-term cooperation in the energy field" via a suite of "complementarities and mutual benefits."  ECT art. 2.  It provides, among other things, that energy investments in the territory of an ECT Contracting Party, if made by nationals of another ECT Contracting Party, are entitled to "fair and equitable treatment."  *Id.* art. 10(1).

The ECT provides further that if a dispute arises between a protected investor and an ECT Contracting Party, it can be resolved by arbitration (at the investor's election).  By Article 26(3)(a) of the ECT, Spain "unconditional[ly] consent[s]" to submission of ECT disputes to various forms of arbitration as listed in Article 26(4), including arbitration under the ICSID Convention, provided: (i) both Spain and the investors' home state are parties to the ICSID Convention; and (ii) the investor "consent[s] in writing" to ICSID Convention arbitration.  *See* ECT, arts. 26(3)(a), 26(4)(a).[4]  Article 26(3) and (4) are thus a standing offer by Spain to arbitrate disputes under the ICSID Convention, which NextEra validly accepted.  *See* Bermann Decl. ¶¶ 37-38.

Article 26(8) of the ECT requires Spain to honor the Award.  It provides that "[e]ach Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards."

---

[4]    Spain's consent was subject to one explicit reservation contained in the ECT:  it did not consent to ICSID arbitration of disputes that had been previously submitted to its own courts, or to arbitration under a "previously agreed dispute settlement procedure."  ECT arts. 26(2)(a)-(b), (3)(b) & Annex ID.  This reservation is not applicable because NextEra never instituted proceedings in another forum prior to seeking arbitration under the ICSID Convention.

2.    The ICSID Convention

Each of Spain, the Netherlands, and the United States are party to the ICSID Convention. Created in 1965 under the auspices of the World Bank, the ICSID Convention is a multilateral treaty offering a framework for countries and private investors to arbitrate their disputes before an independent arbitral tribunal.[5]  Under Article 25 of the ICSID Convention, any dispute arising from an investment may be arbitrated before an ICSID tribunal, provided that both the host state and the investor give their consent (and provided that both the host state and the investor's home state are ICSID Contracting States).  *See* ICSID Convention art. 25 (Nelson Decl. Ex. 2).  As Professor Bermann explains, "consent" to ICSID Convention arbitration can "be expressed in a variety of ways . . . , including . . . through a treaty in which a Contracting State agrees, in advance, that it will be subject to ICSID Convention arbitration of future disputes with investors of a given nationality or nationalities (provided, of course, that the investor is a national of a Contracting State)."  Bermann Decl. ¶ 23.  The ECT is such a treaty.  The ICSID Convention stipulates that consent, once given, is irrevocable: "When the parties have given their consent, no party may withdraw its consent unilaterally." ICSID Convention art. 25(1).

The ICSID Convention provides (in Article 53) that an award rendered by an ICSID arbitral tribunal is "binding."  *Id.*, art. 53(1).  Article 54 of the ICSID Convention further provides that each ICSID Member state shall enforce an ICSID award "as if it were a final judgment of a court in that State."  *Id.*, art. 54(1).  Article 54 has been implemented in the United States through the Convention on the Settlement of Investment Disputes Act of 1966, under which ICSID awards

---

[5]    *See Mobil Cerro Negro, Ltd. v. Bolivarian Rep. of Venez*, 863 F.3d 96, 100 (2d Cir. 2017) (the ICSID Convention is "a multilateral treaty aimed at encouraging and facilitating private investment in developing countries" by minimizing risk of expropriation and other measures that could "impair the rights or assets of foreign investors") (citation omitted).

"shall be enforced and shall be given the same full faith and credit as if the award were a final judgement of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a).  The only way to challenge an ICSID award is to utilize the remedies within the ICSID Convention, *i.e.*, by means of an application for annulment under Article 52 of the ICSID Convention.  ICSID awards cannot be challenged outside of that system, as Spain now seeks to do before this Court.

## D.    **NextEra Commences an ICSID Convention Arbitration Against Spain**

On May 12, 2014, NextEra initiated an ICSID Convention arbitration against Spain by filing a Request for Arbitration, claiming that Spain's regulatory revisions undercut its investments, violating, *inter alia*, Article 10(1) of the ECT (the right to "fair and equitable treatment").  In its Request, NextEra consented to ICSID Convention jurisdiction over all of its claims, thus consenting in writing (for purposes of Article 26(4) of the ECT) to ICSID Convention jurisdiction.

The ICSID Tribunal was constituted on January 23, 2015.  Liability Decision ¶ 10.[6]  The Tribunal received briefing and evidence from both NextEra and Spain, including submissions in which Spain objected to the jurisdiction of the ICSID Tribunal on numerous grounds.  *See id.* ¶¶ 15, 25, 32, 82, 183-85, 187-97, 213-27, 272-89.  The ICSID Tribunal also received submissions from the European Commission in support of Spain's jurisdiction objections.  *See id.* ¶¶ 60, 65.

The ICSID Tribunal conducted a London-based hearing on all relevant issues (jurisdiction, merits, and quantum) from December 12 to 19, 2016.  *Id.* ¶ 67.  Both parties were represented by counsel during the entire proceedings and fully participated in the hearing.  The ICSID Tribunal

---

[6]    The ICSID tribunal consisted of the Hon. L. Yves Fortier Q.C. of Canada (appointed by NextEra), Professor Laurence Boisson de Chazournes of the University of Geneva (appointed by Spain) and Professor Donald M. McRae (a Canadian/New Zealand national), as presiding arbitrator (appointed by the express agreement of Spain and NextEra).  Liability Decision ¶ 9.

also received numerous post-hearing submissions from the parties during 2017 and 2018, including Spain's jurisdictional objections. *Id.* ¶¶ 73-91.

E.    **The Tribunal's March 2019 Decision Finding Spain Liable for Breaching the ECT –
      and Dismissing Spain's Jurisdictional Objections and "Intra-EU" Arguments**

On March 12, 2019, the Tribunal issued its unanimous, 235-page Liability Decision. The Tribunal found that Spain had breached its obligation to provide NextEra fair and equitable treatment under Article 10(1) of the ECT, by failing to protect NextEra's "legitimate expectations" when it made its initial CSP investment. Liability Decision ¶ 682(ii).

The Liability Decision also adjudicated each of Spain's jurisdictional objections. Among these objections was Spain's claim that the Tribunal lacked jurisdiction to hear and adjudicate claims by NextEra because it was a national of an EU member state (the Netherlands). Specifically, Spain claimed that "the dispute resolution mechanism set forth in Article 26 of the ECT does not apply to controversies arising between an investor of an EU Member State and [another] EU Member State ('intra-EU')." Liability Decision ¶ 272. In this respect, Spain's "intra-EU" objection was supported by the European Commission. *Id.* ¶¶ 325-29. After carefully analyzing the objection, the Tribunal held that the ECT did not evince any intention "to exclude intra-EU investment operations from the jurisdiction of investment tribunals." *Id.* ¶ 342. In this and all other respects, the intra-EU objection was rejected. *See id.* ¶¶ 355-57.

The Tribunal held that NextEra was entitled to damages – calculated by reference to the capitalized costs of NextEra's two CSP projects – and a return equal to the weighted average cost of capital for the two projects plus a margin of 200 bps. *Id.* ¶ 682(iii). The Tribunal directed that the quantum experts recalculate damages according to such principles. *Id.* ¶ 682(iv).

**F.**    **The Tribunal's May 2019 Award of € 290.6 Million**

On May 31, 2019, the Tribunal issued its unanimous Award.  It directed Spain to pay € 290.6 million in damages, plus pre-judgment interest at 0.234%, compounded monthly from June 30, 2016.  Award ¶ 37(2),(3).  The Tribunal also ordered Spain to pay USD 132,368.86 to cover its share of the costs of the arbitration, along with USD 4,147,031.81 plus € 1,042,135.30 as part of NextEra's costs of the ICSID proceedings (including legal fees).  *Id.* ¶¶ 37(4)-(5).  It further awarded "post-judgment interest on the amounts owing under this Award from the date of the Award until date of payment at the rate of 0.234% compounded monthly."  *Id.* ¶ 37(6).

**G.**    **Spain's Annulment Application**

Under the ICSID Convention, ICSID awards are not subject to appeal.  ICSID Convention art. 53.  Pursuant to Article 52, a party may, however, seek to "annul" an award on limited enumerated grounds (e.g., manifest excess of power or departure from a fundamental rule of procedure).  *Id.*, art. 52.  Applications for annulment are heard before a three-member committee (known as an "*ad hoc* committee") appointed by the Chairman of the ICSID Administrative Council from ICSID's Panel of Arbitrators.  *Id*. art. 52(3).

On September 26, 2019, Spain applied to annul the Award pursuant to Article 52(1)(b) of the ICSID Convention.  On December 10, 2019, the Chairman of the ICSID Administrative Council appointed Professor Joongi Kim of the Republic of Korea, Professor Lawrence Boo of Singapore and Mr. Humberto Saenz Marinero of El Salvador to be the three members of the *ad hoc* annulment committee.  *See* Dec. 10, 2019 letter from Secretary-General of ICSID to the Parties (Nelson II Decl. Ex. 7).  All three appointees are from the ICSID Panel of Arbitrators.  On December 16, 2019, the committee members accepted their appointments.  *See* Dec. 16, 2019 letter from Secretary-General of ICSID to the Parties (Nelson II Decl. Ex. 8).

Under Article 52(5) of the ICSID Convention, the filing of an annulment application triggers a provisional stay of enforcement of the Award until the *ad hoc* committee rules on whether to stay enforcement pending a decision on the annulment application. *See* ICSID Convention art. 52(5). This provisional stay is automatic upon the request of the applicant and is purely temporary in nature. Under Article 52(5), once formed the *ad hoc* committee decides whether to continue the provisional stay of enforcement of an ICSID award.

As a consequence, enforcement of the Award is currently subject to a provisional stay. Now that the *ad hoc* committee has been formed, the burden lies upon Spain to persuade the committee that enforcement should be further stayed, pending the decision on its annulment application. NextEra will oppose any such application, as other award-holders have done in the past. Indeed, in the two ECT cases under the ICSID Convention where this has arisen in the past, both *ad hoc* committees have *rejected* Spain's efforts to stay enforcement of the award pending the conclusion of the annulment application. *See infra* n. 41.

