26.10.2012    EN    Official Journal of the European Union    C 326/13

# CONSOLIDATED VERSION OF

# THE TREATY ON EUROPEAN UNION

26.10.2012    EN    Official Journal of the European Union    C 326/15

# PREAMBLE

HIS MAJESTY THE KING OF THE BELGIANS, HER MAJESTY THE QUEEN OF DENMARK, THE PRESIDENT OF THE FEDERAL REPUBLIC OF GERMANY, THE PRESIDENT OF IRELAND, THE PRESIDENT OF THE HELLENIC REPUBLIC, HIS MAJESTY THE KING OF SPAIN, THE PRESIDENT OF THE FRENCH REPUBLIC, THE PRESIDENT OF THE ITALIAN REPUBLIC, HIS ROYAL HIGHNESS THE GRAND DUKE OF LUXEMBOURG, HER MAJESTY THE QUEEN OF THE NETHERLANDS, THE PRESIDENT OF THE PORTUGUESE REPUBLIC, HER MAJESTY THE QUEEN OF THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND (¹),

RESOLVED to mark a new stage in the process of European integration undertaken with the establishment of the European Communities,

DRAWING INSPIRATION from the cultural, religious and humanist inheritance of Europe, from which have developed the universal values of the inviolable and inalienable rights of the human person, freedom, democracy, equality and the rule of law,

RECALLING the historic importance of the ending of the division of the European continent and the need to create firm bases for the construction of the future Europe,

CONFIRMING their attachment to the principles of liberty, democracy and respect for human rights and fundamental freedoms and of the rule of law,

CONFIRMING their attachment to fundamental social rights as defined in the European Social Charter signed at Turin on 18 October 1961 and in the 1989 Community Charter of the Fundamental Social Rights of Workers,

DESIRING to deepen the solidarity between their peoples while respecting their history, their culture and their traditions,

DESIRING to enhance further the democratic and efficient functioning of the institutions so as to enable them better to carry out, within a single institutional framework, the tasks entrusted to them,

RESOLVED to achieve the strengthening and the convergence of their economies and to establish an economic and monetary union including, in accordance with the provisions of this Treaty and of the Treaty on the Functioning of the European Union, a single and stable currency,

DETERMINED to promote economic and social progress for their peoples, taking into account the principle of sustainable development and within the context of the accomplishment of the internal market and of reinforced cohesion and environmental protection, and to implement policies ensuring that advances in economic integration are accompanied by parallel progress in other fields,

---

(¹) The Republic of Bulgaria, the Czech Republic, the Republic of Estonia, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the Republic of Austria, the Republic of Poland, Romania, the Republic of Slovenia, the Slovak Republic, the Republic of Finland and the Kingdom of Sweden have since become members of the European Union.

C 326/16          EN          Official Journal of the European Union          26.10.2012

RESOLVED to establish a citizenship common to nationals of their countries,

RESOLVED to implement a common foreign and security policy including the progressive framing of a common defence policy, which might lead to a common defence in accordance with the provisions of Article 42, thereby reinforcing the European identity and its independence in order to promote peace, security and progress in Europe and in the world,

RESOLVED to facilitate the free movement of persons, while ensuring the safety and security of their peoples, by establishing an area of freedom, security and justice, in accordance with the provisions of this Treaty and of the Treaty on the Functioning of the European Union,

RESOLVED to continue the process of creating an ever closer union among the peoples of Europe, in which decisions are taken as closely as possible to the citizen in accordance with the principle of subsidiarity,

IN VIEW of further steps to be taken in order to advance European integration,

HAVE DECIDED to establish a European Union and to this end have designated as their Plenipotentiaries:

*(List of plenipotentiaries not reproduced)*

WHO, having exchanged their full powers, found in good and due form, have agreed as follows:

## TITLE I

### COMMON PROVISIONS

*Article 1*
(ex Article 1 TEU) [1]

By this Treaty, the HIGH CONTRACTING PARTIES establish among themselves a EUROPEAN UNION, hereinafter called 'the Union', on which the Member States confer competences to attain objectives they have in common.

This Treaty marks a new stage in the process of creating an ever closer union among the peoples of Europe, in which decisions are taken as openly as possible and as closely as possible to the citizen.

The Union shall be founded on the present Treaty and on the Treaty on the Functioning of the European Union (hereinafter referred to as 'the Treaties'). Those two Treaties shall have the same legal value. The Union shall replace and succeed the European Community.

_____
[1] These references are merely indicative. For more ample information, please refer to the tables of equivalences between the old and the new numbering of the Treaties.

26.10.2012          EN          Official Journal of the European Union          C 326/17

*Article 2*

The Union is founded on the values of respect for human dignity, freedom, democracy, equality, the rule of law and respect for human rights, including the rights of persons belonging to minorities. These values are common to the Member States in a society in which pluralism, non-discrimination, tolerance, justice, solidarity and equality between women and men prevail.

*Article 3*

(ex Article 2 TEU)

1.    The Union's aim is to promote peace, its values and the well-being of its peoples.

2.    The Union shall offer its citizens an area of freedom, security and justice without internal frontiers, in which the free movement of persons is ensured in conjunction with appropriate measures with respect to external border controls, asylum, immigration and the prevention and combating of crime.

3.    The Union shall establish an internal market. It shall work for the sustainable development of Europe based on balanced economic growth and price stability, a highly competitive social market economy, aiming at full employment and social progress, and a high level of protection and improvement of the quality of the environment. It shall promote scientific and technological advance.

It shall combat social exclusion and discrimination, and shall promote social justice and protection, equality between women and men, solidarity between generations and protection of the rights of the child.

It shall promote economic, social and territorial cohesion, and solidarity among Member States.

It shall respect its rich cultural and linguistic diversity, and shall ensure that Europe's cultural heritage is safeguarded and enhanced.

4.    The Union shall establish an economic and monetary union whose currency is the euro.

5.    In its relations with the wider world, the Union shall uphold and promote its values and interests and contribute to the protection of its citizens. It shall contribute to peace, security, the sustainable development of the Earth, solidarity and mutual respect among peoples, free and fair trade, eradication of poverty and the protection of human rights, in particular the rights of the child, as well as to the strict observance and the development of international law, including respect for the principles of the United Nations Charter.

6.    The Union shall pursue its objectives by appropriate means commensurate with the competences which are conferred upon it in the Treaties.

C 326/18    EN    Official Journal of the European Union    26.10.2012

## Article 4

1.    In accordance with Article 5, competences not conferred upon the Union in the Treaties remain with the Member States.

2.    The Union shall respect the equality of Member States before the Treaties as well as their national identities, inherent in their fundamental structures, political and constitutional, inclusive of regional and local self-government. It shall respect their essential State functions, including ensuring the territorial integrity of the State, maintaining law and order and safeguarding national security. In particular, national security remains the sole responsibility of each Member State.

3.    Pursuant to the principle of sincere cooperation, the Union and the Member States shall, in full mutual respect, assist each other in carrying out tasks which flow from the Treaties.

The Member States shall take any appropriate measure, general or particular, to ensure fulfilment of the obligations arising out of the Treaties or resulting from the acts of the institutions of the Union.

The Member States shall facilitate the achievement of the Union's tasks and refrain from any measure which could jeopardise the attainment of the Union's objectives.

## Article 5

(ex Article 5 TEC)

1.    The limits of Union competences are governed by the principle of conferral. The use of Union competences is governed by the principles of subsidiarity and proportionality.

2.    Under the principle of conferral, the Union shall act only within the limits of the competences conferred upon it by the Member States in the Treaties to attain the objectives set out therein. Competences not conferred upon the Union in the Treaties remain with the Member States.

3.    Under the principle of subsidiarity, in areas which do not fall within its exclusive competence, the Union shall act only if and in so far as the objectives of the proposed action cannot be sufficiently achieved by the Member States, either at central level or at regional and local level, but can rather, by reason of the scale or effects of the proposed action, be better achieved at Union level.

The institutions of the Union shall apply the principle of subsidiarity as laid down in the Protocol on the application of the principles of subsidiarity and proportionality. National Parliaments ensure compliance with the principle of subsidiarity in accordance with the procedure set out in that Protocol.

4.    Under the principle of proportionality, the content and form of Union action shall not exceed what is necessary to achieve the objectives of the Treaties.

The institutions of the Union shall apply the principle of proportionality as laid down in the Protocol on the application of the principles of subsidiarity and proportionality.

## Article 6

(ex Article 6 TEU)

1.    The Union recognises the rights, freedoms and principles set out in the Charter of Fundamental Rights of the European Union of 7 December 2000, as adapted at Strasbourg, on 12 December 2007, which shall have the same legal value as the Treaties.

The provisions of the Charter shall not extend in any way the competences of the Union as defined in the Treaties.

The rights, freedoms and principles in the Charter shall be interpreted in accordance with the general provisions in Title VII of the Charter governing its interpretation and application and with due regard to the explanations referred to in the Charter, that set out the sources of those provisions.

2.    The Union shall accede to the European Convention for the Protection of Human Rights and Fundamental Freedoms. Such accession shall not affect the Union's competences as defined in the Treaties.

3.    Fundamental rights, as guaranteed by the European Convention for the Protection of Human Rights and Fundamental Freedoms and as they result from the constitutional traditions common to the Member States, shall constitute general principles of the Union's law.

## Article 7

(ex Article 7 TEU)

1.    On a reasoned proposal by one third of the Member States, by the European Parliament or by the European Commission, the Council, acting by a majority of four fifths of its members after obtaining the consent of the European Parliament, may determine that there is a clear risk of a serious breach by a Member State of the values referred to in Article 2. Before making such a determination, the Council shall hear the Member State in question and may address recommendations to it, acting in accordance with the same procedure.

The Council shall regularly verify that the grounds on which such a determination was made continue to apply.

2.    The European Council, acting by unanimity on a proposal by one third of the Member States or by the Commission and after obtaining the consent of the European Parliament, may determine the existence of a serious and persistent breach by a Member State of the values referred to in Article 2, after inviting the Member State in question to submit its observations.

3.    Where a determination under paragraph 2 has been made, the Council, acting by a qualified majority, may decide to suspend certain of the rights deriving from the application of the Treaties to the Member State in question, including the voting rights of the representative of the government of that Member State in the Council. In doing so, the Council shall take into account the possible consequences of such a suspension on the rights and obligations of natural and legal persons.

The obligations of the Member State in question under the Treaties shall in any case continue to be binding on that State.

4.    The Council, acting by a qualified majority, may decide subsequently to vary or revoke measures taken under paragraph 3 in response to changes in the situation which led to their being imposed.

5.    The voting arrangements applying to the European Parliament, the European Council and the Council for the purposes of this Article are laid down in Article 354 of the Treaty on the Functioning of the European Union.

### Article 8

1.    The Union shall develop a special relationship with neighbouring countries, aiming to establish an area of prosperity and good neighbourliness, founded on the values of the Union and characterised by close and peaceful relations based on cooperation.

2.    For the purposes of paragraph 1, the Union may conclude specific agreements with the countries concerned. These agreements may contain reciprocal rights and obligations as well as the possibility of undertaking activities jointly. Their implementation shall be the subject of periodic consultation.

## TITLE II

### PROVISIONS ON DEMOCRATIC PRINCIPLES

### Article 9

In all its activities, the Union shall observe the principle of the equality of its citizens, who shall receive equal attention from its institutions, bodies, offices and agencies. Every national of a Member State shall be a citizen of the Union. Citizenship of the Union shall be additional to and not replace national citizenship.

### Article 10

1.    The functioning of the Union shall be founded on representative democracy.

2.    Citizens are directly represented at Union level in the European Parliament.

Member States are represented in the European Council by their Heads of State or Government and in the Council by their governments, themselves democratically accountable either to their national Parliaments, or to their citizens.

3.    Every citizen shall have the right to participate in the democratic life of the Union. Decisions shall be taken as openly and as closely as possible to the citizen.

4.    Political parties at European level contribute to forming European political awareness and to expressing the will of citizens of the Union.

26.10.2012          EN          Official Journal of the European Union          C 326/21

## Article 11

1.    The institutions shall, by appropriate means, give citizens and representative associations the opportunity to make known and publicly exchange their views in all areas of Union action.

2.    The institutions shall maintain an open, transparent and regular dialogue with representative associations and civil society.

3.    The European Commission shall carry out broad consultations with parties concerned in order to ensure that the Union's actions are coherent and transparent.

4.    Not less than one million citizens who are nationals of a significant number of Member States may take the initiative of inviting the European Commission, within the framework of its powers, to submit any appropriate proposal on matters where citizens consider that a legal act of the Union is required for the purpose of implementing the Treaties.

The procedures and conditions required for such a citizens' initiative shall be determined in accordance with the first paragraph of Article 24 of the Treaty on the Functioning of the European Union.

## Article 12

National Parliaments contribute actively to the good functioning of the Union:

(a)  through being informed by the institutions of the Union and having draft legislative acts of the Union forwarded to them in accordance with the Protocol on the role of national Parliaments in the European Union;

(b)  by seeing to it that the principle of subsidiarity is respected in accordance with the procedures provided for in the Protocol on the application of the principles of subsidiarity and proportionality;

(c)  by taking part, within the framework of the area of freedom, security and justice, in the evaluation mechanisms for the implementation of the Union policies in that area, in accordance with Article 70 of the Treaty on the Functioning of the European Union, and through being involved in the political monitoring of Europol and the evaluation of Eurojust's activities in accordance with Articles 88 and 85 of that Treaty;

(d)  by taking part in the revision procedures of the Treaties, in accordance with Article 48 of this Treaty;

(e)  by being notified of applications for accession to the Union, in accordance with Article 49 of this Treaty;

(f)  by taking part in the inter-parliamentary cooperation between national Parliaments and with the European Parliament, in accordance with the Protocol on the role of national Parliaments in the European Union.

# TITLE III

## PROVISIONS ON THE INSTITUTIONS

### *Article 13*

1.    The Union shall have an institutional framework which shall aim to promote its values, advance its objectives, serve its interests, those of its citizens and those of the Member States, and ensure the consistency, effectiveness and continuity of its policies and actions.

The Union's institutions shall be:

— the European Parliament,

— the European Council,

— the Council,

— the European Commission (hereinafter referred to as 'the Commission'),

— the Court of Justice of the European Union,

— the European Central Bank,

— the Court of Auditors.

2.    Each institution shall act within the limits of the powers conferred on it in the Treaties, and in conformity with the procedures, conditions and objectives set out in them. The institutions shall practice mutual sincere cooperation.

3.    The provisions relating to the European Central Bank and the Court of Auditors and detailed provisions on the other institutions are set out in the Treaty on the Functioning of the European Union.

4.    The European Parliament, the Council and the Commission shall be assisted by an Economic and Social Committee and a Committee of the Regions acting in an advisory capacity.

### *Article 14*

1.    The European Parliament shall, jointly with the Council, exercise legislative and budgetary functions. It shall exercise functions of political control and consultation as laid down in the Treaties. It shall elect the President of the Commission.

2.    The European Parliament shall be composed of representatives of the Union's citizens. They shall not exceed seven hundred and fifty in number, plus the President. Representation of citizens shall be degressively proportional, with a minimum threshold of six members per Member State. No Member State shall be allocated more than ninety-six seats.

26.10.2012          EN          Official Journal of the European Union          C 326/23

The European Council shall adopt by unanimity, on the initiative of the European Parliament and with its consent, a decision establishing the composition of the European Parliament, respecting the principles referred to in the first subparagraph.

3.    The members of the European Parliament shall be elected for a term of five years by direct universal suffrage in a free and secret ballot.

4.    The European Parliament shall elect its President and its officers from among its members.

*Article 15*

1.    The European Council shall provide the Union with the necessary impetus for its development and shall define the general political directions and priorities thereof. It shall not exercise legislative functions.

2.    The European Council shall consist of the Heads of State or Government of the Member States, together with its President and the President of the Commission. The High Representative of the Union for Foreign Affairs and Security Policy shall take part in its work.

3.    The European Council shall meet twice every six months, convened by its President. When the agenda so requires, the members of the European Council may decide each to be assisted by a minister and, in the case of the President of the Commission, by a member of the Commission. When the situation so requires, the President shall convene a special meeting of the European Council.

4.    Except where the Treaties provide otherwise, decisions of the European Council shall be taken by consensus.

5.    The European Council shall elect its President, by a qualified majority, for a term of two and a half years, renewable once. In the event of an impediment or serious misconduct, the European Council can end the President's term of office in accordance with the same procedure.

6.    The President of the European Council:

(a)  shall chair it and drive forward its work;

(b)  shall ensure the preparation and continuity of the work of the European Council in cooperation with the President of the Commission, and on the basis of the work of the General Affairs Council;

(c)  shall endeavour to facilitate cohesion and consensus within the European Council;

(d)  shall present a report to the European Parliament after each of the meetings of the European Council.

The President of the European Council shall, at his level and in that capacity, ensure the external representation of the Union on issues concerning its common foreign and security policy, without prejudice to the powers of the High Representative of the Union for Foreign Affairs and Security Policy.

The President of the European Council shall not hold a national office.

## Article 16

1.    The Council shall, jointly with the European Parliament, exercise legislative and budgetary functions. It shall carry out policy-making and coordinating functions as laid down in the Treaties.

2.    The Council shall consist of a representative of each Member State at ministerial level, who may commit the government of the Member State in question and cast its vote.

3.    The Council shall act by a qualified majority except where the Treaties provide otherwise.

4.    As from 1 November 2014, a qualified majority shall be defined as at least 55 % of the members of the Council, comprising at least fifteen of them and representing Member States comprising at least 65 % of the population of the Union.

A blocking minority must include at least four Council members, failing which the qualified majority shall be deemed attained.

The other arrangements governing the qualified majority are laid down in Article 238(2) of the Treaty on the Functioning of the European Union.

5.    The transitional provisions relating to the definition of the qualified majority which shall be applicable until 31 October 2014 and those which shall be applicable from 1 November 2014 to 31 March 2017 are laid down in the Protocol on transitional provisions.

6.    The Council shall meet in different configurations, the list of which shall be adopted in accordance with Article 236 of the Treaty on the Functioning of the European Union.

The General Affairs Council shall ensure consistency in the work of the different Council configurations. It shall prepare and ensure the follow-up to meetings of the European Council, in liaison with the President of the European Council and the Commission.

The Foreign Affairs Council shall elaborate the Union's external action on the basis of strategic guidelines laid down by the European Council and ensure that the Union's action is consistent.

7.    A Committee of Permanent Representatives of the Governments of the Member States shall be responsible for preparing the work of the Council.

8.    The Council shall meet in public when it deliberates and votes on a draft legislative act. To this end, each Council meeting shall be divided into two parts, dealing respectively with deliberations on Union legislative acts and non-legislative activities.

9.    The Presidency of Council configurations, other than that of Foreign Affairs, shall be held by Member State representatives in the Council on the basis of equal rotation, in accordance with the conditions established in accordance with Article 236 of the Treaty on the Functioning of the European Union.

*Article 17*

1.    The Commission shall promote the general interest of the Union and take appropriate initiatives to that end. It shall ensure the application of the Treaties, and of measures adopted by the institutions pursuant to them. It shall oversee the application of Union law under the control of the Court of Justice of the European Union. It shall execute the budget and manage programmes. It shall exercise coordinating, executive and management functions, as laid down in the Treaties. With the exception of the common foreign and security policy, and other cases provided for in the Treaties, it shall ensure the Union's external representation. It shall initiate the Union's annual and multiannual programming with a view to achieving interinstitutional agreements.

2.    Union legislative acts may only be adopted on the basis of a Commission proposal, except where the Treaties provide otherwise. Other acts shall be adopted on the basis of a Commission proposal where the Treaties so provide.

3.    The Commission's term of office shall be five years.

The members of the Commission shall be chosen on the ground of their general competence and European commitment from persons whose independence is beyond doubt.

In carrying out its responsibilities, the Commission shall be completely independent. Without prejudice to Article 18(2), the members of the Commission shall neither seek nor take instructions from any Government or other institution, body, office or entity. They shall refrain from any action incompatible with their duties or the performance of their tasks.

4.    The Commission appointed between the date of entry into force of the Treaty of Lisbon and 31 October 2014, shall consist of one national of each Member State, including its President and the High Representative of the Union for Foreign Affairs and Security Policy who shall be one of its Vice-Presidents.

5.    As from 1 November 2014, the Commission shall consist of a number of members, including its President and the High Representative of the Union for Foreign Affairs and Security Policy, corresponding to two thirds of the number of Member States, unless the European Council, acting unanimously, decides to alter this number.

The members of the Commission shall be chosen from among the nationals of the Member States on the basis of a system of strictly equal rotation between the Member States, reflecting the demographic and geographical range of all the Member States. This system shall be established unanimously by the European Council in accordance with Article 244 of the Treaty on the Functioning of the European Union.

6.    The President of the Commission shall:

(a)  lay down guidelines within which the Commission is to work;

(b)  decide on the internal organisation of the Commission, ensuring that it acts consistently, efficiently and as a collegiate body;

EN

(c) appoint Vice-Presidents, other than the High Representative of the Union for Foreign Affairs and Security Policy, from among the members of the Commission.

A member of the Commission shall resign if the President so requests. The High Representative of the Union for Foreign Affairs and Security Policy shall resign, in accordance with the procedure set out in Article 18(1), if the President so requests.

7.    Taking into account the elections to the European Parliament and after having held the appropriate consultations, the European Council, acting by a qualified majority, shall propose to the European Parliament a candidate for President of the Commission. This candidate shall be elected by the European Parliament by a majority of its component members. If he does not obtain the required majority, the European Council, acting by a qualified majority, shall within one month propose a new candidate who shall be elected by the European Parliament following the same procedure.

The Council, by common accord with the President-elect, shall adopt the list of the other persons whom it proposes for appointment as members of the Commission. They shall be selected, on the basis of the suggestions made by Member States, in accordance with the criteria set out in paragraph 3, second subparagraph, and paragraph 5, second subparagraph.

The President, the High Representative of the Union for Foreign Affairs and Security Policy and the other members of the Commission shall be subject as a body to a vote of consent by the European Parliament. On the basis of this consent the Commission shall be appointed by the European Council, acting by a qualified majority.

8.    The Commission, as a body, shall be responsible to the European Parliament. In accordance with Article 234 of the Treaty on the Functioning of the European Union, the European Parliament may vote on a motion of censure of the Commission. If such a motion is carried, the members of the Commission shall resign as a body and the High Representative of the Union for Foreign Affairs and Security Policy shall resign from the duties that he carries out in the Commission.

### Article 18

1.    The European Council, acting by a qualified majority, with the agreement of the President of the Commission, shall appoint the High Representative of the Union for Foreign Affairs and Security Policy. The European Council may end his term of office by the same procedure.

2.    The High Representative shall conduct the Union's common foreign and security policy. He shall contribute by his proposals to the development of that policy, which he shall carry out as mandated by the Council. The same shall apply to the common security and defence policy.

3.    The High Representative shall preside over the Foreign Affairs Council.

26.10.2012    EN    Official Journal of the European Union    C 326/27

4.    The High Representative shall be one of the Vice-Presidents of the Commission. He shall ensure the consistency of the Union's external action. He shall be responsible within the Commission for responsibilities incumbent on it in external relations and for coordinating other aspects of the Union's external action. In exercising these responsibilities within the Commission, and only for these responsibilities, the High Representative shall be bound by Commission procedures to the extent that this is consistent with paragraphs 2 and 3.

## Article 19

1.    The Court of Justice of the European Union shall include the Court of Justice, the General Court and specialised courts. It shall ensure that in the interpretation and application of the Treaties the law is observed.

Member States shall provide remedies sufficient to ensure effective legal protection in the fields covered by Union law.

2.    The Court of Justice shall consist of one judge from each Member State. It shall be assisted by Advocates-General.

The General Court shall include at least one judge per Member State.

The Judges and the Advocates-General of the Court of Justice and the Judges of the General Court shall be chosen from persons whose independence is beyond doubt and who satisfy the conditions set out in Articles 253 and 254 of the Treaty on the Functioning of the European Union. They shall be appointed by common accord of the governments of the Member States for six years. Retiring Judges and Advocates-General may be reappointed.

3.    The Court of Justice of the European Union shall, in accordance with the Treaties:

(a)  rule on actions brought by a Member State, an institution or a natural or legal person;

(b)  give preliminary rulings, at the request of courts or tribunals of the Member States, on the interpretation of Union law or the validity of acts adopted by the institutions;

(c)  rule in other cases provided for in the Treaties.

## TITLE IV

### PROVISIONS ON ENHANCED COOPERATION

## Article 20

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    Member States which wish to establish enhanced cooperation between themselves within the framework of the Union's non-exclusive competences may make use of its institutions and exercise those competences by applying the relevant provisions of the Treaties, subject to the limits and in accordance with the detailed arrangements laid down in this Article and in Articles 326 to 334 of the Treaty on the Functioning of the European Union.

Enhanced cooperation shall aim to further the objectives of the Union, protect its interests and reinforce its integration process. Such cooperation shall be open at any time to all Member States, in accordance with Article 328 of the Treaty on the Functioning of the European Union.

2.    The decision authorising enhanced cooperation shall be adopted by the Council as a last resort, when it has established that the objectives of such cooperation cannot be attained within a reasonable period by the Union as a whole, and provided that at least nine Member States participate in it. The Council shall act in accordance with the procedure laid down in Article 329 of the Treaty on the Functioning of the European Union.

3.    All members of the Council may participate in its deliberations, but only members of the Council representing the Member States participating in enhanced cooperation shall take part in the vote. The voting rules are set out in Article 330 of the Treaty on the Functioning of the European Union.

4.    Acts adopted in the framework of enhanced cooperation shall bind only participating Member States. They shall not be regarded as part of the *acquis* which has to be accepted by candidate States for accession to the Union.

## TITLE V

## GENERAL PROVISIONS ON THE UNION'S EXTERNAL ACTION AND SPECIFIC PROVISIONS ON THE COMMON FOREIGN AND SECURITY POLICY

### CHAPTER 1

### GENERAL PROVISIONS ON THE UNION'S EXTERNAL ACTION

*Article 21*

1.    The Union's action on the international scene shall be guided by the principles which have inspired its own creation, development and enlargement, and which it seeks to advance in the wider world: democracy, the rule of law, the universality and indivisibility of human rights and fundamental freedoms, respect for human dignity, the principles of equality and solidarity, and respect for the principles of the United Nations Charter and international law.

The Union shall seek to develop relations and build partnerships with third countries, and international, regional or global organisations which share the principles referred to in the first subparagraph. It shall promote multilateral solutions to common problems, in particular in the framework of the United Nations.

2.    The Union shall define and pursue common policies and actions, and shall work for a high degree of cooperation in all fields of international relations, in order to:

(a)  safeguard its values, fundamental interests, security, independence and integrity;

(b) consolidate and support democracy, the rule of law, human rights and the principles of international law;

(c) preserve peace, prevent conflicts and strengthen international security, in accordance with the purposes and principles of the United Nations Charter, with the principles of the Helsinki Final Act and with the aims of the Charter of Paris, including those relating to external borders;

(d) foster the sustainable economic, social and environmental development of developing countries, with the primary aim of eradicating poverty;

(e) encourage the integration of all countries into the world economy, including through the progressive abolition of restrictions on international trade;

(f) help develop international measures to preserve and improve the quality of the environment and the sustainable management of global natural resources, in order to ensure sustainable development;

(g) assist populations, countries and regions confronting natural or man-made disasters; and

(h) promote an international system based on stronger multilateral cooperation and good global governance.

3.    The Union shall respect the principles and pursue the objectives set out in paragraphs 1 and 2 in the development and implementation of the different areas of the Union's external action covered by this Title and by Part Five of the Treaty on the Functioning of the European Union, and of the external aspects of its other policies.

The Union shall ensure consistency between the different areas of its external action and between these and its other policies. The Council and the Commission, assisted by the High Representative of the Union for Foreign Affairs and Security Policy, shall ensure that consistency and shall cooperate to that effect.

## Article 22

1.    On the basis of the principles and objectives set out in Article 21, the European Council shall identify the strategic interests and objectives of the Union.

Decisions of the European Council on the strategic interests and objectives of the Union shall relate to the common foreign and security policy and to other areas of the external action of the Union. Such decisions may concern the relations of the Union with a specific country or region or may be thematic in approach. They shall define their duration, and the means to be made available by the Union and the Member States.

The European Council shall act unanimously on a recommendation from the Council, adopted by the latter under the arrangements laid down for each area. Decisions of the European Council shall be implemented in accordance with the procedures provided for in the Treaties.

2.    The High Representative of the Union for Foreign Affairs and Security Policy, for the area of common foreign and security policy, and the Commission, for other areas of external action, may submit joint proposals to the Council.

CHAPTER 2

SPECIFIC PROVISIONS ON THE COMMON FOREIGN AND SECURITY POLICY

SECTION 1

COMMON PROVISIONS

*Article 23*

The Union's action on the international scene, pursuant to this Chapter, shall be guided by the principles, shall pursue the objectives of, and be conducted in accordance with, the general provisions laid down in Chapter 1.

*Article 24*

(ex Article 11 TEU)

1.    The Union's competence in matters of common foreign and security policy shall cover all areas of foreign policy and all questions relating to the Union's security, including the progressive framing of a common defence policy that might lead to a common defence.

The common foreign and security policy is subject to specific rules and procedures. It shall be defined and implemented by the European Council and the Council acting unanimously, except where the Treaties provide otherwise. The adoption of legislative acts shall be excluded. The common foreign and security policy shall be put into effect by the High Representative of the Union for Foreign Affairs and Security Policy and by Member States, in accordance with the Treaties. The specific role of the European Parliament and of the Commission in this area is defined by the Treaties. The Court of Justice of the European Union shall not have jurisdiction with respect to these provisions, with the exception of its jurisdiction to monitor compliance with Article 40 of this Treaty and to review the legality of certain decisions as provided for by the second paragraph of Article 275 of the Treaty on the Functioning of the European Union.

2.    Within the framework of the principles and objectives of its external action, the Union shall conduct, define and implement a common foreign and security policy, based on the development of mutual political solidarity among Member States, the identification of questions of general interest and the achievement of an ever-increasing degree of convergence of Member States' actions.

3.    The Member States shall support the Union's external and security policy actively and unreservedly in a spirit of loyalty and mutual solidarity and shall comply with the Union's action in this area.

EN

The Member States shall work together to enhance and develop their mutual political solidarity. They shall refrain from any action which is contrary to the interests of the Union or likely to impair its effectiveness as a cohesive force in international relations.

The Council and the High Representative shall ensure compliance with these principles.

### Article 25
(ex Article 12 TEU)

The Union shall conduct the common foreign and security policy by:

(a) defining the general guidelines;

(b) adopting decisions defining:

   (i) actions to be undertaken by the Union;

   (ii) positions to be taken by the Union;

   (iii) arrangements for the implementation of the decisions referred to in points (i) and (ii);

   and by

(c) strengthening systematic cooperation between Member States in the conduct of policy.

### Article 26
(ex Article 13 TEU)

1.    The European Council shall identify the Union's strategic interests, determine the objectives of and define general guidelines for the common foreign and security policy, including for matters with defence implications. It shall adopt the necessary decisions.

If international developments so require, the President of the European Council shall convene an extraordinary meeting of the European Council in order to define the strategic lines of the Union's policy in the face of such developments.

2.    The Council shall frame the common foreign and security policy and take the decisions necessary for defining and implementing it on the basis of the general guidelines and strategic lines defined by the European Council.

The Council and the High Representative of the Union for Foreign Affairs and Security Policy shall ensure the unity, consistency and effectiveness of action by the Union.

3.    The common foreign and security policy shall be put into effect by the High Representative and by the Member States, using national and Union resources.

## Article 27

1.    The High Representative of the Union for Foreign Affairs and Security Policy, who shall chair the Foreign Affairs Council, shall contribute through his proposals to the development of the common foreign and security policy and shall ensure implementation of the decisions adopted by the European Council and the Council.

2.    The High Representative shall represent the Union for matters relating to the common foreign and security policy. He shall conduct political dialogue with third parties on the Union's behalf and shall express the Union's position in international organisations and at international conferences.

3.    In fulfilling his mandate, the High Representative shall be assisted by a European External Action Service. This service shall work in cooperation with the diplomatic services of the Member States and shall comprise officials from relevant departments of the General Secretariat of the Council and of the Commission as well as staff seconded from national diplomatic services of the Member States. The organisation and functioning of the European External Action Service shall be established by a decision of the Council. The Council shall act on a proposal from the High Representative after consulting the European Parliament and after obtaining the consent of the Commission.

## Article 28
### (ex Article 14 TEU)

1.    Where the international situation requires operational action by the Union, the Council shall adopt the necessary decisions. They shall lay down their objectives, scope, the means to be made available to the Union, if necessary their duration, and the conditions for their implementation.

If there is a change in circumstances having a substantial effect on a question subject to such a decision, the Council shall review the principles and objectives of that decision and take the necessary decisions.

2.    Decisions referred to in paragraph 1 shall commit the Member States in the positions they adopt and in the conduct of their activity.

3.    Whenever there is any plan to adopt a national position or take national action pursuant to a decision as referred to in paragraph 1, information shall be provided by the Member State concerned in time to allow, if necessary, for prior consultations within the Council. The obligation to provide prior information shall not apply to measures which are merely a national transposition of Council decisions.

4.    In cases of imperative need arising from changes in the situation and failing a review of the Council decision as referred to in paragraph 1, Member States may take the necessary measures as a matter of urgency having regard to the general objectives of that decision. The Member State concerned shall inform the Council immediately of any such measures.

5.    Should there be any major difficulties in implementing a decision as referred to in this Article, a Member State shall refer them to the Council which shall discuss them and seek appropriate solutions. Such solutions shall not run counter to the objectives of the decision referred to in paragraph 1 or impair its effectiveness.

### Article 29
(ex Article 15 TEU)

The Council shall adopt decisions which shall define the approach of the Union to a particular matter of a geographical or thematic nature. Member States shall ensure that their national policies conform to the Union positions.

### Article 30
(ex Article 22 TEU)

1.    Any Member State, the High Representative of the Union for Foreign Affairs and Security Policy, or the High Representative with the Commission's support, may refer any question relating to the common foreign and security policy to the Council and may submit to it, respectively, initiatives or proposals.

2.    In cases requiring a rapid decision, the High Representative, of his own motion, or at the request of a Member State, shall convene an extraordinary Council meeting within 48 hours or, in an emergency, within a shorter period.

### Article 31
(ex Article 23 TEU)

1.    Decisions under this Chapter shall be taken by the European Council and the Council acting unanimously, except where this Chapter provides otherwise. The adoption of legislative acts shall be excluded.

When abstaining in a vote, any member of the Council may qualify its abstention by making a formal declaration under the present subparagraph. In that case, it shall not be obliged to apply the decision, but shall accept that the decision commits the Union. In a spirit of mutual solidarity, the Member State concerned shall refrain from any action likely to conflict with or impede Union action based on that decision and the other Member States shall respect its position. If the members of the Council qualifying their abstention in this way represent at least one third of the Member States comprising at least one third of the population of the Union, the decision shall not be adopted.

2.    By derogation from the provisions of paragraph 1, the Council shall act by qualified majority:

— when adopting a decision defining a Union action or position on the basis of a decision of the European Council relating to the Union's strategic interests and objectives, as referred to in Article 22(1),

— when adopting a decision defining a Union action or position, on a proposal which the High Representative of the Union for Foreign Affairs and Security Policy has presented following a specific request from the European Council, made on its own initiative or that of the High Representative,

— when adopting any decision implementing a decision defining a Union action or position,

— when appointing a special representative in accordance with Article 33.

If a member of the Council declares that, for vital and stated reasons of national policy, it intends to oppose the adoption of a decision to be taken by qualified majority, a vote shall not be taken. The High Representative will, in close consultation with the Member State involved, search for a solution acceptable to it. If he does not succeed, the Council may, acting by a qualified majority, request that the matter be referred to the European Council for a decision by unanimity.

3.    The European Council may unanimously adopt a decision stipulating that the Council shall act by a qualified majority in cases other than those referred to in paragraph 2.

4.    Paragraphs 2 and 3 shall not apply to decisions having military or defence implications.

5.    For procedural questions, the Council shall act by a majority of its members.

## Article 32
### (ex Article 16 TEU)

Member States shall consult one another within the European Council and the Council on any matter of foreign and security policy of general interest in order to determine a common approach. Before undertaking any action on the international scene or entering into any commitment which could affect the Union's interests, each Member State shall consult the others within the European Council or the Council. Member States shall ensure, through the convergence of their actions, that the Union is able to assert its interests and values on the international scene. Member States shall show mutual solidarity.

When the European Council or the Council has defined a common approach of the Union within the meaning of the first paragraph, the High Representative of the Union for Foreign Affairs and Security Policy and the Ministers for Foreign Affairs of the Member States shall coordinate their activities within the Council.

The diplomatic missions of the Member States and the Union delegations in third countries and at international organisations shall cooperate and shall contribute to formulating and implementing the common approach.

## Article 33
### (ex Article 18 TEU)

The Council may, on a proposal from the High Representative of the Union for Foreign Affairs and Security Policy, appoint a special representative with a mandate in relation to particular policy issues. The special representative shall carry out his mandate under the authority of the High Representative.

## Article 34

(ex Article 19 TEU)

1.    Member States shall coordinate their action in international organisations and at international conferences. They shall uphold the Union's positions in such forums. The High Representative of the Union for Foreign Affairs and Security Policy shall organise this coordination.

In international organisations and at international conferences where not all the Member States participate, those which do take part shall uphold the Union's positions.

2.    In accordance with Article 24(3), Member States represented in international organisations or international conferences where not all the Member States participate shall keep the other Member States and the High Representative informed of any matter of common interest.

Member States which are also members of the United Nations Security Council will concert and keep the other Member States and the High Representative fully informed. Member States which are members of the Security Council will, in the execution of their functions, defend the positions and the interests of the Union, without prejudice to their responsibilities under the provisions of the United Nations Charter.

When the Union has defined a position on a subject which is on the United Nations Security Council agenda, those Member States which sit on the Security Council shall request that the High Representative be invited to present the Union's position.

## Article 35

(ex Article 20 TEU)

The diplomatic and consular missions of the Member States and the Union delegations in third countries and international conferences, and their representations to international organisations, shall cooperate in ensuring that decisions defining Union positions and actions adopted pursuant to this Chapter are complied with and implemented.

They shall step up cooperation by exchanging information and carrying out joint assessments.

They shall contribute to the implementation of the right of citizens of the Union to protection in the territory of third countries as referred to in Article 20(2)(c) of the Treaty on the Functioning of the European Union and of the measures adopted pursuant to Article 23 of that Treaty.

## Article 36

(ex Article 21 TEU)

The High Representative of the Union for Foreign Affairs and Security Policy shall regularly consult the European Parliament on the main aspects and the basic choices of the common foreign and security policy and the common security and defence policy and inform it of how those policies evolve. He shall ensure that the views of the European Parliament are duly taken into consideration. Special representatives may be involved in briefing the European Parliament.

The European Parliament may address questions or make recommendations to the Council or the High Representative. Twice a year it shall hold a debate on progress in implementing the common foreign and security policy, including the common security and defence policy.

### Article 37

(ex Article 24 TEU)

The Union may conclude agreements with one or more States or international organisations in areas covered by this Chapter.

### Article 38

(ex Article 25 TEU)

Without prejudice to Article 240 of the Treaty on the Functioning of the European Union, a Political and Security Committee shall monitor the international situation in the areas covered by the common foreign and security policy and contribute to the definition of policies by delivering opinions to the Council at the request of the Council or of the High Representative of the Union for Foreign Affairs and Security Policy or on its own initiative. It shall also monitor the implementation of agreed policies, without prejudice to the powers of the High Representative.

Within the scope of this Chapter, the Political and Security Committee shall exercise, under the responsibility of the Council and of the High Representative, the political control and strategic direction of the crisis management operations referred to in Article 43.

The Council may authorise the Committee, for the purpose and for the duration of a crisis management operation, as determined by the Council, to take the relevant decisions concerning the political control and strategic direction of the operation.

### Article 39

In accordance with Article 16 of the Treaty on the Functioning of the European Union and by way of derogation from paragraph 2 thereof, the Council shall adopt a decision laying down the rules relating to the protection of individuals with regard to the processing of personal data by the Member States when carrying out activities which fall within the scope of this Chapter, and the rules relating to the free movement of such data. Compliance with these rules shall be subject to the control of independent authorities.

## Article 40
### (ex Article 47 TEU)

The implementation of the common foreign and security policy shall not affect the application of the procedures and the extent of the powers of the institutions laid down by the Treaties for the exercise of the Union competences referred to in Articles 3 to 6 of the Treaty on the Functioning of the European Union.

Similarly, the implementation of the policies listed in those Articles shall not affect the application of the procedures and the extent of the powers of the institutions laid down by the Treaties for the exercise of the Union competences under this Chapter.

## Article 41
### (ex Article 28 TEU)

1.    Administrative expenditure to which the implementation of this Chapter gives rise for the institutions shall be charged to the Union budget.

2.    Operating expenditure to which the implementation of this Chapter gives rise shall also be charged to the Union budget, except for such expenditure arising from operations having military or defence implications and cases where the Council acting unanimously decides otherwise.

In cases where expenditure is not charged to the Union budget, it shall be charged to the Member States in accordance with the gross national product scale, unless the Council acting unanimously decides otherwise. As for expenditure arising from operations having military or defence implications, Member States whose representatives in the Council have made a formal declaration under Article 31(1), second subparagraph, shall not be obliged to contribute to the financing thereof.

3.    The Council shall adopt a decision establishing the specific procedures for guaranteeing rapid access to appropriations in the Union budget for urgent financing of initiatives in the framework of the common foreign and security policy, and in particular for preparatory activities for the tasks referred to in Article 42(1) and Article 43. It shall act after consulting the European Parliament.

Preparatory activities for the tasks referred to in Article 42(1) and Article 43 which are not charged to the Union budget shall be financed by a start-up fund made up of Member States' contributions.

The Council shall adopt by a qualified majority, on a proposal from the High Representative of the Union for Foreign Affairs and Security Policy, decisions establishing:

(a)  the procedures for setting up and financing the start-up fund, in particular the amounts allocated to the fund;

(b)  the procedures for administering the start-up fund;

(c) the financial control procedures.


When the task planned in accordance with Article 42(1) and Article 43 cannot be charged to the Union budget, the Council shall authorise the High Representative to use the fund. The High Representative shall report to the Council on the implementation of this remit.


SECTION 2

PROVISIONS ON THE COMMON SECURITY AND DEFENCE POLICY

*Article 42*

(ex Article 17 TEU)

1.    The common security and defence policy shall be an integral part of the common foreign and security policy. It shall provide the Union with an operational capacity drawing on civilian and military assets. The Union may use them on missions outside the Union for peace-keeping, conflict prevention and strengthening international security in accordance with the principles of the United Nations Charter. The performance of these tasks shall be undertaken using capabilities provided by the Member States.


2.    The common security and defence policy shall include the progressive framing of a common Union defence policy. This will lead to a common defence, when the European Council, acting unanimously, so decides. It shall in that case recommend to the Member States the adoption of such a decision in accordance with their respective constitutional requirements.


The policy of the Union in accordance with this Section shall not prejudice the specific character of the security and defence policy of certain Member States and shall respect the obligations of certain Member States, which see their common defence realised in the North Atlantic Treaty Organisation (NATO), under the North Atlantic Treaty and be compatible with the common security and defence policy established within that framework.


3.    Member States shall make civilian and military capabilities available to the Union for the implementation of the common security and defence policy, to contribute to the objectives defined by the Council. Those Member States which together establish multinational forces may also make them available to the common security and defence policy.


Member States shall undertake progressively to improve their military capabilities. The Agency in the field of defence capabilities development, research, acquisition and armaments (hereinafter referred to as 'the European Defence Agency') shall identify operational requirements, shall promote measures to satisfy those requirements, shall contribute to identifying and, where appropriate, implementing any measure needed to strengthen the industrial and technological base of the defence sector, shall participate in defining a European capabilities and armaments policy, and shall assist the Council in evaluating the improvement of military capabilities.

4.    Decisions relating to the common security and defence policy, including those initiating a mission as referred to in this Article, shall be adopted by the Council acting unanimously on a proposal from the High Representative of the Union for Foreign Affairs and Security Policy or an initiative from a Member State. The High Representative may propose the use of both national resources and Union instruments, together with the Commission where appropriate.

5.    The Council may entrust the execution of a task, within the Union framework, to a group of Member States in order to protect the Union's values and serve its interests. The execution of such a task shall be governed by Article 44.

6.    Those Member States whose military capabilities fulfil higher criteria and which have made more binding commitments to one another in this area with a view to the most demanding missions shall establish permanent structured cooperation within the Union framework. Such cooperation shall be governed by Article 46. It shall not affect the provisions of Article 43.

7.    If a Member State is the victim of armed aggression on its territory, the other Member States shall have towards it an obligation of aid and assistance by all the means in their power, in accordance with Article 51 of the United Nations Charter. This shall not prejudice the specific character of the security and defence policy of certain Member States.

Commitments and cooperation in this area shall be consistent with commitments under the North Atlantic Treaty Organisation, which, for those States which are members of it, remains the foundation of their collective defence and the forum for its implementation.

## Article 43

1.    The tasks referred to in Article 42(1), in the course of which the Union may use civilian and military means, shall include joint disarmament operations, humanitarian and rescue tasks, military advice and assistance tasks, conflict prevention and peace-keeping tasks, tasks of combat forces in crisis management, including peace-making and post-conflict stabilisation. All these tasks may contribute to the fight against terrorism, including by supporting third countries in combating terrorism in their territories.

2.    The Council shall adopt decisions relating to the tasks referred to in paragraph 1, defining their objectives and scope and the general conditions for their implementation. The High Representative of the Union for Foreign Affairs and Security Policy, acting under the authority of the Council and in close and constant contact with the Political and Security Committee, shall ensure coordination of the civilian and military aspects of such tasks.

## Article 44

1.    Within the framework of the decisions adopted in accordance with Article 43, the Council may entrust the implementation of a task to a group of Member States which are willing and have the necessary capability for such a task. Those Member States, in association with the High Representative of the Union for Foreign Affairs and Security Policy, shall agree among themselves on the management of the task.

2.    Member States participating in the task shall keep the Council regularly informed of its progress on their own initiative or at the request of another Member State. Those States shall inform the Council immediately should the completion of the task entail major consequences or require amendment of the objective, scope and conditions determined for the task in the decisions referred to in paragraph 1. In such cases, the Council shall adopt the necessary decisions.

### Article 45

1.    The European Defence Agency referred to in Article 42(3), subject to the authority of the Council, shall have as its task to:

(a) contribute to identifying the Member States' military capability objectives and evaluating observance of the capability commitments given by the Member States;

(b) promote harmonisation of operational needs and adoption of effective, compatible procurement methods;

(c) propose multilateral projects to fulfil the objectives in terms of military capabilities, ensure coordination of the programmes implemented by the Member States and management of specific cooperation programmes;

(d) support defence technology research, and coordinate and plan joint research activities and the study of technical solutions meeting future operational needs;

(e) contribute to identifying and, if necessary, implementing any useful measure for strengthening the industrial and technological base of the defence sector and for improving the effectiveness of military expenditure.

2.    The European Defence Agency shall be open to all Member States wishing to be part of it. The Council, acting by a qualified majority, shall adopt a decision defining the Agency's statute, seat and operational rules. That decision should take account of the level of effective participation in the Agency's activities. Specific groups shall be set up within the Agency bringing together Member States engaged in joint projects. The Agency shall carry out its tasks in liaison with the Commission where necessary.

### Article 46

1.    Those Member States which wish to participate in the permanent structured cooperation referred to in Article 42(6), which fulfil the criteria and have made the commitments on military capabilities set out in the Protocol on permanent structured cooperation, shall notify their intention to the Council and to the High Representative of the Union for Foreign Affairs and Security Policy.

2.    Within three months following the notification referred to in paragraph 1 the Council shall adopt a decision establishing permanent structured cooperation and determining the list of participating Member States. The Council shall act by a qualified majority after consulting the High Representative.

3.     Any Member State which, at a later stage, wishes to participate in the permanent structured cooperation shall notify its intention to the Council and to the High Representative.

The Council shall adopt a decision confirming the participation of the Member State concerned which fulfils the criteria and makes the commitments referred to in Articles 1 and 2 of the Protocol on permanent structured cooperation. The Council shall act by a qualified majority after consulting the High Representative. Only members of the Council representing the participating Member States shall take part in the vote.

A qualified majority shall be defined in accordance with Article 238(3)(a) of the Treaty on the Functioning of the European Union.

4.     If a participating Member State no longer fulfils the criteria or is no longer able to meet the commitments referred to in Articles 1 and 2 of the Protocol on permanent structured cooperation, the Council may adopt a decision suspending the participation of the Member State concerned.

The Council shall act by a qualified majority. Only members of the Council representing the participating Member States, with the exception of the Member State in question, shall take part in the vote.

A qualified majority shall be defined in accordance with Article 238(3)(a) of the Treaty on the Functioning of the European Union.

5.     Any participating Member State which wishes to withdraw from permanent structured cooperation shall notify its intention to the Council, which shall take note that the Member State in question has ceased to participate.

6.     The decisions and recommendations of the Council within the framework of permanent structured cooperation, other than those provided for in paragraphs 2 to 5, shall be adopted by unanimity. For the purposes of this paragraph, unanimity shall be constituted by the votes of the representatives of the participating Member States only.

## TITLE VI

### FINAL PROVISIONS

*Article 47*

The Union shall have legal personality.

*Article 48*

(ex Article 48 TEU)

1.     The Treaties may be amended in accordance with an ordinary revision procedure. They may also be amended in accordance with simplified revision procedures.

*Ordinary revision procedure*

2.    The Government of any Member State, the European Parliament or the Commission may submit to the Council proposals for the amendment of the Treaties. These proposals may, *inter alia*, serve either to increase or to reduce the competences conferred on the Union in the Treaties. These proposals shall be submitted to the European Council by the Council and the national Parliaments shall be notified.

3.    If the European Council, after consulting the European Parliament and the Commission, adopts by a simple majority a decision in favour of examining the proposed amendments, the President of the European Council shall convene a Convention composed of representatives of the national Parliaments, of the Heads of State or Government of the Member States, of the European Parliament and of the Commission. The European Central Bank shall also be consulted in the case of institutional changes in the monetary area. The Convention shall examine the proposals for amendments and shall adopt by consensus a recommendation to a conference of representatives of the governments of the Member States as provided for in paragraph 4.

The European Council may decide by a simple majority, after obtaining the consent of the European Parliament, not to convene a Convention should this not be justified by the extent of the proposed amendments. In the latter case, the European Council shall define the terms of reference for a conference of representatives of the governments of the Member States.

4.    A conference of representatives of the governments of the Member States shall be convened by the President of the Council for the purpose of determining by common accord the amendments to be made to the Treaties.

The amendments shall enter into force after being ratified by all the Member States in accordance with their respective constitutional requirements.

5.    If, two years after the signature of a treaty amending the Treaties, four fifths of the Member States have ratified it and one or more Member States have encountered difficulties in proceeding with ratification, the matter shall be referred to the European Council.

*Simplified revision procedures*

6.    The Government of any Member State, the European Parliament or the Commission may submit to the European Council proposals for revising all or part of the provisions of Part Three of the Treaty on the Functioning of the European Union relating to the internal policies and action of the Union.

The European Council may adopt a decision amending all or part of the provisions of Part Three of the Treaty on the Functioning of the European Union. The European Council shall act by unanimity after consulting the European Parliament and the Commission, and the European Central Bank in the case of institutional changes in the monetary area. That decision shall not enter into force until it is approved by the Member States in accordance with their respective constitutional requirements.

The decision referred to in the second subparagraph shall not increase the competences conferred on the Union in the Treaties.

7.    Where the Treaty on the Functioning of the European Union or Title V of this Treaty provides for the Council to act by unanimity in a given area or case, the European Council may adopt a decision authorising the Council to act by a qualified majority in that area or in that case. This subparagraph shall not apply to decisions with military implications or those in the area of defence.

Where the Treaty on the Functioning of the European Union provides for legislative acts to be adopted by the Council in accordance with a special legislative procedure, the European Council may adopt a decision allowing for the adoption of such acts in accordance with the ordinary legislative procedure.

Any initiative taken by the European Council on the basis of the first or the second subparagraph shall be notified to the national Parliaments. If a national Parliament makes known its opposition within six months of the date of such notification, the decision referred to in the first or the second subparagraph shall not be adopted. In the absence of opposition, the European Council may adopt the decision.

For the adoption of the decisions referred to in the first and second subparagraphs, the European Council shall act by unanimity after obtaining the consent of the European Parliament, which shall be given by a majority of its component members.

### Article 49
(ex Article 49 TEU)

Any European State which respects the values referred to in Article 2 and is committed to promoting them may apply to become a member of the Union. The European Parliament and national Parliaments shall be notified of this application. The applicant State shall address its application to the Council, which shall act unanimously after consulting the Commission and after receiving the consent of the European Parliament, which shall act by a majority of its component members. The conditions of eligibility agreed upon by the European Council shall be taken into account.

The conditions of admission and the adjustments to the Treaties on which the Union is founded, which such admission entails, shall be the subject of an agreement between the Member States and the applicant State. This agreement shall be submitted for ratification by all the contracting States in accordance with their respective constitutional requirements.

### Article 50

1.    Any Member State may decide to withdraw from the Union in accordance with its own constitutional requirements.

2.    A Member State which decides to withdraw shall notify the European Council of its intention. In the light of the guidelines provided by the European Council, the Union shall negotiate and conclude an agreement with that State, setting out the arrangements for its withdrawal, taking account of the framework for its future relationship with the Union. That agreement shall be negotiated in accordance with Article 218(3) of the Treaty on the Functioning of the European Union. It shall be concluded on behalf of the Union by the Council, acting by a qualified majority, after obtaining the consent of the European Parliament.

3.    The Treaties shall cease to apply to the State in question from the date of entry into force of the withdrawal agreement or, failing that, two years after the notification referred to in paragraph 2, unless the European Council, in agreement with the Member State concerned, unanimously decides to extend this period.

4.    For the purposes of paragraphs 2 and 3, the member of the European Council or of the Council representing the withdrawing Member State shall not participate in the discussions of the European Council or Council or in decisions concerning it.

A qualified majority shall be defined in accordance with Article 238(3)(b) of the Treaty on the Functioning of the European Union.

5.    If a State which has withdrawn from the Union asks to rejoin, its request shall be subject to the procedure referred to in Article 49.

### Article 51

The Protocols and Annexes to the Treaties shall form an integral part thereof.

### Article 52

1.    The Treaties shall apply to the Kingdom of Belgium, the Republic of Bulgaria, the Czech Republic, the Kingdom of Denmark, the Federal Republic of Germany, the Republic of Estonia, Ireland, the Hellenic Republic, the Kingdom of Spain, the French Republic, the Italian Republic, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Grand Duchy of Luxembourg, the Republic of Hungary, the Republic of Malta, the Kingdom of the Netherlands, the Republic of Austria, the Republic of Poland, the Portuguese Republic, Romania, the Republic of Slovenia, the Slovak Republic, the Republic of Finland, the Kingdom of Sweden and the United Kingdom of Great Britain and Northern Ireland.

2.    The territorial scope of the Treaties is specified in Article 355 of the Treaty on the Functioning of the European Union.

### Article 53
(ex Article 51 TEU)

This Treaty is concluded for an unlimited period.

### Article 54
(ex Article 52 TEU)

1.    This Treaty shall be ratified by the High Contracting Parties in accordance with their respective constitutional requirements. The instruments of ratification shall be deposited with the Government of the Italian Republic.

26.10.2012     EN     Official Journal of the European Union     C 326/45

2.    This Treaty shall enter into force on 1 January 1993, provided that all the Instruments of ratification have been deposited, or, failing that, on the first day of the month following the deposit of the Instrument of ratification by the last signatory State to take this step.

### Article 55
#### (ex Article 53 TEU)

1.    This Treaty, drawn up in a single original in the Bulgarian, Czech, Danish, Dutch, English, Estonian, Finnish, French, German, Greek, Hungarian, Irish, Italian, Latvian, Lithuanian, Maltese, Polish, Portuguese, Romanian, Slovak, Slovenian, Spanish and Swedish languages, the texts in each of these languages being equally authentic, shall be deposited in the archives of the Government of the Italian Republic, which will transmit a certified copy to each of the governments of the other signatory States.

2.    This Treaty may also be translated into any other languages as determined by Member States among those which, in accordance with their constitutional order, enjoy official status in all or part of their territory. A certified copy of such translations shall be provided by the Member States concerned to be deposited in the archives of the Council.

IN WITNESS WHEREOF the undersigned Plenipotentiaries have signed this Treaty.

Done at Maastricht on the seventh day of February in the year one thousand nine hundred and ninety-two.

(*List of signatories not reproduced*)

─────

26.10.2012    EN    Official Journal of the European Union    C 326/47

# CONSOLIDATED VERSION

# OF

# THE TREATY ON THE FUNCTIONING OF THE

# EUROPEAN UNION

# PREAMBLE

HIS MAJESTY THE KING OF THE BELGIANS, THE PRESIDENT OF THE FEDERAL REPUBLIC OF GERMANY, THE PRESIDENT OF THE FRENCH REPUBLIC, THE PRESIDENT OF THE ITALIAN REPUBLIC, HER ROYAL HIGHNESS THE GRAND DUCHESS OF LUXEMBOURG, HER MAJESTY THE QUEEN OF THE NETHERLANDS, (¹)

DETERMINED to lay the foundations of an ever closer union among the peoples of Europe,

RESOLVED to ensure the economic and social progress of their States by common action to eliminate the barriers which divide Europe,

AFFIRMING as the essential objective of their efforts the constant improvements of the living and working conditions of their peoples,

RECOGNISING that the removal of existing obstacles calls for concerted action in order to guarantee steady expansion, balanced trade and fair competition,

ANXIOUS to strengthen the unity of their economies and to ensure their harmonious development by reducing the differences existing between the various regions and the backwardness of the less favoured regions,

DESIRING to contribute, by means of a common commercial policy, to the progressive abolition of restrictions on international trade,

INTENDING to confirm the solidarity which binds Europe and the overseas countries and desiring to ensure the development of their prosperity, in accordance with the principles of the Charter of the United Nations,

RESOLVED by thus pooling their resources to preserve and strengthen peace and liberty, and calling upon the other peoples of Europe who share their ideal to join in their efforts,

DETERMINED to promote the development of the highest possible level of knowledge for their peoples through a wide access to education and through its continuous updating,

and to this end HAVE DESIGNATED as their Plenipotentiaries:

*(List of plenipotentiaries not reproduced)*

WHO, having exchanged their full powers, found in good and due form, have agreed as follows.

---

(¹) The Republic of Bulgaria, the Czech Republic, the Kingdom of Denmark, the Republic of Estonia, Ireland, the Hellenic Republic, the Kingdom of Spain, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the Republic of Austria, the Republic of Poland, the Portuguese Republic, Romania, the Republic of Slovenia, the Slovak Republic, the Republic of Finland, the Kingdom of Sweden and the United Kingdom of Great Britain and Northern Ireland have since become members of the European Union.

# PART ONE

## PRINCIPLES

### Article 1

1.    This Treaty organises the functioning of the Union and determines the areas of, delimitation of, and arrangements for exercising its competences.

2.    This Treaty and the Treaty on European Union constitute the Treaties on which the Union is founded. These two Treaties, which have the same legal value, shall be referred to as 'the Treaties'.

## TITLE I

### CATEGORIES AND AREAS OF UNION COMPETENCE

### Article 2

1.    When the Treaties confer on the Union exclusive competence in a specific area, only the Union may legislate and adopt legally binding acts, the Member States being able to do so themselves only if so empowered by the Union or for the implementation of Union acts.

2.    When the Treaties confer on the Union a competence shared with the Member States in a specific area, the Union and the Member States may legislate and adopt legally binding acts in that area. The Member States shall exercise their competence to the extent that the Union has not exercised its competence. The Member States shall again exercise their competence to the extent that the Union has decided to cease exercising its competence.

3.    The Member States shall coordinate their economic and employment policies within arrangements as determined by this Treaty, which the Union shall have competence to provide.

4.    The Union shall have competence, in accordance with the provisions of the Treaty on European Union, to define and implement a common foreign and security policy, including the progressive framing of a common defence policy.

5.    In certain areas and under the conditions laid down in the Treaties, the Union shall have competence to carry out actions to support, coordinate or supplement the actions of the Member States, without thereby superseding their competence in these areas.

Legally binding acts of the Union adopted on the basis of the provisions of the Treaties relating to these areas shall not entail harmonisation of Member States' laws or regulations.

6.    The scope of and arrangements for exercising the Union's competences shall be determined by the provisions of the Treaties relating to each area.

*Article 3*

1.    The Union shall have exclusive competence in the following areas:

(a)  customs union;

(b)  the establishing of the competition rules necessary for the functioning of the internal market;

(c)  monetary policy for the Member States whose currency is the euro;

(d)  the conservation of marine biological resources under the common fisheries policy;

(e)  common commercial policy.

2.    The Union shall also have exclusive competence for the conclusion of an international agreement when its conclusion is provided for in a legislative act of the Union or is necessary to enable the Union to exercise its internal competence, or in so far as its conclusion may affect common rules or alter their scope.

*Article 4*

1.    The Union shall share competence with the Member States where the Treaties confer on it a competence which does not relate to the areas referred to in Articles 3 and 6.

2.    Shared competence between the Union and the Member States applies in the following principal areas:

(a)  internal market;

(b)  social policy, for the aspects defined in this Treaty;

(c)  economic, social and territorial cohesion;

(d)  agriculture and fisheries, excluding the conservation of marine biological resources;

(e)  environment;

(f)  consumer protection;

(g)  transport;

(h)  trans-European networks;

(i)  energy;

C 326/52      EN      Official Journal of the European Union      26.10.2012

(j)   area of freedom, security and justice;

(k)  common safety concerns in public health matters, for the aspects defined in this Treaty.

3.    In the areas of research, technological development and space, the Union shall have competence to carry out activities, in particular to define and implement programmes; however, the exercise of that competence shall not result in Member States being prevented from exercising theirs.

4.    In the areas of development cooperation and humanitarian aid, the Union shall have competence to carry out activities and conduct a common policy; however, the exercise of that competence shall not result in Member States being prevented from exercising theirs.

### Article 5

1.    The Member States shall coordinate their economic policies within the Union. To this end, the Council shall adopt measures, in particular broad guidelines for these policies.

Specific provisions shall apply to those Member States whose currency is the euro.

2.    The Union shall take measures to ensure coordination of the employment policies of the Member States, in particular by defining guidelines for these policies.

3.    The Union may take initiatives to ensure coordination of Member States' social policies.

### Article 6

The Union shall have competence to carry out actions to support, coordinate or supplement the actions of the Member States. The areas of such action shall, at European level, be:

(a)  protection and improvement of human health;

(b)  industry;

(c)  culture;

(d)  tourism;

(e)  education, vocational training, youth and sport;

26.10.2012        EN        Official Journal of the European Union        C 326/53

(f)  civil protection;

(g)  administrative cooperation.

TITLE II

**PROVISIONS HAVING GENERAL APPLICATION**

*Article 7*

The Union shall ensure consistency between its policies and activities, taking all of its objectives into account and in accordance with the principle of conferral of powers.

*Article 8*

(ex Article 3(2) TEC) [1]

In all its activities, the Union shall aim to eliminate inequalities, and to promote equality, between men and women.

*Article 9*

In defining and implementing its policies and activities, the Union shall take into account requirements linked to the promotion of a high level of employment, the guarantee of adequate social protection, the fight against social exclusion, and a high level of education, training and protection of human health.

*Article 10*

In defining and implementing its policies and activities, the Union shall aim to combat discrimination based on sex, racial or ethnic origin, religion or belief, disability, age or sexual orientation.

*Article 11*

(ex Article 6 TEC)

Environmental protection requirements must be integrated into the definition and implementation of the Union's policies and activities, in particular with a view to promoting sustainable development.

_____
[1]  These references are merely indicative. For more ample information, please refer to the tables of equivalences between the old and the new numbering of the Treaties.

## Article 12

(ex Article 153(2) TEC)

Consumer protection requirements shall be taken into account in defining and implementing other Union policies and activities.

## Article 13

In formulating and implementing the Union's agriculture, fisheries, transport, internal market, research and technological development and space policies, the Union and the Member States shall, since animals are sentient beings, pay full regard to the welfare requirements of animals, while respecting the legislative or administrative provisions and customs of the Member States relating in particular to religious rites, cultural traditions and regional heritage.

## Article 14

(ex Article 16 TEC)

Without prejudice to Article 4 of the Treaty on European Union or to Articles 93, 106 and 107 of this Treaty, and given the place occupied by services of general economic interest in the shared values of the Union as well as their role in promoting social and territorial cohesion, the Union and the Member States, each within their respective powers and within the scope of application of the Treaties, shall take care that such services operate on the basis of principles and conditions, particularly economic and financial conditions, which enable them to fulfil their missions. The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall establish these principles and set these conditions without prejudice to the competence of Member States, in compliance with the Treaties, to provide, to commission and to fund such services.

## Article 15

(ex Article 255 TEC)

1.    In order to promote good governance and ensure the participation of civil society, the Union's institutions, bodies, offices and agencies shall conduct their work as openly as possible.

2.    The European Parliament shall meet in public, as shall the Council when considering and voting on a draft legislative act.

3.    Any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, shall have a right of access to documents of the Union's institutions, bodies, offices and agencies, whatever their medium, subject to the principles and the conditions to be defined in accordance with this paragraph.

General principles and limits on grounds of public or private interest governing this right of access to documents shall be determined by the European Parliament and the Council, by means of regulations, acting in accordance with the ordinary legislative procedure.

Each institution, body, office or agency shall ensure that its proceedings are transparent and shall elaborate in its own Rules of Procedure specific provisions regarding access to its documents, in accordance with the regulations referred to in the second subparagraph.

The Court of Justice of the European Union, the European Central Bank and the European Investment Bank shall be subject to this paragraph only when exercising their administrative tasks.

The European Parliament and the Council shall ensure publication of the documents relating to the legislative procedures under the terms laid down by the regulations referred to in the second subparagraph.

## Article 16

### (ex Article 286 TEC)

1.    Everyone has the right to the protection of personal data concerning them.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall lay down the rules relating to the protection of individuals with regard to the processing of personal data by Union institutions, bodies, offices and agencies, and by the Member States when carrying out activities which fall within the scope of Union law, and the rules relating to the free movement of such data. Compliance with these rules shall be subject to the control of independent authorities.

The rules adopted on the basis of this Article shall be without prejudice to the specific rules laid down in Article 39 of the Treaty on European Union.

## Article 17

1.    The Union respects and does not prejudice the status under national law of churches and religious associations or communities in the Member States.

2.    The Union equally respects the status under national law of philosophical and non-confessional organisations.

3.    Recognising their identity and their specific contribution, the Union shall maintain an open, transparent and regular dialogue with these churches and organisations.

# PART TWO

## NON-DISCRIMINATION AND CITIZENSHIP OF THE UNION

### Article 18

(ex Article 12 TEC)

Within the scope of application of the Treaties, and without prejudice to any special provisions contained therein, any discrimination on grounds of nationality shall be prohibited.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may adopt rules designed to prohibit such discrimination.

### Article 19

(ex Article 13 TEC)

1.    Without prejudice to the other provisions of the Treaties and within the limits of the powers conferred by them upon the Union, the Council, acting unanimously in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, may take appropriate action to combat discrimination based on sex, racial or ethnic origin, religion or belief, disability, age or sexual orientation.

2.    By way of derogation from paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may adopt the basic principles of Union incentive measures, excluding any harmonisation of the laws and regulations of the Member States, to support action taken by the Member States in order to contribute to the achievement of the objectives referred to in paragraph 1.

### Article 20

(ex Article 17 TEC)

1.    Citizenship of the Union is hereby established. Every person holding the nationality of a Member State shall be a citizen of the Union. Citizenship of the Union shall be additional to and not replace national citizenship.

2.    Citizens of the Union shall enjoy the rights and be subject to the duties provided for in the Treaties. They shall have, inter alia:

(a)  the right to move and reside freely within the territory of the Member States;

(b)  the right to vote and to stand as candidates in elections to the European Parliament and in municipal elections in their Member State of residence, under the same conditions as nationals of that State;

(c) the right to enjoy, in the territory of a third country in which the Member State of which they are nationals is not represented, the protection of the diplomatic and consular authorities of any Member State on the same conditions as the nationals of that State;

(d) the right to petition the European Parliament, to apply to the European Ombudsman, and to address the institutions and advisory bodies of the Union in any of the Treaty languages and to obtain a reply in the same language.

These rights shall be exercised in accordance with the conditions and limits defined by the Treaties and by the measures adopted thereunder.

### Article 21
(ex Article 18 TEC)

1.    Every citizen of the Union shall have the right to move and reside freely within the territory of the Member States, subject to the limitations and conditions laid down in the Treaties and by the measures adopted to give them effect.

2.    If action by the Union should prove necessary to attain this objective and the Treaties have not provided the necessary powers, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may adopt provisions with a view to facilitating the exercise of the rights referred to in paragraph 1.

3.    For the same purposes as those referred to in paragraph 1 and if the Treaties have not provided the necessary powers, the Council, acting in accordance with a special legislative procedure, may adopt measures concerning social security or social protection. The Council shall act unanimously after consulting the European Parliament.

### Article 22
(ex Article 19 TEC)

1.    Every citizen of the Union residing in a Member State of which he is not a national shall have the right to vote and to stand as a candidate at municipal elections in the Member State in which he resides, under the same conditions as nationals of that State. This right shall be exercised subject to detailed arrangements adopted by the Council, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament; these arrangements may provide for derogations where warranted by problems specific to a Member State.

2.    Without prejudice to Article 223(1) and to the provisions adopted for its implementation, every citizen of the Union residing in a Member State of which he is not a national shall have the right to vote and to stand as a candidate in elections to the European Parliament in the Member State in which he resides, under the same conditions as nationals of that State. This right shall be exercised subject to detailed arrangements adopted by the Council, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament; these arrangements may provide for derogations where warranted by problems specific to a Member State.

## Article 23
(ex Article 20 TEC)

Every citizen of the Union shall, in the territory of a third country in which the Member State of which he is a national is not represented, be entitled to protection by the diplomatic or consular authorities of any Member State, on the same conditions as the nationals of that State. Member States shall adopt the necessary provisions and start the international negotiations required to secure this protection.

The Council, acting in accordance with a special legislative procedure and after consulting the European Parliament, may adopt directives establishing the coordination and cooperation measures necessary to facilitate such protection.

## Article 24
(ex Article 21 TEC)

The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall adopt the provisions for the procedures and conditions required for a citizens' initiative within the meaning of Article 11 of the Treaty on European Union, including the minimum number of Member States from which such citizens must come.

Every citizen of the Union shall have the right to petition the European Parliament in accordance with Article 227.

Every citizen of the Union may apply to the Ombudsman established in accordance with Article 228.

Every citizen of the Union may write to any of the institutions or bodies referred to in this Article or in Article 13 of the Treaty on European Union in one of the languages mentioned in Article 55(1) of the Treaty on European Union and have an answer in the same language.

## Article 25
(ex Article 22 TEC)

The Commission shall report to the European Parliament, to the Council and to the Economic and Social Committee every three years on the application of the provisions of this Part. This report shall take account of the development of the Union.

On this basis, and without prejudice to the other provisions of the Treaties, the Council, acting unanimously in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, may adopt provisions to strengthen or to add to the rights listed in Article 20(2). These provisions shall enter into force after their approval by the Member States in accordance with their respective constitutional requirements.

# PART THREE

## UNION POLICIES AND INTERNAL ACTIONS

### TITLE I

#### THE INTERNAL MARKET

*Article 26*

(ex Article 14 TEC)

1.    The Union shall adopt measures with the aim of establishing or ensuring the functioning of the internal market, in accordance with the relevant provisions of the Treaties.

2.    The internal market shall comprise an area without internal frontiers in which the free movement of goods, persons, services and capital is ensured in accordance with the provisions of the Treaties.

3.    The Council, on a proposal from the Commission, shall determine the guidelines and conditions necessary to ensure balanced progress in all the sectors concerned.

*Article 27*

(ex Article 15 TEC)

When drawing up its proposals with a view to achieving the objectives set out in Article 26, the Commission shall take into account the extent of the effort that certain economies showing differences in development will have to sustain for the establishment of the internal market and it may propose appropriate provisions.

If these provisions take the form of derogations, they must be of a temporary nature and must cause the least possible disturbance to the functioning of the internal market.

### TITLE II

#### FREE MOVEMENT OF GOODS

*Article 28*

(ex Article 23 TEC)

1.    The Union shall comprise a customs union which shall cover all trade in goods and which shall involve the prohibition between Member States of customs duties on imports and exports and of all charges having equivalent effect, and the adoption of a common customs tariff in their relations with third countries.

2.    The provisions of Article 30 and of Chapter 3 of this Title shall apply to products originating in Member States and to products coming from third countries which are in free circulation in Member States.


### Article 29

#### (ex Article 24 TEC)

Products coming from a third country shall be considered to be in free circulation in a Member State if the import formalities have been complied with and any customs duties or charges having equivalent effect which are payable have been levied in that Member State, and if they have not benefited from a total or partial drawback of such duties or charges.


### CHAPTER 1

### THE CUSTOMS UNION


### Article 30

#### (ex Article 25 TEC)

Customs duties on imports and exports and charges having equivalent effect shall be prohibited between Member States. This prohibition shall also apply to customs duties of a fiscal nature.


### Article 31

#### (ex Article 26 TEC)

Common Customs Tariff duties shall be fixed by the Council on a proposal from the Commission.


### Article 32

#### (ex Article 27 TEC)

In carrying out the tasks entrusted to it under this Chapter the Commission shall be guided by:


(a)  the need to promote trade between Member States and third countries;


(b)  developments in conditions of competition within the Union in so far as they lead to an improvement in the competitive capacity of undertakings;


(c)  the requirements of the Union as regards the supply of raw materials and semi-finished goods; in this connection the Commission shall take care to avoid distorting conditions of competition between Member States in respect of finished goods;


(d)  the need to avoid serious disturbances in the economies of Member States and to ensure rational development of production and an expansion of consumption within the Union.

## CHAPTER 2

## CUSTOMS COOPERATION

### Article 33

(ex Article 135 TEC)

Within the scope of application of the Treaties, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall take measures in order to strengthen customs cooperation between Member States and between the latter and the Commission.

## CHAPTER 3

## PROHIBITION OF QUANTITATIVE RESTRICTIONS BETWEEN MEMBER STATES

### Article 34

(ex Article 28 TEC)

Quantitative restrictions on imports and all measures having equivalent effect shall be prohibited between Member States.

### Article 35

(ex Article 29 TEC)

Quantitative restrictions on exports, and all measures having equivalent effect, shall be prohibited between Member States.

### Article 36

(ex Article 30 TEC)

The provisions of Articles 34 and 35 shall not preclude prohibitions or restrictions on imports, exports or goods in transit justified on grounds of public morality, public policy or public security; the protection of health and life of humans, animals or plants; the protection of national treasures possessing artistic, historic or archaeological value; or the protection of industrial and commercial property. Such prohibitions or restrictions shall not, however, constitute a means of arbitrary discrimination or a disguised restriction on trade between Member States.

### Article 37

(ex Article 31 TEC)

1.    Member States shall adjust any State monopolies of a commercial character so as to ensure that no discrimination regarding the conditions under which goods are procured and marketed exists between nationals of Member States.

The provisions of this Article shall apply to any body through which a Member State, in law or in fact, either directly or indirectly supervises, determines or appreciably influences imports or exports between Member States. These provisions shall likewise apply to monopolies delegated by the State to others.

2.    Member States shall refrain from introducing any new measure which is contrary to the principles laid down in paragraph 1 or which restricts the scope of the articles dealing with the prohibition of customs duties and quantitative restrictions between Member States.

3.    If a State monopoly of a commercial character has rules which are designed to make it easier to dispose of agricultural products or obtain for them the best return, steps should be taken in applying the rules contained in this Article to ensure equivalent safeguards for the employment and standard of living of the producers concerned.

## TITLE III

### AGRICULTURE AND FISHERIES

### Article 38
#### (ex Article 32 TEC)

1.    The Union shall define and implement a common agriculture and fisheries policy.

The internal market shall extend to agriculture, fisheries and trade in agricultural products. 'Agricultural products' means the products of the soil, of stockfarming and of fisheries and products of first-stage processing directly related to these products. References to the common agricultural policy or to agriculture, and the use of the term 'agricultural', shall be understood as also referring to fisheries, having regard to the specific characteristics of this sector.

2.    Save as otherwise provided in Articles 39 to 44, the rules laid down for the establishment and functioning of the internal market shall apply to agricultural products.

3.    The products subject to the provisions of Articles 39 to 44 are listed in Annex I.

4.    The operation and development of the internal market for agricultural products must be accompanied by the establishment of a common agricultural policy.

### Article 39
#### (ex Article 33 TEC)

1.    The objectives of the common agricultural policy shall be:

(a) to increase agricultural productivity by promoting technical progress and by ensuring the rational development of agricultural production and the optimum utilisation of the factors of production, in particular labour;

(b) thus to ensure a fair standard of living for the agricultural community, in particular by increasing the individual earnings of persons engaged in agriculture;

(c) to stabilise markets;

(d) to assure the availability of supplies;

(e) to ensure that supplies reach consumers at reasonable prices.

2.    In working out the common agricultural policy and the special methods for its application, account shall be taken of:

(a) the particular nature of agricultural activity, which results from the social structure of agriculture and from structural and natural disparities between the various agricultural regions;

(b) the need to effect the appropriate adjustments by degrees;

(c) the fact that in the Member States agriculture constitutes a sector closely linked with the economy as a whole.

### Article 40
(ex Article 34 TEC)

1.    In order to attain the objectives set out in Article 39, a common organisation of agricultural markets shall be established.

This organisation shall take one of the following forms, depending on the product concerned:

(a) common rules on competition;

(b) compulsory coordination of the various national market organisations;

(c) a European market organisation.

2.    The common organisation established in accordance with paragraph 1 may include all measures required to attain the objectives set out in Article 39, in particular regulation of prices, aids for the production and marketing of the various products, storage and carryover arrangements and common machinery for stabilising imports or exports.

The common organisation shall be limited to pursuit of the objectives set out in Article 39 and shall exclude any discrimination between producers or consumers within the Union.

Any common price policy shall be based on common criteria and uniform methods of calculation.

3.    In order to enable the common organisation referred to in paragraph 1 to attain its objectives, one or more agricultural guidance and guarantee funds may be set up.

### Article 41
#### (ex Article 35 TEC)

To enable the objectives set out in Article 39 to be attained, provision may be made within the framework of the common agricultural policy for measures such as:

(a) an effective coordination of efforts in the spheres of vocational training, of research and of the dissemination of agricultural knowledge; this may include joint financing of projects or institutions;

(b) joint measures to promote consumption of certain products.

### Article 42
#### (ex Article 36 TEC)

The provisions of the Chapter relating to rules on competition shall apply to production of and trade in agricultural products only to the extent determined by the European Parliament and the Council within the framework of Article 43(2) and in accordance with the procedure laid down therein, account being taken of the objectives set out in Article 39.

The Council, on a proposal from the Commission, may authorise the granting of aid:

(a) for the protection of enterprises handicapped by structural or natural conditions;

(b) within the framework of economic development programmes.

### Article 43
#### (ex Article 37 TEC)

1.    The Commission shall submit proposals for working out and implementing the common agricultural policy, including the replacement of the national organisations by one of the forms of common organisation provided for in Article 40(1), and for implementing the measures specified in this Title.

These proposals shall take account of the interdependence of the agricultural matters mentioned in this Title.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall establish the common organisation of agricultural markets provided for in Article 40(1) and the other provisions necessary for the pursuit of the objectives of the common agricultural policy and the common fisheries policy.

3.    The Council, on a proposal from the Commission, shall adopt measures on fixing prices, levies, aid and quantitative limitations and on the fixing and allocation of fishing opportunities.

4.    In accordance with paragraph 2, the national market organisations may be replaced by the common organisation provided for in Article 40(1) if:

(a) the common organisation offers Member States which are opposed to this measure and which have an organisation of their own for the production in question equivalent safeguards for the employment and standard of living of the producers concerned, account being taken of the adjustments that will be possible and the specialisation that will be needed with the passage of time;

(b) such an organisation ensures conditions for trade within the Union similar to those existing in a national market.

5.    If a common organisation for certain raw materials is established before a common organisation exists for the corresponding processed products, such raw materials as are used for processed products intended for export to third countries may be imported from outside the Union.

### Article 44
(ex Article 38 TEC)

Where in a Member State a product is subject to a national market organisation or to internal rules having equivalent effect which affect the competitive position of similar production in another Member State, a countervailing charge shall be applied by Member States to imports of this product coming from the Member State where such organisation or rules exist, unless that State applies a countervailing charge on export.

The Commission shall fix the amount of these charges at the level required to redress the balance; it may also authorise other measures, the conditions and details of which it shall determine.

## TITLE IV

### FREE MOVEMENT OF PERSONS, SERVICES AND CAPITAL

#### CHAPTER 1

#### WORKERS

### Article 45
(ex Article 39 TEC)

1.    Freedom of movement for workers shall be secured within the Union.

2.    Such freedom of movement shall entail the abolition of any discrimination based on nationality between workers of the Member States as regards employment, remuneration and other conditions of work and employment.

3.    It shall entail the right, subject to limitations justified on grounds of public policy, public security or public health:

(a)  to accept offers of employment actually made;

(b)  to move freely within the territory of Member States for this purpose;

(c)  to stay in a Member State for the purpose of employment in accordance with the provisions governing the employment of nationals of that State laid down by law, regulation or administrative action;

(d)  to remain in the territory of a Member State after having been employed in that State, subject to conditions which shall be embodied in regulations to be drawn up by the Commission.

4.    The provisions of this Article shall not apply to employment in the public service.

### Article 46
(ex Article 40 TEC)

The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, issue directives or make regulations setting out the measures required to bring about freedom of movement for workers, as defined in Article 45, in particular:

(a)  by ensuring close cooperation between national employment services;

(b)  by abolishing those administrative procedures and practices and those qualifying periods in respect of eligibility for available employment, whether resulting from national legislation or from agreements previously concluded between Member States, the maintenance of which would form an obstacle to liberalisation of the movement of workers;

(c)  by abolishing all such qualifying periods and other restrictions provided for either under national legislation or under agreements previously concluded between Member States as imposed on workers of other Member States conditions regarding the free choice of employment other than those imposed on workers of the State concerned;

(d)  by setting up appropriate machinery to bring offers of employment into touch with applications for employment and to facilitate the achievement of a balance between supply and demand in the employment market in such a way as to avoid serious threats to the standard of living and level of employment in the various regions and industries.

### Article 47

(ex Article 41 TEC)

Member States shall, within the framework of a joint programme, encourage the exchange of young workers.

### Article 48

(ex Article 42 TEC)

The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure, adopt such measures in the field of social security as are necessary to provide freedom of movement for workers; to this end, they shall make arrangements to secure for employed and self-employed migrant workers and their dependants:

(a) aggregation, for the purpose of acquiring and retaining the right to benefit and of calculating the amount of benefit, of all periods taken into account under the laws of the several countries;

(b) payment of benefits to persons resident in the territories of Member States.

Where a member of the Council declares that a draft legislative act referred to in the first subparagraph would affect important aspects of its social security system, including its scope, cost or financial structure, or would affect the financial balance of that system, it may request that the matter be referred to the European Council. In that case, the ordinary legislative procedure shall be suspended. After discussion, the European Council shall, within four months of this suspension, either:

(a) refer the draft back to the Council, which shall terminate the suspension of the ordinary legislative procedure; or

(b) take no action or request the Commission to submit a new proposal; in that case, the act originally proposed shall be deemed not to have been adopted.

### CHAPTER 2

### RIGHT OF ESTABLISHMENT

### Article 49

(ex Article 43 TEC)

Within the framework of the provisions set out below, restrictions on the freedom of establishment of nationals of a Member State in the territory of another Member State shall be prohibited. Such prohibition shall also apply to restrictions on the setting-up of agencies, branches or subsidiaries by nationals of any Member State established in the territory of any Member State.

Freedom of establishment shall include the right to take up and pursue activities as self-employed persons and to set up and manage undertakings, in particular companies or firms within the meaning of the second paragraph of Article 54, under the conditions laid down for its own nationals by the law of the country where such establishment is effected, subject to the provisions of the Chapter relating to capital.

## Article 50
### (ex Article 44 TEC)

1.    In order to attain freedom of establishment as regards a particular activity, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall act by means of directives.

2.    The European Parliament, the Council and the Commission shall carry out the duties devolving upon them under the preceding provisions, in particular:

(a)  by according, as a general rule, priority treatment to activities where freedom of establishment makes a particularly valuable contribution to the development of production and trade;

(b)  by ensuring close cooperation between the competent authorities in the Member States in order to ascertain the particular situation within the Union of the various activities concerned;

(c)  by abolishing those administrative procedures and practices, whether resulting from national legislation or from agreements previously concluded between Member States, the maintenance of which would form an obstacle to freedom of establishment;

(d)  by ensuring that workers of one Member State employed in the territory of another Member State may remain in that territory for the purpose of taking up activities therein as self-employed persons, where they satisfy the conditions which they would be required to satisfy if they were entering that State at the time when they intended to take up such activities;

(e)  by enabling a national of one Member State to acquire and use land and buildings situated in the territory of another Member State, in so far as this does not conflict with the principles laid down in Article 39(2);

(f)  by effecting the progressive abolition of restrictions on freedom of establishment in every branch of activity under consideration, both as regards the conditions for setting up agencies, branches or subsidiaries in the territory of a Member State and as regards the subsidiaries in the territory of a Member State and as regards the conditions governing the entry of personnel belonging to the main establishment into managerial or supervisory posts in such agencies, branches or subsidiaries;

(g)  by coordinating to the necessary extent the safeguards which, for the protection of the interests of members and others, are required by Member States of companies or firms within the meaning of the second paragraph of Article 54 with a view to making such safeguards equivalent throughout the Union;

(h)  by satisfying themselves that the conditions of establishment are not distorted by aids granted by Member States.

## Article 51
### (ex Article 45 TEC)

The provisions of this Chapter shall not apply, so far as any given Member State is concerned, to activities which in that State are connected, even occasionally, with the exercise of official authority.

26.10.2012          EN          Official Journal of the European Union          C 326/69

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may rule that the provisions of this Chapter shall not apply to certain activities.

## Article 52
### (ex Article 46 TEC)

1.    The provisions of this Chapter and measures taken in pursuance thereof shall not prejudice the applicability of provisions laid down by law, regulation or administrative action providing for special treatment for foreign nationals on grounds of public policy, public security or public health.

2.    The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure, issue directives for the coordination of the abovementioned provisions.

## Article 53
### (ex Article 47 TEC)

1.    In order to make it easier for persons to take up and pursue activities as self-employed persons, the European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure, issue directives for the mutual recognition of diplomas, certificates and other evidence of formal qualifications and for the coordination of the provisions laid down by law, regulation or administrative action in Member States concerning the taking-up and pursuit of activities as self-employed persons.

2.    In the case of the medical and allied and pharmaceutical professions, the progressive abolition of restrictions shall be dependent upon coordination of the conditions for their exercise in the various Member States.

## Article 54
### (ex Article 48 TEC)

Companies or firms formed in accordance with the law of a Member State and having their registered office, central administration or principal place of business within the Union shall, for the purposes of this Chapter, be treated in the same way as natural persons who are nationals of Member States.

'Companies or firms' means companies or firms constituted under civil or commercial law, including cooperative societies, and other legal persons governed by public or private law, save for those which are non-profit-making.

## Article 55
### (ex Article 294 TEC)

Member States shall accord nationals of the other Member States the same treatment as their own nationals as regards participation in the capital of companies or firms within the meaning of Article 54, without prejudice to the application of the other provisions of the Treaties.

CHAPTER 3

SERVICES

*Article 56*

(ex Article 49 TEC)

Within the framework of the provisions set out below, restrictions on freedom to provide services within the Union shall be prohibited in respect of nationals of Member States who are established in a Member State other than that of the person for whom the services are intended.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may extend the provisions of the Chapter to nationals of a third country who provide services and who are established within the Union.

*Article 57*

(ex Article 50 TEC)

Services shall be considered to be 'services' within the meaning of the Treaties where they are normally provided for remuneration, in so far as they are not governed by the provisions relating to freedom of movement for goods, capital and persons.

'Services' shall in particular include:

(a)  activities of an industrial character;

(b)  activities of a commercial character;

(c)  activities of craftsmen;

(d)  activities of the professions.

Without prejudice to the provisions of the Chapter relating to the right of establishment, the person providing a service may, in order to do so, temporarily pursue his activity in the Member State where the service is provided, under the same conditions as are imposed by that State on its own nationals.

*Article 58*

(ex Article 51 TEC)

1.    Freedom to provide services in the field of transport shall be governed by the provisions of the Title relating to transport.

2.    The liberalisation of banking and insurance services connected with movements of capital shall be effected in step with the liberalisation of movement of capital.

### Article 59
(ex Article 52 TEC)

1.    In order to achieve the liberalisation of a specific service, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall issue directives.

2.    As regards the directives referred to in paragraph 1, priority shall as a general rule be given to those services which directly affect production costs or the liberalisation of which helps to promote trade in goods.

### Article 60
(ex Article 53 TEC)

The Member States shall endeavour to undertake the liberalisation of services beyond the extent required by the directives issued pursuant to Article 59(1), if their general economic situation and the situation of the economic sector concerned so permit.

To this end, the Commission shall make recommendations to the Member States concerned.

### Article 61
(ex Article 54 TEC)

As long as restrictions on freedom to provide services have not been abolished, each Member State shall apply such restrictions without distinction on grounds of nationality or residence to all persons providing services within the meaning of the first paragraph of Article 56.

### Article 62
(ex Article 55 TEC)

The provisions of Articles 51 to 54 shall apply to the matters covered by this Chapter.

CHAPTER 4

CAPITAL AND PAYMENTS

### Article 63
(ex Article 56 TEC)

1.    Within the framework of the provisions set out in this Chapter, all restrictions on the movement of capital between Member States and between Member States and third countries shall be prohibited.

2.    Within the framework of the provisions set out in this Chapter, all restrictions on payments between Member States and between Member States and third countries shall be prohibited.

## Article 64
### (ex Article 57 TEC)

1.    The provisions of Article 63 shall be without prejudice to the application to third countries of any restrictions which exist on 31 December 1993 under national or Union law adopted in respect of the movement of capital to or from third countries involving direct investment – including in real estate – establishment, the provision of financial services or the admission of securities to capital markets. In respect of restrictions existing under national law in Bulgaria, Estonia and Hungary, the relevant date shall be 31 December 1999.

2.    Whilst endeavouring to achieve the objective of free movement of capital between Member States and third countries to the greatest extent possible and without prejudice to the other Chapters of the Treaties, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt the measures on the movement of capital to or from third countries involving direct investment – including investment in real estate – establishment, the provision of financial services or the admission of securities to capital markets.

3.    Notwithstanding paragraph 2, only the Council, acting in accordance with a special legislative procedure, may unanimously, and after consulting the European Parliament, adopt measures which constitute a step backwards in Union law as regards the liberalisation of the movement of capital to or from third countries.

## Article 65
### (ex Article 58 TEC)

1.    The provisions of Article 63 shall be without prejudice to the right of Member States:

(a) to apply the relevant provisions of their tax law which distinguish between taxpayers who are not in the same situation with regard to their place of residence or with regard to the place where their capital is invested;

(b) to take all requisite measures to prevent infringements of national law and regulations, in particular in the field of taxation and the prudential supervision of financial institutions, or to lay down procedures for the declaration of capital movements for purposes of administrative or statistical information, or to take measures which are justified on grounds of public policy or public security.

2.    The provisions of this Chapter shall be without prejudice to the applicability of restrictions on the right of establishment which are compatible with the Treaties.

3.    The measures and procedures referred to in paragraphs 1 and 2 shall not constitute a means of arbitrary discrimination or a disguised restriction on the free movement of capital and payments as defined in Article 63.

4.    In the absence of measures pursuant to Article 64(3), the Commission or, in the absence of a Commission decision within three months from the request of the Member State concerned, the Council, may adopt a decision stating that restrictive tax measures adopted by a Member State concerning one or more third countries are to be considered compatible with the Treaties in so far as they are justified by one of the objectives of the Union and compatible with the proper functioning of the internal market. The Council shall act unanimously on application by a Member State.

## Article 66
### (ex Article 59 TEC)

Where, in exceptional circumstances, movements of capital to or from third countries cause, or threaten to cause, serious difficulties for the operation of economic and monetary union, the Council, on a proposal from the Commission and after consulting the European Central Bank, may take safeguard measures with regard to third countries for a period not exceeding six months if such measures are strictly necessary.

# TITLE V

## AREA OF FREEDOM, SECURITY AND JUSTICE

### CHAPTER 1

## GENERAL PROVISIONS

## Article 67
### (ex Article 61 TEC and ex Article 29 TEU)

1.    The Union shall constitute an area of freedom, security and justice with respect for fundamental rights and the different legal systems and traditions of the Member States.

2.    It shall ensure the absence of internal border controls for persons and shall frame a common policy on asylum, immigration and external border control, based on solidarity between Member States, which is fair towards third-country nationals. For the purpose of this Title, stateless persons shall be treated as third-country nationals.

3.    The Union shall endeavour to ensure a high level of security through measures to prevent and combat crime, racism and xenophobia, and through measures for coordination and cooperation between police and judicial authorities and other competent authorities, as well as through the mutual recognition of judgments in criminal matters and, if necessary, through the approximation of criminal laws.

4.    The Union shall facilitate access to justice, in particular through the principle of mutual recognition of judicial and extrajudicial decisions in civil matters.

## Article 68

The European Council shall define the strategic guidelines for legislative and operational planning within the area of freedom, security and justice.

## Article 69

National Parliaments ensure that the proposals and legislative initiatives submitted under Chapters 4 and 5 comply with the principle of subsidiarity, in accordance with the arrangements laid down by the Protocol on the application of the principles of subsidiarity and proportionality.

## Article 70

Without prejudice to Articles 258, 259 and 260, the Council may, on a proposal from the Commission, adopt measures laying down the arrangements whereby Member States, in collaboration with the Commission, conduct objective and impartial evaluation of the implementation of the Union policies referred to in this Title by Member States' authorities, in particular in order to facilitate full application of the principle of mutual recognition. The European Parliament and national Parliaments shall be informed of the content and results of the evaluation.

## Article 71
(ex Article 36 TEU)

A standing committee shall be set up within the Council in order to ensure that operational cooperation on internal security is promoted and strengthened within the Union. Without prejudice to Article 240, it shall facilitate coordination of the action of Member States' competent authorities. Representatives of the Union bodies, offices and agencies concerned may be involved in the proceedings of this committee. The European Parliament and national Parliaments shall be kept informed of the proceedings.

## Article 72
(ex Article 64(1) TEC and ex Article 33 TEU)

This Title shall not affect the exercise of the responsibilities incumbent upon Member States with regard to the maintenance of law and order and the safeguarding of internal security.

## Article 73

It shall be open to Member States to organise between themselves and under their responsibility such forms of cooperation and coordination as they deem appropriate between the competent departments of their administrations responsible for safeguarding national security.

### Article 74
(ex Article 66 TEC)

The Council shall adopt measures to ensure administrative cooperation between the relevant departments of the Member States in the areas covered by this Title, as well as between those departments and the Commission. It shall act on a Commission proposal, subject to Article 76, and after consulting the European Parliament.

### Article 75
(ex Article 60 TEC)

Where necessary to achieve the objectives set out in Article 67, as regards preventing and combating terrorism and related activities, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall define a framework for administrative measures with regard to capital movements and payments, such as the freezing of funds, financial assets or economic gains belonging to, or owned or held by, natural or legal persons, groups or non-State entities.

The Council, on a proposal from the Commission, shall adopt measures to implement the framework referred to in the first paragraph.

The acts referred to in this Article shall include necessary provisions on legal safeguards.

### Article 76

The acts referred to in Chapters 4 and 5, together with the measures referred to in Article 74 which ensure administrative cooperation in the areas covered by these Chapters, shall be adopted:

(a) on a proposal from the Commission, or

(b) on the initiative of a quarter of the Member States.

## CHAPTER 2

## POLICIES ON BORDER CHECKS, ASYLUM AND IMMIGRATION

### Article 77
(ex Article 62 TEC)

1.    The Union shall develop a policy with a view to:

(a) ensuring the absence of any controls on persons, whatever their nationality, when crossing internal borders;

(b) carrying out checks on persons and efficient monitoring of the crossing of external borders;

(c) the gradual introduction of an integrated management system for external borders.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures concerning:

(a) the common policy on visas and other short-stay residence permits;

(b) the checks to which persons crossing external borders are subject;

(c) the conditions under which nationals of third countries shall have the freedom to travel within the Union for a short period;

(d) any measure necessary for the gradual establishment of an integrated management system for external borders;

(e) the absence of any controls on persons, whatever their nationality, when crossing internal borders.

3.    If action by the Union should prove necessary to facilitate the exercise of the right referred to in Article 20(2)(a), and if the Treaties have not provided the necessary powers, the Council, acting in accordance with a special legislative procedure, may adopt provisions concerning passports, identity cards, residence permits or any other such document. The Council shall act unanimously after consulting the European Parliament.

4.    This Article shall not affect the competence of the Member States concerning the geographical demarcation of their borders, in accordance with international law.

*Article 78*
(ex Articles 63, points 1 and 2, and 64(2) TEC)

1.    The Union shall develop a common policy on asylum, subsidiary protection and temporary protection with a view to offering appropriate status to any third-country national requiring international protection and ensuring compliance with the principle of *non-refoulement*. This policy must be in accordance with the Geneva Convention of 28 July 1951 and the Protocol of 31 January 1967 relating to the status of refugees, and other relevant treaties.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures for a common European asylum system comprising:

(a) a uniform status of asylum for nationals of third countries, valid throughout the Union;

(b) a uniform status of subsidiary protection for nationals of third countries who, without obtaining European asylum, are in need of international protection;

(c) a common system of temporary protection for displaced persons in the event of a massive inflow;

(d) common procedures for the granting and withdrawing of uniform asylum or subsidiary protection status;

(e) criteria and mechanisms for determining which Member State is responsible for considering an application for asylum or subsidiary protection;

(f) standards concerning the conditions for the reception of applicants for asylum or subsidiary protection;

(g) partnership and cooperation with third countries for the purpose of managing inflows of people applying for asylum or subsidiary or temporary protection.

3.    In the event of one or more Member States being confronted by an emergency situation characterised by a sudden inflow of nationals of third countries, the Council, on a proposal from the Commission, may adopt provisional measures for the benefit of the Member State(s) concerned. It shall act after consulting the European Parliament.

*Article 79*
(ex Article 63, points 3 and 4, TEC)

1.    The Union shall develop a common immigration policy aimed at ensuring, at all stages, the efficient management of migration flows, fair treatment of third-country nationals residing legally in Member States, and the prevention of, and enhanced measures to combat, illegal immigration and trafficking in human beings.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures in the following areas:

(a) the conditions of entry and residence, and standards on the issue by Member States of long-term visas and residence permits, including those for the purpose of family reunification;

(b) the definition of the rights of third-country nationals residing legally in a Member State, including the conditions governing freedom of movement and of residence in other Member States;

(c) illegal immigration and unauthorised residence, including removal and repatriation of persons residing without authorisation;

(d) combating trafficking in persons, in particular women and children.

3.    The Union may conclude agreements with third countries for the readmission to their countries of origin or provenance of third-country nationals who do not or who no longer fulfil the conditions for entry, presence or residence in the territory of one of the Member States.

4.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish measures to provide incentives and support for the action of Member States with a view to promoting the integration of third-country nationals residing legally in their territories, excluding any harmonisation of the laws and regulations of the Member States.

5.    This Article shall not affect the right of Member States to determine volumes of admission of third-country nationals coming from third countries to their territory in order to seek work, whether employed or self-employed.

### Article 80

The policies of the Union set out in this Chapter and their implementation shall be governed by the principle of solidarity and fair sharing of responsibility, including its financial implications, between the Member States. Whenever necessary, the Union acts adopted pursuant to this Chapter shall contain appropriate measures to give effect to this principle.

CHAPTER 3

JUDICIAL COOPERATION IN CIVIL MATTERS

### Article 81
(ex Article 65 TEC)

1.    The Union shall develop judicial cooperation in civil matters having cross-border implications, based on the principle of mutual recognition of judgments and of decisions in extrajudicial cases. Such cooperation may include the adoption of measures for the approximation of the laws and regulations of the Member States.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures, particularly when necessary for the proper functioning of the internal market, aimed at ensuring:

(a)  the mutual recognition and enforcement between Member States of judgments and of decisions in extrajudicial cases;

(b)  the cross-border service of judicial and extrajudicial documents;

(c)  the compatibility of the rules applicable in the Member States concerning conflict of laws and of jurisdiction;

(d)  cooperation in the taking of evidence;

(e)  effective access to justice;

(f)  the elimination of obstacles to the proper functioning of civil proceedings, if necessary by promoting the compatibility of the rules on civil procedure applicable in the Member States;

(g)  the development of alternative methods of dispute settlement;

(h)  support for the training of the judiciary and judicial staff.

3.    Notwithstanding paragraph 2, measures concerning family law with cross-border implications shall be established by the Council, acting in accordance with a special legislative procedure. The Council shall act unanimously after consulting the European Parliament.

The Council, on a proposal from the Commission, may adopt a decision determining those aspects of family law with cross-border implications which may be the subject of acts adopted by the ordinary legislative procedure. The Council shall act unanimously after consulting the European Parliament.

The proposal referred to in the second subparagraph shall be notified to the national Parliaments. If a national Parliament makes known its opposition within six months of the date of such notification, the decision shall not be adopted. In the absence of opposition, the Council may adopt the decision.

CHAPTER 4

JUDICIAL COOPERATION IN CRIMINAL MATTERS

*Article 82*
(ex Article 31 TEU)

1.    Judicial cooperation in criminal matters in the Union shall be based on the principle of mutual recognition of judgments and judicial decisions and shall include the approximation of the laws and regulations of the Member States in the areas referred to in paragraph 2 and in Article 83.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures to:

(a)  lay down rules and procedures for ensuring recognition throughout the Union of all forms of judgments and judicial decisions;

(b)  prevent and settle conflicts of jurisdiction between Member States;

(c)  support the training of the judiciary and judicial staff;

(d)  facilitate cooperation between judicial or equivalent authorities of the Member States in relation to proceedings in criminal matters and the enforcement of decisions.

2.    To the extent necessary to facilitate mutual recognition of judgments and judicial decisions and police and judicial cooperation in criminal matters having a cross-border dimension, the European Parliament and the Council may, by means of directives adopted in accordance with the ordinary legislative procedure, establish minimum rules. Such rules shall take into account the differences between the legal traditions and systems of the Member States.

They shall concern:

(a)  mutual admissibility of evidence between Member States;

(b)  the rights of individuals in criminal procedure;

(c)  the rights of victims of crime;

(d)  any other specific aspects of criminal procedure which the Council has identified in advance by a decision; for the adoption of such a decision, the Council shall act unanimously after obtaining the consent of the European Parliament.

Adoption of the minimum rules referred to in this paragraph shall not prevent Member States from maintaining or introducing a higher level of protection for individuals.

3.    Where a member of the Council considers that a draft directive as referred to in paragraph 2 would affect fundamental aspects of its criminal justice system, it may request that the draft directive be referred to the European Council. In that case, the ordinary legislative procedure shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council, which shall terminate the suspension of the ordinary legislative procedure.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft directive concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

## Article 83
### (ex Article 31 TEU)

1.    The European Parliament and the Council may, by means of directives adopted in accordance with the ordinary legislative procedure, establish minimum rules concerning the definition of criminal offences and sanctions in the areas of particularly serious crime with a cross-border dimension resulting from the nature or impact of such offences or from a special need to combat them on a common basis.

These areas of crime are the following: terrorism, trafficking in human beings and sexual exploitation of women and children, illicit drug trafficking, illicit arms trafficking, money laundering, corruption, counterfeiting of means of payment, computer crime and organised crime.

On the basis of developments in crime, the Council may adopt a decision identifying other areas of crime that meet the criteria specified in this paragraph. It shall act unanimously after obtaining the consent of the European Parliament.

2.    If the approximation of criminal laws and regulations of the Member States proves essential to ensure the effective implementation of a Union policy in an area which has been subject to harmonisation measures, directives may establish minimum rules with regard to the definition of criminal offences and sanctions in the area concerned. Such directives shall be adopted by the same ordinary or special legislative procedure as was followed for the adoption of the harmonisation measures in question, without prejudice to Article 76.

3.    Where a member of the Council considers that a draft directive as referred to in paragraph 1 or 2 would affect fundamental aspects of its criminal justice system, it may request that the draft directive be referred to the European Council. In that case, the ordinary legislative procedure shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council, which shall terminate the suspension of the ordinary legislative procedure.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft directive concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

## Article 84

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish measures to promote and support the action of Member States in the field of crime prevention, excluding any harmonisation of the laws and regulations of the Member States.

## Article 85

(ex Article 31 TEU)

1.    Eurojust's mission shall be to support and strengthen coordination and cooperation between national investigating and prosecuting authorities in relation to serious crime affecting two or more Member States or requiring a prosecution on common bases, on the basis of operations conducted and information supplied by the Member States' authorities and by Europol.

In this context, the European Parliament and the Council, by means of regulations adopted in accordance with the ordinary legislative procedure, shall determine Eurojust's structure, operation, field of action and tasks. These tasks may include:

(a) the initiation of criminal investigations, as well as proposing the initiation of prosecutions conducted by competent national authorities, particularly those relating to offences against the financial interests of the Union;

(b) the coordination of investigations and prosecutions referred to in point (a);

(c) the strengthening of judicial cooperation, including by resolution of conflicts of jurisdiction and by close cooperation with the European Judicial Network.

These regulations shall also determine arrangements for involving the European Parliament and national Parliaments in the evaluation of Eurojust's activities.

2.    In the prosecutions referred to in paragraph 1, and without prejudice to Article 86, formal acts of judicial procedure shall be carried out by the competent national officials.

*Article 86*

1.    In order to combat crimes affecting the financial interests of the Union, the Council, by means of regulations adopted in accordance with a special legislative procedure, may establish a European Public Prosecutor's Office from Eurojust. The Council shall act unanimously after obtaining the consent of the European Parliament.

In the absence of unanimity in the Council, a group of at least nine Member States may request that the draft regulation be referred to the European Council. In that case, the procedure in the Council shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council for adoption.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft regulation concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

2.    The European Public Prosecutor's Office shall be responsible for investigating, prosecuting and bringing to judgment, where appropriate in liaison with Europol, the perpetrators of, and accomplices in, offences against the Union's financial interests, as determined by the regulation provided for in paragraph 1. It shall exercise the functions of prosecutor in the competent courts of the Member States in relation to such offences.

3.    The regulations referred to in paragraph 1 shall determine the general rules applicable to the European Public Prosecutor's Office, the conditions governing the performance of its functions, the rules of procedure applicable to its activities, as well as those governing the admissibility of evidence, and the rules applicable to the judicial review of procedural measures taken by it in the performance of its functions.

4.    The European Council may, at the same time or subsequently, adopt a decision amending paragraph 1 in order to extend the powers of the European Public Prosecutor's Office to include serious crime having a cross-border dimension and amending accordingly paragraph 2 as regards the perpetrators of, and accomplices in, serious crimes affecting more than one Member State. The European Council shall act unanimously after obtaining the consent of the European Parliament and after consulting the Commission.

CHAPTER 5

POLICE COOPERATION

*Article 87*
(ex Article 30 TEU)

1.    The Union shall establish police cooperation involving all the Member States' competent authorities, including police, customs and other specialised law enforcement services in relation to the prevention, detection and investigation of criminal offences.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish measures concerning:

(a)  the collection, storage, processing, analysis and exchange of relevant information;

(b)  support for the training of staff, and cooperation on the exchange of staff, on equipment and on research into crime-detection;

(c)  common investigative techniques in relation to the detection of serious forms of organised crime.

3.    The Council, acting in accordance with a special legislative procedure, may establish measures concerning operational cooperation between the authorities referred to in this Article. The Council shall act unanimously after consulting the European Parliament.

In case of the absence of unanimity in the Council, a group of at least nine Member States may request that the draft measures be referred to the European Council. In that case, the procedure in the Council shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council for adoption.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft measures concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

The specific procedure provided for in the second and third subparagraphs shall not apply to acts which constitute a development of the Schengen *acquis.*

## Article 88
### (ex Article 30 TEU)

1.    Europol's mission shall be to support and strengthen action by the Member States' police authorities and other law enforcement services and their mutual cooperation in preventing and combating serious crime affecting two or more Member States, terrorism and forms of crime which affect a common interest covered by a Union policy.

2.    The European Parliament and the Council, by means of regulations adopted in accordance with the ordinary legislative procedure, shall determine Europol's structure, operation, field of action and tasks. These tasks may include:

(a) the collection, storage, processing, analysis and exchange of information, in particular that forwarded by the authorities of the Member States or third countries or bodies;

(b) the coordination, organisation and implementation of investigative and operational action carried out jointly with the Member States' competent authorities or in the context of joint investigative teams, where appropriate in liaison with Eurojust.

These regulations shall also lay down the procedures for scrutiny of Europol's activities by the European Parliament, together with national Parliaments.

3.    Any operational action by Europol must be carried out in liaison and in agreement with the authorities of the Member State or States whose territory is concerned. The application of coercive measures shall be the exclusive responsibility of the competent national authorities.

## Article 89
### (ex Article 32 TEU)

The Council, acting in accordance with a special legislative procedure, shall lay down the conditions and limitations under which the competent authorities of the Member States referred to in Articles 82 and 87 may operate in the territory of another Member State in liaison and in agreement with the authorities of that State. The Council shall act unanimously after consulting the European Parliament.

# TITLE VI

## TRANSPORT

### *Article 90*
(ex Article 70 TEC)

The objectives of the Treaties shall, in matters governed by this Title, be pursued within the framework of a common transport policy.

### *Article 91*
(ex Article 71 TEC)

1.    For the purpose of implementing Article 90, and taking into account the distinctive features of transport, the European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, lay down:

(a)  common rules applicable to international transport to or from the territory of a Member State or passing across the territory of one or more Member States;

(b)  the conditions under which non-resident carriers may operate transport services within a Member State;

(c)  measures to improve transport safety;

(d)  any other appropriate provisions.

2.    When the measures referred to in paragraph 1 are adopted, account shall be taken of cases where their application might seriously affect the standard of living and level of employment in certain regions, and the operation of transport facilities.

### *Article 92*
(ex Article 72 TEC)

Until the provisions referred to in Article 91(1) have been laid down, no Member State may, unless the Council has unanimously adopted a measure granting a derogation, make the various provisions governing the subject on 1 January 1958 or, for acceding States, the date of their accession less favourable in their direct or indirect effect on carriers of other Member States as compared with carriers who are nationals of that State.

## Article 93

### (ex Article 73 TEC)

Aids shall be compatible with the Treaties if they meet the needs of coordination of transport or if they represent reimbursement for the discharge of certain obligations inherent in the concept of a public service.

## Article 94

### (ex Article 74 TEC)

Any measures taken within the framework of the Treaties in respect of transport rates and conditions shall take account of the economic circumstances of carriers.

## Article 95

### (ex Article 75 TEC)

1.    In the case of transport within the Union, discrimination which takes the form of carriers charging different rates and imposing different conditions for the carriage of the same goods over the same transport links on grounds of the country of origin or of destination of the goods in question shall be prohibited.

2.    Paragraph 1 shall not prevent the European Parliament and the Council from adopting other measures pursuant to Article 91(1).

3.    The Council shall, on a proposal from the Commission and after consulting the European Parliament and the Economic and Social Committee, lay down rules for implementing the provisions of paragraph 1.

The Council may in particular lay down the provisions needed to enable the institutions of the Union to secure compliance with the rule laid down in paragraph 1 and to ensure that users benefit from it to the full.

4.    The Commission shall, acting on its own initiative or on application by a Member State, investigate any cases of discrimination falling within paragraph 1 and, after consulting any Member State concerned, shall take the necessary decisions within the framework of the rules laid down in accordance with the provisions of paragraph 3.

## Article 96

### (ex Article 76 TEC)

1.    The imposition by a Member State, in respect of transport operations carried out within the Union, of rates and conditions involving any element of support or protection in the interest of one or more particular undertakings or industries shall be prohibited, unless authorised by the Commission.

26.10.2012    EN    Official Journal of the European Union    C 326/87

2.    The Commission shall, acting on its own initiative or on application by a Member State, examine the rates and conditions referred to in paragraph 1, taking account in particular of the requirements of an appropriate regional economic policy, the needs of underdeveloped areas and the problems of areas seriously affected by political circumstances on the one hand, and of the effects of such rates and conditions on competition between the different modes of transport on the other.

After consulting each Member State concerned, the Commission shall take the necessary decisions.

3.    The prohibition provided for in paragraph 1 shall not apply to tariffs fixed to meet competition.

## Article 97
(ex Article 77 TEC)

Charges or dues in respect of the crossing of frontiers which are charged by a carrier in addition to the transport rates shall not exceed a reasonable level after taking the costs actually incurred thereby into account.

Member States shall endeavour to reduce these costs progressively.

The Commission may make recommendations to Member States for the application of this Article.

## Article 98
(ex Article 78 TEC)

The provisions of this Title shall not form an obstacle to the application of measures taken in the Federal Republic of Germany to the extent that such measures are required in order to compensate for the economic disadvantages caused by the division of Germany to the economy of certain areas of the Federal Republic affected by that division. Five years after the entry into force of the Treaty of Lisbon, the Council, acting on a proposal from the Commission, may adopt a decision repealing this Article.

## Article 99
(ex Article 79 TEC)

An Advisory Committee consisting of experts designated by the governments of Member States shall be attached to the Commission. The Commission, whenever it considers it desirable, shall consult the Committee on transport matters.

## Article 100
(ex Article 80 TEC)

1.    The provisions of this Title shall apply to transport by rail, road and inland waterway.

2.  The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may lay down appropriate provisions for sea and air transport. They shall act after consulting the Economic and Social Committee and the Committee of the Regions.

## TITLE VII

### COMMON RULES ON COMPETITION, TAXATION AND APPROXIMATION OF LAWS

#### CHAPTER 1

### RULES ON COMPETITION

##### SECTION 1

##### RULES APPLYING TO UNDERTAKINGS

### Article 101
(ex Article 81 TEC)

1.  The following shall be prohibited as incompatible with the internal market: all agreements between undertakings, decisions by associations of undertakings and concerted practices which may affect trade between Member States and which have as their object or effect the prevention, restriction or distortion of competition within the internal market, and in particular those which:

(a)  directly or indirectly fix purchase or selling prices or any other trading conditions;

(b)  limit or control production, markets, technical development, or investment;

(c)  share markets or sources of supply;

(d)  apply dissimilar conditions to equivalent transactions with other trading parties, thereby placing them at a competitive disadvantage;

(e)  make the conclusion of contracts subject to acceptance by the other parties of supplementary obligations which, by their nature or according to commercial usage, have no connection with the subject of such contracts.

2.  Any agreements or decisions prohibited pursuant to this Article shall be automatically void.

3.  The provisions of paragraph 1 may, however, be declared inapplicable in the case of:

—  any agreement or category of agreements between undertakings,

—  any decision or category of decisions by associations of undertakings,

26.10.2012          EN          Official Journal of the European Union          C 326/89

— any concerted practice or category of concerted practices,

which contributes to improving the production or distribution of goods or to promoting technical or economic progress, while allowing consumers a fair share of the resulting benefit, and which does not:

(a) impose on the undertakings concerned restrictions which are not indispensable to the attainment of these objectives;

(b) afford such undertakings the possibility of eliminating competition in respect of a substantial part of the products in question.

## Article 102
### (ex Article 82 TEC)

Any abuse by one or more undertakings of a dominant position within the internal market or in a substantial part of it shall be prohibited as incompatible with the internal market in so far as it may affect trade between Member States.

Such abuse may, in particular, consist in:

(a) directly or indirectly imposing unfair purchase or selling prices or other unfair trading conditions;

(b) limiting production, markets or technical development to the prejudice of consumers;

(c) applying dissimilar conditions to equivalent transactions with other trading parties, thereby placing them at a competitive disadvantage;

(d) making the conclusion of contracts subject to acceptance by the other parties of supplementary obligations which, by their nature or according to commercial usage, have no connection with the subject of such contracts.

## Article 103
### (ex Article 83 TEC)

1.    The appropriate regulations or directives to give effect to the principles set out in Articles 101 and 102 shall be laid down by the Council, on a proposal from the Commission and after consulting the European Parliament.

2.    The regulations or directives referred to in paragraph 1 shall be designed in particular:

(a) to ensure compliance with the prohibitions laid down in Article 101(1) and in Article 102 by making provision for fines and periodic penalty payments;

(b) to lay down detailed rules for the application of Article 101(3), taking into account the need to ensure effective supervision on the one hand, and to simplify administration to the greatest possible extent on the other;

(c) to define, if need be, in the various branches of the economy, the scope of the provisions of Articles 101 and 102;

(d) to define the respective functions of the Commission and of the Court of Justice of the European Union in applying the provisions laid down in this paragraph;

(e) to determine the relationship between national laws and the provisions contained in this Section or adopted pursuant to this Article.

## Article 104

### (ex Article 84 TEC)

Until the entry into force of the provisions adopted in pursuance of Article 103, the authorities in Member States shall rule on the admissibility of agreements, decisions and concerted practices and on abuse of a dominant position in the internal market in accordance with the law of their country and with the provisions of Article 101, in particular paragraph 3, and of Article 102.

## Article 105

### (ex Article 85 TEC)

1.    Without prejudice to Article 104, the Commission shall ensure the application of the principles laid down in Articles 101 and 102. On application by a Member State or on its own initiative, and in cooperation with the competent authorities in the Member States, which shall give it their assistance, the Commission shall investigate cases of suspected infringement of these principles. If it finds that there has been an infringement, it shall propose appropriate measures to bring it to an end.

2.    If the infringement is not brought to an end, the Commission shall record such infringement of the principles in a reasoned decision. The Commission may publish its decision and authorise Member States to take the measures, the conditions and details of which it shall determine, needed to remedy the situation.

3.    The Commission may adopt regulations relating to the categories of agreement in respect of which the Council has adopted a regulation or a directive pursuant to Article 103(2)(b).

## Article 106

### (ex Article 86 TEC)

1.    In the case of public undertakings and undertakings to which Member States grant special or exclusive rights, Member States shall neither enact nor maintain in force any measure contrary to the rules contained in the Treaties, in particular to those rules provided for in Article 18 and Articles 101 to 109.

2.    Undertakings entrusted with the operation of services of general economic interest or having the character of a revenue-producing monopoly shall be subject to the rules contained in the Treaties, in particular to the rules on competition, in so far as the application of such rules does not obstruct the performance, in law or in fact, of the particular tasks assigned to them. The development of trade must not be affected to such an extent as would be contrary to the interests of the Union.

3.    The Commission shall ensure the application of the provisions of this Article and shall, where necessary, address appropriate directives or decisions to Member States.

SECTION 2

AIDS GRANTED BY STATES

## Article 107
### (ex Article 87 TEC)

1.    Save as otherwise provided in the Treaties, any aid granted by a Member State or through State resources in any form whatsoever which distorts or threatens to distort competition by favouring certain undertakings or the production of certain goods shall, in so far as it affects trade between Member States, be incompatible with the internal market.

2.    The following shall be compatible with the internal market:

(a) aid having a social character, granted to individual consumers, provided that such aid is granted without discrimination related to the origin of the products concerned;

(b) aid to make good the damage caused by natural disasters or exceptional occurrences;

(c) aid granted to the economy of certain areas of the Federal Republic of Germany affected by the division of Germany, in so far as such aid is required in order to compensate for the economic disadvantages caused by that division. Five years after the entry into force of the Treaty of Lisbon, the Council, acting on a proposal from the Commission, may adopt a decision repealing this point.

3.    The following may be considered to be compatible with the internal market:

(a) aid to promote the economic development of areas where the standard of living is abnormally low or where there is serious underemployment, and of the regions referred to in Article 349, in view of their structural, economic and social situation;

(b) aid to promote the execution of an important project of common European interest or to remedy a serious disturbance in the economy of a Member State;

(c) aid to facilitate the development of certain economic activities or of certain economic areas, where such aid does not adversely affect trading conditions to an extent contrary to the common interest;

(d) aid to promote culture and heritage conservation where such aid does not affect trading conditions and competition in the Union to an extent that is contrary to the common interest;

(e) such other categories of aid as may be specified by decision of the Council on a proposal from the Commission.

## Article 108

(ex Article 88 TEC)

1.    The Commission shall, in cooperation with Member States, keep under constant review all systems of aid existing in those States. It shall propose to the latter any appropriate measures required by the progressive development or by the functioning of the internal market.

2.    If, after giving notice to the parties concerned to submit their comments, the Commission finds that aid granted by a State or through State resources is not compatible with the internal market having regard to Article 107, or that such aid is being misused, it shall decide that the State concerned shall abolish or alter such aid within a period of time to be determined by the Commission.

If the State concerned does not comply with this decision within the prescribed time, the Commission or any other interested State may, in derogation from the provisions of Articles 258 and 259, refer the matter to the Court of Justice of the European Union direct.

On application by a Member State, the Council may, acting unanimously, decide that aid which that State is granting or intends to grant shall be considered to be compatible with the internal market, in derogation from the provisions of Article 107 or from the regulations provided for in Article 109, if such a decision is justified by exceptional circumstances. If, as regards the aid in question, the Commission has already initiated the procedure provided for in the first subparagraph of this paragraph, the fact that the State concerned has made its application to the Council shall have the effect of suspending that procedure until the Council has made its attitude known.

If, however, the Council has not made its attitude known within three months of the said application being made, the Commission shall give its decision on the case.

3.    The Commission shall be informed, in sufficient time to enable it to submit its comments, of any plans to grant or alter aid. If it considers that any such plan is not compatible with the internal market having regard to Article 107, it shall without delay initiate the procedure provided for in paragraph 2. The Member State concerned shall not put its proposed measures into effect until this procedure has resulted in a final decision.

4.    The Commission may adopt regulations relating to the categories of State aid that the Council has, pursuant to Article 109, determined may be exempted from the procedure provided for by paragraph 3 of this Article.

## Article 109

(ex Article 89 TEC)

The Council, on a proposal from the Commission and after consulting the European Parliament, may make any appropriate regulations for the application of Articles 107 and 108 and may in particular determine the conditions in which Article 108(3) shall apply and the categories of aid exempted from this procedure.

CHAPTER 2

TAX PROVISIONS

## Article 110

(ex Article 90 TEC)

No Member State shall impose, directly or indirectly, on the products of other Member States any internal taxation of any kind in excess of that imposed directly or indirectly on similar domestic products.

Furthermore, no Member State shall impose on the products of other Member States any internal taxation of such a nature as to afford indirect protection to other products.

## Article 111

(ex Article 91 TEC)

Where products are exported to the territory of any Member State, any repayment of internal taxation shall not exceed the internal taxation imposed on them whether directly or indirectly.

## Article 112

(ex Article 92 TEC)

In the case of charges other than turnover taxes, excise duties and other forms of indirect taxation, remissions and repayments in respect of exports to other Member States may not be granted and countervailing charges in respect of imports from Member States may not be imposed unless the measures contemplated have been previously approved for a limited period by the Council on a proposal from the Commission.

## Article 113
(ex Article 93 TEC)

The Council shall, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament and the Economic and Social Committee, adopt provisions for the harmonisation of legislation concerning turnover taxes, excise duties and other forms of indirect taxation to the extent that such harmonisation is necessary to ensure the establishment and the functioning of the internal market and to avoid distortion of competition.

CHAPTER 3

APPROXIMATION OF LAWS

## Article 114
(ex Article 95 TEC)

1.    Save where otherwise provided in the Treaties, the following provisions shall apply for the achievement of the objectives set out in Article 26. The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, adopt the measures for the approximation of the provisions laid down by law, regulation or administrative action in Member States which have as their object the establishment and functioning of the internal market.

2.    Paragraph 1 shall not apply to fiscal provisions, to those relating to the free movement of persons nor to those relating to the rights and interests of employed persons.

3.    The Commission, in its proposals envisaged in paragraph 1 concerning health, safety, environmental protection and consumer protection, will take as a base a high level of protection, taking account in particular of any new development based on scientific facts. Within their respective powers, the European Parliament and the Council will also seek to achieve this objective.

4.    If, after the adoption of a harmonisation measure by the European Parliament and the Council, by the Council or by the Commission, a Member State deems it necessary to maintain national provisions on grounds of major needs referred to in Article 36, or relating to the protection of the environment or the working environment, it shall notify the Commission of these provisions as well as the grounds for maintaining them.

5.    Moreover, without prejudice to paragraph 4, if, after the adoption of a harmonisation measure by the European Parliament and the Council, by the Council or by the Commission, a Member State deems it necessary to introduce national provisions based on new scientific evidence relating to the protection of the environment or the working environment on grounds of a problem specific to that Member State arising after the adoption of the harmonisation measure, it shall notify the Commission of the envisaged provisions as well as the grounds for introducing them.

6.    The Commission shall, within six months of the notifications as referred to in paragraphs 4 and 5, approve or reject the national provisions involved after having verified whether or not they are a means of arbitrary discrimination or a disguised restriction on trade between Member States and whether or not they shall constitute an obstacle to the functioning of the internal market.

In the absence of a decision by the Commission within this period the national provisions referred to in paragraphs 4 and 5 shall be deemed to have been approved.

When justified by the complexity of the matter and in the absence of danger for human health, the Commission may notify the Member State concerned that the period referred to in this paragraph may be extended for a further period of up to six months.

7.    When, pursuant to paragraph 6, a Member State is authorised to maintain or introduce national provisions derogating from a harmonisation measure, the Commission shall immediately examine whether to propose an adaptation to that measure.

8.    When a Member State raises a specific problem on public health in a field which has been the subject of prior harmonisation measures, it shall bring it to the attention of the Commission which shall immediately examine whether to propose appropriate measures to the Council.

9.    By way of derogation from the procedure laid down in Articles 258 and 259, the Commission and any Member State may bring the matter directly before the Court of Justice of the European Union if it considers that another Member State is making improper use of the powers provided for in this Article.

10.    The harmonisation measures referred to above shall, in appropriate cases, include a safeguard clause authorising the Member States to take, for one or more of the non-economic reasons referred to in Article 36, provisional measures subject to a Union control procedure.

## Article 115
### (ex Article 94 TEC)

Without prejudice to Article 114, the Council shall, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament and the Economic and Social Committee, issue directives for the approximation of such laws, regulations or administrative provisions of the Member States as directly affect the establishment or functioning of the internal market.

## Article 116
### (ex Article 96 TEC)

Where the Commission finds that a difference between the provisions laid down by law, regulation or administrative action in Member States is distorting the conditions of competition in the internal market and that the resultant distortion needs to be eliminated, it shall consult the Member States concerned.

If such consultation does not result in an agreement eliminating the distortion in question, the European, Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall issue the necessary directives. Any other appropriate measures provided for in the Treaties may be adopted.

## Article 117

### (ex Article 97 TEC)

1.    Where there is a reason to fear that the adoption or amendment of a provision laid down by law, regulation or administrative action may cause distortion within the meaning of Article 116, a Member State desiring to proceed therewith shall consult the Commission. After consulting the Member States, the Commission shall recommend to the States concerned such measures as may be appropriate to avoid the distortion in question.

2.    If a State desiring to introduce or amend its own provisions does not comply with the recommendation addressed to it by the Commission, other Member States shall not be required, pursuant to Article 116, to amend their own provisions in order to eliminate such distortion. If the Member State which has ignored the recommendation of the Commission causes distortion detrimental only to itself, the provisions of Article 116 shall not apply.

## Article 118

In the context of the establishment and functioning of the internal market, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish measures for the creation of European intellectual property rights to provide uniform protection of intellectual property rights throughout the Union and for the setting up of centralised Union-wide authorisation, coordination and supervision arrangements.

The Council, acting in accordance with a special legislative procedure, shall by means of regulations establish language arrangements for the European intellectual property rights. The Council shall act unanimously after consulting the European Parliament.

## TITLE VIII

### ECONOMIC AND MONETARY POLICY

## Article 119

### (ex Article 4 TEC)

1.    For the purposes set out in Article 3 of the Treaty on European Union, the activities of the Member States and the Union shall include, as provided in the Treaties, the adoption of an economic policy which is based on the close coordination of Member States' economic policies, on the internal market and on the definition of common objectives, and conducted in accordance with the principle of an open market economy with free competition.

2.    Concurrently with the foregoing, and as provided in the Treaties and in accordance with the procedures set out therein, these activities shall include a single currency, the euro, and the definition and conduct of a single monetary policy and exchange-rate policy the primary objective of both of which shall be to maintain price stability and, without prejudice to this objective, to support the general economic policies in the Union, in accordance with the principle of an open market economy with free competition.

3.    These activities of the Member States and the Union shall entail compliance with the following guiding principles: stable prices, sound public finances and monetary conditions and a sustainable balance of payments.

CHAPTER 1

ECONOMIC POLICY

*Article 120*

(ex Article 98 TEC)

Member States shall conduct their economic policies with a view to contributing to the achievement of the objectives of the Union, as defined in Article 3 of the Treaty on European Union, and in the context of the broad guidelines referred to in Article 121(2). The Member States and the Union shall act in accordance with the principle of an open market economy with free competition, favouring an efficient allocation of resources, and in compliance with the principles set out in Article 119.

*Article 121*

(ex Article 99 TEC)

1.    Member States shall regard their economic policies as a matter of common concern and shall coordinate them within the Council, in accordance with the provisions of Article 120.

2.    The Council shall, on a recommendation from the Commission, formulate a draft for the broad guidelines of the economic policies of the Member States and of the Union, and shall report its findings to the European Council.

The European Council shall, acting on the basis of the report from the Council, discuss a conclusion on the broad guidelines of the economic policies of the Member States and of the Union.

On the basis of this conclusion, the Council shall adopt a recommendation setting out these broad guidelines. The Council shall inform the European Parliament of its recommendation.

3.    In order to ensure closer coordination of economic policies and sustained convergence of the economic performances of the Member States, the Council shall, on the basis of reports submitted by the Commission, monitor economic developments in each of the Member States and in the Union as well as the consistency of economic policies with the broad guidelines referred to in paragraph 2, and regularly carry out an overall assessment.

For the purpose of this multilateral surveillance, Member States shall forward information to the Commission about important measures taken by them in the field of their economic policy and such other information as they deem necessary.

4.    Where it is established, under the procedure referred to in paragraph 3, that the economic policies of a Member State are not consistent with the broad guidelines referred to in paragraph 2 or that they risk jeopardising the proper functioning of economic and monetary union, the Commission may address a warning to the Member State concerned. The Council, on a recommendation from the Commission, may address the necessary recommendations to the Member State concerned. The Council may, on a proposal from the Commission, decide to make its recommendations public.

Within the scope of this paragraph, the Council shall act without taking into account the vote of the member of the Council representing the Member State concerned.

A qualified majority of the other members of the Council shall be defined in accordance with Article 238(3)(a).

5.    The President of the Council and the Commission shall report to the European Parliament on the results of multilateral surveillance. The President of the Council may be invited to appear before the competent committee of the European Parliament if the Council has made its recommendations public.

6.    The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, may adopt detailed rules for the multilateral surveillance procedure referred to in paragraphs 3 and 4.

### Article 122
(ex Article 100 TEC)

1.    Without prejudice to any other procedures provided for in the Treaties, the Council, on a proposal from the Commission, may decide, in a spirit of solidarity between Member States, upon the measures appropriate to the economic situation, in particular if severe difficulties arise in the supply of certain products, notably in the area of energy.

2.    Where a Member State is in difficulties or is seriously threatened with severe difficulties caused by natural disasters or exceptional occurrences beyond its control, the Council, on a proposal from the Commission, may grant, under certain conditions, Union financial assistance to the Member State concerned. The President of the Council shall inform the European Parliament of the decision taken.

## Article 123
(ex Article 101 TEC)

1.    Overdraft facilities or any other type of credit facility with the European Central Bank or with the central banks of the Member States (hereinafter referred to as 'national central banks') in favour of Union institutions, bodies, offices or agencies, central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of Member States shall be prohibited, as shall the purchase directly from them by the European Central Bank or national central banks of debt instruments.

2.    Paragraph 1 shall not apply to publicly owned credit institutions which, in the context of the supply of reserves by central banks, shall be given the same treatment by national central banks and the European Central Bank as private credit institutions.

## Article 124
(ex Article 102 TEC)

Any measure, not based on prudential considerations, establishing privileged access by Union institutions, bodies, offices or agencies, central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of Member States to financial institutions, shall be prohibited.

## Article 125
(ex Article 103 TEC)

1.    The Union shall not be liable for or assume the commitments of central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of any Member State, without prejudice to mutual financial guarantees for the joint execution of a specific project. A Member State shall not be liable for or assume the commitments of central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of another Member State, without prejudice to mutual financial guarantees for the joint execution of a specific project.

2.    The Council, on a proposal from the Commission and after consulting the European Parliament, may, as required, specify definitions for the application of the prohibitions referred to in Articles 123 and 124 and in this Article.

## Article 126
(ex Article 104 TEC)

1.    Member States shall avoid excessive government deficits.

2.    The Commission shall monitor the development of the budgetary situation and of the stock of government debt in the Member States with a view to identifying gross errors. In particular it shall examine compliance with budgetary discipline on the basis of the following two criteria:

(a)  whether the ratio of the planned or actual government deficit to gross domestic product exceeds a reference value, unless:

— either the ratio has declined substantially and continuously and reached a level that comes close to the reference value,

— or, alternatively, the excess over the reference value is only exceptional and temporary and the ratio remains close to the reference value;

(b)  whether the ratio of government debt to gross domestic product exceeds a reference value, unless the ratio is sufficiently diminishing and approaching the reference value at a satisfactory pace.

The reference values are specified in the Protocol on the excessive deficit procedure annexed to the Treaties.

3.    If a Member State does not fulfil the requirements under one or both of these criteria, the Commission shall prepare a report. The report of the Commission shall also take into account whether the government deficit exceeds government investment expenditure and take into account all other relevant factors, including the medium-term economic and budgetary position of the Member State.

The Commission may also prepare a report if, notwithstanding the fulfilment of the requirements under the criteria, it is of the opinion that there is a risk of an excessive deficit in a Member State.

4.    The Economic and Financial Committee shall formulate an opinion on the report of the Commission.

5.    If the Commission considers that an excessive deficit in a Member State exists or may occur, it shall address an opinion to the Member State concerned and shall inform the Council accordingly.

6.    The Council shall, on a proposal from the Commission, and having considered any observations which the Member State concerned may wish to make, decide after an overall assessment whether an excessive deficit exists.

7.    Where the Council decides, in accordance with paragraph 6, that an excessive deficit exists, it shall adopt, without undue delay, on a recommendation from the Commission, recommendations addressed to the Member State concerned with a view to bringing that situation to an end within a given period. Subject to the provisions of paragraph 8, these recommendations shall not be made public.

8.    Where it establishes that there has been no effective action in response to its recommendations within the period laid down, the Council may make its recommendations public.

9.    If a Member State persists in failing to put into practice the recommendations of the Council, the Council may decide to give notice to the Member State to take, within a specified time limit, measures for the deficit reduction which is judged necessary by the Council in order to remedy the situation.

In such a case, the Council may request the Member State concerned to submit reports in accordance with a specific timetable in order to examine the adjustment efforts of that Member State.

10.    The rights to bring actions provided for in Articles 258 and 259 may not be exercised within the framework of paragraphs 1 to 9 of this Article.

11.    As long as a Member State fails to comply with a decision taken in accordance with paragraph 9, the Council may decide to apply or, as the case may be, intensify one or more of the following measures:

— to require the Member State concerned to publish additional information, to be specified by the Council, before issuing bonds and securities,

— to invite the European Investment Bank to reconsider its lending policy towards the Member State concerned,

— to require the Member State concerned to make a non-interest-bearing deposit of an appropriate size with the Union until the excessive deficit has, in the view of the Council, been corrected,

— to impose fines of an appropriate size.

The President of the Council shall inform the European Parliament of the decisions taken.

12.    The Council shall abrogate some or all of its decisions or recommendations referred to in paragraphs 6 to 9 and 11 to the extent that the excessive deficit in the Member State concerned has, in the view of the Council, been corrected. If the Council has previously made public recommendations, it shall, as soon as the decision under paragraph 8 has been abrogated, make a public statement that an excessive deficit in the Member State concerned no longer exists.

13.    When taking the decisions or recommendations referred to in paragraphs 8, 9, 11 and 12, the Council shall act on a recommendation from the Commission.

When the Council adopts the measures referred to in paragraphs 6 to 9, 11 and 12, it shall act without taking into account the vote of the member of the Council representing the Member State concerned.

A qualified majority of the other members of the Council shall be defined in accordance with Article 238(3)(a).

14.    Further provisions relating to the implementation of the procedure described in this Article are set out in the Protocol on the excessive deficit procedure annexed to the Treaties.

C 326/102    EN    Official Journal of the European Union    26.10.2012

The Council shall, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament and the European Central Bank, adopt the appropriate provisions which shall then replace the said Protocol.

Subject to the other provisions of this paragraph, the Council shall, on a proposal from the Commission and after consulting the European Parliament, lay down detailed rules and definitions for the application of the provisions of the said Protocol.

CHAPTER 2

MONETARY POLICY

### Article 127
(ex Article 105 TEC)

1.    The primary objective of the European System of Central Banks (hereinafter referred to as 'the ESCB') shall be to maintain price stability. Without prejudice to the objective of price stability, the ESCB shall support the general economic policies in the Union with a view to contributing to the achievement of the objectives of the Union as laid down in Article 3 of the Treaty on European Union. The ESCB shall act in accordance with the principle of an open market economy with free competition, favouring an efficient allocation of resources, and in compliance with the principles set out in Article 119.

2.    The basic tasks to be carried out through the ESCB shall be:

— to define and implement the monetary policy of the Union,

— to conduct foreign-exchange operations consistent with the provisions of Article 219,

— to hold and manage the official foreign reserves of the Member States,

— to promote the smooth operation of payment systems.

3.    The third indent of paragraph 2 shall be without prejudice to the holding and management by the governments of Member States of foreign-exchange working balances.

4.    The European Central Bank shall be consulted:

— on any proposed Union act in its fields of competence,

— by national authorities regarding any draft legislative provision in its fields of competence, but within the limits and under the conditions set out by the Council in accordance with the procedure laid down in Article 129(4).

The European Central Bank may submit opinions to the appropriate Union institutions, bodies, offices or agencies or to national authorities on matters in its fields of competence.

5.    The ESCB shall contribute to the smooth conduct of policies pursued by the competent authorities relating to the prudential supervision of credit institutions and the stability of the financial system.

6.    The Council, acting by means of regulations in accordance with a special legislative procedure, may unanimously, and after consulting the European Parliament and the European Central Bank, confer specific tasks upon the European Central Bank concerning policies relating to the prudential supervision of credit institutions and other financial institutions with the exception of insurance undertakings.

## Article 128
### (ex Article 106 TEC)

1.    The European Central Bank shall have the exclusive right to authorise the issue of euro banknotes within the Union. The European Central Bank and the national central banks may issue such notes. The banknotes issued by the European Central Bank and the national central banks shall be the only such notes to have the status of legal tender within the Union.

2.    Member States may issue euro coins subject to approval by the European Central Bank of the volume of the issue. The Council, on a proposal from the Commission and after consulting the European Parliament and the European Central Bank, may adopt measures to harmonise the denominations and technical specifications of all coins intended for circulation to the extent necessary to permit their smooth circulation within the Union.

## Article 129
### (ex Article 107 TEC)

1.    The ESCB shall be governed by the decision-making bodies of the European Central Bank which shall be the Governing Council and the Executive Board.

2.    The Statute of the European System of Central Banks and of the European Central Bank (hereinafter referred to as 'the Statute of the ESCB and of the ECB') is laid down in a Protocol annexed to the Treaties.

3.    Articles 5.1, 5.2, 5.3, 17, 18, 19.1, 22, 23, 24, 26, 32.2, 32.3, 32.4, 32.6, 33.1(a) and 36 of the Statute of the ESCB and of the ECB may be amended by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure. They shall act either on a recommendation from the European Central Bank and after consulting the Commission or on a proposal from the Commission and after consulting the European Central Bank.

4.    The Council, either on a proposal from the Commission and after consulting the European Parliament and the European Central Bank or on a recommendation from the European Central Bank and after consulting the European Parliament and the Commission, shall adopt the provisions referred to in Articles 4, 5.4, 19.2, 20, 28.1, 29.2, 30.4 and 34.3 of the Statute of the ESCB and of the ECB.

## Article 130

### (ex Article 108 TEC)

When exercising the powers and carrying out the tasks and duties conferred upon them by the Treaties and the Statute of the ESCB and of the ECB, neither the European Central Bank, nor a national central bank, nor any member of their decision-making bodies shall seek or take instructions from Union institutions, bodies, offices or agencies, from any government of a Member State or from any other body. The Union institutions, bodies, offices or agencies and the governments of the Member States undertake to respect this principle and not to seek to influence the members of the decision-making bodies of the European Central Bank or of the national central banks in the performance of their tasks.

## Article 131

### (ex Article 109 TEC)

Each Member State shall ensure that its national legislation including the statutes of its national central bank is compatible with the Treaties and the Statute of the ESCB and of the ECB.

## Article 132

### (ex Article 110 TEC)

1.    In order to carry out the tasks entrusted to the ESCB, the European Central Bank shall, in accordance with the provisions of the Treaties and under the conditions laid down in the Statute of the ESCB and of the ECB:

— make regulations to the extent necessary to implement the tasks defined in Article 3.1, first indent, Articles 19.1, 22 and 25.2 of the Statute of the ESCB and of the ECB in cases which shall be laid down in the acts of the Council referred to in Article 129(4),

— take decisions necessary for carrying out the tasks entrusted to the ESCB under the Treaties and the Statute of the ESCB and of the ECB,

— make recommendations and deliver opinions.

2.    The European Central Bank may decide to publish its decisions, recommendations and opinions.

3.    Within the limits and under the conditions adopted by the Council under the procedure laid down in Article 129(4), the European Central Bank shall be entitled to impose fines or periodic penalty payments on undertakings for failure to comply with obligations under its regulations and decisions.

EN  Official Journal of the European Union

*Article 133*

Without prejudice to the powers of the European Central Bank, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall lay down the measures necessary for the use of the euro as the single currency. Such measures shall be adopted after consultation of the European Central Bank.

CHAPTER 3

INSTITUTIONAL PROVISIONS

*Article 134*
(ex Article 114 TEC)

1.    In order to promote coordination of the policies of Member States to the full extent needed for the functioning of the internal market, an Economic and Financial Committee is hereby set up.

2.    The Economic and Financial Committee shall have the following tasks:

— to deliver opinions at the request of the Council or of the Commission, or on its own initiative for submission to those institutions,

— to keep under review the economic and financial situation of the Member States and of the Union and to report regularly thereon to the Council and to the Commission, in particular on financial relations with third countries and international institutions,

— without prejudice to Article 240, to contribute to the preparation of the work of the Council referred to in Articles 66, 75, 121(2), (3), (4) and (6), 122, 124, 125, 126, 127(6), 128(2), 129(3) and (4), 138, 140(2) and (3), 143, 144(2) and (3), and in Article 219, and to carry out other advisory and preparatory tasks assigned to it by the Council,

— to examine, at least once a year, the situation regarding the movement of capital and the freedom of payments, as they result from the application of the Treaties and of measures adopted by the Council; the examination shall cover all measures relating to capital movements and payments; the Committee shall report to the Commission and to the Council on the outcome of this examination.

The Member States, the Commission and the European Central Bank shall each appoint no more than two members of the Committee.

3.    The Council shall, on a proposal from the Commission and after consulting the European Central Bank and the Committee referred to in this Article, lay down detailed provisions concerning the composition of the Economic and Financial Committee. The President of the Council shall inform the European Parliament of such a decision.

4.    In addition to the tasks set out in paragraph 2, if and as long as there are Member States with a derogation as referred to in Article 139, the Committee shall keep under review the monetary and financial situation and the general payments system of those Member States and report regularly thereon to the Council and to the Commission.

## Article 135

(ex Article 115 TEC)

For matters within the scope of Articles 121(4), 126 with the exception of paragraph 14, 138, 140(1), 140(2), first subparagraph, 140(3) and 219, the Council or a Member State may request the Commission to make a recommendation or a proposal, as appropriate. The Commission shall examine this request and submit its conclusions to the Council without delay.

## CHAPTER 4

## PROVISIONS SPECIFIC TO MEMBER STATES WHOSE CURRENCY IS THE EURO

## Article 136

1.    In order to ensure the proper functioning of economic and monetary union, and in accordance with the relevant provisions of the Treaties, the Council shall, in accordance with the relevant procedure from among those referred to in Articles 121 and 126, with the exception of the procedure set out in Article 126(14), adopt measures specific to those Member States whose currency is the euro:

(a) to strengthen the coordination and surveillance of their budgetary discipline;

(b) to set out economic policy guidelines for them, while ensuring that they are compatible with those adopted for the whole of the Union and are kept under surveillance.

2.    For those measures set out in paragraph 1, only members of the Council representing Member States whose currency is the euro shall take part in the vote.

A qualified majority of the said members shall be defined in accordance with Article 238(3)(a).

## Article 137

Arrangements for meetings between ministers of those Member States whose currency is the euro are laid down by the Protocol on the Euro Group.

## Article 138

(ex Article 111(4), TEC)

1.    In order to secure the euro's place in the international monetary system, the Council, on a proposal from the Commission, shall adopt a decision establishing common positions on matters of particular interest for economic and monetary union within the competent international financial institutions and conferences. The Council shall act after consulting the European Central Bank.

2.    The Council, on a proposal from the Commission, may adopt appropriate measures to ensure unified representation within the international financial institutions and conferences. The Council shall act after consulting the European Central Bank.

3.    For the measures referred to in paragraphs 1 and 2, only members of the Council representing Member States whose currency is the euro shall take part in the vote.

A qualified majority of the said members shall be defined in accordance with Article 238(3)(a).

## CHAPTER 5

## TRANSITIONAL PROVISIONS

## Article 139

1.    Member States in respect of which the Council has not decided that they fulfil the necessary conditions for the adoption of the euro shall hereinafter be referred to as 'Member States with a derogation'.

2.    The following provisions of the Treaties shall not apply to Member States with a derogation:

(a) adoption of the parts of the broad economic policy guidelines which concern the euro area generally (Article 121(2));

(b) coercive means of remedying excessive deficits (Article 126(9) and (11));

(c) the objectives and tasks of the ESCB (Article 127(1) to (3) and (5));

(d) issue of the euro (Article 128);

(e) acts of the European Central Bank (Article 132);

(f)  measures governing the use of the euro (Article 133);

(g)  monetary agreements and other measures relating to exchange-rate policy (Article 219);

(h)  appointment of members of the Executive Board of the European Central Bank (Article 283(2));

(i)  decisions establishing common positions on issues of particular relevance for economic and monetary union within the competent international financial institutions and conferences (Article 138(1));

(j)  measures to ensure unified representation within the international financial institutions and conferences (Article 138(2)).

In the Articles referred to in points (a) to (j), 'Member States' shall therefore mean Member States whose currency is the euro.

3.    Under Chapter IX of the Statute of the ESCB and of the ECB, Member States with a derogation and their national central banks are excluded from rights and obligations within the ESCB.

4.    The voting rights of members of the Council representing Member States with a derogation shall be suspended for the adoption by the Council of the measures referred to in the Articles listed in paragraph 2, and in the following instances:

(a)  recommendations made to those Member States whose currency is the euro in the framework of multilateral surveillance, including on stability programmes and warnings (Article 121(4));

(b)  measures relating to excessive deficits concerning those Member States whose currency is the euro (Article 126(6), (7), (8), (12) and (13)).

A qualified majority of the other members of the Council shall be defined in accordance with Article 238(3)(a).

## Article 140

*(ex Articles 121(1), 122(2), second sentence, and 123(5) TEC)*

1.    At least once every two years, or at the request of a Member State with a derogation, the Commission and the European Central Bank shall report to the Council on the progress made by the Member States with a derogation in fulfilling their obligations regarding the achievement of

economic and monetary union. These reports shall include an examination of the compatibility between the national legislation of each of these Member States, including the statutes of its national central bank, and Articles 130 and 131 and the Statute of the ESCB and of the ECB. The reports shall also examine the achievement of a high degree of sustainable convergence by reference to the fulfilment by each Member State of the following criteria:

— the achievement of a high degree of price stability; this will be apparent from a rate of inflation which is close to that of, at most, the three best performing Member States in terms of price stability,

— the sustainability of the government financial position; this will be apparent from having achieved a government budgetary position without a deficit that is excessive as determined in accordance with Article 126(6),

— the observance of the normal fluctuation margins provided for by the exchange-rate mechanism of the European Monetary System, for at least two years, without devaluing against the euro,

— the durability of convergence achieved by the Member State with a derogation and of its participation in the exchange-rate mechanism being reflected in the long-term interest-rate levels.

The four criteria mentioned in this paragraph and the relevant periods over which they are to be respected are developed further in a Protocol annexed to the Treaties. The reports of the Commission and the European Central Bank shall also take account of the results of the integration of markets, the situation and development of the balances of payments on current account and an examination of the development of unit labour costs and other price indices.

2.    After consulting the European Parliament and after discussion in the European Council, the Council shall, on a proposal from the Commission, decide which Member States with a derogation fulfil the necessary conditions on the basis of the criteria set out in paragraph 1, and abrogate the derogations of the Member States concerned.

The Council shall act having received a recommendation of a qualified majority of those among its members representing Member States whose currency is the euro. These members shall act within six months of the Council receiving the Commission's proposal.

The qualified majority of the said members, as referred to in the second subparagraph, shall be defined in accordance with Article 238(3)(a).

3.    If it is decided, in accordance with the procedure set out in paragraph 2, to abrogate a derogation, the Council shall, acting with the unanimity of the Member States whose currency is the euro and the Member State concerned, on a proposal from the Commission and after consulting

the European Central Bank, irrevocably fix the rate at which the euro shall be substituted for the currency of the Member State concerned, and take the other measures necessary for the introduction of the euro as the single currency in the Member State concerned.

## Article 141

### (ex Articles 123(3) and 117(2) first five indents, TEC)

1.    If and as long as there are Member States with a derogation, and without prejudice to Article 129(1), the General Council of the European Central Bank referred to in Article 44 of the Statute of the ESCB and of the ECB shall be constituted as a third decision-making body of the European Central Bank.

2.    If and as long as there are Member States with a derogation, the European Central Bank shall, as regards those Member States:

— strengthen cooperation between the national central banks,

— strengthen the coordination of the monetary policies of the Member States, with the aim of ensuring price stability,

— monitor the functioning of the exchange-rate mechanism,

— hold consultations concerning issues falling within the competence of the national central banks and affecting the stability of financial institutions and markets,

— carry out the former tasks of the European Monetary Cooperation Fund which had subsequently been taken over by the European Monetary Institute.

## Article 142

### (ex Article 124(1) TEC)

Each Member State with a derogation shall treat its exchange-rate policy as a matter of common interest. In so doing, Member States shall take account of the experience acquired in cooperation within the framework of the exchange-rate mechanism.

## Article 143

### (ex Article 119 TEC)

1.    Where a Member State with a derogation is in difficulties or is seriously threatened with difficulties as regards its balance of payments either as a result of an overall disequilibrium in its balance of payments, or as a result of the type of currency at its disposal, and where such difficulties are liable in particular to jeopardise the functioning of the internal market or the implementation of the common commercial policy, the Commission shall immediately investigate the position of the State in question and the action which, making use of all the means at its disposal, that State has taken or may take in accordance with the provisions of the Treaties. The Commission shall state what measures it recommends the State concerned to take.

If the action taken by a Member State with a derogation and the measures suggested by the Commission do not prove sufficient to overcome the difficulties which have arisen or which threaten, the Commission shall, after consulting the Economic and Financial Committee, recommend to the Council the granting of mutual assistance and appropriate methods therefor.

The Commission shall keep the Council regularly informed of the situation and of how it is developing.

2. The Council shall grant such mutual assistance; it shall adopt directives or decisions laying down the conditions and details of such assistance, which may take such forms as:

(a) a concerted approach to or within any other international organisations to which Member States with a derogation may have recourse;

(b) measures needed to avoid deflection of trade where the Member State with a derogation which is in difficulties maintains or reintroduces quantitative restrictions against third countries;

(c) the granting of limited credits by other Member States, subject to their agreement.

3. If the mutual assistance recommended by the Commission is not granted by the Council or if the mutual assistance granted and the measures taken are insufficient, the Commission shall authorise the Member State with a derogation which is in difficulties to take protective measures, the conditions and details of which the Commission shall determine.

Such authorisation may be revoked and such conditions and details may be changed by the Council.

### Article 144
#### (ex Article 120 TEC)

1. Where a sudden crisis in the balance of payments occurs and a decision within the meaning of Article 143(2) is not immediately taken, a Member State with a derogation may, as a precaution, take the necessary protective measures. Such measures must cause the least possible disturbance in the functioning of the internal market and must not be wider in scope than is strictly necessary to remedy the sudden difficulties which have arisen.

2. The Commission and the other Member States shall be informed of such protective measures not later than when they enter into force. The Commission may recommend to the Council the granting of mutual assistance under Article 143.

3. After the Commission has delivered a recommendation and the Economic and Financial Committee has been consulted, the Council may decide that the Member State concerned shall amend, suspend or abolish the protective measures referred to above.

# TITLE IX

## EMPLOYMENT

### Article 145

(ex Article 125 TEC)

Member States and the Union shall, in accordance with this Title, work towards developing a coordinated strategy for employment and particularly for promoting a skilled, trained and adaptable workforce and labour markets responsive to economic change with a view to achieving the objectives defined in Article 3 of the Treaty on European Union.

### Article 146

(ex Article 126 TEC)

1.    Member States, through their employment policies, shall contribute to the achievement of the objectives referred to in Article 145 in a way consistent with the broad guidelines of the economic policies of the Member States and of the Union adopted pursuant to Article 121(2).

2.    Member States, having regard to national practices related to the responsibilities of management and labour, shall regard promoting employment as a matter of common concern and shall coordinate their action in this respect within the Council, in accordance with the provisions of Article 148.

### Article 147

(ex Article 127 TEC)

1.    The Union shall contribute to a high level of employment by encouraging cooperation between Member States and by supporting and, if necessary, complementing their action. In doing so, the competences of the Member States shall be respected.

2.    The objective of a high level of employment shall be taken into consideration in the formulation and implementation of Union policies and activities.

### Article 148

(ex Article 128 TEC)

1.    The European Council shall each year consider the employment situation in the Union and adopt conclusions thereon, on the basis of a joint annual report by the Council and the Commission.

2.    On the basis of the conclusions of the European Council, the Council, on a proposal from the Commission and after consulting the European Parliament, the Economic and Social Committee, the Committee of the Regions and the Employment Committee referred to in Article 150, shall each year draw up guidelines which the Member States shall take into account in their employment policies. These guidelines shall be consistent with the broad guidelines adopted pursuant to Article 121(2).

3.    Each Member State shall provide the Council and the Commission with an annual report on the principal measures taken to implement its employment policy in the light of the guidelines for employment as referred to in paragraph 2.

4.    The Council, on the basis of the reports referred to in paragraph 3 and having received the views of the Employment Committee, shall each year carry out an examination of the implementation of the employment policies of the Member States in the light of the guidelines for employment. The Council, on a recommendation from the Commission, may, if it considers it appropriate in the light of that examination, make recommendations to Member States.

5.    On the basis of the results of that examination, the Council and the Commission shall make a joint annual report to the European Council on the employment situation in the Union and on the implementation of the guidelines for employment.

## Article 149
### (ex Article 129 TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, may adopt incentive measures designed to encourage cooperation between Member States and to support their action in the field of employment through initiatives aimed at developing exchanges of information and best practices, providing comparative analysis and advice as well as promoting innovative approaches and evaluating experiences, in particular by recourse to pilot projects.

Those measures shall not include harmonisation of the laws and regulations of the Member States.

## Article 150
### (ex Article 130 TEC)

The Council, acting by a simple majority after consulting the European Parliament, shall establish an Employment Committee with advisory status to promote coordination between Member States on employment and labour market policies. The tasks of the Committee shall be:

— to monitor the employment situation and employment policies in the Member States and the Union,

— without prejudice to Article 240, to formulate opinions at the request of either the Council or the Commission or on its own initiative, and to contribute to the preparation of the Council proceedings referred to in Article 148.

In fulfilling its mandate, the Committee shall consult management and labour.

Each Member State and the Commission shall appoint two members of the Committee.

# TITLE X

## SOCIAL POLICY

### Article 151
#### (ex Article 136 TEC)

The Union and the Member States, having in mind fundamental social rights such as those set out in the European Social Charter signed at Turin on 18 October 1961 and in the 1989 Community Charter of the Fundamental Social Rights of Workers, shall have as their objectives the promotion of employment, improved living and working conditions, so as to make possible their harmonisation while the improvement is being maintained, proper social protection, dialogue between management and labour, the development of human resources with a view to lasting high employment and the combating of exclusion.

To this end the Union and the Member States shall implement measures which take account of the diverse forms of national practices, in particular in the field of contractual relations, and the need to maintain the competitiveness of the Union economy.

They believe that such a development will ensue not only from the functioning of the internal market, which will favour the harmonisation of social systems, but also from the procedures provided for in the Treaties and from the approximation of provisions laid down by law, regulation or administrative action.

### Article 152

The Union recognises and promotes the role of the social partners at its level, taking into account the diversity of national systems. It shall facilitate dialogue between the social partners, respecting their autonomy.

The Tripartite Social Summit for Growth and Employment shall contribute to social dialogue.

### Article 153
#### (ex Article 137 TEC)

1.    With a view to achieving the objectives of Article 151, the Union shall support and complement the activities of the Member States in the following fields:

(a) improvement in particular of the working environment to protect workers' health and safety;

(b) working conditions;

(c) social security and social protection of workers;

(d) protection of workers where their employment contract is terminated;

(e) the information and consultation of workers;

(f) representation and collective defence of the interests of workers and employers, including co-determination, subject to paragraph 5;

(g) conditions of employment for third-country nationals legally residing in Union territory;

(h) the integration of persons excluded from the labour market, without prejudice to Article 166;

(i) equality between men and women with regard to labour market opportunities and treatment at work;

(j) the combating of social exclusion;

(k) the modernisation of social protection systems without prejudice to point (c).

2.    To this end, the European Parliament and the Council:

(a) may adopt measures designed to encourage cooperation between Member States through initiatives aimed at improving knowledge, developing exchanges of information and best practices, promoting innovative approaches and evaluating experiences, excluding any harmonisation of the laws and regulations of the Member States;

(b) may adopt, in the fields referred to in paragraph 1(a) to (i), by means of directives, minimum requirements for gradual implementation, having regard to the conditions and technical rules obtaining in each of the Member States. Such directives shall avoid imposing administrative, financial and legal constraints in a way which would hold back the creation and development of small and medium-sized undertakings.

The European Parliament and the Council shall act in accordance with the ordinary legislative procedure after consulting the Economic and Social Committee and the Committee of the Regions.

In the fields referred to in paragraph 1(c), (d), (f) and (g), the Council shall act unanimously, in accordance with a special legislative procedure, after consulting the European Parliament and the said Committees.

The Council, acting unanimously on a proposal from the Commission, after consulting the European Parliament, may decide to render the ordinary legislative procedure applicable to paragraph 1(d), (f) and (g).

3.    A Member State may entrust management and labour, at their joint request, with the implementation of directives adopted pursuant to paragraph 2, or, where appropriate, with the implementation of a Council decision adopted in accordance with Article 155.

In this case, it shall ensure that, no later than the date on which a directive or a decision must be transposed or implemented, management and labour have introduced the necessary measures by agreement, the Member State concerned being required to take any necessary measure enabling it at any time to be in a position to guarantee the results imposed by that directive or that decision.

4.    The provisions adopted pursuant to this Article:

— shall not affect the right of Member States to define the fundamental principles of their social security systems and must not significantly affect the financial equilibrium thereof,

— shall not prevent any Member State from maintaining or introducing more stringent protective measures compatible with the Treaties.

5.    The provisions of this Article shall not apply to pay, the right of association, the right to strike or the right to impose lock-outs.

### Article 154
(ex Article 138 TEC)

1.    The Commission shall have the task of promoting the consultation of management and labour at Union level and shall take any relevant measure to facilitate their dialogue by ensuring balanced support for the parties.

2.    To this end, before submitting proposals in the social policy field, the Commission shall consult management and labour on the possible direction of Union action.

3.    If, after such consultation, the Commission considers Union action advisable, it shall consult management and labour on the content of the envisaged proposal. Management and labour shall forward to the Commission an opinion or, where appropriate, a recommendation.

4.    On the occasion of the consultation referred to in paragraphs 2 and 3, management and labour may inform the Commission of their wish to initiate the process provided for in Article 155. The duration of this process shall not exceed nine months, unless the management and labour concerned and the Commission decide jointly to extend it.

### Article 155
(ex Article 139 TEC)

1.    Should management and labour so desire, the dialogue between them at Union level may lead to contractual relations, including agreements.

2.    Agreements concluded at Union level shall be implemented either in accordance with the procedures and practices specific to management and labour and the Member States or, in matters covered by Article 153, at the joint request of the signatory parties, by a Council decision on a proposal from the Commission. The European Parliament shall be informed.

The Council shall act unanimously where the agreement in question contains one or more provisions relating to one of the areas for which unanimity is required pursuant to Article 153(2).

## Article 156

(ex Article 140 TEC)

With a view to achieving the objectives of Article 151 and without prejudice to the other provisions of the Treaties, the Commission shall encourage cooperation between the Member States and facilitate the coordination of their action in all social policy fields under this Chapter, particularly in matters relating to:

— employment,

— labour law and working conditions,

— basic and advanced vocational training,

— social security,

— prevention of occupational accidents and diseases,

— occupational hygiene,

— the right of association and collective bargaining between employers and workers.

To this end, the Commission shall act in close contact with Member States by making studies, delivering opinions and arranging consultations both on problems arising at national level and on those of concern to international organisations, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

Before delivering the opinions provided for in this Article, the Commission shall consult the Economic and Social Committee.

## Article 157

(ex Article 141 TEC)

1.   Each Member State shall ensure that the principle of equal pay for male and female workers for equal work or work of equal value is applied.

2.   For the purpose of this Article, 'pay' means the ordinary basic or minimum wage or salary and any other consideration, whether in cash or in kind, which the worker receives directly or indirectly, in respect of his employment, from his employer.

Equal pay without discrimination based on sex means:

(a) that pay for the same work at piece rates shall be calculated on the basis of the same unit of measurement;

C 326/118     EN     Official Journal of the European Union     26.10.2012

(b) that pay for work at time rates shall be the same for the same job.

3.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, and after consulting the Economic and Social Committee, shall adopt measures to ensure the application of the principle of equal opportunities and equal treatment of men and women in matters of employment and occupation, including the principle of equal pay for equal work or work of equal value.

4.    With a view to ensuring full equality in practice between men and women in working life, the principle of equal treatment shall not prevent any Member State from maintaining or adopting measures providing for specific advantages in order to make it easier for the underrepresented sex to pursue a vocational activity or to prevent or compensate for disadvantages in professional careers.

## Article 158
### (ex Article 142 TEC)

Member States shall endeavour to maintain the existing equivalence between paid holiday schemes.

## Article 159
### (ex Article 143 TEC)

The Commission shall draw up a report each year on progress in achieving the objectives of Article 151, including the demographic situation in the Union. It shall forward the report to the European Parliament, the Council and the Economic and Social Committee.

## Article 160
### (ex Article 144 TEC)

The Council, acting by a simple majority after consulting the European Parliament, shall establish a Social Protection Committee with advisory status to promote cooperation on social protection policies between Member States and with the Commission. The tasks of the Committee shall be:

— to monitor the social situation and the development of social protection policies in the Member States and the Union,

— to promote exchanges of information, experience and good practice between Member States and with the Commission,

— without prejudice to Article 240, to prepare reports, formulate opinions or undertake other work within its fields of competence, at the request of either the Council or the Commission or on its own initiative.

In fulfilling its mandate, the Committee shall establish appropriate contacts with management and labour.

Each Member State and the Commission shall appoint two members of the Committee.

## Article 161

(ex Article 145 TEC)

The Commission shall include a separate chapter on social developments within the Union in its annual report to the European Parliament.

The European Parliament may invite the Commission to draw up reports on any particular problems concerning social conditions.

# TITLE XI

## THE EUROPEAN SOCIAL FUND

## Article 162

(ex Article 146 TEC)

In order to improve employment opportunities for workers in the internal market and to contribute thereby to raising the standard of living, a European Social Fund is hereby established in accordance with the provisions set out below; it shall aim to render the employment of workers easier and to increase their geographical and occupational mobility within the Union, and to facilitate their adaptation to industrial changes and to changes in production systems, in particular through vocational training and retraining.

## Article 163

(ex Article 147 TEC)

The Fund shall be administered by the Commission.

The Commission shall be assisted in this task by a Committee presided over by a Member of the Commission and composed of representatives of governments, trade unions and employers' organisations.

## Article 164

(ex Article 148 TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall adopt implementing regulations relating to the European Social Fund.

# TITLE XII

## EDUCATION, VOCATIONAL TRAINING, YOUTH AND SPORT

### Article 165

(ex Article 149 TEC)

1. The Union shall contribute to the development of quality education by encouraging cooperation between Member States and, if necessary, by supporting and supplementing their action, while fully respecting the responsibility of the Member States for the content of teaching and the organisation of education systems and their cultural and linguistic diversity.

The Union shall contribute to the promotion of European sporting issues, while taking account of the specific nature of sport, its structures based on voluntary activity and its social and educational function.

2. Union action shall be aimed at:

— developing the European dimension in education, particularly through the teaching and dissemination of the languages of the Member States,

— encouraging mobility of students and teachers, by encouraging inter alia, the academic recognition of diplomas and periods of study,

— promoting cooperation between educational establishments,

— developing exchanges of information and experience on issues common to the education systems of the Member States,

— encouraging the development of youth exchanges and of exchanges of socio-educational instructors, and encouraging the participation of young people in democratic life in Europe,

— encouraging the development of distance education,

— developing the European dimension in sport, by promoting fairness and openness in sporting competitions and cooperation between bodies responsible for sports, and by protecting the physical and moral integrity of sportsmen and sportswomen, especially the youngest sportsmen and sportswomen.

3. The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the field of education and sport, in particular the Council of Europe.

4. In order to contribute to the achievement of the objectives referred to in this Article:

— the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, after consulting the Economic and Social Committee and the Committee of the Regions, shall adopt incentive measures, excluding any harmonisation of the laws and regulations of the Member States,

— the Council, on a proposal from the Commission, shall adopt recommendations.

### Article 166
(ex Article 150 TEC)

1.    The Union shall implement a vocational training policy which shall support and supplement the action of the Member States, while fully respecting the responsibility of the Member States for the content and organisation of vocational training.

2.    Union action shall aim to:

— facilitate adaptation to industrial changes, in particular through vocational training and retraining,

— improve initial and continuing vocational training in order to facilitate vocational integration and reintegration into the labour market,

— facilitate access to vocational training and encourage mobility of instructors and trainees and particularly young people,

— stimulate cooperation on training between educational or training establishments and firms,

— develop exchanges of information and experience on issues common to the training systems of the Member States.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the sphere of vocational training.

4.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall adopt measures to contribute to the achievement of the objectives referred to in this Article, excluding any harmonisation of the laws and regulations of the Member States, and the Council, on a proposal from the Commission, shall adopt recommendations.

### TITLE XIII

#### CULTURE

### Article 167
(ex Article 151 TEC)

1.    The Union shall contribute to the flowering of the cultures of the Member States, while respecting their national and regional diversity and at the same time bringing the common cultural heritage to the fore.

C 326/122          EN          Official Journal of the European Union          26.10.2012

2.    Action by the Union shall be aimed at encouraging cooperation between Member States and, if necessary, supporting and supplementing their action in the following areas:

— improvement of the knowledge and dissemination of the culture and history of the European peoples,

— conservation and safeguarding of cultural heritage of European significance,

— non-commercial cultural exchanges,

— artistic and literary creation, including in the audiovisual sector.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the sphere of culture, in particular the Council of Europe.

4.    The Union shall take cultural aspects into account in its action under other provisions of the Treaties, in particular in order to respect and to promote the diversity of its cultures.

5.    In order to contribute to the achievement of the objectives referred to in this Article:

— the European Parliament and the Council acting in accordance with the ordinary legislative procedure and after consulting the Committee of the Regions, shall adopt incentive measures, excluding any harmonisation of the laws and regulations of the Member States,

— the Council, on a proposal from the Commission, shall adopt recommendations.

TITLE XIV

**PUBLIC HEALTH**

*Article 168*

(ex Article 152 TEC)

1.    A high level of human health protection shall be ensured in the definition and implementation of all Union policies and activities.

Union action, which shall complement national policies, shall be directed towards improving public health, preventing physical and mental illness and diseases, and obviating sources of danger to physical and mental health. Such action shall cover the fight against the major health scourges, by promoting research into their causes, their transmission and their prevention, as well as health information and education, and monitoring, early warning of and combating serious cross-border threats to health.

The Union shall complement the Member States' action in reducing drugs-related health damage, including information and prevention.

2.    The Union shall encourage cooperation between the Member States in the areas referred to in this Article and, if necessary, lend support to their action. It shall in particular encourage cooperation between the Member States to improve the complementarity of their health services in cross-border areas.

Member States shall, in liaison with the Commission, coordinate among themselves their policies and programmes in the areas referred to in paragraph 1. The Commission may, in close contact with the Member States, take any useful initiative to promote such coordination, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the sphere of public health.

4.    By way of derogation from Article 2(5) and Article 6(a) and in accordance with Article 4(2)(k) the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall contribute to the achievement of the objectives referred to in this Article through adopting in order to meet common safety concerns:

(a)  measures setting high standards of quality and safety of organs and substances of human origin, blood and blood derivatives; these measures shall not prevent any Member State from maintaining or introducing more stringent protective measures;

(b)  measures in the veterinary and phytosanitary fields which have as their direct objective the protection of public health;

(c)  measures setting high standards of quality and safety for medicinal products and devices for medical use.

5.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, may also adopt incentive measures designed to protect and improve human health and in particular to combat the major cross-border health scourges, measures concerning monitoring, early warning of and combating serious cross-border threats to health, and measures which have as their direct objective the protection of public health regarding tobacco and the abuse of alcohol, excluding any harmonisation of the laws and regulations of the Member States.

6.    The Council, on a proposal from the Commission, may also adopt recommendations for the purposes set out in this Article.

7.    Union action shall respect the responsibilities of the Member States for the definition of their health policy and for the organisation and delivery of health services and medical care. The

responsibilities of the Member States shall include the management of health services and medical care and the allocation of the resources assigned to them. The measures referred to in paragraph 4(a) shall not affect national provisions on the donation or medical use of organs and blood.

## TITLE XV

### CONSUMER PROTECTION

### *Article 169*
(ex Article 153 TEC)

1.    In order to promote the interests of consumers and to ensure a high level of consumer protection, the Union shall contribute to protecting the health, safety and economic interests of consumers, as well as to promoting their right to information, education and to organise themselves in order to safeguard their interests.

2.    The Union shall contribute to the attainment of the objectives referred to in paragraph 1 through:

(a) measures adopted pursuant to Article 114 in the context of the completion of the internal market;

(b) measures which support, supplement and monitor the policy pursued by the Member States.

3.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall adopt the measures referred to in paragraph 2(b).

4.    Measures adopted pursuant to paragraph 3 shall not prevent any Member State from maintaining or introducing more stringent protective measures. Such measures must be compatible with the Treaties. The Commission shall be notified of them.

## TITLE XVI

### TRANS-EUROPEAN NETWORKS

### *Article 170*
(ex Article 154 TEC)

1.    To help achieve the objectives referred to in Articles 26 and 174 and to enable citizens of the Union, economic operators and regional and local communities to derive full benefit from the setting-up of an area without internal frontiers, the Union shall contribute to the establishment and development of trans-European networks in the areas of transport, telecommunications and energy infrastructures.

2.    Within the framework of a system of open and competitive markets, action by the Union shall aim at promoting the interconnection and interoperability of national networks as well as access to such networks. It shall take account in particular of the need to link island, landlocked and peripheral regions with the central regions of the Union.

### Article 171

(ex Article 155 TEC)

1.    In order to achieve the objectives referred to in Article 170, the Union:

— shall establish a series of guidelines covering the objectives, priorities and broad lines of measures envisaged in the sphere of trans-European networks; these guidelines shall identify projects of common interest,

— shall implement any measures that may prove necessary to ensure the interoperability of the networks, in particular in the field of technical standardisation,

— may support projects of common interest supported by Member States, which are identified in the framework of the guidelines referred to in the first indent, particularly through feasibility studies, loan guarantees or interest-rate subsidies; the Union may also contribute, through the Cohesion Fund set up pursuant to Article 177, to the financing of specific projects in Member States in the area of transport infrastructure.

The Union's activities shall take into account the potential economic viability of the projects.

2.    Member States shall, in liaison with the Commission, coordinate among themselves the policies pursued at national level which may have a significant impact on the achievement of the objectives referred to in Article 170. The Commission may, in close cooperation with the Member State, take any useful initiative to promote such coordination.

3.    The Union may decide to cooperate with third countries to promote projects of mutual interest and to ensure the interoperability of networks.

### Article 172

(ex Article 156 TEC)

The guidelines and other measures referred to in Article 171(1) shall be adopted by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

Guidelines and projects of common interest which relate to the territory of a Member State shall require the approval of the Member State concerned.

# TITLE XVII

## INDUSTRY

### *Article 173*

(ex Article 157 TEC)

1.    The Union and the Member States shall ensure that the conditions necessary for the competitiveness of the Union's industry exist.

For that purpose, in accordance with a system of open and competitive markets, their action shall be aimed at:

— speeding up the adjustment of industry to structural changes,

— encouraging an environment favourable to initiative and to the development of undertakings throughout the Union, particularly small and medium-sized undertakings,

— encouraging an environment favourable to cooperation between undertakings,

— fostering better exploitation of the industrial potential of policies of innovation, research and technological development.

2.    The Member States shall consult each other in liaison with the Commission and, where necessary, shall coordinate their action. The Commission may take any useful initiative to promote such coordination, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

3.    The Union shall contribute to the achievement of the objectives set out in paragraph 1 through the policies and activities it pursues under other provisions of the Treaties. The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, may decide on specific measures in support of action taken in the Member States to achieve the objectives set out in paragraph 1, excluding any harmonisation of the laws and regulations of the Member States.

This Title shall not provide a basis for the introduction by the Union of any measure which could lead to a distortion of competition or contains tax provisions or provisions relating to the rights and interests of employed persons.

# TITLE XVIII

## ECONOMIC, SOCIAL AND TERRITORIAL COHESION

### Article 174

(ex Article 158 TEC)

In order to promote its overall harmonious development, the Union shall develop and pursue its actions leading to the strengthening of its economic, social and territorial cohesion.

In particular, the Union shall aim at reducing disparities between the levels of development of the various regions and the backwardness of the least favoured regions.

Among the regions concerned, particular attention shall be paid to rural areas, areas affected by industrial transition, and regions which suffer from severe and permanent natural or demographic handicaps such as the northernmost regions with very low population density and island, cross-border and mountain regions.

### Article 175

(ex Article 159 TEC)

Member States shall conduct their economic policies and shall coordinate them in such a way as, in addition, to attain the objectives set out in Article 174. The formulation and implementation of the Union's policies and actions and the implementation of the internal market shall take into account the objectives set out in Article 174 and shall contribute to their achievement. The Union shall also support the achievement of these objectives by the action it takes through the Structural Funds (European Agricultural Guidance and Guarantee Fund, Guidance Section; European Social Fund; European Regional Development Fund), the European Investment Bank and the other existing Financial Instruments.

The Commission shall submit a report to the European Parliament, the Council, the Economic and Social Committee and the Committee of the Regions every three years on the progress made towards achieving economic, social and territorial cohesion and on the manner in which the various means provided for in this Article have contributed to it. This report shall, if necessary, be accompanied by appropriate proposals.

If specific actions prove necessary outside the Funds and without prejudice to the measures decided upon within the framework of the other Union policies, such actions may be adopted by the European Parliament and the Council acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

### Article 176

(ex Article 160 TEC)

The European Regional Development Fund is intended to help to redress the main regional imbalances in the Union through participation in the development and structural adjustment of regions whose development is lagging behind and in the conversion of declining industrial regions.

## Article 177
### (ex Article 161 TEC)

Without prejudice to Article 178, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure and consulting the Economic and Social Committee and the Committee of the Regions, shall define the tasks, priority objectives and the organisation of the Structural Funds, which may involve grouping the Funds. The general rules applicable to them and the provisions necessary to ensure their effectiveness and the coordination of the Funds with one another and with the other existing Financial Instruments shall also be defined by the same procedure.

A Cohesion Fund set up in accordance with the same procedure shall provide a financial contribution to projects in the fields of environment and trans-European networks in the area of transport infrastructure.

## Article 178
### (ex Article 162 TEC)

Implementing regulations relating to the European Regional Development Fund shall be taken by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

With regard to the European Agricultural Guidance and Guarantee Fund, Guidance Section, and the European Social Fund, Articles 43 and 164 respectively shall continue to apply.

## TITLE XIX

### RESEARCH AND TECHNOLOGICAL DEVELOPMENT AND SPACE

## Article 179
### (ex Article 163 TEC)

1.    The Union shall have the objective of strengthening its scientific and technological bases by achieving a European research area in which researchers, scientific knowledge and technology circulate freely, and encouraging it to become more competitive, including in its industry, while promoting all the research activities deemed necessary by virtue of other Chapters of the Treaties.

2.    For this purpose the Union shall, throughout the Union, encourage undertakings, including small and medium-sized undertakings, research centres and universities in their research and technological development activities of high quality; it shall support their efforts to cooperate with one another, aiming, notably, at permitting researchers to cooperate freely across borders and at enabling undertakings to exploit the internal market potential to the full, in particular through the opening-up of national public contracts, the definition of common standards and the removal of legal and fiscal obstacles to that cooperation.

3.    All Union activities under the Treaties in the area of research and technological development, including demonstration projects, shall be decided on and implemented in accordance with the provisions of this Title.

### Article 180
(ex Article 164 TEC)

In pursuing these objectives, the Union shall carry out the following activities, complementing the activities carried out in the Member States:

(a) implementation of research, technological development and demonstration programmes, by promoting cooperation with and between undertakings, research centres and universities;

(b) promotion of cooperation in the field of Union research, technological development and demonstration with third countries and international organisations;

(c) dissemination and optimisation of the results of activities in Union research, technological development and demonstration;

(d) stimulation of the training and mobility of researchers in the Union.

### Article 181
(ex Article 165 TEC)

1.    The Union and the Member States shall coordinate their research and technological development activities so as to ensure that national policies and Union policy are mutually consistent.

2.    In close cooperation with the Member State, the Commission may take any useful initiative to promote the coordination referred to in paragraph 1, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

### Article 182
(ex Article 166 TEC)

1.    A multiannual framework programme, setting out all the activities of the Union, shall be adopted by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure after consulting the Economic and Social Committee.

The framework programme shall:

— establish the scientific and technological objectives to be achieved by the activities provided for in Article 180 and fix the relevant priorities,

C 326/130          EN          Official Journal of the European Union          26.10.2012

— indicate the broad lines of such activities,

— fix the maximum overall amount and the detailed rules for Union financial participation in the framework programme and the respective shares in each of the activities provided for.

2.    The framework programme shall be adapted or supplemented as the situation changes.

3.    The framework programme shall be implemented through specific programmes developed within each activity. Each specific programme shall define the detailed rules for implementing it, fix its duration and provide for the means deemed necessary. The sum of the amounts deemed necessary, fixed in the specific programmes, may not exceed the overall maximum amount fixed for the framework programme and each activity.

4.    The Council, acting in accordance with a special legislative procedure and after consulting the European Parliament and the Economic and Social Committee, shall adopt the specific programmes.

5.    As a complement to the activities planned in the multiannual framework programme, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall establish the measures necessary for the implementation of the European research area.

## Article 183
### (ex Article 167 TEC)

For the implementation of the multiannual framework programme the Union shall:

— determine the rules for the participation of undertakings, research centres and universities,

— lay down the rules governing the dissemination of research results.

## Article 184
### (ex Article 168 TEC)

In implementing the multiannual framework programme, supplementary programmes may be decided on involving the participation of certain Member States only, which shall finance them subject to possible Union participation.

The Union shall adopt the rules applicable to supplementary programmes, particularly as regards the dissemination of knowledge and access by other Member States.

EN

## Article 185

(ex Article 169 TEC)

In implementing the multiannual framework programme, the Union may make provision, in agreement with the Member States concerned, for participation in research and development programmes undertaken by several Member States, including participation in the structures created for the execution of those programmes.

## Article 186

(ex Article 170 TEC)

In implementing the multiannual framework programme the Union may make provision for cooperation in Union research, technological development and demonstration with third countries or international organisations.

The detailed arrangements for such cooperation may be the subject of agreements between the Union and the third parties concerned.

## Article 187

(ex Article 171 TEC)

The Union may set up joint undertakings or any other structure necessary for the efficient execution of Union research, technological development and demonstration programmes.

## Article 188

(ex Article 172 TEC)

The Council, on a proposal from the Commission and after consulting the European Parliament and the Economic and Social Committee, shall adopt the provisions referred to in Article 187.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall adopt the provisions referred to in Articles 183, 184 and 185. Adoption of the supplementary programmes shall require the agreement of the Member States concerned.

## Article 189

1.    To promote scientific and technical progress, industrial competitiveness and the implementation of its policies, the Union shall draw up a European space policy. To this end, it may promote joint initiatives, support research and technological development and coordinate the efforts needed for the exploration and exploitation of space.

2.    To contribute to attaining the objectives referred to in paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish the necessary measures, which may take the form of a European space programme, excluding any harmonisation of the laws and regulations of the Member States.

3.    The Union shall establish any appropriate relations with the European Space Agency.

4.    This Article shall be without prejudice to the other provisions of this Title.

## Article 190
### (ex Article 173 TEC)

At the beginning of each year the Commission shall send a report to the European Parliament and to the Council. The report shall include information on research and technological development activities and the dissemination of results during the previous year, and the work programme for the current year.

# TITLE XX

## ENVIRONMENT

## Article 191
### (ex Article 174 TEC)

1.    Union policy on the environment shall contribute to pursuit of the following objectives:

— preserving, protecting and improving the quality of the environment,

— protecting human health,

— prudent and rational utilisation of natural resources,

— promoting measures at international level to deal with regional or worldwide environmental problems, and in particular combating climate change.

2.    Union policy on the environment shall aim at a high level of protection taking into account the diversity of situations in the various regions of the Union. It shall be based on the precautionary principle and on the principles that preventive action should be taken, that environmental damage should as a priority be rectified at source and that the polluter should pay.

In this context, harmonisation measures answering environmental protection requirements shall include, where appropriate, a safeguard clause allowing Member States to take provisional measures, for non-economic environmental reasons, subject to a procedure of inspection by the Union.

3.    In preparing its policy on the environment, the Union shall take account of:

— available scientific and technical data,

— environmental conditions in the various regions of the Union,

— the potential benefits and costs of action or lack of action,

— the economic and social development of the Union as a whole and the balanced development of its regions.

4.    Within their respective spheres of competence, the Union and the Member States shall cooperate with third countries and with the competent international organisations. The arrangements for Union cooperation may be the subject of agreements between the Union and the third parties concerned.

The previous subparagraph shall be without prejudice to Member States' competence to negotiate in international bodies and to conclude international agreements.

*Article 192*

(ex Article 175 TEC)

1.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall decide what action is to be taken by the Union in order to achieve the objectives referred to in Article 191.

2.    By way of derogation from the decision-making procedure provided for in paragraph 1 and without prejudice to Article 114, the Council acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament, the Economic and Social Committee and the Committee of the Regions, shall adopt:

(a)  provisions primarily of a fiscal nature;

(b)  measures affecting:

— town and country planning,

— quantitative management of water resources or affecting, directly or indirectly, the availability of those resources,

— land use, with the exception of waste management;

(c)  measures significantly affecting a Member State's choice between different energy sources and the general structure of its energy supply.

The Council, acting unanimously on a proposal from the Commission and after consulting the European Parliament, the Economic and Social Committee and the Committee of the Regions, may make the ordinary legislative procedure applicable to the matters referred to in the first subparagraph.

3.    General action programmes setting out priority objectives to be attained shall be adopted by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

The measures necessary for the implementation of these programmes shall be adopted under the terms of paragraph 1 or 2, as the case may be.

4.    Without prejudice to certain measures adopted by the Union, the Member States shall finance and implement the environment policy.

5.    Without prejudice to the principle that the polluter should pay, if a measure based on the provisions of paragraph 1 involves costs deemed disproportionate for the public authorities of a Member State, such measure shall lay down appropriate provisions in the form of:

— temporary derogations, and/or

— financial support from the Cohesion Fund set up pursuant to Article 177.

### Article 193
#### (ex Article 176 TEC)

The protective measures adopted pursuant to Article 192 shall not prevent any Member State from maintaining or introducing more stringent protective measures. Such measures must be compatible with the Treaties. They shall be notified to the Commission.

## TITLE XXI

### ENERGY

### Article 194

1.    In the context of the establishment and functioning of the internal market and with regard for the need to preserve and improve the environment, Union policy on energy shall aim, in a spirit of solidarity between Member States, to:

(a)  ensure the functioning of the energy market;

(b)  ensure security of energy supply in the Union;

(c)  promote energy efficiency and energy saving and the development of new and renewable forms of energy; and

(d)  promote the interconnection of energy networks.

2.    Without prejudice to the application of other provisions of the Treaties, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish the measures necessary to achieve the objectives in paragraph 1. Such measures shall be adopted after consultation of the Economic and Social Committee and the Committee of the Regions.

Such measures shall not affect a Member State's right to determine the conditions for exploiting its energy resources, its choice between different energy sources and the general structure of its energy supply, without prejudice to Article 192(2)(c).

3.    By way of derogation from paragraph 2, the Council, acting in accordance with a special legislative procedure, shall unanimously and after consulting the European Parliament, establish the measures referred to therein when they are primarily of a fiscal nature.

# TITLE XXII

## TOURISM

### Article 195

1.    The Union shall complement the action of the Member States in the tourism sector, in particular by promoting the competitiveness of Union undertakings in that sector.

To that end, Union action shall be aimed at:

(a) encouraging the creation of a favourable environment for the development of undertakings in this sector;

(b) promoting cooperation between the Member States, particularly by the exchange of good practice.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish specific measures to complement actions within the Member States to achieve the objectives referred to in this Article, excluding any harmonisation of the laws and regulations of the Member States.

# TITLE XXIII

## CIVIL PROTECTION

### Article 196

1.    The Union shall encourage cooperation between Member States in order to improve the effectiveness of systems for preventing and protecting against natural or man-made disasters.

Union action shall aim to:

(a) support and complement Member States' action at national, regional and local level in risk prevention, in preparing their civil-protection personnel and in responding to natural or man-made disasters within the Union;

(b) promote swift, effective operational cooperation within the Union between national civil-protection services;

(c) promote consistency in international civil-protection work.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure shall establish the measures necessary to help achieve the objectives referred to in paragraph 1, excluding any harmonisation of the laws and regulations of the Member States.

## TITLE XXIV

### ADMINISTRATIVE COOPERATION

### Article 197

1.    Effective implementation of Union law by the Member States, which is essential for the proper functioning of the Union, shall be regarded as a matter of common interest.

2.    The Union may support the efforts of Member States to improve their administrative capacity to implement Union law. Such action may include facilitating the exchange of information and of civil servants as well as supporting training schemes. No Member State shall be obliged to avail itself of such support. The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall establish the necessary measures to this end, excluding any harmonisation of the laws and regulations of the Member States.

3.    This Article shall be without prejudice to the obligations of the Member States to implement Union law or to the prerogatives and duties of the Commission. It shall also be without prejudice to other provisions of the Treaties providing for administrative cooperation among the Member States and between them and the Union.

# PART FOUR

## ASSOCIATION OF THE OVERSEAS COUNTRIES AND TERRITORIES

### Article 198

(ex Article 182 TEC)

The Member States agree to associate with the Union the non-European countries and territories which have special relations with Denmark, France, the Netherlands and the United Kingdom. These countries and territories (hereinafter called the 'countries and territories') are listed in Annex II.

The purpose of association shall be to promote the economic and social development of the countries and territories and to establish close economic relations between them and the Union as a whole.

In accordance with the principles set out in the preamble to this Treaty, association shall serve primarily to further the interests and prosperity of the inhabitants of these countries and territories in order to lead them to the economic, social and cultural development to which they aspire.

### Article 199

(ex Article 183 TEC)

Association shall have the following objectives.

1. Member States shall apply to their trade with the countries and territories the same treatment as they accord each other pursuant to the Treaties.

2. Each country or territory shall apply to its trade with Member States and with the other countries and territories the same treatment as that which it applies to the European State with which is has special relations.

3. The Member States shall contribute to the investments required for the progressive development of these countries and territories.

4. For investments financed by the Union, participation in tenders and supplies shall be open on equal terms to all natural and legal persons who are nationals of a Member State or of one of the countries and territories.

5. In relations between Member States and the countries and territories the right of establishment of nationals and companies or firms shall be regulated in accordance with the provisions and procedures laid down in the Chapter relating to the right of establishment and on a non-discriminatory basis, subject to any special provisions laid down pursuant to Article 203.

### Article 200
(ex Article 184 TEC)

1.    Customs duties on imports into the Member States of goods originating in the countries and territories shall be prohibited in conformity with the prohibition of customs duties between Member States in accordance with the provisions of the Treaties.

2.    Customs duties on imports into each country or territory from Member States or from the other countries or territories shall be prohibited in accordance with the provisions of Article 30.

3.    The countries and territories may, however, levy customs duties which meet the needs of their development and industrialisation or produce revenue for their budgets.

The duties referred to in the preceding subparagraph may not exceed the level of those imposed on imports of products from the Member State with which each country or territory has special relations.

4.    Paragraph 2 shall not apply to countries and territories which, by reason of the particular international obligations by which they are bound, already apply a non-discriminatory customs tariff.

5.    The introduction of or any change in customs duties imposed on goods imported into the countries and territories shall not, either in law or in fact, give rise to any direct or indirect discrimination between imports from the various Member States.

### Article 201
(ex Article 185 TEC)

If the level of the duties applicable to goods from a third country on entry into a country or territory is liable, when the provisions of Article 200(1) have been applied, to cause deflections of trade to the detriment of any Member State, the latter may request the Commission to propose to the other Member States the measures needed to remedy the situation.

### Article 202
(ex Article 186 TEC)

Subject to the provisions relating to public health, public security or public policy, freedom of movement within Member States for workers from the countries and territories, and within the countries and territories for workers from Member States, shall be regulated by acts adopted in accordance with Article 203.

### Article 203
### (ex Article 187 TEC)

The Council, acting unanimously on a proposal from the Commission, shall, on the basis of the experience acquired under the association of the countries and territories with the Union and of the principles set out in the Treaties, lay down provisions as regards the detailed rules and the procedure for the association of the countries and territories with the Union. Where the provisions in question are adopted by the Council in accordance with a special legislative procedure, it shall act unanimously on a proposal from the Commission and after consulting the European Parliament.

### Article 204
### (ex Article 188 TEC)

The provisions of Articles 198 to 203 shall apply to Greenland, subject to the specific provisions for Greenland set out in the Protocol on special arrangements for Greenland, annexed to the Treaties.

# PART FIVE

# THE UNION'S EXTERNAL ACTION

## TITLE I

## GENERAL PROVISIONS ON THE UNION'S EXTERNAL ACTION

### Article 205

The Union's action on the international scene, pursuant to this Part, shall be guided by the principles, pursue the objectives and be conducted in accordance with the general provisions laid down in Chapter 1 of Title V of the Treaty on European Union.

## TITLE II

## COMMON COMMERCIAL POLICY

### Article 206
### (ex Article 131 TEC)

By establishing a customs union in accordance with Articles 28 to 32, the Union shall contribute, in the common interest, to the harmonious development of world trade, the progressive abolition of restrictions on international trade and on foreign direct investment, and the lowering of customs and other barriers.

*Article 207*

(ex Article 133 TEC)

1.    The common commercial policy shall be based on uniform principles, particularly with regard to changes in tariff rates, the conclusion of tariff and trade agreements relating to trade in goods and services, and the commercial aspects of intellectual property, foreign direct investment, the achievement of uniformity in measures of liberalisation, export policy and measures to protect trade such as those to be taken in the event of dumping or subsidies. The common commercial policy shall be conducted in the context of the principles and objectives of the Union's external action.

2.    The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall adopt the measures defining the framework for implementing the common commercial policy.

3.    Where agreements with one or more third countries or international organisations need to be negotiated and concluded, Article 218 shall apply, subject to the special provisions of this Article.

The Commission shall make recommendations to the Council, which shall authorise it to open the necessary negotiations. The Council and the Commission shall be responsible for ensuring that the agreements negotiated are compatible with internal Union policies and rules.

The Commission shall conduct these negotiations in consultation with a special committee appointed by the Council to assist the Commission in this task and within the framework of such directives as the Council may issue to it. The Commission shall report regularly to the special committee and to the European Parliament on the progress of negotiations.

4.    For the negotiation and conclusion of the agreements referred to in paragraph 3, the Council shall act by a qualified majority.

For the negotiation and conclusion of agreements in the fields of trade in services and the commercial aspects of intellectual property, as well as foreign direct investment, the Council shall act unanimously where such agreements include provisions for which unanimity is required for the adoption of internal rules.

The Council shall also act unanimously for the negotiation and conclusion of agreements:

(a) in the field of trade in cultural and audiovisual services, where these agreements risk prejudicing the Union's cultural and linguistic diversity;

(b) in the field of trade in social, education and health services, where these agreements risk seriously disturbing the national organisation of such services and prejudicing the responsibility of Member States to deliver them.

5.    The negotiation and conclusion of international agreements in the field of transport shall be subject to Title VI of Part Three and to Article 218.

6.    The exercise of the competences conferred by this Article in the field of the common commercial policy shall not affect the delimitation of competences between the Union and the Member States, and shall not lead to harmonisation of legislative or regulatory provisions of the Member States in so far as the Treaties exclude such harmonisation.

# TITLE III

## COOPERATION WITH THIRD COUNTRIES AND HUMANITARIAN AID

### CHAPTER 1

### DEVELOPMENT COOPERATION

### Article 208
(ex Article 177 TEC)

1.    Union policy in the field of development cooperation shall be conducted within the framework of the principles and objectives of the Union's external action. The Union's development cooperation policy and that of the Member States complement and reinforce each other.

Union development cooperation policy shall have as its primary objective the reduction and, in the long term, the eradication of poverty. The Union shall take account of the objectives of development cooperation in the policies that it implements which are likely to affect developing countries.

2.    The Union and the Member States shall comply with the commitments and take account of the objectives they have approved in the context of the United Nations and other competent international organisations.

### Article 209
(ex Article 179 TEC)

1.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt the measures necessary for the implementation of development cooperation policy, which may relate to multiannual cooperation programmes with developing countries or programmes with a thematic approach.

2.    The Union may conclude with third countries and competent international organisations any agreement helping to achieve the objectives referred to in Article 21 of the Treaty on European Union and in Article 208 of this Treaty.

The first subparagraph shall be without prejudice to Member States' competence to negotiate in international bodies and to conclude agreements.

3.    The European Investment Bank shall contribute, under the terms laid down in its Statute, to the implementation of the measures referred to in paragraph 1.

## Article 210
### (ex Article 180 TEC)

1.    In order to promote the complementarity and efficiency of their action, the Union and the Member States shall coordinate their policies on development cooperation and shall consult each other on their aid programmes, including in international organisations and during international conferences. They may undertake joint action. Member States shall contribute if necessary to the implementation of Union aid programmes.

2.    The Commission may take any useful initiative to promote the coordination referred to in paragraph 1.

## Article 211
### (ex Article 181 TEC)

Within their respective spheres of competence, the Union and the Member States shall cooperate with third countries and with the competent international organisations.

### CHAPTER 2

## ECONOMIC, FINANCIAL AND TECHNICAL COOPERATION WITH THIRD COUNTRIES

## Article 212
### (ex Article 181a TEC)

1.    Without prejudice to the other provisions of the Treaties, and in particular Articles 208 to 211, the Union shall carry out economic, financial and technical cooperation measures, including assistance, in particular financial assistance, with third countries other than developing countries. Such measures shall be consistent with the development policy of the Union and shall be carried out within the framework of the principles and objectives of its external action. The Union's operations and those of the Member States shall complement and reinforce each other.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt the measures necessary for the implementation of paragraph 1.

3.    Within their respective spheres of competence, the Union and the Member States shall cooperate with third countries and the competent international organisations. The arrangements for Union cooperation may be the subject of agreements between the Union and the third parties concerned.

The first subparagraph shall be without prejudice to the Member States' competence to negotiate in international bodies and to conclude international agreements.

*Article 213*

When the situation in a third country requires urgent financial assistance from the Union, the Council shall adopt the necessary decisions on a proposal from the Commission.

CHAPTER 3

HUMANITARIAN AID

*Article 214*

1.    The Union's operations in the field of humanitarian aid shall be conducted within the framework of the principles and objectives of the external action of the Union. Such operations shall be intended to provide *ad hoc* assistance and relief and protection for people in third countries who are victims of natural or man-made disasters, in order to meet the humanitarian needs resulting from these different situations. The Union's measures and those of the Member States shall complement and reinforce each other.

2.    Humanitarian aid operations shall be conducted in compliance with the principles of international law and with the principles of impartiality, neutrality and non-discrimination.

3.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish the measures defining the framework within which the Union's humanitarian aid operations shall be implemented.

4.    The Union may conclude with third countries and competent international organisations any agreement helping to achieve the objectives referred to in paragraph 1 and in Article 21 of the Treaty on European Union.

The first subparagraph shall be without prejudice to Member States' competence to negotiate in international bodies and to conclude agreements.

5.    In order to establish a framework for joint contributions from young Europeans to the humanitarian aid operations of the Union, a European Voluntary Humanitarian Aid Corps shall be set up. The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall determine the rules and procedures for the operation of the Corps.

6.    The Commission may take any useful initiative to promote coordination between actions of the Union and those of the Member States, in order to enhance the efficiency and complementarity of Union and national humanitarian aid measures.

7.    The Union shall ensure that its humanitarian aid operations are coordinated and consistent with those of international organisations and bodies, in particular those forming part of the United Nations system.

# TITLE IV

## RESTRICTIVE MEASURES

### Article 215
(ex Article 301 TEC)

1.    Where a decision, adopted in accordance with Chapter 2 of Title V of the Treaty on European Union, provides for the interruption or reduction, in part or completely, of economic and financial relations with one or more third countries, the Council, acting by a qualified majority on a joint proposal from the High Representative of the Union for Foreign Affairs and Security Policy and the Commission, shall adopt the necessary measures. It shall inform the European Parliament thereof.

2.    Where a decision adopted in accordance with Chapter 2 of Title V of the Treaty on European Union so provides, the Council may adopt restrictive measures under the procedure referred to in paragraph 1 against natural or legal persons and groups or non-State entities.

3.    The acts referred to in this Article shall include necessary provisions on legal safeguards.

# TITLE V

## INTERNATIONAL AGREEMENTS

### Article 216

1.    The Union may conclude an agreement with one or more third countries or international organisations where the Treaties so provide or where the conclusion of an agreement is necessary in order to achieve, within the framework of the Union's policies, one of the objectives referred to in the Treaties, or is provided for in a legally binding Union act or is likely to affect common rules or alter their scope.

2.    Agreements concluded by the Union are binding upon the institutions of the Union and on its Member States.

### Article 217
(ex Article 310 TEC)

The Union may conclude with one or more third countries or international organisations agreements establishing an association involving reciprocal rights and obligations, common action and special procedure.

### Article 218
(ex Article 300 TEC)

1.    Without prejudice to the specific provisions laid down in Article 207, agreements between the Union and third countries or international organisations shall be negotiated and concluded in accordance with the following procedure.

2.    The Council shall authorise the opening of negotiations, adopt negotiating directives, authorise the signing of agreements and conclude them.

3.    The Commission, or the High Representative of the Union for Foreign Affairs and Security Policy where the agreement envisaged relates exclusively or principally to the common foreign and security policy, shall submit recommendations to the Council, which shall adopt a decision authorising the opening of negotiations and, depending on the subject of the agreement envisaged, nominating the Union negotiator or the head of the Union's negotiating team.

4.    The Council may address directives to the negotiator and designate a special committee in consultation with which the negotiations must be conducted.

5.    The Council, on a proposal by the negotiator, shall adopt a decision authorising the signing of the agreement and, if necessary, its provisional application before entry into force.

6.    The Council, on a proposal by the negotiator, shall adopt a decision concluding the agreement.

Except where agreements relate exclusively to the common foreign and security policy, the Council shall adopt the decision concluding the agreement:

(a)  after obtaining the consent of the European Parliament in the following cases:

   (i)  association agreements;

   (ii)  agreement on Union accession to the European Convention for the Protection of Human Rights and Fundamental Freedoms;

   (iii)  agreements establishing a specific institutional framework by organising cooperation procedures;

   (iv)  agreements with important budgetary implications for the Union;

   (v)  agreements covering fields to which either the ordinary legislative procedure applies, or the special legislative procedure where consent by the European Parliament is required.

   The European Parliament and the Council may, in an urgent situation, agree upon a time-limit for consent.

(b)  after consulting the European Parliament in other cases. The European Parliament shall deliver its opinion within a time-limit which the Council may set depending on the urgency of the matter. In the absence of an opinion within that time-limit, the Council may act.

7.    When concluding an agreement, the Council may, by way of derogation from paragraphs 5, 6 and 9, authorise the negotiator to approve on the Union's behalf modifications to the agreement where it provides for them to be adopted by a simplified procedure or by a body set up by the agreement. The Council may attach specific conditions to such authorisation.

8.    The Council shall act by a qualified majority throughout the procedure.

However, it shall act unanimously when the agreement covers a field for which unanimity is required for the adoption of a Union act as well as for association agreements and the agreements referred to in Article 212 with the States which are candidates for accession. The Council shall also act unanimously for the agreement on accession of the Union to the European Convention for the Protection of Human Rights and Fundamental Freedoms; the decision concluding this agreement shall enter into force after it has been approved by the Member States in accordance with their respective constitutional requirements.

9.    The Council, on a proposal from the Commission or the High Representative of the Union for Foreign Affairs and Security Policy, shall adopt a decision suspending application of an agreement and establishing the positions to be adopted on the Union's behalf in a body set up by an agreement, when that body is called upon to adopt acts having legal effects, with the exception of acts supplementing or amending the institutional framework of the agreement.

10.    The European Parliament shall be immediately and fully informed at all stages of the procedure.

11.    A Member State, the European Parliament, the Council or the Commission may obtain the opinion of the Court of Justice as to whether an agreement envisaged is compatible with the Treaties. Where the opinion of the Court is adverse, the agreement envisaged may not enter into force unless it is amended or the Treaties are revised.

*Article 219*

(ex Article 111(1) to (3) and (5) TEC)

1.    By way of derogation from Article 218, the Council, either on a recommendation from the European Central Bank or on a recommendation from the Commission and after consulting the European Central Bank, in an endeavour to reach a consensus consistent with the objective of price stability, may conclude formal agreements on an exchange-rate system for the euro in relation to the currencies of third States. The Council shall act unanimously after consulting the European Parliament and in accordance with the procedure provided for in paragraph 3.

The Council may, either on a recommendation from the European Central Bank or on a recommendation from the Commission, and after consulting the European Central Bank, in an endeavour to reach a consensus consistent with the objective of price stability, adopt, adjust or abandon the central rates of the euro within the exchange-rate system. The President of the Council shall inform the European Parliament of the adoption, adjustment or abandonment of the euro central rates.

2.    In the absence of an exchange-rate system in relation to one or more currencies of third States as referred to in paragraph 1, the Council, either on a recommendation from the Commission and after consulting the European Central Bank or on a recommendation from the European Central Bank, may formulate general orientations for exchange-rate policy in relation to these currencies. These general orientations shall be without prejudice to the primary objective of the ESCB to maintain price stability.

3.    By way of derogation from Article 218, where agreements concerning monetary or foreign exchange regime matters need to be negotiated by the Union with one or more third States or international organisations, the Council, on a recommendation from the Commission and after consulting the European Central Bank, shall decide the arrangements for the negotiation and for the conclusion of such agreements. These arrangements shall ensure that the Union expresses a single position. The Commission shall be fully associated with the negotiations.

4.    Without prejudice to Union competence and Union agreements as regards economic and monetary union, Member States may negotiate in international bodies and conclude international agreements.

## TITLE VI

### THE UNION'S RELATIONS WITH INTERNATIONAL ORGANISATIONS AND THIRD COUNTRIES AND UNION DELEGATIONS

### Article 220

(ex Articles 302 to 304 TEC)

1.    The Union shall establish all appropriate forms of cooperation with the organs of the United Nations and its specialised agencies, the Council of Europe, the Organisation for Security and Cooperation in Europe and the Organisation for Economic Cooperation and Development.

The Union shall also maintain such relations as are appropriate with other international organisations.

2.    The High Representative of the Union for Foreign Affairs and Security Policy and the Commission shall implement this Article.

### Article 221

1.    Union delegations in third countries and at international organisations shall represent the Union.

2.    Union delegations shall be placed under the authority of the High Representative of the Union for Foreign Affairs and Security Policy. They shall act in close cooperation with Member States' diplomatic and consular missions.

# TITLE VII

## SOLIDARITY CLAUSE

### *Article 222*

1.    The Union and its Member States shall act jointly in a spirit of solidarity if a Member State is the object of a terrorist attack or the victim of a natural or man-made disaster. The Union shall mobilise all the instruments at its disposal, including the military resources made available by the Member States, to:

(a)  — prevent the terrorist threat in the territory of the Member States;

      — protect democratic institutions and the civilian population from any terrorist attack;

      — assist a Member State in its territory, at the request of its political authorities, in the event of a terrorist attack;

(b)  assist a Member State in its territory, at the request of its political authorities, in the event of a natural or man-made disaster.

2.    Should a Member State be the object of a terrorist attack or the victim of a natural or man-made disaster, the other Member States shall assist it at the request of its political authorities. To that end, the Member States shall coordinate between themselves in the Council.

3.    The arrangements for the implementation by the Union of the solidarity clause shall be defined by a decision adopted by the Council acting on a joint proposal by the Commission and the High Representative of the Union for Foreign Affairs and Security Policy. The Council shall act in accordance with Article 31(1) of the Treaty on European Union where this decision has defence implications. The European Parliament shall be informed.

For the purposes of this paragraph and without prejudice to Article 240, the Council shall be assisted by the Political and Security Committee with the support of the structures developed in the context of the common security and defence policy and by the Committee referred to in Article 71; the two committees shall, if necessary, submit joint opinions.

4.    The European Council shall regularly assess the threats facing the Union in order to enable the Union and its Member States to take effective action.

# PART SIX

## INSTITUTIONAL AND FINANCIAL PROVISIONS

### TITLE I

#### INSTITUTIONAL PROVISIONS

CHAPTER 1

THE INSTITUTIONS

*SECTION 1*

THE EUROPEAN PARLIAMENT

*Article 223*
(ex Article 190(4) and (5) TEC)

1.    The European Parliament shall draw up a proposal to lay down the provisions necessary for the election of its Members by direct universal suffrage in accordance with a uniform procedure in all Member States or in accordance with principles common to all Member States.

The Council, acting unanimously in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, which shall act by a majority of its component Members, shall lay down the necessary provisions. These provisions shall enter into force following their approval by the Member States in accordance with their respective constitutional requirements.

2.    The European Parliament, acting by means of regulations on its own initiative in accordance with a special legislative procedure after seeking an opinion from the Commission and with the consent of the Council, shall lay down the regulations and general conditions governing the performance of the duties of its Members. All rules or conditions relating to the taxation of Members or former Members shall require unanimity within the Council.

*Article 224*
(ex Article 191, second subparagraph, TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, by means of regulations, shall lay down the regulations governing political parties at European level referred to in Article 10(4) of the Treaty on European Union and in particular the rules regarding their funding.

*Article 225*

(ex Article 192, second subparagraph, TEC)

The European Parliament may, acting by a majority of its component Members, request the Commission to submit any appropriate proposal on matters on which it considers that a Union act is required for the purpose of implementing the Treaties. If the Commission does not submit a proposal, it shall inform the European Parliament of the reasons.

*Article 226*

(ex Article 193 TEC)

In the course of its duties, the European Parliament may, at the request of a quarter of its component Members, set up a temporary Committee of Inquiry to investigate, without prejudice to the powers conferred by the Treaties on other institutions or bodies, alleged contraventions or maladministration in the implementation of Union law, except where the alleged facts are being examined before a court and while the case is still subject to legal proceedings.

The temporary Committee of Inquiry shall cease to exist on the submission of its report.

The detailed provisions governing the exercise of the right of inquiry shall be determined by the European Parliament, acting by means of regulations on its own initiative in accordance with a special legislative procedure, after obtaining the consent of the Council and the Commission.

*Article 227*

(ex Article 194 TEC)

Any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, shall have the right to address, individually or in association with other citizens or persons, a petition to the European Parliament on a matter which comes within the Union's fields of activity and which affects him, her or it directly.

*Article 228*

(ex Article 195 TEC)

1.    A European Ombudsman, elected by the European Parliament, shall be empowered to receive complaints from any citizen of the Union or any natural or legal person residing or having its registered office in a Member State concerning instances of maladministration in the activities of the Union institutions, bodies, offices or agencies, with the exception of the Court of Justice of the European Union acting in its judicial role. He or she shall examine such complaints and report on them.

In accordance with his duties, the Ombudsman shall conduct inquiries for which he finds grounds, either on his own initiative or on the basis of complaints submitted to him direct or through a Member of the European Parliament, except where the alleged facts are or have been the subject of legal proceedings. Where the Ombudsman establishes an instance of maladministration, he shall refer the matter to the institution, body, office or agency concerned, which shall have a period of three months in which to inform him of its views. The Ombudsman shall then forward a report to the European Parliament and the institution, body, office or agency concerned. The person lodging the complaint shall be informed of the outcome of such inquiries.

The Ombudsman shall submit an annual report to the European Parliament on the outcome of his inquiries.

2.    The Ombudsman shall be elected after each election of the European Parliament for the duration of its term of office. The Ombudsman shall be eligible for reappointment.

The Ombudsman may be dismissed by the Court of Justice at the request of the European Parliament if he no longer fulfils the conditions required for the performance of his duties or if he is guilty of serious misconduct.

3.    The Ombudsman shall be completely independent in the performance of his duties. In the performance of those duties he shall neither seek nor take instructions from any Government, institution, body, office or entity. The Ombudsman may not, during his term of office, engage in any other occupation, whether gainful or not.

4.    The European Parliament acting by means of regulations on its own initiative in accordance with a special legislative procedure shall, after seeking an opinion from the Commission and with the consent of the Council, lay down the regulations and general conditions governing the performance of the Ombudsman's duties.

## Article 229

### (ex Article 196 TEC)

The European Parliament shall hold an annual session. It shall meet, without requiring to be convened, on the second Tuesday in March.

The European Parliament may meet in extraordinary part-session at the request of a majority of its component Members or at the request of the Council or of the Commission.

## Article 230

### (ex Article 197, second, third and fourth paragraph, TEC)

The Commission may attend all the meetings and shall, at its request, be heard.

The Commission shall reply orally or in writing to questions put to it by the European Parliament or by its Members.

The European Council and the Council shall be heard by the European Parliament in accordance with the conditions laid down in the Rules of Procedure of the European Council and those of the Council.

### Article 231

(ex Article 198 TEC)

Save as otherwise provided in the Treaties, the European Parliament shall act by a majority of the votes cast.

The Rules of Procedure shall determine the quorum.

### Article 232

(ex Article 199 TEC)

The European Parliament shall adopt its Rules of Procedure, acting by a majority of its Members.

The proceedings of the European Parliament shall be published in the manner laid down in the Treaties and in its Rules of Procedure.

### Article 233

(ex Article 200 TEC)

The European Parliament shall discuss in open session the annual general report submitted to it by the Commission.

### Article 234

(ex Article 201 TEC)

If a motion of censure on the activities of the Commission is tabled before it, the European Parliament shall not vote thereon until at least three days after the motion has been tabled and only by open vote.

If the motion of censure is carried by a two-thirds majority of the votes cast, representing a majority of the component Members of the European Parliament, the members of the Commission shall resign as a body and the High Representative of the Union for Foreign Affairs and Security Policy shall resign from duties that he or she carries out in the Commission. They shall remain in office and continue to deal with current business until they are replaced in accordance with Article 17 of the Treaty on European Union. In this case, the term of office of the members of the Commission appointed to replace them shall expire on the date on which the term of office of the members of the Commission obliged to resign as a body would have expired.

SECTION 2

THE EUROPEAN COUNCIL

### Article 235

1.    Where a vote is taken, any member of the European Council may also act on behalf of not more than one other member.

Article 16(4) of the Treaty on European Union and Article 238(2) of this Treaty shall apply to the European Council when it is acting by a qualified majority. Where the European Council decides by vote, its President and the President of the Commission shall not take part in the vote.

Abstentions by members present in person or represented shall not prevent the adoption by the European Council of acts which require unanimity.

2.    The President of the European Parliament may be invited to be heard by the European Council.

3.    The European Council shall act by a simple majority for procedural questions and for the adoption of its Rules of Procedure.

4.    The European Council shall be assisted by the General Secretariat of the Council.

## Article 236

The European Council shall adopt by a qualified majority:

(a) a decision establishing the list of Council configurations, other than those of the General Affairs Council and of the Foreign Affairs Council, in accordance with Article 16(6) of the Treaty on European Union;

(b) a decision on the Presidency of Council configurations, other than that of Foreign Affairs, in accordance with Article 16(9) of the Treaty on European Union.

SECTION 3

THE COUNCIL

## Article 237
### (ex Article 204 TEC)

The Council shall meet when convened by its President on his own initiative or at the request of one of its Members or of the Commission.

## Article 238
### (ex Article 205(1) and (2), TEC)

1.    Where it is required to act by a simple majority, the Council shall act by a majority of its component members.

2.    By way of derogation from Article 16(4) of the Treaty on European Union, as from 1 November 2014 and subject to the provisions laid down in the Protocol on transitional provisions,

where the Council does not act on a proposal from the Commission or from the High Representative of the Union for Foreign Affairs and Security Policy, the qualified majority shall be defined as at least 72 % of the members of the Council, representing Member States comprising at least 65 % of the population of the Union.

3.    As from 1 November 2014 and subject to the provisions laid down in the Protocol on transitional provisions, in cases where, under the Treaties, not all the members of the Council participate in voting, a qualified majority shall be defined as follows:

(a) A qualified majority shall be defined as at least 55 % of the members of the Council representing the participating Member States, comprising at least 65 % of the population of these States.

   A blocking minority must include at least the minimum number of Council members representing more than 35 % of the population of the participating Member States, plus one member, failing which the qualified majority shall be deemed attained;

(b) By way of derogation from point (a), where the Council does not act on a proposal from the Commission or from the High Representative of the Union for Foreign Affairs and Security Policy, the qualified majority shall be defined as at least 72 % of the members of the Council representing the participating Member States, comprising at least 65 % of the population of these States.

4.    Abstentions by Members present in person or represented shall not prevent the adoption by the Council of acts which require unanimity.

### Article 239
#### (ex Article 206 TEC)

Where a vote is taken, any Member of the Council may also act on behalf of not more than one other member.

### Article 240
#### (ex Article 207 TEC)

1.    A committee consisting of the Permanent Representatives of the Governments of the Member States shall be responsible for preparing the work of the Council and for carrying out the tasks assigned to it by the latter. The Committee may adopt procedural decisions in cases provided for in the Council's Rules of Procedure.

2.    The Council shall be assisted by a General Secretariat, under the responsibility of a Secretary-General appointed by the Council.

The Council shall decide on the organisation of the General Secretariat by a simple majority.

3.    The Council shall act by a simple majority regarding procedural matters and for the adoption of its Rules of Procedure.

### Article 241
(ex Article 208 TEC)

The Council, acting by a simple majority, may request the Commission to undertake any studies the Council considers desirable for the attainment of the common objectives, and to submit to it any appropriate proposals. If the Commission does not submit a proposal, it shall inform the Council of the reasons.

### Article 242
(ex Article 209 TEC)

The Council, acting by a simple majority shall, after consulting the Commission, determine the rules governing the committees provided for in the Treaties.

### Article 243
(ex Article 210 TEC)

The Council shall determine the salaries, allowances and pensions of the President of the European Council, the President of the Commission, the High Representative of the Union for Foreign Affairs and Security Policy, the Members of the Commission, the Presidents, Members and Registrars of the Court of Justice of the European Union, and the Secretary-General of the Council. It shall also determine any payment to be made instead of remuneration.

SECTION 4

THE COMMISSION

### Article 244

In accordance with Article 17(5) of the Treaty on European Union, the Members of the Commission shall be chosen on the basis of a system of rotation established unanimously by the European Council and on the basis of the following principles:

(a) Member States shall be treated on a strictly equal footing as regards determination of the sequence of, and the time spent by, their nationals as members of the Commission; consequently, the difference between the total number of terms of office held by nationals of any given pair of Member States may never be more than one;

(b) subject to point (a), each successive Commission shall be so composed as to reflect satisfactorily the demographic and geographical range of all the Member States.

## Article 245

(ex Article 213 TEC)

The Members of the Commission shall refrain from any action incompatible with their duties. Member States shall respect their independence and shall not seek to influence them in the performance of their tasks.

The Members of the Commission may not, during their term of office, engage in any other occupation, whether gainful or not. When entering upon their duties they shall give a solemn undertaking that, both during and after their term of office, they will respect the obligations arising therefrom and in particular their duty to behave with integrity and discretion as regards the acceptance, after they have ceased to hold office, of certain appointments or benefits. In the event of any breach of these obligations, the Court of Justice may, on application by the Council acting by a simple majority or the Commission, rule that the Member concerned be, according to the circumstances, either compulsorily retired in accordance with Article 247 or deprived of his right to a pension or other benefits in its stead.

## Article 246

(ex Article 215 TEC)

Apart from normal replacement, or death, the duties of a Member of the Commission shall end when he resigns or is compulsorily retired.

A vacancy caused by resignation, compulsory retirement or death shall be filled for the remainder of the Member's term of office by a new Member of the same nationality appointed by the Council, by common accord with the President of the Commission, after consulting the European Parliament and in accordance with the criteria set out in the second subparagraph of Article 17(3) of the Treaty on European Union.

The Council may, acting unanimously on a proposal from the President of the Commission, decide that such a vacancy need not be filled, in particular when the remainder of the Member's term of office is short.

In the event of resignation, compulsory retirement or death, the President shall be replaced for the remainder of his term of office. The procedure laid down in the first subparagraph of Article 17(7) of the Treaty on European Union shall be applicable for the replacement of the President.

In the event of resignation, compulsory retirement or death, the High Representative of the Union for Foreign Affairs and Security Policy shall be replaced, for the remainder of his or her term of office, in accordance with Article 18(1) of the Treaty on European Union.

In the case of the resignation of all the Members of the Commission, they shall remain in office and continue to deal with current business until they have been replaced, for the remainder of their term of office, in accordance with Article 17 of the Treaty on European Union.

## Article 247
### (ex Article 216 TEC)

If any Member of the Commission no longer fulfils the conditions required for the performance of his duties or if he has been guilty of serious misconduct, the Court of Justice may, on application by the Council acting by a simple majority or the Commission, compulsorily retire him.

## Article 248
### (ex Article 217(2) TEC)

Without prejudice to Article 18(4) of the Treaty on European Union, the responsibilities incumbent upon the Commission shall be structured and allocated among its members by its President, in accordance with Article 17(6) of that Treaty. The President may reshuffle the allocation of those responsibilities during the Commission's term of office. The Members of the Commission shall carry out the duties devolved upon them by the President under his authority.

## Article 249
### (ex Articles 218(2) and 212 TEC)

1.    The Commission shall adopt its Rules of Procedure so as to ensure that both it and its departments operate. It shall ensure that these Rules are published.

2.    The Commission shall publish annually, not later than one month before the opening of the session of the European Parliament, a general report on the activities of the Union.

## Article 250
### (ex Article 219 TEC)

The Commission shall act by a majority of its Members.

Its Rules of Procedure shall determine the quorum.

### SECTION 5

### THE COURT OF JUSTICE OF THE EUROPEAN UNION

## Article 251
### (ex Article 221 TEC)

The Court of Justice shall sit in chambers or in a Grand Chamber, in accordance with the rules laid down for that purpose in the Statute of the Court of Justice of the European Union.

When provided for in the Statute, the Court of Justice may also sit as a full Court.

### Article 252
(ex Article 222 TEC)

The Court of Justice shall be assisted by eight Advocates-General. Should the Court of Justice so request, the Council, acting unanimously, may increase the number of Advocates-General.

It shall be the duty of the Advocate-General, acting with complete impartiality and independence, to make, in open court, reasoned submissions on cases which, in accordance with the Statute of the Court of Justice of the European Union, require his involvement.

### Article 253
(ex Article 223 TEC)

The Judges and Advocates-General of the Court of Justice shall be chosen from persons whose independence is beyond doubt and who possess the qualifications required for appointment to the highest judicial offices in their respective countries or who are jurisconsults of recognised competence; they shall be appointed by common accord of the governments of the Member States for a term of six years, after consultation of the panel provided for in Article 255.

Every three years there shall be a partial replacement of the Judges and Advocates-General, in accordance with the conditions laid down in the Statute of the Court of Justice of the European Union.

The Judges shall elect the President of the Court of Justice from among their number for a term of three years. He may be re-elected.

Retiring Judges and Advocates-General may be reappointed.

The Court of Justice shall appoint its Registrar and lay down the rules governing his service.

The Court of Justice shall establish its Rules of Procedure. Those Rules shall require the approval of the Council.

### Article 254
(ex Article 224 TEC)

The number of Judges of the General Court shall be determined by the Statute of the Court of Justice of the European Union. The Statute may provide for the General Court to be assisted by Advocates-General.

The members of the General Court shall be chosen from persons whose independence is beyond doubt and who possess the ability required for appointment to high judicial office. They shall be appointed by common accord of the governments of the Member States for a term of six years, after consultation of the panel provided for in Article 255. The membership shall be partially renewed every three years. Retiring members shall be eligible for reappointment.

The Judges shall elect the President of the General Court from among their number for a term of three years. He may be re-elected.

The General Court shall appoint its Registrar and lay down the rules governing his service.

The General Court shall establish its Rules of Procedure in agreement with the Court of Justice. Those Rules shall require the approval of the Council.

Unless the Statute of the Court of Justice of the European Union provides otherwise, the provisions of the Treaties relating to the Court of Justice shall apply to the General Court.

## Article 255

A panel shall be set up in order to give an opinion on candidates' suitability to perform the duties of Judge and Advocate-General of the Court of Justice and the General Court before the governments of the Member States make the appointments referred to in Articles 253 and 254.

The panel shall comprise seven persons chosen from among former members of the Court of Justice and the General Court, members of national supreme courts and lawyers of recognised competence, one of whom shall be proposed by the European Parliament. The Council shall adopt a decision establishing the panel's operating rules and a decision appointing its members. It shall act on the initiative of the President of the Court of Justice.

## Article 256

### (ex Article 225 TEC)

1.    The General Court shall have jurisdiction to hear and determine at first instance actions or proceedings referred to in Articles 263, 265, 268, 270 and 272, with the exception of those assigned to a specialised court set up under Article 257 and those reserved in the Statute for the Court of Justice. The Statute may provide for the General Court to have jurisdiction for other classes of action or proceeding.

Decisions given by the General Court under this paragraph may be subject to a right of appeal to the Court of Justice on points of law only, under the conditions and within the limits laid down by the Statute.

2.    The General Court shall have jurisdiction to hear and determine actions or proceedings brought against decisions of the specialised courts.

Decisions given by the General Court under this paragraph may exceptionally be subject to review by the Court of Justice, under the conditions and within the limits laid down by the Statute, where there is a serious risk of the unity or consistency of Union law being affected.

3.    The General Court shall have jurisdiction to hear and determine questions referred for a preliminary ruling under Article 267, in specific areas laid down by the Statute.

Where the General Court considers that the case requires a decision of principle likely to affect the unity or consistency of Union law, it may refer the case to the Court of Justice for a ruling.

Decisions given by the General Court on questions referred for a preliminary ruling may exceptionally be subject to review by the Court of Justice, under the conditions and within the limits laid down by the Statute, where there is a serious risk of the unity or consistency of Union law being affected.

### Article 257
(ex Article 225a TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish specialised courts attached to the General Court to hear and determine at first instance certain classes of action or proceeding brought in specific areas. The European Parliament and the Council shall act by means of regulations either on a proposal from the Commission after consultation of the Court of Justice or at the request of the Court of Justice after consultation of the Commission.

The regulation establishing a specialised court shall lay down the rules on the organisation of the court and the extent of the jurisdiction conferred upon it.

Decisions given by specialised courts may be subject to a right of appeal on points of law only or, when provided for in the regulation establishing the specialised court, a right of appeal also on matters of fact, before the General Court.

The members of the specialised courts shall be chosen from persons whose independence is beyond doubt and who possess the ability required for appointment to judicial office. They shall be appointed by the Council, acting unanimously.

The specialised courts shall establish their Rules of Procedure in agreement with the Court of Justice. Those Rules shall require the approval of the Council.

Unless the regulation establishing the specialised court provides otherwise, the provisions of the Treaties relating to the Court of Justice of the European Union and the provisions of the Statute of the Court of Justice of the European Union shall apply to the specialised courts. Title I of the Statute and Article 64 thereof shall in any case apply to the specialised courts.

### Article 258
(ex Article 226 TEC)

If the Commission considers that a Member State has failed to fulfil an obligation under the Treaties, it shall deliver a reasoned opinion on the matter after giving the State concerned the opportunity to submit its observations.

If the State concerned does not comply with the opinion within the period laid down by the Commission, the latter may bring the matter before the Court of Justice of the European Union.

## Article 259
### (ex Article 227 TEC)

A Member State which considers that another Member State has failed to fulfil an obligation under the Treaties may bring the matter before the Court of Justice of the European Union.

Before a Member State brings an action against another Member State for an alleged infringement of an obligation under the Treaties, it shall bring the matter before the Commission.

The Commission shall deliver a reasoned opinion after each of the States concerned has been given the opportunity to submit its own case and its observations on the other party's case both orally and in writing.

If the Commission has not delivered an opinion within three months of the date on which the matter was brought before it, the absence of such opinion shall not prevent the matter from being brought before the Court.

## Article 260
### (ex Article 228 TEC)

1.    If the Court of Justice of the European Union finds that a Member State has failed to fulfil an obligation under the Treaties, the State shall be required to take the necessary measures to comply with the judgment of the Court.

2.    If the Commission considers that the Member State concerned has not taken the necessary measures to comply with the judgment of the Court, it may bring the case before the Court after giving that State the opportunity to submit its observations. It shall specify the amount of the lump sum or penalty payment to be paid by the Member State concerned which it considers appropriate in the circumstances.

If the Court finds that the Member State concerned has not complied with its judgment it may impose a lump sum or penalty payment on it.

This procedure shall be without prejudice to Article 259.

3.    When the Commission brings a case before the Court pursuant to Article 258 on the grounds that the Member State concerned has failed to fulfil its obligation to notify measures transposing a directive adopted under a legislative procedure, it may, when it deems appropriate, specify the amount of the lump sum or penalty payment to be paid by the Member State concerned which it considers appropriate in the circumstances.

If the Court finds that there is an infringement it may impose a lump sum or penalty payment on the Member State concerned not exceeding the amount specified by the Commission. The payment obligation shall take effect on the date set by the Court in its judgment.

## Article 261

(ex Article 229 TEC)

Regulations adopted jointly by the European Parliament and the Council, and by the Council, pursuant to the provisions of the Treaties, may give the Court of Justice of the European Union unlimited jurisdiction with regard to the penalties provided for in such regulations.

## Article 262

(ex Article 229*a* TEC)

Without prejudice to the other provisions of the Treaties, the Council, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament, may adopt provisions to confer jurisdiction, to the extent that it shall determine, on the Court of Justice of the European Union in disputes relating to the application of acts adopted on the basis of the Treaties which create European intellectual property rights. These provisions shall enter into force after their approval by the Member States in accordance with their respective constitutional requirements.

## Article 263

(ex Article 230 TEC)

The Court of Justice of the European Union shall review the legality of legislative acts, of acts of the Council, of the Commission and of the European Central Bank, other than recommendations and opinions, and of acts of the European Parliament and of the European Council intended to produce legal effects *vis-à-vis* third parties. It shall also review the legality of acts of bodies, offices or agencies of the Union intended to produce legal effects *vis-à-vis* third parties.

It shall for this purpose have jurisdiction in actions brought by a Member State, the European Parliament, the Council or the Commission on grounds of lack of competence, infringement of an essential procedural requirement, infringement of the Treaties or of any rule of law relating to their application, or misuse of powers.

The Court shall have jurisdiction under the same conditions in actions brought by the Court of Auditors, by the European Central Bank and by the Committee of the Regions for the purpose of protecting their prerogatives.

Any natural or legal person may, under the conditions laid down in the first and second paragraphs, institute proceedings against an act addressed to that person or which is of direct and individual concern to them, and against a regulatory act which is of direct concern to them and does not entail implementing measures.

Acts setting up bodies, offices and agencies of the Union may lay down specific conditions and arrangements concerning actions brought by natural or legal persons against acts of these bodies, offices or agencies intended to produce legal effects in relation to them.

The proceedings provided for in this Article shall be instituted within two months of the publication of the measure, or of its notification to the plaintiff, or, in the absence thereof, of the day on which it came to the knowledge of the latter, as the case may be.

## Article 264
### (ex Article 231 TEC)

If the action is well founded, the Court of Justice of the European Union shall declare the act concerned to be void.

However, the Court shall, if it considers this necessary, state which of the effects of the act which it has declared void shall be considered as definitive.

## Article 265
### (ex Article 232 TEC)

Should the European Parliament, the European Council, the Council, the Commission or the European Central Bank, in infringement of the Treaties, fail to act, the Member States and the other institutions of the Union may bring an action before the Court of Justice of the European Union to have the infringement established. This Article shall apply, under the same conditions, to bodies, offices and agencies of the Union which fail to act.

The action shall be admissible only if the institution, body, office or agency concerned has first been called upon to act. If, within two months of being so called upon, the institution, body, office or agency concerned has not defined its position, the action may be brought within a further period of two months.

Any natural or legal person may, under the conditions laid down in the preceding paragraphs, complain to the Court that an institution, body, office or agency of the Union has failed to address to that person any act other than a recommendation or an opinion.

## Article 266
### (ex Article 233 TEC)

The institution whose act has been declared void or whose failure to act has been declared contrary to the Treaties shall be required to take the necessary measures to comply with the judgment of the Court of Justice of the European Union.

This obligation shall not affect any obligation which may result from the application of the second paragraph of Article 340.

C 326/164          EN          Official Journal of the European Union          26.10.2012

## Article 267

(ex Article 234 TEC)

The Court of Justice of the European Union shall have jurisdiction to give preliminary rulings concerning:

(a) the interpretation of the Treaties;

(b) the validity and interpretation of acts of the institutions, bodies, offices or agencies of the Union;

Where such a question is raised before any court or tribunal of a Member State, that court or tribunal may, if it considers that a decision on the question is necessary to enable it to give judgment, request the Court to give a ruling thereon.

Where any such question is raised in a case pending before a court or tribunal of a Member State against whose decisions there is no judicial remedy under national law, that court or tribunal shall bring the matter before the Court.

If such a question is raised in a case pending before a court or tribunal of a Member State with regard to a person in custody, the Court of Justice of the European Union shall act with the minimum of delay.

## Article 268

(ex Article 235 TEC)

The Court of Justice of the European Union shall have jurisdiction in disputes relating to compensation for damage provided for in the second and third paragraphs of Article 340.

## Article 269

The Court of Justice shall have jurisdiction to decide on the legality of an act adopted by the European Council or by the Council pursuant to Article 7 of the Treaty on European Union solely at the request of the Member State concerned by a determination of the European Council or of the Council and in respect solely of the procedural stipulations contained in that Article.

Such a request must be made within one month from the date of such determination. The Court shall rule within one month from the date of the request.

## Article 270

(ex Article 236 TEC)

The Court of Justice of the European Union shall have jurisdiction in any dispute between the Union and its servants within the limits and under the conditions laid down in the Staff Regulations of Officials and the Conditions of Employment of other servants of the Union.

## Article 271

(ex Article 237 TEC)

The Court of Justice of the European Union shall, within the limits hereinafter laid down, have jurisdiction in disputes concerning:

(a) the fulfilment by Member States of obligations under the Statute of the European Investment Bank. In this connection, the Board of Directors of the Bank shall enjoy the powers conferred upon the Commission by Article 258;

(b) measures adopted by the Board of Governors of the European Investment Bank. In this connection, any Member State, the Commission or the Board of Directors of the Bank may institute proceedings under the conditions laid down in Article 263;

(c) measures adopted by the Board of Directors of the European Investment Bank. Proceedings against such measures may be instituted only by Member States or by the Commission, under the conditions laid down in Article 263, and solely on the grounds of non-compliance with the procedure provided for in Article 19(2), (5), (6) and (7) of the Statute of the Bank;

(d) the fulfilment by national central banks of obligations under the Treaties and the Statute of the ESCB and of the ECB. In this connection the powers of the Governing Council of the European Central Bank in respect of national central banks shall be the same as those conferred upon the Commission in respect of Member States by Article 258. If the Court finds that a national central bank has failed to fulfil an obligation under the Treaties, that bank shall be required to take the necessary measures to comply with the judgment of the Court.

## Article 272

(ex Article 238 TEC)

The Court of Justice of the European Union shall have jurisdiction to give judgment pursuant to any arbitration clause contained in a contract concluded by or on behalf of the Union, whether that contract be governed by public or private law.

## Article 273

(ex Article 239 TEC)

The Court of Justice shall have jurisdiction in any dispute between Member States which relates to the subject matter of the Treaties if the dispute is submitted to it under a special agreement between the parties.

## Article 274

(ex Article 240 TEC)

Save where jurisdiction is conferred on the Court of Justice of the European Union by the Treaties, disputes to which the Union is a party shall not on that ground be excluded from the jurisdiction of the courts or tribunals of the Member States.

C 326/166          EN          Official Journal of the European Union          26.10.2012

### Article 275

The Court of Justice of the European Union shall not have jurisdiction with respect to the provisions relating to the common foreign and security policy nor with respect to acts adopted on the basis of those provisions.

However, the Court shall have jurisdiction to monitor compliance with Article 40 of the Treaty on European Union and to rule on proceedings, brought in accordance with the conditions laid down in the fourth paragraph of Article 263 of this Treaty, reviewing the legality of decisions providing for restrictive measures against natural or legal persons adopted by the Council on the basis of Chapter 2 of Title V of the Treaty on European Union.

### Article 276

In exercising its powers regarding the provisions of Chapters 4 and 5 of Title V of Part Three relating to the area of freedom, security and justice, the Court of Justice of the European Union shall have no jurisdiction to review the validity or proportionality of operations carried out by the police or other law-enforcement services of a Member State or the exercise of the responsibilities incumbent upon Member States with regard to the maintenance of law and order and the safeguarding of internal security.

### Article 277
#### (ex Article 241 TEC)

Notwithstanding the expiry of the period laid down in Article 263, sixth paragraph, any party may, in proceedings in which an act of general application adopted by an institution, body, office or agency of the Union is at issue, plead the grounds specified in Article 263, second paragraph, in order to invoke before the Court of Justice of the European Union the inapplicability of that act.

### Article 278
#### (ex Article 242 TEC)

Actions brought before the Court of Justice of the European Union shall not have suspensory effect. The Court may, however, if it considers that circumstances so require, order that application of the contested act be suspended.

### Article 279
#### (ex Article 243 TEC)

The Court of Justice of the European Union may in any cases before it prescribe any necessary interim measures.

### Article 280
(ex Article 244 TEC)

The judgments of the Court of Justice of the European Union shall be enforceable under the conditions laid down in Article 299.

### Article 281
(ex Article 245 TEC)

The Statute of the Court of Justice of the European Union shall be laid down in a separate Protocol.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may amend the provisions of the Statute, with the exception of Title I and Article 64. The European Parliament and the Council shall act either at the request of the Court of Justice and after consultation of the Commission, or on a proposal from the Commission and after consultation of the Court of Justice.

SECTION 6

THE EUROPEAN CENTRAL BANK

### Article 282

1.    The European Central Bank, together with the national central banks, shall constitute the European System of Central Banks (ESCB). The European Central Bank, together with the national central banks of the Member States whose currency is the euro, which constitute the Eurosystem, shall conduct the monetary policy of the Union.

2.    The ESCB shall be governed by the decision-making bodies of the European Central Bank. The primary objective of the ESCB shall be to maintain price stability. Without prejudice to that objective, it shall support the general economic policies in the Union in order to contribute to the achievement of the latter's objectives.

3.    The European Central Bank shall have legal personality. It alone may authorise the issue of the euro. It shall be independent in the exercise of its powers and in the management of its finances. Union institutions, bodies, offices and agencies and the governments of the Member States shall respect that independence.

4.    The European Central Bank shall adopt such measures as are necessary to carry out its tasks in accordance with Articles 127 to 133, with Article 138, and with the conditions laid down in the Statute of the ESCB and of the ECB. In accordance with these same Articles, those Member States whose currency is not the euro, and their central banks, shall retain their powers in monetary matters.

5.    Within the areas falling within its responsibilities, the European Central Bank shall be consulted on all proposed Union acts, and all proposals for regulation at national level, and may give an opinion.

## Article 283
### (ex Article 112 TEC)

1.    The Governing Council of the European Central Bank shall comprise the members of the Executive Board of the European Central Bank and the Governors of the national central banks of the Member States whose currency is the euro.

2.    The Executive Board shall comprise the President, the Vice-President and four other members.

The President, the Vice-President and the other members of the Executive Board shall be appointed by the European Council, acting by a qualified majority, from among persons of recognised standing and professional experience in monetary or banking matters, on a recommendation from the Council, after it has consulted the European Parliament and the Governing Council of the European Central Bank.

Their term of office shall be eight years and shall not be renewable.

Only nationals of Member States may be members of the Executive Board.

## Article 284
### (ex Article 113 TEC)

1.    The President of the Council and a Member of the Commission may participate, without having the right to vote, in meetings of the Governing Council of the European Central Bank.

The President of the Council may submit a motion for deliberation to the Governing Council of the European Central Bank.

2.    The President of the European Central Bank shall be invited to participate in Council meetings when the Council is discussing matters relating to the objectives and tasks of the ESCB.

3.    The European Central Bank shall address an annual report on the activities of the ESCB and on the monetary policy of both the previous and current year to the European Parliament, the Council and the Commission, and also to the European Council. The President of the European Central Bank shall present this report to the Council and to the European Parliament, which may hold a general debate on that basis.

The President of the European Central Bank and the other members of the Executive Board may, at the request of the European Parliament or on their own initiative, be heard by the competent committees of the European Parliament.

*SECTION 7*

THE COURT OF AUDITORS

*Article 285*

(ex Article 246 TEC)

The Court of Auditors shall carry out the Union's audit.

It shall consist of one national of each Member State. Its Members shall be completely independent in the performance of their duties, in the Union's general interest.

*Article 286*

(ex Article 247 TEC)

1.    The Members of the Court of Auditors shall be chosen from among persons who belong or have belonged in their respective States to external audit bodies or who are especially qualified for this office. Their independence must be beyond doubt.

2.    The Members of the Court of Auditors shall be appointed for a term of six years. The Council, after consulting the European Parliament, shall adopt the list of Members drawn up in accordance with the proposals made by each Member State. The term of office of the Members of the Court of Auditors shall be renewable.

They shall elect the President of the Court of Auditors from among their number for a term of three years. The President may be re-elected.

3.    In the performance of these duties, the Members of the Court of Auditors shall neither seek nor take instructions from any government or from any other body. The Members of the Court of Auditors shall refrain from any action incompatible with their duties.

4.    The Members of the Court of Auditors may not, during their term of office, engage in any other occupation, whether gainful or not. When entering upon their duties they shall give a solemn undertaking that, both during and after their term of office, they will respect the obligations arising therefrom and in particular their duty to behave with integrity and discretion as regards the acceptance, after they have ceased to hold office, of certain appointments or benefits.

5.    Apart from normal replacement, or death, the duties of a Member of the Court of Auditors shall end when he resigns, or is compulsorily retired by a ruling of the Court of Justice pursuant to paragraph 6.

The vacancy thus caused shall be filled for the remainder of the Member's term of office.

Save in the case of compulsory retirement, Members of the Court of Auditors shall remain in office until they have been replaced.

6.    A Member of the Court of Auditors may be deprived of his office or of his right to a pension or other benefits in its stead only if the Court of Justice, at the request of the Court of Auditors, finds that he no longer fulfils the requisite conditions or meets the obligations arising from his office.

7.    The Council shall determine the conditions of employment of the President and the Members of the Court of Auditors and in particular their salaries, allowances and pensions. It shall also determine any payment to be made instead of remuneration.

8.    The provisions of the Protocol on the privileges and immunities of the European Union applicable to the Judges of the Court of Justice of the European Union shall also apply to the Members of the Court of Auditors.

## Article 287
### (ex Article 248 TEC)

1.    The Court of Auditors shall examine the accounts of all revenue and expenditure of the Union. It shall also examine the accounts of all revenue and expenditure of all bodies, offices or agencies set up by the Union in so far as the relevant constituent instrument does not preclude such examination.

The Court of Auditors shall provide the European Parliament and the Council with a statement of assurance as to the reliability of the accounts and the legality and regularity of the underlying transactions which shall be published in the *Official Journal of the European Union*. This statement may be supplemented by specific assessments for each major area of Union activity.

2.    The Court of Auditors shall examine whether all revenue has been received and all expenditure incurred in a lawful and regular manner and whether the financial management has been sound. In doing so, it shall report in particular on any cases of irregularity.

The audit of revenue shall be carried out on the basis both of the amounts established as due and the amounts actually paid to the Union.

The audit of expenditure shall be carried out on the basis both of commitments undertaken and payments made.

These audits may be carried out before the closure of accounts for the financial year in question.

3.    The audit shall be based on records and, if necessary, performed on the spot in the other institutions of the Union, on the premises of any body, office or agency which manages revenue or expenditure on behalf of the Union and in the Member States, including on the premises of any natural or legal person in receipt of payments from the budget. In the Member States the audit shall be carried out in liaison with national audit bodies or, if these do not have the necessary powers, with the competent national departments. The Court of Auditors and the national audit bodies of the Member States shall cooperate in a spirit of trust while maintaining their independence. These bodies or departments shall inform the Court of Auditors whether they intend to take part in the audit.

The other institutions of the Union, any bodies, offices or agencies managing revenue or expenditure on behalf of the Union, any natural or legal person in receipt of payments from the budget, and the national audit bodies or, if these do not have the necessary powers, the competent national departments, shall forward to the Court of Auditors, at its request, any document or information necessary to carry out its task.

In respect of the European Investment Bank's activity in managing Union expenditure and revenue, the Court's rights of access to information held by the Bank shall be governed by an agreement between the Court, the Bank and the Commission. In the absence of an agreement, the Court shall nevertheless have access to information necessary for the audit of Union expenditure and revenue managed by the Bank.

4.    The Court of Auditors shall draw up an annual report after the close of each financial year. It shall be forwarded to the other institutions of the Union and shall be published, together with the replies of these institutions to the observations of the Court of Auditors, in the *Official Journal of the European Union*.

The Court of Auditors may also, at any time, submit observations, particularly in the form of special reports, on specific questions and deliver opinions at the request of one of the other institutions of the Union.

It shall adopt its annual reports, special reports or opinions by a majority of its Members. However, it may establish internal chambers in order to adopt certain categories of reports or opinions under the conditions laid down by its Rules of Procedure.

It shall assist the European Parliament and the Council in exercising their powers of control over the implementation of the budget.

The Court of Auditors shall draw up its Rules of Procedure. Those rules shall require the approval of the Council.

CHAPTER 2

LEGAL ACTS OF THE UNION, ADOPTION PROCEDURES AND OTHER PROVISIONS

SECTION 1

THE LEGAL ACTS OF THE UNION

## Article 288
(ex Article 249 TEC)

To exercise the Union's competences, the institutions shall adopt regulations, directives, decisions, recommendations and opinions.

A regulation shall have general application. It shall be binding in its entirety and directly applicable in all Member States.

A directive shall be binding, as to the result to be achieved, upon each Member State to which it is addressed, but shall leave to the national authorities the choice of form and methods.

A decision shall be binding in its entirety. A decision which specifies those to whom it is addressed shall be binding only on them.

Recommendations and opinions shall have no binding force.

### Article 289

1.    The ordinary legislative procedure shall consist in the joint adoption by the European Parliament and the Council of a regulation, directive or decision on a proposal from the Commission. This procedure is defined in Article 294.

2.    In the specific cases provided for by the Treaties, the adoption of a regulation, directive or decision by the European Parliament with the participation of the Council, or by the latter with the participation of the European Parliament, shall constitute a special legislative procedure.

3.    Legal acts adopted by legislative procedure shall constitute legislative acts.

4.    In the specific cases provided for by the Treaties, legislative acts may be adopted on the initiative of a group of Member States or of the European Parliament, on a recommendation from the European Central Bank or at the request of the Court of Justice or the European Investment Bank.

### Article 290

1.    A legislative act may delegate to the Commission the power to adopt non-legislative acts of general application to supplement or amend certain non-essential elements of the legislative act.

The objectives, content, scope and duration of the delegation of power shall be explicitly defined in the legislative acts. The essential elements of an area shall be reserved for the legislative act and accordingly shall not be the subject of a delegation of power.

2.    Legislative acts shall explicitly lay down the conditions to which the delegation is subject; these conditions may be as follows:

(a) the European Parliament or the Council may decide to revoke the delegation;

(b) the delegated act may enter into force only if no objection has been expressed by the European Parliament or the Council within a period set by the legislative act.

For the purposes of (a) and (b), the European Parliament shall act by a majority of its component members, and the Council by a qualified majority.

3.    The adjective 'delegated' shall be inserted in the title of delegated acts.

26.10.2012          EN          Official Journal of the European Union          C 326/173

## Article 291

1.    Member States shall adopt all measures of national law necessary to implement legally binding Union acts.

2.    Where uniform conditions for implementing legally binding Union acts are needed, those acts shall confer implementing powers on the Commission, or, in duly justified specific cases and in the cases provided for in Articles 24 and 26 of the Treaty on European Union, on the Council.

3.    For the purposes of paragraph 2, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall lay down in advance the rules and general principles concerning mechanisms for control by Member States of the Commission's exercise of implementing powers.

4.    The word 'implementing' shall be inserted in the title of implementing acts.

## Article 292

The Council shall adopt recommendations. It shall act on a proposal from the Commission in all cases where the Treaties provide that it shall adopt acts on a proposal from the Commission. It shall act unanimously in those areas in which unanimity is required for the adoption of a Union act. The Commission, and the European Central Bank in the specific cases provided for in the Treaties, shall adopt recommendations.

### SECTION 2

### PROCEDURES FOR THE ADOPTION OF ACTS AND OTHER PROVISIONS

## Article 293

(ex Article 250 TEC)

1.    Where, pursuant to the Treaties, the Council acts on a proposal from the Commission, it may amend that proposal only by acting unanimously, except in the cases referred to in paragraphs 10 and 13 of Article 294, in Articles 310, 312 and 314 and in the second paragraph of Article 315.

2.    As long as the Council has not acted, the Commission may alter its proposal at any time during the procedures leading to the adoption of a Union act.

## Article 294

(ex Article 251 TEC)

1.    Where reference is made in the Treaties to the ordinary legislative procedure for the adoption of an act, the following procedure shall apply.

2.    The Commission shall submit a proposal to the European Parliament and the Council.

*First reading*

3.    The European Parliament shall adopt its position at first reading and communicate it to the Council.

4.    If the Council approves the European Parliament's position, the act concerned shall be adopted in the wording which corresponds to the position of the European Parliament.

5.    If the Council does not approve the European Parliament's position, it shall adopt its position at first reading and communicate it to the European Parliament.

6.    The Council shall inform the European Parliament fully of the reasons which led it to adopt its position at first reading. The Commission shall inform the European Parliament fully of its position.

*Second reading*

7.    If, within three months of such communication, the European Parliament:

(a) approves the Council's position at first reading or has not taken a decision, the act concerned shall be deemed to have been adopted in the wording which corresponds to the position of the Council;

(b) rejects, by a majority of its component members, the Council's position at first reading, the proposed act shall be deemed not to have been adopted;

(c) proposes, by a majority of its component members, amendments to the Council's position at first reading, the text thus amended shall be forwarded to the Council and to the Commission, which shall deliver an opinion on those amendments.

8.    If, within three months of receiving the European Parliament's amendments, the Council, acting by a qualified majority:

(a) approves all those amendments, the act in question shall be deemed to have been adopted;

(b) does not approve all the amendments, the President of the Council, in agreement with the President of the European Parliament, shall within six weeks convene a meeting of the Conciliation Committee.

9.    The Council shall act unanimously on the amendments on which the Commission has delivered a negative opinion.

*Conciliation*

10.    The Conciliation Committee, which shall be composed of the members of the Council or their representatives and an equal number of members representing the European Parliament, shall have the task of reaching agreement on a joint text, by a qualified majority of the members of the Council or their representatives and by a majority of the members representing the European Parliament within six weeks of its being convened, on the basis of the positions of the European Parliament and the Council at second reading.

11.    The Commission shall take part in the Conciliation Committee's proceedings and shall take all necessary initiatives with a view to reconciling the positions of the European Parliament and the Council.

12.    If, within six weeks of its being convened, the Conciliation Committee does not approve the joint text, the proposed act shall be deemed not to have been adopted.

*Third reading*

13.    If, within that period, the Conciliation Committee approves a joint text, the European Parliament, acting by a majority of the votes cast, and the Council, acting by a qualified majority, shall each have a period of six weeks from that approval in which to adopt the act in question in accordance with the joint text. If they fail to do so, the proposed act shall be deemed not to have been adopted.

14.    The periods of three months and six weeks referred to in this Article shall be extended by a maximum of one month and two weeks respectively at the initiative of the European Parliament or the Council.

*Special provisions*

15.    Where, in the cases provided for in the Treaties, a legislative act is submitted to the ordinary legislative procedure on the initiative of a group of Member States, on a recommendation by the European Central Bank, or at the request of the Court of Justice, paragraph 2, the second sentence of paragraph 6, and paragraph 9 shall not apply.

In such cases, the European Parliament and the Council shall communicate the proposed act to the Commission with their positions at first and second readings. The European Parliament or the Council may request the opinion of the Commission throughout the procedure, which the Commission may also deliver on its own initiative. It may also, if it deems it necessary, take part in the Conciliation Committee in accordance with paragraph 11.

### Article 295

The European Parliament, the Council and the Commission shall consult each other and by common agreement make arrangements for their cooperation. To that end, they may, in compliance with the Treaties, conclude interinstitutional agreements which may be of a binding nature.

### Article 296

(ex Article 253 TEC)

Where the Treaties do not specify the type of act to be adopted, the institutions shall select it on a case-by-case basis, in compliance with the applicable procedures and with the principle of proportionality.

Legal acts shall state the reasons on which they are based and shall refer to any proposals, initiatives, recommendations, requests or opinions required by the Treaties.

When considering draft legislative acts, the European Parliament and the Council shall refrain from adopting acts not provided for by the relevant legislative procedure in the area in question.

### Article 297
*(ex Article 254 TEC)*

1.    Legislative acts adopted under the ordinary legislative procedure shall be signed by the President of the European Parliament and by the President of the Council.

Legislative acts adopted under a special legislative procedure shall be signed by the President of the institution which adopted them.

Legislative acts shall be published in the *Official Journal of the European Union*. They shall enter into force on the date specified in them or, in the absence thereof, on the twentieth day following that of their publication.

2.    Non-legislative acts adopted in the form of regulations, directives or decisions, when the latter do not specify to whom they are addressed, shall be signed by the President of the institution which adopted them.

Regulations and directives which are addressed to all Member States, as well as decisions which do not specify to whom they are addressed, shall be published in the *Official Journal of the European Union*. They shall enter into force on the date specified in them or, in the absence thereof, on the twentieth day following that of their publication.

Other directives, and decisions which specify to whom they are addressed, shall be notified to those to whom they are addressed and shall take effect upon such notification.

### Article 298

1.    In carrying out their missions, the institutions, bodies, offices and agencies of the Union shall have the support of an open, efficient and independent European administration.

2.    In compliance with the Staff Regulations and the Conditions of Employment adopted on the basis of Article 336, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall establish provisions to that end.

### Article 299
*(ex Article 256 TEC)*

Acts of the Council, the Commission or the European Central Bank which impose a pecuniary obligation on persons other than States, shall be enforceable.

Enforcement shall be governed by the rules of civil procedure in force in the State in the territory of which it is carried out. The order for its enforcement shall be appended to the decision, without other formality than verification of the authenticity of the decision, by the national authority which the government of each Member State shall designate for this purpose and shall make known to the Commission and to the Court of Justice of the European Union.

When these formalities have been completed on application by the party concerned, the latter may proceed to enforcement in accordance with the national law, by bringing the matter directly before the competent authority.

Enforcement may be suspended only by a decision of the Court. However, the courts of the country concerned shall have jurisdiction over complaints that enforcement is being carried out in an irregular manner.

CHAPTER 3

THE UNION'S ADVISORY BODIES

*Article 300*

1.    The European Parliament, the Council and the Commission shall be assisted by an Economic and Social Committee and a Committee of the Regions, exercising advisory functions.

2.    The Economic and Social Committee shall consist of representatives of organisations of employers, of the employed, and of other parties representative of civil society, notably in socio-economic, civic, professional and cultural areas.

3.    The Committee of the Regions shall consist of representatives of regional and local bodies who either hold a regional or local authority electoral mandate or are politically accountable to an elected assembly.

4.    The members of the Economic and Social Committee and of the Committee of the Regions shall not be bound by any mandatory instructions. They shall be completely independent in the performance of their duties, in the Union's general interest.

5.    The rules referred to in paragraphs 2 and 3 governing the nature of the composition of the Committees shall be reviewed at regular intervals by the Council to take account of economic, social and demographic developments within the Union. The Council, on a proposal from the Commission, shall adopt decisions to that end.

*SECTION 1*

THE ECONOMIC AND SOCIAL COMMITTEE

*Article 301*
(ex Article 258 TEC)

The number of members of the Economic and Social Committee shall not exceed 350.

The Council, acting unanimously on a proposal from the Commission, shall adopt a decision determining the Committee's composition.

The Council shall determine the allowances of members of the Committee.

## Article 302

### (ex Article 259 TEC)

1.   The members of the Committee shall be appointed for five years The Council shall adopt the list of members drawn up in accordance with the proposals made by each Member State. The term of office of the members of the Committee shall be renewable.

2.   The Council shall act after consulting the Commission. It may obtain the opinion of European bodies which are representative of the various economic and social sectors and of civil society to which the Union's activities are of concern.

## Article 303

### (ex Article 260 TEC)

The Committee shall elect its chairman and officers from among its members for a term of two and a half years.

It shall adopt its Rules of Procedure.

The Committee shall be convened by its chairman at the request of the European Parliament, the Council or of the Commission. It may also meet on its own initiative.

## Article 304

### (ex Article 262 TEC)

The Committee shall be consulted by the European Parliament, by the Council or by the Commission where the Treaties so provide. The Committee may be consulted by these institutions in all cases in which they consider it appropriate. It may issue an opinion on its own initiative in cases in which it considers such action appropriate.

The European Parliament, the Council or the Commission shall, if it considers it necessary, set the Committee, for the submission of its opinion, a time limit which may not be less than one month from the date on which the chairman receives notification to this effect. Upon expiry of the time limit, the absence of an opinion shall not prevent further action.

The opinion of the Committee, together with a record of the proceedings, shall be forwarded to the European Parliament, to the Council and to the Commission.

### SECTION 2

### THE COMMITTEE OF THE REGIONS

## Article 305

### (ex Article 263, second, third and fourth paragraphs, TEC)

The number of members of the Committee of the Regions shall not exceed 350.

The Council, acting unanimously on a proposal from the Commission, shall adopt a decision determining the Committee's composition.

The members of the Committee and an equal number of alternate members shall be appointed for five years. Their term of office shall be renewable. The Council shall adopt the list of members and alternate members drawn up in accordance with the proposals made by each Member State. When the mandate referred to in Article 300(3) on the basis of which they were proposed comes to an end, the term of office of members of the Committee shall terminate automatically and they shall then be replaced for the remainder of the said term of office in accordance with the same procedure. No member of the Committee shall at the same time be a Member of the European Parliament.

### Article 306
(ex Article 264 TEC)

The Committee of the Regions shall elect its chairman and officers from among its members for a term of two and a half years.

It shall adopt its Rules of Procedure.

The Committee shall be convened by its chairman at the request of the European Parliament, the Council or of the Commission. It may also meet on its own initiative.

### Article 307
(ex Article 265 TEC)

The Committee of the Regions shall be consulted by the European Parliament, by the Council or by the Commission where the Treaties so provide and in all other cases, in particular those which concern cross-border cooperation, in which one of these institutions considers it appropriate.

The European Parliament, the Council or the Commission shall, if it considers it necessary, set the Committee, for the submission of its opinion, a time limit which may not be less than one month from the date on which the chairman receives notification to this effect. Upon expiry of the time limit, the absence of an opinion shall not prevent further action.

Where the Economic and Social Committee is consulted pursuant to Article 304, the Committee of the Regions shall be informed by the European Parliament, the Council or the Commission of the request for an opinion. Where it considers that specific regional interests are involved, the Committee of the Regions may issue an opinion on the matter.

It may issue an opinion on its own initiative in cases in which it considers such action appropriate.

The opinion of the Committee, together with a record of the proceedings, shall be forwarded to the European Parliament, to the Council and to the Commission.

CHAPTER 4

THE EUROPEAN INVESTMENT BANK

*Article 308*
(ex Article 266 TEC)

The European Investment Bank shall have legal personality.

The members of the European Investment Bank shall be the Member States.

The Statute of the European Investment Bank is laid down in a Protocol annexed to the Treaties. The Council acting unanimously in accordance with a special legislative procedure, at the request of the European Investment Bank and after consulting the European Parliament and the Commission, or on a proposal from the Commission and after consulting the European Parliament and the European Investment Bank, may amend the Statute of the Bank.

*Article 309*
(ex Article 267 TEC)

The task of the European Investment Bank shall be to contribute, by having recourse to the capital market and utilising its own resources, to the balanced and steady development of the internal market in the interest of the Union. For this purpose the Bank shall, operating on a non-profit-making basis, grant loans and give guarantees which facilitate the financing of the following projects in all sectors of the economy:

(a) projects for developing less-developed regions;

(b) projects for modernising or converting undertakings or for developing fresh activities called for by the establishment or functioning of the internal market, where these projects are of such a size or nature that they cannot be entirely financed by the various means available in the individual Member States;

(c) projects of common interest to several Member States which are of such a size or nature that they cannot be entirely financed by the various means available in the individual Member States.

In carrying out its task, the Bank shall facilitate the financing of investment programmes in conjunction with assistance from the Structural Funds and other Union Financial Instruments.

26.10.2012    EN    Official Journal of the European Union    C 326/181

# TITLE II

## FINANCIAL PROVISIONS

### Article 310

(ex Article 268 TEC)

1.    All items of revenue and expenditure of the Union shall be included in estimates to be drawn up for each financial year and shall be shown in the budget.

The Union's annual budget shall be established by the European Parliament and the Council in accordance with Article 314.

The revenue and expenditure shown in the budget shall be in balance.

2.    The expenditure shown in the budget shall be authorised for the annual budgetary period in accordance with the regulation referred to in Article 322.

3.    The implementation of expenditure shown in the budget shall require the prior adoption of a legally binding Union act providing a legal basis for its action and for the implementation of the corresponding expenditure in accordance with the regulation referred to in Article 322, except in cases for which that law provides.

4.    With a view to maintaining budgetary discipline, the Union shall not adopt any act which is likely to have appreciable implications for the budget without providing an assurance that the expenditure arising from such an act is capable of being financed within the limit of the Union's own resources and in compliance with the multiannual financial framework referred to in Article 312.

5.    The budget shall be implemented in accordance with the principle of sound financial management. Member States shall cooperate with the Union to ensure that the appropriations entered in the budget are used in accordance with this principle.

6.    The Union and the Member States, in accordance with Article 325, shall counter fraud and any other illegal activities affecting the financial interests of the Union.

## CHAPTER 1

## THE UNION'S OWN RESOURCES

### Article 311

(ex Article 269 TEC)

The Union shall provide itself with the means necessary to attain its objectives and carry through its policies.

Without prejudice to other revenue, the budget shall be financed wholly from own resources.

The Council, acting in accordance with a special legislative procedure, shall unanimously and after consulting the European Parliament adopt a decision laying down the provisions relating to the system of own resources of the Union. In this context it may establish new categories of own resources or abolish an existing category. That decision shall not enter into force until it is approved by the Member States in accordance with their respective constitutional requirements.

The Council, acting by means of regulations in accordance with a special legislative procedure, shall lay down implementing measures for the Union's own resources system in so far as this is provided for in the decision adopted on the basis of the third paragraph. The Council shall act after obtaining the consent of the European Parliament.

CHAPTER 2

THE MULTIANNUAL FINANCIAL FRAMEWORK

*Article 312*

1.   The multiannual financial framework shall ensure that Union expenditure develops in an orderly manner and within the limits of its own resources.

It shall be established for a period of at least five years.

The annual budget of the Union shall comply with the multiannual financial framework.

2.   The Council, acting in accordance with a special legislative procedure, shall adopt a regulation laying down the multiannual financial framework. The Council shall act unanimously after obtaining the consent of the European Parliament, which shall be given by a majority of its component members.

The European Council may, unanimously, adopt a decision authorising the Council to act by a qualified majority when adopting the regulation referred to in the first subparagraph.

3.   The financial framework shall determine the amounts of the annual ceilings on commitment appropriations by category of expenditure and of the annual ceiling on payment appropriations. The categories of expenditure, limited in number, shall correspond to the Union's major sectors of activity.

The financial framework shall lay down any other provisions required for the annual budgetary procedure to run smoothly.

4.   Where no Council regulation determining a new financial framework has been adopted by the end of the previous financial framework, the ceilings and other provisions corresponding to the last year of that framework shall be extended until such time as that act is adopted.

5.    Throughout the procedure leading to the adoption of the financial framework, the European Parliament, the Council and the Commission shall take any measure necessary to facilitate its adoption.

CHAPTER 3

THE UNION'S ANNUAL BUDGET

*Article 313*

(ex Article 272(1), TEC)

The financial year shall run from 1 January to 31 December.

*Article 314*

(ex Article 272(2) to (10), TEC)

The European Parliament and the Council, acting in accordance with a special legislative procedure, shall establish the Union's annual budget in accordance with the following provisions.

1.    With the exception of the European Central Bank, each institution shall, before 1 July, draw up estimates of its expenditure for the following financial year. The Commission shall consolidate these estimates in a draft budget. which may contain different estimates.

The draft budget shall contain an estimate of revenue and an estimate of expenditure.

2.    The Commission shall submit a proposal containing the draft budget to the European Parliament and to the Council not later than 1 September of the year preceding that in which the budget is to be implemented.

The Commission may amend the draft budget during the procedure until such time as the Conciliation Committee, referred to in paragraph 5, is convened.

3.    The Council shall adopt its position on the draft budget and forward it to the European Parliament not later than 1 October of the year preceding that in which the budget is to be implemented. The Council shall inform the European Parliament in full of the reasons which led it to adopt its position.

4.    If, within forty-two days of such communication, the European Parliament:

(a) approves the position of the Council, the budget shall be adopted;

(b) has not taken a decision, the budget shall be deemed to have been adopted;

(c) adopts amendments by a majority of its component members, the amended draft shall be forwarded to the Council and to the Commission. The President of the European Parliament, in agreement with the President of the Council, shall immediately convene a meeting of the

Conciliation Committee. However, if within ten days of the draft being forwarded the Council informs the European Parliament that it has approved all its amendments, the Conciliation Committee shall not meet.

5.    The Conciliation Committee, which shall be composed of the members of the Council or their representatives and an equal number of members representing the European Parliament, shall have the task of reaching agreement on a joint text, by a qualified majority of the members of the Council or their representatives and by a majority of the representatives of the European Parliament within twenty-one days of its being convened, on the basis of the positions of the European Parliament and the Council.

The Commission shall take part in the Conciliation Committee's proceedings and shall take all the necessary initiatives with a view to reconciling the positions of the European Parliament and the Council.

6.    If, within the twenty-one days referred to in paragraph 5, the Conciliation Committee agrees on a joint text, the European Parliament and the Council shall each have a period of fourteen days from the date of that agreement in which to approve the joint text.

7.    If, within the period of fourteen days referred to in paragraph 6:

(a) the European Parliament and the Council both approve the joint text or fail to take a decision, or if one of these institutions approves the joint text while the other one fails to take a decision, the budget shall be deemed to be definitively adopted in accordance with the joint text; or

(b) the European Parliament, acting by a majority of its component members, and the Council both reject the joint text, or if one of these institutions rejects the joint text while the other one fails to take a decision, a new draft budget shall be submitted by the Commission; or

(c) the European Parliament, acting by a majority of its component members, rejects the joint text while the Council approves it, a new draft budget shall be submitted by the Commission; or

(d) the European Parliament approves the joint text whilst the Council rejects it, the European Parliament may, within fourteen days from the date of the rejection by the Council and acting by a majority of its component members and three-fifths of the votes cast, decide to confirm all or some of the amendments referred to in paragraph 4(c). Where a European Parliament amendment is not confirmed, the position agreed in the Conciliation Committee on the budget heading which is the subject of the amendment shall be retained. The budget shall be deemed to be definitively adopted on this basis.

8.    If, within the twenty-one days referred to in paragraph 5, the Conciliation Committee does not agree on a joint text, a new draft budget shall be submitted by the Commission.

9.    When the procedure provided for in this Article has been completed, the President of the European Parliament shall declare that the budget has been definitively adopted.

10.    Each institution shall exercise the powers conferred upon it under this Article in compliance with the Treaties and the acts adopted thereunder, with particular regard to the Union's own resources and the balance between revenue and expenditure.

## Article 315

### (ex Article 273 TEC)

If, at the beginning of a financial year, the budget has not yet been definitively adopted, a sum equivalent to not more than one twelfth of the budget appropriations for the preceding financial year may be spent each month in respect of any chapter of the budget in accordance with the provisions of the Regulations made pursuant to Article 322; that sum shall not, however, exceed one twelfth of the appropriations provided for in the same chapter of the draft budget.

The Council on a proposal by the Commission, may, provided that the other conditions laid down in the first paragraph are observed, authorise expenditure in excess of one twelfth in accordance with the regulations made pursuant to Article 322. The Council shall forward the decision immediately to the European Parliament.

The decision referred to in the second paragraph shall lay down the necessary measures relating to resources to ensure application of this Article, in accordance with the acts referred to in Article 311.

It shall enter into force thirty days following its adoption if the European Parliament, acting by a majority of its component Members, has not decided to reduce this expenditure within that time-limit.

## Article 316

### (ex Article 271 TEC)

In accordance with conditions to be laid down pursuant to Article 322, any appropriations, other than those relating to staff expenditure, that are unexpended at the end of the financial year may be carried forward to the next financial year only.

Appropriations shall be classified under different chapters grouping items of expenditure according to their nature or purpose and subdivided in accordance with the regulations made pursuant to Article 322.

The expenditure of the European Parliament, the European Council and the Council, the Commission and the Court of Justice of the European Union shall be set out in separate parts of the budget, without prejudice to special arrangements for certain common items of expenditure.

CHAPTER 4

IMPLEMENTATION OF THE BUDGET AND DISCHARGE

*Article 317*

(ex Article 274 TEC)

The Commission shall implement the budget in cooperation with the Member States, in accordance with the provisions of the regulations made pursuant to Article 322, on its own responsibility and within the limits of the appropriations, having regard to the principles of sound financial management. Member States shall cooperate with the Commission to ensure that the appropriations are used in accordance with the principles of sound financial management.

The regulations shall lay down the control and audit obligations of the Member States in the implementation of the budget and the resulting responsibilities. They shall also lay down the responsibilities and detailed rules for each institution concerning its part in effecting its own expenditure.

Within the budget, the Commission may, subject to the limits and conditions laid down in the regulations made pursuant to Article 322, transfer appropriations from one chapter to another or from one subdivision to another.

*Article 318*

(ex Article 275 TEC)

The Commission shall submit annually to the European Parliament and to the Council the accounts of the preceding financial year relating to the implementation of the budget. The Commission shall also forward to them a financial statement of the assets and liabilities of the Union.

The Commission shall also submit to the European Parliament and to the Council an evaluation report on the Union's finances based on the results achieved, in particular in relation to the indications given by the European Parliament and the Council pursuant to Article 319.

*Article 319*

(ex Article 276 TEC)

1.    The European Parliament, acting on a recommendation from the Council, shall give a discharge to the Commission in respect of the implementation of the budget. To this end, the Council and the European Parliament in turn shall examine the accounts, the financial statement and the evaluation report referred to in Article 318, the annual report by the Court of Auditors together with the replies of the institutions under audit to the observations of the Court of Auditors, the statement of assurance referred to in Article 287(1), second subparagraph and any relevant special reports by the Court of Auditors.

2.    Before giving a discharge to the Commission, or for any other purpose in connection with the exercise of its powers over the implementation of the budget, the European Parliament may ask to hear the Commission give evidence with regard to the execution of expenditure or the operation of financial control systems. The Commission shall submit any necessary information to the European Parliament at the latter's request.

3.    The Commission shall take all appropriate steps to act on the observations in the decisions giving discharge and on other observations by the European Parliament relating to the execution of expenditure, as well as on comments accompanying the recommendations on discharge adopted by the Council.

At the request of the European Parliament or the Council, the Commission shall report on the measures taken in the light of these observations and comments and in particular on the instructions given to the departments which are responsible for the implementation of the budget. These reports shall also be forwarded to the Court of Auditors.

CHAPTER 5

COMMON PROVISIONS

### Article 320
(ex Article 277 TEC)

The multiannual financial framework and the annual budget shall be drawn up in euro.

### Article 321
(ex Article 278 TEC)

The Commission may, provided it notifies the competent authorities of the Member States concerned, transfer into the currency of one of the Member States its holdings in the currency of another Member State, to the extent necessary to enable them to be used for purposes which come within the scope of the Treaties. The Commission shall as far as possible avoid making such transfers if it possesses cash or liquid assets in the currencies which it needs.

The Commission shall deal with each Member State through the authority designated by the State concerned. In carrying out financial operations the Commission shall employ the services of the bank of issue of the Member State concerned or of any other financial institution approved by that State.

### Article 322
(ex Article 279 TEC)

1.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, and after consulting the Court of Auditors, shall adopt by means of regulations:

(a)  the financial rules which determine in particular the procedure to be adopted for establishing and implementing the budget and for presenting and auditing accounts;

(b) rules providing for checks on the responsibility of financial actors, in particular authorising officers and accounting officers.

2.    The Council, acting on a proposal from the Commission and after consulting the European Parliament and the Court of Auditors, shall determine the methods and procedure whereby the budget revenue provided under the arrangements relating to the Union's own resources shall be made available to the Commission, and determine the measures to be applied, if need be, to meet cash requirements.

### Article 323

The European Parliament, the Council and the Commission shall ensure that the financial means are made available to allow the Union to fulfil its legal obligations in respect of third parties.

### Article 324

Regular meetings between the Presidents of the European Parliament, the Council and the Commission shall be convened, on the initiative of the Commission, under the budgetary procedures referred to in this Title. The Presidents shall take all the necessary steps to promote consultation and the reconciliation of the positions of the institutions over which they preside in order to facilitate the implementation of this Title.

CHAPTER 6

COMBATTING FRAUD

### Article 325
(ex Article 280 TEC)

1.    The Union and the Member States shall counter fraud and any other illegal activities affecting the financial interests of the Union through measures to be taken in accordance with this Article, which shall act as a deterrent and be such as to afford effective protection in the Member States, and in all the Union's institutions, bodies, offices and agencies.

2.    Member States shall take the same measures to counter fraud affecting the financial interests of the Union as they take to counter fraud affecting their own financial interests.

3.    Without prejudice to other provisions of the Treaties, the Member States shall coordinate their action aimed at protecting the financial interests of the Union against fraud. To this end they shall organise, together with the Commission, close and regular cooperation between the competent authorities.

4.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, after consulting the Court of Auditors, shall adopt the necessary measures in the fields of the prevention of and fight against fraud affecting the financial interests of the Union with a view to affording effective and equivalent protection in the Member States and in all the Union's institutions, bodies, offices and agencies.

5.    The Commission, in cooperation with Member States, shall each year submit to the European Parliament and to the Council a report on the measures taken for the implementation of this Article.

## TITLE III

### ENHANCED COOPERATION

### Article 326
(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

Any enhanced cooperation shall comply with the Treaties and Union law.

Such cooperation shall not undermine the internal market or economic, social and territorial cohesion. It shall not constitute a barrier to or discrimination in trade between Member States, nor shall it distort competition between them.

### Article 327
(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

Any enhanced cooperation shall respect the competences, rights and obligations of those Member States which do not participate in it. Those Member States shall not impede its implementation by the participating Member States.

### Article 328
(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    When enhanced cooperation is being established, it shall be open to all Member States, subject to compliance with any conditions of participation laid down by the authorising decision. It shall also be open to them at any other time, subject to compliance with the acts already adopted within that framework, in addition to those conditions.

The Commission and the Member States participating in enhanced cooperation shall ensure that they promote participation by as many Member States as possible.

2.    The Commission and, where appropriate, the High Representative of the Union for Foreign Affairs and Security Policy shall keep the European Parliament and the Council regularly informed regarding developments in enhanced cooperation.

C 326/190          EN          Official Journal of the European Union          26.10.2012

## Article 329

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    Member States which wish to establish enhanced cooperation between themselves in one of the areas covered by the Treaties, with the exception of fields of exclusive competence and the common foreign and security policy, shall address a request to the Commission, specifying the scope and objectives of the enhanced cooperation proposed. The Commission may submit a proposal to the Council to that effect. In the event of the Commission not submitting a proposal, it shall inform the Member States concerned of the reasons for not doing so.

Authorisation to proceed with the enhanced cooperation referred to in the first subparagraph shall be granted by the Council, on a proposal from the Commission and after obtaining the consent of the European Parliament.

2.    The request of the Member States which wish to establish enhanced cooperation between themselves within the framework of the common foreign and security policy shall be addressed to the Council. It shall be forwarded to the High Representative of the Union for Foreign Affairs and Security Policy, who shall give an opinion on whether the enhanced cooperation proposed is consistent with the Union's common foreign and security policy, and to the Commission, which shall give its opinion in particular on whether the enhanced cooperation proposed is consistent with other Union policies. It shall also be forwarded to the European Parliament for information.

Authorisation to proceed with enhanced cooperation shall be granted by a decision of the Council acting unanimously.

## Article 330

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

All members of the Council may participate in its deliberations, but only members of the Council representing the Member States participating in enhanced cooperation shall take part in the vote.

Unanimity shall be constituted by the votes of the representatives of the participating Member States only.

A qualified majority shall be defined in accordance with Article 238(3).

## Article 331

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    Any Member State which wishes to participate in enhanced cooperation in progress in one of the areas referred to in Article 329(1) shall notify its intention to the Council and the Commission.

The Commission shall, within four months of the date of receipt of the notification, confirm the participation of the Member State concerned. It shall note where necessary that the conditions of participation have been fulfilled and shall adopt any transitional measures necessary with regard to the application of the acts already adopted within the framework of enhanced cooperation.

However, if the Commission considers that the conditions of participation have not been fulfilled, it shall indicate the arrangements to be adopted to fulfil those conditions and shall set a deadline for re-examining the request. On the expiry of that deadline, it shall re-examine the request, in accordance with the procedure set out in the second subparagraph. If the Commission considers that the conditions of participation have still not been met, the Member State concerned may refer the matter to the Council, which shall decide on the request. The Council shall act in accordance with Article 330. It may also adopt the transitional measures referred to in the second subparagraph on a proposal from the Commission.

2.    Any Member State which wishes to participate in enhanced cooperation in progress in the framework of the common foreign and security policy shall notify its intention to the Council, the High Representative of the Union for Foreign Affairs and Security Policy and the Commission.

The Council shall confirm the participation of the Member State concerned, after consulting the High Representative of the Union for Foreign Affairs and Security Policy and after noting, where necessary, that the conditions of participation have been fulfilled. The Council, on a proposal from the High Representative, may also adopt any transitional measures necessary with regard to the application of the acts already adopted within the framework of enhanced cooperation. However, if the Council considers that the conditions of participation have not been fulfilled, it shall indicate the arrangements to be adopted to fulfil those conditions and shall set a deadline for re-examining the request for participation.

For the purposes of this paragraph, the Council shall act unanimously and in accordance with Article 330.

### Article 332
(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

Expenditure resulting from implementation of enhanced cooperation, other than administrative costs entailed for the institutions, shall be borne by the participating Member States, unless all members of the Council, acting unanimously after consulting the European Parliament, decide otherwise.

### Article 333
(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    Where a provision of the Treaties which may be applied in the context of enhanced cooperation stipulates that the Council shall act unanimously, the Council, acting unanimously in accordance with the arrangements laid down in Article 330, may adopt a decision stipulating that it will act by a qualified majority.

2.    Where a provision of the Treaties which may be applied in the context of enhanced cooperation stipulates that the Council shall adopt acts under a special legislative procedure, the Council, acting unanimously in accordance with the arrangements laid down in Article 330, may adopt a decision stipulating that it will act under the ordinary legislative procedure. The Council shall act after consulting the European Parliament.

3.    Paragraphs 1 and 2 shall not apply to decisions having military or defence implications.

## Article 334

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

The Council and the Commission shall ensure the consistency of activities undertaken in the context of enhanced cooperation and the consistency of such activities with the policies of the Union, and shall cooperate to that end.

# PART SEVEN

## GENERAL AND FINAL PROVISIONS

## Article 335

(ex Article 282 TEC)

In each of the Member States, the Union shall enjoy the most extensive legal capacity accorded to legal persons under their laws; it may, in particular, acquire or dispose of movable and immovable property and may be a party to legal proceedings. To this end, the Union shall be represented by the Commission. However, the Union shall be represented by each of the institutions, by virtue of their administrative autonomy, in matters relating to their respective operation.

## Article 336

(ex Article 283 TEC)

The European Parliament and the Council shall, acting by means of regulations in accordance with the ordinary legislative procedure and after consulting the other institutions concerned, lay down the Staff Regulations of Officials of the European Union and the Conditions of Employment of other servants of the Union.

## Article 337

(ex Article 284 TEC)

The Commission may, within the limits and under conditions laid down by the Council acting by a simple majority in accordance with the provisions of the Treaties, collect any information and carry out any checks required for the performance of the tasks entrusted to it.

## Article 338

(ex Article 285 TEC)

1.    Without prejudice to Article 5 of the Protocol on the Statute of the European System of Central Banks and of the European Central Bank, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures for the production of statistics where necessary for the performance of the activities of the Union.

2.     The production of Union statistics shall conform to impartiality, reliability, objectivity, scientific independence, cost-effectiveness and statistical confidentiality; it shall not entail excessive burdens on economic operators.

### Article 339

(ex Article 287 TEC)

The members of the institutions of the Union, the members of committees, and the officials and other servants of the Union shall be required, even after their duties have ceased, not to disclose information of the kind covered by the obligation of professional secrecy, in particular information about undertakings, their business relations or their cost components.

### Article 340

(ex Article 288 TEC)

The contractual liability of the Union shall be governed by the law applicable to the contract in question.

In the case of non-contractual liability, the Union shall, in accordance with the general principles common to the laws of the Member States, make good any damage caused by its institutions or by its servants in the performance of their duties.

Notwithstanding the second paragraph, the European Central Bank shall, in accordance with the general principles common to the laws of the Member States, make good any damage caused by it or by its servants in the performance of their duties.

The personal liability of its servants towards the Union shall be governed by the provisions laid down in their Staff Regulations or in the Conditions of Employment applicable to them.

### Article 341

(ex Article 289 TEC)

The seat of the institutions of the Union shall be determined by common accord of the governments of the Member States.

### Article 342

(ex Article 290 TEC)

The rules governing the languages of the institutions of the Union shall, without prejudice to the provisions contained in the Statute of the Court of Justice of the European Union, be determined by the Council, acting unanimously by means of regulations.

### Article 343

(ex Article 291 TEC)

The Union shall enjoy in the territories of the Member States such privileges and immunities as are necessary for the performance of its tasks, under the conditions laid down in the Protocol of 8 April 1965 on the privileges and immunities of the European Union. The same shall apply to the European Central Bank and the European Investment Bank.

### Article 344

(ex Article 292 TEC)

Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for therein.

### Article 345

(ex Article 295 TEC)

The Treaties shall in no way prejudice the rules in Member States governing the system of property ownership.

### Article 346

(ex Article 296 TEC)

1.    The provisions of the Treaties shall not preclude the application of the following rules:

(a) no Member State shall be obliged to supply information the disclosure of which it considers contrary to the essential interests of its security;

(b) any Member State may take such measures as it considers necessary for the protection of the essential interests of its security which are connected with the production of or trade in arms, munitions and war material; such measures shall not adversely affect the conditions of competition in the internal market regarding products which are not intended for specifically military purposes.

2.    The Council may, acting unanimously on a proposal from the Commission, make changes to the list, which it drew up on 15 April 1958, of the products to which the provisions of paragraph 1(b) apply.

### Article 347

(ex Article 297 TEC)

Member States shall consult each other with a view to taking together the steps needed to prevent the functioning of the internal market being affected by measures which a Member State may be called upon to take in the event of serious internal disturbances affecting the maintenance of law and order, in the event of war, serious international tension constituting a threat of war, or in order to carry out obligations it has accepted for the purpose of maintaining peace and international security.

## Article 348
(ex Article 298 TEC)

If measures taken in the circumstances referred to in Articles 346 and 347 have the effect of distorting the conditions of competition in the internal market, the Commission shall, together with the State concerned, examine how these measures can be adjusted to the rules laid down in the Treaties.

By way of derogation from the procedure laid down in Articles 258 and 259, the Commission or any Member State may bring the matter directly before the Court of Justice if it considers that another Member State is making improper use of the powers provided for in Articles 346 and 347. The Court of Justice shall give its ruling in camera.

## Article 349
(ex Article 299(2), second, third and fourth subparagraphs, TEC)

Taking account of the structural social and economic situation of Guadeloupe, French Guiana, Martinique, Réunion, Saint-Barthélemy, Saint-Martin, the Azores, Madeira and the Canary Islands, which is compounded by their remoteness, insularity, small size, difficult topography and climate, economic dependence on a few products, the permanence and combination of which severely restrain their development, the Council, on a proposal from the Commission and after consulting the European Parliament, shall adopt specific measures aimed, in particular, at laying down the conditions of application of the Treaties to those regions, including common policies. Where the specific measures in question are adopted by the Council in accordance with a special legislative procedure, it shall also act on a proposal from the Commission and after consulting the European Parliament.

The measures referred to in the first paragraph concern in particular areas such as customs and trade policies, fiscal policy, free zones, agriculture and fisheries policies, conditions for supply of raw materials and essential consumer goods, State aids and conditions of access to structural funds and to horizontal Union programmes.

The Council shall adopt the measures referred to in the first paragraph taking into account the special characteristics and constraints of the outermost regions without undermining the integrity and the coherence of the Union legal order, including the internal market and common policies.

## Article 350
(ex Article 306 TEC)

The provisions of the Treaties shall not preclude the existence or completion of regional unions between Belgium and Luxembourg, or between Belgium, Luxembourg and the Netherlands, to the extent that the objectives of these regional unions are not attained by application of the Treaties.

*Article 351*

(ex Article 307 TEC)

The rights and obligations arising from agreements concluded before 1 January 1958 or, for acceding States, before the date of their accession, between one or more Member States on the one hand, and one or more third countries on the other, shall not be affected by the provisions of the Treaties.

To the extent that such agreements are not compatible with the Treaties, the Member State or States concerned shall take all appropriate steps to eliminate the incompatibilities established. Member States shall, where necessary, assist each other to this end and shall, where appropriate, adopt a common attitude.

In applying the agreements referred to in the first paragraph, Member States shall take into account the fact that the advantages accorded under the Treaties by each Member State form an integral part of the establishment of the Union and are thereby inseparably linked with the creation of common institutions, the conferring of powers upon them and the granting of the same advantages by all the other Member States.

*Article 352*

(ex Article 308 TEC)

1.    If action by the Union should prove necessary, within the framework of the policies defined in the Treaties, to attain one of the objectives set out in the Treaties, and the Treaties have not provided the necessary powers, the Council, acting unanimously on a proposal from the Commission and after obtaining the consent of the European Parliament, shall adopt the appropriate measures. Where the measures in question are adopted by the Council in accordance with a special legislative procedure, it shall also act unanimously on a proposal from the Commission and after obtaining the consent of the European Parliament.

2.    Using the procedure for monitoring the subsidiarity principle referred to in Article 5(3) of the Treaty on European Union, the Commission shall draw national Parliaments' attention to proposals based on this Article.

3.    Measures based on this Article shall not entail harmonisation of Member States' laws or regulations in cases where the Treaties exclude such harmonisation.

4.    This Article cannot serve as a basis for attaining objectives pertaining to the common foreign and security policy and any acts adopted pursuant to this Article shall respect the limits set out in Article 40, second paragraph, of the Treaty on European Union.

## Article 353

Article 48(7) of the Treaty on European Union shall not apply to the following Articles:

— Article 311, third and fourth paragraphs,

— Article 312(2), first subparagraph,

— Article 352, and

— Article 354.

## Article 354
### (ex Article 309 TEC)

For the purposes of Article 7 of the Treaty on European Union on the suspension of certain rights resulting from Union membership, the member of the European Council or of the Council representing the Member State in question shall not take part in the vote and the Member State in question shall not be counted in the calculation of the one third or four fifths of Member States referred to in paragraphs 1 and 2 of that Article. Abstentions by members present in person or represented shall not prevent the adoption of decisions referred to in paragraph 2 of that Article.

For the adoption of the decisions referred to in paragraphs 3 and 4 of Article 7 of the Treaty on European Union, a qualified majority shall be defined in accordance with Article 238(3)(b) of this Treaty.

Where, following a decision to suspend voting rights adopted pursuant to paragraph 3 of Article 7 of the Treaty on European Union, the Council acts by a qualified majority on the basis of a provision of the Treaties, that qualified majority shall be defined in accordance with Article 238(3)(b) of this Treaty, or, where the Council acts on a proposal from the Commission or from the High Representative of the Union for Foreign Affairs and Security Policy, in accordance with Article 238(3)(a).

For the purposes of Article 7 of the Treaty on European Union, the European Parliament shall act by a two-thirds majority of the votes cast, representing the majority of its component Members.

## Article 355
### (ex Article 299(2), first subparagraph, and Article 299(3) to (6) TEC)

In addition to the provisions of Article 52 of the Treaty on European Union relating to the territorial scope of the Treaties, the following provisions shall apply:

1.    The provisions of the Treaties shall apply to Guadeloupe, French Guiana, Martinique, Réunion, Saint-Barthélemy, Saint-Martin, the Azores, Madeira and the Canary Islands in accordance with Article 349.

2.    The special arrangements for association set out in Part Four shall apply to the overseas countries and territories listed in Annex II.

The Treaties shall not apply to those overseas countries and territories having special relations with the United Kingdom of Great Britain and Northern Ireland which are not included in the aforementioned list.

3.    The provisions of the Treaties shall apply to the European territories for whose external relations a Member State is responsible.

4.    The provisions of the Treaties shall apply to the Åland Islands in accordance with the provisions set out in Protocol 2 to the Act concerning the conditions of accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden.

5.    Notwithstanding Article 52 of the Treaty on European Union and paragraphs 1 to 4 of this Article:

(a)  the Treaties shall not apply to the Faeroe Islands;

(b)  the Treaties shall not apply to the United Kingdom Sovereign Base Areas of Akrotiri and Dhekelia in Cyprus except to the extent necessary to ensure the implementation of the arrangements set out in the Protocol on the Sovereign Base Areas of the United Kingdom of Great Britain and Northern Ireland in Cyprus annexed to the Act concerning the conditions of accession of the Czech Republic, the Republic of Estonia, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the Republic of Poland, the Republic of Slovenia and the Slovak Republic to the European Union and in accordance with the terms of that Protocol;

(c)  the Treaties shall apply to the Channel Islands and the Isle of Man only to the extent necessary to ensure the implementation of the arrangements for those islands set out in the Treaty concerning the accession of new Member States to the European Economic Community and to the European Atomic Energy Community signed on 22 January 1972.

6.    The European Council may, on the initiative of the Member State concerned, adopt a decision amending the status, with regard to the Union, of a Danish, French or Netherlands country or territory referred to in paragraphs 1 and 2. The European Council shall act unanimously after consulting the Commission.

## Article 356
### (ex Article 312 TEC)

This Treaty is concluded for an unlimited period.

## Article 357
### (ex Article 313 TEC)

This Treaty shall be ratified by the High Contracting Parties in accordance with their respective constitutional requirements. The Instruments of ratification shall be deposited with the Government of the Italian Republic.

This Treaty shall enter into force on the first day of the month following the deposit of the Instrument of ratification by the last signatory State to take this step. If, however, such deposit is made less than 15 days before the beginning of the following month, this Treaty shall not enter into force until the first day of the second month after the date of such deposit.

## Article 358

The provisions of Article 55 of the Treaty on European Union shall apply to this Treaty.

IN WITNESS WHEREOF, the undersigned Plenipotentiaries have signed this Treaty.

Done at Rome this twenty-fifth day of March in the year one thousand nine hundred and fifty-seven.

*(List of signatories not reproduced)*

_____

26.10.2012          EN          Official Journal of the European Union          C 326/201

# PROTOCOLS

# PROTOCOL (No 1)

## ON THE ROLE OF NATIONAL PARLIAMENTS IN THE EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

RECALLING that the way in which national Parliaments scrutinise their governments in relation to the activities of the Union is a matter for the particular constitutional organisation and practice of each Member State,

DESIRING to encourage greater involvement of national Parliaments in the activities of the European Union and to enhance their ability to express their views on draft legislative acts of the Union as well as on other matters which may be of particular interest to them,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union, to the Treaty on the Functioning of the European Union and to the Treaty establishing the European Atomic Energy Community:

## TITLE I

### INFORMATION FOR NATIONAL PARLIAMENTS

#### *Article 1*

Commission consultation documents (green and white papers and communications) shall be forwarded directly by the Commission to national Parliaments upon publication. The Commission shall also forward the annual legislative programme as well as any other instrument of legislative planning or policy to national Parliaments, at the same time as to the European Parliament and the Council.

#### *Article 2*

Draft legislative acts sent to the European Parliament and to the Council shall be forwarded to national Parliaments.

For the purposes of this Protocol, 'draft legislative acts' shall mean proposals from the Commission, initiatives from a group of Member States, initiatives from the European Parliament, requests from the Court of Justice, recommendations from the European Central Bank and requests from the European Investment Bank, for the adoption of a legislative act.

Draft legislative acts originating from the Commission shall be forwarded to national Parliaments directly by the Commission, at the same time as to the European Parliament and the Council.

Draft legislative acts originating from the European Parliament shall be forwarded to national Parliaments directly by the European Parliament.

Draft legislative acts originating from a group of Member States, the Court of Justice, the European Central Bank or the European Investment Bank shall be forwarded to national Parliaments by the Council.

## Article 3

National Parliaments may send to the Presidents of the European Parliament, the Council and the Commission a reasoned opinion on whether a draft legislative act complies with the principle of subsidiarity, in accordance with the procedure laid down in the Protocol on the application of the principles of subsidiarity and proportionality.

If the draft legislative act originates from a group of Member States, the President of the Council shall forward the reasoned opinion or opinions to the governments of those Member States.

If the draft legislative act originates from the Court of Justice, the European Central Bank or the European Investment Bank, the President of the Council shall forward the reasoned opinion or opinions to the institution or body concerned.

## Article 4

An eight-week period shall elapse between a draft legislative act being made available to national Parliaments in the official languages of the Union and the date when it is placed on a provisional agenda for the Council for its adoption or for adoption of a position under a legislative procedure. Exceptions shall be possible in cases of urgency, the reasons for which shall be stated in the act or position of the Council. Save in urgent cases for which due reasons have been given, no agreement may be reached on a draft legislative act during those eight weeks. Save in urgent cases for which due reasons have been given, a ten-day period shall elapse between the placing of a draft legislative act on the provisional agenda for the Council and the adoption of a position.

## Article 5

The agendas for and the outcome of meetings of the Council, including the minutes of meetings where the Council is deliberating on draft legislative acts, shall be forwarded directly to national Parliaments, at the same time as to Member States' governments.

## Article 6

When the European Council intends to make use of the first or second subparagraphs of Article 48(7) of the Treaty on European Union, national Parliaments shall be informed of the initiative of the European Council at least six months before any decision is adopted.

## Article 7

The Court of Auditors shall forward its annual report to national Parliaments, for information, at the same time as to the European Parliament and to the Council.

## Article 8

Where the national Parliamentary system is not unicameral, Articles 1 to 7 shall apply to the component chambers.

## TITLE II

### INTERPARLIAMENTARY COOPERATION

## Article 9

The European Parliament and national Parliaments shall together determine the organisation and promotion of effective and regular interparliamentary cooperation within the Union.

## Article 10

A conference of Parliamentary Committees for Union Affairs may submit any contribution it deems appropriate for the attention of the European Parliament, the Council and the Commission. That conference shall in addition promote the exchange of information and best practice between national Parliaments and the European Parliament, including their special committees. It may also organise interparliamentary conferences on specific topics, in particular to debate matters of common foreign and security policy, including common security and defence policy. Contributions from the conference shall not bind national Parliaments and shall not prejudge their positions.

_____

# PROTOCOL (No 2)

## ON THE APPLICATION OF THE PRINCIPLES OF SUBSIDIARITY AND PROPORTIONALITY

THE HIGH CONTRACTING PARTIES,

WISHING to ensure that decisions are taken as closely as possible to the citizens of the Union,

RESOLVED to establish the conditions for the application of the principles of subsidiarity and proportionality, as laid down in Article 5 of the Treaty on European Union, and to establish a system for monitoring the application of those principles,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

Each institution shall ensure constant respect for the principles of subsidiarity and proportionality, as laid down in Article 5 of the Treaty on European Union.

### Article 2

Before proposing legislative acts, the Commission shall consult widely. Such consultations shall, where appropriate, take into account the regional and local dimension of the action envisaged. In cases of exceptional urgency, the Commission shall not conduct such consultations. It shall give reasons for its decision in its proposal.

### Article 3

For the purposes of this Protocol, "draft legislative acts" shall mean proposals from the Commission, initiatives from a group of Member States, initiatives from the European Parliament, requests from the Court of Justice, recommendations from the European Central Bank and requests from the European Investment Bank, for the adoption of a legislative act.

### Article 4

The Commission shall forward its draft legislative acts and its amended drafts to national Parliaments at the same time as to the Union legislator.

The European Parliament shall forward its draft legislative acts and its amended drafts to national Parliaments.

The Council shall forward draft legislative acts originating from a group of Member States, the Court of Justice, the European Central Bank or the European Investment Bank and amended drafts to national Parliaments.

26.10.2012          EN          Official Journal of the European Union          C 326/207

Upon adoption, legislative resolutions of the European Parliament and positions of the Council shall be forwarded by them to national Parliaments.

## Article 5

Draft legislative acts shall be justified with regard to the principles of subsidiarity and proportionality. Any draft legislative act should contain a detailed statement making it possible to appraise compliance with the principles of subsidiarity and proportionality. This statement should contain some assessment of the proposal's financial impact and, in the case of a directive, of its implications for the rules to be put in place by Member States, including, where necessary, the regional legislation. The reasons for concluding that a Union objective can be better achieved at Union level shall be substantiated by qualitative and, wherever possible, quantitative indicators. Draft legislative acts shall take account of the need for any burden, whether financial or administrative, falling upon the Union, national governments, regional or local authorities, economic operators and citizens, to be minimised and commensurate with the objective to be achieved.

## Article 6

Any national Parliament or any chamber of a national Parliament may, within eight weeks from the date of transmission of a draft legislative act, in the official languages of the Union, send to the Presidents of the European Parliament, the Council and the Commission a reasoned opinion stating why it considers that the draft in question does not comply with the principle of subsidiarity. It will be for each national Parliament or each chamber of a national Parliament to consult, where appropriate, regional parliaments with legislative powers.

If the draft legislative act originates from a group of Member States, the President of the Council shall forward the opinion to the governments of those Member States.

If the draft legislative act originates from the Court of Justice, the European Central Bank or the European Investment Bank, the President of the Council shall forward the opinion to the institution or body concerned.

## Article 7

1.    The European Parliament, the Council and the Commission, and, where appropriate, the group of Member States, the Court of Justice, the European Central Bank or the European Investment Bank, if the draft legislative act originates from them, shall take account of the reasoned opinions issued by national Parliaments or by a chamber of a national Parliament.

Each national Parliament shall have two votes, shared out on the basis of the national Parliamentary system. In the case of a bicameral Parliamentary system, each of the two chambers shall have one vote.

EN

2.    Where reasoned opinions on a draft legislative act's non-compliance with the principle of subsidiarity represent at least one third of all the votes allocated to the national Parliaments in accordance with the second subparagraph of paragraph 1, the draft must be reviewed. This threshold shall be a quarter in the case of a draft legislative act submitted on the basis of Article 76 of the Treaty on the Functioning of the European Union on the area of freedom, security and justice.

After such review, the Commission or, where appropriate, the group of Member States, the European Parliament, the Court of Justice, the European Central Bank or the European Investment Bank, if the draft legislative act originates from them, may decide to maintain, amend or withdraw the draft. Reasons must be given for this decision.

3.    Furthermore, under the ordinary legislative procedure, where reasoned opinions on the non-compliance of a proposal for a legislative act with the principle of subsidiarity represent at least a simple majority of the votes allocated to the national Parliaments in accordance with the second subparagraph of paragraph 1, the proposal must be reviewed. After such review, the Commission may decide to maintain, amend or withdraw the proposal.

If it chooses to maintain the proposal, the Commission will have, in a reasoned opinion, to justify why it considers that the proposal complies with the principle of subsidiarity. This reasoned opinion, as well as the reasoned opinions of the national Parliaments, will have to be submitted to the Union legislator, for consideration in the procedure:

(a)    before concluding the first reading, the legislator (the European Parliament and the Council) shall consider whether the legislative proposal is compatible with the principle of subsidiarity, taking particular account of the reasons expressed and shared by the majority of national Parliaments as well as the reasoned opinion of the Commission;

(b)    if, by a majority of 55 % of the members of the Council or a majority of the votes cast in the European Parliament, the legislator is of the opinion that the proposal is not compatible with the principle of subsidiarity, the legislative proposal shall not be given further consideration.

## Article 8

The Court of Justice of the European Union shall have jurisdiction in actions on grounds of infringement of the principle of subsidiarity by a legislative act, brought in accordance with the rules laid down in Article 263 of the Treaty on the Functioning of the European Union by Member States, or notified by them in accordance with their legal order on behalf of their national Parliament or a chamber thereof.

In accordance with the rules laid down in the said Article, the Committee of the Regions may also bring such actions against legislative acts for the adoption of which the Treaty on the Functioning of the European Union provides that it be consulted.

## Article 9

The Commission shall submit each year to the European Council, the European Parliament, the Council and national Parliaments a report on the application of Article 5 of the Treaty on European Union. This annual report shall also be forwarded to the Economic and Social Committee and the Committee of the Regions.

————

C 326/210          EN          Official Journal of the European Union          26.10.2012

# PROTOCOL (No 3)

## ON THE STATUTE OF THE COURT OF JUSTICE OF THE EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

DESIRING to lay down the Statute of the Court of Justice of the European Union provided for in Article 281 of the Treaty on the Functioning of the European Union,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union, the Treaty on the Functioning of the European Union and the Treaty establishing the European Atomic Energy Community:

### Article 1

The Court of Justice of the European Union shall be constituted and shall function in accordance with the provisions of the Treaties, of the Treaty establishing the European Atomic Energy Community (the EAEC Treaty) and of this Statute.

## TITLE I

### JUDGES AND ADVOCATES-GENERAL

### Article 2

Before taking up his duties each Judge shall, before the Court of Justice sitting in open court, take an oath to perform his duties impartially and conscientiously and to preserve the secrecy of the deliberations of the Court.

### Article 3

The Judges shall be immune from legal proceedings. After they have ceased to hold office, they shall continue to enjoy immunity in respect of acts performed by them in their official capacity, including words spoken or written.

The Court of Justice, sitting as a full Court, may waive the immunity. If the decision concerns a member of the General Court or of a specialised court, the Court shall decide after consulting the court concerned.

Where immunity has been waived and criminal proceedings are instituted against a Judge, he shall be tried, in any of the Member States, only by the court competent to judge the members of the highest national judiciary.

Articles 11 to 14 and Article 17 of the Protocol on the privileges and immunities of the European Union shall apply to the Judges, Advocates-General, Registrar and Assistant Rapporteurs of the Court of Justice of the European Union, without prejudice to the provisions relating to immunity from legal proceedings of Judges which are set out in the preceding paragraphs.

### Article 4

The Judges may not hold any political or administrative office.

They may not engage in any occupation, whether gainful or not, unless exemption is exceptionally granted by the Council, acting by a simple majority.

When taking up their duties, they shall give a solemn undertaking that, both during and after their term of office, they will respect the obligations arising therefrom, in particular the duty to behave with integrity and discretion as regards the acceptance, after they have ceased to hold office, of certain appointments or benefits.

Any doubt on this point shall be settled by decision of the Court of Justice. If the decision concerns a member of the General Court or of a specialised court, the Court shall decide after consulting the court concerned.

### Article 5

Apart from normal replacement, or death, the duties of a Judge shall end when he resigns.

Where a Judge resigns, his letter of resignation shall be addressed to the President of the Court of Justice for transmission to the President of the Council. Upon this notification a vacancy shall arise on the bench.

Save where Article 6 applies, a Judge shall continue to hold office until his successor takes up his duties.

### Article 6

A Judge may be deprived of his office or of his right to a pension or other benefits in its stead only if, in the unanimous opinion of the Judges and Advocates-General of the Court of Justice, he no longer fulfils the requisite conditions or meets the obligations arising from his office. The Judge concerned shall not take part in any such deliberations. If the person concerned is a member of the General Court or of a specialised court, the Court shall decide after consulting the court concerned.

The Registrar of the Court shall communicate the decision of the Court to the President of the European Parliament and to the President of the Commission and shall notify it to the President of the Council.

In the case of a decision depriving a Judge of his office, a vacancy shall arise on the bench upon this latter notification.

*Article 7*

A Judge who is to replace a member of the Court whose term of office has not expired shall be appointed for the remainder of his predecessor's term.

*Article 8*

The provisions of Articles 2 to 7 shall apply to the Advocates-General.

## TITLE II

### ORGANISATION OF THE COURT OF JUSTICE

*Article 9*

When, every three years, the Judges are partially replaced, 14 and 13 Judges shall be replaced alternately.

When, every three years, the Advocates-General are partially replaced, four Advocates-General shall be replaced on each occasion.

*Article 10*

The Registrar shall take an oath before the Court of Justice to perform his duties impartially and conscientiously and to preserve the secrecy of the deliberations of the Court of Justice.

*Article 11*

The Court of Justice shall arrange for replacement of the Registrar on occasions when he is prevented from attending the Court of Justice.

*Article 12*

Officials and other servants shall be attached to the Court of Justice to enable it to function. They shall be responsible to the Registrar under the authority of the President.

*Article 13*

At the request of the Court of Justice, the European Parliament and the Council may, acting in accordance with the ordinary legislative procedure, provide for the appointment of Assistant Rapporteurs and lay down the rules governing their service. The Assistant Rapporteurs may be required, under conditions laid down in the Rules of Procedure, to participate in preparatory inquiries in cases pending before the Court and to cooperate with the Judge who acts as Rapporteur.

The Assistant Rapporteurs shall be chosen from persons whose independence is beyond doubt and who possess the necessary legal qualifications; they shall be appointed by the Council, acting by a simple majority. They shall take an oath before the Court to perform their duties impartially and conscientiously and to preserve the secrecy of the deliberations of the Court.

26.10.2012          EN          Official Journal of the European Union          C 326/213

*Article 14*

The Judges, the Advocates-General and the Registrar shall be required to reside at the place where the Court of Justice has its seat.

*Article 15*

The Court of Justice shall remain permanently in session. The duration of the judicial vacations shall be determined by the Court with due regard to the needs of its business.

*Article 16*

The Court of Justice shall form chambers consisting of three and five Judges. The Judges shall elect the Presidents of the chambers from among their number. The Presidents of the chambers of five Judges shall be elected for three years. They may be re-elected once.

The Grand Chamber shall consist of 13 Judges. It shall be presided over by the President of the Court. The Presidents of the chambers of five Judges and other Judges appointed in accordance with the conditions laid down in the Rules of Procedure shall also form part of the Grand Chamber.

The Court shall sit in a Grand Chamber when a Member State or an institution of the Union that is party to the proceedings so requests.

The Court shall sit as a full Court where cases are brought before it pursuant to Article 228(2), Article 245(2), Article 247 or Article 286(6) of the Treaty on the Functioning of the European Union.

Moreover, where it considers that a case before it is of exceptional importance, the Court may decide, after hearing the Advocate-General, to refer the case to the full Court.

*Article 17*

Decisions of the Court of Justice shall be valid only when an uneven number of its members is sitting in the deliberations.

Decisions of the chambers consisting of either three or five Judges shall be valid only if they are taken by three Judges.

Decisions of the Grand Chamber shall be valid only if nine Judges are sitting.

Decisions of the full Court shall be valid only if 15 Judges are sitting.

In the event of one of the Judges of a chamber being prevented from attending, a Judge of another chamber may be called upon to sit in accordance with conditions laid down in the Rules of Procedure.

*Article 18*

No Judge or Advocate-General may take part in the disposal of any case in which he has previously taken part as agent or adviser or has acted for one of the parties, or in which he has been called upon to pronounce as a member of a court or tribunal, of a commission of inquiry or in any other capacity.

If, for some special reason, any Judge or Advocate-General considers that he should not take part in the judgment or examination of a particular case, he shall so inform the President. If, for some special reason, the President considers that any Judge or Advocate-General should not sit or make submissions in a particular case, he shall notify him accordingly.

Any difficulty arising as to the application of this Article shall be settled by decision of the Court of Justice.

A party may not apply for a change in the composition of the Court or of one of its chambers on the grounds of either the nationality of a Judge or the absence from the Court or from the chamber of a Judge of the nationality of that party.

## TITLE III

### PROCEDURE BEFORE THE COURT OF JUSTICE

*Article 19*

The Member States and the institutions of the Union shall be represented before the Court of Justice by an agent appointed for each case; the agent may be assisted by an adviser or by a lawyer.

The States, other than the Member States, which are parties to the Agreement on the European Economic Area and also the EFTA Surveillance Authority referred to in that Agreement shall be represented in same manner.

Other parties must be represented by a lawyer.

Only a lawyer authorised to practise before a court of a Member State or of another State which is a party to the Agreement on the European Economic Area may represent or assist a party before the Court.

Such agents, advisers and lawyers shall, when they appear before the Court, enjoy the rights and immunities necessary to the independent exercise of their duties, under conditions laid down in the Rules of Procedure.

As regards such advisers and lawyers who appear before it, the Court shall have the powers normally accorded to courts of law, under conditions laid down in the Rules of Procedure.

University teachers being nationals of a Member State whose law accords them a right of audience shall have the same rights before the Court as are accorded by this Article to lawyers.

*Article 20*

The procedure before the Court of Justice shall consist of two parts: written and oral.

The written procedure shall consist of the communication to the parties and to the institutions of the Union whose decisions are in dispute, of applications, statements of case, defences and observations, and of replies, if any, as well as of all papers and documents in support or of certified copies of them.

Communications shall be made by the Registrar in the order and within the time laid down in the Rules of Procedure.

The oral procedure shall consist of the reading of the report presented by a Judge acting as Rapporteur, the hearing by the Court of agents, advisers and lawyers and of the submissions of the Advocate-General, as well as the hearing, if any, of witnesses and experts.

Where it considers that the case raises no new point of law, the Court may decide, after hearing the Advocate-General, that the case shall be determined without a submission from the Advocate-General.

*Article 21*

A case shall be brought before the Court of Justice by a written application addressed to the Registrar. The application shall contain the applicant's name and permanent address and the description of the signatory, the name of the party or names of the parties against whom the application is made, the subject-matter of the dispute, the form of order sought and a brief statement of the pleas in law on which the application is based.

The application shall be accompanied, where appropriate, by the measure the annulment of which is sought or, in the circumstances referred to in Article 265 of the Treaty on the Functioning of the European Union, by documentary evidence of the date on which an institution was, in accordance with those Articles, requested to act. If the documents are not submitted with the application, the Registrar shall ask the party concerned to produce them within a reasonable period, but in that event the rights of the party shall not lapse even if such documents are produced after the time limit for bringing proceedings.

*Article 22*

A case governed by Article 18 of the EAEC Treaty shall be brought before the Court of Justice by an appeal addressed to the Registrar. The appeal shall contain the name and permanent address of the applicant and the description of the signatory, a reference to the decision against which the appeal is brought, the names of the respondents, the subject-matter of the dispute, the submissions and a brief statement of the grounds on which the appeal is based.

The appeal shall be accompanied by a certified copy of the decision of the Arbitration Committee which is contested.

If the Court rejects the appeal, the decision of the Arbitration Committee shall become final.

If the Court annuls the decision of the Arbitration Committee, the matter may be re-opened, where appropriate, on the initiative of one of the parties in the case, before the Arbitration Committee. The latter shall conform to any decisions on points of law given by the Court.

C 326/216          EN          Official Journal of the European Union          26.10.2012

## Article 23

In the cases governed by Article 267 of the Treaty on the Functioning of the European Union, the decision of the court or tribunal of a Member State which suspends its proceedings and refers a case to the Court of Justice shall be notified to the Court by the court or tribunal concerned. The decision shall then be notified by the Registrar of the Court to the parties, to the Member States and to the Commission, and to the institution, body, office or agency of the Union which adopted the act the validity or interpretation of which is in dispute.

Within two months of this notification, the parties, the Member States, the Commission and, where appropriate, the institution, body, office or agency which adopted the act the validity or interpretation of which is in dispute, shall be entitled to submit statements of case or written observations to the Court.

In the cases governed by Article 267 of the Treaty on the Functioning of the European Union, the decision of the national court or tribunal shall, moreover, be notified by the Registrar of the Court to the States, other than the Member States, which are parties to the Agreement on the European Economic Area and also to the EFTA Surveillance Authority referred to in that Agreement which may, within two months of notification, where one of the fields of application of that Agreement is concerned, submit statements of case or written observations to the Court.

Where an agreement relating to a specific subject matter, concluded by the Council and one or more non-member States, provides that those States are to be entitled to submit statements of case or written observations where a court or tribunal of a Member State refers to the Court of Justice for a preliminary ruling a question falling within the scope of the agreement, the decision of the national court or tribunal containing that question shall also be notified to the non-member States concerned. Within two months from such notification, those States may lodge at the Court statements of case or written observations.

## Article 23a (*)

The Rules of Procedure may provide for an expedited or accelerated procedure and, for references for a preliminary ruling relating to the area of freedom, security and justice, an urgent procedure.

Those procedures may provide, in respect of the submission of statements of case or written observations, for a shorter period than that provided for by Article 23, and, in derogation from the fourth paragraph of Article 20, for the case to be determined without a submission from the Advocate General.

In addition, the urgent procedure may provide for restriction of the parties and other interested persons mentioned in Article 23, authorised to submit statements of case or written observations and, in cases of extreme urgency, for the written stage of the procedure to be omitted.

_____

(*) Article inserted by Decision 2008/79/EC, Euratom (OJ L 24, 29.1.2008, p. 42).

*Article 24*

The Court of Justice may require the parties to produce all documents and to supply all information which the Court considers desirable. Formal note shall be taken of any refusal.

The Court may also require the Member States and institutions, bodies, offices and agencies not being parties to the case to supply all information which the Court considers necessary for the proceedings.

*Article 25*

The Court of Justice may at any time entrust any individual, body, authority, committee or other organisation it chooses with the task of giving an expert opinion.

*Article 26*

Witnesses may be heard under conditions laid down in the Rules of Procedure.

*Article 27*

With respect to defaulting witnesses the Court of Justice shall have the powers generally granted to courts and tribunals and may impose pecuniary penalties under conditions laid down in the Rules of Procedure.

*Article 28*

Witnesses and experts may be heard on oath taken in the form laid down in the Rules of Procedure or in the manner laid down by the law of the country of the witness or expert.

*Article 29*

The Court of Justice may order that a witness or expert be heard by the judicial authority of his place of permanent residence.

The order shall be sent for implementation to the competent judicial authority under conditions laid down in the Rules of Procedure. The documents drawn up in compliance with the letters rogatory shall be returned to the Court under the same conditions.

The Court shall defray the expenses, without prejudice to the right to charge them, where appropriate, to the parties.

*Article 30*

A Member State shall treat any violation of an oath by a witness or expert in the same manner as if the offence had been committed before one of its courts with jurisdiction in civil proceedings. At the instance of the Court of Justice, the Member State concerned shall prosecute the offender before its competent court.

## Article 31

The hearing in court shall be public, unless the Court of Justice, of its own motion or on application by the parties, decides otherwise for serious reasons.

## Article 32

During the hearings the Court of Justice may examine the experts, the witnesses and the parties themselves. The latter, however, may address the Court of Justice only through their representatives.

## Article 33

Minutes shall be made of each hearing and signed by the President and the Registrar.

## Article 34

The case list shall be established by the President.

## Article 35

The deliberations of the Court of Justice shall be and shall remain secret.

## Article 36

Judgments shall state the reasons on which they are based. They shall contain the names of the Judges who took part in the deliberations.

## Article 37

Judgments shall be signed by the President and the Registrar. They shall be read in open court.

## Article 38

The Court of Justice shall adjudicate upon costs.

## Article 39

The President of the Court of Justice may, by way of summary procedure, which may, in so far as necessary, differ from some of the rules contained in this Statute and which shall be laid down in the Rules of Procedure, adjudicate upon applications to suspend execution, as provided for in Article 278 of the Treaty on the Functioning of the European Union and Article 157 of the EAEC Treaty, or to prescribe interim measures pursuant to Article 279 of the Treaty on the Functioning of the European Union, or to suspend enforcement in accordance with the fourth paragraph of Article 299 of the Treaty on the Functioning of the European Union or the third paragraph of Article 164 of the EAEC Treaty.

26.10.2012    EN    Official Journal of the European Union    C 326/219

Should the President be prevented from attending, his place shall be taken by another Judge under conditions laid down in the Rules of Procedure.

The ruling of the President or of the Judge replacing him shall be provisional and shall in no way prejudice the decision of the Court on the substance of the case.

## Article 40

Member States and institutions of the Union may intervene in cases before the Court of Justice.

The same right shall be open to the bodies, offices and agencies of the Union and to any other person which can establish an interest in the result of a case submitted to the Court. Natural or legal persons shall not intervene in cases between Member States, between institutions of the Union or between Member States and institutions of the Union.

Without prejudice to the second paragraph, the States, other than the Member States, which are parties to the Agreement on the European Economic Area, and also the EFTA Surveillance Authority referred to in that Agreement, may intervene in cases before the Court where one of the fields of application of that Agreement is concerned.

An application to intervene shall be limited to supporting the form of order sought by one of the parties.

## Article 41

Where the defending party, after having been duly summoned, fails to file written submissions in defence, judgment shall be given against that party by default. An objection may be lodged against the judgment within one month of it being notified. The objection shall not have the effect of staying enforcement of the judgment by default unless the Court of Justice decides otherwise.

## Article 42

Member States, institutions, bodies, offices and agencies of the Union and any other natural or legal persons may, in cases and under conditions to be determined by the Rules of Procedure, institute third-party proceedings to contest a judgment rendered without their being heard, where the judgment is prejudicial to their rights.

## Article 43

If the meaning or scope of a judgment is in doubt, the Court of Justice shall construe it on application by any party or any institution of the Union establishing an interest therein.

C 326/220         EN         Official Journal of the European Union         26.10.2012

*Article 44*

An application for revision of a judgment may be made to the Court of Justice only on discovery of a fact which is of such a nature as to be a decisive factor, and which, when the judgment was given, was unknown to the Court and to the party claiming the revision.

The revision shall be opened by a judgment of the Court expressly recording the existence of a new fact, recognising that it is of such a character as to lay the case open to revision and declaring the application admissible on this ground.

No application for revision may be made after the lapse of 10 years from the date of the judgment.

*Article 45*

Periods of grace based on considerations of distance shall be determined by the Rules of Procedure.

No right shall be prejudiced in consequence of the expiry of a time limit if the party concerned proves the existence of unforeseeable circumstances or of *force majeure.*

*Article 46*

Proceedings against the Union in matters arising from non-contractual liability shall be barred after a period of five years from the occurrence of the event giving rise thereto. The period of limitation shall be interrupted if proceedings are instituted before the Court of Justice or if prior to such proceedings an application is made by the aggrieved party to the relevant institution of the Union. In the latter event the proceedings must be instituted within the period of two months provided for in Article 263 of the Treaty on the Functioning of the European Union; the provisions of the second paragraph of Article 265 of the Treaty on the Functioning of the European Union shall apply where appropriate.

This Article shall also apply to proceedings against the European Central Bank regarding non-contractual liability.

## TITLE IV

### GENERAL COURT

*Article 47*

The first paragraph of Article 9, Articles 14 and 15, the first, second, fourth and fifth paragraphs of Article 17 and Article 18 shall apply to the General Court and its members.

The fourth paragraph of Article 3 and Articles 10, 11 and 14 shall apply to the Registrar of the General Court *mutatis mutandis.*

*Article 48*

The General Court shall consist of 27 Judges.

EN

## Article 49

The Members of the General Court may be called upon to perform the task of an Advocate-General.

It shall be the duty of the Advocate-General, acting with complete impartiality and independence, to make, in open court, reasoned submissions on certain cases brought before the General Court in order to assist the General Court in the performance of its task.

The criteria for selecting such cases, as well as the procedures for designating the Advocates-General, shall be laid down in the Rules of Procedure of the General Court.

A Member called upon to perform the task of Advocate-General in a case may not take part in the judgment of the case.

## Article 50

The General Court shall sit in chambers of three or five Judges. The Judges shall elect the Presidents of the chambers from among their number. The Presidents of the chambers of five Judges shall be elected for three years. They may be re-elected once.

The composition of the chambers and the assignment of cases to them shall be governed by the Rules of Procedure. In certain cases governed by the Rules of Procedure, the General Court may sit as a full court or be constituted by a single Judge.

The Rules of Procedure may also provide that the General Court may sit in a Grand Chamber in cases and under the conditions specified therein.

## Article 51

By way of derogation from the rule laid down in Article 256(1) of the Treaty on the Functioning of the European Union, jurisdiction shall be reserved to the Court of Justice in the actions referred to in Articles 263 and 265 of the Treaty on the Functioning of the European Union when they are brought by a Member State against:

(a) an act of or failure to act by the European Parliament or the Council, or by those institutions acting jointly, except for:

— decisions taken by the Council under the third subparagraph of Article 108(2) of the Treaty on the Functioning of the European Union;

— acts of the Council adopted pursuant to a Council regulation concerning measures to protect trade within the meaning of Article 207 of the Treaty on the Functioning of the European Union;

— acts of the Council by which the Council exercises implementing powers in accordance with the second paragraph of Article 291 of the Treaty on the Functioning of the European Union;

(b) against an act of or failure to act by the Commission under the first paragraph of Article 331 of the Treaty on the Functioning of the European Union.

Jurisdiction shall also be reserved to the Court of Justice in the actions referred to in the same Articles when they are brought by an institution of the Union against an act of or failure to act by the European Parliament, the Council, both those institutions acting jointly, or the Commission, or brought by an institution of the Union against an act of or failure to act by the European Central Bank.

*Article 52*

The President of the Court of Justice and the President of the General Court shall determine, by common accord, the conditions under which officials and other servants attached to the Court of Justice shall render their services to the General Court to enable it to function. Certain officials or other servants shall be responsible to the Registrar of the General Court under the authority of the President of the General Court.

*Article 53*

The procedure before the General Court shall be governed by Title III.

Such further and more detailed provisions as may be necessary shall be laid down in its Rules of Procedure. The Rules of Procedure may derogate from the fourth paragraph of Article 40 and from Article 41 in order to take account of the specific features of litigation in the field of intellectual property.

Notwithstanding the fourth paragraph of Article 20, the Advocate-General may make his reasoned submissions in writing.

*Article 54*

Where an application or other procedural document addressed to the General Court is lodged by mistake with the Registrar of the Court of Justice, it shall be transmitted immediately by that Registrar to the Registrar of the General Court; likewise, where an application or other procedural document addressed to the Court of Justice is lodged by mistake with the Registrar of the General Court, it shall be transmitted immediately by that Registrar to the Registrar of the Court of Justice.

Where the General Court finds that it does not have jurisdiction to hear and determine an action in respect of which the Court of Justice has jurisdiction, it shall refer that action to the Court of Justice; likewise, where the Court of Justice finds that an action falls within the jurisdiction of the General Court, it shall refer that action to the General Court, whereupon that Court may not decline jurisdiction.

Where the Court of Justice and the General Court are seised of cases in which the same relief is sought, the same issue of interpretation is raised or the validity of the same act is called in question, the General Court may, after hearing the parties, stay the proceedings before it until such time as the Court of Justice has delivered judgment or, where the action is one brought pursuant to Article 263 of the Treaty on the Functioning of the European Union, may decline jurisdiction so as to allow the Court of Justice to rule on such actions. In the same circumstances, the Court of Justice may also decide to stay the proceedings before it; in that event, the proceedings before the General Court shall continue.

Where a Member State and an institution of the Union are challenging the same act, the General Court shall decline jurisdiction so that the Court of Justice may rule on those applications.

*Article 55*

Final decisions of the General Court, decisions disposing of the substantive issues in part only or disposing of a procedural issue concerning a plea of lack of competence or inadmissibility, shall be notified by the Registrar of the General Court to all parties as well as all Member States and the institutions of the Union even if they did not intervene in the case before the General Court.

*Article 56*

An appeal may be brought before the Court of Justice, within two months of the notification of the decision appealed against, against final decisions of the General Court and decisions of that Court disposing of the substantive issues in part only or disposing of a procedural issue concerning a plea of lack of competence or inadmissibility.

Such an appeal may be brought by any party which has been unsuccessful, in whole or in part, in its submissions. However, interveners other than the Member States and the institutions of the Union may bring such an appeal only where the decision of the General Court directly affects them.

With the exception of cases relating to disputes between the Union and its servants, an appeal may also be brought by Member States and institutions of the Union which did not intervene in the proceedings before the General Court. Such Member States and institutions shall be in the same position as Member States or institutions which intervened at first instance.

*Article 57*

Any person whose application to intervene has been dismissed by the General Court may appeal to the Court of Justice within two weeks from the notification of the decision dismissing the application.

The parties to the proceedings may appeal to the Court of Justice against any decision of the General Court made pursuant to Article 278 or Article 279 or the fourth paragraph of Article 299 of the Treaty on the Functioning of the European Union or Article 157 or the third paragraph of Article 164 of the EAEC Treaty within two months from their notification.

The appeal referred to in the first two paragraphs of this Article shall be heard and determined under the procedure referred to in Article 39.

*Article 58*

An appeal to the Court of Justice shall be limited to points of law. It shall lie on the grounds of lack of competence of the General Court, a breach of procedure before it which adversely affects the interests of the appellant as well as the infringement of Union law by the General Court.

No appeal shall lie regarding only the amount of the costs or the party ordered to pay them.

## Article 59

Where an appeal is brought against a decision of the General Court, the procedure before the Court of Justice shall consist of a written part and an oral part. In accordance with conditions laid down in the Rules of Procedure, the Court of Justice, having heard the Advocate-General and the parties, may dispense with the oral procedure.

## Article 60

Without prejudice to Articles 278 and 279 of the Treaty on the Functioning of the European Union or Article 157 of the EAEC Treaty, an appeal shall not have suspensory effect.

By way of derogation from Article 280 of the Treaty on the Functioning of the European Union, decisions of the General Court declaring a regulation to be void shall take effect only as from the date of expiry of the period referred to in the first paragraph of Article 56 of this Statute or, if an appeal shall have been brought within that period, as from the date of dismissal of the appeal, without prejudice, however, to the right of a party to apply to the Court of Justice, pursuant to Articles 278 and 279 of the Treaty on the Functioning of the European Union or Article 157 of the EAEC Treaty, for the suspension of the effects of the regulation which has been declared void or for the prescription of any other interim measure.

## Article 61

If the appeal is well founded, the Court of Justice shall quash the decision of the General Court. It may itself give final judgment in the matter, where the state of the proceedings so permits, or refer the case back to the General Court for judgment.

Where a case is referred back to the General Court, that Court shall be bound by the decision of the Court of Justice on points of law.

When an appeal brought by a Member State or an institution of the Union, which did not intervene in the proceedings before the General Court, is well founded, the Court of Justice may, if it considers this necessary, state which of the effects of the decision of the General Court which has been quashed shall be considered as definitive in respect of the parties to the litigation.

## Article 62

In the cases provided for in Article 256(2) and (3) of the Treaty on the Functioning of the European Union, where the First Advocate-General considers that there is a serious risk of the unity or consistency of Union law being affected, he may propose that the Court of Justice review the decision of the General Court.

The proposal must be made within one month of delivery of the decision by the General Court. Within one month of receiving the proposal made by the First Advocate-General, the Court of Justice shall decide whether or not the decision should be reviewed.

## Article 62a

The Court of Justice shall give a ruling on the questions which are subject to review by means of an urgent procedure on the basis of the file forwarded to it by the General Court.

Those referred to in Article 23 of this Statute and, in the cases provided for in Article 256(2) of the EC Treaty, the parties to the proceedings before the General Court shall be entitled to lodge statements or written observations with the Court of Justice relating to questions which are subject to review within a period prescribed for that purpose.

The Court of Justice may decide to open the oral procedure before giving a ruling.

### Article 62b

In the cases provided for in Article 256(2) of the Treaty on the Functioning of the European Union, without prejudice to Articles 278 and 279 of the Treaty on the Functioning of the European Union, proposals for review and decisions to open the review procedure shall not have suspensory effect. If the Court of Justice finds that the decision of the General Court affects the unity or consistency of Union law, it shall refer the case back to the General Court which shall be bound by the points of law decided by the Court of Justice; the Court of Justice may state which of the effects of the decision of the General Court are to be considered as definitive in respect of the parties to the litigation. If, however, having regard to the result of the review, the outcome of the proceedings flows from the findings of fact on which the decision of the General Court was based, the Court of Justice shall give final judgment.

In the cases provided for in Article 256(3) of the Treaty on the Functioning of the European Union, in the absence of proposals for review or decisions to open the review procedure, the answer(s) given by the General Court to the questions submitted to it shall take effect upon expiry of the periods prescribed for that purpose in the second paragraph of Article 62. Should a review procedure be opened, the answer(s) subject to review shall take effect following that procedure, unless the Court of Justice decides otherwise. If the Court of Justice finds that the decision of the General Court affects the unity or consistency of Union law, the answer given by the Court of Justice to the questions subject to review shall be substituted for that given by the General Court.

## TITLE IVa

### SPECIALISED COURTS

### Article 62c

The provisions relating to the jurisdiction, composition, organisation and procedure of the specialised courts established under Article 257 of the Treaty on the Functioning of the European Union are set out in an Annex to this Statute.

## TITLE V

### FINAL PROVISIONS

### Article 63

The Rules of Procedure of the Court of Justice and of the General Court shall contain any provisions necessary for applying and, where required, supplementing this Statute.

Official Journal of the European Union

### Article 64

The rules governing the language arrangements applicable at the Court of Justice of the European Union shall be laid down by a regulation of the Council acting unanimously. This regulation shall be adopted either at the request of the Court of Justice and after consultation of the Commission and the European Parliament, or on a proposal from the Commission and after consultation of the Court of Justice and of the European Parliament.

Until those rules have been adopted, the provisions of the Rules of Procedure of the Court of Justice and of the Rules of Procedure of the General Court governing language arrangements shall continue to apply. By way of derogation from Articles 253 and 254 of the Treaty on the Functioning of the European Union, those provisions may only be amended or repealed with the unanimous consent of the Council.

———

## ANNEX

### THE EUROPEAN UNION CIVIL SERVICE TRIBUNAL

#### Article 1

The European Union Civil Service Tribunal (hereafter 'the Civil Service Tribunal') shall exercise at first instance jurisdiction in disputes between the Union and its servants referred to in Article 270 of the Treaty on the Functioning of the European Union, including disputes between all bodies or agencies and their servants in respect of which jurisdiction is conferred on the Court of Justice of the European Union.

#### Article 2

The Civil Service Tribunal shall consist of seven judges. Should the Court of Justice so request, the Council, acting by a qualified majority, may increase the number of judges.

The judges shall be appointed for a period of six years. Retiring judges may be reappointed.

Any vacancy shall be filled by the appointment of a new judge for a period of six years.

#### Article 3

1.    The judges shall be appointed by the Council, acting in accordance with the fourth paragraph of Article 257 of the Treaty on the Functioning of the European Union, after consulting the committee provided for by this Article. When appointing judges, the Council shall ensure a balanced composition of the Civil Service Tribunal on as broad a geographical basis as possible from among nationals of the Member States and with respect to the national legal systems represented.

2.    Any person who is a Union citizen and fulfils the conditions laid down in the fourth paragraph of Article 257 of the Treaty on the Functioning of the European Union may submit an application. The Council, acting on a recommendation from the Court of Justice, shall determine the conditions and the arrangements governing the submission and processing of such applications.

3.    A committee shall be set up comprising seven persons chosen from among former members of the Court of Justice and the General Court and lawyers of recognised competence. The committee's membership and operating rules shall be determined by the Council, acting on a recommendation by the President of the Court of Justice.

26.10.2012    EN    Official Journal of the European Union    C 326/227

4.    The committee shall give an opinion on candidates' suitability to perform the duties of judge at the Civil Service Tribunal. The committee shall append to its opinion a list of candidates having the most suitable high-level experience. Such list shall contain the names of at least twice as many candidates as there are judges to be appointed by the Council.

### Article 4

1.    The judges shall elect the President of the Civil Service Tribunal from among their number for a term of three years. He may be re-elected.

2.    The Civil Service Tribunal shall sit in chambers of three judges. It may, in certain cases determined by its rules of procedure, sit in full court or in a chamber of five judges or of a single judge.

3.    The President of the Civil Service Tribunal shall preside over the full court and the chamber of five judges. The Presidents of the chambers of three judges shall be designated as provided in paragraph 1. If the President of the Civil Service Tribunal is assigned to a chamber of three judges, he shall preside over that chamber.

4.    The jurisdiction of and quorum for the full court as well as the composition of the chambers and the assignment of cases to them shall be governed by the Rules of Procedure.

### Article 5

Articles 2 to 6, 14, 15, the first, second and fifth paragraphs of Article 17, and Article 18 of the Statute of the Court of Justice of the European Union shall apply to the Civil Service Tribunal and its members.

The oath referred to in Article 2 of the Statute shall be taken before the Court of Justice, and the decisions referred to in Articles 3, 4 and 6 thereof shall be adopted by the Court of Justice after consulting the Civil Service Tribunal.

### Article 6

1.    The Civil Service Tribunal shall be supported by the departments of the Court of Justice and of the General Court. The President of the Court of Justice or, in appropriate cases, the President of the General Court, shall determine by common accord with the President of the Civil Service Tribunal the conditions under which officials and other servants attached to the Court of Justice or the General Court shall render their services to the Civil Service Tribunal to enable it to function. Certain officials or other servants shall be responsible to the Registrar of the Civil Service Tribunal under the authority of the President of that Tribunal.

2.    The Civil Service Tribunal shall appoint its Registrar and lay down the rules governing his service. The fourth paragraph of Article 3 and Articles 10, 11 and 14 of the Statute of the Court of Justice of the European Union shall apply to the Registrar of the Tribunal.

### Article 7

1.    The procedure before the Civil Service Tribunal shall be governed by Title III of the Statute of the Court of Justice of the European Union, with the exception of Articles 22 and 23. Such further and more detailed provisions as may be necessary shall be laid down in the Rules of Procedure.

2.    The provisions concerning the General Court's language arrangements shall apply to the Civil Service Tribunal.

3.    The written stage of the procedure shall comprise the presentation of the application and of the statement of defence, unless the Civil Service Tribunal decides that a second exchange of written pleadings is necessary. Where there is such second exchange, the Civil Service Tribunal may, with the agreement of the parties, decide to proceed to judgment without an oral procedure.

C 326/228    EN    Official Journal of the European Union    26.10.2012

4.    At all stages of the procedure, including the time when the application is filed, the Civil Service Tribunal may examine the possibilities of an amicable settlement of the dispute and may try to facilitate such settlement.

5.    The Civil Service Tribunal shall rule on the costs of a case. Subject to the specific provisions of the Rules of Procedure, the unsuccessful party shall be ordered to pay the costs should the court so decide.

*Article 8*

1.    Where an application or other procedural document addressed to the Civil Service Tribunal is lodged by mistake with the Registrar of the Court of Justice or General Court, it shall be transmitted immediately by that Registrar to the Registrar of the Civil Service Tribunal. Likewise, where an application or other procedural document addressed to the Court of Justice or to the General Court is lodged by mistake with the Registrar of the Civil Service Tribunal, it shall be transmitted immediately by that Registrar to the Registrar of the Court of Justice or General Court.

2.    Where the Civil Service Tribunal finds that it does not have jurisdiction to hear and determine an action in respect of which the Court of Justice or the General Court has jurisdiction, it shall refer that action to the Court of Justice or to the General Court. Likewise, where the Court of Justice or the General Court finds that an action falls within the jurisdiction of the Civil Service Tribunal, the Court seised shall refer that action to the Civil Service Tribunal, whereupon that Tribunal may not decline jurisdiction.

3.    Where the Civil Service Tribunal and the General Court are seised of cases in which the same issue of interpretation is raised or the validity of the same act is called in question, the Civil Service Tribunal, after hearing the parties, may stay the proceedings until the judgment of the General Court has been delivered.

Where the Civil Service Tribunal and the General Court are seised of cases in which the same relief is sought, the Civil Service Tribunal shall decline jurisdiction so that the General Court may act on those cases.

*Article 9*

An appeal may be brought before the General Court, within two months of notification of the decision appealed against, against final decisions of the Civil Service Tribunal and decisions of that Tribunal disposing of the substantive issues in part only or disposing of a procedural issue concerning a plea of lack of jurisdiction or inadmissibility.

Such an appeal may be brought by any party which has been unsuccessful, in whole or in part, in its submissions. However, interveners other than the Member States and the institutions of the Union may bring such an appeal only where the decision of the Civil Service Tribunal directly affects them.

*Article 10*

1.    Any person whose application to intervene has been dismissed by the Civil Service Tribunal may appeal to the General Court within two weeks of notification of the decision dismissing the application.

2.    The parties to the proceedings may appeal to the General Court against any decision of the Civil Service Tribunal made pursuant to Article 278 or Article 279 or the fourth paragraph of Article 299 of the Treaty on the Functioning of the European Union or Article 157 or the third paragraph of Article 164 of the EAEC Treaty within two months of its notification.

3.    The President of the General Court may, by way of summary procedure, which may, in so far as necessary, differ from some of the rules contained in this Annex and which shall be laid down in the rules of procedure of the General Court, adjudicate upon appeals brought in accordance with paragraphs 1 and 2.

*Article 11*

1.    An appeal to the General Court shall be limited to points of law. It shall lie on the grounds of lack of jurisdiction of the Civil Service Tribunal, a breach of procedure before it which adversely affects the interests of the appellant, as well as the infringement of Union law by the Tribunal.

2.    No appeal shall lie regarding only the amount of the costs or the party ordered to pay them.

*Article 12*

1.    Without prejudice to Articles 278 and 279 of the Treaty on the Functioning of the European Union or Article 157 of the EAEC Treaty, an appeal before the General Court shall not have suspensory effect.

2.    Where an appeal is brought against a decision of the Civil Service Tribunal, the procedure before the General Court shall consist of a written part and an oral part. In accordance with conditions laid down in the rules of procedure, the General Court, having heard the parties, may dispense with the oral procedure.

*Article 13*

1.    If the appeal is well founded, the General Court shall quash the decision of the Civil Service Tribunal and itself give judgment in the matter. It shall refer the case back to the Civil Service Tribunal for judgment where the state of the proceedings does not permit a decision by the Court.

2.    Where a case is referred back to the Civil Service Tribunal, the Tribunal shall be bound by the decision of the General Court on points of law.

_____

# PROTOCOL (No 4)

## ON THE STATUTE OF THE EUROPEAN SYSTEM OF CENTRAL BANKS AND OF THE EUROPEAN CENTRAL BANK

THE HIGH CONTRACTING PARTIES,

DESIRING to lay down the Statute of the European System of Central Banks and of the European Central Bank provided for in the second paragraph of Article 129 of the Treaty on the Functioning of the European Union,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

## CHAPTER I

## THE EUROPEAN SYSTEM OF CENTRAL BANKS

### Article 1

**The European System of Central Banks**

In accordance with Article 282(1) of the Treaty on the Functioning of the European Union, the European Central Bank (ECB) and the national central banks shall constitute the European System of Central Banks (ESCB). The ECB and the national central banks of those Member States whose currency is the euro shall constitute the Eurosystem.

The ESCB and the ECB shall perform their tasks and carry on their activities in accordance with the provisions of the Treaties and of this Statute.

## CHAPTER II

## OBJECTIVES AND TASKS OF THE ESCB

### Article 2

**Objectives**

In accordance with Article 127(1) and Article 282(2) of the Treaty on the Functioning of the European Union, the primary objective of the ESCB shall be to maintain price stability. Without prejudice to the objective of price stability, it shall support the general economic policies in the Union with a view to contributing to the achievement of the objectives of the Union as laid down in Article 3 of the Treaty on European Union. The ESCB shall act in accordance with the principle of an open market economy with free competition, favouring an efficient allocation of resources, and in compliance with the principles set out in Article 119 of the Treaty on the Functioning of the European Union.

## Article 3

### Tasks

3.1.    In accordance with Article 127(2) of the Treaty on the Functioning of the European Union, the basic tasks to be carried out through the ESCB shall be:

— to define and implement the monetary policy of the Union;

— to conduct foreign-exchange operations consistent with the provisions of Article 219 of that Treaty;

— to hold and manage the official foreign reserves of the Member States;

— to promote the smooth operation of payment systems.

3.2.    In accordance with Article 127(3) of the Treaty on the Functioning of the European Union, the third indent of Article 3.1 shall be without prejudice to the holding and management by the governments of Member States of foreign-exchange working balances.

3.3.    In accordance with Article 127(5) of the Treaty on the Functioning of the European Union, the ESCB shall contribute to the smooth conduct of policies pursued by the competent authorities relating to the prudential supervision of credit institutions and the stability of the financial system.

## Article 4

### Advisory functions

In accordance with Article 127(4) of the Treaty on the Functioning of the European Union:

(a) the ECB shall be consulted:

— on any proposed Union act in its fields of competence;

— by national authorities regarding any draft legislative provision in its fields of competence, but within the limits and under the conditions set out by the Council in accordance with the procedure laid down in Article 41;

(b) the ECB may submit opinions to the Union institutions, bodies, offices or agencies or to national authorities on matters in its fields of competence.

## Article 5

### Collection of statistical information

5.1.    In order to undertake the tasks of the ESCB, the ECB, assisted by the national central banks, shall collect the necessary statistical information either from the competent national authorities or directly from economic agents. For these purposes it shall cooperate with the Union institutions, bodies, offices or agencies and with the competent authorities of the Member States or third countries and with international organisations.

5.2.    The national central banks shall carry out, to the extent possible, the tasks described in Article 5.1.

5.3.    The ECB shall contribute to the harmonisation, where necessary, of the rules and practices governing the collection, compilation and distribution of statistics in the areas within its fields of competence.

5.4.    The Council, in accordance with the procedure laid down in Article 41, shall define the natural and legal persons subject to reporting requirements, the confidentiality regime and the appropriate provisions for enforcement.

### Article 6

**International cooperation**

6.1.    In the field of international cooperation involving the tasks entrusted to the ESCB, the ECB shall decide how the ESCB shall be represented.

6.2.    The ECB and, subject to its approval, the national central banks may participate in international monetary institutions.

6.3.    Articles 6.1 and 6.2 shall be without prejudice to Article 138 of the Treaty on the Functioning of the European Union.

### CHAPTER III

## ORGANISATION OF THE ESCB

### Article 7

**Independence**

In accordance with Article 130 of the Treaty on the Functioning of the European Union, when exercising the powers and carrying out the tasks and duties conferred upon them by the Treaties and this Statute, neither the ECB, nor a national central bank, nor any member of their decision-making bodies shall seek or take instructions from Union institutions, bodies, offices or agencies, from any government of a Member State or from any other body. The Union institutions, bodies, offices or agencies and the governments of the Member States undertake to respect this principle and not to seek to influence the members of the decision-making bodies of the ECB or of the national central banks in the performance of their tasks.

### Article 8

**General principle**

The ESCB shall be governed by the decision-making bodies of the ECB.

## Article 9

### The European Central Bank

9.1.    The ECB which, in accordance with Article 282(3) of the Treaty on the Functioning of the European Union, shall have legal personality, shall enjoy in each of the Member States the most extensive legal capacity accorded to legal persons under its law; it may, in particular, acquire or dispose of movable and immovable property and may be a party to legal proceedings.

9.2.    The ECB shall ensure that the tasks conferred upon the ESCB under Article 127(2), (3) and (5) of the Treaty on the Functioning of the European Union are implemented either by its own activities pursuant to this Statute or through the national central banks pursuant to Articles 12.1 and 14.

9.3.    In accordance with Article 129(1) of the Treaty on the Functioning of the European Union, the decision making bodies of the ECB shall be the Governing Council and the Executive Board.

## Article 10

### The Governing Council

10.1.    In accordance with Article 283(1) of the Treaty on the Functioning of the European Union, the Governing Council shall comprise the members of the Executive Board of the ECB and the governors of the national central banks of the Member States whose currency is the euro.

10.2.    Each member of the Governing Council shall have one vote. As from the date on which the number of members of the Governing Council exceeds 21, each member of the Executive Board shall have one vote and the number of governors with a voting right shall be 15. The latter voting rights shall be assigned and shall rotate as follows:

— as from the date on which the number of governors exceeds 15, until it reaches 22, the governors shall be allocated to two groups, according to a ranking of the size of the share of their national central bank's Member State in the aggregate gross domestic product at market prices and in the total aggregated balance sheet of the monetary financial institutions of the Member States whose currency is the euro. The shares in the aggregate gross domestic product at market prices and in the total aggregated balance sheet of the monetary financial institutions shall be assigned weights of 5/6 and 1/6, respectively. The first group shall be composed of five governors and the second group of the remaining governors. The frequency of voting rights of the governors allocated to the first group shall not be lower than the frequency of voting rights of those of the second group. Subject to the previous sentence, the first group shall be assigned four voting rights and the second group eleven voting rights,

— as from the date on which the number of governors reaches 22, the governors shall be allocated to three groups according to a ranking based on the above criteria. The first group shall be composed of five governors and shall be assigned four voting rights. The second group shall be composed of half of the total number of governors, with any fraction rounded up to the nearest integer, and shall be assigned eight voting rights. The third group shall be composed of the remaining governors and shall be assigned three voting rights,

— within each group, the governors shall have their voting rights for equal amounts of time,

— for the calculation of the shares in the aggregate gross domestic product at market prices Article 29.2 shall apply. The total aggregated balance sheet of the monetary financial institutions shall be calculated in accordance with the statistical framework applying in the Union at the time of the calculation,

— whenever the aggregate gross domestic product at market prices is adjusted in accordance with Article 29.3, or whenever the number of governors increases, the size and/or composition of the groups shall be adjusted in accordance with the above principles,

— the Governing Council, acting by a two-thirds majority of all its members, with and without a voting right, shall take all measures necessary for the implementation of the above principles and may decide to postpone the start of the rotation system until the date on which the number of governors exceeds 18.

The right to vote shall be exercised in person. By way of derogation from this rule, the Rules of Procedure referred to in Article 12.3 may lay down that members of the Governing Council may cast their vote by means of teleconferencing. These rules shall also provide that a member of the Governing Council who is prevented from attending meetings of the Governing Council for a prolonged period may appoint an alternate as a member of the Governing Council.

The provisions of the previous paragraphs are without prejudice to the voting rights of all members of the Governing Council, with and without a voting right, under Articles 10.3, 40.2 and 40.3.

Save as otherwise provided for in this Statute, the Governing Council shall act by a simple majority of the members having a voting right. In the event of a tie, the President shall have the casting vote.

In order for the Governing Council to vote, there shall be a quorum of two-thirds of the members having a voting right. If the quorum is not met, the President may convene an extraordinary meeting at which decisions may be taken without regard to the quorum.

10.3.    For any decisions to be taken under Articles 28, 29, 30, 32 and 33, the votes in the Governing Council shall be weighted according to the national central banks' shares in the subscribed capital of the ECB. The weights of the votes of the members of the Executive Board shall be zero. A decision requiring a qualified majority shall be adopted if the votes cast in favour represent at least two thirds of the subscribed capital of the ECB and represent at least half of the shareholders. If a Governor is unable to be present, he may nominate an alternate to cast his weighted vote.

10.4.    The proceedings of the meetings shall be confidential. The Governing Council may decide to make the outcome of its deliberations public.

10.5.    The Governing Council shall meet at least 10 times a year.

## *Article 11*

### The Executive Board

11.1.    In accordance with the first subparagraph of Article 283(2) of the Treaty on the Functioning of the European Union, the Executive Board shall comprise the President, the Vice-President and four other members.

The members shall perform their duties on a full-time basis. No member shall engage in any occupation, whether gainful or not, unless exemption is exceptionally granted by the Governing Council.

11.2.    In accordance with the second subparagraph of Article 283(2) of the Treaty on the Functioning of the European Union, the President, the Vice-President and the other members of the Executive Board shall be appointed by the European Council, acting by a qualified majority, from among persons of recognised standing and professional experience in monetary or banking matters, on a recommendation from the Council after it has consulted the European Parliament and the Governing Council.

Their term of office shall be eight years and shall not be renewable.

Only nationals of Member States may be members of the Executive Board.

11.3.    The terms and conditions of employment of the members of the Executive Board, in particular their salaries, pensions and other social security benefits shall be the subject of contracts with the ECB and shall be fixed by the Governing Council on a proposal from a Committee comprising three members appointed by the Governing Council and three members appointed by the Council. The members of the Executive Board shall not have the right to vote on matters referred to in this paragraph.

11.4.    If a member of the Executive Board no longer fulfils the conditions required for the performance of his duties or if he has been guilty of serious misconduct, the Court of Justice may, on application by the Governing Council or the Executive Board, compulsorily retire him.

11.5.    Each member of the Executive Board present in person shall have the right to vote and shall have, for that purpose, one vote. Save as otherwise provided, the Executive Board shall act by a simple majority of the votes cast. In the event of a tie, the President shall have the casting vote. The voting arrangements shall be specified in the Rules of Procedure referred to in Article 12.3.

11.6.    The Executive Board shall be responsible for the current business of the ECB.

11.7.    Any vacancy on the Executive Board shall be filled by the appointment of a new member in accordance with Article 11.2.

C 326/236        EN        Official Journal of the European Union        26.10.2012

## Article 12

### Responsibilities of the decision-making bodies

12.1.    The Governing Council shall adopt the guidelines and take the decisions necessary to ensure the performance of the tasks entrusted to the ESCB under these Treaties and this Statute. The Governing Council shall formulate the monetary policy of the Union including, as appropriate, decisions relating to intermediate monetary objectives, key interest rates and the supply of reserves in the ESCB, and shall establish the necessary guidelines for their implementation.

The Executive Board shall implement monetary policy in accordance with the guidelines and decisions laid down by the Governing Council. In doing so the Executive Board shall give the necessary instructions to national central banks. In addition the Executive Board may have certain powers delegated to it where the Governing Council so decides.

To the extent deemed possible and appropriate and without prejudice to the provisions of this Article, the ECB shall have recourse to the national central banks to carry out operations which form part of the tasks of the ESCB.

12.2.    The Executive Board shall have responsibility for the preparation of meetings of the Governing Council.

12.3.    The Governing Council shall adopt Rules of Procedure which determine the internal organisation of the ECB and its decision-making bodies.

12.4.    The Governing Council shall exercise the advisory functions referred to in Article 4.

12.5.    The Governing Council shall take the decisions referred to in Article 6.

## Article 13

### The President

13.1.    The President or, in his absence, the Vice-President shall chair the Governing Council and the Executive Board of the ECB.

13.2.    Without prejudice to Article 38, the President or his nominee shall represent the ECB externally.

## Article 14

### National central banks

14.1.    In accordance with Article 131 of the Treaty on the Functioning of the European Union, each Member State shall ensure that its national legislation, including the statutes of its national central bank, is compatible with these Treaties and this Statute.

14.2.    The statutes of the national central banks shall, in particular, provide that the term of office of a Governor of a national central bank shall be no less than five years.

A Governor may be relieved from office only if he no longer fulfils the conditions required for the performance of his duties or if he has been guilty of serious misconduct. A decision to this effect may be referred to the Court of Justice by the Governor concerned or the Governing Council on grounds of infringement of these Treaties or of any rule of law relating to their application. Such proceedings shall be instituted within two months of the publication of the decision or of its notification to the plaintiff or, in the absence thereof, of the day on which it came to the knowledge of the latter, as the case may be.

14.3.    The national central banks are an integral part of the ESCB and shall act in accordance with the guidelines and instructions of the ECB. The Governing Council shall take the necessary steps to ensure compliance with the guidelines and instructions of the ECB, and shall require that any necessary information be given to it.

14.4.    National central banks may perform functions other than those specified in this Statute unless the Governing Council finds, by a majority of two thirds of the votes cast, that these interfere with the objectives and tasks of the ESCB. Such functions shall be performed on the responsibility and liability of national central banks and shall not be regarded as being part of the functions of the ESCB.

## Article 15

### Reporting commitments

15.1.    The ECB shall draw up and publish reports on the activities of the ESCB at least quarterly.

15.2.    A consolidated financial statement of the ESCB shall be published each week.

15.3.    In accordance with Article 284(3) of the Treaty on the Functioning of the European Union, the ECB shall address an annual report on the activities of the ESCB and on the monetary policy of both the previous and the current year to the European Parliament, the Council and the Commission, and also to the European Council.

15.4.    The reports and statements referred to in this Article shall be made available to interested parties free of charge.

## Article 16

### Banknotes

In accordance with Article 128(1) of the Treaty on the Functioning of the European Union, the Governing Council shall have the exclusive right to authorise the issue of euro banknotes within the Union. The ECB and the national central banks may issue such notes. The banknotes issued by the ECB and the national central banks shall be the only such notes to have the status of legal tender within the Union.

The ECB shall respect as far as possible existing practices regarding the issue and design of banknotes.

## CHAPTER IV

## MONETARY FUNCTIONS AND OPERATIONS OF THE ESCB

### Article 17

#### Accounts with the ECB and the national central banks

In order to conduct their operations, the ECB and the national central banks may open accounts for credit institutions, public entities and other market participants and accept assets, including book entry securities, as collateral.

### Article 18

#### Open market and credit operations

18.1.    In order to achieve the objectives of the ESCB and to carry out its tasks, the ECB and the national central banks may:

— operate in the financial markets by buying and selling outright (spot and forward) or under repurchase agreement and by lending or borrowing claims and marketable instruments, whether in euro or other currencies, as well as precious metals;

— conduct credit operations with credit institutions and other market participants, with lending being based on adequate collateral.

18.2.    The ECB shall establish general principles for open market and credit operations carried out by itself or the national central banks, including for the announcement of conditions under which they stand ready to enter into such transactions.

### Article 19

#### Minimum reserves

19.1.    Subject to Article 2, the ECB may require credit institutions established in Member States to hold minimum reserve on accounts with the ECB and national central banks in pursuance of monetary policy objectives. Regulations concerning the calculation and determination of the required minimum reserves may be established by the Governing Council. In cases of non-compliance the ECB shall be entitled to levy penalty interest and to impose other sanctions with comparable effect.

19.2.    For the application of this Article, the Council shall, in accordance with the procedure laid down in Article 41, define the basis for minimum reserves and the maximum permissible ratios between those reserves and their basis, as well as the appropriate sanctions in cases of non-compliance.

## Article 20

### Other instruments of monetary control

The Governing Council may, by a majority of two thirds of the votes cast, decide upon the use of such other operational methods of monetary control as it sees fit, respecting Article 2.

The Council shall, in accordance with the procedure laid down in Article 41, define the scope of such methods if they impose obligations on third parties.

## Article 21

### Operations with public entities

21.1.    In accordance with Article 123 of the Treaty on the Functioning of the European Union, overdrafts or any other type of credit facility with the ECB or with the national central banks in favour of Union institutions, bodies, offices or agencies, central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of Member States shall be prohibited, as shall the purchase directly from them by the ECB or national central banks of debt instruments.

21.2.    The ECB and national central banks may act as fiscal agents for the entities referred to in Article 21.1.

21.3.    The provisions of this Article shall not apply to publicly owned credit institutions which, in the context of the supply of reserves by central banks, shall be given the same treatment by national central banks and the ECB as private credit institutions.

## Article 22

### Clearing and payment systems

The ECB and national central banks may provide facilities, and the ECB may make regulations, to ensure efficient and sound clearing and payment systems within the Union and with other countries.

## Article 23

### External operations

The ECB and national central banks may:

— establish relations with central banks and financial institutions in other countries and, where appropriate, with international organisations;

— acquire and sell spot and forward all types of foreign exchange assets and precious metals; the term 'foreign exchange asset' shall include securities and all other assets in the currency of any country or units of account and in whatever form held;

— hold and manage the assets referred to in this Article;

— conduct all types of banking transactions in relations with third countries and international organisations, including borrowing and lending operations.

### Article 24

#### Other operations

In addition to operations arising from their tasks, the ECB and national central banks may enter into operations for their administrative purposes or for their staff.

### CHAPTER V

### PRUDENTIAL SUPERVISION

### Article 25

#### Prudential supervision

25.1.    The ECB may offer advice to and be consulted by the Council, the Commission and the competent authorities of the Member States on the scope and implementation of Union legislation relating to the prudential supervision of credit institutions and to the stability of the financial system.

25.2.    In accordance with any regulation of the Council under Article 127(6) of the Treaty on the Functioning of the European Union, the ECB may perform specific tasks concerning policies relating to the prudential supervision of credit institutions and other financial institutions with the exception of insurance undertakings.

### CHAPTER VI

### FINANCIAL PROVISIONS OF THE ESCB

### Article 26

#### Financial accounts

26.1.    The financial year of the ECB and national central banks shall begin on the first day of January and end on the last day of December.

26.2.    The annual accounts of the ECB shall be drawn up by the Executive Board, in accordance with the principles established by the Governing Council. The accounts shall be approved by the Governing Council and shall thereafter be published.

26.3.    For analytical and operational purposes, the Executive Board shall draw up a consolidated balance sheet of the ESCB, comprising those assets and liabilities of the national central banks that fall within the ESCB.

26.4.    For the application of this Article, the Governing Council shall establish the necessary rules for standardising the accounting and reporting of operations undertaken by the national central banks.

## Article 27

### Auditing

27.1.    The accounts of the ECB and national central banks shall be audited by independent external auditors recommended by the Governing Council and approved by the Council. The auditors shall have full power to examine all books and accounts of the ECB and national central banks and obtain full information about their transactions.

27.2.    The provisions of Article 287 of the Treaty on the Functioning of the European Union shall only apply to an examination of the operational efficiency of the management of the ECB.

## Article 28

### Capital of the ECB

28.1.    The capital of the ECB shall be euro 5 000 million. The capital may be increased by such amounts as may be decided by the Governing Council acting by the qualified majority provided for in Article 10.3, within the limits and under the conditions set by the Council under the procedure laid down in Article 41.

28.2.    The national central banks shall be the sole subscribers to and holders of the capital of the ECB. The subscription of capital shall be according to the key established in accordance with Article 29.

28.3.    The Governing Council, acting by the qualified majority provided for in Article 10.3, shall determine the extent to which and the form in which the capital shall be paid up.

28.4.    Subject to Article 28.5, the shares of the national central banks in the subscribed capital of the ECB may not be transferred, pledged or attached.

28.5.    If the key referred to in Article 29 is adjusted, the national central banks shall transfer among themselves capital shares to the extent necessary to ensure that the distribution of capital shares corresponds to the adjusted key. The Governing Council shall determine the terms and conditions of such transfers.

## Article 29

### Key for capital subscription

29.1.    The key for subscription of the ECB's capital, fixed for the first time in 1998 when the ESCB was established, shall be determined by assigning to each national central bank a weighting in this key equal to the sum of:

— 50 % of the share of its respective Member State in the population of the Union in the penultimate year preceding the establishment of the ESCB;

— 50 % of the share of its respective Member State in the gross domestic product at market prices of the Union as recorded in the last five years preceding the penultimate year before the establishment of the ESCB.

The percentages shall be rounded up or down to the nearest multiple of 0,0001 percentage points.

29.2.    The statistical data to be used for the application of this Article shall be provided by the Commission in accordance with the rules adopted by the Council under the procedure provided for in Article 41.

29.3.    The weightings assigned to the national central banks shall be adjusted every five years after the establishment of the ESCB by analogy with the provisions laid down in Article 29.1. The adjusted key shall apply with effect from the first day of the following year.

29.4.    The Governing Council shall take all other measures necessary for the application of this Article.

## Article 30

### Transfer of foreign reserve assets to the ECB

30.1.    Without prejudice to Article 28, the ECB shall be provided by the national central banks with foreign reserve assets, other than Member States' currencies, euro, IMF reserve positions and SDRs, up to an amount equivalent to euro 50 000 million. The Governing Council shall decide upon the proportion to be called up by the ECB following its establishment and the amounts called up at later dates. The ECB shall have the full right to hold and manage the foreign reserves that are transferred to it and to use them for the purposes set out in this Statute.

30.2.    The contributions of each national central bank shall be fixed in proportion to its share in the subscribed capital of the ECB.

30.3.    Each national central bank shall be credited by the ECB with a claim equivalent to its contribution. The Governing Council shall determine the denomination and remuneration of such claims.

30.4.    Further calls of foreign reserve assets beyond the limit set in Article 30.1 may be effected by the ECB, in accordance with Article 30.2, within the limits and under the conditions set by the Council in accordance with the procedure laid down in Article 41.

30.5.    The ECB may hold and manage IMF reserve positions and SDRs and provide for the pooling of such assets.

30.6.    The Governing Council shall take all other measures necessary for the application of this Article.

## Article 31

### Foreign reserve assets held by national central banks

31.1.    The national central banks shall be allowed to perform transactions in fulfilment of their obligations towards international organisations in accordance with Article 23.

31.2.    All other operations in foreign reserve assets remaining with the national central banks after the transfers referred to in Article 30, and Member States' transactions with their foreign exchange working balances shall, above a certain limit to be established within the framework of Article 31.3, be subject to approval by the ECB in order to ensure consistency with the exchange rate and monetary policies of the Union.

31.3.    The Governing Council shall issue guidelines with a view to facilitating such operations.

## Article 32

### Allocation of monetary income of national central banks

32.1.    The income accruing to the national central banks in the performance of the ESCB's monetary policy function (hereinafter referred to as 'monetary income') shall be allocated at the end of each financial year in accordance with the provisions of this Article.

32.2.    The amount of each national central bank's monetary income shall be equal to its annual income derived from its assets held against notes in circulation and deposit liabilities to credit institutions. These assets shall be earmarked by national central banks in accordance with guidelines to be established by the Governing Council.

32.3.    If, after the introduction of the euro, the balance sheet structures of the national central banks do not, in the judgment of the Governing Council, permit the application of Article 32.2, the Governing Council, acting by a qualified majority, may decide that, by way of derogation from Article 32.2, monetary income shall be measured according to an alternative method for a period of not more than five years.

32.4.    The amount of each national central bank's monetary income shall be reduced by an amount equivalent to any interest paid by that central bank on its deposit liabilities to credit institutions in accordance with Article 19.

The Governing Council may decide that national central banks shall be indemnified against costs incurred in connection with the issue of banknotes or in exceptional circumstances for specific losses arising from monetary policy operations undertaken for the ESCB. Indemnification shall be in a form deemed appropriate in the judgment of the Governing Council; these amounts may be offset against the national central banks' monetary income.

32.5.    The sum of the national central banks' monetary income shall be allocated to the national central banks in proportion to their paid up shares in the capital of the ECB, subject to any decision taken by the Governing Council pursuant to Article 33.2.

32.6.    The clearing and settlement of the balances arising from the allocation of monetary income shall be carried out by the ECB in accordance with guidelines established by the Governing Council.

32.7.    The Governing Council shall take all other measures necessary for the application of this Article.

## Article 33

### Allocation of net profits and losses of the ECB

33.1.    The net profit of the ECB shall be transferred in the following order:

(a)  an amount to be determined by the Governing Council, which may not exceed 20 % of the net profit, shall be transferred to the general reserve fund subject to a limit equal to 100 % of the capital;

(b)  the remaining net profit shall be distributed to the shareholders of the ECB in proportion to their paid-up shares.

33.2.    In the event of a loss incurred by the ECB, the shortfall may be offset against the general reserve fund of the ECB and, if necessary, following a decision by the Governing Council, against the monetary income of the relevant financial year in proportion and up to the amounts allocated to the national central banks in accordance with Article 32.5.

## CHAPTER VII

## GENERAL PROVISIONS

## Article 34

### Legal acts

34.1.    In accordance with Article 132 of the Treaty on the Functioning of the European Union, the ECB shall:

—  make regulations to the extent necessary to implement the tasks defined in Article 3.1, first indent, Articles 19.1, 22 or 25.2 and in cases which shall be laid down in the acts of the Council referred to in Article 41;

—  take decisions necessary for carrying out the tasks entrusted to the ESCB under these Treaties and this Statute;

—  make recommendations and deliver opinions.

34.2.    The ECB may decide to publish its decisions, recommendations and opinions.

34.3.    Within the limits and under the conditions adopted by the Council under the procedure laid down in Article 41, the ECB shall be entitled to impose fines or periodic penalty payments on undertakings for failure to comply with obligations under its regulations and decisions.

## Article 35

### Judicial control and related matters

35.1.    The acts or omissions of the ECB shall be open to review or interpretation by the Court of Justice of the European Union in the cases and under the conditions laid down in the Treaty on the Functioning of the European Union. The ECB may institute proceedings in the cases and under the conditions laid down in the Treaties.

35.2.    Disputes between the ECB, on the one hand, and its creditors, debtors or any other person, on the other, shall be decided by the competent national courts, save where jurisdiction has been conferred upon the Court of Justice of the European Union.

35.3.    The ECB shall be subject to the liability regime provided for in Article 340 of the Treaty on the Functioning of the European Union. The national central banks shall be liable according to their respective national laws.

35.4.    The Court of Justice of the European Union shall have jurisdiction to give judgment pursuant to any arbitration clause contained in a contract concluded by or on behalf of the ECB, whether that contract be governed by public or private law.

35.5.    A decision of the ECB to bring an action before the Court of Justice of the European Union shall be taken by the Governing Council.

35.6.    The Court of Justice of the European Union shall have jurisdiction in disputes concerning the fulfilment by a national central bank of obligations under the Treaties and this Statute. If the ECB considers that a national central bank has failed to fulfil an obligation under the Treaties and this Statute, it shall deliver a reasoned opinion on the matter after giving the national central bank concerned the opportunity to submit its observations. If the national central bank concerned does not comply with the opinion within the period laid down by the ECB, the latter may bring the matter before the Court of Justice of the European Union.

## Article 36

### Staff

36.1.    The Governing Council, on a proposal from the Executive Board, shall lay down the conditions of employment of the staff of the ECB.

36.2.    The Court of Justice of the European Union shall have jurisdiction in any dispute between the ECB and its servants within the limits and under the conditions laid down in the conditions of employment.

### Article 37 (ex Article 38)

**Professional secrecy**

37.1.    Members of the governing bodies and the staff of the ECB and the national central banks shall be required, even after their duties have ceased, not to disclose information of the kind covered by the obligation of professional secrecy.

37.2.    Persons having access to data covered by Union legislation imposing an obligation of secrecy shall be subject to such legislation.

### Article 38 (ex Article 39)

**Signatories**

The ECB shall be legally committed to third parties by the President or by two members of the Executive Board or by the signatures of two members of the staff of the ECB who have been duly authorised by the President to sign on behalf of the ECB.

### Article 39 (ex Article 40)

**Privileges and immunities**

The ECB shall enjoy in the territories of the Member States such privileges and immunities as are necessary for the performance of its tasks, under the conditions laid down in the Protocol on the privileges and immunities of the European Union.

CHAPTER VIII

AMENDMENT OF THE STATUTE AND COMPLEMENTARY LEGISLATION

### Article 40 (ex Article 41)

**Simplified amendment procedure**

40.1.    In accordance with Article 129(3) of the Treaty on the Functioning of the European Union, Articles 5.1, 5.2, 5.3, 17, 18, 19.1, 22, 23, 24, 26, 32.2, 32.3, 32.4, 32.6, 33.1(a) and 36 of this Statute may be amended by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure either on a recommendation from the ECB and after consulting the Commission, or on a proposal from the Commission and after consulting the ECB.

40.2.    Article 10.2 may be amended by a decision of the European Council, acting unanimously, either on a recommendation from the European Central Bank and after consulting the European Parliament and the Commission, or on a recommendation from the Commission and after consulting the European Parliament and the European Central Bank. These amendments shall not enter into force until they are approved by the Member States in accordance with their respective constitutional requirements.

40.3.    A recommendation made by the ECB under this Article shall require a unanimous decision by the Governing Council.

## Article 41 (ex Article 42)

### Complementary legislation

In accordance with Article 129(4) of the Treaty on the Functioning of the European Union, the Council, either on a proposal from the Commission and after consulting the European Parliament and the ECB or on a recommendation from the ECB and after consulting the European Parliament and the Commission, shall adopt the provisions referred to in Articles 4, 5.4, 19.2, 20, 28.1, 29.2, 30.4 and 34.3 of this Statute.

## CHAPTER IX

## TRANSITIONAL AND OTHER PROVISIONS FOR THE ESCB

## Article 42 (ex Article 43)

### General provisions

42.1.    A derogation as referred to in Article 139 of the Treaty on the Functioning of the European Union shall entail that the following Articles of this Statute shall not confer any rights or impose any obligations on the Member State concerned: 3, 6, 9.2, 12.1, 14.3, 16, 18, 19, 20, 22, 23, 26.2, 27, 30, 31, 32, 33, 34, and 49.

42.2.    The central banks of Member States with a derogation as specified in Article 139(1) of the Treaty on the Functioning of the European Union shall retain their powers in the field of monetary policy according to national law.

42.3.    In accordance with Article 139 of the Treaty on the Functioning of the European Union, 'Member States' shall be read as 'Member States whose currency is the euro' in the following Articles of this Statute: 3, 11.2 and 19.

42.4.    'National central banks' shall be read as 'central banks of Member States whose currency is the euro' in the following Articles of this Statute: 9.2, 10.2, 10.3, 12.1, 16, 17, 18, 22, 23, 27, 30, 31, 32, 33.2 and 49.

42.5.    'Shareholders' shall be read as 'central banks of Member States whose currency is the euro' in Articles 10.3 and 33.1.

42.6.    'Subscribed capital of the ECB' shall be read as 'capital of the ECB subscribed by the central banks of Member States whose currency is the euro' in Articles 10.3 and 30.2.

## Article 43 (ex Article 44)

### Transitional tasks of the ECB

The ECB shall take over the former tasks of the EMI referred to in Article 141(2) of the Treaty on the Functioning of the European Union which, because of the derogations of one or more Member States, still have to be performed after the introduction of the euro.

The ECB shall give advice in the preparations for the abrogation of the derogations specified in Article 140 of the Treaty on the Functioning of the European Union.

## Article 44 (ex Article 45)

### The General Council of the ECB

44.1.    Without prejudice to Article 129(1) of the Treaty on the Functioning of the European Union, the General Council shall be constituted as a third decision-making body of the ECB.

44.2.    The General Council shall comprise the President and Vice-President of the ECB and the Governors of the national central banks. The other members of the Executive Board may participate, without having the right to vote, in meetings of the General Council.

44.3.    The responsibilities of the General Council are listed in full in Article 46 of this Statute.

## Article 45 (ex Article 46)

### Rules of Procedure of the General Council

45.1.    The President or, in his absence, the Vice-President of the ECB shall chair the General Council of the ECB.

45.2.    The President of the Council and a Member of the Commission may participate, without having the right to vote, in meetings of the General Council.

45.3.    The President shall prepare the meetings of the General Council.

45.4.    By way of derogation from Article 12.3, the General Council shall adopt its Rules of Procedure.

45.5.    The Secretariat of the General Council shall be provided by the ECB.

## Article 46 (ex Article 47)

### Responsibilities of the General Council

46.1.    The General Council shall:

— perform the tasks referred to in Article 43;

— contribute to the advisory functions referred to in Articles 4 and 25.1.

46.2.    The General Council shall contribute to:

— the collection of statistical information as referred to in Article 5;

— the reporting activities of the ECB as referred to in Article 15;

— the establishment of the necessary rules for the application of Article 26 as referred to in Article 26.4;

— the taking of all other measures necessary for the application of Article 29 as referred to in Article 29.4;

— the laying down of the conditions of employment of the staff of the ECB as referred to in Article 36.

46.3.    The General Council shall contribute to the necessary preparations for irrevocably fixing the exchange rates of the currencies of Member States with a derogation against the euro as referred to in Article 140(3) of the Treaty on the Functioning of the European Union.

46.4.    The General Council shall be informed by the President of the ECB of decisions of the Governing Council.

### Article 47 (ex Article 48)

#### Transitional provisions for the capital of the ECB

In accordance with Article 29.1, each national central bank shall be assigned a weighting in the key for subscription of the ECB's capital. By way of derogation from Article 28.3, central banks of Member States with a derogation shall not pay up their subscribed capital unless the General Council, acting by a majority representing at least two thirds of the subscribed capital of the ECB and at least half of the shareholders, decides that a minimal percentage has to be paid up as a contribution to the operational costs of the ECB.

### Article 48 (ex Article 49)

#### Deferred payment of capital, reserves and provisions of the ECB

48.1.    The central bank of a Member State whose derogation has been abrogated shall pay up its subscribed share of the capital of the ECB to the same extent as the central banks of other Member States whose currency is the euro, and shall transfer to the ECB foreign reserve assets in accordance with Article 30.1. The sum to be transferred shall be determined by multiplying the euro value at current exchange rates of the foreign reserve assets which have already been transferred to the ECB in accordance with Article 30.1, by the ratio between the number of shares subscribed by the national central bank concerned and the number of shares already paid up by the other national central banks.

48.2.    In addition to the payment to be made in accordance with Article 48.1, the central bank concerned shall contribute to the reserves of the ECB, to those provisions equivalent to reserves, and to the amount still to be appropriated to the reserves and provisions corresponding to the balance of the profit and loss account as at 31 December of the year prior to the abrogation of the derogation.

C 326/250 [EN] Official Journal of the European Union 26.10.2012

The sum to be contributed shall be determined by multiplying the amount of the reserves, as defined above and as stated in the approved balance sheet of the ECB, by the ratio between the number of shares subscribed by the central bank concerned and the number of shares already paid up by the other central banks.

48.3.    Upon one or more countries becoming Member States and their respective national central banks becoming part of the ESCB, the subscribed capital of the ECB and the limit on the amount of foreign reserve assets that may be transferred to the ECB shall be automatically increased. The increase shall be determined by multiplying the respective amounts then prevailing by the ratio, within the expanded capital key, between the weighting of the entering national central banks concerned and the weighting of the national central banks already members of the ESCB. Each national central bank's weighting in the capital key shall be calculated by analogy with Article 29.1 and in compliance with Article 29.2. The reference periods to be used for the statistical data shall be identical to those applied for the latest quinquennial adjustment of the weightings under Article 29.3.

## Article 49 (ex Article 52)

### Exchange of banknotes in the currencies of the Member States

Following the irrevocable fixing of exchange rates in accordance with Article 140 of the Treaty on the Functioning of the European Union, the Governing Council shall take the necessary measures to ensure that banknotes denominated in currencies with irrevocably fixed exchange rates are exchanged by the national central banks at their respective par values.

## Article 50 (ex Article 53)

### Applicability of the transitional provisions

If and as long as there are Member States with a derogation, Articles 42 to 47 shall be applicable.

————

# PROTOCOL (No 5)

## ON THE STATUTE OF THE EUROPEAN INVESTMENT BANK

THE HIGH CONTRACTING PARTIES,

DESIRING to lay down the Statute of the European Investment Bank provided for in Article 308 of the Treaty on the Functioning of the European Union,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

The European Investment Bank established by Article 308 of the Treaty on the Functioning of the European Union (hereinafter called the 'Bank') is hereby constituted; it shall perform its functions and carry on its activities in accordance with the provisions of the Treaties and of this Statute.

### Article 2

The task of the Bank shall be that defined in Article 309 of the Treaty on the Functioning of the European Union.

### Article 3

In accordance with Article 308 of the Treaty on the Functioning of the European Union, the Bank's members shall be the Member States.

### Article 4

1.    The capital of the Bank shall be EUR 232 392 989 000, subscribed by the Member States as follows:

| | |
|---|---|
| Germany | 37 578 019 000 |
| France | 37 578 019 000 |
| Italy | 37 578 019 000 |
| United Kingdom | 37 578 019 000 |
| Spain | 22 546 811 500 |
| Belgium | 10 416 365 500 |
| Netherlands | 10 416 365 500 |
| Sweden | 6 910 226 000 |
| Denmark | 5 274 105 000 |
| Austria | 5 170 732 500 |
| Poland | 4 810 160 500 |
| Finland | 2 970 783 000 |

C 326/252    EN    Official Journal of the European Union    26.10.2012

| | |
|---|---:|
| Greece | 2 825 416 500 |
| Portugal | 1 820 820 000 |
| Czech Republic | 1 774 990 500 |
| Hungary | 1 679 222 000 |
| Ireland | 1 318 525 000 |
| Romania | 1 217 626 000 |
| Slovakia | 604 206 500 |
| Slovenia | 560 951 500 |
| Bulgaria | 410 217 500 |
| Lithuania | 351 981 000 |
| Luxembourg | 263 707 000 |
| Cyprus | 258 583 500 |
| Latvia | 214 805 000 |
| Estonia | 165 882 000 |
| Malta | 98 429 500 |

The Member States shall be liable only up to the amount of their share of the capital subscribed and not paid up.

2.    The admission of a new member shall entail an increase in the subscribed capital corresponding to the capital brought in by the new member.

3.    The Board of Governors may, acting unanimously, decide to increase the subscribed capital.

4.    The share of a member in the subscribed capital may not be transferred, pledged or attached.

*Article 5*

1.    The subscribed capital shall be paid in by Member States to the extent of 5 % on average of the amounts laid down in Article 4(1).

2.    In the event of an increase in the subscribed capital, the Board of Governors, acting unanimously, shall fix the percentage to be paid up and the arrangements for payment. Cash payments shall be made exclusively in euro.

3.    The Board of Directors may require payment of the balance of the subscribed capital, to such extent as may be required for the Bank to meet its obligations.

Each Member State shall make this payment in proportion to its share of the subscribed capital.

## Article 6
### (ex Article 8)

The Bank shall be directed and managed by a Board of Governors, a Board of Directors and a Management Committee.

## Article 7
### (ex Article 9)

1.    The Board of Governors shall consist of the ministers designated by the Member States.

2.    The Board of Governors shall lay down general directives for the credit policy of the Bank, in accordance with the Union's objectives. The Board of Governors shall ensure that these directives are implemented.

3.    The Board of Governors shall in addition:

(a)  decide whether to increase the subscribed capital in accordance with Article 4(3) and Article 5(2);

(b)  for the purposes of Article 9(1), determine the principles applicable to financing operations undertaken within the framework of the Bank's task;

(c)  exercise the powers provided in Articles 9 and 11 in respect of the appointment and the compulsory retirement of the members of the Board of Directors and of the Management Committee, and those powers provided in the second subparagraph of Article 11(1);

(d)  take decisions in respect of the granting of finance for investment operations to be carried out, in whole or in part, outside the territories of the Member States in accordance with Article 16(1);

(e)  approve the annual report of the Board of Directors;

(f)  approve the annual balance sheet and profit and loss account;

(g)  exercise the other powers and functions conferred by this Statute;

(h)  approve the rules of procedure of the Bank.

4.    Within the framework of the Treaty and this Statute, the Board of Governors shall be competent to take, acting unanimously, any decisions concerning the suspension of the operations of the Bank and, should the event arise, its liquidation.

*Article 8*

(ex Article 10)

Save as otherwise provided in this Statute, decisions of the Board of Governors shall be taken by a majority of its members. This majority must represent at least 50 % of the subscribed capital.

A qualified majority shall require eighteen votes in favour and 68 % of the subscribed capital.

Abstentions by members present in person or represented shall not prevent the adoption of decisions requiring unanimity.

*Article 9*

(ex Article 11)

1.    The Board of Directors shall take decisions in respect of granting finance, in particular in the form of loans and guarantees, and raising loans; it shall fix the interest rates on loans granted and the commission and other charges. It may, on the basis of a decision taken by a qualified majority, delegate some of its functions to the Management Committee. It shall determine the terms and conditions for such delegation and shall supervise its execution.

The Board of Directors shall see that the Bank is properly run; it shall ensure that the Bank is managed in accordance with the provisions of the Treaties and of this Statute and with the general directives laid down by the Board of Governors.

At the end of the financial year the Board of Directors shall submit a report to the Board of Governors and shall publish it when approved.

2.    The Board of Directors shall consist of twenty-eight directors and eighteen alternate directors.

The directors shall be appointed by the Board of Governors for five years, one nominated by each Member State, and one nominated by the Commission.

The alternate directors shall be appointed by the Board of Governors for five years as shown below:

— two alternates nominated by the Federal Republic of Germany,

— two alternates nominated by the French Republic,

— two alternates nominated by the Italian Republic,

— two alternates nominated by the United Kingdom of Great Britain and Northern Ireland,

— one alternate nominated by common accord of the Kingdom of Spain and the Portuguese Republic,

26.10.2012    EN    Official Journal of the European Union    C 326/255

— one alternate nominated by common accord of the Kingdom of Belgium, the Grand Duchy of Luxembourg and the Kingdom of the Netherlands,

— two alternates nominated by common accord of the Kingdom of Denmark, the Hellenic Republic, Ireland and Romania,

— two alternates nominated by common accord of the Republic of Estonia, the Republic of Latvia, the Republic of Lithuania, the Republic of Austria, the Republic of Finland and the Kingdom of Sweden,

— three alternates nominated by common accord of the Republic of Bulgaria, the Czech Republic, the Republic of Cyprus, the Republic of Hungary, the Republic of Malta, the Republic of Poland, the Republic of Slovenia and the Slovak Republic,

— one alternate nominated by the Commission.

The Board of Directors shall co-opt six non-voting experts: three as members and three as alternates.

The appointments of the directors and the alternates shall be renewable.

The Rules of Procedure shall lay down arrangements for participating in the meetings of the Board of Directors and the provisions applicable to alternates and co-opted experts.

The President of the Management Committee or, in his absence, one of the Vice-Presidents, shall preside over meetings of the Board of Directors but shall not vote.

Members of the Board of Directors shall be chosen from persons whose independence and competence are beyond doubt; they shall be responsible only to the Bank.

3.    A director may be compulsorily retired by the Board of Governors only if he no longer fulfils the conditions required for the performance of his duties; the Board must act by a qualified majority.

If the annual report is not approved, the Board of Directors shall resign.

4.    Any vacancy arising as a result of death, voluntary resignation, compulsory retirement or collective resignation shall be filled in accordance with paragraph 2. A member shall be replaced for the remainder of his term of office, save where the entire Board of Directors is being replaced.

5.    The Board of Governors shall determine the remuneration of members of the Board of Directors. The Board of Governors shall lay down what activities are incompatible with the duties of a director or an alternate.

## Article 10
### (ex Article 12)

1.    Each director shall have one vote on the Board of Directors. He may delegate his vote in all cases, according to procedures to be laid down in the Rules of Procedure of the Bank.

2.    Save as otherwise provided in this Statute, decisions of the Board of Directors shall be taken by at least one third of the members entitled to vote representing at least fifty per cent of the subscribed capital. A qualified majority shall require eighteen votes in favour and sixty-eight per cent of the subscribed capital. The rules of procedure of the Bank shall lay down the quorum required for the decisions of the Board of Directors to be valid.

## Article 11
### (ex Article 13)

1.    The Management Committee shall consist of a President and eight Vice-Presidents appointed for a period of six years by the Board of Governors on a proposal from the Board of Directors.

Their appointments shall be renewable. The Board of Governors, acting unanimously, may vary the number of members on the Management Committee.

2.    On a proposal from the Board of Directors adopted by a qualified majority, the Board of Governors may, acting in its turn by a qualified majority, compulsorily retire a member of the Management Committee.

3.    The Management Committee shall be responsible for the current business of the Bank, under the authority of the President and the supervision of the Board of Directors.

It shall prepare the decisions of the Board of Directors, in particular decisions on the raising of loans and the granting of finance, in particular in the form of loans and guarantees; it shall ensure that these decisions are implemented.

4.    The Management Committee shall act by a majority when delivering opinions on proposals for raising loans or granting of finance, in particular in the form of loans and guarantees.

5.    The Board of Governors shall determine the remuneration of members of the Management Committee and shall lay down what activities are incompatible with their duties.

6.    The President or, if he is prevented, a Vice-President shall represent the Bank in judicial and other matters.

7.    The staff of the Bank shall be under the authority of the President. They shall be engaged and discharged by him. In the selection of staff, account shall be taken not only of personal ability and qualifications but also of an equitable representation of nationals of Member States. The Rules of Procedure shall determine which organ is competent to adopt the provisions applicable to staff.

8.    The Management Committee and the staff of the Bank shall be responsible only to the Bank and shall be completely independent in the performance of their duties.

### Article 12
#### (ex Article 14)

1.    A Committee consisting of six members, appointed on the grounds of their competence by the Board of Governors, shall verify that the activities of the Bank conform to best banking practice and shall be responsible for the auditing of its accounts.

2.    The Committee referred to in paragraph 1 shall annually ascertain that the operations of the Bank have been conducted and its books kept in a proper manner. To this end, it shall verify that the Bank's operations have been carried out in compliance with the formalities and procedures laid down by this Statute and the Rules of Procedure.

3.    The Committee referred to in paragraph 1 shall confirm that the financial statements, as well as any other financial information contained in the annual accounts drawn up by the Board of Directors, give a true and fair view of the financial position of the Bank in respect of its assets and liabilities, and of the results of its operations and its cash flows for the financial year under review.

4.    The Rules of Procedure shall specify the qualifications required of the members of the Committee and lay down the terms and conditions for the Committee's activity.

### Article 13
#### (ex Article 15)

The Bank shall deal with each Member State through the authority designated by that State. In the conduct of financial operations the Bank shall have recourse to the national central bank of the Member State concerned or to other financial institutions approved by that State.

### Article 14
#### (ex Article 16)

1.    The Bank shall cooperate with all international organisations active in fields similar to its own.

2.    The Bank shall seek to establish all appropriate contacts in the interests of cooperation with banking and financial institutions in the countries to which its operations extend.

### Article 15
#### (ex Article 17)

At the request of a Member State or of the Commission, or on its own initiative, the Board of Governors shall, in accordance with the same provisions as governed their adoption, interpret or supplement the directives laid down by it under Article 7 of this Statute.

C 326/258          EN          Official Journal of the European Union          26.10.2012

*Article 16*

(ex Article 18)

1.    Within the framework of the task set out in Article 309 of the Treaty on the Functioning of the European Union, the Bank shall grant finance, in particular in the form of loans and guarantees to its members or to private or public undertakings for investments to be carried out in the territories of Member States, to the extent that funds are not available from other sources on reasonable terms.

However, by decision of the Board of Governors, acting by a qualified majority on a proposal from the Board of Directors, the Bank may grant financing for investment to be carried out, in whole or in part, outside the territories of Member States.

2.    As far as possible, loans shall be granted only on condition that other sources of finance are also used.

3.    When granting a loan to an undertaking or to a body other than a Member State, the Bank shall make the loan conditional either on a guarantee from the Member State in whose territory the investment will be carried out or on other adequate guarantees, or on the financial strength of the debtor.

Furthermore, in accordance with the principles established by the Board of Governors pursuant to Article 7(3)(b), and where the implementation of projects provided for in Article 309 of the Treaty on the Functioning of the European Union so requires, the Board of Directors shall, acting by a qualified majority, lay down the terms and conditions of any financing operation presenting a specific risk profile and thus considered to be a special activity.

4.    The Bank may guarantee loans contracted by public or private undertakings or other bodies for the purpose of carrying out projects provided for in Article 309 of the Treaty on the Functioning of the European Union.

5.    The aggregate amount outstanding at any time of loans and guarantees granted by the Bank shall not exceed 250 % of its subscribed capital, reserves, non-allocated provisions and profit and loss account surplus. The latter aggregate amount shall be reduced by an amount equal to the amount subscribed (whether or not paid in) for any equity participation of the Bank.

The amount of the Bank's disbursed equity participations shall not exceed at any time an amount corresponding to the total of its paid-in subscribed capital, reserves, non-allocated provisions and profit and loss account surplus.

By way of exception, the special activities of the Bank, as decided by the Board of Governors and the Board of Directors in accordance with paragraph 3, will have a specific allocation of reserve.

This paragraph shall also apply to the consolidated accounts of the Bank.

6.    The Bank shall protect itself against exchange risks by including in contracts for loans and guarantees such clauses as it considers appropriate.

## Article 17
### (ex Article 19)

1.    Interest rates on loans to be granted by the Bank and commission and other charges shall be adjusted to conditions prevailing on the capital market and shall be calculated in such a way that the income therefrom shall enable the Bank to meet its obligations, to cover its expenses and risks and to build up a reserve fund as provided for in Article 22.

2.    The Bank shall not grant any reduction in interest rates. Where a reduction in the interest rate appears desirable in view of the nature of the investment to be financed, the Member State concerned or some other agency may grant aid towards the payment of interest to the extent that this is compatible with Article 107 of the Treaty on the Functioning of the European Union.

## Article 18
### (ex Article 20)

In its financing operations, the Bank shall observe the following principles:

1.    It shall ensure that its funds are employed as rationally as possible in the interests of the Union.

It may grant loans or guarantees only:

(a) where, in the case of investments by undertakings in the production sector, interest and amortisation payments are covered out of operating profits or, in the case of other investments, either by a commitment entered into by the State in which the investment is made or by some other means; and

(b) where the execution of the investment contributes to an increase in economic productivity in general and promotes the attainment of the internal market.

2.    It shall neither acquire any interest in an undertaking nor assume any responsibility in its management unless this is required to safeguard the rights of the Bank in ensuring recovery of funds lent.

However, in accordance with the principles determined by the Board of Governors pursuant to Article 7(3)(b), and where the implementation of operations provided for in Article 309 of the Treaty on the Functioning of the European Union so requires, the Board of Directors shall, acting by a qualified majority, lay down the terms and conditions for taking an equity participation in a commercial undertaking, normally as a complement to a loan or a guarantee, in so far as this is required to finance an investment or programme.

3.    It may dispose of its claims on the capital market and may, to this end, require its debtors to issue bonds or other securities.

4.    Neither the Bank nor the Member States shall impose conditions requiring funds lent by the Bank to be spent within a specified Member State.

5.    The Bank may make its loans conditional on international invitations to tender being arranged.

6.    The Bank shall not finance, in whole or in part, any investment opposed by the Member State in whose territory it is to be carried out.

7.    As a complement to its lending activity, the Bank may provide technical assistance services in accordance with the terms and conditions laid down by the Board of Governors, acting by a qualified majority, and in compliance with this Statute.

*Article 19*

(ex Article 21)

1.    Any undertaking or public or private entity may apply directly to the Bank for financing. Applications to the Bank may also be made either through the Commission or through the Member State on whose territory the investment will be carried out.

2.    Applications made through the Commission shall be submitted for an opinion to the Member State in whose territory the investment will be carried out. Applications made through a Member State shall be submitted to the Commission for an opinion. Applications made direct by an undertaking shall be submitted to the Member State concerned and to the Commission.

The Member State concerned and the Commission shall deliver their opinions within two months. If no reply is received within this period, the Bank may assume that there is no objection to the investment in question.

3.    The Board of Directors shall rule on financing operations submitted to it by the Management Committee.

4.    The Management Committee shall examine whether financing operations submitted to it comply with the provisions of this Statute, in particular with Articles 16 and 18. Where the Management Committee is in favour of the financing operation, it shall submit the corresponding proposal to the Board of Directors; the Committee may make its favourable opinion subject to such conditions, as it considers essential. Where the Management Committee is against granting the finance, it shall submit the relevant documents together with its opinion to the Board of Directors.

5.    Where the Management Committee delivers an unfavourable opinion, the Board of Directors may not grant the finance concerned unless its decision is unanimous.

6.    Where the Commission delivers an unfavourable opinion, the Board of Directors may not grant the finance concerned unless its decision is unanimous, the director nominated by the Commission abstaining.

7.    Where both the Management Committee and the Commission deliver an unfavourable opinion, the Board of Directors may not grant the finance.

8.    In the event that a financing operation relating to an approved investment has to be restructured in order to safeguard the Bank's rights and interests, the Management Committee shall take without delay the emergency measures which it deems necessary, subject to immediate reporting thereon to the Board of Directors.

## Article 20
### (ex Article 22)

1.    The Bank shall borrow on the capital markets the funds necessary for the performance of its tasks.

2.    The Bank may borrow on the capital markets of the Member States in accordance with the legal provisions applying to those markets.

The competent authorities of a Member State with a derogation within the meaning of Article 139(1) of the Treaty on the Functioning of the European Union may oppose this only if there is reason to fear serious disturbances on the capital market of that State.

## Article 21
### (ex Article 23)

1.    The Bank may employ any available funds which it does not immediately require to meet its obligations in the following ways:

(a)  it may invest on the money markets;

(b)  it may, subject to the provisions of Article 18(2), buy and sell securities;

(c)  it may carry out any other financial operation linked with its objectives.

2.    Without prejudice to the provisions of Article 23, the Bank shall not, in managing its investments, engage in any currency arbitrage not directly required to carry out its lending operations or fulfil commitments arising out of loans raised or guarantees granted by it.

3.    The Bank shall, in the fields covered by this Article, act in agreement with the competent authorities or with the national central bank of the Member State concerned.

## Article 22
### (ex Article 24)

1.    A reserve fund of up to 10 % of the subscribed capital shall be built up progressively. If the state of the liabilities of the Bank should so justify, the Board of Directors may decide to set aside additional reserves. Until such time as the reserve fund has been fully built up, it shall be fed by:

(a)  interest received on loans granted by the Bank out of sums to be paid up by the Member States pursuant to Article 5;

(b)  interest received on loans granted by the Bank out of funds derived from repayment of the loans referred to in (a);

to the extent that this income is not required to meet the obligations of the Bank or to cover its expenses.

2.    The resources of the reserve fund shall be so invested as to be available at any time to meet the purpose of the fund.

## Article 23
### (ex Article 25)

1.    The Bank shall at all times be entitled to transfer its assets in the currency of a Member State whose currency is not the euro in order to carry out financial operations corresponding to the task set out in Article 309 of the Treaty on the Functioning of the European Union, taking into account the provisions of Article 21 of this Statute. The Bank shall, as far as possible, avoid making such transfers if it has cash or liquid assets in the currency required.

2.    The Bank may not convert its assets in the currency of a Member State whose currency is not the euro into the currency of a third country without the agreement of the Member State concerned.

3.    The Bank may freely dispose of that part of its capital which is paid up and of any currency borrowed on markets outside the Union.

4.    The Member States undertake to make available to the debtors of the Bank the currency needed to repay the capital and pay the interest on loans or commission on guarantees granted by the Bank for investments to be carried out in their territory.

26.10.2012     EN     Official Journal of the European Union     C 326/263

## Article 24
(ex Article 26)

If a Member State fails to meet the obligations of membership arising from this Statute, in particular the obligation to pay its share of the subscribed capital or to service its borrowings, the granting of loans or guarantees to that Member State or its nationals may be suspended by a decision of the Board of Governors, acting by a qualified majority.

Such decision shall not release either the State or its nationals from their obligations towards the Bank.

## Article 25
(ex Article 27)

1.     If the Board of Governors decides to suspend the operations of the Bank, all its activities shall cease forthwith, except those required to ensure the due realisation, protection and preservation of its assets and the settlement of its liabilities.

2.     In the event of liquidation, the Board of Governors shall appoint the liquidators and give them instructions for carrying out the liquidation. It shall ensure that the rights of the members of staff are safeguarded.

## Article 26
(ex Article 28)

1.     In each of the Member States, the Bank shall enjoy the most extensive legal capacity accorded to legal persons under their laws; it may, in particular, acquire or dispose of movable or immovable property and may be a party to legal proceedings.

2.     The property of the Bank shall be exempt from all forms of requisition or expropriation.

## Article 27
(ex Article 29)

Disputes between the Bank on the one hand, and its creditors, debtors or any other person on the other, shall be decided by the competent national courts, save where jurisdiction has been conferred on the Court of Justice of the European Union. The Bank may provide for arbitration in any contract.

The Bank shall have an address for service in each Member State. It may, however, in any contract, specify a particular address for service.

The property and assets of the Bank shall not be liable to attachment or to seizure by way of execution except by decision of a court.

*Article 28*

(ex Article 30)

1.    The Board of Governors may, acting unanimously, decide to establish subsidiaries or other entities, which shall have legal personality and financial autonomy.

2.    The Board of Governors shall establish the Statutes of the bodies referred to in paragraph 1. The Statutes shall define, in particular, their objectives, structure, capital, membership, the location of their seat, their financial resources, means of intervention and auditing arrangements, as well as their relationship with the organs of the Bank.

3.    The Bank shall be entitled to participate in the management of these bodies and contribute to their subscribed capital up to the amount determined by the Board of Governors, acting unanimously.

4.    The Protocol on the privileges and immunities of the European Union shall apply to the bodies referred to in paragraph 1 in so far as they are incorporated under the law of the Union, to the members of their organs in the performance of their duties as such and to their staff, under the same terms and conditions as those applicable to the Bank.

Those dividends, capital gains or other forms of revenue stemming from such bodies to which the members, other than the European Union and the Bank, are entitled, shall however remain subject to the fiscal provisions of the applicable legislation.

5.    The Court of Justice of the European Union shall, within the limits hereinafter laid down, have jurisdiction in disputes concerning measures adopted by organs of a body incorporated under Union law. Proceedings against such measures may be instituted by any member of such a body in its capacity as such or by Member States under the conditions laid down in Article 263 of the Treaty on the Functioning of the European Union.

6.    The Board of Governors may, acting unanimously, decide to admit the staff of bodies incorporated under Union law to joint schemes with the Bank, in compliance with the respective internal procedures.

————

# PROTOCOL (No 6)

## ON THE LOCATION OF THE SEATS OF THE INSTITUTIONS AND OF CERTAIN BODIES, OFFICES, AGENCIES AND DEPARTMENTS OF THE EUROPEAN UNION

THE REPRESENTATIVES OF THE GOVERNMENTS OF THE MEMBER STATES,

HAVING REGARD to Article 341 of the Treaty on the Functioning of the European Union and Article 189 of the Treaty establishing the European Atomic Energy Community,

RECALLING AND CONFIRMING the Decision of 8 April 1965, and without prejudice to the decisions concerning the seat of future institutions, bodies, offices, agencies and departments,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union, and to the Treaty establishing the European Atomic Energy Community:

*Sole Article*

(a) The European Parliament shall have its seat in Strasbourg where the 12 periods of monthly plenary sessions, including the budget session, shall be held. The periods of additional plenary sessions shall be held in Brussels. The committees of the European Parliament shall meet in Brussels. The General Secretariat of the European Parliament and its departments shall remain in Luxembourg.

(b) The Council shall have its seat in Brussels. During the months of April, June and October, the Council shall hold its meetings in Luxembourg.

(c) The Commission shall have its seat in Brussels. The departments listed in Articles 7, 8 and 9 of the Decision of 8 April 1965 shall be established in Luxembourg.

(d) The Court of Justice of the European Union shall have its seat in Luxembourg.

(e) The Court of Auditors shall have its seat in Luxembourg.

(f) The Economic and Social Committee shall have its seat in Brussels.

(g) The Committee of the Regions shall have its seat in Brussels.

(h) The European Investment Bank shall have its seat in Luxembourg.

(i) The European Central Bank shall have its seat in Frankfurt.

(j) The European Police Office (Europol) shall have its seat in The Hague.

———————

# PROTOCOL (No 7)

## ON THE PRIVILEGES AND IMMUNITIES OF THE EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

CONSIDERING that, in accordance with Article 343 of the Treaty on the Functioning of the European Union and Article 191 of the Treaty establishing the European Atomic Energy Community ('EAEC'), the European Union and the EAEC shall enjoy in the territories of the Member States such privileges and immunities as are necessary for the performance of their tasks,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union, the Treaty on the Functioning of the European Union and the Treaty establishing the European Atomic Energy Community:

### CHAPTER I

### PROPERTY, FUNDS, ASSETS AND OPERATIONS OF THE EUROPEAN UNION

#### Article 1

The premises and buildings of the Union shall be inviolable. They shall be exempt from search, requisition, confiscation or expropriation. The property and assets of the Union shall not be the subject of any administrative or legal measure of constraint without the authorisation of the Court of Justice.

#### Article 2

The archives of the Union shall be inviolable.

#### Article 3

The Union, its assets, revenues and other property shall be exempt from all direct taxes.

The governments of the Member States shall, wherever possible, take the appropriate measures to remit or refund the amount of indirect taxes or sales taxes included in the price of movable or immovable property, where the Union makes, for its official use, substantial purchases the price of which includes taxes of this kind. These provisions shall not be applied, however, so as to have the effect of distorting competition within the Union.

No exemption shall be granted in respect of taxes and dues which amount merely to charges for public utility services.

26.10.2012          EN          Official Journal of the European Union          C 326/267

### Article 4

The Union shall be exempt from all customs duties, prohibitions and restrictions on imports and exports in respect of articles intended for its official use: articles so imported shall not be disposed of, whether or not in return for payment, in the territory of the country into which they have been imported, except under conditions approved by the government of that country.

The Union shall also be exempt from any customs duties and any prohibitions and restrictions on import and exports in respect of its publications.

## CHAPTER II

## COMMUNICATIONS AND LAISSEZ-PASSER

### Article 5

### (ex Article 6)

For their official communications and the transmission of all their documents, the institutions of the Union shall enjoy in the territory of each Member State the treatment accorded by that State to diplomatic missions.

Official correspondence and other official communications of the institutions of the Union shall not be subject to censorship.

### Article 6

### (ex Article 7)

*Laissez-passer* in a form to be prescribed by the Council, acting by a simple majority, which shall be recognised as valid travel documents by the authorities of the Member States, may be issued to members and servants of the institutions of the Union by the Presidents of these institutions. These *laissez-passer* shall be issued to officials and other servants under conditions laid down in the Staff Regulations of Officials and the Conditions of Employment of other servants of the Union.

The Commission may conclude agreements for these *laissez-passer* to be recognised as valid travel documents within the territory of third countries.

## CHAPTER III

## MEMBERS OF THE EUROPEAN PARLIAMENT

### Article 7

### (ex Article 8)

No administrative or other restriction shall be imposed on the free movement of Members of the European Parliament travelling to or from the place of meeting of the European Parliament.

C 326/268     EN     Official Journal of the European Union     26.10.2012

Members of the European Parliament shall, in respect of customs and exchange control, be accorded:

(a) by their own government, the same facilities as those accorded to senior officials travelling abroad on temporary official missions;

(b) by the government of other Member States, the same facilities as those accorded to representatives of foreign governments on temporary official missions.

## Article 8
### (ex Article 9)

Members of the European Parliament shall not be subject to any form of inquiry, detention or legal proceedings in respect of opinions expressed or votes cast by them in the performance of their duties.

## Article 9
### (ex Article 10)

During the sessions of the European Parliament, its Members shall enjoy:

(a) in the territory of their own State, the immunities accorded to members of their parliament;

(b) in the territory of any other Member State, immunity from any measure of detention and from legal proceedings.

Immunity shall likewise apply to Members while they are travelling to and from the place of meeting of the European Parliament.

Immunity cannot be claimed when a Member is found in the act of committing an offence and shall not prevent the European Parliament from exercising its right to waive the immunity of one of its Members.

CHAPTER IV

REPRESENTATIVES OF MEMBER STATES TAKING PART IN THE WORK OF THE INSTITUTIONS OF THE EUROPEAN UNION

## Article 10
### (ex Article 11)

Representatives of Member States taking part in the work of the institutions of the Union, their advisers and technical experts shall, in the performance of their duties and during their travel to and from the place of meeting, enjoy the customary privileges, immunities and facilities.

This Article shall also apply to members of the advisory bodies of the Union.

CHAPTER V

OFFICIALS AND OTHER SERVANTS OF THE EUROPEAN UNION

*Article 11*
(ex Article 12)

In the territory of each Member State and whatever their nationality, officials and other servants of the Union shall:

(a)  subject to the provisions of the Treaties relating, on the one hand, to the rules on the liability of officials and other servants towards the Union and, on the other hand, to the jurisdiction of the Court of Justice of the European Union in disputes between the Union and its officials and other servants, be immune from legal proceedings in respect of acts performed by them in their official capacity, including their words spoken or written. They shall continue to enjoy this immunity after they have ceased to hold office;

(b)  together with their spouses and dependent members of their families, not be subject to immigration restrictions or to formalities for the registration of aliens;

(c)  in respect of currency or exchange regulations, be accorded the same facilities as are customarily accorded to officials of international organisations;

(d)  enjoy the right to import free of duty their furniture and effects at the time of first taking up their post in the country concerned, and the right to re-export free of duty their furniture and effects, on termination of their duties in that country, subject in either case to the conditions considered to be necessary by the government of the country in which this right is exercised;

(e)  have the right to import free of duty a motor car for their personal use, acquired either in the country of their last residence or in the country of which they are nationals on the terms ruling in the home market in that country, and to re-export it free of duty, subject in either case to the conditions considered to be necessary by the government of the country concerned.

*Article 12*
(ex Article 13)

Officials and other servants of the Union shall be liable to a tax for the benefit of the Union on salaries, wages and emoluments paid to them by the Union, in accordance with the conditions and procedure laid down by the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure and after consultation of the institutions concerned.

They shall be exempt from national taxes on salaries, wages and emoluments paid by the Union.

## Article 13
### (ex Article 14)

In the application of income tax, wealth tax and death duties and in the application of conventions on the avoidance of double taxation concluded between Member States of the Union, officials and other servants of the Union who, solely by reason of the performance of their duties in the service of the Union, establish their residence in the territory of a Member State other than their country of domicile for tax purposes at the time of entering the service of the Union, shall be considered, both in the country of their actual residence and in the country of domicile for tax purposes, as having maintained their domicile in the latter country provided that it is a member of the Union. This provision shall also apply to a spouse, to the extent that the latter is not separately engaged in a gainful occupation, and to children dependent on and in the care of the persons referred to in this Article.

Movable property belonging to persons referred to in the preceding paragraph and situated in the territory of the country where they are staying shall be exempt from death duties in that country; such property shall, for the assessment of such duty, be considered as being in the country of domicile for tax purposes, subject to the rights of third countries and to the possible application of provisions of international conventions on double taxation.

Any domicile acquired solely by reason of the performance of duties in the service of other international organisations shall not be taken into consideration in applying the provisions of this Article.

## Article 14
### (ex Article 15)

The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure and after consultation of the institutions concerned, shall lay down the scheme of social security benefits for officials and other servants of the Union.

## Article 15
### (ex Article 16)

The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, and after consulting the other institutions concerned, shall determine the categories of officials and other servants of the Union to whom the provisions of Article 11, the second paragraph of Article 12, and Article 13 shall apply, in whole or in part.

The names, grades and addresses of officials and other servants included in such categories shall be communicated periodically to the governments of the Member States.

CHAPTER VI

# PRIVILEGES AND IMMUNITIES OF MISSIONS OF THIRD COUNTRIES ACCREDITED TO THE EUROPEAN UNION

## Article 16
### (ex Article 17)

The Member State in whose territory the Union has its seat shall accord the customary diplomatic immunities and privileges to missions of third countries accredited to the Union.

CHAPTER VII

## GENERAL PROVISIONS

## Article 17
### (ex Article 18)

Privileges, immunities and facilities shall be accorded to officials and other servants of the Union solely in the interests of the Union.

Each institution of the Union shall be required to waive the immunity accorded to an official or other servant wherever that institution considers that the waiver of such immunity is not contrary to the interests of the Union.

## Article 18
### (ex Article 19)

The institutions of the Union shall, for the purpose of applying this Protocol, cooperate with the responsible authorities of the Member States concerned.

## Article 19
### (ex Article 20)

Articles 11 to 14 and Article 17 shall apply to the President of the European Council.

They shall also apply to Members of the Commission.

## Article 20
### (ex Article 21)

Articles 11 to 14 and Article 17 shall apply to the Judges, the Advocates-General, the Registrars and the Assistant Rapporteurs of the Court of Justice of the European Union, without prejudice to the provisions of Article 3 of the Protocol on the Statute of the Court of Justice of the European Union relating to immunity from legal proceedings of Judges and Advocates-General.

## Article 21

(ex Article 22)

This Protocol shall also apply to the European Investment Bank, to the members of its organs, to its staff and to the representatives of the Member States taking part in its activities, without prejudice to the provisions of the Protocol on the Statute of the Bank.

The European Investment Bank shall in addition be exempt from any form of taxation or imposition of a like nature on the occasion of any increase in its capital and from the various formalities which may be connected therewith in the State where the Bank has its seat. Similarly, its dissolution or liquidation shall not give rise to any imposition. Finally, the activities of the Bank and of its organs carried on in accordance with its Statute shall not be subject to any turnover tax.

## Article 22

(ex Article 23)

This Protocol shall also apply to the European Central Bank, to the members of its organs and to its staff, without prejudice to the provisions of the Protocol on the Statute of the European System of Central Banks and the European Central Bank.

The European Central Bank shall, in addition, be exempt from any form of taxation or imposition of a like nature on the occasion of any increase in its capital and from the various formalities which may be connected therewith in the State where the bank has its seat. The activities of the Bank and of its organs carried on in accordance with the Statute of the European System of Central Banks and of the European Central Bank shall not be subject to any turnover tax.

―――――――

26.10.2012    EN    Official Journal of the European Union    C 326/273

# PROTOCOL (No 8)

## RELATING TO ARTICLE 6(2) OF THE TREATY ON EUROPEAN UNION ON THE ACCESSION OF THE UNION TO THE EUROPEAN CONVENTION ON THE PROTECTION OF HUMAN RIGHTS AND FUNDAMENTAL FREEDOMS

THE HIGH CONTRACTING PARTIES,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

The agreement relating to the accession of the Union to the European Convention on the Protection of Human Rights and Fundamental Freedoms (hereinafter referred to as the 'European Convention') provided for in Article 6(2) of the Treaty on European Union shall make provision for preserving the specific characteristics of the Union and Union law, in particular with regard to:

(a) the specific arrangements for the Union's possible participation in the control bodies of the European Convention;

(b) the mechanisms necessary to ensure that proceedings by non-Member States and individual applications are correctly addressed to Member States and/or the Union as appropriate.

### Article 2

The agreement referred to in Article 1 shall ensure that accession of the Union shall not affect the competences of the Union or the powers of its institutions. It shall ensure that nothing therein affects the situation of Member States in relation to the European Convention, in particular in relation to the Protocols thereto, measures taken by Member States derogating from the European Convention in accordance with Article 15 thereof and reservations to the European Convention made by Member States in accordance with Article 57 thereof.

### Article 3

Nothing in the agreement referred to in Article 1 shall affect Article 344 of the Treaty on the Functioning of the European Union.

————————

# PROTOCOL (No 9)

## ON THE DECISION OF THE COUNCIL RELATING TO THE IMPLEMENTATION OF ARTICLE 16(4) OF THE TREATY ON EUROPEAN UNION AND ARTICLE 238(2) OF THE TREATY ON THE FUNCTIONING OF THE EUROPEAN UNION BETWEEN 1 NOVEMBER 2014 AND 31 MARCH 2017 ON THE ONE HAND, AND AS FROM 1 APRIL 2017 ON THE OTHER

THE HIGH CONTRACTING PARTIES,

TAKING INTO ACCOUNT the fundamental importance that agreeing on the Decision of the Council relating to the implementation of Article 16(4) of the Treaty on European Union and Article 238(2) of the Treaty on the Functioning of the European Union between 1 November 2014 and 31 March 2017 on the one hand, and as from 1 April 2017 on the other (hereinafter 'the Decision'), had when approving the Treaty of Lisbon,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Sole Article

Before the examination by the Council of any draft which would aim either at amending or abrogating the Decision or any of its provisions, or at modifying indirectly its scope or its meaning through the modification of another legal act of the Union, the European Council shall hold a preliminary deliberation on the said draft, acting by consensus in accordance with Article 15(4) of the Treaty on European Union.

————

26.10.2012    EN    Official Journal of the European Union    C 326/275

# PROTOCOL (No 10)

## ON PERMANENT STRUCTURED COOPERATION ESTABLISHED BY ARTICLE 42 OF THE TREATY ON EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

HAVING REGARD TO Article 42(6) and Article 46 of the Treaty on European Union,

RECALLING that the Union is pursuing a common foreign and security policy based on the achievement of growing convergence of action by Member States,

RECALLING that the common security and defence policy is an integral part of the common foreign and security policy; that it provides the Union with operational capacity drawing on civil and military assets; that the Union may use such assets in the tasks referred to in Article 43 of the Treaty on European Union outside the Union for peace-keeping, conflict prevention and strengthening international security in accordance with the principles of the United Nations Charter; that the performance of these tasks is to be undertaken using capabilities provided by the Member States in accordance with the principle of a single set of forces,

RECALLING that the common security and defence policy of the Union does not prejudice the specific character of the security and defence policy of certain Member States,

RECALLING that the common security and defence policy of the Union respects the obligations under the North Atlantic Treaty of those Member States which see their common defence realised in the North Atlantic Treaty Organisation, which remains the foundation of the collective defence of its members, and is compatible with the common security and defence policy established within that framework,

CONVINCED that a more assertive Union role in security and defence matters will contribute to the vitality of a renewed Atlantic Alliance, in accordance with the Berlin Plus arrangements,

DETERMINED to ensure that the Union is capable of fully assuming its responsibilities within the international community,

RECOGNISING that the United Nations Organisation may request the Union's assistance for the urgent implementation of missions undertaken under Chapters VI and VII of the United Nations Charter,

RECOGNISING that the strengthening of the security and defence policy will require efforts by Member States in the area of capabilities,

CONSCIOUS that embarking on a new stage in the development of the European security and defence policy involves a determined effort by the Member States concerned,

RECALLING the importance of the High Representative of the Union for Foreign Affairs and Security Policy being fully involved in proceedings relating to permanent structured cooperation,

C 326/276    EN    Official Journal of the European Union    26.10.2012

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

## Article 1

The permanent structured cooperation referred to in Article 42(6) of the Treaty on European Union shall be open to any Member State which undertakes, from the date of entry into force of the Treaty of Lisbon, to:

(a) proceed more intensively to develop its defence capacities through the development of its national contributions and participation, where appropriate, in multinational forces, in the main European equipment programmes, and in the activity of the Agency in the field of defence capabilities development, research, acquisition and armaments (European Defence Agency), and

(b) have the capacity to supply by 2010 at the latest, either at national level or as a component of multinational force groups, targeted combat units for the missions planned, structured at a tactical level as a battle group, with support elements including transport and logistics, capable of carrying out the tasks referred to in Article 43 of the Treaty on European Union, within a period of five to 30 days, in particular in response to requests from the United Nations Organisation, and which can be sustained for an initial period of 30 days and be extended up to at least 120 days.

## Article 2

To achieve the objectives laid down in Article 1, Member States participating in permanent structured cooperation shall undertake to:

(a) cooperate, as from the entry into force of the Treaty of Lisbon, with a view to achieving approved objectives concerning the level of investment expenditure on defence equipment, and regularly review these objectives, in the light of the security environment and of the Union's international responsibilities;

(b) bring their defence apparatus into line with each other as far as possible, particularly by harmonising the identification of their military needs, by pooling and, where appropriate, specialising their defence means and capabilities, and by encouraging cooperation in the fields of training and logistics;

(c) take concrete measures to enhance the availability, interoperability, flexibility and deployability of their forces, in particular by identifying common objectives regarding the commitment of forces, including possibly reviewing their national decision-making procedures;

(d) work together to ensure that they take the necessary measures to make good, including through multinational approaches, and without prejudice to undertakings in this regard within the North Atlantic Treaty Organisation, the shortfalls perceived in the framework of the 'Capability Development Mechanism';

(e) take part, where appropriate, in the development of major joint or European equipment programmes in the framework of the European Defence Agency.

*Article 3*

The European Defence Agency shall contribute to the regular assessment of participating Member States' contributions with regard to capabilities, in particular contributions made in accordance with the criteria to be established, *inter alia*, on the basis of Article 2, and shall report thereon at least once a year. The assessment may serve as a basis for Council recommendations and decisions adopted in accordance with Article 46 of the Treaty on European Union.

———————

C 326/278     EN     Official Journal of the European Union     26.10.2012

# PROTOCOL (No 11)

## ON ARTICLE 42 OF THE TREATY ON EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

BEARING IN MIND the need to implement fully the provisions of Article 42(2) of the Treaty on European Union,

BEARING IN MIND that the policy of the Union in accordance with Article 42 shall not prejudice the specific character of the security and defence policy of certain Member States and shall respect the obligations of certain Member States, which see their common defence realised in NATO, under the North Atlantic Treaty and be compatible with the common security and defence policy established within that framework,

HAVE AGREED UPON the following provision, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

The European Union shall draw up, together with the Western European Union, arrangements for enhanced cooperation between them.

————

# PROTOCOL (No 12)

## ON THE EXCESSIVE DEFICIT PROCEDURE

THE HIGH CONTRACTING PARTIES,

DESIRING TO lay down the details of the excessive deficit procedure referred to in Article 126 of the Treaty on the Functioning of the European Union,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

The reference values referred to in Article 126(2) of the Treaty on the Functioning of the European Union are:

— 3 % for the ratio of the planned or actual government deficit to gross domestic product at market prices;

— 60 % for the ratio of government debt to gross domestic product at market prices.

### Article 2

In Article 126 of the said Treaty and in this Protocol:

— 'government' means general government, that is central government, regional or local government and social security funds, to the exclusion of commercial operations, as defined in the European System of Integrated Economic Accounts;

— 'deficit' means net borrowing as defined in the European System of Integrated Economic Accounts;

— 'investment' means gross fixed capital formation as defined in the European System of Integrated Economic Accounts;

— 'debt' means total gross debt at nominal value outstanding at the end of the year and consolidated between and within the sectors of general government as defined in the first indent.

### Article 3

In order to ensure the effectiveness of the excessive deficit procedure, the governments of the Member States shall be responsible under this procedure for the deficits of general government as

defined in the first indent of Article 2. The Member States shall ensure that national procedures in the budgetary area enable them to meet their obligations in this area deriving from these Treaties. The Member States shall report their planned and actual deficits and the levels of their debt promptly and regularly to the Commission.

*Article 4*

The statistical data to be used for the application of this Protocol shall be provided by the Commission.

————

# PROTOCOL (No 13)

## ON THE CONVERGENCE CRITERIA

THE HIGH CONTRACTING PARTIES,

DESIRING to lay down the details of the convergence criteria which shall guide the Union in taking decisions to end the derogations of those Member States with a derogation, referred to in Article 140 of the Treaty on the Functioning of the European Union,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

The criterion on price stability referred to in the first indent of Article 140(1) of the Treaty on the Functioning of the European Union shall mean that a Member State has a price performance that is sustainable and an average rate of inflation, observed over a period of one year before the examination, that does not exceed by more than 1 ½ percentage points that of, at most, the three best performing Member States in terms of price stability. Inflation shall be measured by means of the consumer price index on a comparable basis taking into account differences in national definitions.

### Article 2

The criterion on the government budgetary position referred to in the second indent of Article 140(1) of the said Treaty shall mean that at the time of the examination the Member State is not the subject of a Council decision under Article 126(6) of the said Treaty that an excessive deficit exists.

### Article 3

The criterion on participation in the Exchange Rate mechanism of the European Monetary System referred to in the third indent of Article 140(1) of the said Treaty shall mean that a Member State has respected the normal fluctuation margins provided for by the exchange-rate mechanism on the European Monetary System without severe tensions for at least the last two years before the examination. In particular, the Member State shall not have devalued its currency's bilateral central rate against the euro on its own initiative for the same period.

### Article 4

The criterion on the convergence of interest rates referred to in the fourth indent of Article 140(1) of the said Treaty shall mean that, observed over a period of one year before the examination, a Member State has had an average nominal long-term interest rate that does not exceed by more

C 326/282    EN    Official Journal of the European Union    26.10.2012

than two percentage points that of, at most, the three best performing Member States in terms of price stability. Interest rates shall be measured on the basis of long-term government bonds or comparable securities, taking into account differences in national definitions.

### Article 5

The statistical data to be used for the application of this Protocol shall be provided by the Commission.

### Article 6

The Council shall, acting unanimously on a proposal from the Commission and after consulting the European Parliament, the ECB and the Economic and Financial Committee, adopt appropriate provisions to lay down the details of the convergence criteria referred to in Article 140(1) of the said Treaty, which shall then replace this Protocol.

————

# PROTOCOL (No 14)

## ON THE EURO GROUP

THE HIGH CONTRACTING PARTIES,

DESIRING to promote conditions for stronger economic growth in the European Union and, to that end, to develop ever-closer coordination of economic policies within the euro area,

CONSCIOUS of the need to lay down special provisions for enhanced dialogue between the Member States whose currency is the euro, pending the euro becoming the currency of all Member States of the Union,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

The Ministers of the Member States whose currency is the euro shall meet informally. Such meetings shall take place, when necessary, to discuss questions related to the specific responsibilities they share with regard to the single currency. The Commission shall take part in the meetings. The European Central Bank shall be invited to take part in such meetings, which shall be prepared by the representatives of the Ministers with responsibility for finance of the Member States whose currency is the euro and of the Commission.

### Article 2

The Ministers of the Member States whose currency is the euro shall elect a president for two and a half years, by a majority of those Member States.

————

# PROTOCOL (No 15)

## ON CERTAIN PROVISIONS RELATING TO THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

THE HIGH CONTRACTING PARTIES,

RECOGNISING that the United Kingdom shall not be obliged or committed to adopt the euro without a separate decision to do so by its government and parliament,

GIVEN that on 16 October 1996 and 30 October 1997 the United Kingdom government notified the Council of its intention not to participate in the third stage of economic and monetary union,

NOTING the practice of the government of the United Kingdom to fund its borrowing requirement by the sale of debt to the private sector,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

1.   Unless the United Kingdom notifies the Council that it intends to adopt the euro, it shall be under no obligation to do so.

2.   In view of the notice given to the Council by the United Kingdom government on 16 October 1996 and 30 October 1997, paragraphs 3 to 8 and 10 shall apply to the United Kingdom.

3.   The United Kingdom shall retain its powers in the field of monetary policy according to national law.

4.   Articles 119, second paragraph, 126(1), (9) and (11), 127(1) to (5), 128, 130, 131, 132, 133, 138, 140(3), 219, 282(2), with the exception of the first and last sentences thereof, 282(5), and 283 of the Treaty on the Functioning of the European Union shall not apply to the United Kingdom. The same applies to Article 121(2) of this Treaty as regards the adoption of the parts of the broad economic policy guidelines which concern the euro area generally. In these provisions references to the Union or the Member States shall not include the United Kingdom and references to national central banks shall not include the Bank of England.

5.   The United Kingdom shall endeavour to avoid an excessive government deficit.

Articles 143 and 144 of the Treaty on the Functioning of the European Union shall continue to apply to the United Kingdom. Articles 134(4) and 142 shall apply to the United Kingdom as if it had a derogation.

6.     The voting rights of the United Kingdom shall be suspended in respect of acts of the Council referred to in the Articles listed in paragraph 4 and in the instances referred to in the first subparagraph of Article 139(4) of the Treaty on the Functioning of the European Union. For this purpose the second subparagraph of Article 139(4) of the Treaty shall apply.

The United Kingdom shall also have no right to participate in the appointment of the President, the Vice-President and the other members of the Executive Board of the ECB under the second subparagraph of Article 283(2) of the said Treaty.

7.     Articles 3, 4, 6, 7, 9.2, 10.1, 10.3, 11.2, 12.1, 14, 16, 18 to 20, 22, 23, 26, 27, 30 to 34 and 49 of the Protocol on the Statute of the European System of Central Banks and of the European Central Bank ('the Statute') shall not apply to the United Kingdom.

In those Articles, references to the Union or the Member States shall not include the United Kingdom and references to national central banks or shareholders shall not include the Bank of England.

References in Articles 10.3 and 30.2 of the Statute to 'subscribed capital of the ECB' shall not include capital subscribed by the Bank of England.

8.     Article 141(1) of the Treaty on the Functioning of the European Union and Articles 43 to 47 of the Statute shall have effect, whether or not there is any Member State with a derogation, subject to the following amendments:

(a) References in Article 43 to the tasks of the ECB and the EMI shall include those tasks that still need to be performed in the third stage owing to any decision of the United Kingdom not to adopt the euro.

(b) In addition to the tasks referred to in Article 46, the ECB shall also give advice in relation to and contribute to the preparation of any decision of the Council with regard to the United Kingdom taken in accordance with paragraphs 9(a) and 9(c).

(c) The Bank of England shall pay up its subscription to the capital of the ECB as a contribution to its operational costs on the same basis as national central banks of Member States with a derogation.

9.     The United Kingdom may notify the Council at any time of its intention to adopt the euro. In that event:

(a) The United Kingdom shall have the right to adopt the euro provided only that it satisfies the necessary conditions. The Council, acting at the request of the United Kingdom and under the conditions and in accordance with the procedure laid down in Article 140(1) and (2) of the Treaty on the Functioning of the European Union, shall decide whether it fulfils the necessary conditions.

(b) The Bank of England shall pay up its subscribed capital, transfer to the ECB foreign reserve assets and contribute to its reserves on the same basis as the national central bank of a Member State whose derogation has been abrogated.

C 326/286       EN       Official Journal of the European Union       26.10.2012

(c) The Council, acting under the conditions and in accordance with the procedure laid down in Article 140(3) of the said Treaty, shall take all other necessary decisions to enable the United Kingdom to adopt the euro.

If the United Kingdom adopts the euro pursuant to the provisions of this Protocol, paragraphs 3 to 8 shall cease to have effect.

10.   Notwithstanding Article 123 of the Treaty on the Functioning of the European Union and Article 21.1 of the Statute, the Government of the United Kingdom may maintain its 'ways and means' facility with the Bank of England if and so long as the United Kingdom does not adopt the euro.

————

# PROTOCOL (No 16)

## ON CERTAIN PROVISIONS RELATING TO DENMARK

THE HIGH CONTRACTING PARTIES,

TAKING INTO ACCOUNT that the Danish Constitution contains provisions which may imply a referendum in Denmark prior to Denmark renouncing its exemption,

GIVEN THAT, on 3 November 1993, the Danish Government notified the Council of its intention not to participate in the third stage of economic and monetary union,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

1.    In view of the notice given to the Council by the Danish Government on 3 November 1993, Denmark shall have an exemption. The effect of the exemption shall be that all Articles and provisions of the Treaties and the Statute of the ESCB referring to a derogation shall be applicable to Denmark.

2.    As for the abrogation of the exemption, the procedure referred to in Article 140 shall only be initiated at the request of Denmark.

3.    In the event of abrogation of the exemption status, the provisions of this Protocol shall cease to apply.

————————

C 326/288    EN    Official Journal of the European Union    26.10.2012

# PROTOCOL (No 17)

## ON DENMARK

THE HIGH CONTRACTING PARTIES,

DESIRING to settle certain particular problems relating to Denmark,

HAVE AGREED upon the following provisions, which shall be annexed to the Treaty on European Union and the Treaty on the Functioning of the European Union:

The provisions of Article 14 of the Protocol on the Statute of the European System of Central Banks and of the European Central Bank shall not affect the right of the National Bank of Denmark to carry out its existing tasks concerning those parts of the Kingdom of Denmark which are not part of the Union.

————

EN

# PROTOCOL (No 18)

## ON FRANCE

THE HIGH CONTRACTING PARTIES,

DESIRING to take into account a particular point relating to France,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

France will keep the privilege of monetary emission in New Caledonia, French Polynesia and Wallis and Futuna under the terms established by its national laws, and will be solely entitled to determine the parity of the CFP franc.

————

## PROTOCOL (No 19)

## ON THE SCHENGEN *ACQUIS* INTEGRATED INTO THE FRAMEWORK OF THE EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

NOTING that the Agreements on the gradual abolition of checks at common borders signed by some Member States of the European Union in Schengen on 14 June 1985 and on 19 June 1990, as well as related agreements and the rules adopted on the basis of these agreements, have been integrated into the framework of the European Union by the Treaty of Amsterdam of 2 October 1997,

DESIRING to preserve the Schengen *acquis*, as developed since the entry into force of the Treaty of Amsterdam, and to develop this *acquis* in order to contribute towards achieving the objective of offering citizens of the Union an area of freedom, security and justice without internal borders,

TAKING INTO ACCOUNT the special position of Denmark,

TAKING INTO ACCOUNT the fact that Ireland and the United Kingdom of Great Britain and Northern Ireland do not participate in all the provisions of the Schengen *acquis*; that provision should, however, be made to allow those Member States to accept other provisions of this *acquis* in full or in part,

RECOGNISING that, as a consequence, it is necessary to make use of the provisions of the Treaties concerning closer cooperation between some Member States,

TAKING INTO ACCOUNT the need to maintain a special relationship with the Republic of Iceland and the Kingdom of Norway, both States being bound by the provisions of the Nordic passport union, together with the Nordic States which are members of the European Union,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

*Article 1*

The Kingdom of Belgium, the Republic of Bulgaria, the Czech Republic, the Kingdom of Denmark, the Federal Republic of Germany, the Republic of Estonia, the Hellenic Republic, the Kingdom of Spain, the French Republic, the Italian Republic, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Grand Duchy of Luxembourg, the Republic of Hungary, Malta, the Kingdom of the Netherlands, the Republic of Austria, the Republic of Poland, the Portuguese Republic, Romania, the Republic of Slovenia, the Slovak Republic, the Republic of Finland and the Kingdom of Sweden shall be authorised to establish closer cooperation among themselves in areas covered by provisions defined by the Council which constitute the Schengen *acquis*. This cooperation shall be conducted within the institutional and legal framework of the European Union and with respect for the relevant provisions of the Treaties.

## Article 2

The Schengen *acquis* shall apply to the Member States referred to in Article 1, without prejudice to Article 3 of the Act of Accession of 16 April 2003 or to Article 4 of the Act of Accession of 25 April 2005. The Council will substitute itself for the Executive Committee established by the Schengen agreements.

## Article 3

The participation of Denmark in the adoption of measures constituting a development of the Schengen *acquis*, as well as the implementation of these measures and their application to Denmark, shall be governed by the relevant provisions of the Protocol on the position of Denmark.

## Article 4

Ireland and the United Kingdom of Great Britain and Northern Ireland may at any time request to take part in some or all of the provisions of the Schengen *acquis*.

The Council shall decide on the request with the unanimity of its members referred to in Article 1 and of the representative of the Government of the State concerned.

## Article 5

1.    Proposals and initiatives to build upon the Schengen *acquis* shall be subject to the relevant provisions of the Treaties.

In this context, where either Ireland or the United Kingdom has not notified the Council in writing within a reasonable period that it wishes to take part, the authorisation referred to in Article 329 of the Treaty on the Functioning of the European Union shall be deemed to have been granted to the Member States referred to in Article 1 and to Ireland or the United Kingdom where either of them wishes to take part in the areas of cooperation in question.

2.    Where either Ireland or the United Kingdom is deemed to have given notification pursuant to a decision under Article 4, it may nevertheless notify the Council in writing, within three months, that it does not wish to take part in such a proposal or initiative. In that case, Ireland or the United Kingdom shall not take part in its adoption. As from the latter notification, the procedure for adopting the measure building upon the Schengen *acquis* shall be suspended until the end of the procedure set out in paragraphs 3 or 4 or until the notification is withdrawn at any moment during that procedure.

3.    For the Member State having made the notification referred to in paragraph 2, any decision taken by the Council pursuant to Article 4 shall, as from the date of entry into force of the proposed measure, cease to apply to the extent considered necessary by the Council and under the conditions to be determined in a decision of the Council acting by a qualified majority on a proposal from the Commission. That decision shall be taken in accordance with the following criteria: the Council shall

seek to retain the widest possible measure of participation of the Member State concerned without seriously affecting the practical operability of the various parts of the Schengen *acquis*, while respecting their coherence. The Commission shall submit its proposal as soon as possible after the notification referred to in paragraph 2. The Council shall, if needed after convening two successive meetings, act within four months of the Commission proposal.

4.    If, by the end of the period of four months, the Council has not adopted a decision, a Member State may, without delay, request that the matter be referred to the European Council. In that case, the European Council shall, at its next meeting, acting by a qualified majority on a proposal from the Commission, take a decision in accordance with the criteria referred to in paragraph 3.

5.    If, by the end of the procedure set out in paragraphs 3 or 4, the Council or, as the case may be, the European Council has not adopted its decision, the suspension of the procedure for adopting the measure building upon the Schengen *acquis* shall be terminated. If the said measure is subsequently adopted any decision taken by the Council pursuant to Article 4 shall, as from the date of entry into force of that measure, cease to apply for the Member State concerned to the extent and under the conditions decided by the Commission, unless the said Member State has withdrawn its notification referred to in paragraph 2 before the adoption of the measure. The Commission shall act by the date of this adoption. When taking its decision, the Commission shall respect the criteria referred to in paragraph 3.

## Article 6

The Republic of Iceland and the Kingdom of Norway shall be associated with the implementation of the Schengen *acquis* and its further development. Appropriate procedures shall be agreed to that effect in an Agreement to be concluded with those States by the Council, acting by the unanimity of its Members mentioned in Article 1. Such Agreement shall include provisions on the contribution of Iceland and Norway to any financial consequences resulting from the implementation of this Protocol.

A separate Agreement shall be concluded with Iceland and Norway by the Council, acting unanimously, for the establishment of rights and obligations between Ireland and the United Kingdom of Great Britain and Northern Ireland on the one hand, and Iceland and Norway on the other, in domains of the Schengen *acquis* which apply to these States.

## Article 7

For the purposes of the negotiations for the admission of new Member States into the European Union, the Schengen *acquis* and further measures taken by the institutions within its scope shall be regarded as an *acquis* which must be accepted in full by all States candidates for admission.

_____

# PROTOCOL (No 20)

## ON THE APPLICATION OF CERTAIN ASPECTS OF ARTICLE 26 OF THE TREATY ON THE FUNCTIONING OF THE EUROPEAN UNION TO THE UNITED KINGDOM AND TO IRELAND

THE HIGH CONTRACTING PARTIES,

DESIRING to settle certain questions relating to the United Kingdom and Ireland,

HAVING REGARD to the existence for many years of special travel arrangements between the United Kingdom and Ireland,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and the Treaty on the Functioning of the European Union:

### Article 1

The United Kingdom shall be entitled, notwithstanding Articles 26 and 77 of the Treaty on the Functioning of the European Union, any other provision of that Treaty or of the Treaty on European Union, any measure adopted under those Treaties, or any international agreement concluded by the Union or by the Union and its Member States with one or more third States, to exercise at its frontiers with other Member States such controls on persons seeking to enter the United Kingdom as it may consider necessary for the purpose:

(a) of verifying the right to enter the United Kingdom of citizens of Member States and of their dependants exercising rights conferred by Union law, as well as citizens of other States on whom such rights have been conferred by an agreement by which the United Kingdom is bound; and

(b) of determining whether or not to grant other persons permission to enter the United Kingdom.

Nothing in Articles 26 and 77 of the Treaty on the Functioning of the European Union or in any other provision of that Treaty or of the Treaty on European Union or in any measure adopted under them shall prejudice the right of the United Kingdom to adopt or exercise any such controls. References to the United Kingdom in this Article shall include territories for whose external relations the United Kingdom is responsible.

### Article 2

The United Kingdom and Ireland may continue to make arrangements between themselves relating to the movement of persons between their territories ("the Common Travel Area"), while fully respecting the rights of persons referred to in Article 1, first paragraph, point (a) of this Protocol.

C 326/294    EN    Official Journal of the European Union    26.10.2012

Accordingly, as long as they maintain such arrangements, the provisions of Article 1 of this Protocol shall apply to Ireland under the same terms and conditions as for the United Kingdom. Nothing in Articles 26 and 77 of the Treaty on the Functioning of the European Union, in any other provision of that Treaty or of the Treaty on European Union or in any measure adopted under them, shall affect any such arrangements.

### Article 3

The other Member States shall be entitled to exercise at their frontiers or at any point of entry into their territory such controls on persons seeking to enter their territory from the United Kingdom or any territories whose external relations are under its responsibility for the same purposes stated in Article 1 of this Protocol, or from Ireland as long as the provisions of Article 1 of this Protocol apply to Ireland.

Nothing in Articles 26 and 77 of the Treaty on the Functioning of the European Union or in any other provision of that Treaty or of the Treaty on European Union or in any measure adopted under them shall prejudice the right of the other Member States to adopt or exercise any such controls.

_____

# PROTOCOL (No 21)

## ON THE POSITION OF THE UNITED KINGDOM AND IRELAND IN RESPECT OF THE AREA OF FREEDOM, SECURITY AND JUSTICE

THE HIGH CONTRACTING PARTIES,

DESIRING to settle certain questions relating to the United Kingdom and Ireland,

HAVING REGARD to the Protocol on the application of certain aspects of Article 26 of the Treaty on the Functioning of the European Union to the United Kingdom and to Ireland,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and the Treaty on the Functioning of the European Union:

### Article 1

Subject to Article 3, the United Kingdom and Ireland shall not take part in the adoption by the Council of proposed measures pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union. The unanimity of the members of the Council, with the exception of the representatives of the governments of the United Kingdom and Ireland, shall be necessary for decisions of the Council which must be adopted unanimously.

For the purposes of this Article, a qualified majority shall be defined in accordance with Article 238(3) of the Treaty on the Functioning of the European Union.

### Article 2

In consequence of Article 1 and subject to Articles 3, 4 and 6, none of the provisions of Title V of Part Three of the Treaty on the Functioning of the European Union, no measure adopted pursuant to that Title, no provision of any international agreement concluded by the Union pursuant to that Title, and no decision of the Court of Justice interpreting any such provision or measure shall be binding upon or applicable in the United Kingdom or Ireland; and no such provision, measure or decision shall in any way affect the competences, rights and obligations of those States; and no such provision, measure or decision shall in any way affect the Community or Union *acquis* nor form part of Union law as they apply to the United Kingdom or Ireland.

### Article 3

1.    The United Kingdom or Ireland may notify the President of the Council in writing, within three months after a proposal or initiative has been presented to the Council pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union, that it wishes to take part in the adoption and application of any such proposed measure, whereupon that State shall be entitled to do so.

The unanimity of the members of the Council, with the exception of a member which has not made such a notification, shall be necessary for decisions of the Council which must be adopted unanimously. A measure adopted under this paragraph shall be binding upon all Member States which took part in its adoption.

Measures adopted pursuant to Article 70 of the Treaty on the Functioning of the European Union shall lay down the conditions for the participation of the United Kingdom and Ireland in the evaluations concerning the areas covered by Title V of Part Three of that Treaty.

For the purposes of this Article, a qualified majority shall be defined in accordance with Article 238(3) of the Treaty on the Functioning of the European Union.

2.    If after a reasonable period of time a measure referred to in paragraph 1 cannot be adopted with the United Kingdom or Ireland taking part, the Council may adopt such measure in accordance with Article 1 without the participation of the United Kingdom or Ireland. In that case Article 2 applies.

### Article 4

The United Kingdom or Ireland may at any time after the adoption of a measure by the Council pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union notify its intention to the Council and to the Commission that it wishes to accept that measure. In that case, the procedure provided for in Article 331(1) of the Treaty on the Functioning of the European Union shall apply *mutatis mutandis*.

### Article 4a

1.    The provisions of this Protocol apply for the United Kingdom and Ireland also to measures proposed or adopted pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union amending an existing measure by which they are bound.

2.    However, in cases where the Council, acting on a proposal from the Commission, determines that the non-participation of the United Kingdom or Ireland in the amended version of an existing measure makes the application of that measure inoperable for other Member States or the Union, it may urge them to make a notification under Article 3 or 4. For the purposes of Article 3, a further period of two months starts to run as from the date of such determination by the Council.

If at the expiry of that period of two months from the Council's determination the United Kingdom or Ireland has not made a notification under Article 3 or Article 4, the existing measure shall no longer be binding upon or applicable to it, unless the Member State concerned has made a notification under Article 4 before the entry into force of the amending measure. This shall take effect from the date of entry into force of the amending measure or of expiry of the period of two months, whichever is the later.

For the purpose of this paragraph, the Council shall, after a full discussion of the matter, act by a qualified majority of its members representing the Member States participating or having participated in the adoption of the amending measure. A qualified majority of the Council shall be defined in accordance with Article 238(3)(a) of the Treaty on the Functioning of the European Union.

3.    The Council, acting by a qualified majority on a proposal from the Commission, may determine that the United Kingdom or Ireland shall bear the direct financial consequences, if any, necessarily and unavoidably incurred as a result of the cessation of its participation in the existing measure.

4.    This Article shall be without prejudice to Article 4.

### Article 5

A Member State which is not bound by a measure adopted pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union shall bear no financial consequences of that measure other than administrative costs entailed for the institutions, unless all members of the Council, acting unanimously after consulting the European Parliament, decide otherwise.

### Article 6

Where, in cases referred to in this Protocol, the United Kingdom or Ireland is bound by a measure adopted by the Council pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union, the relevant provisions of the Treaties shall apply to that State in relation to that measure.

### Article 6a

The United Kingdom and Ireland shall not be bound by the rules laid down on the basis of Article 16 of the Treaty on the Functioning of the European Union which relate to the processing of personal data by the Member States when carrying out activities which fall within the scope of Chapter 4 or Chapter 5 of Title V of Part Three of that Treaty where the United Kingdom and Ireland are not bound by the rules governing the forms of judicial cooperation in criminal matters or police cooperation which require compliance with the provisions laid down on the basis of Article 16.

### Article 7

Articles 3, 4 and 4a shall be without prejudice to the Protocol on the Schengen acquis integrated into the framework of the European Union.

### Article 8

Ireland may notify the Council in writing that it no longer wishes to be covered by the terms of this Protocol. In that case, the normal treaty provisions will apply to Ireland.

## Article 9

With regard to Ireland, this Protocol shall not apply to Article 75 of the Treaty on the Functioning of the European Union.

_____

# PROTOCOL (No 22)

## ON THE POSITION OF DENMARK

THE HIGH CONTRACTING PARTIES,

RECALLING the Decision of the Heads of State or Government, meeting within the European Council at Edinburgh on 12 December 1992, concerning certain problems raised by Denmark on the Treaty on European Union,

HAVING NOTED the position of Denmark with regard to Citizenship, Economic and Monetary Union, Defence Policy and Justice and Home Affairs as laid down in the Edinburgh Decision,

CONSCIOUS of the fact that a continuation under the Treaties of the legal regime originating in the Edinburgh decision will significantly limit Denmark's participation in important areas of cooperation of the Union, and that it would be in the best interest of the Union to ensure the integrity of the *acquis* in the area of freedom, security and justice,

WISHING therefore to establish a legal framework that will provide an option for Denmark to participate in the adoption of measures proposed on the basis of Title V of Part Three of the Treaty on the Functioning of the European Union and welcoming the intention of Denmark to avail itself of this option when possible in accordance with its constitutional requirements,

NOTING that Denmark will not prevent the other Member States from further developing their cooperation with respect to measures not binding on Denmark,

BEARING IN MIND Article 3 of the Protocol on the Schengen *acquis* integrated into the framework of the European Union,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and the Treaty on the Functioning of the European Union:

## PART I

### Article 1

Denmark shall not take part in the adoption by the Council of proposed measures pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union. The unanimity of the members of the Council, with the exception of the representative of the government of Denmark, shall be necessary for the decisions of the Council which must be adopted unanimously.

For the purposes of this Article, a qualified majority shall be defined in accordance with Article 238(3) of the Treaty on the Functioning of the European Union.

C 326/300          EN          Official Journal of the European Union          26.10.2012

### Article 2

None of the provisions of Title V of Part Three of the Treaty on the Functioning of the European Union, no measure adopted pursuant to that Title, no provision of any international agreement concluded by the Union pursuant to that Title, and no decision of the Court of Justice of the European Union interpreting any such provision or measure or any measure amended or amendable pursuant to that Title shall be binding upon or applicable in Denmark; and no such provision, measure or decision shall in any way affect the competences, rights and obligations of Denmark; and no such provision, measure or decision shall in any way affect the Community or Union *acquis* nor form part of Union law as they apply to Denmark. In particular, acts of the Union in the field of police cooperation and judicial cooperation in criminal matters adopted before the entry into force of the Treaty of Lisbon which are amended shall continue to be binding upon and applicable to Denmark unchanged.

### Article 2a

Article 2 of this Protocol shall also apply in respect of those rules laid down on the basis of Article 16 of the Treaty on the Functioning of the European Union which relate to the processing of personal data by the Member States when carrying out activities which fall within the scope of Chapter 4 or Chapter 5 of Title V of Part Three of that Treaty.

### Article 3

Denmark shall bear no financial consequences of measures referred to in Article 1, other than administrative costs entailed for the institutions.

### Article 4

1.   Denmark shall decide within a period of six months after the Council has decided on a proposal or initiative to build upon the Schengen *acquis* covered by this Part, whether it will implement this measure in its national law. If it decides to do so, this measure will create an obligation under international law between Denmark and the other Member States bound by the measure.

2.   If Denmark decides not to implement a measure of the Council as referred to in paragraph 1, the Member States bound by that measure and Denmark will consider appropriate measures to be taken.

### PART II

### Article 5

With regard to measures adopted by the Council pursuant to Article 26(1), Article 42 and Articles 43 to 46 of the Treaty on European Union, Denmark does not participate in the elaboration and the implementation of decisions and actions of the Union which have defence implications. Therefore

Denmark shall not participate in their adoption. Denmark will not prevent the other Member States from further developing their cooperation in this area. Denmark shall not be obliged to contribute to the financing of operational expenditure arising from such measures, nor to make military capabilities available to the Union.

The unanimity of the members of the Council, with the exception of the representative of the government of Denmark, shall be necessary for the acts of the Council which must be adopted unanimously.

For the purposes of this Article, a qualified majority shall be defined in accordance with Article 238(3) of the Treaty on the Functioning of the European Union.

## PART III

### Article 6

Articles 1, 2 and 3 shall not apply to measures determining the third countries whose nationals must be in possession of a visa when crossing the external borders of the Member States, or measures relating to a uniform format for visas.

## PART IV

### Article 7

At any time Denmark may, in accordance with its constitutional requirements, inform the other Member States that it no longer wishes to avail itself of all or part of this Protocol. In that event, Denmark will apply in full all relevant measures then in force taken within the framework of the European Union.

### Article 8

1.    At any time and without prejudice to Article 7, Denmark may, in accordance with its constitutional requirements, notify the other Member States that, with effect from the first day of the month following the notification, Part I shall consist of the provisions in the Annex. In that case Articles 5 to 8 shall be renumbered in consequence.

2.    Six months after the date on which the notification referred to in paragraph 1 takes effect all Schengen *acquis* and measures adopted to build upon this *acquis*, which until then have been binding on Denmark as obligations under international law, shall be binding upon Denmark as Union law.

_____

## ANNEX

### Article 1

Subject to Article 3, Denmark shall not take part in the adoption by the Council of measures proposed pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union. The unanimity of the members of the Council, with the exception of the representative of the government of Denmark, shall be necessary for the acts of the Council which must be adopted unanimously.

For the purposes of this Article, a qualified majority shall be defined in accordance with Article 238(3) of the Treaty on the Functioning of the European Union.

### Article 2

Pursuant to Article 1 and subject to Articles 3, 4 and 8, none of the provisions in Title V of Part Three of the Treaty on the Functioning of the European Union, no measure adopted pursuant to that Title, no provision of any international agreements concluded by the Union pursuant to that Title, no decision of the Court of Justice of the European Union interpreting any such provision or measure shall be binding upon or applicable in Denmark; and no such provision, measure or decision shall in any way affect the competences, rights and obligations of Denmark; and no such provision, measure or decision shall in any way affect the Community or Union *acquis* nor form part of Union law as they apply to Denmark.

### Article 3

1.    Denmark may notify the President of the Council in writing, within three months after a proposal or initiative has been presented to the Council pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union, that it wishes to take part in the adoption and application of any such proposed measure, whereupon Denmark shall be entitled to do so.

2.    If after a reasonable period of time a measure referred to in paragraph 1 cannot be adopted with Denmark taking part, the Council may adopt that measure referred to in paragraph 1 in accordance with Article 1 without the participation of Denmark. In that case Article 2 applies.

### Article 4

Denmark may at any time after the adoption of a measure pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union notify its intention to the Council and the Commission that it wishes to accept that measure. In that case, the procedure provided for in Article 331(1) of that Treaty shall apply *mutatis mutandis.*

### Article 5

1.    The provisions of this Protocol apply for Denmark also to measures proposed or adopted pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union amending an existing measure by which it is bound.

2.    However, in cases where the Council, acting on a proposal from the Commission, determines that the non-participation of Denmark in the amended version of an existing measure makes the application of that measure inoperable for other Member States or the Union, it may urge it to make a notification under Article 3 or 4. For the purposes of Article 3 a further period of two months starts to run as from the date of such determination by the Council.

26.10.2012    EN    Official Journal of the European Union    C 326/303

If, at the expiry of that period of two months from the Council's determination, Denmark has not made a notification under Article 3 or Article 4, the existing measure shall no longer be binding upon or applicable to it, unless it has made a notification under Article 4 before the entry into force of the amending measure. This shall take effect from the date of entry into force of the amending measure or of expiry of the period of two months, whichever is the later.

For the purpose of this paragraph, the Council shall, after a full discussion of the matter, act by a qualified majority of its members representing the Member States participating or having participated in the adoption of the amending measure. A qualified majority of the Council shall be defined in accordance with Article 238(3)(a) of the Treaty on the Functioning of the European Union.

3.    The Council, acting by a qualified majority on a proposal from the Commission, may determine that Denmark shall bear the direct financial consequences, if any, necessarily and unavoidably incurred as a result of the cessation of its participation in the existing measure.

4.    This Article shall be without prejudice to Article 4.

*Article 6*

1.    Notification pursuant to Article 4 shall be submitted no later than six months after the final adoption of a measure if this measure builds upon the Schengen *acquis*.

If Denmark does not submit a notification in accordance with Articles 3 or 4 regarding a measure building upon the Schengen *acquis*, the Member States bound by that measure and Denmark will consider appropriate measures to be taken.

2.    A notification pursuant to Article 3 with respect to a measure building upon the Schengen *acquis* shall be deemed irrevocably to be a notification pursuant to Article 3 with respect to any further proposal or initiative aiming to build upon that measure to the extent that such proposal or initiative builds upon the Schengen *acquis*.

*Article 7*

Denmark shall not be bound by the rules laid down on the basis of Article 16 of the Treaty on the Functioning of the European Union which relate to the processing of personal data by the Member States when carrying out activities which fall within the scope of Chapter 4 or Chapter 5 of Title V of Part Three of that Treaty where Denmark is not bound by the rules governing the forms of judicial cooperation in criminal matters or police cooperation which require compliance with the provisions laid down on the basis of Article 16.

*Article 8*

Where, in cases referred to in this Part, Denmark is bound by a measure adopted by the Council pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union, the relevant provisions of the Treaties shall apply to Denmark in relation to that measure.

*Article 9*

Where Denmark is not bound by a measure adopted pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union, it shall bear no financial consequences of that measure other than administrative costs entailed for the institutions unless the Council, with all its Members acting unanimously after consulting the European Parliament, decides otherwise.

—————

C 326/304     EN     Official Journal of the European Union     26.10.2012

# PROTOCOL (No 23)

## ON EXTERNAL RELATIONS OF THE MEMBER STATES WITH REGARD TO THE CROSSING OF EXTERNAL BORDERS

THE HIGH CONTRACTING PARTIES,

TAKING INTO ACCOUNT the need of the Member States to ensure effective controls at their external borders, in cooperation with third countries where appropriate,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

The provisions on the measures on the crossing of external borders included in Article 77(2)(b) of the Treaty on the Functioning of the European Union shall be without prejudice to the competence of Member States to negotiate or conclude agreements with third countries as long as they respect Union law and other relevant international agreements.

————

# PROTOCOL (No 24)

## ON ASYLUM FOR NATIONALS OF MEMBER STATES OF THE EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

WHEREAS, in accordance with Article 6(1) of the Treaty on European Union, the Union recognises the rights, freedoms and principles set out in the Charter of Fundamental Rights,

WHEREAS pursuant to Article 6(3) of the Treaty on European Union, fundamental rights, as guaranteed by the European Convention for the Protection of Human Rights and Fundamental Freedoms, constitute part of the Union's law as general principles,

WHEREAS the Court of Justice of the European Union has jurisdiction to ensure that in the interpretation and application of Article 6, paragraphs (1) and (3) of the Treaty on European Union the law is observed by the European Union,

WHEREAS pursuant to Article 49 of the Treaty on European Union any European State, when applying to become a Member of the Union, must respect the values set out in Article 2 of the Treaty on European Union,

BEARING IN MIND that Article 7 of the Treaty on European Union establishes a mechanism for the suspension of certain rights in the event of a serious and persistent breach by a Member State of those values,

RECALLING that each national of a Member State, as a citizen of the Union, enjoys a special status and protection which shall be guaranteed by the Member States in accordance with the provisions of Part Two of the Treaty on the Functioning of the European Union,

BEARING IN MIND that the Treaties establish an area without internal frontiers and grant every citizen of the Union the right to move and reside freely within the territory of the Member States,

WISHING to prevent the institution of asylum being resorted to for purposes alien to those for which it is intended,

WHEREAS this Protocol respects the finality and the objectives of the Geneva Convention of 28 July 1951 relating to the status of refugees,

C 326/306    EN    Official Journal of the European Union    26.10.2012

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

*Sole Article*

Given the level of protection of fundamental rights and freedoms by the Member States of the European Union, Member States shall be regarded as constituting safe countries of origin in respect of each other for all legal and practical purposes in relation to asylum matters. Accordingly, any application for asylum made by a national of a Member State may be taken into consideration or declared admissible for processing by another Member State only in the following cases:

(a) if the Member State of which the applicant is a national proceeds after the entry into force of the Treaty of Amsterdam, availing itself of the provisions of Article 15 of the European Convention for the Protection of Human Rights and Fundamental Freedoms, to take measures derogating in its territory from its obligations under that Convention;

(b) if the procedure referred to Article 7(1) of the Treaty on European Union has been initiated and until the Council, or, where appropriate, the European Council, takes a decision in respect thereof with regard to the Member State of which the applicant is a national;

(c) if the Council has adopted a decision in accordance with Article 7(1) of the Treaty on European Union in respect of the Member State of which the applicant is a national or if the European Council has adopted a decision in accordance with Article 7(2) of that Treaty in respect of the Member State of which the applicant is a national;

(d) if a Member State should so decide unilaterally in respect of the application of a national of another Member State; in that case the Council shall be immediately informed; the application shall be dealt with on the basis of the presumption that it is manifestly unfounded without affecting in any way, whatever the cases may be, the decision-making power of the Member State.

————————

# PROTOCOL (No 25)

## ON THE EXERCISE OF SHARED COMPETENCE

THE HIGH CONTRACTING PARTIES,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Sole Article

With reference to Article 2(2) of the Treaty on the Functioning of the European Union on shared competence, when the Union has taken action in a certain area, the scope of this exercise of competence only covers those elements governed by the Union act in question and therefore does not cover the whole area.

————

C 326/308    EN    Official Journal of the European Union    26.10.2012

# PROTOCOL (No 26)

## ON SERVICES OF GENERAL INTEREST

THE HIGH CONTRACTING PARTIES,

WISHING to emphasise the importance of services of general interest,

HAVE AGREED UPON the following interpretative provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

The shared values of the Union in respect of services of general economic interest within the meaning of Article 14 of the Treaty on the Functioning of the European Union include in particular:

— the essential role and the wide discretion of national, regional and local authorities in providing, commissioning and organising services of general economic interest as closely as possible to the needs of the users;

— the diversity between various services of general economic interest and the differences in the needs and preferences of users that may result from different geographical, social or cultural situations;

— a high level of quality, safety and affordability, equal treatment and the promotion of universal access and of user rights.

### Article 2

The provisions of the Treaties do not affect in any way the competence of Member States to provide, commission and organise non-economic services of general interest.

————————

# PROTOCOL (No 27)

## ON THE INTERNAL MARKET AND COMPETITION

THE HIGH CONTRACTING PARTIES,

CONSIDERING that the internal market as set out in Article 3 of the Treaty on European Union includes a system ensuring that competition is not distorted,

HAVE AGREED that:

To this end, the Union shall, if necessary, take action under the provisions of the Treaties, including under Article 352 of the Treaty on the Functioning of the European Union.

This protocol shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union.

_____

C 326/310          EN          Official Journal of the European Union          26.10.2012

# PROTOCOL (No 28)

## ON ECONOMIC, SOCIAL AND TERRITORIAL COHESION

THE HIGH CONTRACTING PARTIES,

RECALLING that Article 3 of the Treaty on European Union includes the objective of promoting economic, social and territorial cohesion and solidarity between Member States and that the said cohesion figures among the areas of shared competence of the Union listed in Article 4(2)(c) of the Treaty on the Functioning of the European Union,

RECALLING that the provisions of Part Three, Title XVIII, on economic, social and territorial cohesion as a whole provide the legal basis for consolidating and further developing the Union's action in the field of economic, social and territorial cohesion, including the creation of a new fund,

RECALLING that the provisions of Article 177 of the Treaty on the Functioning of the European Union envisage setting up a Cohesion Fund,

NOTING that the European Investment Bank is lending large and increasing amounts for the benefit of the poorer regions,

NOTING the desire for greater flexibility in the arrangements for allocations from the Structural Funds,

NOTING the desire for modulation of the levels of Union participation in programmes and projects in certain countries,

NOTING the proposal to take greater account of the relative prosperity of Member States in the system of own resources,

REAFFIRM that the promotion of economic, social and territorial cohesion is vital to the full development and enduring success of the Union,

REAFFIRM their conviction that the Structural Funds should continue to play a considerable part in the achievement of Union objectives in the field of cohesion,

REAFFIRM their conviction that the European Investment Bank should continue to devote the majority of its resources to the promotion of economic, social and territorial cohesion, and declare their willingness to review the capital needs of the European Investment Bank as soon as this is necessary for that purpose,

AGREE that the Cohesion Fund will provide Union financial contributions to projects in the fields of environment and trans-European networks in Member States with a per capita GNP of less than 90 % of the Union average which have a programme leading to the fulfilment of the conditions of economic convergence as set out in Article 126,

DECLARE their intention of allowing a greater margin of flexibility in allocating financing from the Structural Funds to specific needs not covered under the present Structural Funds regulations,

DECLARE their willingness to modulate the levels of Union participation in the context of programmes and projects of the Structural Funds, with a view to avoiding excessive increases in budgetary expenditure in the less prosperous Member States,

RECOGNISE the need to monitor regularly the progress made towards achieving economic, social and territorial cohesion and state their willingness to study all necessary measures in this respect,

DECLARE their intention of taking greater account of the contributive capacity of individual Member States in the system of own resources, and of examining means of correcting, for the less prosperous Member States, regressive elements existing in the present own resources system,

AGREE to annex this Protocol to the Treaty on European Union and the Treaty on the Functioning of the European Union.

———————

C 326/312    EN    Official Journal of the European Union    26.10.2012

# PROTOCOL (No 29)

## ON THE SYSTEM OF PUBLIC BROADCASTING IN THE MEMBER STATES

THE HIGH CONTRACTING PARTIES,

CONSIDERING that the system of public broadcasting in the Member States is directly related to the democratic, social and cultural needs of each society and to the need to preserve media pluralism,

HAVE AGREED UPON the following interpretive provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

The provisions of the Treaties shall be without prejudice to the competence of Member States to provide for the funding of public service broadcasting and in so far as such funding is granted to broadcasting organisations for the fulfilment of the public service remit as conferred, defined and organised by each Member State, and in so far as such funding does not affect trading conditions and competition in the Union to an extent which would be contrary to the common interest, while the realisation of the remit of that public service shall be taken into account.

————

26.10.2012          EN          Official Journal of the European Union          C 326/313

PROTOCOL (No 30)

## ON THE APPLICATION OF THE CHARTER OF FUNDAMENTAL RIGHTS OF THE EUROPEAN UNION TO POLAND AND TO THE UNITED KINGDOM

THE HIGH CONTRACTING PARTIES,

WHEREAS in Article 6 of the Treaty on European Union, the Union recognises the rights, freedoms and principles set out in the Charter of Fundamental Rights of the European Union,

WHEREAS the Charter is to be applied in strict accordance with the provisions of the aforementioned Article 6 and Title VII of the Charter itself,

WHEREAS the aforementioned Article 6 requires the Charter to be applied and interpreted by the courts of Poland and of the United Kingdom strictly in accordance with the explanations referred to in that Article,

WHEREAS the Charter contains both rights and principles,

WHEREAS the Charter contains both provisions which are civil and political in character and those which are economic and social in character,

WHEREAS the Charter reaffirms the rights, freedoms and principles recognised in the Union and makes those rights more visible, but does not create new rights or principles,

RECALLING the obligations devolving upon Poland and the United Kingdom under the Treaty on European Union, the Treaty on the Functioning of the European Union, and Union law generally,

NOTING the wish of Poland and the United Kingdom to clarify certain aspects of the application of the Charter,

DESIROUS therefore of clarifying the application of the Charter in relation to the laws and administrative action of Poland and of the United Kingdom and of its justiciability within Poland and within the United Kingdom,

REAFFIRMING that references in this Protocol to the operation of specific provisions of the Charter are strictly without prejudice to the operation of other provisions of the Charter,

REAFFIRMING that this Protocol is without prejudice to the application of the Charter to other Member States,

REAFFIRMING that this Protocol is without prejudice to other obligations devolving upon Poland and the United Kingdom under the Treaty on European Union, the Treaty on the Functioning of the European Union, and Union law generally,

C 326/314    EN    Official Journal of the European Union    26.10.2012

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

1.    The Charter does not extend the ability of the Court of Justice of the European Union, or any court or tribunal of Poland or of the United Kingdom, to find that the laws, regulations or administrative provisions, practices or action of Poland or of the United Kingdom are inconsistent with the fundamental rights, freedoms and principles that it reaffirms.

2.    In particular, and for the avoidance of doubt, nothing in Title IV of the Charter creates justiciable rights applicable to Poland or the United Kingdom except in so far as Poland or the United Kingdom has provided for such rights in its national law.

### Article 2

To the extent that a provision of the Charter refers to national laws and practices, it shall only apply to Poland or the United Kingdom to the extent that the rights or principles that it contains are recognised in the law or practices of Poland or of the United Kingdom.

————————

# PROTOCOL (No 31)

## CONCERNING IMPORTS INTO THE EUROPEAN UNION OF PETROLEUM PRODUCTS REFINED IN THE NETHERLANDS ANTILLES

THE HIGH CONTRACTING PARTIES,

BEING DESIROUS of giving fuller details about the system of trade applicable to imports into the European Union of petroleum products refined in the Netherlands Antilles,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

This Protocol is applicable to petroleum products coming under the Brussels Nomenclature numbers 27.10, 27.11, 27.12, ex 27.13 (paraffin wax, petroleum or shale wax and paraffin residues) and 27.14, imported for use in Member States.

### Article 2

Member States shall undertake to grant to petroleum products refined in the Netherlands Antilles the tariff preferences resulting from the association of the latter with the Union, under the conditions provided for in this Protocol. These provisions shall hold good whatever may be the rules of origin applied by the Member States.

### Article 3

1.    When the Commission, at the request of a Member State or on its own initiative, establishes that imports into the Union of petroleum products refined in the Netherlands Antilles under the system provided for in Article 2 above are giving rise to real difficulties on the market of one or more Member States, it shall decide that customs duties on the said imports shall be introduced, increased or re-introduced by the Member States in question, to such an extent and for such a period as may be necessary to meet that situation. The rates of the customs duties thus introduced, increased or re-introduced may not exceed the customs duties applicable to third countries for these same products.

2.    The provisions of paragraph 1 can in any case be applied when imports into the Union of petroleum products refined in the Netherlands Antilles reach two million metric tons a year.

3.    The Council shall be informed of decisions taken by the Commission in pursuance of paragraphs 1 and 2, including those directed at rejecting the request of a Member State. The Council shall, at the request of any Member State, assume responsibility for the matter and may at any time amend or revoke them.

### Article 4

1.    If a Member State considers that imports of petroleum products refined in the Netherlands Antilles, made either directly or through another Member State under the system provided for in Article 2 above, are giving rise to real difficulties on its market and that immediate action is necessary to meet them, it may on its own initiative decide to apply customs duties to such imports, the rate of which may not exceed those of the customs duties applicable to third countries in respect of the same products. It shall notify its decision to the Commission which shall decide within one month whether the measures taken by the State should be maintained or must be amended or cancelled. The provisions of Article 3(3) shall be applicable to such decision of the Commission.

2.    When the quantities of petroleum products refined in the Netherlands Antilles imported either directly or through another Member State, under the system provided for in Article 2 above, into a Member State or States of the European Union exceed during a calendar year the tonnage shown in the Annex to this Protocol, the measures taken in pursuance of paragraph 1 by that or those Member States for the current year shall be considered to be justified; the Commission shall, after assuring itself that the tonnage fixed has been reached, formally record the measures taken. In such a case the other Member States shall abstain from formally placing the matter before the Council.

### Article 5

If the Union decides to apply quantitative restrictions to petroleum products, no matter whence they are imported, these restrictions may also be applied to imports of such products from the Netherlands Antilles. In such a case preferential treatment shall be granted to the Netherlands Antilles as compared with third countries.

### Article 6

1.    The provisions of Articles 2 to 5 shall be reviewed by the Council, by unanimous decision, after consulting the European Parliament and the Commission, when a common definition of origin for petroleum products from third countries and associated countries is adopted, or when decisions are taken within the framework of a common commercial policy for the products in question or when a common energy policy is established.

2.    When such revision is made, however, equivalent preferences must in any case be maintained in favour of the Netherlands Antilles in a suitable form and for a minimum quantity of 21½ million metric tons of petroleum products.

3.    The Union's commitments in regard to equivalent preferences as mentioned in paragraph 2 of this Article may, if necessary, be broken down country by country taking into account the tonnage indicated in the Annex to this Protocol.

## Article 7

For the implementation of this Protocol, the Commission is responsible for following the pattern of imports into the Member States of petroleum products refined in the Netherlands Antilles. Member States shall communicate to the Commission, which shall see that it is circulated, all useful information to that end in accordance with the administrative conditions recommended by it.

————

## ANNEX TO THE PROTOCOL

For the implementation of Article 4(2) of the Protocol concerning imports into the European Union of petroleum products refined in the Netherlands Antilles, the High Contracting Parties have decided that the quantity of 2 million metric tons of petroleum products from the Antilles shall be allocated among the Member States as follows:

| | |
|---|---|
| Germany ....................................................... | 625 000 metric tons |
| Belgo-Luxembourg Economic Union ............................... | 200 000 metric tons |
| France ......................................................... | 75 000 metric tons |
| Italy ........................................................... | 100 000 metric tons |
| Netherlands ..................................................... | 1 000 000 metric tons |

————

C 326/318    EN    Official Journal of the European Union    26.10.2012

# PROTOCOL (No 32)

## ON THE ACQUISITION OF PROPERTY IN DENMARK

THE HIGH CONTRACTING PARTIES,

DESIRING to settle certain particular problems relating to Denmark,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

Notwithstanding the provisions of the Treaties, Denmark may maintain the existing legislation on the acquisition of second homes.

————

# PROTOCOL (No 33)

## CONCERNING ARTICLE 157 OF THE TREATY ON THE FUNCTIONING OF THE EUROPEAN UNION

THE HIGH CONTRACTING PARTIES,

HAVE AGREED upon the following provision, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

For the purposes of Article 157 of the Treaty on the Functioning of the European Union, benefits under occupational social security schemes shall not be considered as remuneration if and in so far as they are attributable to periods of employment prior to 17 May 1990, except in the case of workers or those claiming under them who have before that date initiated legal proceedings or introduced an equivalent claim under the applicable national law.

_____

C 326/320          EN          Official Journal of the European Union          26.10.2012

# PROTOCOL (No 34)

## ON SPECIAL ARRANGEMENTS FOR GREENLAND

### *Sole Article*

1.    The treatment on import into the Union of products subject to the common organisation of the market in fishery products, originating in Greenland, shall, while complying with the mechanisms of the internal market organisation, involve exemption from customs duties and charges having equivalent effect and the absence of quantitative restrictions or measures having equivalent effect if the possibilities for access to Greenland fishing zones granted to the Union pursuant to an agreement between the Union and the authority responsible for Greenland are satisfactory to the Union.

2.    All measures relating to the import arrangements for such products, including those relating to the adoption of such measures, shall be adopted in accordance with the procedure laid down in Article 43 of the Treaty establishing the European Union.

————————

# PROTOCOL (No 35)

## ON ARTICLE 40.3.3 OF THE CONSTITUTION OF IRELAND

THE HIGH CONTRACTING PARTIES,

HAVE AGREED upon the following provision, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union and to the Treaty establishing the European Atomic Energy Community:

Nothing in the Treaties, or in the Treaty establishing the European Atomic Energy Community, or in the Treaties or Acts modifying or supplementing those Treaties, shall affect the application in Ireland of Article 40.3.3 of the Constitution of Ireland.

————

# PROTOCOL (No 36)

## ON TRANSITIONAL PROVISIONS

THE HIGH CONTRACTING PARTIES,

WHEREAS, in order to organise the transition from the institutional provisions of the Treaties applicable prior to the entry into force of the Treaty of Lisbon to the provisions contained in that Treaty, it is necessary to lay down transitional provisions,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union, to the Treaty on the Functioning of the European Union and to the Treaty establishing the European Atomic Energy Community:

### Article 1

In this Protocol, the words 'the Treaties' shall mean the Treaty on European Union, the Treaty on the Functioning of the European Union and the Treaty establishing the European Atomic Energy Community.

### TITLE I

#### PROVISIONS CONCERNING THE EUROPEAN PARLIAMENT

### Article 2

1.    For the period of the 2009-2014 parliamentary term remaining at the date of entry into force of this Article, and by way of derogation from Articles 189, second paragraph, and 190(2) of the Treaty establishing the European Community and Articles 107, second paragraph, and 108(2) of the Treaty establishing the European Atomic Energy Community, which were in force at the time of the European Parliament elections in June 2009, and by way of derogation from the number of seats provided for in the first subparagraph of Article 14(2) of the Treaty on European Union, the following 18 seats shall be added to the existing 736 seats, thus provisionally bringing the total number of members of the European Parliament to 754 until the end of the 2009-2014 parliamentary term:

| Bulgaria | 1 | Netherlands | 1 |
|---|---|---|---|
| Spain | 4 | Austria | 2 |
| France | 2 | Poland | 1 |
| Italy | 1 | Slovenia | 1 |
| Latvia | 1 | Sweden | 2 |
| Malta | 1 | United Kingdom | 1 |

2.    By way of derogation from Article 14(3) of the Treaty on European Union, the Member States concerned shall designate the persons who will fill the additional seats referred to in paragraph 1, in accordance with the legislation of the Member States concerned and provided that the persons in question have been elected by direct universal suffrage:

(a) in *ad hoc* elections by direct universal suffrage in the Member State concerned, in accordance with the provisions applicable for elections to the European Parliament;

(b) by reference to the results of the European Parliament elections from 4 to 7 June 2009; or

(c) by designation, by the national parliament of the Member State concerned from among its members, of the requisite number of members, according to the procedure determined by each of those Member States.

3.    In accordance with the second subparagraph of Article 14(2) of the Treaty on European Union, the European Council shall adopt a decision determining the composition of the European Parliament in good time before the 2014 European Parliament elections.

## TITLE II

### PROVISIONS CONCERNING THE QUALIFIED MAJORITY

*Article 3*

1.    In accordance with Article 16(4) of the Treaty on European Union, the provisions of that paragraph and of Article 238(2) of the Treaty on the Functioning of the European Union relating to the definition of the qualified majority in the European Council and the Council shall take effect on 1 November 2014.

2.    Between 1 November 2014 and 31 March 2017, when an act is to be adopted by qualified majority, a member of the Council may request that it be adopted in accordance with the qualified majority as defined in paragraph 3. In that case, paragraphs 3 and 4 shall apply.

3.    Until 31 October 2014, the following provisions shall remain in force, without prejudice to the second subparagraph of Article 235(1) of the Treaty on the Functioning of the European Union.

For acts of the European Council and of the Council requiring a qualified majority, members' votes shall be weighted as follows:

| | | | |
|---|---|---|---|
| Belgium | 12 | Luxembourg | 4 |
| Bulgaria | 10 | Hungary | 12 |
| Czech Republic | 12 | Malta | 3 |
| Denmark | 7 | Netherlands | 13 |
| Germany | 29 | Austria | 10 |
| Estonia | 4 | Poland | 27 |
| Ireland | 7 | Portugal | 12 |
| Greece | 12 | Romania | 14 |
| Spain | 27 | Slovenia | 4 |
| France | 29 | Slovakia | 7 |
| Italy | 29 | Finland | 7 |
| Cyprus | 4 | Sweden | 10 |
| Latvia | 4 | United Kingdom | 29 |
| Lithuania | 7 | | |

Acts shall be adopted if there are at least 255 votes in favour representing a majority of the members where, under the Treaties, they must be adopted on a proposal from the Commission. In other cases decisions shall be adopted if there are at least 255 votes in favour representing at least two thirds of the members.

A member of the European Council or the Council may request that, where an act is adopted by the European Council or the Council by a qualified majority, a check is made to ensure that the Member States comprising the qualified majority represent at least 62 % of the total population of the Union. If that proves not to be the case, the act shall not be adopted.

4.    Until 31 October 2014, the qualified majority shall, in cases where, under the Treaties, not all the members of the Council participate in voting, namely in the cases where reference is made to the qualified majority as defined in Article 238(3) of the Treaty on the Functioning of the European Union, be defined as the same proportion of the weighted votes and the same proportion of the number of the Council members and, if appropriate, the same percentage of the population of the Member States concerned as laid down in paragraph 3 of this Article.

## TITLE III

### PROVISIONS CONCERNING THE CONFIGURATIONS OF THE COUNCIL

#### Article 4

Until the entry into force of the decision referred to in the first subparagraph of Article 16(6) of the Treaty on European Union, the Council may meet in the configurations laid down in the second and third subparagraphs of that paragraph and in the other configurations on the list established by a decision of the General Affairs Council, acting by a simple majority.

## TITLE IV

### PROVISIONS CONCERNING THE COMMISSION, INCLUDING THE HIGH REPRESENTATIVE OF THE UNION FOR FOREIGN AFFAIRS AND SECURITY POLICY

#### Article 5

The members of the Commission in office on the date of entry into force of the Treaty of Lisbon shall remain in office until the end of their term of office. However, on the day of the appointment of the High Representative of the Union for Foreign Affairs and Security Policy, the term of office of the member having the same nationality as the High Representative shall end.

## TITLE V

### PROVISIONS CONCERNING THE SECRETARY-GENERAL OF THE COUNCIL, HIGH REPRESENTATIVE FOR THE COMMON FOREIGN AND SECURITY POLICY, AND THE DEPUTY SECRETARY-GENERAL OF THE COUNCIL

#### Article 6

The terms of office of the Secretary-General of the Council, High Representative for the common foreign and security policy, and the Deputy Secretary-General of the Council shall end on the date of entry into force of the Treaty of Lisbon. The Council shall appoint a Secretary-General in conformity with Article 240(2) of the Treaty on the Functioning of the European Union.

# TITLE VI

## PROVISIONS CONCERNING ADVISORY BODIES

### Article 7

Until the entry into force of the decision referred to in Article 301 of the Treaty on the Functioning of the European Union, the allocation of members of the Economic and Social Committee shall be as follows:

| | | | |
|---|---|---|---|
| Belgium | 12 | Luxembourg | 6 |
| Bulgaria | 12 | Hungary | 12 |
| Czech Republic | 12 | Malta | 5 |
| Denmark | 9 | Netherlands | 12 |
| Germany | 24 | Austria | 12 |
| Estonia | 7 | Poland | 21 |
| Ireland | 9 | Portugal | 12 |
| Greece | 12 | Romania | 15 |
| Spain | 21 | Slovenia | 7 |
| France | 24 | Slovakia | 9 |
| Italy | 24 | Finland | 9 |
| Cyprus | 6 | Sweden | 12 |
| Latvia | 7 | United Kingdom | 24 |
| Lithuania | 9 | | |

### Article 8

Until the entry into force of the decision referred to in Article 305 of the Treaty on the Functioning of the European Union, the allocation of members of the Committee of the Regions shall be as follows:

| | | | |
|---|---|---|---|
| Belgium | 12 | Luxembourg | 6 |
| Bulgaria | 12 | Hungary | 12 |
| Czech Republic | 12 | Malta | 5 |
| Denmark | 9 | Netherlands | 12 |
| Germany | 24 | Austria | 12 |
| Estonia | 7 | Poland | 21 |
| Ireland | 9 | Portugal | 12 |
| Greece | 12 | Romania | 15 |
| Spain | 21 | Slovenia | 7 |
| France | 24 | Slovakia | 9 |
| Italy | 24 | Finland | 9 |
| Cyprus | 6 | Sweden | 12 |
| Latvia | 7 | United Kingdom | 24 |
| Lithuania | 9 | | |

TITLE VII

**TRANSITIONAL PROVISIONS CONCERNING ACTS ADOPTED ON THE BASIS OF TITLES V AND VI OF THE TREATY ON EUROPEAN UNION PRIOR TO THE ENTRY INTO FORCE OF THE TREATY OF LISBON**

*Article 9*

The legal effects of the acts of the institutions, bodies, offices and agencies of the Union adopted on the basis of the Treaty on European Union prior to the entry into force of the Treaty of Lisbon shall be preserved until those acts are repealed, annulled or amended in implementation of the Treaties. The same shall apply to agreements concluded between Member States on the basis of the Treaty on European Union.

*Article 10*

1.    As a transitional measure, and with respect to acts of the Union in the field of police cooperation and judicial cooperation in criminal matters which have been adopted before the entry into force of the Treaty of Lisbon, the powers of the institutions shall be the following at the date of entry into force of that Treaty: the powers of the Commission under Article 258 of the Treaty on the Functioning of the European Union shall not be applicable and the powers of the Court of Justice of the European Union under Title VI of the Treaty on European Union, in the version in force before the entry into force of the Treaty of Lisbon, shall remain the same, including where they have been accepted under Article 35(2) of the said Treaty on European Union.

2.    The amendment of an act referred to in paragraph 1 shall entail the applicability of the powers of the institutions referred to in that paragraph as set out in the Treaties with respect to the amended act for those Member States to which that amended act shall apply.

3.    In any case, the transitional measure mentioned in paragraph 1 shall cease to have effect five years after the date of entry into force of the Treaty of Lisbon.

4.    At the latest six months before the expiry of the transitional period referred to in paragraph 3, the United Kingdom may notify to the Council that it does not accept, with respect to the acts referred to in paragraph 1, the powers of the institutions referred to in paragraph 1 as set out in the Treaties. In case the United Kingdom has made that notification, all acts referred to in paragraph 1 shall cease to apply to it as from the date of expiry of the transitional period referred to in paragraph 3. This subparagraph shall not apply with respect to the amended acts which are applicable to the United Kingdom as referred to in paragraph 2.

The Council, acting by a qualified majority on a proposal from the Commission, shall determine the necessary consequential and transitional arrangements. The United Kingdom shall not participate in the adoption of this decision. A qualified majority of the Council shall be defined in accordance with Article 238(3)(a) of the Treaty on the Functioning of the European Union.

The Council, acting by a qualified majority on a proposal from the Commission, may also adopt a decision determining that the United Kingdom shall bear the direct financial consequences, if any, necessarily and unavoidably incurred as a result of the cessation of its participation in those acts.

26.10.2012    EN    Official Journal of the European Union    C 326/327

5.    The United Kingdom may, at any time afterwards, notify the Council of its wish to participate in acts which have ceased to apply to it pursuant to paragraph 4, first subparagraph. In that case, the relevant provisions of the Protocol on the Schengen *acquis* integrated into the framework of the European Union or of the Protocol on the position of the United Kingdom and Ireland in respect of the area of freedom, security and justice, as the case may be, shall apply. The powers of the institutions with regard to those acts shall be those set out in the Treaties. When acting under the relevant Protocols, the Union institutions and the United Kingdom shall seek to re-establish the widest possible measure of participation of the United Kingdom in the *acquis* of the Union in the area of freedom, security and justice without seriously affecting the practical operability of the various parts thereof, while respecting their coherence.

─────────

C 326/328          EN          Official Journal of the European Union          26.10.2012

# PROTOCOL (No 37)

## ON THE FINANCIAL CONSEQUENCES OF THE EXPIRY OF THE ECSC TREATY AND ON THE RESEARCH FUND FOR COAL AND STEEL

THE HIGH CONTRACTING PARTIES,

RECALLING that all assets and liabilities of the European Coal and Steel Community, as they existed on 23 July 2002, were transferred to the European Community on 24 July 2002,

TAKING ACCOUNT of the desire to use these funds for research in sectors related to the coal and steel industry and therefore the necessity to provide for certain special rules in this regard,

HAVE AGREED UPON the following provisions, which shall be annexed to the Treaty on European Union and to the Treaty on the Functioning of the European Union:

### Article 1

1. The net worth of these assets and liabilities, as they appear in the balance sheet of the ECSC of 23 July 2002, subject to any increase or decrease which may occur as a result of the liquidation operations, shall be considered as assets intended for research in the sectors related to the coal and steel industry, referred to as the 'ECSC in liquidation'. On completion of the liquidation they shall be referred to as the 'assets of the Research Fund for Coal and Steel'.

2. The revenue from these assets, referred to as the 'Research Fund for Coal and Steel', shall be used exclusively for research, outside the research framework programme, in the sectors related to the coal and steel industry in accordance with the provisions of this Protocol and of acts adopted on the basis hereof.

### Article 2

The Council, acting in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, shall adopt all the necessary provisions for the implementation of this Protocol, including essential principles.

The Council shall adopt, on a proposal from the Commission and after consulting the European Parliament, measures establishing multiannual financial guidelines for managing the assets of the Research Fund for Coal and Steel and technical guidelines for the research programme of the Research Fund for Coal and Steel.

## *Article 3*

Except as otherwise provided in this Protocol and in the acts adopted on the basis hereof, the provisions of the Treaties shall apply.

————

# ANNEXES

## ANNEX I

## LIST REFERRED TO IN ARTICLE 38 OF THE TREATY ON THE FUNCTIONING OF THE EUROPEAN UNION

| (1)<br>No in the Brussels nomenclature | (2)<br>Description of products |
|---|---|
| Chapter 1 | Live animals |
| Chapter 2 | Meat and edible meat offal |
| Chapter 3 | Fish, crustaceans and molluscs |
| Chapter 4 | Dairy produce; birds' eggs; natural honey |
| Chapter 5 | |
| 05.04 | Guts, bladders and stomachs of animals (other than fish), whole and pieces thereof |
| 05.15 | Animal products not elsewhere specified or included; dead animals of Chapter 1 or Chapter 3, unfit for human consumption |
| Chapter 6 | Live trees and other plants; bulbs, roots and the like; cut flowers and ornamental foliage |
| Chapter 7 | Edible vegetables and certain roots and tubers |
| Chapter 8 | Edible fruit and nuts; peel of melons or citrus fruit |
| Chapter 9 | Coffee, tea and spices, excluding maté (heading No 09.03) |
| Chapter 10 | Cereals |
| Chapter 11 | Products of the milling industry; malt and starches; gluten; inulin |
| Chapter 12 | Oil seeds and oleaginous fruit; miscellaneous grains, seeds and fruit; industrial and medical plants; straw and fodder |
| Chapter 13 | |
| ex 13.03 | Pectin |
| Chapter 15 | |
| 15.01 | Lard and other rendered pig fat; rendered poultry fat |
| 15.02 | Unrendered fats of bovine cattle, sheep or goats; tallow (including 'premier jus') produced from those fats |
| 15.03 | Lard stearin, oleostearin and tallow stearin; lard oil, oleo-oil and tallow oil, not emulsified or mixed or prepared in any way |
| 15.04 | Fats and oil, of fish and marine mammals, whether or not refined |
| 15.07 | Fixed vegetable oils, fluid or solid, crude, refined or purified |
| 15.12 | Animal or vegetable fats and oils, hydrogenated, whether or not refined, but not further prepared |

EN    Official Journal of the European Union    26.10.2012

| (1)<br>No in the Brussels<br>nomenclature | (2)<br>Description of products |
|---|---|
| 15.13 | Margarine, imitation lard and other prepared edible fats |
| 15.17 | Residues resulting from the treatment of fatty substances or animal or vegetable waxes |
| Chapter 16 | Preparations of meat, of fish, of crustaceans or molluscs |
| Chapter 17 | |
| 17.01 | Beet sugar and cane sugar, solid |
| 17.02 | Other sugars; sugar syrups; artificial honey (whether or not mixed with natural honey); caramel |
| 17.03 | Molasses, whether or not decolourised |
| 17.05 (*) | Flavoured or coloured sugars, syrups and molasses (including vanilla sugar or vanillin), with the exception of fruit juice containing added sugar in any proportion |
| Chapter 18 | |
| 18.01 | Cocoa beans, whole or broken, raw or roasted |
| 18.02 | Cocoa shells, husks, skins and waste |
| Chapter 20 | Preparations of vegetables, fruit or other parts of plants |
| Chapter 22 | |
| 22.04 | Grape must, in fermentation or with fermentation arrested otherwise than by the addition of alcohol |
| 22.05 | Wine of fresh grapes; grape must with fermentation arrested by the addition of alcohol |
| 22.07 | Other fermented beverages (for example, cider, perry and mead) |
| ex 22.08 (*)<br>ex 22.09 (*) | Ethyl alcohol or neutral spirits, whether or not denatured, of any strength, obtained from agricultural products listed in Annex I, excluding liqueurs and other spirituous beverages and compound alcoholic preparations (known as 'concentrated extracts') for the manufacture of beverages |
| 22.10 (*) | Vinegar and substitutes for vinegar |
| Chapter 23 | Residues and waste from the food industries; prepared animal fodder |
| Chapter 24 | |
| 24.01 | Unmanufactured tobacco, tobacco refuse |
| Chapter 45 | |
| 45.01 | Natural cork, unworked, crushed, granulated or ground; waste cork |

| (1) No in the Brussels nomenclature | (2) Description of products |
|---|---|
| Chapter 54 | |
| 54.01 | Flax, raw or processed but not spun; flax tow and waste (including pulled or garnetted rags) |
| Chapter 57 | |
| 57.01 | True hemp (Cannabis sativa), raw or processed but not spun; tow and waste of true hemp (including pulled or garnetted rags or ropes) |

(*) Entry added by Article 1 of Regulation No 7a of the Council of the European Economic Community of 18 December 1959 (OJ No 7, 30.1.1961, p. 71/61).

C 326/336    EN    Official Journal of the European Union    26.10.2012

## ANNEX II

**OVERSEAS COUNTRIES AND TERRITORIES TO WHICH THE PROVISIONS OF PART FOUR OF THE TREATY ON THE FUNCTIONING OF THE EUROPEAN UNION APPLY**

— Greenland,

— New Caledonia and Dependencies,

— French Polynesia,

— French Southern and Antarctic Territories,

— Wallis and Futuna Islands,

— Mayotte,

— Saint Pierre and Miquelon,

— Aruba,

— Netherlands Antilles:

  — Bonaire,

  — Curaçao,

  — Saba,

  — Sint Eustatius,

  — Sint Maarten,

— Anguilla,

— Cayman Islands,

— Falkland Islands,

— South Georgia and the South Sandwich Islands,

— Montserrat,

— Pitcairn,

— Saint Helena and Dependencies,

— British Antarctic Territory,

— British Indian Ocean Territory,

— Turks and Caicos Islands,

— British Virgin Islands,

— Bermuda.

_____



# DECLARATIONS

## ANNEXED TO THE FINAL ACT OF THE INTERGOVERNMENTAL CONFERENCE WHICH ADOPTED THE TREATY OF LISBON,

*signed on 13 December 2007*

# A.    DECLARATIONS CONCERNING PROVISIONS OF THE TREATIES

## 1.    Declaration concerning the Charter of Fundamental Rights of the European Union

The Charter of Fundamental Rights of the European Union, which has legally binding force, confirms the fundamental rights guaranteed by the European Convention for the Protection of Human Rights and Fundamental Freedoms and as they result from the constitutional traditions common to the Member States.

The Charter does not extend the field of application of Union law beyond the powers of the Union or establish any new power or task for the Union, or modify powers and tasks as defined by the Treaties.

## 2.    Declaration on Article 6(2) of the Treaty on European Union

The Conference agrees that the Union's accession to the European Convention for the Protection of Human Rights and Fundamental Freedoms should be arranged in such a way as to preserve the specific features of Union law. In this connection, the Conference notes the existence of a regular dialogue between the Court of Justice of the European Union and the European Court of Human Rights; such dialogue could be reinforced when the Union accedes to that Convention.

## 3.    Declaration on Article 8 of the Treaty on European Union

The Union will take into account the particular situation of small-sized countries which maintain specific relations of proximity with it.

## 4.    Declaration on the composition of the European Parliament

The additional seat in the European Parliament will be attributed to Italy.

## 5.    Declaration on the political agreement by the European Council concerning the draft Decision on the composition of the European Parliament

The European Council will give its political agreement on the revised draft Decision on the composition of the European Parliament for the legislative period 2009-2014, based on the proposal from the European Parliament.

Official Journal of the European Union 26.10.2012

6. **Declaration on Article 15(5) and (6), Article 17(6) and (7) and Article 18 of the Treaty on European Union**

In choosing the persons called upon to hold the offices of President of the European Council, President of the Commission and High Representative of the Union for Foreign Affairs and Security Policy, due account is to be taken of the need to respect the geographical and demographic diversity of the Union and its Member States.

7. **Declaration on Article 16(4) of the Treaty on European Union and Article 238(2) of the Treaty on the Functioning of the European Union**

The Conference declares that the decision relating to the implementation of Article 16(4) of the Treaty on European Union and Article 238(2) of the Treaty on the Functioning of the European Union will be adopted by the Council on the date of the signature of the Treaty of Lisbon and will enter into force on the day that Treaty enters into force. The draft decision is set out below:

Draft Decision of the Council

relating to the implementation of Article 16(4) of the Treaty on European Union and Article 238(2) of the Treaty on the Functioning of the European Union between 1 November 2014 and 31 March 2017 on the one hand, and as from 1 April 2017 on the other

THE COUNCIL OF THE EUROPEAN UNION,

Whereas:

(1) Provisions should be adopted allowing for a smooth transition from the system for decision-making in the Council by a qualified majority as defined in Article 3(3) of the Protocol on the transitional provisions, which will continue to apply until 31 October 2014, to the voting system provided for in Article 16(4) of the Treaty on European Union and Article 238(2) of the Treaty on the Functioning of the European Union, which will apply with effect from 1 November 2014, including, during a transitional period until 31 March 2017, specific provisions laid down in Article 3(2) of that Protocol.

(2) It is recalled that it is the practice of the Council to devote every effort to strengthening the democratic legitimacy of decisions taken by a qualified majority,

HAS DECIDED AS FOLLOWS:

## Section 1

### Provisions to be applied from 1 November 2014 to 31 March 2017

### *Article 1*

From 1 November 2014 to 31 March 2017, if members of the Council, representing:

(a) at least three quarters of the population, or

(b) at least three quarters of the number of Member States

necessary to constitute a blocking minority resulting from the application of Article 16(4), first subparagraph, of the Treaty on European Union or Article 238(2) of the Treaty on the Functioning of the European Union, indicate their opposition to the Council adopting an act by a qualified majority, the Council shall discuss the issue.

### *Article 2*

The Council shall, in the course of these discussions, do all in its power to reach, within a reasonable time and without prejudicing obligatory time limits laid down by Union law, a satisfactory solution to address concerns raised by the members of the Council referred to in Article 1.

### *Article 3*

To this end, the President of the Council, with the assistance of the Commission and in compliance with the Rules of Procedure of the Council, shall undertake any initiative necessary to facilitate a wider basis of agreement in the Council. The members of the Council shall lend him or her their assistance.

## Section 2

### Provisions to be applied as from 1 April 2017

### *Article 4*

As from 1 April 2017, if members of the Council, representing:

(a) at least 55 % of the population, or

(b) at least 55 % of the number of Member States

C 326/342     EN     Official Journal of the European Union     26.10.2012

necessary to constitute a blocking minority resulting from the application of Article 16(4), first subparagraph, of the Treaty on European Union or Article 238(2) of the Treaty on the Functioning of the European Union, indicate their opposition to the Council adopting an act by a qualified majority, the Council shall discuss the issue.

### Article 5

The Council shall, in the course of these discussions, do all in its power to reach, within a reasonable time and without prejudicing obligatory time limits laid down by Union law, a satisfactory solution to address concerns raised by the members of the Council referred to in Article 4.

### Article 6

To this end, the President of the Council, with the assistance of the Commission and in compliance with the Rules of Procedure of the Council, shall undertake any initiative necessary to facilitate a wider basis of agreement in the Council. The members of the Council shall lend him or her their assistance.

### Section 3

### Entry into force

### Article 7

This Decision shall enter into force on the date of the entry into force of the Treaty of Lisbon.

### 8. Declaration on practical measures to be taken upon the entry into force of the Treaty of Lisbon as regards the Presidency of the European Council and of the Foreign Affairs Council

In the event that the Treaty of Lisbon enters into force later than 1 January 2009, the Conference requests the competent authorities of the Member State holding the six-monthly Presidency of the Council at that time, on the one hand, and the person elected President of the European Council and the person appointed High Representative of the Union for Foreign Affairs and Security Policy, on the other hand, to take the necessary specific measures, in consultation with the following six-monthly Presidency, to allow an efficient handover of the material and organisational aspects of the Presidency of the European Council and of the Foreign Affairs Council.

### 9.  Declaration on Article 16(9) of the Treaty on European Union concerning the European Council decision on the exercise of the Presidency of the Council

The Conference declares that the Council should begin preparing the decision establishing the procedures for implementing the decision on the exercise of the Presidency of the Council as soon as the Treaty of Lisbon is signed, and should give its political approval within six months. A draft decision of the European Council, which will be adopted on the date of entry into force of the said Treaty, is set out below:

Draft decision of the European Council

on the exercise of the Presidency of the Council

*Article 1*

1.    The Presidency of the Council, with the exception of the Foreign Affairs configuration, shall be held by pre-established groups of three Member States for a period of 18 months. The groups shall be made up on a basis of equal rotation among the Member States, taking into account their diversity and geographical balance within the Union.

2.    Each member of the group shall in turn chair for a six-month period all configurations of the Council, with the exception of the Foreign Affairs configuration. The other members of the group shall assist the Chair in all its responsibilities on the basis of a common programme. Members of the team may decide alternative arrangements among themselves.

*Article 2*

The Committee of Permanent Representatives of the Governments of the Member States shall be chaired by a representative of the Member State chairing the General Affairs Council.

The Chair of the Political and Security Committee shall be held by a representative of the High Representative of the Union for Foreign Affairs and Security Policy.

The chair of the preparatory bodies of the various Council configurations, with the exception of the Foreign Affairs configuration, shall fall to the member of the group chairing the relevant configuration, unless decided otherwise in accordance with Article 4.

*Article 3*

The General Affairs Council shall ensure consistency and continuity in the work of the different Council configurations in the framework of multiannual programmes in cooperation with the Commission. The Member States holding the Presidency shall take all necessary measures for the organisation and smooth operation of the Council's work, with the assistance of the General Secretariat of the Council.

*Article 4*

The Council shall adopt a decision establishing the measures for the implementation of this decision.

## 10.    Declaration on Article 17 of the Treaty on European Union

The Conference considers that when the Commission no longer includes nationals of all Member States, the Commission should pay particular attention to the need to ensure full transparency in relations with all Member States. Accordingly, the Commission should liaise closely with all Member States, whether or not they have a national serving as member of the Commission, and in this context pay special attention to the need to share information and consult with all Member States.

The Conference also considers that the Commission should take all the necessary measures to ensure that political, social and economic realities in all Member States, including those which have no national serving as member of the Commission, are fully taken into account. These measures should include ensuring that the position of those Member States is addressed by appropriate organisational arrangements.

## 11.    Declaration on Article 17(6) and (7) of the Treaty on European Union

The Conference considers that, in accordance with the provisions of the Treaties, the European Parliament and the European Council are jointly responsible for the smooth running of the process leading to the election of the President of the European Commission. Prior to the decision of the European Council, representatives of the European Parliament and of the European Council will thus conduct the necessary consultations in the framework deemed the most appropriate. These consultations will focus on the backgrounds of the candidates for President of the Commission, taking account of the elections to the European Parliament, in accordance with the first subparagraph of Article 17(7). The arrangements for such consultations may be determined, in due course, by common accord between the European Parliament and the European Council.

## 12.    Declaration on Article 18 of the Treaty on European Union

1.    The Conference declares that, in the course of the preparatory work preceding the appointment of the High Representative of the Union for Foreign Affairs and Security Policy which is due to take place on the date of entry into force of the Treaty of Lisbon in accordance with Article 18 of the Treaty on European Union and Article 5 of the Protocol on transitional provisions and whose term of office will be from that date until the end of the term of office of the Commission in office on that date, appropriate contacts will be made with the European Parliament.

2.    Furthermore, the Conference recalls that, as regards the High Representative of the Union for Foreign Affairs and Security Policy whose term of office will start in November 2009 at the same time and for the same duration as the next Commission, he or she will be appointed in accordance with the provisions of Articles 17 and 18 of the Treaty on European Union.

### 13.    Declaration concerning the common foreign and security policy

The Conference underlines that the provisions in the Treaty on European Union covering the Common Foreign and Security Policy, including the creation of the office of High Representative of the Union for Foreign Affairs and Security Policy and the establishment of an External Action Service, do not affect the responsibilities of the Member States, as they currently exist, for the formulation and conduct of their foreign policy nor of their national representation in third countries and international organisations.

The Conference also recalls that the provisions governing the Common Security and Defence Policy do not prejudice the specific character of the security and defence policy of the Member States.

It stresses that the European Union and its Member States will remain bound by the provisions of the Charter of the United Nations and, in particular, by the primary responsibility of the Security Council and of its Members for the maintenance of international peace and security.

### 14.    Declaration concerning the common foreign and security policy

In addition to the specific rules and procedures referred to in paragraph 1 of Article 24 of the Treaty on European Union, the Conference underlines that the provisions covering the Common Foreign and Security Policy including in relation to the High Representative of the Union for Foreign Affairs and Security Policy and the External Action Service will not affect the existing legal basis, responsibilities, and powers of each Member State in relation to the formulation and conduct of its foreign policy, its national diplomatic service, relations with third countries and participation in international organisations, including a Member State's membership of the Security Council of the United Nations.

The Conference also notes that the provisions covering the Common Foreign and Security Policy do not give new powers to the Commission to initiate decisions nor do they increase the role of the European Parliament.

The Conference also recalls that the provisions governing the Common Security and Defence Policy do not prejudice the specific character of the security and defence policy of the Member States.

### 15.    Declaration on Article 27 of the Treaty on European Union

The Conference declares that, as soon as the Treaty of Lisbon is signed, the Secretary-General of the Council, High Representative for the common foreign and security policy, the Commission and the Member States should begin preparatory work on the European External Action Service.

### 16.    Declaration on Article 55(2) of the Treaty on European Union

The Conference considers that the possibility of producing translations of the Treaties in the languages mentioned in Article 55(2) contributes to fulfilling the objective of respecting the Union's rich cultural and linguistic diversity as set forth in the fourth subparagraph of Article 3(3). In this context, the Conference confirms the attachment of the Union to the cultural diversity of Europe and the special attention it will continue to pay to these and other languages.

The Conference recommends that those Member States wishing to avail themselves of the possibility recognised in Article 55(2) communicate to the Council, within six months from the date of the signature of the Treaty of Lisbon, the language or languages into which translations of the Treaties will be made.

### 17.    Declaration concerning primacy

The Conference recalls that, in accordance with well settled case law of the Court of Justice of the European Union, the Treaties and the law adopted by the Union on the basis of the Treaties have primacy over the law of Member States, under the conditions laid down by the said case law.

The Conference has also decided to attach as an Annex to this Final Act the Opinion of the Council Legal Service on the primacy of EC law as set out in 11197/07 (JUR 260):

'*Opinion of the Council Legal Service*

*of 22 June 2007*

*It results from the case-law of the Court of Justice that primacy of EC law is a cornerstone principle of Community law. According to the Court, this principle is inherent to the specific nature of the European Community. At the time of the first judgment of this established case law (Costa/ENEL, 15 July 1964, Case 6/641 ([1])) there was no mention of primacy in the treaty. It is still the case today. The fact that the principle of primacy will not be included in the future treaty shall not in any way change the existence of the principle and the existing case-law of the Court of Justice.*

---

([1]) *"It follows (…) that the law stemming from the treaty, an independent source of law, could not, because of its special and original nature, be overridden by domestic legal provisions, however framed, without being deprived of its character as Community law and without the legal basis of the Community itself being called into question." '*

### 18.    Declaration in relation to the delimitation of competences

The Conference underlines that, in accordance with the system of division of competences between the Union and the Member States as provided for in the Treaty on European Union and the Treaty on the Functioning of the European Union, competences not conferred upon the Union in the Treaties remain with the Member States.

When the Treaties confer on the Union a competence shared with the Member States in a specific area, the Member States shall exercise their competence to the extent that the Union has not exercised, or has decided to cease exercising, its competence. The latter situation arises when the relevant EU institutions decide to repeal a legislative act, in particular better to ensure constant respect for the principles of subsidiarity and proportionality. The Council may, at the initiative of one or several of its members (representatives of Member States) and in accordance with Article 241 of the Treaty on the Functioning of the European Union, request the Commission to submit proposals for repealing a legislative act. The Conference welcomes the Commission's declaration that it will devote particular attention to these requests.

Equally, the representatives of the governments of the Member States, meeting in an Intergovernmental Conference, in accordance with the ordinary revision procedure provided for in Article 48(2) to (5) of the Treaty on European Union, may decide to amend the Treaties upon which the Union is founded, including either to increase or to reduce the competences conferred on the Union in the said Treaties.

### 19.    Declaration on Article 8 of the Treaty on the Functioning of the European Union

The Conference agrees that, in its general efforts to eliminate inequalities between women and men, the Union will aim in its different policies to combat all kinds of domestic violence. The Member States should take all necessary measures to prevent and punish these criminal acts and to support and protect the victims.

### 20.    Declaration on Article 16 of the Treaty on the Functioning of the European Union

The Conference declares that, whenever rules on protection of personal data to be adopted on the basis of Article 16 could have direct implications for national security, due account will have to be taken of the specific characteristics of the matter. It recalls that the legislation presently applicable (see in particular Directive 95/46/EC) includes specific derogations in this regard.

### 21.    Declaration on the protection of personal data in the fields of judicial cooperation in criminal matters and police cooperation

The Conference acknowledges that specific rules on the protection of personal data and the free movement of such data in the fields of judicial cooperation in criminal matters and police cooperation based on Article 16 of the Treaty on the Functioning of the European Union may prove necessary because of the specific nature of these fields.

22.    **Declaration on Articles 48 and 79 of the Treaty on the Functioning of the European Union**

The Conference considers that in the event that a draft legislative act based on Article 79(2) would affect important aspects of the social security system of a Member State, including its scope, cost or financial structure, or would affect the financial balance of that system as set out in the second paragraph of Article 48, the interests of that Member State will be duly taken into account.

23.    **Declaration on the second paragraph of Article 48 of the Treaty on the Functioning of the European Union**

The Conference recalls that in that case, in accordance with Article 15(4) of the Treaty on European Union, the European Council acts by consensus.

24.    **Declaration concerning the legal personality of the European Union**

The Conference confirms that the fact that the European Union has a legal personality will not in any way authorise the Union to legislate or to act beyond the competences conferred upon it by the Member States in the Treaties.

25.    **Declaration on Articles 75 and 215 of the Treaty on the Functioning of the European Union**

The Conference recalls that the respect for fundamental rights and freedoms implies, in particular, that proper attention is given to the protection and observance of the due process rights of the individuals or entities concerned. For this purpose and in order to guarantee a thorough judicial review of decisions subjecting an individual or entity to restrictive measures, such decisions must be based on clear and distinct criteria. These criteria should be tailored to the specifics of each restrictive measure.

26.    **Declaration on non-participation by a Member State in a measure based on Title V of Part Three of the Treaty on the Functioning of the European Union**

The Conference declares that, where a Member State opts not to participate in a measure based on Title V of Part Three of the Treaty on the Functioning of the European Union, the Council will hold a full discussion on the possible implications and effects of that Member State's non-participation in the measure.

In addition, any Member State may ask the Commission to examine the situation on the basis of Article 116 of the Treaty on the Functioning of the European Union.

The above paragraphs are without prejudice to the entitlement of a Member State to refer the matter to the European Council.

27.    **Declaration on Article 85(1), second subparagraph, of the Treaty on the Functioning of the European Union**

The Conference considers that the regulations referred to in the second subparagraph of Article 85(1) of the Treaty on the Functioning of the European Union should take into account national rules and practices relating to the initiation of criminal investigations.

28.    **Declaration on Article 98 of the Treaty on the Functioning of the European Union**

The Conference notes that the provisions of Article 98 shall be applied in accordance with the current practice. The terms 'such measures are required in order to compensate for the economic disadvantages caused by the division of Germany to the economy of certain areas of the Federal Republic affected by that division' shall be interpreted in accordance with the existing case law of the Court of Justice of the European Union.

29.    **Declaration on Article 107(2)(c) of the Treaty on the Functioning of the European Union**

The Conference notes that Article 107(2)(c) shall be interpreted in accordance with the existing case law of the Court of Justice of the European Union regarding the applicability of the provisions to aid granted to certain areas of the Federal Republic of Germany affected by the former division of Germany.

30.    **Declaration on Article 126 of the Treaty on the Functioning of the European Union**

With regard to Article 126, the Conference confirms that raising growth potential and securing sound budgetary positions are the two pillars of the economic and fiscal policy of the Union and the Member States. The Stability and Growth Pact is an important tool to achieve these goals.

The Conference reaffirms its commitment to the provisions concerning the Stability and Growth Pact as the framework for the coordination of budgetary policies in the Member States.

The Conference confirms that a rule-based system is the best guarantee for commitments to be enforced and for all Member States to be treated equally.

Within this framework, the Conference also reaffirms its commitment to the goals of the Lisbon Strategy: job creation, structural reforms, and social cohesion.

The Union aims at achieving balanced economic growth and price stability. Economic and budgetary policies thus need to set the right priorities towards economic reforms, innovation, competitiveness and strengthening of private investment and consumption in phases of weak economic growth. This should be reflected in the orientations of budgetary decisions at the national and Union level in

particular through restructuring of public revenue and expenditure while respecting budgetary discipline in accordance with the Treaties and the Stability and Growth Pact.

Budgetary and economic challenges facing the Member States underline the importance of sound budgetary policy throughout the economic cycle.

The Conference agrees that Member States should use periods of economic recovery actively to consolidate public finances and improve their budgetary positions. The objective is to gradually achieve a budgetary surplus in good times which creates the necessary room to accommodate economic downturns and thus contribute to the long-term sustainability of public finances.

The Member States look forward to possible proposals of the Commission as well as further contributions of Member States with regard to strengthening and clarifying the implementation of the Stability and Growth Pact. The Member States will take all necessary measures to raise the growth potential of their economies. Improved economic policy coordination could support this objective. This Declaration does not prejudge the future debate on the Stability and Growth Pact.

## 31.    Declaration on Article 156 of the Treaty on the Functioning of the European Union

The Conference confirms that the policies described in Article 156 fall essentially within the competence of the Member States. Measures to provide encouragement and promote coordination to be taken at Union level in accordance with this Article shall be of a complementary nature. They shall serve to strengthen cooperation between Member States and not to harmonise national systems. The guarantees and practices existing in each Member State as regards the responsibility of the social partners will not be affected.

This Declaration is without prejudice to the provisions of the Treaties conferring competence on the Union, including in social matters.

## 32.    Declaration on Article 168(4)(c) of the Treaty on the Functioning of the European Union

The Conference declares that the measures to be adopted pursuant to Article 168(4)(c) must meet common safety concerns and aim to set high standards of quality and safety where national standards affecting the internal market would otherwise prevent a high level of human health protection being achieved.

### 33. Declaration on Article 174 of the Treaty on the Functioning of the European Union

The Conference considers that the reference in Article 174 to island regions can include island States in their entirety, subject to the necessary criteria being met.

### 34. Declaration on Article 179 of the Treaty on the Functioning of the European Union

The Conference agrees that the Union's action in the area of research and technological development will pay due respect to the fundamental orientations and choices of the research policies of the Member States.

### 35. Declaration on Article 194 of the Treaty on the Functioning of the European Union

The Conference believes that Article 194 does not affect the right of the Member States to take the necessary measures to ensure their energy supply under the conditions provided for in Article 347.

### 36. Declaration on Article 218 of the Treaty on the Functioning of the European Union concerning the negotiation and conclusion of international agreements by Member States relating to the area of freedom, security and justice

The Conference confirms that Member States may negotiate and conclude agreements with third countries or international organisations in the areas covered by Chapters 3, 4 and 5 of Title V of Part Three in so far as such agreements comply with Union law.

### 37. Declaration on Article 222 of the Treaty on the Functioning of the European Union

Without prejudice to the measures adopted by the Union to comply with its solidarity obligation towards a Member State which is the object of a terrorist attack or the victim of natural or man-made disaster, none of the provisions of Article 222 is intended to affect the right of another Member State to choose the most appropriate means to comply with its own solidarity obligation towards that Member State.

38.  **Declaration on Article 252 of the Treaty on the Functioning of the European Union regarding the number of Advocates-General in the Court of Justice**

The Conference declares that if, in accordance with Article 252, first paragraph, of the Treaty on the Functioning of the European Union, the Court of Justice requests that the number of Advocates-General be increased by three (eleven instead of eight), the Council will, acting unanimously, agree on such an increase.

In that case, the Conference agrees that Poland will, as is already the case for Germany, France, Italy, Spain and the United Kingdom, have a permanent Advocate-General and no longer take part in the rotation system, while the existing rotation system will involve the rotation of five Advocates-General instead of three.

39.  **Declaration on Article 290 of the Treaty on the Functioning of the European Union**

The Conference takes note of the Commission's intention to continue to consult experts appointed by the Member States in the preparation of draft delegated acts in the financial services area, in accordance with its established practice.

40.  **Declaration on Article 329 of the Treaty on the Functioning of the European Union**

The Conference declares that Member States may indicate, when they make a request to establish enhanced cooperation, if they intend already at that stage to make use of Article 333 providing for the extension of qualified majority voting or to have recourse to the ordinary legislative procedure.

41.  **Declaration on Article 352 of the Treaty on the Functioning of the European Union**

The Conference declares that the reference in Article 352(1) of the Treaty on the Functioning of the European Union to objectives of the Union refers to the objectives as set out in Article 3(2) and (3) of the Treaty on European Union and to the objectives of Article 3(5) of the said Treaty with respect to external action under Part Five of the Treaty on the Functioning of the European Union. It is therefore excluded that an action based on Article 352 of the Treaty on the Functioning of the European Union would only pursue objectives set out in Article 3(1) of the Treaty on European Union. In this connection, the Conference notes that in accordance with Article 31(1) of the Treaty on European Union, legislative acts may not be adopted in the area of the Common Foreign and Security Policy.

## 42.    Declaration on Article 352 of the Treaty on the Functioning of the European Union

The Conference underlines that, in accordance with the settled case law of the Court of Justice of the European Union, Article 352 of the Treaty on the Functioning of the European Union, being an integral part of an institutional system based on the principle of conferred powers, cannot serve as a basis for widening the scope of Union powers beyond the general framework created by the provisions of the Treaties as a whole and, in particular, by those that define the tasks and the activities of the Union. In any event, this Article cannot be used as a basis for the adoption of provisions whose effect would, in substance, be to amend the Treaties without following the procedure which they provide for that purpose.

## 43.    Declaration on Article 355(6) of the Treaty on the Functioning of the European Union

The High Contracting Parties agree that the European Council, pursuant to Article 355(6), will take a decision leading to the modification of the status of Mayotte with regard to the Union in order to make this territory an outermost region within the meaning of Article 355(1) and Article 349, when the French authorities notify the European Council and the Commission that the evolution currently under way in the internal status of the island so allows.

B.    **DECLARATIONS CONCERNING PROTOCOLS ANNEXED TO THE TREATIES**

44.    **Declaration on Article 5 of the Protocol on the Schengen *acquis* integrated into the framework of the European Union**

The Conference notes that where a Member State has made a notification under Article 5(2) of the Protocol on the Schengen *acquis* integrated into the framework of the European Union that it does not wish to take part in a proposal or initiative, that notification may be withdrawn at any moment before the adoption of the measure building upon the Schengen *acquis*.

45.    **Declaration on Article 5(2) of the Protocol on the Schengen *acquis* integrated into the framework of the European Union**

The Conference declares that whenever the United Kingdom or Ireland indicates to the Council its intention not to participate in a measure building upon a part of the Schengen *acquis* in which it participates, the Council will have a full discussion on the possible implications of the non-participation of that Member State in that measure. The discussion within the Council should be conducted in the light of the indications given by the Commission concerning the relationship between the proposal and the Schengen *acquis*.

46.    **Declaration on Article 5(3) of the Protocol on the Schengen *acquis* integrated into the framework of the European Union**

The Conference recalls that if the Council does not take a decision after a first substantive discussion of the matter, the Commission may present an amended proposal for a further substantive re-examination by the Council within the deadline of 4 months.

47.    **Declaration on Article 5(3), (4) and (5) of the Protocol on the Schengen *acquis* integrated into the framework of the European Union**

The Conference notes that the conditions to be determined in the decision referred to in paragraphs 3, 4 or 5 of Article 5 of the Protocol on the Schengen *acquis* integrated into the framework of the European Union may determine that the Member State concerned shall bear the direct financial consequences, if any, necessarily and unavoidably incurred as a result of the cessation of its participation in some or all of the *acquis* referred to in any decision taken by the Council pursuant to Article 4 of the said Protocol.

48.    **Declaration concerning the Protocol on the position of Denmark**

The Conference notes that with respect to legal acts to be adopted by the Council acting alone or jointly with the European Parliament and containing provisions applicable to Denmark as well as provisions not applicable to Denmark because they have a legal basis to which Part I of the Protocol on the position of Denmark applies, Denmark declares that it will not use its voting right to prevent the adoption of the provisions which are not applicable to Denmark.

Furthermore, the Conference notes that on the basis of the Declaration by the Conference on Article 222, Denmark declares that Danish participation in actions or legal acts pursuant to Article 222 will take place in accordance with Part I and Part II of the Protocol on the position of Denmark.

49.    **Declaration concerning Italy**

The Conference notes that the Protocol on Italy annexed in 1957 to the Treaty establishing the European Economic Community, as amended upon adoption of the Treaty on European Union, stated that:

'THE HIGH CONTRACTING PARTIES,

DESIRING to settle certain particular problems relating to Italy,

HAVE AGREED UPON the following provisions, which shall be annexed to this Treaty:

THE MEMBER STATES OF THE COMMUNITY

TAKE NOTE of the fact that the Italian Government is carrying out a ten-year programme of economic expansion designed to rectify the disequilibria in the structure of the Italian economy, in particular by providing an infrastructure for the less developed areas in Southern Italy and in the Italian islands and by creating new jobs in order to eliminate unemployment;

RECALL that the principles and objectives of this programme of the Italian Government have been considered and approved by organisations for international cooperation of which the Member States are members;

RECOGNISE that it is in their common interest that the objectives of the Italian programme should be attained;

AGREE, in order to facilitate the accomplishment of this task by the Italian Government, to recommend to the institutions of the Community that they should employ all the methods and procedures provided in this Treaty and, in particular, make appropriate use of the resources of the European Investment Bank and the European Social Fund;

ARE OF THE OPINION that the institutions of the Community should, in applying this Treaty, take account of the sustained effort to be made by the Italian economy in the coming years and of the desirability of avoiding dangerous stresses in particular within the balance of payments or the level of employment, which might jeopardise the application of this Treaty in Italy;

RECOGNISE that in the event of Articles 109 H and 109 I being applied it will be necessary to take care that any measures required of the Italian Government do not prejudice the completion of its programme for economic expansion and for raising the standard of living of the population.'.

## 50. Declaration concerning Article 10 of the Protocol on transitional provisions

The Conference invites the European Parliament, the Council and the Commission, within their respective powers, to seek to adopt, in appropriate cases and as far as possible within the five-year period referred to in Article 10(3) of the Protocol on transitional provisions, legal acts amending or replacing the acts referred to in Article 10(1) of that Protocol.

## C.  DECLARATIONS BY MEMBER STATES

### 51.    Declaration by the Kingdom of Belgium on national Parliaments

Belgium wishes to make clear that, in accordance with its constitutional law, not only the Chamber of Representatives and Senate of the Federal Parliament but also the parliamentary assemblies of the Communities and the Regions act, in terms of the competences exercised by the Union, as components of the national parliamentary system or chambers of the national Parliament.

### 52.    Declaration by the Kingdom of Belgium, the Republic of Bulgaria, the Federal Republic of Germany, the Hellenic Republic, the Kingdom of Spain, the Italian Republic, the Republic of Cyprus, the Republic of Lithuania, the Grand-Duchy of Luxembourg, the Republic of Hungary, the Republic of Malta, the Republic of Austria, the Portuguese Republic, Romania, the Republic of Slovenia and the Slovak Republic on the symbols of the European Union

Belgium, Bulgaria, Germany, Greece, Spain, Italy, Cyprus, Lithuania, Luxemburg, Hungary, Malta, Austria, Portugal, Romania, Slovenia and the Slovak Republic declare that the flag with a circle of twelve golden stars on a blue background, the anthem based on the 'Ode to Joy' from the Ninth Symphony by Ludwig van Beethoven, the motto 'United in diversity', the euro as the currency of the European Union and Europe Day on 9 May will for them continue as symbols to express the sense of community of the people in the European Union and their allegiance to it.

### 53.    Declaration by the Czech Republic on the Charter of Fundamental Rights of the European Union

1.    The Czech Republic recalls that the provisions of the Charter of Fundamental Rights of the European Union are addressed to the institutions and bodies of the European Union with due regard for the principle of subsidiarity and division of competences between the European Union and its Member States, as reaffirmed in Declaration (No 18) in relation to the delimitation of competences. The Czech Republic stresses that its provisions are addressed to the Member States only when they are implementing Union law, and not when they are adopting and implementing national law independently from Union law.

2.    The Czech Republic also emphasises that the Charter does not extend the field of application of Union law and does not establish any new power for the Union. It does not diminish the field of application of national law and does not restrain any current powers of the national authorities in this field.

3.    The Czech Republic stresses that, in so far as the Charter recognises fundamental rights and principles as they result from constitutional traditions common to the Member States, those rights and principles are to be interpreted in harmony with those traditions.

4.    The Czech Republic further stresses that nothing in the Charter may be interpreted as restricting or adversely affecting human rights and fundamental freedoms as recognised, in their respective field of application, by Union law and by international agreements to which the Union or all the Member States are party, including the European Convention for the Protection of Human Rights and Fundamental Freedoms, and by the Member States' Constitutions.

### 54.    Declaration by the Federal Republic of Germany, Ireland, the Republic of Hungary, the Republic of Austria and the Kingdom of Sweden

Germany, Ireland, Hungary, Austria and Sweden note that the core provisions of the Treaty establishing the European Atomic Energy Community have not been substantially amended since its entry into force and need to be brought up to date. They therefore support the idea of a Conference of the Representatives of the Governments of the Member States, which should be convened as soon as possible.

### 55.    Declaration by the Kingdom of Spain and the United Kingdom of Great Britain and Northern Ireland

The Treaties apply to Gibraltar as a European territory for whose external relations a Member State is responsible. This shall not imply changes in the respective positions of the Member States concerned.

### 56.    Declaration by Ireland on Article 3 of the Protocol on the position of the United Kingdom and Ireland in respect of the area of freedom, security and justice

Ireland affirms its commitment to the Union as an area of freedom, security and justice respecting fundamental rights and the different legal systems and traditions of the Member States within which citizens are provided with a high level of safety.

Accordingly, Ireland declares its firm intention to exercise its right under Article 3 of the Protocol on the position of the United Kingdom and Ireland in respect of the area of freedom, security and justice to take part in the adoption of measures pursuant to Title V of Part Three of the Treaty on the Functioning of the European Union to the maximum extent it deems possible.

Ireland will, in particular, participate to the maximum possible extent in measures in the field of police cooperation.

Furthermore, Ireland recalls that in accordance with Article 8 of the Protocol it may notify the Council in writing that it no longer wishes to be covered by the terms of the Protocol. Ireland intends to review the operation of these arrangements within three years of the entry into force of the Treaty of Lisbon.

### 57. Declaration by the Italian Republic on the composition of the European Parliament

Italy notes that, pursuant to Articles 10 and 14 of the Treaty on European Union, the European Parliament is to be composed of representatives of the Union's citizens; this representation is to be degressively proportional.

Italy likewise notes that on the basis of Article 9 of the Treaty on European Union and Article 20 of the Treaty on the Functioning of the European Union, every national of a Member State is a citizen of the Union.

Italy therefore considers that, without prejudice to the decision on the 2009-2014 legislative period, any decision adopted by the European Council, at the initiative of the European Parliament and with its consent, establishing the composition of the European Parliament, must abide by the principles laid down out in the first subparagraph of Article 14.

### 58. Declaration by the Republic of Latvia, the Republic of Hungary and the Republic of Malta on the spelling of the name of the single currency in the Treaties

Without prejudice to the unified spelling of the name of the single currency of the European Union referred to in the Treaties as displayed on the banknotes and on the coins, Latvia, Hungary and Malta declare that the spelling of the name of the single currency, including its derivatives as applied throughout the Latvian, Hungarian and Maltese text of the Treaties, has no effect on the existing rules of the Latvian, Hungarian or Maltese languages.

### 59. Declaration by the Kingdom of the Netherlands on Article 312 of the Treaty on the Functioning of the European Union

The Kingdom of the Netherlands will agree to a decision as referred to in the second subparagraph of Article 312(2) of the Treaty on the Functioning of the European Union once a revision of the decision referred to in the third paragraph of Article 311 of that Treaty has provided the Netherlands with a satisfactory solution for its excessive negative net payment position *vis-à-vis* the Union budget.

### 60. Declaration by the Kingdom of the Netherlands on Article 355 of the Treaty on the Functioning of the European Union

The Kingdom of the Netherlands declares that an initiative for a decision, as referred to in Article 355(6) aimed at amending the status of the Netherlands Antilles and/or Aruba with regard to the Union, will be submitted only on the basis of a decision taken in conformity with the Charter for the Kingdom of the Netherlands.

### 61. Declaration by the Republic of Poland on the Charter of Fundamental Rights of the European Union

The Charter does not affect in any way the right of Member States to legislate in the sphere of public morality, family law, as well as the protection of human dignity and respect for human physical and moral integrity.

### 62. Declaration by the Republic of Poland concerning the Protocol on the application of the Charter of Fundamental Rights of the European Union in relation to Poland and the United Kingdom

Poland declares that, having regard to the tradition of social movement of 'Solidarity' and its significant contribution to the struggle for social and labour rights, it fully respects social and labour rights, as established by European Union law, and in particular those reaffirmed in Title IV of the Charter of Fundamental Rights of the European Union.

### 63. Declaration by the United Kingdom of Great Britain and Northern Ireland on the definition of the term "nationals"

In respect of the Treaties and the Treaty establishing the European Atomic Energy Community, and in any of the acts deriving from those Treaties or continued in force by those Treaties, the United Kingdom reiterates the Declaration it made on 31 December 1982 on the definition of the term 'nationals' with the exception that the reference to 'British Dependent Territories Citizens' shall be read as meaning 'British overseas territories citizens'.

### 64. Declaration by the United Kingdom of Great Britain and Northern Ireland on the franchise for elections to the European Parliament

The United Kingdom notes that Article 14 of the Treaty on European Union and other provisions of the Treaties are not intended to change the basis for the franchise for elections to the European Parliament.



65.    **Declaration by the United Kingdom of Great Britain and Northern Ireland on Article 75 of the Treaty on the Functioning of the European Union**

The United Kingdom fully supports robust action with regard to adopting financial sanctions designed to prevent and combat terrorism and related activities. Therefore, the United Kingdom declares that it intends to exercise its right under Article 3 of the Protocol on the position of the United Kingdom and Ireland in respect of the area of freedom, security and justice to take part in the adoption of all proposals made under Article 75 of the Treaty on the Functioning of the European Union.

———

26.10.2012          EN          Official Journal of the European Union          C 326/363

# TABLES OF EQUIVALENCES (*)

## Treaty on European Union

| Old numbering of the Treaty on European Union | New numbering of the Treaty on European Union |
|---|---|
| TITLE I – COMMON PROVISIONS | TITLE I – COMMON PROVISIONS |
| Article 1 | Article 1 |
| | Article 2 |
| Article 2 | Article 3 |
| Article 3 (repealed) (¹) | |
| | Article 4 |
| | Article 5 (²) |
| Article 4 (repealed) (³) | |
| Article 5 (repealed) (⁴) | |
| Article 6 | Article 6 |
| Article 7 | Article 7 |
| | Article 8 |
| TITLE II – PROVISIONS AMENDING THE TREATY ESTABLISHING THE EUROPEAN ECONOMIC COMMUNITY WITH A VIEW TO ESTABLISHING THE EUROPEAN COMMUNITY | TITLE II – PROVISIONS ON DEMOCRATIC PRINCIPLES |
| Article 8 (repealed) (⁵) | Article 9 |
| | Article 10 (⁶) |

(¹) Replaced, in substance, by Article 7 of the Treaty on the Functioning of the European Union ('TFEU') and by Articles 13(1) and 21, paragraph 3, second subparagraph of the Treaty on European Union ('TEU').

(²) Replaces Article 5 of the Treaty establishing the European Community ('TEC').

(³) Replaced, in substance, by Article 15.

(⁴) Replaced, in substance, by Article 13, paragraph 2.

(⁵) Article 8 TEU, which was in force until the entry into force of the Treaty of Lisbon (hereinafter 'current'), amended the TEC. Those amendments are incorporated into the latter Treaty and Article 8 is repealed. Its number is used to insert a new provision.

(⁶) Paragraph 4 replaces, in substance, the first subparagraph of Article 191 TEC.

(*) Tables of equivalences as referred to in Article 5 of the Treaty of Lisbon. The original centre column, which set out the intermediate numbering as used in that Treaty, has been omitted.

C 326/364    EN    Official Journal of the European Union    26.10.2012

| Old numbering of the Treaty on European Union | New numbering of the Treaty on European Union |
|---|---|
| | Article 11 |
| | Article 12 |
| TITLE III – PROVISIONS AMENDING THE TREATY ESTABLISHING THE EUROPEAN COAL AND STEEL COMMUNITY | TITLE III – PROVISIONS ON THE INSTITUTIONS |
| Article 9 (repealed) [7] | Article 13 |
| | Article 14 [8] |
| | Article 15 [9] |
| | Article 16 [10] |
| | Article 17 [11] |
| | Article 18 |
| | Article 19 [12] |
| TITLE IV – PROVISIONS AMENDING THE TREATY ESTABLISHING THE EUROPEAN ATOMIC ENERGY COMMUNITY | TITLE IV – PROVISIONS ON ENHANCED COOPERATION |
| Article 10 (repealed) [13] <br> *Articles 27a to 27e (replaced)* <br> *Articles 40 to 40b (replaced)* <br> *Articles 43 to 45 (replaced)* | Article 20 [14] |

[7] The current Article 9 TEU amended the Treaty establishing the European Coal and Steel Community. This latter expired on 23 July 2002. Article 9 is repealed and the number thereof is used to insert another provision.

[8] — Paragraphs 1 and 2 replace, in substance, Article 189 TEC;
— paragraphs 1 to 3 replace, in substance, paragraphs 1 to 3 of Article 190 TEC;
— paragraph 1 replaces, in substance, the first subparagraph of Article 192 TEC;
— paragraph 4 replaces, in substance, the first subparagraph of Article 197 TEC.

[9] Replaces, in substance, Article 4.

[10] — Paragraph 1 replaces, in substance, the first and second indents of Article 202 TEC;
— paragraphs 2 and 9 replace, in substance, Article 203 TEC;
— paragraphs 4 and 5 replace, in substance, paragraphs 2 and 4 of Article 205 TEC.

[11] — Paragraph 1 replaces, in substance, Article 211 TEC;
— paragraphs 3 and 7 replace, in substance, Article 214 TEC.
— paragraph 6 replaces, in substance, paragraphs 1, 3 and 4 of Article 217 TEC.

[12] — Replaces, in substance, Article 220 TEC.
— the first subparagraph of paragraph 2 replaces, in substance, the first subparagraph of Article 221 TEC.

[13] The current Article 10 TEU amended the Treaty establishing the European Atomic Energy Community. Those amendments are incorporated into the Treaty of Lisbon. Article 10 is repealed and the number thereof is used to insert another provision.

[14] Also replaces Articles 11 and 11a TEC.

| Old numbering of the Treaty on European Union | New numbering of the Treaty on European Union |
|---|---|
| TITLE V – PROVISIONS ON A COMMON FOREIGN AND SECURITY POLICY | TITLE V – GENERAL PROVISIONS ON THE UNION'S EXTERNAL ACTION AND SPECIFIC PROVISIONS ON THE COMMON FOREIGN AND SECURITY POLICY |
| | Chapter 1 – General provisions on the Union's external action |
| | Article 21 |
| | Article 22 |
| | Chapter 2 – Specific provisions on the common foreign and security policy |
| | Section 1 – Common provisions |
| | Article 23 |
| Article 11 | Article 24 |
| Article 12 | Article 25 |
| Article 13 | Article 26 |
| | Article 27 |
| Article 14 | Article 28 |
| Article 15 | Article 29 |
| *Article 22 (moved)* | Article 30 |
| *Article 23 (moved)* | Article 31 |
| Article 16 | Article 32 |
| Article 17 (moved) | *Article 42* |
| Article 18 | Article 33 |
| Article 19 | Article 34 |
| Article 20 | Article 35 |
| Article 21 | Article 36 |
| Article 22 (moved) | *Article 30* |
| Article 23 (moved) | *Article 31* |
| Article 24 | Article 37 |

Official Journal of the European Union

| Old numbering of the Treaty on European Union | New numbering of the Treaty on European Union |
|---|---|
| Article 25 | Article 38 |
|  | Article 39 |
| *Article 47 (moved)* | Article 40 |
| Article 26 (repealed) |  |
| Article 27 (repealed) |  |
| Article 27a (replaced) ([15]) | *Article 20* |
| Article 27b (replaced) ([15]) | *Article 20* |
| Article 27c (replaced) ([15]) | *Article 20* |
| Article 27d (replaced) ([15]) | *Article 20* |
| Article 27e (replaced) ([15]) | *Article 20* |
| Article 28 | Article 41 |
|  | Section 2 – Provisions on the common security and defence policy |
| *Article 17 (moved)* | Article 42 |
|  | Article 43 |
|  | Article 44 |
|  | Article 45 |
|  | Article 46 |
| TITLE VI – PROVISIONS ON POLICE AND JUDICIAL COOPERATION IN CRIMINAL MATTERS (repealed) ([16]) |  |
| Article 29 (replaced) ([17]) |  |
| Article 30 (replaced) ([18]) |  |
| Article 31 (replaced) ([19]) |  |

([15]) The current Articles 27a to 27e, on enhanced cooperation, are also replaced by Articles 326 to 334 TFEU.

([16]) The current provisions of Title VI of the TEU, on police and judicial cooperation in criminal matters, are replaced by the provisions of Chapters 1, 4 and 5 of Title IV (renumbered V) of Part Three of the TFEU.

([17]) Replaced by Article 67 TFEU.

([18]) Replaced by Articles 87 and 88 TFEU.

([19]) Replaced by Articles 82, 83 and 85 TFEU.

| Old numbering of the Treaty on European Union | New numbering of the Treaty on European Union |
|---|---|
| Article 32 (replaced) [20] | |
| Article 33 (replaced) [21] | |
| Article 34 (repealed) | |
| Article 35 (repealed) | |
| Article 36 (replaced) [22] | |
| Article 37 (repealed) | |
| Article 38 (repealed) | |
| Article 39 (repealed) | |
| Article 40 (replaced) [23] | *Article 20* |
| Article 40 A (replaced) [23] | *Article 20* |
| Article 40 B (replaced) [23] | *Article 20* |
| Article 41 (repealed) | |
| Article 42 (repealed) | |
| TITLE VII – PROVISIONS ON ENHANCED COOPERATION (replaced) [24] | *TITLE IV – PROVISIONS ON ENHANCED COOPERATION* |
| Article 43 (replaced) [24] | *Article 20* |
| Article 43 A (replaced) [24] | *Article 20* |
| Article 43 B (replaced) [24] | *Article 20* |
| Article 44 (replaced) [24] | *Article 20* |
| Article 44 A (replaced) [24] | *Article 20* |
| Article 45 (replaced) [24] | *Article 20* |
| TITRE VIII – FINAL PROVISIONS | TITLE VI – FINAL PROVISIONS |
| Article 46 (repealed) | |
| | Article 47 |

[20] Replaced by Article 89 TFEU.
[21] Replaced by Article 72 TFEU.
[22] Replaced by Article 71 TFEU.
[23] The current Articles 40 to 40 B TEU, on enhanced cooperation, are also replaced by Articles 326 to 334 TFEU.
[24] The current Articles 43 to 45 and Title VII of the TEU, on enhanced cooperation, are also replaced by Articles 326 to 334 TFEU.

| Old numbering of the Treaty on European Union | New numbering of the Treaty on European Union |
|---|---|
| Article 47 (replaced) | *Article 40* |
| Article 48 | Article 48 |
| Article 49 | Article 49 |
| | Article 50 |
| | Article 51 |
| | Article 52 |
| Article 50 (repealed) | |
| Article 51 | Article 53 |
| Article 52 | Article 54 |
| Article 53 | Article 55 |

## Treaty on the Functioning of the European Union

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| PART ONE − PRINCIPLES | PART ONE − PRINCIPLES |
| Article 1 (repealed) | |
| | Article 1 |
| Article 2 (repealed) (²⁵) | |
| | Title I − Categories and areas of union competence |
| | Article 2 |
| | Article 3 |
| | Article 4 |
| | Article 5 |
| | Article 6 |
| | Title II − Provisions having general application |

(²⁵) Replaced, in substance, by Article 3 TEU.

26.10.2012          EN          Official Journal of the European Union          C 326/369

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
|  | Article 7 |
| Article 3, paragraph 1 (repealed) ($^{26}$) |  |
| Article 3, paragraph 2 | Article 8 |
| Article 4 (moved) | *Article 119* |
| Article 5 (replaced) ($^{27}$) |  |
|  | Article 9 |
|  | Article 10 |
| Article 6 | Article 11 |
| *Article 153, paragraph 2 (moved)* | Article 12 |
|  | Article 13 ($^{28}$) |
| Article 7 (repealed) ($^{29}$) |  |
| Article 8 (repealed) ($^{30}$) |  |
| Article 9 (repealed) |  |
| Article 10 (repealed) ($^{31}$) |  |
| Article 11 (replaced) ($^{32}$) | *Articles 326 to 334* |
| Article 11a (replaced) ($^{32}$) | *Articles 326 to 334* |
| Article 12 (moved) | *Article 18* |
| Article 13 (moved) | *Article 19* |
| Article 14 (moved) | *Article 26* |
| Article 15 (moved) | *Article 27* |
| Article 16 | Article 14 |
| *Article 255 (moved)* | Article 15 |
| *Article 286 (moved)* | Article 16 |

($^{26}$) Replaced, in substance, by Articles 3 to 6 TFEU.
($^{27}$) Replaced by Article 5 TEU.
($^{28}$) Insertion of the operative part of the protocol on protection and welfare of animals.
($^{29}$) Replaced, in substance, by Article 13 TEU.
($^{30}$) Replaced, in substance, by Article 13 TEU and Article 282, paragraph 1, TFEU.
($^{31}$) Replaced, in substance, by Article 4, paragraph 3, TEU.
($^{32}$) Also replaced by Article 20 TEU.

Official Journal of the European Union

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| | Article 17 |
| PART TWO – CITIZENSHIP OF THE UNION | PART TWO – NONDISCRIMINATION AND CITIZENSHIP OF THE UNION |
| *Article 12 (moved)* | Article 18 |
| *Article 13 (moved)* | Article 19 |
| Article 17 | Article 20 |
| Article 18 | Article 21 |
| Article 19 | Article 22 |
| Article 20 | Article 23 |
| Article 21 | Article 24 |
| Article 22 | Article 25 |
| PART THREE – COMMUNITY POLICIES | PART THREE – POLICIES AND INTERNAL ACTIONS OF THE UNION |
| | Title I – The internal market |
| *Article 14 (moved)* | Article 26 |
| *Article 15 (moved)* | Article 27 |
| Title I – Free movement of goods | Title II – Free movement of goods |
| Article 23 | Article 28 |
| Article 24 | Article 29 |
| Chapter 1 – The customs union | Chapter 1 – The customs union |
| Article 25 | Article 30 |
| Article 26 | Article 31 |
| Article 27 | Article 32 |
| *Part Three, Title X, Customs cooperation (moved)* | Chapter 2 – Customs cooperation |
| *Article 135 (moved)* | Article 33 |
| Chapter 2 – Prohibition of quantitative restrictions between Member States | Chapter 3 – Prohibition of quantitative restrictions between Member States |
| Article 28 | Article 34 |

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 29 | Article 35 |
| Article 30 | Article 36 |
| Article 31 | Article 37 |
| Title II — Agriculture | Title III — Agriculture and fisheries |
| Article 32 | Article 38 |
| Article 33 | Article 39 |
| Article 34 | Article 40 |
| Article 35 | Article 41 |
| Article 36 | Article 42 |
| Article 37 | Article 43 |
| Article 38 | Article 44 |
| Title III — Free movement of persons, services and capital | Title IV — Free movement of persons, services and capital |
| Chapter 1 — Workers | Chapter 1 — Workers |
| Article 39 | Article 45 |
| Article 40 | Article 46 |
| Article 41 | Article 47 |
| Article 42 | Article 48 |
| Chapter 2 — Right of establishment | Chapter 2 — Right of establishment |
| Article 43 | Article 49 |
| Article 44 | Article 50 |
| Article 45 | Article 51 |
| Article 46 | Article 52 |
| Article 47 | Article 53 |
| Article 48 | Article 54 |
| *Article 294 (moved)* | Article 55 |
| Chapter 3 — Services | Chapter 3 — Services |
| Article 49 | Article 56 |

C 326/372     EN     Official Journal of the European Union     26.10.2012

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 50 | Article 57 |
| Article 51 | Article 58 |
| Article 52 | Article 59 |
| Article 53 | Article 60 |
| Article 54 | Article 61 |
| Article 55 | Article 62 |
| Chapter 4 – Capital and payments | Chapter 4 – Capital and payments |
| Article 56 | Article 63 |
| Article 57 | Article 64 |
| Article 58 | Article 65 |
| Article 59 | Article 66 |
| Article 60 (moved) | *Article 75* |
| Title IV – Visas, asylum, immigration and other policies related to free movement of persons | Title V – Area of freedom, security and justice |
| | Chapter 1 – General provisions |
| Article 61 | Article 67 ([33]) |
| | Article 68 |
| | Article 69 |
| | Article 70 |
| | Article 71 ([34]) |
| *Article 64, paragraph 1 (replaced)* | Article 72 ([35]) |
| | Article 73 |
| *Article 66 (replaced)* | Article 74 |
| *Article 60 (moved)* | Article 75 |
| | Article 76 |

([33]) Also replaces the current Article 29 TEU.
([34]) Replaces the current Article 36 TEU.
([35]) Also replaces the current Article 33 TEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| | Chapter 2 – Policies on border checks, asylum and immigration |
| Article 62 | Article 77 |
| Article 63, points 1 et 2, and Article 64, paragraph 2 ($^{36}$) | Article 78 |
| Article 63, points 3 and 4 | Article 79 |
| | Article 80 |
| Article 64, paragraph 1 (replaced) | *Article 72* |
| | Chapter 3 – Judicial cooperation in civil matters |
| Article 65 | Article 81 |
| Article 66 (replaced) | *Article 74* |
| Article 67 (repealed) | |
| Article 68 (repealed) | |
| Article 69 (repealed) | |
| | Chapter 4 – Judicial cooperation in criminal matters |
| | Article 82 ($^{37}$) |
| | Article 83 ($^{37}$) |
| | Article 84 |
| | Article 85 ($^{37}$) |
| | Article 86 |
| | Chapter 5 – Police cooperation |
| | Article 87 ($^{38}$) |
| | Article 88 ($^{38}$) |
| | Article 89 ($^{39}$) |

($^{36}$) Points 1 and 2 of Article 63 EC are replaced by paragraphs 1 and 2 of Article 78 TFEU, and paragraph 2 of Article 64 is replaced by paragraph 3 of Article 78 TFEU.
($^{37}$) Replaces the current Article 31 TEU.
($^{38}$) Replaces the current Article 30 TEU.
($^{39}$) Replaces the current Article 32 TEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Title V — Transport | Title VI — Transport |
| Article 70 | Article 90 |
| Article 71 | Article 91 |
| Article 72 | Article 92 |
| Article 73 | Article 93 |
| Article 74 | Article 94 |
| Article 75 | Article 95 |
| Article 76 | Article 96 |
| Article 77 | Article 97 |
| Article 78 | Article 98 |
| Article 79 | Article 99 |
| Article 80 | Article 100 |
| Title VI — Common rules on competition, taxation and approximation of laws | Title VII — Common rules on competition, taxation and approximation of laws |
| Chapter 1 — Rules on competition | Chapter 1 — Rules on competition |
| Section 1 — Rules applying to undertakings | Section 1 — Rules applying to undertakings |
| Article 81 | Article 101 |
| Article 82 | Article 102 |
| Article 83 | Article 103 |
| Article 84 | Article 104 |
| Article 85 | Article 105 |
| Article 86 | Article 106 |
| Section 2 — Aids granted by States | Section 2 — Aids granted by States |
| Article 87 | Article 107 |
| Article 88 | Article 108 |
| Article 89 | Article 109 |
| Chapter 2 — Tax provisions | Chapter 2 — Tax provisions |

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 90 | Article 110 |
| Article 91 | Article 111 |
| Article 92 | Article 112 |
| Article 93 | Article 113 |
| Chapter 3 – Approximation of laws | Chapter 3 – Approximation of laws |
| *Article 95 (moved)* | Article 114 |
| *Article 94 (moved)* | Article 115 |
| Article 96 | Article 116 |
| Article 97 | Article 117 |
|  | Article 118 |
| Title VII – Economic and monetary policy | Title VIII – Economic and monetary policy |
| *Article 4 (moved)* | Article 2 |
| Chapter 1 – Economic policy | Chapter 1 – Economic policy |
| Article 98 | Article 120 |
| Article 99 | Article 121 |
| Article 100 | Article 122 |
| Article 101 | Article 123 |
| Article 102 | Article 124 |
| Article 103 | Article 125 |
| Article 104 | Article 126 |
| Chapter 2 – monetary policy | Chapter 2 – monetary policy |
| Article 105 | Article 127 |
| Article 106 | Article 128 |
| Article 107 | Article 129 |
| Article 108 | Article 130 |
| Article 109 | Article 131 |
| Article 110 | Article 132 |

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 111, paragraphs 1 to 3 and 5 (moved) | *Article 219* |
| Article 111, paragraph 4 (moved) | *Article 138* |
|  | Article 133 |
| Chapter 3 – Institutional provisions | Chapter 3 – Institutional provisions |
| Article 112 (moved) | *Article 283* |
| Article 113 (moved) | *Article 284* |
| Article 114 | Article 134 |
| Article 115 | Article 135 |
|  | Chapter 4 – Provisions specific to Member States whose currency is the euro |
|  | Article 136 |
|  | Article 137 |
| *Article 111, paragraph 4 (moved)* | Article 138 |
| Chapter 4 – Transitional provisions | Chapter 5 – Transitional provisions |
| Article 116 (repealed) |  |
|  | Article 139 |
| Article 117, paragraphs 1, 2, sixth indent, and 3 to 9 (repealed) |  |
| Article 117, paragraph 2, first five indents (moved) | *Article 141, paragraph 2* |
| *Article 121, paragraph 1 (moved)*<br>*Article 122, paragraph 2, second sentence (moved)*<br>*Article 123, paragraph 5 (moved)* | Article 140 ([40]) |
| Article 118 (repealed) |  |
| *Article 123, paragraph 3 (moved)*<br>*Article 117, paragraph 2, first five indents (moved)* | Article 141 ([41]) |

([40]) — Article 140, paragraph 1 takes over the wording of paragraph 1 of Article 121.
    — Article 140, paragraph 2 takes over the second sentence of paragraph 2 of Article 122.
    — Article 140, paragraph 3 takes over paragraph 5 of Article 123.
([41]) — Article 141, paragraph 1 takes over paragraph 3 of Article 123.
    — Article 141, paragraph 2 takes over the first five indents of paragraph 2 of Article 117.

26.10.2012        EN        Official Journal of the European Union        C 326/377

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
| --- | --- |
| *Article 124, paragraph 1 (moved)* | Article 142 |
| Article 119 | Article 143 |
| Article 120 | Article 144 |
| Article 121, paragraph 1 (moved) | *Article 140, paragraph 1* |
| Article 121, paragraphs 2 to 4 (repealed) | |
| Article 122, paragraphs 1, 2, first sentence, 3, 4, 5 and 6 (repealed) | |
| Article 122, paragraph 2, second sentence (moved) | *Article 140, paragraph 2, first subparagraph* |
| Article 123, paragraphs 1, 2 and 4 (repealed) | |
| Article 123, paragraph 3 (moved) | *Article 141, paragraph 1* |
| Article 123, paragraph 5 (moved) | *Article 140, paragraph 3* |
| Article 124, paragraph 1 (moved) | *Article 142* |
| Article 124, paragraph 2 (repealed) | |
| Title VIII – Employment | Title IX – Employment |
| Article 125 | Article 145 |
| Article 126 | Article 146 |
| Article 127 | Article 147 |
| Article 128 | Article 148 |
| Article 129 | Article 149 |
| Article 130 | Article 150 |
| Title IX – Common commercial policy (moved) | *Part Five, Title II, common commercial policy* |
| Article 131 (moved) | *Article 206* |
| Article 132 (repealed) | |
| Article 133 (moved) | *Article 207* |
| Article 134 (repealed) | |
| Title X – Customs cooperation (moved) | *Part Three, Title II, Chapter 2, Customs cooperation* |

EN    Official Journal of the European Union    26.10.2012

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 135 (moved) | *Article 33* |
| Title XI – Social policy, education, vocational training and youth | Title X – Social policy |
| Chapter 1 – social provisions (repealed) | |
| Article 136 | Article 151 |
| | Article 152 |
| Article 137 | Article 153 |
| Article 138 | Article 154 |
| Article 139 | Article 155 |
| Article 140 | Article 156 |
| Article 141 | Article 157 |
| Article 142 | Article 158 |
| Article 143 | Article 159 |
| Article 144 | Article 160 |
| Article 145 | Article 161 |
| Chapter 2 – The European Social Fund | Title XI – The European Social Fund |
| Article 146 | Article 162 |
| Article 147 | Article 163 |
| Article 148 | Article 164 |
| Chapter 3 – Education, vocational training and youth | Title XII – Education, vocational training, youth and sport |
| Article 149 | Article 165 |
| Article 150 | Article 166 |
| Title XII – Culture | Title XIII – Culture |
| Article 151 | Article 167 |
| Title XIII – Public health | Title XIV – Public health |
| Article 152 | Article 168 |
| Title XIV – Consumer protection | Title XV – Consumer protection |

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 153, paragraphs 1, 3, 4 and 5 | Article 169 |
| Article 153, paragraph 2 (moved) | *Article 12* |
| Title XV – Trans–European networks | Title XVI – Trans–European networks |
| Article 154 | Article 170 |
| Article 155 | Article 171 |
| Article 156 | Article 172 |
| Title XVI – Industry | Title XVII – Industry |
| Article 157 | Article 173 |
| Title XVII – Economic and social cohesion | Title XVIII – Economic, social and territorial cohesion |
| Article 158 | Article 174 |
| Article 159 | Article 175 |
| Article 160 | Article 176 |
| Article 161 | Article 177 |
| Article 162 | Article 178 |
| Title XVIII – Research and technological development | Title XIX – Research and technological development and space |
| Article 163 | Article 179 |
| Article 164 | Article 180 |
| Article 165 | Article 181 |
| Article 166 | Article 182 |
| Article 167 | Article 183 |
| Article 168 | Article 184 |
| Article 169 | Article 185 |
| Article 170 | Article 186 |
| Article 171 | Article 187 |
| Article 172 | Article 188 |
|  | Article 189 |

C 326/380          EN          Official Journal of the European Union          26.10.2012

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 173 | Article 190 |
| Title XIX – Environment | Title XX – Environment |
| Article 174 | Article 191 |
| Article 175 | Article 192 |
| Article 176 | Article 193 |
|  | Titre XXI – Energy |
|  | Article 194 |
|  | Title XXII – Tourism |
|  | Article 195 |
|  | Title XXIII – Civil protection |
|  | Article 196 |
|  | Title XXIV – Administrative cooperation |
|  | Article 197 |
| Title XX – Development cooperation (moved) | *Part Five, Title III, Chapter 1, Development cooperation* |
| Article 177 (moved) | *Article 208* |
| Article 178 (repealed) (⁴²) |  |
| Article 179 (moved) | *Article 209* |
| Article 180 (moved) | *Article 210* |
| Article 181 (moved) | *Article 211* |
| Title XXI – Economic, financial and technical cooperation with third countries (moved) | *Part Five, Title III, Chapter 2, Economic, financial and technical cooperation with third countries* |
| Article 181a (moved) | *Article 212* |
| PART FOUR – ASSOCIATION OF THE OVERSEAS COUNTRIES AND TERRITORIES | PART FOUR – ASSOCIATION OF THE OVERSEAS COUNTRIES AND TERRITORIES |
| Article 182 | Article 198 |
| Article 183 | Article 199 |

(⁴²) Replaced, in substance, by the second sentence of the second subparagraph of paragraph 1 of Article 208 TFEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 184 | Article 200 |
| Article 185 | Article 201 |
| Article 186 | Article 202 |
| Article 187 | Article 203 |
| Article 188 | Article 204 |
| | PART FIVE – THE UNION'S EXTERNAL ACTION |
| | Title I – General provisions on the Union's external action |
| | Article 205 |
| *Part Three, Title IX, Common commercial policy (moved)* | Title II – Common commercial policy |
| *Article 131 (moved)* | Article 206 |
| *Article 133 (moved)* | Article 207 |
| | Title III – Cooperation with third countries and humanitarian aid |
| *Part Three, Title XX, Development cooperation (moved)* | Chapter 1 – development cooperation |
| *Article 177 (moved)* | Article 208 ([43]) |
| *Article 179 (moved)* | Article 209 |
| *Article 180 (moved)* | Article 210 |
| *Article 181 (moved)* | Article 211 |
| *Part Three, Title XXI, Economic, financial and technical cooperation with third countries (moved)* | Chapter 2 – Economic, financial and technical cooperation with third countries |
| *Article 181a (moved)* | Article 212 |
| | Article 213 |
| | Chapter 3 – Humanitarian aid |
| | Article 214 |
| | Title IV – Restrictive measures |

([43]) The second sentence of the second subparagraph of paragraph 1 replaces, in substance, Article 178 TEC.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| *Article 301 (replaced)* | Article 215 |
| | Title V – International agreements |
| | Article 216 |
| *Article 310 (moved)* | Article 217 |
| *Article 300 (replaced)* | Article 218 |
| *Article 111, paragraphs 1 to 3 and 5 (moved)* | Article 219 |
| | Title VI – The Union's relations with international organisations and third countries and the Union delegations |
| *Articles 302 to 304 (replaced)* | Article 220 |
| | Article 221 |
| | Title VII – Solidarity clause |
| | Article 222 |
| PART FIVE – INSTITUTIONS OF THE COMMUNITY | PART SIX – INSTITUTIONAL AND FINANCIAL PROVISIONS |
| Title I – Institutional provisions | Title I – Institutional provisions |
| Chapter 1 – The institutions | Chapter 1 – The institutions |
| Section 1 – The European Parliament | Section 1 – The European Parliament |
| Article 189 (repealed) [44] | |
| Article 190, paragraphs 1 to 3 (repealed) [45] | |
| Article 190, paragraphs 4 and 5 | Article 223 |
| Article 191, first paragraph (repealed) [46] | |
| Article 191, second paragraph | Article 224 |
| Article 192, first paragraph (repealed) [47] | |
| Article 192, second paragraph | Article 225 |
| Article 193 | Article 226 |

[44] Replaced, in substance, by Article 14, paragraphs 1 and 2, TEU.
[45] Replaced, in substance, by Article 14, paragraphs 1 to 3, TEU.
[46] Replaced, in substance, by Article 11, paragraph 4, TEU.
[47] Replaced, in substance, by Article 14, paragraph 1, TEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 194 | Article 227 |
| Article 195 | Article 228 |
| Article 196 | Article 229 |
| Article 197, first paragraph (repealed) ([48]) | |
| Article 197, second, third and fourth paragraphs | Article 230 |
| Article 198 | Article 231 |
| Article 199 | Article 232 |
| Article 200 | Article 233 |
| Article 201 | Article 234 |
| | Section 2 – The European Council |
| | Article 235 |
| | Article 236 |
| Section 2 – The Council | Section 3 – The Council |
| Article 202 (repealed) ([49]) | |
| Article 203 (repealed) ([50]) | |
| Article 204 | Article 237 |
| Article 205, paragraphs 2 and 4 (repealed) ([51]) | |
| Article 205, paragraphs 1 and 3 | Article 238 |
| Article 206 | Article 239 |
| Article 207 | Article 240 |
| Article 208 | Article 241 |
| Article 209 | Article 242 |
| Article 210 | Article 243 |
| Section 3 – The Commission | Section 4 – The Commission |

([48]) Replaced, in substance, by Article 14, paragraph 4, TEU.
([49]) Replaced, in substance, by Article 16, paragraph 1, TEU and by Articles 290 and 291 TFEU.
([50]) Replaced, in substance, by Article 16, paragraphs 2 and 9 TEU.
([51]) Replaced, in substance, by Article 16, paragraphs 4 and 5 TEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
| --- | --- |
| Article 211 (repealed) ([52]) | |
| | Article 244 |
| Article 212 (moved) | *Article 249, paragraph 2* |
| Article 213 | Article 245 |
| Article 214 (repealed) ([53]) | |
| Article 215 | Article 246 |
| Article 216 | Article 247 |
| Article 217, paragraphs 1, 3 and 4 (repealed) ([54]) | |
| Article 217, paragraph 2 | Article 248 |
| Article 218, paragraph 1 (repealed) ([55]) | |
| Article 218, paragraph 2 | Article 249 |
| Article 219 | Article 250 |
| Section 4 – The Court of Justice | Section 5 – The Court of Justice of the European Union |
| Article 220 (repealed) ([56]) | |
| Article 221, first paragraph (repealed) ([57]) | |
| Article 221, second and third paragraphs | Article 251 |
| Article 222 | Article 252 |
| Article 223 | Article 253 |
| Article 224 ([58]) | Article 254 |
| | Article 255 |
| Article 225 | Article 256 |
| Article 225a | Article 257 |

([52]) Replaced, in substance, by Article 17, paragraph 1 TEU.
([53]) Replaced, in substance, by Article 17, paragraphs 3 and 7 TEU.
([54]) Replaced, in substance, by Article 17, paragraph 6, TEU.
([55]) Replaced, in substance, by Article 295 TFEU.
([56]) Replaced, in substance, by Article 19 TEU.
([57]) Replaced, in substance, by Article 19, paragraph 2, first subparagraph, of the TEU.
([58]) The first sentence of the first subparagraph is replaced, in substance, by Article 19, paragraph 2, second subparagraph of the TEU.

EN Official Journal of the European Union

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 226 | Article 258 |
| Article 227 | Article 259 |
| Article 228 | Article 260 |
| Article 229 | Article 261 |
| Article 229a | Article 262 |
| Article 230 | Article 263 |
| Article 231 | Article 264 |
| Article 232 | Article 265 |
| Article 233 | Article 266 |
| Article 234 | Article 267 |
| Article 235 | Article 268 |
| | Article 269 |
| Article 236 | Article 270 |
| Article 237 | Article 271 |
| Article 238 | Article 272 |
| Article 239 | Article 273 |
| Article 240 | Article 274 |
| | Article 275 |
| | Article 276 |
| Article 241 | Article 277 |
| Article 242 | Article 278 |
| Article 243 | Article 279 |
| Article 244 | Article 280 |
| Article 245 | Article 281 |
| | Section 6 – The European Central Bank |
| | Article 282 |
| Article 112 (moved) | Article 283 |

EN    Official Journal of the European Union    26.10.2012

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 113 (moved) | Article 284 |
| Section 5 – The Court of Auditors | Section 7 – The Court of Auditors |
| Article 246 | Article 285 |
| Article 247 | Article 286 |
| Article 248 | Article 287 |
| Chapter 2 – Provisions common to several institutions | Chapter 2 – Legal acts of the Union, adoption procedures and other provisions |
| | Section 1 – The legal acts of the Union |
| Article 249 | Article 288 |
| | Article 289 |
| | Article 290 ([59]) |
| | Article 291 ([59]) |
| | Article 292 |
| | Section 2 – Procedures for the adoption of acts and other provisions |
| Article 250 | Article 293 |
| Article 251 | Article 294 |
| Article 252 (repealed) | |
| | Article 295 |
| Article 253 | Article 296 |
| Article 254 | Article 297 |
| | Article 298 |
| Article 255 (moved) | Article 15 |
| Article 256 | Article 299 |
| | Chapter 3 – The Union's advisory bodies |
| | Article 300 |
| Chapter 3 – The Economic and Social Committee | Section 1 – The Economic and Social Committee |

([59]) Replaces, in substance, the third indent of Article 202 TEC.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
| --- | --- |
| Article 257 (repealed) ([60]) | |
| Article 258, first, second and fourth paragraphs | Article 301 |
| Article 258, third paragraph (repealed) ([61]) | |
| Article 259 | Article 302 |
| Article 260 | Article 303 |
| Article 261 (repealed) | |
| Article 262 | Article 304 |
| Chapter 4 – The Committee of the Regions | Section 2 – The Committee of the Regions |
| Article 263, first and fifth paragraphs (repealed) ([62]) | |
| Article 263, second to fourth paragraphs | Article 305 |
| Article 264 | Article 306 |
| Article 265 | Article 307 |
| Chapter 5 – The European Investment Bank | Chapter 4 – The European Investment Bank |
| Article 266 | Article 308 |
| Article 267 | Article 309 |
| Title II – Financial provisions | Title II – Financial provisions |
| Article 268 | Article 310 |
| | Chapter 1 – The Union's own resources |
| Article 269 | Article 311 |
| Article 270 (repealed) ([63]) | |
| | Chapter 2 – The multiannual financial framework |
| | Article 312 |
| | Chapter 3 – The Union's annual budget |

([60]) Replaced, in substance, by Article 300, paragraph 2 of the TFEU.
([61]) Replaced, in substance, by Article 300, paragraph 4 of the TFEU.
([62]) Replaced, in substance, by Article 300, paragraphs 3 and 4, TFEU.
([63]) Replaced, in substance, by Article 310, paragraph 4, TFEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
| --- | --- |
| Article 272, paragraph 1 (moved) | Article 313 |
| Article 271 (moved) | Article 316 |
| Article 272, paragraph 1 (moved) | Article 313 |
| Article 272, paragraphs 2 to 10 | Article 314 |
| Article 273 | Article 315 |
| Article 271 (moved) | Article 316 |
|  | Chapter 4 – Implementation of the budget and discharge |
| Article 274 | Article 317 |
| Article 275 | Article 318 |
| Article 276 | Article 319 |
|  | Chapter 5 – Common provisions |
| Article 277 | Article 320 |
| Article 278 | Article 321 |
| Article 279 | Article 322 |
|  | Article 323 |
|  | Article 324 |
|  | Chapter 6 – Combating fraud |
| Article 280 | Article 325 |
|  | Title III – Enhanced cooperation |
| Articles 11 and 11a (replaced) | Article 326 ([64]) |
| Articles 11 and 11a (replaced) | Article 327 ([64]) |
| Articles 11 and 11a (replaced) | Article 328 ([64]) |
| Articles 11 and 11a (replaced) | Article 329 ([64]) |
| Articles 11 and 11a (replaced) | Article 330 ([64]) |
| Articles 11 and 11a (replaced) | Article 331 ([64]) |
| Articles 11 and 11a (replaced) | Article 332 ([64]) |

([64]) Also replaces the current Articles 27a to 27e, 40 to 40b, and 43 to 45 TEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
| --- | --- |
| *Articles 11 and 11a (replaced)* | Article 333 ([64]) |
| *Articles 11 and 11a (replaced)* | Article 334 ([64]) |
| PART SIX – GENERAL AND FINAL PROVISIONS | PART SEVEN – GENERAL AND FINAL PROVISIONS |
| Article 281 (repealed) ([65]) | |
| Article 282 | Article 335 |
| Article 283 | Article 336 |
| Article 284 | Article 337 |
| Article 285 | Article 338 |
| Article 286 (replaced) | *Article 16* |
| Article 287 | Article 339 |
| Article 288 | Article 340 |
| Article 289 | Article 341 |
| Article 290 | Article 342 |
| Article 291 | Article 343 |
| Article 292 | Article 344 |
| Article 293 (repealed) | |
| Article 294 (moved) | *Article 55* |
| Article 295 | Article 345 |
| Article 296 | Article 346 |
| Article 297 | Article 347 |
| Article 298 | Article 348 |
| Article 299, paragraph 1 (repealed) ([66]) | |
| Article 299, paragraph 2, second, third and fourth subparagraphs | Article 349 |
| Article 299, paragraph 2, first subparagraph, and paragraphs 3 to 6 (moved) | *Article 355* |

([64]) Also replaces the current Articles 27a to 27e, 40 to 40b, and 43 to 45 TEU.
([65]) Replaced, in substance, by Article 47 TEU.
([66]) Replaced, in substance by Article 52 TEU.

| Old numbering of the Treaty establishing the European Community | New numbering of the Treaty on the Functioning of the European Union |
|---|---|
| Article 300 (replaced) | *Article 218* |
| Article 301 (replaced) | *Article 215* |
| Article 302 (replaced) | *Article 220* |
| Article 303 (replaced) | *Article 220* |
| Article 304 (replaced) | *Article 220* |
| Article 305 (repealed) | |
| Article 306 | Article 350 |
| Article 307 | Article 351 |
| Article 308 | Article 352 |
| | Article 353 |
| Article 309 | Article 354 |
| Article 310 (moved) | *Article 217* |
| Article 311 (repealed) ([67]) | |
| *Article 299, paragraph 2, first subparagraph, and paragraphs 3 to 6 (moved)* | Article 355 |
| Article 312 | Article 356 |
| Final Provisions | |
| Article 313 | Article 357 |
| | Article 358 |
| Article 314 (repealed) ([68]) | |

([67]) Replaced, in substance by Article 51 TEU.
([68]) Replaced, in substance by Article 55 TEU.