

COUNCIL
OF EUROPE     CONSEIL
DE L'EUROPE

*European Treaty Series - No. 150*

# CONVENTION
# ON CIVIL LIABILITY
# FOR DAMAGE RESULTING
# FROM ACTIVITIES DANGEROUS
# TO THE ENVIRONMENT

**Lugano, 21.VI.1993**

The member States of the Council of Europe, the other States and the European Economic Community signatory hereto,

Considering that the aim of the Council of Europe is to achieve a greater unity between its members;

Noting that one of the objectives of the Council of Europe is to contribute to the quality of life of human beings, in particular by promoting a natural, healthy and agreeable environment;

Considering the wish of the Council of Europe to co-operate with other States in the field of nature conservation and protection of the environment;

Realising that man, the environment and property are exposed to specific dangers caused by certain activities;

Considering that emissions released in one country may cause damage in another country and that, therefore, the problems of adequate compensation for such damage are also of an international nature;

Having regard to the desirability of providing for strict liability in this field taking into account the "Polluter Pays" Principle;

Mindful of the work which has already been carried out at an international level, in particular to prevent damage and to deal with damage caused by nuclear substances and the carriage of dangerous goods;

Having noted Principle 13 of the 1992 Rio Declaration on Environment and Development, according to which "States shall develop national law regarding liability and compensation for the victims of pollution and other environmental damage; they shall also co-operate in an expeditious and more determined manner to develop further international law regarding liability and compensation for adverse effects of environmental damage caused by activities within their jurisdiction or control to areas beyond their jurisdiction";

Recognising the need to adopt further measures to deal with grave and imminent threats of damage from dangerous activities and to facilitate the burden of proof for persons requesting compensation for such damage,

Have agreed as follows:

## Chapter I – General provisions

### Article 1 – Object and purpose

This Convention aims at ensuring adequate compensation for damage resulting from activities dangerous to the environment and also provides for means of prevention and reinstatement.

### Article 2 – Definitions

For the purpose of this Convention:

1   "Dangerous activity" means one or more of the following activities provided that it is performed professionally, including activities conducted by public authorities:

a    the production, handling, storage, use or discharge of one or more dangerous substances or any operation of a similar nature dealing with such substances;

b    the production, culturing, handling, storage, use, destruction, disposal, release or any other operation dealing with one or more:

–    genetically modified organisms which as a result of the properties of the organism, the genetic modification and the conditions under which the operation is exercised, pose a significant risk for man, the environment or property;

–    micro-organisms which as a result of their properties and the conditions under which the operation is exercised pose a significant risk for man, the environment or property, such as those micro-organisms which are pathogenic or which produce toxins;

c    the operation of an installation or site for the incineration, treatment, handling or recycling of waste, such as those installations or sites specified in Annex II, provided that the quantities involved pose a significant risk for man, the environment or property;

d    the operation of a site for the permanent deposit of waste.

2    "Dangerous substance" means:

a    substances or preparations which have properties which constitute a significant risk for man, the environment or property. A substance or preparation which is explosive, oxidizing, extremely flammable, highly flammable, flammable, very toxic, toxic, harmful, corrosive, irritant, sensitizing, carcinogenic, mutagenic, toxic for reproduction or dangerous for the environment within the meaning of Annex I, Part A to this Convention shall in any event be deemed to constitute such a risk;

b    substances specified in Annex I, Part B to this Convention. Without prejudice to the application of sub-paragraph a above, Annex I, Part B may restrict the specification of dangerous substances to certain quantities or concentrations, certain risks or certain situations.

3    "Genetically modified organism" means any organism in which the genetic material has been altered in a way which does not occur naturally by mating and/or natural recombination.

However, the following genetically modified organisms are not covered by the Convention:

–   organisms obtained by mutagenesis on condition that the genetic modification does not involve the use of genetically modified organisms as recipient organisms; and

–   plants obtained by cell fusion (including protoplast fusion) if the resulting plant can also be produced by traditional breeding methods and on condition that the genetic modification does not involve the use of genetically modified organisms as parental organisms.

"Organism" refers to any biological entity capable of replication or of transferring genetic material.

4   "Micro-organism" means any microbiological entity, cellular or non-cellular, capable of replication or of transferring genetic material.

5   "Operator" means the person who exercises the control of a dangerous activity.

6   "Person" means any individual or partnership or any body governed by public or private law, whether corporate or not, including a State or any of its constituent subdivisions.

