**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

In the arbitration proceeding

between

# 1. VATTENFALL AB; 2. VATTENFALL GMBH; 3. VATTENFALL EUROPE NUCLEAR ENERGY GMBH; 4. KERNKRAFTWERK KRÜMMEL GMBH & CO. OHG; 5. KERNKRAFTWERK BRUNSBÜTTEL GMBH & CO. OHG

Claimants

and

## FEDERAL REPUBLIC OF GERMANY

Respondent

**ICSID Case No. ARB/12/12**

---

# DECISION ON THE *ACHMEA* ISSUE

---

***Members of the Tribunal***
Professor Albert Jan VAN DEN BERG, President
The Honourable Charles N. BROWER
Professor Vaughan LOWE

***Secretary of the Tribunal***
Ms. Jara MÍNGUEZ ALMEIDA

***Assistant to the Tribunal***
Ms. Emily HAY

*Date of dispatch to the Parties*: 31 August 2018

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

### REPRESENTATION OF THE PARTIES

*Representing Vattenfall AB and others*:

**Kaj Hobér**
Säves Väg 36
SE-752 63 Uppsala
Sweden

and

**Jakob Ragnwaldh**
**Fredrik Andersson**
**Alexander Foerster**
**Friederike Strack**
MANNHEIMER SWARTLING ADVOKATBYRÅ AB
Norrlandsgatan 21
Box 1711
SE-111 87 Stockholm
Sweden

and

**Richard Happ**
**Georg Scherpf**
LUTHER RECHTSANWALTSGESELLSCHAFT MBH
Gänsemarkt 45
20354 Hamburg
Germany

*Representing the Federal Republic of Germany*:

**Sabine Konrad**
**Arne Fuchs**
MCDERMOTT WILL & EMERY
RECHTSANWÄLTE STEUERBERATER LLP
Feldbergstraβe 35
60323 Frankfurt am Main
Germany

and

**Hans-Joachim Henckel**
**Annette Tiemann**
Bundesministerium für Wirtschaft und Energie
Referat VC7
1019 Berlin
Germany

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

TABLE OF CONTENTS

I.    INTRODUCTION AND PROCEDURAL BACKGROUND ............................................................4

    A.    Contents of this Decision ..........................................................................................4

    B.    Reason for a Separate Decision ................................................................................4

    C.    Broader Procedural Context ......................................................................................5

    D.    Procedural Context Specific to the *Achmea* Issue ..................................................5

    E.    Respondent's Jurisdictional Objection .....................................................................7

    F.    Costs .........................................................................................................................8

    G.    Outline of this Decision ............................................................................................8

II.    THE ECJ JUDGMENT ...........................................................................................................9

III.    THE PARTIES' POSITIONS ................................................................................................16

    A.    Respondent's Position .............................................................................................17

        1.    Timeliness of Respondent's Jurisdictional Objection ...............................17

        2.    Applicability of EU Law to the Tribunal's Jurisdiction ............................18

        3.    Implications of the ECJ Judgment .............................................................18

    B.    Claimants' Position ................................................................................................22

        1.    Timeliness of Respondent's Jurisdictional Objection ...............................22

        2.    Applicability of EU Law to the Tribunal's Jurisdiction ............................23

        3.    Implications of the ECJ Judgment .............................................................25

IV.    THE EC'S OBSERVATIONS ................................................................................................29

    A.    Applicability of EU Law for the Tribunal's Jurisdiction .......................................29

    B.    Implications of the ECJ Judgment .........................................................................30

V.    THE TRIBUNAL'S CONSIDERATIONS ................................................................................34

    A.    Timeliness of Respondent's Jurisdictional Objection relating to the ECJ Judgment ............35

    B.    Applicable Law .......................................................................................................38

        1.    Article 26(6) ECT and Article 42(1) ICSID Convention ...........................39

        2.    Article 26 ECT ...........................................................................................41

        3.    EU Law and the ECJ Judgment .................................................................43

            a.    The Subject Matter of the ECJ Judgment ....................................... 44

            b.    Whether EU Law is International Law .............................................. 45

            c.    Article 31(3)(c) VCLT .................................................................... 48

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

|   |   | 4. | Conclusion on Applicable Law | 52 |
| C. |   | Interpretation of the ECT |   | 52 |
|   | 1. | Ordinary Meaning of "Contracting Party" in Article 26 ECT | 53 |
|   |   | a. | Articles 1(2), 1(3), and 1(10) ECT | 54 |
|   |   | b. | The EU Statement | 57 |
|   |   | c. | Article 16 ECT | 61 |
|   |   | d. | Object and Purpose | 62 |
|   |   | e. | Disconnection Clause | 63 |
|   | 2. | Conclusion on Interpretation | 65 |
| D. |   | Whether EU Law Prevails under a Conflict of Laws Analysis | 66 |
|   | 1. | *Lex posterior* | 67 |
|   | 2. | Modification of the ECT | 68 |
|   | 3. | *Lex specialis* | 69 |
| E. |   | Enforceability of the Decision | 71 |
| VI. | DECISION | | 72 |

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

# I.     INTRODUCTION AND PROCEDURAL BACKGROUND

## A.     CONTENTS OF THIS DECISION

1.     This Decision arises from the jurisdictional objection made by Respondent, to the effect that "all claims pending before this Tribunal be dismissed because the Tribunal has no jurisdiction in the light of ECJ's *Achmea* Judgment".[1] Respondent raised this objection to the Tribunal's jurisdiction on 4 April 2018, following the release of the *Achmea* judgment on 6 March 2018, after the Parties' exchange of written submissions, the hearing, and the filing of post-hearing submissions in this matter.

2.     This Decision shall therefore address the implications for these proceedings ("*Achmea* issue"), if any, of the judgment rendered by the European Court of Justice ("**ECJ**") in Case C-284/16 *Slowakische Republik v. Achmea BV*, dated 6 March 2018 ("**ECJ Judgment**").

## B.     REASON FOR A SEPARATE DECISION

3.     The *Achmea* issue is a distinct matter, unrelated to the remainder of the issues between the Parties to this arbitration. The Tribunal considers it appropriate and in the interests of efficiency and procedural economy to issue this separate Decision prior to any further ruling in these proceedings, in order to address the specific jurisdictional objection by Respondent with respect to the *Achmea* issue.[2]

4.     This Decision is rendered without prejudice to the Tribunal's determinations regarding all other issues of jurisdiction, admissibility or merits in these proceedings.

---

[1]     Respondent's First Submission re the ECJ Judgment, ¶ 69.

[2]     In this respect, the Tribunal recalls Article 41(2) of the ICSID Convention, which provides that "[a]ny objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Tribunal, shall be considered by the Tribunal which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute". The Tribunal further recalls ICSID Rule 41(2), providing that "[t]he Tribunal may on its own initiative consider, at any stage of the proceeding, whether the dispute or any ancillary claim before it is within the jurisdiction of the Centre and within its own competence".

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

### C.     BROADER PROCEDURAL CONTEXT

5.     This Decision is taken in the context of a dispute between Claimants and Respondent which was commenced by the Request for Arbitration dated 14 May 2012 of Vattenfall AB, Vattenfall Europe AG, Vattenfall Europe Nuclear Energy GmbH, Kernkraftwerk Krümmel GmbH & Co. oHG, and Kernkraftwerk Brunsbüttel GmbH & Co. oHG, submitted against the Federal Republic of Germany ("**Request**").

6.     There is no dispute that all concerned Parties to the present proceedings are currently based in the European Union ("**EU**"). The five Claimants are legal entities within the EU, and Respondent is an EU Member State.

7.     The Request was received by the International Centre for Settlement of Investment Disputes ("**ICSID**") on 16 May 2012, and on 31 May 2012 was registered by the Secretary-General of ICSID in accordance with Article 36 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("**ICSID Convention**").

8.     The Parties' dispute arises out of Respondent's decision to phase out the use of nuclear energy. In the context of Respondent's decision, Claimants allege that Respondent has breached a number of obligations under the Energy Charter Treaty ("**ECT**").

9.     As mentioned at ¶ 1 above, at this stage of the proceedings the Parties have exchanged written submissions. A hearing on jurisdiction, merits and quantum took place at the World Bank Headquarters in Washington, D.C., from 10 to 21 October 2016 ("**Hearing**"). Following the Hearing, the Parties have exchanged post-hearing submissions.

### D.     PROCEDURAL CONTEXT SPECIFIC TO THE *ACHMEA* ISSUE

10.     Turning now to the procedural context relating to the *Achmea* issue, it is relevant to recount a number of steps preceding the ECJ Judgment.

11.     On 24 July 2015, the European Commission ("**EC**") filed an "Application for Leave to Intervene as a Non-Disputing Party" in the present proceedings ("**EC Application**").

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

12.     On 7 August 2015, the Tribunal issued Procedural Order No. 13 ("**PO 13**"), granting the EC Application under Rule 37(2) of the ICSID Rules of Procedure for Arbitration Proceedings ("**ICSID Rules**").

13.     On 30 September 2015, the EC filed its "Written Submission" as a non-disputing party ("**EC 2015 Submission**").

14.     On 29 April 2016, Claimants submitted their Observations on the EC 2015 Submission ("**Claimants' 2016 Observations**"). On the same date, Respondent submitted a letter to the Tribunal stating as follows:

> We write to the Tribunal in response to Procedural Order No. 13 (dated 7 August 2015) which directs the Parties to file any observations on the EU Commission's amicus submission in the above referenced case no later than Friday, 29 April 2016.
>
> Respondent requests the Tribunal to conduct an *ex officio* assessment of the arguments submitted by the EU Commission on 30 September 2015.[3]

15.     Following the release of the ECJ Judgment on 6 March 2018, the Tribunal invited the Parties to provide their comments on (i) the implications of the ECJ Judgment on the present case, if any; and (ii) whether the Tribunal should invite comments from the EC in respect of the ECJ Judgment. On these points, the Parties provided two rounds of comments, first, on 4 April 2018 ("**Claimants' First Submission re the ECJ Judgment**" and "**Respondent's First Submission re the ECJ Judgment**", respectively) and second, on 23 April 2018 ("**Claimants' Second Submission re the ECJ Judgment**" and "**Respondent's Second Submission re the ECJ Judgment**", respectively).

16.     In the meantime, the EC, by its email dated 19 April 2018, offered to update the EC 2015 Submission in light of the recent ECJ Judgment. Taking into account the Parties' submissions in their respective First and Second Submissions of 4 April and 23 April 2018, the Tribunal decided to grant the EC's request to update the EC 2015 Submission, and did

---

[3]     Respondent's letter to the Tribunal dated 29 April 2016.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

so by Procedural Order No. 36 dated 25 April 2018. Following this determination, on 9 May 2018, the EC filed its update to the EC 2015 Submission ("**EC 2018 Submission**").

17.    Thereafter, both Claimants and Respondent filed their respective observations with respect to the EC 2018 Submission on 30 May 2018 ("**Claimants' 2018 Observations**" and "**Respondent's 2018 Observations**", respectively).

### E.    RESPONDENT'S JURISDICTIONAL OBJECTION

18.    The Tribunal notes that Respondent did not originally object to the Tribunal's jurisdiction on the basis of EU law. The issue of any potential incompatibility between intra-EU investor-State dispute settlement under the ECT and EU law was first raised in these proceedings by the EC, in the EC Application and EC 2015 Submission. Even after the EC 2015 Submission, Respondent did not raise a jurisdictional objection in line with the arguments made by the EC. Rather, in response to the EC 2015 Submission, Respondent "request[ed] the Tribunal to conduct an *ex officio* assessment of the arguments submitted by the EU Commission".[4] Respondent's jurisdictional objection arose only after the ECJ Judgment had been rendered in 2018.

19.    The Tribunal will give further consideration to the timeliness of Respondent's objection below. As further elaborated (see ¶¶ 104-106 below), irrespective of the timeliness of Respondent's objection, the Tribunal considers that it has a broad power to examine issues relating to its jurisdiction on an *ex officio* basis. In respect of the issue of the alleged incompatibility of intra-EU investor-State arbitration under the ECT with EU law, the Tribunal would have exercised that power to examine its jurisdiction *ex officio*, even in the absence of a jurisdictional objection by Respondent.

---

[4]    Respondent's letter to the Tribunal dated 29 April 2016.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

### F.    COSTS

20.    In respect of the issue of costs associated with the EC's intervention as a non-disputing party, Claimants objected that the EC's intervention would cause them to incur additional costs. In their letter to the Tribunal dated 31 July 2015, Claimants requested that

> any decision granting the [EC] Application be conditioned upon the Commission posting satisfactory security for the costs caused to the parties by its intervention in this arbitration.[5]

21.    In PO 13 (see ¶ 12 above), the Tribunal reserved the question of costs associated with the EC's intervention as non-disputing party, "for future decision, at the latest in the Tribunal's Award".[6] The Tribunal considers it appropriate to address that issue now.

22.    The Tribunal admitted the EC's intervention as a non-disputing party, on the basis that (i) the EC "has a perspective and particular knowledge in relation to the ECT which is different than that offered by the disputing Parties", (ii) it was likely to address a matter within the scope of the dispute, and (iii) the EC's interest in the dispute can be considered "significant".[7]

23.    Having admitted the EC's intervention for these reasons, the Tribunal holds that the EC should not be liable for any costs associated with these arbitral proceedings.

### G.    OUTLINE OF THIS DECISION

24.    On a review of the Parties' submissions and the EC's observations, including the ones filed following the ECJ Judgment, the Tribunal considers that the substantive issues arising out of the EC 2015 Submission and the recent ECJ Judgment overlap to a large degree. However, as a consequence of the ECJ Judgment, a number of new issues have arisen to which the Tribunal shall give due consideration.

---

[5]    Claimants' letter to the Tribunal dated 31 July 2015.
[6]    PO 13, ¶ 19.
[7]    PO 13, ¶¶ 13-15.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

25.    In the following Sections, the Tribunal shall address the issues arising out of both the EC 2015 Submission and the ECJ Judgment together. In Section II, the Tribunal summarises the conclusions reached by the ECJ in the ECJ Judgment, and Section III sets out the Parties' respective positions in respect of the ECJ Judgment. Section IV describes the EC's observations on this issue. The Tribunal's considerations follow in Section V, with the Tribunal's conclusions contained in Section VI.

26.    Unless defined herein, capitalised terms used in this Decision carry the definition applicable under the ECT.


## II.    THE ECJ JUDGMENT

27.    The ECJ Judgment concerns the Agreement on Encouragement and Reciprocal Protection of Investments between the Kingdom of the Netherlands and the Czech and Slovak Federative Republic 1992 ("**Dutch-Slovak BIT**").

28.    The ECJ Judgment also concerns certain provisions of EU treaty law. In particular, the ECJ Judgment deals with Articles 18, 267 and 344 of the Treaty on the Functioning of the European Union ("**TFEU**"). This Tribunal will refer to the TFEU together with the Treaty on the European Union ("**TEU**") as the "**EU Treaties**".

29.    Articles 18, 267 and 344 TFEU provide as follows:

*Article 18*

Within the scope of application of the Treaties, and without prejudice to any special provisions contained therein, any discrimination on grounds of nationality shall be prohibited.

. . . .

*Article 267*

The Court of Justice of the European Union shall have jurisdiction to give preliminary rulings concerning:

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

(a) the interpretation of the Treaties;

(b) the validity and interpretation of acts of the institutions, bodies, offices or agencies of the Union;

Where such a question is raised before any court or tribunal of a Member State, that court or tribunal may, if it considers that a decision on the question is necessary to enable it to give judgment, request the Court to give a ruling thereon.

Where any such question is raised in a case pending before a court or tribunal of a Member State against whose decisions there is no judicial remedy under national law, that court or tribunal shall bring the matter before the Court.

If such a question is raised in a case pending before a court or tribunal of a Member State with regard to a person in custody, the Court of Justice of the European Union shall act with the minimum of delay.

*Article 344*

Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for therein.

30.     The questions that were referred to the ECJ by the German *Bundesgerichtshof* (German Federal Supreme Court) were the following:

(1) Does Article 344 TFEU preclude the application of a provision in a bilateral investment protection agreement between Member States of the European Union (a so-called intra-EU BIT) under which an investor of a Contracting State, in the event of a dispute concerning investments in the other Contracting State, may bring proceedings against the latter State before an arbitral tribunal where the investment protection agreement was concluded before one of the Contracting States acceded to the European Union but the arbitral proceedings are not to be brought until after that date?

If Question 1 is to be answered in the negative:

(2) Does Article 267 TFEU preclude the application of such a provision?

