

ICSID (INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES)

ICSID Case No. ARB/13/31

ANTIN INFRASTRUCTURE SERVICES LUXEMBOURG S.À.R.L. AND ANTIN ENERGIA TERMOSOLAR B.V. V. KINGDOM OF SPAIN

DECISION ON THE CONTINUATION OF THE PROVISIONAL STAY OF ENFORCEMENT OF THE AWARD

21 October 2019

Tribunal:
Cavinder Bull (President)
José Antonio Moreno Rodríguez (Member)
Nayla Comair-Obeid (Member)

*Reproduced with the permission of the International Centre for Settlement of Investment Disputes*

Voir le document sur jusmundi.com



# Table of Contents

Decision on the Continuation of the Provisional Stay of Enforcement of the Award ............................................................. 1
I. PROCEDURAL BACKGROUND .......................................................................................................................................... 1
II. THE APPLICANT'S POSITION .......................................................................................................................................... 1
A. The standard for granting a stay of enforcement ........................................................................................................ 2
B. Whether the circumstances require a stay .................................................................................................................. 3
The Applicant's annulment application is well-founded ................................................................................................. 3
The Claimants will not be prejudiced if the stay is continued ......................................................................................... 4
The Applicant will be prejudiced if the stay is not continued ......................................................................................... 4
C. Whether security should be ordered ........................................................................................................................... 6
III. THE CLAIMANTS' POSITION ........................................................................................................................................... 6
A. The standard for granting a stay of enforcement ........................................................................................................ 6
B. Whether the circumstances require a stay .................................................................................................................. 8
The Claimants will be prejudiced by the granting of a stay ............................................................................................ 8
The Applicant will not be prejudiced by the lack of a stay ............................................................................................. 9
The merits of the annulment application are irrelevant ................................................................................................ 11
C. Whether security should be ordered ......................................................................................................................... 12
IV. THE COMMITTEE'S ANALYSIS ..................................................................................................................................... 12
A. The applicable legal standard .................................................................................................................................... 12
B. Whether the circumstances require the stay to be continued .................................................................................. 15
Prejudice suffered by the Applicant if a stay is not granted ......................................................................................... 15
Prejudice suffered by the Claimants if a stay is granted ............................................................................................... 17
Merits of the Applicant's annulment application ......................................................................................................... 18
C. Whether security should be ordered ......................................................................................................................... 18
V. DECISION AND ORDERS .................................................................................................................................................. 18



# Decision on the Continuation of the Provisional Stay of Enforcement of the Award

## I. PROCEDURAL BACKGROUND

1. This Decision addresses the Applicant's application for the continuation of a provisional stay of enforcement of the ICSID award rendered on 15 June 2018 in *Antin Infrastructure Services Luxembourg S.à.r.l. and Antin Energia Termosolar B.V. v. Kingdom of Spain*, ICSID Case No. ARB/13/31 (the "**Arbitration**"), as rectified by the Tribunal's Decision on Rectification of the Award on 29 January 2019 (the "**Award**").

2. On 3 September 2019, the Applicant filed its Submission in Support of the Continuation of a Provisional Stay of Enforcement of the Award (the "**Submission**").

3. On 9 September 2019, the Respondents (also referred to herein as the "**Claimants**"), filed their Response to Spain's Submission in Support of the Continuation of the Provisional Stay of Enforcement of the Award (the "**Response**").

4. On 12 September 2019, the Applicant filed its Reply to the Claimants' Response (the "**Reply**").

5. On 16 September 2019, the Claimants filed their Rejoinder to Spain's Submission in Support of the Continuation of the Provisional Stay of Enforcement of the Award (the "**Rejoinder**").

6. The Committee heard the Parties' representatives at a teleconference on 18 September 2019, following which the Committee issued Procedural Order No. 1 on 20 September 2019. After hearing the Parties, the Committee, among other things, invited the Applicant to present a brief statement on European Union ("**EU**") law issues in response to the Claimants' arguments in their Rejoinder.

7. The Applicant filed its further submissions on 30 September 2019 (the "**Further Submissions**"). With the Committee's leave, the Claimants filed their response to the Applicant's further submissions on 7 October 2019 (the "**Response to Further Submissions**").

8. Sections II and III of this Decision summarise the Parties' positions and arguments in the present application. Section IV sets out the reasons for the Committee's decision. The Committee's decision and orders are stated in Section V.

9. Naturally, Sections II and III are not meant to serve as an exhaustive review of the Parties' submissions, but as a summary of the arguments that are relevant to the Committee's analysis and findings. Regardless, the Committee has carefully considered all the submissions made by the Parties.



## II. THE APPLICANT'S POSITION

10. The Applicant seeks the continuation of the provisional stay of the Award rendered in the Arbitration. It argues that the prevailing practice of ICSID *ad hoc* annulment committees has been to stay enforcement of an award during the pendency of annulment proceedings. There is no reason to depart from this practice in the present application given the merits of the Applicant's annulment application, the absence of prejudice on the part of the Claimants, and the prejudice that the Applicant would suffer if a stay is denied.

## A. The standard for granting a stay of enforcement

11. The Applicant argues that the usual practice amongst ICSID *ad hoc* annulment committees has been to grant stays of enforcement as a matter of course unless there are circumstances warranting otherwise.[1] It cites in support the *ad hoc* committee's holding in *Occidental v. Ecuador* that "[t]he prevailing practice in prior annulment cases has been to grant the stay of enforcement;"[2] and the statement of the *ad hoc* committee in *Victor Pey Casado* that "absent unusual circumstances, the granting of a stay of enforcement pending the outcome of the annulment proceedings has now become almost automatic."[3] Further, the Applicant also notes that, of the 55 ICSID annulment cases where stays of enforcement were sought, 39 were successful.[4]

12. The Applicant argues that, in light of this prevailing practice, enforcement of the Award should continue to be stayed unless there are unusual circumstances requiring otherwise,[5] such as where the annulment application is clearly brought "'*without any basis under the Convention*'" or "'*dilatory*' in nature" (emphasis in original).[6] The Applicant rejects the notion that a stay of enforcement may only be granted in "exceptional circumstances," noting that such a requirement is not found in the ICSID Convention, the Arbitration Rules, or any of the arbitral jurisprudence cited by the Claimants.[7]

13. On the issue of the burden of proof, the Applicant cites the holding of the annulment committee in *Standard Chartered Bank v. Tanzania* that "[no] particular party [in a stay application] bears the burden of establishing circumstances requiring a stay."[8] The burden of proving certain issues, such as the existence of any prejudice to the Claimants caused by the stay, rests on the Claimants and

---

[1] Submission, ¶¶9-10.

