# INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

**Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l.**
Respondent on Annulment

v.

**Kingdom of Spain**
Applicant on Annulment

**(ICSID Case No. ARB/13/36) – Annulment Proceeding**

## PROCEDURAL ORDER No. 2

*Members of the Committee*
Mr. Ricardo Ramírez Hernández, President of the Committee
Mr. Makhdoom Ali Khan, Member of the Committee
Judge Dominique Hascher, Member of the Committee

*Secretary of the Committee*
Ms. Mairée Uran Bidegain

10 August 2018

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding

**Procedural Order No. 2**

## I. PROCEDURAL HISTORY

1. On 23 March 2018, the *ad hoc* Committee issued a decision on the Applicant's Submission in Support of Continuation of the Provisional Stay of Enforcement of the Award rendered on 4 May 2017 in *Eiser Infrastructure Limited and Energía Solar Luxembourg S.à.r.l v. Kingdom of Spain* (ICSID Case No. ARB/13/36) (the "**Stay Decision**"). On the decision, the Committee:

   > "a. Decides that there are no circumstances that require the stay to be continued pending its decision on annulment.
   >
   > b. Confirms and gives full effect to Claimants' undertaking to '*promptly … repay Spain any and all amounts received in satisfaction of the Award to the extent that the annulment application is successful*' and not to '*disburse or transfer any amounts received in satisfaction of the Award to their investors or to any other third party while the annulment proceeding is ongoing (or thereafter to the extent the annulment application is successful).*' To this effect, the Committee orders Claimants to submit, with all the necessary formalities, such undertaking to the Kingdom of Spain." (emphasis in original)

2. On 4 April 2018, following the resignation of Ms. Teresa Cheng, the Secretary-General notified the Parties of the vacancy on the *ad hoc* Committee and suspended the proceeding pursuant to ICSID Arbitration Rules 53 and 10(2).

3. On 20 April 2018, following the resignation of Ms. Teresa Cheng, Makhdoom Ali Khan accepted his appointment as member of the Committee, in accordance with ICSID Arbitration Rules 11(1) and 53. The proceeding resumed on that day, in accordance with ICSID Arbitration Rules 12 and 53.

4. On 31 May 2018, the Kingdom of Spain ("**Spain**" or the "**Applicant**") filed a Request for Modification of the Committee's Decision on Stay of Enforcement of the Award (the "**Modification Request**").

5. On that same date, Eiser Infrastructure Limited and Energía Solar Luxembourg S.à.r.l ("**Eiser**", "**Eiser Parties**" or the "**Claimants**") submitted a letter, requesting, among others, that the Committee confirm that the undertaking provided by the Claimants on 18 April "satisfies the '*necessary formalities*' as required by the Decision" (the "**Claimants' 31 May Letter**")

6. On 1 June 2018, the Committee invited each Party to provide observations, if any, on the other Party's communication of 31 May, by 11 June 2018.

7. On 6 June 2018, the Claimants filed a response alleging that the Modification Request is procedurally improper and should be dismissed for lack of legal merit. The Claimants also requested an extension of time to file their observations on the Modification Request until 22 June 2018.

1

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 3 of 16
Case 1:18-cv-01686-CKK   Document 25-3   Filed 01/14/19   Page 37 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

8. On 8 June 2018, the *ad hoc* Committee invited the Claimants to provide their response to the Modification Request by 22 June 2018, and asked the Parties to abstain from furnishing further unauthorized submissions.

9. On 11 June 2018, the Applicant provided its observations on the Claimants' 31 May Letter (the "**Applicant's 11 June Letter**").

10. On 22 June 2018, the Claimants filed their Response to Spain's Modification Request (the "**Response**").

## II. POSITION OF THE PARTIES

### A. The Applicant's Position

#### 1. The Modification Request

11. In its submission of 31 May, Spain requests that the Committee modify its Stay Decision, to allow the continuation of the stay of enforcement of the Award. The Applicant grounds its Modification Request on Arbitration Rule 54(3). Among others, the Applicant raises the arguments summarized below.

