# EXHIBIT 66

JUDGMENT OF THE COURT (Grand Chamber)

6 March 2007 *

In Case C-292/04,

REFERENCE for a preliminary ruling under Article 234 EC from the Finanzgericht Köln (Germany), made by decision of 24 June 2004, received at the Court on 9 July 2004, in the proceedings

**Wienand Meilicke,**

**Heidi Christa Weyde,**

**Marina Stöffler**

v

**Finanzamt Bonn-Innenstadt,**

\* Language of the case: German.

I - 1872

MEILICKE AND OTHERS

THE COURT (Grand Chamber),

composed of V. Skouris, President, P. Jann, C.W.A. Timmermans, A. Rosas, K. Lenaerts, R. Schintgen and J. Klučka, Presidents of Chambers, J.N. Cunha Rodrigues, R. Silva de Lapuerta, M. Ilešič, J. Malenovský, U. Lõhmus and E. Levits (Rapporteur), Judges,

Advocate General: A. Tizzano and, subsequently, C. Stix-Hackl,
Registrar: B. Fülöp and K. Sztranc-Sławiczek, Administrators,

having regard to the written procedure and further to the hearing on 8 September 2005,

after considering the observations submitted on behalf of:

— Mr Meilicke, Ms Weyde and Ms Stöffler, by W. Meilicke and R. Portner, Rechtsanwälte,

— the German Government, by C. Quassowski, A. Tiemann and R. Stotz, acting as Agents, assisted by K.-T. Stopp, Rechtsanwältin,

— the United Kingdom Government, by T. Ward, barrister,

— the Commission of the European Communities, by K. Gross and R. Lyal, acting as Agents,

after hearing the Opinion of Advocate General Tizzano at the sitting on 10 November 2005,

having regard to the order of 7 April 2006 reopening the oral procedure and further to the hearing on 30 May 2006,

after considering the observations submitted on behalf of:

— Mr Meilicke, Ms Weyde and Ms Stöffler, by W. Meilicke and D. Habback, Rechtsanwälte,

— the German Government, by M. Lumma, R. Stotz and V. Rietmeyer, acting as Agents,

— the Czech Government, by T. Boček, acting as Agent,

— the Danish Government, by J. Molde, acting as Agent,

— the Greek Government, by K. Georgiadi, acting as Agent,

— the Spanish Government, by J.M. Rodríguez Cárcamo, acting as Agent,

— the French Government, by J.-C. Gracia, acting as Agent,

— the Hungarian Government, by R. Somssich and A. Müller, acting as Agents,

— the Netherlands Government, by M. de Grave, acting as Agent,

— the Austrian Government, by H. Dossi, acting as Agent,

— the Swedish Government, by K. Wistrand and A. Falk, acting as Agents,

— the United Kingdom Government, by P. Baker QC,

— the Commission of the European Communities, by K. Gross and R. Lyal, acting as Agents,

after hearing the Opinion of Advocate General Stix-Hackl at the sitting on 5 October 2006,

I - 1876

gives the following

## Judgment

1   The reference for a preliminary ruling concerns Articles 56 EC and 58 EC.

2   It was made in the course of proceedings between Mr W. Meilicke, Ms H.C. Weyde and Ms M. Stöffler, in their capacity as heirs of Heinz Meilicke, who died on 3 May 1997, and Finanzamt (Tax Office) Bonn-Innenstadt (Germany) (hereinafter 'the Finanzamt'), regarding the taxation of dividends paid to the deceased in the course of the years 1995 to 1997 by companies established in Denmark and in the Netherlands.

**Legal background**

*Community law*

3   In Chapter 4, entitled 'Capital and payments', of Title III, itself entitled 'Free movement of persons, services and capital,' in Part Three of the EC Treaty, dealing with the policies of the Community, Article 56(1) EC states:

'Within the framework of the provisions set out in this Chapter, all restrictions on the movement of capital between the Member States and between Member States and third countries shall be prohibited.'

4   Article 58(1) EC provides:

'The provisions of Article 56 shall be without prejudice to the right of Member States:

(a) to apply the relevant provisions of their tax law which distinguish between taxpayers who are not in the same situation with regard to their place of residence or with regard to the place where their capital is invested;

…'

5   Article 58(3) EC provides:

'The measures and procedures referred to in paragraphs 1 and 2 shall not constitute a means of arbitrary discrimination or a disguised restriction on the free movement of capital and payments as defined in Article 56.'

