# EXHIBIT 75

24.9.2015     EN     Official Journal of the European Union     L 248/9

**COUNCIL REGULATION (EU) 2015/1589**

**of 13 July 2015**

**laying down detailed rules for the application of Article 108 of the Treaty on the Functioning of the European Union (codification)**

**(Text with EEA relevance)**

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty on the Functioning of the European Union, and in particular Article 109 thereof,

Having regard to the proposal from the European Commission,

Having regard to the opinion of the European Parliament [1],

Whereas:

(1) Council Regulation (EC) No 659/1999 [2] has been substantially amended several times [3]. In the interests of clarity and rationality, that Regulation should be codified.

(2) Without prejudice to special procedural rules laid down in regulations for certain sectors, this Regulation should apply to aid in all sectors. For the purpose of applying Articles 93 and 107 of the Treaty on the Functioning of the European Union (TFEU), the Commission has specific competence under Article 108 thereof to decide on the compatibility of State aid with the internal market when reviewing existing aid, when taking decisions on new or altered aid and when taking action regarding non-compliance with its decisions or with the requirement as to notification.

(3) In the context of a modernised system of State aid rules, to contribute both to the implementation of the Europe 2020 strategy for growth and to budgetary consolidation, Article 107 of the TFEU should be applied effectively and uniformly throughout the Union. Regulation (EC) No 659/1999 consolidated and reinforced the Commission's previous practice of increasing legal certainty and supporting the development of State aid policy in a transparent environment.

(4) In order to ensure legal certainty, it is appropriate that the circumstances under which aid is to be considered as existing aid be defined. The completion and enhancement of the internal market is a gradual process, reflected in the permanent development of State aid policy. Following those developments, certain measures, which at the moment they were put into effect did not constitute State aid, may since have become aid.

(5) In accordance with Article 108(3) TFEU, any plans to grant new aid are to be notified to the Commission and should not be put into effect before the Commission has authorised it.

(6) In accordance with Article 4(3) of the Treaty on European Union (TEU), Member States are under an obligation to cooperate with the Commission and to provide it with all information required to allow the Commission to carry out its duties under this Regulation.

(7) The period within which the Commission is to conclude the preliminary examination of notified aid should be set at 2 months from the receipt of a complete notification or from the receipt of a duly reasoned statement of the Member State concerned that it considers the notification to be complete because the additional information requested by the Commission is not available or has already been provided. For reasons of legal certainty, that examination should be brought to an end by a decision.

---

[1] Opinion of 29 April 2015 (not yet published in the Official Journal).
[2] Council Regulation (EC) No 659/1999 of 22 March 1999 laying down detailed rules for the application of Article 108 of the Treaty on the Functioning of the European Union (OJ L 83, 27.3.1999, p. 1).
[3] See Annex I.

L 248/10    [EN]    Official Journal of the European Union    24.9.2015

(8)    In all cases where, as a result of the preliminary examination, the Commission cannot find that the aid is compatible with the internal market, the formal investigation procedure should be opened in order to enable the Commission to gather all the information it needs to assess the compatibility of the aid and to allow the interested parties to submit their comments. The rights of the interested parties can best be safeguarded within the framework of the formal investigation procedure provided for in Article 108(2) TFEU.

(9)    In order to assess the compatibility with the internal market of any notified or unlawful State aid for which the Commission has exclusive competence under Article 108 TFEU, it is appropriate to ensure that the Commission has the power, for the purposes of enforcing the State aid rules, to request all necessary market information from any Member State, undertaking or association of undertakings whenever it has doubts as to the compatibility of the measure concerned with the Union rules, and has therefore initiated the formal investigation procedure. In particular, the Commission should use this power in cases in which a complex substantive assessment appears necessary. In deciding whether to use this power, the Commission should take due account of the duration of the preliminary examination.

(10)    For the purpose of assessing the compatibility of an aid measure after the initiation of the formal investigation procedure, in particular as regards technically complex cases subject to substantive assessment, the Commission should be able, by simple request or by decision, to require any Member State, undertaking or association of undertakings to provide all market information necessary for completing its assessment, if the information provided by the Member State concerned during the course of the preliminary examination is not sufficient, taking due account of the principle of proportionality, in particular for small and medium-sized enterprises.

(11)    In the light of the special relationship between aid beneficiaries and the Member State concerned, the Commission should be able to request information from an aid beneficiary only in agreement with the Member State concerned. The provision of information by the beneficiary of the aid measure in question does not constitute a legal basis for bilateral negotiations between the Commission and the beneficiary in question.

(12)    The Commission should select the addressees of information requests on the basis of objective criteria appropriate to each case, while ensuring that, when the request is addressed to a sample of undertakings or associations thereof, the sample of respondents is representative within each category. The information sought should consist, in particular, of factual company and market data and facts-based analysis of the functioning of the market.

(13)    The Commission, as the initiator of the procedure, should be responsible for verifying both the information transmission by the Member States, undertakings or associations of undertakings, and the purported confidentiality of the information to be disclosed.

(14)    The Commission should be able to enforce compliance with the requests for information it addresses to any undertaking or association of undertakings, as appropriate, by means of proportionate fines and periodic penalty payments. In setting the amounts of fines and periodic penalty payments, the Commission should take due account of the principles of proportionality and appropriateness, in particular as regards small and medium-sized enterprises. The rights of the parties requested to provide information should be safeguarded by giving them the opportunity to make known their views before any decision imposing fines or periodic penalty payments is taken. The Court of Justice of the European Union should have unlimited jurisdiction with regard to such fines and periodic penalties pursuant to Article 261 TFEU.

(15)    Taking due account of the principles of proportionality and appropriateness, the Commission should be able to reduce the periodic penalty payments or waive them entirely, when addressees of requests provide the information requested, albeit after the expiry of the deadline.

(16)    Fines and periodic penalty payments are not applicable to Member States, since they are under a duty to cooperate sincerely with the Commission in accordance with Article 4(3) TEU, and to provide the Commission with all information required to allow it to carry out its duties under this Regulation.

(17)    After having considered the comments submitted by the interested parties, the Commission should conclude its examination by means of a final decision as soon as the doubts have been removed. It is appropriate, should this examination not be concluded after a period of 18 months from the opening of the procedure, that the Member State concerned has the opportunity to request a decision, which the Commission should take within 2 months.

