**EXHIBIT 76**



InfoCuria
Case-law                English (en)  ▼

**Home** > **Search form** > **List of results** > **Documents**

Language of document :  English  ▼    ECLI:EU:C:2018:903

JUDGMENT OF THE COURT (First Chamber)

14 November 2018 (*)

(Failure of a Member State to fulfil obligations — State aid — Aid declared unlawful and incompatible with the internal market — Recovery requirement — Judgment of the Court establishing a failure to fulfil its obligations — Undertaking which engages in both civil and military activities — Non-implementation — Essential interests of the security of a Member State — Article 346(1)(b) TFEU — Financial penalties — Periodic penalty payment — Lump sum — Ability to pay — 'N' Factor — Factors which are the basis for the assessment of the ability to pay — Gross domestic product — Weighting of votes of the Member State in the Council of the European Union — New voting rules in the Council)

In Case C‑93/17,

ACTION for failure to fulfil obligations under Article 260(2) TFEU, brought on 22 February 2017,

**European Commission,** represented by A. Bouchagiar and B. Stromsky, acting as Agents,

applicant,

v

**Hellenic Republic,** represented by K. Boskovits and A. Samoni-Rantou, acting as Agents,

defendant,

THE COURT (First Chamber),

composed of R. Silva de Lapuerta, Vice-President, acting as President of the First Chamber, J.-C. Bonichot, A. Arabadjiev (Rapporteur), C.G. Fernlund and S. Rodin, Judges,

Advocate General: M. Wathelet,

Registrar: R. Schiano, Administrator,

having regard to the written procedure and further to the hearing on 15 March 2018,

after hearing the Opinion of the Advocate General at the sitting on 16 May 2018,

gives the following

**Judgment**

By its action, the European Commission claims that the Court should:

declare that, by failing to adopt the measures necessary to comply with the judgment of 28 June 2012, *Commission* v *Greece* (C‑485/10, not published, EU:C:2012:395) ('the judgment establishing the infringement'), the Hellenic Republic has failed to fulfil its obligations under Article 260(1) TFEU,

order the Hellenic Republic to pay to the Commission a penalty payment in the sum of EUR 34 974 for delay in complying with the judgment establishing the infringement from the day on which judgment is delivered in the present case until the day on which the judgment establishing the infringement has been complied with;

order the Hellenic Republic to pay to the Commission a lump sum whose amount is derived from multiplying a daily sum of EUR 3 828 by the number of days that will have elapsed from the day of delivery of the judgment establishing the infringement until the day on which the infringement has ended or, if there has not been compliance, until the day on which judgment is delivered in the present case;

order the Hellenic Republic to pay the costs.

**Legal context**

Article 346(1)(b) TFEU reads:

'The provisions of the Treaties shall not preclude the application of the following rules:

…

any Member State may take such measures as it considers necessary for the protection of the essential interests of its security which are connected with the production of or trade in arms, munitions and war material; such measures shall not adversely affect the conditions of competition in the internal market regarding products which are not intended for specifically military purposes.'

**Background to the dispute**

Hellenic Shipyards SA (Ellinika Nafpigeia AE, 'ENAE'), the owner of a Greek civil and military shipyard in Skaramagkas (Greece), is specialised in the construction of military vessels. In 1985, ENAE ceased its activities and was wound up. In September 1985, Elliniki Trapeza Viomichanikis Anaptixeos AE ('ETVA'), a Greek bank owned by the Greek State, acquired ENAE. On 18 September 1995, ETVA sold 49% of the shares in ENAE to employees of that undertaking.

In 1998, within the framework of a project to modernise is fleet of submarines, the Hellenic Republic concluded a contract with ENAE called 'Archimedes' for the construction of three 'HDW Type 214' submarines and the option to construct a fourth submarine, and a contract 'Neptune II' for the modernisation of three 'HDW Type 209' submarines.

In 2001, the Hellenic Republic decided to privatise ENAE. On 11 October 2001, a sale agreement for the shares in ENAE was signed between ETVA and the employees of ENAE, on one hand, and a consortium constituted by Howaldswerke-Deutsche Werft GmbH ('HDW') and Ferrostaal AG (together 'HDW-Ferrostaal') on the other. HDW-Ferrostaal created Greek Naval Shipyard Holding (Elliniki Nafpigokataskevastiki AE Chartofylakeiou, 'GNSH'), held equally by HDW and Ferrostaal, with the aim of managing their shareholding in ENAE.

In January 2005 ThyssenKrupp AG bought HDW. In November 2005 ThyssenKrupp purchased the GNSH shares held by Ferrostaal. Therefore, from that date, ThyssenKrupp held 100% of the shares in ENAE and controlled that undertaking. GNSH and HDW are part of ThyssenKrupp Marine Systems AG, a division of ThyssenKrupp specialising in systems for naval vessels and specialised merchant ships.

In that context, between 1996 and 2003, the Hellenic Republic took a certain number of measures, consisting in capital contributions, guarantees and loans in favour of ENAE, which were the subject of several decisions of the Council of the European Union and the Commission.

On 2 July 2008, the Commission adopted Decision 2009/610/EC of 2 July 2008 on the measures C 16/04 (ex NN 29/04, CP 71/02 and CP 133/05) implemented by Greece in favour of Hellenic Shipyards SA (OJ 2009 L 225, p. 104), Articles 2, 3, 8, 9 and 11 to 15 of which state that those measures are aid incompatible with the internal market.

In accordance with Article 5 and 6 of that decision, the aid specified therein, although it was previously authorised by the Commission, had been misused so that it had to be recovered.

Under Article 16 of Decision 2009/610, the indemnification guarantee granted by ETVA to HDW/Ferrostaal providing that ETVA would indemnify HDW/Ferrostaal for any State aid recovered from ENAE constitutes aid that has been put into effect in contravention of Article 108(3) TFEU which is incompatible with the internal market. Therefore, that guarantee was to be stopped immediately.

Finding that the aid to be recovered exclusively benefited ENAE's civil activities, the Commission decided, in Article 17 of that decision, that that aid had to be recovered from the civil activities of that undertaking.

Article 18 of Decision 2009/610 required the Hellenic Republic to immediately recover the aid defined in Articles 2, 3, 5, 6, 8, 9 and 11 to 15 of that decision. According to Article 18, Greece was to take the measures necessary to implement that decision within 4 months following 13 August 2008, the date of its notification.

In light of ENAE's difficult financial situation, the Hellenic Republic argued that the full reimbursement of the aid at issue might cause it to go bankrupt and, therefore, affect its military activities, including the construction and modernisation of 'HDW Type 214' and 'HDW Type 209' submarines, so that it could adversely affect the essential interests of the security of the Hellenic Republic, within the meaning of Article 346 TFEU. In order to avoid such a possibility, after negotiations between June and October 2010 and commitment letters from ENAE and the Hellenic Republic, dated 27 and 29 October 2010 respectively, the Commission, the Hellenic Republic and ENAE reached an agreement under which Decision 2009/610 was deemed to have been correctly implemented subject to compliance with the following undertakings:

ENAE's civil activities to be suspended for a period of 15 years from 1 October 2010;

the assets related to ENAE's civil activities to be sold and the proceeds of the sale paid to the Greek authorities. If the auction did not result in the sale of all or part of the civil assets, ENAE was to transfer them to the Greek State as an alternative means of implementing the obligation to recover the aid at issue. In that case, the Greek State had to ensure that none of those shares were reacquired by ENAE or its current or future shareholders during the abovementioned period of 15 years.

