**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NEXTERA ENERGY GLOBAL HOLDINGS
B.V. *and* NEXTERA ENERGY SPAIN
HOLDINGS B.V.,

                Petitioners,

        v.

KINGDOM OF SPAIN,

                Respondent.

No. 19-cv-01618-TSC

**THE KINGDOM OF SPAIN'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION**

# TABLE OF CONTENTS

**Page**

I.  The Court Should Dismiss Or Stay The Action Rather Than Conducting The Necessary Analysis As To Whether There Was A Valid Arbitration Agreement..............3

    A.  The Court Cannot Exercise Jurisdiction Under The FSIA Without First Evaluating Whether A Valid Arbitration Agreement Exists ..................................4

    B.  The Court Cannot Determine Whether A Valid Arbitration Agreement Exists Without Applying Or Addressing Achmea....................................................5

    C.  Forum Non Conveniens Is Appropriate To Avoid Complex FSIA Analysis..............................................................................................................7

    D.  Forum Non Conveniens Dismissal Is Appropriate Here ..........................................8

    E.  At a Minimum, The Court Should Stay The Action...............................................10

II. NextEra Asks This Court To Drastically Limit The Scope Of The FSIA Without Legal Support For Its Request ...........................................................................12

    A.  Contrary To NextEra's Representation, Tatneft Does Not Hold That The Waiver Exception Applies Even If There Is No Agreement To Arbitrate ...........12

    B.  Contrary to NextEra's Representation, Mobil Cerro Does Not Hold That ICSID Awards Must Be Automatically Confirmed.................................................13

    C.  Contrary To NextEra's Representation, Chevron Does Not Limit A Sovereign's Ability To Challenge The Validity Of An Arbitration Agreement...................................................................................................14

    D.  Contrary To NextEra's Representation, Henry Schein Does Not Hold That Arbitrators Can Determine Whether An Agreement To Arbitrate Exists......................................................................................................15

    E.  Contrary to NextEra's Representation, TMR Does Not Preclude Courts From Applying Forum Non Conveniens ...............................................................18

III. No Agreement To Arbitrate Exists Pursuant to Achmea and the EU Treaties to Which Spain and NextEra (the Netherlands) Must Yield.................................20

    A.  EU Law Applies and The Agreement To Arbitrate Alleged Here Cannot Be Valid If It Conflicts With EU Law ..................................................................21

    B.  Pursuant to Achmea, No Valid Arbitration Agreement Exists.............................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*9REN Holding S.A.R.L. v. Kingdom of Spain*,
  1: 19cv1871 (D.D.C on January 15, 2020) ............................................................11

*In re Air Crash Over Southern Indian Ocean*,
  946 F.3d 607 (D.C. Cir. 2020) ...............................................................................20

*BCB Holdings Ltd. v. Gov't of Belize*,
  110 F. Supp. 3d 233 (D.D.C. 2015), *aff'd* 650 F. App'x 17 (D.C. Cir. 2016)........19

*BCB Holdings Ltd. v. Gov't of Belize*,
  650 F. App'x 17 (D.C. Cir. 2016) ...........................................................................19

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  5 F. Supp. 3d 25 (D.D.C. 2013) *aff'd* 794 F.3d 99 (D.C. Cir. 2015) ......................16

*Buckeye Check Cashing Inc. v. Cardegna*,
  546 U.S. 440 (2006) ................................................................................................16

*Chevron Corp. v. Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) ...................................................................... *passim*

*Creighton Ltd. v. Gov't of State of Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ..................................................................4, 5, 12, 13

*Croesus EMTR Master Fund LP v. Federative Republic of Brazil*,
  212 F. Supp. 2d 30 (D.D.C. 2002) ............................................................................7

*Davis v. Chevy Chase Fin. Ltd.*,
  667 F.2d 160 (D.C. Cir. 1981) ................................................................................17

*Eiser Infrastructure Ltd. v. Kingdom of Spain*,
  1-18-016866 ............................................................................................................11

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2d Cir. 2007) ......................................................................................7

*Espana v. ABSG Consulting, Inc.*,
  334 F. App'x 383 (2d Cir. 2009) ...............................................................................8

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ..................................................................................4

304385757 v1

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019) ................................................................................ *passim*

*Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*,
 1-18-01753-EGS, Doc. 36 (Aug. 28, 2019) ...................................................11

*Knick v. Twp. of Scott Pa.*,
 139 S.Ct. 2162 (2019) ..................................................................................17

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
 No. 18-2254 (JEB), 2019 WL 4564533 (D.D.C. Sept. 18, 2019) ...........11

*MBI Grp. Inc. v. Credit Foncier du Cameroun*,
 558 F. Supp. 2d 21 (D.D.C. 2008), *aff'd* 616 F.3d 568 (D.C. Cir. 2010) ............7, 8

*Micula v. Government of Romania*,
 404 F. Supp. 3d 265 (D.D.C. 2019) ............................................................6

*Mobil Cerro Negro Limited v. Bolivarian Republic of Venezuela*,
 863 F.3d 96 (2d Cir. 2017) .................................................................2, 13, 14

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
 158 F. Supp. 2d 377 (S.D.N.Y. 2001), *aff'd* 311 F.3d 488 (2d Cir. 2002) .......................18, 19

*Novenergia II – Energy & Environment (SCA) v. Kingdom of Spain*,
 SCC Case No. 2015/063 (May 2, 2017) ....................................................22

*Novenergia II -Energy & Environment (SCA) v. Kingdom of Spain*,
 18-cv-01148-TSC, Doc. 42 (Jan. 27, 2020) ...............................................5

*Novenergia II Energy & Environment (SCA) v. Kingdom of Spain*,
 18-cv-00148 (Jan. 27, 2020) ..................................................................11, 12

*Nygard v. DiPaolo*,
 753 F. App'x 716 (11th Cir. 2018) ..........................................................8, 11

*In re Papandreou*,
 139 F.3d 247 (D.C. Cir. 1998) ....................................................................7

*Phoenix Consulting Inc. v. Republic of Angola*,
 216 F.3d 36 (D.C. Cir. 2000) ......................................................................5

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) ......................................................................................8

*RDP Techs., Inc. v. Cambi AS*,
 800 F. Supp. 2d 127 (D.D.C. 2011) ..........................................................16

iii

*Shi v. New Mighty U.S. Trust*,
    918 F.3d 944 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 435 (2019) ..................................9, 10

*Simon v. Republic of Hungary*,
    911 F.3d 1172 (D.C. Cir. 2018) ..................................................................................19

*Slovak Republic v. Achmea B.V.*,
    Case C-284/16 (E.C.J. 2018) ....................................................................... *passim*

*Stati v. Republic of Kazakhstan*,
    199 F. Supp. 3d 179 (D.D.C. 2016) ..................................................................5

*Stromberg v. Marriot Intern., Inc.*,
    474 F. Supp. 2d 57 (D.D.C. 2007) *aff'd* 256 F. App'x 359 (D.C. Cir. 2007)..........................8

*Tatneft v. Ukraine*,
    301 F. Supp. 3d 175 (D.D.C. 2018), *aff'd* 771 F. App'x 9 (D.C. Cir. 2019),
    *cert. denied*, No. 19-606, 2020 WL 129630 (Jan. 13, 2020) ..................................12

