# EXHIBIT 1

**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

**NEXTERA ENERGY GLOBAL HOLDINGS B.V. AND
NEXTERA ENERGY SPAIN HOLDINGS B.V.**

Claimants

and

**KINGDOM OF SPAIN**

Applicant

**(ICSID Case No. ARB/14/11)
Annulment Proceeding**

---

**DECISION ON STAY OF ENFORCEMENT OF THE AWARD**

***Members of the ad hoc Committee***
Prof. Joongi Kim, President of the *ad hoc* Committee
Prof. Lawrence Boo, Member of the *ad hoc* Committee
Mr. Humberto Sáenz-Marinero, Member of the *ad hoc* Committee

***Secretary of the ad hoc Committee***
Ms. Natalí Sequeira

---

6 April 2020

**(ICSID Case No. ARB/14/11) – Annulment Proceeding**

TABLE OF CONTENTS

I.   PROCEDURAL BACKGROUND .................................................................................... 2

II.  THE POSITION OF THE PARTIES ........................................................................... 4

   A.   The Standard for granting a stay of enforcement ............................................... 5

       a.   Applicant's position ................................................................. 5

       b.   Claimants' position ................................................................. 7

   B.   The Circumstances for the continuance of the Stay ......................................... 10

     (1)   The nature and basis of the Annulment Application .............................. 10

       a.   Applicant's position ................................................................. 10

       b.   Claimants' position ................................................................. 11

     (2)   The prejudice to Applicant if the stay is not continued ...................... 11

       a.   Applicant's position ................................................................. 11

       b.   Claimants' position ................................................................. 13

     (3)   Claimants will not be harmed if the stay is continued ......................... 14

       a.   Applicant's position ................................................................. 14

       b.   Claimants' position ................................................................. 15

   C.   Whether a guarantee should be ordered ........................................................ 18

       a.   Applicant's position ................................................................. 18

       b.   Claimants' position ................................................................. 19

III. THE COMMITTEE'S ANALYSIS ............................................................................ 21

   A.   Applicable Legal standards ............................................................................ 21

   B.   Decision on Stay .......................................................................................... 24

     (1)   Merits of the Annulment Application ...................................................... 24

     (2)   Prejudice to Spain ................................................................................. 25

     (3)   Prejudice to the NextEra Entities .......................................................... 27

     (4)   Balance of considerations ....................................................................... 28

IV.  COSTS ....................................................................................................................... 30

V.   DECISION AND ORDERS ...................................................................................... 30

**(ICSID Case No. ARB/14/11) – Annulment Proceeding**

## I. PROCEDURAL BACKGROUND

1.  This Decision addresses the Kingdom of Spain's (the "**Applicant**" or **"Spain"**) application for the continuation of the stay of enforcement of the ICSID award rendered on 31 May 2019 (the "**Award**") by the arbitral tribunal (the "**Tribunal**") in *NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. v. Kingdom of Spain*, ICSID Case No. ARB/14/11 (the "**Arbitration**").

2.  On 26 September 2019, Spain submitted its Application for Annulment of the Award (the "**Annulment Application**"). In the Annulment Application, Spain requested (i) a provisional stay of enforcement of the Award in accordance with Article 52(5) of the ICSID Convention and Rule 54(2) of the ICSID Arbitration Rules, which provide that the Secretary-General shall grant an automatic provisional stay until the ad hoc Committee rules on such request, and (ii) the continuation of the stay of enforcement until the decision in this annulment proceeding is rendered by the *ad hoc* Committee (the "**Committee**").

3.  On 2 October 2019, the acting Secretary-General registered the Annulment Application and notified the Parties of the provisional stay of enforcement of the Award.

4.  On 16 January 2020, Spain filed a request to continue the stay of enforcement of the Award (the "**Submission**").

5.  On 26 January 2020, NextEra Energy Global Holdings B.V. (the "**First Claimant**") and NextEra Energy Spain Holdings B.V. (the "**Second Claimant**") (collectively the "**Claimants**" or "**NextEra Entities**") filed an opposition to Spain's request to continue the stay of enforcement of the award (the "**Opposition**").

6.  On 30 January 2020, Spain filed a reply on the request to continue the stay of enforcement of the Award (the "**Reply**").

7.  On 5 February 2020, Claimants filed a rejoinder on the request to continue the stay of enforcement of the Award (the "**Rejoinder**").

8.  The Committee held a hearing by telephone conference on 11 February 2020 before the First Session in which the Parties' representatives explained their arguments in favour and

**(ICSID Case No. ARB/14/11) – Annulment Proceeding**

against of the continuance of the stay of enforcement, and discussed and agreed to the applicable rules for the annulment proceeding.

9.    On 17 February 2020, Claimants submitted a letter that sought to clarify whether they could execute an undertaking to protect against attachment of any funds by third parties and to offer proof as to the corporate relationship between the First Claimant, NextEra Energy Canada Holdings B.V., and the nine wind farm projects in Canada identified in their Opposition.

10.   On 19 February 2020, the Committee circulated the final draft of the Committee's Procedural Order No. 1 ("**PO1**") reflecting the Parties' agreements and the Committee's decisions on the matters in which the Parties were unable to reach an agreement during the First Session. The Committee invited both Parties to submit final comments on the draft PO1 by 28 February 2020.

11.   On 25 February 2020, the President of the Committee conveyed the following message to the Parties:

> The *ad hoc* Committee requests that the Parties consider conferring regarding the proposed undertaking described below. The Committee stresses that the language used in the proposed undertaking is for illustrative purposes. The Parties should seek to reach an agreement on the exact terms within the next two weeks or such extended period as deemed appropriate by the Committee. If the Committee determines that the parties cannot reach an agreement it will render a decision on the application for a continuation of the stay of enforcement.

> In the event, or to the extent, that annulment is not granted, Spain agrees and undertakes that (1) it will in accordance with its obligations under the ICSID Convention recognize the award rendered by the Arbitral Tribunal as final and binding and will abide by and comply with the terms of the award; and (2) it will unconditionally and irrevocably pay the pecuniary obligations imposed by the award to the NextEra entities within <such period as the Parties may agree, or if not agreed as fixed by the Committee> days of the Committee's decision such that the NextEra entities would be fully compensated and would not need to engage in any action to recognize, enforce or execute the award under Article 54 of the ICSID Convention.

12.   On 28 February 2020, Claimants filed comments on the draft PO1 circulated. On the same date, Spain indicated that it did not have further comments on the draft. In a separate letter

submitted by email of 29 February 2020, Spain objected to the submission of Claimant's 17 February 2020 letter. Spain argued that the letter was unsolicited by the Committee, not in accordance with the procedural calendar, and should be discarded.

13. By email of 11 March 2020, Claimants informed the Committee that: *"… the parties have not reached agreement on the draft undertaking set out in the Committee's communication of 25 February 2020"*, and attached the Parties' correspondence on this issue. The Parties indicated that they remained at the Committee's disposal for any further information required. On the same date, Spain confirmed the Parties' agreement in this regard.

14. On 4 March 2020, the Centre circulated the Committee's Procedural Order No. 1 dated 3 March 2020.

## II.  THE POSITION OF THE PARTIES

15. Applicant has asked the Committee for the continuation of the provisional stay of the enforcement of the Award rendered in the Arbitration. It is its understanding that the prevailing practice for ICSID *ad hoc* committees is to stay enforcement of an award during the pendency of annulment proceedings.[1] Such stays have been considered the norm, with an exception applying only in case of frivolous annulment applications or other improper purposes, which are not present in the Annulment Application.

16. Spain argues that it has filed its Annulment Application in good faith in accordance with Article 52 (1) of the ICSID Convention, while raising serious grounds that go to the very core of the validity of the Award and the integrity of the arbitral proceedings, including manifest excess of powers, failure to state reasons, and serious departure from a fundamental rule of procedure.

