UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEXTERA ENERGY GLOBAL HOLDINGS B.V. *and* NEXTERA ENERGY SPAIN HOLDINGS B.V.,<br><br>      Petitioners,<br><br>      v.<br><br>KINGDOM OF SPAIN,<br><br>      Respondent. | No. 19-cv-01618-TSC |

### RESPONSE TO PETITIONERS' FOUR NOTICES OF SUPPLEMENTAL AUTHORITY

Spain respectfully hereby responds to Petitioners' four notices of supplemental authority/authorities, namely D.E. Nos. 27, 28, 30, and 32 (the "Notices").

Spain's submission is necessary to (i) update the Court regarding one of the purported authorities proffered by NextEra, (ii) provide a proper view of and context for the *ad hoc* annulment committee's decision on the extension of the provisional stay under the ICSID Rules in relation to the NextEra annulment proceeding, and (iii) correct Petitioners' mischaracterization of the D.C. Circuit's *Micula v. Government of Romania* decision.

**1. The Annulment of the *Eiser Infrastructure Limited and Energia Solar Luxembourg S.A.R.L v. Spain* Award**

In its first notice of supplemental authorities (D.E. No. 27), NextEra oddly purported to adopt arguments submitted to this Court by King and Spalding, LLP on behalf of 9Ren Holdings SARL in an unrelated action, including those relating to two foreign court rulings, one by a UK court and one by an Australian court. In particular, the Australian court ruling concerned the

enforcement of the award rendered in *Eiser Infrastructure Limited and Energia Solar Luxembourg S.A.R.L v. Spain*, ICSID Case No. Arb/13/36.  *See* D.E. No. 27-3.  However, just one week ago, an *ad hoc* committee annulled the very award that was the subject of the Australian enforcement action, rendering it of no effect. That decision is annexed hereto as **Exhibit 1**.

As a more general matter, Petitioners' reliance on these foreign cases also fundamentally cuts against Petitioners' opposition to Spain's motion to dismiss/stay the action.

*First*, in challenging Spain's *forum non conveniens* argument, NextEra asserted that this "is not, as Spain erroneously claims, a case involving 'foreign law,' but is governed entirely by 28 U.S.C. § 1650a…" D.E. No. 21, p. 36.  NextEra also asserted that the views of Europe's highest court, the CJEU, "were never relevant to the interpretation and validity of Spain's submission to arbitration…"  Ironically, NextEra offers no reason as to why the Court should rely on UK and Australian court decisions while ignoring the CJEU's *Achmea* decision.  Clearly, deeper considerations, including those operating on the international plane, are relevant.

*Second*, the *Eiser* annulment exemplifies the inefficiency and prejudice that inevitably result if a court affirms an ICSID award that may ultimately be annulled through annulment proceedings.

**2. The *Ad Hoc* Committee's Decision in the NextEra Annulment Proceeding Regarding the Continuation of the Provisional Stay Under the ICSID Rules Supports this Court Issuing a Stay**

On May 29, 2020, NextEra cited to a decision by the *ad hoc* committee in the NextEra annulment proceeding (the "Annulment Committee").  *See* D.E. No. 32, p 5.  NextEra labels the Annulment Committee an "authority" relevant to this Court's jurisdiction, going so far as to call the Annulment Committee's decision "conclusive" as to whether or not this Court should grant a stay.  *Id.*

NextEra's argument implies, without stating, that this Court's authority to stay this enforcement action is somehow restricted by the Annulment Committee. That argument is circular, as the annulment proceeding is simply another step in an arbitral process to which Spain has never agreed.

Spain's request for a stay and opposition to the Petition is premised on the need for further clarity from the European Union and the European legal system, not from the ICSID arbitral body. As was the case when Spain submitted its Reply, such a stay is warranted for the following reasons: 1) a stay is a threshold, non-merits issue that the Court can decide before ruling on jurisdiction; 2) a hasty resolution resulting in inconsistent rulings would not be in the interest of judicial economy; 3) the risk of premature enforcement could result in Spain being forced to try to recover assets seized during this action; 4) comity considerations favor a stay; and 5) the more prudent course of action is to allow courts within the EU to first decide these issues. *See* D.E. No. 26 (citing *Novenergia II Energy Environment (SCA) v. Kingdom of Spain*, 1-18-016866).

To the extent that it has any bearing on this Court's discretion, the decision of the Annulment Committee actually provides compelling independent support for this Court to stay these proceedings pending resolution of the annulment proceedings, if the Court elects not to dismiss for *forum non conveniens*. In fact, the Annulment Committee did order the stay, but "ordered a continuation of the stay of enforcement of the Award" conditioned upon Spain in essence waiving its rights before this Court and obliging itself to "unconditionally and irrevocably pay the pecuniary obligations imposed by the Award to the NextEra Entities within ninety (90) days following" the Annulment Committee's decision on the annulment. *See* D.E. No. 31-1, ¶ 11-13. Spain tried to give some assurance of its *bona fides* to the Annulment Committee, but these efforts were rejected because Spain, as noted by the Annulment Committee, would not

oblige itself and "<u>unconditionally and irrevocably pay</u> the pecuniary obligations imposed by the Award to the NextEra Entities within ninety (90) days following" the Annulment Committee's decision on the annulment.  *Id*. (emphasis added).

