2020 WL 3393452
Only the Westlaw citation is currently available.
United States Court of Appeals,
District of Columbia Circuit.

PROCESS AND INDUSTRIAL
DEVELOPMENTS LIMITED, Appellee
v.
FEDERAL REPUBLIC OF NIGERIA and
Ministry of Petroleum Resources of the
Federal Republic of Nigeria, Appellants

No. 18-7154
|
Argued October 4, 2019
|
Decided June 19, 2020

Appeal from the United States District Court for the District of Columbia (No. 1:18-cv-00594)

**Attorneys and Law Firms**

Joseph D. Pizzurro argued the cause for appellants. With him on the briefs were Kevin A. Meehan and Juan O. Perla.

Michael S. Kim argued the cause for appellee. With him on the brief were Josef M. Klazen and Darryl G. Stein.

Before: Pillard, Wilkins, and Katsas, Circuit Judges.

**Opinion**

Katsas, Circuit Judge:

 *1  This appeal presents the question whether a district court, in considering a petition to confirm an arbitral award against a foreign sovereign, may order the sovereign to brief the merits before resolving a colorable assertion of immunity. We hold that such an order is immediately appealable and that the immunity question must be resolved first.

I

In 2010, Process and Industrial Developments Ltd. (P & ID) contracted with the Federal Republic of Nigeria to build and operate a natural gas processing facility in the Niger Delta. Nigeria agreed to supply gas for the plant and to build supporting infrastructure. The deal fell apart; P & ID never broke ground on the plant, and Nigeria never supplied any gas. By its terms, the contract was governed by Nigerian law. It provided for arbitration in London, in accordance with the Nigerian Arbitration and Conciliation Act.

P & ID sought arbitration. The arbitral panel bifurcated the proceeding and found Nigeria liable for breach of contract. Nigeria unsuccessfully challenged the liability determination in the London Commercial Court. Nigeria then challenged the determination in the Federal High Court of Nigeria, which set it aside as inconsistent with Nigerian law. P & ID, which never appeared in the Nigerian proceeding, asked the arbitral panel to hold that the Nigerian court had no jurisdiction to set aside the award. The panel agreed and, over Nigeria's objection, proceeded to consider damages. It awarded $6.597 billion plus interest, though a dissent would have limited the damages to $250 million. The award now stands at about $9 billion.

In 2018, the dispute reached the United States. P & ID filed a petition to confirm the award under the Federal Arbitration Act (FAA), which provides for the recognition and enforcement of awards governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention). 9 U.S.C. § 201. Nigeria moved to dismiss for lack of subject-matter jurisdiction. It invoked the Foreign Sovereign Immunities Act (FSIA), which makes foreign sovereigns generally "immune from the jurisdiction of the courts of the United States." 28 U.S.C. § 1604. In its petition, P & ID had argued that the waiver and arbitration exceptions to the FSIA apply to this case. In the motion to dismiss, Nigeria argued that neither exception applies.

Instead of responding to Nigeria's motion to dismiss, P & ID moved for an order requiring Nigeria to present all its defenses—both jurisdictional and merits—in a single response to the petition to confirm. P & ID argued that the FAA, in providing that petitions to confirm be treated as motions rather than pleadings, required joint briefing of immunity and merits issues. Nigeria countered that the FAA imposed no such requirement and that the FSIA required a threshold immunity determination before Nigeria could be compelled to litigate the merits. The district court sided with P & ID and ordered Nigeria to file a response containing its "merits arguments" in addition to its immunity and other jurisdictional defenses. *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, No. 18-594, 2018 WL 8997443, at *3 (D.D.C. Oct. 1, 2018) (*P & ID*).

**\*2** Nigeria filed a notice of appeal. P & ID asked the district court to forge ahead anyway because the appeal was frivolous. The district court refused, concluding that it was unresolved whether a foreign sovereign could seek immediate review of an order requiring it to brief the merits before its immunity assertion was resolved. P & ID then moved this Court to dismiss the appeal for lack of jurisdiction. A motions panel referred P & ID's motion to this merits panel.

Nigeria's appeal raises two related questions. The first is whether we have jurisdiction to review what P & ID characterizes as nothing more than a briefing order. The second is whether that order, by requiring Nigeria to defend the merits while its assertion of sovereign immunity remains unresolved, impermissibly risked abridging the immunity.

