UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                                :
NEXTERA ENERGY GLOBAL HOLDINGS                                  :
B.V. and NEXTERA ENERGY SPAIN                                   :
HOLDINGS B.V.,                                                  :
                                                                :
                              Petitioners,    :   Civil Action No. 19-cv-01618-TSC
                                                                :
              v.                                                :
                                                                :
KINGDOM OF SPAIN                                                :
                                                                :
                              Respondent     :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

**PETITIONERS' RESPONSE TO NEW AUTHORITY
SUBMITTED BY RESPONDENT THE KINGDOM OF SPAIN**

Petitioners hereby respond to Spain's June 30, 2020 Notice of Supplemental Authority, *Process & Industrial Developments, Ltd. v. Federal Republic of Nigeria*, No. 18-7154, 2020 WL 3393452 (D.C. Cir. June 19, 2020) ("*P&ID*"). This decision affords absolutely no support to Spain's position.

Although, as Spain notes, *P&ID* involved an arbitration award rendered against a sovereign, Spain all but ignores the actual holdings in *P&ID*. *P&ID* was an interlocutory appeal from a case management order by the District Court, issued in a petition to confirm a commercial arbitration award rendered by a London tribunal. As such, the petition was governed by the 1958 New York Convention on Recognition and Enforcement of Foreign Awards (9 U.S.C. § 201).

The case management order in *P&ID* established a timetable for consideration of the merits of the petition, along with Nigeria's purported defenses to award enforcement based on the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et seq. ("FSIA"). In effect, the case management

order meant that the FSIA-based defenses were to be adjudicated alongside all of the "merits" issues in the case.  *See* 2020 WL 3393452, at *1.  Nigeria appealed the case management order, and the petitioner sought to dismiss the appeal for lack of appellate jurisdiction.

The D.C. Circuit thus was presented with two questions:  (i) whether appellate jurisdiction existed to hear an interlocutory appeal; and (ii) if so, whether the case management order should be reversed as impinging upon Nigeria's right to assert FSIA defenses.  It held, first, that appellate jurisdiction existed because Nigeria had advanced "colorable" objections based on the FSIA, *id.* at *4, and, second, that the District Court had committed "error" insofar as its case management order had improperly deferred adjudication of Nigeria's FSIA-based defenses.  *Id.* at *6.

The D.C. Circuit's holdings on this point have no relevance or applicability to the present case.  Petitioners have never argued for – and this Court has never issued – an order deferring consideration of Spain's FSIA-based objections in this case.  On the contrary, ever since Spain presented these objections as part of its October 7, 2019 Motion to Dismiss, Petitioners have urged the Court to rule immediately upon them.  Moreover, Spain here has urged, *as an explicit alternative* to dismissal on sovereign immunity grounds:  (i) dismissal based upon *forum non conveniens*; and (ii) a discretionary stay of the enforcement petition.  *See* Spain Oct. 11, 2019 Mem. at 16 (arguing for a stay because, "[w]hile courts generally begin by assuring themselves of jurisdiction, '*in rare cases . . . they may avoid a jurisdictional analysis and render a decision on a non-jurisdictional ground*'" (emphasis added) (citation omitted)); *id.* at 19 (urging that "[t]he Court *[m]ay [d]ismiss for [f]orum [n]on [c]onveniens [w]ithout [r]uling [o]n [i]ts [j]urisdiction*" and that "*[j]ust as courts can properly grant a stay without ruling on its jurisdiction,* so too can the Court dismiss the matter entirely pursuant to *forum non conveniens*") (emphasis added).  Having thus explicitly invited the Court to adjudicate these issues *ahead of* or *in substitution for*

2

its FSIA-based defenses, Spain has expressly waived the procedural objection taken by Nigeria in *P&ID*.

Unable to rely on the actual holdings in *P&ID*, Spain's June 30, 2020 submission seeks instead to infer support from certain *dicta* in the opinion. It claims, for example, that the D.C. Circuit somehow "expressly disclaimed" its prior decision in *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999) concerning the FSIA "waiver" exception. Spain June 30, 2020 Sub. at 2-3. In reality, *P&ID* did not "disclaim" *Creighton*, explicitly or implicitly. Rather – and for the sole purpose of determining whether it possessed appellate jurisdiction in an interlocutory appeal – the D.C. Circuit analyzed whether the Nigerian government had presented an FSIA objection that was "at least colorable enough" (i.e. non-frivolous) to "support appellate jurisdiction" for reviewing the case management order in that case. *See P&ID*, 2020 WL 3393452, at *5. The petitioner, P&ID, had relied upon *Creighton* to argue that Nigeria's acceptance of the New York Convention – which contemplates mutual enforcement of commercial arbitration awards under a defined set of parameters – amounted to a waiver of sovereign immunity for purposes of 28 U.S.C. § 1605(a)(1). The D.C. Circuit did *not* reject P&ID's argument, or reach its merits. On the contrary, it observed that "***Creighton* contains language supporting [P&ID's] position,**" but noted that the actual "holding" in *Creighton* "was that the arbitration exception did not apply because the defendant there had not signed the Convention." *P&ID*, 2020 WL 3393452, at *4 (citing *Creighton*, 181 F.3d at 123). The D.C. Circuit also considered P&ID's reliance upon its unpublished opinion in *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019) (per curiam), *cert. denied sub nom. Ukraine v. Tatneft*, 140 S. Ct. 901 (2020), interpreting the FSIA waiver exception, but noted that this "was an unpublished disposition, so it does not bind future panels." *P&ID*, 2020 WL 3393452, at *4.

