UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **NEXTERA ENERGY GLOBAL HOLDINGS B.V.**, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> **KINGDOM OF SPAIN**, <br><br> Respondent. | Civil Action No. 19-cv-01618 (TSC) |

## MEMORANDUM OPINION

Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (NextEra) seek to enforce a € 290 million arbitral award issued by the International Centre for Settlement of Investment Disputes (ICSID) against Respondent, the Kingdom of Spain. Spain moves to dismiss or stay the proceedings until the ICSID Tribunal decides on its petition to annul. (ECF No. 15.) This court agrees with other courts in this district that "it is wiser to . . . stay these proceedings pending the opinion of the ICSID regarding Spain's petition to annul." *See Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 36 (D.D.C. 2019).

For the reasons stated below, the court finds that a temporary stay is warranted, and will therefore GRANT Spain's motion to stay and deny, without prejudice, Spain's motion to dismiss.

## I. BACKGROUND

NextEra is an investor in solar power incorporated in the Netherlands. (ECF No. 1, Petition ¶¶ 4, 12.) In 2007, it invested approximately € 750 million in two concentrated solar energy projects in Spain to capitalize on Spain's guaranteed tariffs for renewable energy

producers. (*Id.* ¶ 13.) Spain later changed its regulations and "fundamentally and radically changed the investment regime" on which NextEra relied. (*Id.* ¶ 14.) These regulatory changes allegedly caused NextEra significant harm, and the company sought to arbitrate the dispute with Spain under the Energy Charter Treaty (ECT). (*Id.* ¶ 18.)

The ECT is a multilateral treaty signed by fifty-four nations and organizations, including Spain and the Netherlands, and is intended to promote international cooperation in the energy sector. (ECF No. 1-6, ECT.) Article 26 of the ECT provides that "[d]isputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former" may be submitted to arbitration. (*Id.* at 53–57.)

In 2014, NextEra initiated arbitral proceedings against Spain in front of a three-member ICSID[1] tribunal, claiming that the changes Spain made to its regulations violated Article 10(1) of the ECT, which obligates contracting states to provide investors with "fair and equitable treatment." (Petition ¶¶ 18–20.) The tribunal found Spain liable for breaching Article 10(1) and ordered Spain to pay over € 290 million in damages. (*Id.* ¶¶ 20–21.)

While ICSID awards cannot be appealed, a party may apply to the ICSID annulment committee to annul the award on limited grounds. Spain applied to annul the award, triggering an automatic, provisional stay of enforcement of the award. (ECF No. 15-2 at 2.) Recently, the annulment committee terminated the stay of enforcement because Spain had not "recognize[d] the Award rendered by the Tribunal as final and binding" and did not agree to "unconditionally and irrevocably pay" the award within ninety days of a final decision by the annulment

---

[1] The ICSID Convention is a multilateral treaty created to facilitate foreign investments to which the United States, Spain, and the Netherlands are parties. It provides a mechanism for the resolution of investment disputes in front of an independent arbitral tribunal. (ECF No. 1-5, ICSID Convention, at 22.)

committee.  (ECF 32-1 at 5–7.)  In deciding to lift the stay, the annulment committee did not consider the merits of Spain's application and the final decision on the annulment of the award is still pending.  (*Id.*)

## II.   DISCUSSION

### A. Jurisdiction

Spain moves to dismiss on several grounds, including *forum non conveniens* and lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act because no arbitration agreement exists.  (ECF No. 15, Resp. Br. at 19–30.)  Neither side challenges the court's power to enter a stay.  Nonetheless, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Notwithstanding this obligation, a court may decide "certain non-merits, nonjurisdictional issues . . . because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks and citation omitted)).  When confronted with such a non-merits, nonjurisdictional threshold issue, and "when considerations of convenience, fairness, and judicial economy so warrant," a district court can "bypass[] questions of subject-matter and personal jurisdiction." *Sinochem Int'l Co.*, 549 U.S. at 432.

Courts in this district have held that stays are a threshold, non-merits issue which a court may consider before resolving jurisdictional issues.  *See Gretton Ltd. v. Republic of Uzbekistan*, No. 18-cv-1755, 2019 WL 464793, at *2–3 (D.D.C. Feb. 6, 2019) (staying petition to enforce an arbitral award before determining subject-matter jurisdiction); *Hulley Enters. Ltd. v. Russian Federation*, 211 F. Supp. 3d 269, 277–80 (D.D.C. 2016) (same) ("A stay of proceedings in this

case is exactly the type of nonmerits action the *Sinochem* decision contemplates."); *Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*, 144 F. Supp. 3d 115, 118–19 (D.D.C. 2015) (staying an action before agency decision and before determining subject-matter jurisdiction). Accordingly, the court will resolve the threshold stay issue before the thornier jurisdictional issues, which involve sovereign immunity and international treaties.

