# EXHIBIT 32

RAVIL

JUDGMENT OF THE COURT

20 May 2003 *

In Case C-469/00,

REFERENCE to the Court under Article 234 EC by the Cour de cassation (France) for a preliminary ruling in the proceedings pending before that court between

Ravil SARL

and

Bellon import SARL,

Biraghi SpA,

on the interpretation of Article 29 EC,

* Language of the case: French.

I - 5085

THE COURT,

composed of: G.C. Rodríguez Iglesias, President, J.-P. Puissochet, M. Wathelet, R. Schintgen and C.W.A. Timmermans (Presidents of Chambers), C. Gulmann (Rapporteur), D.A.O. Edward, P. Jann, V. Skouris, F. Macken, N. Colneric, S. von Bahr and J.N. Cunha Rodrigues, Judges,

Advocate General: S. Alber,
Registrar: M.-F. Contet, Principal Administrator,

after considering the written observations submitted on behalf of:

— Ravil SARL, by A. Lyon-Caen, F. Fabiani and F. Thiriez, avocats,

— Bellon import SARL and Biraghi SpA, by M. Baffert and A. Baurand, avocats, and F. Giuggia, avvocato,

— the French Government, by G. de Bergues and L. Bernheim, acting as Agents,

— the Spanish Government, by R. Silva de Lapuerta, acting as Agent,

— the Italian Government, by U. Leanza, acting as Agent, assisted by O. Fiumara, avvocato dello Stato,

RAVIL

— the Commission of the European Communities, by H. van Lier and A.-M. Rouchaud, acting as Agents,

having regard to the Report for the Hearing,

after hearing the oral observations of Bellon import SARL and Biraghi SpA, the French Government, the Italian Government and the Commission at the hearing on 19 February 2002,

after hearing the Opinion of the Advocate General at the sitting on 25 April 2002,

gives the following

Judgment

1    By judgment of 19 December 2000, received at the Court on 27 December 2000, the Cour de cassation (France) referred to the Court for a preliminary ruling under Article 234 EC a question on the interpretation of Article 29 EC.

2    That question was raised in proceedings between Ravil SARL ('Ravil'), established in France, and Biraghi SpA ('Biraghi'), established in Italy, a producer of Grana Padano cheese, and Bellon import SARL ('Bellon'), established in France, the exclusive importer and distributor of Biraghi products in France,

concerning the marketing in France by Ravil under the designation 'Grana Padano râpé frais' (Grana Padano freshly grated) of Grana Padano cheese grated and packaged in that Member State.

**Legal background**

*International law and national legislation*

3    Articles 1 and 3 of the Convention between the French Republic and the Italian Republic on the protection of designations of origin, indications of provenance and names of certain products, signed in Rome on 28 April 1964 ('the Franco-Italian Convention'), provide:

'Article 1

Each of the Contracting States undertakes to take all necessary measures to ensure the effective protection of natural and manufactured products originating in the territory of the other State against unfair competition in the course of trade and to ensure effective protection for the designations listed in Annexes A [products originating in France] and B [products originating in Italy] to this Convention, in accordance with the provisions of Articles 2 to 6 below.

...

I - 5088

RAVIL

Article 3

The designations in Annex B to this Convention are reserved exclusively, on the territory of the French Republic, to Italian products or goods and may be used there only under the conditions laid down by the legislation of the Italian Republic.'

4    Annex B to the Franco-Italian Convention mentions *inter alia*, under cheese products, the Italian cheese Grana Padano.

5    In Italy, the rules on protection of designations of origin of cheeses made in that Member State, including Grana Padano, and their areas of production were defined by Legge No 125, tutela delle denominazioni di origine e tipiche dei formaggi (Law No 125 on the protection of designations of origin and typical designations of cheeses) of 10 April 1954 (GURI No 99, 30 April 1954, p. 1294), and Decreto del Presidente della Repubblica No 1269, riconoscimento delle denominazioni circa i metodi di lavorazione, caratteristiche merceologiche e zone di produzione dei formaggi (Decree of the President of the Republic No 1269 on the recognition of designations relating to methods of production, characteristics of marketing and areas of production of cheeses) of 30 October 1955 (GURI No 295, 22 December 1955, p. 4401).

6    The 'Grana Padano' designation of origin was extended to the grated form of the product by the Decreto del Presidente del Consiglio dei ministri, estensione della denominazione di origine del formaggio 'Grana Padano' alla tipologia 'grattugiato' (Decree of the Prime Minister on the extension of the designation of origin of 'Grana Padano' cheese to the 'grated' typology) of 4 November 1991 (GURI No 83, 8 April 1992, p. 12, 'the Decree of 4 November 1991'), where the grated product is obtained exclusively from a whole cheese entitled to the designation of origin in question, and on condition that the grating operations are carried out in the area of production and that the packaging is done immediately with no

I - 5089

processing and with no addition of substances such as to alter the conservation and the original organoleptic characteristics.

*Community law*

7    Article 29 EC states:

'Quantitative restrictions on exports, and all measures having equivalent effect, shall be prohibited between Member States.'

8    Under Article 30 EC, Article 29 EC does not preclude prohibitions or restrictions on exports justified *inter alia* on grounds of the protection of industrial and commercial property.

9    Article 2 of Council Regulation (EEC) No 2081/92 of 14 July 1992 on the protection of geographical indications and designations of origin for agricultural products and foodstuffs (OJ 1992 L 208, p. 1), as amended by the Act concerning the conditions of accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden and the adjustments to the Treaties on which the European Union is founded (OJ 1994 C 241, p. 21, and OJ 1995 L 1, p. 1) ('Regulation No 2081/92'), provides:

'1. Community protection of designations of origin and of geographical indications of agricultural products and foodstuffs shall be obtained in accordance with this Regulation.

RAVIL

2. For the purposes of this Regulation:

(a) *designation of origin*: means the name of a region, a specific place or, in exceptional cases, a country, used to describe an agricultural product or a foodstuff:

   — originating in that region, specific place or country, and

   — the quality or characteristics of which are essentially or exclusively due to a particular geographical environment with its inherent natural and human factors, and the production, processing and preparation of which take place in the defined geographical area;

...'

10  Article 4 of that regulation provides:

'1. To be eligible to use a protected designation of origin (PDO)... an agricultural product or foodstuff must comply with a specification.

2. The product specification shall include at least:

(a)  the name of the agricultural product or foodstuffs, including the designation of origin...

(b)  a description of the agricultural product or foodstuff including the raw materials, if appropriate, and principal physical, chemical, microbiological and/or organoleptic characteristics of the product or the foodstuff;

(c)  the definition of the geographical area...

(d)  evidence that the agricultural product or the foodstuff originates in the geographical area, within the meaning of Article 2(2)(a)...

(e)  a description of the method of obtaining the agricultural product or foodstuff and, if appropriate, the authentic and unvarying local methods;

(f)  the details bearing out the link with the geographical environment or the geographical origin within the meaning of Article 2(2)(a)...

(g)  details of the inspection structures provided for in Article 10;

RAVIL

(h) the specific labelling details relating to the indication PDO... or the equivalent traditional national indications;

(i) any requirements laid down by Community and/or national provisions.'

11   Articles 5 to 7 lay down an ordinary procedure for registration of a PDO. In that procedure, an application is to be made to the Commission through the intermediary of a Member State (Article 5(4) and (5)). The application is to include the specification in accordance with Article 4 (Article 5(3)). The Commission is to verify that the application includes all the particulars provided for in Article 4 (Article 6(1)). If it reaches a positive conclusion, it is to publish in the *Official Journal of the European Communities* among other things the name of the product, the main points of the application and the references to national provisions governing the preparation, production or manufacture of the product (Article 6(2)). Any Member State or any legitimately concerned natural or legal person may object to the registration, in which case the objection is to be examined in accordance with a specified procedure (Article 7). If there is no objection, the Commission is to register the designation and publish it in the *Official Journal of the European Communities* (Article 6(3) and (4)).

12   Article 8 states:

'The indications PDO... or equivalent traditional national indications may appear only on agricultural products and foodstuffs that comply with this Regulation.'

I - 5093

13    Article 10(1) provides:

'Member States shall ensure that not later than six months after the entry into force of this Regulation inspection structures are in place, the function of which shall be to ensure that agricultural products and foodstuffs bearing a protected name meet the requirements laid down in the specifications...'

14    Article 13(1)(a) provides that registered names are to be protected against any direct or indirect commercial use of a name registered in respect of products not covered by the registration, in so far as those products are comparable to the products registered under that name or in so far as using the name exploits the reputation of the protected name.

15    Article 17 establishes a simplified registration procedure for names which are already legally protected:

'1. Within six months of the entry into force of the Regulation, Member States shall inform the Commission which of their legally protected names... they wish to register pursuant to this Regulation...

2. In accordance with the procedure laid down in Article 15 [assistance of a committee composed of representatives of the Member States and, in certain cases, action by the Council], the Commission shall register the names referred to in paragraph 1 which comply with Articles 2 and 4. Article 7 [on the right to object] shall not apply..

RAVIL

3. Member States may maintain national protection of the names communicated in accordance with paragraph 1 until such time as a decision on registration has been taken.'

16    On 12 June 1996 the Commission adopted Regulation (EC) No 1107/96 on the registration of geographical indications and designations of origin under the procedure laid down in Article 17 of Regulation No 2081/92 (OJ 1996 L 148, p. 1).

17    That regulation, which entered into force on 21 June 1996, registers *inter alia* the protected designation of origin (PDO) 'Grana Padano', under the heading 'Cheeses'.

**The main proceedings**

18    Ravil imports, grates, pre-packages and distributes various kinds of cheese in France. At the time when the main proceedings were brought, it did so in particular with respect to Grana Padano, which it marketed under the designation 'Grana Padano râpé frais', and for which it had in 1989 developed techniques for packaging.

19    In 1996 Bellon and Biraghi brought proceedings against Ravil in the Tribunal de commerce de Marseille (Commercial Court, Marseilles) (France), seeking an order that Ravil cease all distribution of cheese bearing the designation 'Grana Padano râpé frais' and make good the damage they claimed to have suffered from 1992.

I - 5095

20    They based their action on Articles 1 and 3 of the Franco-Italian Convention and on the Decree of 4 November 1991, which entered into force in 1992, in so far as it makes the use of the Grana Padano designation for grated cheese subject to the condition that the grating operations are carried out in the region of production and packaging takes place immediately under specified conditions.

21    By judgment of 5 November 1997, the Tribunal de commerce de Marseille granted the application, ordering Ravil to pay damages for the acts of marketing from 1992 and prohibiting it from distributing cheese under the designation 'Grana Padano râpé frais'.

22    Ravil appealed against that judgment.

23    By judgment of 5 March 1998, the Cour d'appel d'Aix-en-Provence (Court of Appeal, Aix-en-Provence) (France) upheld the judgment, stating that the acts of unfair competition were sufficiently made out by the marketing in France since 1992 of 'Grana Padano' cheese in grated form, since Ravil had circumvented the Italian rules in order to carry out operations at a lower cost and win markets from competitors who complied with the legislation.

24    The Cour de cassation, to which Ravil appealed on a point of law, referring to the judgments in Case C-47/90 *Delhaize and Le Lion* [1992] ECR I-3669 and C-388/95 *Belgium* v *Spain* [2000] ECR I-3123, considered that the outcome of the case depended on the interpretation of Article 29 EC.

RAVIL

25    It therefore decided to stay the proceedings and refer the following question to the Court for a preliminary ruling:

'Is Article 29 [EC] to be interpreted as precluding national legislation reserving the "Grana Padano" designation of origin for cheese grated in the region of production, in so far as such an obligation is not indispensable for preserving the specific characteristics which the product has acquired?'

**The question referred for a preliminary ruling**

26    It should be observed, as a preliminary point, that the specification on the basis of which the PDO 'Grana Padano' was registered by Regulation No 1107/96 refers expressly to the Decree of 4 November 1991 as constituting requirements laid down by national provisions within the meaning of Article 4(2)(i) of Regulation No 2081/92.

27    In the procedure established by Article 234 EC providing for cooperation between national courts and the Court of Justice, it is for the latter to provide the national court with an answer which will be of use to it and enable it to determine the case before it. To that end, the Court may have to reformulate the question referred to it (see, *inter alia*, Case C-88/99 *Roquette Frères* [2000] ECR I-10465, paragraph 18). It may also find it necessary to consider provisions of Community law to which the national court has not referred in its question (see, *inter alia*, Case C-230/98 *Schiavon* [2000] ECR I-3547, paragraph 37).

I - 5097

JUDGMENT OF 20. 5. 2003 — CASE C-469/00

28    In the grounds of its judgment, the Cour de cassation considers that the Decree of 4 November 1991 constitutes a measure having equivalent effect to a quantitative restriction on exports. In its opinion, the question thus arises whether Article 29 EC precludes such national legislation.

29    The main proceedings concern two successive periods. The first, governed by the Franco-Italian Convention, runs from 1992, when the Decree of 4 November 1991 entered into force, to 20 June 1996. The second, governed by Regulations No 2081/92 and No 1107/96, started on 21 June 1996, the date of entry into force of Regulation No 1107/96, which registered the PDO 'Grana Padano'.

30    To decide the main proceedings, the national court will have to consider each of the two periods separately.

31    In order to give a useful answer to the question referred for a preliminary ruling, it will be reformulated as regards each of those periods, governed respectively by the Franco-Italian Convention and by Regulations No 2081/92 and No 1107/96, to which the national court has not referred.

32    It should also be observed that the main proceedings concern grating and packaging operations carried out at a stage other than that of retail sale and restaurant sale, for which it is common ground that the Decree of 4 November 1991 does not apply.

33    Consequently, where reference is made in the present judgment to the condition of grating and packaging in the region of production, that relates only to grating and packaging operations carried out at a stage other than that of retail sale and restaurant sale.

*The period before the entry into force of Regulation No 1107/96*

34  With respect to the period from 1992 to 20 June 1996, the Italian Government points out that the Decree of 4 November 1991 entered into force after the Franco-Italian Convention, which required compliance on French territory with the Italian designations of origin listed in the annex to the convention. There may be doubt as to the applicability of that decree to the main proceedings, in that the Franco-Italian Convention makes no reference to 'Grana Padano râpé frais', laying down only the obligation to comply with the designation of origin of the whole cheese. The Italian Government considers that it is for the national court to examine this point of law, and that, were it to conclude that the Decree of 4 November 1991 does not apply, Ravil could not be accused of any infringement of that decree for the period in question.

35  On this point, it is indeed for the national court to assess whether the Decree of 4 November 1991 is applicable to that period under the Franco-Italian Convention. Only if that is the case will an answer to the question referred for a preliminary ruling be of use in deciding the main proceedings with respect to that period.

36  Subject to that reservation, the national court seeks essentially to know, as regards the period prior to the entry into force of Regulation No 1107/96, whether Article 29 EC is to be interpreted as precluding a convention concluded between two Member States A and B, such as the Franco-Italian Convention, from making applicable in Member State A national legislation of Member State B, such as that referred to by the national court, under which the designation of origin of a cheese, protected in Member State B, is reserved, for cheese marketed in grated form, to cheese grated and packaged in the region of production.

I - 5099

37    It should be observed, first, that the provisions of a convention between two Member States cannot apply in the relations between those States if they are found to be contrary to the rules of the Treaty, in particular the rules on the free movement of goods (see, to that effect, Case C-3/91 *Exportur* [1992] ECR I-5529, paragraph 8).

38    Second, the issue raised by the question as reformulated is essentially whether the bilateral convention, in so far as it applies in Member State A national legislation of Member State B such as that at issue in the main proceedings, constitutes a measure having equivalent effect to a quantitative restriction on exports, and if so whether that restriction is justified by the protection of industrial and commercial property rights, in particular the reputation of the designation of origin in question, by maintaining the quality and characteristics of the product and guaranteeing its authenticity.

Whether a bilateral convention that renders applicable, for a designation of origin such as 'Grana Padano', a condition that the product be grated and packaged in the region of production constitutes a measure having equivalent effect to a quantitative restriction on exports

39    Ravil, the Spanish Government and, implicitly, the Italian Government and the Commission consider that a condition that the product must be grated and packaged in the region of production constitutes a measure having equivalent effect to a quantitative restriction of exports within the meaning of Article 29 EC.

40    It must be remembered that Article 29 EC prohibits all measures which have as their specific object or effect the restriction of patterns of exports and thereby the establishment of a difference in treatment between the domestic trade of a Member State and its export trade, in such a way as to provide a particular

RAVIL

advantage for national production or for the domestic market of the State in question (see, *inter alia*, with respect to national measures, Case C-209/98 *Sydhavnens Sten & Grus* [2000] ECR I-3743, paragraph 34).

41    A bilateral convention that renders applicable a condition of grating and packaging the product in the region of production for a designation of origin such as 'Grana Padano' has the consequence that cheese produced in the region of production and fulfilling the other conditions required for use of the designation of origin cannot be grated outside that region without losing that designation.

42    By contrast, cheese of the designation of origin transported within the region of production retains its right to the designation of origin if it is grated and packaged there in accordance with the national legislation.

43    The bilateral convention making that legislation applicable in another Member State thus has the specific effect of restricting patterns of exports of cheese eligible for the designation of origin and thereby of establishing a difference in treatment between the domestic trade of a Member State and its export trade. It therefore introduces quantitative restrictions on exports within the meaning of Article 29 EC (see, to that effect, with respect to a national measure, *Belgium* v *Spain*, paragraphs 38 and 40 to 42).

44    A convention between two Member States A and B such as the Franco-Italian Convention, in so far as it applies in Member State A national legislation of Member State B such as that at issue in the main proceedings, therefore constitutes a measure having equivalent effect to a quantitative restriction on exports within the meaning of Article 29 EC.

I - 5101

Whether a bilateral convention is justified in so far as it renders applicable a condition that the product be grated and packaged in the region of production

45  Ravil submits that a condition that the product must be grated and packaged in the region of production is contrary to Article 29 EC, in that such an obligation is not indispensable for preserving the specific characteristics which the product has acquired.

46  Bellon, Biraghi, the Spanish and Italian Governments and the Commission consider that the condition at issue in the main proceedings is justified on the ground of protection of industrial and commercial property. They submit that it is possible to apply to the present case the reasoning in *Belgium* v *Spain*, in which the Court held that a measure having equivalent effect to a quantitative restriction on exports, constituted by the obligation to bottle a wine with a designation of origin in the region of production in order to be able to use the designation of origin, was justified in that its aim was to preserve the reputation of the designation by guaranteeing, in addition to the authenticity of the product, the maintenance of its qualities and characteristics.

47  It should be noted that, in accordance with Article 30 EC, Article 29 EC does not preclude prohibitions or restrictions on exports which are justified *inter alia* on grounds of the protection of industrial and commercial property.

48  Community legislation displays a general tendency to enhance the quality of products within the framework of the common agricultural policy, in order to promote the reputation of those products through *inter alia* the use of designations of origin which enjoy special protection (see *Belgium* v *Spain*, paragraph 53). That tendency took the form in the quality wines sector of the adoption of Council Regulation (EEC) No 823/87 of 16 March 1987 laying down

RAVIL

special provisions relating to quality wines produced in specified regions (OJ 1987 L 84, p. 59), repealed and replaced by Council Regulation (EC) No 1493/1999 of 17 May 1999 on the common organisation of the market in wine (OJ 1999 L 179, p. 1). It was also manifested, in relation to other agricultural products, in the adoption of Regulation No 2081/92, which, according to its preamble, is intended *inter alia* to meet consumers' expectations as regards products of quality and an identifiable geographical origin and to enable producers, in conditions of fair competition, to secure higher incomes in return for a genuine effort to improve quality.

49    Designations of origin fall within the scope of industrial and commercial property rights. The applicable rules protect those entitled to use them against improper use of those designations by third parties seeking to profit from the reputation which they have acquired. They are intended to guarantee that the product bearing them comes from a specified geographical area and displays certain particular characteristics. They may enjoy a high reputation amongst consumers and constitute for producers who fulfil the conditions for using them an essential means of attracting custom. The reputation of designations of origin depends on their image in the minds of consumers. That image in turn depends essentially on particular characteristics and more generally on the quality of the product. It is on the latter, ultimately, that the product's reputation is based (see *Belgium* v *Spain*, paragraphs 54 to 56). For consumers, the link between the reputation of the producers and the quality of the products also depends on his being assured that products sold under the designation are authentic.

50    A bilateral convention such as the Franco-Italian Convention, by applying a condition of grating and packaging in the region of production, is intended to allow the persons entitled to use the designation of origin to keep under their control one of the ways in which the product appears on the market. The condition it lays down aims better to safeguard the quality and authenticity of the product, and consequently the reputation of the designation of origin, for which those who are entitled to use it assume full and collective responsibility.

I - 5103

51    Against that background, such a bilateral convention may apply in relations between the two contracting Member States despite its restrictive effects on trade if it is shown that it is necessary and proportionate and capable of upholding the reputation of the designation of origin concerned (see, to that effect, *Belgium* v *Spain*, paragraphs 58 and 59).

52    A cheese such as Grana Padano is consumed to a substantial extent in grated form and the operations leading to that presentation are all designed to obtain in particular a specific flavour, colour and texture which will be appreciated by consumers.

53    The grating and packaging of the cheese thus constitute important operations which may harm the quality and hence the reputation of the designation of origin if they are carried out in conditions that result in a product not possessing the organoleptic qualities expected. Those operations may also compromise the guarantee of the product's authenticity, because they necessarily involve removal of the mark of origin of the whole cheeses used.

54    The Decree of 4 November 1991 defines in detail the conditions which must be fulfilled by grated cheese marketed under the designation 'Grana Padano'.

55    Under Article 1, the grated cheese must be obtained without any processing or addition of substances such as to alter the conservation and the original organoleptic characteristics of the product.

I - 5104

56  Under Article 2, the grated cheese must have the following characteristics:

— fat content in proportion to dry matter: not less than 32%;

— age: not less than nine months and within the limits fixed by the production standard;

— additives: in accordance with the legislation;

— organoleptic characteristics: in accordance with the definitions laid down by the production standard;

— humidity: not less than 25% and not greater than 35%;

— aspect: not crumbly, homogeneous, particles of diameter less than 0.5 mm not exceeding 25%;

— rind quantity: not greater than 18%;

— amino-acid composition: specific to that of 'Grana Padano'.

JUDGMENT OF 20. 5. 2003 — CASE C-469/00

57    Compliance with those requirements involves technical operations and strict checks relating to the authenticity and quality of the cheese. Some of these require specialist assessments, in particular as regards the organoleptic characteristics and the composition of the product.

58    Moreover, since freshly grated cheese is a highly sensitive product, the preservation of its organoleptic characteristics requires it to be packaged immediately in conditions such as to avoid any drying out.

59    Furthermore, immediate packaging in a packaging bearing the designation of origin is better able to guarantee the authenticity of the grated product, which by nature is more difficult to identify than a whole cheese.

60    In this context, it must be accepted that checks performed outside the region of production would provide fewer guarantees of the quality and authenticity of the product than checks carried out in the region of production under the responsibility of those entitled to use the designation (see, to that effect, *Belgium v Spain*, paragraph 67). First, checks performed in the region of production under the responsibility of those entitled to use the designation of origin are thorough and systematic in nature and are done by experts who have specialised knowledge of the characteristics of the product. Second, it is hardly conceivable that representatives of the persons entitled to use the designation could effectively introduce such checks in other Member States.

61    The risk to the quality and authenticity of the product finally offered to consumers is consequently greater where it has been grated and packaged outside the region of production than when that has been done within the region (see, to that effect, *Belgium v Spain*, paragraph 74).

62    That conclusion is not affected by the fact that the product may be grated, at least under certain conditions, by retailers and restaurateurs outside the region of production. That operation must in principle be performed in front of the consumer, or at least the consumer can require that it is, in order to verify in particular that the whole cheese used bears the mark of origin. Above all, grating and packaging operations carried out upstream of the retail sale or restaurant stage constitute, because of the quantities of products concerned, a much more real risk to the reputation of a designation of origin, where there is inadequate control of the authenticity and quality of the product, than operations carried out by retailers and restaurateurs.

63    Consequently, a bilateral convention that renders applicable a condition of grating and packaging in the region of production, whose aim is to preserve the reputation of the product by strengthening control over its particular characteristics and its quality, may be regarded as justified as a measure protecting the designation of origin which may be used by all the operators concerned and is of decisive importance to them (see, to that effect, *Belgium* v *Spain*, paragraph 75).

64    The resulting restriction is necessary for attaining the objective pursued, in the sense that there are no alternative less restrictive measures capable of attaining it.

65    The designation of origin would not receive comparable protection from an obligation imposed on operators established outside the region of production to inform consumers, by means of appropriate labelling, that the grating and packaging has taken place outside that region. Any deterioration in the quality or authenticity of cheese grated and packaged outside the region of production, resulting from the materialisation of the risks associated with grating and packaging, might harm the reputation of all cheese marketed under the designation of origin, including that grated and packaged in the region of

production under the control of the group of producers entitled to use the designation (see, to that effect, *Belgium* v *Spain*, paragraphs 76 and 77).

66   Accordingly, the restriction following from a bilateral convention such as that at issue in the main proceedings is justified by the protection of industrial and commercial property rights, in particular the reputation of the designation of origin in question, by maintaining the quality and characteristics of the product and guaranteeing its authenticity.

67   As regards the period prior to the entry into force of Regulation No 1107/96, the answer to the national court's question must therefore be that Article 29 EC is to be interpreted as not precluding a convention concluded between two Member States A and B, such as the Franco-Italian Convention, from making applicable in Member State A national legislation of Member State B, such as that referred to by the national court, under which the designation of origin of a cheese, protected in Member State B, is reserved, for cheese marketed in grated form, to cheese grated and packaged in the region of production.

*The period after the entry into force of Regulation No 1107/96*

68   In so far as it relates to the period starting on 21 June 1996, the question referred for a preliminary ruling raises similar points of interpretation to those examined by the Court in the judgment of today's date in Case C-108/01 *Consorzio del Prosciutto di Parma and Salumificio S. Rita* [2003] ECR I-5121, concerning a condition of slicing and packaging in the region of production of 'Prosciutto di Parma' (Parma ham), another product enjoying a PDO under Regulations No 2081/92 and No 1107/96.

RAVIL

69    As in that judgment, the national court's question in the present case requires an interpretation to be given with respect to four points of law.

70    The first point is whether Regulation No 2081/92 must be interpreted as precluding the use of a PDO from being conditional on operations such as the grating and packaging of the product taking place in the region of production.

71    The second point is whether imposing such a condition on the use of the PDO 'Grana Padano' for cheese marketed in grated form constitutes a measure having equivalent effect to a quantitative restriction on exports within the meaning of Article 29 EC.

72    The third point is whether, if that is so, the condition in question may be regarded as justified, and hence compatible with Article 29 EC.

73    The fourth point is whether that condition can be relied on against economic operators when it has not been brought to their notice.

Whether the use of a PDO may be subjected to a condition that operations such as the grating and packaging of the product be carried out in the region of production

74    Bellon, Biraghi, the French and Italian Governments and the Commission consider essentially that Regulation No 2081/92 does not preclude the use of a

I - 5109

PDO from being subject to a condition that operations such as the grating and packaging of the product take place in the region of production.

75  On this point, it is apparent from both the wording and the structure of Regulation No 2081/92 that the specification constitutes the instrument which determines the extent of the uniform protection given by that regulation within the Community.

76  Article 4(1) of Regulation No 2081/92 makes eligibility to use a PDO subject to the product's compliance with a specification. Article 8 of that regulation makes the affixing of the indication 'PDO' on a product subject to its compliance with the regulation, and hence with the specification. Article 13 then determines the content of the uniform protection conferred on the registered name. Article 10(1) states that the function of the inspection structure put in place in each Member State is to ensure that products bearing a PDO meet the requirements laid down in the specification.

77  In accordance with Article 4(2) of Regulation No 2081/92, the specification is to include at least the items listed non-exhaustively in that provision.

78  It thus includes *inter alia* those mentioned in indents (b), (d), (e), (h) and (i) of that provision, namely:

— a description of the product, and its principal physical, chemical, microbiological and/or organoleptic characteristics;

I - 5110

RAVIL

— evidence that the product originates in a defined geographical area;

— a description of the method of obtaining the product and, if appropriate, the authentic and unvarying local methods;

— the specific labelling details relating to the indication PDO;

— any requirements laid down by Community and/or national provisions.

79 The specification thus contains the detailed definition of the protected product drawn up by the producers concerned, under the control of the Member State which transmits it and then of the Commission which registers the PDO, in the framework of either the ordinary procedure under Articles 5 to 7 or the simplified procedure under Article 17 of Regulation No 2081/92.

80 That definition determines both the extent of the obligations to be complied with for the purposes of using the PDO and, as a corollary, the extent of the right protected against third parties by the effect of registration of the PDO, which lays down at Community level the rules set out or referred to in the specification.

81 The wording of Article 4 of Regulation No 2081/92 does not exclude the application of special technical rules to operations leading to different presentations on the market of the same product, so that in each case it can satisfy the

criterion of quality to which, according to the third recital in the preamble to that regulation, consumers have in recent years tended to attach greater importance, and guarantee an identifiable geographical origin, for which, according to that recital, there is a growing demand.

82    In view of those two objectives, special technical rules may therefore be laid down for operations such as grating and packaging the product.

83    It must therefore be concluded that Regulation No 2081/92 must be interpreted as not precluding the use of a PDO from being subject to the condition that operations such as the grating and packaging of the product take place in the region of production, where such a condition is laid down in the specification.

Whether the condition for the PDO 'Grana Padano' that the product must be grated and packaged in the region of production constitutes a measure having equivalent effect to a quantitative restriction of exports

84    Bellon and Biraghi consider that the registration of the PDO 'Grana Padano' by Regulation No 1107/96 excludes the possibility of finding that there is a measure having equivalent effect to a quantitative restriction on exports. Such a measure can come only from a Member State. After registration of a PDO by the Commission, the protection conferred no longer depends on the legislation of the Member State of origin of the product, but on Community legislation, which, in view of the hierarchy of rules of law, is binding on the Member States and their nationals.

RAVIL

85    The French Government takes the view that there is no need to consider the interpretation of Article 29 EC with respect to national rules reserving the designation of origin 'Grana Padano' to cheese grated in the region of production, since those rules were endorsed by Regulation No 1107/96.

86    It is settled case-law that the prohibition of quantitative restrictions and measures having equivalent effect applies not only to national measures but also to measures adopted by the Community institutions (see, *inter alia*, Case C-114/96 *Kieffer and Thill* [1997] ECR I-3629, paragraph 27, and Case C-169/99 *Schwarzkopf* [2001] ECR I-5901, paragraph 37).

87    As stated in paragraph 26 above, the specification of the PDO 'Grana Padano' expressly mentions the Decree of 4 November 1991 as constituting requirements laid down by national provisions within the meaning of Article 4(2)(i) of Regulation No 2081/92. In registering the PDO 'Grana Padano', Regulation No 1107/96 thus makes grating and packaging in the region of production a condition for the use of the PDO 'Grana Padano' for cheese marketed in grated form.

88    Accordingly, for the reasons stated in paragraphs 40 to 43 above, which are applicable *mutatis mutandis* to the situation under examination, where the use of the PDO 'Grana Padano' for cheese marketed in grated form is made subject to the condition that grating and packaging operations be carried out in the region of production, this constitutes a measure having equivalent effect to a quantitative restriction on exports within the meaning of Article 29 EC.

I - 5113

*Whether the condition that the product be grated and immediately packaged in the region of production is justified*

89    The specification of the PDO 'Grana Padano', by the requirements laid down by national provisions to which it refers, namely the Decree of 4 November 1991, defines in detail the conditions which must be fulfilled by grated cheese marketed under the PDO. Those conditions include in particular an obligation of grating and immediate packaging in the region of production.

90    For the reasons stated in paragraphs 47 to 66 above, which are applicable *mutatis mutandis* to the point under examination, the fact that the use of the PDO 'Grana Padano' for cheese marketed in grated form is conditional on the grating and packaging operations being carried out in the region of production may be regarded as justified, and hence compatible with Article 29 EC.

*Whether the condition of grating and packaging in the region of production can be relied on against economic operators*

91    In accordance with the second paragraph of Article 249 EC, a regulation, which is a measure of general application, is binding in its entirety and directly applicable in all Member States.

92    As such, it creates not only rights but also obligations for individuals, on which they may rely against other individuals before national courts.

RAVIL

93    Nevertheless, the requirement of legal certainty means that Community rules must enable those concerned to know precisely the extent of the obligations which they impose on them (see Case C-209/96 *United Kingdom* v *Commission* [1998] ECR I-5655, paragraph 35).

94    Regulation No 2081/92 states, in the 12th recital in its preamble, that to enjoy protection in every Member State designations of origin must be registered at Community level, with entry in a register also providing information to those involved in trade and to consumers.

95    However, where the simplified procedure is adopted, it does not provide for publication of the specification or extracts from the specification.

96    Regulation No 1107/96 merely provides that the name 'Grana Padano' is to be registered as a PDO under Article 17 of Regulation No 2081/92.

97    The effect of that registration is to lay down at Community level the condition set out in the specification which makes the use of the PDO for cheese marketed in grated form subject to the condition that grating and packaging operations be carried out in the region of production. That condition implies for third parties a negative obligation, breach of which may give rise to civil or even criminal penalties.

98    As all the parties who have expressed a view on this point acknowledged during the procedure, the protection conferred by a PDO does not normally extend to

operations such as grating and packaging the product. Those operations are prohibited to third parties outside the region of production only if a condition to that effect is expressly provided for in the specification.

99    In those circumstances, the principle of legal certainty required that the condition in question be brought to the knowledge of third parties by adequate publicity in Community legislation, which could have been done by mentioning that condition in Regulation No 1107/96.

100   As it was not brought to the knowledge of third parties, that condition cannot be relied on against them before a national court, whether for the purposes of criminal penalties or in civil proceedings.

101   Nevertheless, the principle of legal certainty does not preclude that the condition at issue be regarded by the national court as capable of being relied on against operators such as Ravil who carried on the activity of grating and packaging the product in the period prior to the entry into force of Regulation No 1107/96, should that court consider that during that period the Decree of 4 November 1991 was applicable by virtue of the Franco-Italian Convention and capable of being relied on against those concerned by virtue of the national rules on publicity.

102   Such operators may be considered to have been aware, on the date of entry into force of Regulation No 1107/96, of the condition at issue imposed by the Decree of 4 November 1991. They may therefore be deemed to be aware, also in the context of the Community system of PDOs, of the condition of grating and packaging in the region of production attached to the designation 'Grana Padano', which was previously 'legally protected' at national level within the meaning of Article 17(1) of Regulation No 2081/92 on the territory of the Italian Republic, and was registered on that basis pursuant to that regulation at the request of that Member State.

2eecf2f9eab44c5e

103   It must therefore be concluded that the condition that Grana Padano cheese must be grated and packaged within the region of production may not be relied on against economic operators, as it was not brought to their knowledge by adequate publicity in Community legislation, which could have been done by mentioning that condition in Regulation No 1107/96. Nevertheless, the principle of legal certainty does not preclude the condition at issue from being regarded by the national court as capable of being relied on against operators who carried on the activity of grating and packaging the product in the period prior to the entry into force of Regulation No 1107/96, should that court consider that during that period the Decree of 4 November 1991 was applicable by virtue of the Franco-Italian Convention and capable of being relied on against those concerned by virtue of the national rules on publicity.

104   In conclusion, with respect to the Community system of protection of PDOs, the answer to the question referred for a preliminary ruling must be as follows:

Regulation No 2081/92 must be interpreted as not precluding the use of a PDO from being subject to the condition that operations such as the grating and packaging of the product take place in the region of production, where such a condition is laid down in the specification.

Where the use of the PDO 'Grana Padano' for cheese marketed in grated form is made subject to the condition that grating and packaging operations be carried out in the region of production, this constitutes a measure having equivalent effect to a quantitative restriction on exports within the meaning of Article 29 EC, but may be regarded as justified, and hence compatible with that provision.

However, the condition in question may not be relied on against economic operators, as it was not brought to their knowledge by adequate publicity in Community legislation. Nevertheless, the principle of legal certainty does not preclude that condition from being regarded by the national court as capable of

being relied on against operators who carried on the activity of grating and packaging the product in the period prior to the entry into force of Regulation No 1107/96, should that court consider that during that period the Decree of 4 November 1991 was applicable by virtue of the Franco-Italian Convention and capable of being relied on against those concerned by virtue of the national rules on publicity.

## Costs

105   The costs incurred by the French, Spanish and Italian Governments and by the Commission, which have submitted observations to the Court, are not recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the proceedings pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT,

in answer to the question referred to it by the Cour de cassation by judgment of 19 December 2000, hereby rules:

1.   As regards the period prior to the entry into force of Commission Regulation (EC) No 1107/96 of 12 June 1996 on the registration of geographical

RAVIL

indications and designations of origin under the procedure laid down in Article 17 of Council Regulation (EEC) No 2081/92, Article 29 EC must be interpreted as not precluding a convention concluded between two Member States A and B, such as the Convention between the French Republic and the Italian Republic on the protection of designations of origin, indications of provenance and names of certain products, signed in Rome on 28 April 1964, from making applicable in Member State A national legislation of Member State B, such as that referred to by the national court, under which the designation of origin of a cheese, protected in Member State B, is reserved, for cheese marketed in grated form, to cheese grated and packaged in the region of production.

2.    Council Regulation (EEC) No 2081/92 of 14 July 1992 on the protection of geographical indications and designations of origin for agricultural products and foodstuffs, as amended by the Act concerning the conditions of accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden and the adjustments to the Treaties on which the European Union is founded, must be interpreted as not precluding the use of a protected designation of origin from being subject to the condition that operations such as the grating and packaging of the product take place in the region of production, where such a condition is laid down in the specification.

3.    Where the use of the protected designation of origin 'Grana Padano' for cheese marketed in grated form is made subject to the condition that grating and packaging operations be carried out in the region of production, this constitutes a measure having equivalent effect to a quantitative restriction on exports within the meaning of Article 29 EC, but may be regarded as justified, and hence compatible with that provision.

4.    However, the condition in question may not be relied on against economic operators, as it was not brought to their knowledge by adequate publicity in

Community legislation. Nevertheless, the principle of legal certainty does not preclude that condition from being regarded by the national court as capable of being relied on against operators who carried on the activity of grating and packaging the product in the period prior to the entry into force of Regulation No 1107/96, should that court consider that during that period the Decree of 4 November 1991 was applicable by virtue of the aforesaid Convention between the French Republic and the Italian Republic and capable of being relied on against those concerned by virtue of the national rules on publicity.

Rodríguez Iglesias          Puissochet                    Wathelet

Schintgen              Timmermans                 Gulmann

Edward                      Jann                       Skouris

Macken                       Colneric

von Bahr                 Cunha Rodrigues

Delivered in open court in Luxembourg on 20 May 2003.

R. Grass                                              G.C. Rodríguez Iglesias

Registrar                                                          President

I - 5120