# EXHIBIT 33

JUDGMENT OF THE COURT (First Chamber)

14 October 2004 *

In Case C-299/02,

ACTION under Article 226 EC for failure to fulfil obligations,

brought on 23 August 2002,

**Commission of the European Communities,** represented by K.H.I. Simonsson and H.H. Speyart, acting as Agents, with an address for service in Luxembourg,

applicant,

v

**Kingdom of the Netherlands,** represented by H.G. Sevenster and S. Terstal, acting as Agents,

defendant,

* Language of the case: Dutch.

I - 9783

THE COURT (First Chamber),

composed of: P. Jann (Rapporteur), President of the Chamber, A. Rosas and R. Silva de Lapuerta, Judges,

Advocate General: P. Léger,
Registrar: R. Grass,

having regard to the written procedure,

after hearing the Opinion of the Advocate General at the sitting on 27 May 2004,

gives the following

**Judgment**

1    By its application, the Commission of the European Communities is seeking a declaration by the Court that, by adopting and maintaining in its legislation Article 311 of the Wetboek van Koophandel (Code of Commerce) and Article 8:169 of the Burgerlijk Wetboek (Civil Code), under which certain conditions are fixed concerning:

— the nationality of the shareholders and directors of companies owning seagoing ships which they wish to register in the Netherlands; and also

— the nationality and residence of the directors of shipping companies owning seagoing ships registered in the Netherlands and of the natural persons responsible for the day-to-day management of the place of business from which the shipping business which is necessary for registration of a ship in the Netherlands registers is carried out in the Netherlands,

the Kingdom of the Netherlands has failed to fulfil its obligations under Articles 43 EC and 48 EC.

**Legal framework**

*International regulations*

2    Article 91(1) of the United Nations Convention on the Law of the Sea of 10 December 1982, to which the Community acceded by Council Decision 98/392/EC of 23 March 1998 (OJ 1998 L 179, p. 1; 'the Montego Bay Convention'), provides that '[e]very State shall fix the conditions for the grant of its nationality to ships, for the registration of ships in its territory, and for the right to fly its flag. ... There must exist a genuine link between the State and the ship'.

3    Article 94 of the Montego Bay Convention provides in paragraph 1 that '[e]very State shall effectively exercise its jurisdiction and control in administrative, technical and social matters over ships flying its flag', and sets out in the following paragraphs a series of measures which the flag State is required to take to that effect.

*National regulations*

4    According to Article 311(1) and (3) of the Wetboek van Koophandel:

'1.  A ship has Netherlands nationality where the following conditions are fulfilled:

(a)  the ship belongs as to at least two thirds to one or more natural persons or companies having the nationality of a Member State of the European Communities ["Community nationality"] or of another State Party to the Agreement on the European Economic Area ["EEA nationality"];

(b)  the person or persons referred to in subparagraph (a) carry on a shipping business in the Netherlands through an undertaking established in that country or having a secondary place of business there ... and manage the ship mainly from the Netherlands;

I - 9786

COMMISSION v NETHERLANDS

(c)   the day-to-day management of the place of business referred to in subparagraph (b) is carried out by one or more natural persons having [Community] or [EEA] nationality;

(d)   the natural person or persons referred to in subparagraph (c) have powers of representation in all matters relating to the management of the ship and concerning the ship, its captain and the other members of the crew.

...

3. For the purposes of this article, "legal person having [Community] or [EEA] nationality" means a legal person constituted in accordance with the legislation of a Member State of the European Communities or of another State Party to the Agreement on the European Economic Area ... and having its registered office, its central administration or its principal place of business on the territory of a Member State of the European Communities or of another State Party to the Agreement on the European Economic Area, provided that:

(a)   shares representing at least two thirds of the subscribed capital are registered in the name of natural persons having [Community] or [EEA] nationality or of companies within the meaning of this paragraph *ab initio*, and the majority of the directors have [Community] or [EEA] nationality, or that

(b)   all the directors have [Community] or [EEA] nationality.'

5    Under Article 8:160 of the Burgerlijk Wetboek, a shipping company is a specific form of co-ownership of a ship which enables natural persons to be co-owners of a ship without the intermediary of a legal person.

6    Article 8:163 of the Burgerlijk Wetboek provides that 'any ... company may engage an accountant [director]'.

7    Article 8:169(1) of the Burgerlijk Wetboek provides that 'the function of accountant [administrator] shall cease if ... he no longer has [Community] or [EEA] nationality or if he establishes his residence outside the territory of a Member State of the European Communities ["Community residence"] or of another State Party to the Agreement on the European Economic Area ["EEA residence"]'.

**Administrative procedure**

8    Having given the Kingdom of the Netherlands an opportunity to submit its observations, the Commission, on 27 January 2000, issued a reasoned opinion stating that certain aspects of the national regulations governing the registration and management of seagoing ships appeared to be incompatible with Article 43 EC, read with Article 48 EC. It therefore invited that Member State to comply with its obligations under the EC Treaty within a period of two months from notification of that reasoned opinion. Since it was not satisfied with the Netherlands authorities' reply by letter of 8 May 2000, the Commission decided to bring this action.

COMMISSION v NETHERLANDS

**The action**

9    In support of its action, the Commission puts forward, essentially, three complaints concerning the conditions which the Government of the Netherlands requires to be satisfied before a ship can be registered in that Member State ('the ship registration scheme'). Those complaints derive from the incompatibility with Article 43 EC of the condition that:

— a proportion of the shareholders of a Community company owning a ship must be of Community or EEA nationality;

— the directors of a company owning a ship must be of Community or EEA nationality and/or

— the natural persons responsible for the day-to-day management of the Netherlands place of business ('the local representatives') of a Community shipowner must be of Community or EEA nationality.

10   The Commission puts forward two further complaints relating to the conditions which the Kingdom of the Netherlands requires to be satisfied concerning the management of ships by a ... company ('the ship management scheme'). Those complaints are based on the incompatibility with Article 43 EC of the condition that:

— the director of a shipping company must be of Community or EEA nationality; and

— the director of a shipping company must have a Community or EEA residence.

*First three complaints*

Arguments of the parties

11   The Commission maintains that the ship registration scheme constitutes a restriction of freedom of establishment.

12   The Commission further maintains that although that scheme may be justified on grounds of general interest linked with the exercise of effective control, it must be regarded as disproportionate to the aim pursued.

13   The Netherlands Government contends that the ship registration scheme does not restrict the right to freedom of movement.

14   It also contends that, even on the assumption that the scheme does entail a restriction of freedom of establishment, it would be justified on grounds of general interest relating to the need to exercise effective control and jurisdiction over ships flying the Netherlands flag.

Findings of the Court

15    It is settled case-law that Article 43 EC precludes any national measure which, even though it is applicable without discrimination on grounds of nationality, is liable to hamper or to render less attractive the exercise by Community nationals of the freedom of establishment guaranteed by the Treaty (see, to that effect, Case C-19/92 *Kraus* [1993] ECR I-1663, paragraph 32).

16    It follows from Article 48 EC that the right to freedom of establishment is guaranteed not only to Community nationals but also to companies formed in accordance with the legislation of a Member State and having their registered office, central administration or principal place of business within the Community (see, to that effect, Case 81/87 *Daily Mail and General Trust* [1988] ECR 5483; Case C-212/97 *Centros* [1999] ECR I-1459, paragraph 18; and Case C-208/00 *Überseering* [2002] ECR I-9919, paragraph 56).

17    Freedom of establishment may, however, in the absence of Community harmonisation measures, be limited by national regulations justified by the reasons stated in Article 46(1) EC or by pressing reasons of general interest (see, to that effect, Case 71/76 *Thieffry* [1977] ECR 765, paragraphs 12 and 15, and *Kraus*, cited above, paragraph 32).

18    In that context, it is for the Member States to decide on the level at which they intend to ensure the protection of the objectives set out in Article 46(1) EC and of the general interest and also on the way in which that level must be attained. However, they can do so only within the limits set by the Treaty and, in particular, they must observe the principle of proportionality, which requires that the measures

adopted be appropriate for ensuring attainment of the objective which they pursue and do not go beyond what is necessary for that purpose (see, to that effect, Case C-106/91 *Ramrath* [1992] ECR I-3351, paragraphs 29 and 30, and *Kraus*, paragraph 32).

19    In this case, the ship registration scheme has the effect of restricting the freedom of establishment of shipowners. When shipowner companies wishing to register their ships in the Netherlands do not satisfy the conditions in issue, their only course of action is to alter the structure of their share capital or of their boards of directors; and such changes may entail serious disruption within a company and also require the completion of numerous formalities which have financial consequences. Likewise, shipowners must adjust their recruitment policies in order to ensure that their local representatives are not nationals of a State which is not a Member State of the Community or of the EEA.

20    In that regard, the Netherlands Government's argument that, unlike a nationality condition linked with a Member State, a condition requiring Community or EEA nationality cannot constitute a 'restriction' for the purposes of Article 43 EC cannot be upheld. In the absence of a harmonised rule valid for the entire Community, a condition of Community or EEA nationality, like a condition of nationality of a specific Member State, may constitute an obstacle to freedom of establishment.

21    A restriction such as the one in issue cannot be justified by grounds of the exercise of effective control and jurisdiction over ships flying the Netherlands flag. The Netherlands registration scheme is not apt to ensure the attainment of its objectives and goes beyond what is necessary to attain them. It is difficult to imagine how the structure of the share capital or the boards of directors of the shipowning companies

or the nationality of the local representative may affect the exercise of effective control of the ship by the flag State. Those circumstances are not material to the adoption of measures such as the inspection of the ship, the registration of the details concerning it, verification of the qualification and the working conditions of the crew, and also the opening and conduct of an inquiry in the event of an accident or navigation incident on the high seas.

22    In that regard, the argument whereby the Netherlands Government seeks to demonstrate that the registration scheme is proportionate cannot be upheld.

23    As regards the argument that the Kingdom of the Netherlands is required to adopt the scheme in question by Articles 91(1) and 94(1) of the Montego Bay Convention, it is sufficient to state that, as the Advocate General has shown at points 51 to 59 of his Opinion, those provisions of the Convention do not impose such an obligation on the Kingdom of the Netherlands.

24    As concerns the argument that the Community itself lays down that requirement in its secondary law, it must be held that, while conditions of Community or EEA nationality might be accepted in the context of a harmonised Community scheme, they cannot be established unilaterally by Member States in their national rules.

25    As regards the argument that, in order to ensure effective control, it is necessary to ensure a link with the actual owner (the ultimate beneficiary in the property of the ship), it must be observed that, for the purposes of such a control, it is sufficient to provide that the management of the ship must be carried out from a place of

business in the Netherlands by a person with powers of representation (see, to that effect, Case C-221/89 *Factortame and Others* [1991] ECR I-3905, paragraph 36). Thus, the Member State may deal directly with the representative of the shipowner.

26    As regards the argument that the nationality condition considerably increases the prospects of jurisdiction being effectively exercised, the possibility for a State to exercise its jurisdiction over a person depends primarily on the practical accessibility of the person concerned and not on his nationality. That test is already met when the management of the ship must be carried out from a place of business in the Netherlands by a person authorised to represent the shipowner.

27    In those circumstances, the first three complaints are well founded.

*Fourth and fifth complaints*

Arguments of the parties

28    The Commission submits that the ship management scheme constitutes a restriction of freedom of establishment.

29    It further contends that although the scheme may be justified by the grounds of general interest associated with the exercise of effective control, it must be regarded as disproportionate to the aim pursued.

COMMISSION v NETHERLANDS

30    The Netherlands Government claims that the ship management scheme does not restrict freedom of establishment.

31    In any event, even on the assumption that the scheme does entail a restriction, it would be justified by grounds of general interest relating to the need to exercise effective control and jurisdiction over ships flying the Netherlands flag.

Findings of the Court

32    In the present case, the ship management scheme has the effect of restricting the freedom of establishment of the owners of the ships. Community nationals wishing to operate in the form of a shipping company with a director who is a national of or is resident in a non-member country are prevented from doing so.

33    A restriction such as the one in issue cannot be justified by the need to exercise effective control and jurisdiction over ships flying the Netherlands flag. The Netherlands ship management scheme is not appropriate for ensuring the attainment of those objectives and goes beyond what is necessary for that purpose. It is difficult to understand how the nationality and residence of the director of a shipping company which owns the ship is capable of affecting the exercise of effective control over the ship by the flag State.

34    In that regard, as concerns the nationality condition, it follows from paragraphs 23 to 26 of this judgment that the arguments whereby the Netherlands Government seeks to show that the scheme is proportionate must be rejected.

35    As regards the residence condition, the Netherlands Government's argument cannot be upheld.

36    As regards the argument that the residence condition considerably increases the prospects of jurisdiction being effectively exercised, it must be held that the possibility for a State to exercise its jurisdiction over a person depends primarily on the practical accessibility of that person and not on his residence. That test is already satisfied when the management of the ship must be carried out from a place of business in the Netherlands by a person who is authorised to represent the shipowner.

37    As regards the argument that, regard being had to the geographical situation of the Netherlands, a person whose residence is outside the Community or one of the States Parties to the Agreement on the European Economic Area cannot properly undertake the day-to-day management for which the director of a shipping company is responsible, it is appropriate to recall once again that the possibility for a State to exercise its jurisdiction over a person depends primarily on his practical accessibility and not on his residence. In that context, it is sufficient to require that the management of the ship be carried out from a place of business in the Netherlands by a person who is authorised to represent the shipowner.

38    In those circumstances, the fourth and fifth complaints are well founded.

39    Having regard to the foregoing, it must be held that, by adopting and maintaining in its legislation Article 311 of the Wetboek van Koophandel and Article 8:169 of the Burgerlijk Wetboek, under which certain conditions are fixed concerning:

— the nationality of the shareholders of companies owning seagoing ships which they wish to register in the Netherlands;

— the nationality of the directors of companies owning seagoing ships which those companies wish to register in the Netherlands;

— the nationality of the natural persons responsible for the day-to-day management of the place of business from which the shipping business which is necessary for registration of a ship in the Netherlands registers is carried out in the Netherlands;

— the nationality of the directors of shipping companies owning seagoing ships registered in the Netherlands; and

— the residence of the directors of shipping companies owning seagoing ships registered in the Netherlands,

the Kingdom of the Netherlands has failed to fulfil its obligations under Articles 43 EC and 48 EC.

**Costs**

40    Under Article 69(2) of the Rules of Procedure, the unsuccessful party is to be ordered to pay the costs if they have been applied for in the successful party's pleadings. Since the Commission has applied for costs and the Kingdom of the Netherlands has been unsuccessful, the latter must be ordered to pay the costs.

On those grounds, the Court (First Chamber) hereby:

1.    **Declares that, by adopting and maintaining in its legislation Article 311 of the Wetboek van Koophandel and Article 8:169 of the Burgerlijk Wetboek, under which certain conditions are fixed concerning:**

— **the nationality of the shareholders of companies owning seagoing ships which they wish to register in the Netherlands;**

— **the nationality of the directors of companies owning seagoing ships which those companies wish to register in the Netherlands;**

I - 9798

— the nationality of the natural persons responsible for the day-to-day management of the place of business from which the shipping business which is necessary for registration of a ship in the Netherlands registers is carried out in the Netherlands;

— the nationality of the directors of shipping companies owning seagoing ships registered in the Netherlands; and

— the residence of the directors of shipping companies owning seagoing ships registered in the Netherlands,

the Kingdom of the Netherlands has failed to fulfil its obligations under Articles 43 EC and 48 EC;

2. Orders the Kingdom of the Netherlands to pay the costs.

Signatures.