# EXHIBIT 43



Reports of Cases

JUDGMENT OF THE COURT (Second Chamber)

11 November 2015 *

(Reference for a preliminary ruling — Articles 107 TFEU and 108 TFEU — State aid — Aid granted in breach of Article 108(3) TFEU — Decision of a Member State court establishing the validity of the contract granting that aid — Res judicata — Interpretation in conformity with EU law — Principle of effectiveness)

In Case C-505/14,

REQUEST for a preliminary ruling under Article 267 TFEU from the Landgericht Münster (Regional Court, Münster (Germany)), made by decision of 17 September 2014, received at the Court on 12 November 2014, in the proceedings

**Klausner Holz Niedersachsen GmbH**

v

**Land Nordrhein-Westfalen,**

THE COURT (Second Chamber),

composed of R. Silva de Lapuerta, President of the First Chamber, acting as President of the Second Chamber, J.L. da Cruz Vilaça, A. Arabadjiev (Rapporteur), C. Lycourgos and J.-C. Bonichot, Judges,

Advocate General: P. Mengozzi,

Registrar: A. Calot Escobar,

having regard to the written procedure,

after considering the observations submitted on behalf of:

— Klausner Holz Niedersachsen GmbH, by D. Reich, Rechtsanwalt,

— the Land Nordrhein-Westfalen, by G. Schwendinger, Rechtsanwalt,

— the European Commission, by R. Sauer, T. Maxian Rusche and P.-J. Loewenthal, acting as Agents,

having decided, after hearing the Advocate General, to proceed to judgment without an Opinion,

gives the following

---

* Language of the case: German.



ECLI:EU:C:2015:742                                                                                                                                                            1

**Judgment**

1   This request for a preliminary ruling concerns the interpretation of Articles 107 TFEU and 108 TFEU and the principle of effectiveness.

2   The request has been made in proceedings between Klausner Holz Niedersachsen GmbH ('Klausner Holz') and the Land Nordrhein-Westfalen (Land of North Rhine — Westphalia; 'the *Land*'), concerning a failure by the *Land* to execute agreements to supply wood concluded with Klausner Holz.

**German law**

3   Paragraph 322(1) of the Code of civil procedure (Zivilprozessordnung; 'the ZPO'), entitled 'Substantive legal finality of the judgment', is worded as follows:

'Judgments are able to become *res judicata* only in so far as a ruling has been given on the complaint or the claims asserted in counterclaims.'

**The dispute in the main proceedings and the question referred for a preliminary ruling**

4   On 20 February 2007, the Klausner Group, of which Klausner Holz is part, and the Forestry Administration of the *Land* concluded an agreement to supply wood. Under that agreement, the *Land* undertook to sell to Klausner Holz fixed quantities of wood during 2007 to 2014, at predetermined prices depending on the size and quality of the wood. In addition, the *Land* undertook not to make other sales at prices lower than those set in the agreement.

5   On 17 April 2007, Klausner Holz and the *Land* concluded a 'framework sales contract' which supplemented the agreement of 20 February 2007 (together 'the contracts at issue').

6   During the first six months of that year, the *Land* also concluded, with six other large resinous wood purchasers, agreements for the supply of wood for periods from 2007 to, as appropriate, 2011, 2012 and, in one case, 2014. Under those agreements, the prices agreed for the wind-fallen wood supplied in 2007 and 2008 were similar to those fixed in the contracts at issue, while the prices for the fresh wood supplied from 2009 were generally higher than the prices fixed in the contracts at issue, leaving aside the possibility of adjusting those prices on certain conditions and within certain limits.

7   In 2007 and 2008, the *Land* supplied wood to Klausner Holz, but the purchase amounts of wind-fallen wood provided for were never reached. During 2008, Klausner Holz had financial difficulties, sometimes involving late payments. In August 2009, the *Land* rescinded the 'framework sales contract' which supplemented the agreement of 20 February 2007 and, with effect from the second half of that year, it ceased to supply wood to Klausner Holz on the terms set out in the contracts at issue.

8   By a declaratory judgment of 17 February 2012, the Landgericht Münster (Regional Court, Münster) held that the contracts at issue remained in force. That judgment was confirmed by the Oberlandesgericht Hamm (Higher Regional Court, Hamm), ruling on appeal, by a judgment of 3 December 2012, which is now *res judicata*.

9   Klausner Holz then brought an action against the *Land* before the referring court seeking, firstly, payment of damages in respect of the failure to supply wood in 2009 in the sum of approximately EUR 54 million, secondly, the supply of approximately 1.5 million cubic metres of pine wood in

performance of the contracts at issue for the period between 2010 and February 2013 and, thirdly, information concerning in particular the financial conditions on which the five largest purchasers of resinous wood acquired cut pine wood from the *Land* between 2010 and 2013.

10   The *Land*, for its part, raises the argument before the referring court, which it did not before the Oberlandesgericht Hamm (Higher Regional Court, Hamm), that EU law precludes the execution of the contracts at issue since they constitute 'State aid' within the meaning of Article 107(1) TFEU, implemented in breach of the third sentence of Article 108(3) TFEU.

11   In July 2013, the Federal Republic of Germany informed the European Commission of the existence of non-notified aid, namely the contracts at issue, which, in the opinion of that Member State, is incompatible with the internal market. Furthermore, in October 2013, the Commission received complaints from a number of the competitors of Klausner Holz making the same allegations of incompatibility.

12   By letter of 26 May 2014, the referring court therefore sent the Commission a request for clarification on the basis of the Commission Notice on the enforcement of State aid law by national courts (OJ 2009 C 85, p. 1). In reply to that letter, that institution stated that, having regard to the stage reached by the procedures initiated following the information provided by the Federal Republic of Germany and the complaints referred to in the preceding paragraph of this judgment, it was unable to state its definitive position on the application, in the present case, of EU law on State aid, such a statement being reserved in any event to the decision closing the procedures.

13   The referring court takes the view, for its part, on the basis of an examination of the various clauses of the contracts at issue, that they do indeed constitute State aid within the meaning of Article 107(1) TFEU, in particular because of the advantage given to Klausner Holz using State resources and of the failure to comply with the private seller test. In addition, it notes that that aid is not covered by any block exemption regulation and nor does it constitute de minimis aid within the meaning of Article 2 of Commission Regulation (EC) No 1998/2006 of 15 December 2006 on the application of Articles [107 TFEU] and [108 TFEU] to de minimis aid (OJ 2006 L 379, p. 5).

14   Thus, in the view of the referring court, that aid was implemented in breach of the third sentence of Article 108(3) TFEU. According to the case-law of the Bundesgerichtshof (Federal Court of Justice), a private law contract which grants State aid in breach of the third sentence of Article 108(3) TFEU must be regarded as null and void.

15   None the less, the referring court regards itself as prevented from drawing the consequences of the breach of the third sentence of Article 108(3) TFEU because of the declaratory judgment of the Oberlandesgericht Hamm (Higher Regional Court, Hamm) of 3 December 2012, referred to in paragraph 8 of the present judgment, which is *res judicata*, by which it was held that the contracts at issue remained in force.

16   In those circumstances, the Landgericht Münster (Regional Court, Münster) decided to stay the proceedings and to refer the following question to the Court for a preliminary ruling:

'In civil proceedings concerning the performance of a civil-law contract granting aid, does EU law, in particular Articles 107 TFEU and 108 TFEU (or Articles 87 TEC and 88 TEC) and the principle of effectiveness, require that a final declaratory judgment under civil law which has been delivered in the same case and which confirms that the civil-law contract remains in force, without any consideration of the law on aid, be disregarded if under national law the performance of the contract cannot otherwise be prevented?'

**Consideration of the question referred for a preliminary ruling**

17  By its question, the referring court asks, in essence, whether EU law precludes, in circumstances such as those at issue in the main proceedings, the application of a rule of national law enshrining the principle of *res judicata* from preventing a national court which has held that contracts forming the subject-matter of the dispute before it constitute State aid, within the meaning of Article 107(1) TFEU, implemented in breach of the third sentence of Article 108(3) TFEU, from drawing all the consequences of that breach because of a national judicial decision which has become definitive, which court, without examining whether those contracts constitute State aid, has held that the contracts remain in force.

18  As a preliminary point, it must be borne in mind that, in accordance with the settled case-law of the Court, Article 108(3) TFEU establishes a prior control of plans to grant new aid (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 25 and the case-law cited).

19  The aim of that system of prior control is therefore that only compatible aid may be implemented. In order to achieve that aim, the implementation of planned aid is to be deferred until the doubt as to its compatibility is resolved by the Commission's final decision (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 26 and the case-law cited).

20  The implementation of that system of control is a matter for both the Commission and the national courts, their respective roles being complementary but separate (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 27 and the case-law cited).

21  Whilst assessment of the compatibility of aid measures with the common market falls within the exclusive competence of the Commission, subject to review by the Courts of the European Union, it is for the national courts to ensure the safeguarding, until the final decision of the Commission, of the rights of individuals faced with a possible breach by State authorities of the prohibition laid down by Article 108(3) TFEU (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 28 and the case-law cited).

22  Proceedings concerning State aid may be commenced before national courts requiring those courts to interpret and apply the concept of aid contained in Article 107(1) TFEU, in particular in order to determine whether State aid introduced without observance of the preliminary examination procedure provided for in Article 108(3) TFEU ought to have been subject to this procedure (see, to that effect, judgment in *Fédération nationale du commerce extérieur des produits alimentaires and Syndicat national des négociants et transformateurs de saumon*, C-354/90, EU:C:1991:440, paragraphs 9 and 10 and the case-law cited).

23  The involvement of national courts is the result of the direct effect which the prohibition on implementation of planned aid laid down in the third sentence of Article 108(3) TFEU has been held to have. In this respect, the Court has stated that the immediate enforceability of the prohibition on implementation referred to in that provision extends to all aid which has been implemented without being notified (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 29 and the case-law cited).

24  National courts must offer to individuals the certain prospect that all the appropriate conclusions will be drawn from an infringement of the third sentence of Article 108(3) TFEU, in accordance with their national law, as regards the validity of measures giving effect to the aid, the recovery of financial support granted in disregard of that provision and possible interim measures (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 30 and the case-law cited).

25  The objective of the national courts' tasks is therefore to pronounce measures appropriate to remedy the unlawfulness of the implementation of the aid, in order that the aid does not remain at the free disposal of the recipient during the period remaining until the Commission makes its decision (judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 30 and the case-law cited).

26  To that end, when national courts hold that the measure at issue constitutes State aid within the meaning of Article 107(1) TFEU, implemented in breach of the third sentence of Article 108(3) TFEU, they may decide to suspend the implementation of the measure in question and order the recovery of payments already made or to order provisional measures in order to safeguard both the interests of the parties concerned and the effectiveness of the Commission's subsequent decision (see, by analogy, judgment in *Deutsche Lufthansa*, C-284/12, EU:C:2013:755, paragraph 43, and order in *Flughafen Lübeck*, C-27/13, EU:C:2014:240, paragraph 26).

27  In the present case, the referring court, in accordance with the task thus entrusted to it, has held that the contracts at issue constitute State aid, which has been implemented in breach of the third sentence of Article 108(3) TFEU. However, it considers itself prevented from satisfying its obligation to draw all the consequences from that breach because of the declaratory judgment of the Oberlandesgericht Hamm (Higher Regional Court, Hamm) confirming that the contracts at issue remained in force is *res judicata*.

28  In that regard, it is apparent from the file placed before the Court, firstly, that the dispute which gave rise to that decision of the Oberlandesgericht Hamm (Higher Regional Court, Hamm) did not concern, either principally or incidentally, the State aid characteristics, within the meaning of Article 107(1) TFEU, of the contracts at issue, so that, as the referring court points out, that question was not examined by the Oberlandesgericht Hamm (Higher Regional Court, Hamm) or by the Landgericht Münster (Regional Court, Münster) when it ruled at first instance in the same dispute.

29  Secondly, it is apparent therefrom that the sole aim of the dispute which gave rise to the declaratory judgment of the Oberlandesgericht Hamm (Higher Regional Court, Hamm) was to obtain a ruling that the contracts at issue remained in force, despite the fact that the *Land* had rescinded them. However, the purpose of the dispute before the referring court is, firstly, to obtain payment of damages in respect of the non-execution of part of those contracts, secondly, to obtain execution of another part thereof and, thirdly, to obtain certain information concerning in particular the prices applied in the sector.

30  While accepting that the principle of *res judicata*, as construed in national law, has certain objective, subjective and temporal limitations and certain exceptions, the referring court notes that that law precludes not only re-examination, in a second action, of the pleas already expressly settled definitively, but also the raising of questions which could have been raised in an earlier action and which were not so raised.

31  In that regard, it is appropriate to recall that it is for the national courts to interpret, as far as it is possible, the provisions of national law in such a way that they can be applied in a manner which contributes to the implementation of EU law (judgment in *Lucchini*, C-119/05, EU:C:2007:434, paragraph 60).

32  It is true that this principle of interpreting national law in conformity with EU law has certain limitations. Thus the obligation on a national court to refer to the content of EU law when interpreting and applying the relevant rules of domestic law is limited by general principles of law and it cannot serve as the basis for an interpretation of national law *contra legem* (see to that effect, judgments in *Impact*, C-268/06, EU:C:2008:223, paragraph 100, and *Association de médiation sociale*, C-176/12, EU:C:2014:2, paragraph 39).

33  In the main proceedings, the referring court believes it is faced with such a limitation, pointing out that national law leaves it 'no … option to refuse execution of the [contracts at issue]'.

34  In that regard, it must be borne in mind that the principle that national law must be interpreted in conformity with EU law also requires national courts to do whatever lies within their jurisdiction, taking the whole body of domestic law into consideration and applying the interpretative methods recognised by it, with a view to ensuring that EU law is fully effective and to achieving an outcome consistent with the objective pursued by it (see, to that effect, judgment in *Dominguez*, C-282/10, EU:C:2012:33, paragraph 27 and the case-law cited).

35  Thus, it is for the referring court to ascertain, on that basis, whether it can find such an interpretation, taking into consideration, in particular, firstly, the elements referred to in paragraphs 28 and 29 of the present judgment (see, by analogy, judgment in *Dominguez*, C-282/10, EU:C:2012:33, paragraph 31) and, secondly, the case-law of the Court referred to in paragraph 26 of the present judgment, from which it is apparent that, in order to draw all the consequences of a breach of the third sentence of Article 108(3) TFEU, the national courts may, as necessary, order provisional measures. In the present case, accordingly, it is for the referring court to examine the possibility of ordering a measure such as the temporary suspension of the contracts at issue until the adoption of the Commission decision closing the procedure, which would enable that court to satisfy its obligations under the third sentence of Article 108(3) TFEU without actually ruling on the validity of the contracts at issue.

36  Furthermore, although the referring court took the view that the exceptions drawn from German civil procedural law to the principle of *res judicata* did not apply in the case, it must be noted that, under Paragraph 322 of the ZPO, judgments are able to become *res judicata* only in so far as a ruling has been given on the complaint made in the action or on a counterclaim. Accordingly, it is for the referring court to ascertain whether such a limitation, expressly set out in Paragraph 322(1) of the ZPO, does not authorise it to interpret that provision as meaning that, when a breach of the third sentence of Article 108(3) TFEU is claimed, the force of *res judicata* extends only to the legal claims on which the court has ruled and therefore does not preclude a court from ruling, in a later dispute, on points of law on which there is no ruling in that definitive decision.

37  In fact, a measure such as that referred to in paragraph 35 of the present judgment or an interpretation such as that referred to in paragraph 36 of this judgment would not have the effect of calling into question the legal finality definitively attaching to the decision of the Oberlandesgericht Hamm (Higher Regional Court, Hamm).

38  If such a measure or interpretation should, however, prove not to be possible, attention should be drawn to the importance, both in the legal order of the European Union and in national legal systems, of the principle of *res judicata*. In order to ensure stability of the law and legal relations, as well as the sound administration of justice, it is important that judicial decisions which have become definitive after all rights of appeal have been exhausted or after expiry of the time-limits provided for in that regard can no longer be called into question (see judgments in *Fallimento Olimpiclub*, C-2/08, EU:C:2009:506, paragraph 22, and *Târșia*, C-69/14, EU:C:2015:662, paragraph 28).

39  Therefore, EU law does not always require a national court to disapply domestic rules of procedure conferring finality on a judgment, even if to do so would make it possible to remedy a breach of EU law by the decision at issue (see judgments in *Kapferer*, C-234/04, EU:C:2006:178, paragraph 22, *Fallimento Olimpiclub*, C-2/08, C:2009:506, paragraph 23, *Commission* v *Slovak Republic*, C-507/08, EU:C:2010:802, paragraph 60, *Impresa Pizzarotti*, C-213/13, EU:C:2014:2067, paragraph 59, and *Târșia*, C-69/14, EU:C:2015:662, paragraph 29).

40  In the absence of EU legislation in this area, the rules implementing the principle of *res judicata* are a matter for the national legal order, in accordance with the principle of the procedural autonomy of the Member States. However, such procedural rules must not be less favourable than those governing

similar domestic situations (principle of equivalence) and must not be framed in such a way as to make it in practice impossible or excessively difficult to exercise the rights conferred by EU law (principle of effectiveness) (see judgments in *Fallimento Olimpiclub*, C-2/08, EU:C:2009:506, paragraph 24, and *Impresa Pizzarotti*, C-213/13, EU:C:2014:2067, paragraph 54 and the case-law cited).

41   As regards application of the principle of effectiveness, the Court has held that every case in which the question arises as to whether a national procedural provision makes the application of EU law impossible or excessively difficult must be analysed by reference to the role of that provision in the procedure, its conduct and its special features, viewed as a whole, before the various national bodies. In that context, it is necessary to take into consideration, where relevant, the principles which lie at the basis of the national legal system, such as the protection of the rights of the defence, the principle of legal certainty and the proper conduct of the proceedings (see, to that effect, judgments in *Fallimento Olimpiclub*, C-2/08, EU:C:2009:506, paragraph 27, and *Târșia*, C-69/14, EU:C:2015:662, paragraphs 36 and 37 and the case-law cited).

42   In that regard, it must be noted that an interpretation of national law, such as that described in paragraph 30 of the present judgment, can have the consequence, in particular, that effects are attributed to the decision of a national court, in the present case the Oberlandesgericht Hamm (Higher Regional Court, Hamm), which frustrate the application of EU law, in that they make it impossible for the national courts to satisfy their obligation to ensure compliance with the third sentence of Article 108(3) TFEU.

43   It follows therefrom that both the State authorities and the recipients of State aid would be able to circumvent the prohibition laid down in the third sentence of Article 108(3) TFEU by obtaining, without relying on EU law on State aid, a declaratory judgment whose effect would enable them, definitively, to continue to implement the aid in question over a number of years. Thus, in a case such as that at issue in the main proceedings, a breach of EU law would recur in respect of each new supply of wood, without it being possible to remedy it.

44   Furthermore, such an interpretation of national law is likely to deprive of any useful effect the exclusive power of the Commission, referred to in paragraph 21 of the present judgment, to assess, subject to review by the EU Courts, the compatibility of aid measures with the internal market. If the Commission, to which the Federal Republic of Germany has in the meantime notified the aid measure constituted by the contracts at issue, should conclude that it is incompatible with the internal market and order its recovery, execution of its decision must fail if a decision of the national court could be raised against it declaring the contracts forming that aid to be 'in force'.

45   In those circumstances, it must be concluded that a national rule which prevents the national court from drawing all the consequences of a breach of the third sentence of Article 108(3) TFEU because of a decision of a national court, which is *res judicata*, given in a dispute which does not have the same subject-matter and which did not concern the State aid characteristics of the contracts at issue must be regarded as being incompatible with the principle of effectiveness. A significant obstacle to the effective application of EU law and, in particular, a principle as fundamental as that of the control of State aid cannot be justified either by the principle of *res judicata* or by the principle of legal certainty (see, by analogy, judgments in *Fallimento Olimpiclub*, EU:C:2009:506, paragraph 31, and *Ferreira da Silva e Britto*, C-160/14, EU:C:2015:565, paragraph 59).

46   Having regard to all the foregoing considerations, the answer to the question referred is that EU law precludes, in circumstances such as those at issue in the main proceedings, the application of a rule of national law enshrining the principle of *res judicata* from preventing a national court which has held that contracts forming the subject-matter of the dispute before it constitute State aid, within the meaning of Article 107(1) TFEU, implemented in breach of the third sentence of Article 108(3)

TFEU, from drawing all the consequences of that breach because of a national judicial decision which has become definitive, which court, without examining whether those contracts constitute State aid, has held that the contracts remain in force.

**Costs**

47  Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Second Chamber) hereby rules:

**EU law precludes, in circumstances such as those at issue in the main proceedings, the application of a rule of national law enshrining the principle of res judicata from preventing a national court which has held that contracts forming the subject-matter of the dispute before it constitute State aid, within the meaning of Article 107(1) TFEU, implemented in breach of the third sentence of Article 108(3) TFEU, from drawing all the consequences of that breach because of a national judicial decision which has become definitive, which court, without examining whether those contracts constitute State aid, has held that the contracts remain in force.**

[Signatures]