# **EXHIBIT 45**



Reports of Cases

JUDGMENT OF THE COURT (Grand Chamber)

27 February 2018 *

(Reference for a preliminary ruling — Article 19(1) TEU — Legal remedies — Effective judicial protection — Judicial independence — Charter of Fundamental Rights of the European Union — Article 47 — Reduction of remuneration in the national public administration — Budgetary austerity measures)

In Case C-64/16,

REQUEST for a preliminary ruling under Article 267 TFEU from the Supremo Tribunal Administrativo (Supreme Administrative Court, Portugal), made by decision of 7 January 2016, received at the Court on 5 February 2016, in the proceedings

**Associação Sindical dos Juízes Portugueses**

v

**Tribunal de Contas,**

THE COURT (Grand Chamber),

composed of K. Lenaerts, President, A. Tizzano, Vice-President, L. Bay Larsen, T. von Danwitz, J.L. da Cruz Vilaça, A. Rosas, E. Levits (Rapporteur) and C.G. Fernlund, Presidents of Chambers, C. Toader, M. Safjan, D. Šváby, M. Berger, A. Prechal, E. Jarašiūnas and E. Regan, Judges,

Advocate General: H. Saugmandsgaard Øe,

Registrar: M. Ferreira, Principal Administrator,

having regard to the written procedure and further to the hearing on 13 February 2017,

after considering the observations submitted on behalf of:

– the Associação Sindical dos Juízes Portugueses, by M. Rodrigues, advogado,

– the Portuguese Government, by L. Inez Fernandes, M. Figueiredo, M. Rebelo, F. Almeida and V. Silva, acting as Agents,

– the European Commission, by L. Flynn and M. França, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 18 May 2017,

gives the following

---

\* Language of the case: Portuguese.



ECLI:EU:C:2018:117                                                                                                                                                 1

JUDGMENT OF 27. 2. 2018 — CASE C-64/16
ASSOCIAÇÃO SINDICAL DOS JUÍZES PORTUGUESES

**Judgment**

1   This request for a preliminary ruling concerns the interpretation of the second subparagraph of Article 19(1) TEU and Article 47 of the Charter of Fundamental Rights of the European Union ('the Charter').

2   The request has been made in proceedings between the Associação Sindical dos Juízes Portugueses (Trade Union of Portuguese Judges, 'the ASJP') and the Tribunal de Contas (Court of Auditors, Portugal) concerning the temporary reduction in the amount of remuneration paid to that court's members, in the context of the Portuguese State's budgetary policy guidelines.

**Legal context**

*EU law*

3   Article 2 TEU reads as follows:

'The Union is founded on the values of respect for human dignity, freedom, democracy, equality, the rule of law and respect for human rights, including the rights of persons belonging to minorities. These values are common to the Member States in a society in which pluralism, non-discrimination, tolerance, justice, solidarity and equality between women and men prevail.'

4   Article 19(1) and (2) TEU provides:

'1. The Court of Justice of the European Union shall include the Court of Justice, the General Court and specialised courts. It shall ensure that in the interpretation and application of the Treaties the law is observed.

Member States shall provide remedies sufficient to ensure effective legal protection in the fields covered by Union law.

2. ...

The Judges and the Advocates-General of the Court of Justice and the Judges of the General Court shall be chosen from persons whose independence is beyond doubt ...'

*Portuguese law*

5   Lei n.º 75/2014 — Estabelece os mecanismos das reduções remuneratórias temporárias e as condições da sua reversão (Law No 75/2014 putting in place the mechanisms for the temporary reduction of remuneration and the conditions governing their reversibility) of 12 September 2014 (*Diário da República*, 1st Series, No 176, of 12 September 2014, p. 4896, 'Law No 75/2014'), determines, in accordance with Article 1(1) thereof, the temporary application of the mechanism for reducing remuneration in the public sector.

6   Article 2 of Law No 75/2014 is worded as follows:

'1 — Gross monthly income greater than EUR 1 500 of persons referred to in paragraph 9, whether already employed on that date or taking up their functions thereafter, in any capacity, shall be reduced as follows:

(a)   by 3.5% of the total amount of remuneration greater than EUR 1 500 and less than EUR 2 000;

(b)   by 3.5% of the amount of EUR 2 000 plus 16% of the amount of the total remuneration greater than EUR 2 000, coming to an overall reduction of between 3.5% and 10% in respect of remuneration equal to or greater than EUR 2 000 and up to EUR 4 165;

(c)   by 10% of the total amount of remuneration greater than EUR 4 165.

…

9 —   This Law shall apply to the following office-holders and other employees:

(a)   the President of the Republic;

(b)   the President of the Assembleia da República [National Assembly];

(c)   the Prime Minister;

(d)   Deputies of the Assembleia da República;

(e)   Members of the Government;

(f)   Judges of the Tribunal Constitucional [Constitutional Court], Judges of the Tribunal de Contas [Court of Auditors], the Attorney General of the Republic, judges and public prosecutors, judges of administrative and tax tribunals and district judges;

(g)   Representatives of the Republic for the Autonomous Regions;

(h)   Deputies of the assembleias legislativas das regiões autónomas [Parliaments of the Autonomous Regions];

(i)   Members of the Regional Governments;

(j)   locally elected persons;

(k)   members of other bodies provided for in the Constitution not referred to in the preceding paragraphs and members of bodies in charge of independent administrative bodies, namely those working for the Assembleia da República;

(l)   members and employees of cabinets, management bodies and support offices, office-holders and bodies referred to in the preceding paragraphs, the President and Vice-President of the Supreme Council of the Judiciary, the President and Vice-President of the Supreme Council of Administrative and Tax Tribunals, the President of the Supremo Tribunal de Justiça [Supreme Court], the President and Judges of the Tribunal Constitucional [Constitutional Court], the President of the Supremo Tribunal Administrativo [Supreme Administrative Court], the President of the Tribunal de Contas [Court of Auditors], the Provedor de Justiça [Ombudsman] and the Attorney General of the Republic;

(m)   soldiers of the armed forces and the National Republican Guard (GNR), including military judges and military experts in the Public Prosecutor's Office, and of other armed forces;

(n)   managerial staff of the Presidency of the Republic and the Assembleia da República and other supporting staff of the constitutional bodies, other departments and bodies of the central, regional and local State administration and staff performing other duties which are treated as equivalent for the purposes of remuneration;

(o)  public administrators or those treated as equivalent thereto, members of executive, deliberative, consultative or supervisory bodies or any other statutory body subject to general or special rules, legal persons governed by public law whose independence arises from their involvement in the regulation, supervision or control of public undertakings whose capital is wholly or mainly in public ownership, public undertakings the operation of which is entrusted to a third undertaking and entities forming part of the regional and municipal business sector, public foundations and any other public entity;

(p)  employees performing public duties with the Presidency of the Republic, the Assembleia da República or in other constitutional bodies, and those performing public duties irrespective of the details of the employment relationship governed by public law, including employees undergoing retraining and on special leave;

(q)  employees of public institutions subject to a special regime and legal persons governed by public law which are independent as a result of their involvement in regulatory, supervisory or monitoring activities, including employees of independent regulatory entities;

(r)  employees of public undertakings whose capital is wholly or mainly in public ownership, public undertakings and entities forming part of the regional and municipal business sector;

(s)  employees and management of public foundations governed by public law and public foundations governed by private law and public establishments not covered by the preceding paragraphs;

(t)  reserve staff, staff who have taken early retirement or are on stand-by, who are not in service, who receive benefits indexed to the salaries of active staff.

…

15 — The rules laid down in this article shall be mandatory and take precedence over all other provisions, whether special or exceptional, or otherwise, and over collective regulatory agreements and contracts of employment, and may not be derogated from or amended by any of the above.'

7  Lei n.º 159-A/2015 — Extinção da redução remuneratória na Administração Pública (Law No 159-A/2015 abolishing the reduction of remuneration in the public administration) of 30 December 2015 (*Diário da República*, 1st Series, No 254, of 30 December 2015, p. 10006-(4), 'Law No 159-A/2015'), gradually brought to an end, as from 1 January 2016, the measures to reduce remuneration set out in Law No 75/2014.

8  Article 1 of Law No 159-A/2015 provides:

'This law shall bring to an end the reduction of remuneration provided for in Law [No 75/2014], in the terms set out in the following article.'

9  Article 2 of Law No 159-A/2015 states:

'The reduction of remuneration provided for in Law [No 75/2014] shall be progressively eliminated during 2016, at quarterly intervals, as follows:

(a)  reversibility of 40% for remuneration paid as from 1 January 2016;

(b)  reversibility of 60% for remuneration paid as from 1 April 2016;

(c)  reversibility of 80% for remuneration paid as from 1 July 2016;

  (d) total elimination of the reduction in remuneration as from 1 October 2016.'

10 According to the lei n.º 98/97 de Organização e Processo do Tribunal de Contas (Law No 98/97 on the organisation and procedure of the Court of Auditors), of 26 August 1997 (*Diário da República*, Series I-A, No 196, of 26 August 1997), that court monitors, in particular, the receipt of EU own resources and the use of financial resources from the European Union, and may act in that field, in accordance with Article 5(1)(h) of that law, in cooperation with the relevant EU bodies. As provided for in Articles 44 and 96 of that law, that court also rules on questions concerning the prior review (*visto*) of the validity of the measures, contracts or other instruments giving rise to public expenditure or debts, in particular in the context of public procurement procedures.

**The dispute in the main proceedings and the question referred for a preliminary ruling**

11 By Law No 75/2014, the Portuguese legislature temporarily reduced, as from October 2014, the remuneration of a series of office holders and employees performing duties in the public sector. In accordance with administrative 'salary management' measures adopted on the basis of that law, the remuneration of the judges of the Tribunal de Contas (Court of Auditors) was reduced.

12 The ASJP, acting on behalf of members of the Tribunal de Contas (Court of Auditors), brought a special administrative action before the Supremo Tribunal Administrativo (Supreme Administrative Court, Portugal) seeking the annulment of those administrative measures relating to the month of October 2014 and the months following, an order that the defendant repay the sums withheld from salaries, plus default interest at the statutory rate, and a declaration that the persons concerned were entitled to receive their salaries in full.

13 In support of that action, the ASJP argues that the salary-reduction measures infringe 'the principle of judicial independence' enshrined not only in the Portuguese Constitution but also in EU law, in the second subparagraph of Article 19(1) TEU and Article 47 of the Charter.

14 According to the referring court, the measures for the temporary reduction in the amount of public sector remuneration are based on mandatory requirements for reducing the Portuguese State's excessive budget deficit during the year 2011. It considers that those measures were adopted in the framework of EU law or, at least, are European in origin, on the ground that those requirements were imposed on the Portuguese Government by EU decisions granting, in particular, financial assistance to that Member State.

15 In that regard, the referring court observes that the discretion which the Portuguese State has in implementing its budgetary policy guidelines, acknowledged by the EU institutions, does not relieve it, however, of its obligation to respect the general principles of EU law, which include the principle of judicial independence, applicable both to Courts of the European Union and national courts.

16 According to the referring court, the effective judicial protection of the rights stemming from the EU legal order is ensured, under the second subparagraph of Article 19(1) TEU, primarily by the national courts. The latter must implement that protection in accordance with the principles of independence and impartiality set out in Article 47 of the Charter.

17 The referring court states, in that regard, that the independence of judicial bodies depends on the guarantees that attach to their members' status, including in terms of remuneration.

18  In those circumstances the Supremo Tribunal Administrativo (Supreme Administrative Court) decided to stay the proceedings and to refer the following question to the Court of Justice for a preliminary ruling:

'In view of the mandatory requirements of eliminating the excessive budget deficit and of financial assistance regulated by … rules [of EU law], must the principle of judicial independence, enshrined in the second subparagraph of Article 19(1) TEU, in Article 47 of the [Charter] and in the case-law of the Court of Justice, be interpreted as meaning that it precludes the measures to reduce remuneration that are applied to the judiciary in Portugal, where they are imposed unilaterally and on an ongoing basis by other constitutional authorities and bodies, as is the consequence of Article 2 of Law [No 75/2014]?'

**Consideration of the question referred**

*Admissibility*

19  The European Commission contends that the referring court has not set out, in its order, the reasons for choosing the provisions of EU law which it seeks to have interpreted.

20  In that regard, it should be borne in mind that it follows from the spirit of cooperation which must prevail in the operation of the preliminary reference procedure that it is essential that the national court sets out in its order for reference the precise reasons why it considers that a reply to its questions concerning the interpretation of certain provisions of EU law is necessary to enable it to give judgment (see, to that effect, judgment of 4 May 2016, *Philip Morris Brands and Others*, C-547/14, EU:C:2016:325, paragraph 47 and the case-law cited).

21  In the present case, the order for reference contains sufficient information to enable the Court to understand the reasons why the referring court seeks an interpretation of the second subparagraph of Article 19(1) TEU and Article 47 of the Charter for the needs of the main proceedings.

22  The Portuguese Government, for its part, contends that the request for a preliminary ruling is inadmissible, on the ground that on 1 October 2016 Law No 159-A/2015 totally abolished the salary reduction which from 1 October 2014 had affected persons performing duties in the public sector. It argues, therefore, that any claim that there was an alleged infringement of the principle of judicial independence on account of that salary reduction has become devoid of purpose.

23  In that regard, it should be noted that the Court may refuse to rule on a question referred by a national court in particular where it is quite obvious that the interpretation of EU law that is sought is unrelated to the actual facts of the main action or its purpose or where the problem is hypothetical (see, in particular, judgment of 21 December 2016, *Associazione Italia Nostra Onlus*, C-444/15, EU:C:2016:978, paragraph 36 and the case-law cited).

24  In the present case, as the Advocate General observed in point 32 of his Opinion, the dispute before the referring court in the main proceedings concerns the annulment of the administrative measures under which the remuneration of members of the Tribunal de Contas (Court of Auditors) was reduced and the reinstatement of the sums withheld pursuant to Law No 75/2014.

25  It is apparent from the file submitted to the Court that the amounts withheld from the remuneration of the persons concerned during the period from October 2014 to October 2016 have not been repaid to them. Consequently, since the main proceedings have not become devoid of purpose, that plea of inadmissibility must be rejected.

26  It follows from the foregoing that the request for a preliminary ruling is admissible.

*Substance*

27  By its question, the referring court seeks, in essence, to ascertain whether the second subparagraph of Article 19(1) TEU must be interpreted as meaning that the principle of judicial independence precludes general salary-reduction measures, such as those at issue in the main proceedings, linked to requirements to eliminate an excessive budget deficit and to an EU financial assistance programme, from being applied to the members of a Member State's judiciary.

28  Since the applicant in the main proceedings is acting solely on behalf of the members of the Tribunal de Contas (Court of Auditors), in order to answer that question it is necessary to take into account only the situation of that court's members.

29  First of all, the Court of Justice points out that as regards the material scope of the second subparagraph of Article 19(1) TEU, that provision relates to 'the fields covered by Union law', irrespective of whether the Member States are implementing Union law, within the meaning of Article 51(1) of the Charter.

30  According to Article 2 TEU, the European Union is founded on values, such as the rule of law, which are common to the Member States in a society in which, inter alia, justice prevails. In that regard, it should be noted that mutual trust between the Member States and, in particular, their courts and tribunals is based on the fundamental premiss that Member States share a set of common values on which the European Union is founded, as stated in Article 2 TEU (see, to that effect, Opinion 2/13 (Accession of the European Union to the ECHR), of 18 December 2014, EU:C:2014:2454, paragraph 168).

31  The European Union is a union based on the rule of law in which individual parties have the right to challenge before the courts the legality of any decision or other national measure relating to the application to them of an EU act (see, to that effect, judgment of 3 October 2013, *Inuit Tapiriit Kanatami and Others* v *Parliament and Council*, C-583/11 P, EU:C:2013:625, paragraphs 91 and 94 and the case-law cited).

32  Article 19 TEU, which gives concrete expression to the value of the rule of law stated in Article 2 TEU, entrusts the responsibility for ensuring judicial review in the EU legal order not only to the Court of Justice but also to national courts and tribunals (see, to that effect, Opinion 1/09 (Agreement creating a Unified Patent Litigation System), of 8 March 2011, EU:C:2011:123, paragraph 66; judgments of 3 October 2013, *Inuit Tapiriit Kanatami and Others* v *Parliament and Council*, C-583/11 P, EU:C:2013:625, paragraph 90, and of 28 April 2015, *T & L Sugars and Sidul Açúcares* v *Commission*, C-456/13 P, EU:C:2015:284, paragraph 45).

33  Consequently, national courts and tribunals, in collaboration with the Court of Justice, fulfil a duty entrusted to them jointly of ensuring that in the interpretation and application of the Treaties the law is observed (see, to that effect, Opinion 1/09 (Agreement creating a Unified Patent Litigation System), of 8 March 2011, EU:C:2011:123, paragraph 69, and judgment of 3 October 2013, *Inuit Tapiriit Kanatami and Others* v *Parliament and Council*, C-583/11 P, EU:C:2013:625, paragraph 99).

34  The Member States are therefore obliged, by reason, inter alia, of the principle of sincere cooperation, set out in the first subparagraph of Article 4(3) TEU, to ensure, in their respective territories, the application of and respect for EU law (see, to that effect, Opinion 1/09 (Agreement creating a Unified Patent Litigation System), of 8 March 2011, EU:C:2011:123, paragraph 68). In that regard, as provided for by the second subparagraph of Article 19(1) TEU, Member States are to provide remedies sufficient to ensure effective judicial protection for individual parties in the fields covered by EU law. It is, therefore, for the Member States to establish a system of legal remedies and procedures ensuring

effective judicial review in those fields (see, to that effect, judgment of 3 October 2013, *Inuit Tapiriit Kanatami and Others* v *Parliament and Council*, C-583/11 P, EU:C:2013:625, paragraphs 100 and 101 and the case-law cited).

35  The principle of the effective judicial protection of individuals' rights under EU law, referred to in the second subparagraph of Article 19(1) TEU, is a general principle of EU law stemming from the constitutional traditions common to the Member States, which has been enshrined in Articles 6 and 13 of the European Convention for the Protection of Human Rights and Fundamental Freedoms, signed in Rome on 4 November 1950, and which is now reaffirmed by Article 47 of the Charter (see, to that effect, judgments of 13 March 2007, *Unibet*, C-432/05, EU:C:2007:163, paragraph 37, and of 22 December 2010, *DEB*, C-279/09, EU:C:2010:811, paragraphs 29 to 33).

36  The very existence of effective judicial review designed to ensure compliance with EU law is of the essence of the rule of law (see, to that effect, judgment of 28 March 2017, *Rosneft*, C-72/15, EU:C:2017:236, paragraph 73 and the case-law cited).

37  It follows that every Member State must ensure that the bodies which, as 'courts or tribunals' within the meaning of EU law, come within its judicial system in the fields covered by that law, meet the requirements of effective judicial protection.

38  In that regard, the Court notes that the factors to be taken into account in assessing whether a body is a 'court or tribunal' include, inter alia, whether the body is established by law, whether it is permanent, whether its jurisdiction is compulsory, whether its procedure is *inter partes*, whether it applies rules of law and whether it is independent (judgment of 16 February 2017, *Margarit Panicello*, C-503/15, EU:C:2017:126, paragraph 27 and the case-law cited).

39  In the present case, it must be noted that, according to the information before the Court which it is for the referring court to verify, questions relating to EU own resources and the use of financial resources from the European Union may be brought before the Tribunal de Contas (Court of Auditors), pursuant to Law No 98/97 cited in paragraph 10 above. Such questions may concern the application or interpretation of EU law (see, in particular, judgment of 26 May 2016, *Județul Neamț and Județul Bacău*, C-260/14 and C-261/14, EU:C:2016:360). The same is also true of questions concerning the prior review (*visto*) of the validity of the measures, contracts or other instruments giving rise to public expenditure or debts, inter alia, in the context of public procurement procedures, which may also be brought before that court pursuant to Law No 98/97.

40  Consequently, to the extent that the Tribunal de Contas (Court of Auditors) may rule, as a 'court or tribunal', within the meaning referred to in paragraph 38 above, on questions concerning the application or interpretation of EU law, which it is for the referring court to verify, the Member State concerned must ensure that that court meets the requirements essential to effective judicial protection, in accordance with the second subparagraph of Article 19(1) TEU.

41  In order for that protection to be ensured, maintaining such a court or tribunal's independence is essential, as confirmed by the second subparagraph of Article 47 of the Charter, which refers to the access to an 'independent' tribunal as one of the requirements linked to the fundamental right to an effective remedy.

42  The guarantee of independence, which is inherent in the task of adjudication (see, to that effect, judgments of 19 September 2006, *Wilson*, C-506/04, EU:C:2006:587, paragraph 49; of 14 June 2017, *Online Games and Others*, C-685/15, EU:C:2017:452, paragraph 60; and of 13 December 2017, *El Hassani*, C-403/16, EU:C:2017:960, paragraph 40), is required not only at EU level as regards the Judges of the Union and the Advocates-General of the Court of Justice, as provided for in the third subparagraph of Article 19(2) TEU, but also at the level of the Member States as regards national courts.

43  The independence of national courts and tribunals is, in particular, essential to the proper working of the judicial cooperation system embodied by the preliminary ruling mechanism under Article 267 TFEU, in that, in accordance with the settled case-law referred to in paragraph 38 above, that mechanism may be activated only by a body responsible for applying EU law which satisfies, inter alia, that criterion of independence.

44  The concept of independence presupposes, in particular, that the body concerned exercises its judicial functions wholly autonomously, without being subject to any hierarchical constraint or subordinated to any other body and without taking orders or instructions from any source whatsoever, and that it is thus protected against external interventions or pressure liable to impair the independent judgment of its members and to influence their decisions (see, to that effect, judgments of 19 September 2006, *Wilson*, C-506/04, EU:C:2006:587, paragraph 51, and of 16 February 2017, *Margarit Panicello*, C-503/15, EU:C:2017:126, paragraph 37 and the case-law cited).

45  Like the protection against removal from office of the members of the body concerned (see, in particular, judgment of 19 September 2006, *Wilson*, C-506/04, EU:C:2006:587, paragraph 51), the receipt by those members of a level of remuneration commensurate with the importance of the functions they carry out constitutes a guarantee essential to judicial independence.

46  In the present case, it should be noted that, as is apparent from the information provided by the referring court, the salary-reduction measures at issue in the main proceedings were adopted because of mandatory requirements linked to eliminating the Portuguese State's excessive budget deficit and in the context of an EU programme of financial assistance to Portugal.

47  Those salary-reduction measures provided for a limited reduction of the amount of remuneration, up to a percentage varying in accordance with the level of remuneration.

48  The measures were applied not only to the members of the Tribunal de Contas (Court of Auditors), but, more widely, to various public office holders and employees performing duties in the public sector, including the representatives of the legislature, the executive and the judiciary.

49  Those measures cannot, therefore, be perceived as being specifically adopted in respect of the members of the Tribunal de Contas (Court of Auditors). They are, on the contrary, in the nature of general measures seeking a contribution from all members of the national public administration to the austerity effort dictated by the mandatory requirements for reducing the Portuguese State's excessive budget deficit.

50  Lastly, as is apparent from the title of Law No 75/2014 and the actual wording of Article 1(1) thereof, the salary-reduction measures introduced by that Law, and that entered into force on 1 October 2014, were temporary in nature. In accordance with a process for the gradual abolition of those measures which took place during 2016, Law No 159-A/2015 brought the reduction of remuneration definitively to an end on 1 October 2016.

51  In those circumstances, the salary-reduction measures at issue in the main proceedings cannot be considered to impair the independence of the members of the Tribunal de Contas (Court of Auditors).

52  In the light of all the foregoing considerations, the answer to the question raised is that the second subparagraph of Article 19(1) TEU must be interpreted as meaning that the principle of judicial independence does not preclude general salary-reduction measures, such as those at issue in the main proceedings, linked to requirements to eliminate an excessive budget deficit and to an EU financial assistance programme, from being applied to the members of the Tribunal de Contas (Court of Auditors).

**Costs**

53  Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

**The second subparagraph of Article 19(1) TEU must be interpreted as meaning that the principle of judicial independence does not preclude general salary-reduction measures, such as those at issue in the main proceedings, linked to requirements to eliminate an excessive budget deficit and to an EU financial assistance programme, from being applied to the members of the Tribunal de Contas (Court of Auditors, Portugal).**

[Signatures]