# EXHIBIT 64

Oliver Dörr • Kirsten Schmalenbach
Editors

# Vienna Convention on the Law of Treaties

## A Commentary

Second Edition



*Editors*
Professor Dr. Oliver Dörr, LL.M. (Lond.)
University of Osnabrück
European Legal Studies Institute
49069 Osnabrück
Germany
odoerr@uos.de

Professor Dr. Kirsten Schmalenbach
University of Salzburg
Faculty of Law
Department of Public Law/
International Law
5020 Salzburg
Austria
kirsten.schmalenbach@sbg.ac.at

ISBN 978-3-662-55159-2 ISBN 978-3-662-55160-8 (eBook)
DOI 10.1007/978-3-662-55160-8

Library of Congress Control Number: 2017958037

© Springer-Verlag GmbH Germany 2018
This work is subject to copyright. All rights are reserved by the Publisher, whether the whole or part of the material is concerned, specifically the rights of translation, reprinting, reuse of illustrations, recitation, broadcasting, reproduction on microfilms or in any other physical way, and transmission or information storage and retrieval, electronic adaptation, computer software, or by similar or dissimilar methodology now known or hereafter developed.
The use of general descriptive names, registered names, trademarks, service marks, etc. in this publication does not imply, even in the absence of a specific statement, that such names are exempt from the relevant protective laws and regulations and therefore free for general use.
The publisher, the authors and the editors are safe to assume that the advice and information in this book are believed to be true and accurate at the date of publication. Neither the publisher nor the authors or the editors give a warranty, express or implied, with respect to the material contained herein or for any errors or omissions that may have been made. The publisher remains neutral with regard to jurisdictional claims in published maps and institutional affiliations.

Printed on acid-free paper

This Springer imprint is published by Springer Nature
The registered company is Springer-Verlag GmbH Germany
The registered company address is: Heidelberger Platz 3, 14197 Berlin, Germany

# Contents

**Introduction:** On the Role of Treaties in the Development of International Law (*Dörr*) ........ 1

**Preamble** (*Schmalenbach*) ........ 9

**Part I Introduction**

**Article 1.** Scope of the present Convention (*Schmalenbach*) ........ 21

**Article 2.** Use of terms (*Schmalenbach*) ........ 29

**Article 3.** International agreements not within the scope of the present Convention (*Schmalenbach*) ........ 55

**Article 4.** Non-retroactivity of the present Convention (*Schmalenbach*) ........ 89

**Article 5.** Treaties constituting international organizations and treaties adopted within an international organization (*Schmalenbach*) ........ 99

**Part II Conclusion and Entry into Force of Treaties**

**Section 1 Conclusion of Treaties**

**Article 6.** Capacity of States to conclude treaties (*Schmalenbach*) .... 115

**Article 7.** Full powers (*Hoffmeister*) ........ 129

**Article 8.** Subsequent confirmation of an act performed without authorization (*Hoffmeister*) ........ 145

**Article 9.** Adoption of the text (*Hoffmeister*) ........ 151

**Article 10.** Authentication of the text (*Hoffmeister*) ................ 163

**Article 11.** Means of expressing consent to be bound by a treaty (*Hoffmeister*) ................................ 169

**Article 12.** Consent to be bound by a treaty expressed by signature (*Hoffmeister*) ...................................... 181

**Article 13.** Consent to be bound by a treaty expressed by an exchange of instruments constituting a treaty (*Hoffmeister*) ..... 193

**Article 14.** Consent to be bound by a treaty expressed by ratification, acceptance or approval (*Hoffmeister*) ................. 199

**Article 15.** Consent to be bound by a treaty expressed by accession (*Hoffmeister*) ...................................... 217

**Article 16.** Exchange or deposit of instruments of ratification, acceptance, approval or accession (*Hoffmeister*) ........ 231

**Article 17.** Consent to be bound by part of a treaty and choice of differing provisions (*Hoffmeister*) .................... 237

**Article 18.** Obligation not to defeat the object and purpose of a treaty prior to its entry into force (*Dörr*) ................ 243

**Section 2 Reservations**

**Article 19.** Formulation of reservations (*Walter*) .................. 263

**Article 20.** Acceptance of and objection to reservations (*Walter*) .... 317

**Article 21.** Legal effects of reservations and of objections to reservations (*Walter*) ...................................... 339

**Article 22.** Withdrawal of reservations and of objections to reservations (*Walter*) .............................. 353

**Article 23.** Procedure regarding reservations (*Walter*) .............. 371

**Annex:** Guide to Practice on Reservations to Treaties (*Walter*) ........ 383

**Section 3 Entry into Force and Provisional Application of Treaties**

**Article 24.** Entry into force (*Krieger*) ............................ 423

**Article 25.** Provisional application (*Krieger*) ...................... 441

## Part III Observance, Application and Interpretation of Treaties

### Section 1 Observance of Treaties

**Article 26.** Pacta sunt servanda (*Schmalenbach*) .................. 467

**Article 27.** Internal law and observance of treaties (*Schmalenbach*) ... 493

### Section 2 Application of Treaties

**Article 28.** Non-retroactivity of treaties (*von der Decken*) .......... 507

**Article 29.** Territorial scope of treaties (*von der Decken*) ........... 521

**Article 30.** Application of successive treaties relating to the same subject matter (*von der Decken*) ...................... 539

### Section 3 Interpretation of Treaties

**Article 31.** General rule of interpretation (*Dörr*) .................. 559

**Article 32.** Supplementary means of interpretation (*Dörr*) ......... 617

**Article 33.** Interpretation of treaties authenticated in two or more languages (*Dörr*) .......................................... 635

### Section 4 Treaties and Third States

**Article 34.** General rule regarding third States (*Proelss*) ............ 655

**Article 35.** Treaties providing for obligations for third States (*Proelss*) ........................................... 699

**Article 36.** Treaties providing for rights for third States (*Proelss*) ..... 711

**Article 37.** Revocation or modification of obligations or rights of third States (*Proelss*) ............................... 729

**Article 38.** Rules in a treaty becoming binding on third States through international custom (*Proelss*) .............. 743

## Part IV Amendment and Modification of Treaties

**Article 39.** General rule regarding the amendment of treaties (*von der Decken*) ........ 757

**Article 40.** Amendment of multilateral treaties (*von der Decken*) ..... 767

**Article 41.** Agreements to modify multilateral treaties between certain of the parties only (*von der Decken*) ........ 777

## Part V Invalidity, Termination and Suspension of the Operation of Treaties

### Section 1 General Provisions

**Article 42.** Validity and continuance in force of treaties (*von der Decken*) ........ 791

**Article 43.** Obligations imposed by international law independently of a treaty (*von der Decken*) ........ 805

**Article 44.** Separability of treaty provisions (*von der Decken*) ........ 813

**Article 45.** Loss of a right to invoke a ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty (*von der Decken*) ........ 825

### Section 2 Invalidity of Treaties

**Article 46.** Provisions of internal law regarding competence to conclude treaties (*Rensmann*) ........ 837

**Article 47.** Specific restrictions on authority to express the consent of a State (*Rensmann*) ........ 869

**Article 48.** Error (*Rensmann*) ........ 879

**Article 49.** Fraud (*Rensmann*) ........ 899

**Article 50.** Corruption of a representative of a State (*Rensmann*) .... 915

**Article 51.** Coercion of a representative of a State (*Rensmann*) ...... 923

**Article 52.** Coercion of a State by the threat or use of force (*Schmalenbach*) ........ 937

**Article 53.** Treaties conflicting with a peremptory norm of general international law ("jus cogens") (*Schmalenbach*) ........ 965

## Section 3 Termination and Suspension of the Operation of Treaties

**Article 54.** Termination of or withdrawal from a treaty under its provisions or by consent of the parties (*Giegerich*) .......... 1015

**Article 55.** Reduction of the parties to a multilateral treaty below the number necessary for its entry into force (*Giegerich*) ....... 1035

**Article 56.** Denunciation of or withdrawal from a treaty containing no provision regarding termination, denunciation or withdrawal (*Giegerich*) ............................ 1039

**Article 57.** Suspension of the operation of a treaty under its provisions or by consent of the parties (*Giegerich*) ................ 1061

**Article 58.** Suspension of the operation of a multilateral treaty by agreement between certain of the parties only (*Giegerich*) ............................................... 1069

**Article 59.** Termination or suspension of the operation of a treaty implied by conclusion of a later treaty (*Giegerich*) .......... 1083

**Article 60.** Termination or suspension of the operation of a treaty as a consequence of its breach (*Giegerich*) ................ 1095

**Article 61.** Supervening impossibility of performance (*Giegerich*) .... 1127

**Article 62.** Fundamental change of circumstances (*Giegerich*) ....... 1143

**Article 63.** Severance of diplomatic or consular relations (*Giegerich*) ............................................... 1183

**Article 64.** Emergence of a new peremptory norm of general international law ("jus cogens") (*Schmalenbach*) ........... 1201

## Section 4 Procedure

**Article 65.** Procedure to be followed with respect to invalidity, termination, withdrawal from or suspension of the operation of a treaty (*Krieger*) ............................ 1211

**Article 66.** Procedures for judicial settlement, arbitration and conciliation (*Krieger*) .................................... 1233

**Annex to Article 66** (*Krieger*) ................................ 1243

**Article 67.** Instruments for declaring invalid, terminating, withdrawing from or suspending the operation of a treaty (*Krieger*) .... 1253

**Article 68.** Revocation of notifications and instruments provided for in articles 65 and 67 (*Krieger*) ......................... 1259

### Section 5 Consequences of the Invalidity, Termination or Suspension of the Operation of a Treaty

**Article 69.** Consequences of the invalidity of a treaty (*Wittich*) ...... 1265

**Article 70.** Consequences of the termination of a treaty (*Wittich*) .... 1283

**Article 71.** Consequences of the invalidity of a treaty which conflicts with a peremptory norm of general international law (*Wittich*) .................................... 1301

**Article 72.** Consequences of the suspension of the operation of a treaty (*Wittich*) ........................... 1319

### Part VI Miscellaneous Provisions

**Article 73.** Cases of State succession, State responsibility and outbreak of hostilities (*Krieger*) ............................... 1331

**Article 74.** Diplomatic and consular relations and the conclusion of treaties (*Krieger*) ............................ 1367

**Article 75.** Case of an aggressor State (*Krieger*) ................... 1381

### Part VII Depositaries, Notifications, Corrections and Registration

**Article 76.** Depositaries of treaties (*Tichy/Bittner*) .................. 1401

**Article 77.** Functions of depositaries (*Tichy/Bittner*) ............... 1413

**Article 78.** Notifications and communications (*Tichy/Bittner*) ........ 1431

**Article 79.** Correction of errors in texts or in certified copies of treaties (*Tichy/Bittner*) .............................. 1437

**Article 80.** Registration and publication of treaties (*Tichy/Bittner*) .... 1445

### Part VIII Final Provisions

**Article 81.** Signature (*Proelss*) ................................ 1453

**Article 82.** Ratification (*Proelss*) ............................... 1461

**Article 83.** Accession (*Proelss*) ................................ 1463

**Article 84.** Entry into force (*Proelss*) ............................ 1467

**Article 85.** Authentic texts (*Proelss*) ............................ 1473

ocument 62-65 Filed 05/02/22 Page 10 of 18



**Annex** ........ 1477

**Final Act of the United Nations Conference on the Law of Treaties and Annexes thereto** ........ 1477

**Status of the Convention** ........ 1482

**Vienna Convention on the Law of Treaties Between States and International Organizations or between International Organizations (VCLT II), 21 March 1986** ........ 1486

**Status of the VCLT II** ........ 1523

**Index** ........ 1527

## Article 1
*Scope of the present Convention*

**The present Convention applies to treaties between States.**

### Contents


A. Purpose and Function .......... 1
B. Historical Background and Negotiating History .......... 4
C. Elements of Article 1 .......... 7
I. Treaties .......... 7
II. States .......... 8
D. Treaties of International Organizations (VCLT II) .......... 13


### A. Purpose and Function

1 Due to their far-reaching international and national legal capacities, States are capable of concluding agreements with all types of legal entities, *ie* with other States and with non-State actors (*eg* international organizations, corporations, NGOs, individuals; → Art 3 MN 19–71). Therefore, the sole purpose of Art 1 is to limit the scope of the VCLT *ratione materiae* to **interstate treaties** and—in view of the potential diversity of signatories—*ratione personae* to **States** alone.[1]

2 To fully appreciate the limited scope of the VCLT as a whole, other provisions of the Convention have to be taken into account as well, namely, Art 1 must be read in conjunction with Art 2 para 1 lit a, which restricts the scope of the Convention *ratione materiae* to **treaties in written form** which are **governed by international law**. Constituent instruments of international organizations fulfill these prerequisites and therefore fall comfortably within the scope of the VCLT (→ Art 5 MN 5–7). However, even if the Convention applies to all international interstate treaties, it does not cover every situation. According to Art 73, the VCLT does not address the fate of treaties in the event of State succession, State responsibility and interstate hostilities. The limitation of the Convention *ratione temporis* is laid down in Art 4, which answers the question of the Convention having retroactive application in the negative. Assuming that the Convention is applicable to a particular treaty, the autonomy of its parties may nonetheless prevail in certain areas: many rules of the Convention are **residual in character**, *ie* they come into play under the condition that the particular treaty does not "otherwise provide" (*eg* Arts 22, 77), or it is not "otherwise agreed" by the parties (*eg* Art 37), or a different intention is not "otherwise established" (*eg* Arts 12, 14, 15, 16).[2] As a rule, the Convention

[1] But see *Rosenne* (1989), p. 22.

[2] *Sinclair* (1984), p. 6; *Haak* (1967), pp. 544–547; for detail see also → Art 5 MN 15–19.

© Springer-Verlag GmbH Germany 2018



O. Dörr, K. Schmalenbach (eds.), *Vienna Convention on the Law of Treaties*,
DOI 10.1007/978-3-662-55160-8_3

Document 62-65 Filed 05/02/22 Page 12 of 18



explicitly labels provisions as residual or the residual character can be confirmed by way of interpretation (contextual interpretation or *travaux préparatoires*, *eg* Art 30 paras 3–5). Failing this, the Convention deems its provision mandatory (*eg* Art 53).

3 Art 3 lit c clarifies that the Convention's application to a multilateral treaty is not to be questioned for the mere fact that—alongside at least two State Parties to the VCLT—**other subjects of international law** are also party to said treaty. Unspoken but congruously, the same is true when States not party to the VCLT participate in a multilateral treaty. From all this, it follows that one treaty concluded between different subjects of international law can be ruled by up to **three different legal regimes,** provided that the VCLT II (1986) enters into force in the near future:[3] (1) the treaty relation between parties to the VCLT (including the Holy See → MN 8), is governed by that Convention; (2) the treaty relation with and among participating international organizations are governed by the VCLT II under the condition that the parties involved are parties to that Convention; (3) treaty relations other than those mentioned, *eg* treaty relations with the Sovereign Order of Malta,[4] with the ICRC,[5] with States not parties to the VCLT,[6] or with international organizations in case the VCLT II remains inoperative are governed by customary international law (→ Art 4 MN 4–6). *Prima facie*, this potential multitude of applicable treaty law, all of which could be applied to one and the same treaty, seems to contradict any concept of uniform application. However, the **fragmentation of treaty relations** is somewhat alleviated by the congruency of most substantive rules of the aforementioned regimes.[7]

## B. Historical Background and Negotiating History

4 During most stages of the negotiating process, the scope of the Convention had not been laid down in a separate article, but rather had been derived from the **definition** of 'treaty' (→ Art 2 para 1 lit a). When the ILC discussed the very first SR report on the law of treaties, prepared by SR *Brierly* in 1950,[8] it was agreed that treaties to which **international organizations** were parties would be included in its studies.[9] However, by definition, treaties to which entities other than States and international

[3] As of July 2017, 31 States have ratified the VCLT II which falls short of the 35 ratifications required by Art 85 VCLT II. International organizations, which are party to the Convention, are not counted for entry into force purposes, pursuant to Art 85.

[4] See *eg* the 1989 Postal Convention with Austria öBGBl No 447/1989 and the 1979 Postal Agreement between the Philippines and the Sovereign Order of Malta 1195 UNTS 411.

[5] See *eg* the 2006 Agreement between the International Criminal Court and the International Committee of the Red Cross on Visits to Persons Deprived of Liberty Pursuant to the Jurisdiction of the ICC, ICC Official Journal ICC-PRES/02-01-06.

[6] *Villiger* (2009), Art 3 MN 7; see generally *Vierdag* (1982), p. 779; *Vierdag* (1987), p. 91.

[7] For a detailed analysis, see *Vierdag* (1982), pp. 786–801.

[8] *Brierly* I 223–248.

[9] ILC Report 11th Session [1959-II] YbILC 87, 96, para 6.

organizations are parties should be excluded.[10] When proposing this demarcation, SR *Brierly* not only had clear non-State entities such as **churches**, **companies** or **cities** in mind, but also **component units of federal States**, assuming that these components do not possess the attributes of a State.[11] *Brierly*'s understanding of the term 'State', though, remained vague (Draft Art 2: "A State is a member of the community of nations").[12]

**5** Further developing *Brierly*'s findings, his successor SR *Lauterpacht* removed the term "international organization" and replaced it with "organization of States"[13] in order to point out that "States only – acting either individually or in association – are the normal subjects of [...] international law".[14] With regard to **component units of federal States** or **protectorates**, SR *Lauterpacht* advocated an all-embracing understanding of the term "State" for the purpose of his definition clause (Draft Art 1), leaving it to the subsequent capacity provision[15] (Draft Art 10[16]) to pragmatically resolve "**borderline cases**".[17] It was SR *Waldock* who finally proposed in 1965 to limit the scope of the Convention to treaties concluded between States[18] It was the understanding of the ILC that the term 'State' means a 'State for the purposes of international law',[19] *ie* a **formally independent and thus sovereign State.**[20]

**6** Some States, and most of all the United States, felt that the limitation "took into account neither the development of international law during the twentieth century nor the growth of the activities of **international organizations**".[21] India and the USSR, on the other hand, pointed out that including treaties between international organizations under the scope of the Convention would complicate and delay the drafting process.[22] By and large, it was finally agreed that treaties between

[10] *Brierly* I 223, Draft Art 1 lit c: "The term 'treaty' does not include an agreement to which any entity other than States or international organizations is or may be a party." The wording closely follows Art 1 lit c of the 1935 Harvard Draft Convention on the Law of Treaties.

[11] *Brierly* I 229.

[12] With regard to component units of federal States, the proposed litmus test was the existence of an "international personality" (*Brierly* I 229).

[13] *Lauterpacht* I 90.

[14] *Lauterpacht* I 94.

[15] See also *Brierly* III 50.

[16] *Lauterpacht* I 92, Draft Art 10: "An instrument is void as a treaty if concluded in disregard of the international limitations upon the capacity of the parties to conclude treaties."

[17] *Lauterpacht* I 95.

[18] *Waldock* IV 10; see the discussion and decision of the ILC [1965-I] YbILC 9–16; disagreeing: *Menon* (1992), pp. 17, 18.

[19] Final Draft, Commentary to Art 1, 187, para 4.

[20] China (Taiwan) proposed at the UN Conference to add a definition of State to mean "a sovereign State". The proposal was rejected by the Drafting Committee on the basis of the lack of necessity for such a definition (UNCLOT III 112); the proposed definition relies on Art 4 Harvard Draft.

[21] UNCLOT I 11, para 3.

[22] UNCLOT I 12, para 7, 13, para 26.

international organizations had special characteristics and therefore should be considered separately by the ILC.[23] The compromise was flanked by the understanding that the thematic limitation of the Convention does not prejudice treaty law governing treaties concluded between other subjects of international law (→ Art 3).[24] Art 1 was eventually adopted at the Vienna Conference by 98 votes to none.[25]

## C. Elements of Article 1

### I. Treaties

7 → Art 2 MN 3–34

### II. States

8 By not defining 'State' in Art 2, the VCLT takes the most fundamental term for granted.[26] This approach is quite common when drafting multinational treaties,[27] since the legal problems linked to the diffuse concept of **sovereignty**[28] and the

---

[23] See the VCLT II.

[24] See the Resolution of the Vienna Conference relating to Art 1, UNCLOT II 178, annexed to the Final Act of the Conference, UNCLOT III 285:

> "*The United Nations Conference on the Law of Treaties,*
> *Recalling* that the General Assembly of the United Nations, by its Resolution 2166 (XXI) of 5 December 1966, referred to the Conference the draft articles contained in chapter II of the report of the International Law Commission on the work of its eighteenth session,
> *Taking note* that the Commission's draft articles deal only with treaties concluded between States,
> *Recognizing* the importance of the question of treaties concluded between States and international organizations or between two or more international organizations,
> *Cognizant* of the varied practices of international organizations in this respect, and
> *Desirous* of ensuring that the extensive experience of international organizations in this field be utilized to the best advantage,
> *Recommends* to the General Assembly of the United Nations that it refers to the International Law Commission the study, in consultation with the principal international organizations, of the question of treaties concluded between States and international organizations or between two or more international organizations." (footnote omitted)

[25] UNCLOT II 3, para 14.

[26] For a broad definition, see *Brierly* I 229 (Draft Art 2 lit a); *cf* also *Fitzmaurice* I 107 (Draft Art 3).

[27] See *eg* Arts 3 and 4 UN Charter, Art 36 para 1 ICJ Statute, Arts 1–3 Articles on State Responsibility UNGA Res 56/83, 12 December 2001, UN Doc A/RES/56/83.

[28] *Koskenniemi* (2005), pp. 240–245; *Bartelson* (2006), p. 463; *Krasner* (2004), p. 1075.

recognition of **statehood**[29] would, without doubt, needlessly burden the codification process.[30] Upon closer examination, however, the determination of sovereignty and statehood can be neglected in the context of Art 1 since the issue is actually resolved by Art 81. Accession to the VCLT is dependent upon the outcome of the **UN's admission process** (Art 4 UN Charter) or the decision on membership taken by the specialized agencies and international organizations mentioned in Art 81 (so-called **'Vienna formula'**[31]).[32] As an example in this regard, the **Holy See**—a member of various UN specialized agencies[33]—has been party to the VCLT since 1969. The Holy See is a subject of international law but does not fit comfortably within the criteria for statehood.[34] The **Byelorussian and Ukrainian Soviet Socialist Republics**, founding members of the United Nations[35] and parties to the VCLT since 1986, exemplify that even component units of federal States (→ Art 3 MN 19) may fall within the scope of Art 1 by virtue of Art 81. In the context of the VCLT II, it is remarkable that the then dependent territory of **Namibia** was expressly allowed access despite its lack of sovereignty (Art 84 VCLT II).[36]

**9** The cases mentioned illustrate that the VCLT consciously avoids a dogmatic view regarding the question of statehood and sovereignty. On the contrary: if the requirements of Art 81 are met, access to the Convention stipulates that all parties are *ipso iure* considered 'States' exclusively within the framework and for the purpose of the Convention. Consequently, all provisions of the Convention are

---

[29] On the difficulties of defining the term "State", see Harvard Draft 706. For an overview on statehood *Crawford* (2006); *Acquaviva* (2005), pp. 346–375; *Grant* (1999), p. 403.

[30] See the controversial debate of the ILC within the framework of the Draft Declaration on the Rights and Duties of States [1949] YbILC 61–68.

[31] In contrast to the 'all States formula', applied *eg* by the 1973 International Convention on the Suppression and Punishment of the Crime of Apartheid 1015 UNTS 243; see 1999 Summary of Practice of the Secretary-General as Depositary of Multilateral Treaties, UN Doc ST/LEG/7/Rev.1, para 79.

[32] The statement of the Final Draft, Commentary to Art 5, 192, para 4 that the term "State" is used with the same meaning as in the UN Charter, the ICJ Statute, the Geneva Convention on the Law of the Sea and the Vienna Convention on Diplomatic Relations—treaties which do not define the term—must be seen in the light of Art 81 VCLT.

[33] For example the World Intellectual Property Organization; see UNGA Res 58/314, 1 July 2004, UN Doc A/RES/58/314 for an overview of the international engagements of the Holy See.

[34] For considerations of the ILC, see ILC Report 11th Session [1959-II] YbILC 87, 96; *Araujo* (2001), p. 293, 323 *et seq; Abdullah* (1996), p. 1835.

[35] As the Ukrainian SSR lacked the characteristics of statehood in an international legal sense, it was agreed on by the UN Founding Conference that statehood (Art 4 UN Charter) was not a constitutive feature for founding members, irrespective of the wording of Art 3 UN Charter, *Fastenrath* (2012), Art 3 MN 6.

[36] Namibia was internationally represented by the UN Council for Namibia until its independence in 1990.

applicable to all parties, regardless of any doubts concerning the latter's independence, sovereignty or statehood.[37]

**10** Some treaties appear in form to be concluded between natural persons, *eg* the **heads of State**. The practice of concluding treaties between heads of State is principally a historical phenomenon, with roots in monarchic traditions. To this extent, the appearance of 'His/Her Majesty' as the party to the treaty is a relic of the ancient practice of identifying the person who was the head of State and embodied the State itself.[38] Such practice does not contradict the modern concept of a State as a judicial person acting through its organs.[39]

**11** Though the concept of 'State' has no constitutive function within the framework of the Convention, it can be of certain importance within the realm of **customary treaty law**. Whereas non-State Parties to the VCLT may have recourse to all provisions of the Convention in order to make visible respective rules of customary treaty law, other entities short of statehood must exercise restraint in this regard, *eg* in the context of Art 6 ("capacity to conclude treaties") or Art 7 para 2 ("representation").

**12** An indication for the statehood of entities with ambiguous international status is provided by the practice of registration by the UN Secretary-General with regard to those multilateral treaties which limit the participation to "any State" (so-called **'all States formula'**[40]). Self-governing territories (or States *in statu nascendi*) such as **Somaliland** (Awdal Republic)[41] or the **Turkish Republic of Northern Cyprus**[42] cannot invoke this formula to achieve participation in multilateral treaties due to the ongoing political ambivalence within the international community as to whether these entities should be recognized as 'States'. The practice of admission of international organizations, however, can produce a domino effect with regard to treaty access on the basis of the 'all State formula' which perfectly matches the

---

[37] But see Argentina's declaration upon ratification of the VCLT 1155 UNTS 502: "The application of this Convention to territories whose sovereignty is a subject of dispute between two and more States, whether or not they are parties to it, cannot be deemed to imply a modification, renunciation or abandonment of the position heretofore maintained by each of them."

[38] *Grewe* (2000), p. 90.

[39] See *eg* the 1952 Exchange of Notes Constituting an Agreement Giving Effect to the Convention of 31 March 1931 between His Majesty, in Respect of the United Kingdom, and the Federal President of the Republic of Austria, Regarding Legal Proceedings in Civil and Commercial Matters 236 UNTS 245.

[40] For reference, see n 30.

[41] In 1960 Somaliland, a former British colony, joined the former Italian Somalia to form the Somali Republic. Somaliland declared its independence in 1991 and requested recognition by the African Union in December 2005. The subject of State secession is still a matter of ongoing conflict and hampers international recognition as an independent State.

[42] See the Declaration of Independence of Turkish Cypriot Authorities, 15 November 1983, UN Doc A/38/586-S/16148. UNSC Res 541, 18 November 1983, UN Doc S/RES/541 (1983) considered the attempt to create and present the TRNC as being "legally invalid": it called for the withdrawal of the declaration of independence and asked all countries not to recognize the new republic.

effects of the 'Vienna formula' (→ MN 8). In 1965, the Secretary-General refused the Cook Islands' application for access to certain multilateral treaties containing 'all States clauses' by referring to the non-sovereign status of the islands.[43] However, after the WHO approved the islands' membership in 1984 following Art 6 of its Constitution ("States"), the Secretary-General considered that the Cook Islands could henceforth be included in the 'all State formula' of other multilateral treaties.[44] The controversial admission of Palestine to UNESCO in 2011 provides the latest example for such a dynamic.[45]

## D. Treaties of International Organizations (VCLT II)[46]

**13** For a definition of the term "international organization" → Art 2 MN 51–53

**14** Art 1 VCLT II (1986) follows the VCLT I (1969) template by clarifying that the 1986 Convention applies only to treaties between States and international organizations (Art 1 lit a) and treaties between international organizations (Art 1 lit b). The distinction of contractual relationships between States (VCLT I) and those with or between international organizations (VCLT II) may lead to the application of both Conventions to one multilateral agreement to which States and International Organizations are parties, *eg* the 1982 UN Convention of the Law of the Sea (UNCLOS), see → MN 3 and Art 73 MN 73. However, the technical fragmentation of one and the same treaty regime will have little consequences in practice, not only because the VCLT II is closely modeled after the VCLT I[47] but also because the longstanding failure of the VCLT II to enter into force has given rise to treaty practice of international organizations that use the VCLT I as a source for determining customary rules of the law of treaties.[48]

**15** Even though international organizations increasingly conclude international treaties, the subject-matter of these treaties are rather limited compared to those concluded by States. Most treaties to which one or more International Organizations are parties concern their status and relationship to Member States and host States, respectively, as well as the details of their cooperation and mandate.[49] Due to its extensive competences in fields originally covered by its Member States, the

---

[43] *Cf* UNGA Res 2064 (XX), 16 December 1965, UN Doc A/RES/2064 (XX) on the not-yet-sovereign status of the Cook Islands; see also [1979] UNJYB 172.

[44] For reference see n 30.

[45] (2012) 51 ILM 606–629.

[46] For the treaty text see p. 1486 *et seq.*

[47] *Gaja* (1987), p. 259: "strong feeling of déjà vu".

[48] ECJ *Racke* C-162/96 [1998] ECR I-3655, para 19, 45 *et seq.*

[49] By way of example, see the 1947 UN Convention on the Privileges and Immunities of the Specialized Agencies 33 UNTS 261; Under-Secretary for Administration and Management, Guidelines for the Preparation of Host Government Agreements, Annex: Model Agreement, Art X, UN-Doc ST/AI/342, 8 May 1987; Standard Agreement on Operational Assistance, concluded between the United Nations and Panama 774 UNTS 142.

treaty practice of the EU stands out in this regard.[50] Being party to more than 2000 international treaties means that the EU is party to environmental treaties, trade and investment agreements, as well as human rights treaties such as the 2006 Convention on the Rights of Persons with Disabilities to recount but a few.[51]

## References


*Abdullah Y* (1996) The Holy See at United Nations Conferences: State or Church ColLR 96 (7):1835–1875

*Acquaviva G* (2005) Subjects of International Law: A Power-Based Analysis. VandJTL 38 (2):345–396

*Araujo RJ* (2001) The International Personality and Sovereignty of the Holy See. CathULR 50 (2):291–360

*Bartelson J* (2006) The Concept of Sovereignty Revisited. EJIL 17(2):463–474

*Crawford J* (2006) The Creation of States in International Law. OUP, Oxford

*Fastenrath U* (2012) Article 3. In: *Simma B, Khan D-E, Nolte G, Paulus A* (eds) The Charter of the United Nations: A Commentary, 3rd edn. OUP, Oxford, pp 335–340

*Gaja G* (1987) A "new" Vienna Convention on Treaties between States and International Organizations or between International Organizations: A Critical Commentary. BYIL 58(1):253–269

*Grant TD* (1999) Defining Statehood: The Montevideo Convention and its Discontents. ColJTL 37 (2):403–457

*Grewe WG* (2000) The Epochs of International Law. De Gruyter, Berlin

*Haak V* (1967) "Unless the Treaty otherwise provides" and Similar Clauses in the International Law Commission's 1966 Draft Articles on the Law of Treaties. ZaöRV 25(3):540–561

*Koskenniemi M* (2005) From Apology to Utopia: The Structure of International Legal Argument. CUP, Cambridge

*Krasner SD* (2004) The Hole in the Whole: Sovereignty, Shared Sovereignty, and International Law. MichJIL 25(4):1075–1102

*Menon PK* (1992) The Law of Treaties between States and International Organizations. Edwin Mellen Press, Lewiston, New York

*Rosenne S* (1989) Developments in the Law of Treaties 1945–1986. CUP, Cambridge

*Sinclair I* (1984) The Vienna Convention on the Law of Treaties, 2nd edn. University Press, Manchester

*Verwey DR* (2004) The European Community, the European Union and the International Law of Treaties: A Comparative Legal Analysis of the Community and Union's External Treaty Making Practice. The Hague, T.M.C. Asser Press

*Vierdag EW* (1982) The Law Governing Treaty Relations between Parties to the VCLT and States not Party to the Convention. AJIL 76(4):779–801

*Vierdag EW* (1987) Some Remarks on the Relationship between the 1969 and the 1986 Vienna Convention on the Law of Treaties. AVR 25(1):82–91

*Villiger M* (2009) Commentary on the 1969 Vienna Convention on the Law of Treaties. Nijhoff, Leiden


[50] See generally *Verwey* (2004).

[51] 2006 Convention on the Rights of Persons with Disabilities 2515 UNTS 3.