# EXHIBIT 74

REPUBLIQUE FRANCAISE

AU NOM DU PEUPLE FRANCAIS

COUR D'APPEL DE PARIS

Chambre commerciale internationale

PÔLE 5 - CHAMBRE 16

ARRET DU 19 AVRIL 2022

(n° 49 /2022 , 12 pages)

Numéro d'inscription au répertoire général : N° RG 20/14581 - N° Portalis 35L7-V-B7E-CCPBD

Décision déférée à la Cour : sentence arbitrale intitulée « Award (corrected) » rendue le 3 février 2020 à Paris en matière d'arbitrage international sous l'égide de la Cour permanente d'arbitrage sous le numéro d'affaire PCA n° 2017-10


DEMANDERESSE AU RECOURS :

REPUBLIQUE DE POLOGNE

Agissant poursuites et dilgences de son General Counsel (Urzad Prokuratorii Generalnej Rzeczypospolitej Polskiej)

Office of the General Counsel

Ul. Hoza 76/78, 00-682 VARSOVIE (POLOGNE)


Représentée par Me Luca DE MARIA de la SELARL PELLERIN - DE MARIA - GUERRE, avocat postulant du barreau de PARIS, toque : L0018

Assistée par Me Quentin MURON et Me Eduardo SILVA ROMERO, du cabinet DECHER LLP, avocats plaidants du barreau de PARIS, toque J096


DÉFENDERESSE AU RECOURS :

Société CEC PRAHA

Pobrezni 18,16 Karlin 186 00

Karlin 186 00 PRAGUE (RÉPUBLIQUE TCHÈQUE)

Société SLOT GROUP AS C/O M. [I] [B] (administrateur à la faillite de la société SLOT AS)

[K] 1105/36

500 02 Hradec Kralové

500 0 HRADEC KRAL (RÉPUBLIQUE TCHÈQUE)

Représentées par Me Michel GUIZARD de la SELARL GUIZARD ET ASSOCIES, avocat postulant du barreau de PARIS, toque : L0020

Assistées par Me Benjamin SIINO et Me François BORDES de l'AARPI GAILLARD BANIFATEMI SHELBAYA SIINO, avocats plaidants du barreau de PARIS, toque : R257

COMPOSITION DE LA COUR :

L'affaire a été débattue le 08 Mars 2022, en audience publique, devant la Cour composée de :

M. François ANCEL, Président

Mme Fabienne SCHALLER, Conseillère

Mme Laure ALDEBERT, Conseillère

qui en ont délibéré,

Greffier, lors des débats : Mme Najma EL FARISSI

ARRÊT :

- contradictoire

- par mise à disposition de l'arrêt au greffe de la Cour, les parties en ayant été préalablement avisées dans les

conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

- signé par François ANCEL, Président et par Najma EL FARISSI, greffière à laquelle la minute de la décision a été remise par le magistrat signataire.

I/ FAITS ET PROCÉDURE

1- Le 16 juillet 1993 la République de Pologne et la République Tchèque ont signé un accord de promotion et de protection réciproque des investissements, entré en vigueur le 29 juin 1994 (ci-après désigné le « TBI »).

2- Le 1er mai 2004 la République de Pologne et la République Tchèque ont adhéré à l'Union européenne.

3- La société Slot Group (ci-après Slot) aujourd'hui en faillite, était une société de droit tchèque immatriculée en République Tchèque spécialisée dans l'organisation des jeux de machines à sous à faible enjeu, communément appelées machines à sous.

4- Elle est devenue propriétaire en 2004 de 60% des parts de la société polonaise Slot qui exploitait ce type de machines à sous en Pologne et s'est rapidement développée dans ce secteur qui avait été libéralisé en Pologne 2003.

5- En 2009, le gouvernement polonais est revenu sur la libéralisation de ce marché et a adopté une loi interdisant l'exploitation de ces jeux en dehors des casinos et salles de jeux.

6- La rentabilité de la société Slot a diminué et après plusieurs années elle a cessé son activité.

7- S'estimant lésée par le comportement de la Pologne, la société tchèque Slot Group a initié le 29 novembre 2016 devant la Cour permanente d'arbitrage à Paris un arbitrage sur la base des dispositions de l'article 8 du TBI, pour voir constater la violation par la République de Pologne de ses obligations lui incombant au titre de ce Traité, et ordonner le paiement de dommages et intérêts.

8- Au terme de la sentence rendue à Paris le 3 février 2020, le tribunal arbitral s'est déclaré compétent pour statuer sur le différend, en rejetant l'objection soulevée par la République de Pologne fondée sur le droit de l'Union et a accédé en partie à la demande de la société Slot en condamnant la République de Pologne à lui verser une somme (de 2 599 144 z'otys soit environ 570 000 euros) en réparation de la violation de l'article 2 du TBI.

9- Le 2 avril 2020, le Tribunal a émis une version corrigée de la Sentence afin de rectifier des erreurs matérielles.

10- 14 août 2019, le tribunal régional de Plze' (République tchèque) a prononcé l'insolvabilité de Slot Group, et nommé M. [I] [B] comme administrateur judiciaire de la société.

11- Le 20 février 2020, M. [I] [B] ' en sa qualité d'administrateur judiciaire de Slot Group ' a conclu avec CEC Praha un contrat transférant à cette dernière la propriété de certains biens de Slot Group et à compter du 1 er avril 2020, CEC Praha ' et non plus Slot Group ' est devenue la nouvelle créditrice des sommes prétendument dues par la Pologne au titre de la Sentence.

12- Par acte du 15 octobre 2020 la République de Pologne a saisi la cour d'appel de Paris d'un recours en annulation contre la sentence arbitrale rendue.

13- La clôture de l'instruction a été prononcée le 1er mars 2022.

II/ PRÉTENTIONS DES PARTIES

12- Aux termes de ses dernières conclusions notifiées par voie électronique le 7 février 2022, la République de Pologne demande à la cour, au visa de l'article 267 du Traité sur le fonctionnement de l'Union européenne et des articles 1518, 1520, 699 et 700 du code de procédure civile de bien vouloir :

' ANNULER la Sentence ;

' REJETER la demande de soumission d'une question préjudicielle à la CJUE en application de l'article 267 du TFUE ;

' CONDAMNER les Défenderesses au paiement de la somme de 200 000 euros en application de l'article 700 du Code de procédure civile ;

' CONDAMNER les Défenderesses aux entiers dépens.

13 - Par conclusions notifiées par voie électronique le 25 février 2021, la société Slot, représentée par son administrateur à la faillite, et la société CEC Praha, demandent à la cour, au visa notamment des articles 700, 1466 et 1520 du code de procédure civile, le principe de l'estoppel et l'article 267 du Traité sur le fonctionnement de l'Union européenne, de :

-DÉCLARER IRRECEVABLES les demandes de la République de Pologne tendant à l'annulation de la Sentence rendue le 3 février 2020 par le Tribunal arbitral constitué en application du Traité bilatéral de promotion et de

protection des investissements conclus entre la République tchèque et la République de Pologne le 16 juillet 1993 dans l'Affaire n° 2017-10 opposant la société SLOT GROUP à la République de Pologne sur le fondement des articles 1520 1° et 5° du code de procédure civile, en ce qu'elles sont fondées sur les principes fondamentaux et caractéristiques essentielles du droit de l'Union européenne fondant la solution adoptée par la CJUE dans la décision Achmea ;

-REJETER l'ensemble des demandes de la République de Pologne tendant à l'annulation de la Sentence rendue le 3 février 2020 par le Tribunal arbitral, en ce qu'elles sont fondées sur les principes fondamentaux et caractéristiques essentielles du droit de l'Union européenne fondant la solution adoptée par la CJUE dans la décision Achmea ;

-DÉBOUTER en conséquence la République de Pologne de son recours en annulation ;

-DÉBOUTER la République de Pologne de l'ensemble de ses demandes, fins et prétentions ;

À titre subsidiaire :

-DÉCLARER IRRECEVABLE la demande de la République de Pologne tendant à l'annulation de la Sentence rendue le 3 février 2020 par le Tribunal arbitral constitué en application du Traité bilatéral de promotion et de protection des investissements conclus entre la République tchèque et la République de Pologne le 16 juillet 1993 dans l'Affaire n° 2017-10 opposant la société SLOT GROUP à la République de Pologne sur le fondement de l'article 1520 1° du Code de procédure civile ;

-REJETER l'ensemble des demandes de la République de Pologne tendant à l'annulation de la Sentence rendue le 3 février 2020 par le Tribunal arbitral ;

-DÉBOUTER en conséquence la République de Pologne de son recours en annulation ;

-DÉBOUTER la République de Pologne de l'ensemble de ses demandes, fins et prétentions

À titre infiniment subsidiaire :

-SOUMETTRE les questions préjudicielles suivantes à la Cour de justice de l'Union européenne en application de l'article 267 du Traité sur le fonctionnement de l'Union européenne :

« Est-ce que les articles 267 et 344 TFUE doivent être interprétés en ce sens qu'ils obligent une juridiction d'un Etat membre saisie d'un recours en annulation contre une sentence arbitrale d'annuler cette sentence pour le motif que la clause de règlement de différend entre investisseur et Etat contenue dans un traité bilatéral de protection des investissements conclus entre Etats membres est contraire au droit de l'Union, dans des conditions où, en raison de l'expiration des délais de recours pour contester les mesures de l'Etat membre hôte de l'investissement

devant les juridictions de ce dernier, pareille annulation priverait l'investisseur de toute protection juridictionnelle effective '

Est-ce que les articles 267 et 344 TFUE doivent être interprétés en ce sens qu'ils obligent une juridiction d'un Etat membre saisie d'un recours en annulation contre une sentence arbitrale d'annuler cette sentence pour le motif que la clause de règlement de différend entre investisseur et Etat contenue dans un traité bilatéral de protection des investissements conclus entre Etats membres est contraire au droit de l'Union, dans des conditions où l'Etat membre hôte de l'investissement méconnaîtrait les principes fondamentaux et les caractéristiques essentielles du droit de l'Union européenne et l'Etat de droit, de sorte que l'annulation de la sentence priverait l'investisseur de toute protection juridictionnelle effective devant les juridictions de cet Etat ' ».

En tout état de cause :

-CONDAMNER la République de Pologne à payer aux sociétés SLOT GROUP et CEC PRAHA la somme de 50 000 euros au titre de l'article 700 du Code de procédure civile ;

-CONDAMNER la République de Pologne aux entiers dépens.

III/ MOYENS DES PARTIES

14- Au soutien du premier moyen tiré de l'incompétence du tribunal arbitral, la Pologne fait valoir que la convention d'arbitrage contenue en son article 8 par le TBI est contraire au droit de l'Union, tel qu'interprété par la CJUE de sorte qu'elle était insusceptible de fonder la compétence du tribunal arbitral.

15-Elle soutient que depuis l'adhésion de la Pologne à l'UE aucune offre d'arbitrage contenue dans un Traité d'investissement entre cet Etat, et un autre Etat membre de l'Union européenne comme c'est le cas en l'espèce n'est valide.

16- Elle fait observer d'un point de vue procédural qu'ayant contesté de manière constante et au début de la procédure la compétence du tribunal arbitral sur le fondement du droit de l'Union par son statement of Defense dès novembre 2017, avant même que soit rendu l'arrêt Achméa, c'est de bonne foi qu'elle soulève ce moyen auquel elle n'a jamais renoncé.

17- Sur le bien fondé de son recours sur l'article 1520-1 du code de procédure civile, elle soutient qu'il existe un conflit entre la clause d'arbitrage du Traité de l'espèce et le droit de l'Union, qui doit être résolu au profit de ce dernier en vertu du principe de primauté du droit de l'Union, établi à l'article 351 du TFUE tel qu'interprété par la CJUE dans l'arrêt préjudiciel Achméa dont la solution a été confirmée dans les arrêts PL Holdings et Komstroy, et reprise par un accord portant extinction des traités bilatéraux d'investissement entre Etats membres de l'union

européenne en 2020.

18- Pour ces raisons elle soutient que la convention d'arbitrage du Traité de l'espèce est clairement contraire aux traités de l'Union et donc inapplicable de sorte que la sentence en retenant la compétence du tribunal arbitral méconnaît une règle du droit de l'Union qui est impérative et qu'elle doit être annulée.

19- En réponse aux moyens et arguments soulevés par la société Slot, pour écarter la solution dégagée par la jurisprudence Achméa, la République de Pologne réplique que la règle de droit identifiée par la CJUE en vertu de laquelle la clause du TBI est invalide concerne tous les TBI intra Union sans qu'il importe qu'une éventuelle clause de droit applicable puisse faire référence au droit de l'Union.

20- Elle avance que la primauté du droit de l'Union s'impose quelle que soit la règle de conflit retenue pour résoudre cette incompatibilité et que le recours à la Convention de Vienne sur le droit des Traités ou au besoin selon les défenderesses, à la règle matérielle du droit international de l'arbitrage pour prétendre de l'existence d'un consentement valide est inopérant et conduit au même résultat.

21- La Pologne explique au regard de la Convention de Vienne sur le droit des traités, qu'en application de l'article 59 (1) de ladite Convention, le TBI a pris fin au moment de l'adhésion à l'Union européenne de la République de Pologne et de la République Tchèque, à défaut que l'article 8 est inapplicable en application de l'article 30 (3) de la Convention de Vienne.

22-Au regard de la règle matérielle pour le contrôle de la validité de la convention d'arbitrage, elle soutient que la primauté du droit de l'Union fait échec au prétendu consentement des parties qui ne peut contrevenir à la solution dégagée par la CJUE qu'elle a réitérée dans les arrêts CJUE Komstroy et PL Holdings .

23-Elle ajoute que depuis l'adhésion de la Pologne à l'UE aucune offre d'arbitrage valide n'a pu être faite à la société Slot et que les investisseurs ne peuvent invoquer des TBI intra-UE puisqu'ils sont incompatibles avec le droit de l'Union et ne sont plus nécessaires dans le marché unique.

24-La République de Pologne invoque un second moyen tiré de la violation de l'ordre public international dans lequel elle soutient pour les mêmes motifs que ceux visés plus haut, que la sentence en méconnaissant la règle du droit de l'Union impérative et effectivement applicable à la cause dégagée par l'arrêt CJUE Achméa et réitérée par les arrêts CJUE Komstroy et PL Hodings porte atteinte à la conception française de l'ordre public international français.

25- Elle conteste le fait allégué par la société Slot et CEC Praha selon lequel l'annulation de la sentence affecterait son droit à recours effectif du fait d'une prétendue prescription ou des défauts du système judiciaire polonais qui ne sont pas prouvés.

26- La République de Pologne s'oppose enfin pour les mêmes raisons à la transmission des questions préjudicielles dès lors que selon son analyse aucune décision de la CJUE n'est nécessaire pour que la cour rende sa

décision.

27- En réponse, les sociétés Slot et CEC Praha soutiennent à titre principal que la Pologne est irrecevable à se prévaloir de la jurisprudence Achméa en faisant valoir que la Pologne viole les principes et de manière générale toute norme du droit de l'Union européenne.

28 - Elles rappellent notamment que par une décision rendue le 7 octobre 2021 le Tribunal constitutionnel polonais a jugé que les articles 2 et 19 du TUE étaient incompatibles avec la Constitution polonaise, et que par une décision rendue le 14 juillet 2021, il a jugé que les ordonnances provisoires rendues par la CJUE sur la structure des juridictions polonaises étaient incompatibles avec la Constitution polonaise.

29- Elles font observer que le 22 décembre 2021, la Commission européenne a engagé une procédure d'infraction à l'encontre de la République de Pologne en raison de «graves préoccupations relatives au Tribunal constitutionnel polonais et à sa jurisprudence récente» résultant des décisions rendues par le Tribunal constitutionnel polonais et que selon la Commission européenne, la République de Pologne, aux termes des décisions du Tribunal constitutionnel « enfrei[nt] les principes généraux d'autonomie, de primauté, d'effectivité et d'application uniforme du droit de l'Union ainsi que le caractère contraignant des arrêts de la Cour de justice de l'Union européenne ».

30-Partant des constats que la Pologne considère les principes de l'Union européenne contraires à ses principes constitutionnels et comme ne s'imposant pas à elle, elle soutient que son comportement est contraire aux principes de bonne foi et d'exécution de bonne foi des conventions d'arbitrage, constitutif d'un abus de droit qui commande d'écarter la jurisprudence précitée.

31-Subsidiairement les sociétés Slot et CEC Praha soutiennent que les effets de la jurisprudence Achméa ne s'appliquent pas dés lors que les principes du droit de l'Union ne trouvent pas à s'appliquer dans le Traité en cause pour trancher le litige.

32-Elles soutiennent que la Pologne, sur la base d'une convention d'arbitrage qui est valide, a valablement consenti à l'arbitrage qu'elle ne peut plus contester dans le cadre de ce recours.

33-A cet égard, elles font valoir que le contrôle de la compétence se fait dans le cadre de la règle matérielle du droit international de l'arbitrage c'est-à-dire de l'examen de la commune intention des parties sans référence une loi étatique; que la Pologne ne peut se soustraire à son engagement en invoquant une prétendue violation du droit français ou du droit polonais en tant qu'ils incorporaient le droit de l'Union européenne, dès lors que le contrôle de la validité de la clause d'arbitrage contenue à l'article 8 du Traité se fait au regard de la règle matérielle du droit international de l'arbitrage, c'est-à-dire de l'examen de la commune intention des parties sans référence une loi étatique.

34- Elles contestent le contrôle de la validité de la clause d'arbitrage puisse s'effectuer au regard de la convention de Vienne sur le droit des Traités à laquelle la France n'est pas partie et dont les dispositions fussent-elles applicables ne sont pas incompatibles avec le présent TBI.

35- Sur le caractère non applicable de la jurisprudence Achméa, elles prétendent qu'à la différence l'article 8 du TBI conclu entre la République Tchèque et les Pays 'Bas, dans l'affaire Achméa le tribunal arbitral devait trancher le litige en considération du droit interne de l'Etat hôte de l'investissement qui inclut le droit de l' Union européenne ce qui n'est pas le cas en l'espèce ; le tribunal arbitral devait seulement appliquer le TBI sans devoir appliquer ou interpréter le droit polonais ou le droit de l'union européenne de sorte que le risque identifié par la CJUE dans l'affaire Achméa n'existe pas et la jurisprudence n'est pas applicable à ce cas particulier.

36- Sur le moyen tiré de la violation de l'ordre public international, elles font valoir que pour les raisons évoquées - à savoir que la solution dégagée dans Achméa n'est pas applicable à l'article 8 du TBI en cause- que ce moyen est mal fondé.

37- Elles soulèvent en outre que l'annulation de la sentence affecterait leur droit à un procès équitable et à un recours effectif consacrés aux articles 6 et 13 de la CEDH et demandent à la cour d'exercer un contrôle de proportionnalité qui s'impose aux juges du fond.

38- Elles font valoir que l'annulation de la sentence les remettrait dans la situation antérieure en les privant d'une part de la possibilité de saisir toute juridiction pour connaître de la violation de ses obligations par la Pologne et d'autre part de la possibilité d'invoquer le bénéfice des principes fondamentaux du droit de l'Union devant les juridictions polonaises.

39- A cet égard, elles font remarquer que plus de 10 ans se sont écoulés depuis l'adoption de la loi polonaise en 2009 ayant donné lieu aux faits litigieux et que l'Etat refuse de garantir au justiciable une protection juridictionnelle effective et le droit au procès équitable, viole le principe de la primauté du droit de l'Union européenne et entrave la liberté des juridictions polonaises de poser des questions préjudicielles à la CJUE.

40- Elles en tirent comme conséquence que l'annulation de la sentence consacrerait un déni de justice et entrainerait des conséquences disproportionnées qui commandent de rejeter le recours sur le fondement de l'article 1520-5° du code de procédure civile.

41- A titre infiniment subsidiaire, si la cour retenait que les conditions de l'annulation sont remplies les défenderesses demandent que l'annulation de la sentence ne soit pas prononcée sans que la cour au préalable ne saisisse la CJUE de questions préjudicielles telles qu'énoncées au point 149 de leurs conclusions.

IV/ MOTIFS DE LA DÉCISION

Sur le moyen d'annulation tiré de ce que le tribunal arbitral s'est reconnu à tort compétent (article 1520-1° du code de procédure civile)

42- Selon l'article 1520, 1°, du code de procédure civile, le recours en annulation est ouvert si le tribunal s'est

déclaré à tort compétent ou incompétent.

43- Le juge de l'annulation contrôle la décision du tribunal arbitral sur sa compétence, qu'il se soit déclaré compétent ou incompétent, en recherchant tous les éléments de droit ou de fait permettant d'apprécier la portée de la convention d'arbitrage. Il n'en va pas différemment lorsque les arbitres sont saisis sur le fondement d'un traité.

Sur l'irrecevabilité du moyen sur le fondement de l'article 1466 du code de procédure et de l'estoppel

44-Aux termes de l'article 1466 du même code, la partie qui, en connaissance de cause et sans motif légitime, s'abstient d'invoquer en temps utile une irrégularité devant le tribunal arbitral est réputée avoir renoncé à s'en prévaloir.

45- La procédure d'arbitrage a été menée conformément au Règlement d'arbitrage de la Commission des Nations unies pour le droit commercial international (CNUDCI) dont les dispositions prévoient que les parties ne peuvent plus se fonder sur des objections qu'elles n'ont pas fait valoir promptement.

46- En outre, la fin de non-recevoir tirée du principe selon lequel nul ne peut se contredire au détriment d'autrui sanctionne l'attitude procédurale consistant pour une partie, au cours d'une même instance, à adopter des positions contraires ou incompatibles entre elles dans des conditions qui induisent en erreur son adversaire sur ses intentions.

47- En l'espèce, il ressort de la sentence que la Pologne a contesté la compétence du tribunal arbitral pour connaître des demandes en faisant valoir l'application du droit de l'Union ; qu'il importe peu que les arguments aient été évoqués dans la procédure d'annulation pour la première fois un an après l'introduction de la procédure et 25 ans après la signature du TBI à partir du moment où l'exception d'incompétence a été soulevée au cours de la procédure arbitrale et qu'il n'est pas possible d'induire de ce comportement une renonciation à agir ou même une acceptation de la compétence par la recourante.

48- Il ressort de ce qui précède que la compétence ayant été débattue devant les arbitres, la Pologne, qui n'a pas changé pas de position procédurale ou adopter de position contraires incompatibles de nature à induire en erreur les défenderesses au recours, est recevable, à soutenir le moyen d'annulation tirée de l'incompétence du tribunal arbitral devant le juge de l'annulation.

49- Cette fin de non-recevoir sera en conséquence rejetée.

Sur l'irrecevabilité de la République de Pologne au regard de la violation alléguée des principes du droit d'Union européenne

50- Il est constant en l'espèce que le tribunal arbitral s'est déclaré compétent sur le fondement de l'article 8 du TBI relatif au « Règlement des différends en matière d'investissement entre une partie contractante et un investisseur de l'autre partie contractante » et qui dispose que :

« l. Tout différend qui pourrait survenir entre un investisseur d'une partie contractante et une autre partie

contractante concernant des investissements effectués sur le territoire de cette autre partie contractante sera réglé à l'amiable entre les parties au différend.

2. Si un différend entre un investisseur d'une partie contractante et une autre partie contractante n'est pas résolu dans les six mois, l'investisseur aura le droit de soumettre le différend :

a) au Centre international pour le règlement des différends relatifs aux investissements (CIRDI) conformémentaux dispositions de la Convention pour le règlement des différends relatifs aux investissements entre un État et l'investisseur d'autres États, ouverte à la signature à Washington D.C. le 18 mars 1965, lorsque les deux parties contractantes deviennent parties à cette convention, ou

b) à un arbitrage ou à un tribunal arbitral international ad hoc constitué conformément au Règ1ement d'arbitrage de la Commission des Nations unies pour le droit commercial international (CNUDCI). Les parties au litige peuvent, par écrit, modifier le présent règlement. La sentence arbitrale est dé'nitive et lie les deux parties au différend ».

51- Cependant, par arrêt préjudiciel en date du 6 mars 2018 (affaire C-284/16 -Slowakische Republik contre Achméa Bv- dit Achméa), la CJUE a dit pour droit que « Les articles 267 et 344 TFUE doivent être interprétés en ce sens qu'ils s'opposent à une disposition contenue dans un accord international conclu entre les États membres, telle que l'article 8 de l'accord sur l'encouragement et la protection réciproques des investissements entre le Royaume des Pays-Bas et la République fédérale tchèque et slovaque, aux termes de laquelle un investisseur de l'un de ces États membres peut, en cas de litige concernant des investissements dans l'autre État membre, introduire une procédure contre ce dernier État membre devant un tribunal arbitral, dont cet État membre s'est obligé à accepter la compétence ».

52- En d'autres termes, la Cour de justice de l'Union européenne a jugé incompatible avec le droit de l'Union une clause de règlement des différends contenue dans un TBI conclu entre deux États membres.

53-La CJUE a réitéré cette solution par un arrêt préjudiciel en date du 26 octobre 2021 dans l'affaire C-109/20-Republiken Polen contre PL Holdings, en rappelant notamment au point 44 que « la Cour a jugé que les articles 267 et 344 TFUE doivent être interprétés en ce sens qu'ils s'opposent à une disposition d'un accord international conclu entre deux États membres aux termes de laquelle un investisseur de l'un de ces États membres peut, en cas de litige concernant des investissements dans l'autre État membre, introduire une procédure contre ce dernier État membre devant un tribunal arbitral, dont cet État membre s'est obligé à accepter la compétence (arrêt du 6 mars 2018, Achmea, C-284/16, EU:C:2018:158, point 60) ».

54Et au point 45 de cette décision, la CJUE précise que « En effet, par la conclusion d'un tel accord, les États membres parties à celui-ci consentent à soustraire à la compétence de leurs propres juridictions et, partant, au système de voies de recours juridictionnel que l'article 19, paragraphe 1, second alinéa, TUE leur impose d'établir dans les domaines couverts par le droit de l'Union (voir, en ce sens, arrêt du 27 février 2018, Associação Sindical dos Juízes Portugueses, C-64/16, EU:C:2018:117, point 34), des litiges pouvant porter sur l'application ou l'interprétation de ce droit. Un tel accord est, par conséquent, susceptible d'exclure que ces litiges soient tranchés d'une manière garantissant la pleine efficacité dudit droit (voir, en ce sens, arrêt du 2 septembre 2021, Komstroy, C-741/19, EU:C:2021:655, points 59 et 60 ainsi que jurisprudence citée) ».

55-La quasi-totalité des États membres ont d'ailleurs par la suite pris acte de la décision Achméa, en signifiant par différentes déclarations leur intention de dénoncer les TBI existant entre les États membres. Ces déclarations ont été suivies par la conclusion, par 23 États membres, le 5 mai 2020, d'un accord portant extinction des traités

bilatéraux d'investissement entre États membres de l'Union.

56 - Ainsi, l'article 4, paragraphe 1, de l'accord portant extinction des traités bilatéraux d'investissement entreÉtats membres de l'Union européenne (JO 2020, L 169, p. 1) énonce:

« Les parties contractantes confirment que les clauses d'arbitrage [entre un investisseur et un État figurant dans un traité bilatéral d'investissement] sont contraires aux traités de l'Union, et qu'elles sont donc inapplicables. En raison de cette incompatibilité entre les clauses d'arbitrage et les traités de l'Union, à compter de la date à laquelle la dernière des parties à un traité bilatéral d'investissement est devenue un État membre de l'Union européenne, la clause d'arbitrage figurant dans un tel traité bilatéral d'investissement ne peut servir de fondement juridique à une procédure d'arbitrage. ».

57- L'article 7 de cet accord dispose également que :

« Lorsque les parties contractantes sont des parties à des traités d'investissement bilatéraux sur la base desquels a été ouverte une procédure d'arbitrage en cours ou une procédure d'arbitrage nouvelle, elles doivent :

a) dans le cadre d'une coopération mutuelle et sur la base de la déclaration figurant à l'annexe C, informer les tribunaux d'arbitrage des conséquences juridiques de l'arrêt [du 6 mars 2018,] Achmea [(C-284/16, EU:C:2018:158),] telles qu'elles sont décrites à l'article 4 ; et

b) lorsqu'elles sont parties à une procédure judiciaire concernant une sentence arbitrale rendue sur la base d'un traité bilatéral d'investissement, demander à la juridiction nationale compétente, y compris dans tout pays tiers, d'annuler ladite sentence arbitrale ou de s'abstenir de la reconnaître et de l'exécuter, selon le cas. ».

58 - Il ressort de l'ensemble de ces éléments que le recours exercé par la Pologne, qui pour les motifs rappelés plus haut n'a pas renoncé à contester la compétence, est conforme aux engagements pris par la majorité des Etats membres dans l'accord portant extinction des traités bilatéraux d'investissement entre États membres de l'Union européenne de demander à la juridiction nationale d'annuler la sentence rendue sur une base d'un Traité bilatéral d'investissement de sorte qu'il ne peut revêtir les caractéristiques d'un abus de droit ou être empreint de mauvaise foi.

59 - Il ne peut se déduire de ce recours en annulation, quand bien même son comportement vis-à-vis du droit de l'Union lui a été reproché par les autorités compétentes de l' Union européenne, qu'elle est animée par une intention de nuire qui l'empêcherait de se prévaloir des effets attachés à la solution dégagée dans l'arrêt Achméa.

60-En effet, à supposer même que soient confirmées les carences du système judiciaire de l'Etat polonais, la Pologne avait l'obligation d'agir ainsi, comme l'a jugé la CJUE au point 52 de la décision PL Holdings en énonçant qu'il « découle tant de l'arrêt du 6 mars 2018, Achmea (C-284/16, EU:C:2018:158), que des principes de primauté du droit de l'Union et de coopération loyale, que les États membres non seulement ne peuvent s'engager à soustraire au système juridictionnel de l'Union les litiges susceptibles de porter sur l'application et l'interprétation du droit de l'Union, mais également que, dès lors qu'un tel litige est porté devant un organisme d'arbitrage en

vertu d'un engagement contraire audit droit, ils sont tenus de contester, devant cet organisme d'arbitrage ou devant le juge compétent, la validité de la clause d'arbitrage ou de la convention d'arbitrage ad hoc en vertu de laquelle ledit organisme a été saisi. ».

61- En outre, il n'appartient pas à la présente Cour de tirer unilatéralement des conséquences sur les procédures en cours engagées par l'Union européenne contre la Pologne au titre du respect de ses engagements en tant qu'Etat membre, étant rappelé que le principe de confiance mutuelle entre juridictions des Etats membres, qui consiste pour les juges à accorder confiance et respect des décisions rendues dans les autres Etats membres, doit prévaloir, en l'absence de décisions contraires des autorités compétentes de l'Union européenne.

62- Il convient dès lors de débouter les sociétés défenderesses de leur moyen tendant à empêcher la République de Pologne de se prévaloir des décisions de la CJUE pour considérer que le tribunal arbitral s'est à tort déclaré compétent.

63 -Il convient en conséquence d'examiner la compétence du tribunal arbitral à la lumière de la solution dégagée par la CJUE dans l'arrêt Achméa précité.

64 -A cet égard, il convient de relever qu'en l'espèce la clause figurant à l'article 8 du TBI de l'espèce est une clause de règlement des différends figurant dans un traité d'investissement entre deux Etats membres, la République de Pologne et la République Tchèque. Aux termes de cette clause, un investisseur de l'un des Etats membres peut en cas de litige concernant des investissements dans l'autre Etat membre introduire une procédure contre ce dernier Etat membre devant un tribunal arbitral dont cet Etat membre s'est obligé à accepter la compétence,comme c'était le cas dans l'affaire ayant donné lieu à l'arrêt du 6 mars 2018, Achmea (C-284/16).

65-Quand bien même, le tribunal arbitral puisse être amené à trancher le différend en application du seul TBI, alors que dans l'affaire Achméa le TBI prévoyait que le tribunal arbitral devait trancher les différends qui lui étaient soumis en prenant en considération le droit interne de l'Etat hôte de l'investissement, ce qui incluait le droit de l'Union européenne, le mécanisme de règlement figurant à l'article 8 du TBI de l'espèce n'exclut pas que le tribunal arbitral puisse être amené à statuer dans des litiges pouvant porter sur l'application ou l'interprétation du droit de l'Union.

66- En effet, il est établi et non contesté d'une part, que le règlement d'arbitrage CNUDCI auquel la procédure est soumise et qui prévoit que « le tribunal arbitral applique les règles de droit désignées par les parties comme étant celles applicables au fond du litige. A défaut d'une telle désignation par les parties, il applique le droit qu'il juge approprié » n'exclut pas que le droit de l'Union puisse s'appliquer ni que le tribunal arbitral prenne une décision susceptible de rentrer en contrariété avec ce droit.

67- D'autre part, il ressort de la décision Achméa confirmée par la décision PL Holdings que la CJUE a statué en termes généraux sur la contrariété au droit de l' Union européenne des clauses de règlement des TBI entre Etats membres sans faire de distinction selon que la clause comporte ou non un renvoi au droit applicable.

68- Il n'y a donc pas lieu de traiter la situation de la présente cause différemment de la solution dégagée dans les affaires Achméa et PL Holdings, dont il convient de rappeler que la CJUE a considéré au point 46 de cette dernière

décision que la clause d'arbitrage ne pouvait plus servir de base à la procédure d'arbitrage dès lors qu'une telle clause était « de nature à remettre en cause, outre le principe de confiance mutuelle entre les États membres, la préservation du caractère propre du droit de l'Union, assurée par la procédure du renvoi préjudiciel prévue à l'article 267 TFUE. Ladite clause n'est dès lors pas compatible avec le principe de coopération loyale énoncé à l'article 4, paragraphe 3, premier alinéa, TUE et porte atteinte à l'autonomie du droit de l'Union consacrée, notamment, à l'article 344 TFUE » et qui a ajouté que « En outre, ainsi que le confirme l'article 4, paragraphe 1, de l'accord portant extinction des traités bilatéraux d'investissement entre États membres de l'Union européenne, à compter de la date d'adhésion de la République de Pologne à l'Union le 1er mai 2004, l'article 9 du TBI ne pouvait plus servir de fondement à une procédure d'arbitrage entre un investisseur et cet État membre.».

69- Il convient en conséquence de considérer que l'article 8 prévu par le TBI de l'espèce ne peut fonder la compétence du tribunal arbitral quand bien même la Pologne aurait consenti aux termes de l'article 8 du TBI à la procédure d'arbitrage.

70- En effet, ce consentement s'oppose au droit de l'Union sans qu'il y ait lieu de transmettre les questions préjudicielles sollicitées ni au demeurant de statuer sur la validité de la convention d'arbitrage au regard de la Convention de Vienne sur le droit des traités ou de la volonté commune des parties qui sont inopérants pour la solution du litige.

71- Les défenderesses qui allèguent de manière hypothétique la prescription de leur action devant les juridicitions polonaises ne démontrent pas que l'annulation de la sentence consacrerait une situation de déni de justice, ni qu'elle affecterait indûment leur droit à un recours effectif.

72-Il convient en conséquence pour ce motif tiré de l'incompétence d'annuler la sentence sans qu'il soitnécessaire de statuer sur l'autre moyen.

Sur les frais et dépens ;

73-Il y a lieu de condamner les défenderesses, parties perdantes, aux dépens.

74-En outre, elles doivent être condamnées à verser à la République de Pologne, qui a dû exposer des frais irrépétibles pour faire valoir ses droits, une indemnité au titre de l'article 700 du code de procédure civile qu'il est équitable de fixer à la somme globale de 50 000 euros.

V/ DISPOSITIF

Par ces motifs, la cour :

1-Déclare la République de Pologne recevable à former le recours ;

2-Rejette la fin de non-recevoir soulevée par les sociétés Slot Groupe et CEC Praha sur le moyen tiré de l'incompétence du tribunal arbitral ;

3- Rejette la demande de soumission des questions préjudicielles formulées par les sociétés Slot Groupe et CEC Praha ;

4- Annule la sentence arbitrale rendue à Paris le 3 février 2020 sous l'égide de la Cour permanente d'arbitrage (PCA n° 2017-10);

5- Condamne les sociétés Slot Groupe et CEC Praha a' verser a' la République de Pologne la somme globale de 50 000 euros au titre des dispositions de l'article 700 du Code de procédure civile ;

6- Condamne les sociétés Slot Groupe et CEC Praha aux entiers dépens.

La greffière Le Président

[V] [C] [W] [Z]