# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                   :
NEXTERA ENERGY GLOBAL HOLDINGS                     :
B.V. and NEXTERA ENERGY SPAIN                      :
HOLDINGS B.V.,                                     :
                                                   :
                                 Petitioners,      :
                                                   :    Civil Action No. 19-cv-01618-TSC
                          v.                       :
                                                   :
KINGDOM OF SPAIN                                   :
                                                   :
                                 Respondent        :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
```

**PETITIONERS' MEMORANDUM IN OPPOSITION TO
RESPONDENT'S MOTION TO DISMISS AND IN SUPPORT OF
<u>PETITIONERS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND .....................................................................................................9

I.  UNDER CONTROLLING D.C. CIRCUIT AUTHORITY, FSIA  SUBJECT
    MATTER JURISDICTION IS PLAINLY ESTABLISHED ...........................................16

    A.  An ICSID Award Satisfies the Relevant Criteria Under FSIA Section
        1605(a)(6) (the "Arbitration Exception").............................................................17

    B.  Subject Matter Jurisdiction Also Exists Under FSIA Section 1605(a)(1)
        Because, In Ratifying the ICSID Convention, Spain Has Waived
        Objections to Suit (the "Waiver Exception")........................................................20

II.  SPAIN'S COLLATERAL ATTACKS ON THE AWARD ARE UNAVAILING ...........24

    A.  Neither the FSIA Nor the Convention on the Settlement of Investment
        Disputes Act Permit a Losing Party to Relitigate an ICSID Award .....................24

    B.  In Any Event, the ICSID Tribunal and Annulment Committee's
        Jurisdictional Conclusions are Res Judicata ........................................................29

    C.  Even if the Substance of Spain's ECT and "*Achmea-Komstroy*" Arguments
        Could  be Reached in this Proceeding, Spain's Arguments Still Fail ...................30

III.  SPAIN'S *FORUM NON CONVENIENS* ARGUMENT IS IMPROPER  AND
      DIRECTLY FORECLOSED BY THE LAW OF THIS CIRCUIT..................................38

IV.  THE ACT OF STATE DOCTRINE HAS NO APPLICATION HERE ..........................41

V.  SPAIN'S REMAINING OBJECTIONS TO THE PETITION SHOULD BE
    DENIED...........................................................................................................................44

    A.  The Full Faith and Credit Principle Fully Supports NextEra – And Shields
        the Award from Collateral Attack.........................................................................44

    B.  Spain's Reliance Upon the So-Called "Foreign Sovereign Compulsion"
        Doctrine is Unavailing .........................................................................................46

VI.  OBSERVATIONS ON THE EC AMICUS SUBMISSION................................................47

    A.  The EC is Not an Objective Third Party Amicus – Its Arguments Merely
        Support the Interest of its Member State, Spain ...................................................47

    B.  The EC Has Already Made Lengthy Submissions on Arbitrability, which
        the ICSID Tribunal and the ICSID Ad Hoc Committee Rejected ........................48

i

C.    The EC Fails to Grasp that the CJEU – a Regional Body Created by EU
Member States – Has No Review Function Whatsoever Under the ICSID
Convention or ECT .............................................................................................48

D.    The EC's Abstract Appeals to Policy are Unavailing – and Also Ignore the
Inconsistencies in its Own Position ......................................................................50

VII.    NEXTERA'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE
GRANTED .........................................................................................................................51

CONCLUSION.............................................................................................................................55

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Air Crash over Southern Indian Ocean on March 8, 2014*,
  946 F.3d 607 (D.C. Cir. 2020), *cert. denied sub nom. Wood v. Boeing Co.*, 141 S. Ct. 451
  (2020) ................................................................................................................................ 39

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
  578 F. 3d 1283 (11th Cir. 2009) ...................................................................................... 40

*Azima v. RAK Investment Authority*,
  926 F.3d 870 (D.C. Cir. 2019) ......................................................................................... 39

*Balkan Energy Ltd. v. Republic of Ghana*,
  302 F. Supp. 3d 144 (D.D.C. 2018) .................................................................................. 28

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) .......................................................................................................... 42

*BG Group, PLC v. Republic of Argentina*,
  572 U.S. 25 (2014) ............................................................................................................ 19

*Blue Ridge Investments L.L.C. v. Republic of Argentina*,
  735 F.3d 72 (2d Cir. 2013) .......................................................................................... 17, 22

*Breard v. Greene*,
  523 U.S. 371 (1998) ..................................................................................................... 49, 50

*Brice v. Haynes Investments, LLC*,
  13 F.4th 823 (9th Cir. 2021) ............................................................................................. 27

*Buckeye Check Cashing Inc. v. Cardegna*,
  546 U.S. 440 (2006) .......................................................................................................... 27

*CEF Energia, B.V. v. Italian Republic*,
  No. 19-cv-3443 (KBJ), 2020 WL 4219786 (D.D.C. July 23, 2020) ............................... 49

*Chevron Corp. v. Republic of Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) ........................................................................... 18, 19, 20, 28

*Chevron Corp. v. Republic of Ecuador*,
  949 F. Supp. 2d 57 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015) ...................... 30

*Chubb & Son, Inc. v. Asiana Airlines*,
  214 F.3d 301 (2d Cir. 2000) ............................................................................................. 32

*Continental Casualty Co. v. Argentine Republic*,
  893 F. Supp. 2d 747 (E.D. Va. 2012) .......................................................................... 17, 22

*Continental Transfer Technique Ltd. v. Federal Government of Nigeria*,
  697 F. Supp. 2d 46 (D.D.C. 2010) ............................................................................... 41

*Creative Technology, Ltd., v. Aztech System Pte., Ltd.*,
  61 F. 3d 696 (9th Cir. 1995) ......................................................................................... 40

*Creighton Ltd. v. Government of State of Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ................................................................................... 5, 21

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*,
  212 F. Supp. 2d 30 (D.D.C. 2002) ................................................................................ 39

*Dahman v. Embassy of Qatar*,
  364 F. Supp. 3d 1 (D.D.C. 2019), *aff'd*, 815 F. App'x 554 (D.C. Cir. 2020) ................. 39

*Deb v. SIRVA, Inc.*,
  832 F. 3d 800 (7th Cir. 2016) ....................................................................................... 39

*Dennis v. Edwards*,
  831 A.2d 1006 (D.C. Cir. 2003) .................................................................................... 39

*Diag Human, S.E. v. Czech Republic–Ministry of Health*,
  824 F.3d 131 (D.C. Cir. 2016) ...................................................................................... 19

*Doe v. Exxon Mobil Corp.*,
  69 F. Supp. 3d 75 (D.D.C 2014) ................................................................................... 40

*Fauntleroy v. Lum*,
  210 U.S. 230 (1908) ...................................................................................................... 44

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ...................................................................................... 21

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*,
  636 F.2d 1300 (D.C. Cir. 1980) .................................................................................... 46

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ...................................................................................................... 39

*Hengle v. Treppa*,
  19 F.4th 324 (4th Cir. 2021), *stay denied sub nom. Treppa v. Hengle*, 142 S. Ct. 857
  (2022), *cert. dismissed sub nom. Asner V. Hengle*, No. 21-1132, 2022 WL 1931314 (U.S.
  May 18, 2022) ............................................................................................................... 27

*Hulley Enterprises Ltd. v. Russian Federation*,
  No. 14-1996 (BAH), 2022 WL 1102200 (D.D.C. Apr. 13, 2022) ................................ 54

*InfraRed Environmental Infrastructure GP Ltd. v. Kingdom of Spain*,
  No. 20-817 (JDB), 2021 WL 2665406 (D.D.C. June 29, 2021) .................................... 48

*Iragorri v. United Technologies Corp.*,
  274 F. 3d 65 (2d Cir. 2001) .......................................................................................... 41

*Kaplan v. First Options of Chicago, Inc.*,
    19 F.3d 1503 (3d Cir. 1994), *aff'd sub nom. First Options of Chicago v. Kaplan*, 514 U.S.
    938 (1995) ................................................................................................................... 27

*Keeton v. Wells Fargo Corp.*,
    987 A.2d 1118 (D.C. 2010) .......................................................................................... 27

*Law Firm of LarJack, PLLC v. Citibank, N.A.*,
    No. 21-1592 (JDB), 2021 WL 4192030 (D.D.C. Sept. 15, 2021) ................................ 27

*LLC SPC Stileks v. Republic of Moldova*,
    985 F.3d 871 (D.C. Cir. 2021) ............................................................................... passim

*Lloyds Syndicate 457 v. FloaTEC L.L.C.*,
    921 F.3d 508 (5th Cir. 2019) ....................................................................................... 27

*Mannington Mills, Inc. v. Congoleum Corp.*,
    595 F.2d 1287 (3d Cir. 1979) ...................................................................................... 46

*Maritime International Nominees Establishment v. Republic of Guinea*,
    693 F.2d 1094 (D.C. Cir. 1982) ................................................................................... 43

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
    397 F. Supp. 3d 34 (D.D.C. 2019) ............................................................................... 48

*MBI Group, Inc. v. Credit Foncier du Cameroun*,
    558 F. Supp. 2d 21 (D.D.C. 2008) ............................................................................... 39

*Metropolitan Life Insurance Co. v. Bucsek*,
    919 F.3d 184 (2d Cir. 2019) ........................................................................................ 27

*Micula v. Government of Romania*,
    404 F. Supp. 3d 265 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020) ......................... passim

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) ..................................................................................... passim

*MZM Construction Co. Inc. v. New Jersey Building Laborers Statewide Benefit Fund*,
    974 F.3d 386 (3d Cir. 2020) ........................................................................................ 27

*National Ass'n of Broadcast Employees & Technicians v. American Broadcasting Co.*,
    140 F.3d 459 (2d Cir. 1998) ........................................................................................ 27

*National Railroad Passenger Corp. v. Boston & Maine Corp.*,
    850 F.2d 756 (D.C. Cir. 1988) .................................................................................... 27

*North Jersey Interiors LLC v. N.J. Regional  Council of Carpenters*,
    No. 11–724 (SRC), 2012 WL 84431 (D.N.J. Jan. 10, 2012) ....................................... 27

*Novenergia II – Energy & Environment (SCA) v. Kingdom of Spain*,
    No. 18-cv-1148 (TSC), 2020 WL 417794 (D.D.C. Jan. 27, 2020) ............................. 49

*Nygard v. DiPaolo*,
    753 F. App'x 716 (11th Cir. 2018) ........................................................... 39

*O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*,
    830 F.2d 449 (2d Cir. 1987) .................................................................... 46

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
    No. 04-322 (EGS), 2006 WL 2711527 (D.D.C. Sept. 21, 2006) ................... 42

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
    No. 16-1533, 2019 WL 2185040 (D.D.C. May 21, 2019) ..................... 24, 25

*Osvatics v. Lyft, Inc.*,
    535 F. Supp. 3d 1 (D.D.C. 2021) ............................................................ 27

*Phoenix Consulting Inc. v. Republic of Angola*,
    216 F.3d 36 (D.C. Cir. 2000) .................................................................. 18

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Investment Securities LLC*,
    917 F.3d 85 (2d Cir. 2019) ..................................................................... 46

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .......................................................................... 38, 40

*Princz v. Federal Republic of Germany*,
    26 F.3d 1166 (D.C. Cir. 1994) ................................................................ 20

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
    27 F.4th 771 (D.C. Cir. 2022) ....................................................... 4, 18, 19, 20

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
    506 F. Supp. 3d 1 (D.D.C. 2020), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022) ........... 21

*Process and Industrial Developments Ltd. v. Federal Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ........................................................... 52, 53

*RDP Technologies, Inc. v. Cambi AS*,
    800 F. Supp. 2d 127 (D.D.C. 2011) ........................................................ 27

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004) .............................................................................. 41

*Royal Wulff Ventures LLC v. Primero Mining Corp.*,
    938 F.3d 1085 (9th Cir. 2019) ........................................................... 42, 43

*Saint Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*,
    No. 20-129 (RC), 2021 WL 6644369 (D.D.C. July 13, 2021) ................... 5, 22

*San Remo Hotel, L.P. v. City of San Francisco*,
    545 U.S. 323 (2005) .............................................................................. 45

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)................................................................................................ 16

*In re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987) .............................................................................. 46

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v.*
    *Navimpex Centrala Navala*,
    989 F.2d 572 (2d Cir. 1993).................................................................................. 21

*Shi v. New Mighty U.S. Trust*,
    918 F. 3d 944 (D.C. Cir. 2019) ............................................................................ 41

*Simon v. Republic of Hungary*,
    911 F.3d 1172 (D.C. Cir. 2018) ............................................................................ 39

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
    549 U.S. 422 (2007)............................................................................................... 40

*Sisso v. Islamic Republic of Iran*,
    448 F. Supp 2d 76 (D.D.C 2006) .......................................................................... 47

*Stati v. Republic of Kazakhstan*,
    199 F. Supp. 3d 179 (D.D.C. 2016) ............................................................... 19, 21

*Tatneft v. Ukraine*,
    21 F.4th 829, *stay denied*, No. 20-7091, 2022 WL 494179 (D.C. Cir. 2021)............................ 8, 38

*Tatneft v. Ukraine*,
    301 F. Supp. 3d 175 (D.D.C. 2018), *aff'd*, 771 F. App'x 9 (D.C. Cir. 2019) .......................... 21, 23

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
    414 F. Supp 3d 94 (D.D.C. 2019) ........................................................... 44, 45, 51, 54

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
    No. 17-102(RDM), 2018 WL 4705794 (D.D.C. Sept. 30, 2018) ................................ 24

*Tethyan Copper Co. v. Islamic Republic of Pakistan*,
    No. 1:19-cv-02424 (TNM), 2022 WL 715215 (D.D.C. Mar. 10, 2022)................................ passim

*Tidewater Investment SRL v. Bolivarian Republic of Venezuela*,
    No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ........................................ passim

*TMR Energy Ltd. v. State Property Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005)........................................................................... 16, 38

*Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance*
    *Guaranty Ass'n*,
    455 U.S. 691 (1982)............................................................................................... 45

*United States v. Ali*,
    718 F.3d 929 (D.C. Cir. 2013) ............................................................................. 32

*United States v. Sum of $70,990,605,*
    4 F. Supp. 3d 189 (D.D.C. 2014) ................................................................... 53

*V.L. v. E.L.,*
    577 U.S. 404 (2016)......................................................................................... 44

*Verlinden B.V. v. Central Bank of Nigeria,*
    461 U.S. 480 (1983)......................................................................................... 16

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
    296 F.3d 1154 (D.C. Cir. 2002).................................................................. 21, 42

## STATUTES

22 U.S.C. § 1650a ..................................................................................... passim

28 U.S.C. § 1603(a) ........................................................................................... 9

28 U.S.C. § 1604 .............................................................................................. 16

28 U.S.C. § 1605(a)(1)................................................................................. 16, 20

28 U.S.C. § 1605(a)(6)................................................................................. passim

28 U.S.C. § 1650a ............................................................................................ 41

28 U.S.C. § 1738 .............................................................................................. 44

## RULES

Fed. R. Civ. P. 56(a) ........................................................................................ 52

## OTHER AUTHORITIES

Applicability of the Obligation to Arbitrate under Section 21 of the United Nations Headquarters
    Agreement of 26 June 1947, Advisory Opinion, I.C.J. Rep., 1988 ................................. 33

ECT art. 2 ........................................................................................................ 10

ECT art. 10(1) ................................................................................................... 10

ECT art. 16(2) .................................................................................................... 7

ECT art. 26............................................................................................... 10, 31, 32

*Greco-Bulgarian "Communities*," Advisory Opinion, 1930, P.C.I.J., Series B, No. 17 ............................ 33

ICSID Convention art. 25 .................................................................................. 11

ICSID Convention art. 41(1)............................................................................... 29

ICSID Convention art. 52 ................................................................................................ 14

ICSID Convention art. 53 ................................................................................ 11, 12, 14, 22

ICSID Convention art. 54(1)................................................................................ 4, 5, 11, 22

New York Convention art. V(1) ...................................................................................... 26

*Restatement (Fourth) of Foreign Relations Law* § 441 (2018)...................................... 43

*Restatement (Third) of U.S. Law of International Commercial Arbitration* § 4.27(a) (Am. Law Inst., Proposed Final Draft, 2019)................................................................... 38

Secretary of State Rogers' Report to the President, Oct. 18, 1971, 65 Dep't St. Bull 684 (1971) ................................................................................... 32

*S.S. "Wimbledon,"* 1923, P.C.I.J., Series A, No. 1 ....................................................... 33

VCLT art. 27 .................................................................................................................. 32

VCLT art. 31(1) ............................................................................................................. 32

Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (collectively, "NextEra") submit this Memorandum in Opposition to the motion of Respondent the Kingdom of Spain ("Spain") to dismiss this action and in support of NextEra's Cross-Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This Petition was brought in June 2019, shortly after an arbitral tribunal awarded NextEra € 290.6 million in damages, plus interest and attorneys' fees, for losses arising from serious breaches by Spain of its commitments under an international treaty, the 1994 Energy Charter Treaty ("ECT"). [1]  The arbitration was constituted under a further, multilateral treaty, the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Nov. 18, 1965, 575 U.N.T.S. 159 ("ICSID Convention") (ECF No. 1-5), to which Spain (as well as the United States) are party.  In implementing the ICSID Convention, Congress enacted special legislation guaranteeing that the "pecuniary obligations imposed by [an ICSID award] shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  Settlement of Investment Disputes Act of 1966, 22 U.S.C. § 1650a(a).

---

[1]  *NextEra Energy Global Holdings B.V. v. Spain*, ARB/14/11, Award ¶ 37 (ICSID 2019) (hereinafter "Award") (ECF No. 1-4); *see also* ECT, Dec. 17, 1994, 2080 U.N.T.S. 95 (ECF No. 1-6).  This Memorandum also refers to: (1) the Decision on Jurisdiction, Liability and Quantum Principles dated March 12, 2019 ("Liability Decision") (ECF No. 1-4, Annex A); (2) the Petition filed on June 3, 2019 ("Petition") (ECF No. 1); (3) Spain's May 2, 2022 Memorandum in Support of its renewed Motion to Dismiss ("Renewed MTD") (ECF No. 62-78), and accompanying Third Declaration of Professor Dr. Steffan Hindelang ("Hindelang 2022 Decl.") (ECF No. 62-1) and exhibits; (4) the European Commission's May 22, 2022 Brief on Behalf of the European Union as *Amicus Curiae* in Support of Spain ("EC *amicus*") (ECF No. 67); (5) the accompanying Second Declaration of Professor George Bermann ("Bermann 2022 Decl.") and Declaration of Cesar Riviere ("Riviere Decl."), with their respective exhibits, including the Decision on Annulment dated March 18, 2022 (Riviere Decl. Ex. 1) ("Annulment Committee Decision").

1

When originally faced with the Petition, Spain sought and obtained from this Court a stay of proceedings, pending its application to "annul" the Award pursuant to Article 52 of the ICSID Convention (*i.e.*, the internal form of review proceeding conducted under the ICSID Convention before an *ad hoc* annulment committee). Spain argued that the annulment application raised important issues of law, including an allegedly "thorny dispute" arising from its European law defenses, and that this Court should await its determination. ECF No. 15 at 44. This Court granted a stay, noting *inter alia* that "[b]ecause Spain's response to NextEra's petition raises many of the same arguments already before the arbitral tribunal, the outcome of the annulment proceedings 'may affect this Court's determinations, at a minimum, by virtue of the[ir] persuasive value.'" ECF No. 39 at 5 ¶ 10.

Spain proceeded to submit, in the annulment proceedings, a slew of reasons why it believed the ICSID *ad hoc* committee ("Annulment Committee") should annul the award. The European Commission ("EC"), representing the European Union (of which Spain is a member), supported Spain and submitted "non-disputing party" submissions (essentially a form of *amicus* brief) to the Annulment Committee. Together, Spain and the EC argued, *inter alia*, that (i) the Award is contrary to European law, including as adjudicated in two cases of the Court of Justice of the European Union ("CJEU"),[2] because, they argued, the arbitration clause in the ECT is not binding

---

[2]    As here, Spain and the EC *amicus* leaned on two decisions by the Court of Justice of the European Union ("CJEU"). In one, *Slovak Republic v. Achmea B.V.*, No. C-284/16 (CJEU 2018) ("*Achmea*") (ECF No. 62-47) the CJEU held that EU law did not permit EU member states to agree, in the context of bilateral investment treaty ("BIT"), to arbitration of treaty disputes with nationals of another EU member state. In the other, *Republic of Moldova v Komstroy*, Case C-741/19 (CJEU 2021) (*"Komstroy"*), the CJEU stated, *obiter dictum*, that EU law did not permit member states to agree, in the context of the ECT, to arbitrate treaty disputes with nationals of another EU member state. *Achmea* and *Komstroy*, however, are no more than internal judicial decisions applying EU law, which is not a proper basis for invalidating international obligations that arise under the ECT and the ICSID Convention, let alone this Court's independent statutory obligation to enforce an award made under the ICSID Convention. Bermann 2022 Decl. ¶¶ 85-96. Not surprisingly, every ICSID arbitration tribunal

on Spain; and that (ii) the Award is an improper form of "state aid" in violation of European law. *See* Annulment Committee Decision ¶¶ 216-21, 235-38, 251-56, 299-303, 329, *see also id.* ¶ 527 (noting that Spain advanced over 20 independent claims to annul the award).

*All* of Spain's arguments failed.  *All* of the EC's arguments (which in any event were identical to Spain's) failed too.  In March 2022, the Annulment Committee – after over a year of briefing, full oral argument, and extensive post-hearing submissions – issued a 147-page, painstakingly-reasoned decision that held that the Tribunal did *not* exceed its jurisdiction when issuing the Award, and that the case law of the CJEU did *not* operate to invalidate either the Award or Spain's explicit consent to ICSID jurisdiction found in Article 26 of the ECT.

Spain has played its cards, and lost.  Undeterred, in its renewed Motion to Dismiss, Spain comes to this Court and seeks to relitigate *precisely* the same European law points that it unsuccessfully put to the Annulment Committee.  It deploys these points partly in support of its jurisdictional arguments, in which it seeks to deny that jurisdiction exists under the Foreign Sovereign Immunities Act ("FSIA"), and partly in support of its merits arguments, *i.e.*, that enforcement is precluded because the Award is not entitled to full faith and credit, that the foreign sovereign compulsion and Act of State doctrines otherwise preclude enforcement, and that the Award somehow should not be enforced because it is a form of "state aid."

*All* of Spain's post-Award arguments should be seen for what they are – an after-the-fact attempt to avoid legal responsibility for Spain's past wrongful conduct.  But whatever legal maneuvers Spain (or the EC) may seek to engage in, this Court's sole adjudicative task is to ascertain if a final ICSID award has been rendered.  Since that particular fact is uncontested, the

---

that has addressed the arguments now advanced by Spain/the EC and its expert has rejected them – including all such arbitral awards rendered after the *Achmea* and *Komstroy* judgments. *See id.* ¶¶ 115-119; *infra* at 37.

Settlement of Investment Disputes Act dictates only one outcome: the award is entitled to full faith and credit and must be entered as a final judgment of this Court.

**Standards for Recognition of an ICSID Award.** Recognition of the Award in this case should be straightforward because the applicable law is clear. A central feature of the ICSID Convention is its mandatory rules for recognition and enforcement of ICSID awards. This is reflected through the Settlement of Investment Disputes Act, which provides that "pecuniary obligations imposed by [an ICSID award] shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a); *see also* ICSID Convention art. 54(1). As such, the losing party (here, Spain) is not permitted to engage in a collateral attack upon the Award, or its jurisdictional findings, as this would be incompatible with the United States statutory regime governing ICSID Convention awards.

**The FSIA Arbitration Exception Applies.** Unquestionably, an arbitration agreement exists and thus the FSIA "arbitration exception" to sovereign immunity applies. *See* 28 U.S.C. § 1605(a)(6). As recently reaffirmed by the D.C. Circuit, this exception is established once an award creditor makes a competent showing of the jurisdictional fact that an arbitration agreement exists. *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771 (D.C. Cir. 2022) ("*P&ID III*"). Once this is done, subject matter jurisdiction is established, and the losing party (here, Spain) cannot avoid the exception merely by questioning the award's findings or validity. *See id.* at 776 ("As we have made clear, the *validity or enforceability* of an arbitral award is a merits question." Such arguments are "foreclosed by our precedent on the arbitration exception" and "need not [be] determine[d].").

To recap, the Petition validly alleges that Spain agreed to arbitrate when: (i) it entered into the ICSID Convention, accepting jurisdiction of ICSID tribunals in cases where it consents to ICSID jurisdiction (including the power of such tribunals to adjudicate whether Spain has so consented); (ii) it entered into the ECT, consenting in Article 26 to ICSID Convention arbitration in the event of a dispute with a national of another ECT Contracting Party; and (iii) NextEra accepted Spain's offer to arbitrate disputes by filing a request for ICSID arbitration against Spain. *See* Petition ¶¶ 16-18; *infra* at 10.   Standing alone, these facts satisfy the arbitration exception. Spain's attempts to relitigate these matters are contrary to the law of this Circuit and are incompatible with the Settlement of Investment Disputes Act.  *See Tethyan Copper Co. v. Islamic Republic of Pak.*, No. 1:19-cv-02424 (TNM), 2022 WL 715215, at *8 (D.D.C. Mar. 10, 2022) (in motion to confirm ICSID award, "[i]nquiring into the arbitrability of the underlying dispute would examine the contractual rights of the parties to arbitration 'and would thus be beyond the reach of the FSIA's cabined jurisdictional inquiry.'" (citation omitted)).

***The FSIA Waiver Exception Also Applies.***  Although subject matter jurisdiction exists based on the "arbitration exception" alone, the FSIA "waiver exception" is also met here. *See* 28 U.S.C. § 1605(a)(1).  Under Article 54 of the ICSID Convention, all Contracting States, including Spain and the United States, have unconditionally agreed that their "court[s]" shall enforce ICSID awards and grant them the same status as a final national court judgment.  ICSID Convention art. 54(1).  As a matter of law, Spain's accession to a multilateral convention that provides for enforcement of awards in each Contracting State operates to waive sovereign immunity in such enforcement actions, thus satisfying the FSIA's "waiver exception."  *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122-23 (D.C. Cir. 1999) (citing 28 U.S.C. § 1605(a)(1)); *accord Saint Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, No. 20-129 (RC), 2021

WL 6644369, at *4 (D.D.C. July 13, 2021) (finding the "waiver exception" to be met "by becoming a party to the ICSID" Convention and a governing investment treaty in proceedings to enforce an ICSID award made pursuant to the investment treaty).

**Spain's (and the EU's) European Law Objections Fail.**  Spain's "intra-EU" or "*Achmea-Komstroy*" argument does not change the incontrovertible fact that the treaty, on its face, creates an agreement to arbitrate.  Spain argues that the ECT is "invalid" as applied here because the EU judiciary, applying EU law, has since determined that the ECT arbitration clause "must be interpreted as not being applicable" to intra-EU disputes.[3]  However, this argument falls well beyond the scope of the FSIA's limited jurisdictional analysis and must be disregarded.

Even should the Court find cause to look beyond the FSIA's "cabined jurisdictional inquiry," Spain's arguments restricting the intra-EU applicability of the ECT were fully argued and rejected by the ICSID tribunal[4] in this case.  *See* Liability Decision ¶¶ 272-357.  The Tribunal received extensive arguments on this point, and even allowed the EC to submit observations on the issue, before the Tribunal concluded that the ECT applies on an intra-EU basis.  The Tribunal's *unanimous* jurisdictional determinations were upheld, again unanimously, upon review by an

---

[3]  *See Komstroy* ¶ 66.  Spain does not, indeed cannot, make any claim that the ECT is no longer in force or that the arbitration provisions included therein are no longer binding on the ECT Contracting Parties, let alone that such provisions are entirely invalid and thus no arbitration agreement in its entirety existed *ab initio*.  To the contrary, the ECT continues to be enforced by arbitral tribunals pursuant to its textual grant of such authority, which has always been the recognized purpose of the treaty.  *See Republic of Moldova v. Komstroy LLC*, No. C-741/19, Opinion of Advocate General Szpunar ¶ 40 (Mar. 3, 2021) ("*Komstroy* AG Opinion")  ("The ECT is intended to be interpreted . . . by various arbitral or State tribunals in the Contracting Parties.") (Bermann Decl. Ex. 56).

[4]  The Tribunal consisted of the Hon. L. Yves Fortier Q.C. of Canada, a former Canadian Ambassador to the UN (appointed by NextEra), Professor Laurence Boisson de Chazournes of the University of Geneva (appointed by Spain) and Professor Donald M. McRae (a Canadian/New Zealand national), as presiding arbitrator, appointed by the express agreement of Spain and NextEra.  Liability Decision ¶ 9.

ICSID *ad hoc* committee ("Annulment Committee"),[5] which rejected Spain's points of challenge to the Award (as well as the EC's arguments) in their entirety. *See* Annulment Committee Decision ¶¶ 216-250, 533.

The question of whether Spain validly consented to ICSID Convention arbitration of disputes with investors such as NextEra thus is *res judicata* and cannot be relitigated now. *See Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-1457 (TJK), 2018 WL 6605633, at *6 n.4 (D.D.C. Dec. 17, 2018) (district court "has no authority to relitigate" issues decided by ICSID tribunals, including as to jurisdiction); *Tethyan*, 2022 WL 715215, at *9 ("ICSID's jurisdictional power—as agreed to by Pakistan's signature on the Treaty—renders binding on this Court the Tribunal's arbitrability determination. . . .  The Tribunal determined that it had jurisdiction over the dispute.  The Court cannot disturb that conclusion.").  That ends the matter.

Even if the merits of Spain's intra-EU arguments could be reached, they are untenable:

- The relevant text of the ECT is clear on its face, and it contains no carve-out for intra-EU disputes.  In fact, the treaty drafters considered including such a "disconnection clause" but ultimately rejected the proposal.  *See infra* at 32; Bermann 2022 Decl. ¶ 52.  Spain is effectively asking this Court to rewrite the ECT.

- Unlike the *Achmea* and *Komstroy* cases that were decided under EU law, enforcement of the Award is governed by the ICSID Convention, as implemented by US statutory law.

- Additionally, the ECT contains an express conflicts rule stating that the ECT takes primacy over any contrary treaties that concern the same subject matter.  *See* ECT art. 16(2).

- International law, which supplements the ECT, has long held that a state cannot utilize its internal or domestic law (which includes EU law) as a basis for avoiding a treaty obligation.  *See infra* at 33; Bermann 2022 Decl. ¶¶ 84-96, 102.

---

[5] The Annulment Committee was comprised of Professor Joongi Kim of the Republic of Korea, Professor Lawrence Boo of Singapore and Mr. Humberto Saenz Marinero of El Salvador. Annulment Committee Decision ¶ 12.

In sum, every one of Spain's efforts to use internal EU law as a means of avoiding its obligation to arbitrate disputes under the ECT and ICSID Convention is unavailing.

***Spain's Forum Non Conveniens Motion is Improper and Directly Foreclosed by D.C. Circuit Authority.*** The D.C. Circuit has repeatedly made clear that *forum non conveniens* is not an appropriate basis to oppose enforcement of an international arbitration award in the United States, for the basic and obvious reason that "only U.S. courts can attach foreign commercial assets found within the United States." *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) (citing *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021)). This argument should not have been advanced and is a needless waste of the Court's resources.

***Spain's Further Points in Opposition to the Petition Also Lack Merit – as do the EC's Arguments.*** Spain's attempts to invoke the "act of state" doctrine are wholly incompatible with the ICSID Convention and implementing legislation, as is its attempt to argue that the Award should be denied "full faith and credit." Spain fares no better when it argues that the Award, if enforced, somehow might violate Spain's internal policy against granting "state aid" (which, yet again, is a thinly disguised collateral challenge to the merits of the Award). The EC's arguments (which are in lockstep with Spain's) also fail to alter the analysis. The Award, in short, must be summarily confirmed, in conformity with the Settlement of Investment Disputes Act, with judgment entered in NextEra's favor.

## FACTUAL BACKGROUND

### A.     The Parties

Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. are private limited liability companies incorporated under the laws of the Netherlands. (Petition ¶ 4).

Respondent the Kingdom of Spain is a foreign state within the meaning of the FSIA, *See* 28 U.S.C. § 1603(a).

### B.     NextEra's Investment In Spain's Renewables Sector

The underlying dispute in this case arises out of investments that NextEra made in two concentrated solar power ("CSP") projects in Spain.

In 2007, Spain passed legislation aimed at promoting domestic investment in solar power projects.  The measures marked an attempt to "encourage[] investment in new capacity" by minimizing regulatory uncertainty and providing "transparency and predictability."  Liability Decision ¶ 116 (citation omitted).  In reliance on that legislation and explicit assurances by Spanish authorities, including "[s]tatements made in writing to NextEra by Spanish officials," *id*. ¶ 588(1), NextEra invested in the construction, development, and operation of two CSP projects in Spain, at a total cost of approximately 750 million euros.  *Id.* ¶¶ 93, 97.

After a government transition, Spain enacted a series of laws between 2012 and 2014 that "fundamentally and radically changed" the investment regime on which NextEra relied when making its investment.  *Id.* ¶ 599.  The changes created an entirely new regulatory system by 2014, contradicting written government assurances to NextEra and going "beyond anything that might have been reasonably expected" by NextEra when it "undertook [the] investment."  *Id.*  NextEra

suffered significant harm as a result.  *See id.* ¶¶ 678-82 (concluding that "Claimants are entitled to damages" and inviting further claim submissions).

### C.    The Treaty Framework Governing NextEra's Rights and Claims

#### 1.    The Energy Charter Treaty (ECT)

At all material times, NextEra's solar power investments were protected by the ECT.  The ECT, a multinational treaty that has been ratified by more than 50 countries across the globe, including both Spain and the Netherlands (as well as the European Union itself), creates "a legal framework in order to promote long-term cooperation in the energy field" via a suite of "complementarities and mutual benefits."  ECT art. 2.  It provides, among other things, that energy investments in the territory of an ECT Contracting Party, if made by nationals of another ECT Contracting Party, are entitled to "fair and equitable treatment."  *Id.* art. 10(1).

The ECT provides further that if a dispute arises between a protected investor and an ECT Contracting Party, it can be resolved by arbitration (at the investor's election).  By Article 26(3)(a) of the ECT, Spain "unconditional[ly] consent[s]" to submission of ECT disputes to various forms of arbitration as listed in Article 26(4), including arbitration under the ICSID Convention, provided: (i) both Spain and the investors' home state are parties to the ICSID Convention; and (ii) the investor "consent[s] in writing" to ICSID Convention arbitration.  *See* ECT art. 26(3)(a), 26(4)(a).[6] Article 26(3) and (4) are thus a standing offer by Spain to arbitrate disputes under the ICSID Convention, which NextEra validly accepted.  *See* Bermann 2022 Decl. ¶¶ 17, 28.

---

[6] Spain's consent was subject to only one explicit reservation contained in the ECT: it did not consent to ICSID arbitration of disputes that had been previously submitted to its own courts, or to arbitration under a "previously agreed dispute settlement procedure."  ECT arts. 26(2)(a)-(b), (3)(b) & Annex 1D.  This reservation is not applicable because NextEra never instituted proceedings in another forum prior to seeking arbitration under the ICSID Convention.

Article 26(8) of the ECT requires Spain to honor the Award. It provides that "[e]ach Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards."

### 2. The ICSID Convention

Each of Spain, the Netherlands, and the United States are party to the ICSID Convention. Created in 1965 under the auspices of the World Bank, the ICSID Convention is a multilateral treaty offering a framework for countries and private investors to arbitrate their disputes before an independent arbitral tribunal.[7] Under Article 25 of the ICSID Convention, any dispute arising from an investment may be arbitrated before an ICSID tribunal, provided that both the host state and the investor give their consent (and provided that both the host state and the investor's home state are ICSID Contracting Parties). *See* ICSID Convention art. 25. As Professor Bermann explains, "consent" to ICSID Convention arbitration can be expressed in a variety of ways, including "through a reciprocal investment treaty or trade treaty with one or more other States." Bermann 2022 Decl. ¶ 17. The ECT is such a treaty. *Id.* ¶ 27. The ICSID Convention stipulates that consent, once given, is irrevocable: "When the parties have given their consent, no party may withdraw its consent unilaterally." ICSID Convention art. 25(1).

The ICSID Convention provides (in Article 53) that an award rendered by an ICSID arbitral tribunal is "binding." *Id.* art. 53(1). Article 54 of the ICSID Convention further provides that each ICSID Contracting State shall enforce an ICSID award "as if it were a final judgment of a court in that State." *Id.* art. 54(1). Article 54 has been implemented in the United States through the

---

[7]   *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez*, 863 F.3d 96, 100 (2d Cir. 2017) (The ICSID Convention is "a multilateral treaty aimed at encouraging and facilitating private investment in developing countries" by minimizing risk of expropriation and other measures that could "impair the rights or assets of foreign investors.") (citation omitted).

Convention on the Settlement of Investment Disputes Act of 1966 ("Settlement and Investment Disputes Act"), under which ICSID awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

An ICSID award is also a final judgment that "shall not be subject to any appeal." ICSID Convention art. 53(1). Thus, the only way to challenge an ICSID award is to utilize the limited remedies provided within the ICSID Convention, *i.e.*, by means of an application for annulment under Article 52 of the ICSID Convention. ICSID awards cannot be challenged outside of that system, as Spain presently seeks to do in this action.

### D.    NextEra Commences an ICSID Convention Arbitration Against Spain

On May 12, 2014, NextEra initiated an ICSID Convention arbitration against Spain by filing a Request for Arbitration claiming that Spain's regulatory revisions damaged NextEra's investments, violating, *inter alia*, Article 10(1) of the ECT (the right to "fair and equitable treatment"). In its Request, NextEra accepted Spain's standing consent to ICSID Convention jurisdiction over all of its claims in the Request, thus consenting in writing (for purposes of Article 26(4) of the ECT) to ICSID Convention jurisdiction. As noted, Spain had already consented to ICSID Convention jurisdiction under the ECT.

The ICSID Tribunal was constituted on January 23, 2015. Liability Decision ¶ 10. The Tribunal received briefing and evidence from both NextEra and Spain, including submissions in which Spain objected to the jurisdiction of the Tribunal on numerous grounds. *See id.* ¶¶ 15, 25, 32, 82, 183-85, 187-97, 213-27, 272-89. The Tribunal also received submissions from the EC, which uncritically supported Spain's jurisdictional objections. *See id.* ¶¶ 60, 65.

The Tribunal conducted a hearing on all relevant issues (jurisdiction, merits, and quantum) from December 12 to 19, 2016. *Id.* ¶ 67. Both parties were represented by counsel during the entire proceedings and fully participated in the hearing. The Tribunal also received numerous post-hearing submissions from the parties during 2017 and 2018, including new submissions by Spain in support of its jurisdictional objections. *Id.* ¶¶ 73-91.

E.    **The Tribunal Issues a Decision Finding Spain Liable for Breaching the ECT –
and Dismissing Spain's Jurisdictional Objections and "Intra-EU" Arguments**

On March 12, 2019, the Tribunal issued its unanimous, 235-page Liability Decision. The Tribunal found that Spain had breached its obligation to provide NextEra fair and equitable treatment under Article 10(1) of the ECT, by failing to protect NextEra's "legitimate expectations" when it made its initial CSP investment. Liability Decision ¶ 682(ii).

The Liability Decision also adjudicated each of Spain's jurisdictional objections. Among these objections was Spain's claim that the Tribunal lacked jurisdiction to hear and adjudicate claims by NextEra because it was a national of an EU member state (the Netherlands), the same exact claim that Spain reasserts in the current proceeding. Specifically, Spain claimed that "the dispute resolution mechanism set forth in Article 26 of the ECT does not apply to controversies arising between an investor of an EU Member State and [another] EU Member State ('intra-EU')." Liability Decision ¶ 272. In this respect, Spain's "intra-EU" objection was supported by the European Commission. *Id.* ¶¶ 325-29. After carefully analyzing the objection, the Tribunal held that the ECT did not evince any intention "to exclude intra-EU investment operations from the jurisdiction of investment tribunals." *Id.* ¶ 342. In this and all other respects, the intra-EU objection was rejected. *See id.* ¶¶ 355-57.

The Tribunal held that NextEra was entitled to damages – calculated by reference to the capitalized costs of NextEra's two CSP projects – and a return equal to the weighted average cost

of capital for the two projects plus a margin of 200 bps. *Id.* ¶ 682(iii). The Tribunal directed that the quantum experts recalculate damages according to such principles. *Id.* ¶ 682(iv).

**F.    The Tribunal Awards € 290.6 Million Against Spain**

On May 31, 2019, the Tribunal issued its unanimous Award. It directed Spain to pay € 290.6 million in damages, plus pre-judgment interest at 0.234%, compounded monthly from June 30, 2016. Award ¶ 37(2), (3). The Tribunal also ordered Spain to pay USD 132,368.86 to cover its share of the costs of the arbitration, along with USD 4,147,031.81 plus € 1,042,135.30 to cover part of NextEra's costs of the ICSID proceedings (including legal fees). *Id.* ¶¶ 37(4)-(5). It further awarded "post-judgment interest on the amounts owing under this Award from the date of the Award until date of payment at the rate of 0.234% compounded monthly." *Id.* ¶ 37(6).

**G.    Spain Seeks to Annul the Award**

Under the ICSID Convention, ICSID awards are not subject to appeal. ICSID Convention art. 53. Pursuant to Article 52, a party may, however, seek to "annul" an award on limited enumerated grounds. *Id.* art. 52. Applications for annulment are heard before a three-member, *ad hoc* committee appointed by the Chairman of the ICSID Administrative Council from ICSID's Panel of Arbitrators. *Id*. art. 52(3).

On September 26, 2019, Spain applied to annul the Award pursuant to Article 52(1)(b) of the ICSID Convention. Annulment Committee Decision ¶ 10. On December 16, 2019, the Chairman of the ICSID Administrative Council (who is also President of the World Bank) appointed a three-person Annulment Committee. *Id.* ¶ 12.

Spain advanced no fewer than 22 separate grounds for annulling the Award, including the same jurisdictional arguments it makes again here.[8]  *See* Annulment Committee Decision ¶ 54. The Annulment Committee received extensive briefing and evidence from both NextEra and Spain, including expert reports.  *Id.* ¶¶ 10, 13-18, 22-27, 30-32, 34-37, 39, 42 n.13.

Spain's position also had the full-throated support of the EC, which filed yet another written submission "addressing why the Arbitral Tribunal lacked jurisdiction based upon the conflict of EU Law and the ECT."  *Id.* ¶¶ 28, 31.  In December 2020, the Annulment Committee held a two-day hearing by video conference.  *Id.* ¶ 42.  It then received extensive further submissions following the hearing, including submissions from Spain as to the effect of the CJEU's *Komstroy* decision (rendered in September 2021).  *Id.* ¶¶ 44-47, 49, 51, 53.

## H.    The Annulment Committee Rejects Spain's Arguments and Upholds the Award

On March 18, 2022, the Annulment Committee issued a 147-page decision, unanimously dismissing Spain's annulment application "in its entirety."  *Id.* ¶ 533.  The Annulment Committee concluded "that the Tribunal's decision was based on a straightforward analysis of the ECT, the Vienna Convention, and the applicable rules and principles of international law, which, as agreed by the Parties, together constituted the applicable substantive law," and therefore that "the Tribunal's decision to determine the applicable law based on the ECT and the weight to be given to EU Law could not be deemed an excess of powers, let alone one that was plain, clear, obvious, flagrant or evident."  *Id.* ¶¶ 229, 248.  The Award was thus upheld in all respects.

---

[8]    Among its sundry arguments for annulment, Spain argued that the ICSID tribunal lacked sufficient jurisdiction to issue the Award following *Achmea* and *Komstroy* and thus it "manifestly exceeded its powers" under the ICSID Convention and the ECT.  *See* Annulment Committee Decision ¶¶ 216-21, 235-38.  The Annulment Committee also rejected Spain's illegal state aid arguments.  *See id.* ¶¶ 264-67.

I.      **NextEra Commences the Present Action to Confirm the ICSID Arbitration Award**

Under Article 53 of the ICSID Convention, the Award was immediately binding on Spain as of the date of issue (May 31, 2019).  Accordingly, NextEra commenced the present action on June 3, 2019, seeking recognition and enforcement of the Award.  ECF No. 1.  On August 1, 2019, Spain acknowledged that the Petition had been duly served.  ECF No. 12 ¶ 3.  On October 11, 2019, Spain filed its initial Motion to Dismiss or Stay the present action.  ECF No. 15.  In part, Spain argued that these proceedings should be stayed because of the pending annulment application.  Spain also moved to dismiss the Petition for lack of subject matter jurisdiction, and furthermore argued that confirmation should be denied based on the act of state doctrine, the sovereign compulsion doctrine and/or because the award was a form of "state aid" under EU law.  On September 30, 2020, the Court stayed the present action pending the complete resolution of the ICSID annulment proceedings.  ECF No. 38.  It also denied the original motion to dismiss without prejudice.  On March 25, 2022, the parties notified the Court that the ICSID annulment proceedings were complete.  ECF No. 59.  By Minute Order issued on April 29, 2022, the Court lifted the stay.  On May 2, 2022, Spain filed its present motion to dismiss. ECF No. 62.

### I.
### UNDER CONTROLLING D.C. CIRCUIT AUTHORITY, FSIA
### SUBJECT MATTER JURISDICTION IS PLAINLY ESTABLISHED

Spain's objection to subject matter jurisdiction is premised on its claim that, as a "foreign state" as defined by the FSIA, it is "immune" from a suit to enforce the award.  Renewed MTD at 9, 32-34.  Under Section 1604 of the FSIA, states enjoy immunity from suit "unless a specified exception applies."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *accord Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 493-94 (1983); *see also* 28 U.S.C. § 1604.  But once an

exception is found to apply, subject matter jurisdiction (as well as personal jurisdiction) exists.[9]

Here, two independent exceptions in the FSIA apply: the "arbitration exception," 28 U.S.C. §

1605(a)(6), and the "waiver exception," 28 U.S.C. § 1605(a)(1).

**A.      An ICSID Award Satisfies the Relevant Criteria Under
FSIA Section 1605(a)(6) (the "Arbitration Exception")**

The FSIA's "arbitration exception" – lifting immunity from suit in actions "brought . . . to

confirm an award made pursuant to. . . an agreement to arbitrate" – applies.  28 U.S.C. § 1605(a)(6).

Since the enactment of the Settlement and Investment Disputes Act, *every United States court*

called upon to enforce an ICSID award has held that the arbitration exception is satisfied.  *See,*

*e.g.*, *Blue Ridge Invs. L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013) ("[E]very

court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral

award exception to the FSIA has concluded that they do.");  *Micula v. Gov't of Romania*, 404 F.

Supp. 3d 265, 277 (D.D.C. 2019) ("Courts consistently have held that the FSIA's arbitration

exception confers subject matter jurisdiction over petitions to enforce ICSID awards."), *aff'd*, 805

F. App'x 1 (D.C. Cir. 2020); *accord Tethyan*, 2022 WL 715215, at *9; *Cont'l Cas. Co. v. Argentine*

*Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012); *Mobil Cerro Negro v. Bolivarian Republic*

*of Venezuela*, 863 F.3d 96, 114 (2d Cir. 2017) ("[A]ctions to enforce ICSID awards rendered

against foreign sovereigns fall neatly into the FSIA's specific exemptions from immunity under

Sections 1605(a)(1) (waiver) and (6) (arbitration).").  The same is true here.

Fully stated, the arbitration exception denies sovereign immunity in a case:

in which the action is brought, either to enforce an agreement made by the foreign
state with or for the benefit of a private party to submit to arbitration all or any

---

[9]      "[U]nder the FSIA, subject matter jurisdiction plus service of process equals personal
jurisdiction."  *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 299 (D.C.
Cir. 2005) (citation omitted).  Here, Spain has acknowledged sufficiency of service (*see* ECF
No. 12 ¶ 3), thus satisfying that element of personal jurisdiction.

differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) [28 U.S.C. § 1605(a)(1)] is otherwise applicable.

28 U.S.C. § 1605(a)(6). Thus, the award must arise from an "agreement to arbitrate" meeting the required criteria, *and* one of the co-requisites in sub-paragraphs (A) through (D) must be met.

According to Spain, subject-matter jurisdiction is lacking because, it claims, EU law prohibits an intra-EU investment dispute from being arbitrated in any forum other than the courts of the European Union, thus negating the existence of an "agreement to arbitrate."[10]  Renewed MTD at 34-37.  This argument, however, fundamentally overlooks the D.C. Circuit's criteria for interpreting the "arbitration exception" in 28 U.S.C. § 1605(a)(6).

In reality, the "application of the arbitration exception" here is "straightforward" because "all of the jurisdictional facts required by the statute exist." *P&ID III*, 27 F.4th at 776.  There need only be a showing of "the existence of an arbitration agreement, an arbitration award and a treaty governing the award." *Id.* (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) ("*Moldova*"); *see also Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015) (subject matter established upon production of the agreement, "[the] notice of arbitration . . . and the tribunal's arbitration decision").[11]  After that point, arguments concerning

---

[10]  Spain does not dispute the other elements, *i.e.*, that there is an arbitration "award," and the award be covered by an enforcement treaty.  Indeed, the Award is governed by the ICSID Convention, which "specifically calls for the recognition and enforcement of its awards," and "is in force for the United States." *Tidewater*, 2018 WL 6605633, at *4.

[11]  *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000), cited by Spain, did not in fact involve the arbitration exception – and in any event is wholly distinguishable:

the "*validity or enforceability*" of the Award are "merits question[s]" not pertinent to the subject matter jurisdiction inquiry. *P&ID III*, 27 F.4th at 776 (emphasis in original).

As to the criteria for showing the existence of an agreement to arbitrate, the case law is clear that this exists where:  (i) an agreement is "made by the foreign state with or for the benefit of a private party"; (ii) the agreement involves submission to arbitration differences "with respect to a defined legal relationship, whether contractual or not"; and (iii) that the subject matter be "capable of settlement by arbitration under the laws of the United States." 28 U.S.C. § 1605(a)(6). These requirements are easily met here because Spain (the foreign state), in acceding to the ECT, agreed in Article 26 to submit differences under the ECT to binding ICSID Convention arbitration. *See supra* at 10; *see also* Bermann 2022 Decl. ¶¶ 27-29.[12]

Indeed, the D.C. Circuit has confirmed that accession to the ECT is, by itself, sufficient proof of the existence of an arbitration agreement to mandate application of the FSIA arbitration exception. *See Moldova*, 985 F.3d at 877 & n.3 (a valid arbitration agreement exists because "[t]here is no disagreement that Moldova is a party to the ECT . . . .").

---

in that case, involving alleged breach of contract, the foreign state presented cogent evidence showing "the written contract was a forgery and that it had never agreed to waive its immunity from suit." *Id.* at 41.  Here, the award is admittedly authentic, and Spain's membership of the ICSID Convention and ECT is admitted.

[12] Plainly, an investor-state claim is a matter capable of settlement by arbitration, as shown by the terms of the ECT and ICSID Convention (and, indeed, the very fact they have been adopted), and the many cases confirming investment treaty awards. *See, e.g.*, *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 44-45 (2014); *Tethyan*, 2022 WL 715215, at *3; *Chevron Corp v. Republic of Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015); *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 188-89 (D.D.C. 2016) (enforcing award under ECT); *Tidewater*, 2018 WL 6605633, at *6; *see also* Gary B. Born, *International Commercial Arbitration* (3d ed. 2021) (Riviere Decl. Ex. 4) at 1136 ("[T]he use of the arbitral process in diverse fields demonstrates, the arbitral process is entirely 'capable' of resolving a wide range of international disputes.").

Spain cannot avoid subject matter jurisdiction merely by contending that its consent to ICSID Convention arbitration (as manifested in article 26 of the ECT) is incompatible with EU law. As indicated in *P&ID III*, the D.C. Circuit's "clear" precedent holds that "the validity or enforceability of an arbitral award is a merits question" that a court "need not determine . . . as part of its jurisdictional inquiry." *P&ID III*, at 776 (citing *Diag Human, S.E. v. Czech Republic–Ministry of Health*, 824 F.3d 131, 137-38 (D.C. Cir. 2016)). Here, as in *P&ID III*, it suffices to make an initial showing that an arbitration agreement and an award exist. At that point, "the requirements of the arbitration exception . . . are satisfied." *Id.*

For these reasons, Spain's assertion that there "must" be an inquiry into the Award's underlying findings (Renewed MTD at 19) is completely contrary to statute and controlling precedent. And the case it cites, *Moldova*, far from supporting its position, instead holds arguments contesting the arbitrability of the dispute are irrelevant to the "jurisdictional standard of the FSIA." *See* 985 F.3d at 878 (quoting *Chevron*, 795 F.3d at 205-06). As with other D.C. Circuit decisions, *Moldova* holds that once "all of the jurisdictional facts required by the [FSIA] exist," a court has subject matter jurisdiction over the dispute and "need not," for purposes of establishing subject matter jurisdiction, engage in any debate regarding the "validity or enforceability of" the arbitral award. *P & ID III*, 27 F.4th at 776. Spain's objections to the Tribunal's jurisdictional findings run squarely afoul of these principle and "need not" be considered by this Court.

**B.      Subject Matter Jurisdiction Also Exists Under FSIA Section 1605(a)(1) Because, In Ratifying the ICSID Convention, Spain Has Waived Objections to Suit (the "Waiver Exception")**

Separately and independently, the "waiver exception" of the FSIA provides that a foreign state is not immune from jurisdiction in any case "in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). For a waiver to arise, there

is no prescribed form of words; a foreign state need only "indicat[e] its amenability to suit" in a United States court. *Princz v. Fed. Republic of Ger.*, 26 F.3d 1166, 1174 (D.C. Cir. 1994).

One basic manner in which a state may indicate amenability to suit in the United States is to enter a treaty that provides for enforcement of arbitral awards in the courts of the United States. Indeed, the D.C. Circuit has explicitly embraced as "correct[]" the view that, when a foreign state signs a multilateral award enforcement convention obligating member states to recognize arbitral awards as binding and enforce them in the same manner as domestic judgments, "'the signatory state must have contemplated enforcement actions in other signatory states.'" *Creighton*, 181 F.3d at 123 (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 578 (2d Cir. 1993)); *see also Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 192 (D.D.C. 2018) (waiver exception applied because the defendant, Ukraine, had "agreed to arbitrate" in a state that was signatory to the 1958 New York Convention, which explicitly provided for "enforcement actions in signatory states" such as the United States), *aff'd*, 771 F. App'x 9 (D.C. Cir. 2019);[13] *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 506 F. Supp. 3d 1, 11 (D.D.C. 2020) ("*P&ID II*"), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022) ("[N]o convincing reason to depart from the persuasive reasoning of *Seetransport*, *Creighton*, and *Tatneft*. The Court will therefore follow those precedents . . . ."); *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016) (substantially similar holding).[14]

---

[13]    *Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) is an unpublished decision but draws its essence from the prior (published) opinion in *Creighton*, 181 F.3d 118 (D.C. Cir. 1999).

[14]    Although Spain cites the D.C. Circuit's observation in *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990), that "provisions allegedly waiving sovereign immunity are narrowly construed," that case did not involve a multilateral award enforcement treaty. *Foremost-McKesson* was an expropriation lawsuit in the courts of this District addressing whether Iran's initial failure to plead sovereign immunity constituted a

Here, Spain did exactly that when it signed the ICSID Convention: it acceded to a multilateral treaty under which ICSID tribunal awards would be "binding" upon it, and also agreed to "abide by and comply with" any award rendered against it.  ICSID Convention art. 53(1); *see also* Bermann 2022 Decl. ¶ 31; *NextEra Energy Global Holdings B.V. v. Spain*, ARB/14/11, Submission of the Kingdom of Spain in Support of the Continuation of the Stay of Enforcement of the Award at ¶ 25 (ICSID 2020) (Riviere Decl. Ex. 3) (recognizing that Spain "takes its international commitments seriously, and it intends to honor them. That includes its obligation under Article 53 of the ICSID Convention to abide by and comply with the terms of the Award in this case.").  Spain further agreed that any ICSID award would be subject to enforcement in each Member State under Article 54, which states:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State.  A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

ICSID Convention art. 54(1); *see also* Bermann 2022 Decl. ¶¶ 19, 22-24.

Under *Creighton*, Spain's submission to the ICSID Convention thus effectuates a full waiver of immunity from the enforcement jurisdiction of the United States courts.  Several courts have held that accession to the ICSID Convention operates to waive immunity over actions to recognize and enforce ICSID awards.  *Blue Ridge Invs. L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013) ("In light of the enforcement mechanism provided by the ICSID Convention,"

---

waiver of that defense.  *Id.* at 443.  Spain also cites *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154 (D.C. Cir. 2002), but again that case did not involve the effect of an arbitration treaty.  The waivers being construed in that case appeared in two contracts and the issue was whether their scope reached a RICO claim.  *Id.* at 1162-63.  Thus, neither *World Wide Minerals* nor *Foremost-McKesson* have any bearing on the matters covered by the D.C. Circuit in *Creighton* and *Tatneft*.

signatory states "'must have contemplated enforcement actions in other [Contracting] [S]tates,' including the United States" (alterations in original) (citation omitted)); *see also Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) ("[C]ourts recognized that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity [with respect to the enforcement of any arbitration award entered pursuant to the ICSID Convention].");  *Saint Gobain*, 2021 WL 6644369, at *4 (substantially similar holding).

Spain contends that the waiver exception cannot be considered until this Court has first decided whether a valid arbitration agreement exists.  (*See* Renewed MTD at 37-40.)  Yet, nothing in the waiver exception (or the ICSID Convention or its implementing legislation) supports such a claim.[15]  In *Tatneft*, Judge Kollar-Kotelly found the waiver exception satisfied on the basis of Ukraine having signed the New York Convention *without* allowing Ukraine to relitigate the issue of arbitrability, which would improperly have allowed Ukraine to "get 'two bites at the apple of the merits of its dispute.'"  *Tatneft*, 301 F. Supp. 3d at 190.  This decision was affirmed by the D.C. Circuit.  *See Tatneft v. Ukraine,* 771 F. App'x 9, 9-10 (D.C. Cir. 2019).  For the same reasons, Spain's membership in the ICSID Convention suffices to create a waiver and establishes subject matter jurisdiction.

---

[15]  The notion, advanced by Spain, that before deciding the "waiver" exception, a court should first decide whether a valid arbitration exists, would graft onto the waiver exception a requirement that arbitrability first be revisited – something nowhere contained in the FSIA's wording.  As *Creighton* indicates, the waiver exception requires only that Spain be proven to have entered into binding convention that provides for the recognition and enforcement of arbitration awards, as incontestably is the case here. *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122-23 (D.C. Cir. 1999).

## II.
## SPAIN'S COLLATERAL ATTACKS ON THE AWARD ARE UNAVAILING

### A.    Neither the FSIA Nor the Convention on the Settlement of Investment Disputes Act Permit a Losing Party to Relitigate an ICSID Award

As demonstrated above, Spain's challenge to subject matter jurisdiction fails to take into account applicable D.C. Circuit standards governing the FSIA arbitration and waiver exceptions, which do not permit a re-litigation of the validity of an arbitration agreement.

Spain's arguments about the arbitration clause – and in particular its plea for a "de novo" determination of whether an "arbitration agreement exists" (Spain MTD at 18) – are also completely contrary to the Settlement and Investment Disputes Act, the ICSID Convention and controlling law of this Circuit.

The Settlement and Investment Disputes Act does not authorize a court to conduct any form of inquiry (much less a "de novo" inquiry) as to whether an arbitration agreement exists.  On the contrary, it mandates that an ICSID Convention award that "creat[es] a right arising under a treaty of the United States" "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

In short there is zero scope – none – for engaging in any kind of collateral attack on an ICSID award.  Whereas ordinary arbitration awards receive some (albeit very limited) scrutiny, the Settlement and Investment Disputes Act uniquely requires that *no scrutiny of an ICSID award's findings whatsoever may occur*.  *See Tethyan*, 2022 WL 715215, at *3 ("Congress also prohibited courts from using the more robust form of judicial review available under the [FAA] to analyze ICSID awards."); *accord OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 16-1533, 2019 WL 2185040, at *4 (D.D.C. May 21, 2019); *Tidewater*, 2018 WL 6605633, at *6 (ICSID Convention and implementing legislation allows only "[a] perfunctory role . . . for federal

district courts" in enforcing ICSID arbitration awards); *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-102(RDM), 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018) ("[a] member state is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'" (citation omitted)); *see also Mobil Cerro Negro*, 863 F.3d at 120-21 ("By expressly precluding the FAA's application to enforcement of ICSID Convention awards, Congress intended to make these grounds of attack unavailable to ICSID award-debtors in federal court enforcement proceedings.").[16] This zero-review rule extends to an ICSID tribunal's findings as to whether it possessed jurisdiction. *See Tethyan*, 2022 WL 715215, at *9 ("[T]he ICSID Convention grants a tribunal the authority to be 'the judge of its own competence.'"); *see also* Bermann 2022 Decl. ¶ 18.

The case law of this district shows that Spain's "*Achmea*" or *"Komstroy"* cases are *not* a proper basis for denying enforcement of an ICSID award. In *Micula*, Spain's fellow EU Member state, Romania, attempted to use *Achmea* as a basis for invalidating an "intra-EU" ICSID Convention award. In his 2019 opinion, Judge Mehta rejected this argument. *See Micula*, 404 F. Supp. 3d at 276-80.

The D.C. Circuit affirmed this decision in an unpublished 2020 opinion. 805 Fed. Appx. 1. Spain is wrong to assert (Renewed MTD at 19) that "the Arbitration Exception applied only after having determined whether a valid agreement to arbitrate existed as a result." In reality, Judge Mehta noted that *Achmea* did not foreclose the "court's jurisdiction under the FSIA's arbitration

---

[16]  The Second Circuit in *Mobil Cerro Negro* also cited the Settlement and Investment Disputes Act's legislative history, in particular Senator Fulbright's 1966 written statement indicating that a substantive attack to ICSID awards on grounds provided by FAA can be made "'only through the annulment proceedings provided for in the Convention," not in federal court. *Mobil Cerro Negro*, 863 F.3d at 120-21; *see also OI European,* 2019 WL 2185040 at *4 (same).

exception" because Romania failed to show that "the concern that animated *Achmea* – the un-reviewability of an arbitral tribunal's determination of EU law by an EU court – [was] present in this case." *Micula*, 404 F. Supp. 3d at 279. Judge Metha underscored that, as here, the arbitral tribunal did not "consider[] EU law . . . as a source of controlling law." *Id.* at 280.

Seeking a way around the FSIA's clear statutory language and case law addressing the ICSID Convention, Spain cites a snippet from a Second Circuit decision, *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96 (2d Cir. 2017), to suggest that more extensive scrutiny is warranted. *See* Renewed MTD 18-19.  This gets *Mobil Cerro Negro* badly out of context. The issue in that case was whether (as Mobil argued) a court could simply register an award before confirming it – or whether (as Venezuela argued) the award debtor needed first to be served with notice of the confirmation action.  *See Mobil Cerro Negro*, 863 F.3d at 99.  In siding with Venezuela, the Second Circuit merely stated that the grant of "full faith and credit" to an ICSID award did not excuse award creditors from the requirement to first serve the award debtor with process.  *Id.* at 102.  But it also stressed that, under the ICSID Convention, ***"[m]ember states' courts are . . . not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award,"*** *id.* (emphasis added), a point that is fatal to Spain.

The remainder of Spain's cases do not deal with ICSID Convention awards at all.  Instead, Spain cites a slew of cases where award debtors sought to resist recognition of arbitration awards rendered outside the ICSID Convention or claimed a contractual obligation to arbitrate.  (*See* Renewed MTD at 18-22.). Thus, literally all of Spain's "arbitrability" cases are inapposite because they do not involve the ICSID Convention.

***First*,** Spain cites numerous cases, including *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), involving questions of arbitrability where the arbitration was governed

by the FAA – all in scenarios where the subject arbitration was conducted within the United States and thus fully subject to the FAA.[17]  An ICSID award, by contrast, is not governed by the "the more robust form of judicial review available under the [FAA]."  *Tethyan*, 2022 WL 715215, at *3; *see also Micula*, 404 F. Supp. 3d at 277. None of Spain's FAA cases have any applicability.[18]

        ***Second,*** Spain cites a series of cases involving applications to enforce foreign arbitration awards pursuant to the New York Convention.  Such awards are usually governed by Chapter II of the FAA, which implements the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 3, 9 U.S.C. 201. ("New York Convention").  Unlike the ICSID Convention and implementing statute, the New York Convention does give a review role to national courts, in that:  (i) the national courts of the "seat" of arbitration (where

---

[17]  *See, e.g.*, *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006) (validity of an arbitration clause under the FAA); *Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.*, 850 F.2d 756, 758 (D.C. Cir. 1988) (motion to compel arbitration under the FAA); *L. Firm of LarJack, PLLC v. Citibank, N.A.*, No. 21-1592 (JDB), 2021 WL 4192030, at *1 (D.D.C. Sept. 15, 2021) (same); *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 22-23 (D.D.C. 2021) (same); *RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 131 (D.D.C. 2011) (same); *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 827-28 (9th Cir. 2021) (same); *Hengle v. Treppa*, 19 F.4th 324, 334-35 (4th Cir. 2021) (same), *stay denied sub nom. Treppa v. Hengle*, 142 S. Ct. 857 (2022), *cert. dismissed sub nom. Asner V. Hengle*, No. 21-1132, 2022 WL 1931314 (U.S. May 18, 2022); *MZM Constr. Co. Inc. v. N.J. Bldg. Laborers Statewide Benefit Fund*, 974 F.3d 386, 395-96 (3d Cir. 2020) (same); *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 187-88 (2d Cir. 2019) (same); *Lloyds Syndicate 457 v. FloaTEC L.L.C.*, 921 F.3d 508, 514-15 (5th Cir. 2019) (same); *see also Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1121-22 (D.C. 2010) (same under D.C. district law); *Nat'l Ass'n of Broadcast Emps. & Technicians v. Am. Broad. Co.*, 140 F.3d 459, 460 (2d Cir. 1998) (motion to confirm award under the FAA); *N. Jersey Interiors LLC v. N.J. Reg'l Council of Carpenters*, No. 11–724 (SRC), 2012 WL 84431, at *1 (D.N.J. Jan. 10, 2012) (same).

[18]  Spain's citation to *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir. 1994), *aff'd sub nom. First Options of Chi. v. Kaplan*, 514 U.S. 938 (1995), insofar as that decision spoke of a party's "preserv[ing] its objection to jurisdiction," *id.* at 1510, is unavailing.  *Kaplan* dealt with a motion under the FAA to vacate an award.  *Id.  Kaplan* cannot be compared with an arbitration under the ICSID Convention, which is subject to its own self-contained rules concerning the review of arbitral awards.

arbitral proceedings were held) have power to review and annul the award based on national arbitration law; and (ii) other countries' courts have the power to decline recognition on certain limited grounds, including that the tribunal was not properly constituted or that the award went beyond the scope of the arbitration clause. *See, e.g.*, New York Convention, art. V(1)(a), V(1)(c)-(d). None of these grounds are available in a motion to confirm an ICSID Convention Award.

Some of Spain's New York Convention cases (*e.g.*, *Moldova* and *Chevron*) make relevant holdings concerning the required jurisdictional showing under the FSIA's arbitration and waiver exceptions, as noted above. (*See supra* at 20.). But once those cases pass that point – and descend into a "merits" analysis of whether to recognize and enforce an award pursuant to Article III of the New York Convention, and/or whether to decline enforcement pursuant to Articles IV or V of the New York Convention – these cases cease to be relevant to the current case[19] because the criteria for enforcement of an ICSID Convention award do not involve any form of review of the award's findings, the conduct of the tribunal or the arbitration agreement.

---

[19] For example, *Chevron, Corp. v. Republic of Ecuador*, 795 F.3d 200 (D.C. Cir. 2015) considered a challenge to whether the investor held an "investment" protected by the US-Ecuador BIT, and made clear that this issue was *only* "considered as part of review under the New York Convention," *id.*, which, unlike the ICSID Convention, allows for non-recognition of awards that "'deal[] with a difference not contemplated by or not falling within the terms of the submission to arbitration.'" *Id.* at 207 (quoting New York Convention art. V(1)(c)). The D.C. Circuit also was emphatic that its limited review of this jurisdictional issue was *not* part of the analysis required by the FSIA arbitration exception. *See id.* at 205 ("Ecuador conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention."). Likewise, in *Moldova*, the court criticized the award debtor for confusing the standards under the FSIA with the review standards under the New York Convention. *Moldova*, 985 F.3d 871, 877 (D.C. Cir. (2021); *Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144 (D.D.C. 2018), cited by the EC, is even further removed. In *Balkan*, the D.C. Circuit addressed whether it lacked jurisdiction under the FSIA because Ghana alleged that the arbitration agreement was invalid under Ghanaian law. The D.C. Circuit rejected that argument and noted, *inter alia*, that even if it were to entertain that argument, the arbitration agreement was governed by Dutch law—not Ghanaian law—thus "defeat[ing] any assertion that the agreement" was "invalid" under Ghanaian law. *Id.* at 153.

*Third*, Spain and the EC refer to national or regional court decisions in *other* jurisdictions where arbitration awards were set aside under their national law, either on the grounds that no arbitration agreement existed, or on other grounds.  (Spain MTD at 15; *see also* Hindelang 2022 Decl. ¶¶ 53 n. 6).  *Achmea* and *Komstroy* themselves fall into this category, as these were UNCITRAL arbitrations seated in Frankfurt and Paris, respectively.  Again, since these were not ICSID cases, the awards were potentially subject to review (and vacatur) according to the national law of the seat of arbitration.  That is simply not the case for ICSID Convention awards.

Accordingly, Spain's attempt to seek "de novo review" of arbitrability must fail.

## B.    In Any Event, the ICSID Tribunal and Annulment Committee's Jurisdictional Conclusions are Res Judicata

Even apart from the law holding that an ICSID Convention award is not subject to judicial scrutiny, the findings on arbitrability, as enshrined in the Award, are a full and complete determination on whether Spain consented to arbitrate.

Under the ICSID Convention, challenges to the arbitral tribunal's jurisdiction (including objections to the validity of the arbitration agreement) are to be decided by the arbitrators.  *See* ICSID Convention art. 41(1) ("The Tribunal shall be the judge of its own competence."); *Tethyan*, 2022 WL 715215, at *9 (Under ICSID Convention Article 41(1), "[t]he ICSID Tribunal determines its jurisdiction over a dispute.  Thus, ICSID's jurisdictional power . . . renders binding on this Court the Tribunal's arbitrability determination.").  Here, each of Spain's arguments (including the "intra-EU" argument and illegal state aid claims) were fully litigated as part of Spain's jurisdictional objections, and fully dismissed – twice.  Liability Decision ¶¶ 332-57; Annulment Committee Decision ¶¶ 216-250.  And in signing the ECT, which contains a consent to arbitration under the ICSID Convention (providing for arbitrators to determine matters of "competence" and jurisdiction), Spain unmistakably authorized the ICSID arbitrators to rule on

their own jurisdiction.  *See* ECT art. 26(4)(a); ICSID Convention art. 41(1); *Moldova*, 985 F.3d at 878-79 (finding that by signing the ECT, Moldova had agreed to arbitrate before an UNCITRAL tribunal with "the power to rule on its own jurisdiction" (citation omitted)); *Tethyan*, 2022 WL 715215, at *9 (determining the same for signed treaties with an ICSID arbitration provision).

Because the Tribunal's jurisdictional decision and findings are themselves part of an ICSID award that is entitled to full faith and credit pursuant to the Settlement and Investment Disputes Act, they have *res judicata* effect and cannot be relitigated in this proceeding.  *See Tidewater*, 2018 WL 6605633, at *6 n.4 ("[E]ven as to questions of ICSID's jurisdiction, provided that the question has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter here." (citation omitted)); *accord Tethyan*, 2022 WL 715215, at *9, *see also* 22 U.S.C. § 1650a(a).  The tribunal's conclusions on the validity of the arbitration agreement are thus binding on Spain, and cannot be revisited under the guise of FSIA review: to do so would improperly allow it "two bites at the apple of the merits of its dispute," which contradicts "the purpose and role of the FSIA."  *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 63 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015).

## C.     Even if the Substance of Spain's ECT and "*Achmea-Komstroy*" Arguments Could be Reached in this Proceeding, Spain's Arguments Still Fail

### 1.     Under International Law, Which Governs the ECT, Spain's Consent to Arbitrate Cannot be Invalidated by Internal European Union Law

Even if Spain's collateral challenge to ICSID jurisdiction could be entertained, it still would fail.  As noted above, the record evidences an "agreement to arbitrate" between Spain and NextEra arising out of Article 26 of the ECT and Article 25 of the ICSID Convention.  (*See supra* at 19.) Spain does not contest that, on their face, these facts and treaty provisions evidence an arbitration agreement.  But Spain and Professor Hindelang contend that this agreement is invalid because Spain could never have validly agreed to arbitrate disputes with NextEra, a national of another EU

member state.  According to their theory, there can be no valid agreement to arbitrate purely "intra-EU" disputes because this would interfere with the jurisdiction of the European courts.  *See* Renewed MTD at 34-37; Hindelang 2022 Decl. ¶¶ 49-50.  In effect, Spain seeks to retroactively annul its prior explicit agreement to arbitrate (as contained in the ECT).

At its core, Spain's argument hinges on the proposition that its commitment to arbitrate, as enshrined in the ECT, is subject to the dictates of EU law, such that EU law can override the clear wording of the ECT itself and/or trump international law.[20]

This contention is fundamentally flawed.  The jurisdiction of an ICSID tribunal to hear disputes under the ECT is governed by the ECT itself and the ICSID Convention – not EU law.  Moreover, the interpretation and meaning of the ECT does *not* derive from EU law, but instead from the terms of the ECT itself, as interpreted *according to international law*.  This is made explicit by Article 26(6) of the ECT, stating that a claim for breach of the investment protections in Part III of the Treaty shall be governed by: (1) the text of the ECT itself and (2) "applicable rules and principles of international law."  ECT art. 26(6).[21]

Moreover – and further distancing the ECT from the provisions of EU law – the ECT contains an express conflicts rule (in Article 16) stating that the ECT takes primacy over any

---

[20]  Hindelang 2022 Decl. ¶¶ 51-53; Renewed MTD at 34-35.  The EU law principles invoked by Spain (the so-called "autonomy" principle, and the rule of "primacy" of EU law), and repeated in the EC's amicus brief, are doctrines created by the European courts that solely apply within the internal legal order of EU Member States.  Bermann 2022 Decl. ¶¶ 63-96.  They are not part of international law and do not govern interpretation either of the ECT or the ICSID Convention.  *Id.*

[21]  *See* Bermann 2022 Decl. ¶¶ 63-78. *See also* Bermann 2022 Decl. ¶ 77 (citing *Vattenfall AB v. Germany*, ARB/12/12, Decision on the *Achmea* Issue ¶ 207 (ICSID 2018) (Bermann Decl. Ex. 12)), Liability Decision ¶ 350.  Spain's argument that the ECT is subject to EU law, and/or the provisions of the internal EU treaty structure  (Renewed MTD at 34-35) thus is contrary to the terms of Article 26(6) of the ECT.

contrary treaties that concern the same subject matter if the ECT's provisions are more favorable to the investor (which they plainly are in this case).[22]

Confirmation that this approach to interpretation is correct can be found in the Vienna Convention on the Law of Treaties art. 27, May 23, 1969, 1155 U.N.T.S. 331 (hereinafter "VCLT"),[23] to which Spain has acceded.  The VCLT provides that treaties must be interpreted in accordance with their ordinary meaning, in good faith and in light of their object and purpose. VCLT art. 31(1).  Yet Spain's interpretation of Article 26 of the ECT is at odds with its explicit terms.   Article 26 of the ECT states that Spain, along with "each Contracting Party," unconditionally submitted to investor-state arbitration.  ECT art. 26(3)(a).  Neither Article 26 of the ECT nor any other portion of that treaty contemplates a carve-out or "disconnection clause" placing intra-EU disputes in a different category.  Bermann 2022 Decl. ¶ 52.  For Spain to seek to imply one retroactively is not just contrary to the ECT's text, it also violates the VCLT's principle that all treaties must be interpreted and performed "in good faith" in accordance with their express terms.  VCLT art. 31(1); Bermann 2022 Decl. ¶¶ 47, 50.[24]

---

[22]   Thus, even if Spain were correct to assert that European treaties (such as the Treaty on the Functioning of the European Union) overlap with the ECT in terms of investment protection and dispute resolution (an argument that the tribunal rejected, *see* Liability Decision ¶ 352-54), Spain's argument would still fail.  *See* Bermann 2022 Decl. ¶¶ 79-83.

[23]   Spain and the Netherlands have acceded to the VCLT.  Moreover, Articles 31 and 32 of the VCLT have been recognized as codifying customary international law on treaty interpretation. *See Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 308 (2d Cir. 2000); *see also United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) (The VCLT establishes "[b]asic principles of treaty interpretation[.]"); Secretary of State Rogers' Report to the President, Oct. 18, 1971, 65 Dep't St. Bull 684, 685 (1971) (The VCLT is "generally recognized as the authoritative guide to current treaty law and practice").

[24]   The EU Member States neither agreed to modify the ECT nor undertook the formal process required for an effective modification of the ECT.  *See* Liability Decision ¶ 352.  Such a derogation would not be consistent with the effective execution of the object and purpose of the ECT and would be inoperative for that reason as well under international law.

Furthermore, Spain's argument, in seeking to utilize its own internal laws in order to nullify a treaty obligation, also collides with the fundamental rule of international law, including as practiced by the United States, that *"[a] party may not invoke the provisions of its internal law as justification for its failure to perform a treaty."* VCLT art. 27; *see also* Applicability of the Obligation to Arbitrate under Section 21 of the United Nations Headquarters Agreement of 26 June 1947, Advisory Opinion, I.C.J. Rep., 1988 at 12, 34 ¶ 57 (holding that treaty provision requiring arbitration could not be overridden by domestic law; upholding "the fundamental principle of international law that international law prevails over domestic law"); *Greco-Bulgarian "Communities*," Advisory Opinion, 1930, P.C.I.J., Series B, No. 17, p. 32. ("the provisions of municipal law cannot prevail over those of the treaty"); *S.S. "Wimbledon*," 1923, P.C.I.J., Series A, No. 1, p. 15, at 30 (under international law, a country's internal law "could not prevail" over a binding treaty obligation). Bermann 2022 Decl. ¶¶ 84-96, 102.

Indeed, Spain's lengthy citation to cases involving "deference to a foreign sovereign's interpretation of its own laws," Renewed MTD at 35-36 (citing, *inter alia*, *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018)), proves too much: it shows that Spain is trying to use its own internal law, including the internal legal order established by EU law, to nullify the express terms of the ECT and ICSID Convention, a result that is precluded by Article 27 of the VCLT.

Finally, nothing can obscure either the cogency of the Tribunal's interpretation of Article 26 of the ECT, or the fact that every other ICSID tribunal to consider Article 26 has reached the same view on what it means. The Tribunal in this case held that EU law did not override the terms of Article 26 of the ECT, or the terms of the ICSID Convention, and thus EU law did not strip the Tribunal of jurisdiction. *See* Liability Decision ¶ 350. It concluded: "'the ECT's genesis generates

a presumption that no contradiction exists between the ECT and EU law,' and as a consequence, the Tribunal cannot retroactively construe Spain's offer to arbitrate under the ECT as invalid." *See id.* ¶ 355 (citation omitted).  This conclusion accords with every other ECT decision to interpret the treaty in an "intra-EU" setting.  In total, more than 30 independent tribunals have unanimously concluded that the ECT applies on an intra-EU basis.  *None* have accepted the position now advanced by Spain.  *See* Bermann 2022 Decl. ¶¶ 115-119; *see, e.g.*, *Cube Infrastructure Fund SICAV v. Spain*, ARB/15/20, Decision on Jurisdiction, Liability & Partial Decision on Quantum ¶ 130 (ICSID 2019) ("Within the system of international law, EU law does not have supremacy, and has no hierarchical priority over the laws of non-Member States, or over rules of international law, including the ECT.") (Bermann 2022 Decl. Ex. 10).  It is telling that Professor Hindelang never addresses a single one of the numerous ICSID arbitral decisions (or, indeed, numerous non-ICSID arbitral decisions) *rejecting* the intra-EU argument in an ECT setting.[25]

       2.     The *Achmea* and *Komstroy* Cases Are Irrelevant to the Current Dispute

Despite Spain's (and the EC's) heavy reliance upon decisions of the CJEU, particularly the *Achmea* and *Komstroy* cases, the reality is that the views of the CJEU are irrelevant to the interpretation and validity of Spain's consent to arbitrate contained in Article 26 of the ECT or the issue of consent to arbitrate under the ICSID Convention.  *See* Bermann 2022 Decl. ¶¶ 63-83.  Thus, the Tribunal in this case correctly concluded that "the internal constitutional laws of the EU and its constant changes and interpretations by the CJEU, as the Member States seek to minimize their mutual obligations in another context, are of no relevance for the present Tribunal."  Liability Decision ¶ 354.  Thus, the Tribunal correctly found that the *Achmea* decision posed no impediment to jurisdiction in this case.  Liability Decision ¶¶ 348-57.   This is in keeping with numerous other

---

[25]   *See* Bermann 2022 Decl. ¶¶ 115 n. 187, 118 n. 196 (collecting awards).

ICSID decisions holding that *Achmea* and *Komstroy* do not detract from the jurisdiction of ICSID tribunals.[26]  Indeed, every single other arbitral tribunal to consider *Achmea* has likewise held that the CJEU's decision has no impact over an ICSID tribunal's jurisdiction to hear and determine disputes under the ECT, including several such decisions against Spain.[27]

Spain's intra-EU argument is not improved by the CJEU's 2021 decision in *Komstroy*; indeed, *Komstroy* does not materially alter the nature of Spain's "intra-EU" argument.  *Komstroy* merely states, in dicta, that the CJEU's "intra-EU" holding in *Achmea* should apply to intra-EU investment arbitration pursuant to multilateral treaties like the ECT.

It follows, therefore, that the Tribunal's reasons for rejecting Spain's "intra-EU" arguments (in its 2019 Liability Decision) are also fully dispositive of Spain's *Komstroy* argument.[28]  And it is thus no surprise that the Annulment Committee Decision – which was rendered after *Komstroy* and considered the parties' full briefing on its alleged impact on the Tribunal's jurisdiction – affirmed the Award in its entirety.  *See* Annulment Committee Decision ¶¶ 228-34, 309-12 (rejecting Spain's *Achmea-Komstroy* arguments); *id.* ¶ 533.  It also is noteworthy that numerous other ICSID tribunals have held that *Komstroy* has no impact on their jurisdiction in "intra-EU" case.  Bermann Decl. 2022 ¶ 40.  The Award, as upheld by the Annulment Committee Decision,

---

[26]    *See, e.g.*, *Sevilla Beheer B.V. v. Spain, ARB/16/27*, Decision on Jurisdiction, Liability and the Principles of Quantum ¶ 672 (ICSID 2022) (Bermann 2022 Decl. Ex. 29); *Infracapital F1 S.à r.l. v. Spain*, ARB/16/18, Decision on Respondent's Request for Reconsideration regarding the Intra-EU Objection and the Merits ¶¶ 111-13 (ICSID 2022) (Bermann 2022 Decl. Ex. 4).

[27]    *See* Bermann 2022 Decl. ¶¶ 115-119 (collecting awards).

[28]    The Tribunal did not draw a distinction between bilateral treaties (as the kind in *Achmea*) or multilateral ones like the ECT (the subject of the *Komstroy* decision).  Instead, the Tribunal made clear that any intra-EU argument, whether based upon *Achmea* or other authority, was irrelevant to the legal analysis required under the ECT, which is expressly governed by international law.  *See* Liability Decision ¶¶ 332-57.

thus leaves no room for doubt that as a matter of international law, Spain cannot use EU law as a basis to set aside its international treaty obligations.

Finally, even were arbitration of intra-EU disputes under the ECT somehow incompatible with EU law post-*Achmea* and *Komstroy*, the CJEU itself has acknowledged that any incompatibility of an international agreement with EU law is an internal matter within the European Union.  It does not invalidate that agreement on an international plane, much less invalidate the status of an award rendered under the ICSID Convention.  *See* Bermann 2022 Decl. ¶¶ 89-91.[29]  This is also what Article 46 of the Vienna Convention requires. And it certainly does not alter the mandate of the Settlement of Investment Disputes Act requiring entry of the Award in this case as a judgment.

For much the same reasons, Judge Mehta in *Micula* held that an ICSID Convention award arising under the Sweden-Romania BIT was fully enforceable in accordance with Article 54 of the ICSID Convention and the Convention on Settlement of Investment Disputes Act, notwithstanding Romania's argument that it was an "intra-EU" award.  *See* 404 F. Supp. 3d at 276-80.  The same result should apply here.

3.    Spain's Other European "Authorities" Are Unpersuasive

Spain relies upon a non-binding internal communication by the EU Commission, asserting that *Achmea* implicitly invalidates intra-EU disputes under the ECT.  *See* Renewed MTD at 14 (citing *Communication from the Commission to the European Parliament & Council: Protection*

---

[29]   The CJEU is a specialized court whose jurisdiction is confined to matters of EU law.  The issues presented to this Court solely concern US statutory interpretation and, at most, tangentially touch upon international law considerations insofar as the Award was made pursuant to the ICSID Convention and ECT.  The CJEU does not have general jurisdiction over US or international law; accordingly, its decisions should not be afforded any deference or particular weight in this case.

*of Intra-EU Investment*, at 26 COM (2018) 547 final (July 19, 2018) (ECF No. 62-51)).  This document, which does little more than reiterate points the Commission has tried to advance before, cannot alter the binding consent to jurisdiction in the ECT.  *See* Bermann 2022 Decl. ¶¶ 97-99.

The same is true of the "declaration" by 22 EU Member States asserting that, as a matter of EU law, Article 26 of the ECT does not apply to intra-EU investment disputes.[30]  This political document (with which some EU member states openly disagreed)[31] cannot alter Spain's binding legal commitment in Article 26 to arbitrate disputes, much less abrogate the ICSID Convention. *See* Bermann 2022 Decl. ¶¶ 97-99.  Even on its face, the declaration merely commits those 22 Member States to plan on terminating their intra-EU BITs, thus making clear that the *Achmea* judgment did *not* terminate those treaties under international law.  The same conclusion applies with even greater force to the ECT, about which the declaration only says that those states "will discuss" the consequences of the *Achmea* judgment for the ECT – again implicitly recognizing that the ECT remains in force.  Finally, both the Tribunal in this matter and every other ICSID tribunal to address the "declaration" has held that it has no impact on ECT jurisdiction.[32]

---

[30]  *See* Declaration of the Representatives of the Governments of the Member States on the Legal Consequences of the Judgment of the Court of Justice in *Achmea* and on Investment Protection in the European Union (Jan. 15, 2019) (ECF No. 62-53).

[31]  Six states refused to join the majority.  *See* Declaration of the Representatives of the Governments of the Member States on the Enforcement of the Judgment of the Court of Justice in *Achmea* and on Investment Protection in the European Union (Jan. 16, 2019) (ECF No. 62-54); Declaration of the Representative of the Government of Hungary on the Legal Consequences of the Judgment of the Court of Justice in *Achmea* and on Investment Protection in the European Union (Jan. 16, 2019) (ECF No. 62-55).

[32]  *See* Liability Decision ¶ 354 ("[T]he internal constitutional laws of the EU and its constant changes and interpretations by the CJEU, as the Member States seek to minimize their mutual obligations in another context, [are] of no relevance . . . .").

### III.
### SPAIN'S *FORUM NON CONVENIENS* ARGUMENT IS IMPROPER
### AND DIRECTLY FORECLOSED BY THE LAW OF THIS CIRCUIT

Spain's request for dismissal on *forum non conveniens* grounds (Renewed MTD at 22-32) is directly foreclosed by controlling D.C. Circuit law.  The D.C. Circuit has held that *forum non conveniens* is inapplicable in the context of award enforcement because "***only a court of the United States . . . may attach the commercial property of a foreign nation located in the United States***." *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 303 (D.C. Cir. 2005) (emphasis added). Consequently, the doctrine of "*forum non conveniens **is not available in proceedings to confirm a foreign arbitral award***" in the United States.  *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) (quoting *Moldova*, 985 F.3d at 876 n.1), *stay denied*, No. 20-7091, 2022 WL 494179 (D.C. Cir. 2021) (emphasis added).[33]

While conceding, as it must, that *TMR*, *Tatneft*, and *Moldova* have the force of law in this Circuit, Spain attempts to sidestep them by arguing "*TMR, Moldova,* and the even more recent *Tatneft* decision, all determined that jurisdiction existed under the Arbitration Exception **before** ruling on the *forum non conveniens* motions."  Renewed MTD at 23 (emphasis in original).  That

---

[33]  The rationale for *forum non conveniens* is that an "alternative forum" exists where the plaintiff's claims can (more) conveniently be adjudicated.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).  But the *only* operative issue in award enforcement is whether the court of the country where enforcement is sought should recognize and enforce the award *in that country. See also Restatement (Third) of U.S. Law of International Commercial Arbitration* § 4.27(a) (Am. Law Inst., Proposed Final Draft, 2019) ("[a]n action to confirm a U.S. Convention award or enforce a foreign Convention award is not subject to a stay or dismissal in favor of a foreign court on *forum non conveniens* grounds.").

is a hollow (indeed mischievous) distinction,[34] and ignores the D.C. Circuit's recent precedent

holding that *forum non conveniens* is *unavailable* in arbitration enforcement actions.[35]

Even if a *forum non conveniens* motion could be entertained in this case (which it cannot),

it would fail.  Even in ordinary cases, "the doctrine of *forum non conveniens* . . . is an exceptional

one that a court must use sparingly."  *Deb v. SIRVA, Inc.*, 832 F. 3d 800, 805 (7th Cir. 2016)

(emphasis added); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (*forum non*

---

[34]  Spain's "distinction" seems to suppose that a district court could bypass this Circuit's controlling precedents by simply declaring that it was too "inconvenient" to perform an analysis of subject matter jurisdiction under the FSIA.  Besides being absurd on its face, this ignores that a foreign forum would, by definition, be incapable of adjudicating jurisdiction under the FSIA.  Indeed, Spain has not deigned to suggest that any alternative forum would have such authority, let alone could resolve such issues more conveniently.

[35]  The assortment of *forum non conveniens* cases cited by Spain are irrelevant.  Most of them are not award enforcement cases.  *See Simon v. Republic of Hungary*, 911 F.3d 1172, 1175 (D.C. Cir. 2018) (court claims by victims of World War Two human rights abuses); *Nygard v. DiPaolo*, 753 F. App'x 716, 720 (11th Cir. 2018) (claims regarding intentional torts committed in Bahamas); *Dennis v. Edwards*, 831 A.2d 1006, 1008 (D.C. Cir. 2003) (dispute over a decedent's estate); *In re Air Crash over S. Indian Ocean on March 8, 2014*, 946 F.3d 607, 610 (D.C. Cir. 2020), *cert. denied sub nom. Wood v. Boeing Co.*, 141 S. Ct. 451 (2020) (claims regarding the "disappearance of Malaysia Airlines Flight MH370" over the Southern Indian Ocean"); *Croesus EMTR Master Fund L.P. v. Federative Republic of Braz.*, 212 F. Supp. 2d 30, 31-32 (D.D.C. 2002) (claims concerning Brazil's nonpayment of Brazilian bonds); *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21, 22-26 (D.D.C. 2008) (claims pertaining to a failed public-private partnership to build affordable housing in Cameroon).  The remaining cases only dismiss an action pursuant to *forum non conveniens* in light of an applicable forum-selection clause requiring arbitration of the underlying dispute, which implicates an entirely distinct *forum non conveniens* analysis.  *See Dahman v. Embassy of Qatar*, 364 F. Supp. 3d 1, 4 (D.D.C. 2019), *aff'd*, 815 F. App'x 554 (D.C. Cir. 2020) ("*forum non conveniens* 'calculus changes . . . when the parties' contract contains a valid forum-selection clause'"); *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019) ("[I]f the plaintiff has entered into a contract to litigate his claims in a specific forum, the defendant may enforce that agreement by moving to dismiss for *forum non conveniens*.").  If any significance can be drawn from this separate *forum non conveniens* analysis, it is the primacy of arbitration when the parties have, as here, signed an agreement including a forum-selection clause in favor of arbitration, and the concordant deference to and support of arbitration that US courts should give that choice.

*conveniens* should be invoked only in "rare cases.").[36]  Yet the authorities do not even suggest, much less contemplate, that *forum non conveniens* might be appropriate as a general defense against enforcement of foreign judgments, much less arbitral awards governed by the ICSID Convention.  Notably also, *no* provision of the ICSID Convention (or the Settlement of Investment Disputes Act) allows for dismissal of an enforcement action based on inconvenient forum.

    In all events, any *forum non conveniens* motion would fail here:

- Spain has not identified an available alternative forum for this dispute.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (available alternative forum requirement is "satisfied when the defendant is 'amenable to process' in the other jurisdiction" (citation omitted)); *see also Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 88-89 (D.D.C 2014); *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F. 3d 1283, 1290 (11th Cir. 2009) ("[T]he foreign court must be able to 'assert jurisdiction over the litigation sought to be transferred.'" (citation omitted)).

- No alternative forum is adequate: only a U.S. court may attach U.S. assets.  *See Creative Tech., Ltd., v. Aztech Sys. Pte., Ltd.*, 61 F. 3d 696, 701-02 (9th Cir. 1995) ("[T]he alternative forum must provide some potential avenue for redress." (citation omitted)).

- The U.S. has a compelling interest in adjudicating this dispute.  The U.S. is an ICSID Convention Contracting State and a founding member of the World Bank, under whose auspices ICSID operates.  The Tribunal, in fact, designated Washington, D.C. as the "place of the proceeding."[37]  Further, the ICSID system is an "impartial" and "independent forum to conciliate and arbitrate" disputes between investors and States, largely free from the jurisdictions of any nations.[38]  Signatories of the ICSID Convention and investors choose ICSID for its ability to "balance the interests of investors and States" and its "strong

---

[36]  *Forum non conveniens* ordinarily permits a federal district court having jurisdiction over a lawsuit to nonetheless decline to hear the dispute where there is an adequate alternative forum and where the public and private interests of the case otherwise favor litigation in that forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).  "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

[37]  *NextEra Energy Global Holdings B.V. v. Spain*, ARB/14/11, Procedural Order No. 1 ¶ 10.1 (ICSID 2015) (Riviere Decl. Ex. 9).

[38]  ICSID, Introducing ICSID (Sep. 2021) at 3, 4 (Riviere Decl. Ex. 2).

enforcement mechanism," with "award[s] by an ICSID tribunal" being "binding on all parties to the proceeding, and all Member States must recognize and enforce the award."[39]

- NextEra is entitled to a "strong presumption" in favor of its choice of forum, which has a legitimate basis (*i.e.* securing enforcement in the U.S.). *See Shi v. New Mighty U.S. Trust*, 918 F. 3d 944, 949-50 (D.C. Cir. 2019) ("Even if the plaintiff resides outside of the forum [] courts have understood the Supreme Court's reasoning to 'instruct [] that [they] give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability. . . to obtain jurisdiction over the defendant.'") (second, third & fourth alteration in original) (citation omitted)), *cert denied*, 140 S. Ct. 435 (2019); *see also Iragorri v. United Techs. Corp.*, 274 F. 3d 65, 72 (2d Cir. 2001) ("[T]he more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*.").

- Neither public nor private factors favor dismissal. This is not, as Spain erroneously claims, a case involving foreign law (Renewed MTD at 31). This action is governed entirely by 28 U.S.C. § 1650a, which directs recognition of ICSID Awards without analyzing merits issues. In that process, there are no witnesses or documents to be considered. *Id.*; *see also Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 58 (D.D.C. 2010).

Spain's *forum non conveniens* argument thus is improper and should not have been brought.

## IV.
## THE ACT OF STATE DOCTRINE HAS NO APPLICATION HERE

Spain also invokes the "Act of State" doctrine, under which United States courts will abstain from hearing a case that calls for adjudication of the "validity of public acts (acts *jure imperii*) performed by other sovereigns within their own borders." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004). Spain argues that enforcement of this Award "would necessarily violate the act of state doctrine, as it would effectively declare invalid *Achmea*, the Joint Declaration, and the European Commission's official position" and/or "require this Court to effectively declare invalid the very EU Treaties." Renewed MTD at 46, 47. Even on the case as framed by Spain,

---

[39] *Id.* at 8.

this is a gross exaggeration: the issue it seeks to raise is whether the arbitration agreement is invalidated by its own EU law.

Spain's position ignores, first, that these points are not actually in issue. As shown above, a U.S. court enforcing an ICSID Convention award is giving effect to that Convention. Like the Tribunal in the underlying arbitration, this Court is not being asked to render any interpretations of EU law binding on the EU or its courts – let alone to "invalidate" a judgment of the CJEU.

Second, Spain ignores that the Convention on Settlement of Investment Disputes Act mandates the enforcement of the pecuniary obligations of ICSID awards without reviewing their substance. Enforcement of an ICSID award will therefore never call upon a U.S. court to adjudicate the substance of the matters adjudicated by the arbitral tribunal, much less pass upon the "validity" of acts taken by the EU, its Member States, or its courts.

Third, the Act of State doctrine is intrinsically inapplicable to arbitration.[40] Its rationale is to protect the judiciary from determining sensitive issues of international law. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964) ("The doctrine as formulated in past decisions expresses the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere"). Investor-state arbitration, by contrast, refers such issues to a non-judicial body (an ICSID Convention tribunal), meaning that the judiciary will play no such role in adjudicating them. Arbitration thus achieves

---

[40] None of Spain's Act of State authorities involve arbitration or arbitration award enforcement. *See World Wide Minerals*, 296 F.3d at 1156 (claims against a foreign state for breach of contract, fraudulent inducement, tortious interference, conversion, conspiracy, and RICO violations); *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. 04-322 (EGS), 2006 WL 2711527, at *2 (D.D.C. Sept. 21, 2006) (RICO and other statutory claims against an oil company); *Royal Wulff Ventures LLC v. Primero Mining Corp.*, 938 F.3d 1085, 1088 (9th Cir. 2019) (securities lawsuit against a Canadian mining company).

the very goal outlined in *Sabbatino* of shielding courts from having to decide sensitive issues. The mere enforcement of a money award arising from such adjudication cannot possibly implicate the Act of State doctrine.

Spain's own authorities confirm that the Act of State doctrine only bars suit where the relief sought would require, *inter alia*, "a court in the United States to declare invalid the [foreign sovereign's] official act." Renewed MTD at 46 (alteration in original) (quoting *Royal Wulff*, 938 F.3d at 1092). NextEra's Petition does not raise such an issue; it simply seeks enforcement of an award.

Fourth, Spain ignores that NextEra has not put these matters at issue. Indeed, it is NextEra's position (backed up by the terms of the FSIA and ICSID Convention) that the court need not reach these issues. Rather, it is Spain, through copious authorities and expert evidence, that has affirmatively invoked EU law in a bid to invalidate the arbitration agreement. The Act of State doctrine does not apply to issues that the affected state itself (Spain) has consented to be adjudicated. *Restatement (Fourth) of Foreign Relations Law* § 441 cmt. f (2018) ("A sovereign may consent to have the validity of specified official acts examined in another nation's court system, even as to their validity under the foreign sovereign's own law . . . . A foreign state may waive the act of state doctrine in a contract or through acceptance of a treaty or other international obligation."). Accordingly, the doctrine cannot apply here.

## V.
## SPAIN'S REMAINING OBJECTIONS TO THE PETITION SHOULD BE DENIED

### A.    The Full Faith and Credit Principle Fully Supports
NextEra – And Shields the Award from Collateral Attack

1.    The Intra-EU/*Achmea-Komstroy* Argument is Not a
Proper Basis for Denying Full Faith and Credit

The ICSID Convention's implementing statute constrains the role of courts in enforcing ICSID awards, requiring that they give awards "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a; *see also Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1103 n.14 (D.C. Cir. 1982) (noting these provisions mean "ICSID arbitrations are to be enforced as judgments of sister state").  The "full faith and credit" principle dictates that *all* questions, including jurisdictional questions, presented by the parties and adjudicated by the Tribunal are shielded from collateral review, *see Tethyan*, 2022 WL 715215, at *10; *Mobil Cerro Negro*, 863 F.3d at 102, regardless of whether the reviewing court "disagrees with the reasoning underlying the judgment." *V.L. v. E.L.*, 577 U.S. 404, 407 (2016).[41]

Standing this principle on its head, Spain argues that if enforcement is allowed under the "Full Faith and Credit" principles, then it should be subject to the strand of case law decided under the Full Faith and Credit Clause, allowing for non-recognition of a judgment decided by a court that lacked jurisdiction over the defendant.  *See* Renewed MTD at 40-41.  This argument is flawed on several levels.

---

[41]    Furthermore, neither Article 54 of the Convention nor the Settlement and Investment Disputes Act allow for the enforcement of an ICSID award to be denied on public policy grounds. Bermann 2022 Decl. ¶¶23-26; *cf. Fauntleroy v. Lum*, 210 U.S. 230, 236-37 (1908) (enforcement of sister state judgments under Full Faith and Credit Clause is not subject to a public policy exception).

To begin with (and as noted already), neither Article 54 nor the Convention on Settlement of Investment Disputes Act allows review of an ICSID tribunal's jurisdictional findings. *TECO Guatemala Holdings, LLC v. Republic of Guatemala* made clear that the full faith and credit standard requires that judgments "must be given the same full faith and credit as they 'have by law or usage in the courts of such State,'" 414 F. Supp. 3d 94, 103 (D.D.C. 2019) (citing 28 U.S.C. § 1738, as incorporated by 22 U.S.C. § 1650a(a)). Accordingly, "the relevant question is whether the ICSID Convention would permit the Court to decline to enforce the award at issue here." *Id.* However, "[n]othing in the ICSID Convention permits a member-state's courts to vacate an award," and any argument to bypass such strictures are "merely an effort to relitigate the arbitration's underlying merits masquerading as an appeal to equity." *See id.*

Moreover, Spain ignores that the principle of full faith and credit includes "collateral estoppel, or 'issue preclusion,'" doctrines that bar parties from relitigating issues already resolved. *San Remo Hotel, L.P. v. City of San Francisco*, 545 U.S. 323, 336 (2005). These principles apply "even as to questions of jurisdiction" – reviewing courts cannot disturb the original judgment where those questions "have been fully and fairly litigated and finally decided." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 706 (1982); *accord Tethyan*, 2022 WL 715215, at *10 ("Pakistan cannot use the same previously litigated jurisdictional argument—even one about subject matter jurisdiction—to deny full faith and credit to the Award."). Here, Spain could – and did – vigorously contest the ICSID tribunal's jurisdiction, as was its right under Article 42 of the ICSID Convention. Spain fully briefed and argued its "intra-EU" objection, and the European Commission intervened in support, in both the merits and annulment proceedings. *See supra* at 13-15. Having argued these issues and lost on all counts, Spain cannot now revisit them here.

45

2.      Spain's "State Aid" Argument is Not a Proper Basis for Resisting Enforcement

In a further attempt to relitigate the substance of the Award, Spain asserts that the Tribunal, in awarding damages to NextEra, issued relief that is tantamount to granting "state aid" to EU nationals – which, it claims, is impermissible under EU law.  Renewed MTD at 42-43.  As with the intra-EU argument, this claim is foreclosed by Article 54 of the ICSID Convention and the Convention on Settlement of Investment Disputes Act.[42]  *See Micula*, 404 F. Supp. 3d at 285 ("The contention that some portion of the Award violates EU law [on state aid] goes to the merits of the ICSID panel's determination. . . . it is not a valid ground on which to reject converting the Award in full to a judgment.").  Likewise, the EC's claim that it is investigating the payments of ICSID awards by Spain (ECF No. 67 at 25) has no bearing on whether the Award should be enforced in conformity with the ICSID Convention.

**B.      Spain's Reliance Upon the So-Called "Foreign Sovereign Compulsion" Doctrine is Unavailing**

In a variation on its "state aid" argument, Spain claims it is "compel[led]" by EU law not to pay the award, because EU law bans "state aid" unless authorized by the EC.  Renewed MTD at 42-43, 45.  It cites cases that establish a so-called "foreign sovereign compulsion" doctrine, which is said to "shield[] from . . . liability the acts of parties carried out in obedience to the mandate of a foreign government."  *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979); *see also Micula*, 404 F. Supp. 3d at 280-81.

Because the foreign sovereign compulsion doctrine aims to shield parties that have simply obeyed foreign law, it cannot logically excuse non-performance of the Award in the present circumstances.  A state cannot rationally argue that it is under "compulsion" from its own law, and

---

[42]    In any event, the enforcement of the Award in this case would not amount to the granting of a state aid under EU law.  Bermann 2022 Decl. ¶¶ 103-114.

no case has previously allowed a sovereign to escape liability on that basis.[43]  Spain's claim of foreign sovereign compulsion therefore fails.

## VI.
## OBSERVATIONS ON THE EC AMICUS SUBMISSION

### A.    The EC is Not an Objective Third Party Amicus – Its Arguments Merely Support the Interest of its Member State, Spain

The EC's position, advanced in its amicus brief, does nothing more than repeat, and attempt to amplify, the arguments that Spain has made already.  Nowhere in its amicus brief does the EC evince even the slightest disagreement with Spain on any point, and, not surprisingly, its arguments bear all of the same infirmities as Spain's asserted defenses:  For example:

- In contending that the FSIA arbitration exception and waiver exception are not satisfied, the EC does nothing more than repeats Spain's arguments, which, as demonstrated already, are unsustainable.  (*See supra* at 16-20)[44]

- In urging that this case make a de novo review of the ICSID Award's findings on arbitrability, the EC's lapses into the same error as Spain. (ECF No. 67 at 19).  The ICSID Convention and Investment Disputes Act do not permit a district court to re-evaluate issues of arbitrability involving ICSID Convention awards.  (*See supra* at 24)

---

[43]  None of the "foreign sovereign compulsion" or "comity" cases cited by Spain involve petitions to enforce arbitration awards.  *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 91 (2d Cir. 2019) (considering whether a trustee, exercising powers under the Bankruptcy Code, was precluded as a matter of comity from taking steps that were at odds with foreign law); *In re Sealed Case*, 825 F.2d 494, 495 (D.C. Cir. 1987) (considering a bank's failure to respond to a grand jury subpoena, allegedly on grounds of foreign banking secrecy law); *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*, 830 F.2d 449, 450 (2d Cir. 1987) (dispute over extraterritorial application of U.S. antitrust laws in Colombia); *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1304 (D.C. Cir. 1980) (considering how to mail FTC notices on a French citizen without violating French law).

[44]  *Sisso v. Islamic Republic of Iran*, 448 F. Supp 2d 76 (D.D.C 2006), cited by the EC for the proposition that the court has an "independent obligation" to satisfy itself that subject tmatter exists under the FSIA (ECF No. 67 at 19) was a terrorism case; it did not deal with the FSIA arbitration or wavier exceptions.  Notably, the EC fails to address recent controlling D.C. circuit authority on the arbitration exception, such as *P & ID III* (discussed *supra* at 20).

- The EC's attempts to invoke *Komstroy* and *Achmea* as a basis for denying subject matter jurisdiction (ECF No. 67 at 3-4) suffer the same defects as Spain's arguments and fail for the same reasons (*See supra* at 30)

- The EC's embrace of Spain's *forum non conveniens* defense is wholly improper.  An *amicus* should not waste the Court's time with an argument that is squarely precluded by controlling D.C. Circuit law.  (*See supra* at 38)

- The EC's state aid arguments are also indistinguishable from Spain's, and are thus equally deficient.  (*See supra* at 46)

**B.    The EC Has Already Made Lengthy Submissions on Arbitrability, which the ICSID Tribunal and the ICSID Ad Hoc Committee Rejected**

As the EC's acknowledges in its *amicus* brief, it has already attempted to advance its various arguments against arbitrability in the underlying arbitration.  It made lengthy written submissions to both the original ICSID arbitration tribunal *and* the ICSID ad hoc committee.  *See supra* at 13-15, 29.  All of these arguments were carefully considered, but rejected, by these bodies.  As such, the EC cannot complain that its arguments were ignored.

**C.    The EC Fails to Grasp that the CJEU – a Regional Body Created by EU Member States – Has No Review Function Whatsoever Under the ICSID Convention or ECT**

In urging that U.S. courts should "defer to the decisions of" the CJEU and adopt its views on "intra-EU" arbitration (as expressed in *Achmea*) or its dicta about the ECT (as appear in *Komstroy*), the EC seeks to imply that the CJEU has an official role in interpreting ICSID Convention awards, or awards rendered under the ECT.  This is false.

Under the ICSID Convention, the *sole* bodies responsible for reviewing the propriety of ICSID awards are annulment committees constituted under Article 52 of the Convention.[45]

---

[45]    The EC points to past cases involving ICSID Convention awards, where the EC submitted an *amicus* brief opposing enforcement, and where a court of this district stayed an enforcement petition, pending the outcome of annulment proceedings.  *E.g.*, *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 40 (D.D.C. 2019).  *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. 20-817 (JDB), 2021 WL 2665406, at *5 (D.D.C. June 29, 2021).  The mere fact that these cases were stayed does not support the EC's present position.  The European Commission also omits essential parts of those rulings.  For

Nowhere in the ICSID Convention is there any reference to European institutions or courts having the power to review ICSID awards, which is not surprising, since the CJEU is, at bottom, a regional court having jurisdiction only over matters of EU law among its member states.

The same is true of the ECT. Nothing in the text of the ECT gives the CJEU any interpretative or adjudicative powers. Rather, the ECT provides for investor-state arbitration in a number of designated arbitral settings, including ICSID Convention arbitration. By operation of the ICSID Convention's explicit terms, when ICSID Convention arbitration is chosen, neither the national courts nor the CJEU have any role in reviewing the resulting award.[46]

The case of *Breard v. Greene*, 523 U.S. 371 (1998), cited by the EC as supposedly warranting deference to CJEU decisions, actually undermines the EC's position. In *Breard*, a Paraguayan national (an individual convicted with attempted rape and capital murder and scheduled to be executed) attempted to invoke international law as a basis for overturning his conviction. 523 U.S. at 373. He cited, among other things, a ruling by the International Court of Justice (which was seized of jurisdiction in a case brought on his behalf by Paraguay) directing the

---

instance, although the EC cites dicta from *Infrared* about the potential "persuasive" effect of CJEU jurisprudence, that decision also underscored that **"ICSID may not view the ultimate decision of the CJEU as binding on its arbitral jurisdiction"** and hence the Court would not necessarily "continue to stay these proceedings to await a decision from the CJEU if the Annulment Committee were to issue its decision first." *Id.* at *5 (emphasis added).

[46] The EC cites two *non-ICSID* cases, involving awards issued by the Institute of Arbitration of the Stockholm Chamber of Commerce ("SCC"), where this Court stayed the enforcement petition, pending the outcome of proceedings in the Swedish courts to set aside the SCC awards. *See CEF Energia, B.V. v. Italian Republic*, No. 19-cv-3443 (KBJ), 2020 WL 4219786, at *7 (D.D.C. July 23, 2020) (granting motion to stay pending resolution of dispute before the Svea Court of Appeal in Sweden); *Novenergia II – Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-1148 (TSC), 2020 WL 417794, at *4 (D.D.C. Jan. 27, 2020) (same). The CJEU has a role in those cases because it hears appeals from the Swedish courts (Sweden being an EU member state). But this is a function of the awards being issued (and the underlying arbitrations conducted) *outside the ICSID Convention*, which is not the case here.

United States to "'take all measures at its disposal to ensure that Angel Francisco Breard is not executed pending the final decision in these [ICJ] proceedings.'" *Id.* at 374. The U.S. Supreme Court denied the petition for an original writ of habeas corpus, holding that "while we should give respectful consideration to the interpretation of an international treaty rendered by an international court with jurisdiction to interpret such, it has been recognized in international law that, absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State." *Id.* at 375. *Breard* thus shows that the decisions even of an international judicial body of which the U.S. is a member are not necessarily binding on a U.S. court. Here, the weight of the decisions of the CJEU are even more attenuated; not only does the CJEU lack any review or adjudicative function under either the ECT or ICSID Convention, but it is a regional body responsible only for hearing appeals from the courts of EU member states and/or matters arising from EU institutions or courts.[47]

D.    **The EC's Abstract Appeals to Policy are Unavailing – and Also Ignore the Inconsistencies in its Own Position**

Aside from the portions of its brief that simply repeat Spain's arguments, much of the EC's brief is given over to discussions of policy issues, *e.g.* its policy of discouraging "intra-EU arbitration," its desire for "autonomy" of European law and its newfound disdain for investment treaties such as the ECT. (ECF No. 67 at 3, 7). But none of these matters have any bearing on the interpretation of the ICSID Convention or the Settlement and Investment Disputes Act.

---

[47]    This is in sharp contrast to the significance of the ICJ to the dispute in *Breard*, as the United States had expressly entrusted the ICJ with jurisdiction over the interpretation or application of the Convention. *See, e.g.*, Optional Protocol concerning the Compulsory Settlement of Disputes Done at Vienna on 24 April 1963, entered into force on 19 March 1967, 596 U.N. Treaty Series 487, art. 1 (Riviere Decl. Ex. 5); Case Concerning the Vienna Convention on Consular Relations (*Paraguay v. United States*), Order, (ICJ April 9, 1998) at 30-33 ("[B]oth Paraguay and the United States are parties to . . . the Optional Protocol . . . .") (Riviere Decl. Ex. 8)

In any event, the EC has been inconsistent in the very "policy" areas now urged by it as a basis for declining enforcement.  For example, for many decades, the ECT had the EU's full-throated support – the EU signed the ECT in 1994 and actively encouraged the newly-liberated states of Eastern Europe to do the same, all in the hope of opening energy markets.[48]  Only recently has the EC decided to undermine the ECT's dispute resolution mechanisms.

Likewise, it should be evident, both from the Award and the positions being taken by Spain and the EC in this proceeding, that the EC and Spain have undergone several shifts in energy policy in the last few decades – from initially embracing renewables investment to then severely curtailing it.  The EC also changed its original policy of urging members states to encourage investment in renewable energy (with the aim of lowering carbon emissions) – a policy that was the original impetus for Spain's renewables legislation, *see* Liability Decision ¶¶ 100-01, 108 – to disfavoring the programs that encouraged this investment, on the supposed grounds they were state aid.[49]  It should not be surprising that the radical shifts in policy caused investors significant losses, and it should be equally unsurprising that this, in turn, had adverse legal implications for Spain under the various investment treaties it had signed, including the ECT.

## VII.
## NEXTERA'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

With the Court's denial of each of Spain's defenses on immunity based on the foregoing, summary judgment is appropriate.  *See, e.g.*, *Mobil Cerro Negro*, 863 F.3d at 118  ("After the

---

[48]   *See generally*, Frédéric Simon, *EU asserts 'right to regulate' as part of energy charter treaty reform*, EURACTIV, July 19, 2019 (Riviere Decl. Ex. 6).

[49]   *See generally*, Ana López-Rodríguez, *The Sun Behind the Clouds?  Enforcement of Renewable Energy Awards in the EU*, 8 TRANSNATIONAL ENV. L. 2 (2019) (Riviere Decl. Ex. 7).

complaint is filed and service effected, the award-creditor may file a motion for judgment on the pleadings . . . or a motion for summary judgment.").[50]

NextEra has presented an undisputedly authentic arbitration award (the Award), the existence of which is the *only* factual question that the Court need resolve.  *See TECO*, 414 F. Supp. 3d at 101 (To enforce an ICSID award after finding jurisdiction, the Court need only ensure "that the award is authentic" and "that its enforcement order is consistent with the award.") (citation omitted).  Hence, there is no "genuine dispute as to any material fact" remaining, and NextEra "is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).

Indeed, as already noted, once the Court concludes that it has subject matter jurisdiction under the FSIA to confirm the Award,[51] the ICSID Convention and its implementing statute preclude any further dispute regarding the Award's enforcement.  *See* 22 U.S.C. § 1650a (ICSID awards "shall be enforced"); *supra* at 24; *see also Tidewater*, 2018 WL 6605633, at *6 (Section 1650a "envision[s] no role for this Court beyond ensuring its own jurisdiction over this action."); *Mobil Cerro Negro*, 863 F.3d at 118  ("The ICSID award-debtor . . . would not be permitted to make substantive challenges to the award.").  The Court's "limited role 'reflects an expectation [under the ICSID Convention] that the courts of a member nation will treat the award as final." *Micula*, 404 F. Supp. 3d at 275-76 (citation omitted).

Buried in its final footnote – and in a transparent effort to forestall judgment – Spain has

---

[50]  The formality of filing dispositive motion to enforce an ICSID award may not even be necessary.  *See Tethyan Copper Company Pty Limited v. Islamic Republic of Pakistan*, 1:19-CV-02424, Minute Order (D.D.C. March 31, 2022) (directing the parties to submit a "joint proposed final judgment" enforcing an ICSID award after the rejection of the Respondent State's Motion to Dismiss even absent a dispositive cross-motion).

[51]  The minimal proof requirements of an enforcement action are met here.  ECF No. 1-4; ECF No. 12 (Spain acknowledging service).

purported to reserve the "right to present any and all defenses as to the merits of the Petition" if Spain's current motion to dismiss is denied.  It cites a 2020 D.C. Circuit decision, *Process and Industrial Developments Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576 (D.C. Cir. 2020) ("*P&ID I*"), for the proposition that a court cannot "order" a sovereign to present "merits" arguments ahead of its "jurisdictional" arguments.  (Spain Renewed MTD at 48 n.12 (citing *P&ID I*, 962 F.3d at 586)).  Besides that it is a "footnote" point (alone sufficient to deny Spain's "reservation"),[52] this "reservation" is ineffective and improper, for multiple reasons.

First, *P&ID I* is distinguishable because it dealt with a motion to confirm an award under the New York Convention pursuant to Chapter II of the FAA – a process that allows a court to inquire into both jurisdictional and merits points (including whether the tribunal was properly constituted and whether it had power to adjudicate the case).  (*See generally, supra*, at 24.).  By contrast a district court confronted with an ICSID award is expressly prohibited from engaging with any such arguments.  *See Tethyan*, 2022 WL 715215, at *3 ("Congress also prohibited courts from using the more robust form of judicial review available under the [FAA] to analyze ICSID awards.").  Thus, the notion that Spain can "reserve" the right to argue further "merits" issues is misplaced.

Second, on any view, *P&ID I* does not grant a respondent sovereign an unqualified right to prolong an award enforcement proceeding.  Rather, in *P&ID I*, the D.C. Circuit held that a district court erred when it ordered a sovereign to address merits ahead of jurisdiction.  *Id.* at 586.  But the *P&ID I* court also recognized that "[a] foreign sovereign remains free to oppose a

---

[52]  *See generally*, *Micula*, 404 F. Supp. 3d at 276 n.6 ("[T]he court need not 'consider cursory arguments made only in a footnote.'") (citation omitted).

confirmation petition" by presenting *"immunity and merits issues in a single motion." Id.* at 585 (emphasis added).

This is exactly what Spain has done here. In October 2019, and again in its current motion to dismiss filed on May 2, 2022. Specifically,

- Spain's claims resting on the supposed illegality, under EU law of enforcing the Award (*e.g.*, its foreign sovereign compulsion claim), according to the case law of this district, is a merits arguments. *See Micula*, 404 F. Supp. 3d at 285 ("The contention that some portion of the Award violates EU law [on state aid] *goes to the merits of the ICSID panel's determination* . . . . it is not a valid ground on which to reject converting the Award in full to a judgment." (emphasis added)). It bears emphasis that the *Micula* decision, on this and other points, was *affirmed* by the D.C. Circuit. 805 F. App'x 1 (D.C. Cir. 2020),

- Spain's attempt to invoke the Act of State doctrine is similarly *"a substantive rather than a jurisdictional defense." See United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 204 (D.D.C. 2014) (citation omitted) (emphasis added),

- Spain's claim that the Award is not entitled to "full faith and credit" also is a merits point; it assumes that the Court has jurisdiction under the FSIA,

- Even within its FSIA arguments, Spain's arguments based on the *Achmea* and *Komstroy* cases stray way beyond mere arguments as to "jurisdiction" and invite a full-blown collateral review of the Award's internal findings, which far surpass the inquiry warranted by the FSIA and thus are a collateral merits attack on the Award (*See supra* at 24).

By asserting these substantive (*i.e.*, "merits") defenses – all of which necessarily assume that the Court will have adjudicated, and rejected, its "FSIA" defenses – Spain itself has thus exercised its right to brief jurisdiction and merits in a "single motion," exactly as the D.C. Circuit contemplated in *P&ID I*. It cannot now demand that this Court ignore these choices, and bifurcate this case into different additional stages.[53]

---

[53] Spain's "reservation of rights" footnote alludes to a possible defense that the "award was illegally procured" by NextEra through "false representations." (Spain Renewed MTD at 48 n.12,). Plainly, such an argument is untenable, given the strictures of the ICSID Convention and the enabling statute *See TECO*, 414 F. Supp. 3d at 100-02, 104 (rejecting "allegations of 'fraud'" because this "would open the door to the type of re-litigation of the merits that the ICSID Convention and the U.S. implementing legislation sought to close" (citation omitted)).

Guidance in this regard can be had from a recent case, *Hulley Enterprises Ltd. v. Russian Fed'n*, No. 14-1996 (BAH), 2022 WL 1102200 (D.D.C. Apr. 13, 2022).  In that case, Russia filed an omnibus opposition to confirmation of a large arbitration award rendered against it in 2014.  After an eight-year stay, Chief Judge Howell directed that the parties submit final briefs.  Russia, citing *P&ID I*, claimed that the court should only adjudicate its "jurisdictional" objections.  Rejecting this argument, Chief Judge Howell held that, because Russia "already filed both its jurisdictional and non-jurisdictional, merits defense briefs concurrently," ***the restriction against "order[ing] the sovereign to brief the merits before resolving a colorable assertion of immunity" did not apply***.  *Id.* at *1 n.1 (citation omitted) (emphasis added).

## CONCLUSION

For the foregoing reasons, NextEra respectfully requests that the Court deny Spain's Motion to Dismiss and grant its cross-motion for summary judgment.

Dated: June 9, 2022
Washington, D.C.

Respectfully submitted,

/s/ Bradley A. Klein_____
Bradley A. Klein
D.C. Bar Number 973778
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
(202) 371-7000
bradley.klein@skadden.com

Timothy G. Nelson (appearing *pro hac vice*)
New York Bar Number 3060175
Amanda Raymond Kalantirsky (appearing *pro hac vice*)
New York Bar Number 4812418
Cesar Riviere (appearing *pro hac vice*)
New York Bar Number 5746326
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
(212) 735-2000 (fax)
timothy.g.nelson@skadden.com
cesar.riviere@skadden.com

David Herlihy (appearing *pro hac vice*)
New York Bar Number 4167920
ALLEN & OVERY LLP
One Bishops Square
London
E1 6AD
ENGLAND

*Attorneys for NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V.*