# EXHIBIT 6

## No. 18232

---

## MULTILATERAL

## Vienna Convention on the law of treaties (with annex). Concluded at Vienna on 23 May 1969

*Authentic texts: English, French, Chinese, Russian and Spanish.*
*Registered* ex officio *on 27 January 1980.*

---

## MULTILATÉRAL

## Convention de Vienne sur le droit des traités (avec annexe). Conclue à Vienne le 23 mai 1969

*Textes authentiques : anglais, français, chinois, russe et espagnol.*
*Enregistrée d'office le 27 janvier 1980.*

# VIENNA CONVENTION[1] ON THE LAW OF TREATIES

The States Parties to the present Convention,

Considering the fundamental role of treaties in the history of international relations,

Recognizing the ever-increasing importance of treaties as a source of international law and as a means of developing peaceful co-operation among nations, whatever their constitutional and social systems,

Noting that the principles of free consent and good faith and the *pacta sunt servanda* rule are universally recognized,

Affirming that disputes concerning treaties, like other international disputes, should be settled by peaceful means and in conformity with the principles of justice and international law,

Recalling the determination of the peoples of the United Nations to establish conditions under which justice and respect for the obligations arising from treaties can be maintained,

Having in mind the principles of international law embodied in the Charter of the United Nations, such as the principles of the equal rights and self-determination of peoples, of the sovereign equality and independence of all States, of non-interference in the domestic affairs of States, of the prohibition of the threat or use of force and of universal respect for, and observance of, human rights and fundamental freedoms for all,

[1] Came into force on 27 January 1980, i.e., on the thirtieth day following the date of deposit of the thirty-fifth instrument of ratification or accession with the Secretary-General of the United Nations, in accordance with article 84 (1).

| State | Date of deposit of the instrument of ratification or accession (a) | | State | Date of deposit of the instrument of ratification or accession (a) | |
|---|---|---|---|---|---|
| Argentina* | 5 December | 1972 | Morocco* | 26 September | 1972 |
| Australia | 13 June | 1974 a | Nauru | 5 May | 1978 a |
| Austria | 30 April | 1979 a | New Zealand | 4 August | 1971 |
| Barbados | 24 June | 1971 | Niger | 27 October | 1971 a |
| Canada* | 14 October | 1970 a | Nigeria | 31 July | 1969 |
| Central African Republic | 10 December | 1971 a | Paraguay | 3 February | 1972 a |
| Cyprus | 28 December | 1976 a | Philippines | 15 November | 1972 |
| Denmark* | 1 June | 1976 | Republic of Korea | 27 April | 1977 |
| Finland* | 19 August | 1977 | Spain | 16 May | 1972 a |
| Greece | 30 October | 1974 a | Sweden | 4 February | 1975 |
| Holy See | 25 February | 1977 | Syrian Arab Republic* | 2 October | 1970 a |
| Honduras | 20 September | 1979 | Togo | 28 December | 1979 a |
| Italy | 25 July | 1974 | Tunisia* | 23 June | 1971 a |
| Jamaica | 28 July | 1970 | United Kingdom of Great Britain and Northern Ireland* | 25 June | 1971 |
| Kuwait* | 11 November | 1975 a | United Republic of Tanzania* | 12 April | 1976 a |
| Lesotho | 3 March | 1972 a | Yugoslavia | 27 August | 1970 |
| Mauritius | 18 January | 1973 a | Zaire | 25 July | 1977 a |
| Mexico | 25 September | 1974 | | | |

Subsequently, the Convention came into force for the following State on the thirtieth day following the date of deposit of its instrument of ratification or accession with the Secretary-General of the United Nations, in accordance with article 84 (2):

| State | Date of deposit of the instrument of accession (a) |
|---|---|
| Rwanda | 3 January 1980 a |

(With effect from 2 February 1980.)

* For the texts of the reservations and declarations made upon ratification or accession, see p. 501 of this volume.

Believing that the codification and progressive development of the law of treaties achieved in the present Convention will promote the purposes of the United Nations set forth in the Charter, namely, the maintenance of international peace and security, the development of friendly relations and the achievement of co-operation among nations,

Affirming that the rules of customary international law will continue to govern questions not regulated by the provisions of the present Convention,

Have agreed as follows:

### PART I.  INTRODUCTION

#### Article 1.  SCOPE OF THE PRESENT CONVENTION

The present Convention applies to treaties between States.

#### Article 2.  USE OF TERMS

1.  For the purposes of the present Convention:

(a) "Treaty" means an international agreement concluded between States in written form and governed by international law, whether embodied in a single instrument or in two or more related instruments and whatever its particular designation;

(b) "Ratification", "acceptance", "approval" and "accession" mean in each case the international act so named whereby a State establishes on the international plane its consent to be bound by a treaty;

(c) "Full powers" means a document emanating from the competent authority of a State designating a person or persons to represent the State for negotiating, adopting or authenticating the text of a treaty, for expressing the consent of the State to be bound by a treaty, or for accomplishing any other act with respect to a treaty;

(d) "Reservation" means a unilateral statement, however phrased or named, made by a State, when signing, ratifying, accepting, approving or acceding to a treaty, whereby it purports to exclude or to modify the legal effect of certain provisions of the treaty in their application to that State;

(e) "Negotiating State" means a State which took part in the drawing up and adoption of the text of the treaty;

(f) "Contracting State" means a State which has consented to be bound by the treaty, whether or not the treaty has entered into force;

(g) "Party" means a State which has consented to be bound by the treaty and for which the treaty is in force;

(h) "Third State" means a State not a party to the treaty;

(i) "International organization" means an intergovernmental organization.

2.  The provisions of paragraph 1 regarding the use of terms in the present Convention are without prejudice to the use of those terms or to the meanings which may be given to them in the internal law of any State.

#### Article 3.  INTERNATIONAL AGREEMENTS NOT WITHIN THE SCOPE OF THE PRESENT CONVENTION

The fact that the present Convention does not apply to international agreements concluded between States and other subjects of international law or between such other subjects of international law, or to international agreements not in written form, shall not affect:

(*a*)  The legal force of such agreements;

(*b*)  The application to them of any of the rules set forth in the present Convention to which they would be subject under international law independently of the Convention;

(*c*)  The application of the Convention to the relations of States as between themselves under international agreements to which other subjects of international law are also parties.

### *Article 4.*  NON-RETROACTIVITY OF THE PRESENT CONVENTION

Without prejudice to the application of any rules set forth in the present Convention to which treaties would be subject under international law independently of the Convention, the Convention applies only to treaties which are concluded by States after the entry into force of the present Convention with regard to such States.

### *Article 5.*  TREATIES CONSTITUTING INTERNATIONAL ORGANIZATIONS AND TREATIES ADOPTED WITHIN AN INTERNATIONAL ORGANIZATION

The present Convention applies to any treaty which is the constituent instrument of an international organization and to any treaty adopted within an international organization without prejudice to any relevant rules of the organization.

## PART II.  CONCLUSION AND ENTRY INTO FORCE OF TREATIES

### SECTION 1.  CONCLUSION OF TREATIES

### *Article 6.*  CAPACITY OF STATES TO CONCLUDE TREATIES

Every State possesses capacity to conclude treaties.

### *Article 7.*  FULL POWERS

1.  A person is considered as representing a State for the purpose of adopting or authenticating the text of a treaty or for the purpose of expressing the consent of the State to be bound by a treaty if:

(*a*)  He produces appropriate full powers; or

(*b*)  It appears from the practice of the States concerned or from other circumstances that their intention was to consider that person as representing the State for such purposes and to dispense with full powers.

2.  In virtue of their functions and without having to produce full powers, the following are considered as representing their State:

(*a*)  Heads of State, Heads of Government and Ministers for Foreign Affairs, for the purpose of performing all acts relating to the conclusion of a treaty;

(*b*)  Heads of diplomatic missions, for the purpose of adopting the text of a treaty between the accrediting State and the State to which they are accredited;

(*c*)  Representatives accredited by States to an international conference or to an international organization or one of its organs, for the purpose of adopting the text of a treaty in that conference, organization or organ.

### *Article 8.*  SUBSEQUENT CONFIRMATION OF AN ACT PERFORMED WITHOUT AUTHORIZATION

An act relating to the conclusion of a treaty performed by a person who cannot be considered under article 7 as authorized to represent a State for that purpose is without legal effect unless afterwards confirmed by that State.

*Article 9.* ADOPTION OF THE TEXT

1.   The adoption of the text of a treaty takes place by the consent of all the States participating in its drawing up except as provided in paragraph 2.

2.   The adoption of the text of a treaty at an international conference takes place by the vote of two thirds of the States present and voting, unless by the same majority they shall decide to apply a different rule.

*Article 10.* AUTHENTICATION OF THE TEXT

The text of a treaty is established as authentic and definitive:

(*a*)   By such procedure as may be provided for in the text or agreed upon by the States participating in its drawing up; or

(*b*)   Failing such procedure, by the signature, signature *ad referendum* or initialling by the representatives of those States of the text of the treaty or of the Final Act of a conference incorporating the text.

*Article 11.* MEANS OF EXPRESSING CONSENT TO BE BOUND BY A TREATY

The consent of a State to be bound by a treaty may be expressed by signature, exchange of instruments constituting a treaty, ratification, acceptance, approval or accession, or by any other means if so agreed.

*Article 12.* CONSENT TO BE BOUND BY A TREATY EXPRESSED BY SIGNATURE

1.   The consent of a State to be bound by a treaty is expressed by the signature of its representative when:

(*a*)   The treaty provides that signature shall have that effect;

(*b*)   It is otherwise established that the negotiating States were agreed that signature should have that effect; or

(*c*)   The intention of the State to give that effect to the signature appears from the full powers of its representative or was expressed during the negotiation.

2.   For the purposes of paragraph 1:

(*a*)   The initialling of a text constitutes a signature of the treaty when it is established that the negotiating States so agreed;

(*b*)   The signature *ad referendum* of a treaty by a representative, if confirmed by his State, constitutes a full signature of the treaty.

*Article 13.* CONSENT TO BE BOUND BY A TRᶜATY EXPRESSED
BY AN EXCHANGE OF INSTRUMENTS CONSTITUTING A TREATY

The consent of States to be bound by a treaty constituted by instruments exchanged between them is expressed by that exchange when:

(*a*)   The instruments provide that their exchange shall have that effect; or

(*b*)   It is otherwise established that those States were agreed that the exchange of instruments shall have that effect.

*Article 14.* CONSENT TO BE BOUND BY A TREATY EXPRESSED
BY RATIFICATION, ACCEPTANCE OR APPROVAL

1.   The consent of a State to be bound by a treaty is expressed by ratification when:

(*a*)   The treaty provides for such consent to be expressed by means of ratification;

(*b*)   It is otherwise established that the negotiating States were agreed that ratification should be required;

(c) The representative of the State has signed the treaty subject to ratification; or

(d) The intention of the State to sign the treaty subject to ratification appears from the full powers of its representative or was expressed during the negotiation.

2. The consent of a State to be bound by a treaty is expressed by acceptance or approval under conditions similar to those which apply to ratification.

*Article 15.* CONSENT TO BE BOUND BY A TREATY EXPRESSED BY ACCESSION

The consent of a State to be bound by a treaty is expressed by accession when:

(a) The treaty provides that such consent may be expressed by that State by means of accession;

(b) It is otherwise established that the negotiating States were agreed that such consent may be expressed by that State by means of accession; or

(c) All the parties have subsequently agreed that such consent may be expressed by that State by means of accession.

*Article 16.* EXCHANGE OR DEPOSIT OF INSTRUMENTS OF RATIFICATION, ACCEPTANCE, APPROVAL OR ACCESSION

Unless the treaty otherwise provides, instruments of ratification, acceptance, approval or accession establish the consent of a State to be bound by a treaty upon:

(a) Their exchange between the contracting States;

(b) Their deposit with the depositary; or

(c) Their notification to the contracting States or to the depositary, if so agreed.

*Article 17.* CONSENT TO BE BOUND BY PART OF A TREATY AND CHOICE OF DIFFERING PROVISIONS

1. Without prejudice to articles 19 to 23, the consent of a State to be bound by part of a treaty is effective only if the treaty so permits or the other contracting States so agree.

2. The consent of a State to be bound by a treaty which permits a choice between differing provisions is effective only if it is made clear to which of the provisions the consent relates.

*Article 18.* OBLIGATION NOT TO DEFEAT THE OBJECT AND PURPOSE OF A TREATY PRIOR TO ITS ENTRY INTO FORCE

A State is obliged to refrain from acts which would defeat the object and purpose of a treaty when:

(a) It has signed the treaty or has exchanged instruments constituting the treaty subject to ratification, acceptance or approval, until it shall have made its intention clear not to become a party to the treaty; or

(b) It has expressed its consent to be bound by the treaty, pending the entry into force of the treaty and provided that such entry into force is not unduly delayed.

SECTION 2. RESERVATIONS

*Article 19.* FORMULATION OF RESERVATIONS

A State may, when signing, ratifying, accepting, approving or acceding to a treaty, formulate a reservation unless:

(a) The reservation is prohibited by the treaty;

(*b*)  The treaty provides that only specified reservations, which do not include the reservation in question, may be made; or

(*c*)  In cases not falling under sub-paragraphs (*a*) and (*b*), the reservation is incompatible with the object and purpose of the treaty.

*Article 20.*  ACCEPTANCE OF AND OBJECTION TO RESERVATIONS

1.  A reservation expressly authorized by a treaty does not require any subsequent acceptance by the other contracting States unless the treaty so provides.

2.  When it appears from the limited number of the negotiating States and the object and purpose of a treaty that the application of the treaty in its entirety between all the parties is an essential condition of the consent of each one to be bound by the treaty, a reservation requires acceptance by all the parties.

3.  When a treaty is a constituent instrument of an international organization and unless it otherwise provides, a reservation requires the acceptance of the competent organ of that organization.

4.  In cases not falling under the preceding paragraphs and unless the treaty otherwise provides:

(*a*)  Acceptance by another contracting State of a reservation constitutes the reserving State a party to the treaty in relation to that other State if or when the treaty is in force for those States;

(*b*)  An objection by another contracting State to a reservation does not preclude the entry into force of the treaty as between the objecting and reserving States unless a contrary intention is definitely expressed by the objecting State;

(*c*)  An act expressing a State's consent to be bound by the treaty and containing a reservation is effective as soon as at least one other contracting State has accepted the reservation.

5.  For the purposes of paragraphs 2 and 4 and unless the treaty otherwise provides, a reservation is considered to have been accepted by a State if it shall have raised no objection to the reservation by the end of a period of twelve months after it was notified of the reservation or by the date on which it expressed its consent to be bound by the treaty, whichever is later.

*Article 21.*  LEGAL EFFECTS OF RESERVATIONS
AND OF OBJECTIONS TO RESERVATIONS

1.  A reservation established with regard to another party in accordance with articles 19, 20 and 23:

(*a*)  Modifies for the reserving State in its relations with that other party the provisions of the treaty to which the reservation relates to the extent of the reservation; and

(*b*)  Modifies those provisions to the same extent for that other party in its relations with the reserving State.

2.  The reservation does not modify the provisions of the treaty for the other parties to the treaty *inter se.*

3.  When a State objecting to a reservation has not opposed the entry into force of the treaty between itself and the reserving State, the provisions to which the reservation relates do not apply as between the two States to the extent of the reservation.

*Article 22.*  WITHDRAWAL OF RESERVATIONS
AND OF OBJECTIONS TO RESERVATIONS

1. Unless the treaty otherwise provides, a reservation may be withdrawn at any time and the consent of a State which has accepted the reservation is not required for its withdrawal.

2. Unless the treaty otherwise provides, an objection to a reservation may be withdrawn at any time.

3. Unless the treaty otherwise provides, or it is otherwise agreed:

(*a*) The withdrawal of a reservation becomes operative in relation to another contracting State only when notice of it has been received by that State;

(*b*) The withdrawal of an objection to a reservation becomes operative only when notice of it has been received by the State which formulated the reservation.

*Article 23.*  PROCEDURE REGARDING RESERVATIONS

1. A reservation, an express acceptance of a reservation and an objection to a reservation must be formulated in writing and communicated to the contracting States and other States entitled to become parties to the treaty.

2. If formulated when signing the treaty subject to ratification, acceptance or approval, a reservation must be formally confirmed by the reserving State when expressing its consent to be bound by the treaty. In such a case the reservation shall be considered as having been made on the date of its confirmation.

3. An express acceptance of, or an objection to, a reservation made previously to confirmation of the reservation does not itself require confirmation.

4. The withdrawal of a reservation or of an objection to a reservation must be formulated in writing.

SECTION 3.  ENTRY INTO FORCE AND PROVISIONAL APPLICATION OF TREATIES

*Article 24.*  ENTRY INTO FORCE

1. A treaty enters into force in such manner and upon such date as it may provide or as the negotiating States may agree.

2. Failing any such provision or agreement, a treaty enters into force as soon as consent to be bound by the treaty has been established for all the negotiating States.

3. When the consent of a State to be bound by a treaty is established on a date after the treaty has come into force, the treaty enters into force for that State on that date, unless the treaty otherwise provides.

4. The provisions of a treaty regulating the authentication of its text, the establishment of the consent of States to be bound by the treaty, the manner or date of its entry into force, reservations, the functions of the depositary and other matters arising necessarily before the entry into force of the treaty apply from the time of the adoption of its text.

*Article 25.*  PROVISIONAL APPLICATION

1. A treaty or a part of a treaty is applied provisionally pending its entry into force if:

(*a*) The treaty itself so provides; or

(*b*) The negotiating States have in some other manner so agreed.

2.   Unless the treaty otherwise provides or the negotiating States have otherwise agreed, the provisional application of a treaty or a part of a treaty with respect to a State shall be terminated if that State notifies the other States between which the treaty is being applied provisionally of its intention not to become a party to the treaty.

## PART III.   OBSERVANCE, APPLICATION AND INTERPRETATION OF TREATIES

### SECTION 1.   OBSERVANCE OF TREATIES

#### Article 26.   "PACTA SUNT SERVANDA"

Every treaty in force is binding upon the parties to it and must be performed by them in good faith.

#### Article 27.   INTERNAL LAW AND OBSERVANCE OF TREATIES

A party may not invoke the provisions of its internal law as justification for its failure to perform a treaty. This rule is without prejudice to article 46.

### SECTION 2.   APPLICATION OF TREATIES

#### Article 28.   NON-RETROACTIVITY OF TREATIES

Unless a different intention appears from the treaty or is otherwise established, its provisions do not bind a party in relation to any act or fact which took place or any situation which ceased to exist before the date of the entry into force of the treaty with respect to that party.

#### Article 29.   TERRITORIAL SCOPE OF TREATIES

Unless a different intention appears from the treaty or is otherwise established, a treaty is binding upon each party in respect of its entire territory.

#### Article 30.   APPLICATION OF SUCCESSIVE TREATIES RELATING TO THE SAME SUBJECT-MATTER

1.   Subject to Article 103 of the Charter of the United Nations, the rights and obligations of States parties to successive treaties relating to the same subject-matter shall be determined in accordance with the following paragraphs.

2.   When a treaty specifies that it is subject to, or that it is not to be considered as incompatible with, an earlier or later treaty, the provisions of that other treaty prevail.

3.   When all the parties to the earlier treaty are parties also to the later treaty but the earlier treaty is not terminated or suspended in operation under article 59, the earlier treaty applies only to the extent that its provisions are compatible with those of the later treaty.

4.   When the parties to the later treaty do not include all the parties to the earlier one:

(a)   As between States parties to both treaties the same rule applies as in paragraph 3;

(b)   As between a State party to both treaties and a State party to only one of the treaties, the treaty to which both States are parties governs their mutual rights and obligations.

5.   Paragraph 4 is without prejudice to article 41, or to any question of the termination or suspension of the operation of a treaty under article 60 or to any ques-

tion of responsibility which may arise for a State from the conclusion or application of a treaty the provisions of which are incompatible with its obligations towards another State under another treaty.

SECTION 3.    INTERPRETATION OF TREATIES

*Article 31.*    GENERAL RULE OF INTERPRETATION

1.    A treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose.

2.    The context for the purpose of the interpretation of a treaty shall comprise, in addition to the text, including its preamble and annexes:

(*a*)    Any agreement relating to the treaty which was made between all the parties in connexion with the conclusion of the treaty;

(*b*)    Any instrument which was made by one or more parties in connexion with the conclusion of the treaty and accepted by the other parties as an instrument related to the treaty.

3.    There shall be taken into account, together with the context:

(*a*)    Any subsequent agreement between the parties regarding the interpretation of the treaty or the application of its provisions;

(*b*)    Any subsequent practice in the application of the treaty which establishes the agreement of the parties regarding its interpretation;

(*c*)    Any relevant rules of international law applicable in the relations between the parties.

4.    A special meaning shall be given to a term if it is established that the parties so intended.

*Article 32.*    SUPPLEMENTARY MEANS OF INTERPRETATION

Recourse may be had to supplementary means of interpretation, including the preparatory work of the treaty and the circumstances of its conclusion, in order to confirm the meaning resulting from the application of article 31, or to determine the meaning when the interpretation according to article 31:

(*a*)    Leaves the meaning ambiguous or obscure; or

(*b*)    Leads to a result which is manifestly absurd or unreasonable.

*Article 33.*    INTERPRETATION OF TREATIES AUTHENTICATED
IN TWO OR MORE LANGUAGES

1.    When a treaty has been authenticated in two or more languages, the text is equally authoritative in each language, unless the treaty provides or the parties agree that, in case of divergence, a particular text shall prevail.

2.    A version of the treaty in a language other than one of those in which the text was authenticated shall be considered an authentic text only if the treaty so provides or the parties so agree.

3.    The terms of the treaty are presumed to have the same meaning in each authentic text.

4.    Except where a particular text prevails in accordance with paragraph 1, when a comparison of the authentic texts discloses a difference of meaning which the application of articles 31 and 32 does not remove, the meaning which best reconciles the texts, having regard to the object and purpose of the treaty, shall be adopted.

SECTION 4.   TREATIES AND THIRD STATES

### Article 34.   GENERAL RULE REGARDING THIRD STATES

A treaty does not create either obligations or rights for a third State without its consent.

### Article 35.   TREATIES PROVIDING FOR OBLIGATIONS FOR THIRD STATES

An obligation arises for a third State from a provision of a treaty if the parties to the treaty intend the provision to be the means of establishing the obligation and the third State expressly accepts that obligation in writing.

### Article 36.   TREATIES PROVIDING FOR RIGHTS FOR THIRD STATES

1.   A right arises for a third State from a provision of a treaty if the parties to the treaty intend the provision to accord that right either to the third State, or to a group of States to which it belongs, or to all States, and the third State assents thereto. Its assent shall be presumed so long as the contrary is not indicated, unless the treaty otherwise provides.

2.   A State exercising a right in accordance with paragraph 1 shall comply with the conditions for its exercise provided for in the treaty or established in conformity with the treaty.

### Article 37.   REVOCATION OR MODIFICATION OF OBLIGATIONS OR RIGHTS OF THIRD STATES

1.   When an obligation has arisen for a third State in conformity with article 35, the obligation may be revoked or modified only with the consent of the parties to the treaty and of the third State, unless it is established that they had otherwise agreed.

2.   When a right has arisen for a third State in conformity with article 36, the right may not be revoked or modified by the parties if it is established that the right was intended not to be revocable or subject to modification without the consent of the third State.

### Article 38.   RULES IN A TREATY BECOMING BINDING ON THIRD STATES THROUGH INTERNATIONAL CUSTOM

Nothing in articles 34 to 37 precludes a rule set forth in a treaty from becoming binding upon a third State as a customary rule of international law, recognized as such.

## PART IV.   AMENDMENT AND MODIFICATION OF TREATIES

### Article 39.   GENERAL RULE REGARDING THE AMENDMENT OF TREATIES

A treaty may be amended by agreement between the parties. The rules laid down in Part II apply to such an agreement except in so far as the treaty may otherwise provide.

### Article 40.   AMENDMENT OF MULTILATERAL TREATIES

1.   Unless the treaty otherwise provides, the amendment of multilateral treaties shall be governed by the following paragraphs.

2.   Any proposal to amend a multilateral treaty as between all the parties must be notified to all the contracting States, each one of which shall have the right to take part in:

(a)  The decision as to the action to be taken in regard to such proposal;

(b)  The negotiation and conclusion of any agreement for the amendment of the treaty.

3.  Every State entitled to become a party to the treaty shall also be entitled to become a party to the treaty as amended.

4.  The amending agreement does not bind any State already a party to the treaty which does not become a party to the amending agreement; article 30, paragraph 4(b), applies in relation to such State.

5.  Any State which becomes a party to the treaty after the entry into force of the amending agreement shall, failing an expression of a different intention by that State:

(a)  be considered as a party to the treaty as amended; and

(b)  be considered as a party to the unamended treaty in relation to any party to the treaty not bound by the amending agreement.

### Article 41.  AGREEMENTS TO MODIFY MULTILATERAL TREATIES BETWEEN CERTAIN OF THE PARTIES ONLY

1.  Two or more of the parties to a multilateral treaty may conclude an agreement to modify the treaty as between themselves alone if:

(a)  The possibility of such a modification is provided for by the treaty; or

(b)  The modification in question is not prohibited by the treaty and:

  (i)  Does not affect the enjoyment by the other parties of their rights under the treaty or the performance of their obligations;

  (ii)  Does not relate to a provision, derogation from which is incompatible with the effective execution of the object and purpose of the treaty as a whole.

2.  Unless in a case falling under paragraph 1(a) the treaty otherwise provides, the parties in question shall notify the other parties of their intention to conclude the agreement and of the modification to the treaty for which it provides.

## PART V.  INVALIDITY, TERMINATION AND SUSPENSION OF THE OPERATION OF TREATIES

### SECTION 1.  GENERAL PROVISIONS

### Article 42.  VALIDITY AND CONTINUANCE IN FORCE OF TREATIES

1.  The validity of a treaty or of the consent of a State to be bound by a treaty may be impeached only through the application of the present Convention.

2.  The termination of a treaty, its denunciation or the withdrawal of a party, may take place only as a result of the application of the provisions of the treaty or of the present Convention. The same rule applies to suspension of the operation of a treaty.

### Article 43.  OBLIGATIONS IMPOSED BY INTERNATIONAL LAW INDEPENDENTLY OF A TREATY

The invalidity, termination or denunciation of a treaty, the withdrawal of a party from it, or the suspension of its operation, as a result of the application of the present Convention or of the provisions of the treaty, shall not in any way impair the duty of any State to fulfil any obligation embodied in the treaty to which it would be subject under international law independently of the treaty.

*Article 44.*  SEPARABILITY OF TREATY PROVISIONS

1.  A right of a party, provided for in a treaty or arising under article 56, to denounce, withdraw from or suspend the operation of the treaty may be exercised only with respect to the whole treaty unless the treaty otherwise provides or the parties otherwise agree.

2.  A ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty recognized in the present Convention may be invoked only with respect to the whole treaty except as provided in the following paragraphs or in article 60.

3.  If the ground relates solely to particular clauses, it may be invoked only with respect to those clauses where:

(*a*)  The said clauses are separable from the remainder of the treaty with regard to their application;

(*b*)  It appears from the treaty or is otherwise established that acceptance of those clauses was not an essential basis of the consent of the other party or parties to be bound by the treaty as a whole; and

(*c*)  Continued performance of the remainder of the treaty would not be unjust.

4.  In cases falling under articles 49 and 50 the State entitled to invoke the fraud or corruption may do so with respect either to the whole treaty or, subject to paragraph 3, to the particular clauses alone.

5.  In cases falling under articles 51, 52 and 53, no separation of the provisions of the treaty is permitted.

*Article 45.*  LOSS OF A RIGHT TO INVOKE A GROUND FOR INVALIDATING,
TERMINATING, WITHDRAWING FROM OR SUSPENDING THE OPERATION OF A TREATY

A State may no longer invoke a ground for invalidating, terminating, withdrawing from or suspending the operation of a treaty under articles 46 to 50 or articles 60 and 62 if, after becoming aware of the facts:

(*a*)  It shall have expressly agreed that the treaty is valid or remains in force or continues in operation, as the case may be; or

(*b*)  It must by reason of its conduct be considered as having acquiesced in the validity of the treaty or in its maintenance in force or in operation, as the case may be.

SECTION 2.  INVALIDITY OF TREATIES

*Article 46.*  PROVISIONS OF INTERNAL LAW REGARDING
COMPETENCE TO CONCLUDE TREATIES

1.  A State may not invoke the fact that its consent to be bound by a treaty has been expressed in violation of a provision of its internal law regarding competence to conclude treaties as invalidating its consent unless that violation was manifest and concerned a rule of its internal law of fundamental importance.

2.  A violation is manifest if it would be objectively evident to any State conducting itself in the matter in accordance with normal practice and in good faith.

*Article 47.*  SPECIFIC RESTRICTIONS ON AUTHORITY TO EXPRESS
THE CONSENT OF A STATE

If the authority of a representative to express the consent of a State to be bound by a particular treaty has been made subject to a specific restriction, his omission to

observe that restriction may not be invoked as invalidating the consent expressed by him unless the restriction was notified to the other negotiating States prior to his expressing such consent.

### *Article 48.*  ERROR

1.  A State may invoke an error in a treaty as invalidating its consent to be bound by the treaty if the error relates to a fact or situation which was assumed by that State to exist at the time when the treaty was concluded and formed an essential basis of its consent to be bound by the treaty.

2.  Paragraph 1 shall not apply if the State in question contributed by its own conduct to the error or if the circumstances were such as to put that State on notice of a possible error.

3.  An error relating only to the wording of the text of a treaty does not affect its validity; article 79 then applies.

### *Article 49.*  FRAUD

If a State has been induced to conclude a treaty by the fraudulent conduct of another negotiating State, the State may invoke the fraud as invalidating its consent to be bound by the treaty.

### *Article 50.*  CORRUPTION OF A REPRESENTATIVE OF A STATE

If the expression of a State's consent to be bound by a treaty has been procured through the corruption of its representative directly or indirectly by another negotiating State, the State may invoke such corruption as invalidating its consent to be bound by the treaty.

### *Article 51.*  COERCION OF A REPRESENTATIVE OF A STATE

The expression of a State's consent to be bound by a treaty which has been procured by the coercion of its representative through acts or threats directed against him shall be without any legal effect.

### *Article 52.*  COERCION OF A STATE BY THE THREAT OR USE OF FORCE

A treaty is void if its conclusion has been procured by the threat or use of force in violation of the principles of international law embodied in the Charter of the United Nations.

### *Article 53.*  TREATIES CONFLICTING WITH A PEREMPTORY NORM
### OF GENERAL INTERNATIONAL LAW (''JUS COGENS'')

A treaty is void if, at the time of its conclusion, it conflicts with a peremptory norm of general international law. For the purposes of the present Convention, a peremptory norm of general international law is a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character.

SECTION 3.  TERMINATION AND SUSPENSION OF THE OPERATION OF TREATIES

### *Article 54.*  TERMINATION OF OR WITHDRAWAL FROM A TREATY
### UNDER ITS PROVISIONS OR BY CONSENT OF THE PARTIES

The termination of a treaty or the withdrawal of a party may take place:

(*a*)  In conformity with the provisions of the treaty; or

(b)  At any time by consent of all the parties after consultation with the other con-
tracting States.

*Article 55.*  REDUCTION OF THE PARTIES TO A MULTILATERAL TREATY
BELOW THE NUMBER NECESSARY FOR ITS ENTRY INTO FORCE

Unless the treaty otherwise provides, a multilateral treaty does not terminate by
reason only of the fact that the number of the parties falls below the number
necessary for its entry into force.

*Article 56.*  DENUNCIATION OF OR WITHDRAWAL FROM A TREATY CONTAINING
NO PROVISION REGARDING TERMINATION, DENUNCIATION OR WITHDRAWAL

1.  A treaty which contains no provision regarding its termination and which
does not provide for denunciation or withdrawal is not subject to denunciation or
withdrawal unless:
(a)  It is established that the parties intended to admit the possibility of denuncia-
tion or withdrawal; or
(b)  A right of denunciation or withdrawal may be implied by the nature of the treaty.
2.  A party shall give not less than twelve months' notice of its intention to de-
nounce or withdraw from a treaty under paragraph 1.

*Article 57.*  SUSPENSION OF THE OPERATION OF A TREATY UNDER
ITS PROVISIONS OR BY CONSENT OF THE PARTIES

The operation of a treaty in regard to all the parties or to a particular party may
be suspended:
(a)  In conformity with the provisions of the treaty; or
(b)  At any time by consent of all the parties after consultation with the other con-
tracting States.

*Article 58.*  SUSPENSION OF THE OPERATION OF A MULTILATERAL TREATY
BY AGREEMENT BETWEEN CERTAIN OF THE PARTIES ONLY

1.  Two or more parties to a multilateral treaty may conclude an agreement to
suspend the operation of provisions of the treaty, temporarily and as between
themselves alone, if:
(a)  The possibility of such a suspension is provided for by the treaty; or
(b)  The suspension in question is not prohibited by the treaty and:
    (i)  Does not affect the enjoyment by the other parties of their rights under the
         treaty or the performance of their obligations;
    (ii)  Is not incompatible with the object and purpose of the treaty.
2.  Unless in a case falling under paragraph 1(a) the treaty otherwise provides,
the parties in question shall notify the other parties of their intention to conclude the
agreement and of those provisions of the treaty the operation of which they intend to
suspend.

*Article 59.*  TERMINATION OR SUSPENSION OF THE OPERATION
OF A TREATY IMPLIED BY CONCLUSION OF A LATER TREATY

1.  A treaty shall be considered as terminated if all the parties to it conclude a
later treaty relating to the same subject-matter and:
(a)  It appears from the later treaty or is otherwise established that the parties in-
tended that the matter should be governed by that treaty; or

(*b*) The provisions of the later treaty are so far incompatible with those of the earlier one that the two treaties are not capable of being applied at the same time.

2.   The earlier treaty shall be considered as only suspended in operation if it appears from the later treaty or is otherwise established that such was the intention of the parties.

### *Article 60.* TERMINATION OR SUSPENSION OF THE OPERATION OF A TREATY AS A CONSEQUENCE OF ITS BREACH

1.   A material breach of a bilateral treaty by one of the parties entitles the other to invoke the breach as a ground for terminating the treaty or suspending its operation in whole or in part.

2.   A material breach of a multilateral treaty by one of the parties entitles:

(*a*) The other parties by unanimous agreement to suspend the operation of the treaty in whole or in part or to terminate it either:

(i)   In the relations between themselves and the defaulting State, or

(ii)  As between all the parties;

(*b*) A party specially affected by the breach to invoke it as a ground for suspending the operation of the treaty in whole or in part in the relations between itself and the defaulting State;

(*c*) Any party other than the defaulting State to invoke the breach as a ground for suspending the operation of the treaty in whole or in part with respect to itself if the treaty is of such a character that a material breach of its provisions by one party radically changes the position of every party with respect to the further performance of its obligations under the treaty.

3.   A material breach of a treaty, for the purposes of this article, consists in:

(*a*) A repudiation of the treaty not sanctioned by the present Convention; or

(*b*) The violation of a provision essential to the accomplishment of the object or purpose of the treaty.

4.   The foregoing paragraphs are without prejudice to any provision in the treaty applicable in the event of a breach.

5.   Paragraphs 1 to 3 do not apply to provisions relating to the protection of the human person contained in treaties of a humanitarian character, in particular to provisions prohibiting any form of reprisals against persons protected by such treaties.

### *Article 61.* SUPERVENING IMPOSSIBILITY OF PERFORMANCE

1.   A party may invoke the impossibility of performing a treaty as a ground for terminating or withdrawing from it if the impossibility results from the permanent disappearance or destruction of an object indispensable for the execution of the treaty. If the impossibility is temporary, it may be invoked only as a ground for suspending the operation of the treaty.

2.   Impossibility of performance may not be invoked by a party as a ground for terminating, withdrawing from or suspending the operation of a treaty if the impossibility is the result of a breach by that party either of an obligation under the treaty or of any other international obligation owed to any other party to the treaty.

*Article 62.*  FUNDAMENTAL CHANGE OF CIRCUMSTANCES

1.   A fundamental change of circumstances which has occurred with regard to those existing at the time of the conclusion of a treaty, and which was not foreseen by the parties, may not be invoked as a ground for terminating or withdrawing from the treaty unless:

(*a*)  The existence of those circumstances constituted an essential basis of the consent of the parties to be bound by the treaty; and

(*b*)  The effect of the change is radically to transform the extent of obligations still to be performed under the treaty.

2.   A fundamental change of circumstances may not be invoked as a ground for terminating or withdrawing from a treaty:

(*a*)  If the treaty establishes a boundary; or

(*b*)  If the fundamental change is the result of a breach by the party invoking it either of an obligation under the treaty or of any other international obligation owed to any other party to the treaty.

3.   If, under the foregoing paragraphs, a party may invoke a fundamental change of circumstances as a ground for terminating or withdrawing from a treaty it may also invoke the change as a ground for suspending the operation of the treaty.

*Article 63.*  SEVERANCE OF DIPLOMATIC OR CONSULAR RELATIONS

The severance of diplomatic or consular relations between parties to a treaty does not affect the legal relations established between them by the treaty except in so far as the existence of diplomatic or consular relations is indispensable for the application of the treaty.

*Article 64.*  EMERGENCE OF A NEW PEREMPTORY NORM OF GENERAL
INTERNATIONAL LAW (''JUS COGENS'')

If a new peremptory norm of general international law emerges, any existing treaty which is in conflict with that norm becomes void and terminates.

SECTION 4.  PROCEDURE

*Article 65.*  PROCEDURE TO BE FOLLOWED WITH RESPECT TO INVALIDITY,
TERMINATION, WITHDRAWAL FROM OR SUSPENSION OF THE OPERATION OF A TREATY

1.   A party which, under the provisions of the present Convention, invokes either a defect in its consent to be bound by a treaty or a ground for impeaching the validity of a treaty, terminating it, withdrawing from it or suspending its operation, must notify the other parties of its claim. The notification shall indicate the measure proposed to be taken with respect to the treaty and the reasons therefor.

2.   If, after the expiry of a period which, except in cases of special urgency, shall not be less than three months after the receipt of the notification, no party has raised any objection, the party making the notification may carry out in the manner provided in article 67 the measure which it has proposed.

3.   If, however, objection has been raised by any other party, the parties shall seek a solution through the means indicated in Article 33 of the Charter of the United Nations.

4.   Nothing in the foregoing paragraphs shall affect the rights or obligations of the parties under any provisions in force binding the parties with regard to the settlement of disputes.

5.   Without prejudice to article 45, the fact that a State has not previously made the notification prescribed in paragraph 1 shall not prevent it from making such notification in answer to another party claiming performance of the treaty or alleging its violation.

*Article 66.*   Procedures for judicial settlement, arbitration
and conciliation

If, under paragraph 3 of article 65, no solution has been reached within a period of twelve months following the date on which the objection was raised, the following procedures shall be followed:

(*a*)   Any one of the parties to a dispute concerning the application or the interpretation of article 53 or 64 may, by a written application, submit it to the International Court of Justice for a decision unless the parties by common consent agree to submit the dispute to arbitration;

(*b*)   Any one of the parties to a dispute concerning the application or the interpretation of any of the other articles in Part V of the present Convention may set in motion the procedure specified in the Annex to the Convention by submitting a request to that effect to the Secretary-General of the United Nations.

*Article 67.*   Instruments for declaring invalid, terminating,
withdrawing from or suspending the operation of a treaty

1.   The notification provided for under article 65, paragraph 1 must be made in writing.

2.   Any act declaring invalid, terminating, withdrawing from or suspending the operation of a treaty pursuant to the provisions of the treaty or of paragraphs 2 or 3 of article 65 shall be carried out through an instrument communicated to the other parties. If the instrument is not signed by the Head of State, Head of Government or Minister for Foreign Affairs, the representative of the State communicating it may be called upon to produce full powers.

*Article 68.*   Revocation of notifications and instruments
provided for in articles 65 and 67

A notification or instrument provided for in article 65 or 67 may be revoked at any time before it takes effect.

Section 5.   Consequences of the invalidity, termination or suspension
of the operation of a treaty

*Article 69.*   Consequences of the invalidity of a treaty

1.   A treaty the invalidity of which is established under the present Convention is void. The provisions of a void treaty have no legal force.

2.   If acts have nevertheless been performed in reliance on such a treaty:

(*a*)   Each party may require any other party to establish as far as possible in their mutual relations the position that would have existed if the acts had not been performed;

(*b*)   Acts performed in good faith before the invalidity was invoked are not rendered unlawful by reason only of the invalidity of the treaty.

3.   In cases falling under articles 49, 50, 51 or 52, paragraph 2 does not apply with respect to the party to which the fraud, the act of corruption or the coercion is imputable.

4.   In the case of the invalidity of a particular State's consent to be bound by a multilateral treaty, the foregoing rules apply in the relations between that State and the parties to the treaty.

### Article 70.   CONSEQUENCES OF THE TERMINATION OF A TREATY

1.   Unless the treaty otherwise provides or the parties otherwise agree, the termination of a treaty under its provisions or in accordance with the present Convention:

(*a*)  Releases the parties from any obligation further to perform the treaty;

(*b*)  Does not affect any right, obligation or legal situation of the parties created through the execution of the treaty prior to its termination.

2.   If a State denounces or withdraws from a multilateral treaty, paragraph 1 applies in the relations between that State and each of the other parties to the treaty from the date when such denunciation or withdrawal takes effect.

### Article 71.   CONSEQUENCES OF THE INVALIDITY OF A TREATY WHICH CONFLICTS WITH A PEREMPTORY NORM OF GENERAL INTERNATIONAL LAW

1.   In the case of a treaty which is void under article 53 the parties shall:

(*a*)  Eliminate as far as possible the consequences of any act performed in reliance on any provision which conflicts with the peremptory norm of general international law; and

(*b*)  Bring their mutual relations into conformity with the peremptory norm of general international law.

2.   In the case of a treaty which becomes void and terminates under article 64, the termination of the treaty:

(*a*)  Releases the parties from any obligation further to perform the treaty;

(*b*)  Does not affect any right, obligation or legal situation of the parties created through the execution of the treaty prior to its termination, provided that those rights, obligations or situations may thereafter be maintained only to the extent that their maintenance is not in itself in conflict with the new peremptory norm of general international law.

### Article 72.   CONSEQUENCES OF THE SUSPENSION OF THE OPERATION OF A TREATY

1.   Unless the treaty otherwise provides or the parties otherwise agree, the suspension of the operation of a treaty under its provisions or in accordance with the present Convention:

(*a*)  Releases the parties between which the operation of the treaty is suspended from the obligation to perform the treaty in their mutual relations during the period of the suspension;

(*b*)  Does not otherwise affect the legal relations between the parties established by the treaty.

2.   During the period of the suspension the parties shall refrain from acts tending to obstruct the resumption of the operation of the treaty.

PART VI.  MISCELLANEOUS PROVISIONS

*Article 73.*  CASES OF STATE SUCCESSION, STATE RESPONSIBILITY
AND OUTBREAK OF HOSTILITIES

The provisions of the present Convention shall not prejudge any question that may arise in regard to a treaty from a succession of States or from the international responsibility of a State or from the outbreak of hostilities between States.

*Article 74.*  DIPLOMATIC AND CONSULAR RELATIONS
AND THE CONCLUSION OF TREATIES

The severance or absence of diplomatic or consular relations between two or more States does not prevent the conclusion of treaties between those States. The conclusion of a treaty does not in itself affect the situation in regard to diplomatic or consular relations.

*Article 75.*  CASE OF AN AGGRESSOR STATE

The provisions of the present Convention are without prejudice to any obligation in relation to a treaty which may arise for an aggressor State in consequence of measures taken in conformity with the Charter of the United Nations with reference to that State's aggression.

PART VII.  DEPOSITARIES, NOTIFICATIONS, CORRECTIONS
AND REGISTRATION

*Article 76.*  DEPOSITARIES OF TREATIES

1.  The designation of the depositary of a treaty may be made by the negotiating States, either in the treaty itself or in some other manner. The depositary may be one or more States, an international organization or the chief administrative officer of the organization.

2.  The functions of the depositary of a treaty are international in character and the depositary is under an obligation to act impartially in their performance. In particular, the fact that a treaty has not entered into force between certain of the parties or that a difference has appeared between a State and a depositary with regard to the performance of the latter's functions shall not affect that obligation.

*Article 77.*  FUNCTIONS OF DEPOSITARIES

1.  The functions of a depositary, unless otherwise provided in the treaty or agreed by the contracting States, comprise in particular:

(*a*)  Keeping custody of the original text of the treaty and of any full powers delivered to the depositary;

(*b*)  Preparing certified copies of the original text and preparing any further text of the treaty in such additional languages as may be required by the treaty and transmitting them to the parties and to the States entitled to become parties to the treaty;

(*c*)  Receiving any signatures to the treaty and receiving and keeping custody of any instruments, notifications and communications relating to it;

(*d*)  Examining whether the signature or any instrument, notification or communication relating to the treaty is in due and proper form and, if need be, bringing the matter to the attention of the State in question;

(*e*)  Informing the parties and the States entitled to become parties to the treaty of acts, notifications and communications relating to the treaty;

Case 1:19-cv-01618-TSC     Document 69-7     Filed 06/09/22     Page 22 of 70

(f)   Informing the States entitled to become parties to the treaty when the number of signatures or of instruments of ratification, acceptance, approval or accession required for the entry into force of the treaty has been received or deposited;

(g)   Registering the treaty with the Secretariat of the United Nations;

(h)   Performing the functions specified in other provisions of the present Convention.

2.   In the event of any difference appearing between a State and the depositary as to the performance of the latter's functions, the depositary shall bring the question to the attention of the signatory States and the contracting States or, where appropriate, of the competent organ of the international organization concerned.

*Article 78.*   NOTIFICATIONS AND COMMUNICATIONS

Except as the treaty or the present Convention otherwise provide, any notification or communication to be made by any State under the present Convention shall:

(a)   If there is no depositary, be transmitted direct to the States for which it is intended, or if there is a depositary, to the latter;

(b)   Be considered as having been made by the State in question only upon its receipt by the State to which it was transmitted or, as the case may be, upon its receipt by the depositary;

(c)   If transmitted to a depositary, be considered as received by the State for which it was intended only when the latter State has been informed by the depositary in accordance with article 77, paragraph 1(e).

*Article 79.*   CORRECTION OF ERRORS IN TEXTS
OR IN CERTIFIED COPIES OF TREATIES

1.   Where, after the authentication of the text of a treaty, the signatory States and the contracting States are agreed that it contains an error, the error shall, unless they decide upon some other means of correction, be corrected:

(a)   By having the appropriate correction made in the text and causing the correction to be initialled by duly authorized representatives;

(b)   By executing or exchanging an instrument or instruments setting out the correction which it has been agreed to make; or

(c)   By executing a corrected text of the whole treaty by the same procedure as in the case of the original text.

2.   Where the treaty is one for which there is a depositary, the latter shall notify the signatory States and the contracting States of the error and of the proposal to correct it and shall specify an appropriate time-limit within which objection to the proposed correction may be raised. If, on the expiry of the time-limit:

(a)   No objection has been raised, the depositary shall make and initial the correction in the text and shall execute a procès-verbal of the rectification of the text and communicate a copy of it to the parties and to the States entitled to become parties to the treaty;

(b)   An objection has been raised, the depositary shall communicate the objection to the signatory States and to the contracting States.

3.   The rules in paragraphs 1 and 2 apply also where the text has been authenticated in two or more languages and it appears that there is a lack of concordance which the signatory States and the contracting States agree should be corrected.

4.   The corrected text replaces the defective text *ab initio*, unless the signatory States and the contracting States otherwise decide.

5.   The correction of the text of a treaty that has been registered shall be notified to the Secretariat of the United Nations.

6.   Where an error is discovered in a certified copy of a treaty, the depositary shall execute a procès-verbal specifying the rectification and communicate a copy of it to the signatory States and to the contracting States.

*Article 80.*   REGISTRATION AND PUBLICATION OF TREATIES

1.   Treaties shall, after their entry into force, be transmitted to the Secretariat of the United Nations for registration or filing and recording, as the case may be, and for publication.

2.   The designation of a depositary shall constitute authorization for it to perform the acts specified in the preceding paragraph.

PART VIII.   FINAL PROVISIONS

*Article 81.*   SIGNATURE

The present Convention shall be open for signature by all States Members of the United Nations or of any of the specialized agencies or of the International Atomic Energy Agency or parties to the Statute of the International Court of Justice, and by any other State invited by the General Assembly of the United Nations to become a party to the Convention, as follows: until 30 November 1969, at the Federal Ministry for Foreign Affairs of the Republic of Austria, and subsequently, until 30 April 1970, at United Nations Headquarters, New York.

*Article 82.*   RATIFICATION

The present Convention is subject to ratification. The instruments of ratification shall be deposited with the Secretary-General of the United Nations.

*Article 83.*   ACCESSION

The present Convention shall remain open for accession by any State belonging to any of the categories mentioned in article 81. The instruments of accession shall be deposited with the Secretary-General of the United Nations.

*Article 84.*   ENTRY INTO FORCE

1.   The present Convention shall enter into force on the thirtieth day following the date of deposit of the thirty-fifth instrument of ratification or accession.

2.   For each State ratifying or acceding to the Convention after the deposit of the thirty-fifth instrument of ratification or accession, the Convention shall enter into force on the thirtieth day after deposit by such State of its instrument of ratification or accession.

*Article 85.*   AUTHENTIC TEXTS

The original of the present Convention, of which the Chinese, English, French, Russian and Spanish texts are equally authentic, shall be deposited with the Secretary-General of the United Nations.

IN WITNESS WHEREOF the undersigned Plenipotentiaries, being duly authorized thereto by their respective Governments, have signed the present Convention.

DONE at Vienna, this twenty-third day of May, one thousand nine hundred and sixty-nine.

## ANNEX

1.  A list of conciliators consisting of qualified jurists shall be drawn up and maintained by the Secretary-General of the United Nations. To this end, every State which is a Member of the United Nations or a party to the present Convention shall be invited to nominate two conciliators, and the names of the persons so nominated shall constitute the list. The term of a conciliator, including that of any conciliator nominated to fill a casual vacancy, shall be five years and may be renewed. A conciliator whose term expires shall continue to fulfil any function for which he shall have been chosen under the following paragraph.

2.  When a request has been made to the Secretary-General under article 66, the Secretary-General shall bring the dispute before a conciliation commission constituted as follows:

The State or States constituting one of the parties to the dispute shall appoint:

(a)  One conciliator of the nationality of that State or of one of those States, who may or may not be chosen from the list referred to in paragraph 1; and

(b)  One conciliator not of the nationality of that State or of any of those States, who shall be chosen from the list.

The State or States constituting the other party to the dispute shall appoint two conciliators in the same way. The four conciliators chosen by the parties shall be appointed within sixty days following the date on which the Secretary-General receives the request.

The four conciliators shall, within sixty days following the date of the last of their own appointments, appoint a fifth conciliator chosen from the list, who shall be chairman.

If the appointment of the chairman or of any of the other conciliators has not been made within the period prescribed above for such appointment, it shall be made by the Secretary-General within sixty days following the expiry of that period. The appointment of the chairman may be made by the Secretary-General either from the list or from the membership of the International Law Commission. Any of the periods within which appointments must be made may be extended by agreement between the parties to the dispute.

Any vacancy shall be filled in the manner prescribed for the initial appointment.

3.  The Conciliation Commission shall decide its own procedure. The Commission, with the consent of the parties to the dispute, may invite any party to the treaty to submit to it its views orally or in writing. Decisions and recommendations of the Commission shall be made by a majority vote of the five members.

4.  The Commission may draw the attention of the parties to the dispute to any measures which might facilitate an amicable settlement.

5.  The Commission shall hear the parties, examine the claims and objections, and make proposals to the parties with a view to reaching an amicable settlement of the dispute.

6.  The Commission shall report within twelve months of its constitution. Its report shall be deposited with the Secretary-General and transmitted to the parties to the dispute. The report of the Commission, including any conclusions stated therein regarding the facts or questions of law, shall not be binding upon the parties and it shall have no other character than that of recommendations submitted for the consideration of the parties in order to facilitate an amicable settlement of the dispute.

7.  The Secretary-General shall provide the Commission with such assistance and facilities as it may require. The expenses of the Commission shall be borne by the United Nations.

For Afghanistan:
Pour l'Afghanistan :
阿富汗：
За Афганистан:
Por el Afganistán:

> Subject to the declaration attached[1]
> ABDUL H. TABIBI[2]

For Albania:
Pour l'Albanie :
阿尔巴尼亚：
За Албанию:
Por Albania:

For Algeria:
Pour l'Algérie :
阿尔及利亚：
За Алжир:
Por Argelia:

For Argentina:
Pour l'Argentine :
阿根廷：
За Аргентину:
Por la Argentina:

> E. DE LA GUARDIA

For Australia:
Pour l'Australie :
澳大利亚：
За Австралию:
Por Australia:

---

[1] Avec une déclaration, dont texte joint en annexe.
[2] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For Austria:
Pour l'Autriche :
奥地利：
За Австрию：
Por Austria:

For Barbados:
Pour la Barbade :
巴巴多斯：
За Барбадос：
Por Barbados:

                GEORGE C. R. MOE

For Belgium:
Pour la Belgique :
比利时：
За Бельгию：
Por Bélgica:

For Bolivia:
Pour la Bolivie :
玻利维亚：
За Боливию：
Por Bolivia:

                Sujeta a la declaración anexa[1]
                J. ROMERO LOZA[2]

For Botswana:
Pour le Botswana :
博茨瓦纳：
За Ботсвану：
Por Botswana:

---

[1] Subject to the attached declaration — Avec une déclaration, dont texte joint en annexe.
[2] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For Brazil:
Pour le Brésil :
巴 西:
За Бразилию:
Por el Brasil:

                    G. NASCIMENTO E SILVA


For Bulgaria:
Pour la Bulgarie :
保加利亚:
За Болгарию:
Por Bulgaria:


For Burma:
Pour la Birmanie :
缅甸:
За Бирму:
Por Birmania:


For Burundi:
Pour le Burundi :
布隆迪:
За Бурунди:
Por Burundi:


For the Byelorussian Soviet Socialist Republic:
Pour la République socialiste soviétique de Biélorussie :
白俄罗斯苏维埃社会主义共和国:
За Белорусскую Советскую Социалистическую Республику:
Por la República Socialista Soviética de Bielorrusia:

For Cambodia:
Pour le Cambodge :
柬埔寨：
За Камбоджу:
Por Camboya:

SARIN CHHAK


For Cameroon:
Pour le Cameroun :
喀麥隆：
За Камерун:
Por el Camerún:


For Canada:
Pour le Canada :
加拿大：
За Канаду:
Por el Canadá:


For the Central African Republic:
Pour la République centrafricaine :
中非共和国：
За Центральноафриканскую Республику:
Por la República Centroafricana:


For Ceylon:
Pour le Ceylan :
錫蘭：
За Цейлон:
Por Ceilán:

For Chad:
Pour le Tchad :
乍 得 :
За Чад:
Por el Chad:


For Chile:
Pour le Chili :
智 利 :
За Чили:
Por Chile:

PEDRO J. RODRÍGUEZ
EDMUNDO VARGAS


For China:
Pour la Chine :
中 国 :
За Китай:
Por China:

LIU CHIEH
April 27, 1970


For Colombia:
Pour la Colombie :
哥 伦 比 亚 :
За Колумбию:
Por Colombia:

ANTONIO BAYONA
HUMBERTO RUIZ
J. J. CAICEDO PERDOMO

For the Congo (Brazzaville):
Pour le Congo (Brazzaville) :
剛果 (布拉薩市):
За Конго (Браззавиль):
Por el Congo (Brazzaville):

> Sous réserve de ratification par mon pays[1]
> S. Bikoutha

For the Congo (Democratic Republic of):
Pour le Congo (République démocratique du) :
剛果 (民主共和國):
За Демократическую Республику Конго:
Por el Congo (República Democrática de):

For Costa Rica:
Pour le Costa Rica :
哥斯达黎加:
За Коста-Рику:
Por Costa Rica:

> *Ad referendum* y sujeto a las reservas anexas[2]
> J. L. Redondo Gómez[3]

For Cuba:
Pour Cuba :
古巴:
За Кубу:
Por Cuba:

---

[1] Subject to ratification by my country.

[2] *Ad referendum* and subject to the attached reservations — *Ad referendum* et soumise aux réserves, dont texte joint en annexe.

[3] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For Cyprus:
Pour Chypre :
塞浦路斯 :
За Кипр:
Por Chipre:


For Czechoslovakia:
Pour la Tchécoslovaquie :
捷克斯洛伐克 :
За Чехословакию:
Por Checoslovaquia:


For Dahomey:
Pour le Dahomey :
达荷美 :
За Дагомею:
Por el Dahomey:


For Denmark:
Pour le Danemark :
丹麦 :
За Данию:
Por Dinamarca:

OTTO BORCH
April 18, 1970


For the Dominican Republic:
Pour la République Dominicaine :
多米尼加共和国 :
За Доминиканскую Республику:
Por la República Dominicana:

For Ecuador:
Pour l'Equateur :
厄瓜多尔:
За Эквадор:
Por el Ecuador:

> Con la declaración que se anexo[1]
> GONZALO ESCUDERO MOSCOSO[2]

For El Salvador:
Pour El Salvador :
萨尔瓦多:
За Сальвадор:
Por El Salvador:

> R. GALINDO POHL
> 16 de febrero de 1970

For Equatorial Guinea:
Pour la Guinée équatoriale :
赤道几内亚:
За Экваториальную Гвинею:
Por Guinea Ecuatorial:

For Ethiopia:
Pour l'Ethiopie :
埃塞俄比亚:
За Эфиопию:
Por Etiopía:

> KIFLE WODAJO
> 30 April 1970

---

[1] With the attached declaration — Avec une déclaration, dont texte joint en annexe.
[2] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For the Federal Republic of Germany:
Pour la République fédérale d'Allemagne :
德意志聯邦共和國：
За Федеративную Республику Германии:
Por la República Federal de Alemania:

ALEXANDER BÖKER
30th April 1970

For Finland:
Pour la Finlande :
芬兰：
За Финляндию:
Por Finlandia:

ERIK CASTRÉN

For France:
Pour la France :
法国：
За Францию:
Por Francia:

For Gabon:
Pour le Gabon :
加蓬：
За Габон:
Por el Gabón:

For Gambia:
Pour la Gambie :
冈比亚：
За Гамбию:
Por Gambia:

For Ghana:
Pour le Ghana :
加纳：
За Гану:
Por Ghana:

> EMMANUEL K. DADZIE
> G. O. LAMPTEY

For Greece:
Pour la Grèce :
希腊：
За Грецию:
Por Grecia:

For Guatemala:
Pour le Guatemala :
危地马拉：
За Гватемалу:
Por Guatemala:

> *Ad referendum* y sujeto a las reservas que constan en documento anexo[1]
> ADOLFO MOLINA ORANTES[2]

For Guinea:
Pour la Guinée :
几内亚：
За Гвинею:
Por Guinea:

---

[1] *Ad referendum* and subject to the reservations contained in the attached document — *Ad referendum* et soumise aux réserves contenues dans le document ci-joint.

[2] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For Guyana:
Pour la Guyane :
圭亚那:
За Гайану:
Por Guyana:

JOHN CARTER

For Haiti:
Pour Haïti :
海地:
За Гаити:
Por Haití:

For the Holy See:
Pour le Saint-Siège :
教廷:
За Святейший Престол:
Por la Santa Sede:

OPILIO ROSSI
30 September 1969

For Honduras:
Pour le Honduras :
洪都拉斯:
За Гондурас:
Por Honduras:

MARIO CARÍAS ZAPATA

For Hungary:
Pour la Hongrie :
匈牙利:
За Венгрию:
Por Hungría:

For Iceland:
Pour l'Islande :
冰岛：
За Исландию:
Por Islandia:


For India:
Pour l'Inde :
印度：
За Индию:
Por la India:


For Indonesia:
Pour l'Indonésie :
印度尼西亚：
За Индонезию:
Por Indonesia:


For Iran:
Pour l'Iran :
伊朗：
За Иран:
Por el Irán:

A. MATINE-DAFTARY


For Iraq:
Pour l'Irak :
伊拉克：
За Ирак:
Por el Irak:

For Ireland:
Pour l'Irlande :
爱尔兰:
За Ирландию:
Por Irlanda:


For Israel:
Pour Israël :
以色列:
За Израиль:
Por Israel:


For Italy:
Pour l'Italie :
意大利:
За Италию:
Por Italia:

PIERO VINCI
22 April 1970


For the Ivory Coast:
Pour la Côte-d'Ivoire :
象牙海岸:
За Берег Слоновой Кости:
Por la Costa de Marfil:

LUCIEN YAPOBI
23 July 1969


For Jamaica:
Pour la Jamaïque :
牙买加:
За Ямайку:
Por Jamaica:

L. B. FRANCIS
K. RATTRAY

For Japan:
Pour le Japon :
日 本 :
За Японию:
Por el Japón:


For Jordan:
Pour la Jordanie :
约 旦 :
За Иорданию:
Por Jordania:


For Kenya:
Pour le Kenya :
肯 尼 亚:
За Кению:
Por Kenya:

I. S. Bhoi


For Kuwait:
Pour le Koweït :
科 威 特 :
За Кувейт:
Por Kuwait:


For Laos:
Pour le Laos :
老 挝 :
За Лаос:
Por Laos:

For Lebanon:
Pour le Liban :
黎巴嫩:
За Ливан:
Por el Líbano:


For Lesotho:
Pour le Lesotho :
萊索托:
За Лесото:
Por Lesotho:


For Liberia:
Pour le Libéria :
利比里亚:
За Либерию:
Por Liberia:

NELSON BRODERICK


For Libya:
Pour la Libye :
利比亞:
За Ливию:
Por Libia:


For Liechtenstein:
Pour le Liechtenstein :
列支敦士登:
За Лихтенштейн:
Por Liechtenstein:

For Luxembourg:
Pour le Luxembourg :
卢森堡：
За Люксембург:
Por Luxemburgo:

GASTON THORN
4 septembre 1969


For Madagascar:
Pour Madagascar :
马达加斯加：
За Мадагаскар:
Por Madagascar:

*Ad referendum*
B. RAZAFINTSEHENO


For Malawi:
Pour le Malawi :
马拉维：
За Малави:
Por Malawi:


For Malaysia:
Pour la Malaisie :
马来西亚：
За Малайскую Федерацию:
Por Malasia:


For the Maldive Islands:
Pour les îles Maldives :
馬爾代夫羣島：
За Мальдивские острова:
Por las Islas Maldivas:

For Mali:
Pour le Mali :
马里：
За Мали:
Por Malí:


For Malta:
Pour Malte :
马耳他：
За Мальту:
Por Malta:


For Mauritania:
Pour la Mauritanie :
毛里塔尼亚：
За Мавританию:
Por Mauritania:


For Mauritius:
Pour Maurice :
毛里求斯：
За Маврикий:
Por Mauricio:


For Mexico:
Pour le Mexique :
墨西哥 :
За Мексику:
Por México:

 EDUARDO SUÁREZ

For Monaco:
Pour Monaco :
摩纳哥 :
За Монако:
Por Mónaco:


For Mongolia:
Pour la Mongolie :
蒙古 :
За Монголию:
Por Mongolia:


For Morocco:
Pour le Maroc :
摩洛哥 :
За Марокко:
Por Marruecos:                    Sous réserve de la déclaration ci-jointe[1]
                                  TAOUFIQ KABBAJ[2]


For Nauru:
Pour Nauru :
瑙鲁 :
За Науру:
Por Nauru:


For Nepal:
Pour le Népal :
尼泊尔 :
За Непал:
Por Nepal:
                                  PRADUMNA LAL RAJBHANDARY

_____

[1] Subject to the attached declaration.
[2] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For the Netherlands:
Pour les Pays-Bas :
荷兰：
За Нидерланды:
Por los Países Bajos:


For New Zealand:
Pour la Nouvelle-Zélande :
新西兰：
За Новую Зеландию:
Por Nueva Zelandia:

JOHN V. SCOTT
29 April 1970


For Nicaragua:
Pour le Nicaragua :
尼加拉瓜：
За Никарагуа:
Por Nicaragua:


For the Niger:
Pour le Niger :
尼日尔：
За Нигер:
Por el Níger:


For Nigeria:
Pour la Nigéria :
尼日利亚：
За Нигерию:
Por Nigeria:

T. O. ELIAS

Case 1:19-cv-01618-TSC    Document 69-7    Filed 06/09/22    Page 44 of 70

For Norway:
Pour la Norvège :
挪威：
За Норвегию:
Por Noruega:


For Pakistan:
Pour le Pakistan :
巴基斯坦：
За Пакистан:
Por el Pakistán:

A. SHAHI
29 April, 1970


For Panama:
Pour le Panama :
巴拿马：
За Панаму:
Por Panamá:


For Paraguay:
Pour le Paraguay :
巴拉圭：
За Парагвай:
Por el Paraguay:


For Peru:
Pour le Pérou :
秘鲁：
За Перу:
Por el Perú:

LUIS ALVARADO GARRIDO
JUAN JOSÉ CALLE

For the Philippines:
Pour les Philippines :
菲律宾:
За Филиппины:
Por Filipinas:

ROBERTO CONCEPCIÓN

For Poland:
Pour la Pologne :
波兰:
За Польшу:
Por Polonia:

For Portugal:
Pour le Portugal :
葡萄牙:
За Португалию:
Por Portugal:

For the Republic of Korea:
Pour la République de Corée :
大韩民国:
За Корейскую Республику:
Por la República de Corea:

YANG SOO YU
27 November 1969

For the Republic of Viet-Nam:
Pour la République du Viet-Nam :
越南共和国:
За Республику Вьетнам:
Por la República de Viet-Nam:

For Romania:
Pour la Roumanie :
罗马尼亚:
За Румынию:
Por Rumania:


For Rwanda:
Pour le Rwanda :
卢旺达:
За Руанду:
Por Rwanda:


For San Marino:
Pour Saint-Marin :
圣马力诺:
За Сан-Марино:
Por San Marino:


For Saudi Arabia:
Pour l'Arabie Saoudite :
沙特阿拉伯:
За Саудовскую Аравию:
Por Arabia Saudita:


For Senegal:
Pour le Sénégal :
塞内加尔 :
За Сенегал:
Por el Senegal:

For Sierra Leone:
Pour le Sierra Leone :
塞拉勒窝内:
За Сьерра-Леоне:
Por Sierra Leona:


For Singapore:
Pour Singapour :
新加坡:
За Сингапур:
Por Singapur:


For Somalia:
Pour la Somalie :
索马里:
За Сомали:
Por Somalia:


For South Africa:
Pour l'Afrique du Sud :
南非:
За Южную Африку:
Por Sudáfrica:


For Southern Yemen:
Pour le Yémen du Sud :
南也門:
За Южный Йемен:
Por el Yemen Meridional:

For Spain:
Pour l'Espagne :
西班牙：
За Испанию:
Por España:


For the Sudan:
Pour le Soudan :
苏丹：
За Судан:
Por el Sudán:

AHMED SALAH BUKHARI


For Swaziland:
Pour le Souaziland :
斯威士兰：
За Свазиленд:
Por Swazilandia:


For Sweden:
Pour la Suède :
瑞典：
За Швецию:
Por Suecia:

TORSTEN ÖRN
23 April 1970


For Switzerland:
Pour la Suisse :
瑞士：
За Швейцарию:
Por Suiza:

For Syria:
Pour la Syrie :
叙利亞：
За Сирию:
Por Siria:


For Thailand:
Pour la Thaïlande :
泰国：
За Таиланд:
Por Tailandia:


For Togo:
Pour le Togo :
多哥：
За Того:
Por el Togo:


For Trinidad and Tobago:
Pour la Trinité-et-Tobago :
特立尼达和多巴哥：
За Тринидад и Тобаго:
Por Trinidad y Tabago:

           T. BADEN-SEMPER


For Tunisia:
Pour la Tunisie :
突尼斯：
За Тунис:
Por Túnez:

For Turkey:
Pour la Turquie :
土耳其:
За Турцию:
Por Turquía:


For Uganda:
Pour l'Ouganda :
乌干达:
За Уганду:
Por Uganda:


For the Ukrainian Soviet Socialist Republic:
Pour la République socialiste soviétique d'Ukraine :
乌克兰苏维埃社会主义共和国:
За Украинскую Советскую Социалистическую Республику:
Por la República Socialista Soviética de Ucrania:


For the Union of Soviet Socialist Republics:
Pour l'Union des Républiques socialistes soviétiques :
苏维埃社会主义共和国联盟:
За Союз Советских Социалистических Республик:
Por la Unión de Repúblicas Socialistas Soviéticas:


For the United Arab Republic:
Pour la République arabe unie :
阿拉伯聯合共和國:
За Объединенную Арабскую Республику:
Por la República Arabe Unida:

For the United Kingdom of Great Britain and Northern Ireland:
Pour le Royaume-Uni de Grande-Bretagne et d'Irlande du Nord :
大不列顛及北愛尔兰联合王国:
За Соединенное Королевство Великобритании и Северной Ирландии:
Por el Reino Unido de Gran Bretaña e Irlanda del Norte:

>                        Subject to the declaration, the text of which is attached[1]
>                        CARADON[2]
>                        20 April 1970

For the United Republic of Tanzania:
Pour la République-Unie de Tanzanie :
坦桑尼亚联合共和国:
За Объединенную Республику Танзания:
Por la República Unida de Tanzanía:

For the United States of America:
Pour les Etats-Unis d'Amérique :
美利堅合众国:
За Соединенные Штаты Америки:
Por los Estados Unidos de América:

>                        RICHARD D. KEARNEY
>                        24 April 1970
>
>                        JOHN R. STEVENSON
>                        24 April 1970

For the Upper Volta:
Pour la Haute-Volta :
上沃尔特:
За Верхнюю Вольту:
Por el Alto Volta:

---

[1] Avec une déclaration, dont texte joint en annexe.
[2] See p. 496 of this volume for the texts of the reservations and declarations made upon signature — Voir p. 496 du présent volume pour les textes des réserves et déclarations faites lors de la signature.

For Uruguay:
Pour l'Uruguay :
乌拉圭:
За Уругвай:
Por el Uruguay:

EDUARDO JIMÉNEZ DE ARÉCHAGA
ALVARO ALVAREZ

For Venezuela:
Pour le Venezuela :
委内瑞拉:
За Венесуэлу:
Por Venezuela:

For Western Samoa:
Pour le Samoa-Occidental :
西萨摩亚:
За Западное Самоа:
Por Samoa Occidental:

For Yemen:
Pour le Yémen :
也门:
За Йемен:
Por el Yemen:

For Yugoslavia:
Pour la Yougoslavie :
南斯拉夫:
За Югославию:
Por Yugoslavia:

ALEKSANDAR JELIĆ

For Zambia:
Pour la Zambie :
贊比亚:
За Замбию:
Por Zambia:

LISHOMWA MUUKA

| RESERVATIONS AND DECLARA-<br>TIONS MADE UPON SIGNATURE | RÉSERVES ET DÉCLARATIONS<br>FAITES LORS DE LA SIGNATURE |
|---|---|
| *AFGHANISTAN* | *AFGHANISTAN* |

[TRADUCTION — TRANSLATION]

| "Afghanistan's understanding of arti-cle 62 (fundamental change of circum-stances) is as follows: | L'Afghanistan interprète l'article 62 (Changement fondamental de circons-tances) de la manière suivante : |
|---|---|
| "Sub-paragraph 2 (*a*) of this article does not cover unequal and illegal trea-ties, or any treaties which were contrary to the principle of self-determination. This view was also supported by the Ex-pert Consultant in his statement of 11 May 1968 in the Committee of the Whole and on 14 May 1969 (doc. A/CONF.39/L.40) to the Conference." | L'alinéa *a* du paragraphe 2 ne s'ap-plique pas dans le cas de traités inégaux ou illégaux, ni dans le cas de tout autre traité contraire au principe de l'auto-détermination. Cette interprétation est celle qui a été soutenue par l'Expert consultant dans sa déclaration du 11 mai 1968 devant la Commission plénière et dans la communication du 14 mai 1969 (A/CONF.39/L.40) qu'il a adressée à la Conférence. |

| *BOLIVIA* | *BOLIVIE* |
|---|---|

[SPANISH TEXT — TEXTE ESPAGNOL]

"1.    La imperfección de la Convención de Viena sobre el derecho de los trata-dos posterga la realización de las aspiraciones de la humanidad.

"2.    No obstante lo anterior, los preceptos aprobados por la Convención cons-tituyen avances significativos inspirados en principios de justicia internacional que Bolivia ha sostenido tradicionalmente."

| [TRANSLATION] | [TRADUCTION] |
|---|---|
| 1.    The shortcomings of the Vienna Convention on the Law of Treaties are such as to postpone the realization of the aspirations of mankind. | 1.    L'imperfection de la Convention de Vienne sur le droit des traités retarde la réalisation des aspirations de l'huma-nité. |
| 2.    Nevertheless, the rules endorsed by the Convention do represent signifi-cant advances, based on the principles of international justice which Bolivia has traditionally supported. | 2.    Néanmoins, les normes que consacre la Convention marquent d'im-portants progrès fondés sur des principes de justice internationale que la Bolivie a traditionnellement défendus. |

*COSTA RICA*                     *COSTA RICA*

[SPANISH TEXT — TEXTE ESPAGNOL]

"1.   En relación a los artículos 11 y 12 la delegación de Costa Rica hace la reserva de que el sistema jurídico constitucional de ese país no autoriza ninguna forma de consentimiento que no esté sujeto a ratificación de la Asamblea Legislativa.

"2.   En cuanto al artículo 25 hace la reserva de que la Constitución Política de dicho país tampoco admite la entrada en vigor provisional de los tratados.

"3.   En cuanto al artículo 27 interpreta que se refiere al derecho secundario, no así a las disposiciones de la Constitución Política.

"4.   En relación al artículo 38 interpreta que una norma consuetudinaria de derecho internacional general no privará sobre ninguna norma del sistema interamericano del cual considera supletoria la presente Convención."

[TRANSLATION]

1.   With regard to articles 11 and 12, the delegation of Costa Rica wishes to make a reservation to the effect that the Costa Rican system of constitutional law does not authorize any form of consent which is not subject to ratification by the Legislative Assembly.

2.   With regard to article 25, it wishes to make a reservation to the effect that the Political Constitution of Costa Rica does not permit the provisional application of treaties, either.

3.   With regard to article 27, it interprets this article as referring to secondary law and not to the provisions of the Political Constitution.

4.   With regard to article 38, its interpretation is that no customary rule of general international law shall take precedence over any rule of the Inter-American System to which, in its view, this Convention is supplementary.

[TRADUCTION]

1.   En ce qui concerne les articles 11 et 12, la délégation du Costa Rica formule la réserve suivante : en matière constitutionnelle, le système juridique de ce pays n'autorise aucune forme de consentement qui ne soit sujette à ratification par l'Assemblée législative.

2.   En ce qui concerne l'article 25, la délégation du Costa Rica formule la réserve suivante : la Constitution politique de ce pays n'admet pas non plus l'entrée en vigueur provisoire des traités.

3.   La délégation du Costa Rica interprète l'article 27 comme visant les lois ordinaires mais non les dispositions de la Constitution politique.

4.   La délégation du Costa Rica interprète l'article 38 de la manière suivante : une règle coutumière du droit international général ne prévaudra sur aucune règle du système interaméricain, au regard duquel la présente Convention revêt, à son avis, un caractère supplémentaire.

*ECUADOR*                     *ÉQUATEUR*

[SPANISH TEXT — TEXTE ESPAGNOL]

"El Ecuador, al firmar la presente Convención, no ha creído necesario formular reserva alguna al artículo 4 de este instrumento porque entiende que, entre las normas comprendidas en la primera parte del artículo 4, se encuentra el principio de solución

pacífica de controversias, establecido en el Artículo 2, párrafo 3, de la Carta de las Naciones Unidas, cuyo carácter de *jus cogens* confiere a esa norma valor imperativo universal.

"El Ecuador considera asimismo que la primera parte del artículo 4, por tanto, es aplicable a los tratados existentes.

"Deja en claro en esta forma que dicho artículo recoge el principio inconcuso de que, cuando la Convención codifica normas *lex lata*, éstas, siendo normas pre-existentes, pueden invocarse y aplicarse a tratados suscritos antes de la vigencia de esta Convención, la cual constituye su instrumento codificador."

[TRANSLATION]

In signing this Convention, Ecuador has not considered it necessary to make any reservation in regard to article 4 of the Convention because it understands that the rules referred to in the first part of article 4 include the principle of the peaceful settlement of disputes, which is set forth in Article 2, paragraph 3, of the Charter of the United Nations and which, as *jus cogens*, has universal and mandatory force.

Ecuador also considers that the first part of article 4 is applicable to existing treaties.

It wishes to place on record, in this form, its view that the said article 4 incorporates the indisputable principle that, in cases where the Convention codifies rules of *lex lata*, these rules, as pre-existing rules, may be invoked and applied to treaties signed before the entry into force of this Convention, which is the instrument codifying the rules.

[TRADUCTION]

En signant la présente Convention, l'Equateur n'a pas jugé nécessaire de formuler une réserve quelconque au sujet de l'article 4 de cet instrument, car il considère qu'au nombre des règles auxquelles se réfère la première partie de cet article figure le principe du règlement pacifique des différends, énoncé au paragraphe 3 de l'Article 2 de la Charte des Nations Unies, dont le caractère de *jus cogens* lui confère une valeur impérative universelle.

De même, l'Equateur considère également que la première partie de l'article 4 est applicable aux traités existants.

Il tient à préciser à cette occasion que ledit article s'appuie sur le principe incontestable selon lequel, lorsque la Convention codifie des règles relevant de la *lex lata*, ces règles, du fait qu'elles sont pré-existantes, peuvent être invoquées et appliquées au regard de traités conclus avant l'entrée en vigueur de ladite Convention, laquelle constitue l'instrument les ayant codifiées.

## GUATEMALA                                    GUATEMALA

[SPANISH TEXT — TEXTE ESPAGNOL]

"La delegación de Guatemala, al suscribir la Convención de Viena sobre el derecho de los tratados, formula las siguientes reservas:

"I.   Guatemala no puede aceptar disposición alguna de la presente Convención que menoscabe sus derechos y su reclamación sobre el Territorio de Belice.

"II.   Guatemala no aplicará los artículos 11, 12, 25 y 66 en lo que contravinieren preceptos de la Constitución de la República.

"III.   Guatemala aplicará lo dispuesto en el artículo 38 solamente en aquellos casos en que lo considere conveniente para los intereses del país."

[TRANSLATION]

The delegation of Guatemala, in signing the Vienna Convention on the Law of Treaties, wishes to make the following reservations:

I.   Guatemala cannot accept any provision of this Convention which would prejudice its rights and its claim to the Territory of Belize.

II.   Guatemala will not apply articles 11, 12, 25 and 66 in so far as they are contrary to the provisions of the Constitution of the Republic.

III.   Guatemala will apply the provision contained in article 38 only in cases where it considers that it is in the national interest to do so.

[TRADUCTION]

En signant la Convention de Vienne sur le droit des traités, la délégation du Guatemala formule les réserves suivantes :

I.   Le Guatemala ne peut accepter aucune disposition de la présente Convention qui porte atteinte à ses droits et à sa revendication sur le territoire de Belize.

II.   Le Guatemala n'appliquera pas les dispositions des articles 11, 12, 25 et 66, dans la mesure où elles contreviendraient aux principes consacrés dans la Constitution de la République.

III.   Le Guatemala n'appliquera les dispositions de l'article 38 que dans le cas où il considérera que cela sert les intérêts du pays.

*MOROCCO*

*MAROC*

[ARABIC TEXT — TEXTE ARABE]

وكذ يكرّ بان كظافية الوذ لك افه ار أبيت مكافنة
.بوجبًا تعلافية بير المغرب، واسرائيل

[TRANSLATION — TRADUCTION]

1.  Morocco interprets paragraph 2 (*a*) of article 62 (Fundamental change of circumstances) as not applying to unlawful or inequitable treaties, or to any treaty contrary to the principle of self-determination. Morocco's views on paragraph 2 (*a*) were supported by the Expert Consultant in his statements in the Committee of the Whole on 11 May 1968 and before the Conference in plenary on 14 May 1969 (see document A/CONF.39/L.40).

2.  It shall be understood that Morocco's signature of this Convention does not in any way imply that it recognized Israel. Furthermore, no treaty relationships will be established between Morocco and Israel.

*UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND*

"In signing the Vienna Convention on the Law of Treaties, the Government of the United Kingdom of Great Britain and Northern Ireland declare their understanding that nothing in article 66 of the Convention is intended to oust the jurisdiction of the International Court of Justice where such jurisdiction exists under any provisions in force binding the parties with regard to the settlement of disputes. In particular, and in relation to States parties to the Vienna Convention which accept as compulsory the jurisdiction of the International Court of Jus-

«1.   Le Maroc interprète le paragraphe 2, *a*, de l'article 62 (Changement fondamental de circonstances) comme ne couvrant pas les traités illicites et inégaux ainsi que tout traité contraire au principe de l'autodétermination. Le point de vue du Maroc sur le paragraphe 2, *a*, a été soutenu par l'Expert consultant dans son intervention du 11 mai 1968 en Commission plénière ainsi que le 14 mai 1969 à la Conférence plénière (document A/CONF.39/L.40).

«2.   Il est entendu que la signature par le Maroc de la présente Convention ne signifie en aucune façon qu'il reconnaisse Israël. En outre, aucune relation conventionnelle ne sera établie entre le Maroc et Israël.»

*ROYAUME-UNI DE GRANDE-BRETAGNE ET D'IRLANDE DU NORD*

[TRADUCTION — TRANSLATION]

Le Gouvernement du Royaume-Uni de Grande-Bretagne et d'Irlande du Nord déclare considérer qu'aucune disposition de l'article 66 de ladite Convention ne vise à écarter la juridiction de la Cour internationale de Justice lorsque cette juridiction découle de clauses en vigueur entre les parties, concernant le règlement des différends et ayant force obligatoire à leur égard. Le Gouvernement du Royaume-Uni déclare notamment, au regard des Etats parties à la Convention de Vienne qui acceptent comme obligatoire la juridiction de la

tice, the Government of the United Kingdom declare that they will not regard the provisions of sub-paragraph (*b*) of article 66 of the Vienna Convention as providing 'some other method of peaceful settlement' within the meaning of sub-paragraph (i) (*a*) of the Declaration of the Government of the United Kingdom accepting as compulsory the jurisdiction of the International Court of Justice which was deposited with the Secretary-General of the United Nations on the 1st of January, 1969.[1]

"The Government of the United Kingdom, while reserving their position for the time being with regard to the other declarations and reservations made by various States on signing the Convention, consider it necessary to state that the United Kingdom does not accept that Guatemala has any rights or any valid claim in respect of the territory of British Honduras."

Cour internationale de Justice, qu'il ne considérera pas les dispositions de l'alinéa *b* de l'article 66 de la Convention de Vienne comme fournissant «un autre mode de règlement pacifique», au sens du paragraphe i, *a*, de la Déclaration, déposée auprès du Secrétaire général de l'Organisation des Nations Unies le 1er janvier 1969, par laquelle le Gouvernement du Royaume-Uni a accepté comme obligatoire la juridiction de la Cour internationale de Justice[1].

Le Gouvernement du Royaume-Uni, tout en réservant pour le moment sa position vis-à-vis des autres déclarations et réserves faites par divers Etats lors de la signature de la Convention par ces derniers, juge nécessaire de déclarer que le Royaume-Uni ne reconnaît au Guatemala aucun droit ni titre légitime de réclamation en ce qui concerne le territoire du Honduras britannique.

RESERVATIONS AND DECLARATIONS MADE UPON RATIFICATION OR ACCESSION (*a*)

RÉSERVES ET DÉCLARATIONS FAITES LORS DE LA RATIFICATION OU DE L'ADHÉSION (*a*)

*ARGENTINA*

*ARGENTINE*

[SPANISH TEXT — TEXTE ESPAGNOL]

"*a*)  La República Argentina no considera aplicable a su respecto la norma contenida en el artículo 45, apartado *b*, por cuanto la misma consagra la renuncia anticipada de derechos".

"*b*)  La República Argentina no acepta que un cambio fundamental en las circunstancias ocurrido con respecto a las existentes en el momento de la celebración de un tratado y que no fue previsto por las partes pueda alegarse como causa para dar por terminado el tratado o retirarse de él y, además, objeta las reservas formuladas por Afganistán, Marruecos y Siria al artículo 62, párrafo 2, apartado *a*, y todas las reservas del mismo alcance que la de los Estados mencionados que se presenten en el futuro sobre el artículo 62".

[TRANSLATION]

(*a*)  The Argentine Republic does not regard the rule contained in article 45 (*b*) as applicable to it inasmuch as the rule in question provides for the renunciation of rights in advance.

[TRADUCTION]

*a*)  La République argentine ne considère pas que la règle énoncée à l'article 45, *b*, lui est applicable dans la mesure où celle-ci prévoit la renonciation anticipée à certains droits.

[1] United Nations, *Treaty Series*, vol. 654, p. 335.

[1] Nations Unies, *Recueil des Traités*, vol. 654, p. 335.

(b)   The Argentine Republic does not accept the idea that a fundamental change of circumstances which has occurred with regard to those existing at the time of the conclusion of a treaty, and which was not foreseen by the parties, may be invoked as a ground for terminating or withdrawing from the treaty; moreover, it objects to the reservations made by Afghanistan, Morocco and Syria with respect to article 62, paragraph 2 (a), and to any reservations to the same effect as those of the States referred to which may be made in the future with respect to article 62.

b)   La République argentine n'admet pas qu'un changement fondamental de circonstances qui s'est produit par rapport à celles qui existaient au moment de la conclusion du traité et qui n'avait pas été prévu par les parties puisse être invoqué comme motif pour mettre fin au traité ou pour s'en retirer; de plus, elle s'élève contre les réserves formulées par l'Afghanistan, le Maroc et la Syrie au sujet du paragraphe 2, a, de l'article 62 et contre toutes autres réserves de même effet que celles des Etats susmentionnés qui pourraient être formulées à l'avenir au sujet de l'article 62.

[SPANISH TEXT — TEXTE ESPAGNOL]

"La aplicación de la presente Convención a territorios cuya soberanía fuera discutida entre dos o más Estados que sean parte o no de la misma, no podrá ser interpretada como alteración, renuncia o abandono de la posición que cada uno ha sostenido hasta el presente".

[TRANSLATION]

The application of this Convention to territories whose sovereignty is a subject of dispute between two or more States, whether or not they are parties to it, cannot be deemed to imply a modification, renunciation or abandonment of the position heretofore maintained by each of them.

[TRADUCTION]

L'application de la présente Convention dans des territoires sur lesquels deux ou plusieurs Etats, qu'ils soient ou non parties à ladite Convention, ont des prétentions adverses à exercer la souveraineté, ne pourra être interprétée comme signifiant que chacun d'eux modifie la position qu'il a maintenue jusqu'à présent, y renonce ou l'abandonne.

*CANADA* (a)

"In acceding to the Vienna Convention on the Law of Treaties, the government of Canada declares its understanding that nothing in article 66 of the Convention is intended to exclude the jurisdiction of the International Court of Justice where such jurisdiction exists under the provisions of any treaty in force binding the parties with regard to the settlement of disputes. In relation to states parties to the Vienna Convention which accept as compulsory the jurisdiction of the International Court of Jus-

*CANADA* (a)

«En adhérant à la Convention de Vienne sur le droit des traités, le Gouvernement du Canada déclare reconnaître qu'il n'y a rien dans l'article 66 de la Convention qui tende à exclure la compétence de la Cour internationale de Justice lorsque cette compétence est établie en vertu des dispositions d'un traité en vigueur dont les parties sont liées relativement au règlement des différends. En ce qui concerne les Etats parties à la Convention de Vienne qui acceptent que la compétence de la Cour internationale

tice, the government of Canada declares that it does not regard the provisions of article 66 of the Vienna Convention as providing 'some other method of peaceful settlement' within the meaning of paragraph 2 (a) of the declaration of the government of Canada accepting as compulsory the jurisdiction of the International Court of Justice which was deposited with the Secretary-General of the United Nations on April 7, 1970."[1]

de Justice soit obligatoire, le Gouvernement du Canada déclare qu'il ne considère pas que les dispositions de l'article 66 de la Convention de Vienne proposent «un autre moyen de règlement pacifique», selon la teneur de l'alinéa *a* du paragraphe 2 de la déclaration que le Gouvernement du Canada a remise au Secrétaire général de l'Organisation des Nations Unies le 7 avril 1970, par laquelle il acceptait que la compétence de la Cour internationale de Justice soit obligatoire[1].»

## DENMARK

[Translation — Traduction]

As between itself and any State which formulates, wholly or in part, a reservation relating to the provisions of article 66 of the Convention concerning the compulsory settlement of certain disputes, Denmark will not consider itself bound by those provisions of part V of the Convention, according to which the procedures for settlement set forth in article 66 are not to apply in the event of reservations formulated by other States.

## DANEMARK

«Vis-à-vis de pays formulant entièrement ou partiellement des réserves en ce qui concerne les dispositions de l'article 66 de la Convention portant sur le règlement obligatoire de certains différends, le Danemark ne se considère pas lié par les dispositions de la partie V de la Convention, selon lesquelles les procédures de règlement indiquées à l'article 66 ne seront pas appliquées par suite de réserves formulées par d'autres pays.»

## FINLAND

"Finland declares its understanding that nothing in paragraph 2 of article 7 of the Convention is intended to modify any provisions of internal law in force in any Contracting State concerning competence to conclude treaties. Under the Constitution of Finland the competence to conclude treaties is given to the President of the Republic, who also decides on the issuance of full powers to the Head of Government and the Minister for Foreign Affairs.

## FINLANDE

[Traduction — Translation]

La Finlande déclare qu'elle considère qu'aucune des dispositions du paragraphe 2 de l'article 7 de la Convention ne vise à modifier les dispositions de droit interne concernant la compétence pour conclure des traités en vigueur dans un Etat contractant. En vertu de la Constitution finlandaise, c'est le Président de la République qui est habilité à conclure des traités et c'est également lui qui décide de donner pleins pouvoirs au Chef du Gouvernement et au Ministre des affaires étrangères.

---

[1] United Nations, *Treaty Series*, vol. 724, p. 63.

[1] Nations Unies, *Recueil des Traités*, vol. 724, p. 63.

"Finland also declares that as to its relation with any State which has made or makes a reservation to the effect that this State will not be bound by some or all of the provisions of article 66, Finland will consider itself bound neither by those procedural provisions nor by the substantive provisions of part V of the Convention to which the procedures provided for in article 66 do not apply as a result of the said reservation."

La Finlande déclare également qu'en ce qui concerne ses relations avec tout Etat qui a fait ou fait une réserve telle que cet Etat n'est pas lié par quelques-unes des dispositions de l'article 66 ou par toutes ces dispositions la Finlande ne se considérera liée ni par ces dispositions de procédure ni par les dispositions de fond de la partie V de la Convention auxquelles les procédures prévues à l'article 66 ne s'appliquent pas par suite de ladite réserve.

### KUWAIT (a)        KOWEÏT (a)

[ARABIC TEXT — TEXTE ARABE]

مع التحفظ الخاص بأن الارتباط بهذه الاتفاقية لا يحوى بأية حال معنى الاعـــتراف

بأسرائيل ولا يؤدى الى الدخول معها فى معاملاتها تنظمة هذه الاتفاقية ،كما نحــــــد

بمراعاتها والامر بمراعاتها دون أنتهاك حرمتها .

[TRANSLATION[1] — TRADUCTION[2]]     [TRADUCTION — TRANSLATION]

"The participation of Kuwait in this Convention does not mean in any way recognition of Israel by the Government of the State of Kuwait and that, furthermore, no treaty relations will arise between the State of Kuwait and Israel."

La participation du Koweït à ladite Convention ne signifie en aucune façon que le Gouvernement de l'Etat du Koweït reconnaisse Israël, et qu'en outre aucune relation conventionnelle ne sera établie entre l'Etat du Koweït et Israël.

### MOROCCO        MAROC

*[For the text of the declaration, see p. 499 of this volume.]*     *[Pour le texte de la déclaration, voir p. 499 du présent volume.]*

### SYRIAN ARAB REPUBLIC (a)     RÉPUBLIQUE ARABE SYRIENNE (a)

[ARABIC TEXT — TEXTE ARABE]

٢ ــ ان قبول الجمهورية العربية السورية هذه الاتفاقية وابرام حكومتها لها لا يحوى بأيـة
حال معنى الاعتراف باسرائيل ولا يؤدى الى دخولها معها فى معاملات ما تنظمـه
أحكامهـا .

---

[1] Translation supplied by the Government of Kuwait.
[2] Traduction fournie par le Gouvernement du Koweït.

ب — ان الجمهورية العربية السورية تعتبر أن المادة الواحدة والثمانين من هذه الاتفاقية
لا تتفق وأهداف الاتفاقية وغايتها اذ أنها لا تمكن جميع الدول بدون تفرقة أو تميز من
أن تصبح أطرافا فيها .

جـ — ان حكومة الجمهورية العربية السورية لا تقبل بحال من الاحوال عدم سريان مبـــدأ
التغيير الجوهري للظروف على المعاهدات التي تنشئ حدودا في الفقرة٢ ( أ ) مـــن
المادة الثانية والستين لا نذلك يعتبر خرقا واضحا لواحدة من القواعد الآمرة في القواعد
العامة للقانون الدولي والقاضية بحق الشعوب في تقرير مصيرهـا .

د — ان حكومة الجمهورية العربية السورية تفهم حكم المادة الثانية والخمسين على النحـــو
التالـي :

" ان عبارة التهديد بالقوة واستخدامها الوارد في هذه المادة تتصرف ايضا الى ممارسة
الضغوط الاقتصادية والسياسية والعسكرية والنفسية وسائر انواع الضغوط الاخرى التي
من شأنها حمل الدولة على الدخول في معاهدة ضد رغبتها أو مصلحتهـا .

هـ — ان انضمام الجمهورية العربية السورية الى هذه الاتفاقية وابرام حكومتها لها لا يسـري
على الملحق بهذه الاتفاقية المتعلق بالتوفيق الالزامي .

[TRANSLATION — TRADUCTION]

A. Acceptance of this Convention by the Syrian Arab Republic and ratification of it by its Government shall in no way signify recognition of Israel and cannot have as a result the establishment with the latter of any contact governed by the provisions of this Convention.

B. The Syrian Arab Republic considers that article 81 is not in conformity with the aims and purposes of the Convention in that it does not allow all States, without distinction or discrimination, to become parties to it.

C. The Government of the Syrian Arab Republic does not in any case accept the non-applicability of the principle of a fundamental change of circumstances with regard to treaties establishing boundaries, referred to in article 62, paragraph 2 (a), inasmuch as it regards this as a flagrant violation of an obligatory norm which forms part of general in-

[TRADUCTION[1] — TRANSLATION[2]]

«A) L'acceptation de cette Convention par la République arabe syrienne et sa ratification par son Gouvernement ne peuvent comporter en aucune façon le sens d'une reconnaissance d'Israël et ne peuvent aboutir à entretenir avec lui aucun contact réglé par les dispositions de la Convention.

«B) La République arabe syrienne considère que l'article quatre-vingt-un de cette Convention ne s'accorde pas avec ses buts et ses desseins car il ne permet pas à tous les Etats sans discrimination ou distinction d'en devenir parties.

«C) Le Gouvernement de la République arabe syrienne n'accepte en aucun cas la non-application du principe du changement fondamental de circonstances sur les traités établissant des frontières au paragraphe 2, alinéa a, de l'article soixante-deux, car cela est considéré comme une violation flagrante de l'une des règles obligatoires parmi les règles

[1] Traduction fournie par le Gouvernement de la République arabe syrienne.
[2] Translation supplied by the Government of the Syrian Arab Republic.

ternational law and which recognizes the right of peoples to self-determination.

D.   The Government of the Syrian Arab Republic interprets the provisions in article 52 as follows:

The expression "the threat or use of force" used in this article extends also to the employment of economic, political, military and psychological coercion and to all types of coercion constraining a State to conclude a treaty against its wishes or its interests.

E.   The accession of the Syrian Arab Republic to this Convention and the ratification of it by its Government shall not apply to the Annex to the Convention, which concerns obligatory conciliation.

### TUNISIA (a)

[TRANSLATION — TRADUCTION]

The dispute referred to in article 66 (*a*) requires the consent of all parties thereto in order to be submitted to the International Court of Justice for a decision.

### UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

It is [the United Kingdom's] understanding that nothing in article 66 of the Convention is intended to oust the jurisdiction of the International Court of Justice where such jurisdiction exists under any provisions in force binding the parties with regard to the settlement of disputes. In particular, and in relation to States parties to the Vienna Convention which accept as compulsory the jurisdiction of the International Court, the

générales du Code international et qui prévoit le droit des peuples à l'autodétermination.

«D)   Le Gouvernement de la République arabe syrienne comprend la disposition de l'article cinquante-deux, comme suit :

«Le terme de la menace ou l'emploi de la force prévu par cet article s'applique également à l'exercice des contraintes économiques, politiques, militaires et psychologiques ainsi que tous les genres de contraintes qui entraînent l'obligation d'un Etat à conclure un traité contre son désir ou son intérêt.»

«E)   L'adhésion de la République arabe syrienne à cette Convention et sa ratification par son Gouvernement ne s'appliquent pas à l'Annexe à la Convention relative à la conciliation obligatoire.»

### TUNISIE (a)

«Le différend prévu au paragraphe *a* de l'article 66 nécessite l'accord de toutes les parties à ce différend pour être soumis à la décision de la Cour internationale de Justice.»

### ROYAUME-UNI DE GRANDE-BRETAGNE ET D'IRLANDE DU NORD

[TRADUCTION — TRANSLATION]

Le Royaume-Uni considère qu'aucune disposition de l'article 66 de la Convention ne vise à écarter la juridiction de la Cour internationale de Justice lorsque cette juridiction découle de clauses en vigueur entre les parties, concernant le règlement des différends et ayant force obligatoire à leur égard. Notamment, au regard des Etats parties à la Convention de Vienne qui acceptent comme obligatoire la juridiction de la Cour internatio-

United Kingdom will not regard the provisions of sub-paragraph (b) of article 66 of the Vienna Convention on the Law of Treaties as providing 'some other method of peaceful settlement' within the meaning of sub-paragraph (i) (a) of the Declaration of the Government of the United Kingdom which was deposited with the Secretary-General of the United Nations on the 1st of January 1969."

### UNITED REPUBLIC OF TANZANIA (a)

"Article 66 of the Convention shall not be applied to the United Republic of Tanzania by any State which enters a reservation on any provision of part V or the whole of that part of the Convention."

OBJECTION[1] to the declaration made by the Government of Finland upon ratification[2]

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

*Received on:*
7 December 1977

"The Government of the United Kingdom of Great Britain and Northern Ireland note that the instrument of ratification of the Government of Finland, which was deposited with the Secretary-General on 19 August 1977, contains a declaration relating to paragraph 2 of article 7 of the Convention. The Government of the United Kingdom wish to inform the Secretary-General that they do not regard that declaration as in any way affecting the interpretation or application of article 7."

nale de Justice, le Royaume-Uni ne considérera pas les dispositions de l'alinéa b de l'article 66 de la Convention de Vienne sur le droit des traités comme fournissant «un autre moyen de règlement pacifique», au sens de l'alinéa i, a, de la Déclaration que le Gouvernement du Royaume-Uni a déposée auprès du Secrétaire général de l'Organisation des Nations Unies le 1er janvier 1969.

### RÉPUBLIQUE-UNIE DE TANZANIE (a)

[TRADUCTION — TRANSLATION]

Aucun Etat formulant des réserves à propos d'une quelconque disposition de la partie V de la Convention, ou de l'ensemble de cette partie, ne pourra invoquer l'article 66 de la Convention vis-à-vis de la République-Unie de Tanzanie.

OBJECTION[1] à la déclaration faite par le Gouvernement finlandais lors de la ratification[2]

ROYAUME-UNI DE GRANDE BRETAGNE ET D'IRLANDE DU NORD

*Reçue le :*
7 décembre 1977

[TRADUCTION — TRANSLATION]

Le Gouvernement du Royaume-Uni de Grande-Bretagne et d'Irlande du Nord prend note que l'instrument de ratification du Gouvernement finlandais, déposé auprès du Secrétaire général le 19 août 1977, contient une déclaration relative au paragraphe 2 de l'article 7 de la Convention. Le Gouvernement du Royaume-Uni informe le Secrétaire général qu'il considère que cette déclaration ne modifie aucunement l'interprétation ou l'application de l'article 7.

---

[1] Unless otherwise indicated, the texts of the objections were received at the time of ratification or accession.
[2] See p. 503 of this volume.

[1] Sauf indication contraire, la date de réception est celle de la ratification ou de l'adhésion.
[2] Voir p. 503 du présent volume.

OBJECTION to the reservation made by the Government of Guatemala upon signature[1]

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

"With reference to a reservation in relation to the territory of British Honduras made by Guatemala on signing the Convention, the United Kingdom does not accept that Guatemala has any rights or any valid claim with respect to that territory;

"The United Kingdom fully reserves its position in other respects with regard to the declarations made by various States on signature, to some of which the United Kingdom would object, if they were to be confirmed on ratification."

OBJECTIONS to the declaration made by the Government of the Syrian Arab Republic upon accession[2]

CANADA

*Received on:*
22 October 1971

". . . Canada does not consider itself in treaty relations with the Syrian Arab Republic in respect of those provisions of the Vienna Convention on the Law of Treaties to which the compulsory conciliation procedures set out in the annex to that Convention are applicable."

OBJECTION à la réserve faite par le Gouvernement guatémaltèque lors de la signature[1]

ROYAUME-UNI DE GRANDE-BRETAGNE ET D'IRLANDE DU NORD

[TRADUCTION — TRANSLATION]

S'agissant de la réserve relative au territoire du Honduras britannique qui a été formulée par le Guatemala lors de la signature de la Convention, le Royaume-Uni ne reconnaît au Guatemala aucun droit ni titre légitime de réclamation en ce qui concerne ce territoire.

Le Royaume-Uni réserve pleinement sa position sur d'autres points vis-à-vis des déclarations qui ont été faites par divers Etats lors de la signature de la Convention; si certaines d'entre elles venaient à être confirmées lors de la ratification, le Royaume-Uni formulerait des objections à leur encontre.

OBJECTIONS à la réserve faite par le Gouvernement de la République arabe syrienne lors de l'adhésion[2]

CANADA

*Reçue le :*
22 octobre 1971

«Le Canada ne se considère pas comme lié par traité avec la République arabe syrienne à l'égard des dispositions de la Convention de Vienne sur le droit des traités auxquelles s'appliquent les procédures de conciliation obligatoire énoncées à l'annexe de ladite Convention.»

[1] See p. 498 of this volume.
[2] See p. 504 of this volume.

[1] Voir p. 498 du présent volume.
[2] Voir p. 504 du présent volume.

NEW ZEALAND

*Received on:*
14 October 1971

". . . The New Zealand Government objects to the reservation entered by the Government of Syria to the obligatory conciliation procedures contained in the annex to the Vienna Convention on the Law of Treaties and does not accept the entry into force of the Convention as between New Zealand and Syria."

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

"The United Kingdom does not accept that the interpretation of article 52 put forward by the Government of Syria correctly reflects the conclusions reached at the Conference of Vienna on the subject of coercion; the Conference dealt with this matter by adopting a Declaration on this subject which forms part of the Final Act.

"The United Kingdom objects to the reservation entered by the Government of Syria in respect of the annex to the Convention and does not accept the entry into force of the Convention as between the United Kingdom and Syria".

OBJECTION to the reservations made by the Government of the Syrian Arab Republic and by the Government of Tunisia, respectively, upon accession[1]

SWEDEN

*Received on:*

4 February 1975

"Article 66 of the Convention contains certain provisions regarding procedures

NOUVELLE-ZÉLANDE

*Reçue le :*
14 octobre 1971

[TRADUCTION — TRANSLATION]

Le Gouvernement néo-zélandais objecte à la réserve formulée par le Gouvernement syrien relative aux procédures de conciliation obligatoire prévues dans l'annexe à la Convention de Vienne sur le droit des traités et n'accepte pas l'entrée en vigueur de la Convention entre la Nouvelle-Zélande et la Syrie.

ROYAUME-UNI DE GRANDE-BRETAGNE ET D'IRLANDE DU NORD

[TRADUCTION — TRANSLATION]

Le Royaume-Uni ne considère pas que l'interprétation de l'article 52 qui a été avancée par le Gouvernement syrien reflète avec exactitude les conclusions auxquelles la Conférence de Vienne est parvenue au sujet de la contrainte; la Conférence a réglé cette question en adoptant à son sujet une déclaration qui fait partie de l'Acte final.

Le Royaume-Uni formule une objection contre la réserve faite par le Gouvernement syrien au sujet de l'annexe à la Convention et ne reconnaît pas l'entrée en vigueur de cette dernière entre le Royaume-Uni et la Syrie.

OBJECTION aux réserves faites par le Gouvernement de la République arabe syrienne et par le Gouvernement de la Tunisie, respectivement, lors de l'adhésion[1]

SUÈDE

*Reçue le :*

4 février 1975

[TRADUCTION — TRANSLATION]

L'article 66 de la Convention contient certaines dispositions concernant les

---

[1] See pp. 504 and 506 of this volume.

[1] Voir p. 504 et p. 506 du présent volume.

for judicial settlement, arbitration and conciliation. According to these provisions a dispute concerning the application or the interpretation of article 53 or 64, which deal with the so-called *jus cogens*, may be submitted to the International Court of Justice. If the dispute concerns the application or the interpretation of any of the other articles in Part V of the Convention, the conciliation procedure specified in the Annex to the Convention may be set in motion.

"The Swedish Government considers that these provisions regarding the settlement of disputes are an important part of the Convention and that they cannot be separated from the substantive rules with which they are connected. Consequently, the Swedish Government considers it necessary to raise objections to any reservation which is made by another State and whose aim is to exclude the application, wholly or in part, of the provisions regarding the settlement of disputes. While not objecting to the entry into force of the Convention between Sweden and such a State, the Swedish Government considers that their treaty relations will not include either the procedural provision in respect of which a reservation has been made or the substantive provisions to which that procedural provision relates.

"For the reasons set out above, the Swedish Government objects to the reservation of the Syrian Arab Republic, according to which its accession to the Convention shall not include the Annex, and to the reservation of Tunisia, according to which the dispute referred to in article 66 (*a*) requires the consent of all parties thereto in order to be submitted to the International Court of Justice for a decision. In view of these reservations, the Swedish Government considers, firstly, that the treaty relations between Sweden and the Syrian Arab Republic will not include those provisions of Part V of the Convention to

procédures du règlement judiciaire, d'arbitrage et de conciliation. Aux termes de ces dispositions, un différend concernant l'application ou l'interprétation des articles 53 ou 64, qui traitent de ce que l'on appelle le *jus cogens*, peut être soumis à la décision de la Cour internationale de Justice. Si le différend concerne l'application ou l'interprétation de l'un quelconque des autres articles de la partie V de la Convention, la procédure de conciliation indiquée à l'annexe à la Convention peut être mise en œuvre.

Le Gouvernement suédois estime que ces dispositions relatives au règlement des différends constituent une partie importante de la Convention et qu'elles ne peuvent être dissociées des règles de fond auxquelles elles sont liées. Par conséquent, le Gouvernement suédois objecte à toutes les réserves qu'un autre Etat pourrait faire dans le but d'éviter, totalement ou partiellement, l'application des dispositions relatives au règlement des différends. Bien qu'il ne s'oppose pas à l'entrée en vigueur de la Convention entre la Suède et un tel Etat, le Gouvernement suédois estime que ni les dispositions de procédure faisant l'objet de réserves ni les dispositions de fond auxquelles ces dispositions de procédure se rapportent ne seront comprises dans leurs relations conventionnelles.

Pour les raisons évoquées ci-dessus, le Gouvernement suédois objecte à la réserve de la République arabe syrienne selon laquelle son adhésion à la Convention n'entraîne pas son adhésion à l'annexe à la Convention, et à la réserve de la Tunisie selon laquelle le différend dont il est question à l'article 66, *a*, ne peut être soumis à la décision de la Cour internationale de Justice qu'avec l'assentiment de toutes les parties à ce différend. Etant donné ces réserves, le Gouvernement suédois estime, premièrement, que les dispositions de la partie V de la Convention auxquelles se rapporte la procédure de conciliation indiquée à

which the conciliation procedure in the Annex applies and, secondly, that the treaty relations between Sweden and Tunisia will not include articles 53 and 64 of the Convention.

"The Swedish Government has also taken note of the declaration of the Syrian Arab Republic, according to which it interprets the expression 'the threat or use of force' as used in article 52 of the Convention so as to extend also to the employment of economic, political, military and psychological coercion and to all types of coercion constraining a State to conclude a treaty against its wishes or its interests. On this point, the Swedish Government observes that since article 52 refers to threat or use of force in violation of the principles of international law embodied in the Charter of the United Nations, it should be interpreted in the light of the practice which has developed or will develop on the basis of the Charter."

OBJECTIONS to the reservation made by the Government of Tunisia upon accession[1]

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

*Received on:*

22 June 1972

". . . The United Kingdom objects to the reservation entered by the Government of Tunisia in respect of article 66 (*a*) of the Convention and does not accept the entry into force of the Convention as between the United Kingdom and Tunisia."

l'annexe ne seront pas comprises dans les relations conventionnelles entre la Suède et la République arabe syrienne et, deuxièmement, que les relations conventionnelles entre la Suède et la Tunisie n'engloberont pas les articles 53 et 64 de la Convention.

Le Gouvernement suédois a également pris note de la déclaration faite par la République arabe syrienne selon laquelle celle-ci interprète l'expression «la menace ou l'emploi de la force» utilisée à l'article 52 de la Convention comme s'appliquant également à l'emploi de contraintes économiques, politiques, militaires et psychologiques et les pressions de toute nature exercées en vue de contraindre un Etat à conclure un traité contre son gré ou contre ses intérêts. A ce propos, le Gouvernement suédois fait remarquer qu'étant donné que l'article 52 traite de la menace ou de l'emploi de la force en violation des principes du droit international incorporés dans la Charte des Nations Unies, il conviendrait de l'interpréter en tenant compte de la pratique qui s'est instaurée ou qui s'instaurera en ce qui concerne l'application des dispositions de la Charte.

OBJECTIONS à la réserve faite par le Gouvernement tunisien lors de l'adhésion[1]

ROYAUME-UNI DE GRANDE-BRETAGNE ET D'IRLANDE DU NORD

*Reçue le :*

22 juin 1972

[TRADUCTION — TRANSLATION]

Le Royaume-Uni objecte à la réserve formulée par le Gouvernement tunisien au sujet de l'article 66, *a*, de la Convention et ne reconnaît pas l'entrée en vigueur de cette dernière entre le Royaume-Uni et la Tunisie.

---

[1] See p. 506 of this volume.

[1] Voir p. 506 du présent volume.

NEW ZEALAND

*Received on:*

10 August 1972

NOUVELLE-ZÉLANDE

*Reçue le :*

10 août 1972

[TRADUCTION — TRANSLATION]

". . . The New Zealand Government objects to the reservation entered by the Government of Tunisia in respect of article 66 (*a*) of the Convention and does not consider New Zealand to be in treaty relations with Tunisia in respect of those provisions of the Convention to which the dispute settlement procedure provided for in article 66 (*a*) is applicable."

Le Gouvernement néo-zélandais fait objection à la réserve émise par le Gouvernement tunisien à propos de l'article 66, *a*, de la Convention, et il considère que la Nouvelle-Zélande n'est pas liée par traité avec la Tunisie en ce qui concerne les dispositions de la Convention auxquelles la procédure de règlement des différends prévues à l'article 66, *a*, est applicable.