# EXHIBIT 57

Copies exécutoires délivrées aux parties le :

REPUBLIQUE FRANCAISE
AU NOM DU PEUPLE FRANCAIS

**COUR D'APPEL DE PARIS**
Chambre commerciale internationale

**PÔLE 5 - CHAMBRE 16**

**ARRET DU 19 AVRIL 2022**

(n° **48** /2022 , 14 pages)

Numéro d'inscription au répertoire général : **N° RG 20/13085 - N° Portalis 35L7-V-B7E-CCLDI**

Décision déférée à la Cour : sentence arbitrale rendue à Paris le 04 Mars 2020 (n° ADHOC/15/1)

**DEMANDERESSE AU RECOURS :**

**REPUBLIQUE DE POLOGNE**
Office of the General Counsel Urzad Prokuratorii Generalnej Rzeczypospolitej Polskiej
Ul. Hoza 76/78 - 00-682 VARSOVIE (POLOGNE)

*Représentée par Me Luca DE MARIA de la SELARL PELLERIN - DE MARIA - GUERRE, avocat postulant du barreau de PARIS, toque : L0018*
*Assistée par Me Quentin MURON et Me Eduardo SILVA ROMERO, du cabinet DECHER LLP, avocats plaidants du barreau de PARIS, toque J096*

**DÉFENDERESSES AU RECOURS :**

**Société STRABAG SE**
société de droit autrichien
Ayant son siège social : Donau - City- Strasse - 1220 VIENNE (AUTRICHE)
prise en la personne de ses représentants légaux,

**Société RAIFFEISEN CENTROBANK AG**
société de droit autrichien
Ayant son siège social : Tagetthoff Strasse 1 - 1015 VIENNE (AUTRICHE)

**Société SYRENA IMMOBILIEN HOLDING AG**
société de droit autrichien
Ayant son siège social : Ortenburger Strasse 27 9800 Spi(AUTRICHE)
prise en la personne de ses représentants légaux,

*Représentées par Me Sylvie KONG THONG de l'AARPI Dominique OLIVIER - Sylvie KONG THONG, avocat postulant du barreau de PARIS, toque : L0069*
*Assistées par Me Véronika KOROM et Me Marianne KECSMAR, avocats plaidants du barreau de PARIS*

**COMPOSITION DE LA COUR :**

L'affaire a été débattue le 07 Mars 2022, en audience publique, devant la Cour composée de :
M. François ANCEL, Président
Mme Fabienne SCHALLER, Conseillère
Mme Laure ALDEBERT, Conseillère

qui en ont délibéré,

**Greffier,** lors des débats **:** Mme Najma EL FARISSI

**ARRET :**

- contradictoire

- par mise à disposition de l'arrêt au greffe de la Cour, les parties en ayant été préalablement avisées dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

- signé par François ANCEL, Président et par Najma EL FARISSI, greffière à laquelle la minute de la décision a été remise par le magistrat signataire.

## I/ FAITS ET PROCÉDURE

1- Le 24 novembre 1988 la République Populaire de Pologne et l'Autriche ont signé un traité sur l'encouragement et la protection des investissements (ci-après désigné le « TBI »).

2- Le 1er mai 2004 la République de Pologne a adhéré à l'Union européenne.

3- Les sociétés RAIFFEISEN CENTROBANK AG, SYRENA IMMOBILIEN HOLDING AG et STRABAG SE sont des sociétés privées de droit autrichien (ci-après « les sociétés investisseurs » ou « les sociétés Strabag »).

4- La cour est saisie par la République de Pologne d'un recours en annulation contre une sentence rendue le 4 mars 2020 dans une procédure *ad hoc* administrée par le Centre international pour le règlement des différends relatifs aux investissements (le « CIRDI »), l'opposant aux sociétés Strabag.

5- Le litige trouve son origine dans l'acquisition en 1997 par la société autrichienne Strabag SE auprès de la ville de Varsovie de la société polonaise Hotele Syrena Warszawakie Sp Z.o.o (ci-après « Syrena Hotels ») dans le cadre d'un programme de privatisation d'un portefeuille d'hôtels publics lancé à la suite de la chute du régime communiste en Pologne. Lors de sa privatisation, Syrena Hotels possédait et exploitait deux hôtels contigus situés au centre Varsovie, l'hôtel Polonia et l'hôtel Metropol, situés sur des terrains qui avaient fait l'objet de mesures d'expropriation par l'Etat en 1945.

6- Plusieurs mesures ont été prises par les autorités judiciaires et administratives polonaises et notamment :
- L'annulation par décision de la cour administrative d'appel en date du 10 décembre 2003 de la décision aux termes de laquelle la ville de Varsovie est devenue propriétaire des hôtels Polonia et Metropol,
- L'émission par la ville de Varsovie de trois certificats (2009, 2012 et 2013) confirmant le droit de propriété de Mme Jolanta Lubomirska-Pierre sur l'hôtel Polonia, en précisant que celui-ci n'aurait jamais dû devenir la propriété de la ville de Varsovie,
- La suppression en 2011 de l'usufruit perpétuel de Syrena Hotels sur les lots de terrains sur lesquels étaient situés les hôtels Polonia et Metropol.

7- Les sociétés Strabag ont estimé que ces mesures privaient l'Investisseur de son investissement, et constituaient de la part de la Pologne une violation des diverses garanties octroyées par le TBI. Elles ont adressé le 9 septembre 2014 à la République de Pologne leur requête d'arbitrage.

8- Le tribunal arbitral a été constitué le 23 décembre 2014.

9- Les parties ont convenu de bifurquer la procédure arbitrale pour examiner d'abord les questions de compétence.

10- La Commission européenne est intervenue à l'arbitrage comme amicus curiae, déposant son mémoire le 30 novembre 2018, suite à la décision *Achméa*, rendue par la CJUE le 6 mars 2018.

11- Par une sentence partielle rendue à Paris le 4 mars 2020, le tribunal arbitral a retenu sa compétence et rejeté l'objection de l'incompatibilité entre le droit de l'Union et la clause d'arbitrage du TBI, en constatant que (i) le droit européen ne s'applique pas en l'espèce à la question de la compétence du tribunal et, (ii) les parties ont clairement exprimé leur intention de soumettre leur litige à l'arbitrage.

12- Le 16 septembre 2020, la République de Pologne a saisi la cour d'appel de Paris d'un recours en annulation contre cette sentence.

13- Le 19 octobre 2020, le tribunal arbitral a suspendu l'arbitrage jusqu'à ce que les juridictions françaises statuent définitivement sur le recours en annulation de la sentence partielle.

14- Les parties ont accepté que la procédure soit conduite en application du protocole de procédure de la chambre commerciale internationale.

15- La clôture a été prononcée le 1er mars 2022.

16- La République de Pologne a notifié par voie électronique des conclusions n°3 le jour de la clôture.

17- Par conclusions en date du 3 mars 2022, les sociétés Investisseurs, ont demandé le rejet des conclusions n°3 de la République de Pologne communiquées par voie électronique le 1er mars 2022, jour de la clôture.

18- Par conclusions en date du 4 mars 2022, la République de Pologne a demandé à la cour de recevoir ses conclusions n°3 et de rejeter l'incident.

19- L'incident a été joint au fond, les parties ont été entendues *in limine litis* sur ce point à l'audience du 7 mars 2022.

## II/ PRÉTENTIONS DES PARTIES

**20- Aux termes de ses conclusions n°2 notifiées par voie électronique le 15 novembre 2021 la République de Pologne demande à la cour, au visa notamment des articles 1518, 1520, 699 et 700 du code de procédure civile de bien vouloir** :

- Annuler la Sentence ;
- Condamner les Défenderesses au paiement de la somme de 200 000 euros en application de l'article 700 du Code de procédure civile ; et
- Condamner les Défenderesses aux entiers dépens.

**21- Aux termes de leurs dernières conclusions n°2 notifiées par voie électronique le 15 février 2022, les sociétés RAIFFEISEN CENTROBANK AG, SYRENA IMMOBILIEN HOLDING AG et STRABAG SE demandent à la cour, au visa notamment de l'article 1520, 1° et 5° du code de procédure civile, de bien vouloir** :

- Débouter la République de Pologne de l'intégralité de ses demandes, fins et prétentions ;

- Rejeter le recours en annulation formé par la République de Pologne ;
- Confirmer la Sentence partielle rendue le 4 mars 2020 par le Tribunal arbitral composé de M. Karl-Heinz Böckstiegel, M. Jan van den Berg et M. V.V. Veeder ;
- Condamner la République de Pologne au paiement de 200.000€ au titre de l'article 700 du Code de procédure civile et aux dépens de la présente procédure.

### III/ MOTIFS DE LA DECISION

**Sur le rejet des conclusions communiquées le jour de la clôture**

**22-** **Les sociétés Strabag** soutiennent que le comportement procédural de la République de Pologne est contraire à la loyauté des débats. Elles ajoutent qu'elles se sont trouvées dans l'impossibilité matérielle de prendre connaissance des conclusions notifiées le 1er mars après la clôture, sans communication entre avocats préalable, cette impossibilité constituant une violation flagrante des droits de la défense et du principe du contradictoire.

23- Elles demandent en conséquence le rejet des débats des conclusions n°3 de la République de Pologne, indiquant qu'elles ont elles mêmes respecté le calendrier très serré imposé. Elles font valoir que la communication de la consultation du professeur Sophie Lemaire produite par les sociétés défenderesses relative à deux arrêts rendus par la CJUE ne justifie pas le dépôt de conclusions tardives par la République de Pologne.

**24- En réponse, la République de Pologne** indique que ses conclusions n°3, déposées tardivement en raison d'une « erreur interne », ne font que prendre acte de la consultation du Professeur Lemaire relative aux arrêts CJUE Moldavie c/ Komstroy et République de Pologne c/ PL Holdings, respectivement en date des 2 septembre 2021 et 26 octobre 2021, dont elle s'est déjà expliquée dans ses conclusions du 15 novembre 2021, et qu'elle n'a fait qu'adapter ses conclusions au nouvel argument des défenderesses sur de prétendues conséquences disproportionnées de l'annulation et prendre acte des nouvelles allégations inappropriées sur le système judiciaire polonais et l'état de droit en Pologne.

25- Elle s'oppose à ce que ses écritures soient rejetées des débats, estimant qu'elles ne contiennent que des modifications mineures, contestant une violation des droits de la défense et du principe du contradictoire.

**SUR CE,**

26- Aux termes de l'article 802 du code de procédure civile, auquel renvoie l'article 907 du même code après l'ordonnance de clôture, aucune conclusion ne peut être déposée ni aucune pièce produite aux débats, à peine d'irrecevabilité prononcée d'office. Sont irrecevables les conclusions déposées le jour même de l'ordonnance de clôture mais postérieurement à celle-ci.

27- Selon les articles 15 et 16 du code de procédure civile, les parties doivent se faire connaître mutuellement en temps utile les moyens de fait sur lesquels elles fondent leurs prétentions, les éléments de preuve qu'elles produisent et les moyens de droit qu'elles invoquent, afin que chacune soit à même d'organiser sa défense. Il appartient au juge de faire observer le principe de la contradiction. Il ne peut retenir dans sa décision que les moyens dont les parties ont été à même de débattre contradictoirement.

28- L'article 135 du même code dispose que le juge peut écarter du débat les pièces qui n'ont pas été communiquées en temps utile, cette règle étant étendue aux conclusions dès lors que le juge estime qu'elles sont de nature à compromettre les droits de la partie adverse et à porter atteinte au principe de la contradiction.

29- En l'espèce, la République de Pologne, qui n'a pas sollicité un report de clôture et n'a pas signalé une difficulté issue de sa prise de connaissance des dernières écritures de la société Strabag du 15 février 2022, a notifié des conclusions n°3 par RPVA le 1er mars 2022 le jour de la clôture, sans prévenir ni communiquer avec son contradicteur, ces conclusions étant manifestement tardives et n'ayant pas permis aux défenderesses au recours d'en prendre connaissance en temps utile, ni d'y répondre, la clôture ayant été prononcée à l'audience de mise en état avant le dépôt des conclusions.

30- Il y a lieu de rappeler que selon le protocole auquel les parties avaient adhéré et en application du calendrier fixé d'un commun accord, les parties qui avaient déjà conclu chacune dans les délais fixés par le code de procédure civile, étaient convenues de déposer des conclusions récapitulatives le 15 novembre 2021 pour la République de Pologne et le 15 février 2022 pour les sociétés Strabag, la clôture devant intervenir le 1er mars 2022 à 13h pour que l'affaire soit plaidée le 7 mars 2022 à 14h00.

31- Les conclusions récapitulatives de chacune des parties ont bien été notifiées par RPVA aux dates convenues, les 15 novembre 2021 et 15 février 2022.

32- Il n'était pas prévu de nouveaux échanges de conclusions et le délai entre le 15 février 2022 et le 1er mars était suffisant pour permettre à la République de Pologne de solliciter en amont un report éventuel de la clôture, si elle avait jugé nécessaire de répondre aux écritures notifiées dans le calendrier convenu.

33- Les conclusions n°3 notifiées le 1er mars doivent dès lors être rejetées des débats.

**Sur le moyen tiré de l'incompétence du tribunal arbitral (article 1520-1° du code de procédure civile)**

34- **La République de Pologne** soutient que le Tribunal arbitral s'est reconnu à tort compétent en rejetant l'objection fondée sur l'incompatibilité entre le droit de l'Union européenne et la clause d'arbitrage contenue dans le TBI.

35- Elle rappelle qu'en application de la décision rendue par la CJUE (Grande Chambre) *Achméa* du 6 mars 2018 les clauses d'arbitrage des traités bilatéraux d'investissement intra-européens sont incompatibles avec le droit de l'Union, cette jurisprudence ayant un effet « *ex tunc* », en ce qu'elle interprète la portée des provisions du droit de l'Union au 1er mai 2004, date de l'entrée de la République de Pologne dans l'Union. Elle indique que cette jurisprudence concerne tous les traités bilatéraux d'investissement intra-Union, y compris le Traité de la Charte de l'Energie et le Traité bilatéral d'investissement entre la Belgique, le Luxembourg et la Pologne, qui contiennent tous deux des clauses d'arbitrage bilatérales, ce qui a été réaffirmé par les arrêts de la CJUE *Komstroy* (2 septembre 2021) et *PL Holdings* (26 octobre 2021).

36- Elle ajoute que l'article 351 du TFUE fait prévaloir la primauté du droit de l'Union, et que l'incompatibilité entre le TBI et le TFUE doit être résolue par la primauté de ce dernier sur le premier.

37- Elle fait valoir également qu'il ne peut être soutenu que le consentement à l'arbitrage aurait été recueilli dans une clause *ad hoc* – en l'espèce l'Ordonnance de procédure n° 1 du 7 juillet 2015 et qu'il ne reposerait nullement sur l'article 8 du TBI alors que cette thèse est contraire à celle défendue initialement dans la requête en arbitrage et que cette ordonnance n'est en tout état de cause qu'un acte de procédure qui ne porte même pas la signature des Parties, ne contient aucune clause faisant référence à un quelconque consentement à l'arbitrage de la part d'aucune des Parties et indique au contraire à plusieurs reprises que la constitution du Tribunal arbitral s'est faite sans préjudice des objections de la République de Pologne à la compétence du Tribunal arbitral et prévoit les détails de la phase de bifurcation dédiée à la compétence, sur laquelle les Parties s'étaient mises d'accord.

38- Elle ajoute que même à admettre, pour les besoins de la discussion, que les Parties aient exprimé une forme de consentement à l'arbitrage, un tel consentement doit être apprécié « sous réserve des règles impératives du droit français et de l'ordre public international » et que la CJUE ayant confirmé que le droit de l'Union s'opposait à des procédures d'arbitrage telles que celle de l'espèce, la Sentence – par laquelle le Tribunal arbitral s'est reconnu compétent – méconnaît une règle de droit de l'Union qui est impérative et effectivement applicable à la cause, en violation de l'ordre public international.

39- La République de Pologne soutient que la règle de droit identifiée par la CJUE concerne tous les traités bilatéraux d'investissement intra-Union, sans qu'il importe que leur clause d'arbitrage contienne une offre unilatérale ou bilatérale, ni qu'une éventuelle clause de droit applicable puisse faire référence ou non au droit de l'Union.

40- Elle indique que la solution serait identique si le conflit de norme était analysé au regard de la Convention de Vienne sur le droit des traités dès lors que le droit de l'Union prime – en tant que *lex posterior* – sur la clause arbitrale (article 59 (1)). Elle ajoute que cette interprétation résulte également de son article 30(3), en vertu duquel la clause arbitrale du TBI est inapplicable, ou de son article 31(3), en vertu duquel la Déclaration des États Membres constitue une interprétation authentique de ce dernier qui confirme que la clause d'arbitrage du Traité est inapplicable.

41- La République de Pologne soutient ainsi qu'il ne peut être conclu qu'elle a valablement consenti à l'arbitrage, ni qu'elle a objecté tardivement. Elle considère que toute autre conclusion qui tenterait de justifier la compétence du Tribunal arbitral, telles que ces échappatoires basées sur la prétendue tardiveté de l'objection de la Pologne ou sur un prétendu consentement *ad hoc*, ne serait qu'un contournement inacceptable du droit de l'Union, ce qui ouvrirait une brèche dans la solution générale identifiée par la CJUE, et permettrait la résurgence de litiges intra-Union entre investisseurs et États, en violation du droit de l'Union.

42- Enfin, la Pologne conteste toute violation du droit à un recours effectif devant un tribunal indépendant et impartial et indique que, même à admettre, pour les besoins de la discussion, qu'il serait établi que le système juridictionnel polonais ne garantirait pas aux Défenderesses un droit de recours effectif devant un tribunal indépendant et impartial, cela ne peut pas amener la Cour à ne pas annuler la sentence, l'annulation s'imposant par l'effet même des décisions rendues par la CJUE qui a rappelé, dans son arrêt PL Holdings qui concernait la Pologne qu' *« à supposer que soit établie la lacune dans la protection de ces droits dont PL Holdings allègue l'existence, cette lacune devrait être corrigée au sein de ce système, le cas échéant avec la coopération de la Cour dans le cadre de ses compétences, sans qu'une telle lacune puisse justifier de tolérer la méconnaissance des dispositions et principes fondamentaux mentionnés au point 65 du présent arrêt [i.e. « tout particulièrement de l'article 4, paragraphe 3, TUE et des articles 267 et 344 TFUE, tels qu'interprétés dans l'arrêt du 6 mars 2018, Achméa] ».*

**43- En réponse,** les sociétés Raiffeisen Centrobank AG, Syrena Immobilien Holding AG et Strabag SE soutiennent que la présente espèce ne saurait être assimilée à l'affaire Achméa, confirmée par l'affaire Komstroy et précisée par l'arrêt PL Holdings.

44- Elles rappellent à titre liminaire que la clause d'arbitrage est autonome par rapport à toute loi étatique, que le juge français contrôle la validité de la clause d'arbitrage au regard des seules règles matérielles du droit français de l'arbitrage international, et des exigences de l'ordre public international minimales nécessaires pour apprécier la validité de la convention, sans distinction de l'arbitrage d'investissement et de l'arbitrage commercial international, l'efficacité propre des conventions d'arbitrage étant d'échapper aux dispositions restrictives des lois nationales, françaises ou étrangères, y compris l'interprétation qu'en fait la CJUE, la notion d'ordre public international au sens de l'article 1520-1 du code de procédure civile ne devant pas être confondue avec celle de l'article 1520-5 du même code.

45- Elles font valoir que la seule volonté des parties suffit à valider la clause d'arbitrage et qu'en l'espèce, les parties ont consenti de manière non équivoque à soumettre leur litige à l'arbitrage selon les termes d'un accord valide entre elles, distinct et indépendant de l'article 8 du TBI, cet accord étant consigné dans l'ordonnance de procédure n°1, la situation ne pouvant par conséquent être assimilée à l'affaire Achméa, l'existence de cet accord devant s'apprécier à l'aune de la seule intention des parties, sans référence à aucune loi étatique et sans aucune condition de forme.

46- Elles précisent que la CJUE a clairement distingué dans les arrêts Achméa et Komstroy l'arbitrage d'investissement et l'arbitrage commercial conclu avec un Etat membre, au motif que ce dernier trouve son origine dans l'autonomie de la volonté des parties en cause et que les arbitrages procédant d'une convention d'arbitrage individuelle présentent toutes les garanties de compatibilité par principe avec le droit de l'Union dès lors que les dispositions fondamentales du droit de l'Union peuvent être examinées par le juge du contrôle par le biais d'un renvoi préjudiciel devant la Cour de justice de l'Union européenne.

47- Elles contestent que cette interprétation aurait été contredite par l'arrêt PL Holdings qui aurait étendu l'incompatibilité de principe des TBI conclus entre deux Etats membres avec le droit de l'Union à toutes les conventions d'arbitrage *ad hoc*, alors que cet arrêt n'a pas une portée générale et a limité ladite incompatibilité aux seules conventions engagées par les Etats sur le fondement d'une convention d'arbitrage de contenu identique à l'offre d'arbitrage qui figure dans le TBI, ce qui laisse un espace pour le cas où la clause d'arbitrage serait différente, notamment lorsqu'un investisseur et un Etat membre concluent une convention d'arbitrage individuelle, ce qui est le cas en l'espèce.

48- Elles font valoir notamment que le consentement à l'arbitrage a été recueilli dans une clause *ad hoc* – en l'espèce l'Ordonnance de procédure n° 1 qui l'a homologué et qui complète de manière substantielle l'article 8 du TBI - et que c'est cette convention qui reflète l'autonomie de la volonté des parties qui constitue la base de la procédure d'arbitrage, les parties l'ayant négociée pendant six mois, prenant expressément leurs distances à l'égard de l'offre d'arbitrage insérée dans le TBI et ayant elles-mêmes choisi le siège de l'arbitrage, et le calendrier de procédure, ce que les arbitres ont relevé dans la sentence (§1.19).

49- Faisant référence à l'arrêt de la CJUE Micula du 25 janvier 2022 (aff. C-638/19P) elles soutiennent que la CJUE énonce que le consentement donné dans le cadre d'un accord spécifique reflète « l'autonomie de la volonté des parties en cause » et n'est pas visé par la sanction du droit de l'Union européenne relative aux TBI intra-européens. Elles font valoir qu'en l'espèce les parties ont manifesté leur intention de négocier un accord d'arbitrage autonome, qu'elles ont elles-mêmes qualifié de « self-contained », consigné dans l'ordonnance de procédure n°1, se distinguant clairement dans son contenu de l'article 8 du TBI, rendant ainsi inapplicable à l'espèce la jurisprudence PL Holdings.

50- Elles indiquent que la Pologne n'a soulevé aucun argument fondé sur le droit européen pour contester sa volonté clairement exprimée de soumettre le litige à l'arbitrage. Elles en veulent pour preuve que la Pologne s'est défendue sur le seul terrain contractuel, et donc hors du champs d'application des violations sanctionnées par le TBI, et que la Pologne a souscrit en toute connaissance de cause le projet conjoint d'ordonnance de procédure n°1, homologuée le 7 juillet 2015, contenant l'accord des parties de soumettre leur litige à l'arbitrage, cet accord constituant un cadre spécifique destiné à échapper à l'ambiguïté du TBI concernant l'applicabilité de la convention CIRDI et s'écartant substantiellement de l'article 8 du TBI.

51- Elles soulignent à ce titre la contradiction procédurale de la Pologne qui n'a soulevé qu'*in extremis* son argument d'incompétence fondé sur le droit de l'Union européenne, plus d'une année plus tard, le 5 mai 2017, alors que dans l'affaire PL Holdings, elle l'avait soulevé dès le mois de mai 2016, quelques jours après l'introduction de la question

préjudicielle dans l'affaire Achméa. Elles soutiennent que la tardiveté de sa défense à ce titre était délibérée, ayant parfaitement connaissance de la convention d'arbitrage individuelle spécialement convenue avec les Investisseurs, qui s'écartait de l'article 8 du TBI et dont elle ne contestait pas l'existence. Elles opposent le principe d'estoppel, la Pologne ne pouvant se contredire au détriment des Investisseurs et se délier de son engagement de soumettre le litige à l'arbitrage.

52- A titre subsidiaire, elles font valoir que même si l'ordonnance de procédure n°1 ne constitue pas un accord autonome et indépendant du TBI, l'article 8 du TBI est conforme au droit de l'Union européenne et n'est pas remis en cause par la Convention de Vienne sur le droit des Traités.

53- Elles soulignent que l'Union européenne a jugé nécessaire de conclure un Accord avec chaque Etat membre, pour mettre un terme officiel aux TBI, l'Autriche n'ayant toutefois pas signé ledit accord et faisant l'objet d'une procédure d'infraction, ce qui atteste que, en dépit de la jurisprudence de la CJUE, les TBI intra-européens en vigueur continuent de produire des effets juridiques.

54- Elles font valoir que l'incompatibilité avec le droit de l'Union requiert deux conditions cumulatives qui ne sont pas remplies en l'espèce, à savoir que l'offre d'arbitrage doit être unilatérale, ce qui n'est pas le cas de l'article 8(2) du TBI qui prévoit que l'arbitrage peut être requis à la demande « de la Partie Contractante ou de l'investisseur de l'autre Partie contractante », la qualifiant ainsi de bilatérale, et que le tribunal arbitral doit être susceptible d'interpréter ou d'appliquer le droit de l'UE, ce qui n'est pas le cas du TBI Autriche-Pologne qui ne contient pas de clause de droit applicable, ce qui laisse toute latitude au tribunal arbitral pour appliquer les seules dispositions de fond du TBI invoqué sans référence au droit de l'Union.

55- Elles estiment que l'application de l'article 30 (3) de la Convention de Vienne n'est pas non plus pertinente dès lors que l'incompatibilité alléguée de l'offre d'arbitrage avec les articles 267 et 344 du TFUE n'est pas démontrée par la Pologne. Elles indiquent que les déclarations des Etats membres ne peuvent constituer une interprétation authentique en application de l'article 31(3) de la Convention de Vienne sur le droit des traités alors que ces déclarations n'ont pas de valeur contraignante et que seuls 22 Etats membres de l'Union défendent une telle interprétation du traité de sorte qu'elle ne saurait conduire à reconnaître à cette déclaration le statut d'accord ultérieur au sujet de l'interprétation qui n'aurait en outre pas pour objet d'interpréter mais plutôt d'exprimer une volonté politique.

56- Les sociétés Strabag soutiennent en tout état de cause que l'annulation de la sentence partielle entraînerait des conséquences disproportionnées. Elles invitent la Cour à procéder à un contrôle de proportionnalité, tel que le lui impose la Convention européenne des droits de l'homme, pour le constater afin de s'interroger sur les conséquences d'une telle décision et de s'assurer qu'elle n'emporte pas une atteinte à l'accès au juge et un risque de déni de justice.

57- Les défenderesses au recours considèrent ainsi que l'annulation de la sentence affecte leur droit à un procès équitable et à un recours effectif consacré aux articles 6 et 13 de la CEDH. Elles précisent qu'il existe pour les Investisseurs un droit à l'arbitre fondé sur l'article 6 § 1 de la CEDH - auquel l'annulation de la Sentence partielle porterait atteinte. Elles estiment que le prononcé de la nullité de la Sentence partielle constituerait une sanction disproportionnée, dès lors que, privés d'accès à un tribunal arbitral, les Investisseurs n'auraient qu'une seule option : recourir au juge polonais, ce qui reviendrait à les renvoyer devant des juridictions où (i) le procès équitable n'est pas respecté, (ii) le droit européen n'est pas appliqué et les questions préjudicielles ne sont pas renvoyées et (iii) la supériorité des traités (et donc du TBI Autriche-Pologne) n'est pas assurée. Elles estiment qu'un tel renvoi serait d'autant plus risqué que le présent litige oppose directement les Investisseurs à l'État hôte.

**Sur ce,**

58- Selon l'article 1520, 1°, du code de procédure civile, le recours en annulation est ouvert si le tribunal s'est déclaré à tort compétent ou incompétent.

59- Le juge de l'annulation contrôle la décision du tribunal arbitral sur sa compétence, qu'il se soit déclaré compétent ou incompétent, en recherchant tous les éléments de droit ou de fait permettant d'apprécier la portée de la convention d'arbitrage. Il n'en va pas différemment lorsque les arbitres sont saisis sur le fondement d'un traité.

*Sur la validité de la convention d'arbitrage*

60- Par arrêt préjudiciel en date du 6 mars 2018 dans l'affaire C-284/16 -Slowakische Republik contre Achméa Bv- dit « *Achméa* » la Cour de Justice de l'Union Européenne (ci-après « la CJUE » ou « la Cour ») a dit pour droit que « *Les articles 267 et 344 TFUE doivent être interprétés en ce sens qu'ils s'opposent à une disposition contenue dans un accord international conclu entre les États membres, telle que l'article 8 de l'accord sur l'encouragement et la protection réciproques des investissements entre le Royaume des Pays-Bas et la République fédérale tchèque et slovaque, aux termes de laquelle un investisseur de l'un de ces États membres peut, en cas de litige concernant des investissements dans l'autre État membre, introduire une procédure contre ce dernier État membre devant un tribunal arbitral, dont cet État membre s'est obligé à accepter la compétence.* »

61- En d'autres termes la CJUE a jugé incompatible avec le droit de l'Union une clause de règlement des différends contenue dans un TBI conclu entre deux États membres.

62- La CJUE a réitéré la solution ainsi dégagée par un arrêt préjudiciel en date du 26 octobre 2021 dans l'affaire C-109/20- Republiken Polen contre PL Holdings et précisé la portée de cette jurisprudence en présence d'une convention d'arbitrage *ad hoc*, et dit pour droit que « *les articles 267 et 344 TFUE doivent être interprétés en ce sens qu'ils s'opposent à une législation nationale permettant à un Etat membre de conclure avec un investisseur d'un autre Etat membre une convention d'arbitrage <u>ad hoc</u> rendant possible la poursuite d'une procédure d'arbitrage engagée sur le fondement d'une clause d'arbitrage de contenu identique à cette convention, figurant dans un accord international conclu entre ces deux Etats membres et nulle en raison de sa contrariété avec ces mêmes articles.* » (souligné par la Cour).

63- La Cour a notamment retenu que la convention d'arbitrage *ad hoc* invoquée entrainerait, à la supposer retenue, un « *contournement des obligations découlant, pour cet Etat membre des traités et, tout particulièrement, de l'article 4, paragraphe 3, TUE ainsi que des articles 267 et 344 TFUE, tels qu'interprétés dans l'arrêt du 6 mars 2018, Achméa* », la raison d'être d'une telle clause *ad hoc* étant précisément de remplacer la clause d'arbitrage contenue dans le TBI et d'en maintenir les effets en dépit de la nullité de celle-ci, en violation du droit de l'Union.

64- Il en résulte que contrairement à ce que soutiennent les sociétés Strabag, la nullité d'une clause d'arbitrage *ad hoc* s'entend de toute clause ou convention qui viendrait en substitution de la clause nulle, tout en en conservant les mêmes effets, sans qu'il puisse être tiré argument d'une absence d'« identité » desdites clauses, le fait qu'elles aient les mêmes effets étant suffisant pour en prononcer la nullité, aucune condition n'imposant de rechercher si le contenu est « identique » à l'offre d'arbitrage qui figure dans le traité.

65- Enfin, la Cour a rappelé l'effet « *ex tunc* » de ses décisions selon lequel « *l'interprétation que, dans l'exercice de la compétence que lui confère l'article 177, la cour de justice donne d'une règle du droit communautaire, éclaire et précise, lorsque besoin en est, la signification et la portée de cette règle, telle qu'elle doit ou aurait dû être comprise et appliquée depuis le moment de sa mise en vigueur. Il en résulte que la règle*

*ainsi interprétée peut et doit être appliquée par le juge même à des rapports juridiques nés et constitués avant l'arrêt statuant sur la demande d'interprétation, si par ailleurs les conditions permettant de porter devant les juridictions compétentes un litige relatif à l'application de ladite règle se trouvent réunies* » (CJUE Amministrazione delle Finanze dello Stato v Denkavit Italiana SRL, 27 mars 1980).

66- La Cour en a conclu que (§52) « *toute tentative d'un Etat membre de remédier à la nullité d'une clause d'arbitrage au moyen d'un contrat avec un investisseur d'un autre Etat membre irait à l'encontre de l'obligation du premier Etat membre de contester la validité de la clause d'arbitrage et serait ainsi susceptible d'entacher d'illégalité la cause même de ce contrat dès lors qu'elle serait contraire aux dispositions et principes fondamentaux régissant l'ordre juridique de l'Union et mentionnés au point 46 du présent arrêt,* » faisant ainsi référence au principe de confiance mutuelle entre les Etats membres et à la préservation du caractère propre du droit de l'Union, assurée par la procédure du renvoi préjudiciel prévue à l'article 267 TFUE.

67- La Cour estime en conséquence que (§55) « *dans ces conditions, il appartient au juge national de faire droit à une demande d'annulation d'une sentence arbitrale prise sur le fondement d'une convention d'arbitrage qui méconnaîtrait les articles 267 et 344 TFUE ainsi que les principes de confiance mutuelle, de coopération loyale et d'autonomie du droit de l'Union* ».

68- En l'espèce, il résulte de l'article 8 du TBI que : « *(1) En cas de différends entre un État Contractant et un investisseur de l'autre Partie Contractante en relation avec un investissement, ces différends seront réglés à l'amiable entre les parties concernées si possible. Si un tel règlement amiable n'est pas possible, l'investisseur devra alors épuiser toutes les voies de recours administratifs et judiciaires domestiques existantes.*
*(2) Si le différend ne peut pas être réglé de la manière prévue au paragraphe 1 dans un délai de douze mois à partir de la notification écrite des réclamations spécifiées, il sera soumis à la demande d'une Partie Contractante ou de l'investisseur de l'autre Partie Contractante, pour composition ou arbitrage : (…)*
*(b) à un tribunal arbitral international, si l'une ou l'autre des Parties Contractantes n'est pas un signataire la Convention pour le règlement des différends relatifs aux investissements entre États et ressortissants d'autres États. Le tribunal arbitral international sera constitué sur une base ad hoc de la manière suivante : chaque Partie désignera un arbitre, et ces arbitres désigneront un président, qui sera un ressortissant d'un État tiers. Les arbitres seront nommés dans un délai de deux mois à compter de la date à laquelle le/les investisseur(s) a/ont fait part à l'autre Partie Contractante de son intention de soumettre le différend à un tribunal arbitral et au président dans les deux mois suivants* ».

69- C'est sur la base de cette clause que les demanderesses à l'arbitrage, les sociétés Strabag, ont adressé à la République de Pologne leur requête d'arbitrage le 9 septembre 2014 et que le tribunal arbitral a été constitué le 23 décembre 2014, la sentence précisant au paragraphe 1.12 « *sans préjudice des objections de la Défenderesse à la compétence du Tribunal* ». Par courriels des 18 et 20 mars 2015, les Parties ont confirmé leur accord pour désigner le Secrétariat du CIRDI comme autorité administrante (§1.13), les parties étant également convenues du lieu et du siège de l'arbitrage comme étant Paris (1.15), la langue de procédure étant l'anglais (1.16).

70- Les arbitres précisent au §1.19 de la Sentence que « *cet arbitrage doit également être mené conformément aux dispositions de procédure n°1 du Tribunal en date du 9 juillet 2015, par laquelle l'article 8 du Traité a été matériellement complété par un Accord des Parties (comme décrit plus loin dans la présente sentence)* ». La sentence rappelle à cet égard que « *par lettre conjointe du 9 février 2015, les Parties ont répondu à l'invitation du Tribunal et ont fourni à celui-ci un projet d'ordonnance de procédure contenant des propositions de règles de procédure pour régir l'arbitrage. Les Parties se sont entendues sur la plupart des questions, mais ont identifié un nombre limité de questions litigieuses à régler par le Tribunal* » (§1.26).

71- Les parties ayant décidé de bifurquer les questions de compétence, la sentence partielle rappelle les dates auxquelles les premiers mémoires sur la compétence ont été échangés sur le fondement de la requête initiale fondée sur l'article 8 du TBI, et elle précise que c'est (§1.47) « *le 5 mai 2017, [que] la Défenderesse, par l'intermédiaire de l'Office du Conseiller Général de la République de Pologne, a notifié au Tribunal son intention de soulever une exception d'incompétence supplémentaire relative au droit de l'Union européenne (« UE »). La Défenderesse a fait référence à l'affaire C-284/16 Slowakische Republik contre Achmea BV (« Achmea »), pendante devant la Cour de justice de l'Union européenne.* ».

72- L'audience sur la compétence s'est tenue les 7 et 8 juin 2017 mais il était prévu que les parties pourraient échanger des écritures postérieures à l'audience pour réfuter les arguments oraux soulevés par l'autre partie au cours de l'audience et pour leurs arguments sur la nouvelle exception d'incompétence de la Défenderesse concernant Achméa (§1.58), ce qui a été fait suite à la production des conclusions de l'avocat général Wathelet en date du 19 septembre 2017, les parties ayant ensuite échangé des mémoires, puis, la CJUE ayant rendu sa décision Achméa le 6 mars 2018, le tribunal arbitral a invité les parties à présenter des observations écrites sur l'arrêt Achméa, ce qui a été fait le 16 avril 2018.

73- Le 15 octobre 2018, la Commission européenne a soumis au Tribunal une requête pour intervenir en tant que partie non contestante au sujet des conséquences juridiques de l'arrêt Achméa. Malgré la contestation des demanderesses, le tribunal a autorisé la Commission à déposer un mémoire écrit, sans accès aux documents de la procédure. Le mémoire d'Amicus Curiae a été déposé par la Commission le 30 novembre 2018.

74- La République de Pologne a demandé l'autorisation de déposer la déclaration des Etats membres du 15 janvier 2019 de dénoncer les TBI existants, prise suite à la décision Achméa, ce que le tribunal arbitral a autorisé.

75- Le tribunal arbitral a rendu sa sentence partielle statuant sur la compétence le 4 mars 2020, indiquant que (§10.1.1) « *la convention d'arbitrage contenue dans l'article 8 du Traité, telle qu'invoquée par les Demanderesses pour cet arbitrage, est légalement valide* » et que (§10.1.2) « *les parties étaient et restent juridiquement liées par la convention d'arbitrage figurant à l'article 8 du Traité* », après avoir rejeté l'exception d'incompétence soulevée par la République de Pologne relative au droit de l'UE et à l'arrêt Achméa (§ 8.143), estimant que le droit de l'UE n'était pas applicable aux questions relevant de la compétence du tribunal arbitral.

76- Il résulte tout d'abord de cette énumération que les sociétés défenderesses invoquent à tort un Estoppel qui interdirait à la Pologne de soutenir l'incompétence du tribunal arbitral sur le fondement de l'incompatibilité de la clause d'arbitrage avec le droit de l'Union aux motifs que la Pologne aurait soulevé cet argument très tard, en fin d'arbitrage, et qu'elle aurait depuis le début admis son engagement individuel à appliquer la convention d'arbitrage fondée sur la commune volonté des parties et non sur l'article 8 du TBI, alors qu'il résulte des éléments énoncés ci-dessus que le moyen tiré de l'incompatibilité de la clause d'arbitrage avec le droit de l'Union a été soulevé avant que la décision Achméa ne soit rendue, qu'il a été largement débattu devant les arbitres et qu'au surplus dès le début de l'arbitrage, la Pologne avait fait valoir l'incompétence du tribunal arbitral et sollicité la bifurcation de la procédure (la sentence précisant au paragraphe 1.12 « *sans préjudice des objections de la Défenderesse à la compétence du Tribunal* »).

77- Il résulte également de la sentence partielle comme indiqué ci-dessus qu'elle se réfère à l'article 8 du TBI pour juger que (§10.1.1) « *la convention d'arbitrage contenue dans l'article 8 du Traité, telle qu'invoquée par les Demanderesses pour cet arbitrage, est légalement valide* » et que (§10.1.2) « *les parties étaient et restent juridiquement liés par la convention d'arbitrage figurant à l'article 8 du Traité* ».

78- Le tribunal arbitral donne ainsi effet à la clause d'arbitrage issue de l'article 8 du Traité.

79- Il ne peut donc être soutenu en l'espèce, comme le font les sociétés Strabag, que les parties auraient conclu une nouvelle convention d'arbitrage individuelle *ad hoc*, distincte de l'offre d'arbitrage prévue à l'article 8 du TBI Autriche-Pologne, qui se substituerait à la clause du Traité notamment par le biais de l'ordonnance de procédure n°1 versée aux débats.

80- En effet, si les parties sont convenues, par cette ordonnance n°1, de récapituler les règles adoptées concernant le siège et le secrétariat, de soumettre leur arbitrage au règlement CIRDI, ainsi que de fixer les pouvoirs et fonctions du tribunal arbitral, les règles générales de procédure, les modalités pratiques de l'arbitrage et de la notification de la décision, cette ordonnance avait vocation à préciser le cadre procédural de l'arbitrage sans pour autant revenir sur le consentement à l'arbitrage découlant de l'offre d'arbitrage prévue au TBI.

81- A cet égard, l'ordonnance n°1 rappelle que le tribunal arbitral est saisi par la requête en date du 9 septembre 2014, sans faire référence à une nouvelle offre d'arbitrage ou à une convention d'arbitrage distincte de celle visée dans la requête, à savoir l'article 8 du TBI, et la sentence valide la convention d'arbitrage contenue dans l'article 8 du TBI.

82- Si cette ordonnance n°1 est signée par le président du tribunal arbitral, aucun élément ne permet d'en déduire qu'elle constitue un accord *ad hoc* distinct de la clause d'arbitrage fondant la procédure.

83- Les sociétés Strabag elles-mêmes ont d'ailleurs indiqué que cette ordonnance « complétait » la demande d'arbitrage et non qu'elle s'y substituait comme relevé au §1.19 de la Sentence (« *cet arbitrage doit également être mené conformément aux dispositions de procédure n°1 du Tribunal en date du 9 juillet 2015, par laquelle l'article 8 du Traité a été matériellement complété par un Accord des Parties* », faisant lui-même référence au §38 de l'ordonnance de procédure n°1). Son « homologation » par la signature du président ne lui donne aucune existence autonome.

84- C'est dès lors à tort que les sociétés Strabag soutiennent que l'ordonnance n°1 se serait substituée à la clause du Traité et que cette « convention d'arbitrage individuelle » serait entièrement indépendante de la clause de règlement de différend Investisseur –Etat du Traité d'investissement et parfaitement valable au regard des règles matérielles du droit français de l'arbitrage international, basées sur la commune volonté des parties, sans aucune condition de forme, ou au regard du droit des Traités.

85- Les sociétés Strabag soutiennent également à tort que l'article 8 du TBI serait conforme au droit de l'Union européenne, aux motifs que toutes les clauses d'arbitrage d'investissement ne seraient pas toutes automatiquement invalides, que les arrêts de la CJUE doivent être interprétés restrictivement, que les déclarations des Etats membres et la communication de la Commission européenne qui laissent croire à une généralisation de la jurisprudence Achméa n'ont aucune valeur contraignante, et que seules les offres d'arbitrage qui présentent les même caractéristiques que celles dont la CJUE a consacré l'incompatibilité avec le droit de l'Union doivent être annulées, soutenant que ces caractéristiques n'étaient pas réunies dans le Traité de la présente espèce, ce qui justifierait une conclusion différente de celle de l'arrêt Achmea, alors que la règle énoncée par les décisions Achméa, et PL Holdings est claire et contraint le juge à prononcer l'annulation de toute clause d'un tel traité qui serait incompatible avec les articles 267 et 344 du TFUE, qu'elle soit unilatérale ou bilatérale, toute tentative de contournement de ladite règle étant nulle et susceptible d'entrainer des sanctions, et une appréciation au cas par cas emportant un risque pour l'application uniforme du droit de l'Union.

86- Le fait que la clause figurant dans l'article 8 du TBI ne prévoit pas le droit applicable, alors que dans l'affaire Achméa le Traité prévoyait que le tribunal devait trancher les différends qui lui étaient soumis en prenant en considération le droit interne de l'Etat hôte de l'investissement, ce qui incluait le droit de l'Union européenne est inopérant dès lors

que le mécanisme de règlement figurant à l'article 8 du TBI et l'ordonnance de procédure n°1 le complétant n'excluent pas que le tribunal arbitral puisse être amené à statuer sur l'application ou l'interprétation du droit de l'Union, la mention selon laquelle « the arbitral tribunal shall apply the law determined by the conflict of laws rules which it considers applicable and such rules of international law and traties as the Arbitral Tribunal considers applicable » (« *Le Tribunal arbitral applique le droit déterminé par les règles de conflit de lois qu'il considère comme applicables et les règles de droit international et les traités qu'il considère comme applicables.* » §116 de l'ordonnance de procédure n°1*)* n'excluant pas que le droit de l'Union puisse s'appliquer, ni que le tribunal prenne une décision susceptible de rentrer en contrariété avec le droit de l'Union.

87- D'autre part, il ressort de la décision Achméa confirmée par la décision PL Holdings que la CJUE a statué en termes généraux sur la contrariété au droit de l'Union européenne des clauses de règlement des TBI entre Etats membres sans faire de distinction selon que la clause comporte ou non un renvoi au droit applicable.

88- Le fait encore que l'Autriche n'ait pas signé l'accord « portant extinction des traités bilatéraux d'investissement entre Etats membres de l'Union européenne » en date du 5 mai 2020, ne permet pas de faire une exception pour le TBI Autriche-Pologne.

89- La Commission européenne avait d'ailleurs formellement invité l'Autriche, par un avis motivé du 23 septembre 2016, à mettre fin à ses TBI intra-UE. Elle a indiqué, dans sa communication du 19 juillet 2018, qu'« *après l'arrêt Achméa, la Commission a intensifié son dialogue avec tous les Etats membres, les appelant à prendre des mesures pour mettre fin aux TBI intra-UE, étant donné leur incompatibilité incontestable avec le droit de l'Union. La Commission suivra les progrès réalisés à cet égard et, si nécessaire, pourra décider de poursuivre les procédures d'infraction* ». Elle a également rappelé que « *les juridictions nationales agissent en tant que « juridictions de l'Union et sont soumises à l'obligation de refuser d'office l'application des dispositions nationales qui sont contraires aux dispositions directement applicables du droit de l'Union* », ce qui est le cas des décisions rendues par la CJUE sur question préjudicielle, interprétant le droit de l'Union. La Commission rappelle qu'elle « *s'est engagée à prendre des mesures fermes contre les infractions qui entravent la réalisation de grands objectifs de l'UE ou qui risquent de compromettre les quatre libertés fondamentales, qui sont essentielles pour les investisseurs* ».

90- La primauté du droit de l'Union s'impose à tous les Etats de l'Union européenne et le recours à la Convention de Vienne sur le droit des Traités ou au besoin, à la règle matérielle du droit international de l'arbitrage pour prétendre de l'existence d'un consentement valide est inopérant à cet égard.

91- C'est dès lors à tort que le tribunal arbitral s'est déclaré compétent, sans qu'il soit nécessaire d'examiner le moyen d'annulation tiré de la violation de l'ordre public international.

*Sur le caractère disproportionné de l'annulation de la sentence partielle*

92- Il convient de rappeler que l'annulation de la sentence partielle tirée de l'incompétence du tribunal arbitral n'a pas pour effet de priver une partie de l'accès à un juge mais seulement de priver la possibilité pour les parties de soumettre leur litige à un arbitre, les conditions le permettant n'étant pas réunies.

93- Dès lors que la Cour a considéré, pour les motifs évoqués ci-dessus, qu'au regard de la jurisprudence de la CJUE, le tribunal s'était à tort reconnu compétent pour statuer sur le litige opposant les parties, l'annulation partielle de la sentence s'impose sans préjudice de l'examen au fond des demandes des Investisseurs, étant observé qu'il n'incombe pas au juge de l'annulation d'apprécier les conditions dans lesquelles les Investisseurs sont susceptibles d'obtenir devant des juridictions étatiques les réparations qu'ils demandent.

94- A cet égard, il a été rappelé par la CJUE que la protection des droits subjectifs « doit être assurée dans le cadre du système juridictionnel des Etats membres » et qu'il appartient le cas échéant à la Commission européenne d'engager des procédures d'infraction contre les Etats membres qui méconnaîtraient les principes et valeurs fondamentaux du droit de l'Union, les juridictions nationales n'étant pas juges des manquements qui seraient commis.

95- En l'espèce au demeurant, la Commission a engagé une procédure d'infraction contre la Pologne le 22 décembre 2021 en raison des graves préoccupations relatives au Tribunal constitutionnel polonais et à sa jurisprudence récente, ce qui démontre la vigilance des institutions européennes pour la protection de l'état de droit au sein de l'Union européenne. Il ne saurait être déduit de cette procédure d'infraction que les Investisseurs seraient privés de leur droit d'accès à un juge ou qu'ils se heurteraient à un déni de justice.

96- Il n'y a dès lors pas lieu d'écarter l'annulation de la sentence retenue dans le cadre du contrôle de la compétence du tribunal arbitral sur ce fondement.

97- Il y a lieu par conséquent de faire droit à la demande d'annulation de la sentence sur le fondement de l'article 1520 -1° du code de procédure civile.

**Sur les frais et dépens**

98- Il y a lieu de condamner les défenderesses, parties perdantes, aux dépens.

99- En outre, elles doivent être condamnées à verser à la République de Pologne, qui a dû exposer des frais irrépétibles pour faire valoir ses droits, une indemnité au titre de l'article 700 du code de procédure civile qu'il est équitable de fixer à la somme globale de 50 000 euros.

**IV/ DISPOSITIF**

**Par ces motifs, la cour :**

1- Rejette comme tardives les conclusions n°3 notifiées par la République de Pologne le 1er mars 2022, jour de la clôture,

2- Annule la sentence arbitrale rendue à Paris le 4 mars 2020 (n° ADHOC/15/1) ;

3- Condamne les sociétés RAIFFEISEN CENTROBANK AG, SYRENA IMMOBILIEN HOLDING AG et STRABAG SE à verser à la République de Pologne la somme globale de 50 000 euros au titre des dispositions de l'article 700 du Code de procédure civile ;

4- Condamne les sociétés RAIFFEISEN CENTROBANK AG, SYRENA IMMOBILIEN HOLDING AG et STRABAG SE aux entiers dépens.

|  **La greffière** | **Le Président** |
|---|---|
| **Najma EL FARISSI** | **François ANCEL** |