# EXHIBIT 3



ABOGACÍA GENERAL DEL ESTADO-
DIRECCIÓN DEL SERVICIO JURÍDICO DEL
ESTADO

SUBDIRECCIÓN GENERAL DE LOS SERVICIOS
CONTENCIOSOS

# TO THE SECRETARY-GENERAL OF THE INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

in relation to

## ICSID ARBITRATION CASE No. ARB/14/11

### THE KINGDOM OF SPAIN
**Applicant**

- and -

### NEXTERA ENERGY GLOBAL HOLDINGS. B.V. and
### NEXTERA ENERGY SPAIN HOLDINGS. B.V.
**Respondents**

## SUBMISSION OF THE KINGDOM OF SPAIN IN SUPPORT OF THE CONTINUATION OF THE STAY OF ENFORCEMENT OF THE AWARD

**Submited on behalf of the Kingdom of Spain by:**

State Attorney's Office

C/ Marqués de la Ensenada, 14-16

28004 Madrid

Spain

**16 January 2020**

## CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | CONTINUATION OF THE STAY SHOULD BE GRANTED | 4 |
| (1) | The Annulment Application has been made in good faith | 5 |
| (2) | Harm to the Kingdom of Spain if stay is not continued | 5 |
| (3) | Continuing the stay would not harm NextEra | 6 |
| (3.1) | Payment of interests granted by the Award | 6 |
| (3.2) | Spain will abide by its international obligations | 7 |
| III. | CONCLUSION | 8 |

## I. INTRODUCTION

1. Pursuant to Rule 54 of the ICSID Arbitration Rules and in accordance with the timetable agreed by the Paries, the Kingdom of Spain hereby files this submission in support of the continuation of the provisional stay of enforcement of the Award[1] rendered in the Case NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (hereinafter "**NextEra**") and the Kingdom of Spain (ICSID case No. ARB/14/11) on 31 May 2019 (hereinafter, the "**Award**").[1]

2. On September 26, 2019 the Kingdom of Spain submitted its Application for Annulment of the Award (hereinafter, the "**Annulment Application**"). In the Annulment Application, the Kingdom of Spain requested (i) a provisional stay of enforcement of the Award in accordance with Article 52(5) of the ICSID Convention and Rule 54(2) of the ICSID Arbitration Rules, which provide that the Secretary-General shall grant an automatic provisional stay until the *ad hoc* Committee rules on such request, and (ii) the continuation of the stay of enforcement until the decision in this annulment proceeding is rendered by the *ad hoc* Committee (hereinafter, the "**Committee**").[2]

3. On October 2 2019, the Secretary-General registered the Annulment Application and granted the provisional stay of the Award in accordance with Article 52(5) of the ICSID Convention. The Committee was constituted on December 16 2019 and this annulment proceeding was deemed to have commenced as of that date. Further to the request for the stay of enforcement of the Award set forth in the Annulment Application, the Kingdom of Spain files this submission in support of continuation of the stay.

4. As discussed below, it is the prevailing practice for ICSID *ad hoc* annulment committees to stay enforcement of an award during the pendency of the annulment proceeding. Absent exceptional circumstances that require a departure from this standard practice, such stays have been considered the norm. Thus, unless faced with an obviously frivolous annulment application or other improper purposes, which are not present here, a stay of enforcement should be granted.[3]

5. In this case, continuation of the stay of enforcement is clearly justified. The Kingdom of Spain has filed its Annulment Application in good faith, in accordance with Article 52(1) of the ICSID Convention, while raising serious grounds (including an issue related with a lack of clean hands on the Respondent in the annulment) that it believes require the annulment of the Award, including manifest excess of powers, failure to state reasons and serious departure from a fundamental rule of procedure. As discussed below, the grounds for annulment raised by the Kigdom of Spain go to the very core of the validity of the Award and the integrity of the arbitral proceeding. Continuation of the stay of enforcement is compelling in this case, in which there are clear and serious grounds for annulment of an Award that is deeply flawed.

6. Indeed, under these circumstances, premature enforcement of the Award before the Annulment Application is decided would be particularly inappropriate and unfair. Such enforcement would prejudice the Kingdom of Spain, which, if successful in the annulment proceedings, would then be faced with the prospect of trying to recover amounts improperly obtained by NextEra. On the

---

[1] Award rendered on 31 May 2019 in the ICSID Case No. ARB/14/11 between NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. v. the Kingdom of Spain. **Annex-001**.
[2] Annulment Application, ¶¶ 106 and 107.
[3] See *infra*, ¶¶ 7-10.

contrary, there would be no prejudice to NextEra as a result of continuing the stay, since any delay in payment of the Award could be fully compensated by the payment of interest from the date of the Award.

## II. CONTINUATION OF THE STAY SHOULD BE GRANTED

7. Pursuant to Article 52(5) of the ICSID Convention, the Committee may continue the stay of enforcement of the Award "*if it considers that the circumstances so require*", as also reflected in Rule 54(2) of the ICSID Arbitration Rules. The prevailing ICSID practice of granting stays of enforcement was recognized by the *ad hoc* committee in *Occidental v. Ecuador*, which stated:

   *"The prevailing practice in prior annulment cases has been to grant the stay of enforcement. Although this practice does not create a presumption for continuation, and a committee is entitled to deviate from it, 'if it considers that the circumstances so require', the Committee finds that in this case there is no reason to deviate from the standard practice."*[4]

8. The *ad hoc* committee in the *Victor Pey Casado* case spoke in similar terms, stating that:

   *"absent unusual circumstances, the granting of a stay of enforcement pending the outcome of the annulment proceedings has now become almost automatic."*[5]

9. *Ad hoc* annulment committees have found that a request for continuation of a stay should be granted unless it is obvious that the application is *"without any basis under the Convention"* and is *"dilatory"* in nature. As stated by the *ad hoc* committee in *MTD v. Chile*:

   *"The Committee agrees with earlier decisions to the effect that, unless there is some indication that the annulment application is brought without any basis under the Convention, i.e., that it is dilatory, it is not for the Committee to assess as a preliminary matter whether or not it is likely to succeed. In requesting annulment, an applicant avails itself of a right given by the Convention. There is no indication here that Chile is acting in a merely dilatory manner. Thus the Committee does not need to form any view as to the likelihood of success of the application for annulment in the present case."*[6]

---

[4] *Occidental Petroleum Corporation and Occidental Exploration and Production Company v. The Republic of Ecuador*, ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award dated 30 September 2013, ¶ 50. **Annex-029**.

[5] *Víctor Pey Casado and Fondation "Presidente Allende" v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Application for a Stay of Enforcement of the Award dated 5 May 2010, ¶ 25. **Annex-030**. See also *Azurix Corp. v. The Argentine Republic*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award dated December 28, 2007, ¶ 22 (*"Although the Committee accepts that there may be very exceptional circumstances where a stay ought not be ordered, that is not the situation here."*). **Annex-031**.

[6] *Víctor Pey Casado and Fondation "Presidente Allende" v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Application for a Stay of Enforcement of the Award dated 5 May 2010, ¶ 25. **Annex-030.** See also *Azurix Corp. v. The Argentine Republic*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award dated 28 December 2007, ¶ 22 (*"Although the Committee accepts that there may be very exceptional circumstances where a stay ought not be ordered, that is not the situation here."*). **Annex-031**.

10. As expounded below, there are no circumstances present in this case that would warrant a departure from this standard practice. The Kingdom of Spain's Annulment Application has been made in good faith and there would be no harm caused to NextEra as a result of the stay.

**(1)    The Annulment Application has been made in good faith**

11. It is clear that the Annulment Application in this case is based on serious grounds, was made in good faith, and is not dilatory.

12. First, as discussed in the Annulment Application, in the Award the Tribunal went beyond its jurisdiction by failing to apply the proper law with regard to the intra-EU objection and wrongly interpreting Article 26 of the Energy Charter Treaty (hereinafter, "**ECT**"). Furthermore, the Tribunal ignored the applition of the Article 17 of the ECT and the fact, that there was no investor in accordance with the applicable law. The Tribunal also failed to apply the proper law by completely disregarding European Union Law when assessing the facts and merits of the case. Finally, the wrongful application of the proper law by the Tribunal determined that the Award infringed the most basic principles contained in the European Commission's State Aid Decision on the Spanish renewable energy support scheme.[7]

13. In addition, the Award incurred in serious departures from fundamental rules of procedure and thus prevented the Kingdom of Spain ofhaving a fair trial. The Tribunal authorized the Clamiants to breach the basic rules of procedural order, Nº 1; the Kingdom of Spain denounced and demonstrated the wrong translation of a key document essential for the Award but the Tribunal consciously used the wrong translation; there were key documents in power of Claimants that were concealed by them and the Tribunal was willful blindness on that concealment; the Tribunal flipped the burden of proof and set the principle that the documents NextEra voluntarily concealed were favorable to them; and finally, the hearing discussion and the transcriots were completely irrelevant for the Tribunal as it decided (likely what it had already in mind before the hearing) as if the hearing, transcripts and post hearing submission had never happened.[8]

14. Lastly, the Award failed to state the reasons on which it is based by providing contradictory findings in relation to stabilization commitments and the application of European Union Law; not specifyed the date of the investment what is essential for any valuation; omitted voluntarily to decide on a potential fraud allegation that would determine that NextEra didn't come to the ICSID with clean hands; committeed gross errors in the damages claculations.[9]

**(2)    Harm to the Kingdom of Spain if stay is not continued**

15. Moreover, a key factor that may be considered by an *ad hoc* committee when deciding on a request for the continuation of the stay of enforcement is the harm that the continuation or not of the stay could imply for each party. Certainly, in the present case, as will be expounded below, not continuing the stay would prejudice the position of the Kingdom of Spain while continuing the stay would not harm NextEra in any way.

---

[7] Annulment Application, ¶¶ 17-57.
[8] *Ibid.*, ¶¶ 58-77.
[9] *Ibid.*, ¶¶ 78-105.

16. In the event that the stay was not continued, the Kingdom of Spain would face the risk of non-recoupment of the amounts unduly paid. The Kingdom of Spain could not be able to recover funds from NextEra if the Award is paid before the final decision on this annulment proceeding is rendered and later said decision annulles the Award (as it will likely happen).

17. If NextEra enforced the Award and executed its payment during the pendency of this annulment proceeding and the Award was afterwards annulled, the Kingdom of Spain would be put in the difficult position of having to recover the amount prematurely and inappropriately paid to the Respondent, aggravated by the circumstance of NextEra's "investment" been channeled trough a long chain of instrumental companies with no actual assets.[10]

18. In any case, even in the hipothetical event that the amount could ultimately be recouped, the process for the recouperation would indeed imply resources and efforts by the Kingdom of Spain, who would need to start further legal proceedings for said recouperation. The Applicant should not be driven to having to face such additional burden, particularly considering that those additional resources and efforts are financed with taxpayers´money, when that additional and unnecesary burden could have been avoided by the mere maintenance of the stay until this annulment proceeding is concluded.

**(3)   Continuing the stay would not harm NextEra**

19. As noted above, in deciding requests to continue a stay of enforcement, *ad hoc* committees may also consider whether continuation of the stay would have adverse economic consequences on the award creditor.[11]

20. In the present case, contrary to the consequences for the Applicant already mentioned, NextEra would not be harmed in any way if the Committee decides to continue the provisional stay of enforcement of the Award, as explained below.

**(3.1)   Payment of interests granted by the Award**

21. In the hypothetical event that the Annulment Application was denied, the delay in payment of the Award would be remedied by the payment of interest. Thus, the deferral in payment of the Award during the pendency of the annulment proceeding would not prejudice NextEra at all. This factor has been recognized by other *ad hoc* committees, such as in *Azurix v. Argentina*, where the committee stated:

> *"Other than by being put to the effort and expense of defending an annulment request and by the receipt of funds being delayed (assuming the annulment application to be unsuccessful), the*

---

[10] NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. and the Kingdom of Spain. in the ICSID case No. ARB/14/11. Award rendered on 31 May 2019, ¶¶ 188-212

[11] *Quiborax S.A. and Non-Metallic Minerals S.A. v. Plurinational State of Bolivia*, ICSID Case No. ARB/06/2, Decision on the Application to Terminate the Provisional Stay of Enforcement of the Award dated 21 February 2017, ¶ 62 (*"A determination of which Party is more or less harmed by the continuation of the provisional stay of enforcement requires a comparison of how continuing or lifting the stay would affect the interests of each Party. Such a comparison is customarily made by annulment committees."*) (Unnoficial translation.) **Annex-032**.

> *Committee does not accept that Azurix suffers any prejudice of a kind warranting the provision of security. The provision for interest compensates for the delay."*[12]

22. Under the terms of the Award, interest will accrue on the amount of the Award to the date of payment compounded monthly.[13] Thus, during the entire period that this annullment proceeding is pending, interest will be accruing.

**(3.2)   Spain will abide by its international obligations**

23. In deciding whether to continue a stay of enforcement, committees may consider the risk of non-compliance with the award if it is not annulled.[14] Even when such a risk exists, committees have found that it is not conclusive, and stays of enforcement have been granted even in such circumstances.[15]

24. Spain is the fifth-largest economy in the European Union,[16] and it is ranked 13th among all countries in the world in terms of GDP.[17] As such, there is no danger that the Kingdom of Spain would not have the financial resources to pay the Award in this case, if and when the time comes that such payment may be appropriate, after this annulment proceeding is concluded.

25. There is also no history of non-compliance. The Kingdom of Spain takes its international commitments seriously, and it intends to honor them. That includes its obligation under Article 53 of the ICSID Convention to abide by and comply with the terms of the Award in this case.

---

[12] *Azurix Corp. v. The Argentine Republic*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award dated 28 December 2007, ¶ 40 **Annex-031**. See also *MTD Equity Sdn Bhd. and MTD Chile S.A. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on the Respondent's Request for a Continued Stay of Execution dated 1 June 2005, ¶ 36 (Delay in payment "*which is ... incidental to the Convention system of annulment ... can be remedied by the payment of interest in the event that the annulment application is unsuccessful.*") **Annex-033** and *CMS Gas Transmission Company v. Argentine Republic*, ICSID Case No. ARB/01/8, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award dated 1 September 2006, ¶ 50 ("*Argentina had demonstrated that CMS will not be prejudiced by the grant of a stay, other that in respect of the delay which is, however, incidental to the Convention system of annulment and which can be remedied by the payment of interest in the event that the annulment application is unsuccessful. As a consequence, the Committee has decided to grant such a stay without requesting Argentina to provide a bank guarantee*"). **Annex-034**.

[13] NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. and the Kingdom of Spain. in the ICSID case No. ARB/14/11. Award rendered on 31 May 2019 and Decision on Jurisdiction, Liabllity and Quantum Principles 12 March 2019, ¶¶ 682. **Annex-001**.

[14] *Enron Corporation and Ponderosa Assets, L.P. v. Argentine Republic*, ICSID Case No. ARB/01/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award dated 7 October 2008, ¶ 49. **Annex-035**.

[15] *Enron Corporation and Ponderosa Assets, L.P. v. The Argentine Republic*, ICSID Case No. ARB/01/3, Decision on the Claimants' Second Request to Lift Provisional Stay of Enforcement of the Award dated 20 May 2009, ¶¶ 29, 46 (continuing the stay of enforcement unconditionally in light of all the circumstances, even though there was "*a high risk of non-compliance by Argentina with its obligations under Article 53 of the ICSID Convention if the Award is not annulled*") **Annex-036**; *Continental Casualty Company v. The Argentine Republic*, ICSID Case No. ARB/03/9, Decision on Argentina's Application for a Stay of Enforcement of the Award dated 23October 2009, ¶¶ 12-16 (granting an unconditional stay, in light of the circumstances, even though there was "*no prospect that Argentina will comply with its obligation under Article 53 of the ICSID Convention*"). **Annex-037**.

[16] Eurostat, *Share of Member States in EU GDP*, April 10, 2017, available at: http://ec.europa.eu/eurostat/web/products-eurostat-news/-/DDN-20170410-1.

[17] World Bank, Gross domestic product ranking table for 2016, available at: https://data.worldbank.org/data-catalog/GDP-ranking-table.

26. Finally, the Kingdom of Spain submits that no guarantee should be required as a condition for continuing the stay of enforcement. *Ad hoc* committees have recognized that this would place the award creditor in a better position than it would have been if an annulment proceeding had not been even commenced, and that it requires a high burden of proving that the award creditor would suffer prejudice if the stay were continued.[18]

### III. CONCLUSION

27. In view of the aforementioned, the Kingdom of Spain respectfully submits that the stay of enforcement of the Award should be continued and maintained in effect until the decision on the Annulment Application is rendered by the Committee in this proceeding.

Respectfully submitted on behalf of the Applicant,

---

[18] *Víctor Pey Casado and Fondation "Presidente Allende" v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Application for a Stay of Enforcement of the Award dated 5 May 2010, ¶ 29 ("*The Claimants bear the burden of proving that security should be ordered and that, if it is not ordered, they will suffer a prejudice.*"), **Annex-030**; *Quiborax S.A. and Non-Metallic Minerals S.A. v. Plurinational State of Bolivia*, ICSID Case No. ARB/06/2, Decision on the Application to Terminate the Provisional Stay of Enforcement of the Award dated 21 February 2017, ¶ 43 *("[I]t is the Claimants' duty to prove the necessity of granting a guarantee if the Committee decides to continue the stay.")*; **Annex-032**; *Enron Corporation and Ponderosa Assets, L.P. v. The Argentine Republic*, ICSID Case No. ARB/01/3, Decision on the Claimants' Second Request to Lift Provisional Stay of Enforcement of the Award dated 20 May 2009, ¶ 45 ("*Another consideration is that a condition of security will often place the award creditor in a better position than it would have been in if annulment proceedings had not been brought, since the award creditor would not otherwise have had the benefit of such security.*") **Annex-036**.

8