# EXHIBIT 8

Case 1:19-cv-01618-TSC   Document 69-67   Filed 06/09/22   Page 2 of 6
Summaries of Judgments, Advisory Opinions and Orders of the International Court of Justice
Not an official document

# CASE CONCERNING THE VIENNA CONVENTION ON CONSULAR RELATIONS (PARAGUAY v. UNITED STATES OF AMERICA) (PROVISIONAL MEASURES)

## Order of 9 April 1998

In an order adopted unanimously in the case concerning the Vienna Convention on Consular Relations (Paraguay v. United States of America), the Court called on the United States to "take all measures at its disposal" to prevent the execution of Mr. Angel Francisco Breard, pending a final decision of the Court in the proceedings instituted by Paraguay. Mr. Breard was a Paraguayan national convicted of murder in Virginia (United States) whose execution was scheduled for 14 April 1998. In its Order, the Court also requested the United States to inform it of all the measures taken in implementation of it.

The Court was composed as follows: Vice-president Weeramantry, Acting President; President Schwebel; Judges Oda, Bedjaoui, Guillaume, Ranjeva, Herczegh, Shi, Fleischhauer, Koroma, Vereshchetin, Higgins, Parra-Aranguren, Kooijmans, Rezek; Registrar Valencia-Ospina.

\*
\*  \*

The complete text of the operative paragraph of the Order reads as follows:
"41. For these reasons,
THE COURT
Unanimously,
*Indicates* the following provisional measures:
I. The United States should take all measures at its disposal to ensure that Angel Francisco Breard is not executed pending the final decision in these proceedings, and should inform the Court of all the measures which it has taken in implementation of this Order;
II. *Decides*, that, until the Court has given its final decision, it shall remain seized of the matters which form the subject matter of this Order."

\*
\*  \*

President Schwebel and Judges Oda and Koroma appended declarations to the Order of the Court.

\*
\*  \*

*History of the case and submissions*
(paras. 1-22)

The Court begins by recalling that on 3 April 1998 Paraguay instituted proceedings against the United States of America for "violations of the Vienna Convention on Consular Relations [of 24 April 1963]" (hereinafter the "Vienna Convention") allegedly committed by the United States. Paraguay bases the jurisdiction of the Court on Article 36, paragraph 1, of the Statute of the Court and on Article I of the Optional Protocol concerning the Compulsory Settlement of Disputes, which accompanies the Vienna Convention on Consular Relations ("the Optional Protocol").

In Paraguay's Application, it is stated that in 1992 the authorities of Virginia arrested a Paraguayan national, Mr. Angel Francisco Breard, who was charged, tried, convicted of culpable homicide and sentenced to death by a Virginia court in 1993, without having been informed of his rights under Article 36, subparagraph 1 (*b*), of the Vienna Convention; it is specified that among these rights are the right to request that the relevant consular office of the State of which he is national be advised of his arrest and detention, and the right to communicate with that office; it is further alleged that the authorities of the Commonwealth of Virginia also did not advise the Paraguayan consular officers of Mr. Breard's detention, and that those officers were only able to render assistance to him from 1996, when the Paraguayan Government learnt by its own means that Mr. Breard was imprisoned in the United States.

Paraguay states that federal courts denied Mr. Breard the right to invoke the Vienna Convention; that the Virginia court that sentenced Mr. Breard to the death penalty set an execution date of 14 April 1998; that Mr. Breard, having exhausted all means of legal recourse available to him as of right, petitioned the United States Supreme Court for a writ of *certiorari*, requesting it to exercise its discretionary power to review the decision given by the lower federal courts and to grant a stay of his execution pending that review; and that, while this request is still pending before the Supreme Court, it is however rare for that Court to accede to such requests. Paraguay stated, moreover, that, having brought proceedings itself before the federal courts of the United States without success, it also filed such a petition in the Supreme Court, which is also still pending; and that Paraguay furthermore engaged in diplomatic efforts with the Government of the United States and sought the good offices of the Department of State.

Paraguay maintains that by violating its obligations under Article 36, subparagraph 1 (*b*), of the Vienna Convention, the United States prevented Paraguay from exercising the consular functions provided for in Articles 5 and 36 of the Convention and specifically for ensuring the protection of its interests and of those of its nationals in the United States; that it was not able to contact Mr. Breard nor to offer him the necessary assistance, and that accordingly Mr. Breard "made a number of objectively unreasonable decisions during the criminal proceedings against him,

29

which were conducted without translation" and that he "did not comprehend the fundamental differences between the criminal justice systems of the United States and Paraguay"; Paraguay concludes from this that it is entitled to *restitutio in integrum*, that is to say "the re-establishment of the situation that existed before the United States failed to provide the notifications ... required by the Convention";

Paraguay requests the Court to adjudge and declare as follows:

"(1) that the United States, in arresting, detaining, trying, convicting, and sentencing Angel Francisco Breard, as described in the preceding statement of facts, violated its international legal obligations to Paraguay, in its own right and in the exercise of its right of diplomatic protection of its national, as provided by Articles 5 and 36 of the Vienna Convention;

(2) that Paraguay is therefore entitled to *restitutio in integrum*;

(3) that the United States is under an international legal obligation not to apply the doctrine of 'procedural default', or any other doctrine of its internal law, so as to preclude the exercise of the rights accorded under Article 36 of the Vienna Convention; and

(4) that the United States is under an international legal obligation to carry out in conformity with the foregoing international legal obligations any future detention of or criminal proceedings against Angel Francisco Breard or any other Paraguayan national in its territory, whether by a constituent, legislative, executive, judicial or other power, whether that power holds a superior or a subordinate position in the organization of the United States, and whether that power's functions are of an international or internal character;

and that, pursuant to the foregoing international legal obligations,

(1) any criminal liability imposed on Angel Francisco Breard in violation of international legal obligations is void, and should be recognized as void by the legal authorities of the United States;

(2) the United States should restore the *status quo ante*, that is, re-establish the situation that existed before the detention of, proceedings against, and conviction and sentencing of Paraguay's national in violation of the United States' international legal obligations took place; and

(3) the United States should provide Paraguay a guarantee of the non-repetition of the illegal acts."

On 3 April 1998 Paraguay also submitted an urgent request for the indication of provisional measures in order to protect its rights. It states in the following terms the grounds for its request and the possible consequences of its dismissal:

"Under the grave and exceptional circumstances of this case, and given the paramount interest of Paraguay in the life and liberty of its nationals, provisional measures are urgently needed to protect the life of Paraguay's national and the ability of this Court to order the relief to which Paraguay is entitled: restitution in kind. Without the provisional measures requested, the United States will execute Mr. Breard before this Court can consider the merits of Paraguay's claims, and Paraguay will be forever deprived of the opportunity to have the *status quo ante* restored in the event of a judgment in its favour."

Paraguay requests that, pending final judgment in this case, the Court indicate:

"(*a*) That the Government of the United States take the measures necessary to ensure that Mr. Breard not be executed pending the disposition of this case;

(*b*) That the Government of the United States report to the Court the actions it has taken in pursuance of subparagraph (*a*) immediately above and the results of those actions; and

(*c*) That the Government of the United States ensure that no action is taken that might prejudice the rights of the Republic of Paraguay with respect to any decision this Court may render on the merits of the case."

It asks the Court moreover to consider its request as a matter of the greatest urgency "in view of the extreme gravity and immediacy of the threat that the authorities ... will execute a Paraguayan citizen".

By identical letters dated 3 April 1998, the Vice-President of the Court addressed both Parties in the following terms:

"Exercising the functions of the presidency in terms of Articles 13 and 32 of the Rules of Court, and acting in conformity with Article 74, paragraph 4, of the said Rules, I hereby draw the attention of both Parties to the need to act in such a way as to enable any Order the Court will make on the request for provisional measures to have its appropriate effects."

At public hearings held on 7 April 1998, oral statements on the request for the indication of provisional measures were presented by both Parties.

*The Court's reasoning*
(paras. 23-41)

The Court begins by pointing out that on a request for the indication of provisional measures it need not, before deciding whether or not to indicate them, finally satisfy itself that it has jurisdiction on the merits of the case, but that it may not indicate them unless the provisions invoked by the Applicant appear, prima facie, to afford a basis on which the jurisdiction of the Court might be founded.

It notes that Article I of the Optional Protocol, which Paraguay invokes as the basis of jurisdiction of the Court in this case, is worded as follows:

"Disputes arising out of the interpretation or application of the Convention shall lie within the compulsory jurisdiction of the International Court of Justice and may accordingly be brought before the Court by an application made by any party to the dispute being a Party to the present Protocol";

and that both Paraguay and the United States are parties to the Vienna Convention and to the Optional Protocol, in each case without reservation.

The Court observes that Paraguay, in its Application and at the hearings, stated that the issues in dispute between itself and the United States concern Articles 5 and 36 of the Vienna Convention and fall within the compulsory jurisdiction of the Court under Article I of the Optional Protocol.

At the hearing the United States contended that Paraguay had not established that the Court had jurisdiction in these proceedings, even prima facie; it argued that there is no dispute between the Parties as to the interpretation of Article 36, subparagraph 1 (*b*), of the Vienna Convention nor is there a dispute as to its application, since the United States recognizes that the notification provided for was not carried out; the United States maintained that the objections raised by Paraguay to the proceedings brought against its national do not constitute a dispute concerning the interpretation or application of the Vienna Convention; and it added that there was no entitlement to *restitutio in integrum* under the terms of that Convention.

The Court finds that there exists a dispute as to whether the relief sought by Paraguay is a remedy available under the Vienna Convention, in particular in relation to Articles 5 and 36 thereof, which is a dispute arising out of the application of the Convention within the meaning of Article I of the Optional Protocol; and that prima facie it has jurisdiction under Article I of the aforesaid Optional Protocol to determine the dispute between Paraguay and the United States.

The Court then indicates that the purpose of the power to indicate provisional measures is to preserve the respective rights of the parties, pending a decision of the Court, and presupposes that irreparable prejudice shall not be caused to rights which are the subject of a dispute in judicial proceedings; that it follows that the Court must be concerned to preserve by such measures the rights which may subsequently be adjudged by the Court to belong either to the Applicant, or to the Respondent; and that such measures are only justified if there is urgency.

The Court then refers to the fact that the execution of Mr. Breard is ordered for 14 April 1998; and finds that such an execution would render it impossible for the Court to order the relief that Paraguay seeks and thus cause irreparable harm to the rights it claims.

In doing so the Court observes that the issues before it do not concern the entitlement of the federal states within the United States to resort to the death penalty for the most heinous crimes, and that, further, the function of the Court is to resolve international legal disputes between States, inter alia when they arise out of the interpretation or application of international conventions, and not to act as a court of criminal appeal.

In the light of the above considerations, the Court finds that the circumstances require it to indicate, as a matter of urgency, provisional measures as provided by Article 41 of its Statute.

*Declaration of President Schwebel*

I have voted for the Order, but with disquiet. The sensitive issues it poses have been hastily, if ably, argued. The evidence introduced is bare. The Court's consideration of the issues of law and fact, in the circumstances imposed upon it, has been summary. The United States maintains that no State has ever before claimed as Paraguay now does that, because of lack of consular access under the Vienna Convention on Consular Relations, the results of a trial, conviction, and appeal should be voided. Not only has the United States apologized to Paraguay for the unintentional failure of notification to Paraguay's consul of the arrest and trial of the accused, but it has taken substantial steps to strengthen what appears to be a practice in the United States of variable compliance with the obligations imposed upon it by the Vienna Convention.

All this said, I have voted for the Order indicating provisional measures suggested pursuant to Article 41 of the Statute of the Court. Those measures ought to be taken to preserve the rights of Paraguay in a situation of incontestable urgency.

I have so voted essentially for these reasons. There is an admitted failure by the Commonwealth of Virginia to have afforded Paraguay timely consular access, that is to say, there is an admitted breach of treaty. An apology and Federal provision for avoidance of future such lapses does not assist the accused, who Paraguay alleges was or may have been prejudiced by lack of consular access, a question which is for the merits. It is of obvious importance to the maintenance and development of a rule of law among States that the obligations imposed by treaties be complied with and that, where they are not, reparation be required. The mutuality of interest of States in the effective observance of the obligations of the Vienna Convention on Consular Relations is the greater in the intermixed global community of today and tomorrow (and the citizens of no State have a higher interest in the observance of those obligations than the peripatetic citizens of the United States). In my view, these considerations outweigh the serious difficulties which this Order imposes on the authorities of the United States and Virginia.

*Declaration of Judge Oda*

1. I voted in favour of the Court's Order with great hesitation as I believed and I still believe that the request for the indication of provisional measures of protection submitted by Paraguay to the Court should have been dismissed. However, in the limited time — one or two days — given to the Court to deal with this matter, I have found it impossible to develop my points sufficiently to persuade my colleagues to alter their position.

2. First of all, I would like to express some of my thoughts in connection with this request.

I can, on humanitarian grounds, understand the plight of Mr. Breard and recognize that owing to the fact that Paraguay filed this request on 3 April 1998, his fate now, albeit unreasonably, lies in the hands of the Court.

31

I would like to add, however, that, if Mr. Breard's rights as they relate to humanitarian issues are to be respected then, in parallel, the matter of the rights of victims of violent crime (a point which has often been overlooked) should be taken into consideration. It should also be noted that since his arrest, Mr. Breard has been treated fairly in all legal proceedings within the American judicial system governed by the rule of law.

The Court cannot act as a court of criminal appeal and cannot be petitioned for writs of *habeas corpus*. The Court does not have jurisdiction to decide matters relating to capital punishment and its execution, and should not intervene in such matters.

* *

3. As stated earlier, Paraguay's request was presented to the Court on 3 April 1998 in connection with and at the same time as its Application instituting proceedings against the United States for violations of the 1963 Vienna Convention on Consular Relations. Paraguay's Application was unilaterally submitted to the Court on the basis of the Optional Protocol. I very much doubt that, on the date of filing of the Application and the request, there was any "dispute[s] arising out of the interpretation or application of the [Vienna] Convention" (Optional Protocol, Article I).

If there was any dispute between Paraguay and the United States concerning the interpretation or application of the Vienna Convention, it could have been that the United States was presumed to have violated the Convention at the time of the arrest of Mr. Breard in 1992, as the United States did not inform the Paraguayan consul of that event.

This issue was raised by Paraguay when it became aware of Mr. Breard's situation. In 1996, negotiations took place between Paraguay and the United States concerning the consular function provided for under the Convention. In July 1997, the United States proceeded to remedy the violation by sending a letter to the Government of Paraguay apologizing for its failure to inform the consul of the events concerning Mr. Breard and giving an assurance that this failure would not be repeated in future. In my view, the United States was thus released from its responsibility for violation of the Vienna Convention.

From that time, the question of violation of the Vienna Convention, which may have led to a dispute concerning its application and interpretation, no longer existed. However, this question was raised once more on 3 April 1998, the date on which Paraguay's Application was filed.

4. What did Paraguay ask the Court to decide in its Application of 3 April 1998? Paraguay asked mainly for a decision relating to Mr. Breard's personal situation, namely, his pending execution by the competent authorities of the State of Virginia.

Paraguay requested *restitutio in integrum*. However, if consular contact had occurred at the time of Mr. Breard's arrest or detention, the judicial procedure in the United States domestic courts relating to his case would have been no different. This point was clarified in the course of the oral pleadings.

* *

5. I would like to turn to some general issues relating to provisional measures. First, as a general rule, provisional measures are granted in order to preserve *rights* exposed to imminent breach which is irreparable and these *rights* must be those to be considered at the merits stage of the case, and must constitute the subject matter of the Application or be directly related to it. In this case, however, there is no question of such *rights* (of States parties), as provided for by the Vienna Convention, being exposed to an imminent irreparable breach.

6. Secondly, in order that provisional measures may be granted by the Court, the Court has to have, at the very least, prima facie jurisdiction to deal with the issues concerning the *rights* of the States parties. However I believe that, as regards the present request for provisional measures, the Court does not even have prima facie jurisdiction to handle this matter.

7. Thirdly, if the request in the present case had not been granted, the Application itself would have become meaningless. If that had been the case, then I would have had no hesitation in pointing out that the request for provisional measures should not be used to ensure that the main Application continue. In addition the request for provisional measures should not be used by applicants for the purpose of obtaining interim judgments that would affirm their own rights and predetermine the main case.

8. I have thus explained why I formed the view that, given the fundamental nature of provisional measures, those measures should not have been indicated upon Paraguay's request.

I reiterate, however, that I voted in favour of the Order, for humanitarian reasons, and in view of the fact that, if the execution were to be carried out on 14 April 1998, whatever findings the Court might have reached might be without object.

### Declaration of Judge Koroma

My decision to vote in favour of the Order granting the interim measures of protection in this matter was reached only after careful consideration and in the light of the urgency and exceptional circumstances of this case. Torn as I was between the need to observe the requirements for granting provisional measures of protection under Article 41 of the Statute of the Court, thereby ensuring that whatever decision the Court might reach should not be devoid of object, and the need for the Court to comply with its jurisdiction to settle disputes between States which, in my view, includes respect for the sovereignty of a State in relation to its criminal justice system.

It was, therefore, both propitious and appropriate for the Court to bear in mind its mission which is to decide disputes between States, and not to act as a universal supreme court of criminal appeal. On the other hand, it is equally true that the Court's function is to decide disputes between States which are submitted to it in accordance with international

32

law, applying international conventions, etc. The Order, in my judgement, complies with these requirements.

Paraguay's Application, filed on 3 April 1998 instituting proceedings against the United States for purported violations of the 1963 Vienna Convention on Consular Relations, inter alia, requested the Court to grant provisional measures of protection under Article 41 of the Statute so as to protect its rights and the right of one of its nationals who had been convicted of a capital offence committed in the United States and sentenced to death.

The purpose of a request for provisional measures is to preserve as well as to safeguard the rights of the parties that are in dispute, especially when such rights or subject matter of the dispute could be irretrievably or irreparably destroyed thereby rendering the Court's decision ineffective or without object. It is in the light of such circumstances that the Court has found it necessary to indicate interim measures of protection with the aim of preserving the respective rights of either party to the dispute. But prior to this, the applicant State has the burden of indicating that prima facie, the Court has jurisdiction.

When the facts presented were considered by the Court in the light of the Vienna Convention on Consular Relations, in particular in relation to its Articles 5 and 36, and Article I of the Optional Protocol concerning the Compulsory Settlement of Disputes of 24 April 1963, the Court reached the correct conclusion that a dispute existed and that its jurisdiction had been established prima facie.

In my view, in granting this Order, the Court met the requirements set out in Article 41 of the Statute, whilst at the same time the Order preserves the respective rights of either Party — Paraguay and the United States. The Order called for the suspension of the sentence of execution of Mr. Breard on 14 April 1998, thereby preserving his right to life pending the final decision of the Court on this matter, and also recognized the United States' criminal sovereignty in matters such as charging, trying, convicting and sentencing suspects as appropriate, within the United States or its jurisdiction. I concur with this finding.

In reaching this decision, the Court has also acted with the necessary judicial prudence in considering a request for interim measures of protection, in that it should not deal with issues which are not immediately relevant for the protection of the respective rights of either party or which are for the merits. It also thus, once again confirmed its consistent jurisprudence that a provisional measure of protection should only be granted where it is indispensable and necessary for the preservation of the respective rights of either party and only with circumspection. It was in the light of the foregoing consideration, that I joined the Court in granting the request under Article 41 of the Statute.