# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

NEXTERA ENERGY GLOBAL HOLDINGS
B.V. *and* NEXTERA ENERGY SPAIN
HOLDINGS B.V.,

               Petitioners,

     v.

KINGDOM OF SPAIN,

               Respondent.

</td><td>

No. 1:19-cv-01618-TSC

</td></tr>
</table>

## THE KINGDOM OF SPAIN'S REPLY MEMORANDUM IN SUPPORT OF ITS
## RENEWED MOTION TO DISMISS THE PETITION

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.      THERE CAN BE NO DISPUTE THAT *KOMSTROY* HOLDS THAT THERE IS
        NO ARBITRATION AGREEMENT BETWEEN PETITIONERS AND SPAIN ............ 3

II.     DISMISSAL IS WARRANTED ON *FORUM NON CONVENIENS* GROUNDS............ 4

III.    IF THE COURT DOES NOT DISMISS FOR *FORUM NON CONVENIENS*,
        THE COURT MUST DETERMINE WHETHER THERE IS A VALID
        ARBITRATION AGREEMENT BETWEEN PETITIONERS AND SPAIN IN
        ORDER TO DETERMINE WHETHER IT HAS JURISDICTION UNDER THE
        FSIA ................................................................................................................ 12

        A.      A Valid Arbitration Agreement Is Required To Support Arbitration
                Exception Jurisdiction............................................................................. 12

        B.      A Valid Arbitration Agreement Is Required To Support Waiver Exception
                Jurisdiction............................................................................................. 15

IV.     THE FSIA NOT ONLY PERMITS, BUT IT MANDATES, THAT THE COURT
        DETERMINE WHETHER THERE IS A VALID ARBITRATION
        AGREEMENT BETWEEN PETITIONERS AND SPAIN, AND THE ICSID
        CONVENTION DOES NOT ALTER THIS LANDSCAPE ............................................ 17

        A.      Contrary to NextEra's Argument, Controlling Precedent Does Not Hold
                That The Court Must Automatically Confirm The Award Without
                Determining Whether A Valid Arbitration Agreement Exists—It Holds
                That Courts Should Not Merely Rubber Stamp ICSID Awards.......................... 17

        B.      The ICSID Tribunal and Annulment Committee's Jurisdictional
                Conclusions Are Not Res Judicata............................................................ 24

        C.      The ICSID Convention Does Not Displace the EU Treaties and the
                CJEU's Interpretation of the EU Treaties in *Achmea* and *Komstroy*: EU
                Law Is Public International Law That Applies To the Issues Here and
                Renders The Purported Agreement To Arbitrate Invalid Since It Conflicts
                With the EU Treaties ............................................................................... 25

V.      VARIOUS OTHER LEGAL PRINCIPLES SUPPORT DISMISSAL OF THIS
        CASE .............................................................................................................. 28

        A.      Comity Supports Dismissal...................................................................... 28

        B.      The Act of State Doctrine Supports Dismissal of the Action .......................... 29

C.    The Doctrine of Foreign Sovereign Compulsion Supports Dismissal.................. 30

D.    The Fact That The Award Is Not Entitled to Full Faith and Credit Supports
        Dismissal............................................................................................................. 31

CONCLUSION.................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash over Southern Indian Ocean*,
   352 F.Supp.3d 19 (D.D.C. 2018) .........................................................................4

*In re Air Crash Over Southern Indian Ocean*,
   946 F.3d 607 (D.C. Cir. 2020) ....................................................................10, 11

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   5 F. Supp. 3d 25 (D.D.C. 2013) *aff'd* 794 F.3d 99 (D.C. Cir. 2015) ...................20

*BG Group, PLC v. Republic of Argentina,*
   572 U.S. 25 (2014) ............................................................................................22

*Blue Ridge Invs. L.L.C. v. Republic of Argentina*,
   735 F.3d 72 (2d Cir. 2013) ................................................................................12

*Buckeye Check Cashing Inc. v. Cardegna*,
   546 U.S. 440 (2006) ..........................................................................................20

*Chevron Corp. v. Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015) ....................................................................18, 19

*Chevron Corp. v. Ecuador*,
   949 F.Supp.2d 57, 63 (D.D.C. 2013) ..........................................................24, 25

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
   960 F.3d 549 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 1735 (2021) .....................26

*Davis v. Chevy Chase Fin. Ltd.*,
   667 F.2d 160 (D.C. Cir. 1981) ...........................................................................21

*Eric T. v. National Medical Enterprises, Inc.*,
   700 A.2d 749 ......................................................................................................6

*European Cmty. v. RJR Nabisco Inc.*,
   764 F.3d 129 (2d Cir. 2014), *rev'd on other grounds* 136 S. Ct. 2090 (2016) ......31

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
   665 F.3d 384 (2d Cir. 2011).........................................................................5, 8, 9

*Green Power Partners v. The Kingdom of Spain*,
   SCC V2016/135 ...........................................................................................2, 27

iii

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ............................................................................. *passim*

*Irwin v. World Wildlife Fund, Inc.*,
  448 F. Supp. 2d 29 (D.D.C. 2006) .........................................................6

*Knick v. Twp. of Scott Pa.*,
  139 S.Ct. 2162 (2019) ............................................................................21

*LLC SPC Stileks v. Republic of Moldova*,
  985 F.3d 871 (D.C. Cir. 2021) ...........................................................9, 15

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
  397 F. Supp. 3d 34 (D.D.C. 2019) .........................................................8

*In re Maxwell Commc'n Corp. plc by Homan*,
  93 F.3d at 1048 .................................................................................28, 29

*MBI Grp. Inc. v. Credit Foncier du Cameroun*,
  558 F. Supp. 2d 21 (D.D.C. 2008) .......................................................7, 9

*Micula v. Gov't of Romania*,
  404 F. Supp. 3d 265 (D.D.C. 2019) (appeal docketed) ................. *passim*

*Mobil Cerro Negro Limited v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017) ................................................................. *passim*

*Monegasque De Reassurance S.A.M. v. Nak Naftogaz of Ukraine*,
  311 F.3d 488 (2d Cir. 2002) ...................................................................6

*Nygard v. DiPaolo*,
  753 F. App'x 716 (11th Cir. 2018) .........................................................7

*O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*,
  830 F.2d 449 (2d Cir. 1987) .................................................................31

*Phoenix Consulting Inc. v. Republic of Angola*,
  216 F.3d 36 (D.C. Cir. 2000) ...............................................................13

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................4, 6

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
  27 F.4th 771 (D.C. Cir. 2022) ...........................................................14, 15

*RDP Techs., Inc. v. Cambi AS*,
  800 F. Supp. 2d 127 (D.D.C. 2011) ......................................................20

iv

*Simon v. Republic of Hungary*,
   911 F.3d 1172 (D.C. Cir. 2018) ....................................................................................10, 11

*Sinochem Intern. Co. v. Malaysia Intern. Shipping Co.*,
   549 U.S. 422 (2007) ...................................................................................................4, 9

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of
   Iowa*,
   482 U.S. 522 (1987) .........................................................................................................28

*Stati v. Republic of Kazakhstan*,
   199 F. Supp. 3d 179 (D.D.C. 2016) .................................................................................13

*Stromberg v. Marriot Intern., Inc.*
   474 F. Supp. 2d 57 (D.D.C. 2007) .....................................................................................7

*Tatneft v. Ukraine*,
   301 F. Supp. 3d 175 (D.D.C. 2018) .............................................................................9, 16

*Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*,
   421 F. Supp. 2d 87 (D.D.C. 2006), *aff'd sub nom. TermoRio S.A. E.S.P. v.
   Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007)........................................................4, 5, 6, 8

*Tethyan Copper Company Pty Limited v. Islamic Republic of Pakistan*,
   2022 WL 715215 ........................................................................................................22, 24

*Tidewater Investment SRL v. Bolivarian Republic of Venezuela*,
   No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ...............17, 18, 24, 25

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*,
   411 F.3d 296 (D.C. Cir. 2005) ..........................................................................9, 10, 11, 12

*Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar.
   Ass'n*,
   455 U.S. 691 (1982)....................................................................................................25, 31

*V.L. v. E.L.*,
   577 U.S. 404 (2016).........................................................................................................32

*In re Vitamins Antitrust Litig.*,
   No. 99-197TFH, 2001 WL 1049433 (D.D.C. June 20, 2001) .............................................31

*Wamai v. Indus. Bank of Korea*,
   No. 21CV325 (DLC), 2021 WL 3038402 (S.D.N.Y. July 14, 2021) (appeal
   pending) ...........................................................................................................................8

*William Charles Constr. Co. LLC v. Teamsters Local Union 627*,
   827 F.3d 672 (7th Cir. 2016) .............................................................................................21

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
   296 F.3d 1154 (D.C. Cir. 2002) ...........................................................29

**Statutes**

Federal Arbitration Act ..........................................................................6

**Other Authorities**

*Declaration of the Representatives of the Governments of the Member States on
   the Legal Consequences of the Judgment of the Court of Justice in Achmea
   and on Investment Protection in the European Union* 1-2 (Jan. 15, 2019) ...........................7

European Commission Decision 2017/7384 .............................................31

*International Arbitration Law Library*, Volume 19 [Mistelis and Brekoulakis]..........................20

*Republic of Moldova v. Komstroy*, Case C-741/19............................................. *passim*

*Slovak Republic v. Achmea B.V.,* (Case C-284/16) ............................................. *passim*

## INTRODUCTION

Since the time Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (collectively, "NextEra") filed the Petition in 2019, the legal landscape relevant to this case has changed significantly.   In 2019, NextEra argued that the CJEU's *Achmea* decision and the principles set out therein did not apply to the Energy Charter Treaty ("ECT"), and had nothing to do with the Petition and issues before this Court.   However, on September 2, 2021 in *Republic of Moldova v. Komstroy*, Case C-741/19, the Court of Justice of the European Union ("CJEU") weighed in on that very question and resolved it in Spain's favor.   The CJEU, Europe's highest court, held in *Komstroy* that *Achmea* and the principles of primacy and autonomy of EU law apply equally to multilateral treaties such as the ECT, and that the purported arbitration agreement contained in Article 26 of the ECT is not—and never was—a valid agreement or offer to arbitrate between citizens of the EU and EU Member States.   *See Komstroy* (DE 62-67).

As a result, NextEra has been forced into the unprecedented position of urging this Court to simply disregard *Komstroy* and rule in NextEra's favor anyway.   There is no precedent to support this extreme request, and thus NextEra has pivoted to a few novel arguments.   First, NextEra tries to avoid the question altogether, arguing that this Court should rubber stamp the arbitral award, and ignore *Achmea*, *Komstroy*, and the issue of whether an arbitration agreement exits.   NextEra's strategy is well-calculated since it would appear highly unlikely that the Court would find it appropriate to overrule the EU's highest court on this issue if the Court were to consider the argument.   This is because unless the Court dismisses for *forum non conveniens*, it must determine whether a valid agreement to arbitrate exists in order to determine whether Spain is amenable to suit in this case under the FSIA, and the European Union's highest court has ruled intra-EU investment arbitration under the ECT is incompatible with EU law.   Acknowledging this

shortcoming, NextEra further seeks to explain with the help of Professor Bermann why *Komstroy* was wrongly decided, and in doing so NextEra in fact does in the end urge this Court to in essence overrule *Komstroy*.   Such an outcome would be highly unprecedented and violate numerous well-established principles of law, and upset notions of international comity.

In fact, while NextEra emphatically points out that no international investment tribunal ever upheld the intra-EU objection, just a few week ago a highly respected panel of international investment arbitrators in *Green Power Partners v. The Kingdom of Spain*, SCC V2016/135, dismissed the case for lack of jurisdiction due to an intra-EU objection, finding that no valid arbitration agreement exists under *Komstroy*.   Reply Declaration of Professor Dr. Hindelang dated June 29, 2022 ("Hindelang Reply Decl."), Ex. 78.   Further, the Energy Charter Conference has very recently confirmed that its member states have reached an agreement in principle regarding a revised text of the ECT which would further clarify that the arbitration provisions therein **do not** apply to intra-EU disputes.[1]

The result demanded here is clear.   <u>First</u>, the place to decide whether there is an arbitration agreement between Petitioners and Spain is not here in the United States.   Petitioners are EU citizens, and Spain is an EU Member State, and the underlying issue involves the international relationship and relations (*inter se*) of EU Member States, and the effect of that relationship on Article 26 of the ECT.   Contrary to the (likely inadvertent) misstatement in Professor Bermann's expert report (DE 68-1, ¶ 3), the United States **is not** a Contracting Party to the ECT either.   The EU is undeniably at the center of this dispute.   Petitioners can and should go back to Europe where this dispute should be properly be decided—and has effectively already been decided—and the

---

[1] *See* Article of June 24, 2022, available at https://www.iareporter.com/articles/breaking-parties-reach-agreement-in-principle-on-modernizing-energy-charter-treaty-including-carve-outs-for-fossil-fuels-and-intra-eu-disputes-stricter-definitions-and-standards-of-protection-and/.

Court should dismiss for *forum non conveniens*.

     <u>Second</u>, in the alternative, if the Court does not dismiss for *forum non conveniens*, then the Court should dismiss because of Spain's foreign sovereign immunity.   Only limited bases exist to exert jurisdiction over Spain under the FSIA, and to determine whether jurisdiction exists under the FSIA this Court must decide whether there is an agreement to arbitrate between the parties. In doing so, the Court must apply *Komstroy*, the effect of which cannot be denied: the Court must find that there is no valid arbitration agreement between the parties, and therefore there is no jurisdiction under the FSIA.   Thus, the inescapable conclusion from applying *Komstroy* here is that no jurisdiction exists over Spain under the FSIA.   The principle of comity, as well as other important principles promoting the respect of and deference to foreign law and judicial decisions, fully support this result.

## **ARGUMENT**

### I.    **THERE CAN BE NO DISPUTE THAT *KOMSTROY* HOLDS THAT THERE IS NO ARBITRATION AGREEMENT BETWEEN PETITIONERS AND SPAIN**

     As Professor Bermann makes clear (DE 68-1, ¶ 62), he and NextEra agree with Dr. Hindelang and Spain's reports on the holdings of *Achmea* and *Komstroy*.   In fact, it is admitted that Professor Dr. Hindelang "accurately sets out the CJEU's understanding" on these matters, "including the *Achmea* and the *Komstroy* decisions."   *Id*.

     Thus, there is no doubt that the CJEU, applying *Achmea* and *Komstroy* in this case, would find that no arbitration agreement exists between Petitioners and Spain, and would decline to enforce the Award.   This is because disputes between an EU Member State and an investor from another EU Member State to be referred to arbitration would violate Articles 267 and 344 of the Treaty on the Functioning of the European Union ("TFEU").   *See Achmea*, ¶¶ 58-59 (Exhibit 46); *Komstroy*, ¶ 63 (Exhibit 66).

Thus, if the Court respects and gives effect to *Achmea* and *Komstroy* here, it is undisputed that it should find that Article 26 of the ECT does not contain a valid offer by Spain to arbitrate disputes with citizens of other EU Member States, such as NextEra.  In other words, under *Achmea* and *Komstroy*, there is no valid arbitration agreement between the Petitioners and Spain and the Court should either (i) dismiss the case on *forum non conveniens* grounds so that NextEra can seek a decision from the EU Courts on its case or (ii) dismiss the case for lack of jurisdiction.

## II.    DISMISSAL IS WARRANTED ON *FORUM NON CONVENIENS* GROUNDS

Here, dismissal based on *forum non conveniens* grounds is prudent and prevents the Court from needlessly entangling itself in this European-centered dispute.  In *Sinochem Int'l. Co. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422 (2007), the Supreme Court explained "a district court has discretion to respond at once to a defendant's *forum non conveniens*" argument and order dismissal.  *Sinochem*, 549 U.S. at 423.  In *Termorio*, the D.C. District Court applied a two-part test, first outlined in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), to determine whether *forum non conveniens* was a basis for dismissal.  First, the party seeking dismissal must show that "an adequate alternative forum exists." *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 103 (D.D.C. 2006), *aff'd sub nom. TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007).  Second, if the party seeking dismissal is able to meet that burden, the court then weighs the relevant public and private factors in favor and against litigation in either forum.  *Id*.

As to the first prong of the two-part test, a "foreign forum is available and adequate when it provides the plaintiff with some remedy, even if the damages available to the plaintiff would be less than those available in the United States, and even if certain theories of liability are not recognized."  *In re Air Crash over Southern Indian Ocean*, 352 F.Supp.3d 19, 36 (D.D.C. 2018) (citations omitted); *see also Piper Aircraft*, 454 U.S. 235, 254 n.22 (1981) (stating that a forum is

only inadequate "[i]n rare circumstances ... where the remedy offered by the other forum is clearly unsatisfactory," such as "where the alternative forum does not permit litigation of the subject matter of the dispute").

NextEra unconvincingly argues that no alternative fora exist, even though as explained below, alternative fora exist in Spain (the situs of the relevant events), the Netherlands (NextEra's home country), or other Contracting States where the judgment could be enforced. *See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011) ("Where adequacy of an alternative forum is assessed in the context of a suit to obtain a judgement and ultimately execution on a defendant's assets, the adequacy of the alternate forum depends on whether there are some assets of the defendant in the alternate forum, not whether the precise asset located here can be executed upon there."). There is no basis for NextEra to claim these fora are "clearly unsatisfactory."

The second prong of the two-part test also favors dismissal on *forum non conveniens* grounds. Courts consider private parties' concerns, such as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Termorio*, 421 F.Supp.2d at 103-04 (citation omitted). Public interest factors to consider include:

> the administrative difficulties flowing from court congestion; 'the local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [and] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law... *Termorio*, 421 F. Supp. 2d at 104 (citation omitted).

In this case, both public and private factors clearly favor dismissal in favor of Spain, the Netherlands, or another Contracting State. Neither party has any connection to the District of

Columbia (or the United States), which significantly diminishes the significance of NextEra's choice of forum. *See, e.g., Piper Aircraft*, 454 U.S. at 255; *Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 33 (D.D.C. 2006) ("[P]laintiff's choice of forum . . . is entitled to less deference if she is a citizen and resident of a foreign state."). The Petitioners are from Europe, the Respondent is from Europe, and all of the witnesses and experts on European law and its interaction with other international law are in Europe. NextEra's choice of forum is entitled to even less weight where NextEra is clearly engaged in forum shopping. *In re Arbitration between Monegasque De Reassurance S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 498 (2d Cir. 2002) (affirming motion to dismiss enforcement action on *forum non conveniens* grounds and stating "the more it appears that the [petitioner's] choice of a U.S. forum was motivated by forum-shopping reasons—such as ... the inconvenience and expense to the [respondent] resulting from litigation in that forum—the less deference the [petitioner's] choice commands, and, consequently, the easier it becomes for the [respondent] to succeed on a *forum non conveniens* motion by showing that convenience would better be served by litigating in another country's courts.") (citation omitted); *Eric T. v. National Medical Enterprises, Inc.*, 700 A.2d 749, 755 (D.C. 1997) ("One of the purposes of the doctrine of *forum non conveniens* is to avoid forum-shopping.") (citation omitted). NextEra's forum shopping is transparent in the instant litigation, where NextEra's (dubious) ability to enforce its award in the United States is the only connection between the parties and the United States, and where it knows that it is virtually certain that a European court would decline to enforce the award.

In addition, litigating in Spain, the Netherlands, or another Contracting State in Europe avoids "unnecessary problems in conflict of laws, or in the application of foreign law." *Termorio*, F.Supp.2d at 104. Determining whether Spain and NextEra agreed to arbitrate this dispute in the

ECT would require the Court to untangle multiple treaty obligations, including several EU treaties and laws, CJEU opinions, and the *Achmea* and *Komstroy* decisions.   EU-based courts are far better suited to interpret these questions of European laws, and can refer questions to the CJEU.   *See MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21, 35 (D.D.C. 2008) (finding lack of familiarity with Cameroonian law weighs heavily in favor of dismissal); *Stromberg v. Marriot Int'l, Inc.* 474 F. Supp. 2d 57, 63 (D.D.C. 2007), *aff'd*, 256 F. App'x 359 (D.C. Cir. 2007) (finding Mexico was far better suited to apply Mexican law.   In addition, last week, it was reported that the Member States to the Energy Charter Conference reached an agreement in principle regarding a revised text of the ECT which would further clarify that the arbitration provisions in the ECT **do not** apply to intra-EU disputes.[2]   EU courts are far better equipped to handle these swiftly developing and complicated issues.

Finally, principles of comity also support dismissal.   "[T]he possibility of inconsistent rulings with foreign countries raises international comity concerns that should be considered in the *forum non conveniens* analysis."   *Nygard v. DiPaolo*, 753 F. App'x 716, 728 (11th Cir. 2018) (affirming the district court's decision to dismiss for *forum non conveniens*).   Here, both the CJEU and Germany's high court have ruled that no valid arbitration agreement exists under a bilateral investment treaty, and twenty-two EU Member States have declared that the same result holds for multilateral investment treaties such as the ECT.   *Declaration of the Representatives of the Governments of the Member States on the Legal Consequences of the Judgment of the Court of Justice in Achmea and on Investment Protection in the European Union* 1-2 (Jan. 15, 2019) (DE 62-53).   In addition, the CJEU in *Komstroy* has confirmed that no valid arbitration agreement exists in the ECT and that the principles of *Achmea* apply equally to the ECT.   To allow NextEra to seek an

---

2 *See* https://policy.trade.ec.europa.eu/news/agreement-principle-reached-modernised-energy-charter-treaty-2022-06-24_en.

inconsistent ruling from this Court, when an EU court has already adjudicated these issues, would violate settled expectations of international comity. *See Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 40 (D.D.C. 2019) ("These considerations of comity are particularly resonant here, given that resolving this case mandates addressing a conflict between decades-old treaties and newly minted EU case law. The Court is loath to wade into this territory unnecessarily."). This Court should dismiss the action and defer to the EU courts, which have a compelling interest in interpreting and applying their treaties and their laws.

NextEra seeks to elide Spain's *forum non conveniens* argument altogether by claiming that the D.C. Circuit has ruled that an enforcement proceeding may not be dismissed on the grounds of *forum non conveniens* under any circumstances. As an initial matter, at least one District Court in this Circuit has found that a court may dismiss a case on the grounds of *forum non conveniens* in a proceeding to confirm a foreign arbitral award. *See Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 103–04 (D.D.C. 2006), *aff'd sub nom. TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007). At least one other Circuit has found that *forum non conveniens* arguments may be entertained in cases filed to enforce an arbitral award. *See Figueiredo Ferraz E Engerharia de Projeto Ltda. V. Republic of Peru*, 655 F.3d 384, 390 (2d Cir. 2011) ("Where adequacy of an alternative forum is assessed in the context of a suit to obtain a judgement and ultimately execution on a defendant's assets, the adequacy of the alternate forum depends on whether there are some assets of the defendant in the alternate forum, not whether the precise asset located here can be executed upon there."); *see also Wamai v. Indus. Bank of Korea*, No. 21CV325 (DLC), 2021 WL 3038402, at *5 (S.D.N.Y. July 14, 2021), *appeal filed*, No. 21-1956 (2d Cir. Aug. 21, 2021) (conditionally dismissing complaint and ordering defendant to accept service and waive jurisdictional defenses in South Korea).

NextEra relies primarily on three cases for its argument that dismissal under *forum non conveniens* is not available in a proceeding to enforce an arbitral award. *See* Opposition Brief at 38 (citing *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 303 (D.C. Cir. 2005); *Tatneft v. Ukr.*, 21 F.4th 829, 840 (D.C. Cir. 2021); *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 (D.C. Cir. 2021)). As explained in Spain's Opening Brief, these cases are distinguishable, and do not stand for the broad propositions that NextEra claims. In all three cases, the court determined that it had jurisdiction under the FSIA via the Arbitration Exception to foreign sovereign immunity before addressing *forum non conveniens*. NextEra's expansive reading of those three cases would permit a party holding an arbitral award to bypass any *forum non conveniens* dismissal so long as they alleged they fell under the Arbitration Exception, no matter how frivolous it was. This broad ruling would bypass *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422 (2007) as well as other precedent which found that a Court can immediately respond to a *forum non conveniens* argument without needing to resolve subject matter and person jurisdiction. *See MBI Grp. Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21 (D.D.C. 2008) ("[A] court may dismiss a case [against a foreign sovereign] on the basis of *forum non conveniens* in lieu of addressing questions of subject matter and personal jurisdiction…") *aff'd*, 616 F.3d 568 (D.C. Cir. 2010).

Likewise, NextEra cites no authority to explain why *forum non conveniens* would never be appropriate in a case to enforce an arbitral award, and indeed ignores cases such as *Figuieredo* which expressly found the opposite. *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 390 (2d Cir. 2011) ("It is no doubt true that only a United States court may attach a defendant's particular assets located here, but that circumstance cannot render

a foreign forum inadequate. If it could, every suit having the ultimate objective of executing upon assets located in this country could never be dismissed because of FNC.").

While NextEra portrays its *forum non conveniens* argument as fully settled (and uncomplicated) law, the *forum non conveniens* holding that NextEra requests presents an issue of first impression in this Circuit.  NextEra purports that *TMR* and its progeny stand for the proposition that "the doctrine of *forum non conveniens* is inapplicable to actions in the United States to enforce arbitral awards against foreign states" solely because "[n]o alternative forum is adequate: only a U.S. court may attach U.S. assets."  Opp. Br. at 40.  This is simply incorrect. Indeed, the D.C. Circuit has, on at least two separate occasions **since *TMR*,** reiterated that *forum non conveniens* dismissal of a suit that would potentially authorize the attachment of US assets is appropriate. *See Simon v. Republic of Hungary*, 911 F.3d 1172, 1182 (D.C. Cir. 2018); *In re Air Crash Over Southern Indian Ocean*, 946 F.3d 607 (D.C. Cir. 2020). Accordingly, *TMR* fits within established jurisprudence in holding that, **once FSIA jurisdiction over a sovereign has been established**, *forum non conveniens* dismissal is not permitted.  It therefore has no relevance to Spain's request here, which seeks *forum non conveniens* dismissal because there is no valid agreement to arbitrate and, thus, no jurisdiction under the FSIA.

By way of background, and as Spain has highlighted before, the *TMR* defendant did "not dispute that [the] case [came] within . . . the [arbitration] exception."  *TMR,* 411 F.3d at 299. Accordingly, the sovereign conceded that: 1) the court had jurisdiction under the FSIA; and 2) the court could attach the sovereign's U.S. assets because a FSIA attachment exception existed.  It was in that specific context that the court affirmed the district court's refusal to dismiss "[b]ecause there is no other forum in which TMR could reach the [sovereign's] property, if any."  *Id.* at 304.

Post-*TMR* guidance from the D.C. Circuit is in accord with Spain's position.    In 2018, the court reiterated that "[f]orum non conveniens predates the FSIA by centuries, and it was an embedded principle of the common-law jurisprudential backdrop against which the FSIA was written." *Simon v. Republic of Hungary*, 911 F.3d 1172, 1182 (D.C. Cir. 2018) *vacated and remanded*, 141 S. Ct. 691 (2021).    The *Simon* plaintiff alleged, among other things, violations of international law, which would trigger the jurisdictional and attachment exceptions of the FSIA. *See id.* at 1178-79.    Nevertheless, the D.C. Circuit affirmed that a court could dismiss on *forum non conveniens* grounds **before** ruling on jurisdiction under FSIA.    *See id.* at 1181-82.

Spain detailed the significance of *Simon* in its Motion to Dismiss at pp. 26-27.    NextEra's only response appears in footnote 35, wherein NextEra alleges that *Simon* is "largely irrelevant" because it did not deal with an arbitration award.    This misses the point entirely.    In *Simon*, the D.C. Circuit unambiguously held that district courts can dismiss cases *forum non conveniens* before ruling on FSIA jurisdiction even where the ultimate remedy might include the attachment of U.S. assets.    This directly precludes NextEra's requested expansion of *TMR*.

In fact, the D.C. Circuit once again confirmed the availability of *forum non conveniens* before ruling on FSIA jurisdiction in 2020.    *See In re Air Crash Over Southern Indian Ocean* 946 F.3d 607 (D.C. Cir. 2020).    The court reiterated that "[n]othing . . . requires district courts to conclusively determine whether a defendant enjoys sovereign immunity before considering immunity as a relevant factor in its *forum non conveniens* analysis."    *Id.* at 614-15.    The court noted that the parties raised complex arguments regarding immunity, and then held that "it was entirely proper for the district court to recognize that serious jurisdictional questions exist and weigh that as a factor in favor of dismissal."    *Id.* at 615.    Most importantly, the court found Malaysia to be an adequate forum, despite the fact that the plaintiffs would not be able to attach

assets located in the United States. *Id.* Even post-*TMR*, then, the law is clear: nothing requires courts to determine FSIA jurisdiction before ruling on *forum non conveniens*, and nothing prevents courts from utilizing *forum non conveniens* before FSIA jurisdiction has been established.

III.    **IF THE COURT DOES NOT DISMISS FOR *FORUM NON CONVENIENS*, THE COURT MUST DETERMINE WHETHER THERE IS A VALID ARBITRATION AGREEMENT BETWEEN PETITIONERS AND SPAIN IN ORDER TO DETERMINE WHETHER IT HAS JURISDICTION UNDER THE FSIA**

In Section I of its Opposition Brief, NextEra argues that "FSIA subject matter jurisdiction is plainly established;" however, in reality, NextEra craftily uses its arguments on the Arbitration Exception and the Waiver Exception to try to make a different point: that the Court need not examine whether there is a valid arbitration agreement between the parties in order to find that it has jurisdiction under the FSIA. This argument has no basis in the law and defies logic and credibility. The Court must support any finding of jurisdiction under the FSIA with a finding that there is a valid arbitration agreement.

A.    **A Valid Arbitration Agreement Is Required To Support Arbitration Exception Jurisdiction**

NextEra's argument that a valid arbitration agreement is not required to support the Court's jurisdiction under the Arbitration Exception is entirely circular and meritless. In essence, Petitioner claims that if an ICSID Award exists, then jurisdiction exists under the Arbitration Exception. This argument contravenes well-established law and the analysis performed in this Circuit.

First, citing to a Second Circuit case, *Blue Ridge Invs. L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013), Petitioners make the unremarkable argument that "*every United States court called upon to enforce an ICSID award has held that the arbitration exception is satisfied.*" But this says nothing about the applicable standard and whether it is satisfied in this case, and it

completely ignores the two-step burden shifting framework.[3]   If NextEra's argument had merit, there would be no need for a two-step burden shifting framework.   NextEra seems to argue that the Court has no role to play here except to provide its imprimatur on the arbitral award without any sort of analysis whatsoever.   But this badly understates the Court's role, a role which is especially significant here given the rare and unique the circumstances of this case and the impact of the *Komstroy* decision.

*Second*, Petitioners wrongly rely on various authorities to claim that if an ICSID Award exists, then the Arbitration Exception necessarily exists.   *See* Opp. Br. 17.   For example, while NextEra relies on *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 277 (D.D.C. 2019), *aff'd* 805 F.App'x 1 (D.C. Cir. 2020) in support of its argument, it ignores that Judge Mehta actually made a determination of whether there was a valid arbitration agreement in order to determine the Court's jurisdiction.   In *Micula*, the petitioner sought to enforce an ICSID award that the Romania asserted was invalid following the *Achmea* decision.   Judge Mehta acknowledged many of the points raised by NextEra in this action, *e.g.*, that a "federal court's role in enforcing an ICSID award is limited" and that the court is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award."   *Id.* at 275 (citation omitted).    Yet this language did not end the inquiry, though NextEra wishes it did.

---

[3] First, the petitioner must "make a prima facie showing that there was an arbitration agreement by producing the treaty and the notice of arbitration."   *Stati v. Republic of Kazakhstan,* 199 F. Supp. 3d 179, 188 (D.D.C. 2016) (citation omitted).   "Once petitioner makes this showing, the burden shifts to the respondent to demonstrate by a preponderance of the evidence that the treaty and the notice to arbitrate did not constitute a valid arbitration agreement between the parties." *Id.* (citation omitted).   "By moving to dismiss, the defendant may challenge either the legal sufficiency or the factual underpinning of an exception . . . ." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Instead, Judge Mehta recognized that the petitioners satisfied their **initial burden** by pointing to a contested arbitration award issued under the ICSID regime.   The court then proceeded to the next phase of the required analysis.

> Romania says this case is different than those finding the arbitration exception applicable [*i.e.*, the very cases that NextEra cites as dispositive].   It contends that the arbitration exception does not confer jurisdiction 'because the arbitration clause in the Sweden-Romania BIT has been declared invalid.' This argument rests on the European Court of Justice's decision in *Achmea* . . . . Applying that principle here, Romania contends that the arbitration clause in the Sweden-Romania BIT is invalid.

*Id.* at 277 (citations omitted).

Further, despite the fact that the petitioners in *Micula* presented an ICSID award, Judge Mehta ruled on the FSIA arbitration exception only after "[h]aving carefully considered the *Achmea* decision."   *Id*. at 279.[4]   Indeed, and very importantly, Judge Mehta actually applied a (now overruled) decision from the General part of the CJEU which had held that *Achmea* did not apply in the *Micula* case because when the events giving rise to Micula's claims transpired, Romania was not part of the EU.[5]   Likewise, this Court cannot rule as to whether a valid arbitration agreement exists without carefully considering *Achmea* and *Komstroy*, and deciding whether an arbitration agreement exits.

NextEra's reliance on *Process & Indus. Developments Ltd. v. Fed. Republic of Nigeria*, 27

---

[4] Judge Mehta did not consider whether to dismiss the action on *forum non conveniens* rather than diving into foreign law, as no such request was advanced by the sovereign.   Moreover, the analysis before Judge Mehta was significantly more straightforward than that at issue here, because Romania was not a member of the EU at the time the arbitration agreement and events giving rise to the dispute took place.   Accordingly, *Achmea* did not dictate that the agreement was invalid, and the court abstained from ruling as to whether a future arbitration agreement would be valid between the parties now that both were part of the EU.

[5] Earlier this year, this decision from the General part was overruled by the Grand Chamber of the CJEU which held that, in fact, *Achmea* did in fact apply to the *Micula* case because the appropriate timeframe for the analysis was when the award was issued.

F.4th 771 (D.C. Cir. 2022) ("*P&ID III*") is equally misplaced.  *See* Opp Br. at 18.  Indeed, *P&ID III* actually confirms that in order for the Arbitration Exception to apply a party needs to show "the existence of an arbitration agreement," which proves Spain's point.  *Id*. at 776.  In fact, NextEra's quotation of *P&ID III* is misleading when it states that "arguments concerning the 'validity or enforceability' of **the Award** … are not pertinent to the subject matter jurisdiction inquiry."  Opp. Br. at 18-19 (emphasis added).  The validity of the Award is not the jurisdictional question.  The jurisdictional question is the validity of the purported **arbitration agreement**.

NextEra's argument as to the statutory language of the FSIA is unsupported by any legal precedent and without merit.  NextEra argues that as long as it can point to the ECT, Article 26, that all the "jurisdictional facts" required by the statute are satisfied.  However, that ignores the analysis undertaken in *P&ID III* and in *Micula* which set out to determine, and did determine, whether the arbitration agreement in questions was valid.  NextEra's reliance on *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) is also misplaced in this regard.  As described further below, and as noted in Spain's Opening Brief, Moldova's challenge did not go to the existence of an arbitration agreement, but rather **arbitrability**—i.e., whether certain disputes fell within the scope of that arbitration agreement.  That is not the issue here.

NextEra, as hard as it tries, cannot avoid the fact that in order for the Court to exercise jurisdiction under the FSIA it must first evaluate whether a valid arbitration agreement exists.

## B.    A Valid Arbitration Agreement Is Required To Support Waiver Exception Jurisdiction

NextEra's argument that the Court can disregard *Komstroy* because an arbitration agreement is not needed to support the Waiver Exception is also meritless.

*First*, NextEra conflates "arbitrability" with an "agreement to arbitrate."  These concepts are not the same thing, as noted above, even though they may both relate to a tribunal's jurisdiction.

Here, Spain disputes that an "agreement to arbitrate" exists at all under the ECT, and none of the cases cited by NextEra are apposite, as they do not involve cases where the arbitration agreement itself was challenged.   For example, in *Tatneft v. Ukraine*, 301 F. Supp. 3d 175 (D.D.C. 2018), Ukraine did not dispute that an underlying arbitration agreement existed but rather challenged whether the claims fell within the scope of the arbitration agreement.   Again, that is a question of arbitrability.   While arbitrability may be delegated to an arbitral tribunal, whether an arbitration agreement exists at all—which is central for the Court to find it has jurisdiction—cannot.

Although in prior briefing NextEra cited to *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), for the proposition that, under the Federal Arbitration Act, parties can delegate questions as to whether a valid arbitration agreement existed to the arbitrator, it no longer does.   And this is for good reason.   As pointed out before, the Court's clearly stated: "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* at 530.   The Court could not have been more plain.   Courts are precluded from deciding the question of arbitrability if, and only if, "**a valid agreement exists**" and the agreement delegates arbitrability to the arbitrator.  *Id.* (emphasis added).[6]

*Second*, NextEra makes several sweeping generalizations and asks this Court to issue rulings of first impression that would dramatically reduce the immunity available to sovereigns under the FSIA.   But the cases cited by NextEra do not support the proposition for which they are offered, and NextEra's request should be denied.

None of the cases cited by Petitioners stand for the proposition that merely signing the ICSID Convention waives foreign sovereign immunity, especially in this Circuit.

---

[6] The Court also held that, even where a valid arbitration agreement exists, other questions of arbitrability are only reserved for the arbitrator if that valid agreement "clear[ly] and unmistakab[ly]" delegates such questions to the arbitrator.  *Id.*

IV.    **THE FSIA NOT ONLY PERMITS, BUT IT MANDATES, THAT THE COURT DETERMINE WHETHER THERE IS A VALID ARBITRATION AGREEMENT BETWEEN PETITIONERS AND SPAIN, AND THE ICSID CONVENTION DOES NOT ALTER THIS LANDSCAPE**

As noted above, the Court must support a finding of jurisdiction under the FSIA with a finding that there is a valid arbitration agreement.   Since the question of whether a valid arbitration agreement exists inevitably leads to the application of *Achmea* and *Komstroy*, the Court should dismiss for lack of jurisdiction.   Faced with this reality, NextEra now claims that Spain is not permitted to even challenge whether an arbitration agreement exists.   This is wrong

A.    **Contrary to NextEra's Argument, Controlling Precedent Does Not Hold That The Court Must Automatically Confirm The Award Without Determining Whether A Valid Arbitration Agreement Exists—It Holds That Courts Should Not Merely Rubber Stamp ICSID Awards**

Among other cases, NextEra relies on *Mobil Cerro* for the proposition that the Court may not interrogate ICSID tribunal's jurisdiction, or inquire whether a valid arbitration agreement exists in this case.   Opp. Br. at 2 (citing *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96 (2d Cir. 2017)).   However, the *Mobil Cerro* court went on to consider, and explicitly reject, the petitioners' argument that "ICSID award recognition [should] be automatic and not subject to contest."   *Mobil Cerro*, 863 F.3d at 116 (citations omitted).   Instead, the court found that the FSIA's legislative history "highlights that full faith and credit, as used in Section 1650a, meant **something less than automatic recognition and conversion of the award into a federal judgment.**"   *Id.* at 123 (emphasis added).[7]   As such, *Mobil Cerro* is fully aligned

---

[7] NextEra's argument that its award against Spain is entitled to such full faith and credit as to amount to automatic recognition because Spain objected to the Tribunal's jurisdiction fails for the reasons set forth in Section V(D) below.   NextEra also selectively cites to a footnote in *Tidewater Investment SRL v. Bolivarian Republic of Venezuela* and extrapolates it into a legal rule that does not exist.   No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018).   NextEra's citation to this footnote as dispositive in this case is misleading for two reasons beyond the fact that it is dicta. First, Venezuela defaulted during the enforcement proceedings and offered no

with D.C. law: a court must determine that it has jurisdiction under the FSIA before confirming an award, and the mere existence of an ICSID award does not authorize the petitioner to automatic recognition or conversion.   NextEra's argument that there is "zero scope" for review (Opp. Br. at 24) is pure bluster and ignores applicable law, and it is again premised upon NextEra's conflation of the concept of "arbitrability" with an "agreement to arbitrate," as discussed above.[8]   Here, the question is whether an arbitration agreement exists, not merely arbitrabiltiy of a particular dispute.

Further, NextEra ignores the clear holding of a case it has cited in support in previous briefing: *Chevron Corp. v. Ecuador.*, 795 F.3d 200 (D.C. Cir. 2015).   NextEra has claimed that *Chevron* "illustrate[s] that a party cannot use the arbitration exception to relitigate the substance of an award," and further alleges that questions as to the existence of an agreement qualify as "the substance of the award."   Although it no longer cites to this case, NextEra has argued that that once an ICSID tribunal rules on its own jurisdiction a U.S. court is precluded from conducting any analysis of the validity of the arbitration agreement.   Once again, NextEra misses the mark, as *Chevron* standards for the exact opposite proposition.

Specifically, the D.C. Circuit there held that "the jurisdictional task before the District Court was to determine whether Ecuador had sufficiently rebutted the presumption that the

---

defense whatsoever, including a defense as to jurisdiction.   More importantly, the questions of "ICSID's jurisdiction" in *Tidewater* dealt with whether certain claims were within the scope of an admittedly valid agreement to arbitrate, not whether a valid agreement to arbitrate existed in the first place.

[8] There are various issues ICSID tribunals decide that relate to arbitrability.   For example, there may be definitional issues, such as whether a particular investment is a covered investment under a particular treaty, because ICSID tribunals have jurisdiction only if they relate to an "investment" defined in the treaty.   Further, an "investment" must be made in the applicable "territory" under the treaty, and investments may need to be made within the applicable timeframe.   These are questions akin to arbitrability, but they do not go to the fundamental question of whether an agreement to arbitrate exists.

[investment treaty] and Chevron's notice of arbitration constituted an agreement to arbitrate." *Chevron*, 795 F.3d at 206.    Crucially, the court held that the "District Court eschewed making this determination [i.e. whether there was an agreement to arbitrate] as part of its jurisdictional analysis. **This was error**." *Id.* at n. 3 (emphasis added).    The D.C. Circuit reiterated that the FSIA "requires the District Court to satisfy itself that the party challenging immunity has presented prima facie evidence of an [arbitration] agreement between the parties and that the sovereign asserting immunity has failed to sufficiently rebut that evidence." *Id.*[9]

Further, while NextEra relied on *Henry Schein* in prior briefing, it also now claims that it is irrelevant.    Opp. Br. at 26-27; *see Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, (2019).    As explained before, NextEra overlooks, or deliberately omits, the key context provided in *Henry Schein*.    NextEra uses the word "arbitrability" to encompass disputes as to whether there was even an agreement to arbitrate, but the *Henry Schein* Court used a different definition:

> [P]arties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. When a dispute arises, the parties may sometimes disagree not only about the merits of the dispute but also about the threshold arbitrability question—**that is, whether their arbitration agreement applies to a particular dispute.**

*Henry Schein*, 139 S. Ct. at 527 (emphasis added).    Using that definition of arbitrability, the Court ruled that courts could not ignore that delegation to the arbitrators under the FAA even if the courts believe "the argument that the arbitration agreement applies to the particular dispute is wholly groundless." *Id.* at 527-28.    As is commonly known, and as described in *Henry Schein*,

---

[9] The court did not remand because "the District Court elsewhere found . . . that 'Chevron had a valid agreement to arbitrate under the BIT.'"    *Id.* (citation omitted).

arbitrability concerns whether a type of a dispute can or cannot be settled by arbitration.[10]   It is not the question of whether a binding arbitration agreement between two parties was formed.

However, NextEra asks this Court to dramatically expand *Henry Schein* to hold that courts must refer disputes to arbitrators even where there is a threshold question as to whether a valid arbitration exists.   This is expressly and unequivocally disclaimed by the Supreme Court itself in *Henry Schein*:

> To be sure, **before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists**.   But **if a valid agreement exists**, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

*Id.* at 530 (emphasis added) (citation omitted).   "To be sure," then, *Henry Schein* does not overrule the well-established severability doctrine, which provides that challenges to the validity of an agreement to arbitrate are reserved for courts.   *See, e.g., Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440 (2006); *Belize Soc. Dev. Ltd. v. Gov't of Belize,* 5 F. Supp. 3d 25 (D.D.C. 2013) (reiterating that the agreement to arbitrate must be valid for an award to be confirmed under the New York Convention and affirming the award only because the respondent "offer[ed] no basis under Belizean law, or any other law, for this Court to find *that particular clause* invalid") (emphasis in original), *aff'd* 794 F.3d 99 (D.C. Cir. 2015); *RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127 (D.D.C. 2011) (refusing to delegate questions as to whether there was a valid agreement to arbitrate to the arbitrators because "of course, [the arbitration] clause is without force and effect if the parties never agreed to it in the first place").[11]

---

[10]  *See* Loukas A Mistelis and Stavros L Brekoulakis (editors), 'Arbitrability: International and Comparative Perspectives', *International Arbitration Law Library*, Volume 19 [Mistelis and Brekoulakis], pp. 3 and 4, paras. 1 to 6.

[11]  NextEra similarly blurs the issues of "arbitrability" in *Chevron* with those at issue here, and attempts to use *Chevron* to prevent NextEra from getting "two bites at the apple" as to whether or

Putting aside the express disclaimer in *Henry Schein*, and the guidance from D.C. courts, NextEra's proposes a regime whereby a sovereign waives its right to argue in court that no arbitration agreement exists simply because the sovereign preserved that argument before the tribunal.    However, this would contradict established arbitration law and violate the express language of the ICSID Convention.

It is well settled that a party must raise jurisdictional objections during an arbitration to preserve them.    "[T]o avoid waiver, a party must clearly preserve the question of arbitrability for judicial determination."    *William Charles Constr. Co. LLC v. Teamsters Local Union 627*, 827 F.3d 672, 681 (7th Cir. 2016) (citation omitted); *see also Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160, 168 (D.C. Cir. 1981).    Under established arbitration law a foreign sovereign waives its right to challenge jurisdiction if it participates in the arbitration without objecting.    Under NextEra's proposed understanding of the FSIA, a foreign sovereign also waives its right to judicially challenge jurisdiction if it does raise the objection.    That makes no sense.    NextEra's attempt to create a Catch-22 of this sort should be rejected.    *Cf. Knick v. Twp. of Scott Pa.*, 139 S.Ct. 2162, 2167 (2019) (overruling prior case that created a scenario where a party "finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court.    The federal claim dies aborning.").[12]

_____

not a valid arbitration agreement exists.    As in *Henry Schein*, however, the "arbitrability" issue in *Chevron* was whether certain disputes fell within the scope of the admittedly valid agreement to arbitrate, a question that had been delegated to the arbitrator.    *Chevron* therefore has no bearing on whether or not Spain waived its right to contest the validity of the arbitration agreement by preserving those objections during the arbitration.

[12] Even if NextEra were correct that questions as to the validity of an arbitration agreement **could** be delegated to an arbitrator, NextEra fails to explain how the arbitration provision in the ECT delegated validity questions by clear and unmistakable evidence.    *See, e.g., Henry Schein*, 139 S.Ct. at 531. At most, NextEra points to Article 26(4)(a) of the ECT, which provides that the parties "consent" to ICSID jurisdiction.    This ignores entirely the fact that the Supreme Court expressly

NextEra's reliance on *Tethyan* and similar cases to argue that "no scrutiny of an ICSID award's findings whatsoever may occur" is also unavailing.   Opp. Br. at 24 (citing to *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 1:19-CV-02424 (TNM), 2022 WL 715215 (D.D.C. Mar. 10, 2022)).   First, the fact that the review of ICSID awards is more limited than the review permitted under the FAA is not a helpful distinction.   More substantial review under the FFA is possible, but that is not what Spain is advocating for in this case.   Spain is merely pointing out that the Court must decide one threshold question: whether there is a valid arbitration agreement.   In fact, *Tethyan* flatly contradicts NextEra's suggested "zero scope" review and support's Spain's position.   After accepting that courts do have a more limited role when enforcing an ICSID award, the *Tethyan* court generally sets out the principles that Spain has been advocating for this entire case: "That said, courts do more than rubber stamp.   The Court must ensure that it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award" (citing to *TECO Guatemala Holdings, LLC v. Repub. of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019) and *Mobil Cerro Negro, Ltd. v. Bolivarian Repub. of Venezuela*, 863 F.3d 96, 112 (2d Cir. 2017)).   And in order to determine whether there is jurisdiction in this matter, the Court must determine whether an arbitration agreement exists.

*Mobil Cerro* states that enforcement must comply with the requirements of the FSIA, which cannot be limited by a treaty.   *Mobil Cerro*, 863 F.3d at 117.   NextEra cannot argue that under *Mobil Cerro* the Court cannot determine its own jurisdiction by determining whether an

---

declined the invitation to grant such sweeping significance to the word "consent." *BG Group, PLC v. Republic of Argentina,* 572 U.S. 25, 38 (2014). To the extent that NextEra relies on Spain's ratification of ICSID as clear and unmistakable evidence of delegation, it misses the mark even wider. The Preamble to ICSID unambiguously declares the opposite, i.e. that no state "shall by the mere fact of its ratification, acceptance or approval of this Convention and without its consent be deemed to be under any obligation to submit any particular dispute to conciliation or arbitration."

arbitration agreement exits. For similar reasons, *Henry Schein*, is relevant even though, as NextEra now argues, it relates to a motion to compel under the FAA. While *Henry Schein* was not about enforcement, it provides guidance on the process that U.S. courts take in determining whether an arbitration agreement exists, and who makes that decision under U.S. law (a court or an arbitral tribunal). This is entirely consistent with *Mobil Cerro*, which pointed out that U.S. law applies to the enforcement of ICSID award, not a particular treaty. *Mobil Cerro*, 863 F.3d at 117 (after describing that deference is given to the interpretation of a treaty favored by the United States, stating that in the United States' "brief amicus curiae, [it] articulates its view that 'the mechanics of enforcing ICSID awards are not and never were governed by treaty'" and that "neither the Convention nor Section 1650a 'requires or forbids any particular set of procedures,'" and "[i]nstead, the ICSID Convention 'reserves the means of enforcement to member states…'")

Further, NextEra's effort to discard cases under the New York Convention as inapplicable also fails. First, NextEra itself relied on some of these cases in its prior briefing, but now has changed course. That betrays the credibility of this argument. Second, there is no reason why the FISA analysis in those cases would be any different than those related to the ICSID Convention, and NextEra has pointed to no case that holds that the analysis is any different.

Moreover, it is significant that cases are being set aside in Europe. Although NextEra seeks to downplay these developments, NextEra provides no explanation about why an UNCITRAL award rendered by an international investment tribunal, or an SCC award rendered by an international investment tribunal, both under the ECT, should be treated differently from an ICSID award rendered by an international investment tribunal under the ECT. If Article 26 of the ECT was invalid in those cases, it would also be invalid in this case involving an ICSID award. Further, as described below, the ECT and ICSID Convention do not trump the EU Treaties or any

other public international law.   In fact, the EU Treaties, as agreed amongst the EU Member States, represent a conflict rule that regulates the relationship of the EU Member States *inter se* and therefore trumps the ECT and the ICSID convention by operation of normal conflict principals.

### B. The ICSID Tribunal and Annulment Committee's Jurisdictional Conclusions Are Not Res Judicata

NextEra's Opposition Brief claims that an ICSID award is "not subject to judicial scrutiny" on findings of arbitrability that are enshrined in the award. Opp. Br. at 29-30.   NextEra further claims that "Spain unmistakably authorized the ICSID arbitrators to rule on their own jurisdiction." Opp. Br. at 29-30.   But for all the reasons discussed herein, Spain has not authorized ICSID arbitrators to rule on their own jurisdiction.

NextEra's Opposition Brief cites to multiple cases to support its flawed res judicata position. *See Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018); *Chevron Corp. v. Republic of Ecuador*, 949 F.Supp.2d 57, 63 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015); *Tethyan Copper Co. v. Islamic Republic of Pak.*, No. 1:19-cv-02424 (TNM), 2022 WL 715215 (D.D.C. Mar. 10, 2022).   But all three decisions state the ICSID tribunal's decision on arbitrability is res judicata, and not its findings concerning whether a valid agreement to arbitrate exists.  *See Tethyan,* 2022 WL 715215 at *9 ("ICSID's jurisdictional power . . . renders binding on this Court the Tribunal's **arbitrability** determination.") (emphasis added); *Tidewater*, 2018 WL 6605633, at *2 ("On February 8, 2013, after briefing and a hearing, a panel of arbitrators issued a jurisdictional decision finding that only Tidewater's claims arising under the BIT were **arbitrable** under the Convention.") (emphasis added); *Chevron Corp.*, 949 F.Supp.2d at 63 ("Inquiring into the merits of the enforcement dispute—that is, the **arbitrability** of the underlying claims—would involve an inquiry into the contractual rights of the parties to arbitration and would thus be beyond the reach of the FSIA's

cabined jurisdictional inquiry.") (emphasis added).   None of those cases stand for the proposition that an arbitral tribunal's jurisdictional finding that the parties had a valid agreement to arbitrate is res judicata.   Indeed, such a finding would be inconsistent with the Court's responsibilities when enforcing a judgment – a Court tasked with enforcing a judgment under the full faith and credit principles is *required* to find that the court in the first instance had the jurisdiction to render judgment in the first place. *See Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982) ("Chief among these limitations is the caveat, consistently recognized by this Court, that a judgment of a court in one State is conclusive upon the merits in another State only if the court in the first State had power to pass on the merits – had jurisdiction, that is, to render the judgment.")

### C. The ICSID Convention Does Not Displace the EU Treaties and the CJEU's Interpretation of the EU Treaties in *Achmea* and *Komstroy*: EU Law Is Public International Law That Applies To the Issues Here and Renders The Purported Agreement To Arbitrate Invalid Since It Conflicts With the EU Treaties

The question going to the core of this case is whether Article 26 of the ECT is a valid arbitration agreement as between two parties (Petitioner and Spain) who fall within the EU legal order and under the limitations proscribed by the EU Treaties that the EU Member States have entered into.

As explained by Spain's expert, Professor Dr. Hindelang, pursuant to the principles set out in *Achmea* and the EU Treaties—and in particular the principles of autonomy and primacy of EU law that apply to all EU Member States and their citizens—Article 26 of the ECT is not valid arbitration agreement between the parties before the Court.   To try to escape this conclusion, NextEra argues that EU law does not apply to the question of whether there was a valid agreement to arbitrate, because that is a question of international law.   This argument fails.

As NextEra concedes, Article 26(6) of the ECT provides that a "tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law."  NextEra argues on the other hand that EU law (the EU Treaties) is not international law.  However, NextEra and Professor Bermann ignore the EU context, and that pursuant to Article 2(1)(a) of the Vienna Convention on the Law of Treaties ("VCLT") the EU Treaties are in fact "international treaties."  Hindelang Reply Decl., ¶ 6.  "As such, the EU Treaties would be 'relevant rules of international law applicable in the relations between' Spain and the Netherlands under Article 31(3)(c) of the VCLT and must be taken into account when interpreting and applying the ECT" under Article 26(6) of the ECT.  *Id*.  The EU Treaties are international law applicable between Petitioners and Spain.  *Id*., ¶¶ 4-6, 11, 17, 20, 23, 24, 43, 49, 77, 93.  Thus, the entire premise of NextEra's argument that the EU Treaties are simply EU law and are somehow trumped by the ECT or the ICSID Convention is wrong.  Further, NextEra's reliance on Article 16 of the ECT, the VCLT, the decisions of other tribunals, and Judge Mehta's decision in Micula are all misplaced.

Article 16 of the ECT does not prohibit the application of the EU Treaties.  As Professor Dr. Hindelang, Article 16 is not a conflict of law provision at all, and even if it was, the EU Treaties would still prevail.  *See* Hindelang Reply Decl., ¶ 50-57.  The actual wording of Article 16, indicated that it is a rule of interpretation rather than conflict, *Id*., ¶ 50-51, but as Professor Dr. Hindelang reports, even if it was a rule of conflict, the EU Treaties still take precedence for a variety of reasons.  Preliminarily, the EU Treaties actually provide greater or at least equal protection to the ECT and therefore the ECT would not take priority.  *Id*., ¶ 54.  Further, even if the ECT was a more favorable regime, it would be disapplied in an intra-EU investment dispute due to the primacy of the EU Treaties.  *Id*., ¶ 55.  The idea asserted by NextEra and Professor

Bermann that somehow EU Member states can circumvent the EU Treaties by concluding international treaties between them is completely false.   As Professor Hindelang has consistently explained, "EU Member States cannot escape their obligations flowing from the EU Treaties by resorting to other international law in their *inter se* dealings."   *Id*., ¶ 56-57.

Spain's position is also consistent with the VCLT.   The disapplication of Article 26 of the ECT is permissible in law, as it is at base the result of an operation of a conflict rule.   *Id*. ¶ 63. In fact, NextEra ignores that the EU Members States agreed that in their *inter se* relations, "to interpret and apply international agreements in conformity with the rules and principles arising out of the EU Treaties."   *Id*. ¶ 64.   This means that the EU Member States deviated from the default conflict rules contained in the VCLT, which is entirely permissible.   *Id*.   In other words, this dispute, at its core, goes to the question of how the EU Member States have agreed to conduct themselves amongst each other in relation to the ECT.[13]

International investment tribunals have also come to appreciate the reality of *Komstroy*, and have begun to dismiss intra-EU cases brought under Article 26 of the ECT due to the lack of an agreement to arbitration.   Professor Dr. Hindelang describes the first of these decisions, *Green Power Partners K/S SCE Solar Don Benito APS v. Kingdom of Spain*.   *Id*., ¶¶ 11-13, 22-24, 43. While Professor Dr. Hindelang has described by such decisions are not binding on this court, or any other court, or any other tribunal for that matter, this resent ruling shows that NextEra's reliance on the decisions of other international investment tribunals is misplaced.

Finally, NextEra's reference to Judge Mehta's decision in *Micula* is misleading at best. For the reasons described above, that case dealt with a timing issues—*i.e.*, whether the EU Treaties apply in a situation where Romania was not yet an EU Member State.   404 F. Supp. 3d at 276-

---

[13] This reality once more shows the suitability of dismissal for *forum non conveniens*.

280.   In coming to his conclusion, Judge Mehta, in fact, applied a now-overruled EU Court judgment which found that they did not.   Thus, that case is irrelevant, and NextEra's reference to it undermines the credibility of its arguments.

Otherwise, Professor Dr. Hindelang has provided a point-by-point response to the declaration of Professor Bermann, to which we draw the Court's attention.

## V.   VARIOUS OTHER LEGAL PRINCIPLES SUPPORT DISMISSAL OF THIS CASE

### A.   Comity Supports Dismissal

This Court may (and should) dismiss this action on international comity grounds. "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 543 n. 27 (1987); *see also In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1048 (2d Cir. 1996) ("Comity is a doctrine that takes into account the interests of the United States, the interests of the foreign state, and those mutual interests the family of nations have in just and efficiently functioning rules of international law."). Adjudicative comity is "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *See Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 1735 (2021).

As noted above, Spain is subject to several binding EU Treaties that this Court would have to interpret in order to determine whether an agreement to arbitrate exists.   The highest courts in the EU, however, has already weighed in on the question here, and determined that no arbitration agreement exists.   If there was any case where it was appropriate to defer to the EU courts, this is the case. The EU has a significant interest in adjudicating the meaning of its own laws and Treaties, and regulating the relationship between EU Member States and their citizens.   In contrast, the

United States has no connection to this litigation and no real interest in adjudicating this dispute. "Just and efficiently functioning rules of international law" clearly favors having EU courts determine whether an agreement arbitrate between a Member State and a citizen of a Member State can be created by Article 26 of the ECT. *In re Maxwell*, 93 F.3d at 1048. Moreover, and as explained above, NextEra has adequate fora in Europe to enforce its award.

### B.    The Act of State Doctrine Supports Dismissal of the Action

The act of state doctrine precludes review of the validity of public acts carried out by a foreign sovereign within the foreign sovereign's own territory. *See, e.g.*, *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964)). As stated above, twenty-two member states in the EU, including Spain and the Netherlands, issued a Joint Declaration confirming that an arbitration agreement cannot be formed under Article 26 of the ECT between an EU Member State and a national of another Member State, based upon precedent from the European Commission. For this Court to find that a valid arbitration agreement existed between Spain and NextEra, the Court would necessarily have to declare several EU Treaties invalid, and overrule the determinations reached by the European Commission.

NextEra seeks to dodge the clear import of the act of state doctrine by claiming that a U.S. court enforcing an ICSID award is not being asked to render an interpretation of EU law or invalidate a judgment of the European courts. But that is undeniably what NextEra asks for here. To enforce the award requires finding a valid arbitration agreement, but numerous EU Member States and the European Commission all agree that no arbitration agreement exists between a Member State and a national of another Member State; a U.S. court would necessarily be required to completely disregard the EU Treaties and important related CJEU decisions. The fact that NextEra repeatedly insists contrary to even U.S. law that the Court simply rubber stamp the award,

without any substantive review, does not change the fact that any decision to enforce the arbitral award would necessarily conflict with and annul the rulings of European Commission and international treaties.

NextEra also claims that the act of state doctrine is "intrinsically inapplicable to arbitration" because the judiciary in this country will not be forced to adjudicate the validity of foreign acts. Opp. Br. at 42.   But this misses the mark.   The Court would be required to adjudicate the validity of the Joint Declaration from the 22 Member States, including Spain and the Netherlands, that confirmed that an arbitration agreement cannot be formed between an EU Member State and a national of another Member State under Article 26 of the ECT.   The Court's decision will also fly in the face of upcoming revisions to the ECT which will further clarify that Article 26 of the ECT does not apply to intra-EU disputes.   NextEra's assertion that "mere enforcement of a money award…cannot possibly implicate the Act of State doctrine" ignores the fact that enforcement of the award will necessarily require the Court to determine whether an arbitration agreement exists, which in turn implicates the act of the 22 EU Member States, as well as many other acts, that have found and reconfirmed that Article 26 of the ECT cannot form an arbitration agreement between EU Member States and EU citizens.

### C.    The Doctrine of Foreign Sovereign Compulsion Supports Dismissal

As Spain's Opening Brief makes clear, the foreign sovereign compulsion doctrine provides a complete defense where the judgment of a U.S. court would conflict with a defendant's legal obligations elsewhere.   *See, e.g., O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana S.A.*, 830 F.2d 449, 453 (2d Cir. 1987).

NextEra argues that the foreign sovereign compulsion doctrine does not apply in these circumstances because a state cannot be under compulsion "from its own law." Opp. Br. at 46. NextEra's observation misses the mark, however.   For the purposes of the foreign sovereign

compulsion doctrine, the EU is the equivalent of a foreign state. *See European Cmty. v. RJR Nabisco Inc.*, 764 F.3d 129, 143-47 (2d Cir. 2014), *rev'd on other grounds* 136 S. Ct. 2090 (2016). The European Commission, as the enforcement arm of that foreign state, has rendered a legally binding Decision that prohibits Spain from paying the award because doing so would violate the EU Treaties. European Commission Decision 2017/7384 ¶ 165. If the Petition is granted, and this award is enforced, Spain would be forced to violate EU laws and EU treaties. Courts in this district have declined to order a party to take an action which would violate the laws in a foreign state. *See In re Vitamins Antitrust Litig.*, No. 99-197TFH, 2001 WL 1049433 (D.D.C. June 20, 2001) (allowing parties to produce privacy log to detail information that must be withheld in compliance with German and Swiss law). NextEra has provided no basis—and there is none—for the Court to stray from enforcement of the foreign sovereign compulsion doctrine here. This is another reason why the Court should dismiss for lack of jurisdiction or *forum non conveniens*.

### D. The Fact That The Award Is Not Entitled to Full Faith and Credit Supports Dismissal

As detailed in Spain's Opening Brief, the arbitral award is not entitled to full faith and credit for two reasons: first, it is void because Spain did not enter an arbitration agreement with Petitioners and therefore the Tribunal lacked jurisdiction to issue any award; second, the Award is void because the Tribunal exceeded its jurisdiction by issuing state aid.

In order for a judgment to be entitled to full faith and credit, the court that entered the award must have had jurisdiction to enter the award. *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982). NextEra argues that full faith and credit principles dictate that "all questions, including jurisdictional questions, presented by the parties and adjudicated by the Tribunal are shielded from collateral review." Opp. Br. at 44. But this ignores several relevant facts. First, as explained above, the district court still must resolve

the jurisdictional questions for itself.  Second, to the extent that the Tribunal did resolve the jurisdictional questions in NextEra's favor, those findings were made before the recent developments in EU law.  The recent decision by the CJEU in *Komstroy* found in Spain's favor on the jurisdictional question at issue here—that the purported arbitration agreement contained in Article 26 of the ECT is not—and never was—a valid agreement or offer to arbitrate between citizens of the EU and EU Member States.

NextEra also claims that a district court is forbidden from declining to enforce an arbitral award, and this principle even applies to jurisdictional questions.  Opp. Br. at 45.  But this argument has been completely foreclosed by *Mobil Cerro*. 863 F.3d 96.  In *Mobil Cerro*, the Second Circuit stated that ICSID awards are not entitled to automatic enforcement.  The *Mobil Cerro* court found that the FSIA's legislative history "highlights that full faith and credit, as used in Section 1650a [of the FSIA], meant something less than automatic recognition and conversion of the award into a federal judgment."  *Id.* at 123.  Supreme Court precedent has made clear "[a] State is not required [] to afford full faith and credit to a judgment rendered by a court that did not have jurisdiction over the subject matter or the relevant parties."  *V.L. v. E.L.*, 577 U.S. 404, 407 (2016).  The Court cannot abandon this precedent, and refuse to examine the jurisdictional questions at the heart of this enforcement action.

## CONCLUSION

Europe's high court, the CJEU, held in *Komstroy* that there is no valid arbitration agreement between the Petitioners and Spain in the ECT.  There has not yet been a case in the United States that has decided the issues presented here, and NextEra has provides no good reason why this Court should wade into these complex issues and potentially contradict the CJEU's *Komstroy* decision, especially in this dispute between EU citizens and an EU Member State.  To

contradict *Komstroy*, the Court would have to determine whether *Komstroy* was correctly decided related to the ECT, a multilateral treaty that the United States is not even a party to.   This is simply not a task that the Court is well-equipped to perform, and such a decision would needlessly and recklessly interfere with the EU's right to govern itself in accordance with the EU Treaties, and disregard basic principles of comity.

Accordingly, the Court may (and should) simply dismiss the case for *forum non conveniens*, and avoid tangling itself up with these issues altogether.   Alternatively, the Court may apply the *Komstroy* decision here, and determine that under *Komstroy* the purported arbitration agreement between Petitioners and Spain in the ECT is not valid.   In that case, dismissal for lack of jurisdiction would be appropriate because neither the Arbitration Exception nor Waiver Exception apply under the FSIA.   Indeed, even if the Arbitration Exception or Waiver Exception applied, the absence of a valid arbitration agreement would strip the award of any full faith and credit to which it would otherwise be entitled under the ICSID Convention and under principles of comity, in conjunction with the act of state doctrine and otherwise, the Court should decline to exercise any jurisdiction over the case it may have.   If the Court, however, disregards all the above points and finds that it has jurisdiction and exercises that jurisdiction, Spain reserves its other non-jurisdictional arguments as a defense to the Petition.

Dated: June 29, 2022

Respectfully submitted,

By:     /s/ Matthew J. Weldon

Matthew J. Weldon
New York Bar Number 4832408
599 Lexington Avenue
New York, New York 10022
(212) 536-4042
Matthew.Weldon@klgates.com

Brian D. Koosed
D.C. Bar Number 1034733
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9204
Brian.Koosed@klgates.com

Michael DeMarco (*pro hac vice*)
New York Bar Number 4142477
1 Lincoln St.
Boston, MA 02111
(617) 951-9111
Michael.DeMarco@klgates.com

*Counsel for Respondent Kingdom of Spain*

34

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 29, 2022, I caused a true and correct copy of the foregoing

Memorandum of Law to be filed using the Court's Electronic Case Filing System ("ECF").   The

document is available for review and downloading via the ECF system, and will be served by

operation of the ECF system upon all counsel of record.


/s/ Matthew J. Weldon
Matthew J. Weldon