# Exhibit 80

ZWARTVELD AND OTHERS

# ORDER OF THE COURT
## 13 July 1990 *

In Case C-2/88 Imm.,

REQUEST for judicial cooperation submitted by the Rechter-commissaris (examining judge) for criminal cases at the Arrondissementsrechtbank (District Court) Groningen, the Netherlands, in the preliminary investigation concerning

**J. J. Zwartveld and Others,**

### THE COURT

composed of: O. Due, President, Sir Gordon Slynn, C. N. Kakouris, F. A. Schockweiler and M. Zuleeg (Presidents of Chambers), G. F. Mancini, T. F. O'Higgins, J. C. Moitinho de Almeida, G. C. Rodríguez Iglesias, F. Grévisse and M. Díez de Velasco, Judges,

Advocate General: F. G. Jacobs
Registrar: J.-G. Giraud

after hearing the views of the Advocate General

makes the following

### Order

1   By a document lodged at the Court Registry on 8 August 1988 under No C-2/88 Imm., the Rechter-commissaris at the Arrondissementsrechtbank Groningen submitted to the Court a 'request for judicial cooperation' in which he states as follows:

---

* Language of the case: Dutch.

ORDER OF 13. 7. 1990 — CASE C-2/88 IMM.

(i) he is investigating a charge that in 1985 and 1986 the director and members of the management of the fish market in Lauwersoog (the Netherlands) were guilty of forgery, contrary to Article 225 of the Netherlands Penal Code;

(ii) it appeared from the investigation that the managers of the fish market had introduced a second market or 'black' market, in addition to the official market, in breach of the national provisions adopted to implement the Community rules on fishing quotas;

(iii) it is clear from statements made by witnesses (officials in certain ministries and two members of the Netherlands Government) that those responsible for fisheries policy in the Netherlands were aware of the results of inspections carried out by EEC inspectors in the Netherlands between 1983 and 1986;

(iv) it is essential for purposes of the investigation for the Rechter-commissaris to obtain the inspection reports in question and documents drawn up on the basis of those reports, and it might be necessary, after he has considered the documents, to take evidence from the inspectors concerned, of whose identity he is unaware;

(v) the request for the production of these reports was refused by the Commission on the ground that the documents formed part of a file on legal matters pending in the Commission.

2  The Rechter-commissaris refers to Articles 1 and 12 of the Protocol on the Privileges and Immunities of the European Communities, annexed to the Treaty establishing a Single Council and Single Commission of the European Communities of 8 April 1965 (hereinafter referred to as 'the Protocol'), in conjunction with the European convention or conventions on mutual assistance, to which, he states, the Community is not a party but which are incorporated in the Community legal order so that they must be regarded as an integral part of Community law to which the national authorities are subject. On the basis of those provisions he requests the Court:

(a) to order the Commission, or at least the Directorate-General concerned, to provide him with the information which he has requested; and,

in the alternative, to grant the competent examining magistrate leave to search premises and to seize:

(i) (internal) reports and, if necessary, inspection reports drawn up since 1983 by EEC inspectors who have carried out inspections in the Netherlands with regard to sea fisheries;

(ii) any documents (which may have been drafted on the basis of the findings of the aforesaid officials) concerning compliance with the Community rules on sea fisheries.

(b) To order or at least allow the aforesaid EEC inspectors and senior officials in the Directorate-General for Fisheries, if necessary by lifting their immunity, to be examined as witnesses either by the Rechter-commissaris or at least in his presence by an examining magistrate within the European Community, concerning both the inspections carried out by them between 1983 and 1987 in the Netherlands and the discussions which they had with Netherlands officials on Netherlands fisheries policy.

3   By a document lodged at the Court Registry on 13 October 1988, the Commission contended that the Rechter-commissaris's request was inadmissible.

4   As far as the Court's jurisdiction was concerned, the Commission stated that the EEC Treaty set out exhaustively when and how Member States, individuals and courts could bring a case before the Court. The right of national courts to refer a case to the Court was regulated exhaustively in Article 177 of the EEC Treaty. The Rechter-commissaris's request did not concern the interpretation of a provision of the Treaty or secondary legislation.

5   As far as the legal grounds were concerned, the Commission observed that Article 1 of the Protocol did not relate to documents such as those referred to by the Rechter-commissaris. Article 2 of the Protocol provided that the archives of the Community were to be inviolable and did not mention any possibility that the Court might lift that inviolability. Article 12 of the Protocol did not concern the hearing of officials and other servants of the Community as witnesses or the lifting

in that connection of the immunities enjoyed by those persons. That question was governed by Article 19 of the Staff Regulations of Officials of the European Communities, which did not provide for authorization to be given by the Court.

6   In reply to questions put by the Court, the Commission stated the legal grounds on which it opposed the production of documents arguing that there was no obligation to do so in Articles 1 and 2 of the Protocol.

7   Asked to state whether it considered that the production of documents requested in connection with possible frauds against Community rules was capable of interfering with the proper functioning or the independence of the Communities and if so, why, the Commission stated that the reports drawn up by its inspectors were documents which of their nature could not be used except for internal information. They were purely internal documents and could not commit the Commission or reflect its position. Their production might in addition jeopardize the Commission's relations with the Member States in the delicate area of supervision.

8   Asked whether the scope of the inviolability of archives provided for in Article 2 of the Protocol was absolute, even so far as the Court was concerned, and prevented the Court from requesting or authorizing the production to a national court of documents in the framework of a judicial investigation, the Commission replied that, unlike Article 1, Article 2 of the Protocol did not contain any exception empowering the Court to lift the inviolability.

9   Requested to state whether such production was not possible as part of the cooperation between Community institutions and the responsible authorities of the Member States provided for in Article 19 of the Protocol, the Commission stated that Article 2 contained no exception and Article 19 could not be used as the basis for lifting inviolability.

10   The Commission was asked whether in this case it was prepared to divulge the identity of the inspectors and, if necessary, to authorize them to be examined as

witnesses on their findings and, if not, to state why the Community's interests precluded them from giving evidence. In reply, the Commission stated that it was not prepared, for the reasons already given, to divulge the identity of the inspectors or to authorize them to give evidence. Any obligation on inspectors to be examined as witnesses would appreciably affect their work and therefore the effectiveness of Community supervision.

11  The Commission stated that it was, however, prepared to forward to the Rechter-commissaris a report on the facts which had been established, provided that the efficiency of the Community supervision was not jeopardized, and to authorize one or more members of staff to give evidence before the Rechter-commissaris.

12  The Rechter-commissaris informed the Court that in view of the conditions imposed by the Commission it could not agree to the Commission's proposal.

13  Following the publication of notice of this case in the *Official Journal of the European Communities* (Official Journal 1988 C 232, p. 5), the Government of the Netherlands lodged written observations in a document dated 19 October 1988.

14  The Court requested the Community institutions and the Member States to submit their observations on the scope of Articles 1, 2 and 19 of the Protocol with regard to a request such as that submitted to the Court by the Rechter-commissaris; written observations were submitted by the Council, the European Parliament, the French Republic, the Federal Republic of Germany, the Hellenic Republic, Ireland, the Italian Republic, the Kingdom of the Netherlands, the Portuguese Republic and the United Kingdom.

15  In order to assess whether the objection of inadmissibility lodged by the Commission is well founded, it should be recalled that the Court has already held in its judgment in Case 6/64 *Costa* v *ENEL* [1964] ECR 585, that, by contrast with ordinary international treaties, the EEC Treaty has created its own legal system which, on the entry into force of the Treaty, became an integral part of the legal systems of the Member States.

ORDER OF 13. 7. 1990 — CASE C-2/88 IMM.

16  In its judgment in Case 294/83 *Les Verts* v *European Parliament* [1986] ECR 1357, the Court established the principle that the European Economic Community is a Community based on the rule of law, inasmuch as neither its Member States nor its institutions can avoid a review of whether the measures adopted by them are in conformity with the basic constitutional charter, the Treaty (paragraph 23). The EEC Treaty established the Court of Justice as the judicial body responsible for ensuring that both the Member States and the Community institutions comply with the law.

17  In that community subject to the rule of law, relations between the Member States and the Community institutions are governed, according to Article 5 of the EEC Treaty, by a principle of sincere cooperation. That principle not only requires the Member States to take all the measures necessary to guarantee the application and effectiveness of Community law, if necessary by instituting criminal proceedings (see the judgment in Case 68/88 *Commission* v *Greece* [1989] ECR 2965, at p. 2984, paragraph 23) but also imposes on Member States and the Community institutions mutual duties of sincere cooperation (see the judgment in Case 230/81 *Luxembourg* v *European Parliament* [1983] ECR 255, paragraph 37).

18  This duty of sincere cooperation imposed on Community institutions is of particular importance *vis-à-vis* the judicial authorities of the Member States, who are responsible for ensuring that Community law is applied and respected in the national legal system.

19  When analysed in the light of those principles, the privileges and immunities which the Protocol grants to the European Communities have a purely functional character, inasmuch as they are intended to avoid any interference with the functioning and independence of the Communities (see the order of the Court in Case C-1/88 SA *Générale de Banque* v *Commission* [1989] ECR 857, paragraph 9).

20  The functional, and therefore relative, character of the privileges and immunities of the Communities is, moreover, expressly embodied in the provisions of the Protocol; Article 1 provides that the Court may authorize administrative or legal measures of constraint with regard to the property and assets of the Communities, and Article 18 provides that the privileges, immunities and facilities are accorded to officials and other servants of the Communities solely in the interests of the Communities.

21  The Protocol therefore does not permit the Community institutions to neglect the duty of sincere cooperation with the national authorities, and in particular the judicial authorities, a duty which is, moreover, referred to in Article 19 of the Protocol itself.

22  In this case, the request has been made by a national court which is hearing proceedings on the infringement of Community rules, and it seeks the production of information concerning the existence of the facts constituting those infringements. It is incumbent upon every Community institution to give its active assistance to such national legal proceedings, by producing documents to the national court and authorizing its officials to give evidence in the national proceedings; that applies particularly to the Commission, to which Article 155 of the EEC Treaty entrusts the task of ensuring that the provisions of the Treaty and the measures taken by the institutions pursuant thereto are applied.

23  The Court, which is responsible under Article 164 of the EEC Treaty for ensuring that in the interpretation and application of the Treaty the law is observed, must have the power to review, at the request of a national judicial authority and by means of a legal procedure appropriate to the objective pursued by that authority, whether the duty of sincere cooperation, incumbent on the Commission in this case, has been complied with.

24  Consequently, the Court has jurisdiction to examine whether the Community institutions' reliance on the Protocol in order to justify the refusal to cooperate sincerely with the national authorities is justified in view of the need to avoid any interference with the functioning and independence of the Communities.

25  Under those circumstances, the Commission must produce to the Rechter-commissaris the documents which it has requested, unless it presents to the Court imperative reasons relating to the need to avoid any interference with the functioning and independence of the Communities justifying its refusal to do so.

ORDER OF 13. 7. 1990 — CASE C-2/88 IMM.

26  The Commission must also authorize its officials, in accordance with Article 19 of the Staff Regulations of Officials of the European Communities, to be examined as witnesses before the Rechter-commissaris with regard to their findings during the inspections carried out in the Netherlands between 1983 and 1987 in the sea fisheries sector, unless it presents to the Court imperative reasons relating to the need to safeguard the interests of the Communities which justify its refusal of authorization.

On those grounds,

## THE COURT

hereby orders as follows:

(1) The request by the Rechter-commissaris, Groningen, is declared admissible.

(2) The Commission is ordered to forward to the Court a list of the reports drawn up between 1983 and 1987 by Commission officials who carried out inspections in the Netherlands with regard to sea fisheries and to submit to the Court in respect of the reports which the Commission refuses to produce to the Rechter-commissaris, Groningen, a statement of the imperative reasons relating to the need to avoid any interference with the functioning and independence of the Communities which justify that refusal.

(3) The reports in respect of which the Commission does not rely on the said imperative reasons are to be transmitted forthwith to the Rechter-commissaris, Groningen.

(4) The Court will rule at a later date on the request for production of the reports in respect of which the Commission relies on the said imperative reasons.

(5) The Commission is ordered to authorize its officials to be examined as witnesses before the Rechter-commissaris, Groningen, with regard to their findings during the inspections carried out in the Netherlands between 1983 and 1987 in the sea fisheries sector, and to submit to the Court in respect of the officials for whom such authorization is refused a statement of the imperative reasons relating to the need to safeguard the interests of the Communities which justify refusal of authorization.

(6) The Court will rule at a later date on the request concerning the officials whom the Commission refuses to authorize to be examined as witnesses in reliance on the said imperative reasons.

(7) Costs are reserved.

Luxembourg, 13 July 1990.

J.-G. Giraud                                                          O. Due

Registrar                                                             President