**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                    :
NEXTERA ENERGY GLOBAL HOLDINGS                      :
B.V. and NEXTERA ENERGY SPAIN                       :
HOLDINGS B.V.,                                      :
                                                    :
                              Petitioners,          :
                                                    :   Civil Action No. 19-cv-01618-TSC
                    v.                               :
                                                    :
KINGDOM OF SPAIN                                    :
                                                    :
                              Respondent            :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

**MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR**
**PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

     A.     NextEra's Investment and the ICSID Convention ................................................ 4
     B.     NextEra's ICSID Arbitration ............................................................................... 6
     C.     Spain's Annulment Application ........................................................................... 7
     D.     NextEra's Petition in This Court ........................................................................ 7
     E.     The Dutch Action ................................................................................................ 8

LEGAL ARGUMENT ....................................................................................................... 10

I. A PRELIMINARY INJUNCTION IS NECESSARY TO PRESERVE THIS COURT'S
     JURISDICTION AGAINST SPAIN'S COLLATERAL ATTACK IN THE
     DUTCH COURTS ........................................................................................................ 10

     A.     An Anti-Suit Injunction Is Warranted to Preserve This Court's Jurisdiction
          and Uphold the Specific Congressional Mandate That U.S. Courts
          Recognize and Enforce ICSID Awards .............................................................. 10
     *1.*    *The Dutch Action Improperly Threatens the Jurisdiction of this Court to*
          *Recognize and Enforce the Award Pursuant to U.S. Federal Statute* ................. 11
     *2.*    *Spain's Evasion of Important Public Policies of the United States Should*
          *Be Enjoined* ........................................................................................................ 16
     B.     This Matter Also Satisfies the Traditional Requirements for Preliminary
          Injunctive Relief ................................................................................................. 19
     *1.*    *An Anti-Suit Injunction Here Is Likely to Succeed* ............................................. 19
     *2.*    *The Dutch Action Threatens Irreparable Harm to NextEra and This Court* ......... 20
     *3.*    *A Preliminary Injunction Would Not Substantially Harm Other Parties'*
          *Interests* ............................................................................................................. 21
     *4.*    *An Anti-Suit Injunction Would Serve the Public Interest As Set Forth in*
          *Federal Law* ....................................................................................................... 22

II. A TEMPORARY RESTRAINING ORDER IS NECESSARY TO MAINTAIN THE
     STATUS QUO PENDING THE COURT'S RULING ON THE INSTANT
     MOTION .................................................................................................................... 23

CONCLUSION ................................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*American Horse Protection Ass'n v. Lyng*,
    690 F. Supp. 40 (D.D.C. 1988) ................................................................................... 19

*BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition*
    *Program Administration*,
    195 F. Supp. 3d 776 (D. Md. 2016) ........................................................................... 16

*Barrow v. Graham*,
    124 F. Supp. 2d 714 (D.D.C. 2000) ........................................................................... 23

*BCB Holdings Ltd. v. Government of Belize*,
    232 F. Supp. 3d 28 (D.D.C. 2017) ...................................................................... 11, 15

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ..................................................................................... 19

*Hulley Enterprises Ltd. v. Russian Federation*,
    Civil Action No. 14-1996 (BAH),
    2022 WL 1102200 (D.D.C. Apr. 13, 2022) ............................................................... 20

\*   *Jolen, Inc. v. Kundan Rice Mills, Ltd.*,
    No. 19-cv-1296 (PKC),
    2019 WL 1559173 (S.D.N.Y. Apr. 9, 2019) ......................................... 10, 11, 12, 17, 22

\*   *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    500 F.3d 111 (2d Cir. 2007) ............................................................... 11, 12, 14, 22

*Laker Airways Ltd. v. Pan American World Airways*,
    559 F. Supp. 1124 (D.D.C. 1983) .............................................................................. 21

\*   *Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ................................................... 10, 11, 14, 15, 16, 17

\*   *Micula v. Government of Romania*,
    404 F. Supp. 3d 265 (D.D.C. 2019) ...................................................... 16, 17, 18, 21

*Micula v. Government of Romania*,
    No. 20-7116,
    2022 WL 2281645 (D.C. Cir. June 24, 2022) ..................................................... 18, 20

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) ........................................................................................ 6, 16

*NextEra Energy Global Holdings B.V. v. Kingdom of Spain*,
No. 19-CV-01618 (TSC),
2020 WL 5816238 (D.D.C. Sept. 30, 2020) ................................................................. 8

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
361 F.3d 11 (1st Cir. 2004) ......................................................................................... 22

*Rich v. Butowsky*,
Civil Case No. 18-681 (RJL),
2020 WL 7016436 (D.D.C. Mar. 31, 2020) ........................................... 14, 19, 20, 21, 22

*Tatneft v. Ukraine*,
21 F.4th 829 (D.C. Cir. 2021) ....................................................................................... 3

*Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*,
No. CV-05-411-LRS,
2009 WL 4716037 (E.D. Wash. Dec. 8, 2009) ...................................................... 15, 21

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
414 F. Supp. 3d 94 (D.D.C. 2019) ........................................................................... 5, 16

*Tidewater Investment SRL v. Bolivarian Republic of Venezuela*,
Civil Action No. 17-1457 (TJK),
2018 WL 6605633 (D.D.C. Dec. 17, 2018) ............................................................ 6, 16

## STATUTES

22 U.S.C. § 1650a ........................................................................................................... 17

22 U.S.C. § 1650a(a) ................................................................................. 5, 7, 12, 13, 16, 20

28 U.S.C. § 1331 ............................................................................................................. 16

## OTHER AUTHORITIES

11 C. Wright & A. Miller, *Fed. Prac. & Proc.* 2947 (Supp. 1986) ............................... 19

Convention on the Settlement of Investment Disputes between States and Nationals of Other
States, Nov. 18, 1965, 575 U.N.T.S. 159 ......................................................... 1, 5, 7, 13

Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95 ............................................ 4, 5, 12

Petitioners NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (collectively, "NextEra") respectfully submit this Memorandum in Support of Petitioners' Motion for Preliminary Injunction and Temporary Restraining Order (1) to prevent Respondent the Kingdom of Spain ("Spain") from pursuing claims in a court action it recently filed in the Netherlands that improperly seek to enjoin NextEra from pursuing the present action in this Court, and (2) to direct Spain to cease and desist from pursuing any other foreign litigation that interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm Arbitral Award Pursuant to the 1965 ICSID Convention filed on June 3, 2019 ("Petition") (ECF No. 1).

## PRELIMINARY STATEMENT

NextEra, Netherlands-incorporated affiliates of a green energy company based in the United States, commenced the instant proceedings on June 3, 2019, to enforce an arbitral award (the "Award") issued pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Nov. 18, 1965, 575 U.N.T.S. 159 (the "ICSID Convention"), to compensate NextEra for Spain's improper interference with NextEra's investments in solar power projects in Spain.  The merits of NextEra's Petition have been briefed by the parties twice over.  The Court's jurisdiction and responsibility to recognize and enforce the Award, dictated by federal statute, are clear and straightforward.  However, on December 22, 2022, without prior notice, Spain served a writ of summons on NextEra, commencing an urgent application in the District Court of Amsterdam (the "Dutch Action") seeking an interlocutory decree requiring NextEra to suspend proceedings before this Court.  On January 25, 2023, Spain is due to submit its writ to the court in the Netherlands, and NextEra will be required to make an appearance in the case.

Spain's eleventh-hour filing in the Dutch court is a brazen frontal attack on this Court's jurisdiction to recognize and enforce awards under the ICSID Convention as mandated by federal

1

statute, and indeed on the ICSID Convention system as a whole. Spain's agenda, and its intention to interfere with this Court's jurisdiction, could not be more explicit: its first request for relief in the Dutch Action seeks an order requiring NextEra "to take all actions necessary to suspend the proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618." *See* Declaration of Bradley A. Klein ("Klein Decl.") Exs. 1, 2 ("Dutch Writ"), at 31 (Claim A). The plain goal of Spain's blatant forum shopping is to interfere with this Court's proceedings, preventing the Court from performing its duty under U.S. statute— and the duty of the United States under the ICSID Convention—to treat an award of an ICSID tribunal as a final judgment and enforce it accordingly.

Spain's pleading dispels any doubt that it holds the ICSID Convention, and the finality of the Award, in utter contempt. It contends in the Dutch Action that it "is entitled to and has an interest in a worldwide injunction prohibiting NextEra from taking implementing measures aimed at enforcing the arbitral award." *Id.* ¶ 21.1. Spain's asserted "interest" in doing so is based on its (erroneous and discredited) claim, among others, that it somehow never agreed to arbitrate. If that argument seems familiar to this Court, it is, because it retreads the very same arguments Spain has presented previously in this action, arguments already considered and rejected by both the ICSID tribunal and the ICSID annulment committee—the only bodies with authority under the ICSID Convention to determine the veracity and enforceability of an ICSID claim and award.

Indeed, the very fact that Spain has resorted to relief in the Dutch courts demonstrates that it now appears to understand both that this Court will reject these arguments *and* that the D.C. Circuit will as well. In the last 18 months, a series of decisions of the D.C. Circuit (fully briefed before this Court) have already undercut any basis for Spain to resist the Petition. And last month, a court in this Circuit rejected very similar "intra-EU" arguments in a case involving

Romania, thus extinguishing any vestigial hope Spain may have had in reviving its "intra-EU" arguments. *See Micula v. Gov't of Romania*, No. 1:17-cv-02332-APM, ECF No. 203 (D.D.C. Dec. 22, 2022) (denying motion to vacate judgments).[1] Now, in a desperate roll of the dice, Spain is abandoning any pretense of respecting the U.S. courts, and seeks relief in a completely new venue.

Spain's gamesmanship should not be tolerated. If countries like Spain are able to enjoin legitimate enforcement proceedings of ICSID arbitral awards simply by fleeing to another forum, then the jurisdiction of the U.S. courts to recognize and enforce ICSID awards effectively would be nullified, and the entire ICSID Convention system—to which the United States is a contracting state—would be up for grabs.[2]

An anti-suit preliminary injunction is necessary to prevent Spain's attack on this Court's jurisdiction. A temporary restraining order is also necessary to preserve the status quo and assure that no claims in the Dutch Action undermine this Court's jurisdiction before the Court can hear and rule upon the present Motion and NextEra's Petition.

---

[1] Additionally, on October 3, 2022, the United States Supreme Court denied a petition for certiorari in *Ukraine v. Tatneft*, the object of which was to revive the plea of *forum non conveniens* in an award enforcement proceeding. The D.C. Circuit in that case emphatically closed the door on the application of *forum non conveniens* in cases such as this. *See Tatneft v. Ukraine*, 21 F.4th 829, 840–41 (D.C. Cir. 2021). The Supreme Court's denial of certiorari marks a further nail in the proverbial coffin for Spain's *forum non conveniens* defense in this case. Small wonder that Spain has now turned to desperation tactics and seeks to enjoin this action abroad.

[2] Spain's end-run around this Court's jurisdiction is not an isolated case but a trial run, and its ramifications if successful would be far-reaching. Over two dozen ICSID awards—including more than ten with Spain as the respondent—have been decided in favor of investors other than NextEra in the face of the same European law arguments that Spain continues to advance. *See* ECF No. 68-1 ¶ 115 & n.187. More than ten such ICSID awards are the subject of pending proceedings in this Circuit. *See infra* note 9.

**FACTUAL BACKGROUND**

NextEra's instant motion was precipitated by Spain's December 22, 2022, service of a writ of summons on NextEra, initiating proceedings in the District Court of Amsterdam.  *See* Dutch Writ.  Spain's claims in the Dutch Action are a direct assault on this Court's jurisdiction to decide NextEra's Petition.  Spain seeks, *inter alia*, an order compelling NextEra and its affiliates "to take all actions necessary to suspend and hold in abeyance the proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618," Dutch Writ at 32–33 (Claim L), and, potentially, to withdraw these proceedings altogether, *id.* at 33 (Claim M); *see also id.* at 31 (Claim A, seeking similarly targeted provisional relief).

It is sufficient that this Court's proceedings are squarely within the ambit of the anti-suit orders Spain seeks in the Dutch Action to justify a preliminary injunction here.  The history of this case leading up to the Dutch Action simply underscores the egregiousness of Spain's tactics.[3]

**A.    NextEra's Investment and the ICSID Convention**

The underlying dispute in this action arose out of large investments that NextEra made from 2010 to 2012 in two concentrated solar power projects in Spain.  ECF No. 68, at 9.  Spain had sought to attract this type of foreign investment through a series of legislative initiatives designed to encourage investment in its renewable energy sector.  *Id.*  In reliance on that pro-investment regulatory regime, and corresponding assurances by Spanish officials, NextEra invested approximately €750 million in the projects.  *Id.*

NextEra's investments were governed by the Energy Charter Treaty ("ECT"), Dec. 17, 1994, 2080 U.N.T.S. 95 (ECF No. 1-6), a multinational treaty ratified by both Spain and the

---

[3] A more detailed recitation of the full history and context surrounding the case can be found in NextEra's Memorandum in Opposition to Spain's Motion to Dismiss and in Support of Petitioners' Cross-Motion for Summary Judgment.  *See* ECF No. 68, at 9–15.

Netherlands.  *See* ECF No. 68, at 10.  The ECT provides that disputes can, at the investor's election, be resolved through arbitration pursuant to the ICSID Convention.  *See* ECT art. 26(3), 26(4).  By ratifying the ECT, Spain "unconditional[ly] consent[ed]" to the jurisdiction of ICSID (among other enumerated arbitral regimes) to adjudicate any disputes that arise under the ECT, such as the dispute here.  *See* ECT art. 26(3)(a), 26(4)(a), 26(8).

The ICSID Convention is a multilateral treaty to which the United States, Spain, and the Netherlands are parties.  It provides that any dispute arising from an investment may be arbitrated before an ICSID tribunal at the consent of the host state and the investor.  *See* ICSID Convention art. 25.  The ICSID regime is a robust arbitral system that is expressly designed to be independent of and insulated from interference by national courts.  An award issued by an ICSID arbitral tribunal is therefore "binding" and not subject to appeal to or review by the courts of any state.  *Id.* art. 53(1).  Rather, each state party to the ICSID Convention is bound to recognize and enforce each ICSID award "as if it were a final judgment of a court in that State."  *Id.* art. 54(1).

In the United States, Congress has implemented the ICSID Convention in the Convention on the Settlement of Investment Disputes Act of 1966, which provides as follows:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States.  ***The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.***  The Federal Arbitration Act . . . shall not apply to enforcement of awards rendered pursuant to the convention.

22 U.S.C. § 1650a(a) (emphasis added).  U.S. federal courts recognize that this statute, with its mandatory language, confers on federal courts a duty to recognize and enforce ICSID awards without engaging in an independent substantive review of their merits.  *See TECO Guatemala Holdings, LLC v. Rep. of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019) ("Congress expressly precluded courts from engaging in the more robust—although still 'extremely limited' . . . form of

judicial review applicable under the Federal Arbitration Act . . . ." (citations omitted)); *Tidewater Invt. SRL v. Bolivarian Rep. of Venezuela*, Civil Action No. 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018) ("[T]he language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of [petitioner]'s entitlement to any unpaid claims under the Award."); *Mobil Cerro Negro, Ltd. v. Bolivarian Rep. of Venezuela*, 863 F.3d 96, 118 (2d Cir. 2017) ("The ICSID award-debtor . . . would not be permitted to make substantive challenges to the award.").

**B.    NextEra's ICSID Arbitration**

Years after NextEra had made its investments, Spain enacted a series of laws from 2012 to 2014 that fundamentally and radically changed the investment regime on which NextEra had relied, inflicting substantial harm on NextEra.  ECF No. 68, at 9–10.  To address that harm, on May 12, 2014, NextEra initiated an ICSID arbitration against Spain, alleging that Spain's actions harmed its investments and thus violated the ECT, and, on January 23, 2015, an ICSID tribunal (the "Tribunal") was constituted to hear those claims.  *Id.* at 12.

Over the course of the next four years, the Tribunal received substantial briefing, evidence, and oral argument from both NextEra and Spain, as well as written submissions from the European Commission ("EC").  *Id.* at 12–13.  Among other arguments, Spain contended that the Tribunal lacked jurisdiction to resolve NextEra's claims because, under European law, Articles 267 and 344 of the Treaty on the Functioning of the European Union preclude the arbitration of ECT claims brought by investors of European Union member states against other member states (its "intra-EU objection").  *See* ECF No. 1-4, Annex A ¶¶ 281–86.  Spain also contended that European law on State aid was binding on and constrained NextEra's claims.  *See id.* ¶¶ 510–16, n.491.

On March 12, 2019, the Tribunal rejected Spain's arguments in a unanimous, 235-page Decision on Jurisdiction, Liability and Quantum Principles, determining that Spain had breached

its obligation to provide NextEra fair and equitable treatment under Article 10(1) of the ECT.  *Id.*
¶ 682.  On May 31, 2019, the Tribunal issued its unanimous final Award directing Spain to pay
NextEra €290.6 million in damages, plus interest.  ECF No. 1-4 ¶ 37.

**C.    Spain's Annulment Application**

The ICSID Convention directs that the only process by which a final award of an ICSID
tribunal may be reviewed on its merits is an ICSID annulment proceeding.  ICSID Convention
art. 52; *see also id.* art. 53(1) (precluding domestic courts and other institutions from reviewing
final awards on the merits).  On September 26, 2019, in accordance with Article 52(1)(b) of the
ICSID Convention, Spain applied to ICSID to annul the Award.  ECF No. 69-60.  Spain advanced
22 separate grounds in its application, including the same arguments concerning the applicability
and precedence of European law that Spain raised unsuccessfully before the Tribunal.  *See, e.g.*,
*id.* ¶¶ 216–221, 299–303 (intra-EU objection); *id.* ¶¶ 251–56 (State aid doctrine).

Spain's application was heard by three annulment committee members appointed by ICSID
(the "Annulment Committee").  ECF No. 68, at 14–15.  On March 18, 2022, following further
briefing, evidence, and oral argument by both Spain and NextEra and written submissions by the
EC, the Annulment Committee issued a 147-page decision unanimously dismissing Spain's
annulment application "in its entirety."  ECF No. 69-60 ¶ 533(1).

**D.    NextEra's Petition in This Court**

On June 3, 2019, on the heels of securing its unanimous arbitral Award, NextEra filed the
instant Petition seeking to recognize and enforce the Award as provided by 22 U.S.C. § 1650a(a)
(providing that an ICSID award "shall be enforced and shall be given the same full faith and credit
as if the award were a final judgment of a court of general jurisdiction of one of the several States").
Spain attempted to use the ensuing proceedings in this Court to relitigate the same arguments
previously rejected by ICSID, moving to dismiss the Petition based on the same European law

arguments that Spain had raised unsuccessfully before the Tribunal and the Annulment Committee. *See* ECF No. 15, Argument § III.

The Court stayed this matter pending resolution of Spain's annulment application. *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, No. 19-CV-01618 (TSC), 2020 WL 5816238, at *3 (D.D.C. Sept. 30, 2020). On April 29, 2022, the Court lifted the stay upon news of the Annulment Committee's dismissal of Spain's annulment application. Spain renewed its Motion to Dismiss on May 2, 2022, ECF No. 62, relying once again—despite ICSID's repeated rejection of identical arguments—on the same arguments and authorities from its initial motion. *See* ECF No. 62-78 § IV. The parties have completed briefing of Spain's renewed Motion to Dismiss and NextEra's Cross-Motion for Summary Judgment, ECF No. 70, including a further *amicus* brief filed by the EC. ECF No. 67. The Petition is now fully briefed and ready for resolution by this Court.

## E.    **The Dutch Action**

On December 22, 2022, without prior notice, Spain served the Dutch Writ on NextEra. Notwithstanding the years of litigation that Spain has pursued before this Court, Spain characterizes NextEra's Petition in this Court as an "abuse of power" that justifies "immediate" relief. *See* Dutch Writ ¶ 19. Spain asserts that "[i]t is of great (urgent) importance that NextEra is prohibited, pending these proceedings, from continuing with the enforcement that has already started," *id.* ¶ 19.1, because "there is a real risk of restitution on the part of NextEra." Dutch Writ ¶¶ 19.3, 23.2. Spain provides no further explanation as to why its "urgent" challenge to this Court's jurisdiction arrives so late, more than three years after NextEra's commencement of this enforcement proceeding.

The Dutch Action explicitly targets NextEra's ability to maintain proceedings before this Court: Spain requests an order requiring NextEra to "take all actions necessary to withdraw the

proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618 . . . under penalty of a daily payment of EUR 30,000 per day for each day or part of a day that Defendants fail to effect such suspension." *Id.* at 33 (Claim M); *see also id.* at 32–33 (Claim L). Spain further requests a series of ***worldwide*** injunctions, preventing NextEra from initiating any action to confirm the Award or pursuing payment of the Award from Spain through any other legal means, *id.* at 33 (Claims N–P), and a separate civil "penalty" that could exceed the amount of the damages in the Award to NextEra, *id.* (Claim Q). Spain's arguments in support of its requested injunctions are the same recycled arguments it raised unsuccessfully in the arbitration, during the annulment proceedings, and before this Court. *See* Dutch Writ ¶¶ 6–16 (concerning the European State aid doctrine), 17 (concerning its intra-EU objection).

The Dutch Writ requires NextEra "to appear at the public hearing of the District Court of Amsterdam," "[o]n Wednesday, January 25, 2023, at ten (10:00) a.m." Dutch Writ at 1. Following NextEra's formal appearance, Spain's claims are set to proceed, including several "incident" provisional relief claims that will progress on an expedited timeline. These expedited incident claims include, among others, a claim for an order requiring NextEra "to take all actions necessary to suspend the proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618 until final judgment is entered in the present action . . . under penalty of a daily penalty of EUR 30,000 for each day or part of a day that Defendants fail to effect such suspension." *Id.* at 31 (Claim A); *see also id.* at 31–32 (Claims B–D, seeking worldwide provisional injunctions, and Claim E, seeking a further civil "penalty").

## LEGAL ARGUMENT

### I.

### A PRELIMINARY INJUNCTION IS NECESSARY TO PRESERVE THIS COURT'S JURISDICTION AGAINST SPAIN'S COLLATERAL ATTACK IN THE DUTCH COURTS

It is "well settled" that a federal court may "control the conduct of persons subject to [its] jurisdiction to the extent of forbidding them from suing in foreign jurisdictions." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984). Spain's attempt to circumvent this Court's jurisdiction in the Dutch Action warrants such an injunction here, whether considered under the standard used in this Circuit for anti-suit injunctions or the traditional standard for a preliminary injunction.

### A.    An Anti-Suit Injunction Is Warranted to Preserve This Court's Jurisdiction and Uphold the Specific Congressional Mandate That U.S. Courts Recognize and Enforce ICSID Awards

An injunction forbidding a party from bringing suit in foreign courts is appropriate either "[1] to protect the jurisdiction of the enjoining court, or [2] to prevent the litigant's evasion of the important public policies of the forum." *Laker Airways*, 731 F.2d at 927. Here, an injunction is warranted on both counts. It is well established that federal courts have the power and the responsibility to enjoin foreign proceedings "specifically intended to interfere with and terminate" proceedings in the United States. *Id.* at 938. The Dutch Action expressly seeks to strip this Court of its jurisdiction to recognize and enforce the Award, frustrating the intent and policies of Congress in adopting the ICSID Convention.[4]

---

[4] To the extent that courts have required, as a threshold matter, that the foreign proceeding sought to be enjoined implicate the same parties and issues as in the enjoining court, *see, e.g., Jolen, Inc. v. Kundan Rice Mills, Ltd.*, 19-cv-1296 (PKC), 2019 WL 1559173, at *2 (S.D.N.Y. Apr. 9, 2019) (noting that "the threshold requirements for an anti-suit injunction are that the parties are the same in both matters and resolution of the case before the enjoining court is likely dispositive of the action to be enjoined"), those elements are easily met here. The parties to the Dutch Action are identical to the parties in this case. And both this and the Dutch Action relate to exactly the same

1.    *The Dutch Action Improperly Threatens the Jurisdiction of this Court to Recognize and Enforce the Award Pursuant to U.S. Federal Statute*

An injunction is necessary to preserve the Court's ability to exercise its jurisdiction and fulfill its statutory duty to recognize and enforce the Award.  A preliminary anti-suit injunction is warranted where it would "protect the jurisdiction of the enjoining court" from nullification in a competing ruling.  *Laker Airways*, 731 F.2d at 927.  Indeed, this is the most common justification for such relief.  *See BCB Holdings Ltd. v. Gov't of Belize*, 232 F. Supp. 3d 28, 34–35 (D.D.C. 2017) ("Anti-suit injunctions are intended to protect the Court's jurisdiction.").  Where a litigant "threatens to paralyze the jurisdiction" of the Court via a collateral attack in a foreign forum, the Court has a "duty to protect [its] legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants."  *Laker Airways*, 731 F.2d at 927.

In *Laker Airways*, which remains the seminal case on anti-suit injunctions in this Circuit, the D.C. Circuit affirmed an order prohibiting foreign defendants in an antitrust suit from instituting preemptive suits in the United Kingdom that sought to terminate the U.S. action.  In so doing, the D.C. Circuit focused on the essentially interdictory nature of the relief sought by defendants, the "sole purpose of [which was] to *terminate* [the U.S.] action."  731 F.2d at 930.

The Dutch Action, by its express terms, threatens to paralyze the Court's proceedings here in precisely that way.  If the Dutch court grants Spain the relief it seeks, it could have no other effect but to prevent this Court from performing its congressionally mandated duty to recognize

---

"underlying dispute" regarding the recognition and enforcement of the Award, such that the requested injunction is wholly appropriate.  *See id.* (noting that element was met where both a proceeding before the U.S. court to confirm an arbitral award and a foreign proceeding exclusively related to the "validity and enforceability of the Partial Award"); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 121 (2d Cir. 2007) ("*KBC*") (finding element met to support district court's injunction of defendant's foreign proceeding challenging validity of arbitral award).

and enforce the Award. *See, e.g.*, Dutch Writ at 31 (Claim A), 32–33 (Claims L–M); *see also KBC*, 500 F.3d at 125 (affirming anti-suit injunction barring suit in Cayman Islands alleging arbitral award was premised on fraud, noting that foreign proceeding had "no power to modify or annul the Award" pursuant to the applicable arbitral regime, and thus concluding that the district court's anti-suit injunction was appropriate "to prevent [Defendant] from engaging in litigation that would tend to undermine the regime established by the Convention for recognition and enforcement of arbitral awards"); *Jolen,* 2019 WL 1559173, at *4 (granting motion of petitioner, in action seeking to enforce partial arbitral award, to enjoin action challenging arbitral award in the courts of India, explaining that although "there has been no federal judgment in this case to date . . . there is no legitimate jurisdiction over a suit seeking to vitiate the arbitration award in India" and any ruling by the Indian court "threaten[ed] to undermine the jurisdiction of this Court to confirm or enforce the Partial Award").[5]

Spain's collateral attack on the Court's jurisdiction here is especially brazen given the clear requirements of the ICSID arbitral regime. Both parties to this case agreed to the jurisdiction and processes of ICSID. *See* ECT art. 26(3)(a), 26(4)(a), 26(8). The ICSID Tribunal conducted proceedings and issued the Award. *See* ECF No. 1-4. NextEra now seeks confirmation and recognition of the Award pursuant to the statutory authority that guarantees such recognition in the U.S. federal courts. 22 U.S.C. § 1650a(a) (providing that ICSID awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States"). Spain attempted, as was its right, to challenge

---

[5] As NextEra fully explains in its Memorandum in Opposition to Spain's Motion to Dismiss and in Support of Petitioners' Cross-Motion for Summary Judgment, ECF No. 68, this Court has clear and straightforward jurisdiction to grant NextEra's Petition to confirm and enter the Award as a Judgment against Spain. Spain's arguments to the contrary wholly lack merit and should be rejected.

the Award through the ICSID annulment process. *See* ECF No. 69-60. ICSID ultimately completed that process by denying Spain's challenge, *see id.* ¶ 533(1), rejecting many of the same arguments Spain raises in this matter and in the Dutch Action. *See supra* Sections I.D–I.E.

It bears emphasis that the ICSID Convention gives no scope—none—to a foreign national court, such as the Dutch court, to interfere with this scheme. Quite the contrary: by the explicit terms of Article 26 the ICSID Convention, to which Spain, the United States, and the Netherlands are all parties, a binding consent to ICSID arbitration "shall, unless otherwise stated, be deemed consent to such arbitration ***to the exclusion of any other remedy***." ICSID Convention art. 26 (emphasis added). Article 53 furthers this same intent:

> The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

ICSID Convention art. 53(1). And under Article 54, "each Contracting State"—including each of Spain, the United States, and the Netherlands—"***shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State.***" ICSID Convention art. 54(1) (emphasis added).

Under the treaty framework that it explicitly accepted when it signed the ICSID Convention in 1994, Spain thus has exhausted its avenues for relief, and the only remaining thing that this Court, or any national court, has the power to do is recognize the Award and enter a final judgment enforcing it. *See* 22 U.S.C. § 1650a(a); ICSID Convention art. 54(1). No court of any ICSID contracting state (including those of the Netherlands) may interfere with this scheme.

Instead of respecting the treaty and the finality of the Award, however, Spain commenced the Dutch Action, in which it seeks relief by resurrecting in the Netherlands the same arguments

rejected by the ICSID Tribunal and Annulment Committee and reasserted in this Court. *See supra* Sections D–E. And in plain derogation of Articles 26, 53, and 54 of the ICSID Convention, the Dutch Action explicitly seeks to suspend this Court's ability to perform its statutory duty to recognize and enforce the Award. *See, e.g.*, Dutch Writ at 31 (Claim A), 32–33 (Claims L–M). This tactic aims to circumvent not only the Court's own adjudicative authority but that of ICSID itself, the arbitral awards of which form the bedrock of the Convention, which Congress has required this Court to enforce.

Nor is it any defense for Spain to appeal to principles of comity to protect the Dutch Action. An anti-suit injunction would not offend those principles. "No foreign court can supersede the right and obligation of the United States courts to decide whether Congress has created a remedy." *Laker Airways*, 731 F.2d at 934–37. Moreover, in the context of an arbitral award, comity considerations are greatly reduced where, as here, the foreign action purportedly challenging the award is not one "contemplated" by the arbitral regime but instead is "intended to undermine" the U.S. court's clearly defined role within that regime. *KBC*, 500 F.3d at 127.

Similar to the injunction upheld in *Laker Airways*, the injunction NextEra requests here is "purely defensive," a response to a litigant's attempt to seek an ***offensive*** injunction in a foreign court. 731 F.2d at 938. A defensive injunction entered by this Court, tailored to address only that part of the Dutch Action that immediately threatens this Court's jurisdiction, would preserve the authority this Court has by statute to effectuate and enforce the Award. *Id.*[6] It would reach no

---

[6] The fact that "substantial time has elapsed between the commencement of the two actions" in this case further underscores the appropriateness of the relief NextEra seeks. *Laker Airways*, 731 F.2d at 929 n.63. NextEra initiated this proceeding to recognize and enforce the Award in June 2019. The parties' dueling dispositive motions have been fully briefed and remain pending before this Court. The Dutch Action, by contrast, has only just been initiated. Thus "[t]he relative stages of the two suits also cuts in [NextEra's] favor." *Rich v. Butowsky*, Civil Case No. 18-681 (RJL), 2020 WL 7016436, at *2 (D.D.C. Mar. 31, 2020).

further than to prevent another proceeding from restraining that authority. *See Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, No. CV-05-411-LRS, 2009 WL 4716037, at *3 (E.D. Wash. Dec. 8, 2009) (applying anti-suit injunction test and granting "the less intrusive relief of enjoining [respondents] from seeking an anti-suit injunction").[7]

Spain's bald attempt to impede the Court's jurisdiction in this matter is an attack on the Court's exercise of its statutory authority and should not be permitted. And Spain's status as a foreign sovereign does not counsel otherwise. The dispute underlying this action was arbitrated pursuant to the exclusive jurisdiction and processes of ICSID, a neutral body to which Spain voluntarily submitted. For all of the reasons described in NextEra's motion for summary judgment, ECF No. 68, and in this Motion, this Court both exercises jurisdiction over Spain and is tasked with the duty under federal law to recognize and enforce the Award against Spain. Any comity considerations are inherently diminished where, as here, the foreign suit initiated by Spain was filed in the court of another country as a transparent attempt to collaterally attack the Award. *See Laker Airways*, 731 F.3d at 954 n.175 (noting the reduced comity considerations where Dutch and Belgian defendants "attempt[ed] to use the law and courts of a third country . . . to frustrate a previously commenced action in the United States"). An anti-suit injunction prohibiting Spain from seeking to enjoin this action, and from pursuing any similar collateral challenges to the Court's jurisdiction abroad, is both appropriate and necessary to safeguard the Court's ability to

---

[7] Of course, the Court could also obviate the need for an injunction by granting Petitioners' motion for summary judgment and entering judgment on the Award. In *BCB Holdings*, Judge Kollar-Kotelly similarly considered whether to issue temporary injunctive relief against a respondent's attempt to obtain relief in Belize preventing the petitioners from enforcing an arbitral judgment against the respondent worldwide. 232 F. Supp. 3d at 30. The court concluded that although the respondent's actions were aimed at preventing the petitioners from enforcing the judgment, the court's jurisdiction was not threatened because the court had already entered judgment in the case and "there [was] no issue left for [it] to adjudicate." *Id.* at 35.

15

exercise its authority under U.S. law. *See BAE Systems Tech. Sol. & Servs., Inc. v. Republic of Korea's Defense Acquisition Program Admin.*, 195 F. Supp. 3d 776 (D. Md. 2016) (granting preliminary anti-suit injunction restraining Republic of Korea from taking further action to prosecute related proceeding in Korea).

> 2. *Spain's Evasion of Important Public Policies of the United States Should Be Enjoined*

A preliminary injunction is also necessary in light of Congress's strong public policy interests in recognizing and enforcing awards of ICSID tribunals.  A preliminary anti-suit injunction is warranted where it would "prevent the litigant's evasion of the important public policies of the forum." *Laker Airways*, 731 F.2d at 927.  Comity does not require the Court "to acquiesce in pre- or postjudgment conduct by litigants which frustrates the significant policies of the domestic forum." *Id.* at 915.  Indeed, "deference to the foreign proceeding may be denied because of the litigant's unconscionable evasion of the domestic laws." *Id.* at 927 n.71.

Here, an anti-suit injunction is necessary to preserve the United States' policy of supporting the integrity and enforceability of ICSID awards.  That policy is apparent in the governing statute itself, where Congress confirmed that an ICSID award is considered "a right arising under a treaty of the United States," 22 U.S.C. § 1650a(a), thereby bringing it within the Court's jurisdiction, *see* 28 U.S.C. § 1331.  Congress directed that such an award "shall be enforced" by the Court, without further argument or exercise of discretion.  22 U.S.C. § 1650a(a); *see TECO Guatemala*, 414 F. Supp. 3d at 101; *Tidewater Invt.*, 2018 WL 6605633, at *6; *Mobil Cerro Negro*, 863 F.3d at 118. Congress's clear policy upholds the ICSID Convention's purpose "that the courts of a member nation will treat the award as final." *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 276 (D.D.C. 2019) (quoting *Mobil Cerro Negro*, 863 F.3d at 121).

Spain's collateral attack on this Court's authority flouts Congress's public policy of ensuring that ICSID awards are final. Spain, a party to the ICSID Convention and the ECT, has already challenged the validity of the Award through ICSID's established procedures, and those challenges have been rejected. *See* ECF No. 68, at 14–15. The policy reflected in the governing U.S. statute now directs the Court to enter the Award as a judgment. *See* 22 U.S.C. § 1650a. Spain's attempt to thwart NextEra's straightforward enforcement of the Award in another jurisdiction therefore frustrates the policy codified by Congress with respect to ICSID. *See Laker Airways*, 731 F.2d at 932 n.73 ("When the primary purpose of the foreign action is to avoid the regulatory effect of the domestic forum's statutes, then an injunction is more readily issued."). More broadly, Spain's efforts also subvert the United States' "public policies encouraging arbitration and the enforcement of international arbitration law as an efficient means of settling disputes." *Jolen*, 2019 WL 1559173, at *4 (granting anti-suit injunction). Tactics like these amount to the kind of "evasion" of the law of the United States that should be halted by an anti-suit injunction. *See Laker Airways*, 731 F.2d at 927.[8]

The recent opinion of the U.S. District Court for the District of Columbia in *Micula*, 404 F. Supp. 3d, confirms the appropriateness of NextEra's requested relief here. In that case, petitioners sought to enforce an ICSID award they obtained against the Government of Romania. In granting the petition to enforce the award in that case, the court emphasized—in the face of arguments similar to those Spain advances here and in the Netherlands—that its chief task is "simply to consider whether to grant the pending petition and convert the Award to a judgment under § 1650a based on the legal landscape as it presently stands." *Id.* at 283. It rejected the

---

[8] These policies carry particular weight here, where ICSID itself sits within the borders of the District of Columbia, and the United States is a founding member of the World Bank, under whose auspices ICSID operates. *See* ECF No. 68 at 40.

purported contrary applicability of EU law in the process, explaining that such merits-based arguments "must be taken to [ICSID] . . . and [are] not . . . valid ground[s] on which to reject converting the Award in full to a judgment." *Id.* at 285; *see Micula v. Gov't of Romania,* No. 20-7116, 2022 WL 2281645, at \*2 (D.C. Cir. June 24, 2022) (per curiam) (unpublished) (affirming district court's dismissal of Romania's motion for relief from judgment enforcing the award and noting that "Petitioners have not challenged the acts or decisions of a foreign sovereign . . . [they] have merely sought to enforce a decision rendered by a forum for international arbitration to which Romania has voluntarily submitted itself"). Foreign collateral attacks such as Spain's attempt to further forum-shop its claim in the Netherlands do not, and should not, supersede this clear and consistent policy.

Protection of the Court's authority is therefore not only critical to enforcing United States' policies in this case but also to head off even broader challenges to the jurisdiction of U.S. courts to recognize and enforce awards issued by ICSID tribunals, threatening the entire ICSID system and Congress's manifest policy goals.[9]

---

[9] Spain's strategy, if successful, would no doubt be replicated in the many other similarly situated cases against Spain pending in this Circuit, including one before this very Court. *See* Complaint, *9Ren Holding S.A.R.L. v. Spain*, 1:19-cv-01871 (Chutkan, J.) (D.D.C.) (petitioning to enforce ICSID award rendered against Spain in 2019 concerning claims made under the ECT); Petition to Enforce Arbitral Award, *BayWa r.e. AG v. Spain*, 1:22-cv-02403 (Mehta, J.) (D.D.C.) (petitioning to enforce ICSID award rendered against Spain in 2021 concerning claims made under the ECT); Complaint, *Cube Infrastructure Fund SICAV v. Spain*, 1:20-cv-01708 (Sullivan, J.) (D.D.C.) (same; award issued in 2019); Petition to Enforce Arbitral Award, *Hydro Energy 1 S.à.r.l. v. Spain*, 1:21-cv-02463 (Leon, J.) (D.D.C.) (same; award issued in 2020); Complaint, *InfraRed Env't Infrastructure GP Ltd. v. Spain*, 1:20-cv-00817 (Bates, J.) (D.D.C.) (same; award issued in 2019); Petition to Enforce Arbitral Award, *Infrastructure Serv. Luxembourg S.A.R.L. v. Spain*, 1:18-cv-01753 (Sullivan, J.) (D.D.C.) (same; award issued in 2018); Petition to Enforce Arbitral Award, *RREEF Infrastructure (G.P.) Ltd. v. Spain*, 1:19-cv-03783 (Nichols, J.) (D.D.C.) (same; award issued in 2019); Petition to Enforce Arbitral Award, *RWE Renewables GMBH v. Spain*, 1:21-cv-03232 (Cobb, J.) (D.D.C.) (same; award issued in 2020); Petition to Enforce Arbitral Award, *Watkins Holdings S.à r.l. v. Spain*, 1:20-cv-01081 (Hogan, J.) (D.D.C.) (same; award issued in 2020).

**B.**   <u>This Matter Also Satisfies the Traditional Requirements for Preliminary Injunctive Relief</u>

This Circuit's jurisprudence on anti-suit injunctions leaves no doubt that an injunction is warranted here. But an injunction is equally warranted if considered under the traditional factors generally applicable to preliminary injunctions. To obtain a preliminary injunction, a movant must show (1) a likelihood of success on the merits; (2) irreparable harm absent the injunction; (3) the absence of substantial harm to other interested parties; and (4) that an injunction serves the public interest. *Rich*, 2020 WL 7016436, at *1 (D.D.C. Mar. 31, 2020). Within this framework, courts have recognized that "the most compelling reason in favor of entering a Rule 65(a) order is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *American Horse Protection Ass'n v. Lyng*, 690 F. Supp. 40, 42 (D.D.C. 1988) (citing 11 C. Wright & A. Miller, *Fed. Prac. & Proc.* 2947 (Supp. 1986)). Here, the express purpose of Spain's Dutch Action is to render this Court's proceedings futile, thus making an anti-suit injunction appropriate and indeed necessary to allow this Court to perform its statutory duty to recognize and enforce NextEra's Award.

     *1.*    *<u>An Anti-Suit Injunction Here Is Likely to Succeed</u>*

The Court first considers whether the movant is likely to succeed on the merits. *Rich*, 2020 WL 7016436, at *1. NextEra satisfies this standard. In the context of anti-suit injunctions, this factor asks whether the movant can "demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006); *see also Rich*, 2020 WL 7016436, at *1 (explaining that "factors relevant to the likelihood-of-success prong" as applied to anti-suit injunction related to suitability of the injunction as opposed to underlying merits of the claim); *American Horse Protection Ass'n*, 690 F. Supp. at 42–43. As NextEra has explained above, the defensive injunction that it seeks here is

19

wholly appropriate in the face of Spain's attempt to strip this Court of its jurisdiction and congressionally mandated responsibility to recognize and enforce the Award. NextEra satisfies the likelihood of success factor.[10]

     2.    <u>The Dutch Action Threatens Irreparable Harm to NextEra and This Court</u>

The Court next considers whether the movant will suffer irreparable harm absent a preliminary injunction. *Rich*, 2020 WL 7016436, at *1. Here, the harm that NextEra faces is both imminent and irreparable. Although it has prevailed under the arbitral processes and procedures that the parties agreed would govern this dispute, NextEra cannot enforce the Award in the United States absent a judgment from a federal court. NextEra thus seeks such a judgment from this Court, on the basis of explicit Congressional authority that directs federal courts to afford final ICSID awards full faith and credit. 22 U.S.C. § 1650a(a). Spain's claims in the Dutch Action threaten to indefinitely enjoin NextEra from attempting to enforce the Award, not only in this Court but anywhere in the world. Dutch Writ at 31–33 (Claims A–D, L–P). Such a result would obliterate NextEra's ability to recover under an Award that this Court is directed to recognize and enforce.

The harm that NextEra faces is compounded by the roadblocks and delays it has already faced in enforcing the Award, which was first handed down by ICSID—pursuant to procedures assented to by both parties—nearly four years ago. Courts have recognized the harm associated with efforts to indefinitely delay and prolong attempts to enforce valid arbitral awards, including by way of purported collateral challenges such as this one. *See, e.g., Hulley Enterprises Ltd. v.*

_____

[10] Even if this Court were to evaluate the merits of NextEra's underlying Petition under this factor, the Petition is likely to succeed. Spain's attempts to challenge the Award through the exclusive ICSID annulment process, raising the same arguments it raises here and in the Dutch Action, were rejected wholesale. As NextEra explains in its motion for summary judgment, federal law requires the Court to enter the Award as a final judgment entitled to the Court's full faith and credit. *See* ECF No. 68; *see, e.g.*, *Micula*, 2022 WL 2281645; *Micula*, No. 1:17-cv-02332-APM, ECF No. 203 (D.D.C. Dec. 22, 2022).

*Russian Federation*, Civil Action No. 14-1996 (BAH), 2022 WL 1102200, at *5 (D.D.C. Apr. 13, 2022) (denying motion to stay based on pending proceedings before a Dutch court challenging an arbitral award, noting that hardship to petitioners associated with delays in enforcement of the award "only increases with each passing year"); *Micula*, 404 F. Supp. 3d at 283 (confirming that under 22 U.S.C. § 1650a "actions to enforce ICSID awards would not be protracted" (citation omitted)).

The imminent and direct challenge that Spain's claims in the Dutch Action pose both to NextEra's ability to recover under the Award and to this Court's well-defined jurisdiction threatens irreparable harm. *See, e.g., Laker Airways Ltd. v. Pan Am. World Airways*, 559 F. Supp. 1124, 1137–38 (D.D.C. 1983), *aff'd sub nom. Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984) (finding harm to plaintiff irreparable because, absent requested injunction restraining defendants from seeking anti-suit injunction from British court, plaintiff could lose any ability to advance its U.S. claims against defendants). And given the imminence and significance of this risk, here, as in *Laker Airways*, "[l]ess than absolute certainty concerning the [Dutch] court's intentions" regarding Spain's requested relief "suffices to support a finding of irreparable injury." *Id.* at 1137 n.58.

> 3.    *A Preliminary Injunction Would Not Substantially Harm Other Parties' Interests*

The third factor considers whether a preliminary injunction would substantially harm other interested parties. *Rich*, 2020 WL 7016436, at *1. The balance of such equities here tips greatly in NextEra's favor: Spain's proceedings seek to erase NextEra's right to recover under the Award, as well as the jurisdiction of this Court to enforce that right as Congress requires. Moreover, NextEra does not request that the Dutch Action be terminated in its entirety, but instead seeks "an order that . . . will preserve the rights of the parties to proceed before this Court as well." *Teck Metals*, 2009 WL 4716037, at *4.

The prospect that Spain might face enforcement of the Award is not a cognizable hardship because the award is valid under ICSID procedures and Spain consented to ICSID arbitration in the first instance. *Jolen*, 2019 WL 1559173, at *5. "[S]uch an agreement creates awards that are recognizable and enforceable." *Id.* Given the imminent threat posed both to NextEra and this Court's jurisdiction, the benefits of a preliminary injunction far outweigh the inconveniences it might cause to Spain's litigation positions. *See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20-21 (1st Cir. 2004) (noting that absent defendant's "foreign petition calculated to generate interference with an ongoing American case, the district court would have had no need to issue a defensive injunction that sought only to preserve the court's ability to adjudicate the claims before it according to the law of the United States").

4.    *An Anti-Suit Injunction Would Serve the Public Interest As Set Forth in Federal Law*

Finally, the Court considers whether a preliminary injunction would serve the public interest. *Rich*, 2020 WL 7016436, at *1. The injunction NextEra requests here is consistent with the public interest in "encouraging arbitration and the enforcement of international arbitration law as an efficient means of settling disputes." *Jolen*, 2019 WL 1559173, at *5; *see also KBC*, 500 F.3d at 125. Moreover, the requested injunction would reinforce the federal courts' duty to exercise the authority granted to them by Congress to recognize and enforce awards of ICSID tribunals free from foreign interference. Recognition and enforcement of such awards is the express policy of the United States as reflected in both statute and case law. *See supra* Section I.A.2.

The traditional factors applicable to the Court's consideration of a motion for preliminary injunction thus all favor the entry of an anti-suit injunction in this matter. For all these reasons, NextEra respectfully requests that the Court grant this Motion.

## II.
## A TEMPORARY RESTRAINING ORDER IS NECESSARY TO MAINTAIN THE STATUS QUO PENDING THE COURT'S RULING ON THE INSTANT MOTION

"The purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction." *Barrow v. Graham*, 124 F. Supp. 2d 714, 715–16 (D.D.C. 2000).  The standards applicable to a temporary restraining order are coterminous with those applicable to preliminary injunctions. *Id.* at 716.

For all of the reasons described above that support the need for this court to issue an anti-suit injunction, a temporary restraining order is urgently necessary to preserve the status quo until this Court has an opportunity to consider and rule upon NextEra's request for a preliminary injunction.  Spain filed its urgent application with the District Court of Amsterdam on December 22, 2022, without prior notice, and despite the pendency of the proceedings before this Court for over three years.  By the application's own terms, proceedings will be registered and NextEra will be required to enter an appearance in the Dutch court on January 25, 2023.  Dutch Writ at 1.  And NextEra understands that Spain may be able to seek emergency relief from the Dutch court even prior to that date. *See* Klein Decl. ¶ 5.  Without immediate relief from this Court that directs the parties to preserve the status quo and to take no further steps to suspend this action, the Court's jurisdiction will be imperiled.  Accordingly, NextEra respectfully requests that this Court issue a temporary restraining order to ensure that Spain's proceedings before the Dutch court do not interfere with this Court's ability to exercise its jurisdiction pending resolution of the present Motion and NextEra's Petition.

## CONCLUSION

NextEra respectfully requests that the Court grant a preliminary injunction (1) enjoining Spain from (a) seeking an interlocutory decree or any other relief in the Dutch Action or in other

Dutch proceedings requiring NextEra to suspend, hold in abeyance, or withdraw any proceedings before this Court, or that otherwise interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award, and (b) pursuing any other foreign litigation that interferes with, obstructs, or delays resolution of Petitioners' Petition to Confirm the Award; and (2) directing Spain to withdraw its requests for relief in the Dutch Action requiring NextEra to suspend, hold in abeyance or withdraw proceedings before this Court, including without limitation, at pages 31–33, Claims (A) through (D) and (L) through (P).

NextEra also respectfully requests that this Court issue a temporary restraining order to preserve the status quo until the Court has an opportunity to hear and rule upon NextEra's motion seeking an anti-suit injunction.

Pursuant to Local Civil Rule 65.1(d), NextEra respectfully requests oral argument on this Motion at a date and time convenient to the Court within the required 21-day period.

Dated: January 12, 2023
Washington, D.C.

Respectfully submitted,

/s/ Bradley A. Klein_____
Bradley A. Klein
D.C. Bar Number 973778
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
(202) 371-7000
bradley.klein@skadden.com

Timothy G. Nelson (appearing *pro hac vice*)
New York Bar Number 3060175
Amanda Raymond Kalantirsky (appearing *pro hac vice*)
New York Bar Number 4812418
Cesar Riviere (appearing *pro hac vice*)
New York Bar Number 5746326
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

24

One Manhattan West
New York, NY 10001
(212) 735-3000
(212) 735-2000 (fax)
timothy.g.nelson@skadden.com
cesar.riviere@skadden.com

David Herlihy (appearing *pro hac vice*)
New York Bar Number 4167920
ALLEN & OVERY LLP
One Bishops Square
London
E1 6AD
ENGLAND

*Attorneys for NextEra Energy Global Holdings B.V. and
NextEra Energy Spain Holdings B.V.*