# Exhibit A

*In-house translation*



SVEA COURT OF APPEAL      **JUDGMENT**            Case no
Section 02                2022-12-13             T 4658-18
Department 020114         Stockholm

**PARTIES**

**Plaintiff**
Kingdom of Spain
Abogacía General del Estado
Calle Ayala, 5
28001 Madrid
Spain

Counsel: Attorney Pontus Ewerlöf
Hannes Snellman Advokatbyrå AB
Box 7801
103 96 Stockholm

**Respondent**
Novenergia II - Energy & Environment (SCA), SICAR, B 124550
28, Boulevard Royale
L-2449 Luxembourg
Luxembourg

Counsel: Attorneys Jakob Ragnwaldh, Robin Rylander and David Sandberg as well as
lawyer Anna Liliebäck
Mannheimer Swartling Advokatbyrå AB
Box 1711
111 87 Stockholm

**Matter**
Invalidity of arbitral award, etc.
_____

**The Court of Appeals judgement, see next page.**

SVEA COURT OF APPEAL          **JUDGMENT**                    T 4658-18
Section 02

**THE COURT OF APPEAL'S JUDGMENT**

1. The Court of Appeal finds for the plaintiff in such a way that the Court of Appeal declares the Award of 15 February 2018 in the SCC case no. V (2015/063) invalid.

2. The Court of Appeal's decision of 17 May 2018 regarding a stay of execution of the Award shall persist until the judgment becomes legally binding.

3. Novenergia II – Energy & Environment (SCA), SICAR shall reimburse the Kingdom of Spain for its legal costs in the Court of Appeal with EUR 971.380,75 plus interest on the sum as of the day of judgment until payment is made. EUR 937.500 of the compensation constitutes attorney's fees.

_____

# Contents

**1. BACKGROUND** ................................................................................................ **5**

**2. CLAIMS AND POSITION** ............................................................................ **9**

**3. GROUNDS** ...................................................................................................... **9**
**3.1 Spain** .............................................................................................................. **9**

 *3.1.1 Ground for challenge (A) - Article 26 does not contain an offer for arbitration between the parties and therefore a valid arbitration agreement does not exist between the parties* ................................................................ 9

 *3.1.2 Ground for challenge (B) - The offer of arbitration in article 26 is in any case invalid and a valid arbitration agreement therefore does not exist between the parties* ................................................................................... 10

 *3.1.3 Ground for invalidity (C) – The dispute between Novenergia and Spain is not arbitrable* .................................................................................. 11

 *3.1.4 Ground for invalidity (D) - The Award and the manner in which it arose is clearly incompatible with the basic principles of the Swedish legal system* ...... 12

 *3.1.5 Ground for invalidity (E) – The awarding of damages in itself constitutes state aid in violation of Article 108 TFEU* ................................................ 12

 *3.1.6 Ground for challenge (F) – The tribunal has exceeded its mandate or in any case committed an error in the course of the proceedings which influenced the outcome of the case* ....................................................................... 13

 *3.1.7 It is disputed that the principle of proportionality or the European Convention on Human Rights constitutes an obstacle to setting aside or invalidating the Award.* ........................................................................ 14

**3.2 Novenergia** ................................................................................................... **§**

 *3.2.1 Ground for challenge (A) – Article 26 contains an offer of arbitration from i.a. Spain to investors from all other Member States of the treaty* .................... 15

 *3.2.2 Ground for challenge (B) – The ground for challenge is precluded and the arbitration agreement is valid* .............................................................. 16

 *3.2.3 Ground for invalidity (C) - The Award does not include assessment of a non-arbitrable matter* ........................................................................... 18

 *3.2.4 Ground of invalidity (D) - Neither the Award nor the manner in which it arose is clearly incompatible with the basic principles of the Swedish legal system* .................................................................................................. 18

 *3.2.5 Ground for invalidity (E) - The Award does not include state aid and is in any case not clearly incompatible with the basic principles of the Swedish legal system* .................................................................................................. 18

 *3.2.6 Ground for challenge (F) - The Award shall not be set aside to some extent* ................................................................................................... 19

 *3.2.7 Setting aside the Award based on any of the grounds of challenge (A) or (B) or invalidating it on any of the grounds of invalidity (C)–(E) would be*

SVEA COURT OF APPEAL        **JUDGMENT**         T 4658-18
Section 02

*disproportionate and incompatible with the European Convention on Human Rights* ................................................................................................ *20*

**4. THE PARTIES' STATEMENT OF THE CASE**.....................................**22**
**4.1 Spain**.................................................................................................**22**

*4.1.1 Regarding grounds for challenge and invalidity (A)–(F)*......................... *22*

*4.1.2 Regarding the question of whether the European Convention constitutes an obstacle to setting aside or invalidating the Award* ........................................... *25*

**4.2 Novenergia**........................................................................................**26**

*4.2.1 Regarding grounds for challenge and invalidity (A)–(F)*......................... *26*

*4.2.2 Regarding the question of whether the European Convention or the principle of proportionality constitutes an obstacle to setting aside or invalidating the Award*......................................................................................... *30*

**5. THE OPINION OF THE COMMISSION AND THE INVESTIGATION IN GENERAL**.............................................................................................**31**

**6. THE COURT'S REASONING** ...............................................................**32**
**6.1 Disposition and procedure of examination** ..........................................**32**
**6.2 The question of whether the dispute is arbitrable** ...............................**33**

*6.2.1 Introduction* ...................................................................................... *33*

*6.2.2 Legal starting points* ......................................................................... *34*

*6.2.3 The Court of Appeal's assessment* ..................................................... *37*

**6.3 The question of whether an invalidation would be contrary to the European Convention on Human Rights or to the principle of proportionality?** .................**40**

*6.3.1 Introduction* ...................................................................................... *40*

*6.3.2 Legal starting points* ......................................................................... *40*

*6.3.3 The Court of Appeal's assessment* ..................................................... *42*

**6.4 Summary of conclusions and assessment**..............................................**43**
**6.5 Legal costs**..........................................................................................**44**
**6.6 The question of whether the judgment may be appealed, etc.** ............................**45**

SVEA COURT OF APPEAL          **JUDGMENT**          T 4658-18
Section 02

## 1. BACKGROUND

The Kingdom of Spain (Spain) is a Member State in the European Union (EU) since 1986. Spain signed the Energy Charter Treaty (EGT L 69, 1998, p.1) on 17 December 1994 and ratified the treaty on 11 December 1997. The Energy Charter Treaty (ECT) entered into force regarding Spain on 16 April 1998.

Novenergia II – Energy & Environment (SCA) (Novenergia) is a fund company registered in Luxembourg and incorporated under Luxembourg law. Novenergia's investors consists in main part of financial institutions, mainly pension funds and charities.

Luxembourg is a Member State in the EU since 1958 and signed the ECT on 17 December 1994 and ratified it on 7 February 1997. The ECT entered into force regarding Luxembourg on 16 April 1998.

During the latter half of the 1990s, the Spanish energy market was deregulated. Prior to this, the market had been almost exclusively controlled and regulated by state energy companies and authorities. After deregulation, private market participants were allowed in the energy market. In order to achieve the goal of twelve percent of the national energy needs in 2010 (and 20 percent in 2020) would be met through renewable energy sources, the Spanish state established several laws between the years 1997 and 2007. The regulations aimed to promote the production of renewable electricity, i.e., by attracting foreign investors in solar energy with various incentives and stimulus measures. The measures developed in the 2000s by allowing energy producers who produced energy from renewable sources not only to sell electricity with priority via the Spanish power grid, but also received a certain premium for each kilowatt-hour produced. Through these measures, Spain guaranteed to provide certain compensation for each kilowatt-hour produced by solar power plants throughout the life cycle of the solar power plants.

In 2007, Novenergia invested in the Spanish energy market. On 3 July 2007, Novenergia acquired the Spanish company Novenergia II Energy & Environment España, S.L. Through this company, Novenergia acquired eight solar cell parks in Spain.

SVEA COURT OF APPEAL        **JUDGMENT**                    T 4658-18
Section 02

Between the years 2010 and 2014, Spain introduced regulations that changed in various aspects the subsidy of energy from renewable sources that had been in force since 2007. Through decree 1565/2010, the time period of the guaranteed compensation was limited, from the life cycle of the solar power plants to 25 years, and through decree 14/2010 the number of production hours that entitled producers to economic compensation was limited. Finally, the old order was abolished through the law 9/2013, in which a new order was established. Thereby Spain's guarantees to renewable energy producers were finally abolished and replaced with a limited fixed reimbursement.

ECT is a multilateral treaty regarding cooperation on the energy area. The treaty is an investment protection treaty and contains regulations which aims to promote access to international energy markets on business terms and to promote an open and competitive market for energy material and energy products.

Article 26 in the treaty contains a dispute resolution clause with the following wording.[1]

**Settlement of Disputes between an Investor and a Contracting Party**

1. Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.

2. If such disputes cannot be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:

   a) to the courts or administrative tribunals of the Contracting Party party to the dispute;

   b) in accordance with any applicable, previously agreed dispute settlement procedure; or

   c) in accordance with the following paragraphs of this Article.

3. a) Subject only to subparagraphs (b) and (c), each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

   b)    i) The Contracting Parties listed in Annex ID do not give such unconditional consent where the Investor has previously submitted the dispute under subparagraph (2)(a) or (b).

   ii) For the sake of transparency, each Contracting Party that is listed in Annex ID shall provide a written statement of its policies, practices and conditions in this regard to the Secretariat no later than the date of the deposit of its instrument of ratification, acceptance or approval in accordance with Article 39 or the deposit of its instrument of accession in accordance with Article 41.

---

[1] See Sweden's international agreements (SÖ) 1997:57

c) A Contracting Party listed in Annex IA does not give such unconditional consent with respect to a dispute arising under the last sentence of Article 10(1).

4. In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to:

    a)    i) The International Centre for Settlement of Investment Disputes, established pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of other States opened for signature at Washington, 18 March 1965 (hereinafter referred to as the "ICSID Convention"), if the Contracting Party of the Investor and the Contracting Party party to the dispute are both parties to the ICSID Convention; or ii) The International Centre for Settlement of Investment Disputes, established pursuant to the Convention referred to in subparagraph (a)(i), under the rules governing the Additional Facility for the Administration of Proceedings by the Secretariat of the Centre (hereinafter referred to as the "Additional Facility Rules"), if the Contracting Party of the Investor or the Contracting Party party to the dispute, but not both, is a party to the ICSID Convention;

    b)    a sole arbitrator or ad hoc arbitration tribunal established under the Arbitration Rules of the United Nations Commission on International Trade Law (hereinafter referred to as "UNCITRAL"); or

    c)    an arbitral proceeding under the Arbitration Institute of the Stockholm Chamber of Commerce.

5. a) The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for:

    i) written consent of the parties to a dispute for purposes of Chapter II of the ICSID Convention and for purposes of the Additional Facility Rules;
    ii) an "agreement in writing" for purposes of article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, 10 June 1958 (hereinafter referred to as the "New York Convention"); and
    iii) "the parties to a contract [to] have agreed in writing" for the purposes of article 1 of the UNCITRAL Arbitration Rules.

b) Any arbitration under this Article shall at the request of any party to the dispute be held in a state that is a party to the New York Convention. Claims submitted to arbitration hereunder shall be considered to arise out of a commercial relationship or transaction for the purposes of article I of that Convention.

6. A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law.

7. An Investor other than a natural person which has the nationality of a Contracting Party party to the dispute on the date of the consent in writing referred to in paragraph (4) and which, before a dispute between it and that Contracting Party arises, is controlled by Investors of another Contracting Party, shall for the purpose of article 25(2)(b) of the ICSID Convention be treated as a "national of another Contracting State" and shall for the purpose of article 1(6) of the Additional Facility Rules be treated as a "national of another State".

SVEA COURT OF APPEAL          **JUDGMENT**                    T 4658-18
Section 02

> 8. The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute. An award of arbitration concerning a measure of a sub-national government or authority of the disputing Contracting Party shall provide that the Contracting Party may pay monetary damages in lieu of any other remedy granted. Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.

Novenergia requested arbitration on 8 May 2015 against Spain at the Arbitration Institute of the Stockholm Chamber of Commerce (SCC) according to the so-called SCC-rules, SCC's case no V 2015 (2015/063). As cause of action, Novenergia claimed that Spain had breached its obligations according to ECT. In the arbitration, Novenergia asserted that Spain, through the changes in legislation in the years between 2010 and 2014, had breached the regulations in article 10.1 ECT regarding fair and equitable treatment as well as article 13 regarding expropriation.

The board of the SCC decided that the seat for the arbitration would be Stockholm. The tribunal consisted of the attorney Johan Sidklev (chairman), the professor Antonio Crivellaro and judge Juez Bernardo Sepúlveda-Amor.

On February 15, 2018, the Award was rendered in Stockholm. According to the Award, Spain was found guilty of breaching its obligations under the provision of article 10.1 ECT. Spain was also ordered to pay damages of EUR 53.3 million as well as compensation for Novenergia's costs amounting to EUR 2.6 million. The costs of the arbitration were shared equally between the parties.

The Court of Appeal has on 17 May 2018, at the request of Spain, decided that continued enforcement of the Award may not take place for the time being and on 24 October of the same year rejected a request for cancellation of the decision to stay the execution.

## 2. CLAIMS AND POSITION

Spain has requested that the Court of Appeal

(i)  shall set aside the Award in its entirety, alternatively

(ii) declare it invalid, or in any event

(iii) set aside the Award as far as awarded damages in the amount of EUR 22.3 million are concerned, according to point C of the Award.

Novenergia has opposed Spain's claims.

The parties have requested compensation for legal costs.

## 3. GROUNDS

### 3.1 Spain

*3.1.1 Ground for challenge (A) - Article 26 does not contain an offer for arbitration between the parties and therefore a valid arbitration agreement does not exist between the parties*

Novenergia requested the arbitration pursuant to Article 26 ECT. It follows from the wording of article 26 ECT - which must be interpreted in conformity with EU law and in the light of its historical, legal and institutional background - together with, *inter alia*, articles 1.2, 1.3, 1.10 and 36.7 of the Treaty together with the statement from the EU and decisions from the Council in connection with the EU and the Member States joining the Treaty, that article 26 is not applicable between two EU Member States and therefore does not contain any offer for arbitration from Spain in relation to an investor from another EU country. Article 26.1 relates to disputes concerning an investment made by an investor of a Contracting Party in the territory of another Contracting Party. An EU Member State constitutes an area in the sense referred to in i.a. article 26.1 ECT towards third countries. A Member State of the EU, such as Spain, on the other hand, does not constitute a separate area in relation to another Member State such as Luxembourg. The EU constitutes a regional economic integration organisation in the sense referred to in article 1.10 of the Treaty. As such, the whole of EU constitutes an area for the application of article 26. An offer for arbitration from Spain for Novenergia to accept has therefore not existed and Novenergia's request for arbitration did not create an arbitration agreement. The conditions for an arbitration agreement between Spain and Novenergia according to article 26 ECT have therefore not been met.

The Award is not covered by a valid arbitration agreement and must be set aside in accordance with section 34(1) of the SAA.

SVEA COURT OF APPEAL　　　**JUDGMENT**　　　T 4658-18
Section 02

*Ground for challenge (B) - The offer of arbitration in article 26 is in any case invalid and a valid arbitration agreement therefore does not exist between the parties*

Articles 267 and 344 TFEU constitute obstacles to such a provision in an international agreement between EU Member States as article 26 ECT according to which an investor in one Member State, if a dispute arises regarding investments in the other Member State, may initiate proceedings against the latter Member State before an arbitral tribunal. It is irrelevant that the ECT is a multilateral treaty or that the EU is a contracting party to the treaty.

The legal consequence is that article 26 ECT is invalid, not applicable or in any case has no effect between EU Member States. An offer for arbitration cannot therefore have been submitted with binding effect from Spain to Novenergia. Since no offer for arbitration has been made, no arbitration agreement between Spain and Novenergia has existed. The arbitration between Spain and Novenergia has thus been carried out without there having been any valid arbitration agreement.

Since there was no offer from Spain to Novenergia, Spain could not be bound by any arbitration agreement regardless of whether Spain raised a jurisdictional objection. However, Spain has objected to the tribunal's jurisdiction. A conclusive arbitration agreement cannot therefore have been created between Spain and Novenergia. In any case, such is contrary to EU law.

Against this background, the Award must be set aside in its entirety in accordance with section 34, paragraph 1, item 1 of the SAA.

It is disputed that Spain's right to bring an action for damages is precluded. The rules of the SCC are not applicable to determine whether Spain has lost its right to bring an action for damages. The decision in the CJEU judgment of 6 March 2018, *Achmea*, C-284/16, EU:C:2018:158, involved a new fact that was unknown to the parties before the judgment.

However, Spain objected to the Tribunal's jurisdiction in its Statement of Defence. Novenergia responded to Spain's jurisdictional objections and provided detailed reasoning, in which Novenergia countered Spain's arguments regarding article 26 and its compatibility with EU law. Spain however objected to the Tribunal's jurisdiction and

10

SVEA COURT OF APPEAL            **JUDGMENT**                    T 4658-18
Section 02

maintained its objections throughout the arbitration. Novenergia has met these objections on repeated occasions and the Tribunal has examined Spain's jurisdictional objections.

### 3.1.1 Ground for invalidity (C) – The dispute between Novenergia and Spain is not arbitrable

The dispute itself between Novenergia and Spain is not arbitrable. The ECT interferes with the allocation of powers fixed by the EU treaties and thus also on the autonomy of the EU legal system. Since the Tribunal could not have jurisdiction to ensure compliance with EU law, the dispute settled by the Award is non-arbitrable.

The questions that the Tribunal had to decide in the arbitration also concern the EU's rules on state aid. The parties in the arbitration have not been able to settle these issues, as the permissibility of state aid is subject to the exclusive competence of the European Commission.

Since the Award includes non-arbitrable matters, it is invalid in accordance with section 33, paragraph 1, item 1 of the SAA.

### 3.1.4 Ground for invalidity (D) - The Award and the manner in which it arose is clearly incompatible with the basic principles of the Swedish legal system

The tribunal rendered the Award despite lacking jurisdiction and in clear conflict with EU law, case law from the CJEU and decisions from the European Commission. The Award is clearly incompatible with EU law and the fundamental principles on which the EU law rests.

The principle of the autonomy of EU law, in particular articles 267 and 344 of the TFEU, as formulated in the case law of the CJEU is part of EU law *ordre public*. An arbitration award based on an arbitration agreement between an EU Member State and an investor from another EU Member State is incompatible with the principle of the autonomy of EU law and constitutes a violation of EU law public policy. A Swedish court must invalidate an arbitration award that violates EU law *ordre public* as this is also in conflict with Swedish *ordre public*.

11

Since the Award is clearly incompatible with the basic principles of the Swedish legal system and applicable EU law, i.e., *ordre public*, and since the legal system may not contribute to the recognition and enforcement of such an arbitration award, it is invalid in accordance with section 33, paragraph 1, item 2 of the SAA.

*3.1.5 Ground for invalidity (E) – The awarding of damages in itself constitutes state aid in violation of article 108 TFEU*

The Award is not compatible with the legal system in Sweden, because the Tribunal's award of damages constitutes state aid in violation of EU law.

The Tribunal did not have jurisdiction to decide on matters of state aid, as these matters fall under the exclusive jurisdiction of the European Commission.

A recognition and enforcement of the Award would entail the payment of damages and constitute state aid. A payment would thus be contrary to 108(3) TFEU.

Since an intra-EU arbitral award cannot be recognised and enforced as it conflicts with EU law, and thus Swedish, *ordre public*, it is invalid in accordance with section 33, paragraph 1, item 2 of the SAA.

*3.1.6 Ground for challenge (F) – The tribunal has exceeded its mandate or in any case committed an error in the course of the proceedings which influenced the outcome of the case*

In case the Award is not to be set aside or declared invalid, the Award must at least be annulled to a certain extent, because the tribunal exceeded its mandate or in any case committed a processing error.

In the arbitration, the Tribunal had to examine Novenergia's claims of violations of, among other things, the provision on fair and equitable treatment according to article 10.1 ECT. Novenergia's action was based on several regulatory measures taken by Spain between 2010 and 2014.

The Tribunal's assessments, *i.e.*, that it lacked authority to examine Novenergia's claims based on the law 15/2012 on the new tax on electricity and that the regulations RDL129 14/2010 (limitation in the number of hours) and RDL 2/2013 (changes in the index for

enumeration of tariffs) did not constitute a violation of article 10(1) ECT, becomes
decisive for the calculation of damages.

However, the Tribunal has not, despite the request for clarification from the parties
regarding the financial effects of the respective regulatory measures in the years
2010–2014, taken these effects into account when calculating the amount of the
damages.

The Tribunal has only calculated damages attributable to these actions regarding
historical capital amounts. The large part of the damages instead consisted of future
damages, *i.e.*, from 2014 onwards, which were calculated using a discounted cash flow
model (DCF). It was in the application of DCF the fault of the Tribunal not to settle

> (i) the damages based on the law 15/2012 from 2014 onwards, since the tribunal
> declared itself lacking jurisdiction to hear this matter;
>
> (ii) the damages based on RDL 14/2010 from 2014 onwards, because the tribunal
> declared that RDL 14/2010 does not conflict with fair and equitable treatment in
> article 10(1) ECT;
>
> (iii) the damages based on RDL 2/2013 from 2014, because the tribunal declared
> that RDL 2/2013 does not conflict with fair and equitable treatment in
> article 10(1) of the energy statute treaty.

The Tribunal has thus, when applying DCF to the damage calculation, not taken into
account the conclusions regarding liability that the Tribunal previously made in the
judgment. The Award is therefore inconsistent and the total effect of the Tribunal's
incorrect handling of the matter amounts to a sum of EUR 22.3 million. This shortcoming
means that the Tribunal was guilty of exceeding its mandate or in any case committed an
error in the course of the proceedings that influenced the outcome of the case. The Award
must therefore be set aside in accordance with section 34, paragraph 1, item 2 or 6 of the
SAA with regard to the part that refers to an amount of damages of EUR 22.3 million.

Spain also requested after the Award was announced that the Tribunal, in accordance
with section 41 of the SCC rules and section 32 of the SAA, should correct the Award
in, *inter alia*, this part. The Tribunal, however, rejected Spain's request in Procedural
Order No 17. This decision in itself involves a procedural error that influenced the
outcome of the case. The Award must therefore be set aside also on this basis in

accordance with section 34, paragraph 1, item 6 of the SAA with regard to the part that refers to an amount of damages of EUR 22.3 million.

### 3.1.7 It is disputed that the principle of proportionality or the European Convention on Human Rights constitutes an obstacle to setting aside or invalidating the Award

It is contested that the principle of proportionality constitutes an obstacle to setting aside or declaring the Award invalid if the conditions in sections 34 or 33 of the SAA are met. It is not prescribed in these sections that the courts must make a proportionality assessment or balancing of interests. There is no statement in support of such an examination in the preparatory work for the SAA.

Even if a proportionality assessment were to be undertaken by the Court of Appeal, there is no reason not to set aside or invalidate the Award if the conditions for this are otherwise met. Novenergia does not suffer any loss of rights if the Award should be set aside or declared invalid. The possibility of a judicial proceeding remains in national court.

The fact that article 26 ECT is not applicable between the parties is a fact *ex tunc* and the provision has thus never been valid between Member States. It is Novenergia that has relied on a provision that is incompatible with EU law and thereby requested arbitration, which Spain clearly objected to in the arbitration. Novenergia cannot therefore claim that there was a justified expectation that the Award would stand.

It is contested that setting aside or invalidating the Award would constitute a violation of Novenergia's right to property according to article 1 of the First Additional Protocol to the European Convention of 4 November 1950 for the Protection of Human Rights and Fundamental Freedoms (ECHR). There is no interference in the right to property if the Award is set aside or declared invalid, and the right is not absolute. In the event that there is an interference of the protection of property, it is legal and proportionate.

It is contested that setting aside or invalidating the Award would constitute a violation of Novenergia's right to fair trial according to article 6 of the European Convention. Novenergia has had access to legal review of its claim at a Spanish court but has voluntarily chosen to request arbitration. The right to a fair trial is not absolute.

**3.2 Novenergia**

*3.2.1 Ground for challenge (A) – Article 26 contains an offer of arbitration from i.a.
Spain to investors from all other Member States of the treaty*

Novenergia disputes Spain's claim that article 26 ECT does not contain an offer for
arbitration between the parties and that no valid arbitration agreement exists.

Pursuant to article 26.1 and 26.3(a) of the ECT, Spain, which is a contracting party, has
made a binding offer for arbitration to investors from another contracting party
regarding disputes concerning investments within Spain's territory. Spain's area is
according to article 1.10 of the treaty the territory over which the State has sovereignty.

Novenergia is an investor from Luxembourg, another contracting party to the ECT,
which has invested in Spain's territory. Novenergia has accepted Spain's offer for
arbitration through its notification on 18 December 2014. An arbitration agreement has
thus been reached.

The ECT is an international treaty that must be interpreted and applied in accordance
with the rules of international law, primarily the provisions of the Vienna Convention.

Neither article 1.2 ECT, which contains a definition of "*contracting party*", nor article
1.3 of the treaty, which contains a definition of "*regional economic integration
organisation*", provides support for Spain's interpretation of article 26.1. These
provisions also do not otherwise imply any limitation of the contracting parties'
commitment to the treaty. Article 1.10 of the treaty, which contains a definition of
"*territory*", does not mean that the obligations of the contracting Member States
between themselves according to the treaty are regulated by EU law.

Both the EU and the Member States are bound by the ECT in its entirety. There is no
agreement, a so-called "disconnection clause", which supports Spain's claims that this
treaty does not apply between EU Member States.

During the negotiations that preceded the ECT, it was the intention of the contracting
parties that the treaty, including its article 26, would apply between all contracting
parties, including between EU Member States. A proposal by the EU Commission to

SVEA COURT OF APPEAL   **JUDGMENT**   T 4658-18
Section 02

introduce a so-called "disconnection clause" was dismissed by both EU Member States and third states.

There is no support for interpreting ECT in conformity with EU law or interpreting it according to other EU legal principles.

*3.2.2 Ground for challenge (B) – The ground for challenge is precluded and the arbitration agreement is valid*

Spain has lost the right to claim that the offer in article 26 of the ECT is invalid.

According to the Parties' agreement, the SCC Arbitration Rules were applicable to the Arbitration.

According to the SCC Arbitration Rules, an objection to jurisdiction must be included in the defence and made "without delay" so that the party is not deemed to have waived the right to raise the objection.

Spain has not during the arbitration objected to what it invokes in support of ground for challenge B – that the standing offer according to article 26 ECT should be considered invalid as contrary to EU law.

It is disputed that there is no valid arbitration agreement.

The offer in article 26 ECT (see ground for challenge A) is valid, applicable and does not lack effect between EU Member States. This is not affected by EU law but is decided exclusively on the basis of the treaty and international law. The ECT is a multilateral treaty that is binding on the EU and its Member States. According to article 26.6, EU law is not the applicable law in disputes according to the treaty. The Tribunal has not applied EU law, which the Tribunal also stated in the Award.

Neither from Achmea nor from the CJEU's judgment of 2 September 2021, Komstroy, C-741/19, EU:C:2021:655, it can be derived that the dispute resolution mechanism in the ECT would be contrary to EU law in the present case. A Swedish court can, within the framework of its review of a challenge or invalidity action, carry out an extended check of whether an arbitration award conflicts with mandatory EU law. The review is thus not limited in the same way as the review of arbitration awards under German law

that the CJEU based its conclusions in Achmea and its corresponding statements in Komstroy.

The CJEU can interpret EU law but lacks the authority to invalidate article 26 ECT. In the event of a possible conflict between the ECT and the EU treaties, the former treaty takes precedence over the EU treaties according to article 16 ECT.

In any case, the principle of "legal certainty", which is a general legal principle within EU law and thus part of primary law, means that the CJEU, even if it were to consider that an EU act through which the EU has entered into an international treaty is incompatible with the EU treaties, would not invalidate the EU act.

Spain acceded to the ECT on 11 December 1997 and thereby left the standing and unconditional offer of arbitration set out in article 26 of the treaty. Novenergia has, by invoking arbitration, relied on that offer and an arbitration agreement has thereby been entered into.

### 3.2.3 Ground for invalidity (C) - The Award does not include assessment of a non-arbitrable matter

It is contested that the Award includes a review that is not arbitral.

The disputed issue between Novenergia and Spain was reconcilable. The tribunal has not examined any question of state aid. What the tribunal examined was whether the abolition of Spain's regulations constituted a breach of Spain's obligations under the ECT.

The CJEU has not stated that arbitration may not occur when a state is a party to a dispute.

### 3.2.4 Ground of invalidity (D) - Neither the Award nor the manner in which it arose is clearly incompatible with the basic principles of the Swedish legal system

It is contested that the Award or the manner in which it arose is clearly incompatible with the basic principles of the Swedish legal system.

The legal basis for the arbitration agreement, the Tribunal's jurisdiction and the possible invalidity of the arbitration agreement are irrelevant to the question of whether the Award is incompatible with the basic principles of the Swedish legal system. Even if

17

Spain's claims were true, they cannot mean that the Award, or the manner in which it arose is clearly incompatible with *ordre public*.

The CJEU has not established an absolute ban on arbitration. Questions of recognition and enforcement are irrelevant for the validity of the Award.

### 3.2.5 Ground for invalidity (E) - The Award does not include state aid and is in any case not clearly incompatible with the basic principles of the Swedish legal system

It is challenged that the Award or the manner in which it arose is clearly incompatible with the basic principles of the Swedish legal system.

The Award does not include state aid. The Award is a binding declaration that Spain has an obligation under international law, according to the ECT, to pay damages to Novenergia. The Award and the imposition of damages do not in themselves constitute a state aid measure and cannot be incompatible with EU law rules on state aid. If at a later stage the European Commission considers that enforcement of the arbitration award, or payment pursuant to it, constitutes unauthorized state aid, this does not affect the validity of the Award.

Even if the Award in itself would constitute state aid and contravene the notification requirement in article 108(3) TFEU, it would not mean that the Award is incompatible with Swedish *ordre public*.

The European Commission has not found that any of the Spanish rules that were part of the circumstances of the arbitration constitute state aid that is incompatible with the internal market.

### 3.2.6 Ground for challenge (F) - The Award shall not be set aside to some extent

It is disputed that the Tribunal has exceeded its mandate or committed any procedural error.

The Tribunal has taken into account its conclusions on the question of liability, but it has drawn different conclusions for the calculation of damages than those advocated by Spain. The basis of Spain's claim is a matter for the Arbitral Tribunal to hear.

The tribunal found in its examination that it lacked jurisdiction to examine Spain's introduction of the law 15/2012 and that the regulations 14/2010 and 2/2013 did not constitute independent violations of article 10.1 ECT. However, the Tribunal found that Spain, through the introduction of the new regime, crossed the threshold of a treaty violation. The tribunal noted that Novenergia "has quantified the loss suffered as a consequence of the Specific Regime in isolation [...] to EUR 53.3 million" and awarded EUR 53.3 million in damages.

Even if Spain were correct in its assertions that the assessment in the damages part is "clearly incompatible" with the conclusions in the liability part, the assessment is not clearly the result of any mistake or oversight. The assessment is the result of the Tribunal's considered analysis. It would thus be a legal, or factual, misjudgement on the part of the Tribunal, which under no circumstances can constitute a basis for a challenge of an arbitral award.

Nor can there be any procedural error regarding the Tribunal's decision in Procedural Order No. 17 to reject Spain's request for corrections. Spain's request actually referred to an amendment of the Award, which the Tribunal did not have the authority to grant according to Section 32 of the SAA and Section 41 of the SCC's Arbitration Rules. The Tribunal commented on Spain's claims in substance and concluded that it stood by its assessment on the question of damages. Even if it had been wrong to reject Spain's request on the grounds that the tribunal lacked jurisdiction to hear it, the decision has thus had no impact on the outcome.

Spain has not specified in what way the tribunal would have exceeded its mandate.

*3.2.7 Setting aside the Award based on any of the grounds of challenge (A) or (B) or invalidating it on any of the grounds of invalidity (C)–(E) would be disproportionate and incompatible with the European Convention on Human Rights*

The Award cannot be set aside or invalidated based on Spain's grounds for challenge (A) and (B) and grounds of invalidity (C)–(E) respectively, as such an action is prevented by the EU principle of proportionality and the ECHR.

SVEA COURT OF APPEAL            **JUDGMENT**                    T 4658-18
Section 02

Setting aside or invalidating the Award would be incompatible with the EU principle of proportionality for the reasons stated below in relation to the incompatibility with the provisions of the ECHR. Setting aside or invalidating the Award would mean a serious and unequivocal violation of Novenergia's right to property for the following reasons.

Through the Award, Novenergia has been awarded compensation from Spain in the amount of EUR 53.3 million plus interest. Novenergia would lose out on this compensation if the Award is set aside or declared invalid and Novenergia lacks alternative compensation options for Spain's breach of treaty.

Spain's action as regards grounds (A) and (B) and grounds of invalidity (C)–(E) are essentially based on claims of EU law interests, in particular "a uniform interpretation of EU law" and "the allocation of powers fixed by the treaties".

EU law has not been touched upon in the arbitration, neither procedurally nor materially. Thus, the EU legal interests invoked by Spain could not be jeopardized by the arbitration. The Award itself does not constitute an infringement of any EU legal interest. Setting aside or invalidating the Award will thus not achieve the public interests that Spain invokes.

The damage Novenergia would suffer if the Award were to be set aside or invalidated would in any case be disproportionate to the alleged interests that this could achieve. Novenergia would not have access to any possibility of receiving compensation.

Furthermore, setting aside or invalidating the Award on the basis of the CJEU rulings in Achmea and Komstroy would entail an application of the ECT that would retroactively change the content of the ECT in breach of international law, without any specific justification for this retroactive measure being provided. Setting aside or invalidating the Award would also for this reason be a serious and unequivocal violation of the ECHR.

Setting aside or invalidating the Award would further entail a serious and unequivocal violation of Novenergia's right to a fair trial for the following reasons.

SVEA COURT OF APPEAL          **JUDGMENT**                    T 4658-18
Section 02

By requesting arbitration against – and thereby entering into an arbitration agreement with – Spain, Novenergia waived its right to a fair trial before a court according to the ECHR.

Setting aside or invalidating the Award would mean that this waiver no longer applies, whereby Novenergia has a convention-protected right to have its claim tried before a court, in this case by a Spanish court.

However, Novenergia lacks legal opportunities to have its claim for damages based on the investment protection provisions of the ECT tried by a Spanish court if the Award is set aside or declared invalid. Such an action would be time-barred under Spanish law. Furthermore, Spanish (substantive) law does not provide any real possibility of compensation for individuals who have incurred damaged by the legislative measures of the Spanish state. The damages for which Novenergia received compensation through the Award are the result of such legislative measures. A hypothetical claim by Novenergia based on Spanish substantive law would in any case be time-barred under Spanish law.

Thus, if Novenergia can no longer rely on the offer of arbitration made by Spain under article 26.3 ECT, Novenergia cannot initiate proceedings before Spanish courts under the investment protection provisions of this treaty or, even if it had offered an equivalent opportunity for compensation, under Spanish substantive law. Setting aside or invalidating the Award would therefore conclude a serious and unequivocal violation of Novenergia's fundamental right to a fair trial.

## 4. THE PARTIES' STATEMENT OF THE CASE

### 4.1 Spain

*4.1.1 Regarding grounds for challenge and invalidity (A)–(F)*

The ECT is a multilateral treaty in the energy field. The EU is a party to the treaty. Provisions in international treaties form an integral part of EU law. As the EU is a contracting party to the treaty, this treaty forms part of EU law. When the provisions of the treaty are applied between EU Member States, they must be interpreted so that they are fully compatible with EU law and the basic principles on which EU law rests, *e.g.*,

21

SVEA COURT OF APPEAL      **JUDGMENT**      T 4658-18
Section 02

the principle of the autonomy of EU law and the primacy of EU law. An interpretation in conformity with EU law implies that article 26 ECT does not contain any offer of arbitration from Spain in relation to investors from other EU Member States.

Article 26 must further be interpreted in the light of its historical, legal and institutional background, which is reflected in other provisions of the treaty. The purpose of the ECT was to create an international framework for cooperation in the energy field between the European Communities on the one hand and Russia, CIS countries and countries of Central and Eastern Europe on the other. It was never intended that these provisions would be applied between EU Member States. The expansion of the EU, however, meant that a large number of investment treaties also ended up regulating intra-EU relations, and their dispute resolution mechanisms were thus also in conflict with mandatory EU provisions. The European Commission drew attention to this conflict as early as 2007. Since 2008, the European Commission has intervened in a large number of arbitrations.

Pursuant to article 1.2 of the ECT, a contracting party means "a state or Regional Economic Integration Organisation which has consented to be bound by this Treaty and for which the Treaty is in force". According to article 1.3, a Regional Economic Integration Organisation means "an organisation constituted by states to which they have transferred competence over certain matters a number of which are governed by this Treaty, including the authority to take decisions binding on them in respect of those matters". The EU and its Member States constitute a Regional Economic Integration Organisation. According to article 36.7, the EU votes in the areas that fall within the EU's competence, and individual Member States vote in the areas that fall within the respective Member State's own competence. It thus appears that the competence is shared. In connection with the accession to the ECT, the EU has declared that the Member States have surrendered all or part of their decision-making rights regarding matters regulated in the treaty and that this construction has been accepted by the treaty. The statement makes it clear that the EU did not intend the ECT to form the basis of intra-EU investment disputes. The statement assumes that article 26 of the ECT has no effect between EU Member States.

Investment protection and in particular investments in the energy field strike at the very core of the EU's internal market. If the EU and its Member States could agree on a separate and conflicting regulatory system for investment protection, to be applied mutually, this would be in conflict with article 3.2 TFEU. An application of article 26 in intra-EU investment disputes is contrary to the Member States' commitment to the EU.

An arbitral tribunal does not constitute a court within the meaning of article 267 of TFEU and cannot refer questions to the CJEU.

The question of whether or not a dispute is arbitrable is determined not only by whether the substantive issues are arbitrable, but also by whether the dispute itself is arbitrable. It is clear from the Achmea judgment that the present dispute is not arbitrable.

The SAA largely mirrors the provisions of the New York Convention and the UNCITRAL Rules (the Model Law). Among other things, it has been stated in the preparatory work of the SAA that the provisions of the Model Law must be taken into account in each sub-question. The definition of arbitrable disputes in the New York Convention and the Model Law is that the dispute is "capable of settlement by arbitration". This definition reflects how arbitrability is to be understood, namely "In this legislative matter, arbitrability is reserved for disputes that can be submitted before an arbitral tribunal either in advance or after they have arisen". The question is thus not whether the substantive issues are arbitrable, but whether the dispute itself is arbitrable, which this dispute is not according to the Achmea judgment.

There is no arbitration agreement. Nevertheless, the Tribunal announced the Award. In decision C (2017) 7384 of 10 November, the European Commission has determined that intra-EU investment disputes must not occur and that such disputes are in conflict with EU law. Thus, such disputes are also incompatible with the Swedish legal system. The Commission's decision forms part of EU law and must be applied and given full effect in Sweden. The decision cannot be reviewed by any instance other than the European courts, with the CJEU as the highest instance. The decision is thus binding for an arbitral tribunal. The European Commission's position has been confirmed by the CJEU in Achmea.

If the arbitration agreement between Spain and Novenergia were to be considered valid, the Award is still not compatible with the Swedish legal system, because the Tribunal's award of damages in itself constitutes state aid. This is clear from, *inter alia*, the European Commission's settled practice.

Spain's regulations of the electricity market are measures that have constituted state aid in accordance with article 107.1 TFEU. Damages according to the Award constitutes state aid which in itself is contrary to EU law. Issues regarding state aid fall within the exclusive competence of the European Commission. The Tribunal has thus not had the authority to rule on these issues in the Arbitration. This follows from article 108 TFEU and is explicitly stated in the European Commission's decision 7384.

In addition, recognition and enforcement of the Award would entail the payment of damages and in itself constitute state aid, in accordance with article 107.1 TFEU. The European Commission's statements in this regard have subsequently been confirmed by the CJEU.

The Tribunal's assessments regarding the damages did not constitute wrong assessments – the Tribunal rather exceeded its mandate or in any case committed an error in the course of the proceedings.

### 4.1.2 Regarding the question of whether the European Convention constitutes an obstacle to setting aside or invalidating the Award

The Charter of Fundamental Rights of the European Union (2016/C 202/02), the EU Charter, has the same content as article 6 of the European Convention. There is a presumption that EU law respects the provisions of the European Convention.

In case the principle of proportionality would be relevant to consider, this is something that the CJEU itself would have emphasised in the reasoning of the Achmea judgment. In the judgment, however, the CJEU has not expressed in any respect that the principle of proportionality is of importance for the interpretation of the compatibility of investment protection agreements with EU law. There is thus no room for national courts to re-examine the CJEU's judgment in turn and to balance its effects. Such an application would be contrary to the fundamental principles of EU law and undermine the autonomy of EU law.

According to article 6.3 of the TEU, the fundamental rights as guaranteed by the European Convention are included in EU law as general principles. The provisions in the EU Charter that correspond to provisions in the European Convention shall have the same meaning and scope as in the European Convention (article 52.3 of the EU Charter). The CJEU considers the practice of the European Court of Human Rights when interpreting EU law.

The European Court of Human Rights has established that the protection of human rights within the EU should be considered equivalent to the protection according to the European Convention and that there is therefore a presumption that EU law respects the European Convention. The presumption can be broken if, in the individual case, there are circumstances which mean that the protection of the European Convention rights is manifestly deficient.

The principle of the primacy of EU law implies that Swedish courts and authorities are bound by the CJEU's interpretation of EU law. A Swedish court can depart from what follows from the CJEU's interpretation of an EU provision only if the application in the individual case would otherwise constitute a serious and unequivocal violation of the European Convention. Setting aside or invalidating the Award does not imply any such serious and unequivocal violation of Novenergia's rights.

Article 26 of the ECT prescribes several possible alternatives for dispute resolution, *inter alia,* a claim in a national court. Consequently, Novenergia has had the opportunity to have its claim for damages against Spain under the treaty tried in a Spanish court, in accordance with article 6.1 of the European Convention. If Novenergia were to file a lawsuit in a Spanish court, the claim would not be time-barred either.

### 4.2 Novenergia

*4.2.1 Regarding grounds for challenge and invalidity (A)–(F)*

By acceding to the ECT, all parties have assumed obligations and acquired rights vis-à-vis other contracting parties under international law. The failure of a contracting party to fulfil its obligations under the treaty thus constitutes a breach of the obligations under international law that the contracting party has undertaken towards the other contracting parties. The fact that the treaty also constitutes an EU legal act and is part of the EU's

SVEA COURT OF APPEAL   **JUDGMENT**   T 4658-18
Section 02

legal system does not mean that the treaty ceases to be an international treaty. The treaty exists both as a treaty of international law and as an act of EU law.

The provisions of the Vienna Convention regarding how a treaty is concluded, interpreted, amended or terminated must be taken into account in questions about the interpretation or validity of a treaty. The preliminary works of a treaty are things that can be taken into account in the interpretation.

The ECT has its origins in the European Energy Charter. The European Commission welcomed the initiative for the Charter, which would apply both between EU Member States and in relation to third countries. The EU's institutions, including the European Commission, also played an active role in the negotiation of the treaty. It is based on the political positions taken in the European Energy Charter, as stated in the preamble to the treaty.

During the pre-negotiation of the ECT, the European Commission proposed that a so-called "disconnection clause" would be introduced in the treaty. According to the proposal, the clause would limit the applicability of the treaty in such a way that the treaty would only be applied between EU Member States in the absence of an applicable EU provision. The negotiating parties agreed not to introduce a "disconnection clause". In some other respects, the treaty contains provisions that expressly limit the scope of the treaty.

The ECT aims to achieve an energy community including all contracting parties, as opposed to a network of bilateral relations. This was underlined during the negotiation of the treaty. The European Commission emphasised during this time that the purpose of the treaty was also to facilitate trade and investment in the energy field within the EU.

Article 16 deals with the relationship between the Treaty and other legal instruments. If two or more contracting parties have entered into an earlier or later international treaty, according to the article, the treaty that is most favourable to the investor shall be applied. When the ECT is assessed to be more favourable to the investor than the other treaty, the treaty must therefore be given priority.

SVEA COURT OF APPEAL    **JUDGMENT**    T 4658-18
Section 02

Disputes under the ECT must, according to article 26.6, be settled with the application of the treaty and international law. EU law is not part of international law in the sense referred to in the provision. EU law therefore does not constitute applicable substantive law under the treaty.

In recent times, the EU's institutions have tried to change the content of bilateral investment treaties and the ECT. As a result of Achmea, a large number of EU Member States signed two declarations in 2019, in which they undertook to terminate all bilateral investment treaties concluded between them and other EU Member States. In 2020, Member States subsequently entered into an agreement on the termination of bilateral investment treaties. Corresponding declarations have not been signed with respect to the dispute resolution provision in the ECT following the CJEU's judgment in Komstroy. However, the European Commission has proposed in October 2022 that the parties to the ECT should enter into an agreement on the interpretation of the treaty according to the provision in article 31.3.a of the Vienna Convention on the Law of Treaties. The proposal means that the parties concluding the treaty must agree that the ECT shall not apply, and has never been applicable, in intra-EU relations. Even the EU's institutions are aware that international law measures need to be taken in order to change the content of the ECT. No such measures have yet been taken.

Spain argued in the Arbitration that Novenergia was not to be considered an investor from another contracting party in the sense of the ECT, as the entire EU constitutes an area for the application of article 26. Spain's objection in the Arbitration thus concerned the interpretation of various concepts in the treaty (*i.e.* challenge ground A). In contrast, Spain did not object in the Arbitration that the offer in article 26 ECT should be considered invalid (*i.e.* challenge ground B).

In the Award, the Tribunal restated Spain's jurisdictional objection as it had been presented in Spain's submissions in the Arbitration. The Tribunal also examined Spain's objection in the light of how Spain had formulated it.

The Tribunal carried out a customary treaty interpretation in accordance with the rules of the Vienna Convention and found that article 26, according to its wording, is applicable to disputes between contracting parties and investors from other contracting parties and that an investor from Luxembourg is such an investor in relation to Spain.

27

An interpretation according to the rules of the Vienna Convention further led the Tribunal to the conclusion that the treaty does not contain a "disconnection clause" that exempts intra-EU disputes from the ECT's scope of application.

The Tribunal also explained that the assessment of its competence must be made exclusively on the basis of the provisions of the ECT, and that the Tribunal did not apply EU law.

Calculation of the damages

The starting point for Novenergia's calculation of the damages claim in the Arbitration was that Novenergia would be put in the same situation through the compensation as if Spain had not breached its obligations under the ECT. For this calculation, Novenergia appointed an expert who quantified Novenergia's damage as a result of all disputed legislative measures. On the basis of the calculation, Novenergia claimed compensation for damages from Spain, which was based on the fact that all the legislative measures subject to review constituted violations of the ECT. That claim amounted to EUR 61.3 million.

After the final hearing in the Arbitration, the Tribunal asked the Parties to quantify the economic impact of each individual legislative measure that was subject to review in the Arbitration. In accordance with the Tribunal's instructions, Novenergia presented its calculation of the effects of the various legislative measures.

Novenergia's calculation showed that the total impact in the time before Law 9/2013, *i.e.*, the law that finally abolished Spain's guarantees to producers of energy from renewable sources, amounted to EUR 8 million. Regarding the consequence in the time after the law, Novenergia had explained in the Arbitration that the various laws that preceded the Law 9/2013 became part of it when it was introduced. This meant that the laws that preceded Law 9/2013 had certain cost consequences for Novenergia even after its introduction. Novenergia calculated the damage in the time after Law 9/2013 to be EUR 53.3 million. This also corresponds to the difference between the total claimed damages of EUR 61.3 million and the EUR 8 million that referred to damages in the time before the law.

Spain argued that in the event that the legislation that preceded Law 9/2013 was not considered to constitute a violation of the ECT, the damages would be further reduced in

28

the time after the introduction of the law. Spain claimed that the damages would be reduced by at least EUR 14 million in the event that Decree 15/2012 was not considered to constitute a breach of the ECT. Regarding other legislative measures, Spain did not indicate any corresponding amounts.

The Tribunal found that Spain, through the introduction of Law 9/2013, violated its obligations under the ECT. The Tribunal further found that the damages suffered by Novenergia in the time before the introduction of Law 9/2013 should be deducted from the damages, and this because it was only through the introduction of Law 9/2013 that Spain breached its obligations under the ECT. Against this background, the Tribunal explained how the financial consequences of the various legislative measures that preceded Law 9/2013 were to be quantified. The Tribunal calculated the damages in the same way as Novenergia did. The Tribunal thus took into account in its damages calculation that the laws introduced before Law 9/2013 did not constitute independent violations of ECT.

*4.2.2 Regarding the question of whether the European Convention or the principle of proportionality constitutes an obstacle to setting aside or invalidating the Award*

A binding and effective arbitration agreement was established between Spain and Novenergia when Novenergia accepted Spain's offer in article 26 ECT by way of Novenergia's request for arbitration. Relying on this offer, there was no reason for Novenergia to commence litigation against Spain.

If Novenergia would not have been able to rely on the offer of arbitration submitted by Spain, the only theoretical possibility for Novenergia to have its substantive rights under the ECT tried would be to bring an action in a Spanish court under article 26(2)(a) ECT. Such an action would have to be brought according to the Spanish Law 29/1998. According to article 31.1 of that law, Novenergia could challenge the Law 9/2013, the introduction of which caused Novenergia damage, through a review procedure. Novenergia could also claim compensation for damage in accordance with article 31.2 of Law 29/1998. However, such a requirement would be subject to the limitations that follow from Spanish law, which in itself means that a trial according to the Spanish law would not be an alternative that is equivalent to an international arbitration according to the ECT. However, there is no other procedure in which Novenergia could have its rights

SVEA COURT OF APPEAL    JUDGMENT    T 4658-18
Section 02

under the ECT tried in a Spanish court. A hypothetical claim according to Law 29/1998 is also time-barred according to article 46.1 of this law. This as Novenergia would have had to initiate such an action no later than two months from the law being challenged, *i.e*., Law 9/2013, was published in July 2013. Novenergia thus had to start the procedure by September of the same year at the latest.

Law 40/2015, which Spain has referred to, only entered into force in October 2016. The law is therefore not applicable at the time of Novenergia's damage. This law is also not applicable to a claim based on the substantive protection provisions of the ECT.

Nor can Novenergia bring an action for damages based on Spanish substantive law. Law 30/1992 does indeed contain substantive provisions on the Spanish state's liability for damages, but even a claim according to article 142.5 of this law would be time-barred. The time limit for filing a claim under this law is one year from the damaging event or the time when the damage occurred. For Novenergia's part, the damaging event occurred through the introduction of Law 9/2013, which came into force in July 2013. Novenergia's damage also occurred at the same time as it was introduced. The time limit for making a claim according to this law expired in July 2014.

## 5. THE OPINION OF THE COMMISSION AND THE INVESTIGATION IN GENERAL

The European Commission (the Commission) has – with the support of Article 29 of Council Regulation (EU) 2015/1589 of 13 July 2015 laying down detailed rules for the application of Article 108 of the Treaty on the Functioning of the European Union – on its own initiative submitted a written opinion to the Court of Appeal. In the opinion, the Commission essentially stated the following. The Award involves an obvious disregard of the basic principles of the legal system, in this case the EU legislation on state aid. The infringement consists, firstly, in that the Tribunal did not apply Articles 107 and 108 TFEU to check whether the original aid scheme constituted illegal state aid. If the Tribunal had done so, it would have been able to establish that the aid scheme constituted illegal state aid, which would have meant that the Tribunal would not have been able to establish that there had been a violation of legitimate expectations. Secondly, the Tribunal overruled the Commission's state aid decision, despite the fact that a decision adopted on the basis of Article 108.3 TFEU forms part of the EU legal system and must be followed

by the arbitral tribunals. These two breaches mean, individually, that the Award must be declared invalid.

The parties have submitted extensive written evidence.

## 6. THE COURT'S REASONING

### 6.1 Disposition and procedure of examination

Spain has requested that the Award be set aside or invalidated and invoked two alternative grounds in support of its complaint and three alternative grounds in support of the claim that the Award should be declared invalid. Alternatively, Spain has requested that the Award be partially set aside.

Spain has declared itself to have no opinion on the order in which the Court of Appeal examines the alternative claims and grounds and has also not requested that the Court of Appeal, in the event of upholding one of Spain's first-instance claims on any ground, should also examine the other grounds.

Novenergia, however, has considered that the Court of Appeal should try the entire case, *i.e.,* all claims and pleas, even if Spain were to succeed in any of its claims. Novenergia has also had views on the order in which the Court of Appeal should hear the claims and grounds.

The Court of Appeal notes that the invalidity rules and the challenge rules in section 33 and section 34 respectively of the Arbitration Act (1999:116) (SAA) serve different protection interests. While the challenge rules aim exclusively at protecting the Parties' interests, the invalidity rules aim to protect a public or third-party interest. The invalidity rules must be taken into account by the court even without a claim by a party. (See, *i.a.*, prop. 1998/99:35 pp. 140 and 231.) According to the Court of Appeal, in this case it is appropriate to first examine whether the Award is invalid on any basis.

As regards the alternative invalidity grounds, it should first be assessed whether the dispute is arbitrable (cf. NJA 2015 p. 438 p. 12). The Court of Appeal begins by reviewing if the CJEU's rulings in the judgments of 6 March, Achmea, C-284/16, EU:C:2018:158; on 2 September 2021, Komstroy, C-741/19, EU:C:2021:655 and on 26

SVEA COURT OF APPEAL    **JUDGMENT**    T 4658-18
Section 02

October 2021, PL Holdings, C-109/20, EU:C:2021:875 mean that the dispute between Spain and Novenergia is not arbitrable, *i.e.*, part of Spain's invalidity ground (C).

**6.2 The question of whether the dispute is arbitrable**

*6.2.1Introduction*

According to Spain, it has not been possible to settle the dispute by arbitration, because the arbitration clause in article 26 ECT, according to Spain, interferes with the allocation of powers fixed by the EU treaties and thus also on the autonomy of the EU legal system.

For its part, Novenergia has stated that the issues that the Tribunal had to consider in this case relate to damages due to violations of the ECT, which in their entirety must be deemed to have been arbitrable and possible to hear in an arbitration.

Both parties have raised arguments regarding the significance of the CJEU's rulings in Achmea, Komstroy and PL Holdings.

*6.2.2 Legal starting points*

Section 33 and 1 of the SAA

According to section 33, paragraph 1, item 1 of the SAA, an arbitration award is invalid if it includes determination of an issue which, in accordance with Swedish law, may not be decided by arbitrators.

Which issues that may be decided by arbitrators is primarily stated in section 1 of the SAA. According to the first paragraph of the section, disputes concerning matters in respect of which the parties may reach a settlement, may be referred to arbitrators for resolution. This gives the parties a great deal of freedom to decide on the arbitration agreement themselves. (See a. prop. p. 48 f. and 231.)

The term arbitrability refers to disputes that may be submitted to arbitrators either in advance or after they have arisen. A dispute designated as non-arbitrable cannot be submitted to arbitrators at all. As stated, the arbitration area is primarily determined by whether the dispute is dispositive or not. There are, however, certain dispositive disputes which are expressly excluded by law from the arbitration area, *e.g.*, certain labour

32

SVEA COURT OF APPEAL          **JUDGMENT**                    T 4658-18
Section 02

disputes. (See. a. prop. p. 48 f. and 231). Also peremptory procedural obstacles mean that the disputed issue is not considered arbitrable (see also Lindskog, Skiljeförfarande, En kommentar, third ed., 2020, the comment to section 33, section 4.1.1).

The aforementioned must be distinguished from such cases when arbitration agreements are not accepted for future disputes, see *e.g.*, section 6 of the SAA regarding consumer disputes. If an arbitration award is then announced, there is a ground for challenge according to section 34, paragraph 1, item 1 of the SAA. When a ban on arbitration agreements applies both in advance and after the dispute arose, the matter is therefore not arbitrable and the arbitral award is thus invalid pursuant to section 33, paragraph 1, item 1. (See a. prop. p. 49 and 231).

<u>The CJEU's judgments</u>

As previously mentioned, the CJEU has in its three rulings Achmea, Komstroy and PL Holdings ruled on arbitration agreements in international investment treaties, which have been entered into by two or more EU Member States, and the compatibility of the treaties with EU law.

In *Achmea*, the issue concerned an arbitration agreement in a bilateral investment treaty between Slovakia and the Netherlands. By way of applying the arbitration agreement, a Dutch insurance company had requested arbitration against Slovakia. The arbitration took place in Germany. Since the arbitral award was challenged in a German court, the German court requested a preliminary ruling from the CJEU (Achmea, para. 23).

The CJEU recalled that, according to its settled case law, an international treaty may not interfere with the allocation of powers fixed by the EU treaties and thus neither on the autonomy of the EU legal system, the observance of which is ensured by the CJEU (Achmea, para. 32 with references made therein).

Referring to the fact that the preliminary ruling procedure forms the core of the EU judicial system, the CJEU found that the arbitral tribunal could interpret and apply EU law, but that the arbitral tribunal did not constitute a court within the meaning of Article 267 TFEU who could request a preliminary ruling, and that the competent German court may only make a limited review (Achmea, para. 37–53).

In conclusion, the CJEU found that, by entering into a bilateral treaty, the Member States in question established a mechanism for resolving disputes between an investor and a Member State which may mean that these disputes are settled in a way that does not ensure the full effect of EU law. The CJEU determined that the relevant arbitration agreement in the treaty was not compatible with the principle of sincere cooperation and thus undermined the autonomy of EU law (Achmea, para. 56–59).

In *Komstroy*, the CJEU made statements on, *inter alia* by referring to its statements in Achmea, the arbitration clause in Article 26(2)(c) ECT. Pursuant to the arbitration clause, a Ukrainian distributor had commenced arbitration against Moldova. The arbitration took place in France. Since the award was challenged in the French court, the French court requested a preliminary ruling from the CJEU. The issues concerned, *inter alia,* Article 26(1) of the ECT but not explicitly whether Article 26(2)(c) was applicable between EU Member States (Komstroy, para. 20).

The CJEU began by stating that a legal act decided by one of the EU institutions is part of the EU legal system and that the CJEU was competent to issue preliminary rulings and to interpret the ECT (see Komstroy, para. 23 and 27).

Furthermore, the CJEU reiterated that an international treaty, according to CJEU's settled case law, may not interfere with the allocation of powers fixed by the EU treaties and thus neither on the autonomy of the EU legal system. The CJEU also stated that since the ECT is an act of EU law, such an arbitral tribunal referred to in Article 26(6) has to interpret and even apply EU law. (See Komstroy, para. 42, 49, and 50).

The CJEU then examined, with reference to its statements in Achmea, whether the arbitral tribunal in question formed part of the court system in France, and whether an arbitral award from such an arbitral tribunal was subject to review by a court capable of ensuring that EU law is fully respected and possibly request a preliminary ruling from the CJEU (see Komstroy, para 51–61 with references made therein to Achmea). These questions were answered in the negative.

Against this background, the CJEU stated, despite the fact that the questions asked did not aim at Article 26(2)(c) ECT, that the provision should be interpreted so that it is not applicable to disputes between a Member State and an investor from another Member

34

State regarding an investment made by the latter in the first Member State (Komstroy, para. 66).

The CJEU's ruling in *PL Holdings* had its background in an investment treaty between Belgium and Luxembourg on the one hand and Poland on the other.

The arbitration took place in Sweden and Swedish law was therefore applicable to the proceedings. The question to the CJEU, which was asked by the Swedish Supreme Court, did not concern the compatibility of the arbitration agreement with EU law, but whether Article 267 and 344 of the TFEU should be interpreted in such a way that they constituted an obstacle to a national legislation which allows a Member State to conclude an ad hoc arbitration agreement with an investor from another Member State that makes it possible to continue arbitration proceedings initiated on the basis of an arbitration clause whose content is identical to that agreement, where that clause is contained in an international agreement concluded between those two Member States and is invalid on the ground that it is contrary to those articles (see PL Holdings, para. 37). The CJEU answered that question in the affirmative.

PL Holdings requested that the court limit the judgment's temporal effects, so that it would not affect the arbitration commenced in good faith on the basis of the ad hoc arbitration agreement and concluded before the delivery of that judgment (see PL Holdings, para. 57).

The CJEU recalled that the interpretation of an EU provision that the CJEU undertakes, entails that the meaning and scope of the provision in question is clarified, as it is to be interpreted and applied or should have been interpreted and applied from its entry into force. The CJEU then stated that limiting the judgment's temporal effects would in fact limit the effects of the CJEU's interpretation of the Member State's obligations under the EU treaties, in particular under Article 4.3 TFEU as well as Article 267 and 344 TFEU, as interpreted in Achmea, and rejected the request that the ruling would be limited in time (see PL Holdings, para. 58, 65, 66, and 69).

*6.2.3 The Court of Appeal's assessment*

In order to be able to assess the question of whether the current dispute was arbitrable, it is first necessary to determine what conclusions can be drawn from the aforementioned decisions from the CJEU.

In Achmea, the CJEU examined a dispute settlement clause in a bilateral investment treaty, while the court in Komstroy assessed a corresponding clause, article 26 of the ECT. As stated above, the CJEU in Komstroy reiterated its position in Achmea that, according to the settled case law of the Court, an international treaty may not interfere with the allocation of powers fixed by the EU treaties and thus on the autonomy of the EU legal system. The CJEU stated that the ECT itself is an act of EU law and that an arbitral tribunal referred to in article 26.6 of the treaty has to interpret and apply EU law. After its examination of the ECT's dispute settlement procedure, the CJEU found that the Member States through article 26.3.a) ECT agreed to exclude disputes that may concern the application or interpretation of EU law from the jurisdiction of its own courts and thus from the system of legal remedies that the Member States are obligated to establish under article 19.1 of the TEU in areas covered by EU law. It was against this background that the CJEU ruled that article 26.2. c) does not apply to disputes between a Member State and an investor from another Member State. (See Komstroy, para.

42–66.)

The Court of Appeal concludes that the reasons used by the CJEU as a basis for its assessment are of a general nature and considers that they do not leave room for any other conclusion when, as in this case, Swedish law is applicable to the proceedings. The fact that the statement regarding article 26.2. c) was not made in response to a direct question to the court does not mean that the statement lacks indicative significance. The general nature of the statement has also been confirmed by the CJEU in Opinion 1/20 of 16 June 2022 on a request from Belgium for an opinion on the compatibility of the draft modernization of the ECT with the treaties, EU:C:2022:485, para. 47. In addition, the CJEU's ruling in Komstroy has not been limited in time. This means that the ECT must be interpreted according to the ruling in Komstroy as of the entry into force (cf. PL Holdings, para. 58). The above means that any arbitration agreement between the parties could never have arisen with article 26 ECT as a basis.

SVEA COURT OF APPEAL              **JUDGMENT**                    T 4658-18
Section 02

In this context, it can also be emphasized that, in line with what the CJEU stated in PL Holdings, it would also not have been possible for the parties to remedy the invalidity of the arbitration clause afterwards. The CJEU justified this decision, *inter alia*, with the fact that the question of an arbitration entity's jurisdiction cannot depend on how the parties in the dispute act (cf. PL Holdings, para. 51–56). It can also be derived from PL Holdings that arbitration clauses that have their basis in international investment treaties between Member States are contrary to some of the most fundamental principles of EU law in the EU treaties, such as the principles of mutual trust between Member States, sincere cooperation and the autonomy of EU law (see e.g. PL Holdings, para. 46 with reference to Achmea).

The CJEU's positions thus mean that Spain and Novenergia, neither in advance nor in retrospect, could have agreed that the issues in question should be resolved through arbitration. What the CJEU expressed in its rulings means that there are both pre-binding and post-binding impediments to an examination of the current dispute in an arbitration (cf. Lindskog, op. cit., the commentary to § 1, section 4.1.9). Thus, a mandatory procedural impediment existed.

As provided above, according to section 33, paragraph 1, item 1 of the SAA, the lack of arbitrability must be derived from Swedish law for an award to be considered invalid. The principle of the primacy of EU law and the requirement for effective impact means, according to the Court of Appeals' opinion, that the impediment set up by the CJEU must be equated with an impediment according to Swedish law in the sense referred to in section 33, paragraph 1, item 1 of the SAA.

The Court of Appeal's position means that it is possible to invalidate the Award, according to section 33, paragraph 1, item 1 of the SAA. The Court of Appeal therefore considers that it is not necessary to examine the other grounds for challenge or invalidity. On the other hand, it must be assessed whether the ECHR or the EU legal principle of proportionality in this case, as claimed by Novenergia, still entails impediments to invalidating the Award.

37

SVEA COURT OF APPEAL          **JUDGMENT**          T 4658-18
Section 02

**6.3 The question of whether an invalidation would be contrary to the European Convention on Human Rights or to the principle of proportionality?**

*6.3.1 Introduction*

Novenergia has argued, among other things, that a repeal or annulment on the basis of the CJEU's rulings in Achmea and Komstroy would involve the application of a retroactive amendment of the content of the ECT contrary to international law. Setting aside or invalidating the Award would, according to Novenergia, for this reason mean a serious and unequivocal violation of the ECHR. Furthermore, Novenergia has stated that a declaration of invalidity would be contrary to the right to a fair trial according to article 6 of the ECHR and to the protection of property according to article 1 of the first additional protocol to ECHR, as well as contrary to the principle of proportionality under EU law.

Spain has denied that setting aside the Award would constitute a violation of Novenergia's rights under the ECHR. Spain has referred to the fact that there are no such violations referred to therein and that the protection under the ECHR and the Additional Protocol is not absolute. In the event that there is a question of an interference of the rights according to the ECHR, according to Spain, it is legal and proportionate. Spain has further denied that the proportionality principle of EU law would constitute an obstacle to invalidate the Award.

*6.3.2 Legal starting points*

The ECHR is incorporated into Swedish law and applies as law in Sweden. Article 6 of the ECHR contains provisions on the right to a fair trial. The regulations state, among other things, that everyone must be entitled to a fair and public hearing within a reasonable time and before an independent and impartial court, established by law.

From the first additional protocol to the ECHR, it appears that every natural or legal person shall have the right to respect for his property and that no one may be deprived of his property except in the public interest and under the conditions specified in law and in the general principles of international law.

The fundamental rights as they are guaranteed according to the ECHR are included in EU law as general principles (see article 6.3 TEU). The provisions of the Charter of Fundamental Rights of the European Union (EU Charter), which correspond to

38

SVEA COURT OF APPEAL          **JUDGMENT**                    T 4658-18
Section 02

provisions in the ECHR, shall have the same meaning and scope as in the ECHR. No provision in the EU charter may be interpreted in such a way that it restricts or infringes on the human rights and fundamental freedoms recognised in the ECHR (articles 52.3 and 53 of the EU charter).

From a judgment in the European Court of Human Rights (Grand Chamber) in 2005, *i.e.*, before the introduction of the provisions now reported, it appears that the protection of human rights within the EU must be considered equivalent to the protection according to the Convention and that there is therefore a presumption that Union law respects the ECHR. The presumption can be rebutted if, in the individual case, there are circumstances which mean that the protection of ECHR rights is manifestly deficient. (See Case of Bosphorus Hava Yolları Turizm ve Ticaret Anonim Şirketi v. Ireland, no. 45036/98, judgment 30 June 2005, p. 165 with references). It follows from a later judgment of the European Court of Human Rights that the presumption is affected by whether or not the CJEU ruled on the compatibility between the current EU legislation and the ECHR (see Case of Michaud v. France, no. 12323/11, judgment on 6 December 2012, p. 114 and 115).

The principle of proportionality is a general legal principle which, among other things, is part of EU law and means that the EU's measures in content and form must not go beyond what is necessary to achieve the goals in the treaties (see articles 5.1 and 5.4 of the TEU).

The principle of the primacy of EU law means that Swedish courts and authorities are prevented from interpreting a provision that has been decided at EU level in a way that changes its content or effect and that they are bound by the CJEU's interpretation of EU law. At the same time, Sweden has an obligation under international law and a responsibility to ensure that the rights according to the ECHR are not violated in the individual case (see NJA 2014 p. 79 p. 15).

A Swedish court can depart from what follows from the CJEU's interpretation of an EU provision only if the application in the individual case would otherwise constitute a serious and unequivocal violation of the ECHR. The actual scope for such a deviation is thus extremely limited (see NJA 2014 p. 79 p. 17).

SVEA COURT OF APPEAL        **JUDGMENT**        T 4658-18
Section 02

*6.3.3 The Court of Appeal's assessment*

In Komstroy, as stated above, the CJEU has clearly interpreted EU law and stated the compatibility between, above all, on the one hand articles 267 and 344 TFEU and, on the other, article 26.2. c) ECT. This ruling is part of a uniform practice development (see section 6.2.2).

Through the statements made by the court in PL Holdings, it is clear that the CJEU anticipated, and even assumed, that the arbitration in question there could not be upheld (PL Holdings, p. 55). The consequences of the CJEU's positions were thus clear to the court. In the ruling, the CJEU then expressly stated that individual rights under EU law were something that the court systems of the Member States had to ensure, in this case the Polish court system where appropriate in cooperation with the CJEU within the scope of its jurisdiction (PL Holdings, p. 68). There is no reason to assume that the court anticipated any other outcome regarding the arbitral awards issued in connection with disputes within the framework of the ECT.

In these circumstances, the Court of Appeal starts from the presumption that the interpretation that the CJEU has made regarding the ECT is compatible with the ECHR (cf. NJA 2014 p. 79 p. 16). However, it should be pointed out that Sweden also has an obligation under international law and a responsibility to ensure that the rights according to the ECHR are not violated in the individual case (see NJA 2014 p. 79 p. 15).

Both the alleged violation of the right to protection of property and the alleged violation of the right to a fair trial are based on the claim that Novenergia, in the event of the Award being set aside, has no alternative possibility to have a claim for damages against Spain tried in court. Spain has, as stated, denied that Novenergia would lack opportunities to have a claim tried in a Spanish court.

The investigation presented by Novenergia aims at certain substantive and procedural provisions in Spanish law, *inter alia*, about time barring. The investigation provides some support for the fact that a claim according to the ECT, on the basis of these provisions, is now time-barred. Against Spain's objection, however, it cannot be considered proven that Novenergia, in the event of a claim for damages against Spain,

would be denied a judicial review. In such circumstances, it has not been shown that an invalidation would have the consequences claimed by Novenergia and that Novenergia's rights according to the ECHR with its First Additional Protocol would be violated or would be disproportionate in relation to the EU interests. The Court of Appeal then finds no reason to further go into the question of proportionality or whether an invalidation of the Award in itself could have entailed a violation of the right to judicial review or the protection of property.

### 6.4 Summary of conclusion and assessment

The Court of Appeal has found that it is clear, through the practice of the CJEU, that disputes which have their basis in the ECT may not be excluded from the national courts of the Member States and that article 26.2. c) of the ECT therefore does not apply to disputes between a Member State and an investor from another Member State concerning an investment made by the latter investor in the former Member State.

Furthermore, the Court of Appeal has assessed that what the CJEU expressed implies that the parties in this case could not, neither in advance nor in retrospect, agree that the disputed issues should be resolved through arbitration. Since the impediments to arbitration set up by the CJEU must be equated with impediments in Swedish law, the Court of Appeal has found that the Award included examination of a matter which, according to Swedish law, could not be decided by arbitrators. It has thus been assessed that the conditions exist to invalidate the Award according to section 33, paragraph 1, item 1 of the SAA.

Lastly, the Court of Appeal has assessed that it has not been shown that a declaration of invalidity in this case could have such consequences with regard to the right to judicial review and the protection of property as Novenergia claimed. Against that background, the Court of Appeal has found no reason to further address the issue of proportionality or whether an invalidation of the Award could in itself have involved a violation of these rights.

Together, the assessments of the Court of Appeal lead to Spain's claim being upheld in such a way that the Award shall be declared invalid.

SVEA COURT OF APPEAL        **JUDGMENT**                T 4658-18
Section 02

**6.5 Legal costs**

Novenergia shall, in accordance with chapter 18, section 1, of the Code of Judicial Procedure, as the losing party compensate Spain for its legal costs.

Spain has claimed compensation with a total of EUR 971,380.75. Of the cost request, EUR 937,500 refers to attorney's fees and EUR 33,880.75 to expenses. VAT is included in the claimed amount regarding attorney's fees and certain costs (translation, copying, compilation of evidence folders, delivery and taxi). Spain has declared that the Kingdom has no right to deduct value added tax and that the tax thus constitutes a cost to Spain.

Novenergia has submitted to the court to assess whether the value added tax constitutes a reimbursable cost for Spain, and whether the requested cost of attorney's fees was reasonably required for the realization of Spain's right. Novenergia has particularly pointed out that Spain did not comply with the decisions made by the Court of Appeal, *inter alia*, in the matter of obtaining preliminary rulings, and repeated requests for renewed examination by the Court of Appeal.

The Court of Appeal finds no reason to question the statement that Spain is not subject to VAT in Sweden and therefore has no possibility of deducting VAT. The value added tax thus constitutes a cost for Spain for which Spain is entitled to compensation. Furthermore, the Court of Appeal notes that the case was extensive and fundamentally important for Spain. It has been going on for a long time and generated a large number of submissions and extensive correspondence. The development of case law in the CJEU also seems to have led to some additional work. Even if the Court of Appeal can state that the exchange of letters in some parts was quite arbitrary, the Court of Appeal considers both that the work of the attorney was reasonably requested and that the claimed compensation is reasonable. Spain must therefore be awarded compensation for legal costs in accordance with its claim.

**6.6 The question of whether the judgment may be appealed, etc.**

The Court of Appeal considers that the case contains questions where it is important for the administration of the law that an appeal is heard by the Supreme Court. The Court of Appeal therefore allows the judgment to be appealed (section 43, paragraph 2, SAA).

SVEA COURT OF APPEAL               **JUDGMENT**                    T 4658-18
Section 02

There are reasons to, pending the judgment becoming final, allow the Court of Appeals' decision of 17 May 2018 on the inhibition of the Award to stand.

**HOW TO APPEAL,** see appendix A

Appeal no later than 2023-01-10

Ulrika Beergrehn, Annika Malm, judges of appeal, and Eva Edwardsson, reporting judge, participated in the judgment

Sid 1 (45)



SVEA HOVRÄTT
Avdelning 02
Rotel 020114

**DOM**
2022-12-13
Stockholm

Mål nr
T 4658-18

**PARTER**

**Kärande**
Konungariket Spanien
Abogacía General del Estado
Calle Ayala, 5
28001 Madrid
Spanien

Ombud: Advokaten Pontus Ewerlöf
Hannes Snellman Advokatbyrå AB
Box 7801
103 96 Stockholm

**Svarande**
Novenergia II - Energy & Environment (SCA), SICAR, B 124550
28, Boulevard Royale
L-2449 Luxemburg
Luxemburg

Ombud: Advokaterna Jakob Ragnwaldh, Robin Rylander och David Sandberg samt
juristen Anna Liliebäck
Mannheimer Swartling Advokatbyrå AB
Box 1711
111 87 Stockholm

**SAKEN**
Ogiltighetsförklaring av skiljedom, m.m.

_____

**Hovrättens domslut, se nästa sida.**

Dok.Id 1860038

| **Postadress** | **Besöksadress** | **Telefon** | **Telefax** | **Expeditionstid** |
|---|---|---|---|---|
| Box 2290 | Birger Jarls Torg 16 | 08-561 670 00 | | måndag – fredag |
| 103 17 Stockholm | | 08-561 675 00 | | 09:00–16:30 |
| | | **E-post**: svea.avd2@dom.se | | |
| | | www.svea.se | | |

SVEA HOVRÄTT                          **DOM**                          Sid 2
Avdelning 02                                                          T 4658-18

**HOVRÄTTENS DOMSLUT**

1. Hovrätten bifaller käromålet på så sätt att hovrätten förklarar den i Stockholm
meddelade skiljedomen av den 15 februari 2018 i SCC:s mål nr V (2015/063) ogiltig.

2. Hovrättens beslut den 17 maj 2018 om inhibition av skiljedomen ska bestå till dess
dom i målet får laga kraft.

3. Novenergia II – Energy & Environment (SCA), SICAR ska ersätta Konungariket
Spanien för dess rättegångskostnad i hovrätten med 971 380,75 EUR jämte ränta på
beloppet från dagen för hovrättens dom till dess betalning sker. Av ersättningen utgör
937 500 EUR ombudsarvode.

_____

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 3
T 4658-18

# Innehållsförteckning

**1. BAKGRUND** ................................................................................................ **5**

**2. YRKANDEN OCH INSTÄLLNING** ................................................................ **9**

**3. GRUNDER** ................................................................................................... **9**
    **3.1 Spanien** ................................................................................................... **9**
        *3.1.1 Klandergrund (A) - Artikel 26 innehåller inte ett anbud om skiljeförfarande mellan parterna och ett giltigt skiljeavtal finns därför inte mellan parterna* ......... 9

        *3.1.2 Klandergrund (B) - Anbudet om skiljeförfarande i artikel 26 är i vart fall ogiltigt och ett giltigt skiljeavtal finns därför inte mellan parterna* ..................... 10

        *3.1.3 Ogiltighetsgrund (C) - Tvisten mellan Novenergia och Spanien är inte skiljedomsmässig* .................................................................................................. 11

        *3.1.4 Ogiltighetsgrund (D) - Skiljedomen och det sätt på vilken den tillkommit är uppenbart oförenligt med grunderna för rättsordningen i Sverige* ..................... 12

        *3.1.5 Ogiltighetsgrund (E) – Utdömandet av skadestånd utgör i sig statligt stöd i strid med artikel 108 FEUF* ........................................................................... 12

        *3.1.6 Klandergrund (F) – Skiljenämnden har överskridit sitt uppdrag eller i vart fall begått ett fel i handläggningen som inverkat på utgången av målet* ............. 13

        *3.1.7 Det bestrids att proportionalitetsprincipen eller Europakonventionen utgör hinder för att upphäva eller ogiltigförklara skiljedomen* .................................... 14

    **3.2 Novenergia** ............................................................................................. **15**
        *3.2.1 Klandergrund (A) – Artikel 26 innehåller ett anbud om skiljeförfarande från bl.a. Spanien till investerare från alla andra medlemsstater i fördraget* ............. 15

        *3.2.2 Klandergrund (B) – Klandergrunden är prekluderad och skiljeavtalet är giltigt* ............................................................................................................. 16

        *3.2.3 Ogiltighetsgrund (C) - Skiljedomen innefattar inte prövning av en fråga som inte är skiljedomsmässig* ................................................................................... 18

        *3.2.4 Ogiltighetsgrund (D) - Varken skiljedomen eller det sätt på vilken den tillkommit är uppenbart oförenligt med grunderna för rättsordningen i Sverige* 18

        *3.2.6 Klandergrund (F) - Skiljedomen ska inte upphävas till viss del* ................. 19

        *3.2.7 Att upphäva skiljedomen baserat på någon av klandergrunderna (A) eller (B) eller att ogiltigförklara den på någon av ogiltighetsgrunderna (C)–(E) vore oproportionerligt och oförenligt med Europakonventionen* ............................... 20

**4. PARTERNAS UTVECKLING AV TALAN** ...................................................... **22**
    **4.1 Spanien** ................................................................................................. **22**
        *4.1.1 Angående klander- och ogiltighetsgrunderna (A)–(F)* ............................... 22

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 4
T 4658-18

*4.1.2 Angående frågan om Europakonventionen utgör hinder för att upphäva eller ogiltigförklara skiljedomen* ........................................................................... 25

**4.2 Novenergia** ................................................................................................... **26**

*4.2.1 Angående klander- och ogiltighetsgrunderna (A)–(F)* ............................... 26

*4.2.2 Angående frågan om Europakonventionen eller proportionalitetsprincipen utgör hinder mot att upphäva eller ogiltigförklara skiljedomen* ......................... 30

**5. KOMMISSIONENS YTTRANDE OCH UTREDNINGEN I ÖVRIGT**........... **31**

**6. DOMSKÄL**......................................................................................................... **32**
    **6.1 Disposition och prövningsordning** ............................................................ **32**
    **6.2 Frågan om tvisten är skiljedomsmässig**................................................... **33**
        *6.2.1 Inledning* ........................................................................................... 33
        *6.2.2 Rättsliga utgångspunkter* .................................................................. 34
        *6.2.3 Hovrättens bedömning* ...................................................................... 37
    **6.3 Frågan om en ogiltigförklaring skulle strida mot Europakonventionen eller mot proportionalitetsprincipen?**........................................................ **40**
        *6.3.1 Inledning* ........................................................................................... 40
        *6.3.2 Rättsliga utgångspunkter* .................................................................. 40
        *6.3.3 Hovrättens bedömning* ...................................................................... 42
    **6.4 Sammanfattande slutsatser och bedömning**............................................. **43**
    **6.5 Rättegångskostnad** ..................................................................................... **44**
    **6.6 Frågan om domen ska få överklagas m.m.**................................................ **45**

SVEA HOVRÄTT
Avdelning 02

**DOM**

## 1. BAKGRUND

Konungariket Spanien (Spanien) är medlemsstat i Europeiska unionen (EU) sedan år 1986. Spanien undertecknade Energistadgefördraget (EGT L 69, 1998, s.1) den 17 december 1994 och ratificerade traktaten den 11 december 1997. Energistadge-fördraget trädde i kraft i förhållande till Spanien den 16 april 1998.

Novenergia II – Energy & Environment (SCA) (Novenergia) är ett fondbolag registrerat i Luxemburg och inkorporerat under luxemburgsk lag. Novenergias investerare utgörs till största del av finansiella institutioner, främst pensions- och välgörenhetsstiftelser.

Luxemburg är medlemsstat i EU sedan år 1958 samt undertecknade energistadge-fördraget den 17 december 1994 och ratificerade fördraget den 7 februari 1997. Det trädde i kraft i förhållande till Luxemburg den 16 april 1998.

Under den senare halvan av 1990-talet avreglerades den spanska energimarknaden. Dessförinnan hade marknaden i stort sett uteslutande kontrollerats och reglerats av statliga energibolag och myndigheter. Efter avregleringen tilläts privata aktörer på energimarknaden. I syfte att uppnå målet om att tolv procent av det nationella energibehovet år 2010 (och 20 procent år 2020) skulle tillgodoses genom förnybara energikällor stiftade den spanska staten ett flertal lagar mellan åren 1997 och 2007. Regleringarna syftade till att främja produktion av förnybar el, bl.a. genom att attrahera utländska investerare inom solenergi med olika incitament och stimulans-åtgärder. Åtgärderna utvecklades under 2000-talet genom att energiproducenter som producerade energi från förnybara källor inte bara tilläts sälja elektricitet med prioritet via det spanska kraftnätet utan de erhöll dessutom en viss premie för varje producerad kilowattimme. Genom dessa åtgärder garanterade Spanien att lämna viss ersättning för varje kilowattimme som producerades av solenergianläggningar under anläggningarnas hela livscykel.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Under år 2007 investerade Novenergia i den spanska energimarknaden. Den 3 juli 2007 förvärvade Novenergia det spanska bolaget Novenergia II Energy & Environment España, S.L. Genom detta bolag förvärvade Novenergia åtta solcellsparker i Spanien.

Mellan åren 2010 och 2014 införde Spanien regleringar som i olika avseenden förändrade den subvention av energi från förnybara källor som hade varit gällande sedan år 2007. Genom dekret 1565/2010 begränsades tidsperioden för den garanterade ersättningen, från anläggningens livscykel till 25 år, och genom dekret 14/2010 begränsades det antal produktionstimmar som kunde berättiga producenterna till ekonomisk kompensation. Slutligen avskaffades den gamla regleringen genom lagen 9/2013, varigenom en ny reglering upprättades. Därigenom avskaffades slutligt Spaniens garantier till producenter av energi från förnybara källor och ersattes med en begränsad schablonersättning.

Energistadgefördraget är ett multilateralt avtal om samarbete på energiområdet. Avtalet är ett investeringsskyddsavtal och innehåller bestämmelser som syftar till att främja tillträde till internationella energimarknader på affärsmässiga villkor samt till att utveckla en öppen och konkurrensutsatt marknad för energimaterial och energiprodukter.

Artikel 26 i fördraget innehåller en tvistlösningsklausul med följande lydelse[1].

**Lösning av tvister mellan en investerare och en fördragsslutande part**

1. Tvister mellan en fördragsslutande part och en investerare från annan fördragsslutande part om en investering som den senare gjort i den förstnämndes område och som gäller påstått brott mot ett av den fördragsslutande partens åtaganden enligt del III skall, om möjligt, lösas i godo.

2. Om sådana tvister inte kan lösas enligt punkt 1 inom tre månader från den dag då en av de tvistande parterna begärde lösning i godo, får investeraren välja att hänskjuta den för lösning:

a) till allmänna domstolar eller förvaltningsdomstolar hos den fördragsslutande part som är part i tvisten,

b) i överensstämmelse med något tidigare överenskommet, tillämpligt förfarande för tvistlösning, eller

c) i enlighet med följande punkter i denna artikel.

---

[1] Se Sveriges internationella överenskommelser (SÖ) 1997:57.

SVEA HOVRÄTT            **DOM**           
Avdelning 02

3.    a) Med förbehåll endast för punkt b och c medger alla fördragsslutande parter härmed villkorslöst att en tvist överlämnas för internationell skiljedom eller förlikning i enlighet med bestämmelserna i denna artikel.

      b)     i) De fördragsslutande parterna som förtecknats i bilaga ID ger inget sådant villkorslöst medgivande om investeraren tidigare hänskjutit tvisten enligt punkterna 2(a) eller 2(b).

              ii) För att möjliggöra insyn skall alla fördragsslutande parter, som är förtecknade i bilaga ID, lämna en skriftlig förklaring om sin politik, sina förfaranden och sina villkor i dessa ärenden till sekretariatet, senast den dag då deras ratifikations-, godtagande- eller godkännandeinstrument deponeras i enlighet med artikel 39 eller vid deposition av deras anslutningsinstrument enligt artikel 41.

      c) En fördragsslutande part som förtecknats i bilaga IA ger inget sådant villkorslöst medgivande rörande tvister som uppstår beträffande sista meningen i artikel 10.1.

4. Om en investerare väljer att hänskjuta tvisten för lösning enligt punkt 2. c), skall investeraren dessutom lämna sitt skriftliga medgivande av att tvisten överlämnas till

a)      i) det internationella centralorganet för biläggande av investeringstvister, som upprättats enligt konventionen om biläggande av investeringstvister mellan stater och medborgare i andra stater, öppnad för undertecknande i Washington den 18 mars 1965 (i det följande kallad ICSID-konventionen) om den fördragsslutande part som investeraren tillhör och den fördragsslutande parten i tvisten båda är parter i ICSID-konventionen, eller

           ii) det internationella centralorganet för biläggande av investeringstvister, som upprättats enligt den konvention som nämns i moment (a)(i), enligt reglerna för den kompletterande faciliteten för centralorganets handläggning av rättsliga förfaranden (i det följande kallade reglerna för den kompletterande faciliteten) om den fördragsslutande parten som investeraren tillhör eller den fördragsslutande parten i tvisten, dock inte båda, är part i ICSID-konventionen.

b) en enda skiljedomare eller en ad hoc-skiljedomstol tillsatt enligt reglerna för skiljedom utfärdade av Förenta nationernas kommission för internationell handelsrätt (i det följande kallad UNCITRAL), eller

c) ett skiljedomsförfarande enligt skiljedomsinstitutet vid Stockholms handelskammare.

5.    a) Medgivande enligt punkt 3 skall tillsammans med skriftligt medgivande från investeraren enligt punkt 4 anses tillgodose kraven på

           i) skriftligt medgivande från parterna i en tvist enligt kapitel II i ICSID-konventionen och reglerna för den kompletterande faciliteten,

           ii) en skriftlig överenskommelse enligt artikel II i Förenta nationernas konvention om erkännande och verkställighet av utländska skiljedomar, upprättad i New York den 10 juni 1958 (i det följande kallad New York-konventionen) och

iii) att parterna i ett avtal skriftligt har kommit överens om detta enligt artikel 1 i
UNCITRAL:s skiljedomsregler.

b) Skiljedomsförfarande enligt denna artikel skall på begäran av endera parten i tvisten hållas i
en stat som är part i New York-konventionen. Rättsanspråk som överlämnas för skiljedom
enligt konventionen skall anses ha uppstått inom ramen för affärsmässiga förbindelser eller
transaktioner enligt artikel I(i) denna konvention.

6. Skiljedomstol tillsatt enligt punkt 4 skall avgöra de frågor som tvisten gäller i överensstämmelse
med detta avtal och tillämpliga regler och principer i internationell rätt.

7. En investerare, som inte är fysisk person, och som har samma nationalitet som en fördragsslutande
part som är part i tvisten den dag då skriftligt medgivande enligt punkt 4 lämnades och som, innan en
tvist mellan investeraren och den fördragsslutande parten uppstår, kontrolleras av investerare från
annan fördragsslutande part, skall för de ändamål som avses i artikel 25.2 b i ICSID-konventionen
behandlas som medborgare i annan avtalsstat och skall för ändamålen i artikel 1.6 i reglerna för den
kompletterande faciliteten betraktas som medborgare i annan stat.

8. Skiljedomar, som även kan innehålla beslut om tillerkännande av ränta, skall vara slutgiltiga och
bindande för parterna i tvisten. Skiljedom rörande en åtgärd vidtagen av en regional regering eller
myndighet i en tvistande fördragsslutande part skall innehålla beslut om att den parten får betala
ekonomiskt skadestånd i stället för annan beslutad gottgörelse. Alla parter skall utan dröjsmål
verkställa sådana skiljedomar och vidta åtgärder för en effektiv verkställighet av dem inom sina
områden.

Den 8 maj 2015 påkallade Novenergia skiljeförfarande mot Spanien vid Stockholms
Handelskammares Skiljedomsinstitut (SCC) enligt s.k. SCC-reglerna, SCC:s mål
nr V (2015/063). Som grund för talan åberopade Novenergia att Spanien hade brutit
mot sina skyldigheter enligt energistadgefördraget. I skiljeförfarandet påstod Nov-
energia att Spanien, genom de regleringar som infördes mellan åren 2010 och 2014,
brutit mot bestämmelserna i artikel 10.1 energistadgefördraget om skälig och rättvis
behandling ("fair and equitable treatment", FET) samt mot artikel 13 om expropriation.

Den 29 juli 2015 beslutade styrelsen för SCC att sätet för skiljeförfarandet skulle vara
Stockholm. Skiljenämnden bestod av advokaten Johan Sidklev (ordförande),
professorn Antonio Crivellaro och domaren Juez Bernardo Sepúlveda-Amor.

Den 15 februari 2018 meddelades skiljedomen i Stockholm. Enligt skiljedomen
befanns Spanien skyldigt till brott mot sina förpliktelser enligt bestämmelsen i artikel
10.1 energistadgefördraget. Spanien förpliktades också att betala skadestånd om 53,3

SVEA HOVRÄTT
Avdelning 02

**DOM**

miljoner EUR samt ersättning för Novenergias kostnader med ett belopp uppgående till 2,6 miljoner EUR. Kostnaderna för skiljeförfarandet delades lika mellan parterna.

Hovrätten har den 17 maj 2018, på yrkande av Spanien, beslutat att fortsatt verkställighet av den mellan parterna meddelade skiljedomen tills vidare inte får ske och den 24 oktober samma år avslagit ett yrkande om upphävande av inhibitionsbeslutet.

## 2. YRKANDEN OCH INSTÄLLNING

Spanien har yrkat att hovrätten

(i) ska upphäva skiljedomen i dess helhet, alternativt

(ii) förklara den ogiltig, eller i vart fall

(iii) upphäva skiljedomen såvitt avser utdömt skadestånd om 22,3 miljoner EUR, enligt punkten C i skiljedomen.

Novenergia har motsatt sig Spaniens yrkanden.

Parterna har yrkat ersättning för rättegångskostnader.

## 3. GRUNDER

### 3.1 Spanien

*3.1.1 Klandergrund (A) - Artikel 26 innehåller inte ett anbud om skiljeförfarande mellan parterna och ett giltigt skiljeavtal finns därför inte mellan parterna*

Novenergia påkallade skiljeförfarandet enligt artikel 26 energistadgefördraget. Det följer av ordalydelsen i artikel 26 energistadgefördraget – som ska tolkas EU-konformt och i ljuset av dess historiska, rättsliga och institutionella bakgrund – tillsammans med bland annat artiklarna 1.2, 1.3, 1.10 och 36.7 i fördraget jämte uttalande från EU och beslut från rådet i samband med att EU och medlemsstaterna anslöt sig till fördraget, att artikel 26 inte är tillämplig mellan två medlemsstater i EU och därför inte innehåller något anbud om skiljeförfarande från Spanien i förhållande till en investerare från ett annat EU-land. Artikel 26.1 avser tvister om en investering som en investerare från en fördragsslutande part gjort i en annan fördragsslutande parts område. En medlemsstat i EU utgör ett område i den mening som avses i bl.a. artikel

SVEA HOVRÄTT                            **DOM**
Avdelning 02

26.1 energistadgefördraget gentemot tredjeländer. En medlemsstat i EU, som Spanien, utgör däremot inte ett separat område i förhållande till en annan medlemsstat som Luxemburg. EU utgör en regional organisation för ekonomisk integration i den mening som avses i artikel 1.10 i fördraget. Därför utgör hela EU ett område vid tillämpningen av artikel 26. Något anbud om skiljeförfarande från Spanien för Novenergia att acceptera har därmed inte förelegat och Novenergias påkallelse av skiljeförfarande skapade inte något skiljeavtal. Förutsättningarna för ett skiljeavtal mellan Spanien och Novenergia enligt artikel 26 energistadgefördraget har därför inte varit uppfyllda.

Skiljedomen omfattas inte av något giltigt skiljeavtal och ska upphävas i enlighet med 34 § första stycket 1 lagen (1999:116) om skiljeförfarande (skiljeförfarandelagen).

*3.1.2 Klandergrund (B) - Anbudet om skiljeförfarande i artikel 26 är i vart fall ogiltigt och ett giltigt skiljeavtal finns därför inte mellan parterna*

Artiklarna 267 och 344 Fördraget om Europeiska unionens funktionssätt (FEUF) utgör hinder för en sådan bestämmelse i ett internationellt avtal mellan EU:s medlemsstater som artikel 26 energistadgefördraget enligt vilken en investerare i den ena medlemsstaten, om det uppstår en tvist om investeringar i den andra medlemsstaten, får inleda ett förfarande mot sistnämnda medlemsstat vid en skiljedomstol. Det saknar betydelse att energistadgefördraget är en multilateral traktat eller att EU är fördragsslutande part till fördraget.

Den rättsliga konsekvensen är att artikel 26 energistadgefördraget är ogiltig, inte tillämplig eller i vart fall saknar verkan mellan EU:s medlemsstater. Ett anbud om skiljeförfarande kan därmed inte ha lämnats med bindande verkan från Spanien till Novenergia. Eftersom något anbud om skiljeförfarande inte har lämnats, har inte något skiljeavtal mellan Spanien och Novenergia förelegat. Skiljeförfarandet mellan Spanien och Novenergia har alltså genomförts utan att det har förelegat något giltigt skiljeavtal.

Eftersom det inte förelegat något anbud från Spanien till Novenergia, har Spanien inte kunnat bli bundet av något skiljeavtal oavsett om Spanien har framfört en behörighets-

SVEA HOVRÄTT
Avdelning 02

**DOM**

invändning. Spanien har dock invänt mot skiljenämndens behörighet. Något konkludent skiljeavtal kan därför inte ha skapats mellan Spanien och Novenergia. Under alla förhållanden strider ett sådant mot unionsrätten.

Mot denna bakgrund ska skiljedomen upphävas i dess helhet i enlighet med 34 § första stycket 1 skiljeförfarandelagen.

Det bestrids att Spaniens rätt att föra talan om klander är prekluderad. SCC:s regler är inte tillämpliga för att avgöra om Spanien har förlorat sin rätt att föra talan om klander. Avgörandet i EU-domstolens dom av den 6 mars 2018, Achmea, C-284/16, EU:C:2018:158, innebar ett nytt faktum som var okänt för parterna före domen.

Spanien invände dock mot skiljenämndens behörighet i sitt Statement of Defence. Novenergia gick i svaromål beträffande Spaniens behörighetsinvändningar och anförde utförliga resonemang varvid Novenergia bemötte Spaniens argument beträffande artikel 26 och dess förenlighet med unionsrätten. Spanien har alltså invänt beträffande skiljenämndens behörighet och vidhållit sina invändningar under hela skiljeförfarandet. Novenergia har bemött dessa invändningar vid upprepade tillfällen och skiljenämnden har prövat Spaniens behörighetsinvändningar.

*3.1.3 Ogiltighetsgrund (C) - Tvisten mellan Novenergia och Spanien är inte skiljedomsmässig*

Tvisten i sig mellan Novenergia och Spanien är inte skiljedomsmässig. Energistadgefördraget inkräktar på den befogenhetsordning som slagits fast i EU-fördragen och därmed även på autonomin i unionens rättsordning. Eftersom skiljenämnden inte kunde ha behörighet att säkerställa unionsrättens efterlevnad, är tvisten som har avgjorts genom skiljedomen icke skiljedomsmässig.

De frågor som skiljenämnden haft att avgöra i skiljeförfarandet rör vidare EU:s regler om statligt stöd. Parterna i skiljeförfarandet har inte kunnat förlikas i dessa frågor, eftersom tillåtligheten av statligt stöd är underkastad EU-kommissionens exklusiva kompetens.

Eftersom skiljedomen innefattar icke skiljedomsmässiga frågor, är den ogiltig i enlighet med 33 § första stycket 1 skiljeförfarandelagen.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### 3.1.4 Ogiltighetsgrund (D) - Skiljedomen och det sätt på vilken den tillkommit är uppenbart oförenligt med grunderna för rättsordningen i Sverige

Skiljenämnden meddelade skiljedomen trots att den saknade behörighet och i uppenbar strid med unionsrätten, praxis från EU-domstolen och beslut från EU-kommissionen. Skiljedomen är klart oförenlig med unionsrätten och de grundläggande principer som unionsrätten vilar på.

Principen om unionsrättens autonomi, särskilt artiklarna 267 och 344 i FEUF, såsom den formulerats i praxis från EU-domstolen ingår i unionsrättslig ordre public. En skiljedom som grundas på skiljeavtal mellan en EU-medlemsstat och en investerare från en annan EU-medlemsstat är oförenlig med principen om unionsrättens autonomi och utgör en överträdelse av unionsrättslig ordre public. En svensk domstol måste ogiltigförklara en skiljedom som bryter mot unionsrättslig ordre public då denna även är i strid med svensk ordre public.

Eftersom skiljedomen uppenbart är oförenlig med grunderna för rättsordningen i Sverige och tillämplig unionsrätt, dvs. ordre public, och då rättsordningen inte får medverka till erkännande och verkställighet av en sådan skiljedom, är den ogiltig i enlighet med 33 § första stycket 2 skiljeförfarandelagen.

### 3.1.5 Ogiltighetsgrund (E) – Utdömandet av skadestånd utgör i sig statligt stöd i strid med artikel 108 FEUF

Skiljedomen är inte förenlig med rättsordningen i Sverige, eftersom skiljenämndens utdömande av skadestånd utgör statligt stöd i strid med unionsrätten.

Skiljenämnden hade inte behörighet att besluta om frågor om statligt stöd, eftersom dessa frågor faller under EU-kommissionens exklusiva behörighet.

Ett erkännande och verkställande av skiljedomen skulle innebära utbetalning av skadestånd och i sig utgöra statligt stöd. En utbetalning skulle därmed strida mot 108(3) FEUF.

Eftersom en EU-intern skiljedom inte kan erkännas och verkställas då den strider mot unionsrättslig, och därmed svensk, ordre public är den ogiltig i enlighet med 33 § första stycket 2 skiljeförfarandelagen.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### 3.1.6 Klandergrund (F) – Skiljenämnden har överskridit sitt uppdrag eller i vart fall begått ett fel i handläggningen som inverkat på utgången av målet

För det fall skiljedomen inte ska upphävas eller förklaras ogiltig, måste skiljedomen i vart fall upphävas till viss del, eftersom skiljenämnden överskridit sitt uppdrag eller i vart fall begått ett handläggningsfel.

I skiljeförfarandet hade skiljenämnden att pröva Novenergias påståenden om brott mot bl.a. bestämmelsen om skälig och rättvis behandling ("fair and equitable treatment", FET) enligt artikel 10.1 energistadgefördraget. Novenergias talan grundade sig på ett antal regulatoriska åtgärder som vidtagits av Spanien mellan åren 2010 och 2014.

Skiljenämndens bedömningar, att den saknade behörighet att pröva Novenergias påståenden som grundade sig på lagen 15/2012 om ny skatt på el och att regleringarna RDL129 14/2010 (begränsning i antalet timmar) och RDL 2/2013 (ändringar i index för uppräkning av tariffer) inte utgjorde brott mot artikel 10(1) energistadgefördraget, får avgörande betydelse för beräkningen av skadeståndet.

Skiljenämnden har dock inte, trots begäran om klargörande från parterna angående de finansiella effekterna av respektive regulatorisk åtgärd under åren 2010–2014, beaktat dessa effekter vid beräkningen av skadeståndets storlek.

Skiljenämnden har endast räknat av skadestånd hänförliga till dessa åtgärder beträffande historiska kapitalbelopp. Den stora delen av skadeståndet utgjordes i stället av framtida skador, dvs. från 2014 och framåt, vilka beräknades med tillämpning av en kassaflödesmodell *Discounted Cash Flow* (DCF). Det var vid tillämpningen av DCF fel av skiljenämnden att inte avräkna

(i) skadeståndet grundat på lagen 15/2012 från 2014 och framåt, eftersom skiljenämnden förklarade sig sakna behörighet att pröva denna fråga;

(ii) skadeståndet grundat på RDL 14/2010 från 2014 och framåt, eftersom skiljenämnden förklarade att RDL 14/2010 inte står i strid med FET i artikel 10(1) energistadgefördraget;

SVEA HOVRÄTT
Avdelning 02

**DOM**

(iii) skadeståndet grundat på RDL 2/2013 från 2014, eftersom skiljenämnden förklarade att RDL 2/2013 inte står i strid med FET i artikel 10(1) energistadge-fördraget.

Skiljenämnden har alltså, vid tillämpningen av DCF på skadeberäkningen, inte tagit hänsyn till de slutsatser beträffande ansvar som skiljenämnden tidigare gjort i domen. Skiljedomen hänger därför inte ihop och den sammanlagda effekten av skiljenämndens felaktiga hantering av frågan uppgår till ett belopp om 22,3 miljoner EUR. Denna brist innebär att skiljenämnden gjort sig skyldig till uppdragsöverskridande eller i vart fall begått ett fel i handläggningen som inverkat på utgången av målet. Skiljedomen ska därför upphävas i enlighet med 34 § första stycket 2 eller 6 skiljeförfarandelagen till den del som avser ett skadeståndsbelopp om 22,3 miljoner EUR.

Spanien begärde även efter att skiljedomen meddelats att skiljenämnden, i enlighet med § 41 SCC-reglerna och 32 § skiljeförfarandelagen, skulle rätta skiljedomen i bl.a. denna del. Skiljenämnden avslog emellertid i Procedural Order No. 17 Spaniens begäran. Detta beslut i sig innebär ett handläggningsfel som inverkat på utgången av målet. Skiljedomen ska därför upphävas även på denna grund i enlighet med 34 § första stycket 6 skiljeförfarandelagen till den del som avser ett skadeståndsbelopp om 22,3 miljoner EUR.

*3.1.7 Det bestrids att proportionalitetsprincipen eller Europakonventionen utgör hinder för att upphäva eller ogiltigförklara skiljedomen*

Det bestrids att proportionalitetsprincipen utgör hinder för att upphäva eller ogiltig-förklara skiljedomen om förutsättningarna i 34 eller 33 § skiljeförfarandelagen är uppfyllda. Det är inte föreskrivet i dessa paragrafer att domstolarna ska göra en proportionalitetsbedömning eller intresseavvägning. Det finns inte något uttalande till stöd för en sådan prövning i förarbetena till skiljeförfarandelagen.

Även om en proportionalitetsbedömning skulle vidtas av hovrätten, föreligger inget skäl att inte upphäva eller ogiltigförklara skiljedomen om förutsättningarna i övrigt härför är uppfyllda. Novenergia lider inte någon rättsförlust om skiljedomen skulle upphävas eller ogiltigförklaras. Möjligheten till rättslig prövning står kvar i nationell domstol.

Den omständigheten att artikel 26 energistadgefördraget inte är tillämplig mellan parterna är ett faktum ex tunc och bestämmelsen har således aldrig varit gällande medlemsstater sinsemellan. Det är Novenergia som har förlitat sig på en bestämmelse som är oförenlig med unionsrätten och därvid påkallat skiljeförfarande, vilket Spanien tydligt invänt i skiljeförfarandet. Novenergia kan därmed inte hävda att det förelåg en berättigad förväntning att skiljedomen skulle stå sig.

Det bestrids att ett upphävande eller ogiltigförklaring av skiljedomen skulle utgöra en kränkning av Novenergias rätt till egendomsskydd enligt artikel 1 i det första tilläggs-protokollet till Europeiska konventionen den 4 november 1950 om skydd för de mänskliga rättigheterna och de grundläggande friheterna (Europakonventionen). Det är inte fråga om någon inskränkning i egendomsskyddet om skiljedomen upphävs eller ogiltigförklaras och skyddet är dessutom inte absolut. För det fall det skulle vara fråga om en inskränkning av egendomsskyddet, är den laglig och proportionerlig.

Det bestrids att ett upphävande eller ogiltigförklarande av skiljedomen skulle innebära en kränkning av Novenergias rätt till domstolsprövning enligt artikel 6 i Europakon-ventionen. Novenergia har haft tillgång till rättslig prövning av sitt anspråk vid spansk domstol men frivilligt valt att påkalla skiljeförfarande. Rätten till domstolsprövning är inte absolut.

### 3.2 Novenergia

*3.2.1 Klandergrund (A) – Artikel 26 innehåller ett anbud om skiljeförfarande från bl.a. Spanien till investerare från alla andra medlemsstater i fördraget*

Novenergia bestrider Spaniens påstående att artikel 26 energistadgefördraget inte innehåller ett anbud om skiljeförfarande mellan parterna och att något giltigt skiljeavtal inte finns.

Enligt artikel 26.1 och 26.3(a) i energistadgefördraget har Spanien, som utgör en fördragsslutande part, lämnat ett bindande anbud om skiljeförfarande till investerare från annan fördragsslutande part avseende tvister om investeringar inom Spaniens område. Spaniens område är enligt artikel 1.10 i fördraget det territorium som staten har suveränitet över.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Novenergia är en investerare från Luxemburg, en annan avtalsslutande part till energistadgefördraget, som har investerat inom Spaniens område. Novenergia har accepterat Spaniens anbud om skiljeförfarande genom sin notifikation den 18 december 2014. Därigenom har ett skiljeavtal kommit till stånd.

Energistadgefördraget är en internationell traktat som ska tolkas och tillämpas i enlighet med folkrättsliga regler, främst Wienkonventionens bestämmelser.

Varken artikel 1.2 energistadgefördraget, som innehåller en definition av "fördragsslutade part", eller artikel 1.3 i fördraget, som innehåller en definition av "regional organisation för ekonomisk integration", ger stöd för Spaniens tolkning av artikel 26.1. Dessa bestämmelser innebär inte heller i övrigt någon begränsning av de avtalsslutande parternas bundenhet till fördraget. Artikel 1.10 i fördraget, som innehåller en definition av "område", innebär inte att fördragsslutande medlemsstaters förpliktelser enligt fördraget sinsemellan regleras av unionsrätten.

Både EU och medlemsstaterna är bundna av energistadgefördraget i dess helhet. Det finns ingen överenskommelse, en så kallad "disconnection clause", som ger stöd för Spaniens påståenden om att detta fördrag inte gäller mellan EU-medlemsstater.

Under de förhandlingar som föregick energistadgefördraget var de avtalsslutande parternas avsikt att fördraget, innefattande dess artikel 26, skulle gälla mellan samtliga avtalsslutande parter, även mellan EU:s medlemsstater. Ett förslag av EU-kommissionen om att införa en s.k. "disconnection clause" avfärdades av såväl EU-medlemsstater som tredje stater.

Det saknas stöd för att ge energistadgefördraget en EU-konform tolkning, eller tolka det enligt andra EU-rättsliga principer.

*3.2.2 Klandergrund (B) – Klandergrunden är prekluderad och skiljeavtalet är giltigt*

Spanien har förlorat rätten att göra gällande att anbudet i artikel 26 energistadgefördraget är ogiltigt.

Enligt parternas överenskommelse var SCC:s skiljedomsregler tillämpliga på skiljeförfarandet.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Enligt SCC:s skiljedomsregler ska en behörighetsinvändning inkluderas i svaromålet och göras "utan dröjsmål" för att parten inte ska anses ha avstått från rätten att göra invändningen.

Det som Spanien åberopar till stöd för klandergrund B – att det stående anbudet enligt artikel 26 energistadgefördraget ska anses ogiltigt såsom stridandes mot EU-rätten – har Spanien inte invänt under skiljeförfarandet.

Det bestrids att det saknas ett giltigt skiljeavtal.

Anbudet i artikel 26 energistadgefördraget (se klandergrund A) är giltigt, tillämpligt och saknar inte verkan mellan EU:s medlemsstater. Detta påverkas inte av EU-rätten utan avgörs uteslutande på basis av fördraget och folkrätten. Energistadgefördraget är en multilateral traktat som är bindande för EU och dess medlemsstater. EU-rätt är enligt artikel 26.6 inte tillämplig rätt i tvister enligt fördraget. Skiljenämnden har inte tillämpat EU-rätt, vilket skiljenämnden även konstaterade i skiljedomen.

Det följer varken av Achmea eller EU-domstolens dom av den 2 september 2021, Komstroy, C-741/19, EU:C:2021:655, att tvistlösningsmekanismen i energistadgefördraget skulle strida mot EU-rätten i förevarande fall. Svensk domstol kan inom ramen för sin prövning av en klander- eller ogiltighetstalan göra en utvidgad kontroll av om en skiljedom strider mot tvingande EU-rätt. Prövningen är således inte begränsad på samma sätt som den prövning av skiljedomar enligt tysk rätt som EU-domstolen lade till grund för sina slutsatser i Achmea och sina motsvarande uttalanden i Komstroy.

EU-domstolen kan tolka EU-rätt men saknar behörighet att ogiltigförklara artikel 26 energistadgefördraget. Vid en eventuell konflikt mellan energistadgefördraget och EU-fördragen har det förra fördraget företräde framför EU-fördragen enligt artikel 16 energistadgefördraget.

Under alla förhållanden medför principen om "legal certainty", vilken är en allmän rättsprincip inom EU-rätten och därmed en del av primärrätten, att EU-domstolen,

SVEA HOVRÄTT                           **DOM**
Avdelning 02

även om den skulle anse att en EU-rättsakt varigenom EU har ingått ett internationellt
avtal är oförenlig med EU-fördragen, inte skulle ogiltigförklara EU-rättsakten.

Spanien tillträdde energistadgefördraget den 11 december 1997 och lämnade däri-
genom det stående och ovillkorade anbudet om skiljeförfarande som framgår av artikel
26 i fördraget. Novenergia har, genom att påkalla skiljeförfarande, förlitat sig på det
anbudet och därigenom har ett skiljeavtal ingåtts.

### 3.2.3 Ogiltighetsgrund (C) - Skiljedomen innefattar inte prövning av en fråga som inte är skiljedomsmässig

Det bestrids att skiljedomen innefattar en prövning som inte är skiljedomsmässig.

Den mellan Novenergia och Spanien omtvistade frågan var förlikningsbar.
Skiljenämnden har inte prövat någon fråga om statligt stöd. Vad skiljenämnden
prövade var om avskaffandet av Spaniens regleringar utgjorde brott mot Spaniens
förpliktelser enligt energistadgefördraget.

EU-domstolen har inte uttalat att skiljeförfarande inte får förekomma, när en stat är
part till en tvist.

### 3.2.4 Ogiltighetsgrund (D) - Varken skiljedomen eller det sätt på vilken den tillkommit är uppenbart oförenligt med grunderna för rättsordningen i Sverige

Det bestrids att skiljedomen eller det sätt på vilken den tillkommit är uppenbart
oförenligt med grunderna för rättsordningen i Sverige.

Den rättsliga grunden för skiljeavtalet, skiljenämndens behörighet och skiljeavtalets
eventuella ogiltighet saknar betydelse för frågan om skiljedomen är oförenlig med
grunderna för den svenska rättsordningen. Även om Spaniens påståenden vore riktiga,
kan de inte innebära att skiljedomen eller det sätt på vilket den tillkommit är uppenbart
oförenligt med ordre public.

EU-domstolen har inte uppställt något absolut förbud mot skiljeförfarande. Frågor om
erkännande och verkställighet saknar betydelse för skiljedomens giltighet.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### 3.2.5 Ogiltighetsgrund (E) - Skiljedomen innefattar inte statligt stöd och är i vilket fall inte uppenbart oförenlig med grunderna för rättsordningen i Sverige

Det bestrids att skiljedomen eller det sätt på vilket den tillkommit är uppenbart oförenlig med grunderna för rättsordningen Sverige.

Skiljedomen innefattar inte statligt stöd. Skiljedomen är en bindande förklaring att Spanien har en folkrättslig förpliktelse, enligt energistadgefördraget, att utge skadestånd till Novenergia. Skiljedomen och utdömandet av skadestånd utgör inte i sig en åtgärd om statligt stöd och kan inte vara oförenlig med EU-rättsliga regler om statligt stöd. Om EU-kommissionen i ett senare skede skulle anse att verkställighet av skiljedomen eller betalning enligt densamma innebär otillåtet statligt stöd, så påverkar det inte giltigheten av skiljedomen.

Även om skiljedomen i sig skulle utgöra statligt stöd och strida mot notifieringskravet i artikel 108(3) FEUF skulle det inte innebära att skiljedomen är oförenlig med svensk ordre public.

EU-kommissionen har inte funnit att någon av de spanska reglerna som var en del av omständigheterna i skiljeförfarandet utgör statligt stöd som är oförenligt med den inre marknaden.

### 3.2.6 Klandergrund (F) - Skiljedomen ska inte upphävas till viss del

Det bestrids att skiljenämnden har överskridit sitt uppdrag eller begått något handläggningsfel.

Skiljenämnden har tagit hänsyn till sina slutsatser i ansvarsfrågan, fast dragit andra slutsatser för skadeståndsberäkningen än dem som Spanien förespråkat. Vad Spanien klagar på är skiljenämndens bedömning i sak.

Skiljenämnden fann vid sin prövning att den saknade behörighet att pröva Spaniens införande av lagen 15/2012 samt att regleringarna 14/2010 och 2/2013 inte utgjorde självständiga brott mot artikel 10.1 energistadgefördraget. Skiljenämnden fann dock att Spanien genom införandet av den nya regimen passerat tröskeln för ett traktatsbrott. Skiljenämnden noterade att Novenergia " has quantified the loss suffered as a

SVEA HOVRÄTT
Avdelning 02

**DOM**

consequence of the Specific Regime in isolation […] to EUR 53.3 million" och utdömde 53,3 miljoner EUR i skadestånd.

Även om Spanien skulle haft rätt i sina påståenden att bedömningen i skadeståndsdelen är "uppenbart oförenlig" med slutsatserna i ansvarsdelen, så är bedömningen inte ett uppenbart resultat av något misstag eller förbiseende. Bedömningen är resultatet av skiljenämndens övervägda analys. Det skulle således röra sig om en rättslig, eller saklig, felbedömning från skiljenämndens sida, vilket under inga förhållanden kan utgöra grund för klander.

Något handläggningsfel kan inte heller föreligga vad gäller skiljenämndens beslut i Procedural Order No. 17 att avslå Spaniens begäran om rättelser. Spaniens begäran avsåg i själva verket en ändring av skiljedomen, vilket skiljenämnden inte hade behörighet att bevilja enligt 32 § skiljeförfarandelagen respektive § 41 i SCC:s skiljedomsregler. Skiljenämnden kommenterade Spaniens påståenden i sak och kom fram till att den stod fast vid sin bedömning i skadeståndsfrågan. Även om det hade varit fel att avslå Spaniens begäran på den grunden att skiljenämnden saknade behörighet att pröva den, har beslutet alltså inte haft någon inverkan på utgången.

Spanien har inte konkretiserat på vilket sätt skiljenämnden skulle ha överskridit sitt uppdrag.

*3.2.7 Att upphäva skiljedomen baserat på någon av klandergrunderna (A) eller (B) eller att ogiltigförklara den på någon av ogiltighetsgrunderna (C)–(E) vore oproportionerligt och oförenligt med Europakonventionen*

Skiljedomen kan inte upphävas eller ogiltigförklaras baserat på Spaniens klander-grunder (A) och (B) respektive ogiltighetsgrunder (C)–(E), eftersom en sådan åtgärd hindras av dels den EU-rättsliga proportionalitetsprincipen, dels Europakonventionen.

Ett upphävande eller ogiltigförklarande av skiljedomen vore oförenligt med den EU-rättsliga proportionalitetsprincipen av de skäl som anges nedan i förhållande till oförenligheten med Europakonventionens bestämmelser.
Ett upphävande eller ogiltigförklarande av skiljedomen skulle innebära en allvarlig och otvetydig kränkning av Novenergias rätt till egendomsskydd av följande skäl.

**DOM**

Genom skiljedomen har Novenergia tillerkänts ersättning från Spanien med ett belopp om 53,3 miljoner EUR jämte ränta. Novenergia skulle gå miste om denna ersättning om skiljedomen upphävs eller ogiltigförklaras och Novenergia saknar alternativa ersättningsmöjligheter för Spaniens traktatsbrott.

Spaniens talan såvitt avser klandergrunderna (A) och (B) samt ogiltighetsgrunderna (C)–(E) grundas i huvudsak på påståenden om EU-rättsliga intressen, i synnerhet "en enhetlig tolkning av unionsrätten" och "den fördelning av befogenheter som fastställs i fördragen".

EU-rätt har överhuvudtaget inte berörts i skiljeförfarandet, vare sig processuellt eller materiellt. Således har de EU-rättsliga intressen som Spanien åberopar inte kunnat äventyras genom skiljeförfarandet. Skiljedomen i sig innebär ingen överträdelse av något EU-rättsligt intresse. Ett upphävande eller ogiltigförklarande av skiljedomen är därmed inte ägnat att uppnå de allmänna intressen som Spanien åberopar.

Den skada Novenergia skulle lida om skiljedomen upphävs eller ogiltigförklaras skulle i vilket fall som helst vara oproportionerlig i förhållande till de påstådda intressen som detta skulle kunna uppnå. Novenergia skulle sakna tillgång till någon möjlighet att få ersättning.

Dessutom skulle ett upphävande eller ogiltigförklarande på grundval av EU-domstolens avgöranden i Achmea och Komstroy innebära tillämpning av en folkrätts-stridig, retroaktiv ändring av innehållet i energistadgefördraget, utan att någon särskild motivering till denna retroaktiva åtgärd lämnats. Ett upphävande eller ogiltigför-klarande av skiljedomen skulle även av denna anledning innebära en allvarlig och otvetydig kränkning av Europakonventionen.

Ett upphävande eller ogiltigförklarande av skiljedomen skulle vidare innebära en allvarlig och otvetydig kränkning av Novenergias rätt till domstolsprövning av följande skäl.

Genom att påkalla skiljeförfarande mot, och därigenom ingå skiljeavtal med, Spanien avstod Novenergia från sin rätt till prövning inför domstol enligt Europakonventionen.

**DOM**

Sid 22
T 4658-18

Ett upphävande eller ogiltigförklarande av skiljedomen skulle innebära att detta av-
stående inte längre gäller, varvid Novenergia har en konventionsskyddad rätt att få sitt
krav prövat inför domstol, i detta fall av spansk domstol.

Novenergia saknar emellertid rättsliga möjligheter att få sitt skadeståndskrav med stöd
av investeringsskyddsbestämmelserna i energistadgefördraget prövat av spansk
domstol om skiljedomen upphävs eller ogiltigförklaras. En sådan talan vore
preskriberad enligt spansk rätt. Vidare tillhandahåller inte spansk (materiell) rätt någon
reell möjlighet till kompensation för enskilda som åsamkats skada genom den spanska
statens lagstiftningsåtgärder. De skador som Novenergia erhållit kompensation för
genom skiljedomen utgör resultatet av sådana lagstiftningsåtgärder. Ett hypotetiskt
krav från Novenergia med stöd av spansk materiell rätt skulle hur som helst vara
preskriberat enligt spansk rätt.

Om Novenergia inte längre kan stödja sig på det anbud om skiljeförfarande som
Spanien lämnade genom artikel 26.3 energistadgefördraget kan Novenergia alltså inte
inleda processer inför spanska domstolar med stöd av investeringsskyddsbestäm-
melserna i detta fördrag eller, även om det hade erbjudit en likvärdig möjlighet till
kompensation, med stöd av spansk materiell rätt. Ett upphävande eller ogiltigför-
klarande av skiljedomen skulle därför innefatta en allvarlig och otvetydig kränkning av
Novenergias grundläggande rätt till domstolsprövning.

**4. PARTERNAS UTVECKLING AV TALAN**

**4.1 Spanien**

*4.1.1 Angående klander- och ogiltighetsgrunderna (A)–(F)*

Energistadgefördraget är ett multilateralt avtal inom energiområdet. Europeiska
unionen är part till avtalet. Bestämmelser i internationella avtal utgör en integrerad del
av unionsrätten. Eftersom EU är fördragsslutande part till fördraget, utgör detta fördrag
en del av unionsrätten. När bestämmelserna i avtalet tillämpas mellan EU:s medlems-
stater måste de tolkas så att de till fullo är förenliga med unionsrätten och de grund-
läggande principer som unionsrätten vilar på, t.ex. principen om unionsrättens
autonomi och unionsrättens företräde. En unionsrättsligt konform tolkning medför att

artikel 26 energistadgefördraget inte innehåller något anbud om skiljeförfarande från
Spanien i förhållande till investerare från andra medlemsstater i EU.

Artikel 26 måste vidare tolkas i ljuset av dess historiska, rättsliga och institutionella
bakgrund, vilken återspeglas i andra bestämmelser i fördraget. Syftet med fördraget var
att skapa en internationell ram för samarbete inom energisektorn mellan de europeiska
gemenskaperna å ena sidan och Ryssland, CIS-länder och länder i Central- och
Östeuropa å andra sidan. Avsikten har aldrig varit att dessa bestämmelser skulle
tillämpas mellan EU:s medlemsstater. EU:s expansion medförde dock att ett stort antal
investeringsskyddsavtal även kom att reglera EU-interna förhållanden, och dessas
tvistlösningsmekanismer stod därmed också i konflikt med tvingande unionsrättsliga
regler. EU-kommissionen uppmärksammade denna konflikt redan år 2007. Sedan år
2008 har kommissionen intervenerat i ett stort antal skiljeförfaranden.

Enligt artikel 1.2 energistadgefördraget avses med fördragsslutande part "en stat eller
regional organisation för ekonomisk integration, som gått med på att låta sig bindas av
detta fördrag och som fördraget trätt i kraft för". Enligt artikel 1.3 avses med regional
organisation för ekonomisk integration "en organisation, som bildats av stater som till
den överfört behörighet i vissa frågor, av vilka några regleras i detta fördrag, inklusive
behörighet att fatta bindande beslut i dessa frågor". EU och dess medlemsstater utgör
en regional organisation för ekonomisk integration. Av artikel 36.7 framgår att EU
röstar inom de områden som faller inom EU:s kompetens och att enskilda medlems-
stater röstar inom de områden som faller inom respektive medlemsstats egen kompe-
tens. Det framgår alltså där att behörigheten är delad. EU har i samband med anslut-
ningen till energistadgefördraget förklarat att medlemsstaterna överlämnat hela eller
delar av sin beslutanderätt avseende frågor som regleras i fördraget och att denna
konstruktion accepterats av fördraget. Uttalandet ger tydligt besked om att EU inte
avsåg att energistadgefördraget skulle utgöra grund för intra-EU investeringstvister.
Uttalandet förutsätter att artikel 26 i fördraget saknar verkan sinsemellan EU:s
medlemsstater.

Investeringsskydd och i synnerhet investeringar på energiområdet träffar själva kärnan
av EU:s inre marknad. Om EU och dess medlemsstater skulle kunna komma överens

**DOM**

om ett separat och motstridigt regelsystem för investeringsskydd, att tillämpas sins-emellan, skulle detta stå i strid med artikel 3.2 FEUF. En tillämpning av artikel 26 i EU-interna investeringstvister strider mot medlemsstaternas åtagande gentemot EU.

En skiljenämnd utgör inte en domstol i den mening som avses i artikel 267 i FEUF och kan inte hänskjuta frågor till EU-domstolen.

Frågan om en tvist är skiljedomsmässig eller inte avgörs inte bara av om de materiella frågorna är förlikningsbara utan även av om tvisten i sig är skiljedomsmässig. Av avgörandet i Achmea framgår att förevarande tvist inte är skiljedomsmässig.

Skiljeförfarandelagen speglar i stor utsträckning bestämmelserna i New York-konventionen och UNCITRAL:s regler (modellagen). Det har bland annat i förarbeten till skiljeförfarandelagen uttalats att modellagens bestämmelser ska beaktas i varje delfråga. Definitionen av skiljedomsmässiga tvister i New Yorkkonventionen och modellagen är att tvisten är "capable of settlement by arbitration". Denna definition speglar hur skiljedomsmässighet ska förstås, nämligen "I detta lagstiftningsärende reserveras skiljedomsmässig för tvister som kan lämnas till avgörande av skiljemän antingen på förhand eller sedan de uppkommit." Fråga är således inte om de materiella frågorna är skiljedomsmässiga, utan om tvisten i sig är skiljedomsmässig, vilket det framgår av Achmea att förevarande tvist inte är.

Det finns inget skiljeavtal. Trots det meddelade skiljenämnden skiljedomen. EU-kommissionen har i beslut den 10 november 2017 C (2017) 7384 slagit fast att investeringstvister intra-EU inte får förekomma och att sådana tvister står i strid med EU-rätten. Därmed är sådana tvister också oförenliga med rättsordningen i Sverige. Kommissionens beslut utgör en del av utgör del av unionsrätten och ska tillämpas och ges full effekt i Sverige. Beslutet kan inte överprövas av någon annan instans än av de europeiska domstolarna, med EU-domstolen som högsta instans. Beslutet är alltså bindande för en skiljenämnd. EU-kommissionens inställning har bekräftats av EU-domstolen i Achmea.

För det fall skiljeavtalet mellan Spanien och Novenergia skulle anses giltigt är skilje-domen ändå inte förenlig med rättsordningen i Sverige, eftersom skiljenämndens

SVEA HOVRÄTT                    **DOM**
Avdelning 02

utdömande av skadestånd i sig utgör statligt stöd. Detta framgår bl.a. av EU-kommissionens beslutspraxis.

Spaniens regleringar av elmarknaden är åtgärder som har utgjort statligt stöd i enlighet med artikel 107.1 FEUF. Utdömande av skadestånd enligt skiljedomen utgör statligt stöd som i sig är i strid med unionsrätten. Frågor om statligt stöd faller inom EU-kommissionens exklusiva behörighet. Skiljenämnden har alltså inte haft behörighet att pröva frågor om detta i skiljeförfarandet. Detta följer av artikel 108 FEUF och anges uttryckligen i kommissionens beslut 7384.

Därtill skulle erkännande och verkställighet av skiljedomen innebära utbetalning av skadestånd och i sig utgöra statligt stöd, i enlighet med artikel 107.1 FEUF. EU-kommissionens uttalanden i detta avseende har därefter bekräftats av EU-domstolen.

Skiljenämndens bedömningar i fråga om skadeståndet utgjorde inte felbedömningar utan ett uppdragsöverskridande eller i vart fall ett handläggningsfel.

### 4.1.2 Angående frågan om Europakonventionen utgör hinder för att upphäva eller ogiltigförklara skiljedomen

Europeiska unionens stadga om de grundläggande rättigheterna (2016/C 202/02), EU-stadgan har samma innehåll som artikel 6 i Europakonventionen. Det finns en presumtion för att EU-rätten respekterar Europakonventionens bestämmelser.

För det fall proportionalitetsprincipen skulle vara aktuell att beakta, är det något som EU-domstolen själv skulle ha betonat i domskälen i Achmea. I avgörandet har EU-domstolen emellertid inte i något avseende gett uttryck för att proportionalitets-principen är av betydelse för tolkningen av investeringsskyddsavtals förenlighet med unionsrätten. Det saknas därmed utrymme för nationella domstolar att i sin tur ompröva EU-domstolens dom och jämka effekterna av densamma. En sådan tillämpning skulle stå i strid med unionsrättens grundläggande principer och underminera unionsrättens autonomi.

Enligt artikel 6.3 Fördraget om Europeiska unionen (FEU) ingår de grundläggande rättigheterna såsom de garanteras enligt Europakonventionen i unionsrätten som

SVEA HOVRÄTT
Avdelning 02

**DOM**

allmänna principer. De bestämmelser i EU-stadgan som motsvaras av bestämmelser i Europakonventionen ska ha samma innebörd och räckvidd som i konventionen (artikel 52.3 EU-stadgan). EU-domstolen beaktar Europadomstolens praxis vid tolkningen av unionsrätten.

Europadomstolen har slagit fast att skyddet av mänskliga rättigheter inom EU får anses vara likvärdigt med skyddet enligt Europakonventionen och att det därför finns en presumtion för att unionsrätten respekterar Europakonventionen. Presumtionen kan brytas om det i det enskilda fallet finns omständigheter som innebär att skyddet för konventionsrättigheterna är uppenbart otillräckligt.

Principen om unionsrättens företräde innebär att svenska domstolar och myndigheter är bundna av EU-domstolens tolkning av unionsrätten. En svensk domstol kan frångå vad som följer av EU-domstolens tolkning av en unionsbestämmelse endast om tillämpningen i det enskilda fallet annars skulle utgöra en allvarlig och otvetydig kränkning av Europakonventionen. Att upphäva eller ogiltigförklara skiljedomen innebär inte någon sådan allvarlig och otvetydig kränkning av Novenergias rättigheter.

Artikel 26 i energistadgefördraget föreskriver flera möjliga alternativ till tvistelösning, bl.a. talan i nationell domstol. Novenergia har följaktligen haft möjlighet att få sitt skadeståndskrav mot Spanien enligt fördraget prövat vid spansk domstol, i enlighet med artikel 6.1 Europakonventionen. Om Novenergia skulle väcka talan vid spansk domstol skulle anspråket inte heller vara preskriberat.

**4.2 Novenergia**

*4.2.1 Angående klander- och ogiltighetsgrunderna (A)–(F)*

Genom att tillträda energistadgefördraget har samtliga parter iklätt sig skyldigheter och förvärvat rättigheter gentemot övriga avtalsparter under folkrätten. En avtalsslutande parts underlåtenhet att fullgöra sina skyldigheter enligt fördraget utgör alltså ett brott mot de folkrättsliga förpliktelserna som den avtalsbrytande parten har åtagit sig gentemot övriga avtalsparter. Omständigheten att fördraget även utgör en unions-rättsakt och är en del av EU:s rättsordning innebär inte att fördraget upphör att vara en

**DOM**

internationell traktat. Fördraget existerar både i egenskap av folkrättslig traktat och som unionsrättsakt.

Wienkonventionens bestämmelser om hur en traktat ingås, tolkas, ändras eller upphör ska beaktas vid frågor om tolkning eller giltighet av en traktat. En traktats förarbeten är sådant som kan beaktas vid tolkningen.

Energistadgefördraget har sitt ursprung i den europeiska energistadgan. Kommissionen välkomnade initiativet till stadgan, som skulle gälla både mellan EU:s medlemsstater och i förhållande till tredjeländer. EU:s institutioner, däribland EU-kommissionen, spelade även en aktiv roll vid framförhandlandet av fördraget. Det är baserat på de politiska ställningstaganden som gjordes i den Europeiska energistadgan, vilket framgår av förordet till fördraget.

Vid framförhandlandet av energistadgefördraget föreslog EU-kommissionen att en s.k. "disconnection clause" skulle införas i fördraget. Enligt förslaget skulle klausulen begränsa tillämpligheten av fördraget på så vis att traktaten endast skulle tillämpas mellan EU:s medlemsstater vid avsaknaden av en tillämplig unionsrättslig regel. De förhandlande parterna enades om att inte införa en "disconnection clause". I vissa andra avseenden innehåller fördraget bestämmelser som uttryckligen begränsar traktatens tillämpningsområde.

Energistadgefördraget syftar till att åstadkomma en energigemenskap innefattande samtliga fördragsslutande parter, i motsats till ett nätverk av bilaterala relationer. Detta underströks under framförhandlandet av fördraget. EU-kommissionen framhöll under denna tid att syftet med traktaten även var att underlätta handel och investeringar på energiområdet inom EU.

Artikel 16 hanterar förhållandet mellan fördraget och andra rättsliga instrument. Om två eller flera fördragsslutande parter har ingått en tidigare eller senare internationell traktat ska, enligt artikeln, den traktat som är mest förmånlig för investeraren tillämpas. När energistadgefördraget bedöms som mer förmånlig för investeraren än den andra traktaten, ska alltså fördraget ges företräde.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Tvister under energistadgefördraget ska, enligt artikel 26.6, avgöras med tillämpning av fördraget och internationell rätt. Unionsrätten är inte en del av internationell rätt i den mening som avses i bestämmelsen. Unionsrätten utgör alltså inte tillämplig materiell rätt under fördraget.

Under senare tid har EU:s institutioner försökt ändra innehållet i bilaterala investeringsskyddsavtal samt i energistadgefördraget. Som en följd av Achmea undertecknade ett stort antal av EU:s medlemsstater två deklarationer år 2019, i vilka de åtog sig att säga upp alla bilaterala investeringsskyddsavtal som slutits mellan dem och andra EU-medlemsstater. År 2020 ingick medlemsstaterna därefter ett avtal om avslutande av bilaterala investeringsskyddsavtal. Motsvarande deklarationer har inte undertecknats med avseende på tvistelösningsbestämmelsen i energistadgefördraget till följd av EU-domstolens dom i Komstroy. Däremot har EU-kommissionen i oktober 2022 föreslagit att parterna till energistadgefördraget ska ingå ett avtal om tolkningen av fördraget enligt bestämmelsen i artikel 31.3.a Wienkonventionen om traktaträtten. Förslaget innebär att de fördragsslutande parterna ska komma överens om att energistadge-fördraget inte ska gälla, och aldrig heller har gällt, i EU-interna relationer. Även EU:s institutioner är införstådda med att folkrättsliga åtgärder behöver vidtas för att ändra innehållet i energistadgefördraget. Några sådana åtgärder har ännu inte vidtagits.

Spanien gjorde i skiljeförfarandet gällande att Novenergia inte var att anse som en investerare från en annan fördragsslutande part i energistadgefördragets mening, då hela EU utgör ett område vid tillämpningen av artikel 26. Spaniens invändning i skiljeförfarandet avsåg alltså tolkningen av olika begrepp i fördraget (dvs. klander-grund A). Spanien invände däremot inte i skiljeförfarandet att anbudet i artikel 26 skulle anses ogiltigt (dvs. klandergrund B).

I skiljedomen återgav skiljenämnden Spaniens jurisdiktionsinvändning så som den hade presenterats i Spaniens yttranden i skiljeförfarandet. Skiljenämnden prövade också Spaniens invändning mot bakgrund av hur Spanien hade formulerat den.

Skiljenämnden utförde en sedvanlig traktattolkning i enlighet med Wienkonventionens regler och fann att artikel 26 enligt dess ordalydelse är tillämplig på tvister på tvister mellan fördragsslutande parter och investerare från andra fördragsslutande parter samt

SVEA HOVRÄTT
Avdelning 02

**DOM**

att en investerare från Luxemburg är en sådan i förhållande till Spanien. En tolkning enligt Wienkonventionens regler ledde vidare skiljenämnden fram till slutsatsen att fördraget inte innehåller någon "disconnection clause" som undantar EU-interna tvister från energistadgefördragets tillämpningsområde.

Skiljenämnden förklarade även att bedömningen av dess behörighet ska ske uteslutande utifrån bestämmelserna i energistadgefördraget, och att skiljenämnden inte tillämpade unionsrätt.

<u>Beräkning av skadeståndet</u>

Utgångspunkten för Novenergias beräkning av skadeståndskravet i skiljeförfarandet var att Novenergia genom skadeståndet skulle försättas i samma situation som om Spanien inte hade brutit mot sina förpliktelser enligt energistadgefördraget. För denna beräkning utsåg Novenergia en expert som kvantifierade Novenergias skada till följd av samtliga omtvistade lagstiftningsåtgärder. På basis av beräkningen yrkade Novenergia ersättning för skadestånd av Spanien som grundade sig på att alla de lagstiftningsåtgärder som vara föremål för prövning utgjorde brott mot energistadgefördraget. Det kravet uppgick till 61,3 miljoner EUR.

Efter huvudförhandlingen i skiljeförfarandet bad skiljenämnden parterna att kvantifiera den ekonomiska effekten av varje enskild lagstiftningsåtgärd som var föremål för prövning i skiljeförfarandet. I enlighet med skiljenämndens instruktioner presenterade Novenergia sin beräkning av effekterna av de olika lagstiftningsåtgärderna.

Novenergias beräkning visade att den samlade inverkan i tiden före lagen 9/2013, dvs. den lag som slutligt avskaffade Spaniens garantier till producenter av energi från förnyelsebara källor, uppgick till 8 miljoner EUR. Avseende konsekvensen i tiden efter lagen hade Novenergia förklarat i skiljeförfarandet att de olika lagarna som föregick lagen 9/2013 blev en del av denna när den infördes. Det innebar att de lagar som föregick lagen 9/2013 fick vissa kostnadskonsekvenser för Novenergia även i tiden efter dess införande. Skadan i tiden efter lagen 9/2013 beräknade Novenergia till 53,3 miljoner EUR. Detta motsvarar även differensen mellan det totala yrkande

SVEA HOVRÄTT                     **DOM**
Avdelning 02

skadeståndet om 61,3 miljoner EUR och de 8 miljoner EUR som avsåg skador i
tiden före lagen.

Spanien argumenterade för att för det fall att den lagstiftning som föregick lagen
9/2013 inte ansågs utgöra brott mot energistadgefördraget, skulle skadeståndet sänkas
ytterligare i tiden efter införandet av lagen. Spanien gjorde gällande att skadeståndet
skulle reduceras med åtminstone ytterligare 14 miljoner EUR för det fall dekret
15/2012 inte ansågs utgöra brott mot energistadgefördraget. Avseende övriga
lagstiftningsåtgärder angav Spanien inte några motsvarande belopp.

Skiljenämnden fann att Spanien genom införandet av lagen 9/2013 brutit mot sina
förpliktelser enligt energistadgefördraget. Nämnden fann vidare att de skador som
Novenergia drabbats av i tiden före införandet av lagen 9/2013 skulle räknas av från
skadeståndet, och detta eftersom det var först genom införandet av lagen 9/2013 som
Spanien brutit mot sina förpliktelser enligt energistadgefördraget. Mot denna bakgrund
förklarade skiljenämnden hur de ekonomiska konsekvenserna av de olika lagstiftnings-
åtgärderna som föregick lagen 9/2013 skulle kvantifieras. Skiljenämnden beräknade
skadeståndet på samma sätt som Novenergia gjort. Skiljenämnden tog alltså i sin
skadeståndsberäkning hänsyn till att de lagar som infördes före lagen 9/2013 inte
utgjorde självständiga brott mot energistadgefördraget.

*4.2.2 Angående frågan om Europakonventionen eller proportionalitetsprincipen utgör
hinder mot att upphäva eller ogiltigförklara skiljedomen*

Ett bindande och verksamt skiljeavtal kom till stånd mellan Spanien och Novenergia
genom att Novenergia, genom sin påkallelseskrift, accepterade Spaniens anbud i
artikel 26 energistadgefördraget. I förlitan på detta anbud saknades det anledning för
Novenergia att inleda en domstolsprocess mot Spanien.

Om Novenergia inte skulle ha kunnat förlita sig på det anbud om skiljeförfarande som
Spanien lämnade, skulle den enda teoretiska möjligheten för Novenergia att få sina
materiella rättigheter enligt energistadgefördraget prövade vara att väcka talan vid
spansk domstol enligt artikel 26.2. a) energistadgefördraget. En sådan talan skulle
behöva föras enligt den spanska lagen 29/1998. Enligt artikel 31.1 i den lagen skulle

SVEA HOVRÄTT
Avdelning 02

**DOM**

Novenergia kunna angripa lagen 9/2013, vars införande orsakade Novenergia skada, genom ett granskningsförfarande. Novenergia skulle vidare kunna kräva ersättning för skada i enlighet med artikel 31.2 i lagen 29/1998. Ett sådant krav skulle dock vara underställt de begräsningar som följer av spansk rätt, vilket i sig innebär att en prövning enligt den spanska lagen inte skulle vara ett alternativ som är likvärdigt med ett internationellt skiljeförfarande enligt energistadgefördraget. Något annat förfarande i vilket Novenergia skulle kunna få sina rättigheter enligt energistadgefördraget prövade vid spansk domstol finns dock inte. Ett hypotetiskt krav enligt lagen 29/1998 är dessutom preskriberat enligt artikel 46.1 i denna lag. Detta då Novenergia hade behövt inleda en sådan talan senast två månader från att den lag som angrips, dvs. lagen 9/2013, publicerades i juli 2013. Novenergia hade alltså behövt inleda förfarandet senast i september samma år.

Lagen 40/2015, som Spanien har hänvisat till, trädde i kraft i först i oktober 2016. Lagen är därför inte tillämplig i tiden för Novenergias skada. Denna lag är inte heller tillämplig på ett krav grundat på energistadgefördragets materiella skyddsbestämmelser.

Novenergia kan inte heller föra en talan om skadestånd baserat på spansk materiell rätt. Lagen 30/1992 innehåller visserligen materiella bestämmelser om den spanska statens skadeståndsansvar, men även ett krav enligt artikel 142.5 i denna lag vore preskriberat. Talefristen för att framställa ett krav enligt denna lag är ett år från den skadegörande händelsen eller den tidpunkt då skadan uppkom. För Novenergias del inträffade den skadegörande händelsen genom införandet av lagen 9/2013 som trädde i kraft i juli 2013. Novenergias skada uppkom även samtidigt med att den infördes. Talefristen enligt denna lag löpte ut i juli 2014.

## 5. KOMMISSIONENS YTTRANDE OCH UTREDNINGEN I ÖVRIGT

Europeiska kommissionen (kommissionen) har – med stöd av artikel 29 i rådets förordning (EU) 2015/1589 av den 13 juli 2015 om genomförandebestämmelser för artikel 108 i fördraget om Europeiska unionens funktionssätt – på eget initiativ avgett skriftligt yttrande till hovrätten. I yttrandet har kommissionen anfört i huvudsak

följande. Skiljedomen innebär ett uppenbart åsidosättande av grunderna för rätts-
ordningen, i detta fall EU:s lagstiftning om statligt stöd. Åsidosättandet består för det
första i att skiljedomstolen inte tillämpat artiklarna 107 och 108 i FEUF för att
kontrollera om den ursprungliga stödordningen utgjorde olagligt statligt stöd. Om
skiljedomstolen hade gjort det hade den kunnat konstatera att stödordningen utgjorde
olagligt statligt stöd vilket hade medfört att skiljedomstolen inte hade kunnat
konstatera att det skett en kränkning av berättigade förväntningar. För det andra
åsidosatte skiljedomstolen kommissionens beslut om statligt stöd, trots att ett beslut
som antagits på grundval av artikel 108.3 FEUF utgör en del av EU:s grunder för
rättsordningen och måste följas av skiljedomstolarna. Dessa två åsidosättanden
innebär, var för sig, att skiljedomen måste ogiltigförklaras.

Parterna har lagt fram omfattande skriftlig bevisning.

## 6. DOMSKÄL

### 6.1 Disposition och prövningsordning

Spanien har yrkat att skiljedomen ska upphävas alternativt ogiltigförklaras samt
åberopat två alternativa grunder till stöd för sin klandertalan och tre alternativa grunder
till stöd för talan om att skiljedomen ska förklaras ogiltig. I andra hand har Spanien
yrkat att skiljedomen ska upphävas delvis.

Spanien har förklarat sig inte ha någon synpunkt på i vilken ordning hovrätten prövar
de alternativa yrkandena respektive grunderna och har inte heller påkallat att hovrätten,
vid bifall till något av Spaniens förstahandsyrkanden på någon grund, även ska pröva
övriga grunder.

Novenergia har å sin sida ansett att hovrätten bör pröva hela målet, dvs. samtliga
yrkanden och grunder, även för det fall Spanien skulle få framgång beträffande något
av sina yrkanden. Novenergia har också haft synpunkter på i vilken ordning som
hovrätten ska pröva yrkandena och grunderna.

SVEA HOVRÄTT    **DOM**
Avdelning 02

Hovrätten konstaterar att ogiltighetsreglerna och klanderreglerna i 33 § respektive
34 § lagen (1999:116) om skiljeförfarande (skiljeförfarandelagen) tillgodoser olika
skyddsintressen. Medan klanderreglerna uteslutande tar sikte på parternas skydds-
intressen syftar ogiltighetsreglerna till att skydda ett allmänt eller tredje mans intresse.
Ogiltighetsreglerna ska beaktas av domstol även utan yrkande av en part. (Se bl.a.
prop. 1998/99:35 s. 140 och 231.) Enligt hovrätten är det i detta mål lämpligt att först
pröva om skiljedomen är ogiltig på någon grund.

När det gäller de alternativa ogiltighetsgrunderna bör först bedömas om tvisten är
skiljedomsmässig (jfr NJA 2015 s. 438 p. 12). Hovrätten inleder med att pröva om EU-
domstolens avgöranden i domarna av den 6 mars, Achmea, C-284/16, EU:C:2018:158;
den 2 september 2021, Komstroy, C-741/19, EU:C:2021:655 och den 26 oktober 2021,
PL Holdings, C-109/20, EU:C:2021:875 medför att tvisten mellan Spanien och Nov-
energia inte är skiljedomsmässig, dvs. del av Spaniens ogiltighetsgrund (C).

**6.2 Frågan om tvisten är skiljedomsmässig**

*6.2.1 Inledning*

Enligt Spanien har det inte varit möjligt att avgöra tvisten genom skiljedom, eftersom
skiljeklausulen i artikel 26 energistadgefördraget, enligt Spanien, inkräktar på den
befogenhetsordning som slagits fast i EU-fördragen och därmed även på autonomin i
unionens rättsordning.

Novenergia har å sin sida invänt att de frågor som skiljenämnden i detta fall haft att
pröva rör skadestånd på grund av brott mot energistadgefördraget, vilka frågor i dess
helhet måste bedömas ha varit skiljedomsmässiga och möjliga att pröva i ett skilje-
förfarande.

Båda parter har argumenterat kring betydelsen av EU-domstolens avgöranden i
Achmea, Komstroy och PL Holdings.

**DOM**

*6.2.2 Rättsliga utgångspunkter*

<u>33 § och 1 § skiljeförfarandelagen</u>

Enligt 33 § första stycket 1 skiljeförfarandelagen är en skiljedom ogiltig, om den innefattar prövning av en fråga som enligt svensk lag inte får avgöras av skiljemän.

Vilka frågor som får avgöras av skiljemän framgår i första hand av 1 § skiljeför-farandelagen. Enligt paragrafens första stycke får tvister i frågor som parterna kan träffa förlikning om genom avtal lämnas till avgörande av skiljemän. Härigenom ges parterna en stor frihet att själva bestämma över skiljeavtalet. (Se a. prop. s. 48 f. och 231.)

Termen skiljedomsmässighet tar sikte på tvister som kan lämnas till avgörande av skiljemän antingen på förhand eller sedan de uppkommit. En tvist som betecknas som icke skiljedomsmässig kan inte alls lämnas till avgörande av skiljemän. Som framgått avgörs det skiljedomsmässiga området i första hand av om tvisten är dispositiv eller inte. Det finns dock vissa dispositiva tvister som i lag uttryckligen är undantagna från det skiljedomsmässiga området, t.ex. vissa arbetstvister. (Se a. prop. s. 48 f. och 231.) Även indispositiva processhinder medför alltså att tvistefrågan inte anses skiljedoms-mässig (se även Lindskog, Skiljeförfarande, En kommentar, tredje uppl., 2020, kommentaren till 33 §, punkt 4.1.1).

Det nu sagda ska skiljas från sådana fall när skiljeavtal inte godtas för framtida tvister, se t.ex. 6 § skiljeförfarandelagen beträffande konsumenttvister. Om en skiljedom då meddelas, föreligger det en klandergrund enligt 34 § första stycket 1 samma lag. När ett förbud mot skiljeavtal gäller såväl på förhand som då tvisten uppkommit, är frågan alltså inte skiljedomsmässig och skiljedomen ogiltig enligt 33 § första stycket 1. (Se a. prop. s. 49 och 231.)

SVEA HOVRÄTT
Avdelning 02

**DOM**

EU-domstolens avgöranden

Som framgått har EU-domstolen i de tre förhandsavgörandena Achmea, Komstroy, och PL Holdings uttalat sig om skiljeklausuler i internationella investeringsskydds-avtal, som ingåtts av två eller flera medlemsstater i EU, och avtalens förenlighet med unionsrätten.

I *Achmea* gällde frågan en skiljeklausul i ett bilateralt investeringsskyddsavtal mellan Slovakien och Nederländerna. Med tillämpning av skiljeklausulen hade ett neder-ländskt försäkringsbolag påkallat ett skiljeförfarande mot Slovakien. Skiljeförfarandet ägde rum i Tyskland. Sedan skiljedomen angripits i tysk domstol begärde den nationella domstolen förhandsavgörande från EU-domstolen (Achmea, p. 23).

EU-domstolen erinrade om att ett internationellt avtal, enligt domstolens fasta praxis, inte kan inkräkta på den befogenhetsordning som slagits fast i fördragen och därmed inte heller på autonomin i unionens rättsordning, vars efterlevnad säkerställs av domstolen (Achmea, p. 32 med där gjorda hänvisningar).

Med hänvisning till att förfarandet med förhandsavgörande utgör kärnan i det unionsrättsliga domstolssystemet konstaterade EU-domstolen, *att* skiljenämnden kunde komma att tolka och tillämpa unionsrätten men *att* skiljenämnden inte utgjorde en domstol i den mening som avses i artikel 267 i Fördraget om Europeiska unionens funktionssätt (FEUF) som kunde begära förhandsavgörande, samt *att* behörig tysk domstol endast får göra en begränsad prövning (Achmea, p. 37–53).

Sammanfattningsvis fann EU-domstolen att de aktuella medlemsstaterna genom att ingå ett bilateralt avtal upprättat en mekanism för att lösa tvister mellan en investerare och en medlemsstat som kan innebära att dessa tvister avgörs på ett sätt som inte säkerställer unionsrättens fulla verkan. EU-domstolen bedömde att den aktuella skilje-klausulen i avtalet inte var förenlig med principen om lojalt samarbete och därmed undergrävde unionsrättens autonomi (Achmea, p. 56–59).

I *Komstroy* uttalade sig EU-domstolen, bl.a. med hänvisning till sina uttalanden i Achmea, om skiljeklausulen i artikel 26.2. c) energistadgefördraget. Med tillämpning

av skiljeklausulen hade en ukrainsk distributör påkallat ett skiljeförfarande mot Moldavien. Skiljeförfarandet ägde rum i Frankrike. Sedan skiljedomen angripits i fransk domstol begärde den nationella domstolen förhandsavgörande från EU-domstolen. Frågorna gällde bl.a. artikel 26.1 i energistadgefördraget men inte uttryckligen om artikel 26.2. c) var tillämplig mellan EU-medlemsstater (Komstroy, p. 20).

EU-domstolen inledde med att konstatera att en rättsakt som beslutats av en av unionens institutioner är en del av unionens rättsordning samt att domstolen var behörig att meddela förhandsavgörande och att tolka energistadgefördraget (se Komstroy, p. 23 och 27).

Vidare erinrade EU-domstolen åter om att ett internationellt avtal, enligt domstolens fasta praxis, inte får inkräkta på den befogenhetsordning som slagits fast i fördragen och därmed på autonomin hos unionens rättsordning. Domstolen konstaterade också att eftersom energistadgefördraget är en unionsrättsakt har en sådan skiljedomstol som avses i artikel 26.6 att tolka och till och med tillämpa unionsrätten. (Se Komstroy, p. 42, 49 och 50.)

Därefter prövade EU-domstolen, med hänvisning till sina uttalanden i Achmea, *dels* om den aktuella skiljedomstolen utgjorde en del av domstolssystemet i Frankrike, *dels* om en skiljedom från en sådan skiljedomstol var underkastad en kontroll av en dom-stol som kan säkerställa att unionsrätten iakttas fullt ut och eventuellt begära förhands-avgörande från EU-domstolen (se Komstroy, p. 51–60 med däri gjorda hänvisningar till Achmea). Dessa frågor besvarades nekande.

Mot denna bakgrund uttalade EU-domstolen, trots att de ställda frågorna inte tog sikte på artikel 26.2. c) energistadgefördraget, att bestämmelsen ska tolkas så, att den inte är tillämplig på tvister mellan en medlemsstat och en investerare från en annan medlems-stat angående en investering som sistnämnda investerare gjort i den förstnämnda medlemsstaten (Komstroy, p. 66).

EU-domstolens avgörande i *PL Holdings* hade sin bakgrund i ett investeringsskydds-avtal mellan Belgien och Luxemburg å ena sidan och Polen å den andra.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Skiljeförfarandet ägde rum i Sverige och svensk rätt var därför tillämplig på förfarandet. Frågan till EU-domstolen, som ställdes av Högsta domstolen, gällde inte den aktuella skiljeklausulens förenlighet med unionsrätten utan om artiklarna 267 och 344 Fördraget om den Europeiska unionen (FEUF) skulle tolkas så, att de utgjorde hinder för en nationell lagstiftning som tillåter en medlemsstat att med en investerare från en annan medlemsstat ingå ett ad hoc-skiljeavtal som gör det möjligt att fortsätta ett skiljeförfarande som inletts med stöd av en skiljeklausul med samma innehåll som detta avtal, vilken återfinns i ett internationellt avtal ingånget mellan dessa båda medlemsstater och vilken är ogiltig på grund av att den strider mot nämnda fördragsartiklar (se PL Holdings, p. 37). EU-domstolen besvarade den frågan jakande.

PL Holdings begärde att domstolen skulle begränsa domens rättsverkningar i tiden, så att den inte skulle påverka skiljeförfaranden som i god tro inletts på grundval av ad hoc-skiljeavtal och som avslutats innan domen meddelats (se PL Holdings, p. 57).

EU-domstolen erinrade om att den tolkning av en unionsbestämmelse som domstolen gör innebär att den aktuella bestämmelsens innebörd och tillämpningsområde klargörs och förtydligas, såsom den ska tolkas och tillämpas eller borde ha tolkats och tillämpats från och med sitt ikraftträdande. Därefter konstaterade domstolen att en begränsning av domens rättsverkningar i tiden i själva verket skulle begränsa verkningarna av domstolens tolkning av medlemsstatens skyldigheter enligt fördragen, särskilt enligt artikel 4.3 FEUF samt artiklarna 267 och 344 FEUF, såsom de tolkats i Achmea, och avslog begäran om att avgörandet skulle begränsas i tiden (se PL Holdings, p. 58, 65, 66 och 69).

*6.2.3 Hovrättens bedömning*

För att kunna bedöma frågan om den nu aktuella tvisten varit skiljedomsmässig är det först nödvändigt att ta ställning till vilka slutsatser som kan dras av de nämnda avgörandena från EU-domstolen.

I Achmea prövade EU-domstolen en tvistlösningsklausul i ett bilateralt investeringsskyddsavtal medan domstolen i Komstroy bedömde en motsvarande klausul, artikel 26, i energistadgefördraget. Som framgått i det föregående upprepade EU-domstolen i

SVEA HOVRÄTT
Avdelning 02

**DOM**

Komstroy sina ställningstaganden i Achmea att ett internationellt avtal, enligt domstolens fasta praxis, inte får inkräkta på den befogenhetsordning som slagits fast i fördragen och därmed på autonomin hos unionens rättsordning. EU-domstolen konstaterade att själva energistadgefördraget är en unionsrättsakt och att en skilje-domstol som avses i artikel 26.6 i fördraget har att tolka och tillämpa unionsrätten. Efter sin prövning av energistadgefördragets tvistlösningsförfarande fann EU-domstolen att medlemsstaterna genom artikel 26.3. a) energistadgefördraget samtyckt till att undandra tvister som kan avse tillämpningen eller tolkningen av unionsrätten från sina egna domstolars behörighet och därmed från det rättsmedelssystem som medlemsstaterna enligt artikel 19.1 Fördraget om Europeiska unionen (FEU) är skyldiga att inrätta på områden som omfattas av unionsrätten. Det var mot denna bakgrund som EU-domstolen slog fast att artikel 26.2. c) inte är tillämplig på tvister mellan en medlemsstat och en investerare från en annan medlemsstat. (Se Komstroy, p. 42–66.)

Hovrätten konstaterar att de skäl som EU-domstolen lade till grund för sin bedömning är av generell karaktär och bedömer att de inte lämnar utrymme för någon annan slutsats när, som i detta fall, svensk rätt är tillämplig på förfarandet. Att uttalandet beträffande artikel 26.2. c) inte gjordes som svar på en direkt fråga till domstolen medför inte att uttalandet saknar vägledande betydelse. Uttalandets generella natur har också bekräftats av EU-domstolen i yttrandet 1/20 den 16 juni 2022 angående en begäran från Belgien om yttrande avseende om utkastet till modernisering av energi-stadgefördraget är förenligt med fördragen, EU:C:2022:485, p. 47. Till detta kommer att EU-domstolens avgörande i Komstroy inte har begränsats i tiden. Det innebär att energistadgefördraget ska tolkas enligt avgörandet i Komstroy från och med ikraft-trädandet (jfr PL Holdings, p. 58). Det anförda medför alltså att något skiljeavtal mellan parterna aldrig hade kunnat uppstå med artikel 26 energistadgefördraget som grund.

Det kan i sammanhanget också framhållas att det, i linje med vad EU-domstolen uttalade i PL Holdings, inte heller hade varit möjligt för parterna att avhjälpa skiljeklausulens ogiltighet i efterhand. EU-domstolen motiverade detta avgörande bl.a. med att frågan om ett skiljeorgans behörighet inte kan vara beroende av hur parterna i

tvisten agerar (jfr PL Holdings, p. 51–56). Av PL Holdings följer också att skilje-
klausuler som har sin grund i internationella investeringsskyddsavtal mellan medlems-
stater strider mot några av de mest grundläggande unionsrättsliga principerna i EU-
fördragen, såsom principerna om ömsesidigt förtroende mellan medlemsstaterna, lojalt
samarbete och unionsrättens autonomi (se t.ex. PL Holdings, p. 46 med däri gjord
hänvisning till Achmea).

EU-domstolens ställningstaganden innebär alltså att Spanien och Novenergia, varken i
förväg eller i efterhand, hade kunnat enas om att de aktuella frågorna ska lösas genom
ett skiljeförfarande. Det som EU-domstolen i sina avgöranden gett uttryck för innebär
att det finns såväl förhandstvingande som efterhandstvingande hinder mot en prövning
av den aktuella tvisten i ett skiljeförfarande (jfr Lindskog, a.a., kommentaren till 1 §,
avsnitt 4.1.9). Således har det förelegat ett indispositivt processhinder.

Som redovisats ovan gäller enligt 33 § första stycket 1 skiljeförfarandelagen att den
bristande skiljedomsmässigheten ska följa av svensk lag för att en skiljedom ska anses
vara ogiltig. Principen om unionsrättens företräde och krav på effektiva genomslag
medför, enligt hovrättens mening, att det hinder som EU-domstolen ställt upp måste
vara att jämställa med ett hinder enligt svensk lag i den mening som avses i 33 § första
stycket 1 skiljeförfarandelagen.

Hovrättens ställningstaganden innebär att det finns förutsättningar enligt 33 § första
stycket 1 skiljeförfarandelagen att ogiltigförklara skiljedomen. Därmed bedömer
hovrätten att det inte är nödvändigt att pröva övriga ogiltighets- eller klandergrunder.
Däremot måste bedömas om Europeiska konventionen den 4 november 1950 om
skydd för de mänskliga rättigheterna och de grundläggande friheterna (Europa-
konventionen) eller den EU-rättsliga proportionalitetsprincipen i detta fall, som
Novenergia gjort gällande, ändå medför hinder mot att ogiltigförklara skiljedomen.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### 6.3 Frågan om en ogiltigförklaring skulle strida mot Europakonventionen eller mot proportionalitetsprincipen?

*6.3.1 Inledning*

Novenergia har bl.a. anfört att ett upphävande eller ogiltigförklarande på grundval av EU-domstolens avgöranden i Achmea och Komstroy skulle innebära tillämpning av en folkrättsstridig, retroaktiv ändring av innehållet i energistadgefördraget. Ett upphävande eller ogiltigförklarande av skiljedomen skulle, enligt Novenergia, av denna anledning innebära en allvarlig och otvetydig kränkning av Europakonventionen. Vidare har Novenergia anfört att en ogiltigförklaring skulle strida mot rätten till domstolsprövning enligt artikel 6 Europakonventionen och mot egendomsskyddet enligt artikel 1 i det första tilläggsprotokollet till konventionen samt dessutom strida mot den EU-rättsliga proportionalitetsprincipen.

Spanien har förnekat att en ogiltigförklaring skulle innebära en kränkning av Novenergias rättigheter enligt Europakonventionen. Spanien har hänvisat till att det inte är fråga om några sådana kränkningar som avses där och att skyddet enligt konventionen och tilläggsprotokollet inte är absolut. För det fall det skulle vara fråga om en inskränkning av rättigheterna enligt Europakonventionen, är den enligt Spanien laglig och proportionerlig. Spanien har vidare bestritt att den EU-rättsliga proportionalitetsprincipen skulle utgöra hinder för att ogiltigförklara skiljedomen.

*6.3.2 Rättsliga utgångspunkter*

Europakonventionen är inkorporerad i svensk rätt och gäller som lag i Sverige. Artikel 6 Europakonventionen innehåller bestämmelser om rätt till en rättvis rättegång. Av bestämmelserna framgår bl.a. att var och en ska vara berättigad till en rättvis och offentlig förhandling inom skälig tid och inför en oavhängig och opartisk domstol, som upprättats enligt lag.

Av det första tilläggsprotokollet till Europakonventionen framgår att varje fysisk eller juridisk person ska ha rätt till respekt för sin egendom samt att ingen får berövas sin

egendom annat än i det allmännas intresse och under de förutsättningar som anges i lag
och i folkrättens allmänna grundsatser.

De grundläggande rättigheterna såsom de garanteras enligt Europakonventionen ingår
i unionsrätten som allmänna principer (se artikel 6.3 FEU). De bestämmelser i
Europeiska unionens stadga om de grundläggande rättigheterna (EU-stadgan), som
motsvaras av bestämmelser i Europakonventionen, ska ha samma innebörd och
räckvidd som i konventionen. Ingen bestämmelse i stadgan får tolkas så att den
inskränker eller inkräktar på de mänskliga rättigheter och grundläggande friheter som
erkänns i Europakonventionen (artiklarna 52.3 och 53 i stadgan).

Av en dom i Europadomstolen (stor kammare) år 2005, dvs. före tillkomsten av de
nu redovisade bestämmelserna, framgår att skyddet av mänskliga rättigheter inom
unionen måste anses likvärdigt med skyddet enligt konventionen och att det därför
finns en presumtion för att unionsrätten respekterar konventionen. Presumtionen kan
motbevisas om det i det enskilda fallet finns omständigheter som innebär att skyddet
för konventionsrättigheterna är uppenbart otillräckligt (manifestly deficient). (Se Case
of Bosphorus Hava Yolları Turizm ve Ticaret Anonim Şirketi v. Irland, no. 45036/98,
dom 30 juni 2005, p. 165 med hänvisningar). Av en senare dom från Europadomstolen
följer att presumtionen påverkas av om EU-domstolen uttalat sig om förenligheten
mellan den aktuella EU-lagstiftningen och Europakonvention eller inte (se Case of
Michaud v. Frankrike, no. 12323/11, dom den 6 december 2012, p. 114 och 115).

Proportionalitetsprincipen är en allmän rättsprincip som bl.a. ingår i unionsrätten och
innebär att unionens åtgärder till innehåll och form inte ska gå utöver vad som är nöd-
vändigt för att nå målen i fördragen (se artiklarna 5.1 och 5.4 i FEU).

Principen om unionsrättens företräde innebär att svenska domstolar och myndigheter
är förhindrade att tolka en bestämmelse som har beslutats på EU-nivå på ett sätt som
ändrar dess innehåll eller effekt och att de är bundna av EU-domstolens tolkning av
EU-rätten. Samtidigt har Sverige en folkrättslig förpliktelse och ett eget ansvar för att
tillse att rättigheterna enligt Europakonventionen inte kränks i det enskilda fallet (se
NJA 2014 s. 79 p. 15).

SVEA HOVRÄTT
Avdelning 02

**DOM**

En svensk domstol kan frångå vad som följer av EU-domstolens tolkning av en EU-bestämmelse endast om tillämpningen i det enskilda fallet annars skulle utgöra en allvarlig och otvetydig kränkning av Europakonventionen. Det faktiska utrymmet för en sådan avvikelse är därmed ytterst begränsat (se NJA 2014 s. 79 p. 17).

### 6.3.3 Hovrättens bedömning

EU-domstolen har i Komstroy, som framgått ovan, på ett tydligt sätt tolkat unions-rätten och uttalat sig om förenligheten mellan framför allt å ena sidan artiklarna 267 och 344 FEUF och, å den andra, artikel 26.2. c) energistadgefördraget. Detta av-görande är ett led i en enhetlig praxisutveckling (se avsnitt 6.2.2).

Genom de uttalanden som domstolen gjorde i PL Holdings står det klart att EU-dom-stolen förutsåg, och till och med förutsatte, att den skiljedom det var fråga om där inte skulle kunna upprätthållas (PL Holdings, p. 55). Konsekvenserna av EU-domstolens ställningstaganden var alltså klara för domstolen. I avgörandet konstaterade EU-domstolen sedan uttryckligen att individuella rättigheter enligt unionsrätten var något som det ankommer på medlemsstaternas domstolssystem att säkerställa, i det fallet det polska domstolssystemet i förekommande fall i samarbete med EU-domstolen inom ramen för dess behörighet (PL Holdings, p. 68). Det saknas anledning att anta att domstolen förutsett någon annan utgång beträffande de skiljedomar som meddelats med anledning av tvister inom ramen för energistadgefördraget.

Vid dessa förhållanden utgår hovrätten från presumtionen att den tolkning som EU-domstolen har gjort beträffande energistadgefördraget är förenlig med Europa-konventionen (jfr NJA 2014 s. 79 p. 16). Det ska dock påpekas att Sverige därtill har en folkrättslig förpliktelse och ett eget ansvar för att tillse att rättigheterna enligt Europakonventionen inte kränks i det enskilda fallet (se NJA 2014 s. 79 p. 15).

Såväl den påstådda kränkningen av egendomsskyddet som den påstådda kränkningen av rätten till domstolsprövning bygger på påståendet att Novenergia, vid en ogiltig-förklaring av skiljedomen, inte har någon alternativ möjlighet att i domstol få ett skadeståndskrav mot Spanien prövat. Spanien har, som framgått, förnekat att Novenergia skulle sakna möjligheter att få ett krav prövat i spansk domstol.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Den utredning som Novenergia lagt fram tar sikte på vissa materiella och processuella bestämmelser i spansk lag, bl.a. om preskription. Utredningen ger ett visst stöd för att ett krav enligt energistadgefördraget, på grundval av dessa bestämmelser, nu är preskriberat. Mot Spaniens bestridande kan det emellertid inte anses visat att Novenergia, vid en eventuell skadeståndstalan mot Spanien, skulle komma att nekas en domstolsprövning. Vid sådana förhållanden är det inte visat att en ogiltigförklaring skulle få de konsekvenser som Novenergia påstått och att Novenergias rättigheter enligt Europakonventionen med dess första tilläggsprotokoll skulle kränkas eller skulle vara oproportionerliga i förhållande till unionsintressena. Hovrätten finner då inte anledning att ytterligare gå in på frågan om proportionalitet respektive om ifall en ogiltigförklaring av skiljedomen i sig hade kunnat innebära en kränkning av rätten till domstolsprövning respektive egendomsskyddet.

**6.4 Sammanfattande slutsatser och bedömning**

Hovrätten har funnit att det genom EU-domstolens praxis är klarlagt att tvister som har sin grund i energistadgefördraget inte får undandras medlemsstaternas nationella domstolar och att artikel 26.2. c) energistadgefördraget därför inte är tillämplig på tvister mellan en medlemsstat och en investerare från en annan medlemsstat angående en investering som den sistnämnda investeraren gjort i den förstnämnda medlemsstaten.

Vidare har hovrätten bedömt att det som EU-domstolen gett uttryck för innebär att parterna i detta fall inte, varken i förväg eller i efterhand, kunnat enas om att tviste-frågorna ska lösas genom ett skiljeförfarande. Eftersom de hinder mot skiljeförfarande som EU-domstolen ställt upp måste jämställas med hinder i svensk lag, har hovrätten funnit att skiljedomen innefattat prövning av en fråga som enligt svensk lag inte kunnat avgöras av skiljemän. Det har därmed bedömts föreligga förutsättningar för att ogiltigförklara skiljedomen enligt 33 § första stycket 1 skiljeförfarandelagen.

Hovrätten har slutligen bedömt att det inte visats att en ogiltigförklaring i detta fall skulle kunna få sådana konsekvenser med avseende på rätten till domstolsprövning respektive av egendomsskyddet som Novenergia påstått. Mot den bakgrunden har hovrätten inte funnit anledning att ytterligare gå in på frågan om proportionalitet

SVEA HOVRÄTT
Avdelning 02

**DOM**

respektive om ifall en ogiltigförklaring av skiljedomen i sig hade kunnat innebära en kränkning av dessa rättigheter.

Hovrättens bedömningar leder sammantaget till att Spaniens talan ska bifallas på så sätt att skiljedomens ska förklaras ogiltig.

### 6.5 Rättegångskostnad

Novenergia ska, i enlighet med 18 kap. 1 § rättegångsbalken, som tappande part ersätta Spanien för dess rättegångskostnad.

Spanien har yrkat ersättning med sammanlagt 971 380,75 EUR. Av kostnadsyrkandet avser 937 500 EUR ombudsarvode och 33 880,75 EUR utlägg. I det yrkade beloppet avseende ombudsarvode och vissa kostnader (översättning, kopiering, samman-ställning av bevispärmar, bud och taxi) ingår mervärdesskatt. Spanien har förklarat att Konungariket inte har någon rätt att göra avdrag för mervärdesskatt och att skatten därmed utgör en kostnad för Spanien.

Novenergia har överlämnat till domstolen att bedöma *dels* om mervärdesskatten utgör en ersättningsgill kostnad för Spanien, *dels* om den begärda kostnaden för ombuds-arvode skäligen varit påkallad för tillvaratagandet av Spaniens rätt. Novenergia har särskilt pekat på att Spanien inte rättat sig efter de beslut som hovrätten fattat, bl.a. i fråga om inhämtande av förhandsavgörande, och återkommande begärt förnyad prövning av hovrätten.

Hovrätten finner inte skäl att ifrågasätta uppgiften att Spanien inte är mervärdesskatte-pliktigt i Sverige och därför inte har någon möjlighet att göra avdrag för mervärdes-skatt. Mervärdesskatten utgör därmed en kostnad för Spanien som Spanien har rätt till ersättning för. Vidare konstaterar hovrätten att målet varit omfattande och principiellt viktigt för Spanien. Det har pågått under lång tid och genererat ett stort antal hand-lingar och omfattande skriftväxling. Praxisutvecklingen i EU-domstolen synes vidare ha föranlett visst merarbete. Även om hovrätten kan konstatera att skriftväxlingen i vissa delar varit väl vidlyftig bedömer hovrätten såväl att det nedlagda ombudsarbetet

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 45
T 4658-18

varit skäligen påkallat som att den yrkade ersättningen är skälig. Spanien ska således tillerkännas ersättning för rättegångskostnad i enlighet med sitt yrkande.

**6.6 Frågan om domen ska få överklagas m.m.**

Hovrätten anser att målet rymmer frågor där det är av vikt för ledning av rättstillämpningen att ett överklagande prövas av Högsta domstolen. Hovrätten tillåter därför att domen överklagas (43 § andra stycket lagen, 1999:116, om skiljeförfarande).

Det finns skäl att, i avvaktan på lagakraftvunnen dom, låta hovrättens beslut den 17 maj 2018 om inhibition av skiljedomen bestå.

**HUR MAN ÖVERKLAGAR,** se bilaga A
Överklagande senast 2023-01-10

I avgörandet har deltagit hovrättsråden Ulrika Beergrehn, Annika Malm, referent, och Eva Edwardsson.

**SVERIGES DOMSTOLAR**
www.domstol.se

Bilaga

# Hur man överklagar hovrättens avgörande

Den som vill överklaga hovrättens avgörande ska göra det genom att skriva till Högsta domstolen. Överklagandet ska dock skickas eller lämnas till hovrätten.

## Senaste tid för att överklaga

Överklagandet ska ha kommit in till hovrätten senast den dag som anges i slutet av hovrättens avgörande.

Beslut om häktning, restriktioner enligt 24 kap. 5 a § rättegångsbalken eller reseförbud får överklagas utan tidsbegränsning.

Om överklagandet har kommit in i rätt tid, skickar hovrätten överklagandet och alla handlingar i målet vidare till Högsta domstolen.

## Prövningstillstånd i Högsta domstolen

Det krävs prövningstillstånd för att Högsta domstolen ska pröva ett överklagande. Högsta domstolen får meddela prövningstillstånd endast om

1. det är av vikt för ledning av rättstillämpningen att överklagandet prövas av Högsta domstolen eller om

2. det finns synnerliga skäl till sådan prövning, så som att det finns grund för resning, att domvilla förekommit eller att målets utgång i hovrätten uppenbarligen beror på grovt förbiseende eller grovt misstag.

## Överklagandets innehåll

Överklagandet ska innehålla uppgifter om

1. klagandens namn, adress och telefonnummer,

2. det avgörande som överklagas (hovrättens namn och avdelning samt dag för avgörandet och målnummer),

3. den ändring i avgörandet som klaganden begär,

4. de skäl som klaganden vill ange för att avgörandet ska ändras,

5. de skäl som klaganden vill ange för att prövningstillstånd ska meddelas, samt

6. de bevis som klaganden åberopar och vad som ska bevisas med varje bevis.

## Förenklad delgivning

Om målet överklagas kan Högsta domstolen använda förenklad delgivning vid utskick av handlingar i målet, under förutsättning att mottagaren där eller i någon tidigare instans har fått information om sådan delgivning.

## Mer information

För information om rättegången i Högsta domstolen, se www.hogstadomstolen.se

Anvisning för överklagande HR, avgörande, med pt • Producerat av Domstolsverket • 2017-07