# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                               :

NEXTERA ENERGY GLOBAL HOLDINGS     :
B.V. and NEXTERA ENERGY SPAIN       :
HOLDINGS B.V.,                            :
                                                 :
                       Petitioners, :
                                                   :   Civil Action No. 19-cv-01618-TSC
                     v.                           :
                                                   :
KINGDOM OF SPAIN,                         :
                                                   :
                       Respondent. :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## REPLY BRIEF IN SUPPORT OF PETITIONERS' MOTION FOR
## PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

LEGAL ARGUMENT .................................................................................................. 3

I. THE REQUESTED ANTI-SUIT INJUNCTION IS VITAL TO PROTECT THIS
    COURT'S JURISDICTION AND THE POLICIES OF THE UNITED STATES ............ 3

    A.    The Dutch Action Expressly Threatens to Eviscerate the Jurisdiction of
        this Court ....................................................................................................... 3

        *1.*    *The Court Has Jurisdiction Over This Action and the Power to Issue*
            *Immediate Relief* ................................................................................... 5

        *2.*    *Spain's Actions Imperil NextEra's Rights Under U.S. Law* .................. 10

    B.    An Anti-Suit Injunction is Necessary to Protect the Policy of the United
        States in the Enforcement of ICSID Awards ........................................... 12

    C.    Granting NextEra's Request for a Narrowly Tailored Defensive Injunction
        Would Not Violate Principles of International Comity ......................... 16

II. THE REQUESTED INJUNCTION ALSO SATISFIES THE TRADITIONAL
    REQUIREMENTS FOR A PRELIMINARY INJUNCTION ........................... 20

CONCLUSION ............................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*In re Air Cargo Shipping Services Antitrust Litigation*,
  No. MD 06-1775(JG)(VVP), 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008),
  *report and recommendation adopted in part*, 2009 3443405 (E.D.N.Y. Aug. 21, 2009),
  *aff'd*, 697 F.3d 154 (2d Cir. 2012) ............................................................................... 15

*American Horse Protection Ass'n v. Lyng*,
  690 F. Supp. 40 (D.D.C. 1988) ..................................................................................... 20

*BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition
  Program Administration*,
  884 F.3d 463 (4th Cir. 2018) ........................................................................................ 19

*BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition
  Program Administration*,
  195 F. Supp. 3d 776 (D. Md. 2016) .............................................................................. 19

*Blue Ridge Investments, L.L.C. v. Republic of Argentina*,
  735 F.3d 72 (2d Cir. 2013)......................................................................................... 7, 8

*Chevron Corp. v. Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) .................................................................................. 7, 8

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
  No. 1:19-cv-0683 (CJN), 2022 WL 3576193 (D.D.C. Aug. 19, 2022) ........................... 2

*Creighton Ltd. v. Government of State of Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ...................................................................................... 9

*E. & J. Gallo Winery v. Andina Licores S.A.*,
  446 F.3d 984 (9th Cir. 2006) ........................................................................................ 20

*Empagran S.A. v. Forum Hoffmann-La Roche, Ltd.*,
  417 F.3d 1267 (D.C. Cir. 2005) .................................................................................... 15

*Hulley Enterprises Ltd. v. Russian Federation*,
  No. 14-1996 (BAH), 2022 WL 1102200 (D.D.C. Apr. 13, 2022)........................... 11, 12

*Ioannidis/Riga v. M/V Sea Concert*,
  132 F. Supp. 2d 847 (D. Or. 2001) .............................................................................. 18

*Jolen, Inc. v. Kundan Rice Mills, Ltd.*,
  19-cv-1296 (PKC), 2019 WL 1559173 (S.D.N.Y. Apr. 9, 2019)................................... 22

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  500 F.3d 111 (2d Cir. 2007).......................................................................................... 19

*Koch Minerals Sarl v. Bolivarian Republic of Venezuela*,
  No. 17-cv-2559-ZMF, 2021 WL 3662938 (D.D.C. Aug. 18, 2021) ............................................... 3

\* *Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984) ............................................................. 1, 3, 4, 5, 12, 17, 18, 19, 23

*LLC SPC Stileks v. Republic of Moldova*,
  985 F.3d 871 (D.C. Cir. 2021) ............................................................................................................ 8

\* *Micula v. Government of Romania*,
  404 F. Supp. 3d 265 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020) ...................... 3, 8, 12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017) ............................................................................................................. 3, 8, 13

*Oetjen v. Central Leather Co.*,
  246 U.S. 297 (1918) ....................................................................................................................... 19, 20

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
  27 F.4th 771 (D.C. Cir. 2022) .......................................................................................................... 7

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
  962 F.3d 576 (D.C. Cir. 2020) ........................................................................................................ 11

*Rich v. Butowsky*,
  No. 18-681 (RJL), 2020 WL 7016436 (D.D.C. Mar. 31, 2020) .................................................... 20

*Saint Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*,
  No. 20-129 (RC), 2021 WL 6644369 (D.D.C. July 13, 2021) ........................................................ 9

*Stati v. Republic of Kazakhstan*,
  199 F. Supp. 3d 179 (D.D.C. 2016) ................................................................................................. 9

*Tatneft v. Ukraine*,
  21 F.4th 829 (D.C. Cir. 2021), *cert. denied*, *Ukraine v. PAO Tatneft*, 143 S. Ct. 290
  (2022) ............................................................................................................................................... 18

*Teck Metals Ltd. v. Certain Underwriter's at Lloyd's, London*,
  No. CV-05-411-LRS, 2009 WL 4716037 (E.D. Wash. Dec. 8, 2009) ..................................... 17, 19

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
  414 F. Supp. 3d 94 (D.D.C. 2019) ............................................................................................ 3, 13, 15

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
  No. 17-102(RDM), 2018 WL 4705794 (D.D.C. Sept. 30, 2018) .................................................... 8

*Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
  590 F. Supp. 3d 262 (D.D.C. 2022). .................................................................................... 2, 3, 7, 8, 10

*Tidewater Investment SRL v. Bolivarian Republic of Venezuela*,
  No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ................................................ 3, 8

*Travelport Global Distribution Systems B.V. v. Bellview Airlines Ltd.*,
    No. 12 Civ. 3483 (DLC), 2012 WL 3925856 (S.D.N.Y. Sep. 10, 2012)........................................ 16

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
    No. 19-cv-46-FYP-RMM, 2022 WL 17370242 (D.D.C. Aug. 3, 2022) ........................................ 2

*Warn v. M/Y Maridome*,
    961 F. Supp. 1357 (S.D. Cal. 1997), *aff'd*, 169 F. 3d 625 (9th Cir. 1999) ................................... 18

*Zhongshan Fucheng Industrial Investment Co., Ltd., v. Nigeria*
    No. CV 22-170 (BAH), 2023 WL 417975 (D.D.C. Jan. 26, 2023) ............................................. 10

## STATUTES

22 U.S.C. § 1650a .................................................................................................... 1, 2, 12, 13, 16, 18, 22

28 U.S.C. § 1605(a) ........................................................................................................................... 7, 9

Petitioners respectfully submit this Reply Brief in further support of their Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 78, the "Motion" or "Mot.") and in response to Spain's January 26, 2023, Opposition Brief (ECF No. 81, "Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

Confronted with NextEra's application to enjoin a foreign lawsuit that threatens to terminate this case and strip this Court of jurisdiction—as well as irrefutable proof of urgency—Spain's briefing attempts to deflect matters by engaging in evasions and vague generalities. Yet nothing can distract from the fact that Spain's Dutch Action, by the explicit terms of its pleadings, seeks to terminate this case, identifying it specifically by name and docket number in its requests for relief. This case thus cries out for urgent relief in the form of a TRO and preliminary injunction preventing Spain from pursuing the specific requests for relief in the Dutch Action that threaten to interfere with this Court's explicit treaty-based, and congressionally mandated, jurisdiction to recognize and enforce NextEra's Award. Binding precedent of this Circuit confirms that such an injunction is amply justified, as it would protect the Court from requests for relief in a foreign action whose "sole purpose" is "to *terminate* the [U.S.] action." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 930 (D.C. Cir. 1984). It would also ensure that the Court can fulfill its statutory duty to see that ICSID tribunal awards "shall be enforced," 22 U.S.C. § 1650a(a)—a duty consistent with the ICSID Convention's requirement that such awards be treated as "binding" without "any appeal or . . . any other remedy," ICSID Convention art. 53(1).

In its opposition brief, Spain barely attempts to address the basis for the targeted, defensive injunctive relief NextEra seeks. Instead, Spain veers off into a discussion of *other* issues: it seeks

---

[1] Terms defined in the Motion have the same meaning in this Reply Brief.

to relitigate the merits of the Award (which have twice been decided against Spain, with dispositive effect), revisit irrelevant issues of EU law (such as the treaty structure connecting "the application of the TEU, the TFEU, and the ECT," Opp. 1) even though these do not properly arise for adjudication in this action, and re-plow the *fully briefed* issue of subject matter jurisdiction over this straightforward ICSID award enforcement action.  Not once does Spain acknowledge that it is an *award debtor* from an arbitration that took place between 2014 and 2019 before a properly constituted ICSID Tribunal and resulted in an Award finding that Spain's actions caused NextEra to lose the value of its investment.  Nor does Spain acknowledge that the Award survived an annulment challenge which lasted between 2019 and 2022, thereby exhausting Spain's last remedies under the ICSID Convention.  For Spain to now argue, years after all of those events and decisions, that it should be able to shop for a foreign court in a bid to prohibit enforcement of the Award demonstrates its utter lack of respect for both the ICSID Convention and this Court.

To the extent any of Spain's attempts to relitigate the merits of the Award bear on the Court's resolution of the present Motion, they are unavailing.  This action is straightforward, and Spain's attempts to invoke transnational EU law and principles of comity do not make it less so. Federal law requires that the Award "shall be enforced" by this Court as a judgment.  22 U.S.C. § 1650a(a).  The United States' binding treaty obligations confirm that the Court "shall recognize an award pursuant to [the ICSID] Convention as binding" in the same manner as "a final judgment of a court."  ICSID Convention art. 54(1).  Every court to consider an award of an ICSID tribunal has reached the same conclusion.  *See, e.g.*, *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venez.*, No. 1:19-cv-0683 (CJN), 2022 WL 3576193, at *4 (D.D.C. Aug. 19, 2022); *Valores Mundiales, S.L. v. Bolivarian Republic of Venez.*, No. 19-cv-46-FYP-RMM, 2022 WL 17370242, at *5 (D.D.C. Aug. 3, 2022); *Tethyan Copper Co. v. Islamic Republic of Pak.*, 590 F. Supp. 3d 262,

275 (D.D.C. 2022); *Koch Minerals Sarl v. Bolivarian Republic of Venez.*, No. 17-cv-2559-ZMF, 2021 WL 3662938, at *2–3 (D.D.C. Aug. 18, 2021); *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 275–76 (D.D.C. 2019); *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 117–18 (2d Cir. 2017).  Regardless of Spain's position on what the EU may or may not decide regarding the application of its own laws to certain types of disputes, the law of the United States mandates that this dispute is at its endpoint.

Viewed through the perspective of federal law, as it must be seen, the defensive anti-suit injunction that NextEra requests is necessary to preserve the Court's jurisdiction, protects the clear policy enacted by Congress to enforce ICSID awards, and comports with all of the traditional requirements the Court considers when issuing a preliminary injunction.

## LEGAL ARGUMENT

### I.
### THE REQUESTED ANTI-SUIT INJUNCTION IS VITAL TO PROTECT THIS COURT'S JURISDICTION AND THE POLICIES OF THE UNITED STATES

**A.  The Dutch Action Expressly Threatens to Eviscerate the Jurisdiction of this Court**

In the Dutch Action, Spain takes explicit aim at these proceedings, seeking nothing short of the complete prohibition of any efforts to proceed with NextEra's Petition—specifically identified by case name and docket number—and a permanent injunction preventing its refiling. Dutch Writ at 33 (Claims M, O).  There is no denying that this requested relief seeks to "paralyze or halt the proceedings" before this Court.  *See Laker Airways,* 731 F.2d at 930–31 (granting anti-suit injunction where a foreign action's "sole purpose" was "to *terminate*" existing U.S. proceedings even though the foreign action raised a foreign law claim and sought a "determination that the defendants had not engaged in any unlawful conduct" (emphasis in original)).  Thus, the

only question this Court must answer on the present Motion is whether a defensive anti-suit injunction—narrowly drawn to enjoin only that part of the Dutch Action that directly threatens the proceedings in this Court—is warranted here, as it was in *Laker Airways*, to "protect the jurisdiction of [the Court]" and "to preserve [NextEra's rights] under the laws of the United States.'" *See id.* at 919 (internal quotation removed).

The answer, unequivocally, is "yes." NextEra's Motion explained that the two-part test governing the appropriateness of anti-suit injunctions in the D.C. Circuit set forth in *Laker Airways* supports an injunction where it is necessary "[1] to protect the jurisdiction of the enjoining court, or [2] to prevent the litigant's evasion of the important public policies of the forum." Mot. 10–11 (quoting *Laker Airways*, 731 F.2d at 927). Either one of these alternative criteria justifies an injunction, and the Motion easily meets both of them. In such circumstances, it is "well settled" that a federal court not only has the authority to issue a defensive anti-suit injunction to enjoin the foreign proceedings (insofar as they affect this Court's own jurisdiction) but indeed a "duty" to do so. *See Laker Airways*, 731 F.2d at 926–27. Spain's Opposition does not contest that *Laker Airways* sets forth the governing standard in the D.C. Circuit, nor does it seriously grapple with the straightforward application of the *Laker Airways* test to the present Motion. Instead, Spain argues that other Circuits employ an even more permissive standard, which, regardless of its academic interest, is beside the point. *See* Opp. 7–9.[2]

---

[2] Spain cites to only one other D.C. Circuit authority in its discussion of the applicable legal standard. *See* Opp. 9 (citing *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 434 (D.C. Cir. 2022).) That case, while factually inapposite, still supports NextEra's Motion here. *Credit Suisse* concerned a district court's grant of a *permanent* injunction against an individual to prevent him from gaining access to certain foreign bank accounts that had been subject to forfeiture to the United States following his being found guilty of money laundering. *Id.* at 430–31. Thus, the D.C. Circuit was called upon to apply the different rule that traditionally governs the availability of anti-suit injunctions for *in rem* actions. *Id.* at 434. However, in upholding that form of injunctive relief, *Credit Suisse* confirmed that the *Laker Airways* standard governs *in personam* cases like this one, such that foreign anti-suit injunctions are appropriate

From there, rather than grapple with the governing legal standard in this Circuit to address the limited question posed by NextEra's Motion for injunctive relief, Spain reiterates its arguments against the Court's subject matter jurisdiction over these proceedings.  As the Court is well aware, Spain's jurisdictional arguments have already been fully briefed by the parties—twice over—in connection with Spain's pending motion to dismiss and NextEra's pending cross-motion for summary judgment.  Spain's repetition of those arguments in this context provides no basis to deny the Motion, because the Motion seeks to *preserve* this Court's ability to rule on those issues in the normal way.  Instead, Spain's diversionary tactics merely serve to demonstrate the lack of substance in Spain's position, and, above all, that Spain is unable to dispute that a defensive anti-suit injunction is warranted under *Laker Airways*.

1.  *The Court Has Jurisdiction Over This Action*
    *and the Power to Issue Immediate Relief*

In its Opposition, Spain asserts that NextEra's Motion bypasses Spain's right under the FSIA to have its sovereign immunity defenses "addressed before this court entertains any other motion or request for relief," Opp. 16, and further asserts—disingenuously—that the Dutch Action is "necessary to prevent the harm that Spain would suffer if the Cross Motion is granted without first resolving Spain['s] jurisdictional argument," *id.* at 17.  As a threshold matter, the Dutch Action does *not* purport to be aimed at "resolv[ing]" Spain's ultra-technical subject matter jurisdiction arguments advanced in this action under the FSIA.  It seeks, explicitly, to shut down this action entirely and irrevocably, thus achieving a "resolution" of Spain's FSIA arguments by silencing this Court via a foreign injunction.

---

when "'required to prevent an irreparable miscarriage of justice,' such as when 'necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum.'"  *Id.* (quoting *Laker Airways*, 731 F.2d at 927).

In contrast to Spain's sweeping desired relief, NextEra's Motion seeks to preserve this Court's ability to rule on the objections that Spain raises under the FSIA in the normal way. Having placed those FSIA arguments before this Court through extensive briefing since 2019, Spain cannot now take the position that a foreign court should prevent this Court from ruling on Spain's own objections—especially when they concern the subject matter jurisdiction of this Court.  Yet that is the precise outcome that Spain asks this Court to endorse by opposing the Motion.

It is important to recall that the issues before the Dutch court and this Court, save for the Dutch Action's specific attack on this action, are distinct.  Even if it were assumed *arguendo* that the Dutch court accepts Spain's arguments that the arbitration agreement in the ECT contradicts EU law, or that under EU law payment of the Award by Spain requires approval from the European Commission, that would not resolve the question before this Court.  Even in those circumstances, NextEra would remain the holder of a final ICSID award where the Tribunal upheld its jurisdiction and the ICSID Annulment Committee upheld the Award in full.  The Award has an independent status under U.S. federal law and the ICSID Convention, which the Dutch Action will not resolve and which must be adjudicated by this Court.

As for the opportunistic suggestion that the current motion cannot be reached until the FSIA objections are litigated (and a lengthy interlocutory appeal taken), there is no case that holds that a court is without power to issue interim relief merely because one of the disputants has objected to subject matter jurisdiction.  Otherwise, every unscrupulous litigant could defeat a TRO or preliminary injunction merely by referencing a potential subject matter jurisdiction challenge.[3]

---

[3] Spain repeats its prior argument that "that jurisdictional defenses must be addressed first when there is a motion to dismiss by one party that is countered by a request for a preliminary injunction."  Opp. 17.  In essence, it contends that the requirement that this Court must consider its own jurisdiction—just as any Court must—means that the Court cannot also consider other

In any event, Spain's objection to subject matter jurisdiction remains utterly misplaced.  As NextEra has explained, there are two exceptions to the FSIA that provide for subject matter jurisdiction in this case: the "arbitration exception," 28 U.S.C. § 1605(a)(6), and the "waiver exception," 28 U.S.C. § 1605(a)(1).  The arbitration exception provides jurisdiction over actions "brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate."  28 U.S.C. § 1605(a)(6).  The waiver exception provides jurisdiction over actions "in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).[4]

Under the arbitration exception, a party need only make prima facie showing of "the existence of an arbitration agreement, an arbitration award and a treaty governing the award." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022) ("*P&ID III*").  Such a showing "creates 'a presumption' that the treaty and notice of arbitration 'constituted an agreement to arbitrate'" and shifts the burden of proof to the opposing party. *Tethyan Copper*, 590 F. Supp. 3d at 273 (citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205 (D.C. Cir. 2015)).  Every United States court called upon to address the question has held that an action to enforce an ICSID award satisfies the arbitration exception.  *See, e.g.*, *Blue Ridge Invs.*

---

issues simultaneously.  But Spain's contention goes too far.  *Labat-Anderson, Inc. v. U.S.*, which Spain cites as the foundation of its argument, concerned a situation where a party filed a motion to dismiss in response to a party's application for a preliminary injunction on the merits of the same claim.  *See* 346 F. Supp. 2d 145, 145–46 (D.D.C. 2004).  The competing claims were disposed of simultaneously.  Courts regularly decide jurisdictional contentions in conjunction with consideration of other relief.  Indeed, Spain's own motion to dismiss in these proceedings mixes both jurisdictional and merits arguments against NextEra's Petition.  With all the arguments of both parties now fully briefed, the Court can easily satisfy itself of its jurisdiction and resolve the Motion.

[4] Contrary to Spain's characterization, NextEra does not and never has argued "that this Court cannot . . . even determine if it has jurisdiction."  *See* Opp. 5.  NextEra has briefed the issue of jurisdiction extensively throughout these proceedings, and has recognized in briefing the instant Motion that jurisdiction remains a relevant question for the Court to decide.  *See, e.g.*, Mot. 12 n.5.

*L.L.C. v. Republic of Arg.*, 735 F.3d 72, 85 (2d Cir. 2013) ("[E]very court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do."); *Micula*, 404 F. Supp. 3d at 277 ("Courts consistently have held that the FSIA's arbitration exception confers subject matter jurisdiction over petitions to enforce ICSID awards.").

Spain once again attempts to duck this unbroken line of precedent by arguing that, in its view of EU law, "there is no agreement to arbitrate between Spain and Petitioners." Opp. 10–11. This, of course, is the same argument that it ran, *twice*, in the ICSID arbitration—and which was rejected both in the Award and the Annulment Committee decision. In any event, under governing U.S. law, Spain's argument that it did not agree to arbitrate is a question of "arbitrability" that goes to the merits of an arbitral award, and is not germane to the Court's determination of its jurisdiction under the FSIA. *See Tethyan Copper*, 590 F. Supp. 3d at 274 ("under *FSIA* . . . arbitrability does not affect the Court's jurisdiction" (emphasis in original)); *accord LLC SPC Stileks v. Republic of Mold.*, 985 F.3d 871, 878 (D.C. Cir. 2021); *Chevron*, 795 F.3d at 205 n.3.[5]

---

[5] NextEra has explained that in addition to the cabined jurisdictional analysis allowed under the FSIA, the ICSID Convention and implementing statute separately constrain judicial review of the substance of ICSID awards. Spain now claims that *TECO*, *Tidewater*, and *Mobil Cerro*, which support that proposition, are inapposite, arguing that "[n]one of these cases states that the Court may not determine whether a valid arbitration agreement exists in relation to the underlying dispute, and in fact stand for the provision that the court must ensure its own jurisdiction." *See* Opp. 5. Those cases do not even remotely support Spain's argument. Instead, they hold that a court's jurisdiction is essentially proven as soon as an ICSID Convention award is transmitted into the record. And they also confirm that Spain cannot delve into the merits of an ICSID award in an action to enforce such award. *See, e.g.*, *TECO Guat. Holdings, LLC v. Republic of Guat.*, No. 17-102(RDM), 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018) ("[a] member state is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'" (citation omitted)).

The FSIA's waiver exception mandates the same result.  Spain's accession to the ICSID Convention, which mandates that the enforcement of ICSID awards be permitted in each contracting state, by itself operates to waive contracting states' sovereign immunity in ICSID enforcement actions.  *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122-23 (D.C. Cir. 1999) (citing 28 U.S.C. § 1605(a)(1)); *accord Saint Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, No. 20-129 (RC), 2021 WL 6644369, at *4 (D.D.C. July 13, 2021). Spain seeks refuge in *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179 (D.D.C. 2016), positing that "the court [in *Stati*] declined to find that Kazakhstan had waived its foreign sovereign immunity defense merely by ratifying the ICSID Convention."  Opp. 11.  However, the lack of citation in *Stati* to the ratification of the ICSID Convention is a non sequitur—*Stati* involved the enforcement of an arbitral award under the New York Convention and the FAA, not under the ICSID Convention and implementing legislation.  *See Stati*, 199 F. Supp. 3d at 181.  Moreover, the court in *Stati* determined that Kazakhstan had, in fact, waived its sovereign immunity, finding that the petitioners provided "prima facie evidence of an arbitration agreement" by attaching a copy of the ECT, to which Kazakhstan was a signatory, and the notice of arbitration, as NextEra did here.  *Id.* at 188.[6]

Both exceptions are thus satisfied, and Spain's arguments to the contrary remain untenable. Convoluted pronouncements of EU law are irrelevant to the cabined jurisdictional analysis

---

[6] Spain's citation to *Creighton Ltd. v. Government of Qatar*, 181 F.3d 118 (D.C. Cir. 1999), is similarly misplaced.  Spain argues that the court in *Creighton* "held that in the context of actions to enforce arbitral awards, a purported waiver requires an affirmative indication that the foreign sovereign intended to waive its immunity with respect to the particular dispute being arbitrated." *See* Opp. 12.  However, the only "affirmative indication" the *Creighton* court required was a signature on the relevant arbitral convention, agreeing with the Second Circuit's determination that "when a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory state must have contemplated enforcement actions in other signatory states."  *Creighton*, 181 F.3d at 123.

required under the FSIA and the ICSID Convention, especially here where Spain's arguments have already been considered and rejected by both the ICSID Tribunal and the Annulment Committee. And with every passing month, the weakness of Spain's FSIA argument becomes even clearer. Just this past week, Chief Judge Howell decided *Zhongshan Fucheng Industrial Investment Co. v. Nigeria*, holding that a prima facie showing of "the existence of an arbitration agreement, an arbitration award and a treaty governing the award" satisfies the requirements of the arbitration exception, even in an action to enforce an award pursuant to the New York Convention—which, unlike ICSID awards, are subject to a higher level of judicial scrutiny. No. 22-170 (BAH), 2023 WL 417975, at *9–10 (D.D.C. Jan. 26, 2023). Spain's attempt to delay these proceedings by seeking to prioritize foreign proceedings that cannot possibly have any bearing on these issues of U.S. law directly prejudices NextEra and should not be allowed to undermine these proceedings.

2. *Spain's Actions Imperil NextEra's Rights Under U.S. Law*

As much as Spain attempts to cast itself as an aggrieved party forced to respond to an unexpected and improper application for an anti-suit injunction, it is NextEra whose straightforward right to enforcement of an ICSID award is being undermined. NextEra's very first filing in this action demonstrated that (i) an agreement to arbitrate does, in fact, exist between Spain and NextEra, and (ii) the Court possesses competent jurisdiction under the FSIA as a result. *See, e.g.*, *Tethyan Copper*, 590 F. Supp. 3d at 273. Accordingly, Spain's attempts to dispute the arbitrability of its claims are not cognizable under the FSIA, which forecloses any "independent, de novo determination" of the arbitrability of the underlying dispute. *See, e.g.*, *id.* at 275 ("Pakistan's arbitrability argument [disputing the existence of an arbitration agreement] is not cognizable under FSIA. And even if it were, D.C. Circuit precedent requires the Court to defer to the Tribunal's arbitrability determination."). U.S. law does not permit the reconsideration of an ICSID tribunal's determinations "even as to questions of jurisdiction" so long as such questions

were "fully and fairly litigated and finally decided" by the tribunal. *Id.* at 276. Here, all of Spain's jurisdictional arguments were "fully and fairly litigated and finally decided" by both the Tribunal and the Annulment Committee, foreclosing any further inquiry.

Moreover, even were the above framework not sufficient to dispose of Spain's claims (which it is), Spain waived any right that it might have had to seek a preliminary decision on its immunity claims by submitting an omnibus motion to dismiss that asserted both substantive merits defenses and jurisdictional objections. As Spain's own authority explains, "[a] foreign sovereign remains free to oppose a confirmation petition" by presenting "immunity and merits issues in a single motion." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 585 (D.C. Cir. 2020) ("*P&ID I*"). As NextEra has explained, Spain's motion to dismiss is precisely the type of motion considered by *P&ID I* as serving to waive a sovereign's ability to assert its immunity preliminary, because it raised several substantive claims, including: (i) foreign sovereign compulsion, (ii) the Act of State doctrine, (iii) full faith and credit, and (iv) the independent, de novo review of the arbitrability of the underlying dispute between the parties. *See also Hulley Enterprises Ltd. v. Russian Fed'n*, No. 14-1996 (BAH), 2022 WL 1102200, at *1 n.1 (D.D.C. Apr. 13, 2022) (finding that because Russia "already filed both its jurisdictional and non-jurisdictional, merits defense briefs concurrently," the restriction against "order[ing] the sovereign to brief the merits before resolving a colorable assertion of immunity" did not apply).

Despite this framework, Spain still asserts misguided claims that it somehow has a "right" to have arguments that are facially impermissible considered on an expedited basis and will somehow be "harmed" if it is not allowed to complete the Dutch Action before the proceedings in this Court continue—even though any decision the Dutch Action might result in would be unable to controvert the full faith and credit owed to the ICSID Award's determinations. To the contrary,

it is NextEra that has been prejudiced and harmed by Spain's use of foreign proceedings to nullify NextEra's Petition in this Court.[7]

## B.     An Anti-Suit Injunction is Necessary to Protect the Policy of the United States in the Enforcement of ICSID Awards

In the face of the Dutch Action's clear threat to this Court's jurisdiction over this case, Spain downplays the significant policy interests implicated by its tactics.  In doing so, however, it wholly mischaracterizes this case, and it overlooks the clear standard under *Laker Airways*, which explains that an anti-suit injunction is appropriate where "necessary to prevent litigants' evasion of the forum's important public policies" and that deference to a foreign proceeding is not warranted where a party seeks to "unconscionabl[y] eva[de]" the laws of the domestic forum. *Laker Airways*, 731 F.2d at 931 & n.71.

This is *precisely* what Spain is trying to do here.  As NextEra explained in its Motion, the United States' policy of maintaining the integrity and enforceability of awards issued under the ICSID Convention is reflected in 22 U.S.C. § 1650a(a), which characterizes such awards as a "right arising under a treaty of the United States" that "shall be given . . . full faith and credit." Courts have recognized that their limited role in an action to enforce the award is wholly consistent with this Congressional mandate, reflecting the expectation that ICSID member states respect and enforce ICSID awards as final.  *See, e.g., Micula*, 404 F. Supp. 3d at 275–76.  Indeed, as the ICSID Convention is not self-executing, its vitality depends on the adherence of its member states— including the United States—to these principles.[8]

---

[7] As NextEra's Motion explained, efforts to delay enforcement of arbitral awards is a recognized harm facing award creditors, especially when challenges to enforcement are made by way of purported collateral challenges such as the Dutch Action.  *See, e.g.*, *Hulley*, 2022 WL 1102200, at *5 (noting hardship to award creditors associated with delays in enforcement of the award "only increases with each passing year").

[8] Spain asserts, mischievously, that it is "dubious" that Congress contemplated enforcement of awards by Dutch companies against Spain.  Opp. 13.  By its plain language, however, 22 U.S.C.

Against this backdrop, Spain's sudden attempt to indefinitely suspend this action—through a foreign suit it waited nearly three and a half years to file—constitute a transparent effort to evade both its obligations as an ICSID member state and the requirements of U.S. law and policy.  Spain attempts to downplay the implications of its actions by repeatedly reiterating the intra-EU law issues that it would prefer to place "front and center" in this case.  *See* Opp. 14.  Just as it attempts to cloak its efforts to impede this Court from carrying out its straightforward enforcement duty under U.S. law as protecting a purported "national interest" in "allowing parties to litigate disputes involving EU law in EU courts."  *Id.*

To repeat, this case does *not* call for this Court to revisit issues of EU law already decided in the Award proceedings.  As NextEra has explained in its briefing, Spain has already unsuccessfully raised these arguments before the Tribunal, the exclusive mechanism by which it could do so, and has exhausted all of its avenues for seeking annulment of the Award under the ICSID Convention.  All that is left for this Court is to recognize and enforce that Award, *see* 22 U.S.C. § 1650a, a task that plainly does not require it to "meddle" in any purported questions of EU law, let alone consider Spain's arguments regarding the retroactive application of newly decided EU cases, *see supra* pages 2–3.  Indeed, the only EU law issues raised in this briefing were

---

§ 1650a(a) mandates that federal courts are required to respect the finality of *all* ICSID awards regardless of the nationality of the parties.  Indeed, that is the entire point of the ICSID Convention—to provide a prompt and reliable means of enforcing awards secured under its procedures by all of member states, without interference by national courts.  *See, e.g.*, *Mobil Cerro Negro*, 863 F.3d at 117 (noting that the legislative history of 22 U.S.C. § 1650a suggests that it "was intended to immunize ICSID awards from substantive assault outside the ICSID tribunal"); *TECO*, 414 F. Supp. 3d at 103 (holding that Guatemala's attempt to re-litigate merits issues decided by the ICSID tribunal was "at odds with the purpose of the treaty and the clear terms of the implementing legislation, both of which are designed to create a streamlined process for enforcing arbitral awards").  And in any event, Spain's own citations show that the U.S. courts have a track record of enforcing ICSID awards involving award creditors from numerous jurisdictions, including the Netherlands.  *See, e.g.*, *Mobil Cerro Negro*, 863 F.3d 96 (featuring a Dutch-incorporated award creditor and Venezuela as the award debtor).

voluntarily submitted by *Spain*, not NextEra, in a flawed effort to once again contest this Court's jurisdiction over the action and impermissibly question the validity of the Award.

In a further diversionary effort, Spain refers to the Svea Court of Appeal's decision in *Spain v. Novenergia II—Energy & Env't, (SCA), SICAR* (Svea Ct. App. Dec. 22, 2022), *see* Opp. 2 & Ex. A. Far from providing "support" for Spain's position, this development further undermines that position. The *Novenergia* dispute stemmed from measures taken by Spain that interfered with a solar project in Spain, but there the similarities end. The investor in that case elected to bring its claims **in a Swedish arbitration venue**, the Arbitral Institute of the Stockholm Chamber of Commerce ("SCC"), which is one of the possible arbitral venues specified in the ECT. *See* Opp. Ex. A at 8. The investor thus chose an arbitration system that is directly subject to Swedish domestic arbitral law, including possible vacatur by the Swedish courts. *See id.* As a consequence, even after the SCC arbitral panel rendered its award, the award was subject to review by the Svea Court of Appeal, which set that award aside. *See id.* at 41. The Svea Court considered itself bound by EU law (as expressed by the CJEU), meaning "that the impediment set up by the CJEU must be equated with an impediment according to Swedish law in the sense referred to in section 33, paragraph 1, item 1 of the [Swedish Arbitration Act]." *Id.* at 37.[9]

Here, by contrast, NextEra elected, pursuant to Article 26(4)(a)(i) of the ECT, to submit the dispute to arbitration under the ICSID Convention. This, in turn, removed the case entirely from the supervision of any national court, and meant that the only means of annulling an award, once rendered, was pursuant to the annulment procedure under ICSID Convention art. 52. This

---

[9] This foundational difference between arbitral regimes has been explained already at length in this action. *See* ECF No. 75-1 at 4–6; ECF No. 75-2 ¶¶ 9–20. The *Novenergia* award is also the subject of a pending award enforcement proceeding brought in this District under the New York Convention. For the reasons explained above, that petition involves a completely different enforcement treaty and thus is not relevant to the present action.

put the case on a completely different track from SCC cases like *Novenergia*; the Svea Court's decision has no relevance, much less application, to a case involving an award under an entirely separate arbitral regime.   Indeed, what Spain chronically fails to acknowledge is that the Annulment Committee heard and determined each of its EU law objections, and rejected them.

The lone case asserted by Spain in support of this supposed "national interest"—a decision by a magistrate judge from outside the D.C. Circuit in a putative antitrust class action—is completely inapposite.   *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775(JG)(VVP), 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008), *report and recommendation adopted in part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012). In dismissing European antitrust law claims against foreign defendants on grounds of *forum non conveniens* and international comity, the court in that case emphasized its hesitancy to adjudicate such claims outside of the complex and "uniquely European" framework constructed to do so, which featured specific roles for the ECJ as well as the EU national courts.   *Id.* at *25–26, 32–34. These concerns are simply not present here, where the question before this Court is only whether to recognize and enforce an ICSID award, not to opine on its underlying merits or apply foreign law.   *See, e.g., TECO*, 414 F. Supp. 3d at 101.   Indeed, the ICSID regime underlying this recognition and enforcement action contemplates no role whatsoever for national courts, in stark contrast to the context of *Air Cargo*.[10]

---

[10] Spain's reference to an Amicus Brief filed by the United States and U.S. Federal Trade Commission in connection with another antitrust litigation, Brief for the United States and the U.S. Federal Trade Commission as *Amici Curiae*, *Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005), similarly does not speak whatsoever to this action, which—among other things—plainly does not involve any unresolved questions regarding the proper scope of U.S. substantive law.

Having failed to grapple with the legal standards that govern this Motion, Spain resorts to accusations.  Spain's Opposition is replete with attempts to cast *NextEra's* conduct in initiating this action in a negative light; as a "tactical decision to forum shop and attempt enforcement of the Award in the United States falls far short of a vitally important interest."  Opp. 16.  This is absurd.  To re-state the obvious, NextEra is the holder of an ICSID award against Spain that has withstood all challenges to its validity.  It is now seeking to obtain a judgement from the courts of an ICSID member state to enforce the pecuniary obligations in the Award.  That is what the ICSID Convention and 22 U.S.C. § 1650a entitles it to do.  To act within the specific purview of the ICSID Convention and a specific act of Congress is plainly not "forum shopping."[11]  That Spain has the temerity to use this phrase, while it simultaneously searches for creative ways to enjoin these proceedings in a foreign court, reveals how little respect it has for the ICSID regime, as well as this Court's vital role in maintaining it.

## C.     Granting NextEra's Request for a Narrowly Tailored Defensive Injunction Would Not Violate Principles of International Comity

Finally, Spain argues that "[t]he principles of international comity clearly favor denying" NextEra's Motion.  Opp. 20.  The natural meaning of "comity" involves giving due respect to foreign courts.  Spain, of course, has commenced foreign proceedings aimed at depriving this Court of its own jurisdiction, which is the opposite of comity.

Moreover, Spain's comity arguments ignore the limited scope of the relief NextEra actually seeks in the present Motion.  Irrespective of its views on the merits of the Dutch Action, NextEra asks *only* for an injunction that prevents Spain from pursuing the specific requests for relief in that

---

[11] Courts have recognized even in the context of anti-suit cases involving foreign parties that the U.S. "policy in support of arbitration is exceptionally strong."  *Travelport Glob. Distrib. Sys. B.V. v. Bellview Airlines Ltd.,* No. 12 Civ. 3483 (DLC), 2012 WL 3925856, at *7 (S.D.N.Y. Sep. 10, 2012).

16

action that seek to suspend this action and strip this Court of its jurisdiction.  *See* Mot. at 23-24; ECF No. 78-5, Proposed Order Granting Preliminary Injunction.

NextEra's purely *defensive* injunction requests only that this Court preserve its ability to rule on the merits of this case, and nothing further.  This is precisely the type of limited injunction endorsed by *Laker Airways*, one which "sweep[s] . . . no broader than necessary to avoid the harm on which the injunction is predicated" and is wholly consistent with principles of comity.  *Laker Airways*, 731 F.2d at 933 n.81 (granting anti-anti-suit injunction in the face of a foreign anti-suit injunction seeking to destroy the U.S. court's jurisdiction, as opposed to preserving its own); *see also Teck Metals Ltd. v. Certain Underwriter's at Lloyd's, London*, No. CV-05-411-LRS, 2009 WL 4716037, at *4 (E.D. Wash. Dec. 8, 2009) (granting request for anti-anti-suit injunction and holding that "[c]omity will not be offended by the injunction . . . [and] is best served by allowing both courts to adjudicate the matters before them").

Against this record, Spain fails to identify any interest that is legitimately protected by "comity" considerations.  Spain argues, for example, that the Motion "infringes on Spain's choice to litigate in the parties' home forum," Opp. 15; that NextEra "seeks to prevent Spain from litigating a dispute concerning the enforcement of an EU Treaty in an EU Court where the counter-party is an EU entity," *id.* at 18; and that "[t]he Motion is even more unusual in that it seeks to enjoin a foreign sovereign from litigating under its own laws," *id.*  All of this ignores that Spain is the *award debtor*, the *losing party* under an Award that has already decided each of these matters. There is no legitimate "choice to litigate" over matters that have been decided by a properly constituted ICSID Convention tribunal and which, under article 53 of the ICSID Convention, are res judicata.  There likewise is no occasion for fresh disputes about an "EU Treaty" or litigation

under Spain's laws when each of those legal disputes have been fully adjudicated in the Award, with the full participation of both Spain and the European Commission.[12]

The fact remains that NextEra requests only a TRO and preliminary injunction that enjoins Spain's ability to suspend this action until this Court can exercise the power granted to it under the ICSID Convention to adjudicate the current Petition.  Such a limited-scope injunction does not run afoul of core principles of comity, even taking into consideration Spain's status as a foreign sovereign.  *Laker Airways* makes clear that comity does not impose upon any court or nation "an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum."  *Laker Airways*, 731 F.2d at 937.  Spain's comity assertions ignore entirely that, in a sense, the true "comity" considerations are the ones present in the ICSID Convention itself, which governs arbitrations among member states and mandates how member states should conduct themselves when an award is issued.  Where Spain seeks to subvert those procedures by way of the Dutch Action, comity does not require this Court to now "stand by" while Spain attempts to "close a courthouse door that Congress . . . has opened" through the enactment of 22 U.S.C. § 1650a.  *Id.* at 936.  And this is especially true where, as here, Spain's initiation of the Dutch Action operates entirely outside of the contemplation of the ICSID regime and attempts to

---

[12] Spain's appeal to the Dutch court's "interest in regulating their own citizens," Opp. 19, is wholly inapposite to this case, where the *only* question before this court is whether to enforce an ICSID award that has already adjudicated the merits between Spain and NextEra.  Moreover, NextEra's Petition is based on the United States' own obligations to recognize and enforce awards rendered under the ICSID Convention.  Spain cites two entirely irrelevant maritime law cases dismissing actions by foreign plaintiffs on *forum non conveniens* grounds.  *Ioannidis/Riga v. M/V Sea Concert*, 132 F. Supp. 2d 847 (D. Or. 2001); *Warn v. M/Y Maridome*, 961 F. Supp. 1357 (S.D. Cal. 1997), *aff'd*, 169 F. 3d 625 (9th Cir. 1999).  But there are no issues of foreign law before this Court; the merits of the underlying substantive dispute have already been adjudicated by the Tribunal, and Spain does little more here than re-litigate the same *forum non conveniens* arguments that this Circuit has expressly foreclosed in this context.  *See Tatneft v. Ukraine*, 21 F.4th 829, 840-41 (D.C. Cir. 2021), *cert. denied*, *Ukraine v. PAO Tatneft*, 143 S. Ct. 290 (2022).

undermine this Court's role in that regime.   *See, e.g.*, *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 127 (2d Cir. 2007).

Spain's cited authorities actually cut against it.  For example, while Spain cites the Fourth Circuit's decision in *BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition Program Administration*, 884 F.3d 463, 480 (4th Cir. 2018), affirming the denial of a permanent injunction that sought to permanently enjoin the Republic of Korea from prosecuting a suit in the courts of South Korea, Spain simply ignores the District of Maryland's far more relevant grant of a preliminary injunction restraining Korea from proceeding with the foreign suit so the district court could rule on the jurisdictional and merits issues before it, just as NextEra requests here.  *BAE Sys. Tech. Sol. & Servs., Inc. v. Rep. of Korea's Def. Acquisition Program Admin.*, 195 F. Supp. 3d 776, 796–800 (D. Md. 2016).  Indeed, here the requested injunction is even more appropriate, where NextEra seeks to do no more than preserve this Court's jurisdiction to enforce a final arbitration award in the face of Spain's explicit threat thereto.

Spain cites no case in support of its proposition that this Court must abdicate a role contemplated by international treaty and mandated by U.S. law in the face of foreign litigation expressly designed to interfere with that role.  To the contrary, comity cuts both ways—and it is the anti-suit injunction sought by Spain in the Dutch Action which ultimately fails to comport with the baseline principle that "[c]omity is best served by allowing both courts to adjudicate the matters before them."  *Teck Metals*, 2009 WL 4716037, at *4.  Spain's status as a foreign sovereign does not alter the analysis, especially since its own request for injunctions in the Dutch Action is "inherently inconsistent with the policies underlying comity," *Laker Airways*, 731 F.2d at 937, while the injunction NextEra seeks is tailored to protect this Court's jurisdiction in response.[13]

---

[13] This case is far removed from *Oetjen v. Central Leather Co.*, 246 U.S. 297 (1918), which involved a suit for property seized by a Mexican revolutionary government and was decided in the

Should this Court fail to act now, it will be open season for ICSID award debtors subject to U.S. enforcement proceedings—many of which are located in this Court, and many of which involve Spain—to perpetually enjoin and suspend those proceedings by fleeing to the courts of other nations in the manner Spain has here. Comity does not require this Court to acquiesce in such behavior, and it should not do so. NextEra's Motion should be granted.

## II.
## THE REQUESTED INJUNCTION ALSO SATISFIES THE TRADITIONAL REQUIREMENTS FOR A PRELIMINARY INJUNCTION

NextEra has already shown that the four considerations the Court reviews under the traditional standard for determining whether to issue a preliminary injunction also militate in favor of an anti-suit injunction in this case. *See* Mot. 19–22. While purporting to contest this, *see* Opp. 20–23, Spain identifies little specific basis for denying injunctive relief, instead preferring to rest on its (discredited) FSIA and comity arguments. These arguments do not meaningfully refute the imminent and irreparable harm to NextEra and to this Court's jurisdiction posed by the offensive anti-suit injunctions sought by Spain in the Netherlands.

***First***, under the applicable standards, NextEra can "demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006); *see Rich v. Butowsky*, No. 18-681 (RJL), 2020 WL 7016436, at *1 (D.D.C. Mar. 31, 2020); *Am. Horse Protection Ass'n v. Lyng*, 690 F. Supp. 40, 42–43 (D.D.C. 1988); Mot. 19–20. Spain's Opposition ignores this standard entirely, which alone is sufficient for the Court to decide this factor in NextEra's favor. *See* Opp. 20–21. Instead, Spain

---

context of the United States' intervening recognition of that government as legitimate. Here, this Court's task is only to consider whether to enforce an arbitral decision against willing parties, not to "sit in judgment" on the legitimacy of any government or its actions. *Id.* at 303.

rehashes its reliance upon EU law as somehow conferring on Spain a likelihood to prevail in the action to enforce the Award. *Id.* Of course, that is entirely irrelevant to the narrow issue presently before the court, *i.e.*, the standard for granting an anti-suit injunction. But Spain's assertion fails on its own terms as well, for the reasons already addressed. *See supra* Sections I.**Error! Reference source not found.**–I.C.

      **Second**, NextEra's Motion identifies clear irreparable harm: an explicit threat to this Court's jurisdiction to hear this Petition, and to NextEra's right to have the Award recognized and enforced (and, even more fundamentally, its right to have its claims adjudicated in a U.S. court). *See* Mot. 20–21. Spain replies that "nothing prevents" NextEra from seeking such recovery, with interest, "once the Dutch Action resolves" Spain's arguments regarding EU and treaty law— "unless, of course," that resolution happens to vitiate the Award. Opp. 21–22.

      This argument comes with particular ill grace given that Spain's explicit plea for relief in the Dutch Action is "***to suspend the proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618***," Dutch Writ at 32 (Claim A) (emphasis added), to "***prohibit [NextEra] from enforcing, or otherwise proceeding in any way to enforce (measures), including taking precautionary measures, anywhere in the world, the [Award]***," *id.* (Claim B) (emphasis added), and to "***[p]rohibit [NextEra] from seeking to enjoin Spain, anywhere in the world, from paying, or otherwise proceeding to claim, the damages awarded by the ICSID Arbitral Tribunal by [the Award]***," *id.* at 34 (Claim P) (emphasis added), among other similar claims. By its express terms, Spain's complaint seeks the total eradication of the Award—and the permanent deprivation of this Court's power to hear this case.[14]

---

[14] Ultimately, Spain itself cannot keep up this pretense. It admits that "[t]he Dutch Action seeks to prevent Petitioners from executing a judgment in this Court." Opp. 6.

***Third***, the balance of equities continues to strongly favor NextEra's request for an injunction because NextEra is an award creditor seeking to enforce the Award in a legitimate manner and a legitimate venue, whereas Spain, the award debtor, not only is an ICSID Convention member state, but voluntarily agreed to ICSID jurisdiction when it signed the treaty that gave rise to the Award. *See* Mot. 21–22; *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-cv-1296 (PKC), 2019 WL 1559173, at *5 (S.D.N.Y. Apr. 9, 2019) (observing that such consent produces "awards that are recognizable and enforceable"). Against this, Spain speculates that the Dutch court might permit this Court to go forward with enforcing the Award. *See* Opp. 22. This argument comes with ill grace since Spain is arguing for the exact opposite outcome in the Dutch courts.

Spain further speculates that recognition and enforcement in this District might "upset[] the United States' international relations with not just Spain, but the entire EU." *Id.* at 22–23. To repeat, the action before this Court does not remotely invite the Court to engage "in creating EU law," Opp. 23; these issues, to the extent they were ever relevant to the dispute, were fully adjudicated in the Award—and NextEra seeks only for the Court to enforce the Award, under the clear command of *U.S. law* as established by federal statute. *See* 22 U.S.C. § 1650a(a). Moreover, to the extent EU law issues have arisen in the current Petition, they have been *inserted by Spain*.[15]

Most importantly, there is no genuine "comity" concern, because all NextEra seeks is to enjoin Spain only from pursuing foreign claims "requiring NextEra to suspend, hold in abeyance, or withdraw any proceedings before this Court, or that otherwise interfere[] with, obstruct[], or delay[] resolution of NextEra's Petition to Confirm the Award." Mot. 24. Comity does not prevent

---

[15] Besides being ephemeral, the risk to "international relations" is a self-made problem. If Spain commences litigation in violation of the ICSID Convention in a deliberate effort to frustrate a U.S. court's legitimate exercise of power, it does not lie in Spain's mouth to claim that opposition to this tactic might "upset" relations.

the Court from enjoining "pre- or postjudgment conduct by litigants which frustrates the significant policies of the domestic forum." *Laker Airways*, 731 F.2d at 915; *see supra* Section I.C.

**Fourth**, Spain offers nothing to refute NextEra's showing that an anti-suit injunction would serve the public interest in enforcing international arbitration law and upholding the duty Congress assigned to the federal courts to recognize and enforce awards of ICSID tribunals. *See* Mot. 22.

NextEra's Motion is therefore supported by all four of the traditional factors the Court considers in issuing a preliminary injunction.

## CONCLUSION

As requested in its Motion, NextEra respectfully requests that the Court grant a preliminary injunction (1) enjoining Spain from (a) seeking an interlocutory decree or any other relief in the Dutch Action or in other Dutch proceedings requiring NextEra to suspend, hold in abeyance, or withdraw any proceedings before this Court, or that otherwise interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award, and (b) pursuing any other foreign litigation that interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award; and (2) directing Spain to withdraw its requests for relief in the Dutch Action requiring NextEra to suspend, hold in abeyance or withdraw proceedings before this Court, including without limitation, at pages 31–33, Claims (A) through (D) and (L) through (P).

Dated: February 1, 2023      Respectfully submitted,
Washington, D.C.

/s/ Bradley A. Klein_____
Bradley A. Klein
D.C. Bar Number 973778
John A.J. Barkmeyer
D.C. Bar Number 1014956
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111

(202) 371-7000
bradley.klein@skadden.com
john.barkmeyer@skadden.com

Timothy G. Nelson (appearing *pro hac vice*)
New York Bar Number 3060175
Amanda Raymond Kalantirsky (appearing *pro hac vice*)
New York Bar Number 4812418
Cesar Riviere (appearing *pro hac vice*)
New York Bar Number 5746326
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
(212) 735-2000 (fax)
timothy.g.nelson@skadden.com
amanda.raymond@skadden.com
cesar.riviere@skadden.com

David Herlihy (appearing *pro hac vice*)
New York Bar Number 4167920
ALLEN & OVERY LLP
One Bishops Square
London
E1 6AD
ENGLAND
+44 20 3088 2837
david.herlihy@allenovery.com

*Attorneys for NextEra Energy Global Holdings B.V. and
NextEra Energy Spain Holdings B.V.*