**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**NEXTERA ENERGY GLOBAL**
**HOLDINGS B.V.** and **NEXTERA**
**ENERGY SPAIN HOLDINGS B.V.**,

        Petitioners,

        v.

**KINGDOM OF SPAIN**,

        Respondent.

Civil Action No. 19-cv-01618 (TSC)

---

## <u>MEMORANDUM OPINION</u>

        Dutch-incorporated companies NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (collectively, "NextEra") have petitioned to confirm an international arbitral award they received against the Kingdom of Spain (the "Award").  Petition to Confirm International Arbitral Award Pursuant to the 1965 ICSID Convention, ECF No. 1 ("Petition").  Spain moved to dismiss the Petition, ECF No. 62 ("Spain MTD"), and NextEra cross-moved for summary judgment, ECF No. 68 ("Cross-MSJ"), as well as leave to file a surreply, ECF No. 75.  In response, Spain moved to strike NextEra's cross-motion as premature, ECF No. 71.  While those motions were pending, on January 12, 2023, NextEra moved for a preliminary injunction and temporary restraining order enjoining Spain from pursuing litigation in the Netherlands that would prevent NextEra from seeking to confirm the Award.  ECF No. 78 ("PI/TRO Motion").

        For the reasons that follow, the court will DENY Spain's Motion to Dismiss and GRANT in part NextEra's Motion for Preliminary Injunction and Temporary Restraining Order.  The court will also DENY Spain's Motion to Strike and DENY NextEra leave to file a surreply.

# I.     BACKGROUND

## A.  Laws and Treaties

This case concerns both international treaties and domestic laws and raises complex issues about how they interact for purposes of sovereign immunity.

Along with many other nations, the United States, the Netherlands, and Spain are all parties to the 1965 Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention").  The ICSID Convention establishes an arbitration regime for resolving disputes related to international investments between the treaty's members, or "Contracting States."  The Convention's Article 54(1) provides: "Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  Congress has confirmed that commitment by statute:  "The pecuniary obligations imposed by [an ICSID Convention] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a.

Spain and the Netherlands are also contracting parties to the Energy Charter Treaty (ECT), a multinational agreement designed to create "a legal framework in order to promote long-term cooperation in the energy field" through "complementarities and mutual benefits."  ECT art. 2.  For example, the ECT entitles investors from one contracting party to receive "fair and equitable treatment" from the other contracting parties.  *Id.* art. 10(1).  Should a dispute arise, the ECT provides that each contracting party "gives its unconditional consent to the submission of [that] dispute to international arbitration"—and if a consenting investor seeks arbitration, the arbitration can be carried out under the ICSID Convention.  *Id.* art. 26(3)-(5).

Finally, the Foreign Sovereign Immunities Act (FSIA) provides that foreign states are immune from the jurisdiction of U.S. courts unless they fall within certain exceptions.  Under the "waiver" exception, for example, U.S. courts have jurisdiction "in any case . . . in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  And under the "arbitration" exception, U.S. courts have jurisdiction in any case "in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."  *Id.* § 1605(a)(6).

**B.  Facts and Procedural History**

Both NextEra petitioners are private limited liability companies incorporated under the laws of the Netherlands.  Petition ¶ 4.  After Spain enacted legislation to encourage investment in solar power projects in its territory in 2007, "NextEra invested in the construction, development and operation of two Spanish [solar power] projects at a total cost of approximately 750 million euros."  *Id.* ¶ 13.  But NextEra alleges that between 2012 and 2014, Spain "fundamentally and radically changed the investment regime NextEra relied on when making its investment," causing NextEra "significant harm as a result."  *Id.* ¶ 14 (quotation and citations omitted).  Because the Netherlands and Spain are both contracting parties to the ECT, in 2014 NextEra sought to redress its grievances by requesting arbitration under the ICSID Convention.  *Id.* ¶ 18.

In 2015, a three-member ICSID arbitral tribunal convened to address NextEra's request, and held a hearing on all issues during December of 2016.  *Id.* ¶ 19.  In March 2019, the ICSID tribunal issued a decision in favor of NextEra.  *Id.* at 20; *see* Award, ICSID Case No. ARB/14/11, Annex A: Decision on Jurisdiction, Liability and Quantum Principles, ECF No. 1-4 ("Liability Decision").  Two months later, the tribunal issued a "Final Award requiring Spain to

pay NextEra EUR 290.6 million as damages, plus pre-judgment interest at a rate of 0.234%, compounded monthly, from June 30, 2016." *Id.* ¶ 21; *see* Award, ICSID Case No. ARB/14/11, ECF No. 1-4.

NextEra petitioned this court to confirm the ICSID's Award against Spain. Petition, ECF No. 1. But in September 2020, the court stayed the case while Spain applied for an annulment of the Award with an ICSID Annulment Committee. ECF No. 39. The court lifted that stay in April 2022 upon receiving notice that the Annulment Committee had dismissed Spain's application. April 29, 2022 Minute Order. Shortly thereafter, Spain moved to dismiss NextEra's petitions, asserting lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. ECF No. 62. NextEra opposed Spain's motion and cross-moved for summary judgment. ECF No. 68.

While those motions were pending, on December 22, 2022, Spain initiated a legal action in Amsterdam (the "Dutch Action"), seeking an order requiring NextEra to "take all actions necessary to withdraw the proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618 . . . under penalty of a daily payment of EUR 30,000 per day for each day or part of a day that Defendants fail to effect such suspension." See PI/TRO Motion, Decl. of Bradley A. Klein, Exhibit 1, at 32-33, ECF No. 78-3 ("Dutch Writ"). Spain also requests a separate civil penalty and an injunction preventing NextEra from seeking to confirm the Award or otherwise pursue payment anywhere in the world. *Id.* at 33.

In response, NextEra now seeks injunctive relief of its own, asking this court to issue a preliminary injunction and temporary restraining order preventing Spain from pursuing the Dutch Action insofar as it would affect NextEra's suit here. Specifically, NextEra seeks an

injunction stopping Spain from seeking any relief in the Dutch Action—or anywhere else—that would halt or obstruct this case, and requiring Spain to withdraw its requests for such relief in the Dutch Action—Claims (A) through (D) and (L) through (P) of the Dutch Writ. *See* Proposed Order Granting Preliminary Injunction at 2-3, ECF No. 78-5.

Because Spain committed to not seek any relief in the Dutch Action until at least March 1, 2023, *see* Joint Status Report, ECF No. 80, the court did not deem it necessary to issue a temporary restraining order before deciding whether to issue a preliminary injunction.

## II.   LEGAL STANDARD

### A.  **Motion to Dismiss**

"Before evaluating the availability of preliminary relief, the Court must first determine that it may properly exercise jurisdiction over the action." *Rosenkrantz v. Inter-Am. Dev. Bank*, No. CV 20-3670 (BAH), 2021 WL 1254367, at *7 (D.D.C. Apr. 5, 2021) (quotation omitted), *aff'd*, 35 F.4th 854 (D.C. Cir. 2022); *see also Aamer v. Obama*, 742 F.3d 1023, 1028, 1038 (D.C. Cir. 2014) ("We begin, as we must, with the question of subject-matter jurisdiction," then "turn to the question of whether petitioners have established their entitlement to injunctive relief."). A defendant's "Motion to Dismiss under Rule 12(b)(1) therefore must be decided before plaintiffs' Motion for Preliminary Injunction may be considered." *Rosenkrantz*, 2021 WL 1254367, at *7.

Here, Spain moves for dismissal under Rule 12(b)(1) on the grounds that it is immune from jurisdiction under the FSIA, which provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (quotation omitted). "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id.* at 355.

When a defendant challenges the factual basis for jurisdiction under an FSIA exception, the D.C. Circuit applies a burden-shifting analysis. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008). The plaintiff "bears the initial burden of supporting its claim that the FSIA exception applies." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015) (citing *Chabad*, 528 F.3d at 940). "[T]his is only a burden of production"—producing evidence of the required jurisdictional facts. *Id.* (same). If Plaintiff meets its burden, then the "burden of persuasion rests with the foreign sovereign claiming immunity, which must establish the absence of the factual basis by a preponderance of the evidence." *Id.* (same).

**B. <u>Motion for Preliminary Injunction</u>**

A preliminary injunction is an "extraordinary and drastic" remedy that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A movant must demonstrate (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent injunctive relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Couns, Inc.*, 555 U.S. 7, 20 (2008). Because "a preliminary injunction is an extraordinary and drastic remedy," the court should not grant one "unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted) (emphasis in original).

Courts in this Circuit have typically applied a "sliding-scale" approach in analyzing these four factors; a particularly strong showing in one factor could outweigh weakness in another. *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). It is unclear if this approach has survived the Supreme Court's decision in *Winter*, however. *See, e.g.*, *Banks v. Booth*, 459 F. Supp. 3d 143, 149-50 (D.D.C. 2020) (citing *Sherley*, 644 F.3d at 393). Nonetheless, the movant still bears a burden to show that "all four factors, taken together, weigh in favor of the

injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)).

### III.    JURISDICTION

#### A.  FSIA Exceptions

NextEra asserts that the court has jurisdiction over its petition under both the FSIA arbitration and waiver exceptions.  Spain contends that neither applies.  Because the court concludes that it has jurisdiction under the arbitration exception, it does not reach whether the waiver exception applies.

The D.C. Circuit has found that "jurisdiction under the arbitration exception requires more than a claim invoking an arbitration award." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021).  "Rather," and tracking the text of the exception, the court has held that "the existence of an arbitration agreement, an arbitration award and a treaty governing the award are all jurisdictional facts that must be established." *Id.*; *see also Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022).  Spain does not contest the latter two facts. *See* Spain MTD at 6-8 (discussing the Award and denial of its application for annulment); *id.* at 40 (acknowledging that "Congress implemented the ICSID Convention by enacting 22 U.S.C. § 1605a").  Instead, Spain's central argument is that "as a matter of European Union ("EU") Law . . . [,] no such agreement to arbitrate exists." *Id.* at 1. NextEra concedes that an existing agreement is essential for jurisdiction under the arbitration exception.  Cross-MSJ at 18.[1]

---

[1] Spain's challenge to the arbitration agreement's existence has implications for the FSIA's waiver exception as well.  The D.C. Circuit has "found an implicit waiver of sovereign immunity in only three situations," *Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan*, 406 F. Supp. 3d 1, 10 (D.D.C. 2019) (quoting *Gutch v. Fed. Republic of Germany*, 255 F. App'x 524, 525 (D.C. Cir. 2007)), only one of which is potentially relevant here: where

As a result, the key issue is whether an agreement to arbitrate existed between Spain and NextEra.  Spain concedes—as it must—that the ECT exists, and that its terms facially create such an agreement:  "Article 26 of the ECT . . . provides for the resolution of disputes between investors of one contracting party, on the one hand, and another contracting party, on the other, before an ICSID tribunal."  Spain MTD at 11.  So, in a purely literal sense, there is no dispute about the existence of an agreement to arbitrate.

Whether the ECT's agreement to arbitrate existed as a legal matter is a harder question. Spain asserts that recent decisions of the Court of Justice of the European Union (CJEU)—which interprets and enforces EU law—have clarified that Spain never had the authority to agree to ICSID arbitration via the ECT.  In *Slovak Republic v. Achmea B.V*., Case No. C-284/16 (Mar. 6, 2018), ECF No. 62-47 (*Achmea*), the CJEU addressed the relationship between international arbitration agreements and the Treaty on the Functioning of the European Union, "which sets forth the EU's authority to legislate and key principles of EU law."  *Micula v. Gov't of Romania*,

_____

"a foreign state has agreed to arbitration in another country," *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (citation omitted).  But in that situation, too, the key jurisdictional fact is whether the foreign state has agreed to arbitration. NextEra disagrees, relying on *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999), which in turn cites *Seetransport Wiking Trader v. Navimpex Centrala,* 989 F.2d 572, 577 (2d Cir.1993), for the proposition that by joining the Convention, Spain "must have contemplated enforcement actions in other signatory states."  *See* Cross-MSJ at 23.  But *Creighton* only favorably cited that conclusion (and only with respect to the New York Convention) after noting that the Second Circuit first "found [the] implied waiver where [the] foreign government had agreed . . . to arbitrate."  181 F.3d at 123.  In other words, even when a state has assented to the enforcement of arbitral awards in the United States, an agreement to arbitrate is still necessary for implied waiver of immunity.  The ICSID Convention establishes an arbitration regime and commits its members to abide by arbitral awards issued under the regime, but the Convention does not constitute an agreement to arbitrate in any particular case. Under Article 25, parties must separately agree to ICSID arbitration.  Therefore, a specific arbitration agreement remains a jurisdictional prerequisite under the waiver exception.

404 F. Supp. 3d 265, 278 (D.D.C. 2019), *aff'd,* 805 F. App'x 1 (D.C. Cir. 2020).  In *Achmea,* the

CJEU held that

> Articles 267 and 344 [of the] TFEU must be interpreted as precluding a provision
> in an international agreement concluded between Member States . . . under which
> an investor from one of those Member States may, in the event of a dispute
> concerning investments in the other Member State, bring proceedings against the
> latter Member State before an arbitral tribunal whose jurisdiction that Member
> State has undertaken to accept.

*Achmea* ¶ 60.

In other words, to protect "the autonomy of EU law," *Achmea* invalidated arbitration

agreements that would "call upon [an] arbitral tribunal to interpret or apply EU law . . . not

subject to review by a court or tribunal within the EU's judicial system."  *Micula*, 404 F. Supp.

3d at 279.  In *Republic of Moldova v. Komstroy*, Case C-741/19 (Sept. 2, 2021), ECF No. 62-67,

the CJEU confirmed that its reasoning in *Achmea* applied specifically to ECT Article 26.  Based

on *Achmea* and *Komstroy*, Spain contends that "[a]s a matter of EU law, the law to which Spain

and Petitioners are both subject, no arbitration agreement exists between Spain and Petitioners

because any such agreement would violate core tenets of EU sovereignty as set out in the EU

Treaties."  Spain MTD at 4-5.

As another court in this district recognized in similar case, "[a]ssuming Spain is correct,

the dominoes begin to fall.  If there was no agreement to arbitrate, the ICSID tribunal never had

jurisdiction, its award is not enforceable, and therefore it is not entitled to full faith and credit in

this Court."  *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. CV 20-817 (JDB),

2021 WL 2665406, at *4 (D.D.C. June 29, 2021).  "Moreover, absent an agreement to arbitrate,

Spain maintains its immunity under the FSIA, leaving this Court without subject-matter

jurisdiction to rule on the merits of the complaint."  *Id.*  For its part, NextEra disputes the legal

effects of *Achmea* and *Komstroy* but argues that in any event, those effects go to the merits and

validity of the arbitration agreement rather than its existence. Cross-MSJ at 30-38. In NextEra's view, the existence of the agreement is *res judicata* after the ICSID tribunal's decision, and Spain's resort to EU law is a disguised form of collateral attack on the Award. *Id.* at 24-30.

Only one U.S. court has attempted to grapple with the implications of *Achmea* for its jurisdiction under the FSIA to confirm an ICSID arbitral award. In *Micula v. Government of Romania*, Swedish investors had "initiated arbitration proceedings against Romania before an ICSID tribunal" pursuant to a Romania-Sweden bilateral investment treaty ("BIT"), then sought to confirm that award in this district. 404 F. Supp. 3d at 270, 272-73. Romania argued that the FSIA arbitration exception did not apply "because the arbitration clause in the Sweden-Romania BIT has been declared invalid" by the *Achmea* decision, *id.* at 277—the same argument Spain advances here with respect to the ECT's Article 26.

After "carefully consider[ing] the *Achmea* decision," the court in *Micula* held that Romania "ha[d] failed to carry its burden of showing that *Achmea* forecloses this court's jurisdiction under the FSIA's arbitration exception." *Id.* at 279. Specifically, Romania had "not shown that the concern that animated *Achmea*—the un-reviewability of an arbitral tribunal's determination of EU law by an EU court—[was] present in [that] case." *Id.* The court gave three reasons for that conclusion, all of which related to the fact that "all key events to the parties' dispute occurred *before* Romania acceded to the EU." *Id.* at 280. First, "Romania's challenged actions occurred when it remained . . . subject, at least primarily, to its own domestic law." *Id.* Second, the parties agreed that the "substantive rules" of the "Sweden-Romania BIT," not EU law, "supplied the applicable law" for the claims at issue—the ICSID tribunal only considered EU law "for factual context, not as a source of controlling law." *Id.* (quotation omitted). And third, a ruling from a CJEU constituent court had expressly distinguished *Achmea*

on the grounds that the arbitral tribunal in *Micula* "was not bound to apply EU law to events occurring prior to the accession before it." *Id.* at 280.  The court found that that ruling "therefore explicitly refute[d] Romania's position that the CJEU's decision in *Achmea* nullified the arbitration agreement contained in the Sweden Romania BIT." *Id.*

A panel of the D.C. Circuit affirmed Judge Mehta's conclusion in an unpublished, per curiam opinion, noting the "question[] whether Romania's agreement to arbitrate was nullified by its ascension to the European Union." *Micula v. Gov't of Romania*, 805 F. App'x 1, 1 (D.C. Cir. 2020).  But the panel did not address that question because, "as the district court carefully explained, Romania did not join the EU until after the underlying events here, so the arbitration agreement applied." *Id.*

Even more recently, however, the D.C. Circuit has indicated that there is no need to reach an analysis of EU law and the CJEU's *Achmea* decision in this context.  In *LLC SPS Stileks v. Republic of Moldova*, 985 F.3d 871, 875 (D.C. Cir. 2021), Energoalliance, a Ukrainian energy provider, had invoked the ECT's arbitration clause to initiate a proceeding against Moldova before the United Nations Commission on International Trade Law (UNCITRAL).  After that arbitral tribunal issued an award, Energoalliance sought to confirm it in the United States. Moldova argued before the district court and D.C. Circuit that U.S. courts lacked jurisdiction under the FSIA's arbitration exception because Energoalliance was not a qualifying investor under the ECT and therefore could not have validly invoked the ECT's arbitration clause.  *Id.* at 875, 877-78.  Thus, Moldova argued, "[a]lthough the ECT may establish that Moldova agreed to arbitrate certain disputes, it does not prove that it agreed to arbitrate this *particular* dispute." *Id.* at 878.  In other words, Moldova argued—as Spain does here—that whether one party could

have validly agreed to arbitrate under the ECT implicated the agreement's very existence and was therefore a necessary jurisdictional question under the FSIA.

The D.C. Circuit panel squarely rejected that argument. It characterized Moldova's argument as contesting the arbitrability of the dispute, not the necessary jurisdictional fact of an agreement's existence. *Id.*; *see also id.* at 877 n.3 (observing "no disagreement that Moldova is a party to the ECT, which provides for the arbitration of certain disputes"). And, citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205-06 (D.C. Cir. 2015), the Court concluded that "the arbitrability of a dispute is not a jurisdictional question under the FSIA." 985 F.3d at 878. In *Chevron*, Ecuador asserted that it "had never agreed to arbitrate with Chevron" because Chevron's investments had terminated before the relevant treaty came into force. 795 F.3d at 203. But, the Court ruled, that assertion "conflate[d] the jurisdictional standard of the FSIA with the standard for review" of the award's merits based on its arbitrability or lack thereof. 795 F.3d at 205. Likewise, the *Stileks* panel declined to address Moldova's argument that Energoalliance could not have invoked the ECT's arbitration provision for purposes of resolving the issue of jurisdiction under the FSIA. 985 F.3d at 878.[2]

The lesson of *Stileks* and *Chevron* appears to be this: The assertion that a party lacked a legal basis to enter or invoke an arbitration agreement is not a challenge to the jurisdictional fact

---

[2] The *Stileks* Court did consider Moldova's arguments in deciding whether it could assert "a defense to confirmation under the New York Convention." 985 F.3d at 878. But even in that context, the Court declined to "pass[] on the merits of that defense" because the ECT bound its parties to arbitration under UNCITRAL's rules, one of which was that UNCITRAL had power to rule on its own jurisdiction. *Id.* Thus, the ECT's parties had delegated the question of arbitrability to the UNCITRAL tribunal, and therefore the "court possesse[d] no power to decide the arbitrability issue." *Id.* at 878-79 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019)). Ultimately, however, there is no need to replicate that analysis here because unlike the New York Convention—and as reiterated *infra* Section III.B.1—the ICSID Convention's Article 54(1) and 22 U.S.C. § 1650a do not provide for judicial review of an ICSID tribunal award's merits, including the question of arbitrability.

of that agreement's existence but rather a challenge to that agreement's arbitrability.  And that assertion goes to arbitrability even if it contends that the ECT was not validly applied.  As the Circuit noted in *Stileks*:  "*Whether the ECT applies to the dispute* and *whether the tribunal had jurisdiction under the ECT* are different ways of framing the same question" about the merits of an award—namely, whether a dispute was arbitrable.  *Id.* at 879.  A defendant may accordingly assert the lack of a legal basis for entering an agreement to contest an award's merits (where the law provides for judicial review of an award's merits), but not to rebut a plaintiff's evidence that an agreement to arbitrate exists.

At least one other judge in this district has applied *Stileks* in that way.  In *Tethyan Copper Co. Party Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262 (D.D.C. 2022), Tethyan, an Australian mining company, sought to confirm an ICSID arbitration award against Pakistan. Under the relevant treaty, a referral to arbitration required written consent.  Pakistan argued that it had "never provided such written consent," and therefore had "never agreed to arbitrate at ICSID."  *Id.* at 273.  In evaluating that purported "dispute[] over the existence of an arbitration agreement," *id.*, the court recognized that Tethyan had met its jurisdictional burden to produce "copies of the [underlying treaty], the notice[] of arbitration, and the tribunal's decision," *id.* (quoting *Stileks*, 985 F.3d at 877), which together "entitle[d] Tethyan to a presumption of a valid arbitration agreement," *id*.  Further, the court expressly rejected Pakistan's argument that "the Court should make its own independent determination on the existence of an agreement," construing that argument as going to arbitrability and citing *Chevron* and *Stileks* for the proposition that an arbitrability dispute "does not affect the Court's jurisdiction."  *Id.* at 273-74. Consequently, the court found, "Pakistan's arbitrability argument [was] not cognizable under

FSIA" and the arbitration exception applied to grant the court jurisdiction to confirm the arbitral award. *Id.* at 275.

The court reaches the same conclusion here. As noted above, there is no question as to the existence of the "copies of the [underlying treaty], the notice[] of arbitration, and the tribunal's decision." *Stileks*, 985 F.3d at 877. Under the *Chevron* burden-shifting framework, therefore, Spain has the burden of showing that, in fact, no arbitration agreement exists. *See* 795 F.3d at 204. Spain's only argument on that score is that it could not have entered into the ECT's arbitration provisions because EU law—as retroactively clarified by the *Achmea* and *Komstroy* decisions—does not permit EU members to assign questions of EU law to arbitration in non-EU tribunals. Therefore, the ECT did not apply to Spain and NextEra's dispute, and no agreement to arbitrate was ever formed. But the D.C. "Circuit [has] rejected that tactic." *Tethyan*, 590 F. Supp. 3d at 274. *Chevron* and *Stileks* treat the argument that a party lacked a legal basis to enter an agreement as a question of arbitrability and therefore an issue of the award's merits. *See Stileks*, 985 F.3d at 878; *Chevron*, 795 F.3d at 205 n.3. Spain thus cannot deploy that argument here as a backdoor challenge to FSIA jurisdiction.

Because Spain's argument "does not affect the Court's jurisdiction," *Tethyan*, 590 F. Supp. 3d at 274, there is no need at this stage to analyze the effects of *Achmea* and *Komstroy* on EU law and intra-EU disputes. And because Spain does not offer any other arguments or evidence rebutting the existence of an arbitration agreement, it has failed to carry its burden of persuasion that the necessary jurisdictional facts are not present here. As a result, the court finds

that it has jurisdiction over Spain under the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6),

and rejects this basis for Spain's motion to dismiss.[3]

## B.  *Forum non conveniens*

Spain also urges the court to decline to exercise jurisdiction over NextEra's petition

under the doctrine of *forum non conveniens*.

> A federal court has discretion to dismiss a case on the ground of *forum non
> conveniens* when an alternative forum has jurisdiction to hear the case, and trial in
> the chosen forum would establish oppressiveness and vexation to a defendant out
> of all proportion to plaintiff's convenience, or the chosen forum is inappropriate
> because of considerations affecting the court's own administrative and legal
> problems.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up)

(quotation omitted).

Here, Spain's argument is even more clearly foreclosed by *Stileks*.  In that decision, the

D.C. Circuit plainly stated that "*forum non conveniens* is not available in proceedings to confirm

a foreign arbitral award because only U.S. courts can attach foreign commercial assets found

within the United States."  985 F.3d at 876 n.1.  Spain's gymnastic but unavailing efforts to

circumvent that holding "do not require sustained discussion."  *Id.*  In short, Spain argues that

*Stileks*, along with *TMR Energy Ltd. v. State Prop. Fund of Ukraine,* 411 F.3d 296 (D.C. Cir.

2005), and *Tatneft v. Ukraine*, 21 F.4th 829 (D.C. Cir. 2021), do not control here because in

those cases, "the court determined that it had jurisdiction under the FSIA before addressing the

*forum non conveniens* motion."  Spain MTD at 27.  Setting aside the fact that the court has

similarly determined its FSIA jurisdiction here, Spain fails to identify any indication in those

---

[3] Because the court finds jurisdiction under the arbitration exception, it does not reach whether it
also has jurisdiction under the waiver exception.  *See Process & Indus. Devs. Ltd. v. Fed.
Republic of Nigeria*, 27 F.4th 771, 775 (D.C. Cir. 2022).

cases that they should be read so narrowly.  Indeed, the D.C. Circuit's core rationale—that alternative fora are inherently inadequate because they cannot attach U.S. assets—applies regardless of procedural posture.  The court therefore rejects Spain's request for dismissal on grounds of *forum non conveniens*, and its motion to dismiss will therefore be denied.[4]

## IV.    INJUNCTIVE RELIEF

Having found that it has jurisdiction over NextEra's petition and that dismissal is not warranted, the court turns to NextEra's request for injunctive relief.  The court is persuaded that this case presents sufficiently unusual circumstances to warrant a preliminary, anti-suit injunction against a foreign sovereign.

## A.  Anti-Suit Injunction

U.S. federal courts "have power to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions."  *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984).  "However, . . . [t]he mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction," and "[i]f the foreign court reacts with a similar injunction, no party may be able to obtain any remedy."  *Id.* at 927.  Thus, "foreign anti-suit injunctions are appropriate only when 'required to prevent an irreparable miscarriage of justice,' such as when 'necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum.'"  *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 434 (D.C. Cir. 2022) (quoting *Laker Airways*, 731 F.2d at 927).

---

[4] Because the court will deny Spain's Motion to Dismiss, it will also deny as moot NextEra's Motion for Leave to File a Surreply with respect to that Motion.

The D.C. Circuit's decision in *Laker Airways* provides direct guidance in this case.  In 1982, the liquidated British airline Laker Airways—which operated transatlantic flights between New York and London—brought an antitrust action against several domestic and foreign airlines, seeking to recoup losses caused by alleged predatory pricing and other economic interference.  731 F.2d at 917.  Shortly thereafter, the foreign airlines initiated a suit in the United Kingdom's High Court of Justice, seeking "(1) a declaration that the four foreign defendants were not engaged in any unlawful combination or conspiracy, and (2) an injunction prohibiting Laker from taking any action *in United States courts* to redress an alleged violation by the defendants *of United States antitrust laws*," including by forcing Laker Airways to withdraw its antitrust suit.  *Id.* at 918.  Ultimately, the British courts did order Laker Airways to cease prosecuting at least the British airlines, and were considering a similar order protecting the other foreign airlines as well.  *Id.* at 919-20.  Laker Airlines sought an anti-suit injunction in this district restraining the other foreign airlines from continuing their efforts to obtain injunctive relief against Laker Airways in British courts.  *Id.* at 919-21.

The D.C. Circuit concluded that, in those circumstances, an anti-suit preliminary injunction was warranted.

> Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants.  Thus, when the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings.

*Laker Airways*, 731 F.2d at 927.  "[D]uplication of parties and issues alone is not sufficient" to warrant this remedy, as "the fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res

judicata in the other." *Id.* at 927-28.  But "where the foreign proceeding is not following a parallel track but attempts to carve out exclusive jurisdiction over concurrent actions, an injunction may be necessary to avoid the possibility of losing validly invoked jurisdiction" and protect "the court's ability to render a just and final judgment." *Id.* at 930.

That is the case here.  For the reasons explained *supra* section III, this action is a "proper[] exercise" of the court's jurisdiction." *Id.*  And the express and primary purpose of Spain's suit in the Netherlands "is to *terminate* [this] action," *id.*—ordering NextEra to withdraw this suit, imposing penalties upon failure to do so, and issuing a worldwide injunction preventing NextEra from taking any action to confirm the Award, Dutch Writ at 31-33.  Like the foreign airlines in *Laker Airways*, Spain did not provide the court with "any prior notice" that it was seeking an anti-suit injunction against NextEra in the Netherlands, apparently planning to simply later advise the court of the "*fait accompli* . . . which would have virtually eliminated the court's effective jurisdiction over [NextEra's] facially valid claim." 731 F.2d at 930-31.  That leaves the court with "the stark choice of either protecting or relinquishing [its] jurisdiction" over NextEra's petition. *Id.* at 930.  The court concludes that these "most compelling circumstances" require an anti-suit injunction. *Id.* at 927.[5]

Spain offers only two direct counterarguments, but both fail for reasons the court has already explained.  First, Spain argues that because the court lacks jurisdiction, there is no jurisdiction here to protect.  Opposition to Motion for Preliminary Injunction and Temporary Restraining Order at 10-12, ECF No. 81 ("Opp. to PI/TRO Motion").  But the court has rejected

---

[5] Because the court's need to protect its own jurisdiction is sufficient to justify an anti-suit injunction here, the court need not reach the other "category" of compelling circumstances described by *Laker Airways*: "prevent[ing] the litigant's evasion of the important public policies of the forum." 731 F.2d at 927; *see* PI/TRO Motion at 16-18; Opp. to PI/TRO Motion at 13-16.

Spain's premise and found jurisdiction, so Spain's argument likewise fails.  *Supra* section III.A.

Second, Spain attempts to distinguish *Laker Airways* by noting that one of the D.C. Circuit's

concerns in that case was that the relief plaintiffs sought—"the remedies afforded by the

American antitrust laws"—were not available in foreign courts.  *Id.* at 12 (citing 731 F.2d at

930).  But this case does not present even that partial distinction; here, too, foreign courts are

inadequate alternatives because, as the court noted *supra* section III.B, "only U.S. courts can

attach foreign commercial assets found within the United States."  *Stileks,* 985 F.3d at 876 n.1;

*see also Laker Airways*, 731 F.2d at 936 (observing that arguments like Spain's are better suited

to *forum non conveniens* cases where there is an adequate alternative forum).

       Considerations of comity, while deserving substantial respect, do not outweigh the need

for an anti-suit injunction in this case.  Like the defendants in *Laker Airways*, Spain "argue[s]

strenuously" that "the crucial principles of comity that regulate and moderate the social and

economic intercourse between independent nations" preclude an injunction here.  731 F.2d at

937; *see* Opp. to PI/TRO Motion at 17-20.  And like the Circuit in *Laker Airways,* the court

"approach[es] [Spain's] claims seriously," recognizing that "when possible, the decision of

foreign tribunals should be given effect in domestic courts, since recognition fosters international

cooperation and encourages reciprocity, thereby promoting predictability and stability."  731

F.2d at 937.  "However, there are limitations to the application of comity."  *Id.*  For one,

> United States courts must control the access to their forums.  No foreign court can
> supersede the right and obligation of the United States courts to decide whether
> Congress has created a remedy for those injured by trade practices adversely
> affecting United States interests.  Our courts are not required to stand by while [a
> foreign sovereign] attempts to close a courthouse door that Congress, under its
> territorial jurisdiction, has opened.

*Id.* at 935-36.  In short, "[n]o nation is under an unremitting obligation to enforce foreign

interests which are fundamentally prejudicial to those of the domestic forum."  *Id.* at 937.

Under these principles, the relief Spain seeks in Amsterdam is not entitled to comity. "This is because the [Dutch Action] is specifically intended to interfere with and terminate" NextEra's petition before this court.  *Id.*  In *Laker Airways*, the Circuit approved of the preliminary injunction because it was "purely *defensive*—it [sought] only to preserve the district court's ability to arrive at a final judgment adjudicating Laker's claims under United States law"—and was granted in response to a foreign injunction that was "purely *offensive*—it [was] not designed to protect English jurisdiction, or allow English courts to proceed to a judgment on the defendant's potential liability."  *Id.* at 938.  The same is true here.  NextEra seeks an injunction to protect this court's jurisdiction, while Spain seeks an injunction to eliminate it.

The upshot of Spain's argument, then, is the same one made by the defendant airlines and rejected by the D.C. Circuit in *Laker Airways*—"that comity compels us to recognize a decision by a *foreign* government that *this court* shall not apply its own laws."  *Id* at 939.  But in the Dutch Action, Spain is zealously pursuing the very same kind of anti-suit injunction that it now asks this court to refrain from issuing.  Consequently, Spain's "claims of comity now asserted in United States courts come burdened with the failure of [Spain] to recognize comity."  *Id.*  The *Laker Airways* court refused to countenance that hypocrisy, and neither will this court.  In that case, the Circuit observed that "[t]here never would have been any situation in which comity or forbearance would have become an issue if some of the defendants involved in the American suit had not gone into the English courts to generate interference with the American courts."  So too here.  The court would not be considering this relief were Spain not actively seeking to frustrate the operation of U.S. law.  The comity concerns that Spain laments are of its own making.

An anti-suit injunction is strong medicine.  But here it is required—and will be tailored—

to meet the force of Spain's attempt to deprive this court of jurisdiction.  Spain remains free, for

example, to seek a declaration from Dutch courts vindicating its interpretation of EU law.  *See*

Dutch Writ at 32, Claim (I). But Spain may not seek to foreclose NextEra's opportunity to

petition this court for the relief afforded by United States law.

**B.  Preliminary Injunction**

Having determined that an anti-suit injunction may be appropriate in this case, the court

now considers whether such relief against Spain is warranted in the form of a preliminary

injunction.  *See In re Millenium Seacarriers, Inc*., 458 F.3d 92, 98 (2d Cir. 2006) ("Once the . . .

court has addressed the propriety of imposing an anti-suit injunction . . . , [the] court must then

make findings on whether it is appropriate to enter a *preliminary* injunction.").  All four relevant

factors favor granting NextEra's motion.

1.  Likelihood of success on the merits

The analysis required for confirming the Award is relatively straightforward, and

NextEra's success in confirming it is highly likely.  By statute, an ICSID Convention award like

this one

> create[s] a right arising under a treaty of the United States.  The pecuniary
> obligations imposed by such an award shall be enforced and shall be given the
> same full faith and credit as if the award were a final judgment of a court of
> general jurisdiction of one of the several States.

28 U.S.C. § 1650a(a).  Moreover, the Federal Arbitration Act—and its accompanying, "more

robust form of judicial review," *Tethyan*, 590 F. Supp. 3d at 268—"shall not apply to

enforcement of awards rendered" under the ICSID Convention, 28 U.S.C. § 1650a(a).

"[T]he Court's role in enforcing an ICSID arbitral award is therefore exceptionally

limited."  *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101

(D.D.C. 2019); *see also Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018) (noting "the perfunctory role that 22 U.S.C. § 1650a appears to envision for federal district courts").  "The Court must ensure that it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award." *Tethyan*, 590 F. Supp. 3d at 268 (citing *TECO Guatemala*, 414 F. Supp. 3d at 101; *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 112 (2d Cir. 2017)).

All those elements are present here.  For the reasons explained *infra* Section III.A, the court finds that it has jurisdiction.  And neither party raises any reason to believe that the Award in this case is not authentic, or that the court's enforcement order will not be able to successfully track the Award's terms.  That ends the court's inquiry; the Award must be enforced.

In challenging that conclusion, Spain asks the court to look beyond the scope of 22 U.S.C. § 1650a(a) in several respects.  First, reiterating its assertion that no valid arbitration agreement existed, Spain argues that NextEra's Award is not entitled to full faith and credit because the ICSID tribunal lacked jurisdiction over the underlying dispute.  Spain MTD at 41-42.  But under the ICSID Convention, "[m]ember states' courts are . . . not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award." *Mobil Cerro*, 863 F.3d at 102.  In any event, "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided" by the original court. *Durfee v. Duke*, 375 U.S. 106, 111 (1963); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); *see Tethyan*, 590 F. Supp. 3d at 276.  After hearing the same arguments Spain raises here, the ICSID tribunal

determined that it had jurisdiction over the dispute.  Liability Decision ¶¶ 272-357.
Consequently, that determination, as well as the Award itself, is due full faith and credit.

Second, Spain argues that the ICSID tribunal violated EU law's prohibition on granting
"state aid"—that is, subsidies to private actors—without authorization from the European
Commission.  *Id.* at 42-44.  Insofar as Spain argues that the ICSID tribunal exceeded its own
jurisdiction, that argument is foreclosed for the reasons explained in the previous paragraph.
And to the extent that Spain argues that the Award itself violates EU law, that contention "goes
to the merits of the ICSID panel's determination" and must be taken up with the ICSID tribunal
itself.  *Micula*, 404 F. Supp. 3d at 285.  The ICSID Convention's Article 53 provides that an
"award shall be binding on the parties and shall not be subject to any appeal or to any other
remedy except those provided for in this Convention."  Nothing in § 1650a permits the court to
consider this issue.

Third, Spain suggests that "the [A]ward was illegally procured by Petitioners' false
representations," along with other "defenses as to the merits" of the Award that it plans to unveil
in future filings.  Spain MTD at 48 n.12.  But as already noted, merits defenses do not factor into
the court's role in enforcing ICSID Convention awards.  As the court persuasively explained in
*TECO Guatemala*, under full faith and credit principles, "the relevant question is whether the
ICSID Convention would permit the Court to decline to enforce the award at issue here."  414 F.
Supp. 3d at 103.  "It would not."  *Id.*  Again, the Convention's Article 53 does not contemplate
member states' courts setting aside awards based on fraud or any other merits defenses.  *See id.*
The allegation that NextEra "engaged in fraud . . . is merely an effort to relitigate the
arbitration's underlying merits masquerading as an appeal to equity" and "is at odds with the
purpose of the treaty and the clear terms of the implementing legislation, both of which are

designed to create a streamlined process for enforcing arbitral awards." *Id.* Neither Spain's current challenges to the merits of the Award, nor any potential future merits challenges, have any bearing on the court's duty to enforce the Award. *See also infra* Section V (discussing Spain's Motion to Strike).

Finally, Spain appeals to the "foreign sovereign compulsion" and "act of state" doctrines. Spain MTD at 43-47. Neither is applicable here. The foreign sovereign compulsion doctrine is a defense that some Circuits permit antitrust defendants to assert to shield their anticompetitive acts from liability on the grounds that those acts were compelled by a foreign government. *See Construction and Application of Foreign Sovereign Compulsion Doctrine*, 86 A.L.R. 2d 1 (2014); *see, e.g.*, *In Re: Vitamin C Antitrust Litig.*, 8 F.4th 136 (2d Cir. 2021). The D.C. Circuit has not adopted the doctrine. More importantly, this is not an antitrust case, and therefore the doctrine is inapplicable; the court is unaware of any authority extending this doctrine outside of the antitrust context. Spain's allusions to comity principles, *see, e.g.*, Spain MTD at 45, do not persuade the court to do so here. *See also supra* section IV.A (discussing the role of comity in this case).

The related act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *World Wide Min., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964)). But "[a]ct of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990). As noted above, under § 1650a(a), the court only needs to decide three questions: (1) whether "it has subject-matter and personal

jurisdiction," (2) whether "the award is authentic," and (3) whether "its enforcement order tracks the award." *Tethyan*, 590 F. Supp. 3d at 268; *TECO Guatemala*, 414 F. Supp. 3d at 101; *Mobil Cerro*, 863 F.3d at 112.  Whether a foreign act was lawful is not part of this calculus.  As the D.C. Circuit recognized in *Micula*, petitioners to confirm an ICSID arbitral award "have not challenged the acts or decisions of a foreign sovereign," but instead "have merely sought to enforce a decision rendered by a forum for international arbitration to which [the foreign sovereign] has voluntarily submitted itself."  2022 WL 2281645, at *2.

Still, Spain contends that confirmation of the Award here would "effectively declare invalid *Achmea*, the Joint Declaration, and the European Commission's official position."  Spain MTD at 46.  The Supreme Court has rejected that perspective in language that readily applies here:  "Regardless of what the court's factual findings may suggest as to the legality" of those foreign acts, their validity "is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires."  *Kirkpatrick*, 493 U.S. at 406.  The act of state doctrine therefore finds no purchase here.

In sum, none of Spain's protests alter the conclusion that, pursuant to 28 U.S.C. § 1650a(a)'s unambiguous directive, the court should afford the Award full faith and credit and enter judgment enforcing it.  The court thus concludes that NextEra has a strong likelihood of succeeding on the merits of its petition.

2.  Irreparable harm

The risk of irreparable harm to NextEra is clear.  If Spain receives the relief it seeks in the Dutch action, NextEra will be permanently enjoined from enforcing the Award, both in this court and around the world.  *See* Dutch Writ at 31-33.  That is precisely the kind of irreparable harm identified by the district court, and affirmed by the D.C. Circuit, in *Laker Airways*:

> [I]f this Court should fail to issue an injunction and thus allow those defendants
> which are still before this Court to join with their alleged coconspirators before
> the Queen's Bench Division, the British court may very well (1) enjoin Laker
> from pursuing its remedies against any of the defendants in this Court, and (2)
> enter a judgment on the merits that the defendants here (plaintiffs there) are not
> liable to Laker for the acts averred in the complaints. The Court finds that, for
> these reasons, plaintiff would be irreparably injured if the Court does not issue an
> injunction.

*Laker Airways Ltd. v. Pan Am. World Airways*, 559 F. Supp. 1124, 1137-38 (D.D.C. 1983)

(footnotes omitted); *see Laker Airways*, 731 F.2d at 956.

Spain's counterarguments are unpersuasive.  First, it claims that "Petitioners . . . will not

be prevented from prosecuting this Action permanently unless, of course, the Dutch Action finds

that under EU law there was no agreement to arbitrate between the parties."  Opp. to PI/TRO

Motion at 21.  "Second, Petitioners do not face any risk collecting the ICSID award, should they

ultimately prevail."  *Id.* at 22.  In other words:  NextEra will not be irreparably harmed unless

Spain gets the very relief it is actively seeking from the Dutch court.  That is precisely why it is

necessary for this court to enjoin Spain from pursuing that relief.  It is immaterial that the Dutch

court has not yet ruled one way or another.  "[G]iven the fact that, once the [Dutch] court issues

an injunction of the type sought before it, it may very well be too late for [NextEra] ever to find

its way back to the American judicial system," anything "less than absolute certainty concerning

the [Dutch] court's intentions suffices to support a finding of irreparable injury."  *Laker Airways*,

559 F. Supp. at 1137 n.58.

3. <u>Balance of equities</u>

The balance of equities strongly favors NextEra, which faces irreparable harm, while

Spain faces only a temporary hold on its ability to pursue certain relief in the Dutch Action—

relief that would usurp this court's jurisdiction.  The injunction NextEra requests would still

permit Spain to litigate the merits of its claims in the Dutch Action.  That tailored injunction will

serve both principles of comity and equity by allowing each country's court to evaluate the legal issues presented under its respective laws.  *See Laker Airways*, 731 F.2d at 9378; *Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, No. CV-05-411-LRS, 2009 WL 4716037, at *3-4 (E.D. Wash. Dec. 8, 2009).

Spain's sole response is to label the injunction's tailoring a "minor concession" and insist, without any support, that a preliminary injunction will deal "substantial harm to Spanish and American interests."  Opp. to PI/TRO Motion at 23.  Without more, the court cannot agree.

4. Public interest

Finally, the public interest supports an injunction here, too.  As the court explained *supra* section IV.A, it is essential to the continued function of the U.S. courts that they protect their lawful jurisdiction.  Moreover, Spain does not dispute that there is a public interest in "encouraging arbitration and the enforcement of international arbitration law as an efficient means of settling disputes."  *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-CV-1296 (PKC), 2019 WL 1559173, at *4 (S.D.N.Y. Apr. 9, 2019); *see* Opp. to PI/TRO Motion at 23.  Indeed, "the text of § 1650a 'suggest[s] an expectation' on the part of Congress 'that actions to enforce ICSID awards would not be protracted,'" *Micula*, 404 F. Supp. 3d at 283 (quoting *Mobil Cerro*, 863 F.3d at 121), much less permanently halted by collateral attacks in foreign courts.

Spain's contention that "[a]fter the Dutch Action is concluded, this Court would have the benefit of ruling on NextEra's petition with the benefit of the outcome of [that case]" rings totally hollow.  Opp. to PI/TRO Motion at 23.  If Spain prevails in the Dutch Action, this court would not "have the benefit of ruling on NextEra's petition" at all, as NextEra would be forced to withdraw its suit.  The court is thus not moved by Spain's assurances, which verge on disingenuous.

## V.    REMAINING MOTIONS

Two motions remain for the court to address—NextEra's Cross-Motion for Summary Judgment, ECF No. 70, and Spain's Motion to Strike it, ECF No. 71.

The court will deny Spain's Motion to Strike and allow NextEra's Motion for Summary Judgment to remain on the docket.  Spain relies principally on *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 579 (D.C. Cir. 2020), which held that a district court may not, "in considering a petition to confirm [a New York Convention] arbitral award against a foreign sovereign . . . order the sovereign to brief the merits before resolving a colorable assertion of immunity."  Besides the fact that the court has now resolved Spain's assertion of immunity, *supra* Section III, Spain's reliance on that case is misplaced for at least two reasons.

First, as explained *supra* Section IV.B.1—and unlike the New York Convention—the ICSID Convention requires no merits analysis; authentic awards simply "shall be enforced."  22 U.S.C. § 1650a(a); *see TECO Guatemala*, 414 F. Supp. 3d at 103; *Tidewater*, 2018 WL 6605633, at *6 (Section 1650a "envision[s] no role for this Court beyond ensuring its own jurisdiction over this action.").  Thus, "[a]fter the complaint is filed and service effected, the award-creditor may file a motion for judgment on the pleadings . . . or a motion for summary judgment."  *Mobil Cerro*, 863 F.3d at 118.  An "ICSID award-debtor . . . [is not] permitted to make substantive challenges to the award."  *Id.*  Consequently, there are not and will not be any merits to brief.

Second, Spain has nonetheless chosen to assert at least some merits as well as jurisdictional defenses in its Motion to Dismiss.  "A foreign sovereign remains free to oppose a confirmation petition" by choosing "to brief immunity and merits issues in a single motion to dismiss," but by doing so it "may forgo its entitlement to a threshold determination of immunity."  *Nigeria*, 962 F.3d at 586.  Spain's Motion proffers several reasons why the Award

should not be given full faith and credit even if the ICSID "Tribunal was properly constituted pursuant to a valid arbitration agreement"—i.e., assuming this court has jurisdiction under the FSIA's arbitration exception.  Spain MTD at 42; *see also supra* Section IV.B.1 (rejecting these reasons).  For one, Spain argues that the Award would violate EU law regarding "state aid."  *Id.* at 42-44, 45.  But "[t]he contention that some portion of the Award violates EU law [on state aid] goes to the merits of the ICSID panel's determination."  *Micula*, 404 F. Supp. 3d at 285.  For another, Spain invokes the act of state doctrine as a shield from liability.  But that, too, is "a substantive rather than a jurisdictional defense . . . more appropriately raised in a motion for summary judgment than in a motion to dismiss."  *See United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 204 (D.D.C. 2014).  Having made both "jurisdictional and non-jurisdictional, merits defense[s]" in its Motion to Dismiss, Spain cannot now claim the court is "order[ing] [it] to brief the merits before resolving a colorable assertion of immunity" by allowing NextEra's Cross-Motion to remain on the docket.  *Hulley Enters. Ltd. v. Russian Fed'n*, No. CV 14-1996 (BAH), 2022 WL 1102200, at *1 n.1 (D.D.C. Apr. 13, 2022).

Nonetheless, the court will not rule on NextEra's Motion for Summary Judgment at this time.  This will give Spain a chance to appeal the court's rulings on the other motions, including the court's jurisdictional holdings.  And if the suit reaches the summary judgment stage, this will give Spain "an opportunity to supplement [its] submissions," *id.*, with the merits arguments Spain promises, including that "that the award was illegally procured by Petitioners false representations," Spain MTD at 48 n.12.

## VI.    CONCLUSION

For these reasons, the court will DENY Spain's Motion to Dismiss, ECF No. 62; DENY Spain's Motion to Strike, ECF No. 71; DENY NextEra's Motion for Leave to File, ECF No. 75;

and GRANT in part NextEra's Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 78.  Accordingly, the court will ENJOIN Spain:

(1) from seeking an interlocutory decree or any other relief in the Dutch Action or in other Dutch proceedings requiring NextEra to suspend, hold in abeyance, or withdraw any proceedings before this Court, or that otherwise interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award;

(2) from pursuing any other foreign litigation that interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award; and

(3) to withdraw its requests for relief in the Dutch Action requiring NextEra to suspend, hold in abeyance or withdraw proceedings before this Court, including without limitation, at pages 31-33 of the Dutch Writ, Claims (A) through (D) and (L) through (P).

A corresponding order will accompany this Memorandum Opinion.

Date: February 15, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge