APPEAL,STAYED,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:19–cv–01618–TSC</u>
### *Internal Use Only*

| | |
|---|---|
| NEXTERA ENERGY GLOBAL HOLDINGS B.V., et al. v. KINGDOM OF SPAIN | Date Filed: 06/03/2019 |
| Assigned to: Judge Tanya S. Chutkan | Jury Demand: None |
| Cause: 09:0202 Award under Convention on Foreign Arbitral Awards | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

**<u>Petitioner</u>**

| | | |
|---|---|---|
| **NEXTERA ENERGY GLOBAL HOLDINGS B.V.** | represented by | **Bradley A. Klein** |

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
1440 New York Ave. N.W.
Washington, DC 20005
202–371–7320
Fax: 202–661–2320
Email: bradley.klein@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Murphy**
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001–8602
510–907–0650
Email: aaron.murphy@probonolaw.com
*TERMINATED: 01/13/2022*
*PRO HAC VICE*

**Amanda R. Kalantirsky**
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
(212) 735–3465
Email: amanda.raymond@skadden.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Riviere**
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001–8602
212–735–3000

Fax: 917–777–2852
Email: cesar.riviere@skadden.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Herlihy**
ALLEN & OVERY LLP
One Bishops Square
London
United Kingdom of Great Britain and
Northern Irela
44 20 3088 2837
Email: david.herlihy@skadden.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Spaziano**
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371–7872
Email: jen.spaziano@skadden.com
*TERMINATED: 06/23/2020*

**John Anthony James Barkmeyer**
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371–7306
Email: John.Barkmeyer@skadden.com
*ATTORNEY TO BE NOTICED*

**Timothy G. Nelson**
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Manhattan West
New York, NY 10001–8602
212–735–2193
Email: timothy.g.nelson@skadden.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Petitioner**

**NEXTERA ENERGY SPAIN
HOLDINGS B.V.**

represented by **Bradley A. Klein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Murphy**
(See above for address)

2

*TERMINATED: 01/13/2022*
*PRO HAC VICE*

**Amanda R. Kalantirsky**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Riviere**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Herlihy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Spaziano**
(See above for address)
*TERMINATED: 06/23/2020*

**John Anthony James Barkmeyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy G. Nelson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**<u>Respondent</u>**

**KINGDOM OF SPAIN**                    represented by  **Brian D. Koosed**
K & L GATES LLP
1601 K Street, NW
Washington, DC 20006
(202) 778–9204
Email: brian.koosed@klgates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**DeMarco**
*ATTORNEY TO BE NOTICED*

**Matthew J. Weldon**
K & L GATES LLP
599 Lexington Avenue
New York, NY 10022
(212) 536–4042

Fax: (212) 536–3901
Email: Matthew.Weldon@klgates.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**EUROPEAN COMMISSION**            represented by   **Robert Stanton Jones**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942–5563
Fax: (202) 942–5999
Email: stanton.jones@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sally Pei**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942–5000
Fax: (202) 942–5999
Email: sally.pei@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/03/2019 | 1 | PETITION TO CONFIRM ARBITRATION AWARD *(Petition to Confirm International Arbitral Award Pursuant to the 1965 ICSID Convention)* against KINGDOM OF SPAIN ( Filing fee $ 400 receipt number 0090–6161795) filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V. and NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to the Kingdom of Spain, # 3 Declaration of T. Nelson In Support of Petition, # 4 Exhibit 1 to Declaration of T. Nelson, # 5 Exhibit 2 to Declaration of T. Nelson, # 6 Exhibit 3 to Declaration of T. Nelson, # 7 Exhibit 4 to Declaration of T. Nelson, # 8 Exhibit 5 to Declaration of T. Nelson, # 9 Text of Proposed Order)(Spaziano, Jennifer) (Attachment 1 replaced on 6/4/2019) (zjd). (Entered: 06/03/2019) |
| 06/03/2019 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by NEXTERA ENERGY GLOBAL HOLDINGS B.V. and NEXTERA ENERGY SPAIN HOLDINGS B.V. (Spaziano, Jennifer) (Entered: 06/03/2019) |
| 06/04/2019 |  | Case Assigned to Judge Tanya S. Chutkan. (zjd) (Entered: 06/04/2019) |
| 06/04/2019 | 3 | SUMMONS (1) Issued Electronically as to KINGDOM OF SPAIN. (Attachment: # 1 Notice and Consent)(zjd) (Entered: 06/04/2019) |
| 06/05/2019 | 4 | NOTICE *(Letter Regarding Request for International Service of Process by Mail)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN |

| | | |
|---|---|---|
| | | HOLDINGS B.V. (Attachments: # 1 Declaration Requesting Foreign Mailing)(Spaziano, Jennifer) (Entered: 06/05/2019) |
| 06/05/2019 | 5 | AFFIDAVIT REQUESTING FOREIGN MAILING by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (ztd); (See docket entry no. 4 to view.) (Entered: 06/06/2019) |
| 06/07/2019 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Timothy G. Nelson, :Firm– Skadden, Arps, Slate, Meagher & Flom LLP, :Address– 4 Times Square, New York, NY, 10036 Phone No. – 212–735–2193. Fax No. – 917–777–2193 Filing fee $ 100, receipt number 0090–6174315. Fee Status: Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Declaration of Timothy G. Nelson In Support of Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Spaziano, Jennifer) Modified text on 6/10/2019 (ztd). (Entered: 06/07/2019) |
| 06/07/2019 | 7 | REQUEST from Plaintiffs for the Clerk to effect service of one copy of the summons, Petition, and notice of suit, together with a translation of each into the official language of the foreign state, by FEDEX, to the head of the ministry of foreign affairs, pursuant to 28 U.S.C. 1608(a)(3). (Attachments: # 1 FedEx Waybill, # 2 FedEx Waybill) (ztd) (Entered: 06/07/2019) |
| 06/07/2019 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Amanda Raymond Kalantirsky, :Firm– Skadden, Arps, Slate, Meagher & Flom LLP, :Address– 4 Times Square, New York, New York, 10036. Phone No. – 212–735–3000. Filing fee $ 100, receipt number 0090–6174391. Fee Status: Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Declaration of Amanda Raymond Kalantirsky In Support of Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Spaziano, Jennifer) (Entered: 06/07/2019) |
| 06/07/2019 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Aaron Murphy, :Firm– Skadden, Arps, Slate, Meagher & Flom LLP, :Address– 4 Times Square, New York, NY 10036 Phone No. – 202–735–3000. Filing fee $ 100, receipt number 0090–6174485. Fee Status: Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Declaration of Aaron Murphy in Support of Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Spaziano, Jennifer) Modified text on 6/10/2019 (ztd). (Entered: 06/07/2019) |
| 06/07/2019 | 10 | CERTIFICATE OF CLERK of mailing one copy of the summons and complaint, together with a translation of each into the official language of the foreign state on 6/7/19, by FEDEX, to the agency or instrumentality of the foreign state, pursuant to 28 U.S.C. 1608(a)(3). (ztd); (See docket entry no. 7 to view.) (Entered: 06/10/2019) |
| 07/26/2019 | | MINUTE ORDER: Granting 6 8 9 Motions for Leave to Appear Pro Hac Vice. Timothy G. Nelson, Amanda Raymond Kalantirsky, and Aaron Murphy are hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs. Signed by Judge Tanya S. Chutkan on 7/26/19. (DJS) (Entered: 07/26/2019) |
| 08/01/2019 | 11 | NOTICE of Appearance by Brian D. Koosed on behalf of KINGDOM OF SPAIN (Koosed, Brian) (Entered: 08/01/2019) |
| 08/01/2019 | 12 | Consent MOTION for Extension of Time *Fix October 11, 2019 as the Date for Respondent to Respond to the Petition* by KINGDOM OF SPAIN (Attachments: # 1 |

| | | |
|---|---|---|
| | | Text of Proposed Order)(Koosed, Brian) (Entered: 08/01/2019) |
| 08/01/2019 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Michael DeMarco, :Firm– K&L Gates LLP, :Address– State Street Financial Center, One Lincoln Street, Boston, MA 02111–2950. Phone No. – (617) 951–9111. Fax No. – (617) 261–3175 Filing fee $ 100, receipt number 0090–6295380. Fee Status: Fee Paid. by KINGDOM OF SPAIN (Attachments: # 1 Declaration of Michael DeMarco in Support of the Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Koosed, Brian) (Entered: 08/01/2019) |
| 08/01/2019 | 14 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Matthew J. Weldon, :Firm– K&L Gates LLP, :Address– 599 Lexington Avenue, New York, NY 10022. Phone No. – (212) 536–4042. Fax No. – (212) 536–3901 Filing fee $ 100, receipt number 0090–6295426. Fee Status: Fee Paid. by KINGDOM OF SPAIN (Attachments: # 1 Declaration of Matthew J. Weldon in Support of the Motion for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Koosed, Brian) (Entered: 08/01/2019) |
| 08/02/2019 | | MINUTE ORDER: Respondent's Consent Motion to Fix October 11, 2019 as the Date for Respondent to Respond to the Petition 12 is GRANTED. Respondent shall respond to the Petition on or before October 11, 2019. Signed by Judge Tanya S. Chutkan on 8/2/2019. (lctsc1) (Entered: 08/02/2019) |
| 08/05/2019 | | Set/Reset Deadlines: Response due by 10/11/2019. (tb) (Entered: 08/05/2019) |
| 08/26/2019 | | MINUTE ORDER: Granting 13 14 Motions for Leave to Appear Pro Hac Vice. Michael DeMarco and Matthew J. Weldon are hereby admitted pro hac vice to appear in this matter on behalf of KINGDOM OF SPAIN. Signed by Judge Tanya S. Chutkan on 8/26/19. (DJS) (Entered: 08/26/2019) |
| 10/11/2019 | 15 | MOTION to Dismiss , MOTION to Stay re 1 Petition to Confirm Arbitration Award,,, by KINGDOM OF SPAIN (Attachments: # 1 Declaration of Matthew J. Weldon, # 2 Weldon Exhibit 1, # 3 Weldon Exhibit 2, # 4 Weldon Exhibit 3, # 5 Weldon Exhibit 4, # 6 Declaration of Prof. Dr. Steffen Hindelang, LLM, # 7 Hindelang Ex. 1, # 8 Hindelang Ex. 2, # 9 Hindelang Ex. 3, # 10 Hindelang Ex. 4, # 11 Hindelang Ex. 5, # 12 Hindelang Ex. 6, # 13 Hindelang Ex. 7, # 14 Hindelang Ex. 8, # 15 Hindelang Ex. 9, # 16 Hindelang Ex. 10, # 17 Hindelang Ex. 11, # 18 Hindelang Ex. 12, # 19 Hindelang Ex. 13, # 20 Hindelang Ex. 14, # 21 Hindelang Ex. 15, # 22 Hindelang Ex. 16, # 23 Hindelang Ex. 17, # 24 Hindelang Ex. 18, # 25 Hindelang Ex. 19, # 26 Hindelang Ex. 20, # 27 Hindelang Ex. 21, # 28 Hindelang Ex. 22, # 29 Hindelang Ex. 23, # 30 Hindelang Ex. 24, # 31 Hindelang Ex. 25, # 32 Hindelang Ex. 26, # 33 Hindelang Ex. 27, # 34 Hindelang Ex. 28, # 35 Hindelang Ex. 29, # 36 Hindelang Ex. 30, # 37 Hindelang Ex. 31, # 38 Hindelang Ex. 32, # 39 Hindelang Ex. 33, # 40 Hindelang Ex. 34, # 41 Hindelang Ex. 35, # 42 Hindelang Ex. 36, # 43 Hindelang Ex. 37, # 44 Hindelang Ex. 38, # 45 Hindelang Ex. 39, # 46 Hindelang Ex. 40, # 47 Hindelang Ex. 41, # 48 Hindelang Ex. 42, # 49 Hindelang Ex. 43, # 50 Hindelang Ex. 44, # 51 Hindelang Ex. 45, # 52 Hindelang Ex. 46, # 53 Hindelang Ex. 47, # 54 Hindelang Ex. 48, # 55 Hindelang Ex. 49, # 56 Hindelang Ex. 50, # 57 Hindelang Ex. 51, # 58 Hindelang Ex. 52, # 59 Hindelang Ex. 53, # 60 Hindelang Ex. 54, # 61 Hindelang Ex. 55, # 62 Hindelang Ex. 56, # 63 Hindelang Ex. 57, # 64 Hindelang Ex. 58, # 65 Hindelang Ex. 59, # 66 Hindelang Ex. 60, # 67 Hindelang Ex. 61, # 68 Hindelang Ex. 62, # 69 Hindelang Ex. 63, # 70 Hindelang Ex. 64, # 71 Hindelang Ex. 65, # 72 Proposed Order)(Koosed, Brian) (Entered: 10/11/2019) |

| 10/21/2019 | 16 | Consent MOTION for Extension of Time to *Oppose Respondent's Motion to Dismiss Or Stay and to Set Deadlines for Opposition and Reply* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Text of Proposed Order)(Spaziano, Jennifer) (Entered: 10/21/2019) |
|---|---|---|
| 10/22/2019 | | MINUTE ORDER: Petitioner's Consent Motion for Extension of Time to Oppose Respondent's Motion to Dismiss Or Stay and to Set Deadlines for Opposition and Reply 16 is GRANTED. Petitioner shall respond to the Respondent's Motion to Dismiss Or Stay 15 on or before December 19, 2019. Respondent shall reply on or before February 7, 2020. Signed by Judge Tanya S. Chutkan on 10/22/2019. (lctsc3) (Entered: 10/22/2019) |
| 10/22/2019 | | Set/Reset Deadlines: Petitioner's response to 15 Motion to Dismiss or Stay due by 12/19/2019; Respondent Reply due by 2/7/2020. (tg) (Entered: 10/22/2019) |
| 10/23/2019 | 17 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Luke E. Steinberger, :Firm– K&L Gates LLP, :Address– 599 Lexington Avenue. Phone No. – (212) 536–4850. Fax No. – (212) 536–3901 Filing fee $ 100, receipt number ADCDC–6474433. Fee Status: Fee Paid. by KINGDOM OF SPAIN (Attachments: # 1 Declaration of Luke E. Steinberger, # 2 Text of Proposed Order)(Koosed, Brian) (Entered: 10/23/2019) |
| 10/25/2019 | | MINUTE ORDER: Granting 17 Motion for Leave to Appear Pro Hac Vice. Luke E. Steinberger is hereby admitted pro hac vice to appear in this matter on behalf of Respondent KINGDOM OF SPAIN. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Tanya S. Chutkan on 10/25/19. (DJS) (Entered: 10/25/2019) |
| 11/12/2019 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– David Herlihy, Filing fee $ 100, receipt number ADCDC–6550328. Fee Status: Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Declaration of David Herlihy, # 2 Text of Proposed Order)(Spaziano, Jennifer) (Entered: 11/12/2019) |
| 11/13/2019 | | MINUTE ORDER: Denying without prejudice 18 Motion for Admission Pro Hac Vice for failing to fully comply with Local Civil Rule 83.2(d)(6). Affiants with offices located outside of the District of Columbia are still required to provide sufficient information for the court to determine "whether the affiant engages in the practice of law from an office located in the District of Columbia." Signed by Judge Tanya S. Chutkan on 11/13/19. (DJS) (Entered: 11/13/2019) |
| 11/13/2019 | 19 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– David Herlihy, Filing fee $ 100, receipt number ADCDC–6560774. Fee Status: Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Declaration of David Herlihy, # 2 Text of Proposed Order)(Spaziano, Jennifer) (Entered: 11/13/2019) |
| 11/14/2019 | | MINUTE ORDER: Granting 4 Motion for Leave to Appear Pro Hac Vice. David Herlihy is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiff. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Tanya S. Chutkan on 11/14/19. (DJS) (Entered: 11/14/2019) |
| 12/11/2019 | 20 | |

| | | NOTICE of Appearance by David Herlihy on behalf of NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Herlihy, David) (Entered: 12/11/2019) |
|---|---|---|
| 12/19/2019 | 21 | Memorandum in opposition to re 15 MOTION to Dismiss MOTION to Stay re 1 Petition to Confirm Arbitration Award,,, filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Spaziano, Jennifer) (Entered: 12/19/2019) |
| 12/20/2019 | 22 | AFFIDAVIT re 21 Memorandum in Opposition, *(Expert Declaration of Professor George A. Bermann In Support of Petitiners' Opposition to Respondent's Motion to Stay or Dismiss Petition to Enforce Arbitral Award)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Exhibit 1 to Bermann Declaration, # 2 Exhibit 2 to Bermann Declaration, # 3 Exhibit 3 to Bermann Declaration, # 4 Exhibit 4 to Bermann Declaration, # 5 Exhibit 5 to Bermann Declaration, # 6 Exhibit 6 to Bermann Declaration, # 7 Exhibit 7 to Bermann Declaration, # 8 Exhibit 8 to Bermann Declaration, # 9 Exhibit 9 to Bermann Declaration, # 10 Exhibit 10 to Bermann Declaration, # 11 Exhibit 11 to Bermann Declaration, # 12 Exhibit 12 to Bermann Declaration, # 13 Exhibit 13 to Bermann Declaration, # 14 Exhibit 14 to Bermann Declaration, # 15 Exhibit 15 to Bermann Declaration, # 16 Exhibit 16 to Bermann Declaration, # 17 Exhibit 17 to Bermann Declaration, # 18 Exhibit 18 to Bermann Declaration, # 19 Exhibit 19 to Bermann Declaration, # 20 Exhibit 20 to Bermann Declaration, # 21 Exhibit 21 to Bermann Declaration, # 22 Exhibit 22 to Bermann Declaration, # 23 Exhibit 23 to Bermann Declaration, # 24 Exhibit 24 to Bermann Declaration, # 25 Exhibit 25 to Bermann Declaration, # 26 Exhibit 26 to Bermann Declaration, # 27 Exhibit 27 to Bermann Declaration, # 28 Exhibit 28 to Bermann Declaration, # 29 Exhibit 29 to Bermann Declaration, # 30 Exhibit 30 to Bermann Declaration, # 31 Exhibit 31 to Bermann Declaration, # 32 Exhibit 32 to Bermann Declaration, # 33 Exhibit 33 to Bermann Declaration, # 34 Exhibit 34 to Bermann Declaration, # 35 Exhibit 35 to Bermann Declaration, # 36 Exhibit 36 to Bermann Declaration, # 37 Exhibit 37 to Bermann Declaration, # 38 Exhibit 38 to Bermann Declaration, # 39 Exhibit 39 to Bermann Declaration, # 40 Exhibit 40 to Bermann Declaration, # 41 Exhibit 41 to Bermann Declaration)(Spaziano, Jennifer) (Entered: 12/20/2019) |
| 12/20/2019 | 23 | REPLY re 1 Petition to Confirm Arbitration Award,,, *(Reply In Further Support of its Petition to Confirm An International Arbitration Award)* filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Declaration of Professor George A. Bermann, # 2 Exhibit 1 to Bermann Declaration, # 3 Exhibit 2 to Bermann Declaration, # 4 Exhibit 3 to Bermann Declaration, # 5 Exhibit 4 to Bermann Declaration, # 6 Exhibit 5 to Bermann Declaration, # 7 Exhibit 6 to Bermann Declaration, # 8 Exhibit 7 to Bermann Declaration, # 9 Exhibit 8 to Bermann Declaration, # 10 Exhibit 9 to Bermann Declaration, # 11 Exhibit 10 to Bermann Declaration, # 12 Exhibit 11 to Bermann Declaration, # 13 Exhibit 12 to Bermann Declaration, # 14 Exhibit 13 to Bermann Declaration, # 15 Exhibit 14 to Bermann Declaration, # 16 Exhibit 15 to Bermann Declaration, # 17 Exhibit 16 to Bermann Declaration, # 18 Exhibit 17 to Bermann Declaration, # 19 Exhibit 18 to Bermann Declaration, # 20 Exhibit 19 to Bermann Declaration, # 21 Exhibit 20 to Bermann Declaration, # 22 Exhibit 21 to Bermann Declaration, # 23 Exhibit 22 to Bermann Declaration, # 24 Exhibit 23 to Bermann Declaration, # 25 Exhibit 24 to Bermann Declaration, # 26 Exhibit 25 to Bermann Declaration, # 27 Exhibit 26 to Bermann Declaration, # 28 Exhibit 27 to Bermann |

| | | |
|---|---|---|
| | | Declaration, # 29 Exhibit 28 to Bermann Declaration, # 30 Exhibit 29 to Bermann Declaration, # 31 Exhibit 30 to Bermann Declaration, # 32 Exhibit 31 to Bermann Declaration, # 33 Exhibit 32 to Bermann Declaration, # 34 Exhibit 33 to Bermann Declaration, # 35 Exhibit 34 to Bermann Declaration, # 36 Exhibit 35 to Bermann Declaration, # 37 Exhibit 36 to Bermann Declaration, # 38 Exhibit 37 to Bermann Declaration, # 39 Exhibit 38 to Bermann Declaration, # 40 Exhibit 39 to Bermann Declaration, # 41 Exhibit 40 to Bermann Declaration, # 42 Exhibit 41 to Bermann Declaration)(Spaziano, Jennifer) (Entered: 12/20/2019) |
| 12/20/2019 | 24 | AFFIDAVIT re 21 Memorandum in Opposition, 23 Reply to Document,,,,,,,, *(Declaration of Timothy G. Nelson In Support of NextEra's Memorandum in Opposition to the Kingdom of Spain's Motion to Dismiss, or Stay, and Reply In Further Support of its Petition to Confirm an International Award)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Exhibit 6 to Nelson Declaration, # 2 Exhibit 7 to Nelson Declaration, # 3 Exhibit 8 to Nelson Declaration, # 4 Exhibit 9 to Nelson Declaration, # 5 Exhibit 10 to Nelson Declaration, # 6 Exhibit 11 to Nelson Declaration, # 7 Exhibit 12 to Nelson Declaration, # 8 Exhibit 13 to Nelson Declaration, # 9 Exhibit 14 to Nelson Declaration, # 10 Exhibit 15 to Nelson Declaration, # 11 Exhibit 16 to Nelson Declaration)(Nelson, Timothy) (Entered: 12/20/2019) |
| 02/07/2020 | 25 | AFFIDAVIT 26 re 15 MOTION to Dismiss MOTION to Stay re 1 Petition to Confirm Arbitration Award,,, */Reply Declaration of Professor Dr. Steffen Hindelang in Support of The Kingdom of Spain's Motion to Stay and Ultimately Dismiss Petition to Enforce Arbitral Award* filed by KINGDOM OF SPAIN. (Attachments: # 1 Hindelang Ex. 66, # 2 Hindelang Ex. 67, # 3 Hindelang Ex. 68, # 4 Hindelang Ex. 69, # 5 Hindelang Ex. 70, # 6 Hindelang Ex. 71, # 7 Hindelang Ex. 72, # 8 Hindelang Ex. 73, # 9 Hindelang Ex. 74, # 10 Hindelang Ex. 75, # 11 Hindelang Ex. 76, # 12 Hindelang Ex. 77, # 13 Hindelang Ex. 78, # 14 Hindelang Ex. 79, # 15 Hindelang Ex. 80)(Weldon, Matthew) Modified on 2/10/2020 (ztd). (Entered: 02/07/2020) |
| 02/07/2020 | 26 | REPLY to opposition to motion re 15 MOTION to Dismiss MOTION to Stay re 1 Petition to Confirm Arbitration Award,,, */ The Kingdom of Spain's Reply Memorandum of Points and Authorities in Support of its Motion to Dismiss the Petition* filed by KINGDOM OF SPAIN. (Weldon, Matthew) (Entered: 02/07/2020) |
| 03/31/2020 | 27 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Spaziano, Jennifer) (Entered: 03/31/2020) |
| 04/08/2020 | 28 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Exhibit 1)(Spaziano, Jennifer) (Entered: 04/08/2020) |
| 04/09/2020 | 29 | NOTICE of Change of Address by Jennifer L. Spaziano (Spaziano, Jennifer) (Entered: 04/09/2020) |
| 05/04/2020 | 30 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Exhibit 1)(Spaziano, Jennifer) (Entered: 05/04/2020) |
| 05/29/2020 | 31 | NOTICE of Appearance by Bradley A. Klein on behalf of NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Klein, Bradley) (Entered: 05/29/2020) |

| 05/29/2020 | 32 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Klein, Bradley) (Entered: 05/29/2020) |
|---|---|---|
| 06/19/2020 | 33 | RESPONSE re 27 NOTICE OF SUPPLEMENTAL AUTHORITY, 30 NOTICE OF SUPPLEMENTAL AUTHORITY, 32 NOTICE OF SUPPLEMENTAL AUTHORITY, 28 NOTICE OF SUPPLEMENTAL AUTHORITY / *Response to Petitioners' Four Notices of Supplemental Authority* filed by KINGDOM OF SPAIN. (Attachments: # 1 Exhibit 1 – Decision)(Weldon, Matthew) (Entered: 06/19/2020) |
| 06/23/2020 | 34 | NOTICE OF WITHDRAWAL OF APPEARANCE as to NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. Attorney Jennifer L. Spaziano terminated. (Spaziano, Jennifer) (Entered: 06/23/2020) |
| 06/26/2020 | 35 | RESPONSE re 33 Response to Document, *Petitioners' Response to New Authority Submitted By Respondent The Kingdom of Spain* filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 06/26/2020) |
| 06/30/2020 | 36 | NOTICE OF SUPPLEMENTAL AUTHORITY by KINGDOM OF SPAIN (Attachments: # 1 Exhibit A)(Weldon, Matthew) (Entered: 06/30/2020) |
| 07/06/2020 | 37 | RESPONSE re 36 NOTICE OF SUPPLEMENTAL AUTHORITY *(Petitioners' Response to New Authority Submitted By Respondent The Kingdom of Spain)* filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 07/06/2020) |
| 09/08/2020 | | MINUTE ORDER: The court has taken Respondent's Motion to Dismiss or Stay 15 under advisement. Since briefing closed, the parties have filed eight notices of supplemental authority and responses without seeking leave of court. No further argument is permitted regarding Respondent's Motion 15 absent leave of court and for good cause shown. However, the parties shall file a joint status report within three business days of any ruling or development in the parallel annulment proceedings. Separate reports will be stricken sua sponte. Signed by Judge Tanya S. Chutkan on 09/08/2020. (lcsd) (Entered: 09/08/2020) |
| 09/30/2020 | 38 | MEMORANDUM AND OPINION regarding 15 Respondent's Motion to Dismiss or Stay. Signed by Judge Tanya S. Chutkan on 9/30/2020. (lcsd) (Entered: 09/30/2020) |
| 09/30/2020 | 39 | ORDER granting in part and denying in part 15 Respondent's Motion to Dismiss or Stay. The court GRANTS Respondent's motion as to the request for a stay, and the proceedings are hereby STAYED. The court DENIES, without prejudice, Respondent's motion as to the request for dismissal. The parties shall file a joint status report within three business days of any ruling or development in the proceedings pending before the International Centre for Settlement of Investment Disputes. The parties shall also file a joint status report updating the court as to those proceedings by October 30, 2020, and every thirty days thereafter. See Order for details. Signed by Judge Tanya S. Chutkan on 9/30/2020. (lcsd) (Entered: 09/30/2020) |
| 10/30/2020 | 40 | Joint STATUS REPORT by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 10/30/2020) |
| 11/30/2020 | 41 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. |

| | | (Klein, Bradley) (Entered: 11/30/2020) |
|---|---|---|
| 12/29/2020 | 42 | Joint STATUS REPORT by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 12/29/2020) |
| 01/22/2021 | 43 | MOTION for Leave to File *(Petitioners' Request for Leave to Submit Supplemental Authorities)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 01/22/2021) |
| 01/28/2021 | 44 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 01/28/2021) |
| 02/01/2021 | | MINUTE ORDER: Petitioners' Request for Leave to Submit Supplemental Authorities 43 is hereby DENIED. Pursuant to the court's Order of September 30, 2020 39 , proceedings in this matter are currently stayed while related proceedings are pending before the International Centre for Settlement of Investment Disputes. Moreover, there is not currently any motion pending in this case to which Petitioners' supplemental authorities might be related, nor does Petitioners' motion provide any other good cause to support their filing, as was required by the court's September 8, 2020, Minute Order. Signed by Judge Tanya S. Chutkan on 02/01/2021. (lcac) (Entered: 02/01/2021) |
| 03/01/2021 | 45 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 03/01/2021) |
| 03/31/2021 | 46 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 03/31/2021) |
| 04/30/2021 | 47 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 04/30/2021) |
| 06/01/2021 | 48 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 06/01/2021) |
| 07/01/2021 | 49 | Joint STATUS REPORT by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 07/01/2021) |
| 08/02/2021 | 50 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 08/02/2021) |
| 09/01/2021 | 51 | Joint STATUS REPORT by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 09/01/2021) |
| 10/01/2021 | 52 | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 10/01/2021) |
| 10/28/2021 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: Having considered the parties' joint status report <u>52</u> , it is hereby ordered that the parties shall file another joint report by 12/1/21 and every 60 days thereafter, except that the parties shall file a joint status report and proposed order within five business days of any ruling or relevant development in the proceedings pending before the International Centre for Settlement of Investment Disputes. Signed by Judge Tanya S. Chutkan on 10/28/21. (DJS) (Entered: 10/28/2021) |
| 11/02/2021 | | Set/Reset Deadlines: Joint Status Report due by 12/1/2021. (tb) (Entered: 11/02/2021) |
| 12/01/2021 | <u>53</u> | STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 12/01/2021) |
| 01/13/2022 | <u>54</u> | NOTICE OF WITHDRAWAL OF APPEARANCE as to NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. Attorney Aaron Murphy terminated. (Murphy, Aaron) (Entered: 01/13/2022) |
| 01/14/2022 | <u>55</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Cesar Riviere, Filing fee $ 100, receipt number ADCDC–8980754. Fee Status: Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # <u>1</u> Declaration Declaration of C. Riviere, # <u>2</u> Text of Proposed Order)(Klein, Bradley) (Entered: 01/14/2022) |
| 01/17/2022 | | MINUTE ORDER: Denying without prejudice <u>55</u> Motion for Leave to Appear Pro Hac Vice. The affiant must provide sufficient information for the court to determine whether the affiant engages in practice from an office located in the District of Columbia, notwithstanding that the affiant regularly practices from an office outside the District of Columbia. See Local Civil Rule 83.2(d)(6). Signed by Judge Tanya S. Chutkan on 1/17/22. (DJS) (Entered: 01/17/2022) |
| 01/18/2022 | <u>56</u> | Amended MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Cesar Riviere, Fee Status: No Fee Paid. by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # <u>1</u> Declaration of Cesar Riviere, # <u>2</u> Text of Proposed Order)(Klein, Bradley) (Entered: 01/18/2022) |
| 01/21/2022 | | MINUTE ORDER: Granting <u>56</u> Motion for Leave to Appear Pro Hac Vice. Cesar Riviere is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). <u>Click for instructions</u>**. Signed by Judge Tanya S. Chutkan on 1/21/22. (DJS) (Entered: 01/21/2022) |
| 01/25/2022 | <u>57</u> | NOTICE of Appearance by Cesar Riviere on behalf of NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Riviere, Cesar) (Entered: 01/25/2022) |
| 01/31/2022 | <u>58</u> | Joint STATUS REPORT *(Further Joint Status Report)* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 01/31/2022) |
| 03/25/2022 | <u>59</u> | Joint STATUS REPORT *Further Joint Status Report* by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Text of Proposed Order)(Klein, Bradley) (Entered: 03/25/2022) |
| 04/27/2022 | <u>60</u> | ENTERED IN ERROR.....NOTICE *(Consent letter motion requesting that the Court enter an order relating to the renewed motion to dismiss that Respondent plans to file)* |

| | | |
|---|---|---|
| | | by KINGDOM OF SPAIN re 59 Status Report (Weldon, Matthew) Modified on 4/28/2022 (znmw). (Entered: 04/27/2022) |
| 04/28/2022 | | NOTICE OF ERROR regarding 60 Notice (Other). The following error(s) need correction: Incorrect format (Letter)– correspondence is not permitted (LCvR 5.1(a)). Please refile in accordance with Local Rules. (znmw) (Entered: 04/28/2022) |
| 04/28/2022 | 61 | Consent MOTION for an Order re 59 Status Report by KINGDOM OF SPAIN. (Attachments: # 1 Exhibit A)(Weldon, Matthew) Modified event on 4/29/2022 (znmw). (Entered: 04/28/2022) |
| 04/29/2022 | | MINUTE ORDER: Granting Consent Motion 61 for Order. The stay of this proceeding that was issued on September 30, 2020, and effective "until resolution of the current annulment proceedings before the ad hoc committee" 39 is hereby lifted. Defendant may file a renewed motion to dismiss by 5/2/22. Opposition brief due 6/1/22. Reply Brief due 6/22/22. Signed by Judge Tanya S. Chutkan on 4/29/22. (DJS) (Entered: 04/29/2022) |
| 05/02/2022 | | Set/Reset Deadlines: Dispositive Motion due by 5/2/2022. Response to Dispositive Motion due by 6/1/2022. Reply to Dispositive Motion due by 6/22/2022. (tb) (Entered: 05/02/2022) |
| 05/02/2022 | 62 | MOTION to Dismiss / *RENEWED MOTION OF THE KINGDOM OF SPAIN TO DISMISS PETITIONERS' PETITION TO ENFORCE ARBITRAL AWARD* by KINGDOM OF SPAIN. (Attachments: # 1 Declaration of Steffen Hindelang, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34, # 36 Exhibit 35, # 37 Exhibit 36, # 38 Exhibit 37, # 39 Exhibit 38, # 40 Exhibit 39, # 41 Exhibit 40, # 42 Exhibit 41, # 43 Exhibit 42, # 44 Exhibit 43, # 45 Exhibit 44, # 46 Exhibit 45, # 47 Exhibit 46, # 48 Exhibit 47, # 49 Exhibit 48, # 50 Exhibit 49, # 51 Exhibit 50, # 52 Exhibit 51, # 53 Exhibit 52, # 54 Exhibit 53, # 55 Exhibit 54, # 56 Exhibit 55, # 57 Exhibit 56, # 58 Exhibit 57, # 59 Exhibit 58, # 60 Exhibit 59, # 61 Exhibit 60, # 62 Exhibit 61, # 63 Exhibit 62, # 64 Exhibit 63, # 65 Exhibit 64, # 66 Exhibit 65, # 67 Exhibit 66, # 68 Errata 67, # 69 Exhibit 68, # 70 Exhibit 69, # 71 Exhibit 70, # 72 Exhibit 71, # 73 Exhibit 72, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Memorandum in Support, # 79 Text of Proposed Order)(Weldon, Matthew) (Entered: 05/02/2022) |
| 05/11/2022 | 63 | NOTICE of Appearance by Robert Stanton Jones on behalf of EUROPEAN COMMISSION (Jones, Robert) (Entered: 05/11/2022) |
| 05/11/2022 | 64 | NOTICE of Appearance by Sally Pei on behalf of EUROPEAN COMMISSION (Pei, Sally) (Entered: 05/11/2022) |
| 05/11/2022 | 65 | Unopposed MOTION for Leave to File *Amicus Brief* by EUROPEAN COMMISSION. (Attachments: # 1 Correspondence from counsel, # 2 Proposed Amicus Brief, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Proposed Order)(Jones, Robert) (Entered: 05/11/2022) |
| 05/25/2022 | 66 | Consent MOTION for Order by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Text of Proposed |

| | | |
|---|---|---|
| | | Order)(Klein, Bradley) (Entered: 05/25/2022) |
| 05/31/2022 | | MINUTE ORDER: GRANTING <u>65</u> *Motion for Leave to File Amicus Brief* by European Commission. Additionally, the parties' <u>66</u> *Consent Motion for an Order* is GRANTED. The parties briefing schedule is reset as follows:<br>– Petitioners shall file their consolidated brief in opposition to Respondent's Motion to Dismiss **on or before June 9, 2022**. That consolidated opposition brief shall, inclusive of comments and supporting documents, be no longer than 55 pages.<br>– Respondent shall file its reply brief in support of its Motion to Dismiss **on or before June 29, 2022**. That consolidated reply brief shall, inclusive of comments and supporting documents, be no longer than 35 pages.<br><br>Should the court determine that a hearing is necessary, it will schedule one in due course.<br><br>Signed by Judge Tanya S. Chutkan on 5/31/2022. (lcac) (Entered: 05/31/2022) |
| 05/31/2022 | 67 | AMICUS BRIEF by EUROPEAN COMMISSION. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D)(znmw) (Entered: 06/02/2022) |
| 06/02/2022 | | Set/Reset Deadlines: Response due by 6/9/2022. Reply due by 6/29/2022. (tb) (Entered: 06/02/2022) |
| 06/09/2022 | 68 | Memorandum in opposition to re <u>62</u> MOTION to Dismiss */ RENEWED MOTION OF THE KINGDOM OF SPAIN TO DISMISS PETITIONERS' PETITION TO ENFORCE ARBITRAL AWARD* filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # <u>1</u> Declaration of Professor George A. Bermann, # <u>2</u> Exhibit 1 of Bermann Declaration, # <u>3</u> Exhibit 2 of Bermann Declaration, # <u>4</u> Exhibit 3 of Bermann Declaration, # <u>5</u> Exhibit 4 of Bermann Declaration, # <u>6</u> Exhibit 5 of Bermann Declaration, # <u>7</u> Exhibit 6 of Bermann Declaration, # <u>8</u> Exhibit 7 of Bermann Declaration, # <u>9</u> Exhibit 8 of Bermann Declaration, # <u>10</u> Exhibit 9 of Bermann Declaration, # <u>11</u> Exhibit 10 of Bermann Declaration, # <u>12</u> Exhibit 11 of Bermann Declaration, # <u>13</u> Exhibit 12 of Bermann Declaration, # <u>14</u> Exhibit 13 of Bermann Declaration, # <u>15</u> Exhibit 14 of Bermann Declaration, # <u>16</u> Exhibit 15 of Bermann Declaration, # <u>17</u> Exhibit 16 of Bermann Declaration, # <u>18</u> Exhibit 17 of Bermann Declaration, # <u>19</u> Exhibit 18 of Bermann Declaration, # <u>20</u> Exhibit 19 of Bermann Declaration, # <u>21</u> Exhibit 20 of Bermann Declaration, # <u>22</u> Exhibit 21 of Bermann Declaration, # <u>23</u> Exhibit 22 of Bermann Declaration, # <u>24</u> Exhibit 23 of Bermann Declaration, # <u>25</u> Exhibit 24 of Bermann Declaration, # <u>26</u> Exhibit 25 of Bermann Declaration, # <u>27</u> Exhibit 26 of Bermann Declaration, # <u>28</u> Exhibit 27 of Bermann Declaration, # <u>29</u> Exhibit 28 of Bermann Declaration, # <u>30</u> Exhibit 29 of Bermann Declaration, # <u>31</u> Exhibit 30 of Bermann Declaration, # <u>32</u> Exhibit 31 of Bermann Declaration, # <u>33</u> Exhibit 32 of Bermann Declaration, # <u>34</u> Exhibit 33 of Bermann Declaration, # <u>35</u> Exhibit 34 of Bermann Declaration, # <u>36</u> Exhibit 35 of Bermann Declaration, # <u>37</u> Exhibit 36 of Bermann Declaration, # <u>38</u> Exhibit 37 of Bermann Declaration, # <u>39</u> Exhibit 38 of Bermann Declaration, # <u>40</u> Exhibit 39 of Bermann Declaration, # <u>41</u> Exhibit 40 of Bermann Declaration, # <u>42</u> Exhibit 41 of Bermann Declaration, # <u>43</u> Exhibit 42 of Bermann Declaration, # <u>44</u> Exhibit 43 of Bermann Declaration, # <u>45</u> Exhibit 44 of Bermann Declaration, # <u>46</u> Exhibit 45 of Bermann Declaration, # <u>47</u> Exhibit 46 of Bermann Declaration, # <u>48</u> Exhibit 47 of Bermann Declaration, # <u>49</u> Exhibit 48 of Bermann Declaration, # <u>50</u> Exhibit 49 of Bermann Declaration, # <u>51</u> Exhibit 50 of Bermann Declaration, # <u>52</u> Exhibit 51 of Bermann Declaration, # <u>53</u> Exhibit 52 of Bermann |

| | | |
|---|---|---|
| | | Declaration, # 54 Exhibit 53 of Bermann Declaration, # 55 Exhibit 54 of Bermann Declaration, # 56 Exhibit 55 of Bermann Declaration, # 57 Exhibit 56 of Bermann Declaration, # 58 Exhibit 57 of Bermann Declaration, # 59 Declaration of Cesar Riviere, # 60 Exhibit 1 of Riviere Declaration, # 61 Exhibit 2 of Riviere Declaration, # 62 Exhibit 3 of Riviere Declaration, # 63 Exhibit 4 of Riviere Declaration, # 64 Exhibit 5 of Riviere Declaration, # 65 Exhibit 6 of Riviere Declaration, # 66 Exhibit 7 of Riviere Declaration, # 67 Exhibit 8 of Riviere Declaration, # 68 Exhibit 9 of Riviere Declaration, # 69 Statement of Facts, # 70 Text of Proposed Order)(Klein, Bradley) (Attachment 24 flattened and replaced on 6/10/2022) (ztnr). (Entered: 06/09/2022) |
| 06/09/2022 | 69 | ENTERED IN ERROR.....REPLY to opposition to motion re 62 MOTION to Dismiss / *RENEWED MOTION OF THE KINGDOM OF SPAIN TO DISMISS PETITIONERS' PETITION TO ENFORCE ARBITRAL AWARD* filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Declaration of Professor George A. Bermann, # 2 Exhibit 1 of Bermann Declaration, # 3 Exhibit 2 of Bermann Declaration, # 4 Exhibit 3 of Bermann Declaration, # 5 Exhibit 4 of Bermann Declaration, # 6 Exhibit 5 of Bermann Declaration, # 7 Exhibit 6 of Bermann Declaration, # 8 Exhibit 7 of Bermann Declaration, # 9 Exhibit 8 of Bermann Declaration, # 10 Exhibit 9 of Bermann Declaration, # 11 Exhibit 10 of Bermann Declaration, # 12 Exhibit 11 of Bermann Declaration, # 13 Exhibit 12 of Bermann Declaration, # 14 Exhibit 13 of Bermann Declaration, # 15 Exhibit 14 of Bermann Declaration, # 16 Exhibit 15 of Bermann Declaration, # 17 Exhibit 16 of Bermann Declaration, # 18 Exhibit 17 of Bermann Declaration, # 19 Exhibit 18 of Bermann Declaration, # 20 Exhibit 19 of Bermann Declaration, # 21 Exhibit 20 of Bermann Declaration, # 22 Exhibit 21 of Bermann Declaration, # 23 Exhibit 22 of Bermann Declaration, # 24 Exhibit 23 of Bermann Declaration, # 25 Exhibit 24 of Bermann Declaration, # 26 Exhibit 25 of Bermann Declaration, # 27 Exhibit 26 of Bermann Declaration, # 28 Exhibit 27 of Bermann Declaration, # 29 Exhibit 28 of Bermann Declaration, # 30 Exhibit 29 of Bermann Declaration, # 31 Exhibit 30 of Bermann Declaration, # 32 Exhibit 31 of Bermann Declaration, # 33 Exhibit 32 of Bermann Declaration, # 34 Exhibit 33 of Bermann Declaration, # 35 Exhibit 34 of Bermann Declaration, # 36 Exhibit 35 of Bermann Declaration, # 37 Exhibit 36 of Bermann Declaration, # 38 Exhibit 37 of Bermann Declaration, # 39 Exhibit 38 of Bermann Declaration, # 40 Exhibit 39 of Bermann Declaration, # 41 Exhibit 40 of Bermann Declaration, # 42 Exhibit 41 of Bermann Declaration, # 43 Exhibit 42 of Bermann Declaration, # 44 Exhibit 43 of Bermann Declaration, # 45 Exhibit 44 of Bermann Declaration, # 46 Exhibit 45 of Bermann Declaration, # 47 Exhibit 46 of Bermann Declaration, # 48 Exhibit 47 of Bermann Declaration, # 49 Exhibit 48 of Bermann Declaration, # 50 Exhibit 49 of Bermann Declaration, # 51 Exhibit 50 of Bermann Declaration, # 52 Exhibit 51 of Bermann Declaration, # 53 Exhibit 52 of Bermann Declaration, # 54 Exhibit 53 of Bermann Declaration, # 55 Exhibit 54 of Bermann Declaration, # 56 Exhibit 55 of Bermann Declaration, # 57 Exhibit 56 of Bermann Declaration, # 58 Exhibit 57 of Bermann Declaration, # 59 Declaration of Cesar Riviere, # 60 Exhibit 1 of Riviere Declaration, # 61 Exhibit 2 of Riviere Declaration, # 62 Exhibit 3 of Riviere Declaration, # 63 Exhibit 4 of Riviere Declaration, # 64 Exhibit 5 of Riviere Declaration, # 65 Exhibit 6 of Riviere Declaration, # 66 Exhibit 7 of Riviere Declaration, # 67 Exhibit 8 of Riviere Declaration, # 68 Exhibit 9 of Riviere Declaration, # 69 Statement of Facts, # 70 Text of Proposed Order)(Klein, Bradley) (Attachment 24 flattened and replaced on 6/10/2022) (ztnr). Modified to enter in error on 6/14/2022; refiled correctly as Docket Entry 70 . (znmw). (Entered: 06/09/2022) |

| 06/09/2022 | 70 | Cross MOTION for Summary Judgment by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Text of Proposed Order)(Klein, Bradley) (Entered: 06/09/2022) |
|---|---|---|
| 06/17/2022 | 71 | MOTION to Strike 70 Cross MOTION for Summary Judgment *or, in the Alternative, Motion to Stay Briefing Schedule on Petitioners' Cross−Motion for Summary Judgment* by KINGDOM OF SPAIN. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Weldon, Matthew). Added MOTION to Stay on 6/22/2022 (znmw). (Entered: 06/17/2022) |
| 06/24/2022 | 72 | Memorandum in opposition to re 71 MOTION to Strike 70 Cross MOTION for Summary Judgment *or, in the Alternative, Motion to Stay Briefing Schedule on Petitioners' Cross−Motion for Summary Judgment* MOTION to Stay filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Second Declaration of Cesar Riviere, # 2 Exhibit 1 to Riviere Declaration, # 3 Exhibit 2 to Riviere Declaration)(Klein, Bradley) (Entered: 06/24/2022) |
| 06/28/2022 | 73 | REPLY to opposition to motion re 72 Memorandum in Opposition, */ Reply Memorandum of Points and Authorities in Further Support of Respondent's Motion to Strike Petitioner's Cross−Motion for Summary Judgment, or, in the Alternative, Motion to Stay Briefing Schedule on Petitioner's Cross−Motion for Summary Judgment* filed by KINGDOM OF SPAIN. (Weldon, Matthew) (Entered: 06/28/2022) |
| 06/29/2022 | 74 | REPLY to opposition to motion re 62 MOTION to Dismiss */ RENEWED MOTION OF THE KINGDOM OF SPAIN TO DISMISS PETITIONERS' PETITION TO ENFORCE ARBITRAL AWARD* filed by KINGDOM OF SPAIN. (Attachments: # 1 Reply Expert Declaration of Prof. Dr. Steffen Hindelang. LL.M. in Support of the Kingdom of Spains Motion to Dismiss Petition to Enforce Arbitral Award, # 2 Exhibit 78, # 3 Exhibit 79, # 4 Exhibit 80, # 5 Exhibit 81, # 6 Exhibit 82, # 7 Exhibit 83, # 8 Exhibit 84, # 9 Exhibit 85, # 10 Exhibit 86, # 11 Exhibit 87, # 12 Exhibit 88, # 13 Exhibit 89, # 14 Exhibit 90, # 15 Exhibit 91)(Weldon, Matthew) (Entered: 06/29/2022) |
| 07/13/2022 | 75 | MOTION for Leave to File by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Surreply to Respondent's June 29, 2022 Reply Submission, # 2 Declaration Supplemental Declaration of G. Bermann, # 3 Exhibit 58 of Bermann Declaration, # 4 Declaration of Cesar Riviere, # 5 Exhibit 1 of Riviere Declaration, # 6 Text of Proposed Order)(Klein, Bradley) (Entered: 07/13/2022) |
| 07/27/2022 | 76 | RESPONSE re 75 MOTION for Leave to File filed by KINGDOM OF SPAIN. (Attachments: # 1 Exhibit A)(Weldon, Matthew) (Entered: 07/27/2022) |
| 08/03/2022 | 77 | REPLY to opposition to motion re 75 MOTION for Leave to File filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 08/03/2022) |
| 01/12/2023 | 78 | MOTION for Preliminary Injunction , MOTION for Temporary Restraining Order by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Bradley A. Klein, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Text of Proposed Order Preliminary Injunction, # 6 Text of Proposed Order Temporary Restraining Order)(Klein, Bradley) (Entered: 01/12/2023) |

| 01/12/2023 | 79 | NOTICE of Appearance by John Anthony James Barkmeyer on behalf of NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Barkmeyer, John) (Entered: 01/12/2023) |
| --- | --- | --- |
| 01/13/2023 | | RESOLVED...NOTICE of Provisional/Government Not Certified Status re 79 NOTICE of Appearance by John Anthony James Barkmeyer on behalf of NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V. (Barkmeyer, John).<br><br>Your attorney renewal has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 1/20/2023. (zbaj) Modified on 1/17/2023 (zbaj). (Entered: 01/13/2023) |
| 01/13/2023 | | MINUTE ORDER: Upon consideration of Petitioners' 78 Motion for Preliminary Injunction and Temporary Restraining Order, it is hereby ORDERED that by January 17, 2023, the parties shall meet and confer and file a Joint Status Report with a proposed briefing schedule regarding this motion, as well as a statement of what efforts have been made to settle the dispute and whether the parties believe mediation could be helpful in resolving it. The report shall be accompanied by a proposed order. Signed by Judge Tanya S. Chutkan on 01/13/2023. (lcss) (Entered: 01/13/2023) |
| 01/17/2023 | 80 | Joint STATUS REPORT by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Attachments: # 1 Text of Proposed Order)(Klein, Bradley) (Entered: 01/17/2023) |
| 01/18/2023 | | MINUTE ORDER: Upon consideration of the parties' 80 Joint Status Report, it is hereby ORDERED that Respondent shall file its Opposition to Petitioners' 78 Motion for Preliminary Injunction and Temporary Restraining order by January 26, 2023, and Petitioners shall file their Reply by February 1, 2023. A hearing on the Motion shall be held on February 6, 2023, at 2:00 PM, by video teleconference. Signed by Judge Tanya S. Chutkan on 01/18/2023. (lcss) (Entered: 01/18/2023) |
| 01/18/2023 | | Set/Reset Deadlines: Joint Status Report due by 1/17/2023. (tb) (Entered: 01/18/2023) |
| 01/24/2023 | | Set/Reset Deadlines/Hearings: Reply due by 2/1/2023. Motion Hearing set for 2/6/2023 at 02:00 PM in Telephonic/VTC before Judge Tanya S. Chutkan. (tb) (Entered: 01/24/2023) |
| 01/26/2023 | 81 | Memorandum in opposition to re 78 Motion for Preliminary Injunction,, Motion for TRO, filed by KINGDOM OF SPAIN. (Attachments: # 1 Exhibit A)(Weldon, Matthew) (Entered: 01/26/2023) |
| 01/27/2023 | | RESOLVED...NOTICE of Provisional/Government Not Certified Status re 81 Memorandum in opposition to re 78 Motion for Preliminary Injunction,, Motion for TRO, filed by KINGDOM OF SPAIN. (Attachments: # 1 Exhibit A)(Weldon, Matthew). |

| | | Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal. |
| | | Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 2/3/2023. (zbaj) Modified on 2/9/2023 (zbaj). (Entered: 01/27/2023) |
| 02/01/2023 | 82 | REPLY to opposition to motion re 78 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 02/01/2023) |
| 02/06/2023 | | Minute Entry for Proceedings held before Judge Tanya S. Chutkan: Motion Hearing held on 2/6/2023 re: Petitioners 78 MOTION for Preliminary Injunction, MOTION for Temporary Restraining Order. The 78 Motion was Heard and Taken Under Advisement. (Court Reporter: Lisa Moreira) (jth) (Entered: 02/06/2023) |
| 02/08/2023 | 83 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Tanya S. Chutkan held on February 6, 2023; Page Numbers: 1–56. Date of Issuance:February 8, 2023. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purc hased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/1/2023. Redacted Transcript Deadline set for 3/11/2023. Release of Transcript Restriction set for 5/9/2023.(Moreira, Lisa) (Entered: 02/08/2023) |
| 02/15/2023 | 84 | MEMORANDUM AND OPINION re: Defendant's 62 Motion to Dismiss; Defendant's 71 Motion to Strike; Petitioners' 75 Motion for Leave to File a Surreply; and Petitioners' 78 Motion for Preliminary Injunction and Temporary Restraining Order. Signed by Judge Tanya S. Chutkan on 02/15/2023. (lcss) (Entered: 02/15/2023) |
| 02/15/2023 | 85 | ORDER: Defendant's 62 Motion to Dismiss is DENIED; Defendant's 71 Motion to Strike is DENIED; Petitioners' 75 Motion for Leave to File a Surreply is DENIED; and Petitioners' 78 Motion for Preliminary Injunction and Temporary Restraining Order is GRANTED in part and DENIED in part. See Order for details. Signed by Judge Tanya S. Chutkan on 02/15/2023. (lcss) (Entered: 02/15/2023) |
| 03/15/2023 | 86 | |

| | | |
|---|---|---|
| | | Joint STATUS REPORT by NEXTERA ENERGY GLOBAL HOLDINGS B.V., NEXTERA ENERGY SPAIN HOLDINGS B.V.. (Klein, Bradley) (Entered: 03/15/2023) |
| 03/16/2023 | <u>87</u> | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>84</u> Memorandum & Opinion, <u>85</u> Order on Motion to Dismiss,, Order on Motion to Strike,, Order on Motion to Stay,, Order on Motion for Leave to File,, Order on Motion for Preliminary Injunction,, Order on Motion for TRO, by KINGDOM OF SPAIN. Filing fee $ 505, receipt number ADCDC−9933585. Fee Status: Fee Paid. Parties have been notified. (Weldon, Matthew) (Entered: 03/16/2023) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEXTERA ENERGY GLOBAL HOLDINGS B.V. *and* NEXTERA ENERGY SPAIN HOLDINGS B.V., <br><br> Petitioners, <br><br> v. <br><br> KINGDOM OF SPAIN, <br><br> Respondent. | No. 19-cv-01618-TSC |

**NOTICE OF APPEAL**

Notice is hereby given this 16th day of March 2023, that Respondent the Kingdom of Spain ("Spain") hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the Memorandum Opinion [ECF No. 84] and Order [ECF No. 85], both entered on February 15, 2023, denying Spain's Motion to Dismiss [ECF No. 62] and granting in part Petitioners' Motion for Preliminary Injunction and Temporary Restraining Order [ECF No. 78].

Dated: March 16, 2023

Respectfully submitted,

By:/s/ Matthew J. Weldon
    _____

Matthew J. Weldon (NY0401)
New York Bar Number 4832408
599 Lexington Avenue
New York, New York 10022
(212) 536-4042
Matthew.Weldon@klgates.com

Brian D. Koosed
D.C. Bar Number 1034733
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9204
Brian.Koosed@klgates.com

Michael DeMarco (*pro hac vice*)
New York Bar Number 4142477
1 Lincoln St.
Boston, MA 02111
(617) 951-9111
Michael.DeMarco@klgates.com

*Counsel for Respondent Kingdom of Spain*

2

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 16, 2023, I caused a true and correct copy of the foregoing Notice of Appeal to be filed using the Court's Electronic Case Filing System ("ECF").   The document is available for review and downloading via the ECF system, and will be served by operation of the ECF system upon all counsel of record.

/s/ Matthew. J. Weldon
Matthew J. Weldon

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**NEXTERA ENERGY GLOBAL
HOLDINGS B.V.** and **NEXTERA
ENERGY SPAIN HOLDINGS B.V.**,

           Petitioners,

    v.

**KINGDOM OF SPAIN**,

           Respondent.

Civil Action No. 19-cv-01618 (TSC)

---

**<u>ORDER</u>**

For the reasons set forth in the accompanying Memorandum Opinion, ECF No. 84,

Spain's Motion to Dismiss, ECF No. 62, is DENIED; Spain's Motion to Strike, ECF No. 71, is

DENIED; NextEra's Motion for Leave to File, ECF No. 75, is DENIED; and NextEra's Motion

for Preliminary Injunction and Temporary Restraining Order, ECF No. 78, is GRANTED in part

and DENIED in part.

Accordingly, the court hereby enters a preliminary injunction that ENJOINS Spain:

(1) from seeking an interlocutory decree or any other relief in the Dutch Action or in

     other Dutch proceedings requiring NextEra to suspend, hold in abeyance, or withdraw

     any proceedings before this Court, or that otherwise interferes with, obstructs, or

     delays resolution of NextEra's Petition to Confirm the Award;

(2) from pursuing any other foreign litigation that interferes with, obstructs, or delays

     resolution of NextEra's Petition to Confirm the Award; and

Page **1** of **2**

(3) to withdraw its requests for relief in the Dutch Action requiring NextEra to suspend,

hold in abeyance or withdraw proceedings before this Court, including without

limitation, at pages 31-33 of the Dutch Writ, Claims (A) through (D) and (L) through

(P).

Date: February 15, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**NEXTERA ENERGY GLOBAL
HOLDINGS B.V.** and **NEXTERA
ENERGY SPAIN HOLDINGS B.V.**,

        Petitioners,

        v.

**KINGDOM OF SPAIN**,

        Respondent.

Civil Action No. 19-cv-01618 (TSC)

---

## <u>MEMORANDUM OPINION</u>

Dutch-incorporated companies NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. (collectively, "NextEra") have petitioned to confirm an international arbitral award they received against the Kingdom of Spain (the "Award"). Petition to Confirm International Arbitral Award Pursuant to the 1965 ICSID Convention, ECF No. 1 ("Petition"). Spain moved to dismiss the Petition, ECF No. 62 ("Spain MTD"), and NextEra cross-moved for summary judgment, ECF No. 68 ("Cross-MSJ"), as well as leave to file a surreply, ECF No. 75. In response, Spain moved to strike NextEra's cross-motion as premature, ECF No. 71. While those motions were pending, on January 12, 2023, NextEra moved for a preliminary injunction and temporary restraining order enjoining Spain from pursuing litigation in the Netherlands that would prevent NextEra from seeking to confirm the Award. ECF No. 78 ("PI/TRO Motion").

For the reasons that follow, the court will DENY Spain's Motion to Dismiss and GRANT in part NextEra's Motion for Preliminary Injunction and Temporary Restraining Order. The court will also DENY Spain's Motion to Strike and DENY NextEra leave to file a surreply.

# I.    BACKGROUND

## A.  Laws and Treaties

This case concerns both international treaties and domestic laws and raises complex issues about how they interact for purposes of sovereign immunity.

Along with many other nations, the United States, the Netherlands, and Spain are all parties to the 1965 Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention").  The ICSID Convention establishes an arbitration regime for resolving disputes related to international investments between the treaty's members, or "Contracting States."  The Convention's Article 54(1) provides: "Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  Congress has confirmed that commitment by statute:  "The pecuniary obligations imposed by [an ICSID Convention] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a.

Spain and the Netherlands are also contracting parties to the Energy Charter Treaty (ECT), a multinational agreement designed to create "a legal framework in order to promote long-term cooperation in the energy field" through "complementarities and mutual benefits."  ECT art. 2.  For example, the ECT entitles investors from one contracting party to receive "fair and equitable treatment" from the other contracting parties.  *Id.* art. 10(1).  Should a dispute arise, the ECT provides that each contracting party "gives its unconditional consent to the submission of [that] dispute to international arbitration"—and if a consenting investor seeks arbitration, the arbitration can be carried out under the ICSID Convention.  *Id.* art. 26(3)-(5).

Finally, the Foreign Sovereign Immunities Act (FSIA) provides that foreign states are immune from the jurisdiction of U.S. courts unless they fall within certain exceptions. Under the "waiver" exception, for example, U.S. courts have jurisdiction "in any case . . . in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). And under the "arbitration" exception, U.S. courts have jurisdiction in any case "in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." *Id.* § 1605(a)(6).

**B.  Facts and Procedural History**

Both NextEra petitioners are private limited liability companies incorporated under the laws of the Netherlands. Petition ¶ 4. After Spain enacted legislation to encourage investment in solar power projects in its territory in 2007, "NextEra invested in the construction, development and operation of two Spanish [solar power] projects at a total cost of approximately 750 million euros." *Id.* ¶ 13. But NextEra alleges that between 2012 and 2014, Spain "fundamentally and radically changed the investment regime NextEra relied on when making its investment," causing NextEra "significant harm as a result." *Id.* ¶ 14 (quotation and citations omitted). Because the Netherlands and Spain are both contracting parties to the ECT, in 2014 NextEra sought to redress its grievances by requesting arbitration under the ICSID Convention. *Id.* ¶ 18.

In 2015, a three-member ICSID arbitral tribunal convened to address NextEra's request, and held a hearing on all issues during December of 2016. *Id.* ¶ 19. In March 2019, the ICSID tribunal issued a decision in favor of NextEra. *Id.* at 20; *see* Award, ICSID Case No. ARB/14/11, Annex A: Decision on Jurisdiction, Liability and Quantum Principles, ECF No. 1-4 ("Liability Decision"). Two months later, the tribunal issued a "Final Award requiring Spain to

pay NextEra EUR 290.6 million as damages, plus pre-judgment interest at a rate of 0.234%, compounded monthly, from June 30, 2016." *Id.* ¶ 21; *see* Award, ICSID Case No. ARB/14/11, ECF No. 1-4.

NextEra petitioned this court to confirm the ICSID's Award against Spain. Petition, ECF No. 1. But in September 2020, the court stayed the case while Spain applied for an annulment of the Award with an ICSID Annulment Committee. ECF No. 39. The court lifted that stay in April 2022 upon receiving notice that the Annulment Committee had dismissed Spain's application. April 29, 2022 Minute Order. Shortly thereafter, Spain moved to dismiss NextEra's petitions, asserting lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. ECF No. 62. NextEra opposed Spain's motion and cross-moved for summary judgment. ECF No. 68.

While those motions were pending, on December 22, 2022, Spain initiated a legal action in Amsterdam (the "Dutch Action"), seeking an order requiring NextEra to "take all actions necessary to withdraw the proceedings currently pending before the United States District Court for the District of Columbia under case number 1:19-cv-01618 . . . under penalty of a daily payment of EUR 30,000 per day for each day or part of a day that Defendants fail to effect such suspension." See PI/TRO Motion, Decl. of Bradley A. Klein, Exhibit 1, at 32-33, ECF No. 78-3 ("Dutch Writ"). Spain also requests a separate civil penalty and an injunction preventing NextEra from seeking to confirm the Award or otherwise pursue payment anywhere in the world. *Id.* at 33.

In response, NextEra now seeks injunctive relief of its own, asking this court to issue a preliminary injunction and temporary restraining order preventing Spain from pursuing the Dutch Action insofar as it would affect NextEra's suit here. Specifically, NextEra seeks an

injunction stopping Spain from seeking any relief in the Dutch Action—or anywhere else—that would halt or obstruct this case, and requiring Spain to withdraw its requests for such relief in the Dutch Action—Claims (A) through (D) and (L) through (P) of the Dutch Writ. *See* Proposed Order Granting Preliminary Injunction at 2-3, ECF No. 78-5.

Because Spain committed to not seek any relief in the Dutch Action until at least March 1, 2023, *see* Joint Status Report, ECF No. 80, the court did not deem it necessary to issue a temporary restraining order before deciding whether to issue a preliminary injunction.

## II.    LEGAL STANDARD

### A.  **Motion to Dismiss**

"Before evaluating the availability of preliminary relief, the Court must first determine that it may properly exercise jurisdiction over the action." *Rosenkrantz v. Inter-Am. Dev. Bank*, No. CV 20-3670 (BAH), 2021 WL 1254367, at *7 (D.D.C. Apr. 5, 2021) (quotation omitted), *aff'd*, 35 F.4th 854 (D.C. Cir. 2022); *see also Aamer v. Obama*, 742 F.3d 1023, 1028, 1038 (D.C. Cir. 2014) ("We begin, as we must, with the question of subject-matter jurisdiction," then "turn to the question of whether petitioners have established their entitlement to injunctive relief."). A defendant's "Motion to Dismiss under Rule 12(b)(1) therefore must be decided before plaintiffs' Motion for Preliminary Injunction may be considered." *Rosenkrantz*, 2021 WL 1254367, at *7.

Here, Spain moves for dismissal under Rule 12(b)(1) on the grounds that it is immune from jurisdiction under the FSIA, which provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (quotation omitted). "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id.* at 355.

When a defendant challenges the factual basis for jurisdiction under an FSIA exception, the D.C. Circuit applies a burden-shifting analysis. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008). The plaintiff "bears the initial burden of supporting its claim that the FSIA exception applies." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015) (citing *Chabad*, 528 F.3d at 940). "[T]his is only a burden of production"—producing evidence of the required jurisdictional facts. *Id.* (same). If Plaintiff meets its burden, then the "burden of persuasion rests with the foreign sovereign claiming immunity, which must establish the absence of the factual basis by a preponderance of the evidence." *Id.* (same).

## B.  Motion for Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic" remedy that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A movant must demonstrate (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent injunctive relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Couns, Inc.*, 555 U.S. 7, 20 (2008). Because "a preliminary injunction is an extraordinary and drastic remedy," the court should not grant one "unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted) (emphasis in original).

Courts in this Circuit have typically applied a "sliding-scale" approach in analyzing these four factors; a particularly strong showing in one factor could outweigh weakness in another. *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). It is unclear if this approach has survived the Supreme Court's decision in *Winter*, however. *See, e.g.*, *Banks v. Booth*, 459 F. Supp. 3d 143, 149-50 (D.D.C. 2020) (citing *Sherley*, 644 F.3d at 393). Nonetheless, the movant still bears a burden to show that "all four factors, taken together, weigh in favor of the

injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)).

### III.    JURISDICTION

#### A.  FSIA Exceptions

NextEra asserts that the court has jurisdiction over its petition under both the FSIA arbitration and waiver exceptions.  Spain contends that neither applies.  Because the court concludes that it has jurisdiction under the arbitration exception, it does not reach whether the waiver exception applies.

The D.C. Circuit has found that "jurisdiction under the arbitration exception requires more than a claim invoking an arbitration award."  *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021).  "Rather," and tracking the text of the exception, the court has held that "the existence of an arbitration agreement, an arbitration award and a treaty governing the award are all jurisdictional facts that must be established."  *Id.*; *see also Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022).  Spain does not contest the latter two facts.  *See* Spain MTD at 6-8 (discussing the Award and denial of its application for annulment); *id.* at 40 (acknowledging that "Congress implemented the ICSID Convention by enacting 22 U.S.C. § 1605a").  Instead, Spain's central argument is that "as a matter of European Union ("EU") Law . . . [,] no such agreement to arbitrate exists."  *Id.* at 1.  NextEra concedes that an existing agreement is essential for jurisdiction under the arbitration exception.  Cross-MSJ at 18.[1]

---

[1] Spain's challenge to the arbitration agreement's existence has implications for the FSIA's waiver exception as well.  The D.C. Circuit has "found an implicit waiver of sovereign immunity in only three situations," *Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan*, 406 F. Supp. 3d 1, 10 (D.D.C. 2019) (quoting *Gutch v. Fed. Republic of Germany*, 255 F. App'x 524, 525 (D.C. Cir. 2007)), only one of which is potentially relevant here: where

As a result, the key issue is whether an agreement to arbitrate existed between Spain and NextEra. Spain concedes—as it must—that the ECT exists, and that its terms facially create such an agreement: "Article 26 of the ECT . . . provides for the resolution of disputes between investors of one contracting party, on the one hand, and another contracting party, on the other, before an ICSID tribunal." Spain MTD at 11. So, in a purely literal sense, there is no dispute about the existence of an agreement to arbitrate.

Whether the ECT's agreement to arbitrate existed as a legal matter is a harder question. Spain asserts that recent decisions of the Court of Justice of the European Union (CJEU)—which interprets and enforces EU law—have clarified that Spain never had the authority to agree to ICSID arbitration via the ECT. In *Slovak Republic v. Achmea B.V*., Case No. C-284/16 (Mar. 6, 2018), ECF No. 62-47 (*Achmea*), the CJEU addressed the relationship between international arbitration agreements and the Treaty on the Functioning of the European Union, "which sets forth the EU's authority to legislate and key principles of EU law." *Micula v. Gov't of Romania*,

---

"a foreign state has agreed to arbitration in another country," *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990) (citation omitted). But in that situation, too, the key jurisdictional fact is whether the foreign state has agreed to arbitration. NextEra disagrees, relying on *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999), which in turn cites *Seetransport Wiking Trader v. Navimpex Centrala,* 989 F.2d 572, 577 (2d Cir.1993), for the proposition that by joining the Convention, Spain "must have contemplated enforcement actions in other signatory states." *See* Cross-MSJ at 23. But *Creighton* only favorably cited that conclusion (and only with respect to the New York Convention) after noting that the Second Circuit first "found [the] implied waiver where [the] foreign government had agreed . . . to arbitrate." 181 F.3d at 123. In other words, even when a state has assented to the enforcement of arbitral awards in the United States, an agreement to arbitrate is still necessary for implied waiver of immunity. The ICSID Convention establishes an arbitration regime and commits its members to abide by arbitral awards issued under the regime, but the Convention does not constitute an agreement to arbitrate in any particular case. Under Article 25, parties must separately agree to ICSID arbitration. Therefore, a specific arbitration agreement remains a jurisdictional prerequisite under the waiver exception.

404 F. Supp. 3d 265, 278 (D.D.C. 2019), *aff'd,* 805 F. App'x 1 (D.C. Cir. 2020).  In *Achmea,* the

CJEU held that

> Articles 267 and 344 [of the] TFEU must be interpreted as precluding a provision
> in an international agreement concluded between Member States . . . under which
> an investor from one of those Member States may, in the event of a dispute
> concerning investments in the other Member State, bring proceedings against the
> latter Member State before an arbitral tribunal whose jurisdiction that Member
> State has undertaken to accept.

*Achmea* ¶ 60.

In other words, to protect "the autonomy of EU law," *Achmea* invalidated arbitration

agreements that would "call upon [an] arbitral tribunal to interpret or apply EU law . . . not

subject to review by a court or tribunal within the EU's judicial system."  *Micula*, 404 F. Supp.

3d at 279.  In *Republic of Moldova v. Komstroy*, Case C-741/19 (Sept. 2, 2021), ECF No. 62-67,

the CJEU confirmed that its reasoning in *Achmea* applied specifically to ECT Article 26.  Based

on *Achmea* and *Komstroy*, Spain contends that "[a]s a matter of EU law, the law to which Spain

and Petitioners are both subject, no arbitration agreement exists between Spain and Petitioners

because any such agreement would violate core tenets of EU sovereignty as set out in the EU

Treaties."  Spain MTD at 4-5.

As another court in this district recognized in similar case, "[a]ssuming Spain is correct,

the dominoes begin to fall.  If there was no agreement to arbitrate, the ICSID tribunal never had

jurisdiction, its award is not enforceable, and therefore it is not entitled to full faith and credit in

this Court."  *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, No. CV 20-817 (JDB),

2021 WL 2665406, at *4 (D.D.C. June 29, 2021).  "Moreover, absent an agreement to arbitrate,

Spain maintains its immunity under the FSIA, leaving this Court without subject-matter

jurisdiction to rule on the merits of the complaint."  *Id.*  For its part, NextEra disputes the legal

effects of *Achmea* and *Komstroy* but argues that in any event, those effects go to the merits and

validity of the arbitration agreement rather than its existence.  Cross-MSJ at 30-38.  In NextEra's

view, the existence of the agreement is *res judicata* after the ICSID tribunal's decision, and

Spain's resort to EU law is a disguised form of collateral attack on the Award.  *Id.* at 24-30.

Only one U.S. court has attempted to grapple with the implications of *Achmea* for its

jurisdiction under the FSIA to confirm an ICSID arbitral award.  In *Micula v. Government of*

*Romania*, Swedish investors had "initiated arbitration proceedings against Romania before an

ICSID tribunal" pursuant to a Romania-Sweden bilateral investment treaty ("BIT"), then sought

to confirm that award in this district.  404 F. Supp. 3d at 270, 272-73.  Romania argued that the

FSIA arbitration exception did not apply "because the arbitration clause in the Sweden-Romania

BIT has been declared invalid" by the *Achmea* decision, *id.* at 277—the same argument Spain

advances here with respect to the ECT's Article 26.

After "carefully consider[ing] the *Achmea* decision," the court in *Micula* held that

Romania "ha[d] failed to carry its burden of showing that *Achmea* forecloses this court's

jurisdiction under the FSIA's arbitration exception."  *Id.* at 279.  Specifically, Romania had "not

shown that the concern that animated *Achmea*—the un-reviewability of an arbitral tribunal's

determination of EU law by an EU court—[was] present in [that] case."  *Id.*  The court gave

three reasons for that conclusion, all of which related to the fact that "all key events to the

parties' dispute occurred *before* Romania acceded to the EU."  *Id.* at 280.  First, "Romania's

challenged actions occurred when it remained . . . subject, at least primarily, to its own domestic

law."  *Id.*  Second, the parties agreed that the "substantive rules" of the "Sweden-Romania BIT,"

not EU law, "supplied the applicable law" for the claims at issue—the ICSID tribunal only

considered EU law "for factual context, not as a source of controlling law."  *Id.* (quotation

omitted).  And third, a ruling from a CJEU constituent court had expressly distinguished *Achmea*

on the grounds that the arbitral tribunal in *Micula* "was not bound to apply EU law to events occurring prior to the accession before it." *Id.* at 280. The court found that that ruling "therefore explicitly refute[d] Romania's position that the CJEU's decision in *Achmea* nullified the arbitration agreement contained in the Sweden Romania BIT." *Id.*

A panel of the D.C. Circuit affirmed Judge Mehta's conclusion in an unpublished, per curiam opinion, noting the "question[] whether Romania's agreement to arbitrate was nullified by its ascension to the European Union." *Micula v. Gov't of Romania*, 805 F. App'x 1, 1 (D.C. Cir. 2020). But the panel did not address that question because, "as the district court carefully explained, Romania did not join the EU until after the underlying events here, so the arbitration agreement applied." *Id.*

Even more recently, however, the D.C. Circuit has indicated that there is no need to reach an analysis of EU law and the CJEU's *Achmea* decision in this context. In *LLC SPS Stileks v. Republic of Moldova*, 985 F.3d 871, 875 (D.C. Cir. 2021), Energoalliance, a Ukrainian energy provider, had invoked the ECT's arbitration clause to initiate a proceeding against Moldova before the United Nations Commission on International Trade Law (UNCITRAL). After that arbitral tribunal issued an award, Energoalliance sought to confirm it in the United States. Moldova argued before the district court and D.C. Circuit that U.S. courts lacked jurisdiction under the FSIA's arbitration exception because Energoalliance was not a qualifying investor under the ECT and therefore could not have validly invoked the ECT's arbitration clause. *Id.* at 875, 877-78. Thus, Moldova argued, "[a]lthough the ECT may establish that Moldova agreed to arbitrate certain disputes, it does not prove that it agreed to arbitrate this *particular* dispute." *Id.* at 878. In other words, Moldova argued—as Spain does here—that whether one party could

have validly agreed to arbitrate under the ECT implicated the agreement's very existence and was therefore a necessary jurisdictional question under the FSIA.

The D.C. Circuit panel squarely rejected that argument. It characterized Moldova's argument as contesting the arbitrability of the dispute, not the necessary jurisdictional fact of an agreement's existence. *Id.*; *see also id.* at 877 n.3 (observing "no disagreement that Moldova is a party to the ECT, which provides for the arbitration of certain disputes"). And, citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205-06 (D.C. Cir. 2015), the Court concluded that "the arbitrability of a dispute is not a jurisdictional question under the FSIA." 985 F.3d at 878. In *Chevron*, Ecuador asserted that it "had never agreed to arbitrate with Chevron" because Chevron's investments had terminated before the relevant treaty came into force. 795 F.3d at 203. But, the Court ruled, that assertion "conflate[d] the jurisdictional standard of the FSIA with the standard for review" of the award's merits based on its arbitrability or lack thereof. 795 F.3d at 205. Likewise, the *Stileks* panel declined to address Moldova's argument that Energoalliance could not have invoked the ECT's arbitration provision for purposes of resolving the issue of jurisdiction under the FSIA. 985 F.3d at 878.[2]

The lesson of *Stileks* and *Chevron* appears to be this: The assertion that a party lacked a legal basis to enter or invoke an arbitration agreement is not a challenge to the jurisdictional fact

---

[2] The *Stileks* Court did consider Moldova's arguments in deciding whether it could assert "a defense to confirmation under the New York Convention." 985 F.3d at 878. But even in that context, the Court declined to "pass[] on the merits of that defense" because the ECT bound its parties to arbitration under UNCITRAL's rules, one of which was that UNCITRAL had power to rule on its own jurisdiction. *Id.* Thus, the ECT's parties had delegated the question of arbitrability to the UNCITRAL tribunal, and therefore the "court possesse[d] no power to decide the arbitrability issue." *Id.* at 878-79 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019)). Ultimately, however, there is no need to replicate that analysis here because unlike the New York Convention—and as reiterated *infra* Section III.B.1—the ICSID Convention's Article 54(1) and 22 U.S.C. § 1650a do not provide for judicial review of an ICSID tribunal award's merits, including the question of arbitrability.

of that agreement's existence but rather a challenge to that agreement's arbitrability.  And that assertion goes to arbitrability even if it contends that the ECT was not validly applied.  As the Circuit noted in *Stileks*:  "*Whether the ECT applies to the dispute* and *whether the tribunal had jurisdiction under the ECT* are different ways of framing the same question" about the merits of an award—namely, whether a dispute was arbitrable.  *Id.* at 879.  A defendant may accordingly assert the lack of a legal basis for entering an agreement to contest an award's merits (where the law provides for judicial review of an award's merits), but not to rebut a plaintiff's evidence that an agreement to arbitrate exists.

At least one other judge in this district has applied *Stileks* in that way.  In *Tethyan Copper Co. Party Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262 (D.D.C. 2022), Tethyan, an Australian mining company, sought to confirm an ICSID arbitration award against Pakistan. Under the relevant treaty, a referral to arbitration required written consent.  Pakistan argued that it had "never provided such written consent," and therefore had "never agreed to arbitrate at ICSID."  *Id.* at 273.  In evaluating that purported "dispute[] over the existence of an arbitration agreement," *id.*, the court recognized that Tethyan had met its jurisdictional burden to produce "copies of the [underlying treaty], the notice[] of arbitration, and the tribunal's decision," *id.* (quoting *Stileks*, 985 F.3d at 877), which together "entitle[d] Tethyan to a presumption of a valid arbitration agreement," *id*.  Further, the court expressly rejected Pakistan's argument that "the Court should make its own independent determination on the existence of an agreement," construing that argument as going to arbitrability and citing *Chevron* and *Stileks* for the proposition that an arbitrability dispute "does not affect the Court's jurisdiction."  *Id.* at 273-74. Consequently, the court found, "Pakistan's arbitrability argument [was] not cognizable under

FSIA" and the arbitration exception applied to grant the court jurisdiction to confirm the arbitral award. *Id.* at 275.

The court reaches the same conclusion here. As noted above, there is no question as to the existence of the "copies of the [underlying treaty], the notice[] of arbitration, and the tribunal's decision." *Stileks*, 985 F.3d at 877. Under the *Chevron* burden-shifting framework, therefore, Spain has the burden of showing that, in fact, no arbitration agreement exists. *See* 795 F.3d at 204. Spain's only argument on that score is that it could not have entered into the ECT's arbitration provisions because EU law—as retroactively clarified by the *Achmea* and *Komstroy* decisions—does not permit EU members to assign questions of EU law to arbitration in non-EU tribunals. Therefore, the ECT did not apply to Spain and NextEra's dispute, and no agreement to arbitrate was ever formed. But the D.C. "Circuit [has] rejected that tactic." *Tethyan*, 590 F. Supp. 3d at 274. *Chevron* and *Stileks* treat the argument that a party lacked a legal basis to enter an agreement as a question of arbitrability and therefore an issue of the award's merits. *See Stileks*, 985 F.3d at 878; *Chevron*, 795 F.3d at 205 n.3. Spain thus cannot deploy that argument here as a backdoor challenge to FSIA jurisdiction.

Because Spain's argument "does not affect the Court's jurisdiction," *Tethyan*, 590 F. Supp. 3d at 274, there is no need at this stage to analyze the effects of *Achmea* and *Komstroy* on EU law and intra-EU disputes. And because Spain does not offer any other arguments or evidence rebutting the existence of an arbitration agreement, it has failed to carry its burden of persuasion that the necessary jurisdictional facts are not present here. As a result, the court finds

that it has jurisdiction over Spain under the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), and rejects this basis for Spain's motion to dismiss.[3]

## B.  *Forum non conveniens*

Spain also urges the court to decline to exercise jurisdiction over NextEra's petition under the doctrine of *forum non conveniens*.

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up) (quotation omitted).

Here, Spain's argument is even more clearly foreclosed by *Stileks*.  In that decision, the D.C. Circuit plainly stated that "*forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States."  985 F.3d at 876 n.1.  Spain's gymnastic but unavailing efforts to circumvent that holding "do not require sustained discussion."  *Id.*  In short, Spain argues that *Stileks*, along with *TMR Energy Ltd. v. State Prop. Fund of Ukraine,* 411 F.3d 296 (D.C. Cir. 2005), and *Tatneft v. Ukraine*, 21 F.4th 829 (D.C. Cir. 2021), do not control here because in those cases, "the court determined that it had jurisdiction under the FSIA before addressing the *forum non conveniens* motion."  Spain MTD at 27.  Setting aside the fact that the court has similarly determined its FSIA jurisdiction here, Spain fails to identify any indication in those

---

[3] Because the court finds jurisdiction under the arbitration exception, it does not reach whether it also has jurisdiction under the waiver exception.  *See Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 775 (D.C. Cir. 2022).

cases that they should be read so narrowly.  Indeed, the D.C. Circuit's core rationale—that alternative fora are inherently inadequate because they cannot attach U.S. assets—applies regardless of procedural posture.  The court therefore rejects Spain's request for dismissal on grounds of *forum non conveniens*, and its motion to dismiss will therefore be denied.[4]

## IV.    INJUNCTIVE RELIEF

Having found that it has jurisdiction over NextEra's petition and that dismissal is not warranted, the court turns to NextEra's request for injunctive relief.  The court is persuaded that this case presents sufficiently unusual circumstances to warrant a preliminary, anti-suit injunction against a foreign sovereign.

## A.  Anti-Suit Injunction

U.S. federal courts "have power to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions."  *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984).  "However, . . . [t]he mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction," and "[i]f the foreign court reacts with a similar injunction, no party may be able to obtain any remedy."  *Id.* at 927.  Thus, "foreign anti-suit injunctions are appropriate only when 'required to prevent an irreparable miscarriage of justice,' such as when 'necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum.'"  *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 434 (D.C. Cir. 2022) (quoting *Laker Airways*, 731 F.2d at 927).

---

[4] Because the court will deny Spain's Motion to Dismiss, it will also deny as moot NextEra's Motion for Leave to File a Surreply with respect to that Motion.

The D.C. Circuit's decision in *Laker Airways* provides direct guidance in this case.  In 1982, the liquidated British airline Laker Airways—which operated transatlantic flights between New York and London—brought an antitrust action against several domestic and foreign airlines, seeking to recoup losses caused by alleged predatory pricing and other economic interference.  731 F.2d at 917.  Shortly thereafter, the foreign airlines initiated a suit in the United Kingdom's High Court of Justice, seeking "(1) a declaration that the four foreign defendants were not engaged in any unlawful combination or conspiracy, and (2) an injunction prohibiting Laker from taking any action *in United States courts* to redress an alleged violation by the defendants *of United States antitrust laws*," including by forcing Laker Airways to withdraw its antitrust suit.  *Id.* at 918.  Ultimately, the British courts did order Laker Airways to cease prosecuting at least the British airlines, and were considering a similar order protecting the other foreign airlines as well.  *Id.* at 919-20.  Laker Airlines sought an anti-suit injunction in this district restraining the other foreign airlines from continuing their efforts to obtain injunctive relief against Laker Airways in British courts.  *Id.* at 919-21.

The D.C. Circuit concluded that, in those circumstances, an anti-suit preliminary injunction was warranted.

> Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants.  Thus, when the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings.

*Laker Airways*, 731 F.2d at 927.  "[D]uplication of parties and issues alone is not sufficient" to warrant this remedy, as "the fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res

judicata in the other." *Id.* at 927-28. But "where the foreign proceeding is not following a parallel track but attempts to carve out exclusive jurisdiction over concurrent actions, an injunction may be necessary to avoid the possibility of losing validly invoked jurisdiction" and protect "the court's ability to render a just and final judgment." *Id.* at 930.

That is the case here. For the reasons explained *supra* section III, this action is a "proper[] exercise" of the court's jurisdiction." *Id.* And the express and primary purpose of Spain's suit in the Netherlands "is to *terminate* [this] action," *id.*—ordering NextEra to withdraw this suit, imposing penalties upon failure to do so, and issuing a worldwide injunction preventing NextEra from taking any action to confirm the Award, Dutch Writ at 31-33. Like the foreign airlines in *Laker Airways*, Spain did not provide the court with "any prior notice" that it was seeking an anti-suit injunction against NextEra in the Netherlands, apparently planning to simply later advise the court of the "*fait accompli* . . . which would have virtually eliminated the court's effective jurisdiction over [NextEra's] facially valid claim." 731 F.2d at 930-31. That leaves the court with "the stark choice of either protecting or relinquishing [its] jurisdiction" over NextEra's petition. *Id.* at 930. The court concludes that these "most compelling circumstances" require an anti-suit injunction. *Id.* at 927.[5]

Spain offers only two direct counterarguments, but both fail for reasons the court has already explained. First, Spain argues that because the court lacks jurisdiction, there is no jurisdiction here to protect. Opposition to Motion for Preliminary Injunction and Temporary Restraining Order at 10-12, ECF No. 81 ("Opp. to PI/TRO Motion"). But the court has rejected

---

[5] Because the court's need to protect its own jurisdiction is sufficient to justify an anti-suit injunction here, the court need not reach the other "category" of compelling circumstances described by *Laker Airways*: "prevent[ing] the litigant's evasion of the important public policies of the forum." 731 F.2d at 927; *see* PI/TRO Motion at 16-18; Opp. to PI/TRO Motion at 13-16.

Spain's premise and found jurisdiction, so Spain's argument likewise fails.  *Supra* section III.A.

Second, Spain attempts to distinguish *Laker Airways* by noting that one of the D.C. Circuit's

concerns in that case was that the relief plaintiffs sought—"the remedies afforded by the

American antitrust laws"—were not available in foreign courts.  *Id.* at 12 (citing 731 F.2d at

930).  But this case does not present even that partial distinction; here, too, foreign courts are

inadequate alternatives because, as the court noted *supra* section III.B, "only U.S. courts can

attach foreign commercial assets found within the United States."  *Stileks,* 985 F.3d at 876 n.1;

*see also Laker Airways*, 731 F.2d at 936 (observing that arguments like Spain's are better suited

to *forum non conveniens* cases where there is an adequate alternative forum).

Considerations of comity, while deserving substantial respect, do not outweigh the need

for an anti-suit injunction in this case.  Like the defendants in *Laker Airways*, Spain "argue[s]

strenuously" that "the crucial principles of comity that regulate and moderate the social and

economic intercourse between independent nations" preclude an injunction here.  731 F.2d at

937; *see* Opp. to PI/TRO Motion at 17-20.  And like the Circuit in *Laker Airways,* the court

"approach[es] [Spain's] claims seriously," recognizing that "when possible, the decision of

foreign tribunals should be given effect in domestic courts, since recognition fosters international

cooperation and encourages reciprocity, thereby promoting predictability and stability."  731

F.2d at 937.  "However, there are limitations to the application of comity."  *Id.*  For one,

> United States courts must control the access to their forums.  No foreign court can
> supersede the right and obligation of the United States courts to decide whether
> Congress has created a remedy for those injured by trade practices adversely
> affecting United States interests.  Our courts are not required to stand by while [a
> foreign sovereign] attempts to close a courthouse door that Congress, under its
> territorial jurisdiction, has opened.

*Id.* at 935-36.  In short, "[n]o nation is under an unremitting obligation to enforce foreign

interests which are fundamentally prejudicial to those of the domestic forum."  *Id.* at 937.

Under these principles, the relief Spain seeks in Amsterdam is not entitled to comity. "This is because the [Dutch Action] is specifically intended to interfere with and terminate" NextEra's petition before this court.  *Id.*  In *Laker Airways*, the Circuit approved of the preliminary injunction because it was "purely *defensive*—it [sought] only to preserve the district court's ability to arrive at a final judgment adjudicating Laker's claims under United States law"—and was granted in response to a foreign injunction that was "purely *offensive*—it [was] not designed to protect English jurisdiction, or allow English courts to proceed to a judgment on the defendant's potential liability."  *Id.* at 938.  The same is true here.  NextEra seeks an injunction to protect this court's jurisdiction, while Spain seeks an injunction to eliminate it.

The upshot of Spain's argument, then, is the same one made by the defendant airlines and rejected by the D.C. Circuit in *Laker Airways*—"that comity compels us to recognize a decision by a *foreign* government that *this court* shall not apply its own laws."  *Id* at 939.  But in the Dutch Action, Spain is zealously pursuing the very same kind of anti-suit injunction that it now asks this court to refrain from issuing.  Consequently, Spain's "claims of comity now asserted in United States courts come burdened with the failure of [Spain] to recognize comity."  *Id.*  The *Laker Airways* court refused to countenance that hypocrisy, and neither will this court.  In that case, the Circuit observed that "[t]here never would have been any situation in which comity or forbearance would have become an issue if some of the defendants involved in the American suit had not gone into the English courts to generate interference with the American courts."  So too here.  The court would not be considering this relief were Spain not actively seeking to frustrate the operation of U.S. law.  The comity concerns that Spain laments are of its own making.

An anti-suit injunction is strong medicine. But here it is required—and will be tailored—to meet the force of Spain's attempt to deprive this court of jurisdiction. Spain remains free, for example, to seek a declaration from Dutch courts vindicating its interpretation of EU law. *See* Dutch Writ at 32, Claim (I). But Spain may not seek to foreclose NextEra's opportunity to petition this court for the relief afforded by United States law.

## B. <u>Preliminary Injunction</u>

Having determined that an anti-suit injunction may be appropriate in this case, the court now considers whether such relief against Spain is warranted in the form of a preliminary injunction. *See In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 98 (2d Cir. 2006) ("Once the . . . court has addressed the propriety of imposing an anti-suit injunction . . . , [the] court must then make findings on whether it is appropriate to enter a *preliminary* injunction."). All four relevant factors favor granting NextEra's motion.

### 1. <u>Likelihood of success on the merits</u>

The analysis required for confirming the Award is relatively straightforward, and NextEra's success in confirming it is highly likely. By statute, an ICSID Convention award like this one

> create[s] a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.

28 U.S.C. § 1650a(a). Moreover, the Federal Arbitration Act—and its accompanying, "more robust form of judicial review," *Tethyan*, 590 F. Supp. 3d at 268—"shall not apply to enforcement of awards rendered" under the ICSID Convention, 28 U.S.C. § 1650a(a).

"[T]he Court's role in enforcing an ICSID arbitral award is therefore exceptionally limited." *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101

(D.D.C. 2019); *see also Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018) (noting "the perfunctory role that 22 U.S.C. § 1650a appears to envision for federal district courts"). "The Court must ensure that it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award." *Tethyan*, 590 F. Supp. 3d at 268 (citing *TECO Guatemala*, 414 F. Supp. 3d at 101; *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 112 (2d Cir. 2017)).

All those elements are present here. For the reasons explained *infra* Section III.A, the court finds that it has jurisdiction. And neither party raises any reason to believe that the Award in this case is not authentic, or that the court's enforcement order will not be able to successfully track the Award's terms. That ends the court's inquiry; the Award must be enforced.

In challenging that conclusion, Spain asks the court to look beyond the scope of 22 U.S.C. § 1650a(a) in several respects. First, reiterating its assertion that no valid arbitration agreement existed, Spain argues that NextEra's Award is not entitled to full faith and credit because the ICSID tribunal lacked jurisdiction over the underlying dispute. Spain MTD at 41-42. But under the ICSID Convention, "[m]ember states' courts are . . . not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award." *Mobil Cerro*, 863 F.3d at 102. In any event, "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided" by the original court. *Durfee v. Duke*, 375 U.S. 106, 111 (1963); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); *see Tethyan*, 590 F. Supp. 3d at 276. After hearing the same arguments Spain raises here, the ICSID tribunal

determined that it had jurisdiction over the dispute.  Liability Decision ¶¶ 272-357.

Consequently, that determination, as well as the Award itself, is due full faith and credit.

Second, Spain argues that the ICSID tribunal violated EU law's prohibition on granting

"state aid"—that is, subsidies to private actors—without authorization from the European

Commission.  *Id.* at 42-44.  Insofar as Spain argues that the ICSID tribunal exceeded its own

jurisdiction, that argument is foreclosed for the reasons explained in the previous paragraph.

And to the extent that Spain argues that the Award itself violates EU law, that contention "goes

to the merits of the ICSID panel's determination" and must be taken up with the ICSID tribunal

itself.  *Micula*, 404 F. Supp. 3d at 285.  The ICSID Convention's Article 53 provides that an

"award shall be binding on the parties and shall not be subject to any appeal or to any other

remedy except those provided for in this Convention."  Nothing in § 1650a permits the court to

consider this issue.

Third, Spain suggests that "the [A]ward was illegally procured by Petitioners' false

representations," along with other "defenses as to the merits" of the Award that it plans to unveil

in future filings.  Spain MTD at 48 n.12.  But as already noted, merits defenses do not factor into

the court's role in enforcing ICSID Convention awards.  As the court persuasively explained in

*TECO Guatemala*, under full faith and credit principles, "the relevant question is whether the

ICSID Convention would permit the Court to decline to enforce the award at issue here."  414 F.

Supp. 3d at 103.  "It would not."  *Id.*  Again, the Convention's Article 53 does not contemplate

member states' courts setting aside awards based on fraud or any other merits defenses.  *See id.*

The allegation that NextEra "engaged in fraud . . . is merely an effort to relitigate the

arbitration's underlying merits masquerading as an appeal to equity" and "is at odds with the

purpose of the treaty and the clear terms of the implementing legislation, both of which are

designed to create a streamlined process for enforcing arbitral awards." *Id.* Neither Spain's current challenges to the merits of the Award, nor any potential future merits challenges, have any bearing on the court's duty to enforce the Award. *See also infra* Section V (discussing Spain's Motion to Strike).

Finally, Spain appeals to the "foreign sovereign compulsion" and "act of state" doctrines. Spain MTD at 43-47. Neither is applicable here. The foreign sovereign compulsion doctrine is a defense that some Circuits permit antitrust defendants to assert to shield their anticompetitive acts from liability on the grounds that those acts were compelled by a foreign government. *See Construction and Application of Foreign Sovereign Compulsion Doctrine*, 86 A.L.R. 2d 1 (2014); *see, e.g.*, *In Re: Vitamin C Antitrust Litig.*, 8 F.4th 136 (2d Cir. 2021). The D.C. Circuit has not adopted the doctrine. More importantly, this is not an antitrust case, and therefore the doctrine is inapplicable; the court is unaware of any authority extending this doctrine outside of the antitrust context. Spain's allusions to comity principles, *see, e.g.*, Spain MTD at 45, do not persuade the court to do so here. *See also supra* section IV.A (discussing the role of comity in this case).

The related act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *World Wide Min., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964)). But "[a]ct of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990). As noted above, under § 1650a(a), the court only needs to decide three questions: (1) whether "it has subject-matter and personal

jurisdiction," (2) whether "the award is authentic," and (3) whether "its enforcement order tracks the award." *Tethyan*, 590 F. Supp. 3d at 268; *TECO Guatemala*, 414 F. Supp. 3d at 101; *Mobil Cerro*, 863 F.3d at 112. Whether a foreign act was lawful is not part of this calculus. As the D.C. Circuit recognized in *Micula*, petitioners to confirm an ICSID arbitral award "have not challenged the acts or decisions of a foreign sovereign," but instead "have merely sought to enforce a decision rendered by a forum for international arbitration to which [the foreign sovereign] has voluntarily submitted itself." 2022 WL 2281645, at *2.

Still, Spain contends that confirmation of the Award here would "effectively declare invalid *Achmea*, the Joint Declaration, and the European Commission's official position." Spain MTD at 46. The Supreme Court has rejected that perspective in language that readily applies here: "Regardless of what the court's factual findings may suggest as to the legality" of those foreign acts, their validity "is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires." *Kirkpatrick*, 493 U.S. at 406. The act of state doctrine therefore finds no purchase here.

In sum, none of Spain's protests alter the conclusion that, pursuant to 28 U.S.C. § 1650a(a)'s unambiguous directive, the court should afford the Award full faith and credit and enter judgment enforcing it. The court thus concludes that NextEra has a strong likelihood of succeeding on the merits of its petition.

2. <u>Irreparable harm</u>

The risk of irreparable harm to NextEra is clear. If Spain receives the relief it seeks in the Dutch action, NextEra will be permanently enjoined from enforcing the Award, both in this court and around the world. *See* Dutch Writ at 31-33. That is precisely the kind of irreparable harm identified by the district court, and affirmed by the D.C. Circuit, in *Laker Airways*:

> [I]f this Court should fail to issue an injunction and thus allow those defendants which are still before this Court to join with their alleged coconspirators before the Queen's Bench Division, the British court may very well (1) enjoin Laker from pursuing its remedies against any of the defendants in this Court, and (2) enter a judgment on the merits that the defendants here (plaintiffs there) are not liable to Laker for the acts averred in the complaints. The Court finds that, for these reasons, plaintiff would be irreparably injured if the Court does not issue an injunction.

*Laker Airways Ltd. v. Pan Am. World Airways*, 559 F. Supp. 1124, 1137-38 (D.D.C. 1983)

(footnotes omitted); *see Laker Airways*, 731 F.2d at 956.

Spain's counterarguments are unpersuasive. First, it claims that "Petitioners . . . will not be prevented from prosecuting this Action permanently unless, of course, the Dutch Action finds that under EU law there was no agreement to arbitrate between the parties." Opp. to PI/TRO Motion at 21. "Second, Petitioners do not face any risk collecting the ICSID award, should they ultimately prevail." *Id.* at 22. In other words: NextEra will not be irreparably harmed unless Spain gets the very relief it is actively seeking from the Dutch court. That is precisely why it is necessary for this court to enjoin Spain from pursuing that relief. It is immaterial that the Dutch court has not yet ruled one way or another. "[G]iven the fact that, once the [Dutch] court issues an injunction of the type sought before it, it may very well be too late for [NextEra] ever to find its way back to the American judicial system," anything "less than absolute certainty concerning the [Dutch] court's intentions suffices to support a finding of irreparable injury." *Laker Airways*, 559 F. Supp. at 1137 n.58.

3. Balance of equities

The balance of equities strongly favors NextEra, which faces irreparable harm, while Spain faces only a temporary hold on its ability to pursue certain relief in the Dutch Action— relief that would usurp this court's jurisdiction. The injunction NextEra requests would still permit Spain to litigate the merits of its claims in the Dutch Action. That tailored injunction will

serve both principles of comity and equity by allowing each country's court to evaluate the legal issues presented under its respective laws. *See Laker Airways*, 731 F.2d at 9378; *Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, No. CV-05-411-LRS, 2009 WL 4716037, at *3-4 (E.D. Wash. Dec. 8, 2009).

Spain's sole response is to label the injunction's tailoring a "minor concession" and insist, without any support, that a preliminary injunction will deal "substantial harm to Spanish and American interests." Opp. to PI/TRO Motion at 23. Without more, the court cannot agree.

4. Public interest

Finally, the public interest supports an injunction here, too. As the court explained *supra* section IV.A, it is essential to the continued function of the U.S. courts that they protect their lawful jurisdiction. Moreover, Spain does not dispute that there is a public interest in "encouraging arbitration and the enforcement of international arbitration law as an efficient means of settling disputes." *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-CV-1296 (PKC), 2019 WL 1559173, at *4 (S.D.N.Y. Apr. 9, 2019); *see* Opp. to PI/TRO Motion at 23. Indeed, "the text of § 1650a 'suggest[s] an expectation' on the part of Congress 'that actions to enforce ICSID awards would not be protracted,'" *Micula*, 404 F. Supp. 3d at 283 (quoting *Mobil Cerro*, 863 F.3d at 121), much less permanently halted by collateral attacks in foreign courts.

Spain's contention that "[a]fter the Dutch Action is concluded, this Court would have the benefit of ruling on NextEra's petition with the benefit of the outcome of [that case]" rings totally hollow. Opp. to PI/TRO Motion at 23. If Spain prevails in the Dutch Action, this court would not "have the benefit of ruling on NextEra's petition" at all, as NextEra would be forced to withdraw its suit. The court is thus not moved by Spain's assurances, which verge on disingenuous.

## V.    REMAINING MOTIONS

Two motions remain for the court to address—NextEra's Cross-Motion for Summary

Judgment, ECF No. 70, and Spain's Motion to Strike it, ECF No. 71.

The court will deny Spain's Motion to Strike and allow NextEra's Motion for Summary

Judgment to remain on the docket.  Spain relies principally on *Process & Indus. Devs. Ltd. v.*

*Fed. Republic of Nigeria*, 962 F.3d 576, 579 (D.C. Cir. 2020), which held that a district court

may not, "in considering a petition to confirm [a New York Convention] arbitral award against a

foreign sovereign . . . order the sovereign to brief the merits before resolving a colorable

assertion of immunity."  Besides the fact that the court has now resolved Spain's assertion of

immunity, *supra* Section III, Spain's reliance on that case is misplaced for at least two reasons.

First, as explained *supra* Section IV.B.1—and unlike the New York Convention—the

ICSID Convention requires no merits analysis; authentic awards simply "shall be enforced."  22

U.S.C. § 1650a(a); *see TECO Guatemala*, 414 F. Supp. 3d at 103; *Tidewater*, 2018 WL

6605633, at *6 (Section 1650a "envision[s] no role for this Court beyond ensuring its own

jurisdiction over this action.").  Thus, "[a]fter the complaint is filed and service effected, the

award-creditor may file a motion for judgment on the pleadings . . . or a motion for summary

judgment."  *Mobil Cerro*, 863 F.3d at 118.  An "ICSID award-debtor . . . [is not] permitted to

make substantive challenges to the award."  *Id.*  Consequently, there are not and will not be any

merits to brief.

Second, Spain has nonetheless chosen to assert at least some merits as well as

jurisdictional defenses in its Motion to Dismiss.  "A foreign sovereign remains free to oppose a

confirmation petition" by choosing "to brief immunity and merits issues in a single motion to

dismiss," but by doing so it "may forgo its entitlement to a threshold determination of

immunity."  *Nigeria*, 962 F.3d at 586.  Spain's Motion proffers several reasons why the Award

should not be given full faith and credit even if the ICSID "Tribunal was properly constituted pursuant to a valid arbitration agreement"—i.e., assuming this court has jurisdiction under the FSIA's arbitration exception.  Spain MTD at 42; *see also supra* Section IV.B.1 (rejecting these reasons).  For one, Spain argues that the Award would violate EU law regarding "state aid."  *Id.* at 42-44, 45.  But "[t]he contention that some portion of the Award violates EU law [on state aid] goes to the merits of the ICSID panel's determination."  *Micula*, 404 F. Supp. 3d at 285.  For another, Spain invokes the act of state doctrine as a shield from liability.  But that, too, is "a substantive rather than a jurisdictional defense . . . more appropriately raised in a motion for summary judgment than in a motion to dismiss."  *See United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 204 (D.D.C. 2014).  Having made both "jurisdictional and non-jurisdictional, merits defense[s]" in its Motion to Dismiss, Spain cannot now claim the court is "order[ing] [it] to brief the merits before resolving a colorable assertion of immunity" by allowing NextEra's Cross-Motion to remain on the docket.  *Hulley Enters. Ltd. v. Russian Fed'n*, No. CV 14-1996 (BAH), 2022 WL 1102200, at *1 n.1 (D.D.C. Apr. 13, 2022).

Nonetheless, the court will not rule on NextEra's Motion for Summary Judgment at this time.  This will give Spain a chance to appeal the court's rulings on the other motions, including the court's jurisdictional holdings.  And if the suit reaches the summary judgment stage, this will give Spain "an opportunity to supplement [its] submissions," *id*., with the merits arguments Spain promises, including that "that the award was illegally procured by Petitioners false representations," Spain MTD at 48 n.12.

## VI.    CONCLUSION

For these reasons, the court will DENY Spain's Motion to Dismiss, ECF No. 62; DENY Spain's Motion to Strike, ECF No. 71; DENY NextEra's Motion for Leave to File, ECF No. 75;

and GRANT in part NextEra's Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 78.  Accordingly, the court will ENJOIN Spain:

    (1) from seeking an interlocutory decree or any other relief in the Dutch Action or in other Dutch proceedings requiring NextEra to suspend, hold in abeyance, or withdraw any proceedings before this Court, or that otherwise interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award;

    (2) from pursuing any other foreign litigation that interferes with, obstructs, or delays resolution of NextEra's Petition to Confirm the Award; and

    (3) to withdraw its requests for relief in the Dutch Action requiring NextEra to suspend, hold in abeyance or withdraw proceedings before this Court, including without limitation, at pages 31-33 of the Dutch Writ, Claims (A) through (D) and (L) through (P).

A corresponding order will accompany this Memorandum Opinion.

Date: February 15, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge