ORAL ARGUMENT HELD FEBRUARY 28, 2024
PANEL DECISION ISSUED AUGUST 16, 2024

Nos. 23-7031, 23-7032

In the

# United States Court of Appeals
## for the District of Columbia Circuit

NEXTERA ENERGY GLOBAL HOLDINGS B.V., ET AL.,

*Petitioners-Appellees,*

v.

KINGDOM OF SPAIN,

*Respondent-Appellant,*

9REN HOLDING S.À.R.L.,

*Plaintiff-Appellee,*

v.

KINGDOM OF SPAIN,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
District of Columbia, Case Nos. 1:19-cv-01618-TSC & 1:19-cv-01871-TSC,
Hon. Tanya S. Chutkan, *United States District Judge*

## NEXTERA ENERGY GLOBAL HOLDINGS B.V., ET AL., AND 9REN HOLDING S.À.R.L.'S RESPONSE TO PETITION FOR REHEARING OR REHEARING EN BANC

Timothy G. Nelson
Scott Boisvert
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
New York, NY 10001

Shay Dvoretzky
  *Counsel of Record*
Bradley A. Klein
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioners-Appellees NextEra Energy Global Holdings B.V., et al.
(No. 23-7031), and Plaintiff-Appellee 9REN Holding S.À.R.L. (No. 23-7032)*

*(counsel continued from front cover)*

David Herlihy
ALLEN & OVERY (IRELAND) LLP
53 Merrion Square South, Ste. 201
Dublin, Ireland
D02 PR63

*Counsel for Petitioners-Appellees*
*NextEra Energy Global Holdings B.V.,*
*et al. (No. 23-7031)*

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Ave., NW,
 Ste. 900
Washington, DC 20006

Reginald R. Smith
KING & SPALDING LLP
1100 Louisiana St., Ste 4100
Houston, TX 77002

Thomas C. Childs
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

*Counsel for Plaintiff-Appellee*
*9REN Holding S.À.R.L. (No. 23-7032)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................. iii

GLOSSARY .................................................................................... vi

INTRODUCTION ............................................................................1

STATEMENT OF THE CASE ...........................................................4

    A.    Legal background ................................................................4

    B.    Factual and procedural background ...............................7

ARGUMENT..................................................................................10

I.    The panel's holding that the arbitration exception applies is correct, implicates no conflict with Circuit precedent, and doesn't warrant rehearing. ...........................................................10

    A.    The panel opinion comports with Circuit precedent and the text of § 1605(a)(6). ....................................................10

        1.    The panel correctly concluded that ECT Article 26 is an arbitration agreement made for the benefit of private parties. .......................................................10

        2.    The panel decision doesn't conflict with *Chevron*, *Belize*, or any other decision of this Court. ..........................12

    B.    Spain and the EC's "importance" arguments don't justify rehearing. ..........................................................................14

II.    Spain's forum non conveniens argument is meritless, implicates no circuit conflict, and doesn't warrant rehearing. ................................16

    A.    There is no circuit split about the unavailability of forum non conveniens in ICSID-award-enforcement actions. ...............16

## TABLE OF CONTENTS
(continued)

B.   The panel correctly held that forum non conveniens
     doesn't apply in the ICSID-award-enforcement context............17

C.   Rehearing is pointless because Spain's forum non
     conveniens argument would fail even if the doctrine were
     available in ICSID-award-enforcement actions. ..........................18

CONCLUSION ...................................................................................21

CERTIFICATE OF COMPLIANCE ....................................................22

CERTIFICATE OF SERVICE .............................................................23

ADDENDUM: RULE 26.1 DISCLOSURE STATEMENTS............................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Belize Social Development Ltd. v. Government of Belize*,
  794 F.3d 99 (D.C. Cir. 2015) ................................................................. 2, 3, 12, 13

*BG Group PLC v. Republic of Argentina*,
  572 U.S. 25 (2014) ............................................................................................. 7

*Chevron Corp. v. Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) .................................................................... 2, 3, 12

*Esso Exploration & Production Nigeria Ltd. v.
  Nigerian National Petroleum Corp.*,
  40 F.4th 56 (2d Cir. 2022) ........................................................................ 19, 20

*Figueiredo Ferraz e Engenharia De Projeto Ltda. v. Republic of Peru*,
  665 F.3d 384 (2d Cir. 2011) .................................................................................. 16

*In re Arbitration Between Monegasque De Reassurances
  S.A.M. v. Nak Naftogaz of Ukraine*,
  311 F.3d 488 (2d Cir. 2002) ........................................................................ 16, 19

*LLC SPC Stileks v. Republic of Moldova*,
  985 F.3d 871 (D.C. Cir. 2021) ........................................................ 2, 6, 12, 13, 18

*Melton v. Oy Nautor Ab*,
  161 F.3d 13 (9th Cir. 1998) (unpublished) .......................................................... 16

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017) .................................................................................. 17

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................................. 18

*Republic of Moldova v. Komstroy*,
  ECLI:EU:C:2021:655 (Sept. 2, 2021) ................................................................. 8

*Slovak Republic v. Achmea BV*,
  ECLI:EU:C:2018:158 (Mar. 6, 2018) ................................................................ 8

*TMR Energy Ltd. v. State Property Fund of Ukraine*,
  411 F.3d 296 (D.C. Cir. 2005) ............................................................................ 18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
87 F.4th 510 (D.C. Cir. 2023) .................................................................... 4, 5, 6

STATUTES

Federal Arbitration Act,
9 U.S.C. § 1 *et seq.* ................................................................................. 5, 6, 17

9 U.S.C. § 207 ....................................................................................................6, 17

22 U.S.C. § 1650a................................................................................ 1, 3, 4, 5,
...................................................................................................... 9, 15, 17, 18, 20

Foreign Sovereign Immunities Act
28 U.S.C. §§ 1330, 1602–1611 .................................................... 1, 2, 7,
...................................................................................................... 9, 11, 12, 13

28 U.S.C. § 1605(a)(6) .................................................. 1, 2, 3, 7, 10, 11, 12, 15

OTHER AUTHORITIES

Convention on the Recognition and Enforcement of
Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 3 ................. 6, 16, 17

Convention on the Settlement of Investment Disputes
Between States and Nationals of Other States,
Mar. 18, 1965, 17 U.S.T. 1270 .............................................. 1, 3, 4, 5,
...................................................................................................... 6, 8, 15, 16,
...................................................................................................... 17, 18, 19, 20

art. 41(1) ...............................................................................................4

art. 52 .....................................................................................................8

art. 53 .....................................................................................................8

art. 53(1) ................................................................................................5

art. 54 .....................................................................................................4

art. 54(1) ......................................................................................... 4, 5, 17

Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95................. 1, 2, 3, 6, 7,
...................................................................................................... 8, 10, 11, 12, 13, 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

art. 3(a) ...........................................................................................6

art. 10(1) ..........................................................................................6

art. 26 ....................................................................................... 1, 2, 8,
................................................................................... 9, 10, 11, 13

art. 26(1) ..........................................................................................6

art. 26(3)(a) ....................................................................................10

art. 26(4)(a)(i) ..................................................................................6

ICSID, *Database of ICSID Member States*,
    https://tinyurl.com/mr3djunp ......................................................5

Inter-American Convention on International Commercial Arbitration,
    Jan. 30, 1975, 1438 U.N.T.S. 24530 ...........................................16

International Energy Charter, *The Energy Charter Treaty*,
    https://tinyurl.com/bddswuvv ......................................................6

## GLOSSARY

| | |
|---|---|
| CJEU | Court of Justice of the European Union |
| Convention, or ICSID Convention | 1965 Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 |
| EC | European Commission |
| ECT | Energy Charter Treaty, Dec. 17, 1994, 2080 U.N.T.S. 95 |
| EU | European Union |
| FAA | Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611 |
| ICSID | International Centre for Settlement of Investment Disputes |
| New York Convention | Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 3 |
| Panama Convention | Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, 1438 U.N.T.S. 245 |

## INTRODUCTION

For five years, NextEra and 9REN have been trying to enforce ICSID awards against Spain in what should be straightforward, summary proceedings under 22 U.S.C. § 1650a and the ICSID Convention. But Spain and the EC now seek en banc review, forcing further delay for another chance to evade their treaty commitments. The Court should deny rehearing. The panel decision is correct, and neither question presented implicates any conflict with the decisions of this Court or another court of appeals. And Spain and the EC's "importance" arguments merely reflect their efforts to renege on their ECT commitments and Spain's ICSID Convention obligations.

I.     The panel opinion comports with Circuit precedent and the plain text of the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6). Under § 1605(a)(6), courts can hear actions against foreign sovereigns "to confirm an award made pursuant to" an arbitration agreement "made by the foreign state with or for the benefit of a private party." As the panel correctly explained, Article 26 of the ECT is an arbitration agreement among Spain and other ECT members "for the benefit of" private parties. Op. 22-25. Spain doesn't dispute that it's bound by the ECT and that the ECT is an agreement with other member states to arbitrate with *some* investors. It just thinks

- 1 -

Article 26 doesn't cover disputes between EU member states and investors from other EU member states. But that's a classic scope question for the arbitral tribunal, not a jurisdictional argument about the supposed nonexistence of an agreement. *See, e.g.*, *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877-78 (D.C. Cir. 2021).

Spain claims the panel opinion contravenes *Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015), which, it says, requires an agreement between the sovereign and the investor. That's incorrect. *Chevron* didn't address whether the treaty there was made "for the benefit of a private party" under § 1605(a)(6), or hold that the only way to satisfy the arbitration exception is with an agreement between the sovereign and the investor. To be sure, Article 26 *also* represents a standing offer to arbitrate with investors, which investors can accept by initiating arbitration. But "[u]nder the plain terms of the FSIA's arbitration exception, either type of agreement" suffices. Op. 22.

Spain also claims the panel opinion conflicts with *Belize Social Development Ltd. v. Government of Belize*, 794 F.3d 99 (D.C. Cir. 2015), which treated an issue about a prime minister's capacity to enter into a bilateral commercial contract—not an investment treaty like the ECT—as an existence question. *Belize* says nothing about investment treaties, which are distinct

types of "contract[s] … between nations" made "'for the benefit' of" third parties. Op. 22. Whether Belize's prime minister had capacity to sign a contract doesn't help Spain, which concededly had the capacity to and did ratify the ECT, thus satisfying § 1605(a)(6).

Spain and the EC also claim the panel's decision is a novel ruling that will affect many treaties. That's an implicit concession that the opinion reaches an issue *Belize* and *Chevron* did not—whether an agreement to arbitrate for the benefit of investors satisfies § 1605(a)(6)—and thus doesn't conflict with those decisions. Moreover, whether the opinion affects other treaties must be assessed case-by-case based on other treaties' language. In any event, the supposed concern is simply an argument that courts should allow sovereigns to violate treaties and ignore their arbitration agreements.

**II.** Rehearing isn't warranted on Spain's forum non conveniens argument, either. Spain claims a circuit split over whether the doctrine is ever available in actions to enforce international arbitration awards. But neither the Second nor the Ninth Circuit has addressed whether forum non conveniens can apply to *ICSID*-award-enforcement actions, like NextEra's and 9REN's. The ICSID Convention and its special implementing statute, 22 U.S.C. § 1650a, differ substantially from the treaties and federal law the

Second and Ninth Circuits have considered, in ways that make clear there is no room for forum non conveniens in ICSID-award-enforcement actions. Regardless, the question makes no difference. Even if the doctrine *could* apply to ICSID-award-enforcement actions, dismissal here would be error: among other things, Spain hasn't pointed to any alternative forum, and the EC has affirmatively argued that there's no alternative forum *in Europe*. Br. 11.

## STATEMENT OF THE CASE

### A.  Legal background

**1.**    The ICSID Convention is an international treaty that establishes an arbitration mechanism for resolving disputes between private investors and foreign sovereigns, plus a regime for reviewing and enforcing resulting arbitral awards. *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 513-16 (D.C. Cir. 2023). The Convention established ICSID, an organization based in Washington, DC, with authority to convene arbitration tribunals to resolve investor–state disputes. *Id.* at 514. Under the Convention, the tribunals "shall be the judge of [their] own competence"—meaning they decide questions about their jurisdiction. ICSID Convention art. 41(1).

To enforce an ICSID award, an investor must initiate proceedings in a contracting state's courts. *Id.* art. 54. Contracting-state courts "shall

recognize" the award "as binding and enforce the pecuniary obligations imposed by that award … as if it were a final judgment of a court in that State." *Id.* art. 54(1). Contracting states also must "abide by and comply" with awards, which are binding and not "subject to any other remedy except those provided for in [the] Convention." *Id.* art. 53(1). Thus, "[t]he only route for setting aside" an award "is through the ICSID Convention's annulment process." *Valores*, 87 F.4th at 515.

The United States and Spain are ICSID Convention members. ICSID, *Database of ICSID Member States*, https://tinyurl.com/mr3djunp. Congress implemented the United States' ICSID Convention obligations in 22 U.S.C. § 1650a, directing that an ICSID award "shall be enforced" and "given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." "Preventing relitigation of issues already decided is the keystone of the full faith and credit obligation." *Valores*, 87 F.4th at 519. ICSID awards are "entitled to full faith and credit—even as to questions of jurisdiction"—when the ICSID tribunal "fully and fairly litigated and finally decided" those questions. *Id.* at 520.

In addition, Congress directed that the Federal Arbitration Act (FAA) "shall not apply to enforcement of [ICSID] awards." 22 U.S.C. § 1650a. Thus,

the FAA's grounds for vacating arbitral awards—like "where the award was tainted by fraud, corruption, or misconduct by the arbitrator"—don't apply. *Valores*, 87 F.4th at 520. By expressly "removing ICSID awards from the FAA's purview," Congress made "the scope of judicial review of ICSID awards" even more limited than "the 'extremely limited' review available under the FAA" for many other international arbitral awards, including those falling under the New York Convention. *Id.*; *see* 9 U.S.C. § 207.

**2.**    This case involves the ECT, an investment treaty designed "to encourage and protect cross-border investment in the energy industry." *Stileks*, 985 F.3d at 874. ECT members—including Spain, Luxembourg, the Netherlands, the EU, and many other EU and non-EU nations—agreed to treat each other's investors "fair[ly] and equitabl[y]." ECT art. 10(1); International Energy Charter, *The Energy Charter Treaty*, https://tinyurl.com/bddswuvv.

ECT member states also gave their "unconditional consent to the submission of a dispute [with Investors of another Contracting Party] to international arbitration." ECT art. 26(1), (3)(a). That includes ICSID arbitration, if "the Contracting Party of the Investor and the Contracting Party party to the dispute are both parties to the ICSID Convention." ECT art. 26(4)(a)(i).

Investment treaties like the ECT are unique agreements. They are contracts "between nations," *BG Group PLC v. Republic of Argentina*, 572 U.S. 25, 37 (2014), entered into "for the benefit of" third parties—namely, investors from other member states, Op. 22-25. They also extend a "standing offer" to arbitrate to member-states' investors. Op. 23-24. Investors can accept the offer by initiating arbitration. Op. 23.

**3.**     This case involves the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), which authorizes suits to enforce international arbitral awards against foreign sovereigns. Section 1605(a)(6) provides that a foreign sovereign shall not be immune from actions brought "to confirm an award made pursuant to" an arbitration agreement "made by the foreign state with or for the benefit of a private party." The exception requires "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." Op. 20-21.

### B.     Factual and procedural background

**1.**     Between 2007 and 2012, Spanish law and Spanish officials lured NextEra and 9REN to invest nearly €1 billion to construct, develop, and operate solar power projects in Spain based on stable long-term tariffs and premiums, which Spain later abolished. So in 2014 and 2015, NextEra and

9REN invoked the ECT's ICSID arbitration provision to seek redress for Spain's ECT violations. Op. 10.

During arbitration proceedings, Spain claimed that the ICSID tribunals lacked jurisdiction. Pointing to *Slovak Republic v. Achmea BV*, ECLI:EU:C:2018:158 (Mar. 6, 2018), a 2018 CJEU decision involving arbitration under the Netherlands–Slovakia Bilateral Investment Treaty, Spain claimed the ECT isn't applicable to disputes between EU members and nationals of EU states. *See* Op. 10-12.

The ICSID tribunals rejected Spain's arguments and issued final awards requiring Spain to pay NextEra more than €290.6 million and to pay 9REN more than €41.8 million. Op. 13-14.

Spain appealed to ICSID annulment committees (the only way to disturb ICSID awards, ICSID Convention arts. 52-53), to invalidate the awards. Spain repeated its argument that the ECT doesn't apply to intra-EU disputes, pointing to *Achmea* and a 2021 CJEU decision, *Republic of Moldova v. Komstroy*, ECLI:EU:C:2021:655 (Sept. 2, 2021), holding that under EU law, Article 26 of the ECT "must be interpreted as not being applicable" to intra-EU disputes. Op. 12. The annulment committees rejected Spain's arguments. Op. 14-15.

**2.**     In 2019, NextEra and 9REN initiated actions in the district court under § 1650a to enforce their awards. Spain moved to dismiss, arguing, among other things, that the cases should be dismissed because Spain was immune from suit, and based on forum non conveniens. The court rejected Spain's arguments, finding jurisdiction under the arbitration exception and declining to dismiss under forum non conveniens.

**3.**     This Court unanimously agreed.

The panel concluded that the district court had jurisdiction under the arbitration exception. Op. 29. By providing "unconditional consent" in ECT Article 26 to arbitrate disputes with member states' investors, Spain entered into an arbitration agreement with other member states "for the benefit of" private parties. Op. 23-25. Spain's argument that Article 26 doesn't reach intra-EU disputes, the panel explained, presented a question about the agreement's "*scope* … not its *existence*." Op. 25. And scope questions aren't jurisdictional questions under the FSIA. Op. 25-29.

The panel rejected Spain's forum non conveniens argument as foreclosed by circuit precedent. Op. 29.

## ARGUMENT

**I.    The panel's holding that the arbitration exception applies is correct, implicates no conflict with Circuit precedent, and doesn't warrant rehearing.**

    **A.    The panel opinion comports with Circuit precedent and the text of § 1605(a)(6).**

        **1.    The panel correctly concluded that ECT Article 26 is an arbitration agreement made for the benefit of private parties.**

        **a.**    The arbitration exception authorizes suits against foreign sovereigns "to confirm an award made pursuant to" an arbitration agreement "made by the foreign state with or for the benefit of a private party." 28 U.S.C. § 1605(a)(6). As the panel correctly held, Article 26 is an arbitration agreement "made by" Spain "for the benefit of … private part[ies]." Op. 20-23. Article 26 represents member states' "unconditional consent" to arbitrate with nationals from other member states. ECT art. 26(3)(a); *see* Op. 23-25. Put simply, ECT members agreed with each other to arbitrate with investors.

    To be sure, Article 26 *also* makes investors a standing offer to arbitrate; investors can accept by initiating arbitration. Op. 22-23. Doing so creates a further agreement between the sovereign and the investor. But regardless, Article 26 remains an arbitration agreement among nations for the benefit of

private investors. And "[u]nder the plain terms of the FSIA's arbitration exception, either type of agreement" confers jurisdiction. Op. 22.

b.      Spain doesn't dispute that it's bound by the ECT. Spain also concedes that "[a] treaty is a 'contract *between nations*,'" and that "Article 26 is a treaty provision 'for the benefit of a private party.'" Pet. 11. It nonetheless insists that Article 26—though an agreement—isn't an *arbitration* agreement, because "the sovereigns do not agree to submit their own disputes between themselves to arbitration," and the arbitration exception requires an arbitration agreement between the sovereign and the investors seeking to enforce the award. *Id.* But § 1605(a)(6) expressly contemplates an arbitration agreement "for the benefit of," not just *with*, a private party. Article 26 says that "each Contracting Party hereby gives its unconditional consent" to arbitrate covered disputes. If that's not an agreement to arbitrate, it's hard to see what else it could be. Spain doesn't explain why that agreement doesn't satisfy § 1605(a)(6)'s plain text.

The EC, for its part, suggests (Br. 7) that an arbitration agreement under § 1605(a)(6) can't be for the benefit of just *any* private party—it must be for the benefit of the investors seeking enforcement. But the arbitration exception requires only that the agreement be made "for the benefit of *a* private

- 11 -

party," 28 U.S.C. § 1605(a)(6) (emphasis added)—not "for the benefit of the private party seeking to enforce the award."

> ### 2. The panel decision doesn't conflict with *Chevron*, *Belize*, or any other decision of this Court.

Spain argues that the panel decision conflicts with *Chevron* and *Belize*. That's wrong. As the panel recognized, "disputes about the scope of an arbitration agreement, such as whether a binding arbitration agreement covers a particular dispute, are not jurisdictional questions under the FSIA." Op. 21. That holding aligns with *Chevron*. There, Ecuador argued that it "never agreed to arbitrate with Chevron," because the offer to arbitrate in the investment treaty didn't "encompass[] Chevron's breach of contract claims." 795 F.3d at 205. But that wasn't a jurisdictional argument about whether an arbitration agreement existed. It was a "dispute over whether the lawsuits were 'investments'" under the treaty, and thus a scope question. *Id.* at 206. Moreover, *Chevron* didn't address whether the treaty there was made "for the benefit of a private party" under § 1605(a)(6).

Likewise, in *Stileks*, Moldova argued that, although "it agreed to arbitrate certain disputes" by ratifying the ECT, the relevant investments and investor weren't covered. 985 F.3d at 877-78. Those were also scope

questions about how to interpret the ECT, not "jurisdictional question[s] under the FSIA." *Id.* at 878.

Spain's intra-EU argument is about the scope of Article 26. Spain agrees that under Article 26, it must arbitrate with *some* investors. Op. 25. Spain just thinks that Article 26 doesn't extend to disputes with *EU* investors. That argument is about the ECT's interpretation—its scope—and "not its *existence*." *Id.* Indeed, *the EC* thinks the question concerns the "interpretation of the [ECT] as it applies in intra-EU relations." Br. 3.

Spain also claims that the panel opinion conflicts with *Belize*, where the Court viewed Belize's argument that its prime minister lacked authority to sign a commercial contract with an arbitration clause as a question about the existence of the agreement. 794 F.3d at 100-03. But *Belize* didn't involve, and thus did not address, an investment treaty, like the ECT, with an express agreement among member states to arbitrate with investors. As the panel explained, *Belize* instead involved "an arbitration agreement directly 'with'" a private company, but "[a]n arbitration provision in an investment treaty works differently." Op. 22. Spain doesn't argue that it lacked capacity to agree to Article 26; it just disputes that provision's scope.

**B.    Spain and the EC's "importance" arguments don't justify rehearing.**

Spain and the EC's claim that the importance of this case warrants rehearing lacks merit. It's time for Spain to acknowledge its treaty violations and honor the awards.

**1.** Spain says the panel opinion might prevent courts from "determining whether parties agreed to arbitrate." Pet. 16. But the panel opinion determined that there *was* an arbitration agreement based on the ECT's plain terms. Spain just doesn't like the ruling. Moreover, investment treaties are a particular kind of arbitration agreement, and the opinion deals only with *one* investment treaty—the ECT—which "suppl[ies] the requisite state consent to arbitration." Op. 28. The opinion doesn't necessarily apply to all cases in which a party challenges the existence of an arbitration agreement, or even to other investment treaties.

**2.** The EC says the panel opinion "invites a deluge of award enforcement actions against EU Member States," because arbitral tribunals "have issued more than 30 intra-EU awards against EU Member States under the [ECT]." Br. 10-11. But thirty cases isn't a "deluge." Regardless, that number—which includes 24 awards against Spain—simply reflects a

concerning pattern of Spanish-led treaty violations and "noncompliance with investor-state awards." Op. 14. Spain's serial treaty violations, not the panel opinion, caused Spain's liabilities.

3.    Spain emphasizes that this case involves a foreign sovereign and European interests, and claims that enforcing the awards might require it to violate EU law by paying "state aid." Pet. 16-18. But EU law doesn't apply in the United States, the only place NextEra and 9REN have asked this Court to recognize their awards, and the rule under the laws *Congress* passed is that a sovereign isn't immune where a treaty contains an agreement to arbitrate, 28 U.S.C. § 1605(a)(6), and ICSID awards must be enforced, 22 U.S.C. § 1650a. The EU–Spain dynamic presents an issue for Spain and the EU to resolve between themselves within EU borders. Moreover, though the awards were issued more than five years ago, the EC hasn't found that Spain's payment of the awards would be unlawful state aid—and, in fact, it can approve payment. *See* Pet. 17-18; *Blasket* Oral Arg. Tr. 48:5-51:7.

## II.    Spain's forum non conveniens argument is meritless, implicates no circuit conflict, and doesn't warrant rehearing.

### A.    There is no circuit split about the unavailability of forum non conveniens in ICSID-award-enforcement actions.

Spain claims that this Court has split from the Second and Ninth Circuits in holding that forum non conveniens is unavailable in proceedings to confirm international arbitral awards. Pet. 18. But the question isn't whether the doctrine is *generally* or *universally* available in actions to enforce international arbitral awards. The question is whether the doctrine is available in *ICSID*-award-enforcement proceedings. There is no circuit conflict on that question, because neither the Second nor the Ninth Circuit has addressed it. *In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 491 (2d Cir. 2002), considered the doctrine under the New York Convention, and *Figueiredo Ferraz e Engenharia De Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 392-93 (2d Cir. 2011), involved the Panama Convention. The unpublished decision in *Melton v. Oy Nautor Ab*, 161 F.3d 13 (9th Cir. 1998), involved the New York Convention, and neither the awardholder nor the court addressed whether that Convention precluded application of forum non conveniens.

**B.    The panel correctly held that forum non conveniens doesn't apply in the ICSID-award-enforcement context.**

**1.**    Forum non conveniens doesn't apply in actions to enforce ICSID awards under § 1650a. Nothing in the ICSID Convention or § 1650a leaves room for forum non conveniens dismissal of an ICSID-award-enforcement action. To the contrary, the Convention *requires* enforcement in contracting-state courts, ICSID art. 54(1), and § 1650a *requires* courts to give "full faith and credit" to awards as if they were final judgments. And judicial review under § 1650a is extremely limited: even jurisdictional questions cannot be relitigated so long as they were "fully and fairly litigated and finally decided" by the ICSID tribunal. Subjecting ICSID-award-enforcement actions to discretionary dismissals would conflict with § 1650a's terms and undermine its purpose of providing "a uniform enforcement procedure throughout the United States." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 118 (2d Cir. 2017). Awards governed by the New York Convention, in contrast, are subject to the FAA and various grounds for non-recognition. 9 U.S.C. § 207; *supra* pp. 5-6.

And, of course, Spain and the EC point to no decision finding that the doctrine can apply to ICSID-award-enforcement actions, much less a

decision considering what makes ICSID awards unique. Indeed, Spain has never tried—not in the district court, not before the panel, and not in its re-hearing petition—to reconcile its forum non conveniens argument with § 1650a or the ICSID Convention.

**2.**     What's more, *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), is correct, including in the ICSID-award-en-forcement context. There is no adequate alternate forum "where the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). And when a party seeks to enforce an arbitral award in the United States, the remedy is to convert the award into a judgment that can be executed against property in the United States. No foreign forum can provide that remedy, however, because "only a court of the United States … may attach the commercial property of a foreign nation located in the United States." *TMR*, 411 F.3d at 303-04; *accord Stileks*, 985 F.3d at 876 n.1.

**C.     Rehearing is pointless because Spain's forum non conveniens argument would fail even if the doctrine were available in ICSID-award-enforcement actions.**

Even putting aside the lack of circuit conflict and Spain's failure to make ICSID-specific arguments, forum non conveniens wouldn't permit

dismissal here even if it were theoretically available in ICSID-award-enforcement proceedings. There's thus no reason to grant rehearing.

*First*, "[a] forum non conveniens motion may not be granted unless an adequate alternate forum exists." *Monegasque*, 311 F.3d at 499. But there isn't one here. Spain doesn't even *suggest* another forum—instead, it claims the awards are unenforceable. Pet. 16-17; *see* EC Br. 2. Indeed, Spain initiated lawsuits overseas to stop the investors from enforcing their awards anywhere in the world. JA820. The EC agrees, explaining that EU-law principles "require EU courts to refuse to enforce intra-EU arbitral awards." Br. 11. Rather than showing that another forum can "provide substantial justice" to NextEra and 9REN, *Monegasque*, 311 F.3d at 499, Spain and the EC seek to ensure that *no* forum can.

*Second*, the public and private interest factors also weigh against dismissal. The private factors "include logistical considerations of convenience, such as the ease of access to sources of evidence." *Esso Exploration & Production Nigeria Ltd. v. Nigerian National Petroleum Corp.*, 40 F.4th 56, 71 (2d Cir. 2022). But discovery and evidentiary proceedings aren't necessary given "the summary nature of a proceeding to confirm an [ICSID] arbitral award." *Id.* As for public factors, if there's any "risk of court congestion in the chosen

forum," it's because of Spain's efforts to avoid payment. *Id.* There is a local interest in having the cases proceed in district court, because ICSID is based in Washington, DC, and "the law governing the dispute,"—U.S. law—also disfavors dismissal. *Id.* And enforcement under § 1650a is straightforward: there are no "conflict-of-law or foreign law issues" involved, and empaneling a jury is unnecessary. *Id.*

In short, it makes no difference whether forum non conveniens could potentially be available in ICSID-award-enforcement proceedings: it couldn't justify dismissal here.

## CONCLUSION

The Court should deny rehearing.

Dated: October 16, 2024

Respectfully submitted,

*/s/ Shay Dvoretzky*

Timothy G. Nelson
Scott Boisvert
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
New York, NY 10001

Shay Dvoretzky
  *Counsel of Record*
Bradley A. Klein
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioners-Appellees NextEra Energy Global Holdings B.V., et al.
(No. 23-7031), and Plaintiff-Appellee 9REN Holding S.À.R.L. (No. 23-7032)*

David Herlihy
ALLEN & OVERY (IRELAND) LLP
53 Merrion Square South, Ste. 201
Dublin, Ireland
D02 PR63

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Ave., NW,
  Ste. 900
Washington, DC 20006

*Counsel for Petitioners-Appellees
NextEra Energy Global Holdings B.V.,
et al. (No. 23-7031)*

Reginald R. Smith
KING & SPALDING LLP
1100 Louisiana St., Ste 4100
Houston, TX 77002

Thomas C. Childs
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036

*Counsel for Plaintiff-Appellee
9REN Holding S.À.R.L. (No. 23-7032)*

- 21 -

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2) and (e) because, as calculated by Microsoft Word, it contains 3,900 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1). I also certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: October 16, 2024                Respectfully submitted,

                                       */s/ Shay Dvoretzky*
                                       Shay Dvoretzky
                                       SKADDEN, ARPS, SLATE,
                                         MEAGHER & FLOM LLP
                                       1440 New York Ave., NW
                                       Washington, DC 20005
                                       202-371-7000
                                       shay.dvoretzky@skadden.com

                                       *Counsel for Petitioners-Appellees*
                                       *NextEra Energy Global Holdings B.V.,*
                                       *et al. (No. 23-7031); Plaintiff-Appellee*
                                       *9REN Holding S.À.R.L. (No. 23-7032)*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(b) and Circuit Rule 25(f), I hereby certify that on October 16, 2024, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and the CM/ECF system will accomplish service.

Dated: October 16, 2024

Respectfully submitted,

/s/ Shay Dvoretzky
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

Counsel for Petitioners-Appellees
 NextEra Energy Global Holdings B.V.,
  et al. (No. 23-7031); Plaintiff-Appellee
   9REN Holding S.À.R.L. (No. 23-7032)

## ADDENDUM: RULE 26.1 DISCLOSURE STATEMENTS

NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. were the petitioners before the district court and are the Appellees before this Court. NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. are wholly owned by the publicly held corporation NextEra Energy, Inc. No publicly held corporation holds 10% or more of NextEra Energy, Inc.'s stock, which is traded on the New York Stock Exchange under the symbol NEE.

9REN Holding S.À.R.L. (9REN) was the plaintiff before the district court and is the Appellee before this Court. 9REN is wholly owned by FR Solar Luxco JVCo S.C.A., a Luxembourg-based corporation held in part by U.S.-based private equity firm, First Reserve Corporation. No publicly held corporation holds 10% or more of 9REN's stock, which is not traded on a U.S. exchange.