# EXHIBIT 4

7.6.2016    EN    Official Journal of the European Union    C 202/47

# CONSOLIDATED VERSION

# OF

# THE TREATY ON THE FUNCTIONING OF THE

# EUROPEAN UNION

7.6.2016          EN          Official Journal of the European Union          C 202/49

# PREAMBLE

HIS MAJESTY THE KING OF THE BELGIANS, THE PRESIDENT OF THE FEDERAL REPUBLIC OF GERMANY, THE PRESIDENT OF THE FRENCH REPUBLIC, THE PRESIDENT OF THE ITALIAN REPUBLIC, HER ROYAL HIGHNESS THE GRAND DUCHESS OF LUXEMBOURG, HER MAJESTY THE QUEEN OF THE NETHERLANDS, (¹)

DETERMINED to lay the foundations of an ever closer union among the peoples of Europe,

RESOLVED to ensure the economic and social progress of their States by common action to eliminate the barriers which divide Europe,

AFFIRMING as the essential objective of their efforts the constant improvements of the living and working conditions of their peoples,

RECOGNISING that the removal of existing obstacles calls for concerted action in order to guarantee steady expansion, balanced trade and fair competition,

ANXIOUS to strengthen the unity of their economies and to ensure their harmonious development by reducing the differences existing between the various regions and the backwardness of the less favoured regions,

DESIRING to contribute, by means of a common commercial policy, to the progressive abolition of restrictions on international trade,

INTENDING to confirm the solidarity which binds Europe and the overseas countries and desiring to ensure the development of their prosperity, in accordance with the principles of the Charter of the United Nations,

RESOLVED by thus pooling their resources to preserve and strengthen peace and liberty, and calling upon the other peoples of Europe who share their ideal to join in their efforts,

DETERMINED to promote the development of the highest possible level of knowledge for their peoples through a wide access to education and through its continuous updating,

and to this end HAVE DESIGNATED as their Plenipotentiaries:

*(List of plenipotentiaries not reproduced)*

WHO, having exchanged their full powers, found in good and due form, have agreed as follows.

---

(¹) The Republic of Bulgaria, the Czech Republic, the Kingdom of Denmark, the Republic of Estonia, Ireland, the Hellenic Republic, the Kingdom of Spain, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the Republic of Austria, the Republic of Poland, the Portuguese Republic, Romania, the Republic of Slovenia, the Slovak Republic, the Republic of Finland, the Kingdom of Sweden and the United Kingdom of Great Britain and Northern Ireland have since become members of the European Union.

# PART ONE
## PRINCIPLES

### *Article 1*

1. This Treaty organises the functioning of the Union and determines the areas of, delimitation of, and arrangements for exercising its competences.

2. This Treaty and the Treaty on European Union constitute the Treaties on which the Union is founded. These two Treaties, which have the same legal value, shall be referred to as 'the Treaties'.

## TITLE I
### CATEGORIES AND AREAS OF UNION COMPETENCE

### *Article 2*

1. When the Treaties confer on the Union exclusive competence in a specific area, only the Union may legislate and adopt legally binding acts, the Member States being able to do so themselves only if so empowered by the Union or for the implementation of Union acts.

2. When the Treaties confer on the Union a competence shared with the Member States in a specific area, the Union and the Member States may legislate and adopt legally binding acts in that area. The Member States shall exercise their competence to the extent that the Union has not exercised its competence. The Member States shall again exercise their competence to the extent that the Union has decided to cease exercising its competence.

3. The Member States shall coordinate their economic and employment policies within arrangements as determined by this Treaty, which the Union shall have competence to provide.

4. The Union shall have competence, in accordance with the provisions of the Treaty on European Union, to define and implement a common foreign and security policy, including the progressive framing of a common defence policy.

5. In certain areas and under the conditions laid down in the Treaties, the Union shall have competence to carry out actions to support, coordinate or supplement the actions of the Member States, without thereby superseding their competence in these areas.

Legally binding acts of the Union adopted on the basis of the provisions of the Treaties relating to these areas shall not entail harmonisation of Member States' laws or regulations.

6. The scope of and arrangements for exercising the Union's competences shall be determined by the provisions of the Treaties relating to each area.

*Article 3*

1.    The Union shall have exclusive competence in the following areas:

(a)  customs union;

(b)  the establishing of the competition rules necessary for the functioning of the internal market;

(c)  monetary policy for the Member States whose currency is the euro;

(d)  the conservation of marine biological resources under the common fisheries policy;

(e)  common commercial policy.

2.    The Union shall also have exclusive competence for the conclusion of an international agreement when its conclusion is provided for in a legislative act of the Union or is necessary to enable the Union to exercise its internal competence, or in so far as its conclusion may affect common rules or alter their scope.

*Article 4*

1.    The Union shall share competence with the Member States where the Treaties confer on it a competence which does not relate to the areas referred to in Articles 3 and 6.

2.    Shared competence between the Union and the Member States applies in the following principal areas:

(a)  internal market;

(b)  social policy, for the aspects defined in this Treaty;

(c)  economic, social and territorial cohesion;

(d)  agriculture and fisheries, excluding the conservation of marine biological resources;

(e)  environment;

(f)  consumer protection;

(g)  transport;

(h)  trans-European networks;

(i)  energy;

(j) area of freedom, security and justice;

(k) common safety concerns in public health matters, for the aspects defined in this Treaty.

3.    In the areas of research, technological development and space, the Union shall have competence to carry out activities, in particular to define and implement programmes; however, the exercise of that competence shall not result in Member States being prevented from exercising theirs.

4.    In the areas of development cooperation and humanitarian aid, the Union shall have competence to carry out activities and conduct a common policy; however, the exercise of that competence shall not result in Member States being prevented from exercising theirs.

*Article 5*

1.    The Member States shall coordinate their economic policies within the Union. To this end, the Council shall adopt measures, in particular broad guidelines for these policies.

Specific provisions shall apply to those Member States whose currency is the euro.

2.    The Union shall take measures to ensure coordination of the employment policies of the Member States, in particular by defining guidelines for these policies.

3.    The Union may take initiatives to ensure coordination of Member States' social policies.

*Article 6*

The Union shall have competence to carry out actions to support, coordinate or supplement the actions of the Member States. The areas of such action shall, at European level, be:

(a) protection and improvement of human health;

(b) industry;

(c) culture;

(d) tourism;

(e) education, vocational training, youth and sport;

7.6.2016          EN          Official Journal of the European Union          C 202/53

(f)  civil protection;

(g)  administrative cooperation.

# TITLE II

## PROVISIONS HAVING GENERAL APPLICATION

### Article 7

The Union shall ensure consistency between its policies and activities, taking all of its objectives into account and in accordance with the principle of conferral of powers.

### Article 8

(ex Article 3(2) TEC) [1]

In all its activities, the Union shall aim to eliminate inequalities, and to promote equality, between men and women.

### Article 9

In defining and implementing its policies and activities, the Union shall take into account requirements linked to the promotion of a high level of employment, the guarantee of adequate social protection, the fight against social exclusion, and a high level of education, training and protection of human health.

### Article 10

In defining and implementing its policies and activities, the Union shall aim to combat discrimination based on sex, racial or ethnic origin, religion or belief, disability, age or sexual orientation.

### Article 11

(ex Article 6 TEC)

Environmental protection requirements must be integrated into the definition and implementation of the Union's policies and activities, in particular with a view to promoting sustainable development.

---

[1]  These references are merely indicative. For more ample information, please refer to the tables of equivalences between the old and the new numbering of the Treaties.

## Article 12

(ex Article 153(2) TEC)

Consumer protection requirements shall be taken into account in defining and implementing other Union policies and activities.

## Article 13

In formulating and implementing the Union's agriculture, fisheries, transport, internal market, research and technological development and space policies, the Union and the Member States shall, since animals are sentient beings, pay full regard to the welfare requirements of animals, while respecting the legislative or administrative provisions and customs of the Member States relating in particular to religious rites, cultural traditions and regional heritage.

## Article 14

(ex Article 16 TEC)

Without prejudice to Article 4 of the Treaty on European Union or to Articles 93, 106 and 107 of this Treaty, and given the place occupied by services of general economic interest in the shared values of the Union as well as their role in promoting social and territorial cohesion, the Union and the Member States, each within their respective powers and within the scope of application of the Treaties, shall take care that such services operate on the basis of principles and conditions, particularly economic and financial conditions, which enable them to fulfil their missions. The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall establish these principles and set these conditions without prejudice to the competence of Member States, in compliance with the Treaties, to provide, to commission and to fund such services.

## Article 15

(ex Article 255 TEC)

1.    In order to promote good governance and ensure the participation of civil society, the Union's institutions, bodies, offices and agencies shall conduct their work as openly as possible.

2.    The European Parliament shall meet in public, as shall the Council when considering and voting on a draft legislative act.

3.    Any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, shall have a right of access to documents of the Union's institutions, bodies, offices and agencies, whatever their medium, subject to the principles and the conditions to be defined in accordance with this paragraph.

General principles and limits on grounds of public or private interest governing this right of access to documents shall be determined by the European Parliament and the Council, by means of regulations, acting in accordance with the ordinary legislative procedure.

Each institution, body, office or agency shall ensure that its proceedings are transparent and shall elaborate in its own Rules of Procedure specific provisions regarding access to its documents, in accordance with the regulations referred to in the second subparagraph.

The Court of Justice of the European Union, the European Central Bank and the European Investment Bank shall be subject to this paragraph only when exercising their administrative tasks.

The European Parliament and the Council shall ensure publication of the documents relating to the legislative procedures under the terms laid down by the regulations referred to in the second subparagraph.

### Article 16

(ex Article 286 TEC)

1.    Everyone has the right to the protection of personal data concerning them.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall lay down the rules relating to the protection of individuals with regard to the processing of personal data by Union institutions, bodies, offices and agencies, and by the Member States when carrying out activities which fall within the scope of Union law, and the rules relating to the free movement of such data. Compliance with these rules shall be subject to the control of independent authorities.

The rules adopted on the basis of this Article shall be without prejudice to the specific rules laid down in Article 39 of the Treaty on European Union.

### Article 17

1.    The Union respects and does not prejudice the status under national law of churches and religious associations or communities in the Member States.

2.    The Union equally respects the status under national law of philosophical and non-confessional organisations.

3.    Recognising their identity and their specific contribution, the Union shall maintain an open, transparent and regular dialogue with these churches and organisations.

# PART TWO

## NON-DISCRIMINATION AND CITIZENSHIP OF THE UNION

### *Article 18*

(ex Article 12 TEC)

Within the scope of application of the Treaties, and without prejudice to any special provisions contained therein, any discrimination on grounds of nationality shall be prohibited.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may adopt rules designed to prohibit such discrimination.

### *Article 19*

(ex Article 13 TEC)

1.    Without prejudice to the other provisions of the Treaties and within the limits of the powers conferred by them upon the Union, the Council, acting unanimously in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, may take appropriate action to combat discrimination based on sex, racial or ethnic origin, religion or belief, disability, age or sexual orientation.

2.    By way of derogation from paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may adopt the basic principles of Union incentive measures, excluding any harmonisation of the laws and regulations of the Member States, to support action taken by the Member States in order to contribute to the achievement of the objectives referred to in paragraph 1.

### *Article 20*

(ex Article 17 TEC)

1.    Citizenship of the Union is hereby established. Every person holding the nationality of a Member State shall be a citizen of the Union. Citizenship of the Union shall be additional to and not replace national citizenship.

2.    Citizens of the Union shall enjoy the rights and be subject to the duties provided for in the Treaties. They shall have, *inter alia*:

(a)  the right to move and reside freely within the territory of the Member States;

(b)  the right to vote and to stand as candidates in elections to the European Parliament and in municipal elections in their Member State of residence, under the same conditions as nationals of that State;

(c) the right to enjoy, in the territory of a third country in which the Member State of which they are nationals is not represented, the protection of the diplomatic and consular authorities of any Member State on the same conditions as the nationals of that State;

(d) the right to petition the European Parliament, to apply to the European Ombudsman, and to address the institutions and advisory bodies of the Union in any of the Treaty languages and to obtain a reply in the same language.

These rights shall be exercised in accordance with the conditions and limits defined by the Treaties and by the measures adopted thereunder.

## Article 21

### (ex Article 18 TEC)

1.    Every citizen of the Union shall have the right to move and reside freely within the territory of the Member States, subject to the limitations and conditions laid down in the Treaties and by the measures adopted to give them effect.

2.    If action by the Union should prove necessary to attain this objective and the Treaties have not provided the necessary powers, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may adopt provisions with a view to facilitating the exercise of the rights referred to in paragraph 1.

3.    For the same purposes as those referred to in paragraph 1 and if the Treaties have not provided the necessary powers, the Council, acting in accordance with a special legislative procedure, may adopt measures concerning social security or social protection. The Council shall act unanimously after consulting the European Parliament.

## Article 22

### (ex Article 19 TEC)

1.    Every citizen of the Union residing in a Member State of which he is not a national shall have the right to vote and to stand as a candidate at municipal elections in the Member State in which he resides, under the same conditions as nationals of that State. This right shall be exercised subject to detailed arrangements adopted by the Council, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament; these arrangements may provide for derogations where warranted by problems specific to a Member State.

2.    Without prejudice to Article 223(1) and to the provisions adopted for its implementation, every citizen of the Union residing in a Member State of which he is not a national shall have the right to vote and to stand as a candidate in elections to the European Parliament in the Member State in which he resides, under the same conditions as nationals of that State. This right shall be exercised subject to detailed arrangements adopted by the Council, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament; these arrangements may provide for derogations where warranted by problems specific to a Member State.

## Article 23

(ex Article 20 TEC)

Every citizen of the Union shall, in the territory of a third country in which the Member State of which he is a national is not represented, be entitled to protection by the diplomatic or consular authorities of any Member State, on the same conditions as the nationals of that State. Member States shall adopt the necessary provisions and start the international negotiations required to secure this protection.

The Council, acting in accordance with a special legislative procedure and after consulting the European Parliament, may adopt directives establishing the coordination and cooperation measures necessary to facilitate such protection.

## Article 24

(ex Article 21 TEC)

The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall adopt the provisions for the procedures and conditions required for a citizens' initiative within the meaning of Article 11 of the Treaty on European Union, including the minimum number of Member States from which such citizens must come.

Every citizen of the Union shall have the right to petition the European Parliament in accordance with Article 227.

Every citizen of the Union may apply to the Ombudsman established in accordance with Article 228.

Every citizen of the Union may write to any of the institutions or bodies referred to in this Article or in Article 13 of the Treaty on European Union in one of the languages mentioned in Article 55(1) of the Treaty on European Union and have an answer in the same language.

## Article 25

(ex Article 22 TEC)

The Commission shall report to the European Parliament, to the Council and to the Economic and Social Committee every three years on the application of the provisions of this Part. This report shall take account of the development of the Union.

On this basis, and without prejudice to the other provisions of the Treaties, the Council, acting unanimously in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, may adopt provisions to strengthen or to add to the rights listed in Article 20(2). These provisions shall enter into force after their approval by the Member States in accordance with their respective constitutional requirements.

# PART THREE
## UNION POLICIES AND INTERNAL ACTIONS

### TITLE I
#### THE INTERNAL MARKET

#### *Article 26*
(ex Article 14 TEC)

1.    The Union shall adopt measures with the aim of establishing or ensuring the functioning of the internal market, in accordance with the relevant provisions of the Treaties.

2.    The internal market shall comprise an area without internal frontiers in which the free movement of goods, persons, services and capital is ensured in accordance with the provisions of the Treaties.

3.    The Council, on a proposal from the Commission, shall determine the guidelines and conditions necessary to ensure balanced progress in all the sectors concerned.

#### *Article 27*
(ex Article 15 TEC)

When drawing up its proposals with a view to achieving the objectives set out in Article 26, the Commission shall take into account the extent of the effort that certain economies showing differences in development will have to sustain for the establishment of the internal market and it may propose appropriate provisions.

If these provisions take the form of derogations, they must be of a temporary nature and must cause the least possible disturbance to the functioning of the internal market.

### TITLE II
#### FREE MOVEMENT OF GOODS

#### *Article 28*
(ex Article 23 TEC)

1.    The Union shall comprise a customs union which shall cover all trade in goods and which shall involve the prohibition between Member States of customs duties on imports and exports and of all charges having equivalent effect, and the adoption of a common customs tariff in their relations with third countries.

2.    The provisions of Article 30 and of Chapter 3 of this Title shall apply to products originating in Member States and to products coming from third countries which are in free circulation in Member States.

## Article 29

(ex Article 24 TEC)

Products coming from a third country shall be considered to be in free circulation in a Member State if the import formalities have been complied with and any customs duties or charges having equivalent effect which are payable have been levied in that Member State, and if they have not benefited from a total or partial drawback of such duties or charges.

## CHAPTER 1

## THE CUSTOMS UNION

## Article 30

(ex Article 25 TEC)

Customs duties on imports and exports and charges having equivalent effect shall be prohibited between Member States. This prohibition shall also apply to customs duties of a fiscal nature.

## Article 31

(ex Article 26 TEC)

Common Customs Tariff duties shall be fixed by the Council on a proposal from the Commission.

## Article 32

(ex Article 27 TEC)

In carrying out the tasks entrusted to it under this Chapter the Commission shall be guided by:

(a)  the need to promote trade between Member States and third countries;

(b)  developments in conditions of competition within the Union in so far as they lead to an improvement in the competitive capacity of undertakings;

(c)  the requirements of the Union as regards the supply of raw materials and semi-finished goods; in this connection the Commission shall take care to avoid distorting conditions of competition between Member States in respect of finished goods;

(d)  the need to avoid serious disturbances in the economies of Member States and to ensure rational development of production and an expansion of consumption within the Union.

CHAPTER 2

CUSTOMS COOPERATION

*Article 33*

(ex Article 135 TEC)

Within the scope of application of the Treaties, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall take measures in order to strengthen customs cooperation between Member States and between the latter and the Commission.

CHAPTER 3

PROHIBITION OF QUANTITATIVE RESTRICTIONS BETWEEN MEMBER STATES

*Article 34*

(ex Article 28 TEC)

Quantitative restrictions on imports and all measures having equivalent effect shall be prohibited between Member States.

*Article 35*

(ex Article 29 TEC)

Quantitative restrictions on exports, and all measures having equivalent effect, shall be prohibited between Member States.

*Article 36*

(ex Article 30 TEC)

The provisions of Articles 34 and 35 shall not preclude prohibitions or restrictions on imports, exports or goods in transit justified on grounds of public morality, public policy or public security; the protection of health and life of humans, animals or plants; the protection of national treasures possessing artistic, historic or archaeological value; or the protection of industrial and commercial property. Such prohibitions or restrictions shall not, however, constitute a means of arbitrary discrimination or a disguised restriction on trade between Member States.

*Article 37*

(ex Article 31 TEC)

1.    Member States shall adjust any State monopolies of a commercial character so as to ensure that no discrimination regarding the conditions under which goods are procured and marketed exists between nationals of Member States.

The provisions of this Article shall apply to any body through which a Member State, in law or in fact, either directly or indirectly supervises, determines or appreciably influences imports or exports between Member States. These provisions shall likewise apply to monopolies delegated by the State to others.

2.    Member States shall refrain from introducing any new measure which is contrary to the principles laid down in paragraph 1 or which restricts the scope of the articles dealing with the prohibition of customs duties and quantitative restrictions between Member States.

3.    If a State monopoly of a commercial character has rules which are designed to make it easier to dispose of agricultural products or obtain for them the best return, steps should be taken in applying the rules contained in this Article to ensure equivalent safeguards for the employment and standard of living of the producers concerned.

# TITLE III

## AGRICULTURE AND FISHERIES

### Article 38

(ex Article 32 TEC)

1.    The Union shall define and implement a common agriculture and fisheries policy.

The internal market shall extend to agriculture, fisheries and trade in agricultural products. 'Agricultural products' means the products of the soil, of stockfarming and of fisheries and products of first-stage processing directly related to these products. References to the common agricultural policy or to agriculture, and the use of the term 'agricultural', shall be understood as also referring to fisheries, having regard to the specific characteristics of this sector.

2.    Save as otherwise provided in Articles 39 to 44, the rules laid down for the establishment and functioning of the internal market shall apply to agricultural products.

3.    The products subject to the provisions of Articles 39 to 44 are listed in Annex I.

4.    The operation and development of the internal market for agricultural products must be accompanied by the establishment of a common agricultural policy.

### Article 39

(ex Article 33 TEC)

1.    The objectives of the common agricultural policy shall be:

(a)  to increase agricultural productivity by promoting technical progress and by ensuring the rational development of agricultural production and the optimum utilisation of the factors of production, in particular labour;

(b)  thus to ensure a fair standard of living for the agricultural community, in particular by increasing the individual earnings of persons engaged in agriculture;

(c)  to stabilise markets;

(d)  to assure the availability of supplies;

(e)  to ensure that supplies reach consumers at reasonable prices.

2.    In working out the common agricultural policy and the special methods for its application, account shall be taken of:

(a)  the particular nature of agricultural activity, which results from the social structure of agriculture and from structural and natural disparities between the various agricultural regions;

(b)  the need to effect the appropriate adjustments by degrees;

(c)  the fact that in the Member States agriculture constitutes a sector closely linked with the economy as a whole.

## Article  40

(ex Article  34 TEC)

1.    In order to attain the objectives set out in Article  39, a common organisation of agricultural markets shall be established.

This organisation shall take one of the following forms, depending on the product concerned:

(a)  common rules on competition;

(b)  compulsory coordination of the various national market organisations;

(c)  a European market organisation.

2.    The common organisation established in accordance with paragraph  1 may include all measures required to attain the objectives set out in Article  39, in particular regulation of prices, aids for the production and marketing of the various products, storage and carryover arrangements and common machinery for stabilising imports or exports.

The common organisation shall be limited to pursuit of the objectives set out in Article  39 and shall exclude any discrimination between producers or consumers within the Union.

Any common price policy shall be based on common criteria and uniform methods of calculation.

3.    In order to enable the common organisation referred to in paragraph 1 to attain its objectives, one or more agricultural guidance and guarantee funds may be set up.

## Article 41

*(ex Article 35 TEC)*

To enable the objectives set out in Article 39 to be attained, provision may be made within the framework of the common agricultural policy for measures such as:

(a) an effective coordination of efforts in the spheres of vocational training, of research and of the dissemination of agricultural knowledge; this may include joint financing of projects or institutions;

(b) joint measures to promote consumption of certain products.

## Article 42

*(ex Article 36 TEC)*

The provisions of the Chapter relating to rules on competition shall apply to production of and trade in agricultural products only to the extent determined by the European Parliament and the Council within the framework of Article 43(2) and in accordance with the procedure laid down therein, account being taken of the objectives set out in Article 39.

The Council, on a proposal from the Commission, may authorise the granting of aid:

(a) for the protection of enterprises handicapped by structural or natural conditions;

(b) within the framework of economic development programmes.

## Article 43

*(ex Article 37 TEC)*

1.    The Commission shall submit proposals for working out and implementing the common agricultural policy, including the replacement of the national organisations by one of the forms of common organisation provided for in Article 40(1), and for implementing the measures specified in this Title.

These proposals shall take account of the interdependence of the agricultural matters mentioned in this Title.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall establish the common organisation of agricultural markets provided for in Article 40(1) and the other provisions necessary for the pursuit of the objectives of the common agricultural policy and the common fisheries policy.

3.    The Council, on a proposal from the Commission, shall adopt measures on fixing prices, levies, aid and quantitative limitations and on the fixing and allocation of fishing opportunities.

4.    In accordance with paragraph 2, the national market organisations may be replaced by the common organisation provided for in Article 40(1) if:

(a) the common organisation offers Member States which are opposed to this measure and which have an organisation of their own for the production in question equivalent safeguards for the employment and standard of living of the producers concerned, account being taken of the adjustments that will be possible and the specialisation that will be needed with the passage of time;

(b) such an organisation ensures conditions for trade within the Union similar to those existing in a national market.

5.    If a common organisation for certain raw materials is established before a common organisation exists for the corresponding processed products, such raw materials as are used for processed products intended for export to third countries may be imported from outside the Union.

### Article 44

(ex Article 38 TEC)

Where in a Member State a product is subject to a national market organisation or to internal rules having equivalent effect which affect the competitive position of similar production in another Member State, a countervailing charge shall be applied by Member States to imports of this product coming from the Member State where such organisation or rules exist, unless that State applies a countervailing charge on export.

The Commission shall fix the amount of these charges at the level required to redress the balance; it may also authorise other measures, the conditions and details of which it shall determine.

## TITLE IV

### FREE MOVEMENT OF PERSONS, SERVICES AND CAPITAL

#### CHAPTER 1

#### WORKERS

### Article 45

(ex Article 39 TEC)

1.    Freedom of movement for workers shall be secured within the Union.

2.    Such freedom of movement shall entail the abolition of any discrimination based on nationality between workers of the Member States as regards employment, remuneration and other conditions of work and employment.

3.    It shall entail the right, subject to limitations justified on grounds of public policy, public security or public health:

(a) to accept offers of employment actually made;

(b) to move freely within the territory of Member States for this purpose;

(c) to stay in a Member State for the purpose of employment in accordance with the provisions governing the employment of nationals of that State laid down by law, regulation or administrative action;

(d) to remain in the territory of a Member State after having been employed in that State, subject to conditions which shall be embodied in regulations to be drawn up by the Commission.

4.    The provisions of this Article shall not apply to employment in the public service.

## Article 46

### (ex Article 40 TEC)

The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, issue directives or make regulations setting out the measures required to bring about freedom of movement for workers, as defined in Article 45, in particular:

(a) by ensuring close cooperation between national employment services;

(b) by abolishing those administrative procedures and practices and those qualifying periods in respect of eligibility for available employment, whether resulting from national legislation or from agreements previously concluded between Member States, the maintenance of which would form an obstacle to liberalisation of the movement of workers;

(c) by abolishing all such qualifying periods and other restrictions provided for either under national legislation or under agreements previously concluded between Member States as imposed on workers of other Member States conditions regarding the free choice of employment other than those imposed on workers of the State concerned;

(d) by setting up appropriate machinery to bring offers of employment into touch with applications for employment and to facilitate the achievement of a balance between supply and demand in the employment market in such a way as to avoid serious threats to the standard of living and level of employment in the various regions and industries.

## Article 47

(ex Article 41 TEC)

Member States shall, within the framework of a joint programme, encourage the exchange of young workers.

## Article 48

(ex Article 42 TEC)

The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure, adopt such measures in the field of social security as are necessary to provide freedom of movement for workers; to this end, they shall make arrangements to secure for employed and self-employed migrant workers and their dependants:

(a) aggregation, for the purpose of acquiring and retaining the right to benefit and of calculating the amount of benefit, of all periods taken into account under the laws of the several countries;

(b) payment of benefits to persons resident in the territories of Member States.

Where a member of the Council declares that a draft legislative act referred to in the first subparagraph would affect important aspects of its social security system, including its scope, cost or financial structure, or would affect the financial balance of that system, it may request that the matter be referred to the European Council. In that case, the ordinary legislative procedure shall be suspended. After discussion, the European Council shall, within four months of this suspension, either:

(a) refer the draft back to the Council, which shall terminate the suspension of the ordinary legislative procedure; or

(b) take no action or request the Commission to submit a new proposal; in that case, the act originally proposed shall be deemed not to have been adopted.

## CHAPTER 2

## RIGHT OF ESTABLISHMENT

## Article 49

(ex Article 43 TEC)

Within the framework of the provisions set out below, restrictions on the freedom of establishment of nationals of a Member State in the territory of another Member State shall be prohibited. Such prohibition shall also apply to restrictions on the setting-up of agencies, branches or subsidiaries by nationals of any Member State established in the territory of any Member State.

Freedom of establishment shall include the right to take up and pursue activities as self-employed persons and to set up and manage undertakings, in particular companies or firms within the meaning of the second paragraph of Article 54, under the conditions laid down for its own nationals by the law of the country where such establishment is effected, subject to the provisions of the Chapter relating to capital.

### Article 50

(ex Article 44 TEC)

1. In order to attain freedom of establishment as regards a particular activity, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall act by means of directives.

2. The European Parliament, the Council and the Commission shall carry out the duties devolving upon them under the preceding provisions, in particular:

(a) by according, as a general rule, priority treatment to activities where freedom of establishment makes a particularly valuable contribution to the development of production and trade;

(b) by ensuring close cooperation between the competent authorities in the Member States in order to ascertain the particular situation within the Union of the various activities concerned;

(c) by abolishing those administrative procedures and practices, whether resulting from national legislation or from agreements previously concluded between Member States, the maintenance of which would form an obstacle to freedom of establishment;

(d) by ensuring that workers of one Member State employed in the territory of another Member State may remain in that territory for the purpose of taking up activities therein as self-employed persons, where they satisfy the conditions which they would be required to satisfy if they were entering that State at the time when they intended to take up such activities;

(e) by enabling a national of one Member State to acquire and use land and buildings situated in the territory of another Member State, in so far as this does not conflict with the principles laid down in Article 39(2);

(f) by effecting the progressive abolition of restrictions on freedom of establishment in every branch of activity under consideration, both as regards the conditions for setting up agencies, branches or subsidiaries in the territory of a Member State and as regards the subsidiaries in the territory of a Member State and as regards the conditions governing the entry of personnel belonging to the main establishment into managerial or supervisory posts in such agencies, branches or subsidiaries;

(g) by coordinating to the necessary extent the safeguards which, for the protection of the interests of members and others, are required by Member States of companies or firms within the meaning of the second paragraph of Article 54 with a view to making such safeguards equivalent throughout the Union;

(h) by satisfying themselves that the conditions of establishment are not distorted by aids granted by Member States.

### Article 51

(ex Article 45 TEC)

The provisions of this Chapter shall not apply, so far as any given Member State is concerned, to activities which in that State are connected, even occasionally, with the exercise of official authority.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may rule that the provisions of this Chapter shall not apply to certain activities.

## Article 52

### (ex Article 46 TEC)

1.    The provisions of this Chapter and measures taken in pursuance thereof shall not prejudice the applicability of provisions laid down by law, regulation or administrative action providing for special treatment for foreign nationals on grounds of public policy, public security or public health.

2.    The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure, issue directives for the coordination of the abovementioned provisions.

## Article 53

### (ex Article 47 TEC)

1.    In order to make it easier for persons to take up and pursue activities as self-employed persons, the European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure, issue directives for the mutual recognition of diplomas, certificates and other evidence of formal qualifications and for the coordination of the provisions laid down by law, regulation or administrative action in Member States concerning the taking-up and pursuit of activities as self-employed persons.

2.    In the case of the medical and allied and pharmaceutical professions, the progressive abolition of restrictions shall be dependent upon coordination of the conditions for their exercise in the various Member States.

## Article 54

### (ex Article 48 TEC)

Companies or firms formed in accordance with the law of a Member State and having their registered office, central administration or principal place of business within the Union shall, for the purposes of this Chapter, be treated in the same way as natural persons who are nationals of Member States.

'Companies or firms' means companies or firms constituted under civil or commercial law, including cooperative societies, and other legal persons governed by public or private law, save for those which are non-profit-making.

## Article 55

### (ex Article 294 TEC)

Member States shall accord nationals of the other Member States the same treatment as their own nationals as regards participation in the capital of companies or firms within the meaning of Article 54, without prejudice to the application of the other provisions of the Treaties.

CHAPTER 3

SERVICES

## Article 56

(ex Article 49 TEC)

Within the framework of the provisions set out below, restrictions on freedom to provide services within the Union shall be prohibited in respect of nationals of Member States who are established in a Member State other than that of the person for whom the services are intended.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may extend the provisions of the Chapter to nationals of a third country who provide services and who are established within the Union.

## Article 57

(ex Article 50 TEC)

Services shall be considered to be 'services' within the meaning of the Treaties where they are normally provided for remuneration, in so far as they are not governed by the provisions relating to freedom of movement for goods, capital and persons.

'Services' shall in particular include:

(a) activities of an industrial character;

(b) activities of a commercial character;

(c) activities of craftsmen;

(d) activities of the professions.

Without prejudice to the provisions of the Chapter relating to the right of establishment, the person providing a service may, in order to do so, temporarily pursue his activity in the Member State where the service is provided, under the same conditions as are imposed by that State on its own nationals.

## Article 58

(ex Article 51 TEC)

1.    Freedom to provide services in the field of transport shall be governed by the provisions of the Title relating to transport.

2.    The liberalisation of banking and insurance services connected with movements of capital shall be effected in step with the liberalisation of movement of capital.

## Article 59

(ex Article 52 TEC)

1.    In order to achieve the liberalisation of a specific service, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall issue directives.

2.    As regards the directives referred to in paragraph 1, priority shall as a general rule be given to those services which directly affect production costs or the liberalisation of which helps to promote trade in goods.

## Article 60

(ex Article 53 TEC)

The Member States shall endeavour to undertake the liberalisation of services beyond the extent required by the directives issued pursuant to Article 59(1), if their general economic situation and the situation of the economic sector concerned so permit.

To this end, the Commission shall make recommendations to the Member States concerned.

## Article 61

(ex Article 54 TEC)

As long as restrictions on freedom to provide services have not been abolished, each Member State shall apply such restrictions without distinction on grounds of nationality or residence to all persons providing services within the meaning of the first paragraph of Article 56.

## Article 62

(ex Article 55 TEC)

The provisions of Articles 51 to 54 shall apply to the matters covered by this Chapter.

CHAPTER 4

CAPITAL AND PAYMENTS

## Article 63

(ex Article 56 TEC)

1.    Within the framework of the provisions set out in this Chapter, all restrictions on the movement of capital between Member States and between Member States and third countries shall be prohibited.

2.    Within the framework of the provisions set out in this Chapter, all restrictions on payments between Member States and between Member States and third countries shall be prohibited.

## Article 64

(ex Article 57 TEC)

1.    The provisions of Article 63 shall be without prejudice to the application to third countries of any restrictions which exist on 31 December 1993 under national or Union law adopted in respect of the movement of capital to or from third countries involving direct investment – including in real estate – establishment, the provision of financial services or the admission of securities to capital markets. In respect of restrictions existing under national law in Bulgaria, Estonia and Hungary, the relevant date shall be 31 December 1999. In respect of restrictions existing under national law in Croatia, the relevant date shall be 31 December 2002.

2.    Whilst endeavouring to achieve the objective of free movement of capital between Member States and third countries to the greatest extent possible and without prejudice to the other Chapters of the Treaties, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt the measures on the movement of capital to or from third countries involving direct investment – including investment in real estate – establishment, the provision of financial services or the admission of securities to capital markets.

3.    Notwithstanding paragraph 2, only the Council, acting in accordance with a special legislative procedure, may unanimously, and after consulting the European Parliament, adopt measures which constitute a step backwards in Union law as regards the liberalisation of the movement of capital to or from third countries.

## Article 65

(ex Article 58 TEC)

1.    The provisions of Article 63 shall be without prejudice to the right of Member States:

(a)  to apply the relevant provisions of their tax law which distinguish between taxpayers who are not in the same situation with regard to their place of residence or with regard to the place where their capital is invested;

(b)  to take all requisite measures to prevent infringements of national law and regulations, in particular in the field of taxation and the prudential supervision of financial institutions, or to lay down procedures for the declaration of capital movements for purposes of administrative or statistical information, or to take measures which are justified on grounds of public policy or public security.

2.    The provisions of this Chapter shall be without prejudice to the applicability of restrictions on the right of establishment which are compatible with the Treaties.

3.    The measures and procedures referred to in paragraphs 1 and 2 shall not constitute a means of arbitrary discrimination or a disguised restriction on the free movement of capital and payments as defined in Article 63.

4.    In the absence of measures pursuant to Article 64(3), the Commission or, in the absence of a Commission decision within three months from the request of the Member State concerned, the Council, may adopt a decision stating that restrictive tax measures adopted by a Member State concerning one or more third countries are to be considered compatible with the Treaties in so far as they are justified by one of the objectives of the Union and compatible with the proper functioning of the internal market. The Council shall act unanimously on application by a Member State.

### Article 66

(ex Article 59 TEC)

Where, in exceptional circumstances, movements of capital to or from third countries cause, or threaten to cause, serious difficulties for the operation of economic and monetary union, the Council, on a proposal from the Commission and after consulting the European Central Bank, may take safeguard measures with regard to third countries for a period not exceeding six months if such measures are strictly necessary.

# TITLE V

## AREA OF FREEDOM, SECURITY AND JUSTICE

### CHAPTER 1

### GENERAL PROVISIONS

### Article 67

(ex Article 61 TEC and ex Article 29 TEU)

1.    The Union shall constitute an area of freedom, security and justice with respect for fundamental rights and the different legal systems and traditions of the Member States.

2.    It shall ensure the absence of internal border controls for persons and shall frame a common policy on asylum, immigration and external border control, based on solidarity between Member States, which is fair towards third-country nationals. For the purpose of this Title, stateless persons shall be treated as third-country nationals.

3.    The Union shall endeavour to ensure a high level of security through measures to prevent and combat crime, racism and xenophobia, and through measures for coordination and cooperation between police and judicial authorities and other competent authorities, as well as through the mutual recognition of judgments in criminal matters and, if necessary, through the approximation of criminal laws.

4.    The Union shall facilitate access to justice, in particular through the principle of mutual recognition of judicial and extrajudicial decisions in civil matters.

## Article 68

The European Council shall define the strategic guidelines for legislative and operational planning within the area of freedom, security and justice.

## Article 69

National Parliaments ensure that the proposals and legislative initiatives submitted under Chapters 4 and 5 comply with the principle of subsidiarity, in accordance with the arrangements laid down by the Protocol on the application of the principles of subsidiarity and proportionality.

## Article 70

Without prejudice to Articles 258, 259 and 260, the Council may, on a proposal from the Commission, adopt measures laying down the arrangements whereby Member States, in collaboration with the Commission, conduct objective and impartial evaluation of the implementation of the Union policies referred to in this Title by Member States' authorities, in particular in order to facilitate full application of the principle of mutual recognition. The European Parliament and national Parliaments shall be informed of the content and results of the evaluation.

## Article 71

(ex Article 36 TEU)

A standing committee shall be set up within the Council in order to ensure that operational cooperation on internal security is promoted and strengthened within the Union. Without prejudice to Article 240, it shall facilitate coordination of the action of Member States' competent authorities. Representatives of the Union bodies, offices and agencies concerned may be involved in the proceedings of this committee. The European Parliament and national Parliaments shall be kept informed of the proceedings.

## Article 72

(ex Article 64(1) TEC and ex Article 33 TEU)

This Title shall not affect the exercise of the responsibilities incumbent upon Member States with regard to the maintenance of law and order and the safeguarding of internal security.

## Article 73

It shall be open to Member States to organise between themselves and under their responsibility such forms of cooperation and coordination as they deem appropriate between the competent departments of their administrations responsible for safeguarding national security.

## Article 74

(ex Article 66 TEC)

The Council shall adopt measures to ensure administrative cooperation between the relevant departments of the Member States in the areas covered by this Title, as well as between those departments and the Commission. It shall act on a Commission proposal, subject to Article 76, and after consulting the European Parliament.

## Article 75

(ex Article 60 TEC)

Where necessary to achieve the objectives set out in Article 67, as regards preventing and combating terrorism and related activities, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall define a framework for administrative measures with regard to capital movements and payments, such as the freezing of funds, financial assets or economic gains belonging to, or owned or held by, natural or legal persons, groups or non-State entities.

The Council, on a proposal from the Commission, shall adopt measures to implement the framework referred to in the first paragraph.

The acts referred to in this Article shall include necessary provisions on legal safeguards.

## Article 76

The acts referred to in Chapters 4 and 5, together with the measures referred to in Article 74 which ensure administrative cooperation in the areas covered by these Chapters, shall be adopted:

(a) on a proposal from the Commission, or

(b) on the initiative of a quarter of the Member States.

## CHAPTER 2

## POLICIES ON BORDER CHECKS, ASYLUM AND IMMIGRATION

## Article 77

(ex Article 62 TEC)

1.    The Union shall develop a policy with a view to:

(a) ensuring the absence of any controls on persons, whatever their nationality, when crossing internal borders;

(b) carrying out checks on persons and efficient monitoring of the crossing of external borders;

(c) the gradual introduction of an integrated management system for external borders.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures concerning:

(a) the common policy on visas and other short-stay residence permits;

(b) the checks to which persons crossing external borders are subject;

(c) the conditions under which nationals of third countries shall have the freedom to travel within the Union for a short period;

(d) any measure necessary for the gradual establishment of an integrated management system for external borders;

(e) the absence of any controls on persons, whatever their nationality, when crossing internal borders.

3.    If action by the Union should prove necessary to facilitate the exercise of the right referred to in Article 20(2)(a), and if the Treaties have not provided the necessary powers, the Council, acting in accordance with a special legislative procedure, may adopt provisions concerning passports, identity cards, residence permits or any other such document. The Council shall act unanimously after consulting the European Parliament.

4.    This Article shall not affect the competence of the Member States concerning the geographical demarcation of their borders, in accordance with international law.

### Article 78

(ex Articles 63, points 1 and 2, and 64(2) TEC)

1.    The Union shall develop a common policy on asylum, subsidiary protection and temporary protection with a view to offering appropriate status to any third-country national requiring international protection and ensuring compliance with the principle of *non-refoulement*. This policy must be in accordance with the Geneva Convention of 28 July 1951 and the Protocol of 31 January 1967 relating to the status of refugees, and other relevant treaties.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures for a common European asylum system comprising:

(a) a uniform status of asylum for nationals of third countries, valid throughout the Union;

(b) a uniform status of subsidiary protection for nationals of third countries who, without obtaining European asylum, are in need of international protection;

(c) a common system of temporary protection for displaced persons in the event of a massive inflow;

(d) common procedures for the granting and withdrawing of uniform asylum or subsidiary protection status;

(e) criteria and mechanisms for determining which Member State is responsible for considering an application for asylum or subsidiary protection;

(f) standards concerning the conditions for the reception of applicants for asylum or subsidiary protection;

(g) partnership and cooperation with third countries for the purpose of managing inflows of people applying for asylum or subsidiary or temporary protection.

3.   In the event of one or more Member States being confronted by an emergency situation characterised by a sudden inflow of nationals of third countries, the Council, on a proposal from the Commission, may adopt provisional measures for the benefit of the Member State(s) concerned. It shall act after consulting the European Parliament.

## Article 79

(ex Article 63, points 3 and 4, TEC)

1.   The Union shall develop a common immigration policy aimed at ensuring, at all stages, the efficient management of migration flows, fair treatment of third-country nationals residing legally in Member States, and the prevention of, and enhanced measures to combat, illegal immigration and trafficking in human beings.

2.   For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures in the following areas:

(a) the conditions of entry and residence, and standards on the issue by Member States of long-term visas and residence permits, including those for the purpose of family reunification;

(b) the definition of the rights of third-country nationals residing legally in a Member State, including the conditions governing freedom of movement and of residence in other Member States;

(c) illegal immigration and unauthorised residence, including removal and repatriation of persons residing without authorisation;

(d) combating trafficking in persons, in particular women and children.

3.   The Union may conclude agreements with third countries for the readmission to their countries of origin or provenance of third-country nationals who do not or who no longer fulfil the conditions for entry, presence or residence in the territory of one of the Member States.

4.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish measures to provide incentives and support for the action of Member States with a view to promoting the integration of third-country nationals residing legally in their territories, excluding any harmonisation of the laws and regulations of the Member States.

5.    This Article shall not affect the right of Member States to determine volumes of admission of third-country nationals coming from third countries to their territory in order to seek work, whether employed or self-employed.

## Article 80

The policies of the Union set out in this Chapter and their implementation shall be governed by the principle of solidarity and fair sharing of responsibility, including its financial implications, between the Member States. Whenever necessary, the Union acts adopted pursuant to this Chapter shall contain appropriate measures to give effect to this principle.

### CHAPTER 3

### JUDICIAL COOPERATION IN CIVIL MATTERS

## Article 81

(ex Article 65 TEC)

1.    The Union shall develop judicial cooperation in civil matters having cross-border implications, based on the principle of mutual recognition of judgments and of decisions in extrajudicial cases. Such cooperation may include the adoption of measures for the approximation of the laws and regulations of the Member States.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures, particularly when necessary for the proper functioning of the internal market, aimed at ensuring:

(a) the mutual recognition and enforcement between Member States of judgments and of decisions in extrajudicial cases;

(b) the cross-border service of judicial and extrajudicial documents;

(c) the compatibility of the rules applicable in the Member States concerning conflict of laws and of jurisdiction;

(d) cooperation in the taking of evidence;

(e) effective access to justice;

(f) the elimination of obstacles to the proper functioning of civil proceedings, if necessary by promoting the compatibility of the rules on civil procedure applicable in the Member States;

(g) the development of alternative methods of dispute settlement;

(h) support for the training of the judiciary and judicial staff.

3.    Notwithstanding paragraph 2, measures concerning family law with cross-border implications shall be established by the Council, acting in accordance with a special legislative procedure. The Council shall act unanimously after consulting the European Parliament.

The Council, on a proposal from the Commission, may adopt a decision determining those aspects of family law with cross-border implications which may be the subject of acts adopted by the ordinary legislative procedure. The Council shall act unanimously after consulting the European Parliament.

The proposal referred to in the second subparagraph shall be notified to the national Parliaments. If a national Parliament makes known its opposition within six months of the date of such notification, the decision shall not be adopted. In the absence of opposition, the Council may adopt the decision.

CHAPTER 4

JUDICIAL COOPERATION IN CRIMINAL MATTERS

*Article 82*

(ex Article 31 TEU)

1.    Judicial cooperation in criminal matters in the Union shall be based on the principle of mutual recognition of judgments and judicial decisions and shall include the approximation of the laws and regulations of the Member States in the areas referred to in paragraph 2 and in Article 83.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures to:

(a) lay down rules and procedures for ensuring recognition throughout the Union of all forms of judgments and judicial decisions;

(b) prevent and settle conflicts of jurisdiction between Member States;

(c) support the training of the judiciary and judicial staff;

(d) facilitate cooperation between judicial or equivalent authorities of the Member States in relation to proceedings in criminal matters and the enforcement of decisions.

2.    To the extent necessary to facilitate mutual recognition of judgments and judicial decisions and police and judicial cooperation in criminal matters having a cross-border dimension, the European Parliament and the Council may, by means of directives adopted in accordance with the ordinary legislative procedure, establish minimum rules. Such rules shall take into account the differences between the legal traditions and systems of the Member States.

They shall concern:

(a)  mutual admissibility of evidence between Member States;

(b)  the rights of individuals in criminal procedure;

(c)  the rights of victims of crime;

(d)  any other specific aspects of criminal procedure which the Council has identified in advance by a decision; for the adoption of such a decision, the Council shall act unanimously after obtaining the consent of the European Parliament.

Adoption of the minimum rules referred to in this paragraph  shall not prevent Member States from maintaining or introducing a higher level of protection for individuals.

3.    Where a member of the Council considers that a draft directive as referred to in paragraph  2 would affect fundamental aspects of its criminal justice system, it may request that the draft directive be referred to the European Council. In that case, the ordinary legislative procedure shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council, which shall terminate the suspension of the ordinary legislative procedure.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft directive concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article  20(2) of the Treaty on European Union and Article  329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

## Article  83

### (ex Article  31 TEU)

1.    The European Parliament and the Council may, by means of directives adopted in accordance with the ordinary legislative procedure, establish minimum rules concerning the definition of criminal offences and sanctions in the areas of particularly serious crime with a cross-border dimension resulting from the nature or impact of such offences or from a special need to combat them on a common basis.

These areas of crime are the following: terrorism, trafficking in human beings and sexual exploitation of women and children, illicit drug trafficking, illicit arms trafficking, money laundering, corruption, counterfeiting of means of payment, computer crime and organised crime.

On the basis of developments in crime, the Council may adopt a decision identifying other areas of crime that meet the criteria specified in this paragraph. It shall act unanimously after obtaining the consent of the European Parliament.

2.    If the approximation of criminal laws and regulations of the Member States proves essential to ensure the effective implementation of a Union policy in an area which has been subject to harmonisation measures, directives may establish minimum rules with regard to the definition of criminal offences and sanctions in the area concerned. Such directives shall be adopted by the same ordinary or special legislative procedure as was followed for the adoption of the harmonisation measures in question, without prejudice to Article 76.

3.    Where a member of the Council considers that a draft directive as referred to in paragraph 1 or 2 would affect fundamental aspects of its criminal justice system, it may request that the draft directive be referred to the European Council. In that case, the ordinary legislative procedure shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council, which shall terminate the suspension of the ordinary legislative procedure.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft directive concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

*Article 84*

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish measures to promote and support the action of Member States in the field of crime prevention, excluding any harmonisation of the laws and regulations of the Member States.

*Article 85*

(ex Article 31 TEU)

1.    Eurojust's mission shall be to support and strengthen coordination and cooperation between national investigating and prosecuting authorities in relation to serious crime affecting two or more Member States or requiring a prosecution on common bases, on the basis of operations conducted and information supplied by the Member States' authorities and by Europol.

C 202/82    EN    Official Journal of the European Union    7.6.2016

In this context, the European Parliament and the Council, by means of regulations adopted in accordance with the ordinary legislative procedure, shall determine Eurojust's structure, operation, field of action and tasks. These tasks may include:

(a) the initiation of criminal investigations, as well as proposing the initiation of prosecutions conducted by competent national authorities, particularly those relating to offences against the financial interests of the Union;

(b) the coordination of investigations and prosecutions referred to in point (a);

(c) the strengthening of judicial cooperation, including by resolution of conflicts of jurisdiction and by close cooperation with the European Judicial Network.

These regulations shall also determine arrangements for involving the European Parliament and national Parliaments in the evaluation of Eurojust's activities.

2.    In the prosecutions referred to in paragraph 1, and without prejudice to Article 86, formal acts of judicial procedure shall be carried out by the competent national officials.

## Article 86

1.    In order to combat crimes affecting the financial interests of the Union, the Council, by means of regulations adopted in accordance with a special legislative procedure, may establish a European Public Prosecutor's Office from Eurojust. The Council shall act unanimously after obtaining the consent of the European Parliament.

In the absence of unanimity in the Council, a group of at least nine Member States may request that the draft regulation be referred to the European Council. In that case, the procedure in the Council shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council for adoption.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft regulation concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

2.    The European Public Prosecutor's Office shall be responsible for investigating, prosecuting and bringing to judgment, where appropriate in liaison with Europol, the perpetrators of, and accomplices in, offences against the Union's financial interests, as determined by the regulation provided for in paragraph 1. It shall exercise the functions of prosecutor in the competent courts of the Member States in relation to such offences.

3.    The regulations referred to in paragraph 1 shall determine the general rules applicable to the European Public Prosecutor's Office, the conditions governing the performance of its functions, the rules of procedure applicable to its activities, as well as those governing the admissibility of evidence, and the rules applicable to the judicial review of procedural measures taken by it in the performance of its functions.

4.    The European Council may, at the same time or subsequently, adopt a decision amending paragraph 1 in order to extend the powers of the European Public Prosecutor's Office to include serious crime having a cross-border dimension and amending accordingly paragraph 2 as regards the perpetrators of, and accomplices in, serious crimes affecting more than one Member State. The European Council shall act unanimously after obtaining the consent of the European Parliament and after consulting the Commission.

CHAPTER 5

POLICE COOPERATION

*Article 87*

(ex Article 30 TEU)

1.    The Union shall establish police cooperation involving all the Member States' competent authorities, including police, customs and other specialised law enforcement services in relation to the prevention, detection and investigation of criminal offences.

2.    For the purposes of paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish measures concerning:

(a) the collection, storage, processing, analysis and exchange of relevant information;

(b) support for the training of staff, and cooperation on the exchange of staff, on equipment and on research into crime-detection;

(c) common investigative techniques in relation to the detection of serious forms of organised crime.

3.    The Council, acting in accordance with a special legislative procedure, may establish measures concerning operational cooperation between the authorities referred to in this Article. The Council shall act unanimously after consulting the European Parliament.

In case of the absence of unanimity in the Council, a group of at least nine Member States may request that the draft measures be referred to the European Council. In that case, the procedure in the Council shall be suspended. After discussion, and in case of a consensus, the European Council shall, within four months of this suspension, refer the draft back to the Council for adoption.

Within the same timeframe, in case of disagreement, and if at least nine Member States wish to establish enhanced cooperation on the basis of the draft measures concerned, they shall notify the European Parliament, the Council and the Commission accordingly. In such a case, the authorisation to proceed with enhanced cooperation referred to in Article 20(2) of the Treaty on European Union and Article 329(1) of this Treaty shall be deemed to be granted and the provisions on enhanced cooperation shall apply.

The specific procedure provided for in the second and third subparagraphs shall not apply to acts which constitute a development of the Schengen *acquis*.

## Article 88

### (ex Article 30 TEU)

1.    Europol's mission shall be to support and strengthen action by the Member States' police authorities and other law enforcement services and their mutual cooperation in preventing and combating serious crime affecting two or more Member States, terrorism and forms of crime which affect a common interest covered by a Union policy.

2.    The European Parliament and the Council, by means of regulations adopted in accordance with the ordinary legislative procedure, shall determine Europol's structure, operation, field of action and tasks. These tasks may include:

(a)  the collection, storage, processing, analysis and exchange of information, in particular that forwarded by the authorities of the Member States or third countries or bodies;

(b)  the coordination, organisation and implementation of investigative and operational action carried out jointly with the Member States' competent authorities or in the context of joint investigative teams, where appropriate in liaison with Eurojust.

These regulations shall also lay down the procedures for scrutiny of Europol's activities by the European Parliament, together with national Parliaments.

3.    Any operational action by Europol must be carried out in liaison and in agreement with the authorities of the Member State or States whose territory is concerned. The application of coercive measures shall be the exclusive responsibility of the competent national authorities.

## Article 89

### (ex Article 32 TEU)

The Council, acting in accordance with a special legislative procedure, shall lay down the conditions and limitations under which the competent authorities of the Member States referred to in Articles 82 and 87 may operate in the territory of another Member State in liaison and in agreement with the authorities of that State. The Council shall act unanimously after consulting the European Parliament.

# TITLE VI

## TRANSPORT

### Article 90

#### (ex Article 70 TEC)

The objectives of the Treaties shall, in matters governed by this Title, be pursued within the framework of a common transport policy.

### Article 91

#### (ex Article 71 TEC)

1.    For the purpose of implementing Article 90, and taking into account the distinctive features of transport, the European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, lay down:

(a) common rules applicable to international transport to or from the territory of a Member State or passing across the territory of one or more Member States;

(b) the conditions under which non-resident carriers may operate transport services within a Member State;

(c) measures to improve transport safety;

(d) any other appropriate provisions.

2.    When the measures referred to in paragraph 1 are adopted, account shall be taken of cases where their application might seriously affect the standard of living and level of employment in certain regions, and the operation of transport facilities.

### Article 92

#### (ex Article 72 TEC)

Until the provisions referred to in Article 91(1) have been laid down, no Member State may, unless the Council has unanimously adopted a measure granting a derogation, make the various provisions governing the subject on 1 January 1958 or, for acceding States, the date of their accession less favourable in their direct or indirect effect on carriers of other Member States as compared with carriers who are nationals of that State.

C 202/86    EN    Official Journal of the European Union    7.6.2016

## Article 93

### (ex Article 73 TEC)

Aids shall be compatible with the Treaties if they meet the needs of coordination of transport or if they represent reimbursement for the discharge of certain obligations inherent in the concept of a public service.

## Article 94

### (ex Article 74 TEC)

Any measures taken within the framework of the Treaties in respect of transport rates and conditions shall take account of the economic circumstances of carriers.

## Article 95

### (ex Article 75 TEC)

1.    In the case of transport within the Union, discrimination which takes the form of carriers charging different rates and imposing different conditions for the carriage of the same goods over the same transport links on grounds of the country of origin or of destination of the goods in question shall be prohibited.

2.    Paragraph 1 shall not prevent the European Parliament and the Council from adopting other measures pursuant to Article 91(1).

3.    The Council shall, on a proposal from the Commission and after consulting the European Parliament and the Economic and Social Committee, lay down rules for implementing the provisions of paragraph 1.

The Council may in particular lay down the provisions needed to enable the institutions of the Union to secure compliance with the rule laid down in paragraph 1 and to ensure that users benefit from it to the full.

4.    The Commission shall, acting on its own initiative or on application by a Member State, investigate any cases of discrimination falling within paragraph 1 and, after consulting any Member State concerned, shall take the necessary decisions within the framework of the rules laid down in accordance with the provisions of paragraph 3.

## Article 96

### (ex Article 76 TEC)

1.    The imposition by a Member State, in respect of transport operations carried out within the Union, of rates and conditions involving any element of support or protection in the interest of one or more particular undertakings or industries shall be prohibited, unless authorised by the Commission.

2.    The Commission shall, acting on its own initiative or on application by a Member State, examine the rates and conditions referred to in paragraph 1, taking account in particular of the requirements of an appropriate regional economic policy, the needs of underdeveloped areas and the problems of areas seriously affected by political circumstances on the one hand, and of the effects of such rates and conditions on competition between the different modes of transport on the other.

After consulting each Member State concerned, the Commission shall take the necessary decisions.

3.    The prohibition provided for in paragraph 1 shall not apply to tariffs fixed to meet competition.

## Article 97

### (ex Article 77 TEC)

Charges or dues in respect of the crossing of frontiers which are charged by a carrier in addition to the transport rates shall not exceed a reasonable level after taking the costs actually incurred thereby into account.

Member States shall endeavour to reduce these costs progressively.

The Commission may make recommendations to Member States for the application of this Article.

## Article 98

### (ex Article 78 TEC)

The provisions of this Title shall not form an obstacle to the application of measures taken in the Federal Republic of Germany to the extent that such measures are required in order to compensate for the economic disadvantages caused by the division of Germany to the economy of certain areas of the Federal Republic affected by that division. Five years after the entry into force of the Treaty of Lisbon, the Council, acting on a proposal from the Commission, may adopt a decision repealing this Article.

## Article 99

### (ex Article 79 TEC)

An Advisory Committee consisting of experts designated by the governments of Member States shall be attached to the Commission. The Commission, whenever it considers it desirable, shall consult the Committee on transport matters.

## Article 100

### (ex Article 80 TEC)

1.    The provisions of this Title shall apply to transport by rail, road and inland waterway.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may lay down appropriate provisions for sea and air transport. They shall act after consulting the Economic and Social Committee and the Committee of the Regions.

## TITLE VII

**COMMON RULES ON COMPETITION, TAXATION AND APPROXIMATION OF LAWS**

CHAPTER 1

## RULES ON COMPETITION

SECTION 1

RULES APPLYING TO UNDERTAKINGS

### Article 101

(ex Article 81 TEC)

1.    The following shall be prohibited as incompatible with the internal market: all agreements between undertakings, decisions by associations of undertakings and concerted practices which may affect trade between Member States and which have as their object or effect the prevention, restriction or distortion of competition within the internal market, and in particular those which:

(a) directly or indirectly fix purchase or selling prices or any other trading conditions;

(b) limit or control production, markets, technical development, or investment;

(c) share markets or sources of supply;

(d) apply dissimilar conditions to equivalent transactions with other trading parties, thereby placing them at a competitive disadvantage;

(e) make the conclusion of contracts subject to acceptance by the other parties of supplementary obligations which, by their nature or according to commercial usage, have no connection with the subject of such contracts.

2.    Any agreements or decisions prohibited pursuant to this Article shall be automatically void.

3.    The provisions of paragraph 1 may, however, be declared inapplicable in the case of:

— any agreement or category of agreements between undertakings,

— any decision or category of decisions by associations of undertakings,

— any concerted practice or category of concerted practices,

which contributes to improving the production or distribution of goods or to promoting technical or economic progress, while allowing consumers a fair share of the resulting benefit, and which does not:

(a) impose on the undertakings concerned restrictions which are not indispensable to the attainment of these objectives;

(b) afford such undertakings the possibility of eliminating competition in respect of a substantial part of the products in question.

### Article 102

(ex Article 82 TEC)

Any abuse by one or more undertakings of a dominant position within the internal market or in a substantial part of it shall be prohibited as incompatible with the internal market in so far as it may affect trade between Member States.

Such abuse may, in particular, consist in:

(a) directly or indirectly imposing unfair purchase or selling prices or other unfair trading conditions;

(b) limiting production, markets or technical development to the prejudice of consumers;

(c) applying dissimilar conditions to equivalent transactions with other trading parties, thereby placing them at a competitive disadvantage;

(d) making the conclusion of contracts subject to acceptance by the other parties of supplementary obligations which, by their nature or according to commercial usage, have no connection with the subject of such contracts.

### Article 103

(ex Article 83 TEC)

1. The appropriate regulations or directives to give effect to the principles set out in Articles 101 and 102 shall be laid down by the Council, on a proposal from the Commission and after consulting the European Parliament.

2. The regulations or directives referred to in paragraph 1 shall be designed in particular:

(a) to ensure compliance with the prohibitions laid down in Article 101(1) and in Article 102 by making provision for fines and periodic penalty payments;

(b) to lay down detailed rules for the application of Article 101(3), taking into account the need to ensure effective supervision on the one hand, and to simplify administration to the greatest possible extent on the other;

(c) to define, if need be, in the various branches of the economy, the scope of the provisions of Articles 101 and 102;

(d) to define the respective functions of the Commission and of the Court of Justice of the European Union in applying the provisions laid down in this paragraph;

(e) to determine the relationship between national laws and the provisions contained in this Section or adopted pursuant to this Article.

## Article 104

*(ex Article 84 TEC)*

Until the entry into force of the provisions adopted in pursuance of Article 103, the authorities in Member States shall rule on the admissibility of agreements, decisions and concerted practices and on abuse of a dominant position in the internal market in accordance with the law of their country and with the provisions of Article 101, in particular paragraph 3, and of Article 102.

## Article 105

*(ex Article 85 TEC)*

1.    Without prejudice to Article 104, the Commission shall ensure the application of the principles laid down in Articles 101 and 102. On application by a Member State or on its own initiative, and in cooperation with the competent authorities in the Member States, which shall give it their assistance, the Commission shall investigate cases of suspected infringement of these principles. If it finds that there has been an infringement, it shall propose appropriate measures to bring it to an end.

2.    If the infringement is not brought to an end, the Commission shall record such infringement of the principles in a reasoned decision. The Commission may publish its decision and authorise Member States to take the measures, the conditions and details of which it shall determine, needed to remedy the situation.

3.    The Commission may adopt regulations relating to the categories of agreement in respect of which the Council has adopted a regulation or a directive pursuant to Article 103(2)(b).

## Article 106

*(ex Article 86 TEC)*

1.    In the case of public undertakings and undertakings to which Member States grant special or exclusive rights, Member States shall neither enact nor maintain in force any measure contrary to the rules contained in the Treaties, in particular to those rules provided for in Article 18 and Articles 101 to 109.

2.    Undertakings entrusted with the operation of services of general economic interest or having the character of a revenue-producing monopoly shall be subject to the rules contained in the Treaties, in particular to the rules on competition, in so far as the application of such rules does not obstruct the performance, in law or in fact, of the particular tasks assigned to them. The development of trade must not be affected to such an extent as would be contrary to the interests of the Union.

3.    The Commission shall ensure the application of the provisions of this Article and shall, where necessary, address appropriate directives or decisions to Member States.

SECTION 2

AIDS GRANTED BY STATES

### Article 107

(ex Article 87 TEC)

1.    Save as otherwise provided in the Treaties, any aid granted by a Member State or through State resources in any form whatsoever which distorts or threatens to distort competition by favouring certain undertakings or the production of certain goods shall, in so far as it affects trade between Member States, be incompatible with the internal market.

2.    The following shall be compatible with the internal market:

(a) aid having a social character, granted to individual consumers, provided that such aid is granted without discrimination related to the origin of the products concerned;

(b) aid to make good the damage caused by natural disasters or exceptional occurrences;

(c) aid granted to the economy of certain areas of the Federal Republic of Germany affected by the division of Germany, in so far as such aid is required in order to compensate for the economic disadvantages caused by that division. Five years after the entry into force of the Treaty of Lisbon, the Council, acting on a proposal from the Commission, may adopt a decision repealing this point.

3.    The following may be considered to be compatible with the internal market:

(a) aid to promote the economic development of areas where the standard of living is abnormally low or where there is serious underemployment, and of the regions referred to in Article 349, in view of their structural, economic and social situation;

(b) aid to promote the execution of an important project of common European interest or to remedy a serious disturbance in the economy of a Member State;

(c) aid to facilitate the development of certain economic activities or of certain economic areas, where such aid does not adversely affect trading conditions to an extent contrary to the common interest;

(d) aid to promote culture and heritage conservation where such aid does not affect trading conditions and competition in the Union to an extent that is contrary to the common interest;

(e) such other categories of aid as may be specified by decision of the Council on a proposal from the Commission.

## Article 108

(ex Article 88 TEC)

1.    The Commission shall, in cooperation with Member States, keep under constant review all systems of aid existing in those States. It shall propose to the latter any appropriate measures required by the progressive development or by the functioning of the internal market.

2.    If, after giving notice to the parties concerned to submit their comments, the Commission finds that aid granted by a State or through State resources is not compatible with the internal market having regard to Article 107, or that such aid is being misused, it shall decide that the State concerned shall abolish or alter such aid within a period of time to be determined by the Commission.

If the State concerned does not comply with this decision within the prescribed time, the Commission or any other interested State may, in derogation from the provisions of Articles 258 and 259, refer the matter to the Court of Justice of the European Union direct.

On application by a Member State, the Council may, acting unanimously, decide that aid which that State is granting or intends to grant shall be considered to be compatible with the internal market, in derogation from the provisions of Article 107 or from the regulations provided for in Article 109, if such a decision is justified by exceptional circumstances. If, as regards the aid in question, the Commission has already initiated the procedure provided for in the first subparagraph of this paragraph, the fact that the State concerned has made its application to the Council shall have the effect of suspending that procedure until the Council has made its attitude known.

If, however, the Council has not made its attitude known within three months of the said application being made, the Commission shall give its decision on the case.

3.    The Commission shall be informed, in sufficient time to enable it to submit its comments, of any plans to grant or alter aid. If it considers that any such plan is not compatible with the internal market having regard to Article 107, it shall without delay initiate the procedure provided for in paragraph 2. The Member State concerned shall not put its proposed measures into effect until this procedure has resulted in a final decision.

4.    The Commission may adopt regulations relating to the categories of State aid that the Council has, pursuant to Article 109, determined may be exempted from the procedure provided for by paragraph 3 of this Article.

## Article 109

### (ex Article 89 TEC)

The Council, on a proposal from the Commission and after consulting the European Parliament, may make any appropriate regulations for the application of Articles 107 and 108 and may in particular determine the conditions in which Article 108(3) shall apply and the categories of aid exempted from this procedure.

CHAPTER 2

TAX PROVISIONS

## Article 110

### (ex Article 90 TEC)

No Member State shall impose, directly or indirectly, on the products of other Member States any internal taxation of any kind in excess of that imposed directly or indirectly on similar domestic products.

Furthermore, no Member State shall impose on the products of other Member States any internal taxation of such a nature as to afford indirect protection to other products.

## Article 111

### (ex Article 91 TEC)

Where products are exported to the territory of any Member State, any repayment of internal taxation shall not exceed the internal taxation imposed on them whether directly or indirectly.

## Article 112

### (ex Article 92 TEC)

In the case of charges other than turnover taxes, excise duties and other forms of indirect taxation, remissions and repayments in respect of exports to other Member States may not be granted and countervailing charges in respect of imports from Member States may not be imposed unless the measures contemplated have been previously approved for a limited period by the Council on a proposal from the Commission.

*Article 113*

(ex Article 93 TEC)

The Council shall, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament and the Economic and Social Committee, adopt provisions for the harmonisation of legislation concerning turnover taxes, excise duties and other forms of indirect taxation to the extent that such harmonisation is necessary to ensure the establishment and the functioning of the internal market and to avoid distortion of competition.

CHAPTER 3

APPROXIMATION OF LAWS

*Article 114*

(ex Article 95 TEC)

1.  Save where otherwise provided in the Treaties, the following provisions shall apply for the achievement of the objectives set out in Article 26. The European Parliament and the Council shall, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, adopt the measures for the approximation of the provisions laid down by law, regulation or administrative action in Member States which have as their object the establishment and functioning of the internal market.

2.  Paragraph 1 shall not apply to fiscal provisions, to those relating to the free movement of persons nor to those relating to the rights and interests of employed persons.

3.  The Commission, in its proposals envisaged in paragraph 1 concerning health, safety, environmental protection and consumer protection, will take as a base a high level of protection, taking account in particular of any new development based on scientific facts. Within their respective powers, the European Parliament and the Council will also seek to achieve this objective.

4.  If, after the adoption of a harmonisation measure by the European Parliament and the Council, by the Council or by the Commission, a Member State deems it necessary to maintain national provisions on grounds of major needs referred to in Article 36, or relating to the protection of the environment or the working environment, it shall notify the Commission of these provisions as well as the grounds for maintaining them.

5.  Moreover, without prejudice to paragraph 4, if, after the adoption of a harmonisation measure by the European Parliament and the Council, by the Council or by the Commission, a Member State deems it necessary to introduce national provisions based on new scientific evidence relating to the protection of the environment or the working environment on grounds of a problem specific to that Member State arising after the adoption of the harmonisation measure, it shall notify the Commission of the envisaged provisions as well as the grounds for introducing them.

6.    The Commission shall, within six months of the notifications as referred to in paragraphs 4 and 5, approve or reject the national provisions involved after having verified whether or not they are a means of arbitrary discrimination or a disguised restriction on trade between Member States and whether or not they shall constitute an obstacle to the functioning of the internal market.

In the absence of a decision by the Commission within this period the national provisions referred to in paragraphs 4 and 5 shall be deemed to have been approved.

When justified by the complexity of the matter and in the absence of danger for human health, the Commission may notify the Member State concerned that the period referred to in this paragraph may be extended for a further period of up to six months.

7.    When, pursuant to paragraph 6, a Member State is authorised to maintain or introduce national provisions derogating from a harmonisation measure, the Commission shall immediately examine whether to propose an adaptation to that measure.

8.    When a Member State raises a specific problem on public health in a field which has been the subject of prior harmonisation measures, it shall bring it to the attention of the Commission which shall immediately examine whether to propose appropriate measures to the Council.

9.    By way of derogation from the procedure laid down in Articles 258 and 259, the Commission and any Member State may bring the matter directly before the Court of Justice of the European Union if it considers that another Member State is making improper use of the powers provided for in this Article.

10.    The harmonisation measures referred to above shall, in appropriate cases, include a safeguard clause authorising the Member States to take, for one or more of the non-economic reasons referred to in Article 36, provisional measures subject to a Union control procedure.

## Article 115

### (ex Article 94 TEC)

Without prejudice to Article 114, the Council shall, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament and the Economic and Social Committee, issue directives for the approximation of such laws, regulations or administrative provisions of the Member States as directly affect the establishment or functioning of the internal market.

## Article 116

### (ex Article 96 TEC)

Where the Commission finds that a difference between the provisions laid down by law, regulation or administrative action in Member States is distorting the conditions of competition in the internal market and that the resultant distortion needs to be eliminated, it shall consult the Member States concerned.

If such consultation does not result in an agreement eliminating the distortion in question, the European, Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall issue the necessary directives. Any other appropriate measures provided for in the Treaties may be adopted.

## Article 117

(ex Article 97 TEC)

1.    Where there is a reason to fear that the adoption or amendment of a provision laid down by law, regulation or administrative action may cause distortion within the meaning of Article 116, a Member State desiring to proceed therewith shall consult the Commission. After consulting the Member States, the Commission shall recommend to the States concerned such measures as may be appropriate to avoid the distortion in question.

2.    If a State desiring to introduce or amend its own provisions does not comply with the recommendation addressed to it by the Commission, other Member States shall not be required, pursuant to Article 116, to amend their own provisions in order to eliminate such distortion. If the Member State which has ignored the recommendation of the Commission causes distortion detrimental only to itself, the provisions of Article 116 shall not apply.

## Article 118

In the context of the establishment and functioning of the internal market, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish measures for the creation of European intellectual property rights to provide uniform protection of intellectual property rights throughout the Union and for the setting up of centralised Union-wide authorisation, coordination and supervision arrangements.

The Council, acting in accordance with a special legislative procedure, shall by means of regulations establish language arrangements for the European intellectual property rights. The Council shall act unanimously after consulting the European Parliament.

## TITLE VIII

### ECONOMIC AND MONETARY POLICY

## Article 119

(ex Article 4 TEC)

1.    For the purposes set out in Article 3 of the Treaty on European Union, the activities of the Member States and the Union shall include, as provided in the Treaties, the adoption of an economic policy which is based on the close coordination of Member States' economic policies, on the internal market and on the definition of common objectives, and conducted in accordance with the principle of an open market economy with free competition.

2.    Concurrently with the foregoing, and as provided in the Treaties and in accordance with the procedures set out therein, these activities shall include a single currency, the euro, and the definition and conduct of a single monetary policy and exchange-rate policy the primary objective of both of which shall be to maintain price stability and, without prejudice to this objective, to support the general economic policies in the Union, in accordance with the principle of an open market economy with free competition.

3.    These activities of the Member States and the Union shall entail compliance with the following guiding principles: stable prices, sound public finances and monetary conditions and a sustainable balance of payments.

CHAPTER 1

ECONOMIC POLICY

*Article 120*

(ex Article 98 TEC)

Member States shall conduct their economic policies with a view to contributing to the achievement of the objectives of the Union, as defined in Article 3 of the Treaty on European Union, and in the context of the broad guidelines referred to in Article 121(2). The Member States and the Union shall act in accordance with the principle of an open market economy with free competition, favouring an efficient allocation of resources, and in compliance with the principles set out in Article 119.

*Article 121*

(ex Article 99 TEC)

1.    Member States shall regard their economic policies as a matter of common concern and shall coordinate them within the Council, in accordance with the provisions of Article 120.

2.    The Council shall, on a recommendation from the Commission, formulate a draft for the broad guidelines of the economic policies of the Member States and of the Union, and shall report its findings to the European Council.

The European Council shall, acting on the basis of the report from the Council, discuss a conclusion on the broad guidelines of the economic policies of the Member States and of the Union.

On the basis of this conclusion, the Council shall adopt a recommendation setting out these broad guidelines. The Council shall inform the European Parliament of its recommendation.

3.    In order to ensure closer coordination of economic policies and sustained convergence of the economic performances of the Member States, the Council shall, on the basis of reports submitted by the Commission, monitor economic developments in each of the Member States and in the Union as well as the consistency of economic policies with the broad guidelines referred to in paragraph 2, and regularly carry out an overall assessment.

EN

For the purpose of this multilateral surveillance, Member States shall forward information to the Commission about important measures taken by them in the field of their economic policy and such other information as they deem necessary.

4.    Where it is established, under the procedure referred to in paragraph 3, that the economic policies of a Member State are not consistent with the broad guidelines referred to in paragraph 2 or that they risk jeopardising the proper functioning of economic and monetary union, the Commission may address a warning to the Member State concerned. The Council, on a recommendation from the Commission, may address the necessary recommendations to the Member State concerned. The Council may, on a proposal from the Commission, decide to make its recommendations public.

Within the scope of this paragraph, the Council shall act without taking into account the vote of the member of the Council representing the Member State concerned.

A qualified majority of the other members of the Council shall be defined in accordance with Article 238(3)(a).

5.    The President of the Council and the Commission shall report to the European Parliament on the results of multilateral surveillance. The President of the Council may be invited to appear before the competent committee of the European Parliament if the Council has made its recommendations public.

6.    The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, may adopt detailed rules for the multilateral surveillance procedure referred to in paragraphs 3 and 4.

## Article 122

(ex Article 100 TEC)

1.    Without prejudice to any other procedures provided for in the Treaties, the Council, on a proposal from the Commission, may decide, in a spirit of solidarity between Member States, upon the measures appropriate to the economic situation, in particular if severe difficulties arise in the supply of certain products, notably in the area of energy.

2.    Where a Member State is in difficulties or is seriously threatened with severe difficulties caused by natural disasters or exceptional occurrences beyond its control, the Council, on a proposal from the Commission, may grant, under certain conditions, Union financial assistance to the Member State concerned. The President of the Council shall inform the European Parliament of the decision taken.

7.6.2016          EN          Official Journal of the European Union          C 202/99

## Article 123

(ex Article 101 TEC)

1.    Overdraft facilities or any other type of credit facility with the European Central Bank or with the central banks of the Member States (hereinafter referred to as 'national central banks') in favour of Union institutions, bodies, offices or agencies, central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of Member States shall be prohibited, as shall the purchase directly from them by the European Central Bank or national central banks of debt instruments.

2.    Paragraph 1 shall not apply to publicly owned credit institutions which, in the context of the supply of reserves by central banks, shall be given the same treatment by national central banks and the European Central Bank as private credit institutions.

## Article 124

(ex Article 102 TEC)

Any measure, not based on prudential considerations, establishing privileged access by Union institutions, bodies, offices or agencies, central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of Member States to financial institutions, shall be prohibited.

## Article 125

(ex Article 103 TEC)

1.    The Union shall not be liable for or assume the commitments of central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of any Member State, without prejudice to mutual financial guarantees for the joint execution of a specific project. A Member State shall not be liable for or assume the commitments of central governments, regional, local or other public authorities, other bodies governed by public law, or public undertakings of another Member State, without prejudice to mutual financial guarantees for the joint execution of a specific project.

2.    The Council, on a proposal from the Commission and after consulting the European Parliament, may, as required, specify definitions for the application of the prohibitions referred to in Articles 123 and 124 and in this Article.

## Article 126

(ex Article 104 TEC)

1.    Member States shall avoid excessive government deficits.

C 202/100        EN        Official Journal of the European Union        7.6.2016

2.    The Commission shall monitor the development of the budgetary situation and of the stock of government debt in the Member States with a view to identifying gross errors. In particular it shall examine compliance with budgetary discipline on the basis of the following two criteria:

(a)  whether the ratio of the planned or actual government deficit to gross domestic product exceeds a reference value, unless:

— either the ratio has declined substantially and continuously and reached a level that comes close to the reference value,

— or, alternatively, the excess over the reference value is only exceptional and temporary and the ratio remains close to the reference value;

(b)  whether the ratio of government debt to gross domestic product exceeds a reference value, unless the ratio is sufficiently diminishing and approaching the reference value at a satisfactory pace.

The reference values are specified in the Protocol on the excessive deficit procedure annexed to the Treaties.

3.    If a Member State does not fulfil the requirements under one or both of these criteria, the Commission shall prepare a report. The report of the Commission shall also take into account whether the government deficit exceeds government investment expenditure and take into account all other relevant factors, including the medium-term economic and budgetary position of the Member State.

The Commission may also prepare a report if, notwithstanding the fulfilment of the requirements under the criteria, it is of the opinion that there is a risk of an excessive deficit in a Member State.

4.    The Economic and Financial Committee shall formulate an opinion on the report of the Commission.

5.    If the Commission considers that an excessive deficit in a Member State exists or may occur, it shall address an opinion to the Member State concerned and shall inform the Council accordingly.

6.    The Council shall, on a proposal from the Commission, and having considered any observations which the Member State concerned may wish to make, decide after an overall assessment whether an excessive deficit exists.

7.    Where the Council decides, in accordance with paragraph 6, that an excessive deficit exists, it shall adopt, without undue delay, on a recommendation from the Commission, recommendations addressed to the Member State concerned with a view to bringing that situation to an end within a given period. Subject to the provisions of paragraph 8, these recommendations shall not be made public.

8.    Where it establishes that there has been no effective action in response to its recommendations within the period laid down, the Council may make its recommendations public.

7.6.2016        EN        Official Journal of the European Union        C 202/101

9.    If a Member State persists in failing to put into practice the recommendations of the Council, the Council may decide to give notice to the Member State to take, within a specified time limit, measures for the deficit reduction which is judged necessary by the Council in order to remedy the situation.

In such a case, the Council may request the Member State concerned to submit reports in accordance with a specific timetable in order to examine the adjustment efforts of that Member State.

10.    The rights to bring actions provided for in Articles 258 and 259 may not be exercised within the framework of paragraphs 1 to 9 of this Article.

11.    As long as a Member State fails to comply with a decision taken in accordance with paragraph 9, the Council may decide to apply or, as the case may be, intensify one or more of the following measures:

— to require the Member State concerned to publish additional information, to be specified by the Council, before issuing bonds and securities,

— to invite the European Investment Bank to reconsider its lending policy towards the Member State concerned,

— to require the Member State concerned to make a non-interest-bearing deposit of an appropriate size with the Union until the excessive deficit has, in the view of the Council, been corrected,

— to impose fines of an appropriate size.

The President of the Council shall inform the European Parliament of the decisions taken.

12.    The Council shall abrogate some or all of its decisions or recommendations referred to in paragraphs 6 to 9 and 11 to the extent that the excessive deficit in the Member State concerned has, in the view of the Council, been corrected. If the Council has previously made public recommendations, it shall, as soon as the decision under paragraph 8 has been abrogated, make a public statement that an excessive deficit in the Member State concerned no longer exists.

13.    When taking the decisions or recommendations referred to in paragraphs 8, 9, 11 and 12, the Council shall act on a recommendation from the Commission.

When the Council adopts the measures referred to in paragraphs 6 to 9, 11 and 12, it shall act without taking into account the vote of the member of the Council representing the Member State concerned.

A qualified majority of the other members of the Council shall be defined in accordance with Article 238(3)(a).

14.    Further provisions relating to the implementation of the procedure described in this Article are set out in the Protocol on the excessive deficit procedure annexed to the Treaties.

The Council shall, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament and the European Central Bank, adopt the appropriate provisions which shall then replace the said Protocol.

Subject to the other provisions of this paragraph, the Council shall, on a proposal from the Commission and after consulting the European Parliament, lay down detailed rules and definitions for the application of the provisions of the said Protocol.

CHAPTER 2

MONETARY POLICY

*Article 127*

(ex Article 105 TEC)

1.    The primary objective of the European System of Central Banks (hereinafter referred to as 'the ESCB') shall be to maintain price stability. Without prejudice to the objective of price stability, the ESCB shall support the general economic policies in the Union with a view to contributing to the achievement of the objectives of the Union as laid down in Article 3 of the Treaty on European Union. The ESCB shall act in accordance with the principle of an open market economy with free competition, favouring an efficient allocation of resources, and in compliance with the principles set out in Article 119.

2.    The basic tasks to be carried out through the ESCB shall be:

— to define and implement the monetary policy of the Union,

— to conduct foreign-exchange operations consistent with the provisions of Article 219,

— to hold and manage the official foreign reserves of the Member States,

— to promote the smooth operation of payment systems.

3.    The third indent of paragraph 2 shall be without prejudice to the holding and management by the governments of Member States of foreign-exchange working balances.

4.    The European Central Bank shall be consulted:

— on any proposed Union act in its fields of competence,

— by national authorities regarding any draft legislative provision in its fields of competence, but within the limits and under the conditions set out by the Council in accordance with the procedure laid down in Article 129(4).

The European Central Bank may submit opinions to the appropriate Union institutions, bodies, offices or agencies or to national authorities on matters in its fields of competence.

5.    The ESCB shall contribute to the smooth conduct of policies pursued by the competent authorities relating to the prudential supervision of credit institutions and the stability of the financial system.

6.    The Council, acting by means of regulations in accordance with a special legislative procedure, may unanimously, and after consulting the European Parliament and the European Central Bank, confer specific tasks upon the European Central Bank concerning policies relating to the prudential supervision of credit institutions and other financial institutions with the exception of insurance undertakings.

## Article 128

*(ex Article 106 TEC)*

1.    The European Central Bank shall have the exclusive right to authorise the issue of euro banknotes within the Union. The European Central Bank and the national central banks may issue such notes. The banknotes issued by the European Central Bank and the national central banks shall be the only such notes to have the status of legal tender within the Union.

2.    Member States may issue euro coins subject to approval by the European Central Bank of the volume of the issue. The Council, on a proposal from the Commission and after consulting the European Parliament and the European Central Bank, may adopt measures to harmonise the denominations and technical specifications of all coins intended for circulation to the extent necessary to permit their smooth circulation within the Union.

## Article 129

*(ex Article 107 TEC)*

1.    The ESCB shall be governed by the decision-making bodies of the European Central Bank which shall be the Governing Council and the Executive Board.

2.    The Statute of the European System of Central Banks and of the European Central Bank (hereinafter referred to as 'the Statute of the ESCB and of the ECB') is laid down in a Protocol annexed to the Treaties.

3.    Articles 5.1, 5.2, 5.3, 17, 18, 19.1, 22, 23, 24, 26, 32.2, 32.3, 32.4, 32.6, 33.1(a) and 36 of the Statute of the ESCB and of the ECB may be amended by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure. They shall act either on a recommendation from the European Central Bank and after consulting the Commission or on a proposal from the Commission and after consulting the European Central Bank.

4.    The Council, either on a proposal from the Commission and after consulting the European Parliament and the European Central Bank or on a recommendation from the European Central Bank and after consulting the European Parliament and the Commission, shall adopt the provisions referred to in Articles 4, 5.4, 19.2, 20, 28.1, 29.2, 30.4 and 34.3 of the Statute of the ESCB and of the ECB.

Official Journal of the European Union

## Article 130

### (ex Article 108 TEC)

When exercising the powers and carrying out the tasks and duties conferred upon them by the Treaties and the Statute of the ESCB and of the ECB, neither the European Central Bank, nor a national central bank, nor any member of their decision-making bodies shall seek or take instructions from Union institutions, bodies, offices or agencies, from any government of a Member State or from any other body. The Union institutions, bodies, offices or agencies and the governments of the Member States undertake to respect this principle and not to seek to influence the members of the decision-making bodies of the European Central Bank or of the national central banks in the performance of their tasks.

## Article 131

### (ex Article 109 TEC)

Each Member State shall ensure that its national legislation including the statutes of its national central bank is compatible with the Treaties and the Statute of the ESCB and of the ECB.

## Article 132

### (ex Article 110 TEC)

1.    In order to carry out the tasks entrusted to the ESCB, the European Central Bank shall, in accordance with the provisions of the Treaties and under the conditions laid down in the Statute of the ESCB and of the ECB:

— make regulations to the extent necessary to implement the tasks defined in Article 3.1, first indent, Articles 19.1, 22 and 25.2 of the Statute of the ESCB and of the ECB in cases which shall be laid down in the acts of the Council referred to in Article 129(4),

— take decisions necessary for carrying out the tasks entrusted to the ESCB under the Treaties and the Statute of the ESCB and of the ECB,

— make recommendations and deliver opinions.

2.    The European Central Bank may decide to publish its decisions, recommendations and opinions.

3.    Within the limits and under the conditions adopted by the Council under the procedure laid down in Article 129(4), the European Central Bank shall be entitled to impose fines or periodic penalty payments on undertakings for failure to comply with obligations under its regulations and decisions.

*Article 133*

Without prejudice to the powers of the European Central Bank, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall lay down the measures necessary for the use of the euro as the single currency. Such measures shall be adopted after consultation of the European Central Bank.

CHAPTER 3

INSTITUTIONAL PROVISIONS

*Article 134*

(ex Article 114 TEC)

1.    In order to promote coordination of the policies of Member States to the full extent needed for the functioning of the internal market, an Economic and Financial Committee is hereby set up.

2.    The Economic and Financial Committee shall have the following tasks:

— to deliver opinions at the request of the Council or of the Commission, or on its own initiative for submission to those institutions,

— to keep under review the economic and financial situation of the Member States and of the Union and to report regularly thereon to the Council and to the Commission, in particular on financial relations with third countries and international institutions,

— without prejudice to Article 240, to contribute to the preparation of the work of the Council referred to in Articles 66, 75, 121(2), (3), (4) and (6), 122, 124, 125, 126, 127(6), 128(2), 129(3) and (4), 138, 140(2) and (3), 143, 144(2) and (3), and in Article 219, and to carry out other advisory and preparatory tasks assigned to it by the Council,

— to examine, at least once a year, the situation regarding the movement of capital and the freedom of payments, as they result from the application of the Treaties and of measures adopted by the Council; the examination shall cover all measures relating to capital movements and payments; the Committee shall report to the Commission and to the Council on the outcome of this examination.

The Member States, the Commission and the European Central Bank shall each appoint no more than two members of the Committee.

3.   The Council shall, on a proposal from the Commission and after consulting the European  Central Bank and the Committee referred to in this Article, lay down detailed provisions concerning the composition of the Economic and Financial Committee. The President of the  Council shall inform the European Parliament of such a decision.

4.   In addition to the tasks set out in paragraph  2, if and as long as there are Member States with a derogation as referred to in Article  139, the Committee shall keep under review the monetary and financial situation and the general payments system of those Member States and report regularly thereon to the Council and to the Commission.

## Article  135

### (ex Article  115 TEC)

For matters within the scope of Articles  121(4), 126 with the exception of paragraph  14, 138, 140(1), 140(2), first subparagraph, 140(3) and 219, the Council or a Member State may request the  Commission to make a recommendation or a proposal, as appropriate. The Commission shall examine this request and submit its conclusions to the Council without delay.

## CHAPTER  4

## PROVISIONS SPECIFIC TO MEMBER STATES WHOSE CURRENCY IS THE EURO

## Article  136

1.   In order to ensure the proper functioning of economic and monetary union, and in accordance with the relevant provisions of the Treaties, the Council shall, in accordance with the relevant procedure from among those referred to in Articles  121 and 126, with the exception of the procedure set out in Article  126(14), adopt measures specific to those Member States whose currency is the euro:

(a)  to strengthen the coordination and surveillance of their budgetary discipline;

(b)  to set out economic policy guidelines for them, while ensuring that they are compatible with those adopted for the whole of the Union and are kept under surveillance.

2.   For those measures set out in paragraph  1, only members of the Council representing Member  States whose currency is the euro shall take part in the vote.

A qualified majority of the said members shall be defined in accordance with Article  238(3)(a).

3.   The Member States whose currency is the euro may establish a stability mechanism to be activated if indispensable to safeguard the stability of the euro area as a whole. The granting of any required financial assistance under the mechanism will be made subject to strict conditionality.

## Article 137

Arrangements for meetings between ministers of those Member States whose currency is the euro are laid down by the Protocol on the Euro Group.

## Article 138

(ex Article 111(4), TEC)

1. In order to secure the euro's place in the international monetary system, the Council, on a proposal from the Commission, shall adopt a decision establishing common positions on matters of particular interest for economic and monetary union within the competent international financial institutions and conferences. The Council shall act after consulting the European Central Bank.

2. The Council, on a proposal from the Commission, may adopt appropriate measures to ensure unified representation within the international financial institutions and conferences. The Council shall act after consulting the European Central Bank.

3. For the measures referred to in paragraphs 1 and 2, only members of the Council representing Member States whose currency is the euro shall take part in the vote.

A qualified majority of the said members shall be defined in accordance with Article 238(3)(a).

CHAPTER 5

TRANSITIONAL PROVISIONS

## Article 139

1. Member States in respect of which the Council has not decided that they fulfil the necessary conditions for the adoption of the euro shall hereinafter be referred to as 'Member States with a derogation'.

2. The following provisions of the Treaties shall not apply to Member States with a derogation:

(a) adoption of the parts of the broad economic policy guidelines which concern the euro area generally (Article 121(2));

(b) coercive means of remedying excessive deficits (Article 126(9) and (11));

(c) the objectives and tasks of the ESCB (Article 127(1) to (3) and (5));

(d) issue of the euro (Article 128);

(e) acts of the European Central Bank (Article 132);

C 202/108      EN      Official Journal of the European Union      7.6.2016

(f) measures governing the use of the euro (Article 133);

(g) monetary agreements and other measures relating to exchange-rate policy (Article 219);

(h) appointment of members of the Executive Board of the European Central Bank (Article 283(2));

(i) decisions establishing common positions on issues of particular relevance for economic and monetary union within the competent international financial institutions and conferences (Article 138(1));

(j) measures to ensure unified representation within the international financial institutions and conferences (Article 138(2)).

In the Articles referred to in points (a) to (j), 'Member States' shall therefore mean Member States whose currency is the euro.

3.    Under Chapter IX of the Statute of the ESCB and of the ECB, Member States with a derogation and their national central banks are excluded from rights and obligations within the ESCB.

4.    The voting rights of members of the Council representing Member States with a derogation shall be suspended for the adoption by the Council of the measures referred to in the Articles listed in paragraph 2, and in the following instances:

(a) recommendations made to those Member States whose currency is the euro in the framework of multilateral surveillance, including on stability programmes and warnings (Article 121(4));

(b) measures relating to excessive deficits concerning those Member States whose currency is the euro (Article 126(6), (7), (8), (12) and (13)).

A qualified majority of the other members of the Council shall be defined in accordance with Article 238(3)(a).

### Article 140

(ex Articles 121(1), 122(2), second sentence, and 123(5) TEC)

1.    At least once every two years, or at the request of a Member State with a derogation, the Commission and the European Central Bank shall report to the Council on the progress made by the Member States with a derogation in fulfilling their obligations regarding the achievement

of economic and monetary union. These reports shall include an examination of the compatibility between the national legislation of each of these Member States, including the statutes of its national central bank, and Articles 130 and 131 and the Statute of the ESCB and of the ECB. The reports shall also examine the achievement of a high degree of sustainable convergence by reference to the fulfilment by each Member State of the following criteria:

— the achievement of a high degree of price stability; this will be apparent from a rate of inflation which is close to that of, at most, the three best performing Member States in terms of price stability,

— the sustainability of the government financial position; this will be apparent from having achieved a government budgetary position without a deficit that is excessive as determined in accordance with Article 126(6),

— the observance of the normal fluctuation margins provided for by the exchange-rate mechanism of the European Monetary System, for at least two years, without devaluing against the euro,

— the durability of convergence achieved by the Member State with a derogation and of its participation in the exchange-rate mechanism being reflected in the long-term interest-rate levels.

The four criteria mentioned in this paragraph and the relevant periods over which they are to be respected are developed further in a Protocol annexed to the Treaties. The reports of the Commission and the European Central Bank shall also take account of the results of the integration of markets, the situation and development of the balances of payments on current account and an examination of the development of unit labour costs and other price indices.

2.    After consulting the European Parliament and after discussion in the European Council, the Council shall, on a proposal from the Commission, decide which Member States with a derogation fulfil the necessary conditions on the basis of the criteria set out in paragraph 1, and abrogate the derogations of the Member States concerned.

The Council shall act having received a recommendation of a qualified majority of those among its members representing Member States whose currency is the euro. These members shall act within six months of the Council receiving the Commission's proposal.

The qualified majority of the said members, as referred to in the second subparagraph, shall be defined in accordance with Article 238(3)(a).

3.    If it is decided, in accordance with the procedure set out in paragraph 2, to abrogate a derogation, the Council shall, acting with the unanimity of the Member States whose currency is the euro and the Member State concerned, on a proposal from the Commission and after consulting

the European Central Bank, irrevocably fix the rate at which the euro shall be substituted for the currency of the Member State concerned, and take the other measures necessary for the introduction of the euro as the single currency in the Member State concerned.

## Article  141

(ex Articles 123(3) and 117(2) first five indents, TEC)

1.    If and as long as there are Member States with a derogation, and without prejudice to Article  129(1), the General Council of the European Central Bank referred to in Article  44 of the Statute of the ESCB and of the ECB shall be constituted as a third decision-making body of the European Central Bank.

2.    If and as long as there are Member States with a derogation, the European Central Bank shall, as regards those Member States:

— strengthen cooperation between the national central banks,

— strengthen the coordination of the monetary policies of the Member States, with the aim of ensuring price stability,

— monitor the functioning of the exchange-rate mechanism,

— hold consultations concerning issues falling within the competence of the national central banks and affecting the stability of financial institutions and markets,

— carry out the former tasks of the European Monetary Cooperation Fund which had subsequently been taken over by the European Monetary Institute.

## Article  142

(ex Article  124(1) TEC)

Each Member State with a derogation shall treat its exchange-rate policy as a matter of common interest. In so doing, Member States shall take account of the experience acquired in cooperation within the framework of the exchange-rate mechanism.

## Article  143

(ex Article  119 TEC)

1.    Where a Member State with a derogation is in difficulties or is seriously threatened with difficulties as regards its balance of payments either as a result of an overall disequilibrium in its balance of payments, or as a result of the type of currency at its disposal, and where such difficulties are liable in particular to jeopardise the functioning of the internal market or the implementation of the common commercial policy, the Commission shall immediately investigate the position of the State in question and the action which, making use of all the means at its disposal, that State has taken or may take in accordance with the provisions of the Treaties. The Commission shall state what measures it recommends the State concerned to take.

If the action taken by a Member State with a derogation and the measures suggested by the Commission do not prove sufficient to overcome the difficulties which have arisen or which threaten, the Commission shall, after consulting the Economic and Financial Committee, recommend to the Council the granting of mutual assistance and appropriate methods therefor.

The Commission shall keep the Council regularly informed of the situation and of how it is developing.

2.   The Council shall grant such mutual assistance; it shall adopt directives or decisions laying down the conditions and details of such assistance, which may take such forms as:

(a)  a concerted approach to or within any other international organisations to which Member States with a derogation may have recourse;

(b)  measures needed to avoid deflection of trade where the Member State with a derogation which is in difficulties maintains or reintroduces quantitative restrictions against third countries;

(c)  the granting of limited credits by other Member States, subject to their agreement.

3.   If the mutual assistance recommended by the Commission is not granted by the Council or if the mutual assistance granted and the measures taken are insufficient, the Commission shall authorise the Member State with a derogation which is in difficulties to take protective measures, the conditions and details of which the Commission shall determine.

Such authorisation may be revoked and such conditions and details may be changed by the Council.

### Article 144

#### (ex Article 120 TEC)

1.   Where a sudden crisis in the balance of payments occurs and a decision within the meaning of Article 143(2) is not immediately taken, a Member State with a derogation may, as a precaution, take the necessary protective measures. Such measures must cause the least possible disturbance in the functioning of the internal market and must not be wider in scope than is strictly necessary to remedy the sudden difficulties which have arisen.

2.   The Commission and the other Member States shall be informed of such protective measures not later than when they enter into force. The Commission may recommend to the Council the granting of mutual assistance under Article 143.

3.   After the Commission has delivered a recommendation and the Economic and Financial Committee has been consulted, the Council may decide that the Member State concerned shall amend, suspend or abolish the protective measures referred to above.

# TITLE IX

## EMPLOYMENT

### Article 145

#### (ex Article 125 TEC)

Member States and the Union shall, in accordance with this Title, work towards developing a coordinated strategy for employment and particularly for promoting a skilled, trained and adaptable workforce and labour markets responsive to economic change with a view to achieving the objectives defined in Article 3 of the Treaty on European Union.

### Article 146

#### (ex Article 126 TEC)

1.    Member States, through their employment policies, shall contribute to the achievement of the objectives referred to in Article 145 in a way consistent with the broad guidelines of the economic policies of the Member States and of the Union adopted pursuant to Article 121(2).

2.    Member States, having regard to national practices related to the responsibilities of management and labour, shall regard promoting employment as a matter of common concern and shall coordinate their action in this respect within the Council, in accordance with the provisions of Article 148.

### Article 147

#### (ex Article 127 TEC)

1.    The Union shall contribute to a high level of employment by encouraging cooperation between Member States and by supporting and, if necessary, complementing their action. In doing so, the competences of the Member States shall be respected.

2.    The objective of a high level of employment shall be taken into consideration in the formulation and implementation of Union policies and activities.

### Article 148

#### (ex Article 128 TEC)

1.    The European Council shall each year consider the employment situation in the Union and adopt conclusions thereon, on the basis of a joint annual report by the Council and the Commission.

2.    On the basis of the conclusions of the European Council, the Council, on a proposal from the Commission and after consulting the European Parliament, the Economic and Social Committee, the Committee of the Regions and the Employment Committee referred to in Article 150, shall each year draw up guidelines which the Member States shall take into account in their employment policies. These guidelines shall be consistent with the broad guidelines adopted pursuant to Article 121(2).

7.6.2016          EN          Official Journal of the European Union          C 202/113

3.    Each Member State shall provide the Council and the Commission with an annual report on the principal measures taken to implement its employment policy in the light of the guidelines for employment as referred to in paragraph 2.

4.    The Council, on the basis of the reports referred to in paragraph 3 and having received the views of the Employment Committee, shall each year carry out an examination of the implementation of the employment policies of the Member States in the light of the guidelines for employment. The Council, on a recommendation from the Commission, may, if it considers it appropriate in the light of that examination, make recommendations to Member States.

5.    On the basis of the results of that examination, the Council and the Commission shall make a joint annual report to the European Council on the employment situation in the Union and on the implementation of the guidelines for employment.

## Article 149

### (ex Article 129 TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, may adopt incentive measures designed to encourage cooperation between Member States and to support their action in the field of employment through initiatives aimed at developing exchanges of information and best practices, providing comparative analysis and advice as well as promoting innovative approaches and evaluating experiences, in particular by recourse to pilot projects.

Those measures shall not include harmonisation of the laws and regulations of the Member States.

## Article 150

### (ex Article 130 TEC)

The Council, acting by a simple majority after consulting the European Parliament, shall establish an Employment Committee with advisory status to promote coordination between Member States on employment and labour market policies. The tasks of the Committee shall be:

— to monitor the employment situation and employment policies in the Member States and the Union,

— without prejudice to Article 240, to formulate opinions at the request of either the Council or the Commission or on its own initiative, and to contribute to the preparation of the Council proceedings referred to in Article 148.

In fulfilling its mandate, the Committee shall consult management and labour.

Each Member State and the Commission shall appoint two members of the Committee.

# TITLE X

## SOCIAL POLICY

### *Article 151*

(ex Article 136 TEC)

The Union and the Member States, having in mind fundamental social rights such as those set out in the European Social Charter signed at Turin on 18 October 1961 and in the 1989 Community Charter of the Fundamental Social Rights of Workers, shall have as their objectives the promotion of employment, improved living and working conditions, so as to make possible their harmonisation while the improvement is being maintained, proper social protection, dialogue between management and labour, the development of human resources with a view to lasting high employment and the combating of exclusion.

To this end the Union and the Member States shall implement measures which take account of the diverse forms of national practices, in particular in the field of contractual relations, and the need to maintain the competitiveness of the Union economy.

They believe that such a development will ensue not only from the functioning of the internal market, which will favour the harmonisation of social systems, but also from the procedures provided for in the Treaties and from the approximation of provisions laid down by law, regulation or administrative action.

### *Article 152*

The Union recognises and promotes the role of the social partners at its level, taking into account the diversity of national systems. It shall facilitate dialogue between the social partners, respecting their autonomy.

The Tripartite Social Summit for Growth and Employment shall contribute to social dialogue.

### *Article 153*

(ex Article 137 TEC)

1.    With a view to achieving the objectives of Article 151, the Union shall support and complement the activities of the Member States in the following fields:

(a) improvement in particular of the working environment to protect workers' health and safety;

(b) working conditions;

(c) social security and social protection of workers;

(d) protection of workers where their employment contract is terminated;

(e) the information and consultation of workers;

(f)  representation and collective defence of the interests of workers and employers, including co-determination, subject to paragraph 5;

(g)  conditions of employment for third-country nationals legally residing in Union territory;

(h)  the integration of persons excluded from the labour market, without prejudice to Article 166;

(i)  equality between men and women with regard to labour market opportunities and treatment at work;

(j)  the combating of social exclusion;

(k)  the modernisation of social protection systems without prejudice to point (c).

2.  To this end, the European Parliament and the Council:

(a)  may adopt measures designed to encourage cooperation between Member States through initiatives aimed at improving knowledge, developing exchanges of information and best practices, promoting innovative approaches and evaluating experiences, excluding any harmonisation of the laws and regulations of the Member States;

(b)  may adopt, in the fields referred to in paragraph 1(a) to (i), by means of directives, minimum requirements for gradual implementation, having regard to the conditions and technical rules obtaining in each of the Member States. Such directives shall avoid imposing administrative, financial and legal constraints in a way which would hold back the creation and development of small and medium-sized undertakings.

The European Parliament and the Council shall act in accordance with the ordinary legislative procedure after consulting the Economic and Social Committee and the Committee of the Regions.

In the fields referred to in paragraph 1(c), (d), (f) and (g), the Council shall act unanimously, in accordance with a special legislative procedure, after consulting the European Parliament and the said Committees.

The Council, acting unanimously on a proposal from the Commission, after consulting the European Parliament, may decide to render the ordinary legislative procedure applicable to paragraph 1(d), (f) and (g).

3.  A Member State may entrust management and labour, at their joint request, with the implementation of directives adopted pursuant to paragraph 2, or, where appropriate, with the implementation of a Council decision adopted in accordance with Article 155.

In this case, it shall ensure that, no later than the date on which a directive or a decision must be transposed or implemented, management and labour have introduced the necessary measures by agreement, the Member State concerned being required to take any necessary measure enabling it at any time to be in a position to guarantee the results imposed by that directive or that decision.

4.    The provisions adopted pursuant to this Article:

— shall not affect the right of Member States to define the fundamental principles of their social security systems and must not significantly affect the financial equilibrium thereof,

— shall not prevent any Member State from maintaining or introducing more stringent protective measures compatible with the Treaties.

5.    The provisions of this Article shall not apply to pay, the right of association, the right to strike or the right to impose lock-outs.

## Article 154

### (ex Article 138 TEC)

1.    The Commission shall have the task of promoting the consultation of management and labour at Union level and shall take any relevant measure to facilitate their dialogue by ensuring balanced support for the parties.

2.    To this end, before submitting proposals in the social policy field, the Commission shall consult management and labour on the possible direction of Union action.

3.    If, after such consultation, the Commission considers Union action advisable, it shall consult management and labour on the content of the envisaged proposal. Management and labour shall forward to the Commission an opinion or, where appropriate, a recommendation.

4.    On the occasion of the consultation referred to in paragraphs 2 and 3, management and labour may inform the Commission of their wish to initiate the process provided for in Article 155. The duration of this process shall not exceed nine months, unless the management and labour concerned and the Commission decide jointly to extend it.

## Article 155

### (ex Article 139 TEC)

1.    Should management and labour so desire, the dialogue between them at Union level may lead to contractual relations, including agreements.

2.    Agreements concluded at Union level shall be implemented either in accordance with the procedures and practices specific to management and labour and the Member States or, in matters covered by Article 153, at the joint request of the signatory parties, by a Council decision on a proposal from the Commission. The European Parliament shall be informed.

The Council shall act unanimously where the agreement in question contains one or more provisions relating to one of the areas for which unanimity is required pursuant to Article 153(2).

## Article 156

(ex Article 140 TEC)

With a view to achieving the objectives of Article 151 and without prejudice to the other provisions of the Treaties, the Commission shall encourage cooperation between the Member States and facilitate the coordination of their action in all social policy fields under this Chapter, particularly in matters relating to:

— employment,

— labour law and working conditions,

— basic and advanced vocational training,

— social security,

— prevention of occupational accidents and diseases,

— occupational hygiene,

— the right of association and collective bargaining between employers and workers.

To this end, the Commission shall act in close contact with Member States by making studies, delivering opinions and arranging consultations both on problems arising at national level and on those of concern to international organisations, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

Before delivering the opinions provided for in this Article, the Commission shall consult the Economic and Social Committee.

## Article 157

(ex Article 141 TEC)

1.    Each Member State shall ensure that the principle of equal pay for male and female workers for equal work or work of equal value is applied.

2.    For the purpose of this Article, 'pay' means the ordinary basic or minimum wage or salary and any other consideration, whether in cash or in kind, which the worker receives directly or indirectly, in respect of his employment, from his employer.

Equal pay without discrimination based on sex means:

(a) that pay for the same work at piece rates shall be calculated on the basis of the same unit of measurement;

(b) that pay for work at time rates shall be the same for the same job.

3.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, and after consulting the Economic and Social Committee, shall adopt measures to ensure the application of the principle of equal opportunities and equal treatment of men and women in matters of employment and occupation, including the principle of equal pay for equal work or work of equal value.

4.    With a view to ensuring full equality in practice between men and women in working life, the principle of equal treatment shall not prevent any Member State from maintaining or adopting measures providing for specific advantages in order to make it easier for the underrepresented sex to pursue a vocational activity or to prevent or compensate for disadvantages in professional careers.

### Article 158

(ex Article 142 TEC)

Member States shall endeavour to maintain the existing equivalence between paid holiday schemes.

### Article 159

(ex Article 143 TEC)

The Commission shall draw up a report each year on progress in achieving the objectives of Article 151, including the demographic situation in the Union. It shall forward the report to the European Parliament, the Council and the Economic and Social Committee.

### Article 160

(ex Article 144 TEC)

The Council, acting by a simple majority after consulting the European Parliament, shall establish a Social Protection Committee with advisory status to promote cooperation on social protection policies between Member States and with the Commission. The tasks of the Committee shall be:

— to monitor the social situation and the development of social protection policies in the Member States and the Union,

— to promote exchanges of information, experience and good practice between Member States and with the Commission,

— without prejudice to Article 240, to prepare reports, formulate opinions or undertake other work within its fields of competence, at the request of either the Council or the Commission or on its own initiative.

In fulfilling its mandate, the Committee shall establish appropriate contacts with management and labour.

Each Member State and the Commission shall appoint two members of the Committee.

## Article 161

(ex Article 145 TEC)

The Commission shall include a separate chapter on social developments within the Union in its annual report to the European Parliament.

The European Parliament may invite the Commission to draw up reports on any particular problems concerning social conditions.

## TITLE XI

### THE EUROPEAN SOCIAL FUND

## Article 162

(ex Article 146 TEC)

In order to improve employment opportunities for workers in the internal market and to contribute thereby to raising the standard of living, a European Social Fund is hereby established in accordance with the provisions set out below; it shall aim to render the employment of workers easier and to increase their geographical and occupational mobility within the Union, and to facilitate their adaptation to industrial changes and to changes in production systems, in particular through vocational training and retraining.

## Article 163

(ex Article 147 TEC)

The Fund shall be administered by the Commission.

The Commission shall be assisted in this task by a Committee presided over by a Member of the Commission and composed of representatives of governments, trade unions and employers' organisations.

## Article 164

(ex Article 148 TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall adopt implementing regulations relating to the European Social Fund.

# TITLE XII

## EDUCATION, VOCATIONAL TRAINING, YOUTH AND SPORT

### *Article 165*

(ex Article 149 TEC)

1.    The Union shall contribute to the development of quality education by encouraging cooperation between Member States and, if necessary, by supporting and supplementing their action, while fully respecting the responsibility of the Member States for the content of teaching and the organisation of education systems and their cultural and linguistic diversity.

The Union shall contribute to the promotion of European sporting issues, while taking account of the specific nature of sport, its structures based on voluntary activity and its social and educational function.

2.    Union action shall be aimed at:

— developing the European dimension in education, particularly through the teaching and dissemination of the languages of the Member States,

— encouraging mobility of students and teachers, by encouraging inter alia, the academic recognition of diplomas and periods of study,

— promoting cooperation between educational establishments,

— developing exchanges of information and experience on issues common to the education systems of the Member States,

— encouraging the development of youth exchanges and of exchanges of socio-educational instructors, and encouraging the participation of young people in democratic life in Europe,

— encouraging the development of distance education,

— developing the European dimension in sport, by promoting fairness and openness in sporting competitions and cooperation between bodies responsible for sports, and by protecting the physical and moral integrity of sportsmen and sportswomen, especially the youngest sportsmen and sportswomen.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the field of education and sport, in particular the Council of Europe.

4.    In order to contribute to the achievement of the objectives referred to in this Article:

— the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, after consulting the Economic and Social Committee and the Committee of the Regions, shall adopt incentive measures, excluding any harmonisation of the laws and regulations of the Member States,

— the Council, on a proposal from the Commission, shall adopt recommendations.

## Article 166

(ex Article 150 TEC)

1.    The Union shall implement a vocational training policy which shall support and supplement the action of the Member States, while fully respecting the responsibility of the Member States for the content and organisation of vocational training.

2.    Union action shall aim to:

— facilitate adaptation to industrial changes, in particular through vocational training and retraining,

— improve initial and continuing vocational training in order to facilitate vocational integration and reintegration into the labour market,

— facilitate access to vocational training and encourage mobility of instructors and trainees and particularly young people,

— stimulate cooperation on training between educational or training establishments and firms,

— develop exchanges of information and experience on issues common to the training systems of the Member States.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the sphere of vocational training.

4.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall adopt measures to contribute to the achievement of the objectives referred to in this Article, excluding any harmonisation of the laws and regulations of the Member States, and the Council, on a proposal from the Commission, shall adopt recommendations.

## TITLE XIII

### CULTURE

## Article 167

(ex Article 151 TEC)

1.    The Union shall contribute to the flowering of the cultures of the Member States, while respecting their national and regional diversity and at the same time bringing the common cultural heritage to the fore.

2.    Action by the Union shall be aimed at encouraging cooperation between Member States and, if necessary, supporting and supplementing their action in the following areas:

— improvement of the knowledge and dissemination of the culture and history of the European peoples,

— conservation and safeguarding of cultural heritage of European significance,

— non-commercial cultural exchanges,

— artistic and literary creation, including in the audiovisual sector.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the sphere of culture, in particular the Council of Europe.

4.    The Union shall take cultural aspects into account in its action under other provisions of the Treaties, in particular in order to respect and to promote the diversity of its cultures.

5.    In order to contribute to the achievement of the objectives referred to in this Article:

— the European Parliament and the Council acting in accordance with the ordinary legislative procedure and after consulting the Committee of the Regions, shall adopt incentive measures, excluding any harmonisation of the laws and regulations of the Member States,

— the Council, on a proposal from the Commission, shall adopt recommendations.

## TITLE XIV

### PUBLIC HEALTH

### Article 168

(ex Article 152 TEC)

1.    A high level of human health protection shall be ensured in the definition and implementation of all Union policies and activities.

Union action, which shall complement national policies, shall be directed towards improving public health, preventing physical and mental illness and diseases, and obviating sources of danger to physical and mental health. Such action shall cover the fight against the major health scourges, by promoting research into their causes, their transmission and their prevention, as well as health information and education, and monitoring, early warning of and combating serious cross-border threats to health.

The Union shall complement the Member States' action in reducing drugs-related health damage, including information and prevention.

2.    The Union shall encourage cooperation between the Member States in the areas referred to in this Article and, if necessary, lend support to their action. It shall in particular encourage cooperation between the Member States to improve the complementarity of their health services in cross-border areas.

Member States shall, in liaison with the Commission, coordinate among themselves their policies and programmes in the areas referred to in paragraph 1. The Commission may, in close contact with the Member States, take any useful initiative to promote such coordination, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

3.    The Union and the Member States shall foster cooperation with third countries and the competent international organisations in the sphere of public health.

4.    By way of derogation from Article 2(5) and Article 6(a) and in accordance with Article 4(2)(k) the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall contribute to the achievement of the objectives referred to in this Article through adopting in order to meet common safety concerns:

(a)    measures setting high standards of quality and safety of organs and substances of human origin, blood and blood derivatives; these measures shall not prevent any Member State from maintaining or introducing more stringent protective measures;

(b)    measures in the veterinary and phytosanitary fields which have as their direct objective the protection of public health;

(c)    measures setting high standards of quality and safety for medicinal products and devices for medical use.

5.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, may also adopt incentive measures designed to protect and improve human health and in particular to combat the major cross-border health scourges, measures concerning monitoring, early warning of and combating serious cross-border threats to health, and measures which have as their direct objective the protection of public health regarding tobacco and the abuse of alcohol, excluding any harmonisation of the laws and regulations of the Member States.

6.    The Council, on a proposal from the Commission, may also adopt recommendations for the purposes set out in this Article.

7.    Union action shall respect the responsibilities of the Member States for the definition of their health policy and for the organisation and delivery of health services and medical care. The

responsibilities of the Member States shall include the management of health services and medical care and the allocation of the resources assigned to them. The measures referred to in paragraph 4(a) shall not affect national provisions on the donation or medical use of organs and blood.

# TITLE XV

## CONSUMER PROTECTION

### Article 169

(ex Article 153 TEC)

1.   In order to promote the interests of consumers and to ensure a high level of consumer protection, the Union shall contribute to protecting the health, safety and economic interests of consumers, as well as to promoting their right to information, education and to organise themselves in order to safeguard their interests.

2.   The Union shall contribute to the attainment of the objectives referred to in paragraph 1 through:

(a) measures adopted pursuant to Article 114 in the context of the completion of the internal market;

(b) measures which support, supplement and monitor the policy pursued by the Member States.

3.   The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall adopt the measures referred to in paragraph 2(b).

4.   Measures adopted pursuant to paragraph 3 shall not prevent any Member State from maintaining or introducing more stringent protective measures. Such measures must be compatible with the Treaties. The Commission shall be notified of them.

# TITLE XVI

## TRANS-EUROPEAN NETWORKS

### Article 170

(ex Article 154 TEC)

1.   To help achieve the objectives referred to in Articles 26 and 174 and to enable citizens of the Union, economic operators and regional and local communities to derive full benefit from the setting-up of an area without internal frontiers, the Union shall contribute to the establishment and development of trans-European networks in the areas of transport, telecommunications and energy infrastructures.

2.    Within the framework of a system of open and competitive markets, action by the Union shall aim at promoting the interconnection and interoperability of national networks as well as access to such networks. It shall take account in particular of the need to link island, landlocked and peripheral regions with the central regions of the Union.

## Article 171

### (ex Article 155 TEC)

1.    In order to achieve the objectives referred to in Article 170, the Union:

— shall establish a series of guidelines covering the objectives, priorities and broad lines of measures envisaged in the sphere of trans-European networks; these guidelines shall identify projects of common interest,

— shall implement any measures that may prove necessary to ensure the interoperability of the networks, in particular in the field of technical standardisation,

— may support projects of common interest supported by Member States, which are identified in the framework of the guidelines referred to in the first indent, particularly through feasibility studies, loan guarantees or interest-rate subsidies; the Union may also contribute, through the Cohesion Fund set up pursuant to Article 177, to the financing of specific projects in Member States in the area of transport infrastructure.

The Union's activities shall take into account the potential economic viability of the projects.

2.    Member States shall, in liaison with the Commission, coordinate among themselves the policies pursued at national level which may have a significant impact on the achievement of the objectives referred to in Article 170. The Commission may, in close cooperation with the Member State, take any useful initiative to promote such coordination.

3.    The Union may decide to cooperate with third countries to promote projects of mutual interest and to ensure the interoperability of networks.

## Article 172

### (ex Article 156 TEC)

The guidelines and other measures referred to in Article 171(1) shall be adopted by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

Guidelines and projects of common interest which relate to the territory of a Member State shall require the approval of the Member State concerned.

# TITLE XVII

## INDUSTRY

*Article 173*

(ex Article 157 TEC)

1.    The Union and the Member States shall ensure that the conditions necessary for the competitiveness of the Union's industry exist.

For that purpose, in accordance with a system of open and competitive markets, their action shall be aimed at:

— speeding up the adjustment of industry to structural changes,

— encouraging an environment favourable to initiative and to the development of undertakings throughout the Union, particularly small and medium-sized undertakings,

— encouraging an environment favourable to cooperation between undertakings,

— fostering better exploitation of the industrial potential of policies of innovation, research and technological development.

2.    The Member States shall consult each other in liaison with the Commission and, where necessary, shall coordinate their action. The Commission may take any useful initiative to promote such coordination, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The European Parliament shall be kept fully informed.

3.    The Union shall contribute to the achievement of the objectives set out in paragraph 1 through the policies and activities it pursues under other provisions of the Treaties. The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, may decide on specific measures in support of action taken in the Member States to achieve the objectives set out in paragraph 1, excluding any harmonisation of the laws and regulations of the Member States.

This Title shall not provide a basis for the introduction by the Union of any measure which could lead to a distortion of competition or contains tax provisions or provisions relating to the rights and interests of employed persons.

# TITLE XVIII

## ECONOMIC, SOCIAL AND TERRITORIAL COHESION

### Article 174

#### (ex Article 158 TEC)

In order to promote its overall harmonious development, the Union shall develop and pursue its actions leading to the strengthening of its economic, social and territorial cohesion.

In particular, the Union shall aim at reducing disparities between the levels of development of the various regions and the backwardness of the least favoured regions.

Among the regions concerned, particular attention shall be paid to rural areas, areas affected by industrial transition, and regions which suffer from severe and permanent natural or demographic handicaps such as the northernmost regions with very low population density and island, cross-border and mountain regions.

### Article 175

#### (ex Article 159 TEC)

Member States shall conduct their economic policies and shall coordinate them in such a way as, in addition, to attain the objectives set out in Article 174. The formulation and implementation of the Union's policies and actions and the implementation of the internal market shall take into account the objectives set out in Article 174 and shall contribute to their achievement. The Union shall also support the achievement of these objectives by the action it takes through the Structural Funds (European Agricultural Guidance and Guarantee Fund, Guidance Section; European Social Fund; European Regional Development Fund), the European Investment Bank and the other existing Financial Instruments.

The Commission shall submit a report to the European Parliament, the Council, the Economic and Social Committee and the Committee of the Regions every three years on the progress made towards achieving economic, social and territorial cohesion and on the manner in which the various means provided for in this Article have contributed to it. This report shall, if necessary, be accompanied by appropriate proposals.

If specific actions prove necessary outside the Funds and without prejudice to the measures decided upon within the framework of the other Union policies, such actions may be adopted by the European Parliament and the Council acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

### Article 176

#### (ex Article 160 TEC)

The European Regional Development Fund is intended to help to redress the main regional imbalances in the Union through participation in the development and structural adjustment of regions whose development is lagging behind and in the conversion of declining industrial regions.

## Article 177

*(ex Article 161 TEC)*

Without prejudice to Article 178, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure and consulting the Economic and Social Committee and the Committee of the Regions, shall define the tasks, priority objectives and the organisation of the Structural Funds, which may involve grouping the Funds. The general rules applicable to them and the provisions necessary to ensure their effectiveness and the coordination of the Funds with one another and with the other existing Financial Instruments shall also be defined by the same procedure.

A Cohesion Fund set up in accordance with the same procedure shall provide a financial contribution to projects in the fields of environment and trans-European networks in the area of transport infrastructure.

## Article 178

*(ex Article 162 TEC)*

Implementing regulations relating to the European Regional Development Fund shall be taken by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

With regard to the European Agricultural Guidance and Guarantee Fund, Guidance Section, and the European Social Fund, Articles 43 and 164 respectively shall continue to apply.

## TITLE XIX

### RESEARCH AND TECHNOLOGICAL DEVELOPMENT AND SPACE

## Article 179

*(ex Article 163 TEC)*

1.    The Union shall have the objective of strengthening its scientific and technological bases by achieving a European research area in which researchers, scientific knowledge and technology circulate freely, and encouraging it to become more competitive, including in its industry, while promoting all the research activities deemed necessary by virtue of other Chapters of the Treaties.

2.    For this purpose the Union shall, throughout the Union, encourage undertakings, including small and medium-sized undertakings, research centres and universities in their research and technological development activities of high quality; it shall support their efforts to cooperate with one another, aiming, notably, at permitting researchers to cooperate freely across borders and at enabling undertakings to exploit the internal market potential to the full, in particular through the opening-up of national public contracts, the definition of common standards and the removal of legal and fiscal obstacles to that cooperation.

3.     All Union activities under the Treaties in the area of research and technological development, including demonstration projects, shall be decided on and implemented in accordance with the provisions of this Title.

## Article  180

### (ex Article  164 TEC)

In pursuing these objectives, the Union shall carry out the following activities, complementing the activities carried out in the Member States:

(a) implementation of research, technological development and demonstration programmes, by promoting cooperation with and between undertakings, research centres and universities;

(b) promotion of cooperation in the field of Union research, technological development and demonstration with third countries and international organisations;

(c) dissemination and optimisation of the results of activities in Union research, technological development and demonstration;

(d) stimulation of the training and mobility of researchers in the Union.

## Article  181

### (ex Article  165 TEC)

1.     The Union and the Member States shall coordinate their research and technological development activities so as to ensure that national policies and Union policy are mutually  consistent.

2.     In close cooperation with the Member State, the Commission may take any useful initiative to promote the coordination referred to in paragraph  1, in particular initiatives aiming at the establishment of guidelines and indicators, the organisation of exchange of best practice, and the preparation of the necessary elements for periodic monitoring and evaluation. The  European  Parliament shall be kept fully informed.

## Article  182

### (ex Article  166 TEC)

1.     A multiannual framework programme, setting out all the activities of the Union, shall be adopted by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure after consulting the Economic and Social Committee.

The framework programme shall:

— establish the scientific and technological objectives to be achieved by the activities provided for in Article  180 and fix the relevant priorities,

C 202/130    [EN]    Official Journal of the European Union    7.6.2016

— indicate the broad lines of such activities,

— fix the maximum overall amount and the detailed rules for Union financial participation in the framework programme and the respective shares in each of the activities provided for.

2.    The framework programme shall be adapted or supplemented as the situation changes.

3.    The framework programme shall be implemented through specific programmes developed within each activity. Each specific programme shall define the detailed rules for implementing it, fix its duration and provide for the means deemed necessary. The sum of the amounts deemed necessary, fixed in the specific programmes, may not exceed the overall maximum amount fixed for the framework programme and each activity.

4.    The Council, acting in accordance with a special legislative procedure and after consulting the European Parliament and the Economic and Social Committee, shall adopt the specific programmes.

5.    As a complement to the activities planned in the multiannual framework programme, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall establish the measures necessary for the implementation of the European research area.

### Article 183

(ex Article 167 TEC)

For the implementation of the multiannual framework programme the Union shall:

— determine the rules for the participation of undertakings, research centres and universities,

— lay down the rules governing the dissemination of research results.

### Article 184

(ex Article 168 TEC)

In implementing the multiannual framework programme, supplementary programmes may be decided on involving the participation of certain Member States only, which shall finance them subject to possible Union participation.

The Union shall adopt the rules applicable to supplementary programmes, particularly as regards the dissemination of knowledge and access by other Member States.

### Article 185

(ex Article 169 TEC)

In implementing the multiannual framework programme, the Union may make provision, in agreement with the Member States concerned, for participation in research and development programmes undertaken by several Member States, including participation in the structures created for the execution of those programmes.

### Article 186

(ex Article 170 TEC)

In implementing the multiannual framework programme the Union may make provision for cooperation in Union research, technological development and demonstration with third countries or international organisations.

The detailed arrangements for such cooperation may be the subject of agreements between the Union and the third parties concerned.

### Article 187

(ex Article 171 TEC)

The Union may set up joint undertakings or any other structure necessary for the efficient execution of Union research, technological development and demonstration programmes.

### Article 188

(ex Article 172 TEC)

The Council, on a proposal from the Commission and after consulting the European Parliament and the Economic and Social Committee, shall adopt the provisions referred to in Article 187.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee, shall adopt the provisions referred to in Articles 183, 184 and 185. Adoption of the supplementary programmes shall require the agreement of the Member States concerned.

### Article 189

1.   To promote scientific and technical progress, industrial competitiveness and the implementation of its policies, the Union shall draw up a European space policy. To this end, it may promote joint initiatives, support research and technological development and coordinate the efforts needed for the exploration and exploitation of space.

2.    To contribute to attaining the objectives referred to in paragraph 1, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish the necessary measures, which may take the form of a European space programme, excluding any harmonisation of the laws and regulations of the Member States.

3.    The Union shall establish any appropriate relations with the European Space Agency.

4.    This Article shall be without prejudice to the other provisions of this Title.

## Article 190

### (ex Article 173 TEC)

At the beginning of each year the Commission shall send a report to the European Parliament and to the Council. The report shall include information on research and technological development activities and the dissemination of results during the previous year, and the work programme for the current year.

## TITLE XX

### ENVIRONMENT

## Article 191

### (ex Article 174 TEC)

1.    Union policy on the environment shall contribute to pursuit of the following objectives:

— preserving, protecting and improving the quality of the environment,

— protecting human health,

— prudent and rational utilisation of natural resources,

— promoting measures at international level to deal with regional or worldwide environmental problems, and in particular combating climate change.

2.    Union policy on the environment shall aim at a high level of protection taking into account the diversity of situations in the various regions of the Union. It shall be based on the precautionary principle and on the principles that preventive action should be taken, that environmental damage should as a priority be rectified at source and that the polluter should pay.

In this context, harmonisation measures answering environmental protection requirements shall include, where appropriate, a safeguard clause allowing Member States to take provisional measures, for non-economic environmental reasons, subject to a procedure of inspection by the Union.

3.    In preparing its policy on the environment, the Union shall take account of:

— available scientific and technical data,

— environmental conditions in the various regions of the Union,

— the potential benefits and costs of action or lack of action,

— the economic and social development of the Union as a whole and the balanced development of its regions.

4.    Within their respective spheres of competence, the Union and the Member States shall cooperate with third countries and with the competent international organisations. The arrangements for Union cooperation may be the subject of agreements between the Union and the third parties concerned.

The previous subparagraph shall be without prejudice to Member States' competence to negotiate in international bodies and to conclude international agreements.

### Article 192

(ex Article 175 TEC)

1.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions, shall decide what action is to be taken by the Union in order to achieve the objectives referred to in Article 191.

2.    By way of derogation from the decision-making procedure provided for in paragraph 1 and without prejudice to Article 114, the Council acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament, the Economic and Social Committee and the Committee of the Regions, shall adopt:

(a) provisions primarily of a fiscal nature;

(b) measures affecting:

    — town and country planning,

    — quantitative management of water resources or affecting, directly or indirectly, the availability of those resources,

    — land use, with the exception of waste management;

(c) measures significantly affecting a Member State's choice between different energy sources and the general structure of its energy supply.

The Council, acting unanimously on a proposal from the Commission and after consulting the European Parliament, the Economic and Social Committee and the Committee of the Regions, may make the ordinary legislative procedure applicable to the matters referred to in the first subparagraph.

3.    General action programmes setting out priority objectives to be attained shall be adopted by the European Parliament and the Council, acting in accordance with the ordinary legislative procedure and after consulting the Economic and Social Committee and the Committee of the Regions.

The measures necessary for the implementation of these programmes shall be adopted under the terms of paragraph 1 or 2, as the case may be.

4.    Without prejudice to certain measures adopted by the Union, the Member States shall finance and implement the environment policy.

5.    Without prejudice to the principle that the polluter should pay, if a measure based on the provisions of paragraph 1 involves costs deemed disproportionate for the public authorities of a Member State, such measure shall lay down appropriate provisions in the form of:

— temporary derogations, and/or

— financial support from the Cohesion Fund set up pursuant to Article 177.

## Article 193

(ex Article 176 TEC)

The protective measures adopted pursuant to Article 192 shall not prevent any Member State from maintaining or introducing more stringent protective measures. Such measures must be compatible with the Treaties. They shall be notified to the Commission.

## TITLE XXI

### ENERGY

## Article 194

1.    In the context of the establishment and functioning of the internal market and with regard for the need to preserve and improve the environment, Union policy on energy shall aim, in a spirit of solidarity between Member States, to:

(a)  ensure the functioning of the energy market;

(b)  ensure security of energy supply in the Union;

(c)  promote energy efficiency and energy saving and the development of new and renewable forms of energy; and

(d)  promote the interconnection of energy networks.

2.    Without prejudice to the application of other provisions of the Treaties, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish the measures necessary to achieve the objectives in paragraph 1. Such measures shall be adopted after consultation of the Economic and Social Committee and the Committee of the Regions.

Such measures shall not affect a Member State's right to determine the conditions for exploiting its energy resources, its choice between different energy sources and the general structure of its energy supply, without prejudice to Article 192(2)(c).

3.    By way of derogation from paragraph 2, the Council, acting in accordance with a special legislative procedure, shall unanimously and after consulting the European Parliament, establish the measures referred to therein when they are primarily of a fiscal nature.

## TITLE XXII

### TOURISM

### Article 195

1.    The Union shall complement the action of the Member States in the tourism sector, in particular by promoting the competitiveness of Union undertakings in that sector.

To that end, Union action shall be aimed at:

(a) encouraging the creation of a favourable environment for the development of undertakings in this sector;

(b) promoting cooperation between the Member States, particularly by the exchange of good practice.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish specific measures to complement actions within the Member States to achieve the objectives referred to in this Article, excluding any harmonisation of the laws and regulations of the Member States.

## TITLE XXIII

### CIVIL PROTECTION

### Article 196

1.    The Union shall encourage cooperation between Member States in order to improve the effectiveness of systems for preventing and protecting against natural or man-made disasters.

Union action shall aim to:

(a) support and complement Member States' action at national, regional and local level in risk prevention, in preparing their civil-protection personnel and in responding to natural or man-made disasters within the Union;

(b) promote swift, effective operational cooperation within the Union between national civil-protection services;

(c) promote consistency in international civil-protection work.

2.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure shall establish the measures necessary to help achieve the objectives referred to in paragraph 1, excluding any harmonisation of the laws and regulations of the Member States.

## TITLE XXIV

### ADMINISTRATIVE COOPERATION

*Article  197*

1.    Effective implementation of Union law by the Member States, which is essential for the proper functioning of the Union, shall be regarded as a matter of common interest.

2.    The Union may support the efforts of Member States to improve their administrative capacity to implement Union law. Such action may include facilitating the exchange of information and of civil servants as well as supporting training schemes. No Member State shall be obliged to avail itself of such support. The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall establish the necessary measures to this end, excluding any harmonisation of the laws and regulations of the Member States.

3.    This Article shall be without prejudice to the obligations of the Member States to implement Union law or to the prerogatives and duties of the Commission. It shall also be without prejudice to other provisions of the Treaties providing for administrative cooperation among the Member States and between them and the Union.

# PART FOUR

## ASSOCIATION OF THE OVERSEAS COUNTRIES AND TERRITORIES

### Article 198

(ex Article 182 TEC)

The Member States agree to associate with the Union the non-European countries and territories which have special relations with Denmark, France, the Netherlands and the United Kingdom. These countries and territories (hereinafter called the 'countries and territories') are listed in Annex II.

The purpose of association shall be to promote the economic and social development of the countries and territories and to establish close economic relations between them and the Union as a whole.

In accordance with the principles set out in the preamble to this Treaty, association shall serve primarily to further the interests and prosperity of the inhabitants of these countries and territories in order to lead them to the economic, social and cultural development to which they aspire.

### Article 199

(ex Article 183 TEC)

Association shall have the following objectives.

1. Member States shall apply to their trade with the countries and territories the same treatment as they accord each other pursuant to the Treaties.

2. Each country or territory shall apply to its trade with Member States and with the other countries and territories the same treatment as that which it applies to the European State with which is has special relations.

3. The Member States shall contribute to the investments required for the progressive development of these countries and territories.

4. For investments financed by the Union, participation in tenders and supplies shall be open on equal terms to all natural and legal persons who are nationals of a Member State or of one of the countries and territories.

5. In relations between Member States and the countries and territories the right of establishment of nationals and companies or firms shall be regulated in accordance with the provisions and procedures laid down in the Chapter relating to the right of establishment and on a non-discriminatory basis, subject to any special provisions laid down pursuant to Article 203.

## Article 200

### (ex Article 184 TEC)

1.    Customs duties on imports into the Member States of goods originating in the countries and territories shall be prohibited in conformity with the prohibition of customs duties between Member States in accordance with the provisions of the Treaties.

2.    Customs duties on imports into each country or territory from Member States or from the other countries or territories shall be prohibited in accordance with the provisions of Article 30.

3.    The countries and territories may, however, levy customs duties which meet the needs of their development and industrialisation or produce revenue for their budgets.

The duties referred to in the preceding subparagraph may not exceed the level of those imposed on imports of products from the Member State with which each country or territory has special relations.

4.    Paragraph 2 shall not apply to countries and territories which, by reason of the particular international obligations by which they are bound, already apply a non-discriminatory customs tariff.

5.    The introduction of or any change in customs duties imposed on goods imported into the countries and territories shall not, either in law or in fact, give rise to any direct or indirect discrimination between imports from the various Member States.

## Article 201

### (ex Article 185 TEC)

If the level of the duties applicable to goods from a third country on entry into a country or territory is liable, when the provisions of Article 200(1) have been applied, to cause deflections of trade to the detriment of any Member State, the latter may request the Commission to propose to the other Member States the measures needed to remedy the situation.

## Article 202

### (ex Article 186 TEC)

Subject to the provisions relating to public health, public security or public policy, freedom of movement within Member States for workers from the countries and territories, and within the countries and territories for workers from Member States, shall be regulated by acts adopted in accordance with Article 203.

*Article 203*

(ex Article 187 TEC)

The Council, acting unanimously on a proposal from the Commission, shall, on the basis of the experience acquired under the association of the countries and territories with the Union and of the principles set out in the Treaties, lay down provisions as regards the detailed rules and the procedure for the association of the countries and territories with the Union. Where the provisions in question are adopted by the Council in accordance with a special legislative procedure, it shall act unanimously on a proposal from the Commission and after consulting the European Parliament.

*Article 204*

(ex Article 188 TEC)

The provisions of Articles 198 to 203 shall apply to Greenland, subject to the specific provisions for Greenland set out in the Protocol on special arrangements for Greenland, annexed to the Treaties.

# PART FIVE

## THE UNION'S EXTERNAL ACTION

### TITLE I

#### GENERAL PROVISIONS ON THE UNION'S EXTERNAL ACTION

*Article 205*

The Union's action on the international scene, pursuant to this Part, shall be guided by the principles, pursue the objectives and be conducted in accordance with the general provisions laid down in Chapter 1 of Title V of the Treaty on European Union.

### TITLE II

#### COMMON COMMERCIAL POLICY

*Article 206*

(ex Article 131 TEC)

By establishing a customs union in accordance with Articles 28 to 32, the Union shall contribute, in the common interest, to the harmonious development of world trade, the progressive abolition of restrictions on international trade and on foreign direct investment, and the lowering of customs and other barriers.

Official Journal of the European Union

## Article 207

(ex Article 133 TEC)

1.    The common commercial policy shall be based on uniform principles, particularly with regard to changes in tariff rates, the conclusion of tariff and trade agreements relating to trade in goods and services, and the commercial aspects of intellectual property, foreign direct investment, the achievement of uniformity in measures of liberalisation, export policy and measures to protect trade such as those to be taken in the event of dumping or subsidies. The common commercial policy shall be conducted in the context of the principles and objectives of the Union's external action.

2.    The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall adopt the measures defining the framework for implementing the common commercial policy.

3.    Where agreements with one or more third countries or international organisations need to be negotiated and concluded, Article 218 shall apply, subject to the special provisions of this Article.

The Commission shall make recommendations to the Council, which shall authorise it to open the necessary negotiations. The Council and the Commission shall be responsible for ensuring that the agreements negotiated are compatible with internal Union policies and rules.

The Commission shall conduct these negotiations in consultation with a special committee appointed by the Council to assist the Commission in this task and within the framework of such directives as the Council may issue to it. The Commission shall report regularly to the special committee and to the European Parliament on the progress of negotiations.

4.    For the negotiation and conclusion of the agreements referred to in paragraph 3, the Council shall act by a qualified majority.

For the negotiation and conclusion of agreements in the fields of trade in services and the commercial aspects of intellectual property, as well as foreign direct investment, the Council shall act unanimously where such agreements include provisions for which unanimity is required for the adoption of internal rules.

The Council shall also act unanimously for the negotiation and conclusion of agreements:

(a)  in the field of trade in cultural and audiovisual services, where these agreements risk prejudicing the Union's cultural and linguistic diversity;

(b)  in the field of trade in social, education and health services, where these agreements risk seriously disturbing the national organisation of such services and prejudicing the responsibility of Member States to deliver them.

5.    The negotiation and conclusion of international agreements in the field of transport shall be subject to Title VI of Part Three and to Article 218.

6.    The exercise of the competences conferred by this Article in the field of the common commercial policy shall not affect the delimitation of competences between the Union and the Member States, and shall not lead to harmonisation of legislative or regulatory provisions of the Member States in so far as the Treaties exclude such harmonisation.

## TITLE III

### COOPERATION WITH THIRD COUNTRIES AND HUMANITARIAN AID

#### CHAPTER 1

#### DEVELOPMENT COOPERATION

### Article 208

(ex Article 177 TEC)

1.    Union policy in the field of development cooperation shall be conducted within the framework of the principles and objectives of the Union's external action. The Union's development cooperation policy and that of the Member States complement and reinforce each other.

Union development cooperation policy shall have as its primary objective the reduction and, in the long term, the eradication of poverty. The Union shall take account of the objectives of development cooperation in the policies that it implements which are likely to affect developing countries.

2.    The Union and the Member States shall comply with the commitments and take account of the objectives they have approved in the context of the United Nations and other competent international organisations.

### Article 209

(ex Article 179 TEC)

1.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt the measures necessary for the implementation of development cooperation policy, which may relate to multiannual cooperation programmes with developing countries or programmes with a thematic approach.

2.    The Union may conclude with third countries and competent international organisations any agreement helping to achieve the objectives referred to in Article 21 of the Treaty on European Union and in Article 208 of this Treaty.

The first subparagraph shall be without prejudice to Member States' competence to negotiate in international bodies and to conclude agreements.

3.    The European Investment Bank shall contribute, under the terms laid down in its Statute, to the implementation of the measures referred to in paragraph 1.

## Article 210

(ex Article 180 TEC)

1.   In order to promote the complementarity and efficiency of their action, the Union and the Member States shall coordinate their policies on development cooperation and shall consult each other on their aid programmes, including in international organisations and during international conferences. They may undertake joint action. Member States shall contribute if necessary to the implementation of Union aid programmes.

2.   The Commission may take any useful initiative to promote the coordination referred to in paragraph 1.

## Article 211

(ex Article 181 TEC)

Within their respective spheres of competence, the Union and the Member States shall cooperate with third countries and with the competent international organisations.

## CHAPTER 2

## ECONOMIC, FINANCIAL AND TECHNICAL COOPERATION WITH THIRD COUNTRIES

## Article 212

(ex Article 181a TEC)

1.   Without prejudice to the other provisions of the Treaties, and in particular Articles 208 to 211, the Union shall carry out economic, financial and technical cooperation measures, including assistance, in particular financial assistance, with third countries other than developing countries. Such measures shall be consistent with the development policy of the Union and shall be carried out within the framework of the principles and objectives of its external action. The Union's operations and those of the Member States shall complement and reinforce each other.

2.   The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt the measures necessary for the implementation of paragraph 1.

3.   Within their respective spheres of competence, the Union and the Member States shall cooperate with third countries and the competent international organisations. The arrangements for Union cooperation may be the subject of agreements between the Union and the third parties concerned.

The first subparagraph shall be without prejudice to the Member States' competence to negotiate in international bodies and to conclude international agreements.

*Article 213*

When the situation in a third country requires urgent financial assistance from the Union, the Council shall adopt the necessary decisions on a proposal from the Commission.

CHAPTER 3

HUMANITARIAN AID

*Article 214*

1.    The Union's operations in the field of humanitarian aid shall be conducted within the framework of the principles and objectives of the external action of the Union. Such operations shall be intended to provide *ad hoc* assistance and relief and protection for people in third countries who are victims of natural or man-made disasters, in order to meet the humanitarian needs resulting from these different situations. The Union's measures and those of the Member States shall complement and reinforce each other.

2.    Humanitarian aid operations shall be conducted in compliance with the principles of international law and with the principles of impartiality, neutrality and non-discrimination.

3.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall establish the measures defining the framework within which the Union's humanitarian aid operations shall be implemented.

4.    The Union may conclude with third countries and competent international organisations any agreement helping to achieve the objectives referred to in paragraph 1 and in Article 21 of the Treaty on European Union.

The first subparagraph shall be without prejudice to Member States' competence to negotiate in international bodies and to conclude agreements.

5.    In order to establish a framework for joint contributions from young Europeans to the humanitarian aid operations of the Union, a European Voluntary Humanitarian Aid Corps shall be set up. The European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall determine the rules and procedures for the operation of the Corps.

6.    The Commission may take any useful initiative to promote coordination between actions of the Union and those of the Member States, in order to enhance the efficiency and complementarity of Union and national humanitarian aid measures.

7.    The Union shall ensure that its humanitarian aid operations are coordinated and consistent with those of international organisations and bodies, in particular those forming part of the United Nations system.

# TITLE IV

## RESTRICTIVE MEASURES

### *Article 215*

(ex Article 301 TEC)

1.    Where a decision, adopted in accordance with Chapter 2 of Title V of the Treaty on European Union, provides for the interruption or reduction, in part or completely, of economic and financial relations with one or more third countries, the Council, acting by a qualified majority on a joint proposal from the High Representative of the Union for Foreign Affairs and Security Policy and the Commission, shall adopt the necessary measures. It shall inform the European Parliament thereof.

2.    Where a decision adopted in accordance with Chapter 2 of Title V of the Treaty on European Union so provides, the Council may adopt restrictive measures under the procedure referred to in paragraph 1 against natural or legal persons and groups or non-State entities.

3.    The acts referred to in this Article shall include necessary provisions on legal safeguards.

# TITLE V

## INTERNATIONAL AGREEMENTS

### *Article 216*

1.    The Union may conclude an agreement with one or more third countries or international organisations where the Treaties so provide or where the conclusion of an agreement is necessary in order to achieve, within the framework of the Union's policies, one of the objectives referred to in the Treaties, or is provided for in a legally binding Union act or is likely to affect common rules or alter their scope.

2.    Agreements concluded by the Union are binding upon the institutions of the Union and on its Member States.

### *Article 217*

(ex Article 310 TEC)

The Union may conclude with one or more third countries or international organisations agreements establishing an association involving reciprocal rights and obligations, common action and special procedure.

### *Article 218*

(ex Article 300 TEC)

1.    Without prejudice to the specific provisions laid down in Article 207, agreements between the Union and third countries or international organisations shall be negotiated and concluded in accordance with the following procedure.

2.    The Council shall authorise the opening of negotiations, adopt negotiating directives, authorise the signing of agreements and conclude them.

3.    The Commission, or the High Representative of the Union for Foreign Affairs and Security Policy where the agreement envisaged relates exclusively or principally to the common foreign and security policy, shall submit recommendations to the Council, which shall adopt a decision authorising the opening of negotiations and, depending on the subject of the agreement envisaged, nominating the Union negotiator or the head of the Union's negotiating team.

4.    The Council may address directives to the negotiator and designate a special committee in consultation with which the negotiations must be conducted.

5.    The Council, on a proposal by the negotiator, shall adopt a decision authorising the signing of the agreement and, if necessary, its provisional application before entry into force.

6.    The Council, on a proposal by the negotiator, shall adopt a decision concluding the agreement.

Except where agreements relate exclusively to the common foreign and security policy, the Council shall adopt the decision concluding the agreement:

(a)  after obtaining the consent of the European Parliament in the following cases:

   (i)  association agreements;

   (ii)  agreement on Union accession to the European Convention for the Protection of Human Rights and Fundamental Freedoms;

   (iii)  agreements establishing a specific institutional framework by organising cooperation procedures;

   (iv)  agreements with important budgetary implications for the Union;

   (v)  agreements covering fields to which either the ordinary legislative procedure applies, or the special legislative procedure where consent by the European Parliament is required.

   The European Parliament and the Council may, in an urgent situation, agree upon a time-limit for consent.

(b)  after consulting the European Parliament in other cases. The European Parliament shall deliver its opinion within a time-limit which the Council may set depending on the urgency of the matter. In the absence of an opinion within that time-limit, the Council may act.

7.    When concluding an agreement, the Council may, by way of derogation from paragraphs 5, 6 and 9, authorise the negotiator to approve on the Union's behalf modifications to the agreement where it provides for them to be adopted by a simplified procedure or by a body set up by the agreement. The Council may attach specific conditions to such authorisation.

8.    The Council shall act by a qualified majority throughout the procedure.

However, it shall act unanimously when the agreement covers a field for which unanimity is required for the adoption of a Union act as well as for association agreements and the agreements referred to in Article 212 with the States which are candidates for accession. The Council shall also act unanimously for the agreement on accession of the Union to the European Convention for the Protection of Human Rights and Fundamental Freedoms; the decision concluding this agreement shall enter into force after it has been approved by the Member States in accordance with their respective constitutional requirements.

9.    The Council, on a proposal from the Commission or the High Representative of the Union for Foreign Affairs and Security Policy, shall adopt a decision suspending application of an agreement and establishing the positions to be adopted on the Union's behalf in a body set up by an agreement, when that body is called upon to adopt acts having legal effects, with the exception of acts supplementing or amending the institutional framework of the agreement.

10.    The European Parliament shall be immediately and fully informed at all stages of the procedure.

11.    A Member State, the European Parliament, the Council or the Commission may obtain the opinion of the Court of Justice as to whether an agreement envisaged is compatible with the Treaties. Where the opinion of the Court is adverse, the agreement envisaged may not enter into force unless it is amended or the Treaties are revised.

### Article 219

(ex Article 111(1) to (3) and (5) TEC)

1.    By way of derogation from Article 218, the Council, either on a recommendation from the European Central Bank or on a recommendation from the Commission and after consulting the European Central Bank, in an endeavour to reach a consensus consistent with the objective of price stability, may conclude formal agreements on an exchange-rate system for the euro in relation to the currencies of third States. The Council shall act unanimously after consulting the European Parliament and in accordance with the procedure provided for in paragraph 3.

The Council may, either on a recommendation from the European Central Bank or on a recommendation from the Commission, and after consulting the European Central Bank, in an endeavour to reach a consensus consistent with the objective of price stability, adopt, adjust or abandon the central rates of the euro within the exchange-rate system. The President of the Council shall inform the European Parliament of the adoption, adjustment or abandonment of the euro central rates.

2.    In the absence of an exchange-rate system in relation to one or more currencies of third States as referred to in paragraph 1, the Council, either on a recommendation from the Commission and after consulting the European Central Bank or on a recommendation from the European Central Bank, may formulate general orientations for exchange-rate policy in relation to these currencies. These general orientations shall be without prejudice to the primary objective of the ESCB to maintain price stability.

3.    By way of derogation from Article 218, where agreements concerning monetary or foreign exchange regime matters need to be negotiated by the Union with one or more third States or international organisations, the Council, on a recommendation from the Commission and after consulting the European Central Bank, shall decide the arrangements for the negotiation and for the conclusion of such agreements. These arrangements shall ensure that the Union expresses a single position. The Commission shall be fully associated with the negotiations.

4.    Without prejudice to Union competence and Union agreements as regards economic and monetary union, Member States may negotiate in international bodies and conclude international agreements.

## TITLE VI

### THE UNION'S RELATIONS WITH INTERNATIONAL ORGANISATIONS AND THIRD COUNTRIES AND UNION DELEGATIONS

### Article 220

(ex Articles 302 to 304 TEC)

1.    The Union shall establish all appropriate forms of cooperation with the organs of the United Nations and its specialised agencies, the Council of Europe, the Organisation for Security and Cooperation in Europe and the Organisation for Economic Cooperation and Development.

The Union shall also maintain such relations as are appropriate with other international organisations.

2.    The High Representative of the Union for Foreign Affairs and Security Policy and the Commission shall implement this Article.

### Article 221

1.    Union delegations in third countries and at international organisations shall represent the Union.

2.    Union delegations shall be placed under the authority of the High Representative of the Union for Foreign Affairs and Security Policy. They shall act in close cooperation with Member States' diplomatic and consular missions.

Official Journal of the European Union

# TITLE VII

## SOLIDARITY CLAUSE

### Article 222

1.    The Union and its Member States shall act jointly in a spirit of solidarity if a Member State is the object of a terrorist attack or the victim of a natural or man-made disaster. The Union shall mobilise all the instruments at its disposal, including the military resources made available by the Member States, to:

(a) — prevent the terrorist threat in the territory of the Member States;

— protect democratic institutions and the civilian population from any terrorist attack;

— assist a Member State in its territory, at the request of its political authorities, in the event of a terrorist attack;

(b) assist a Member State in its territory, at the request of its political authorities, in the event of a natural or man-made disaster.

2.    Should a Member State be the object of a terrorist attack or the victim of a natural or man-made disaster, the other Member States shall assist it at the request of its political authorities. To that end, the Member States shall coordinate between themselves in the Council.

3.    The arrangements for the implementation by the Union of the solidarity clause shall be defined by a decision adopted by the Council acting on a joint proposal by the Commission and the High Representative of the Union for Foreign Affairs and Security Policy. The Council shall act in accordance with Article 31(1) of the Treaty on European Union where this decision has defence implications. The European Parliament shall be informed.

For the purposes of this paragraph and without prejudice to Article 240, the Council shall be assisted by the Political and Security Committee with the support of the structures developed in the context of the common security and defence policy and by the Committee referred to in Article 71; the two committees shall, if necessary, submit joint opinions.

4.    The European Council shall regularly assess the threats facing the Union in order to enable the Union and its Member States to take effective action.

# PART SIX

# INSTITUTIONAL AND FINANCIAL PROVISIONS

## TITLE I

### INSTITUTIONAL PROVISIONS

#### CHAPTER 1

#### THE INSTITUTIONS

*SECTION 1*

THE EUROPEAN PARLIAMENT

## Article 223

(ex Article 190(4) and (5) TEC)

1.    The European Parliament shall draw up a proposal to lay down the provisions necessary for the election of its Members by direct universal suffrage in accordance with a uniform procedure in all Member States or in accordance with principles common to all Member States.

The Council, acting unanimously in accordance with a special legislative procedure and after obtaining the consent of the European Parliament, which shall act by a majority of its component Members, shall lay down the necessary provisions. These provisions shall enter into force following their approval by the Member States in accordance with their respective constitutional requirements.

2.    The European Parliament, acting by means of regulations on its own initiative in accordance with a special legislative procedure after seeking an opinion from the Commission and with the consent of the Council, shall lay down the regulations and general conditions governing the performance of the duties of its Members. All rules or conditions relating to the taxation of Members or former Members shall require unanimity within the Council.

## Article 224

(ex Article 191, second subparagraph, TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, by means of regulations, shall lay down the regulations governing political parties at European level referred to in Article 10(4) of the Treaty on European Union and in particular the rules regarding their funding.

## Article 225

*(ex Article 192, second subparagraph, TEC)*

The European Parliament may, acting by a majority of its component Members, request the Commission to submit any appropriate proposal on matters on which it considers that a Union act is required for the purpose of implementing the Treaties. If the Commission does not submit a proposal, it shall inform the European Parliament of the reasons.

## Article 226

*(ex Article 193 TEC)*

In the course of its duties, the European Parliament may, at the request of a quarter of its component Members, set up a temporary Committee of Inquiry to investigate, without prejudice to the powers conferred by the Treaties on other institutions or bodies, alleged contraventions or maladministration in the implementation of Union law, except where the alleged facts are being examined before a court and while the case is still subject to legal proceedings.

The temporary Committee of Inquiry shall cease to exist on the submission of its report.

The detailed provisions governing the exercise of the right of inquiry shall be determined by the European Parliament, acting by means of regulations on its own initiative in accordance with a special legislative procedure, after obtaining the consent of the Council and the Commission.

## Article 227

*(ex Article 194 TEC)*

Any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, shall have the right to address, individually or in association with other citizens or persons, a petition to the European Parliament on a matter which comes within the Union's fields of activity and which affects him, her or it directly.

## Article 228

*(ex Article 195 TEC)*

1.    A European Ombudsman, elected by the European Parliament, shall be empowered to receive complaints from any citizen of the Union or any natural or legal person residing or having its registered office in a Member State concerning instances of maladministration in the activities of the Union institutions, bodies, offices or agencies, with the exception of the Court of Justice of the European Union acting in its judicial role. He or she shall examine such complaints and report on them.

In accordance with his duties, the Ombudsman shall conduct inquiries for which he finds grounds, either on his own initiative or on the basis of complaints submitted to him direct or through a Member of the European Parliament, except where the alleged facts are or have been the subject of legal proceedings. Where the Ombudsman establishes an instance of maladministration, he shall refer the matter to the institution, body, office or agency concerned, which shall have a period of three months in which to inform him of its views. The Ombudsman shall then forward a report to the European Parliament and the institution, body, office or agency concerned. The person lodging the complaint shall be informed of the outcome of such inquiries.

The Ombudsman shall submit an annual report to the European Parliament on the outcome of his inquiries.

2.    The Ombudsman shall be elected after each election of the European Parliament for the duration of its term of office. The Ombudsman shall be eligible for reappointment.

The Ombudsman may be dismissed by the Court of Justice at the request of the European Parliament if he no longer fulfils the conditions required for the performance of his duties or if he is guilty of serious misconduct.

3.    The Ombudsman shall be completely independent in the performance of his duties. In the performance of those duties he shall neither seek nor take instructions from any Government, institution, body, office or entity. The Ombudsman may not, during his term of office, engage in any other occupation, whether gainful or not.

4.    The European Parliament acting by means of regulations on its own initiative in accordance with a special legislative procedure shall, after seeking an opinion from the Commission and with the consent of the Council, lay down the regulations and general conditions governing the performance of the Ombudsman's duties.

## Article 229

(ex Article 196 TEC)

The European Parliament shall hold an annual session. It shall meet, without requiring to be convened, on the second Tuesday in March.

The European Parliament may meet in extraordinary part-session at the request of a majority of its component Members or at the request of the Council or of the Commission.

## Article 230

(ex Article 197, second, third and fourth paragraph, TEC)

The Commission may attend all the meetings and shall, at its request, be heard.

The Commission shall reply orally or in writing to questions put to it by the European Parliament or by its Members.

The European Council and the Council shall be heard by the European Parliament in accordance with the conditions laid down in the Rules of Procedure of the European Council and those of the Council.

*Article 231*

(ex Article 198 TEC)

Save as otherwise provided in the Treaties, the European Parliament shall act by a majority of the votes cast.

The Rules of Procedure shall determine the quorum.

*Article 232*

(ex Article 199 TEC)

The European Parliament shall adopt its Rules of Procedure, acting by a majority of its Members.

The proceedings of the European Parliament shall be published in the manner laid down in the Treaties and in its Rules of Procedure.

*Article 233*

(ex Article 200 TEC)

The European Parliament shall discuss in open session the annual general report submitted to it by the Commission.

*Article 234*

(ex Article 201 TEC)

If a motion of censure on the activities of the Commission is tabled before it, the European Parliament shall not vote thereon until at least three days after the motion has been tabled and only by open vote.

If the motion of censure is carried by a two-thirds majority of the votes cast, representing a majority of the component Members of the European Parliament, the members of the Commission shall resign as a body and the High Representative of the Union for Foreign Affairs and Security Policy shall resign from duties that he or she carries out in the Commission. They shall remain in office and continue to deal with current business until they are replaced in accordance with Article 17 of the Treaty on European Union. In this case, the term of office of the members of the Commission appointed to replace them shall expire on the date on which the term of office of the members of the Commission obliged to resign as a body would have expired.

SECTION 2

THE EUROPEAN COUNCIL

*Article 235*

1.    Where a vote is taken, any member of the European Council may also act on behalf of not more than one other member.

Article 16(4) of the Treaty on European Union and Article 238(2) of this Treaty shall apply to the European Council when it is acting by a qualified majority. Where the European Council decides by vote, its President and the President of the Commission shall not take part in the vote.

Abstentions by members present in person or represented shall not prevent the adoption by the European Council of acts which require unanimity.

2.    The President of the European Parliament may be invited to be heard by the European Council.

3.    The European Council shall act by a simple majority for procedural questions and for the adoption of its Rules of Procedure.

4.    The European Council shall be assisted by the General Secretariat of the Council.

## Article 236

The European Council shall adopt by a qualified majority:

(a) a decision establishing the list of Council configurations, other than those of the General Affairs Council and of the Foreign Affairs Council, in accordance with Article 16(6) of the Treaty on European Union;

(b) a decision on the Presidency of Council configurations, other than that of Foreign Affairs, in accordance with Article 16(9) of the Treaty on European Union.

SECTION 3

THE COUNCIL

## Article 237

(ex Article 204 TEC)

The Council shall meet when convened by its President on his own initiative or at the request of one of its Members or of the Commission.

## Article 238

(ex Article 205(1) and (2), TEC)

1.    Where it is required to act by a simple majority, the Council shall act by a majority of its component members.

2.    By way of derogation from Article 16(4) of the Treaty on European Union, as from 1 November 2014 and subject to the provisions laid down in the Protocol on transitional

provisions, where the Council does not act on a proposal from the Commission or from the High Representative of the Union for Foreign Affairs and Security Policy, the qualified majority shall be defined as at least 72 % of the members of the Council, representing Member States comprising at least 65 % of the population of the Union.

3.    As from 1 November 2014 and subject to the provisions laid down in the Protocol on transitional provisions, in cases where, under the Treaties, not all the members of the Council participate in voting, a qualified majority shall be defined as follows:

(a)  A qualified majority shall be defined as at least 55 % of the members of the Council representing the participating Member States, comprising at least 65 % of the population of these States.

     A blocking minority must include at least the minimum number of Council members representing more than 35 % of the population of the participating Member States, plus one member, failing which the qualified majority shall be deemed attained;

(b)  By way of derogation from point (a), where the Council does not act on a proposal from the Commission or from the High Representative of the Union for Foreign Affairs and Security Policy, the qualified majority shall be defined as at least 72 % of the members of the Council representing the participating Member States, comprising at least 65 % of the population of these States.

4.    Abstentions by Members present in person or represented shall not prevent the adoption by the Council of acts which require unanimity.

## Article 239

### (ex Article 206 TEC)

Where a vote is taken, any Member of the Council may also act on behalf of not more than one other member.

## Article 240

### (ex Article 207 TEC)

1.    A committee consisting of the Permanent Representatives of the Governments of the Member States shall be responsible for preparing the work of the Council and for carrying out the tasks assigned to it by the latter. The Committee may adopt procedural decisions in cases provided for in the Council's Rules of Procedure.

2.    The Council shall be assisted by a General Secretariat, under the responsibility of a Secretary-General appointed by the Council.

The Council shall decide on the organisation of the General Secretariat by a simple majority.

3.    The Council shall act by a simple majority regarding procedural matters and for the adoption of its Rules of Procedure.

### Article 241

(ex Article 208 TEC)

The Council, acting by a simple majority, may request the Commission to undertake any studies the Council considers desirable for the attainment of the common objectives, and to submit to it any appropriate proposals. If the Commission does not submit a proposal, it shall inform the Council of the reasons.

### Article 242

(ex Article 209 TEC)

The Council, acting by a simple majority shall, after consulting the Commission, determine the rules governing the committees provided for in the Treaties.

### Article 243

(ex Article 210 TEC)

The Council shall determine the salaries, allowances and pensions of the President of the European Council, the President of the Commission, the High Representative of the Union for Foreign Affairs and Security Policy, the Members of the Commission, the Presidents, Members and Registrars of the Court of Justice of the European Union, and the Secretary-General of the Council. It shall also determine any payment to be made instead of remuneration.

SECTION 4

THE COMMISSION

### Article 244

In accordance with Article 17(5) of the Treaty on European Union, the Members of the Commission shall be chosen on the basis of a system of rotation established unanimously by the European Council and on the basis of the following principles:

(a) Member States shall be treated on a strictly equal footing as regards determination of the sequence of, and the time spent by, their nationals as members of the Commission; consequently, the difference between the total number of terms of office held by nationals of any given pair of Member States may never be more than one;

(b) subject to point (a), each successive Commission shall be so composed as to reflect satisfactorily the demographic and geographical range of all the Member States.

## Article 245

(ex Article 213 TEC)

The Members of the Commission shall refrain from any action incompatible with their duties. Member States shall respect their independence and shall not seek to influence them in the performance of their tasks.

The Members of the Commission may not, during their term of office, engage in any other occupation, whether gainful or not. When entering upon their duties they shall give a solemn undertaking that, both during and after their term of office, they will respect the obligations arising therefrom and in particular their duty to behave with integrity and discretion as regards the acceptance, after they have ceased to hold office, of certain appointments or benefits. In the event of any breach of these obligations, the Court of Justice may, on application by the Council acting by a simple majority or the Commission, rule that the Member concerned be, according to the circumstances, either compulsorily retired in accordance with Article 247 or deprived of his right to a pension or other benefits in its stead.

## Article 246

(ex Article 215 TEC)

Apart from normal replacement, or death, the duties of a Member of the Commission shall end when he resigns or is compulsorily retired.

A vacancy caused by resignation, compulsory retirement or death shall be filled for the remainder of the Member's term of office by a new Member of the same nationality appointed by the Council, by common accord with the President of the Commission, after consulting the European Parliament and in accordance with the criteria set out in the second subparagraph of Article 17(3) of the Treaty on European Union.

The Council may, acting unanimously on a proposal from the President of the Commission, decide that such a vacancy need not be filled, in particular when the remainder of the Member's term of office is short.

In the event of resignation, compulsory retirement or death, the President shall be replaced for the remainder of his term of office. The procedure laid down in the first subparagraph of Article 17(7) of the Treaty on European Union shall be applicable for the replacement of the President.

In the event of resignation, compulsory retirement or death, the High Representative of the Union for Foreign Affairs and Security Policy shall be replaced, for the remainder of his or her term of office, in accordance with Article 18(1) of the Treaty on European Union.

In the case of the resignation of all the Members of the Commission, they shall remain in office and continue to deal with current business until they have been replaced, for the remainder of their term of office, in accordance with Article 17 of the Treaty on European Union.

## Article 247

(ex Article 216 TEC)

If any Member of the Commission no longer fulfils the conditions required for the performance of his duties or if he has been guilty of serious misconduct, the Court of Justice may, on application by the Council acting by a simple majority or the Commission, compulsorily retire him.

## Article 248

(ex Article 217(2) TEC)

Without prejudice to Article 18(4) of the Treaty on European Union, the responsibilities incumbent upon the Commission shall be structured and allocated among its members by its President, in accordance with Article 17(6) of that Treaty. The President may reshuffle the allocation of those responsibilities during the Commission's term of office. The Members of the Commission shall carry out the duties devolved upon them by the President under his authority.

## Article 249

(ex Articles 218(2) and 212 TEC)

1.    The Commission shall adopt its Rules of Procedure so as to ensure that both it and its departments operate. It shall ensure that these Rules are published.

2.    The Commission shall publish annually, not later than one month before the opening of the session of the European Parliament, a general report on the activities of the Union.

## Article 250

(ex Article 219 TEC)

The Commission shall act by a majority of its Members.

Its Rules of Procedure shall determine the quorum.

## SECTION 5

### THE COURT OF JUSTICE OF THE EUROPEAN UNION

## Article 251

(ex Article 221 TEC)

The Court of Justice shall sit in chambers or in a Grand Chamber, in accordance with the rules laid down for that purpose in the Statute of the Court of Justice of the European Union.

When provided for in the Statute, the Court of Justice may also sit as a full Court.

C 202/158          EN          Official Journal of the European Union          7.6.2016

## Article 252

(ex Article 222 TEC)

The Court of Justice shall be assisted by eight Advocates-General. Should the Court of Justice so request, the Council, acting unanimously, may increase the number of Advocates-General.

It shall be the duty of the Advocate-General, acting with complete impartiality and independence, to make, in open court, reasoned submissions on cases which, in accordance with the Statute of the Court of Justice of the European Union, require his involvement.

## Article 253

(ex Article 223 TEC)

The Judges and Advocates-General of the Court of Justice shall be chosen from persons whose independence is beyond doubt and who possess the qualifications required for appointment to the highest judicial offices in their respective countries or who are jurisconsults of recognised competence; they shall be appointed by common accord of the governments of the Member States for a term of six years, after consultation of the panel provided for in Article 255.

Every three years there shall be a partial replacement of the Judges and Advocates-General, in accordance with the conditions laid down in the Statute of the Court of Justice of the European Union.

The Judges shall elect the President of the Court of Justice from among their number for a term of three years. He may be re-elected.

Retiring Judges and Advocates-General may be reappointed.

The Court of Justice shall appoint its Registrar and lay down the rules governing his service.

The Court of Justice shall establish its Rules of Procedure. Those Rules shall require the approval of the Council.

## Article 254

(ex Article 224 TEC)

The number of Judges of the General Court shall be determined by the Statute of the Court of Justice of the European Union. The Statute may provide for the General Court to be assisted by Advocates-General.

The members of the General Court shall be chosen from persons whose independence is beyond doubt and who possess the ability required for appointment to high judicial office. They shall be appointed by common accord of the governments of the Member States for a term of six years, after consultation of the panel provided for in Article 255. The membership shall be partially renewed every three years. Retiring members shall be eligible for reappointment.

7.6.2016    EN    Official Journal of the European Union    C 202/159

The Judges shall elect the President of the General Court from among their number for a term of three years. He may be re-elected.

The General Court shall appoint its Registrar and lay down the rules governing his service.

The General Court shall establish its Rules of Procedure in agreement with the Court of Justice. Those Rules shall require the approval of the Council.

Unless the Statute of the Court of Justice of the European Union provides otherwise, the provisions of the Treaties relating to the Court of Justice shall apply to the General Court.

## Article 255

A panel shall be set up in order to give an opinion on candidates' suitability to perform the duties of Judge and Advocate-General of the Court of Justice and the General Court before the governments of the Member States make the appointments referred to in Articles 253 and 254.

The panel shall comprise seven persons chosen from among former members of the Court of Justice and the General Court, members of national supreme courts and lawyers of recognised competence, one of whom shall be proposed by the European Parliament. The Council shall adopt a decision establishing the panel's operating rules and a decision appointing its members. It shall act on the initiative of the President of the Court of Justice.

## Article 256

### (ex Article 225 TEC)

1.    The General Court shall have jurisdiction to hear and determine at first instance actions or proceedings referred to in Articles 263, 265, 268, 270 and 272, with the exception of those assigned to a specialised court set up under Article 257 and those reserved in the Statute for the Court of Justice. The Statute may provide for the General Court to have jurisdiction for other classes of action or proceeding.

Decisions given by the General Court under this paragraph may be subject to a right of appeal to the Court of Justice on points of law only, under the conditions and within the limits laid down by the Statute.

2.    The General Court shall have jurisdiction to hear and determine actions or proceedings brought against decisions of the specialised courts.

Decisions given by the General Court under this paragraph may exceptionally be subject to review by the Court of Justice, under the conditions and within the limits laid down by the Statute, where there is a serious risk of the unity or consistency of Union law being affected.

3.    The General Court shall have jurisdiction to hear and determine questions referred for a preliminary ruling under Article 267, in specific areas laid down by the Statute.

Where the General Court considers that the case requires a decision of principle likely to affect the unity or consistency of Union law, it may refer the case to the Court of Justice for a ruling.

Decisions given by the General Court on questions referred for a preliminary ruling may exceptionally be subject to review by the Court of Justice, under the conditions and within the limits laid down by the Statute, where there is a serious risk of the unity or consistency of Union law being affected.

## Article 257

(ex Article 225a TEC)

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may establish specialised courts attached to the General Court to hear and determine at first instance certain classes of action or proceeding brought in specific areas. The European Parliament and the Council shall act by means of regulations either on a proposal from the Commission after consultation of the Court of Justice or at the request of the Court of Justice after consultation of the Commission.

The regulation establishing a specialised court shall lay down the rules on the organisation of the court and the extent of the jurisdiction conferred upon it.

Decisions given by specialised courts may be subject to a right of appeal on points of law only or, when provided for in the regulation establishing the specialised court, a right of appeal also on matters of fact, before the General Court.

The members of the specialised courts shall be chosen from persons whose independence is beyond doubt and who possess the ability required for appointment to judicial office. They shall be appointed by the Council, acting unanimously.

The specialised courts shall establish their Rules of Procedure in agreement with the Court of Justice. Those Rules shall require the approval of the Council.

Unless the regulation establishing the specialised court provides otherwise, the provisions of the Treaties relating to the Court of Justice of the European Union and the provisions of the Statute of the Court of Justice of the European Union shall apply to the specialised courts. Title I of the Statute and Article 64 thereof shall in any case apply to the specialised courts.

## Article 258

(ex Article 226 TEC)

If the Commission considers that a Member State has failed to fulfil an obligation under the Treaties, it shall deliver a reasoned opinion on the matter after giving the State concerned the opportunity to submit its observations.

If the State concerned does not comply with the opinion within the period laid down by the Commission, the latter may bring the matter before the Court of Justice of the European Union.

## Article 259

(ex Article 227 TEC)

A Member State which considers that another Member State has failed to fulfil an obligation under the Treaties may bring the matter before the Court of Justice of the European Union.

Before a Member State brings an action against another Member State for an alleged infringement of an obligation under the Treaties, it shall bring the matter before the Commission.

The Commission shall deliver a reasoned opinion after each of the States concerned has been given the opportunity to submit its own case and its observations on the other party's case both orally and in writing.

If the Commission has not delivered an opinion within three months of the date on which the matter was brought before it, the absence of such opinion shall not prevent the matter from being brought before the Court.

## Article 260

(ex Article 228 TEC)

1.    If the Court of Justice of the European Union finds that a Member State has failed to fulfil an obligation under the Treaties, the State shall be required to take the necessary measures to comply with the judgment of the Court.

2.    If the Commission considers that the Member State concerned has not taken the necessary measures to comply with the judgment of the Court, it may bring the case before the Court after giving that State the opportunity to submit its observations. It shall specify the amount of the lump sum or penalty payment to be paid by the Member State concerned which it considers appropriate in the circumstances.

If the Court finds that the Member State concerned has not complied with its judgment it may impose a lump sum or penalty payment on it.

This procedure shall be without prejudice to Article 259.

3.    When the Commission brings a case before the Court pursuant to Article 258 on the grounds that the Member State concerned has failed to fulfil its obligation to notify measures transposing a directive adopted under a legislative procedure, it may, when it deems appropriate, specify the amount of the lump sum or penalty payment to be paid by the Member State concerned which it considers appropriate in the circumstances.

If the Court finds that there is an infringement it may impose a lump sum or penalty payment on the Member State concerned not exceeding the amount specified by the Commission. The payment obligation shall take effect on the date set by the Court in its judgment.

## Article 261

### (ex Article 229 TEC)

Regulations adopted jointly by the European Parliament and the Council, and by the Council, pursuant to the provisions of the Treaties, may give the Court of Justice of the European Union unlimited jurisdiction with regard to the penalties provided for in such regulations.

## Article 262

### (ex Article 229a TEC)

Without prejudice to the other provisions of the Treaties, the Council, acting unanimously in accordance with a special legislative procedure and after consulting the European Parliament, may adopt provisions to confer jurisdiction, to the extent that it shall determine, on the Court of Justice of the European Union in disputes relating to the application of acts adopted on the basis of the Treaties which create European intellectual property rights. These provisions shall enter into force after their approval by the Member States in accordance with their respective constitutional requirements.

## Article 263

### (ex Article 230 TEC)

The Court of Justice of the European Union shall review the legality of legislative acts, of acts of the Council, of the Commission and of the European Central Bank, other than recommendations and opinions, and of acts of the European Parliament and of the European Council intended to produce legal effects *vis-à-vis* third parties. It shall also review the legality of acts of bodies, offices or agencies of the Union intended to produce legal effects *vis-à-vis* third parties.

It shall for this purpose have jurisdiction in actions brought by a Member State, the European Parliament, the Council or the Commission on grounds of lack of competence, infringement of an essential procedural requirement, infringement of the Treaties or of any rule of law relating to their application, or misuse of powers.

The Court shall have jurisdiction under the same conditions in actions brought by the Court of Auditors, by the European Central Bank and by the Committee of the Regions for the purpose of protecting their prerogatives.

Any natural or legal person may, under the conditions laid down in the first and second paragraphs, institute proceedings against an act addressed to that person or which is of direct and individual concern to them, and against a regulatory act which is of direct concern to them and does not entail implementing measures.

Acts setting up bodies, offices and agencies of the Union may lay down specific conditions and arrangements concerning actions brought by natural or legal persons against acts of these bodies, offices or agencies intended to produce legal effects in relation to them.

The proceedings provided for in this Article shall be instituted within two months of the publication of the measure, or of its notification to the plaintiff, or, in the absence thereof, of the day on which it came to the knowledge of the latter, as the case may be.

### Article 264

(ex Article 231 TEC)

If the action is well founded, the Court of Justice of the European Union shall declare the act concerned to be void.

However, the Court shall, if it considers this necessary, state which of the effects of the act which it has declared void shall be considered as definitive.

### Article 265

(ex Article 232 TEC)

Should the European Parliament, the European Council, the Council, the Commission or the European Central Bank, in infringement of the Treaties, fail to act, the Member States and the other institutions of the Union may bring an action before the Court of Justice of the European Union to have the infringement established. This Article shall apply, under the same conditions, to bodies, offices and agencies of the Union which fail to act.

The action shall be admissible only if the institution, body, office or agency concerned has first been called upon to act. If, within two months of being so called upon, the institution, body, office or agency concerned has not defined its position, the action may be brought within a further period of two months.

Any natural or legal person may, under the conditions laid down in the preceding paragraphs, complain to the Court that an institution, body, office or agency of the Union has failed to address to that person any act other than a recommendation or an opinion.

### Article 266

(ex Article 233 TEC)

The institution, body, office or entity whose act has been declared void or whose failure to act has been declared contrary to the Treaties shall be required to take the necessary measures to comply with the judgment of the Court of Justice of the European Union.

This obligation shall not affect any obligation which may result from the application of the second paragraph of Article 340.

*Article 267*

(ex Article 234 TEC)

The Court of Justice of the European Union shall have jurisdiction to give preliminary rulings concerning:

(a) the interpretation of the Treaties;

(b) the validity and interpretation of acts of the institutions, bodies, offices or agencies of the Union;

Where such a question is raised before any court or tribunal of a Member State, that court or tribunal may, if it considers that a decision on the question is necessary to enable it to give judgment, request the Court to give a ruling thereon.

Where any such question is raised in a case pending before a court or tribunal of a Member State against whose decisions there is no judicial remedy under national law, that court or tribunal shall bring the matter before the Court.

If such a question is raised in a case pending before a court or tribunal of a Member State with regard to a person in custody, the Court of Justice of the European Union shall act with the minimum of delay.

*Article 268*

(ex Article 235 TEC)

The Court of Justice of the European Union shall have jurisdiction in disputes relating to compensation for damage provided for in the second and third paragraphs of Article 340.

*Article 269*

The Court of Justice shall have jurisdiction to decide on the legality of an act adopted by the European Council or by the Council pursuant to Article 7 of the Treaty on European Union solely at the request of the Member State concerned by a determination of the European Council or of the Council and in respect solely of the procedural stipulations contained in that Article.

Such a request must be made within one month from the date of such determination. The Court shall rule within one month from the date of the request.

*Article 270*

(ex Article 236 TEC)

The Court of Justice of the European Union shall have jurisdiction in any dispute between the Union and its servants within the limits and under the conditions laid down in the Staff Regulations of Officials and the Conditions of Employment of other servants of the Union.

## Article 271

*(ex Article 237 TEC)*

The Court of Justice of the European Union shall, within the limits hereinafter laid down, have jurisdiction in disputes concerning:

(a) the fulfilment by Member States of obligations under the Statute of the European Investment Bank. In this connection, the Board of Directors of the Bank shall enjoy the powers conferred upon the Commission by Article 258;

(b) measures adopted by the Board of Governors of the European Investment Bank. In this connection, any Member State, the Commission or the Board of Directors of the Bank may institute proceedings under the conditions laid down in Article 263;

(c) measures adopted by the Board of Directors of the European Investment Bank. Proceedings against such measures may be instituted only by Member States or by the Commission, under the conditions laid down in Article 263, and solely on the grounds of non-compliance with the procedure provided for in Article 19(2), (5), (6) and (7) of the Statute of the Bank;

(d) the fulfilment by national central banks of obligations under the Treaties and the Statute of the ESCB and of the ECB. In this connection the powers of the Governing Council of the European Central Bank in respect of national central banks shall be the same as those conferred upon the Commission in respect of Member States by Article 258. If the Court finds that a national central bank has failed to fulfil an obligation under the Treaties, that bank shall be required to take the necessary measures to comply with the judgment of the Court.

## Article 272

*(ex Article 238 TEC)*

The Court of Justice of the European Union shall have jurisdiction to give judgment pursuant to any arbitration clause contained in a contract concluded by or on behalf of the Union, whether that contract be governed by public or private law.

## Article 273

*(ex Article 239 TEC)*

The Court of Justice shall have jurisdiction in any dispute between Member States which relates to the subject matter of the Treaties if the dispute is submitted to it under a special agreement between the parties.

## Article 274

*(ex Article 240 TEC)*

Save where jurisdiction is conferred on the Court of Justice of the European Union by the Treaties, disputes to which the Union is a party shall not on that ground be excluded from the jurisdiction of the courts or tribunals of the Member States.

C 202/166     EN     Official Journal of the European Union     7.6.2016

*Article 275*

The Court of Justice of the European Union shall not have jurisdiction with respect to the provisions relating to the common foreign and security policy nor with respect to acts adopted on the basis of those provisions.

However, the Court shall have jurisdiction to monitor compliance with Article 40 of the Treaty on European Union and to rule on proceedings, brought in accordance with the conditions laid down in the fourth paragraph of Article 263 of this Treaty, reviewing the legality of decisions providing for restrictive measures against natural or legal persons adopted by the Council on the basis of Chapter 2 of Title V of the Treaty on European Union.

*Article 276*

In exercising its powers regarding the provisions of Chapters 4 and 5 of Title V of Part Three relating to the area of freedom, security and justice, the Court of Justice of the European Union shall have no jurisdiction to review the validity or proportionality of operations carried out by the police or other law-enforcement services of a Member State or the exercise of the responsibilities incumbent upon Member States with regard to the maintenance of law and order and the safeguarding of internal security.

*Article 277*

(ex Article 241 TEC)

Notwithstanding the expiry of the period laid down in Article 263, sixth paragraph, any party may, in proceedings in which an act of general application adopted by an institution, body, office or agency of the Union is at issue, plead the grounds specified in Article 263, second paragraph, in order to invoke before the Court of Justice of the European Union the inapplicability of that act.

*Article 278*

(ex Article 242 TEC)

Actions brought before the Court of Justice of the European Union shall not have suspensory effect. The Court may, however, if it considers that circumstances so require, order that application of the contested act be suspended.

*Article 279*

(ex Article 243 TEC)

The Court of Justice of the European Union may in any cases before it prescribe any necessary interim measures.

## Article 280

(ex Article 244 TEC)

The judgments of the Court of Justice of the European Union shall be enforceable under the conditions laid down in Article 299.

## Article 281

(ex Article 245 TEC)

The Statute of the Court of Justice of the European Union shall be laid down in a separate Protocol.

The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, may amend the provisions of the Statute, with the exception of Title I and Article 64. The European Parliament and the Council shall act either at the request of the Court of Justice and after consultation of the Commission, or on a proposal from the Commission and after consultation of the Court of Justice.

SECTION 6

THE EUROPEAN CENTRAL BANK

## Article 282

1. The European Central Bank, together with the national central banks, shall constitute the European System of Central Banks (ESCB). The European Central Bank, together with the national central banks of the Member States whose currency is the euro, which constitute the Eurosystem, shall conduct the monetary policy of the Union.

2. The ESCB shall be governed by the decision-making bodies of the European Central Bank. The primary objective of the ESCB shall be to maintain price stability. Without prejudice to that objective, it shall support the general economic policies in the Union in order to contribute to the achievement of the latter's objectives.

3. The European Central Bank shall have legal personality. It alone may authorise the issue of the euro. It shall be independent in the exercise of its powers and in the management of its finances. Union institutions, bodies, offices and agencies and the governments of the Member States shall respect that independence.

4. The European Central Bank shall adopt such measures as are necessary to carry out its tasks in accordance with Articles 127 to 133, with Article 138, and with the conditions laid down in the Statute of the ESCB and of the ECB. In accordance with these same Articles, those Member States whose currency is not the euro, and their central banks, shall retain their powers in monetary matters.

5. Within the areas falling within its responsibilities, the European Central Bank shall be consulted on all proposed Union acts, and all proposals for regulation at national level, and may give an opinion.

## Article 283

(ex Article 112 TEC)

1.    The Governing Council of the European Central Bank shall comprise the members of the Executive Board of the European Central Bank and the Governors of the national central banks of the Member States whose currency is the euro.

2.    The Executive Board shall comprise the President, the Vice-President and four other members.

The President, the Vice-President and the other members of the Executive Board shall be appointed by the European Council, acting by a qualified majority, from among persons of recognised standing and professional experience in monetary or banking matters, on a recommendation from the Council, after it has consulted the European Parliament and the Governing Council of the European Central Bank.

Their term of office shall be eight years and shall not be renewable.

Only nationals of Member States may be members of the Executive Board.

## Article 284

(ex Article 113 TEC)

1.    The President of the Council and a Member of the Commission may participate, without having the right to vote, in meetings of the Governing Council of the European Central Bank.

The President of the Council may submit a motion for deliberation to the Governing Council of the European Central Bank.

2.    The President of the European Central Bank shall be invited to participate in Council meetings when the Council is discussing matters relating to the objectives and tasks of the ESCB.

3.    The European Central Bank shall address an annual report on the activities of the ESCB and on the monetary policy of both the previous and current year to the European Parliament, the Council and the Commission, and also to the European Council. The President of the European Central Bank shall present this report to the Council and to the European Parliament, which may hold a general debate on that basis.

The President of the European Central Bank and the other members of the Executive Board may, at the request of the European Parliament or on their own initiative, be heard by the competent committees of the European Parliament.

SECTION 7

THE COURT OF AUDITORS

*Article 285*

(ex Article 246 TEC)

The Court of Auditors shall carry out the Union's audit.

It shall consist of one national of each Member State. Its Members shall be completely independent in the performance of their duties, in the Union's general interest.

*Article 286*

(ex Article 247 TEC)

1.    The Members of the Court of Auditors shall be chosen from among persons who belong or have belonged in their respective States to external audit bodies or who are especially qualified for this office. Their independence must be beyond doubt.

2.    The Members of the Court of Auditors shall be appointed for a term of six years. The Council, after consulting the European Parliament, shall adopt the list of Members drawn up in accordance with the proposals made by each Member State. The term of office of the Members of the Court of Auditors shall be renewable.

They shall elect the President of the Court of Auditors from among their number for a term of three years. The President may be re-elected.

3.    In the performance of these duties, the Members of the Court of Auditors shall neither seek nor take instructions from any government or from any other body. The Members of the Court of Auditors shall refrain from any action incompatible with their duties.

4.    The Members of the Court of Auditors may not, during their term of office, engage in any other occupation, whether gainful or not. When entering upon their duties they shall give a solemn undertaking that, both during and after their term of office, they will respect the obligations arising therefrom and in particular their duty to behave with integrity and discretion as regards the acceptance, after they have ceased to hold office, of certain appointments or benefits.

5.    Apart from normal replacement, or death, the duties of a Member of the Court of Auditors shall end when he resigns, or is compulsorily retired by a ruling of the Court of Justice pursuant to paragraph 6.

The vacancy thus caused shall be filled for the remainder of the Member's term of office.

Save in the case of compulsory retirement, Members of the Court of Auditors shall remain in office until they have been replaced.

6.    A Member of the Court of Auditors may be deprived of his office or of his right to a pension or other benefits in its stead only if the Court of Justice, at the request of the Court of Auditors, finds that he no longer fulfils the requisite conditions or meets the obligations arising from his office.

7.    The Council shall determine the conditions of employment of the President and the Members of the Court of Auditors and in particular their salaries, allowances and pensions. It shall also determine any payment to be made instead of remuneration.

8.    The provisions of the Protocol on the privileges and immunities of the European Union applicable to the Judges of the Court of Justice of the European Union shall also apply to the Members of the Court of Auditors.

## Article 287

### (ex Article 248 TEC)

1.    The Court of Auditors shall examine the accounts of all revenue and expenditure of the Union. It shall also examine the accounts of all revenue and expenditure of all bodies, offices or agencies set up by the Union in so far as the relevant constituent instrument does not preclude such examination.

The Court of Auditors shall provide the European Parliament and the Council with a statement of assurance as to the reliability of the accounts and the legality and regularity of the underlying transactions which shall be published in the *Official Journal of the European Union*. This statement may be supplemented by specific assessments for each major area of Union activity.

2.    The Court of Auditors shall examine whether all revenue has been received and all expenditure incurred in a lawful and regular manner and whether the financial management has been sound. In doing so, it shall report in particular on any cases of irregularity.

The audit of revenue shall be carried out on the basis both of the amounts established as due and the amounts actually paid to the Union.

The audit of expenditure shall be carried out on the basis both of commitments undertaken and payments made.

These audits may be carried out before the closure of accounts for the financial year in question.

3.    The audit shall be based on records and, if necessary, performed on the spot in the other institutions of the Union, on the premises of any body, office or agency which manages revenue or expenditure on behalf of the Union and in the Member States, including on the premises of any natural or legal person in receipt of payments from the budget. In the Member States the audit shall be carried out in liaison with national audit bodies or, if these do not have the necessary powers, with the competent national departments. The Court of Auditors and the national audit bodies of the Member States shall cooperate in a spirit of trust while maintaining their independence. These bodies or departments shall inform the Court of Auditors whether they intend to take part in the audit.

The other institutions of the Union, any bodies, offices or agencies managing revenue or expenditure on behalf of the Union, any natural or legal person in receipt of payments from the budget, and the national audit bodies or, if these do not have the necessary powers, the competent national departments, shall forward to the Court of Auditors, at its request, any document or information necessary to carry out its task.

In respect of the European Investment Bank's activity in managing Union expenditure and revenue, the Court's rights of access to information held by the Bank shall be governed by an agreement between the Court, the Bank and the Commission. In the absence of an agreement, the Court shall nevertheless have access to information necessary for the audit of Union expenditure and revenue managed by the Bank.

4.    The Court of Auditors shall draw up an annual report after the close of each financial year. It shall be forwarded to the other institutions of the Union and shall be published, together with the replies of these institutions to the observations of the Court of Auditors, in the *Official Journal of the European Union*.

The Court of Auditors may also, at any time, submit observations, particularly in the form of special reports, on specific questions and deliver opinions at the request of one of the other institutions of the Union.

It shall adopt its annual reports, special reports or opinions by a majority of its Members. However, it may establish internal chambers in order to adopt certain categories of reports or opinions under the conditions laid down by its Rules of Procedure.

It shall assist the European Parliament and the Council in exercising their powers of control over the implementation of the budget.

The Court of Auditors shall draw up its Rules of Procedure. Those rules shall require the approval of the Council.

CHAPTER 2

LEGAL ACTS OF THE UNION, ADOPTION PROCEDURES AND OTHER PROVISIONS

SECTION 1

THE LEGAL ACTS OF THE UNION

*Article 288*

(ex Article 249 TEC)

To exercise the Union's competences, the institutions shall adopt regulations, directives, decisions, recommendations and opinions.

A regulation shall have general application. It shall be binding in its entirety and directly applicable in all Member States.

A directive shall be binding, as to the result to be achieved, upon each Member State to which it is addressed, but shall leave to the national authorities the choice of form and methods.

A decision shall be binding in its entirety. A decision which specifies those to whom it is addressed shall be binding only on them.

Recommendations and opinions shall have no binding force.

## Article 289

1.    The ordinary legislative procedure shall consist in the joint adoption by the European Parliament and the Council of a regulation, directive or decision on a proposal from the Commission. This procedure is defined in Article 294.

2.    In the specific cases provided for by the Treaties, the adoption of a regulation, directive or decision by the European Parliament with the participation of the Council, or by the latter with the participation of the European Parliament, shall constitute a special legislative procedure.

3.    Legal acts adopted by legislative procedure shall constitute legislative acts.

4.    In the specific cases provided for by the Treaties, legislative acts may be adopted on the initiative of a group of Member States or of the European Parliament, on a recommendation from the European Central Bank or at the request of the Court of Justice or the European Investment Bank.

## Article 290

1.    A legislative act may delegate to the Commission the power to adopt non-legislative acts of general application to supplement or amend certain non-essential elements of the legislative act.

The objectives, content, scope and duration of the delegation of power shall be explicitly defined in the legislative acts. The essential elements of an area shall be reserved for the legislative act and accordingly shall not be the subject of a delegation of power.

2.    Legislative acts shall explicitly lay down the conditions to which the delegation is subject; these conditions may be as follows:

(a) the European Parliament or the Council may decide to revoke the delegation;

(b) the delegated act may enter into force only if no objection has been expressed by the European Parliament or the Council within a period set by the legislative act.

For the purposes of (a) and (b), the European Parliament shall act by a majority of its component members, and the Council by a qualified majority.

3.    The adjective 'delegated' shall be inserted in the title of delegated acts.

## Article 291

1.    Member States shall adopt all measures of national law necessary to implement legally binding Union acts.

2.    Where uniform conditions for implementing legally binding Union acts are needed, those acts shall confer implementing powers on the Commission, or, in duly justified specific cases and in the cases provided for in Articles 24 and 26 of the Treaty on European Union, on the Council.

3.    For the purposes of paragraph 2, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall lay down in advance the rules and general principles concerning mechanisms for control by Member States of the Commission's exercise of implementing powers.

4.    The word 'implementing' shall be inserted in the title of implementing acts.

## Article 292

The Council shall adopt recommendations. It shall act on a proposal from the Commission in all cases where the Treaties provide that it shall adopt acts on a proposal from the Commission. It shall act unanimously in those areas in which unanimity is required for the adoption of a Union act . The Commission, and the European Central Bank in the specific cases provided for in the Treaties, shall adopt recommendations.

### SECTION 2

### PROCEDURES FOR THE ADOPTION OF ACTS AND OTHER PROVISIONS

## Article 293

### (ex Article 250 TEC)

1.    Where, pursuant to the Treaties, the Council acts on a proposal from the Commission, it may amend that proposal only by acting unanimously, except in the cases referred to in paragraphs 10 and 13 of Article 294, in Articles 310, 312 and 314 and in the second paragraph of Article 315.

2.    As long as the Council has not acted, the Commission may alter its proposal at any time during the procedures leading to the adoption of a Union act.

## Article 294

### (ex Article 251 TEC)

1.    Where reference is made in the Treaties to the ordinary legislative procedure for the adoption of an act, the following procedure shall apply.

2.    The Commission shall submit a proposal to the European Parliament and the Council.

*First reading*

3.    The European Parliament shall adopt its position at first reading and communicate it to the Council.

4.    If the Council approves the European Parliament's position, the act concerned shall be adopted in the wording which corresponds to the position of the European Parliament.

5.    If the Council does not approve the European Parliament's position, it shall adopt its position at first reading and communicate it to the European Parliament.

6.    The Council shall inform the European Parliament fully of the reasons which led it to adopt its position at first reading. The Commission shall inform the European Parliament fully of its position.

*Second reading*

7.    If, within three months of such communication, the European Parliament:

(a)  approves the Council's position at first reading or has not taken a decision, the act concerned shall be deemed to have been adopted in the wording which corresponds to the position of the Council;

(b)  rejects, by a majority of its component members, the Council's position at first reading, the proposed act shall be deemed not to have been adopted;

(c)  proposes, by a majority of its component members, amendments to the Council's position at first reading, the text thus amended shall be forwarded to the Council and to the Commission, which shall deliver an opinion on those amendments.

8.    If, within three months of receiving the European Parliament's amendments, the Council, acting by a qualified majority:

(a)  approves all those amendments, the act in question shall be deemed to have been adopted;

(b)  does not approve all the amendments, the President of the Council, in agreement with the President of the European Parliament, shall within six weeks convene a meeting of the Conciliation Committee.

9.    The Council shall act unanimously on the amendments on which the Commission has delivered a negative opinion.

*Conciliation*

10.    The Conciliation Committee, which shall be composed of the members of the Council or their representatives and an equal number of members representing the European Parliament, shall have the task of reaching agreement on a joint text, by a qualified majority of the members of the Council or their representatives and by a majority of the members representing the European Parliament within six weeks of its being convened, on the basis of the positions of the European Parliament and the Council at second reading.

7.6.2016    EN    Official Journal of the European Union    C 202/175

11.    The Commission shall take part in the Conciliation Committee's proceedings and shall take all necessary initiatives with a view to reconciling the positions of the European Parliament and the Council.

12.    If, within six weeks of its being convened, the Conciliation Committee does not approve the joint text, the proposed act shall be deemed not to have been adopted.

*Third reading*

13.    If, within that period, the Conciliation Committee approves a joint text, the European Parliament, acting by a majority of the votes cast, and the Council, acting by a qualified majority, shall each have a period of six weeks from that approval in which to adopt the act in question in accordance with the joint text. If they fail to do so, the proposed act shall be deemed not to have been adopted.

14.    The periods of three months and six weeks referred to in this Article shall be extended by a maximum of one month and two weeks respectively at the initiative of the European Parliament or the Council.

*Special provisions*

15.    Where, in the cases provided for in the Treaties, a legislative act is submitted to the ordinary legislative procedure on the initiative of a group of Member States, on a recommendation by the European Central Bank, or at the request of the Court of Justice, paragraph  2, the second sentence of paragraph  6, and paragraph  9 shall not apply.

In such cases, the European Parliament and the Council shall communicate the proposed act to the Commission with their positions at first and second readings. The European Parliament or the Council may request the opinion of the Commission throughout the procedure, which the Commission may also deliver on its own initiative. It may also, if it deems it necessary, take part in the Conciliation Committee in accordance with paragraph  11.

## Article  295

The European Parliament, the Council and the Commission shall consult each other and by common agreement make arrangements for their cooperation. To that end, they may, in compliance with the Treaties, conclude interinstitutional agreements which may be of a binding nature.

## Article  296

(ex Article  253 TEC)

Where the Treaties do not specify the type of act to be adopted, the institutions shall select it on a case-by-case basis, in compliance with the applicable procedures and with the principle of  proportionality.

Legal acts shall state the reasons on which they are based and shall refer to any proposals, initiatives, recommendations, requests or opinions required by the Treaties.

When considering draft legislative acts, the European Parliament and the Council shall refrain from adopting acts not provided for by the relevant legislative procedure in the area in question.

## Article 297

### (ex Article 254 TEC)

1.    Legislative acts adopted under the ordinary legislative procedure shall be signed by the President of the European Parliament and by the President of the Council.

Legislative acts adopted under a special legislative procedure shall be signed by the President of the institution which adopted them.

Legislative acts shall be published in the *Official Journal of the European Union*. They shall enter into force on the date specified in them or, in the absence thereof, on the twentieth day following that of their publication.

2.    Non-legislative acts adopted in the form of regulations, directives or decisions, when the latter do not specify to whom they are addressed, shall be signed by the President of the institution which adopted them.

Regulations and directives which are addressed to all Member States, as well as decisions which do not specify to whom they are addressed, shall be published in the *Official Journal of the European Union*. They shall enter into force on the date specified in them or, in the absence thereof, on the twentieth day following that of their publication.

Other directives, and decisions which specify to whom they are addressed, shall be notified to those to whom they are addressed and shall take effect upon such notification.

## Article 298

1.    In carrying out their missions, the institutions, bodies, offices and agencies of the Union shall have the support of an open, efficient and independent European administration.

2.    In compliance with the Staff Regulations and the Conditions of Employment adopted on the basis of Article 336, the European Parliament and the Council, acting by means of regulations in accordance with the ordinary legislative procedure, shall establish provisions to that end.

## Article 299

### (ex Article 256 TEC)

Acts of the Council, the Commission or the European Central Bank which impose a pecuniary obligation on persons other than States, shall be enforceable.

Enforcement shall be governed by the rules of civil procedure in force in the State in the territory of which it is carried out. The order for its enforcement shall be appended to the decision, without other formality than verification of the authenticity of the decision, by the national authority which the government of each Member State shall designate for this purpose and shall make known to the Commission and to the Court of Justice of the European Union.

When these formalities have been completed on application by the party concerned, the latter may proceed to enforcement in accordance with the national law, by bringing the matter directly before the competent authority.

Enforcement may be suspended only by a decision of the Court. However, the courts of the country concerned shall have jurisdiction over complaints that enforcement is being carried out in an irregular manner.

CHAPTER 3

THE UNION'S ADVISORY BODIES

*Article 300*

1.    The European Parliament, the Council and the Commission shall be assisted by an Economic and Social Committee and a Committee of the Regions, exercising advisory functions.

2.    The Economic and Social Committee shall consist of representatives of organisations of employers, of the employed, and of other parties representative of civil society, notably in socio-economic, civic, professional and cultural areas.

3.    The Committee of the Regions shall consist of representatives of regional and local bodies who either hold a regional or local authority electoral mandate or are politically accountable to an elected assembly.

4.    The members of the Economic and Social Committee and of the Committee of the Regions shall not be bound by any mandatory instructions. They shall be completely independent in the performance of their duties, in the Union's general interest.

5.    The rules referred to in paragraphs 2 and 3 governing the nature of the composition of the Committees shall be reviewed at regular intervals by the Council to take account of economic, social and demographic developments within the Union. The Council, on a proposal from the Commission, shall adopt decisions to that end.

SECTION 1

THE ECONOMIC AND SOCIAL COMMITTEE

*Article 301*

(ex Article 258 TEC)

The number of members of the Economic and Social Committee shall not exceed 350.

The Council, acting unanimously on a proposal from the Commission, shall adopt a decision determining the Committee's composition.

The Council shall determine the allowances of members of the Committee.

## Article 302

(ex Article 259 TEC)

1.    The members of the Committee shall be appointed for five years The Council shall adopt the list of members drawn up in accordance with the proposals made by each Member State. The term of office of the members of the Committee shall be renewable.

2.    The Council shall act after consulting the Commission. It may obtain the opinion of European bodies which are representative of the various economic and social sectors and of civil society to which the Union's activities are of concern.

## Article 303

(ex Article 260 TEC)

The Committee shall elect its chairman and officers from among its members for a term of two and a half years.

It shall adopt its Rules of Procedure.

The Committee shall be convened by its chairman at the request of the European Parliament, the Council or of the Commission. It may also meet on its own initiative.

## Article 304

(ex Article 262 TEC)

The Committee shall be consulted by the European Parliament, by the Council or by the Commission where the Treaties so provide. The Committee may be consulted by these institutions in all cases in which they consider it appropriate. It may issue an opinion on its own initiative in cases in which it considers such action appropriate.

The European Parliament, the Council or the Commission shall, if it considers it necessary, set the Committee, for the submission of its opinion, a time limit which may not be less than one month from the date on which the chairman receives notification to this effect. Upon expiry of the time limit, the absence of an opinion shall not prevent further action.

The opinion of the Committee, together with a record of the proceedings, shall be forwarded to the European Parliament, to the Council and to the Commission.

SECTION 2

THE COMMITTEE OF THE REGIONS

## Article 305

(ex Article 263, second, third and fourth paragraphs, TEC)

The number of members of the Committee of the Regions shall not exceed 350.

The Council, acting unanimously on a proposal from the Commission, shall adopt a decision determining the Committee's composition.

The members of the Committee and an equal number of alternate members shall be appointed for five years. Their term of office shall be renewable. The Council shall adopt the list of members and alternate members drawn up in accordance with the proposals made by each Member State. When the mandate referred to in Article 300(3) on the basis of which they were proposed comes to an end, the term of office of members of the Committee shall terminate automatically and they shall then be replaced for the remainder of the said term of office in accordance with the same procedure. No member of the Committee shall at the same time be a Member of the European Parliament.

## Article 306

### (ex Article 264 TEC)

The Committee of the Regions shall elect its chairman and officers from among its members for a term of two and a half years.

It shall adopt its Rules of Procedure.

The Committee shall be convened by its chairman at the request of the European Parliament, the Council or of the Commission. It may also meet on its own initiative.

## Article 307

### (ex Article 265 TEC)

The Committee of the Regions shall be consulted by the European Parliament, by the Council or by the Commission where the Treaties so provide and in all other cases, in particular those which concern cross-border cooperation, in which one of these institutions considers it appropriate.

The European Parliament, the Council or the Commission shall, if it considers it necessary, set the Committee, for the submission of its opinion, a time limit which may not be less than one month from the date on which the chairman receives notification to this effect. Upon expiry of the time limit, the absence of an opinion shall not prevent further action.

Where the Economic and Social Committee is consulted pursuant to Article 304, the Committee of the Regions shall be informed by the European Parliament, the Council or the Commission of the request for an opinion. Where it considers that specific regional interests are involved, the Committee of the Regions may issue an opinion on the matter.

It may issue an opinion on its own initiative in cases in which it considers such action appropriate.

The opinion of the Committee, together with a record of the proceedings, shall be forwarded to the European Parliament, to the Council and to the Commission.

CHAPTER 4

THE EUROPEAN INVESTMENT BANK

*Article 308*

(ex Article 266 TEC)

The European Investment Bank shall have legal personality.

The members of the European Investment Bank shall be the Member States.

The Statute of the European Investment Bank is laid down in a Protocol annexed to the Treaties. The Council acting unanimously in accordance with a special legislative procedure, at the request of the European Investment Bank and after consulting the European Parliament and the Commission, or on a proposal from the Commission and after consulting the European Parliament and the European Investment Bank, may amend the Statute of the Bank.

*Article 309*

(ex Article 267 TEC)

The task of the European Investment Bank shall be to contribute, by having recourse to the capital market and utilising its own resources, to the balanced and steady development of the internal market in the interest of the Union. For this purpose the Bank shall, operating on a non-profit-making basis, grant loans and give guarantees which facilitate the financing of the following projects in all sectors of the economy:

(a) projects for developing less-developed regions;

(b) projects for modernising or converting undertakings or for developing fresh activities called for by the establishment or functioning of the internal market, where these projects are of such a size or nature that they cannot be entirely financed by the various means available in the individual Member States;

(c) projects of common interest to several Member States which are of such a size or nature that they cannot be entirely financed by the various means available in the individual Member States.

In carrying out its task, the Bank shall facilitate the financing of investment programmes in conjunction with assistance from the Structural Funds and other Union Financial Instruments.

# TITLE II

## FINANCIAL PROVISIONS

### *Article 310*

(ex Article 268 TEC)

1.    All items of revenue and expenditure of the Union shall be included in estimates to be drawn up for each financial year and shall be shown in the budget.

The Union's annual budget shall be established by the European Parliament and the Council in accordance with Article 314.

The revenue and expenditure shown in the budget shall be in balance.

2.    The expenditure shown in the budget shall be authorised for the annual budgetary period in accordance with the regulation referred to in Article 322.

3.    The implementation of expenditure shown in the budget shall require the prior adoption of a legally binding Union act providing a legal basis for its action and for the implementation of the corresponding expenditure in accordance with the regulation referred to in Article 322, except in cases for which that law provides.

4.    With a view to maintaining budgetary discipline, the Union shall not adopt any act which is likely to have appreciable implications for the budget without providing an assurance that the expenditure arising from such an act is capable of being financed within the limit of the Union's own resources and in compliance with the multiannual financial framework referred to in Article 312.

5.    The budget shall be implemented in accordance with the principle of sound financial management. Member States shall cooperate with the Union to ensure that the appropriations entered in the budget are used in accordance with this principle.

6.    The Union and the Member States, in accordance with Article 325, shall counter fraud and any other illegal activities affecting the financial interests of the Union.

### CHAPTER 1

### THE UNION'S OWN RESOURCES

### *Article 311*

(ex Article 269 TEC)

The Union shall provide itself with the means necessary to attain its objectives and carry through its policies.

Without prejudice to other revenue, the budget shall be financed wholly from own resources.

The Council, acting in accordance with a special legislative procedure, shall unanimously and after consulting the European Parliament adopt a decision laying down the provisions relating to the system of own resources of the Union. In this context it may establish new categories of own resources or abolish an existing category. That decision shall not enter into force until it is approved by the Member States in accordance with their respective constitutional requirements.

The Council, acting by means of regulations in accordance with a special legislative procedure, shall lay down implementing measures for the Union's own resources system in so far as this is provided for in the decision adopted on the basis of the third paragraph. The Council shall act after obtaining the consent of the European Parliament.

CHAPTER 2

THE MULTIANNUAL FINANCIAL FRAMEWORK

*Article 312*

1.   The multiannual financial framework shall ensure that Union expenditure develops in an orderly manner and within the limits of its own resources.

It shall be established for a period of at least five years.

The annual budget of the Union shall comply with the multiannual financial framework.

2.   The Council, acting in accordance with a special legislative procedure, shall adopt a regulation laying down the multiannual financial framework. The Council shall act unanimously after obtaining the consent of the European Parliament, which shall be given by a majority of its component members.

The European Council may, unanimously, adopt a decision authorising the Council to act by a qualified majority when adopting the regulation referred to in the first subparagraph.

3.   The financial framework shall determine the amounts of the annual ceilings on commitment appropriations by category of expenditure and of the annual ceiling on payment appropriations. The categories of expenditure, limited in number, shall correspond to the Union's major sectors of activity.

The financial framework shall lay down any other provisions required for the annual budgetary procedure to run smoothly.

4.   Where no Council regulation determining a new financial framework has been adopted by the end of the previous financial framework, the ceilings and other provisions corresponding to the last year of that framework shall be extended until such time as that act is adopted.

5.    Throughout the procedure leading to the adoption of the financial framework, the European Parliament, the Council and the Commission shall take any measure necessary to facilitate its adoption.

CHAPTER 3

THE UNION'S ANNUAL BUDGET

*Article 313*

(ex Article 272(1), TEC)

The financial year shall run from 1 January to 31 December.

*Article 314*

(ex Article 272(2) to (10), TEC)

The European Parliament and the Council, acting in accordance with a special legislative procedure, shall establish the Union's annual budget in accordance with the following provisions.

1.    With the exception of the European Central Bank, each institution shall, before 1 July, draw up estimates of its expenditure for the following financial year. The Commission shall consolidate these estimates in a draft budget. which may contain different estimates.

The draft budget shall contain an estimate of revenue and an estimate of expenditure.

2.    The Commission shall submit a proposal containing the draft budget to the European Parliament and to the Council not later than 1 September of the year preceding that in which the budget is to be implemented.

The Commission may amend the draft budget during the procedure until such time as the Conciliation Committee, referred to in paragraph 5, is convened.

3.    The Council shall adopt its position on the draft budget and forward it to the European Parliament not later than 1 October of the year preceding that in which the budget is to be implemented. The Council shall inform the European Parliament in full of the reasons which led it to adopt its position.

4.    If, within forty-two days of such communication, the European Parliament:

(a)  approves the position of the Council, the budget shall be adopted;

(b)  has not taken a decision, the budget shall be deemed to have been adopted;

(c)  adopts amendments by a majority of its component members, the amended draft shall be forwarded to the Council and to the Commission. The President of the European Parliament, in agreement with the President of the Council, shall immediately convene a meeting of the

Conciliation Committee. However, if within ten days of the draft being forwarded the Council informs the European Parliament that it has approved all its amendments, the Conciliation Committee shall not meet.

5.    The Conciliation Committee, which shall be composed of the members of the Council or their representatives and an equal number of members representing the European Parliament, shall have the task of reaching agreement on a joint text, by a qualified majority of the members of the Council or their representatives and by a majority of the representatives of the European Parliament within twenty-one days of its being convened, on the basis of the positions of the European Parliament and the Council.

The Commission shall take part in the Conciliation Committee's proceedings and shall take all the necessary initiatives with a view to reconciling the positions of the European Parliament and the Council.

6.    If, within the twenty-one days referred to in paragraph 5, the Conciliation Committee agrees on a joint text, the European Parliament and the Council shall each have a period of fourteen days from the date of that agreement in which to approve the joint text.

7.    If, within the period of fourteen days referred to in paragraph 6:

(a) the European Parliament and the Council both approve the joint text or fail to take a decision, or if one of these institutions approves the joint text while the other one fails to take a decision, the budget shall be deemed to be definitively adopted in accordance with the joint text; or

(b) the European Parliament, acting by a majority of its component members, and the Council both reject the joint text, or if one of these institutions rejects the joint text while the other one fails to take a decision, a new draft budget shall be submitted by the Commission; or

(c) the European Parliament, acting by a majority of its component members, rejects the joint text while the Council approves it, a new draft budget shall be submitted by the Commission; or

(d) the European Parliament approves the joint text whilst the Council rejects it, the European Parliament may, within fourteen days from the date of the rejection by the Council and acting by a majority of its component members and three-fifths of the votes cast, decide to confirm all or some of the amendments referred to in paragraph 4(c). Where a European Parliament amendment is not confirmed, the position agreed in the Conciliation Committee on the budget heading which is the subject of the amendment shall be retained. The budget shall be deemed to be definitively adopted on this basis.

8.    If, within the twenty-one days referred to in paragraph 5, the Conciliation Committee does not agree on a joint text, a new draft budget shall be submitted by the Commission.

9.    When the procedure provided for in this Article has been completed, the President of the European Parliament shall declare that the budget has been definitively adopted.

10.    Each institution shall exercise the powers conferred upon it under this Article in compliance with the Treaties and the acts adopted thereunder, with particular regard to the Union's own resources and the balance between revenue and expenditure.

## Article 315

(ex Article 273 TEC)

If, at the beginning of a financial year, the budget has not yet been definitively adopted, a sum equivalent to not more than one twelfth of the budget appropriations for the preceding financial year may be spent each month in respect of any chapter of the budget in accordance with the provisions of the Regulations made pursuant to Article 322; that sum shall not, however, exceed one twelfth of the appropriations provided for in the same chapter of the draft budget.

The Council on a proposal by the Commission, may, provided that the other conditions laid down in the first paragraph are observed, authorise expenditure in excess of one twelfth in accordance with the regulations made pursuant to Article 322. The Council shall forward the decision immediately to the European Parliament.

The decision referred to in the second paragraph shall lay down the necessary measures relating to resources to ensure application of this Article, in accordance with the acts referred to in Article 311.

It shall enter into force thirty days following its adoption if the European Parliament, acting by a majority of its component Members, has not decided to reduce this expenditure within that time-limit.

## Article 316

(ex Article 271 TEC)

In accordance with conditions to be laid down pursuant to Article 322, any appropriations, other than those relating to staff expenditure, that are unexpended at the end of the financial year may be carried forward to the next financial year only.

Appropriations shall be classified under different chapters grouping items of expenditure according to their nature or purpose and subdivided in accordance with the regulations made pursuant to Article 322.

The expenditure of the European Parliament, the European Council and the Council, the Commission and the Court of Justice of the European Union shall be set out in separate parts of the budget, without prejudice to special arrangements for certain common items of expenditure.

CHAPTER 4

IMPLEMENTATION OF THE BUDGET AND DISCHARGE

*Article 317*

(ex Article 274 TEC)

The Commission shall implement the budget in cooperation with the Member States, in accordance with the provisions of the regulations made pursuant to Article 322, on its own responsibility and within the limits of the appropriations, having regard to the principles of sound financial management. Member States shall cooperate with the Commission to ensure that the appropriations are used in accordance with the principles of sound financial management.

The regulations shall lay down the control and audit obligations of the Member States in the implementation of the budget and the resulting responsibilities. They shall also lay down the responsibilities and detailed rules for each institution concerning its part in effecting its own expenditure.

Within the budget, the Commission may, subject to the limits and conditions laid down in the regulations made pursuant to Article 322, transfer appropriations from one chapter to another or from one subdivision to another.

*Article 318*

(ex Article 275 TEC)

The Commission shall submit annually to the European Parliament and to the Council the accounts of the preceding financial year relating to the implementation of the budget. The Commission shall also forward to them a financial statement of the assets and liabilities of the Union.

The Commission shall also submit to the European Parliament and to the Council an evaluation report on the Union's finances based on the results achieved, in particular in relation to the indications given by the European Parliament and the Council pursuant to Article 319.

*Article 319*

(ex Article 276 TEC)

1.    The European Parliament, acting on a recommendation from the Council, shall give a discharge to the Commission in respect of the implementation of the budget. To this end, the Council and the European Parliament in turn shall examine the accounts, the financial statement and the evaluation report referred to in Article 318, the annual report by the Court of Auditors together with the replies of the institutions under audit to the observations of the Court of Auditors, the statement of assurance referred to in Article 287(1), second subparagraph and any relevant special reports by the Court of Auditors.

2.    Before giving a discharge to the Commission, or for any other purpose in connection with the exercise of its powers over the implementation of the budget, the European Parliament may ask to hear the Commission give evidence with regard to the execution of expenditure or the operation of financial control systems. The Commission shall submit any necessary information to the European Parliament at the latter's request.

3.    The Commission shall take all appropriate steps to act on the observations in the decisions giving discharge and on other observations by the European Parliament relating to the execution of expenditure, as well as on comments accompanying the recommendations on discharge adopted by the Council.

At the request of the European Parliament or the Council, the Commission shall report on the measures taken in the light of these observations and comments and in particular on the instructions given to the departments which are responsible for the implementation of the budget. These reports shall also be forwarded to the Court of Auditors.

CHAPTER  5

COMMON PROVISIONS

*Article  320*

(ex Article  277 TEC)

The multiannual financial framework and the annual budget shall be drawn up in euro.

*Article  321*

(ex Article  278 TEC)

The Commission may, provided it notifies the competent authorities of the Member States concerned, transfer into the currency of one of the Member States its holdings in the currency of another Member State, to the extent necessary to enable them to be used for purposes which come within the scope of the Treaties. The Commission shall as far as possible avoid making such transfers if it possesses cash or liquid assets in the currencies which it needs.

The Commission shall deal with each Member State through the authority designated by the State concerned. In carrying out financial operations the Commission shall employ the services of the bank of issue of the Member State concerned or of any other financial institution approved by that  State.

*Article  322*

(ex Article  279 TEC)

1.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, and after consulting the Court of Auditors, shall adopt by means of regulations:

(a)  the financial rules which determine in particular the procedure to be adopted for establishing and implementing the budget and for presenting and auditing accounts;

(b) rules providing for checks on the responsibility of financial actors, in particular authorising officers and accounting officers.

2.    The Council, acting on a proposal from the Commission and after consulting the European Parliament and the Court of Auditors, shall determine the methods and procedure whereby the budget revenue provided under the arrangements relating to the Union's own resources shall be made available to the Commission, and determine the measures to be applied, if need be, to meet cash requirements.

## Article  323

The European Parliament, the Council and the Commission shall ensure that the financial means are made available to allow the Union to fulfil its legal obligations in respect of third parties.

## Article  324

Regular meetings between the Presidents of the European Parliament, the Council and the Commission shall be convened, on the initiative of the Commission, under the budgetary procedures referred to in this Title. The Presidents shall take all the necessary steps to promote consultation and the reconciliation of the positions of the institutions over which they preside in order to facilitate the implementation of this Title.

## CHAPTER  6

## COMBATTING  FRAUD

## Article  325

(ex Article  280 TEC)

1.    The Union and the Member States shall counter fraud and any other illegal activities affecting the financial interests of the Union through measures to be taken in accordance with this Article, which shall act as a deterrent and be such as to afford effective protection in the Member States, and in all the Union's institutions, bodies, offices and agencies.

2.    Member States shall take the same measures to counter fraud affecting the financial interests of the Union as they take to counter fraud affecting their own financial interests.

3.    Without prejudice to other provisions of the Treaties, the Member States shall coordinate their action aimed at protecting the financial interests of the Union against fraud. To this end they shall organise, together with the Commission, close and regular cooperation between the competent  authorities.

4.    The European Parliament and the Council, acting in accordance with the ordinary legislative procedure, after consulting the Court of Auditors, shall adopt the necessary measures in the fields of the prevention of and fight against fraud affecting the financial interests of the Union with a view to affording effective and equivalent protection in the Member States and in all the Union's institutions, bodies, offices and agencies.

5.    The Commission, in cooperation with Member States, shall each year submit to the European Parliament and to the Council a report on the measures taken for the implementation of this Article.

## TITLE III

### ENHANCED COOPERATION

### Article 326

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

Any enhanced cooperation shall comply with the Treaties and Union law.

Such cooperation shall not undermine the internal market or economic, social and territorial cohesion. It shall not constitute a barrier to or discrimination in trade between Member States, nor shall it distort competition between them.

### Article 327

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

Any enhanced cooperation shall respect the competences, rights and obligations of those Member States which do not participate in it. Those Member States shall not impede its implementation by the participating Member States.

### Article 328

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    When enhanced cooperation is being established, it shall be open to all Member States, subject to compliance with any conditions of participation laid down by the authorising decision. It shall also be open to them at any other time, subject to compliance with the acts already adopted within that framework, in addition to those conditions.

The Commission and the Member States participating in enhanced cooperation shall ensure that they promote participation by as many Member States as possible.

2.    The Commission and, where appropriate, the High Representative of the Union for Foreign Affairs and Security Policy shall keep the European Parliament and the Council regularly informed regarding developments in enhanced cooperation.

## Article 329

*(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)*

1.    Member States which wish to establish enhanced cooperation between themselves in one of the areas covered by the Treaties, with the exception of fields of exclusive competence and the common foreign and security policy, shall address a request to the Commission, specifying the scope and objectives of the enhanced cooperation proposed. The Commission may submit a proposal to the Council to that effect. In the event of the Commission not submitting a proposal, it shall inform the Member States concerned of the reasons for not doing so.

Authorisation to proceed with the enhanced cooperation referred to in the first subparagraph shall be granted by the Council, on a proposal from the Commission and after obtaining the consent of the European Parliament.

2.    The request of the Member States which wish to establish enhanced cooperation between themselves within the framework of the common foreign and security policy shall be addressed to the Council. It shall be forwarded to the High Representative of the Union for Foreign Affairs and Security Policy, who shall give an opinion on whether the enhanced cooperation proposed is consistent with the Union's common foreign and security policy, and to the Commission, which shall give its opinion in particular on whether the enhanced cooperation proposed is consistent with other Union policies. It shall also be forwarded to the European Parliament for information.

Authorisation to proceed with enhanced cooperation shall be granted by a decision of the Council acting unanimously.

## Article 330

*(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)*

All members of the Council may participate in its deliberations, but only members of the Council representing the Member States participating in enhanced cooperation shall take part in the vote.

Unanimity shall be constituted by the votes of the representatives of the participating Member States only.

A qualified majority shall be defined in accordance with Article 238(3).

## Article 331

*(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)*

1.    Any Member State which wishes to participate in enhanced cooperation in progress in one of the areas referred to in Article 329(1) shall notify its intention to the Council and the Commission.

The Commission shall, within four months of the date of receipt of the notification, confirm the participation of the Member State concerned. It shall note where necessary that the conditions of participation have been fulfilled and shall adopt any transitional measures necessary with regard to the application of the acts already adopted within the framework of enhanced cooperation.

However, if the Commission considers that the conditions of participation have not been fulfilled, it shall indicate the arrangements to be adopted to fulfil those conditions and shall set a deadline for re-examining the request. On the expiry of that deadline, it shall re-examine the request, in accordance with the procedure set out in the second subparagraph. If the Commission considers that the conditions of participation have still not been met, the Member State concerned may refer the matter to the Council, which shall decide on the request. The Council shall act in accordance with Article 330. It may also adopt the transitional measures referred to in the second subparagraph on a proposal from the Commission.

2.    Any Member State which wishes to participate in enhanced cooperation in progress in the framework of the common foreign and security policy shall notify its intention to the Council, the High Representative of the Union for Foreign Affairs and Security Policy and the Commission.

The Council shall confirm the participation of the Member State concerned, after consulting the High Representative of the Union for Foreign Affairs and Security Policy and after noting, where necessary, that the conditions of participation have been fulfilled. The Council, on a proposal from the High Representative, may also adopt any transitional measures necessary with regard to the application of the acts already adopted within the framework of enhanced cooperation. However, if the Council considers that the conditions of participation have not been fulfilled, it shall indicate the arrangements to be adopted to fulfil those conditions and shall set a deadline for re-examining the request for participation.

For the purposes of this paragraph, the Council shall act unanimously and in accordance with Article 330.

### Article 332

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

Expenditure resulting from implementation of enhanced cooperation, other than administrative costs entailed for the institutions, shall be borne by the participating Member States, unless all members of the Council, acting unanimously after consulting the European Parliament, decide otherwise.

### Article 333

(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)

1.    Where a provision of the Treaties which may be applied in the context of enhanced cooperation stipulates that the Council shall act unanimously, the Council, acting unanimously in accordance with the arrangements laid down in Article 330, may adopt a decision stipulating that it will act by a qualified majority.

2.    Where a provision of the Treaties which may be applied in the context of enhanced cooperation stipulates that the Council shall adopt acts under a special legislative procedure, the Council, acting unanimously in accordance with the arrangements laid down in Article 330, may adopt a decision stipulating that it will act under the ordinary legislative procedure. The Council shall act after consulting the European Parliament.

3.    Paragraphs 1 and 2 shall not apply to decisions having military or defence implications.


## Article 334

*(ex Articles 27a to 27e, 40 to 40b and 43 to 45 TEU and ex Articles 11 and 11a TEC)*

The Council and the Commission shall ensure the consistency of activities undertaken in the context of enhanced cooperation and the consistency of such activities with the policies of the Union, and shall cooperate to that end.


# PART SEVEN

## GENERAL AND FINAL PROVISIONS

### Article 335

*(ex Article 282 TEC)*

In each of the Member States, the Union shall enjoy the most extensive legal capacity accorded to legal persons under their laws; it may, in particular, acquire or dispose of movable and immovable property and may be a party to legal proceedings. To this end, the Union shall be represented by the Commission. However, the Union shall be represented by each of the institutions, by virtue of their administrative autonomy, in matters relating to their respective operation.


### Article 336

*(ex Article 283 TEC)*

The European Parliament and the Council shall, acting by means of regulations in accordance with the ordinary legislative procedure and after consulting the other institutions concerned, lay down the Staff Regulations of Officials of the European Union and the Conditions of Employment of other servants of the Union.


### Article 337

*(ex Article 284 TEC)*

The Commission may, within the limits and under conditions laid down by the Council acting by a simple majority in accordance with the provisions of the Treaties, collect any information and carry out any checks required for the performance of the tasks entrusted to it.


### Article 338

*(ex Article 285 TEC)*

1.    Without prejudice to Article 5 of the Protocol on the Statute of the European System of Central Banks and of the European Central Bank, the European Parliament and the Council, acting in accordance with the ordinary legislative procedure, shall adopt measures for the production of statistics where necessary for the performance of the activities of the Union.

2.    The production of Union statistics shall conform to impartiality, reliability, objectivity, scientific independence, cost-effectiveness and statistical confidentiality; it shall not entail excessive burdens on economic operators.

### Article 339

(ex Article 287 TEC)

The members of the institutions of the Union, the members of committees, and the officials and other servants of the Union shall be required, even after their duties have ceased, not to disclose information of the kind covered by the obligation of professional secrecy, in particular information about undertakings, their business relations or their cost components.

### Article 340

(ex Article 288 TEC)

The contractual liability of the Union shall be governed by the law applicable to the contract in question.

In the case of non-contractual liability, the Union shall, in accordance with the general principles common to the laws of the Member States, make good any damage caused by its institutions or by its servants in the performance of their duties.

Notwithstanding the second paragraph, the European Central Bank shall, in accordance with the general principles common to the laws of the Member States, make good any damage caused by it or by its servants in the performance of their duties.

The personal liability of its servants towards the Union shall be governed by the provisions laid down in their Staff Regulations or in the Conditions of Employment applicable to them.

### Article 341

(ex Article 289 TEC)

The seat of the institutions of the Union shall be determined by common accord of the governments of the Member States.

### Article 342

(ex Article 290 TEC)

The rules governing the languages of the institutions of the Union shall, without prejudice to the provisions contained in the Statute of the Court of Justice of the European Union, be determined by the Council, acting unanimously by means of regulations.

### Article 343

(ex Article 291 TEC)

The Union shall enjoy in the territories of the Member States such privileges and immunities as are necessary for the performance of its tasks, under the conditions laid down in the Protocol of 8 April 1965 on the privileges and immunities of the European Union. The same shall apply to the European Central Bank and the European Investment Bank.

### Article 344

(ex Article 292 TEC)

Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for therein.

### Article 345

(ex Article 295 TEC)

The Treaties shall in no way prejudice the rules in Member States governing the system of property ownership.

### Article 346

(ex Article 296 TEC)

1.    The provisions of the Treaties shall not preclude the application of the following rules:

(a) no Member State shall be obliged to supply information the disclosure of which it considers contrary to the essential interests of its security;

(b) any Member State may take such measures as it considers necessary for the protection of the essential interests of its security which are connected with the production of or trade in arms, munitions and war material; such measures shall not adversely affect the conditions of competition in the internal market regarding products which are not intended for specifically military purposes.

2.    The Council may, acting unanimously on a proposal from the Commission, make changes to the list, which it drew up on 15 April 1958, of the products to which the provisions of paragraph 1(b) apply.

### Article 347

(ex Article 297 TEC)

Member States shall consult each other with a view to taking together the steps needed to prevent the functioning of the internal market being affected by measures which a Member State may be called upon to take in the event of serious internal disturbances affecting the maintenance of law and order, in the event of war, serious international tension constituting a threat of war, or in order to carry out obligations it has accepted for the purpose of maintaining peace and international security.

## Article 348

*(ex Article 298 TEC)*

If measures taken in the circumstances referred to in Articles 346 and 347 have the effect of distorting the conditions of competition in the internal market, the Commission shall, together with the State concerned, examine how these measures can be adjusted to the rules laid down in the Treaties.

By way of derogation from the procedure laid down in Articles 258 and 259, the Commission or any Member State may bring the matter directly before the Court of Justice if it considers that another Member State is making improper use of the powers provided for in Articles 346 and 347. The Court of Justice shall give its ruling in camera.

## Article 349

*(ex Article 299(2), second, third and fourth subparagraphs, TEC)*

Taking account of the structural social and economic situation of Guadeloupe, French Guiana, Martinique, Mayotte, Réunion, Saint-Martin, the Azores, Madeira and the Canary Islands, which is compounded by their remoteness, insularity, small size, difficult topography and climate, economic dependence on a few products, the permanence and combination of which severely restrain their development, the Council, on a proposal from the Commission and after consulting the European Parliament, shall adopt specific measures aimed, in particular, at laying down the conditions of application of the Treaties to those regions, including common policies. Where the specific measures in question are adopted by the Council in accordance with a special legislative procedure, it shall also act on a proposal from the Commission and after consulting the European Parliament.

The measures referred to in the first paragraph concern in particular areas such as customs and trade policies, fiscal policy, free zones, agriculture and fisheries policies, conditions for supply of raw materials and essential consumer goods, State aids and conditions of access to structural funds and to horizontal Union programmes.

The Council shall adopt the measures referred to in the first paragraph taking into account the special characteristics and constraints of the outermost regions without undermining the integrity and the coherence of the Union legal order, including the internal market and common policies.

## Article 350

*(ex Article 306 TEC)*

The provisions of the Treaties shall not preclude the existence or completion of regional unions between Belgium and Luxembourg, or between Belgium, Luxembourg and the Netherlands, to the extent that the objectives of these regional unions are not attained by application of the Treaties.

## Article 351

### (ex Article 307 TEC)

The rights and obligations arising from agreements concluded before 1 January 1958 or, for acceding States, before the date of their accession, between one or more Member States on the one hand, and one or more third countries on the other, shall not be affected by the provisions of the Treaties.

To the extent that such agreements are not compatible with the Treaties, the Member State or States concerned shall take all appropriate steps to eliminate the incompatibilities established. Member States shall, where necessary, assist each other to this end and shall, where appropriate, adopt a common attitude.

In applying the agreements referred to in the first paragraph, Member States shall take into account the fact that the advantages accorded under the Treaties by each Member State form an integral part of the establishment of the Union and are thereby inseparably linked with the creation of common institutions, the conferring of powers upon them and the granting of the same advantages by all the other Member States.

## Article 352

### (ex Article 308 TEC)

1.    If action by the Union should prove necessary, within the framework of the policies defined in the Treaties, to attain one of the objectives set out in the Treaties, and the Treaties have not provided the necessary powers, the Council, acting unanimously on a proposal from the Commission and after obtaining the consent of the European Parliament, shall adopt the appropriate measures. Where the measures in question are adopted by the Council in accordance with a special legislative procedure, it shall also act unanimously on a proposal from the Commission and after obtaining the consent of the European Parliament.

2.    Using the procedure for monitoring the subsidiarity principle referred to in Article 5(3) of the Treaty on European Union, the Commission shall draw national Parliaments' attention to proposals based on this Article.

3.    Measures based on this Article shall not entail harmonisation of Member States' laws or regulations in cases where the Treaties exclude such harmonisation.

4.    This Article cannot serve as a basis for attaining objectives pertaining to the common foreign and security policy and any acts adopted pursuant to this Article shall respect the limits set out in Article 40, second paragraph, of the Treaty on European Union.

*Article 353*

Article 48(7) of the Treaty on European Union shall not apply to the following Articles:

— Article 311, third and fourth paragraphs,

— Article 312(2), first subparagraph,

— Article 352, and

— Article 354.

*Article 354*

(ex Article 309 TEC)

For the purposes of Article 7 of the Treaty on European Union on the suspension of certain rights resulting from Union membership, the member of the European Council or of the Council representing the Member State in question shall not take part in the vote and the Member State in question shall not be counted in the calculation of the one third or four fifths of Member States referred to in paragraphs 1 and 2 of that Article. Abstentions by members present in person or represented shall not prevent the adoption of decisions referred to in paragraph 2 of that Article.

For the adoption of the decisions referred to in paragraphs 3 and 4 of Article 7 of the Treaty on European Union, a qualified majority shall be defined in accordance with Article 238(3)(b) of this Treaty.

Where, following a decision to suspend voting rights adopted pursuant to paragraph 3 of Article 7 of the Treaty on European Union, the Council acts by a qualified majority on the basis of a provision of the Treaties, that qualified majority shall be defined in accordance with Article 238(3)(b) of this Treaty, or, where the Council acts on a proposal from the Commission or from the High Representative of the Union for Foreign Affairs and Security Policy, in accordance with Article 238(3)(a).

For the purposes of Article 7 of the Treaty on European Union, the European Parliament shall act by a two-thirds majority of the votes cast, representing the majority of its component Members.

*Article 355*

(ex Article 299(2), first subparagraph, and Article 299(3) to (6) TEC)

In addition to the provisions of Article 52 of the Treaty on European Union relating to the territorial scope of the Treaties, the following provisions shall apply:

1.    The provisions of the Treaties shall apply to Guadeloupe, French Guiana, Martinique, Mayotte, Réunion, Saint-Martin, the Azores, Madeira and the Canary Islands in accordance with Article 349.

2.    The special arrangements for association set out in Part Four shall apply to the overseas countries and territories listed in Annex II.

The Treaties shall not apply to those overseas countries and territories having special relations with the United Kingdom of Great Britain and Northern Ireland which are not included in the aforementioned list.

3.    The provisions of the Treaties shall apply to the European territories for whose external relations a Member State is responsible.

4.    The provisions of the Treaties shall apply to the Åland Islands in accordance with the provisions set out in Protocol 2 to the Act concerning the conditions of accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden.

5.    Notwithstanding Article 52 of the Treaty on European Union and paragraphs 1 to 4 of this Article:

(a)  the Treaties shall not apply to the Faeroe Islands;

(b)  the Treaties shall not apply to the United Kingdom Sovereign Base Areas of Akrotiri and Dhekelia in Cyprus except to the extent necessary to ensure the implementation of the arrangements set out in the Protocol on the Sovereign Base Areas of the United Kingdom of Great Britain and Northern Ireland in Cyprus annexed to the Act concerning the conditions of accession of the Czech Republic, the Republic of Estonia, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the Republic of Poland, the Republic of Slovenia and the Slovak Republic to the European Union and in accordance with the terms of that Protocol;

(c)  the Treaties shall apply to the Channel Islands and the Isle of Man only to the extent necessary to ensure the implementation of the arrangements for those islands set out in the Treaty concerning the accession of new Member States to the European Economic Community and to the European Atomic Energy Community signed on 22 January 1972.

6.    The European Council may, on the initiative of the Member State concerned, adopt a decision amending the status, with regard to the Union, of a Danish, French or Netherlands country or territory referred to in paragraphs 1 and 2. The European Council shall act unanimously after consulting the Commission.

*Article 356*

(ex Article 312 TEC)

This Treaty is concluded for an unlimited period.

*Article 357*

(ex Article 313 TEC)

This Treaty shall be ratified by the High Contracting Parties in accordance with their respective constitutional requirements. The Instruments of ratification shall be deposited with the Government of the Italian Republic.

This Treaty shall enter into force on the first day of the month following the deposit of the Instrument of ratification by the last signatory State to take this step. If, however, such deposit is made less than 15 days before the beginning of the following month, this Treaty shall not enter into force until the first day of the second month after the date of such deposit.

*Article 358*

The provisions of Article 55 of the Treaty on European Union shall apply to this Treaty.

IN WITNESS WHEREOF, the undersigned Plenipotentiaries have signed this Treaty.

Done at Rome this twenty-fifth day of March in the year one thousand nine hundred and fifty-seven.

*(List of signatories not reproduced)*

—————