# EXHIBIT 5



# Reports of Cases

JUDGMENT OF THE COURT (Grand Chamber)

6 March 2018 *

(Reference for a preliminary ruling — Bilateral investment treaty concluded in 1991 between the Kingdom of the Netherlands and the Czech and Slovak Federative Republic and still applicable between the Kingdom of the Netherlands and the Slovak Republic — Provision enabling an investor from one Contracting Party to bring proceedings before an arbitral tribunal in the event of a dispute with the other Contracting Party — Compatibility with Articles 18, 267 and 344 TFEU — Concept of 'court or tribunal' — Autonomy of EU law)

In Case C-284/16,

REQUEST for a preliminary ruling under Article 267 TFEU from the Bundesgerichtshof (Federal Court of Justice, Germany), made by decision of 3 March 2016, received at the Court on 23 May 2016, in the proceedings

**Slowakische Republik (Slovak Republic)**

v

**Achmea BV,**

THE COURT (Grand Chamber),

composed of K. Lenaerts, President, A. Tizzano (Rapporteur), Vice-President, M. Ilešič, L. Bay Larsen, T. von Danwitz, J. Malenovský and E. Levits, Presidents of Chambers, E. Juhász, A. Borg Barthet, J.-C. Bonichot, F. Biltgen, K. Jürimäe, C. Lycourgos, M. Vilaras and E. Regan, Judges,

Advocate General: M. Wathelet,

Registrar: K. Malacek, Administrator,

having regard to the written procedure and further to the hearing on 19 June 2017,

after considering the observations submitted on behalf of:

– the Slovak Republic, by M. Burgstaller, Solicitor, and K. Pörnbacher, Rechtsanwalt,

– Achmea BV, by M. Leijten, D. Maláčová, H. Bälz and R. Willer, Rechtsanwälte, and A. Marsman, advocaat,

– the German Government, by T. Henze, acting as Agent,

– the Czech Government, by M. Smolek, J. Vláčil and M. Hedvábná, acting as Agents,

* Language of the case: German.



– the Estonian Government, by K. Kraavi-Käerdi and N. Grünberg, acting as Agents,

– the Greek Government, by S. Charitaki, S. Papaioannou and G. Karipsiadis, acting as Agents,

– the Spanish Government, by S. Centeno Huerta and A. Rubio González, acting as Agents,

– the French Government, by D. Colas and D. Segoin, acting as Agents,

– the Italian Government, by G. Palmieri, acting as Agent, and S. Fiorentino, avvocato dello Stato,

– the Cypriot Government, by E. Symeonidou and E. Zachariadou, acting as Agents,

– the Latvian Government, by I. Kucina and G. Bambāne, acting as Agents,

– the Hungarian Government, by M.Z. Fehér and G. Koós, acting as Agents,

– the Netherlands Government, by M. Bulterman and J. Langer, acting as Agents,

– the Austrian Government, by C. Pesendorfer and M. Klamert, acting as Agents,

– the Polish Government, by B. Majczyna, L. Bosek, R. Szczęch and M. Cichomska, acting as Agents,

– the Romanian Government, by R.H. Radu, acting as Agent, and R. Mangu and E. Gane, consilieri,

– the Finnish Government, by S. Hartikainen, acting as Agent,

– the European Commission, by T. Maxian Rusche, J. Baquero Cruz, L. Malferrari and F. Erlbacher, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 19 September 2017,

gives the following

## Judgment

1   This request for a preliminary ruling concerns the interpretation of Articles 18, 267 and 344 TFEU.

2   The request has been made in proceedings between the Slovak Republic and Achmea BV concerning an arbitral award of 7 December 2012 made by the arbitral tribunal provided for by the Agreement on encouragement and reciprocal protection of investments between the Kingdom of the Netherlands and the Czech and Slovak Federative Republic ('the BIT').

## Legal context

### The BIT

3   The BIT, concluded in 1991, entered into force on 1 January 1992. In accordance with Article 3(1) of the BIT, the contracting parties undertook to ensure fair and equitable treatment to the investments of investors of the other contracting party and not to impair by unreasonable or discriminatory measures the operation, management, maintenance, use, enjoyment or disposal of those investments. In

accordance with Article 4 of the BIT, each contracting party guaranteed the free transfer in a freely convertible currency without undue restriction or delay of payments relating to an investment, such as profits, interest and dividends.

4    Article 8 of the BIT provides:

'1. All disputes between one Contracting Party and an investor of the other Contracting Party concerning an investment of the latter shall if, possible, be settled amicably.

2. Each Contracting Party hereby consents to submit a dispute referred to in paragraph 1 of this Article to an arbitral tribunal, if the dispute has not been settled amicably within a period of six months from the date on which either party to the dispute requested amicable settlement.

3. The arbitral tribunal referred to in paragraph 2 of this Article will be constituted for each individual case in the following way: each party to the dispute appoints one member of the tribunal and the two members thus appointed shall select a national of a third State as Chairman of the tribunal. Each party to the dispute shall appoint its member of the tribunal within two months, and the Chairman shall be appointed within three months from the date on which the investor has notified the other Contracting Party of his decision to submit the dispute to the arbitral tribunal.

4. If the appointments have not been made in the abovementioned periods, either party to the dispute may invite the President of the Arbitration Institute of the Chamber of Commerce of Stockholm to make the necessary appointments. If the President is a national of either Contracting Party or if he is otherwise prevented from discharging the said function, the Vice-President shall be invited to make the necessary appointments. If the Vice-President is a national of either Contracting Party or if he too is prevented from discharging the said function, the most senior member of the Arbitration Institute who is not a national of either Contracting Party shall be invited to make the necessary appointments.

5. The arbitration tribunal shall determine its own procedure applying the United Nations Commission on International Trade Law (UNCITRAL) arbitration rules.

6. The arbitral tribunal shall decide on the basis of the law, taking into account in particular though not exclusively:

–   the law in force of the Contracting Party concerned;

–   the provisions of this Agreement, and other relevant agreements between the Contracting Parties;

–   the provisions of special agreements relating to the investment;

–   the general principles of international law.

7. The tribunal takes its decision by majority of votes; such decision shall be final and binding upon the parties to the dispute.'

*German law*

5    Under Paragraph 1059(2) of the Zivilprozessordnung (Code of Civil Procedure), an arbitral award can be set aside only if one of the grounds set out in that provision is present, which include the arbitration agreement being invalid under the law to which the parties have subjected it, and the recognition or enforcement of the arbitral award being contrary to public policy.

**The dispute in the main proceedings and the questions referred for a preliminary ruling**

6    On 1 January 1993 the Slovak Republic, as a successor State to the Czech and Slovak Federative Republic, succeeded to the rights and obligations of that State under the BIT, and on 1 May 2004 it acceded to the European Union.

7    As part of a reform of its health system, the Slovak Republic opened the Slovak market in 2004 to national operators and those of other Member States offering private sickness insurance services. Achmea, an undertaking belonging to a Netherlands insurance group, after obtaining authorisation as a sickness insurance institution, set up a subsidiary in Slovakia to which it contributed capital and through which it offered private sickness insurance services on the Slovak market.

8    In 2006 the Slovak Republic partly reversed the liberalisation of the private sickness insurance market. In particular, by a law of 25 October 2007, it prohibited the distribution of profits generated by private sickness insurance activities. Subsequently, after the Ústavný súd Slovenskej republiky (Constitutional Court of the Slovak Republic) held in a judgment of 26 January 2011 that the prohibition was contrary to the Slovak constitution, the Slovak Republic, by a law which entered into force on 1 August 2011, once more allowed the distribution of the profits in question.

9    Since it considered that the legislative measures of the Slovak Republic had caused it damage, Achmea brought arbitration proceedings against the Slovak Republic in October 2008 pursuant to Article 8 of the BIT.

10    As Frankfurt am Main (Germany) was chosen as the place of arbitration, German law applies to the arbitration proceedings concerned.

11    In those arbitration proceedings the Slovak Republic raised an objection of lack of jurisdiction of the arbitral tribunal. It submitted in that respect that, as a result of its accession to the European Union, recourse to an arbitral tribunal provided for in Article 8(2) of the BIT was incompatible with EU law. By an interlocutory arbitral award of 26 October 2010, the arbitral tribunal dismissed the objection. The applications for that award to be set aside brought by the Slovak Republic before the German courts were unsuccessful at first instance and on appeal.

12    By arbitral award of 7 December 2012, the arbitral tribunal ordered the Slovak Republic to pay Achmea damages in the principal amount of EUR 22.1 million. The Slovak Republic brought an action to set aside that arbitral award before the Oberlandesgericht Frankfurt am Main (Higher Regional Court, Frankfurt am Main, Germany). When that court dismissed the action, the Slovak Republic appealed on a point of law against the dismissal to the Bundesgerichtshof (Federal Court of Justice, Germany).

13    The referring court notes that, since the accession of the Slovak Republic to the European Union on 1 May 2004, the BIT has constituted an agreement between Member States, so that in the event of conflict the provisions of EU law take precedence, in the matters governed by them, over the provisions of the BIT.

14    The Slovak Republic expressed doubts as to the compatibility of the arbitration clause in Article 8 of the BIT with Articles 18, 267 and 344 TFEU. Although the referring court does not share those doubts, it nonetheless considered that, since the Court has not yet ruled on those questions and the questions are of considerable importance because of the numerous bilateral investment treaties still in force between Member States which contain similar arbitration clauses, it was necessary to make the present reference to the Court in order to decide the case before it.

15    In the first place, the referring court doubts that Article 344 TFEU is even applicable. To begin with, the subject matter and purpose of that provision show that, even if its wording does not make this clearly apparent, it does not concern disputes between an individual and a Member State.

16  Next, the subject matter of Article 344 TFEU is confined to disputes relating to the interpretation and application of the Treaties. The dispute in the main proceedings is not such a case, however, as the arbitral award of 7 December 2012 was made on the basis of the BIT alone.

17  Finally, the purpose of Article 344 TFEU is to safeguard the allocation of powers laid down by the Treaties, and hence the autonomy of the EU legal system, observance of which is ensured by the Court, and at the same time it is a specific manifestation of the duty of the Member States to cooperate with the Court within the meaning of Article 4(3) TEU. It cannot, however, be concluded from that that Article 344 TFEU safeguards the jurisdiction of the Court with respect to any dispute in which EU law may be applied or interpreted. That provision in fact protects the exclusive jurisdiction of the Court only to the extent that the Member States have to make use of the procedures before the Court laid down by the Treaties. Yet a dispute such as that in the main proceedings cannot be resolved in proceedings before the EU judicature. The Treaties make no provision for any judicial procedure in which an investor such as Achmea can bring a claim, before the EU judicature, for compensation from a Member State under a bilateral investment treaty such as the BIT.

18  In the second place, the referring court questions whether Article 267 TFEU precludes an arbitration clause such as that at issue in the main proceedings.

19  It observes, first, that the arbitration procedure is not in itself capable of ensuring the uniform application of EU law that Article 267 TFEU aims to guarantee. Even though, under Article 8(6) of the BIT, the arbitral tribunal had to comply with EU law and, in the event of conflict, apply it in priority, it would not have the possibility of making a reference to the Court for a preliminary ruling, however, since it could not be regarded as a 'court or tribunal' within the meaning of Article 267 TFEU.

20  The referring court considers, next, that the uniform interpretation of EU law could nonetheless be regarded as being ensured in the present case, in that, prior to enforcement of the arbitral award, a court of the State may be called on to review the compatibility of the arbitral award with EU law, and can make a reference to the Court if need be. Further, in accordance with Paragraph 1059(2)(2)(b) of the Code of Civil Procedure, one of the grounds for setting aside an arbitral award is that its recognition or enforcement would be contrary to public policy. In line with the Court's rulings on arbitral awards deciding disputes between individuals, the national courts' power of review of an arbitral award concerning a dispute between an individual and a Member State can validly be limited solely to breaches of fundamental provisions of EU law. That circumstance should not lead to an arbitration clause such as that at issue in the main proceedings being contrary to Article 267 TFEU.

21  The referring court adds, finally, that the Court has previously held that an international agreement providing for the establishment outside the institutional and judicial framework of the EU of a special court responsible for the interpretation and application of the provisions of that agreement is compatible with EU law in so far as there is no adverse effect on the autonomy of the EU legal order. The Court has not expressed reservations as to the creation of a judicial system that is designed, in essence, to resolve disputes relating to the interpretation or application of the actual provisions of the international agreement concerned and does not affect the powers of the courts and tribunals of the Member States in relation to the interpretation and application of EU law, nor the power, or indeed the obligation, of those courts and tribunals to request a preliminary ruling from the Court. The arbitral tribunal at issue in the main proceedings is called on precisely to rule on an infringement of the provisions of the BIT, which it must interpret in the light of EU law, in particular the provisions governing the free movement of capital.

22  In the third place, the referring court notes that, unlike Netherlands or Slovak investors, those from Member States other than the Kingdom of the Netherlands and the Slovak Republic are unable to bring proceedings before an arbitral tribunal instead of a court of the State, which represents a considerable disadvantage which may constitute discrimination contrary to Article 18 TFEU. However,

the restriction by an intra-EU bilateral agreement of an advantage to nationals of the contracting Member States is discriminatory only if the nationals of other Member States who do not enjoy that advantage are in an objectively comparable situation. That is not so in the present case, since the fact that the reciprocal rights and obligations apply only to nationals of the two contracting Member States is a consequence that is inherent in the bilateral agreements concluded between them.

23    Having regard to the above considerations, the Bundesgerichtshof (Federal Court of Justice) decided to stay the proceedings and to refer the following questions to the Court for a preliminary ruling:

'(1)   Does Article 344 TFEU preclude the application of a provision in a bilateral investment protection agreement between Member States of the European Union (a so-called intra-EU BIT) under which an investor of a Contracting State, in the event of a dispute concerning investments in the other Contracting State, may bring proceedings against the latter State before an arbitral tribunal where the investment protection agreement was concluded before one of the Contracting States acceded to the European Union but the arbitral proceedings are not to be brought until after that date?

If Question 1 is to be answered in the negative:

(2)   Does Article 267 TFEU preclude the application of such a provision?

If Questions 1 and 2 are to be answered in the negative:

(3)   Does the first paragraph of Article 18 TFEU preclude the application of such a provision under the circumstances described in Question 1?'

**The requests to have the written procedure reopened**

24    Following the delivery of the Opinion of the Advocate General on 19 September 2017, the Czech, Hungarian and Polish Governments, by documents lodged at the Court Registry on 3 November, 19 and 16 October respectively, requested the reopening of the oral procedure pursuant to Article 83 of the Court's Rules of Procedure.

25    In support of their requests, those governments express their disagreement with the Advocate General's Opinion.

26    However, first, the Statute of the Court of Justice of the European Union and the Rules of Procedure of the Court of Justice make no provision for the interested parties referred to in Article 23 of the Statute to submit observations in response to the Advocate General's Opinion (judgment of 22 June 2017, *Federatie Nederlandse Vakvereniging and Others*, C-126/16, EU:C:2017:489, paragraph 30).

27    Secondly, under the second paragraph of Article 252 TFEU, the Advocate General, acting with complete impartiality and independence, is to make, in open court, reasoned submissions on cases which, in accordance with the Statute of the Court of Justice of the European Union, require the Advocate General's involvement. The Court is not bound either by the Advocate General's conclusion or by the reasoning which led to that conclusion. Consequently, a party's disagreement with the Opinion of the Advocate General, irrespective of the questions that he examines in his Opinion, cannot in itself constitute grounds justifying the reopening of the oral procedure (judgment of 25 October 2017, *Polbud — Wykonawstwo*, C-106/16, EU:C:2017:804, paragraph 24 and the case-law cited).

28    Nevertheless, the Court may at any time, after hearing the Advocate General, order the reopening of the oral part of the procedure, in accordance with Article 83 of its Rules of Procedure, in particular if it considers that it lacks sufficient information or where the case must be decided on the basis of an

argument which has not been debated between the interested persons (judgment of 22 June 2017, *Federatie Nederlandse Vakvereniging and Others*, C-126/16, EU:C:2017:489, paragraph 33 and the case-law cited).

29    In the present case, since the requests confine themselves to expressing the disagreement of the Czech, Hungarian and Polish Governments with the Opinion of the Advocate General and do not mention any new argument on the basis of which the present case should be decided, the Court considers, after hearing the Advocate General, that it has before it all the necessary elements to give judgment and that they need not be debated between the interested persons.

30    Having regard to the foregoing, the requests for the oral procedure to be reopened must be rejected.

**Consideration of the questions referred**

*Questions 1 and 2*

31    By its first and second questions, which should be taken together, the referring court essentially asks whether Articles 267 and 344 TFEU must be interpreted as precluding a provision in an international agreement concluded between Member States, such as Article 8 of the BIT, under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept.

32    In order to answer those questions, it should be recalled that, according to settled case-law of the Court, an international agreement cannot affect the allocation of powers fixed by the Treaties or, consequently, the autonomy of the EU legal system, observance of which is ensured by the Court. That principle is enshrined in particular in Article 344 TFEU, under which the Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for in the Treaties (Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraph 201 and the case-law cited).

33    Also according to settled case-law of the Court, the autonomy of EU law with respect to both the law of the Member States and to international law is justified by the essential characteristics of the EU and its law, relating in particular to the constitutional structure of the EU and the very nature of that law. EU law is characterised by the fact that it stems from an independent source of law, the Treaties, by its primacy over the laws of the Member States, and by the direct effect of a whole series of provisions which are applicable to their nationals and to the Member States themselves. Those characteristics have given rise to a structured network of principles, rules and mutually interdependent legal relations binding the EU and its Member States reciprocally and binding its Member States to each other (see, to that effect, Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraphs 165 to 167 and the case-law cited).

34    EU law is thus based on the fundamental premiss that each Member State shares with all the other Member States, and recognises that they share with it, a set of common values on which the EU is founded, as stated in Article 2 TEU. That premiss implies and justifies the existence of mutual trust between the Member States that those values will be recognised, and therefore that the law of the EU that implements them will be respected. It is precisely in that context that the Member States are obliged, by reason inter alia of the principle of sincere cooperation set out in the first subparagraph of Article 4(3) TEU, to ensure in their respective territories the application of and respect for EU law, and to take for those purposes any appropriate measure, whether general or particular, to ensure fulfilment

of the obligations arising out of the Treaties or resulting from the acts of the institutions of the EU (Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraphs 168 and 173 and the case-law cited).

35   In order to ensure that the specific characteristics and the autonomy of the EU legal order are preserved, the Treaties have established a judicial system intended to ensure consistency and uniformity in the interpretation of EU law (Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraph 174).

36   In that context, in accordance with Article 19 TEU, it is for the national courts and tribunals and the Court of Justice to ensure the full application of EU law in all Member States and to ensure judicial protection of the rights of individuals under that law (see, to that effect, Opinion 1/09 (Agreement creating a unified patent litigation system) of 8 March 2011, EU:C:2011:123, paragraph 68; Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraph 175; and judgment of 27 February 2018, *Associação Sindical dos Juízes Portugueses*, C-64/16, EU:C:2018:117, paragraph 33).

37   In particular, the judicial system as thus conceived has as its keystone the preliminary ruling procedure provided for in Article 267 TFEU, which, by setting up a dialogue between one court and another, specifically between the Court of Justice and the courts and tribunals of the Member States, has the object of securing uniform interpretation of EU law, thereby serving to ensure its consistency, its full effect and its autonomy as well as, ultimately, the particular nature of the law established by the Treaties (Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraph 176 and the case-law cited).

38   The first and second questions referred for a preliminary ruling must be answered in the light of those considerations.

39   It must be ascertained, first, whether the disputes which the arbitral tribunal mentioned in Article 8 of the BIT is called on to resolve are liable to relate to the interpretation or application of EU law.

40   Even if, as Achmea in particular contends, that tribunal, despite the very broad wording of Article 8(1) of the BIT, is called on to rule only on possible infringements of the BIT, the fact remains that in order to do so it must, in accordance with Article 8(6) of the BIT, take account in particular of the law in force of the contracting party concerned and other relevant agreements between the contracting parties.

41   Given the nature and characteristics of EU law mentioned in paragraph 33 above, that law must be regarded both as forming part of the law in force in every Member State and as deriving from an international agreement between the Member States.

42   It follows that on that twofold basis the arbitral tribunal referred to in Article 8 of the BIT may be called on to interpret or indeed to apply EU law, particularly the provisions concerning the fundamental freedoms, including freedom of establishment and free movement of capital.

43   It must therefore be ascertained, secondly, whether an arbitral tribunal such as that referred to in Article 8 of the BIT is situated within the judicial system of the EU, and in particular whether it can be regarded as a court or tribunal of a Member State within the meaning of Article 267 TFEU. The consequence of a tribunal set up by Member States being situated within the EU judicial system is that its decisions are subject to mechanisms capable of ensuring the full effectiveness of the rules of the EU (see, to that effect, Opinion 1/09 (Agreement creating a unified patent litigation system) of 8 March 2011, EU:C:2011:123, paragraph 82 and the case-law cited).

44 In the case in which judgment was given on 12 June 2014, *Ascendi Beiras Litoral e Alta, Auto Estradas das Beiras Litoral e Alta* (C-377/13, EU:C:2014:1754), the Court derived the status of 'court or tribunal of a Member State' of the tribunal in question from the fact that the tribunal as a whole was part of the system of judicial resolution of tax disputes provided for by the Portuguese constitution itself (see, to that effect, judgment of 12 June 2014, *Ascendi Beiras Litoral e Alta, Auto Estradas das Beiras Litoral e Alta*, C-377/13, EU:C:2014:1754), paragraphs 25 and 26).

45 In the case in the main proceedings, the arbitral tribunal is not part of the judicial system of the Netherlands or Slovakia. Indeed, it is precisely the exceptional nature of the tribunal's jurisdiction compared with that of the courts of those two Member States that is one of the principal reasons for the existence of Article 8 of the BIT.

46 That characteristic of the arbitral tribunal at issue in the main proceedings means that it cannot in any event be classified as a court or tribunal 'of a Member State' within the meaning of Article 267 TFEU.

47 The Court has indeed held that there is no good reason why a court common to a number of Member States, such as the Benelux Court of Justice, should not be able to submit questions to the Court for a preliminary ruling in the same way as the courts or tribunals of any one of the Member States (see, to that effect, judgments of 4 November 1997, *Parfums Christian Dior*, C-337/95, EU:C:1997:517, paragraph 21, and of 14 June 2011, *Miles and Others*, C-196/09, EU:C:2011:388, paragraph 40).

48 However, the arbitral tribunal at issue in the main proceedings is not such a court common to a number of Member States, comparable to the Benelux Court of Justice. Whereas the Benelux Court has the task of ensuring that the legal rules common to the three Benelux States are applied uniformly, and the procedure before it is a step in the proceedings before the national courts leading to definitive interpretations of common Benelux legal rules, the arbitral tribunal at issue in the main proceedings does not have any such links with the judicial systems of the Member States (see, to that effect, judgment of 14 June 2011, *Miles and Others*, C-196/09, EU:C:2011:388, paragraph 41).

49 It follows that a tribunal such as that referred to in Article 8 of the BIT cannot be regarded as a 'court or tribunal of a Member State' within the meaning of Article 267 TFEU, and is not therefore entitled to make a reference to the Court for a preliminary ruling.

50 In those circumstances, it remains to be ascertained, thirdly, whether an arbitral award made by such a tribunal is, in accordance with Article 19 TEU in particular, subject to review by a court of a Member State, ensuring that the questions of EU law which the tribunal may have to address can be submitted to the Court by means of a reference for a preliminary ruling.

51 It should be noted that under Article 8(7) of the BIT the decision of the arbitral tribunal provided for in that article is final. Moreover, pursuant to Article 8(5) of the BIT, the arbitral tribunal is to determine its own procedure applying the UNCITRAL arbitration rules and, in particular, is itself to choose its seat and consequently the law applicable to the procedure governing judicial review of the validity of the award by which it puts an end to the dispute before it.

52 In the present case, the arbitral tribunal applied to by Achmea chose to sit in Frankfurt am Main, which made German law applicable to the procedure governing judicial review of the validity of the arbitral award made by the tribunal on 7 December 2012. It was thus that choice which enabled the Slovak Republic, as a party to the dispute, to seek judicial review of the arbitral award, in accordance with German law, by bringing proceedings to that end before the competent German court.

53 However, such judicial review can be exercised by that court only to the extent that national law permits. Moreover, Paragraph 1059(2) of the Code of Civil Procedure provides only for limited review, concerning in particular the validity of the arbitration agreement under the applicable law and the consistency with public policy of the recognition or enforcement of the arbitral award.

54    It is true that, in relation to commercial arbitration, the Court has held that the requirements of efficient arbitration proceedings justify the review of arbitral awards by the courts of the Member States being limited in scope, provided that the fundamental provisions of EU law can be examined in the course of that review and, if necessary, be the subject of a reference to the Court for a preliminary ruling (see, to that effect, judgments of 1 June 1999, *Eco Swiss*, C-126/97, EU:C:1999:269, paragraphs 35, 36 and 40, and of 26 October 2006, *Mostaza Claro*, C-168/05, EU:C:2006:675, paragraphs 34 to 39).

55    However, arbitration proceedings such as those referred to in Article 8 of the BIT are different from commercial arbitration proceedings. While the latter originate in the freely expressed wishes of the parties, the former derive from a treaty by which Member States agree to remove from the jurisdiction of their own courts, and hence from the system of judicial remedies which the second subparagraph of Article 19(1) TEU requires them to establish in the fields covered by EU law (see, to that effect, judgment of 27 February 2018, *Associação Sindical dos Juízes Portugueses*, C-64/16, EU:C:2018:117, paragraph 34), disputes which may concern the application or interpretation of EU law. In those circumstances, the considerations set out in the preceding paragraph relating to commercial arbitration cannot be applied to arbitration proceedings such as those referred to in Article 8 of the BIT.

56    Consequently, having regard to all the characteristics of the arbitral tribunal mentioned in Article 8 of the BIT and set out in paragraphs 39 to 55 above, it must be considered that, by concluding the BIT, the Member States parties to it established a mechanism for settling disputes between an investor and a Member State which could prevent those disputes from being resolved in a manner that ensures the full effectiveness of EU law, even though they might concern the interpretation or application of that law.

57    It is true that, according to settled case-law of the Court, an international agreement providing for the establishment of a court responsible for the interpretation of its provisions and whose decisions are binding on the institutions, including the Court of Justice, is not in principle incompatible with EU law. The competence of the EU in the field of international relations and its capacity to conclude international agreements necessarily entail the power to submit to the decisions of a court which is created or designated by such agreements as regards the interpretation and application of their provisions, provided that the autonomy of the EU and its legal order is respected (see, to that effect, Opinion 1/91 (EEA Agreement — I) of 14 December 1991, EU:C:1991:490, paragraphs 40 and 70; Opinion 1/09 (Agreement creating a unified patent litigation system) of 8 March 2011, EU:C:2011:123, paragraphs 74 and 76; and Opinion 2/13 (Accession of the EU to the ECHR) of 18 December 2014, EU:C:2014:2454, paragraphs 182 and 183).

58    In the present case, however, apart from the fact that the disputes falling within the jurisdiction of the arbitral tribunal referred to in Article 8 of the BIT may relate to the interpretation both of that agreement and of EU law, the possibility of submitting those disputes to a body which is not part of the judicial system of the EU is provided for by an agreement which was concluded not by the EU but by Member States. Article 8 of the BIT is such as to call into question not only the principle of mutual trust between the Member States but also the preservation of the particular nature of the law established by the Treaties, ensured by the preliminary ruling procedure provided for in Article 267 TFEU, and is not therefore compatible with the principle of sincere cooperation referred to in paragraph 34 above.

59    In those circumstances, Article 8 of the BIT has an adverse effect on the autonomy of EU law.

60    Consequently, the answer to Questions 1 and 2 is that Articles 267 and 344 TFEU must be interpreted as precluding a provision in an international agreement concluded between Member States, such as Article 8 of the BIT, under which an investor from one of those Member States may, in the event of a

dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept.

### *Question 3*

61    In view of the answer to Questions 1 and 2, there is no need to answer Question 3.

### Costs

62    Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

**Articles 267 and 344 TFEU must be interpreted as precluding a provision in an international agreement concluded between Member States, such as Article 8 of the Agreement on encouragement and reciprocal protection of investments between the Kingdom of the Netherlands and the Czech and Slovak Federative Republic, under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept.**

[Signatures]