# **EXHIBIT 13**

# JUDGMENT OF THE COURT
## 15 September 1998 [*]

In Case C-231/96,

REFERENCE to the Court under Article 177 of the EC Treaty by the Tribunale di Genova (Italy) for a preliminary ruling in the proceedings pending before that court between

**Edilizia Industriale Siderurgica Srl (Edis)**

and

**Ministero delle Finanze,**

on the interpretation of Community law concerning recovery of sums unduly paid,

THE COURT,

composed of: G. C. Rodríguez Iglesias, President, H. Ragnemalm, M. Wathelet and R. Schintgen (Presidents of Chambers), G. F. Mancini, J. C. Moitinho de Almeida, P. J. G. Kapteyn, D. A. O. Edward, J.-P. Puissochet (Rapporteur), L. Sevón and K. M. Ioannou, Judges,

---

[*] Language of the case: Italian.

Advocate General: D. Ruiz-Jarabo Colomer,
Registrar: D. Louterman-Hubeau, Principal Administrator,

after considering the written observations submitted on behalf of:

— Edilizia Industriale Siderurgica Srl (Edis), by Giuseppe Conte and Giuseppe M. Giacomini, of the Genoa Bar,

— the Italian Government, by Professor Umberto Leanza, Head of the Legal Department at the Ministry of Foreign Affairs, acting as Agent, assisted by Ivo M. Braguglia, Avvocato dello Stato,

— the French Government, by Catherine de Salins, Deputy Head of Directorate in the Legal Directorate, Ministry of Foreign Affairs, and Gautier Mignot, Secretary for Foreign Affairs in the same department, acting as Agents,

— the United Kingdom Government, by Stephanie Ridley, of the Treasury Solicitor's Department, acting as Agent, and Nicholas Paines, Barrister,

— the Commission of the European Communities, by Enrico Traversa, of its Legal Service, acting as Agent,

having regard to the Report for the Hearing,

after hearing the oral observations of Edilizia Industriale Siderurgica Srl (Edis), the Italian Government, the French Government, the United Kingdom Government and the Commission at the hearing on 3 February 1998,

after hearing the Opinion of the Advocate General at the sitting on 26 March 1998,

gives the following

## Judgment

1   By order of 18 June 1996, received at the Court Registry on 8 July 1996, the President of the Tribunale di Genova (District Court, Genoa) referred to the Court of Justice for a preliminary ruling under Article 177 of the EC Treaty three questions on the interpretation of Community law concerning recovery of sums unduly paid.

2   Those questions were raised in proceedings between Edilizia Industriale Siderurgica Srl (Edis), previously a public limited company and now a private limited company (hereinafter 'Edis'), and the Italian Ministry of Finance concerning the *tassa di concessione governativa* (administrative charge) for entering companies on the register of companies (hereinafter 'the registration charge').

3   The registration charge was introduced by Decree No 641 of the President of the Republic of 26 October 1972 (GURI No 292 of 11 November 1972, Supplement No 3, hereinafter 'Decree No 641/72'). It has, in so far as it applies to the registration of documents recording the incorporation of companies, been the subject of successive amendments regarding its amount and periodicity.

4   The amount of the registration charge was first substantially increased by Decree-Law No 853 of 19 December 1984 (GURI No 347 of 19 December 1984), converted into law by Law No 17 of 17 February 1985 (GURI No 41*bis* of 17 February 1985), which also provided that from then on the charge would be payable not only upon registration of the document incorporating the company but also on 30 June of each

I - 4981

calendar year thereafter. The amount of the charge was then further altered in 1988 and 1989. In 1989 it amounted to LIT 12 million for public limited companies and partnerships limited by shares, LIT 3.5 million for private limited companies and LIT 500 000 for other companies.

5   In its judgment in Joined Cases C-71/91 and C-178/91 *Ponente Carni and Cispadana Construzioni* [1993] ECR I-1915 (hereinafter '*Ponente Carni*'), concerning the registration charge, the Court held that Article 10 of Council Directive 69/335/EEC of 17 July 1969 concerning indirect taxes on the raising of capital (OJ, English Special Edition 1969 (II), p. 412) was to be interpreted as prohibiting, subject to the derogating provisions of Article 12, an annual charge due in respect of the registration of capital companies even though the product of that charge contributed to financing the department responsible for keeping the register of companies. The Court also held that Article 12 of Directive 69/335 was to be interpreted as meaning that duties paid by way of fees or dues referred to in Article 12(1)(e) might constitute payment collected by way of consideration for transactions required by law in the public interest such as, for example, the registration of capital companies. The amount of such duties, which might vary according to the legal form taken by the company, was to be calculated on the basis of the cost of the transaction, which might be assessed on a flat-rate basis.

6   Following that judgment, the registration charge was reduced to LIT 500 000 for all companies by Decree-Law No 331 of 30 August 1993 (GURI No 203 of 30 August 1993), converted into law by Law No 427 of 29 October 1993 (GURI No 255 of 29 October 1993), and it ceased to be payable annually.

7   According to the order for reference, Edis paid LIT 64 500 000 to the Public Treasury in respect of the annual registration charge between 1986 and 1992.

8   Considering that sum to have been paid when not due, in breach of Directive 69/355, Edis applied to the competent finance administration, without success, for it to be refunded. It then sought an injunction from the President of the Tribunale di Genova requiring the Minister of Finance to refund the sum in question, together with the interest accruing from the date on which each payment had been made.

9   In his order for reference, the President of the Tribunale di Genova states that the illegality of the registration charge was confirmed by *Ponente Carni*, the effects of that judgment not being limited in time. Furthermore, the Corte Costituzionale (Constitutional Court), by judgment No 56 of 24 February 1995 (GURI, Special Series, No 9, of 1 March 1995), and the Corte Suprema di Cassazione (Supreme Court of Cassation), by judgment No 4468 of 23 February 1996, had subsequently held that the payments in respect of the charge had been unduly made.

10  The President of the Tribunale di Genova observes, however, that, in judgment No 3458 of the same date, the Corte Suprema di Cassazione took the view that the registration charge fell within the scope of Article 13(2) of Decree No 641/72, according to which '[t]he taxpayer may request repayment of charges wrongly paid within a period of three years reckoned from the date of payment, failing which his action shall be barred ...'.

11  The President of the Tribunale di Genova entertains doubts as to the compatibility of those conditions of repayment with the case-law of the Court on the refunding of charges levied in breach of Community law. He observes in particular that, according to the general rules of Italian law, an action for the recovery of sums paid but not due is subject not to a peremptory time-limit but merely to the 10-year limitation period under the ordinary law, as provided by Article 2946 of the Civil Code.

12   The President of the Tribunale di Genova therefore stayed proceedings pending a preliminary ruling from the Court of Justice on the following three questions:

'1. For the purposes of amplifying and clarifying the ruling given in the judgment of 20 April 1993 in Joined Cases C-71/91 and C-178/91 *Ponente Carni SpA* v *Amministrazione delle Finanze dello Stato* [1993] ECR I-1915, must the provisions of the Treaty be interpreted as precluding the introduction and/or the retention by a Member State of a national provision such as that introduced by the Italian legislature in Article 13(2) of Decree No 641 of the President of the Republic of 26 October 1972 where the effect of the application of that provision is to limit the temporal effects of a judgment given by the Court of Justice?

2. Is Article 5 of the EC Treaty, as interpreted in the Court's case-law, compatible with a national provision (Article 13 of Presidential Decree No 641/72) which, as regards the procedural rules relating to judicial actions seeking to secure repayment of charges paid in breach of Council Directive 69/335/EEC, provides for a three-year time-limit reckoned from the date of payment, although no such limit is laid down by national law for claims for the recovery of sums paid but not due as between private persons?

3. If the answer to the preceding question is in the affirmative, the Court of Justice is asked to rule whether the Community legal order allows a national provision laying down a time-limit for which time starts to run (to the detriment of a citizen of a Member State relying on the provisions of a directive in order to obtain repayment of a charge which was paid but not due) before that directive was correctly transposed into national law.'

**The first question**

13   By its first question, the national court seeks to ascertain whether Community law prohibits a Member State from resisting actions for repayment of charges levied in

breach of a provision of Community law by relying on a time-limit under national law where the application of that time-limit would restrict the effects in time of a preliminary ruling by the Court interpreting that provision.

14   Edis submits that this question should be answered in the affirmative. The Governments which have submitted observations and the Commission, in its written observations, consider on the other hand that the application of a time-limit does not mean that the effects of a judgment delivered by the Court are limited as regards the past. Such a time-limit does not affect the existence or the substance of the rights conferred by the Community legal order, only the exercise of those rights. Moreover, it is clear from settled case-law of the Court of Justice that, in the absence of Community legislation governing a matter, it is for each Member State to lay down detailed procedural rules governing legal actions for safeguarding rights which individuals derive from Community law (Case 33/76 *Rewe* v *Landwirtschaftskammer Saarland* [1976] ECR 1989, Case 45/76 *Comet* v *Produktschap voor Siergewassen* [1976] ECR 2043 and, more recently, Case C-212/94 *FMC and Others* v *Intervention Board for Agricultural Produce and Another* [1996] ECR I-389).

15   It is settled case-law that the interpretation which, in the exercise of the jurisdiction conferred upon it by Article 177 of the Treaty, the Court gives to a rule of Community law clarifies and defines where necessary the meaning and scope of that rule as it must be or ought to have been understood and applied from the time of its coming into force. It follows that the rule thus interpreted may, and must, be applied by the courts even to legal relationships arising and established before the judgment ruling on the request for interpretation, provided that in other respects the conditions enabling an action relating to the application of that rule to be brought before the courts having jurisdiction are satisfied (see, in particular, Case 61/79 *Amministrazione delle Finanze dello Stato* v *Denkavit Italiana* [1980] ECR 1205, paragraph 16, and Joined Cases C-197/94 and C-252/94 *Bautiaa and Société Française Maritime* [1996] ECR I-505, paragraph 47).

16   According to the same case-law, having regard to those principles, it is only exceptionally that the Court may limit the effects of a judgment ruling on a request for interpretation (*Denkavit Italiana*, paragraph 17, and *Bautiaa and Société Française Maritime*, paragraph 48, both cited above).

17  It is clear from the foregoing that whilst the effects of a judgment of the Court providing an interpretation normally date back to the time at which the rule interpreted came into force, it is also necessary, if that interpretation is to be applied by the national court to facts predating that judgment, for the detailed procedural rules governing legal proceedings under national law to have been complied with as regards matters both of form and of substance.

18  The application of those detailed rules must not therefore be confused with a limitation on the effects of a judgment of the Court ruling on a request for interpretation of a provision of Community law. The consequence of such a limitation is to deprive litigants, who would normally be in a position, under their national procedural rules, to exercise the rights conferred on them by the Community provision concerned, of the right to rely on it in support of their claims.

19  It is also clear from settled case-law that, in the absence of Community rules governing the refund of national taxes levied though not due, it is for the domestic legal system of each Member State to designate the courts and tribunals having jurisdiction and to lay down the detailed procedural rules governing actions for safeguarding rights which individuals derive from Community law, provided, however, that such rules are not less favourable than those governing similar domestic actions and do not render virtually impossible or excessively difficult the exercise of rights conferred by Community law (see *Rewe*, paragraph 5, *Comet*, paragraphs 13 and 16, both cited above, and, more recently, Case C-312/93 *Peterbroeck* v *Belgian State* [1995] ECR I-4599, paragraph 12).

20  The Court has thus recognised that it is compatible with Community law to lay down reasonable limitation periods for bringing proceedings in the interests of legal certainty which protects both the taxpayer and the administration concerned (see *Rewe*, paragraph 5, *Comet*, paragraphs 17 and 18, and *Denkavit Italiana*, paragraph 23, all cited above; see also Case C-261/95 *Palmisani* v *INPS* [1997] ECR I-4025, paragraph 28, and Case C-90/94 *Haahr Petroleum* v *Åbenrå Havn and Others* [1997] ECR I-4085, paragraph 48). The fact that the Court has given a preliminary ruling on the interpretation of the provision of Community law in question is immaterial in that respect (see, to that effect, *Rewe*, cited above, paragraph 7).

21   The Commission, however, stated at the hearing that, by judgment No 3458 of 23 February 1996, the Corte Suprema di Cassazione departed from its earlier case-law in that hitherto it had restricted the application of peremptory time-limits such as the one at issue to cases of errors in the calculation of taxes. By holding, after the judgment in *Ponente Carni* was delivered, that repayment of the registration charge is subject to the three-year time-limit laid down in Article 13 of Decree No 641/72 rather than the 10-year limitation period under the ordinary law, that court had specifically curtailed the opportunity for the persons concerned to bring proceedings to secure repayment of charges levied in breach of Community law, thereby disregarding the judgments in Case 309/85 *Barra* v *Belgium and Another* [1988] ECR 355 and Case 240/87 *Deville* v *Administration des Impôts* [1988] ECR 3513.

22   It should be noted that in paragraph 19 of *Barra*, cited above, the Court held that Community law precludes a national legislative provision which restricts repayment of a duty held to be contrary to the Treaty by a judgment of the Court solely to plaintiffs who brought an action for repayment before the delivery of that judgment. Such a provision simply deprives natural and legal persons who do not meet that condition of the right to obtain repayment of amounts paid but not due and therefore renders the exercise of the rights conferred on them by Community law impossible.

23   Similarly, in *Deville*, cited above, the Court held that a national legislature may not, subsequent to a judgment of the Court from which it follows that certain legislation is incompatible with the Treaty, adopt a procedural rule which specifically reduces the possibilities of bringing proceedings for repayment of charges levied though not due under that legislation.

24   It is clear from those judgments that a Member State may not adopt provisions making repayment of a tax held to be contrary to Community law by a judgment of the Court, or whose incompatibility with Community law is apparent from such a judgment, subject to conditions relating specifically to that tax which are less favourable than those which would otherwise be applied to repayment of the tax in question.

25   Accordingly, without its being necessary to examine the conditions under which that case-law should be applied to the judicial authorities of the Member States, it need merely be pointed out, first, that the interpretation given by the Corte Suprema di Cassazione related to a national provision which had been in force for several years when judgment was delivered in *Ponente Carni* and, second, that that provision is concerned not only with repayment of the charge at issue in that judgment but also with that of all registration charges levied by the Italian Government. It follows that the ratio in *Barra* and *Deville*, cited above, is to be distinguished from this case.

26   The answer to the first question must therefore be that the fact that the Court has given a preliminary ruling interpreting a provision of Community law without limiting the temporal effects of its judgment does not affect the right of a Member State to impose a time-limit under national law within which, on penalty of being barred, proceedings for repayment of charges levied in breach of that provision must be commenced.

**The second question**

27   By its second question, the national court seeks to ascertain whether Article 5 of the EC Treaty allows national legislation which provides, as one of the detailed procedural rules applicable to legal proceedings to secure repayment of charges paid in breach of Directive 69/355, for a time-limit of three years as from the time of payment, whereas under national law that time-limit is not applicable to actions between private individuals for the recovery of sums paid but not due.

28   The Commission considers that this question concerns the interpretation of Italian law and is therefore, as it stands, inadmissible. It therefore suggests that it be recast. The essence of the question is, in its view, whether Community law precludes national legislation which makes actions for repayment of a charge levied in breach of Directive 69/335 subject to a peremptory time-limit which presupposes the existence both of a power to tax and of a revenue debt owed to the State rather than a

limitation period which, under that same legislation, is applicable to cases of objective undue payment deriving from the absence of any such power or debt.

29  It is clear from the question that the national court seeks to ascertain whether Community law precludes a Member State from resisting actions for repayment of charges levied in breach of Community law by relying on a time-limit under national law of three years, by way of derogation from the ordinary rules governing actions between private individuals for the recovery of sums paid but not due, for which the period allowed is more favourable. The national court is thus asking the Court of Justice to clarify its case-law according to which national detailed procedural rules governing actions for safeguarding rights which individuals derive from Community law must not be less favourable than those governing similar actions under national law.

30  It follows that an answer must be given to the question.

31  Edis considers that this question should be answered in the affirmative since, according to the case-law of the Court, national detailed procedural rules governing actions for safeguarding rights which individuals derive from Community law must not be less favourable than those governing similar actions under national law. The Corte Costituzionale has clearly held that the action for repayment of the registration charge is governed, under the Italian legal system, by the rules for the recovery of sums paid but not due.

32  According to the three Governments which have submitted observations, a Member State is entitled, in fiscal matters, to impose a time-bar different from that applicable under the ordinary law, provided that it applies in the same way to claims for repayment under Community law as to claims under national law, that being the position in this case.

33   As the Court has held on several occasions, a comparison of the national systems shows that the problem of disputing charges which have been unlawfully claimed or refunding charges which have been paid when not due is settled in different ways in the various Member States, and even within a single Member State, according to the various kinds of taxes or charges in question. In certain cases, objections or claims of this type are subject to specific procedural conditions and time-limits under the law with regard both to complaints submitted to the tax authorities and to legal proceedings. In other cases, claims for repayment of charges which were paid but not due must be brought before the ordinary courts, mainly in the form of claims for the refunding of sums paid but not owed, such actions being available for varying lengths of time, in some cases for the limitation period laid down under the general law (see Case 68/79 *Just* v *Ministry for Fiscal Affairs* [1980] ECR 501, paragraphs 22 and 23; *Denkavit Italiana*, cited above, paragraphs 23 and 24; Case 811/79 *Amministrazione delle Finanze dello Stato* v *Ariete* [1980] ECR 2545, paragraphs 10 and 11, and Case 826/79 *Amministrazione delle Finanze dello Stato* v *Mireco* [1980] ECR 2559, paragraphs 11 and 12).

34   This diversity between national systems derives mainly from the lack of Community rules on the refunding of national charges levied though not due. In such circumstances, as pointed out in paragraph 19 of this judgment, it is for the domestic legal system of each Member State to designate the courts and tribunals having jurisdiction and to lay down the detailed procedural rules governing actions for safeguarding rights which individuals derive from Community law, provided, first, that such rules are not less favourable than those governing similar domestic actions (principle of equivalence) and, second, that they do not render virtually impossible or excessively difficult the exercise of rights conferred by Community law (principle of effectiveness).

35   As regards the latter principle, the Court, as pointed out in paragraph 20 of this judgment, has held that it is compatible with Community law to lay down reasonable limitation periods for bringing proceedings in the interests of legal certainty which protects both the taxpayer and the administration concerned. Such time-limits are not liable to render virtually impossible or excessively difficult the exercise of rights conferred by Community law. In that regard, a time-limit of three years under national law, reckoned from the date of the contested payments, appears reasonable.

36   Observance of the principle of equivalence implies, for its part, that the procedural rule at issue applies without distinction to actions alleging infringements of Community law and to those alleging infringements of national law, with respect to the same kind of charges or dues (see, to that effect, Joined Cases 66/79, 127/79 and 128/79 *Amministrazione delle Finanze dello Stato* v *Salumi* [1980] ECR 1237, paragraph 21). That principle cannot, however, be interpreted as obliging a Member State to extend its most favourable rules governing recovery under national law to all actions for repayment of charges or dues levied in breach of Community law.

37   Thus, Community law does not preclude the legislation of a Member State from laying down, alongside a limitation period applicable under the ordinary law to actions between private individuals for the recovery of sums paid but not due, special detailed rules, which are less favourable, governing claims and legal proceedings to challenge the imposition of charges and other levies. The position would be different only if those detailed rules applied solely to actions based on Community law for the repayment of such charges or levies.

38   In this case, as the Court has pointed out in paragraph 25 above, the time-limit at issue applies not only to repayment of the contested registration charge but also to that of all governmental charges of that kind. Moreover, according to information provided by the Italian Government and not disputed, a similar time-limit also applies to actions for repayment of certain indirect taxes. Nor does it appear from the wording of the provision at issue that it applies only to actions based on Community law. Furthermore, as the Advocate General observed in points 62 to 64 of his Opinion, it is clear from the case-law of the Corte Suprema di Cassazione that time-limits relating to taxes apply also to actions for repayment of charges or dues levied under laws that have been declared incompatible with the Italian Constitution.

39   The answer to the second question must therefore be that Community law does not prohibit a Member State from resisting actions for repayment of charges levied in breach of Community law by relying on a time-limit under national law of three years, by way of derogation from the ordinary rules governing actions between private individuals for the recovery of sums paid but not due, for which the period

allowed is more favourable, provided that that time-limit applies in the same way to actions based on Community law for repayment of such charges as to those based on national law.

**The third question**

40  By its third question, the national court seeks to ascertain whether Community law prohibits a Member State from resisting actions for repayment of charges levied in breach of a directive by relying on a time-limit under national law which is reckoned from the date of payment of the charges in question even though, at that date, the directive concerned had not yet been properly transposed into national law.

41  The three Governments which have submitted observations consider that this question should be answered in the negative. In their view, Member States are entitled to rely on a national time-limit like the one at issue provided that it meets the conditions laid down in *Rewe* and *Comet*, cited above. According to those Governments, the judgment in Case C-208/90 *Emmott* [1991] ECR I-4269 must be confined to its own particular facts, as indeed the Court confirmed in its judgments in Case C-338/91 *Steenhorst-Neerings* [1993] ECR I-5475 and Case C-410/92 *Johnson v Chief Adjudication Officer* [1994] ECR I-5483.

42  According to Edis, it is clear from the latter two judgments that the mere fact that the provisions of a directive have not been properly transposed does not, in the absence of other circumstances, prevent a defaulting Member State from relying on the time-limits for commencing proceedings imposed by its national law. Edis

considers, however, that *Emmott* is applicable to this case in view of the Italian authorities' dilatory conduct in responding to companies' claims for repayment.

43   Initially, the Commission maintained that *Steenhorst-Neerings* and *Johnson*, cited above, concerned social benefits that had been improperly withheld and were not therefore relevant to this case. It thus considered that the ratio of *Emmott* should be followed in proceedings for repayment of charges levied in breach of Community law, otherwise a defaulting Member State might be allowed to profit from its own non-compliance. However, at the hearing the Commission abandoned that thesis, acknowledging that it had been undermined by the judgment in Case C-188/95 *Fantask and Others* [1997] ECR I-6783.

44   It is clear from the answer given to the second question that Community law does not in principle prohibit a Member State from resisting actions for repayment of duties levied in breach of Community law by relying on a time-limit under national law of three years.

45   It is true that in paragraph 23 of *Emmott*, cited above, the Court held that, until such time as a directive has been properly transposed, a defaulting Member State may not rely on an individual's delay in initiating proceedings against it in order to protect rights conferred on him by the provisions of a directive and that a period laid down by national law within which proceedings must be initiated cannot begin to run before that time.

46   However, as was confirmed by the Court in paragraph 26 of *Johnson*, cited above, it is clear from the judgment in *Steenhorst-Neerings*, cited above, that the solution

adopted in *Emmott* was justified by the particular circumstances of that case, in which a time-bar had the result of depriving the plaintiff in the main proceedings of any opportunity whatever to rely on her right to equal treatment under a Community directive (see also *Haahr Petroleum*, cited above, paragraph 52, and Joined Cases C-114/95 and C-115/95 *Texaco and Olieselskabet Danmark* [1997] ECR I-4263, paragraph 48).

47  The Court thus held in *Fantask and Others*, cited above, that Community law does not prevent a Member State which has not properly transposed Directive 69/335 from resisting actions for repayment of duties levied in breach thereof by relying on a limitation period under national law of five years reckoned from the date on which those duties became payable.

48  Moreover, having regard to the documents before the Court and the arguments presented at the hearing, it does not appear that the conduct of the Italian authorities, in conjunction with the existence of the contested time-limit, had the effect in this case, as it did in *Emmott*, of depriving the plaintiff company of any opportunity of enforcing its rights before the national courts.

49  The answer to the third question must therefore be that, in circumstances such as those of the main proceedings, Community law does not prevent a Member State from resisting actions for repayment of charges levied in breach of a directive by relying on a time-limit under national law which is reckoned from the date of payment of the charges in question, even if, at that date, the directive concerned had not yet been properly transposed into national law.

Costs

50   The costs incurred by the Italian, French and United Kingdom Governments and the Commission of the European Communities, which have submitted observations to the Court, are not recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT,

in answer to the questions referred to it by the Tribunale di Genova by order of 18 June 1996, hereby rules:

1. The fact that the Court has given a preliminary ruling interpreting a provision of Community law without limiting the temporal effects of its judgment does not affect the right of a Member State to impose a time-limit under national law within which, on penalty of being barred, proceedings for repayment of charges levied in breach of that provision must be commenced.

2. Community law does not prohibit a Member State from resisting actions for repayment of charges levied in breach of Community law by relying on a time-limit under national law of three years, by way of derogation from the ordinary rules governing actions between private individuals for the recovery of sums paid but not due, for which the period allowed is more favourable, provided that that time-limit applies in the same way to actions based on Community law for repayment of such charges as to those based on national law.

3. In circumstances such as those of the main proceedings, Community law does not prevent a Member State from resisting actions for repayment of charges levied in breach of a directive by relying on a time-limit under national law which is reckoned from the date of payment of the charges in question, even if, at that date, the directive concerned had not yet been properly transposed into national law.

| Rodríguez Iglesias | | Ragnemalm | | Wathelet |
|---|---|---|---|---|
| | Schintgen | Mancini | Moitinho de Almeida | |
| Kapteyn | | Edward | | Puissochet |
| | Sevón | | Ioannou | |

Delivered in open court in Luxembourg on 15 September 1998.

R. Grass                                                G. C. Rodríguez Iglesias

Registrar                                                               President