# EXHIBIT 14

BUDĚJOVICKÝ BUDVAR

JUDGMENT OF THE COURT (Grand Chamber)

8 September 2009 *

In Case C-478/07,

REFERENCE for a preliminary ruling under Article 234 EC from the Handelsgericht Wien (Austria), made by decision of 27 September 2007, received at the Court on 25 October 2007, in the proceedings

**Budějovický Budvar, národní podnik**

v

**Rudolf Ammersin GmbH,**

THE COURT (Grand Chamber),

composed of V. Skouris, President, P. Jann, C.W.A. Timmermans (Rapporteur), A. Rosas and K. Lenaerts, Presidents of Chambers, P. Kūris, E. Juhász, L. Bay Larsen and P. Lindh, Judges,

---

* Language of the case: German.

Advocate General: D. Ruiz-Jarabo Colomer,
Registrar: K. Sztranc-Sławiczek, Administrator,

having regard to the written procedure and further to the hearing on 2 December 2008,

after considering the observations submitted on behalf of:

—  Budějovický Budvar, národní podnik, by C. Petsch, Rechtsanwalt,

—  Rudolf Ammersin GmbH, by C. Hauer, B. Goebel and C. Schulte, Rechtsanwälte,

—  the Czech Government, by T. Boček and M. Smolek, acting as Agents,

—  the Greek Government, by I. Chalkias and K. Marinou, acting as Agents,

—  the Commission of the European Communities, by B. Doherty, B. Schima and M. Vollkommer, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 5 February 2009,

gives the following

## Judgment

1    This reference for a preliminary ruling concerns the interpretation of Articles 28 EC and 30 EC, of the Act concerning the conditions of accession of the Czech Republic, the Republic of Estonia, the Republic of Cyprus, the Republic of Latvia, the Republic of Lithuania, the Republic of Hungary, the Republic of Malta, the Republic of Poland, the Republic of Slovenia and the Slovak Republic and the adjustments to the Treaties on which the European Union is founded (OJ 2003 L 236, p. 33; 'the Act of Accession'), of Commission Regulation (EC) No 918/2004 of 29 April 2004 introducing transitional arrangements for the protection of geographical indications and designations of origin for agricultural products and foodstuffs in connection with the accession of the Czech Republic, Estonia, Cyprus, Latvia, Lithuania, Hungary, Malta, Poland, Slovenia and Slovakia (OJ 2004 L 163, p. 88) and of Council Regulation (EC) No 510/2006 of 20 March 2006 on the protection of geographical indications and designations of origin for agricultural products and foodstuffs (OJ 2006 L 93, p. 12).

2    The reference was made in proceedings between Budějovický Budvar, národní podnik ('Budvar'), a brewery established in the town of Česke Budějovice (Czech Republic), and Rudolf Ammersin GmbH ('Ammersin'), a firm established in Vienna (Austria) which distributes beverages, with regard to Budvar's application to prohibit Ammersin from marketing under the mark 'American Bud' beer produced by the brewery Anheuser-Busch Inc. ('Anheuser-Busch'), established in Saint Louis (United States), on the ground that, by virtue of bilateral agreements between the Czech Republic and the Republic of Austria, the use of the designation 'Bud' in that Member State is reserved for beer produced in the Czech Republic.

**Legal context**

*International law*

3    Article 1 of the Lisbon Agreement for the Protection of Appellations of Provenance and their International Registration, adopted on 31 October 1958, revised at Stockholm on 14 July 1967 and amended on 28 September 1979 (*United Nations Treaty Series*, Vol. 828, No 13172, p. 205; 'the Lisbon Agreement'), provides:

'(1) The countries to which this Agreement applies form a Special Union within the framework of the Union for the Protection of Industrial Property.

(2) They undertake to protect on their territories, in accordance with the terms of this Agreement, the appellations of origin of products of the other countries of the Special Union, recognised and protected as such in the country of provenance and registered at the International Bureau of Intellectual Property … referred to in the Convention establishing the World Intellectual Property Organisation [WIPO]'.

4    Under Article 2 of the Lisbon Agreement:

'(1) In this Agreement "appellation of origin" means the geographical name of a country, region or locality which serves to designate a product originating therein, the quality and characteristics of which are due exclusively or essentially to the geographical environment, including natural and human factors.

(2) The country of origin is the country whose name, or the country in which is situated the region or locality whose name, constitutes the appellation of origin which has given the product its reputation.'

5    The appellation of origin BUD (appellation of origin No 598) was registered with WIPO on 10 March 1975 for beer, pursuant to the Lisbon Agreement.

*Community law*

The Act of Accession

6    Article 20 of the Act of Accession states:

'The acts listed in Annex II to this Act shall be adapted as specified in that Annex.'

7    In Annex II to the Act of Accession, entitled 'List referred to in Article 20 of the Act of Accession', point 18 of Part A of Chapter 6 provides:

'31996 R 1107: Commission Regulation (EC) No 1107/96 of 12 June 1996 on the registration of geographical indications and designations of origin under the procedure laid down in Article 17 of Council Regulation (EEC) No 2081/92: (OJ [1996] L 148, … p. 1), as amended by:

…

— 32002 R 1829: Commission Regulation (EC) No 1829/2002 of 14 [October] 2002 (OJ [2002] L 277, … p. 10).

(a) In Article 1, the following subparagraph is added:

"The names 'Budějovické pivo', 'Českobudějovické pivo' and 'Budějovický měšťanský var' shall be registered as protected geographical indications (PGI) and listed in the Annex in accordance with specifications submitted to the Commission. This is without prejudice to any beer trademark or other rights existing in the European Union on the date of accession."

(b) In the Annex, Part B, the following is inserted under the heading "Beer":

"CZECH REPUBLIC:

— Budějovické pivo (PGI)

— Českobudějovické pivo (PGI)

— Budějovický měšťanský var (PGI)".'

Regulation (EEC) No 2081/92

8   The seventh recital in the preamble to Council Regulation (EEC) No 2081/92 of 14 July 1992 on the protection of geographical indications and designations of origin for agricultural products and foodstuffs (OJ 1992 L 208, p. 1) states:

'… there is diversity in the national practices for implementing registered designations of origin and geographical indications; whereas a Community approach should be envisaged; whereas a framework of Community rules on protection will permit the development of geographical indications and designations of origin since, by providing a more uniform approach, such a framework will ensure fair competition between the producers of products bearing such indications and enhance the credibility of the products in the consumers' eyes.'

9   Articles 5 to 7 of Regulation No 2081/92 lay down the procedure for registration of the geographical indications and designations of origin referred to in Article 2 thereof, known as the 'normal procedure'. In accordance with Article 5(4) of that regulation, the application for registration is to be sent to the Member State in which the geographical area is located. Pursuant to the first subparagraph of Article 5(5) thereof, that State is to check that the application is justified and forward the application to the Commission of the European Communities.

10  Since examination of an application for registration by the Commission takes a certain amount of time and since, pending a decision on registration of a designation, it is appropriate to permit the Member State to grant temporary national protection,

Council Regulation (EC) No 535/97 of 17 March 1997 amending Regulation (EEC) No 2081/92 (OJ 1997 L 83, p. 3) inserted the following text after the first subparagraph of Article 5(5) of Regulation No 2081/92:

'That Member State may, on a transitional basis only, grant on the national level a protection in the sense of the present Regulation to the name forwarded in the manner prescribed, and, where appropriate, an adjustment period, as from the date of such forwarding; …

Such transitional national protection shall cease on the date on which a decision on registration under this Regulation is taken. …

The consequences of such national protection, where a name is not registered under this Regulation, shall be the sole responsibility of the Member State concerned.

The measures taken by Member States under the second subparagraph shall produce effects at national level only; they shall have no effect on intra-Community trade.'

11    Article 17 of Regulation No 2081/92 sets up a registration procedure, known as the 'simplified procedure', applicable to the registration of names already in existence on the date of entry into force of that regulation. It provides, inter alia, that within six months of the entry into force of Regulation No 2081/92, Member States are to inform the Commission of the names they wish to register under that procedure.

BUDĚJOVICKÝ BUDVAR

12    In order to take account, inter alia, of the fact that the first proposal for registration of geographical indications and designations of origin which the Commission was to draw up pursuant to Article 17(2) of Regulation No 2081/92 was not submitted to the Council of the European Union until March 1996, when most of the transitional period of five years provided for by Article 13(2) of that regulation had already elapsed, Regulation No 535/97, which entered into force on 28 March 1997, replaced Article 13(2) with the following:

'By way of derogation from paragraph 1(a) and (b), Member States may maintain national systems that permit the use of names registered under Article 17 for a period of not more than five years after the date of publication of registration, provided that:

—    the products have been marketed legally using such names for at least five years before the date of publication of this Regulation,

—    the undertakings have legally marketed the products concerned using those names continuously during the period referred to in the first indent,

—    the labelling clearly indicates the true origin of the product.

However, this derogation may not lead to the marketing of products freely within the territory of a Member State where such names were prohibited.'

I - 7765

13  Article 1(15) of Council Regulation (EC) No 692/2003 of 8 April 2003 amending Regulation (EEC) No 2081/92 (OJ 2003 L 99, p. 1) provides:

'Article 13(2) and Article 17 shall be deleted. However, the provisions of these Articles shall continue to apply to registered names or to names for which a registration application was made by the procedure provided for in Article 17 before this Regulation entered into force.'

Regulation No 510/2006

14  Regulation No 2081/92, as most recently amended by Council Regulation (EC) No 806/2003 of 14 April 2003 (OJ 2003 L 122, p. 1), was repealed pursuant to Article 19 of Regulation No 510/2006. That regulation entered into force on the day of its publication in the *Official Journal of the European Union*, namely, 31 March 2006.

15  Recital 6 in the preamble to Regulation No 510/2006 states:

'Provision should be made for a Community approach to designations of origin and geographical indications. A framework of Community rules on a system of protection permits the development of geographical indications and designations of origin since, by providing a more uniform approach, such a framework ensures fair competition between the producers of products bearing such indications and enhances the credibility of the products in the consumer's eyes.'

16    Pursuant to recital 19 in the preamble to that regulation:

'The names already registered under … Regulation … No 2081/92 … on the date of entry into force of this Regulation should continue to be protected under this Regulation and automatically included in the register. …'

17    Article 1(1) and (2) of that regulation, entitled 'Scope', provides:

'1.  This Regulation lays down the rules on the protection of designations of origin and geographical indications for agricultural products intended for human consumption listed in Annex I to the Treaty and for foodstuffs listed in Annex I to this Regulation and for agricultural products listed in Annex II to this Regulation.

…

2. This Regulation shall apply without prejudice to other specific Community provisions.'

18    Annex I to that regulation, entitled 'Foodstuffs referred to in Article 1(1)', mentions 'Beers' in its first indent.

19    Article 2(1) and (2) of Regulation No 510/2006, entitled 'Designation of origin and geographical indication', provides:

'1.  For the purpose of this Regulation:

(a) "designation of origin" means the name of a region, a specific place or, in exceptional cases, a country, used to describe an agricultural product or a foodstuff:

— originating in that region, specific place or country,

— the quality or characteristics of which are essentially or exclusively due to a particular geographical environment with its inherent natural and human factors, and

— the production, processing and preparation of which take place in the defined geographical area;

(b) "geographical indication" means the name of a region, a specific place or, in exceptional cases, a country, used to describe an agricultural product or a foodstuff:

— originating in that region, specific place or country, and

— which possesses a specific quality, reputation or other characteristics attributable to that geographical provenance, and

— the production, processing and preparation of which take place in the defined geographical area.

2. Traditional geographical or non-geographical names designating an agricultural product or a foodstuff which fulfil the conditions referred to in paragraph 1 shall also be considered as designations of origin or geographical indications.'

20    Article 4(1) of that regulation provides:

'To be eligible for a protected designation of origin (PDO) or a protected geographical indication (PGI), an agricultural product or foodstuff shall comply with a product specification.'

21    Articles 5 to 7 of Regulation No 510/2006 lay down the procedure for the registration of geographical indications and designations of origin referred to in Article 2 of that regulation. In accordance with Article 5(4) thereof, where the registration application relates to a geographical area in a given Member State, the application is to be addressed to that Member State. Under Article 5(5) of that regulation, the Member State is to initiate a national objection procedure and then take a decision on that application. In the event of a favourable decision, that Member State is to forward to the Commission the documents referred to in Article 5(7) thereof for a final decision taken following the procedure governed by Articles 6 and 7 of Regulation No 510/2006 which includes, inter alia, an objection procedure.

22    Under Article 5(6) of that regulation:

'The Member State may, on a transitional basis only, grant protection under this Regulation at national level to the name, and, where appropriate, an adjustment period, with effect from the date on which the application is lodged with the Commission.

The adjustment period provided for in the first subparagraph may be granted only on condition that the undertakings concerned have legally marketed the products in question, using the names concerned continuously for at least the past five years and have made that point in the national objection procedure referred to in the first subparagraph of paragraph 5.

Such transitional national protection shall cease on the date on which a decision on registration under this Regulation is taken.

The consequences of such transitional national protection, where a name is not registered under this Regulation, shall be the sole responsibility of the Member State concerned.

The measures taken by Member States under the first subparagraph shall produce effects at national level only, and they shall have no effect on intra-Community or international trade.'

23    Article 13(1) of that regulation provides:

'1.  Registered names shall be protected against:

(a)  any direct or indirect commercial use of a registered name in respect of products not covered by the registration in so far as those products are comparable to the products registered under that name or in so far as using the name exploits the reputation of the protected name;

(b)  any misuse, imitation or evocation, even if the true origin of the product is indicated or if the protected name is translated or accompanied by an expression such as "style", "type", "method", "as produced in", "imitation" or similar;

…'.

Regulation No 918/2004

24    Recitals 2 to 4 of Regulation No 918/2004 state:

'(2)    Article 5(5) of Regulation (EEC) No 2081/92 provides, however, that geographical indications and designations of origin may be given transitional national protection by Member States from the date on which applications for

registration of such names are sent to the Commission. The consequences of such national protection in cases where a name is not registered at Community level are entirely the responsibility of the Member State concerned.

(3)    Following the accession of the Czech Republic, Estonia, Cyprus, Latvia, Lithuania, Hungary, Malta, Poland, Slovenia and Slovakia, the geographical indications and designations of origin of these countries (hereinafter "the new Member States") may therefore be registered at Community level under Article 5 of Regulation (EEC) No 2081/92 and protected under Article 13.

(4)    In order to facilitate the submission of applications to the Commission from the new Member States and ensure continuing protection of the relevant geographical indications and designations of origin, provision should be made for these Member States to uphold the national protection existing on 30 April 2004 until a decision has been taken under Article 6 of Regulation (EEC) No 2081/92, provided that an application for registration under that Regulation has been sent to the Commission by 31 October 2004.'

25    Article 1 of Regulation No 918/2004 provides:

'The national protection of geographical indications and designations of origin within the meaning of Regulation (EEC) No 2081/92 existing in the Czech Republic, Estonia, Cyprus, Latvia, Lithuania, Hungary, Malta, Poland, Slovenia and Slovakia on 30 April 2004 may be upheld by those Member States until 31 October 2004.

BUDĚJOVICKÝ BUDVAR

Where an application for registration under Regulation (EEC) No 2081/92 is forwarded to the Commission by 31 October 2004, such protection may be upheld until a decision has been taken in accordance with Article 6 of that Regulation.

The consequences of such national protection in cases where the name is not registered at Community level are entirely the responsibility of the Member State concerned.'

*National law*

The bilateral convention

26    On 11 June 1976, the Republic of Austria and the Czechoslovak Socialist Republic concluded an agreement on the protection of indications of source, designations of origin and other designations referring to the source of agricultural and industrial products ('the bilateral convention').

27    Following approval and ratification, the bilateral convention was published in the *Bundesgesetzblatt für die Republik Österreich* of 19 February 1981 (BGBl. No 75/1981). Pursuant to Article 16(2) thereof, the bilateral convention came into force on 26 February 1981 for an indefinite period.

28    Article 1 of the bilateral convention provides:

'Each of the contracting States undertakes to take all the necessary measures to ensure effective protection against unfair competition in the course of trade for indications of source, designations of origin and other designations referring to the source of the agricultural and industrial products in the categories referred to in Article 5 and listed in the agreement provided for in Article 6, and the names and illustrations referred to in Articles 3, 4 and 8(2).

29    Under Article 2 of the bilateral convention:

'Indications of source, designations of origin and other designations referring to the source within the meaning of this agreement mean all indications which relate directly or indirectly to the source of a product. Such an indication generally consists of a geographical designation. However, it may also consist of other information, if in the relevant consumer circles of the country of origin this is perceived, in connection with the product thus designated, as a reference to the country of production. In addition to the indication of source from a particular geographical area, the abovementioned designations may also contain information on the quality of the product concerned. These particular features of the product shall be determined solely or predominantly by geographical or human influences.'

30    Article 3(1) of the bilateral convention provides:

'… the Czechoslovak designations listed in the agreement provided for in Article 6 shall in the Republic of Austria be reserved exclusively for Czechoslovak products.'

31    Point 2 of Article 5(1)B of the bilateral convention refers to beers as one of the categories of Czech products concerned by the protection established by that convention.

32    Under Article 6 of the bilateral convention:

'Designations of the individual products meeting the conditions laid down in Articles 2 and 5 which enjoy protection under the agreement and which are therefore not generic names will be listed in an agreement to be concluded between the Governments of the two contracting States'.

33    Article 7 of the bilateral convention is worded as follows:

'1.  If the names and designations protected under Articles 3, 4, 6, and 8(2) of this agreement are used contrary to those provisions commercially for products, in particular for their presentation or packaging, or on invoices, waybills or other business documents or in advertisements, then all judicial and administrative measures for acting against unfair competition or otherwise suppressing prohibited designations which are available under the legislation of the contracting State in which protection is claimed shall be applied in accordance with the conditions laid down in that legislation and with Article 9.

2.  Where a risk of confusion in commerce exists, paragraph 1 is also to be applied if the designations protected under the agreement are used in modified form or for products other than those to which they are allocated in the agreement referred to in Article 6.

3. Paragraph 1 is also to be applied if the designations protected under the agreement are used in translation or with a reference to the actual source or with additions such as "style", "type", "as produced in", "imitation" or the like.

4. Paragraph 1 does not apply to translations of designations from one of the contracting States where the translation is a colloquial word in the language of the other contracting State.'

The bilateral agreement

34    In accordance with Article 6 of the bilateral convention, an agreement on its application ('the bilateral agreement' and, together with the bilateral convention, 'the bilateral instruments at issue') was concluded on 7 June 1979.

35    Annex B to the bilateral agreement states:

'Czechoslovak designations for agricultural and industrial products

…

B  Food and agriculture (except wine)

…

I - 7776

2. Beer

Czech Socialist Republic

...

Bud

Budějovické pivo

Budějovické pivo Budvar

Budějovické Budvar

...'.

**The dispute in the main proceedings and the questions referred for a preliminary ruling**

36   The dispute in the main proceedings has already given rise to the judgment in Case C-216/01 *Budějovický Budvar* [2003] ECR I-13617, by which the Court, hearing a

reference for a preliminary ruling made by the same national court as in the present case, held:

'1    Article 28 EC and … Regulation … No 2081/92 …, as amended by … Regulation … No 535/97 …, do not preclude the application of a provision of a bilateral agreement between a Member State and a non-member country under which a simple and indirect indication of geographical source from that non-member country is accorded protection in the importing Member State, whether or not there is any risk of consumers being misled, and the import of a product lawfully marketed in another Member State may be prevented.

2    Article 28 EC precludes the application of a provision of a bilateral agreement between a Member State and a non-member country under which a name which in that country does not directly or indirectly refer to the geographical source of the product that it designates is accorded protection in the importing Member State, whether or not there is any risk of consumers being misled, and the import of a product lawfully marketed in another Member State may be prevented.

3    The first paragraph of Article 307 EC is to be interpreted as permitting a court of a Member State, subject to the findings to be made by that court having regard inter alia to the criteria set out in this judgment, to apply the provisions of bilateral agreements such as those at issue in the main proceedings, concluded between that State and a non-member country and according protection to a name from the non-member country, even where those provisions prove to be contrary to the EC Treaty rules, on the ground that they concern an obligation resulting from agreements concluded before the date of the accession of the Member State concerned to the European Union. Pending the success of one of the methods referred to in the second paragraph of Article 307 EC in eliminating any incompatibilities between an agreement predating that accession and the Treaty, the first paragraph of that article permits that State to continue to apply such an agreement in so far as it contains obligations which remain binding on that State under international law.'

37   In paragraphs 28 to 42 of the judgment in *Budějovický Budvar*, the dispute in the main proceedings was summarised as follows:

'28  Budvar markets beer, in particular under the names Budějovický Budvar and Budweiser Budvar, and exports a beer called "Budweiser Budvar", in particular to Austria.

29   Ammersin markets inter alia a beer called American Bud, produced by the brewery Anheuser-Busch, which it buys from Josef Sigl KG ("Josef Sigl"), a company established in Obertrum (Austria) which is the sole Austrian importer of that beer.

30   By act of 22 July 1999, Budvar brought proceedings before the national court requesting that Ammersin be ordered to refrain from using on Austrian territory, in the course of its commercial activities, the name Bud, or similar designations likely to cause confusion, for beer or similar goods or in connection with such goods, save where Budvar products were concerned. In addition, Budvar also sought the suppression of all designations conflicting with that prohibition, the rendering of accounts and publication of the judgment. The action was accompanied by an application for interim measures.

31   Budvar's action in the main proceedings is essentially based on two different pleas in law.

32   First of all, Budvar submits that the name American Bud, which is registered as a trade mark in favour of Anheuser-Busch, bears a similarity, likely to cause confusion within the meaning of the legislation on unfair competition, to its own priority trade marks protected in Austria, namely Budweiser, Budweiser Budvar and Bud.

33  Second, Budvar asserts that the use of the designation American Bud for a beer from a State other than the Czech Republic is contrary to the provisions of the bilateral convention because, pursuant to Article 6 of that convention, the designation Bud, referred to in Annex B to the bilateral agreement, is a protected designation and is therefore reserved exclusively for Czech products.

34  On 15 October 1999, the national court granted the interim measures sought by Budvar.

35  The appeal brought by Ammersin before the Oberlandesgericht Wien (Higher Regional Court, Vienna) (Austria) against those measures was not successful and leave to appeal to the Oberster Gerichtshof (Supreme Court) (Austria) was refused. Now that the interlocutory proceedings have ended, the Handelsgericht Wien is hearing the main application.

36  The national court observes that before bringing the action in the main proceedings, Budvar had already brought an action before the Landesgericht Salzburg (Regional Court, Salzburg) (Austria) which was identical with regard to both its purpose and its legal basis, but which was directed against Josef Sigl.

37  In that parallel case, the Landesgericht Salzburg ordered the interim measures sought by the claimant, and the Oberlandesgericht Linz (Higher Regional Court, Linz) (Austria) dismissed the appeal brought against that order. By order of 1 February 2000, the Oberster Gerichtshof dismissed the appeal brought on a point of law against the order made in the initial appeal proceedings, and upheld the interim measures.

38  The national court states that the order of the Oberster Gerichtshof is essentially based on the following considerations.

39  The Oberster Gerichtshof, which confined its examination to the plea related to the bilateral convention, held that the injunction sought against Josef Sigl, the defendant, could constitute an obstacle to the free movement of goods for the purposes of Article 28 EC.

40  However, it held that that obstacle is compatible with Article 28 EC because the protection of the designation Bud provided for in the bilateral convention constitutes protection of industrial and commercial property within the meaning of Article 30 EC.

41  According to the national court, the Oberster Gerichtshof held that the designation Bud is "a simple geographical indication or... an indirect reference to source", in other words an indication for which it is not necessary to respect the guarantees associated with designations of origin — such as production in compliance with the quality or manufacturing standards adopted and monitored by the authorities, or the specific product characteristics. Moreover, the designation Bud enjoys "absolute protection", that is to say, irrespective of whether there is any risk of confusion or of consumers being misled.

42  In the light of the arguments submitted to it, the national court considers that there is reasonable doubt as to the correct answers to the questions of Community law raised in the main proceedings, in particular because it is not possible to ascertain from the Court's case-law whether "simple" indications of geographical source, which do not carry any risk of consumers being misled, also come within the scope of the protection of industrial and commercial property within the meaning of Article 30 EC.'

38  In the order for reference, the national court summarises the developments which have taken place since delivery of the judgment in *Budějovický Budvar* as follows.

39    By a judgment of 8 December 2004, the national court dismissed Budvar's action, holding that the designation 'Bud' is not an indication of provenance since the Czech public would not associate the designation 'Bud' with a particular place in the Czech Republic and it had never been used in that country to designate a place. The national court concluded therefrom that protection of that designation by the bilateral instruments at issue was incompatible with Article 28 EC. That judgment was upheld by a judgment of the Oberlandesgericht Wien of 21 March 2005.

40    However, by a decision of 29 November 2005, the Oberster Gerichtshof set aside the decisions of the previous courts and remitted the case to the national court for a fresh decision after further proceedings.

41    In the view of the Oberster Gerichtshof, whether the designation 'Bud' designated a region or place in the Czech Republic must be considered together with the criteria for a simple or indirect indication of provenance.

42    In the light of paragraphs 54 and 101 of the judgment in *Budějovický Budvar*, it should be ascertained whether the designation 'Bud' is at least capable of informing the consumer that the product bearing it came from a particular place, a particular region or a particular country. The question to be asked is thus whether consumers understand that designation, linked with beer, as a simple or indirect geographical designation of provenance. The national court has not yet considered that question.

43    Next, by a judgment of 23 March 2006, the national court, basing its finding primarily on the results of a consumer survey submitted by Anheuser-Busch, once again dismissed Budvar's action on the ground that Czech consumers do not understand 'Bud', in connection with beer, as an indication of provenance.

44    However, the Oberlandesgericht Wien (Higher Regional Court of Vienna) (Austria), by judgment of 10 July 2006, set aside that judgment and once again remitted the case to the Handelsgericht Wien (Commercial Court of Vienna) (Austria), on the ground, essentially, that that court at first instance had to conduct further proceedings, since it had not allowed an application by Budvar for evidence to be taken by obtaining an opinion of a court expert after carrying out a survey of the relevant group of the public, which survey was to be limited to the questions:

— whether Czech consumers associate the designation 'Bud' with beer;

— whether Czech consumers, if there is a connection — be it spontaneous or provided by the expert — between the designation 'Bud' and beer, understand that designation as an indication that the beer comes from a particular place, a particular region or a particular country, and

— if the answer to the preceding question is in the affirmative, with which place, region or country they mentally associate the designation 'Bud' in connection with beer.

45    The national court regards it as necessary to ask the Court of Justice afresh for a preliminary ruling.

46    First, as demonstrated by the course of the proceedings after delivery of the judgment in *Budějovický Budvar*, uncertainties remain as regards the scope of that judgment.

47    The question arises first of all whether paragraphs 54 and 101 of that judgment are to be understood as meaning that, in order to determine whether a designation can be considered to constitute a simple and indirect indication of provenance likely to be compatible with Article 28 EC, all that matters is whether the designation 'Bud', according to the factual circumstances and perceptions prevailing in the Czech Republic, designates a region or place in that State, or whether it must be ascertained whether that designation in conjunction with the product bearing it, in the present case beer, is capable of informing consumers that the product bearing it comes from a particular place, a particular region or a particular country, without it being necessary for that designation in itself, according to those factual circumstances and perceptions, to designate, as such, a particular region, a particular place or a particular State.

48    Next, uncertainty remains as to the method to be used by the national court to determine whether, in the light of the criteria which it is to apply, the designation at issue constitutes a simple and indirect indication of provenance. The question arises in particular whether a consumer survey is necessary and the degree of assent required.

49    Finally, the national court takes the view that, in the light of the reference at paragraph 101 of the judgment in *Budějovický Budvar* to the factual circumstances in the Czech Republic, the question arises whether specific requirements must be laid down as to both the quality and the duration of the use made of the designation 'Bud'. In particular, the question should be raised whether that designation has been used as a geographical indication or as a trade mark. According to the national court, it is established in that regard that no undertaking established in the Czech Republic other than Budvar has used the designation 'Bud' and that it was used as a trade mark and not as an indication of provenance.

50    Secondly, according to the national court, the factual and legal context of the dispute in the main proceedings has undergone fundamental changes compared to that which existed when that court made its reference for a preliminary ruling to the Court which gave rise to the judgment in *Budějovický Budvar*.

51    In that regard, the national court takes the view that, in the circumstances in the country of origin, namely, the Czech Republic, the designation 'Bud' is protected as a designation of origin. Following registration of that designation with WIPO under the Lisbon Agreement, that protection was extended to other States which are also parties to that Agreement.

52    The conditions under which that designation of origin is protected correspond to those from which designations of origin, as defined in Article 2(1)(a) of Regulation No 510/2006, benefit. It is therefore no longer permissible to take the view that the designation 'Bud' constitutes a simple and indirect indication of provenance which falls outside the scope of that regulation.

53    That is confirmed by the Act of Accession since that Act protects three indications of provenance concerning beer produced in the town of Česke Budějovice, namely 'Budějovické pivo', 'Českobudějovické pivo' and 'Budějovický měšťanský', designating a strong beer called 'Bud Super Strong'.

54    In the light of those new circumstances, two questions arise.

55    In the first place, the question, on which the Court has not yet ruled, arises whether Regulation No 510/2006 is definitive in the sense that it precludes protection laid down by national law or a bilateral agreement on designations, such as the designation of origin 'Bud', registration of which has not been sought in accordance with that regulation but which in principle falls within the material scope thereof (the 'exhaustive' nature of Regulation No 510/2006).

56    The national court takes the view that Regulation No 918/2004, since it provides for a transitional period of protection during which national protection of designations of origin and geographical indications may be maintained, is plainly exhaustive in nature.

57    Nevertheless, if it were found that Regulation No 510/2006 is not exhaustive in nature, the national court takes the view that it remains necessary to ascertain whether, in any event, that regulation precludes the extension of that protection to other Member States since the view would have to be taken that it is exhaustive in nature as regards cross-border protection within the European Union.

58    In the second place, the question arises whether the protection granted by the Act of Accession to beer produced in the town of Česke Budějovice bearing the geographical indications 'Budějovické pivo', 'Českobudějovické pivo' and 'Budějovický měšťanský', protected under Regulation No 510/2006, is exhaustive in nature. If it is exhaustive in nature, that would mean that the existence of that protection precludes the maintenance of another designation such as 'Bud', which also designates beer produced in that town and which is protected as a designation of origin under national law.

59    Even if it were not accepted that that protection is exhaustive in nature, it should still be ascertained whether the existence of the protection of those three designations precludes, at the very least, extension of national protection of another geographical indication such as 'Bud' to other Member States by way of bilateral agreements concluded between Member States.

60    In those circumstances, since it took the view that resolution of the dispute before it depended on the interpretation of Community law, the Handelsgericht Wien decided to stay proceedings and to refer the following questions to the Court for a preliminary ruling:

'(1) In its judgment [in *Budějovický Budvar*] the Court of Justice defined the requirements for the compatibility with Article 28 EC of the protection of a designation as a geographical indication which in the country of origin is the name neither of a place nor of a region, namely that such a designation must:

— according to the factual circumstances and

— perceptions prevailing in the Czech Republic, designate a region or a place in that State,

— and that its protection must be justified there on the basis of the criteria laid down in Article 30 EC.

Do those requirements mean:

— that the designation as such must fulfil a specific geographical indication function referring to a particular place or a particular region, or does it suffice that the designation is capable, in conjunction with the product bearing it, of informing consumers that the product bearing it comes from a particular place or a particular region in the country of origin;

— that the three conditions are conditions to be examined separately and to be satisfied cumulatively;

— that a consumer survey is to be carried out for ascertaining perceptions in the country of origin, and, if so, that a low, medium or high degree of recognition and association is required in order for protection to be available;

— that the designation must actually have been used as a geographical indication by several undertakings, and not just one undertaking, in the country of origin and that use as a trade mark by a single undertaking precludes protection?

(2) Does the fact that a designation has not been notified or its registration applied for either within the six-month period provided for in Regulation No 918/2004 or otherwise in terms of Regulation No 510/2006 mean that existing national protection, or in any case protection that has been extended bilaterally to another Member State, becomes void if the designation is a qualified geographical indication, within the meaning of Regulation No 510/2006, under the national law of the State of origin?

(3) Does the fact that, in the context of the Act of Accession … a new Member State, the protection of several qualified geographical indications for a foodstuff has been claimed by that Member State in accordance with Regulation No 510/2006 mean that national protection, or in any case protection that has been extended bilaterally to another Member State, for another designation for the same product may no longer be maintained, and Regulation No 510/2006 [is exhaustive in its effect] to that extent?'

**The questions referred**

*The first question*

Admissibility

61    According to Budvar, it is necessary to ask whether the first question is not hypothetical and therefore inadmissible since, in the view of the national court, the basis of that question, that is to say, the fact that the word 'Bud' as protected by the bilateral instruments at issue constitutes a simple and indirect geographical designation of provenance which is not a designation falling within the scope of Regulation No 2081/92 — which, moreover, is the view already adopted by the Oberster Gerichtshof and therefore accepted by the Court as forming the national legal basis on which the first question referred in *Budějovický Budvar* was predicated (see paragraphs 41, 54 and 77 of that judgment) — can no longer be accepted.

62    As has already been stated in paragraphs 51 and 52 of the present judgment, the national court takes the view that its starting point must now be the premiss that, in the Czech Republic, the designation 'Bud' is protected as a qualified geographical indication, that is to say, a designation of origin falling within the scope of Regulation No 510/2006, which scope is identical in that regard to that of Regulation No 2081/92, since it is on that basis that the designation was registered with WIPO under the Lisbon Agreement and only qualified designations of origin can be so registered.

63    In that regard, it should nevertheless be borne in mind that, according to settled case-law, questions on the interpretation of Community law referred by a national court in the factual and legislative context which that court is responsible for defining, and the accuracy of which is not a matter for the Court to determine, enjoy a presumption of relevance. The Court may refuse to rule on a question referred by a national court only where it is quite obvious that the interpretation of Community law that is sought bears

no relation to the actual facts of the main action or its purpose, where the problem is hypothetical, or where the Court does not have before it the factual or legal material necessary to give a useful answer to the questions submitted to it (see, inter alia, Case C-333/07 *Régie Networks* [2008] ECR I-10807, paragraph 46 and the case-law cited).

64    The spirit of cooperation which must prevail in preliminary ruling proceedings requires the national court for its part to have regard to the function entrusted to the Court of Justice, which is to contribute to the administration of justice in the Member States and not to give opinions on general or hypothetical questions (see, inter alia, Case C-350/07 *Kattner Stahlbau* [2009] ECR I-1513, paragraph 29 and the case-law cited).

65    In that regard, the new approach adopted by the national court, namely, that the designation 'Bud', as protected by the bilateral instruments at issue, must be classified as a designation of origin, an interpretation of national law which forms the basis of the second and third questions referred in the present reference for a preliminary ruling, constitutes a premiss which, it is true, is significantly different from that which underlay the first question referred in *Budějovický Budvar* and is also reflected in the first question referred in the present reference for a preliminary ruling, that is to say, whether what is involved is a simple and indirect indication of geographical provenance.

66    However, the possibility cannot be ruled out that, in reality, those are two distinct and, a priori, possible theories and that, at this stage, the national court does not wish definitively to discard that of a simple and indirect indication of geographical provenance, with the result that it referred the first question in order to allow for the possibility that it might, none the less, accept that theory.

67    In addition, classification as a designation of origin of the designation 'Bud' as protected by the bilateral instruments at issue raises a question which concerns only national law

and which can be challenged before the higher courts, which, moreover, have given decisions in the past, some of which expressly adopted a different classification.

68    In those circumstances, it must be held that it has not been established that the first question is hypothetical in nature. Accordingly, the presumption of relevance enjoyed by references for a preliminary ruling has not been rebutted by the doubts expressed by Budvar.

69    It follows that the first question referred for a preliminary ruling is admissible.

Substance

70    By its first question, the national court asks, essentially, for paragraph 101 of the judgment in *Budějovický Budvar* to be clarified.

71    As a preliminary point, it should be noted that the first question concerns the protection of the designation 'Bud' as a simple and indirect indication of geographical provenance pursuant to the bilateral instruments at issue, which were concluded on 11 June 1976 and 7 June 1979 between the Republic of Austria and the Czechoslovak Socialist Republic. Those bilateral instruments were therefore concluded well before the accession of the Czech Republic to the European Union. Accordingly, the main proceedings do not involve the situation of bilateral instruments concluded at a time when the States in question were actually Member States.

72    In order to answer that question, it is necessary to place paragraph 101 of the judgment in *Budějovický Budvar* in the context of the Court's analysis, of which that paragraph forms an integral part.

73    In that regard, it must be borne in mind that, in paragraph 54 of the judgment in *Budějovický Budvar*, the Court observed that the first question referred in that case dealt with the hypothesis that the name 'Bud' constitutes a simple and indirect indication of geographical provenance, that is to say, a name in respect of which there is no direct link between a specific quality, reputation or other characteristic of the product and its specific geographical origin, so that it does not come within the scope of Article 2(2)(b) of Regulation No 2081/92 (see Case C-312/98 *Warsteiner Brauerei* [2000] ECR I-9187, paragraphs 43 and 44), and which, moreover, is not in itself a geographical name but is at least capable of informing the consumer that the product bearing that indication comes from a particular place, region or country (see Case C-3/91 *Exportur* [1992] ECR I-5529, paragraph 11).

74    On the basis of that hypothesis, the Court examined whether absolute protection, that is to say, irrespective of whether there is any risk of confusion, of a simple and indirect indication of geographical provenance such as that conferred on the designation 'Bud' by the bilateral instruments at issue can, since it is likely to constitute a restriction on the free movement of goods (*Budějovický Budvar*, paragraph 97), be justified under Community law.

75    In paragraph 99 of the judgment in *Budějovický Budvar*, the Court recalled, in relation to the protection of an indication of source granted under a bilateral agreement of essentially the same kind as the one at issue in the main proceedings, that the aim of such an agreement, which is to prevent the producers of a contracting State from using the geographical names of another State and thereby taking advantage of the reputation of the products of undertakings established in the regions or places indicated by those names, is to ensure fair competition, since such an objective may be regarded as falling within the sphere of the protection of industrial and commercial property within the meaning of Article 30 EC, provided that the names in question have not, either at the

time of the entry into force of that agreement or subsequently, become generic in the country of origin (see *Exportur*, paragraph 37, and Case C-87/97 *Consorzio per la tutela del formaggio Gorgonzola* [1999] ECR I-1301, paragraph 20).

76    In paragraph 100 of the judgment in *Budějovický Budvar*, the Court held that, as is clear from, in particular, Articles 1, 2 and 6 of the bilateral convention, that objective forms the basis of the system of protection established by the bilateral instruments at issue.

77    It was in the light of those considerations that the Court held, in paragraph 101 of the judgment in *Budějovický Budvar*, that, if the findings of the national court show that according to factual circumstances and perceptions prevailing in the Czech Republic the name 'Bud' designates a region or a place located on the territory of that State and its protection is justified there on the basis of the criteria laid down in Article 30 EC, that does not preclude such protection from being extended to the territory of a Member State such as, in this case, the Republic of Austria.

78    With regard, first, to the reference at paragraph 101 of that judgment to factual circumstances and perceptions prevailing in the Czech Republic, that expression is to be understood in the particular context of the mechanism for protection of the designation 'Bud' under the bilateral instruments at issue, which rests in the fact that that mechanism, like, for example, that at issue in *Exportur*, is based on an extension of the protection provided in the Member State of origin, in the present case the Czech Republic, to the importing Member State, here the Republic of Austria.

79    Such a mechanism is distinguished by the fact, derogating from the principle of territoriality, that the protection conferred is determined by the law of the Member State of origin and by factual circumstances and perceptions in that State (*Exportur*, paragraphs 12, 13 and 38).

80    Accordingly, whether the designation 'Bud' constitutes a simple and indirect indication of geographical provenance must be ascertained by the national court in the light of those circumstances and perceptions prevailing in the Czech Republic.

81    In particular, as the Court noted at paragraph 54 of the judgment in *Budějovický Budvar*, a simple designation of geographical provenance is indirect if it is not in itself a geographical name but is at least capable of informing the consumer that the product bearing that indication comes from a particular place, region or country.

82    It must therefore be found that, in order to determine whether a designation can be considered to constitute a simple and indirect indication of geographical provenance, protection of which under the bilateral instruments at issue is capable of being justified on the basis of the criteria laid down in Article 30 EC, the national court must ascertain whether, according to factual circumstances and perceptions prevailing in the Czech Republic, that designation, even if it is not in itself a geographical name, is at least capable of informing the consumer that the product bearing that indication comes from a particular place or region of that Member State.

83    However, if such an examination were to show that the designation at issue is not at least capable of evoking the geographical provenance of the product, its protection cannot be justified on the grounds of protection of industrial and commercial property within the meaning of Article 30 EC and would in principle run counter to Article 28 EC unless it could be justified on another basis (*Budějovický Budvar*, paragraphs 107 to 111).

84    Secondly, with regard to the reference at paragraph 101 of the judgment in *Budějovický Budvar* to the fact that protection of the designation 'Bud' must be justified on the basis of the criteria laid down in Article 30 EC, it follows from the above that the national court must, in addition, ascertain, also in the light of factual circumstances and perceptions prevailing in the Czech Republic, whether, as mentioned in paragraph 99 of that judgment, the designation at issue in the main proceedings has not, either at the time of the entry into force of the bilateral instruments at issue or subsequently, become generic in that Member State, the Court having already held, in paragraphs 99 and 100

of that judgment, that the aim of the system of protection introduced by those instruments falls within the sphere of the protection of industrial and commercial property within the meaning of Article 30 EC.

85    Furthermore, it can also be stated that, if, after the national court has reached a view on the matters referred to in paragraphs 82 and 84 of the present judgment, it proves to be the case that, according to factual circumstances and perceptions prevailing in the Czech Republic, the designation 'Bud' at issue in the main proceedings is at least capable of informing the consumer that the product bearing that indication comes from a particular place or region of that Member State and that, according to those circumstances and perceptions, that designation has not, either at the time of the entry into force of the bilateral instruments at issue or subsequently, become generic in that Member State, it would follow that Articles 28 EC and 30 EC do not preclude national protection of such a simple and indirect indication of geographical source, nor, moreover, the extension of that protection by way of a bilateral agreement to the territory of another Member State (see, to that effect, *Budějovický Budvar*, paragraphs 101 and 102 and the case-law cited).

86    By the third part of the first question, which it is appropriate to consider at this point, the national court asks the Court whether, in the context of the assessment to be undertaken by that court, a consumer survey should be carried out for ascertaining perceptions prevailing in the Czech Republic and, in addition, asks what degree of recognition and association should be required.

87    In that regard, it is established that, on those points, Community law does not lay down any particular provision.

88    In the absence of Community rules governing the matter, it is for the domestic legal system of each Member State to designate the courts and tribunals having jurisdiction and to lay down the detailed procedural rules governing actions for safeguarding rights which individuals derive from the direct effects of Community law, provided that such

rules are not less favourable than those governing similar domestic actions (the principle of equivalence) and that they do not render practically impossible or excessively difficult the exercise of rights conferred by Community law (the principle of effectiveness) (see, inter alia, Case C-2/06 *Kempter* [2008] ECR I-411, paragraph 57 and the case-law cited).

89    Accordingly, in the absence of any Community provision in that regard, it is for the national court to decide, in accordance with its own national law, whether a consumer survey should be commissioned for the purpose of clarifying the factual circumstances and perceptions prevailing in the Czech Republic in order to ascertain whether the designation 'Bud' can be classified as a simple and indirect indication of geographical source and has not become generic in that Member State. It is also in the light of that national law that the national court, if it finds it necessary to commission a consumer survey, must determine, for the purposes of making the necessary assessments, the percentage of consumers that would be sufficiently significant (see, by analogy, Case C-210/96 *Gut Springenheide and Tusky* [1998] ECR I-4657, paragraphs 35 and 36).

90    Finally, by the fourth part of the first question, which it is appropriate to consider last, the national court asks whether it follows from paragraph 101 of the judgment in *Budějovický Budvar* and, in particular, from the reference there to the factual circumstances and perceptions prevailing in the Czech Republic, that specific requirements must be laid down as to both the quality and the duration of the use made of a designation, so as to mean that that designation must actually have been used as a geographical indication in the Member State of origin by a number of undertakings and not, as is the case of the designation at issue in the main proceedings, solely as a trade mark by a single undertaking.

91    In that regard, it must be noted that paragraph 101 of the judgment in *Budějovický Budvar*, particularly if put back into the context of the reasoning behind the answer to the first question referred in that case (see paragraphs 73 to 77 of the present judgment), does not provide support for the view that Article 30 EC contains specific requirements as to both the quality and the duration of the use made of a designation in the Member

State of origin for its protection to be justified on the basis of the protection of industrial and commercial property within the meaning of that article.

92   It is apparent from paragraph 54, read together with paragraphs 99 to 101, of the judgment in *Budějovický Budvar* that Article 30 EC does not preclude the extension conferred by the bilateral instruments at issue of the specific protection provided for the designation 'Bud' to the territory of another Member State than the Czech Republic since the aim of that protection falls within the sphere of the protection of industrial and commercial property within the meaning of that article, provided, however, that it be ascertained that, according to the factual circumstances and perceptions prevailing in the Czech Republic, that designation can be classified as a simple and indirect indication of geographical provenance and has not become generic in that Member State.

93   Accordingly, Article 30 EC, as interpreted in paragraph 101 of the judgment in *Budějovický Budvar*, does not lay down specific requirements as to the quality and the duration of the use made of a designation in the Member State of origin for its protection to be justified in the light of that article. Whether such requirements apply in the context of the dispute in the main proceedings must be determined by the national court in the light of the applicable national law, in particular the system of protection laid down by the bilateral instruments at issue.

94   In the light of the foregoing, the answer to the first question is that it follows from paragraph 101 of the judgment in *Budějovický Budvar* that:

— in order to determine whether a designation can be considered to constitute a simple and indirect indication of geographical provenance protection of which under the bilateral instruments at issue is capable of being justified on the basis of the criteria laid down in Article 30 EC, the national court must ascertain whether, according to factual circumstances and perceptions prevailing in the Czech Republic, that designation, even if it is not in itself a geographical name, is at least

capable of informing the consumer that the product bearing that indication comes from a particular place or region of that Member State;

— the national court must, in addition, ascertain, once again in the light of factual circumstances and perceptions prevailing in the Czech Republic, whether, as stated in paragraph 99 of that judgment, the designation at issue in the main proceedings has not, either at the time of the entry into force of the bilateral instruments at issue or subsequently, become generic in that Member State, the Court having already held, in paragraphs 99 and 100 of that judgment, that the aim of the system of protection introduced by those instruments falls within the sphere of the protection of industrial and commercial property within the meaning of Article 30 EC;

— in the absence of any Community provision in that regard, it is for the national court to decide, in accordance with its own national law, whether a consumer survey should be commissioned for the purpose of clarifying factual circumstances and perceptions prevailing in the Czech Republic in order to ascertain whether the designation 'Bud' at issue in the main proceedings can be classified as a simple and indirect indication of geographical provenance and has not become generic in that Member State. It is also in the light of that national law that the national court, if it finds it necessary to commission a consumer survey, must determine, for the purposes of making the necessary assessments, the percentage of consumers that would be sufficiently significant; and

— Article 30 EC does not lay down specific requirements as to the quality and the duration of the use made of a designation in the Member State of origin for its protection to be justified in the light of that article. Whether such requirements apply in the context of the dispute in the main proceedings must be determined by the national court in the light of the applicable national law, in particular the system of protection laid down by the bilateral instruments at issue.

*The second question*

95    By its second question, the national court asks, essentially, whether the Community system of protection laid down by Regulation No 510/2006 is exhaustive in nature, with the result that that regulation precludes the application of a system of protection laid down by agreements between two Member States, such as the bilateral instruments at issue, which confers on a designation, recognised under the law of a Member State as constituting a designation of origin, protection in another Member State where that protection is actually claimed despite the fact that no application for registration of that designation of origin has been made in accordance with that regulation.

Preliminary observations

96    As a preliminary point, it should be noted, first, as has been stated in paragraphs 51 and 52 of the present judgment, that, according to the national court, the present question concerns the theory that, in the Czech Republic, the designation 'Bud' is protected as a designation of origin and not as a simple indication of geographical provenance.

97    Secondly, since the Court delivered its judgment in *Budějovický Budvar*, the Czech Republic has acceded to the European Union.

98    It follows that, since the bilateral instruments at issue now concern two Member States, their provisions cannot apply in the relations between those States if they are found to be contrary to the rules of the Treaty, in particular the rules on the free movement of goods (see, to that effect, Case C-469/00 *Ravil* [2003] ECR I-5053, paragraph 37 and the case-law cited).

I - 7799

99    In addition, it must be pointed out that Article 307 EC does not apply to such agreements since no third country is party to them (Case 235/87 *Matteucci* [1988] ECR 5589, paragraph 21).

100    Thirdly, it must be recalled that, according to the national court, it is as an appellation of origin that that designation has been registered and remains protected under the Lisbon Agreement.

101    In that regard, unlike the Czech Republic, the Republic of Austria is not a party to that Agreement, with the result that the protection provided under that Agreement cannot be claimed in that Member State.

102    Accordingly, the question whether the fact that Regulation No 510/2006 is exhaustive in nature precludes protection of the designation at issue in the main proceedings under the Lisbon Agreement does not arise in the main proceedings.

103    Since the definition of the concept of appellation of origin laid down in Article 2(1) of the Lisbon Agreement is essentially identical to that of a designation of origin in Article 2(1)(a) of Regulation No 510/2006, in the view of the national court it follows that the designation 'Bud' constitutes a designation of origin within the meaning of that regulation.

104    It is common ground that, to date, no application for registration of that designation has been made under Regulation No 510/2006. Nor is it disputed that no application for registration of that designation has been sent to the Commission pursuant to Regulation No 2081/92 under the transitional arrangements introduced by Regulation No 918/2004 concerning designations of origin and geographical indications existing in the ten States which became Member States of the European Union at the time of its enlargement in 2004.

105    Accordingly, the second question is based on the premiss that the protection of the designation 'Bud' claimed in the Republic of Austria by Budvar on the basis of the bilateral instruments at issue is based on the extension to that Member State of the protection of that designation as an existing appellation of origin in the Czech Republic, a designation which also corresponds to the definition of a designation of origin within the meaning of Regulation No 510/2006.

106    The question therefore arises more precisely whether Regulation No 510/2006 is exhaustive in nature so that it precludes such national protection and, consequently, also precludes extension of that protection under the bilateral instruments at issue to the territory of another Member State.

Answer of the Court

107    In accordance with settled case-law, the aim of Regulation No 2081/92 is to ensure uniform protection within the Community of the geographical designations which it covers; it introduced a requirement of Community registration in respect of those designations so that they could enjoy protection in every Member State (see, to that effect, inter alia, *Budějovický Budvar*, paragraph 74 and the case-law cited).

108    That aim is apparent from the seventh recital in the preamble to Regulation No 2081/92 (Joined Cases C-129/97 and C-130/97 *Chiciak and Fol* [1998] ECR I-3315, paragraphs 25 and 26), which is essentially identical to the sixth recital in the preamble to Regulation No 510/2006, which states:

'Provision should be made for a Community approach to designations of origin and geographical indications. A framework of Community rules on a system of protection permits the development of geographical indications and designations of origin since, by providing a more uniform approach, such a framework ensures fair competition

between the producers of products bearing such indications and enhances the credibility of the products in the consumer's eyes.'

109    The Court has also held that Community legislation displays a general tendency to enhance the quality of products within the framework of the common agricultural policy, in order to promote the reputation of those products through inter alia the use of designations of origin which enjoy special protection. In respect of agricultural products, that tendency manifested itself, in particular, in the adoption of Regulation No 2081/92, which, according to its preamble, is intended, inter alia, to meet consumers' expectations as regards products of quality and an identifiable geographical origin and to enable producers, in conditions of fair competition, to secure higher incomes in return for a genuine effort to improve quality (see, to that effect, *Ravil*, paragraph 48, and Case C-108/01 *Consorzio del Prosciutto di Parma and Salumficio S. Rita* [2003] ECR I-5121, paragraph 63).

110    Designations of origin fall within the scope of industrial and commercial property rights. The applicable rules protect those entitled to use them against improper use of those designations by third parties seeking to profit from the reputation which they have acquired. They are intended to guarantee that the product bearing them comes from a specified geographical area and displays certain particular characteristics. They may enjoy a high reputation amongst consumers and constitute for producers who fulfil the conditions for using them an essential means of attracting custom. The reputation of designations of origin depends on their image in the minds of consumers. That image in turn depends essentially on particular characteristics and more generally on the quality of the product. It is on the latter, ultimately, that the product's reputation is based. For consumers, the link between the reputation of the producers and the quality of the products also depends on their being assured that products sold under the designation of origin are authentic (*Ravil*, paragraph 49, and *Consorzio del Prosciutto di Parma and Salumficio S. Rita*, paragraph 64).

111    It follows from this that Regulation No 510/2006, adopted on the basis of Article 37 EC, constitutes an instrument of the common agricultural policy essentially intended to assure consumers that agricultural products bearing a geographical indication registered under that regulation have, because of their provenance from a particular geographical area, certain specific characteristics and, accordingly, offer a guarantee of quality due to their geographical provenance, with the aim of enabling agricultural operators to secure higher incomes in return for a genuine effort to improve quality and of preventing improper use of those designations by third parties seeking to profit from the reputation which those products have acquired by their quality.

112    If the Member States were permitted to allow their producers to use, within their national territories, one of the indications or symbols which are reserved, under Article 8 of Regulation No 510/2006, for designations registered under that regulation, on the basis of a national right which could meet less strict requirements than those laid down in that regulation for the products in question, the risk is that that assurance of quality, which constitutes the essential function of rights conferred pursuant to Regulation No 510/2006, could not be guaranteed. That also carries the risk, in the internal market, of jeopardising the aim of fair competition between producers of products bearing those indications or symbols and, in particular, would be liable to harm rights which ought to be reserved for producers who have made a genuine effort to improve quality in order to be able to use a geographical indication registered under that regulation.

113    That risk of damage to the central aim of ensuring the quality of the agricultural products concerned is all the more important since, as the Advocate General observed in point 111 of his Opinion, unlike in the case of trade marks, no Community measure has been adopted in tandem, harmonising any national systems.

114    The conclusion must be drawn that the aim of Regulation No 510/2006 is not to establish, alongside national rules which may continue to exist, an additional system of protection for qualified geographical indications, like, for example, that introduced by Council Regulation (EC) No 40/94 of 20 December 1993 on the Community trade mark (OJ 1994 L 11, p. 1), but to provide a uniform and exhaustive system of protection for such indications.

115    A number of characteristics of the system of protection as laid down by Regulations No 2081/92 and No 510/2006 also support the view that that system is exhaustive in nature.

116    First, unlike other Community systems for the protection of industrial and commercial property rights, such as those of the Community trade mark under Regulation No 40/94 or plant variety rights under Council Regulation (EC) No 2100/94 of 27 July 1994 on Community plant variety rights (OJ 1994 L 227, p. 1), the registration procedure under Regulations No 2081/92 and No 510/2006 is based on powers shared between the Member State concerned and the Commission, since the decision to register a designation may be taken by the Commission only if the Member State concerned has submitted to it an application for that purpose and such an application may be made only if the Member State has checked that it is justified (Case C-269/99 *Carl Kühne and Others* [2001] ECR I-9517, paragraph 53).

117    The national registration procedures are therefore incorporated in the Community decision-making procedure and constitute an essential part thereof. They cannot exist outside the Community system of protection.

118    With regard to the Community registration procedure, it is also indicative that Article 5(6) of Regulation No 510/2006, a provision essentially identical to Article 5(5) of Regulation No 2081/92 as inserted in that regulation by Regulation No 535/97, provides that, on its sole responsibility, a Member State may grant transitional national protection until a decision on the application for registration is adopted.

119    In that regard, the Court has held, furthermore, that it follows from that provision that, under the system introduced by Regulation No 2081/92, where Member States have the power to adopt decisions, even of a provisional nature, which derogate from the provisions of the regulation, that power is derived from express rules (*Chiciak and Fol*, paragraph 32).

120   As the Advocate General observed in point 102 of his Opinion, a provision of that kind would be meaningless if the Member States were able in any event to retain their own systems of designations of origin and geographical indications within the meaning of Regulations No 2081/92 and No 510/2006 and have them coexist with those regulations.

121   Secondly, the fact that the system of protection laid down in Regulations No 2081/92 and No 510/2006 is exhaustive in nature is also evidenced by the transitional arrangements for existing national designations such as the Czech designation 'Bud' at issue in the main proceedings.

122   Thus, Article 17 of Regulation No 2081/92 introduced a so-called 'simplified' registration procedure for national designations legally protected in the Member State which sought their registration or, in Member States where there was no system of protection, validated through use (Case C-66/00 *Bigi* [2002] ECR I-5917, paragraph 28).

123   It was provided that, if their registration was sought within six months, their national protection could, on certain conditions, be maintained for a transitional period of five years in accordance with Article 13(2) of that regulation, which period was subsequently extended by an additional period of five years by Regulation No 535/97.

124   Since that specific system for the transitional protection of existing national designations had been repealed by Article 1(15) of Regulation No 692/2003, the Commission, by Regulation No 918/2004, laid down transitional provisions regarding the protection of designations of origin and geographical indications existing in the 10 States which became Member States of the European Union at the time of its 2004 enlargement, based on those laid down for the 15 old Member States.

125   Those provisions are especially relevant to the present case since, according to the national court, the designation 'Bud' existed at that time as a geographical designation in the Czech Republic.

126   Regulation No 918/2004 provided that the national protection of geographical indications and designations of origin within the meaning of Regulation (EEC) No 2081/92 existing in the 10 new Member States on 30 April 2004 could be maintained for 6 months. However, as the simplified procedure no longer existed, that regulation provided that where an application for registration had been sent within that six-month period, that national protection could be maintained until the Commission had adopted a decision in accordance with Article 6 of Regulation No 2081/92.

127   Consequently, that regulation confirms, in respect of the 10 new Member States, what was already the case for the 15 old Member States, that is to say, that the national protection of existing qualified geographical indications is permitted only if the conditions in the rules of the transitional legislation specifically laid down in respect of such indications are met, including the condition that an application for registration be submitted within six months, which the Czech authorities neglected to do with regard to the designation 'Bud' at issue in the main proceedings.

128   Those particular systems and, especially, the express authorisation granted, on certain conditions, to the Member States to maintain, on a transitional basis, the national protection of existing qualified geographical indications would be difficult to understand if the Community system of protection of such indications were not exhaustive in nature, implying that the Member States retained in any event an unlimited capacity to maintain such national rights.

129   In the light of the foregoing, the answer to the second question is that the Community system of protection laid down by Regulation No 510/2006 is exhaustive in nature, with the result that that regulation precludes the application of a system of protection laid down by agreements between two Member States, such as the bilateral instruments at issue, which confers on a designation, recognised under the law of a Member State as constituting a designation of origin, protection in another Member State where that

protection is actually claimed despite the fact that no application for registration of that designation of origin has been made in accordance with that regulation.

130    Having regard to that answer to the second question, there is no longer any need to answer the third question.

**Costs**

131    Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Grand Chamber) hereby rules:

1.  **It follows from paragraph 101 of the judgment of 18 November 2003 in Case C-216/01 *Budějovický Budvar* that:**

    —  **in order to determine whether a designation can be considered to constitute a simple and indirect indication of geographical provenance, protection of which under the bilateral instruments at issue is capable of being justified on the basis of the criteria laid down in Article 30 EC, the national court must ascertain whether, according to factual circumstances and perceptions prevailing in the Czech Republic, that designation, even if**

it is not in itself a geographical name, is at least capable of informing the consumer that the product bearing that indication comes from a particular place or region of that Member State;

— the national court must, in addition, ascertain, once again in the light of factual circumstances and perceptions prevailing in the Czech Republic, whether, as stated in paragraph 99 of that judgment, the designation at issue in the main proceedings has not, either at the time of the entry into force of the bilateral instruments at issue in the main proceedings or subsequently, become generic in that Member State, the Court of Justice of the European Communities having already held, in paragraphs 99 and 100 of that judgment, that the aim of the system of protection introduced by those instruments falls within the sphere of the protection of industrial and commercial property within the meaning of Article 30 EC;

— in the absence of any Community provision in that regard, it is for the national court to decide, in accordance with its own national law, whether a consumer survey should be commissioned for the purpose of clarifying the factual circumstances and perceptions prevailing in the Czech Republic in order to ascertain whether the designation 'Bud' at issue in the main proceedings can be classified as a simple and indirect indication of geographical provenance and has not become generic in that Member State. It is also in the light of that national law that the national court, if it finds it necessary to commission a consumer survey, must determine, for the purposes of making the necessary assessments, the percentage of consumers that would be sufficiently significant; and

— Article 30 EC does not lay down specific requirements as to the quality and the duration of the use made of a designation in the Member State of origin for its protection to be justified in the light of that article. Whether such requirements apply in the context of the dispute in the main proceedings must be determined by the national court in the light of the applicable national law, in particular the system of protection laid down by the bilateral instruments at issue in the main proceedings.

2. **The Community system of protection laid down by Council Regulation (EC) No 510/2006 of 20 March 2006 on the protection of geographical indications and designations of origin for agricultural products and foodstuffs is exhaustive in nature, with the result that that regulation precludes the application of a system of protection laid down by agreements between two Member States, such as the bilateral instruments at issue in the main proceedings, which confers on a designation, which is recognised under the law of a Member State as constituting a designation of origin, protection in another Member State where that protection is actually claimed, despite the fact that no application for registration of that designation of origin has been made in accordance with that regulation.**

[Signatures]