# EXHIBIT 16

JUDGMENT OF THE COURT
10 November 1992 *

In Case C-3/91,

REFERENCE to the Court under Article 177 of the EEC Treaty by the Cour d'Appel, Montpellier (France), for a preliminary ruling in the proceedings pending before that court between

Exportur SA

and

LOR SA and Confiserie du Tech,

on the interpretation of Articles 30, 34 and 36 of the Treaty for the purpose of determining the compatibility with those provisions of the Convention between the French Republic and the Spanish State of 27 June 1973 on the protection of designations of origin, indications of provenance and names of certain products,

THE COURT,

composed of: O. Due, President, C. N. Kakouris, G. C. Rodríguez Iglesias and M. Zuleeg (Presidents of Chambers), G. F. Mancini, R. Joliet, F. A. Schockweiler, J. C. Moitinho de Almeida, F. Grévisse, M. Diez de Velasco and P. J. G. Kapteyn, Judges,

Advocate General: C. O. Lenz,
Registrar: M. D. Triantafyllou, Administrator,

---

* Language of the case: French.

after considering the written observations submitted on behalf of:

— LOR SA and Confiserie du Tech, by F. Greffe, of the Paris Bar;

— the German Government, by J. Karl, Regierungsdirektor in the Federal Ministry for the Economy, acting as Agent;

— the Spanish Government, by A. J. Navarro Gonzales, Director General for Community Legal and Institutional Coordination, and G. Calvo Díaz, Abogado del Estado, in the Legal Department for Matters before the Court of Justice, acting as Agents;

— the United Kingdom, by J. E. Collins, of the Treasury Solicitor's Department, and E. Sharpston, Barrister, acting as Agents;

— the Commission, by R. Wainwright, Legal Adviser, acting as Agent,

having regard to the Report for the Hearing,

after hearing the oral observations of Exportur SA, represented by J. Villaceque, of the Pyrénées Orientales Bar, and Me Mitchell, of the Paris Bar, LOR SA and Confiserie du Tech, represented by N. Boespflug, of the Paris Bar, the German Government, represented by A. von Mühlendahl, Ministerialrat in the Federal Ministry of Justice, the Spanish Government, the United Kingdom and the Commission, represented by R. Wainwright, acting as Agent, and by H. Lehman, of the Paris Bar, at the hearing on 23 January 1992,

after hearing the Opinion of the Advocate General at the sitting on 18 March 1992,

gives the following

## Judgment

1   By judgment of 6 November 1990, received at the Court on 3 January 1991, the Cour d'Appel (Court of Appeal), Montpellier, referred two questions to the Court

for a preliminary ruling under Article 177 of the EEC Treaty on the interpretation of Articles 30, 34 and 36 of the EEC Treaty concerning the protection in France of Spanish geographical names.

2   Those questions were raised in proceedings between the Asociación de Empresas Exportadoras de Turrones de Jijona (hereinafter 'Exportur'), established in Jijona (Alicante Province), and the companies LOR and Confiserie du Tech, both established in Perpignan, regarding the use by those companies of the names 'Alicante' and 'Jijona', which are the names of Spanish towns, for confectionery produced in France.

3   LOR and Confiserie du Tech produce and sell confectionery in Perpignan, the former as 'touron Alicante' and 'touron Jijona', and the latter as 'touron catalan type Alicante' and 'touron catalan type Jijona'.

4   Article 3 of the Convention between the French Republic and the Spanish State of 27 June 1973 on the protection of designations of origin, indications of provenance and names of certain products *(appellations d'origine, indications de provenance et dénominations de certains produits; denominaciones de origen, indicaciones de procedencia y denominaciones de ciertos productos)*, signed in Madrid on 27 June 1973 (*Journal Officiel de la République Française* of 18 April 1973, p. 4011, hereinafter the 'Franco-Spanish Convention'), provides that the names 'Turrón de Alicante' and 'Turrón de Jijona' are, in the territory of the French Republic, to be reserved exclusively to Spanish products or goods and may be used there only in accordance with the conditions laid down in the legislation of the Spanish State. According to Article 5(2) of the Convention, that rule applies even where the names in question are accompanied by terms such as 'style', 'kind' or 'type'.

5   Relying on the Franco-Spanish Convention, Exportur tried unsuccessfully to obtain from the judge responsible for granting interim relief, and subsequently from the Tribunal de Commerce (Commercial Court), Perpignan, an injunction

prohibiting the two French undertakings from using the Spanish names in question. Exportur appealed against the judgment of the Tribunal de Commerce, Perpignan, to the Cour d'Appel, Montpellier.

6   Being uncertain as to the interpretation to be given to Articles 30, 34 and 36 of the Treaty, the Cour d'Appel, Montpellier, stayed proceedings until the Court of Justice had given a preliminary ruling on the following questions:

'(1) Are Articles 30 and 34 of the EEC Treaty to be interpreted as prohibiting the measures for the protection of designations or indications of origin or provenance laid down in the Franco-Spanish Convention of 27 June 1973, in particular the designations or indications "Alicante" or "Jijona" for "Tourons"?

(2) If so, is Article 36 of the Treaty to be interpreted as authorizing the protection of those designations or indications?'

7   Reference is made to the Report for the Hearing for a fuller account of the facts of the case, the procedure and the written observations submitted to the Court, which are mentioned or discussed hereinafter only in so far as is necessary for the reasoning of the Court.

8   As a preliminary point, it should be observed that the national court rightly considered that the provisions of a convention concluded after 1 January 1958 by a Member State with another State could not, from the accession of the latter State to the Community, apply in the relations between those States if they were found to be contrary to the rules of the Treaty. It is therefore necessary to determine whether the provisions of the Franco-Spanish Convention are compatible with the rules of the Treaty on the free movement of goods.

I - 5556

9   In order to answer that question it is necessary first of all to examine the Franco-Spanish Convention, its context and scope.


The Franco-Spanish Convention, its context and scope


10  The object of the Franco-Spanish Convention is to protect Spanish indications of provenance and designations of origin in French territory and, conversely, French indications of provenance and designations of origin in Spanish territory.


11  Comparative examination of the national laws shows that indications of provenance (*indications de provenance; indicaciones de procedencia*) are intended to inform the consumer that the product bearing that indication comes from a particular place, region or country. A more or less considerable reputation may attach to that geographical provenance. A designation of origin (*appellation d'origine; denominación de origen*), for its part, guarantees, not only the geographical provenance of the product, but also that the goods have been manufactured according to quality requirements or manufacturing standards prescribed by an act of public authority and thus that they have certain specific characteristics (see Case C-47/90 *Etablissements Delhaize Frères et Compagnie Le Lion SA* v *Promalvin SA and Another* [1992] ECR I-3669, paragraphs 17 and 18). Indications of provenance are protected by the operation of rules designed to suppress misleading advertising, or indeed the abusive exploitation of another's reputation. Designations of origin, on the other hand, are protected under special rules laid down in the statutes or regulations by which they are established. Such rules generally exclude the use of terms such as 'kind', 'type' or 'style' and, so long as that regime remains in force, prevent such designations from becoming purely generic.


12  In accordance with the principle of territoriality, protection of indications of provenance and designations of origin is governed by the law of the country where protection is sought (the country of importation) and not by that of the country of origin. Protection is thus determined by the law of the country of importation and by factual circumstances and current conceptions in that country. It is in the light of those circumstances and conceptions that it will be determined whether purchasers in that country are being deceived or, as the case may be, whether the name in question has become generic. Since such determination is independent of the law of the country of origin and the circumstances obtaining there, a name protected in the country of origin as an indication of provenance may be regarded as generic in the country of importation and vice versa.

13    The Franco-Spanish Convention on the protection of designations of origin, indications of provenance and names of certain products derogates from the foregoing principle that the law of the country of importation applies.

14    The system established by the Franco-Spanish Convention is based on the following rules:

— protected indications of provenance and designations of origin are reserved for products and goods of the country of origin (Articles 2 and 3);

— the protected names are set out in two lists annexed to the Convention (Articles 2 and 3);

— the protection granted is based on the law of the country of origin and not on that of the country where protection is sought (Articles 2 and 3);

— protection of the names listed is supplemented by a general clause which prohibits the use 'on products and goods, in their display, on their inner or outer packaging, in invoices, way-bills or other commercial documents or in advertising' of false or misleading indications which are liable to deceive the buyer or consumer as to their true origin, their true provenance, their nature or their essential qualities (Article 6);

— the prohibitions laid down in the Convention also apply where the names protected are used 'in translation, or with an indication of the true provenance or with the addition of such terms as "style", "kind", "type", "imitation" or "similar"' (Article 5(2));

— finally, it is specified that 'products or goods originating in the territory of one of the Contracting States, and their packaging, labels, invoices, way-bills and other commercial documents, which, at the time of the entry into force of this Convention, customarily bear or make reference to indications the use of which is prohibited by the said Convention may be sold or used for a period of five years after the entry into force of the Convention' (Article 8(1)).

15  In so far as it renders applicable the law of the country of origin the Franco-Spanish Convention differs from the Paris Convention for the Protection of Industrial Property of 20 March 1883 as last revised in Stockholm on 14 July 1967 (United Nations Treaty Series, Vol. 828, No 11851, p. 305), and the Madrid Arrangement on the suppression of false or misleading indications of provenance of 14 April 1891, as last amended at Stockholm on 14 July 1967 (United Nations Treaty Series, Vol. 828, No 11848, p. 163). In so far as it extends to indications of provenance and is thus not confined to designations of origin 'recognized and protected as such in the country of origin', it differs from the Lisbon Arrangement on the protection of designations of origin and their international registration of 31 October 1958, amended at Stockholm on 14 July 1967 (United Nations Treaty Series, Vol. 828, No 13172, p. 205). It was, moreover, in order to remedy the weaknesses of the first two of the multilateral conventions mentioned above and the limitations of the third that numerous European States concluded bilateral agreements of this kind.

Applicability of the prohibition of import and export restrictions

16  The Court has consistently held (see, in the first place, Case 8/74 *Procureur du Roi* v *Dassonville* [1974] ECR 837, paragraph 5) that the prohibition, in Article 30 of the Treaty, of measures having an effect equivalent to quantitative restrictions covers all trading rules enacted by Member States which are capable of hindering, directly or indirectly, actually or potentially, intra-Community trade.

17  In the present case the national court has expressed doubts as to the applicability of Article 30. Exportur has argued that the Franco-Spanish Convention precluded

I - 5559

the sale in France of French products and the sale in Spain of Spanish products, but in no way prevented the importation of Spanish products into France or the importation of French products into Spain. Exportur therefore submits that there is no measure having equivalent effect within the meaning of Article 30 and the interpretation requested is not such as could provide the national court with anything of use for the decision in the proceedings pending before it.

18   Exportur's hypothesis is unsound. The effect of the Franco-Spanish Convention is to prohibit Spanish undertakings from using protected Spanish names in France if they are denied the right to use them by Spanish law, and to prohibit French undertakings from using protected French names in Spain, if they are denied the right to use them by French law.

19   Furthermore, as LOR and Confiserie du Tech have rightly pointed out, if an undertaking established in a Member State other than France or Spain exports products to one of those two States and uses a name protected by the Convention, it would be confronted in both States by a prohibition on the use of that name.

20   Those potential effects on intra-Community trade are sufficient to bring the prohibitions laid down in the Franco-Spanish Convention within the scope of Article 30 of the Treaty.

21   On the other hand, the Franco-Spanish Convention does not involve, for the purposes of applying Article 34 (see Case 15/79 *Groenveld* v *Produktschap voor Vee en Vlees* [1979] ECR 3409, paragraph 7), measures which have as their specific object or effect the restriction of patterns of exports and thereby the establishment of a difference in treatment between the domestic trade of a Member State and its export trade in such a way as to provide a particular advantage for national

production or for the domestic market of the State in question at the expense of the production or trade of other Member States. As Exportur has shown, the provisions of the Convention concern the use of the protected names only in the territory of the two Contracting States. The marketing of French or Spanish products in other Member States remains outside their scope. Furthermore, if a French undertaking finds itself prevented from exporting to Spain products bearing names reserved to Spanish products, this is not because of the law applicable on French territory by virtue of the Franco-Spanish Convention but because of Spanish law, which would in any event be applicable in the case of imports into Spain.

22  The problem must therefore be considered solely in the light of Article 30.

**Applicability of Article 36 of the Treaty**

*Principles*

23  Article 36 of the Treaty provides that Article 30 is not to preclude prohibitions or restrictions on imports justified on the grounds of the protection of industrial and commercial property.

24  However, inasmuch as it provides for an exception to one of the fundamental principles of the common market, Article 36 allows derogations from the free movement of goods only in so far as those derogations are justified for the purpose of safeguarding rights which constitute the specific subject-matter of such property (see Case 16/74 *Centrafarm* v *Winthrop* [1974] ECR 1183, paragraph 7).

25  It must therefore now be verified whether the prohibitions contained in the Franco-Spanish Convention are justified by the safeguard of rights which constitute the specific subject-matter of the indications of provenance and designations of origin.

26   LOR and Confiserie du Tech maintain first of all that there is no significant difference in composition and quality between the tourons produced in Alicante and Jijona and the tourons which they produce in Perpignan. The qualities and characteristics of the tourons are unrelated to their geographical origin. Accordingly, relying on the judgment in Case 12/74 *Commission* v *Germany* [1975] ECR 181, they submit that the Franco-Spanish Convention is incompatible with Community law.

27   The Commission, relying on the same judgment, maintains that the specific function of a geographical name is satisfied, and the prohibition imposed on other undertakings from using that name is justified by the protection of commercial property, only if the product to which the protected names applies possesses qualities and characteristics which are due to its geographical place of origin and are such as to give it its individual character. Where the product does not acquire any particular flavour from the land, a label mentioning its actual place of origin or provenance, in accordance with the subparagraph (7) of Article 3(1) of Council Directive 79/112/EEC of 18 December 1978 on the approximation of the laws of the Member States relating to the labelling, presentation and advertising of foodstuffs for sale to the ultimate consumer (OJ 1979 L 33, p. 1), would suffice to protect the consumer against the risk of error.

28   The Commission's position, which is in line with that of LOR and Confiserie du Tech, cannot be accepted. It would have the effect of depriving of all protection geographical names used for products which cannot be shown to derive a particular flavour from the land and which have not been produced in accordance with quality requirements and manufacturing standards laid down by an act of public authority, such names being commonly known as indications of provenance. Such names may nevertheless enjoy a high reputation amongst consumers and constitute for producers established in the places to which they refer an essential means of attracting custom. They are therefore entitled to protection.

29   The effect of the judgment in *Commission* v *Germany*, cited above, is not that attributed to it by the Commission. That judgment establishes, essentially, that a

Member State cannot, without infringing the provisions of Article 30, use a legislative measure to reserve to domestic products names which have been used to indicate products of any provenance whatever by requiring the undertakings of other Member States to use names unknown to or less highly prized by the public. By reason of its discriminatory nature, such legislation is not covered by the derogation provided for in Article 36.

30  It should also be borne in mind that in its judgment in Case 207/83 *Commission* v *United Kingdom* [1985] ECR 1201, paragraph 21, the Court held that the Treaty did not call in question rules which enable the use of false indications of origin to be prohibited.

*Previous longstanding, fair and traditional user*

31  LOR and Confiserie du Tech, referring to the judgment in Case 16/83 *Prantl* [1984] ECR 1299, further maintain that the protection of geographical names is justified only if it does not adversely affect fair and traditional user by third parties and that the application of the Franco-Spanish Convention could not have the effect of preventing them from using the names 'Turrón de Jijona' and 'Turrón de Alicante' since their use of them has been longstanding, consistent and fair.

32  That argument must be rejected. It is true that in *Prantl*, where the issue was whether, in order to protect an indirect designation of geographical origin in the interests of consumers, national legislation may prohibit the marketing of wines imported in a certain type of bottle, the Court observed that in a common market consumer protection and fair trading must, as regards the way in which wines are presented to the public, be guaranteed with due regard on all sides for fair and traditional user in the various Member States.

33  In that judgment the Court concluded that an exclusive right to use a type of bottle, granted by national legislation in a Member State, may not be used as a bar

to imports of wines originating in another Member State and put up in bottles of the same or similar shape in accordance with a fair and traditional practice observed in that Member State.

34  Without there being any need to take a view on the question, which is in dispute between the parties to the main proceedings, whether the names 'Touron Alicante' and 'Touron Jijona' were or were not used by LOR and Confiserie du Tech prior to the Franco-Spanish Convention, it must be emphasized that the situation which gave rise to the judgment in *Prantl* is different from that in the present case. In *Prantl* it emerged from the oral argument presented to the Court (see paragraph 28 of the judgment) that bottles of the same kind as the 'Bocksbeutel' or differing from it only in ways imperceptible to the consumer were traditionally used to market wines originating in certain regions of Italy. In other words, the point was that the shape of the bottle had also been used in the Member State of exportation. The problem was therefore how to reconcile user of an indirect indication of national provenance with concurrent user of an indirect indication of foreign provenance. That situation is not comparable to the use of names of Spanish towns by French undertakings, which raises the problem of the protection in one State of the names of another State.

*The legitimacy of extending the rules applicable in the State of origin to the State in which protection is sought*

35  LOR and Confiserie du Tech further maintain that the names 'Touron Alicante' and 'Touron Jijona' are generic names of types of products and are no longer indicative of a particular geographical provenance.

36  That argument must be understood as meaning that, by reason of Article 30 of the Treaty, the Convention could not prohibit the use in France of a Spanish name which had become generic in France. The problem is therefore whether it is

contrary to the free movement of goods for a bilateral agreement between two Member States to render applicable, by derogation from the principle of territoriality, the law of the country of origin instead of that of the State in which protection is sought. That is the problem which it is now necessary to consider.

37  The aim of the Convention is to prevent the producers of a Contracting State from using the geographical names of another State, thereby taking advantage of the reputation attaching to the products of the undertakings established in the regions or places indicated by those names. Such an objective, intended to ensure fair competition, may be regarded as falling within the sphere of the protection of industrial and commercial property within the meaning of Article 36, provided that the names in question have not, either at the time of the entry into force of that Convention or subsequently, become generic in the country of origin.

38  Accordingly, where the protection afforded by a State to names indicating regions or places in its territory is justified under Article 36 of the Treaty, that provision does not preclude such protection from being extended to the territory of another Member State.

39  Having regard to the foregoing considerations, the reply to the national court must be that Articles 30 and 36 of the Treaty do not preclude the application of rules laid down by a bilateral convention between Member States on the protection of indications of provenance and designations of origin, such as the Franco-Spanish Convention of 27 June 1973, provided that the protected names have not, either at the time of the entry into force of that Convention or subsequently, become generic in the country of origin.

Costs

40  The costs incurred by the German and Spanish Governments, the United Kingdom and the Commission of the European Communities, which have submitted observations to the Court, are not recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the proceedings pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT,

in answer to the questions referred to it by the Cour d'Appel, Montpellier, by judgment of 6 November 1990, hereby rules:

Articles 30 and 36 of the Treaty do not preclude the application of rules laid down by a bilateral convention between Member States on the protection of indications of provenance and designations of origin, such as the Franco-Spanish Convention of 27 June 1973, provided that the protected names have not, either at the time of the entry into force of that Convention or subsequently, become generic in the country of origin.

| Due | Kakouris | Rodríguez Iglesias | Zuleeg |
|---|---|---|---|
| | Mancini | Joliet | Schockweiler |
| Moitinho de Almeida | Grévisse | Diez de Velasco | Kapteyn |

Delivered in open court in Luxembourg on 10 November 1992.

J.-G. Giraud                                                                                              O. Due

Registrar                                                                                                  President