# EXHIBIT 19

JUDGMENT OF THE COURT
OF 5 OCTOBER 1978 [1]


Institut National d'Assurance Maladie-Invalidité
and Union Nationale des Fédérations Mutualistes Neutres
v Antonio Viola
(preliminary ruling requested
by the Cour du Travail, Mons)

"Invalidity pension"

Case 26/78

*Social security for migrant workers — Benefits — Overlapping — National legislation — Rules against overlapping — Application — Conditions*
*(Regulation No 3 of the Council, Art. 11 (2))*

1. The restrictions referred to in Article 11 (2) of Regulation No 3 apply to insured persons only as regards benefits acquired by applying Regulations Nos 3 and 4.

2. If the application of the relevant national legislation is less favourable than that of the system of aggregation and apportionment, the latter system must be applied.

In Case 26/78

REFERENCE to the Court pursuant to Article 177 of the EEC Treaty by the Cour du Travail (Labour Court), Mons, for a preliminary ruling in the proceedings pending before that court between

INSTITUT NATIONAL D'ASSURANCE MALADIE-INVALIDITÉ, Brussels, and

UNION NATIONALE DES FÉDÉRATIONS MUTUALISTES NEUTRES, Brussels, on the one hand

and

ANTONIO VIOLA, Havré (Belgium), on the other,

on the interpretation of Article 11 of Regulation No 3 and Article 9 of Regulation No 4 (on social security for migrant workers),

1 — Language of the Case: French.

JUDGMENT OF 5. 10. 1978 — CASE 26/78

THE COURT

composed of: H. Kutscher, President, M. Sørensen and G. Bosco (Presidents of Chambers), J. Mertens de Wilmars, P. Pescatore, A. O'Keeffe and A. Touffait, Judges,

Advocate General: J.-P. Warner
Registrar: A. Van Houtte

gives the following

# JUDGMENT

## Facts and Issues

The facts, the procedure and the observations submitted pursuant to Article 20 of the Protocol on the Statute of the Court of Justice of the EEC may be summarized as follows:

I — Facts and written procedure

Mr Viola, an Italian national, worked in Germany for an unspecified period, in Italy from 1930 to 1945 and thereafter in Belgium. He fell ill in Belgium in 1960 and, as from 1961, he was awarded a Belgian invalidity pension under Belgian legislation alone. As from 1 June 1961 an apportioned Italian invalidity pension was also granted to Mr Viola by the competent Italian social security institution the Istituto Nazionale della Previdenza Sociale (the National Social Security Institution, hereinafter referred to as "the INPS"). The apportioned pension was calculated in accordance with the provisions of Regulation No 3. The German institutions on the other hand in 1970 refused to grant to Mr Viola an invalidity pension in respect of his previous employment in Germany.

When they were informed of the award of the Italian pension the competent Belgian institutions, the Institut National d'Assurance Maladie-Invalidité (National Institute for Sickness and Invalidity Insurance, hereinafter referred to as "INAMI") and the Union Nationale des Fédérations Mutualistes Neutres (National Union of Unaffiliated Mutual Insurance Federations), having regard to the Belgian legislation, in particular Article 70 (2) of the Law of 9 October 1963 on the establishment and organization of a scheme of compulsory insurance against sickness and invalidity, raised the issue of the overlapping of benefits.

By judgment of 25 June 1976 the Cour du Travail (Labour Court), Mons, ruled that Mr Viola could not receive both the Belgian allowances for incapacity for work and the invalidity pension paid by the Italian authorities. The Cour du Travail ordered however that the proceedings be reopened in order to enable the parties to determine the

amounts paid by the Italian authorities to Mr Viola from 1 May 1969 to 30 April 1971.

Finding that the judgment of 25 June 1976 did not specify what was meant by "invalidity pension" within the meaning of the Italian legislation and that it was necessary to know whether, for the application of the Belgian rules against the overlapping of benefits in order to determine the amount of the Italian benefit recoverable from Mr Viola by the Belgian insurance institution, the pension supplement for a dependent spouse und the annual supplement granted at Christmas under the Italian legislation were an intergral part of the invalidity pension the Cour du Travail, Mons, by judgment of 10 February 1978, decided to stay the proceedings and to refer the following questions to the Court of Justice for a preliminary ruling:

1. Does the supplementary allowance for a dependent spouse granted by the Italian legislation in force between 1 May 1969 and 30 April 1971 form an integral part of the Italian invalidity pension for the purpose of applying the rules about overlapping benefits laid down in Article 11 of Regulation No 3 and Article 9 of Regulation No 4?

2. Should the payment of a "13th month" made to the respondent by the INPS in 1969 and 1970, under the Italian legislation of 4 April 1952, be treated as part of the pension for the purpose of applying the rules about overlapping benefits laid down in European Regulations No 3 and No 4?

The order of the Cour du Travail was received at the Court of Justice on 2 March 1978.

Upon hearing the report of the Judge-Rapporteur and the views of the Advocate General, the Court decided to open the oral procedure without any preparatory inquiry.

II — Summary of the written observations submitted to the Court pursuant to Article 20 of the Protocol on the Statute of the Court of Justice of the EEC

A — *Observations submitted by INAMI*

In pursuance of Italian Law No 903 of 21 July 1965 providing for the grant of a supplement of 10 % of the basic pension for a dependent spouse to persons in receipt of invalidity and old-age pensions, the INPS always informed the competent Belgian institution that the supplementary amount was a part of the pension itself. From the time of the amendment made by Italian Law No 153 of 30 April 1969 the supplement was granted on a fixed basis independently of the basic pension and the INPS contends that the supplement should no longer be taken into consideration in the amount of the pension but that it has become a benefit analogous to the supplement granted for children and should therefor be treated in the same way as family allowances within the meaning of Article 42 (2) of Regulation No 3.

In the view of INAMI the Law of 30 April 1969 is no more than an amendment which affects only the way in which the amount of the supplement is fixed. It is by no means intended to alter the actual nature of the increase and to allow it to be treated in the same way as family allowances.

The supplement to the pension for a dependent spouse is not referred to in the provisions of Article 42 of Regulation No 3 concerning family allowances on which no argument can be based for treating it in the same manner.

Article 3 of Italian Law No 218 of 4 April 1952 provides that "pensions shall be *increased*" by an amount equal to one twelfth of the annual amount, to be paid at Christmas. Under Article 34 (2)

of Regulation No 4 the competent Italian institution must inform the Belgian scrutineer institution of the amount of the Italian pension to which the person concerned is entitled and, in the case of Mr Viola as in other cases, the INPS always notified to INAMI the annual amounts of pension amounting to 13 times the monthly sum. That is moreover the official point of view of the INPS as expressed in the circulars of its general management on the entry into force of Regulation No 1408/71.

B — *Observations submitted by Mr Viola*

Mr Viola claimed the invalidity insurance benefits not for an incapacity which was or could be covered by the Italian legislation but for a risk which materialized in Belgium and which entitled him to the allowances laid down by the Law of 9 August 1963 to the exclusion of any direct or indirect intervention by any other legislation. For its part the Italian invalidity pension is the counterpart, at the time when the risk materializes, for the contributions paid by the worker and his employer. Even if it is accepted that the latter pension constitutes compensation for incapacity within the meaning of Article 70 (2) of the Belgian law it would be absurd to claim that it is for the Italian legislation to provide compensation for incapacity which arose in Belgium in 1960 whereas Mr Viola ceased to work in Italy in 1945.

Mr Viola maintains that the supplement to the pension for a dependent spouse corresponds to family allowances and should therefore not be taken into consideration for the application of the Belgian rules against the overlapping of benefits. Indeed:

— The conditions for the grant of the two benefits are identical and the Italian Law of 30 April 1969 makes express reference to the provisions applying in respect of family allowances

— The amount of the pension supplement is identical to that of family allowances and like those allowances is awarded in 12 monthly instalments.

— The Italian law states that the grant of a pension supplement excludes double entitlement to family allowances for the same persons.

— The principle of treating the pension supplement for a dependent spouse in the same way as family allowances which is expressly contained in the Italian legislation is indirectly confirmed by the provisions of Article 1 (f) and (u) (i) of Regulation No 1408/71.

— Family expenses for a migrant worker are greater than for a national worker and it would be abnormal to deprive him of a benefit which might serve to compensate in part for these additional charges.

— The special Belgian scheme for miners, the FNROM, at first took the same view as the Italian INPS namely that the pension supplement for a dependent spouse was not to be taken into consideration in reducing the Belgian pension. Subsequently following representations from the Belgian Minister for Social Security and the view expressed by the Administrative Commission on Social Security for Migrant Workers it had changed its point of view.

The fact that the "13th month" of the pension forms an integral part of the pension and is paid at the same time as the pension does not affect its nature as an additional benefit paid at a specific time of the year. The Belgian legislation makes no provision for the grant of a "13th month" of a pension. To claim that in application of the rules against the overlapping of benefits the "13th month" of a pension should be deducted from the Belgian pension is tantamount to saying that a Member

State is not permitted to grant benefits which have no equivalent in another Member State.

In conclusion Mr Viola contends that neither the pension supplement for a dependent spouse nor the "13th month" of a pension should be taken into consideration in applying the rules against the overlapping of benefits on which an institution of a Member State may rely pursuant to Article 11 (2) of Regulation No 3.

### C — Observations submitted by the Belgian Government

In a judgment of 20 June 1972 with regard to the application of Article 13 (3) of the Royal Decree of 28 May 1958 on national rules against the overlapping of benefits with regard to the invalidity pension under the miners' scheme the Tribunal du Travail, Charleroi, held that the supplement granted by Italian law for a dependent spouse was an integral part of the invalidity pension. In the view of the Belgian Government that interpretation holds good for the application of the provisions at issue in the main action.

By a judgment of 10 January 1974 the Cour du Travail, Brussels, held that the "13th month" granted by the Italian law was not a "gratuity" but a component of the Italian pension which had to be taken into consideration in calculating the foreign share of the benefits for the correct application of Community regulations. In the view of the Belgian Government that judgment should also be taken into consideration in giving an affirmative answer to the second question.

### D — Observations submitted by the Commission

Before replying to the questions raised by the Belgian court, the Commission thinks it appropriate to inquire whether the Belgian institution had the power to apply the national provision against the overlapping of benefits in the light of Article 11 of Regulation No 3. It was this problem which formed the subject of the judgment in Case 83/77 (Naselli v Caisse Auxiliaire d'Assurance Maladie-Invalidité [1978] ECR 683) in which the Court of Justice ruled that the restrictions referred to in Article 11 (2) apply to insured persons only in so far as the benefits acquired by applying Regulations Nos 3 and 4 are concerned and that no other provision of Regulation No 3 precludes the application to benefits acquired by virtue of national legislation alone of national rules against the overlapping of benefits. On the other hand the Court of Justice held that that regulation contained no provision expressly authorizing the application of these national rules against the overlapping of benefits: it is for the national court to consider whether Article 70 (2) of the Belgian Law of 9 August 1963 makes possible the reduction of a Belgian pension by taking account of benefits acquired under the system of another Member State.

It appears therefore that the questions raised by the national court do not arise in the context of the application of the rules about overlapping contained in Article 11 of Regulation No 3 and Article 9 of Regulation No 4. An answer can be given to the questions raised only if Regulation No 3 is applicable and subject to the view of the Court that it does not have jurisdiction to "pronounce on a provision of national law with regard to a Community rule" but that "it can however provide the national court with the factors of interpretation depending on Community law which might be useful to it in evaluating the effects of such provision" (Case 63/76 Inzirillo v Caisse d'Allocations Familiales de Lyon [1976] ECR 2057).

In the light of the wording of Article 1 (s) of Regulation No 3 the supplement

for a dependent spouse falls within the definition of the term "pension". However, according to the relevant Italian legislation since the Law of 30 April 1969 the supplement has been awarded on a fixed basis, that is to say independently of the duration of insurance periods or the amount of the payments effected and it is of an amount equal to that of the family allowances to which the said supplement is assimilated by the Italian body, the INPS.

The Commission puts forward the following arguments in answer to the submissions made on behalf of the INPS before the national court:

— The benefit granted by the Law of 30 April 1969 serves the same aim (the term "pension supplements" was retained) as that granted under the previous law. It is consequently difficult to accept that that benefit has become comparable to family allowances because it is now granted on a fixed basis.

— The Law of 30 April 1969 is not contained in the part of the Italian Code relating to family allowances but in that relating to general invalidity.

— Whilst Article 42 (2) of Regulation No 3 refers to supplements to pensions it must be noted that the treatment of them in the same way as family allowances extends only to increases or supplements to pensions or benefits in respect of children; supplements for a dependent spouse, although they may be of the same amount, are for their part still covered by the provisions of the regulation concerning pensions.

It is evident from the wording of the Italian Law of 4 April 1952 that the supplement to the pension paid at Christmas is directly linked to the granting of a pension and the terminology used ("pensions shall be increased") shows that it is not a new separate benefit.

Consequently the Commission takes the view that for the purpose of applying Regulation No 3 benefits granted by the legislation of a Member State to a person entitled to a pension for a dependent spouse by way of a supplement payable at Christmas which are inseparable from the payment of the pension constitute supplements within the meaning of Article 1 (s) of Regulation No 3 and form an integral part of the pension.

INAMI, represented by A. Wattier, of the Mons Bar, Mr Viola, represented by D. Rossini, Director of the welfare organization "Patronato ACLI", and the Commission of the European Communities, represented by its Legal Adviser, A. Toledano-Laredo, acting as Agent, presented oral argument at the hearing on 6 July 1978.

The Advocate General delivered his opinion at the hearing on 20 September 1978.

# Decision

I  By a judgment of 10 February 1978 which was received at the Court of Justice on 2 March 1978 the Cour du Travail, Mons, pursuant to Article 177 of the EEC Treaty, has submitted two questions on the interpretation of Article 11 of Regulation No 3 of the Council of 25 September 1958

INAMI v VIOLA

(Journal Officiel 1958, p. 561) and of Article 9 of Regulation No 4 of the Council of 3 December 1958 (Journal Officiel 1958, p. 597) on social security for migrant workers.

2   The questions arose in the context of a case relating to the calculation by the competent Belgian institution of the invalidity pension of an Italian national, the plaintiff in the main action, who has worked in Italy and in Belgium.

3   In Belgium the worker satisfied all the conditions laid down by national legislation for acquisition of the right to an invalidity pension under the compulsory insurance scheme against sickness and invalidity without its being necessary for him to rely on periods completed in another Member State.

4   On the other hand for the acquisition of a right to benefits in Italy he had to rely on the provisions of Regulation No 3 and in calculating those benefits the periods actually completed in the two Member States were aggregated and the Italian benefits were apportioned.

5   On being informed of the award of apportioned Italian benefits the Belgian institution, having regard to the rules against the aggregation of benefits contained in Article 70 (2) of the Belgian Law of 9 August 1963 on the establishment and organization of a scheme of compulsory insurance against sickness and invalidity, raised the problem of the overlapping of the benefits.

6   On appeal the case was brought before the Cour du Travail, Mons, which, by a first judgment of 25 June 1976, ruled that Mr Viola could not receive the Belgian benefits for incapacity for work in addition to the invalidity pension paid by the Italian authorities but that the right to claim a refund of the sums paid before 1 May 1969 was time-barred; it therefore ordered that the proceedings be reopened to enable the parties to the main action to determine the amount of the sums paid to Mr Viola by the Italian institution from 1 May 1969 to 30 April 1971.

7   The judgment of 25 June 1976 left unanswered the question whether, for the application of the Belgian rules against the overlapping of benefits, the pension supplements for a dependent spouse and the annual supplement awarded at Christmas time, provided for by the Italian legislation, were an

integral part of the invalidity pension and in order to resolve this problem the Cour du Travail, Mons, by a second judgment of 10 February 1978, referred the following questions to the Court of Justice for a preliminary ruling:

1. Does the supplementary allowance for a dependent spouse granted by the Italian legislation in force between 1 May 1969 and 30 April 1971 form an integral part of the Italian invalidity pension for the purpose of applying the rules about overlapping benefits laid down in Article 11 of Regulation No 3 and Article 9 of Regulation No 4?

2. Should the payment of a "13th month" made to the respondent by the INPS in 1969 and 1970, under the Italian legislation of 4 April 1952, be treated as part of the pension for the purpose of applying the rules about overlapping benefits laid down in European Regulations No 3 and No 4?

8   According to Article 26 of Regulation No 3, Articles 27 and 28 relating to old-age and death pensions shall apply by analogy to the payment of invalidity benefits when the insured has completed periods under different legislative systems of which at least one is of type B.

9   The regulations in the field of social security have as their basis, their framework and their bounds Articles 48 to 51 of the Treaty, which are intended to secure freedom of movement for workers.

10   From this point of view, Article 51 of the Treaty and Article 27 of Regulation No 3 refer above all to cases in which the legislation of one Member State by itself would not enable an insured person to qualify for the right to benefit because of an insufficient number of periods completed under that legislation.

11   To remedy the situation these provisions provide, for the benefit of a worker who has been successively or alternately subject to the legislation of two or more Member States, for the aggregation of insurance periods completed under the legislation of each of those States.

12   As regards old-age and death pensions, Articles 27 and 28 of Regulation No 3 apply to such a situation, but not when in a State the object sought by Article 51 is attained under national legislation alone.

INAMI v VIOLA

13  The scheme of Articles 27 and 28 thus implies a simultaneous application of those two provisions.

14  As a result, apportionement of benefits may not be made, unless it has been necessary, for the acquisition of the right, to aggregate beforehand the periods completed under different legislative systems, but it may not be used if its effect is to reduce the benefits which the insured person can claim under the legislation of a single State.

15  The same considerations require the application of the same rules when the problem arises of the application by analogy of Articles 27 and 28 to invalidity pensions.

16  As the Court of Justice has already ruled in its judgment of 14 March 1978 in Case 83/77 (*Naselli* v *Caisse Auxiliaire d'Assurance Maladie-Invalidité* [1978] ECR 683) the restrictions referred to in Article 11 (2) of the regulation apply to insured persons only as regards benefits acquired by applying Regulations Nos 3 and 4.

17  On the other hand consideration of the other provisions of Regulation No 3 shows that none of them precludes the application to benefits acquired by virtue of national legislation alone of national rules against the overlapping of benefits.

18  Consequently in a case such as this where the insured is entitled to a pension by virtue of the provisions of his national legislation alone, the national rules against the overlapping of benefits are applicable to him.

19  In applying the rules against the overlapping of benefits, it is for the national court to classify the benefits referred to in the questions raised, in conformity with the applicable national legislation taking account of the rules relating to the conflict of laws and the Community provisions are not relevant.

20  However, in order to ensure that a migrant worker does not lose the benefit of a pension to which he would be entitled under the rules of national

legislation alone the Court of Justice in the *Mancuso* case (Case 140/73 *Sécurité Sociale Paris* v *Mancuso* [1973] 2 ECR 1449) held that in certain cases the rules concerning aggregation and apportionment are not applicable.

21  Accordingly if the provisions of national legislation alone, including the rules against the aggregation of benefits, are less favourable to the insured person than the rules relating to aggregation and apportionment, it is the latter rules which should be applied.

Costs

22  The costs incurred by the Belgian Government and by the Commission of the European Communities, which have submitted observations to the Court, are not recoverable.

23  As these proceedings are, in so far as the parties to the main action are concerned, in the nature of a step in the action pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT

in answer to the questions referred to it by the Court du Travail, Mons, by judgment of 10 February 1978, hereby rules:

    1. In applying the national rules against the overlapping of benefits, it is for the national court to classify the supplement for a dependent spouse and the "13th month" in accordance with the applicable national legislation, regard being had to the rules relating to conflict of laws since the Community provisions are not relevant.

INAMI v VIOLA

2. However, if the application of the relevant national legislation is less favourable than that of the system of aggregation and apportionment, the latter system must be applied.

| Kutscher | Sørensen | Bosco |
| --- | --- | --- |
| Mertens de Wilmars | Pescatore | O'Keeffe | Touffait |

Delivered in open court in Luxembourg on 5 October 1978.

A. Van Houtte

Registrar

H. Kutscher

President

## OPINION OF MR ADVOCATE GENERAL WARNER DELIVERED ON 20 SEPTEMBER 1978

*My Lords,*

This scase comes to the Court by way of a reference for a preliminary ruling by the Cour du Travail of Mons.

Signor Antonio Viola, the respondent in the proceedings before that Court, was born in April 1908. So far as one can discern from the papers, he worked in Italy from 1930 to 1935, in Germany for a short period in 1938 and 1939, and in Belgium from 1947 to 1960. He then fell ill. He still lives in Belgium. In 1961 he became entitled to invalidity pensions in both Belgium and Italy. He has never been entitled to such a pension in Germany.

The amount of pension due to him in Belgium has been the subject of protracted and complex litigation there between himself and the Belgian social security institutions concerned, namely the Institut National d'Assurance Maladie-Invalidité (or "INAMI") and the Union Nationale des Fédérations Mutualistes Neutres (or "UNFMN"). They are the appellants before the Cour du Travail of Mons.

I need not, I think, trouble Your Lordships with all the details of that litigation. The respondent's position under Belgian law was much clarified by a Judgment of the Cour du Travail of Mons dated 25 June 1976, and the issues arising in the litigation were thereby considerably narrowed down.

That Judgment hinged largely on Article 70 (2) of the Belgian statute of 9 August 1963 on sickness and invalidity benefits. (I propose to refer to that statute, for short, as "the Belgian statute of 1963" or simply as "the statute of 1963"). This Court has been concerned with Article 70 (2) of it on at least two previous occasions, namely in Case

1 — Translated from the French.