# EXHIBIT 44



EUROPEAN
COMMISSION

Brussels, 7.7.2023
COM(2023) 447 final

2023/0273 (NLE)

Proposal for a

**COUNCIL DECISION**

**on the withdrawal of the Union from the Energy Charter Treaty**

**EN**                                                                 **EN**

<u>**EXPLANATORY MEMORANDUM**</u>

**1.    SUBJECT MATTER OF THE PROPOSAL**

This proposal concerns the decision to withdraw the Union from the Energy Charter Treaty, in accordance with Article 47 of that treaty.

**2.    CONTEXT OF THE PROPOSAL**

**2.1.    The Energy Charter Treaty**

The Energy Charter Treaty (ECT) is a multilateral trade and investment agreement applicable to the energy sector that was signed in 1994 and entered into force in 1998. The ECT contains provisions on investment protection, trade and transit in energy materials and products, and dispute settlement mechanisms. The ECT also sets up a framework for international cooperation in the energy field between its 54 Contracting Parties. The European Union is a Contracting Party to the ECT[1], together with Euratom, 26 EU Member States (as of 8 May 2023)[2], as well as Japan, Switzerland, Turkey and most countries from the Western Balkans and the former USSR, with the exception of Russia[3] and Belarus[4].

**2.2.    Modernisation of the ECT: outcome of the process and state of play**

In the absence of any substantial update of the ECT since the 1990s, the ECT became increasingly outdated. It also became one of the most litigated investment treaties in the world, with EU Member States being the principle target of claims by investors, most of them based in other EU countries. As a result, a modernisation process was initiated in November 2018. The Energy Charter Conference first approved a list of topics for discussion, chiefly concerning provisions related to investment protection. The EU then proposed the removal of such protection for investments in fossil fuels, in order to bring the ECT in line with the Paris Agreement.

After 15 rounds of multilateral negotiations held between July 2019 and June 2022, an "agreement in principle" to close negotiations was reached at the extraordinary Energy Charter Conference of 24 June 2022, held in Brussels.

The negotiated outcome is considered by the Commission to be in line with the mandate received from the Council.

The revised text of the ECT and its Annexes underwent a legal review and final draft-decisions containing the revised texts and modalities for their entry into force (together referred to as "the modernisation package") were shared on 19 August 2022 with all Contracting Parties – including the EU, Euratom, and all EU Member States that are Contracting Parties to the ECT.

The intention at that time was to list the "modernisation package" for adoption at the 33rd meeting of the Energy Charter Conference on 22 November 2022. To that end, the

---

[1]    Council and Commission Decision 98/181/EC, ECSC, Euratom of 23 September 1997 on the conclusion, by the European Communities, of the Energy Charter Treaty and the Energy Charter Protocol on energy efficiency and related environmental aspects (OJ L 69, 9.3.1998, pp. 1-116).

[2]    All but Italy that unilaterally withdrew in 2015. France, Germany and Poland also initiated a procedure of withdrawal in December 2022, which will lead to their effective exit of the Energy Charter Treaty by December 2023.

[3]    The extraordinary Energy Charter Conference of 24 June 2022 withdrew the observer status of the Russian Federation.

[4]    The extraordinary Energy Charter Conference of 24 June 2022 withdrew the observer status of Belarus and the provisional application of the ECT by Belarus.

**EN**                                          1                                          **EN**

Commission presented proposals for two decisions, under Article 218(9) TFEU and Article 101 of the Euratom Treaty respectively, with a view to establishing the position to be adopted on the Union's behalf and on Euratom's behalf at the 33rd meeting of the Energy Charter Conference. At the same time, the Commission adopted a Communication highlighting the need to eliminate the risk of conflict between the Treaties and the ECT as interpreted by some arbitral tribunals, which have held that the ECT applies to intra-EU disputes. That interpretation, if confirmed by the courts of a third country, would de facto turn into a legal conflict because arbitration awards violating EU law would circulate in the legal orders of third countries. The proposals put before the Council suggested that the EU and Euratom support the adoption of the "modernisation package" at the 33rd meeting of the Energy Charter Conference. However, these proposals were not adopted by the Council, due to the abstention of a blocking minority of four Member States (Germany, France, Spain and the Netherlands) at the COREPER meeting of 18 November 2022. As a result, the "modernisation package" was taken off the agenda of the 33rd meeting of the Energy Charter Conference and the modernisation of the Energy Charter Treaty was not adopted. In the meantime, the current, unmodernised Treaty continues to apply to the EU, Euratom, and all Member States that are party to the ECT in their relations with other contracting parties. In addition, proceedings to obtain and enforce awards issued by tribunals purportedly established pursuant to Article 26 ECT in intra-EU disputes continue unabated.

## 2.3.    Current situation and suggested way forward

In the absence of EU and Euratom decisions, the EU and Euratom cannot take part in a vote on the adoption of the modernisation package at a meeting of the Energy Charter Conference. As a rule, when voting at an ECT Conference, the Union has a number of votes equal to the number of its member states which are Contracting Parties to the ECT. Without the participation of the EU and Euratom in such a vote, the voting quorum in the Conference is not met, and the modernisation package cannot be adopted.

There is no qualified majority in the Council for an EU or Euratom decision allowing the EU and Euratom to take part in the vote at a meeting of the Energy Charter Conference by supporting the adoption of the modernisation package.

In addition, notwithstanding the issue of the adoption of the modernisation package by the Energy Charter Conference, the entry into force or provisional application of a modernised Treaty would require the consent of the European Parliament, which has clearly stated that it does not support the reform of the Treaty and calls on the EU and Member States to organise a coordinated withdrawal from the ECT[5].

**Consequently, there is no legal and/or institutional avenue for the modernisation of the ECT to be adopted and produce its effects, a condition for the EU to remain party to the Treaty.**

Remaining a Contracting Party to the current, unmodernised ECT is not an option for the EU or its Member States, as the current, unmodernised Treaty is not in line with the EU's investment policy and law and with the EU's energy and climate goals.

The provisions of the Treaty as regards investment protection, including the investor-to-State dispute settlement (ISDS) mechanism, are not in line with the EU approach to investment protection. In particular, the unmodernised ECT is incompatible with the principle of autonomy of Union law, as it does not include some of the safeguards identified by the Court in the CETA opinion in order to conclude that the arbitration awards would not have the

---

[5]    Resolution of the European Parliament of 24 November 2022 on the Energy Charter Treaty modernisation

"effect of preventing the EU institutions from operating in accordance with the EU constitutional framework".[6]

In addition, the protection granted to fossil fuels, under the conditions described above and for an unlimited period of time, does not fit with EU objectives as defined in the European Green Deal, the REPowerEU Plan or the Climate Law – namely: to accelerate the shift away from fossil fuels and towards renewable energy, to achieve a greater energy independence, ensure the EU's energy security, and, not least, deliver on the commitment to cut emissions by at least 55% by 2030 and to reach climate neutrality by 2050.

**As a result, the withdrawal of the EU from the ECT is the only available solution.**

3.     LEGAL BASIS

**3.1.     Nature and context of the proposal**

The Commission proposal concerns a Council decision withdrawing the Union from the Energy Charter Treaty pursuant to Article 47.1 of that treaty.

The adoption of such a decision by the Council, after obtaining the consent of the European Parliament pursuant to Article 218(6)(a)(v) of the TFEU, would enable the Commission to give written notification to the Depositary of the Energy Charter Treaty (i.e. the Republic of Portugal) of its withdrawal from the Treaty pursuant to Article 47.1 of the ECT.

Pursuant to Article 47.2 of the ECT, the withdrawal of the Union shall take effect upon the expiry of one year after the date of the receipt of the notification by the Depositary, or on such later date as may be specified in the notification of withdrawal.

Pursuant to Article 47.3 of the ECT, the provisions of the ECT shall continue to apply to investments made in the Union by investors of other Contracting Parties, or in the other Contracting Parties by investors of the Union, for a period of 20 years as of the date of the Union withdrawal from the ECT. Article 47.3 of the ECT would have **no impact** on intra-EU relations, to which the ECT has never, does not and will never apply, including its Article 47.3. However, as noted in the Communication referred to above, there is a risk of legal conflict that must be eliminated. The Commission remains of the view that the appropriate response is to adopt an instrument that is a 'subsequent agreement between the parties regarding the interpretation of the treaty or the application of its provisions' within the meaning of Article 31(3)(a) of the Vienna Convention on the Law of Treaties (VCLT), among the Member States, the Union and EURATOM . The Commission will therefore continue the negotiations of the text of such an agreement which, once they are completed, would be the subject of a proposal for the conclusion of the subsequent agreement on behalf of the Union and of EURATOM. The codification of the interpretation of the EU and its Member States in a separate treaty (something that is possible because of the bilateral nature of the obligations) is all the more pressing in the absence of the ECT modernisation that would have embedded in the text itself and via a "for greater certainty" clause, the understanding of all Contracting Parties that its Article 26 does not apply intra-EU.

**3.2.     Procedural legal basis**

*3.2.1.     Principles*

A decision of the Union to terminate and withdraw from an international agreement must be adopted on the same legal basis, and following the same procedure, as a decision to conclude that agreement on behalf of the Union. Therefore, the Union's termination of, and withdrawal

---

[6]     Opinion 1/17, paras. 152-161.

from, the Energy Charter Treaty requires the adoption of a Council decision based on Article 218(6)(a)(v) of the TFEU.

Pursuant to Article 218(6)(a)(v) of the TFEU, '*The Council, on a proposal by the negotiator, shall adopt a decision concluding the agreement. Except where agreements relate exclusively to the common foreign and security policy, the Council shall adopt the decision concluding the agreement: (a) after obtaining the consent of the European Parliament in the following cases: [...] (v) agreements covering fields to which either the ordinary legislative procedure applies, or the special legislative procedure where consent by the European Parliament is required.*'

### 3.2.2.    Application to the present case

The Energy Charter Treaty is not an agreement that relates exclusively to the common foreign and security policy. The Energy Charter Treaty is instead an agreement covering subjects to which the ordinary legislative procedure applies. Therefore, the conclusion of the Energy Charter Treaty by the Union would require a Council decision after obtaining the consent of the European Parliament pursuant to Article 218(6)(a)(v) of the TFEU.

A decision of the Union to terminate and withdraw from the Energy Charter Treaty must be adopted on the same legal basis, and following the same procedure, as a decision to conclude that agreement on behalf of the Union

Therefore, the procedural legal basis for the proposed decision is Article 218(6)(a)(v) of the TFEU.

## 3.3.    Substantive legal basis

### 3.3.1.    Principles

The substantive legal basis for a decision under Article 218(6)(a)(v) of the TFEU depends primarily on the objective and content of the envisaged act in respect of which a position is taken on the Union's behalf. If the envisaged act pursues two aims or has two components and if one of those aims or components is identifiable as the main one, whereas the other is merely incidental, the decision under Article 218(6)(a) of the TFEU must be founded on a single substantive legal basis, namely that required by the main or predominant aim or component.

With regard to an envisaged act that simultaneously pursues a number of objectives, or that has several components which are inseparably linked without one being incidental to the other, the substantive legal basis of a decision under Article 218(6)(a) of the TFEU will have to include, exceptionally, the various corresponding legal bases.

### 3.3.2.    Application to the present case

The envisaged act pursues objectives and has components in the area of energy and the common commercial policy. These elements of the envisaged act are inseparably linked without one being incidental to the other.

Therefore, the substantive legal basis of the proposed decision comprises the following provisions: Articles 194(2) and 207(4), first subparagraph TFEU.

## 3.4.    Conclusion

The legal basis of the proposed decision should be Articles 194(2) and 207(4), first subparagraph, TFEU, in conjunction with Article 218(6)(a)(v) of the TFEU.

**EN**

**EN**

2023/0273 (NLE)

Proposal for a

## COUNCIL DECISION

### on the withdrawal of the Union from the Energy Charter Treaty

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty on the Functioning of the European Union, and in particular Articles 194(2) and 207(4), first subparagraph, in conjunction with Article 218(6), second subparagraph, point (a)(v), thereof,

Having regard to the proposal from the European Commission,

Having regard to the consent of the European Parliament[7],

Whereas:

(1)     The Energy Charter Treaty ('the Agreement') was concluded by the Union by Council and Commission Decision 98/181/EC, ECSC, Euratom[8] and entered into force on 16 April 1998.

(2)     In the absence of any substantial update of the Agreement since the 1990s, the Agreement became increasingly outdated.

(3)     In 2019, the Contracting Parties to the Agreement engaged in negotiations aimed at modernising the Agreement in order to bring it into alignment with the principles of the Paris Agreement[9], the requirements of sustainable development and the fight against climate change, as well as with modern standards of investment protection.

(4)     The Contracting Parties concluded the negotiations on 24 June 2022. The negotiated outcome was meant to the adopted at the 33rd meeting of the Energy Charter Conference on 22 November 2022.

(5)     Ahead of the meeting of the Conference, the Union was unable to find a common position on the modernisation of the Agreement.

(6)     In the absence of a Union position, the adoption of the modernised Agreement by the Energy Charter Conference is impossible. The current, unmodernised Agreement continues to apply to the Union, in spite of the fact that it is not in line with the Union's investment policy and law, including in particular the principle of autonomy of Union law, and with the Union's energy and climate goals

(7)     With no alternative available, it is therefore necessary for the Union to withdraw from the Agreement.

(8)     Pursuant to Article 47(1) of the Agreement, a Contracting Party can give written notification of its withdrawal from the Agreement to the Depository of the Agreement,

---

[7]     OJ C …, …, p. … / Consent of … (not yet published in the Official Journal).
[8]     Council and Commission Decision 98/181/EC, ECSC, Euratom of 23 September 1997 on the conclusion, by the European Communities, of the Energy Charter Treaty and the Energy Charter Protocol on energy efficiency and related environmental aspects (OJ L 69, 9.3.1998, p. 1).
[9]     OJ L 282, 19.10.2016, p. 4.

**EN**                                                                           **EN**

namely the Portuguese Republic *[See https://publications.europa.eu/code/en/en-370100.htm]*. Pursuant to Article 47(2) of the Agreement, such a withdrawal takes effect upon the expiry of one year after the date of the receipt of the notification by the Depositary.

HAS ADOPTED THIS DECISION:

*Article 1*

The Union shall withdraw from the Energy Charter Treaty.

*Article 2*

The Commission shall, on behalf of the Union, give written notification in accordance with Article 47(1) of the Energy Charter Treaty, of the withdrawal of the Union from the Energy Charter Treaty.

Done at Brussels,

*For the Council*
*The President*

**EN** **EN**