# EXHIBIT 50

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



[Emblem]

# FEDERAL COURT OF JUSTICE

## JUDGMENT

I ZB 16/21

of

17 November 2021

in the proceedings

on the jurisdiction of an arbitral tribunal

ECLI:DE:BGH:2021:171121BIZB16.21.0

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 2 -

On 17 November 2021, the 1st Civil Senate comprised of Presiding Justice Dr. Koch, and Justices Dr. Löffler, Dr. Schwanke, Odörfer and Wille

decided as follows:

> The appeal against the decision of the Frankfurt am Main Higher Regional Court, 26th Civil Senate, of 11 February 2021 is rejected as inadmissible at the costs of the Respondents.
>
> Value of the dispute: € 5,200,000,

Reasons:

1    I. The Applicant is the Republic of Croatia. Respondent 1 is an Austrian bank incorporated as a joint-stock company (Aktiengesellschaft) under Austrian law. It is the sole shareholder of Respondent 2, a Croatian bank incorporated as a joint-stock company under Croatian law. Both Respondents provide financial services on the Croatian market.

2    On 19 February 1997, the Republic of Austria and the Applicant concluded an agreement on the promotion and protection of investments ("Bilateral Investment Treaty", hereinafter: the BIT). Among other things, it contains the following provisions:

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 3 -

### Article 9
### Settlement of Investment Disputes

(1) Any dispute arising out of an investment, between a Contracting Party and an investor of the other Contracting Party shall, as far as possible, be settled amicably between the parties to the dispute.

(2) If a dispute according to paragraph 1 of this Article cannot be settled within three months from a written notification of sufficiently detailed claims, the dispute shall upon the request of the Party or of the investor of the other Contracting Party be subject to the following procedures:

…

b) to arbitration by three arbitrators in accordance with the UNCITRAL arbitration rules, as amended by the last amendment accepted by both Contracting Parties at the time of the request for initiation of the arbitration procedure. In case of arbitration, each Contracting Party, by this Agreement irrevocably consents in advance, even in the absence of an individual arbitral agreement between the Contracting Party and the investor, to submit any such dispute to the tribunal mentioned.

(3) The award shall be final and binding; it shall be executed according to national law; each Contracting Party shall ensure the recognition and enforcement of the arbitral award in accordance with its relevant laws and regulations.

…

### Article 11
### Application of the Agreement

(1) The present Agreement shall apply to investments, made in the territory of one of the Contracting Parties in accordance with its legislation, by investors of the other Contracting Party prior to as well as after the entry into force of the present Agreement ...

(2) The Contracting Parties are not bound by the present Agreement insofar as it is incompatible with the legal acquis of the European Union (EU) in force at any given time.

…

3       The applicant has been a Member State of the European Union since 1 July 2013.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 4 -

4        The arbitration concerns a claim for damages brought by the Respondents, which is based on the Applicant's amendment of Croatian insolvency law and the allegation of systematic denial of justice by Croatian courts.

5        By letter dated 1 April 2020 the Applicant accepted the Respondents' offer of Frankfurt am Main as the place of the arbitration, having previously disputed the jurisdiction of an arbitral tribunal vis-à-vis the Respondents by letter of 21 January 2020, and again immediately after the initiation of the arbitration proceedings.

6        The Applicant requested the Higher Regional Court to determine that the arbitration proceedings initiated against it by the Respondents by Notice of Arbitration of 14 February 2020 were inadmissible. The Higher Regional Court granted this request (OLG Frankfurt am Main, decision of 11 February 2021 - 26 SchH 2/20, juris). By their present appeal against the decision (which the Applicants ask the court to reject) the Respondents are continuing to pursue their objective of legal protection aimed at having the application dismissed.

7        II. The Higher Regional Court granted the request to determine that the arbitral tribunal lacked jurisdiction because, in accordance with the case law of the Court of Justice of the European Union (judgment of 6 March 2018 - C-284/16, SchiedsVZ 2018, 186 - Achmea; followed by Federal Court of Justice, judgment of 31 October 2018 - I ZB 2/15, SchiedsVZ 2019, 46), Article 9(2) of the BIT conflicted with EU law and therefore could not form the basis of an obligation of the Applicant to arbitrate. The possibility that an arbitral tribunal constituted under Article 9(2) of the BIT would have to apply EU law

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 5 -

was held to be readily apparent from the fact that the application of EU law in an investment dispute could not be excluded because Member State law could play a role in the assessment of any investment measure, generally at least as a threshold question or an interpretation criterion. The arbitral tribunal has no power to submit a request for a preliminary ruling to the Court of Justice of the European Union under Article 267 TFEU. The possibility for such preliminary requests to be submitted by a state court in the course of the review of the arbitral award was held to be insufficient because such review is contingent on the choice of arbitral seat and the national law applicable at that seat. The court further dismissed the relevance of the question whether, under any seat-dependent national law, and in particular under the Section 1050 ZPO, the arbitral tribunal has the option of having a question of interpretation of EU law submitted to the Court of Justice of the European Union via a State court with the power to make such references. The consequence of the incompatibility of Article 9(2) of the BIT with EU law is the absence of a valid offer on the part of the Applicant to conclude an arbitration agreement. Nor could a valid conclusion of an arbitration agreement be derived from the principle of good faith.

8        III. The Applicants' appeal against this judgment is an available remedy (Section 574(1)(1)(1), Section 1065(1)(1), Section 1062(1)(1)(2), first condition, Section 1032(2) ZPO); however, such appeal is inadmissible, given that the case is neither one of fundamental significance, nor requires a decision of the Federal Court of Justice for the purposes of further development of the law or to ensure uniform adjudication (Section 574(2) ZPO).

9

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 6 -

1. The appeal's reliance on the uniform adjudication admissibility ground (Section 574(2)(2) Condition 2 ZPO) is to no avail. The Higher Regional Court has applied the correct legal standards.

10          a) According to the case law of the Court of Justice of the European Union, Articles 267 and 344 TFEU must be interpreted as precluding a provision in an international agreement concluded between Member States, under which an investor from one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an arbitral tribunal whose jurisdiction that Member State has undertaken to accept (ECJ, SchiedsVZ 2018, 186 para 60 - Achmea; ECJ, Judgment of 26 October 2021 - C-109/20, EUR-Lex para 44 - PL Holdings). The reason given by the Court of Justice is that an international agreement cannot affect the allocation of powers fixed by the Treaties or, consequently, the autonomy of the EU legal system, observance of which is ensured by the Court. That principle is enshrined in particular in Article 344 TFEU, under which the Member States undertake not to submit a dispute concerning the interpretation or application of the Treaties to any method of settlement other than those provided for in the Treaties. Based on mutual trust, the Member States are obliged, by reason *inter alia* of the principle of sincere cooperation set out in the first subparagraph of Article 4(3) TEU, to ensure in their respective territories the application of and respect for EU law, and to take for those purposes any appropriate measure, whether general or particular, to ensure fulfilment of the obligations arising out of the Treaties or resulting from the acts of the institutions of the EU. The Treaties have established a judicial system in the context of which, in accordance with Article 19 TEU, it is for the national courts and the Court of Justice to ensure the full application of EU law in all Member States and to ensure judicial protection of the rights of individuals under that law. The judicial system as thus conceived has as its keystone the preliminary ruling procedure provided for in Article 267 TFEU, which, by setting up a

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 7 -

dialogue between one court and another, specifically between the Court of Justice and the courts of the Member States, has the object of securing uniform interpretation of EU law (see ECJ, SchiedsVZ 2018, 186 paras 32-37 - Achmea; ECJ, Opinion of 30 April 2019- 1/17, EuGRZ 2019, 191 paras 109-111 - EU-Canada CETA Agreement; Judgment of 2 September 2021 - C-741/19, RIW 2021, 661 paras 42-46 - Komstroy).

11        According to the case law of the Court of Justice of the European Union, whether the possibility to call upon an arbitral tribunal offered to an investor in an investment protection agreement between Member States is compatible with EU law depends, firstly, on whether the disputes which such tribunal is called on to resolve are liable to relate to the interpretation or application of EU law. If the answer is yes, it depends, secondly, on whether the arbitral tribunal can be regarded as a court entitled to refer within the meaning of Article 267 TFEU, or, thirdly, whether the arbitral award is subject to review by a court of a Member State, ensuring that the questions of EU law which the tribunal may have to address can be submitted to the Court of Justice of the European Union by means of a reference for a preliminary ruling (see ECJ, SchiedsVZ 2018, 186 paras 39, 43 and 50 - Achmea; RIW 2021, 661 paras 48, 51 and 55 - Komstroy).

12        b) The Higher Regional Court proceeded based on these principles and came to the legally correct conclusion that the disputes over which an arbitral tribunal is called upon under Article 9(2) of the BIT to decide were liable to relate to the interpretation or application of EU law.

13        aa) The Higher Regional Court has stated that the *Achmea* judgment of the Court of Justice of the European Union (SchiedsVZ 2018, 186) had significance extending beyond the individual case to all intra-EU BITs. It held that the Court of Justice considered that the submission of disputes to an arbitral tribunal

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


- 8 -

as provided in an intra-EU BIT had an adverse effect on the principle of mutual trust and the autonomy of EU law if the arbitral tribunal is called upon to resolve disputes that may relate to the interpretation or application of EU law without a guarantee that the questions of EU law which the tribunal may have to address can be submitted to the Court of Justice by means of a reference for a preliminary ruling. In doing so, the Court of Justice has adopted a broad and comprehensive notion of the extent to which EU law is implicated. According to this view, the autonomy of Union law is compromised not only where EU law may form the standard of the arbitral tribunal's assessment, but also where there is a possibility that EU law may only become relevant in the context of determining the subject-matter of that assessment. In this respect, the distinction between taking EU law into account as a standard and taking it into account as a fact, which underlies the case law of arbitral tribunals, is irrelevant.

14        Furthermore, in its Opinion concerning the Comprehensive Economic and Trade Agreement between Canada of the one part and the European Union and its Member States of the other part (ECJ, EuGRZ 2019, 191 paras 129-131 - EU-Canada CETA Agreement) the Court of Justice of the European Union emphasised that the principle of mutual trust was not applicable to relations between the EU and a non-Member State covered by CETA, and pointed out that the CETA tribunal was obliged to follow the prevailing interpretation given to the domestic law by the courts or authorities of the Contracting Party concerned. These holdings justify the conclusion that, by virtue of the principle of mutual trust, the rules restricting an arbitral tribunal's power to examine EU law in relations between Member States *inter se* cannot be subject to lower standards.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 9 -

15        The possibility that an arbitral tribunal called upon to decide under Article 9(2) of the BIT may *inter alia* have to apply EU law would be triggered already by the fact that one cannot exclude the application of EU law as part of Member State law, given that Member State law can play a role in the assessment of an investment measure, generally at the least either as a threshold question or an interpretation criterion. A relevant reference to EU law appears in Article 11(1) of the BIT, according to which an arbitral tribunal is obliged to assess the investment under EU law when examining the legality of the investment under either Croatian or Austrian law. In addition, Article 11(2) of the BIT excludes the BIT's application when it is contrary to EU law. Therefore, in this context too, the tribunal must take EU law into account as a standard for comparison. This is not in any way affected by the possibility, as put forward by arbitral tribunals and confirmed by the Court of Justice of the European Union in relation to third States in the context of the CETA Opinion, for arbitral tribunals to determine EU law as a fact. The BIT in question contains no guarantees corresponding to Article 8.31(2) of the CETA that the arbitral tribunal would only apply EU law as a fact or observe the standards developed by the Court of Justice of the European Union when interpreting and applying EU law.

16        bb) Contrary to the view of the appeal, the Higher Regional Court did not base its decision on the premiss that it was already sufficient for a violation of EU law for the arbitral tribunal to refer to EU law as a mere fact, and the compatibility of the arbitration clause with EU law was independent of whether the arbitral tribunal had to apply or interpret EU law. Rather, the Higher Regional Court expressly referred to the fact that, in the CETA Opinion, the Court of Justice of the European Union considered it permissible, in relation to third States,

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 10 -

for an arbitral tribunal to treat domestic law of a Member State (and therefore also EU law, which forms part of such domestic law) as a fact (see ECJ, EuGRZ 2019, 191 para 131 - EU-Canada CETA Agreement). However, the court did not consider that constellation comparable with the present one, among other things because this dispute concerns the relationship between Member States, and the BIT at issue in this case lacks a provision corresponding to Article 8.31(2) of the CETA. In addition, the Higher Regional Court examined whether the arbitral tribunal established in this case would also have to apply or interpret EU law.

17        cc) Contrary to the position of the appeal, the fact that the arbitral tribunal under the BIT at issue in the Achmea case was required to take into account the applicable law of the relevant contracting State (the now-Member State Slovak Republic) as well as all relevant agreements between the contracting States (the Slovak Republic and The Netherlands) does not provide a distinction that is material for the present case.

18        (1) According to Article 11(1) of the BIT between the Republic of Austria and the Applicant that is relevant for this dispute, the treaty applies to investments made in the territory of a Contracting Party, in accordance with that Party's law, by investors of the other Contracting Party. According to Article 11(2) of the BIT, the Contracting Parties are not bound by the Agreement insofar as it is incompatible with the legal acquis of the European Union (EU) in force at any given time. Even if the appeal were correct that the arbitral tribunal is only required to apply the provisions of the BIT and general principles of international law when deciding on the threshold question of the extent to which the scope of the BIT is available and the BIT is binding in the dispute before it, the arbitral tribunal would have to consider the law of a Member State (here,

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 11 -

the law of the Applicant) and EU law, which is part of the law of that Member State. In addition, as the answer to the appeal correctly points out, the Respondents, in their Notice of Arbitration of 14 February 2020, have repeatedly referred to EU law.

19        (2) The appeal's argument – referring, among other things, to the Opinion of the Advocate General on the CETA Opinion (dated 29 January 2017 - 1/17, juris para 134 - EU-Canada CETA Agreement) – that, in this context, the arbitral tribunal is only required to take Member State and EU law into account as a fact is unavailing.

20        The Court of Justice of the European Union based the stricter treatment of arbitral tribunals under investment protection agreements between Member States compared to commercial arbitral tribunals on the premiss that the latter are based on party autonomy, whereas the former derive from a treaty by which Member States agree to remove from the jurisdiction of their own courts, and hence from the system of judicial remedies which the second subparagraph of Article 19(1) TEU requires them to establish in the fields covered by EU law, disputes which may concern the application or interpretation of EU law (see ECJ, SchiedsVZ 2018, 186 paras 55 *et seq* - Achmea; RIW 2021, 661 paras 59 *et seq* - Komstroy; ECJ, Judgment of 26 October 2021 - C-109/20, EUR-Lex para  45 - PL Holdings). In addition, the Court of Justice considered it of central importance that the Member States are, in any area that is subject to EU law, required to have due regard to the principle of mutual trust, which obliges each of those States to consider, other than in exceptional circumstances, that all the other Member States comply with EU law, including fundamental rights, such as the right to an effective remedy before an independent tribunal laid down in Article 47 of the EU Charter of Fundamental Rights (see ECJ, EuGRZ 2019, 191 para   128 - EU-Canada CETA Agreement ). Accordingly,

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 12 -

the Court of Justice of the European Union regarded a provision in an investment protection agreement between Member States that enables the jurisdiction of an arbitral tribunal, yet does not meet the criteria laid down in its case law, as a violation of the principle of sincere cooperation set out in the first subparagraph of Article 4(3) TEU (see ECJ, SchiedsVZ 2018, 186 paras 57 *et seq* - Achmea; ECJ, Judgment of 26 October 2021 - C-109/20, EUR-Lex para 46 - PL Holdings).

21      Contrary to the appeal, a provision in an investment protection agreement between Member States that enables the jurisdiction of an arbitral tribunal is therefore ineffective not only if it jeopardises the exclusive jurisdiction of the Court of Justice of the European Union on binding interpretation of EU law (see, in this regard, ECJ, Opinion of 18 December 2014-2/13, EuGRZ 2014, 30 para 246 - Accession of the European Union to the ECHR). In the relationship between Member States – by contrast with the relationship with third countries (see ECJ, EuGRZ 2019, 191 para 129 - EU-Canada CETA Agreement) – such a provision also becomes ineffective once Member States remove from the jurisdiction of their own courts legal disputes which may concern the application or interpretation of EU law by means of an investment protection agreement in a manner that does not ensure the full effectiveness of EU law (see ECJ, SchiedsVZ 2018, 186 paras 55 *et seq* - Achmea; RIW 2021, 661 paras 59 *et seq* - Komstroy; ECJ, Judgment of 26 October 2021 - C-109/20, EUR-Lex para 45 - PL Holdings). With respect to the investment protection agreement at issue, this is already the case by reason that it lacks provisions corresponding to Article 8.31(2) CETA to the effect that the arbitral tribunal must treat the national law of the parties to the treaty, and the EU law that forms part of it, exclusively as a fact.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


- 13 -

On top of that, the statements of the Court of Justice of the European Union on treating EU law as a fact relate to an agreement with a third State, and not to an agreement between Member States (see ECJ, EuGRZ 2019, 191 para 131 - EU-Canada CETA Agreement).

22        (3) Likewise unavailing is the appeal's complaint that the Higher Regional Court's decision was based on the premiss that the BIT could not be interpreted in conformity with EU law; the appeal alleges that if the BIT were to be interpreted to the effect that the arbitral tribunal could only take EU law into account as a fact, that would bring Article 9(2) in line with EU law. As stated (para 21), the investment protection agreement under consideration in this case lacks any provision according to which an arbitral tribunal would have to treat Union law exclusively as a fact. There is therefore no point of departure for any interpretation in conformity with EU law. There is consequently no need to decide whether such a provision in an investment protection agreement between Member States would make an arbitration clause effective, or whether its effectiveness would just as well be precluded by the fact that those Member States have removed from the jurisdiction of their state courts, in a manner that does not ensure the full effectiveness of EU law, disputes which may concern the application or interpretation of EU law.

23        (4) Contrary to the appeal, the Higher Regional Court's decision also does not rest on the premiss that the *Achmea* Judgment of the Court of Justice of the European Union (SchiedsVZ 2018, 126) was applicable to all investment protection agreements between Member States, whatever their content. In particular, the Higher Regional Court specifically applied to the case at issue the first test under the Court of Justice of the European Union case law, namely whether the disputes which the mentioned arbitral tribunal is called upon to resolve are liable to

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 14 -

relate to the interpretation or application of EU law (see ECJ, SchiedsVZ 2018, 186 paras 39-42 - Achmea; ECJ, RIW 2021, 661 para 48 to 50 - Komstroy).

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


- 15 -

24        c) The appeal further unsuccessfully argues that the Senate must admit it on grounds of fundamental significance (Section 574(2)(1) ZPO) in order to make a preliminary reference to the Court of Justice of the European Union. It is true that legal questions falling within the scope of EU law are deemed fundamental when – assuming admissibility – the need exists for the Senate to obtain a preliminary ruling of the Court of Justice of the European Union (on the non-admissibility objection procedure, see Federal Constitutional Court 82, 159, 196; MünchKomm.ZPO/Krüger, 6th Ed, Section 543 para 6). However, in the present case, there is no relevant question about the interpretation of Union law that has not already been clarified by the case law of the Court of Justice of the European Union or lacks an evident answer (on this standard, see ECJ, Judgment of 6 October 1982 - 283/81, Coll. 1982, 3415 para 21 = NJW 1983, 1257 - Cilfit *et al*; judgment of 6 October 2021 - C-561/19, EUR-Lex para 33, 36 and 39-49 - Consorzio Italian Management and Catania Multiservizi). The principles under which the effectiveness of an investment protection agreement provision enabling the jurisdiction of an arbitral tribunal must be assessed were clarified by the Court in its judgment in the *Achmea* case (SchiedsVZ 2018, 186) and only recently confirmed in its judgments in the *Komstroy* (RIW 2021, 661) and *PL Holdings* (26 October 2021 - C-109/20, EUR Lex) cases. Given that, in the latter judgment, the Court of Justice has several times cited its CETA Opinion (EuGRZ 2019, 191) (see paras 43-45), it is fair to assume that it has adhered to the standards set out therein. To the extent the appeal refers to views of commentators who see the need for further clarification (Stöbener de Mora, EuZW 2018, 363, 366; less clearly Lavranos/Singla, ArbitrationVZ 2018, 348, 350; Müller/Simon, NJOZ 2018, 961, 963)

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


- 16 -

these are not sufficiently specific as to the extent to which the legal standards supposedly require clarification. The application of those standards to specific cases is a matter for Member States' courts.

25          2. The appeal does not contest the Higher Regional Court's holding that an arbitral tribunal called upon to decide under an Article 9(2)(b) of the BIT itself lacks the power to make a reference for a preliminary ruling to the Court of Justice of the European Union.

26          3. Nor does the admissibility of the appeal follow from its challenge of the Higher Regional Court's ruling that Article 9(2)(b) of the BIT is not rendered effective either as a result of the possibility of a preliminary reference in the context of post-award review by a state court, or as a result of the possibly of access to a state court available under Section 1050 ZPO during the pendency of the proceedings. According to Section 1050(1) and Section 1062(4) ZPO, the arbitral tribunal can apply to the local court for assistance in taking evidence or the performance of other judicial acts that the arbitral tribunal is not authorised to perform.

27          a) In this context, the appeal unsuccessfully relies on a violation of its right to a judicial hearing (Article 103(1) Basic Law) as the basis for uniform adjudication admissibility of the appeal (see Federal Court of Justice, judgment of 26 November 2020 - I ZB 11/20, juris para 19).

28          aa) The right to be heard by a judge under Article 103(1) Basic Law obliges the courts to acknowledge and consider the parties' arguments. However, it is only violated if, in a particular case, it is clear that the court has failed to comply with this obligation. In principle,

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 17 -

it can be assumed that arguments that have been received by the courts were also acknowledged and taken into account. In this regard, the courts are under no obligation to expressly address every argument in the decision's reasoning. Accordingly, for a violation of Article 103(1) Basic Law to be established, the specific case must clearly demonstrate exceptional circumstances in which the actual submissions of a party were either completely ignored, or not taken into consideration when making the decision (see Federal Constitutional Court 65, 293, 295 [juris para 11]; 70, 288, 293 paras 16]; 86, 133, 145 *et seq* [juris para 39]; Federal Constitutional Court, judgment of 8 February 2021 - 1 BvR 242/21, juris para 6). If the court fails, in the decision's reasoning, to address the essential core of a party's factual presentation on a question that is of central importance for the proceedings, this suggests that the submission was not taken into account, unless, in the court's legal view, such submission was immaterial or manifestly unsubstantiated (see Federal Constitutional Court 47, 182, 189 [juris para 21]; 86, 133, 146 [juris para 39]; Federal Constitutional Court, decision of 8 February 2021 - 1 BvR 242/21, juris para 6).

29          bb) The appeal submits that the Higher Regional Court has failed to address the essential core of the Applicants' arguments that Section 1050 ZPO (in conjunction with the provisions of the BIT at issue and the general obligations of an arbitral tribunal) provides both for the possibility and the duty on the part of an arbitral tribunal called upon under Article 9(2)(b) of the BIT to pose certain questions to the Court of Justice of the European Union in the context of a request for legal assistance, and that a breach of that obligation would provide a ground for annulment, such that the full effectiveness of EU law would be ensured.

30          cc) That submission does not assist the appeal. Apart from the fact that it fails to specify the allegedly overlooked arguments with specific references to the record,

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


THAMES
TRANSLATION

- 18 -

(Section 575(3)(2) ZPO; see Federal Court of Justice, decision of 1 October 2002 - XI ZR 71/02, NJW 2003, 65 [juris para 8]), those arguments are not material to the Higher Regional Court's decision. According to the Higher Regional Court, it is irrelevant whether the arbitral tribunal has the ability of having a request for a preliminary ruling brought before the Court of Justice of the European Union in this manner. The Higher Regional Court derived this from the fact that, in its *Achmea* judgment (issued upon request of the Senate), the Court of Justice considered the post-award review by a state court to be insufficient because such review can only take place to the extent permitted by the law applicable to the review proceedings, which depends on the choice of arbitral seat (see ECJ, SchiedsVZ 2018, 126 paras 52 *et seq*). Additionally, the Higher Regional Court relied on the Senate decision following the above-mentioned judgment (SchiedsVZ 2019, 46 para 36) which also considered the possibility of working towards a submission of a preliminary ruling request by a state court in the course of pending arbitration proceedings that exists under Article 1050(1) ZPO to be immaterial (for the possibility of such an act in principle, see the Senate's order for reference of 3 March 2016 - 1 ZB 2/15, SchiedsVZ 2016, 328 para 51 with references; see also ECJ, judgment of 23 March 1982, C-102/81, juris para 14 - Nordsee).

31          b) Contrary to the position of the appeal, the decision of the Higher Regional Court is also not based on the implied premiss, allegedly deviating from the case law of the Court of Justice of the European Union, to the effect that a breach of EU law takes place even if the provisions of the BIT, the arbitration rules, the code of conduct of the arbitral tribunal, and the applicable law at the place of arbitration legally ensure that any questions relating to the interpretation and application of EU law can be clarified by a reference to the Court of Justice.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


- 19 -

32          aa) Rather, the Higher Regional Court's premiss was that the BIT at issue does not provide such an assurance because the possibility of initiating a preliminary ruling procedure at the Court of Justice of the European Union as part of post-award review depends on the choice of the arbitral seat and the domestic law applicable at the seat. This ruling is consistent with the case law of the Court of Justice of the European Union (SchiedsVZ 2018, 126 para 52 *et seq* - Achmea; similarly, ECJ, RIW 2021, 661 para 56 *et seq* - Komstroy).

33          bb) The assumption underlying this holding, namely that Article 9(2)(b) of the BIT does not specify an arbitral seat within the European Union, particularly since, pursuant to Article 18(1) of the 2013 UNCITRAL Rules the seat is, in principle, to be determined by the arbitral tribunal, demonstrates no error of law and, in fact, provides a reason against the admissibility of the appeal on the uniform adjudication ground (Section 574 (Section 574(2)(2) condition 2 ZPO). Contrary to the appeal, such an obligation can neither be inferred from the BIT, nor is otherwise apparent given the background that the BIT was concluded before the Applicant's accession to the EU. The appeal further unsuccessfully argues that, based on the arbitral tribunal's duty in accordance with the Federal Court of Justice case law to work towards an enforceable award (see Federal Court of Justice, judgment of 5 May 1986 - III ZR 233/84, NJW 1986, 3077, 3078 [juris para 15]), for disputes arising from investment protection agreements between Member States, the arbitral tribunal would be required to determine an arbitral seat within the European Union. The appeal does not allege this to be a universal principle of arbitration law, nor is such an assumption self-evident, particularly for arbitral tribunals outside the European Union.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com


- 20 -

34        cc) Accordingly, it is not decisive: whether given the parties' agreement on the arbitral seat in Frankfurt am Main, the arbitral tribunal constituted in this case would be entitled and required under Sections 1050(1) and 1062(4) ZPO to apply to the competent local court to make a reference for a preliminary ruling in the event of a question concerning the interpretation and application of EU law where the answer is not evident, but material to the outcome; whether this possibility (be it in Germany or in other States) also exists for arbitral tribunals with a foreign seat (see Sections 1025(2), 1050 ZPO; Sections 577(2), 602 Austrian Code of Civil Procedure); or whether a failure to initiate preliminary reference proceedings in breach of duty would provide a ground to set the award aside under Section 1059(2) ZPO (on Section 1059(1)(1)(b) and (d) ZPO, see MünchKomm.ZPO/Münch, 5th Ed, Section 1050 para 16; on Section 1059(2)(2)(b) ZPO, see Federal Court of Justice, SchiedsVZ 2016, 328 para 56).

35        c) Viewed from this perspective, the appeal also cannot be admitted on the ground of fundamental significance (Section 574(2)(1) ZPO) in order to enable the Senate to make a preliminary reference to the Court of Justice of the European Union. As the foregoing shows, contrary to the appeal's assumption, no duty that would be independent of the arbitral seat exists for the arbitral tribunal to seek the assistance of the courts of a Member State to refer questions on the interpretation and application of EU law to the Court of Justice of the European Union. Such a finding would be based not on EU law, but on the (applicable) domestic arbitration law. The question whether the requirements for the effectiveness of a provision in an investment protection agreement between Member States enabling the jurisdiction of an arbitral tribunal would have been satisfied in that scenario is therefore hypothetical and not material to the decision in the present case.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 21 -

36        4. Likewise unavailing are the complaints that the Higher Regional Court has, in a manner justifying the admissibility of the complaint, erred that the EU law principle of mutual trust cannot be applied to justify the ineffectiveness of Article 9(2)(b) of the BIT, and, further, wrongly denied that the applicant's reliance on that principle is contrary to the principle of good faith (Section 242 Civil Code).

37        a) The Higher Regional Court held that the principle of good faith could not serve as the basis for an effective conclusion of an arbitration agreement. The bad faith objection cannot rest on the systemic deficiencies of the Applicant's judicial system. Whether this provides the extraordinary circumstances that would stand in the way of the application of the principle of mutual trust is immaterial, given that this could never have the legal consequence of enabling another Member State's court to confirm the jurisdiction of a private arbitral tribunal in place of that of the Applicant's courts.

38        b) Contrary to the appeal, the Higher Regional Court's decision does not rest either on a departure from the principles of the case law of the Court of Justice of the European Union or of the Federal Court of Justice, or on a breach of the prohibition of arbitrariness.

39        aa) According to the now established case law of the Court of Justice of the European Union, the Member States are bound, in all areas covered by EU law, to uphold the principle of mutual trust which obliges each of those States to consider, other than in exceptional circumstances, that all the other Member States comply with EU law, including fundamental rights, such as the right to an effective remedy before an independent tribunal laid down in Article 47 of the EU Charter of Fundamental Rights (see, i.a., ECJ, judgment of 25 July

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 22 -

2018, C-216/18, juris para 36 - Minister for Justice and Equality [shortcomings of the justice system]; EuGRZ 2019, 191 para 128 - EU-Canada CETA Agreement; Judgment of 12 December 2019 - C-625/19 PPU, juris para 33 - Openbaar Ministerie; Judgment of 10 March 2021 - C-648/20 PPU, juris para 35 - PI). According to the Court of Justice ruling in the *Achmea* judgment concerning the principle of sincere cooperation set out in the first subparagraph of Article 4(3) TEU, EU law is based on the fundamental premiss that each Member State shares with all the other Member States, and recognises that they share with it, a set of common values on which the EU is founded, as stated in Article 2 TEU. That premiss implies and justifies the existence of mutual trust between the Member States that those values will be recognised, and therefore that the law of the EU that implements them will be respected (ECJ, SchiedsVZ 2018, 186 para 34 -Achmea).

40    The Court of Justice of the European Union has thereby relied on the principle of mutual trust in the abstract, as a justification for its case law. However, neither in the aforementioned *Achmea* judgment, nor in the *Komstroy* case (RIW 2021, 661) did the court regard the existence of mutual trust as a prerequisite (to be verified in individual cases) for the effectiveness of a provision in an investment protection agreement between Member States enabling the jurisdiction of an arbitral tribunal, or the existence of extraordinary contrary circumstances as a basis (to be verified in individual cases) for an exception. Accordingly, the Higher Regional Court did not deviate from the premisses of the case law of the Court of Justice of the European Union by not verifying in the specific case whether the serious defects of the applicant's judicial system alleged by the Respondents – assuming such defects exist – must be regarded as exceptional circumstances precluding mutual trust.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



41     cc) The Federal Court of Justice case law is not fundamentally different in this respect. In its decision following the *Achmea* judgment of the Court of Justice of the European Union, the Senate rejected an appeal to the denial of the right to effective legal protection (Article 2(1) in conjunction with Article 20(3) of the Basic Law; Article 47 EU Charter of Fundamental Rights) on the basis that the Court of Justice's judgment was informed by the view that the respondent in that case was able obtain effective legal protection in Slovakia (Federal Court of Justice, SchiedsVZ 2019, 46 para 72; see also Federal Court of Justice, decision of 24 January 2019 - 1 ZB 2/15, juris para 8). Irrespective of this, the Respondents in this case have alleged serious structural defects of the Applicant's judicial system only generally, without sufficiently demonstrating that, in their specific case, there was a risk of a future breach of their right to effective judicial protection. This applies in particular to their central argument that Croatian courts consistently disregard the obligation to refer under Article 267(3) TFEU. Even assuming that this is correct, it still would not follow that the Respondents would be prejudiced in their dispute against the Applicant before Croatian Courts. This is not changed by the Respondents' assertion that the Croatian Constitutional Court does not generally examine questions relating to EU law, and failed to do so in two decisions of May and June 2018 on the so-called Lex Agrokor, which is directly relevant to the legal dispute between the parties. At the threshold, it has not been sufficiently demonstrated what questions of EU law were allegedly not examined; nor is it clear to what extent such questions remain to be examined in the legal dispute between the parties following the Croatian Constitutional Court's confirmation that Lex Agrokor is compatible with the Croatian constitution.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 24 -

42        dd) The Higher Regional Court's reasoning also does not represent a breach against the prohibition of arbitrariness (Article 3(1) Basic Law). Contrary to the appeal, the Higher Regional Court, on the one hand, left open the question whether the principle of mutual trust rules out taking EU law into account as a fact, and, on the other hand, considered it irrelevant whether the application of the principle of mutual trust in the present case is precluded by exceptional circumstances because it considered that the legal consequence sought by the Respondents – namely the establishment of arbitral jurisdiction – was out of the question. This does not demonstrate any contradiction and certainly does not constitute a violation of the prohibition of arbitrariness, which is breached only if the reasoning cannot be legally justified on any conceivable view and imposes the conclusion that it rests on considerations that are extraneous to the matter (see BVerfG, decision of 18 August 2021 - 2 BvR 27/21, juris para 28).

43        c) From this perspective, too, the appeal lacks fundamental significance on the grounds of the need for a referral to the Court of Justice of the European Union. The Senate does recognise that the principle of mutual requires further development both in theory and in practice. This is particularly the case in terms of the legal consequences to be attached to it in legal fields affected by EU law where individual cases demonstrate exceptional circumstances that stand in the way of the application of the principle of mutual trust. However, in the case at hand, there is no reasonable doubt that the arbitration agreement existing between the parties would not be effective even if the existence of exceptional circumstances overriding the principle of mutual trust were to be confirmed. If that were otherwise, then the courts of a Member State which fail to ensure the full effectiveness of EU law would have disputes withdrawn from them by a court of another Member State

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 25 -

and then transferred to an arbitral tribunal, which, according to the standards developed in the case law of the Court of Justice of the European Union, likewise fails to ensure the effectiveness of EU law. Seen from this perspective, the Applicant is not unfairly placed in a better position in comparison with other states bound by investment protection agreements that are not European Union Member States. If the Respondents' allegations about the serious structural deficiencies of the Applicant's legal system are correct, it is a matter for the Commission (Article 258 TFEU) or the other Member States (Article 259 TFEU) to respond to this by way of infringement proceedings.

44        d) Insofar as the appeal argues that the Applicant is precluded by Section 242 to rely on the ineffectiveness of Article 9(2)(b) (and therefore on the lack of arbitral jurisdiction absent a valid arbitration agreement (see Federal Court of Justice, SchiedsVZ 2019, 46 para 17)), it does not put forward any admissibility ground. Contrary to the appeal, the Applicant's conduct also does not show any indications of abuse of rights (see Federal Court of Justice, SchiedsVZ 2019, 46 para 55 for the relevant requirements). The Higher Regional Court correctly held that the Applicant had not created any relationship of trust. In addition (and particularly given the legal consequences sought by the Respondents) the applicant would not have been estopped from invoking the ineffectiveness of Article 9(2)(b) of the BIT even if its constitutional court had, contrary to EU law, in fact failed to refer questions on the compatibility of the so-called Lex Agrokor to the Court of Justice of the European Union.

Translated by Thames Translation
Email: gluce@thamestranslation.com
Web site: https://www.thamestranslation.com



- 26 -

45          IV. Accordingly, the appeal is dismissed as inadmissible with the cost
consequences in accordance with Section 97(1) ZPO.

Koch                    Löffler                    Schwonke

        Odörfer                Wille

Lower court:
Higher Regional Court Frankfurt am Main, decision of 11 February 2021 - 26 SchH
2/20 -