# EXHIBIT 56

# INTERNATIONAL COMMERCIAL ARBITRATION IN SWEDEN

Second Edition

## PROFESSOR DR KAJ HOBÉR

*Professor of International Investment and Trade Law,
Uppsala University*



OXFORD
UNIVERSITY PRESS

**OXFORD**

UNIVERSITY PRESS

Great Clarendon Street, Oxford, OX2 6DP,
United Kingdom

Oxford University Press is a department of the University of Oxford.
It furthers the University's objective of excellence in research, scholarship,
and education by publishing worldwide. Oxford is a registered trade mark of
Oxford University Press in the UK and in certain other countries

© Kaj Hobér 2021

The moral rights of the author have been asserted

First Edition published in 2011
Second Edition published in 2021

Impression: 1

All rights reserved. No part of this publication may be reproduced, stored in
a retrieval system, or transmitted, in any form or by any means, without the
prior permission in writing of Oxford University Press, or as expressly permitted
by law, by licence or under terms agreed with the appropriate reprographics
rights organization. Enquiries concerning reproduction outside the scope of the
above should be sent to the Rights Department, Oxford University Press, at the
address above

You must not circulate this work in any other form
and you must impose this same condition on any acquirer

Crown copyright material is reproduced under Class Licence
Number C01P0000148 with the permission of OPSI
and the Queen's Printer for Scotland

Published in the United States of America by Oxford University Press
198 Madison Avenue, New York, NY 10016, United States of America

British Library Cataloguing in Publication Data
Data available

Library of Congress Control Number: 2020948071

ISBN 978-0-19-289673-5

DOI: 10.1093/law/9780192896735.001.0001

Printed and bound in the UK by
TJ Books Limited

Links to third party websites are provided by Oxford in good faith and
for information only. Oxford disclaims any responsibility for the materials
contained in any third party website referenced in this work.

that the *travaux préparatoires* first explain that 'it is primarily up to the parties to decide upon the place for the arbitration'.[33] The court seems to have ignored the basic principle of party autonomy expressly endorsed by Swedish arbitration law, including the right of the parties freely to agree on the place (or seat) of arbitration. In addition, pursuant to section 22(2) of the SAA, the arbitrators may hold hearings and other meetings elsewhere in Sweden, or abroad, unless otherwise agreed by the parties. The 'connection' mentioned in the *travaux préparatoires* must, if applicable at all, be deemed to have been fulfilled already by the parties' choice of Sweden as the place (or seat) of arbitration and their acceptance of Swedish law as the *lex arbitri*.

In fact, the parties and the sole arbitrator applied Swedish law to the proceedings, which  **8.24** raises questions in the hypothetical case that a non-Swedish court were to review the award. Would that court then have to apply Swedish arbitration law or would it apply its domestic arbitration law even though the arbitration was conducted under Swedish law?[34]

This case is best forgotten. The Court of Appeal must have known that its decision was con-  **8.25** troversial and therefore granted leave to appeal to the Supreme Court, something which the Court of Appeal seldom does. Since the parties settled the case no appeal was ever submitted. It is suggested that it is likely that the Supreme Court would have overturned the Court of Appeal's decision.

This has also—at least indirectly in an *obiter dicta*—subsequently been confirmed by the  **8.26** Supreme Court in *Russian Federation v RosInvestCo UK Ltd*.[35] Although this decision concerned a different question, the Supreme Court made some general remarks as part of its reasoning which effectively rejects the conclusion of the Court of Appeal in the *Titan* case. The Supreme Court held that:

[ … ] According to Section 22 of the SAA, the place of arbitration is determined by the parties and otherwise by the arbitrators. It is additionally provided that the arbitrators may hold hearings in other locations in Sweden or abroad, unless the parties have agreed otherwise.

Thus, it follows that where the parties have agreed that the proceedings shall take place in Sweden, it is irrelevant whether the parties or the arbitrators have decided to hold hearings in other countries, whether the arbitrators are not from Sweden, whether their duties have been carried out in another country or if the dispute concerns a contract which otherwise has no connection to Sweden [ … ][36]

## 8.2  Invalid Arbitral Awards

The grounds for invalidity of arbitral awards set forth in section 33 of the SAA are based on  **8.27** the philosophy that an award is invalid *only* if the interests of third parties, ie individuals, or

---

[33] Govt Bill 1998/99:35, p 113.
[34] Shaughnessy, *Decision by the Svea Court of Appeal in Sweden Rendered in 2005 in Case No T 1038-05*, SIAR 2005:2, p 269.
[35] *Russian Federation v RosInvestCo UK Ltd*, NJA 2010 p 508.
[36] *Russian Federation v RosInvestCo UK Ltd*, NJA 2010 p 508, paras 3–4.

legal entities, other than the parties to the arbitration, are affected by the award. Put differently: the grounds for invalidity are *beyond* the control of the parties to the dispute. By contrast, the grounds for setting aside an arbitral award are *within* the control of the parties and are dealt with in section 34 of the SAA as grounds for challenging an arbitral award.

## 8.2.1 Grounds for invalidity

**8.28**   Section 33 of the SAA sets out three grounds for the invalidity of an arbitral award. These grounds are:

(a) the arbitral award decides an issue which is non-arbitrable under Swedish law;
(b) the award or the manner in which the award has been rendered violates Swedish public policy; and
(c) the award has not been made in writing and it has not been signed by the arbitrators.

**8.29**   This enumeration in the SAA is exhaustive. The general view is that these rules are to be interpreted and applied restrictively.[37] It should be noted at the outset that there is no time limit for a claim of invalidity. This is logical, since if an award is invalid, it is invalid *ipso facto* and *ab initio*.

### 8.2.1.1 Non-arbitrability

**8.30**   The first ground for invalidity is non-arbitrability. The concept of arbitrability is strictly speaking a public policy limitation on arbitration as a dispute settlement method. Notwithstanding this, and given the importance of this limitation, arbitrability is addressed separately in section 33 of the SAA. It is for each State allowing arbitration to take place in its territory to determine the limitation, if any, to be imposed on arbitration. Most legal systems use the concept of arbitrability to determine the outer limits of arbitration. While the same concept is thus used, it is important to keep in mind that the contents of it may vary. In addition, several national systems of law may be involved in determining whether or not a particular dispute is arbitrable.

**8.31**   As explicitly stated in section 33(1), the issue of non-arbitrability is decided on the basis of Swedish law.[38] Hence, the fact that a matter is non-arbitrable under foreign law does not lead to invalidity under section 33 of the SAA, even if such foreign law is applicable to the arbitration agreement, or to the substance of the dispute. This does not exclude, however, the application of another law to other aspects of the concept of arbitrability. Let us assume that the arbitration agreement is governed by German law[39] and that under German law the dispute is *not* arbitrable. The dispute would still be arbitrable under Swedish law, but the award could be challenged on the basis of section 34, item 1 of the SAA since the arbitration agreement is invalid under German law.[40] Lack of arbitrability under foreign law would typically also lead to enforcement difficulties.[41]

---

[37] Govt Bill 1998/99:35 pp 142–143; Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 584.
[38] For an account of arbitrability under Swedish law, see para 3.81 *et seq.*
[39] If the parties have chosen German law to be applied to the arbitration agreement, it follows from section 48 of the Act that such choice of law must be respected; see discussion at para 2.201.
[40] For a discussion of section 34, item 1 of the Act, see para 8.63.
[41] This follows from Article V(2)(a) of the New York Convention; see discussion at para 9.52.

Issues of arbitrability may also arise at the enforcement stage, primarily by virtue of Article **8.32** V.2(a) of the New York Convention.[42] This will be for the enforcing court to decide. One question in this respect which arises from time to time is if the arbitrators should, or perhaps must, take into account the arbitrability concept in the country of enforcement. One complication is of course that there may be several—at least potential—countries of enforcement. Must the arbitrators take all of them into account? What if they differ in their respective definitions of arbitrability? A further question is what it means to 'take into account'. Let us assume that a dispute is arbitrable under Swedish law but not under the law of the country where enforcement is likely to take place. In such a situation, it is not possible for arbitrators sitting in Sweden to dismiss the dispute on the ground that it is nonarbitrable in the country of enforcement. On the contrary, the award will be valid under Swedish law. It is thus up to the claimant and not the arbitrators to decide whether he is prepared to take the risk of obtaining an award that may not be enforceable. A risk which might be worth taking, in particular if the respondent also has assets in countries other than in the jurisdiction in question.

As mentioned above, issues of arbitrability in fact form part of public policy. It is therefore **8.33** difficult to draw the line between arbitrability and public policy. The distinction is of little practical relevance as far as invalidity of arbitral awards is concerned.[43]

### 8.2.1.2 Violation of public policy

Item 2 of section 33 of the SAA stipulates that an arbitral award is invalid if the award, **8.34** or the way in which it was achieved, is manifestly incompatible with the fundamental principles of Swedish law. This is the definition of public policy (or *ordre public*) under Swedish law. The concept of public policy is seldom applied as part of Swedish private international law. The generally accepted view is that this concept represents a very high threshold. Indeed, in international commercial transactions it is virtually unheard of for public policy to come into play. Put differently, it is only if a transaction, or in our case an arbitral award, violates the most basic rules of fairness and justice that a transaction or arbitral award can be invalidated as a result of violation of public policy. Accordingly, the generally held view is that public policy is to be applied in a very restrictive manner.[44] In fact, no arbitral award has ever been declared invalid on this ground under the SAA.

It should also be noted that many elements must be considered when deciding if an **8.35** award violates public policy; for example, if the award concerns an international matter, this could lead to a more restrictive interpretation of the public policy principle. If the party defending the award, on the other hand, is found to have caused the circumstance which is giving rise to the public policy violation, it could possibly be argued that a less restrictive interpretation of the public policy principle should be applied.[45]

---

[42] See para 9.52.

[43] Bribery and corruption, for example, raise questions of arbitrability as well as of public policy. In Swedish arbitration law such issues are usually treated as part of public policy; see para 8.36 and para 8.40.

[44] Govt Bill 1998/99:35, pp 142 and 234. See also *Systembolaget v Vin & Sprit Aktiebolag*, NJA 2015 p 438, para 31, where the Supreme Court stated that the public policy provision of section 33 'will only be applied in exceedingly rare circumstances'.

[45] *Lindskog, Skiljeförfarande, En kommentar* (3rd edn, 2020) 909.

**8.36**  The public policy concept falls into two categories, *viz*, (i) violation of procedural public policy, and (ii) violation of substantive public policy. It has been argued in legal doctrine that only awards by which the arbitrators determine the substance of the dispute may be declared invalid for violation of public policy under section 33.[46] In a judgment in 2018, the Svea Court of Appeal said that this is not the case. In *Cem Uzan v Republic of Turkey*, the arbitral tribunal had dismissed the case for lack of jurisdiction and the losing party brought a challenge against the award before the Svea Court of Appeal. Turkey, the (pre-vailing) respondent in the arbitration, objected during the court proceedings that section 33 subsection 2 did not apply to awards such as the one rendered by the arbitrators. According to the court, however, the wording and structure of section 33 indicated that the provision was applicable also to awards by which the arbitrators have found that they lack jurisdiction. The court also noted that there was no support for Turkey's contention in the *travaux préparatoires* to the SAA.[47]

**8.37**  **Violation of procedural public policy**  There is a narrow distinction between invalidity due to violation of procedural public policy (section 33 of the SAA) and the setting aside of an award as a result of challenge proceedings on the basis of violation of due process (section 34(1), item 6, of the SAA). The latter is in fact the more common situation. An award would be invalid under section 33 of the SAA only if there has been a *gross* viola-tion of due process which challenges law and order.[48] An example of such gross violation of procedural public policy is if one of the parties has influenced one or several arbitrators through criminal conduct, eg by threatening or bribing the arbitrator(s) and this may be presumed to have affected the outcome of the case.[49]

**8.38**  Another situation which would violate Swedish procedural public policy is when an award is based on forged evidence, ie one of the parties has introduced evidence which is forged and which is decisive for the outcome of the case.[50] The public policy principle probably applies only to evidence which has been wilfully forged by one of the parties or with the knowledge of one of the parties where it is clear that a document is decisive to the outcome of the case. Thus, the fact that a witness presented false, or misleading, testimony does not in itself cause the award to be invalid. The distinction between wilfully forged evidence and other situations involving questionable evidence is drawn to avoid the parties' disagree-ment as to the truthfulness or authenticity of the evidence leading to the invalidity of the award on public policy grounds.[51] In practice, the right and duty of the arbitrators freely to evaluate evidence presented by the parties usually resolve most problems concerning al-legedly forged evidence.[52]

---

[46] See Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 535 and Olsson and Kvart, *Lagen om skiljeförfarande—en kommentar* (2000) 138.

[47] *Cem Uzan v Republic of Turkey*, Svea Court of Appeal, T 6582-16, 26 February 2018.

[48] Lindskog, *Skiljeförfarande, En kommentar* (3rd edn, 2020) 913; Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 590; and Gaillard and Savage (eds), *Fouchard, Gaillard, Goldman On International Commercial Arbitration* (1999) 947 *et seq*.

[49] Govt Bill 1998/99:35 pp 142, 150–151 and 234.

[50] Govt Bill 1998/99:35 pp 150–152.

[51] Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 588.

[52] See discussion at para 6.162 *et seq*.

In *Republic of Kazakhstan v Ascom Grop, Stati et al*, the Svea Court of Appeal stated that **8.39**
forged evidence could only be found to constitute a violation of public policy leading to in-
validity if it is clear that the evidence in question influenced the outcome of the arbitration.[53]
The Court of Appeal found that the fact that forged evidence was presented during the ar-
bitration was not in itself sufficient to have the award declared invalid under section 33.[54]

A third situation where an award may be invalid due to violation of procedural public policy **8.40**
is where a party has not been allowed to present its case or present evidence.[55] However, it
would only be possible to have an award declared invalid with reference to public policy in
cases of gross infringement of the principles of due process.[56]

The fact that one party has appointed all arbitrators could also constitute a violation of **8.41**
procedural public policy.[57] Such violation exists even if the appointment of arbitrators by
one party is stipulated in the arbitration agreement.[58] However, it is open to discussion
whether this constitutes a violation of public policy or whether it is a non-statutory ground
for invalidity, see para 8.50.[59] In any event, such classification is typically of little practical
relevance.

**Violation of substantive public policy**    It has been explained in the foregoing that under **8.42**
Swedish law an arbitral award is final and binding on the merits when rendered and that
it can never be retried as far as the merits are concerned. Notwithstanding this, the public
policy provision of section 33 of the SAA enables a court of law to review the merits of an
arbitral award, but only for purposes of determining whether or not the award is invalid. It
goes without saying that this review is very limited and that an award can be declared in-
valid only in very exceptional circumstances.

An example of when an award might be found to violate Swedish substantive public policy **8.43**
is when the award orders either party, or both parties, to engage in a contract which is illegal
under Swedish law, a so-called *pactum turpe*.[60] Consequently, an award that violates the law
on cartels in Sweden or the competition laws of the European Union may be deemed to be
invalid. This seems to have been the position taken by the ECJ in *Eco Swiss China Time Ltd
v Benetton International NV (C-126/97)*.[61] In that judgment, the ECJ concluded that a na-
tional court to which application is made for invalidity of an arbitral award must grant such
application if it considers that the award in question is in fact contrary to Article 81 EC[62]
and where the Member State's domestic rules of procedure require it to set aside an award
which fails to observe national rules of public policy.

---

[53] *Republic of Kazakhstan v Ascom Group, Stati et al*, Svea Court of Appeal, T 2675-14, 19 December 2016, p 43.
The Swedish Supreme Court subsequently rejected the Republic of Kazakhstan's petition to reopen the challenge
proceedings based on alleged further fraudulent evidence uncovered after the conclusion of the challenge pro-
ceedings in the Court of Appeal, see Ö 1888-20, 18 May 2020.
[54] Ibid.
[55] See para 6.32 *et seq*.
[56] Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 590.
[57] *Rita Urhelyi v Arbetsmarknadens Försäkringsaktiebolag* (NJA 1974 s 573).
[58] Lindskog, *Skiljeförfarande, En kommentar* (3rd edn, 2020) 912.
[59] Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 585.
[60] Govt Bill 1998/99:35, p 141.
[61] The *Eco Swiss case* is discussed in para 2.75 *et seq*.
[62] The regulation in question can now be found in Article 101 EC.

282   SETTING ASIDE ARBITRAL AWARDS

8.44   The view that national courts must declare arbitral awards violating EC rules invalid if the Member State's domestic laws provide that arbitral awards violating national rules of public policy are invalid, was reiterated by the ECJ in *Mostaza Claro v Centro Móvil* (C-168/05). In that case, a Spanish court referred the following question to the ECJ for a preliminary ruling:

> May the protection of consumers under Council Directive 93/13/EEC … require the court hearing an action for annulment of an arbitration award to determine whether the arbitration agreement is void and to annul the award if it finds that that arbitration agreement contains an unfair term to the consumer's detriment, when that issue is raised in the action for annulment but was not raised by the consumer in the arbitration proceedings?

8.45   The ECJ referred to the nature and importance of the public interest underlying the Directive and found that even though the consumer had not pleaded invalidity in the course of the arbitration proceedings, but only in the action for annulment, the Directive must be interpreted to mean that a national court that is to rule on the action for annulment must first determine whether the arbitration agreement is void and, if the agreement contains an unfair term, then it must annul the arbitral award.[63]

8.46   Another example of awards violating Swedish substantive public policy is when the contract in dispute is a result of corruption, particularly bribery.[64]

8.47   The protection against corrupt contracts is also expressed in the so-called 'Unclean Hands Doctrine' which stands for the principle that 'he who comes to equity for relief must come with clean hands'.[65] Under the Unclean Hands Doctrine, an arbitral tribunal can and should deny relief to a claimant 'whose conduct in regard to the subject matter of the litigation has been improper'.[66] Likewise, an arbitral tribunal should 'refuse to aid a complainant in protecting any right acquired or retained by inequitable conduct'.[67] Although the Unclean Hands Doctrine has been developed in common law, it is closely related to several Roman law concepts and Latin maxims expressing the same idea:[68]

- *Ex delicto non oritor action* ('an unlawful act cannot serve as the basis of an action in law');
- *Nemo ex suo delicto meliorem suam conditionem facit* ('no one can put himself in a better legal position by means of a delict');
- *Ex turpi causa non oritur* ('an action cannot arise from a dishonourable cause');
- *Inadimplenti non est adimplendum* ('one has no need to respect its obligation if the counter-party has not respected its own'); and

---

[63] *Mostaza Claro v Centro Móvil* (C-168/05) paras 38–39.
[64] Govt Bill 1998/99:35 p 141; Hobér, *Enforcement of Arbitral Awards*, Stockholm Arbitration Report, 1999:1, p 69; cf Gaillard and Savage (eds), *Fouchard, Gaillard, Goldman On International Commercial Arbitration* (1999) 960–962. Bribing of arbitrators may also constitute a violation of procedural public policy, see para 8.36.
[65] Kreindler, 'Corruption in International Investment Arbitration: Jurisdiction and the Unclean Hands Doctrine', in Hobér, Magnusson, and Öhrström (eds), *Between East and West: Essays in Honour of Ulf Franke* (2010) 309 *et seq*.
[66] *S&E Contractors, Inc v United States*, 92 S Ct 1411, 1419 (US Supreme Court 1972), individual opinion of Judge Hudson.
[67] *International News Service v The Associated Press*, 248 US 215 (US Supreme Court 1918).
[68] Kreindler, 'Corruption in International Investment Arbitration: Jurisdiction and the Unclean Hands Doctrine', in Hobér, Magnusson, and Öhrström (eds), *Between East and West: Essays in Honour of Ulf Franke* (2010) 317–318, and the references therein.

- *Nullus commodum capere potest de injuria sua propria* ('no one can be allowed to take advantage of his own wrong').

Further, an award may also be of such punitive character that it cannot be deemed acceptable and therefore violates public policy.[69] Moreover, an award where the arbitrators have failed to observe a rule which is mandatory for the protection of a third party interest or a public interest, may, in very exceptional cases, be considered violating public policy.[70]    **8.48**

### 8.2.1.3 Formal requirements of the arbitral award

Under item 3 of the first paragraph of section 33 of the SAA, an arbitral award may also be declared invalid in its entirety if it does not fulfil the formal requirements set out in section 31 of the SAA. The elementary requirements are that the award must be in writing and that it must be signed by the arbitrators. Oral arbitral awards are thus not valid. It suffices that a majority of the arbitrators has signed the award as long as the reason why all of the arbitrators have not signed the award is noted in the award. The parties may also agree that only the chairman needs to sign the award.[71] In *Wirgin Advokatbyrå Handelsbolag v If Skadeförsäkring AB*,[72] the award had been corrected in accordance with section 32 of the SAA.[73] However, the correction was only signed by the chairman and no agreement between the parties to the effect that this was sufficient was forthcoming. Accordingly, *the correction* of the award did not meet the formal requirements under the SAA. The correction was thus declared invalid. This did not affect the validity of the award itself, which remained valid and in force.    **8.49**

The fact that the parties can agree on exceptions to the formal requirements has raised the question as to whether the formal requirements in item 3 of section 33 should really constitute grounds for invalidity. It has been argued that it would be more appropriate to deal with such formal requirements as part of the grounds for setting aside under section 34, ie being subject to waiver and the two-month time limit on initiating the challenge.[74] In addition, an application for invalidity on this ground is usually a fruitless endeavour for the losing party, since an award may be amended to fulfil the requirements, as follows from section 35 of the SAA.[75]    **8.50**

The fact that an award is not dated correctly, or that the seat of arbitration is not stated in the award, does not constitute a ground for invalidity under section 33 of the SAA.[76]    **8.51**

### 8.2.2 Non-statutory grounds for invalidity

The grounds listed in section 33 of the SAA are the only statutory grounds on which an award may be rendered invalid. In addition to those grounds there are also three other    **8.52**

[69] Govt Bill 1998/99:35, p 141; Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 590; Hobér, *Enforcement of Arbitral Awards*, Stockholm Arbitration Report, 1999:1, p 70.
[70] Govt Bill 1998/99:35, pp 141–142; Hobér, *Enforcement of Arbitral Awards*, Stockholm Arbitration Report, 1999:1, p 70; and Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 590–591.
[71] If an award is only signed by one person, it is assumed that it is the chairman's signature and that the parties have agreed that only the chairman needs to sign the award, Olsson and Kvart, *Lagen om skiljeförfarande—en kommentar* (2000) 137.
[72] Svea Court of Appeal, judgment of 12 September 2005 in Case No T 4390-04.
[73] For a discussion of correction of arbitral awards, see para 7.137 *et seq.*
[74] Lindskog, *Skiljeförfarande, En kommentar* (3rd edn, 2020) 918.
[75] See para 8.193.
[76] Govt Bill 1998/99:35, p 142.

situations where an arbitral award will not have legal effect. These situations cannot strictly speaking be characterized as cases of invalidity, but are simply situations where an award will have no legal effect.

### 8.2.2.1 Situations where an 'award' may not be characterized as an arbitral award

8.53   The first such situation is the case where an award has been rendered in such a way and under such circumstances that it cannot, from a legal point of view and on the basis of the SAA, be characterized as an arbitral award. The standard example is where one of the parties to the dispute was also the arbitrator deciding the dispute, for example where the charter of an association stipulates that disputes between a member and the association are to be decided by a body of the association. Such 'self-judgment' would not be characterized as an arbitral award under the SAA.[77]

8.54   However, if a representative of a legal entity is appointed as arbitrator in a dispute to which the legal entity he is representing is a party, this is not considered 'self-judgment'. However, the award could be challenged on the ground that the arbitrator was not independent and impartial provided that the other party did not accept such an appointment in the first place.[78]

### 8.2.2.2 The party against whom the award was made was not a party to the arbitration proceedings

8.55   The second situation referred to above includes arbitral awards which are directed against parties who were not in fact, nor in law, parties to the arbitration proceedings. This is perhaps to restate the obvious, ie that an arbitral award cannot bind a party who is not a party to the arbitration clause and thus not properly a party to the arbitration proceedings.[79] It goes without saying that an arbitral award rendered in a dispute between parties A and B and containing an order directed at C will not bind C. On the other hand, such an award is not automatically invalid as between parties A and B.

8.56   In *AB Hans Osterman v Stockholms Automobilhandlarförening and AB Autostandard* (NJA 1943 p 527), the Supreme Court found that the arbitral award, which was based on an arbitration clause in the charter of an association and concerned the expulsion of members from the association, did not bind an affected member of the association since the award concerned membership in the association and the member had not been a party to the arbitration.

8.57   A somewhat similar situation occurs when a respondent, who has been ordered to comply with a request for specific performance or to pay a certain sum in an arbitral award, is able to prove that the arbitration proceedings were conducted without him being advised of it. One could argue that he has not then been a party to the arbitration *proceedings* even though he may have been a party to the arbitration *agreement*. This situation, however,

---

[77] Govt Bill 1998/99:35, p 64.
[78] *Altinel v Sudoimport* (RH 1991:15); and Heuman, *Arbitration Law of Sweden: Practice and Procedure* (2003) 226.
[79] Govt Bill 1998/99:35, p 142. The effect of arbitral awards is discussed at para 7.92 *et seq*. This situation is closely linked to the question of the extent to which an arbitration agreement is binding on third parties, see para 3.130 *et seq*.

is probably not to be characterized as a case where the arbitration award is not binding on the party in question, but rather a case where the arbitral award may be successfully challenged under section 34 of the SAA on the basis that the respondent did not have an opportunity to present its case.[80]

8.2.2.3  An award too obscure to enforce    **8.58**
The third situation where an arbitral award may lack legal force, even though it is not to be characterized as invalid, is the situation when the award in question is deemed to be so obscure so as to make enforcement of it impossible. In the Arbitration Act of 1929 a specific provision addressed this situation, viz, section 22. In accordance with this provision such an award was not characterized as invalid but the award was simply not enforceable. In addition, the existence of such an award did not prevent a party from commencing an action in court concerning the question decided by the arbitrators. Under the SAA this provision has been deleted, *inter alia*, because it was a provision that was unknown to other jurisdictions and because of its very limited practical relevance in Sweden.[81] Notwithstanding this, the fact remains that should an award be so obscure as to prevent enforcement of it, it will in all likelihood be deemed to lack legal force even though it is not formally invalid.[82]

### 8.2.3  Invalidity of part of the award

The invalidity of an award may apply only to a certain part of the award in accordance with    **8.59**
section 33(2) of the SAA. For example, if the arbitrators have determined an issue that is non-arbitrable together with other issues which are arbitrable, only the part of the award that relates to the non-arbitrable issue is invalid. Naturally, this presupposes that the non-arbitrable issue is distinguishable from the other issues dealt with in the award. Likewise, the enforceability of the award also depends on whether the invalid part of an award is distinguishable from the rest of the award.[83]

## 8.3  Challenge of Arbitral Awards

### 8.3.1  Grounds for challenging an award

Pursuant to section 34(1) of the SAA, an arbitral award will be wholly or partially set aside    **8.60**
on the request of a party:

1. if it is not covered by a valid arbitration agreement between the parties;
2. if the arbitrators have rendered the award after the expiration of the period decided on by the parties,

---

[80]  See para 8.118.
[81]  Govt Bill 1998/99: 35, p 141.
[82]  In such a situation, a party might be entitled to have the dispute retried by an arbitral tribunal, possibly on the basis of section 35 of the SAA. For a discussion of section 35 of the SAA, see para 8.193.
[83]  Govt Bill 1998/99:35, p 234.

3. if the arbitrators have exceeded their mandate, in a manner that probably influenced the outcome of the case;

4. if the arbitration, according to section 47, should not have taken place in Sweden;

5. if an arbitrator has been appointed contrary to the agreement between the parties or the SAA;

6. if an arbitrator was unauthorized due to any circumstance set out in sections 7 or 8 of the SAA; or

7. if, without fault of the party, there otherwise occurred an irregularity in the course of the proceedings which probably influenced the outcome of the case.

**8.61**  As mentioned above,[84] it is not in the discretion of the court to decide on whether or not to set aside an award if all the conditions for setting aside the award have in fact been met. If a party has requested such action and the conditions are met, the court *shall* set aside the award. Although, the court, subject to the fulfilment of certain requirements, may also give the arbitrators the opportunity to rectify defects in the award.[85] Furthermore, the entire arbitral award need not be set aside. If, for instance, a procedural mistake has only affected a certain part of an award, it may be sufficient to set aside only that part of the award.[86]

**8.62**  A party challenging an award must bring such action within two months from the date when the party received the award. The period begins when the party in question received the award in its entirety.[87] If after the rendering of the award the arbitrators have corrected, supplemented, or interpreted the operative part of the award pursuant to section 32 of the SAA, the challenge must be brought within a period of two months from the date when the party received the award in its final wording.

**8.63**  Expiry of the two-month period without a challenge precludes any subsequent attempts to have an award set aside. It is important to note that it is not sufficient to file a blank challenge within the two-month period. The party challenging the award must also within the two-month period specify the legal grounds upon which the challenge rests.[88] No extension of time may be granted to the challenging party.[89] However, in order for the grounds to be precluded the respondent must also make an objection to this effect the first time that the respondent answers to the court.[90] Accordingly, the court will not *ex officio* try whether or

---

[84] See para 8.05.

[85] See para 8.193.

[86] Cf *Joint Stock Company Belgorkhimprom v Koca İnşaat Sanayi Ihracat Anonim Şirketi*, NJA 2019 p 171, discussed at paras 8.10 *et seq.*

[87] See *AB Akron-Maskiner v N–GG* (NJA 2002 p 377).

[88] Govt Bill 1998/99:35, p 149; *Restaurangprodukter i Tyresö AB v KF/Procordia International AB* (NJA 1996 s 751) and *Bostadsrättsföreningen Korpen v Byggnads AB Åke Sundvall*, Svea Court of Appeal, judgment of 16 February 2007 in Case No T 1649-04.

[89] In the case of *Fastigheten Preppen v Carlsberg* (RH 2009:91) the challenging party Fastigheten Preppen submitted its challenge on 12 November 2008 (within the then required three-month period) but the challenge did not include any grounds. The court did, however, grant Fastigheten Preppen an extension of time to supplement its challenge, until 5 December 2008 at the latest. On 9 December 2008, Fastigheten Preppen finally submitted the grounds for its challenge. Carlsberg requested that the challenge be dismissed since the grounds had not been identified until after the three-month period. The court concluded that the grounds had been submitted too late and that Carlsberg had duly made an objection as to this fact. The court therefore declared the grounds presented by Fastigheten Preppen to be precluded and dismissed the challenge in its entirety.

[90] Ibid.

not the challenge has been made within the two-month period. Moreover, following the expiry of the time limit, a party may not invoke a new legal ground in support of his claim.

The reasoning of the Supreme Court in the *Belgor* case was referred to and relied on by **8.64** the Svea Court of Appeal in *Städexia AB v Oskar Berger Pension AB*.[91] In this arbitration, between two Swedish companies, the claimant in the arbitration—Oskar Berger Pension AB—based its claims on a share purchase agreement, and was partially successful. The respondent in the arbitration—Städexia AB—argued that the claims were rather based on a credit agreement between the same parties which did not have an arbitration clause. The respondent asked the arbitral tribunal to dismiss the claims. The arbitral tribunal, however, ruled partially in favour of the claimant based on the share purchase agreement.

In the challenge proceedings before the Svea Court of Appeal, Städexia AB argued that the **8.65** award must be set aside because there was no valid arbitration agreement between the parties. In the view of Städexia AB, the claims presented in the arbitration were based on the credit agreement and not on the share purchase agreement.

Referring to the *Belgor* case, the Svea Court of Appeal started out by noting that when deter- **8.66** mining the scope of application of an arbitration agreement traditional rules of contract application are to be applied.[92] It went on to say—again relying on the *Belgor* case—that when courts are to rule on the jurisdiction of an arbitral tribunal, the starting point should usually be that it is the arbitral tribunal which is best placed to try the issue of its own jurisdiction, and that the interpretation and evaluation of evidence of arbitral tribunal are correct. The test in challenge proceedings is therefore whether the claimant in those proceedings has established that the arbitral tribunal has made an incorrect assessment of the scope of application of the arbitration agreement.[93]

Guided by these principles, the Svea Court of Appeal found that Städexia AB had not been **8.67** able to show that the arbitral tribunal had made an incorrect evaluation of the scope of application of the arbitration agreement. Consequently, the arbitral award was not set aside.[94] The term 'ground' in this context does not refer to the grounds enumerated in section 34, but rather to the more legal-technical concept of a 'legal ground' under Swedish procedural law. This means, for example, that if a party has challenged an award by arguing that one of the arbitrators was not qualified to act as arbitrator, it could not, after the expiration of the two-month period, argue that another arbitrator was not qualified to act. On the other hand, a party would not be prevented from adjusting certain sets of *facts* which come within the scope of the same legal ground. For example, if a party has argued that an arbitrator should be prevented from acting as arbitrator because he is the nephew of the other party, that party could argue, even after the expiration of the two-month period, that the same arbitrator is actually the son of the other party.[95]

[91] *Städexia AB v Oskar Berger Pension AB*, Case No T 1151-192, 6 May 2020.
[92] Ibid, p 9.
[93] Ibid, pp 9–10.
[94] Ibid, p 10.
[95] Hobér, 'Arbitration Reform in Sweden', *Arbitration International* (2001) para 383.

### 8.3.2 No arbitration agreement

**8.68**    The first ground in section 34 of the SAA for challenging an award is lack of a valid arbitration agreement covering the dispute. It follows from the consensual nature of arbitration that arbitration proceedings cannot be based on an arbitration agreement which is invalid or no longer in effect. An award may therefore be challenged and set aside if the arbitration agreement was void *ab initio* or, though originally valid, was terminated prior to or in the course of the proceedings.[96] If the arbitrators have ruled in a dispute which is not covered by a valid arbitration agreement, the arbitral award must be set aside on the basis of this provision. It may sometimes be difficult, however, to distinguish between this provision and item 3 of section 34 of the SAA which deals with the arbitrators having exceeded their mandate. On the other hand, it matters little from a practical point of view if the award is set aside on the basis of item 1 or on the basis of item 3.

**8.69**    In the *Belgor* case,[97] the major issue was whether the arbitral tribunal had ruled on an issue which was not covered by a valid arbitration agreement. The arbitral tribunal found that the arbitration agreement in the construction contract covered certain additional works performed by the Turkish construction company Koca. As discussed in paragraphs 3.07 *et seq*, the Supreme Court found that there was no basis for not accepting the assessment by the arbitral tribunal of the dispute settlement agreement entered into by the parties.

**8.70**    As mentioned above, as a main rule, an arbitration agreement is, with a few exceptions, binding only on the parties to such an agreement.[98] Consequently, if a third party has become involved in the arbitration proceeding against its will, such party may subsequently challenge the award on the basis that the award was not covered by a valid arbitration agreement binding upon him. It is also noteworthy that non-arbitrability on the basis of an applicable foreign law does not mean that the resulting award is void, but rather that the arbitration agreement is invalid and that therefore the resulting award may be challenged on the basis that there was no valid arbitration agreement.[99] In practice, however, this situation is very unusual, since Swedish law would be applicable to the arbitration agreement in most arbitrations in Sweden by virtue of section 48 of the SAA.[100]

### 8.3.3 Award after the expiration of a time limit for rendering of the award

**8.71**    The second challenge ground mentioned in section 34 of the SAA reference is when an award was rendered after the expiry of the award period, if any. In the 1999 SAA this ground was part of the provision dealing with excess of mandate, but in the 2019 revision of the SAA, the two grounds were separated.

**8.72**    The SAA does not provide for any time limit for the rendering of the award. However, the parties may in the arbitration agreement, or during the course of the proceedings, agree on such

---

[96] See paras 3.168 *et seq* and 3.77 *et seq*.
[97] See paras 8.10 *et seq*.
[98] Cf para 3.130 *et seq*, with respect to the effect of an arbitration agreement on third parties.
[99] See para 8.30.
[100] See para 2.201.