# EXHIBIT 58



| | | |
|---|---|---|
| SVEA HOVRÄTT<br>Avdelning 02<br>Rotel 020114 | **DOM**<br>2024-06-17<br>Stockholm | Mål nr<br>T 3229-19 |

**PARTER**

**Kärande**
Republiken Italien
Avvocatura Generale dello Stato
Via dei Portoghesi, 12
Rom 00186
Italien

Ombud: Advokaterna James Hope, Mattias Rosengren och Cecilia Möller Norsted
Advokatfirman Vinge KB
Box 1703
111 87 Stockholm

**Svarande**
1. Athena Investments A/S, 36696915
Harbour House
Sundkrogsgade 21
2100 Köpenhamn Ö
Danmark

2. NovEnergia II Energy & Environment (SCA) SICAR i likvidation, LU 21750780
28, Boulevard Royal
L-2449 Luxemburg
Luxemburg

3. NovEnergia II Italian Portfolio SA, LU 23930876
28, Boulevard Royal
L-2449 Luxemburg
Luxemburg

Ombud för 1–3: Advokaterna Jakob Ragnwaldh, Robin Rylander, David Sandberg och
Mattias Arnesson samt biträdande juristerna Anna Liliebäck och Hedvig Aspelin
Mannheimer Swartling Advokatbyrå AB
Box 1711
111 87 Stockholm

**SAKEN**
Ogiltighet och klander av skiljedom

_____

Dok.Id 2057869

| Postadress | Besöksadress | Telefon | Telefax | Expeditionstid |
|---|---|---|---|---|
| Box 2290<br>103 17 Stockholm | Birger Jarls Torg 16 | 08-561 670 00<br>08-561 675 00<br>**E-post**: svea.avd2@dom.se<br>www.svea.se | | måndag – fredag<br>08:00–16:30 |

SVEA HOVRÄTT           **DOM**

Avdelning 02

Sid 2

T 3229-19

## HOVRÄTTENS DOMSLUT

1. Hovrätten bifaller käromålet på så sätt att hovrätten förklarar den i Stockholm meddelade skiljedomen av den 23 december 2018 i SCC:s mål nr V 2015/095 ogiltig.

2. Athena Investments A/S, NovEnergia II Energy & Environment (SCA) SICAR i likvidation och NovEnergia II Italian Portfolio SA ska solidariskt ersätta Republiken Italien för dess rättegångskostnad i hovrätten med 144 679,11 EUR och 2 800 kr jämte ränta på beloppen enligt 6 § räntelagen från dagen för hovrättens dom till dess betalning sker. Av ersättningen utgör 102 000 EUR ombudsarvode.

———————————————

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 3
T 3229-19

### BAKGRUND

Republiken Italien (Italien) är medlemsstat i Europeiska unionen (EU). Athena Invest-
ments A/S (tidigare Greentech Energy Systems A/S) är ett danskt investeringsbolag,
NovEnergia II Energy & Environment (SCA) SICAR i likvidation är en luxemburgsk
investeringsfond och NovEnergia II Italian Portfolio SA är ett luxemburgskt aktie-
bolag. (Tillsammans benämns svarandeparterna som investerarna.) Även Danmark och
Luxemburg är medlemsstater i EU. Italien, Danmark, Luxemburg och EU har alla
undertecknat och ratificerat energistadgefördraget (EGT L 69, 9.3.1998, s. 1–116).

Under perioden 2008 till 2013 förvärvade investerarna ägarintressen i solenergi-
anläggningar i Italien.

Den 7 juli 2015 påkallade investerarna skiljeförfarande mot Italien vid Stockholms
Handelskammares Skiljedomsinstitut (SCC) enligt artikel 26 i energistadgefördraget,
och institutets skiljedomsregler. Som grund för talan åberopade investerarna att Italien
hade brutit mot sina förpliktelser enligt energistadgefördraget. Sätet för skiljeförfaran-
det var Stockholm.

Den 23 december 2018 meddelades skiljedomen, enligt vilken Italien brutit mot sina
förpliktelser enligt bestämmelsen i artikel 10.1 energistadgefördraget. Italien förplikta-
des genom skiljedomen att betala skadestånd och ersättning för investerarnas kost-
nader, innefattande deras kostnader för skiljeförfarandet.

Italien ansökte i mars 2019 om stämning mot investerarna och yrkade bl.a. att skilje-
domen skulle förklaras ogiltig och att fortsatt verkställighet av skiljedomen tills vidare
inte skulle få ske (inhibition). Hovrätten beslutade den 28 mars 2019 att bifalla
ansökan om inhibition.

Den 9 mars 2021 beslutade hovrätten att begära förhandsavgörande av Europeiska
unionens domstol (EU-domstolen) och förordnade att målet skulle vila i avvaktan på
EU-domstolens ställningstaganden.  Den 27 oktober 2021 översände EU-domstolen
kopior av domstolens domar av den 2 september 2021, République de Moldavie,

SVEA HOVRÄTT
Avdelning 02

**DOM**

 C-741/19, EU:C:2021:655 (ofta benämnt Komstroy) och den 26 oktober 2021,
PL Holdings, C-109/20, EU:C:2021:875 och ställde samtidigt frågan till hovrätten om
begäran om förhandsavgörande vidhölls. Hovrätten beslutade den 24 november 2021
att svara EU-domstolen att begäran om förhandsavgörande inte vidhölls.


**YRKANDEN M.M.**

Italien har yrkat att hovrätten i första hand ska förklara skiljedomen ogiltig i dess
helhet eller upphäva den i dess helhet. För det fall hovrätten skulle finna att skilje-
domen inte kan eller bör förklaras ogiltig eller upphävas i viss eller vissa delar, har
Italien yrkat i andra hand att hovrätten ska ogiltigförklara eller upphäva skiljedomen i
övriga delar.

Investerarna har motsatt sig Italiens yrkanden.

Parterna har yrkat ersättning för rättegångskostnader.

Målet har med parternas samtycke avgjorts utan huvudförhandling.

**PARTERNAS TALAN**

**Italien**

***Ogiltighet enligt 33 § första stycket 1 eller 2 lagen om skiljeförfarande***

Skiljedomen är ogiltig enligt såväl 33 § första stycket 1 som 33 § första stycket 2 lagen
(1999:116) om skiljeförfarande (skiljeförfarandelagen).

Skiljedomen innefattar prövning av frågor som enligt svensk lag inte får avgöras av
skiljemän. EU-domstolen har slagit fast att skiljeklausulen i artikel 26 energistadge-
fördraget ska tolkas så att den inte är tillämplig på tvister mellan en medlemsstat och
en investerare från en annan medlemsstat. Sådana tvister får inte lämnas till avgörande

av skiljemän, vare sig på förhand eller när de uppkommit. Detta eftersom en sådan skiljenämnd har att tolka och tillämpa unionsrätten, och det inte finns någon möjlighet för en skiljenämnd att begära förhandsavgörande hos EU-domstolen. Det finns därmed en begränsning i lag – i detta fall i artiklarna 267 och 344 Fördraget om Europeiska unionens funktionssätt (FEUF) och artiklarna 4.3 och 19 Fördraget om Europeiska unionen (FEU). Det föreligger således ett indispositivt processhinder. Sådana investeringstvister faller utanför det skiljedomsmässiga området även på den grunden att de rör allmänna intressen på ett märkbart sätt. Bevarandet av unionsrättens särskilda egenskaper och dess autonomi är ett sådant allmänt intresse som medför att tvisten inte är skiljedomsmässig.

Vidare är skiljedomen och det sätt på vilket den tillkommit uppenbart oförenligt med grunderna för rättsordningen i Sverige. Skiljeförfarandet har haft sin grund i artikel 26 energistadgefördraget. Ett sådant skiljeförfarande kan leda till att en skiljenämnd avgör tvister som kan avse tillämpning eller tolkning av unionsrätten. Skiljenämnden har inte kunnat begära förhandsavgörande från EU-domstolen och den begränsade prövning av en skiljedom som kan göras enligt svensk rätt är inte tillräcklig för att garantera unionsrättens fulla verkan. Skiljeklausulen i artikel 26 är därmed ägnad att undergräva såväl principen om ömsesidigt förtroende mellan medlemsstaterna som bevarandet av unionsrättens särdrag, som säkerställs genom förfarandet för förhandsavgöranden enligt artikel 267 FEUF. Skiljeklausulen är således inte förenlig med principerna om lojalt samarbete i artikel 4.3 första stycket FEU och undergräver unionsrättens autonomi, vilken bl.a. stadfästs i artikel 344 FEUF. Skiljedomen har alltså tillkommit på ett rättsstridigt sätt, eftersom den är oförenlig med de grundläggande bestämmelser och principer som reglerar rättsordningen i unionen och därmed också i Sverige. Skiljenämnden har trots detta ansett sig behörig att pröva tvisten.

***Upphävande efter klander enligt 34 § första stycket 1 skiljeförfarandelagen***

Skiljedomen ska upphävas, eftersom den inte omfattas av ett giltigt skiljeavtal mellan parterna.

**DOM**

Något giltigt skiljeavtal har inte kunnat ingås mellan investerarna och Italien baserat på artikel 26 energistadgefördraget. En tolkning av fördraget i enlighet med Wien-konventionen och unionsrätten ger vid handen att den inte avser en tvist mellan en medlemsstat och en investerare från en annan medlemsstat.

Om energistadgefördraget, vid en tolkning, skulle anses medföra att artikel 26 omfattar tvister mellan en medlemsstat och en investerare från en annan medlemsstat, är skilje-klausulen i artikeln under alla förhållanden oförenlig med unionsrätten. Energi-stadgefördraget utgör en integrerad del av unionsrätten eftersom EU är part i fördraget. EU-fördragen, i synnerhet artiklarna 267 och 344 FEUF, utgör hinder mot skilje-klausulen i artikel 26 medlemsstater emellan. En sådan tvist kan komma att avse tolkning och tillämpning av unionsrätten. Artikel 26 är därmed inte tillämplig eller giltig i tvister mellan en medlemsstat och en investerare från en annan medlemsstat. Det föreligger därmed inte något giltigt anbud som kan ligga till grund för ett giltigt skiljeavtal. Det förhållandet att EU är part i energistadgefördraget förändrar inte bedömningen. Något giltigt skiljeavtal har alltså inte kommit till stånd mellan Italien och investerarna.

Påståendet om att Italien skulle ha förlorat rätten att göra gällande att det inte föreligger ett giltigt skiljeavtal av den anledningen att skiljeklausulen i artikel 26 strider mot unionsrätten bestrids. Av EU-domstolens avgörande i PL Holdings följer att hovrätten är förhindrad att tillämpa bestämmelsen i 34 § andra stycket skilje-förfarandelagen på denna fråga, eftersom konsekvensen skulle kunna bli (om invändningen bedömdes ha fog för sig) att en skiljedom i ett skiljeförfarande som inletts med stöd av en ogiltig skiljeklausul upprätthålls. Vidare saknar investerarnas preklusionsinvändning fog för sig. Italien invände redan i svaromålet i skilje-förfarandet att skiljenämnden inte var behörig bl.a. på grund av att skiljeklausulen i artikel 26 strider mot unionsrätten. Därefter vidhöll och preciserade Italien invänd-ningen under skiljeförfarandet. Detta bl.a. med hänvisning till avgörandet i EU-domstolens dom av den 6 mars 2018, Achmea, C-284/16, EU:C:2018:158, och att anbudet om skiljeförfarande i artikel 26 inte är tillämpligt eller giltigt. Investerarna framförde inte vid något tillfälle under skiljeförfarandet att invändningen framställts för sent, utan tvärtom bemötte de invändningen i sak och accepterade att den prövades.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### *Proportionalitetsprincipen*

Påståendet om att en ogiltigförklaring eller ett upphävande av skiljedomen skulle strida mot den unionsrättsliga proportionalitetsprincipen bestrids. Om hovrätten skulle konstatera att skiljedomen, och det skiljeavtal som skiljedomen grundas på, strider mot grundläggande unionsrättsliga regler, och sådan grund för ogiltigförklaring eller upphävande därför föreligger, är också en ogiltigförklaring eller ett upphävande nödvändigt för att säkerställa dessa grundläggande unionsrättsliga reglers efterlevnad.

### **Investerarna**

### ***Ogiltighet enligt 33 § första stycket 1 eller 2 skiljeförfarandelagen***

Skiljedomen omfattar inte en prövning av en fråga som enligt svensk lag inte får prövas av skiljemän. Vidare är varken skiljedomen eller det sätt på vilken den tillkommit uppenbart oförenligt med grunderna för rättsordningen i Sverige.

Parterna hade kunnat reglera sina mellanhavanden, dvs frågan om kompensation för Italiens avtalsbrott, genom ett förlikningsavtal. Frågorna är således skiljedomsmässiga.

En skiljenämnd som har att pröva en tvist enligt energistadgefördraget kan inte komma att tillämpa unionsrätten.

Energistadgefördraget är en folkrättslig traktat som ska tolkas och tillämpas i enlighet med Wienkonventionens bestämmelser. Att artikel 26 energistadgefördraget är tillämplig på tvisten och det har funnits anbud om skiljeförfarande från Italien till investerarna följer direkt av bestämmelsens ordalydelse. Även traktatens förarbeten bekräftar att bestämmelsen är tillämplig även mellan medlemsstater och investerare från andra medlemsstater. Under de förhandlingar som föregick energistadgefördraget enades de fördragsslutande parterna om att inte införa någon bestämmelse i traktaten som undantar sådana EU-interna förhållanden från fördragets tillämpningsområde.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Det är i egenskap av folkrättslig traktat som energistadgefördraget binder parterna, innefattande för detta måls vidkommande Italien, Luxemburg och Danmark. Tolkningen av den folkrättsliga traktaten påverkas inte av EU-domstolens avgörande i République de Moldavie. EU-domstolen saknar behörighet, både enligt unionsrätten och folkrätten, att med bindande verkan tolka energistadgefördraget i dess egenskap av folkrättslig traktat. EU-domstolens uttalanden om tolkningen av energistadgefördraget är begränsade till tolkningen av energistadgefördraget i egenskap av EU-rättsakt. Uttalandena avser inte energistadgefördraget i egenskap av folkrättslig traktat, tolkad enligt Wienkonventionen.

Tillämpligheten av EU-domstolens avgörande i République de Moldavie, liksom avgörandet i Achmea, bygger på den omständigheten att skiljedomen endast kan bli föremål för begränsad domstolsprövning. När sätet för skiljeförfarandet är i Sverige kan en domstol inom ramen för en ogiltighets- eller klandertalan genomföra en utvidgad kontroll av om en skiljedom strider mot tvingande unionsrätt. Artikel 26 energistadgefördraget strider därmed i vart fall inte mot unionsrätten under förutsättning att sätet för skiljeförfarandet är i Sverige.

Rättsföljden av en oförenlighet mellan skiljeklausulen i artikel 26 och unionsrätten är inte heller enligt unionsrätten att skiljeklausulen i artikel 26 är ogiltig. EU-domstolen har i sin praxis bekräftat att folkrätten binder även EU, att internationella fördrag som EU och dess medlemsstater ingått har företräde framför unionsrätten, att EU respekterar den folkrättsliga principen om pacta sunt servanda, och att EU inte kan åberopa unionsrätt till stöd för underlåtenhet att efterleva traktater.

***Upphävande efter klander enligt 34 § första stycket 1 skiljeförfarandelagen***

Artikel 26 energistadgefördraget innehåller ett giltigt och bindande anbud om skiljeförfarande från alla fördragsslutande parter till investerare från alla andra fördragsslutande parter. Det saknas stöd såväl i artikelns ordalydelse som i dess kontext för att tvister mellan en medlemsstat och en investerare från en annan medlemsstat ska undantas från fördragets tvistlösningsmekanism. Anbudet under artikel 26 är giltigt. Italiens klandergrund saknar fog eftersom tillämpligheten av artikeln, och det däri

innefattade anbudet om skiljeförfarande, styrs av folkrätten och inte av unionsrätten. Även om unionsrätten vore tillämplig strider inte artikel 26 mot denna.

Energistadgefördraget är en multilateral traktat som har ingåtts av EU:s medlemsstater, tredje länder och EU själv. Unionsrätten är inte tillämplig materiell rätt i förfaranden under energistadgefördraget. Skulle konflikt uppstå mellan Lissabonfördraget och energistadgefördraget, har energistadgefördraget företräde enligt dess artikel 16.

Italien har på grund av preklusion förlorat rätten att göra gällande att skiljeklausulen i artikel 26 energistadgefördraget är ogiltig. Under skiljeförfarandet gjorde Italien endast gällande att artikel 26 ska tolkas som att den inte innehåller ett anbud om skilje-förfarande från en medlemsstat till en investerare från en annan medlemsstat. Det som Italien nu åberopar – att det inte förelegat något giltigt skiljeavtal av den anledningen att anbudet under artikel 26 ska anses ogiltigt såsom stridande mot unionsrätten – har Italien inte invänt under skiljeförfarandet. EU-domstolens dom i PL Holdings innebär inte att preklusionsbestämmelsen 34 § andra stycket skiljeförfarandelagen inte kan tillämpas. Investerarna har inte förlorat rätten att göra gällande preklusion.

### *Proportionalitetsprincipen*

Att upphäva eller ogiltigförklara skiljedomen på basis av unionsrätten skulle strida mot den unionsrättsliga proportionalitetsprincipen. De EU-rättsliga intressen som Italien hänvisar till äventyras inte när det, som i detta fall, är fråga om ett avgörande som de facto inte grundas på unionsrätt. Ett upphävande eller ogiltigförklarande av skilje-domen är därmed inte ägnat att uppnå de ändamål som Italien åberopar. Ett upphävan-de eller ogiltigförklarande skulle vidare dels få drastiska ekonomiska konsekvenser för investerarna, dels innebära en allvarlig rättsförlust eftersom investerarnas möjligheter att få Italiens kränkningar prövade kraftigt skulle begränsas. Om skiljedomen skulle upphävas på unionsrättslig grund, skulle alltså investerarna lida allvarlig skada, och Italien belönas för att Italien ingått en folkrättslig traktat (som även ingåtts av EU själv och som investerarna förlitat sig på) i strid med Italiens unionsrättsliga åtaganden.

SVEA HOVRÄTT
Avdelning 02

**DOM**

## UTREDNINGEN

Parterna har åberopat skriftlig bevisning.

## DOMSKÄL

### Disposition och prövningsordning

Italien har yrkat att skiljedomen i första hand ska ogiltigförklaras i dess helhet enligt 33 § skiljeförfarandelagen eller upphävas i dess helhet enligt 34 § samma lag. I andra hand har Italien yrkat att skiljedomen ska ogiltigförklaras eller upphävas delvis. Italien har åberopat flera alternativa grunder till stöd för sin ogiltighets- och klandertalan. Italien har förklarat sig inte ha någon synpunkt på i vilken ordning hovrätten prövar yrkandena om ogiltigförklaring respektive upphävande.

Hovrätten konstaterar att ogiltighetsreglerna och klanderreglerna, i 33 § respektive 34 § skiljeförfarandelagen, tillgodoser olika skyddsintressen. Medan klanderreglerna tar sikte på skiljeparternas skyddsintressen syftar ogiltighetsreglerna till att skydda ett allmänt eller tredje mans intresse. Ogiltigheten får göras gällande utan någon tids- begränsning och domstolen ska beakta ogiltighetsreglerna även utan yrkande av en part (se prop. 1998/99:35, s. 140 och 231).

Hovrätten prövar först om EU-domstolens avgöranden i Achmea, République de Moldavie och PL Holdings medför att skiljedomen är ogiltig på grund av att det sätt på vilket den tillkommit är uppenbart oförenligt med grunderna för rättsordningen i Sverige (se 33 § första stycket 2 skiljeförfarandelagen, jfr NJA 2022 s. 965). Först om skiljedomen inte skulle anses ogiltig på den grunden, finns det skäl för hovrätten att pröva övriga ogiltighets- eller klandergrunder.

SVEA HOVRÄTT
Avdelning 02

**DOM**

**Skiljedomens ogiltighet enligt 33 § första stycket 2 skiljeförfarandelagen**

EU-domstolen har i de tre förhandsavgörandena Achmea, République de Moldavie och
PL Holdings uttalat sig om skiljeklausuler i internationella investeringsskyddsavtal,
som ingåtts av två eller flera medlemsstater i EU, och avtalens förenlighet med
unionsrätten.

I *Achmea* gällde frågan en skiljeklausul i ett investeringsskyddsavtal mellan två
medlemsstater. Med hänvisning till att förfarandet med förhandsavgörande utgör
kärnan i det unionsrättsliga domstolssystemet konstaterade EU-domstolen, *att skilje-
nämnden kunde komma att tolka och tillämpa unionsrätten men att* skiljenämnden inte
utgjorde en domstol i den mening som avses i artikel 267 FEUF som kunde begära
förhandsavgörande, samt *att* den behöriga nationella domstolen endast fick göra den
begränsade prövning som följer av nationell rätt (se Achmea, punkterna 37–53).

EU-domstolen uttalade vidare att de aktuella medlemsstaterna genom att ingå ett
bilateralt avtal upprättat en mekanism för att lösa tvister mellan en investerare och en
medlemsstat som kan innebära att dessa tvister avgörs på ett sätt som inte säkerställer
unionsrättens fulla verkan. Enligt EU-domstolen var den aktuella skiljeklausulen i
avtalet inte förenlig med principen om lojalt samarbete och undergrävde därmed
unionsrättens autonomi (se Achmea, punkterna 56–59).

I *République de Moldavie* uttalade sig EU-domstolen, bl.a. med hänvisning till sina
uttalanden i Achmea, om skiljeklausulen i artikel 26.2. c) energistadgefördraget. EU-
domstolen erinrade om att ett internationellt avtal, enligt domstolens fasta praxis, inte
får inkräkta på den befogenhetsordning som slagits fast i fördragen och därmed på
autonomin hos unionens rättsordning. Domstolen konstaterade också att eftersom
energistadgefördraget är en unionsrättsakt har en sådan skiljedomstol som avses i
artikel 26.6 att tolka och till och med tillämpa unionsrätten. (Se avgörandet p. 42, 49
och 50.)

Därefter prövade EU-domstolen, med hänvisning till sina uttalanden i Achmea, *dels*
om den aktuella skiljedomstolen utgjorde en del av domstolssystemet i Frankrike, *dels*

SVEA HOVRÄTT
Avdelning 02

**DOM**

om en skiljedom från en sådan skiljedomstol var underkastad en kontroll av en dom-
stol som kan säkerställa att unionsrätten iakttas fullt ut och eventuellt begära förhands-
avgörande från EU-domstolen (se République de Moldavie, p. 51–60 med däri gjorda
hänvisningar till Achmea). Dessa frågor besvarades nekande.

Mot denna bakgrund uttalade EU-domstolen att artikel 26.2. c) energistadgefördraget
ska tolkas så att den inte är tillämplig på tvister mellan en medlemsstat och en inves-
terare från en annan medlemsstat angående en investering som sistnämnda investerare
gjort i den förstnämnda medlemsstaten (République de Moldavie, p. 66).

I det efterföljande avgörandet *PL Holdings* har EU-domstolen förtydligat att frågan
huruvida ett skiljeorgans behörighet är giltig i de nu aktuella fallen inte kan vara
beroende av hur parterna i tvisten agerar (jfr PL Holdings, p. 51–56). Av PL Holdings
följer också att skiljeklausuler som har sin grund i internationella investeringsskydds-
avtal mellan medlemsstater strider mot några av de mest grundläggande unionsrättsliga
principerna i EU-fördragen, såsom principerna om ömsesidigt förtroende mellan med-
lemsstaterna, lojalt samarbete och unionsrättens autonomi (se t.ex. PL Holdings, p. 46
med däri gjord hänvisning till Achmea).

Högsta domstolen har i NJA 2022 s. 965 uttalat att de nämnda förhandsavgörandena
som lämnats av EU-domstolen framför allt rör frågan huruvida medlemsstaterna har
möjlighet att undandra tvister rörande myndigheters tillämpning av unionsrätten från
unionens domstolssystem. Det är alltså fråga om grundläggande rättsprinciper av
procedurmässig art. En sådan skiljedom mellan en medlemsstat och en investerare från
en annan medlemsstat, som har meddelats med stöd av en skiljeklausul i ett inter-
nationellt investeringsavtal, får anses ha tillkommit på ett rättsstridigt sätt, eftersom
den är oförenlig med de grundläggande bestämmelser och principer som reglerar
rättsordningen i unionen och därmed också i Sverige. (Se punkterna 55, 59 och 60 i
rättsfallet.)

Den nu aktuella skiljedomen har meddelats i en investeringstvist mellan en medlems-
stat och investerare från andra medlemsstater med stöd av artikel 26 i energistadge-
fördraget. Ett upprätthållande av skiljedomen skulle därmed vara uppenbart

SVEA HOVRÄTT
Avdelning 02

**DOM**

oförenligt med grunderna för rättsordningen i Sverige. Hovrättens ställningstaganden innebär att det finns förutsättningar enligt 33 § första stycket 2 skiljeförfarandelagen att ogiltigförklara skiljedomen. Vad investerarna gjort gällande rörande den unionsrättsliga proportionalitetsprincipen medför inte hinder mot att ogiltigförklara skiljedomen. Skiljedomen ska således förklaras ogiltig. Därmed finns det inte skäl att pröva övriga ogiltighets- och klandergrunder.

**Rättegångskostnad**

Italien har fått fullt bifall till sin talan. Enligt 18 kap. 1 § rättegångsbalken ska part som tappar målet som huvudregel ersätta motparten dennes rättegångskostnad. Det finns inte skäl att frångå huvudregeln i detta fall. Investerarna ska alltså som tappande parter förpliktas att ersätta Italien för dess rättegångskostnad.

Enligt 18 kap. 8 § rättegångsbalken ska ersättning för rättegångskostnad fullt motsvara kostnaden för rättegångens förberedande och talans utförande jämte arvode till ombud eller biträde, såvitt kostnaden skäligen varit påkallad för tillvaratagande av partens rätt. Ersättning ska också utgå för partens arbete och tidsspillan i anledning av rättegången.

Italien har yrkat ersättning med 102 000 EUR avseende ombudsarvode, 5 644,28 EUR avseende översättningsarvode, 30 000 EUR avseende eget arbete, 6 641,53 EUR avseende utlägg, 4 571,43 EUR avseende italiensk pensionsskatt för advokater och 26 148,60 EUR avseende italiensk mervärdesskatt.

Investerarna har vitsordat Italiens kostnad för ombudsarvode som skälig. De har invänt mot skäligheten i yrkad ersättning för eget arbete och pensionsskatt.

Hovrätten gör följande bedömning i fråga om Italiens yrkade ersättning för rättegångskostnad.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 14
T 3229-19

*Ombudsarvode*

Skäligheten i Italiens yrkade ersättning för ombudsarvode är vitsordad av investerarna och Italien ska därför tillerkännas ersättning i enlighet med sitt yrkande om 102 000 EUR.

*Eget arbete*

Italien har yrkat ersättning för 60 timmars eget arbete, med en timkostnad om 500 EUR, dvs. för en total kostnad om 30 000 EUR. Arbetet ska ha utförts av Italiens interna jurister med särskild inriktning mot tvistlösning och processföring.

Investerarna har gjort gällande att tillerkännande av ersättning för arbete av statsanställda tjänstemän i denna typ av tvist inte är skäligt, och att under alla förhållanden är nivån på den ersättning som Italien begär inte skälig. De har vitsordat 2 000 kr som en i och för sig skälig timkostnad.

Inledningsvis konstaterar hovrätten att arbete bestående i upphandling och anlitande av ombud, kontakter och avstämningar med ombud samt arbete med upprättande av kostnadsräkning är att hänföra till sådant arbete som normalt uppstår med anledning av att rättegångsombud anlitas för att föra partens talan. Ersättning för sådant arbete kan inte utgå.

Italien har därutöver yrkat ersättning för arbete bestående i koordinering och genomgång av inlagor samt interna avstämningar och diskussioner avseende inlagorna.

När ett ombud har anlitats för att föra partens talan är utgångspunkten att det är ombudet och inte parten själv som ska utföra det arbete som behövs för tillvara-tagandet av partens rätt (jfr NJA 2023 s. 94, p. 15). Italien har inte visat att det varit fråga om sådant arbete som varit skäligen påkallat för att tillvarata Italiens rätt och därför ska ersättas vid sidan av ombudsarvodet. Ersättning för eget arbete ska därför inte utgå.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 15
T 3229-19

*Pensionsskatt för advokater*

Hovrätten finner inte skäl att ifrågasätta Italiens uppgift om att den yrkade ersättningen om 4 571,43 EUR för pensionsskatt för advokater enligt italiensk rätt utgör en kostnad för Italien. Kostnaden bedöms vara såväl ersättningsgill som skälig och ersättning ska därför utgå.

*Översättningsarvode, utlägg och mervärdesskatt*

Vad Italien yrkat i dessa delar bedöms vara såväl ersättningsgillt som skäligt i och för sig. Utlägget bestående i ansökningsavgift till hovrätten har emellertid varit en faktisk kostnad i svenska kronor. Någon mervärdesskatt kan dock inte läggas på ansöknings-avgiften. Ersättning ska således utgå för översättningsarvode om 5 644,28 EUR, för utlägg om 6 373,72 EUR och 2 800 kr samt för mervärdesskatt om 26 089,68 EUR.

**Överklagande**

Hovrätten anser att målet rymmer frågor där det är av vikt för rättstillämpningen att ett överklagande prövas av Högsta domstolen. Hovrätten tillåter därför att domen överklagas (43 § andra stycket LSF).

**HUR MAN ÖVERKLAGAR**, se bilaga A
Överklagande senast 2024-07-15

I avgörandet har deltagit hovrättsråden Ulrika Ihrfelt, Eva Edwardsson, referent (skiljaktig), och Mattias Pleiner (skiljaktig).

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 16
T 3229-19

**SKILJAKTIG MENING**

Hovrättsrådet Eva Edwardsson är skiljaktig i fråga om motiveringen och anför
följande. Jag ansluter mig till de tre första styckena i domskälen under rubriken
"Disposition och prövningsordning", men anser att fjärde stycket ska utgå och att
skälen fram till avsnittet om rättegångskostnad ska ha följande lydelse:

*Skiljedomens ogiltighet*

[De första sju styckena har samma lydelse som majoriteten efter rubriken
"Skiljedomens ogiltighet enligt 33 § första stycket 2 skiljeförfarandelagen"]

EU-domstolen har alltså i målen Achmea, République de Moldavie och PL Holdings
bland annat slagit fast att artikel 267 och 344 FEUF tolkas så att de utgör hinder för
bestämmelser i ett internationellt avtal mellan medlemsstater, enligt vilken en inves-
terare i den ena medlemsstaten, om det uppstår en tvist om investeringar i den andra
medlemsstaten, får inleda ett förfarande mot sistnämnda medlemsstat vid en skilje-
domstol, vars behörighet den medlemsstaten är skyldig att godta. EU-domstolens
avgöranden aktualiserar frågan hur unionsrätten får sin verkan i den svenska rätts-
ordningen i detta fall. Frågan har fler än ett svar.

I Sverige gäller både den svenska rättsordningen och den Europeiska unionens
rättsordning, där den senare är överordnad den förra. En direkt tillämplig bestämmelse
i unionsrätten har företräde framför en motstridig bestämmelse i den svenska rätts-
ordningen. Eftersom unionsrätten är en integrerad del av svensk rätt är också principen
om EU-rättens företräde direkt tillämplig i svensk rätt. Artiklarna 267 och 344 FEUF
har direkt effekt. EU-domstolen har slagit fast att dessa båda artiklar utgör hinder mot
en sådan skiljeklausul som utgjort grunden för det förfarande som resulterat i den
skiljedom detta mål gäller. En skiljedom är enligt 33 § första stycket skiljeförfarande-
lagen ogiltig i tre angivna fall (punkterna 1–3) och får därutöver även anses vara
ogiltig i det fall skiljeklausulen, som utgjort grund för skiljeförfarandet, strider mot
direkt tillämplig unionsrätt. Skiljedomen ska därmed förklaras ogiltig.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Unionsrätten får emellertid också sin verkan i den svenska rättsordningen genom bestämmelser i svensk lagstiftning, närmare bestämt 10 kap. 6 § regeringsformen och 2 och 3 § i lag (1994:1500) med anledning av Sveriges anslutning till Europeiska unionen (anslutningslagen). Det följer av den förra bestämmelsen att riksdagen inom ramen för samarbetet i Europeiska unionen kan överlåta beslutanderätt som inte rör principerna för statsskicket. Sådan överlåtelse förutsätter att fri- och rättighetsskyddet inom det samarbetsområde till vilket överlåtelsen sker motsvarar det som ges i denna regeringsform och i den europeiska konventionen angående skydd för de mänskliga rättigheterna och de grundläggande friheterna. Anslutningslagen anger i sin tur att unionsrätten gäller i Sverige med den verkan som följer av EU-fördragen. Därmed följer även av svensk lag att artiklarna 267 och 344 FEUF utgör hinder mot en sådan skiljeklausul som utgjort grunden för det förfarande som resulterat i den skiljedom detta mål gäller. Frågan har alltså inte varit skiljedomsmässig. Därmed finns förutsättningar att förklara skiljedomen ogiltig enligt 33 § första stycket 1 skiljeförfarandelagen (jfr Svea hovrätts dom den 12 december 2022 i mål T 4658-18, s. 37–39).

Högsta domstolen har i NJA 2022 s. 965 uttalat att en skiljedom mellan en medlemsstat och en investerare från en annan medlemsstat, som har meddelats med stöd av en skiljeklausul i ett internationellt investeringsavtal, får anses ha tillkommit på ett rättsstridigt sätt, eftersom den är oförenlig med de grundläggande bestämmelser och principer som reglerar rättsordningen i unionen och därmed också i Sverige. Ett upprätthållande av de i målet aktuella skiljedomarna var uppenbart oförenligt med grunderna för rättsordningen i Sverige. Till följd av detta förklarades skiljedomarna vara ogiltiga enligt 33 § första stycket 2 skiljeförfarandelagen.

EU-domstolen har i Achmea, p. 32–34 hänvisat till fundamentala EU-rättsliga principer, som unionsrättens autonomi, principen om lojalt samarbete, företrädesprincipen, principen om direkt effekt, medlemsstaternas gemensamma värden, och även hänvisat till sitt yttrande 2/13 (unionens anslutning till Europakonventionen) av den 18 december 2014, EU:C:2014:2454, punkt 201 f.). De nämnda principerna är som sagt grundläggande i unionsrätten och de är på unionsrättslig grund och även enligt

SVEA HOVRÄTT
Avdelning 02

**DOM**

svensk lag gällande i Sverige, men utgör inte unionsrättslig ordre public. En tillämp-ning av 33 § första stycket 2 medför att en skiljedom förklaras ogiltig eftersom ett upprätthållande skulle strida mot svensk ordre public, i fråga om en företeelse som inte utgör ordre public i unionsrätten utan i stället är en av unionsrättens mest fundamentala principer, nämligen företrädesrätten. (Jfr Michael Bogdan, Svensk och EU-domstolens rättspraxis i internationell privat- och processrätt 2021–2022, SvJT 2023 s. 262 f.). Både materiell och processuell ordre public har ju av hävd getts ett mycket snävt tillämpningsområde i svensk rätt och anses endast omfatta höggradigt stötande fall (se NJA 2022 s. 965, p. 52–53). Om processuell ordre public omfattar situationer då svenska domstolar i ett konfliktfall ger företräde för direkt tillämplig unionsrätt, kommer tillämpningsområdet för sådan ordre public utvidgas betydligt. Detta talar mot att pröva skiljedomar, som direkt eller indirekt har sin grund i skiljeklausuler som den som här är aktuell mot reglerna om processuell ordre public i 33 § första stycket 2 skiljeförfarandelagen.

Enligt min mening framstår det som mest ändamålsenligt att förklara skiljedomen ogiltig, eftersom artiklarna 267 och 344 FEUF utgör hinder mot skiljeklausuler av en typ motsvararande den i artikel 26 i energistadgefördraget. Därmed finns inte skäl att pröva någon av klandergrunderna. I övriga delar ansluter jag mig till majoriteten.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 19
T 3229-19

**SKILJAKTIG MENING**

Hovrättsrådet Mattias Pleiner är skiljaktig i frågan om rättegångskostnader, i den del som avser ersättning för parts eget arbete, och anför följande.

Italien har yrkat ersättning med 30 000 EUR, avseende 60 timmars eget arbete med en timkostnad om 500 EUR. Enligt redogörelsen avser yrkandet åtgärder som Italiens interna jurister behövt utföra och som är hänförliga till upphandling och anlitande av externa ombud, kontakter och avstämningar med Italiens externa ombud, koordinering och genomgång av inlagor upprättade av Italiens externa ombud, koordinering och genomgång av inlagor från motparterna, interna avstämningar och diskussioner avseende inlagorna i målet samt upprättande av kostnadsräkning.

Enligt 18 kap. 8 § rättegångsbalken ska ersättning för rättegångskostnad fullt motsvara kostnaden för rättegångens förberedande och talans utförande jämte arvode till ombud eller biträde, såvitt kostnaden skäligen varit påkallad för tillvaratagande av partens rätt. I paragrafen anges att ersättning också ska utgå för partens arbete och tidsspillan i anledning av rättegången.

När det gäller ersättning för eget arbete kan detta avse såväl arbete som utförts av parten själv som arbete som utförts exempelvis av anställda hos parten. Allt som en part utför med anledning av en rättegång kan emellertid inte betraktas som ersättnings-gillt arbete. En viss restriktivitet bör därför prägla bedömningen av när ersättning kan utgå för eget arbete. Det gäller i synnerhet när ett ombud har anlitats för att föra par-tens talan. Utgångspunkten är då att det är ombudet och inte parten själv som ska ut-föra det arbete som behövs för tillvaratagandet av partens rätt. I vissa fall när partens arbete avser något annat än det arbete som ombudet har utfört och arbetet har varit skäligen påkallat för att ta till vara partens rätt kan det dock ersättas vid sidan av ombudsarvodet. (Se NJA 2023 s. 94 p. 12–14.)

Beträffande frågan om parts rätt till ersättning för egen tidsspillan är denna sparsamt belyst i praxis.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Vad som avses med tidsspillan framgår inte av 18 kap. 8 § rättegångsbalken. Normalt bör dock avses sådan tid då partens tid tas i anspråk och annat produktivt arbete inte kan utföras (jfr t.ex. NJA 2017 s. 441 p. 11 angående en offentlig försvarares rätt till ersättning för tidsspillan). I förarbetena till bestämmelsen anges bl.a. att gottgörelse för tidsspillan omfattar inte bara ersättning för förlorad arbetsförtjänst, utan även skäligt vederlag för den ekonomiska uppoffring det eljest kan ha inneburit för parten att han nödgats använda tid för rättegångens förande (se NJA II 1943 s. 235 f.). I doktrinen har det även anförts att som exempel kan nämnas arbetsförtjänst som förlorats till följd av att parten har haft behov av att förhandla med sitt ombud eller inställa sig till en huvudförhandling (Ekelöf m.fl., Rättegång. Tredje häftet, JUNO version 8, 2018 s. 245.)

Att en part har rätt att som rättegångskostnad få skälig ersättning för den tid som har behövt tas i anspråk för rättegången – och som alltså inte kunnat läggas på produktivt arbete – framstår också som rimligt. Detta inte minst eftersom en part ofta kan behöva lägga ner mycket tid och resurser på rättegången, även om denne har ombud. Någon annan egentlig möjlighet att få denna slags kostnad ersatt än genom ersättning för rättegångskostnad torde inte heller finnas.

Även om Italien i detta fall har angett att yrkandet avser ersättning för endast eget arbete, framgår det av den ingivna redogörelsen att merparten av det yrkade beloppet i själva verket avser tidsspillan. I likhet med majoriteten bedömer jag att Italien inte har visat att det har utförts något eget arbete, t.ex. bevisanskaffning, som berättigar till ersättning. Någon ersättning ska därför inte utgå för parts eget arbete. Däremot finns det enligt min mening inte anledning att betvivla att Italiens interna jurister behövt använda en inte oansenlig tid på denna process för t.ex. kontakter och avstämningar med de externa ombuden samt interna genomgångar och avstämningar. Denna tid hade annars kunnat användas för annat produktivt arbete. Vid en samlad bedömning finner jag att skälig ersättning för parts egen tidsspillan uppgår till 10 000 EUR.

Sammantaget bedömer jag således att Italien, utöver vad majoriteten funnit, bör tillerkännas ersättning för rättegångskostnad med 10 000 EUR för parts tidsspillan. Överröstad i denna fråga är jag i övrigt ense med majoriteten.

Bilaga A

**SVERIGES DOMSTOLAR**
www.domstol.se

Bilaga

# Hur man överklagar hovrättens avgörande

Den som vill överklaga hovrättens avgörande ska göra det genom att skriva till Högsta domstolen. Överklagandet ska dock skickas eller lämnas till hovrätten.

## Senaste tid för att överklaga

Överklagandet ska ha kommit in till hovrätten senast den dag som anges i slutet av hovrättens avgörande.

Beslut om häktning, restriktioner enligt 24 kap. 5 a § rättegångsbalken eller reseförbud får överklagas utan tidsbegränsning.

Om överklagandet har kommit in i rätt tid, skickar hovrätten överklagandet och alla handlingar i målet vidare till Högsta domstolen.

## Prövningstillstånd i Högsta domstolen

Det krävs prövningstillstånd för att Högsta domstolen ska pröva ett överklagande. Högsta domstolen får meddela prövningstillstånd endast om

1.  det är av vikt för ledning av rättstillämpningen att överklagandet prövas av Högsta domstolen eller om

2.  det finns synnerliga skäl till sådan prövning, så som att det finns grund för resning, att domvilla förekommit eller att målets utgång i hovrätten uppenbarligen beror på grovt förbiseende eller grovt misstag.

## Överklagandets innehåll

Överklagandet ska innehålla uppgifter om

1.  klagandens namn, adress och telefonnummer,

2.  det avgörande som överklagas (hovrättens namn och avdelning samt dag för avgörandet och målnummer),

3.  den ändring i avgörandet som klaganden begär,

4.  de skäl som klaganden vill ange för att avgörandet ska ändras,

5.  de skäl som klaganden vill ange för att prövningstillstånd ska meddelas, samt

6.  de bevis som klaganden åberopar och vad som ska bevisas med varje bevis.

## Förenklad delgivning

Om målet överklagas kan Högsta domstolen använda förenklad delgivning vid utskick av handlingar i målet, under förutsättning att mottagaren där eller i någon tidigare instans har fått information om sådan delgivning.

## Mer information

För information om rättegången i Högsta domstolen, se www.hogstadomstolen.se

Anvisning för överklagande HR, avgörande, med pt • Producerat av Domstolsverket • 2017-07