# EXHIBIT 61



Sid 1 (36)

| SVEA HOVRÄTT | **DOM** | Mål nr |
|---|---|---|
| Avdelning 02 | 2023-12-20 | T 12646-21 |
| Rotel 020114 | Stockholm | |

**PARTER**

**Kärande**
1. Festorino Invest Limited, HE 292682
Promitheos 14
Flat M002
1065 Nicosia
Cypern

2. Fosontal Limited, HE 290578
Zinonos Sozou 11
Flat 403
2024 Nicosia
Cypern

3. Peter Derendinger
Felsenrainstrasse 19
CH-8832 Wollerau
Schweiz

4. Petra Salesny
Habuelstrasse 40
CH-8704 Herrliberg
Schweiz

5. Petr Rojicek
Habuelstrasse 40
CH-8704 Herrliberg
Schweiz

Ombud för 1–5: Advokaterna Fredrik Norburg och Anina Liebkind samt biträdande
juristen Andreas Holst
Norburg & Scherp Advokatbyrå AB
Birger Jarlsgatan 15
111 45 Stockholm

| Postadress | Besöksadress | Telefon | Telefax | Expeditionstid |
|---|---|---|---|---|
| Box 2290 | Birger Jarls Torg 16 | 08-561 670 00 | | måndag – fredag |
| 103 17 Stockholm | | 08-561 675 00 | | 09:00–16:30 |
| | | **E-post**: svea.hovratt@dom.se | | |
| | | www.svea.se | | |

Sid 2

SVEA HOVRÄTT          **DOM**         T 12646-21

Avdelning 02

**Svarande**

Republiken Polen

Ministerstwo Sprawiedliwości

Al. Ujazdowskie 11

00-950 Warszawa

Polen

Ombud: Advokaterna Martin Wallin och André Mossberg

Advokatbyrån Wallin & Partners AB

Birger Jarlsgatan 27

111 45 Stockholm

**SAKEN**

Ogiltighet av skiljedom m.m.

_____

**HOVRÄTTENS DOMSLUT**

1. Hovrätten avslår Republiken Polens yrkande om avvisning av talan i viss del.

2. Hovrätten förklarar som ogiltig den i Stockholm meddelade skiljedomen av den 30 juni 2021 med rättelse och tillägg av den 30 juli 2021 i SCC:s mål nr V2018/098.

3. Republiken Polen ska ersätta Festorino Invest Limited för rättegångskostnader med 315 012 kr 66 öre jämte ränta på beloppet enligt 6 § räntelagen från dagen för hovrättens dom till dess betalning sker. Av ersättningen utgör 314 037 kr 66 öre ombudsarvode.

4. Republiken Polen ska ersätta Fosontal Limited för rättegångskostnader med 315 012 kr 66 öre jämte ränta på beloppet enligt 6 § räntelagen från dagen för hovrättens dom till dess betalning sker. Av ersättningen utgör 314 037 kr 66 öre ombudsarvode.

5. Republiken Polen ska ersätta Peter Derendinger för rättegångskostnader med 105 004 kr 22 öre jämte ränta på beloppet enligt 6 § räntelagen från dagen för hovrättens dom till dess betalning sker. Av ersättningen utgör 104 679 kr 22 öre ombudsarvode.

SVEA HOVRÄTT
Avdelning 02

**DOM**

6. Republiken Polen ska ersätta Petra Salesny för rättegångskostnader med
105 004 kr 22 öre jämte ränta på beloppet enligt 6 § räntelagen från dagen för
hovrättens dom till dess betalning sker. Av ersättningen utgör 104 679 kr 22 öre
ombudsarvode.

7. Republiken Polen ska ersätta Petr Rojicek för rättegångskostnader med
105 004 kr 22 öre jämte ränta på beloppet enligt 6 § räntelagen från dagen för
hovrättens dom till dess betalning sker. Av ersättningen utgör 104 679 kr 22 öre
ombudsarvode.

_____

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 4
T 12646-21

## INNEHÅLLSFÖRTECKNING

**1 BAKGRUND** ................................................................................................ **6**

**2 YRKANDEN M.M.** ....................................................................................... **8**

**3 PARTERNAS TALAN** ................................................................................. **9**
   3.1 Investerarna ............................................................................................. 9
      3.1.1 Ogiltighet enligt 33 § första stycket 1 eller 2 lagen om skiljeförfarande ...... 9
      3.1.2 Upphävande efter klander enligt 34 § första stycket 1 eller 6
      skiljeförfarandelagen ...................................................................................... 11
      3.1.3 Polens yrkande om avvisning av investerarnas talan i viss del.................. 12
      3.1.4 Ogiltighet/upphävande avseende kostnadsdelen ....................................... 13
      3.1.5 Ogiltighet/upphävande i förhållande till tredjelandsinvesteraren ............... 13
      3.1.6 Polens begäran om återförvisning till skiljenämnden ................................ 14
   3.2 Polen ....................................................................................................... 15
      3.2.1 Ogiltighet enligt 33 § första stycket 1 eller 2 skiljeförfarandelagen ........... 15
      3.2.2 Upphävande efter klander enligt 34 § första stycket 1 eller 6
      skiljeförfarandelagen ...................................................................................... 16
      3.2.3 Yrkandet om avvisning av investerarnas talan i viss del ........................... 17
      3.2.4 Ogiltighet/upphävande avseende kostnadsdelen ....................................... 18
      3.2.5 Ogiltighet/upphävande i förhållande till tredjelandsinvesteraren ............... 20
      3.2.6 Begäran om återförvisning till skiljenämnden ........................................... 22

**4 UTREDNINGEN I HOVRÄTTEN** .............................................................. **22**

**5 DOMSKÄL** ................................................................................................. **22**
   5.1 Disposition och prövningsordning ............................................................... 22
   5.2 Frågan om avvisning av investerarnas talan i viss del ..................................... 23
   5.3 Frågan om skiljedomens ogiltighet ............................................................... 25
      5.3.1 Frågan om skiljedomens ogiltighet med hänsyn till det EU-interna
      partsförhållandet .......................................................................................... 25
      5.3.2 Frågan om skiljedomens ogiltighet i förhållande till investeraren från
      tredjeland ..................................................................................................... 27
      5.3.3 Frågan om skiljedomens ogiltighet i kostnadsdelen................................... 28
      5.3.4 Frågan om skiljenämnden ska beredas tillfälle att vidta åtgärd enligt 35 §
      skiljeförfarandelagen ...................................................................................... 29
   5.4 Rättegångskostnader i hovrätten .................................................................. 29
   5.5 Sammanfattning ........................................................................................ 33

SVEA HOVRÄTT
Avdelning 02

**DOM**

**6 FRÅGAN OM DOMEN SKA FÅ ÖVERKLAGAS** ....................................... **34**

**HUR MAN ÖVERKLAGAR** ............................................................ **34**

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 6
T 12646-21

## 1 BAKGRUND

Festorino Invest Limited, Fosontal Limited, Peter Derendinger, Petra Salesny och Petr
Rojicek (investerarna) ägde 100 procent av aktierna i Blue Gas Holding, ett bolag
registrerat i Polen.

Skiljeförfarandet har sin bakgrund i verksamhet som investerarna bedrev i Polen under
2010-talet inom ramen för Blue Gas Holding. Verksamheten bestod i utveckling och
potentiell drift av naturgasbaserad sekundär generering/kombinerad värme och kraft i
gruvor.

En av de fem investerarna, Peter Derendinger, är medborgare och har sitt hemvist i
Schweiz. Övriga investerare har antingen sitt säte eller är medborgare i en medlemsstat
i Europeiska unionen (EU). Polen är medlemsstat i EU.

Den 27 augusti 2018 påkallade investerarna skiljeförfarande mot Polen vid Stockholms
Handelskammares Skiljedomsinstitut (SCC), enligt artikel 26 i energistadgefördraget
(jfr EGT L 69, 9.3.1998), samt de s.k. SCC-reglerna. Som grund för talan åberopade
investerarna att Polen hade brutit mot sina förpliktelser enligt energistadgefördraget.

I förfarandet framställde Polen en invändning mot skiljenämndens behörighet. Polens
invändning bestod i att det skulle följa av EU-domstolens praxis att unionsrätten utgör
hinder för ett skiljeförfarande mellan en investerare från en EU-medlemsstat och en
annan EU-medlemsstat som initierats med stöd av energistadgefördraget. Skilje-
nämnden tillät Europeiska kommissionen att intervenera som tredje part i frågan om
nämndens behörighet.

Skiljedom meddelades i Stockholm den 30 juni 2021 med rättelse och tillägg den
30 juli samma år (skiljedomen).

Genom skiljedomen ogillade skiljenämnden Polens invändning mot skiljenämndens
behörighet.

SVEA HOVRÄTT
Avdelning 02

**DOM**

I sak ogillade skiljenämnden investerarnas talan. I kostnadsdelen beslutade skilje-nämnden att investerarna skulle bära kostnaderna och förordande om följande i denna fråga på sidorna 7 och 8 i rättelse och tillägg till skiljedomen.

51. Paragraph 778.4 of the Award shall now read as follows:

"ORDERS Claimants to bear all costs of the arbitration. Claimants are jointly and severally liable to pay such costs, which are as follows:

- The Fee of Chairperson Bernardo M. Cremades, which amounts to EUR 255,170 and compensation for expenses EUR 735, in total EUR 255,905, plus VAT of EUR 63,976.25.

- The Fee of Co-Arbitrator Kaj Hobér, which amounts to EUR 127,585, plus VAT of EUR 31,896.25.

- The Fee of Co-Arbitrator Zachary Douglas QC, which amounts to EUR 127,585.

- The Administrative Fee of the SCC, which amounts to EUR 60,000, plus VAT of EUR 15,000."

52. Paragraph 778.5 of the Award shall now read as follows:

"ORDERS Claimants to pay Respondent the amount of EUR 340,973.75 to reimburse Respondent for 50% of the costs of the arbitration."

53. A new paragraph, paragraph 778.6, is hereby added, which shall read as follows:

"ORDERS Claimants to pay Respondent the amount of PLN 1,296,584.50 to reimburse Respondent for the legal fees incurred by the General Counsel to the

Republic of Poland, with 5% interest per annum accruing from the date of this award. Claimants are jointly and severally liable to pay such costs."

54. A new paragraph, paragraph 778.7, is hereby added, which shall read: "A party may apply to amend the award regarding the decision on the fees of the arbitrators. Such application should be filed with Stockholm District Court within three months from the date when the party received this award."

Samt på sidan 9.

67. For the reasons stated above, the Arbitral Tribunal:

67.1. ORDERS that the EUR 340,973.75 Claimants have been ordered to pay Respondent to reimburse Respondent for 50% of the costs of the arbitration be subject to 5% interest per annum accruing from the date of this additional award. Claimants are jointly and severally liable to pay such costs.

Hovrätten har den 12 november 2021, efter yrkande av investerarna, beslutat att fortsatt verkställighet av den mellan parterna meddelade skiljedomen tills vidare inte får ske, och den 8 juli 2022 avslagit ett yrkande om upphävande av inhibitionsbeslutet.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 8
T 12646-21

## 2 YRKANDEN M.M.

Investerarna har yrkat att hovrätten ska ogiltigförklara alternativt upphäva skilje-
domen.

Polen har överlämnat till hovrätten att bedöma frågan om skiljedomen är ogiltig såvitt
gäller avgörandet i huvudsaken i den del avgörandet avser tvisten mellan EU-
investerarna, dvs. Festorino Invest Limited, Fosontal Limited, Petra Salesny och Petr
Rojicek, och Polen.

Polen har vidare motsatt sig att skiljedomen i någon del upphävs på grund av klander.

Polen har för egen del yrkat att hovrätten ska avvisa investerarnas yrkande om ogiltig-
förklaring eller upphävande av skiljedomen såvitt avser beslutet om investerarnas
skyldighet att ersätta kostnaderna för skiljenämnden och SCC samt beslutet om
investerarnas skyldighet att ersätta Polen för det förskott som Polen erlagt för dessa
kostnader. Under alla förhållanden har Polen motsatt sig att skiljedomen ogiltigför-
klaras i frågan om kostnader, dvs. såväl avseende beslutet om investerarnas skyldighet
att ersätta kostnaderna för skiljenämnden och SCC:s administrativa avgift, beslutet om
investerarnas skyldighet att ersätta Polen för den ersättning för dessa kostnader som
Polen erlagt, som beslutet att investerarna ska ersätta en del av Polens egna förfarande-
kostnader.

Polen har, under alla förhållanden, motsatt sig att skiljedomen till någon del ogiltig-
förklaras eller upphävas såvitt avser tvisten mellan investeraren från tredje land, Peter
Derendinger, och Polen.

Om hovrätten skulle anse sig sakna möjlighet att justera betalningsskyldigheten i
skiljedomen så att den endast omfattar Peter Derendinger samt skulle hovrätten
överväga att ogiltigförklara skiljedomen i dess helhet trots att domstolen funnit att den
relevanta ogiltighetsgrunden endast omfattar en del av domen, har Polen begärt att
hovrätten med stöd av 35 § skiljeförfarandelagen ska återförvisa kostnadsfrågan i
denna del till skiljenämnden.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 9
T 12646-21

Investerarna har motsatt sig såväl Polens yrkande om avvisning som begäran om att hovrätten ska återförvisa skiljemålet i viss del till skiljenämnden.

Parterna har yrkat ersättning för sina rättegångskostnader.

Målet har avgjorts utan huvudförhandling.

## 3 PARTERNAS TALAN

### 3.1 Investerarna

#### *3.1.1 Ogiltighet enligt 33 § första stycket 1 eller 2 lagen om skiljeförfarande*

Skiljedomen ska ogiltigförklaras i sin helhet i enlighet med 33 § första stycket 2 lagen (1999:116) om skiljeförfarande (skiljeförfarandelagen) alternativt enligt 33 § första stycket 1 skiljeförfarandelagen.

*I första hand* strider skiljedomen, och det sätt på vilket den tillkommit, mot grundläggande EU-rättsliga normer och principer, vilket innebär att den är uppenbart oförenlig med grunderna för svensk rättsordning. Därmed är den ogiltig i enlighet med 33 § första stycket 2 skiljeförfarandelagen.

EU-domstolen har i dom av den 2 september 2021, Komstroy, C-741/19, EU:C:2021:655, slagit fast att energistadgefördraget är unionsrätt. Enligt EU-domstolen saknar en skiljenämnd behörighet att tolka eller tillämpa unionsrätten eftersom en skiljenämnd inte är behörig att begära förhandsavgöranden från EU-domstolen enligt artikel 267 Fördraget om Europeiska unionens funktionssätt (FEUF) och medlemsstaternas domstolar har genom nationell lag endast möjlighet att pröva begränsade delar av en skiljedom. Unionsrättens fulla verkan kan därmed inte säkerställas i skiljeförfar-

SVEA HOVRÄTT
Avdelning 02

**DOM**

anden under energistadgefördraget. Det följer således att artikel 26.2 c i energistadge-
fördraget inte är tillämplig på tvister som berör en medlemsstat och en investerare från
en annan medlemsstat.

Följaktligen står en skiljedom där artikel 26 i energistadgefördraget tillämpas i en
situation som den nu aktuella i strid med artiklarna 4(3) och 19 i Fördraget om
Europeiska unionen (FEU) samt artiklarna 267 och 344 FEUF, vilka är grundläggande
för att säkerställa den unionsrättsliga rättsordningen.

I tvisten mellan investerarna och Polen har skiljenämnden tillämpat unionsrätt. Skilje-
domen har tillkommit utan att skiljenämnden haft möjlighet att begära förhandsavgör-
ande från EU-domstolen. Eftersom förfarandet med förhandsavgöranden utgör en
grundläggande del av den svenska rättsordningen, har skiljedomen därmed tillkommit
på ett sätt som är uppenbart oförenligt med grunderna för rättsordningen i Sverige.

Vidare har skiljenämnden grundat sin behörighet på artikel 26.2 c i energistadgeför-
draget. Artikeln är enligt EU-domstolen inte tillämplig på s.k. EU-interna tvister. Den
förevarande tvisten är en sådan eftersom den avser en tvist mellan investerare från EU-
medlemsstaterna Cypern, Tjeckien och Österrike och EU-medlemsstaten Polen. EU-
domstolens tolkningsföreträde utgör en grundläggande del av svensk rätt. Skiljedomen
är därmed uppenbart oförenlig med grunderna för rättsordningen i Sverige.

Eftersom ogiltighetsgrunden inte är särskiljbar i den betydelsen att den kan hänföras
till endast en del av skiljedomen är hela skiljedomen ogiltig.

*Alternativt* ska skiljedomen ogiltigförklaras i sin helhet i enlighet med 33 § första
stycket 1 skiljeförfarandelagen.

Så som angivits ovan har EU-domstolen, i Komstroy, slagit fast att skiljenämnder inte
är behöriga att tillämpa unionsrätt under energistadgefördraget eftersom det strider mot
unionsrätten. En tvist under energistadgefördraget som berör en EU-medlemsstat och
investerare från en annan medlemsstat får alltså enligt domstolen inte avgöras av
skiljedomare.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Genom Sveriges ratificering av energistadgefördraget utgör fördraget svensk rätt. Eftersom EU är part till energistadgefördraget utgör fördraget även unionsrätt. Det följer därmed att EU-domstolens uttolkning av energistadgefördragets bestämmelser har företräde framför svensk lag och rättspraxis. Vidare är svenska domstolar skyldiga att tolka svensk lag i ljuset av unionsrätten. I enlighet med EU-domstolens uttalanden är det därför inte möjligt att en fråga under energistadgefördraget mellan en unionsstat och en investerare från ett annat medlemsland avgörs av skiljedomare i enlighet med svensk rätt.

I förevarande fall har en fråga under energistadgefördraget, som enligt svensk lag inte får avgöras av skiljedomare, genom skiljedomen avgjorts av skiljedomare. Eftersom tvisten i sin helhet avsåg överträdelser av energistadgefördraget, omfattar ogiltighetsgrunden hela skiljedomen. Skiljedomen ska därmed också ogiltigförklaras i sin helhet.

### 3.1.2 Upphävande efter klander enligt 34 § första stycket 1 eller 6 skiljeförfarandelagen

För det fall hovrätten finner att skiljedomen inte ska ogiltigförklaras i sin helhet, ska skiljedomen i vart fall upphävas i sin helhet i enlighet med 34 § första stycket 1 skiljeförfarandelagen eftersom skiljedomen inte omfattas av ett giltigt skiljeavtal mellan parterna.

I förevarande fall är grunden för skiljeavtalets ingående artikel 26.2 c i energistadgefördraget. Bestämmelsen är enligt EU-domstolen, av tidigare angivna skäl, inte tillämplig på grund av dess oförenlighet med unionsrätten.

EU-domstolens uttolkning av energistadgefördragets bestämmelser har företräde framför svensk lag och rättspraxis. EU-rättens företräde kan därför inte genom svensk lag begränsas av en bedömning av vilken part som invänder mot skiljenämndens jurisdiktion. Investerarna har därför inte heller förlorat sin rätt att nu åberopa att skiljedomen inte omfattades av ett giltigt skiljeavtal mellan parterna.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Eftersom grunden för upphävandet är en så fundamental omständighet som att skilje-domen inte omfattades av ett giltigt skiljeavtal, ska skiljedomen upphävas i sin helhet.

Under alla förhållanden ska kostnadsavgörandet i skiljedomen upphävas enligt 34 § första stycket 6 skiljeförfarandelagen, i sin lydelse före den 1 mars 2019, eftersom det utan kärandenas vållande förekom felaktigheter i handläggningen som sannolikt på-verkade utgången av skiljenämndens kostnadsavgörande.

Vid parternas samtida utväxling av kostnadsräkningar efter skiljeförfarandets huvud-förhandling underlät Polen att översända sitt yttrande till investerarna, vilket stod i strid med den av parterna gemensamt överenskomna *Procedural Order No. 1*. Trots detta kommunicerade skiljenämnden inte Polens kostnadsräkning med investerarna, vilket fick till följd att Polens kostnadspåståenden fick stå oemotsagda. Därigenom bröt skiljenämnden mot den grundläggande kommunikationsprincipen. Som en följd därav fråntogs investerarna rätten att utföra sin talan vad gäller Polens påstådda kost-nader.

Om investerarna hade fått möjlighet att invända mot Polens kostnadsyrkande hade skiljenämnden behövt pröva existensen och skäligheten i de påstådda kostnaderna med hänsyn tagen till investerarnas invändningar om att Polen inte företrätts av externa ombud och därför inte haft några ombudskostnader. Skiljenämnden hade då ogillat yrkandet, alternativt utdömt ett väsentligt lägre belopp.

Eftersom investerarna saknade möjlighet att invända mot handläggningsfelet är invändningen inte prekluderad.

### 3.1.3 Polens yrkande om avvisning av investerarnas talan i viss del

Polens avvisningsyrkande är grundlöst och bygger på en felaktig beskrivning eller uppfattning om systematiken i skiljeförfarandelagen. Investerarna för en ogiltighets-och klandertalan avseende skiljedomen. Skiljenämndens rätt till ersättning berörs inte av en sådan talan.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### 3.1.4 Ogiltighet/upphävande avseende kostnadsdelen

Det är skiljenämndens tillämpning av unionsrätt som är såväl ogiltighets- som klander-
grundande. Utgången av skiljenämndens tillämpning av den materiella EU-rätten styr
utgången i kostnadsdelen. Ogiltighets- respektive klandergrunderna träffar därför även
domslutet i kostnadsdelen, vilket innebär att också den senare delen av skiljedomen
ska ogiltigförklaras alternativt upphävas. Utan utgången i sak saknas rättslig grund för
utgången i kostnadsdelen.

Det är ovidkommande vem som påkallade skiljeförfarandet. Lika ovidkommande är de
hypotetiska kostnaderna och den hypotetiska kostnadsfördelningen för det fall skilje-
nämnden i stället hade avvisat talan, eller för den delen den följande utgången av för-
farandet.

Vad gäller 37 § första stycket andra meningen skiljeförfarandelagen är det en regel
som endast kan tillämpas av skiljenämnden när den avgör frågan om ersättningen till
skiljenämnden i skiljeförfarandet. Regeln saknar betydelse för hovrättens prövning i
detta mål enligt 33 och 34 §§ skiljeförfarandelagen.

### 3.1.5 Ogiltighet/upphävande i förhållande till tredjelandsinvesteraren

I avgörandet Komstroy anger EU-domstolen att unionsrätten direkt omfattar en tvist
mellan en ekonomisk aktör från ett tredjeland och en medlemsstat. Det innebär att
skiljenämnden har tillämpat unionsrätt även i förhållande till tredjelandsinvesteraren. I
det nu aktuella fallet är det skiljenämndens tillämpning av unionsrätt som är såväl
ogiltighets- som klandergrundande.

I Komstroy konstaterar EU-domstolen dessutom att det föreligger ett bestämt unions-
rättsligt intresse av att artikel 26 i energistadgefördraget tolkas på ett enhetligt sätt även
i situationer som inte direkt omfattas av unionsrätten. Det avgörande för tolkningen är
huruvida domstolen kan komma att tillämpa samma bestämmelse på ett mål som direkt

SVEA HOVRÄTT                          **DOM**
Avdelning 02

omfattas av unionsrätten, inte huruvida subjekten i en viss tvist är medlemsstater
och/eller investerare från medlemsstater.

För det fall hovrätten skulle ogiltigförklara eller upphäva skiljedomen med undantag
för kostnadsdelen i förhållande till tredjelandsinvesteraren skulle vidare denne sakna
regressrätt mot övriga investerare. Det skulle stå i strid med domslutet om solidariskt
ansvar, dvs. ett ansvar som inkluderar regressrätt. I en sådan situation skulle kostnads-
ansvaret övergå till ett delat ansvar, men hur det delade ansvaret i så fall ska se ut
framgår inte av skiljedomen och har inte heller prövats av skiljenämnden.

Hovrätten saknar möjlighet att omfördela kostnaderna utan att göra en materiell pröv-
ning, vilket inte ska ske vid en prövning av en ogiltighets- eller klandertalan.

### 3.1.6 Polens begäran om återförvisning till skiljenämnden

Hovrätten kan inte förordna att skiljenämnden, som inte varit behörig att meddela
skiljedomen mot bakgrund av att skiljedomen och det sätt på vilket skiljedomen till-
kommit är uppenbart oförenlig med grunderna för rättsordningen, återupptar skilje-
förfarandet eller vidtar någon annan åtgärd för att sedan meddela en ny skiljedom.

Det är endast situationer som kan läkas av skiljenämnden som får återförvisas till
skiljenämnden. Vad gäller ogiltighet enligt 33 § första stycket 1 eller 2 skiljeförfar-
andelagen är en läkning möjlig endast i undantagsfall. Något sådant undantagsfall
föreligger inte i detta mål.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 15
T 12646-21

### 3.2 Polen

#### 3.2.1 Ogiltighet enligt 33 § första stycket 1 eller 2 skiljeförfarandelagen

Det föreligger förutsättningar att ogiltigförklara skiljedomen såvitt avser avgörandet i huvudsaken mellan å ena sidan EU-investerarna och å andra sidan Polen. Detta följer av EU-domstolens avgöranden i bl.a. dom av den 6 mars 2018, Achmea, C-284/16, EU:C:2018:158 och dom av den 26 oktober 2021, PL Holdings, C-109/20, EU:C:2021:875, vilka avgöranden även har bekräftats av EU-domstolen i Komstroy.

Tvisten är i denna angivna del *i första hand* inte skiljedomsmässig.

Unionsrätten, genom EU-domstolens tolkning av artiklarna 267 och 344 FEUF i bl.a. Achmea, PL Holdings och Komstroy, utgör i sig ett indispositivt processhinder för skiljeförfaranden enligt artikel 26.2 c i energistadgefördraget. Det unionsrättsliga förbudet mot skiljeförfarande med avseende på EU-interna investeringstvister är därvid inte begränsat till framtida tvister utan gäller även sedan tvist väl uppkommit och för tiden därefter. Situationen är därmed sådan att det föreligger ett absolut unionsrättsligt hinder mot att EU-interna investeringstvister – innefattande de frågor som uppkommit mellan parterna i en sådan tvist – avgörs genom skiljeförfarande.

I förevarande fall står det dessutom klart att även den materiella frågan i skiljeförfarandet mellan EU-investerarna och Polen är indispositiv till följd av EU-domstolens nyss nämnda avgöranden. Den materiella prövningen av målet innefattar med nödvändighet såväl tolkning som tillämpning av unionsrätt, särskilt bestämmelserna i energistadgefördraget. Därvid framgår av skiljedomen att skiljenämnden de facto har tolkat och tillämpat energistadgefördraget och därvid funnit att de polska myndigheternas handläggning i de aktuella fallen inte utgjort ett brott mot energistadgefördraget.

Av unionsrätten följer således att EU-interna investeringstvister under energistadgefördraget inte får avgöras genom skiljeförfarande. Dessa tvister är alltså inte skilje-

SVEA HOVRÄTT
Avdelning 02

**DOM**

domsmässiga, och skiljedomen bör ogiltigförklaras såvitt avser avgörandet i huvud-saken mellan EU-investerarna och Polen med stöd av 33 § första stycket 1 skiljeför-farandelagen.

Skiljedomen och det sätt på vilket skiljedomen tillkommit är vidare i samma ovan angivna del, *i andra hand*, uppenbart oförenligt med grunderna för rättsordningen i Sverige.

Av EU-domstolens avgöranden i Achema, Komstroy och PL Holdings framgår att principen om unionsrättens autonomi, som säkerställs genom bl.a. artiklarna 267 och 344 FEUF, är av konstitutionell karaktär och utgör en fundamental del av grunderna för EU:s rättsordning (ordre public). Enligt principerna om direkt tillämplighet och lojalt samarbete åligger det de nationella domstolarna i varje medlemsstat att iaktta unionsrättslig ordre public i samma utsträckning som nationell ordre public när de tillämpar nationella bestämmelser i mål om ogiltigförklaring eller upphävande av en skiljedom som tillkommit i strid med grunderna för rättsordningen. Att medlemsstater har en sådan skyldighet följer bl.a. av EU-domstolens dom av den 1 juli 1999, Eco Swiss, C-126/97, EU:C:1999:269.

Skiljemålet mellan EU-investerarna och Polen rör ett sådant allmänt intresse som med-för att skiljedomar som meddelats i strid med unionsrätten är ogiltiga enligt 33 § första stycket 2 skiljeförfarandelagen, eftersom de strider mot unionsrättslig – och därmed också svensk – ordre public.

### 3.2.2 Upphävande efter klander enligt 34 § första stycket 1 eller 6 skiljeförfarande-lagen

Det vitsordas att det inte finns något giltigt skiljeavtal mellan EU-investerarna och Polen. Det föreligger därmed i och för sig även en potentiell grund för upphävande av skiljedomen i den delen såvitt avser avgörandet i huvudsaken. Investerarna har emellertid inte i skiljeförfarandet gjort gällande att giltigt skiljeavtal saknats, utan har tvärtom aktivt fört fram uppfattningen att ett giltigt skiljeavtal förelegat. Investerarna får genom sin processföring anses ha avstått från att göra gällande att skiljeavtalet varit

SVEA HOVRÄTT
Avdelning 02

**DOM**

ogiltigt. Det saknas därmed förutsättningar att upphäva skiljedomen med hänvisning till att ett giltigt skiljeavtal inte föreligger.

Det saknas skäl att upphäva skiljedomen såvitt avser kostnadsavgörandet i någon del på den separata grunden att det skulle ha förekommit felaktigheter i handläggningen. Någon överträdelse av *Procedural Order No. 1* har inte förelegat. Investerarna har medvetet hållit sig i okunskap om det konkreta yrkande som de förstått att Polen framställt. I den mån det förekommit någon felaktighet i handläggningen har denna därmed berott på investerarnas eget vållande. I vart fall har investerarna inte gjort sannolikt att handläggningsfelet har inverkat på utgången. Skiljenämnden har i skiljedomen utförligt beskrivit hur den kom fram till sitt beslut i frågan om vad som utgjorde skälig ersättning för Polens egna kostnader. Nämnden har i denna del gjort en synnerligen sträng skälighetsbedömning. Skiljenämnden har vidare i skiljedomens rättelse och tillägg förklarat att de invändningar som investerarna gjorde, bl.a. om att Polen företräddes av statligt anställda tjänstemän med fasta löner, redan beaktats av skiljenämnden.

### 3.2.3 Yrkandet om avvisning av investerarnas talan i viss del

Det föreligger hinder mot att kostnadsavgörandet i skiljedomen ogiltigförklaras eller upphävs såvitt avser besluten om ersättning till skiljemännen och om skyldighet för investerarna att ersätta Polen för den hälftendel av kostnaderna som Polen erlagt i förskott.

För att investerarna skulle ha kunnat åstadkomma en ändring av beslutet om ersättning för kostnaderna för skiljenämnden hade krävts att de överklagat beslutet till tingsrätt, vilket investerarna inte har gjort. Hovrätten är därför förhindrad att ta ställning till om denna del av domslutet ska ogiltigförklaras eller upphävas.

Det förhållandet att hovrätten inte kan ogiltigförklara beslutet om ersättning till skiljenämnden i punkten 778.4 i den rättade versionen av skiljedomen, för också i detta fall med sig att hovrätten, såsom domslutet i skiljedomen är utformat, inte heller kan

SVEA HOVRÄTT
Avdelning 02

**DOM**

ogiltigförklara beslutet att investerarna ska ersätta Polen med det belopp som Polen betalt för skiljemännens ersättning. Det beror på att skiljenämnden i det tidigare nämnda beslutet om ersättning till skiljenämnden slagit fast att dessa kostnader inte ska betalas solidariskt av parterna utan att investerarna ensamma ska betala ersättning till skiljenämnden. Om beslutet om Polens rätt till ersättning från investerarna för redan utgiven ersättning till skiljenämnden ogiltigförklaras, blir följden likväl att Polen i strid med skiljenämndens lagakraftvunna beslut tvingats utge hälften av ersättningen till skiljenämnden. Det finns därmed ett sådant samband mellan de båda besluten att upprätthållandet av beslutet i punkten 778.4 om ersättning till skiljemännen blir rent illusoriskt om inte även beslutet i punkterna 778.5 och 67.1 (i den rättade och kompletterade versionen av skiljedomen) om Polens rätt till ersättning för utgivet förskott upprätthålls. Samtliga dessa delar av domslutet får anses ha vunnit laga kraft.

### 3.2.4 Ogiltighet/upphävande avseende kostnadsdelen

Kostnadsavgörandet i skiljedomen ska bestå oaktat om avgörandet i huvudsaken i skiljedomen ogiltigförklaras eller upphävs.

Kostnadsavgörandet omfattas inte av någon ogiltighetsgrund. Det har i sig inte tillkommit i strid med unionsrätten.

En skiljenämnds avgörande i frågor om kostnader för förfarandet är en, i förhållande till den huvudsak som avgjorts genom en skiljedom, särskiljbar del.

Bestämmelsen i 37 § första stycket andra meningen skiljeförfarandelagen är analogt tillämplig i de fall en skiljenämnd visserligen förklarar sig behörig men en domstol sedermera finner att skiljenämnden inte varit behörig.

Polen ska därför till ingen del belastas av kostnaderna för skiljenämnden. Investerarna påkallade skiljeförfarandet med full kunskap om att skiljenämndens behörighet på mycket goda grunder kunde ifrågasättas. Enligt EU-domstolens avgörande i Achmea, som meddelats närmare ett halvår före investerarnas påkallelse, stod det klart att en

klausul såsom artikel 26.2 c i energistadgefördraget inte kunde tillämpas i förhållandet mellan EU-investerarna och Polen. Polen hade därtill förvarnat investerarna om sin uppfattning i behörighetsfrågan i ett brev den 28 juni 2018. Investerarna valde likväl att bortse från detta och inledde i augusti 2018 i stället ett kostsamt och tidskrävande förfarande som orsakat Polen kostnader långt utöver det belopp som investerarna förpliktades att ersätta i skiljedomen. Att under dessa förhållanden ogiltigförklara eller upphäva kostnadsavgörandet i skiljedomen innebär i praktiken att investerarna undgår ansvar för ett vårdslöst inledande av skiljeförfarande och en vårdslös processföring.

Det finns vidare skäl att anlägga samma synsätt på kostnadsavgörandet även i den del det avser skyldigheten för investerarna att ersätta Polen för dess egna processkostnader. Om skiljenämnden hade kommit till det beslut i behörighetsfrågan som är korrekt enligt vad parterna numera är överens om, hade utgången blivit att skiljenämnden avvisat EU-investerarnas talan och Polen hade fått sina rättegångskostnader ersatta. Enbart det förhållandet att skiljenämnden kom till fel slutsats i behörighetsfrågan men ogillade käromålet i sak ska inte få till effekt att Polen, till följd av en ogiltigförklaring eller ett upphävande av kostnadsavgörandet, går miste om rätten till kostnadsersättning. Det skulle i sådana fall medföra att investerarna skulle komma i ett bättre läge kostnadsmässigt av att få sin talan prövad i sak och ogillad än om skiljenämnden i stället hade avvisat talan på grund av att den saknade behörighet.

Att investerarna skulle kunna drabbas av ett kostnadsansvar för Polens processkostnader för det fall skiljenämnden skulle anses obehörig att pröva tvisten har därtill varit fullt förutsebart för investerarna och bör närmast ha varit en risk som de kalkylerat med. Investerarna får redan genom påkallelsen av skiljeförfarandet anses ha accepterat ett potentiellt ansvar för förfarandekostnaderna – någon motsvarande accept från Polen finns däremot inte.

Vidare vore det uppseendeväckande om följden av utvecklingen av EU-domstolens praxis på området skulle bli att investerare fritt – till skillnad från medlemsstatsparten som enligt unionsrätten är skyldig att bestrida skiljenämndens behörighet – kan påkalla skiljeförfaranden med stöd av ogiltiga skiljeklausuler helt utan risk för att i slutänden behöva stå för motpartens processkostnader. I händelse av en ogillande dom – som i

SVEA HOVRÄTT                              **DOM**                    T 12646-21
Avdelning 02

detta fall – skulle investeraren ändå ha att räkna med att domen, inklusive det egna
kostnadsansvaret i förhållande till medlemsstatsparten, undanröjs. En sådan rättstill-
lämpning framstår varken som rimlig eller avsedd.

Att en EU-investerare, som påkallar skiljeförfarande i strid med en ej tillämplig skilje-
klausul i ett EU-internt investeringsavtal och därigenom orsakar motparten process-
kostnader, förpliktas att stå för dessa kostnader kan ses som ett nödvändigt element i
upprätthållandet av effektiviteten i det unionsrättsliga förbudet mot skiljeförfaranden i
EU-interna investeringstvister. Kostnadsansvaret kan i dessa fall ha en såväl avskräck-
ande som reparativ effekt. Utan den ekonomiska sanktionen i form av ett kostnads-
ansvar riskerar förbudet mot skiljeförfaranden i EU-interna investeringstvister att bli
illusoriskt när, som i detta fall, talan ogillas och den enda praktiska följden av skilje-
domen är just investerarnas skyldighet att ersätta motpartens kostnader.

Att investerarna först i hovrätten gör gällande att skiljeförfarandet aldrig borde ha
genomförts kan därtill likställas med att investerarna i hovrätten har återkallat den
inom ramen för skiljeförfarandet förda talan, alternativt har begärt att den i skiljeförfar-
andet förda talan numera ska avvisas. Om hovrätten ogiltigförklarar kostnadsavgör-
andet blir följden den rakt motsatta jämfört med vad som hade gällt vid överklagande
av en tingsrättsdom. I stället för att investerarna förpliktas ersätta Polens kostnader för
den process som investerarna initierat i onödan och som de numera själva medger
aldrig borde ha kommit till stånd, går investerarna fria från sitt ersättningsansvar. En
sådan utgång är varken är rimlig eller lämplig.

### 3.2.5 Ogiltighet/upphävande i förhållande till tredjelandsinvesteraren

Unionsrätten, såsom den har uttolkats i EU-domstolens praxis avseende EU-interna
investeringstvister, saknar betydelse för tvisten mellan Peter Derendinger och Polen.
Tvisten är i denna del inte EU-intern. Skiljedomen eller sättet den tillkommit på strider
i denna del därför inte mot ordre public och tvisten mellan parterna är skiljedoms-
mässig. Vidare föreligger ett giltigt skiljeavtal mellan dessa parter. Det saknas därför

SVEA HOVRÄTT
Avdelning 02

**DOM**

under alla förhållanden skäl för att ogiltigförklara eller upphäva skiljedomen i något avseende i denna del.

Enligt EU-domstolens uttalanden i Komstroy kvarstår en medlemsstats skyldighet att iaktta de tvistlösningsregler som föreskrivs i energistadgefördraget i förhållande till investerare från icke-medlemsstater som också är parter till energistadgefördraget. Det finns inte stöd i Komstroy för att artikel 26.2 c i energistadgefördraget ska tolkas på något annat sätt än att den är tillämplig på tvisten mellan tredjelandsinvesteraren och Polen. Att en skiljenämnd i en tvist mellan en medlemsstat och en investerare från tredje land i och för sig skulle kunna komma att behöva beakta unionsrätten – t.ex. i tvister enligt energistadgefördraget vilken är en unionsrättsakt – är inte i sig ett skäl för att skiljenämnden inte skulle vara behörig att pröva tvisten.

De åberopade ogiltighets- och klandergrunderna är vidare särskiljbara och självstän-diga såtillvida att de inte gäller för den talan som tredjelandsinvesteraren väckt mot Polen utan endast såvitt avser de övriga investerarna. Det är en grundläggande princip att ett avgörande som till en viss del kan angripas inte ska undanröjas i vidare mån än vad som är nödvändigt för att läka den brist som angriplighetsgrunden medför.

Tredjelandsinvesteraren hade för sin del kunnat påkalla ett separat skiljeförfarande i förhållande till Polen med hänvisning till tvistlösningsklausulerna i energistadgeför-draget rörande sin investering. Att tredjelansinvesteraren ändå valde att påkalla skilje-förfarande gemensamt med EU-investerarna, väl medveten om de risker i fråga om skiljenämndens behörighet som dessa investerares talan var förenad med, är ett beslut som tredjelandsinvesteraren själv får svara för och stå risken för.

Det bör vidare särskilt noteras att i princip samtliga frågor som skiljenämnden hade att ta ställning till i skiljeförfarandet var gemensamma för samtliga investerare och att kostnaderna därmed hade uppstått även om tredjelandsinvesteraren ensam påkallat skiljeförfarandet mot Polen. Detta gäller utan vidare kostnaderna för skiljemännen och SCC:s administrativa avgift.

**DOM**

I fråga om Polens egna kostnader har skiljenämnden inte funnit anledning att förplikta investerarna att ersätta kostnaderna med vissa kvotdelar, t.ex. baserat på att prövningen av vissa frågor hänförliga till endast en eller ett par av investerarna varit särskilt kostnadskrävande. Investerarna har tvärtom förpliktats att solidariskt med varandra ersätta hela den utdömda kostnaden. Detta är i sig ett uttryck för att tvistefrågorna i målet i allt väsentligt varit gemensamma för investerarna. Det förhållandet att investerarnas betalningsansvar inbördes är solidariskt enligt skiljedomen innebär vidare att tredjelandsinvesteraren, även om någon ogiltighets- eller klandertalan aldrig väcks, ändå riskerat att i slutänden ensam få bära kostnaderna, beroende på bl.a. betalningsförmågan hos EU-investerarna.

### 3.2.6 Begäran om återförvisning till skiljenämnden

Hovrätten kan genom en enkel och, givet hovrättens mandat, fullt tillåten justering av skiljedomen åstadkomma ett verkställbart domslut såvitt avser kostnadsavgörandet som endast gäller i förhållandet mellan tredjelandsinvesteraren och Polen. Om hovrätten ändå anser sig sakna möjlighet att förordna om kostnaderna i skiljeförfarandet och överväger att ogiltigförklara hela skiljedomen trots att den relevanta ogiltighetsgrunden endast omfattar en del av domen, ska hovrätten i stället återförvisa frågan till skiljenämnden enligt 35 § skiljeförfarandelagen.

## 4 UTREDNINGEN I HOVRÄTTEN

Parterna har inte åberopat någon bevisning.

## 5 DOMSKÄL

### 5.1 Disposition och prövningsordning

Parterna är överens om att det finns förutsättningar att förklara skiljedomen ogiltig såvitt avser avgörandet i huvudsaken mellan å ena sidan EU-investerarna och å andra

SVEA HOVRÄTT                           **DOM**                    T 12646-21
Avdelning 02

sidan Polen. Frågan om en skiljedoms ogiltighet är indispositiv i så måtto att parterna
inte kan träffa en förlikning som innebär att en skiljedom är giltig. Något hinder torde
däremot i och för sig inte finnas mot att parterna kommer överens om att en skiljedom
är ogiltig (se Heuman, JT 2014/15 s. 446 och Lindskog, Skiljeförfarande, En kommen-
tar, tredje uppl., 2020, s. 922 f.). Även om parterna är överens om att omständigheterna
är sådana att skiljedomen till huvudsaklig del är ogiltig har Polen av de skäl som fram-
går av redogörelsen för Polens talan inte medgivit käromålet i någon del. Hovrätten har
därför att göra en fullständig prövning av investerarnas hela talan.

Den huvudfråga som hovrätten har att pröva är således om skiljedomen är ogiltig.
Inom ramen för denna fråga har hovrätten att ta ställning till om skiljedomen ska för-
klaras ogiltig i sin helhet, dvs. såväl i förhållande till tredjelandsinvesteraren Peter
Derendinger som i kostnadsdelen. Beroende på vad hovrätten kommer fram till i dessa
delar kan hovrätten även ha att ta ställning till övriga frågor i målet.

Hovrätten inleder emellertid med att pröva frågan om investerarnas talan ska avvisas
till viss del så som Polen yrkat.

## 5.2 Frågan om avvisning av investerarnas talan i viss del

Polen har yrkat att hovrätten ska avvisa investerarnas yrkande om ogiltigförklaring
alternativt upphävning av skiljedomen såvitt avser *dels* beslutet om ersättning till
skiljemännen och SCC, *dels* beslutet att investerarna ska ersätta Polen för det förskott
som Polen erlagt för dessa kostnader.

Det aktuella skiljeförfarandet har skett enligt Stockholms Handelskammares Skilje-
domsinstituts skiljedomsregler från 2017. Av SCC:s skiljedomsregler framgår att kost-
naderna för skiljeförfarandet består av skiljenämndens arvode, den administrativa av-
giften och skiljenämndens och SCC:s omkostnader. Av skiljedomsreglerna framgår
vidare att skiljenämnden innan den slutliga skiljedomen meddelas ska begära att
styrelsen för SCC slutligt fastställer kostnaderna för skiljeförfarandet. Styrelsen ska
slutligt fastställa kostnaderna för skiljeförfarandet enligt det kostnadsreglemente som

gäller den dag då skiljeförfarandet inleddes. Skiljenämnden ska i den slutliga skilje-
domen ange kostnaderna för skiljeförfarandet såsom de slutligt har fastställts av
styrelsen och ange arvode och omkostnader för var och en av skiljemännen och för
SCC (Se § 49 (1), (2) och (5) skiljedomsreglerna.)

Av skiljedomen punkten 771 framgår att SCC den 17 juni 2021 fastställde ersättningen
till respektive skiljedomare. Skiljenämnden angav också i skiljedomen de av SCC
fastställda kostnaderna för skiljeförfarandet. Talan mot ett sådant beslut om kostnader
för skiljeförfarandet som fattats av ett skiljedomsinstitut och som tagits in i en skilje-
dom kan föras med stöd av bestämmelsen i 41 § skiljeförfarandelagen (se NJA 2008 s.
1118).

Investerarna har med anledning av Polens avvisningsyrkande i denna del klargjort att
deras talan inte omfattar det beslut om ersättning till skiljemännen och SCC för kost-
naderna för skiljeförfarandet som tagits in i skiljedomen. Eftersom avvisningsyrkandet
i denna del alltså inte korresponderar mot någon del av investerarnas talan saknas helt
grund för Polens avvisningsyrkande i det nu aktuella avseendet.

När det gäller beslutet i skiljedomen att investerarna ska ersätta Polen för det förskott
som Polen erlagt för kostnaderna för skiljeförfarandet, har Polen gjort gällande att
skiljenämndens beslut att endast förplikta investerarna att betala ersättningen till skilje-
männen även det är ett sådant beslut som överklagas till tingsrätt enligt 41 § skiljeför-
farandelagen. Eftersom så inte har skett har Polen gjort gällande att beslutet att invest-
erarna ska stå för hela kostnaden för skiljeförfarandet har vunnit laga kraft, varför
hovrätten är förhindrad att ogiltigförklara eller upphäva även beslutet att investerarna
ska återbetala det förskottsbelopp som Polen betalat. Polen har vidare fört fram att en
analog tillämpning av bestämmelsen i 37 § första stycket andra meningen skiljeförfar-
andelagen, om ansvaret för skiljedomskostnaderna då skiljenämnden bedömts vara
obehörig, skulle utgöra hinder för hovrättens prövning av frågan.

Investerarnas talan i detta mål är riktad mot Polen och avser således förhållandet
mellan parterna. Polens avvisningsyrkande i denna del tar också sikte på hur kost-
naderna för själva skiljeförfarandet ska fördelas mellan parterna med hänsyn till

SVEA HOVRÄTT                                    **DOM**                          T 12646-21
Avdelning 02

utgången i målet i sak. Oaktat om kostnadsbesluten i skiljedomen utformats på sådant
sätt att de i någon del skulle kunna fylla en rättslig funktion mellan parterna och skilje-
männen, exempelvis såsom exekutionstitel, kan det enligt hovrättens mening inte med-
föra att kostnadsbesluten i den del de rör rättsförhållandet mellan parterna inte skulle
kunna komma under hovrättens prövning inom ramen för en talan om ogiltighet och
klander. Inte heller vad Polen fört fram om en analog tillämpning av 37 § skiljeförfar-
andelagen kan medföra hinder för en sådan prövning.

Polens yrkande om avvisning av investerarnas talan i viss del ska alltså avslås.


### 5.3 Frågan om skiljedomens ogiltighet

#### 5.3.1 Frågan om skiljedomens ogiltighet med hänsyn till det EU-interna partsförhållandet

EU-domstolens har i de tre förhandsavgörandena Achmea, Komstroy och PL Holdings
uttalat sig om skiljeklausuler i investeringsskyddsavtal som ingåtts mellan två eller
flera medlemsstater och om sådana avtals förenlighet med unionsrätten.

Med hänvisning till att förfarandet med förhandsavgörande utgör kärnan i det unions-
rättsliga domstolssystemet konstaterade EU-domstolen i Achmea, *att* skiljenämnden
kunde komma att tolka och tillämpa unionsrätten men *att* skiljenämnden inte utgjorde
en domstol i den mening som avses i artikel 267 FEUF som kunde begära förhandsav-
görande, samt *att* den behöriga nationella domstolen endast fick göra den begränsade
prövning som följer av nationell rätt (se Achmea, punkterna 37–53). EU-domstolen
uttalade vidare att de aktuella medlemsstaterna genom att ingå ett bilateralt avtal
upprättat en mekanism för att lösa tvister mellan en investerare och en medlemsstat
som kan innebära att dessa tvister avgörs på ett sätt som inte säkerställer unionsrättens
fulla verkan. Enligt EU-domstolen var den aktuella skiljeklausulen i avtalet inte
förenlig med principen om lojalt samarbete och undergrävde därmed unionsrättens
autonomi (se Achmea, punkterna 56–59).

I Komstroy, som avsåg bland annat tolkningen av artikel 26 i energistadgefördraget, uttalade EU-domstolen att trots att det internationella avtal som bestämmelsen ingår i är ett multilateralt avtal, syftar en sådan bestämmelse i själva verket till att reglera bilaterala förbindelser mellan två fördragsslutande parter på ett sätt som liknar den bestämmelse i det bilaterala investeringsavtal som var aktuell i Achmea-målet (se Komstroy, punkten 64). EU-domstolen uttalade att det av detta följer att även om medlemsstaterna genom energistadgefördraget kan åläggas att iaktta de föreskrivna skiljedomsmekanismerna i deras förhållande till investerare från icke-medlemsstater som också är parter i fördraget, angående investeringar som dessa investerare gjort i medlemsstaterna, utgör bevarandet av unionsrättens autonomi och specifika karaktär hinder för att medlemsstaterna genom energistadgefördraget åläggs samma skyldig-heter mellan sig (se Komstroy, punkten 65). EU-domstolens slutsats blev därför att artikel 26.2 c i energistadgefördraget ska tolkas så, att den inte är tillämplig på tvister mellan en medlemsstat och en investerare från en annan medlemsstat angående en investering som sistnämnda investerare gjort i den förstnämnda medlemsstaten (se Komstroy, punkten 66).

Högsta domstolen har i NJA 2022 s. 965 uttalat att en skiljedom i en EU-intern in-vesteringstvist som har meddelats med stöd av en skiljeklausul i ett internationellt investeringsavtal får anses ha tillkommit på ett rättsstridigt sätt, eftersom den är oförenlig med de grundläggande bestämmelser och principer som reglerar rättsord-ningen i unionen och därmed också i Sverige. Av Högsta domstolens avgörande följer således att ett upprätthållande av en sådan skiljedom skulle vara uppenbart oförenlig med grunderna för rättsordningen i Sverige, varför en sådan skiljedom ska förklaras vara ogiltig enligt 33 § första stycket 2 skiljeförfarandelagen. (Se punkterna 59 och 60 i Högsta domstolens avgörande.)

Den nu aktuella skiljedomen har meddelats med stöd av artikel 26 i energistadge-fördraget. Med hänsyn till att fyra av de fem investerare som påkallade skiljeför-farandet mot Polen är från EU-medlemsstater, är det alltså fråga om en EU-intern investeringstvist. Det står därmed klart att ett upprätthållande av en sådan skiljedom skulle vara uppenbart oförenlig med grunderna för rättsordningen i Sverige och att skiljedomen är ogiltig enligt 33 § första stycket 2 skiljeförfarandelagen.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Polen har dock fört fram att skiljedomen i förhållande till investeraren från tredjeland borde kunna upprätthållas trots skiljedomens ogiltighet i övrigt. Hovrätten prövar därför om det är möjligt att upprätthålla skiljedomen i den del den avser investeraren från tredjeland.

### 5.3.2 Frågan om skiljedomens ogiltighet i förhållande till investeraren från tredjeland

Av EU-domstolens uttalanden i Komstroy, som hovrätten redogjort för ovan, framgår det att medlemsstaterna genom energistadgefördraget kan åläggas att iaktta de föreskrivna skiljedomsmekanismerna i deras förhållande till investerare från icke-medlemsstater som också är parter i fördraget, angående investeringar som dessa investerare gjort i medlemsstaterna (se Komstroy, punkten 65). Det står alltså klart att medlemsstaterna i och för sig kan vara bundna av skiljeklausuler i multilaterala internationella avtal. Huruvida skiljedomen kan upprätthållas partiellt i förhållande till investeraren från tredje land när talan inför skiljenämnden har förts gemensamt med investerare från medlemsstater och det står klart att skiljedomen är ogiltig i förhållande till de sistnämnda av de skäl som är aktuella i detta mål, måste dock enligt hovrättens mening besvaras inom ramen för den prövning som ska göras enligt 33 § skiljeförfarandelagen. Såvitt hovrätten känner till har denna fråga – sedan EU-domstolen meddelade sina domar i Achmea, Komstroy och PL Holdings – inte tidigare prövats i svensk domstol.

Av 33 § andra stycket skiljeförfarandelagen framgår att ogiltigheten kan gälla en viss del av skiljedomen. I förarbetena uttalas att bestämmelsen klargör att ogiltigheten inte nödvändigtvis smittar av sig på de delar av skiljedomen som inte är behäftade med någon ogiltighetsanledning. Som exempel lyfts den situationen fram att skiljemännen avgjort en fråga som inte är skiljedomsmässig och samtidigt avgjort andra tvistefrågor och att ogiltigheten i ett sådant fall drabbar endast den del av skiljedomen som behandlar den icke skiljedomsmässiga frågan, under förutsättning att den icke skiljedomsmässiga frågan kan särskiljas från övriga frågor som behandlas i skiljedomen. (Se prop. 1998/99:35 s. 234.)

Enligt Lindskog ska bestämmelsen förstås så att omfattningen av ogiltighetsverkning-
arna bestäms av ogiltighetsgrunden. Detta medför till exempel att hela skiljedomen är
ogiltig om skiljedomen inte uppfyller föreskrifterna om skriftlighet och underteck-
nande i 31 § första stycket skiljeförfarandelagen. Enligt Lindskog bör så också normalt
vara fallet om förfarandet är oförenligt med ordre public. Skulle däremot ogiltighets-
grunden bestå i att skiljedomen i en viss särskiljbar och självständig del är oförenlig
med ordre public, uttalar Lindskog att ogiltighetsverkningarna bör inskränkas till den
delen. Detsamma bör gälla prövningen av en icke skiljedomsmässig fråga. (Se
Lindskog, a.a., s. 918 f.)

Den ogiltighetsgrund som träffar den nu aktuella skiljedomen är att hänföra till pro-
cessuell ordre public där EU-domstolen genom sina avgöranden klarlagt att skilje-
klausuler som har sin grund i internationella investeringsskyddsavtal mellan medlems-
stater strider mot några av de mest grundläggande unionsrättsliga principerna i EU-
fördragen, såsom principerna om ömsesidigt förtroende mellan medlemsstaterna, lojalt
samarbete och unionsrättens autonomi (se t.ex. PL Holdings, punkten 46 med däri
gjorda hänvisningar till Achmea).

Enligt hovrättens mening är den ogiltighet som träffar en skiljedom som har meddelats
av en skiljenämnd som har konstituerats i strid med de nu nämnda principerna av en
sådan karaktär att ogiltigheten bör träffa domen i dess helhet. Hovrättens slutsats blir
därför att den nu aktuella skiljedomen med hänsyn till ogiltighetens karaktär inte heller
ska kvarstå i den del den innefattar skiljenämndens prövning av tredjelandsmedborg-
arens käromål, även om det i och för sig skulle kunna vara möjligt att särskilja talan i
denna del från målet i övrigt. Skiljedomen är således ogiltig även i förhållande till
investeraren från tredje land, Peter Derendinger.

### 5.3.3 Frågan om skiljedomens ogiltighet i kostnadsdelen

Hovrätten har på ovan angivna skäl funnit att skiljedomen är ogiltig i sin helhet. Vid
den bedömningen saknas förutsättningar att låta skiljedomen kvarstå i kostnadsdelen
såvitt avser parternas inbördes ansvar för ersättningar för förfarandet och för mot-
partens kostnader. Att investerarna vid tidpunkten för förfarandet inför skiljenämnden,

**DOM**

i motsats till Polen, ansåg att det inte fanns något hinder för skiljenämnden att pröva tvisten medför ingen annan bedömning. Inte heller är det möjligt för hovrätten att inom ramen för en ogiltighetstalan, på det sätt Polen argumenterat för, analogt tillämpa bestämmelsen i 37 § första stycket andra meningen skiljeförfarandelagen och låta skiljedomen kvarstå i kostnadsdelen.

Sammanfattningsvis innebär hovrättens ställningstaganden att skiljedomen är ogiltig i sin helhet, innefattande även avgörandet i kostnadsdelen såvitt det avser parternas inbördes ansvar för skiljemännens ersättning samt motpartens kostnader.

### 5.3.4 Frågan om skiljenämnden ska beredas tillfälle att vidta åtgärd enligt 35 § skiljeförfarandelagen

Vid de bedömningar som hovrätten har gjort saknas skäl att ta ställning till Polens begäran om att hovrätten med stöd av 35 § skiljeförfarandelagen ska bereda skilje-männen tillfälle att återuppta förfarandet eller vidta någon annan åtgärd som enligt skiljemännens mening undanröjer grunden för ogiltigheten eller upphävandet.

### 5.4 Rättegångskostnader i hovrätten

Investerarna har fått fullt bifall till sin talan. Polen har emellertid gjort gällande att investerarna bör ses som tappande part i hovrätten även vid denna utgång.

Polen har i första hand gjort gällande att investerarna ensamma och genom försumm-else har orsakat rättegången i hovrätten, varför de enligt 18 kap. 3 § rättegångsbalken ska ersätta Polen för dess rättegångskostnad. Polen har i detta sammanhang pekat på att Polen för sin del redan under skiljeförfarandet gjorde gällande att skiljenämnden inte var behörig att pröva tvisten och att ett avgörande i sak skulle resultera i en ogiltig skiljedom – en uppfattning som investerarna då vägrade godta – samt att investerarna dessutom informerades om Polens uppfattning i behörighetsfrågan flera månader innan investerarna påkallade skiljeförfarandet. Enligt Polen har investerarna väckt talan i hovrätten utan att Polen kan sägas ha gett anledning härtill och de har genom sitt

SVEA HOVRÄTT
Avdelning 02

**DOM**

agerande uppsåtligen eller genom försummelse föranlett onödig rättegång varför de
ensamma har orsakat hovrättsprocessen och de kostnader som denna är förenad med.
Polen har i andra hand med hänvisning till en möjlig analog tillämpning av bestämmel-
sen i 18 kap. 5 § rättegångsbalken gjort gällande att investerarnas talan om ogiltig-
förklaring är att jämställa med en återkallelse av den talan som fördes i skiljeförfar-
andet. Enligt Polen innebär investerarnas talan i hovrätten i praktiken att de medger att
något skiljeförfarande aldrig borde ha ägt rum. Polen har framhållit att det redan vid
investerarnas påkallelse av skiljeförfarandet och under hela förfarandet stod klart att
det fanns en överhängande och konkret risk att en skiljedom inte skulle kunna göras
gällande på grund av unionsrättens krav på medlemsstaterna. Alternativt kan hovrättens
åtgärd att ogiltigförklara skiljedomen enligt Polens mening likställas med att hovrätten
avvisar den talan som investerarna förde inför skiljenämnden.

Investerarna har motsatt sig att de oavsett utgången i målet ska förpliktas att ersätta
Polens rättegångskostnad i hovrätten. De har anfört att de i god tro påkallade skilje-
förfarandet och att rättsläget gällande unionsrättens inverkan på skiljeförfaranden
under energistadgefördraget, så som det nu klarlagts, vid tidpunkten för deras på-
kallelse varken var allmänt accepterat eller förutsebart. De har framhållit att skilje-
nämnden som bestod av experter inom internationell skiljedomsrätt och investerings-
tvister ansåg sig behörig vid meddelandet av skiljedomen så sent som den 30 juni
2021. Enligt investerarna hade de befogad anledning att utgå från att de kunde förlita
sig på skiljeavtalet i energistadgefördraget och de påkallade därför inte mot bättre
vetande skiljeförfarandet. Investerarna har härutöver pekat på att Polen i processen i
hovrätten har bestritt käromålet och inte gjort några medgivanden av investerarnas
talan. Enligt investerarna har det mot bakgrund av Polens inställning varit nödvändigt
för dem att väcka talan i hovrätten.

I 18 kap. 1 § rättegångsbalken återfinns huvudregeln för fördelningen av kostnads-
ansvaret i tvistemål, dvs. att den som förlorar ett mål ska ersätta motparten för dennes
kostnader. I 18 kap. 3 och 5 §§ finns bestämmelser om att den part som vinner ett mål i
stället, på olika grunder, kan förpliktas att betala motpartens rättegångskostnader eller
att parternas rättegångskostnader kan kvittas.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Inledningsvis kan hovrätten konstatera att investerarna har fått fullt bifall till sin talan
på så sätt att skiljedomen har förklarats ogiltig i sin helhet. Frågan är då om de omstän-
digheter som Polen pekat på utgör skäl att fördela kostnaderna på annat sätt än enligt
huvudregeln.

Som hovrätten uttalat i det föregående torde det i och för sig inte finnas något hinder
mot att parterna träffar en förlikning om att skiljedomen är ogiltig (se ovan gjorda
hänvisningar till Heuman, JT 2014/15 s. 446 och Lindskog, a.a., s. 922 f.). Polen har
emellertid inte medgivit investerarnas talan i någon del och motsatt sig att skiljedomen
förklaras ogiltig i förhållande till investeraren från tredje land och i kostnadsdelen.
Polen har även yrkat att investerarnas talan ska avvisas i viss del. Redan till följd av
Polens inställning till käromålet följer enligt hovrättens mening att investerarna inte
kan anses ha inlett en rättegång utan att Polen gett anledning därtill.

När det gäller frågan om investerarna på annat sätt uppsåtligen eller genom för-
summelse föranlett onödig rättegång har hovrätten uppfattat att Polen har gjort gäll-
ande att om investerarna hade haft den inställning de har nu, hade skiljeförfarandet
aldrig kommit till stånd eller i vart fall inte avslutats genom en materiell prövning och
den nu aktuella processen i hovrätten hade därmed inte heller varit nödvändig.

Tillämpligheten av skiljeklausuler i internationella investeringsavtal på EU-interna
tvister har, i vart fall sedan EU-domstolens avgörande i Achmea, varit föremål för en
omfattande diskussion i den juridiska litteraturen. Hovrätten kan också konstatera att
såväl Cour d'appel de Paris som svenska Högsta domstolen efter EU-domstolen av-
görande i Achmea sett sig föranledda att ställa ytterligare tolkningsfrågor till EU-
domstolen avseende sådana skiljeklausuler, vilka besvarats först efter det att den nu
aktuella skiljedomen meddelades. Så sent som den 13 december 2022 meddelade
denna hovrätt dom i ett mål som rörde bl.a. talan om ogiltighet avseende en skiljedom
som meddelats med stöd av skiljeklausulen i energistadgefördraget (se Svea hovrätts
dom den 13 december 2022 i mål nr T 4658-18) och Högsta domstolen meddelade,
efter begäran om förhandsavgörande från EU-domstolen i PL Holdings, dom den 14
december 2022 (se NJA 2022 s. 965). Härtill kommer att skiljenämnden i det nu aktu-

**DOM**

ella skiljeförfarandet – efter EU-domstolens dom i Achmea och trots Polens invänd-
ning om nämndens bristande behörighet, vilken även fick stöd av Europeiska
kommissionens yttrande i egenskap av Amicus Curiae under förfarandet – fann sig
behörig att pröva tvisten.

Enligt hovrätten kan det förhållandet att investerarna vid den då aktuella tidpunkten
bedömde det lämpligt att påkalla och genomföra ett skiljeförfarande med stöd av
skiljeklausulen i energistadgefördraget, men nu bedömer att skiljedomen är ogiltig och
har valt att väcka talan i saken, inte anses innebära att investerarna uppsåtligen eller
genom försummelse föranlett onödig rättegång på ett sätt som medför att de ska ersätta
Polens rättegångskostnad i målet.

Någon grund för att jämställa utgången i målet i hovrätten med att parts talan avvisas
eller att målet skrivs av efter parts återkallelse enligt 18 kap. 5 § rättegångsbalken finns
enligt hovrätten inte heller.

Sammanfattningsvis bedömer hovrätten att Polen är att se som tappande part i enlighet
med huvudregeln i 18 kap. 1 § rättegångsbalken. Polen ska därför ersätta investerarna
för deras rättegångskostnader.

Investerarna har yrkat ersättning för rättegångskostnader med sammanlagt 945 037 kr
och 98 öre, fördelat mellan kärandena på så sätt att en tredjedel hänför sig till Festorino
Invest Limited (1/3), en tredjedel till Fosontal Limited (1/3) och resterande tredjedel
med lika delar till Petra Salesny (1/9), Peter Derendinger (1/9) och Petr Rojicek (1/9).

Av det yrkade beloppet har Polen vitsordat ett belopp om 860 466 kr och 98 öre
som skäligt, men överlämnat åt hovrätten att bedöma skäligheten av ett belopp om
84 571 kr avseende ombudsarvode under tiden den 28 januari 2023 och 27 mars 2023.

Hovrätten finner att även det yrkade beloppet som avser ombudsarvode under tiden
den 28 januari 2023 och 27 mars 2023 är skäligt. Polen ska därmed ersätta investerarna
för deras rättegångskostnader i hovrätten på det sätt som framgår av domslutet.

SVEA HOVRÄTT
Avdelning 02

**DOM**

### 5.5 Sammanfattning

Hovrätten har konstaterat att det genom EU-domstolens praxis är klarlagt att skilje-
klausulen i energistadgefördraget inte är tillämplig på EU-interna tvister. Hovrätten har
vidare kunnat konstatera att det av Högsta domstolens praxis följer att en skiljedom
som trots detta har meddelats i en EU-intern investeringstvist med stöd av denna
skiljeklausul får anses ha tillkommit på ett rättsstridigt sätt, eftersom den är oförenlig
med de grundläggande bestämmelser och principer som reglerar rättsordningen i
unionen och därmed också i Sverige. Hovrätten har med stöd i denna praxis funnit att
ett upprätthållande av den mellan parterna meddelade skiljedomen skulle vara uppen-
bart oförenlig med grunderna för rättsordningen i Sverige, varför skiljedomen ska för-
klaras vara ogiltig enligt 33 § första stycket 2 skiljeförfarandelagen.

Hovrätten har vidare funnit att ogiltigheten är av en sådan karaktär att den ska träffa
skiljedomen i dess helhet, dvs. även i den del den avser tvisten mellan investeraren
från ett tredje land och Polen. Ogiltigheten träffar även skiljedomen i kostnadsdelen
såvitt avser parternas inbördes ansvar för skiljemännens ersättning samt motpartens
kostnader.

Hovrättens bedömningar innebär att investerarnas talan ska bifallas fullt ut. Den skilje-
dom som meddelats mellan parterna i Stockholm den 30 juni 2021 med rättelse och
tillägg av den 30 juli 2021 i SCC:s mål nr V2018/098 ska alltså förklaras ogiltig.

Utgången i målet innebär att investerarna är att bedöma som vinnande parter och ska
tillerkännas ersättning för sina rättegångskostnader i målet i hovrätten på det sätt som
framgår av domslutet.

Hovrätten har genom denna dom förklarat skiljedomen ogiltig. Eftersom ogiltigheten
är ett förhållande som gäller ipso jure saknas skäl att särskilt förordna om fortsatt
inhibition av skiljedomen (att ogiltighetsverkningarna inträder ipso jure och att de
således föreligger en skillnad i förhållande till rättsverkningar av ett klanderbart fel, se
Lindskog, a.a., s. 920). Hovrättens tidigare beslut om inhibition har därmed även fallit.

SVEA HOVRÄTT  
Avdelning 02

**DOM**

Sid 34  
T 12646-21

**6 Frågan om domen ska få överklagas**

Hovrätten anser att målet rymmer frågor där det är av vikt för ledning av rättstillämp-ningen att ett överklagande prövas av Högsta domstolen. Hovrätten tillåter därför att domen överklagas (43 § andra stycket lagen, 1999:116, om skiljeförfarande).

**HUR MAN ÖVERKLAGAR,** se bilaga A

Överklagande senast 2024-01-17

I avgörandet har deltagit hovrättslagmannen Amina Lundqvist samt hovrättsråden Kerstin Norman, referent, och Mats Holmqvist, skiljaktig.

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 35
T 12646-21

**Skiljaktig mening**

Hovrättsrådet Mats Holmqvist är skiljaktig i motiveringen i frågan om vilka över-
väganden som bör ligga till grund för bedömningen av om det är möjligt att upprätt-
hålla skiljedomen i den del den avser investeraren från tredjeland (avsnitt 5.3.2).

Jag instämmer i de rättsliga utgångspunkter som majoriteten redovisar i denna del.

Vid bedömningen av om en skiljedom ska vara ogiltig i sin helhet eller inte, måste det
dock beaktas att omständigheterna kan skilja sig åt i olika skiljeförfaranden som gäller
både EU-interna förhållanden och förhållandet mellan medlemsstater och investerare i
tredje land. De olika delarna av en process kan vara mer eller mindre särskiljbara och
det EU-interna inslaget kan vara större eller mindre.

I och med att Sverige har att upprätthålla såväl EU-rätten som övriga folkrättsliga för-
pliktelser, bl.a. skyldigheten att erkänna skriftliga avtal varigenom parter förbundit sig
att till skiljedom hänskjuta tvister (jfr Konventionen om erkännande och verkställighet
av utländska skiljedomar av den 10 juni 1958, "New York-konventionen", artikel II.1),
leder det för långt att alltid anse att en skiljedom är ogiltig i sin helhet om partsställ-
ningen är sådan att det delvis är fråga om en EU-intern investeringstvist.

Det bör därför vara möjligt att låta den del av en skiljedom som avser tvisten med en
tredjelandsmedborgare stå sig, trots att andra delar är ogiltiga. I så fall måste de olika
delarna av domslutet vara tydligt särskiljbara. Varken utgången eller processföringen i
den del som gäller tredjelandsmedborgaren bör ha påverkats av den del av processen
inför skiljenämnden som gällt det EU-interna förhållanden, dvs. den del av förfarandet
som skett i strid med s.k. processuell ordre public. Att så är fallet ska framgå redan
genom en läsning av skiljenämndens dom. Det vore en olämplig ordning om ett skilje-
förfarande – som i vart fall delvis är uppenbart oförenligt med grunderna för rättsord-
ningen i Sverige – skulle behöva följas av en omfattande domstolsprocess om hur
parternas processföring inför skiljenämnden tett sig i hänseenden som inte tydligt åter-
speglats i skiljedomen (jfr Heuman, Skiljemannarätt, 1999, Norstedts Juridik, s. 584).

SVEA HOVRÄTT
Avdelning 02

**DOM**

Sid 36
T 12646-21

Min bedömning är att den del av skiljeförfarandet och skiljedomen som gäller investeraren från tredje land inte kan särskiljas från övriga frågor som behandlas inför nämnden och i skiljedomen, på ett sådant sätt att ogiltigheten inte inträder i förhållande till denne. Jag delar alltså majoritetens slutsats att skiljedomen är ogiltig även i förhållande till investeraren från tredje land.

Bilaga A

**SVERIGES DOMSTOLAR**
www.domstol.se

Bilaga

# Hur man överklagar hovrättens avgörande

Den som vill överklaga hovrättens avgörande ska göra det genom att skriva till Högsta domstolen. Överklagandet ska dock skickas eller lämnas till hovrätten.

## Senaste tid för att överklaga

Överklagandet ska ha kommit in till hovrätten senast den dag som anges i slutet av hovrättens avgörande.

Beslut om häktning, restriktioner enligt 24 kap. 5 a § rättegångsbalken eller reseförbud får överklagas utan tidsbegränsning.

Om överklagandet har kommit in i rätt tid, skickar hovrätten överklagandet och alla handlingar i målet vidare till Högsta domstolen.

## Prövningstillstånd i Högsta domstolen

Det krävs prövningstillstånd för att Högsta domstolen ska pröva ett överklagande. Högsta domstolen får meddela prövningstillstånd endast om

1. det är av vikt för ledning av rättstillämpningen att överklagandet prövas av Högsta domstolen eller om

2. det finns synnerliga skäl till sådan prövning, så som att det finns grund för resning, att domvilla förekommit eller att målets utgång i hovrätten uppenbarligen beror på grovt förbiseende eller grovt misstag.

## Överklagandets innehåll

Överklagandet ska innehålla uppgifter om

1. klagandens namn, adress och telefonnummer,

2. det avgörande som överklagas (hovrättens namn och avdelning samt dag för avgörandet och målnummer),

3. den ändring i avgörandet som klaganden begär,

4. de skäl som klaganden vill ange för att avgörandet ska ändras,

5. de skäl som klaganden vill ange för att prövningstillstånd ska meddelas, samt

6. de bevis som klaganden åberopar och vad som ska bevisas med varje bevis.

## Förenklad delgivning

Om målet överklagas kan Högsta domstolen använda förenklad delgivning vid utskick av handlingar i målet, under förutsättning att mottagaren där eller i någon tidigare instans har fått information om sådan delgivning.

## Mer information

För information om rättegången i Högsta domstolen, se www.hogstadomstolen.se

Anvisning för överklagande HR, avgörande, med pt • Producerat av Domstolsverket • 2017-07