# EXHIBIT 62



STATE OF NEW YORK　　　　)
　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　)　　ss
COUNTY OF NEW YORK　　　)


## **CERTIFICATION**


This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Swedish into English of the attached Judgment, dated December 13,

2022.


_____

Lynda Green, Senior Managing Editor
Lionbridge


Sworn to and subscribed before me

this 29ᵗʰ day of December , 20 22 .

_____

LAURA E MUSICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MU6386791
Qualified in Queens County
My Commission Expires 01-28-2023



| SVEA COURT OF APPEAL | **JUDGMENT** | Case no |
| Section 02 | 12/13/2022 | T 4658-18 |
| Department 020114 | Stockholm | |

**PARTIES**

**Plaintiff**
Kingdom of Spain
Abogacía General del Estado
Calle Ayala, 5
28001 Madrid
Spain

Counsel: Attorney Pontus Ewerlöf
Hannes Snellman Advokatbyrå AB
Box 7801
103 96 Stockholm

**Respondent**
Novenergia II - Energy & Environment (SCA), SICAR, B 124550
28, Boulevard Royale
L-2449 Luxembourg
Luxembourg

Counsel: Attorneys Jakob Ragnwaldh, Robin Rylander and David Sandberg, and lawyer Anna Liliebäck
Mannheimer Swartling Advokatbyrå AB
Box 1711
111 87 Stockholm

**MATTER**
Declaration of invalidity of arbitration award, etc.
_____

**The Court of Appeal's ruling, see next page.**

Doc. Id 1860038

| **Mailing address** | **Office** | **Phone** | **Fax** | **Office hours** |
| Box 2290 | Birger Jarls Torg 16 | 08-561 670 00 | | Monday-Friday |
| 103 17 Stockholm | | 08-561 670 00 | | 9:00 a.m. – 4:30 p.m. |
| | | Email: svea.avd2@dom.se | | |
| | | www.svea.se | | |

**THE COURT OF APPEAL'S RULING**

1. The Court of Appeal finds for the plaintiff in so far as the Court of Appeal declares the February 15, 2018, Arbitration Award in SCC's case no. V (2015/063) invalid.

2. The Court of Appeal's decision of May 17, 2018, regarding a stay of execution of the Award shall remain in effect until the judgment becomes legally binding.

3. Novenergia II – Energy & Environment (SCA), SICAR shall reimburse the Kingdom of Spain for its legal costs in the Court of Appeal in the amount of EUR 971,380.75 plus interest on the sum as of the day of judgment until payment is made. EUR 937,500 of the compensation constitutes attorney's fees.

———————————————

## Contents

**1. BACKGROUND** ...................................................................................................5

**2. CLAIMS AND POSITION** .................................................................................9

**3. GROUNDS** .............................................................................................................9

**3.1 Spain** .................................................................................................................9

*3.1.1 Ground for challenge (A) - Article 26 does not contain an offer for arbitration between the parties and therefore a valid arbitration agreement does not exist between the parties* ................................................................................9

*3.1.2 Ground for challenge (B) - The offer of arbitration in article 26 is in any case invalid and a valid arbitration agreement therefore does not exist between the parties* ....................................................................................................10

*3.1.3 Ground for invalidity (C) – The dispute between Novenergia and Spain is not arbitrable* ...............................................................................................11

*3.1.4 Ground for invalidity (D) - The Award and the manner in which it was issued is clearly incompatible with the basic principles of the Swedish legal system* .........12

*3.1.5 Ground for invalidity (E) – The awarding of damages in itself constitutes state aid in violation of Article 108 TFEU* .........................................................12

*3.1.6 Ground for challenge (F) – The tribunal has exceeded its mandate or in any case committed an error in the course of the proceedings which impacted the outcome of the case* .......................................................................................13

*3.1.7 It is disputed that the principle of proportionality or the European Convention on Human Rights constitutes an obstacle to setting aside or invalidating the Award* ...........................................................................................................14

**3.2 Novenergia** .....................................................................................................15

*3.2.1 Ground for challenge (A) – Article 26 contains an offer of arbitration from – among others – Spain to investors from all other Member States of the treaty* ......15

*3.2.2 Ground for challenge (B) – The ground for challenge is precluded and the arbitration agreement is valid* ...............................................................16

*3.2.3 Ground for invalidity (C) - The Award does not include an assessment of a non-arbitrable matter* .........................................................................18

*3.2.4 Ground of invalidity (D) - Neither the Award nor the manner in which it was issued is clearly incompatible with the basic principles of the Swedish legal system* ...........................................................................................................18

*3.2.6 Ground for challenge (F) - The Award shall not be set aside in part* ...........19

*3.2.7 Setting aside the Award based on either of the grounds of challenge (A) or (B) or invalidating it on any of the grounds of invalidity (C)–(E) would be disproportionate and incompatible with the European Convention on Human Rights* ...........................................................................................................20

**4. THE PARTIES' STATEMENT OF THE CASE** ...........................................22

**4.1 Spain** ...............................................................................................................22

*4.1.1 Regarding grounds for challenge and invalidity (A)–(F)* ...............................22

    *4.1.2 Regarding the question of whether the European Convention constitutes an obstacle to setting aside or invalidating the Award* ................................................. 25

**4.2 Novenergia** ........................................................................................................... **26**

    *4.2.1 Regarding grounds for challenge and invalidity (A)–(F)* .............................. 26

    *4.2.2 Regarding the question of whether the European Convention or the principle of proportionality constitutes an obstacle to setting aside or invalidating the Award* ...................................................................................................................................... 30

**5. THE OPINION OF THE COMMISSION AND THE INVESTIGATION IN GENERAL** . **31**

**6. GROUNDS FOR THE DECISION** ........................................................................ **32**

**6.1 Disposition and procedure of examination** ...................................................... **32**

**6.2 The question of whether the dispute is arbitrable** ............................................ **33**

    *6.2.1 Introduction* .................................................................................................. 33

    *6.2.2 Legal starting points* ...................................................................................... 34

    *6.2.3 The Court of Appeal's assessment* .................................................................. 37

**6.3 The question of whether an invalidation would be contrary to the European Convention on Human Rights or to the principle of proportionality?** .......................................... **40**

    *6.3.1 Introduction* .................................................................................................. 40

    *6.3.2 Legal starting points* ...................................................................................... 40

    *6.3.3 The Court of Appeal's assessment* .................................................................. 42

**6.4 Summary of conclusions and assessment** ......................................................... **43**

**6.5 Legal costs** ............................................................................................................ **44**

**6.6 The question of whether the judgment may be appealed, etc.** ............................ **45**

## 1. BACKGROUND

The Kingdom of Spain (Spain) has been a Member State in the European Union (EU) since 1986. Spain signed the Energy Charter Treaty (ECT L 69, 1998, p.1) on December 17, 1994, and ratified the treaty on December 11, 1997. The Energy Charter Treaty (ECT) entered into force regarding Spain on April 16, 1998.

Novenergia II – Energy & Environment (SCA) (Novenergia) is a fund company registered in Luxembourg and incorporated under Luxembourg law. Novenergia's investors are mainly financial institutions, primarily pension funds and charities.

Luxembourg has been a Member State in the EU since 1958 and signed the ECT on December 17, 1994, and ratified it on February 7, 1997. The ECT entered into force with respect to Luxembourg on April 16, 1998.

During the latter half of the 1990s, the Spanish energy market was deregulated. Prior to this, the market had been almost exclusively controlled and regulated by state energy companies and authorities. After deregulation, private market participants were allowed in the energy market. To achieve the goal of achieving twelve percent of the national energy needs in 2010 (and 20 percent in 2020) through renewable energy sources, the Spanish state enacted several laws between 1997 and 2007. The regulations were intended to promote the production of renewable electricity, among other things by attracting foreign solar energy investors with various incentives and stimulus measures. The measures developed in the 2000s by allowing energy producers who produced energy from renewable sources not only to sell electricity with priority via the Spanish power grid, but also received a certain premium for each kilowatt-hour produced. Through these measures, Spain guaranteed to provide a certain compensation for each kilowatt-hour produced by solar power plants throughout the life cycle of the solar power plants.

In 2007, Novenergia invested in the Spanish energy market. On July 3, 2007, Novenergia acquired the Spanish company Novenergia II Energy & Environment España, S.L. Through this company, Novenergia acquired eight solar cell parks in Spain.

Between 2010 and 2014, Spain implemented regulations that in various regards changed the subsidy of energy from renewable sources that had been in force since 2007. Decree 1565/2010 limited the time period of the guaranteed compensation, from the life cycle of the solar power plants to 25 years, and Decree 14/2010 restricted the number of production hours that entitled producers to economic compensation. Finally, the old order was abolished through the Act 9/2013, by which a new regulation was established. Thereby Spain's guarantees to renewable energy producers were finally abolished and replaced with a limited fixed reimbursement.

ECT is a multilateral treaty regarding cooperation in the energy area. The treaty is an investment protection treaty and contains regulations intended to promote access to international energy markets on business terms and to promote an open and competitive market for energy material and energy products.

Article 26 of the treaty contains a dispute resolution clause which states as follows.[1]

> **Settlement of Disputes between an Investor and a Contracting Party**
> 1. Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.
> 2. If such disputes cannot be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:
>     a) to the courts or administrative tribunals of the Contracting Party party to the dispute;
>     b) in accordance with any applicable, previously agreed dispute settlement procedure; or
>     c) in accordance with the following paragraphs of this Article.

---

[1] See Sweden's international agreements (SÖ) 1997:57

3.  a) Subject only to subparagraphs (b) and (c), each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

    b)      i) The Contracting Parties listed in Annex ID do not give such unconditional consent where the Investor has previously submitted the dispute under subparagraph (2)(a) or (b).

       ii) For the sake of transparency, each Contracting Party that is listed in Annex ID shall provide a written statement of its policies, practices and conditions in this regard to the Secretariat no later than the date of the deposit of its instrument of ratification, acceptance or approval in accordance with Article 39 or the deposit of its instrument of accession in accordance with Article 41.

    c) A Contracting Party listed in Annex IA does not give such unconditional consent with respect to a dispute arising under the last sentence of Article 10(1).

4.  In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to:

    a)       i) The International Centre for Settlement of Investment Disputes, established pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of other States opened for signature at Washington, March 18, 1965 (hereinafter referred to as the "ICSID Convention"), if the Contracting Party of the Investor and the Contracting Party party to the dispute are both parties to the ICSID Convention; or ii) The International Centre for Settlement of Investment Disputes, established pursuant to the Convention referred to in subparagraph (a)(i), under the rules governing the Additional Facility for the Administration of Proceedings by the Secretariat of the Centre (hereinafter referred to as the "Additional Facility Rules"), if the Contracting Party of the Investor or the Contracting Party party to the dispute, but not both, is a party to the ICSID Convention;

    b)   a sole arbitrator or ad hoc arbitration tribunal established under the Arbitration Rules of the United Nations Commission on International Trade Law (hereinafter referred to as "UNCITRAL"); or

    c)  an arbitral proceeding under the Arbitration Institute of the Stockholm Chamber of Commerce.

5.  a) The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for:

             i) written consent of the parties to a dispute for purposes of Chapter II of the ICSID Convention and for purposes of the Additional Facility Rules;
             ii) an "agreement in writing" for purposes of article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, 10 June 1958 (hereinafter referred to as the "New York Convention"); and

        iii) "the parties to a contract [to] have agreed in writing" for the purposes of article 1 of the UNCITRAL Arbitration Rules.

    b) Any arbitration under this Article shall at the request of any party to the dispute be held in a state that is a party to the New York Convention. Claims submitted to arbitration hereunder shall be considered to arise out of a commercial relationship or transaction for the purposes of article I of that Convention.

6. A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law.

7. An Investor other than a natural person which has the nationality of a Contracting Party party to the dispute on the date of the consent in writing referred to in paragraph (4) and which, before a dispute between it and that Contracting Party arises, is controlled by Investors of another Contracting Party, shall for the purpose of article 25(2)(b) of the ICSID Convention be treated as a "national of another Contracting State" and shall for the purpose of article 1(6) of the Additional Facility Rules be treated as a "national of another State".

8. The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute. An award of arbitration concerning a measure of a sub-national government or authority of the disputing Contracting Party shall provide that the Contracting Party may pay monetary damages in lieu of any other remedy granted. Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.

Novenergia requested arbitration on May 8, 2015, against Spain at the Arbitration Institute of the Stockholm Chamber of Commerce (SCC) in accordance with the so-called SCC-rules, SCC's case no V 2015 (2015/063). As cause of action, Novenergia claimed that Spain had breached its obligations under ECT. In the arbitration, Novenergia asserted that Spain, through the regulations implemented between 2010 and 2014, had breached the regulations in article 10.1 ECT regarding fair and equitable treatment as well as article 13 regarding expropriation.

On July 29, 2015, the SCC board decided that the seat for the arbitration would be Stockholm. The tribunal consisted of attorney Johan Sidklev (chairman), professor Antonio Crivellaro and judge Juez Bernardo Sepúlveda-Amor.

On February 15, 2018, the Award was rendered in Stockholm. According to the Award, Spain was found guilty of breaching its obligations under the provision of article 10.1 of ECT. Spain was also ordered to pay damages of EUR 53.3 million as well as compensation

for Novenergia's costs amounting to EUR 2.6 million. The costs of the arbitration were shared equally between the parties.

On May 17, 2018, at the request of Spain, the Court of Appeal decided that continued enforcement of the Award may not take place for the time being and on October 24 of the same year it rejected a request for the decision to stay the execution to be set aside.

## 2. CLAIMS AND POSITION

Spain has requested that the Court of Appeal

  (i)  shall set aside the Arbitration Award in its entirety, alternatively

  (ii) declare it invalid, or in any event

  (iii) set aside the Award with respect to the damages awarded in the amount of EUR 22.3 million are concerned, under item C of the Award.

Novenergia opposes Spain's claims.

The parties have requested compensation for legal costs.

## 3. GROUNDS

### 3.1 Spain

*3.1.1 Ground for challenge (A) - Article 26 does not contain an offer for arbitration between the parties and therefore a valid arbitration agreement does not exist between the parties*

Novenergia requested the arbitration pursuant to Article 26 of the ECT. It follows from the wording of Article 26 of the ECT - which must be interpreted in conformity with EU law and in the light of its historical, legal and institutional background - together with, among other things, Articles 1.2, 1.3, 1.10, and 36.7 of the Treaty together with the statement from the EU and decisions from the Council in connection with the EU and the Member States joining the Treaty, that Article 26 is not applicable between two EU Member States and therefore does not contain any offer for arbitration from Spain in relation to an investor from another EU country. Article 26.1 relates to disputes concerning an investment made by an investor of a Contracting Party in the territory of another Contracting Party. An EU Member State constitutes an area in the sense referenced in, among other places, ECT

Article 26.1 towards third countries. A Member State of the EU, such as Spain, on the other hand, does not constitute a separate area in relation to another Member State such as Luxembourg. The EU constitutes a regional economic integration organization in the sense intended in Article 1.10 of the Treaty. As such, the whole of EU constitutes an area for the application of Article 26. An offer for arbitration from Spain for Novenergia to accept therefore did not exist and Novenergia's request for arbitration did not create an arbitration agreement. The conditions for an arbitration agreement between Spain and Novenergia according to ECT Article 26 therefore have not been satisfied.

The Award is not covered by a valid arbitration agreement and must be set aside in accordance with Section 34(1) of the SAA.

### 3.1.2. Ground for challenge (B) - The offer of arbitration in article 26 is in any case invalid and a valid arbitration agreement therefore does not exist between the parties

Articles 267 and 344 of TFEU constitute obstacles to such a provision in an international agreement between EU Member States as Article 26 of ECT according to which an investor in one Member State, if a dispute arises regarding investments in the other Member State, may initiate proceedings against the latter Member State before a court of arbitration. It is irrelevant that the ECT is a multilateral treaty or that the EU is a contracting party to the treaty.

The legal consequence is that Article 26 of ECT is invalid, not applicable or in any case has no effect between EU Member States. An offer for arbitration therefore cannot have been submitted with binding effect by Spain to Novenergia. Since no offer for arbitration was made, there was no arbitration agreement between Spain and Novenergia. Thus the arbitration between Spain and Novenergia was carried out without there being a valid arbitration agreement.

Since there was no offer from Spain to Novenergia, Spain could not be bound by any arbitration agreement regardless of whether Spain raised a jurisdictional objection. However, Spain did object to the jurisdiction of the arbitration tribunal. A conclusive

arbitration agreement therefore cannot have been created between Spain and Novenergia. In any case, such an agreement would violate EU law.

Against this background, the Arbitration Award must be set aside in its entirety in accordance with Section 34, Paragraph 1, Item 1 of the SAA.

It is disputed that Spain's right to bring an action for damages is precluded. The rules of the SCC are not applicable to determine whether Spain has lost its right to bring an action for damages. The decision in the CJEU judgment of March 6, 2018, *Achmea*, C-284/16, EU:C:2018:158, involved a new fact that was unknown to the parties before the judgment.

However, Spain objected to the Tribunal's jurisdiction in its Statement of Defense. Novenergia responded to Spain's jurisdictional objections and provided detailed reasoning, in which Novenergia countered Spain's arguments regarding Article 26 and its compatibility with EU law. Thus Spain objected to the Tribunal's jurisdiction and maintained its objections throughout the arbitration. Novenergia addressed these objections on repeated occasions and the Tribunal examined Spain's jurisdictional objections.

### 3.1.1 Ground for invalidity (C) – The dispute between Novenergia and Spain is not arbitrable

The dispute itself between Novenergia and Spain is not arbitrable. The ECT infringes on the allocation of powers established by the EU treaties and thus also on the autonomy of the EU legal system. Since the Tribunal could not have jurisdiction to ensure compliance with EU law, the dispute settled by the Award is non-arbitrable.

The questions that the Tribunal had to decide in the arbitration also concern the EU's rules on state aid. The parties in the arbitration have not been able to settle these issues, as the permissibility of state aid is subject to the exclusive competence of the European Commission.

Since the Award includes non-arbitrable matters, it is invalid in accordance with Section 33, Paragraph 1, Item 1 of the SAA.

*3.1.4 Ground for invalidity (D) - The Award and the manner in which it was issued is clearly incompatible with the basic principles of the Swedish legal system*

The Tribunal rendered the Award despite lacking jurisdiction and in clear conflict with EU law, CJEU case law and decisions by the European Commission. The Award is clearly incompatible with EU law and the fundamental principles on which EU law rests.

The principle of the autonomy of EU law, in particular Articles 267 and 344 of the TFEU, as formulated in CJEU case law, is part of EU public policy. An arbitration award based on an arbitration agreement between an EU Member State and an investor from another EU Member State is incompatible with the principle of the autonomy of EU law and constitutes a violation of EU public policy. A Swedish court must invalidate an arbitration award that violates EU public policy as this is also in conflict with Swedish public policy.

Since the Arbitration Award is clearly incompatible with the basic principles of the Swedish legal system and applicable EU law, i.e., public policy, and since the legal system may not contribute to the recognition and enforcement of such an arbitration award, it is invalid in accordance with Section 33, Paragraph 1, Item 2 of the SAA.

*3.1.5 Ground for invalidity (E) – The awarding of damages in itself constitutes state aid in violation of article 108 TFEU*

The Arbitration Award is not compatible with the legal system in Sweden, because the Tribunal's award of damages constitutes state aid in violation of EU law.

The Tribunal did not have jurisdiction to decide on matters of state aid, as these matters fall under the exclusive jurisdiction of the European Commission.

A recognition and enforcement of the Award would entail the payment of damages and constitute state aid. A payment would thus be contrary to 108(3) of the TFEU.

Since an intra-EU arbitration award cannot be recognized and enforced as it conflicts with EU, and thus Swedish, public policy, it is invalid in accordance with Section 33, Paragraph 1, Item 2 of the SAA.

*3.1.6 Ground for challenge (F) – The tribunal has exceeded its mandate or in any case committed an error in the course of the proceedings which impacted the outcome of the case*

In case the Arbitration Award is not set aside or declared invalid, the Award must at least be annulled in part, because the Tribunal exceeded its mandate or in any case committed a processing error.

In the arbitration, the Tribunal had to examine Novenergia's claims of violations of, among other things, the provision on fair and equitable treatment according to Article 10.1 ECT. Novenergia's action was based on several regulatory measures implemented by Spain between 2010 and 2014.

The Tribunal's assessments, that it lacked authority to examine Novenergia's claims based on Act 15/2012 regarding new tax on electricity and that the regulations RDL129 14/2010 (restricting the number of hours) and RDL 2/2013 (changes in the index for enumeration of tariffs) did not constitute a violation of Article 10(1) ECT, becomes decisive for the calculation of damages.

However, despite the request for clarification from the parties regarding the financial effects of the respective regulatory measures 2010–2014, the Tribunal did not take these effects into account when calculating the amount of the damages.

The Arbitration Tribunal only calculated damages attributable to these actions regarding historical capital amounts. Instead, the main part of the damages consisted of future damages, i.e., from 2014 onwards, which were calculated using a discounted cash flow model (DCF). When applying the DCF, the Arbitration Tribunal committed an error when it did not calculate

(i)    the damages based on the law 15/2012 from 2014 onwards, since the Tribunal declared itself lacking jurisdiction to hear this matter;

(ii)    the damages based on RDL 14/2010 from 2014 onwards, because the Tribunal declared that RDL 14/2010 does not conflict with fair and equitable treatment in Article 10(1) of ECT;

(iii)    the damages based on RDL 2/2013 from 2014, because the tribunal declared that RDL 2/2013 does not conflict with fair and equitable treatment in Article 10(1) of the CCT.

Thus the Tribunal, when applying DCF to the damage calculations, did not take into account the conclusions regarding liability that the Tribunal previously made in the judgment. Therefore, the Award is inconsistent and the total effect of the Tribunal's incorrect handling of the matter amounts to a sum of EUR 22.3 million. This failure means that the Tribunal was guilty of exceeding its mandate or in any case committed an error in the course of the proceedings that impacted the outcome of the case. The Award must therefore be set aside in accordance with Section 34, Paragraph 1, Item 2 or 6 of the SAA with regard to the part that refers to a damages amount of EUR 22.3 million.

Spain also requested after the Award was announced that the Tribunal, in accordance with Section 41 of the SCC rules and section 32 of the SAA, should correct the Award in this part, among others. The Tribunal, however, rejected Spain's request in Procedural Order No 17. This decision in itself involves a procedural error that influenced the outcome of the case. The Award must therefore be set aside also on this basis in accordance with Section 34, Paragraph 1, Item 6 of the SAA with regard to the part that refers to a damages amount of EUR 22.3 million.

### 3.1.7 *It is disputed that the principle of proportionality or the European Convention on Human Rights constitutes an obstacle to setting aside or invalidating the Award*

It is contested that the principle of proportionality constitutes an obstacle to setting aside or declaring the Award invalid if the conditions in sections 34 or 33 of the SAA are met. These sections do not prescribe that the courts must make a proportionality assessment or balancing of interests. There is no statement in support of such an examination in the preparatory work for the SAA.

Even if a proportionality assessment were to be undertaken by the Court of Appeal, there is no reason not to set aside or invalidate the Award if the conditions for this are otherwise met. Novenergia does not suffer any loss of rights if the Award should be set aside or declared invalid. The possibility of a judicial proceeding remains in national court.

The fact that Article 26 of the ECT is not applicable between the parties is a fact *ex tunc* and the provision thus has never been valid between Member States. It is Novenergia that has relied on a provision that is incompatible with EU law and thereby requested arbitration, which Spain clearly objected to in the arbitration. Novenergia cannot therefore claim that there was a justified expectation that the Award would stand.

It is contested that setting aside or invalidating the Award would constitute a violation of Novenergia's right to property according to Article 1 of the First Additional Protocol to the European Convention of November 4, 1950, for the Protection of Human Rights and Fundamental Freedoms (ECHR). There is no limitation of the right to property if the Award is set aside or declared invalid, and the right is not absolute. In the event that there is a limitation of the protection of property, it is legal and proportionate.

It is contested that setting aside or invalidating the Award would constitute a violation of Novenergia's right to judicial review according to Article 6 of the European Convention. Novenergia has had access to legal review of its claim in a Spanish court but has voluntarily chosen to request arbitration. The right to judicial review is not absolute.

### 3.2 Novenergia

*3.2.1 Ground for challenge (A) – Article 26 contains an offer of arbitration from – among others – Spain to investors from all other Member States of the treaty*

Novenergia disputes Spain's claim that Article 26 of the ECT does not contain an offer for arbitration between the parties and that no valid arbitration agreement exists.

Pursuant to Article 26.1 and 26.3(a) of the ECT, Spain, which is a contracting party, made a binding offer for arbitration to investors from another contracting party regarding disputes concerning investments within Spain's territory. Under Article 1.10 of the Treaty, Spain's territory is that territory over which the State has sovereignty.

Novenergia is an investor from Luxembourg, another contracting party to the ECT, which has invested within Spain's territory. Novenergia accepted Spain's offer for arbitration through its notification on December 18, 2014. An arbitration agreement has thus been reached.

The ECT is an international treaty that must be interpreted and applied in accordance with the rules of international law, primarily the provisions of the Vienna Convention.

Neither Article 1.2 of the ECT, which contains a definition of "*contracting party,*" nor Article 1.3 of the Treaty, which contains a definition of "*regional economic integration organization,*" provides support for Spain's interpretation of Article 26.1. These provisions also do not otherwise imply any restriction on the contracting parties' commitment to the Treaty. Article 1.10 of the Treaty, which contains a definition of "*territory,*" does not mean that the obligations of the contracting Member States among themselves under the Treaty are regulated by EU law.

Both the EU and the Member States are bound by the ECT in its entirety. There is no agreement, a so-called "disconnection clause," which supports Spain's claims that this Treaty does not apply between EU Member States.

During the negotiations that preceded the ECT, it was the intention of the contracting parties that the treaty, including its Article 26, would apply between all contracting parties, including between EU Member States. A proposal by the EU Commission to introduce a so-called "disconnection clause" was dismissed by both EU Member States and third states.

There is no support for interpreting ECT in conformity with EU law or interpreting it according to other EU legal principles.

### 3.2.2 Ground for challenge (B) – The ground for challenge is precluded and the arbitration agreement is valid

Spain has lost the right to claim that the offer in Article 26 of the ECT is invalid.

According to the Parties' agreement, the SCC Arbitration Rules were applicable to the Arbitration.

According to the SCC Arbitration Rules, an objection to jurisdiction must be included in the defense and made "without delay" so that the party is not deemed to have waived the right to raise the objection.

During the arbitration, Spain did not raise the objection raised in in support of ground for challenge B – that the standing offer according to Article 26 of the ECT must be considered invalid as contrary to EU law.

It is disputed that there is no valid arbitration agreement.

The offer in Article 26 of the ECT (see ground for challenge A) is valid, applicable and does not lack effect between EU Member States. This is not affected by EU law but is decided exclusively on the basis of the Treaty and international law. The ECT is a multilateral treaty that is binding on the EU and its Member States. According to Article 26.6, EU law is not the applicable law in disputes according to the Treaty. The Tribunal did not apply EU law, which the Tribunal also stated in the Award.

Neither Achmea nor the CJEU's judgment of September 2, 2021, Komstroy, C-741/19, EU:C:2021:655, support the conclusion that the dispute resolution mechanism in the ECT would be contrary to EU law in the present case. A Swedish court can, within the framework of its review of a challenge or invalidity action, carry out an extended check of whether an arbitration award conflicts with binding EU law. The review thus is not limited in the same way as the review of arbitration awards under German law on which the CJEU based its conclusions in Achmea and its similar statements in Komstroy.

The CJEU can interpret EU law but lacks the authority to invalidate Article 26 of the ECT. In the event of a possible conflict between the ECT and the EU treaties, the former treaty takes precedence over the EU treaties according to Article 16 of the ECT.

In any case, the principle of "legal certainty," which is a general legal principle within EU law and thus part of primary law, means that the CJEU, even if it were to consider that an

EU act through which the EU has entered into an international treaty is incompatible with the EU treaties, would not invalidate the EU act.

Spain acceded to the ECT on December 11, 1997, and thereby left the standing and unconditional offer of arbitration set out in Article 26 of the treaty. By invoking arbitration, Novenergia relied on that offer and an arbitration agreement has thereby been entered into.

### 3.2.3 Ground for invalidity (C) - The Award does not include an assessment of a non-arbitrable matter

It is contested that the Award includes a review that is not arbitral.

The disputed issue between Novenergia and Spain was reconcilable. The tribunal did not examine any question of state aid. What the tribunal examined was whether the abolition of Spain's regulations constituted a breach of Spain's obligations under the ECT.

The CJEU has not stated that arbitration may not take place when a state is a party to a dispute.

### 3.2.4 Ground of invalidity (D) - Neither the Award nor the manner in which it was issued is clearly incompatible with the basic principles of the Swedish legal system

It is contested that the Award or the manner in which it was issued is clearly incompatible with the basic principles of the Swedish legal system.

The legal basis for the arbitration agreement, the Tribunal's jurisdiction and the possible invalidity of the arbitration agreement are irrelevant to the question of whether the Award is incompatible with the basic principles of the Swedish legal system. Even if Spain's claims were true, they cannot mean that the Award, or the manner in which it was issued, is clearly incompatible with public policy.

The CJEU has not established an absolute ban on arbitrations. Questions of recognition and enforcement are irrelevant to the validity of the Award.

*3.2.5 Ground for invalidity (E) - The Award does not include state aid and is in any case not clearly incompatible with the basic principles of the Swedish legal system*

It is contested that the Award or the manner in which was issued is clearly incompatible with the basic principles of the Swedish legal system.

The Award does not include state aid. The Award is a binding declaration that Spain has an obligation under international law, according to the ECT, to pay damages to Novenergia. The Award and the imposition of damages do not in themselves constitute a state aid measure and cannot be incompatible with EU law rules on state aid. If at a later stage the European Commission concludes that enforcement of the arbitration award, or payment pursuant to it, constitutes unauthorized state aid, this does not affect the validity of the Award.

Even if the Award in itself were to constitute state aid and contravene the notification requirement in Article 108(3) of the TFEU, it would not mean that the Award is incompatible with Swedish public policy.

The European Commission did not find that any of the Spanish rules that were part of the circumstances of the arbitration constitute state aid that is incompatible with the internal market.

*3.2.6 Ground for challenge (F) - The Award shall not be set aside in part*

It is disputed that the Tribunal has exceeded its mandate or committed any procedural error.

The Tribunal has taken into account its conclusions on the question of liability, but it has drawn different conclusions for the calculation of damages than those advocated by Spain. Spain objects to the Arbitration Tribunal's factual findings.

In its review, the Tribunal found that it lacked jurisdiction to examine Spain's introduction of Act 15/2012 and that regulations 14/2010 and 2/2013 did not constitute independent violations of article 10.1 of the ECT. However, the Tribunal found that Spain, by introducing the new regime, crossed the threshold of a treaty violation. The Tribunal noted

that Novenergia "has quantified the loss suffered as a consequence of the Specific Regime in isolation [...] to EUR 53.3 million" and awarded EUR 53.3 million in damages.

Even if Spain were correct in its assertions that the assessment of damages is "clearly incompatible" with the conclusions with respect to liability, the assessment is not clearly the result of any mistake or oversight. The assessment is the result of the Tribunal's considered analysis. It would thus be a legal, or factual, misjudgment on the part of the Tribunal, which under no circumstances can constitute a basis for a challenge of an arbitration award.

Nor can there be any procedural error regarding the Tribunal's decision in Procedural Order No. 17 to reject Spain's request for corrections. Spain's request actually referred to an amendment of the Award, which the Tribunal did not have the authority to grant according to Section 32 of the SAA and Section 41 of the SCC's Arbitration Rules. The Tribunal commented on Spain's claims in substance and concluded that it stood by its assessment on the question of damages. Even if it had been wrong to reject Spain's request on the grounds that the tribunal lacked jurisdiction to hear it, the decision thus had no impact on the outcome.

Spain has not specified in what way the Tribunal exceeded its mandate.

*3.2.7 Setting aside the Award based on either of the grounds of challenge (A) or (B) or invalidating it on any of the grounds of invalidity (C)–(E) would be disproportionate and incompatible with the European Convention on Human Rights*

The Award cannot be set aside or invalidated based on Spain's grounds for challenge (A) and (B) or grounds of invalidity (C)–(E), respectively, because such an action is prevented by the EU principle of proportionality and the ECHR.

Setting aside or invalidating the Award would be incompatible with the EU principle of proportionality for the reasons stated below in relation to the incompatibility with the provisions of the ECHR. Setting aside or invalidating the Award would mean a serious and unequivocal violation of Novenergia's right to property protections for the following reasons.

Through the Award, Novenergia was awarded compensation from Spain in the amount of EUR 53.3 million plus interest. Novenergia would lose out on this compensation if the Award is set aside or declared invalid and Novenergia lacks alternative compensation options for Spain's breach of treaty.

Spain's action as regards grounds (A) and (B) and grounds of invalidity (C)–(E) is essentially based on claims of EU law interests, in particular "a uniform interpretation of EU law" and "the allocation of powers fixed by the treaties".

EU law was not addressed at all in the arbitration, neither procedurally nor materially. Thus, the EU legal interests invoked by Spain could not be jeopardized by the arbitration. The Award itself does not constitute an infringement of any EU legal interest. Setting aside or invalidating the Award thus will not achieve the public interests invoked by Spain.

The damage Novenergia would suffer if the Award were to be set aside or invalidated would in any case be disproportionate to the alleged interests that this could achieve. Novenergia would have no access to any opportunity for compensation.

Furthermore, setting aside or invalidating the Award on the basis of the CJEU rulings in *Achmea* and *Komstroy* would entail an application of the ECT that would retroactively change the content of the ECT in breach of international law, without any specific justification for this retroactive measure being provided. For this reason, setting aside or invalidating the Award would also be a serious and unequivocal violation of the ECHR.

Setting aside or invalidating the Award would further entail a serious and unequivocal violation of Novenergia's right to judicial review for the following reasons.

By requesting arbitration against – and thereby entering into an arbitration agreement with – Spain, Novenergia waived its right to judicial review before a court according to the ECHR.

Setting aside or invalidating the Award would mean that this waiver no longer applies, whereby Novenergia has a convention-protected right to have its claim tried before a court, in this case by a Spanish court.

However, Novenergia lacks legal opportunities to have its claim for damages based on the investment protection provisions of the ECT tried by a Spanish court if the Award is set aside or declared invalid. Such an action would be time-barred under Spanish law. Furthermore, Spanish (substantive) law does not provide any real possibility of compensation for individuals who have incurred damage by the legislative measures of the Spanish state. The damages for which Novenergia received compensation through the Award are the result of such legislative measures. A hypothetical claim by Novenergia based on Spanish substantive law would in any case be time-barred under Spanish law.

Thus, if Novenergia can no longer rely on the offer of arbitration made by Spain under Article 26.3 ECT, Novenergia cannot initiate proceedings before Spanish courts under the investment protection provisions of this treaty or, even if it had offered an equivalent opportunity for compensation, under Spanish substantive law. Setting aside or invalidating the Award would therefore involve a serious and unequivocal violation of Novenergia's fundamental right to judicial review.

## 4. THE PARTIES' STATEMENT OF THE CASE

### 4.1 Spain

*4.1.1 Regarding grounds for challenge and invalidity (A)–(F)*

The ECT is a multilateral treaty in the energy field. The EU is a party to the treaty. Provisions in international treaties form an integral part of EU law. As the EU is a contracting party to the treaty, this treaty forms part of EU law. When the provisions of the treaty are applied between EU Member States, they must be interpreted so that they are fully compatible with EU law and the basic principles on which EU law rests, *e.g.*, the principle of the autonomy of EU law and the primacy of EU law. An interpretation in

conformity with EU law implies that article 26 of the ECT does not contain any offer of arbitration from Spain in relation to investors from other EU Member States.

Article 26 must further be interpreted in the light of its historical, legal and institutional background, which is reflected in other provisions of the treaty. The purpose of the ECT was to create an international framework for cooperation in the energy field between the European Communities on the one hand and Russia, CIS countries and countries of Central and Eastern Europe on the other. It was never intended that these provisions would be applied between EU Member States. The expansion of the EU, however, meant that a large number of investment treaties also ended up regulating intra-EU relations, and their dispute resolution mechanisms were thus also in conflict with mandatory EU provisions. The European Commission drew attention to this conflict as early as 2007. Since 2008, the European Commission has intervened in a large number of arbitrations.

Pursuant to Article 1.2 of the ECT, a contracting party means "a state or Regional Economic Integration Organization which has agreed to be bound by this Treaty and for which the Treaty is in force." According to Article 1.3, a Regional Economic Integration Organization means "an organization constituted by states to which they have transferred competence over certain matters a number of which are governed by this Treaty, including the authority to take decisions binding on them in respect of those matters." The EU and its Member States constitute a Regional Economic Integration Organization. According to article 36.7, the EU votes in the areas that fall within the EU's competence, and individual Member States vote in the areas that fall within the respective Member State's own competence. It thus appears that the competence is shared. In connection with the accession to the ECT, the EU has declared that the Member States have surrendered all or part of their decision-making rights regarding matters regulated in the treaty and that this construction has been accepted by the treaty. The statement makes it clear that the EU did not intend the ECT to form the basis of intra-EU investment disputes. The statement assumes that Article 26 of the ECT has no effect between EU Member States.

Investment protection and in particular investments in the energy field strike at the very core of the EU's internal market. If the EU and its Member States could agree on a separate

and conflicting regulatory system for investment protection, to be applied mutually, this would conflict with Article 3.2 of the TFEU. An application of Article 26 in intra-EU investment disputes is contrary to the Member States' commitment to the EU.

An arbitration tribunal does not constitute a court within the meaning of Article 267 of TFEU and cannot refer questions to the CJEU.

The question of whether or not a dispute is arbitrable is determined not only by whether the substantive issues are arbitrable, but also by whether the dispute itself is arbitrable. It is clear from the *Achmea* judgment that the present dispute is not arbitrable.

The SAA largely mirrors the provisions of the New York Convention and the UNCITRAL Rules (the Model Law). Among other things, it has been stated in the preparatory work of the SAA that the provisions of the Model Law must be taken into account in each sub-question. The definition of arbitrable disputes in the New York Convention and the Model Law is that the dispute is "capable of settlement by arbitration." This definition reflects how arbitrability is to be understood, namely "In this legislative matter, arbitrability is reserved for disputes that can be submitted before an arbitration tribunal either in advance or after they have arisen". The question is thus not whether the substantive issues are arbitrable, but whether the dispute itself is arbitrable, which this dispute is not according to the *Achmea* judgment.

There is no arbitration agreement. Nevertheless, the Tribunal announced the Award. In decision C (2017) 7384 of November 10, 2017, the European Commission ruled that intra-EU investment disputes must not occur and that such disputes are in conflict with EU law. Thus, such disputes are also incompatible with the Swedish legal system. The Commission's decision forms part of EU law and must be applied and given full effect in Sweden. The decision cannot be reviewed by any instance other than the European courts, with the CJEU as the highest instance. The decision is thus binding for an arbitration tribunal. The European Commission's position has been confirmed by the CJEU in *Achmea*.

If the arbitration agreement between Spain and Novenergia were to be considered valid, the Award is still not compatible with the Swedish legal system, because the Tribunal's award

of damages in itself constitutes state aid. This is clear from, among other things, the European Commission's settled practice.

Spain's regulations of the electricity market are measures that have constituted state aid in accordance with article 107.1 of the TFEU. Damages according to the Award constitute state aid which in itself is contrary to EU law. Issues regarding state aid fall within the exclusive competence of the European Commission. The Tribunal has thus not had the authority to rule on these issues in the Arbitration. This follows from Article 108 of the TFEU and is explicitly stated in the European Commission's decision 7384.

In addition, recognition and enforcement of the Award would entail the payment of damages and in itself constitute state aid, in accordance with article 107.1 of the TFEU. The European Commission's statements in this regard have subsequently been confirmed by the CJEU.

The Tribunal's assessments regarding the damages did not constitute wrong assessments – the Tribunal rather exceeded its mandate or in any case committed an error in the course of the proceedings.

*4.1.2 Regarding the question of whether the European Convention constitutes an obstacle to setting aside or invalidating the Award*

The Charter of Fundamental Rights of the European Union (2016/C 202/02), the EU Charter, has the same content as Article 6 of the European Convention. There is a presumption that EU law respects the provisions of the European Convention.

In case the principle of proportionality would be relevant to consider, this is something that the CJEU itself would have emphasized in the reasoning of the *Achmea* judgment. In the judgment, however, the CJEU has not expressed in any respect that the principle of proportionality is of importance when interpreting the compatibility of investment protection agreements with EU law. There is thus no room for national courts to re-examine the CJEU's judgment in turn and to balance its effects. Such an application would be contrary to the fundamental principles of EU law and undermine the autonomy of EU law.

According to Article 6.3 of the TEU, the fundamental rights as guaranteed by the European Convention are included in EU law as general principles. The provisions in the EU Charter

that correspond to provisions in the European Convention shall have the same meaning and scope as in the European Convention (article 52.3 of the EU Charter). The CJEU considers the practice of the European Court of Human Rights when interpreting EU law.

The European Court of Human Rights has established that the protection of human rights within the EU should be considered equivalent to the protection according to the European Convention and that therefore there is a presumption that EU law respects the European Convention. The presumption can be broken if, in the individual case, there are circumstances which mean that the protection of the European Convention rights is manifestly deficient.

The principle of the primacy of EU law implies that Swedish courts and authorities are bound by the CJEU's interpretation of EU law. A Swedish court can depart from what follows from the CJEU's interpretation of an EU provision only if the application in the individual case would otherwise constitute a serious and unequivocal violation of the European Convention. Setting aside or invalidating the Award does not imply any such serious and unequivocal violation of Novenergia's rights.

Article 26 of the ECT prescribes several possible alternatives for dispute resolution, for instance a claim in a national court. Consequently, Novenergia has had the opportunity to have its claim for damages against Spain under the treaty tried in a Spanish court, in accordance with Article 6.1 of the European Convention. If Novenergia were to file a lawsuit in a Spanish court, the claim would not be time-barred either.

**4.2 Novenergia**

*4.2.1 Regarding grounds for challenge and invalidity (A)–(F)*

By acceding to the ECT, all parties have assumed obligations and acquired rights vis-à-vis other contracting parties under international law. The failure of a contracting party to fulfil its obligations under the treaty thus constitutes a breach of the obligations under international law that the contracting party has undertaken towards the other contracting parties. The fact that the treaty also constitutes an EU legal act and is part of the EU's legal

system does not mean that the treaty ceases to be an international treaty. The treaty exists both as a treaty of international law and as an act of EU law.

The provisions of the Vienna Convention regarding how a treaty is entered, interpreted, amended or terminated must be taken into account in questions about the interpretation or validity of a treaty. The preliminary works of a treaty are things that can be taken into account in the interpretation.

The ECT has its origins in the European Energy Charter. The European Commission welcomed the initiative for the Charter, which would apply both between EU Member States and in relation to third countries. The EU's institutions, including the European Commission, also played an active role in the negotiation of the treaty. It is based on the political positions taken in the European Energy Charter, as stated in the preamble to the treaty.

During the pre-negotiation of the ECT, the European Commission proposed that a so-called "disconnection clause" would be introduced in the treaty. According to the proposal, the clause would limit the applicability of the treaty in such a way that the treaty would only be applied between EU Member States in the absence of an applicable EU provision. The negotiating parties agreed not to introduce a "disconnection clause." In some other respects, the treaty contains provisions that expressly limit the scope of the treaty.

The ECT aims to achieve an energy community including all contracting parties, as opposed to a network of bilateral relations. This was underlined during the negotiation of the treaty. At this time, the European Commission emphasized that the purpose of the treaty was also to facilitate trade and investment in the energy field within the EU.

Article 16 deals with the relationship between the Treaty and other legal instruments. If two or more contracting parties have entered into an earlier or later international treaty, according to the article, the treaty that is most favorable to the investor shall be applied. So when the ECT is assessed to be more favorable to the investor than the other treaty, the treaty takes priority.

Disputes under the ECT must, according to Article 26.6, be settled with the application of the treaty and international law. EU law is not part of international law in the sense referenced in the provision. Therefore EU law does not constitute applicable substantive law under the treaty.

In recent times, EU's institutions have tried to change the content of bilateral investment treaties and the ECT. As a result of *Achmea*, a large number of EU Member States signed two declarations in 2019, in which they undertook to terminate all bilateral investment treaties concluded between them and other EU Member States. In 2020, Member States subsequently entered into an agreement on the termination of bilateral investment treaties. Corresponding declarations have not been signed with respect to the dispute resolution provision in the ECT following the CJEU's judgment in *Komstroy*. However, in October 2022 the European Commission proposed that the parties to the ECT should enter into an agreement on the interpretation of the treaty according to the provision in Article 31.3.a of the Vienna Convention on the Law of Treaties. The proposal means that the parties concluding the treaty must agree that the ECT shall not apply, and has never been applicable, in intra-EU relations. Even the EU's institutions are aware that international law measures need to be taken in order to change the content of the ECT. No such measures have yet been taken.

In the Arbitration, Spain argued that Novenergia was not to be considered an investor from another contracting party in the sense of the ECT, as the entire EU constitutes an area for the application of Article 26. Thus Spain's objection in the Arbitration concerned the interpretation of various concepts in the treaty (i.e., challenge ground A). However, in the Arbitration Spain did not object that the offer in Article 26 ECT should be considered invalid (i.e., challenge ground B).

In the Award, the Tribunal restated Spain's jurisdictional objection as it had been presented in Spain's submissions in the Arbitration. The Tribunal also examined Spain's objection in the light of how Spain had formulated it.

The Tribunal performed a customary treaty interpretation in accordance with the rules of the Vienna Convention and found that by its wording, Article 26 is applicable to disputes between contracting parties and investors from other contracting parties and that an investor

from Luxembourg is such an investor in relation to Spain. An interpretation according to the rules of the Vienna Convention further led the Tribunal conclude that the treaty does not contain a "disconnection clause" that exempts intra-EU disputes from the ECT's scope of application.

The Tribunal also explained that the assessment of its competence must be made exclusively on the basis of the provisions of the ECT, and that the Tribunal did not apply EU law.

Calculation of damages

The starting point for Novenergia's calculation of the arbitration damages claim was that Novenergia would be put in the same situation through the compensation as if Spain had not breached its obligations under the ECT. For this calculation, Novenergia appointed an expert who quantified Novenergia's damage as a result of all disputed legislative measures. On the basis of the calculation, Novenergia demanded compensation for damages from Spain, which was based on the fact that all the legislative measures subject to review constituted violations of the ECT. That claim amounted to EUR 61.3 million.

After the final arbitration hearing, the Tribunal asked the Parties to quantify the economic impact of each individual legislative measure that was subject to review in the Arbitration. In accordance with the Tribunal's instructions, Novenergia presented its calculation of the effects of the various legislative measures.

Novenergia's calculation showed that the total impact in the time before Act 9/2013, i.e. the law that finally abolished Spain's guarantees to producers of energy from renewable sources, amounted to EUR 8 million. Regarding the consequence in the time after the law, Novenergia had explained in the Arbitration that the various laws that preceded Act 9/2013 became part of it when it was introduced. This meant that the laws that preceded Act 9/2013 had certain cost consequences for Novenergia even after its introduction. Novenergia calculated the damage in the time after Act 9/2013 to be EUR 53.3 million. This is also equal to the

difference between the total demanded damages of EUR 61.3 million and the EUR 8 million that referred to damages in the time before the law.

Spain argued that in the event that the legislation that preceded Act 9/2013 was not considered to constitute a violation of the ECT, the damages would be further reduced in the time after the introduction of the law. Spain claimed that the damages would be reduced by at least EUR 14 million in the event that Decree 15/2012 was not considered to constitute a breach of the ECT. Regarding other legislative measures, Spain did not indicate any corresponding amounts.

The Tribunal found that through the introduction of Act 9/2013, Spain, violated its obligations under the ECT. The Tribunal further found that the damages suffered by Novenergia in the time before the introduction of Act 9/2013 should be deducted from the damages, and this because it was only through the introduction of Act 9/2013 that Spain breached its obligations under the ECT. Against this background, the Tribunal explained how the financial consequences of the various legislative measures that preceded Act 9/2013 were to be quantified. The Tribunal calculated the damages in the same way as Novenergia did. Thus the Tribunal's damages calculation took into account that the laws introduced before Act 9/2013 did not constitute independent violations of ECT.

*4.2.2 Regarding the question of whether the European Convention or the principle of proportionality constitutes an obstacle to setting aside or invalidating the Award*

A binding and effective arbitration agreement was established between Spain and Novenergia when Novenergia accepted Spain's offer in Article 26 ECT by way of Novenergia's request for arbitration. Relying on this offer, there was no reason for Novenergia to commence litigation against Spain.

If Novenergia were not able to rely on the offer of arbitration submitted by Spain, the only theoretical possibility for Novenergia to have its substantive rights under the ECT tried would be to bring an action in a Spanish court under Article 26(2)(a) ECT. Such an action would have to be brought according to the Spanish Act 29/1998. According to Article 31.1

of that law, Novenergia could challenge the Law 9/2013, the introduction of which caused Novenergia damage, through a review procedure. Novenergia could also claim compensation for damages in accordance with article 31.2 of Act 29/1998. However, such a requirement would be subject to the limitations that follow from Spanish law, which in itself means that a trial according to the Spanish law would not be an alternative that is equivalent to an international arbitration according to the ECT. However, there is no other procedure in which Novenergia could have its rights under the ECT tried in a Spanish court. A hypothetical claim according to Act 29/1998 is also time-barred according to Article 46.1 of this act. This is because Novenergia would have had to initiate such an action no later than two months from the law being challenged, i.e. Act 9/2013, was published in July 2013. Novenergia thus had to start the procedure by September of the same year.

Act 40/2015, which Spain cites, only took effect in October 2016. The law is therefore not applicable at the time of Novenergia's damage. This law is also not applicable to a claim based on the substantive protection provisions of the ECT.

Nor can Novenergia bring an action for damages based on Spanish substantive law. Law 30/1992 does indeed contain substantive provisions on the Spanish state's liability for damages, but even a claim according to Article 142.5 of this law would be time-barred. The time limit for filing a claim under this law is one year from the damaging event or the time when the damage occurred. For Novenergia's part, the damaging event occurred through the introduction of Act 9/2013, which came into force in July 2013. Novenergia's damage also occurred at the same time as it was introduced. The time limit for making a claim according to this law expired in July 2014.

## 5. THE OPINION OF THE COMMISSION AND THE INVESTIGATION IN GENERAL

The European Commission (the "Commission") has – with the support of Article 29 of Council Regulation (EU) 2015/1589 of July 13, 2015, laying down detailed rules for the application of Article 108 of the Treaty on the Functioning of the European Union – on its own initiative submitted a written opinion to the Court of Appeal. In the opinion, the

Commission essentially states the following. The Award involves an obvious disregard of the basic principles of the legal system, in this case the EU legislation on state aid. The infringement consists, firstly, in that the Tribunal did not apply Articles 107 and 108 of the TFEU to determine whether the original aid scheme constituted illegal state aid. If the Tribunal had done so, it would have been able to establish that the aid scheme constituted illegal state aid, which would have meant that the Tribunal would not have been able to establish that there had been a violation of legitimate expectations. Secondly, the Tribunal overruled the Commission's state aid decision, despite the fact that a decision adopted on the basis of Article 108.3 of the TFEU forms part of the EU legal system and must be followed by the arbitration tribunals. These two breaches, individually, mean that the Award must be declared invalid.

The parties have submitted extensive written evidence.

## 6. GROUNDS FOR THE DECISION

### 6.1 Disposition and procedure of examination

Spain has requested that the Award be set aside or invalidated and invoked two alternative grounds in support of its complaint and three alternative grounds in support of the claim that the Award should be declared invalid. Alternatively, Spain has requested that the Award be set aside in part.

Spain has declared itself to have no opinion on the order in which the Court of Appeal examines the alternative claims and grounds and has also not requested that the Court of Appeal, in the event of upholding one of Spain's first-instance claims on any ground, should also examine the other grounds.

Novenergia, however, argues that the Court of Appeal should try the entire case, i.e. all claims and pleas, even if Spain were to succeed in any of its claims. Novenergia has also expressed its views on the order in which the Court of Appeal should hear the claims and grounds.

The Court of Appeal notes that the invalidity rules and the challenge rules in Section 33 and Section 34 respectively of the Arbitration Act (1999:116) (SAA) serve different protection interests. While the challenge rules aim exclusively to protect the Parties' interests, the invalidity rules aim to protect a public or third-party interest. The invalidity rules must be taken into account by the court even without a claim by a party. (See, for instance, Prop. 1998/99:35 pp. 140 and 231.) According to the Court of Appeal, in this case it is appropriate to first examine whether the Award is invalid on any basis.

As regards the alternative invalidity grounds, it should first be assessed whether the dispute is arbitrable (cf. NJA 2015 p. 438 p. 12). The Court of Appeal begins by reviewing whether the CJEU's rulings in the judgments on March 6, *Achmea*, C-284/16, EU:C:2018:158; on September 2, 2021, *Komstroy*, C-741/19, EU:C:2021:655 and on October 26, 2021, PL Holdings, C-109/20, EU:C:2021:875 mean that the dispute between Spain and Novenergia is not arbitrable, *i.e.*, part of Spain's invalidity ground (C).

## 6.2 The question of whether the dispute is arbitrable

### 6.2.1 Introduction

According to Spain, it was not possible to settle the dispute by arbitration, because the arbitration clause in Article 26 of the ECT, in Spain's view, infringes on the allocation of powers established by the EU treaties and thus also on the autonomy of the EU legal system.

For its part, Novenergia has stated that the issues that the Tribunal had to consider in this case relate to damages due to violations of the ECT, which in their entirety must be deemed to have been arbitrable and possible to hear in an arbitration.

Both parties have raised arguments regarding the significance of the CJEU's rulings in *Achmea*, *Komstroy* and *PL Holdings*.

*6.2.2 Legal starting points*

<u>Sections 33 and 1 of the SAA</u>

According to Section 33, Paragraph 1, Item 1 of the SAA, an arbitration award is invalid if it involves the determination of an issue which, in accordance with Swedish law, may not be decided by arbitrators.

Which issues that may be decided by arbitrators is primarily stated in Section 1 of the SAA. According to the first paragraph of the section, disputes concerning matters in respect of which the parties may reach a settlement by agreement, may be referred to arbitrators for resolution. This gives the parties a great deal of freedom to decide on the arbitration agreement themselves. (See a. prop. p. 48 f. and 231.)

The term arbitrability refers to disputes that may be submitted to arbitrators either in advance or after they have arisen. A dispute designated as non-arbitrable cannot be submitted to arbitrators at all. As stated, the arbitration area is primarily determined by whether the dispute is dispositive or not. There are, however, certain dispositive disputes which are expressly excluded by law from the arbitrable area, e.g. certain labor disputes. (See. a. prop. p. 48 f. and 231). Peremptory procedural obstacles also mean that the disputed issue is not considered arbitrable (*see also* Lindskog, Skiljeförfarande, En kommentar, third ed., 2020, the comment to section 33, section 4.1.1).

The aforementioned must be distinguished from such cases where arbitration agreements are not accepted for future disputes, *see e.g.* Section 6 of the SAA regarding consumer disputes. If an arbitration award is then announced, there are grounds for challenge under Section 34, Paragraph 1, Item 1 of the SAA. When a ban on arbitration agreements applies both in advance and after the dispute arose, the matter therefore is not arbitrable and the arbitral award is invalid pursuant to Section 33, Paragraph 1, Item 1. (See a. prop. p. 49 and 231).

<u>The CJEU's decisions</u>

As previously mentioned, in its three rulings *Achmea*, *Komstroy* and *PL Holdings*, the CJEU ruled on arbitration agreements in international investment treaties, which have been entered into by two or more EU Member States, and the compatibility of the treaties with EU law.

In *Achmea*, the issue concerned an arbitration agreement in a bilateral investment treaty between Slovakia and the Netherlands. By application of the arbitration agreement, a Dutch insurance company had requested arbitration against Slovakia. The arbitration took place in Germany. Since the arbitration award was challenged in a German court, the German court requested a preliminary ruling from the CJEU (*Achmea*, para. 23).

The CJEU noted that, according to its settled case law, an international treaty may not infringe on the allocation of powers established by the EU treaties and thus also not on the autonomy of the EU legal system, the observance of which is ensured by the CJEU (*Achmea*, para. 32 and citations therein).

Referring to the fact that the preliminary ruling procedure forms the core of the EU judicial system, the CJEU found that the arbitration tribunal could interpret and apply EU law, but that the arbitration tribunal did not constitute a court within the meaning of Article 267 of the TFEU who could request a preliminary ruling, and that the competent German court may only perform a limited review (*Achmea*, para. 37–53).

In conclusion, the CJEU found that, by entering into a bilateral treaty, the Member States in question established a mechanism for resolving disputes between an investor and a Member State which may mean that these disputes are settled in a way that does not ensure the full effect of EU law. The CJEU determined that the relevant arbitration agreement in the treaty was not compatible with the principle of sincere cooperation and thus undermined the autonomy of EU law (*Achmea*, para. 56–59).

In *Komstroy*, the CJEU made statements on, *inter alia* by referring to its statements in Achmea, the arbitration clause in Article 26(2)(c) ECT. Pursuant to the arbitration clause, a

Ukrainian distributor had commenced arbitration against Moldova. The arbitration took place in France. Since the award was challenged in the French court, the French court requested a preliminary ruling from the CJEU. The issues concerned, *inter alia,* Article 26(1) of the ECT but not explicitly whether Article 26(2)(c) was applicable between EU Member States (Komstroy, para. 20).

The CJEU began by stating that a legal act decided by one of the EU institutions is part of the EU legal system and that the CJEU was competent to issue preliminary rulings and to interpret the ECT (see *Komstroy*, para. 23 and 27).

Furthermore, the CJEU reiterated that an international treaty, according to CJEU's settled case law, may not interfere with the allocation of powers fixed by the EU treaties and thus neither on the autonomy of the EU legal system. The CJEU also stated that since the ECT is an act of EU law, such an arbitral tribunal referred to in Article 26(6) has to interpret and even apply EU law. (See *Komstroy*, para. 42, 49, and 50).

The CJEU then examined, with reference to its statements in *Achmea*, whether the arbitral tribunal in question formed part of the court system in France, and whether an arbitral award from such an arbitral tribunal was subject to review by a court capable of ensuring that EU law is fully respected and possibly request a preliminary ruling from the CJEU (see *Komstroy*, para 51–60 with references made therein to *Achmea*). These questions were answered in the negative.

Against this background, the CJEU stated, even though the questions asked were not aimed at Article 26(2)(c) of the ECT, that the provision should be interpreted so that it is not applicable to disputes between a Member State and an investor from another Member State regarding an investment made by the latter in the former Member State (*Komstroy*, para. 66).

The CJEU's ruling in *PL Holdings* involved an investment treaty between Belgium and Luxembourg on the one hand and Poland on the other.

The arbitration took place in Sweden and therefore Swedish law was applicable to the proceedings. The question for the CJEU, posed by the Swedish Supreme Court, did not concern the compatibility of the arbitration agreement with EU law, but whether Articles 267 and 344 of the TFEU should be interpreted to constitute an obstacle to a national legislation which allows a Member State to enter an ad hoc arbitration agreement with an investor from another Member State that makes it possible to continue arbitration proceedings initiated on the basis of an arbitration clause whose content is identical to that agreement, where that clause is contained in an international agreement concluded between those two Member States and is invalid on the ground that it is contrary to those articles (see *PL Holdings*, para. 37). The CJEU answered that question in the affirmative.

PL Holdings requested that the court limit the judgment's temporal effects, so that it would not affect the arbitration commenced in good faith on the basis of the ad hoc arbitration agreement and concluded before the delivery of that judgment (see *PL Holdings*, para. 57).

The CJEU noted that the interpretation of an EU provision that the CJEU undertakes, entails that the meaning and scope of the provision in question is clarified, as it is to be interpreted and applied or should have been interpreted and applied from when it took effect. The CJEU then concluded that limiting the judgment's temporal effects would in fact limit the effects of the CJEU's interpretation of the Member State's obligations under the EU treaties, in particular under Article 4.3 of the TFEU as well as Articles 267 and 344 of the TFEU, as interpreted in *Achmea*, and rejected the request that the ruling be limited in time (see *PL Holdings*, para. 58, 65, 66, and 69).

*6.2.3 The Court of Appeal's assessment*

In order to assess the question of whether the current dispute was arbitrable, it is first necessary to determine what conclusions can be drawn from the aforementioned decisions by the CJEU.

In *Achmea*, the CJEU examined a dispute settlement clause in a bilateral investment treaty, while the court in *Komstroy* assessed an equivalent clause, Article 26 of the ECT. As stated above, the CJEU in *Komstroy* reiterated its position in *Achmea* that, according to the settled

case law of the Court, an international treaty may not infringe on the allocation of powers established by the EU treaties and thus on the autonomy of the EU legal system. The CJEU stated that the ECT itself is an act of EU law and that an arbitration tribunal referenced in Article 26.6 of the Treaty must interpret and apply EU law. After examining the ECT's dispute settlement procedure, the CJEU found that through Article 26.3. a) of the ECT, the Member States agreed to exclude disputes that may concern the application or interpretation of EU law from the jurisdiction of its own courts and thus from the system of legal remedies that the Member States are obligated to establish under Article 19.1 of the TEU in areas covered by EU law. It was against this background that the CJEU ruled that Article 26.2. c) does not apply to disputes between a Member State and an investor from another Member State. (See *Komstroy*, para. 42–66.)

The Court of Appeal concludes that the reasons provided by the CJEU as a basis for its assessment are of a general nature and concludes that they do not leave room for any other conclusion when, as in this case, Swedish law is applicable to the proceedings. The fact that the statement regarding Article 26.2. c) was not made in response to a direct question to the court does not mean that the statement lacks indicative significance. The general nature of the statement has also been confirmed by the CJEU in Opinion 1/20 of June 16, 2022, on a request from Belgium for an opinion on the compatibility of the draft modernization of the ECT with the treaties, EU:C:2022:485, para. 47. In addition, the CJEU's ruling in *Komstroy* has not been limited in time. This means that the ECT must be interpreted according to the ruling in *Komstroy* as of the time it took effect (cf. *PL Holdings*, para. 58). The above means that an arbitration agreement between the parties could never have been created with Article 26 of the ECT as a basis.

In this context, it can also be emphasized that, in line with what the CJEU stated in *PL Holdings*, it would also not have been possible for the parties to remedy the invalidity of the arbitration clause afterwards. The CJEU justified this decision, among other things on the fact that the question of an arbitration entity's jurisdiction cannot depend on how the parties

in the dispute act (cf. *PL Holdings*, para. 51–56). From *PL Holdings* it also follows that arbitration clauses that are based on international investment treaties between Member States are contrary to some of the most fundamental principles of EU law in the EU treaties, such as the principles of mutual trust between Member States, sincere cooperation and the autonomy of EU law (see e.g. *PL Holdings*, para. 46 with reference to *Achmea*).

The CJEU's positions thus mean that Spain and Novenergia, neither in advance nor in retrospect, could have agreed that the issues in question should be resolved through arbitration. What the CJEU expressed in its rulings means that there are both pre-binding and post-binding impediments to an examination of the current dispute in an arbitration (cf. Lindskog, op. cit., the commentary to § 1, Section 4.1.9). Thus, a mandatory procedural impediment existed.

As provided above, according to Section 33, Paragraph 1, Item 1 of the SAA, the lack of arbitrability must be derived from Swedish law for an award to be considered invalid. The principle of the primacy of EU law and the requirement for effective impact means, in the Court of Appeal's view, that the impediment set up by the CJEU is comparable to an impediment according to Swedish law in the sense referenced in Section 33, Paragraph 1, Item 1 of the SAA.

The Court of Appeal's position means that it is possible to invalidate the Award under Section 33, Paragraph 1, Item 1 of the SAA. The Court of Appeal therefore concludes that it is not necessary to examine the other grounds for challenge or invalidity. However, it must be determined whether the ECHR from November 4, 1950, or the EU legal principle of proportionality in this case, as argued by Novenergia, still cause impediments to invalidating the Award.

**6.3 The question of whether an invalidation would be contrary to the European Convention on Human Rights or to the principle of proportionality?**

*6.3.1 Introduction*

Novenergia has argued, among other things, that a repeal or annulment on the basis of the CJEU's rulings in *Achmea* and *Komstroy* would involve the application of a retroactive amendment of the content of the ECT contrary to international law. According to Novenergia, setting aside or invalidating the Award would, for this reason, amount to a serious and unequivocal violation of the ECHR. Furthermore, Novenergia has stated that a declaration of invalidity would be contrary to the right to judicial review under Article 6 of the ECHR and to the protection of property according to Article 1 of the first additional protocol to the ECHR, as well as contrary to the principle of proportionality under EU law.

Spain has denied that setting aside the Award would constitute a violation of Novenergia's rights under the ECHR. Spain has argued that there have been no such violations as referenced therein and that the protection under the ECHR and the Additional Protocol is not absolute. In the event that there is a question of an infringement of the rights under the ECHR, according to Spain it is legal and proportionate. Spain has further denied that the proportionality principle in EU law would constitute an obstacle to invalidate the Award.

*6.3.2 Legal starting points*

The ECHR is incorporated into Swedish law and applies as law in Sweden. Article 6 of the ECHR contains provisions on the right to a fair trial. These provisions state, among other things, that everyone is entitled to a fair and public hearing within a reasonable time and before an independent and impartial court, established by law.

From the first additional protocol to the ECHR, it appears that every natural or legal person shall have the right to respect for their property and that no one may be deprived of their

property except in the public interest and under the conditions specified in law and in the general principles of international law.

The fundamental rights as they are guaranteed under the ECHR are included in EU law as general principles (see Article 6.3 of the TEU). The provisions of the Charter of Fundamental Rights of the European Union (EU Charter), which correspond to provisions in the ECHR, shall have the same meaning and scope as in the ECHR. No provision in the EU charter may be interpreted in such a way that it restricts or infringes on the human rights and fundamental freedoms recognized in the ECHR (Articles 52.3 and 53 of the EU charter).

Based on a ruling by the European Court of Human Rights (Grand Chamber) in 2005, i.e. before the introduction of the provisions now reported, it appears that the protection of human rights within the EU must be considered equivalent to the protection according to the Convention and that therefore there is a presumption that Union law respects the ECHR. The presumption can be rebutted if, in the individual case, there are circumstances which render the protection of ECHR rights manifestly deficient. (See *Case of Bosphorus Hava Yolları Turizm ve Ticaret Anonim Şirketi v. Ireland*, no. 45036/98, judgment June 30, 2005, p. 165 with references). It follows from a later ruling by the European Court of Human Rights that the presumption is affected by whether or not the CJEU has commented on the compatibility between the current EU legislation and the ECHR (see *Case of Michaud v. France*, no. 12323/11, judgment December 6, 2012, p. 114 and 115).

The principle of proportionality is a general legal principle which, among other things, is part of EU law and means that the EU's measures in content and form must not exceed what is necessary to achieve the goals in the treaties (see Articles 5.1 and 5.4 of the TEU).

The principle of the primacy of EU law means that Swedish courts and authorities are prevented from interpreting a provision that has been decided at EU level in a way that changes its content or effect and that they are bound by the CJEU's interpretation of EU law. At the same time, Sweden has an obligation under international law and a responsibility to ensure that the rights according to the ECHR are not violated in individual cases (see NJA 2014 p. 79 p. 15).

A Swedish court may depart from what follows from the CJEU's interpretation of an EU provision only if the application in the individual case would otherwise constitute a serious and unequivocal violation of the ECHR. The actual scope for such a deviation is thus extremely limited (see NJA 2014 p. 79 p. 17).

### 6.3.3 The Court of Appeal's assessment

In *Komstroy*, as stated above, the CJEU has clearly interpreted EU law and stated the compatibility between, above all, on the one hand Articles 267 and 344 TFEU and, on the other hand, Article 26.2. c) of the ECT. This ruling is part of a uniform practice development (see Section 6.2.2).

Through the statements made by the court in *PL Holdings*, it is clear that the CJEU anticipated, and even assumed, that the arbitration in question there could not be upheld (*PL Holdings*, p. 55). The consequences of the CJEU's positions were thus clear to the court. In its ruling, the CJEU then expressly stated that individual rights under EU law were something that the court systems of the Member States had to ensure, in this case the Polish court system where appropriate in cooperation with the CJEU within the scope of its jurisdiction (*PL Holdings*, p. 68). There is no reason to assume that the court anticipated any other outcome regarding the arbitration awards issued in connection with disputes within the framework of the ECT.

In these circumstances, the Court of Appeal starts from the presumption that the CJEU's interpretation regarding the ECT is compatible with the ECHR (cf. NJA 2014 p. 79 p. 16). However, it should be noted that Sweden also has an obligation under international law and a responsibility to ensure that the rights according to the ECHR are not violated in individual cases (see NJA 2014 p. 79 p. 15).

Both the alleged violation of the right to protection of property and the alleged violation of the right to judicial review are based on the claim that in the event the Award is set aside, Novenergia has no alternative possibility to have a claim for damages against Spain tried in court. As noted, Spain has denied that Novenergia would lack an opportunity to have a claim tried in Spanish court.

The investigation presented by Novenergia are aimed at certain substantive and procedural provisions in Spanish law, for instance regarding time barring. The investigation provides some support for the fact that a claim under the ECT, on the basis of these provisions, is now time-barred. Against Spain's objection, however, it has not been shown that Novenergia, in the event of a claim for damages against Spain, would be denied judicial review. Under such circumstances, it has not been shown that an invalidation would have the effect claimed by Novenergia and that Novenergia's rights according to the ECHR with its First Additional Protocol would be violated or would be disproportionate in relation to the EU interests. The Court of Appeal then finds no reason to further address the issue of proportionality or whether an invalidation of the Award in itself could have amounted to a violation of the right to judicial review or the protection of property.

### 6.4 Summary of conclusion and assessment

The Court of Appeal has found that it is clear, through the practice of the CJEU, that disputes originating in the ECT may not be excluded from the national courts of the Member States and that Article 26.2. c) of the ECT therefore does not apply to disputes between a Member State and an investor from another Member State concerning an investment made by the latter investor in the former Member State.

Furthermore, the Court of Appeal has determined that what the CJEU expressed implies that the parties in this case could not, neither in advance nor in retrospect, agree that the disputed issues should be resolved through arbitration. Since the impediments to arbitration set up by the CJEU must be equated with impediments in Swedish law, the Court of Appeal has found that the Award included examination of a matter which, under Swedish law, could not be decided by arbitrators. Thus the conditions exist to invalidate the Award under Section 33, Paragraph 1, Item 1 of the SAA.

Lastly, the Court of Appeal has determined that it has not been shown that a declaration of invalidity in this case could result in such consequences for the right to judicial review and the protection of property as claimed by Novenergia. Against that background, the Court of Appeal has found no reason to further address the issue of proportionality or whether an

invalidation of the Award could in itself have involved a violation of these rights.

Together, the determinations by the Court of Appeal support Spain's claim being upheld in such a way that the Award shall be declared invalid.

### 6.5 Legal costs

In accordance with Chapter 18, Section 1, of the Code of Judicial Procedure, Novenergia, , as the losing party, shall compensate Spain for its legal costs.

Spain has demanded compensation in a total amount of EUR 971,380.75. Of the cost demand, EUR 937,500 is attorney's fees and EUR 33,880.75 is expenses. VAT is included in the demand for attorney's fees and certain costs (translation, copying, compilation of evidence folders, delivery and taxi). Spain has argued that the Kingdom has no right to deduct value added tax and thus that the tax constitutes a cost to Spain.

Novenergia has requested that the court determine whether the value added tax constitutes a reimbursable cost for Spain, and whether the demand for attorney's fees was reasonable to safeguard Spain's right. In particular, Novenergia has noted that Spain did not comply with the decisions made by the Court of Appeal, for instance in the matter of obtaining preliminary rulings, and repeated requests for renewed examination by the Court of Appeal.

The Court of Appeal finds no reason to question the claim that Spain is not subject to VAT in Sweden and therefore has no ability to deduct VAT. Thus the value added tax constitutes a cost for Spain for which Spain is entitled to compensation. Furthermore, the Court of Appeal notes that the case was extensive and fundamentally important for Spain. It has been going on for a long time and generated a large number of submissions and extensive correspondence. The development of case law in the CJEU also seems to have led to some additional work. Even though the Court of Appeal notes that the exchange of letters in part was quite arbitrary, the Court of Appeal concludes both that the work of the attorneys was reasonably necessary

and that the claimed compensation is reasonable. Spain must therefore be awarded compensation for legal costs in accordance with its claim.

### 6.6 The question of whether the judgment may be appealed, etc.

The Court of Appeal's view is that the case contains questions where it is important for the administration of the law that an appeal be heard by the Supreme Court. The Court of Appeal therefore allows the judgment to be appealed (Section 43, Paragraph 2, SAA).

There are reasons, pending the judgment becoming final, to leave the Court of Appeal's decision of May 17, 2018, regarding the inhibition of the Award to in place.

**HOW TO APPEAL,** see appendix A

Appeal no later than January 10, 2023

The decision was delivered by the judges at the Court of Appeal Ulrika Beergrehn, Annika Malm, Judge-Rapporteur, and Eva Edwardsson.