# EXHIBIT 85

# LIONBRIDGE

STATE OF NEW YORK  )
                   )
                   )        ss
COUNTY OF NEW YORK )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Swedish into English of the attached Supreme Court Judgment, dated December 14, 2022.

_____

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me
this _9th_ day of _January_ , 20 _23_

_____

# SUPREME COURT

## JUDGMENT

Given in Stockholm on December 14, 2022

**Case Number**

T 1569-19

**PARTIES**

**Plaintive and Counterpart**

Republiken Polen

Ministerstwo Finansów

ul. Swietokryska 12

00-916 Warszawa

Polen

Legal representatives: Attorneys Martin Wallin och Julia Tavaststjerna and André Mossberg

Legal Firm Wallin & Partners AB

Blasieholm Road 3

111 48 Stockholm

Legal Representative: Attorney Anna-Maria Tamminen

Law Firm Hannes Snellman Advokatbyrå AB

Box 7801

103 96 Stockholm

Document ID 242782

| SUPREME COURT | Postal | Telephone 08-561 666 00 | Office Hours |
|---|---|---|---|
| Riddarhustorget 8 | Address 2066 | Fax – | 08:00 - 12:00 |
| | 103 12 Stockholm | E-mail: hogsta.domstolen@dom.se | 13:15 - 16:00 |
| | | www.hogstadomstolen.se | |

**Plaintive and Counterpart**

PL Holdings S.á.r.l.

Law Firm Mannheimer Swartling Advokatbyrå AB

Box 2235

403 14 Gothenburg


Legal Representatives: Attorneys Robin Oldenstam och David Sandberg and

Mattias Arnesson.

Same address.


Legal Representatives: Attorney Jacob Rosell Svensson

Lawfirm Mannheimer Swartling Advokatbyrå AB

Box 4291

203 14 Malmö

**MATTER**

Nullity regarding arbitration awards given on June 28, 2017 and September 28, 2017 in the case number V 2014/163 of the Stockholm Chamber of Commerce.


**DECISION SUBJECT OF APPEAL**

Svea Court of Appeal judgments 2019-02-22 in the case T 12033-17 and T 8538-17.


_____


Court of Appeal Judgment                                    See <u>attachment</u>

**JUDGMENT**

The Supreme Court changes the decision of the Court of Appeal in the main case and declares the special arbitration award from June 28, 2017 as invalid as well as the final arbitration award

from September 28, 2017 in the Stockholm Chamber of Commerce Arbitration Institute's case number V 2014/163.

The Supreme Court also changes the Court of Appeal's decision regarding the legal costs and exonerates the Republic of Poland from the obligation to compensate PL Holdings S.á.r.l. for legal costs in the Court of Appeal as it obliges PL Holdings to reimburse Poland for its legal costs in the Court of Appeal the sums of  EUR 750,170.80, GBP 53,000, PLN 41,909.11 and SEK 379,881, of which EUR 750,170.80 are attorney's fees, as well as interest according to paragraph 6 of the Interest Act from February 22, 2019.

The Supreme Court obliges PL Holdings to pay compensation to Poland for legal costs hereby the amounts of EUR 633,703.66 and PLN 701,019.69, of which EUR 458,744.50 are attorney's fees, as well as interest according to paragraph 6 of the Interest Act from the day of this judgment.

The Supreme Court rejects PL Holding's appeal and dismisses all other motions from all the parties.

## MOTIONS MADE TO THE SUPREME COURT

The Republic of Poland has motioned that the Supreme Court:

- First, annul the special arbitral award from June 28, 2017 and the final arbitral award from September 28, 2017,
- Second, revoke the arbitration awards,
- In any event, repeal the clause B of the special arbitration award.

Poland has also motioned that the Supreme Court, through an amendment to point 1 of the Court of Appeal's judgment, reject PL Holdings S.á.r.l.'s claim that arbitration arose as a result of a new arbitration agreement between the parties and that the Arbitral Tribunal was competent to hear the dispute on any basis other than Article 9 of the investment agreement.

In addition, Poland has requested compensation for legal costs in the Court of Appeal and to be exempted from the obligation to reimburse PL Holdings' legal costs at that instance.

PL Holdings has motioned for the amendment to the paragraph 2 of the Court of Appeal's judgment such as that paragraph 64 B of the final arbitration award is not repealed.

PL Holdings has also sought full approval of its claim for the compensation for legal costs incurred in the Court of Appeal.

The parties have opposed each other's motions for amendments and have requested compensation for legal costs in the Supreme Court.

Since the European Court of Justice announced a preliminary ruling in the case in October 2021 (see p 26), PL Holdings has motioned that the Supreme Court order Poland to submit an extract from the Polish Financial authority's meeting minutes from 2014 and a letter from 2015 sent between two officials at the same institution.

PL Holdings has raised the question of whether the Supreme Court should collect another preliminary ruling from the European Court of Justice.

Poland has opposed PL Holdings' claims.

For its part, Poland has motioned that certain information and documents invoked by PL Holdings be rejected, including a document drawn up by PL Holdings' former representative Cezary Wiśniewski. If the latter document is to be considered an expert opinion, Poland has requested that Cezary Wiśniewski be heard orally.

PL Holdings has opposed Poland's claims.

## JUDGMENT REASONING

Background to the dispute

1.      In May 1987, the Kingdom of Belgium and the Grand Duchy of Luxembourg, on the one hand, and the People's Republic of Poland, on the other, entered into an agreement on the mutual promotion and protection of investments (the Investment Agreement).

2.      PL Holdings, which is a company registered in Luxembourg, acquired during the years 2010-2013 shares in two Polish banks which were merged in 2013.
PL Holdings came to own approximately 99 percent of the shares in the bank.

3.      Shortly after the merger, Komisja Nadzoru Finansowego (KNF), which is a financial authority in Poland, decided to suspend PL Holding's voting rights for the shares in the bank and determined that these should be forcibly sold. PL Holdings subsequently sold the shares.

4.      PL Holdings subsequently commenced arbitration proceedings against Poland at Stockholm Chamber of Commerce's Arbitration Institute and invoked an arbitration clause in the investment agreement to support the jurisdiction of the arbitration tribunal (see p. 9). The Arbitral Tribunal gave a special arbitral award on June 28, 2017 and a final arbitral award on September 28 of the same year.

### What concerns the case

5.      The case concerns the annulment action and indictment of the two arbitration awards. The arbitration was initiated with the support of an arbitration clause in a so-called EU internal investment agreement between Poland and, among others, Luxembourg (see p. 1).

6.      A question in the Supreme Court has been the importance of Union Law in the trial of this case. It has mainly dealt with whether the principles that the EU Court of Justice has established in Achmea, C-284/16, EU:C:2018:158, not only mean that such an arbitration clause

is inoperative but also prevent an investor and a Member State from, through their actions in the proceedings, enter into an arbitration agreement ad hoc, for a particular dispute.

7.      Since the Supreme Court requested a preliminary ruling, the European Court of Justice in its judgment in the PL Holdings case, C-109/20, EU:C:2021:875, concluded that Articles 267 and 344 of the Treaty on the Functioning of the European Union (TFEU) should be interpreted in such way that they constitute an impediment for national legislation to allow a Member State to enter into an ad hoc arbitration agreement with an investor from another Member State which enables the continuation of an arbitration proceeding initiated on the basis of such an inoperative arbitration clause referred to in Achmea.

8.      The preliminary ruling in this case raises the issue of whether the arbitration awards should be declared invalid and void or be repealed under the Act (1999:116) on arbitration (the Arbitration Act).

**The Arbitration Clause at hand**

9.      Article 9 of the investment agreement contains the following rules on dispute resolution:

1. a) Disputes between one of the Contracting Parties and an investor of the other Contracting Party shall be subject to a written notification accompanied by a detailed memorandum sent by said investor to the relevant Contracting Party.

b) Within the meaning of this Article, the term "disputes" refers the disputes with regard to the expropriation, nationalisation, or any other measures similarly affecting the investments, including the transfer of an investment to public ownership, placing it under public supervision, as well as any other deprivation or restriction of rights *in rem* by sovereign measures that might lead to consequences similar to those of expropriation.

c) Said disputes shall, as much as possible, be settled amicably between the relevant parties.

2. If the dispute could not be so settled within six months from the date of the written notification specified in Paragraph 1, it shall be submitted, at the choice of the investor, to arbitration before one of the bodies indicated below:

a) the Arbitration Institute of the Stockholm Chamber of Commerce;

[...]

5. The arbitration body shall make its award on the basis of:

- the national law of the Contracting Party that is a party to the dispute, in the territory of which the investment is located, including the principles of settling legal disputes;

- the provisions of this Treaty;

- the terms of any special agreements concerning the entity that has made the investment;

- the generally accepted rules and principles of international law.

6. The arbitration awards shall be final and binding on the parties to the dispute. Each Contracting Party shall take steps to execute the awards in accordance with its national law.

10.      Disputes under the investment agreement that must be tried by an arbitration tribunal must therefore be settled by applying the law of the country where one of the parties has its seat and where the investments were made. The decisions of the arbitration board shall be final.

**Arbitration between PL Holdings and Poland**

11.      In the arbitration proceedings, PL Holdings stated that Poland, through KNF's actions, had breached the investment agreement and as a consequence caused the company damage. PL Holdings claimed damages from Poland.

12.     In its counterclaim, Poland objected that PL Holdings was not to be considered as an investor according to the definition of the investment agreement and that the arbitral tribunal was therefore not competent to decide the dispute. In a submission six months later, Poland also objected to the validity of the arbitration agreement, citing that the arbitration clause in the investment agreement was against EU law. PL Holdings requested that this objection be dismissed as it was done out of time.

13.     In the special arbitration award in June 2017, the arbitral tribunal ruled on Poland's objection and then concluded that the tribunal was competent to hear the dispute. In the same arbitration award, the arbitration panel determined that Poland had violated the investment agreement through expropriation in the form of limitation of voting rights and the decision on the forced sale of PL Holding's shareholding in the Polish bank, and that the company was therefore entitled to damages. In the final arbitration ruling from September of the same year, Poland was obliged to pay PL Holdings 653,639,384 zlotys (at the time approximately 150 million euros) plus certain interest and to reimburse the company's costs in the proceedings.

**Case in the Court of Appeal**

*The parties' actions*

14.     In 2017, Poland brought an action in the Court of Appeal against PL Holdings regarding both the special and the final arbitral award. Poland motioned that both arbitral awards be declared invalid or repealed.

15.      Poland claimed, as far as is now relevant, that the arbitration clause, that was the basis of the arbitration tribunal's jurisdiction, was contrary to Union Law and therefore inoperative. The arbitral awards should hence be annulled, either as a result of the fact that they referred to such a matter which cannot be decided by arbitrators (Section 33 first paragraph 1 of the Arbitration Procedures Act) or, because the arbitration awards had been given on the basis of such a provision which is in clear conflict with the foundations of the legal order in Sweden (Section 33 first paragraph 2).

16.     Poland further argued that there was no valid arbitration agreement between PL Holdings and Poland and that the arbitration awards should in any case be repealed in accordance with Section 34, first paragraph of the Arbitration Act. Nor could a new valid arbitration agreement between the parties arise on other grounds, e.g. by how Poland acted in the process after PL Holdings invoked arbitration.

17.     PL Holdings contested that there were grounds to annul or repeal the arbitration awards. PL Holdings argued that the conclusions in Achmea were significantly more limited in scope than Poland argued. According to PL Holdings, Achmea did not prevent a Member State and an investor from entering into a new arbitration agreement after the commencement of the arbitration proceedings. Through Poland's actions in the process, a valid arbitration agreement had been entered into. The validity of this agreement could not be challenged by Poland due to the preclusion rule in Section 34, second paragraph of the Arbitration Act.

*Court of Appeal Judgment*

18.     The Court of Appeal has rejected Poland's claim in the parts that are now of interest. The Court of Appeal has stated that the principles established by the European Court of Justice in Achmea are in and of themselves applicable to the dispute between PL Holdings and Poland and that this means that Article 9 of the investment agreement is not valid in the relationship between the Member States. According to the Court of Appeal, this has resulted also in the nullity of the offer made by Poland to investors that disputes arising from the investment agreement would be settled according to the arbitration agreement. According to the Court of Appeal, however, the nullity has not prevented a Member State and an investor from entering into an arbitration agreement in an individual case, which Poland and PL Holdings did through their actions in the arbitration proceedings.

19. Against this background, the Court of Appeal has found that there were no grounds to annul the arbitrations awards based on Section 33 first paragraph 1 or 2 of the Arbitration Act. Nor, according to the Court of Appeal, has there been grounds for repealing the arbitration awards

with the support of section 34 first paragraph 1, because the objection that the arbitration agreement is inoperative had been submitted too late (cf. to Section 34, second paragraph).

**Internal EU investment agreements in Union Law**

20.     The European Court of Justice has ruled that Articles 267 and 344 TFEU constitute impediments to a provision in an internal EU investment agreement that allows investors in one Member State to initiate proceedings against the other Member State at an arbitration tribunal in the event of an investment dispute (see Achmea p. 60).

21.     By entering into such an arbitration agreement, Member States agree to exclude disputes which may concern the application or interpretation of Union Law from the jurisdiction of their own courts and thus from the system of legal resources which they must have under the second subparagraph of Article 19.1 of the Treaty on European Union (TEU). Such an agreement may entail that these disputes are decided in a way that does not ensure the full effect of Union Law. (Cf. Achmea p. 55 and 56; and Komstroy, C-741/19, EU:C:2021:655 p. 45, 59 and 60.)

22.     Such arbitration clauses are suited to undermine both the principle of mutual trust between Member States as well as the preservation of the distinctive character of Union Law, which is ensured by the preliminary ruling procedure under Article 267 TFEU. The clause is thus not compatible with the principle of loyal cooperation in Article 4.3 first paragraph of FEU and undermines the autonomy of Union Law, which, among others, is confirmed in Article 344 TFEU (cf. Achmea p. 58 and 59).

23.     The National Court has an obligation to check whether an arbitration clause in an investment agreement entered into between Member States can be considered to be in conflict with the aforementioned fundamental provisions and principles.

**Preliminary ruling in this case**

*Request for preliminary ruling*

24.     In this case, the Supreme Court has relegated a preliminary question to clarify whether Articles 267 and 344 TFEU are to be interpreted in such a way that they constitute impediments for a national legislation to allow a Member State to enter into an ad hoc arbitration agreement with an investor from another Member State which enables the continuation of an arbitration proceeding, when said proceeding was initiated on the grounds of an arbitration clause with the same content as a clause, which is contained in an International Agreement entered into between these two Member States and which is inoperative because it contravenes said Agreement's Articles.

25.     The matter of interpretation is based on the premise that Poland has conclusively accepted PL Holdings' offer of arbitration in accordance with Swedish law by not contesting the jurisdiction of the arbitration tribunal in time and thus entered into a separate ad hoc arbitration agreement with the company with the same content as the arbitration clause in Article 9 of the investment agreement.

*Judgment of the European Court of Justice*

26.     The European Court of Justice has by the judgment given on October 26, 2021 in PL Holdings, answered the question posed by the Supreme Court as follows:

> Articles 267 and 344 TFEU are to be interpreted in such a way that they constitute impediments for a national legislation to allow a Member State to enter into an ad hoc arbitration agreement with an investor from another Member State which enables the continuation of an arbitration proceeding, when said proceeding was initiated on the grounds of an arbitration clause with the same content as a clause, which is contained in an International Agreement entered into between these two Member States and which is inoperative because it contravenes said Agreement's Articles.

27.     According to the European Court of Justice, there has been no reason to limit the legal effects of the preliminary ruling in time. The protection of PL Holding's individual rights under Union Law is something that the Polish court system must ensure, if appropriate, in cooperation with the European Court of Justice. (See PL Holdings p. 57–69.)

28.     The current arbitration has been of a nature which has brought with it the possibility for the arbitration tribunal to interpret or apply Union Law. The dispute has been decided by an arbitration tribunal which is not to be equated with a court, which is why the tribunal was not able to request a preliminary ruling.

29.     A conclusion of the preliminary ruling is that an arbitration agreement entered between a Member State and an investor cannot be equated with such commercial arbitration where a more limited judicial review may be sufficient. Instead, in order for such an arbitration agreement to be compatible with EU law, it is required that the national order allows such a detailed judicial review of the arbitration awards that the full effect of Union Law can be guaranteed (cf. Komstroy p. 58–60).

30.     The examination which, according to Swedish law, can be carried out within the framework of a claim against the arbitrations is not sufficient. This means that the arbitration in question is of such a nature that, according to the jurisprudence of the European Court of Justice, it contravenes fundamental principles of Union Law and therefore cannot be accepted.

31.     It was therefore not possible to continue the arbitration on the basis of a conclusive entrance into an arbitration agreement with the same content as that which was deemed inoperative in Achmea. The arbitral tribunal was thus not competent to decide the investment dispute between PL Holdings and Poland.

32.      It is thus irrelevant whether or not Poland should be considered to have accepted that the dispute was to be resolved through arbitration on the basis of an ad hoc arbitration agreement that had the same content as Article 9.

## Bindingness of the European Court of Justice's preliminary ruling

*Admissibility of PL Holding's argument that the preliminary ruling should not be followed*

33.    After the European Court of Justice's preliminary ruling, PL Holdings has claimed that Union Law, as interpreted by the European Court of Justice, is contrary to central Union Law principles and that a repeal or annulment of the arbitration awards would be contrary to, among other things, article 19.2 FEU and article 47 of the Charter of the European Union on Fundamental Rights as well as articles 6 and 13 of the European Convention and article 1 of the first additional protocol to the convention. PL Holdings has pointed to, among others, recent developments in Poland and KNF's actions during the expropriation process mean that upholding Poland's claim in this case would deprive PL Holdings of its right to judicial review and effective legal remedy, as well as infringing the company's property rights. PL Holdings has also maintained that allowing the action would be disproportionate.

34.     In support of this, PL Holdings has relied on certain material and, among other things, a legal statement. To this, Poland has submitted a motion for dismissal (see under motions). The company has explained that it does not invoke any new circumstances in the Supreme Court. As it concerns the new material, the company is considered to have had a valid excuse for not presenting it sooner. Nor is what Poland has otherwise stated a basis for rejection. Poland's motion to dismiss must therefore be rejected.

*Legal starting points regarding bindingness*

35.    The principle of the primacy of Union Law over National Law means that Swedish courts and authorities are prevented from interpreting a provision that has been decided at Union level in a way that changes its content or effect. This means that the national court cannot deviate from the European Court of Justice's interpretation even if it were to make a different assessment of

the legal situation, at least as long as the interpretation is within the area where decision-making rights have been transferred (cf Chapter 10, section 6, Form of Government).

36.     However, Member States also have an obligation under international law and an individual responsibility to ensure that the rights of individuals are not violated in a particular case, according to the European Convention in the event of a conflict with an EU legal regulation.

37.     From the European Court of Justice's jurisprudence, it appears that the national courts have to proceed from a presumption that the Union regulations that have been interpreted in a preliminary ruling are compatible with the European Convention. However, if a serious and well-founded objection that the protection of a convention right has been clearly deficient, and if this situation cannot be remedied by Union Law, a Member State cannot refrain from examining this objection solely for the reason that Union Law is applicable (see e.g. *Bosphorus Hava Yolları Turizm ve Ticaret Anonim Şirketi v. Ireland* [GC], number 45036/98, Section 165, ECHR 2005-VI and *Avotiņš v. Latvia* [GC], number 17502/07, Section 116, May 23, 2016).

38.     This means that a Swedish court can deviate from what follows from the European Court of Justice's interpretation of a Union provision only if the application in the particular case would constitute a serious and unequivocal violation of an individual's rights according to the European Convention (cf. "BillerudKorsnäs" NJA 2014 p. 79).

*The European Court of Justice's interpretation shall not be waived in this case*

39.     A repeal or annulment of the arbitral awards does not in itself mean that the parties are deprived of the right to review in court or the right to a fair trial.

40.     Actions have been taken at the level of Union Law to strengthen the rights of investors to judicial review. It has also been emphasized that it is up to Member States to secure and strengthen investors' access to national legal procedures.

41.     To the extent that the Polish legal system suffers from such deficiencies in terms of legal certainty as claimed by PL Holdings, are the necessary measures according to the European Court of Justice a task for the Polish judiciary entity, where appropriate, in cooperation with the European Court of Justice (cf. PL Holdings p. 68).

42.     What PL Holdings has stated in this part does not constitute – regardless of the content claimed by PL Holdings in the documents covered by its publication submission – reasons to deviate from the European Court of Justice's interpretation of Union Law.

43.     Based on the reported conclusions, it cannot be assumed that the documents covered by PL Holding's edition request would have any importance as evidence. The motion for the submission of an edition must therefore be dismissed.

44.     Through the obtained preliminary ruling, the matters that caused doubts about the interpretation of Union Law have been resolved. No other additional matter that makes it necessary to receive a new preliminary ruling has come to light. The motion for obtaining additional preliminary rulings must then be dismissed.

**The review of arbitration awards in internal EU investment disputes under the Arbitration Act**

*Introduction*

45.     In the preliminary ruling PL Holdings, the Court of Justice of the European Union has thus considered that Articles 267 and 344 TFEU constitute an impediment for national legislation to allow a Member State to enter into an ad hoc arbitration agreement with an investor from another Member State which enables the continuation of an arbitration proceeding initiated

on the basis of such an inoperative arbitration clause referred to in Achmea and found in an internal EU investment agreement.

46.　　Whether such arbitration awards must be tried against the rules in Section 33 or 34 of the Arbitration Procedures Act is a matter for the Swedish court.

*Nullity and Repeal of Arbitral Awards under the Arbitration Act*

47.　　Once given, an arbitral award is substantively final and binding and is not open to appeal in the ordinary sense. If there was a formal error in the proceedings or if there is otherwise reason to question whether the proceedings took place in a correct manner, the parties have the opportunity to challenge the judgment by bringing an action to court. A party can then invoke either the grounds for annulment in Section 33, which aim to protect a public interest or the interest of a third party, or the grounds for repeal in Section 34, which considers the protection of the interests of the arbitrary parts.

48.　　An arbitration award is invalid according to Section 33 first paragraph of the Arbitration Act, if among other things, it involves examination of an issue which according to Swedish law may not be decided by arbitrators (lack of arbitrability), or the arbitration award or the manner in which the arbitration award was decided, is clearly incompatible with the foundations of the legal order in Sweden (ordre public). The nullity may be asserted without any time limit and the court must consider the nullity regardless of whether a party has claimed it or not.

49.　　Section 34 paragraph one, enumerates seven points in which such grounds can be invoked by a party in a complaint, of which the first point refers to the nullity of the arbitration agreement. According to the third paragraph, the complaint must be brought within two months. According to the second paragraph, a party also lacks the right to assert the grounds of culpability if the party participated in the proceedings without objecting to the proceedings; such an objection is precluded.

*Complete material examination of Union Law is required in relation to investment disputes*

50.    With regard to internal EU investment disputes, it has now been clarified through the jurisprudence of the European Court of Justice that the approach is that a Member State, by entering into such an arbitration agreement which is the subject of examination in this case, avoids disputes that may concern the application or interpretation of Union Law from the jurisdiction of their own courts. This leaves no possibility of appeal, which the countries must provide according to Article 19.1, second paragraph, FEU. An arbitration procedure may then suggest that these disputes are decided in a way that does not ensure the full effect of Union Law (see Achmea p. 56, Komstroy p. 59 and 60 and PL Holdings p. 45).

51.    As previously mentioned, it must be possible to carry out a material review of arbitration awards granted according to an arbitration clause in an internal EU investment agreement (cf. p. 29 and 30). That examination needs to be more far-reaching than the limited judicial review accepted in commercial arbitration proceedings concerning, for example, the Civil Law effect of Competition Law issues and unfair consumer agreements (cf. e.g. Eco Swiss, C-126/97, EU:C:1999:269 p. 35, 36 and 40 and Mostaza Claro, C-168/05, EU:C:2006:675 p. 34–39, see also "Systembolaget" NJA 2015 p. 438 and "The Norwegian Arbitration" NJA 2018 p. 323). This has been explained by the fact that commercial proceedings have their origin in the common will of the parties, while the proceedings in an investment dispute follow an agreement through which Member States have agreed to have disputes decided by an arbitration tribunal outside the European Union court system, which risks that Union Law is not taken into account in a sufficient manner (cf. Achmea p. 54 and 55 and Komstroy p. 58 and 59).

*Procedural Ordre Public*

52.    By ordre public, a general principle is understood, meaning that a foreign rule of law must be refused application and a foreign ruling refused recognition and enforcement if the

consequences of its application, recognition or enforcement would clearly conflict with the foundations of the Swedish legal order. In the Arbitration Act, this has been expressed through provisions on procedural ordre public which state that an arbitration award is invalid, and that the arbitration award shall not be recognized or enforced if the manner in which it was decided is clearly incompatible with the foundations of the legal order in Sweden (see Section 33 first paragraph 2 and Section 55 paragraph 2).

53.      In Swedish law, asserted ordre public rules are generally given a narrow application. The wording of the rules in the Wedge Procedure Act suggests that they only cover highly objectionable cases. The nullity therefore only affects arbitration awards where elementary procedural legal principles have been disregarded. (See prop. 1998/99:35 pages 140 and 232).

54.      The principle of ordre public is intended to constitute a protection against the, according to the Swedish understanding, negative consequences of foreign rules and rulings having an impact here. But it also intends to protect more important principles in the Swedish legal system. In this context, it can be declared that Union Law is part of the Swedish legal system.

55.      The preliminary rulings handed down by the European Court of Justice regarding internal EU investment disputes, concern above all the question of whether Member States have the possibility to exclude disputes concerning authorities' application of Union Law from the Union's court system. This can be considered to concern fundamental legal principles of a procedural nature.

56.      The above leads to the nullity that lies on arbitration awards, which directly or indirectly have their grounds in arbitration clauses of a type corresponding to that in Article 9 of this pertaining investment agreement, should be examined against the rules on procedural ordre public in section 33, first paragraph 2 of the Arbitration Act.

57.     It is not sufficient, as argued by PL Holdings, to review arbitration awards relating to internal EU investment disputes against Section 34 of the Arbitration Act and its preclusion rule.

*Assessment of validity in this case by the Supreme Court*

58.     An arbitration proceeding based on the Article 9 of the investment agreement may lead to an arbitration panel deciding disputes that may concern the application or interpretation of Union Law. Such an arbitration clause is thus able to undermine both the principle of mutual trust between Member States and the preservation of the distinctiveness of Union Law, which is ensured by the preliminary ruling procedure under Article 267 TFEU. The clause is thus not compatible with the principle of loyal cooperation in Article 4.3 first paragraph FEU and undermines the autonomy of Union Law, which, among others, is confirmed in Article 344 TFEU. (See Achmea p. 58 and 59 and PL Holdings p. 46 and 54).

59.     An arbitration award that has been given on the basis of such a clause, as is now in question, may be considered to have been entered into in an unlawful manner, as it is incompatible with the fundamental provisions and principles that regulate the legal order in the European Union and consequently also in Sweden.

60.     As a result of what has been stated, an enforcement of the arbitration awards in question here, would be clearly incompatible with the foundations of the legal order in Sweden. The special arbitral award and the final arbitral award shall, as a result, be declared invalid according to Section 33 first paragraph numeral 2.

61.     In light of the foregoing, Poland's first-instance claim must be granted, and PL Holding's appeal must be dismissed.

**Legal costs**

62.      There is no reason to distribute court costs in a different way than according to the main rule in Chapter 18 Section 1 of the Code of Procedure. As a result of the outcome of the case, Poland is entitled to compensation for its legal costs.

63.      The amount claimed by Poland in the Court of Appeal can be considered reasonable.

64.      Regarding the legal costs in the Supreme Court, it is considered that the case has involved complicated issues and involved significant values. In view of this, Poland's request for attorney's fees and expenses for legal opinions and legal advice must also be approved. However, it is not fair that Poland should also be awarded compensation for the work that six civil servants put into the dispute. The request as it concerns that part must therefore be dismissed. Otherwise, Poland's claim for legal costs in the Supreme Court must be granted.

_____

_____      _____      _____

_____      _____

In this decision participated Justices Gudmund Toijer, Svante O. Johansson (referent), Dag Mattsson, Malin Bonthron and Cecilia Renfors.
The rapporteur has been the legal secretary, Cecilia Andgren.