**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
:
NEXTERA ENERGY GLOBAL HOLDINGS          :
B.V. and NEXTERA ENERGY SPAIN           :
HOLDINGS B.V.,                          :
:
                          Petitioners,  :
:          Civil Action No. 19-cv-01618-TSC
              v.                        :
:
KINGDOM OF SPAIN,                       :
:
                          Respondent.   :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**PETITIONERS' REPLY BRIEF IN SUPPORT OF
RENEWED & SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND...................................................................................................3

ARGUMENT ........................................................................................................................7

    A.    Spain's Efforts to Avoid the Explicit Mandate of the ICSID  Convention and Its Implementing Statute are Unavailing...........................................................7

    B.    Even Under Spain's Preferred Analysis, the Award  Would Still be Entitled to the Full Faith and Credit ................................................................10

CONCLUSION.......................................................................................................................21

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*9REN Holding S.À.R.L. v. Kingdom of Spain*,
   No. 19-cv-01871 (TSC), 2023 WL 2016933 (D.D.C. Feb. 15, 2023),
   *aff'd in part, rev'd in part*, 112 F.4th 1088 (D.C. Cir. 2024) ...............................................7

*Alfadda v. Fenn*,
   966 F. Supp. 1317 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 41 (2d Cir. 1998) ...........................14

*Blasket Renewable Investments, LLC v. Kingdom of Spain*,
   665 F. Supp. 3d 1 (D.D.C. 2023), *rev'd*, 112 F.4th 1088 (D.C. Cir. 2024)....................6, 7

*Blasket RenewableInvestments, LLC v. Kingdom of Spain*,
   (RC) No. 23-2701 (RC), 2024 WL 4298808, (D.D.C. Sept. 26, 2024)..................6, 7, 8, 9

*Blinder, Robinson & Co. v. SEC*,
   837 F.2d 1099 (D.C. Cir. 1988) ........................................................................................9

*Bonilla-Santiago v. BLB Privatized Housing, LLC*,
   No. 20-cv-2524 (TSC), 2024 WL 1076699 (D.D.C. Mar. 8, 2024) ................................12

*Carr v. District of Columbia*,
   646 F.2d 599 (D.C. Cir. 1980) ..........................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................................21

*Chevron Corp. v. Ecuador*,
   795 F.3d 200 (D.C. Cir. 2015)........................................................................................15

*Dozier v. Ford Motor Co.*,
   702 F.2d 1189 (D.C. Cir. 1983) ........................................................................................9

*Durfee v. Duke*,
   375 U.S. 106 (1963)..........................................................................................................9

*Koninkrjik Spanje v. AES Solar Energy Coöperatief U.A.*,
   C/13/728512 / HA ZA 23-64,
   ECLI:NL:RBAMS:2025:732 (Rechtbank Amsterdam Feb. 5, 2025) (Neth.) ..................18

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
   731 F.2d 909 (D.C. Cir. 1984) ..................................................................................14, 20

*LLC SPS Stileks v. Republic of Mold.*,
   985 F.3d 871 (D.C. Cir. 2021) ....................................................................14, 15, 17, 19

ii

*Medellín v. Texas*,
    552 U.S. 491 (2008)...................................................................................................17, 18

*Micula v. Government of Rom.*,
    404 F. Supp. 3d 265 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020)....................18

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*,
    863 F.3d 96 (2d Cir. 2017)..........................................................................................3, 10

*NextEra Energy Global Holdings B.V. v. Kingdom of Spain*,
    112 F.4th 1088 (D.C. Cir. 2024)..........................................................................14, 15, 17

*Republic of Moldova v. Komstroy LLC*,
    Case No. C-741/19, ECLI:EU:C:2021:655 (Sept. 2, 2021).................................................5

*Slovak Republic v. Achmea B.V.*,
    Case No. C-284/16, ECLI:EU:C:2018:158 (Mar. 6, 2018) ............................................4, 5

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
    414 F. Supp. 3d 94 (D.D.C. 2019) ...................................................................8, 15, 20, 21

*Tethyan Copper Co. Pty v. Islamic Republic of Pakistan*,
    590 F. Supp. 3d 262 (D.D.C. 2022) ...........................................................................16, 17

*Tidewater Investment SRL v. Bolivarian Republic of Venez.*,
    No. 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) .....................................15

*Underwriters National Assurance Co. v. N.C. Life & Accident & Health Insurance
    Guaranty Ass'n*,
    455 U.S. 691 (1982).........................................................................................................9

*Valores Mundiales, S.L. v. Bolivarian Republic of Venez*,
    87 F.4th 510, 520 (D.C. Cir. 2023) ........................................................................8, 9, 10

**DOCKETED CASES**

*Cube Infrastructure Fund SICAV v. Kingdom of Spain*,
    No. 1:20-cv-01708-LLA, ECF No. 88 (D.D.C. Jan. 27, 2025) ...........................................6

*Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*,
    No. 1:18-cv-01753-LLA-MAU, ECF No. 103 (D.D.C. Jan. 27, 2025).................................6

**STATUTES**

22 U.S.C. § 1650a .........................................................................................................2, 9, 13

22 U.S.C. § 1650a(a).................................................................................................7, 9, 11, 13

U.S. Const. art. VI.............................................................................................................13

NextEra respectfully submits this reply brief in response to Spain's brief in opposition to summary judgment (ECF No. 108, the "Opposition" or "Opp.") and in further support of its:  (i) Renewed Motion for Summary Judgment (ECF No. 96), and (ii) Supplemental Motion (ECF No. 98; with ECF No. 96, the "Renewed Motion").[1]

## PRELIMINARY STATEMENT

As this Court recognized in its February 2023 ruling, "there are not and will not be any merits to brief" in this action to recognize and enforce an ICSID Convention award.  (ECF No. 84 at 28.)  This of course reflects that the pecuniary obligations in the award issued on May 31, 2019 (ECF No. 1-4, the "Award"), as well as the March 18, 2022 decision (ECF No. 59-1) by the ICSID annulment committee (the "Annulment Committee"), are statutorily entitled to full faith and credit. The Award is indisputably authentic, and the relief sought in the present Motion faithfully tracks the relief granted in the Award.

Although that should end the matter, this Court stated that it would receive "merits arguments Spain promise[d]" in its earlier briefing, including specifically Spain's contention "that the award was illegally procured by Petitioners['] false representations."  (ECF No. 84 at 29.) Spain's Opposition, however, contains *none* of the content Spain promised the Court.  Instead, the Opposition merely rehashes yet again the very same jurisdictional arguments Spain has litigated, relitigated, and lost at every turn in the history of this dispute, including before this Court.[2]

---

[1]    Terms defined in NextEra's Renewed Motion have the same meaning here.

[2]    The "Groundhog Day" nature of Spain's recycled arguments is especially apparent in the latest declaration by its expert Professor Hindelang (ECF No. 109, "Hindelang Decl."), who repeats the exact same EU law arguments he presented in his three previous declarations (ECF Nos. 15-6, 25, 62-1) and numerous other fora (*see* Hindelang Decl. ¶¶ 6-9), and resubmits largely the same set of exhibits as before.  Although most of his points are legally irrelevant, the fallacies in his analysis are addressed fully in the accompanying Declaration of Professor George Bermann of Columbia University ("Bermann Decl.").

Although Spain has now repackaged these failed jurisdictional challenges as an argument about the Court's extension of full faith and credit, they remain essentially the same: Spain urges that the ICSID tribunal that issued the Award (the "Tribunal") lacked jurisdiction over the underlying dispute because of European court decisions interpreting European Union ("EU") law.  Spain's prior assertions that NextEra had somehow obtain the Award via false representations, which the Court particularly expected to review here (*see* ECF No. 84 at 23-24), never materialized.

The *amicus curiae* submission (ECF No. 111-1, "EC Br.") of the European Commission ("EC") also rakes over the same old (rejected) arguments, though in a manner that lays bare the EC's radical position—it believes that the dictates of U.S. treaties and federal statutes are hostage to any later decisions by EU courts claiming exclusive authority to interpret relevant areas of law. No consideration is given to the impact of this position on the U.S.'s own obligations under the ICSID Convention and other treaties, to say nothing of the obligations of U.S. courts in applying international law and federal statute.  Amazingly, in ten pages of briefing, the EC does not even mention ICSID.  Apparently for Spain and the EC, comity only runs in the EU's favor.

The authority that binds this Court has not changed since it last encountered these arguments.  The Court is bound by the United States' obligations under the ICSID Convention and its implementing statute, 22 U.S.C. § 1650a.  As a matter of both international and federal law, these mandatory provisions preclude Spain's arguments—particularly after Spain has raised and lost them multiple times in multiple fora.  Moreover, each of these arguments fails on its own terms, as they did when the Court considered them before in addressing subject matter jurisdiction.

The Tribunal has rejected Spain's and the EC's arguments; the Annulment Committee has rejected the same arguments; this Court has rejected them too.  Spain's opportunity to relitigate

these issues has long since run, and the command of treaty and statute at this point is beyond clear. This Court should order summary judgment for NextEra, recognizing and enforcing the Award.

## **FACTUAL BACKGROUND**

Spain concedes that there is no disputed issue of material fact before the Court. (Opp. 14-15 ("[H]ere, there are no factual disputes and the record is complete . . . .").) Summary judgment is therefore appropriate under Rule 56(a). *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 118 (2d Cir. 2017) (confirming that summary judgment is appropriate to enforce ICSID award "[a]fter the complaint is filed and service effected").

In its Opposition, however, Spain seeks to spin the factual narrative of the prior ICSID proceedings so as to suggest that, when NextEra instituted ICSID Convention arbitration in 2014, it somehow should have disbelieved Spain's statement—in Article 26 of the ECT—that Spain consented to ICSID Convention arbitration of ECT disputes, and somehow also had foreknowledge of the later EU law decisions on which Spain now relies. Spain even accuses NextEra of "gamesmanship" for having accepted Spain's offer to arbitrate ECT disputes before ICSID. This is disingenuous, particularly in light of the chronology of events leading up to the Award, and the much later vintage of the EU court decisions creating the new jurisdictional principles that Spain advances now. Spain's version of events only makes sense if one ignores the actual dates of the relevant events in the story.[3]  Indeed, it is no coincidence that Spain has been

---

[3]  In passing, Spain also argues that the adverse measures it took against NextEra somehow were justifiable because of the 2008 "economic slump," and/or professed concerns about "windfall profits" to investors. (Opp. at 4.)  But Spain presented these exact same matters to the Tribunal (*see, e.g.*, Award ¶¶ 486-87), which considered, and rejected, these rationalizations, holding (*inter alia*) that NextEra had been "deprived of the security and certainty" that it had legitimately "expected," based upon explicit "assurances" from Spanish officials "guaranteeing the legal security of investments underway." (*Id.* ¶ 599.)  Spain cannot relitigate these matters now, much less by using secondary material (e.g. a 2011 Guardian newspaper article) that was not even part of the arbitral record.

subject to a large number of ICSID Convention arbitrations based on the same legal measures injuring renewables investors that NextEra challenged here, and that Spain has lost *virtually all of them*. Somehow the jurisdictional arguments that Spain claims always should have been obvious to NextEra were not obvious or convincing to the many arbitral tribunals that have considered these issues.

So, a brief recap of the chronology of events is in order. The treaties that provide the grounds for the relief in the Award and for the parties' arbitration before ICSID—and Spain's participation in those treaties—predate any of the events at issue in this suit by a matter of decades. The ICSID Convention entered into force in 1966; Spain ratified it in 1994 and remains a member state. World Bank, *About ICSID: Member States: Spain*, https://icsid.worldbank.org/about/member-states/database-of-member-states/member-state-details?state=ST127. The Energy Charter Treaty, 2080 U.N.T.S. 100 (1994) (ECF No. 1-6, the "ECT"), which forms the basis of Spain's obligation to NextEra, as recognized in the Award, was finalized in Lisbon and opened for signature in 1994; Spain was among its original signatories; its King and Cortes (Spain's legislature) ratified it in 1997, the instrument of ratification was lodged with the ECT's depositary, and the ECT entered into force as against Spain in 1998. International Energy Charter, *Contracting Parties and Signatories: Spain*, https://www.energychartertreaty.org/treaty/contracting-parties-and-signatories/spain/. Spain's treaty obligations were thus clear long before EU courts purported to create any conflict between those obligations and EU law.

NextEra commenced its arbitration under the ICSID Convention on May 12, 2014. (SMF ¶ 4.) Spain accuses NextEra of "gamesmanship" in doing so, contending that this was an attempt "to avoid binding law in [NextEra's] own country." (Opp. 3.) Yet the earliest decision of the European Court of Justice ("CJEU") on which Spain relies for its jurisdictional arguments, *Slovak*

*Republic v. Achmea B.V.*, Case No. C-284/16, ECLI:EU:C:2018:158 (Mar. 6, 2018), was not decided until more than *four years after* NextEra commenced arbitration.

Nonetheless, the ICSID Tribunal duly analyzed *Achmea* in its Decision on Jurisdiction, Liability and Quantum Principles on March 12, 2019, and granted relief in NextEra's favor on May 31, 2019.  (*See* SMF ¶ 10; ECF No. 1-4, Annex A ¶¶ 332-57; *see also id.* ¶¶ 281-86 (summarizing Spain's position); *id.* ¶¶ 321-24 (summarizing NextEra's position).)[4]  NextEra filed in this Court to recognize and enforce the Award pursuant to the straightforward requirements of federal statute just a few days thereafter, on June 3, 2019.  (*See* ECF No. 1.)

The EC posits that "the notion" underlying the CJEU's decision in *Achmea* predates the decision itself, citing its own prior litigation positions, the passage of time between the adoption of the ECT and later intra-EU arbitration thereunder, and "principles" reflected in other sources of EU law.  (EC Br. 4-5.)  Yet none of these sources have the binding effect of law—and even if they did, Spain signed both the ECT and the ICSID Convention more than a decade before the earliest of them.  *Compare* EC Br. 4 (citing EU decision from 2006), *with About ICSID: Member States: Spain* (reporting entry of ICSID Convention into force in Spain in 1994); *Contracting Parties and Signatories: Spain* (reporting that Spain entered ECT in 1994).  The EU law on which Spain draws support simply did not manifest itself until years into this arbitration.

Another two years passed before the CJEU decided *Republic of Moldova v. Komstroy LLC*, Case No. C-741/19, ECLI:EU:C:2021:655 (Sept. 2, 2021), more directly addressing the EU's position on the ECT's application to intra-EU arbitrations.  By then, this Court had stayed this

---

[4]    During the annulment proceeding, the Annulment Committee permitted Spain to introduce expert evidence on EU law.  *See* Decision on Annulment ¶ 27.  Spain then presented two expert reports by Professor Ricardo Gosalbo Bono of Vrije University, Brussels.  As can be seen from the Annulment Committee's summary, these reports plowed exactly the same ground as Professor Hindelang's reports in the present action.  *See id.* ¶¶ 217, 255.

action pending Spain's annulment proceedings under the ICSID Convention, and the ICSID Annulment Committee was receiving and considering Spain's (and the EC's) submissions on this point. (*See* SMF ¶ 12.) The Annulment Committee duly considered both *Achmea* and *Komstroy* and, on March 18, 2022, rejected Spain's arguments. (*See* SMF ¶ 16; ECF No. 59-1 ¶¶ 228-34, 309-12; *see also id.* ¶¶ 216-21, 299-303 (summarizing Spain's position); *id.* ¶¶ 222-27, 304-08 (summarizing NextEra's position); *id.* ¶¶ 28, 31 (EC made "written submission" on intra-EU issues). Far from acting "opportunistically," therefore, NextEra sought redress for Spain's misconduct through an established treaty system that had stood for decades, and through which Spain has had the opportunity to litigate its position repeatedly.

Spain, meanwhile, continues to seek the best of both worlds. On the one hand, it remains a full party to the ICSID Convention , benefiting from its adjudicatory infrastructure for itself and for Spanish investors abroad. *See About ICSID: Member States: Spain*; *Contracting Parties and Signatories: Spain*. On the other, it attempts to selectively sidestep the application of the same Convention, invoking EU law where its obligations under the treaties would cause it pecuniary loss. (*See, e.g.*, Opp.) The Tribunal and Annulment Committee here are not the only authorities to have rejected that tactic: across the many arbitration matters brought by investors under the ECT for the losses Spain caused them in its 2012–2014 overhaul of its investment regime, arbitral authorities have repeatedly held Spain accountable for those losses and ordered it to pay damages. *See, e.g.*, *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 1:20-cv-01708-LLA, ECF No. 88 (D.D.C. Jan. 27, 2025) (evaluating arbitral award against Spain under ECT); *Infrastructure Services Luxembourg S.A.R.L. v. Kingdom of Spain*, No. 1:18-cv-01753-LLA-MAU, ECF No. 103 (D.D.C. Jan. 27, 2025) (same); *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-2701 (RC), 2024 WL 4298808, (D.D.C. Sept. 26, 2024) ("*Blasket/JGC*") (same); *Blasket Renewable*

*Invs., LLC v. Kingdom of Spain*, 665 F. Supp. 3d 1 (D.D.C. 2023) (same), *rev'd*, 112 F.4th 1088 (D.C. Cir. 2024) ("*Blasket/AES*");[5] *9REN Holding S.À.R.L. v. Kingdom of Spain*, No. 19-cv-01871 (TSC), 2023 WL 2016933 (D.D.C. Feb. 15, 2023) (same), *aff'd in part, rev'd in part*, 112 F.4th 1088 (D.C. Cir. 2024); (ECF No. 105 at 8 (summarizing other pending actions arising out of such awards)).

NextEra thus is far from alone.  It is one of a long line of investors whom Spain's conduct has unfairly injured, and against whom Spain now deploys late-breaking legal developments in a foreign jurisdiction to evade its longstanding treaty obligations to pay.

## ARGUMENT

### A.    Spain's Efforts to Avoid the Explicit Mandate of the ICSID Convention and Its Implementing Statute are Unavailing

Spain's Opposition primarily contends that the Court should refuse to extend the Award full faith and credit.  (Opp. 15-23.)  The Court may dispose of that contention swiftly at the threshold—as it already has in its prior order (*see* ECF No. 84 at 22-23)—because it is foreclosed by the express terms of the ICSID Convention and federal statute.

The ICSID Convention's implementing statute deems an award issued by ICSID to constitute "a right arising under a treaty of the United States," and further mandates that "[t]he pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a).  The D.C. Circuit, along with all courts in this District,

---

[5]    The entity Blasket Renewable Investments, LLC is the assignee of several awards that are the subject of pending proceedings in this District, including, relevantly:  (i) in respect of the award in No. 23-2701 (RC), 2024 WL 4298808 (D.D.C.), it received an assignment from JGC Holdings, Inc.; and (ii) in respect of the award in 21-3249 (RJL) (D.D.C.), it received an assignment from AES Solar Energy Cooperatief, U.A. and Ampere Equity Fund, B.V.  The definitions "*Blasket/JGC*" and "*Blasket/AES*" reflect these assignments.

including this Court in its own prior rulings in this very action, have uniformly and repeatedly affirmed that this extension of full faith and credit gives the Court no authority to reevaluate issues considered and decided by an ICSID tribunal; it must simply enforce an ICSID award as the statute directs. *See Valores Mundiales, S.L. v. Bolivarian Republic of Venez,*, 87 F.4th 510, 520 (D.C. Cir. 2023) (holding that, in the context of full faith and credit review, "Section 1650a prohibits relitigation of issues that have been fully considered, carefully addressed, and decided on the merits in an ICSID action"); *Blasket/JGC*, 2024 WL 4298808, at *8-10 (granting summary judgment enforcing ICSID award against Spain over Spain's jurisdictional challenges to full faith and credit because "Spain had the opportunity to litigate this issue before ICSID but did not do so"); (ECF No. 84 at 23, 28 (holding that the Tribunal's determination that it had jurisdiction in this matter, "as well as the Award itself, is due full faith and credit," and that this determination "requires no merits analysis")).  This is why the Court's review of an ICSID award is limited to a determination that the Court itself exercises jurisdiction, that the award is authentic, and that the Court's order will track the terms of the award, *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019)—and why, in this case, the Court concluded that "the Award must be enforced" after confirming those elements (ECF No. 84 at 22).

Spain seeks to confound that analysis, insisting that the Court may still refuse to extend full faith and credit to the Award "if ICSID arbitrators lack jurisdiction." (Opp. 16.)  Although Spain describes this contention as analogous to the full faith and credit doctrine applicable to other states' judgments, it is precisely contrary to the general rule in that scenario: the Supreme Court has determined that "a judgment is entitled to full faith and credit—***even as to questions of jurisdiction***—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v.*

*Duke*, 375 U.S. 106, 111 (1963) (emphasis added) (holding that federal court must give full faith and credit to state court's determination that it had jurisdiction over subject dispute); *see also Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 707 (1982) ("If the matter was fully considered and finally determined in the [prior] proceedings, the judgment was entitled to full faith and credit . . . ."); *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1195 (D.C. Cir. 1983) (holding that determination by courts in another circuit as to jurisdiction are subject to doctrine of *res judicata* and cannot be reevaluated); *Carr v. District of Columbia*, 646 F.2d 599, 608 (D.C. Cir. 1980) (prior determination of subject matter jurisdiction by D.C. Court of Appeals carried "preclusive effect").  Consistent with this principle, the single case Spain cites in support of its alternative contention actually holds that a litigant has "no persuasive claim to a second try" under full faith and credit principles to prevail on a claim "fully litigated (and lost) in" another forum.  *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988).

The same analysis applies under 22 U.S.C. § 1650a(a) to a decision of an ICSID Convention tribunal.  Several courts in this Circuit, including this Court in this very case, have already considered precisely that argument in the context of Section 1650a, and each has held that a district court *cannot* reexamine jurisdictional arguments that were (or even could have been) raised before ICSID itself.  *See Valores Mundiales*, 87 F.4th at 520 (affirming summary judgment by extending full faith and credit to ICSID award, despite jurisdictional arguments, based on *Durfee* principle); *Blasket/JGC*, 2024 WL 4298808, at *9 (holding that, after Spain had opportunity to present jurisdictional challenges before ICSID and withdrew those arguments, it "'may not' now 'reopen that question in a collateral attack upon an adverse judgment'" pursuant to a principle of "jurisdictional finality" (citations omitted)); (ECF No. 84 at 22-23 (rejecting

Spain's argument that jurisdictional questions preclude extension of full faith and credit)). There is no dispute that Spain raised precisely these arguments before both the Tribunal and the Annulment Committee. Federal statute thus prohibits Spain from relitigating them here.

Undaunted, Spain contends that the Court may sidestep section 1650a(a) because the statute's direction that the Court enforce "pecuniary obligations imposed by" ICSID Convention awards creates a loophole, leaving the Court no duty to extend full faith and credit to "*non-pecuniary* aspect[s]" of such awards. (Opp. 16.) This interpretation would, of course, eviscerate section 1650a's directives entirely, reopening a host of merits issues that courts in this Circuit routinely hold are off-limits simply because the final money award in any arbitral proceeding will inevitably flow from findings of fact and conclusions of law that range beyond the "pecuniary." *See, e.g.*, *Valores Mundiales*, 87 F.4th at 515 (noting that an ICSID Convention tribunal typically produces a "written decision" leading to a dispositive "award," with the latter dictating the pecuniary obligations). This is why, as courts repeatedly hold, the Court's statutory enforcement duty extends to the "pecuniary obligations" in an ICSID Convention award—it does not call for reexamination of any particular "aspect[s]" of the ICSID Tribunal's reasoning, as Spain erroneously suggests *See Valores Mundiales*, 87 F.4th at 520; *Blasket/JGC*, 2024 WL 4298808, at *8-10; (ECF No. 84 at 22-23). Put simply, under Section 1650a, ICSID Convention "[m]ember states' courts are . . . not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award" in any respect. *Mobil Cerro Negro*, 863 F.3d at 102.

There is, in short, no further full faith and credit analysis for the Court to apply here. Federal statute requires it to enter judgment and reject Spain's arguments as a threshold matter.

**B.    Even Under Spain's Preferred Analysis, the Award
        <u>Would Still be Entitled to the Full Faith and Credit</u>**

Were the Court to consider the arguments Spain and the EC advance against the Court's

recognition of the Award—and 22 U.S.C. § 1650a(a) requires the Court *not* to do so—it would find that each argument has or could have already been considered and rejected multiple times in this dispute—by the Tribunal, by the Annulment Committee, and most recently by this Court itself. It bears emphasis that both Spain and the EC have urged these matters directly to these three bodies. Indeed, the EC recognizes that it had already "explained these principles in detail" to the Court before its prior order.  (EC Br. 2.)  The below table summarizes these arguments where they appear in the record.

| | **Spain's Argument** | **Reviewed and Decided by** | **Disposition** |
|---|---|---|---|
| 1 | *Achmea* and *Komstroy* preclude arbitration of ECT disputes by ICSID. (Opps. 19-21; EC Br. 2-5.) | 1. The Tribunal (ECF No. 1-4, Annex A ¶¶ 332-57)[6]<br>2. The Annulment Committee (ECF No. 59-1 ¶¶ 228-34, 309-12)<br>3. This Court (ECF No. 84 at 14-15, 22-23) | 1. Rejected<br>2. Rejected<br>3. Rejected |
| 2 | ICSID arbitrators may not "be the judge of [their] own competence" as regards the effect of the ECT's arbitration agreement.  (Opps. 17-18.) | 1. The Tribunal (*see* ECF No. 1-4, Annex A ¶¶ 183-85)[7]<br>2. The Annulment Committee (*see* ECF No. 59-1 ¶ 54)<br>3. This Court (ECF No. 84 at 12-13, 21-22) | 1. Waived<br>2. Waived<br>3. Rejected |
| 3 | Neither ICSID nor this Court may interpret EU law, which is reserved strictly for the CJEU.  (Opps. 18-19; EC Br. 5-6.) | 1. The Tribunal (*see* ECF No. 1-4, Annex A ¶¶ 345-51)<br>2. The Annulment Committee (*see* ECF No. 59-1 ¶¶ 228-34, 309-12)<br>3. This Court (ECF No. 84 at 21-23) | 1. Rejected<br>2. Rejected<br>3. Rejected |
| 4 | The ECT's own terms prohibit a final disposition inconsistent with EU law. (Opps. 21-22; EC Br. 6-10.) | 1. The Tribunal (ECF No. 1-4, Annex A ¶¶ 345-57, 390)<br>2. The Annulment Committee (ECF No. 59-1 ¶¶ 228-34, 309-12, 323-27)<br>3. This Court (ECF No. 84 at 13) | 1. Rejected<br>2. Rejected<br>3. Rejected |

---

[6]    The Tribunal did not review *Komstroy* because it had not been decided at the time of the Award.  However, *Komstroy* was fully considered by the Annulment Committee.

[7]    Spain affirmatively requested that the Tribunal evaluate its own jurisdiction and did not assert that evaluation as a ground for annulment, thereby waiving Spain's argument regarding the Tribunal's competence-competence before ICSID.

| | **Spain's Argument** | **Reviewed and Decided by** | **Disposition** |
|---|---|---|---|
| 5 | The Award is impermissible as "state aid." (Opp. 22-23.) | 1. The Tribunal (*see* ECF No. 1-4, Annex A ¶¶ 390, 582-601; *see also id.* ¶¶ 510-17, 539 (Spain's position); *id.* ¶¶ 455-64 (NextEra's position))<br>2. The Annulment Committee (ECF No. 59-1 ¶¶ 262-67, 416)<br>3. This Court (ECF No. 84 at 23) | 1. Rejected<br>2. Rejected<br>3. Rejected |
| 6 | This Court may reevaluate the ICSID Tribunal's determination of jurisdiction. (Opp. 16-17.) | This Court (ECF No. 84 at 22-25) | Rejected |
| 7 | The foreign sovereign compulsion doctrine bars this Court's review. (Opp. 24-25.) | This Court (ECF No. 84 at 24) | Rejected |

At a bare minimum, this Court itself has considered and ruled on all of these arguments before in this litigation, and Spain is bound by the Court's rejection of them as the law of the case. *See Bonilla-Santiago v. BLB Privatized Hous., LLC*, No. 20-cv-2524 (TSC), 2024 WL 1076699, at *3 (D.D.C. Mar. 8, 2024) (Chutkan, J.) (granting summary judgment over opponent's repetition of prior arguments based on law of the case doctrine because "the same issue presented a second time in the same case in the same court should lead to the same result" (citation omitted)). To the extent any of these binding determinations requires reexamination at this phase of the litigation, none of Spain's arguments justifies the Court's departure from its earlier rulings or its statutory duty to recognize and enforce the Award.

**(1) *Achmea* and *Komstroy*.** Spain argues that the recent decisions of the CJEU in *Achmea* and *Komstroy* supplant and/or retroactively cancel Spain's prior obligations under the ECT and the ICSID Convention and deprive both ICSID and this Court of jurisdiction over NextEra's claims, eliminating Spain's agreement to arbitrate *ab initio*. (Opp. 19-21; *see* Hindelang Decl. ¶¶ 15-22.) The EC makes the same argument, citing additional EU court decisions to the same effect. (EC Br. 2-5.) This Court has already held that its jurisdiction is unaffected by these decisions, and that Section 1650a(a) gives it no authority to reexamine the Tribunal's determination of its jurisdiction

on this or any other basis.  (ECF No. 84 at 14-15, 22-23; *see* Bermann Decl. ¶ 28.)  That holding resolves the identical contentions of Spain and the EC here.

Indeed, the briefing submitted by Spain and the EC confirm the soundness of the Court's earlier holding: neither of the primary authorities on which Spain and the EC rely binds this Court. Spain and the EC ask the Court to disobey the mandatory requirements of a federal statute, 22 U.S.C. § 1650a, and of a treaty to which the United States is a party, the ICSID Convention, to apply in their place decisions of non-U.S. courts interpreting a foreign body of law that does not apply to the U.S. (*See* Opp. 6-10; EC Br. 2-3.)  Spain further relies on declarations made by non-U.S. signatories to treaties to which the United States is not a party, as well as certain selected decisions of non-U.S. courts regarding the retroactivity of other non-U.S. court decisions.  (*See* Opp. 7-9, 20; Hindelang Decl. ¶¶ 26-45.)  The EC grasps even further, relying on prior litigation positions, policy and "principles" that do not have the force of law even within the EU.  (*See* EC Br. 4-5; *see, e.g.*, Bermann Decl. ¶¶ 34-41.)

Yet *none* of this authority binds a federal court in the United States or alters the terms of 22 U.S.C. § 1650a.  Moreover, the ICSID Convention, in contrast to EU law, binds both the United States *and* Spain as parties.  *See* U.S. Const. art. VI (binding courts to apply treaties as "the supreme Law of the Land" with authority equivalent to U.S. law).  Spain, in fact, was bound by the ICSID Convention as a party long before the CJEU decided *Achmea*.  The EC's later litigation positions do not alter this simple fact.  *See About ICSID: Member States: Spain* (reporting entry of ICSID Convention into force in Spain in 1994).  And federal statute requires the Court to recognize and enforce ICSID awards.  *See* 22 U.S.C. § 1650a(a).  The Court should not countenance an invitation to violate Senate-ratified treaties to which the United States is a signatory, much less statutes implementing them—all for the sake of non-binding foreign laws or

foreign court decisions.  *See, e.g.*, *LLC SPS Stileks v. Republic of Mold.*, 985 F.3d 871, 878 (D.C. Cir. 2021); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984) (holding foreign judicial action not subject to international comity because "the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act"); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1329 (S.D.N.Y. 1997) ("Regardless of the mechanisms utilized by a foreign court to achieve its objectives, a United States court should not be confined to using the foreign court's mechanisms or else forgo achieving its own objectives."), *aff'd*, 159 F.3d 41 (2d Cir. 1998); (Bermann Decl. ¶¶ 12-16, 28-30 (describing damage to international and U.S. law that would follow from prioritizing EU law over treaty obligations)).

(2) **ICSID's Determination of Its Jurisdiction.**  Spain also challenges the clear language of the ICSID Convention providing that "[t]he [ICSID] Tribunal shall be the judge of its own competence" to adjudicate jurisdictional matters.  ICSID Convention Art. 41(1).  Spain claims instead that the question of "whether a valid arbitration agreement exists . . . cannot be delegated to an arbitrator" (Opp. 17-18 (citation omitted); *see* Hindelang Decl. ¶ 35).  In support of this proposition, Spain relies entirely on decisions interpreting arbitration contracts between private parties and governed by the Federal Arbitration Act—none of which discuss ICSID or Section 1650a.  And while Spain emphasizes the principle of "consent" to arbitration, it undeniably *has* consented to arbitrate here, by signing and remaining a party to both the ICSID Convention and the ECT.  *See, e.g.*, ICSID Convention Art. 25(1) ("The jurisdiction of the Centre shall extend to any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to the dispute consent in writing to submit to the Centre."); *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1102-03 (D.C. Cir. 2024) ("[T]he [ECT] itself 'contain[s] the *consent* of the contracting parties to submit

disputes involving foreign investment to direct investor-state arbitration.'" (citation omitted; emphasis in original)).

That consent underlies the Court's prior resolution of exactly this argument, which the D.C. Circuit affirmed on appeal, ruling that "an agreement to arbitrate exists" and that "[t]he assertion that a party lacked a legal basis to enter or invoke an arbitration agreement is not a challenge to the jurisdictional fact of that agreement's existence but rather a challenge to that agreement's arbitrability." (ECF No. 84 at 12-13); *see NextEra*, 112 F.4th at 1103 ("'[W]hether the ECT applies to [a] dispute' is not 'a jurisdictional question.'" (citation omitted)); *Stileks*, 985 F.3d at 878; *Chevron Corp. v. Ecuador*, 795 F.3d 200, 205 (D.C. Cir. 2015).) And Section 1650a, as a matter of law, prohibits the Court from reexamining the Tribunal's determination of its jurisdiction based on that agreement. (*Id.* at 21-22); *see TECO*, 414 F. Supp. 3d at 101 (noting "exceptionally limited" review under Section 1650a); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-1457 (TJK), 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018) (characterizing review under Section 1650a as "perfunctory"). Spain's chance to litigate the issue of jurisdiction was before the Tribunal and Annulment Committee, both of which rejected its argument.

**(3) Interpretation of EU Law.** Spain contends that it is forbidden to "let[] anyone besides EU courts resolve EU-law questions," including the Tribunal, the Annulment Committee, and this Court, in order to avoid "[c]ompeting interpretations of EU law." (Opp. 18-19.) The EC argues likewise. (EC Br. 5-6.) But the Court has already determined that it cannot evaluate EU-law challenges as a matter of either jurisdiction or the merits of the case pursuant to 22 U.S.C. § 1650a(a). (*See, e.g.*, ECF No. 84 at 22-23.) Indeed, the statute requires the Court to *avoid* ruling on such questions, precisely by foreclosing consideration of arguments already decided by ICSID. (*See id.* at 21-22 (examining only the Court's own "subject-matter and personal jurisdiction," the

authenticity of the Award, and the fit of the enforcement order)); *Tethyan Copper Co. Pty v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022) (characterizing this review as "exceptionally limited").

Ironically, despite Spain's categorical pronouncement that "[n]o other court or dispute-resolution forum" besides the CJEU "can interpret EU law" (Opp. 6)—a position shared by "[n]o other jurisdiction on Earth" (Bermann Decl. ¶ 25)—it in fact asks this Court to do just that. Spain argues about the content and requirements of "EU law" (*see* Opp. 1-3, 5-11, 18-19, 22-23, 25), asserts that "EU law thus controls" this dispute (Opp. 19), admonishes the Court that its resolution of this matter should be determined "[u]nder governing EU law" (Opp. 17), asks the Court to "decline to issue an order that would place Spain 'in violation of' EU law" (Opp. 25), and concludes that the Court must apply "binding deference" to EU law (Opp. 19). The EC similarly urges the Court to exercise "[d]eference" to the CJEU in its analysis. (EC Br. 5.) As Judge Pan noted in Spain's oral argument before the D.C. Circuit on appeal, Spain's position is not really that EU law prevents the Court from reaching *any* interpretation of EU law; it is that the Court is prevented from reaching any interpretation *other than in Spain's favor*:

> JUDGE PAN: So you also say that—you say that no tribunal outside the EU can decide an issue of EU law. But you're also asking us to apply EU law, right? So under your reading of *Achmea*, it violates EU law for us to decide this case in your favor. I'm not really following how that—doesn't run afoul of the very principle on which your case rests.
> MS. HARRIS: No, our—our argument is that because EU law governs, you should apply what the European Court of Justice has said and respect that it has—that it has interpreted EU law as governing and it's interpreted EU law clearly. We obviously understand—
> JUDGE PAN: But you just said you want us to apply EU law.
> MS. HARRIS: Yes. And so the argument is not courts can never, like, resolve a dispute involving EU law in any context. The alternative would be, what, Spain could—is supposed to argue, like, EU law never applies. Where Spain is arguing there's no jurisdiction over Spain under the Foreign Sovereign Immunities Act in the first instance. In order to—
> JUDGE PAN: In order to so hold, we would have to apply EU law . . . .

Tr. of Oral Argument at 26:3-24, *NextEra*, No. 23-7031 (Feb. 28, 2024) (attached at Exhibit 6). On its face, then, Spain's argument defeats itself, to say nothing of its inapplicability in this Court's limited review under Section 1650a. (*See* ECF No. 84 at 21-22); *Tethyan Copper*, 590 F. Supp. 3d at 268.

(**4**) **Terms of the ECT.** Spain argues that the ECT, interpreted according to what Spain styles "[g]eneral treaty interpretation principles," should be read to erase its own provisions memorializing Spain's agreement to arbitrate this matter. (Opp. 21-22.) The EC echoes this argument, although—consistent with its other arguments—it suggests the Court exercise this interpretive license pursuant to the terms of the EU treaty to which the United States is not even a party. (EC Br. 6-7; *see id.* at 6-10.) As the Court has recognized, arguments of treaty interpretation merely dress Spain's challenge to the jurisdiction of the Tribunal in different garb: "[w]hether the ECT applies to the dispute and whether the tribunal had jurisdiction under the ECT are different ways of framing the same question." (ECF No. 84 at 13 (quoting *Stileks*, 985 F.3d at 879).) The argument therefore fails for the same reasons as Spain's other jurisdictional arguments: Section 1650a simply precludes this review, and the ECT cannot be read to scuttle its own text. *See, e.g.*, *NextEra*, 112 F.4th at 1102-03 (holding that ECT's lack of distinction between EU and non-EU parties provides a "powerful reason[] to conclude that the standing offer to arbitrate contained in the ECT's arbitration provision extends to EU nationals" and that agreement exists "'for the benefit' of [each] signatory's investors"); (EC Br. 3, 8 (admitting that there are "non-EU signator[ies]" and "non-EU Contracting Parties to the ECT")). Nor do Spain's preferences today, or the "subsequent practice" of some EU member states (EC Br. 10), change the plain requirements of the treaty text. The Court may use "'the postratification understanding' of signatory nations" as an "aid[] to its interpretation" of a treaty, but not as an excuse to alter its clear terms. *Medellín v. Texas*, 552 U.S.

17

491, 507 (2008) (citation omitted).

**(5) "State Aid."**  Spain asserts that it should be excused from any obligation to compensate NextEra for its injury under the ECT because Spain believes performance of the Award would constitute unauthorized "state aid" forbidden by EU law—because, Spain argues, it needs to obtain the EU Commission's approval to pay, which remains outstanding.  (Opp. 22-23; *see* Hindelang Decl. ¶¶ 23, 46-59.)  Spain offers as supplemental authority a Dutch court's decision on this topic, rendered in a non-ICSID case.  (*See* ECF No. 112); *Koninkrjik Spanje v. AES Solar Energy Coöperatief U.A.*, C/13/728512 / HA ZA 23-64, ECLI:NL:RBAMS:2025:732 (Rechtbank Amsterdam Feb. 5, 2025) (Neth.).  As the Court observed when it rejected this precise argument by Spain earlier in this case, this challenge does not affect the full faith and credit the Court owes ICSID's Award by U.S. statute, however Spain chooses to characterize it:

> Insofar as Spain argues that the ICSID tribunal exceeded its own jurisdiction, that argument is foreclosed for the reasons explained in the [Court's discussion of Spain's arguments regarding full faith and credit].  And to the extent that Spain argues that the Award itself violates EU law, that contention 'goes to the merits of the ICSID panel's determination' and must be taken up with the ICSID tribunal itself.

(ECF No. 84 at 23); *see Micula v. Gov't of Rom.*, 404 F. Supp. 3d 265, 285 (D.D.C. 2019) ("The contention that *some portion* of the Award violates EU law goes to the merits of the ICSID panel's determination.  That argument must be taken to the ICSID arbitral panel, and it is not a valid ground on which to reject converting the Award in full to a judgment."), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020).  Indeed, Spain's position that its payment of an arbitral award for its breach of the ECT would qualify as "aid" at all runs contrary to EU law.  (*See* Bermann Decl. ¶¶ 60-64.)

In any event, the practical result of Spain's application of this theory to the Award would be a manifest miscarriage of justice: not challenging the validity of NextEra's entitlement to the relief expressed in the Award, it would nonetheless deny NextEra any means of *collecting* on that

entitlement as a matter of procedure. (*See* Hindelang Decl. ¶ 65 (asserting that Spain's state aid analysis would prevent "the *enforcement* of the Award," not challenging Award itself (emphasis added)).) As with its professed concern about non-EU courts interpreting EU law, Spain's concern that "a 'foreign party'" could be "caught between the jaws of [a] judgment and the operation of laws in foreign countries" appears not to extend to foreign parties with interests adverse to its own. (Opp. 24 (quoting Restatement (Third) of Foreign Relations Law § 441 (1987)).)

**(6) Relitigation of Merits Issues Before This Court.**  Spain argues that the Court may entertain a "collateral[] attack" on the jurisdiction of ICSID—or any other "non-pecuniary aspect[s]" of the Tribunal's rationale Spain wishes—because this proceeding "infringe[s]" on EU "authority." (Opp. 16-17.)  The Court, of course, has already analyzed that argument and held that federal law provides no authority for it to "look beyond the scope of 22 U.S.C. § 1650a(a)" in enforcing the Award. (ECF No. 84 at 22-25.)  The Court correctly identified that "[n]either Spain's current challenges to the merits of the Award, nor any potential future merits challenges, have any bearing on the court's duty to enforce the Award" as directed by statute. (*Id.* at 24.)  That is consistent with the ICSID Convention, which directs that ICSID awards "shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention."  ICSID Convention Art. 53(1).  Binding law quite simply prevents Spain from relitigating any questions on the merits that it raised or could have raised before ICSID.  22 U.S.C. § 1650a(a); *Stileks*, 985 F.3d at 878 ("If an agreement assigns the arbitrability determinations to an arbitrator, 'a court possesses no power to decide the arbitrability issue,' even if it thinks the argument for arbitrability is 'wholly groundless.'" (citation omitted)); (*see* Bermann Decl. ¶ 29 ("This Court simply cannot be expected . . . to breach the obligations that the United States has undertaken by ratifying the ICSID Convention . . . .")).

**(7) Foreign Sovereign Compulsion.**  Finally, Spain repeats its prior argument that "the foreign sovereign compulsion doctrine" requires the Court not to enforce the Award, relying on "principles of comity."  (Opp. 24-25.)  The Court rejected this argument when Spain raised it before because the D.C. Circuit has not adopted this doctrine, and Spain provides no reason the Court should revisit that holding now.  (ECF No. 84 at 24.)  To the extent principles of comity bear on the Court's decision, they favor its straightforward adherence to the United States' mandatory international obligations under the ICSID Convention.  *See* ICSID Convention Art. 53(1).  Spain's argument, which stands in direct opposition to Section 1650a, amounts to the "conten[tion] that comity compels us to recognize a decision by a *foreign* government [with the effect] that *this court* shall not apply its own laws," which the D.C. Circuit has held does not justify the Court's "capitulat[ion]" on grounds of comity.  *Laker Airways*, 731 F.2d at 939.

*        *        *

In sum, Spain advances no challenge to the jurisdiction of the Tribunal or of this Court that it has not previously litigated, and in many instances relitigated, to a final determination that binds the Court.  Spain provides no reason to revisit those conclusions under the posture of a challenge to the full faith and credit the Court owes the Award.  Rather, that analysis remains as straightforward as the Court has already recognized: the Court is bound by the Tribunal's assessment of its jurisdiction, prevented from inquiring into the merits of this case, and directed to enter judgment on the Award because there is no dispute as to its authenticity or to the fact that the relief requested in this case tracks the terms of the Award.  *See TECO*, 414 F. Supp. 3d at 101 ("The Court must ensure that it has subject-matter and personal jurisdiction . . . must ensure that the award is authentic . . . and must ensure that its enforcement order is consistent with the award."

20

(citations omitted)).[8]

## **CONCLUSION**

U.S. treaty and federal statute require this Court to recognize and enforce the Award. Spain's jurisdictional arguments—whether or not the Court chooses to cast them as "merits" arguments as Spain appears to prefer—are not entitled to reevaluation here under the U.S. laws that bind this Court. Because there is no dispute of material fact, the Court should enter summary judgment for NextEra.

---

[8] Spain also attempts to manufacture a factual dispute out of the interest calculation. (Opp. 25-27.) There is no basis for dispute on this issue, but in any event the Court need not wade into this matter. Under Section 1650a, once jurisdiction has been established, the only elements NextEra needs to prove to obtain summary judgment are that "the award is authentic" and that the Court's "enforcement order is consistent with the award." *TECO*, 414 F. Supp. 3d at 101. There is no dispute on either of these points. Spain does not challenge the authenticity of the award, and the interest NextEra seeks in its proposed order copies the text of the Annulment Committee's decision verbatim. *Compare* Annulment Committee Decision, ECF No. 68-60 at 146, 147; ECF No. 96-5 at 163, 164 (awarding NextEra interest "at the rate of 0.234% compounded monthly") *with* Proposed Order, ECF No. 98-3 at 2 (seeking interest "at the rate of 0.234% compounded monthly"). That is all the Court need confirm in order to grant NextEra's Motion. Put differently, even if the interest calculation were considered to be subject to dispute, factual disputes can only preclude summary judgment when they bear on "the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The elements essential to NextEra's case here are the authenticity of the award and the consistency between the award and the relief sought, as described above. *TECO*, 414 F. Supp. 3d at 101. Because there is no dispute on these essential elements, any dispute regarding interest calculations is immaterial as a matter of law and does not allow Spain to evade summary judgment. *See Celotex*, 477 U.S. at 322.

Dated: March 13, 2025          Respectfully submitted,
Washington, D.C.

/s/ Bradley A. Klein_____
Bradley A. Klein
D.C. Bar Number 973778
John A.J. Barkmeyer
D.C. Bar Number 1014956
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
(202) 371-7000
bradley.klein@skadden.com
john.barkmeyer@skadden.com

Timothy G. Nelson (appearing *pro hac vice*)
New York Bar Number 3060175
Amanda Raymond Kalantirsky (appearing *pro hac vice*)
New York Bar Number 4812418
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
(212) 735-2000 (fax)
timothy.g.nelson@skadden.com
amanda.raymond@skadden.com

David Herlihy SC (appearing *pro hac vice*)
New York Bar Number 4167920
A&O SHEARMAN (IRELAND) LLP
53 Merrion Square South
Suite 201
Dublin D02 PR63
IRELAND

*Attorneys for NextEra Energy Global Holdings B.V. and*
*NextEra Energy Spain Holdings B.V.*