# Exhibit 7

# Breaking: ICSID tribunal majorities uphold intra-EU objection in duo of ECT arbitrations against Spain

*Published: Oct 12, 2024 | By:*

*IAReporter* has learned that two tribunal majorities in the Sapec v. Kingdom of Spain and European Solar Farms ("ESF") v. Kingdom of Spain ICSID arbitrations – both chaired by David Unterhalter – have declined jurisdiction based on the intra-EU nature of the underlying disputes.

In both arbitrations, the Awards (which remain unpublished) were issued on October 11, 2024, under the Energy Charter Treaty ("ECT").

In the Sapec case, Mr. Unterhalter (appointed by ICSID's Secretary-General) was joined by UK barrister Daniel Brennan from Matrix Chambers (Spain's appointee) in his decision to decline jurisdiction over the dispute. The claimant's appointee, James Spigelman, wrote a Dissenting Opinion.

In the ESF case, Mr. Unterhalter (appointed by ICSID's Secretary-General to this case as well) formed a majority with Marcelo Kohen (respondent's appointee), who penned a separate Declaration. The third member of the tribunal, O. Thomas Johnson (claimant's appointee) also wrote a Dissenting Opinion.

(Readers may recall that Mr. Kohen previously argued, in a dissenting opinion in the Theodorus Adamakopoulos et al. v. Cyprus case, that the intra-EU nature of the dispute should lead the tribunal to decline jurisdiction – but the tribunal majority in that case disagreed and allowed the case to proceed.)

The Belgian Sapec and the Danish ESF corporations both claimed that Spain had breached the ECT by reducing incentives owed to their investments in Spanish photovoltaic plants.

In both cases, the claimants were represented by King & Spalding in Houston, Washington DC, and Paris, together with Gómez-Acebo & Pombo in Madrid. Spain relied on counsel from its in-house Abogacía General del Estado in Madrid.

**Several arguments by Spain are rejected**

We have learned that both Awards are exclusively focused on Spain's intra-EU objection.

In a set of preliminary observations, the tribunals rejected Spain's contention that the state could not have validly consented to the arbitrations solely based on the principle of primacy of EU law. The arbitrators were also unconvinced that the European Union ("EU") and its member states should be considered as a single entity under international law.

The tribunals were consequently not convinced that the case should fail due to lack of an investment in the area of a contracting state, in the sense of Article 26 of the ECT.

Furthermore, the arbitrators dismissed Spain's argument that Article 26(6) of the ECT (on the applicable law) implied that EU law directly applied to the tribunals' jurisdictions. The tribunals also rejected the idea that an interpretation of Article 26 of the ECT was solely a matter for the two contracting states concerned by the dispute. Finally, the arbitrators considered that the Komstroy Judgment of the Court of Justice of the European Union ("CJEU") was not directly relevant, since the arbitrations were governed by the ECT and the ICSID Convention, and the CJEU was not the ultimate arbiter under this framework.

**Tribunal majorities find that Article 1(3) of the ECT, together with the treaty's object and purpose and supplementary means indicate that the ECT's application is excluded for EU member states where the competence in question lies with the EU**

The tribunal next noted that both parties agreed that the ECT did not contain any express disconnection clause with respect to intra-EU disputes. This, however, did not imply that there was also no implicit disconnection clause, according to the majorities. Furthermore, the majorities reckoned that while the plain meaning of Article 26(3) of the ECT implied an unconditional consent of the parties to arbitrate certain disputes, this did not necessarily mean that the ECT was intended to create intra-EU obligations.

The tribunal majorities consequently turned to the interpretation of the ECT as a whole, applying the principles of treaty interpretation set out in the Vienna Convention on the Law of Treaties.

Starting with the context, the tribunal majorities saw no particular relevance in Article 1(10) of the ECT and its reference to the area of a contracting state. The majorities also found that Article 36(7) of the ECT, referring to voting procedures in case a Regional Economic Integration Organization ("REIO") is involved, was not relevant.

The situation was different for Article 1(3) of the ECT, which the tribunal majorities considered to be a key element in their analyses. Readers may recall that this provision defines a REIO as "an organization constituted by states to which they have transferred competence over certain matters a number of which are governed by this Treaty, including the authority to take decisions binding on them in respect of those matters".

For the tribunal majorities, this provision had received insufficient attention in prior cases, and it implied that if a contracting party had transferred to a REIO a certain competence, then it could not owe any obligations under the ECT in respect to this matter. For the majorities, this did not mean that EU law had primacy over the ECT; rather, it meant that the ECT itself incorporated an acknowledgment that EU member states were bound by EU law – which meant that they could not be held liable under the ECT for measures over which the EU had competence.

The tribunal majorities found confirmation for this conclusion in Article 25 of the ECT, and in a 1998 statement by the European Communities. In contrast, the majority arbitrators gave no particular weight to the European Commission's July 2018 Communication on intra-EU arbitration, the January 2019 Achmea Declarations, or Article 16 of the ECT.

The majorities also found that their analyses were compatible with the object and purpose of the ECT.

Acknowledging that there were some ambiguities in the matter, the majorities found it helpful to resort to supplementary means of treaty interpretation. In this context, the arbitrators examined the rejection of a proposal to include an express disconnection clause in the ECT, as well as the overall circumstances of the ECT's conclusion. The majorities found that this confirmed their analyses.

In a final step of the analyses, the majorities considered that the disputes at hand indeed concerned matters over which Spain had transferred competence to the EU, seeing no reason why this would only apply to matters over which the EU had exclusive competence.

The majorities concluded that Spain had not consented to arbitrate this dispute, and they consequently declined jurisdiction over the two arbitrations. Each party was ordered to bear its own costs, while the arbitration costs were equally split.

**James Spigelman opines that majority gave excessive importance to Article 1(3) of the ECT**

In his Dissenting Opinion, Mr. Spigelman disagreed with the majority's reliance on Article 1(3) of the ECT. Echoing the tribunal in BayWa v. Spain, the dissenter considered that this was an unexceptional provision, to which the majority conferred excessive importance. For the dissenter, the provision only made it clear that investors could bring arbitration claims against a REIO if the REIO was an ECT party.

While he found that some of the majority's considerations were relevant to the merits, they did not prevent the tribunal from assuming jurisdiction, according to the dissenter.

Mr. Spigelman added that he would have given more significance to Article 16 of the ECT, which operated as a *lex specialis* and meant that the ECT prevailed over EU law if it was more favorable to investors.

**Thomas Johnson opines that majority's findings are wrong as a matter of reason and logic**

Mr. Johnson also disagreed with his co-arbitrators' reasoning, which he found to be wrong as a matter of reason and logic.

Like Mr. Spigelman, Mr. Johnson opined that the majority read too much into Article 1(3), which only concerned itself with REIOs, and not with their member states (like Spain). In any case, Mr. Johnson added that the mere fact that the ECT acknowledged that EU obligations existed and that EU member states were expected to obey those rules did not mean that they were released from their ECT obligations.

Mr. Johnson also found that the majority's application of the VCLT principles was mistaken, since the majority effectively used the treaty's context to reach a conclusion that was in opposition with its ordinary meaning.

**Marcelo Kohen agrees with result, but would have adopted a different reasoning on some matters**

In his Declaration, Mr. Kohen noted that he agreed with the outcome of the ESF Award. However, he added that, unlike the tribunal chair, he would have found that Article 26(6) of the ECT implied that EU law was directly applicable to the dispute, and he would have placed more emphasis on the CJEU's Komstroy Judgment.

We will provide a full analysis of the arbitrators' reasonings in due course.