## H.    The Current Action – NextEra's Petition to Confirm the ICSID Arbitration Award

Under Article 53 of the ICSID Convention, the Award was immediately binding on Spain as of the date of issue (May 31, 2019). NextEra commenced the present action on June 3, 2019, seeking recognition and enforcement of the Award. ECF No. 1. On August 1, 2019, Spain acknowledged that the Petition had been duly served. ECF No. 12.

## I.    Other ECT/"Solar" Award Enforcement Actions against Spain in U.S. Courts

Spain has faced numerous other arbitration claims by other investors in the renewables sector who allege that its actions have violated the ECT. Some of these arbitrations have been filed pursuant to the ICSID Convention (on the basis of Spain's consent to ICSID arbitration under Article 26(3) and (4) of the ECT). Other arbitrations were commenced against Spain before the

Arbitration Institute of the Stockholm Chamber of Commerce ("SCC").[7]  Many of these cases have

resulted in a final award of damages against Spain.  Consequently, at least seven cases are pending

before United States district courts in which an investor is seeking to enforce an arbitral award of

damages against Spain (rendered under either the ICSID Convention or the SCC rules).

In addition to the present case, the pending ICSID cases are (in order of filing):

- *Eiser Infrastructure Ltd. v. Kingdom of Spain*, No. 1:18-cv-1686-CKK (D.D.C. filed July 19, 2018) ("*Eiser* DDC Petition") (a petition under 22 U.S.C. § 1650a to confirm an ICSID Convention tribunal's award of €128 million in damages against Spain for breach of the ECT as regards a solar power investment).

- *Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*, No. 1:18-cv-1753-EGS (D.D.C. filed July 27, 2018) ("*Antin* DDC Petition") (a petition under 22 U.S.C. § 1650a to confirm an ICSID Convention tribunal's award of €112 million in damages against Spain for breach of the ECT as regards a solar power investment).

- *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, No. 1:18-cv-2254-JEB (D.D.C. filed Sept. 28, 2018) ("*Masdar* DDC Petition") (a petition under 22 U.S.C. § 1650a to confirm an ICSID Convention tribunal's award of €64.5 million in damages against Spain for breach of the ECT as regards a solar power investment).

- *9REN Holding S.À.R.L v. Kingdom of Spain*, No. 1:19-cv-01871-TSC (D.D.C. filed June 25, 2019) ("*9REN* DDC Petition") (a petition under 22 U.S.C. § 1650a to confirm an ICSID Convention tribunal's award of €41.8 million in damages against Spain for breach of the ECT as regards a solar power investment).

The SCC cases (which are not subject to the special enforcement regime contained within

the ICSID Convention) are:

- *Novenergia II – Energy & Environment (SCA) v. Kingdom of Spain*, No. 1:18-cv-1148-TSC, (D.D.C. filed May 16, 2018) ("*Novenergia* DDC Petition") (a petition under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 3, 21 U.S.T.2517 (the "New York Convention") to confirm an SCC tribunal's award of €53.3 million in damages plus interest against Spain for breach of the ECT as regards a solar power investment).

- *Foresight Luxembourg S.A.R.L. v. Kingdom of Spain* No. 1:19-cv-03171-ER (S.D.N.Y., originally commenced December 4, 2018) ("*Foresight* SDNY Petition") (a petition under

---

[7]    Article 26(4) of the ECT allows investors to choose arbitration under the ICSID Convention or certain other alternative arbitral systems, including the SCC.  *See* ECT art. 26(4).

the New York Convention to confirm an SCC tribunal's award of €45 million in damages against Spain for breach of the ECT as regards a solar power investment).[8]

## I.
## SUBJECT MATTER JURISDICTION EXISTS BECAUSE SPAIN, HAVING RATIFIED THE ICSID CONVENTION, HAS WAIVED ANY OBJECTION TO A SUIT TO ENFORCE THE AWARD IN THE UNITED STATES COURTS

Spain's objection to subject matter jurisdiction is premised on its claim that, as a "foreign state" as defined by the FSIA, it is "immune" from a suit to enforce the award.  Spain MTD at 9. 29-30.  Under Section 1604 of the FSIA, states enjoy immunity from suit "unless a specified exception applies."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *accord Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 493-94 (1983); *see also* 28 U.S.C. § 1604.  But once an exception is found to apply, subject matter jurisdiction (as well as personal jurisdiction) exists.[9]

Here, two independent exceptions in the FSIA apply:  the "waiver exception" and the "arbitration exception."  The "waiver exception" in Section 1605a(1) of the FSIA provides that a foreign state is not immune from jurisdiction in any case "in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  For a waiver to arise, there is no prescribed form of words; a foreign state need only "indicat[e] its amenability to suit" in a United States court.  *Princz v. Fed. Rep. of Ger.*, 26 F.3d 1166, 1174 (D.C. Cir. 1994).

One basic manner in which a state may indicate amenability to suit in the United States is to enter a treaty that provides for enforcement of arbitral awards in the courts of the United States. Indeed, the D.C. Circuit has explicitly embraced as "correct[]" the view that, when a foreign state

---

[8]  As noted below, Spain has requested that the *Foresight* SDNY Petition be transferred to *this Court* pursuant to 28 U.S.C. § 1404.  (*See infra* at 35.)

[9]  "[U]nder the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction." *TMR Energy*, 411 F.3d at 299 (citation omitted).  Here, Spain has acknowledged sufficiency of service (*see* ECF No. 12), thus satisfying this element of personal jurisdiction.

signs a multilateral award enforcement convention obligating member states to "recognize arbitral awards as binding and enforce them" in the same manner as "domestic judgments," "'the signatory state must have contemplated enforcement actions in other signatory states.'" *Creighton*, 181 F.3d at 122 (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 578 (2d Cir. 1993)); *see also Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 192 (D.D.C. 2018) (waiver exception applied because the defendant, Ukraine, had "agreed to arbitrate" in a state that was signatory to the 1958 New York Convention on Recognition and Enforcement of Foreign Arbitral awards, which explicitly provided for "enforcement actions in signatory states" such as the United States), *aff'd* 771 F. App'x. 9 (D.C. Cir. 2019), *petition for cert docketed*, No. 19-606 (U.S. Nov. 12, 2019)[10]; *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016) (substantially similar holding).[11]

---

[10]   *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019), *petition for cert. docketed*, No. 19-606 (U.S. Nov. 12, 2019) remains non-precedential, but draws its essence from the prior (published) opinion in *Creighton*. *See id*. at 10 ("In *Creighton*, we concluded that a sovereign, by signing the New York Convention, waives its immunity from arbitration-enforcement actions in other signatory states. Because Ukraine and the United States have both signed the Convention, Ukraine falls within the waiver exception as *Creighton* construed it.")

[11]   Although Spain cites the statement in *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990) that "provisions allegedly waiving sovereign immunity are narrowly construed," that case did not involve a multilateral award enforcement treaty. Rather, *Foremost-McKesson* was an expropriation lawsuit in the courts of this District. The issue presented in the 1990 D.C. Circuit decision was whether Iran's initial failure to plead sovereign immunity constituted a waiver of that defense. *Id.* at 443. Spain also cites *World Wide Minerals, Ltd. v. Rep. of Kazakhstan*, 296 F.3d 1154, but again that case did not involve the effect of an arbitration treaty. Rather, the waivers being construed in that case appeared in two contracts and the issue was whether their scope reached the RICO lawsuit before the district court in that case. *Id.* at 1162-63. Thus, neither *World Wide Minerals* nor *Foremost-McKesson* have any bearing on the matters covered by the D.C. Circuit in *Creighton* and *Tatneft*.

Here, Spain did exactly that when it signed the ICSID Convention: it acceded to a multilateral treaty under which ICSID tribunal awards would be "final and binding" upon it, and also agreed to "abide by and comply with" any award rendered against it. ICSID Convention, art. 53(1); *see also* Bermann Decl. ¶¶ 26-27. Spain further agreed that any ICSID award would be subject to enforcement in each Member State under Article 54, which states:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

ICSID Convention art. 54(1); *see also* Bermann Decl. ¶¶ 26, 28.

Under *Creighton*, Spain's submission to the ICSID Convention thus effectuates a full waiver of immunity from the enforcement jurisdiction of the United States courts. Several courts have held that accession to the Convention operates to waive immunity over actions to recognize and enforce an ICSID award. *Blue Ridge Invs. L.L.C. v. Rep. of Argentina*, 735 F.3d 72, 84 (2d. Cir. 2013) ("[I]n light of the enforcement mechanism provided by the ICSID Convention," signatory states "'must have contemplated enforcement actions in other [Contracting] [S]tates,' including the United States") (second and third alterations in original, citation omitted); *see also Cont'l Cas. Co. v. Argentine Rep.*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) ("[C]ourts recognized that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity [with respect to the enforcement of any arbitration award entered pursuant to the ICSID Convention].").

Spain contends that the waiver exception cannot be considered until this Court has first decided whether a valid arbitration agreement exists. *See* Spain MTD at 34-36. Yet, nothing in the waiver exception (or indeed the ICSID Convention or its implementing legislation) supports such a claim. In *Tatneft*, Judge Kollar-Kotelly found the waiver exception satisfied on the basis

of Ukraine having signed the New York Convention *without* allowing Ukraine to relitigate the issue of arbitrability, which would improperly have allowed Ukraine to "get 'two bites at the apple of the merits of its dispute.'"  *Tatneft*, 301 F. Supp. 3d at 190.  This decision was affirmed by the D.C. Circuit.  *See Tatneft v. Ukraine,* 771 F. App'x 9, 9-10 (D.C. Cir. 2019), *petition for cert. docketed*, No. 19-606 (U.S. Nov. 12, 2019). For the same reasons, Spain's membership in the ICSID Convention suffices to create a waiver and establishes subject matter jurisdiction.

## II.
## SUBJECT MATTER JURISDICTION ALSO EXISTS BECAUSE THIS ACTION FALLS WITHIN THE FSIA ARBITRATION EXCEPTION

**A.    There Is No Room for Dispute that an ICSID Award Satisfies the Relevant Criteria Under FSIA Section 1605(a)(6)**

Separately and independently, the FSIA's "arbitration exception" – lifting immunity from suit in actions "brought . . . to confirm an award made pursuant to. . . an agreement to arbitrate" – applies.  28 U.S.C. § 1605(a)(6).  Fully stated, the arbitration exception denies immunity in a case:

> in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or 28 U.S.C. § 1607, or (D) [28 U.S.C. § 1605(a)(1)] is otherwise applicable.

28 U.S.C. § 1605(a)(6).  Thus, the award must arise from an "agreement to arbitrate" meeting the required criteria, *and* one of the co-requisites in sub-paragraphs (A) through (D) must be met.

As a threshold matter, Spain does not dispute either that there is an arbitration "award," nor that the co-requisite in Section 1605(a)(6)(B) (that the award be covered by an enforcement treaty)

is met here.  The Award is governed by the ICSID Convention, which "specifically calls for the recognition and enforcement of its awards," and "is in force for the United States." *Tidewater Inv.,* 2018 WL 6605633, at *6; *see also Blue Ridge Invs.,* 735 F.3d at 85 ("[E]very court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do."); *Micula v. Gov't. of Romania*, No. 17-02332 (APM), 2019 WL 4305533, at *8 (D.D.C. Sept. 11, 2019) ("Courts consistently have held that the FSIA's arbitration exception confers subject matter jurisdiction over petitions to enforce ICSID awards") *appeal docketed*, No. 19-7127 (D.C. Cir. Oct. 11, 2019); *accord Cont'l Cas.*, 893 F. Supp. 2d at 751.  The only issue raised by Spain is whether the award is made under an "agreement to arbitrate." Such an agreement plainly does exist, and the arbitration exception is easily satisfied.

**B.**    **An Arbitration Agreement Indisputably Exists Between Spain and NextEra**

1.    The Arbitration Exception Requires Only the Existence of An Award and an Arbitration Agreement – It Does Not Allow Relitigation of an ICSID Award

According to Spain, subject-matter jurisdiction is lacking because, it claims, EU law prohibits an intra-EU investment dispute from being arbitrated in any forum other than the courts of the European Union.  Spain MTD at 32-33.  This argument, however, fundamentally misreads the "arbitration exception" in 28 U.S.C. 1605(a)(6).  This provision requires that the award be "made pursuant to" "an agreement" having certain statutory attributes, namely:

•    That the agreement be "made by the foreign state with or for the benefit of a private party";

•    That the agreement involve submission to arbitration differences "with respect to a defined legal relationship, whether contractual or not"; and

•    That the subject matter be "capable of settlement by arbitration under the laws of the United States."  *Id*.

There is no room for debate that an arbitration agreement exists.  It arises from Spain's explicit adherence to Article 26 of the ECT, committing it to submit differences under the ECT to

18

binding ICSID Convention arbitration. *See* ECT art. 26(3)(a) ("[E]ach Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article."); *id.*, art. 26(4)(a)(i) (submission to ICSID Convention Arbitration); *see also* Bermann Decl. ¶¶ 35-41; *supra* at 7. This agreement was made for the benefit of all nationals of other ECT Contracting States, and required only that the investor confirm in writing its acceptance of ICSID Convention arbitration (as NextEra did on May 12, 2014). *See* ECT, art. 26(5)(a); ICSID Convention, art. 25(1). *See also* Bermann Decl. ¶¶ 39-40; *supra* at 7-8. From that point onwards, the consent to ICSID jurisdiction was mutual and irrevocable. *See* ICSID Convention, art. 25(1); Bermann Decl. ¶¶ 40-41.[12]

In raising its intra-EU arguments, Spain does not, and indeed cannot, contest these facts. Instead, Spain claims that its agreement to arbitrate ECT claims pursuant to the ICSID Convention (which undeniably exists – in the text of the ECT itself) was nevertheless invalid as a matter of EU law because it was allegedly inconsistent with the Treaty on the Functioning of the European Union ("TFEU"). But the FSIA arbitration exception does not countenance legal challenges to the *validity* of the arbitration agreement from which an award arose, much less an ICSID Convention award that "creat[es] a right arising out of a treaty of the United States" and which "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

---

[12] Plainly, an investor-state claim is a matter capable of settlement by arbitration, as shown by the terms of the ECT and ICSID Convention (and, indeed, the very fact they have been adopted), and the many cases confirming investment treaty awards. *See, e.g.*, *BG Grp., PLC v. Rep. of Argentina*, 572 U.S. 25, 44-45 (2014); *Chevron Corp v. Rep. of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015); *Stati*, 199 F. Supp. at 188-89 (enforcing award under ECT); *Tidewater* 2018 WL 6605633, at *6; *see also* Gary B. Born, *International Commercial Arbitration* at 947 ("the use of the arbitral process in diverse fields demonstrates, the arbitral process is entirely 'capable' of resolving a wide range of international disputes").

This is particularly so given that, under the ICSID Convention, challenges to the arbitral tribunal's jurisdiction (including objections to the validity of the arbitration agreement) are to be decided by the arbitrators.  *See* ICSID Convention art. 41(1) ("The Tribunal shall be the judge of its own competence.").  Here, each of Spain's arguments (including the "intra-EU" point, the *Achmea* argument and its reliance upon the 2019 declarations, *see infra* at 37) were fully litigated as part of Spain's jurisdictional objections, and fully adjudicated. Liability Decision ¶¶ 332-33, 348-49.  Because the ICSID Tribunal's jurisdictional decision and findings are themselves part of an ICSID award that is entitled to full faith and credit pursuant to the Convention on the Settlement of Investment Disputes Act, they have *res judicata* effect and cannot be relitigated in this proceeding.  *See Tidewater Inv.*, 2018 WL 6605633, at *6 n.4 ("[E]ven as to questions of ICSID's jurisdiction, provided that the question has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter here."); *Mobil Cerro Negro*, 863 F.3d at 102 ("Member states' courts are . . . not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award."); *see also* 22 U.S.C. § 1650a(a).[13]

      2.      Non-ICSID Case Law Further Shows that the Arbitration Exception Is Satisfied – and that the FSIA Does Not Allow Awards to be Subject to Collateral Attack

Decisions involving non-ICSID awards illustrate that a party cannot use the arbitration exception to relitigate the substance of the award.  In *Chevron*, there was a petition to confirm an award rendered under the UNCITRAL rules pursuant to a Bilateral Investment Treaty ("BIT") between the United States and Ecuador.  795 F.3d at 203.  As such, the award arose for enforcement

---

[13]  Spain's position also would make a mockery of the ICSID Convention and implementing legislation, which allows only "[a] perfunctory role . . . for federal district courts" in enforcing ICSID arbitration awards, *Tidewater* 2018 WL 6605633, at *6, and precludes "substantive challenges to the award."  *Mobil Cerro Negro*, 863 F.3d at 100, 118; *see also Micula*, 2019 WL 4305533, at *7; *TECO Guatemala Holdings, LLC v. Rep. of Guatemala*, No. 17-102(RDM) 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018).

under the New York Convention (not the ICSID Convention).  In addressing whether the FSIA's arbitration exception was met in such cases, the D.C. Circuit held that the plaintiff meets "its initial burden" of establishing an "agreement to arbitrate" simply ""by producing the [agreement], [the] notice of arbitration . . . and the tribunal's arbitration decision." *Id.* at 204.  Rejecting Ecuador's claim that the FSIA allowed *de novo* review of arbitrability, it concluded:

> The BIT includes a standing offer to all potential U.S. investors to arbitrate investment disputes, which Chevron accepted in the manner required by the treaty. The FSIA therefore allows federal courts to exercise jurisdiction over Ecuador in order to consider an action to confirm or enforce the award.

*Id.* at 206.[14]  Here, NextEra has amply demonstrated an agreement to arbitrate for purposes of the arbitration exception.  *See* ECT (Nelson Decl. Ex. 3); Award (Nelson Decl. Ex. 1).

3.     The Facts Moreover Show that Spain Agreed to Delegate
        Questions of Arbitrability to the ICSID Convention Tribunal

Even if the unique status of an ICSID Convention award did not preclude further review of the agreement to arbitrate, the record also shows that, in their arbitration agreement, the parties delegated the issue of the agreement's validity to the arbitrators.  Their jurisdictional decisions themselves thus are the result of an "agreement to arbitrate," and within the arbitration exception.

It is well-established that parties may delegate questions of arbitrability to the arbitrators. *See Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524 (2019) ("[P]arties may agree

---

[14]   Although *Chevron* considered a challenge to whether the investor held an "investment" protected by the US-Ecuador BIT, it made clear that this issue was *only* "considered as part of review under the New York Convention," *Chevron*, 795 F. 3d at 206, which, unlike the ICSID Convention, allows for non-recognition of awards that "'deal[] with a difference not contemplated by or not falling within the terms of the submission to arbitration.'"  *Chevron*, 795 F.3d at 207 (quoting New York Convention art. V(1)(c)).  The D.C. Circuit also was emphatic that its limited review of this jurisdictional issue was *not* part of the analysis required by the FSIA arbitration exception.  *See Chevron*, 795 F.3d at 205 ("Ecuador conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention.").  Importantly, the ICSID Convention *does not* permit a national court to inquire into whether the ICSID tribunal had jurisdiction.  *See* Bermann Decl. ¶¶ 28-31.

to have an arbitrator decide . . . . whether the parties have agreed to arbitrate. . . .") (citations omitted); *accord Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  This principle applies to investor-state arbitration.  *BG Group.,* 572 U.S. at 44-45 (arbitral tribunal had power to determine whether pre-conditions to arbitration were satisfied); *Chevron*, 795 F.3d at 208 (US-Ecuador BIT delegated questions of "arbitrability" to the arbitrators); *Stati*, 199 F. Supp. 3d at 188-89 (same conclusion with respect to arbitration under ECT).[15]  Here, the signatories to the ECT, in consenting to investor-state arbitration under the ICSID Convention (providing for arbitrators to determine matters of "competence" and jurisdiction), unmistakably authorized the ICSID arbitrators to rule on their own jurisdiction.  *See* ECT art. 26(4)(a).  Their conclusions on the validity of the arbitration agreement are thus binding on Spain, and cannot be revisited under the guise of FSIA review:  to do so would improperly allow it "two bites at the apple of the merits of its dispute," which contradicts "the purpose and role of the FSIA."  *Chevron Corp. v. Rep. of Ecuador*, 949 F. Supp. 2d 57, 63 (D.D.C. 2013) *aff'd* 795 F.3d 200 (D.C. Cir. 2015).

**C.    Even if the Substance of Spain's ECT and "*Achmea*" Arguments Could be Reached in this Proceeding, Spain's Arguments Still Fail**

      1.    Under International Law, Which Governs the ECT, Spain's Consent To Arbitrate Cannot be Invalidated by Internal European Union Law

Even if Spain's collateral challenge to ICSID jurisdiction could be entertained, it would still fail.  As noted above, the record evidences an "agreement to arbitrate" between Spain and

---

[15] *See Gold Reserve Inc. v. Bolivarian Rep. of Venezuela*, 146 F. Supp. 3d 112, 121-22 (D.D.C. 2015) (holding that a treaty submitting disputes to arbitration under "ICSID Additional Facility" rules, which provide that "[t]he Tribunal shall have the power to rule on its competence," showed a clear intent to delegate questions of arbitrability); *accord Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela,* 244 F. Supp. 3d 100, 112 (D.D.C. 2017), *aff'd*, 760 F. App'x 1 (D.C.Cir. 2019). Notably, the ICSID Additional Facility is a separate arbitral body operating outside the ICSID Convention, meaning that its awards arise for enforcement under the New York Convention.  *See Gold Reserve*, 146 F. Supp 3d at 118-19.

NextEra arising out of Article 26 of the ECT and Article 25 of the ICSID Convention.  (*See supra* at 7-8.)  Spain does not contest that, on their face, these facts and treaty provisions evidence an arbitration agreement.  But Spain and Professor Hindelang contend that this agreement is invalid because Spain could never have validly agreed to arbitrate disputes with NextEra, a national of another EU member state.  According to their theory, there can be no valid agreement to arbitrate purely "intra-EU" disputes because (in their view) this would interfere with the jurisdiction of the European courts.  *See* Spain MTD at 31-33; Hindelang Decl. ¶¶ 47-48.  In effect, Spain seeks to retroactively annul its prior explicit agreement to arbitrate (as contained in the ECT).

At its core, Spain's argument hinges on the proposition that its commitment to arbitrate, as enshrined in the ECT, is subject to the dictates of EU law, such that EU law can override the clear wording of the ECT itself and/or trump international law.[16]  This contention is fundamentally flawed.  The interpretation and meaning of the ECT does *not* derive from EU law, but instead from the terms of the ECT itself, as interpreted *according to international law*.  This is made explicit by Article 26(6) of the ECT, stating that a claim for breach of the investment protections in Part III of the Treaty shall be governed by:  (1) the text of the ECT itself and (2) "applicable rules and principles of international law."  ECT art. 26(6); *see also* Bermann Decl. ¶ 78.[17]

Moreover – and further distancing the ECT from the provisions of EU law – the ECT contains an express conflicts rule (in Article 16) stating that the ECT takes primacy over any

---

[16]  Hindelang Decl. ¶¶ 49-51; Spain MTD at 31.  The EU law principles invoked by Spain (the so-called "autonomy" principle, and the rule of "primacy" of EU law over inconsistent international law obligations), are doctrines created by the European courts that solely apply within the internal legal order of EU Member States.  Bermann Decl. ¶¶ 131-32, 136-38.  They are not part of international law.  *Id.*

[17]  *See* Bermann Decl. ¶ 83 (*citing Vattenfall AB v. Germany*, No. ARB/12/12, Decision on the *Achmea* Issue ¶ 121 (ICSID 2018)), Liability Decision ¶ 350.  Spain's argument that the ECT is subject to EU treaty law (Spain MTD at 31) is directly contrary to the terms of Article 26(6).

contrary treaties that concern the same subject matter if the ECT's provisions are more favorable to the investor (which they plainly are in this case).[18]

The Vienna Convention on the Law of Treaties art. 27, May 23, 1969, 1155 U.N.T.S. 331 (hereinafter "VCLT")[19] provides that treaties must be interpreted in accordance with their ordinary meaning, in good faith and in light of their object and purpose.  VCLT art. 31(1).  Yet Spain's position seeks to nullify the explicit terms of Article 26 of the ECT in which it – along with "each Contracting Party" – unconditionally submitted to investor-state arbitration.  ECT art. 26(3)(a). Neither Article 26 of the ECT nor any other portion of that treaty contemplates a carve-out or "disconnection clause" placing intra-EU disputes in a different category.  Bermann Decl. ¶¶ 54-67. For Spain to seek to imply one retroactively is not just contrary to the ECT's text, it also violates the principle that all treaties must be interpreted and performed "in good faith" in accordance with their express terms.  VCLT, art. 31(1); Bermann Decl. ¶¶ 59-60.[20]

---

[18]  Thus, even if Spain were correct to assert that European treaties (such as the TFEU) overlap with the ECT in terms of investment protection and dispute resolution (an argument that the Tribunal rejected, *see* Liability Decision ¶ 352), Spain's argument would still fail.  *See* Bermann Decl. ¶¶ 88-89.

[19]  Spain and the Netherlands have acceded to the VCLT.  Moreover, Articles 31 and 32 of the VCLT have been recognized as codifying customary international law on treaty interpretation. *See Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 308 (2d Cir. 2000); *see also United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) (The VCLT establishes "[b]asic principles of treaty interpretation"); Secretary of State Rogers' Report to the President, Oct. 18, 1971, 65 Dep't St. Bull 684, 685 (1971) (explaining that although the United States has not formally ratified the VCLT, it is "generally recognized as the authoritative guide to current treaty law and practice").

[20]  The Tribunal also observed that the EU Member States never agreed to modify the ECT as between themselves, nor did they ever undertake the formal process required for a modification to be effective under Article 41 of the VCLT.  *See* Liability Decision ¶ 352.  In any event, such a derogation would not be consistent with the effective execution of the object and purpose of the ECT, and therefore would be inoperative for that reason as well under international law.

Furthermore, Spain's argument, in seeking to utilize its own internal laws in order to nullify a treaty obligation, also collides with the fundamental rule of international law, including as practiced by the United States, that *"[a] party may not invoke the provisions of its internal law as justification for its failure to perform a treaty."* VCLT, art. 27; *see also* Applicability of the Obligation to Arbitrate under Section 21 of the United Nations Headquarters Agreement of 26 June 1947, Advisory Opinion, I.C.J. Rep., 1988 at 12, 34 ¶ 57 (holding that treaty provision requiring arbitration could not be overridden by domestic law; upholding "the fundamental principle of international law that international law prevails over domestic law"); *Greco-Bulgarian "Communities*," Advisory Opinion, 1930, P.C.I.J., Series B, No. 17, p. 32. ("the provisions of municipal law cannot prevail over those of the treaty"); *S.S. "Wimbledon*," 1923, P.C.I.J., Series A, No. 1, p. 15, at 30 (under international law, a country's internal law "could not prevail" over a binding treaty obligation). Bermann Decl. ¶ 87. Indeed, its lengthy citation to cases involving "deference to a foreign sovereign's interpretation of its own laws" (Spain MTD at 31-32, citing, *inter alia*, *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018)) proves too much: it shows that Spain is trying to use its own internal law, including the internal legal order established by EU law, to nullify the express terms of the ECT and ICSID Convention, a result that is precluded by article 27 of the VLCT.

The Tribunal in this case held that EU law did not override the terms of the ECT and ICSID Convention, and thus did not strip the ICSID tribunal of jurisdiction. *See* Liability Decision ¶ 350. It concluded: "'the ECT's genesis generates a presumption that no contradiction exists between the ECT and EU law,' and as a consequence, the Tribunal cannot retroactively construe Spain's offer to arbitrate under the ECT as invalid." *See id.* ¶ 355 (citation omitted). This conclusion accords with every other ECT decision to interpret the treaty in an "intra-EU" setting. In total, at least 20

independent tribunals have unanimously concluded that the ECT applies on an intra-EU basis. *None* have accepted the position now advanced by Spain. *See* Bermann Decl. ¶ 65; *see e.g. Cube Infrastructure Fund SICAV v. Spain*, ARB/15/20, Decision on Jurisdiction, Liability & Partial Decision on Quantum ¶ 130 (ICSID 2019) ("Within the system of international law, EU law does not have supremacy, and has no hierarchical priority over the laws of non-Member States, or over rules of international law, including the ECT.") (Bermann Decl. Ex. 18). It is telling that Professor Hindelang never addresses a single one of the numerous ICSID arbitral decisions (or, indeed, numerous non-ICSID arbitral decisions) *rejecting* the intra-EU argument in an ECT setting.[21]

>    2.    In Any Event, EU law Does Not Bar Arbitration
>           of Intra-EU Claims under the ECT

Even if EU law applied to determine an ECT tribunal's jurisdiction (which it does not), Spain has still failed to show that EU law bars arbitration of intra-EU claim under the ECT. No court has ever made such a finding. Instead, the centerpiece of Spain's "intra-EU" argument is its attempt to expand a 2018 decision of the CJEU in *Achmea* to reach a conclusion that the judgment does not support. *See* Hindelang Decl. Ex. 46. According to Spain, *Achmea* stands for the general rule that arbitration between EU Member States and EU investors is prohibited. Spain MTD at 31; Hindelang Decl. ¶¶ 43-55. Spain's reliance upon *Achmea*, however, is wholly unavailing.

---

[21]    *See* Bermann Decl. ¶¶ 65 & n.47; 66 & n. 49 (collecting awards); *see, e.g.*, *Vattenfall* ¶ 207 ("[T]he Tribunal finds that a Contracting Party to the ECT in Article 26 ECT includes EU Member States and non-EU Member States without distinction.") (Bermann Decl. Ex. 16); *Blusun S.A., v. Italy*, No. ARB/14/3, Award ¶ 291 (ICSID 2016) ("[T]he Tribunal holds that the *inter se* obligations in the ECT have not subsequently been modified or superseded by later European law.") (Bermann Decl. Ex. 13); *Rockhopper Italia S.p.A. v. Italy*, No. ARB/17/14, Decision on the Intra-EU Jurisdictional Objection (ICSID 2019) ¶¶ 172-75 (same) (Bermann Decl. Ex. 14); *Greentech Energy Sys. A/S v. Italy*, No. 2015/095, Final Award ¶ 396 (SCC 2018) ("This Tribunal agrees with the other arbitral tribunals that have held ECT jurisdiction satisfied by the terms of Article 26 notwithstanding objections based on the character of a dispute as between an EU investment and an EU host state.") (Bermann Decl. Ex. 24).

In *Achmea*, the CJEU addressed whether to enforce a non-ICSID arbitration award that had been rendered under the Netherlands-Slovakia BIT – a treaty entered into by just two states, prior to Slovakia's accession to the EU.  That BIT entitled Dutch investors to bring international arbitration against Slovakia for alleged breach of their treaty rights.  *Achmea* ¶¶ 3-4; Netherlands-Slovakia BIT, art. 8 (Bermann Decl. Ex. 30.)  The CJEU found that an arbitral tribunal under that BIT "may be called on to interpret or indeed to apply EU law," *Achmea* ¶ 42, but lacked the ability to refer questions of EU law to the CEJU for interpretation.  *Id.* ¶ 49.   Relying on two provisions of EU law,[22] the CJEU held that state of affairs was incompatible with EU law.  *Achmea* ¶¶ 56-60.

The CJEU decision did not invalidate the BIT itself (nor could it do so), but it rendered the award in that case inconsistent with EU law, which in turn caused the German courts (as the seat of the arbitration, in that non-ICSID case) to set the *Achmea* award aside.[23]

However much it tries to stretch the *Achmea* judgment, Spain cannot make that ruling cover a treaty (the ECT) which the CJEU did not address, or invalidate awards rendered under a treaty (the ICSID Convention) that did not apply in the *Achmea* case.  First, *Achmea* was expressly confined to an intra-EU BIT, not the ECT.  The ECT is distinct because the EU itself is a party to the ECT.  In fact, the CJEU expressly distinguished the Netherland-Slovakia BIT from investment treaties "concluded  . . .  by the EU," *Achmea* ¶ 58, which, the Court observed, were "not in

---

[22]   The provisions of EU law at issue in *Achmea* were Articles 267 and 344 of the TFEU.  Article 267 enables European courts to refer questions of EU law to the CJEU for preliminary rulings.  Article 344 provides that EU "Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties [i.e. the constitutional treaties of the European Union] to any method of settlement other than those provided for herein."

[23]   The arbitration award in *Achmea* was not governed by the ICSID Convention. *Achmea* ¶ 51.  Consequently, its jurisdictional holdings were subject to review in the courts of the place in which the arbitration was based (Frankfurt, Germany), and because Germany is an EU Member State, its courts were bound by the CJEU's decision in *Achmea*.  Bermann Decl. ¶¶ 100-02.

principle incompatible with EU law." *Id.* ¶ 57.  This alone negates any suggestion that the ECT's arbitration regime is incompatible with the EU legal order.  *See* Bermann Decl. ¶ 115.[24]

Second, as noted above, the jurisdiction of an ICSID tribunal to hear disputes under the ECT, is governed by the ECT itself and the ICSID Convention.  As the Tribunal in this case concluded, the views of the CJEU were never relevant to the interpretation and validity of Spain's submission to arbitration as contained in Article 26 of the ECT.  *See* Bermann Decl. ¶¶ 112-23; Award ¶ 354 (finding that "the internal constitutional laws of the EU and its constant changes and interpretations by the CJEU, as the Member States seek to minimize their mutual obligations in another context, are of no relevance for the present Tribunal.").

Third – unlike in *Achmea* – this case is subject to the ICSID Convention, a treaty that provides a free-standing and legally binding framework for dispute resolution.  Post-*Achmea*, ICSID tribunals have confirmed that, even in cases involving intra-EU BITs, the *Achmea* ruling does not detract from the jurisdiction of ICSID tribunals.[25]

Fourth, the law applicable to disputes under the ECT also differs from the applicable law prescribed by the BIT at issue in *Achmea* – with the result that the ECT does not implicate the policy concerns expressed by the CJEU in that case.  *See* ECT art. 26(6) (prescribing that the issues in dispute shall be resolved in accordance with the ECT and applicable rules and principles of

---

[24]  The CJEU stressed this distinction in its subsequent decision on the validity of the Canada-EU Trade Agreement ("CETA").  The CJEU noted that CETA's dispute resolution mechanism "stands outside the EU judicial system" (as does the ECT's), but held that this fact alone "does not mean, in itself, that that mechanism adversely affects the autonomy of the EU legal order." Opinion 1/17(CETA), EU:C:2019:341 ¶ 115 (ECJ Apr. 30, 2019); Bermann Decl. ¶¶ 117-21.

[25]  *See, e.g.*, *UP & C.D Holding Internationale v. Hungary*, No. ARB/13/35, Award ¶¶ 252-66 (ICSID 2018).

international law).[26]  Thus, although EU law may form part of the overall factual background to any dispute involving an EU member state under the ECT, an ICSID/ECT tribunal ultimately only adjudicates issues of treaty law – not EU law, so it could not be said to threaten the autonomy of the EU legal order, or the principle of mutual trust, which underpinned the CJEU's concerns in *Achmea*.  *See* Bermann Decl. ¶¶ 112-21.

Finally – even if Spain could establish that arbitration of intra-EU disputes under the ECT was incompatible with EU law, the CJEU itself has acknowledged that any incompatibility of an international agreement with EU law is an internal matter within the European Union.  It does not invalidate that agreement on an international plane.  *See* Bermann Decl. ¶¶ 95, 123.

The Tribunal correctly found that the *Achmea* decision posed no impediment to jurisdiction in this case.  Liability Decision ¶¶ 348-57.  And every single other arbitral tribunal to consider *Achmea* has likewise held that the CJEU's decision has no impact over an ICSID tribunal's jurisdiction to hear and determine disputes under the ECT.[27]  A similar observation was made by

---

[26]  This contrasts with the Netherlands-Slovakia BIT, directing the tribunal to apply, *inter alia*, "the law in force of the Contracting Party concerned" and "other relevant Agreements between the Contracting Parties," thus making EU law part of the law applicable to the resolution of disputes under that BIT.  Netherlands-Slovakia BIT art. 8(6); Bermann Decl. ¶ 79.

[27]  *See* Bermann Decl. ¶ 116; *see also, e.g.*, *Rockhopper* ¶ 172 (*Achmea* is "of no application as such to the ECT.") (Bermann Decl. Ex. 14); *Masdar Solar & Wind Cooperatief U.A. v. Spain*, No. ARB/14/1, Award ¶ 679 (ICSID 2018) ("[T]he *Achmea* Judgment does not take into consideration, and thus it cannot be applied to, multilateral treaties, such as the ECT, to which the EU itself is a party.") (Bermann Decl. Ex. 10); *9REN Holding S.a.r.l v. Spain*, No. ARB/15/15, Award ¶ 157 (ICSID 2019) ("There is nothing in the *Achmea* decision that suggests the ECJ contemplated ECT claims against the EU itself . . .  Spain is as firmly bound by the ECT dispute resolution mechanism as is the EU itself.") (Bermann Decl. Ex. 20); *SolEs Badajoz GmbH v. Spain*, No. ARB/15/38, Award ¶ 250 (ICSID 2019) ("Bearing in mind that the task of this Tribunal is to determine its own jurisdiction, pursuant to the ICSID Convention and the ECT, and that the Tribunal is not an institution of the EU, the Tribunal concludes that, if the ECT and the TFEU address the same subject matter, Article 16 of the ECT means that the TFEU may not derogate from the dispute settlement provisions of the ECT and thus that the TFEU does not detract from the Tribunal's jurisdiction.") (Bermann Decl. Ex. 19).

Judge Mehta in *Micula v. Government of Romania*, a case where an ICSID Convention award, arising under the Sweden-Romania BIT, was fully enforced in accordance with Article 54 of the ICSID Convention and the Convention on Settlement of Investment Disputes Act.  In so holding, the Court reviewed and rejected Romania's argument, similar to Spain's here, that *Achmea* operated to invalidate *all* intra-EU arbitrations.  The court disagreed:

> [I]n resolving the dispute before it, the ICSID arbitral tribunal considered EU law, but it did so for factual context, not as a source of controlling law.  Indeed, the tribunal expressly passed on deciding whether "any payment of compensation arising out of this Award would constitute illegal state aid under EU law and render the Award unenforceable within the EU."  The tribunal therefore did not decide a question of EU law in a way that implicates the core rationale of *Achmea*.

*Micula v. Gov't of Romania*, Case No. 17-02332 (APM), 2019 WL 4305533, at *11 (D.D.C. Sept. 11, 2019) (citation omitted); *appeal filed*, No. 19-7127 (D.C. Cir. Oct. 11, 2019).

In sum, even if EU law applied to determine a tribunal's jurisdiction under the ECT (which is not the case), nothing in the *Achmea* judgment establishes that intra-EU arbitration under the ECT violates EU law.  It follows that nothing in the *Achmea* ruling displaces the NextEra Tribunal's (correct) ruling that Spain validly consented to arbitrate with NextEra.

### 3.    Spain's Other European "Authorities" Are Unpersuasive

Spain also relies upon a non-binding internal communication by the EU Commission, asserting that *Achmea* implicitly invalidates intra-EU disputes under the ECT.  *See* Spain MTD at 14 (citing *Communication from the Commission to the European Parliament & Council: Protection of Intra-EU Investment*, at 26 COM (2018) 547 final (July 19, 2018) (Hindelang Decl. Ex. 50)).  This document, which does little more than reiterate points the Commission has made before, cannot alter the binding consent to jurisdiction in the ECT.  *See* Bermann Decl. ¶ 125.

The same is true of the "declaration" by 22 EU Member States asserting that, as a matter of EU law, Article 26 of the ECT does not apply to intra-EU investment disputes.[28]  This political document (with which some EU member states openly disagreed)[29] cannot alter Spain's binding legal commitment, in Article 26, to arbitrate disputes, much less abrogate the ICSID Convention. *See* Bermann Decl. ¶¶ 124-30.  Even on its face, the declaration merely commits those 22 Member States to plan on terminating their intra-EU BITs, thus making clear that the *Achmea* judgment did not terminate those treaties under international law.  The same conclusion applies with even greater force to the ECT.  Instead, the declaration only says that those states "will discuss" the consequences of the *Achmea* judgment for the ECT – again implicitly recognizing that the ECT remains in force.[30]  Finally, both the Tribunal in this matter and every other ICSID tribunal to address the "declaration" has held that it has no impact on ECT jurisdiction.[31]

---

[28]  *See* Declaration of the Representatives of the Governments of the Member States on the Legal Consequences of the Judgment of the Court of Justice in *Achmea* and on Investment Protection in the European Union (Jan. 15, 2019) (signed by Austria, Belgium, Bulgaria, Croatia, Cyprus, the Czech Republic, Denmark, Estonia, France, Germany, Greece, Ireland, Italy, Latvia, Lithuania, The Netherlands, Poland, Portugal, Romania, Slovakia, Spain and the United Kingdom) (Hindelang Decl. Ex. 52).

[29]  Six states failed to join the majority.  *See* Declaration of the Representatives of the Governments of the Member States on the Enforcement of the Judgment of the Court of Justice in *Achmea* and on Investment Protection in the European Union (Jan. 16, 2019) (signed by Finland, Luxembourg, Malta, Slovenia and Sweden) (Hindelang Decl. Ex. 53); Declaration of the Representative of the Government of Hungary on the Legal Consequences of the Judgment of the Court of Justice in *Achmea* and on Investment Protection in the European Union (Jan. 16, 2019) (Hindelang Decl. Ex. 54).

[30]  Spain's claim that the Declarations constitute an "interpretation" of the ECT (Spain MTD at 31) is erroneous, as they do not attempt to engage in legal interpretation of the ECT.

[31]  *See* Liability Decision ¶ 354 ("[T]he internal constitutional laws of the EU and its constant changes and interpretations by the CJEU, as the Member States seek to minimize their mutual obligations in another context, [are] of no relevance . . . ."); *see also id.* ¶ 91 n.560; *Rockhopper* ¶ 179 ("[T]he Declaration [of the 22 member states] cannot be even at an initial level of analysis considered as a common view (insofar as a view might be expressed in those documents) of all the EU Member States. That fact renders it conceptually and legally impossible that the

* * *

Accordingly, as Spain has failed to identify a basis for ignoring its express agreement to arbitrate ECT-related disputes before a tribunal constituted under the ICSID Convention, the "arbitration exception" plainly is satisfied, and Spain's claim to sovereign immunity fails.

### III.
### SPAIN'S *FORUM NON CONVENIENS* ARGUMENT IS MERITLESS

Spain's request for dismissal on *forum non conveniens* grounds (Spain MTD at 19-28) is completely ill-founded. Even in ordinary cases, "the doctrine of *forum non conveniens . . .* is an exceptional one that a court must use sparingly." *Deb v. SIRVA, Inc.*, 832 F. 3d 800, 805 (7th Cir. 2016); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (*forum non conveniens* should be invoked only in "rare cases.").[32] Yet the authorities do not even suggest, much less contemplate, that *forum non conveniens* might be appropriate as a general defense against enforcement of foreign judgments, much less arbitral awards governed by the ICSID Convention. Notably also, *no* provision of the ICSID Convention (or the Convention on Settlement of Investment Disputes Act) allows for dismissal of an enforcement action based on inconvenient forum.

On the contrary, the D.C. Circuit has held that *forum non conveniens* is inapplicable in the context of award enforcement because "**only a court of the United States . . . may attach the**

---

Declaration can be considered within the EU legal order.") (Bermann Decl. Ex. 14); *Maygar Farming Co. v. Hungary*, No. ARB/17/27, Award ¶¶ 213-14 (ICSID 2019) ("[E]ven if the Tribunal were to regard the 2019 Declarations as an agreement to terminate the BIT, *quod non*, that agreement could not have invalidated the consent to arbitrate because it was entered after the consent was formed.") (Bermann Decl. Ex. 38).

[32] *Forum non conveniens* ordinarily permits a federal district court having jurisdiction over a lawsuit to nonetheless decline to hear the dispute where there is an adequate alternative forum and where the public and private interests of the case otherwise favor litigation in that forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256-57 (1981). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

***commercial property of a foreign nation located in the United States*.**"  *TMR*, 411 F.3d at 303 (emphasis added).  Consequently, the doctrine of *forum non conveniens* is inapplicable to actions in the United States to enforce arbitral awards against foreign states.  *See BCB Holdings v. Gov't of Belize,* 110 F. Supp. 3d 233, 244 (D.C. Cir. 2015) (applying *TMR* and dismissing *forum non conveniens* application because "no alterative forum [ ] has jurisdiction to attach the commercial property of a foreign nation located in the United States"), *aff'd* 650 F. App'x 17, 19 (D.C. Cir. 2016); *Cont'l Transfert Technique Ltd. v. Fed. Gov. of Nigeria*, 697 F. Supp. 2d 46, 57 (D.D.C. 2010) (finding that Nigeria failed to establish an alternative forum because only U.S. courts could attach the commercial property of Nigeria located in the United States); Restatement (Third) of U.S. Law of International Commercial Arbitration § 4.27(a) (Am. Law Inst., Proposed Final Draft, 2019) ("[a]n action to confirm a U.S. Convention award or enforce a foreign Convention award is not subject to a stay or dismissal in favor of a foreign court on *forum non conveniens* grounds.").[33]

While conceding, as it must, that *TMR* has the force of law in this Circuit, Spain attempts to sidestep its holding by arguing that "*TMR* and its progeny all evaluated *forum non conveniens* after recognizing jurisdiction under FSIA."  Spain MTD at 24.  That is a hollow (indeed mischievous) distinction,[34] and ignores *TMR*'s clear holding that *forum non conveniens* is *unavailable* in arbitration enforcement actions. Spain also claims that *TMR* is distinguishable because it dealt with a commercial arbitration award enforceable under Chapter II of the Federal

---

[33]  The rationale for *forum non conveniens* is that an "alternative forum" exists where the plaintiff's claims can (more) conveniently be adjudicated.  *See Piper*, 454 U.S. at 255-56.  But the *only* operative issue in award enforcement is whether the court of the country where enforcement is sought should recognize and enforce the award *in that country.*

[34]  Spain's "distinction" seems to suppose that a district court could bypass *TMR*'s holding by simply declaring that it was too "inconvenient" to perform an analysis of subject matter jurisdiction under the FSIA.  Besides being absurd on its face, this ignores that a foreign forum would, by definition, be incapable of adjudicating jurisdiction under the FSIA.

Arbitration Act (and the New York Convention).  Spain MTD at 25.  Spain fails, however, to identify any reasoned basis for distinguishing *TMR* simply because the enforcement treaty is different.  Indeed, if anything, the rationale in *TMR* applies with even greater force to an ICSID Convention enforcement action, because Article 54 of the ICSID Convention (as enshrined in U.S. law) requires automatic entry of the award as a final U.S. judgment.  *See* 22 U.S.C. § 1650a(a).[35]

---

[35] The assortment of *forum non conveniens* cases cited by Spain are largely irrelevant, since most of them are not award enforcement cases.  *See Simon v. Republic of Hungary*, 911 F.3d 1172, 1175 (D.C. Cir. 2018) (court claims by victims of World War Two human rights abuses); *Nygard v. DiPaolo*, 753 F. App'x 716, 720 (11th Cir. 2018) (claims regarding intentional torts committed in Bahamas); *Dennis v. Edwards*, 831 A.2d 1006, 1008 (D.C. Cir. 2003) (dispute over a decedent's estate); *Espana v. ABSG Consulting, Inc.*, 334 F. App'x. 383, 384 (2d Cir. 2009) (maritime case); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 85 (D.C. Cir. 2002) (damages court claim by victims of human rights abuses).  As regards *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011), the holding in that case (allowing *forum non conveniens* dismissal of a New York enforcement action) is contrary to *TMR*.  *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377 (S.D.N.Y. 2001), *aff'd Naftogaz* 311 F.3d 488 (2d. Cir. 2002), another Second Circuit case, is inapposite for the same reason.  In any event, the Second Circuit's use of *forum non conveniens* in award enforcement cases has been seriously questioned by the authors of the forthcoming Restatement.  *See* Restatement (Third) of U.S. Law of International Commercial Arbitration § 4.27, reporter's notes (a)(ii) (Am. Law Inst., Proposed Final Draft, 2019) (noting Judge Lynch's "strong dissent" in *Figueiredo* and explaining that "[a]ll in all, application of the forum non conveniens doctrine to actions to enforce [New York] Convention awards is inconsistent with U.S. treaty obligations committing the United States to entertain otherwise properly brought actions to enforce [New York] Convention awards");  *see also* Int'l Commercial Disputes Comm. of the Ass'n of the Bar of the City of N.Y., *Lack of Jurisdiction and Forum Non Conveniens as Defenses to the Enforcement of Foreign Arbitral Awards* 18-22 (2005); Alan Scott Rau, *The Errors of Comity: Forum Non Conveniens Returns to the Second Circuit*, 23 Am. Rev. Int'l Arb. 1, 14-22 (2012); Matthew H. Adler, *Figueiredo v. Peru: A Step Backward for Arbitration Enforcement*, 32 N.W.J. Int'l L. & Bus. 38A, 49A-52A (2012); Linda J. Silberman, *Civil Procedure Meets International Arbitration: A Tribute to Hans Smit*, 23 Am. Rev. Int'l Arb. 439, 448-49 (2012); Peter B. Rutledge, *With Apologies to Paxton Blair*, 45 N.Y.U. J. Int'l L. & Pol. 1063, 1078-79 (2013).  *Figueiredo* was subject to a cogent dissent from Judge Lynch, warning that the panel majority's approach would "dramatically undercut" the U.S.'s obligations under applicable international treaties to enforce foreign arbitral awards, because "many if not most of the disputes subject to international arbitration involve foreign parties engaged in disputes whose center of gravity is outside of the United States." *Figueiredo* at 397-98 (Lynch, J., dissenting).

Even if a *forum non conveniens* motion could be entertained in this case (which it cannot), it would fail.  Notably, despite there being at least *six* pending ICSID or SCC award enforcement cases before the United States courts, Spain has never previously argued that such proceedings belong in another country.  Spain even urged that one of those cases (the *Foresight* SDNY Petition) be transferred **to this Court**, citing the pendency of "similar actions against Spain pending in the District Court for the District of Columbia."  Spain May 22, 2019 Motion to Transfer in *Foresight* (Nelson II Decl. Ex. 9).  To quote Spain:

> Consolidated treatment of the virtually identical *Novenergia* case with this action will avoid "the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Additionally, *the D.C. federal court is more familiar with the governing law on the common dispositive issue – whether Spain entered into an arbitration agreement with the EU nationals that procured the awards – because there are four prior pending actions against Spain in that court that implicate this issue.*

*Id.* at 6 (footnote omitted); *see also id.* n. 1 (requesting *Foresight* case be assigned to this Court).

Having *averred* the suitability of a "D.C. federal court" to hear ECT arbitration award enforcement disputes, Spain cannot now credibly claim that this Court is an inconvenient forum.

In all events, any *forum non conveniens* motion would fail here:

- Spain has not identified an available alternative forum for this dispute.  *Piper Aircraft Co.,* 454 U.S. at 254 n.22 (available alternative forum requirement is "satisfied when the defendant is 'amenable to process' in the other jurisdiction"); *see also Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 88-89 (D.D.C 2014); *Aldana v. Del Monte Fresh Produce N.A.,* 547 F. 3d 1283, 1290 (11th Cir. 2009) ("In order to be available, the foreign court must be able to 'assert jurisdiction over the litigation sought to be transferred.'") (citation omitted).

- No alternative forum is adequate: only a U.S. court may attach U.S. assets. *See Creative Tech, Ltd., v. Aztech Sys. Pte, Ltd*, 61 F. 3d 696, 701-02 (9th Cir. 1995) (to be adequate, "the alternative forum must provide some potential avenue for redress.") (citation omitted).

- NextEra is entitled to a "strong presumption" in favor of its choice of forum, which has a legitimate basis (i.e. securing enforcement in the U.S.).  *See Shi v. New Mighty U.S. Trust*, 918 F. 3d 944, 949-50 (D.C. Cir. 2019) ("Even if the plaintiff resides outside of the forum [] courts have understood the Supreme Court's reasoning to 'instruct [] that [they] give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability. . . to obtain

jurisdiction over the defendant.'") (second, third & fourth alteration in original) (citation omitted) *cert denied*, No. 19-232, 2019 WL 5301490 (U.S. Oct. 21, 2019); *see also Iragorri v. United Techs. Corp.,* 274 F. 3d 65, 72 (2d Cir. 2001) ("[T]he more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*").

- Neither public nor private factors favor dismissal.  This is not, as Spain erroneously claims, a case involving "foreign law" (Spain MTD at 19), but is governed entirely by 28 U.S.C. § 1650a, which directs recognition of ICSID Awards without analyzing merits issues.  In that process, there are no witnesses or documents to be considered.  *Id.*; *see also Cont'l Transfert Technique Ltd.*, 697 F. Supp. 2d at 58.

Spain's *forum non conveniens* argument thus is totally without merit.

## IV.
## SPAIN'S REMAINING OBJECTIONS TO THE PETITION SHOULD BE DENIED

### A.    The Full Faith and Credit Principle Fully Supports
### NextEra – And Shields the Award from Collateral Attack

1.    The Intra-EU/*Achmea* Argument is not a Proper Basis for Opposing Enforcement

The ICSID Convention constrains the role of courts in enforcing ICSID awards, demanding they give awards "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a; *see also Maritime Int'l Nominees Establishment v. Rep. of Guinea*, 693 F.2d 1094, 1103 n.14 (D.C. Cir. 1982) (noting these provisions mean "ICSID arbitrations are to be enforced as judgments of sister state").  The "full faith and credit" principle dictates that *all* questions, including those of international law, presented by the parties and adjudicated by the tribunal are shielded from collateral review, *see Mobil Cerro*, 863 F.3d at 102, regardless of whether the reviewing court "disagrees with the reasoning underlying the judgment."  *V.L. v. E.L.*, 136 S. Ct. 1017, 1020 (2016).[36]

---

[36]    Furthermore, neither Article 54 nor the Convention on Settlement of Investment Disputes Act allow for enforcement of an ICSID award to be denied on public policy grounds.  Bermann Decl. ¶¶ 144-45; *cf. Fauntleroy v. Lum*, 210 U.S. 230, 236-37 (1908) (enforcement of sister state judgments under Full Faith and Credit Clause is not subject to a public policy exception).

Standing this principle on its head, Spain argues that if enforcement is allowed under the "Full Faith and Credit" principles, then it should be subject to the strand of case law decided under the Full Faith and Credit Clause,[37] allowing for non-recognition of a judgment decided by a court that lacked jurisdiction over the defendant.  *See* Spain MTD at 37.  This argument is flawed on several levels.  To begin with (and as noted already), neither Article 54 nor the Convention on Settlement of Investment Disputes Act allows review of an ICSID tribunal's jurisdictional findings.

Moreover, Spain ignores that the principle of full faith and credit includes "collateral estoppel, or 'issue preclusion,'" doctrines that bar parties from relitigating issues already settled.  *San Remo Hotel, L.P. v. City of San Francisco*, 545 U.S. 323, 336 (2005).  These principles apply "even as to questions of jurisdiction" – reviewing courts cannot disturb the original judgment where those questions "have been fully and fairly litigated and finally decided."  *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 706 (1982).  Here, Spain could – and did – vigorously contest the Tribunal's jurisdiction, as was its right under Article 42 of the ICSID Convention.  Spain fully briefed and argued its "intra-EU" objection, and the European Commission intervened in support.  *See supra* at 9.  Having argued these issues and lost on all counts, Spain cannot now revisit them here.

2.    Spain's "State Aid" Argument is Not a Proper Basis for Resisting Enforcement

In a further attempt to relitigate the substance of the Award, Spain asserts that the Tribunal, in awarding damages to NextEra, issued relief that is tantamount to granting "state aid" to EU nationals – which, it claims, is impermissible under EU law.  Spain MTD at 39.  As with the intra-

---

[37]  *See* U.S. Constitution, art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").

EU argument, this claim is foreclosed by Article 54 of the ICSID Convention and the Convention on Settlement of Investment Disputes Act.[38]

## B.    Spain's Reliance Upon the So-Called "Foreign Sovereign Compulsion" Doctrine is Unavailing

In a further variation on its "state aid" argument, Spain claims it is "compel[led]" by EU law not to pay the award, because EU law bans "state aid" unless authorized by the European Commission.  Spain MTD at 39, 41-42.  It cites cases that establish a so-called "foreign sovereign compulsion" doctrine, which is said to "shield[] from . . . liability the acts of parties carried out in obedience to the mandate of a foreign government."  *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979); *see also Micula*, 2019 WL 4305533, at *11.

Because the foreign sovereign compulsion doctrine aims to shield parties that have simply obeyed foreign law, it cannot logically excuse non-performance of the Award in the present circumstances.   As Professor Bermann explains, application of the "foreign state compulsion" doctrine is nonsensical in this case because the asserted entity under "compulsion" is the sovereign itself – *i.e.* Spain.   Bermann Decl. ¶ 159.   A state cannot rationally argue that it is under "compulsion" from its own law, and no case has previously allowed a sovereign to escape liability on that basis.[39]  The plea of foreign sovereign compulsion therefore fails.

---

[38]   In any event, as Professor Bermann explains, enforcement of the Award in this case would not amount to the granting of a state aid under EU law.  Bermann Decl. ¶¶ 146-57.

[39]   None of the "foreign sovereign compulsion" or "comity" cases cited by Spain involve petition to enforce arbitration awards.  *See, Re Picard, Tr. for Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85, 91 (2d Cir. 2019) (considering whether a trustee, exercising powers under the Bankruptcy Code, was precluded as a matter of comity from taking steps that were at odds with foreign law); *Re Sealed Case*, 825 F.2d 494, 495 (D.C. Cir. 1987) (considering a bank's failure to respond to a grand jury subpoena, allegedly on grounds of foreign banking secrecy law); *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*, 830 F.2d 449, 450 (2d Cir. 1987) (dispute over extraterritorial application of U.S. antitrust laws to activities in Colombia); *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d

**C.**     **The Act of State Doctrine Has No Application Here**

Spain also invokes the "Act of State" doctrine, under which United States courts will abstain from hearing a case that calls for adjudication of the "validity of public acts (acts *jure imperii*) performed by other sovereigns within their own borders." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004). Spain argues that enforcement of this Award "would necessarily violate the act of state doctrine, as it would effectively declare invalid *Achmea*, the Joint Declaration, and the EC's official position" and/or "require this Court to effectively declare invalid the very EU Treaties." Spain MTD at 42, 43. Even on the case as framed by Spain, this is a gross exaggeration: the issue is seeks to raise is whether the arbitration agreement is invalidated by EU law.

Spain's position ignores, first, that these points are not actually in issue. As shown above, a U.S. court enforcing an ICSID Convention award is giving effect to that Convention. Like the Tribunal in the underlying arbitration, this Court is not being asked to render any interpretations of EU law binding on the EU or its courts – let alone to "invalidate" a judgment of the CJEU.

Second, Spain ignores that the Convention on Settlement of Investment Disputes Act mandates the enforcement of the pecuniary obligations of ICSID awards without reviewing their substance. Enforcement of an ICSID award will therefore never call upon a U.S. court to adjudicate the substance of the matters adjudicated by the arbitral tribunal, much less pass upon the "validity" of acts taken by the EU, its Member States, or its courts.

Indeed, the Act of State Doctrine is intrinsically inapplicable to arbitration.[40] Its rationale is to protect the judiciary from determining sensitive issues of international law. *See Banco*

---

1300, 1304 (D.C. Cir. 1980) (considering how to mail FTC notices on a French citizen without unduly violating French law).

[40]     None of Spain's Act of State authorities involve arbitration or arbitration award enforcement. *See World Wide Minerals,* 296 F.3d at 1156 (considering a private plaintiff's claims against a foreign state for breach of contract, fraudulent inducement, tortious interference, conversion,

*Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964) ("The doctrine as formulated in past decisions expresses the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere"). Investor-state arbitration, by contrast, refers such issues to a non-judicial body (an ICSID Convention tribunal), meaning that the judiciary will play no such role in adjudicating them. Arbitration thus achieves the very goal outlined in *Sabbatino* of shielding courts from having to decide sensitive issues. The mere enforcement of a money award arising from such adjudication cannot possibly implicate the Act of State Doctrine.

Spain's own authorities confirm that the Act of State doctrine only bars suit where the relief sought would require, *inter alia*, "a court in the United States to declare invalid the [foreign sovereign's] official act." Spain MTD at 42 (alteration in original, citing *Royal Wulff*, 938 F.3d at 1092). NextEra's Petition does not raise such an issue; it simply seeks enforcement of an award.

Third, Spain ignores that NextEra has not put these matters at issue. Indeed, it is NextEra's position (backed up by the terms of the FSIA and ICSID Convention) that the court need not reach these issues. Rather, it is Spain, through copious authorities and expert evidence, that has affirmatively invoked EU law in a bid to invalidate the arbitration agreement. The Act of State Doctrine does not apply to issues that the affected state itself (Spain) has consented to be adjudicated. Restatement (Fourth) of Foreign Relations Law § 441 comment f (2018)("A

---

conspiracy, and RICO violations, in connection with events occurring within Kazakhstan); *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. 04-322(EGS), 2006 WL 2711527, at *2 (D.D.C. Sept. 21, 2006) (considering RICO and other statutory claims against an oil company in connection with events occurring in East Timor); *Royal Wulff Ventures LLC v. Primero Mining Corp.*, 938 F.3d 1085, 1088 (9th Cir. 2019) (securities lawsuit against a Canadian mining company in connection with events occurring in Mexico).

sovereign may consent to have the validity of specified official acts examined in another nation's court system, even as to their validity under the foreign sovereign's own law. . . . A foreign state may waive the act of state doctrine in a contract or through acceptance of a treaty or other international obligation.").  Accordingly, it cannot apply here.

## V.
## SPAIN'S APPLICATION FOR A DISCRETIONARY STAY OF PROCEEDINGS SHOULD BE DENIED

Seeking to exploit the pendency of its annulment petition, Spain now seeks a lengthy stay for the entire duration of its annulment application filed with ICSID.  Spain MTD at 16-19.  Such a stay would be unwarranted.  As noted above, when Spain commenced its annulment application it obtained an automatic provisional stay, by virtue of Article 52(5) of the ICSID Convention.  That stay is temporary and will remain in place only until the *ad hoc* annulment committee decides whether to continue the stay or to lift it.  *See* Bermann Decl. ¶¶ 46-49.  Moreover, the current stay only affects enforcement of the pecuniary obligations in the Award.  It is not an anti-suit injunction; thus, it does not preclude this Court from adjudicating the substantive question of the Award's right to be recognized and entered as a U.S. judgment.

Given that background, the most that Spain could reasonably request is a stay of enforcement proceedings *for so long as the ICSID annulment committee permits such a stay.*  Spain's request for a stay for the *entirety* of the annulment application is thus excessive.

Contrary to its claims, Spain's position has *not* been endorsed in other ECT/solar cases.  In the *Antin* DDC Petition, Spain applied for annulment in May 2019, and immediately sought a stay of the D.D.C. enforcement proceeding.  In August 2019, Judge Sullivan granted a temporary stay of the enforcement proceeding, but *refused* to grant a stay for the entire annulment period, instead requiring the parties to update the Court regularly on the annulment proceedings. *See*

Memorandum Opinion and Order, *Infrastructure Servs. Luxembourg S.A.R.L. v. Spain*, No. 1:18-cv-1753-EGS (D.D.C. Aug. 28, 2019) (Nelson II Decl. Ex. 10).   On October 1, 2019, Judge Sullivan instructed that the parties "file a further joint status report by no later than two business days of any ruling or development in the annulment proceedings, including any change to the status of the provisional stay."   *See* Minute Order of October 1, 2019; *see also* Joint Status Report of Sept. 30, 2019 (Nelson II Decl. Ex. 11).

On October 21, 2019, the *Antin* ICSID *ad hoc* committee lifted the stay of enforcement, holding that "Article 52(5) of the ICSID Convention calls for circumstances 'requiring' a stay," that "there is no presumption in favour of continuing a stay," and Spain had failed to make a showing that a stay was warranted.[41]   The parties have provided an update on this development for Judge Sullivan's review. *See* Joint Status Report of Oct. 22, 2019 (Nelson II Decl. Ex. 16).

Although Spain cites Judge Boasberg's September 2019 decision in *Masdar*'s DDC Petition, in particular that court's order staying the proceeding "until the ICSID [annulment] committee has issued its ruling," *Masdar Solar & Wind Cooperatief U.A. v. Spain*, 397 F. Supp. 3d 34, 41 (D.D.C. 2019), Spain omits the important caveats placed upon that order.   After noting that Article 54 requires prompt enforcement of ICSID awards, the court then held:

> The Court, however, does not wish to unduly delay these proceedings.   In fact, "a court abuses its discretion in ordering a stay of indefinite duration in the absence of a pressing need."   The Court notes that the circumstances justifying this stay will

---

[41] *Infrastructure Servs. Luxembourg S.à.r.l. v. Spain,* No. ARB/13/31, Decision on the Continuation of the Provisional Stay of Enforcement ¶ 81 (ICSID 2019) (Nelson II Decl. Ex. 13) ("*Antin* Annulment Stay Decision").   The *ad hoc* committee in *Eiser* issued a similar decision. *See Eiser Infrastructure Ltd. v. Spain*, No. ARB/13/36, Decision on the Stay of Enforcement of the Award ¶ 61 (ICSID 2018) ("[T]he Committee is not convinced that the arguments presented by Spain demonstrate that continuation of the Provisional Stay is required.") (Nelson II Decl. Ex. 14).   The committee later rejected a renewed request by Spain to modify the stay, confirming "that the stay of enforcement was terminated as of 23 March 2018, pursuant to the Stay Decision." *Eiser Infrastructure Ltd. v. Spain*, No. ARB/13/36, Procedural Order No. 2 ¶ 56 (b) (ICSID 2018) (Nelson II Decl. Ex. 15).

> be reviewed with regularity and confirms that it will promptly turn to the merits of Masdar's Petition upon the conclusion of those foreign proceedings if Spain does not prevail.

*Id.* at 40-41 *quoting Belize Soc. Dev. Ltd v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012). Since then, the parties have been updating the Court about the annulment proceedings, including the status of Spain's attempts to persuade the *ad hoc* committee to continue the stay of enforcement. *See, e.g.*, *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, No. 1:18-cv-2254 (JEB), Joint Status Report (D.D.C. Nov. 18, 2019) (Nelson II Decl. Ex. 12). Thus, *Masdar* allows for possible lifting of the judicial stay if the ICSID *ad hoc* committee lifts the provisional stay.

Spain also makes reference to the inherent power of a court to stay proceedings. *See* Spain MTD at 17. But, given the specific treaty framework of the ICSID Convention, which places in the hands of the ICSID *ad hoc* committee the ultimate decision whether to grant a stay, these authorities are inapposite.[42] For example, while Spain argues it may "ultimately have[] to recover assets seized during this action should the annulment proceeding go its way" (Spain MTD at 17), this is the precisely the kind of risk that will be considered by the *ad hoc* annulment committee in this case, as similar risks were considered past decisions like *Antin* and *Eiser* (*see supra* n. 41).

---

[42] *Europcar Italia, S.pA. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316-17 (2d Cir. 1998), cited by Spain, did not involve a petition to enforce an award under the ICSID Convention. Rather, *Europcar* dealt with an application to enforce a commercial arbitration award under the New York Convention, which specifically grants courts discretion to stay enforcement actions, pending the outcome of proceedings in the courts of the "seat" of the arbitration to "se[t] aside" the award. New York Convention, art. VI, *see* 9 U.S.C. § 201. By contrast, the ICSID Convention (in Article 52(5)) gives only the ICSID *ad hoc* annulment committee the final say on whether an award's enforcement should be stayed. In any event, numerous courts in non-ICSID settings have declined to stay enforcement of an investment treaty award pending a set aside proceeding in a foreign forum. *See, e.g., Gold Reserve*, 146 F. Supp. 3d at 133-37 (declining to stay the enforcement of an ICSID Additional Facility award after finding that "BIT, ICSID Additional Facility Rules, and New York Convention all require immediate satisfaction of arbitral awards" and that the award creditor faced hardship if enforcement was delayed); *Chevron*, 949 F. Supp. 2d at 472 (similar holdings in case governed by US-Ecuador BIT, UNCITRAL Rules and New York Convention).

In any event, these cases make clear that an ordinary request for a stay requires a court to "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd.*, 668 F.3d at 732-33 (quoting *Landis v. N. Am. Co.* 299 U.S. 248, 254-55 (1936)). Here, Spain cannot "make out a clear case of hardship and inequity in being required to go forward" with these enforcement proceedings. *Landis*, 299 U.S. at 255. On the contrary, if the *ad hoc* committee refuses to continue the stay, then it would be perfectly equitable for this court to follow suit, because a denial of a stay would reflect the umpire's decision in the forum (ICSID) that Spain voluntarily accepted when it signed the ECT and ICSID Convention.

NextEra, by contrast, *will* suffer prejudice if a long-running stay is granted here. Spain is facing more than 30 claims under the ECT, several of which are already the subject of enforcement proceedings in the United States. When it comes to creditors, "the first in time is the first in right" – a prior lien "gives a prior claim, which is entitled to satisfaction out of the subject it binds." *United States v. City of New Britain*, 347 U.S. 81, 85 (1954). Delaying judgment on NextEra's petition materially harms its ability to realize and collect upon the Award.

Furthermore, assuming this Court converts the Award into a judgment, Spain will still benefit from the automatic 30-day stay under Fed. R. Civ. P. 62(a) and NextEra will not be able to execute against Spain's assets until this Court determines that a "reasonable period of time has elapsed" thereafter without Spain paying voluntarily. 28 U.S.C. § 1610(c). In addition, Spain can obtain a further automatic stay by appealing the judgment and posting a bond under Rule 62(b).

Accordingly, there should be no stay of enforcement beyond whatever the *ad hoc* committee is prepared to grant. Even during the pendency of ICSID's provisional stay, this Court can (and, it is submitted, should) hear and adjudicate all contested issues presented in the Petition.

## **<u>CONCLUSION</u>**

For the foregoing reasons, NextEra respectfully requests that Spain's Motion to Dismiss or

Stay the Petition should be denied, and that the Court rule in favor of NextEra, and against Spain,

on all substantive issues presented in the Petition to Confirm an International Arbitral Award.


December 19, 2019                    By:  /s/ Jennifer L. Spaziano
                                     Jennifer L. Spaziano
                                     D.C. Bar Number 462787
                                     SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM LLP
                                     1440 New York Avenue, N.W.
                                     Washington, DC  20005-2111
                                     (202) 371-7000
                                     jen.spaziano@skadden.com

                                     Timothy G. Nelson (appearing *pro hac vice*)
                                     New York Bar Number 3060175
                                     Amanda Raymond Kalantirsky (appearing *pro hac vice*)
                                     New York Bar Number 4812418
                                     Aaron Murphy (appearing *pro hac vice*)
                                     New York Bar Number 5604459
                                     SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM LLP
                                     Four Times Square
                                     New York, NY 10036-6522
                                     (212) 735-3000
                                     (212) 735-2000 (fax)
                                     timothy.g.nelson@skadden.com
                                     amanda.raymond@skadden.com
                                     aaron.murphy@skadden.com

                                     David Herlihy (appearing *pro hac vice*)
                                     New York Bar Number 4167920
                                     SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM UK LLP
                                     40 Bank Street
                                     Canary Wharf
                                     London E14 5DS
                                     ENGLAND

                                     *Attorneys for NextEra Energy Global Holdings B.V. and*
                                     *NextEra Energy Spain Holdings B.V.*

45