7   "Damage" means:

a   loss of life or personal injury;

b   loss of or damage to property other than to the installation itself or property held under the control of the operator, at the site of the dangerous activity;

c   loss or damage by impairment of the environment in so far as this is not considered to be damage within the meaning of sub-paragraphs a or b above provided that compensation for impairment of the environment, other than for loss of profit from such impairment, shall be limited to the costs of measures of reinstatement actually undertaken or to be undertaken;

d   the costs of preventive measures and any loss or damage caused by preventive measures,

to the extent that the loss or damage referred to in sub-paragraphs a to c of this paragraph arises out of or results from the hazardous properties of the dangerous substances, genetically modified organisms or micro-organisms or arises or results from waste.

8   "Measures of reinstatement" means any reasonable measures aiming to reinstate or restore damaged or destroyed components of the environment, or to introduce, where reasonable, the equivalent of these components into the environment. Internal law may indicate who will be entitled to take such measures.

9   "Preventive measures" means any reasonable measures taken by any person, after an incident has occurred to prevent or minimise loss or damage as referred to in paragraph 7, sub-paragraphs a to c of this article.

10   "Environment" includes:

–   natural resources both abiotic and biotic, such as air, water, soil, fauna and flora and the interaction between the same factors;

–   property which forms part of the cultural heritage; and

–   the characteristic aspects of the landscape.

11   "Incident" means any sudden occurrence or continuous occurrence or any series of occurrences having the same origin, which causes damage or creates a grave and imminent threat of causing damage.

### Article 3 – Geographical scope

Without prejudice to the provisions of Chapter III, this Convention shall apply:

a   when the incident occurs in the territory of a Party, as determined in accordance with Article 34, regardless of where the damage is suffered;

b   when the incident occurs outside the territory referred to in sub-paragraph a above and the conflict of laws rules lead to the application of the law in force for the territory referred to in sub-paragraph a above.

### Article 4 – Exceptions

1   This Convention shall not apply to damage arising from carriage; carriage includes the period from the beginning of the process of loading until the end of the process of unloading. However, the Convention shall apply to carriage by pipeline, as well as to carriage performed entirely in an installation or on a site unaccessible to the public where it is accessory to other activities and is an integral part thereof.

2   This Convention shall not apply to damage caused by a nuclear substance:

a   arising from a nuclear incident the liability of which is regulated either by the Paris Convention of 29 July 1960 on third party liability in the field of nuclear energy, and its Additional Protocol of 28 January 1964, or the Vienna Convention of 21 May 1963 on civil liability for nuclear damage; or

b   if liability for such damage is regulated by a specific internal law, provided that such law is as favourable, with regard to compensation for damage, as any of the instruments referred to under sub-paragraph a above.

3   This Convention shall not apply to the extent that it is incompatible with the rules of the applicable law relating to workmen's compensation or social security schemes.

**Chapter II – Liability**

### Article 5 – Transitional provisions

1    The provisions of this chapter shall apply to incidents occurring after the entry into force of the Convention in respect of a Party. When the incident consists of a continuous occurrence or a series of occurrences having the same origin and part of these occurrences took place before the entry into force of this Convention, this chapter shall only apply to damage caused by occurrences or part of a continuous occurrence taking place after the entry into force.

2    In respect of damage caused by waste deposited at a site for the permanent deposit of waste the provisions of this chapter shall apply to damage which becomes known after the entry into force of the Convention in respect of the Party on the territory of which the site is situated. However this chapter shall not apply if:

a    the site was closed in accordance with the provisions of internal law before the entry into force of the Convention;

b    the operator proves, in the case where the operation of the site continues after that entry into force of the Convention, that the damage was caused solely by waste deposited there before that entry into force.

### Article 6 –  Liability in respect of substances, organisms and certain waste installations or sites

1    The operator in respect of a dangerous activity mentioned under Article 2, paragraph 1, sub-paragraphs a to c shall be liable for the damage caused by the activity as a result of incidents at the time or during the period when he was exercising the control of that activity.

2    If an incident consists of a continuous occurrence, all operators successively exercising the control of the dangerous activity during that occurrence shall be jointly and severally liable. However, the operator who proves that the occurrence during the period when he was exercising the control of the dangerous activity caused only a part of the damage shall be liable for that part of the damage only.

3    If an incident consists of a series of occurrences having the same origin, the operators at the time of any such occurrence shall be jointly and severally liable. However, the operator who proves that the occurrence at the time when he was exercising the control of the dangerous activity caused only a part of the damage shall be liable for that part of the damage only.

4    If the damage resulting from a dangerous activity becomes known after all such dangerous activity in the installation or on the site has ceased, the last operator of this activity shall be liable for that damage unless he or the person who suffered damage proves that all or part of the damage resulted from an incident which occurred at a time before he became the operator. If it is so proved, the provisions of paragraphs 1 to 3 of this article shall apply.

5    Nothing in this Convention shall prejudice any right of recourse of the operator against any third party.

**Article 7 – Liability in respect of sites for the permanent deposit of waste**

1. The operator of a site for the permanent deposit of waste at the time when damage caused by waste deposited at that site becomes known, shall be liable for this damage. Should the damage caused by waste deposited before the closure of such a site become known after that closure, the last operator shall be liable.

2. Liability under this article shall apply to the exclusion of any liability of the operator under Article 6, irrespective of the nature of the waste.

3. Liability under this article shall apply to the exclusion of any liability of the operator under Article 6 if the same operator conducts another dangerous activity on the site for the permanent deposit of waste.

   However, if this operator or the person who has suffered damage proves that only a part of the damage was caused by the activity concerning the permanent deposit of waste, this article shall only apply to that part of the damage.

4. Nothing in this Convention shall prejudice any right of recourse of the operator against any third party.

**Article 8 – Exemptions**

The operator shall not be liable under this Convention for damage which he proves:

a. was caused by an act of war, hostilities, civil war, insurrection or a natural phenomenon of an exceptional, inevitable and irresistible character;

b. was caused by an act done with the intent to cause damage by a third party, despite safety measures appropriate to the type of dangerous activity in question;

c. resulted necessarily from compliance with a specific order or compulsory measure of a public authority;

d. was caused by pollution at tolerable levels under local relevant circumstances; or

e. was caused by a dangerous activity taken lawfully in the interests of the person who suffered the damage, whereby it was reasonable towards this person to expose him to the risks of the dangerous activity.

**Article 9 – Fault of the person who suffered the damage**

If the person who suffered the damage or a person for whom he is responsible under internal law, has, by his own fault, contributed to the damage, the compensation may be reduced or disallowed having regard to all the circumstances.

**Article 10 – Causality**

When considering evidence of the causal link between the incident and the damage or, in the context of a dangerous activity as defined in Article 2, paragraph 1, sub-paragraph d, between the activity and the damage, the court shall take due account of the increased danger of causing such damage inherent in the dangerous activity.

**Article 11 – Plurality of installations or sites**

When damage results from incidents which have occurred in several installations or on several sites where dangerous activities are conducted or from dangerous activities under Article 2, paragraph 1, sub-paragraph d, the operators of the installations or sites concerned shall be jointly and severally liable for all such damage. However, the operator who proves that only part of the damage was caused by an incident in the installation or on the site where he conducts the dangerous activity or by a dangerous activity under Article 2, paragraph 1, sub-paragraph d, shall be liable for that part of the damage only.

**Article 12 – Compulsory financial security scheme**

Each Party shall ensure that where appropriate, taking due account of the risks of the activity, operators conducting a dangerous activity on its territory be required to participate in a financial security scheme or to have and maintain a financial guarantee up to a certain limit, of such type and terms as specified by internal law, to cover the liability under this Convention.

## Chapter III – Access to information

**Article 13 – Definition of public authorities**

For the purpose of this chapter "public authorities" means any public administration of a Party at national, regional or local level with responsibilities, and possessing information relating to the environment, with the exception of bodies acting in a judicial or legislative capacity.

**Article 14 – Access to information held by public authorities**

1    Any person shall, at his request and without his having to prove an interest, have access to information relating to the environment held by public authorities.

The Parties shall define the practical arrangements under which such information is effectively made available.

2    The right of access may be restricted under internal law where it affects:

–    the confidentiality of the proceedings of public authorities, international relations and national defence;

–    public security;

–    matters which are or have been *sub judice*, or under enquiry (including disciplinary enquiries), or which are the subject of preliminary investigation proceedings;

–    commercial and industrial confidentiality, including intellectual property;

–    the confidentiality of personal data and/or files;

–    material supplied by a third party without that party being under a legal obligation to do so; or

–    material, the disclosure of which would make it more likely that the environment to which that material related would be damaged.

Information held by public authorities shall be supplied in part where it is possible to separate out information on items concerning the interests referred to above.

3    A request for information may be refused where it would involve the supply of unfinished documents or data or internal communications, or where the request is manifestly unreasonable or formulated in too general a manner.

4    A public authority shall respond to a person requesting information as soon as possible and at the latest within two months. The reasons for a refusal to provide the information requested must be given.

5    A person who considers that his request for information has been unreasonably refused or ignored, or has been inadequately answered by a public authority, may seek a judicial or administrative review of the decision, in accordance with the relevant internal legal system.

6    The Parties may make a charge for supplying the information, but such a charge may not exceed a reasonable cost.

### Article 15 – Access to information held by bodies with public responsibilities for the environment

On the same terms and conditions as those set out in Article 14 any person shall have access to information relating to the environment held by bodies with public responsibilities for the environment and under the control of a public authority. Access shall be given via the competent public administration or directly by the bodies themselves.

### Article 16 – Access to specific information held by operators

1    The person who suffered the damage may, at any time, request the court to order an operator to provide him with specific information, in so far as this is necessary to establish the existence of a claim for compensation under this Convention.

2    Where, under this Convention, a claim for compensation is made to an operator, whether or not in the framework of judicial proceedings, this operator may request the court to order another operator to provide him with specific information, in so far as this is necessary to establish the extent of his possible obligation to compensate the person who has suffered the damage, or of his own right to compensation from the other operator.

3    The operator shall be required to provide information under paragraphs 1 and 2 of this article concerning the elements which are available to him and dealing essentially with the particulars of the equipment, the machinery used, the kind and concentration of the dangerous substances or waste as well as the nature of genetically modified organisms or micro-organisms.

4    These measures shall not affect measures of investigation which may legally be ordered under internal law.

5    The court may refuse a request which places a disproportionate burden on the operator, taking into account all the interests involved.

6    In addition to the restrictions under Article 14, paragraph 2 of this Convention, which shall apply *mutatis mutandis*, the operator may refuse to provide information where such information would incriminate him.

7    Any reasonable charge shall be paid by the person requesting the information. The operator may require an appropriate guarantee for such payment. However a court, when allowing a claim for compensation, may establish that this charge shall be borne by the operator, except to the extent that the request resulted in unnecessary costs.

## Chapter IV – Actions for compensation and other claims

### Article 17 – Limitation periods

1    Actions for compensation under this Convention shall be subject to a limitation period of three years from the date on which the claimant knew or ought reasonably to have known of the damage and of the identity of the operator. The laws of the Parties regulating suspension or interruption of limitation periods shall apply to the limitation period prescribed in this paragraph.

2    However, in no case shall actions be brought after thirty years from the date of the incident which caused the damage. Where the incident consists of a continuous occurrence the thirty years' period shall run from the end of that occurrence. Where the incident consists of a series of occurrences having the same origin the thirty years' period shall run from the date of the last of such occurrences. In respect of a site for the permanent deposit of waste the thirty years' period shall at the latest run from the date on which the site was closed in accordance with the provisions of internal law.

### Article 18 – Requests by organisations

1    Any association or foundation which according to its statutes aims at the protection of the environment and which complies with any further conditions of internal law of the Party where the request is submitted may, at any time, request:

    a    the prohibition of a dangerous activity which is unlawful and poses a grave threat of damage to the environment;

    b    that the operator be ordered to take measures to prevent an incident or damage;

    c    that the operator be ordered to take measures, after an incident, to prevent damage; or

    d    that the operator be ordered to take measures of reinstatement.

2    Internal law may stipulate cases where the request is inadmissible.

3    Internal law may specify the body, whether administrative or judicial, before which the request referred to in paragraph 1 above should be made. In all cases provision shall be made for a right of review.

4    Before deciding upon a request mentioned under paragraph 1 above the requested body may, in view of the general interests involved, hear the competent public authorities.

5    When the internal law of a Party requires that the association or foundation has its registered seat or the effective centre of its activities in its territory, the Party may declare at any time, by means of a notification addressed to the Secretary General of the Council of Europe, that, on the basis of reciprocity, an association or foundation having its seat or centre of activities in the territory of another Party and complying in that other Party with the other conditions mentioned in paragraph 1 above shall have the right to submit requests in accordance with paragraphs 1 to 3 above. The declaration will become effective on the first day of the month following the expiration of a period of three months after the date of its reception by the Secretary General.

**Article 19 – Jurisdiction**

1    Actions for compensation under this Convention may only be brought within a Party at the court of the place:

a    where the damage was suffered;

b    where the dangerous activity was conducted; or

c    where the defendant has his habitual residence.

2    Requests for access to specific information held by operators under Article 16, paragraphs 1 and 2 may only be submitted within a Party at the court of the place:

a    where the dangerous activity is conducted; or

b    where the operator who may be required to provide the information has his habitual residence.

3    Requests by organisations under Article 18, paragraph 1, sub-paragraph a may only be submitted within a Party at the court or, if internal law so provides, at a competent administrative authority of the place where the dangerous activity is or will be conducted.

4    Requests by organisations under Article 18, paragraph 1, sub-paragraphs b, c and d may only be submitted within a Party at the court or, if internal law so provides, at a competent administrative authority:

a    of the place where the dangerous activity is or will be conducted; or

b    of the place where the measures are to be taken.

**Article 20 – Notification**

The court shall stay the proceedings so long as it is not shown that the defendant has been able to receive the document instituting the proceedings or an equivalent document in sufficient time to enable him to arrange for his defence, or that all necessary steps have been taken to this end.

**Article 21 – *Lis pendens***

1    Where proceedings involving the same cause of action and between the same parties are brought in the courts of different Parties, any court other than the court first seised shall of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established.

2    Where the jurisdiction of the court first seised is established, any court other than the court first seised shall decline jurisdiction in favour of that court.

**Article 22 – Related actions**

1    Where related actions are brought in the courts of different Parties, any court other than the court first seised may, while the actions are pending at first instance, stay its proceedings.

2    A court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the law of that court permits the consolidation of related actions and the court first seised has jurisdiction over both actions.

3    For the purposes of this article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

**Article 23 – Recognition and enforcement**

1    Any decision given by a court with jurisdiction in accordance with Article 19 above where it is no longer subject to ordinary forms of review, shall be recognised in any Party, unless:

   a    such recognition is contrary to public policy in the Party in which recognition is sought;

   b    it was given in default of appearance and the defendant was not duly served with the document which instituted the proceedings or with an equivalent document in sufficient time to enable him to arrange for his defence;

   c    the decision is irreconcilable with a decision given in a dispute between the same parties in the Party in which recognition is sought; or

   d    the decision is irreconcilable with an earlier decision given in another State involving the same cause of action and between the same parties, provided that this latter decision fulfils the conditions necessary for its recognition in the Party addressed.

2    A decision recognised under paragraph 1 above which is enforceable in the Party of origin shall be enforceable in each Party as soon as the formalities required by that Party have been completed. The formalities shall not permit the merits of the case to be re-opened.

**Article 24 – Other treaties relating to jurisdiction, recognition and enforcement**

Whenever two or more Parties are bound by a treaty establishing rules of jurisdiction or providing for recognition and enforcement in a Party of decisions given in another Party, the provisions of that treaty shall replace the corresponding provisions of Articles 19 to 23.

**Chapter V – Relation between this Convention and other provisions**

### Article 25 – Relation between this Convention and other provisions

1    Nothing in this Convention shall be construed as limiting or derogating from any of the rights of the persons who have suffered the damage or as limiting the provisions concerning the protection or reinstatement of the environment which may be provided under the laws of any Party or under any other treaty to which it is a Party.

2    In their mutual relations, Parties which are members of the European Economic Community shall apply Community rules and shall therefore not apply the rules arising from this Convention except in so far as there is no Community rule governing the particular subject concerned.

**Chapter VI – The Standing Committee**

### Article 26 – The Standing Committee

1    For the purposes of this Convention, a Standing Committee is hereby set up.

2    Each Party may be represented on the Standing Committee by one or more delegates.

3    Each delegation shall have one vote. However, within the areas of its competence the European Economic Community shall exercise its right to vote in the Standing Committee with a number of votes equal to the number of its member States which are Parties to this Convention. It shall not exercise its right to vote in cases where the member States exercise theirs and conversely. As long as no member State of the European Economic Community is a Party, the Community as a Party shall have one vote.

4    Any State referred to in Article 32 or invited to accede to the Convention in accordance with the provisions of Article 33 which is not a Party to this Convention may be represented on the Standing Committee by an observer. If the European Economic Community is not a Party it may be represented on the Standing Committee by an observer.

5    Unless, at least one month before the meeting, a Party has informed the Secretary General of its objection, the Standing Committee may invite the following to attend as observers at all its meetings or one or part of a meeting:

–    any State not referred to in paragraph 4 above;

–    any international or national, governmental or non-governmental body technically qualified in the fields covered by this Convention.

6    The Standing Committee may seek the advice of experts in order to discharge its functions.

7    The Standing Committee shall be convened by the Secretary General of the Council of Europe. It shall meet whenever one-third of the Parties or the Committee of Ministers of the Council of Europe so request.

8    One-third of the Parties shall constitute a quorum for holding a meeting of the Standing Committee.

9    Decisions may only be taken in the Standing Committee if at least one-half of the Parties are present.

10   Subject to Articles 27 and 29 to 31 the decisions of the Standing Committee shall be taken by a majority of the members present.

11   Subject to the provisions of this Convention the Standing Committee shall draw up its own rules of procedure.

### Article 27 – Functions of the Standing Committee

The Standing Committee shall keep under review problems relating to this Convention. It may, in particular:

a    consider any question of a general nature referred to it concerning interpretation or implementation of the Convention. The Standing Committee's conclusions concerning implementation of the Convention may take the form of a recommendation; recommendations shall be adopted by a three quarters majority of the votes cast;

b    propose any necessary amendments to the Convention including its annexes and examine those proposed in accordance with Articles 29 to 31.

### Article 28 – Reports of the Standing Committee

After each meeting, the Standing Committee shall forward to the Parties and the Committee of Ministers of the Council of Europe a report on its discussions and any decisions taken.

## Chapter VII – Amendments to the Convention

### Article 29 – Amendments to the Articles

1    Any amendment to the articles of this Convention proposed by a Party or the Standing Committee shall be communicated to the Secretary General of the Council of Europe and forwarded by him at least two months before the meeting of the Standing Committee to the member States of the Council of Europe, to the European Economic Community, to any Signatory, to any Party, to any State invited to sign this Convention in accordance with the provisions of Article 32 and to any State invited to accede to it in accordance with the provisions of Article 33.

2    Any amendment proposed in accordance with the provisions of the preceding paragraph shall be examined by the Standing Committee which:

a    for amendments to Articles 1 to 25 shall submit the text adopted by a three-quarters majority of the votes cast to the Parties for acceptance;

b    for amendments to Articles 26 to 37 shall submit the text adopted by a three-quarters majority of the votes cast to the Committee of Ministers for approval. After its approval, this text shall be forwarded to the Parties for acceptance.

3    Any amendment to Articles 1 to 25 shall enter into force, in respect of those Parties which have accepted it, on the first day of the month following the expiration of a period of one month after the date on which three Parties, including at least two member States of the Council of Europe, have informed the Secretary General that they have accepted it.

In respect of any Party which subsequently accepts it, the amendment shall enter into force on the first day of the month following the expiration of a period of one month after the date on which that Party has informed the Secretary General of its acceptance.

4    Any amendment to Articles 26 to 37 shall enter into force on the first day of the month following the expiration of a period of one month after the date on which all Parties have informed the Secretary General that they have accepted it.

**Article 30 – Amendments to the annexes**

1    Any amendment to the annexes of this Convention proposed by a Party or the Standing Committee shall be communicated to the Secretary General of the Council of Europe and forwarded by him at least two months before the meeting of the Standing Committee to the member States of the Council of Europe, to the European Economic Community, to any Signatory, to any Party, to any State invited to sign this Convention in accordance with the provisions of Article 32 and to any State invited to accede to it in accordance with the provisions of Article 33.

2    Any amendment proposed in accordance with the provisions of the preceding paragraph or, where appropriate, of Article 31 shall be examined by the Standing Committee, which may adopt it by a three-quarters majority of the votes cast. The text adopted shall be forwarded to the Parties.

3    On the first day of the month following the expiration of a period of eighteen months after its adoption by the Standing Committee, unless more than one-third of the Parties have notified objections, any amendment shall enter into force for those Parties which have not notified objections.

**Article 31 – Tacit amendments to Annex I, Parts A and B**

1    Whenever the European Economic Community adopts an amendment to one of the annexes to the directives referred to in Annex I, Parts A and B of this Convention, the Secretary General shall communicate it to all the Parties not later than four months after its publication in the *Official Journal of the European Communities*.

2    Within a time limit of six months after this communication, any Party may request that the amendment be submitted to the Standing Committee, in which case the procedure under Article 30, paragraphs 2 and 3, shall be followed. If no Party requests the submission of the amendment to the Standing Committee, the provisions of paragraph 3 below shall apply.

3    On the first day of the month following the expiration of a period of eighteen months after the communication of the amendment to all Parties, and unless more than one-third of the Parties have notified objections, the amendment shall enter into force for those Parties which have not notified objections.

However, the entry into force of the amendment shall be postponed to the date fixed for the member States of the European Economic Community for the compliance of their domestic law with the directive, if this date is later than that resulting from the time limit stated in the first part of this paragraph.

## Chapter VIII – Final clauses

### Article 32 – Signature, ratification and entry into force

1    This Convention shall be open for signature by the member States of the Council of Europe, the non-member States which have participated in its elaboration and by the European Economic Community.

2    This Convention is subject to ratification, acceptance or approval. Instruments of ratification, acceptance or approval shall be deposited with the Secretary General of the Council of Europe.

3    This Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date on which three States, including at least two member States of the Council of Europe, have expressed their consent to be bound by the Convention in accordance with the provisions of paragraph 2 of the present article.

4    In respect of any Signatory which subsequently expresses its consent to be bound by it, the Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date of the deposit of its instrument of ratification, acceptance or approval.

### Article 33 – Non-member States

1    After the entry into force of this Convention, the Committee of Ministers of the Council of Europe may, on its own initiative or following a proposal from the Standing Committee and after consultation of the Parties, invite any non-member State of the Council of Europe to accede to this Convention by a decision taken by the majority provided for in Article 20, sub-paragraph d of the Statute of the Council of Europe, and by the unanimous vote of the representatives of the Contracting States entitled to sit on the Committee of Ministers.

2    In respect of any acceding State, the Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date of deposit of the instrument of accession with the Secretary General of the Council of Europe.

### Article 34 – Territories

1    Any Signatory may, at the time of signature or when depositing its instrument of ratification, acceptance or approval, specify the territory or territories to which this Convention shall apply. Any other State may formulate the same declaration when depositing its instrument of accession.

2      Any Party may, at any later date, by a declaration addressed to the Secretary General of the Council of Europe, extend the application of this Convention to any other territory specified in the declaration and for whose international relations it is responsible or on whose behalf it is authorised to give undertakings. In respect of such territory the Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date of receipt of such declaration by the Secretary General.

3      Any declaration made under the two preceding paragraphs may, in respect of any territory specified in such declaration, be withdrawn by a notification addressed to the Secretary General. The withdrawal shall become effective on the first day of the month following the expiration of a period of three months after the date of receipt of such notification by the Secretary General.

**Article 35 – Reservations**

1      Any Signatory may declare, at the time of signature or when depositing its instrument of ratification, acceptance or approval, that it reserves the right:

   a     to apply Article 3, sub-paragraph a, to damage suffered in the territory of the States which are not Parties to this Convention only on the basis of reciprocity;

   b     to provide in its internal law that, without prejudice to Article 8, the operator shall not be liable if he proves that in the case of damage caused by a dangerous activity mentioned under Article 2, paragraph 1, sub-paragraphs a and b, the state of scientific and technical knowledge at the time of the incident was not such as to enable the existence of the dangerous properties of the substance or the significant risk involved in the operation dealing with the organism to be discovered;

   c     not to apply Article 18.

   Any other State may formulate the same reservations when depositing its instrument of accession.

2      Any Signatory or any other State which makes use of a reservation shall notify the Secretary General of the Council of Europe of the relevant contents of its internal law.

3      Any Party which extends the application of this Convention to a territory mentioned in the declaration referred to in Article 34, paragraph 2, may, in respect of the territory concerned, make a reservation in accordance with the provisions of the preceding paragraphs.

4      No reservation shall be made to the provisions of this Convention, except those mentioned in this article.

5      Any Party which has made one of the reservations mentioned in this article may withdraw it by means of a declaration addressed to the Secretary General of the Council of Europe. The withdrawal shall become effective on the first day of the month following the expiration of a period of one month after the date of its receipt by the Secretary General.

**Article 36 – Denunciation**

1      Any Party may at any time denounce this Convention by means of a notification addressed to the Secretary General of the Council of Europe.

2    Such denunciation shall become effective on the first day of the month following the expiration of a period of three months after the date of receipt of notification by the Secretary General.

**Article 37 – Notifications**

The Secretary General of the Council of Europe shall notify the member States of the Council, any Signatory, any Party and any other State which has been invited to accede to this Convention of:

a    any signature;

b    the deposit of any instrument of ratification, acceptance, approval or accession;

c    any date of entry into force of this Convention in accordance with Articles 32 or 33;

d    any amendment adopted in accordance with Articles 29, 30 or 31, and the date on which such an amendment enters into force;

e    any declaration made under the provisions of Articles 18 or 34;

f    any reservation and withdrawal of reservation made in pursuance of the provisions of Article 35;

g    any other act, notification or communication relating to this Convention.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at Lugano, this 21st day of June 1993, in English and French, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Council of Europe. The Secretary General of the Council of Europe shall transmit certified copies to each member State of the Council of Europe, to the non-member States which have participated in the elaboration of this Convention, to the European Economic Community and to any State invited to accede to this Convention.

# ANNEX

Case 1:19-cv-01618-TSC    Document 23-6    Filed 12/20/19    Page 20 of 21

**ANNEX I**

**Dangerous substances**

**A    Criteria and methods to be applied to catagories of dangerous substances**
(Article 2, paragraph 2, sub-paragraph a)

The properties referred to in Article 2, paragraph 2, sub-paragraph a, shall be determined by the criteria and methods referred to in or annexed to:

–    the Council Directive of the European Communities 67/548/EEC of 27 June 1967 (OJEC No. L196/1) on the approximation of the laws, regulations and administrative provisions relating to the classification, packaging and labelling of dangerous substances
.        as amended, for the seventh time, in the Council Directive of the European Communities 92/32/EEC of 30 April 1992 (OJEC No. L154/1), and

.        as adapted to technical progress, for the sixteenth time, by Commission Directive of the European Communities 92/37/EEC of 30 April 1992 (OJEC No. L154/30),

–    the Council Directive of the European Communities 88/379/EEC of 7 June 1988 (OJEC No. L187/14) on the approximation of the laws, regulations and administrative provisions of the member States relating to the classification, packaging and labelling of dangerous preparations as adapted to technical progress by the Directive of the Commission of the European Communities 90/492/EEC of 5 October 1990 (OJEC No. L275/35).

**B    List of dangerous substances**
(Article 2, paragraph 2, sub-paragraph b)

The substances referred to in Article 2, paragraph 2, sub-paragraph b, shall be those listed in Annex I of the Council Directive of the European Communities 67/548/EEC of 27 June 1967 (OJEC No. 196/1), on the approximation of the laws regulations and administrative provisions relating to the classification packaging and labelling of dangerous substances as adapted to technical progress, for the sixteenth time, by Commission Directive of the European Communities 92/37/EEC of 30 April 1992 (OJEC No. L154/30).

**ANNEX II**

**Installations or sites for the incineration, treatment, handling or recycling of waste**
(See Article 2, paragraph 1, sub-paragraph c)

1    Installations or sites for the partial or complete disposal of solid, liquid or gaseous wastes by incineration on land or at sea.

2    Installations or sites for thermal degradation of solid, gaseous or liquid wastes under reduced oxygen supply.

3    Installations or sites for high temperature degradation or thermal degasification of solid, gaseous or liquid wastes.

4    Installations or sites for thermal recovery of compounds from solid or liquid wastes.

5    Installations or sites for chemical, physical or biological treatment of wastes for recycling or disposal.

6    Installations or sites for blending or mix prior to submission to the operation of a site for permanent deposit.

7    Installations or sites for repacking prior to submission to the operation of a site for permanent deposit.

8    Installations or sites for handling and treatment of solid, liquid or gaseous wastes for re-use or recycling such as:

–    solvent reclamation/regeneration;
–    recycling/reclamation of organic substances (not used as solvents) and inorganic materials;
–    regeneration of acid and bases;
–    recovery of components used for pollution abatement;
–    recovery of components from catalysts;
–    waste oil re-refining or other re-uses of waste oil;
–    recovery of components from discarded cars.

9    Installations or sites for storage of materials intended for submission to any operation in this annex or to the operation of a site for the permanent deposit of waste, temporary storage excluded, pending collection, on the site where it is produced.