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

> If Questions 1 and 2 are to be answered in the negative:
>
> (3) Does the first paragraph of Article 18 TFEU preclude the application of such a provision under the circumstances described in Question 1?[8]

31.     The ECJ Judgment made a number of comments regarding the system of EU law, as follows:

> 32. . . . it should be recalled that, according to settled case-law of the Court, an international agreement cannot affect the allocation of powers fixed by the Treaties, or consequently, the autonomy of the EU legal system, observance of which is ensured by the Court. That principle is enshrined in particular in Article 344 TFEU, under which the Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for in the Treaties . . .
>
> 33. Also according to settled case-law of the Court, the autonomy of EU law with respect both to the law of the Member States and to international law is justified by the essential characteristics of the EU and its law, relating in particular to the constitutional structure of the EU and the very nature of that law. EU law is characterised by the fact that it stems from an independent source of law, the Treaties, by its primacy over the laws of the Member States, and by the direct effect of a whole series of provisions which are applicable to their nationals and to the Member States themselves. Those characteristics have given rise to a structured network of principles, rules and mutually interdependent legal relations binding the EU and its Member States reciprocally and binding its Member States to each other . . .
>
> 34. EU law is thus based on the fundamental premiss that each Member State shares with all the other Member States, and recognises that they share with it, a set of common values on which the EU is founded, as stated in Article 2 TEU. That premiss implies and justifies the existence of mutual trust between the Member States that those values will be recognised, and therefore that the law of the EU that implements them will be respected. It is precisely in that context that the Member States are obliged, by reason inter alia of the principle of sincere cooperation set out in the first subparagraph of Article 4(3) TEU, to ensure in their respective territories

---

[8]     ECJ Judgment, ¶ 23.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

the application of and respect for EU law, and to take for those purposes any appropriate measure, whether general or particular, to ensure fulfilment of the obligations arising out of the Treaties or resulting from the acts of the institutions of the EU . . .[9]

32.    The ECJ Judgment further referred to the obligation under Article 19 TEU "for the national courts and tribunals and the Court of Justice to ensure the full application of EU law in all Member States and to ensure judicial protection of the rights and individuals under that law",[10] and stated that

> [i]n particular, the judicial system as thus conceived has as its keystone the preliminary ruling procedure provided for in Article 267 TFEU, which, by setting up a dialogue between one court and another, specifically between the Court of Justice and the courts and tribunals of the Member States, has the object of securing uniform interpretation of EU law, thereby serving to ensure its consistency, its full effect and its autonomy as well as, ultimately, the particular nature of the law established by the Treaties . . .[11]

33.    The ECJ answered Questions 1 and 2 set out in ¶ 27 above in the affirmative. The ECJ ultimately did not answer Question 3. The ECJ arrived at its final conclusion in the following terms:

> Articles 267 and 344 TFEU must be interpreted as precluding a provision in an international agreement concluded between Member States, such as Article 8 of the Agreement on encouragement and reciprocal protection of investments between the Kingdom of the Netherlands and the Czech and Slovak Federative Republic, under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept.[12]

34.    Article 8(1) of the Dutch-Slovak BIT states that "[a]ll disputes between one Contracting Party and an investor of the other Contracting Party concerning an investment of the latter

---

[9]     ECJ Judgment, ¶¶ 32-34.
[10]    ECJ Judgment, ¶ 36.
[11]    ECJ Judgment, ¶ 37.
[12]    ECJ Judgment, ¶ 62.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

shall, if possible, be settled amicably". In the event that such a dispute is not settled amicably within six months, Article 8(2) of the BIT provides that "[e]ach Contracting Party hereby consents to submit a dispute referred to in paragraph 1 of this Article to an arbitral tribunal".

35.   With respect to the law applicable to a dispute to be decided by a tribunal established under the Dutch-Slovak BIT, Article 8(6) of that treaty provides as follows:

> The arbitral tribunal shall decide on the basis of the law, taking into account in particular though not exclusively:
>
> -   the law in force of the Contracting Party concerned;
>
> -   the provisions of this Agreement, and other relevant agreements between the Contracting Parties;
>
> -   the provisions of special agreements relating to the investment;
>
> -   the general principles of international law.

36.   Taking into account Articles 8(1) and 8(6) of the Dutch-Slovak BIT set out in ¶¶ 34 and 35 above, the ECJ found as follows in relation to the interpretation and application of EU law by a tribunal established under the Dutch-Slovak BIT:

> 40. Even if, as Achmea in particular contends, that tribunal, despite the very broad wording of Article 8(1), is called on to rule only on possible infringements of the BIT, the fact remains that in order to do so it must, in accordance with Article 8(6) of the BIT, take account in particular of the law in force of the contracting party concerned and other relevant agreements between the contracting parties.
>
> 41. Given the nature and characteristics of EU law mentioned in paragraph 33 above, that law must be regarded both as forming part of the law in force in every Member State and as deriving from an international agreement between the Member States.
>
> 42. It follows that on that twofold basis the arbitral tribunal referred to in Article 8 of the BIT may be called on to interpret or indeed to apply EU

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

law, particularly the provisions concerning the fundamental freedoms, including freedom of establishment and free movement of capital.[13]

37. The conclusion reached in the ECJ Judgment, quoted in ¶ 31 above, was based on the ECJ answering three intermediary questions, which were related to one another. These questions were formulated by the ECJ in the following terms ("Article 8 of the BIT" referred to below is the dispute resolution clause contained in the Dutch-Slovak BIT):

> [1] It must be ascertained, first, whether the disputes which the arbitral tribunal mentioned in Article 8 of the BIT is called on to resolve are liable to relate to the interpretation or application of EU law.[14]
>
> . . . .
>
> [2] It must therefore be ascertained, secondly, whether an arbitral tribunal such as that referred to in Article 8 of the BIT is situated within the judicial system of the EU, and in particular whether it can be regarded as a court or tribunal of a Member State within the meaning of Article 267 TFEU.[15]
>
> . . . .
>
> [3] In those circumstances, it remains to be ascertained, thirdly, whether an arbitral award made by such a tribunal is, in accordance with Article 19 TEU in particular, subject to review by a court of a Member State, ensuring that the questions of EU law which the tribunal may have to address can be submitted to the Court by means of a reference for a preliminary ruling.[16]

38. The ECJ answered the first question in the affirmative, stating that "the arbitral tribunal referred to in Article 8 of the BIT may be called on to interpret or indeed to apply EU law,

---

[13]    ECJ Judgment, ¶¶ 40-42.

[14]    ECJ Judgment, ¶ 39.

[15]    ECJ Judgment, ¶ 43.

[16]    ECJ Judgment, ¶ 50.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

particularly the provisions concerning the fundamental freedoms, including freedom of establishment and free movement of capital".[17]

39.    The ECJ answered the second question in the negative, stating that "a tribunal such as that referred to in Article 8 of the BIT cannot be regarded as a 'court or tribunal of a Member State' within the meaning of Article 267 TFEU, and is not therefore entitled to make a reference to the Court for a preliminary ruling".[18]

40.    While examining the third question referred to in ¶ 37 above, the ECJ found that an arbitral tribunal under the Dutch-Slovak BIT "is itself to choose its seat and consequently the law applicable to the procedure governing judicial review of the validity of the award".[19] According to the ECJ, such potential judicial review "can be exercised by that court only to the extent that national law permits".[20]

41.    In the *Achmea* arbitration, since the arbitral tribunal under the Dutch-Slovak BIT chose to sit in Frankfurt am Main, German law was applicable to the procedure governing judicial review of the validity of the arbitral award. Under the German Code of Civil Procedure, such review is on limited grounds, "in particular the validity of the arbitration agreement under the applicable law and the consistency with public policy of the recognition or enforcement of the arbitral award".[21]

42.    In light of the above, the ECJ, with respect to the third question, made the following findings:

> 56. Consequently, having regard to all the characteristics of the arbitral tribunal mentioned in Article 8 of the BIT . . . , it must be considered that, by concluding the BIT, the Member States parties to it established a mechanism for settling disputes between an investor and a Member State which could prevent those disputes from being resolved in a manner that

---

[17]    ECJ Judgment, ¶ 42.
[18]    ECJ Judgment, ¶ 49.
[19]    ECJ Judgment, ¶ 51.
[20]    ECJ Judgment, ¶ 53.
[21]    ECJ Judgment, ¶¶ 52-53.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

ensures the full effectiveness of EU law, even though they might concern the interpretation or application of that law.

57. It is true that, according to settled case-law of the Court, an international agreement providing for the establishment of a court responsible for the interpretation of its provisions and whose decisions are binding on the institutions, including the Court of Justice, is not in principle incompatible with EU law. The competence of the EU in the field of international relations and its capacity to conclude international agreements necessarily entail the power to submit to the decisions of a court which is created or designated by such agreements as regards the interpretation and application of their provisions, provided that the autonomy of the EU and its legal order is respected . . .

58. In the present case, however, apart from the fact that the disputes falling within the jurisdiction of the arbitral tribunal referred to in Article 8 of the BIT may relate to the interpretation both of that agreement and of EU law, the possibility of submitting those disputes to a body which is not part of the judicial system of the EU is provided for by an agreement which was concluded not by the EU but by Member States.[22]

43.   The Tribunal notes that the implications of the above-quoted passages of the ECJ Judgment are disputed between the Parties, primarily in respect of whether the conclusions of the ECJ Judgment apply to the ECT (which is an agreement concluded by the EU itself as a party, with all of its Member States, and with a number of non-Member States of the EU). These implications, and the Parties' submissions in this regard, shall be addressed in the subsequent Sections.

## III.   THE PARTIES' POSITIONS

44.   As stated at ¶ 24 above, given the substantial overlap, the Tribunal shall address the issues arising out of both the EC 2015 Submission and the ECJ Judgment together. Since the Parties' submissions on the ECJ Judgment reflect their most recent position on the issues relating to EU law, the Tribunal considers them to update their prior submissions in order

---

[22]   ECJ Judgment, ¶¶ 56-58.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

to take account of the ECJ Judgment, and shall primarily focus on those more recent submissions in the following Sections.

45.     In the following Sections, the Tribunal will set out the Parties' respective positions regarding (i) the timeliness of Respondent's jurisdictional objection; (ii) whether EU law is applicable to the Tribunal's determination of its jurisdiction; and (iii) the implications, if any, of the ECJ Judgment for the present proceedings.

### A.     RESPONDENT'S POSITION

### 1.     Timeliness of Respondent's Jurisdictional Objection

46.     Respondent submits that its jurisdictional objection is timely, and disputes Claimants' allegations to the contrary. In this connection, it is Respondent's position that the ECJ Judgment creates a "new procedural situation", inasmuch as the ECJ found that EU law, which is of a mandatory nature, may not be bypassed bilaterally by the EU Member States. Respondent argues that it raised the jurisdictional objection as soon as this new situation occurred.[23]

47.     Further, according to Respondent, the fact that it did not raise this objection specifically on a previous occasion cannot estop Respondent from raising the objection now. This is because Respondent has always disputed the Tribunal's jurisdiction throughout these proceedings, albeit on other grounds, and has specifically asked the Tribunal to determine the EC's arguments in the EC 2015 Submission on an *ex officio* basis. Since the final award has not yet been rendered by the Tribunal in these proceedings, Respondent argues that its objection cannot be considered belated.[24]

---

[23]     Respondent's Second Submission re the ECJ Judgment, ¶¶ 25, 50; Respondent's 2018 Observations, ¶ 27.

[24]     Respondent's Second Submission re the ECJ Judgment, ¶¶ 48-51; Respondent's 2018 Observations, ¶¶ 27-28.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

### 2.  Applicability of EU Law to the Tribunal's Jurisdiction

48.  In Respondent's view, for ECT-based investor-State disputes involving two EU Member States, EU law has to be regarded as part of applicable international law. In this regard, Respondent relies on the finding of the ECJ Judgment that EU law forms part of the domestic law of Member States, but also derives or originates from agreements under international law.[25] In this regard, Respondent disputes Claimants' understanding of EU law as forming part only of domestic or internal law under Article 27 of the Vienna Convention on the Law of Treaties ("**VCLT**"), since EU law carries a dual character.[26]

### 3.  Implications of the ECJ Judgment

49.  Respondent contends that the findings of the ECJ Judgment are not limited to BITs between EU Member States, but must also be applied to multilateral agreements to which EU Member States are party, such as the ECT. The ECJ Judgment, thus, applies *erga omnes*, with *ex tunc* effect, and in respect of all international agreements between EU Member States under which an investor from one Member State may bring arbitration proceedings against another Member State. Respondent stresses the use of the phrase "such as" in the operative part of the ECJ Judgment to submit that the ECJ intentionally kept its findings broad.[27]

50.  In Respondent's view, therefore, Article 26 ECT must be interpreted in a restrictive manner such that it is not applicable in intra-EU investor-State disputes.[28] In this respect, Respondent argues that the applicable law provision in Article 26(6) ECT requires the

---

[25]    Respondent's First Submission re the ECJ Judgment, ¶ 36(a); Respondent's Second Submission re the ECJ Judgment, ¶¶ 32-34, 54; *citing* ECJ Judgment, ¶ 41; **RL-0018**, *AES Summit Generation Limited and AES-Tisza Erömü Kft v. Republic of Hungary*, ICSID Case No. ARB/07/22, Award, 23 September 2010 (same as **CL-0012**), ¶ 7.7.6.

[26]    Respondent's Second Submission re the ECJ Judgment, ¶¶ 54-58; *citing* **RL-0142**, *Achmea B. V. v. Slovak Republic*, UNCITRAL, PCA Case No. 2008-13, Award on Jurisdiction, Arbitrability and Suspension, 26 October 2010 (same as **CL-0142**), ¶ 228; **RL-0132**, *Electrabel S.A. v. Hungary*, ICSID Case No. ARB/07/19, Award, 25 November 2015 ("*Electrabel v. Hungary*"), ¶ 4.195.

[27]    Respondent's First Submission re the ECJ Judgment, ¶¶ 16-18; Respondent's Second Submission re the ECJ Judgment, ¶¶ 10-17; *citing* ECJ Judgment, ¶ 60; Respondent's 2018 Observations, ¶ 10.

[28]    Respondent's 2018 Observations, ¶ 18.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

Tribunal to interpret Article 26 ECT in accordance with EU law, including the ranking of EU primary law above the ECT for all EU Member States.[29]

51.    According to Respondent, the mere possibility that a case before an arbitral tribunal might touch upon EU law was sufficient for the ECJ to assume a relation to the interpretation or application of EU law. Respondent highlights the importance of coherence and uniformity of interpreting EU law, maintained through the system of cooperation in place between the ECJ and the national courts of Member States, i.e., the preliminary ruling procedure in Article 267 TFEU.[30]

52.    It is Respondent's position that the above factors apply even to tribunals resolving intra-EU investor-State disputes under the ECT, since the same situations and risks exist. This is particularly the case since, in its view, the ECJ would not consider an arbitral tribunal sitting under the ECT to be eligible to refer interpretative questions to the ECJ for a preliminary ruling. Respondent also points to the fact that arbitral tribunals under Article 26 ECT may have seats outside the EU, which reduces the likelihood of EU national courts sitting as *juge d'appui*.[31]

53.    Additionally, Respondent contends that the fact that the EU is itself a Contracting Party to the ECT, alongside its Member States (and third States), does not mitigate any of the above risks. Respondent's case is that the ECJ Judgment's carve out for investment agreements concluded by the EU is based on the EU's competence in relation to international relations

---

[29]    Respondent's First Submission re the ECJ Judgment, ¶ 36; Respondent's Second Submission re the ECJ Judgment, ¶ 29.

[30]    Respondent's First Submission re the ECJ Judgment, ¶¶ 20-29; *citing* ECJ Judgment, ¶¶ 33-37, 41, 45, 49, 55, 58, 60; Respondent's 2018 Observations, ¶ 11.

[31]    Respondent's First Submission re the ECJ Judgment, ¶¶ 34-36, 49-52; *citing* the action brought by the Micula brothers to annul the Decision by the European Union Commission of 30 March 2015 on State aid SA.38517 (2014/C) (ex 2014/NN) implemented by Romania [*referring to Ioan Micula*, *Viorel Micula*, *S.C. European Food S.A.*, *S.C. Starmill S.R.L. and S.C. Multipack S.R.L. v. Romania*, ICSID Case No. ARB/05/20, Award, 11 December 2013 (same as **RL-0055**)] [notified under document C(2015) 2112)] (Official Journal of the EU L232, 4 September 2015, p. 43); cf. Official Journal of the EU C68, 22 February 2016, pp. 30-31; *Nordsee Deutsche Hochsee-fischerei GmbH v. Reederei Mond Hochseefischerei Nordstern AG & Co. KG and Reederei Friedrich Busse Hochseefischerei Nordstern AG & Co. KG*, ECJ Case No. C-102/81, Judgment, 23 March 1982, ¶ 14.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

with regard to direct investments, and on the fact that the bodies established to rule on such agreements concluded by the EU would amount to being courts within the EU legal system. According to Respondent's reading of the ECJ Judgment, arbitral tribunals under the ECT are not courts or tribunals within the EU legal system. Such arbitral tribunals therefore cannot ensure the autonomy of the EU, and the primacy of its legal order and the mutual trust in their respective judicial systems, since the ECJ is not certain to oversee the correct application of EU law in the cases heard by them.[32]

54.     According to Respondent, when the ECT was negotiated and signed by the European Communities, the possibility of ECT-based tribunals in intra-EU matters was not covered by the mandate. In this regard, Respondent relies on a Statement issued by the European Communities to the ECT Secretariat pursuant to Article 26(3)(b)(ii) ECT, which it says supports the view that the ultimate power of the ECJ to issue rulings on EU law was not intended to be withdrawn by the ECT.[33]

55.     Respondent submits that the obligation to respect EU primary law applies not only between two EU Member States, but also between an investor from one EU Member State and another EU Member State. Respondent argues that if Vattenfall AB continues to invoke Article 26 ECT as a basis for arbitration, it would be in violation of its obligations under EU law. In Respondent's view, such violation would be attributable to the Kingdom of Sweden which is the sole shareholder of Vattenfall AB.[34]

---

[32]     Respondent's First Submission re the ECJ Judgment, ¶¶ 30-33, 38, 57; Respondent's Second Submission re the ECJ Judgment, ¶¶ 5-8; *citing* ECJ Judgment, ¶¶ 57-58.

[33]     Respondent's First Submission re the ECJ Judgment, ¶¶ 45-48; *citing* Statement submitted by the European Communities to the Secretariat of the Energy Charter pursuant to Article 26(3)(b)(ii) of the ECT, Official Journal of the EU L69/115, 9 March 1998, which provides in part as follows: "[t]he Court of Justice of the European Communities, as the judicial institution of the Communities, is competent to examine any question relating to the application and interpretation of the constituent treaties and acts adopted thereunder, including international agreements concluded by the Communities, which under certain conditions may be invoked before the Court of Justice". For a more complete extract of the EU Statement, *see* ¶ 185 below.

[34]     Respondent's 2018 Observations, ¶¶ 7-8; *citing* **RL-0143**, *Elaine Farrell v. Alan Whitty and others*, ECJ Case No. C-413/15, Judgment, 10 October 2017, ¶¶ 33-34.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

56.     Respondent contests Claimants' submission that it is not possible unilaterally to withdraw consent under Article 25 ICSID Convention (see ¶ 77 below), contending that the implication of the ECJ Judgment is to render Article 26 ECT inapplicable *ex tunc.* Thus, Respondent is not unilaterally withdrawing its offer to arbitrate, but rather such offer, even if deemed to have once existed, has become inapplicable as a consequence of the ECJ Judgment.[35]

57.     Insofar as there is any inconsistency between the ECT and the EU Treaties, Respondent submits that EU law will always prevail over the ECT between EU Member States, in accordance with Article 30(4) VCLT and Article 351 TFEU, the latter being *lex specialis* and *lex posterior* to the conflict rules of the VCLT.[36] Respondent further disputes Claimants' reliance on Article 16(2) ECT, by stating that the conflict rule between two treaties provided in Article 351 TFEU takes precedence over Article 16 ECT, due to the primacy of EU law and also pursuant to Article 30 VCLT, since the TFEU is the later treaty.[37]

58.     Respondent disagrees with the reasoning of a recent award in the case of *Masdar v. Spain*, where an ECT tribunal upheld its jurisdiction in spite of an intra-EU objection. In Respondent's view, the question of the transferability of the ECJ Judgment on ECT-based intra-EU arbitrations would have required an *obiter dictum*, which the ECJ generally abstains from.[38]

---

[35]     Respondent's Second Submission re the ECJ Judgment, ¶¶ 42-47; Respondent's 2018 Observations, ¶ 25.

[36]     Respondent's First Submission re the ECJ Judgment, ¶¶ 59-61; *citing* EC 2015 Submission, ¶¶ 54-69; *European Commission v. Slovak Republic*, ECJ Case No. C-264/09, Judgment, 15 September 2011, ¶ 41; **RL-0132**, *Electrabel v. Hungary*, ¶¶ 4.178-4.190; Respondent's Second Submission re the ECJ Judgment, ¶¶ 35-37; Respondent's 2018 Observations, ¶¶ 4, 21.

[37]     Respondent's Second Submission re the ECJ Judgment, ¶¶ 35-38; *citing Electrabel S.A. v. Republic of Hungary*, ICSID Case No. ARB/07/19, Decision on Jurisdiction, Applicable Law and Liability, 30 November 2012 (same as **CL-0140**) (forming part of **RL-0132**, *Electrabel v. Hungary*, ¶¶ 4.182, 4.188-4.189); *Commission of the European Economic Community v. Italian Republic*, ECJ Case No. 10/61, Judgment, 27 February 1962, p. 10; Respondent's 2018 Observations, ¶ 23.

[38]     Respondent's 2018 Observations, ¶ 16; *quoting* **RL-0144**, *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, ICSID Case No. ARB/14/1, Award, 16 May 2018 ("*Masdar v. Spain*") (same as **CL-0227**), ¶ 682.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

59.     Should the Tribunal assume jurisdiction and ultimately award any payment to Claimants, Respondent contends that this would be contrary to EU law.[39]

## B.     CLAIMANTS' POSITION

### 1.     <u>Timeliness of Respondent's Jurisdictional Objection</u>

60.     Claimants submit that the jurisdictional objection raised by Respondent in its First Submission re the ECJ Judgment dated 4 April 2018 is belated, since it has been submitted for the first time six years after the proceedings were initiated and 18 months after the Hearing.[40] Claimants rely on Respondent's earlier submissions before the Tribunal where Respondent either stated that the Tribunal should consider the arguments in the EC 2015 Submission *ex officio,* or mentioned specifically that the EC's arguments "are not the arguments of Respondent".[41]

61.     According to Claimants, Respondent could and should have made the same jurisdictional objections in accordance with the time limit provided in ICSID Rule 41(1), i.e., together with its Counter-Memorial, or at least after the EC raised the same argument in the EC 2015 Submission. In this connection, Claimants submit that the ECJ Judgment cannot be regarded as a new "fact", and certainly not the one on which Respondent's objection is based. The actual underlying facts on which the objection is based, i.e., the contents of the EU Treaties, have not changed since the commencement of arbitration, and neither have the specific arguments that relate to this jurisdictional objection. Instead, Claimants assert that the ECJ Judgment only confirms the same arguments that could have been raised by Respondent previously. Further, it is Claimants' position that Respondent's jurisdictional

---

[39]     Respondent's 2018 Observations, ¶ 30.

[40]     Claimants' Second Submission re the ECJ Judgment, ¶ 4.1.2.

[41]     Claimants' Second Submission re the ECJ Judgment, ¶ 4.2.3; *citing* Respondent's Responses to Certain Tribunal Questions, 31 August 2016, ¶ 2.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

objection goes beyond the content of the ECJ Judgment and argues for an extension of its relevance to ECT cases.[42]

62. In Claimants' view, Respondent's belated jurisdictional objection should be disregarded pursuant to ICSID Rules 26(3) and 27.[43] Further, Respondent's failure to raise a timely objection cannot, according to Claimants, be bypassed by the Tribunal assessing the same objection *ex officio* under ICSID Rule 41(2), especially when Respondent's failure to raise the jurisdictional objection in time was deliberate.[44]

### 2. Applicability of EU Law to the Tribunal's Jurisdiction

63. Claimants submit that EU law does not form part of international law, and is consequently not part of the applicable law for questions of the Tribunal's jurisdiction. In this regard, Claimants rely on the EC 2018 Submission and the ECJ Judgment to contend that the EC and the ECJ recognise EU law as being "autonomous" in relation to both international law and the domestic laws of the Member States.[45]

---

[42]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 4.2.5-4.27.

[43]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 4.2.8-4.2.9; *citing* **CL-0014**, *Waguih Elie George Siag and Clorinda Vecchi v. Arab Republic of Egypt*, Award, 1 June 2009, ¶¶ 184-188; **CL-0220**, *Ampal-American Israel Corp., EGI-Fund (08-10) Investors LLC, EGI-Series Investments LLC, BSS-EMG Investors LLC, And Mr. David Fischer v. Arab Republic of Egypt*, ICSID Case No. ARB/12/11, Decision on Jurisdiction, 1 February 2016, ¶¶ 176-177; **CL-0221**, *Autopista Concesionada de Venezuela, C.A. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/00/5, Award, 23 September 2003, ¶ 90; **CL-0138**, A. Broches, "The Convention on the Settlement of Investment Disputes between States and Nationals of Other States", 136 Recueil des Cours 331 (1972-II), pp. 365-368; **CL-0139**, C. Schreuer, *The ICSID Convention: A Commentary*, 2nd ed. (2009), Article 41, ¶ 43; *see also* Claimants' First Submission re the ECJ Judgment, ¶ 1.2.3; Claimants' Responses to Certain Tribunal Questions, 31 August 2016, fn. 14.

[44]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 4.2.10-4.2.14; *citing* **CL-0222**, *Vestey Group Limited v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/06/7, Award, 15 April 2016, ¶¶ 148-150; **CL-0223**, C. Schreuer, "Belated Jurisdictional Objections in ICSID Arbitration" 7 Transnational Dispute Management 1 (2010), pp. 17, 20.

[45]    Claimants' First Submission re the ECJ Judgment, ¶¶ 1.3.3-1.3.5; *citing* EC 2018 Submission, ¶ 10; ECJ Judgment, ¶ 33; **CL-0150**, P. Craig and G. De Búrca, *EU Law: Text, Cases, and Materials*, 5th ed. (2011), p. 256; **CL-0151**, J. Weiler and U. Haltern, "The Autonomy of the Community Legal Order – Through the Looking Glass", Harvard International Law Journal 37 (1996), p. 411; **CL-0152**, I. Pernice, "The Treaty of Lisbon: Multilevel Constitutionalism in Action", WHI-Paper 2/09, p. 4; Claimants' 2018 Observations, ¶ 16.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

64.     Claimants' position is that since the ECJ Judgment itself recognises that tribunals constituted under intra-EU BITs are not courts or tribunals of a Member State, such a tribunal cannot be bound by the ECJ Judgment.[46]

65.     Claimants submit that Article 26(6) ECT is relevant only to set out the law governing the merits of a dispute, and not to determine issues of jurisdiction. In Claimants' view, issues of jurisdiction are governed only by the ICSID Convention, interpreted in the light of general principles of international law, and the instruments containing the Parties' consent under international law, which in this case is the ECT. In this regard, Claimants draw a parallel between Article 26(6) ECT and Article 42 ICSID Convention.[47]

66.     In Claimants' view, EU law, including EU law's principles of primacy and sincere cooperation, do not form part of the law applicable to the Tribunal's assessment of its jurisdiction.[48]

67.     In addition, Claimants contend that the ECJ Judgment was based on Article 8 of the Dutch-Slovak BIT, i.e., the applicable law provision of the BIT in consideration in *Achmea v. Slovakia*. That provision required the application of the law of the concerned Contracting Party to the Dutch-Slovak BIT and other relevant agreements between the Contracting Parties, and thus left open the possibility of application of EU law by the tribunal. On the contrary, Claimants argue that Article 26(6) ECT restricts the applicable law before the Tribunal to the ECT and "applicable rules and principles of international law". According to Claimants, this terminology in Article 26(6) ECT does not include EU law, and thus the

---

[46]     Claimants' First Submission re the ECJ Judgment, ¶ 1.1.8.

[47]     Claimants' Second Submission re the ECJ Judgment, ¶¶ 3.5-3.8; *citing* **CL-0060**, P. Pinsolle, "The dispute resolution provisions of the Energy Charter Treaty", International Arbitration Law Review 82 (2007), p. 84; **CL-0219**, C. Schreuer, *The ICSID Convention: A Commentary*, 2nd ed. (2009), Article 42; Claimants' 2018 Observations, ¶¶ 7, 11.

[48]     Claimants' First Submission re the ECJ Judgment, ¶¶ 1.3.6-1.3.7; *quoting* **CL-0217**, *Eiser Infrastructure Limited and Energia Solar Luxembourg S.à.r.l. v. Kingdom of Spain*, ICSID Case No. ARB/13/36, Award, 4 May 2017 ("*Eiser v. Spain*"), ¶ 199; **CL-0218**, *Novenergia II - Energy & Environment (SCA) (Grand Duchy of Luxembourg), SICAR v. Kingdom of Spain*, SCC Case No. 2015/063, Award, 15 February 2018 ("*Novenergia v. Spain*"), ¶ 437; Claimants' Second Submission re the ECJ Judgment, ¶¶ 3.4, 3.9; *citing* **CL-0218**, *Novenergia v. Spain*, ¶ 459.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

Tribunal is neither authorised nor required to apply EU law. In this regard, Claimants also rely on the Tribunal's finding in Procedural Order No. 31 ("**PO 31**") that German domestic law "forms part of the factual matrix of the case".[49]

### 3.    Implications of the ECJ Judgment

68.    It is Claimants' submission that the ECJ Judgment does not apply to the ECT, since its findings are expressly limited to arbitrations under a bilateral investment treaty.[50] Moreover, the EU is a Contracting Party to the ECT, which implies that the EU itself has agreed to and approved the contents of the ECT, including its dispute resolution mechanisms. In this regard, Claimants rely on the express finding of the ECJ Judgment that the Dutch-Slovak BIT in question was "an agreement which was concluded <u>not by the EU</u> but by Member States".[51]

69.    Claimants further characterise Respondent's interpretation of the ECJ Judgment as incorrect and expansive. In their view, the ECJ Judgment does not address the international law validity of arbitration agreements or dispute resolution mechanisms contained in BITs, but only addresses their validity from the EU law perspective. Claimants contend that the incompatibility of a treaty provision with EU law does not automatically lead to the termination of the said treaty provision, or to its retroactive invalidity. Termination of the ECT can only be achieved in compliance with Article 47 ECT and the VCLT.[52]

70.    With respect to the interpretation of Article 26 ECT, Claimants dispute Respondent's reliance on the Statement issued by the European Communities to the ECT Secretariat pursuant to Article 26(3)(b)(ii) ECT (see ¶ 54 above). Specifically, Claimants submit that in that Statement, the European Communities (now the EU) accepted the possibility of

---

[49]    Claimants' First Submission re the ECJ Judgment, ¶¶ 1.4.1-1.4.5; *citing* ECJ Judgment, ¶¶ 40-42; PO 31, ¶ 22; Claimants' 2018 Observations, ¶¶ 13, 36-37.

[50]    Claimants' Second Submission re the ECJ Judgment, ¶ 2.3.1; Claimants' 2018 Observations, ¶ 31.

[51]    Claimants' First Submission re the ECJ Judgment, ¶ 1.5.1; *citing* Article 26(8) ECT; Article 216(2) TFEU; Claimants' Second Submission re the ECJ Judgment, ¶¶ 2.3.1-2.3.4; *citing* ECJ Judgment, ¶ 58 (emphasis added by Claimants).

[52]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 2.2.1-2.2.3; ¶¶ 4.3.1-4.3.2.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

arbitration proceedings under the ECT, even against itself, without making a distinction between investors from EU or non-EU Member States.[53]

71.    Claimants likewise dispute the interpretation of the ECT put forward by the EC, which in their view ignores the plain wording of the Treaty. Claimants argue that the EC incorrectly starts its interpretation with Article 31(3)(c) VCLT ("[t]here shall be taken into account, together with the context: . . . (c) any relevant rules of international law applicable in the relations between the parties").[54] In any event, Claimants contend that EU law cannot be taken into account under Article 31(3)(c) VCLT for the interpretation of the ECT, since the relevant rules of international law must be applicable in relations between all the parties to the treaty being interpreted.[55]

72.    Claimants dispute the EC's reliance upon Articles 1(2), 1(3) and 1(10) ECT to argue that intra-EU arbitration is not contemplated by the ECT. In their view the EC's arguments are unsupported and untenable under international law.[56] Claimants rather endorse the reasoning of the arbitral tribunals in *Charanne v. Spain*, *RREEF v. Spain*, *Eiser v. Spain*, *Blusun v. Italy*, *PV Investors v. Spain*, *Novenergia v. Spain* and *Masdar v. Spain*. Those arbitral tribunals held that a claim brought against an EU Member State relates only to the territorial "Area" of that Member State as defined in Article 1(10) ECT, and is not absorbed

---

[53]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 2.3.5-2.3.7; *citing* Statement submitted by the European Communities to the Secretariat of the Energy Charter pursuant to Article 26(3)(b)(ii) of the ECT, Official Journal of the EU L69/115, 9 March 1998.

[54]    Claimants' 2018 Observations, ¶¶ 46-49; *quoting* **CL-0228**, ICJ, *Competence of the General Assembly for the Admission of a State to the United Nations*, *Advisory Opinion*, ICJ Reports 1950, p. 8.

[55]    Claimants' 2018 Observations, ¶ 51; *citing* **CL-0229**, M. Villiger, *Commentary on the 1969 Vienna Convention on the Law of Treaties* (2009), Article 31, mn. 25.

[56]    Claimants' 2018 Observations, ¶¶ 56-65; *quoting* **CL-0231**, K. Schmalenbach, in Dörr/Schmalenbach (eds.) *The Vienna Convention on the Law of Treaties: A Commentary* (2012), Article 26, mn. 57; *also citing* **CL-0234**, The Energy Charter Treaty (with Incorporated Trade Amendment) and Related Documents (2014), "Decision 1 with respect to the Energy Charter Treaty", p. 16; **CL-0227**, *Masdar v. Spain* (same as **RL-0144**), ¶ 302.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

into the "Area" of the EU. Under this reasoning, the "Area" of the EU as a whole is only concerned when a claim is brought against the EU itself.[57]

73.     Moreover, Claimants submit that even if the ECJ Judgment were to apply to the ECT, the ECT takes precedence over Articles 267 and 344 TFEU. In this regard, Claimants point to the absence of any "disconnection clause" in the ECT, which they had also highlighted in Claimants' 2016 Observations. A disconnection clause, in EU treaty practice, is included to ensure that the provisions of a mixed agreement only apply vis-à-vis third parties and not as between EU Member States. Moreover, Claimants rely on Article 16 ECT, which, according to Claimants, specifically ensures that the investor's right to dispute resolution is maintained, regardless of the existence of other (potentially conflicting) commitments.[58]

74.     Likewise, Claimants argue that the EC ignores the relevant rules of international law in putting forward its conflict analysis. In Claimants' view, Article 351(1) TFEU cannot be applied *a contrario* to deprive individual investors of their rights under the ECT, since that provision applies "where only rights and obligations of Member States are at stake".[59]

75.     Claimants also dispute Respondent's arguments relating to a "harmonious interpretation" of the ECT and EU law, stating that this argument has nothing to do with the interpretation of a provision of the ECT, but instead amounts to removing the right to dispute resolution. In Claimants' view, no harmonious interpretation is required, nor are Articles 30 or 41(1)(b) VCLT applicable, since Article 16 ECT specifically and explicitly governs the question of

---

[57]     Claimants' 2018 Observations, ¶¶ 66-68; *citing PV Investors v. Kingdom of Spain*, PCA Case No. 2012-14, Preliminary Award on Jurisdiction, 13 October 2014, ¶¶ 178-180, *as quoted in* **CL-0227**, *Masdar v. Spain* (same as **RL-0144**), ¶¶ 315-324; **CL-0218**, *Novenergia v. Spain*, ¶¶ 449-455 and 464.

[58]     Claimants' First Submission re the ECJ Judgment, ¶¶ 1.6.1-1.6.7; *citing* **CL-0160**, *RREEF Infrastructure (G.P.) Limited and RREEF Pan-European Infrastructure Two Lux S.à.r.l. v. Kingdom of Spain*, ICSID Case No. ARB/13/30, Decision on Jurisdiction, 6 June 2016 ("*RREEF v. Spain*"), ¶ 75.

[59]     Claimants' 2018 Observations, ¶¶ 87-88, 91; *quoting* EC 2018 Submission, ¶ 83; *also quoting Attorney General v. Burgoa*, ECJ Case No. 812/79, Judgment, 14 October 1980.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

which potentially applicable rules take precedence over the other in the case of two conflicting treaties.[60]

76.    In any event, Claimants argue that the ECT has not been "amended" by EU law under Article 41 VCLT. Further, Claimants contend that Article 30 VCLT does not invalidate Article 26 ECT, *inter alia*, because there is no identity of subject matter between the treaties, no incompatibility between the provisions, and the ECT is the later treaty and therefore *lex posterior*.[61]

77.    In addition, Claimants submit that their contentions are supported by the fact that the consent to settle disputes given by Germany under the ECT is "unconditional" pursuant to Article 26(3)(a) ECT, and such consent cannot be withdrawn unilaterally as per Article 25(1) ICSID Convention. Claimants also argue that pursuant to Article 27 VCLT, Respondent cannot escape its international obligations by relying on its domestic law, including EU law.[62]

78.    Claimants contend that the EC fails to read the ECJ Judgment in the context of the Opinion of Advocate General Wathelet, which did not find any incompatibility between the ECT and EU law. In their view, if the ECJ held a different view, it would have indicated as

---

[60]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 4.3.13-4.3.16; Claimants' 2016 Observations, §§ C.2-C.3; *citing* **RL-0132**, *Electrabel v. Hungary*, ¶ 4.130; **CL-0166**, K. Odendahl, in Dörr/Schmalenbach (eds.), *The Vienna Convention on the Law of Treaties: A Commentary* (2012), Article 30, mn. 16; *see also* Claimants' Responses to Certain Tribunal Questions, 31 August 2016, ¶¶ 93-97; Claimants' 2018 Observations, ¶ 93.

[61]    Claimants' 2018 Observations, ¶¶ 97-105; *citing* **CL-0229**, M. Villiger, *Commentary on the 1969 Vienna Convention on the Law of Treaties* (2009), Article 30, mn. 5; **CL-0238**, J. Klabbers, *Reinventing the Law of Treaties: The Contribution of the EC Courts* (1999), p. 85; **CL-0239**, C. Borgen, "Resolving Treaty Conflicts", George Washington International Law Review 573 (2005), p. 587.

[62]    Claimants' First Submission re the ECJ Judgment, ¶ 1.6.8; Claimants' Second Submission re the ECJ Judgment, ¶¶ 4.3.3-4.3.9; *citing* **RL-0038**, *Plama v. Bulgaria*, Decision on Jurisdiction, 8 February 2005, ¶ 141; **CL-0224**, T. Braun, "Globalization-driven Innovation: The Investor as a Partial Subject in Public International Law – An Inquiry into the Nature and Limits of Investor Rights", New York University School of Law – Jean Monnet Working Paper 04/13, pp. 1-2; **CL-0225**, C. Schreuer, *The ICSID Convention: A Commentary* (2009), 2nd ed., Article 25, ¶¶ 598, 628.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

much.[63] Claimants draw support from the recent award by the arbitral tribunal in *Masdar v. Spain*, which followed a similar line of reasoning.[64]

79.    Claimants contest the EC's arguments, which they consider to be wrong as a matter of EU law. According to Claimants, the ECT is an act of the EU institutions and forms an integral part of EU law. It follows, in their view, that the ECT is presumed lawful and legally effective and Article 26 thereof may not be disregarded or set aside. Further, they argue that the ECJ does not have the power under EU law to declare Article 26 ECT invalid.[65]

## IV.    THE EC'S OBSERVATIONS

80.    In this Section the Tribunal summarises the EC's observations regarding (i) the applicability of EU Law for the Tribunal's assessment of its jurisdiction; and (ii) the implications of the ECJ Judgment for these proceedings.

### A.    APPLICABILITY OF EU LAW FOR THE TRIBUNAL'S JURISDICTION

81.    In the EC's view, EU law forms part of the "applicable rules and principles of international law" under Article 26(6) ECT, and the "relevant rules of international law applicable in the relations between the parties" pursuant to Article 31(3)(c) VCLT. The EC states that nothing in the ECT indicates that it operates as *lex specialis* vis-à-vis EU law. Rather, reference to EU law should form a part of the task of interpretation of the ECT pursuant to Article 31(3)(c) VCLT. For this proposition, the EC relies on Article 38 of the Statute of

---

[63]    Claimants' 2018 Observations, ¶¶ 39-40; *quoting Slowakische Republik v. Achmea BV*, ECJ Case No. C-284/16, Opinion of Advocate General Wathelet, 19 September 2017, ¶ 43.

[64]    Claimants' 2018 Observations, ¶ 41; *quoting* **CL-0227**, *Masdar v. Spain* (same as **RL-0144**), ¶¶ 678-682.

[65]    Claimants' 2018 Observations, ¶¶ 125-131; *quoting Maximillian Schrems v. Data Protection Commissioner*, ECJ Case No. C-362/14, Judgment, 6 October 2015, ¶ 52; *Western Sahara Campaign UK v. Commissioners for Her Majesty's Revenue and Customs and Secretary of State for Environment, Food and Rural Affairs*, ECJ Case No. C-266/16, Judgment, 27 February 2018 ("*Western Sahara Campaign*"), ¶ 50; *Yassin Abdullah Kadi and Al Barakaat International Foundation v. Council of the European Union and Commission of the European Communities*, ECJ Case No. C-402/05 P, Judgment, 3 September 2008, ¶ 286.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

the International Court of Justice, the jurisprudence of the International Court of Justice and academic writing.[66]

82.     Further, according to the EC, the fact that EU law is part of international law, and is therefore applicable as such under Article 26(6) ECT for matters of validity of the arbitration and the merits, has not been disputed by investment arbitral tribunals after the award in *Electrabel v. Hungary.* The disputed issue, especially between the tribunals in *Electrabel v. Hungary* and *RREEF v. Spain,* instead concerns whether the ECT prevails over EU law or vice-versa.[67]

83.     In this regard, the EC's position is that the process of "systemic coherence" requires the ECT to be interpreted in such a way as to avoid any conflict with EU law, and not the other way around. For that purpose, according to the EC, an interpretation of Article 26 ECT taking into account the general principle of autonomy of EU law (Articles 4(3) and 19 TEU and Articles 267 and 344 TFEU) leads to the conclusion that there is no offer to arbitrate by Germany to Swedish investors.[68]

## B.     IMPLICATIONS OF THE ECJ JUDGMENT

84.     In the EC's view, the ECJ Judgment, which confirms the position that the EC took in the EC Application and the EC 2015 Submission, renders the offer to arbitrate in Article 26

---

[66]     EC 2018 Submission, ¶¶ 26, 36-42; **EC-0001**, A. Parra, "Applicable Law in Investor-State Arbitration", in Rovine (ed.), *Contemporary Issues in International Arbitration and Mediation: The Fordham Papers* (2008), pp. 7-8; **EC-0002**, T. Eilmansberger, "Bilateral Investment Treaties and EU Law", 46 Common Market Law Review (2009), p. 421; **EC-0003**, H. Ascencio, "Article 31 of the Vienna Conventions on the Law of Treaties and International Investment Law", 31 ICSID Review 2 (2016), p. 371; *Tunisia v. Libyan Arab Jamahiriya (Case Concerning Application for Revision and Interpretation of the Judgment of 24 February 1982 in the Case Concerning the Continental Shelf)*, Merits, Judgment, 10 December 1985, ICJ Reports 15(1985), ¶ 43.

[67]     EC 2018 Submission, ¶¶ 36-42; *citing Electrabel v. Hungary* (same as **RL-0132**), ¶¶ 4.111-4.199; *Charanne B.V. and Construction Investments S.A.R.L. v. Kingdom of Spain*, SCC Case No. 062/2012, Award, 21 January 2016 ("*Charanne v. Spain*") (same as **RL-0116**), ¶ 439; *RREEF v. Spain* (same as **CL-0160**), ¶¶ 74, 75, 87.

[68]     EC 2018 Submission, ¶¶ 42-45; *citing Oil Platforms (Iran v. USA)*, Merits, Judgment, 6 November 2003, ICJ Reports 161 (2003), ¶¶ 41 and 78; *Council of the European Union v. Front populaire pour la libération de la saguia-el-hamra et du rio de oro (Front Polisario)*, ECJ Case No. C-104/16 P, Judgment, 21 December 2016, ¶ 86; *Commission of the European Communities v. Federal Republic of Germany*, ECJ Case No. C-61/94, Judgment, 10 September 1996, ¶ 52; *Western Sahara Campaign*, ¶¶ 43-46.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

ECT "inapplicable" or "invalid".[69] According to the EC, this is on the ground of the general principle of EU law of autonomy of the EU legal order, which is enshrined in the liberally interpreted Article 344 TFEU, and on the keystone of the EU judicial system, i.e., the preliminary ruling procedure, provided in Article 267 TFEU. In addition, the EC relies on Articles 4(3) and 19 TEU for the principle of autonomy of EU law.[70]

85.    It is the EC's position that the ECJ Judgment applies equally to intra-EU investor-State arbitrations under the ECT since (i) intra-EU investment arbitral tribunals are not "national courts or tribunals" in the sense of Article 267 TFEU, which proposition applies to tribunals under the ECT as well; and (ii) there is no complete review of arbitral awards by such tribunals through national courts within the EU, even less so for ICSID arbitrations. This is the case even for ongoing investment cases, since the ECJ's judgments, unless specifically limited in time, apply *ex tunc.*

86.    Further, concerning the fact that the EU is a Contracting Party to the ECT, the EC submits that (i) the ECJ, in its findings in the ECJ Judgment, intended to carve out only those international courts that are set up by agreements signed by the EU that respect the autonomy of the EU and its legal order; and (ii) the Tribunal has been set up as a result of bilateral commitments between Sweden and Germany, and not as a result of the EU's participation in the ECT.[71]

87.    Regarding the interaction between the ECT and the EU Treaties, i.e., the TEU and the TFEU, the EC offers two solutions: first, a harmonious interpretation of the ECT in conformity with EU law, or second, in the event of a conflict, the primacy of EU law as *lex posterior.*

---

[69]     EC 2018 Submission, ¶ 2.

[70]     EC 2018 Submission, ¶¶ 9-10, 25; *citing* ECJ Judgment, ¶¶ 32, 36-37.

[71]     EC 2018 Submission, ¶¶ 26-33; *citing Association Vent De Colère! Fédération nationale and Others v. Ministre de l'Écologie, du Développement durable, des Transports et du Logement and Ministre de l'Économie, des Finances et de l'Industrie*, ECJ Case No. C-262/12, Judgment, 19 December 2013, ¶¶ 39-43.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

88.    With respect to the harmonious interpretation of the ECT, the EC, in addition to its submission that EU law forms part of relevant rules of international law under Article 31(3)(c) VCLT (see ¶ 81 above), also puts forth an interpretation on the basis of other means of interpretation under Articles 31 and 32 VCLT. In this regard, the EC relies, *inter alia*, on (i) the definition of "Contracting Party" under Article 1(2) ECT, which includes a Regional Economic Integration Organization ("**REIO**") such as the EU; (ii) the definition of an REIO in Article 1(3) ECT; and (iii) other provisions relating specifically to an REIO, such as Article 36(7) ECT and Article 1(10) ECT, the latter of which defines the term "Area" with respect to an REIO. On this basis, the EC states that the ECT recognises that the relationships between Member States to an REIO and the REIO are governed by the provisions of the agreement establishing the REIO itself. Further, according to the EC, in light of these provisions of the ECT, investments within the REIO are investments within the same Contracting Party, to which the offer to arbitrate under Article 26 ECT does not apply. In this regard, the EC also criticises the interpretation of Article 26 ECT offered by certain arbitral tribunals for depriving certain provisions of the ECT of their full effect or importance.[72]

89.    Moreover, the EC derives context to support its interpretation from the Statement made by the European Communities under Article 26(3)(b)(ii) ECT (see ¶ 54 above), specifically stating that "[t]he Communities and the Member States will . . . determine among them who is the respondent party to arbitration proceedings initiated by an Investor of **another Contracting Party**" (emphasis added by the EC). The use of the term "another", according to the EC, restricts the offer to arbitrate in Article 26 ECT to investors from non-EU Member States. Additionally, the context for interpretation of Article 26 ECT is also derived by the EC from the fact that the EU and its Member States negotiated the ECT as

---

[72]    EC 2018 Submission, ¶¶ 47-60; criticizing the interpretations of the tribunals in, *inter alia*, *Charanne v. Spain* (same as **RL-0116**); *RREEF v. Spain* (same as **CL-0160**).

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

one single block, pursuant to the EU law principle of unity in the international representation of the EU.[73]

90.    The EC does not consider the absence of a "disconnection clause" in the ECT to affect its interpretation of Article 26 ECT, since a "disconnection clause" is "superfluous" in respect of intra-EU relations between Member States, even more so since the EU is already a Contracting Party to the ECT.[74]

91.    The EC's alternative proposal, with respect to the rules relating to conflict between treaties, is that the conflict rule in Article 351(1) TFEU does not apply to multilateral treaties where only the rights and obligations of EU Member States is at stake. Instead a "special conflict rule", i.e., the general principle of primacy of EU law, applies with the result that the EU Treaties take absolute precedence over Article 26 ECT.[75] The EC also contends that the same result is achieved pursuant to Articles 30 (successive treaties) and 41 (modification of multilateral treaties) VCLT, since either (i) Germany and Sweden's reaffirmation of Articles 4(3) and 19 TEU and Articles 267 and 344 TFEU after their ratification of the ECT

---

[73]    EC 2018 Submission, ¶¶ 61-72; *citing European Commission v. Kingdom of Sweden*, ECJ Case No. C-246/07, Judgment, 20 April 2010, ¶ 73; **EC-0004**, E. Neframi, "The Duty of Loyalty: Rethinking its Scope through its Application in the Field of EU External Relations" 47 Common Market Law Review 2 (2010), p. 335, fn. 45; **EC-0005**, P. Kuijper, "The Conclusion and Implementation of the Uruguay Round Results by the European Community", 6 European Journal of International Law 1 (1995), pp. 228-229; **EC-0006**, J. Basedow, "The European Union's International Investment Policy. Explaining Intensifying Member State Cooperation in International Investment Regulation", PhD Thesis, The London School of Economics and Political Science (2014), pp. 136, 156, 164, 166; *Electrabel v. Hungary* (same as **RL-0132**), ¶¶ 4.130-4.142; Council and Commission Decision of 23 September 1997 on the Conclusion, by the European Communities, of the Energy Charter Treaty and the Energy Charter Protocol on Energy Efficiency and Related Environmental Aspects, Official Journal of the EU L69, 9 March 1998, p. 1; EC 2015 Submission, ¶¶ 44-67.

[74]    EC 2018 Submission, ¶¶ 73-77; *citing* **EC-0007**, M. Smrkolj, "The Use of the 'Disconnection Clause' in International Treaties: What does it tell us about the EC/EU as an Actor in the Sphere of Public International Law?", Paper presented at the GARNET Conference, "The EU in International Affairs", Brussels, 24-26 April 2008; **EC-0008**, R. Oen, *Internationale Streitbeilegung im Kontext gemischter Verträge der Europäischen Gemeinschaft und ihrer Mitgliedstaaten* (2005), p. 72; **EC-0009**, C. Herrmann, "Rechtsprobleme der parallelen Mitgliedschaft von Völkerrechtssubjekten in Internationalen Organisationen – Eine Untersuchung am Beispiel der Mitgliedschaft der EG und ihrer Mitgliedstaaten in der WTO" in Bauschke et al. (eds.), *Pluralität des Rechts – Regulierung im Spannungsfeld der Rechtsebenen* (2003), p. 159.

[75]    EC 2018 Submission, ¶¶ 82-85; *relying, inter alia, on European Commission v. Slovak Republic*, ECJ Case No. C-264/09, Judgment, 15 September 2011, ¶ 41; *Commission of the European Communities v. Republic of Austria*, ECJ Case No. C-147/03, Judgment, 7 July 2005, ¶ 58; *Electrabel v. Hungary* (same as **RL-0132**), ¶¶ 4.183.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

can be construed as an amendment for the purposes of Article 41 VCLT; or (ii) the TEU and TFEU constitute "later treaties" on the same subject matter as the ECT, and the ECT applies only to the extent it is compatible with these later treaties. Similarly, Article 16 ECT does not inhibit this conclusion, since it is only a rule of "interpretation" and not one of conflict and, in any event is overruled by a later conflict rule in Article 351 TFEU, together with the principle of primacy of EU law.[76]

## V.    THE TRIBUNAL'S CONSIDERATIONS

92.    The Tribunal has considered not only the positions of the Parties as summarised in this Decision, but also the numerous detailed arguments made in their written submissions. To the extent that these arguments are not referred to expressly, they have been subsumed into the Tribunal's analysis.

93.    The Tribunal notes that neither the EC, nor the EU for that matter, is a Party to these proceedings. As such, the Tribunal takes account of the EC's observations as and when it deems appropriate in the context of the issues raised by the Parties.

94.    The Tribunal will commence its consideration of the Parties' submissions by examining Claimants' challenge to the timeliness of Respondent's jurisdictional objection relating to the ECJ Judgment in Section A below. Thereafter, in Section B the Tribunal shall consider the law applicable to the Tribunal's assessment of its own jurisdiction. In Section C below, the Tribunal carries out its interpretation of the disputed provisions of the ECT, and in Section D it deals with the issue of any potentially conflicting provisions under international law. Section E addresses the enforceability of this Decision.

---

[76]    EC 2018 Submission, ¶¶ 86-96; *citing* United Nations International Law Commission, M. Koskenniemi, *Fragmentation of International Law: Difficulties Arising from the Diversification and Expansion of International Law* (2006), ¶¶ 21 *et seq.*

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

## A.    TIMELINESS OF RESPONDENT'S JURISDICTIONAL OBJECTION RELATING TO THE ECJ JUDGMENT

95.    Claimants challenge the timeliness of Respondent's jurisdictional objection under ICSID Rule 41(1) on the ground that the ECJ Judgment cannot be regarded as a "fact" within the meaning of that Rule. Further, according to Claimants, in any event, the ECJ Judgment is not the fact on which Respondent's objection is based, since Respondent's jurisdictional objection goes beyond the contents of the ECJ Judgment and argues for extending its relevance to ECT cases.[77]

96.    Respondent disputes Claimants' allegations, submitting that the ECJ Judgment creates a "new procedural situation". Further, according to Respondent, not raising this objection specifically on a previous occasion cannot estop Respondent from raising the objection now, since Respondent never acquiesced to the Tribunal's jurisdiction in the first place.[78]

97.    The Tribunal considers it appropriate to reproduce ICSID Rule 41, entitled "Preliminary Objections", in relevant part (emphasis added):

> (1) Any objection that the dispute or any ancillary claim is not within the jurisdiction of the Centre or, for other reasons, is not within the competence of the Tribunal shall be made <u>as early as possible</u>. A party shall file the objection with the Secretary-General no later than the expiration of the time limit fixed for the filing of the counter-memorial, or, if the objection relates to an ancillary claim, for the filing of the rejoinder – <u>unless the facts on which the objection is based are unknown to the party at that time</u>.

> (2) The Tribunal may on its own initiative consider, at any stage of the proceeding, whether the dispute or any ancillary claim before it is within the jurisdiction of the Centre and within its own competence.[79]

---

[77]    Claimants' Second Submission re the ECJ Judgment, ¶¶ 4.2.1-4.2.14.

[78]    Respondent's Second Submission re the ECJ Judgment, ¶¶ 25, 48-51.

[79]    The Tribunal is aware of the distinction in Article 41(1) ICSID Convention between "the jurisdiction of the Centre" and "the competence of the Tribunal". Since that distinction is not relevant in the present case, the Tribunal uses the terms "jurisdiction" and "competence" interchangeably, as the Parties have done in their submissions.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

98.     The Tribunal considers that the ECJ Judgment amounts to a new situation that entitled Respondent to raise its jurisdictional objection in its First Submission re the ECJ Judgment dated 4 April 2018. Respondent is not estopped from raising this jurisdictional objection under ICSID Rule 41, for the following reasons.

99.     The Tribunal does not agree with Claimants' contention that the ECJ Judgment does not constitute a "fact" under ICSID Rule 41(1). What constitutes a "fact" under ICSID Rule 41(1) is the very existence of the ECJ Judgment, which was unknown to the Parties prior to the Judgment's issuance on 6 March 2018. Whether the ECJ Judgment has any legal ramifications for the present case is a separate issue, which the Tribunal shall examine in subsequent Sections. However, the nature of the ECJ Judgment as a legal instrument does not exclude it from being a new "fact" for the purposes of ICSID Rule 41(1).

100.    Moreover, the fact that the ECJ Judgment refers to laws that already existed when the Tribunal was constituted does not exclude the Judgment itself from being a "new" circumstance.

101.    For the same reason, the Tribunal disagrees with Claimants' argument that the ECJ Judgment is not the fact on which Respondent's jurisdictional objection is based. Again, the factual existence of the ECJ Judgment came into being only on 6 March 2018, after which Respondent raised its jurisdictional objection at the first opportunity it was provided by the Tribunal. The legal implications of the ECJ Judgment for an arbitration under the ECT, if any, are a separate matter, and shall be examined by the Tribunal below.

102.    The opportunity to comment upon the ECJ Judgment was afforded to the Parties by the Tribunal immediately after the ECJ Judgment was rendered. As mentioned in ¶ 15 above, in the ICSID Secretariat's letter to the Parties on behalf of the Tribunal dated 7 March 2018, the Parties were specifically invited by the Tribunal to comment on "the implications of the [ECJ] Judgment on our case, if any". Accordingly, the Parties were specifically invited to comment on whether the ECJ Judgment extends or applies to the present arbitration that is brought under the ECT. Thus, Claimants' submission that Respondent's jurisdictional objection goes beyond the contents of the ECJ Judgment by extending its scope to the ECT

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

is not convincing. The Tribunal considers Respondent's jurisdictional objection to relate to the ECJ Judgment, without prejudice to the Tribunal's ultimate determination on the merits of the objection.

103.    In conclusion, the Tribunal finds Respondent's jurisdictional objection relating to the ECJ Judgment to be a timely one. The objection is based on a new fact, the ECJ Judgment, which was unknown to the Parties prior to 6 March 2018. Respondent raised its jurisdictional objection "as soon as possible" after the ECJ Judgment was released and, thus, satisfied the procedure under ICSID Rule 41(1). Consequently, Claimants' request for Respondent's jurisdictional objection relating to the ECJ Judgment to be disregarded pursuant to ICSID Rules 26(3) and 27 is rejected.

104.    Given that Respondent has made a timely jurisdictional objection, it is no longer strictly necessary to examine the Parties' submissions concerning the scope of the Tribunal's power to consider the EC's submissions on an *ex officio* basis. However, the Tribunal notes that in any event, irrespective of the timeliness of Respondent's objection, the Tribunal considers that it has broad power to examine issues relating to its jurisdiction on an *ex officio* basis. In this respect, ICSID Rule 41(2) is the basis of a tribunal's power to assess, on "its own initiative . . . at any stage of the proceeding, whether the dispute or any ancillary claim before it is within the jurisdiction of the Centre and within its own competence".

105.    Claimants have rightly submitted that ICSID Rule 41(2) could apply in a situation where a respondent has not raised a jurisdictional objection, but the tribunal nevertheless considers it appropriate to examine its own competence.[80] However, that is not the only situation that ICSID Rule 41(2) applies to. In general, the provision is the repository of an ICSID tribunal's broad power to consider any issues relating to its jurisdiction on an *ex officio* basis, and at any stage of the proceedings.

106.    In light of the above, the Tribunal notes that in respect of the issue of intra-EU investor-State arbitration under the ECT and any implications of EU law, the Tribunal would have

---

[80]    Claimants' Responses to Certain Tribunal Questions, 31 August 2016, ¶¶ 20-21.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

exercised its power to examine its jurisdiction *ex officio*, even in the absence of a jurisdictional objection by Respondent.

107.   Accordingly, the Tribunal proceeds in the subsequent Sections to make its determinations on the issue of intra-EU investor-State arbitration under the ECT and any implications of EU law, taking into account the Parties' submissions concerning Respondent's jurisdictional objection, together with the EC's observations, and the Parties' comments thereon.

### B.   APPLICABLE LAW

108.   In order to determine whether the ECJ Judgment has legal implications for this Tribunal's jurisdiction, as contended by Respondent, the Tribunal must refer back to the source of its jurisdiction. As a first step, it is necessary to decide upon the applicable law when examining the Tribunal's jurisdiction, which is in dispute between the Parties.

109.   At the outset, the Tribunal recalls the distinction between the law applicable to the merits of a dispute and the law applicable to the jurisdiction of the Tribunal, which notably concerns the validity and scope of the arbitration agreement.

110.   Respondent contends that, by virtue of Article 26(6) ECT and Article 42(1) ICSID Convention, the Tribunal must determine its jurisdiction in accordance with the ECT and "applicable rules and principles of international law". In its view, this includes EU law, and the ECJ Judgment itself. Claimants, on the other hand, argue that the stipulation in Article 26(6) only concerns the law applicable to the merits of the dispute. According to Claimants, the Tribunal's jurisdiction is determined only by reference to the ICSID Convention, interpreted in the light of general principles of international law, and the instrument(s) containing the consent to arbitration, i.e., the ECT and the Request for Arbitration.

111.   In its observations, the EC also takes a view that EU law becomes applicable to the Tribunal's jurisdiction by operation of Article 31(3)(c) VCLT, which requires the Tribunal

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

to interpret the ECT taking into account "any relevant rules of international law applicable in the relations between the parties".

112. To decide whether EU law is applicable in the context of the Tribunal's determination of its jurisdiction, in the following Sections the Tribunal will first examine Article 26(6) ECT and Article 42(1) ICSID Convention, before turning to Article 26 ECT generally. The Tribunal will then address whether, and if so, how, EU law and the ECJ Judgment form part of the law applicable to the Tribunal's jurisdiction, specifically in the context of Article 31(3)(c) VCLT.

### 1.    Article 26(6) ECT and Article 42(1) ICSID Convention

113. The Tribunal will first consider Respondent's assertion that EU law and the ECJ Judgment apply under Article 26(6) ECT and Article 42(1) ICSID Convention.

114. Article 26(6) ECT provides that "[a] tribunal established under paragraph (4) shall decide the <u>issues in dispute</u> in accordance with this Treaty and applicable rules and principles of international law" (emphasis added).

115. To understand the meaning of "issues in dispute", it is important to look at Article 26(1) ECT, which provides insight into a "dispute" under the ECT. Article 26(1) ECT states that (emphasis added):

> <u>Disputes between a Contracting Party and an Investor</u> of another Contracting Party relating to an Investment of the latter in the Area of the former, <u>which concern an alleged breach of an obligation of the former under Part III</u> shall, if possible, be settled amicably.

116. Thus, as described in Article 26(1) ECT, the "dispute" or "issues in dispute" in Article 26(6) ECT, or in any other part of Article 26 ECT, are those that concern Part III of the ECT. Part III of the ECT sets out the substantive standards of treatment and protection to which investments are entitled. It does not include the provisions on dispute settlement, which appear in Part V of the ECT. Accordingly, the provision concerning the applicable law set

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

out in Article 26(6) is not relevant to issues concerning the dispute settlement clause in Article 26 ECT.

117. To understand Article 26(6) in terms of the ICSID Convention, it is a choice of law under Article 42(1) ICSID Convention. Article 42(1) provides as follows (emphasis added):

> The Tribunal shall decide a dispute in accordance with <u>such rules of law as may be agreed by the parties</u>. In the absence of such agreement, the Tribunal shall apply the law of the Contracting State party to the dispute (including its rules on the conflict of laws) and such rules of international law as may be applicable.

118. Article 42(1) likewise only concerns the law applicable to the merits of a dispute. The phrase "decide a dispute" points to the application of those rules of law in order to decide the dispute between the parties, and the ordinary meaning of that phrase (pursuant to Article 31 VCLT) is that it refers to the substantive dispute between the parties.

119. Under the ICSID Convention, a jurisdictional objection is clearly demarcated from the merits of the dispute. When Article 42(1) refers to the applicable law when the Tribunal "decides a dispute", it therefore does not include a decision on any jurisdictional objection. The view that Article 42 ICSID Convention addresses the substantive law only, and not questions of jurisdiction or procedure, is also held by Professor Schreuer, whose commentary is relied upon by Claimants.[81]

120. Since the Parties have made an agreement in Article 26(6) ECT regarding the applicable law, the default rule in the second sentence of Article 42(1) ICSID Convention does not come into operation. This default rule provides that in the absence of the parties' agreement, the applicable law to the merits will be the domestic law of the Contracting State party to the dispute and such rules of international law as may be applicable. As such, in the present

---

[81]    **CL-0219**, C. Schreuer, *The ICSID Convention: A Commentary*, 2nd ed. (2009), Article 42.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

case, domestic law only forms part of the factual matrix of the case, as already determined by the Tribunal in PO 31.[82]

121.    In conclusion, Article 26(6) ECT, either viewed through Article 42(1) ICSID Convention or interpreted independently of the ICSID Convention, applies only to the merits of a dispute between the Parties. It does not apply to issues or questions relating to the Tribunal's jurisdiction. For this reason, Respondent's argument that Article 26(6) brings EU law and the ECJ Judgment into application in the context of the Tribunal's jurisdiction must fail.

122.    Since Article 26(6) is not relevant to the present question of the Tribunal's jurisdiction, the Tribunal does not consider it necessary to address Claimants' submission that the phrase "rules and principles of international law" in Article 26(6) ECT refers only to customary international law or general principles of international law, to the exclusion of treaties.[83]

## 2.    **Article 26 ECT**

123.    Having decided that Article 26(6) ECT is of no assistance for the purposes of deciding upon its jurisdiction, in this Section the Tribunal will examine the instruments that it does consider to apply to the assessment of its jurisdiction.

124.    The Tribunal's competence to decide the present dispute is derived from consent of the Parties to arbitrate pursuant to the ECT. In the absence of any choice of law clause for the law applicable to the Tribunal's jurisdiction, it follows that questions of the Tribunal's jurisdiction must be answered under the terms of the ECT itself, and in particular Article 26 thereof.

125.    In order to derive meaning from Article 26 ECT, like all treaties, it must be interpreted in accordance with international law. These are the principles of international law relating to treaty interpretation, application, and other aspects of treaties, which render the ECT

---

[82]    PO 31, ¶ 22.
[83]    Claimants' 2018 Observations, ¶¶ 14-16; 37-38.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

workable. They are reflected in the VCLT, and provide the framework through which all treaties are interpreted and applied.

126. In the present case, the provisions of the ICSID Convention, and in particular Article 25, also refer to the available arbitration mechanism. However, the terms of the ICSID Convention do not add to the Tribunal's jurisdiction, but rather provide its "outer limits". The relevance of the ICSID Convention arises because of the investor's choice under Article 26(4)(a) ECT to arbitrate a dispute against a Contracting Party of the ECT. The investor has four options: arbitration under (i) the ICSID Convention; (ii) the ICSID Additional Facility Rules; (iii) UNCITRAL; and (iv) the Arbitration Institute of the SCC. In the present case, Claimants have opted to submit the dispute for resolution under the ICSID Convention.

127. In contrast, in cases where the investor opts for another forum, such as an *ad hoc* UNCITRAL arbitration or arbitration under the SCC Rules, that tribunal's jurisdiction may be circumscribed by the local arbitration law of the place of arbitration. The ICSID Convention will not be relevant to the tribunal's jurisdiction in such a case.

128. In light of the foregoing, the Tribunal largely agrees with Claimants that the Tribunal's assessment of its jurisdiction is to be made "under the ICSID Convention, interpreted in the light of general principles of international law, and the instrument(s) containing the consent to arbitration".[84] For the Tribunal, the starting point is Article 26 ECT, setting out the terms of the agreement to arbitrate. The Tribunal's jurisdiction under the ICSID Convention, which provides for the arbitration mechanism, is not specifically in issue in this case.

129. Taking into account the conclusion that the ECT, interpreted and applied in accordance with international law, is the law applicable to the Tribunal's jurisdiction, in the following Section, the Tribunal will consider whether, and, if so, how, the ECJ Judgment can legally come into play in that analysis.

---

[84]    Claimants' 2018 Observations, ¶ 7.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

### 3.    EU Law and the ECJ Judgment

130.    The question remains whether, and, if so, how, EU law and the ECJ Judgment are applicable to the determination of the Tribunal's jurisdiction. Respondent argues that since this case involves legal relationships between two EU Member States, the hierarchy of norms to be applied by the Tribunal "must be determined from the perspective of EU law".[85] According to Respondent, Article 26 must therefore be "restrictively" interpreted in accordance with the principle that EU primary law ranks above the ECT.[86]

131.    However, Respondent's position is grounded in a view that Article 26(6) ECT applies to the Tribunal's jurisdiction, which the Tribunal has already dismissed at ¶ 121 above. Respondent identifies no principle of public international law, or even of EU law, which would permit the Tribunal to interpret the words of the ECT, being its foundational jurisdictional instrument, so as to give priority to external treaties (the TFEU and the TEU), and a court judgment interpreting those treaties.

132.    As concluded at ¶ 128 above, the Tribunal's assessment of its jurisdiction is carried out under the terms of the ECT, interpreted in accordance with principles of international law. As mentioned, the Tribunal understands the principles of international law relevant to the interpretation, application, and other aspects of treaties to be primarily those set out in the VCLT, which has been invoked by all of the Parties in their respective positions.

133.    Evidently, and regardless of whether EU law is understood to be international law, EU law does not constitute principles of international law which may be used to derive meaning from Article 26 ECT, since it is not general law applicable as such to the interpretation and application of the arbitration clause in another treaty such as the ECT.

134.    One possibility raised by the EC through which EU law could be brought into the interpretive exercise is as "relevant rules of international law applicable in the relations between the parties" under Article 31(3)(c) VCLT. In order to test this argument, it is

---

[85]    Respondent's Second Submission re the ECJ Judgment, ¶ 24.
[86]    Respondent's Second Submission re the ECJ Judgment, ¶¶ 28-29.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

necessary to determine whether EU law is (or more strictly, is a part or source of) international law. Moreover, as a preliminary matter, the Tribunal considers it appropriate to examine the subject matter of the ECJ Judgment, which Respondent and the EU argue should be taken into account by the Tribunal in this case.

135.    In the following Sections the Tribunal will therefore address (a) the subject matter of the decision made by the ECJ itself, and (b) whether EU law "is" international law, before deciding (c) whether EU law should form part of the Tribunal's interpretation of Article 26 ECT by virtue of Article 31(3)(c) ECT.

### a. The Subject Matter of the ECJ Judgment

136.    As set out at ¶ 33 above, the ECJ decided that "Articles 267 and 344 TFEU must be interpreted as precluding a provision in an international agreement concluded between Member States, such as Article 8 of the [Dutch-Slovak BIT]".[87] The basis for its decision was that the arbitral tribunal under the Dutch-Slovak BIT is not a "court or tribunal of a Member State" within the meaning of Article 267 TFEU and thus according to the rules established by the ECJ the arbitral tribunal is not able to refer questions of EU law to the ECJ under the preliminary ruling procedure in that provision.[88]

137.    The ECJ's concern about whether an arbitral tribunal can refer questions of EU law to the ECJ arose from its conclusion that an arbitral tribunal established under the Dutch-Slovak BIT "may be called on to interpret or indeed to apply EU law".[89]

138.    In light of the above, the ECJ found as follows:

> Consequently, having regard to all the characteristics of the arbitral tribunal mentioned in Article 8 of the BIT . . . it must be considered that, by concluding the BIT, the Member States parties to it established a mechanism for settling disputes between an investor and a Member State

---

[87]    ECJ Judgment, ¶ 62.

[88]    ECJ Judgment, ¶ 49.

[89]    ECJ Judgment, ¶ 42.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

which could prevent those disputes from being resolved in a manner that ensures the full effectiveness of EU law, even though they might concern the interpretation or application of that law.[90]

139.    This Tribunal considers the ECJ Judgment to be a new development, insofar as it arguably closed the door on the arbitral tribunal's jurisdiction under the Dutch-Slovak BIT. The ECJ Judgment focused on the "preclusion" of the arbitration agreement in that case. Accordingly, the ECJ Judgment's potential relevance, if any, to these proceedings is to be considered by the Tribunal in the context of the Tribunal's jurisdiction.

### b.    Whether EU Law is International Law

140.    In order to answer the question whether EU law constitutes international law, the Tribunal considers it useful to refer to Article 38(1) of the Statute of the International Court of Justice,[91] which is relied upon by Claimants and the EC. This Article, which is an authoritative statement of the sources of international law, provides as follows:

> The Court, whose function is to decide in accordance with international law such disputes as are submitted to it, shall apply:
>
> a.    international conventions, whether general or particular, establishing rules expressly recognized by the contesting states;
>
> b.    international custom, as evidence of a general practice accepted as law;
>
> c.    the general principles of law recognized by civilized nations;
>
> d.    subject to the provisions of Article 59, judicial decisions and the teachings of the most highly qualified publicists of the various nations, as subsidiary means for the determination of rules of law.

141.    The list of sources of international law in Article 38(1) of the Statute of the International Court of Justice includes "international conventions, whether general or particular,

---

[90]    ECJ Judgment, ¶ 56.

[91]    Statute of the International Court of Justice (opened for signature 26 July 1945, entered into force 24 October 1945), *cited in* Claimants' Second Submission re the ECJ Judgment, ¶ 15.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

establishing rules expressly recognised by the contesting states". The Tribunal considers it unquestionable that international conventions or international treaties concluded by and between sovereign States constitute international law.

142.   It is not disputed between the Parties that the TEU and the TFEU are international treaties concluded by and between the Member States of the EU. Respondent categorises the TEU and TFEU as "agreements under international law".[92] Similarly, Claimants refer to these treaties collectively as the "EU Treaties".[93]

143.   Claimants object to the classification of EU law as international law on the basis that EU law has been recognised as an "autonomous" legal system in relation to both international law and the domestic laws of the Member States, and that the EC and the ECJ subscribe to this recognition.[94] Claimants submit that an autonomous legal order, such as EU law, cannot fall within Article 38 of the Statute of the International Court of Justice, since it does not amount to either customary international law (Article 38(1)(b) of the Statute of the International Court of Justice) or general principles of international law (Article 38(1)(c) of the Statute of the International Court of Justice).[95]

144.   The autonomous nature of EU law, as per the EC's observations in the EC 2015 Submission, is premised on the constitutional nature of the TEU and the TFEU, in the sense that these treaties form the basis of the organisational structure of the EU.[96] The

---

[92]    Respondent's First Submission re the ECJ Judgment, ¶ 36(a).

[93]    Claimants' 2016 Observations, ¶ 10(a).

[94]    Claimants' First Submission re the ECJ Judgment, ¶¶ 1.3.3-1.3.5; *citing* EC 2018 Submission, ¶ 10; ECJ Judgment, ¶ 33; **CL-0150**, P. Craig and G. De Búrca, *EU Law: Text, Cases, and Materials*, 5th ed. (2011), p. 256; **CL-0151**, J. Weiler and U. Haltern, "The Autonomy of the Community Legal Order – Through the Looking Glass", Harvard International Law Journal 37 (1996), p. 411; **CL-0152**, I. Pernice, "The Treaty of Lisbon: Multilevel Constitutionalism in Action", WHI-Paper 2/09, p. 4.

[95]    Claimants' 2018 Observations, ¶¶ 15-18.

[96]    EC 2015 Submission, ¶ 10.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

constitutional nature of the TEU and TFEU is also highlighted by the other authorities relied upon by Claimants,[97] as well as in the ECJ Judgment.[98]

145.    However, this autonomous or constitutional nature of the TEU and the TFEU does not exclude them from the purview of international law. As mentioned in Article 38(1)(a) of the Statute of the International Court of Justice, any kind of international convention, "whether general or particular", constitutes international law.

146.    In this regard, the Tribunal agrees with the finding of the tribunal in *Electrabel v. Hungary* that "EU law is international law because it is rooted in international treaties".[99] The EC has correctly pointed out that this fundamental proposition has been undisputed in investment arbitration decisions since *Electrabel v. Hungary*. It would be more exact to say that the corpus of EU law derives from treaties that are themselves a part of, and governed by, international law, and contains other rules that are applicable on the plane of international law, while also containing rules that operate only within the internal legal order of the EU and, at least arguably, are not a part of international law; but for present purposes the *Electrabel* formula suffices.

147.    Instead of excluding EU law from the purview of international law, tribunals that have considered the relationship between EU law and the ECT have attempted to resolve conflicts, if any, between them. They have done so, for example, by (i) endorsing a harmonious interpretation,[100] (ii) prioritising international law over EU law,[101] or (iii) finding that there is no conflict that requires resolution.[102] In any event, there is no dispute

---

[97]    *See* **CL-0151**, J. Weiler and U. Haltern, "The Autonomy of the Community Legal Order – Through the Looking Glass", Harvard International Law Journal 37 (1996), p. 411.

[98]    ECJ Judgment, ¶ 33.

[99]    **RL-0132**, *Electrabel v. Hungary*, ¶ 4.120; *see also* ECJ Judgment, ¶ 41 (EU law "must be regarded . . . as deriving from an international agreement between the Member States").

[100]   **CL-0160**, *RREEF v. Spain*, ¶ 77.

[101]   **CL-0160**, *RREEF v. Spain*, ¶¶ 74-76, 87.

[102]   **RL-0116**, *Charanne v. Spain*, ¶ 439.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

in investment arbitration decisions, or in the Tribunal's mind, that EU law, to the extent that it is rooted in the EU Treaties, constitutes international law.

148.    Since the ECJ is empowered by the EU Treaties to give preliminary rulings on the interpretation of EU law, including the EU Treaties (*see* Article 19 TEU and Article 267 TFEU), the Tribunal considers the ECJ Judgment's interpretation of the EU Treaties likewise to constitute a part of the relevant international law.

149.    The Tribunal does not consider it necessary or appropriate to determine whether other aspects of EU law that are not rooted in the EU Treaties also constitute international law. Such a determination is not essential for the purposes of analysing the implications of the ECJ Judgment on the Tribunal's jurisdiction, since only the EU Treaties are at stake in the present case.

150.    In light of the above, the Tribunal concludes that EU law, to the extent of the TEU and the TFEU, including their interpretation by the ECJ, constitutes a part of international law, within the terms of Article 38(1) of the Statute of the International Court of Justice.

### c.   *Article 31(3)(c) VCLT*

151.    The EC has argued that EU law forms part of the analysis of the Tribunal's jurisdiction via Article 31(3)(c) VCLT, as "relevant rules of international law applicable in the relations between the parties". To the extent that EU law or the ECJ Judgment fall under Article 31(3)(c) VCLT, they could become relevant to take into account when interpreting the ECT. In the EC's view, this would lead to a "harmonious interpretation" of the ECT.

152.    The Tribunal has already found that the EU Treaties are international law (see ¶ 150 above). However, for a number of reasons it is not possible to apply Article 31(3)(c) VCLT in the manner sought by the EC.

153.    The Tribunal notes that the correct starting point for the interpretation of Article 26 ECT is the general rule of interpretation in Article 31(1) VCLT, i.e., "[a] treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms in their

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

context and in the light of its object and purpose". Article 31(3)(c) is not the starting point of the interpretation exercise under the VCLT.

154. To the extent that EU law may come into the interpretation analysis, as proposed by the EC, it is to be "taken into account, together with the context" under Article 31(3)(c). It is not the proper role of Article 31(3)(c) VCLT to rewrite the treaty being interpreted, or to substitute a plain reading of a treaty provision with other rules of international law, external to the treaty being interpreted, which would contradict the ordinary meaning of its terms.

155. The EC's approach is unacceptable as it would potentially allow for different interpretations of the same ECT treaty provision. The Tribunal considers that this would be an incoherent and anomalous result and inconsistent with the object and purpose of the ECT and with the rules of international law on treaty interpretation and application. The preamble of the VCLT emphasises the universal recognition of "the principles of free consent and of good faith and the *pacta sunt servanda* rule", also contained in Article 26 VCLT.

156. When States enter into international legal obligations under a multilateral treaty, *pacta sunt servanda* and good faith require that the terms of that treaty have a single consistent meaning. States parties to a multilateral treaty are entitled to assume that the treaty means what it says, and that all States parties will be bound by the same terms. It cannot be the case that the same words in the same treaty provision have a different meaning depending on the independent legal obligations entered into by one State or another, and depending on the parties to a particular dispute. The need for coherence, and for a single unified interpretation of each treaty provision, is reflected in the priority given to the text of the treaty itself over other contextual elements under Article 31 VCLT. The need to maintain a uniform meaning of treaty terms is also clearly reflected in Article 33 of the Vienna Convention, dealing with treaties authenticated in two or more languages.

157. That is not to say that all differences in the substantive obligations of ECT Contracting Parties resulting from differences in the range of other relevant treaties to which each Contracting Party has signed up are entirely ironed out by the ECT. The ECT does make provision for variations among the substantive obligations of the Contracting Parties. For

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

example, in ECT Article 10, paragraph 1 identifies the obligations of each Contracting Party towards investors and includes the "treaty obligations" of the State and "any obligations it has entered into with an Investor", and paragraph 10 identifies obligations under "the applicable international agreements for the protection of Intellectual Property Rights to which the respective Contracting Parties are parties". But the crucial point is that while the application of those paragraphs may result in the substantive obligations of one Contracting Party differing from those of another, those paragraphs themselves have a uniform meaning for every ECT Contracting Party. Equally important, there is no similar provision in the ECT for differing obligations in relation to the ECT dispute settlement procedures.

158. While the EC refers to the use of Article 31(3)(c) VCLT as a "systemic or harmonious interpretation", the Tribunal finds that the effects of such an interpretation in the manner proposed in the EC submissions would not ensure "systemic coherence", but rather its exact opposite. It would create one set of obligations applicable in at least some "intra-EU" disputes and another set of different obligations applicable to other disputes. This would bring uncertainty and entail the fragmentation of the meaning and application of treaty provisions and of the obligations of ECT Parties, contrary to the plain and ordinary meaning of the ECT provisions themselves.

159. In addition, the Tribunal has serious difficulty in deriving a "relevant rule of international law" from the EU Treaties for present purposes, whether on the basis of the text of the EU Treaties themselves or on the basis of the interpretation of those Treaties contained in the ECJ Judgment.

160. In this regard, the ECJ Judgment found that Articles 267 and 344 TFEU

> must be interpreted as precluding a provision in an international agreement concluded between Member States, such as Article 8 of the [Dutch-Slovak BIT], under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State,

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

bring proceedings against the latter Member State before an arbitral
tribunal whose jurisdiction that Member State has undertaken to accept.[103]

161.   It remains unclear what alleged rule of international law arising from the ECJ Judgment
exists and is of application to the present case. The ECJ's reasoning was not specifically
addressed to investor-State dispute settlement under the ECT. While there is a certain
breadth to the Court's wording, addressing provisions "such as" the dispute resolution
provision of the BIT in that case, it is an open question whether the same considerations
necessarily apply to the ECT.

162.   In particular, the ECT is not an agreement concluded "between Member States", as referred
to by the ECJ. The ECT is a multilateral treaty, to which the EU itself is a party, alongside
its Member States. Unlike the Dutch-Slovak BIT, the ECT is a "mixed agreement" between
both Member States and third States, in addition to the EU itself. The wording of Article
26 ECT is different to Article 8 of the Dutch-Slovak BIT. In addition, the ECT contains
different provisions impacting upon the interpretation of the treaty provisions in their
context.

163.   This issue was recently considered by the arbitral tribunal in *Masdar v. Spain*, which found
that the ECJ Judgment did not address, depart from, or reject the Opinion of Advocate
General Wathelet dated 19 September 2017 ("**AG Opinion**"). The AG Opinion had drawn
a distinction between investment protection mechanisms found in bilateral investment
treaties and the dispute settlement provisions of the ECT.[104] The Tribunal agrees with the
conclusion in *Masdar v. Spain* that the ECJ Judgment is silent on the compatibility of intra-
EU investor-State dispute settlement under the ECT with EU law.

164.   In the Tribunal's view, legal certainty requires that any relevant rule of international law
that is taken into account during interpretation be clear. It is not for this Tribunal to
extrapolate from the ECJ Judgment and declare a new rule of international law which is not

---

[103]    ECJ Judgment, ¶ 60.

[104]    **CL-0227 / RL-0144**, *Masdar v. Spain*, ¶ 682; *see also Slowakische Republik v. Achmea BV*, ECJ Case
No. C-284/16, Opinion of Advocate General Wathelet, 19 September 2017, ¶ 43.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

clearly stated therein, or to decide which other scenarios would pose the same EU law concerns as those that the ECJ found in relation to the Dutch-Slovak BIT.

165.    In light of the Tribunal's considerations above, EU law may not be "taken into account" under the principles in VCLT Article 31 to interpret Article 26 ECT in the manner sought by the EC — and in particular, it cannot be used to generate a meaning of Article 26 that departs from the ordinary meaning of the terms of that Article.

### 4.    Conclusion on Applicable Law

166.    The Tribunal concludes that the law applicable to the assessment of its jurisdiction is the ECT, in particular Article 26 thereof, in conjunction with Article 25 of the ICSID Convention. These treaties are to be interpreted in accordance with general principles of international law, in particular as set out in the VCLT.

167.    EU law and the ECJ Judgment may not be "taken into account" for the purposes of a so-called "harmonious" interpretation of Article 26 ECT that would exclude intra-EU investor-State arbitrations. Even if EU law were, *arguendo*, applicable to the Tribunal's jurisdiction, no persuasive case has been made out for applying it so as to yield an interpretation of Article 26 ECT that departs so radically from the ordinary meaning of the terms of that Article as to exclude intra-EU disputes from the scope of Article 26.

168.    In the following Section, the Tribunal will proceed to interpret Article 26 ECT, which is the disputed provision of its jurisdiction.

### C.    INTERPRETATION OF THE ECT

169.    The Parties fundamentally disagree on the correct interpretation of Article 26 ECT, which is the primary law applicable to the Tribunal's jurisdiction. Respondent argues that a restrictive interpretation of Article 26 ECT is necessary, which would exclude the possibility of intra-EU investor-State arbitrations. Claimants contend that no such exclusion exists in the clause. In the following Sections, the Tribunal will interpret Article 26 ECT in accordance with the VCLT.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

### 1.  Ordinary Meaning of "Contracting Party" in Article 26 ECT

170.  The Parties disagree on the meaning of "Contracting Party" in Article 26 ECT. In Respondent's view, Article 26 ECT must be read in a restrictive manner, in line with EU law and the principle of the primacy of EU law.[105] Claimant opposes such an interpretation of Article 26, arguing that it would "invalidate" Article 26.[106]

171.  Article 26 ECT provides, in relevant part (emphasis added):

> (1) Disputes between a <u>Contracting Party</u> and an Investor of <u>another Contracting Party</u> relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.

> (2) If such disputes cannot be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:

> . . .

>> (c) in accordance with the following paragraphs of this Article.

> (3) (a) Subject only to subparagraphs (b) and (c), each <u>Contracting Party</u> hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

>> (b) (i)The Contracting Parties listed in Annex ID do not give such unconditional consent where the Investor has previously submitted the dispute under subparagraph (2)(a) or (b).

>>> (ii) For the sake of transparency, each <u>Contracting Party</u> that is listed in Annex ID shall provide a written statement of its policies, practices and conditions in this regard to the Secretariat no later than the date of the deposit of its instrument of ratification,

---

[105]    Respondent's Second Submission re the ECJ Judgment, ¶¶ 28-29.
[106]    Claimants' 2018 Observations, ¶ 44.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

> acceptance or approval in accordance with Article 39 or the deposit
> of its instrument of accession in accordance with Article 41.

172.   The question for the Tribunal is whether the references to "Contracting Party" in Article 26 ECT can be read as excluding EU Member States in so far as intra-EU ECT arbitrations are concerned. Considering the ordinary meaning of the terms of Article 26, the Tribunal finds no basis in the wording for the exclusion sought to be read into the provision by Respondent. Specifically, Article 26(3)(a) mentions that each Contracting Party gives "its unconditional consent to the submission of a dispute to international arbitration . . . in accordance with the provisions of this Article". The offer to arbitrate in this provision appears unqualified by any carve-out for intra-EU investor-State arbitrations, and is indeed "unconditional".

173.   In the next Sections, the Tribunal will look beyond the text of Article 26 itself, to consider the meaning to be attributed to the words "Contracting Party", in light of their context in the ECT and the object and purpose of the Treaty.

### a.   *Articles 1(2), 1(3), and 1(10) ECT*

174.   Article 1(2) ECT defines "Contracting Party" as follows:

> "Contracting Party" means a state or Regional Economic Integration
> Organisation which has consented to be bound by this Treaty and for which
> the Treaty is in force.

175.   Article 1(3), in turn, elaborates upon the meaning of a "Regional Economic Integration Organisation":

> "Regional Economic Integration Organisation" means an organisation
> constituted by states to which they have transferred competence over
> certain matters a number of which are governed by this Treaty, including
> the authority to take decisions binding on them in respect of those matters.

176.   It is undisputed that the EU is an REIO under the ECT, and therefore a Contracting Party to the ECT in its own right (see also the EU Statement at ¶ 185 below).

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

177.    Reading Article 26 together with Articles 1(2) and 1(3) ECT, the ordinary meaning of "Contracting Party" in Article 26 ECT includes both (i) any State that signs and ratifies the ECT; and (ii) the EU (having itself also signed and ratified it).

178.    According to the EC, the ECT "recognizes that the relationships between the Contracting Parties that are member [*sic*] of the REIO are governed by the provisions contained in the agreement establishing the REIO."[107] The EC bases this interpretation upon Articles 1(3) and 1(10) ECT. Article 1(10) ECT provides:

> "Area" means with respect to a state that is a Contracting Party:
>
> (a) the territory under its sovereignty, it being understood that territory includes land, internal waters and the territorial sea; and
>
> (b) subject to and in accordance with the international law of the sea: the sea, sea-bed and its subsoil with regard to which that Contracting Party exercises sovereign rights and jurisdiction.
>
> With respect to a Regional Economic Integration Organisation which is a Contracting Party, Area means the Areas of the member states of such Organisation, under the provisions contained in the agreement establishing that Organisation.

179.    In light of the provisions of Article 1(3) and 1(10) ECT, the EC argues that the "Area" of the EU, in which an investment can be made and a dispute may potentially arise under Article 26 ECT, includes the entirety of the areas of the Member States. Moreover, in the EC's view, by referring to "the provisions contained in the agreement establishing" the REIO, the ECT recognises that the relationships between Contracting Parties that are members of the EU are governed by the provisions of the EU Treaties, including the competence now conferred upon the EU for a common commercial policy and investment protection. It follows, in the EC's view, that an investment by an investor from one EU Member State in the area of another EU Member State is made within the "Area" of the

---

[107]    EC 2018 Submission, ¶ 53.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

same Contracting Party, i.e., the EU. According to the EC, the EU's offer to arbitrate is only made to Investors from non-EU Member States.[108]

180.    The EC's proposed interpretation is unsupported by the language of the ECT provisions. The mere mention in Article 1(3) that EU Member States have "transferred competence over certain matters" to the EU does not convey that there is no application of the provisions of the ECT between EU Member States. Further, the reference to the "agreement establishing" the REIO in Article 1(10) ECT is made only for the purposes of defining the "Area" of that REIO.

181.    Moreover, Article 1(10) contains two definitions of "Area", neither of which operates to exclude the other. The EU as an REIO has an "Area", and States have an "Area". Within the EU's "Area", the Contracting Parties being members of the REIO do not cease to have their own Area. This is evident from the provision itself which uses the defined, capitalised term "Area" even for Member States of REIOs: an REIO's Area "means the <u>Areas of the member states</u> of such Organisation" (emphasis added).

182.    If it was intended by Articles 1(2), 1(3) and 1(10) ECT that the offer to arbitrate in Article 26 ECT was only made to Investors from non-EU Member States, it would have been necessary to include explicit language to that effect in the Treaty, which is not there. Without such language, in accordance with these provisions, an EU Member State which is a Contracting Party to the ECT may be a respondent State under Article 26 with respect to an Investment in its Area. Equally, the EU as an REIO under the ECT may be a respondent in a dispute regarding an Investment in its Area.

183.    This interpretation is consistent with the conclusions reached by other arbitral tribunals. In *Eiser v. Spain*, the tribunal rejected the view that an Investor from one EU Member State has made its Investment in the same "Area" as a respondent State which is another EU

---

[108]    EC 2018 Submission, ¶¶ 53-54.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

Member State.[109] In *Charanne v. Spain*, the tribunal held that Investments made "in the territory" of an EU Member State refers to both "the territory of a national State as well as the territory of the EU".[110] In *Novenergia v. Spain*, the tribunal found that "even though the EU itself is a Contracting Party of the ECT, this does not eliminate the EU Member States' individual standing as respondents under the ECT".[111]

184.    In light of the foregoing, the Tribunal finds no exclusion of intra-EU investor-State arbitration to arise from Articles 1(2), 1(3) and 1(10) ECT.

### b. The EU Statement

185.    The Tribunal will also look to an important instrument in giving context to these provisions of the ECT, pursuant to Article 31(2)(b) VCLT.[112] The Statement made by the European Communities to the ECT Secretariat pursuant to Article 26(3)(b)(ii) ECT ("**EU Statement**") is relied upon by Claimants, Respondent and the EC.[113] This Statement, in relevant part, provides as follows:

> The European Communities, as Contracting Parties to the Energy Charter Treaty, make the following statement concerning their policies, practices and conditions with regard to disputes between an investor and a Contracting Parties [*sic*] and their submission to international arbitration or conciliation:
>
> '[1] The European Communities are a regional economic integration organisation within the meaning of the Energy Charter Treaty. The Communities exercise the competences conferred on them by their

---

[109]    **CL-0217**, *Eiser v. Spain*, ¶¶ 194-195.

[110]    **RL-0116**, *Charanne v. Spain*, ¶ 430.

[111]    **CL-0218**, *Novenergia v. Spain*, ¶ 453.

[112]    Article 31(2)(b) VCLT provides: "The context for the purpose of the interpretation of a treaty shall comprise, in addition to the text, including its preamble and annexes: . . . . (b) Any instrument which was made by one or more parties in connexion with the conclusion of the treaty and accepted by the other parties as an instrument related to the treaty".

[113]    Article 26(3)(b)(ii) ECT provides: "For the sake of transparency, each Contracting Party that is listed in Annex ID shall provide a written statement of its policies, practices and conditions in this regard to the Secretariat no later than the date of the deposit of its instrument of ratification, acceptance or approval in accordance with Article 39 or the deposit of its instrument of accession in accordance with Article 41".

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

Member States through autonomous decision-making and judicial institutions.

[2] The European Communities and their Member States have both concluded the Energy Charter Treaty and are thus internationally responsible for the fulfilment of the obligations contained therein, in accordance with their respective competences.

[3] The Communities and the Member States will, if necessary, determine among them who is the respondent party to arbitration proceedings initiated by an Investor of another Contracting Party. In such case, upon the request of the Investor, the Communities and the Member States concerned will make such determination within a period of 30 days.[footnote 1]

[Footnote 1 text] This is without prejudice to the right of the investor to initiate proceedings against both the Communities and their Member States.

[4] The Court of Justice of the European Communities, as the judicial institution of the Communities, is competent to examine any question relating to the application and interpretation of the constituent treaties and acts adopted thereunder, including international agreements concluded by the Communities, which under certain conditions may be invoked before the Court of Justice.

[5] Any case brought before the Court of Justice of the European Communities by an investor of another Contracting Party in application of the forms of action provided by the constituent treaties of the Communities falls under Article 26(2)(a) of the Energy Charter Treaty.[Footnote 2] Given that the Communities' legal system provides for means of such action, the European Communities have not given their unconditional consent to the submission of a dispute to international arbitration or conciliation.

[Footnote 2 text] Article 26(2)(a) is also applicable in the case where the Court of Justice of the European Communities may be called upon to examine the application or interpretation of the Energy Charter Treaty on the basis of a request for a preliminary ruling submitted by a court or tribunal of a Member State in accordance with Article 177 of the EC Treaty.

[6] As far as international arbitration is concerned, it should be stated that the provisions of the ICSID Convention do not allow the European Communities to become parties to it. The provisions of the ICSID Additional Facility also do not allow the Communities to make use of them. Any arbitral award against the European Communities will be

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

implemented by the Communities' institutions, in accordance with their obligation under Article 26(8) of the Energy Charter Treaty.'[114]

186.   Claimants, Respondent and the EC rely on different parts of the EU Statement to make different submissions. Claimants rely on paragraph [3] of the EU Statement to submit that in the Statement, the EU accepted the possibility of arbitration proceedings under the ECT, even against itself, without making a distinction between investors from EU or non-EU Member States.[115] Respondent relies on paragraph [4] of the EU Statement to submit that the "ultimate power" of the ECJ "to issue rulings on [EU] law in intra-EU investor-[S]tate dispute settlement procedures" was not intended to be withdrawn by the ECT.[116] The EC stresses the use of the term "another" in the EU Statement's paragraph [3], which, in the EC's view, restricts the offer to arbitrate in Article 26 ECT to investors from non-EU Member States.[117]

187.   It would have been a simple matter to draft the ECT so that Article 26 does not apply to disputes between an Investor of one EU Member State and another EU Member State as respondent.[118] That was not done; and the Tribunal has been shown no indication in the language of the ECT that any such exclusion was intended. The Tribunal's responsibility is to interpret and apply the ECT, which defines the Tribunal's jurisdiction.

188.   Taking into account the wording of Article 26 ECT, read together with the above provisions and the EU Statement, the Tribunal cannot agree that intra-EU arbitrations have been carved out from the application of Article 26 ECT. As a Contracting Party to the ECT, the EU has accepted the possibility of arbitration proceedings under Article 26, even against itself, without making a distinction between investors from EU or non-EU Member States. There

---

[114]   Respondent's First Submission re the ECJ Judgment, ¶¶ 45-48; Claimants' Second Submission re the ECJ Judgment, ¶¶ 2.3.5-2.3.7; *citing* Statement submitted by the European Communities to the Secretariat of the Energy Charter pursuant to Article 26(3)(b)(ii) of the ECT, Official Journal of the EU L69/115, 9 March 1998, p. 115 (numbering between square brackets added).

[115]   Claimants' Second Submission re the ECJ Judgment, ¶¶ 2.3.5-2.3.7.

[116]   Respondent's First Submission re the ECJ Judgment, ¶¶ 45-48.

[117]   EC 2018 Submission, ¶¶ 62-63.

[118]   Article 28 ECT contains one set of exclusions from the dispute settlement provisions of the ECT.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

is no language suggesting that EU Member States have "transferred competence" to the EU in respect of intra-EU arbitrations, or that such arbitrations are barred.

189.    To the contrary, paragraphs [2] and [3] of the EU Statement demonstrate that while the EU and its Member States are recognised as having their "respective competences", there is no suggestion that such division of competences has rendered, or could render, EU Member States ineligible to be respondent parties to an arbitration under Article 26 ECT commenced by an Investor of another EU Member State. Paragraph [3] of the EU Statement sets out the procedure by which the EU and its Member States "will, if necessary, determine among them who is the respondent party to arbitration proceedings", although no such steps appear to have been taken in the present case. Thus, it is expressly contemplated that either the EU or an EU Member State may be party to an arbitration initiated by an Investor of "another Contracting Party". There is no basis to read a qualification that "another" Contracting Party only includes non-EU Member States.

190.    Respondent further argues that the EU Statement confirms that "the ultimate power to issue rulings on [EU] law in intra-EU investor-[S]tate dispute settlement procedures" remains with the ECJ.[119] However, all paragraph [4] of the EU Statement indicates is that the ECJ is "competent to examine any question" relating to interpretation of international agreements such as the ECT. It quite rightly claims no exclusive jurisdiction to interpret and apply the ECT.

191.    In paragraph [5] of the Statement, it is clarified that a case brought by an investor before the ECJ "falls under Article 26(2)(a)" ECT, i.e., the option for an investor to submit a dispute for resolution "to the courts or administrative tribunals of the Contracting Party party to the dispute". This option is an alternative to the submission of a dispute to arbitration, provided under Article 26(2)(c) and the paragraphs which follow it. As such, it is clear that the competence of the ECJ does not exclude the independent dispute resolution procedure of arbitration, but is one instance of the application of that procedure, provided

---

[119]    Respondent's First Submission re the ECJ Judgment, ¶¶ 47-48.

Case 1:19-cv-01618-TSC    Document 23-17    Filed 12/20/19    Page 62 of 74

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

for in the ECT itself. Nor does the competence of the ECJ trump an investor's right to choose arbitration against an EU Member State.

### c. Article 16 ECT

192.  The Tribunal has addressed the foregoing arguments in order to respond to detailed submissions by the Parties, but as a matter of law there is a simpler and clearer route to the answer to the jurisdictional challenge based on the provisions of the EU Treaties. Article 26 ECT and the above-cited provisions must be read in the context of Article 16 ECT, which specifically and explicitly addresses this situation. The plain language of Article 16 speaks against Respondent's and the EC's proposed interpretation of the ECT. Article 16 provides as follows:

> Where two or more Contracting Parties have entered into a prior international agreement, or enter into a subsequent international agreement, whose terms in either case concern the subject matter of Part III or V of this Treaty,
>
> (1) nothing in Part III or V of this Treaty shall be construed to derogate from any provision of such terms of the other agreement or from any right to dispute resolution with respect thereto under that agreement; and
>
> (2) nothing in such terms of the other agreement shall be construed to derogate from any provision of Part III or V of this Treaty or from any right to dispute resolution with respect thereto under this Treaty,
>
> where any such provision is more favourable to the Investor or Investment.

193.  Pursuant to Article 16(2) ECT, the Contracting Parties to the ECT, including the EU, specifically and explicitly agreed that prior or subsequent treaties that they enter into with each other, whose terms concern the subject matter of Part III or V of the ECT, shall not be construed so as to derogate from any provision in Part III ("Investment Promotion and Protection", including the substantive protections) or Part V ("Dispute Settlement") ECT, where a provision is more favourable to the Investor or Investment. Specific mention is

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

made of "any right to dispute resolution" under the ECT, leaving no doubt that it is protected by this provision.

194.  On Respondent's case, Articles 267 and 344 TFEU prohibit intra-EU ECT arbitrations. This Tribunal does not agree that those provisions "concern the same subject matter" as Part III or Part V ECT. However, taking Respondent's submission at face value and assuming for the sake of argument that Articles 267 and 344 TFEU are understood to "concern" investor-State dispute settlement, this would necessarily bring Article 16 ECT into application. The Tribunal also considers that Article 26 ECT, granting the possibility to pursue arbitration, would be understood as "more favourable to the Investor", insofar as the EU Treaties are interpreted to prohibit that avenue of dispute resolution.

195.  In this way, by the terms of Article 16 ECT itself, it would be prohibited for a Contracting Party to construe the EU Treaties so as to derogate from an Investor's right to dispute resolution under Article 26 ECT, to the extent that they are understood to concern the same subject matter.

196.  While the ordinary meaning of Article 26 was already clear, Article 16 confirms beyond doubt that Respondent's proposed reading of the provisions of the ECT is untenable. In light of this provision it is not possible to "read into" Article 26 an interpretation whereby certain investors would be deprived of their right to dispute resolution, whether against an EU Member State or otherwise.

### d.  *Object and Purpose*

197.  Article 2 ECT sets out the "Purpose of the Treaty", stating that the "Treaty establishes a legal framework in order to promote long-term cooperation in the energy field, based on complementarities and mutual benefits, in accordance with the objectives and principles of the Charter". The European Energy Charter, which preceded the ECT, declared that the signatories "are determined to create a climate favourable to the operation of enterprises and to the flow of investments and technologies by implementing market principles in the

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

field of energy". Paragraph II(4) of the Charter, which concerns "Promotion and protection of investments", states:

> [i]n order to promote the international flow of investments, the signatories will at national level provide for a stable, transparent legal framework for foreign investments, in conformity with the relevant international laws and rules on investment and trade.

198.    In sum, the ECT aims to promote cooperation and the flow of international investment in the energy field to serve the ultimate goal of creating and maintaining a stable and efficient energy market. Granting the right to Investors based in the EU to avail themselves of investor-State dispute resolution is entirely consistent with that goal. On the other hand, depriving EU Investors of the right to invoke the arbitration provision of the ECT, where the respondent State is an EU Member State, would be counterproductive to the flow of international investment in the energy field.

199.    The EC is of the opinion that the object and purpose of the ECT is rather to "create an international framework for cooperation in the energy sector between the European Communities, on the one hand, and Russia, the CIS and the countries of Central and Eastern Europe, on the other hand".[120]

200.    However, the stated purpose of the ECT under Article 2 is framed generally, and without the geographical distinction argued by the EC. Moreover, even if the EC is correct that this was indeed one purpose behind the Treaty, it does not follow that the ECT was not intended to cover other kinds of investment, as reflected in Article 2.

### e.    Disconnection Clause

201.    In support of their argument that intra-EU ECT arbitrations are not barred by the ECT, Claimants rely on the fact that there is no "disconnection clause" in the ECT, which in EU treaty practice is included in international agreements in order to ensure that the provisions

---

[120]    EC 2018 Submission, ¶ 69.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

of a mixed agreement only apply vis-à-vis third parties and not as between EU Member States.[121]

202. In light of the ordinary meaning of the words in Article 26 ECT, read together with the other provisions of the ECT, and also taking into account the EU Statement and the object and purpose of the ECT, as discussed above, the Tribunal agrees with Claimants that the absence of a disconnection clause in the ECT is telling. Article 26 ECT grants Investors from Contracting Parties, without exclusion, a right to dispute settlement, and Article 16 prohibits the terms of another agreement from being construed to derogate from that right to dispute resolution. In these circumstances, if it was intended that intra-EU arbitration would not be available to Investors, it would have been necessary to make such an intention explicit, either in the ECT itself or through the adoption of a supplementary instrument.

203. At the time of entering into the ECT, the EU was well aware of the possibility of including a disconnection clause, which would operate as a carve-out to ensure that the provisions of this mixed agreement would not apply between EU Member States. The EU had already included disconnection clauses in treaties prior to the ECT, starting with the 1988 Joint Council of Europe/OECD Convention on Mutual Assistance in Tax Matters.[122]

204. Moreover, the ECT includes other similar such provisions which limit its application in certain respects. For example, there is a provision for potential conflicts between the Svalbard Treaty and the ECT, excluding the operation of Article 16 in such a scenario.[123]

---

[121]    Claimants' 2016 Observations, ¶¶ 83-90; *citing Charanne v. Spain* (same as **RL-0116**), ¶¶ 433-438; **Appendix 35**, European Energy Charter Conference Secretariat, Draft Basic Agreement for the European Energy Charter, 12 August 1992, p. 84, Item 27.18; **Appendix 36**, Draft Ministerial Declaration to the Energy Charter Treaty, Versions 2-7, 17 March 1994, Version 7, p. 6; **Appendix 37**, EU External Action Service, Treaties Office, "Agreements with a Declaration of Competence by the EU", Document No. EEAS/SG2.

[122]    Claimants' 2016 Observations, **Appendix 34**, Joint Council of Europe/OECD Convention on Mutual Administrative Assistance in Tax Matters, Article 27(2).

[123]    Final Act of the European Energy Charter Conference, Annex 2.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

205.    Indeed, the *travaux préparatoires* of the ECT reveal that during negotiation of the ECT, the EU had proposed the insertion of a disconnection clause. However, that clause was ultimately dropped from the draft treaty.[124]

206.    In these circumstances, the Tribunal can only conclude that a disconnection clause was intentionally omitted from the ECT. The absence of such a clause confirms that the ECT was intended to create obligations between Member States of the EU, including in respect of potential investor-State dispute settlement.

## 2.    Conclusion on Interpretation

207.    Having carried out an interpretation under Article 31 VCLT of the ordinary meaning to be attributed to Article 26 ECT, in its context, and in the light of the object and purpose of the ECT, the Tribunal finds that a Contracting Party to the ECT in Article 26 ECT includes EU Member States and non-EU Member States without distinction. There is no carve-out from the ECT's dispute settlement provisions concerning their applicability to EU Member States *inter se*, in particular regarding the opportunity for an EU Investor to pursue arbitration against an EU Member State. Indeed, the terms of Article 26 ECT give not the slightest hint that any such exclusion is possible.

208.    The Tribunal therefore rejects Respondent's proposed restrictive interpretation of Article 26 ECT, which is contrary to the plain wording of that provision. The Tribunal emphasises that this interpretation exercise is carried out from the perspective of the ECT, as is required by international law. In reaching its conclusion regarding the meaning of Article 26 ECT, the Tribunal does not deny the existence or effectiveness of EU law. To the extent that the EC or EU Member States saw an incompatibility between EU law and the dispute resolution provisions of the ECT at the time of negotiation of the treaty, or to the extent that they now see such an incompatibility, it was and is incumbent upon them to take the necessary action

---

[124]    Claimants' 2016 Observations, **Appendix 35**, European Energy Charter Conference Secretariat, Draft Basic Agreement for the European Energy Charter, 12 August 1992, p. 84, Item 27.18; **Appendix 36**, Draft Ministerial Declaration to the Energy Charter Treaty, Versions 2-7, 17 March 1994, Version 7, p. 6.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

to remedy that situation. It is not for this Tribunal to redraft the treaty which has been agreed by the Contracting Parties to the ECT.

209.    Respondent further suggests that if the applicability of the ECJ Judgment is not an "*acte claire*" for the Tribunal, the Tribunal should request a preliminary ruling from the ECJ regarding the interpretation of Articles 18, 267 and 344 TFEU. Respondent nevertheless indicates that it expects the ECJ to dismiss such a request as inadmissible, since it will not regard this Tribunal as a "court or tribunal" within the meaning of Article 267 TFEU.[125]

210.    In light of the above analysis, the need to consider Respondent's request regarding a preliminary ruling does not arise.

### D.    WHETHER EU LAW PREVAILS UNDER A CONFLICT OF LAWS ANALYSIS

211.    In the previous Section, the Tribunal has rejected Respondent's assertion that Article 26 ECT should be interpreted so as to exclude intra-EU investor-State arbitration. In this circumstance, Respondent further argues that in any event, EU law prevails over the ECT, by application of the rules of conflict under public international law.[126]

212.    The Tribunal does not consider it established that Articles 267 and 344 TFEU, as interpreted in the ECJ Judgment, are in conflict with Article 26 ECT. In principle, these provisions do not have the same subject matter or scope. They are capable of operating in their separate spheres without conflict, as has been found by several arbitral tribunals in previous cases.[127]

213.    While the ECJ Judgment has interpreted Articles 267 and 344 TFEU in a way that implies a conflict between those provisions and the intra-EU investor-State arbitration clause in the Dutch-Slovak BIT, and potentially other similar clauses, it did not go so far as to pronounce upon intra-EU investor-State arbitration under the ECT. As mentioned at ¶¶ 161-164 above,

---

[125]    Respondent's First Submission re the ECJ Judgment, ¶¶ 70-72.

[126]    Respondent's Second Submission re the ECJ Judgment, ¶ 32.

[127]    **RL-0132**, *Electrabel v. Hungary*, ¶ 4.146; **RL-0116**, *Charanne v. Spain*, ¶ 438; **CL-0160**, *RREEF v. Spain*, ¶ 79; **CL-0217**, *Eiser v. Spain*, ¶ 199; **CL-0218**, *Novenergia v. Spain*, ¶¶ 438-442.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

it is not for this Tribunal to assume that the ECJ's decision in relation to a bilateral investment treaty applies equally to a multilateral treaty with both EU and non-EU parties, under which the EU itself has consented to investor-State arbitration.

214.    In the absence of a conflict between Article 26 ECT and Articles 267 and 344 TFEU, it is not necessary for the Tribunal to apply the rules of conflict of law so as to resolve any purported conflict between them. In any event, even if the Tribunal had been required to conduct a conflict of law analysis, the Tribunal has difficulty with Respondent's position that EU law would prevail. In light of the Parties' extensive submissions on this point, the Tribunal makes the following comments regarding a potential conflict of law analysis, notwithstanding the Tribunal's understanding that there is no identity of subject matter and no conflict between the treaties.

215.    The Parties and the EC have raised a number of potential mechanisms by which they submit that the Tribunal should resolve any alleged conflict between the EU Treaties and the ECT. These are (i) the *lex posterior* rule in Article 30 VCLT; (ii) the rule regarding the modification of multilateral treaties in Article 41(1)(b) VCLT; (iii) Article 351 TFEU as *lex specialis*; and (iv) Article 16 ECT as *lex specialis*. In effect, the Tribunal is asked to resolve a potential conflict between the different conflict rules.

### 1.    *Lex posterior*

216.    Respondent argues that pursuant to Article 30(4)(a) VCLT, the EU Treaties prevail over the ECT.[128] This *lex posterior* rule provides that where there are two successive treaties relating to the same subject matter, and the two parties to the earlier treaty are also parties to the later treaty, "the earlier treaty applies only to the extent that its provisions are compatible with those of the later treaty".

217.    There are several difficulties with applying the rule of *lex posterior* to the present case. One is that the Tribunal agrees with Claimants that the general rule of *lex posterior* contained in

---

[128]    Respondent's Second Submission re the ECJ Judgment, ¶ 32(a).

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

Article 30 VCLT is a subsidiary one. Where a treaty includes specific provisions dealing with its relationship to other treaties, such as appear in Article 16 ECT, the *lex specialis* will prevail.

218.    In addition, it is by no means clear that the EU Treaties are the "later treaty" under Article 30 VCLT. The current Articles 267 and 344 TFEU have existed in substantively similar form since a time prior to the conclusion of the ECT, and have only been renumbered in the successive versions of the EU Treaties.[129]

### 2.    Modification of the ECT

219.    Regarding Article 41(1) VCLT, this provides that "[t]wo or more of the parties to a multilateral treaty may conclude an agreement to modify the treaty as between themselves alone if . . . (b) The modification in question is not prohibited by the treaty". It is further required that the modification does not affect the enjoyment by the other parties of their rights and performance of their obligations, and that the modification in question "does not relate to a provision, derogation from which is incompatible with the effective execution of the object and purpose of the treaty as a whole".

220.    The EC relies on this provision to assert that the following legal rules and provisions "could be interpreted" as a modification of the ECT, on the basis that they "have been re-affirmed by Germany and Sweden subsequent to the ratification of the ECT":

> [T]he investment protection rules of [EU] law, as well as the principles concerning the competences and the system of judicial protection, including in particular the general principle of autonomy of [EU] law, Articles 4(3) and 19 TEU and Articles 267 and 344 TFEU . . . [130]

221.    The Tribunal is not persuaded by this argument. It is unclear what precise modification of the ECT is alleged to have taken place. Moreover, the Tribunal considers that the

---

[129]    Article 267 TFEU was previously Article 234 of the Treaty Establishing the European Community of 1992 ("**TEC**"), and prior to that it was originally Article 177 of the Treaty of Rome in 1957. Likewise, Article 344 TFEU was previously Article 292 TEC, and originally Article 219 of the Treaty of Rome.

[130]    EC 2018 Submission, ¶ 88.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

modification proposed by the EC would be "prohibited by the treaty", contrary to Article 41(1)(b) VCLT. Specifically, Article 16 ECT prevents the EU Treaties from being construed so as to derogate from more favourable rights of the Investor in Parts III and V ECT, including the right to dispute resolution.

### 3.    *Lex specialis*

222.   The Tribunal considers that *lex specialis* should determine which rule of international law will prevail. However, the Parties have put forward two potential conflict clauses as *lex specialis* in the present case: Article 351 TFEU and Article 16 ECT.

223.   Article 16 ECT, entitled "Relation to Other Agreements", is set out at ¶ 192 above. It specifically addresses how to construe certain provisions of the ECT, or provisions of other agreements, in circumstances where other international agreements concern the subject matter of Part III or V ECT. The rule is that the ECT may not be construed to derogate from a more favourable provision or right to dispute resolution under another agreement. Likewise, another agreement may not be construed to derogate from a more favourable provision under Part III or V ECT, or any related right to dispute resolution under the ECT.

224.   On the other hand, Respondent and the EC rely on Article 351 TFEU in support of their arguments in favour of EU law. It provides as follows:

> The rights and obligations arising from agreements concluded before 1 January 1958 or, for acceding States, before the date of their accession, between one or more Member States on the one hand, and one or more third countries on the other, shall not be affected by the provisions of the Treaties.
>
> To the extent that such agreements are not compatible with the Treaties, the Member State or States concerned shall take all appropriate steps to eliminate the incompatibilities established. Member States shall, where necessary, assist each other to this end and shall, where appropriate, adopt a common attitude.
>
> In applying the agreements referred to in the first paragraph, Member States shall take into account the fact that the advantages accorded under the Treaties by each Member State form an integral part of the

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

establishment of the Union and are thereby inseparably linked with the creation of common institutions, the conferring of powers upon them and the granting of the same advantages by all the other Member States.

225.  A plain reading of Article 351 TFEU does not support the outcome sought by Respondent or the EU. Article 351 TFEU relates to agreements between EU Member States and "third states", i.e., non-EU Member States. However, the EC and to a certain extent Respondent argue that the Tribunal must apply an *a contrario* reading of Article 351(1) TFEU, which leads to the conclusion that between EU Member States, the rights and obligations arising from agreements concluded with other EU Member States prior to accession are displaced by the EU Treaties.

226.  Notably, this alleged conflict rule is not contained in the wording of Article 351 TFEU itself. It requires a significant amount of interpretation to derive the outcome sought by Respondent and the EC.

227.  In the Tribunal's view, the clearer conflict rule in Article 16 ECT must prevail over a rule derived from an *a contrario* interpretation of Article 351 TFEU which cannot be found in the text of the TFEU itself. As a matter of public international law, the Tribunal cannot be asked to leave aside a clear rule in favour of a countertextual one. This is the case irrespective of whether or not EU law is considered to prevail over international treaties within the EU internal legal order.

228.  As for Article 351(2) TFEU, Respondent argues that this "confirms" that the ECT has been superseded by the more recent EU Treaties.[131] However, this language merely contains an obligation upon Member States to "take all appropriate steps to eliminate" any incompatibilities between the EU Treaties and other agreements entered into with third States. It does not concern intra-EU treaties at all. In addition, it does not support a view that any incompatible provisions become invalid or inapplicable, since Member States must take action to eliminate them.

---

[131]    Respondent's Second Submission re the ECJ Judgment, ¶ 32(c); Respondent's 2018 Observations, ¶ 21.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

229.   The Tribunal therefore finds that Article 16 ECT is *lex specialis* as a conflict of laws rule in the present case. In the Tribunal's view, Article 16 poses an insurmountable obstacle to Respondent's argument that EU law prevails over the ECT. The application of Article 16 confirms the effectiveness of Article 26 and the Investor's right to dispute resolution, notwithstanding any less favourable terms under the EU Treaties. If the Contracting Parties to the ECT intended a different result, and in particular if they intended for EU law to prevail over the terms of the ECT for EU Member States, it would have been necessary to include explicit wording to that effect in the Treaty. The need for such a provision is reinforced by the existence of Article 16 ECT, since it points to the opposite result.

### E.    ENFORCEABILITY OF THE DECISION

230.   Respondent has raised the issue of the enforceability of the Tribunal's decision if it were to uphold jurisdiction in spite of Respondent's objection. While the Tribunal is mindful of the duty to render an enforceable decision and ultimately an enforceable award, the Tribunal is equally conscious of its duty to perform its mandate granted under the ECT. For all the reasons outlined in previous Sections, this Tribunal is compelled to uphold jurisdiction over Respondent's objection on the basis of EU law. The enforceability of this decision is a separate matter which does not impinge upon the Tribunal's jurisdiction.

231.   In respect of Respondent's allegations relating to the three breaches of EU law, the Tribunal considers it important to clarify that in this Decision, the Tribunal is concerned only with the implications of the ECJ Judgment on the jurisdiction of the Tribunal over the dispute between Claimants and Respondent. The Tribunal is not concerned with whether Claimants' actions, either of continuing this arbitration or of seeking an enforcement of an award of compensation, if any, would amount to a breach of EU law. Thus, the Tribunal considers it unnecessary and inappropriate to determine Respondent's allegations concerning the possible breaches of EU law that Claimants' actions might result in. The Tribunal considers it equally unnecessary and inappropriate to determine whether such breaches, if any, would be attributable to the home State, i.e., Sweden.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

## VI.    DECISION

232.    FOR THE FOREGOING REASONS, the Tribunal decides as follows:

(i)    DECLARES that Respondent's jurisdictional objection of 4 April 2018 contained in its First Submission re the ECJ Judgment in *Achmea* of 6 March 2018 has been raised in a timely manner;

(ii)    REJECTS Respondent's request for all claims pending before this Tribunal to be dismissed because the Tribunal has no jurisdiction in the light of the ECJ Judgment in *Achmea* of 6 March 2018;

(iii)    RESERVES all other issues relating to the jurisdiction, admissibility and merits of these arbitral proceedings for subsequent determination by the Tribunal; and

(iv)    RESERVES the decision on costs.

*Vattenfall AB and others v. Germany*
ICSID Case No. ARB/12/12
Decision on the *Achmea* Issue

THE ARBITRAL TRIBUNAL

_____
The Honourable Charles N. BROWER
Arbitrator

Date: 22 August 2018

_____
Professor Vaughan LOWE
Arbitrator

Date: 24 August 2018

_____
Professor Albert Jan VAN DEN BERG
President of the Tribunal

Date: 29 AUGUST 2018