[2] Submission, ¶7; Occidental Petroleum Corporation and Occidental Exploration and Production Company v. The Republic of Ecuador, ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award dated September 30, 2013 ("Occidental"), Spain Annex XXIII, ¶50.

[3] Submission, ¶8; Víctor Pey Casado and Foundation "Presidente Allende" v. Republic of Chile, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Application for a Stay of Enforcement of the Award dated May 5, 2010 ("Victor Pey Casado"), Spain Annex XXIV, ¶25.

[4] Reply, ¶11; Table of ICSID Cases Where Stay of Enforcement was Requested, Spain Annex 034.

[5] Submission, ¶4.

[6] Submission, ¶9; citing MTD Equity Sdn Bhd. and MTD Chile S.A. v. The Republic of Chile, ICSID Case No. ARB/01/7, Decision on the Respondent's Request for a Continued Stay of Execution dated June 1, 2005 ("MTD Equity"), Spain Annex XXVI, ¶28.

[7] Reply, ¶¶17-21.

[8] Reply, ¶27; Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited, ICSID Case No. ARB/10/20, Decision on Applicant's Request for a Continued Stay on Enforcement of the Award dated April 12, 2017 ("Standard Chartered"), Spain Annex 040, ¶53.



not the Applicant.[9]

## B. Whether the circumstances require a stay

14. The Applicant, in its Submission and Reply, highlights the following circumstances in support of its request for the stay to be continued:

    a. the Applicant's annulment application is well-founded and not frivolous or dilatory;

    b. there would be no prejudice or harm caused to the Claimants if the stay is continued; and

    c. the Applicant would be seriously prejudiced if a stay is not granted.

### The Applicant's annulment application is well-founded

15. The Applicant submits that "[i]f frivolousness of an annulment application is a factor in determining whether to grant or deny a stay, then the seriousness of the annulment application must necessarily be considered."[10] Insofar as the Applicant's annulment application is brought on serious grounds and not frivolously, this "weighs in favor of the stay."[11]

16. The Applicant argues that even a cursory analysis of its annulment application shows

    that it is well-grounded.[12] The Applicant contends that:

    a. the need for the Tribunal to rectify the Award by 11 million euros is evidence that the Award is flawed;[13]

    b. the Tribunal acted in manifest excess of its power by exceeding its jurisdiction under the Energy Charter Treaty ("ECT") and EU law, failing to apply the proper law, and acting outside the Parties' consent to arbitration;[14]

    c. the Tribunal, in preventing the Applicant from introducing into the record the European Commission's ("EC") Decision on State Aid issued in November 2017 and rejecting the intervention of the EC as *amicus curiae* in the Arbitration, failed to allow the Applicant to fully present its case, thus departing from a fundamental rule of procedure;[15]

    d. the Award fails to state the reason for the Tribunal's disregard for EU law and the calculations

---

[9] Reply, ¶28.
[10] Reply, ¶31; citing Quiborax S.A. and Non-Metallic Minerals S.A. v. Plurinational State of Bolivia, ICSID Case No. ARB/06/2, Decision on the Application to Terminate the Provisional Stay of Enforcement of the Award dated February 21, 2017, Spain Annex XXVIII, ¶58.
[11] Reply, ¶36.
[12] Reply, ¶31.
[13] Submission, ¶11.
[14] Submission, ¶12.
[15] Submission, ¶13.



for the damages are unreasonable and incoherent.[16]

## The Claimants will not be prejudiced if the stay is continued

17. The Applicant raises several arguments for why the Claimants will not be prejudiced by the continuation of the stay. <u>First</u>, under the terms of the Award, the Claimants are entitled to compound interest of 2.07% per month from the date of the Award to the date of payment of all sums due under the Award.[17] The Applicant claims that any delay caused in the enforcement of the Award can be sufficiently remedied by the payment of interest.[18]

18. <u>Secondly</u>, the Applicant also claims that there is little risk that the Claimants will be unable to obtain payment under the Award. It is the fifth-largest economy in the European Union and the 13th in the world in terms of GDP.[19] There is no danger of the Applicant being unable to pay the Award should the annulment application fail. Further, the Applicant states that it takes its international commitments under the ICSID Convention seriously and does not have a history of non-compliance.[20]

19. <u>Thirdly</u>, the Applicant rejects the Claimants' argument that they would be prejudiced by being "pushed to the back of a long line of award-creditors" in the event of a stay.[21] The Applicant argues that any argument that prejudice will be caused to the Claimants must be "fully proven" and rest on "unmistakable proof."[22] The Claimants' case on prejudice, however, is speculative and unsupported by evidence.[23]

## The Applicant will be prejudiced if the stay is not continued

20. The Applicant argues that it would be prejudiced in the absence of a stay. <u>First</u>, the Applicant points out that if the Award is annulled after its enforcement, the Applicant will have to initiate proceedings in various courts and jurisdictions to recover the monies paid out under the Award.[24] Further, there is no provision for interest or any form of compensation to be made in respect of the Applicant's recovery efforts.[25]

21. <u>Secondly</u>, the Applicant submits that it may not be able to recover the amounts paid to the

---

[16] Submission, ¶14.
[17] Submission, ¶17.
[18] Submission, ¶16; citing Azurix Corp. v. The Argentine Republic, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award dated December 28, 2007 ("Azurix"), Spain Annex XXV, ¶40.
[19] Submission, ¶20.
[20] Submission, ¶21.
[21] Reply, ¶¶37, 39; Response, ¶64.
[22] Reply, ¶¶38-39.
[23] Reply, ¶¶37-39.
[24] Reply, ¶54.
[25] Reply, ¶¶53-54.



Claimants if the Award is annulled after its enforcement. There is a possibility that the Claimants could have dissolved, become insolvent, or dissipate the proceeds from the Award before the Applicant can recoup them. [26]

22. Thirdly, the Applicant argues that the granting of a stay would address the Applicant's conflict between (i) its obligation under the Treaty on the Functioning of the European Union ("**TFEU**") to avoid making payments that might constitute incompatible State Aid, and (ii) its obligation to make payment of the Award under the ICSID Convention. [27]

23. According to the Applicant, Article 107(1) of the TFEU restricts the provision of any State-granted aid that distorts or threatens to distort competition and trade between Member States. The Applicant states that it must, pursuant to Article 108(3) of the TFEU, inform the EC of "any plans to grant or alter aid" and to refrain from implementing any plans until the EC has authorised them. [28]

24. The Applicant argues that the payment of the Award constitutes notifiable State Aid, as determined by the EC in Decision C (2017) 7384 dated 10 November 2017 ("**EC's Decision**"). [29] The EC's Decision is relevant as the EC had, contrary to the Claimants' contention, reviewed Spain's original renewable energy policy regime governing the Claimants' investments and concluded that the payments made under the regime constituted State Aid. [30] The Applicant must, pursuant to Article 108(3) of the TFEU, submit the Award to the EC to determine whether such payment constitutes incompatible State Aid. [31]

25. If the Award is enforced in its current form and payment is obtained by Claimants, and then the EC determines that the Award is incompatible State Aid, the Applicant would then be required to commence recovery proceedings in respect of any amounts paid under the Award. [32] There may also be additional litigation if the Claimants challenge the EC's determination. [33] Finally, the Applicant may also be exposed to financial sanctions imposed by the EC if it fails to recover the amounts paid to the Claimants. [34] A stay of enforcement, the Applicant submits, would prevent Parties from having to engage in proceedings that may turn out to be unnecessary if the Award is annulled. [35]

26. Lastly, the Applicant argues that its obligations under the TFEU supersede its public international law obligations under the ICSID Convention and the ECT. This is pursuant to the principles of *lex posteriori* enshrined in Articles 30(1) and 30(3) of the Vienna Convention of the Law of Treaties ("**VCLT**"), which provides that where States are parties to successive treaties which "relat[e] to the same subject matter," "the earlier treaty applies only to the extent that its provisions are compatible with those of the later treaty." [36] The TFEU Treaty, which was adopted on 13 December

---

[26] Reply, ¶55.
[27] Reply, ¶85.
[28] Reply, ¶¶90, 92.
[29] Reply, ¶96; Further Submissions, ¶30; Spain Annex XXXII.
[30] Further Submissions, ¶¶32-34.
[31] Reply, ¶¶75, 90-98.
[32] Reply, ¶76.
[33] Reply, ¶77.
[34] Further Submissions, ¶48.
[35] Reply, ¶¶79-80; Further Submissions, ¶46.



2007, post-dates the ICSID Convention, which was adopted by Spain on 21 March 1994.[37] The provisions of the ICSID Convention thus apply only to the extent they are compatible with those of the TFEU on the same subject-matter.[38]

27. The Applicant also argues that the TFEU takes precedence over the ICSID Convention under the doctrine of *lex specialis*.[39] The Applicant contends that Article 53 of the ICSID Convention is a general rule that should give way to the provisions of the TFEU which regulate a "very specific obligation of the Member States regarding a particular aspect of the Union's internal market."[40] Finally, the Applicant contends that the TFEU should take precedence over the ECT and the ICSID Convention due to the "primacy" principle in EU law, according to which EU law takes precedence between EU Member States – which include Spain and the home countries of the Claimants – over the provisions of other treaties.[41]

## C. Whether security should be ordered

28. The Applicant submits that no security ought to be ordered as a condition for continuing the stay as such an order would put the Claimants in a better position than they would be in if no annulment proceeding was commenced.[42] Such security should hence only be ordered in cases where the award creditor would be prejudiced by the continuation of the stay.[43] In the present case, the provision of interest is sufficient to compensate for any delay in the enforcement of the Award.[44]

# III. THE CLAIMANTS' POSITION

## A. The standard for granting a stay of enforcement

29. The Claimants argue that the Applicant has failed to "set out the relevant legal test for the Committee's consideration of whether to impose a permanent stay of the Award."[45] The Claimants reject the Applicant's submission that a permanent stay of enforcement is the norm during the pendency of ICSID annulment proceedings and point out recent ICSID jurisprudence suggesting the opposite to be true.[46] The Applicant must therefore show the existence of relevant circumstances which require the stay to be continued and cannot presume that a stay would ordinarily be

---

[36] Reply, ¶113.
[37] Reply, ¶114; Further Submissions, ¶13.
[38] Reply, ¶117; Further Submissions, ¶12.
[39] Further Submissions, ¶16.
[40] Further Submissions, ¶20.
[41] Further Submissions, ¶¶15, 28; Spain Annex 053.
[42] Submission, ¶23.
[43] Submission, ¶23; citing Victor Pey Casado, Spain Annex XXIV, ¶29.
[44] Reply, ¶136; citing Azurix, Spain Annex XXV, ¶40.
[45] Response, ¶3.
[46] Response, ¶3; Rejoinder, ¶23.



granted.⁴⁷ Further, it is not incumbent on the Claimants to prove that they would be prejudiced by the stay.⁴⁸

30. <u>First</u>, the Claimants highlight the principle of finality enshrined in Article 53(1) of the ICSID Convention. Article 53(1) provides that "[t]he award shall be binding on the parties and shall not be subject to any appeal" and that "[e]ach party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention."⁴⁹ Accordingly, "once an ICSID tribunal renders an award, the award debtor is under an immediately binding international obligation to satisfy the award in full."⁵⁰

31. <u>Secondly</u>, the Claimants point out that the remedy of annulment is, in line with the principle of finality in ICSID awards, a narrow and exceptional one. A stay of enforcement in respect of an annulment proceeding is likewise exceptional.⁵¹ The Claimants cite in support of this position the observation of the *ad hoc* committee in *Burlington v. Ecuador* that "the stay of enforcement is an exception in the context of the remedy of annulment that is itself limited and exceptional."⁵²

32. <u>Thirdly</u>, the Claimants argue that the use of the term "require" in Article 52(5) of the ICSID Convention is intentional and reflects the strict enforcement regime created under the ICSID Convention. They cite in support the observation of the *ad hoc* committee in *OI European v. Venezuela* that "[Article 52(5)] does not use other less categorical verbs, such as 'recommend,' 'deserve,' 'justify' or similar words, but resorts to the imperative verb 'require.'"⁵³ The choice of the word "require" means that "not just any circumstances, even if relevant to the case, may justify a stay; the circumstances must be sufficiently compelling so as to 'require' a stay."⁵⁴

33. <u>Fourthly</u>, the Claimants disagree with the Applicant's suggestion that it is "standard practice" for ICSID annulment committees to grant stays of enforcement.⁵⁵ The Claimants cite various recent ICSID decisions rejecting the notion that there is a presumption in favour of granting request for a stay in such proceedings.⁵⁶ They also critique the Applicant's use of statistics to demonstrate the prevailing ICSID practice, arguing that the Applicant's statistics are (i) incomplete and out-of-date,⁵⁷ and (ii) in any case, irrelevant since the statistics do not reveal the specific circumstances of each

---

⁴⁷ Response, ¶32.

⁴⁸ Response, ¶4.

⁴⁹ Response, ¶¶11-12.

⁵⁰ Response, ¶13.

⁵¹ Response, ¶¶16-19.

⁵² Response, ¶16; citing Burlington Resources Inc. v. Republic of Ecuador (formerly Burlington Resources Inc. and others v. Republic of Ecuador and Empresa Estatal Petróleos del Ecuador (PetroEcuador)), ICSID Case No. ARB/08/5, Decision on Stay of Enforcement of the Award ("Burlington"), Claimants Annex 16, ¶73.

⁵³ Response, ¶22; citing OI European Group B.V. v. Bolivarian Republic of Venezuela, ICSID Case No. ARB/11/25, Decision on Stay of Enforcement of the Award ("OI European"), Claimants Annex 12, ¶89.

⁵⁴ Response, ¶23, citing Border Timbers Limited and others v. Republic of Zimbabwe, ICSID Case No. ARB/10/25, Decision on Stay of Enforcement of the Award ("Border"), Claimants Annex 15, ¶78.

⁵⁵ Response, ¶25.

⁵⁶ Response, ¶¶25-26, 28; citing Ioannis Kardassopoulos and Ron Fuchs v. Georgia, ICSID Case No. ARB/05/18 and ARB/07/15, Decision of the Ad Hoc Committee on the Stay of Enforcement of the Award ("Kardassopoulos"), Claimants Annex 5, ¶26; Valores Mundiales, S.L. and Consorcio Andino S.L. v. Bolivarian Republic of Venezuela, ICSID Case No. ARB/13/11, Decision on the Request for a Continuation of the Stay of Enforcement of the Award ("Valores Mundiales"), Claimants Annex 19, ¶83; Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain, ICSID Case No. ARB/13/36, Decision on Stay of Enforcement of the Award ("Eiser"), Claimants Annex 18, ¶48.

⁵⁷ Rejoinder, ¶31.

 

case and the committee's reasoning in deciding whether to grant a stay. [58]

34. <u>Fifthly</u>, the Claimants submit that the Applicant bears the primary burden of establishing that circumstances exist which requires a stay. In this regard, the Claimants note that although the Applicant cites *Standard Chartered v. Tanzania* for the proposition that "[no] one particular party bears the burden of proof," the committee in *Standard Chartered* also observed that the stay applicant is required to "specify the circumstances requiring the stay" and to "advance grounds (supported as necessary by evidence) for the stay." [59]

## B. Whether the circumstances require a stay

35. The Claimants submit that the Applicant has not shown the existence of circumstances requiring the stay to be continued. [60]

## The Claimants will be prejudiced by the granting of a stay

36. The Claimants argue that they would be prejudiced by the granting of a stay as there is no certainty that they would be able to recover the sums under the Award and any delay in enforcement would make successful recovery even more difficult.

37. <u>First</u>, the Claimants submit that there is a real risk that the Applicant would fail to comply with the Award. This is based on (i) the Applicant's history of non-compliance with past ICSID awards rendered against it, and (ii) the Applicant's assertion that the payment of the Award is contingent on the EC's authorisation. [61]

38. The Claimants reject the Applicant's claim to have "no history of non-compliance." [62] They note that the Applicant "has yet to pay any of the eight awards arising from the same renewable energy measures that were at issue in this case." [63] The award in *Eiser v. Spain*, for example, has not been satisfied by the Applicant despite having the stay on enforcement lifted more than a year ago. [64]

39. The Claimants cite the Applicant's statement that it would only pay the Award upon authorisation by the EC as evidence of the difficulties in enforcing the Award. They draw a parallel between the present case and *Micula v. Romania*, where the annulment committee found that Romania's position that it may not be able to pay the award due to a potential conflict with its obligations under EU law "created a 'probable risk' that Romania would not comply with the award." [65]

---

[58] Rejoinder, ¶32.
[59] Rejoinder, ¶40; Standard Chartered, Spain Annex 040, ¶53.
[60] Response, ¶40; Rejoinder, ¶41.
[61] Response, ¶41.
[62] Response, ¶42.
[63] Response, ¶42.
[64] Response, ¶42.
[65] Response, ¶44; citing Ioan Micula, Viorel Micula, S.C. European Food S.A, S.C. Starmill S.R.L. and S.C. Multipack S.R.L. v. Romania, ICSID Case No. ARB/05/20, Decision on Annulment, Claimants Annex 9, ¶35.



40. <u>Secondly</u>, the Claimants contend that the continuation of the stay would prejudice them by pushing them "to the back of a long line of award-creditors." [66] They note that the Applicant is defending over 39 pending international arbitration cases, most of which arise from the same set of measures at issue in the underlying Arbitration. [67] Of these, at least eight have resulted in final awards against the Applicant amounting to a total of almost EUR 690 million plus interest. [68] Award-creditors have launched enforcement proceedings to recover the monies owed by the Applicant under at least six other awards. [69] In this context, any delay in the enforcement of the Award would relegate the Claimants to "the back of [the] queue [of award creditors]," thus reducing their chances of being able to recover the limited number of the Applicant's assets that can be seized outside the Applicant's territory. [70]

41. <u>Thirdly</u>, the Claimants argue that the payment of interest is an inadequate remedy for the prejudice that they would suffer as a result of any delay in enforcement. They submit that post-award interest is compensatory and not a pretext to undermine the Award's finality or affect its enforcement. [71] The granting of a stay "can[not] be affected by the question of whether the award creditor was awarded post-award interest." [72] In any case, it is the Claimants' view that the interest of the Award is not sufficient to offset the increased risk that they would not be paid at all, which is precisely why they are expending effort and resources to have the stay lifted. [73]

# The Applicant will not be prejudiced by the lack of a stay

42. The Claimants submit that the Applicant would not suffer any prejudice if the stay is not continued.

43. Financially, the Claimants argue that the Applicant has not shown that it will face irreparable harm or particular economic hardship if a stay was not granted. [74] The Applicant's only complaint in this regard is the difficulties that it might face in recouping any sums that it has paid if the Award is annulled. However, "[a]s noted by the *ad hoc* committee in *SGS*, that the losing party may have to pay the award only later to be reimbursed 'is the natural consequence of the enforcement regime created by the ICSID Convention, where a stay is the exception and not the rule.'" [75]

44. The Claimants further submit that the Applicant has not established that it would be unable to recoup payment from the Claimants should its annulment application succeed. [76] The Claimants

---

[66] Response, ¶64.

[67] Response, ¶64.

[68] Response, ¶64.

[69] Response, ¶64

[70] Response, ¶64.

[71] Response, ¶62; citing Eiser, Claimants Annex 18, ¶60.

[72] Response, ¶63; citing Sempra Energy International v. Argentine Republic, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award ("Sempra"), Claimants Annex 2, ¶85.

[73] Rejoinder, ¶84.

[74] Response, ¶56; citing OI European, Claimants Annex 12, ¶¶117-122; citing SGS Société Générale de Surveillance S.A. v. Republic of Paraguay, ICSID Case No. ARB/07/29, Decision on Paraguay's Request for the Continued Stay of Enforcement of the Award ("SGS"), Claimants Annex 7, ¶92.

[75] Response, ¶57; citing SGS, Claimants Annex 7, ¶93.

[76] Response, ¶68.



note that, in cases where a stay was granted because of a considerable risk of non-recoupment, the award-creditor was insolvent or a natural person.[77] The Claimants are solvent corporations.[78] In any case, any concerns of non-recoupment can be addressed by ordering for the Award to be paid into an escrow account pending the outcome of the annulment proceedings.

45. Additionally, the Claimants disagree that the Applicant's obligations under EU law justify the granting of a stay.

46. First, the Claimants argue that the Applicant's alleged obligation to refrain from paying the Award under EU law is irrelevant to the question of whether a stay should be granted.[79] As a threshold matter, the Committee derives its mandate from the ICSID Convention and not EU law.[80] The ICSID Convention, in turn, does not allow for a stay pending resolution of matters of internal or regional law. The final and binding nature of ICSID awards means that they are not subject to any restriction except annulment.[81] In any case, the Claimants point out that the Applicant's conflict between its international law and EU law obligations would exist and must be resolved irrespective of whether the stay is granted. The granting of a stay only postpones, but does not affect, the resolution of the conflict.[82]

47. Secondly, the Claimants submit that the Applicant's argument that it cannot pay the Award absent the EC's authorisation fails under public international law. Under public international law, the Applicant's obligations to pay the Award under the ICSID Convention and the ECT take precedence over any conflicting provisions under EU law based on the treaty interpretation principles of *lex posteriori* and *lex specialis*.[83]

48. Under the principle of *lex posteriori*, the provisions of the ICSID Convention post-date and take precedence over those of the TFEU. This is because the Applicant had acceded to the relevant TFEU obligations in 1986 whilst the TFEU was known as the Treaty Establishing the European Economic Community ("**TEEC**").[84] Similarly, the ECT, which the Applicant signed in 1994, post-dates and takes precedence over the TFEU.[85] In any event, the principle of *lex posteriori* under Article 30 of the VCLT only applies to successive treaties relating to the "same subject-matter," and the Applicant has not shown how the provisions of the TFEU and the ICSID Convention concern the same subject-matter.[86]

---

[77] Response, ¶69; citing MTD Equity, Spain Annex XXVI, ¶29; CMS Gas Transmission Company v. Argentine Republic, ICSID Case No. ARB/01/8, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, Spain Annex XXVII, ¶38; Mr. Patrick Mitchell v. Democratic Republic of Congo, ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award ("Patrick Mitchell"), Claimants Annex 1, ¶24; Karkey Karadeniz Elektrik Uretim A.S. v. Islamic Republic of Pakistan, ICSID Case No. ARB/13/1, Decision on the Stay of Enforcement of the Award, Claimants Annex 17, ¶105.

[78] Response ¶69.

[79] Rejoinder, ¶49.

[80] Rejoinder, ¶49.

[81] Rejoinder, ¶49.

[82] Rejoinder, ¶50, citing Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain, ICSID Case No. ARB/13/36, Annulment Proceeding Procedural Order No. 2, Claimants Annex 32, '47.

[83] Rejoinder, ¶54.

[84] Rejoinder, ¶55.

[85] Rejoinder, ¶55.

[86] Response to Further Submissions, ¶¶7-8, 10-14.



49. Under the principle of *lex specialis*, the provisions of the ICSID Convention likewise take precedence over those in the TFEU as they specifically govern the granting of stays of enforcement in ICSID proceedings and the enforcement of ICSID awards.[87] Separately, the provisions of the ECT, which expressly purports to take precedence over prior, inconsistent treaties, should prevail over those of the TFEU.[88]

50. The Claimants also deny that there is any principle of primacy in EU law that give EU law precedence over treaty provisions such as those in the ICSID Convention.[89] The Applicant draws this principle of primacy from Declaration 17 of the Final Act of the Intergovernmental Conference adopting the TFEU.[90] Declaration 17, however, states that EU law takes primacy over "the law of Member States", and not over treaties or the Member States' international obligations.[91]

51. <u>Thirdly</u>, the Claimants submit that the Applicant's argument also fails under EU law. The Award does not constitute State Aid under EU law as it does not (i) confer an economic advantage; (ii) appear to be granted selectively; (iii) use State resources; and (iv) distort competition and affect trade between Member States.[92] In particular, the Award does not confer a selective economic advantage on the Claimants as it is not a gratuitous benefit but a lawful requirement to provide restitution caused by the unlawful action of the Applicant.[93]

52. The Claimants also dismiss the relevance of the EC's Decision. The question of whether the payment of the Award constitutes State Aid is an objective one, and any views expressed by the EC are not binding on the Committee.[94] Additionally, the EC did not review the specific question of whether the Award or the original renewable energy policy regime under which the Claimants invested constitute State Aid.[95]

53. The Claimants argue that the Applicant's alleged notification of the Award to the EC does not trigger its standstill obligation under Article 108(3) of the TFEU. This is because the Award is not State Aid.[96] Moreover, there is no indication that the EC has advised the Applicant that it is prohibited from paying the Award.[97]

## The merits of the annulment application are irrelevant

---

[87] Rejoinder, ¶58; Response to Further Submissions, '17.
[88] Rejoinder, ¶¶59-67.
[89] Response to Further Submissions, ¶19.
[90] Further Submissions, ¶15.
[91] Response to Further Submissions, ¶19.
[92] Rejoinder, ¶70.
[93] Rejoinder, ¶71.
[94] Rejoinder, ¶¶73-74; Response to Further Submissions, ¶21; citing French Republic v. Ladbroke Racing Ltd and Commission of the European Communities, C 83/98 P, EU:C:2000:248, Judgment of 16 May 2000, Claimants Annex 26, ¶25; citing BNP Paribas and BNL v. European Commission, C-452/10 P, EU:C:2012:366, Judgment of 21 June 2012, Claimants Annex 28, ¶ 100; citing Carrefour Hypermarchés SAS and Others v. Ministre des finances et des comptes publics, C 510/16, EU:C:2017:929, Opinion of Advocate General of 30 November 2017, Claimants Annex 30, ¶36.
[95] Rejoinder, ¶75; Response to Further Submissions, ¶¶22-25.
[96] Rejoinder, ¶77.
[97] Rejoinder, ¶78.



54. The Claimants argue that the merits of the annulment application should have no bearing on the Committee's decision on whether to grant a stay. As held by the committee in *Kardassopoulos*, "the granting of a stay with or without conditions does not require an analysis of the importance of the issues." [98] Indeed, "it would not be proper to look at the merits of the case" at the present stage, given that the Claimants have not yet had the chance to respond to the Applicant's annulment application. [99]

## C. Whether security should be ordered

55. The Claimants' primary position is that the stay should be lifted. In the alternative, the Claimants submit that should a stay be granted, such a stay should be conditional on the Applicant's provision of appropriate security. [100] In particular, the Claimants propose that the Applicant be ordered to pay the full amount of the Award, plus interest, into an escrow account in the United States and payable to the Claimants immediately upon receipt of a Committee decision rejecting annulment. [101] Alternatively, the Applicant may also be ordered to provide a binding and unconditional written undertaking to pay the Award promptly and in full upon the dismissal of its annulment application. [102]

56. The Claimants submit that such an order would not prejudice the Applicant provided that the Applicant is sincere in its intention to comply with the Award if it is not annulled. [103] It would also not place the Claimants in a better position than they would have occupied prior to the annulment proceeding; the Claimants will be no better off having the security than they would be if the Award was enforced and complied with. [104]

## IV. THE COMMITTEE'S ANALYSIS

## A. The applicable legal standard

57. The Committee begins its analysis with the text of the ICSID Convention under which the stay application is made. Article 52(5) of the ICSID Convention provides that:

"The Committee may, *if it considers that the circumstances so require*, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request." (emphasis added)

---

[98] Response, ¶71; Kardassopoulos, Claimants Annex 5, ¶26.
[99] Response, ¶72; Eiser, Claimants Annex 18, ¶59.
[100] Response, ¶76.
[101] Response, ¶77a.
[102] Response, ¶77b.
[103] Response, ¶78.
[104] Response, ¶79; citing Sempra, Claimants Annex 2, ¶95.



58. In the Committee's view, the language of Article 52(5) makes it clear that a stay should be continued only if there are circumstances *requiring* such a stay. If the Committee is satisfied that such circumstances exist, it may then exercise its discretion under Article 52(5) to continue or lift the stay. Such an approach maintains fidelity to the language of Article 52(5) and is consistent with the positions taken by other ICSID annulment committees.[105]

59. This then raises the question as to when a stay may be considered to be "required." The Committee notes the Parties' disagreement as to the relevant standard that must be met. The Applicant contends that "a stay should be granted unless it is obvious that the application is '*without any basis under the Convention*' and is '*dilatory*' in nature" (emphasis in original) and cites in support the past practice of ICSID committees in liberally granting stays of enforcement.[106] The Committee should thus not be slow in finding that the circumstances require the granting of a stay. The Respondents, on the other hand, argue that stays are exceptional measures that run against the principle of finality undergirding ICSID awards.[107] They should thus only be granted in cases where the circumstances are sufficiently compelling.[108]

60. The Committee considers that the circumstances which should exist for a stay to be required must, at the very least, rise above those which are common to most stay applications. This is to avoid any presumption that a stay would be granted once there is an application for the annulment of an award. Such a presumption would be, in the Committee's mind, contrary to the language of the ICSID Convention, the recent jurisprudence of ICSID annulment committees, and the principle that ICSID awards should be final and binding. This is elaborated on below.

61. The plain text of Article 52(5) of the ICSID Convention requires the Committee to apply its mind to "consider" if the circumstances require a stay to be granted. This requirement would be irrelevant if there was a presumption in favour of granting requests for a stay – if such a presumption existed, the Committee's primary consideration would be whether the circumstances require a stay to be *refused*, not whether they require one to be granted. For this reason, the Committee regards such a presumption as being inconsistent with the language of Article 52(5).

62. Further, ICSID jurisprudence also suggests that the continuation of a stay cannot be presumed. While the Applicant argues that ICSID annulment committees have historically been generous in granting stays of enforcement, such a view is not reflected in recent ICSID annulment committees. The *ad hoc* committee in *Kardassopoulos*, for example, unequivocally stated that:

"Stay of enforcement during the annulment proceeding is by no way automatic, quite to the contrary, a stay is contingent upon the existence of relevant circumstances which must be proven by the Applicant."[109]

63. Similarly, the 2018 decision of *Valores Mundiales v. Venezuela* observed that:

---

[105] Eiser, Claimants Annex 18, ¶¶46-47; Border, Claimants Annex 15, ¶78.

[106] Submission, ¶¶7-9; citing Occidental, Spain Annex XXIII, ¶50; citing Victor Pey Casado, Spain Annex XXIV, ¶25; citing Azurix, Spain Annex XXV, ¶22.

[107] Response, ¶20.

[108] Response, ¶23; citing Eiser, Claimants Annex 18, ¶48; citing Border, Claimants Annex 15, ¶78; citing SGS, Claimants Annex 7, ¶ 85.

[109] Kardassopoulos, Claimants Annex 5, ¶26.



"In view of th[e] exceptional nature [of the stay], the Committee does not believe it is possible to admit the existence of a presumption in favor of maintaining the stay of the enforcement of the award. In the opinion of the Committee, *the practice of most committees that have decided in favor of the continuation of the stay, to which Venezuela refers, is not enough to prove the existence of such a presumption*. Even less can it be said that the stay is 'almost automatic', as stated the Committee in the case *Pey Casado* and as now proposed by Venezuela. This position has been rejected with convincing arguments by several committees and in recent years some committees have ordered the lifting of the stay..." (emphasis added) [110]

64. In light of the above, the Committee does not accept that there is a prevailing practice amongst ICSID annulment committees which supports the existence of a presumption, whether *de jure* or *de facto*, in favour of granting a stay. In any case, the Committee considers the statistics provided by the Applicant to be of limited usefulness, given that no details are provided regarding the facts of each case and the legal reasoning applied by the committees involved.

65. In the premises, the Committee considers a presumption in favour of granting a stay to run counter to the principle that ICSID awards are final and binding. This principle of finality is enshrined in Article 53(1) of the ICSID Convention, which states that:

"The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention... Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of the Convention."

66. The Committee considers that the need to respect the finality of the award calls for greater restraint in deciding whether a stay of enforcement should be granted. In this respect, the Committee agrees with the following observations by the *ad hoc* committee in *SGS v. Paraguay* :

"The actions taken by the 'Contracting Parties', who created the ICSID system must lead us to the conclusion that *the binding nature of the award is the rule, whereas its annulment is the exception*. The ICSID system is built on the premise that the awards rendered by ICSID tribunals settle in a definite manner the issues submitted to their consideration, and that only under exceptional and highly limited circumstances may their annulment be declared.

*The inevitable consequence of the foregoing reasoning is that, despite an application for annulment, awards must be enforced and only in very specific cases where the circumstances so require, may enforcement be stayed by the corresponding committee*." (emphasis added) [111]

67. For the foregoing reasons, the Committee concludes that there is no presumption in favour of granting a request for a stay. As a corollary, stays may only be granted in cases where there are special or particular circumstances that bring the case outside the run of usual annulment applications and which compels the granting of a stay. Circumstances that are usual to most annulment applications cannot, even if relevant, be sufficient to justify the continuation of a stay.

---

[110] Valores Mundiales, Claimants Annex 19, ¶83 (Claimants' translation).

[111] SGS, Claimants Annex 7, ¶¶84-85.



If such circumstances suffice, then stays would be required in most, if not all, annulment applications. This, as discussed above, cannot be right.

## B. Whether the circumstances require the stay to be continued

68. As stated in Sections III and IV above, the circumstances raised by the Parties generally fall into three categories, namely:

    a. prejudice suffered by the Applicant if the stay is not granted;

    b. prejudice suffered by the Claimants if a stay is granted; and

    c. merits of the Applicant's annulment application.

### Prejudice suffered by the Applicant if a stay is not granted

69. The Applicant submits that it would be prejudiced if a stay is not granted as it will have to (i) take on the burden and risks of recovering any sums paid out under the Award, and (ii) deal with conflicting international and regional obligations under various treaties. The Claimants' reply that the Applicant (i) would face no particular difficulty in recovering the sums from the Claimants should the Award be annulled, and (ii) has no conflicting international obligations that would prejudice the Applicant if the stay is continued.

70. The Applicant argues that if the Award was enforced and subsequently annulled, it would have to commence litigation proceedings across various courts and jurisdictions to recover the amounts paid out under the Award.[112] Further, there is a risk of non-recoupment given the possibility that the Claimants would have dissolved, become insolvent or dissipated the sums paid under the Award.[113] None of these risks and burdens would be compensated for as the Award does not provide for any kind of interest or payment to be made to the Applicant.[114]

71. The Claimants' response is that the prejudice being complained of by the Applicant is speculative. The Claimants are solvent corporations and there is no evidence that they will be unable to return the sums paid out to them.[115] Further, insofar as the Applicant will have to initiate proceedings to recover the Award sums, immediate enforcement is a natural and intended consequence of Article 53 of the ICSID Convention and does not create any special inconvenience for the Applicant.[116]

72. In the Committee's view, the burdens and risks raised by the Applicant are common to virtually all annulment applications. They are, as the Claimants put it, a natural consequence of the annulment proceedings. Such circumstances cannot, as explained at paragraph 67 above, be sufficient to

---

[112] Reply, ¶54.
[113] Reply, ¶55.
[114] Reply, ¶53.
[115] Response, ¶69.
[116] Rejoinder, ¶80.



require a stay.

73. The analysis may be different if the Claimants were, for example, shown to be in financial distress or on the brink of insolvency. However, in the absence of any allegation that the Applicant bears an unusually high financial burden or risk in connection with the recovery of the award monies, the Committee cannot consider the Applicant's situation to be a circumstance requiring a stay to be granted.

74. On the issue of conflicting international obligations, the Applicant submits that the lifting of the stay would put it in "a very difficult position under conflicting international obligations."[117] The Claimants have levelled a number of criticisms against this argument, which are summarised at paragraphs 45 to 53 above.

75. The Committee does not see how a stay of enforcement would help to resolve any alleged conflict between the Applicant's international obligations. The Applicant states at various points in its submissions that "[i]f a stay is not granted, [the Applicant] will be put in a very difficult position under conflicting international obligations"[118] and that "Article 52(5) offers a solution to this incompatibility [between the Applicant's international obligations]: the granting of a stay."[119] However, it appears to the Committee that a stay would not resolve any of the conflicts that the Applicant purports to face. If the stay is subsequently lifted, the conflicts return. In this regard, the Committee notes that the *ad hoc* committee in *Eiser* expressed a similar sentiment when faced with such an argument:

"If the argument is that seeking clearance would create a contradiction between the ICSID Convention Rules and EU law, this issue, together with the need to request clearance from the EU, has been heavily debated by the Parties. *The Committee considers that Spain has not shown that the manner through which or the process that will be followed to comply with its obligation contained in Article 53(1) of the ICSID Convention would be affected by the fact that the request for stay is granted or denied* now or when the final ruling of the Committee is issued. Thus, the Committee denies this ground for [the] request to stay the enforcement of the Award." (emphasis added)[120]

76. Further, while the Committee appreciates the difficulties faced by the Applicant in resolving its legal quagmire, it is reluctant to find that this constitutes a prejudice requiring the granting of a stay. In the Committee's mind, it would be unfair to the Claimants if the Award was stayed due to a legal conundrum of the Applicant's own making. Insofar as the Applicant willingly chose to undertake international obligations that may conflict with each other, it cannot thereafter complain of prejudice once these conflicts arise.

77. For these reasons, the Committee does not regard the Applicant's possible conflict of obligations as a circumstance requiring the granting of a stay. Even if there are legal problems in connection with the enforcement of the Award, the Committee does not consider the present application to be the

---

[117] Reply, ¶110.
[118] Reply, ¶110.
[119] Reply, ¶118.
[120] Eiser, Claimants Annex 18, ¶69.



appropriate forum for the resolution of these problems or a stay of enforcement the appropriate solution.

## Prejudice suffered by the Claimants if a stay is granted

78. The Claimants submit that they will be prejudiced by the granting of a stay as it will move them "to the back of a long line of award-creditors," thus diminishing their chances of successfully recovering the sums under the Award.[121] They point out that the Applicant is subject to 39 pending international arbitration cases, of which at least eight have resulted in awards against the Applicant.[122] Any delay in enforcement would reduce the Claimants' chances to recovering the limited number of the Applicant's assets that can be seized outside its territory.[123]

79. The Applicant dismisses the Claimants' argument as speculative.[124] The Applicant notes that it has a strong economy and no history of non-compliance with awards.[125] There is no concern that the Applicant would lack the resources to comply with the Award. Further, any prejudice to the Claimants caused by a delay in enforcing the Award can be remedied by the payment of interest.[126]

80. In the Committee's view, there is insufficient evidence to show that the continuation of the stay would occasion significant prejudice to the Claimants. While the number of award-creditors claiming against the Applicant and the sums being claimed may reasonably cause the Claimants anxiety, these do not in themselves demonstrate a real risk that the Award would not be enforceable against the Applicant. Accordingly, the Committee does not see the Claimants' prejudice as being a significant factor against the continuation of the stay.

81. For the above reasons, the Committee is not satisfied that either party would suffer serious prejudice whether the stay is lifted or continued. However, bearing in mind that Article 52(5) of the ICSID Convention calls for circumstances "requiring" a stay and that there is no presumption in favour of continuing a stay, the Committee finds that the stay should, on balance, not be continued. Had the Applicant shown that the lifting of the stay would cause it an unusual degree of prejudice, then the stay should be continued notwithstanding the Claimants' arguments on delay. In the absence of such prejudice, however, the stay should not remain.

82. For completeness' sakes, the Committee observes that the payment of interest should not be considered a sufficient remedy for any prejudice caused by a delay in the Award's enforcement. The Committee agrees with the observation in *Eiser* that the payment of post-award interest is to "compensate for the deprivation of the principal until payment of the award, but they are not directly related to the issue of enforcement of the award."[127] Given that the prejudice complained of by the Claimants directly relates to difficulties in enforcement (and not the loss of use of the funds under the Award), the payment of interest is not an adequate remedy.

---

[121] Response, ¶64.
[122] Response, ¶64.
[123] Response, ¶64.
[124] Reply, ¶39.
[125] Submission, ¶¶20-21.
[126] Submission, ¶¶16-17.
[127] Eiser, Claimants Annex 18, ¶60.



## Merits of the Applicant's annulment application

83.   The Committee does not consider the merits of the Applicant's annulment application to be a relevant circumstance showing that a stay is required. In *Patrick Mitchell v. Democratic Republic of Congo*, for example, the committee held that, in the context of stay proceedings, "any discussion on the merits and on the chances of annulment of the Award would be misplaced."[128] Likewise, the committee in *Standard Chartered Bank v. Tanzania* also recognised the prevailing view that "the *prima facie* grounds for annulment are not relevant to whether an applicant on annulment is entitled to a stay."[129] The Committee agrees with those views.

## C. Whether security should be ordered

84.   In light of the Committee's view that there are no circumstances requiring the Award to continue being stayed, there is no need for the Committee to consider the Parties' submission on whether security should be ordered.

## V. DECISION AND ORDERS

85.   For the reasons stated above, the Committee:

a. decides that the stay of enforcement of the Award should not be continued; and

b. reserves the issue of costs on this Application to a further order or decision.

---

[128] Patrick Mitchel, Claimants Annex 1, ¶26.
[129] Standard Chartered, Spain Annex 040, ¶60.