12. *First*, Spain contests the legal standard applied by the Committee. According to Spain, by requiring Spain to show that there were circumstances justifying a stay of the Award, the Committee applied a strict interpretation of Article 52(5) of the ICSID Convention and Arbitration Rule 54(2). In particular, for the Applicant, the Committee diverted from "a long line of ICSID annulment cases in which *ad hoc* committees … grant[ed] stays as a matter of ordinary practice, unless there were exceptional circumstances that militated against the stay."[1] In the Applicant's view, the Committee failed to fully consider the prejudice caused to Spain by lifting the Stay, when both Parties had agreed that this was one of the material factors to grant or deny the Stay. Spain further considers that, in any event, even applying this strict standard, the conflict of international legal obligations explained below present compelling circumstances warranting a stay of the enforcement of the Award.

13. *Second*, Spain alleges that the imminent conflict of international obligations that would result from lifting the stay constitutes "unique circumstances" justifying the Modification Request.[2] In particular, the Applicant alleges that if the "premature payment" of the Award were ordered, Spain's obligations to comply with the Award under the ICSID Convention, would be in direct conflict with its obligations as a Member State of the European Union ("**EU**"), under the Treaty on the Functioning of the European Union ("**TFEU**"). Spain submits that this conflict of

---

[1] Modification Request, paras. 21-23 (emphasis omitted).

[2] Modification Request, paras. 2 and 9.

Case 1:19-cv-01618-TSC   Document 24-10   Filed 1/2/2019   Page 4 of 16
Case 1:18-cv-01686-CKK   Document 25-3   Filed 01/14/19   Page 38 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

obligations was not adequately considered and understood by the Committee on the Stay Decision and this is why it is attempting to clarify its position through the Modification Request.[3] To do so, Spain reinstates a number of arguments previously submitted, including that granting the stay pending the outcome of the annulment is required to prevent the materialization of the conflict of international obligations, in circumstances where there are serious grounds for annulment.

14. Spain explains that if the stay is lifted, the Applicant would need to obtain clearance from the European Commission ("**EC**") before honoring the Award, or else it would be in breach of the standstill obligation contained in the EU treaties.[4] In the alternative, if the payment is made right now without obtaining clearance, or if the Eiser Parties could obtain payment through enforcement proceeding before such payment is declared compatible State aid, the Applicant could be "liable for financial sanctions" if it fails to recover the amount paid to Claimants.[5] On the contrary, if the stay is granted during the pendency of the annulment proceeding, Spain would be permitted to wait and determine whether it needs to submit to the EC either (a) the original Award; (b) a modified award reducing the compensation due; or (c) not have to submit the Award at all if the annulment is successful, avoiding thereby the conflict altogether. Accordingly, "the 'final ruling of the Committee' … will have a material impact on the 'process that will be followed to comply' with Spain's obligations under the ICSID Convention."[6]

15. Apart from the consequences already mentioned, if Spain abides by its EU obligations and fails to comply with the Award and its ICSID Convention obligations, this may result in the exercise of diplomatic protection from the United Kingdom and Luxembourg, countries from which Claimants are nationals, and affect thereby Spain's reputation and position in the international community. As an example, the premium rates applicable to the Multilateral Investment Guarantee Agency for Spain may be affected by the noncompliance of ICSID awards.

16. Thus, the Applicant contends that lifting the Stay may expose Spain to "financial liability, reputational damage, and unnecessary burden and expense, all of which may be entirely unnecessary if the annulment is successful, and which should be avoided if possible."[7] Accordingly, considering the potential harms mentioned above, it is Spain's position that the Committee did "not appear to have fully considered the prejudice that would be caused to Spain by lifting the stay."[8]

---

[3] Modification Request, paras. 9-10 and 39.

[4] Modification Request, paras. 29-33.

[5] Modification Request, paras. 39-40.

[6] Modification Request, para. 28 (emphasis in original).

[7] Modification Request, para. 27.

[8] Modification Request, para. 24.

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 5 of 16
Case 1:18-cv-01686-CKK   Document 25-3   Filed 01/14/19   Page 39 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

17. Spain argues that its position has been strengthened by the recent decision of the Court of Justice of the European Union ("**CJEU**") on *Slovak Republic v. Achmea BV* ("**Achmea**"). The Applicant notes that based on this decision, many commentators argue that ordering the payment of an arbitral award from the defendant EU Member State might be considered as (unlawful) State aid under Article 107 TFEU, and, eventually, the enforcement of the award might fail.[9] This, says Spain, discredits the Claimants' allegation that this conflict is hypothetical or fabricated by Spain.

18. In sum, Spain declares that if the stay of enforcement is lifted, it "will (i) be liable for breaching its obligations under either the ICSID Convention or the TFEU; (ii) face the financial consequences resulting therefrom; (iii) suffer reputational damage; (iv) be forced to spend time and resources on obtaining clearance from the EC, including potential proceedings for recovering any amount paid to or obtained by the Eiser Parties pursuant to the *Eiser* Award; and (v) be forced to devote time and resources to litigate enforcement actions commenced by the Eiser Parties."[10]

### 2. The Undertaking

19. Spain declares that the Committee did not "expressly lift the stay, but set forth a condition ordering the [Claimants] to submit an undertaking to the Kingdom of Spain, 'with all the necessary formalities'" for the stay to be lifted.[11] According to Spain, "[t]o date, the Eiser Parties have not satisfied" this requirement and so the obligation to pay the Award has not yet arisen.[12] The Undertaking was a "fundamental condition" aimed at ensuring Spain's recovery of funds paid to the Eiser Parties under the Award. This risk indeed increased by the existence of a third-party funder and thus the undertaking is essential.

20. Spain explains that on 2 April, the Claimants provided a first letter signed by Gibson Dunn, purporting to confirm Eiser's undertaking in the terms ordered by the Award. Since this document was unsatisfactory to Spain, the Eiser Parties provided an additional document under the letterhead of Eiser Infrastructure.[13] Spain contends that neither of these documents where accompanied by "supporting documentation" confirming in satisfactory terms their signatories' authority to bind the Claimants in regard to the undertaking.[14] Instead, the Claimants provided corporate registries listing the signing individuals as corporate officers, but no information concerning the extent of their authority to bind the entities. Spain considers that "[m]erely identifying the individuals as directors is not sufficient. There must be some

---

[9] Modification Request, para. 37.

[10] Modification Request, para. 51 (emphasis in original).

[11] Modification Request, para. 16.

[12] Modification Request, para. 18.

[13] Applicant's 11 June Letter, p. 2.

[14] Modification Request, paras. 18-20.

4

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

further explanation and information, such as, for example, the by-laws of the entities, powers of attorney, or other corporate documents."[15] Spain further contends that

> "the corporate registry extracts provided by the Eiser Parties do not indicate the 'scope and limits of the powers of those individuals in their respective capacities for each of the Eiser Parties, and the requirements that must be followed to exercise such powers.' The Eiser Parties do not contest that the powers of the individuals who signed the April 18 Letter may be limited, subject to specific requirements or capable of being overridden by other officers or shareholders of the entities…. [T]he fact that under English and Luxembourg laws companies may be bound by their directors even if they have acted *ultra vires* is not sufficient to ensure the enforceability of the undertaking purportedly made by the Eiser Parties."[16]

21. Therefore, according to Spain, the "condition" has no yet occurred and the stay of enforcement continued, pending such evidence. Moreover, the Applicant requests the "Committee to confirm that the Eiser Parties must submit sufficient evidence of the authority of the individuals who sign the undertaking to be submitted by them, including corporate documents and/or powers of attorney, and that the stay of enforcement shall continue in effect until such evidence is submitted."[17]

B. **Eiser's Position**

1. **Eiser's Opposition to the Modification Request**

22. Eiser asserts that the provisional stay granted under Rule 54(1) is no longer in place and asks that Spain's Modification Request be dismissed as procedurally improper and/or because it lacks legal merits.

23. *First*, the Claimants consider that Spain's Modification Request has no basis on ICSID Arbitration Rule 54(3) as Spain is not seeking to *modify* the Stay Decision, but instead it is seeking a *reconsideration* of the Committee's decision denying its previous stay request. In the Claimants' views, Arbitration Rule 54(3) only applies to potentially modify a decision, when a stay has in fact been granted or continued by an *ad hoc* committee, not when it has been denied.[18]

---

[15] Applicant's 11 June Letter, p. 4.

[16] Applicant's 11 June Letter, pp. 4-5.

[17] Applicant's 11 June Letter, p. 5.

[18] Response, para. 2.2.

5

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 7 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 41 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

24. According to Eiser, in its Stay Decision the Committee made clear that "the provisional stay was no longer in place as no circumstances required it to be continued."[19] Contrary to Spain's assertions, Eiser submits that no conditions were set by the Committee to lift the stay. Claimants argue that the obligation to provide an undertaking "with all the necessary formalities,"[20] was set "separate and apart" of the discontinuance of the stay.[21] Since the request for a stay was denied, Spain cannot ground its request on ICSID Arbitration Rule 54(3). Thus, the request is procedurally improper.

25. *Second*, in relation to the legal standard, Eiser asserts that Spain's position on this matter is "plainly wrong as a matter of law"[22]. According to the Claimants, the Committee applied the correct legal test, based on the interpretation of the ICSID Convention in the form prescribed by the Vienna Convention on the Law of Treaties ("**VCLT**"), interpretation which is also consistent with a "long-line of ICSID jurisprudence, as highlighted by the Stay Decision."[23] The Claimants further assert that the Committee's interpretation of the legal standard applicable to this case is *res judicata* and allowing Spain to revisit it would "undermine due process and the judicial principle of certainty and finality."[24]

26. *Third*, with regard to the merits of the Modification Request, Eiser submits that Spain failed to offer new facts or circumstances justifying the Committee's reversal of the Stay Decision.[25] The Claimants reject Spain's contention that its arguments were not "fully understood and considered"[26] Instead, the Claimants consider that the "Committee was fully briefed and it understood and considered Spain's arguments, but it rejected them. Spain's discontent with the result is not a basis for Spain to seek reconsideration."[27] In any case, relying on prior ICSID case law, the Claimants assert that the Committee's Stay Decision has *res judicata* effect on the issues in dispute between the Parties, and this from the moment the Stay Decision was rendered. The Committee should not reverse its decision in the absence of new facts or a significant change of circumstances.[28]

---

[19] Response, para. 2.3.

[20] Stay Decision, para. 71.

[21] Response, para. 2.5.

[22] Response, para. 4.8.

[23] Response, para. 4.8.

[24] Response, para. 4.5.

[25] Response, para. 3.4

[26] Modification Request, para. 9.

[27] Response, para. 3.5.

[28] Response, paras. 3.6 to 3.12 (quoting *ConocoPhillips v. Venezuela*, ICSID Case No. ARB/07/30, Decision on the Respondent's Request for Reconsideration, 10 March 2014, (CL-0300), para. 21; *Perenco Ecuador Limited v. Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Ecuador's Reconsideration Motion, 10 April 2015

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 8 of 16
Case 1:18-cv-01686-CKK   Document 25-3   Filed 01/14/19   Page 42 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

27. This condition, according to the Claimants, is not present in this case and Spain itself recognizes that its Modification Request "is merely a rehash of the arguments it already made (and fully pled) in its four previous written submissions seeking a continuation of the stay."[29] Claimants submit that Spain's position on the issue of the Stay has already been presented to the Committee and rejected by it, including as it pertains to the alleged conflict of international obligations.

28. On this latter issue the Claimants consider that the Applicant "continues to misconstrue and misrepresent EU State aid rules in order to create an alleged '*conflict*' of international obligations where none exists."[30]  In support of their position, the Claimants reiterate or refer to a number of the arguments previously submitted, including the following:

    a. The 2017 EC November Decision, did not and could not, constitute an assessment on whether honoring the Award could constitute State aid, as such declaration must follow a particular procedure which has not taken place.[31]

    b. Even if the EC Decision addressed the measures in consideration in the Award, those "measures were found to involve compatible State aid in the EC Decision."[32]

    c. The EC Decision is not yet final as two appeals have been lodged against it.[33]

    d. Under TFEU Articles 107 and 108, there are four cumulative conditions that must be met for the payment of the Award to constitute state aid, which Spain has failed to address.[34]

    e. Even if Spain was under the obligation to notify the Award to the EC, that obligation arose with the Award over a year ago and a stay on the enforcement of the Award has no impact in its obligation to notify.[35]

    f. The conflicts of international obligations are hypothetical and could only arise if Spain pays the Award, the Award is deemed as incompatible state aid by the EC and Spain

---

(CL-0302), paras. 87 and 97; and *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited (TANESCO)*, ICSID Case No. ARB/10/20, Award, 12 September 2016, (CL-0303), para. 322).

[29] Response, para. 3.2.

[30] Response, para. 4.15 (emphasis in original).

[31] Response, paras. 4.16-4.17.

[32] Response para. 4.18 (emphasis omitted).

[33] Response, para. 4.19.

[34] Response, para. 4.20.

[35] Response, para. 4.21.

7

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 9 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 43 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

fails to pursue or recover the amount paid. According to Eiser, in any situation other than these improbable cumulative events, there would be no conflict.[36]

29. Eiser argues that this lack of conflict between international laws also shows that any allegation regarding reputational damages or other prejudices to Spain lack grounds.[37]

30. Regarding the reference made by Spain to the *Achmea* case, the Claimants state the referred CJEU decision has no relevance to this case. In their view, Spain's allegations lack sense considering that the decision "did not concern State aid, the Energy Charter Treaty or the ICSID Convention. Therefore it says nothing about the alleged conflict of international obligations Spain attempts to concoct in its Modification Request."[38]

31. Finally, Claimants state that the Modification Request is a dilatory tactic to avoid the payment of the Award which demonstrates that the Stay Decision was justified and no stay should be granted.

## 2. The Undertaking

32. On 8 May 2018, the Claimants provided an undertaking "on official Eiser Infrastructure Limited letterhead and signed by: (i) the sole director of Eiser Infrastructure Limited, Mr Hans Meissner; and (ii) all three directors of Energia Solar Luxembourg S.à r.l., Ms Gwenaëlle Cousin, Mr Hans Meissner and Mr Luca Berti, all '*duly authorised to sign for and on behalf of*' the Eiser Parties (the '**18 April 2018 Undertaking**')."[39] Contrary to Spain's allegations, the Claimants further declared that "[t]he 18 April 2018 Undertaking was (and still is) a valid and binding undertaking as a matter of law satisfying all the necessary formalities as required by the Decision."

33. The Eiser Parties reject the Applicant's assertion that the 18 April 2018 Undertaking is invalid because it was not signed by individuals having the power to bind and control the Eiser Parties. Among others, the Claimants contend that

> "the directors of a company have the authority to bind a company. This is true as a matter of both English and Luxembourg law. Moreover, as a matter of English law, third parties (such as Spain) can rely on acts of the directors as they are not '*bound to enquire as to any limitation on the powers of the directors to bind the company.*' Likewise, under Luxembourg law, a company is bound by the acts of its directors '*even*

---

[36] Response, paras. 4.22-23.

[37] Response, para. 4.30.

[38] Response, para. 4.29.

[39] Claimants' 31 May Letter, p. 2 (emphasis in original). *See* Annex C containing the 18 April 2018 Undertaking. The Claimants further specify that they provided Spain with copies of the corporate registry extracts for both of the Eiser Parties, confirming that the 18 April 2018 Undertaking's signatories are the authorized directors of the respective Eiser Parties.

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 10 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 44 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

*if those acts are ultra vires, unless it proves that the third party knew, or in the circumstances could have been aware, that the act was ultra vires.*' Equally, under Luxembourg law, any limitations placed on the powers of the directors by the companies' constitutional documents '*are not binding as against third parties.*'"[40]

34. The Claimants declare that Spain's objection is a dilatory tactic to avoid payment of the Award and to lodge the unmeritorious so-called "*modification*" Request."[41] Accordingly they ask the Committee to confirm that the 18 April 2018 Undertaking satisfies the 'necessary formalities' as required by the Decision.[42]

### III.   THE COMMITTEE'S ANALYSIS

35. Article 52(5) of the ICSID Convention provides the legal basis for the Committee's Stay Decision. According to this provision:

> "The Committee **may**, **if it considers that the circumstances so require**, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request." (emphasis added)

36. The analysis undertaken by the Committee in the Stay Decision was guided by the VCLT. Our examination was based on the text of Article 52(5) of the ICSID Convention, the discretionary nature of such provision as well as the context provided for by Article 53(1) of the ICSID Convention and ICSID Arbitration Rule 54. The Committee also found support for its interpretation in other decisions by *ad hoc* committees.

37. The Stay Decision addressed the rules applicable to the burden of proof and the arguments put forward to justify whether there were circumstances requiring staying enforcement of the Award pending the annulment decision. The Committee did not find circumstances that required the stay to be continued.

38. Spain's Modification Request is grounded on ICSID Arbitration Rule 54(3). We turn now to analyze the merits of this request.

---

[40] Claimants' 31 May Letter, p. 3 (references omitted).

[41] Response, para. 2.8.

[42] Claimants' 31 May Letter, p. 3.

9

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 11 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 45 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

### A. The Request for Modification of the Stay Decision

39. ICSID Arbitration Rule 54(3) establishes the following:

    "**If a stay of enforcement has been granted** pursuant to paragraph (1) **or continued** pursuant to paragraph (2), **the Tribunal or Committee may at any time modify or terminate the stay at the request of either party**. All stays shall automatically terminate on the date on which a final decision is rendered on the application, except that a Committee granting the partial annulment of an award may order the temporary stay of enforcement of the unannulled portion in order to give either party an opportunity to request any new Tribunal constituted pursuant to Article 52(6) of the Convention to grant a stay pursuant to Rule 55(3)." (emphasis added)

40. This provision refers to two scenarios where, at the request of either Party, the Committee may modify or terminate the stay: *(i) if a stay is granted pursuant to paragraph (1)* and *(ii) if a stay is continued pursuant to paragraph (2)*. Paragraph (1) of ICSID Arbitration Rule 54 allows "[t]he party applying for the interpretation, revision or annulment of an award … [to] request a stay in the enforcement of part or all of the award to which the application relates." Paragraph (2) provides that if an application for annulment contains a request for stay, the Secretary-General shall inform both parties of the provisional stay of the enforcement of the award. Furthermore, it states that: "[a]s soon as the Tribunal or Committee is constituted it shall, if either party requests, rule within 30 days on whether such stay should be continued; unless it decides to continue the stay, it shall automatically be terminated." Therefore, the two scenarios where a Committee may modify or terminate a stay refer to: *(i) a provisional stay granted once a Party requests such stay*, or *(ii) a stay continued once the Committee rules on a request*.

41. On 28 July 2017, both parties were informed of the provisional stay of the enforcement of the Award.[43] For this Committee to be able to modify or terminate a stay, Spain's Modification Request must refer to the second scenario, *i.e.* to a stay continued according to a decision by an *ad hoc* committee. According to Spain, "[i]n the Stay Decision, the Committee did not expressly lift the stay, but set forth a condition ordering the Eiser Parties to submit an undertaking to the Kingdom of Spain".[44] Spain contends that "[t]o date, the Eiser Parties have not satisfied the requirement of an undertaking with all the necessary formalities … and that the stay of enforcement continues."[45]

---

[43] Letter from ICSID to the Parties dated 28 July 2017, enclosing Notice of Registration.

[44] Modification Request, para. 16.

[45] Modification Request, paras. 18 and 20.

10

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 13 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 46 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

42. In its decision the Committee stated the following:

   "…the Committee hereby:

   a. **Decides** that **there are no circumstances that require the stay to be continued** pending its decision on annulment.

   b. **Confirms and gives full effect to Claimants' undertaking** to '*promptly … repay Spain any and all amounts received in satisfaction of the Award to the extent that the annulment application is successful*' and not to '*disburse or transfer any amounts received in satisfaction of the Award to their investors or to any other third party while the annulment proceeding is ongoing (or thereafter to the extent the annulment application is successful).*' To this effect, **the Committee orders Claimants to submit, with all the necessary formalities, such undertaking to the Kingdom of Spain**." (emphasis added)

43. From a holistic reading of both paragraphs it cannot be inferred that the stay will continue "conditioned" to the submission of the undertaking. If that would have been the case, the Committee would have employed different language such as the one used by other *ad hoc* committees:

   "The Committee therefore decides that the stay of enforcement … shall continue, provided that ... Enforcement of the Award … shall continue to be stayed until the date on which the *ad hoc* Committee issues its decision on the pending applications for annulment … under the following conditions …

   … the stay of enforcement of the Award will continue in effect for the duration of these annulment proceedings, on condition that …

   … The provisional stay on enforcement of the Award is extended until such time as the Committee determines, on the condition that … The Committee decides to continue the stay on enforcement of the Award pending a decision on the Application and subject to the conditions set out above …."[46]

---

[46] *Ioannis Kardassopoulos and Ron Fuchs v. Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the *Ad Hoc* Committee on the Stay of Enforcement of the Award, 21 November 2010 ("*Kardassopoulos v. Georgia*") (CL-0250), para. 45, pp. 22 and 23; *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009 ("*Sempra v. Argentina*") (CL-0258), para. 117; *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited*, ICSID Case No. ARB/10/20, Decision on Applicant's Request for a Continued Stay on Enforcement of the Award, 12 April 2017, ("*Standard Chartered Bank v. Tanzania*") (CL-0260), paras. 88 and 89.

Case 1:19-cv-01618-TSC Document 24-10 Filed 12/20/19 Page 13 of 16
Case 1:18-cv-01686-CKK Document 23-3 Filed 01/14/19 Page 47 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

44. A correct reading of its decision makes clear that, on one hand, the Committee determined that there are no circumstances requiring the continuation of the stay, and on the other, it gave full effect to Claimants' undertaking, ordering them to submit such undertaking with the necessary formalities. The language used by the Committee was unequivocal and the stay of enforcement was lifted with the Stay Decision. Consequently, Spain's Modification Request does not refer to a stay continued pursuant to paragraph (2) of ICSID Arbitration Rule 54 and, hence, the Committee finds no basis to modify any decision.

45. Notwithstanding and for the sake of completeness, the Committee wishes to address some issues raised by Spain in its Modification Request. Through its request, Spain attempts to "clarify the circumstances that require a stay of enforcement as a result of Spain's conflicting international obligations under the ICSID Convention and EU law" and contends that "unique circumstances" are present in this case.[47]

46. Although the submission mentions that "Spain is not asking the Committee to determine the merits of the Annulment Application now" and that it is not "arguing that 'it is not worth it to go through' the process of obtaining clearance from the EC because of the 'likelihood' that the annulment will be successful,"[48] it seems that *in fact* the underlying basis for its unique circumstances argument is that since the annulment application rests on solid grounds, Spain should not be forced to initiate *at this moment* its internal procedures and risk incurring in a violation of the ICSID Convention and the EU law. Its contention that "the strength of the application is a relevant factor in favor of a stay"[49] seems to support this conclusion despite the fact that the Stay Decision clarified that the merits of the annulment application did not amount to "circumstances" in terms of Article 52(5) of the ICSID Convention, they were not relevant for the decision on the continuation of the stay and that such an analysis would be misplaced.[50]

47. Throughout its submission, Spain argues on several occasions that the position it will face "may be entirely unnecessary *if the annulment is successful*"[51], "a stay would prevent this conflict … and potentially entirely eliminate the conflict *if the award is annulled*",[52] "*[i]f the Eiser Award is annulled in full*, no submission to the EC would be required. *If the Eiser Award is annulled in part*, Spain would only have to seek clearance for the modified *Eiser Award* and would avoid multiple procedures",[53] "[a]ll of the above would be moot *if the Eiser Award is*

---

[47] Modification Request, paras. 10 and 2.

[48] Modification Request, para. 27.

[49] Modification Request, para. 27.

[50] Stay Decision, paras. 56-59.

[51] Modification Request, para. 27 (emphasis added).

[52] Modification Request, para. 46 (emphasis added).

[53] Modification Request, para. 48 (emphasis added).

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 14 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 48 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

*annulled*."[54] Moreover, although Spain contends that the procedure it has follow to comply with its obligations will *be affected* by whether or not the request is granted or denied now,[55] it seems to the Committee that more than being affected such procedure would only be *postponed*. The only scenario where Spain would not need to initiate its proceedings would be if the award is annulled in full, which would be the result of postponing the enforcement of the award until a final decision on annulment is rendered.

48. Spain ultimately recognizes such effect when stating that "[a] stay would prevent this conflict from materializing *while the annulment proceedings are ongoing*"[56] and that "[a]dmittedly, if the Annulment Application is dismissed in its entirety, *the process to be followed before the EC would be the same after the final ruling* of the Committee".[57]

49. Therefore, Spain's Modification Request finds no legal basis on ICSID Arbitration Rule 54(3) nor in the circumstances it alleges once more as worthy of a decision to continue the stay of enforcement.

   **B.   The Undertaking provided by the Claimants**

50. On 2 April 2018, Claimants wrote a letter to Spain confirming their "undertaking not to disburse or transfer any amounts received in satisfaction of the Award to their investors or to any other third party while the annulment proceeding is ongoing (or thereafter to the extent the annulment application is successful)."[58] On 5 April 2018, Spain responded that such letter was "insufficient" and did not "contain the necessary formalities to evidence a valid and binding commitment of the Eiser Parties, as required by the Decision" since it was signed by the counsel to the Eiser Parties.[59] In particular, Spain contended that:

> "[t]here is no evidence that Gibson, Dunn & Crutcher LLP (or Jeff Sullivan) is authorized to bind or control any of the Eiser Parties in regard to corporate actions required for repayment of funds to the Kingdom of Spain at the conclusion of the annulment proceedings, if successful, or in regard to the disposition of any funds that may be received pursuant to the Award during the annulment proceedings".[60]

51. On 8 May 2018, Claimants provided an undertaking signed on 18 April 2018 by: (i) the sole director of Eiser Infrastructure Limited, Mr Hans Meissner; and (ii) the three directors of

---

[54] Modification Request, para. 51 (emphasis added).

[55] Modification Request, para. 28.

[56] Modification Request, para. 46 (emphasis added).

[57] Modification Request, para. 49 (emphasis added).

[58] Claimants' Letter, 2 April 2018 (Annex A, to Claimants' 31 May Letter.)

[59] Applicant's Letter, 5 April 2018, p. 1.

[60] Applicant's Letter, 5 April 2018, p. 2.

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 15 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 49 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

Energía Solar Luxembourg S.à r.l., Ms Gwenaëlle Cousin, Mr Hans Meissner and Mr Luca Berti. Claimants provided as well corporate registry extracts to confirm that the signatories are the authorized directors of the Eiser Parties.[61] Spain contends that such extracts do not provide "information concerning the extent of their authority to bind the entities" and "do not indicate the scope and limits of the powers of those individuals in their respective capacities".[62]

52. The undertaking provided by Claimants along with the letter dated 8 May 2018, contains the signature of the Director of Eiser Infrastructure Limited and the signature of three managers of Energía Solar Luxembourg S.à r.l. Additionally, the corporate extracts provided by Claimants state that Mr. Hans Rupprecht Wilhelm Meissner is the active Director of Eiser Infrastructure Limited[63] and that the Board of Directors of Energía Solar Luxembourg S.à r.l is comprised by the three directors that signed the undertaking: Gwenaëlle Cousin, Hans Rupprecht Wilhelm Meissner and Luca Berti.[64]

53. The Committee believes that both Parties participating in this proceeding, act in good faith and has no reason to doubt the lawfulness of any document submitted by them in this proceeding. However, to address the concerns expressed by Spain, the Committee orders Claimants to provide further evidence supporting the fact that the Directors signing the undertaking are duly authorized to bind the Eiser Parties regarding repayment of funds and disbursement of funds and that their decisions cannot be overridden, as well as confirmation of the undertaking, upon which the Committee would be in position to confirm the validity of the undertaking.

### IV. COSTS

54. Claimants have requested the Committee to issue an interim cost order requiring Spain to bear the costs of responding to the Modification Request.[65]

55. The decision on costs for proceedings related to the Provisional Stay of the Award, including the Modification Request submitted by Spain, will be made together with the final decision on the Application for Annulment.

---

[61] Claimants' 31 May Letter, p. 2 and Annexes C, E and F.

[62] Applicant's 11 June Letter, pp. 2, 4.

[63] Claimants' 31 May Letter, Annex E.

[64] Claimants' 31 May Letter, Annex F.

[65] Response, para. 6.1.

Case 1:19-cv-01618-TSC   Document 24-10   Filed 12/20/19   Page 16 of 16
Case 1:18-cv-01686-CKK   Document 23-3   Filed 01/14/19   Page 50 of 85

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à r.l. v. Kingdom of Spain*
(ICSID Case No. ARB/13/36) – Annulment Proceeding
**Procedural Order No. 2**

## V. DECISION

56. Accordingly, the Committee hereby:

> a. Rejects Spain's Modification Request.
>
> b. Confirms that the stay of enforcement was terminated as of 23 March 2018, pursuant to the Stay Decision.
>
> c. Orders Claimants to provide further evidence supporting the fact that the Directors signing the undertaking dated 18 April 2018 are duly authorized to bind the Eiser Parties regarding repayment of funds and disbursement of funds and that their decisions cannot be overridden, as well as confirmation of the referred undertaking.
>
> d. Decides that the costs for proceedings related to the Provisional Stay of the Award, including the Modification Request submitted by Spain, will be addressed together with the final decision on the Application for Annulment

On behalf of the Committee,

_____
Ricardo Ramírez Hernández
President of the Committee