I - 1878

*The German law applicable during the years 1995 to 1997*

6   Under Paragraphs 1, 2 and 20 of the Einkommensteuergesetz (German Income Tax Law) of 7 September 1990 (BGBl. 1990 I, p. 1898), as amended by the Law of 13 September 1993 (BGBl. 1993 I, p. 1569, hereinafter 'the EStG'), dividends payable to a person resident in Germany and therefore fully taxable there for income tax purposes, are taxed there as income from capital.

7   Under Paragraph 27(1) of the Körperschaftsteuergesetz (German Corporation Tax Law) of 11 March 1991 (BGBl. 1991 I, p. 638), as amended by the Law of 13 September 1993 (BGBl. 1993 I, p. 1569), dividends distributed by capital companies fully taxable for corporation tax purposes in Germany, are subject to that tax at 30%. That results in a distribution of 70% of the pre-tax profits with a tax credit of 30/70, that is 3/7 of the dividends received.

8   Under Paragraph 36(2)(3) of the EStG, that tax credit applies only to dividends received from capital companies fully taxable for corporation tax purposes in Germany. Consequently, persons fully taxable for income tax purposes in Germany are entitled to that tax credit when they receive dividends from German companies, but not when they receive dividends from foreign companies.

**The main proceedings and the question referred for a preliminary ruling**

9   The late Heinz Meilicke, who was resident in Germany, held shares in companies established in the Netherlands and in Denmark. In the course of the years 1995 to 1997, he received dividends from those shares totalling DEM 39 631.32, that is EUR 20 263.17.

10  By letter of 30 October 2000, the applicants in the main proceedings applied to the Finanzamt for a tax credit equal to 3/7 of those dividends, to be deducted from the income tax payable on behalf of Heinz Meilicke.

11  The Finanzamt rejected that application, on the ground that only corporation tax on companies fully taxable for corporation tax purposes in Germany could be set off against income tax.

12  The applicants brought an action against that decision before the Finanzgericht Köln (Finance Court, Cologne) (Germany).

I - 1880

13  Against that background, the Finanzgericht Köln decided to stay the proceedings and to refer the following question to the Court for a preliminary ruling:

'Is Paragraph 36(2)(3) of the [EStG], whereby only corporation tax payable by a fully-taxable corporation or association amounting to 3/7 of the income within the meaning of Paragraph 20(1)(1) or (2) of the [EStG] is set off against income tax, compatible with Articles 56(1) EC and 58(1)(a) and (3) EC?'

**The question referred**

*Substance*

14  As pointed out by the applicants in the main proceedings, the Finanzgericht Köln made its reference for a preliminary ruling prior to the delivery of the judgment of 7 September 2004 in Case C-319/02 *Manninen* [2004] ECR I-7477.

15  In paragraph 54 of that judgment, the Court concluded that the calculation of a tax credit granted to a shareholder fully taxable in Finland, who has received dividends from a company established in another Member State, must take account of the tax

I - 1881

actually paid by the company established in that other Member State, as such tax arises from the general rules on calculating the basis of assessment and from the rate of corporation tax in that latter Member State.

16  It is clear from the Court file that, during the relevant years, the rate of corporation tax was 34% in Denmark and 35% in the Netherlands. In its observations before the Court, the applicants in the main proceedings maintained that the application to the German tax authorities should have been understood as being a claim for a tax credit not of 3/7 of the income within the meaning of Paragraph 20(1)(1) or (2) of the EStG, but of 34/66 of that income for the dividends of Danish origin and of 35/65 for those originating from the Netherlands.

17  For its part, the German Government, whilst asserting that the judgement in *Manninen* is not applicable to the main proceedings, states that, within the framework of the system of full set-off under the German legislation on distributions of dividends arising internally, the fraction of 3/7 of the dividends under the German legislation does not constitute a flat-rate set-off but is linked to the corporation tax rate of 30% on the distribution of dividends. In the case of a distribution of dividends of foreign origin, one could not therefore grant a tax credit of 3/7 of the dividends received because it would not be linked to the tax rate applicable to the profits distributed for the purposes of the foreign corporation tax.

18  In those circumstances, it is appropriate to conclude that, by the question it referred, the national court wishes to ascertain, in essence, whether Articles 56 EC and 58 EC are to be interpreted as precluding tax legislation under which, on a distribution of

dividends by a capital company, a shareholder who is fully taxable in a Member State is entitled to a tax credit, calculated by reference to the corporation tax rate on the distributed profits, if the dividend-paying company is established in that same Member State but not if it is established in another Member State.

19  It is settled case-law that, although direct taxation falls within their competence, the Member States must none the less exercise that competence consistently with Community law (Case C-311/97 *Royal Bank of Scotland* [1999] ECR I-2651, paragraph 19, and *Manninen*, paragraph 19).

20  However, tax legislation such as that at issue in the main proceedings constitutes a restriction within the meaning of Article 56 EC.

21  Indeed, it should be noted that the tax credit under the German tax legislation at issue in the main proceedings, like that under the Finnish tax legislation detailed in *Manninen*, is designed to prevent the double taxation of German companies' profits distributed to shareholders by setting off the corporation tax due from the company distributing dividends against the tax due from the shareholder by way of income tax

I - 1883

on revenue from capital. The end result of such a system is that dividends are taxed in the hands of the shareholder only to the extent that they have not already been taxed as distributed profits in the hands of the company (see, to that effect, *Manninen*, paragraph 20).

22  Since the tax credit applies solely in respect of dividends paid by companies established in Germany, that legislation disadvantages persons who are fully taxable in that Member State for income tax purposes and receive dividends from companies established in other Member States. Such persons, for their part, are taxed without being entitled to set off the corporation tax payable by those companies in their State of establishment against the tax on the income from capital (see, to that effect, *Manninen*, paragraph 20).

23  It follows that the tax legislation at issue in the main proceedings could deter persons who are fully taxable in Germany for income tax purposes from investing their capital in companies established in other Member States.

24  Conversely, that legislation is liable to have a restrictive effect as regards those companies, in that it constitutes an obstacle to their raising capital in Germany. Since dividends of non-German origin receive less favourable tax treatment than dividends distributed by companies established in Germany, the shares of companies established in other Member States are less attractive to investors residing in Germany than shares in companies which have their seat in that Member State (see Case C-35/98 *Verkooijen* [2000] ECR I-4071, paragraph 35, *Manninen*, paragraph

23, and Case C-446/04 *Test Claimants in the FII Group Litigation* [2006] ECR I-11753, paragraph 64).

25  Relying on Case C-204/90 *Bachmann* [1992] ECR I-249 and Case C-300/90 *Commission* v *Belgium* [1992] ECR I-305, the German Government maintains that the legislation at issue in the main proceedings is justified by the need to safeguard the cohesion of the national tax system.

26  In that respect, it should be noted that, according to settled case-law, first, for an argument based on such justification to succeed, a direct link has to be established between the tax advantage concerned and the offsetting of that advantage by a particular tax levy (see *Manninen*, paragraph 42).

27  Second, an argument based on the need to safeguard the cohesion of a tax system must be examined in the light of the objective pursued by the tax legislation in question (*Manninen*, paragraph 43).

28  Even if the German tax legislation is based on a link between the tax advantage and the offsetting tax levy, in providing that the tax credit granted to the shareholder who is fully taxable in Germany for income tax purposes is to be calculated by reference to the corporation tax due from the company established in that Member

State on the profits which it distributes, such legislation does not appear to be necessary in order to preserve the cohesion of the German tax system (see, to that effect, *Manninen*, paragraph 45).

29   The objective pursued by the German tax legislation is to prevent the double taxation of company profits distributed in the form of dividends. Having regard to that objective, the cohesion of that tax system is assured as long as the correlation between the tax advantage granted in favour of the shareholder and the tax payable by way of corporation tax is maintained. Therefore, in a case such as that in the main proceedings, the granting to a shareholder, who is fully taxable in Germany for income tax purposes and who holds shares in a company established in another Member State, of a tax credit calculated by reference to the corporation tax payable by that company in that latter Member State would not threaten the cohesion of the German tax system and would constitute a measure less restrictive of the free movement of capital than that laid down by the German tax legislation (see, by analogy, *Manninen*, paragraph 46).

30   It is true that the granting of a tax credit in relation to corporation tax due in another Member State would entail, for the Federal Republic of Germany, a reduction in its tax receipts in relation to dividends paid by companies established in other Member States. However, it has been consistently held in the case-law that reduction in tax revenue cannot be regarded as an overriding reason in the public interest which may be relied on to justify a measure which is, in principle, contrary to a fundamental freedom (*Verkooijen*, cited above, paragraph 59, and *Manninen*, paragraph 49).

31      In the light of the above matters, the reply to the question referred must be that Articles 56 EC and 58 EC are to be interpreted as precluding tax legislation under which, on a distribution of dividends by a capital company, a shareholder who is fully taxable in a Member State is entitled to a tax credit, calculated by reference to the corporation tax rate on the distributed profits, if the dividend-paying company is established in that same Member State but not if it is established in another Member State.

*The temporal effects of this judgment*

32      In its observations, the German Government made the point that it was possible for the Court, if it declared national legislation such as that at issue in the main proceedings to be incompatible with Articles 56 EC and 58 EC, to limit the temporal effects of this judgment.

33      In support of its argument, that Government, first, drew the Court's attention to the grave financial consequences which a judgment making such a declaration would have. Second, it argued that prior to the judgment in *Verkooijen*, the Federal Republic of Germany was entitled to believe that the legislation at issue was compatible with Community law.

34  In that connection, regard must be had to the settled case-law of the Court to the effect that the interpretation which, in the exercise of the jurisdiction conferred on it by Article 234 EC, the Court gives to a rule of Community law clarifies and defines the meaning and scope of that rule as it must be or ought to have been understood and applied from the time of its entry into force. It follows that the rule as thus interpreted may, and must, be applied by the courts even to legal relationships which arose and were established before the judgment ruling on the request for interpretation, provided that in other respects the conditions for bringing a dispute relating to the application of that rule before the competent courts are satisfied (see, in particular, Case C-347/00 *Barreira Pérez* [2002] ECR I-8191, paragraph 44, and Joined Cases C-453/02 and C-462/02 *Linneweber and Akritidis* [2005] ECR I-1131, paragraph 41).

35  It is only exceptionally that, in application of a general principle of legal certainty which is inherent in the Community legal order, the Court may decide to restrict the right to rely upon a provision, which it has interpreted, with a view to calling in question legal relations established in good faith (see, in particular, Case C-104/98 *Buchner and Others* [2000] ECR I-3625, paragraph 39, and *Linneweber and Akritidis*, cited above, paragraph 42).

36  In addition, as the Court has consistently held, such a restriction may be allowed only in the actual judgment ruling upon the interpretation sought (Case 309/85 *Barra* [1988] ECR 355, paragraph 13; Case 24/86 *Blaizot* [1988] ECR 379, paragraph 28; Case C-163/90 *Legros and Others* [1992] ECR I-4625, paragraph 30; Case C-415/93 *Bosman and Others* [1995] ECR I-4921, paragraph 142; and Case C-437/97 *EKW and Wein & Co.* [2000] ECR I-1157, paragraph 57).

37   Indeed, there must necessarily be a single occasion when a decision is made on the temporal effects of the requested interpretation, which the Court gives of a provision of Community law. In that regard, the principle that a restriction may be allowed only in the actual judgment ruling upon that interpretation guarantees the equal treatment of the Member States and of other persons subject to Community law, under that law, fulfilling, at the same time, the requirements arising from the principle of legal certainty.

38   The interpretation sought by the present reference for a preliminary ruling concerns the tax treatment which a Member State must, within the framework of a national system designed to prevent or lessen double taxation, accord to dividends distributed by a company established in another Member State. In that regard, it is clear from *Verkooijen* that Community law precludes a legislative provision of a Member State, which makes the grant of exemption from income tax payable on dividends paid to natural persons who are shareholders subject to the condition that those dividends are paid by a company whose seat is in that Member State (paragraph 62).

39   The Court did not limit the temporal effects of that judgment.

40   In addition, the principles adopted in *Verkooijen*, which thus clarified the requirements arising from the principle of free movement of capital in respect of dividends received by residents from non-resident companies, were confirmed by the judgments in Case C-315/02 *Lenz* [2004] ECR I-7063 and in *Manninen* (see *Test Claimants in the FII Group Litigation*, paragraph 215).

Case 1:19-cv-01618-TSC    Document 25-1    Filed 02/07/20    Page 20 of 20

JUDGMENT OF 6. 3. 2007 — CASE C-292/04

41   It is therefore not appropriate to limit the temporal effects of the present judgment.

**Costs**

42   Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

**Articles 56 EC and 58 EC are to be interpreted as precluding tax legislation under which, on a distribution of dividends by a capital company, a shareholder who is fully taxable in a Member State is entitled to a tax credit, calculated by reference to the corporation tax rate on the distributed profits, if the dividend-paying company is established in that same Member State but not if it is established in another Member State.**

[Signatures]