(18) In order to safeguard the rights of defence of the Member State concerned, it should be provided with copies of the requests for information sent to other Member States, undertakings or associations of undertakings, and be able to submit its observations on the comments received. It should also be informed of the names of the undertakings and the associations of undertakings requested, to the extent that these entities have not demonstrated a legitimate interest in the protection of their identity.

(19) The Commission should take due account of the legitimate interests of undertakings in the protection of their business secrets. It should not be able to use confidential information provided by respondents, which cannot be aggregated or otherwise be anonymised, in any decision unless it has previously obtained their agreement to disclose that information to the Member State concerned.

(20) In cases where information marked as confidential does not seem to be covered by obligations of professional secrecy, it is appropriate to have a mechanism in place according to which the Commission can decide the extent to which such information can be disclosed. Any such decision to reject a claim that information is confidential should indicate a period at the end of which the information will be disclosed, so that the respondent can make use of any judicial protection available to it, including any interim measure.

(21) In order to ensure that the State aid rules are applied correctly and effectively, the Commission should have the opportunity of revoking a decision which was based on incorrect information.

(22) In order to ensure compliance with Article 108 TFEU, and in particular with the notification obligation and the standstill clause in Article 108(3), the Commission should examine all cases of unlawful aid. In the interests of transparency and legal certainty, the procedures to be followed in such cases should be laid down. When a Member State has not respected the notification obligation or the standstill clause, the Commission should not be bound by time limits.

(23) The Commission should be able, on its own initiative, to examine information on unlawful aid, from whatever source, in order to ensure compliance with Article 108 TFEU, and in particular with the notification obligation and standstill clause laid down in Article 108(3) TFEU, and to assess the compatibility of an aid with the internal market.

(24) In cases of unlawful aid, the Commission should have the right to obtain all necessary information enabling it to take a decision and to restore immediately, where appropriate, undistorted competition. It is therefore appropriate to enable the Commission to adopt interim measures addressed to the Member State concerned. The interim measures may take the form of information injunctions, suspension injunctions and recovery injunctions. The Commission should be enabled, in the event of non-compliance with an information injunction, to decide on the basis of the information available and, in the event of non-compliance with suspension and recovery injunctions, to refer the matter to the Court of Justice directly, in accordance with the second subparagraph of Article 108(2) TFEU.

(25) In cases of unlawful aid which is not compatible with the internal market, effective competition should be restored. For this purpose it is necessary that the aid, including interest, be recovered without delay. It is appropriate that recovery be effected in accordance with the procedures of national law. The application of those procedures should not, by preventing the immediate and effective execution of the Commission decision, impede the restoration of effective competition. To achieve this result, Member States should take all necessary measures ensuring the effectiveness of the Commission decision.

(26) For reasons of legal certainty it is appropriate to provide for a period of limitation of 10 years with regard to unlawful aid, after the expiry of which no recovery can be ordered.

(27) For reasons of legal certainty, it is appropriate to provide for limitation periods for the imposition and enforcement of fines and periodic penalty payments.

(28) Misuse of aid may have effects on the functioning of the internal market which are similar to those of unlawful aid and should thus be treated according to similar procedures. Unlike unlawful aid, aid which has possibly been misused is aid which has been previously approved by the Commission. Therefore the Commission should not be allowed to use a recovery injunction with regard to misuse of aid.

(29) In accordance with Article 108(1) TFEU, the Commission is under an obligation, in cooperation with Member States, to keep under constant review all systems of existing aid. In the interests of transparency and legal certainty, it is appropriate to specify the scope of cooperation under that Article.

(30) In order to ensure compatibility of existing aid schemes with the internal market and in accordance with Article 108(1) TFEU, the Commission should propose appropriate measures where an existing aid scheme is not, or is no longer, compatible with the internal market and should initiate the procedure provided for in Article 108(2) TFEU if the Member State concerned declines to implement the proposed measures.

(31) It is appropriate to set out all the possibilities which third parties have to defend their interests in State aid procedures.

(32) Complaints are an essential source of information for detecting infringements of the Union rules on State aid. To ensure the quality of the complaints submitted to the Commission, and at the same time transparency and legal certainty, it is appropriate to lay down the conditions that a complaint should fulfill in order to put the Commission in possession of information regarding alleged unlawful aid and set in motion the preliminary examination. Submissions not meeting those conditions should be treated as general market information, and should not necessarily lead to *ex officio* investigations.

(33) Complainants should be required to demonstrate that they are interested parties within the meaning of Article 108(2) TFEU and of Article 1(h) of this Regulation. They should also be required to provide a certain amount of information in a form that the Commission should be empowered to set out in an implementing provision. In order not to discourage prospective complainants, that implementing provision should take into account that the demands on interested parties for lodging a complaint should not be burdensome.

(34) In order to ensure that the Commission addresses similar issues in a consistent manner across the internal market, it is appropriate to provide for a specific legal basis to launch investigations into sectors of the economy or into certain aid instruments across several Member States. For reasons of proportionality and in the light of the high administrative burden entailed by such investigations, sector inquiries should be carried out only when the information available substantiates a reasonable suspicion that State aid measures in a particular sector could materially restrict or distort competition within the internal market in several Member States, or that existing aid measures in a particular sector in several Member States are not, or are no longer, compatible with the internal market. Such inquiries would enable the Commission to deal in an efficient and transparent way with horizontal State aid issues and to obtain an *ex ante* overview of the sector concerned.

(35) In order to allow the Commission to monitor effectively compliance with Commission decisions and to facilitate cooperation between the Commission and Member States for the purpose of the constant review of all existing aid schemes in the Member States in accordance with Article 108(1) TFEU, it is necessary that a general reporting obligation with regard to all existing aid schemes be laid down.

(36) Where the Commission has serious doubts as to whether its decisions are being complied with, it should have at its disposal additional instruments allowing it to obtain the information necessary to verify that its decisions are being effectively complied with. For this purpose on-site monitoring visits are an appropriate and useful instrument, in particular for cases where aid might have been misused. Therefore the Commission should be empowered to undertake on-site monitoring visits and should obtain the cooperation of the competent authorities of the Member States where an undertaking opposes such a visit.

(37) Consistency in the application of the State aid rules requires that arrangements be established for cooperation between the courts of the Member States and the Commission. Such cooperation is relevant for all courts of the Member States that apply Article 107(1) and Article 108 TFEU. In particular, national courts should be able to ask the Commission for information or for its opinion on points concerning the application of State aid rules. The Commission should also be able to submit written or oral observations to courts which are called upon to apply Article 107(1) or Article 108 TFEU. When assisting national courts in this respect, the Commission should act in accordance with its duty to defend the public interest.

(38) Those observations and opinions of the Commission should be without prejudice to Article 267 TFEU and not legally bind the national courts. They should be submitted within the framework of national procedural rules and practices including those safeguarding the rights of the parties, in full respect of the independence of the national

courts. Observations submitted by the Commission on its own initiative should be limited to cases that are important for the coherent application of Article 107(1) or Article 108 TFEU, in particular to cases which are significant for the enforcement or the further development of Union State aid case law.

(39)   In the interests of transparency and legal certainty, it is appropriate to give public information on Commission decisions while, at the same time, maintaining the principle that decisions in State aid cases are addressed to the Member State concerned. It is therefore appropriate to publish all decisions which might affect the interests of interested parties either in full or in a summary form or to make copies of such decisions available to interested parties, where they have not been published or where they have not been published in full.

(40)   The Commission, when publishing its decisions, should respect the rules on professional secrecy, including the protection of all confidential information and personal data, in accordance with Article 339 TFEU.

(41)   The Commission, in close liaison with the Advisory Committee on State aid, should be able to adopt implementing provisions laying down detailed rules concerning the procedures under this Regulation,

HAS ADOPTED THIS REGULATION:

CHAPTER I

**GENERAL**

*Article 1*

**Definitions**

For the purposes of this Regulation, the following definitions shall apply:

(a)  'aid' means any measure fulfilling all the criteria laid down in Article 107(1) TFEU;

(b)  'existing aid' means:

(i)   without prejudice to Articles 144 and 172 of the Act of Accession of Austria, Finland and Sweden, to point 3 and the Appendix of Annex IV to the Act of Accession of the Czech Republic, Estonia, Cyprus, Latvia, Lithuania, Hungary, Malta, Poland, Slovenia and Slovakia, to points 2 and 3(b) and the Appendix of Annex V to the Act of Accession of Bulgaria and Romania, and to points 2 and 3(b) and the Appendix of Annex IV to the Act of Accession of Croatia, all aid which existed prior to the entry into force of the TFEU in the respective Member States, that is to say, aid schemes and individual aid which were put into effect before, and are still applicable after, the entry into force of the TFEU in the respective Member States;

(ii)  authorised aid, that is to say, aid schemes and individual aid which have been authorised by the Commission or by the Council;

(iii) aid which is deemed to have been authorised pursuant to Article 4(6) of Regulation (EC) No 659/1999 or to Article 4(6) of this Regulation, or prior to Regulation (EC) No 659/1999 but in accordance with this procedure;

(iv)  aid which is deemed to be existing aid pursuant to Article 17 of this Regulation;

(v)   aid which is deemed to be an existing aid because it can be established that at the time it was put into effect it did not constitute an aid, and subsequently became an aid due to the evolution of the internal market and without having been altered by the Member State. Where certain measures become aid following the liberalisation of an activity by Union law, such measures shall not be considered as existing aid after the date fixed for liberalisation;

(c)  'new aid' means all aid, that is to say, aid schemes and individual aid, which is not existing aid, including alterations to existing aid;

(d) 'aid scheme' means any act on the basis of which, without further implementing measures being required, individual aid awards may be made to undertakings defined within the act in a general and abstract manner and any act on the basis of which aid which is not linked to a specific project may be awarded to one or several undertakings for an indefinite period of time and/or for an indefinite amount;

(e) 'individual aid' means aid that is not awarded on the basis of an aid scheme and notifiable awards of aid on the basis of an aid scheme;

(f) 'unlawful aid' means new aid put into effect in contravention of Article 108(3) TFEU;

(g) 'misuse of aid' means aid used by the beneficiary in contravention of a decision taken pursuant to Article 4(3) or Article 7(3) or (4) of Regulation (EC) No 659/1999 or Article 4(3) or Article 9(3) or (4) of this Regulation;

(h) 'interested party' means any Member State and any person, undertaking or association of undertakings whose interests might be affected by the granting of aid, in particular the beneficiary of the aid, competing undertakings and trade associations.

CHAPTER II

**PROCEDURE REGARDING NOTIFIED AID**

*Article 2*

**Notification of new aid**

1.    Save as otherwise provided in regulations made pursuant to Article 109 TFEU or to other relevant provisions thereof, any plans to grant new aid shall be notified to the Commission in sufficient time by the Member State concerned. The Commission shall inform the Member State concerned without delay of the receipt of a notification.

2.    In a notification, the Member State concerned shall provide all necessary information in order to enable the Commission to take a decision pursuant to Articles 4 and 9 ('complete notification').

*Article 3*

**Standstill clause**

Aid notifiable pursuant to Article 2(1) shall not be put into effect before the Commission has taken, or is deemed to have taken, a decision authorising such aid.

*Article 4*

**Preliminary examination of the notification and decisions of the Commission**

1.    The Commission shall examine the notification as soon as it is received. Without prejudice to Article 10, the Commission shall take a decision pursuant to paragraphs 2, 3 or 4 of this Article.

2.    Where the Commission, after a preliminary examination, finds that the notified measure does not constitute aid, it shall record that finding by way of a decision.

3.    Where the Commission, after a preliminary examination, finds that no doubts are raised as to the compatibility with the internal market of a notified measure, in so far as it falls within the scope of Article 107(1) TFEU, it shall decide that the measure is compatible with the internal market ('decision not to raise objections'). The decision shall specify which exception under the TFEU has been applied.

4.    Where the Commission, after a preliminary examination, finds that doubts are raised as to the compatibility with the internal market of a notified measure, it shall decide to initiate proceedings pursuant to Article 108(2) TFEU ('decision to initiate the formal investigation procedure').

5.    The decisions referred to in paragraphs 2, 3 and 4 of this Article shall be taken within 2 months. That period shall begin on the day following the receipt of a complete notification. The notification shall be considered as complete if, within 2 months from its receipt, or from the receipt of any additional information requested, the Commission does not request any further information. The period can be extended with the consent of both the Commission and the Member State concerned. Where appropriate, the Commission may fix shorter time limits.

6.    Where the Commission has not taken a decision in accordance with paragraphs 2, 3 or 4 within the period laid down in paragraph 5, the aid shall be deemed to have been authorised by the Commission. The Member State concerned may thereupon implement the measures in question after giving the Commission prior notice thereof, unless the Commission takes a decision pursuant to this Article within a period of 15 working days following receipt of the notice.

*Article 5*

**Request for information made to the notifying Member State**

1.    Where the Commission considers that information provided by the Member State concerned with regard to a measure notified pursuant to Article 2 is incomplete, it shall request all necessary additional information. Where a Member State responds to such a request, the Commission shall inform the Member State of the receipt of the response.

2.    Where the Member State concerned does not provide the information requested within the period prescribed by the Commission or provides incomplete information, the Commission shall send a reminder, allowing an appropriate additional period within which the information shall be provided.

3.    The notification shall be deemed to be withdrawn if the requested information is not provided within the prescribed period, unless, before the expiry of that period, either the period has been extended with the consent of both the Commission and the Member State concerned, or the Member State concerned, in a duly reasoned statement, informs the Commission that it considers the notification to be complete because the additional information requested is not available or has already been provided. In that case, the period referred to in Article 4(5) shall begin on the day following receipt of the statement. If the notification is deemed to be withdrawn, the Commission shall inform the Member State thereof.

*Article 6*

**Formal investigation procedure**

1.    The decision to initiate the formal investigation procedure shall summarise the relevant issues of fact and law, shall include a preliminary assessment of the Commission as to the aid character of the proposed measure and shall set out the doubts as to its compatibility with the internal market. The decision shall call upon the Member State concerned and upon other interested parties to submit comments within a prescribed period which shall normally not exceed 1 month. In duly justified cases, the Commission may extend the prescribed period.

2.    The comments received shall be submitted to the Member State concerned. If an interested party so requests, on grounds of potential damage, its identity shall be withheld from the Member State concerned. The Member State concerned may reply to the comments submitted within a prescribed period which shall normally not exceed 1 month. In duly justified cases, the Commission may extend the prescribed period.

*Article 7*

**Request for information made to other sources**

1.    After the initiation of the formal investigation procedure provided for in Article 6, in particular as regards technically complex cases subject to substantive assessment, the Commission may, if the information provided by a Member State concerned during the course of the preliminary examination is not sufficient, request any other Member State, an undertaking or an association of undertakings to provide all market information necessary to enable the Commission to complete its assessment of the measure at stake taking due account of the principle of proportionality, in particular for small and medium-sized enterprises.

2.    The Commission may request information only:

(a)  if it is limited to formal investigation procedures that have been identified by the Commission as being ineffective to date; and

(b)  in so far as aid beneficiaries are concerned, if the Member State concerned agrees to the request.

3.    The undertakings or associations of undertakings providing information following a Commission's request for market information based on paragraphs 6 and 7 shall submit their answer simultaneously to the Commission and to the Member State concerned, to the extent that the documents provided do not include information that is confidential vis-à-vis that Member State.

The Commission shall steer and monitor the information transmission between the Member States, undertakings or associations of undertakings concerned, and verify the purported confidentiality of the information transmitted.

4.    The Commission shall request only information that is at the disposal of the Member State, undertaking or association of undertakings concerned by the request.

5.    Member States shall provide the information on the basis of a simple request and within a time limit prescribed by the Commission which should normally not exceed 1 month. Where a Member State does not provide the information requested within that period or provides incomplete information, the Commission shall send a reminder.

6.    The Commission may, by simple request, require an undertaking or an association of undertakings to provide information. Where the Commission sends a simple request for information to an undertaking or an association of undertakings, it shall state the legal basis and the purpose of the request, specify what information is required and prescribe a proportionate time limit within which the information is to be provided. It shall also refer to the fines provided for in Article 8(1) for supplying incorrect or misleading information.

7.    The Commission may, by decision, require an undertaking or an association of undertakings to provide information. Where the Commission, by decision, requires an undertaking or an association of undertakings to supply information, it shall state the legal basis, the purpose of the request, specify what information is required and prescribe a proportionate time limit within which the information is to be provided. It shall also indicate the fines provided for in Article 8(1) and shall indicate or impose the periodic penalties payments provided for in Article 8(2), as appropriate. In addition, it shall indicate the right of the undertaking or association of undertakings to have the decision reviewed by the Court of Justice of the European Union.

8.    When issuing a request under paragraph 1 or 6 of this Article, or adopting a decision under paragraph 7, the Commission shall also simultaneously provide the Member State concerned with a copy thereof. The Commission shall indicate the criteria by which it selected the recipients of the request or decision.

9.    The owners of the undertakings or their representatives, or, in the case of legal persons, companies, firms or associations without legal personality, the persons authorised to represent them by law or by their constitution, shall supply on their behalf the information requested or required. Persons duly authorised to act may supply the information on behalf of their clients. The latter shall nevertheless be held fully responsible if the information supplied is incorrect, incomplete or misleading.

*Article 8*

**Fines and periodic penalty payments**

1.    The Commission may, if deemed necessary and proportionate, impose by decision on undertakings or associations of undertakings fines not exceeding 1 % of their total turnover in the preceding business year where they, intentionally or through gross negligence:

(a)  supply incorrect or misleading information in response to a request made pursuant to Article 7(6);

(b)  supply incorrect, incomplete or misleading information in response to a decision adopted pursuant to Article 7(7), or do not supply the information within the prescribed time limit.

2.    The Commission may, by decision, impose on undertakings or associations of undertakings periodic penalty payments where an undertaking or association of undertakings fails to supply complete and correct information as requested by the Commission by decision adopted pursuant to Article 7(7).

The periodic penalty payments shall not exceed 5 % of the average daily turnover of the undertaking or association concerned in the preceding business year for each working day of delay, calculated from the date established in the decision, until it supplies complete and correct information as requested or required by the Commission.

3.    In fixing the amount of the fine or periodic penalty payment, regard shall be had to the nature, gravity and duration of the infringement, taking due account of the principles of proportionality and appropriateness, in particular for small and medium-sized enterprises.

4.    Where the undertakings or associations of undertakings have satisfied the obligation which the periodic penalty payment was intended to enforce, the Commission may reduce the definitive amount of the periodic penalty payment compared to that under the original decision imposing periodic penalty payments. The Commission may also waive any periodic penalty payment.

5.    Before adopting any decision in accordance with paragraph 1 or 2 of this Article, the Commission shall set a final deadline of 2 weeks to receive the missing market information from the undertakings or associations of undertakings concerned and also give them the opportunity of making known their views.

6.    The Court of Justice of the European Union shall have unlimited jurisdiction within the meaning of Article 261 TFEU to review fines or periodic penalty payments imposed by the Commission. It may cancel, reduce or increase the fine or periodic penalty payment imposed.

*Article 9*

**Decisions of the Commission to close the formal investigation procedure**

1.    Without prejudice to Article 10, the formal investigation procedure shall be closed by means of a decision as provided for in paragraphs 2 to 5 of this Article.

2.    Where the Commission finds that, where appropriate following modification by the Member State concerned, the notified measure does not constitute aid, it shall record that finding by way of a decision.

3.    Where the Commission finds that, where appropriate following modification by the Member State concerned, the doubts as to the compatibility of the notified measure with the internal market have been removed, it shall decide that the aid is compatible with the internal market ('positive decision'). That decision shall specify which exception under the TFEU has been applied.

4.    The Commission may attach to a positive decision conditions subject to which aid may be considered compatible with the internal market and may lay down obligations to enable compliance with the decision to be monitored ('conditional decision').

5.    Where the Commission finds that the notified aid is not compatible with the internal market, it shall decide that the aid shall not be put into effect ('negative decision').

6.    Decisions taken pursuant to paragraphs 2 to 5 shall be taken as soon as the doubts referred to in Article 4(4) have been removed. The Commission shall as far as possible endeavour to adopt a decision within a period of 18 months from the opening of the procedure. This time limit may be extended by common agreement between the Commission and the Member State concerned.

7.    Once the time limit referred to in paragraph 6 of this Article has expired, and should the Member State concerned so request, the Commission shall, within 2 months, take a decision on the basis of the information available to it. If appropriate, where the information provided is not sufficient to establish compatibility, the Commission shall take a negative decision.

L 248/18          EN          Official Journal of the European Union          24.9.2015

8.    Before adopting any decision in accordance with paragraphs 2 to 5, the Commission shall give the Member State concerned the opportunity of making known its views, within a time-limit that shall not normally exceed 1 month, on the information received by the Commission and provided to the Member State concerned pursuant to Article 7(3).

9.    The Commission shall not use confidential information provided by respondents, which cannot be aggregated or otherwise be anonymised, in any decision taken in accordance with paragraphs 2 to 5 of this Article, unless it has obtained their agreement to disclose that information to the Member State concerned. The Commission may take a reasoned decision, which shall be notified to the undertaking or association of undertakings concerned, finding that information provided by a respondent and marked as confidential is not protected, and setting a date after which the information will be disclosed. That period shall not be less than 1 month.

10.    The Commission shall take due account of the legitimate interests of undertakings in the protection of their business secrets and other confidential information. An undertaking or an association of undertakings providing information pursuant to Article 7, and which is not a beneficiary of the State aid measure in question, may request, on grounds of potential damage, that its identity be withheld from the Member State concerned.

*Article 10*

**Withdrawal of notification**

1.    The Member State concerned may withdraw the notification within the meaning of Article 2 in due time before the Commission has taken a decision pursuant to Article 4 or to Article 9.

2.    In cases where the Commission initiated the formal investigation procedure, the Commission shall close that procedure.

*Article 11*

**Revocation of a decision**

The Commission may revoke a decision taken pursuant to Article 4(2) or (3), or Article 9(2), (3) or (4), after having given the Member State concerned the opportunity to submit its comments, where the decision was based on incorrect information provided during the procedure which was a determining factor for the decision. Before revoking a decision and taking a new decision, the Commission shall open the formal investigation procedure pursuant to Article 4(4). Articles 6, 9 and 12, Article 13(1) and Articles 15, 16 and 17 shall apply *mutatis mutandis*.

CHAPTER III

**PROCEDURE REGARDING UNLAWFUL AID**

*Article 12*

**Examination, request for information and information injunction**

1.    Without prejudice to Article 24, the Commission may on its own initiative examine information regarding alleged unlawful aid from whatever source.

The Commission shall examine without undue delay any complaint submitted by any interested party in accordance with Article 24(2) and shall ensure that the Member State concerned is kept fully and regularly informed of the progress and outcome of the examination.

2.    If necessary, the Commission shall request information from the Member State concerned. Article 2(2) and Article 5(1) and (2) shall apply *mutatis mutandis*.

After the initiation of the formal investigation procedure, the Commission may also request information from any other Member State, from an undertaking, or association of undertakings in accordance with Articles 7 and 8, which shall apply *mutatis mutandis*.

3.    Where, despite a reminder pursuant to Article 5(2), the Member State concerned does not provide the information requested within the period prescribed by the Commission, or where it provides incomplete information, the Commission shall by decision require the information to be provided ('information injunction'). The decision shall specify what information is required and prescribe an appropriate period within which it is to be supplied.

*Article 13*

**Injunction to suspend or provisionally recover aid**

1.    The Commission may, after giving the Member State concerned the opportunity to submit its comments, adopt a decision requiring the Member State to suspend any unlawful aid until the Commission has taken a decision on the compatibility of the aid with the internal market ('suspension injunction').

2.    The Commission may, after giving the Member State concerned the opportunity to submit its comments, adopt a decision requiring the Member State provisionally to recover any unlawful aid until the Commission has taken a decision on the compatibility of the aid with the internal market ('recovery injunction'), if all the following criteria are fulfilled:

(a)   according to an established practice there are no doubts about the aid character of the measure concerned;

(b)   there is an urgency to act;

(c)   there is a serious risk of substantial and irreparable damage to a competitor.

Recovery shall be effected in accordance with the procedure set out in Article 16(2) and (3). After the aid has been effectively recovered, the Commission shall take a decision within the time limits applicable to notified aid.

The Commission may authorise the Member State to couple the refunding of the aid with the payment of rescue aid to the firm concerned.

The provisions of this paragraph shall be applicable only to unlawful aid implemented after the entry into force of Regulation (EC) No 659/1999.

*Article 14*

**Non-compliance with an injunction decision**

If the Member State fails to comply with a suspension injunction or a recovery injunction, the Commission shall be entitled, while carrying out the examination on the substance of the matter on the basis of the information available, to refer the matter to the Court of Justice of the European Union directly and apply for a declaration that the failure to comply constitutes an infringement of the TFEU.

*Article 15*

**Decisions of the Commission**

1.    The examination of possible unlawful aid shall result in a decision pursuant to Article 4(2), (3) or (4). In the case of decisions to initiate the formal investigation procedure, proceedings shall be closed by means of a decision pursuant to Article 9. If a Member State fails to comply with an information injunction, that decision shall be taken on the basis of the information available.

2.    In cases of possible unlawful aid and without prejudice to Article 13(2), the Commission shall not be bound by the time-limit set out in Articles 4(5), 9(6) and 9(7).

3.    Article 11 shall apply *mutatis mutandis.*

## *Article 16*

### Recovery of aid

1.    Where negative decisions are taken in cases of unlawful aid, the Commission shall decide that the Member State concerned shall take all necessary measures to recover the aid from the beneficiary ('recovery decision'). The Commission shall not require recovery of the aid if this would be contrary to a general principle of Union law.

2.    The aid to be recovered pursuant to a recovery decision shall include interest at an appropriate rate fixed by the Commission. Interest shall be payable from the date on which the unlawful aid was at the disposal of the beneficiary until the date of its recovery.

3.    Without prejudice to any order of the Court of Justice of the European Union pursuant to Article 278 TFEU, recovery shall be effected without delay and in accordance with the procedures under the national law of the Member State concerned, provided that they allow the immediate and effective execution of the Commission's decision. To this effect and in the event of a procedure before national courts, the Member States concerned shall take all necessary steps which are available in their respective legal systems, including provisional measures, without prejudice to Union law.

## CHAPTER IV

## LIMITATION PERIODS

## *Article 17*

### Limitation period for the recovery of aid

1.    The powers of the Commission to recover aid shall be subject to a limitation period of 10 years.

2.    The limitation period shall begin on the day on which the unlawful aid is awarded to the beneficiary either as individual aid or as aid under an aid scheme. Any action taken by the Commission or by a Member State, acting at the request of the Commission, with regard to the unlawful aid shall interrupt the limitation period. Each interruption shall start time running afresh. The limitation period shall be suspended for as long as the decision of the Commission is the subject of proceedings pending before the Court of Justice of the European Union.

3.    Any aid with regard to which the limitation period has expired shall be deemed to be existing aid.

## *Article 18*

### Limitation period for the imposition of fines and periodic penalty payments

1.    The powers conferred on the Commission by Article 8 shall be subject to a limitation period of 3 years.

2.    The period provided for in paragraph 1 shall start on the day on which the infringement referred to in Article 8 is committed. However, in the case of continuing or repeated infringements, the period shall begin on the day on which the infringement ceases.

3.    Any action taken by the Commission for the purpose of the investigation or proceedings in respect of an infringement referred to in Article 8 shall interrupt the limitation period for the imposition of fines or periodic penalty payments, with effect from the date on which the action is notified to the undertaking or association of undertakings concerned.

4.    After each interruption, the limitation period shall start running afresh. However, the limitation period shall expire at the latest on the day on which a period of 6 years has elapsed without the Commission having imposed a fine or a periodic penalty payment. That period shall be extended by the time during which the limitation period is suspended in accordance with paragraph 5 of this Article.

5.    The limitation period for the imposition of fines or periodic penalty payments shall be suspended for as long as the decision of the Commission is the subject of proceedings pending before the Court of Justice of the European Union.

*Article 19*

**Limitation periods for the enforcement of fines and periodic penalty payments**

1.    The powers of the Commission to enforce decisions adopted pursuant to Article 8 shall be subject to a limitation period of 5 years.

2.    The period provided for in paragraph 1 shall start on the day on which the decision taken pursuant to Article 8 becomes final.

3.    The limitation period provided for in paragraph 1 of this Article shall be interrupted:

(a) by notification of a decision modifying the original amount of the fine or periodic penalty payment or refusing an application for modification;

(b) by any action of a Member State, acting at the request of the Commission, or of the Commission, intended to enforce payment of the fine or periodic penalty payment.

4.    After each interruption, the limitation period shall start running afresh.

5.    The limitation period provided for in paragraph 1 shall be suspended for so long as:

(a) the respondent is allowed time to pay;

(b) the enforcement of payment is suspended pursuant to a decision of the Court of Justice of the European Union.

CHAPTER V

**PROCEDURE REGARDING MISUSE OF AID**

*Article 20*

**Misuse of aid**

Without prejudice to Article 28, the Commission may, in cases of misuse of aid, initiate the formal investigation procedure pursuant to Article 4(4). Articles 6 to 9, 11 and 12, Article 13(1) and Articles 14 to 17 shall apply *mutatis mutandis*.

CHAPTER VI

PROCEDURE REGARDING EXISTING AID SCHEMES

*Article 21*

Cooperation pursuant to Article 108(1) TFEU

1.    The Commission shall obtain from the Member State concerned all necessary information for the review, in cooperation with the Member State, of existing aid schemes pursuant to Article 108(1) TFEU.

2.    Where the Commission considers that an existing aid scheme is not, or is no longer, compatible with the internal market, it shall inform the Member State concerned of its preliminary view and give the Member State concerned the opportunity to submit its comments within a period of 1 month. In duly justified cases, the Commission may extend this period.

*Article 22*

Proposal for appropriate measures

Where the Commission, in the light of the information submitted by the Member State pursuant to Article 21, concludes that the existing aid scheme is not, or is no longer, compatible with the internal market, it shall issue a recommendation proposing appropriate measures to the Member State concerned. The recommendation may propose, in particular:

(a)  substantive amendment of the aid scheme; or

(b)  introduction of procedural requirements; or

(c)  abolition of the aid scheme.

*Article 23*

Legal consequences of a proposal for appropriate measures

1.    Where the Member State concerned accepts the proposed measures and informs the Commission thereof, the Commission shall record that finding and inform the Member State thereof. The Member State shall be bound by its acceptance to implement the appropriate measures.

2.    Where the Member State concerned does not accept the proposed measures and the Commission, having taken into account the arguments of the Member State concerned, still considers that those measures are necessary, it shall initiate proceedings pursuant to Article 4(4). Articles 6, 9 and 11 shall apply *mutatis mutandis*.

CHAPTER VII

INTERESTED PARTIES

*Article 24*

Rights of interested parties

1.    Any interested party may submit comments pursuant to Article 6 following a Commission decision to initiate the formal investigation procedure. Any interested party which has submitted such comments and any beneficiary of individual aid shall be sent a copy of the decision taken by the Commission pursuant to Article 9.

2.    Any interested party may submit a complaint to inform the Commission of any alleged unlawful aid or any alleged misuse of aid. To that effect, the interested party shall duly complete a form that has been set out in an implementing provision referred to in Article 33 and shall provide the mandatory information requested therein.

Where the Commission considers that the interested party does not comply with the compulsory complaint form, or that the facts and points of law put forward by the interested party do not provide sufficient grounds to show, on the basis of a *prima facie* examination, the existence of unlawful aid or misuse of aid, it shall inform the interested party thereof and call upon it to submit comments within a prescribed period which shall not normally exceed 1 month. If the interested party fails to make known its views within the prescribed period, the complaint shall be deemed to have been withdrawn. The Commission shall inform the Member State concerned when a complaint has been deemed to have been withdrawn.

The Commission shall send a copy of the decision on a case concerning the subject matter of the complaint to the complainant.

3.    At its request, any interested party shall obtain a copy of any decision pursuant to Articles 4 and 9, Article 12(3) and Article 13.

CHAPTER VIII

**INVESTIGATIONS INTO SECTORS OF THE ECONOMY AND INTO AID INSTRUMENTS**

*Article 25*

**Investigations into sectors of the economy and into aid instruments**

1.    Where the information available substantiates a reasonable suspicion that State aid measures in a particular sector or based on a particular aid instrument may materially restrict or distort competition within the internal market in several Member States, or that existing aid measures in a particular sector in several Member States are not, or no longer, compatible with the internal market, the Commission may conduct an inquiry across various Member States into the sector of the economy or the use of the aid instrument concerned. In the course of that inquiry, the Commission may request the Member States and/or the undertakings or associations of undertakings concerned to supply the necessary information for the application of Articles 107 and 108 TFEU, taking due account of the principle of proportionality.

The Commission shall state the reasons for the inquiry and for the choice of addressees in all requests for information sent under this Article.

The Commission shall publish a report on the results of its inquiry into particular sectors of the economy or particular aid instruments across various Member States and shall invite the Member States and any undertakings or associations of undertakings concerned to submit comments.

2.    Information obtained from sector inquiries may be used in the framework of procedures under this Regulation.

3.    Articles 5, 7 and 8 of this Regulation shall apply *mutatis mutandis*.

CHAPTER IX

**MONITORING**

*Article 26*

**Annual reports**

1.    Member States shall submit to the Commission annual reports on all existing aid schemes with regard to which no specific reporting obligations have been imposed in a conditional decision pursuant to Article 9(4).

2.    Where, despite a reminder, the Member State concerned fails to submit an annual report, the Commission may proceed in accordance with Article 22 with regard to the aid scheme concerned.

*Article 27*

**On-site monitoring**

1.    Where the Commission has serious doubts as to whether decisions not to raise objections, positive decisions or conditional decisions with regard to individual aid are being complied with, the Member State concerned, after having been given the opportunity to submit its comments, shall allow the Commission to undertake on-site monitoring visits.

2.    The officials authorised by the Commission shall be empowered, in order to verify compliance with the decision concerned:

(a)  to enter any premises and land of the undertaking concerned;

(b)  to ask for oral explanations on the spot;

(c)  to examine books and other business records and take, or demand, copies.

The Commission may be assisted if necessary by independent experts.

3.    The Commission shall inform the Member State concerned, in good time and in writing, of the on-site monitoring visit and of the identities of the authorised officials and experts. If the Member State has duly justified objections to the Commission's choice of experts, the experts shall be appointed in common agreement with the Member State. The officials of the Commission and the experts authorised to carry out the on-site monitoring shall produce an authorisation in writing specifying the subject-matter and purpose of the visit.

4.    Officials authorised by the Member State in whose territory the monitoring visit is to be made may be present at the monitoring visit.

5.    The Commission shall provide the Member State with a copy of any report produced as a result of the monitoring visit.

6.    Where an undertaking opposes a monitoring visit ordered by a Commission decision pursuant to this Article, the Member State concerned shall afford the necessary assistance to the officials and experts authorised by the Commission to enable them to carry out the monitoring visit.

*Article 28*

**Non-compliance with decisions and judgments**

1.    Where the Member State concerned does not comply with conditional or negative decisions, in particular in cases referred to in Article 16 of this Regulation, the Commission may refer the matter to the Court of Justice of the European Union directly in accordance with Article 108(2) TFEU.

2.    If the Commission considers that the Member State concerned has not complied with a judgment of the Court of Justice of the European Union, the Commission may pursue the matter in accordance with Article 260 TFEU.

CHAPTER X

COOPERATION WITH NATIONAL COURTS

*Article 29*

**Cooperation with national courts**

1.    For the application of Article 107(1) and Article 108 TFEU, the courts of the Member States may ask the Commission to transmit to them information in its possession or its opinion on questions concerning the application of State aid rules.

2.    Where the coherent application of Article 107(1) or Article 108 TFEU so requires, the Commission, acting on its own initiative, may submit written observations to the courts of the Member States that are responsible for applying the State aid rules. It may, with the permission of the court in question, also make oral observations.

The Commission shall inform the Member State concerned of its intention to submit observations before formally doing so.

For the exclusive purpose of preparing its observations, the Commission may request the relevant court of the Member State to transmit documents at the disposal of the court, necessary for the Commission's assessment of the matter.

CHAPTER XI

**COMMON PROVISIONS**

*Article 30*

**Professional secrecy**

The Commission and the Member States, their officials and other servants, including independent experts appointed by the Commission, shall not disclose information which they have acquired through the application of this Regulation and which is covered by the obligation of professional secrecy.

*Article 31*

**Addressee of decisions**

1.    The decisions taken pursuant to Article 7(7), Article 8(1) and (2), and Article 9(9) shall be addressed to the undertaking or association of undertakings concerned. The Commission shall notify the decision to the addressee without delay and shall give the addressee the opportunity to indicate to the Commission which information it considers to be covered by the obligation of professional secrecy.

2.    All other decisions of the Commission taken pursuant to Chapters II, III, V, VI and IX shall be addressed to the Member State concerned. The Commission shall notify them to the Member State concerned without delay and shall give that Member State the opportunity to indicate to the Commission which information it considers to be covered by the obligation of professional secrecy.

*Article 32*

**Publication of decisions**

1.    The Commission shall publish in the *Official Journal of the European Union* a summary notice of the decisions which it takes pursuant to Article 4(2) and (3) and Article 22 in conjunction with Article 23(1). The summary notice shall state that a copy of the decision may be obtained in the authentic language version or versions.

2.    The Commission shall publish in the *Official Journal of the European Union* the decisions which it takes pursuant to Article 4(4) in their authentic language version. In the Official Journal published in languages other than the authentic language version, the authentic language version shall be accompanied by a meaningful summary in the language of that Official Journal.

3.    The Commission shall publish in the *Official Journal of the European Union* the decisions which it takes pursuant to Article 8(1) and (2) and Article 9.

4.    In cases where Article 4(6) or Article 10(2) applies, a short notice shall be published in the *Official Journal of the European Union*.

5.    The Council, acting unanimously, may decide to publish decisions pursuant to the third subparagraph of Article 108(2) TFEU in the *Official Journal of the European Union*.

*Article 33*

**Implementing provisions**

The Commission, acting in accordance with the procedure laid down in Article 34, shall have the power to adopt implementing provisions concerning:

(a) the form, content and other details of notifications;

(b) the form, content and other details of annual reports;

(c) the form, content and other details of complaints submitted in accordance with Article 12(1) and Article 24(2);

(d) details of time-limits and the calculation of time-limits; and

(e) the interest rate referred to in Article 16(2).

*Article 34*

**Consultation of the Advisory Committee on State aid**

1.    Before adopting any implementing provision pursuant to Article 33 the Commission shall consult the Advisory Committee on State aid set up by Council Regulation (EU) 2015/1588 ([¹]) ('the Committee').

2.    Consultation of the Committee shall take place at a meeting called by the Commission. The drafts and documents to be examined shall be annexed to the notification. The meeting shall take place no earlier than 2 months after notification has been sent. This period may be reduced in the case of urgency.

3.    The representative of the Commission shall submit to the Committee a draft of the measures to be taken. The Committee shall deliver an opinion on the draft, within a time-limit which the chairman may lay down according to the urgency of the matter, if necessary by taking a vote.

4.    The opinion shall be recorded in the minutes. In addition, each Member State shall have the right to ask to have its position recorded in the minutes. The Committee may recommend the publication of the opinion in the *Official Journal of the European Union*.

5.    The Commission shall take the utmost account of the opinion delivered by the Committee. It shall inform the Committee on the manner in which its opinion has been taken into account.

*Article 35*

**Repeal**

Regulation (EC) No 659/1999 is repealed.

References to the repealed Regulation shall be construed as references to this Regulation and shall be read in accordance with the correlation table in Annex II.

*Article 36*

**Entry into force**

This Regulation shall enter into force on the twentieth day following that of its publication in the *Official Journal of the European Union*.

---

([¹]) Council Regulation (EU) 2015/1588 of 13 July 2015 on the application of Articles 107 and 108 of the Treaty on the Functioning of the European Union to certain categories of horizontal State aid (see page 1 of this Official Journal).

24.9.2015          EN          Official Journal of the European Union          L 248/27

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 13 July 2015.

*For the Council*
*The President*
F. ETGEN

———

*ANNEX I*

**Repealed Regulation with list of its successive amendments**

Council Regulation (EC) No 659/1999          (OJ L 83, 27.3.1999, p. 1).

     Point 5(6) of Annex II to the 2003 Act of Accession

     Council Regulation (EC) No 1791/2006      (OJ L 363, 20.12.2006, p. 1).

     Council Regulation (EU) No 517/2013      (OJ L 158, 10.6.2013, p. 1).

     Council Regulation (EU) No 734/2013      (OJ L 204, 31.7.2013, p. 15).

———

EN    Official Journal of the European Union    24.9.2015

*ANNEX II*

**Correlation table**

| Regulation (EC) No 659/1999 | This Regulation |
| --- | --- |
| Articles 1 to 6 | Articles 1 to 6 |
| Article 6a | Article 7 |
| Article 6b | Article 8 |
| Article 7 | Article 9 |
| Article 8 | Article 10 |
| Article 9 | Article 11 |
| Article 10 | Article 12 |
| Article 11(1) | Article 13(1) |
| Article 11(2), first subparagraph, introductory wording | Article 13(2), first subparagraph, introductory wording |
| Article 11(2), first subparagraph, first indent | Article 13(2), first subparagraph, point (a) |
| Article 11(2), first subparagraph, second indent | Article 13(2), first subparagraph, point (b) |
| Article 11(2), first subparagraph, third indent | Article 13(2), first subparagraph, point (c) |
| Article 11(2), second, third and fourth subparagraphs | Article 13(2), second, third and fourth subparagraphs |
| Article 12 | Article 14 |
| Article 13 | Article 15 |
| Article 14 | Article 16 |
| Article 15 | Article 17 |
| Article 15a | Article 18 |
| Article 15b | Article 19 |
| Article 16 | Article 20 |
| Article 17 | Article 21 |
| Article 18 | Article 22 |
| Article 19 | Article 23 |
| Article 20 | Article 24 |
| Article 20a | Article 25 |
| Article 21 | Article 26 |
| Article 22 | Article 27 |
| Article 23 | Article 28 |
| Article 23a | Article 29 |
| Article 24 | Article 30 |
| Article 25 | Article 31 |
| Article 26(1) and (2) | Article 32(1) and (2) |
| Article 26(2)a | Article 32(3) |

24.9.2015    EN    Official Journal of the European Union    L 248/29

| Regulation (EC) No 659/1999 | This Regulation |
| --- | --- |
| Article 26(3) | Article 32(3) |
| Article 26(4) | Article 32(4) |
| Article 26(5) | Article 32(5) |
| Article 27 | Article 33 |
| Article 28 | — |
| Article 29 | Article 34 |
| — | Article 35 |
| Article 30 | Article 36 |
| — | Annex I |
| — | Annex II |