ENAE was to give up the concession of a dry dock, the use of which was unnecessary for the pursuit of its military activities. The Greek State was to ensure that that concession and the land concerned would not be reacquired by ENAE or its current or future shareholders during the abovementioned 15 year period;

ENAE was to waive the indemnification guarantee set out in Article 16 of Decision 2009/610 and would not initiate any proceedings based on that guarantee or in connection with it. The Hellenic Republic was to invoke the invalidity of that guarantee before any court or tribunal;

in the 6 months following the acceptance of the list of commitments by the Commission, the Hellenic Republic was to provide evidence of the restitution of the dry dock to the Greek State and up-to-date information relating to the sale at auction of ENAE's civil assets. In addition the Hellenic Republic was to notify the Commission each year as to the progress of the recovery of incompatible State aid, inter alia by submitting evidence that ENAE no longer pursued civil activities, information on the ownership and use of the assets returned to the Greek State and the use of the land covered by the concession of the dry dock.

On 8 October 2010, taking the view that the Hellenic Republic had failed to comply with its obligations under Decision 2009/610, the Commission brought an action for failure to fulfil obligations against the Hellenic Republic under Article 108(2) TFEU seeking a declaration that the latter had failed to take all the measures necessary to comply with that decision during the period prescribed.

By letter of 1 December 2010, the Commission informed the Hellenic Republic that, if the undertakings set out in paragraph 13 of the present judgment were actually implemented, the Commission would consider Decision 2009/610 to be implemented in full. In that letter, the Commission states that ENAE's assets assigned to its civil activities were to be sold or transferred to the Greek State within the 6 months following that letter.

On 28 June 2012, by its judgment establishing a failure to fulfil obligations, the Court held that, by failing to take all the measures necessary for the implementation of Decision 2009/610 and by failing to submit to the Commission, within the period prescribed, the information set out in Article 19 of that decision, the Hellenic Republic has failed to fulfil its obligations under Articles 2, 3, 5, 6, 8, 9 and 11 to 19 thereof.

**Pre-litigation procedure**

Following the delivery of the judgment establishing a failure to fulfil obligations, members of the Commission staff exchanged a number of letters with the Greek authorities about the progress in recovering the incompatible State aid.

In that context, the Greek Parliament adopted Law No 4099/2012, which entered into force on 20 December 2012. Article 169(2) of that law states that 'from the entry into force of this Law, the exclusive right of use, granted to [ENAE] in Article 1(15) of Law No 2302/1995 … as supplemented by Article 6(1) of Law No 2941/2011, shall be withdrawn in so far as it concerns the part of the State land ABK 266 with an area of … (216 663.985 m²) indicated [on the topographic map published in Annex I to this Law] and the coastal area situated in front of State land ABK mentioned above'.

On 11 January 2013, ENAE and its owners on that date brought an action before the International Court of Arbitration of the International Chamber of Commerce ('the ICC Court of Arbitration') for damages against the Hellenic Republic on account of an alleged infringement, (i) of a Framework Agreement concluded in March 2010 between the Hellenic Republic, ENAE, HDW, ThyssenKrupp and Abu Dhabi Mar LLC (which in 2009 repurchased 75.1% of the shares in ENAE held by ThyssenKrupp), Article 11 of which referred to the Hellenic Republic's obligation to recover the State aid; (ii) an Implementation Agreement between the same parties to the Framework Agreement which was to resolve a number of disputes concerning the implementation of the 'Archimedes' and 'Neptune II' contracts; and (iii) contracts for the construction and modernisation of submarines concluded in the context of those agreements. On 23 April 2014, the Hellenic Republic also brought an action before the ICC Court of Arbitration for damages against ENAE and its shareholders for breach of the Implementation Agreement and the contracts for the construction and modernisation of submarines and, in particular, the obligation to deliver the submarines under the conditions and within the periods stipulated.

Further, the Greek Parliament adopted Law No 4237/2014, which entered into force on 12 February 2014, Article 12 of which states that, in the light of the national security interests of the Hellenic Republic, the pursuit of any type of enforcement against the movable and immovable property of ENAE was to be suspended.

By means of Article 26 of Law No 4258/2014, which entered into force on 14 April 2014, the Hellenic Republic awarded the project relating to the construction and modernisation of submarines to the Navy, on account of the fact that ENAE had failed to comply with its contractual undertakings to ensure the operational capacities necessary for defence and national security. That provision also provided that the Navy would continue, without consideration, the work on the submarines in ENAE's facilities and would pay the salaries and social security contributions of the employees in return for their work.

On 27 November 2014, taking the view that Decision 2009/610 had not yet been implemented, the Commission sent a letter of formal notice to the Greek authorities under Article 260(2) TFEU giving them a deadline of 2 months.

By the letter of formal notice, the Commission stated that the Greek authorities had not recovered the incompatible aid and had failed to provide it with any information about the implementation of Decision 2009/610.

The Greek authorities replied to the letter of formal notice on 23 January 2015. First, they described the obstructive behaviour and lack of cooperation on the part of ENAE with regard to the implementation of the commitments listed in the letter of 1 December 2010. Second, they mentioned the necessity for that undertaking to remain in operation for a further 18 to 20 months in order for the Navy to finish the construction and modernisation of submarines stipulated in the 'Archimedes' and Neptune II' contracts at ENAE's facilities.

On 4 December 2015, the Greek authorities sent ENAE a recovery order in the sum of EUR 523 352 889.23, which represented approximately 80% of the amount to be recovered, including interest until 30 November 2015. On 5 February 2016, ENAE brought an action before the Dioikitiko Protodikeio Athinion (Administrative Court of First Instance, Athens, Greece) seeking the annulment of that recovery order. In March 2016, the Greek tax authorities adopted implementing measures with respect to that recovery order. On 13 April 2016, ENAE lodged a counterclaim before the same court against the implementing acts. On 23 May 2016, ENAE lodged applications for suspension of operation of the acts mentioned above before that court. The Commission intervened as amicus curiae in those cases, pursuant to Article 29(2) of Council Regulation (EU) 2015/1589 of 13 July 2015 laying down detailed rules for the application of Article 108 [TFEU] (OJ 2015 L 248, p. 9).

On 29 September 2016, the Dioikitiko Protodikeio Athinon (Administrative Court of First Instance, Athens) dismissed the applications to stay enforcement lodged by ENAE.

Following the dismissal of those applications, on 3 February 2017, the Greek authorities initiated enforcement proceedings against ENAE's civil assets. On 6 February 2017, those authorities served garnishee orders on three banks with which ENAE had bank accounts. However, the Hellenic Republic has not recovered any money on account of previous garnishee orders made by other creditors as a result of that undertaking's financial difficulties.

In parallel, on 12 May 2016, ENAE and its shareholders brought an action before the ICC Court of Arbitration for interim measures against the national administrative acts adopted by the Greek authorities in December 2015 and March 2016 seeking to recover the State aid concerned. The ICC Court of Arbitration dismissed that application for interim measures. They also sought an order from the ICC Court of Arbitration prohibiting the Greek authorities from initiating any insolvency proceedings against ENAE during the arbitration proceedings.

By order of 5 August 2016, the ICC Court of Arbitration dismissed the application by ENAE and its shareholders, holding that it could not interfere in the implementation of Decision 2009/610. However, it held that the recovery of the aid at issue could cause ENAE to go bankrupt and, therefore, it prohibited the Hellenic Republic from nationalising that undertaking, taking the administration of that undertaking under its control or making that undertaking and its assets subject to insolvency proceedings without giving that court prior notification.

On 13 February 2017, the Greek authorities informed the Commission of their intention to subject ENAE to a special liquidation procedure, pursuant to Law No 4307/2014, which entered into force on 15 November 2014 ('special

management') and requested a meeting with the Commission to discuss the conditions for implementing that procedure.

In those circumstances, on 22 February 2017 the Commission brought the present proceedings.

**Developments after the case was brought before the Court**

A meeting relating to the placement of ENAE under special management was held on 8 March 2017. During that meeting, the Greek authorities submitted a detailed plan to the Commission with a view to placing ENAE under the special management proposed.

On 21 March 2017, two floating docks owned by ENAE were seised.

On 10 April 2017, ENAE lodged an application for interim measures before the ICC Court of Arbitration seeking the adoption of protective measures prohibiting the Greek authorities from initiating a procedure to subject that undertaking to special management pursuant to Law No 4307/2014. In its decision of 27 June 2017, the ICC Court of Arbitration indicated that its award was imminent. Therefore, it held that the initiating of a special management procedure against ENAE would deprive ENAE's shareholders of their control over the undertaking and that the special administrator chosen by the creditors might take decisions affecting ENAE's position in the arbitration proceedings. In that context, the ICC Court of Arbitration decided that, until the adoption of its final award, the Greek authorities should avoid taking any measures which might lead directly or indirectly to a change in control of the management of ENAE, including insolvency proceedings or the placement of that undertaking into special management.

On 29 June 2017, the Greek authorities sent a letter to ENAE, requesting it to pay the outstanding 20% of the aid to be recovered, including interest until 30 June 2017, that is EUR 95 098 200.99. Since that payment was not made, the tax authorities were instructed to recover that sum by letter of 31 July 2017 from the Ypourgeio Oikonomias kai Anaptyxis (Ministry of Economy and Development, Greece).

On 12 October 2017, the Greek authorities brought proceedings before the Greek courts seeking to make ENAE subject to the special administration procedure laid down by Article 68 of Law No 4307/2014, which entered into force on 15 November 2014.

In the course of the proceedings, the Court of Justice upheld three applications from the Hellenic Republic concerning the production of new documents pursuant to Article 128(2) of the Rules of Procedure of the Court of Justice. On each occasion, a period was prescribed to enable the Commission to adopt a position on those documents.

It is clear from those documents, first, that by its judgment No 725/2018 of 8 March 2018, the Monomeles Protodikeio Athinon (Court of First Instance (Single Judge), Athens, Greece) upheld the application by the Greek authorities to place ENAE in special administration and appoint a special administrator.

Second, it is apparent from those documents that, on 26 March 2018, the Independent Authority for Public Revenue attempted, by schedule of liabilities of 22 March 2018, to present to the special administrator the debts of the Hellenic Republic relating to the recovery of the aid concerned in the context of the special management procedure with respect to that undertaking. More specifically, that authority announced an amount of EUR 713 883 282.19 with surcharges for late payment of the debt. That sum includes EUR 524 896 095.75 and EUR 95 171 888.92 that the Greek State must recover in order to comply with Decision 2009/610 and therefore with the judgment establishing the failure to fulfil obligations.

The special administrator received notification of all those actions by registered letter deposited at the post office.

Third, it is clear from the documents produced by the Hellenic Republic in accordance with Article 128(2) of the Rules of Procedure that, on 26 June 2018, by means of a delivery protocol, ENAE, represented by its special administrator, relinquished possession of the land ABK 266 and the part of the coast situated in front of it to Etaireia Akiniton Dinousiou A.E. (State Real Estate Company S.A., 'ETAD').

**The failure to fulfil obligations**

*Arguments of the parties*

The Commission criticises the Hellenic Republic for failing to take the measures for compliance with the judgment establishing the failure to fulfil obligations because although a number of years have passed since the adoption of Decision 2009/610 and the delivery of that judgment the Greek authorities have failed to recover the State aid at issue from ENAE.

In the first place, the Commission claims that the Hellenic Republic has failed to take all the measures which are necessary, in principle, for the implementation of a decision such as Decision 2009/610.

By introducing the moratorium provided for in Article 12 of Law No 4237/2014, the Greek authorities have made the recovery of the aid more difficult.

It was only in December 2015 and March 2016 that the Greek authorities adopted national administrative measures intended to recover part of the State aid at issue from ENAE. However, those acts have not resulted in the recovery of any of the aid from that undertaking.

In the second place, the Commission claims that the Hellenic Republic has also failed to comply with the commitments set out in the letter of 1 December 2010, the latter being regarded as an alternative means of implementing Decision 2009/610.

In that connection, the Commission maintains, first, that the sale of ENAE's civil assets did not take place and that ENAE challenged the list of civil assets.

Second, the Commission observes that although the Greek Parliament has passed a law concerning the restitution of the dry dock, the Hellenic Republic has not yet sent the relevant map showing precisely the area recovered or any evidence that that land is no longer used by ENAE.

Third, apart from the resolution taken by ENAE's management board on 14 April 2010, according to which that undertaking would cease its civil activities, the Greek authorities have not provided any evidence to show that that

undertaking has ceased all civil activities from the date of that resolution.

Fourth, those authorities have never sent any documents establishing that the indemnification guarantee mentioned in Article 16 of Decision 2009/610 has been stopped or that it has never been used.

Fifth, those authorities have never submitted a report on the progress on implementing that decision.

Sixth, the Commission states that the only ground of defence which the Hellenic Republic could rely on is the absolute impossibility to implement Decision 2009/610 properly by establishing the absence of recoverable assets. In such a case, the Member State must bring about the winding-up of the recipient undertaking and cause it definitively to cease its activities.

In the present case, the Greek authorities have never argued that it was absolutely impossible to recover the aid at issue. On one hand, they merely stated that complete recovery would lead to the liquidation of the naval shipyards, which would have a negative impact on national defence interests and, on the other hand, they blamed the lack of recovery on obstruction by ENAE, even though such obstruction does not justify failure to implement Decision 2009/610.

As to the national defence interests relied on by the Hellenic Republic which concern only the construction of submarines for the Navy at ENAE's facilities, the Commission observes that the derogation provided for in Article 346 TFEU concerns exceptional cases which are clearly defined and thus does not lend itself to a broad interpretation. Therefore, it is for that Member State to establish that that derogation is necessary for the protection of essential interests of security.

In that context, the Commission challenges the merits of the security interests relied on by the Hellenic Republic. The Greek authorities have never explained why the construction and modernisation of the submarines had to take place at ENAE's facilities and not in those of other Greek shipyards, in particular, after the award to the Navy of the project for the construction and modernisation of submarines provided for in Article 26 of Law No 4258/2014.

The Hellenic Republic replies that it took all the measures necessary in order to enforce the judgment establishing the infringement.

That Member State observes that Article 12 of Law No 4237/2014 does not constitute a measure which would make the recovery of the aid at issue more difficult because the suspension of enforcement against ENAE's assets provided for by that article applies only to the extent that enforcement would affect the construction and maintenance of Navy submarines, which is consistent with Article 346(1)(b) TFEU. Furthermore, the fact that the Greek authorities subsequently adopted enforcement measures against ENAE shows that Article 12 of that law does not prevent that recovery.

Next, the Hellenic Republic relies on essential interests of security, within the meaning of Article 346(1)(b) TFEU, arguing that recovery must not hinder the pursuit of military activities of larger and more productive shipyards in Greece nor the broad discretion it has to choose the measures it considers necessary.

The Hellenic Republic could not put ENAE into bankruptcy as that procedure would affect all the assets of that undertaking and jeopardise the pursuit of the military activities at the shipyard and, therefore, the defence capabilities of that Member State. It is for those reasons that the Greek authorities gave priority to the implementation of the commitments set out in the letter of 1 December 2010.

In that connection, the Hellenic Republic observes that, as regards the sale of ENAE's civil assets, it encountered opposition from that undertaking which did not agree with the list of civil assets to be sold.

On account of those obstructions, the Greek authorities sent recovery orders and garnishee orders to that undertaking.

Since those measures did not result in any repayment on account of the previous garnishee orders of other creditors and the fact that ENAE clearly lacked sufficient assets, the Greek authorities took the view that it was better to place that undertaking under special management under the provisions of Law No 4307/2014. According to the Hellenic Republic, after the award of the construction of submarines to the Navy, the Greek authorities were able to take measures to liquidate ENAE without compromising the pursuance of military programmes.

In that context, the Hellenic Republic submits that placing ENAE under special management is the most appropriate measure to liquidate that undertaking, that measure being fully consistent with the requirements of EU law because the procedure allows the sale at public auction of all or part of the branches of the undertaking or of single assets belonging to it under the responsibility of an independent administrator and under judicial supervision. That special management procedure, which may be completed within a period of 12 months from the appointment of the special administrator, gives at least the same guarantees as those of the ordinary insolvency procedure, is much faster and more transparent. That procedure helps to avoid a depreciation in the value of the assets concerned and guarantees the sale of ENAE's military assets as one unit, in accordance with the essential interests of security of the Hellenic Republic.

As far as concerns the restitution of the land granted to ENAE for its exclusive use, the Hellenic Republic submits that, on 20 December 2012, the right to use that land was withdrawn by Article 169(2) of Law No 4099/2012. The Hellenic Republic states that copies of the transcript at the geographically competent mortgage registry office, sent to the Commission, show that that land was relinquished. According to that Member State, that land is no longer used by ENAE because that undertaking has not pursued any civil activities since 2010.

Furthermore, the Hellenic Republic takes the view that the restitution of the land at issue is a measure implementing Decision 2009/610 as, in the absence of sufficient assets, the Greek authorities are required to liquidate all of ENAE's civil assets. That being the case, that Member State submits that the valuation of the land, at 2008 prices, shows that it represents 60% of the total value of ENAE's civil assets, or 58% of the non-military infrastructure of the shipyard.

Having regard to that calculation, the sale of ENAE's civil assets concern, in reality, only a small part of the value of the civil branch of that undertaking.

As regards the cessation of ENAE's civil activities, the Hellenic Republic states that the Management Board of that undertaking expressly adopted a decision on that issue and that the new management of that undertaking confirmed on several occasions that ENAE has not pursued any civil activities since 2010. That Member State adds that ENAE has not published any statement of accounts since 30 September 2011 as a result of its poor economic situation.

Finally, as far as concerns the indemnification guarantee referred to in Article 16 of Decision 2009/610, the Hellenic Republic states that it is incumbent on ENAE to waive it. Furthermore, that Member State states that the applicability of that guarantee has not arisen in any case so that the Greek authorities were not in a position to rely on its invalidity.

**Findings of the Court**

As a preliminary point, it must be recalled that it is clear from the case-law of the Court that the Member State to which a decision requiring recovery of unlawful aid declared incompatible with the internal market is addressed is obliged under Article 288 TFEU to take all measures necessary to ensure implementation of that decision. It must succeed in actually recovering the sums owed in order to eliminate the distortion of competition caused by the anticompetitive advantage procured by that aid (judgment of 9 November 2017, *Commission* v *Greece*, C-481/16, not published, EU:C:2017:845, paragraph 23).

The recovery of unlawful aid declared incompatible with the internal market must be effected without delay and in accordance with the procedures under the national law of the Member State concerned, provided that they allow the immediate and effective execution of the Commission's decision. To this effect, the Member States concerned are required to take all necessary steps which are available in their respective legal systems, including provisional measures, without prejudice to EU law (see, to that effect, judgment of 9 November 2017, *Commission* v *Greece*, C-481/16, not published, EU:C:2017:845, paragraph 24).

As regards situations in which unlawfully paid State aid must be recovered from the recipient companies which are in difficulty or are bankrupt, it must be recalled that such difficulties do not affect the obligation to recover the aid. The Member State is therefore required, as the case may be, to bring about the winding-up of that company, to have its claim registered as one of that company's liabilities or to take any other measure enabling the aid to be recovered (judgment of 17 January 2018, *Commission* v *Greece*, C-363/16, EU:C:2018:12, paragraph 36).

In the present case, it is clear from the file that, in the light of ENAE's difficult economic situation and in order to prevent that undertaking from going bankrupt or jeopardising the implementation of the 'Archimedes' and 'Neptune II' programmes for the Navy and, therefore, to avoid adversely affecting the essential interests of security of the Hellenic Republic, within the meaning of Article 346 TFEU, the Commission, that Member State and ENAE undertook to implement an alternative recovery method so that the Commission could consider Decision 2009/610 to be fully implemented.

Therefore, in order to determine whether the Hellenic Republic has taken all the measures necessary in order to comply with the judgment establishing the failure to fulfil obligations, it must be ascertained whether that Member State has observed the commitments set out in the letter of 1 December 2010, whether the State aid at issue, as described in Articles 2, 3, 5, 6, 8, 9 and 11 to 15 of Decision 2009/610, has been recovered in full by that Member State, and whether the information set out in Article 19 of that decision was submitted to the Commission.

Concerning infringement proceedings under Article 260(2) TFEU, the reference date which must be used for assessing whether there has been a failure to fulfil obligations is that of the expiry of the period prescribed in the letter of formal notice issued under that provision (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 32).

In the present case, as noted in paragraph 22 above, the Commission having sent the Hellenic Republic a supplementary letter of formal notice, on 27 November 2014, in accordance with the procedure laid down in Article 260(2) TFEU, the reference date mentioned in the previous paragraph is the date of expiry of the period prescribed in that letter, namely 27 January 2015.

As far as concerns the commitments referred to in the letter of 1 December 2010, it is common ground that, on 27 January 2015, the Greek authorities had not complied with them.

It is clear from the file that the only measure taken by the Hellenic Republic on that date is the adoption of Law No 4099/2012 which entered into force on 20 December 2012.

However, it is clear from the file that both the ICC Court of Arbitration and the Monomeles Protodikeio Athinon (Court of First Instance (Single Judge), Athens) stated that, despite the entry into force of that law, ENAE had not in fact relinquished the State land mentioned in the dry dock concession.

According to the protocol of 26 June 2018, ENAE relinquished possession of the land designated ABK 266, including the dry dock the use of which had been granted to it by a concession and the part of the coast situated in front of it. However, the Hellenic Republic has failed to show that that undertaking had actually given up possession of that land to the Greek State before 27 January 2015.

Thus, it cannot be held that ENAE gave up the dry dock concession as required by the commitments mentioned in the letter of 1 December 2010.

As far as concerns the Hellenic Republic's argument that the fact that the land is no longer used by ENAE is due to the fact that that undertaking has not pursued any civil activities since 2010, which is clear from the decision of ENAE's Management Board of 14 April 2010, it must be held that it is not apparent either from that decision or from the file that ENAE has suspended its civil activities, for the purposes of the commitments set out in the letter of 1 December 2010.

That decision of the Management Board cannot relate to the commitment to suspend ENAE's civil activities for a period of 15 years from 1 December 2010 because that decision predates ENAE's letter of commitment of 27 October 2010. That decision simply mentions the fact that, in connection with a loan agreement with ENAE, 'non-naval activities have currently been discontinued in their entirety'.

Furthermore, when requested by the Court, the Hellenic Republic was unable to provide any documents establishing that ENAE had complied with the obligation to discontinue its civil activities for a period of 15 years.

Therefore, in the absence of any evidence establishing that ENAE discontinued its civil activities from 1 December 2010, the Hellenic Republic has failed to prove that that undertaking no longer used the State land covered by the dry dock concession.

As regards the undertaking relating to the sale of ENAE's civil assets or their restitution to the Greek State, it is clear that the sale or restitution has not taken place. Therefore, that commitment has not been honoured.

As regards the indemnification guarantee referred to in Article 16 of Decision 2009/610, it should be noted that, according to the letter of 1 December 2010, ENAE undertook to waive it and not to bring any proceedings on the basis of that guarantee or in connection with it. There is nothing in the file to show any such waiver or that the Hellenic Republic stopped that guarantee by enacting legislation. Therefore, it did not honour that undertaking.

According to the agreement between the Commission, the Hellenic Republic and ENAE resulting from the letter of 1 December 2010, all the commitments were to be honoured in order to establish that Decision 2009/610 had been correctly implemented. Therefore, it suffices that one of those undertakings was not honoured for a finding that that method of recovery failed. It must be held that the commitments set out in paragraph 13 of the present judgment have not been implemented.

As regards the Hellenic Republic's principal obligation to recover in full the State aid at issue, as defined in Articles 2, 3, 5, 6, 8, 9 and 11 to 15 of Decision 2009/610, it is clear that the Greek authorities have failed to comply with that obligation and that they have failed to transmit to the Commission the information specified in Article 19 thereof.

As far as concerns the Hellenic Republic's argument that its essential interests of security, within the meaning of Article 346(1)(b) TFEU, did not allow it to cause ENAE to go into bankruptcy, as such a procedure would affect all the assets of that undertaking and would have jeopardised the continuation of the military activities of the shipyard and, therefore, the defence capabilities of that Member State when there was a more appropriate measure to liquidate that undertaking which took account of the essential interests of security of that Member State, namely placing it in special management, it must be stated that the possibility to place ENAE under special management was open to the Greek authorities before the expiry of the period prescribed in the letter of formal notice, that is 27 January 2015, since Law No 4307/2014 entered into force on 15 November 2014.

It is clear from the file that the application for the initiation of that procedure was not lodged until 12 October 2017.

Therefore, even if the Hellenic Republic could reasonably rely on its essential interests of security, within the meaning of Article 346(1)(b) TFEU, at the recovery stage for the State aid at issue, it suffices to observe that on 27 January 2015 that Member State had not taken the measure that it itself considered appropriate with regard to its essential interests of security.

Thus, the Hellenic Republic cannot reasonably argue that it has taken all the measures necessary in order to implement the procedure for the recovery of the State aid concerned. Therefore, the judgment establishing the failure to fulfil obligations had still not been enforced on 27 January 2015.

Consequently, it must be held that, by failing to take all the measures to comply with the judgment establishing the failure to fulfil obligations, by the date on which the period prescribed expired, the Hellenic Republic has failed to fulfil its obligations under Article 260(1) TFEU.

**Financial penalties**

*Penalty payment*

*Arguments of the parties*

In the first place, the Commission takes the view that the Hellenic Republic's alleged failure to fulfil obligations continued at the time of the examination of the facts by the Court.

More specifically, as far as concerns the schedule of liabilities of 22 March 2018, by which the Hellenic Republic informed ENAE's special administrator of its debts relating to the recovery of the aid concerned in the context of the special management procedure for that undertaking, the Commission takes the view that it is the entry in the schedule of liabilities of the debts relating to the recovery of the aid concerned which may be regarded, in principle, as being an appropriate measure ensuring the elimination of the distortion of competition, provided that such a measure is followed either by the full recovery of the amount of that aid, or the liquidation of the undertaking and the complete cessation of its activities if such recovery is still impossible in the course of the insolvency proceedings. The mere declaration of those debts is insufficient to establish that that Member State has fulfilled its recovery obligation. The Commission adds that, in accordance with Article 77 of Law No 4307/2014, formal entry on the schedule of liabilities is to be made after the transfer of the assets of the undertaking concerned resulting from the special management to which that undertaking is subject, and not before the transfer.

As far as concerns the delivery protocol by which ENAE relinquished possession of the land designated ABK 266 and the part of the coast situated in front of it to ETAD, the Commission observes that that protocol is dated 26 June 2018. Therefore, that delivery was delayed since, according to the letter of 1 December 2010, it should have been made within 6 months of that letter. Furthermore, the Commission claims that the Hellenic Republic has not yet sent a map clearly indicating the land returned to the State or evidence establishing that ENAE no longer uses it.

In the second place, as regards the amount of the periodic penalty payment, the Commission bases its argument on its Communication SEC(2005) 1658 of 12 December 2005, entitled 'Application of Article [260 TFEU]' (OJ 2007 C 126,

p. 15), to propose that the amount of the periodic penalty payment should be calculated by multiplying a standard flat rate of EUR 670 by a coefficient for seriousness of 5 on a scale of 1 to 20 and a coefficient for duration of 3, that is the maximum coefficient. The result obtained is then multiplied by an 'n' factor calculated at 3.48 for the Hellenic Republic, which is intended to reflect the ability to pay of the defendant Member State and which, for that purpose, takes as evidence the gross domestic product (GDP) of that Member State and the number of votes it has in the Council.

As far as concerns the coefficient of seriousness, the Commission emphasises the fundamental nature of the provisions of the FEU Treaty on State aid, the detrimental effect that the incompatible and unrecovered aid has on the shipbuilding sector, the considerable amount of unrecovered aid and the repetition of the unlawful conduct of that Member State in the field of State aid.

As regards the coefficient of duration, the Commission observes that the infringement has persisted for a number of years from the delivery of the judgment establishing the failure to fulfil obligations and more than 8 years since the notification of Decision 2009/610.

As to the 'n' factor, the Commission argues that the calculation must be made on the basis of the GDP evolution of the Hellenic Republic during the most recent year for which reliable economic data is available and the weighting of the votes of that Member State in the Council.

As regards the weighting of the votes in the Council, the Commission takes the view that the modification of the voting system in the Council from 1 April 2017 does not mean that it is required to adapt its proposed 'n' factor. It adds that, when the action was initiated, the former system for the weighting of votes had not expired. Therefore, the factor which derives from the old system of weighting of votes continued to be a useful baseline for the calculation of penalties.

In those circumstances, the Commission considers that a periodic penalty payment of EUR 34 974 per day is appropriate to the circumstances and proportionate to the failure to fulfil obligations in question and to the ability to pay of the Member State concerned.

The Hellenic Republic argues, in the first place, that, by schedule of liabilities of 22 March 2018, it lodged its claims under the special management procedure to ENAE's special administrator. That Member State adds that, by means of the protocol of 26 June 2018, that undertaking relinquished possession of the land denominated ABK 266, including the dry dock whose use it was granted by a concession together with the part of the coast situated in front of it. According to that Member State relinquishment of possession is an important part of the fulfilment of the obligation to recover the State aid at issue.

In the second place, the Hellenic Republic challenges the coefficients of seriousness and duration of the infringement used by the Commission.

In that connection, it argues that the Commission failed to take into account a number of factors which mitigate the seriousness of the infringement, such as the fact that ENAE has not pursued any civil activities since 2010 and, therefore, no longer exerts any competitive pressure on other undertakings in the shipbuilding sector. It also mentions a number of difficulties that it encountered in the implementation of Decision 2009/610 including the decision of the ICC Court of Arbitration of 27 June 2017. It also challenges the alleged repetition of the unlawful conduct on its part in the field of State aid. For those reasons, it considers that the coefficients of seriousness and duration cannot be greater than 1.

As regards the ability to pay, the Hellenic Republic considers, first, that the 'n' factor must be updated with the help of the most recent financial data. In that connection, that Member State submits that the Commission has not taken into account the current state of the Greek economy and, in particular, the fact that it is still subject to a macroeconomic adjustment programme as it cannot self-finance effectively on the financial markets.

Second, the Hellenic Republic takes the view that the 'n' factor is not calculated correctly as from 1 April 2017 the Treaty abandoned the system of weighted votes in the Council and replaced it with a double majority system for Member States and populations, according to which each Member State has only a single vote in the Council. The Hellenic Republic therefore considers that the Member States with a population and GDP comparable to its own have suffered a serious loss of influence in the Council.

*Findings of the Court*

As a preliminary point, it should be recalled that, in each case, it is for the Court to determine, in the light of the circumstances of the case before it and according to the degree of persuasion and deterrence which appears to it to be required, the financial penalties appropriate, in particular, for preventing the recurrence of similar infringements of EU law (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 63).

According to settled case-law, the imposition of a penalty payment is, in principle, justified only in so far as the failure to comply with an earlier judgment of the Court continues up to the time of the Court's examination of the facts (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 64).

In the present case, the Hellenic Republic submits that, on the date of the examination of the facts by the Court, it had implemented the commitments set out in the letter of 1 December 2010 and Decision 2009/610.

In that connection, the Hellenic Republic claims that it produced its debts in connection with the special management procedure to ENAE's special administrator and that it surrendered the possession of the land denominated ABK 266 including the dry dock the use of which was granted to it by concession, and the part of the coast situated in front of it.

In the first place, as regards the arguments concerning the lodging of claims, in the present case, it is clear that, on the date of the examination of the facts by the Court, the Hellenic Republic had not entered the claims relating to the recovery of the aid concerned on the schedule of liabilities. There is no evidence in the file that the special administrator entered those debts in the schedule of liabilities. Furthermore, in accordance with Article 77 of Law No 4307/2014, formal entry on the schedule of liabilities is effected after the transfer of the assets of the undertaking

concerned resulting from the special management to which it is subject, and not before that transfer. It is common ground that such a transfer of assets has not taken place. Therefore, the Hellenic Republic cannot reasonably argue that, by the declaration of claims of 22 March 2018, it lodged its claims in the context of the special management procedure with ENAE's special administrator.

In any event, the entry in the schedule of liabilities of the claims relating to the recovery of the aid concerned is not sufficient in itself to satisfy the obligation to implement the judgment establishing the failure to fulfil obligations (judgment of 11 December 2012, *Commission* v *Spain*, C-610/10, EU:C:2012:781, paragraph 103). Such a registration is regarded as being, in principle, an appropriate measure capable of ensuring the elimination of the distortion of competition, provided that such a measure is followed either by the recovery of the full amount of that aid or by the winding-up of the undertaking and the definitive cessation of its activities, if such recovery remains impossible throughout the insolvency proceedings (judgment of 17 January 2018, *Commission* v *Greece*, C-363/16, EU:C:2018:12, paragraph 42).

In the second place, as regards the argument concerning the surrender of the possession of the land designated ABK 266, it suffices to state that, in any event, that represents only partial implementation of the recovery obligation. That transfer does not, in itself, ensure the full recovery of the State aid concerned or compliance with the commitments set out in the letter of 1 December 2010.

Therefore, the Hellenic Republic cannot claim that, on the date of the examination of the facts by the Court, it had taken all the measures necessary for the purpose of implementing the judgment establishing the failure to fulfil obligations.

In the light of the foregoing, it must be held that the failure to fulfil obligations of which the Hellenic Republic is criticised continued up until the examination of the facts by the Court.

In those circumstances, an order imposing a periodic penalty payment on the Hellenic Republic is an appropriate financial means by which to encourage the Hellenic Republic to take the measures necessary to put an end to the infringement established and to ensure full compliance with the judgment establishing failure to fulfil obligations.

According to settled case-law, the penalty payment must be decided upon according to the degree of persuasion needed in order for the Member State which has failed to comply with a judgment establishing a breach of obligations to alter its conduct and bring to an end the infringement established (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 68).

In exercising its discretion in the matter, it is for the Court to set the penalty payment so that it is both appropriate to the circumstances and proportionate to the infringement established and the ability to pay of the Member State concerned (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 69).

The Commission's proposals regarding the penalty payment cannot bind the Court and are merely a useful point of reference. Similarly, guidelines such as those set out in the communications of the Commission are not binding on the Court but contribute to ensuring that the Commission's own actions are transparent, foreseeable and consistent with legal certainty when that institution makes proposals to the Court. In proceedings under Article 260(2) TFEU relating to a failure to fulfil obligations on the part of a Member State that has persisted notwithstanding the fact that that same failure to fulfil obligations has already been established in a first judgment delivered under Article 258 TFEU or Article 108(2) TFEU, the Court must remain free to set the penalty payment to be imposed in an amount and in a form that the Court considers appropriate for the purposes of inducing that Member State to bring to an end its failure to comply with the obligations arising under that first judgment of the Court (see, to that effect, judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 70).

For the purposes of determining the amount of a penalty payment, the basic criteria which must be taken into consideration in order to ensure that that payment has coercive effect and that EU law is applied uniformly and effectively are, in principle, the seriousness of the infringement, its duration and the ability to pay of the Member State in question. In applying those criteria, regard must be had, in particular, to the effects on public and private interests of the failure to comply and to how urgent it is for the Member State concerned to be induced to fulfil its obligations (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 71).

In the first place, as regards the seriousness of the infringement, as the Advocate General observed in point 124 of his Opinion, the fundamental nature of the provisions of the Treaty on State aid should be recalled.

The rules which are the subject of Decision 2009/610 and the judgment establishing the failure to fulfil obligations are the expression of one of the essential missions conferred on the European Union by virtue of Article 3(3) TEU, that is the establishment of the internal market and Protocol (No 27) on the internal market and competition, which, in accordance with Article 51 TEU, is an integral part of the Treaties and under which the internal market concludes a system guaranteeing that competition is not distorted.

The importance of the EU rules infringed in a case such as this is reflected, in particular, in the fact that repayment of aid declared unlawful and incompatible with the internal market eliminates the distortion of competition caused by the competitive advantage afforded by the aid and that, by repaying the aid, the recipient forfeits the advantage which it had enjoyed over its competitors on the market (see, to that effect, judgment of 11 December 2012, *Commission* v *Spain*, C-610/10, EU:C:2012:781, paragraph 127).

As to the failure to fulfil obligations established in the present case, it must be recalled, first, that the Hellenic Republic has neither recovered the State aid at issue in full nor complied with the commitments set out in the letter of 1 December 2010. However, in view of the principle set out in paragraph 118 above, according to which the penalty payment must be adopted so that it is both appropriate to the circumstances and proportionate to the infringement established, account must be taken of the fact that ENAE, represented by its special administrator, surrendered

possession of the land denominated ABK 266, including the dry dock the use of which had been granted to it by a concession, and the part of the coast situated in front of it to ETAD and that the land represented an important part of ENAE's civil assets.

Second, it must be noted that the amount of the unrecovered aid is a considerable sum. As the Advocate General observed, in point 125 of his Opinion, the amount to be recovered is continuously increasing by the interest payable and, at the time of the hearing, exceeded EUR 670 million, that is 2.6 times the original amount.

Third, account must be taken of the fact that the shipbuilding market is cross-border. That economic sector is scattered throughout almost all Member States. Consequently, the harmful effects of the unrecovered incompatible aid have an impact on undertakings not only in Greece, but also in the rest of the European Union.

Fourth, as far as concerns the argument of the Hellenic Republic that there are circumstances mitigating the seriousness of the infringement, in particular difficulties such as the obstruction and complete lack of cooperation of ENAE with regard to the implementation of the commitments set out in the letter of 1 December 2010 and the effects of the decision of the ICC Court of Arbitration of 27 June 2017, it must be recalled that, according to settled case-law, legal, political or practical difficulties encountered by the Member State concerned in implementing a decision ordering the recovery of unlawful aid, without taking genuine steps to recover the aid from the undertakings concerned and without proposing any alternative means of implementing such a decision to the Commission which would have enabled those difficulties to be overcome, cannot justify the failure by that Member State to fulfil its obligations under EU law. The same is true with regard to the alleged domestic problems encountered in the implementation of the Commission's decision (judgment of 9 November 2017, *Commission* v *Greece*, C-481/16, not published, EU:C:2017:845, paragraph 29). Therefore, in those circumstances, the difficulties relied on by the Hellenic Republic cannot be regarded as being mitigating circumstances in the present case.

Finally, it must be held that there is a repetition of the conduct infringing the State aid rules by that Member State. The Hellenic Republic has been declared to have failed to fulfil obligations in actions under Article 108(2) TFEU for failure to implement decisions ordering the recovery of aid in the cases which gave rise to the judgments of 1 March 2012, *Commission* v *Greece* (C-354/10, not published, EU:C:2012:109), of 17 October 2013, *Commission* v *Greece* (C-263/12, not published, EU:C:2013:673), of 9 November 2017, *Commission* v *Greece* (C-481/16, not published, EU:C:2017:845), and of 17 January 2018, *Commission* v *Greece* (C-363/16, EU:C:2018:12), and, second, in an action under Article 228(2), third paragraph, EC in the case which gave rise to the judgment of 7 July 2009, *Commission* v *Greece* (C-369/07, EU:C:2009:428).

It must be held that, in the present case, the infringement of the rules of the Treaty on State aid is very serious.

In the second place, as regards the duration of the infringement, it should be recalled that that duration must be assessed by reference to the date on which the Court assesses the facts and not the date on which proceedings are brought before it by the Commission (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 78).

In those circumstances, as the Hellenic Republic has been unable to prove that it has put an end to its failure to fulfil its obligations to comply in full with the judgment establishing the failure to fulfil obligations, it must be held that that infringement has continued for more than 6 years after the date of delivery of that judgment, which is a considerable period of time.

In the third place, as regards the ability to pay, and more particularly the Commission's proposal to multiply the basic amount by a specific coefficient applicable to the Hellenic Republic, the Court has ruled on numerous occasions that that method of calculation is an appropriate means of reflecting the ability to pay of the Member State concerned while keeping the variation between Member States within a reasonable range (judgment of 7 July 2009, *Commission* v *Greece*, C-369/07, EU:C:2009:428, paragraph 123).

As the Advocate General observed, in point 132 of his Opinion, the Court has consistently accepted that, in order to calculate financial penalties, account should be taken of the GDP of the Member State concerned and the number of its votes in the Council (see, to that effect, judgments of 4 July 2000, *Commission* v *Greece*, C-387/97, EU:C:2000:356, paragraph 88; of 25 November 2003, *Commission* v *Spain*, C-278/01, EU:C:2003:635, paragraph 59; of 10 January 2008, *Commission* v *Portugal*, C-70/06, EU:C:2008:3, paragraph 48; and of 4 June 2009, *Commission* v *Greece*, C-109/08, EU:C:2009:346, paragraph 42).

As far as concerns the GDP criterion, it is apparent from the case-law of the Court that it is necessary to take account of recent trends in that Member State's GDP at the time of the Court's examination of the facts (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 81 and the case-law cited).

Therefore, account must be taken of the fact that, first, the GDP of the Hellenic Republic has decreased by more than 25% between 2010 and 2016 and, second, in 2017, the GDP has increased for the first time since 2007. The extent of that economic crisis is therefore duly taken into consideration by the Court for the determination of the amount of the periodic penalty payment.

As regards the criterion of the number of votes a Member State has in the Council, it must be stated that, pursuant to Article 3(1) of Protocol (No 36) on transitional provisions, since 1 November 2014, a new qualified majority procedure, the double majority, took effect.

In accordance with Article 3(2) of that protocol, until 31 March 2017, Member States may still request a vote on the basis of the previous qualified majority rule.

Thus, since 1 April 2017, the system of weighted votes is replaced by the double majority system according to which the qualified majority is reached if it includes 55% of the members of the Council, or 72% if the proposal does not

come from the Commission of the High Representative of the Union for Foreign Affairs and Security Policy and represents at least 65% of the total population of the European Union.

Taking account of the detailed rules for the new system of double majority and the differences that it presents as compared with the old system of weighted voting, the new double majority system is not directly transposable to the mechanism for calculating penalties and therefore cannot effectively substitute the old system of weighted votes for those purposes.

As the Advocate General observed, in point 140 of his Opinion, the new double majority system does not provide satisfactory criteria for determining the capacity of the ability of Member States to pay.

Furthermore, it must be observed that, in its case-law prior to 1 April 2017, the date on which the old system of weighted votes ceased to apply, for the purposes of evaluating the ability of Member States to pay the Court only takes into account the GDP of the Member State concerned (judgments of 22 February 2018, *Commission* v *Greece*, C-328/16, EU:C:2018:98, and of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358).

In that context, for the evaluation of the Hellenic Republic's ability to pay, there is no need to take account of the criterion of the number of votes that that Member State has in the Council or the new system of double majority voting, as the GDP of that Member State is to be the predominant factor.

As far as concerns the periodicity of the financial penalty, account must be taken of the specificity of the operations for the recovery of the aid concerned.

It appears that it will be extremely difficult for the Hellenic Republic to implement Decision 2009/610 within a short period, or the judgment establishing failure to fulfil obligations, given that the operations involved cannot be undertaken quickly and their impact is not noticeable straightaway.

In view of that special factor, it is conceivable that the Hellenic Republic will manage significantly to increase the extent of its implementation of Decision 2009/610 but not to implement it fully in the short term.

It follows that any finding that the infringement has come to an end could be made only after a period allowing an overall assessment to be made of the results obtained.

Therefore, it is appropriate to impose a 6-monthly penalty payment to enable the Commission to assess the progress of the measures implementing that judgment, having regard to the situation prevailing at the end of the period concerned.

The Court therefore orders the Hellenic Republic to pay to the Commission a penalty payment in the amount of EUR 7 294 000 per 6 months of delay in implementing the measures necessary to comply with the judgment establishing the failure to fulfil obligations, from the date of delivery of the present judgment until compliance with that judgment.

**Lump sum payment**

*Arguments of the parties*

As regards the amount of the lump sum, the Commission proposes that the Court should calculate it by multiplying a daily amount by the number of days during which the infringement continues.

For calculation of the lump sum, the Commission proposes that the same coefficient for seriousness and the same fixed 'n' factor as for penalty payments should be applied. However, the basic amount for the calculation of the lump sum should be fixed at EUR 220 per day. In contrast with the calculation of the penalty payment, a coefficient for duration is not applied, given that the duration of the infringement has already been taken into account by multiplying the daily amount by the number of days the infringement persists.

On that basis, the Commission proposes that a lump sum calculated by multiplying EUR 3 828 by the number of days from the delivery of the judgment establishing the failure to fulfil obligations and the date on which the Member State has fulfilled its obligations or, otherwise, the date of the delivery of the present judgment.

The Hellenic Republic has not submitted any specific arguments relating to the lump sum. Since, for its calculation, the Commission uses criteria identical to those used for the calculation of the penalty payment, such as the seriousness and duration of the infringement, the arguments submitted by the Hellenic Republic relating to the penalty payment must be taken into account.

*Findings of the Court*

As a preliminary point it must be recalled that, in exercising the discretion conferred on it in such matters, the Court is empowered to impose a penalty payment and a lump sum payment cumulatively (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 96).

The imposition of a lump sum payment and the fixing of that sum must depend in each individual case on all the relevant factors relating both to the characteristics of the failure to fulfil obligations established and to the conduct of the Member State involved in the procedure initiated under Article 260 TFEU. That provision confers a wide discretion on the Court in deciding whether to impose such a penalty and, if it decides to do so, in determining the amount (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 97).

In the present case, all the legal and factual circumstances culminating in the breach of obligations established indicate that, if the future repetition of similar infringements of European Union law is to be effectively prevented, a dissuasive measure must be adopted, such as a lump sum payment.

In those circumstances, it is for the Court, in the exercise of its discretion, to fix the lump sum in an amount appropriate to the circumstances and proportionate to the infringement (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 99).

Relevant considerations in this respect include factors such as the seriousness of the infringement and the length of time for which the infringement has persisted since the delivery of the judgment establishing it (judgment of 31 May 2018, *Commission* v *Italy*, C-251/17, not published, EU:C:2018:358, paragraph 100).

The circumstances of the present case which must be taken into account are apparent from the considerations set out in paragraphs 120 to 142 above regarding the seriousness and the duration of the infringement and the ability to pay of the Member State in question.

In the light of all the foregoing, the Court considers that proper account of the circumstances of the present case will be taken by setting the amount of the lump sum which the Hellenic Republic will have to pay at EUR 10 000 000.

The Hellenic Republic must therefore be ordered to pay to the Commission a lump sum of EUR 10 000 000.

**Costs**

Under Article 138(1) of the Rules of Procedure, the unsuccessful party is to be ordered to pay the costs if they have been applied for in the successful party's pleadings. Since the Commission applied for costs and the Hellenic Republic has been unsuccessful, the latter must be ordered to pay the costs.

On those grounds, the Court (First Chamber) hereby:

**Declares that, by failing to take, on the date on which the period prescribed in the letter of formal notice issued on 27 November 2014 by the European Commission, all the measures necessary to comply with the judgment of 28 June 2012, *Commission* v *Greece* (C‑485/10, not published, EU:C:2012:395), the Hellenic Republic has failed to fulfil its obligations under Article 260(1) TFEU;**

**Orders the Hellenic Republic to pay the European Commission a periodic penalty payment of EUR 7 294 000 for each six month period from the date of delivery of the present judgment until the date of compliance with the judgment of 28 June 2012, *Commission* v *Greece* (C‑485/10, not published, EU:C:2012:395);**

**Orders the Hellenic Republic to pay to the European Commission a lump sum EUR 10 000 000;**

**Orders the Hellenic Republic to pay the costs.**

[Signatures]

---

\*　Language of the case: Greek.