*Tatneft* v. *Ukraine*,
    771 F. App'x 9 (D.C. Cir 2019), *cert. denied*, No. 19-606, 2020 WL 129630
    (Jan. 13, 2020)..................................................................................2, 12, 13

*Tidewater Investment SRL v. Bolivarian Republic of Venezuela*,
    2018 WL 6605633 (D.D.C. Dec. 17, 2018)..........................................................14

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005) ..................................................................3, 18, 19, 20

*Turan Petroleum, Inc. v. Ministry of Oil and Gas of Kazakhstan*,
    406 F. Supp. 3d 1 (D.D.C. 2019) ..................................................................4, 5

*William Charles Constr. Co. LLC v. Teamsters Local Union 627*,
    827 F.3d 672 (7th Cir. 2016) ..................................................................17

*Wong v. PartyGaming Ltd.*,
    589 F.3d 821 (6th Cir. 2009) ..................................................................11

## Statutes

28 U.S.C. § 1604..................................................................................3

28 U.S.C. § 1650(a) ..................................................................................2, 9

NextEra seeks to confirm an ICSID Award purportedly rendered pursuant to an arbitration agreement contained in the Energy Charter Treaty (ECT).  The validity of that arbitration provision hinges on the interaction, and interpretation, of complicated EU, Spanish, and international law, and in particular a determination as to how a recent CJEU decision, *Achmea*, impacts the present dispute.  *See Slovak Republic v. Achmea B.V.*, Case C-284/16 (E.C.J. 2018).  Specifically, *Achmea* raises complex questions as to the validity of arbitration agreements in multilateral investment treaties (such as the ECT) between EU Members States, on the one hand, and investors from other EU Member states, on the other.  This is the so-called, "intra-EU" dilemma.

NextEra, however, argues that the court need not grapple with this dilemma because: 1) the FSIA's waiver exception applies regardless of whether there was an agreement to arbitrate; and 2) the FSIA's arbitration exception applies because an ICSID Tribunal determined that a valid arbitration agreement exists, which precludes this Court from conducting any analysis of the arbitration agreement whatsoever.  However, in the event that the Court determines that it cannot rule on its own jurisdiction without first resolving whether an arbitration agreement exists, NextEra argues that the Court **must** dive into international law rather than dismissing the case *forum non conveniens* or, at a minimum, staying the action.  NextEra is wrong in every respect.

As summarized in Section I below, the FSIA requires courts to determine whether a valid arbitration agreement exists *before* courts can have jurisdiction under either the waiver exception or the arbitration exception.  Accordingly, this court cannot rule on its own jurisdiction without carefully analyzing *Achmea* and making a ruling of first impression worldwide regarding that case's impact on multilateral, rather than bilateral, investment treaties.  Under those circumstances, the Supreme Court and D.C. Circuit have established that *forum non conveniens* and the FSIA co-exist such that courts can dismiss actions without ruling on jurisdiction.  In any event, and at a

1

minimum, each and every court has granted Spain's request for stays pending clarity on *Achmea*, and NextEra offers no meaningful argument as to why this Court should do otherwise. The law is clear: the Court can and should dismiss or stay this action pending clarity from the ICSID annulment committee and the EU as to whether a valid agreement to arbitrate exists.

As detailed in Section II below, NextEra cites to a variety cases to describe, and request this Court to implement, a regime drastically different from the one existing under current law. Crucially, none of the cases support the generalization for which NextEra offers them.

- NextEra cites to *Tatneft* v. *Ukraine*, 771 F. App'x 9 (D.C. Cir 2019), *cert. denied*, No. 19-606, 2020 WL 129630 (Jan. 13, 2020) for the proposition that Spain waived its sovereign immunity as to NextEra's claim, regardless of whether an arbitration agreement ever existed between Spain and NextEra. This is false. Both the district and circuit court in *Tatneft* evaluated the waiver exception after finding that a valid arbitration agreement existed between the parties, rendering the case inapposite here.

- NextEra cites to *Mobil Cerro Negro Limited v. Bolivarian Republic of Venezuela*, 863 F.3d 96 (2d Cir. 2017) for the proposition that "Member states' courts . . . are not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award." *Mobil Cerro* held the exact opposite, explicitly stating that ICSID awards are not entitled to automatic enforcement despite Section 1650(a)'s reference to full faith and credit.

- NextEra cites to *Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015) for the proposition that district courts cannot evaluate whether an arbitration agreement exists if doing so would amount to giving the sovereign "two bites at the apple." Once again, NextEra overlooks or omits the actual holding. The D.C. Circuit noted that the district court failed to evaluate whether an agreement to arbitrate existed as part of its jurisdictional analysis and stated "this was error."

- NextEra cites to *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), for the proposition that, under the Federal Arbitration Act, parties can delegate questions as to whether a valid arbitration agreement existed to the arbitrator. This cannot be reconciled with the Court's caveat that "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* at 530. The Court could not have been clearer

2

that courts are precluded from deciding question of arbitrability if, and only if, "**a valid agreement exists**." *Id.* (emphasis added).[1]

- Finally, NextEra cites to *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005) for the proposition that *forum non conveniens* is not available to courts that have not yet ruled on FSIA immunity if the petitioner alleges the right to attach the sovereign's assets.  This is remarkable, as the D.C. Circuit unequivocally stated that it "[did] not consider TMR's alternative contention that . . . the doctrine [of *forum non conveniens*] has no place in an action to enforce an arbitration award."  *Id.* at 304.

Accordingly, because the cases NextEra cites do not change the law as set forth in Section I, there is no basis for the Court to find jurisdiction without analyzing whether an agreement to arbitrate exists and no reason to do so rather than staying the action or dismissing it *forum non conveniens*.

Finally, in the Court conducts the complex jurisdictional inquiry, Section III demonstrates that no agreement to arbitrate existed pursuant to *Achmea*. EU law applies to this fundamental question of whether *two EU Member States* agreed to arbitrate in the ECT, and under EU law the arbitration agreement in the ECT is incompatible with EU law and therefore invalid as to intra-EU disputes.

I.    **The Court Should Dismiss Or Stay The Action Rather Than Conducting The Necessary Analysis As To Whether There Was A Valid Arbitration Agreement**

"As a general matter, the FSIA grants foreign states immunity from the jurisdiction of the courts of the United States."  *Chevron*, 795 F.3d at 203 (citing 28 U.S.C. § 1604).  "In enacting the FSIA, however, Congress enumerated several exceptions to this jurisdictional restriction."  *Id.* "These exceptions provide the sole basis for obtaining jurisdiction over a foreign state in federal court."  *Id.* (quotations omitted).  NextEra alleges that two exceptions to the FSIA apply here: the

---

[1] The Court also held that, even where a valid arbitration agreement exists, other questions of arbitrability are only reserved for the arbitrator if that valid agreement "clear[ly] and unmistakab[ly]" delegate such questions to the arbitrator.  *Id.*

304385757 v1

waiver exception and the arbitration exception.  In determining whether one of those exceptions apply, Spain requests that this Court follow the guidance of D.C. law, which provides that: 1) the Court cannot exercise jurisdiction here under either exception without first determining that a valid arbitration agreement exists; 2) the Court cannot determine whether a valid arbitration agreement exists here without applying *Achmea* to this dispute; 3) the Court can dismiss the action for *forum non conveniens* rather than ruling on its jurisdiction; and 4) at a minimum, the Court can and should join the other courts in this district that have stayed enforcement actions pending clarity from the ICSID annulment committee and the EU on *Achmea*'s impact on multilateral investment treaties.

A.    The Court Cannot Exercise Jurisdiction Under The FSIA Without First Evaluating Whether A Valid Arbitration Agreement Exists

NextEra asserts that the Court can exercise jurisdiction under both the waiver exception and the arbitration exception without ever evaluating whether a valid arbitration agreement exists. This is wrong.  The Court cannot do so under either exception.

As to the waiver exception, the D.C. Circuit has "followed the 'virtually unanimous' precedents construing the implied waiver provision narrowly."   *Creighton Ltd. v. Gov't of State of Qatar,* 181 F.3d 118, 124 (D.C. Cir. 1999).  Accordingly, "courts have found that a foreign sovereign has implicitly waived the defense of immunity if the sovereign has: (1) filed a responsive pleading without raising the defense of sovereign immunity; 2) agreed to arbitrate; or 3) agreed to adopt a particular choice of law." *Turan Petroleum, Inc. v. Ministry of Oil and Gas of Kazakhstan*, 406 F. Supp. 3d 1, 11 (D.D.C. 2019) (citations omitted); *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990).

In *Creighton*, the D.C. Circuit limited the reach of the "agreement to arbitrate" waiver by noting that agreeing to arbitrate in one foreign country did not constitute a waiver of sovereign immunity in all countries.  181 F.3d at 122.  Only if a sovereign ratified a convention (such as the

ICSID Convention) would its agreement to arbitrate outside of the United States constitute a waiver of sovereign immunity in the United States. *Id.* at 123. Crucially, however, "the mere fact that [a sovereign] is a signatory to the [ICSID Convention] does not permit [suits that do not arise out of a valid agreement to arbitrate]." *Turan*, 406 F. Supp. 3d at 12. No court has held to the contrary. Simply put, the waiver exception does not apply without a valid agreement to arbitrate.

So too with the arbitration exception. For that exception, courts follow a two-step burden shifting framework. First, the petitioner must "make a prima facie showing that there was an arbitration agreement by producing the treaty and the notice of arbitration." *Stati v. Republic of Kazakhstan,* 199 F. Supp. 3d 179, 188 (D.D.C. 2016) (citation omitted). "Once petitioner makes this showing, the burden shifts to the respondent to demonstrate by a preponderance of the evidence that the treaty and the notice to arbitrate did not constitute a valid arbitration agreement between the parties." *Id.* (citation omitted). "By moving to dismiss, the defendant may challenge either the legal sufficiency or the factual underpinning of an exception . . . ." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000).

The jurisdictional task before this Court under both the waiver and arbitration exception analysis, therefore, is to determine whether the ECT and NextEra's notice to arbitrate constitutes a valid arbitration agreement.

B.    The Court Cannot Determine Whether A Valid Arbitration Agreement Exists
      Without Applying Or Addressing *Achmea*

As this Court recently explained, a court's jurisdiction over an award against a foreign sovereign "turns on one of the ultimate issues--whether an agreement to arbitrate exists." *Novenergia II -Energy & Environment (SCA) v. Kingdom of Spain*, 18-cv-01148-TSC, Doc. 42 (Jan. 27, 2020) (staying action rather than ruling on whether an agreement existed under *Achmea*).

Judge Mehta's decision in *Micula v. Government of Romania* is on all fours with this case. 404 F. Supp. 3d 265 (D.D.C. 2019) (appeal docketed).  There, the petitioner sought to enforce an ICSID award that the sovereign asserted was invalid following *Achmea*.  Judge Mehta acknowledged many of the points raised by NextEra in this action, *e.g.*, that a "federal court's role in enforcing an ICSID award is limited" and that the court is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award."  *Id.* at 275 (citation omitted).   Yet this language did not end the inquiry, as much as NextEra wishes it would.  Instead, Judge Mehta recognized that the petitioners satisfied their **initial burden** by pointing to a contested arbitration award issued under the ICSID regime.  The court then proceeded to the next phase of the required analysis.

> Romania says this case is different than those finding the arbitration exception applicable [*i.e.*, the very cases that NextEra cites as dispositive].  It contends that the arbitration exception does not confer jurisdiction because the arbitration clause in the Sweden-Romania BIT has been declared invalid. This argument rests on the European Court of Justice's decision in *Achmea* . . . . Applying that principle here, Romania contends that the arbitration clause in the Sweden-Romania BIT is invalid.

*Id.* at 277 (citations omitted).

Despite the fact that a petitioner presented an ICSID award, Judge Mehta ruled on the FSIA arbitration exception only after "[h]aving carefully considered the *Achmea* decision."  *Id.* at 279.[2] Likewise, this Court cannot rule as to whether a valid arbitration agreement existed without carefully considering *Achmea*.

---

[2] Judge Mehta did not consider whether to dismiss the action *forum non conveniens* rather than diving into foreign law, as no such request was advanced by the sovereign.  Moreover, the analysis before Judge Mehta was significantly more straightforward than that at issue here, because Romania was not a member of the EU at the time the arbitration agreement and events giving rise to the dispute took place.  Accordingly, *Achmea* did not dictate that the agreement was invalid, and the court abstained from ruling as to whether a future arbitration agreement would be valid between the parties now that both were part of the EU.

C.    _Forum Non Conveniens_ Is Appropriate To Avoid Complex FSIA Analysis

As the D.C. Circuit explained decades ago, "[i]mmunity should reduce the expenses, in time and inconvenience, imposed on foreign sovereigns by litigation in U.S. courts." _In re Papandreou,_ 139 F.3d 247 (D.C. Cir. 1998) (superseded by statute on other grounds). Accordingly, "[i]f one (or more) of the other jurisdictional defenses hold out the promise of being cheaply decisive, and the defendant wants it decided first, it may well be best to grapple with it (or them) first." _Id._ at 254. In fact, "[i]t would be bizarre if an assertion of immunity worked to increase litigation costs . . . to the neglect of swifter routes to dismissal."[3] _Id._ Even though applying _forum non conveniens_ would the plaintiff there of the right to attach U.S. assets, "it would be proper to dismiss on [forum non conveniens] grounds (if meritorious) without reaching the FSIA issue." _Id._ at 256.

Likewise, in _Croesus EMTR Master Fund LP v. Federative Republic of Brazil_, the court held that there were "compelling grounds for dismissal under the doctrine of _forum non conveniens_." 212 F. Supp. 2d 30 (D.D.C. 2002). There, as here, the plaintiffs "argue[d] that a court may not dismiss a case under the FSIA on the basis of forum non conveniens." _Id._ The court disagreed, explaining that D.C. law "clearly permit[s] courts to consider forum non conveniens as a basis for dismissal where the FSIA applies." _Id._; _see also MBI Grp. Inc. v. Credit Foncier du Cameroun_, 558 F. Supp. 2d 21 (D.D.C. 2008) ("[A] court may dismiss a case on the basis of _forum non conveniens_ in lieu of addressing questions of subject matter and personal jurisdiction . . . ."), _aff'd_ 616 F.3d 568 (D.C. Cir. 2010).

---

[3] The plaintiff in _Papandreou_ asserted that the commercial activity exception applied which, like the arbitration and waiver exceptions, would entitle the plaintiff to attach the sovereign's assets located in the United States. _See EM Ltd. v. Republic of Argentina_, 473 F.3d 463 (2d Cir. 2007).

D.     _Forum Non Conveniens_ Dismissal Is Appropriate Here

At bottom, NextEra, a foreign EU-based plaintiff, asks this Court to decide whether a valid

arbitration agreement exists between it and Spain in a dispute that has no connection to this district,

which the Court cannot do without conducting a complex analysis of a variety of interconnecting

legal regimes and law, including, fundamentally, the EU Treaties and the ruling of the highest

court in the EU, the CJEU.  This merits dismissal under _forum non conveniens_.  _See, e.g., Piper_

_Aircraft Co. v. Reyno_, 454 U.S. 235, 251 (1981) ("The doctrine of _forum non conveniens_ . . . is

designed in part to help courts avoid conducting complex exercises in comparative law."); _MBI_

_Grp._, 558 F. Supp. 2d at 35 ("[S]ignificantly, this Court's lack of familiarity with Cameroonian

law, and other issues involved with the application of foreign law, weighs heavily in favor of

dismissal."); _Stromberg v. Marriot Intern., Inc._, 474 F. Supp. 2d 57, 62 (D.D.C. 2007) (dismissing

case pursuant to _forum non conveniens_ because the "court [was] aware that its counterparts in

Mexico [were] far better suited to apply their own laws than it [was], and the court [was] sensitive

to the desirability of avoiding the unnecessary review of foreign disputes") _aff'd_ 256 F. App'x 359

(D.C. Cir. 2007).  Dismissal is particularly appropriate where, as here, the plaintiff seeks a ruling

that would conflict with EU law and the right of the EU courts to review and determine the scope

of those laws.  _See, e.g., Espana v. ABSG Consulting, Inc._, 334 F. App'x 383 (2d Cir. 2009);

_Nygard v. DiPaolo_, 753 F. App'x 716, 728 (11th Cir. 2018). This is especially true considering

that (i) the parties to this dispute are EU Members States / citizens, and (ii) within the EU legal

system the "27 Member States that have ceded to the EU aspects of sovereignty to establish one

integrated Europe characterized by common laws, values, and a single internal market," governed

by the EU Treaties.  _See_ Second Hindelang Decl., ¶ 13; _see also id_. at ¶ 12.

NextEra nevertheless alleges that "any _forum non conveniens_ motion would fail," because:

1) no adequate alternative forum exists; 2)  NextEra is entitled to a strong presumption in favor of

its choice of forum; and 3) this is not a case involving foreign law because it is governed entirely by 28 USC § 1650(a).  None of these points withstands scrutiny, as each is simply a regurgitation of NextEra's incorrect thesis that this Court is required to automatically enforce ICSID awards.

First, NextEra wrongly states there are no alternative jurisdictions in which Spain would be amenable to process.  To the contrary, and as NextEra touts when convenient, the ICSID Convention authorizes enforcement (of valid awards) in any jurisdiction that has ratified the ICSID Convention.  As both Spain and the Netherlands have ratified the ICSID Convention, NextEra can seek enforcement of the awrd in an EU state better suited to resolve questions of EU law.  Via a footnote, NextEra advances its true argument on an alternative jurisdiction, stating that "the only operative issue in award enforcement is whether the court of the country where enforcement is sought should recognize and enforce the award in that country."  Response, fn. 33.  If this were true, however, then the only operative issue in **any** award enforcement, regardless of whether FSIA jurisdiction is implicated, would be whether the country where enforcement is sought should recognize and enforce the award in that country.  Taking that logic to its conclusion, NextEra requests a ruling that *forum non conveniens* is not available in the enforcement of any international arbitral award, regardless of whether a sovereign is involved.  Unsurprisingly, NextEra cites to no case whatsoever in support of this request for new law.

Second, NextEra states that its choice of forum as a foreign plaintiff is entitled to greater deference "to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability . . . to obtain jurisdiction over the defendant."  Response, pp. 35-36 (citing *Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 949-50 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 435 (2019)).  NextEra's partial citation to *Shi* gives the game away for two reasons.  First, the full quote that NextEra clips continues on to contrast legitimate reasons, like convenience and the

ability to obtain jurisdiction, against illegitimate reasons like those "motivated by tactical advantage."[4] *Shi*, 918 F.3d at 950.  Here, NextEra seeks to gain a tactical advantage by asking this Court to either ignore, or rule contrary to, EU law.[5]  Putting aside the fact that the defendants were sued in their home district, which is a factor weighing heavily against dismissal that is not present here, the *Shi* plaintiff represented to the court that jurisdiction would not exist in any other district. To the extent that NextEra advances a similar argument to this court, it admits that EU courts would find that no arbitration agreement exists.  It is a strange paradox to argue that EU courts would interpret EU law in such a way that no agreement to arbitrate exists, only to further argue that this court should interpret EU law such that the opposite result is true.

As to NextEra's third argument, NextEra claims that "this is not . . . a case involving foreign law."  Response, p. 35.  This is utterly irreconcilable with NextEra's Response, and the accompanying detailed declaration from an international law expert, urging this Court to find that the arbitration agreement was valid under EU law.

E.    At a Minimum, The Court Should Stay The Action

In objecting to Spain's *forum non conveniens* request, NextEra draws attention to the other enforcement actions pending against Spain in this district, but neglects to mention that, to review an enforcement request, each judge in this District has stayed the action pending further clarity

---

[4] "Even if the plaintiff resides outside of the forum, these courts have understood the Supreme Court's reasoning to instruct that they give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability . . . to obtain jurisdiction over the defendant, and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage."  *Id.* at 949-50 (citations omitted).

[5] Indeed, various cases are pending in the EU where clarity on these issues related to this petition are likely to emerge, and if NextEra wanted to receive further guidance from the highest court in its home, the EU, it could do so by simply bringing a proceeding to enforce the award in the EU and asking the Member State court to refer a to the CJEU for such guidance.  *See* Second Hindelang Decl., ¶ 10.

from the EU. *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, No. 18-2254 (JEB), 2019 WL 4564533 (D.D.C. Sept. 18, 2019); *Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*, 1-18-01753-EGS, Doc. 36 (Aug. 28, 2019); *Eiser Infrastructure Ltd. v. Kingdom of Spain,* 1-18-016866 (ordering the parties to meet and confer as to whether a stay would be appropriate pending conclusion of the ICSID proceedings).[6]

On January 27, 2020, this Court furthered that trend in *Novenergia II Energy & Environment (SCA) v. Kingdom of Spain,* 18-cv-00148 (Jan. 27, 2020). Among other things, the Court held that: 1) "stays are a threshold, non-merits issue that courts may consider before resolving jurisdictional issues"; 2) "adjournments pending the completion of set-aside proceedings are an integral part of such proceedings"; 3) a "hasty resolution resulting in inconsistent rulings is not in the interest of judicial economy"; 4) "the risk of premature enforcement could result in Spain trying to recover assets seized during this action if it were to prevail in the [set-aside] proceedings";

---

[6] Specifically, NextEra argues that Spain's failure to assert *forum non conveniens* in prior or subsequent actions precludes Spain from asserting it here. *See, e.g.,* Response, p. 35 (arguing that Spain's argument that D.C. is a more convenient forum than New York in one action means that Spain cannot argue that a court in the EU is a more convenient forum than D.C. in this action); *9REN Holding S.A.R.L. v. Kingdom of Spain*, 1: 19cv1871 (D.D.C on January 15, 2020). NextEra does not cite to any legal authority for this proposition, which would conflict with the established principle that courts can dismiss *forum non conveniens sua sponte. See, e.g., Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009). Moreover, although Spain did not make specific *forum non conveniens* arguments in one of its most recent filings on these issues (which was prepared by different counsel), Spain did, consistent with its approach in some other cases, ask for a conclusive threshold determination of its sovereign immunity and reserve the right to assert "non-FSIA grounds for defending against enforcement of the Award, including without limitation under principles of international comity abstention." Spain has therefore fully reserved the right to argue that the case should be dismissed on international comity grounds, which is part of the *forum non conveniens* analysis. *See, e.g., Nygard*, 753 F. App'x at 728. Moreover, this reservation of rights in *9Ren* and other cases allows Spain to assert the defense of *forum non conveniens* and pursue all other available options on appeal. *See, e.g., LLC Komstroy v. Republic of Moldova*, (acknowledging sovereign's proper preservation of *forum non conveniens* for appellate review).

5) "comity considerations favor a stay"; and 6) "the more prudent course of action is to allow courts within the EU to first decide the issues." *Id.* Each of these factors are equally true here. If the case is not dismissed *forum non conveniens*, it should be stayed until resolution of the ICSID annulment proceedings and/or further clarity is provided on EU law.

## II.    NextEra Asks This Court To Drastically Limit The Scope Of The FSIA Without Legal Support For Its Request

Rather than seeking enforcement of its award under the well-established legal regime existing in this Circuit and described in Section I above, NextEra makes several sweeping generalizations and asks this Court to issue rulings of first impression that would dramatically reduce the immunity available to sovereigns under the FSIA. Because the cases cited by NextEra do not support the proposition for which they are offered, NextEra's request must be denied.

### A.    Contrary To NextEra's Representation, *Tatneft* Does Not Hold That The Waiver Exception Applies Even If There Is No Agreement To Arbitrate

In asking this court to make new law and find that ratification, alone, constitutes a waiver, *NextEra* places great emphasis on a case that it concedes is non-precedential, *Tatneft v. Ukraine*, 301 F. Supp. 3d 175 (D.D.C. 2018), *aff'd* 771 F. App'x 9 (D.C. Cir. 2019), *cert. denied*, No. 19-606, 2020 WL 129630 (Jan. 13, 2020) NextEra summarizes *Tatneft* by stating:

> Judge Kollar-Kotelly found the waiver exception satisfied on the basis of Ukraine having signed the New York Convention *without* allowing Ukraine to relitigate the issue of arbitrability, which would improperly have allowed Ukraine to get two bites at the apple of the merits of its dispute.

Response, pp. 16-17. This borders on disingenuous. Judge Kollar-Kotelly only ruled on the waiver exception after he explicitly held that "the Court [was] satisfied that the FSIA's arbitration exception applies." *Tatneft*, 301 F. Supp. 3d at 190. As such, Judge Kollary-Kotelly, following *Creighton*, merely recognized that the FSIA's waiver exception applies where there is a valid agreement to arbitrate and a sovereign has ratified the ICSID Convention.

The D.C. Circuit, in turn, framed the dispute as follows:

> Ukraine next argues that **an arbitration agreement** cannot constitute an implied waiver of foreign sovereign immunity.  Otherwise, Ukraine reasons, the general waiver exception, which applies whenever a foreign state has waived its immunity either explicitly or by implication, would swallow up the more specific arbitration exception, which applies only to actions to enforce certain arbitration agreements, and only under certain conditions.  Ukraine is mistaken.

*Tatneft*, 771 F. App'x at 9-10 (emphasis added).  As the D.C. Circuit further explained, unlike Spain, Ukraine raised "an argument not that *Creighton* is distinguishable, but that it was wrongly decided."  *Id.* at 10.  As such, *Taftnet* reaffirmed that a sovereign that ratifies an international convention authorizing enforcement of awards in the United States waives immunity as to claims arising out of valid agreements to arbitrate.[7]  But *Taftnet* goes no further.  To invoke the waiver exception, under *Creighton*, *Tatneft*, and all other D.C. law, Spain's ratification of the ICSID Convention is not sufficient.  There must be a valid agreement to arbitrate, which there is not here.[8]

B.    Contrary to NextEra's Representation, *Mobil Cerro* Does Not Hold That ICSID Awards Must Be Automatically Confirmed

Rather than adhering to binding D.C. precedent, NextEra relies on *Mobil Cerro* for the proposition that Member states' courts  . . . are not permitted to examine . . . the ICSID tribunal's

---

[7] NextEra entirely glosses over the reason why *Tatneft* needed to invoke the waiver exception rather than relying on the arbitration exception.  Ukraine argued that the arbitration exception did not apply because Tatneft was not a private investor as required by Section 1605(a)(6).  Resolving that objection, which was an issue of first impression in the D.C. Circuit, would have required to analyze whether or not Tatneft qualified as a **private party** as required for the arbitration exception to apply. Ukraine also argued that the arbitration exception did not apply because the claim and damages at issue were outside of the scope of the agreement to arbitrate, and those questions were delegated to the arbitrator.  As discussed below, the "arbitrability" question in Ukraine, involving whether certain disputes were within the scope of a valid agreement to arbitrate, is different in kind than the dispute at issue here, i.e. whether an agreement to arbitrate exists.

[8] NextEra also indicated via email that it believes that *Tatneft* precludes Spain's *forum non conveniens* argument, but this is meritless. The D.C. Circuit simply declined to exercise pendant jurisdiction over the *forum non conveniens* issue after ruling that FSIA jurisdiction existed.

jurisdiction to render the award." Response, p. 20. The *Mobil Cerro* court went on to consider, and explicitly reject, the petitioners' argument that "ICSID award recognition [should] be automatic and not subject to contest." *Mobil Cerro*, 863 F.3d at 116 (citations omitted). Instead, the court found that the FSIA's legislative history "highlights that full faith and credit, as used in Section 1650a, meant **something less than automatic recognition and conversion of the award into a federal judgment.**" *Id.* at 123 (emphasis added).[9] *Mobil Cerro* is fully aligned with D.C. law: a court must determine jurisdiction under FSIA before confirming an award, and the mere existence of an ICSID award does not authorize automatic recognition or conversion.

C.    Contrary To NextEra's Representation, *Chevron* Does Not Limit A Sovereign's Ability To Challenge The Validity Of An Arbitration Agreement

In arguing that courts cannot evaluate the validity of the underlying arbitration agreement, NextEra ignores the clear holding of the very case it cites in support: *Chevron Corp. v. Ecuador.* NextEra claims that *Chevron* "illustrate[s] that a party cannot use the arbitration exception to relitigate the substance of an award," and further alleges that questions as to the existence of an agreement qualify as "the substance of the award." Accordingly, NextEra argues, once an ICSID tribunal rules on its own jurisdiction, a U.S. court is precluded from analyzing the validity of the arbitration agreement. Once again, NextEra misses the mark, as *Chevron* holds the exact opposite.

---

[9] NextEra's argument that its award against Spain is entitled to such full faith and credit as to amount to automatic recognition because Spain objected to the Tribunal's jurisdiction fails for the reasons set forth in Section I above. NextEra also selectively cites to a footnote in *Tidewater Investment SRL v. Bolivarian Republic of Venezuela* and extrapolates it into a legal rule that does not exist. No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018). NextEra's citation to this footnote as dispositive in this case is misleading for two reasons beyond the fact that it is dicta. First, Venezuela defaulted during the enforcement proceedings and offered no defense whatsoever, including a defense as to jurisdiction. More importantly, the questions of "ICSID's jurisdiction" in *Tidewater* dealt with whether certain claims were within the scope of an admittedly valid agreement to arbitrate, not whether a valid agreement to arbitrate existed in the first place.

Specifically, the D.C. Circuit there held that the "the jurisdictional task before the District Court was to determine whether Ecuador had sufficiently rebutted the presumption that the [investment treaty] and Chevron's notice of arbitration constituted an agreement to arbitrate." *Chevron*, 795 F.3d at 206.  Crucially, the court held that the "District Court eschewed making this determination [i.e. whether there was an agreement to arbitrate] as part of its jurisdictional analysis. **This was error**." *Id.* at n. 3 (emphasis added).  The D.C. Circuit reiterated that the FSIA "requires the District Court to satisfy itself that the party challenging immunity has presented prima facie evidence of an [arbitration] agreement between the parties and that the sovereign asserting immunity has failed to sufficiently rebut that evidence." *Id.*

D.    Contrary To NextEra's Representation, *Henry Schein* Does Not Hold That Arbitrators Can Determine Whether An Agreement To Arbitrate Exists

As an alternative to its (incorrect) theory that ICSID awards are entitled to automatic enforcement, NextEra argues that this Court is prohibited from challenging the agreement to arbitrate because Spain raised its jurisdictional objection to the ICSID Tribunal.  To get there, NextEra represents to this Court that *Henry Schein* stands for the proposition that "[p]arties may agree to have an arbitrator decide . . . whether the parties have agreed to arbitrate . . ."  Response, pp. 21-22 (ellipses in original).  Yet NextEra overlooks, or omits, the key context provided in *Henry Schein*.  While NextEra uses the word "arbitrability" to encompass disputes as to whether there was even an agreement to arbitrate, the *Henry Schein* Court used a different definition.

> [P]arties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. When a dispute arises, the parties may sometimes disagree not only about the merits of the dispute but also about the threshold arbitrability question—**that is, whether their arbitration agreement applies to a particular dispute.**

*Henry Schein*, 139 S. Ct. at 527 (emphasis added).  Using that definition of arbitrability, the Court ruled that courts could not ignore delegation to the arbitrators even if "the argument that the arbitration agreement applies to the particular dispute is wholly groundless".  *Id.* at 527-28.

However, NextEra asks this Court to expand *Henry Schein* to hold that courts must refer disputes to arbitrators where there is a threshold question as to whether a valid arbitration exists. This is expressly and unequivocally disclaimed by the Supreme Court itself in *Henry Schein*:

> To be sure, **before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists**.  But **if a valid agreement exists**, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

*Id.* at 530 (emphasis added) (citation omitted).  "To be sure," then, *Henry Schein* does not overrule the well-established severability doctrine, which provides that challenges to the validity of an agreement to arbitrate are reserved for courts.  *See, e.g., Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440 (2006); *Belize Soc. Dev. Ltd. v. Gov't of Belize,* 5 F. Supp. 3d 25 (D.D.C. 2013) (reiterating that the agreement to arbitrate must be valid for an award to be confirmed and affirming the award only because the respondent "offer[ed] no basis under Belizean law, or any other law, for this Court to find *that particular clause* invalid") (emphasis in original) *aff'd* 794 F.3d 99 (D.C. Cir. 2015); *RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127 (D.D.C. 2011) ("of course, [the arbitration] clause is without force and effect if the parties never agreed to it in the first place").[10]

Putting aside the express disclaimer in *Henry Schein*, and the guidance from D.C. courts, NextEra's proposed regime—whereby a sovereign waives its right to argue in court that no

---

[10] NextEra similarly blurs the issues of "arbitrability" in *Chevron* with those at issue here, and attempts to use *Chevron* to prevent NextEra from getting "two bites at the apple" as to whether or not a valid arbitration agreement exists.  However, the "arbitrability" issue was whether certain disputes fell within the scope of the admittedly valid agreement to arbitrate.  *Chevron* therefore has no bearing on whether or not Spain waived its right to contest the validity of the arbitration agreement by preserving those objection during the arbitration.

arbitration agreement exists simply by preserving that argument before arbitral the tribunal—would contradict established law and violate the express language of ICSID Convention.

It is well settled that a party cannot participate in an arbitration without raising jurisdictional objections, and that "[t]o avoid waiver, a party must clearly preserve the question of arbitrability for judicial determination." *William Charles Constr. Co. LLC v. Teamsters Local Union 627*, 827 F.3d 672, 681 (7th Cir. 2016) (citation omitted);*Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160, 168 (D.C. Cir. 1981). Under established arbitration law, then, a foreign sovereign waives its right to challenge arbitrability if it participates in the arbitration without raising a jurisdictional objection. Under NextEra's proposed understanding of the FSIA, a foreign sovereign also waives its right to judicially challenge arbitrability if it does raise the objection. That makes no sense. NextEra's attempt to create a Catch-22 of this sort should be rejected. *Cf. Knick v. Twp. of Scott Pa.*, 139 S.Ct. 2162, 2167 (2019) (overruling prior case that created a scenario where a party "finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court. The federal claim dies aborning").[11]

---

[11] Even if questions as to the validity of an arbitration agreement **could** be delegated to an arbitrator, NextEra fails to show that the ECT delegated validity questions by clear and unmistakable evidence. *See, e.g., Henry Schein*, 139 S.Ct. at 531. At most, NextEra points to Article 26(4)(a) of the ECT, which provides that the parties "consent" to ICSID jurisdiction. This ignores entirely the fact that the Supreme Court expressly declined the invitation to grant such sweeping significance to the word "consent." *BG Group*, 572 U.S. at 38. To the extent that NextEra relies on Spain's ratification of ICSID as clear and unmistakable evidence of delegation, it misses the mark even wider. The ICSID Preamble unambiguously declares "shall by the mere fact of its ratification, acceptance or approval of this Convention and without its consent be deemed to be under any obligation to submit any particular dispute to conciliation or arbitration."

17

E.    Contrary to NextEra's Representation, *TMR* Does Not Preclude Courts From Applying *Forum Non Conveniens*

While NextEra portrays the issue as fully settled law, the *forum non conveniens* holding that NextEra requests presents an issue of first impression in this Circuit.  NextEra purports that *TMR* and its progeny stand for the proposition that "the doctrine of *forum non conveniens* is inapplicable to actions in the United States to enforce arbitral awards against foreign states" solely because "[n]o alternative forum is adequate: only a U.S. court may attach U.S. assets."  This is simply incorrect.  Indeed, the D.C. Circuit has, on at least two separate occasions **since *TMR,*** reiterated that *forum non conveniens* dismissal of a suit that would potentially authorize the attachment of US assets is appropriate.  Accordingly, *TMR* fits within established jurisprudence in holding that  *forum non conveniens* dismissal is not permitted once FSIA jurisdiction over a sovereign has been established.  It has no relevance to Spain's request here, which seeks *forum non conveniens*  dismissal before the Court engages in complex jurisdictional analysis.

As Spain highlighted in its Motion to Dismiss, the *TMR* defendant did "not dispute that [the] case [came] within . . . the [arbitration] exception."  *TMR,* 411 F.3d at 299.  Accordingly, the sovereign conceded that: 1) the court had jurisdiction under the FSIA; and 2) the court could attach the sovereign's U.S. assets because a FSIA attachment exception existed.  It was in that specific context that the court affirmed the district court's refusal to dismiss "[b]ecause there is no other forum in which TMR could reach the [sovereign's] property, if any."  *Id.* at 304.

NextEra represents that this holding is "contrary" to *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukrain*e, 158 F. Supp. 2d 377 (S.D.N.Y. 2001), *aff'd* 311 F.3d 488 (2d Cir. 2002), a Second Circuit case allowing *forum non conveniens* dismissal of an arbitration enforcement action.  This is a remarkable choice of words, as the *TMR* court deliberately and unambiguously "d[id] not consider TMR's alternative contention that, **contrary** to the Second

Circuit's decision in [*Naftogaz*], the doctrine has no place in an action to enforce an arbitration award." *TMR*, 411 F.3d at 304 (emphasis added).  In other words, the *TMR* court declined to create law that was contrary to the Second Circuit's holding in *Naftogaz* (and other cases), yet NextEra cites *TMR* as holding exactly that.  This Court should decline the invitation to dramatically alter foreign sovereign immunity in a manner that neither *TMR* nor any subsequent court has done.[12]

NextEra's (implied) assertion that the well-established law detailed in Section I was overruled by *TMR* cannot be reconciled with post-*TMR* guidance from the D.C. Circuit.  In 2018, the court reiterated that "[f]orum non conveniens predates the FSIA by centuries, and it was an embedded principle of the common-law jurisprudential backdrop against which the FSIA was written."  *Simon v. Republic of Hungary*, 911 F.3d 1172, 1182 (D.C. Cir. 2018) (cert. petition docketed).  The *Simon* plaintiff alleged, among other things, violations of international law, which would provide both an FSIA jurisdictional exception and FSIA attachment exception.  *See id.* at 1178-79.  Nevertheless, the D.C. Circuit affirmed that a court could dismiss on *forum non conveniens* grounds **before** ruling on jurisdiction under FSIA.  *See id.* at 1181-82.

Via a footnote, NextEra alleges that *Simon* is "largely irrelevant" because it did not deal with an arbitration award.  This misses the point entirely.  In *Simon*, the D.C. Circuit

---

[12] NextEra also cites to a non-precedential case wherein the D.C. Circuit summarized *TMR* by stating that it "we held that the doctrine of forum non conveniens does not apply to actions in the United States to enforce arbitral awards against foreign nations."  *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016). However, in *BCB*, like in *TMR*, the court ruled on its jurisdiction and then rejected the *forum non conveniens* request.  *BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 244 (D.D.C. 2015) ("[A]s to the FSIA exception, the Court is satisfied that the FSIA's arbitration exception applies, and the Court has subject-matter jurisdiction to enforce the Award.") *aff'd* 650 F. App'x 17 (D.C. Cir. 2016).  Notably, the *BCB* district court also explained that "the [*TMR*] Court did not address the timing of assessing the appropriateness of the forum"), and on that basis held that *TMR* did not conflict with *Sinochem*. The rule NextEra advances, however, would directly conflict with *Sinochem*, as it would require courts to rule on jurisdiction before ruling on *forum non conveniens*.

unambiguously held that district courts can dismiss cases *forum non conveniens* before ruling on FSIA jurisdiction even where the ultimate remedy might include the attachment of U.S. assets. This directly precludes NextEra's requested expansion of *TMR*.

In fact, the D.C. Circuit once again confirmed the availability of *forum non conveniens* before ruling on FSIA jurisdiction a little over a month ago.  *See In re Air Crash Over Southern Indian Ocean* 946 F.3d 607 (D.C. Cir. 2020).   The court reiterated that "[n]othing . . . requires district courts to conclusively determine whether a defendant enjoys sovereign immunity before considering immunity as a relevant factor in its forum non conveniens analysis." *Id.* at 614-15. The court noted that the parties raised complex arguments regarding immunity, and then held that "it was entirely proper for the district court to recognize that serious jurisdictional questions exist and weigh that as a factor in favor of dismissal." *Id.* at 615.  Most importantly, the court found Malaysia to be an adequate forum, despite the fact that the plaintiffs would not be able to attach assets located in the United States.  *Id.*  Post-*TMR*, the law is clear: nothing requires courts to determine FSIA jurisdiction before ruling on forum non conveniens, and nothing prevents courts from utilizing forum non conveniens before FSIA jurisdiction has been established.

III.    **No Agreement To Arbitrate Exists Pursuant to *Achmea* and the EU Treaties to Which Spain and NextEra (the Netherlands) Must Yield**

The question going to the core of this case is whether Article 26 of the ECT is a valid arbitration agreement as between two parties who fall within the EU legal order and under the limitations proscribed by the EU Treaties that the EU Member States have entered into.  As explained by Spain's expert, Professor Dr. Hindelang, pursuant to the principles set out in *Achmea* and the EU Treaties—and in particular the principles of autonomy and primacy of EU law that apply to all EU Member States and their citizens—Article 26 of the ECT is not valid arbitration agreement between the parties before the Court.  To try to escape this conclusion, NextEra argues

that: 1) EU law does not apply to the question of whether there was a valid agreement to arbitrate; and 2) the ECT is valid under EU law if it does apply.  Both arguments fail.

      A.    <u>EU Law Applies and The Agreement To Arbitrate Alleged Here Cannot Be Valid If It Conflicts With EU Law</u>

As NextEra concedes, Article 26(6) of the ECT provides that a "tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law."   However, NextEra and Professor Bermann ignore the EU context, and that " the EU Treaties are rules of international law, [and] are applicable between EU Member States even though not binding on Non-EU Contracting Parties to the ECT, and Article 26(6) of the ECT does not exclude any rules of international law from its coverage nor is its application restricted to the merits of a dispute."  Declaration of Professor Dr. Hindelang dated February 7, 2020 ("Second Hindelang Decl."), ¶ 50.

"Even if EU Member States were willing to resort to means of an international agreement inter se with the view to circumvent their obligations flowing from EU law, like depriving the CJEU of its constitutionally allocated jurisdiction, such an attempt would be futile."  Second Hindelang Decl., ¶ 15.  It is well-settled that "[r]esorting to international law in an intra-EU context does not place this law outside the reach of the EU Treaties." Second Hindelang Dec., ¶ 16.  "This all encompassing conflict rule is known as the <u>principle primacy of EU law.</u>" *Id.*[13]  Moreover, "as the principal judicial organ of the United Nations, the International Court of Justice, has stated:

---

[13] In 2008 (following the execution of the ECT), the EU reiterated and codified its commitment to primacy in the Treaty of Lisbon.  *Id.*, ¶ 11.  Accordingly, it is undisputed that EU law takes precedence if there is a conflict between a rule created by an EU member state and EU law.  *Id.*, ¶ 14 ("The EU Treaties prevail and the conflicting rule created by or between EU Member States is invalid.").

"an international instrument has to be interpreted and applied within the framework of the entire legal system prevailing at the time of the interpretation." *Id.*, ¶ 52.

NextEra, however, argues that an EU Member State can do via a multilateral investment treaty what it cannot do via its own legislation and take actions (and create rules) that are contrary to EU law. To get there, in circular fashion, NextEra relies almost exclusively on text within the ECT itself. For example, NextEra alleges that the phrase "in accordance with this Treaty **and** applicable rules and principles of international law" means "in accordance with this Treaty as interpreted according to EU law." This is not what the word "and" means.[14] Similarly, NextEra purports that a conflicts provision in the ECT providing that the ECT takes primacy over contrary treaties is sufficient to obliterate the principle primacy of EU law. Yet NextEra fails to identify any authority for this conflict provision. NextEra likewise argues that the burden is on the EU to protect its sovereignty in all treaties it executes by including a disconnection clause. In sum, these arguments reduce to a claim that Spain intended to place the interpretation of EU law outside of EU law, and that Spain had the authority to do so.

As to NextEra's allegations on intent, "such an inference is unwarranted and legally irrelevant." *Id.*, ¶ 44. It has also been disclaimed by the EU itself, which has articulated that at "the time of the ECT's conclusion, "the EU Member States did not intend to create inter se obligations between them, just as in the case of the WTO agreement" and that Article 26 of the ECT was not intended to be applied in the intra-EU context."[15] *Id.*, ¶ 45.

---

[14] Further, as pointed out by Professor Dr. Hindelang, "it is untenable to maintain that the ECT tribunals will never be called upon to apply and interpret EU law," and indeed the NextEra tribunal interpreted EU law when in deciding jurisdiction. Second Hindelang Dec., ¶ 58.

[15] European Commission, *Amicus Curiae* Brief ¶¶ 11-45, *Novenergia II – Energy & Environment (SCA) v. Kingdom of Spain*, SCC Case No. 2015/063 (May 2, 2017) (DE 15-66, Ex. 60 to First Hindelang Declaration).

Moreover, regardless of intent, any treaty that attempts to grant itself primacy over the TFEU fails as a matter of law. As noted, "if EU Member States vis-à-vis each other were allowed to "contract out" of the EU legal order by *inter se* agreements, the fundamental principle of equality before the law in the European Union would be violated. *Id.*, ¶ 16. The consequences to NextEra's interpretation of the ECT would equally violate these fundamental principles. For this reason, the CJEU recently held that the absence of a disconnection clause in the draft accession agreement of the EU to the ECHR rendered the agreement irreconcilable with the TFEU. *Id.*, ¶, 47. For the same reason, the absence of a disconnection clause in the ECT does not save Article 26 of the ECT from violating the TFEU.[16] "In sum, the principle of primacy enshrined in the EU Treaties (EU law) is applicable to any international agreements between EU Member States, including the ECT," and "it takes precedence over any other conflict rule in an intra-EU context." *Id.*, ¶, 47

B.    Pursuant to *Achmea*, No Valid Arbitration Agreement Exists

NextEra next attempts to sidestep the consequences of *Achmea* by focusing on 1) the fact that *Achmea* dealt with a bilateral investment treaty rather than a multilateral investment treaty; and 2) *Achmea*, at most, is a matter of EU law within the EU, and therefore does not invalidate the ECT "on the international plane."[17]

As to the first argument, the *Achmea* judgment is not limited to "bilateral treaties," and that term does not appear anywhere in the main holding of the judgment. *Id.*, ¶ 26. The term used in

---

[16] Indeed, under the international customary law established between the EU Member States of autonomy and primacy of EU law, EU Member States can disconnect *inter se* from international treaties with no disconnection clause , *i.e.*, for intra-EU affairs. *See* Second Hindelang Decl., ¶ 48.

[17] Response, pp. 27-29. NextEra also regurgitated arguments that are rebutted elsewhere in this Reply, i.e that the ECT is a treaty unto itself outside the reach of EU primacy and that ICSID is entitled to automatic confirmation. As to NextEra's footnote 21, which suggests that this Court is somehow bound by ICSID tribunals ruling on their own jurisdiction, Spain struggles to see the relevance. Fundamentally, Spain challenges the authority of ICSID to rule on its dispute with NextEra. The fact that ICSID tribunals have disagreed is neither material nor surprising.

*Achmea* is "international agreement," which can include a bilateral investment agreement as well as a multilateral treaty. *Id.*, ¶ 27. Moreover, the specific provision at issue, Article 26 of the ECT, is premised on bilateral undertakings among the contracting parties, whereby one "Contracting Party" and "another Contracting Party," the home of an investor, agree to submit investment disputes between the first Party and the investor to arbitration. *Id.*, ¶ 28. The CJEU found that the arbitration provision in *Achmea* was precluded by EU law because "the Member States parties to it established a mechanism for settling disputes between an investor and a Member State which could prevent those disputes from being resolved in a manner that ensures the full effectiveness of EU law, even though they might concern the interpretation or application of that law." *Id.*

Here, NextEra alleges that EU Member States (Spain and the Netherlands) established a mechanism for settling disputes between an investor and a EU Member State which could prevent those disputes from being resolved in manner that ensures the full effectiveness of EU law. This dispute is on all fours with *Achmea*, and no valid arbitration agreement exists as a matter of law. The fundamental test according to the CJEU, the highest court in the EU, is whether the dispute resolution provision in the ECT creates an arbitral tribunal which is not within the EU legal system which "may be called on" to interpret and apply EU law, but cannot refer questions of EU law to the CJEU under Article 267 of the TFEU. *Id.* at 29. Since the arbitration agreement in ECT fails that test, it is <u>invalid as between EU Member States</u>.

NextEra's reference to the ECT not being "invalidated" on the international plane is similarly unavailing. According to the CJEU's caselaw, giving priority to EU law means that a rule created by the EU Member States conflicting with EU law is *disapplied, i.e.* inoperative. *See* First Hindelang Declaration, ¶¶ 47-56. Accordingly, the ECT is not invalidated, but rather the offending provision is not effective as between the EU Member States. *Hindelang Dec.*, ¶ 82.

Accordingly, *Achmea* does not invalidate an arbitration award under international law; instead, it establishes that there was never a valid agreement to arbitrate between Spain and NextEra.  For the reasons stated above, the absence of a valid arbitration agreement establishes that this Court lacks jurisdiction over Spain (because no FSIA exception applies).

Dated: February 7, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

By:    */s/ Matthew J. Weldon*

Matthew J. Weldon (*pro hac vice*)
New York Bar Number 4832408
Luke Steinberger (*pro hac vice*)
599 Lexington Avenue
New York, New York 10022
(212) 536-4042
Matthew.Weldon@klgates.com
Luke.Steinberger@klgates.com

Brian D. Koosed
D.C. Bar Number 1034733
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9204
Brian.Koosed@klgates.com

Michael DeMarco (*pro hac vice*)
New York Bar Number 4142477
1 Lincoln St.
Boston, MA 02111
(617) 951-9111
Michael.DeMarco@klgates.com


*Counsel for Respondent Kingdom of Spain*

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 7, 2020, I caused a true and correct copy of the foregoing Memorandum of Law to be filed using the Court's Electronic Case Filing System ("ECF"). The document is available for review and downloading via the ECF system, and will be served by operation of the ECF system upon all counsel of record.


<u>*/s/ Matthew J. Weldon*    </u>
Matthew J. Weldon

304385757 v1