17. Claimants object to Applicant's Annulment Application and seek a lifting of the stay. They argue recent practice reflects a predominant trend that does not support the presumption in

---

[1] Submission, ¶¶ 4–5.

favour of granting a stay. They stress that Spain has the burden to prove the circumstances that "*require*" enforcement to be stayed and the standard of proof is a demanding one. Claimants argue that the merits should not be considered in reviewing the stay application.

18.  According to Claimants, rather than "*abide by and comply with*" ICSID awards, as Article 53(1) requires, Spain is seeking to annul every ICSID award rendered against it and is employing a strategy to "*buy time*".[2]

19.  Claimants assert that a denial of the stay would not unduly harm Spain whereas Spain has failed to prove that a continued stay would not harm Claimants.

### A.  THE STANDARD FOR GRANTING A STAY OF ENFORCEMENT

#### a.  Applicant's position

20.  Applicant indicates that, pursuant to Article 52(2) of the ICSID Convention, the Committee may continue the stay of enforcement of the Award "*if it considers that the circumstances so require*", as reflected in Rule 54(2) of the ICSID Arbitration Rules. It argues that the prevailing ICSID practice of granting stays of enforcement was recognized by the *ad hoc* committee in *Occidental v. Ecuador,* which stated that "*[t]he prevailing practice in prior annulment cases has been to grant the stay of enforcement*"[3], and the similar statement of the *ad hoc* committee in *Víctor Pey Casado v. Chile* that "*absent unusual circumstances, the granting of a stay of enforcement pending the outcome of the annulment proceedings has now become almost automatic.*"[4] Applicant argues that "*[a]bsent exceptional circumstances that require a departure from this standard practice*" the stay should be granted.[5] No such circumstances are present in this case that would warrant a departure

---

[2] Opposition, ¶¶ 53–54.

[3] Submission, ¶ 7; Reply, ¶ 5; *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award, 30 September 2013 ("***Occidental v. Ecuador***"), **Annex-029**, ¶ 50.

[4] Submission, ¶ 8; *Víctor Pey Casado and "Presidente Allende Foundation v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Application for a Stay of Enforcement of the Award, 5 May 2010 ("***Víctor Pey Casado v. Chile***"), **Annex-030**.

[5] Submission, ¶ 4.

from this standard practice, having filed the Annulment Application in good faith and there being no harm caused to the NextEra Entities as a result of the stay.

21. Applicant also indicates that *ad hoc* committees have found that a request for continuation of a stay should be granted unless it is obvious that the application is "*without any basis under the Convention*" and is "*dilatory*" in nature, as stated by the *ad hoc* committee in *MTD v. Chile*.[6]

22. In addition, Applicant states that Claimants' main argument to oppose the continuance of the stay seems to be that the standard for obtaining a stay is very high and that some kind of unique "*compelling*" circumstances are required. Nevertheless, neither Article 52(5) of the ICSID Convention nor ICSID Arbitration Rule 54(2) refer to "*exceptional*" circumstances. Thus, Claimants cannot write in the word *"exceptional"* where it is not found in the text of the rule, nor "*unusual*" as Claimants repeatedly claim.[7] Applicant argues that "*the entire discussion of whether 'unusual' or 'exceptional' circumstances exist in the current case to justify continuation of the stay of enforcement is a ruse created by Nextera* [sic] *to mislead and confuse, unreasonably heightening the burden on Spain by misrepresenting the applicable legal standard.*"[8]

23. Applicant submits that stays have been requested in around 55 ICSID annulment cases, where it has been granted in 39 cases (75% success rate).[9] Therefore, it is a prevailing practice to provide stays of enforcement during annulment proceedings.[10] The whole argument of "*exceptional circumstances*" has been manufactured by Claimants. At best, the decisions that Claimants quoted in which stays were denied seem to assert simply that stays are not automatic. In addition, Applicant states that it has not sought to impose the "*primary burden*" on Claimants to prove why the stay should not be granted. It has fully undertaken to indicate the circumstances justifying the stay and has amply done so by

---

[6] Submission, ¶ 9; *MTD Equity Sdn Bhd. & MTD Chile S.A. v. Republic of Chile*, ICSID Case No. ARB/01/7, Decision on the Respondent's Request for a Continued Stay of Execution, 1 June 2005 ("***MTD v. Chile***"), Annex-033.

[7] Reply, ¶¶ 12–13.

[8] Reply, ¶ 26.

[9] The Committee notes that 39 out of 55 cases is 70.9%.

[10] Reply, ¶ 15.

**(ICSID Case No. ARB/14/11) – Annulment Proceeding**

meeting its burden of proof.[11] Certain matters, however, are logically for Claimants to demonstrate such as whether they would suffer any prejudice by the stay.[12]

24. Applicant contends that the stay of enforcement is also the criteria that U.S. courts are following respecting the principle of prudence and respect to sovereigns. As an example, Applicant cites the recent Order of the U.S. District Court for the District of Columbia in the enforcement of the *Novenergia II – Energy & Environment (SCA) v. The Kingdom of Spain* award that ordered the stay of enforcement until the end of the annulment proceedings.[13]

### b. Claimants' position

25. Claimants argue that according to Article 53(1) of the ICSID Convention, the Award is final and binding on both Spain and the NextEra Entities. Hence, citing *Border Timbers v. Zimbabwe*, Spain must prove that the circumstances in this case are *"sufficiently compelling so as to 'require' a stay"*.[14] The term "*require*" imposes a high standard. Therefore, contrary to Applicant's arguments unconditional stays are not the *"prevailing practice"* nor does the burden of proof fall on Claimants to demonstrate "*exceptional circumstances*" that require the provisional stay to be lifted.[15]

26. On this matter, Claimants stated that Articles 52 and 53 of the ICSID Convention should be weighed up jointly, arguing that the general rule is for the stay of enforcement to be lifted. It points that Article 52(5) prescribes a two-step inquiry. First, it requires an applicant to show that the circumstances "*require*" a stay of enforcement. Then, "*if [the Committee] considers that the circumstances so require*", then it "*may*" stay enforcement

---

[11] Reply, ¶ 35.

[12] Reply, ¶ 35.

[13] Reply, ¶ 28, Order of the U.S. District Court for the District of Columbia. Civil Action No. 18-cv-01148 (TSC), *Novenergia – II Energy & Environment (SCA) v. The Kingdom of Spain*, 27 January 2020, **Annex-053**; *Novenergia – II Energy & Environment (SCA) v The Kingdom of Spain*, SCC Arbitration (2015/063), 15 February 2018 ("***Novenergia v. Spain***").

[14] Opposition, ¶¶ 2 and 45, citing *Border Timbers Limited, Timber Products International (Private) Limited, and Hangani Development Co. (Private) Limited v. Republic of Zimbabwe*, ICSID Case No. ARB/10/25, Decision on Stay of Enforcement of the Award, 24 April 2017 ("***Border Timbers v. Zimbabwe***"), **Annex-043** / CL-198, ¶ 78.

[15] Opposition, ¶ 5, quoting *Border Timbers v. Zimbabwe*, ¶ 80; *Eiser Infrastructure Limited and Energía Solar Luxembourg S.a.r.l v. Kingdom of Spain*, ICSID Case No. ARB/13/36, Decision on Stay of Enforcement of the Award, 23 March 2018 ("***Eiser v. Spain***"), **CL-9**, ¶ 54.

of the award, at its discretion.[16] It cites in support the *Standard Chartered v. Tanzania ad hoc* committee's decision on the continuance of the stay of enforcement that "*[t]he obligation that each State assumed on ratification of the Convention, under Article 53, to comply with awards against it is particularly important. This obligation is as important as the right to pursue annulment under Article 52 of the ICSID Convention. These two articles are linked together.*"[17]

27. Claimants argues that recent *ad hoc* committees have already ruled on the same arguments that Applicant raised in such cases as *Antin v. Spain* and *Eiser v. Spain*.[18] Citing said *ad hoc* committees, they stated that "*the Committee fails to see any textual support in the ICSID Convention or Arbitration Rules for the notion that there is a presumption in favour of granting a stay*" (in *Eiser v. Spain*) and "*there is no presumption in favour of granting a request for a stay*" (in *Antin v. Spain*). Claimants stress that *Antin v. Spain* quoted *Eiser v. Spain,* which stated that "*the language of Article 52(5) makes it clear that a stay should be continued only if there are circumstances requiring such a stay.*"[19]

28. According to Claimants, the text of Articles 52 and 53 of the ICSID Convention, read alongside ICSID Arbitration Rule 54, lead to four conclusions.[20]

29. First, an ICSID Award is binding and payable, irrespective of whether or not the debtor seeks annulment.

30. Second, the continuation of an interim stay of enforcement is neither routine nor automatic. There is no presumption in favour of a stay.

---

[16] Opposition, ¶ 16.

[17] Opposition, ¶ 21; *Standard Chartered Bank (Hong Kong) Limited v. Tanzania Electric Supply Company Limited*, ICSID Case No. ARB/10/20, Decision on Applicant's Request for a Continued Stay on Enforcement of the Award, 12 April 2017 ("***Standard Chartered v. Tanzania***"), **Annex-044** / **CL-206**.

[18] Opposition, ¶ 40; *Eiser v. Spain***,** ¶ 48, and *Infrastructure Services Luxembourg S.a.r.l. and Energia Termosolar B.V. (formerly Antin Infrastructure Services Luxembourg S.à.r.l. and Antin Energia Termosolar B.V.) v. Kingdom of Spain*, ICSID Case No. ARB/13/31, Decision on the Continuation of the Provisional Stay of Enforcement of the Award, 21 October 2019 ("**Antin v. Spain**"), **CL-200,** ¶ 67.

[19] Opposition, ¶ 47.

[20] Opposition, ¶ 22.

31. Third, Applicant carries the burden of establishing circumstances that *"require"* enforcement of the Award to be stayed. If Applicant fails to carry that burden, the interim stay shall be terminated.

32. Fourth, even if Applicant establishes circumstances "*requiring*" a stay, the Committee retains discretion to grant, refuse or condition any stay.

33. Claimants further indicate that from the text of ICSID Arbitration Rule 54(4), the burden of proof is placed on the party requesting a stay of enforcement to demonstrate the circumstances that require the stay. In support of this, Claimants cite the *SGS v. Paraguay ad hoc* committee's decision for the continued stay that stated "*[b]ased on the plain language of Rule 54(4) of the ICSID Arbitration Rules, it is also clear to the Committee that the party interested in the continued stay bears the burden of proof to demonstrate the existence of circumstances that warrant said continuation*".[21]

34. Claimants cite the decisions in those previous *ad hoc* committees, which stated that "*[t]his Committee also attaches importance to the specific use of the verb 'require' in its imperative form as opposed to other 'less categorical verbs' such as 'recommend', 'deserve' or 'justify'*".[22]

35. Finally, Claimants add that Spain has a further treaty obligation to honour the Award under Article 26(8) of the Energy Charter Treaty ("**ECT**") that reads, "*[t]he awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute... Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.*"[23]

---

[21] Opposition, ¶¶ 18,42–44, *SGS Société Générale de Surveillance S.A. v. Republic of Paraguay*, ICSID Case No. ARB/07/29, Decision on Paraguay's Request for the Continued Stay of Enforcement of the Award, 22 March 2013 ("*SGS v. Paraguay*") **CL-209**, ¶ 89.

[22] Opposition, ¶ 46.

[23] CL-1.

### B.  THE CIRCUMSTANCES FOR THE CONTINUANCE OF THE STAY

### (1)  The nature and basis of the Annulment Application

### a.      Applicant's position

36.    Applicant states that the Annulment Application has been filed in good faith, is not dilatory, and is based on serious grounds.

37.    Applicant claims that the Tribunal went beyond its jurisdiction by failing to apply the proper law with regard to the intra-European Union ("**EU**") objection and wrongly interpreting Article 26 of the ECT. In addition, the Tribunal ignored the application of Article 17 of the ECT and the fact that there was no investor in accordance with the applicable law. This failure to apply the proper law by the Tribunal determined that the Award infringed the most basic principles contained in the European Commission's State Aid Decision on the Spanish renewable energy support scheme.[24] Applicant cited the decisions of the *BayWa, Stadtwerke,* and *RWE ad hoc* committees as a basis for how well-founded its Annulment Application is and unfounded the Award is.[25]

38.    The Award involved serious departures from fundamental rules of procedure and thus prevented Applicant from having a fair trial. Among other things, Applicant indicates that the wrong translation of a key document denounced before the Tribunal, the concealment of documents by Claimants, the flip in the burden of proof made by the Tribunal, and the lack of attention by the Tribunal of the hearing discussion, transcripts, and post hearing are a sufficient basis to consider the Annulment Application.[26]

39.    The Award provided contradictory findings in relation to stabilization commitments and the application of EU law, did not specify the date of the investment, voluntarily omitted to decide on a potential fraud allegation that would show that the NextEra Entities did not

---

[24] Submission, ¶ 12.

[25] Reply, ¶¶ 49–52; *BayWa r.e. renewable energy GmbH and BayWa r.e. Asset Holding GmbH v. Kingdom of Spain*, ICSID Case No. ARB/15/16, Decision on Jurisdiction, Liability and Directions on Quantum, 2 December 2019, **Annex-054**; *Stadtwerke München GmbH, RWE Innogy GmbH, and others  v. Kingdom of Spain*, ICSID Case No. ARB/15/1, Award, 2 December 2019, **Annex-056**; *RWE Innogy GmbH and RWE Innogy GmbH and RWE Innogy Aersa S.A.U. v. Kingdom of Spain*, ICSID Case No. ARB/14/34, Decision on Jurisdiction, Liability and Certain Issues of Quantum, 30 December 2019, **Annex-058**.

[26] Submission, ¶¶ 11–13.

bring the ICSID claim with clean hands, and committed gross errors in the damages calculations.[27]

### b. Claimants' position

40. On this matter, Claimants argue that Applicant is drawing the Committee into a pre-trial of Spain's annulment case. They state that ICSID jurisprudence is unanimous in holding that *ad hoc* committees do not speculate as to the likely outcome of an annulment application when deciding whether to grant a stay of enforcement. Claimants indicate that Applicant knows that the merits of its case are irrelevant at this stage, but nevertheless has sought to repeat its strategy of asserting that its annulment claims are well-founded.[28] In accordance to this position, Claimants will not respond to Applicant's arguments on the merits of the annulment, unless the Committee requires otherwise.

### (2) The prejudice to Applicant if the stay is not continued

### a. Applicant's position

41. In the event that the stay is not continued and Claimants enforce the Award executing its payment during the annulment proceeding, Applicant argues that it would face the risk of non-recoupment of the amounts unduly paid if the Award is later annulled. Applicant further argues that it would be put in the difficult position of having to recover the amount prematurely and inappropriately paid, aggravated by the circumstance of Claimants' investment being channelled through a "*long chain of instrumental companies with no actual assets*" that can be "*dissolved at any moment*".[29] Applicant adds that it "*faces the risk that it will not recover the amounts obtained by Nextera* [sic]*, and may have to pursue its own enforcement actions in multiple national courts if the money is not voluntarily returned.*"[30] Applicant claims that it is not known "*if the money would be readily available to recover from Nextera* [sic]*, or whether [NextEra] would have distributed the proceeds to the respective stakeholders*".[31] Applicant also asserts "*that NextEra is apparently trying*

---

[27] Submission, ¶ 14.

[28] Opposition, ¶¶ 57-59.

[29] Submission, ¶¶ 16–7; Reply, ¶ 64.

[30] Reply, ¶ 6. d).

[31] Reply, ¶ 77.

*to sell its Award rights to a third party"* and it *"would be impossible that the Kingdom of Spain gets the reimbursement when it will win the annulment"*.[32]

42.    Applicant states that even if the amount could ultimately be recouped, further resources and efforts would be needed for its recoupment, which would imply additional burden, particularly considering that those additional resources and efforts would be financed with taxpayers' money. That additional burden could be avoided by maintaining the stay until the conclusion of the annulment proceeding. Applicant adds that the risk of non-recoupment of funds could not be remedied by means of escrowing funds because it would *"trigger additional burden and prejudice"* on Applicant and other parties.[33]

43.    In addition, Applicant submits that Spain (and third parties) face a real prejudice if the Award is enforced now and later annulled. It explains that under EU obligations, it is required to submit the Award to the European Commission for a determination as to whether it constitutes incompatible State aid – that is, whether the prospective payment by Spain to Claimants has the potential to distort competition in the EU internal market and affect trade between member states. According to Applicant, if Claimants were able to enforce the Award in its current form and obtain payment, and the European Commission then determines that the Award is incompatible State aid, this could require Spain to commence recovery proceedings against Claimants as part of its obligations under EU law.[34] If Spain fails to recover the amounts paid and to implement the EC's decision, it could be liable for monetary penalties.[35]

44.    Finally, Applicant argue that it is not attempting to avoid or block compliance with the ICSID Convention by invoking the binding international obligations of the EU, but simply explaining all the relevant circumstances that are presented in this case and that should be taken into consideration by the Committee when determining whether to continue a stay of enforcement of the Award. Applicant offers its commitment that *"if the Award is not*

---

[32] Reply, ¶¶ 6.a) and 38.
[33] Reply, ¶ 80.
[34] Reply, ¶¶ 81–82.
[35] Reply, ¶ 107.

*annulled in this proceeding, it will seek the authorization of the EC to proceed with payment and will promptly pay it upon receiving such authorization.*"[36]

### b. Claimants' position

45. Claimants reject the arguments of Applicant on this matter, arguing that Applicant is just repeating speculative arguments that were raised before in *Antin v. Spain* and *Eiser v. Spain* without success. They state that the alleged "*harm*" is no more than the routine consequence of the losing party having to comply with its obligations under an ICSID award. They add that the alleged "*harm*" could never be enough to justify a stay, otherwise stays would become almost automatic.[37]

46. Additionally, Claimants argue that the mere risk for Applicant of having to recoup funds from Claimants does not justify a stay of enforcement and it is actually the natural consequence of a party having arbitrated a dispute under the ICSID Convention and lost. In support of this argument, Claimants cite the decision in *Eiser v. Spain* stating that "*the Committee agrees with the committee in SGS v. Paraguay that payment of an award is 'the natural consequence of the enforcement regime created by the ICSID Convention'. Thus the burden of exchange of funds going back and forth cannot be a valid basis to support a request for stay on enforcement.*"[38] The *ad hoc* committee in *Antin v. Spain* held the same stating that "*the burdens and risks raised by [Spain] are common to virtually all annulment applications. They are, as Claimants put it, a natural consequence of the annulment proceedings. Such circumstances cannot … be sufficient to require a stay.*"[39]

47. Under Applicant's hypothetical scenario of a potential non-recoupment, Claimants argue merely pleading that assertion without deeper analysis is not enough. Unpacking Spain's argument, Spain's claim would depend on series of cumulative conditions all occurring in the way Spain predicts. First, Claimants would have to obtain payment of the Award, which, to Claimants' knowledge, has not occurred in previous cases. Second, that payment would

---

[36] Reply, ¶ 6.f).
[37] Opposition, ¶ 61-62.
[38] Opposition, ¶ 64, citing *Eiser v. Spain*, **CL-199**, ¶ 63.
[39] Opposition, ¶ 65, citing *Antin v. Spain*, **CL-200**, ¶¶ 72–73.

need to occur before the Committee issues its decision on annulment. Third, Spain would have to succeed in its Annulment Application, which is not for the Committee to analyse at this stage. Fourth, Claimants would have to refuse to pay voluntarily any sums obtained by executing the Award. And, fifth, Spain would have to fail in its litigation to recover amounts obtained pursuant to the Award, which Applicant cannot prove without showing that Claimants are in some kind of financial distress that would reduce its assets below the value of the Award.[40]

48.    Finally, Claimants indicate that Applicant admitted being one of the wealthiest nations in the world and that the Award only represents only a small fraction of the savings that Spain has achieved through the remuneration cuts that it introduced in 2013. Therefore, the "*taxpayers' money*" is not a valid argument for an interim stay of enforcement. Backing this argument, Claimants cite the *Burlington v. Ecuador ad hoc* committee, which stated that "*[t]he argument that the termination of the stay would mean reallocation of funds within the budget is inherent to the need to satisfy any financial obligation by a State. It is a general argument that any State could make, which has been rejected in the past and which the Committee does not consider to establish the minimal gravity required to justify continuation of the stay.*"[41]

**(3) Claimants will not be harmed if the stay is continued**

**a.    Applicant's position**

49.    According to Applicant, Claimants must prove the harm it would suffer if the stay is continued based on "*unmistakable proof*".[42] Claimants must prove, for instance, that its viability depends on the payment of the Award.[43]

50.    Applicant argues that in the hypothetical event that the Annulment Application was denied, the delay in payment of the Award would be remedied by the payment of interest

---

[40] Opposition, ¶¶ 66–71.

[41] Opposition, ¶¶ 74–76, citing *Burlington Resources Inc. v. Republic of Ecuador*, ICSID Case No. ARB/08/5, Decision on Stay of Enforcement of the Award, 31 August 2017 ("***Burlington v Ecuador***"), **Annex-039 / CL-207**, ¶ 83.

[42] Reply, ¶¶ 55–56.

[43] Reply, ¶ 55.

compounded monthly at rates higher than the capital markets. Therefore, granting the stay would not prejudice Claimants at all. In support of this argument, Applicant cites the decision in *Azurix v. Argentina*, where the *ad hoc* committee stated that "*[o]ther than by being put to the effort and expense of defending an annulment request and by the receipt of funds being delayed (assuming the annulment application to be unsuccessful), the Committee does not accept that Azurix suffers any prejudice of a kind warranting the provision of security. The provision for interest compensates the delay.*"[44]

51. Furthermore, Applicant considers there is no risk of non-compliance with the Award if it is not annulled. It is the fifth-largest economy in the EU, and it is ranked 13th among all countries in the world in terms of gross domestic product. Thus, no danger exists that Applicant would not have the financial resources to pay the Award in this case. Additionally, Applicant has no history of non-compliance. Spain takes its international commitments seriously, and it intends to honour them, including the obligation under Article 53 of the ICSID Convention to abide by and comply with the terms of the Award in this case.[45]

52. Applicant stresses that it "*voluntarily, on its own initiative, confirmed its commitment to pay the Award if it is not annulled in this proceeding, specifically, by seeking authorization from the European Commission consistent with its obligations under EU law and regulations, and then to pay promptly upon receiving such authorization.*"[46]

**b. Claimants' position**

53. In response, Claimants state that numerous *ad hoc* committees have affirmed that the award of interests is not a valid factor to take into account when addressing arguments for a stay of enforcement. They cite *Eiser v. Spain*'s view that "*[t]he Committee considers that the arguments put forward by Spain in this regard are not a valid circumstance to substantiate a stay of enforcement of the Award. Post-award interests only compensate for the*

---

[44] Submission, ¶¶ 20–22, citing *Azurix Corp. v. Argentine Republic*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007, **Annex-031**. ¶ 40.

[45] Submission, ¶¶ 23–25.

[46] Reply, ¶ 72.

*deprivation of the principal until payment of the award, but they are not directly related to the issue of enforcement of the award*."[47]

54.     In addition, Claimants argue that even if the Committee regarded post-award interest as a circumstance that might affect the granting of a stay, the interest on the Award is accruing at a low rate consisting of "*an annual rate of just 0.234% pre-tax (compounded monthly)*".[48] As a consequence, the real value of the Award is eroding with each passing month, when compared against typical costs of capital or even against the current rate of Eurozone inflation. This compares to rates of 2.5% in *Eiser v. Spain* and 2.07% in *Antin v. Spain* ("*rates which are roughly 10 times the rate in the Award*"[49]). This lower rate provides an incentive for Spain to pay its other ICSID awards before it pays the Award in this case.[50]

55.     Claimants also indicate that Applicant has chosen its words carefully when stating that it "*will abide by its international obligations*". They argue that according to Applicant, these obligations include the ones under the State aid rules of the Treaty of the Functioning of the European Union ("**TFEU**"). Nevertheless, in Claimants' pending litigation to recognise and enforce the Award in the United States, Applicant has averred that "*it is prohibited from paying the Award*", citing "*the EC [European Commission], as the enforcement arm of [a] foreign state, has rendered a legally binding Decision that prohibits Spain from paying the award because doing so would violate the EU Treaties. European Commission Decision 2017/7384 ¶ 165.*"[51]

56.     Furthermore, Claimants submit that after their Opposition, Applicant added in its Reply a whole new argument based on the EU law "*prohibition*", claiming that EU law provides "*a real prejudice that could be caused to Spain (and third parties) if the Award is enforced now and later annulled*". Claimants argue that the apparent intention behind this statement

---

[47] Opposition, ¶¶ 77–78, citing *Eiser v. Spain*, ¶ 60.

[48] Opposition, ¶ 80, citing the Award, **Annex-001** to the Application for Annulment, ¶ 37(6). The Committee notes the actual text in the award on interest provides "*at the rate of 0.234%, compounded monthly*".

[49] Opposition, ¶ 80.

[50] Opposition, ¶ 80–81.

[51] Opposition, ¶¶ 85–87, citing *NextEra Energy Global Holdings B.V., et al. v. Kingdom of Spain*, Case 1:19-cv-01618-TSC (U.S. Dist. Ct., D.C.), Motion to Dismiss or Stay, NextEra's Petition to Enforce Arbitral Award, 11 October 2019 ("**Motion to Dismiss or Stay**"), **CL-221**, at p. 41.

— and the omission of any reference to EU State aid law — was to leave the Committee with the impression that Spain is a State that can and would pay the Award without conditions if its Annulment Application fails, but to later state that "*Spain is forbidden from making any payment*" of the Award unless and until it obtains clearance from the European Commission.[52]

57. Claimants add that the governing treaty text is clear and that the ICSID Convention does not include an exemption for EU State aid clearance, or other forms of internal or regional payment approvals.[53]

58. Claimants argue that a stay would inevitably impact on their enforcement efforts. As things stand, Spain is facing more than 40 ECT claims, of which at least 12 have resulted in damages awards. Claimants contend that there are at least eight pending proceedings in the United States alone to recognise and enforce ECT awards rendered against Spain (including the recognition proceedings that Claimants filed). All of those creditors are competing for the same limited pool of commercial assets that can be attached in satisfaction of their awards. Granting a stay of enforcement would put Claimants in a disadvantageous position compared to other claimants that may enforce their awards before, including the growing list of renewable energy investors holding non-ICSID awards against Applicant that are being enforced under the New York Convention (such as *Novenergia v. Spain* and *Foresight Luxembourg S.A.R.L. v. Kingdom of Spain).*[54]

59. Finally, Claimants submit that Applicant has been raising defence arguments before United States' courts that are in substance, issues of ICSID jurisdiction that were within the sole competence of the Tribunal (and which the Tribunal already decided), such as the question of whether the ECT applies to intra-EU disputes.[55] This issue illustrates the prejudice and delay that those proceedings will face if the stay is continued but the Award is later upheld. In addition, Claimants argue that Applicant's posture under the U.S. courts unmask the

---

[52] Rejoinder, ¶¶ 64–66, citing Reply, ¶ 99.

[53] Rejoinder, ¶ 68.

[54] Opposition, ¶ 91; *Foresight Luxembourg S.A.R.L. v. Kingdom of Spain*, Case No. 1:19-cv-03171-ER (S.D.N.Y., originally commenced 4 December 2018).

[55] Opposition, ¶ 93, citing Motion to Dismiss or Stay, pp. 41-43.

tensions between Applicant's competing arguments in two forums. Before the Committee, Applicant seeks a discretionary remedy under Article 52(5) while professing respect for its ICSID obligations under Articles 53 and 54. Before the U.S. District Court, Applicant seeks to deny Article 54's plain terms and contends that national courts may not enforce an ICSID award unless and until Applicant is given the opportunity to relitigate its jurisdictional challenges.[56]

### C. WHETHER A GUARANTEE SHOULD BE ORDERED

#### a. Applicant's position

60. Applicant submits that no guarantee should be required as a condition for the continuance of the stay of enforcement, since this would place the Award creditor in a better position that it would have been if an annulment proceeding had not been commenced, and it requires a high burden of proving that the Award creditor would suffer prejudice if the stay were continued.[57]

61. Finally, Applicant submits that Claimants have failed to meet the burden of proving that the stay should be conditioned on security, indicating that the same factors that support the grant of the stay also support the grant of that stay unconditionally and make the proposed conditions by Claimants unacceptable.[58]

---

[56] Opposition, ¶¶ 95–96.

[57] Submission, ¶ 26, citing *Víctor Pey Casado v. Chile*, ¶ 29 ("Claimants bear the burden of proving that security should be ordered and that, if it is not ordered, they will suffer a prejudice."), **Annex-030**; *Quiborax S.A. and Non-Metallic Minerals S.A. v. Plurinational State of Bolivia*, ICSID Case No. ARB/06/2, Decision on the Application to Terminate the Provisional Stay of Enforcement of the Award, 21 February 2017 ("***Quiborax v. Bolivia***"), ¶ 43 *(*"[I]t is Claimants' duty to prove the necessity of granting a guarantee if the Committee decides to continue the stay."); **Annex-032**; *Enron Creditors Recovery Corporation (formerly Enron Corporation) and Ponderosa Assets, L.P. v. Argentine Republic*, ICSID Case No. ARB/01/3, Decision on Claimants' Second Request to Lift Provisional Stay of Enforcement of the Award, 20 May 2009 ("***Enron v. Argentina***"), **Annex-036**, ¶ 45 ("*Another consideration is that a condition of security will often place the award creditor in a better position than it would have been in if annulment proceedings had not been brought, since the award creditor would not otherwise have had the benefit of such security*.").

[58] Reply, ¶ 124.

### b. Claimants' position

62. Claimants submit that Applicant's examples of past *ad hoc* committees that ordered a stay of enforcement without security even when there was a risk of the State's non-compliance with an ICSID award are distinguishable:

   a. The *Continental Casualty v. Argentina ad hoc* committee considered that the fact that both parties had applied for annulment of the award was "*a factor to which the Committee gives particular weight in deciding whether it is necessary or appropriate to impose a condition of security for any continuation of the stay*"….*That ad hoc committee also had regard to the fact that the award amount was very small (USD 2.8 million)... Neither circumstance applies in this case*".[59]

   b. The *Enron v. Argentina ad hoc* committee's decision not to order security was predicated on the "*exceptional*" circumstances of that case, including the fact that the case was already at an advanced stage where a decision on annulment was expected within six months.[60]

63. Claimants disagree with Applicant's position, stating that unconditional stays are rare and only granted where (i) the circumstances require a stay, and (ii) an annulment applicant proves that it will honour the award if its annulment application fails; neither factor applies to this case.[61]

64. In addition, Claimants state that posting security would not "*improve*" Claimants' position under the Award, since it would merely hold Applicant to its existing ICSID obligations. In support of this, Claimants cite the *Standard Chartered v. Tanzania* decision, which stated that "*[t]he Committee rejects the argument that security constitutes betterment. The lifting of the provisional stay or imposition of a guarantee are not punishments: the parties have a procedural right guaranteed by the ICSID Convention that allows them to request*

---

[59] Opposition, ¶ 120, citing *Continental Casualty Company v. Argentine Republic,* ICSID Case No. ARB/03/9, Decision on Argentina's Application for a Stay of Enforcement of the Award, 23 October 2009, **Annex-037,** ¶ 14.

[60] Opposition, ¶ 120, citing *Enron v. Argentina*, ¶¶ 41 and 45.

[61] Opposition, ¶ 110.

*annulment of an award, but this right cannot operate against the presumption of validity of awards rendered under the ICSID Convention.*"[62]

65. Likewise, the *Sempra v. Argentina ad hoc* committee stated that "[*T*]*he appropriate comparison is not with a scenario where the award debtor would not comply with its obligation under Article 53 (where a guarantee would obviously be "better"), but with one where the debtor would comply. In such case the guarantee would not place the award creditor in a better situation … if there is a risk that the award debtor – whether a State party or a foreign investor – would not comply with its obligations under Article 53, the safeguard inherent in provision of a guarantee would be fully warranted.*"[63]

66. Claimants assert that doubts over Spain's compliance with the Award require security as a condition for any stay.

67. Claimants conclude that the Committee should formally terminate the provisional stay of enforcement in accordance with ICSID Arbitration Rule 54 or, alternatively, the Committee should condition the stay on real and effective security in the form of either a bank guarantee, a standby letter of credit, or a capitalised escrow account pledged in favour of Claimants, for the full value of the Award including post-award interest, in each case provided through the branch of a recognised international bank located outside of the EU. In addition, Claimants request that should Applicant not provide acceptable security within 30 days of the Committee's decision, the stay should terminate automatically.[64]

68. Finally, Claimants also request that the Committee order Applicant to pay their costs incurred in defending its application for a continued stay, including attorney's fees and disbursements, as well as all associated costs of ICSID and the Committee.

---

[62] Opposition, ¶ 114, citing *Standard Chartered v. Tanzania*, ¶ 87.

[63] Opposition, ¶ 115, citing *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 5 March 2009 ("*Sempra v. Argentina*"), **Annex-041/ CL-208**, ¶¶ 95–96.

[64] Opposition, ¶¶ 124–125.

## III. THE COMMITTEE'S ANALYSIS

### A. APPLICABLE LEGAL STANDARDS

69. The ICSID Convention and the ICSID Arbitration Rules stipulate the basis for the applicable legal standard to be applied in a stay of enforcement.

70. As an initial matter, Article 53(1) of the ICSID Convention provides as follows regarding the status of an award rendered under the Convention:

> "The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention."[65]

71. After an award is rendered, pursuant to Article 52(1) of the ICSID Convention, "*[e]ither party may request annulment of the award by an application in writing addressed to the Secretary-General […]*".

72. A party seeking annulment may also request a stay of enforcement under Article 52(5) of the ICSID Convention, which states as follows:

> "If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request."

73. Under the ICSID Arbitration Rules, the relevant parts on stay of enforcement provide in Rule 54 as follows:

> "(2) If an application for the…annulment of an award contains a request for a stay of its enforcement, the Secretary-General shall, together with the notice of registration, inform both parties of the provisional stay of the award. As soon as the…Committee is constituted it shall, if either party requests, rule within 30 days on whether such stay should be continued;

---

[65] Notably, Article 26(8) of the Energy Charter Treaty, under which the Award that Applicant challenges was rendered, provides that *"[t]he awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute... Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards"*. CL-1.

unless it decides to continue the stay, it shall automatically be terminated.[…]

(4) A request…[for a stay]…shall specify the circumstances that require the stay.[…]"

74.    In determining whether to continue a stay, Article 52(5) of the ICSID Convention provides that "*[t]he Committee may, if it considers that the circumstances so require, stay enforcement of the award pending its decision.*"

75.    Although the Vienna Convention on the Law of Treaties ("**Vienna Convention**") as such is not applicable to the ICSID Convention, its provisions on treaty interpretation are widely regarded as declaratory of customary international law. Both Spain and the Netherlands are also contracting parties to the Vienna Convention. The Committee considers it appropriate to be guided by the General Rule of Interpretation in Article 31 of the Vienna Convention such that interpretation of relevant provisions of the ICSID Convention will conducted "*in good faith and in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose.*"[66]

76.    The Parties have extensively cited in support of their respective positions earlier *ad hoc* committee decisions that elaborated grounds to be considered when examining a request for stay of enforcement. The Committee finds that no *jurisprudence constante* can be discerned and prior decisions of other *ad hoc* committees are non-binding on this Committee. The Committee nevertheless believes that, subject to the specific facts of the relevant case, due consideration should be given to earlier cases where they are indicative of a certain line of jurisprudential consistency. The Committee's decision remains one based on the set of particular factual circumstances of the case at hand.

77.    As an initial matter, the Committee finds that the word "*may*" in Article 52(5) of the ICSID Convention grants wide discretion to decide whether to stay enforcement. General agreement exists among *ad hoc* committees in this regard.[67] The Committee holds that it

---

[66] Applicant's Annex-061, p. 12; CL-7.

[67] *Occidental v. Ecuador*, ¶ 47; *Víctor Pey Casado v. Chile*, ¶ 25; *Standard Chartered v. Tanzania*, ¶ 50; *Border Timbers v. Zimbabwe*, ¶ 77; *Libananco Holdings Co. Limited v. Republic of Turkey*, ICSID Case No. ARB/06/8, Decision on Applicant's Request for a Continued Stay of Enforcement of the Award, 7 May 2012 ("**Libananco v. Turkey**"), ¶¶ 41, 43; *Eiser v. Spain*, ¶ 46; the widely-referenced commentary on the ICSID Convention also explains

will exercise its wide discretion depending upon the circumstances of the case and its determination will be a case-specific, fact-specific inquiry.

78.   The Committee finds that the ICSID Convention and the ICSID Arbitration Rules do not provide guidance on the factors that an *ad hoc* committee should consider in determining whether to continue a stay of enforcement. It is only stipulated that either party may request the continuation of the stay, and the requesting party must establish "*circumstances that require*" such continuation.[68] The language of Article 52(5) of the ICSID Convention or Article 54(4) of ICSID Arbitration Rules does not specify the "*circumstances*" to be taken into account in determining whether the circumstances "*require*" a stay. What constitutes "*require*" is also undefined.

79.   From the text and context, the Committee could find no presumption in favour or against the continuation of stay of enforcement. In particular, the Committee could not extrapolate from the current ICSID Convention and Arbitration Rules that there is a presumption of "*automatic*" continuation of provisional stay without the need for substantiation.[69]

80.   The Committee holds the view that the general principle that the party seeking continuation of the stay must bear the burden to establish that circumstances exist that require such continuation.[70] It follows that the counterparty does not have to show circumstances that

---

that: "*[A] decision by the ad hoc committee on a request is discretionary. The Convention's wording ('the Committee may,…, stay enforcement') is clear in this respect….The* ad hoc *committee's discretion extends to whether it stays enforcement of part or all of the award and to the modification or termination of the stay.*" *The ICSID Convention: A Commentary*, Schreuer, C. H., Malintoppi, L., Reinisch, A. and Sinclair, A., Cambridge University Press, 2009 ("*Schreuer*"), **CL-203**, ¶ 593.

[68] *Schreuer* states that in conferring discretion to stay enforcement the "*criteria for the exercise of this discretion are the circumstances that may require the stay of enforcement.*" *Schreuer*, ¶ 594.

[69] A range of *ad hoc* committees have reached this conclusion. *MTD v. Chile*, ¶ 26; *CMS Gas Transmission Company v. Argentine Republic*, ICSID Case No. ARB/01/8, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 1 September 2006 ("*CMS v. Argentina*"), **Annex-034**, ¶ 35; *Sempra v. Argentina*, ¶ 27; *Ioannis Kardassopoulos and Ron Fuchs v. Georgia*, ICSID Case Nos. ARB/05/18 and ARB/07/15, Decision of the ad hoc Committee on the Stay of Enforcement of the Award, 12 November 2010 ("*Fuchs v Georgia*"), **Annex-038**, ¶ 26; *Libananco v. Turkey*, ¶ 43; *SGS v. Paraguay*, ¶ 82; *Total S.A. v. Argentine Republic*, ICSID Case No. ARB/04/01, Decision on Stay of Enforcement of the Award, 4 December 2014 ("*Total v. Argentina*"), **CL-205**, ¶ 76; *Ioan Micula, Viorel Micula and others  v. Romania*, ICSID Case No. ARB/05/20, Decision on Annulment, **CL-188**, ¶ 33; *OI European Group B.V. v. Bolivarian Republic of Venezuela*, (ICSID Case No. ARB/11/25), Decision on Stay of Enforcement of the Award, 4 April 2016 ("*OI European v. Venezuela*"), **Annex-046**, ¶ 89; *Border Timbers v. Zimbabwe*, ¶ 80.

[70] Other *ad hoc* committees that have held this as well include *Burlington v. Ecuador*, ¶¶ 74–75; *Bernhard von Pezold and others v. Republic of Zimbabwe*, ICSID Case No. ARB/10/15, Decision on Stay of Enforcement of Award, 24

require the lifting of the stay.[71] It cannot be said that absent "*exceptional*" circumstances a stay should be continued, nor do exceptional circumstances have to be shown for a stay to be maintained.[72] The Committee needs to be satisfied of the existence of circumstances in the particular case based upon the submissions of the Parties.

## B.    DECISION ON STAY

81.    In reaching its decision, the Committee considers the following issues as raised in the Parties' submissions:[73]

(1) Whether the merits of the Annulment Application need to be considered;

(2) Prejudice to Spain;

(3) Prejudice to the NextEra Entities; and

(4) Balance of considerations.

### (1)    Merits of the Annulment Application

82.    Spain asserts that its Annulment Application was brought in good faith, not dilatory, and well-grounded and should be considered when determining the continuation of the stay. The NextEra Entities on the other hand assert that *ad hoc* committees should not assess the merits of an annulment application when considering a continuation of the stay of enforcement application. The Committee agrees that save in such instances as when it could be said that the application for annulment is manifestly frivolous or obviously

---

April 2017, **CL-214**, ¶ 80; *SGS v. Paraguay*, ¶ 86; *OI European v. Venezuela*, ¶ 94; *Fuchs v. Georgia*, ¶ 26; and *Sempra v. Argentina*, ¶ 27.

[71] *Fuchs v. Georgia*, ¶ 46; *Border Timbers v. Zimbabwe*, ¶ 80.

[72] Submission, ¶ 4; With regard to the term "*exceptional*", both Parties acknowledge that it does not appear in the ICSID Convention or the Arbitration Rules." Reply, ¶ 21; Opposition, fn. 5.

[73] Other *ad hoc* committees have taken into account such factors as "*the risk of non-recovery of sums due under the award if the award is annulled, non-compliance with the award if the award is not annulled, any history of non-compliance with other awards or failure to pay advances to cover the costs of arbitration proceedings, adverse economic consequences on either party and the balance of both parties´ interests*". Annex-009, Updated Background Paper on Annulment for the Administrative Council of ICSID, 5 May 2016, ¶ 56.

unmeritorious,[74] the merits of the annulment proceedings is not something an *ad hoc* committee should be concerned with when determining a continuation of the provisional stay.[75] The Committee therefore makes no observation on the merits of Spain's Annulment Application in reaching the decision on the stay application.

83.   In any event, the Committee notes that Claimants have not suggested that Applicant's request to continue the stay was dilatory or not brought in good faith.

**(2)     Prejudice to Spain**

84.   Applicant is not taking the position that it is unable to pay or that payment of the Award would cause financial hardship to the State or its people. Instead, it relies primarily on the following two grounds of potential prejudice should a stay be lifted and Applicant subsequently succeed in the annulment proceeding:

> (1) that it would face difficulty or uncertainty in recoupment of any amounts paid to Claimants; and

> (2) that it would be exposed to liability and possible sanctions by EU regulators for breaching EU law and regulations.

85.   On the question of the possible inability or difficulty of recoupment should the award be subsequently annulled, Applicant has described Claimants as a "*long chain of instrumental companies with no actual assets*" that can be "*dissolved at any moment*". If enforcement action is necessary to obtain recoupment, Applicant would incur further costs as a result.

86.   At the hearing, Claimants' counsel accepted that the NextEra Energy Spain Holdings B.V. (Second Claimant) may not be a substantial company but pointed out that NextEra Energy

---

[74]   Rejoinder, ¶ 32 citing *Caratube International Oil Company LLP and Devincci Salah Hourani v. Republic of Kazakhstan*, ICSID Case No. ARB/13/13, Decision on the Stay of Enforcement of the Award, 12 December 2019 ("***Caratube v. Kazakhstan***"), ¶ 75, Annex-060; Opposition, ¶ 58. Numerous *ad hoc* committees have reached the same conclusion. *Fuchs v. Georgia*, ¶ 26; *Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award, 30 November 2004 ("***Mitchell v. DRC***"), ¶ 26; *Sempra v. Argentina*, ¶ 25; *Burlington v. Ecuador*, ¶ 71; *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic*, ICSID Case No. ARB/97/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award rendered on 20 August 2007, 4 November 2008  ("***Vivendi v. Argentina***"), CL-218, ¶ 39.

[75]   The *ad hoc* committees that have followed this reasoning include *Mitchell v. DRC*, ¶ 26; *MTD v. Chile*, ¶ 28; *CMS v. Argentina*, ¶ 37; *Total v. Argentina*, ¶ 83; *OI European v. Venezuela*, ¶ 115; *Standard Chartered Bank v. Tanzania*, ¶ 60; *Eiser v. Spain*, ¶ 57; *Antin v. Spain*, ¶ 83.

Global Holdings B.V. (First Claimant) is a substantial company that owns a portfolio of nine large wind projects across Canada, which it has been developing and operating since 2006. The First Claimant is in turn asserted to be owned by NextEra Energy Inc., a publicly-listed company on the New York Stock Exchange. It is said to be the world's largest generator of renewable energy from the wind and sun with a market capitalisation of approximately USD 125 billion.

87. A check on the website address given by Claimants in their submission (http://www.nexteraenergycanada.com), however, shows that the Canadian company owning the wind-farm projects is NextEra Energy Canada, LP, described as "*an indirect, wholly-owned subsidiary*" of "NextEra Energy Resources, LLC", and not the First Claimant. Equally confusing, Claimants' letter of 17 February 2020, which Applicant objected to, includes a diagram to explain Claimants' corporate structure but provides that a Dutch entity called "NextEra Canada" is the 100% owner of NextEra Energy Canada, LP and does not mention "NextEra Energy Resources, LLC".

88. The Committee accepts that risk of recoupment is a relevant factor when considering the continuation of a stay of enforcement. The fact that the ultimate owner of Claimants, at the top of a complex corporate chain, may be a large public-listed entity on the New York Stock Exchange, while offering some level of comfort, does not sufficiently offset the risk of recoupment that Spain may face. To address any such risk, Claimants have offered to undertake "*to promptly repay Spain any and all amounts received in satisfaction of the Award to the extent that the annulment application is successful and not to disburse or transfer any amounts received in satisfaction of the Award while the annulment proceeding is ongoing*"[76]. Such an undertaking would not dispel the risk of recoupment and its value remains uncertain given the questions raised by Claimants' corporate ownership structure.

89. Spain's second submission is that it has conflicting obligations between complying with EU law and the ICSID Convention. Its position is that unless the EU gives permission to make payment under the Award, it would be exposed to penalties imposed by the EU. If the stay is lifted and Spain made to pay the Award but the Award is subsequently annulled,

---

[76] Opposition, ¶ 73.

Spain would have to seek recoupment of the amount paid under the Award and pay penalties to the EU.

90.   While the Committee recognizes the conflicting predicament Spain faces, the Committee is equally conscious that the award creditor's right to be paid are final and binding under the ICSID Convention. In the Committee's view, while it is true that ending the stay could possibly expose Spain to the EU sanction, it does not remove the potential exposure or resolve the conflict between Spain's obligations under the ICSID Convention and its obligations to the EU. This possible exposure to penalty is at best a neutral factor and could not itself support Spain's case for a continuation of the stay of enforcement.

### (3)   Prejudice to the NextEra Entities

91.   The Committee notes that while Spain has the financial ability to pay the Award and expresses its commitment to honour its legal obligations, it has not yet made payment on any of the awards where stays of enforcement have been lifted. In the *Eiser v. Spain* case, for example, it appears payment has not occurred even though the stay was lifted more than two years ago. This casts plausible "*doubts [that] shroud*" the prospects of whether Spain will pay the Award in a timely manner.[77] To the extent that the NextEra Entities have to bear the risk of this uncertainty of payment, they would in fact suffer some prejudice.

92.   The key source of Spain's risk of non-payment is derived from the obligations it asserts it has under EU law. Spain's belief that it is conflicted by its obligations under EU law poses an objectively plausible risk of non-payment or, at a minimum, delayed payment. Spain in essence only offers to "*pay promptly upon receiving [EC] authorization*" if the Award is not annulled.[78]

93.   Spain suggests that such prejudice occasioned by any delay in payment "*would be remedied*" by the payment of interest as ordered in the Award should annulment be denied. While Spain has a procedural right to request annulment, which it has exercised, an award must be presumed to be valid until and unless it is annulled. An award creditor therefore has a

---

[77] Opposition, ¶ 84.
[78] Reply, ¶¶ 6.f), 72.

right to enforce it and receive the remedies as ordered as soon as it had been rendered. Absent annulment proceedings, this right should not be infringed. Depriving the award creditor of their rightful remedy denies them the opportunity to allocate the benefits of such remedy as they see fit. The Committee notes that the level of interest rate offered under the Award of 0.234 % is compounded on a monthly basis and amounts to 2.84% on an annual basis, which, contrary to Claimant's assertion, exceeds the 2.5% in *Eiser v. Spain* and 2.07% in *Antin v. Spain*. Even then, while post-award interest may provide some relief, it may not adequately compensate for the uncertainty, delay, and deprivation suffered by the award creditor.

94.    Claimants have also argued that they would be prejudiced by a stay of enforcement as it could "*push* [them] *to the back of the ever-lengthening queue of creditors*".[79] While this may theoretically be possible, the reality is that Spain has not only held back from payment to Claimants but to all other creditors as well. If in fact Spain has the financial ability to meet its obligations, it could not reasonably be suggested that Claimants would not be eventually paid, wherever Claimants may find themselves in the queue. The Committee therefore finds that such a possibility of being behind the queue of other creditors is not a significant risk factor that would be sufficient to support the lifting of the stay.

**(4)    Balance of Considerations**

95.    The Committee considers that it should balance the overall interests and circumstances such as the potential prejudice that each party would suffer if the stay is maintained or terminated. The Committee believes that a balance could be achieved by giving weight to Spain's concern for recoupment in the event the Award is annulled, while also taking into consideration the NextEra Entities' potential delay in receiving the fruits of the Award without immediate enforcement. The Committee proposes to do so by ordering a continuation of stay upon the condition that Spain provides an undertaking that, should the Award not be annulled, it will unconditionally and promptly pay the amount owed under the Award. If Spain fails to furnish such an undertaking within the time so prescribed (or

---

[79] Opposition, ¶ 92.

such extended time as the Parties so agree or the Committee so permits), the Committee's order for a conditional stay will thereafter be terminated.

96.   The Committee believes that such an undertaking from Spain would provide the NextEra Entities the assurance of prompt compliance should the Award be upheld and also would provide comfort to Spain by postponing any enforcement actions during the pendency of these proceedings, obviating the need for it to provide a security or guarantee, and minimizing its potential conflicting obligations. By continuing the stay subject to this undertaking, the Committee believes it appropriately balances the interests and any hardship asserted by or upon the Parties.

97.   The Parties do not dispute that the Committee has the discretionary power to condition the stay such as by means of a security. Given that the practice of *ad hoc* committees has been varied, particularly in recent years, statistics by themselves are of limited value in this case. Recent trends do suggest that more stays, if not denied, are being granted conditionally but this can hardly be considered *jurisprudence constante*.

98.   By letter of 25 February 2020, the Committee had previously given the Parties an opportunity to mutually-agree upon the terms of a similar undertaking, but, by email of 12 March 2020, the Parties informed the Committee that they were unable to reach an agreement. The Committee therefore settles the text of the undertaking as follows:

> "In the event, or to the extent, that annulment is not granted, the Kingdom of Spain agrees and undertakes that (1) it will in accordance with its obligations under the ICSID Convention recognize the Award rendered by the Tribunal as final and binding and will abide by and comply with the terms of the award; and (2) it will unconditionally and irrevocably pay the pecuniary obligations imposed by the Award to the NextEra Entities within ninety (90) days following the notification by the ICSID Secretariat of the Committee's Decision on annulment such that the NextEra Entities would be fully compensated, including interest, and would not need to engage in any action to recognize, enforce, or execute the Award under Article 54 of the ICSID Convention in any ICSID Contracting State."

99.   The Committee rules that if Spain does not or cannot provide the undertaking ordered herein within twenty (20) calendar days (or such time as the Parties agree or that the

Committee may extend) following the notification of this Decision, the stay on enforcement will thereafter be terminated.

## IV.    COSTS

100. Article 61(2) and Article 52(4) of the ICSID Convention and Rule 47(1), and Rule 53 of the ICSID Arbitration Rules grant the Committee discretion to allocate costs.

101. The Committee does not find it necessary to make a decision on costs at this preliminary stage of the proceedings. The Committee does note the Parties' respective positions on costs, and will take them into consideration when rendering its final decision in the annulment proceedings. The Committee requests that the Parties should maintain a separate account of their costs incurred during this phase of the proceedings.

## V.  DECISION AND ORDERS

102. For the foregoing reasons, the Committee hereby:

a.    DECIDES that stay of enforcement of the Award continues on a provisional basis under the condition that Applicant provides the following undertaking:

"In the event, or to the extent, that annulment is not granted, the Kingdom of Spain agrees and undertakes that (1) it will in accordance with its obligations under the ICSID Convention recognize the Award rendered by the Tribunal as final and binding and will abide by and comply with the terms of the award; and (2) it will unconditionally and irrevocably pay the pecuniary obligations imposed by the Award to the NextEra Entities within ninety (90) days following the notification by the ICSID Secretariat of the Committee's Decision on annulment such that the NextEra Entities would be fully compensated, including interest, and would not need to engage in any action to recognize, enforce, or execute the Award under Article 54 of the ICSID Convention in any ICSID Contracting State."

b.    ORDERS that Applicant will within twenty (20) days following the notification by the ICSID Secretariat of this Decision provide the Committee and Claimants

**(ICSID Case No. ARB/14/11) – Annulment Proceeding**

the undertaking in Paragraph 102.a. above, executed by a duly-authorised signatory with the full power to bind Applicant, such as the Minister of Finance, and counter-signed by the Attorney General;

c.    RESERVES its right to revisit at any time its decision and order, at the request of either party or by own its motion, to modify or terminate the stay, or vary or amend its decision regarding the undertaking;

d.    ORDERS that should Applicant not furnish the Undertaking in the terms as set out above in Paragraphs 102.a. and 102.b. above within the time so stipulated (or such mutually agreed upon time or time extended by the Committee), the stay so ordered will forthwith be terminated and Claimants shall thereafter be at liberty to take such action to enforce the Award as they deem fit; and

e.    RESERVES its decision on costs for a subsequent stage of the proceedings and dismisses all other requests.


Prof. Joongi Kim
President
On behalf of the Committee

Date: 6 April 2020