The Annulment Committee's reasoning and approach in this regard is extraordinary, and it should give the Court some insight into Spain's rightful concerns about the underlying award in this case and the merits of its jurisdictional objection.  To order a continuation of the stay—but to condition that continuation on Spain waiving its rights in this Court, in the courts of Europe (including before the CJEU), as well as its objections under the EU Treaties—dramatically betrays the Annulment Committee's attempt to undermine not only this Court's legitimate authority, but also the European courts' legitimate authority over NextEra (two Dutch companies) and Spain.  Incidentally, the question of ICSID jurisdiction under ECT is fundamentally premised upon the Dutch citizenship of NextEra, and Petitioners are undeniably subject to EU law and the EU Treaties.

In any event, the approach taken by the Annulment Committee, trying to force Spain to waive its rights by conditioning the stay it ordered upon such waiver, certainly undermines any legitimate exercise of authority that the ICSID may have (*quod non*).  An arbitral tribunal may not properly condition a favorable decision upon a party waiving its statutory defenses against enforcement in this Court, and this Court should not punish Spain (as NextEra requests) for refusing to capitulate to such an improper demand.

For all these reasons, the decision of the Annulment Committee supports Spain's request that this Court order a stay of this proceeding pending the ultimate resolution of the annulment proceedings.

### 3. Petitioners Mischaracterize the D.C. Circuit's *Micula v. Government of Romania* Decision

NextEra represents that the D.C. Circuit affirmed the district court opinion that: "(i) held, consistent with a long line of authority, that the Foreign Sovereign Immunity Act's arbitration exception confers subject matter jurisdiction over parties to enforce ICSID awards; [and] (ii) rejected Romania's attempts to use European law as a basis for declaring the arbitration award to be invalid." D.E. No. 32 (citing *Micula v. Government of Romania*, 2020 WL 26100916).

In reality, though, the D.C. Circuit held:

> The European Commission questions whether Romania's agreement to arbitrate was nullified by its ascension to the European Union. But as the district court carefully explained, <u>Romania did not join the EU until after the underlying events here, so the arbitration agreement applies</u>.

2020 WL 26100916, at *1 (emphasis added).

*Micula*, which carefully considered the impact of *Achmea* in answering the question of whether the relevant parties agreed to arbitrate, held it inapplicable because Romania was not a member of the EU when the events underlying the claims took place. That decision simply cannot be read to suggest, as NextEra claims, that this Court can find that a valid arbitration exists without considering *Achmea* at all, or that the Court cannot determine whether NextEra and Spain validly agreed to ICSID arbitration under EU law by virtue of the ECT. NextEra's citation to *Micula* as supporting its position is disingenuous at best.

In sum, none of NextEra's supplemental authorities speak to, let alone determine, the key issues in this dispute. NextEra attempts to invoke the Court's jurisdiction under the Foreign Sovereign Immunities Act based exclusively on a purported arbitration award where Spain challenges the existence of a valid agreement to arbitrate. The Court cannot properly determine whether an exception to Spain's immunity applies without determining whether Spain waived that

5

immunity or agreed to arbitrate with NextEra, and the Court cannot adjudicate that issue without immersing itself in complex and interconnected foreign law.  Rather than interpret foreign law in a manner that might contradict a future ruling by the CJEU and violate principles of comity, the Court should dismiss the action pursuant to *forum non conveniens* or, at a minimum, stay the action pending clarity from the EU's highest court, or at least the conclusion of the annulment proceedings.  In the event that the Court instead elects to rule on whether there was a valid agreement to arbitrate under EU law between NextEra and Spain, *Achmea* and other authorities cited by Spain establish that no such agreement exists.

Dated: June 19, 2020

                                        Respectfully submitted,

                                        By:    /s/ Matthew J. Weldon

Matthew J. Weldon (*pro hac vice*)
New York Bar Number 4832408
Luke E. Steinberger (*pro hac vice*)
New York Bar Number 5282181
599 Lexington Avenue
New York, New York 10022
(212) 536-4042
Matthew.Weldon@klgates.com

Brian D. Koosed
D.C. Bar Number 1034733
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9204
Brian.Koosed@klgates.com

Michael DeMarco (*pro hac vice*)
New York Bar Number 4142477
1 Lincoln St.
Boston, MA 02111
(617) 951-9111
Michael.DeMarco@klgates.com

*Counsel for Respondent Kingdom of Spain*

## CERTIFICATE OF SERVICE

I certify that on June 19, 2020, I caused a true and correct copy of the foregoing Response to be filed using the Court's Electronic Case Filing System ("ECF"). The document is available for review and downloading via the ECF system, and will be served by operation of the ECF system upon all counsel of record.

/s/ Matthew. J. Weldon
Matthew J. Weldon