II

This appeal is about jurisdiction—both ours and that of the district court. We must begin with the question of our jurisdiction. *See, e.g.*, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). It turns on whether the district court's ruling fell within the collateral-order doctrine.

A

With narrow exceptions, we have jurisdiction to review only "final decisions" of the district courts. 28 U.S.C. § 1291. Ordinarily, a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). But under the collateral-order doctrine, section 1291 also applies to interlocutory orders "that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Mohawk Indus. Inc. v. Carpenter, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009) (quotation marks omitted).

Applying these criteria, this Court repeatedly has held that the collateral-order doctrine applies to the denial of a motion to dismiss on the ground of foreign sovereign immunity. *See, e.g.*, Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1126 (D.C. Cir. 2004); Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 91 (D.C. Cir. 2002); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990). In each of these cases, we explained that foreign sovereign immunity provides not only a defense from liability but also a shield "from trial and the attendant burdens of litigation." *E.g.*, Kilburn, 376 F.3d at 1126. So if the immunity is wrongly denied at the outset of a case, it cannot be vindicated after final judgment. *See* id.

In this case, the district court ordered Nigeria to present its immunity and merits arguments in one opposition to the petition to confirm. P & ID contends that the collateral-order doctrine does not apply because the court simply deferred ruling on the immunity defense rather than conclusively rejecting it. But the court did conclusively hold that, at least in the context of petitions to confirm arbitral awards, immunity issues need not be resolved until after the merits have been fully briefed. *See* P & ID, 2018 WL 8997443, at \*2–3. Then, in refusing to lift a stay pending appeal, the court again stressed that it *had* decided Nigeria could be "forced to submit a merits defense" while its assertion of immunity remained pending. J.A. 236. On appeal, Nigeria contends that an immunity defense must be resolved before a foreign sovereign can be compelled to defend on the merits. Because the district court conclusively rejected that contention, the first prong of the collateral-order doctrine is satisfied.

**\*3** Our decision in Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36 (D.C. Cir. 2000), is instructive. There, the district court denied a motion to dismiss on the ground of foreign sovereign immunity. The court concluded that the immunity question turned on disputed facts which, together with facts bearing on the merits, would need to be proven either on summary judgment or at trial. *Id.* at 39. On appeal, we held that the collateral-order doctrine was satisfied, reversed the district court's order, and remanded with instructions for the court to resolve the immunity question at the outset, even if that would require separate rounds of jurisdictional and merits discovery. *Id.* at 39–

41. We did not question our jurisdiction on the theory that the district court had merely deferred its final immunity determination until a later stage of the case. Instead, we stressed that the order had conclusively denied the asserted "immunity from suit," and we reviewed it on that basis. *Id.* at 39. To be sure, the order in *Phoenix Consulting* was styled as denying immunity pending further factual development, whereas the order here is styled as merely deferring a ruling on immunity. But the effect of the orders is identical—forcing a foreign sovereign to defend litigation on the merits despite an unresolved assertion of immunity. And appealability turns on what the order at issue does, not what it is called. *See*, *e.g.*, *Zapata v. Melson,* 750 F.3d 481, 484 (5th Cir. 2014); *Workman v. Jordan,* 958 F.2d 332, 336 (10th Cir. 1992).

The second and third prongs of the collateral-order doctrine are also satisfied. P & ID does not dispute this point, but we must independently confirm our jurisdiction. *See*, *e.g.*, *Steel Co.,* 523 U.S. at 95–96, 118 S.Ct. 1003. As to the second prong, we have held that an assertion of foreign sovereign immunity presents important questions distinct from the merits of a case. *See*, *e.g.*, *Kilburn,* 376 F.3d at 1126. As to the third prong, we have held that an improper rejection of foreign sovereign immunity is effectively unreviewable on an appeal from final judgment. *See*, *e.g.*, *id.* To be sure, an outright denial of immunity may inflict greater harms on a foreign sovereign than an order merely subjecting it to litigation burdens at the early stages of a case. But subjecting a foreign sovereign to litigation burdens is precisely what triggers the second and third prongs of the collateral-order doctrine in this context, and it is precisely what occurred here.

Other courts of appeals have reached similar conclusions. In *Butler v. Sukhoi Co.,* 579 F.3d 1307 (11th Cir. 2009), the Eleventh Circuit held that the collateral-order doctrine applied to an order (i) denying as "premature" a motion to dismiss on the ground of foreign sovereign immunity and (ii) requiring the foreign sovereign to submit to jurisdictional discovery and to file an answer. *Id.* at 1311. Likewise, in *United States v. Moats,* 961 F.2d 1198 (5th Cir. 1992), the Fifth Circuit held that the collateral-order doctrine applied to an order denying a motion to dismiss on unspecified grounds, because the "effect of the order" was to require the foreign sovereign "to defend the lawsuit." *Id.* at 1201. Here as well, the district court forced merits litigation while a threshold immunity assertion was left unresolved.

P & ID further contends that orders imposing litigation burdens on foreign sovereigns should be reviewable through mandamus, not the collateral-order doctrine. But mandamus is an option of last resort, available only if a party lacks adequate alternative remedies. *See*, *e.g.*, *Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380–81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004); *In re Stone,* 940 F.3d 1332, 1338 (D.C. Cir. 2019). Because the collateral-order doctrine is available to Nigeria here, mandamus is not.

P & ID cites *Mohawk Industries* and *In re Papandreou,* 139 F.3d 247 (D.C. Cir. 1998), to suggest the opposite —*i.e.*, that because mandamus is available, the collateral-order doctrine is not. Neither case supports that suggestion. In *Mohawk Industries*, the Supreme Court held that the collateral-order doctrine does not apply to orders rejecting assertions of attorney-client privilege, because those orders are effectively reviewable in appeals from final judgments. 558 U.S. at 106–07, 130 S.Ct. 599. Only after that ruling did the Court observe that mandamus might be available in "extraordinary circumstances." *Id.* at 607. *Papandreou* granted mandamus to rein in a discovery order requiring a foreign cabinet minister to sit for a deposition. 139 F.3d at 249–50. But that order addressed only jurisdictional discovery on the immunity issue; it did not require the foreign sovereign to litigate the merits. *See id.* Accordingly, the collateral-order doctrine would not have applied under the reasoning that we adopt here.

**\*4** Because the district court conclusively rejected Nigeria's assertion of immunity from having to defend the merits in this case, the collateral-order doctrine applies. We thus have jurisdiction to review the district court's order.

B

P & ID argues that we nonetheless lack jurisdiction because Nigeria's underlying assertion of immunity is not colorable. Such a colorability requirement has some doctrinal appeal: If an asserted federal question can be too insubstantial to support original jurisdiction, *see* *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946), then perhaps

an immunity assertion can be too insubstantial to support appellate jurisdiction. Moreover, a colorability requirement makes practical sense, to prevent parties from prolonging litigation by taking obviously meritless interlocutory appeals.

P & ID does not contend that the question Nigeria asks us to resolve—whether a foreign sovereign can be forced to brief the merits while its immunity assertion remains unresolved—lacks even colorable merit. Instead, P & ID contends that Nigeria's underlying immunity assertion must also be colorable. We agree with P & ID that the assertion must be colorable, but we conclude that it is.

To overcome Nigeria's assertion of immunity, P & ID first invokes the FSIA's arbitration exception. It provides that a foreign state is not immune from suit in a case brought to "confirm an award" made under an arbitration agreement between the foreign state and a private party, if the award is governed by a treaty like the New York Convention. *See* 28 U.S.C. § 1605(a)(6); *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999). Nigeria has at least a colorable argument that a confirmable "award" under the arbitration exception cannot include an award set aside by a court with supervisory jurisdiction over the arbitration—just as, for example, an executable "judgment" under Federal Rule of Civil Procedure 69(a)(1) presumably could not include a judgment reversed by the appropriate court of appeals. The New York Convention makes this point explicit. It provides that confirmation may be refused if an arbitral award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." N.Y. Conv. art. V(1)(e); *see TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 936 (D.C. Cir. 2007). It is at least possible that such a judicial order establishes an immunity defense as well as a merits one.

P & ID responds that the High Court of Nigeria did not have supervisory jurisdiction over the arbitration, and thus could not permissibly set aside the award, because the parties had agreed to arbitrate in London. We are not so sure. As noted above, the New York Convention recognizes that an award may be "set aside or suspended" by courts of the sovereign whose substantive law governs the arbitration, as well as by courts of the sovereign where the arbitration takes place. Here, that rule would seem to include the courts of Nigeria.

Alternatively, P & ID invokes the FSIA's waiver exception, which applies to any case in which the foreign sovereign "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). P & ID contends that Nigeria, by signing the New York Convention and agreeing to arbitrate this dispute in another signatory country, waived its immunity by implication. *Creighton* contains language supporting that position, but our holding was that the arbitration exception did not apply because the defendant there had not signed the Convention. *See* 181 F.3d at 123. Another of our decisions holds that the waiver exception does apply if the foreign sovereign has signed the Convention. *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019) (per curiam). But *Tatneft* was an unpublished disposition, so it does not bind future panels. *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011).

**\*5** For these reasons, we conclude that Nigeria's immunity defense is at least colorable enough to support appellate jurisdiction. We need not, and thus do not, determine whether Nigeria will ultimately prevail on that defense.[1]

III

We now consider whether the district court erred in requiring Nigeria to defend the merits before resolving its colorable immunity assertion. We conclude that it did.

A

It is axiomatic that foreign sovereigns enjoy immunity from litigation burdens as well as from the entry of adverse judgments. The Supreme Court repeatedly has explained that the "basic objective" of foreign sovereign immunity is "to free a foreign sovereign from *suit*." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, ––– U.S. ––––, 137 S. Ct. 1312, 1317, 197 L.Ed.2d 663 (2017); *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 479, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). Likewise, we repeatedly have described the immunity as one "from trial and the attendant burdens of litigation." *Kilburn*, 376 F.3d at 1126; *Price*, 294 F.3d at 91; *Foremost-McKesson*, 905 F.2d at 443. Another circuit has described it as an immunity "from the burdens of becoming involved in any part of the litigation process." *Moats*, 961 F.2d at 1203.

Because the immunity protects foreign sovereigns from suit, it must be decided "[a]t the threshold of every action" in which it is asserted. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). In *Helmerich & Payne*, the Supreme Court instructed that, even where the immunity turns on disputed factual questions, a court must "reach a decision" on it "as near to the outset of the case as is reasonably possible." 137 S. Ct. at 1317. Likewise, in *Phoenix Consulting*, we held that a district court must resolve immunity assertions "as early in the litigation as possible," even if that requires jurisdictional discovery and factual resolution of immunity questions to take place before the sovereign is required to defend the merits. 216 F.3d at 39–40. We explained that "to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" *Id.* at 39 (quoting *Foremost-McKesson*, 905 F.2d at 449). Confirming this point, the Supreme Court has said that "consideration of the merits [is] itself an infringement on foreign sovereign immunity." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 864, 128 S.Ct. 2180, 171 L.Ed.2d 131 (2008).

B

The district court gave two reasons why, in its view, Nigeria could be forced to defend the merits despite its unresolved immunity assertion. We disagree with both.

1

The district court reasoned that the FAA requires collapsing the immunity and merits inquiries. The FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. The district court held that this provision requires all immunity and merits questions to be addressed in a single round of briefing on the petition to confirm. *P & ID*, 2018 WL 8997443, at *1.

**\*6** This was error. By subjecting petitions for confirmation to "the law for the making and hearing of motions," the FAA simply directs that the initial filing of the party seeking confirmation must be treated as a motion rather than a pleading. *See TermoRio*, 487 F.3d at 940. But nothing in the FAA—or in motions practice—prohibits the party against whom a motion is made from filing countervailing motions. To the contrary, the FAA is silent on that point, and Federal Rule of Civil Procedure 7(b) permits any party to file a written motion stating the relief sought and the grounds for seeking it. So, we may treat Nigeria's motion to dismiss, which was styled as responding to a pleading under Rule 12(b)(1), as a proper motion under Rule 7(b).

We recognize that the FAA seeks to streamline the procedures for confirming arbitral awards. That is an admirable goal, and it might warrant consolidated briefing where no immunity is at issue. But the FAA does not prohibit the filing of defense motions. Accordingly, it does not prevent a foreign sovereign from seeking what the FSIA guarantees—resolution of an immunity assertion before the sovereign can be compelled to defend the merits.

The district court read *TermoRio* to suggest a contrary result. There, a foreign sovereign opposed confirmation of an arbitral award on various jurisdictional and merits grounds. The sovereign raised these issues in a motion to dismiss. 487 F.3d at 932. On appeal, the private party argued that the district court had erred in resolving disputed factual issues bearing on the merits. In rejecting that contention, we held that "motions to enforce arbitral awards should proceed under motions practice, not notice pleading." *Id.* at 940. And under motions practice, the district court properly considered the evidentiary materials submitted by the parties. *See id.* We further noted that there was no error even under pleading rules—both parties "had ample time to submit documents outside of the pleadings," so the motion to dismiss for failure to state a claim could have been converted to and resolved as a motion for summary judgment. *Id.* at 940–41.

*TermoRio* does not support the district court's order in this case. We did not hold that a party opposing confirmation may not seek affirmative relief through a motion of its own. And we did not hold that the FAA requires simultaneous briefing of immunity and merits issues. Indeed, the foreign sovereign had abandoned its immunity defense on appeal, *see* 487 F.3d at 932, so we decided no question about how and when that defense should be resolved. In the district court, the foreign sovereign had chosen to brief immunity and merits issues

in a single motion to dismiss. A foreign sovereign remains free to oppose a confirmation petition in that manner. And because a foreign sovereign may forgo its entitlement to a threshold determination of immunity—as did the sovereign in *TermoRio* by opting to brief all of its defenses together—that choice says nothing about whether the FAA requires simultaneous briefing of immunity and merits issues over the objection of a foreign sovereign.

2

The district court further reasoned that having to brief the merits would impose a lesser burden on Nigeria than would either discovery or a trial on the merits. Discovery and trial are "potentially arduous." *P & ID*, 2018 WL 8997443, at *2. But Nigeria was required only to "submit a single opposition" to the petition to confirm, and the FAA's streamlined procedures would "ensure swift resolution" of the petition after only one round of briefing. *Id.*

The district court understated the litigation burdens that its order imposed on Nigeria. The court was correct that confirmation proceedings generally are decided on a single round of briefing; discovery and trial, while sometimes available, are more the exception than the rule. *See* Restatement (Third) of the U.S. Law of Int'l Commercial and Inv'r-State Arbitration § 2.28 (Am. Law Inst., Proposed Final Draft 2019). But that consideration cuts against the district court's order, which required Nigeria to present all of its legal and factual defenses, in final form, together with all supporting evidentiary materials.

*7 P & ID's initial filings illustrate this point. They consisted not only of a 15-page petition to confirm and a 30-page merits brief in support, but also a declaration attaching over 500 pages of exhibits laying out the nearly ten-year history of the underlying contractual dispute, the London arbitration, and the competing judicial orders in the United Kingdom and Nigeria. In short, P & ID's initial filings constituted its complete case for entry of a $9 billion judgment. And the district court, without resolving Nigeria's colorable immunity assertion, required Nigeria to present its complete merits defense. The court's order thus abrogated the entirety of Nigeria's asserted immunity from having to defend this case.

More fundamentally, though, immunity does not turn on the extent of litigation burdens imposed on the foreign sovereign. Where immunity exists, it affords a complete protection "from *suit*," *Helmerich & Payne*, 137 S. Ct. at 1317, not just from whatever burdens we may decide are too many. After all, one of the "basic objectives" of the FSIA is to "respect the independence and dignity" of foreign sovereigns, not simply to ameliorate their litigation burdens. *Id.* at 1319 (quotation marks omitted). That is why the Second Circuit held that a denial of sovereign immunity was immediately appealable even in an action to confirm a foreign arbitral award, regardless of how small the "burdens of litigation" might have been in that case or context. *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 80 (2d Cir. 2013). Unless an immunity exception applies, the FSIA does not permit courts to contemplate how much merits litigation is too much. Instead, they must resolve colorable assertions of immunity before the foreign sovereign may be required to address the merits at all.

IV

Because we have jurisdiction to consider the immunity question presented, we deny P & ID's motion to dismiss this appeal. And because the district court impermissibly ordered Nigeria to brief the merits while its colorable immunity assertion remains pending, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*

**All Citations**

--- F.3d ----, 2020 WL 3393452

**Footnotes**

1  P & ID asks us to conclusively resolve the underlying immunity issues in this appeal. But the district court did not address those issues, and we generally decline to consider questions not passed upon below. *Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009). Resolving the immunity questions here would be particularly inappropriate given their complexity and the limited attention that they received in the briefing on appeal.

**End of Document**                                         © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:19-cv-01618-TSC   Document 36-1   Filed 06/30/20   Page 7 of 7
**Process and Industrial Developments Limited v. Federal Republic..., --- F.3d ---- (2020)**

**WESTLAW**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.                                7