As such, and in the absence of a definitive D.C. Circuit decision on this aspect of the New York Convention, Nigeria had presented a "non-frivolous" argument (i.e. one that was not "obviously meritless," s*ee id.* at *4) that it had not waived sovereign immunity.

None of this undermines NextEra's reliance upon the FSIA waiver exception in this case. First, as the D.C. Circuit opinion in *P&ID* expressly states, the language in *Creighton* supports the view that, *in principle*, a state's adherence to a multilateral enforcement convention (which, as here, contemplates recognition and enforcement of awards in each member state) will operate as a waiver of sovereign immunity. As Petitioners have pointed out, there is a plethora of persuasive D.D.C. and sister Circuit authority supporting the same conclusion.[1]

Second, as NextEra has pointed out, there is highly persuasive authority, including from the Second Circuit, that a Contracting State's adherence to the ICSID Convention – in particular the enforcement regime in articles 53 and 54 – operates as a waiver of sovereign immunity.[2] This issue will never arise in *P&ID*, because that case concerns a New York Convention award, which is analytically distinct from an ICSID Convention award. *See* NextEra's Memorandum in Opposition to the Kingdom of Spain's Motion to Dismiss or Stay, and Reply in Further Support of its Petition to Confirm an International Arbitration Award at 43, n. 42 (Dkt. No. 21). As Spain

---

[1] *See* Petitioners' Dec. 19, 2019 Mem. of Law at 15-16 (citing, *inter alia*, *Tatneft v. Ukr.* 301 F. Supp. 3d 175, 192 (D.D.C. 2018), *aff'd*, 771 F. App'x 9 (D.C. Cir. 2019), *cert. denied sub nom. Ukr. v. Tatneft,* 140 S. Ct. 901 (2020); *Stati v. Republic of Kaz.*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 578 (2d Cir. 1993)). Spain's claim that Petitioners presented *Creighton* as "settled law" (Spain June 30, 2020 Sub. at 2) overlooks that Petitioners carefully addressed and distinguished the competing authorities proffered by Spain on this issue. Petitioners' Dec. 19, 2019 Mem. of Law at 15 n.11.

[2] *See* Petitioners' Dec. 19, 2019 Mem. of Law at 15-16 (citing *Blue Ridge Invs. L.L.C. v. Republic of Arg.*, 735 F.3d 72, 84 (2d. Cir. 2013) ("[I]n light of the enforcement mechanism provided by the ICSID Convention," signatory states "'must have contemplated enforcement actions in other [Contracting] [S]tates,' including the United States") (second and third alterations in original, citation omitted)); *see also Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) ("[C]ourts recognized that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity [with respect to the enforcement of any arbitration award entered pursuant to the ICSID Convention].").

itself admits, a New York Convention analysis "may not be relevant in this case brought under the ICSID Convention."  Spain June 30, 2020 Sub. at 4.

*P&ID* is also irrelevant to the application of the FSIA "arbitration exception."  In that case, the award holder argued that the "arbitration exception" applied because it was bringing an action to enforce an award under the New York Convention.  Nigeria contended that "a confirmable 'award' under the arbitration exception cannot include an award set aside by a court with supervisory jurisdiction over the arbitration."  *P&ID*, 2020 WL 3393452, at *4.  The D.C. Circuit did not endorse the argument; instead it held that this was "colorable" enough to sustain appellate jurisdiction.  *Id.* at *4.

Whatever its ultimate merit (or lack thereof), the defense urged by Nigeria is not relevant to (or even comparable to) the issues arising in this case, which are governed by the ICSID Convention.  As *P&ID* notes, the New York Convention grants the national courts of Contracting States a degree of "supervisory jurisdiction" over an arbitral award.[3]  The ICSID Convention, by contrast, positively eschews any such role for the national courts:  it provides (in article 54) that "[e]ach Contracting State [to the ICSID Convention]," including the United States, "shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  ICSID Convention art. 54(1).  Under the ICSID Convention – which Spain has signed – there is thus *zero* supervisory role for any national court *in any jurisdiction*.  The national courts of ICSID Contracting States may not review or otherwise second-guess the internal findings in an

---

[3] *P&ID*, 2020 WL 3393452, at *4.  *See* New York Convention, art. V(1)(e) (confirmation of an award may be refused if an arbitral award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."); *P&ID*, 2020 WL 3393452 at *4.  On its face, this gives the courts of the seat of arbitration, or the courts of the country whose procedural law applies to the arbitration, the power to set aside the award.  There is no corresponding provision in the ICSID Convention.

*(cont'd)*

5

ICSID Convention award.[4] It follows that the existence or validity of an ICSID award (whether for FSIA purposes or otherwise) cannot be impugned in post-award litigation. *P&ID*'s dicta on the FSIA "arbitration exception" is thus completely irrelevant to the present case.

Even less availing are Spain's attempts to use *P&ID*'s dicta to support its discretionary stay application. That very stay application waives the point of immunity raised in *P&ID*. Spain overlooks that, if the ICSID Convention creates any analog to the "court with supervisory jurisdiction over the arbitration" discussed in *P&ID*, *P&ID*, 2020 WL 3393452, at *4, it is the *ad hoc* annulment committee established by Article 52 of the ICSID Convention, which has certain limited powers to review and potentially set aside an award rendered by a tribunal constituted under the ICSID Convention.[5] As Petitioners have shown, the *ad hoc* annulment committee in this case, exercising its exclusive power under Article 52(5), has determined that enforcement of NextEra's award should *not* be stayed.[6] In this respect, therefore, Spain's reliance upon the *P&ID* dicta turns to bite it.

Finally, Spain's attempt to use P&ID to support its *forum non conveniens* argument is patently frivolous. *P&ID* did not address *forum non conveniens*. Indeed, it is ironic that Spain has

---

[4] *See* Petitioners' Dec. 19, 2019 Mem. of Law at 20 & n. 13 (citing *Micula v. Gov't of Rom.*, 404 F. Supp. 3d 265, 269 (D.D.C. 2019), *aff'd,* 805 F. App'x. 1 (D.C. Cir. 2020) (unpublished); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, Civil Action No. 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *TECO Guat. Holdings, LLC v. Republic of Guat.*, Civil Action No. 17-102 (RDM), 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018) , *appeal filed*, No. 19-7153 (D.C. Cir. Dec. 9, 2019), *stay denied pending appeal*, 2020 WL 2621225 (D.C. Cir. May 21, 2020); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 100, 118 (2d Cir. 2017)).

[5] *See* Petitioners' Dec. 19, 2019 Mem. of Law at 43 n. 42.

[6] *See* Petitioners' Notice of Two Supplemental Authorities In Support of Petition to Confirm an International Arbitration Award and in Opposition to Spain's Motion to Dismiss or Stay (Dkt. No. 32), Ex. 1 (May 28, 2020 Decision of the *NextEra* ICSID *Ad Hoc* Committee lifting the provisional stay). Although Spain made a number of remarkable (indeed combative) statements about the May 28, 2020 *ad hoc* committee decision, it could not deny that the *ad hoc* committee is the only body authorized under the ICSID Convention to determine whether the Award should be stayed pending the annulment application.

*(cont'd)*

latched upon this latest decision of the D.C. Circuit, while failing utterly to distinguish the *controlling* D.C. Circuit authority, *TMR Energy Ltd. v. State Property Fund of Ukraine,* 411 F.3d 296 (D.C. Cir. 2005) squarely holding its *forum non conveniens* plea to be impermissible.[7]

For the above reasons, Spain's reliance on *P&ID* is misplaced in every respect.

Dated: July 6, 2020
Washington, D.C.

Respectfully submitted,

/s/ Bradley A. Klein
Bradley A. Klein
D.C. Bar Number 973778
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
(202) 371-7000
bradley.klein@skadden.com

Timothy G. Nelson (appearing *pro hac vice*)
New York Bar Number 3060175
Amanda Raymond Kalantirsky (appearing *pro hac vice*)
New York Bar Number 4812418
Aaron Murphy (appearing *pro hac vice*)
New York Bar Number 5604459
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
(212) 735-2000 (fax)
timothy.g.nelson@skadden.com
amanda.raymond@skadden.com
aaron.murphy@skadden.com

David Herlihy (appearing *pro hac vice*)
New York Bar Number 4167920
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM UK LLP

---

[7] *See* Petitioners' Dec. 19, 2019 Mem. of Law at 4, 14, 33 n.34.  Spain's Reply makes a number of attempts to distinguish *TMR*, which in Petitioners' view are patently unsustainable, but Petitioners will refrain from addressing the issue further unless directed.

40 Bank Street
Canary Wharf
London E14 5DS
ENGLAND

*Attorneys for NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V.*