### B. Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). District courts "have broad discretion" in deciding whether to stay proceedings "pending the resolution of independent legal proceedings." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C.2003) (citing *Landis*, 299 U.S. at 254). In considering a stay, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Government of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55). The party seeking the stay bears the burden and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Philipp v. Federal Republic of Germany*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting *Landis*, 299 U.S. at 255) (internal quotation marks omitted). And, as here, when a party seeks an indefinite stay, the stay "must be supported by 'a balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev.*, 668 F.3d at 732. A court may not "order[] a stay 'of indefinite duration in the absence of a pressing need.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

Here, the court's interest in judicial economy favors a stay. "Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005) (quoting *Nat'l Shopmen Pension Fund v. Folger Adam Sec.*, 274 B.R. 1, 3 (D.D.C. 2002)). Because Spain's response to NextEra's petition raises many of the same arguments already before the arbitral tribunal, the outcome of the annulment proceedings "may affect this Court's determinations, at a minimum, by virtue of the[ir] persuasive value." *Hulley Enters. Ltd.*, 211 F. Supp. 3d at 284; *cf. Clientron Corp. v. Devon IT, Inc.*, No. 13-cv-05634, 2014 WL 940406, at *5 (E.D. Pa. Mar. 10, 2014) (explaining a stay was not warranted where the result of the foreign proceedings would have no effect on the confirmation proceedings). A hasty resolution resulting in inconsistent rulings is not in the interest of judicial economy.

In addition, the international stakes in this action favor a stay. Spain's request for a stay "is premised on the need for further clarity from the European Union and the European legal system" regarding the arbitral tribunal's jurisdiction. (ECF No. 33 at 3.) This court is "loath to wade into this territory unnecessarily," and agrees the more prudent course is to refrain from delving into determinations on EU law at this stage. *Masdar*, 397 F. Supp. 3d at 40 (noting in a case against Spain raising similar issues that "considerations of comity are particularly resonant here, given that resolving this case mandates addressing a conflict between decades-old treaties and newly minted EU case law").

NextEra contends that because the annulment committee lifted its stay on enforcing the award, this court should not stay this case, even though no decision has been issued on the annulment petition's merits. (ECF No. 21, Pet. Br. at 43; ECF No. 32, Not. Supp. Authority, at 4.) Indeed, NextEra appears to contend that this court's inherent authority to stay cases is limited

by the ICSID's determination to lift the stay. (Not. Supp. Authority at 4.) NextEra cites no caselaw to support this contention. (*Id.*) And courts in this district have issued stays, even where the ICSID lifted its stay on enforcing an award before issuing a decision in annulment proceedings. *See* Minute Order, *Infrastructure Servs. Lux. S.A.R.L. and Energia Termosolar B.V. v. Kingdom of Spain*, No. 1:18-cv-01753 (D.D.C. July 15, 2020) (order continuing stay on proceedings despite the ICSID lifting its provisional stay); *Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*, No. 18-cv-2395, 2020 WL 2996085, at *3–4 (D.D.C. June 4, 2020) (staying proceedings pending annulment proceedings before the ICSID, despite the annulment committee terminating its stay).

Finally, balancing the hardships to each party also favors a stay. Spain would be burdened by having to litigate the validity of arbitral awards in two forums. Moreover, the risk of premature enforcement could result in Spain trying to recover assets seized during this action if it were to prevail in the annulment proceedings. *See In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 118 (D.D.C. 2015). NextEra contends that the annulment committee will consider this risk in making its decision, and that it will suffer prejudice from continued delay in recovering its award. (Pet. Br. at 54.) But if NextEra ultimately prevails it will likely be compensated for any delay because the award includes interest. (Petition ¶ 21.) Thus, the hardship to Spain, which could be significant, outweighs the hardship to NextEra.

In sum, Spain has met its burden to show a "pressing need" for a stay pending the outcome of the annulment proceedings. However, in an effort to ensure that the proceedings before this court are not unduly delayed, the court, by separate order, will provide for prompt and

regular review of the ongoing proceedings before the ICSID and, if NextEra prevails in those proceedings, will promptly address the merits in this case.

### III.   CONCLUSION

For the reasons stated, the court will GRANT Respondent's motion to stay and proceedings are stayed until resolution of the current annulment proceedings before the *ad hoc* committee. The court will also deny, without prejudice, the pending motion to dismiss. A corresponding Order will issue separately.

Date: September 30, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge