# Exhibit 31

**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

**InfraRed Environmental Infrastructure GP Limited and others**

v.

**Kingdom of Spain**

**(ICSID Case No. ARB/14/12) – Annulment Proceeding**

---

**DECISION ON ANNULMENT**

***Members of the ad hoc Committee***
Prof. José-Miguel Júdice, President of the *ad hoc* Committee
Dr. Karim Hafez, Member of the *ad hoc* Committee
Prof. Yuejiao Zhang, Member of the *ad hoc* Committee

***Secretary of the ad hoc Committee***
Mr. Marco Tulio Montañés-Rumayor

---

June 10, 2022

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

## REPRESENTATION OF THE PARTIES

*Representing the Applicant:*

Kingdom of Spain
Ms. María del Socorro Garrido Moreno
Ms. Gabriela Cerdeiras Megias
Ms. Lorena Fatás Pérez
Mr. Rafael Gil Nievas
Mr. José Manuel Gutiérrez Delgado
Ms. María de Lourdes Martínez de Victoria Gómez
Ms. Amparo Monterrey Sánchez
Ms. Elena Oñoro Sainz
Mr. Francisco Javier Peñalver Hernández
Ms. Mª José Ruiz Sánchez

Abogacía General del Estado
Dpto. Arbitrajes Internacionales
c/ Marques de la Ensenada, 14-16, 2° planta
28004 Madrid
Spain

*Representing the Respondents:*

InfraRed Environmental Infrastructure GP
Limited and others
Mr. Alberto Fortún Costea
Dr. José Ángel Rueda García
Professor Miguel Gómez Jene
Mr. Borja Álvarez Sanz
Mr. Gustavo Mata Morreo
Mr. José Ángel Sánchez Villegas
Ms. Lucía Pérez-Manglano Villalonga
Mr. Ignacio Hernández Suárez
Ms. Elisa Salcedo Sánchez

Cuatrecasas, Goncalves Pereira
Almagro, 9
28010 Madrid
Spain

i

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  PROCEDURAL HISTORY ............................................................................. 1

III. THE RELIEF REQUESTED BY SPAIN ....................................................... 13

IV.  SUMMARY OF SPAIN'S SUBMISSIONS ..................................................... 18

     A.  BACKGROUND AND CONTEXT ....................................................... 20

     B.  MANIFEST EXCESS OF POWERS ...................................................... 21

         1.  Introduction ........................................................................... 22
         2.  Manifest excess of powers by conferring protection to investors with unclean hands and by disregarding the application of international ius cogens and conferring protection on those who had acted on the basis of deceit and fraud in their investment process ............................................... 24
         3.  Manifest excess of powers by not accepting the intra-EU objection and hearing a dispute between claimants from an EU Member State and an EU State .......... 26
         4.  Manifest excess of powers by disregarding the applicable law: EU law must be applied to the merits of the dispute ................................................... 32
         5.  Manifest excess of powers by making a manifestly incorrect application of the applicable law in assessing legitimate expectations. ............................ 33
         6.  Manifest error of assessment by awarding damages contrary to its findings on quantum ................................................................................. 35

     C.  FAILURE TO STATE REASONS ......................................................... 35

         1.  Introduction ........................................................................... 36
         2.  Failure to state reasons as to why the Award disregards the application of EU law, both in the determination of lack of jurisdiction (to hear a dispute between an alleged investor from a EU Member State and a EU Member State) of the Tribunal, and to the merits ............................................................. 37
         3.  Failure to state reasons, or reasoning that is insufficient, inadequate and contradictory, in the determination of installed power .......................... 39
         4.  Failure to state reasons in relation to the decision of the date of the investment ........................................................................................... 41
         5.  Failure to state reasons for the Award in the conclusion on liability, in particular regarding the ECJ standard provided in Article 10(1) of the ECT ....... 42
         6.  Expression of contradictory reasons in the alleged violation of the Claimants' expectations about the stability of the Original Regulatory Framework ........... 43
         7.  Failure to state reasons when calculating damages ............................ 46
         8.  Failure to state reasons in relation to the evidentiary activity and the evaluation of the evidence developed in the Arbitration ...................................... 46

     D.  SERIOUS DEPARTURE FROM A FUNDAMENTAL RULE OF PROCEDURE ................................................................................. 48

         1.  Introduction ........................................................................... 48
         2.  The breach of the basic principle of the burden of proof and the right of Spain to be heard ............................................................................... 49

V.   THE RELIEF REQUESTED BY INFRARED .................................................. 54

Case 1:19-cv-01618-TSC   Document 113-35   Filed 03/13/25   Page 5 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

**VI.**   **SUMMARY OF INFRARED'S SUBMISSIONS** ................................................ **55**

**A.**   **SUMMARY OF THE DISPUTE AND THE AWARD** .......................... **55**

**B.**   **THERE ARE NO GROUNDS TO ANNUL THE AWARD** ................ **58**

**C.**   **THERE ARE NO GROUNDS TO ANNUL THE AWARD ON THE BASIS OF MANIFEST EXCESS OF POWER** ............................ **60**

1.   "Excess of power" must be self-evident and an error in the application of the law is not a ground for annulment .................................................................. 61
2.   Spain's arguments related to the intra-EU objection cannot lead to the annulment of the Award ....................................................................................... 63
3.   The Tribunal did not exceed its powers when applying international law to the dispute ............................................................................................................ 68
4.   The Tribunal correctly applied the proper law in assessing the legitimate expectations and in any case a misapplication of the law does not constitute a manifest excess of power ................................................................................ 70
5.   InfraRed is entitled to international protection ................................................... 71

**D.**   **THERE ARE NO GROUNDS TO ANNUL THE AWARD ON THE BASIS THAT THE TRIBUNAL FAILED TO STATE REASONS** ................................................................................................ **73**

1.   The standard of proof under Article 52(1)(e) is particularly high, and as long as reasons have been stated, even if incorrect or unconvincing, an award cannot be annulled ........................................................................................................ 74
2.   The Tribunal justified its decision on the rejection of the intra-EU objection, and on the application of international law (to jurisdiction and the merits) ......... 74
3.   The Tribunal reasoned its decision regarding the determination of installed power ................................................................................................................ 77
4.   The date of the investment was an uncontested matter during the underlying arbitration: Spain's counsel explicitly agreed that such date was July 28, 2011 in the *Parties' List of Uncontested Facts* .......................................................... 78
5.   The Tribunal reasoned its conclusions on liability .............................................. 78
6.   The Tribunal reasoned its findings on damages ................................................. 82

**E.**   **THERE ARE NO GROUNDS TO ANNUL THE AWARD ON THE BASIS OF A SERIOUS DEPARTURE FROM A FUNDAMENTAL RULE OF PROCEDURE** ......................................... **83**

1.   Spain avoids mentioning some important nuances of the legal standard under Article 52(1)(d) of the ICSID Convention ......................................................... 83
2.   The InfraRed Tribunal did not depart from any fundamental rule of procedure ........................................................................................................................ 84
3.   Spain's allegation of lack of impartiality is devoid of any basis ......................... 90

**VII.**   **ANALYSIS OF THE COMMITTEE** ............................................................. **90**

**A.**   **THE NATURE OF ANNULMENT PROCEEDINGS AND THE POWERS OF THE COMMITTEE** ........................................................ **90**

**B.**   **MANIFEST EXCESS OF POWERS** ........................................................ **93**

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 6 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

1. Interpretation of Article 52(1)(b) of the ICSID Convention ................................ 93
   a) Spain's submission ............................................................. 93
   b) InfraRed's submission ......................................................... 94
   c) Analysis of the Committee ................................................... 94
2. Manifest excess of powers by conferring international protection to investors with unclean hands and by disregarding the application of international *ius cogens* and conferring protection on those who acted on the basis of deceit and fraud in their investment process ......................................................... 96
   a) Spain's submission ............................................................. 96
   b) InfraRed's submission ......................................................... 97
   c) Analysis of the Committee ................................................... 98
3. Manifest excess of powers by rejecting the intra-EU objection and hearing a dispute between an EU Member State and claimants from another EU Member State to which neither the United Kingdom nor Spain consented ..................... 100
   a) Spain's submission ............................................................ 100
   b) InfraRed's submission ........................................................ 104
   c) Analysis of the Committee .................................................. 109
4. Manifest excess of powers by disregarding the applicable international law, including the ECT itself, and by disregarding the application of the entire EU law ................................................................................................ 114
   a) Spain's submission ............................................................ 114
   b) InfraRed's submission ........................................................ 115
   c) Analysis of the Committee .................................................. 117
5. Manifest excess of powers by misapplying the applicable law to be taken into account in assessing legitimate expectations ................................................ 120
   a) Spain's submission ............................................................ 120
   b) InfraRed's submission ........................................................ 121
   c) Analysis of the Committee .................................................. 121
6. Manifest excess of powers by awarding damages contrary to its findings on quantum ............................................................................................... 123
   a) Spain's submissions ........................................................... 123
   b) InfraRed's submission ........................................................ 123
   c) Analysis of the Committee .................................................. 124

C.  **FAILURE TO STATE REASONS** ....................................................... **125**

1. Interpretation of Article 52(1)(e) of the ICSID Convention ............................ 125
   a) Spain's submissions ........................................................... 125
   b) InfraRed's submission ........................................................ 125
   c) Analysis of the Committee .................................................. 127
2. Failure to state reasons for determining that the installed capacity was less than 50MW, thereby accepting the Claimants' misleading and fraudulent statement without justification, and provision of "manifestly insufficient, inadequate and blatantly contradictory reasons" for supporting installed capacity of less than 50MW ................................................................................................ 130
   a) Spain's submissions ........................................................... 130
   b) InfraRed's submission ........................................................ 131
   c) Analysis of the Committee .................................................. 132
3. Failure to state reasons as to why the Award disregards the application of the applicable international law, including the ECT itself, and why the Award disregards the application of the entire EU law altogether ................................ 133
   a) Spain's submission ............................................................ 133
   b) InfraRed's submission ........................................................ 134

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 7 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

   c) Analysis of the Committee ............................................................ 135
  4. Failure to state reasons in the findings on liability which determine that there
   are serious deficiencies in the Award as to the interpretation of how Article
   10(1) of the ECT is to be applied ........................................................ 136
   a) Spain's submissions ............................................................ 136
   b) InfraRed's submission ........................................................ 137
   c) Analysis of the Committee ............................................................ 139
  5. Provision of contradictory reasons concerning the expectations of InfraRed
   regarding immutability of the regulatory framework under which they made
   their investment and the alleged breach thereof ............................... 141
   a) Spain's submissions ............................................................ 141
   b) InfraRed's submission ........................................................ 142
   c) Analysis of the Committee ............................................................ 143
  6. Failure to state reasons in relation to the evidentiary activity and the evaluation
   of the evidence developed in the Arbitration .................................... 145
   a) Spain's submissions ............................................................ 145
   b) InfraRed's submission ........................................................ 145
   c) Analysis of the Committee ............................................................ 146
  7. Regarding the determination on damages and the failure to state reasons for
   the Tribunal's valuation, including the date of the investment and the date of
   valuation ............................................................................................ 148
  7.1. Regarding the determination of damages ................................... 148
   a) Spain's submissions ............................................................ 148
   b) InfraRed's submission ........................................................ 148
   c) Analysis of the Committee ............................................................ 149
  7.2. Regarding the failure to state reasons in relation to the decision for the date of
   the investment ................................................................................ 150
   a) Spain's submissions ............................................................ 150
   b) InfraRed's submission ........................................................ 151
   c) Analysis of the Committee ............................................................ 152

**D.** **SERIOUS DEPARTURE FROM A FUNDAMENTAL RULE OF
 PROCEDURE** ..................................................................................... **152**

  1. Interpretation of Article 52(1)(d) of the ICSID Convention ............... 152
   a) Spain's submissions ............................................................ 152
   b) InfraRed's submission ........................................................ 154
   c) Analysis of the Committee ............................................................ 155
  2. The multiple procedural breaches in relation to the evidentiary activity and the
   evaluation of evidence in the Arbitration .......................................... 156
   a) Spain's submissions ............................................................ 156
   (1) The right to be heard .............................................................. 156
   (2) The rule of the burden of proof ............................................. 157
   (3) The duty of impartiality ........................................................ 159
   b) InfraRed's submission ........................................................ 159
   (1) The right to be heard .............................................................. 159
   (2) The rule of the burden of proof ............................................. 160
   (3) The duty of impartiality ........................................................ 162
   c) Analysis of the Committee ............................................................ 162
   (1) The right to be heard .............................................................. 163
   (2) The rule of the burden of proof ............................................. 165
   (3) The duty of impartiality ........................................................ 168

**VIII.** **COSTS OF THE PROCEEDING** ............................................................ **168**

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

**A.     SPAIN'S STATEMENT ON COSTS** .................................................................... **168**

**B.     INFRARED'S STATEMENT ON COSTS** ............................................................. **169**

**C.     THE COSTS OF THE PROCEEDING** ................................................................. **170**

**D.     THE COMMITTEE'S DECISION ON COSTS** ................................................... **170**

**IX.    DECISION** ...................................................................................................................... **171**

TABLE OF DEFINED TERMS

| | |
|---|---|
| ***Achmea* Declaration** | Declaration between the United Kingdom and Spain together with other 20 Member States and the EC |
| ***Achmea* Judgment** | Judgment of the Court of Justice of the European Union in Case C-284/16, Republic of Slovakia/Achmea BV, dated March 6, 2018 |
| **Applicant** or **Spain** | Kingdom of Spain |
| **Application for Annulment** | Kingdom of Spain's Application for Annulment, dated November 29, 2019 |
| **Application for Revision** | Spain's application for revision of the Award, dated July 22, 2020 |
| **Arbitration** | Arbitration proceeding ICSID Case No. ARB/14/12 |
| **Arbitration Rules** | ICSID Rules of Procedure for Arbitration Proceedings |
| **Award** | Award rendered on August 2, 2019 by the Tribunal composed of Stephen L. Drymer, William W. Park and Pierre-Marie Dupuy |
| **CJEU** | Court of Justice of the European Union |
| **Committee** | Committee on Annulment composed of José-Miguel Júdice, Karim Hafez; and Yuejiao Zhang |
| **Counter-Memorial** | InfraRed's Counter-Memorial on Annulment, dated November 13, 2020 |
| **Decision on Stay** | Committee's Decision on the Stay of Enforcement of the Award, dated October 27, 2020 |
| **Demetrio Report** | Professor Eduardo Demetrio Crespo's Legal Opinion, dated July 27, 2020 |
| **EC** | European Commission |
| **EC Application** | European Commission's application for leave to intervene as a non-disputing party in the annulment proceeding, dated October 22, 2020 |
| **ECT** | Energy Charter Treaty |
| **FET** | Fair and Equitable Treatment |
| **Gosalbo Report** | Professor Ricardo Gosalbo Bono's Expert Report, dated July 30, 2020 |
| **Hearing** | Hearing on Annulment held on June 23-25, 2021 by videoconference |
| **ICJ** | International Court of Justice |
| **ICSID Convention** | Convention on the Settlement of Investment Disputes between States and Nationals of Other States |
| **InfraRed** or **Respondents** | InfraRed Environmental Infrastructure GP Limited, European Investments (Morón) 1 Limited, European Investments (Morón) 2 |

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 10 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

|  | Limited, European Investments (Olivenza) 1 Limited and European Investments (Olivenza) 2 Limited |
|---|---|
| **Memorial** | Spain's Memorial on Annulment, dated July 17, 2020 |
| **PHBs** | Parties' Post-Hearing Briefs |
| **PO1** | Procedural Order No. 1, dated April 23, 2020 |
| **PO10** | Procedural Order No. 10, dated August 13, 2021 |
| **PO2** | Procedural Order No. 2, dated June 26, 2020 |
| **PO3** | Procedural Order No. 3, dated August 7, 2020 |
| **PO4** | Procedural Order No. 4, dated September 9, 2020 |
| **PO5** | Procedural Order No. 5, dated November 26, 2020 |
| **PO6** | Procedural Order No. 6, dated December 31, 2020 |
| **PO7** | Procedural Order No. 7, dated February 12, 2021 |
| **PO8** | Procedural Order No. 8, dated February 16, 2021 |
| **PO9** | Procedural Order No. 9, dated May 21, 2021 |
| **Plants** | Solar plants Olivenza 1 and 2 and Morón 1 and 2 |
| **REIO** | Regional Economic Integration Organization |
| **Rejoinder** | InfraRed's Rejoinder on Annulment, dated April 30, 2021 |
| **Reply** | Spain's Reply on Annulment, dated February 19, 2021 |
| **Rozas Report** | Dr. José Carlos Fernández Rozas and Sixto A. Sánchez Lorenzo's Legal Opinion, dated July 13, 2020 |
| **Stay Hearing** | Hearing on the Stay Request held on June 29-30, 2020 by videoconference |
| **Stay Rejoinder** | Infrared's rejoinder to the Applicant's Stay Reply, dated May 14, 2020 |
| **Stay Reply** | Spain's reply to Infrared's Stay Response, dated April 30, 2020 |
| **Stay Request** | The request to continue the stay of enforcement of the Award submitted in the Application for Annulment, dated November 29, 2019 |
| **Stay Response** | Infrared's observations on the Applicant's Stay Submission, dated April 16, 2020 |
| **Stay Submission** | Spain's submission in support of the continuation of the stay of enforcement of the Award, dated March 24, 2020 |

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

| **TFEU** | Treaty on the Functioning of the European Union |
| **Tr. p. #** | Transcript of the Hearing on Annulment held on June 23-25, 2021 |
| **Updated Background Paper** | Updated Background Paper on Annulment for the Administrative Council of ICSID, dated May 5, 2016 |
| **VCLT** | Vienna Convention on the Law of Treaties |

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 12 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

## I.    INTRODUCTION

1.    This case concerns an application for annulment submitted by the Kingdom of Spain ("**Application for Annulment**") of the award rendered on August 2, 2019 ("**Award**") in the arbitration proceeding ICSID Case No. ARB/14/12 ("**Arbitration**").

2.    The Applicant is the Kingdom of Spain ("**Applicant**" or "**Spain**").

3.    The Respondents on Annulment are InfraRed Environmental Infrastructure GP Limited, European Investments (Morón) 1 Limited, European Investments (Morón) 2 Limited, European Investments (Olivenza) 1 Limited and European Investments (Olivenza) 2 Limited ("**InfraRed**" or "**Respondents**").

4.    The Applicant and InfraRed are hereinafter collectively referred to as the "**Parties**", and individually referred to as a "**Party**." The Parties' representatives and their addresses are listed above on page (i).

## II.    PROCEDURAL HISTORY

5.    On November 29, 2019, the Applicant filed the Application for Annulment, requesting the continuation of the stay of enforcement of the Award ("**Stay Request**") pursuant to Article 52(5) of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("**ICSID Convention**") and Rule 54(1) of the ICSID Rules of Procedure for Arbitration Proceedings ("**Arbitration Rules**").

6.    On December 5, 2019, the ICSID Secretary-General registered the Application for Annulment and notified the Parties that, in accordance with Arbitration Rule 54(2), the enforcement of the Award was provisionally stayed.

7.    On February 21, 2020, the *ad hoc* committee was constituted in accordance with ICSID Arbitration Rules 6 and 53. Its members are: José-Miguel Júdice (a national of Portugal), President; Karim Hafez (a national of Egypt); and Yuejiao Zhang (a national of China) ("**Committee**"). Mr. Marco Tulio Montañés-Rumayor, ICSID Legal Counsel, was designated to serve as Secretary of the Committee.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 13 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

8.      On March 12, 2020, the Committee fixed the written schedule regarding the Applicant's Stay Request. On that same date, the Committee proposed to hold a one-day hearing (with another day in reserve), for oral argument on the Stay Request, subject to the public health advisories of COVID-19.

9.      Also on March 12, 2020, the Committee informed the Parties that it had decided to "extend the provisional stay of enforcement of the award until it rule[d] on such request after receiving the parties' submissions to that effect."

10.     On March 24, 2020, the Applicant filed a submission in support of the continuation of the stay of enforcement of the Award ("**Stay Submission**").

11.     On April 15, 2020, the Committee held the first session with the Parties by video conference. During the session, the Parties confirmed their agreement that the Committee had been properly constituted in accordance with the relevant provisions of the ICSID Convention and the Arbitration Rules, and that they did not have any objections in this respect. The Parties also agreed on a number of procedural matters, including the possibility of holding a virtual instead of an in-person hearing, due to COVID-19 health constraints.

12.     On April 16, 2020, the Respondents filed observations on the Applicant's Stay Submission ("**Stay Response**").

13.     On April 23, 2020, the Committee issued Procedural Order No. 1 ("**PO1**") concerning procedural matters. Annex A of PO1 contained the Procedural Calendar agreed by the Parties and approved by the Committee. The Calendar provided for an "online hearing on 29 and 30 June 2020 (to be confirmed by the Committee in consultation with the Parties by 21 May 2020)."

14.     On April 30, 2020, the Applicant filed a reply to the Respondents' Stay Response ("**Stay Reply**").

15.     On May 14, 2020, the Respondents filed their rejoinder to the Applicant's Stay Reply ("**Stay Rejoinder**").

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 14 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

16.     On May 20, 2020, after receiving the last written submission on the Stay Request, the Committee consulted again with the Parties about holding a virtual hearing pursuant to Annex A of PO1.

17.     On May 21, 2020, the Committee decided that a hearing would be held by video conference on June 29 and 30, 2020.

18.     On June 22, 2020, a pre-hearing session between the Parties and the Committee was held by video conference to discuss any outstanding procedural, administrative, and logistical matters in preparation for the hearing.  Participating were:

Members of the Committee
-    Prof. José-Miguel Júdice, President
-    Dr. Karim Hafez, Member
-    Prof. Yuejiao Zhang, Member

ICSID Secretariat:
-    Mr. Marco Tulio Montañés-Rumayor, Secretary of the Committee
-    Ms. Ivania Fernandez, ICSID

On behalf of the Applicant:
-    Mr. Rafael Gil Nievas
-    Ms. María del Socorro Garrido Moreno

On behalf of the Respondents:
-    Dr. José Ángel Rueda García
-    Mr. Borja Álvarez Sanz

19.     On June 26, 2020, the Committee issued Procedural Order No. 2 ("**PO2**") concerning the organization of the hearing.

20.     On June 29 to 30, 2020, the Committee held a hearing on the Stay Request by video conference ("**Stay Hearing**").  Participating in the Stay Hearing were:

Members of the *ad hoc* Committee
-    Prof. José-Miguel Júdice, President
-    Dr. Karim Hafez, Member
-    Prof. Yuejiao Zhang, Member

ICSID Secretariat:
-    Mr. Marco Tulio Montañés-Rumayor, Secretary of the Committee
-    Ms. Ivania Fernandez, ICSID

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 15 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

On behalf of the Applicant:
- Mr. Rafael Gil Nievas
- Ms. María del Socorro Garrido Moreno

On behalf of the Respondents:
- Mr. Alberto Fortún Costea
- Prof. Miguel Gómez Jene
- Dr. José Ángel Rueda García
- Mr. Borja Álvarez Sanz

21.    At the end of the Stay Hearing, the Committee invited the Parties to file any additional request for new evidence by July 3, 2020.[1]

22.    On July 3, 2020, each Party filed a request for the Committee to decide on the admissibility of new evidence. The Respondents' communication also proposed an undertaking related to guarantees of recoupment by the Applicant if the stay was not maintained.

23.    On July 8, 2020, the Applicant objected to the Respondents' letter of July 3, 2020, because it "goes beyond that Committee's authorization and includes a point 2 not related at all with the petition to incorporate documents to the record." Consequently, the Applicant requested:

> "(1) That the paragraph 2 of the Infrared's Letter regarding an "undertaking" is completely dismissed and considered as non-presented.
>
> (2) Subsidiarily, that leave is given to the Kingdom of Spain to respond to the misleading paragraph 2 of said Infrared's Letter."

24.    On July 10, 2020, the Committee invited the Applicant to reply to the Respondents' letter of July 3 by July 15, 2020.

25.    On July 15, 2020, the Applicant filed observations on the Respondents' letter of July 3, 2020. It first acknowledged that the Respondents had "filed timely a document (the Letter) with a dual content: (1) petition to incorporate documents into the record; and (2) additional allegations regarding the stay of enforcement." The Applicant then

---

[1] Stay Hearing Tr., Day 2, 227: 13-15.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 16 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

argued that "those additional comments improperly made by InfraRed must be completely sidelined, as they are not only out of the scope of Tribunal [sic] suggestion but also because they do not respond to any request made by InfraRed during the hearing."

26.    On July 17, 2020, Spain filed its Memorial on Annulment ("**Memorial**"), together with Exhibits R-0393 to R-0398; Legal Exhibits RL-0148 to RL-0178, and the Legal Opinions of Prof. Ricardo Gosalbo Bono, Prof. Eduardo Demetrio Crespo and Messrs. José Carlos Fernández Rozas and Sixto A. Sánchez Lorenzo.

27.    On July 21, 2020, the Committee informed the Parties that it had taken note of the Parties' communications (of July 3 and 15, 2020), and that it would determine in its decision on the Stay Request whether and how to consider the content of such letters.

28.    On July 22, 2020, the Parties jointly submitted the agreed revisions to the Stay Hearing transcript.

29.    On July 30, 2020, the Respondents informed the Committee that the Applicant had lodged, on July 22, 2020, an application for revision of the Award ("**Application for Revision**").  In their view, "the circumstances surrounding this request are certainly exceptional, given the fact that Spain's Application for Revision, on one hand, overlaps with its Application for Annulment and, on the other hand, confirms InfraRed's arguments. However, the Application post-dates InfraRed's last written submission and, as a result, it could not have been submitted earlier." Therefore, the Respondents requested that the Committee:

> "(i) accept InfraRed's request for leave to file into the record Spain's Application for Revision of July 22, 2020 together with this letter; (ii) order as soon as practicable the lift of the provisional stay of enforcement of the Award; and (iii) order Spain to bear all costs resulting from its application for stay of the enforcement."

30.    On July 31, 2020, the Applicant objected to the Respondents' request of July 30, 2020 by arguing that:

> "[i]n the same way as the ad hoc Committee strictly enforced the PO1 when required the Applicant to remove the InfraRed's publicly available financial statements from the opening presentations in the

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

> stay of enforcement hearing, the ad hoc Committee must enforce the
> PO1 and directly and simply reject the InfraRed's Letter that
> contains confidential information."

31.   On August 4, 2020, the Committee took note of the Parties' communications of July 30 and 31, 2020.

32.   On August 7, 2020, the Committee issued Procedural Order No. 3 ("**PO3**") regarding the Parties' requests to introduce new documents to the record.

33.   On August 10, 2020, the Applicant requested an extension until August 27 to file its submission pursuant to PO3.

34.   On August 11, 2020, the Committee granted the Applicant's request of August 10, 2020.

35.   On August 27, 2020, the Parties filed the new documents and/or submissions pursuant to PO3.

36.   On August 27, 2020, the Applicant requested the Committee's leave to submit a new legal authority.

37.   On August 28, 2020, the Committee invited the Respondents to comment on the Applicant's above request by September 3, 2020.

38.   On September 2, 2020, the Respondents filed their comments on the Applicant's request of August 27, 2020.

39.   On September 9, 2020, the Committee issued Procedural Order No. 4 ("**PO4**") regarding the requests of the Parties not yet decided in PO3.

40.   On September 10, 2020, the Committee declared the stay of enforcement phase closed.

41.    On October 22, 2020, the European Commission ("**EC**") filed an application for leave to intervene as a non-disputing party in the annulment proceeding ("**EC Application**"). The EC requested the Committee to allow it to file written *amicus curiae* submissions, have access to the documents filed in the case, and attend the hearing and present oral arguments.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 18 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

42.    On October 27, 2020, the Committee invited the Parties to submit comments on the EC's Application.

43.    On October 27, 2020, the Committee issued its *Decision on the Stay of Enforcement of the Award* ("**Decision on Stay**"). The Committee decided to lift the stay of enforcement of the Award provided that the "Respondents comply with the following by December 31, 2020:

> (i)    undertake not to use, and not to transfer or distribute to any shareholder of the InfraRed Capital Partners Group or to any third party (including investors in the InfraRed Environmental Infrastructure fund and/or to entitle any third party funder rights to collect), any amounts collected from the Kingdom of Spain under the Award. This undertaking shall be submitted in draft form to the Committee for its approval. Before doing so, the Committee will grant the Applicant an opportunity to comment on it. The undertaking will be valid and enforceable until the Decision on Annulment (if the Application is denied) or until the total recoupment of any collected amounts (if the Application is upheld), and must be executed in compliance with any relevant formalities existing under English law; and

> (ii)    provide an undertaking from their parent companies - InfraRed Partners LLP and InfraRed Capital Partners (Management) LLP-, assuming a guarantee in favor of the Applicant if for any reason the Applicant may not obtain the total recoupment of any amounts collected from the Kingdom of Spain by the Respondents under any enforcement proceedings, immediately after the Respondents being ordered to return those amounts to the Kingdom of Spain by the Committee in case of future annulment of the Award. This undertaking shall be submitted in draft form to the Committee for its approval. Before doing so, the Committee will grant the Applicant an opportunity to comment on it. The undertaking will be valid and enforceable until the Decision on Annulment (if the Application is denied) or until the total recoupment of any collected amounts (if the Application is upheld), and must be executed in compliance with any relevant formalities existing under English law.

> (iii)    If the Respondents are not willing or able to provide the above undertakings by December 31, 2020, the stay of enforcement of the Award should be continued unconditionally until the conclusion of the annulment proceeding."

44.    On November 10, 2020, each Party submitted its comments on the EC's Application.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 19 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

45.    On November 13, 2020, InfraRed submitted its Counter-Memorial on Annulment ("**Counter-Memorial**") together with Exhibits C-575 to C-578, R-340, C-173 to C-727 and Legal Authorities CL-118, CL-159, CL-183, CL-224, CL-245, CL-261 to CL-263, CL-328, RL-86, RL-108, RL-123, RL-124, RL-136, RL-151 to RL-153, RL-155, RL-157, RL-168, RL-169, RL-171 and CL-329 to CL-356.

46.    On November 20, 2020, each Party filed its reply to the other Party's comments on the EC's Application.

47.    On November 26, 2020, the Committee issued Procedural Order No. 5 ("**PO5**"), partially granting the EC's request to intervene in the annulment proceeding with the filing of a written submission by December 18, 2020. The Committee also granted the Parties the right to comment simultaneously on the EC's submission, by January 18, 2021.

48.    On December 16, 2020, pursuant to the Committee's Decision on Stay, InfraRed filed the draft undertakings as requested by the Committee.

49.    Also on December 16, 2020, the Committee invited Spain to submit comments on InfraRed's draft undertakings by December 23, 2020.

50.    On December 21, 2020, the EC filed an *amicus curiae* brief pursuant to PO5.

51.    On December 24, 2020, Spain informed the Committee that it had "no comments to make regarding the draft undertaking No. 1 and No. 2, and certificate No. 3 submitted by InfraRed on December 16."

52.    On December 26, 2020, the Committee informed the Parties that the draft undertakings had been approved and a procedural order would be issued shortly. The Committee requested the Parties to "proceed from now with the final signed version, to be executed in compliance with any relevant formalities existing under English law, in accordance with the Decision on Stay."

53.    On December 31, 2020, the Committee issued Procedural Order No. 6 ("**PO6**") on InfraRed's undertakings.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 20 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

54.     On January 11, 2021, InfraRed submitted a signed, legalized and apostilled copy of the undertakings as approved by the Committee.

55.     On January 18, 2021, each Party submitted its comments on the EC's submission pursuant to PO5 and also in relation to the Commission's suggestion to the Committee of suspending the proceedings until the Court of Justice of the European Union ("**CJEU**") rendered its decision related to a request made by Belgium of an opinion on the compatibility of the intra-European application of the arbitration provisions of the ECT with the EU Treaties.

56.     On January 28, 2021, Spain requested a 5 day-extension to file its reply on annulment by February 19, 2021.

57.     The Committee granted the request on February 2, 2021 and informed the Parties that a similar extension would be granted, if requested, for InfraRed's rejoinder. The next day, InfraRed confirmed that it would accept the extension proposal and would file its rejoinder by April 30, 2021. The Committee approved InfraRed's extension on February 8, 2021.

58.     On February 10, 2021, InfraRed requested a formal order lifting the stay of enforcement of the Award and reiterating its request for the inadmissibility of new evidence included in its Counter-Memorial. On the latter, InfraRed requested that the Committee (i) bar Spain from introducing evidence in the present proceeding that should have been introduced in the Arbitration; (ii) strike from the record the expert reports Spain submitted with its Memorial and (iii) preclude Spain from submitting new expert evidence with its reply.

59.     On February 12, 2021, the Committee issued Procedural Order No. 7 ("**PO7**"), confirming that the stay of enforcement of the Award had been lifted.

60.     On February 16, 2021, the Committee issued Procedural Order No. 8 ("**PO8**") dismissing InfraRed's requests of February 10, 2021.

61.     On February 19, 2021, Spain submitted its reply on annulment ("**Reply**"), together with Exhibits R-0402 to R-0406 and Legal Authorities RL-0189 to RL-0240.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 21 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

62. On April 7, 2021, the Committee proposed to hold the pre-hearing conference on May 12, 2021.

63. On April 30, 2021, InfraRed submitted its rejoinder on annulment ("**Rejoinder**"), together with Exhibit C-728 and Legal Authorities CL-359 to CL-389.

64. On May 5, 2021, the Secretary of the Committee circulated to the Parties for their comments a draft Procedural Order No. 9 concerning the organization of the hearing.

65. On May 10, 2021, the Parties submitted the draft Procedural Order No. 9 with their agreements and disagreements.

66. On May 12, 2021, the Committee held a pre-hearing conference with the Parties by video conference. Following the pre-hearing conference, each Party submitted their proposed agenda for the hearing on annulment.

67. On May 21, 2021, the Committee issued Procedural Order No. 9 ("**PO9**") concerning the hearing on annulment.

68. On June 17, 2021, the Respondents requested leave to enter into the record a summary of the *ad hoc* committee's decision in the case *Sodexo Pass International SAS v. Hungary* (ICSID Case No. ARB/14/20).

69. On June 18, 2021, the Committee decided to deny the Respondents' request of June 17, 2021.

70. The hearing on annulment was held virtually on June 23 to June 25, 2021 ("**Hearing**"). The following persons were present at the Hearing:

**Committee**:
Prof. José-Miguel Júdice            President
Dr. Karim Hafez                     Member
Prof. Yuejiao Zhang                 Member

**ICSID Secretariat**:
Mr. Marco Tulio Montañés-Rumayor    Secretary of the Committee

**For the Applicant**:
Mr. Rafael Gil Nievas               Counsel
Ms. Socorro Garrido Moreno          Counsel

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 22 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

Mr. Alberto Fernandez
Prof. Ricardo Gosalbo Bono                      Expert
Prof. Eduardo Demetrio Crespo                   Expert
Prof. José Carlos Fernandez Rozas               Expert
Prof. Sixto A. Sanchez Lorenzo                  Expert

**For the Respondents**:
Mr. Alberto Fortún                              Counsel
Mr. Miguel de Almada                            Counsel
Mr. José Ángel Rueda García                     Counsel
Mr. Borja Álvarez Sanz                          Counsel
Mr. Gustavo Mata Morreo                         Counsel
Ms. Ana Martínez Valls                          Counsel
Ms. Elisa Salcedo Sánchez                       Paralegal
Ms. Inmaculada Romero Vázquez                   Assistant
Mr. James Hall-Smith                            Party Representative

**Court Reporters**:
Mr. Dante Rinaldi                               Spanish Court Reporter
Mr. Paul Pelissier                              Spanish Court Reporter
Ms. Guadalupe García                            Spanish Court Reporter
Ms. Virginia Masce                              Spanish Court Reporter
Mr. Trevor McGowan                              English Court Reporter
Ms. Georgina Vaughn                             English Court Reporter

**Interpreters**:
Ms. Anna Sophia Chapman                         English-Spanish Interpreter
Ms. Amalia Thaler de Klemm                      English-Spanish Interpreter
Mr. Jesús Getan Bornn                           English-Spanish Interpreter

**Technical Support Staff**:
Mr. Mike Young                                  Sparq
Ms. Ivania Fernandez                            Paralegal, ICSID
Mr. Gonzalo Arnejo Meijueiro                    IT, Cuatrecasas
Mr. Javier Comerón                              IT, Spain

71.    On July 1, 2021, the Committee decided that the Parties submit post-hearing briefs
       ("**PHBs**") by July 30, 2021, not to exceed 50 pages. The Committee also sent to the
       Parties a list of issues or questions to be addressed by them in their PHBs.

72.    On July 15, 2021, the Parties submitted the revised Hearing transcripts in English and
       Spanish.

73.    On July 20, 2021, InfraRed requested leave to enter new evidence into the record
       pursuant to Sections 15.3 and 15.6 of PO1.

74.     On July 21, 2021, the Committee invited Spain to comment on InfraRed's request of July 20, 2021.

75.     On July 23, 2021, Spain stated that it did not object to InfraRed's request of July 20 "as long as the same right under the same condition" is provided to Spain.

76.     Also on July 23, 2021, the Committee decided to grant leave to both Parties, under the same conditions, to enter into the record the relevant evidence of the underlying Arbitration that would assist the Parties in answering the Committee's questions and/or issues of July 1, 2021.

77.     On July 30, 2021, the Parties submitted their PHBs.

78.     On August 3, 2021, InfraRed requested leave to the Committee to enter new evidence into the record pursuant to Section 15.6. of PO1.

79.     On August 4, 2021, the Committee invited Spain to comment on InfraRed's request of August 3, 2021.

80.     On August 10, 2021, Spain stated that it objected to InfraRed's request of August 3, 2021 because it did not comply with Sections 15.5. and 15.6. of PO1. However, if the Committee were to allow InfraRed's request, Spain requested leave to also enter new evidence into the record.

81.     On August 10, 2021, the Committee requested the Parties to file their statements on costs by August 20, 2021. Also, the Committee decided that the Parties could reply to the other Party's cost statement by August 27, 2021.

82.     On August 13, 2021, the Committee issued Procedural Order No. 10 ("**PO10**") regarding the Parties' requests for new evidence. The Committee decided not to grant leave to the Parties to enter into the record the additional legal authorities. Instead, as agreed by the Parties, the Committee decided that it could rely on such legal authorities in its Decision on Annulment pursuant to the principle of *iuria novit curia*.

83.     On August 17, 2021, the Parties jointly requested to submit their statements on costs until September 8, 2021.

84.    On August 18, 2021, the Committee granted the request regarding the cost statements as agreed by the Parties.

85.    On September 8, 2021, InfraRed submitted their statement on costs. Spain requested a one-week extension to submit such statement.

86.    On September 9, 2021, the Committee decided to grant Spain's request and directed the Centre not to transmit InfraRed's cost statement to Spain until it had received Spain's statement.

87.    On September 10, 2021, Spain requested leave to enter new evidence into the record, *i.e.* the CJEU's judgment rendered in *Republic of Moldova v. Komstroy*.

88.    On September 13, 2021, the Committee invited InfraRed to comment on Spain's request of September 10, 2021, by September 16, 2021.

89.    On September 15, 2021, Spain submitted its statement on costs.

90.    On September 16, 2021, each Party received the opposite Party's statement on costs.

91.    On September 16, 2021, InfraRed objected to Spain's request of September 10, 2021.

92.    On September 21, 2021, the Committee rejected Spain's request of September 10, 2021. However, as previously agreed by the Parties, the Committee decided that it could rely on such a legal authority in its Decision on Annulment pursuant to the principle of *iuria novit curia*.

93.    On March 16, 2022, the Committee declared the proceeding closed.

## III.    THE RELIEF REQUESTED BY SPAIN

94.    The relief sought by Spain in its Memorial is the following:[2]

> "a) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal has manifestly exceeded its powers in entering into the matter and conferring international protection on those who are not entitled to do so by coming to the Tribunal without clean hands;

---

[2] Memorial, ¶¶305-306.

b) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal manifestly exceeded its powers by completely and utterly disregarding the application of international *ius cogens* and conferring protection on those who had acted on the basis of deceit and fraud in their investment process;

c) Annul the Article 52(1)(e) Award in its entirety because the Award lacks any expression of reason for determining that the installed capacity is less than 50MW, thereby accepting the Claimants' misleading and fraudulent statement without justification;

d) Annul the Award in its entirety under Article 52(1)(e) for lack of expression of reason, since the "reasons" given by the Tribunal for covering installed capacity of less than 50MW are manifestly insufficient, inadequate and openly contradictory;

e) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal clearly exceeded its powers in rejecting the intra-EU objection and in hearing a dispute between an EU Member State and claimants from another EU Member State for which neither the United Kingdom nor the Kingdom of Spain had given its consent;

f) Annul the Award in its entirety under Article 52(1)(e) for failure to express the reasons why it considers that the Tribunal has jurisdiction to hear a dispute between an alleged investor from an EU Member State and an EU Member State;

g) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal clearly exceeded its powers by disregarding the application of applicable international law, including the ECT itself, and completely disregarding the application of all EU law;

h) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention, for failure to express the reasons why it disregards the application of applicable international law, including the ECT itself, and why it disregards the application of all EU law altogether

i) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the ground that the Tribunal has manifestly exceeded its powers by making a manifestly incorrect application of the applicable law to be taken into account in assessing legitimate expectations;

j) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention for failure to state the reasons for deciding on the date of the investment;

k) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention, for failure to state reasons in the findings on liability which determine that there are serious deficiencies in the Award as to the interpretation of how Article 10(1) of the ECT should be applied;

l) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention for giving contradictory reasons concerning the expectations of Claimants regarding the immutability of the regulatory framework under which they made their investment and in the alleged violation thereof;

m) Annul in part the Award under Article 52(1)(e) of the ICSID Convention, insofar as it relates to the determination of Damages, insofar as there is a clear failure to state reasons to understand the assessment made by the Tribunal, including the date of the investment and the date of valuation;

n) Annul the Award under Article 52(1)(b) of the ICSID Convention, on the ground that the Tribunal committed a manifest error of assessment by awarding damages contrary to its findings on quantum;

o) Annul the Award in its entirety under Article 52(1)(d) of the ICSID Convention, for serious breach of essential procedural requirements in that the Tribunal committed multiple procedural violations concerning the evidentiary activity and the evaluation of evidence developed in the Arbitration;

p) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention for repeated failure to state reasons in relation to the evidentiary activity and the evaluation of the evidence developed in the Arbitration

306. The Kingdom of Spain considers that the consideration by it of the facts described in this Memorial as constituting a certain ground for the annulment of Article 52(1) of the ICSID Convention does not prevent the *ad hoc* Committee from annulling the Award on the grounds that such facts constitute a ground for annulment different from Article 52(1) of the ICSID Convention."

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 27 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

95.    The relief sought by Spain in the Reply and in the PHB is the following:[3]

(1.) Annul the Award in its entirety under Article 52(1)(b) for:

       i.    a manifest excess in powers for conferring international protection on those investors with unclear hands;

     ii.    a manifest excess in powers by conferring protection on investors that acted on the basis of deceit and fraud in their investment process;

---

[3] Summary of the Reply, ¶430. The full text reads: "By virtue of the foregoing, the Kingdom of Spain respectfully requests the ad hoc Committee to annul the Award on the basis of the grounds and arguments set out in this Memorial and, in particular, that a) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal manifestly exceeded its powers by entering into the case and conferring international protection on one who is not entitled to it by coming to the Tribunal without clean hands; b) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal had manifestly exceeded its powers by completely and utterly disregarding the application of international jus cogens and conferring protection on those who had acted on the basis of deceit and fraud in their investment process; c) Annul the Award in its entirety under Article 52(1)(e) for lacking any expression of reasons for determining that the installed capacity is less than 50MW, thereby accepting the Claimants' misleading and fraudulent statement without justification; d) Annul the Award in its entirety under Article 52(1)(e) for Failure to state reasons, as the "reasons" given by the Tribunal to support that the installed capacity is less than 50MW are manifestly insufficient, inadequate and blatantly contradictory; e) annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal manifestly exceeded its powers by rejecting the intra-EU objection and entering into a dispute between an EU Member State and Claimants from another EU Member State to which neither the United Kingdom nor the Kingdom of Spain had consented; f) Annul the Award in its entirety under Article 52(1)(e) for failure to state reasons as to why it considers that the Tribunal has jurisdiction to hear a dispute between an alleged investor from an EU Member State and an EU Member State; g) annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention, on the grounds that the Tribunal manifestly exceeded its powers by disregarding the application of applicable international law, including the ECT itself, and totally disregarding the application of the entire EU Law; h) annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention, for failure to state reasons as to why it disregards the application of aplicable international law, including the ECT itself, and why it disregards the application of the entire EU Law altogether; i) Annul the Award in its entirety under Article 52(1)(b) of the ICSID Convention on the grounds that the Tribunal manifestly exceeded its powers by manifestly misapplying the applicable law to be taken into account in assessing legitimate expectations; j) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention for failure to state reasons in the findings on liability which determines that there are serious deficiencies in the Award as to the interpretation of how Article 10(1) of the ECT is to be applied; k) annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention, on the grounds that the Award gives contradictory reasons concerning the Claimants' expectations regarding the immutability of the regulatory framework under which they made their investment and the alleged breach thereof; l) annul the Award under Article 52(1)(b) of the ICSID Convention on the grounds that the Tribunal manifestly exceeded its powers by awarding damages contrary to its own findings on quantum; m) Annul the Award in its entirety under Article 52(1)(d) of the ICSID Convention for serious breach of essential procedural requirements insofar as the Tribunal committed multiple procedural breaches in relation to the evidentiary activity and the evaluation of evidence in the Arbitration; n) Annul the Award in its entirety under Article 52(1)(e) of the ICSID Convention, for repeated Failure to state reasons in relation to the evidentiary activity and the evaluation of the evidence developed in the Arbitration; o) partially annul the Award under Article 52(1)(e) of the ICSID Convention, insofar as it relates to the determination of Damages, insofar as there is a clear failure to state reasons for the Tribunal's valuation, including the date of the investment and the date of valuation, or, in the alternative, reduce the damages in the amount and manner set out in this Memorial"; and Spain's PHB, ¶209.

  iii. a manifest excess in powers by rejecting the intra-EU objection and in hearing a dispute between EU member State and claimant from another EU Member State;

  iv. a manifest excess in powers by disregarding the applicable law including ECT and EU law;

  v. exceeding its powers by making an incorrect application of the law in assessing legitimate expectations;

  vi. awarding damages contrary to its findings on quantum;

(2.) Annul the Award in its entirety under Article 52(1)(e) for:

  i. Lack of expression of reasons for determining that the installed capacity was less than 50MW;

  ii. Providing "manifestly, insufficient, inadequate and openly contradictory" "reasons" for supporting that installed capacity of less than 50MW;

  iii. Failure to express reasons why the Tribunal consider that it had jurisdiction to hear a dispute between an alleged investor from an EU Member State and an EU Member State;

  iv. Failure to state reasons why it disregards the application of the ECT and EU law;

  v. Failure to state reasons in the findings on liability which determine that there are serious deficiencies in the Award as to the interpretation of Article 10(1) of the ECT;

  vi. For giving contradictory reasons concerning the expectations of InfraRed regarding immutability of the regulatory framework;

  vii. For failure to state reasons in relation to the evidentiary activity and the evaluation of the evidence developed in the Arbitration;

(3.) Annul the Award in its entirety under Article 52(1)(d) for serious breach of essential procedural requirements concerning the evidentiary activity of the Arbitration.

(4.) Annul the Award in in part under Article 52(1)(e), in its determination regarding damages, for failure to state reasons to understand the Tribunal's valuation, including the date of the investment and of the valuation, and subsidiarily, reduce the damages in the amount and matter proposed by Spain.

## IV.    SUMMARY OF SPAIN'S SUBMISSIONS

96.    Spain based its Memorial on Article 52(1)(b), (d) and (e) of the ICSID Convention, alleging:

> "a. Manifest excess of powers and failure to state reasons under Article 52(1)(b) and 52(1)(e) of the ICSID Convention, respectively, as the Tribunal did not have jurisdiction in respect of a claim brought by European Union ("EU") corporations against an EU Member State. There was not only an excess of powers, but also a failure to state adequate reasons and open contradictions in the statements in the Award […];
>
> b. Manifest excess of powers and failure to state reasons, pursuant to Article 52(1)(b) and 52(1)(e) of the ICSID Convention, respectively, as the Kingdom of Spain alleged and duly proved that the Claimants committed a gross fraud in their investment by accessing through false and fraudulent statements to subsidies to which they were not entitled […];
>
> c. Manifest excess of powers and failure to state reasons, pursuant to Article 52(1)(b) and Article 52(1)(e) of the ICSID Convention, respectively, because, under Article 10(1) of the Energy Charter Treaty the Court's determination of liability for breach of the obligation of fair and equitable treatment ("FET") was inconsistent and contradictory, unreasonable and unfounded. It failed to apply the appropriate law, in particular, the EU State Aid Law […];
>
> d. Manifest excess of powers and failure to state reasons, in accordance with Article 52 (1) (b) and 52 (1) (e) of the ICSID Convention […] as if EU law is understood to have been applied (quod non) there is a misapplication of the applicable law since the assessment of legitimate expectations must include whether a grant is lawful under the law applicable to the dispute, and under national law […];
>
> e. Failure to state reasons in accordance with Article 52(1)(e) of the ICSID Convention to the extent that in determining whether an investor might have a legitimate expectation the minimum required of an investment arbitration tribunal is that it reasonably determines when the investment should be deemed to have been made and what the valuation date is so as to be able to analyze the expectations it might have at that date and quantify the "damage", […] the Tribunal condemns the Kingdom of Spain to pay millions of euros for the breach of InfraRed's expectations without having justified the date of its investment and the date of valuation;

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 30 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

f. Failure to state reasons, pursuant to Article 52(1)(e) of the ICSID Convention, because the Tribunal's determination of damages was inconsistent and contradictory, unreasonable and without foundation;

g. Serious departure from a fundamental rule of procedure under Article 52(1)(d) of the ICSID Convention for: (i) allegedly obliterating the evidence presented by the Kingdom of Spain without assessing it, (ii) for allegedly shifting the burden of proof and making the Kingdom of Spain "prove its innocence", by determining that "any non-existent or non-produced document is contrary to its interests"; and (iii) by failing to "analyze the evidence submitted, the existing case law in Spain on the changeability of subsidies within the principle of reasonable return, the outcome of the hearing and to make even the slightest reference to the evidence or the transcripts of the hearing, thereby substantially infringing the Kingdom of Spain's right of defense." [4]

97.   Spain claimed that the Award has "several omissions, inherent contradictions and conclusions based on invalid or null premises,"[5] in relation to jurisdiction, liability and the quantification of damages. Spain further asserted that the Award was "primarily based on an [a]ward now annulled,"[6] and that all these alleged violations result in the "breach of fundamental rules of procedure" affecting Spain's rights of defense and fair trial.[7]

98.   In addition, in the Reply, Spain argued that it was exercising its right to request the annulment and not the appeal of the Award.

99.   It reiterated that its submission of the "manifest excess of powers" standard was in line with all the precedents that have applied and analyzed Article 52 of the ICSID Convention and alleged that it had not waived its rights under the ICSID Convention.[8]

100.   Contrary to InfraRed's interpretation limiting this ground for annulment beyond what is permitted by the ICSID Convention, the Applicant argued in the Reply that it had submitted "a very wide range of precedents to support the invoked grounds for annulment."[9]

---

[4] Memorial, ¶3.
[5] Memorial, ¶5.
[6] Memorial, ¶5.
[7] Memorial, ¶5.
[8] Reply, ¶¶16-35.
[9] Reply, ¶¶ 40-42.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 31 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

## A. BACKGROUND AND CONTEXT

101. Spain pointed to InfraRed's investments in solar thermal plants (Olivenza 1 and 2 and Morón 1 and 2, jointly the "**Plants**"), indicating that this took place "on an undetermined date." Spain complained that the Award did not specify the reason for taking the "28 July 2011"[10] as the date of the investment.[11]

102. Spain argued that the Tribunal relied only on footnote 8 of the Award that referred to page 4 of the Quantum Brattle Report.[12] But that page 4 of the Quantum Brattle Report "says nothing about the date of the investment."[13] It also argued that the Award incorrectly made reference to "an alleged 2010 agreement", "indicating that the fact that '*de facto'* had not legally binding effects under Spanish law or that the exchanges were part of a larger consultative process required by Spanish administrative law is not decisive for this arbitration."[14]

103. Spain asserted that regarding jurisdiction, the Award "wrongly and unfairly rejected the intra-EU objection."[15] On liability, Spain recalled the position of the Parties that InfraRed expected a stable regulatory regime. "Stable" meaning "no change in the RD 661/2007."[16] Spain argued that there was no commitment of stabilization, and that the legitimate expectations must be objective and derived from specific circumstances at the time of the investment,[17] and in any case, the host state has the right to review its regulatory regime to respond to serious economic factors such as the financial crisis and tariff deficit issue, and "no subsidy regime could be expected to be maintained in the EU, which would be openly opposed to the legal system of State aid."[18]

104. It further argued that the Award erred in referring to the *Eiser* award which had been annulled. The Applicant indicated that the Award "justifies the 'legitimate expectations' and the alleged breach of the Fair and Equitable Treatment ["**FET**"]

---

[10] RL-0116, Previous Annex-001, *InfraRed Environmental Infrastructure GP Limited and Others v. The Kingdom of Spain*, ICSID Case No. ARB/14/12, Award, August 2, 2019, p. 7.
[11] Memorial, ¶33.
[12] Memorial, ¶33.
[13] Memorial, ¶¶33 and 35.
[14] Memorial, ¶ 34 quoting Award, ¶ 427.
[15] Memorial, ¶36.
[16] Memorial, ¶37.
[17] Memorial, ¶¶37-38.
[18] Memorial, ¶38.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 32 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

requirement on the basis of non-existent of contradictory and inconsistent criteria […] without even entering into an analysis of EU law and its application to the case."[19]

105.    Spain quoted the Tribunal's decision that there was no legitimate expectation of a freeze of the Original Regulatory Framework[20] with regard to the remuneration system, nor the enactments. Spain considered that the Tribunal contradicted itself when it indicated that "the essence of the breach does not consist of a reasonable rate of return variation, but in frustration of Claimants legitimate expectation that the Morón and Olivenza plants would be protected from revisions from the regulated tariff, the market price plus premium"[21], as well as the limits of RD 661/2007.[22]

106.    The Memorial further stated that despite the use of the DCF valuation method, the Tribunal "dispenses with the application of regulatory risk principles and the illiquidity discount;" this aspect generated a dissenting opinion on damages.[23] The Applicant indicated that the Award did not include reasons affecting the calculation on damages, which merits an annulment on this point under Article 52(1) of the ICSID Convention.[24]

107.    Spain requested the annulment of the Award on three grounds provided in Article 52(1), namely: (b), (d) and (e) of the ICSID Convention.[25] Spain's position will be summarized in the following section.

### B.  MANIFEST EXCESS OF POWERS

108.    Spain submitted the following claims for annulment under the manifest excess of powers ground:

> "1. By disregarding and failing to apply international *jus cogens* by granting protection to Claimants who came to the Tribunal without clean hands, because Claimants had committed a significant fraud on their investment by acceding to subsidies to which they had no rights through false and fraudulent statements, they were prevented from being protected internationally;

---

[19] Memorial, ¶42.
[20] Memorial, ¶45 quoting Award, ¶537.
[21] Memorial, ¶45 quoting Award, p. 543.
[22] Memorial, ¶45.
[23] Memorial, ¶46.
[24] Memorial, ¶47.
[25] Memorial, ¶49.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

2. By going beyond its jurisdiction in contravention of EU law which prevents a company incorporated in an EU country from having a claim against an EU Member State (intra-EU objection);

3. By violating Article 10(1) TEC [26]by assuming jurisdiction and granting protection to the Claimants in an inconsistent manner, not applying the appropriate law, in particular, the EU State Aid Law;

4. If EU law is deemed to have been applied (*quod non*), there is an incorrect application of the applicable law and a total failure to assess the Spanish legal system applicable to investors, which qualifies as manifestly exceeding their powers." [27]

1. <u>Introduction</u>

109.    In relation to the standards of interpretation of the grounds for annulment, Spain's position is that Article 52(1)(b) is breached when a tribunal exceeds its powers initially granted by the parties' consent, when the tribunal omits to apply the appropriate law, or when the tribunal exceeds or lacks jurisdiction, or rules on a matter in which it does not have jurisdiction.[28]

110.    By quoting the decision from the committee in *Soufraki*, Spain explained its position that misapplication implies a "serious and consequential misinterpretation or misapplication of the correct law, which no reasonable person (*bon père de famille*) could accept."[29] In Spain's view, the Committee should review "what the court has claimed to have done [and] what the Tribunal actually did in its effective reasoning"[30] meaning that there might be situations in which, despite the correct application of the law, a manifest excess of powers may still exist if it is evidenced that the Tribunal "did not effectively apply the principles it had recognized."[31]

---

[26] The Committee prefers to refer to the Energy Charter Treaty as "ECT", and therefore any reference by a Party to "TEC" corresponds to the same treaty.
[27] Memorial, ¶50.
[28] Memorial, ¶52.
[29] Memorial, ¶54 quoting RL-0086, Previous Annex-004, *Hussein Nuaman Soufraki v. The United Arab Emirates*, ICSID Case No ARB/02/7, Decision of the Ad hoc Committee on the Application for Annulment, June 5, 2007, ¶ 86.
[30] Memorial, ¶55.
[31] Memorial, ¶55.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 34 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

111.    Moreover, the reference to "manifest" is to be understood as being demonstrated if it is "easy to understand."[32] Spain also argued[33] that a "manifest excess of powers" occurs when the Tribunal disregards the applicable law, or its misinterpretation or misapplication of the law is "so gross or egregious that it substantially amounts to a failure to apply the correct law."[34]

112.    Spain quoted the committee in *Iberdrola v. Guatemala* to say that "the Committee should review what the court has actually analyzed and argued […] The mere assertion by the court that it was applying the relevant law, or the absence of it, is not sufficient to decide on the matter"[35]. It further argues that the *Klöckner I v. Indonesia* committee's decision conveyed the same idea.

113.    Spain then indicated that in the *Sempra* committee's decision the fact that "the Tribunal has not conducted its review on the basis that the applicable legal standard is found in Article XI of the BIT" was emphasized,[36] and in *Amco I*, the tribunal did not apply Indonesian law to the calculation of damages.[37]

114.    Spain also referred to the *Enron* committee decision when it determined that "the Tribunal did not in fact apply Article 25(1)(a) of the Articles on State Responsibility (or, more precisely, the customary international law that that provision reflects), but instead relied on an expert opinion on an economic issue"[38] to exemplify a case of excess of powers. It further mentioned the *Venezuela Holdings* annulment committee that found that the court "had not applied the correct law, nor had it given reasons."[39]

---

[32] Reply, ¶48.
[33] Memorial, ¶53.
[34] RL-0086, Previous Annex-004, *Hussein Nuaman Soufraki v. The United Arab Emirates*, ICSID Case No ARB/02/7, Decision of the ad hoc committee on the application for annulment, June 5, 2007, ¶86; RL-0117, Previous Annex-005, *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for Annulment of the Award, June 29, 2010.
[35] Memorial, ¶55, quoting *Iberdrola Energía v. Guatemala*, ICSID Case No. ARB/09/5, Decision on the Application for Annulment, January 13, 2015, ¶ 97.
[36] Memorial, ¶59 quoting *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on Annulment, June 29, 2010, ¶ 209.
[37] Memorial, ¶58.
[38] Memorial, ¶61 quoting *Enron*, Decision on the Application for Annulment dated July 30, 2010, ¶ 377.
[39] Memorial, ¶63, quoting *Venezuela Holdings B.V. and others v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/27, Decision on Annulment dated March 9, 2017, ¶¶ 162, 188(a), 188(c) (*Venezuela Holdings*). *See also id.,* ¶¶ 180, 187, 188(a), and 178, 179-184.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 35 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

115.    Similarly, Spain referred to the *Occidental v. Ecuador* annulment committee that partially annulled that award for an inadequate award of compensation and indicated that the reasoning in that decision was applicable to the analysis of the present Committee. [40] Spain quotes this decision to state that "excess of powers can be committed both by overreach and by default"[41] and considers that to accept jurisdiction when it has not is clearly a manifest excess of powers,[42] as is the case with intra-EU disputes. She argued that the present case merited the annulment on its entirety and only in the alternative "should it be partially annulled and corrected."[43]

    2.    <u>Manifest excess of powers by conferring protection to investors with unclean hands and by disregarding the application of international ius cogens and conferring protection on those who had acted on the basis of deceit and fraud in their investment process</u>

116.    In its submission, Spain indicated that there is concurrence with the grounds of annulment. It explained that the "doctrine of clean hands restricts the exercise of a right in cases where the person invoking it has acted in bad faith, fraudulently or illegally,"[44] and that it constitutes a general principle of international law applicable to every investment and every claim.[45]

117.    In the *Plama* case, the tribunal stated that despite the fact that the Energy Charter Treaty ("**ECT**") did not make explicit reference to the "conformity of the investment with a particular law" this factor did not mean that the "ECT covers all kinds of investment, including those contrary to the domestic or international law."[46] Spain held that the *Plama* case is "identical to the InfraRed case in which the Claimants made conscious misrepresentations to benefit from a subsidy system to which they would not have been entitled without that misrepresentation."[47]

---

[40] Memorial, ¶66.
[41] Memorial, ¶65 and RL-0153, *Occidental Petroleum Corporation & Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID Case No. ARB/06/11, Decision on Annulment of the Award, November 2, 2015, ¶¶ 48-50.
[42] Reply, ¶29.
[43] Memorial, ¶67.
[44] Memorial, ¶69.
[45] Memorial, ¶71.
[46] Memorial, ¶ 71, quoting RL-0018, *Plama Consortium Limited v. Republic of Bulgaria,* ICSID Case No. ARB/03/24, Award, August 27, 2008, ¶138.
[47] Memorial, ¶75.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 36 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

118.    Spain further argued that this reasoning synthesized the idea of clean hands and was applicable to the InfraRed case.[48] According to the Applicant, Article 27 of the 1997 Law [49] required as an "essential condition" that to be eligible under RD 661/2007[50], the facilities had an "installed capacity [not] exceeding 50 MW" [51]. Under the Applicant's view, InfraRed committed severe misrepresentations by declaring that "its installed capacity was 50 MW, although it was considerably higher." [52] By doing such "misrepresentations", and according to Professor Demetrio Report ("**Demetrio Report**")[53] InfraRed incurred in two criminal offenses: (i) subsidy fraud, and (ii) a crime of falsehood in a public document.[54]

119.    Spain referred to Article 26(6) ECT, Article 42 of the ICSID Convention, and Article 38 of the International Court of Justice ("**ICJ**") Statute to conclude that there was "an absolute prohibition on benefiting from illicit and fraudulent acts"[55] and therefore, InfraRed "and its bad faith in investment violates the most elementary principles of international law." [56] As such, the Award conferred international protection to perpetrators of such misrepresentation.[57]

120.    Accordingly, Spain concluded that the Tribunal should annul the Award and declare that the "Arbitral Tribunal had no jurisdiction to hear the dispute or revoke it on the ground that essential principles of international law and *jus cogens* had not been applied [...]."[58]

121.    In addition, Spain reiterated in its Reply that the Tribunal committed a manifest excess of powers when it granted international protection to someone with unclean hands,[59]

---

[48] Memorial, ¶74.
[49] R-0003, Law 54/1997 of 27 November 1997 on the Electricity Sector.
[50] R-0062, Royal Decree 661/2007 of 25 May 2007.
[51] Memorial, ¶76 quoting RL-0157, *Nextera Energy Global Holdings BV and Nextera Energy Spain Holdings BV v. Kingdom of Spain*, ICSID Case No. ARB/14/11, Decision on Jurisdiction, Liability and Quantum Principles, March 12, 2019. Annex A of the Award, ¶270, which mentions the Counter-Memorial on the Grounds of the Respondent, ¶¶113-116.
[52] Memorial, ¶77; Reply, ¶61
[53] The Demetrio Report has been submitted on the record of this proceeding with the Memorial.
[54] Memorial, ¶78; see also Spain's PHB, ¶¶168-173.
[55] Memorial, ¶83.
[56] Memorial, ¶84.
[57] Reply, ¶62.
[58] Memorial, ¶86; Reply, ¶50.
[59] Reply, ¶50.

such as in InfraRed case that accessed to a privilege subsidy scheme through false declarations[60] which leads to a declaration of lack of jurisdiction.

122.  Spain emphasized in its Reply that "it is clear that the Tribunal not only failed to apply or interpret international jus cogens, but also closed its eyes to the fact that one of the largest law firms in Spain had warned that the plants were in a situation of over-powering and that the installed capacity and the nominal power plate should coincide. By not matching them, a fraud and misrepresentation of the real installed capacity was committed in order for InfraRed to benefit illegally from a privileged subsidy regime to which it was not entitled."[61]

123.  Spain also claimed that the Tribunal "did not elaborate on the matter and merely made reference to the *Eiser* award, which has been annulled."[62]

124.  Contrary to InfraRed's submission, Spain contended in its Reply that the issue of clean hands was essential during the proceeding to the extent that it was raised as a preliminary question before going into the merits in section VI.A of the Award.[63] The effect of having a capacity higher or lower than 50MW was central to the proceeding,[64] and Spain demonstrated that the capacity was higher and that the Claimants had fraudulently altered the nameplate indicating the installed capacity.[65]

125.  Spain further added that it never waived this argument,[66] and the proof of this was that some of the relevant awards on the theory of "clean hands", such as the *Plama v. Bulgaria* award, were included in the record.[67]

    3.  <u>Manifest excess of powers by not accepting the intra-EU objection and hearing a dispute between claimants from an EU Member State and an EU State</u>

126.  Spain argued that the Tribunal did "exceed its powers by going beyond its jurisdiction"[68] when hearing a case between a company from an EU Member State and

---

[60] Reply, ¶51.
[61] Reply, ¶83.
[62] Reply, ¶51.
[63] Reply, ¶59.
[64] Reply, ¶¶ 60-61.
[65] Award, pp. 327-331.
[66] Reply, ¶65.
[67] Reply, ¶68.
[68] Memorial, ¶87.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 38 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

a Member State, breaching EU law. Spain quotes the report of Professor Gosalbo ("**Gosalbo Report**")[69] to explain why the Tribunal had no jurisdiction to hear the InfraRed claim.

127.  Contrary to InfraRed position, previous awards in similar cases, are not relevant, as "the real sources of international law are (a) the Conventions; (b) the International Custom and (c) the General Principles of Law"[70] and therefore "judicial decisions are not source of public international law."[71] And what is more, the "parrot effect" had allowed more recent judicial decisions to reproduce blindly what others have decided previously, although erroneously.[72]

128.  Spain argued that the principle of primacy of EU law, stated in Declaration 17 of the Treaty on the Functioning of the European Union ("**TFEU**")[73], mandates that "within the EU, the Member States have decided that, for the purposes of self-organization and as a necessary precondition for their integration, EU law should apply to intra-Community matters, while international conventions remain in force for relations with third countries."[74]

129.  It further argued that the EU has followed a practice to regulate intra-Community affairs through its internal legislation.[75] Such practice began with "the decision of the EUJ in the *Van Geend & Loos* case[76] which established the principle of autonomy of EU law and was confirmed by the judgment of the EUJ *Costa/ENEL*[77] which declared the principle of the primacy of EU law to be beyond doubt."[78]

---

[69] The Gosalbo Report has been submitted on the record of this proceeding with the Memorial.
[70] Memorial, ¶91.
[71] Memorial, ¶90; Spain's PHB, ¶¶ 48-49.
[72] Memorial, ¶90; Spain's PHB, ¶ 48.
[73] R-0006, Previous Annex-044, EU Treaty, Treaty on the Functioning of the EU and Charter DD.FF. EU. 26 October 2012. Consolidated versions of the Treaty on the Functioning of the EU; Spain's PHB, ¶54.
[74] Memorial, ¶92; Spain's PHB, ¶¶ 29-37.
[75] Memorial, ¶94.
[76] RL-0156, Judgment of the ECJ of 5 February 1963 in Case C-26/62, *Gend & Loos v. Nederlandse administratie der belastingen*.
[77] R-0190, Judgment of the ECJ of 15 July 1964, in Case 6/64, *Flaiminio Costa v. ENEL*; Judgment of the Court of Justice, AETR, Case 22/70, *Commission v. Council* [1971] ECR 263 (*AETR/ERTA*), 31 March 1971. This priority has also been reflected in the inability of Member States to individually negotiate international treaties in matters where Community law exists as reflected in the so-called AETR doctrine.
[78] Memorial, ¶95; Spain's PHB, ¶¶ 17-22.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 39 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

130. Spain sustained that "even according to the General Principles of International Law, there is no possibility of investment arbitration in intra-EU cases."[79] The EU Member States agreed on accepting the primacy of EU law and that agreement is binding according to the *pacta sunt servanda* principle.[80]

131. Spain referred to the judgment of the Court of Justice of the European Union in Case C-284/16, Republic of Slovakia/Achmea BV, dated March 6, 2018 ("***Achmea Judgment***")[81] which states that "Articles 267 and 344 of the TFEU are to be interpreted as prohibiting a provision in an international agreement concluded between Member States, such as Article 8 of the BIT, under which an investor of one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an Arbitral Tribunal whose jurisdiction that Member State has undertaken to accept."[82] This was reinforced by the Declaration between the United Kingdom and Spain together with other 20 Member States and the EC ("***Achmea* Declaration**").[83]

132. Therefore, the Tribunal exceeded its power by assuming that in absence of a "disconnection clause" it could not conclude that EU's ratification of ECT replaced the consent individually granted by EU Member States to the ECT.[84] The Tribunal decided that "the ECJ implicitly confirmed the validity of international agreements […] providing that the autonomy of the Union and its legal system is respected." [85] According to Spain, this was an erroneous reasoning because the "constant jurisprudence on this issue" does not support the Award reasoning as shown with the annulment of *Eiser*.[86]

---

[79] Memorial, ¶96; Spain's PHB, ¶¶75-79.
[80] Memorial, ¶96; Spain's PHB, ¶¶75-79.
[81] RL-0119, Previous Annex-007, Judgement of CJUE (Court of Justice of the European Union) Case C-284/16, Republic of Slovakia/Achmea BV, 6 March 2018.
[82] Memorial, ¶97 quoting RL-0119, Previous Annex-007, Judgement of CJUE (Court of Justice of the European Union) Case C-284/16, Republic of Slovakia/Achmea BV. 6 March 2018, ¶ 60.
[83] Memorial, ¶98 quoting RL-0113, Declaration by the representatives of the Member States on the legal consequences of the judgment of the Court of Justice in the Achmea case and on the protection of investments in the European Union, 15 January 2019; Spain's PHB, ¶¶60-65, and 158-167.
[84] Memorial, ¶99.
[85] Memorial, ¶100.
[86] Memorial, ¶101.

133.    This was reiterated by the *Achmea* Declaration[87] and, more recently by the judgement of the Grand Chamber of the Court of Justice of the European Union of September 2, 2021, issued in the Case *C-741/19, Republic of Moldova v. Komstroy*.[88]

134.    Spain considered that "the issues analysed by the EU Court of Justice in the *Moldova v. Komstroy* Judgment go to the very core of a particularly relevant ground for annulment raised by the Kingdom of Spain: that the Tribunal manifestly lacked jurisdiction for this intra-EU case and therefore committed a manifest extralimitation."[89]

135.    Spain also quoted from the above judgement the CJEU's clear conclusion that there never was an offer to arbitrate made by Spain to intra-EU investors: "Article 26(2)(c) ECT must be interpreted as not being applicable to disputes between a Member State and an investor of another Member State concerning an investment made by the latter in the first Member State."[90]

136.    Spain also posited that the Tribunal did not analyze all the rules of interpretation provided for in Article 31 of the Vienna Convention on the Law of Treaties ("**VCLT**"), arguing that the only good faith interpretation of the VCLT would deny the possibility of an intra-EU arbitration of the basis of the ECT,[91] and merely stated that there was no disconnection clause. It also misapplied Article 1(3) of the ECT and the transfer of competences from states to the EU, which therefore resulted in an "inappropriateness of the application of the Article 26 ECT to the intra-EU disputes."[92]

---

[87] To the contrary, InfraRed by letter of August 3, 2021, called the attention of the Committee to the decision rendered by the *ad hoc* committee in the annulment proceeding of the award rendered in *Infrastructure Services Luxembourg S.à r.l. and Energia Termosolar BV (formerly Antin Infrastructure Services Luxembourg S.à r.l. and Antin Energia Termosolar BV) v. Kingdom of Spain* (ICSID Case No. ARB/13/31). The Decision was rendered on July 30, 20211 and made public on August 2, 2021, through *IA Reporter* (*https://www.iareporter.com/articles/100-million-eur-antin-v-spain-award-withstands-annulment-shortly-after-the-european-commission-lodges-investigation-into-the-underlying-award/*).

[88] The Committee has been made aware of the judgement by a letter from Spain, received on September 10, 2021.

[89] Spain letter received by the Committee on September 10, 2021.

[90] *Ibid*.

[91] Spain's PHB, ¶¶ 38-47.

[92] Memorial, ¶104; Spain's PHB, ¶¶102-114.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 41 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

137.    In a subsidiary way, Spain argued that if Article 26 ECT was deemed to cover intra-Community disputes, such interpretation would conflict with EU law, and that conflict must be resolved in favor of EU law.[93]

138.    Spain quoted the *Achmea* Judgement to indicate that "the EU Treaties have always prohibited EU Member States from offering to settle investor-state disputes within EU before international arbitration tribunals"[94] and this prohibition includes multilateral agreements such as the ECT. However, according to Spain, the Tribunal refused to give proper value to the *Achmea* Judgement.[95]

139.    The principle of primacy of EU law operates as conflict rule under international law, meaning that "ECT cannot be applied in intra-Community relations,"[96] as in the present dispute, that concern "purely intra-EU relations and does not involve any third country or its investors."[97] Spain's position is that Article 26 ECT is not applicable and could not have led to a valid arbitration agreement.

140.    In conclusion, Spain argued that the Award should be annulled pursuant to Article 52(1)(b) of the Convention because the Tribunal exceeded its power by declaring jurisdiction in an intra-EU dispute.[98]

141.    In addition, Spain insisted in the Reply that it was "not using this procedure as an appeal or re-arbitrating the dispute." Spain was "not asking this Committee to correct the Tribunal's incorrect understanding of the disputed measures or of the concept of reasonable profitability in the Spanish regulation of the Electricity Sector."[99] The Applicant was simply "asking this Committee to determine whether the Tribunal declared its jurisdiction beyond what it was entitled to under international law."[100]

142.    Spain reiterated that the Tribunal incurred in this ground by omitting the fact that according to ECJ "there is no possibility of investment arbitration between a company

---

[93] Memorial, ¶105.
[94] Memorial, ¶107.
[95] Memorial, ¶108.
[96] Memorial, ¶111; Spain's PHB, ¶¶84-87.
[97] Memorial, ¶111.
[98] Memorial, ¶114; Reply, ¶¶52-56.
[99] Reply, ¶98.
[100] Reply, ¶98.

of a EU Member State and a Member State."[101] The Applicant stated in the Reply that the fact that previous tribunals have ruled similarly to the Award was not a serious argument against what InfraRed defended.[102] As indicated by Spain, Article 25 of the ECT recognized the primacy of EU law,[103] and therefore, in accordance with the conflict rule in the TFEU, Article 26 of the ECT could not be applied in intra-EU relations.[104] In other words, the Award did not recognize the primacy of EU law. The European Commission, in its *amicus curiae* brief, submitted as authorized by the Committee by PO 5, sided with Spain and stated that "the Arbitral Tribunal manifestly exceeded its powers by finding that the intra-EU application of the ECT was compatible with the EU Treaties, and that the findings of the CJEU in *Achmea* did not apply to the ECT. It should have found the contrary and declined jurisdiction. The award therefore should be annulled pursuant to Article 52(1)(b) ICSID Convention."[105]

143.    As a consequence, the Commission posits that "the Arbitral Tribunal has committed a further manifest error, which has to lead to the annulment of the Award. It has disregarded the findings in paragraphs 159 to 166 of Commission Decision SA.40348. As set out above at paragraph 82, that Decision is manifestly part of the law to be applied by the Arbitral Tribunal. According to the constant interpretation of Article 52(1)(b) ICSID Convention, failure to apply a provision of the law applicable to the dispute constitutes a manifest excess of power pursuant to Article 52(1)(b) ICSID Convention."[106]

144.    In sum, the Tribunal exceeded its jurisdiction by:[107]

> "(i) failing to give a literal interpretation of Article 26 of the ECT in accordance with the object and purpose of the Treaty; (ii) by failing to give a systematic interpretation of Articles 1, 10, 16, 25, 26 and 36 of the ECT, in accordance with the object and purpose of the Treaty; (iii) by failing to assess, with a view to the interpretation of the above Articles, the context in which the ECT was drafted and adopted and the position taken by the European Union and by the two European States

---

[101] Reply, ¶¶84-96.
[102] Reply, ¶ 101.
[103] Reply, ¶¶ 108-115.
[104] Reply, ¶¶117-125; Spain's PHB, ¶¶115-157.
[105] European Commision Amicus Curiae Brief dated December 18, 2020, ¶98 ["EU Commission Amicus Curiae Brief"].
[106] EU Commission Amicus Curiae Brief, ¶99.
[107] Reply, ¶126.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 43 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

involved in this dispute; and (iv) by failing to apply the principles of the primacy and autonomy of EU Law, the EU Treaties and the interpretation made of them by the CJEU, thereby ignoring the fact that a clause such as that contemplated in Article 26 of the ECT cannot be applied to intra-EU disputes between two Member States of the Union, as such an interpretation is contrary to EU Law."

4. Manifest excess of powers by disregarding the applicable law: EU law must be applied to the merits of the dispute

145.    Spain alleged that on the merits there were also grounds of annulment since the Tribunal also exceeded its powers by disregarding the application of EU law.[108] By pointing to the Article 38 ICJ Statute, Spain argued that it necessarily led to the application of EU law and the TFEU provision related to state aid,[109] which had not been considered by the Tribunal.

146.    In addition, Spain argued that EU regulations on state aid were part of international custom applicable to EU Members, and that the Tribunal did not apply this source of international law. Instead, the Tribunal considered that EU state aid law was not "relevant to the analysis of whether the Spain violated a specific commitment made to the CSP sector,"[110] manifestly exceeding its powers.

147.    According to Spain, the Tribunal's analysis violated the ECT itself, ignoring other international treaties and Article 38 of the ICJ Statute, as Article 26(6) of the ECT indicates that arbitral tribunals should consider in their decisions "Treaties and applicable rules of international law in accordance with this Treaty and applicable rules of international law."[111] Spain posited that "the Award openly violates this rule and indicates that EU law is 'largely irrelevant', when the ECT indicates that the 'applicable rules of international law' must be applied."[112] In sum, the Tribunal omitted the application of the TFEU and of the EU state aid rules relevant for the decision.[113] Therefore, by denying the value of the EU treaties, the Tribunal exceed its powers.

---

[108] Memorial, ¶115.
[109] Memorial, ¶118.
[110] Memorial, ¶122 quoting Award, ¶443.
[111] Memorial, ¶126.
[112] Memorial, ¶127.
[113] Memorial, ¶128.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 44 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

148.    Spain reiterated in its Reply that according to Article 38 of the ICJ Statute the autonomy and primacy of EU law must be respected internationally.[114] This practice has been followed by EU Member States and the entire international community regarding the interrelationship between international treaties and EU law,[115] reflecting that EU law and the EU and the Member States have disconnected from international conventions in favor of EU law for intra-EU matters, providing for many examples. This disconnection is precisely an external aspect of the autonomy and primacy of EU law in regulating intra-EU matters, also confirmed by the *travaux préparatoires* of the ECT,[116] and constitutes a practice that has been respected not only by Member States but also by third States.

149.    Spain argued that this practice must also be respected by arbitration tribunals, which cannot act outside and contrary to the first source of international law or ignore EU law. Nonetheless, Tribunal described EU law in the Award as "highly irrelevant", thereby underlining the fact that the Award itself must necessarily be annulled because it disregards the applicable law.[117]

150.    Also in its Reply, Spain explained that there is an *opinio juris* on the autonomy and primacy of EU law,[118] there is a practice by EU Member States of respecting the EU legal regime on state aid as part of the core of the EU and "must be considered "highly relevant" as, for example, the *BayWa* award does.[119]

    5.    <u>Manifest excess of powers by making a manifestly incorrect application of the applicable law in assessing legitimate expectations.</u>

151.    In a subsidiary way, Spain alleged that in case it is considered that EU law has been applied by the Tribunal, "this would have resulted in a grotesque and incorrect application of EU law that should lead to the annulment of the Award"[120] because, the "aid schemes for renewables should have been notified to the European Commission

---

[114] Reply, ¶¶ 169-173.
[115] Reply, ¶¶ 175-192; Spain's PHB, ¶¶70-74.
[116] Reply, ¶¶ 192; Spain's PHB, ¶¶ 177-187.
[117] Reply, ¶194-197.
[118] Reply, ¶ 198-210.
[119] See RL-0236, *BayWa r.e. renewable energy GmbH and BayWa r.e. Asset Holding GmbH v. Kingdom of Spain*, ICSID Case No. ARB/15/16, Award, January 25, 2021, p. 569.
[120] Memorial, ¶133.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 45 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

and they were not,"[121] and this implies that "under EU law, there was no legitimate expectation that this subsidy would remain petrified."[122] Therefore, by disregarding state aid regulations, the Tribunal also incurred in a manifest excess of power.

152.    Spain recalled in the Reply that the Spanish subsidy scheme that InfraRed invoked in the Arbitration was set up in accordance with Directive 2001/77[123]. Therefore, in accordance with the state aid guidelines and pursuant to Article 4 of this Directive, the subsidies were state aid, which had to be communicated to and approved by the European Commission.[124]

153.    Like in *BayWa v. Spain,*[125] the original regime of RD 661/2007 was illegal as it had not been communicated to the EC. It is common practice that no one can expect to consolidate a result that was not authorized by law at the time of the investment.[126]

154.    Despite this, the Award did not consider that, under EU law, without authorization, state aid is illegal, even though it was extensively debated in the Arbitration and explained in the EC's Decision. With manifest disregard for the TFEU, both as law and as fact, the Award indicated that this "right" to petrification of subsidies did exist.[127]

155.    In the PHB, Spain added that the "basis upon which the Arbitral Tribunal decided to hold Spain liable for its failure to comply with its obligations under the ECT is meritless, as according to the applicable law, under no circumstances there could be any 'legitimate expectations' to the continuance of the disputed subsidies for more than two decades, given that according to applicable EU state aid law they could be amended at whatever moment to adjust not only to the domestic law, but also, and even more relevant, to this special EU legal regime on State Aid."[128]

---

[121] Memorial, ¶134.
[122] Memorial, ¶135.
[123] R-0066, Directive 2001/77/EC of the European Parliament and the Council of 27 September 2001.
[124] Reply, ¶ 228.
[125] RL-0185, *BayWa r.e. renewable energy GmbH and BayWa r.e. Asset Holding GmbH v. Kingdom of Spain*, ICSID Case No. ARB/15/16, Decision on Jurisdiction, Liability and Directions on Quantum, December 2, 2019.
[126] Reply, ¶230.
[127] Reply, ¶¶225-227.
[128] Spain's PHB, ¶208.

156.   Therefore, by "manifestly misapplying EU law in both respects," Spain argued that the Tribunal had manifestly exceeded its powers for the purposes of Article 52(1)(b) of the ICSID Convention.[129]

    6.   Manifest error of assessment by awarding damages contrary to its findings on quantum

157.   Spain argued that there was a clear contradiction in terms of liability and damages, and that without justification the Tribunal adopted the DCF calculation proposed by Brattle rejecting the alternative solution by Accuracy.[130]

158.   Spain further stated that the Award "completely dispenses with the application of regulatory risk principles and the illiquidity discount,"[131] and quoted the dissenting opinion of Professor Pierre-Dupuy in footnote 782 of the Award.

159.   This position has been repeated and developed in the Reply, in which Spain stated that "The Kingdom of Spain continues to maintain that there is an indisputable inconsistency between the award's decision on damages and the damages actually calculated, which constitutes a ground for annulment of the Award under Article 52(1)(e) of the ICSID Convention, or as the case may be, under Article 52(1)(b) of that Convention."[132]

160.   Spain stated that, "as the case may be," the alleged facts might also constitute a manifest excess of powers that justifies the annulment of the award, under Article 52(1)(b) of the ICSID Convention.[133]

**C.   FAILURE TO STATE REASONS**

161.   In relation to the ground of failure to state reasons, in Article 52(1)(e), Spain argued that the Tribunal "failed to provide express, adequate and sufficient reasons concerning (1) the applicability of EU law, (2) the conclusions of the Court regarding the installed

---

[129] Reply, ¶238.
[130] Memorial, ¶247.
[131] Memorial, ¶248.
[132] Reply, ¶429.
[133] Reply, ¶429.

capacity of the plants, (3) the date of the investment, (4) the findings of the Court regarding liability, (5) and the quantification of the damages."[134]

### 1. Introduction

162. Spain explained at the outset the scope and content of Article 52(1)(e) of the ICSID Convention and its relationship with Article 48(3) of the same instrument. For that purpose, it indicated that annulment committees have "uniformly established" that Article 48(3) and 52(1)(e) require that the ruling allows the reader "to follow how the tribunal proceeded from Point A. to Point B."[135] It further quotes *Amco I* to clarify that "supporting reasons must be more than a matter of nomenclature and must constitute an appropriate foundation for the conclusions reached through such reasons".[136]

163. In this regard, Spain, by quoting the *Sempra v. Argentina* committee, stated that "the task of the *ad hoc* committees under Article 52(1)(e) is to determine whether there is a comprehensive and consistent reasoning on the part of the tribunal."[137] Equally relevant is the need to ensure that parties are able to understand a ruling, as the *Tidewater* committee recognized,[138] and the *Soufraki* committee clarified that "insufficient and inadequate reasons lead to [...] annulment."[139]

164. After referring to case law on this point, the Applicant concluded that Articles 48(3) and 52(1)(e) of the Convention also imposed an obligation on a court to deal with "the issues, arguments and evidence presented" and therefore, "failure to deal with certain relevant evidence or facts" amounts to a failure to state reasons as a ground for annulment.[140]

---

[134] Memorial, ¶139.
[135] Memorial, ¶141 quoting RL-0124, Previous Annex-016, *Maritime International Nominees Establishment (MINE) v. Government of Guinea*, ICSID Case No. ARB/84/4, Decision on the Application by Guinea for Partial Annulment of the Arbitral Award, December 14, 1989, ¶5.09 ("*MINE*").
[136] Memorial, ¶141 quoting RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, 1 ICSID REPORTS 509 (1993), ¶43.
[137] Memorial, ¶142.
[138] Memorial 143 quoting *Tidewater Investment SRL and Tidewater Caribe, C.A. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/10/5, Decision on Annulment, December 27, 2016, ¶¶164-165.
[139] Memorial, ¶144.
[140] Memorial, ¶149.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

165.   In the Reply, Spain cited further case law that has considered this ground as a justification for annulment.[141]

   2.   <u>Failure to state reasons as to why the Award disregards the application of EU law, both in the determination of lack of jurisdiction (to hear a dispute between an alleged investor from a EU Member State and a EU Member State) of the Tribunal, and to the merits</u>

166.   Spain argued that there is a concurrence of the grounds of annulment because, as explained, during the Arbitration it argued that EU law was applicable, affecting both jurisdiction and the merits.[142] However, the Tribunal "does not answer these questions and the few observations it makes, are manifestly contradictory."[143]

167.   In Spain's view the Tribunal contradicted itself when it recognized that EU is "an undeniable part of the body of international law" but at the same time declared that "the provisions of EU law are neither dispositive nor relevant to the resolution of the questions raised" in the present dispute.[144]

168.   Spain reiterated in its PHB that the Award did not address the issue of primacy of EU law over the ECT. Nor did it address the topic of which treaty would be considered more favorable to the investors of the investment, as per Article 16 of the ECT.[145] Nor it examined why the ECT should be considered more favorable than the regime of EU law.[146] Specifically, Spain argued that "the ECT was ratified by Member States and the EU on the understanding that the ECT would not apply to intra-EU controversies and that the principle of the primacy of EU law was going to be accepted and respected as customary it has been respected in the international order."[147] Therefore, the primacy of the EU was a conflict rule with priority over Article 16 of the ECT.[148]

---

[141] Reply, ¶¶326-350.
[142] Memorial, ¶151.
[143] Memorial, ¶151.
[144] Memorial, ¶157 quoting the Award, ¶272; Reply, ¶¶ 357-358.
[145] Spain's PHB, ¶¶ 5-17.
[146] Spain's PHB, ¶¶ 84-92.
[147] Spain's PHB, ¶27.
[148] Spain's PHB, ¶97.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

169.  Spain posited that the Tribunal "rejects the application of EU law as 'highly irrelevant' without giving any justification."[149] In this aspect, Spain quoted paragraph 443 of the Award that states that "[t]he Tribunal is prepared to accept that remuneration under the Special Scheme may have been considered as 'State aid'", the purpose of which is to provide investors with a reasonable rate of return. But this is not relevant to the analysis of whether Spain violated a specific commitment made to the CSP sector."[150]

170.  The Tribunal did not explain "why it understands that there is 'no indication' that the subsidy scheme […] could be changed."[151]

171.  After declaring that EU law was applicable, the Award rejected the application of the TFEU and its Articles 107 and 108 and the state aid scheme[152] without justification. In Spain's words, "a mere reading of the Award, denotes that the Tribunal did not give sufficient reasons in the terms required by Article 52(1)(e),"[153] and particularly regarding its change on the priority of sources in Article 38 of the ICJ Statute.

172.  Spain further argued that there is a lack of reasoning as to why the EU rules on state aid and the EC Decision should not be taken into account,[154] despite the Parties' arguments on this issue, which the Tribunal decides in the "operative part of the Awards by downgrading the very international law that the Tribunal declares applicable to the category of 'highly irrelevant.'"[155] Therefore, the Award falls into the annulment ground of Article 52(1)(e) of the Convention.

173.  Spain reiterated in its Reply that there was concurrence of grounds for annulment under Articles 52(1)(b) and 52(1)(e) of the Convention. On one hand, the Tribunal's conclusion disregarding EU law, including EU's international treaties, constitutes a "manifest overreaching." On the other hand, the lack of reasons and explanatory grounds is also a ground for annulment.[156]

---

[149] Memorial, ¶153.
[150] Award, ¶443.
[151] Memorial, ¶¶160, 161.
[152] Memorial, ¶163.
[153] Memorial, ¶165.
[154] Memorial, ¶166.
[155] Memorial, ¶167.
[156] Reply, ¶¶221, 238-239.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 50 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

3. Failure to state reasons, or reasoning that is insufficient, inadequate and contradictory, in the determination of installed power

174. Spain reiterated that the installed capacity was a key issue because if the installed capacity of the Olivenza 1 and Morón Plants were above the 50 MW threshold, they did not "comply with the condition of access to the RRE" [157] and therefore, the installation would have unduly benefited from the special aid scheme. As explained in a report submitted by Spain in the Arbitration, "the actual installed or nominal power or capacity of both Olivenza 1 and Morón CSP plants are certainly higher than 50 and 49.9 MW respectively."[158] Spain argued that, despite this submission, and the fact that InfraRed did not provide a similar report as recognized by the Tribunal, it limited itself to making reference to the *Eiser* award.[159]

175. Spain further argued that, since *Eiser* was annulled in its entirety, it must be concluded that any reason supported by that award should be irrelevant in relation to the obligation vested in the Tribunal to state the reasons of its decision, including the reasons presented to conclude that the installed power was equal or less than 50MW.[160]

176. In addition to that, Spain argued that the Award also falls into this ground because of the absence of adequate reasons to proceed from point A to point B when "it is stated that plants are remunerated on the basis of net production."[161] In Spain's words the Tribunal assumed that the literal wording of Article 20 of RD 661/2007 supported this idea. However, "nowhere in this provision it is stated that plants are remunerated on the basis of net production,"[162] and what it is indicated is that "special system installations may incorporate into the system all the net electrical energy produced."[163] Therefore, it is not clear how the Tribunal reached the conclusion that "plants should be remunerated

---

[157] Memorial, ¶173.
[158] Memorial, ¶179 quoting R-0384 Previous Annex-021, Report by Professor Casanova, Engineer, Universidad Politécnica de Madrid, November 2016. Quoted in the hearing itself, R-0398 presentation "Fundamental Facts", slide 111.
[159] Memorial, ¶181.
[160] Memorial, ¶183.
[161] Memorial, ¶187.
[162] *Ibid*.
[163] *Ibid*.

according to net production"[164] or why the "net power" variable was the most important.[165]

177. Spain argued that paragraphs 335 and 329 of the Award were in clear contradiction. First, in paragraph 335 the Tribunal indicated that the experts seemed to be in agreement regarding the controversial technical concepts, in particular, the definition of "gross installed power", and "installed power," and "that installed power is generally lower than gross installed power as a result of the energy used by the equipment inside the plant, which extracts its electricity directly from the turbine."[166]

178. However, in Spain's words, this assertion did not reflect Spain's expert opinion, reflected in paragraph 329, in the following terms:

> "The Respondent's expert is of the opinion that the installed power of the plants exceeds 52.2 MWe. To arrive at this conclusion, Mr Casanova appears to have worked backwards from "the net power discharged into the grid" of the two plants in dispute, which he said is "generally around 49.8 MWe". Expert report on installed power, 30 November 2016, p. 32."

179. It was not possible for Spain's expert to consider that the installed power of the plants exceeds 52.2 MW "as a consequence of differentiating this concept from that of net power discharged into the grid."[167] Spain asserted that despite the doubts expressed by Spain as to the "reliability of the contents of the type plates of the respective generators," it rejected the claims and assumed the reasoning of the *Eiser* award[168] that does no longer exist.

180. The Tribunal left unresolved the issue of the veracity of the nominal power on the nameplates, and whether such nominal power corresponds to the concept of installed power expressed by the legislator.[169]

---

[164] Memorial, ¶188.
[165] Memorial, ¶189.
[166] Memorial, ¶190.
[167] Memorial, ¶192.
[168] Memorial, ¶¶194-199.
[169] Memorial, ¶199.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

181.    In the alternative, Spain argued that the conclusion that the capacity was less than 50MW lacked adequate grounds because Article 20 of RD 661/2007 does not indicate that net power is the most important variable.[170] In addition, by stating that the experts where in agreements with regards to the concepts when they were not, the Tribunal contradicted itself without providing reasons for such assertion.

182.    Similarly, in the Reply, the Applicant reiterated that the Award failed to provide reasons regarding the issue of the "installed capacity," and given that this question was not addressed with its own reasoning but by full referencing to the reasoning of the *Eiser* award, the Award meets this ground of annulment.[171]

183.    Regarding the alleged inconsistency between paragraphs 329 and 335 of the Award, the Applicant argued that, even accepting InfraRed´s position that paragraph 329 referred to a question of installed power and gross power, and paragraph 335 to the question of installed power and net power, there was a flagrant absence of reasons with which to resolve the question of the overweighting of the plants, as there is no way showed the reasons why it could be concluded that when the legislator refers to 'installed power' in the terms in which it does in Articles 27 and 30(4) of the LSE it is referring to net power and not to gross power.[172]

### 4.    Failure to state reasons in relation to the decision of the date of the investment

184.    Spain presented an additional ground of annulment under Article 52(1)(e) for the Award's failure in providing reasons for setting July 28, 2011 as the date of the applicant's investment.[173]

185.    The Tribunal refers to this date "without any reference to or analysis of the doubts raised by [sic] Spain regarding the reasons why InfraRed would have preferred to invest in 2011 instead of 2008 when […] the risks were mostly technical."[174]

---

[170] Memorial, ¶200.
[171] Reply, ¶367.
[172] Reply, ¶374.
[173] Memorial, ¶202.
[174] Memorial, ¶209.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 53 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

186.    Spain argued that the Tribunal relied only on footnote 8 of the Award that referred to page 4 of the Quantum Brattle Report,[175] but that page 4 of such report "says nothing about the date of the investment."[176]

187.    In its Opening Statement, Spain explained that "the fund tried to invest in these plants in 2008, when the project was starting; whereas, very surprisingly, it was not until 2011 when the investment was made. Spain complained and found illogical that InfraRed refrained from investing in those plants in 2008, when the plan[t]s were just at the promotional stage and the risk was mainly technical, and decided to invest almost four years later, when the risk was much bigger. However, the Tribunal arrives directly to this conclusion, to this date of July 28th, 2011, without any reference to Respondent's doubts regarding the reason why InfraRed would have preferred to invest in 2011 rather than in 2008."[177]

188.    This lack of analysis of Spain's arguments causes the annulment of the Award under Article 52(1)(e) of ICSID Convention.

> 5.    Failure to state reasons for the Award in the conclusion on liability, in particular regarding the ECJ standard provided in Article 10(1) of the ECT

189.    According to Spain's position, in determining the scope of Article 10(1) ECT, in paragraphs 343-456 and 365-366 of the Award, the Tribunal stated that the frustration of a legitimate expectation "implies, per se, a breach of the provisions of Art. 10(1) FTE, but only to the extent that such breach constitutes 'unfair and inequitable treatment.'"[178]

190.    Spain argued that the Award "does not express the *iter* that lead to such conclusion, nor does it express on which sources or hermeneutic criteria, of those provided for in the Vienna Convention it is relying for that purpose."[179]

191.    In any event, according to Spain, the provisions of Article 10 ECT "are extremely general and in no case can be considered as more favourable than the provisions of the

---

[175] Memorial, ¶33.
[176] Memorial, ¶¶33 and 35.
[177] Hearing Tr., Day 1, 13:57, lines 1-14.
[178] Memorial, ¶214.
[179] Memorial, ¶215.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 54 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

EU law."[180] In its PHB, Spain highlighted that tribunals differ on the imprecise definition of FET in the ECT, showing that EU law provided a more favorable regime to investors.[181]

192.    However, in spite of Spain's explanations "since the very beginning of the arbitration why the EU law was more favourable than the ECT, […] this has not even been addressed by the Award."[182]

193.    Spain insisted that "it was not simply disagreeing with the Tribunal's decision, as indicated by InfraRed in its Counter-Memorial, but was asking that "the Committee confirm whether the Award presented "sufficiently pertinent reasons"[183] for concluding that Spain had breached Article 10(1) of the ECT."[184]

194.    As a consequence, Spain posits that the failure to state reasons on the interpretation of the protection afforded by Article 10 of the ECT when compared with the protection granted by EU law in relation to the intra-EU investors, constitutes a breach of Article 52(1)(e) of the ICSID Convention and the Award must therefore be annulled by the Committee.

6.    Expression of contradictory reasons in the alleged violation of the Claimants' expectations about the stability of the Original Regulatory Framework

195.    Regarding InfraRed's expectations about stability of the Original Regulatory Framework, Spain quoted paragraph 427 of the Award and asserted that "it is surprising and contradictory that the Court rushes to recognize the value of the alleged agreement as a legally relevant fact,"[185] but at the same time the Award also omitted to weigh it against other facts, such as the later normative changes made by Spain prior to InfraRed's investment.[186]

---

[180] Spain's PHB, ¶98.
[181] Spain's PHB, ¶¶ 93-101.
[182] Spain's PHB, ¶99.
[183] RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, ¶ 43.
[184] Reply, ¶¶ 376-377.
[185] Memorial, ¶217.
[186] *Ibid.*

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 55 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

196.   Therefore, Spain concluded that when the Award opts for crystallizing the legitimate expectations of InfraRed, it is contradictory by relying on "constant jurisprudence of an arbitrary nature to sustain the scope of the ECJ not limited to non-discrimination, and to forget, however, all the jurisprudence emanating from the Spanish Supreme Court,"[187] as well as regulatory changes which had been declared in conformity with the law by the courts of justice in Spain, even before InfraRed's investment.[188]

197.   Spain also pointed to paragraph 436 of the Award in which the Tribunal stated that there was no evidence "between 29 December 2010 and 23 June 2011 that contradicts the reasonableness or legitimacy of the expectation."[189] Spain argued that, contrary to the Tribunal's finding, it provided evidence in this respect by submitting in its Counter-Memorial an analysis of jurisprudence by the Supreme Court related to the incentive system and regulatory changes before Claimants' investment,[190] in particular the Ruling of 25 October 2006 that stated that "the changes in remuneration do not contradict the principles of legal certainty and legitimate expectations" as long as the principle of reasonable profitability is respected.[191]

198.   Spain further highlighted that the Tribunal contradicted itself on paragraph 371 indicating that the "jurisprudence of the Spanish Supreme Court" was included in its reasoning, when in fact Spain had demonstrated that this was not the case.[192] Therefore, the statement that the Tribunal did not find evidence before the date of the investment which contradicted InfraRed's expectations was inadmissible.[193]

199.   Spain further alleged a failure to state adequate reasons in relation to the alleged violation of Claimants' expectations about the stability of the Original Regulatory Framework. Spain pointed out a contradiction between paragraphs 366 and 427 of the Award. It said that while paragraph 366 recognized that "stability" does not amount to a "limitation on a state sovereignty in the absence of the specific manifestation of

---

[187] *Ibid*.
[188] *Ibid*.
[189] Memorial, ¶219.
[190] Memorial, ¶222.
[191] *Ibid.*, citing R-0077, Judgment of the Third Chamber of the Supreme Court of 25 October 2006 (Rec. 12/2005).
[192] Memorial, ¶226.
[193] Memorial, ¶227.

consent by the host state"[194], paragraph 427 "recognizes the alleged agreement as a legally relevant fact," without explaining how the press release from the Ministry of Industry, Tourism and Commerce, and subsequent resolutions of December 2010 would prevail over the "normative and jurisprudential antecedents" reiterated and produced "since a decade" before the investment.[195]

200.    Therefore, Spain argued that the "shortcomings in the reasoning of the Award with regard to the ECJ principle in Article 10(1) ECT are obvious"[196] and constitute grounds for annulment under Article 52(1)(e) of the Convention.

201.    In the Reply, the Applicant argued that it was not simply disagreeing with the Tribunal's decision, as indicated by InfraRed in its Counter-Memorial, but was asking that the Committee confirm whether the Award presented "sufficiently pertinent reasons"[197] for concluding that Spain had breached Article 10(1) of the ECT.[198]

202.    It reiterated that it was not turning this annulment into a sort of appeal or second instance[199] but rather, highlighted in the Reply "the numerous essential aspects in which the Tribunal either does not give reasons, or the reasons it does give are incoherent if not contradictory, affecting the legitimacy of the proceedings and of the Award."[200]

203.    Spain further added in the Reply that "there is no way of knowing the specific evidence by which the [Tribunal] concludes that the FET standard is unrelated to discrimination, and inextricably linked to the frustration of legitimate expectations."[201] Thereby, the Tribunal failed to state reasons for its finding that Spain infringed the ECT.[202]

---

[194] Memorial, ¶232.
[195] Memorial, ¶233.
[196] Memorial, ¶242.
[197] RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, ¶ 43.
[198] Reply, 376-377.
[199] Reply, ¶381.
[200] Reply, ¶ 381-385.
[201] Reply, ¶385.
[202] Reply, ¶¶384-400.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 57 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

7.   Failure to state reasons when calculating damages

204.   In addition to the already invoked lack of justification as to why the Tribunal adopted the DCF calculation,[203] the Applicant in its Reply argued that there was lack of reasoning in the Award in relation to the regulatory risk and the illiquidity discount applied, having a significant impact on the quantum (the object of this ground for annulment). Therefore, there was a serious breach of the fundamental rule of procedure concerning the burden of proof in relation to a number of assumptions which had an impact on the Tribunal's decision on the quantification of damages. Those hypotheses or assumptions (analyzed in the previous plea) related to management fees and the value of the debt.[204]

205.   After pointing to several parts of the exhibits, the Applicant asserted in its Reply that the Tribunal adopted Brattle's position without considering that the position by Accuracy was objectively supported by external sources.[205]

206.   The Applicant highlighted in its Reply that "the fact that one member of the Tribunal refers to evidentiary documents in the record that contradict the unsupported opinion of the rest of the Tribunal shows that there is a clear lack of reasoning for adopting Brattle's position and discarding Accuracy's position on regulatory risk and the illiquidity discount."[206]

207.   The Applicant reiterated in the Reply its position that there was an indisputable inconsistency between the Award's award of damages and the damages actually calculated, and that constituted a ground of partial annulment under Articles 52(1)(e) and (b) of the Convention.

8.   Failure to state reasons in relation to the evidentiary activity and the evaluation of the evidence developed in the Arbitration

208.   In particular, Spain argued that paragraphs 321-456, and in particular paragraphs 406-456 of the Award, included no more than "very scarce reference to the evidentiary

---

[203] Memorial, ¶¶247-250.
[204] Reply, ¶¶ 401-402.
[205] Reply, ¶¶416-425.
[206] Reply, ¶¶ 426-428.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 58 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

activity developed in the oral hearing [...] since only a couple of aspects of the statements of one of the witnesses are mentioned."[207]

209.    As an example, Spain mentioned that Mr. Carlos Montoya's testimony was not used when the Tribunal evaluated the standard of the ECJ.[208] Similarly, the Tribunal rarely referred to the testimony of Mr. Santiago Caravantes.[209] Those testimonies have been "completely obliterated" in the Award.[210]

210.    Spain "insist[s] that it is not that the Tribunal has analyzed the content of their documents and statements and decided to give them more or less credibility in the face of other evidence; it is that the Award has simply been written as if they did not exist. And it does not seem far-fetched to say that the first requirement of the right to be heard is that at least a minimal value be placed on the evidence offered in defense."[211]

211.    Spain reiterated in its Reply that its Application for Annulment under Convention Article 52(1)(d) is that "this plea be upheld on the basis of a failure to assess the evidence provided by the Kingdom of Spain,"[212] not on determining the application of this legal standard as claimed by InfraRed[213] in the sense that "the evidence presented by both parties must necessarily be given the same weight or value."[214]

212.    The Applicant alleged that it had carried out an enormous amount of evidentiary work, and the serious anomaly of the contested Award is found in paragraphs 321-456, and in particular in paragraphs 406-456. The anomaly was flagrant because, although the Award contained the reasoning for Spain's declaration of international liability, if analyzed impartially, there was a complete absence of an exhaustive and conclusive analysis of the evidence provided by Spain. Such analytical activity is unavoidable to ensure due respect for the essential principles of procedure, the infringement of which is complained of in this annulment proceeding. In that regard, the Applicant emphasized

---

[207] Memorial, ¶268.
[208] Memorial, ¶269.
[209] Memorial, ¶270.
[210] Memorial, ¶273.
[211] *Ibid.*
[212] Reply, ¶272.
[213] *Ibid.*
[214] *Ibid.*

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 59 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

that it was not merely complaining of the improper assessment of the evidence but of the absolute failure to assess it.[215]

213.   Spain argued in the Reply that the discretion of the Tribunal in assessing the evidence did not allow for violations of essential rules such as the right to be heard or the rule on the burden of proof.[216] As an example of its position, the Applicant quoted paragraph 438 of the Award to say that the Tribunal's duty was not to accept or reject the Parties' theses, but to verify them, in light of the evidence provided.[217] However, the Applicant alleged that the Tribunal, on the basis of its own conclusions on one of the key issues in this case, such as the existence or not of specific remuneration commitment for the Morón and Olivenza plants, concluded that no further evidence was necessary to assess the international liability of Spain.[218]

214.   In this case, the Tribunal opted for the "reversal of the burden of proof in relation to the due diligence issue" in spite of the fact that it "establishes the need to subject InfraRed to a stricter standard of due diligence than other cases in confluence with the nature of the sector in which they invested and their expectations regarding the main source of income (*i.e.*, government subsidies)."[219]

### D.   SERIOUS DEPARTURE FROM A FUNDAMENTAL RULE OF PROCEDURE

#### 1.   Introduction

215.   Spain argued that according to Article 52(1)(d) of the ICSID Convention "a deviation is serious if a party is deprived of the protection afforded by the relevant procedural rule."[220]  Similarly, a "procedural rule is fundamental if it refers to the essential fairness that must govern all proceedings and is included within the standards of 'due process' required by international law."[221]

---

[215] Reply, ¶284.
[216] Reply, ¶¶285-289.
[217] Reply, ¶290.
[218] Reply, ¶¶291-296.
[219] Memorial, ¶287.
[220] Memorial, ¶252.
[221] *Ibid.*

216.    It emphasized that the "right of a party to be heard" included the right of a party to present arguments and evidence, within an "comparative equal opportunity."[222] It stressed that right to be heard was infringed when a party did not have the opportunity to "respond adequately to the arguments and evidence presented by the other party."[223] Spain further made reference to the decisions of other annulment committees, such as in *Pey Casado v. Chile*.

217.    Spain stated that the unjustified refusal by a tribunal of a party's request for the production of documents is also an example of a violation of the right to be heard, in particular when the tribunal concludes that evidence was absent in the case, "after refusing to produce the documents."[224]

218.    Spain reiterated in its Reply the existence of a serious breach of a fundamental rule of procedure and cited four awards that had recognized this ground of annulment.[225]Also, Spain argued that the Tribunal committed a series of breaches in relation to the assessment of evidence in the underlying proceeding.[226] Notably, it erred in applying the basic procedural principle of the burden of proof and concluded that the absence of legal due diligence by Claimants was irrelevant to the issue of legitimate expectations.[227]

    2.   <u>The breach of the basic principle of the burden of proof and the right of Spain to be heard</u>

219.    Spain's argument was that the Tribunal breached the fundamental right to be heard regarding (a) the infringement of the burden of proof of evidence in the proceedings, (b) the violation of the rules on the burden of proof with the regard to the Spanish Supreme Court decisions. and (c) the illegal shifting of the burden of proof in favor of InfraRed.

---

[222] Memorial, ¶254.
[223] Memorial, ¶257.
[224] Memorial, ¶259.
[225] Reply, ¶¶247-258.
[226] Reply, ¶259.
[227] Reply, ¶260.

220. Regarding point (a), Spain pointed that paragraph 451 of the Award contained "both a serious lack of valid grounds and a serious breach of essential procedural rules" concerning the rules on the absence of evidence and the principle of consistency.[228]

221. Spain added that InfraRed has the burden of demonstrating that "the Original Regulatory Framework would remain stable (*i.e.* immutable) throughout the life of the plants."[229] But the absence of any "regulatory due diligence" shows that InfraRed did not have the basis to allege a legitimate expectation in that regard.[230] However, the Tribunal "justifies Claimants' mere belief as a basis for their legitimate expectations."[231]

222. Instead, in paragraph 447 of the Award, the Tribunal reversed the burden of proof and goes as far as stating that "investors in regulatory projects do not need to due diligence and that this must have positive consequences for them."[232]

223. According to Spain, "the negligent behavior of InfraRed in evading its duty to inform itself before its investment, seeking the Due Diligences that were necessary to get to know and properly understand the risks of the Spanish regulatory framework can in no way serve to exonerate it from liability."[233]

224. In addition to that, Spain argued that any due diligence would have informed InfraRed of the jurisprudence of the Spanish Supreme Court. However, the Award valued this "lack of regulatory Due Diligence" as a justification to have "a position completely contradictory to that of the Supreme Court's jurisprudence."[234] Spain argued that the Tribunal allegedly did not give value to the Supreme Court's doctrine and yet "it does give positive value to the lack of regulatory Due Diligence", seriously violating the procedural rules.[235]

---

[228] Memorial, ¶276.
[229] Memorial, ¶278.
[230] Memorial, ¶279.
[231] *Ibid.*
[232] Memorial, ¶282.
[233] Memorial, ¶284.
[234] Memorial, ¶286.
[235] *Ibid.*

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 62 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

225.    It further argued that the Tribunal reversed the burden of proof in relation to the due diligence obligation, and this was contrary to the stricter standard of due diligence declared by the Tribunal and to which InfraRed was subject to.[236]

226.    Moreover, in the Reply, Spain also considered evidence on damages and management costs.

227.    The Applicant posited in the Reply that the Tribunal´s conclusion accepting InfraRed´s assertion of an alleged absence of evidence of Accuracy´s position constituted a serious breach of the rules of procedure.[237] First, the Award acknowledged that there was a discrepancy between the experts as to the amount of the costs for running the Plants.[238] Next, the Tribunal underlined the fact that InfraRed's expert (Brattle) provided documentation in their first report that contradicted their own position by showing that the management costs were around 1% of the value of the asset under management.[239]

228.    Accuracy had already stated in their First Economic Report that Brattle included €5 million of fixed management costs that were not supported, and that it was therefore incumbent on Brattle to explain the nature of these costs, as well as the fact that they were fixed regardless of the value of the asset under management.[240] Spain had already made her arguments regarding the nature of these costs, as "they are commissions behind which there is no real service."[241] It was therefore clear that the burden of proof of Brattle's hypothesis (fixed and equal management costs for both scenarios) was on InfraRed.[242]

229.    However, the Tribunal stated that according to Brattle, it was up to Accuracy to demonstrate that the management costs were variable and that they were therefore reduced as a result of the Measures, and the Tribunal agreed with that argument.[243]

---

[236] Memorial, ¶287.
[237] Reply, ¶308.
[238] Reply, ¶297; Award, ¶590.
[239] Reply, ¶298; RL-0116, *InfraRed Environmental Infrastructure GP Limited and Others v. Kingdom of Spain*, ICSID Case No. ARB/14/12, Award, August 2, 2019, ¶591.
[240]  Reply, ¶300 quoting R-0403, First Economic Report by Accuracy, ¶659-660.
[241] R-0404, Respondent's Comments on the Joint Model Amount, 4 December 2017, ¶51.
[242] Reply, ¶302.
[243] Reply, ¶303.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 63 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

230.  The Applicant submitted that, (i) it should be recalled that it is the Tribunal itself that "'notes' […] that 'the documents cited in support of Brattle's first expert report on quantum refer to management fees as a percentage (generally 1% of the portfolio value or net asset value)'",[244] and (ii) that it argued that Brattle's experts had stated that "the management costs have no bearing on quantum, since Brattle's DCF presumed that management costs remained unchanged after the enactment of the Measures at issue."[245]

231.  However, the Arbitral Tribunal acknowledged, on the other hand, that by changing the management cost alternator in the Joint Model from Brattle's option to Accuracy's option, the damage is reduced by €2.5 million because Accuracy's position assumes that "'management costs dropped as a result of the enactment of the Measures at issue."[246] And that [InfraRed] 'say[s] no evidence whatsoever was adduced to support such an assumption'. And the Tribunal conclude[d] that it 'agrees with the Claimants and will therefore switch the 'Management Costs' toggle included in the Joint Model to the value 'Brattle.'"[247]

232.  Spain highlighted that it was the very evidence of Brattle's experts contemplated by the Tribunal in paragraph 591 of the Award (Exhibit BQR-74) that supported Accuracy's position. Therefore, the Tribunal's conclusion accepting InfraRed's assertion of an alleged absence of evidence of Accuracy's position constituted a serious breach of the rules of procedure.[248]

233.  The impact of correcting the management cost alternator in the Joint Model to Accuracy's position (based on the only objective evidence available) is a reduction in damages of €2.6 million (from €28.2 million to €25.6 million).[249]

234.  Regarding the value of the debt, the Applicant pointed to paragraphs 314-317 and the analysis of the Award in this regard and concluded that the Tribunal ignored the explanations provided by Accuracy in determining the debt to be applied in the Joint

---

[244] Reply, ¶304 quoting Award, ¶591.
[245] Reply, ¶306.
[246] Award, ¶593.
[247] Reply, ¶307 quoting Award, ¶594.
[248] Reply, 308.
[249] Reply, ¶309.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 64 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

Model.[250] The Applicant considered that "should the Joint Model be corrected by choosing the Accuracy option ('Face Value') instead of the Brattle option ('Estimated Market Value') the impact would be a reduction of €1 million."[251]

235.    Regarding point (b), Spain argued that "it is not true that Spain has not proved that a minimally more exhaustive analysis would have led to a different understanding of the regulatory framework."[252] There is contradiction in the Award that, in one hand, it recognized that "changes in the system would be expected,"[253] but on the other hand disregarded the constant jurisprudence of the Supreme Court that indicated that "it was not possible to have the expectation of an immutability of the system."[254] In Spain's view, "a minimally exhaustive analysis" of how the Spanish Courts applied the Electricity Sector Legislation would lead to a different understanding than the one used by InfraRed to plead its case.[255]

236.    Spain argued that the Tribunal ignored the principle of hierarchy of norms by granting two administrative decisions issued by Directorate-General for Energy Policy and Mines "the value of establishing commitments that cannot be opposed to the literal content of subsequent legal rules,"[256] because "administrative acts", that lack legal value, cannot be equated to "legal norms", as the case of the Supreme Court's jurisprudence demonstrated.[257]

237.    The fact that the Tribunal did not find evidence before December 2010 and June 2011 that contradicts the expectation of immutability of the Spanish regulatory framework in the area of renewable energy, is the result of ignoring "abundant and constant jurisprudence issued by Spanish Courts."[258]

238.    Therefore, and in sum, as argued in the Reply, on the basis of considering that "the December Resolutions" constituted a specific commitment of the Spain vis-à-vis the

---

[250] Reply, ¶318.
[251] Reply, ¶319.
[252] Memorial, ¶291.
[253] Memorial, ¶293.
[254] Memorial, ¶294.
[255] *Ibid*.
[256] Memorial, ¶296.
[257] *Ibid*.
[258] Memorial, ¶297.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 65 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

PSC Sector, the Tribunal concluded that no specific legal due diligence should be considered as relevant to the formation of the investors' legitimate expectations.[259] To exempt InfraRed from the burden of proof, on the basis of the assumption that the presence of the December Resolutions in the proceedings, it was sufficient to determine the content and scope of its legitimate expectations is tantamount to denying the defense or the right to be heard.[260]

239.   The Tribunal's failure to require legal due diligence to confirm the scope and content of the expectations claimed by InfraRed revealed a breach of the rules on the burden of proof, relevant to argument (c) mentioned above, insofar as it relieved InfraRed of this burden on the basis of an issue that is disputed between the Parties, and which is precisely one of the key issues in the case.[261]

240.   Spain contended that the Award suffered from anomalies due to the "scarce reference to the evidentiary activity developed in the oral hearings […] regarding the existence or not of a breach of the ECJ."[262]

241.   Finally, Spain argued that there was a lack of impartiality towards Spain, also a ground for annulment under Article 52(1)(d) of the Convention, based on the alleged findings in favor of one the Parties without corresponding factual support.[263]

## V.    THE RELIEF REQUESTED BY INFRARED

242.   The relief sought by InfraRed in the Counter-Memorial is the following:

> (i) "Issue a Procedural Order whereby it decides that (i) Spain was barred from introducing evidence in the annulment action that should have been introduced in the Arbitration and therefore, the expert reports of Prof. Demetrio, Prof. Rozas, and Prof. Gosalbo should not be accepted into the record; and (ii) Spain is precluded from submitting a quantum expert report with its second memorial; and
> (ii) on the annulment, render a Final Decision dismissing Spain's request for annulment of the Award and ordering Spain to pay InfraRed's legal fees and all annulment costs (including Committee

---

[259] Reply, ¶261.
[260] Reply, ¶262.
[261] Reply, ¶263.
[262] Memorial, ¶268.
[263] Memorial, ¶303.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 66 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

members' fees, ICSID fees and all related expenses) incurred in these proceedings." [264]

243.    The relief sought by InfraRed in the Rejoinder and their PHB is the following:

"(i) Dismissing Spain's request for annulment of the Award; and

(ii) Ordering Spain to pay InfraRed's legal fees and all annulment costs (including Committee members' fees, ICSID fees and all related expenses) incurred in these proceedings." [265]

## VI.    SUMMARY OF INFRARED'S SUBMISSIONS

244.    InfraRed argued that the Tribunal did not commit any violation that may amount to grounds for annulment under Article 52(1) of the ICSID Convention.[266]

245.    InfraRed argued that the Application for Annulment constitutes a "*de novo review*" of the merits of the dispute as well as of the jurisdictional objection based on EU law, which was dismissed by the Tribunal. [267] InfraRed alleged that "Spain uses this annulment action to bring up new arguments and defenses that Spain never put forward before the Tribunal," [268] and that mischaracterized the regulatory framework of renewable energies.

### A.    SUMMARY OF THE DISPUTE AND THE AWARD

246.    In its Counter-Memorial, InfraRed indicated that "Spain provides a partisan and incomplete description of the regulatory framework in place when InfraRed invested in Olivenza 1 and Morón 1 and 2 (the 'Plants') in 2011 ('Original Regulatory Framework')." [269] In describing the regulatory framework, InfraRed alleged that the Award identifies its main features and also considered the remuneration of the "Special Regime." [270]

---

[264] Counter-Memorial, ¶252.
[265] Rejoinder, ¶268, and InfraRed's PHB, ¶160.
[266] Counter-Memorial, ¶¶1-3.
[267] Counter-Memorial, ¶4.
[268] Counter-Memorial, ¶ 5.
[269] Counter-Memorial, ¶15.
[270] Counter-Memorial, ¶16.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

247. In response to Spain's argument that "the electricity sector also requires consideration of the rules that EU imposes on State aid,"[271] InfraRed contended that "Spain ignored the Tribunal's conclusion that the regulatory measures and Purported Agreement were not to be assessed or analyzed under any EU law perspective, which was not at stake in the Arbitration."[272]

248. Spain asserted that the Tribunal concluded that none of the documents referred to by Spain in relation to state aid had any specific impact on the regulatory measures at issue in the Arbitration.[273] On that point, InfraRed stated that Spain did not demonstrate a conflict between the Original Regulatory Framework relied on by InfraRed and EU law.[274]

249. InfraRed posited that the Tribunal also held that Spain avoided describing the very extensive, clear and specific assurances of legal stability of the Original Regulatory Framework given to the CSP Plants under a number of statutory provisions, exchanges of official communications, and all kinds of unilateral declarations for a number of years.[275]

250. Moreover, InfraRed added that the Tribunal dismissed the argument that RD-L 9/2013[276] maintained the principle of "reasonable return"[277] and instead stated that the new method of remuneration based on an "efficient" standard frustrated InfraRed's legitimate expectations.[278]  The Award also concluded that Spain did not "maintain" the expected return for investors promised under the Original Regulatory Regime.[279]

251. Further, InfraRed argued that Spain "mischaracterized" the findings of the Award when it claimed that "the return promised under the Original Regulatory Framework were maintained after the enactment of the Disputed Measures,"[280]  because the Tribunal on

---

[271] Counter-Memorial, ¶ 17 quoting Memorial, ¶9.
[272] Counter-Memorial, ¶17.
[273] *Ibid*.
[274] *Ibid*.
[275] Counter-Memorial, ¶18. Award, ¶¶40-41,
[276] Defined by InfraRed as Royal Decree-Law 9/2013, of July 12, adopting urgent measures to ensure the financial sustainability of the electric system, see Counter-Memorial, p. v.
[277] Counter-Memorial, ¶19.
[278] *Ibid*., quoting Award, ¶453.
[279] Counter-Memorial, ¶20.
[280] *Ibid*.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 68 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

that point determined that there was uncontradicted evidence that showed that "Claimants relied on the values of the regulated tariff and of the pool plus premium."[281]

252. Regarding the jurisdictional issue, InfraRed's position was that the "wrong" rejection of the intra-EU objection, as Spain contended, "would not be enough to annul the award under the ICSID Convention."[282] InfraRed added that "the Committee does not have any power to redo or rewrite the reasoned opinion of the arbitrators"[283] and that it "should limit itself to review if the Tribunal resolved the objection and provided reasons to reach its conclusions."[284]

253. InfraRed rejected Spain's allegations regarding liability and the allegation that the Tribunal decided "on the basis of non-existing or contradictory and inconsistent criteria."[285]

254. InfraRed referred to the findings of the Tribunal in the Award in relation to the documents that served to establish the legitimate expectations, including the "Purported Agreement", the waiver letters, the December resolutions, and the enactment of RD 1614/2010. [286]

255. In InfraRed's words, the Tribunal concluded that "a more thorough due diligence would not have alerted InfraRed of the impeding enactment of the measures"[287], in particular, the Tribunal found that InfraRed "reasonable expected" that the CSP Plants would benefit from the "tariffs, premium and lower and upper limits,"[288] defined under the RD 661/2007 for the entire operational lifetime.

256. InfraRed indicated that there were three elements of the Original Regulatory Framework that remained unchanged during the operational life of the Plants.[289] It also argued that there is *res judicata* on the issue of the installed power since the Tribunal

[281] *Ibid*.
[282] Counter-Memorial, ¶21.
[283] *Ibid*.
[284] *Ibid*.
[285] Counter-Memorial, ¶23, quoting Memorial, ¶42.
[286] Counter-Memorial, ¶24, quoting Award, ¶410, referencing C-0193t for the "Purported Agreement", C-0264t and C-0265t for the letters of waiver, C-0266t and C-0267t for the December Resolutions, C-0050t for the enactment of RD 1614/2010.
[287] Counter-Memorial, ¶24.
[288] *Ibid*.
[289] Counter-Memorial, ¶25.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 69 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

concluded that Spain had not "substantiated [...] its defense" that the capacity was more than 50MW.[290]

257.   In conclusion, InfraRed posited that the Tribunal undertook "a detailed analysis of the issues at stake on the merits and states the reasons leading to its conclusion that Spain had breached its FET obligation [...]."[291]

258.   On damages, InfraRed argued that the reduction of the damages claimed by InfraRed's primary claim for compensation demonstrated that the Tribunal "did not accept InfraRed's evidence", and that it conducted a careful analysis.[292] Followed by a "Joint Model" submitted by Spain's and InfraRed's quantum experts,[293] the Tribunal concluded that the DCF was an appropriate method and provided reasons in support of that conclusion.[294]

259.   InfraRed stated that, although the Tribunal took most of the assumptions in the model suggested by InfraRed's quantum expert, it also reduced InfraRed's but-for scenario by incorporating Spain's production scenario ("Bank Case") into the Model.[295] Furthermore, InfraRed added that the Tribunal awarded pre-award interest at 2% but rejected InfraRed's claim regarding the tax gross-up.[296] Therefore, InfraRed rejected Spain's claims that there was any inconsistency with the calculation of damages.

## B.   THERE ARE NO GROUNDS TO ANNUL THE AWARD

260.   InfraRed argued that none of the grounds for annulment had been demonstrated, and, thereby rejects each of the allegations raised by Spain, namely that the Tribunal (i) did not manifestly exceed its powers, (ii) did not fail to state reasons in the Award; and (iii) respected all fundamental rules of procedure.[297]

---

[290] Counter-Memorial, ¶28.
[291] Counter-Memorial, ¶29.
[292] Counter-Memorial, ¶30.
[293] *Ibid.*
[294] Counter-Memorial, ¶31.
[295] Counter-Memorial, ¶32.
[296] Counter-Memorial, ¶33.
[297] Counter-Memorial, ¶37.

261.    InfraRed argued that "Spain disregards [the] difference between appeal and annulment," [298] attempting to introduce new evidence on the merits which is forbidden under Article 53 of the ICSID Convention. The result of a successful application for annulment is the invalidation of the original decision whereas the result of an appeal is its modification. [299] This meant that the Committee may not amend or replace the Award with its own decision, both in respect of jurisdiction or the merits, and can only choose between leaving the original decision intact or declaring it void. [300] Furthermore, InfraRed alleged that the Committee is only concerned with the legitimacy of the process rather than the substantive correctness. [301]

262.    Moreover, since Spain submitted new claims that were never raised during the Arbitration, the Committee "should dismiss" those arguments without further consideration, [302] and since Spain did not raise the claims of "clean hands" during the proceedings, the Committee should bar Spain from addressing the Award on that basis. [303]

263.    InfraRed considered that the Application for Annulment reiterated some of the arguments that were rejected by the Tribunal, such as the issue of EU state aid law, the intra-EU objection and Spain's breach of legitimate expectations. [304] However, the Committee is confined to declare the annulment under the grounds of Article 52(1) of the Convention and not to review the merits of the decision. [305]

264.    Spain submitted in the annulment proceedings three expert legal reports dealing with different issues, such as the Gosalbo Report, addressing the intra-EU objection; the Demetrio Report, addressing the illegality of the investment; and the Rozas and Sánchez expert report ("**Rozas Report**"), addressing the "clean hands" issue. [306] Not one of these reports had been presented in the Arbitration and they address issues that were not presented to the Tribunal. This contradicts PO1 in which the Committee

---

[298] Counter-Memorial, ¶¶39-42; Rejoinder, ¶20-22.
[299] Rejoinder, ¶19; InfraRed's PHB, ¶¶ 5-14.
[300] Rejoinder, ¶19.
[301] Counter-Memorial, ¶40 (ii); InfraRed's PHB, ¶7.
[302] Counter-Memorial, ¶¶42-43.
[303] Counter-Memorial, ¶45.
[304] Counter-Memorial, ¶46.
[305] *Ibid*.
[306] Counter-Memorial, ¶47.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 71 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

instructed the Parties to "primarily refer to the evidentiary record of the arbitration proceeding", indicating that "it does not expect to receive new witness statements or expert reports, leaving apart exceptional circumstances."[307] InfraRed submitted that "Spain failed to provide such 'exceptional circumstances,'"[308] and did not explain why the submission of the experts should be authorized in the annulment proceeding.

265.    Furthermore, InfraRed considered that the expert opinions are irrelevant "in the context of annulment actions as it is well established that *ad hoc* committees should only review the record before the Tribunal,"[309] otherwise the annulment proceeding would "become inefficient," and "consume extraordinary resources."[310] Therefore, InfraRed requested the Committee to issue a procedural order declaring the expert reports inadmissible.[311]

### C. THERE ARE NO GROUNDS TO ANNUL THE AWARD ON THE BASIS OF MANIFEST EXCESS OF POWER

266.    Regarding the excess of power allegations, InfraRed contended that such allegations do not show any kind of "excess of power:"[312]

> " (i) [T]he Tribunal reached the same conclusion as another 28 investment tribunals[313] that have been faced with the same intra-EU objection argument; (ii) the Tribunal extensively explained why EU law should not be applied to the merits of the dispute; and (iii) as we have repeated several times in this Counter-Memorial, Spain should be estopped from bringing a new defense regarding the illegality of InfraRed's investment whereas Spain explicitly accepted the legality of InfraRed's investment in the Arbitration."

267.    In its submission, InfraRed asserted that Spain was seeking a reconsideration of the Award and was "challenging the assessment of the legal and factual evidence,"[314] replicating the same arguments presented during the Arbitration.

---

[307] Counter-Memorial, ¶50.
[308] *Ibid*.
[309] Counter-Memorial, ¶51; Rejoinder, ¶19.
[310] Counter-Memorial, ¶52.
[311] Counter-Memorial, ¶53.
[312] Counter-Memorial, ¶55.
[313] InfraRed, in the same Counter-Memorial, ¶77 mentions a different figure.
[314] Counter-Memorial, ¶57.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 72 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

268.    Regarding the EC's *amicus* brief, InfraRed requested the Committee to "give no weight to the Commission's highly partisan and disruptive intervention,"[315] adding that "the Commission is a partisan ally of the Applicant in their joint crusade to dismantle (at any cost) the existing architecture of the investor-state arbitration system."[316]

269.    InfraRed contended that the Commission "attempts to introduce matters into these annulment proceedings that the Committee cannot revisit or review under Article 52(1) of the ICSID Convention."[317]

270.    It is also argued that the Commission treats annulment as an appeal,  and that in "[i]n every published annulment decision to date, ad hoc committees have stressed [the] distinction"[318] between appeal and annulment, holding that "where an appeal is concerned with legitimacy of the process of decision and its substantive correctness, an annulment proceeding under Article 52(1) of the ICSID Convention is only concerned with the legitimacy of the process."[319]

271.    Finally, InfraRed considered that "under Article 52(1)(b) of the ICSID Convention, an error in the application of the law is not considered a ground for annulment."[320]

   1.    <u>"Excess of power" must be self-evident and an error in the application of the law is not a ground for annulment</u>

272.    InfraRed further argued that under the "excess of power" ground, the Applicant has the burden of showing that the Tribunal "fail[ed] to exercise its jurisdiction or fail[ed] to apply the law agreed upon the parties."[321]

273.    InfraRed's position is that pursuant to Article 52(1)(b) of the Convention, the excess of powers must be 'manifest,' meaning "obvious, self-evident and substantially serious."[322] It refers to other committees' decisions that have confirmed that a manifest

---

[315] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶3.
[316] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶6.
[317] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶7.
[318] CL-328, Schreuer, C., Malintoppi, L., Reinisch, A., & Sinclair, A. (2009). *The ICSID Convention: A Commentary* (2nd ed.). Cambridge: Cambridge University Press, Article 52, ¶13.
[319] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶10.
[320] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶20.
[321] Counter-Memorial, ¶59.
[322] Counter-Memorial, ¶61.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 73 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

excess of powers will only exist "where the action in question is clearly capable of making a difference to the result of the case."[323]

274. InfraRed contented that a decision on jurisdiction may trigger the annulment of an award only when that decision is "unreasonable"[324] and cited to *Fraport v. Philippines* and *UAB v. Latvia.* Therefore, the Committee should examine the Application for Annulment "in light of the evidence and submissions which were before the Tribunal and not on the basis of new evidence."[325]

275. InfraRed added that the incorrect application or interpretation of the law cannot give rise to annulment.[326] They quoted a passage of *Amco v. Indonesia* establishing that "the law applied by the Tribunal will be examined by the ad hoc Committee, not for the purpose of scrutinizing whether the Tribunal committed errors in the interpretation of the requirements of applicable law or in the ascertainment or evaluation of the relevant facts to which law has been applied."[327]

276. In their Rejoinder, InfraRed argued that Spain twisted the applicable legal standard for establishing a manifest excess of powers. According to InfraRed, for an award to be annulled, the "excess of powers" must be "manifest," in other words, "where the action in question is clearly capable of making a difference to the result of the case."[328]

277. Therefore, regarding the allegation of an excess of powers for (i) granting protection to InfraRed despite its alleged unclean hands, (ii) rejecting the Intra UE-objection, (iii) misapplying EU law to the merits of the dispute, InfraRed reiterated its position that Spain did not demonstrate any relevant arguments to rebut the reasoning of the Tribunal on these aspects.[329] The decision to reject the application of EU law followed a pattern already stablished by arbitral tribunals in similar cases.[330]

---

[323] Counter-Memorial, ¶62.
[324] Counter-Memorial, ¶63.
[325] *Ibid*.
[326] Counter-Memorial, ¶¶64-65; Rejoinder, ¶32 (ii).
[327] Counter-Memorial, ¶65, quoting *Amco Asia Corporation and others v. Republic of Indonesia*, (ICSID Case No. ARB/81/1), Decision on the Application by Parties for Annulment and Partial Annulment of the Arbitral Award of May 16, 1986, and the Application by Respondent for Annulment of the Supplemental Award, dated December 17 ,1992, ¶7.8.
[328] Rejoinder, ¶32 quoting Counter-Memorial, ¶¶ 61, 62.
[329] Rejoinder, ¶23.
[330] Rejoinder, ¶26, 29-30.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 74 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

2. Spain's arguments related to the intra-EU objection cannot lead to the annulment of the Award

278. InfraRed argued that the fact that other 28 investment tribunals have similarly ruled that the ECT and its Article 26(1) apply within the EU, and that the Tribunal had jurisdiction to hear the dispute between the Parties, shows that the Tribunal was aligned with those tribunals' conclusions.[331]

279. As posited by InfraRed, there is no "parrot effect" as indicated by Spain, quite the contrary - as the fact that many other tribunals decided always rejecting the intra-EU objection demonstrates that the Tribunal "did not act manifestly exceeding its powers" and that its conclusion was not "unreasonable."[332]

280. In any case, InfraRed asserted that Spain's allegation would not lead to an excess of power under Article 52(1)(b) since "(i) deference should be given to the Tribunal's decision on jurisdiction and (ii) Spain has failed to prove that the alleged excess of power was 'manifest.'"[333]

281. InfraRed added that the tribunal could not be considered "unreasonable" when several Arbitral Tribunals had reached the same conclusion in similar proceedings regarding the intra-EU objection.[334] When the Award was issued, the decisions on "*PV Investors*, *Charanne*, *RREEF*, *Isolux*, *Eiser*, and *Novenergía*, had already dismissed the intra EU objection under similar grounds to those that the Tribunal advances in the Award."[335]

282. Similarly, 21 other decisions rendered before and after the InfraRed Award also rejected the intra-EU objection.[336] The fact that 32 arbitral tribunals had rejected the intra-EU objection is highly relevant since it was evidence that the Tribunal did not act "manifestly exceeding its powers."[337] There is evidence that "to date not a single tribunal has accepted Spain's intra-EU objection."[338]

---

[331] Counter-Memorial, ¶67.
[332] Counter-Memorial, ¶68.
[333] Counter-Memorial, ¶69.
[334] Counter-Memorial, ¶74.
[335] Counter-Memorial, ¶76.
[336] Counter-Memorial, ¶77. The reference date is November 2020.
[337] Rejoinder, ¶75.
[338] Counter-Memorial, ¶77. The reference date is April 2021.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 75 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

283.    In InfraRed's position, the Committee should give deference to the Tribunal's decision on jurisdiction and quoted in support of its arguments the decisions from the committees in the *Azurix v. Argentina* and *Enron v. Argentina* cases.[339]

284.    The allegations from Spain that the Tribunal did not consider the rules of interpretation in Article 31 of the VCLT, or that it merely indicated that there is no disconnection clause in the ECT, or that it allegedly ignored the July 2019 EU Council communication from 21 Member States[340] are inaccurate.[341] The Tribunal analyzed the ordinary meaning and context of the term "*Area*" from Article 26(1), to conclude that it meant "the territory under the state's sovereignty" or "the territory under the sovereignty of the member states of such REIO,"[342] which InfraRed argued was not manifestly arbitrary or unreasonable.[343]

285.    The Tribunal also analyzed the context of the same Article 26 highlighting that it provided that "even in case of conflict with another treaty to the extent that the ECT is 'more favourable to the Investor or the Investment,'"[344] and that Spain "had the burden of demonstrating that the EU legal system provides a method to resolve Claimants' dispute with Spain that is 'more favourable' to the investors than the one provided at Article 26(1) ECT", which it did not.[345]

286.    Therefore, InfraRed considered that all the declarations from Prof. Gosalbo in its report should be disregarded.[346] It pointed to exhibits CL-359 and CL-360 to contradict Gosalbo's opinion.[347]

287.    Furthermore, the absence of a disconnection clause between the ECT and EU treaties confirmed the Contracting Parties' intention to apply Article 26(1) of the ECT to intra-EU disputes.[348] On this point InfraRed argued that Spain mischaracterized the findings of the Tribunal because it did not conclude that "in the absence of a disconnection

---

[339] Counter-Memorial, ¶80.
[340] Counter-Memorial, ¶83 quoting the Application on Annulment, ¶18 and ¶104.
[341] Counter-Memorial, ¶83.
[342] Counter-Memorial, ¶84.
[343] InfraRed's PHB, ¶¶31-46.
[344] Counter-Memorial, ¶86 quoting Award, ¶264.
[345] Award, ¶264.
[346] Counter-Memorial, ¶87.
[347] InfraRed's Rejoinder on Annulment of the Award, April 30, 2021, ¶72.
[348] Counter-Memorial, ¶88.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

clause, [it] cannot conclude that the EU's ratification of the ECT replaces the consent given individually by each EU Member State to the ECT." To the contrary, the Tribunal remarked that its conclusion regarding the absence of a disconnection clause would have been different "if the EU members states that signed the January Declarations would have withdrawn from the ECT or activated the procedure for amending the ECT."[349] In its PHB, InfraRed highlighted that the Tribunal confirmed that the *travaux préparatoires* of the ECT showed that the EU failed to include a disconnection clause in the treaty.[350]

288.    Regarding the argument related to the July 2019 Declaration, InfraRed argued that this communication was not relevant because, as the Tribunal recognized, "they were not adopted within the EU legal order and are not EU legal instruments."[351] Therefore, the Tribunal concluded that "they cannot have an interpretative effect on the content of EU law regarding investment protection and treaties concluded, inter alia, between EU member states."[352] Although Spain disagrees, it did not show a manifest excess of power.[353]

289.    It further added that the Tribunal resolved that ¨the principle of the primacy of EU law in intra-EU relations is not binding upon the Tribunal, and at any rate, does not exclude the application of the ECT to intra-investment disputes,"[354] and Spain did not bring any relevant argument in its Memorial in this respect.[355]

290.    InfraRed considered that the *Achmea* Judgment did not invalidate the Parties' agreement to arbitrate under the ECT. It alleged that Prof. Gosalbo "glosses over an important fact: *Achmea* never mentions the ECT,"[356] the BIT at issue in *Achmea*, was a completely different type of treaty applying only to EU parties and applying a different body of law than the ECT.[357]

---

[349] Counter-Memorial, ¶89, Award, ¶272.
[350] InfraRed PHB's, ¶¶ 21-29.
[351] Counter-Memorial, ¶91.
[352] Award, ¶269.
[353] Counter-Memorial, ¶91.
[354] Counter-Memorial, ¶¶92-93.
[355] Counter-Memorial, ¶94.
[356] Counter-Memorial, ¶100.
[357] Counter-Memorial, ¶100.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 77 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

291.    The Tribunal confirmed that with regard to this issue, "the ECJ […] has not taken so far any position as to the applicability of its judgement in the *Achmea* case to arbitration tribunals jurisdiction of which is based on the ECT."[358] Therefore, Spain could not claim that *Achmea* also applies to a "multilateral treaties such as the ECT"[359] and less that the Tribunal did not give the proper value to this decision. In any case, InfraRed argued, Spain failed to demonstrate how the *Achmea* Judgment could retroactively invalidate an agreement entered before that decision was rendered, especially given the reliance of investors, such as InfraRed, on an international arbitral dispute resolution mechanism.[360]

292.    In the Rejoinder, InfraRed again posited that Spain did not prove beyond "uncertainty" or "doubt" that the Tribunal manifestly exceed its jurisdiction.[361]

293.    InfraRed also considered irrelevant the judgement of the Grand Chamber of the Court of Justice of the European Union, issued in the Case *C-741/19. Republic of Moldova v Komstroy*, as it alleges, among other arguments, that "the question on the intra-EU applicability of the ECT does not form part of the question posed by the French court, nor of the CJEU's response", that  "the judgment shows that the intra-EU issue is far from obvious or self-evident […] and demonstrates that the Tribunal's decision, rendered in line with the totality of previous resolutions that dismissed the objection, was at least reasonable and defensible", that "the Committee does not have the power to reconsider the merits of Spain's intra-EU objection de novo with or without the newest judgment", and that the "judgment cannot undermine the application of Articles 16 and 46 ECT. Neither the EU nor certain EU Member States have the power to modify the ECT by themselves as a matter of international law, let alone with retroactive effects to decisions rendered years earlier."[362]

294.    Furthermore, InfraRed considered that Spain failed to explain why the Tribunal's interpretation of Article 26(6) was unclear or unreasonable as required by Article 52(1)(b) of ICSID Convention. Contrary to Spain, the Tribunal applied the VCLT when

---

[358] Award, ¶ 269 (emphasis added).
[359] Counter-Memorial, ¶101.
[360] Counter-Memorial, ¶103.
[361] Rejoinder, ¶76.
[362] InfraRed's letter to the Committee dated September 16, 2021.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

interpreting Article 26(6) ECT. Similarly, Spain did not rebut the Tribunal's finding that the absence of a disconnection clause between the ECT and EU treaties confirmed the contracting's Parties intention to apply Article 26(1) to intra-EU disputes.[363]

295.  Also, Spain did not prove why paragraph 272 of the Award (stating that there is no incompatibility between EU law and ECT provisions) is unclear or unreasonable.[364] InfraRed also considered that the case law quoted by Spain (*Vivendi I* and *MHS*) did not support its allegations.[365] With all the above arguments, InfraRed concluded that Spain did not prove that the Tribunal's decision about the intra EU-objection was "unreasonable" as required under Article 52(1) (b).

296.  In order to rebut Prof. Gosalbo allegations, InfraRed pointed to the expert declarations from Priet Eeckout, Prof. of EU law and former *référendaire* of the ECJ who indicates that "[t]he objections in the *Achmea* Judgment against intra-EU arbitration are <u>expressly confined to bilateral agreements between Member States</u> which have not been concluded by the EU; they <u>therefore do not extend to the ECT</u>."[366]

297.  Regarding the application of Article 26 of the ECT to intra-EU disputes, Prof. Eeckhout considers that "[e]ven if the Achmea Judgment were to extend to the ECT, that would not preclude intra- EU arbitration under the ECT. The validity of Article 26 ECT under international law would not be affected, nor would its interpretation and effect."[367] Prof. Eeckhout further states that Article 26(6) is not relevant to issues concerning the dispute settlement clause of Article 26 of the ECT.[368]

298.  InfraRed submitted that under Article 16(2) of the ECT, the contracting parties to the ECT, including the EU, specifically and explicitly agreed that previous or subsequent treaties that they enter into with each other shall not be construed to derogate from any provision in Part III ("Investment Promotion and Protection," including the substantive protections) or Part V ("Dispute Settlement") of the ECT, where a provision is more favorable to the Investor. Therefore, Article 26 ECT, which was more favorable to an

---

[363] Rejoinder, ¶77.
[364] Rejoinder, ¶80.
[365] Rejoinder, ¶81.
[366] Rejoinder, ¶87, quoting CL-359, ¶11 (emphasis in the original).
[367] Rejoinder, ¶88, quoting Reply, ¶77.
[368] Rejoinder, ¶89.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 79 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

investor, should prevail over EU law,[369] and Spain's submission that EU law has "primacy" over the ECT lacks support.[370]

299.    Regarding the value of the EC's communication and the 2019 January Declarations, InfraRed reaffirmed that they "have no bearing on the interpretation of the ECT."[371]

300.    As a conclusion, InfraRed posited that there was no issue of jurisdiction that would limit or impede the Tribunal from hearing a ECT case between a Member State of the UE and a company from another EU State, and therefore in accordance with Article 52(1)(b) of ICSID Convention there was no evidence of excess of powers (let alone manifest) on the decision of this jurisdictional objection.

### 3. The Tribunal did not exceed its powers when applying international law to the dispute

301.    Regarding the applicability of EU state aid Law, InfraRed considered that the Committee should disregard this new argument[372] because the Gosalbo Report was not presented during the Arbitration and the Committee should avoid litigating new legal arguments included in Gosalbo Report.[373] The fact that Spain disagreed with the Tribunal does not make the Award annullable.[374]

302.    When the Tribunal determined that EU law was not relevant to the analysis of InfraRed's legitimate expectation,[375] the Tribunal clarified that this determination did not infringe the autonomy of the EU and its legal order.[376] In any case, InfraRed alleged that this ground should be "manifest" to lead to the annulment of the Award.

303.    InfraRed submitted in the Rejoinder, that Spain could not argue that the Tribunal failed to apply the proper law since the Tribunal in fact considered the application of EU law but determined that it was "highly irrelevant."[377]

---

[369] Rejoinder, ¶91; InfraRed's PHB, ¶¶67-99.
[370] Rejoinder, ¶¶91-92.
[371] Rejoinder, ¶93 quoting CL-359, Prof. Piet Eeckhout's Declaration in *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, US District Court for the District of Columbia, June 24, 2019, ¶12 (iii), p. 6.
[372] Counter-Memorial, ¶106.
[373] *Ibid.*
[374] *Ibid.*
[375] Counter-Memorial, ¶107.
[376] Counter-Memorial, ¶108.
[377] Rejoinder, ¶9.

304.    InfraRed considered that Spain was unable to explain why the Tribunal failed to apply the applicable law. InfraRed highlighted that the Tribunal noted that "the provisions EU law are not dispositive nor even relevant to resolve the issues raised by this dispute,"[378] and that this was perfectly consistent with the fact that the application of the ECT was sufficient to adjudicate the dispute.[379] InfraRed added that the case law cited by Spain did not favor its position.[380]

305.    The references to Article 38 of the ICJ Statute were inapposite, as the reference to Article 103 of the United Nations Charter, state practice and the principle of autonomy of EU law over domestic law. In the context of investment claims under ECT, those rules and Articles 107 and 108 of the TFEU, related to EU law on state aid, were irrelevant, in InfraRed's position.[381]

306.    In addition, InfraRed considered that Spain's position was unclear in that EU law fell within the wording of "principles of international law" or under the reference to "applicable rules" that Article 26 ECT provides for. In paragraph 207 of its Reply, Spain concludes that "Autonomy and primacy of EU law are applicable international custom"[382] but in paragraph 214 of the Reply, it criticized the disregard of EU state Aid Law.[383] Therefore, it was unclear on what international custom it relied. That the principle of autonomy and primacy of EU law could qualify as 'international custom' is highly doubtful but the allegation that EU state aid law is an international custom was utterly wrong.[384]

307.    InfraRed concluded that the applicable law in this case was the ECT and not EU law, and the Tribunal's finding that Spain breached Article 10 of the ECT could not be annulled for failing to apply proper law.[385] If anything, InfraRed added, the EU law should be treated as a fact.[386]

---

[378] Rejoinder, ¶ 101 quoting Award, ¶258.
[379] Rejoinder, ¶ 101.
[380] Rejoinder, ¶ 105-109.
[381] Rejoinder, ¶111; InfraRed's PHB, ¶¶100-122.
[382] Rejoinder, ¶112 quoting Reply, ¶207.
[383] Rejoinder ¶112 quoting Reply, 204.
[384] Rejoinder, ¶112.
[385] Rejoinder, ¶117.
[386] Rejoinder, ¶120.

4. <u>The Tribunal correctly applied the proper law in assessing the legitimate expectations and in any case a misapplication of the law does not constitute a manifest excess of power</u>

308. In its reply to the argument raised by Spain that even in the case the Tribunal were understood to have applied EU law, it resulted in an incorrect application of the law, InfraRed considered that Article 52(1) is not warranted in cases of an alleged misapplication of the proper law - not even if a "gross misapplication" occurred [387] - because all the Committee must do is to assess whether the Tribunal correctly identified the applicable law and applied it, which it did.[388]

309. InfraRed therefore disagrees with Spain's subsidiary argument that "there has been a gross misapplication of EU law", and that "the assessment of legitimate expectations should include a verification of whether the promised subsidy is lawful under the law applicable to the dispute and in accordance with national law."[389]

310. InfraRed argued that neither Article 107 nor Article 108 TFEU established any obligation on private companies because these were directed to Member States.[390]

311. Also, the fact that Spain had failed to give notice to the EC about the remuneration scheme is not attributable to InfraRed,[391] but more importantly, the regime under which InfraRed invested has never been declared illegal.[392]

312. For all these reasons, InfraRed concluded that Spain failed to prove that the Tribunal acted manifestly outside the scope of its mandate in its jurisdictional analysis and in its determination of the applicable law. Therefore, there was no basis to annul the Award under Article 52(1)(b) of the ICSID Convention.[393]

---

[387] Rejoinder, ¶121.
[388] Counter-Memorial, ¶112.
[389] Rejoinder, ¶121, Reply, ¶215, Section V.A.4.
[390] Rejoinder, ¶125.
[391] Rejoinder, ¶125, 126.
[392] Rejoinder, ¶127.
[393] Rejoinder, ¶130.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 82 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

5.  <u>InfraRed is entitled to international protection</u>

313.   InfraRed considered that the arguments about the misrepresentation of the installed capacity,[394] and the lack of jurisdiction of the Tribunal for "falsehood in a public document" and therefore the allegation that InfraRed had no clean hands to appear before the Tribunal are false and, in any case, were never raised during the Arbitration.[395]

314.   Spain failed to show any excess of powers and was attempting to reopen the debate since "the Tribunal concluded that: (i) the term 'installed capacity' in Article 27(1) of the EPA 1997 should be read as 'net output', and (ii) InfraRed's CSP Plants net output was always equal or lower to 50MW."[396]

315.   In InfraRed's position, Spain never evidenced that InfraRed's conduct in relation to the installed capacity constituted a crime[397] during the Arbitration. It argued that the Award gave "significant weight to the fact the Spanish National Commission of Energy (CNE) recognized in its own documents that the installed capacity was under 50MW."[398]

316.   InfraRed argued that Spain had not submitted any new factual argument related to the alleged misinterpretation of the installed capacity and was now repeating the arguments that the Tribunal dismissed in the Award.[399] Therefore, there was no basis to annul the Award under 52(1)(b) of ICSID Convention because Spain, by not raising the illegality argument during the Arbitration, "has explicitly waived it."[400]

317.   In the Rejoinder, InfraRed further argued that if Spain considered that InfraRed committed a criminal offense it should have raised this issue at the very beginning of the proceeding, according to Article 41 of the ICSID Convention.[401] In any case, InfraRed considered that Spain should have submitted a final judgment issued by a competent court condemning InfraRed for such a criminal offense,[402] but failed to do

---

[394] Application for Annulment, ¶38; Memorial, ¶75.
[395] Counter-Memorial, ¶114.
[396] Counter-Memorial, ¶120.
[397] Counter-Memorial, ¶121; InfraRed's PHB, ¶¶140-147.
[398] Counter-Memorial, ¶121.
[399] Counter-Memorial, ¶¶121-125; Rejoinder, ¶37, 38.
[400] Counter-Memorial, ¶116; Rejoinder, ¶¶ 37, 39, 40-43.
[401] Rejoinder, ¶41, 44.
[402] Rejoinder, ¶45.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 83 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

so.[403] The proceedings referred by Spain are not even within the first stages in a criminal proceeding, meaning that "no criminal proceedings have been initiated in relation to the facts alleged by the State attorneys."[404]

318.   InfraRed also emphasized that it had not been formally charged or under investigation, "at the moment, there is no indication of a potential criminal liability for InfraRed that could arise from the complaint filed."[405]

319.   Regarding Prof. Demetrio's opinion, InfraRed contended that this report was based on wrong assumptions, insofar as its starting point being a biased interpretation of the concept of "installed power" which is not shared by InfraRed and was not shared by the Tribunal.[406]

320.   InfraRed also explained how the elements of the alleged crimes of subsidies fraud, and falsifying documents were not demonstrated by Spain,[407] to conclude that the "clean hands" theory and the accusation of illegality were unsupported.[408]

321.   With regard to the installed capacity, InfraRed considered that the Tribunal reasoned its findings and concluded that the determination of this concept is (i) based on the interpretation of the term "installed capacity" at Article 27 of the EPA 1997, (ii) the *Eiser* award was not a basis for the determination of the installed capacity.[409] For these reasons, InfraRed argued that the Tribunal did not exceed its powers in granting protection to the investment.

322.   InfraRed concluded that even if the Award had not decided that the installed capacity was compatible with the threshold for accessing the benefits, the alleged facts would never correspond to a criminal behavior and therefore there are no grounds for annulment.

---

[403] Rejoinder, ¶46.
[404] Rejoinder, ¶48.
[405] Rejoinder, ¶49 and ff., 56.
[406] Rejoinder, ¶58.
[407] Rejoinder, ¶60-62.
[408] Rejoinder, ¶64.
[409] Rejoinder, ¶67.

### D. THERE ARE NO GROUNDS TO ANNUL THE AWARD ON THE BASIS THAT THE TRIBUNAL FAILED TO STATE REASONS

323. Regarding the challenge for the failure to state reasons Spain argued that Article 52(1)(e) is "inherently related" to the requirement in Article 48(3) of the ICSID Convention that an award "shall state" the reasons upon which it is based.[410] InfraRed indicated that these provisions referred to a high standard and Spain had failed to discharge that burden.[411]

324. The Award did not fail to state reasons because the Tribunal stated its reasoning with regard to: (i) the discussion over the installed capacity, (ii) the applicable law, (iii) the interpretation of Article 10(1) ECT, (iv) the interpretation of the fair and equitable treatment under Article 10(1) ECT, and (v) the findings on damages.[412]

325. After presenting a short summary of the stages of the original procedure,[413] InfraRed stated that the Award was issued "unanimously" by the three arbitrators except for a single footnote (footnote 782 by Prof. Dupuy) about damages. InfraRed considered that the Award "processes the Parties' allegations and the awards and decisions invoked by each side in order to provide its detailed reasoning and findings."[414]

326. InfraRed signaled in the Rejoinder that Spain's Reply had "apparently dropped three of the reasons it argued for annulment under Article 52(1)(e)." The Reply no longer submitted that the Tribunal would have allegedly failed to express adequate and sufficient reasons concerning (i) its decisions on the date of investment, (ii) the decision not to apply EU law when deciding its jurisdiction, and (iii) its conclusion to adopt the DCF methodology.[415]

---

[410] Counter-Memorial, ¶127.
[411] Counter-Memorial, ¶127; Rejoinder, ¶13.
[412] Rejoinder, ¶12.
[413] Counter-Memorial, ¶131.
[414] Counter-Memorial, ¶132.
[415] Rejoinder, ¶206.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 85 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

1. The standard of proof under Article 52(1)(e) is particularly high, and as long as reasons have been stated, even if incorrect or unconvincing, an award cannot be annulled

327. Since the grounds of annulment are to be evidenced with a high standard, InfraRed posited that Spain should have demonstrated that the Award's reasoning is "contradictory, frivolous, incomprehensible or completely absent" and that such defect is "manifest" on the face of the Award itself. The manifest factor requires that the award contains no reasons at all for a particular finding.[416]

328. In addition to that, InfraRed's submission indicated that "the duty to state reasons refers only to a minimum requirement. It does not call for tribunals to strain every sinew in an attempt to convince the losing party that the decision was the right one."[417]

329. InfraRed argued that Spain conceded that a tribunal is only required to state reasons for its conclusions in a manner that is sufficient to allow the committee "to follow how the tribunal proceeded from Point A to Point B." However, Spain failed to note that said reasons "do not need to be explicitly stated as long as the reader can understand the decision reached by the tribunal."[418] Consequently, Spain's allegations did not satisfy such standard.[419]

330. InfraRed also contended in the Rejoinder that Spain misinterpreted the applicable legal standard and that the Award contained reasons that went well beyond the minimum requirement of reasoning required of ICSID tribunals.[420]

2. The Tribunal justified its decision on the rejection of the intra-EU objection, and on the application of international law (to jurisdiction and the merits)

331. InfraRed turned then to demonstrate that the Tribunal justified its decision on the rejection of the intra-EU objection and on the application of international law.[421]

---

[416] Counter-Memorial, ¶135.
[417] Counter-Memorial, ¶136.
[418] Counter-Memorial, ¶137 quoting CL-337.
[419] Counter-Memorial, ¶143.
[420] Rejoinder, ¶204.
[421] Counter-Memorial, ¶¶ 146-147.

Regarding the jurisdictional objection, the Tribunal justified why it rejected it by making reference to: [422]

> "(i) all the relevant arguments raised by Spain (which are exactly the same arguments that Spain tries to re-litigate in this Annulment proceeding) and InfraRed; (ii) the reasoning of those ECT tribunals that, before InfraRed, had rejected this objection in similar circumstances (*PV Investors*, *Charanne*, *RREEF*, *Isolux*, *Eiser*, *Wirtgen v. Czech Republic* and *Novenergia*); (iii) and gave a detailed analysis of why it decided to reject the intra-EU objection, also explaining why the March 2018 CJEU *Achmea* Judgment or the 2019 January Declarations did not change the Tribunal's affirmation of its jurisdiction under the ECT and the ICSID Convention. The last step of the Tribunal's reasoning is contained at paras. 256 – 274 and is perfectly understandable as well as consistent."

332. In paragraphs 148 to 151 of its Counter-Memorial, InfraRed summarized the main findings from the Tribunal regarding the EU law and other EU-related declarations, and concluded that Spain "did not prove, as required under Article 52(1)(e) ICSID Convention, that the reasoning of the Tribunal when rejecting the Intra-EU objection was 'contradictory, frivolous, or incomprehensible.'"[423] It added that as in the other 28 cases, the tribunals that had addressed the "Intra-EU" issue to date had rejected it,[424] proving that the Tribunal's reasoning was not frivolous.

333. Regarding the EU state aid law claim, InfraRed considered that the Tribunal justified why it decided not to apply EU state aid rules for the purposes of assessing InfraRed's legitimate expectations,[425] and recollected Spain's arguments on this matter.[426]

334. The Tribunal reasoned that "neither EU, nor Spanish domestic law (or the Supreme Court decisions) are to be used to assess whether a state has breached its international treaty obligations."[427] In this regard, the Tribunal added that EU state law aid rules were "not relevant to the analysis of the issue as to whether Respondents violated a specific commitment tendered to the CSP sector,"[428] and that "the content and interpretation of

---

[422] Counter-Memorial, ¶147, citing Award, pp. 57-70, 64-68, 68-74 and 256-274.
[423] Counter-Memorial, ¶153.
[424] Counter-Memorial, ¶153. In ¶77 of the Counter-Memorial a different figure is mentioned.
[425] Counter-Memorial, ¶155.
[426] Counter-Memorial, ¶156.
[427] Counter-Memorial, ¶157; InfraRed's PHB, ¶¶124-132.
[428] Award, ¶ 443.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 87 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

EU law and regulations is largely irrelevant to resolve the merits of the present dispute."[429]

335.    Finally, InfraRed held that even if the Committee considered that EU law and EU state aid rules were to be applied to the merits of the dispute, the reality was that the reasoning of the Tribunal fully satisfied the standard under Article 52(1)(e).[430]

336.    In the Rejoinder, InfraRed also considered that the Tribunal justified why it decided not to apply EU state aid rules for the purposes of assessing InfraRed's legitimate expectations.[431]

337.    InfraRed considered that the Tribunal in effect justified its decision on the application of international law, and consequently why it decided not to apply EU state aid rule for the purposes of assessing InfraRed's legitimate expectations.[432] The Tribunal reasoned that neither EU, nor Spanish law (including the Supreme Court decisions) are to be used to assess whether a state has breached its international treaty obligations.[433]

338.    In their PHB, InfraRed argued that EU law does not form part of the law applicable to an ECT dispute and therefore no conflict of applicable rules between the ECT and EU law could arise under Article 26(6) ECT, and even if this were the case, Article 26(6) ECT could incorporate EU law as a 'rule' or 'principle of international law,' EU law is not lex posterior, Article 30 VCLT could not be applicable to a situation where the parties to the international treaty are not the same, the subject matters are different and Article 16 ECT (which is the *lex specialis*) provides for a rule of conflict in favor of Article 10 ECT (Part III ECT) and Article 26 ECT (Part V ECT).[434] Moreover, Article 46 ECT and Article 25(1) ICSID Convention further provide limits to the denial of InfraRed's claim against Spain.[435]

339.    A similar argument was raised by InfraRed regarding the installed capacity issue. Spain's argument that the Tribunal only based its reasoning on the *Eiser* award was

---

[429] Counter-Memorial, ¶158 quoting Award, ¶ 444.
[430] Counter-Memorial, ¶159.
[431] Rejoinder, ¶208.
[432] Rejoinder, ¶216.
[433] Rejoinder, ¶210 quoting paragraph 411 of the Award.
[434] InfraRed's PHB, ¶¶47-63.
[435] InfraRed's PHB, ¶¶64-66.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 88 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

without merits. The Tribunal concluded in its decision on Spain's Application for Revision that "even if the Eiser Award 'had never existed', it is manifest that both the reasoning and the conclusions with respect to the installed capacity issue as articulated in the Award would remain unaffected."[436]

### 3. The Tribunal reasoned its decision regarding the determination of installed power

340.  Regarding the determination of the installed power capacity, InfraRed submitted that the Tribunal duly assessed Spain's allegations on the installed capacity of the CSP Plants,[437] and assessed all the evidence from the expert reports filed by the Parties,[438] and the report issued by *Red Eléctrica de España* (the Spanish electricity grid operator) that confirmed that the net output of the Plants was 50 MW or less.[439]

341.  InfraRed argued that the Tribunal explained why it attached little evidentiary value to other documents submitted by Spain, including the Garrigues report and the turnkey contracts of the Plant.[440] Similarly, Spain failed to prove that the reasoning of the Tribunal for determining that the installed capacity was equal to or less than 50MW was "contradictory, frivolous, or incomprehensible" as required by Article 52(1)(e).

342.  In response to Spain's argument that the Tribunal used inconsistent arguments to conclude that the "net power" was an important element to ascertain the installed capacity, InfraRed contended that the Tribunal did not incur in any contradiction and that paragraph 189 of Spain's Memorial did not point to any contradiction in the Award itself,[441] but manifested a mere disagreement with the Tribunal's assessment of the evidence.[442]

343.  In the Rejoinder, InfraRed added that in order to prove the Award failed to state reasons, it is required to prove that the award contains no reasons at all for a particular finding

---

[436] Rejoinder, ¶208 quoting CL-375-ENG, *InfraRed v. Kingdom of Spain*, Decision on Claimant's objection under ICSID Rule 41(5) to Respondent's Application for Revision, March 8, 2021, ¶ 75.
[437] Counter-Memorial, ¶164.
[438] Counter-Memorial, ¶166.
[439] Counter-Memorial, ¶167.
[440] Counter-Memorial, ¶169-70.
[440] Counter-Memorial, ¶169-70.
[441] Counter-Memorial, ¶172.
[442] Counter-Memorial, ¶173.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

that is indispensable to apprehend the tribunal's reasoning.[443] To support this InfraRed quoted the *Enron v. Argentina* decision and the committee in *Klöckner* to support its statement that the arbitrators do not have to deal with all of the parties' arguments. In this regard, the Tribunal was not required to comment on all arguments of the Parties in relation to the Plant's installed capacity. The Tribunal was required to state reasons for its decision that the Plants had less than 50MW capacity, but not necessarily the reasoning behind it.[444]

4. The date of the investment was an uncontested matter during the underlying arbitration: Spain's counsel explicitly agreed that such date was July 28, 2011 in the *Parties' List of Uncontested Facts*

344. Regarding the allegation of the date of the investment, InfraRed submitted that Spain's counsel explicitly agreed that such date was July 28, 2011 in the Parties' List of Uncontested Facts.[445] Spain never contested this date, and Spain's quantum expert confirmed that the date of the investment was July 28, 2011.[446]

345. This is also confirmed in the Opening Statement, as a reaction to the fact that InfraRed was allegedly convinced that this request had been abandoned by Spain.

346. InfraRed then stated that "The reason for such abandonment appears to be simple. During the arbitration, Spain confirmed in writing, not once, not twice, but multiple times, that the date of InfraRed's investment was July 28, 2011. This appears not only in Respondent's Post-Hearing Brief, as cited on screen, and Respondent's Rejoinder on the Merits, but as a matter of fact, as seen also on screen, both parties stipulated July 28, 2011 as the date of the investment in an agreed chronology that the parties submitted to the Tribunal in September 2017 (C-723)."[447]

5. The Tribunal reasoned its conclusions on liability

347. In relation to liability, regarding the scope of the FET standard in the ECT,[448] InfraRed contended that Spain ignored the Tribunal's reasoned conclusions about (i) the legal

---

[443] Rejoinder, ¶222.
[444] Rejoinder, ¶226.
[445] Counter-Memorial, ¶¶178-179.
[446] Counter-Memorial, ¶¶181-184.
[447] Opening Statement, Day 1, 15:36 lines 22-5 and 15:37, lines 1-6. See also InfraRed Post-Hearing Brief, ¶¶153-154.
[448] Memorial, ¶185.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 90 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

standard applicable under Article 10(1) of the ECT in assessing a host State FET obligation, and (ii) the reasons why Spain breached InfraRed's legitimate expectations.[449]

348. InfraRed emphasized that the Tribunal devoted more than 10 pages to analyze the standard governing the FET providing a detailed analysis of the meaning of FET in line of the *jurisprudence constante*.[450] The Tribunal held that "the FET obligation is a distinct standard linked (among others) to the legitimate expectations of investors" and that contrary to Spain's assertions, it "is not limited to non-discrimination."[451]

349. Regarding the legitimate expectation of stability, InfraRed pointed to the Tribunal's decision in paragraph 365 establishing that the Tribunal "does [ ] accept and agree with Respondent's position to the effect that a legitimate expectation of stability (*i.e.* immutability) can only arise in the presence of a specific commitment tendered directly to the investor or industry sector at issue."[452]

350. InfraRed submitted that the Tribunal interpreted Article 10(1) of the ECT under the VCLT[453], and in any case, the reasons behind the Tribunal's reasoning "do not need to be explicitly stated as long as the reader can understand the decision reached by the tribunal."[454] InfraRed argued that "here, as all throughout the Award,[455] the Tribunal took into consideration the Articles of the VCLT to analyze the content of Article 10(1) of the ECT, even if it did not explicitly mention them in its analysis."[456]

351. In any case, Spain's allegations will not lead to the annulment of the Award, because the Tribunal gave a detailed explanation of its interpretation of the FET and thus the Award is not annullable.[457] In addition, and it appears very clear in the Award that the

---

[449] Counter-Memorial, ¶187.
[450] Counter-Memorial, ¶189.
[451] Award, ¶ 365.
[452] Award, ¶366.
[453] Counter-Memorial, ¶190.
[454] Counter-Memorial, ¶190.
[455] *See* e.g., Award, ¶¶346, 358, 365, 366.
[456] Counter-Memorial, ¶¶190 and 191, with case law regarding similar definition and scope of the FET standard.
[457] Counter-Memorial, ¶195.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 91 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

"several standards of protection for investors in the energy sector" contained in Article 10(1) ECT are much more favorable to them than the protection afforded by EU law.[458]

352.  InfraRed also argued that the Award did not contradict itself on liability. First, regarding the value that Tribunal provided to the "Purported Agreement" and the reasons for its comparison with other facts such as the normative changes before InfraRed investment and Supreme Court decisions, the Tribunal explained why the Spanish Supreme Court jurisprudence was irrelevant in the Arbitration[459] and, as stated in *Impregilo,* there was no requirement for arbitral tribunals to indicate in an award the reasons why some types of evidence were more credible than others.[460]

353.  InfraRed stated that "inadequate reasons" cannot lead by themselves to the annulment of the Award. Therefore, even if Spain's interpretation of Article 44.1 of the RD 667/2007 was correct (*quod non*) the latter will not lead to the annulment of the Award under Article 52(1)(e) of the ICISID Convention.[461]

354.  Similarly, in the Rejoinder, InfraRed reiterated that the Tribunal reasoned its findings in relation to Article 10(1) of the ECT in more than 30 pages in the Award, where it (i) summarized the Parties' positions, (ii) cited the relevant recent awards that had addressed that matter, and (iii) provided a detailed analysis of its conclusions.[462] It also devoted pages to the analysis of the standard governing the assessment of the FET clause under the ECT.[463]

355.  Regarding legitimate expectations, InfraRed considered that the existence of the *Eiser* award was not relevant for the analysis of the present case. In its view, "What is relevant is that, when the Tribunal issued its decision, the *Eiser* award (among others) was a relevant precedent which served as basis for the Tribunal's decision. In that regard, it is also worth noting that the *Eiser* award was annulled for reasons which are wholly

---

[458] InfraRed's PHB, ¶¶95-97.
[459] Counter-Memorial, ¶199.
[460] Counter-Memorial, ¶199.
[461] Counter-Memorial, ¶ 200-203.
[462] Rejoinder, ¶234, quoting Award, ¶¶ 99-132.
[463] Rejoinder, ¶234, quoting Award, ¶¶ 100-110.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 92 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

unrelated to the tribunal's analysis of the FET standard under the ECT or its applications to the fact of that case."[464]

356.    InfraRed highlighted that the Award, in paragraph 365, concluded that pursuant to *jurisprudence constante* the scope of the FET obligation is not limited to non-discrimination and that the FET obligation was rather a distinct standard linked to the legitimate expectations of investors as assessed on the facts of the case.[465]

357.    In addition, InfraRed considered that the Tribunal never made the statement that it would examine the "jurisprudence of the Spanish Supreme Court".[466] The phrase that Spain quoted comes from the Award's summary of the *Charanne* award and cannot be attributed to the Tribunal.[467]

358.    Similarly, regarding the 2010 Agreement, InfraRed argued that Spain omitted to cite the beginning of the sentence that confirms that the Tribunal considered the Purported Agreement as a fact (and not as a "legally" binding source of obligations as Spain seemed to allege).[468] In the same line, Spain's argument that the Tribunal omitted to give an in-depth treatment to the evidence did not constitute grounds for annulment under Article 52(1)(e).[469] Therefore, the Tribunal did not have to explain why it preferred to rely on certain evidence and not on the documents Spain believes to be more relevant so this allegation for annulment should be dismissed.[470]

359.    For InfraRed "the key point is that Article 10 of Energy Charter Treaty as well as the provisions of Part III of the Energy Charter Treaty on investment protections were the only legal provisions that the Tribunal had to review and apply for the purposes of finding if Spain had breached its international obligations,"[471] as allegedly the Tribunal did in paragraphs 272 in its entirety, 411, 443, 444, and the rest of the pages in the Award referring to Article 10 of the ECT.

---

[464] Rejoinder, ¶235 (ii).
[465] Rejoinder, ¶239.
[466] Rejoinder, ¶243.
[467] Rejoinder, ¶243 quoting Award, ¶39.
[468] Rejoinder, ¶245.
[469] Rejoinder, ¶246.
[470] Rejoinder, ¶250.
[471] Hearing Tr., Day 1, 15:12, lines 8-14.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

360.    In accordance with InfraRed's position, "the Tribunal's decision on why it is not necessary to apply EU law is perfectly reasoned. The Tribunal considered Spain's allegations about the directives, about other references to EU law, but the Tribunal concluded that those specific references were not relevant to resolve the issues raised by this dispute."[472]

### 6.    The Tribunal reasoned its findings on damages

361.    InfraRed argued that Spain's position that there are inconsistencies in terms of liability and damages, that those are without merits and stressed that Spain was seeking annulment under this ground not because there were inconsistencies in the Award's reasoning of damages, but because it disagreed with the conclusions reached by the Tribunal.[473] InfraRed stated that the "Tribunal used the DCF Joint Model developed by Spain's and InfraRed's experts and chose to include some of the parameters suggested by Spain, such as the 25 operation life time of the plants and the reduction of Brattle's but for scenario by assuming Spain's production scenario based on the Bank Case."[474]

362.    In any case, there were no grounds for annulment because as long as the reasons have been stated, even if incorrect, unconvincing or non-exhaustive, the award cannot be annulled under Article 52(1)(e).[475] Furthermore, "Spain's anticipated intent to submit additional expert report together with its Reply on Annulment, InfraRed wants to point out that Spain cannot raise new arguments or submit new evidence."[476]

363.    In the Rejoinder, InfraRed mentioned that Spain considered that the Tribunal omitted to consider Accuracy's position regarding (i) the risk of higher premium of the Disputed Measures, and (ii) the point about the fact that the InfraRed's holdings became more difficult to sell after the Measure at issue.[477] InfraRed noted that the Tribunal explicitly mentioned in the Award that "in coming to th[e] conclusion [about the regulatory risk and the illiquidity discount] the Tribunal has carefully reviewed the opinion and the methodology of the Accuracy experts and of the Brattle experts."[478] Contrary to

---

[472] Hearing Tr., Day 1, 15:12, lines 18-24.
[473] Counter-Memorial, ¶204.
[474] Counter-Memorial, ¶205.
[475] Counter-Memorial, ¶206.
[476] Counter-Memorial, ¶208.
[477] Rejoinder, ¶252.
[478] Rejoinder, ¶252 quoting Award, ¶ 580.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 94 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

Spain[479], InfraRed considered that nothing in *TECO* or *Pey Casado* decisions suggested that "insufficient" and "inadequate" reasons can lead, by themselves, to the annulment of an award.[480]

364. For all of the reasons set forth above, InfraRed argued that there was no basis to annul the Award under Article 52(1)(e) of the ICSID Convention. Spain had not discharged its burden to prove that the Award is unreasoned. Rather, InfraRed had shown that the Award includes detailed reasons and was consistent.

### E. THERE ARE NO GROUNDS TO ANNUL THE AWARD ON THE BASIS OF A SERIOUS DEPARTURE FROM A FUNDAMENTAL RULE OF PROCEDURE

365. InfraRed submitted that Spain mischaracterized what can be considered as a "serious departure" under Article 52(1)(d) of the ICSID Convention.[481]

    1. <u>Spain avoids mentioning some important nuances of the legal standard under Article 52(1)(d) of the ICSID Convention</u>

366. InfraRed disagreed with Spain on what constituted a "departure" from such rules in the present case.[482] There was no departure from the right to observe rules if an applicant disagreed with the Tribunal's conclusion reached after the analysis of the evidence.[483]

367. There may be a "departure" from the right to be heard and to be treated equally, as Spain explained, (i) when a party cannot present all relevant arguments and evidence,[484] or (ii) when a party does not have the opportunity to respond adequately to the arguments and evidence presented by the other.[485] Contrary to Spain's argument, however, the right to be heard did not mean to accord the same weight to the evidence provided by both parties.[486]

368. InfraRed added that for establishing a departure of a fundamental rule of procedure during the arbitration, it was required that the party raise its objection during the

---

[479] Reply, ¶ 345.
[480] Rejoinder, ¶263.
[481] Counter-Memorial, ¶211.
[482] Counter-Memorial, ¶216.
[483] Counter-Memorial, ¶217.
[484] Memorial, ¶256.
[485] Memorial, ¶257.
[486] Counter-Memorial, ¶219, Memorial, ¶¶268-274, 295-298.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 95 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

Arbitration, particularly at the hearing.[487] And Spain never argued, during 6 years of Arbitration, that the Tribunal had infringed its due process rights.[488]

369.    In no case Spain proved that the Award departed from fundamental rules of procedure and even less so that any alleged departure could be "serious". InfraRed argued that Spain misinterpreted the scope of this standard because it required (i) the existence of actual material prejudice, and (ii) a showing that the violation has caused "substantially different result" in the case.[489] None of these factors had been demonstrated in Spain's submissions.

### 2.    The InfraRed Tribunal did not depart from any fundamental rule of procedure

370.    Spain also contended that the Award suffered from one anomaly due to the "scarce reference to the evidentiary activity developed in the oral hearings […]  regarding the existence or not of a breach of the ECJ." [490] However, the fact that Spain's application is directed to the Tribunal's "judgement" of the evidence presented by Spain, is not a ground for annulment under Article 52(1)(d).

371.    Regarding the alleged Tribunal's lack of reference to the testimonies of Mr. Montoya and Mr. Caravantes, InfraRed contended that the Tribunal referred several times to those testimonies in the Award and during the hearing[491] with multiple questions from the Tribunal. In addition to that, InfraRed argued that "tribunals do not have to indicate in an award the reasons why some types of evidence are more credible than others."[492]

372.    The Tribunal did not ignore Spain's evidence but simply used its "discretion" to evaluate the evidence of the case,[493] and therefore InfraRed considered that Spain's application was "just a petition for revision and reconsideration of the conclusion that the Tribunal reached from Mr. Caravantes and Mr. Montoya witness statements."[494]

---

[487] Counter-Memorial, ¶221.
[488] Counter-Memorial, ¶221; Rejoinder, ¶¶11 and 134.
[489] Counter-Memorial, ¶224.
[490] Counter-Memorial¶ 268, citing Memorial ¶268.
[491] Counter-Memorial, ¶230.
[492] Counter-Memorial, ¶231-233.
[493] Counter-Memorial, ¶233.
[494] Counter-Memorial, ¶234.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 96 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

373. About the shift on the burden of proof alleged by Spain[495] on the issue of the due diligence to know the regulatory framework in which the investment was made, InfraRed considered that the Tribunal never reversed the burden of proof by offering a "positive effect to the lack of Due Diligence."[496] In its submission InfraRed argued that the Tribunal after considering Spain's arguments, came to the conclusion that "a more thorough due diligence would not have alerted Claimants to the imminent enactment of the Measures in Question."[497]

374. InfraRed considered that the fact that Spain did not persuade the Tribunal with its allegation that a more exhaustive due diligence would have led to a different understanding, could not be a violation of any fundamental rule of procedure.[498]

375. Similarly, InfraRed was of the position that the Tribunal did not ignore the Spanish Supreme Court judgements but disagreed with Spain's position as to their relevance, shown in paragraphs 439-441 of the Award.[499] The Tribunal explicitly mentioned the case law of the Supreme Court when analyzing the due diligence that InfraRed performed,[500] and considered that they were not relevant to the analysis of InfraRed's legitimate expectations.[501] Therefore, it is evident that the Award did not depart from a fundamental rule of procedure.[502]

376. InfraRed argued that, contrary to Spain,[503] the Tribunal did consider other relevant evidence in the proceeding. It devoted four pages to summarize all the evidence that Spain submitted in order to convince the Tribunal that Spain did not breach InfraRed's legitimate expectations.[504] Furthermore, InfraRed argued that "it is settled that a Tribunal does not have an obligation to make a reference in the Award to each piece of evidence."[505]

---

[495] Application for Annulment, ¶60; Memorial, ¶281.
[496] Counter-Memorial, ¶236.
[497] Counter-Memorial, ¶236 quoting Award, ¶44.
[498] Counter-Memorial, ¶237; Rejoinder, ¶146.
[499] Counter-Memorial, ¶238.
[500] Counter-Memorial, ¶239.
[501] Counter-Memorial, ¶240.
[502] Counter-Memorial, 241.
[503] Memorial, ¶295.
[504] Counter-Memorial, ¶245.
[505] Counter-Memorial, ¶246.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 97 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

377.    Contrary, to Spain's argument[506], InfraRed submitted that the Tribunal's reasoning on legitimate expectations was not based mainly upon the December Resolutions:[507]

> "A plain reading of the Award shows that after analyzing all the evidence in the record, the Tribunal concluded, among others, that several evidence including the (i) the Purported Agreement, (ii) the waiver letters, and (iii) the enactment of RD 1614/2010 gave rise to a legitimate expectation that Spain would not adopt any changes to the Original Regulatory Regime. Still, this argument from Spain would in no case lead to any departure of a fundamental rule of procedure."

378.    For these reasons, InfraRed argued that the Award must be confirmed.

379.    In the Rejoinder, InfraRed reiterated that under Article 52(1)(d), the Committee may scrutinize whether the procedure was conducted according to basic rules of procedure. InfraRed further asserted that because ICSID tribunals have wide discretion on this matter, annulment committees are not tasked with reevaluating the weight accorded by the tribunal to the evidence submitted by the parties.[508] InfraRed quoted *Vivendi v. Argentina*, *Dogan v. Turkmenistan* and *Caratube v. Kazakhstan* in support of its argument.

380.    Thus, InfraRed considered that the argument regarding the standard of burden of proof should be left to the discretion of the Tribunal because they are responsible for assessing the probative value of evidence in the case.[509]

381.    In addition to that, InfraRed considered that in any case the Tribunal's weighing of the evidence did not seriously depart from any fundamental rules of procedure. The Tribunal distributed the burden of proof in accordance with the most basic due process principles.[510]

382.    InfraRed considered that the Tribunal based its findings of a reasonable and legitimate expectation of stability on: (i) the Waiver Letters, (ii) the December 2010 Resolutions, (iii) Article 4 of RD 1614/2010, (iv) Article 44.3 of RD 661/2007, (v) the press release issued by Spain on July, 2010, (vi) the press release issued by the Council of Ministers

---

[506] Memorial, ¶ 296.
[507] Counter-Memorial, ¶ 247.
[508] Rejoinder, ¶153.
[509] Rejoinder, ¶151.
[510] Rejoinder, ¶157-158.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 98 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

on December 3, 2010, (vii) public remarks by Spain's Secretary of State for Energy in July 2010, (viii) public remarks from Spain's Minister of Energy, and numerous emails exchanged between Protermosolar and Industry Ministry.[511]

383.  It further added that when the Tribunal became convinced that the December resolutions were the "<u>clear expression of a specific commitment,</u>"[512] the burden of proof was shifted to the Spain to prove otherwise. However, as the Tribunal explained[513] when considering Spain's arguments and evidence, the analysis of Spain's evidence confirmed that "even a more thorough due diligence would not have alerted Claimants of the impending enactment of the Measures at Issue, in particular that the 'tariffs, premiums and lower and upper limits' would be modified or altogether rescinded even for the CSP plants that were registered in the Pre-allocation Register, such as the Morón and Olivenza 1 plants."[514]

384.  InfraRed considered that the Tribunal confronted the Claimant's evidence with Spain's arguments and evidence, including the experts and witness testimony as shown in paragraphs 412-447.[515]

385.  InfraRed further considered that Spain did not provide evidence that of a "serious departure from a fundamental rule of procedure" with the decision about the quantification of damages, nor it has provided evidence that the alleged departure caused an actual "<u>material prejudice</u>" and a "<u>substantially different result</u>" in the case.[516]

386.  InfraRed contended that Spain was accorded with a full, fair and comparatively equal opportunity to rebut claims and submit evidence relating to the effect of management costs and value of the debt.[517] However, Spain raised this argument in the annulment

---

[511] Rejoinder, ¶159.
[512] Rejoinder, ¶160.
[513] Award, ¶447.
[514] Rejoinder, ¶160, quoting Award, ¶447.
[515] Rejoinder, ¶161.
[516] Rejoinder, ¶172 (emphasis in the original).
[517] Rejoinder, ¶174.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 99 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

procedure, the late nature of the claim evidence that the Tribunal never departed from a rule of procedure.[518]

387.    The Tribunal evaluated the expert's arguments along with the comments to the Joint Model. Regarding certain points the Tribunal chose Accuracy's position and on other issues the Tribunal sided with the Brattle's view.[519]

388.    InfraRed argued that the reference to the *TECO v. Guatemala* case, is not applicable to the present case since in that case the Committee decided to annul the award because the tribunal introduced the concept of unjust enrichment in the award, even though none of the parties had ever argued the concept of unjust enrichment.[520]

389.    Furthermore, InfraRed considered that the management costs and the value of the debt costs were "minor points among a myriad of disagreements between the experts on damages" and that "[t]he Parties barely discussed these points in their pleadings," and their experts devoted only a few paragraphs in their respective reports to explain that.[521] InfraRed considered that "despite their almost trivial nature, the Tribunal expressly and fully addressed both issues in the Award."[522]

390.    Regarding the management costs the Tribunal adopted the Brattle's thesis, which was conservative and, supported by third-party data, expert testimony and witness testimony.[523] Regarding the value of the debt, InfraRed contended that contrary to Spain's submission, the Tribunal evaluated the Joint Model and the economic effect of adopting one position or another.[524] But that did not mean, in InfraRed's position, that the Tribunal was obliged to explain the impact of adopting Brattle's position, since an ICSID tribunal is not obliged to do this,[525] and failing to make such a comment does not result in an actual "material prejudice" or a "substantial different result."[526]

---

[518] Rejoinder, ¶175.
[519] Rejoinder, ¶177.
[520] Rejoinder, ¶178.
[521] Rejoinder, ¶180.
[522] Rejoinder, ¶181, citing Award, ¶¶520, 590-595.
[523] Rejoinder, ¶¶ 182-189.
[524] Rejoinder, ¶191.
[525] Rejoinder, ¶192.
[526] *Ibid*.

391.    In addition to that, InfraRed argued that it was not true that the Tribunal ignored the explanations that Accuracy provided in determining the debt to be applied in the Joint Model, "the truth is that Accuracy provided no such explanation."[527]

392.    Therefore, in the Rejoinder, InfraRed argued that the Tribunal's conclusions on every point raised by the Parties demonstrate that the Tribunal did not breach Spain's right to a fair trial and to be heard and Spain did not demonstrate a 'serious departure from a fundamental rule of procedure' according to Article 52(1)(d) of the ICSID Convention.[528]

393.    In addition, in the Rejoinder, InfraRed claimed that the Award did not violate Spain's right to be heard. At every stage of the arbitral proceedings, Spain was afforded a full, fair and equal opportunity to present its case, defenses and evidence regarding the claims it decided to make. It also had the opportunity to rebut and was always informed of all claims brought by InfraRed. Therefore, the Tribunal afforded Spain with due process and, specifically with full rights to be heard at every stage of the arbitral proceedings.[529] The *Fraport* case was not similar to the present case.[530] Similarly, InfraRed considered that Spain's line of argument regarding the connection between *Pey Casado*, the decision in *TECO* and *Caratube* was impossible to understand.[531]

394.    This was the case with the fact that "the Tribunal devotes four pages to summarize all the evidence that Spain submitted in order to convince the Tribunal that Spain did not breach InfraRed's legitimate expectations (*i.e.*, the same amount of pages that the Tribunal devoted to summarize InfraRed's evidence to that regard)."[532]

395.    InfraRed agreed that "the Tribunal did not mention in the Award each of the more than 1300 legal and factual exhibits, annexes to 10 expert reports or specific facts included

---

[527] Rejoinder, ¶193.
[528] Rejoinder, ¶165.
[529] Rejoinder, ¶138.
[530] Rejoinder, ¶139.
[531] Rejoinder, ¶142.
[532] Counter-Memorial, ¶245.

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 101 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

in the 6 witness statements,"[533] and that it is settled that a tribunal does not have an obligation to make a reference in the award to each piece of evidence.[534]

396.    In conclusion, InfraRed considered that the Tribunal did not breach Spain's right to be heard and that the allegation should be dismissed.

### 3.  Spain's  allegation of lack of impartiality is devoid of any basis

397.    Finally, regarding the allegations on impartiality raised by Spain,[535] InfraRed considered those allegations as not "serious," and that the Committee should not waste any time on this unjustified statement.[536] Similarly, there was no "departure" from such as rule because Spain has not adduced any evidence that proves a manifest lack of independence and impartiality on the part of the Tribunal.[537] Therefore, Spain challenges under Article 52(1)(d) for an alleged "departure" from a "fundamental rule of procedure" should be disregarded.

398.    In the Rejoinder, InfraRed argued that Spain had abandoned its very serious accusation relating to an alleged "lack of impartiality and unequal treatment" by the Tribunal,[538] and that such accusation is one the most serious accusations a party can raise against an arbitral tribunal, the fact that Spain had decided to exclude this ground from its Reply demonstrated that the annulment petition is based on frivolous arguments.[539]

## VII.    ANALYSIS OF THE COMMITTEE

### A.  THE NATURE OF ANNULMENT PROCEEDINGS AND THE POWERS OF THE COMMITTEE

399.    Article 52 of the ICSID Convention governs the duties and limits of an *ad hoc* committee called to decide an annulment request. The interpretation of this article is not very complex for a number of reasons. First, this provision is clear in its content: the ICSID system is generally considered to be self-contained as noted in the "Updated Background Paper on Annulment for the Administrative Council of ICSID,

---

[533] *Ibid.*
[534] Counter-Memorial, ¶246.
[535] Memorial, ¶304.
[536] Counter-Memorial, ¶250.
[537] *Ibid.*
[538] Rejoinder, ¶132.
[539] *Ibid.*

May 5, 2016" (**Updated Background Paper**).[540] While the Updated Background Paper is not binding on this Committee, it is nevertheless a useful tool to which both Parties refer to in support of their positions.

400.    Second, the Parties do not disagree on what is a cornerstone of ICSID arbitration: that annulment proceedings cannot be construed as an appeal against an award, but rather as a solution to avoid illegal awards to survive in the international community.[541] The Committee considers that in the process of drawing a line between annulment and appeal, it is worthwhile to look for inspiration in leading scholars, as is the case of Prof. Schreuer when he explains that "annulment deals only with the legitimacy of the decision-making process, not its merits"[542] and that "[i]n every published annulment decision to date, ad hoc committees have stressed this distinction."[543]

401.    Third, prior decisions and awards have no precedential value in international arbitration. However, it is common practice for arbitrators to take into account those decisions when interpretating the applicable substantive or procedural rules. This is obvious and more so in investment arbitration, let alone ICSID arbitration, not only due to the fact that it is rather common that issues such as those of jurisdiction and interpretation of BIT's and MIT's are very similar, but also because for reasons of transparency and others, awards and decisions are publicly available.

402.    Each arbitration is unique, and hence, it is not possible to extrapolate from general concepts of law a solution that will fit into each and every situation. The same argument applies to similar decisions issued by prior arbitral tribunals and *ad hoc* committees, even more so when it is possible to find decisions that reach incompatible conclusions.

403.    Nevertheless, it is generally accepted, and proposed by both Parties here, to look for jurisprudence that faced issues similar to those at stake, mostly in this case coming from other *ad hoc* committees.

---

[540] RL-0118, Updated Background Paper on Annulment for the Administrative Council of ICSID May 5, 2016.
[541] As it has been put in RL-0118, ¶72, "it does not provide a mechanism to appeal alleged misapplication of law or mistake in fact".
[542] CL-328, Schreuer, C., Malintoppi, L., Reinisch, A., & Sinclair, A. (2009). *The ICSID Convention: A Commentary* (2nd ed.). Cambridge: Cambridge University Press, Article 52, ¶74.
[543] CL-328, Schreuer, Article 52, ¶13.

404.    The Committee is of the opinion that its powers are limited[544] by the ICSID Convention (and the ECT) as "the annulment is a limited remedy."[545] As such, it cannot extend its powers to look at the Award as a decision to be amended, which would be possible under a different system having with an appeal  tribunal.

405.    This means that members of *ad hoc* committees must refuse the "temptation" of looking to ICSID awards as if they could enter into the shoes of the arbitrators to reassess facts and law and to "recreate" a solution that eventually might be considered by them as a better outcome for the case. The committees cannot "review the awards' findings for errors of fact or law."[546]

406.    This risk – as any risk – is part of the human condition. But for decades, *ad hoc* committees, as if applying an almost unanimous rule, have not deviated from their duties, nor will this Committee do it. This practice is an inspiration and also an element to take into account in the exercise of the duties vested upon the Members of the Committee.

407.    The intention of the drafters of the ICSID Convention has been "to reconcile finality of the award with the need to prevent flagrant cases of excess of jurisdiction and injustice."[547] This intention has been implemented under the Convention by conferring to annulment committees "a limited scope of review which would safeguard against 'violation of the fundamental principles of law governing the tribunal's proceedings.'"[548]

408.    In light of the above, the Committee concludes that "there is no presumption either in favour of or against annulment."[549] In the same vein, when interpretating the grounds for annulment, "there is compelling support for the view that neither a narrow nor a broad approach is to be applied."[550]

---

[544] RL-0118, ¶74.
[545] CL-328, *MINE*; Schreuer, Article 52, ¶13 using the expression "the narrow confines of annulment".
[546] CL-328, Schreuer, Article 52, ¶13.
[547] RL-0118, ¶9.
[548] RL-0118, ¶71.
[549] *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic* (*Vivendi I*), ICSID Case No. ARB/97/3, Decision on Annulment, July 3, 2002, ¶62.
[550] *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for Annulment of the Award, June 29, 2010, ¶75. See also *MINE*, ¶4.5.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

409.   The Committee will now address each one of Spain's requests of its Application for Annulment pursuant to the principles outlined above.

## B.   MANIFEST EXCESS OF POWERS

### 1.   Interpretation of Article 52(1)(b) of the ICSID Convention

#### a)   *Spain's submission*

410.   The Applicant considers that a tribunal exceeds the powers initially granted to it by the parties' consent when the tribunal omits to apply the appropriate law, or when the tribunal exceeds its jurisdiction, or rules on a matter in which it does not have jurisdiction.[551] Also, the reference to "manifest" is to be understood as being demonstrated that it is "easy to understand."[552]

411.   Spain also argues[553] that a "manifest excess of powers" occurs when the Tribunal disregards the applicable law, or its misinterpretation or misapplication of the law is "so gross or egregious that it substantially amounts to a failure to apply the correct law."[554]

412.   According to Spain, a "manifest excess of powers," occurs when a tribunal commits "a serious and consequential misinterpretation or misapplication of the correct law, which no reasonable person (*bon père de famille*) could accept," and it "must be distinguished from a simple error - even a serious error - in the interpretation of the law."[555]

413.   Spain quotes *Occidental v. Ecuador* to state that "excess of powers can be committed by both overreaching and underreaching,"[556] and considers that to accept jurisdiction

---

[551] Memorial, ¶52 and RL-0118, ¶87.

[552] Reply, ¶48.

[553] Memorial, ¶53.

[554] RL-0086, Previous Annex-004, *Hussein Nuaman Soufraki v. United Arab Emirates*, ICSID Case No ARB/02/7, Decision of the *ad hoc* committee on the Application for Annulment, June 5, 2007, ¶86; RL-0117, Previous Annex-005, *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for Annulment of the Award, June 29, 2010.

[555] Memorial, ¶54, quoting RL-0086, Previous Annex-004, *Hussein Nuaman Soufraki v. United Arab Emirates*, ICSID Case No ARB/02/7, Decision of the *ad hoc* committee on the Application for Annulment, June 5, 2007, ¶86.

[556] Memorial, ¶65

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 105 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

when a tribunal has not is clearly a manifest excess of powers,[557] as is the case with intra-EU disputes.

414.    In its Memorial and Reply, Spain refers to sections of the Award in which it alleges that Article 52(1)(b) of the ICSID Convention was breached. Each one of these specific situations will be analyzed below.

### b)  InfraRed's submission

415.    The Respondents consider that Spain is seeking a reconsideration of the Award and "challenging the assessment of the legal and factual evidence"[558] by replicating the same arguments presented during the Arbitration.

416.    The Respondents also state that the alleged violation of Article 52(1)(b) of the ICSID Convention is built into the disregard of the difference between appeal and annulment, also through the introduction of new evidence on the merits which is forbidden under Article 53 of the ICSID Convention.[559]

417.    The Respondents also posit that, in accordance with the ICSID Convention, any "excess of powers" by a tribunal must be "manifest," that is, obvious, self-evident, clear, and substantially serious. In addition, "excess of powers" will only exist "where the action in question is clearly capable of making a difference to the result of the case."[560]

418.    The Respondents' rebuttal to each of Spain's alleged excess of powers will be analyzed below.

### c)  Analysis of the Committee

419.    In a holistic view of the "manifest excess of powers" as ground for annulment under Article 52(1)(b) of the ICSID Convention, the Committee emphasizes the relevance of the "manifest" criterion.

---

[557] Reply, ¶29.
[558] Counter-Memorial, ¶37.
[559] Counter-Memorial, ¶¶39-42; Rejoinder, ¶20-22.
[560] InfraRed PHB, ¶9.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

420.    As referenced in the Updated Background Paper, in the Legal Committee 1964 meeting, a proposal to have the term "manifest" omitted from the ICSID Convention draft was defeated.[561]

421.    It follows that not any kind of evidenced excess of powers would be enough to conclude that a violation of Article 52(1)(b) of the ICSID Convention might occur. Therefore, the Committee will first analyze each one of the invoked grounds of excess of powers, and if it concludes that excess of powers occurred, the Committee will then analyze whether this was "manifest." On the interpretation of the "manifest" condition for the relevance of an evidenced excess of powers, the Committee does not accept Spain's position that any excess "easy to understand" is manifest, as this does not correspond to the best interpretation of that condition taking also into account "the narrow confines of annulment."[562]

422.    Quite the opposite, the Committee favors the dominant trend of committees that have been called to apply Article 52(1)(b) of the ICSID Convention under which to be 'manifest,' the excess needs to be obvious, self-evident, make a difference for the outcome of the case and not be based in new evidence.[563]

423.    Even in matters of jurisdiction where excess of powers exists (and the lack of jurisdiction being "the most obvious example of an excess of powers"[564]), "the view that any jurisdictional mistake is necessarily a manifest excess of powers is not supported by the text of Article 52(1) of the ICSID Convention."[565]

---

[561] RL-0118, ¶19-20.

[562] CL-328, Schreuer, Article 52, ¶13.

[563] See RL-0086, Previous Annex-004EN, *Hussein Nuaman Soufraki v. United Arab Emirates*, ICSID Case No ARB/02/7, Decision of the *ad hoc* committee on the Application for Annulment, June 5, 2007, ¶40; RL-0171EN, *Impregilo S.p.A. v. Argentine Republic*, ICSID Case No. ARB/07/17, Decision of the *ad hoc* Committee on the Application for Annulment, January 24, 2014, ¶128; RL-0126, Previous Annex-017, *Wena Hotels Ltd. v. Arab Republic of Egypt*, ICSID Case No. ARB/98/4, Decision on Egypt´s Application for Annulment, February 5 2002, ¶25; CL-338, *Adem Dogan v. Turkmenistan,* ICSID Case No. ARB/09/9, Decision on Turkmenistan's Application for Annulment, January 15, 2016, ¶123; CL-339, *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic,* ICSID Case No. ARB/97/3, Decision on the Argentine Republic's Request for Annulment of the Award, July 30, 2020, ¶86 ("*clearly capable of making a difference to the result*"); RL-0168EN, *Duke Energy International Peru Investments No. 1, Ltd. v. Republic of Peru*, ICSID Case No. ARB/03/28, Decision of the *ad hoc* Committee, March 1, 2011, ¶229.

[564] CL-328, Schreuer, Article 52, ¶155.

[565] *Id*, ¶149.

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 107 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

424. For any request related to the alleged misinterpretation of an applicable and applied law, the Committee agrees with the position that – contrary to an appeals court – it is not empowered to scrutinize whether the interpretation made by a tribunal was correct but only whether if failed manifestly to apply the law[566] or – which would be very uncommon for tribunals in which the rule almost without exception is that the arbitrators are qualified and sophisticated professionals – the "combination of flaws in the Award is such that an excess of power on the part of the Arbitral Tribunal must be acknowledged."[567]

2. Manifest excess of powers by conferring international protection to investors with unclean hands and by disregarding the application of international *ius cogens* and conferring protection on those who acted on the basis of deceit and fraud in their investment process

a) *Spain's submission*

425. Spain posits that "the exercise of a right in cases where the person invoking it has acted in bad faith, fraudulently or illegally"[568] must be restricted and that this constitutes a general principle of international law.

426. According to Spain, the invoking party (InfraRed) exercised rights without "clean hands", because Article 27 of the 1997 Law[569] required as an "essential condition" that to be eligible under RD 661/2007,[570] the facilities had an "installed capacity [not] exceeding 50 MW."[571] Under the Applicant's view, InfraRed committed "severe misrepresentations" by declaring that "its installed capacity was 50 MW, although it was considerably higher."[572]

---

[566] CL-333, *Amco Asia Corporation and others v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application by Parties for Annulment and Partial Annulment of the Arbitral Award of May 16, 1986, and the Application by Respondent for Annulment of the Supplemental Award, December 17, 1992, ¶7.8.
[567] RL-0170, *Mr. Patrick Mitchell v. The Democratic Republic of Congo*, ICSID Case No. ARB/99/7, Decision on the Application for Annulment of the Award, November 1, 2006, ¶¶ 46, 47.
[568] Memorial, ¶69.
[569] R-0003, Law 54/1997 of 27 November 1997 on the Electricity Sector.
[570] R-0062, Royal Decree 661/2007 of 25 May 2007.
[571] Memorial, ¶76, quoting RL-0157, *Nextera Energy Global Holdings BV and Nextera Energy Spain Holdings BV v. Kingdom of Spain*, ICSID Case No. ARB/14/11, Decision on Jurisdiction, Liability and Quantum Principles, March 12, 2019, Annex A of the Award, ¶270, which mentions the Counter-Memorial on the Grounds of the Respondent, ¶¶113-116.
[572] Memorial, ¶77; Reply, ¶61.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 108 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

427.   These misrepresentations may be even construed as criminal behavior as they were willfully fraudulent. Spain referred to Article 26(6) ECT, Article 42 of the ICSID Convention and Article 38 of the ICJ Statute to conclude that there was "an absolute prohibition on benefiting from illicit and fraudulent acts."[573] Therefore, InfraRed and its "bad faith in investment violates the most elementary principles of international law."[574]

428.   Spain also posits that the Tribunal based its conclusion in relation to the installed capacity examined in the *Eiser* award, which was annulled,[575] therefore must be considered as non-existent.

429.   In light of the above, Spain concludes that the Tribunal lacked jurisdiction to adjudicate the claim because of the unclean hands of InfraRed. Therefore, the Committee must annul the Award "on the ground that essential principles of international law and *jus cogens* had not been applied."[576]

### b)   InfraRed's submission

430.   InfraRed requests the Committee to dismiss the clean hands defense because of the following reasons.

431.   First, Spain is barred from invoking that doctrine, even if *quod non* it is applicable, because it was not addressed in the Arbitration and only presented in the annulment proceedings based on the Rozas Report, which was inadmissible in accordance with PO1.[577]

432.   Second, Spain failed to show any excess of powers and is attempting to reopen the debate since "[t]he Tribunal concluded that: (i) the term 'installed capacity' in Article 29(1) of the EPA 1997 should be read as 'net output', and (ii) InfraRed's CSP Plants net output was always equal or lower to 50MW."[578]

---

[573] Memorial, ¶83.
[574] Memorial, ¶84.
[575] See ¶123 above.
[576] Memorial, ¶86; Reply, ¶50.
[577] See ¶264 above.
[578] Counter-Memorial, ¶120.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

433.    Spain never proved during the Arbitration that InfraRed's conduct in relation to the installed capacity constituted a crime[579] and the Award gave "significant weight to the fact the Spanish National Commission of Energy (CNE) recognized in its own documents that the installed capacity was under 50MW."[580]

434.    InfraRed also posits that the elements of the alleged crimes of subsidies fraud and falsification of documents were not demonstrated by Spain,[581] and the accusation of illegality was unsupported.[582]

435.    Therefore, InfraRed concludes that even if the Tribunal had not decided that the installed capacity was compatible with the threshold for accessing the benefits, the alleged facts would never correspond to a criminal behavior.

### c) Analysis of the Committee

436.    The clean hands doctrine was not addressed by Spain – at least not in a direct way, able to be understood by the Tribunal - in the Arbitration. It has been evidenced that the arguments and legal opinions (Rozas Report and Demetrio Report) filed in the annulment proceedings could have been presented before to benefit from the opportunity of being addressed in the Award,[583] as all the elements for the alleged applicability of the clean hand's doctrine were present. This would have been enough to conclude that Spain is barred from the possibility of invoking now the "clean hands" *exceptio.* The Rozas Report shares that same view,[584] without prejudice to the possibility of the Committee being able to analyze the facts under a different approach.

---

[579] Counter-Memorial, ¶121.
[580] *Ibid*.
[581] Rejoinder, ¶60-62.
[582] Rejoinder, ¶64.
[583] This has been confirmed by Professor Sanchez (co-author of the Rozas Report) when answering to a question of the President (Hearing Tr., 16:08, lines 5-12) and Professor Demetrio (Hearing Tr., Day 2, 15:14, lines 1-5).
[584] "In light of the Award of August 2, 2020, it follows that the Kingdom of Spain did not raise a preliminary objection relating to the lack of jurisdiction of the Centre or of the tribunal's competence based on the unlawful or fraudulent conduct of the Claimants, and that such a circumstance cannot be invoked in the application for annulment" (Rozas Report ¶56), which has been confirmed by Professor Sanchez, co-author of the Rozas Report, answering to a question of the President at the Final Hearing: "What I'm saying there, obviously it's not mentioned, but the premise is that when you make a request for annulment, you can't introduce any new facts or new arguments. The only thing we know is the Award: that's what we base our opinion on" (Hearing Tr., Day 2. 16:06, lines 19-23.

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 110 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

437. Even if this was not the case, an independent Tribunal assessing the available evidence and discussions between qualified counsel, after a very clear and grounded analysis, reached a conclusion on the installed capacity that was opposite to the one advocated by Spain.[585] This means that InfraRed's behavior was at least admissible as in no way the elements of the alleged crimes of subsidies fraud and falsification can be taken for granted, let alone considered demonstrated.

438. In any event, the Committee admitted to the record the legal opinions submitted by Spain because they were not considered "experts reports" for the purposes of PO1. Accordingly, Professor Demetrio (author of the Demetrio Report) testified in the Hearing. The Committee concludes that the issues of criminal behavior were debatable, even if the facts presented by Spain as assumptions for the Demetrio Report were demonstrated, which was not the case.

439. As admitted by Professor Demetrio in the Hearing, the rule of the presumption of innocence is part of Spain's legal regime and no criminal court has ever declared that InfraRed committed the crimes of subsidies fraud and falsification of documents. It has also been evidenced that the Plants received from Spain remuneration that they would not be entitled to receive if the assumptions presented by Spain for the Demetrio Report were correct.[586]

440. It has also been established that, in accordance with Spanish Criminal Law, the crime of subsidy fraud must be committed willfully (with *dolo*).[587] The alleged falsification of the nameplate in the installation may be relevant, not as element of the crime of falsification, but rather because "it might lead to a misapplication of something, in terms of the concurrent crime, this falsity is instrumental.  According to the legal doctrine, and since this is a commercial document, as such it would not be considered as a crime under the typification of subsidy fraud."[588]

---

[585] This has been confirmed by Professor Demetrio at the Hearing when asked by Counsel to InfraRed: "Q. The Tribunal dismissed such alternative scenario of damages because the Tribunal understood that the plants were not inadmissible under the special regime, right?   A.  That's what I understand. Q.  Thank you" (Hearing Tr., Day 2, 14:33, lines 13.17).

[586] Hearing Tr., Day 2, 14:35, lines 1-19.

[587] Hearing Tr., Day 2, 14:35, lines 21-5 and 14:37, lines 1-6. See also Hearing Tr., 14:33, lines 15-22.

[588] Professor Demetrio, Hearing, Day 2, 14:50, lines 8-16. However, in the same Day 2, 14:56, lines 8-19 Professor

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

441.   The Committee does not agree with Spain's argument on the effect of the annulled *Eiser* award. It appears that the conclusions of this award in relation to the issue of installed capacity were taken into account by the Tribunal in the Award. However, not as a precedent (which does not exist as such in international arbitration) but rather as a legal authority (which also include scholarly opinions) and the Committee does not agree with the proposition that the annulment of the *Eiser* award for reasons not related – even remotely – with the issue of the installed capacity, could have as a consequence the annulment of the Award, even if this was relevant for the clean hands argument, which is not the case.

442.   In conclusion, the Committee dismisses this request as presented by the Applicant.

3.   <u>Manifest excess of powers by rejecting the intra-EU objection and hearing a dispute between an EU Member State and claimants from another EU Member State to which neither the United Kingdom nor Spain consented</u>

*a)   Spain's submission*

443.   The Applicant argues that the Tribunal "exceed[ed] its powers by going beyond its jurisdiction"[589] when hearing a case between a company from an EU Member State and a Member State, breaching EU law.

444.   Spain also posits that the principle of primacy of EU law, stated in Declaration 17 of the TFEU,[590] mandates that "within the EU, the Member States have decided that, for the purposes of self-organization and as a necessary precondition for their integration, EU law should apply to intra-Community matters, while international conventions remain in force for relations with third countries"[591] and that the EU has followed a practice to regulate intra-Community affairs through its internal legislation.[592] Such practice began with "the decision of the EUJ in the *Van Geend & Loos* case[593] which established the principle of autonomy of EU law and was confirmed by the judgment

___

refers that in spite of being instrumental of the subsidy fraud crime, the alleged falsification of the nameplate must be considered autonomously as a crime.

[589] Memorial, ¶87.
[590] R-0006, Previous Annex-044, EU Treaty, Treaty on the Functioning of the EU and Charter DD.FF. EU. 26 October 2012 (Consolidated). Treaty on the Functioning of the EU.
[591] Memorial, ¶92.
[592] Memorial, ¶94.
[593] RL-0156, Judgment of the ECJ of 5 February 1963 in Case C-26/62, *Gend & Loos v. Nederlandse administratie der belastingen*.

of the EUJ *Costa/ENEL*[594] which declared the principle of the primacy of EU law to be beyond doubt."[595] Spain referred also to the *Achmea* Judgment[596] which states that "Articles 267 and 344 of the TFEU are to be interpreted as prohibiting a provision in an international agreement concluded between Member States, such as Article 8 of the BIT, under which an investor of one of those Member States may, in the event of a dispute concerning investments in the other Member State, bring proceedings against the latter Member State before an Arbitral Tribunal whose jurisdiction that Member State has undertaken to accept."[597] This was reiterated by the Declaration Achmea[598]- and, more recently by the judgement of the Grand Chamber of the Court of Justice of the European Union of September 2, 2021, issued in the Case *C-741/19. Republic of Moldova v Komstroy*.[599]

445.    Spain considers that "the issues analysed by the EU Court of Justice in the *Moldova v. Komstroy* Judgment go to the very core of a particularly relevant ground for annulment raised by the Kingdom of Spain: that the Tribunal manifestly lacked jurisdiction for this intra-EU case and therefore committed a manifest extralimitation."[600]

446.    Spain also extracts from the judgment the CJEU's conclusion that there never was an offer to arbitrate made by Spain to intra-EU investors because "Article 26(2)(c) ECT must be interpreted as not being applicable to disputes between a Member State and an investor of another Member State concerning an investment made by the latter in the first Member State."[601]

---

[594] R-0190, Judgment of the ECJ of 15 July 1964, in Case 6/64, *Flaiminio Costa v. ENEL*; RL-0158, Judgment of the Court of Justice, AETR, Case 22/70. 31 March 1971. This priority has also been reflected in the inability of Member States to individually negotiate international treaties in matters where Community law exists as reflected in the so-called AETR doctrine - Case 22/70, *Commission v. Council* [1971] ECR 263 (*AETR/ERTA*).

[595] Memorial, ¶95.

[596] RL-0119, Previous Annex-007, Judgment of the CJEU, *Republic of Slovakia v. Achmea B.V.*, Case C-284/16, 6 March 2018.

[597] Memorial, ¶97, quoting RL-0119, Previous Annex-007, Judgment of the CJEU, Republic of Slovakia v. Achmea B.V., Case C-284/16, 6 March 2018, ¶ 60.

[598] Memorial, ¶98 quoting RL-0113, Declaration by the representatives of the Member States on the legal consequences of the judgment of the Court of Justice in the Achmea case and on the protection of investments in the European Union, 15 January 2019.

[599] The Committee has been made aware of the judgement by a letter from Spain, received on September 10, 2021.

[600] Spain letter received by the Committee on September 10, 2021.

[601] *Ibid*.

447.    Spain posits that the Tribunal did not analyze all the rules of interpretation provided for in Article 31 of the VCLT, arguing that a good faith interpretation of the VCLT would deny the possibility of an intra-EU arbitration of the basis of the ECT,[602] and merely stated – wrongly – that there was no disconnection clause in the ECT, without which the States members of the EU and itself could not withdraw from the ECT. Spain further notes that the Tribunal misapplied Article 1(3) of the ECT and the transfer of competences from States to the EU, which therefore resulted in an "inappropriateness of the application of the Article 26 ECT to the intra-EU disputes."[603]

448.    In a subsidiary way, Spain argues that if Article 26 of the ECT was deemed to cover intra-Community disputes, such interpretation would conflict with EU law, and that conflict must be resolved in favor of EU law.[604]

449.    Spain argues that the Award should be annulled under Article 52(1)(b) of the Convention because the Tribunal exceeded its powers by finding jurisdiction in an intra-EU dispute,[605] when it was not entitled to do so under international law.[606]

450.    The EU Commission made similar arguments in its *amicus curiae* brief. The Commission alleges that "[a]s '*guardian*' of those Treaties, the Commission has a particular interest in avoiding any conflict between ICSID awards based on the Energy Charter Treaty ("ECT") and EU law."[607]

451.    For that reason, the Commission states that "upon proper interpretation of the ECT and the ICSID Convention, no conflict between those treaties and EU law exists."[608]

452.    The Commission also cites to *BayWa v. Spain* and *Vattenfall v. Germany,* concluding that these tribunals had "recognize[d] that judgments of the Court of Justice of the EU ("CJEU") are binding upon EU Member States and intra-EU arbitral tribunals established under the ICSID Convention as a matter of public international law."[609]

---

[602] Spain's PHB, ¶¶ 38-47.
[603] Memorial, ¶104.
[604] Memorial, ¶105.
[605] Memorial, ¶114; Reply, ¶¶52-56.
[606] Reply, ¶98.
[607] EU Commission Amicus Curiae Brief, ¶2.
[608] EU Commission Amicus Curiae Brief, ¶3.
[609] EU Commission Amicus Curiae Brief, ¶6.

453. The Commission assumes that "the arbitral tribunal has manifestly exceeded its powers, by deciding that it had jurisdiction, whereas up-on proper interpretation of Article 26 ECT and proper application of the conflict rule of primacy and Article 41 VCLT, it should have declined jurisdiction."[610]

454. The Commission accords high relevance to the fact that the "CJEU has decided that EU law constitutes public international law applicable between EU Member States" and that its "case-law is binding on arbitral tribunals."[611]

455. The Commission also gives importance to the "primacy" and "autonomy of the EU legal order" and based on these principles posits that under Articles 267 and 344 of TFEU, the need to always assure "uniform interpretation and application of EU law" is served "by prohibiting Member States from creating, in relation to any matter implicating EU law, dispute settlement mechanisms other than those set out in the EU Treaties."[612]

456. As far as the ECT is concerned, the Commission gives high ground to the fact that it was "only" the European Commission that "invited other States to negotiate the European Energy,"[613] that "ECT specifically recognises the EU as REIO",[614] which has consequences as far as the ECT concept of "Area" is concerned,[615] that "[i]t was never the intention of the EU Member States (or indeed the EU itself) to modify or replace those internal rules by an international treaty such as the ECT"[616] and that "the context in which the ECT came about described in this section clearly indicates that it was not intended to bind the Member States *inter se.*"[617]

457. In accordance with Article 31 of the VCLT, regarding the ordinary meaning of the terms used "in their context and in light of [the treaty's] object and purpose" "there is no

---

[610] EU Commission Amicus Curiae Brief, ¶13.
[611] EU Commission Amicus Curiae Brief, ¶19.
[612] EU Commission Amicus Curiae Brief, ¶¶22-23.
[613] EU Commission Amicus Curiae Brief, ¶33.
[614] EU Commission Amicus Curiae Brief, ¶35.
[615] EU Commission Amicus Curiae Brief, ¶¶73-76.
[616] EU Commission Amicus Curiae Brief, ¶37.
[617] EU Commission Amicus Curiae Brief, ¶42.

reason to conclude that the terms of the ECT require an interpretation of Article 26 ECT in such a way that it is found to apply intra-EU."[618]

458. The Commission emphasizes that, contrary to the Award's findings, there is no need for a disconnection clause to conclude that an arbitral tribunal under the ECT has no jurisdiction to adjudicate intra-EU disputes.[619]

459. Therefore, the Commission concludes that the Tribunal erred in the Award by not giving legal relevance under the VCLT to internal decisions of the EU, to the rulings of the TFEU, to the Commission Communication of 19 July 2018 on the Protection of intra-EU investment,[620] and to the Declaration of the Member States of 15 January 2019 on the legal consequences of the *Achmea* Judgment and on investment protection in the European Union.[621]

### b) *InfraRed's submission*

460. InfraRed argues that the Tribunal's decision to reject the application of EU law followed a pattern already established by other arbitral tribunals in similar cases,[622] and that the fact that 32 tribunals reached the same conclusion[623] (and "to date not a single tribunal has accepted Spain's intra-EU objection"[624]) is clear evidence that the Tribunal was not unreasonable in its conclusion and, in any event, Spain failed to prove that the alleged excess of powers was "manifest."[625]

461. InfraRed posits that Spain's conclusions that the Tribunal did not consider the rules of interpretation of Article 31 of the VCLT, or that it merely indicated that there is no disconnection in the ECT, or that it allegedly ignored the July 2019 EU Council from 21 Member States[626] are inaccurate.[627]

---

[618] EU Commission Amicus Curiae Brief, ¶¶39 and 46.
[619] EU Commission Amicus Curiae Brief, ¶¶50-56.
[620] EU Commission Amicus Curiae Brief, ¶58, whereby Article 26 of the ECT "if interpreted correctly, does not provide for an investor-State arbitration clause applicable between investors from a Member State of the EU and another Member State of the EU".
[621] EU Commission Amicus Curiae Brief, ¶¶57-72.
[622] Rejoinder, ¶¶26, 29-30.
[623] Rejoinder, ¶75.
[624] Counter-Memorial, ¶77.
[625] Counter-Memorial, ¶69.
[626] Counter-Memorial, ¶83 quoting the Application on Annulment, ¶18 and ¶104.
[627] Counter-Memorial, ¶83

462. InfraRed alleges that the Tribunal analyzed the ordinary meaning and context of the term "*Area*" from Article 26(1), to conclude that it meant "the territory under the state's sovereignty" or "the territory under the sovereignty of the member states of such REIO",[628] which InfraRed argued was not manifestly arbitrary or unreasonable.[629]

463. The Tribunal also analyzed the context of the same Article 26 highlighting that it provided that "even in case of conflict with another treaty to the extent that the ECT is "more favourable to the Investor or the Investment,"[630] and that Spain "had the burden of showing that the EU legal system provides a method to resolve Claimants' dispute with Spain that is 'more favorable' to the investors than the one provided at Article 26(1) ECT", which it did not.[631]

464. InfraRed argues that Spain mischaracterized the findings of the Tribunal in relation to the absence of a disconnection clause in the ECT, as the Tribunal remarked that this conclusion would have been different "if the EU members states that signed the January Declarations [had] withdrawn from the ECT or activated the procedure for amending the ECT."[632]

465. Regarding the argument related to the July 2019 Declaration, InfraRed contends that this communication was not relevant because, as the Tribunal recognized, "they were not adopted within the EU legal order and are not EU legal instruments."[633]

466. It is the opinion of InfraRed that in relation to the *Achmea* Judgment, the Tribunal concluded that "the ECJ […] has not taken so far any position as to the applicability of its judgement in the *Achmea* case to arbitration tribunals jurisdiction of which is based on the ECT."[634] Therefore, InfraRed alleges that Spain could not claim that *Achmea* also applies to "multilateral treaties such as the ECT"[635] and less that the Tribunal did not give the proper value to this decision.

---

[628] Counter-Memorial, ¶84.
[629] InfraRed's PHB, ¶¶31-46.
[630] Counter-Memorial, ¶86 quoting Award, ¶264.
[631] Award, ¶264.
[632] Counter-Memorial, ¶89; Award, ¶272.
[633] Counter-Memorial, ¶91.
[634] Award, ¶269 (emphasis added).
[635] Counter-Memorial, ¶101.

467.   InfraRed also considers irrelevant the judgment of the Grand Chamber of the Court of Justice of the European Union, issued in the Case *C-741/19. Republic of Moldova v Komstroy*, as it alleges, among other arguments, that "the question on the intra-EU applicability of the ECT does not form part of the question posed by the French court, nor of the CJEU's response", that "the judgment shows that the intra-EU issue is far from obvious or self-evident […] and demonstrates that the Tribunal's decision, rendered in line with the totality of previous resolutions that dismissed the objection, was at least reasonable and defensible", that "the Committee does not have the power to reconsider the merits of Spain's intra-EU objection de novo with or without the newest judgment", and that the "judgment cannot undermine the application of Articles 16 and 46 ECT. Neither the EU nor certain EU Member States have the power to modify the ECT by themselves as a matter of international law, let alone with retroactive effects to decisions rendered years earlier."[636]

468.   Furthermore, InfraRed considers that Spain failed to show why the Tribunal's interpretation of Article 26(6) of the ECT was unclear or unreasonable as required by Article 52(1)(b) of ICSID Convention, and it stated that the Tribunal applied the VCLT when interpreting Article 26(6) of the ECT.

469.   InfraRed also mentions that Spain did not prove why paragraph 272 of the Award (stating that there is no incompatibility between EU law and ECT provisions) is unclear or unreasonable, as required under Article 52(1)(b) of the ICSID Convention.

470.   As a rebuttal to Prof. Gosalbo's allegations, InfraRed points to the expert declarations of Priet Eeckout, who indicates that "[t]he objections in the *Achmea* Judgment against intra-EU arbitration are expressly confined to bilateral agreements between Member States which have not been concluded by the EU; they therefore do not extend to the ECT."[637]

471.   Finally, InfraRed submits that under Article 16(2) of the ECT, the contracting parties to the ECT, including the EU, specifically and explicitly agreed that previous or subsequent treaties that they entered into with each other shall not be construed to

---

[636] InfraRed letter to the Committee, dated September 16, 2021.
[637] Rejoinder, ¶87, quoting CL-359, ¶11 (emphasis original from the text).

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 118 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

derogate from any provision in Part III ("Investment Promotion and Protection," including the substantive protections) or Part V ("Dispute Settlement") of the ECT, where a provision is more favorable to the investor. Therefore, Article 26 of the ECT, which was more favorable to an investor, should prevail over EU law,[638] and Spain's submission that EU law has "primacy" over the ECT lacks support.[639]

472. In relation to the *amicus curiae* brief submitted by the EU Commission, InfraRed requests the Committee to "give no weight to the Commission's highly partisan and disruptive intervention."[640]

473. InfraRed alleges that "the arguments raised by the Commission (which are based on the interpretation of EU law, *Achmea* and Articles 267 and 344 TFEU) go to the substance of the failed intra-EU objection and not to the question of whether, in establishing jurisdiction under Article 26 ECT, the InfraRed Tribunal *manifestly exceeded its powers.*"[641]

474. InfraRed also posits that "[t]he Commission cannot appeal the Tribunal's decision on jurisdiction seeking to simply substitute the Tribunal's sound and reasonable interpretation of international law and the ECT by adding or amending the ECT jurisdictional requirements based on inapposite EU law considerations."[642]

475. According with InfraRed comments, the Commission "has failed to address the core issue on annulment (*i.e.*, whether the Tribunal's establishment of jurisdiction was unreasonable) (*quod non*). Rather, the Commission has focused on presenting old and new substantive arguments in support of the failed notion that (i) Article 26 of the ECT requires the Tribunal to determine its jurisdiction on the basis of EU law (as opposed to international law)".[643]

476. From InfraRed's point of view, the issues raised by the *amicus curiae* submission "have been finally and conclusively adjudicated by the Tribunal and [… ] are tangential (if

---

[638] Rejoinder, ¶91; InfraRed's PHB, ¶¶67-99.
[639] Rejoinder, ¶¶91-92.
[640] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶3.
[641] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶9.
[642] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶12.
[643] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶15.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 119 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

not irrelevant) to the issue at stake before the Annulment Committee which, once again, is whether the establishment of jurisdiction was a manifest excess of power, in the sense that it was unreasonable."[644]

477.    InfraRed argues that it was not unreasonable (or a manifest excess of powers, for that matter) that the Tribunal "right or wrong" (and "under Article 52(1)(b) of the ICSID Convention, an error in the application of the law is not considered a ground for annulment"),[645] came to the conclusions, shared by 21 Spanish ECT awards rendered before and after the InfraRed Award that have rejected the intra-EU objection,[646] that "the wording of Article 26(1) ECT confirmed that the Arbitral Tribunal had jurisdiction over all disputes (i) between a contracting party (*i.e.*, Spain) and investors of another contracting party (*i.e.*, a UK national), (ii) relating to an investment of the latter in the "Area" of the former (*i.e.*, InfraRed's investments in Spanish territory), and (iii) concerning an alleged breach of the obligations of the former (*i.e.*, Spain) under Part III ECT."[647]

478.    Referring to the awards rendered prior to this Award which dismissed the intra-EU objection under similar grounds, InfraRed concludes "(i) that the term 'Area' defined at Article 1(10) ECT and used at Article 26(1) ECT refers to the territory of a state

---

[644] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶15.

[645] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶¶20 and 211.

[646] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶16, note 22:  RL-0157EN, *Nextera Energy Global Holdings BV and Nextera Energy Spain Holdings BV*, ICSID Case No. ARB/14/11, Decision on Jurisdiction, Liability and Quantum Principles, March 12, 2019, ¶357; CL-263, *Antin Infrastructure Services Luxembourg S.à.r.l.and Antin Energia Termosolar B.V. v. Kingdom of Spain*, ICSID Case No. ARB/13/31, Award, June 15, 2018, ¶¶ 226, 230; CL-311, *9REN Holding S.À.R.L. v. Kingdom of Spain*, ICSID Case No. ARB/15/15, Award, May 31, 2019, ¶¶172-173; CL-312, *RWE Innogy GmbH and RWE Innogy Aersa S.A.U. v. Kingdom of Spain*, ICSID Case No. ARB/14/34, Decision on Jurisdiction, Liability, and certain issues of Quantum, December 30, 2019, ¶¶ 373-374; CL-313, *Stadtwerke München GMBH, RWE Innogy GMBH, and Others v. Kingdom of Spain*, ICSID Case No. ARB/15/1, Award, December 2, 2019, ¶146; CL-314, *BayWa R.E. renewable energy GmbH BayWa R.E. asset Holding GmbH v. Kingdom of Spain,* ICSID Case No. ARB/15/16, Decision on Jurisdiction, Liability and directions on Quantum, December 2, 2019, ¶283; CL-315, *Cube Infraestructure Fund SICAV and Others v. Kingdom of Spain,* ICSID Case No. ARB/15/20, Decision on Jurisdiction, Liability and partial decision on Quantum, February 19, 2019, ¶¶159-160; CL-316, *SolEs Badajoz GMBH v. Kingdom of Spain*, ICSID Case No. ARB/15/38, Award, July 31, 2019, ¶¶237-252; CL-342, *Hydro Energy 1 S.À R.L and Hydroxana Sweden AB v. Kingdom of Spain,* ICSID Case No. ARB/15/42, Decision on Jurisdiction, Liability and Directions on Quantum, March 9, 2019, ¶502; CL-317, *Watkins Holding S.À.R.L, Watkins (Ned) B.V., Watkins Spain S.L., Redpier S.L., Northsea Spain S. L, Parque Eólico Marmellar S.L., and Parque Eólico la Boga S.L v. Kingdom of Spain*, ICSID Case No. ARB/15/44, Award, January 21, 2020, ¶¶ 221-226; CL-318, *Greentech energy systems A/S and Others. v. Kingdom of Spain,* SCC Arbitration V (2015/150), Final Award, November 14, 2018, ¶¶ 221-222; CL-319, *Cavalum SGPS, S.A. v. Kingdom of Spain*, ICSID Case No. ARB/15/34, Decision on Jurisdiction, Liability and directions on Quantum, August 31, 2020, ¶360.

[647] InfraRed Comments to EU Commission's Amicus Curiae Brief, ¶16.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 120 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

member of a Regional Economic Integration Organization ("**REIO**") when the claim is brought against that state and should therefore designate in the area of Spain. Therefore, the plain meaning of Article 26 ECT does not support the exclusion of intra-EU claims; (ii) that the principle of primacy of EU law is not applicable in these cases; and (iii) that EU law, and in particular Article 344 TFEU or the Achmea decision cannot bind non-European states that enter into international treaties with EU member states."[648]

479.    Therefore, InfraRed concludes that there is no issue of jurisdiction that would limit or impede the Tribunal of hearing a ECT case between a Member State of the UE and a company from another EU State, and therefore in accordance with Article 52(1)(b) of ICSID Convention there is no evidence of excess of powers (let alone manifest) on the decision of this jurisdictional objection.

*c)   Analysis of the Committee*

480.    The topic to be analyzed now by the Committee is one of the most discussed in investment arbitration, as demonstrated by the numerous awards and committees' decisions that addressed arguments presented mostly in arbitration cases under ECT, related with the alleged primacy of EU law and lack of jurisdiction of any arbitral tribunal to adjudicate a conflict between an EU Member State and an investor from another EU Member State.

481.    The Committee is inclined to think that any argument or reasoning that might be called upon in favor of each of the positions in confrontation has been developed and is accessible. In this case, they were presented by the Parties in a way that is clear and exhaustive.

482.    For this simple reason, it would be probably impossible for the Committee to innovate in its decision, were it its intention, which it is not. The Committee is addressing an Application for Annulment of the Award for alleged breaches of Article 52 of the ICSID Convention, now for excess of powers in a matter of jurisdiction and afterwards in relation to other points of that article.

---

[648] InfraRed's Comments to EU Commission's Amicus Curiae Brief, ¶16

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

483. The issue at stake in this section of the Decision is whether the Tribunal manifestly exceeded its powers when it held that it had jurisdiction to hear this ECT case.

484. The Committee concludes that the Tribunal did not exceed its powers.

485. The mere fact that in many – actually all – similar ICSID arbitration cases the tribunals decided in favor of their own jurisdiction (and that all the *ad hoc* committees decided against that ground of annulment) is obviously an important fact. This does not mean that this Committee is not free to decide otherwise, if this was the conclusion reached, if not for other reasons, then because there is no rule of precedent applicable in this situation.

486. It is true that the Award refers as one of the elements that assisted the Tribunal to reach its conclusion the "*constant jurisprudence* on this issue,"[649] an expression that in spite of the reference in the Award that the jurisprudence is not "binding" on the Tribunal, might wrongly suggest a system of mandatory precedents.

487. Probably with this in mind, Spain tried to downgrade the relevance of this fact calling it a "parrot effect", as the tribunals "just reproduce what others say without really digging into the substance, a fact that perpetuates the errors of those decisions."[650]

488. The Committee does not see the need of deciding whether the "constant jurisprudence" is nothing more than an inadmissible "parrot effect" or whether each of the tribunals and committees reached similar conclusions after a rigorous analysis of the facts and the law, in spite of being convinced that sophisticated and qualified adjudicators act with professional responsibility and not reproducing without analysis or criticism what they have read elsewhere.

489. The Committee considers that in this Section, it is basically necessary to deal with one question: whether the Tribunal's decision to uphold its jurisdiction may be construed

---

[649] Award, ¶ 274. See also ¶ 260: "The Tribunal cannot, however, overstate the importance of the long record of recent arbitral awards or partial awards which disposed of the intra-EU jurisdictional objections and maintained the jurisdiction of the respective ECT tribunals. In the Tribunal's view, these form an arbitral *jurisprudence constante* which, short of binding this Tribunal, provides nonetheless a persuasive, reasoned and documented analytical framework that the Tribunal endorses and adopts without the need to spell it out in detail below".

[650] Memorial, ¶90.

as a manifest, obvious, self-evident situation of excess of powers for the purposes of Article 52(1)(b) of ICSID Convention.

490.    The conclusion is in the negative. It is possible to argue – as Spain does and the EU Commission supports in its *amicus curiae* brief – that all the decisions contrary to Spain's opinion are wrong as a matter of law. But even in that hypothetical case, the threshold has not been met.

491.    The Committee agrees with the *ad hoc* committee in *Amco I v. Indonesia* holding that: "[f]ailure to apply such law, as distinguished from mere misconstruction of that law would constitute a manifest excess of power on the part of the Tribunal and a ground for nullity under Article 51(1)(b) of the Convention."[651]

492.    It is debatable whether the Award was correct as a matter of interpretation of the applicable law. In a different section of this Decision, the Committee will return to this issue. But in this moment and with regard to the jurisdictional issue, it is clear that there was no failure to apply the law, and only if this was an appeal, would it eventually be possible to assess whether it was correctly or wrongly applied.

493.    It is understandable that the EU Commission, as "guardian" of the European Union Treaties,[652] fights with the instruments at its disposal – such as *amicus curiae* briefs – to convince tribunals and committees that its interpretation of EU law and other EU decisions favors its idea of the relevant duties it is vested with. The Committee respects and appreciates its "guardian" effort, which is helpful for the Decision.

494.    However, even admitting that its interpretation is correct beyond any doubt and that all of the other possible interpretations are wrong – which under the circumstances seems excessive to the Committee – a political and administrative body such as the Commission, even with powers to act at the legislative level, cannot impose to tribunals or courts its own way of interpreting the applicable law and regulations regarding their jurisdiction.

---

[651] RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, 1 ICSID REPORTS 509 (1993), ¶ 23.
[652] EU Commission Amicus Curiae Brief, ¶2.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 123 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

495.    The Tribunal, under its mandate, analyzed and decided on matters of international law and considered adequately the arguments presented now by the EU Commission, as they are actually similar to those presented by Spain in the Arbitration. Its conclusions are debatable and an appeals court could eventually overturn the decision.

496.    However, the Committee does not find that the Award fails the test of Article 52(1)(b) of the ICSID Convention as there is no manifest excess of powers when the Tribunal refused to decline its jurisdiction and the solution was not in itself unreasonable.

497.    These are the main reasons why the Committee considers that it is not relevant to address in detail the arguments presented by Spain and by the Commission, such as the issues of interpretation of the alleged rule of the primacy of EU law or of Article 16 ECT and specifically in relation to the term "Area,"[653] the relevance or not of a disconnection clause[654] and the issue of which law (ECT or EU law) is the most favorable investment protection system.[655]

498.    The same reasoning applies to the alleged competence of the ECT ratification by the EU and its member-states[656] or the Declaration 17 of the Lisbon Treaty,[657] or "the holdings of the *Achmea* Decision"[658] or other subsequent similar decisions, the interpretation of the Article 10 (i), (ii) and (iii) of the ECT[659] or of Article 27 of the VCLT[660] and the applicability of Article 107 and 108 of the TFEU to the legitimate expectations issue.[661]

499.    If, *quod non*, the issue of the primacy of the EU, as alleged by Spain and supported by the Commission, were to be analyzed as the Tribunal did in the Award, even then the Committee would not follow Spain's argument, as its decision related thereto was not made in a "manifest excess of powers."

---

[653] Spain PHB, ¶7 and ¶¶102 and following.
[654] Spain PHB, ¶185.
[655] Spain PHB, ¶9.
[656] Spain PBH, ¶¶34 and 37.
[657] Spain PHB, ¶54.
[658] Spain PHB, ¶62.
[659] Spain PHB, ¶93
[660] Spain PHB, ¶188 and following.
[661] Spain PHB, ¶199 and following.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 124 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

500.   The Committee considers – following the *Eskosol v. Italy* tribunal – that "the EU Treaties are not general international law displacing all other sub-systems of international law; rather, they exist side-by-side with other sub-systems, including those created by various multilateral treaties. The ECT is one such other sub-system of law, and it vests authority in arbitral tribunals such as this one."[662]

501.   As far as the issue of the "Area" is concerned, if the Committee reached the conclusion that it could address it on grounds of possible excess of powers by the Tribunal, which is not the case, even then the conclusion would be the same as the Committee would side with the Tribunal on its interpretation of the applicable rules of the ECT[663] as its finding seem adequate to the Committee, if not for other reasons because the conclusions in spite of being debatable are not unreasonable, obvious and self-evident.

502.   A similar situation relates to the alleged lack of a disconnection clause in the ECT and the meaning of the "*travaux préparatoires*" of this Treaty. Even if – *quod non* – it could be considered that the Tribunal's decision contained in paragraph 271 of the Award could be subject to the scrutiny of the Committee as a possible violation of Article 52 of the ICSID Convention based on excess of powers, the Committee would side with the Tribunal on the relevance of a lack of a disconnection clause in the ECT, based on the known factual circumstances, and would reach a decision on annulment request that would be the same as the one resulting from the lack of manifest excess of powers to annul the award, even if it was a wrong decision.

503.   Notably, each and every one of the arguments presented by Spain and the Commission failed to convince the Committee that the Tribunal exceeded its powers, let alone manifestly.

504.   The Committee – in spite of being aware that there is no applicable system of precedents – also considers as a relevant fact the unanimous pattern of tribunals and committees favoring the dismissal of the intra-EU jurisdictional objection in similar cases. As a matter of fact, it defies common sense to admit that all those adjudicators were not able

---

[662] CL-0389, *Eskosol S.P.A. In Liquidazione v. Italian Republic*, ICSID Case No. ARB/15/50, Decision on Italy's Jurisdictional objection based on inapplicability of the ECT to Intra-EU disputes, May 7, 2019, ¶ 181.
[663] Award, ¶263.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

to discern the arguments against jurisdiction, and even more, manifestly exceeded their powers when deciding in an unreasonable way.

505.    In any event, as already mentioned, the Committee considers that the Tribunal had jurisdiction to adjudicate and therefore Article 52(1)(b) of the ICSID Convention has not been breached.

506.    In conclusion, the Committee dismisses this request as presented by the Applicant.

    4.    <u>Manifest excess of powers by disregarding the applicable international law, including the ECT itself, and by disregarding the application of the entire EU law</u>

      *a)  Spain's submission*

507.    Spain considers that even if the Committee concludes – as it occurs – that there is no lack of jurisdiction of the Tribunal and the Award cannot be annulled for excess of powers under those grounds, still the primacy of EU law and its applicability surface as grounds for annulment because the Tribunal also exceeded its powers by disregarding the application of EU law.[664]

508.    Spain considers that Article 38 of the ICJ Statute is applicable and, like EU law, it must be applied in accordance with Article 26(6) of the ECT, in which case EU state aid rules, including the TFEU provision related to state aid,[665] would be mandatory. This was not considered by the Tribunal, in Spain's opinion.

509.    In addition, Spain posits that EU regulations on state aid were part of customary law applicable to EU Members, and the Tribunal also did not apply this source of international law. In contrast, Spain argues that the Tribunal considered that EU state aid law was not "relevant to the analysis of whether [the] Spain violated a specific commitment made to the CSP sector"[666] and because of that the Tribunal manifestly exceeded its powers.

---

[664] Memorial, ¶115.
[665] Memorial, ¶118.
[666] Memorial, ¶122 quoting Award, ¶443.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

510.   Spain also considers that the autonomy and primacy of EU law must be respected internationally[667], and it is actually respected by the international community regarding the interrelationship between international treaties and EU law,[668] as it is accepted that the EU and the Member States have disconnected from international conventions in favor of EU law for intra-EU matters.

511.   Spain argues that this practice must also be respected by arbitration tribunals, which cannot act outside and openly in contrary to the first source of international law, the Article 38 of the ICJ Statute, or ignore EU law. Despite this, the Award described EU law as "highly irrelevant", thereby underlining the fact that the award itself must necessarily be annulled because it disregards the application of the applicable law.[669]

### b)  InfraRed's submission

512.   InfraRed's arguments against the jurisdictional objections are also part of its line of argumentation in relation to the lack of disconnection of the ECT by EU State Members and the EU itself.

513.   More specifically regarding the applicability of EU state aid law, which InfraRed considers a new argument[670] put forward in the annulment proceedings by the Gosalbo Report, it contends that the Committee should disregard it. It is clear that Spain disagreed with the Tribunal but that does not make the Award annullable.[671]

514.   According to InfraRed, the Tribunal considered and therefore respected EU law, only decided that it was "highly irrelevant"[672] to the analysis of InfraRed's legitimate expectations,[673] and its decision did not infringe the autonomy of the EU law and its legal order.[674] In any case, InfraRed alleges that this ground should be "manifest" to annul the Award.

---

[667] Reply, ¶¶ 169-173.
[668] Reply, ¶¶ 175-192; Spain's PHB, ¶¶70-74.
[669] Reply, ¶194-197.
[670] Counter-Memorial, ¶106.
[671] *Ibid*.
[672] Rejoinder, ¶9.
[673] Counter-Memorial, ¶107.
[674] Counter-Memorial, ¶108.

515.    InfraRed considers that Spain was unable to show why the Tribunal failed to apply the applicable law. InfraRed highlights that the Tribunal noted that "the provisions EU law are not dispositive nor even relevant to resolve the issues raised by this dispute,"[675] and that this was perfectly consistent with the fact that the application of the ECT was sufficient to adjudicate the dispute.[676]

516.    InfraRed adds that the case law cited by Spain did not favor its position.[677] The references to Article 38 of the ICJ Statute were inapposite, as was the reference to Article 103 of the United Nations Charter, state practice and the principle of autonomy of EU law over domestic law. InfraRed further contends that in the context of investment claims under the ECT, those rules and Articles 107 and 108 of the TFEU are irrelevant.[678]

517.    In addition, InfraRed considers that Spain's position was unclear in that EU law fell within the wording of "principles of international law" or under the reference to "applicable rules" of Article 26 ECT. In paragraph 207 of its Reply, Spain concludes that the "[a]utonomy and primacy of EU law are applicable international custom"[679] but in paragraph 214 of the Reply it criticizes the disregard of EU state aid law.[680] Therefore, it is unclear what international custom it relied on. That the principle of autonomy and primacy of EU law could qualify as "international custom" is highly doubtful. But the allegation that EU state aid law is an international custom is utterly wrong.[681]

518.    InfraRed concludes that the applicable law in this case is the ECT and not EU law, and the Tribunal's finding that Spain breached Article 10 of the ECT could not be annulled for failing to apply the proper law.[682] If anything, InfraRed adds, EU law should be treated as a fact.[683]

---

[675] Rejoinder, ¶101 quoting Award ¶258.
[676] Rejoinder, ¶101.
[677] Rejoinder, ¶105-109.
[678] Rejoinder, ¶111.
[679] Rejoinder, ¶112 quoting Reply, ¶207.
[680] Rejoinder, ¶112 quoting Reply, ¶204.
[681] Rejoinder, ¶112.
[682] Rejoinder, ¶117.
[683] Rejoinder, ¶120.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

### c)  Analysis of the Committee

519.  The Committee refers to its decision above when interpreting Article 52(1)(b) of ICSID Convention in relation to the jurisdiction of the Tribunal, which is directly applicable to the issue under analysis.  Reference is also made to the unanimous position of legal authorities, as agreed by the Parties, that *ad hoc* committees are not appeal bodies.

520.  Basically, Spain posits that the Tribunal should have decided that the EU state aid regulations are relevant to the outcome of the case, and being so, the Tribunal should have dismissed the case. This is so because she considers that InfraRed's request directed at the Tribunal is illegal, as allegedly the request for the approval by the EU of the state aid had not been presented by Spain to the Commission and, therefore, the subsidy system was not approved in accordance with EU law and regulations. As a consequence, the state aid was and is illegal, and no legitimate expectations of InfraRed could have been formed based on an illegality.

521.  What is, therefore, at stake is actually a disagreement with the Award on the merits. The Committee understands that in certain situations it would be entitled to address a decision on the merits, but only when it is manifest, obvious and self-evident that the decision failed to apply the law, when applicable. Instead, as is the case, the Tribunal considered that the issue at stake was not affected by a specific law, which means that the law would be considered to be applied if it was relevant, but the Tribunal concluded that it was not.

522.  It is true that the EU state aid rules are part of Spain body of law, and this is not a matter of discussion between the Parties. This is a situation which occurs with many other rules of law not taken into account by the Tribunal, as they were not relevant for its decision.

523.  This was the reasoning of the Tribunal, as it considered that the legitimate expectations of InfraRed are protected and must be compensated, irrespectively of the state aid regime. For the Tribunal, the "Purported Agreement" and other relevant facts were not to be assessed or analyzed under any EU law perspective and they must be treated as relevant facts for the purposes of the assessment of legitimate expectations:

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 129 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

> "The Tribunal is not inclined to analyse the Purported Agreement as a source of binding contractual obligations under Spanish law, but rather as a legally cognizable fact, and in particular, as evidence of a representation by Respondent to maintain some of the elements of the Original Regulatory Regime for some CSP plants that satisfied certain administrative requirements."[684]

524.   It is clear that the Award considered relevant that a "legally cognizable fact" was evidenced and should be accepted under the Tribunal's discretion and reached the conclusion that "the text of Article 4 of RD 1614/2010 and of Article 44.3 of RD 661/2007 must be read in the legislative and regulatory context of the time. Thus contextualized, these provisions suggest that Respondent intended to shield CSP plants registered on the Pre-allocation Register from future revisions of the tariffs, premiums and lower and upper limits that were in effect when Claimants invested."[685]

525.   As a consequence, the legitimate expectations were not born from the state aid regimen but rather from representations and compromises unilaterally made by Spain towards investors, notably the Respondents.

526.   The Committee, after its deep analysis of the Award, agrees that "[a] plain reading of the Award shows that after analyzing all the evidence in the record, the Tribunal concluded, among others, that several evidence including the (i) the Purported Agreement, (ii) the waiver letters, and (iii) the enactment of RD 1614/2010 gave rise to a legitimate expectation that Spain would not adopt any changes to the Original Regulatory Regime."[686]

527.   It is certainly debatable whether the state aid law and regulations are irrelevant or not for the outcome of the case, and even whether legitimate expectations may derive from a State's set of compromises that might be considered illegal for not being pre-dated by an EU decision on state aid.[687]

---

[684] Award, ¶427.
[685] Award, ¶418.
[686] Counter-Memorial, ¶247.
[687] Even this assumption is debatable, as the alleged non-authorized state aid was a responsibility of Spain (that opted for not notifying it) and until now the subsidies have not been considered illegal (see Rejoinder, ¶¶125-127).

528.   Some may consider that the "legally cognizable facts" were born from a state aid regimen that was illegal because it had not previously analyzed and authorized by the Commission, which might provoke illegitimacy.

529.   It is even possible to conclude that Spain should not renounce, through the "legally cognizable facts", to its sovereign right to review its regulatory regime to respond to serious economic factors, such as the financial crisis and tariff deficit issue, or any others.

530.   However, the Tribunal concluded that Spain's behavior – being construed as a renunciation or not – was clear in the sense of providing as incentive for investments on alternative energy production a compromise of maintaining a stability framework, and that from a legal standpoint a violation of legitimate expectations occurred and therefore compensation is due.

531.   In view of all these facts and arguments, only an appeal body could go deeper into the merits, but not a committee understanding that the "annulment deals only with the legitimacy of the decision-making process, not its merits." [688]

532.   The Committee considers that it is not debatable that in any case subject to any dispute resolution system, under any substantive applicable law, the tribunals or courts cannot and will not take into account all the laws and regulations in force in a given jurisdiction, when they are not relevant for the decision.

533.   Technically, and from a legal standpoint, the Tribunal's reasoning confirms that it considers that a compensation is due under the violation of a Spain's representation and commitment. And the fact that theoretically Spain could not be allowed to grant stability by the "Purported Agreement" and other "legal cognizable facts" – in spite of EU never apparently trying, let alone obtaining, to reach a decision and implement it against Spain on those basis – has not been considered relevant and therefore the EU state aid rules were just legally considered irrelevant in the situation at stake.

534.   Additionally, the mere fact that the issue is controversial and the Tribunal's findings related thereto were neither innovative nor unsupported would be enough for this

---

[688] CL-328, Schreuer, Article 52, ¶ 74.

Committee to disregard an allegation of "manifest excess of powers", as no manifest, obvious, self-evident situation of excess of powers existed.

535.    As a consequence, those same findings may not originate the annulment of an award for excess of powers.

536.    In conclusion, the Committee dismisses this request as presented by the Applicant.

5. <u>Manifest excess of powers by misapplying the applicable law to be taken into account in assessing legitimate expectations.</u>

*a) Spain's submissions*

537.    If the Committee decides – as it is the case – that the above requests for annulment are dismissed, Spain subsidiarily alleges that in case it is considered that EU law has been applied by the Tribunal, "this would have resulted in a grotesque and incorrect application of EU law that should lead to the annulment of the Award."[689]

538.    Spain posits that the "aid schemes for renewables should have been notified to the European Commission and they were not,"[690] and this implies that "under EU law, there was no legitimate expectation that this subsidy would remain petrified."[691] Therefore, by disregarding state aid regulations the Tribunal manifestly exceeded its powers.

539.    Spain argues that the Award should have considered that, under EU law, without authorization, state aid is illegal, and this position was extensively debated in the Arbitration.

540.    As a consequence, Spain alleges that the Award shall be annulled because the Tribunal "manifestly misapply[ied] EU Law and […] had manifestly exceeded its powers for the purposes of Article 52(1)(b) of the ICSID Convention."[692]

---

[689] Memorial, ¶133.
[690] Memorial, ¶134.
[691] Memorial, ¶135.
[692] Reply, ¶238.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 132 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

### b) InfraRed's submission

541.  InfraRed considers that Article 52(1) of the ICSID Convention is not warranted in cases of an alleged misapplication of the proper law, not even a "gross misapplication,"[693] - all the Committee must do is to assess whether the Tribunal correctly identified the applicable law and applied it, which it did.[694]

542.  InfraRed therefore disagrees with Spain's subsidiary argument that "there has been a gross misapplication of EU law", and that "the assessment of legitimate expectations should include a verification of whether the promised subsidy is lawful under the law applicable to the dispute and in accordance with national law."[695]

543.  InfraRed posits that neither Article 107 nor Article 108 TFEU established any obligation on private companies because they are directed to Member States.

544.  Also, the fact that Spain had failed to give notice to the EC about the remuneration scheme is not attributable to InfraRed.[696] But more importantly, the regime under which InfraRed invested has never been declared illegal.[697]

545.  For all these reasons, InfraRed concludes that Spain failed to prove that the Tribunal acted manifestly outside the scope of its mandate in its jurisdictional analysis and in its determination of the applicable law. Therefore, there is no basis to annul the Award under Article 52(1)(b) of the ICSID Convention.[698]

### c) Analysis of the Committee

546.  The Committee, once more, considers that the arguments put forward by Spain in relation to EU state aid law and regulations are misguided when presented to a committee constituted under the ICSID Convention and empowered to decide under Article 52 of said Convention, as they were eventually adequate for the analysis and decision of an appellate body, which it is not the case.

---

[693] Rejoinder, ¶121.
[694] Counter-Memorial, ¶112.
[695] Rejoinder, ¶121, Reply, ¶215, Section V.A.4.
[696] Rejoinder, ¶¶125, 126
[697] Rejoinder, ¶127.
[698] Rejoinder, ¶130.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 133 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

547.    In a nutshell, Spain considers that the fact that the subsidies had not been notified by Spain, let alone authorized by the EU, is enough to conclude that the promised remuneration is illegal and therefore no legitimate expectations could materialize from an illegality.

548.    This argument may be sound or not. The Tribunal might have erred in the way it applied the law in the Award. But the Committee considers that errors of tribunals – even if they were manifest and obvious, which does not seem to be the case as too many tribunals and committees were not convinced in similar situations – are outside the scope of the annulment system of Article 52(1)(b) of the ICSID Convention.

549.    As stated above, the decision of the Tribunal in relation to the relevance of legitimate expectations, is based on the position that there is no "manifest excess of powers" when – even if, *quod non*, as a matter of law it might be wrong – the excess is not unreasonable, obvious and self-evident. The Committee considers that this is not the case, as the relevance of legitimate expectations may not be dependent on whether there is a situation of legality, as far as the EU state aid rules had been or not respected by Spain.

550.    For these reasons, the Committee considers that it is not relevant to address in detail the arguments presented by Spain and the Commission, such as the issues of interpretation of the EU state aid regime and legal issues of whether "[the] right to fair and equitable treatment, [the] 'legitimate expectations', and [the] right not to be expropriated under Articles 10(1) and 13(1) of the ECT" [699] were or not violated by Spain.

551.    In any event, the Committee reaffirms its conclusion that the interpretation of the EU state aid regime is not a matter of divergence between the Parties and the Tribunal. The divergence lies – as analyzed above – on whether or not legitimate expectations may be generated by Spain's representations and commitments, and also whether its violation creates a duty to compensate if allegedly Spain breached its duties to request and be authorized by the Commission to implement RD 661/2007, RD 1614/2010 and other rules related to tariff remuneration and its stability.

---

[699] Spain PHB, ¶138.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

552. However, and given the reasons set forth above, the Committee considers that, under Article 52 of the ICSID Convention, it is not empowered to annul the Award based on the interpretation that the Tribunal made of the legal framework. The same applies to evidence of the existence and the conditions for the validity of legitimate expectations and the duty of compensation if a breach is also evidenced, under international law and ECT.

553. A similar reasoning applies to the alleged rights to FET and to not be expropriated.

554. In conclusion, the Committee dismisses this request as presented by the Applicant.

6. <u>Manifest excess of powers by awarding damages contrary to its findings on quantum</u>

a) *Spain's submissions*

555. Spain argues that there was a clear contradiction in terms of liability and damages, and that the Tribunal adopted DCF calculation proposed by Brattle, rejecting the Accuracy alternative solution, without justification.[700]

556. Spain further states that the Award "completely dispenses with the application of regulatory risk principles and the illiquidity discount,"[701] and quoted the dissenting opinion of Professor Pierre-Dupuy in footnote 782 of the Award.

557. In its Reply, Spain states that these alleged facts might also constitute a manifest excess of powers that justifies the annulment of the award, under Article 52(1)(b) of the ICSID Convention, which has been reiterated in the Reply's petitum.[702]

b) *InfraRed's submission*

558. InfraRed does not analyze directly this annulment request based on manifest excess of powers related to the award of damages, allegedly related to the findings on quantum. However, from the analysis undertaken regarding the request based on the alleged

---

[700] Memorial, ¶247.
[701] Memorial, ¶248.
[702] Reply, ¶430.

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 135 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

failure of the Tribunal to state reasons, it is possible to conclude that InfraRed disagrees with Spain position.

559.   Specifically in relation to Professor Dupuy's position, it considers that it is irrelevant, but "in any case, even if the Tribunal's reasons were wrong (quod non), and the opinion given my Pierre Marie Dupuy was right (quod non), the latter could not lead to the annulment of the Award."[703]

### c)   Analysis of the Committee

560.   Spain does not elaborate on the annulment request related to quantum and damages, as being a situation of manifest excess of powers. The Committee understands that restraint, as it does not seem to be possible to consider the alleged fact that the conclusion on damages was not in accordance with the findings in the matter of quantum to be a "manifest excess of powers", adequate to ground the annulment of the Award - let alone the circumstance that Prof. Dupuy disagreed (as expressed in footnote 782 of the Award) with the other members of the Tribunal conclusions in relation to damages. This could only be considered a possible situation of failure to state reasons, which has been invoked and will be dealt in the next chapter of this Decision.

561.   In any case, the Committee does not find any evidence of manifest excess of powers by the Tribunal related to this request. As a matter of fact, what the Tribunal did in relation to assessing the damages and deciding on quantum was to take into account mostly the expert reports and their comments and answers in the hearings and to reach its conclusions following the standard practice of any tribunal or court of law.

562.   What apparently causes Spain's reaction and request is, therefore, not an excess of powers, let alone "manifest", but rather a disagreement in relation to the Tribunal's findings and the alleged failure to state reasons for its decision, issues that are not related to manifest excess of powers, which in any event has not been evidenced.

563.   In conclusion, the Committee dismisses this request as presented by the Applicant.

---

[703] Rejoinder, ¶265.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

## C.     FAILURE TO STATE REASONS

### 1.     Interpretation of Article 52(1)(e) of the ICSID Convention

#### a)  *Spain's submissions*

564.    Spain proposes that in accordance with Articles 48(3) and 52(1)(e) of the ICSID Convention, *ad hoc* committees have "uniformly established" that it is necessary that the reasons stated by a tribunal allow the reader "to follow how the tribunal proceeded from Point A. to Point B."[704]

565.    By quoting *Sempra v. Argentina* committee, Spain argues that "the task of the *ad hoc* committees under Article 52(1)(e) of the ICSID Convention is to determine whether there is a comprehensive and consistent reasoning on the part of the tribunal."[705] Equally relevant is the need to ensure that the parties are able to understand a ruling, as the *Tidewater v. Venezuela* committee recognized.[706] In this sense, the *Soufraki v. UAE* committee clarified that "insufficient and inadequate reasons lead to the annulment of a judgement."[707]

566.    Spain also posits that Articles 48(3) and 52(1)(e) of the ICSID Convention impose an obligation on any tribunal to deal with "the issues, arguments and evidence presented" and therefore, "failure to deal with certain relevant evidence or facts" amounts to a failure to state reasons as a ground for annulment.[708]

#### b)  *InfraRed's submission*

567.    InfraRed agrees with Spain that any award has to include conclusions that are sufficient to allow the committee "to follow how the tribunal proceeded from Point A. to Point B." However, InfraRed considers that Spain fails to note that said reasons "do not need to be explicitly stated as long as the reader can understand the decision reached by the tribunal."[709]

---

[704] Memorial, ¶141 quoting *MINE*, ¶ 5.09.
[705] Memorial, ¶142.
[706] Memorial, ¶143, quoting *Tidewater Investment SRL and Tidewater Caribe, C.A. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/10/5, Decision on Annulment, December 27, 2016, ¶¶164-165.
[707] Memorial, ¶144.
[708] Memorial, ¶149.
[709] Counter-Memorial, ¶137 quoting CL-337.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

568.    InfraRed also contends that the failure to state reasons, in accordance with Article 52(1)(e) of the ICSID Convention, is "inherently related" to the requirement contained in Article 48(3) of the ICSID Convention that an award "shall state" the reasons upon which it is based[710] and needs to be addressed by a committee with a high standard, and Spain has failed to discharge that burden.[711]

569.    InfraRed posits that Spain should have demonstrated that the Award's reasoning is "contradictory, frivolous, incomprehensible or completely absent" and that such defect is "manifest" on the face of the Award. The manifest factor requires that the award contain no reasons at all in relation to a particular finding.[712]

570.    The Award did not fail to state reasons since the Tribunal stated its reasoning with regard to: (i) the discussion over the installed capacity, (ii) the applicable law, (iii) the interpretation of Article 10(1) ECT, (iv) the interpretation of the fair and equitable treatment under Article 10(1) ECT, and (v) the findings on damages.[713]

571.    InfraRed highlights that the Award was issued "unanimously" by the three arbitrators, except for a single footnote (footnote 782 by Prof. Dupuy) about damages. InfraRed avers that the Award "processes the Parties' allegations and the legal authorities invoked by each side in order to provide its detailed reasoning and findings."[714]

572.    InfraRed also notes in their Rejoinder that Spain's Reply had "apparently dropped three of the reasons it argued for annulment under Article 52(1)(e)", as allegedly the Reply no longer mentioned that the Tribunal would have allegedly failed to express adequate and sufficient reasons concerning (i) its decisions on the date of investment, (ii) the decision not to apply EU law when deciding its jurisdiction, and (iii) its conclusion to adopt the DCF methodology.[715]

573.    Consequently, InfraRed states that there are no grounds for annulment of the Award under Article 52(1)(e) of the ICSID Convention.

---

[710] Counter-Memorial, ¶127.
[711] Counter-Memorial, ¶127; Rejoinder, ¶13.
[712] Counter-Memorial, ¶135.
[713] Rejoinder, ¶12.
[714] Counter-Memorial, ¶132.
[715] Rejoinder, ¶206.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 138 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

### c) Analysis of the Committee

574. The origin of this ground for annulment is explained in the Updated Background Paper as follows: "The rationale for this discretion was to reconcile it with another provision which allowed the parties to agree that the award need not state the reasons. However, during one of the Legal Committee's meetings, it was decided to remove the parties' discretion in this regard and, as a consequence, the discretion was also removed from the ground for annulment."[716]

575. The Updated Background Paper provides that "[t]he drafting history of the Convention concerning annulment based on a failure to state reasons does not provide further guidance as to when such a failure has occurred, nor does the Convention specify the manner in which a Tribunal's reasons should be stated."[717]

576. It is also relevant to take into account[718] that "*ad hoc* [c]ommittees have explained that the requirement to state reasons is intended to ensure that parties can understand the reasoning of the Tribunal, meaning the reader can understand the facts and law applied by the Tribunal in coming to its conclusion."[719] It is also stated that the "correctness of the reasoning or whether it is convincing is not relevant."[720]

577. The Updated Background Paper also highlights[721] that "[s]ome *ad hoc* [c]ommittees have suggested that "insufficient" and "inadequate" reasons could result in annulment.[722] However, the extent of insufficiency and inadequacy required to justify

---

[716] R-0118, Updated Background Paper on Annulment for the Administrative Council of ICSID May 5, 2016, ¶24.

[717] R-0118, ¶102.

[718] R-0118, ¶105.

[719] "*MINE*, ¶5.09 ("the requirement to state reasons is satisfied as long as the award enables one to follow how the tribunal proceeded from Point A. to Point B. and eventually to its conclusion, even if it made an error of fact or of law"); *Vivendi I*, ¶64; *Wena*, ¶81; *Transgabonais*, ¶88; *El Paso*, ¶220; *Kılıç*, ¶64; *Iberdrola*, ¶124; *Lemire*, ¶277; *Libananco*, ¶192; *Occidental*, ¶66; *Tulip*, ¶¶98, 104; *Total*, ¶267; *Dogan*, ¶¶261-263; *Micula*, ¶¶136, 198; *Lahoud*, ¶131; *TECO*, ¶¶87, 124.

[720] "*Klöckner I*, ¶129; *MINE*, ¶¶5.08 & 5.09; *Vivendi I*, ¶64; *Wena*, ¶79; *CDC*, ¶¶70 & 75; *MCI*, ¶82; *Fraport*, ¶277; *Vieira*, ¶355; *Caratube*, ¶185; *Impregilo*, ¶180; *SGS*, ¶121; *Iberdrola*, ¶¶76-77; *Lemire*, ¶278; *Occidental*, ¶66; *Tulip*, ¶99, 104; *EDF*, ¶328; *Total*, ¶271; *Micula*, ¶135; *TECO*, ¶124. R-0118, ¶105.

[721] R-0118, ¶¶106-108.

[722] "*Mitchell*, ¶21 ("a failure to state reasons exists whenever reasons are... so inadequate that the coherence of the reasoning is seriously affected"); *Soufraki*, ¶¶122-26 ("insufficient or inadequate reasons, which are insufficient to bring about the solution or inadequate to explain the result arrived at by the Tribunal"); *TECO*, ¶¶248-250".

annulment on this basis has been debated.[723] Other *ad hoc* committees have suggested that they have discretion to further explain, clarify, or infer the reasoning of the Tribunal rather than annul the award.[724] Finally, a majority of *ad hoc* committees have concluded that "frivolous" and "contradictory" reasons are equivalent to no reasons and could justify an annulment."[725]

578. The Committee notes that this ground for annulment is not to be taken lightly. One of the cornerstones of any adjudicator's decision, which may be even more relevant in investment protection arbitration because consent to arbitrate by States is a politically scrutinized issue, lies in the objective possibility of the parties understanding clearly the decisions, even if they are not happy with the outcome or finally prepared to admit that they were wrong in their arguments.

579. But the Committee also notes that this ground for annulment cannot be abused or employed in such a way as to allow the Committee to re-examine the case, as if were an appellate body. The line that separates "failure to state reasons" and disagreement with the reasons presented by the tribunal (as the losing party would prefer a different reasoning aimed to reach a more favorable decision) is thin, but that line exists, and an *ad hoc* committee may never decide as if these were a continuum without real separation.

580. It is also true that the committees have a degree of discretion as far as to the tracing of that line is concerned.

---

[723] "*Compare Amco I*, ¶43 ("sufficiently pertinent reasons"), *and Klöckner I*, ¶120 ("sufficiently relevant"), *with Amco II*, ¶7.55 ("no justification for adding a further requirement that the reasons stated be 'sufficiently pertinent'"), and *MINE*, ¶ 5.08 ("[t]he adequacy of the reasoning is not an appropriate standard of review"); *Iberdrola*, ¶94 ("this Committee considers that the annulment mechanism does not allow it to review the adequacy of the reasoning of the Award") [unofficial translation from Spanish]; *Occidental*, ¶64; *TECO*, ¶¶249-250".

[724] "*Vivendi II*, ¶248; *Wena*, ¶83; *Soufraki*, ¶24; *CMS*, ¶127; *Rumeli*, ¶83 (with the caveat that if non-stated reasons "do not necessarily follow or flow from the award's reasoning, an *ad hoc* committee should not construct reasons in order to justify the decision of the tribunal").

[725] *Amco I*, ¶97; *Klöckner I*, ¶116; *MINE*, ¶¶5.09 & 6.107; *CDC*, ¶70; *MCI*, ¶84; *Vieira*, ¶357; *Caratube*, ¶¶185-86 & 245; *Tza Yap Shum*, ¶101; *El Paso*, ¶221 ("contradictory to a point to neutralize each other"); *Malicorp*, ¶45 ("an award must be upheld unless the logic is so contradictory as to be 'as useful as no reasons at all'"); *RSM*, ¶86 (noting that the contradiction must be substantial); *Occidental*, ¶65; *Tulip*, ¶¶109-112; *Total*, ¶268; *Lahoud*, ¶¶133-135; *TECO*, ¶¶90, 275, 278.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 140 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

581.    As a general conclusion, the Committee will scrutinize carefully each one of the specific alleged grounds and – as the Parties propose[726] – will always take into account as a first approach to be developed, when necessary, that "the requirement to state reasons is satisfied as long as the award enables one to follow how the tribunal proceeded from Point A. to Point B. and eventually to its conclusion, even if it made an error of fact or of law."[727]

582.    Finally, as a general remark, the Committee does not agree with InfraRed when it argues s that Spain "apparently dropped three of the reasons it argued for annulment under Article 52(1)(e)"[728] in Spain's Reply, namely that the Tribunal would have allegedly failed to express adequate and sufficient reasons concerning (i) its decisions on the date of investment, (ii) the decision not to apply EU law when deciding its jurisdiction, and (iii) its conclusion to adopt the DCF methodology.

583.    First, the mere fact that Spain did not reaffirm its position in its Reply as expressed in the Memorial, could not by itself and without additional facts that neither exist nor have been presented, allow this conclusion.

584.    Second, in relation to the Tribunal's decision on the date of investment, Spain reaffirms its argument at the Hearing,[729] with a change to the relief sought related thereto in the Reply and maintained in its PHB to a request of partial annulment, instead of full annulment.[730] The Committee will address this issue below.

585.    Third, the Tribunal's decision not to apply EU law when deciding on its own jurisdiction has been reaffirmed at the Hearing[731] and in the PHB,[732] and the Committee analyzed and decided it above.[733]

586.    Finally, regarding the Tribunal's decision to adopt the DCF methodology, it is true that apparently Spain opted for not developing the arguments presented in the Memorial.

---

[726] See ¶¶159 and 327.
[727] *MINE*, ¶5.09.
[728] Rejoinder, ¶206.
[729] Spain's Opening Statement PPT, slides 5 and 91.
[730] Reply, ¶430, o); Spain's PHB, ¶209, o).
[731] Spain Opening Statement PPT, slides 5 and 82.
[732] Spain's PHB, ¶¶11-92, 209, h).
[733] See section VII.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 141 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

However, if not for other reasons, to avoid the risk of not analyzing and deciding on all the issues, the Committee will address it below.

2. <u>Failure to state reasons for determining that the installed capacity was less than 50MW, thereby accepting the Claimants' misleading and fraudulent statement without justification, and provision of "manifestly insufficient, inadequate and blatantly contradictory reasons" for supporting installed capacity of less than 50MW</u>

*a)  Spain's submissions*

587.  As previously explained, Spain posits that the installed capacity was a key issue because if the installed capacity of the Olivenza 1 and Morón Plants were above the 50 MW threshold, they did not "comply with the condition of access to the RRE"[734] and therefore, the installation would have unduly benefited from the special aid scheme.

588.  As such, Spain posits that the Award shall be annulled because the Tribunal failed to state the reasons for its decision regarding this issue.

589.  First, because the Tribunal limited itself to making reference to the *Eiser* award as the grounds for its decision[735] and such award was annulled in its entirety. Therefore, being that award inexistent, there are no reasons stated in the Award.

590.  Second, the Tribunal "stated that plants are remunerated on the basis of net production"[736] and for that conclusion assumed that the literal wording of Article 20 of RD 661/2007 supported this idea. However, as "nowhere in this provision it is stated that plants are remunerated on the basis of net production",[737] it is not clear how the Tribunal reached the conclusion that "plants should be remunerated according to net production"[738] or why the "net power" variable was the most important.[739]

591.  Third, Spain argues that paragraphs 335 and 329 of the Award were in clear contradiction. In Spain's view there was a flagrant absence of reasons with which to resolve the question of the overweighting of the plants subject to this arbitration, as they

---

[734] Memorial, ¶173.
[735] Memorial, ¶181.
[736] Memorial, ¶187.
[737] *Ibid*.
[738] Memorial, ¶188.
[739] Memorial, ¶189.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 142 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

in no way showed the reasons why it could be concluded that when the legislator refers to "installed power" in the terms in which it does in Articles 27 and 30(4) of the LSE it is referring to net power and not to gross power.[740] In addition, by stating that the experts were in agreement with regard to the concepts when they were not, the Tribunal contradicted itself without providing reasons for such assertion.

592.    The Tribunal also allegedly left unresolved the issue of the veracity of the nominal power on the nameplates, and whether such nominal power corresponds to the concept of installed power expressed by the legislator.[741]

593.    In the alternative, Spain argues that the Tribunal's conclusion that the capacity was less than 50MW lacked adequate grounds because Article 20 of RD 661/2007 does not indicate that net power is the most important variable.[742]

### b) InfraRed's submission

594.    InfraRed submits that the Tribunal duly assessed Spain's allegations on the installed capacity of the CSP Plants,[743] all the evidence from the Parties' expert reports,[744] and the report issued by *Red Eléctrica de España* (the Spanish electricity grid operator) that confirmed that the net output of the Plants was 50 MW or less.[745]

595.    InfraRed also develops arguments aimed to highlight the Tribunal's reasoning in relation to the issue at stake and argues that Spain failed to prove that the reasoning of the Tribunal for determining that the installed capacity was equal to or less than 50MW was "contradictory, frivolous, or incomprehensible", as required by Convention Article 52(1)(e).

596.    InfraRed mentions that there was no contradiction between paragraph 329 (Spain's expert testimony) and paragraph 335 (the Tribunal's analysis of the evidence taken at the hearing, including the conference between both experts).[746]

---

[740] Reply, ¶374.
[741] Memorial, ¶199.
[742] Memorial, ¶200.
[743] Counter-Memorial, ¶164.
[744] Counter-Memorial, ¶166.
[745] Counter-Memorial, ¶167.
[746] Counter-Memorial, ¶175

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

597.  InfraRed posits that in paragraph 335 of the Award, the Tribunal explained that "both experts agreed that the 'gross installed capacity' is measured 'at the terminals of the generator inside the plant' and that the 'net installed capacity' is 'generally lower than the gross installed capacity as a result of power used by the equipment inside the plant, which draws its electricity directly from the turbine.'"[747] InfraRed highlights that the Tribunal made reference to the Transcript (Day 4) in note 439 where the experts agreed on those notions.[748] Therefore, Spain had not sustained any flaw in the Tribunal's reasoning and her claims under Article 52(1)(e) must fail.

598.  Finally, InfraRed argues that in order to prove that the Award failed to state reasons, it is required to prove that the Award contains no reasons at all for a particular finding that is indispensable to understand the tribunal's reasoning. InfraRed quotes *Enron v. Argentina* and *Klöckner v. Cameroon* to support its statement that arbitrators do not have to deal with all of the parties' arguments.

### c)  Analysis of the Committee

599.  The issue of the installed capacity, as alleged, does not respect the line between failure to state reasons and disagreement with the reasons that have been stated.

600.  As implicitly accepted by Spain, the reference to the conclusions of the *Eiser award* – were it not for its annulment – would be in itself part of the reasoning on the issue of installed capacity. As rightly highlighted by Spain in a number of other occasions, investment treaty awards (and all others, for that matter) do not constitute mandatory precedents, and therefore, when quoted they may be treated just as legal authorities among others, probably more useful as their approach is more fact specific oriented.

601.  The *Eiser* award has been annulled for reasons not related with the interpretation of the various concepts related with the "installed capacity" criterion, and therefore the Committee does not see any valid argument against taking its analysis into account as inspiration and subsequent inclusion in the Award as a way of stating reasons.

---

[747] Counter-Memorial, ¶176.
[748] Counter-Memorial, ¶176.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 144 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

602.    Even if this was not admissible, and therefore the reasons incorporated by way of some sort of reference to the *Eiser* award could not be acceptable, abundant evidence exists pointing to the fact that the reasoning of the Tribunal was not limited to those references and the additional reasoning was clear enough to allow this Committee to confirm that it was able "to follow how the tribunal proceeded from Point A. to Point B."

603.    It is more than obvious that Spain disagreed with the interpretation of the Tribunal in relation to the "installed capacity" issue and it is not difficult for this Committee to admit that whether the Tribunal may have committed an "error of fact or of law" may be debatable.

604.    However, even if the Committee considers that it was entitled to enter into that analysis, its conclusion would be evident: that analysis would be for an appellate entity and not for an *ad hoc* committee, for the reasons abundantly explained in this Decision and clearly corresponding to the highly dominant interpretation of the limited powers vested in annulment committees, a position with which the Committee agrees.

605.    In conclusion, the Committee dismisses this request as presented by the Applicant.

   3. <u>Failure to state reasons as to why the Award disregards the application of the applicable international law, including the ECT itself, and why the Award disregards the application of the entire EU law altogether</u>

      *a) Spain's submission*

606.    Spain posits that the Tribunal rejects the application of EU law as "highly irrelevant" without giving any justification.[749]

607.    In Spain's view, the Tribunal contradicts itself when it recognized that EU law is "an undeniable part of the body of international law", but at the same time declared that "the provisions of EU law are neither dispositive nor relevant to the resolution of the questions raised" in the present dispute.[750]

608.    As a consequence, after declaring EU law applicable, the Award rejected the application of the TFEU and its Articles 107 and 108 and the state aid scheme[751]

---

[749] Memorial, ¶153.
[750] Memorial, ¶157 quoting the Award, ¶272; Reply, ¶¶357-358.
[751] Memorial, ¶163.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 145 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

without justification, and this lack of reasoning on why the EU rules on state aid and the decision of the EC should not be taken into account,[752] despite the Parties' arguments on this issue, constitutes a "manifest overreaching" and the lack of reasons and explanatory grounds are both grounds for annulment.[753]

### b) *InfraRed's submission*

609. InfraRed posits that the Tribunal justified its decision on the rejection of the intra-EU objection with adequate reasoning by making reference to many arguments.

610. As way of example, InfraRed calls the attention of the Committee to the following: "(i) all the relevant arguments raised by Spain […]; (ii) the reasoning of those ECT tribunals that, before InfraRed, had rejected this objection in similar circumstances […]; (iii) and […] a detailed analysis of why it decided to reject the intra-EU objection, also explaining why the March 2018 CJEU *Achmea* Judgment or the 2019 January Declarations did not change the Tribunal's affirmation of its jurisdiction under the ECT and the ICSID Convention. The last step of the Tribunal's reasoning is contained at paras. 256 – 274 and is perfectly understandable as well as consistent."[754]

611. More than that, InfraRed argues that Spain "did not prove, as required under Article 52(1)(e) ICSID Convention, that the reasoning of the Tribunal when rejecting the Intra-EU objection was 'contradictory, frivolous, or incomprehensible'"[755] and it made also reference to 28 other cases where the tribunals addressed the "Intra-EU" issue and rejected it.[756]

612. Finally, InfraRed argues that even if the Committee considers that EU law and EU state aid rules were to be applied to the merits of the dispute, the reality was that the reasoning of the Tribunal fully satisfied the standard under Article 52(1)(e)[757] and therefore this objection would in any case be irrelevant.

---

[752] Memorial, ¶ 166.
[753] Reply, ¶¶221, 238-239.
[754] Counter-Memorial, ¶147, citing Award, pp. 57-70, 64-68, 68-74 and 256-274.
[755] Counter-Memorial, ¶153.
[756] Counter-Memorial, ¶153.
[757] Counter-Memorial, ¶159.

613.    InfraRed also considers that the Tribunal in effect justified its decision on the application of international law, and consequently why it decided not to apply EU state aid rule for the purposes of assessing InfraRed's legitimate expectations.[758] The Tribunal reasoned that neither EU, nor Spanish law (including the Supreme Court decisions) are to be used to assess whether a state has breached its international treaty obligations.[759]

614.    In the Rejoinder, InfraRed adds that in order to prove that the Award failed to state reasons, it must be evidenced that the award contains no reasons at all for a particular finding that is indispensable to apprehend the tribunal's reasoning, which Spain was not able to do.[760]

### c)    Analysis of the Committee

615.    The Committee concludes that the Intra-EU objection as a whole and the issue of the relevance or not of the TFEU and its Articles 107 and 108 and the state aid scheme for the outcome of the case, was analyzed in detail by the Tribunal, as highlighted by InfraRed. The reasoning is clear and there is no contradiction between that analysis and the conclusions reached by the Tribunal.

616.    In a nutshell, when assessing the alleged breach of application of the ECT rules Spain considers applicable, the Tribunal concluded that the EU rules on state aid and any other rules that Spain tried to advance against the invoked legitimate expectations were not relevant. This was clearly understandable and the Committee understood the reasons presented to justify that conclusion.

617.    Once more, Spain's position is that the Tribunal's conclusions should be the opposite as no relevant legitimate expectations could exist based on the alleged facts and, in any case, it was impossible to conclude that, in accordance with EU law, legitimate expectations could be relevant in an illegal situation as far as state aid in EU is concerned.

---

[758] Rejoinder, ¶208.
[759] Rejoinder, ¶210, quoting Award ¶411.
[760] Rejoinder, ¶222.

618.    The Committee notes that the issue of the relation between the EU state aid rules and the legitimate expectations of InfraRed could – at least theoretically – be decided differently by the Tribunal. However, as explained above, this Committee is not an appellate body.

619.    As quoted by Spain,[761] the *Sempra v. Argentina* committee considered that "frivolous, perfunctory or absurd arguments" by a tribunal' may well be subject to annulment"[762] even if reasons are presented, as it seems obvious that these hypothetical situations may be materially construed as failures to state reasons.

620.    However, when nothing of the sort occurs, as it is the case with the Award, a committee cannot annul an award for failure to state reasons.

621.    The Committee finds that the Award is comprehensible, and it is possible to go "from point A to point B" in the Tribunal's reasoning.

622.    For all these reasons, the Committee considers it not relevant to address once more in detail the arguments presented by Spain and the Commission in relation to the rejection of the applicability of EU law, due to its irrelevance in addressing the legitimate expectations and the state aid EU rules.

623.    In conclusion, the Committee dismisses this request as presented by the Applicant.

4.    <u>Failure to state reasons in the findings on liability which determine that there are serious deficiencies in the Award as to the interpretation of how Article 10(1) of the ECT is to be applied</u>

a) *Spain's submissions*

624.    According to Spain's position, in determining the scope of Article 10(1) ECT, the Award in paragraphs 343-456 and 365-366, the Tribunal stated that the frustration of a legitimate expectation "implies, per se, a breach of the provisions of Art. 10(1) FTE but only to the extent that such breach constitutes 'unfair and inequitable treatment.'"[763]

---

[761] Memorial ¶142.

[762] RL-0117, *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on the Argentine Republic's Request for Annulment of the Award, June 29, 2010, ¶167.

[763] Memorial, ¶214.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

625. Spain argues that the Award "does not express the *iter* that lead to such conclusion, nor does it express on which sources of hermeneutic criteria, of those provided for in the Vienna Convention it is relying for that purpose."[764]

626. In any event, according to Spain, the provisions of Article 10 ECT "are extremely general and in no case can be considered as more favourable than the provisions of the EU Law."[765]

627. However, in spite of Spain's explanations "since the very beginning of the arbitration why the EU Law was more favourable than the ECT, […] this has not even been addressed by the Award."[766]

628. Spain insists that "it was not simply disagreeing" with the Tribunal's decision, as indicated by InfraRed in its Counter-Memorial, but was asking that the Committee "confirm whether the Award presented 'sufficiently pertinent reasons'"[767] for concluding that Spain had breached Article 10(1) of the ECT.[768]

629. As a consequence, Spain posits that the failure to state reasons on the interpretation of the protection afforded by Article 10 of the ECT when compared with the protection granted by EU law in relation to the intra-EU investors, constitutes a breach of Article 52(1)(e) of the ICSID Convention and the Award must therefore be annulled by the Committee.

*b) InfraRed's submission*

630. InfraRed concludes that the applicable law in this case was the ECT and not EU law, and the Tribunal's finding that Spain breached Article 10 of the ECT could not be annulled for failing to apply proper law.[769] If anything, InfraRed added, the EU law should be treated as a fact.[770]

---

[764] Memorial, ¶215.
[765] Spain's PHB, ¶98.
[766] Spain's PHB, ¶99.
[767] RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, ¶43.
[768] Reply, 376-377.
[769] Rejoinder, ¶117.
[770] Rejoinder, ¶120.

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 149 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

631. According to InfraRed, the "Award did not fail to state reasons since the Tribunal stated its reasoning with regard to: […] (ii) the applicable law, (iii) the interpretation of Article 10(1) ECT, (iv) the interpretation of the fair and equitable treatment under Article 10(1) ECT, and (v) the findings on damages."[771]

632. InfraRed submits that the Tribunal interpreted Article 10(1) of the ECT under the VCLT,[772] and in any case, the reasons behind the Tribunal's reasoning "do not need to be explicitly stated as long as the reader can understand the decision reached by the tribunal",[773] and in any case it appears very clear in the Award that the "several standards of protection for investors in the energy sector" contained in Article 10(1) ECT are much more favorable to them than the protection afforded by EU law.[774]

633. InfraRed reiterates that the Tribunal reasoned its findings in relation to Article 10(1) ECT in more than 30 pages in the Award, where it (i) summarized the Parties' positions, (ii) cited the relevant recent awards that had addressed that matter, and (iii) provided a detailed analysis of its conclusions.[775] It also devoted pages to the analysis of the standard governing the assessment of the FET clause under the ECT.[776]

634. For InfraRed "the key point is that Article 10 of Energy Charter Treaty as well as the provisions of Part III of the Energy Charter Treaty on investment protections were the only legal provisions that the Tribunal had to review and apply for the purposes of finding if Spain had breached its international obligations,"[777] as allegedly the Tribunal did in paragraph 272 in its entirety, 411, 443, 444, and the rest of the pages in the Award referring to Article 10 of the ECT.

635. In accordance with InfraRed's position, "the Tribunal's decision on why it is not necessary to apply EU law is perfectly reasoned. The Tribunal considered Spain's allegations about the directives, about other references to EU law, but the Tribunal

---

[771] Rejoinder, ¶12.
[772] Counter-Memorial, ¶190.
[773] Counter-Memorial, ¶190.
[774] InfraRed's PHB, ¶¶ 95-97.
[775] Rejoinder, ¶234, quoting Award, ¶¶99-132.
[776] Rejoinder, ¶234, quoting Award, ¶¶100-110.
[777] Hearing Tr., Day 1, 15:12, lines 8-14.

concluded that those specific references were not relevant to resolve the issues raised by this dispute." [778]

636.    As a consequence, InfraRed favors that the reasons to justify the decision were explained and there are no grounds to annul the Award.

*c)    Analysis of the Committee*

637.    Once more, the Committee is faced with a discrepancy between the Parties, in this case related to standards of protection and standards of fair and equitable treatment. These discrepancies have been relevant in the arbitral proceedings and would be nuclear if an appeal body existed to analyze and decide in relation to the Award, which is not the case of this Committee.

638.    As already explained, failure to state reasons is in no way equivalent to failure to state reasons that would be agreeable for one of the Parties, and not even failure to address each and all of the lines of defense of a Party.

639.    For the Committee, what is at stake is the answer to the following questions: did the Award explain in a way that is understandable why Article 10(1) ECT is enough to address the issues at stake in relation to FET and liability? Or was it necessary to address the issues from an EU law point of view?

640.    The Committee's answer – irrespective of whether the conclusions of the Tribunal were correct from a legal point of view – is that reasons were presented and that these were comprehensible and sufficient to allow the readers "to follow how the tribunal proceeded from Point A. to Point B."[779]

641.    In other words, Spain asks the Committee to decide on whether the Award presented "sufficiently pertinent reasons"[780] when concluding that Spain had breached Article

---

[778] Hearing Tr., Day 1, 15:12, lines 18-24.
[779] Memorial, ¶141 quoting *MINE*, ¶ 5.09.
[780] RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, ¶43.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 151 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

10(1) of the ECT.[781] The Committee holds that the Award contains "sufficiently pertinent reasons."

642.    Even if, *quod non*, the Committee should assess whether EU law is more favorable to investors than the ECT, which under Article 16 ECT would allow investors to benefit from the application of Part III of the ECT (including Article 10(1)), the existence of this opting-in system is enough. This is because it is not possible to conclude that the Tribunal's reasons and arguments were "frivolous, perfunctory or absurd."

643.    Needless to say, if those provisions are more favorable to the investors or to the investments, the conclusion would be the same. This results from the issue of the relation between EU law and the ECT and criteria for prevalence in case these systems of law were in conflict, and this is clearly addressed by the Tribunal. But the Committee agrees with the Tribunal that in the situation at stake there is no real conflict between EU law and the ECT, as the legitimate expectations that have been the cornerstone of the Award should have been respected irrespectively of the content of EU law in relation to state aid.[782]

644.    Therefore, the Committee's position is that it is not necessary for its findings to consider whether the ECT system is more favorable to investors than the EU law as far as protection of their investment is concerned, in spite of noticing that the investors able to benefit from EU law are not under a dilemma of opting against it, but rather may add the additional protection of ECT.

645.    In conclusion, the Committee dismisses this request as presented by the Applicant.

---

[781] Reply, ¶¶376-377.
[782] Award, ¶272 (II), "[T]he provisions of EU law are not dispositive nor even relevant to resolve the issues raised by this dispute".

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 152 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

5. <u>Provision of contradictory reasons concerning the expectations of InfraRed regarding immutability of the regulatory framework under which they made their investment and the alleged breach thereof</u>

*a) Spain's submissions*

646.   Spain states that there is a contradiction in the Award that affects it, as it recognizes the value of the alleged agreement as a legally relevant fact,[783] but at the same time the Award omits to weigh it against other facts, such as the later normative changes made by Spain prior to InfraRed's investment.[784]

647.   Spain posits that this contradiction relates to the value given to the legitimate expectations of InfraRed based upon jurisprudence that she considers of an arbitrary nature to sustain the scope of the ECJ, not limited to non-discrimination, and to the oversight of all the jurisprudence emanating from the Spanish Supreme Court,[785] as well as all regulatory changes, which had been declared in conformity with the law by the courts of justice in Spain even before InfraRed's investment.

648.   Spain also refers to paragraph. 436 of the Award in which the Tribunal stated that there was no evidence "between 29 December 2010 and 23 June 2011 that contradicts the reasonableness or legitimacy of the expectation,"[786] forgetting the jurisprudence by the Spanish Supreme Court related to the incentive system and regulatory changes before Claimants' investment,[787] in particular the Ruling of 25 October 2006, also because on paragraph 371 the Award refers that the "jurisprudence of the Spanish Supreme Court" was included in its reasoning, when in fact Spain had demonstrated that this was not the case.[788]

649.   Spain further alleges that the contradiction between paragraphs 366 and 427 of the Award, as paragraph 366 recognized that "stability" does not amount to a "limitation on a state sovereignty in the absence of the specific manifestation of consent by the host state"[789] and paragraph 427 "recognizes the alleged agreement as a legally relevant

---

[783] Memorial, ¶217.
[784] *Ibid.*
[785] *Ibid.*
[786] Memorial, ¶219.
[787] Memorial, ¶ 222.
[788] Memorial, ¶226.
[789] Memorial, ¶232.

fact," without explaining how the press release from the Ministry of Industry, Tourism and Commerce, and subsequent resolutions of December 2010 would prevail over the "normative and jurisprudential antecedents" reiterated and produced "since a decade" before the investment.[790]

650.    As a consequence, Spain requests that the Committee confirm that the Award did not present "sufficiently pertinent reasons"[791] and that no evidence is found in the Award that the FET standard is unrelated to discrimination, and inextricably linked to the frustration of legitimate expectations,"[792] which constitutes is a lack of reasons for the Tribunal's finding that Spain infringed the ECT rules.[793]

### b)    InfraRed's submission

651.    InfraRed posits that Spain ignored the Tribunal's reasoned conclusions about (i) the legal standard applicable under Article 10(1) of the ECT in assessing a host State's FET obligation, and (ii) the reasons why Spain breached InfraRed's legitimate expectations.[794]

652.    InfraRed emphasizes that the Tribunal analyzed the standard governing the FET providing a detailed analysis of the meaning of FET in line of the *jurisprudence constante*[795] and that the Tribunal interpreted Article 10(1) of the ECT under the VCLT,[796] and in any case, the reasons behind the Tribunal's reasoning "do not need to be explicitly stated as long as the reader can understand the decision reached by the tribunal."[797]

653.    In addition, InfraRed considers that the Tribunal never made the statement that it would examine the "jurisprudence of the Spanish Supreme Court."[798] The phrase that Spain

---

[790] Memorial, ¶233.
[791] RL-0164, *Amco Asia Corporation, et al. v. Republic of Indonesia*, ICSID Case No. ARB/81/1, Decision on the Application for Annulment, May 16, 1986, ¶43.
[792] Reply, ¶385.
[793] Reply, ¶¶384-400.
[794] Counter-Memorial, ¶187.
[795] Counter-Memorial, ¶189.
[796] Counter-Memorial, ¶190.
[797] *Ibid.*
[798] Rejoinder, ¶243.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

quoted comes from the Award's summary of the *Charanne* Award and cannot be attributed to the Tribunal.[799]

654.    In any event, regarding the 2010 Agreement, InfraRed argued that Spain omitted to cite the beginning of the sentence that confirms that the Tribunal considered the Purported Agreement as a fact (and not as a "legally" binding source of obligations as Spain seemed to allege).[800]

655.    InfraRed also states that the omission of an in-depth treatment of evidence did not constitute grounds for annulment under Article 52(1)(e),[801] and the Tribunal did not have to explain why it preferred to rely on certain evidence and not on the documents Spain believes to be more relevant. Thus, this allegation for annulment should be dismissed.[802]

### c)   Analysis of the Committee

656.    Spain's reference to an internal contradiction between paragraphs of the Award has not been evidenced. First, the concept of contradiction is not applicable to a decision that is consistent, even if not accepted by one of the parties that would favor a different solution or gives weight to facts and interpretation of legal rules as compared with the other that would correspond to the perspective of one of the parties.

657.    That does not mean that the choice of relevant facts, when compared with others, and the conclusions, in relation to rules as interpreted or to legal authorities, will not be debatable. But certainly not under the limited possibilities of Article 52(1)(e) of the ICSID Convention as this rule does not open the door to consider the Committee an appellate body that could and should scrutinize this kind of issues.

658.    A similar reasoning applies to the alleged contradiction between paragraphs 366 and 427 of the Award. The reasoning of the Award seems clear to the Committee. One thing is the right of the Host State not to be limited in abstract in its sovereignty and another is the acceptance of that State to limit it through a "specific manifestation of consent"[803]

---

[799] Rejoinder, ¶243 quoting Award ¶39.
[800] Rejoinder, ¶245.
[801] Rejoinder, ¶246.
[802] Rejoinder, ¶250.
[803] Memorial, ¶232.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

to ensure stability to investors, as occurred with "legally cognizable facts." Spain's divergence relates to the relevance of what she calls a "press release from the Ministry of Industry, Tourism and Commerce."[804] Even if it was only a "press release" what was at stake, and the mere analysis of the Award demonstrates that the "legal cognizable facts" are not limited to the "Purported Agreement" (in a way, incorrectly "downgraded" to a "press release"), the Committee concludes that there is no failure to state reasons and no contradiction, as posited by Spain.

659.    The reasons to be taken into account to analyze whether a relevant failure for the purposes of Article 52 (1) (e) of the ICSID Convention really exists, have been addressed before and are basically related with the value given as "legally cognizable facts" by the Tribunal to the representation, guarantees and other facts from Spain's behavior that were instrumental to InfraRed's investments, as they create relevant expectations in accordance with international law and ECT.

660.    This is, once more, a debatable issue, but not for the Committee, as it is not an appellate body.

661.    The same occurs with the alleged contradiction between the "*jurisprudence constante*" of the Spanish Supreme Court (that in no way has been considered irrelevant *per se* by the Tribunal, but only for the purposes of the legitimate expectations of InfraRed and its rights related thereto) and conclusions reached by it. This is so in the sense that legitimate expectations of investors are to be interpreted in accordance with the meaning of FET in line with the alleged international *jurisprudence constante*[805] out of discrimination situations and not necessarily resulting only from legal rules, as it has been decided by the Tribunal taking into account the Purported Agreement as a "legally cognizable fact".[806] The Committee easily admits that this conclusion is debatable, but it is not a case of failure to state reasons.

662.    In conclusion, the Committee dismisses this request as presented by the Applicant.

---

[804] Memorial, ¶233.
[805] Counter-Memorial, ¶189.
[806] Award, ¶427.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

6. Failure to state reasons in relation to the evidentiary activity and the evaluation of the evidence developed in the Arbitration

   *a) Spain's submissions*

663. Spain argued that paragraphs 321-456 and in particular paragraphs 406-456 of the Award, included no more than "very scarce reference to the evidentiary activity developed in the oral hearing, since only a couple of aspects of the statements of one of the witnesses are mentioned,"[807] as allegedly "the Award has simply been written as if [relevant documents and witness depositions] did not exist"[808] in spite of Spain having carried out "an enormous amount of evidentiary work."[809]

664. Spain posits also that the discretion of the Tribunal in assessing the evidence does not allow for violations of essential rules such as the right to be heard or the rule on the burden of proof.[810]

665. As a consequence, these Tribunal's omissions constitute grounds for annulment due to failure to state reasons.

   *b) InfraRed's submission*

666. InfraRed argues that Spain's application is directed to the Tribunal's 'judgment' of the evidence presented by Spain, which is not a ground for annulment under Article 52(1)(d) of the ICSID Convention.

667. InfraRed contends also that the Tribunal referred several times to the testimonies presented by Spain in the Award and during the hearing[811]. In addition to that, InfraRed argued that "tribunals do not have to indicate in an award the reasons why some types of evidence are more credible than others."[812]

668. InfraRed posits that the Tribunal did not ignore Spain's evidence but simply used its "discretion" to evaluate the evidence of the case,[813] and therefore InfraRed considered

---

[807] Memorial, ¶268.
[808] Memorial, ¶273.
[809] Reply, ¶284.
[810] Reply, ¶285-289.
[811] Counter-Memorial, ¶230.
[812] Counter-Memorial, ¶231-233.
[813] Counter-Memorial, ¶233.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

that Spain's application was "just a petition for revision and reconsideration of the conclusion that the Tribunal reached from Mr. Caravantes and Mr. Montoya witness statements"[814] and a similar reasoning is applied to the alleged violation of the burden of proof.

669.   About the shift on the burden of proof alleged by Spain[815] on the issue of the due diligence to know the regulatory framework in which the investment was made, InfraRed considered that the Tribunal never reversed the burden of proof by offering a "positive effect to the lack of Due Diligence," [816] as after considering Spain's arguments, it just came to the conclusion that "a more thorough due diligence would not have alerted Claimants to the imminent enactment of the Measures in Question."[817]

### c)  *Analysis of the Committee*

670.   The annulment of an award under Article 52(1)(e) of the ICSID Convention ("that the award has failed to state the reasons on which it is based") cannot be misleadingly confused with the discussion by a committee about the stated reasons and the assessment of the available evidence made by a tribunal under its discretion.

671.   What any committee may and must scrutinize is whether the award failed to state reasons (or provide reasons that are materially to be treated as inexistent), and not whether the tribunal did not state the reasons, if any, that in accordance with an applicant's point of view would end with a different or even opposite decision.

672.   The Committee admits that in certain situations there is a thin line (and yet a line) separating the failure to state reasons from the failure to analyze different possible outcomes that – if analyzed – would make admissible a different outcome under a different reasoning.

673.   However, this is not the situation in relation to the Award. The Tribunal assessed the evidence and under its discretion gave weight to some evidence in detriment of other, as it the usual situation in any adjudication, being it judicial or arbitral.

---

[814] Counter-Memorial, ¶234.
[815] Application for Annulment, ¶60; Memorial, ¶281.
[816] Counter-Memorial, ¶236.
[817] Counter-Memorial, ¶236, quoting Award, ¶44.

674. Even appeal courts refrain from entering into the analysis of the assessment of evidence, especially in the case of fact witnesses depositions and crossing, that were or not instrumental for the decision.

675. What has been set up in the ICSID Convention is not an appeal committee, but rather an annulment committee, and this is also to be understood in a way that takes into account that the threshold for annulling an award is stricter than the threshold for amending an award by means of rendering a more adequate one.

676. It is expected that a committee will refrain from reassessing evidence, giving it more (or less) weight than the tribunal did, and that it will not reinstate evidence as being essential when the evolution of the arbitral proceedings did not convince the adjudicators of it.

677. It is incorrect – as it does not correspond to the correct interpretation of Article 52(1)(e) of the Convention, and not even to common sense – to admit that a committee should annul an award under the allegation that some pieces of evidence were not specifically addressed in it.

678. And this idea would be even less admissible, when it clearly results from an award that the tribunal went in a different direction than the one that an applicant would prefer, as it assessed the available evidence giving weight to factual aspects detrimental to the applicant's claim.

679. That is the case of the Award, without a doubt. It is not reasonable, let alone legally mandated, for the Tribunal to make reference in the Award to each and every document, and to every proof offered by the fact and expert witnesses, provided that the Award – as it is the case – refers to documents and witnesses upon which to base its conclusions.

680. Spain scarcely mentioned the "very scarce reference to the evidentiary activity developed in the oral hearing, since only a couple of aspects of the statements of one of the witnesses are mentioned,"[818] which is by itself a confirmation that the requested analysis and decision by the Committee would need to enter into the shoes of the

---

[818] Memorial, ¶268.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

Tribunal to address it, an impossibility for a body with powers vested and limited by Article 52 (1) (e).

681. In conclusion, the Committee dismisses this request as presented by the Applicant.

   7. <u>Regarding the determination on damages and the failure to state reasons for the Tribunal's valuation, including the date of the investment and the date of valuation</u>

      7.1. Regarding the determination of damages

         a) *Spain's submissions*

682. Spain argues that there was a clear contradiction in terms of liability and damages, and that without justification the Tribunal adopted DCF calculation proposed by Brattle rejecting the alternative solution proposed by Accuracy.[819]

683. Spain also concludes from Professor Dupuy's opinion, as mentioned in footnote 582 of the Award, that "the fact that one member of the Tribunal refers to evidentiary documents in the record that contradict the unsupported opinion of the rest of the Tribunal shows that there is a clear lack of reasoning for adopting Brattle's position and discarding Accuracy's position on regulatory risk and the illiquidity discount,"[820] which had a significant impact on the quantum.

684. In Spain's position, this is an indisputable inconsistency between the Award's decision of damages and the damages actually calculated, which expresses the failure to state reasons.

         b) *InfraRed's submission*

685. InfraRed avers that the Tribunal gave reasons and explained precisely how it reached the damages figure it awarded to InfraRed.

---

[819] Memorial, ¶247.
[820] Reply, ¶¶426-428.

Case 1:19-cv-01618-TSC     Document 113-35     Filed 03/13/25     Page 160 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

686.    InfraRed states that Spain was seeking annulment under this ground not because there were inconsistencies in the Award's reasoning of damages, but because it disagreed with the conclusions reached by the Tribunal.[821]

687.    InfraRed also notes that the "Tribunal used the DCF Joint Model developed by Spain's and InfraRed's experts and chose to include some of the parameters suggested by Spain."[822]

688.    In any case, InfraRed posits that there were no grounds for annulment because as long as the reasons have been stated, even if they were incorrect, unconvincing or non-exhaustive, the award cannot be annulled under Article 52(1)(e).[823]

689.    InfraRed notes that the Tribunal explicitly mentioned in the Award that "in coming to th[e] conclusion [about the regulatory risk and the illiquidity discount] the Tribunal has carefully reviewed the opinion and the methodology of the Accuracy experts and of the Brattle experts."[824]

### c)  Analysis of the Committee

690.    Once more, what is at stake here, seen from Spain's point of view, is a disagreement with the Award, as Spain favored in this case Professor Dupuy's dissenting opinion regarding the only request in which one of the arbitrators actually dissented.

691.    The Committee analyzed with care footnote 782 of the Award and concluded that the dissenting opinion was related to the interpretation of the available technical information at large and specifically to the relevance to be given to the issue of regulatory risk and illiquidity discount.

692.    To Professor Dupuy, as it is summarized in said footnote, "the opinion of two independent major credit rating agencies,"[825] Fitch and Moody's, and Accuracy's analysis in relation to the downgrading of the Spain rating, should have been accepted, and "in order to get as much as possible a comprehensive perception of the economic

---

[821] Counter-Memorial, ¶204.
[822] Counter-Memorial, ¶205.
[823] Counter-Memorial, ¶206.
[824] Rejoinder, ¶252, quoting Award, ¶580.
[825] Award, fn. 782.

situation which prevailed at that time" it would be "appropriate, as Accuracy did, to reasonably introduce in the analysis variables not strictly related to the Disputed Measures, an approach which is in no way incompatible with the DCF method."

693. The dissenting opinion may be correct, and the majority might have erred in its conclusions. However, reasons have been presented by the majority as it is normal in any situation of dissent, in which usually there are internal discussions between the arbitrators. As a matter of fact, and once more this is the usual paradigm, Professor Dupuy's footnote is a reaction to the paragraphs of the Award that favored a different solution.

694. And the same occurs with Spain's reaction to the option of the Tribunal for the adoption of the DCF calculation proposed by Brattle rejecting Accuracy's alternative solution, even if this was correct, which InfraRed refuses. To adopt the technical arguments of one expert in detriment of the other does not amount to a failure to state reasons but is in fact the presentation of reasons that do not correspond to the arguments of the other expert.

695. In conclusion, the Committee dismisses this request presented by the Applicant.

### 7.2. Regarding the failure to state reasons in relation to the decision for the date of the investment

#### a) Spain's submissions

696. Spain argues that the Award failed to provide reasons for setting July 28, 2011 as the date of InfraRed's investment.[826]

697. In accordance with Spain's position, the Tribunal refers to this date "without any reference to or analysis of the doubts raised by the Spain regarding the reasons why InfraRed would have preferred to invest in 2011 instead of 2008 when […] the risks were mostly technical."[827]

---

[826] Memorial, ¶202.
[827] Memorial, ¶209.

698. Spain claims that the Tribunal relied only on footnote 8 of the Award that referred to page 4 of the Quantum Brattle Report,[828] but that page 4 of Quantum Brattle Report "says nothing about the date of the investment."[829]

699. In the Opening Statement Spain explained that "the fund tried to invest in these plants in 2008, when the project was starting; whereas, very surprisingly, it was not until 2011 when the investment was made. Spain complained and found illogical that InfraRed refrained from investing in those plants in 2008, when the plan[t]s were just at the promotional stage and the risk was mainly technical, and decided to invest almost four years later, when the risk was much bigger. However, the Tribunal arrives directly to this conclusion, to this date of July 28, 2011, without any reference to Respondent's doubts regarding the reason why InfraRed would have preferred to invest in 2011 rather than in 2008."[830]

### b) *InfraRed's submission*

700. InfraRed submits that Spain's counsel explicitly agreed that such date was July 28, 2011, in the Parties' List of Uncontested Facts[831] and that Spain never contested this date. And it posits that Spain's quantum expert confirmed that the date of the investment was July 28, 2011.[832]

701. This is also confirmed in the Opening Statement, as a reaction to the fact that InfraRed was allegedly convinced that this request had been abandoned by Spain.

702. InfraRed then states that "The reason for such abandonment appears to be simple. During the arbitration, Spain confirmed in writing, not once, not twice, but multiple times, that the date of InfraRed's investment was July 28, 2011. This appears not only in Respondent's Post-Hearing Brief, as cited on screen, and Respondent's Rejoinder on the Merits, but as a matter of fact, as seen also on screen, both parties stipulated July

---

[828] Memorial, ¶33.
[829] Memorial, ¶¶33 and 35.
[830] Hearing Tr., Day 1, 13:57, lines 1-14.
[831] Counter-Memorial, ¶¶178-179.
[832] Counter-Memorial, ¶¶181-184.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 163 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

28, 2011 as the date of the investment in an agreed chronology that the parties submitted to the Tribunal in September 2017 C-723)."[833]

### c) *Analysis of the Committee*

703. This issue is related to the alleged surprise with InfraRed's decision of not starting the investment some years before. However – even if there was a reason for surprise, which is an issue the Committee is not aware of – the facts of the arbitration clearly evidence that in relation to the actual "date of the investment", as a fact, the Parties explicitly informed the Tribunal of their agreement.

704. This Committee has no doubt that when the parties present to a tribunal an agreement in relation to a fact, the tribunal may conclude differently if it has grounds to disagree with the parties' agreement. In that case, the tribunal should present reasons to deviate from the common understanding of the parties. However, it makes no sense to consider that if the tribunal accepts the common position of the parties, the award should be annulled because it did not add reasons for admitting that fact.

705. That is the situation with the Award. The Tribunal accepted the date of the investment as defined in the "List of Uncontested Facts" jointly submitted by the Parties. One of the Parties cannot subsequently state that the Tribunal failed to provide reasons, not because the fact was controversial, but because that Party argues that the investment should have started sooner and therefore have a different investment date.

706. In conclusion, the Committee dismisses this request as presented by the Applicant.

## D. SERIOUS DEPARTURE FROM A FUNDAMENTAL RULE OF PROCEDURE

### 1. Interpretation of Article 52(1)(d) of the ICSID Convention

#### a) *Spain's submissions*

707. Spain notes that a procedural rule is 'fundamental' if it "refers to the essential fairness that must govern all proceedings and is included within the standards of 'due process'

---

[833] Hearing Tr., Day 1, 15:36, lines 22-5 and 15:37, lines 1-6. See also InfraRed PHB, ¶¶153-154.

required by international law."[834] Spain further notes that a deviation is 'serious' if "a party is deprived of the protection afforded by the relevant procedural rule."[835]

708.  Spain also posits that the "right of a party to be heard" includes the right of a party to present arguments and evidence, within a "comparative equal opportunity."[836] It states that the right to be heard is infringed when a party did not have the opportunity to "respond adequately to the arguments and evidence presented by the other party."[837]

709.  Moreover, Spain argues that the unjustified refusal by a tribunal of a party's request for the production of documents is an example of a violation of the right to be heard, in particular when the tribunal concludes that evidence was absent in the case, "after refusing to produce the documents."[838]

710.  Spain also alleges that the Tribunal committed a series of breaches in relation to evidentiary activity and the assessment of evidence in the underlying proceeding.[839] For instance, it erred in applying the basic procedural principles of the burden of proof and concluded that the absence of legal due diligence on InfraRed' part was irrelevant to the formation of legitimate expectations.[840]

711.  Likewise, Spain asserts that "the evidence presented by both parties must necessarily be given the same weight or value,"[841] which was not the case with the Award.

712.  Finally, Spain argues that there was a lack of impartiality towards Spain, also a ground for annulment under Article 52(1)(d), based on the alleged findings in favor of one the parties without corresponding factual support.[842]

---

[834] Memorial, ¶252.
[835] *Ibid*.
[836] Memorial, ¶254.
[837] Memorial, ¶257.
[838] Memorial, ¶259.
[839] Reply, ¶259.
[840] Reply, ¶260.
[841] Reply, ¶272.
[842] Memorial, ¶303.

*b) InfraRed's submission*

713.    InfraRed notes that a "departure" from the rules of procedure cannot be equivalent to, as allegedly is the case, a situation where an applicant disagreed with the Tribunal's conclusion reached after the analysis of the evidence.[843]

714.    InfraRed considers that there may be a "departure" from the right to be heard and to be treated equally, as Spain explained, (i) when a party cannot present all relevant arguments and evidence,[844] or (ii) when a party does not have the opportunity to respond adequately to the arguments and evidence presented by the other.[845] Contrary to Spain's argument, however, the right to be heard does not mean that the Tribunal must accord the same weight to the evidence provided by both Parties.[846]

715.    According to InfraRed, to establish a departure of a fundamental rule of procedure, it was required that the party raised its objection during the Arbitration, particularly at the hearing.[847] Spain never argued, during six years of Arbitration, that the Tribunal had infringed its due process rights.[848]

716.    Moreover, InfraRed argues that even if a "departure" from a fundamental rule of procedure occurred, which has not been the case, for annulment purposes it should be "serious," which was not even remotely evidenced. In accordance with the standard for annulment, this would require (i) the existence of actual material prejudice and (ii) a showing that the violation has caused a "substantially different result" in the case.[849] InfraRed alleges that none of these factors were demonstrated by Spain.

717.    InfraRed also stresses, as a general remark, that Spain's application is directed to the Tribunal's "judgment" of the evidence presented by Spain, which is not a ground for annulment under Article 52(1)(d) of the ICSID Convention.

---

[843] Counter-Memorial, ¶217.
[844] Memorial, ¶256.
[845] Memorial, ¶257.
[846] Counter-Memorial, ¶219, Memorial, ¶¶268-274, 295-298.
[847] Counter-Memorial, ¶221.
[848] Counter-Memorial, ¶221; Rejoinder, ¶¶11 and 134.
[849] Counter-Memorial, ¶224.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

718. Finally, InfraRed reiterates that under Article 52(1)(d) of the ICSID Convention, the Committee may scrutinize whether the procedure was conducted according to basic rules of procedure and – as ICSID tribunals have wide discretion on this matter - annulment committees are not tasked with reevaluating the weight accorded by the Arbitral Tribunal to the evidence submitted by the Parties.[850]

### c) Analysis of the Committee

719. According to the Updated Background Paper,[851] "it appears from the drafting history of the ICSID Convention that the ground of a 'serious departure from a fundamental rule of procedure' has a wide connotation including principles of natural justice, but that it excludes the Tribunal's failure to observe ordinary arbitration rules. The phrase 'fundamental rules of procedure' was explained by the drafters as a reference to principles. One such fundamental principle mentioned during the negotiations was the parties' right to be heard."[852]

720. "Based on the words 'serious' and 'fundamental' in this ground, *ad hoc* committees have adopted a dual analysis: the departure from a rule of procedure must be serious and the rule must be fundamental. *Ad hoc* committees have thus consistently held that not every departure from a rule of procedure justifies annulment. Examples of fundamental rules of procedure identified by *ad hoc* committees concern: (i) the equal treatment of the parties; (ii) the right to be heard; (iii) an independent and impartial Tribunal; (iv) the treatment of evidence and burden of proof; and (v) deliberations among members of the Tribunal."[853]

721. The Committee understands that Spain refers to some situations – and this ground is more fact specific than any other – that might be included in the five examples above that may be found in previous decisions of committees. The Committee will proceed to examine all of these situations.

722. However, before doing so, it stresses that only a "serious" departure, and also only if it is a departure from a "fundamental" rule of procedure, could lead to annulment. The

---

[850] Rejoinder, ¶153.
[851] RL-0118, Updated Background Paper on Annulment for the Administrative Council of ICSID May 5, 2016.
[852] *Id.*, ¶98.
[853] *Id.*, ¶99.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 167 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

Committee finds that this is a confirmation that the drafters and the signatories of the ICSID Convention admitted this ground of annulment only in very limited cases and as a way of avoiding the risking "the integrity and fairness of the arbitral process."[854]

723.    Furthermore, it is clear to the Committee that these risks cannot be those for which appeal courts exist, meaning to avoid the survival of decisions of tribunals or courts that are wrong in matters of fact and/or of law. This is not the "job description" of committees as defined in the ICSID Convention.

2.    The multiple procedural breaches in relation to the evidentiary activity and the evaluation of evidence in the Arbitration

*a) Spain's submissions*

724.    Spain explicitly refers to a number of breaches of Article 52(1)(d) of the ICSID Convention, such as the violation of (i) the right to be heard, (ii) the rule of burden of proof, and (iii) the duty of impartiality.[855]

*(1) The right to be heard*

725.    Spain argues that it is necessary that "at least a minimal value be placed on the evidence offered"[856] in defense of its position to avoid annulment of the Award under Article 52(1)(d) of the ICSID Convention. In other words, failure to assess with equal relevance the evidence provided by Spain when compared with the evidence provided by InfraRed leads to annulment.

726.    Spain alleges that it carried out an enormous amount of evidentiary work. In spite of this, there was a complete absence of an exhaustive and conclusive analysis by the Tribunal of the evidence provided by Spain. Such analysis is unavoidable in order to ensure due respect for the essential principles of procedure, the infringement of which is a ground for annulment of the Award.

---

[854] *Id.*, ¶98.
[855] As explained below, when the Committee analyses the position of the Parties, this alleged "serious departure from a fundamental rule of procedure" is to be analyzed as a "failure to assess the evidence provided by the Kingdom of Spain" (see Reply, ¶272.) and therefore as an example of the violation of the right to be heard.
[856] Memorial, ¶273.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 168 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

727. Also, Spain quotes paragraph 438 of the Award to illustrate its position that the Tribunal's duty was not to accept or reject the Parties' theses, but to verify them, in light of the evidence provided. [857] Spain further alleges that there is a "serious" procedural breach because the Tribunal decided the case only on the basis of its own conclusions on the key issues, without really addressing the positions of Spain.

728. Moreover, Spain posits that the "right of a party to be heard" includes the right of a party to present arguments and evidence, within a "comparative equal opportunity."[858] It stresses that the right to be heard was infringed when a party did not have the opportunity to "respond adequately to the arguments and evidence presented by the other party,"[859] as it was the case here.

729. Likewise, Spain mentions the unjustified refusal by the Tribunal of a Party's request for the production of documents, in particular when the Tribunal concluded that evidence was absent in the case, "after refusing to produce the documents."[860]

730. Spain argues that the Tribunal also exempted InfraRed from carrying the burden of proof, for instance on the basis of the assumption that the inclusion of the December Resolutions in the proceedings was sufficient to determine the content and scope of its legitimate expectations, which is tantamount to denying Spain's defense or the right to be heard.[861]

731. Finally, Spain contends that the Award suffered from an anomaly due to the "scarce reference to the evidentiary activity developed in the oral hearings regarding the existence or not of a breach of the ECJ."[862]

*(2) The rule of the burden of proof*

732. Spain argues that the Tribunal breached the fundamental right to be heard regarding (a) the infringement of the burden of proof of evidence in the proceedings, (b) the violation

---

[857] Reply, ¶290.
[858] Memorial, ¶254.
[859] Memorial, ¶257.
[860] Memorial, ¶259.
[861] Reply, ¶262.
[862] Memorial, ¶ 268.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 169 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

of the rules on the burden of proof with the regard to the Spanish Supreme Court decisions and (c) the illegal shifting of the burden of proof in favor of InfraRed.

733. Spain adds that the burden of proof to demonstrate that "the Original Regulatory Framework would remain stable (*i.e.* immutable) throughout the life of the plants" lies on InfraRed,[863] and that the Tribunal reversed the burden of proof going to the point of stating that "investors in regulatory projects do not need to due diligence and that this must have positive consequences for them."[864]

734. Likewise, Spain argues that any due diligence would have informed InfraRed of the jurisprudence of the Spanish Supreme Court. However, the Award valued this "lack of regulatory Due Diligence" as a justification to have "a position completely contradictory to that of the Supreme Court's jurisprudence."[865]

735. Spain also posits that the Tribunal's conclusion accepting InfraRed's assertion of an alleged absence of evidence of Accuracy´s position constituted a serious breach of the rules of procedure.[866] First, the Tribunal acknowledged in the Award that there was a discrepancy between the experts as to the amount of the costs for running the Plants.[867] Next, the Tribunal underlined the fact that InfraRed's expert (Brattle) provided documentation in their first report that contradicted their own position.

736. Therefore, the Tribunal should have considered that the burden of proof of Brattle's hypothesis (fixed and equal management costs for both scenarios) was on InfraRed,[868] instead of stating that according to Brattle, it was up to Accuracy to demonstrate that the management costs were variable and that they were reduced as a result of the Measures, and to agree with that argument.[869]

737. The Tribunal's failure to require legal due diligence to confirm the scope and content of the expectations claimed by InfraRed revealed a breach of the rules on the burden of

---

[863] Memorial, ¶278.
[864] Memorial, ¶282.
[865] Memorial, ¶286.
[866] Reply, ¶308.
[867] Reply, ¶ 297; Award, ¶590.
[868] Reply, ¶302.
[869] Reply, ¶303.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 170 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

proof, insofar as it relieved InfraRed of this burden on the basis of an issue that is disputed between the Parties, and which is one of the key issues in the case.[870]

### (3) The duty of impartiality

738.   Spain argues the there was a lack of impartiality towards it, also a ground for annulment under Article 52(1)(d) of the ICSID Convention, because of the Tribunal's findings in favor of InfraRed without corresponding factual support.[871]

739.   As a rule, Spain stresses that when evidence was provided containing reasonings for Spain's declaration of international liability, there was a complete absence of an exhaustive and conclusive analysis of such evidence by the Tribunal. According to Spain, if such evidence was analyzed impartially, the conclusion of the Tribunal would have been different or opposite.[872]

### b)   InfraRed's submission

740.   InfraRed considers that not one of the grounds presented by Spain should be accepted because the Tribunal did not violate Article 52(1)(d) of the ICSID Convention.

### (1) The right to be heard

741.   InfraRed agrees with Spain that a "departure" from the right to be heard and to be treated equally, may occur (i) when a party cannot present all relevant arguments and evidence,[873] or (ii) when a party does not have the opportunity to respond adequately to the arguments and evidence presented by the other.[874]

742.   However, contrary to Spain's argument, the right to be heard does not entail to accord the same weight to the evidence provided by both parties.[875]

743.   InfraRed posits that the Tribunal did not ignore Spain's evidence but simply exercised its "discretion" to evaluate the evidence of the case.[876]

---

[870] Reply, ¶263.
[871] Memorial, ¶303.
[872] See also Reply ¶284.
[873] Memorial, ¶256.
[874] Memorial, ¶257.
[875] Counter-Memorial, ¶219, Memorial, ¶¶268-274, 295-298.
[876] Counter-Memorial, ¶233.

744.     InfraRed contends that Spain was accorded a full, fair and comparatively equal opportunity to rebut claims and submit evidence relating to the effect of management costs and value of the debt.[877] Spain having raised this argument in the annulment procedure, the late nature of the claim in itself evidences that the Tribunal never departed from a rule of procedure.[878]

745.     InfraRed agrees that "the Tribunal did not mention in the Award each of the more than 1300 legal and factual exhibits, annexes to 10 expert reports or specific facts included in the 6 witness statements."[879] However, it argues that "a Tribunal does not have an obligation to make a reference in the Award to each piece of evidence."[880]

*(2) The rule of the burden of proof*

746.     InfraRed agrees with Spain that under Article 52(1)(d) of the ICSID Convention, the Committee may scrutinize whether the procedure was conducted according to basic rules of procedure.

747.     However, it states that ICSID tribunals have wide discretion on this matter and annulment committees are not tasked with reevaluating the weight accorded by the Tribunal to the evidence submitted by the Parties.[881] InfraRed quotes *Vivendi v. Argentina*, *Dogan v. Turkmenistan* and *Caratube v. Kazakhstan* in support of their argument.

748.     Therefore, InfraRed considers that the Tribunal had wide discretion regarding the standard of burden of proof because it is responsible for assessing the probative value of the evidence in the case.[882]

749.     Moreover, InfraRed considers that, in any case, the Tribunal's weighing of the evidence did not seriously depart from any fundamental rules of procedure. The Tribunal

---

[877] Rejoinder, ¶174.
[878] Rejoinder, ¶175.
[879] Counter-Memorial, ¶245.
[880] Counter-Memorial, ¶246.
[881] Rejoinder, ¶153.
[882] Rejoinder, ¶151.

distributed the burden of proof in accordance with the most basic due process principles.[883]

750.  InfraRed argues that the Tribunal never reversed the burden of proof by offering a "positive effect to the lack of Due Diligence."[884] InfraRed further notes that after considering Spain's arguments, the Tribunal concluded that "a more thorough due diligence would not have alerted Claimants to the imminent enactment of the Measures in Question."[885]

751.  With this possibility on the record, Spain had the burden to prove that the December Resolutions were not the "clear expression of a specific commitment,"[886] which it did not discharge.

752.  Also, the fact that Spain was not able to persuade the Tribunal that a more exhaustive due diligence by InfraRed would have led to a different understanding, could not be construed as a violation of any fundamental rule of procedure.[887]

753.  Similarly, InfraRed states that the Tribunal did not ignore the Spanish Supreme Court judgements but disagreed with Spain's position as to their relevance, as shown in paragraphs 439-441 of the Award.[888] The Tribunal explicitly mentioned the case law of the Supreme Court when analyzing the due diligence that InfraRed performed,[889] and considered that they were not relevant to the analysis of InfraRed's legitimate expectations.[890]

754.  In conclusion, InfraRed posits that the Tribunal distributed the burden of proof in accordance with the most basic due process principles.[891]

---

[883] Rejoinder, ¶¶157-158.
[884] Counter-Memorial, ¶236.
[885] Counter-Memorial, ¶236, quoting Award, ¶44.
[886] Rejoinder, ¶160.
[887] Counter-Memorial, ¶237; Rejoinder, ¶146.
[888] Counter-Memorial, ¶238.
[889] Counter-Memorial, ¶239.
[890] Counter-Memorial, ¶240.
[891] Rejoinder, ¶¶157-158.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 173 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

### (3) The duty of impartiality

755.    InfraRed considers that this allegation is not serious and that Spain has not adduced any evidence that proves a manifest lack of independence and impartiality by the Tribunal.[892]

756.    InfraRed argues that Spain had abandoned its 'very serious accusation' relating to an alleged "lack of impartiality and unequal treatment" by the Tribunal, [893] which demonstrates that this allegation was frivolous.[894]

### c)  Analysis of the Committee

757.    Article 52(1)(d) of the ICSID Convention provides for the annulment of an award if there is evidence of a "serious departure from a fundamental rule of procedure." The Committee agrees with other *ad hoc* committees holding that "the departure have a material impact on the outcome of the award for the annulment to succeed."[895]

758.    This means that the threshold for a committee to annul an award under Article 52(1)(d) of the ICSID Convention is high and the quality and relevance of the evidence provided is paramount for such a decision.

759.    As a matter of fact, Spain clarified in its Reply that "this plea [must] be upheld on the basis of a failure to assess the evidence provided by the Kingdom of Spain,"[896]  not on determining the application of this legal standard as claimed by InfraRed[897] in the sense that "the evidence presented by both parties must necessarily be given the same weight or value."[898] As such, this issue is actually an expression of the violation of the right to be heard, and not an autonomous issue.

760.    In any event, having analyzed carefully the Award and its reasoning, and the arguments that both Parties brought to its attention in this proceeding, the Committee will decide

---

[892] Counter-Memorial, ¶250.
[893] Rejoinder, ¶132.
[894] Rejoinder, ¶132.
[895] *Wena*, ¶58; *Repsol*, ¶81; *CDC*, ¶49; *Fraport*, ¶246; *Impregilo*, ¶164; *El Paso*, ¶269; *Iberdrola*, ¶104; *Dogan*, ¶208; *Micula*, ¶134; *TECO*, ¶¶82-85. See also the analysis of the Annulment Committee in *Kılıç*.
[896] Reply, ¶272.
[897] *Ibid.*
[898] *Ibid.*

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 174 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

on all the issues that have been presented, and not only on the rule of the right to be heard.

761.    The Committee concludes that the Tribunal did not deviate from its duties related with the core principles of any proceeding, such as the "right to be heard," "the rule of the burden of the proof" and the "duty of impartiality."

762.    As it is common in investment arbitration, the parties are represented by sophisticated counsel. Also, it is a fact that Spain faced and is facing a great number of cases, in which it is usually represented by in-house lawyers, who have accumulated a high degree of experience.

763.    It is also clear that the Parties left no stone unturned. Any admissible arguments, including legal, and all the relevant facts have been presented to the Tribunal – and likewise to this Committee – in a way that helps the adjudicators to avoid the ever-present risk of missing any relevant points. Therefore, the support of the evidence and arguments provided by the Parties allows the adjudicators to analyze and decide each and all requests.

764.    Therefore, the Award reached unavoidably a dimension and accuracy that was convenient and probably inevitable, and which in itself deems a "serious departure from a fundamental rule of procedure" not probable.

765.    In any case, the Committee will specifically address the three alleged violations of procedural rules, namely the (i) right to be heard, (ii) rule of the burden of proof and (iii) duty of impartiality.

*(1) The right to be heard*

766.    Spain mentions that the right to be heard should not be defined only by the opportunity granted to each party to present its case and to analyze, criticize and argue against the other party's case.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

767. Spain asserts that to respect its right to be heard, "at least a minimal value [must] be placed on the evidence offered in defense of the Spain's position"[899] and that the Tribunal failed to do so.

768. Accordingly, Spain asserts that "the Tribunal's duty was not to accept or reject the Parties' theses, but to verify them, in light of the evidence provided."[900]

769. Likewise, Spain argues that the right to be heard is violated if a party is not allowed to present arguments and evidence, within a "comparative equal opportunity,"[901] and when it is not granted the opportunity to "respond adequately to the arguments and evidence presented by the other party."[902]

770. However, the alleged violation of the right to be heard has not been evidenced. There is no violation of that right when, after perusal of the parties' arguments, a tribunal concludes that it agrees with the position or the arguments of one of the parties, instead of repeating with different words and style those positions and arguments. It might be debatable whether in a specific situation that was enough to respect the duty of stating the reasons for its findings, but that is a different issue than that of the right to be heard.

771. Similarly, the right to be heard does not include an alleged obligation for a tribunal to mention, analyze and comment on each and every piece of evidence. Here, as InfraRed mentioned, there are "more than 1300 legal and factual exhibits, annexes to 10 expert reports or specific facts included in the 6 witness statements."[903] It defies common sense to consider that the lack of a reference in an award to each document, fact or argument, let alone comments to witnesses statements and their answers during cross-examination, is a violation of the right to be heard.

772. The power to assess the weight to be given to evidence is part of a tribunal's discretion. There is no violation of the right to be heard if a tribunal is persuaded by some evidence

---

[899] Memorial, ¶273.
[900] Reply, ¶290.
[901] Memorial, ¶254.
[902] Memorial, ¶257.
[903] Counter-Memorial, ¶245.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 176 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

but not by the other. This was the case of the testimonies of Mr. Montoya and Mr. Caravantes.[904]

773. The Committee reaches an equivalent conclusion in relation to the dismissal of requests for document production. To consider that the refusal to accept requests from a party violates *per se* the right to be heard makes no sense. It could be different if evidence is provided that the decision of the request in one or more specific cases had unequivocally prevented the party of presenting their case, and no evidence has been provided related thereto.

774. As the Updated Background Paper states, "[t]he task of determining whether an alleged fundamental rule of procedure has been seriously breached is usually very fact specific, involving an examination of the conduct of the proceeding before the Tribunal."[905]

775. Here, Spain was not able to provide factual evidence of a breach of its right to de heard pursuant to paragraph 268 of its Reply or the alleged "very scarce reference to the evidentiary activity developed in the oral hearing."[906]

776. In conclusion, the Committee dismisses this request as presented by the Applicant.

*(2) The rule of the burden of proof*

777. The Committee has analyzed Spain's allegations related to the Tribunal's violation of the burden of proof. Like with the alleged violation of the right to be heard, if evidenced, a committee may annul an award if it considers that there is a "serious departure from a fundamental rule of procedure."

778. To reach this conclusion, it would be necessary for the Tribunal – faced with the necessity of applying that *ultima ratio* rule, as it was unable to be convinced on a matter of evidence to reach a decision – to decide to favor a party by shifting the burden of proof from it to the other party, and for this decision to have a material effect in the outcome of the case.

---

[904] Memorial, ¶¶269-70.
[905] RL-0118, Updated Background Paper on Annulment for the Administrative Council of ICSID May 5, 2016, ¶100.
[906] Memorial, ¶268.

779.    However, the issue of burden shifting is not to be confused with a situation in which a tribunal is more convinced by the arguments of one party, does not give weight to some facts when compared or not with others, does not follow the arguments or legal reasoning of one party, or reaches legal conclusions not favored by one of the parties.

780.    In the case at hand, the Committee concludes that the above situation took place.

781.    For example, this was the case of the alleged shifting of the burden of proof to demonstrate that "the Original Regulatory Framework would remain stable (*i.e.* immutable) throughout the life of the plants"[907] and the issues of the regulatory due diligence.

782.    Starting with the due diligence argument, Spain posits that an adequate due diligence process before the formal decision to invest would have convinced InfraRed that it was impossible to base its decision-making process on any guarantee of tariff remuneration and its stability.

783.    Spain thereby alleges that it was for InfraRed to prove that an adequate due diligence would not be enough for the investor to conclude that said expectation could never materialize.

784.    The Tribunal referred in detail to the due diligence performed by InfraRed, an issue that had also been addressed in the final Arbitration hearing.[908]

785.    It is debatable whether or not a high-quality due diligence was carried out. Also, it is debatable whether legal advice under a due diligence process is not prone to errors. However, it appears to the Committee that this is not actually the issue at stake for its decision, but rather whether the Tribunal shifted the burden of proof related to due diligence.

786.    The Committee concludes that the Tribunal did not shift the burden of proof in favor of InfraRed. The Tribunal concluded, rightly or wrongly, but well under its discretion, that

---

[907] Memorial, ¶278.
[908] Award, ¶¶63-67.

any regulatory due diligence would not have the effects that Spain posited and that the decisions of the Spanish Supreme Court were not relevant for its decision.

787.    The discretion of a Tribunal to assess the available evidence and to reach its conclusions related thereto is not an action to be made after a decision about which Party has, *rectius* should have, the burden of proof; quite the opposite. The rule of the burden of proof is a legal instrumental to avoid a *non liquet* decision. It is to be called if a court or tribunal was not able to reach a conclusion on a fact or its relevance.

788.    It is clear to the Committee that the Tribunal was able to conclude, without resorting to that kind of *extrema ratio* solution, the relevance of the due diligence and therefore it did not need to apply the rule of burden of proof criterion, let alone to shift that burden.

789.    A similar situation occurs in relation to the arguments and conclusions of Brattle and Accuracy regarding evidence on damages and management costs.

790.    This is a very common situation on issues of quantum. The Parties provided expert evidence of very qualified and independent experts, as is the case with Brattle and Accuracy. The experts provided reports and were cross-examined. They also worked together to prepare a Joint Model,[909] and the Parties were allowed to file submissions related to that model.[910]

791.    After these very in-depth and detailed efforts by the Parties and their experts, the Tribunal reached its own conclusions, and in the process sided with one expert over the other,[911] and even reached its own findings.

792.    This kind of conclusion is contained in the discretion of the Tribunal. For that outcome, the positions of the experts are scrutinized and the shifting of the burden of the proof is not actually at stake. The Tribunal was able to decide without resorting to the *ultima ratio* rule of the burden of proof. Instead, it decided under the "positive" rule of its learned opinion, after a contradictory evidentiary phase.

---

[909] Award, ¶517.
[910] Award, ¶603.
[911] This occurred in the Award. See, for instance, InfraRed Rejoinder, ¶177.

793.   In conclusion, the Committee dismisses this request as presented by the Applicant.

### (3)   The duty of impartiality

794.   Spain quotes the *ad hoc* committee in *Enron v. Argentina,* to state that a "lack of impartiality can be a ground for annulment under Article 52(1)(d) of the Convention. Such lack of impartiality may be inferred from an arbitral decision that consistently and insistently makes findings in favour of one of the parties without corresponding factual support."[912]

795.   In other parts of its submissions, reference is made to the alleged fact that if the reasonings of Spain "were analyzed impartially,"[913] the Tribunal would have reached different conclusions.

796.   In its Counter-Memorial, InfraRed states that "Spain has not adduced any evidence that proves a manifest lack of independence and impartiality on the part of the Tribunal."[914]

797.   In its Reply, Spain does not provide any evidence of the alleged lack of impartiality and the same occurred during the Hearing. This probably means that Spain made this allegation rhetorically to emphasize its disagreement with the Tribunal's findings rather than as an allegation of improper behavior by the Tribunal.

798.   In any case, the Committee analyzed carefully this issue and did not find any evidence of lack of impartiality of the Tribunal, even when not alleged by Spain.

799.   In conclusion, the Committee dismisses this request, as if it had actually been presented by the Applicant.

## VIII.   COSTS OF THE PROCEEDING

### A.   SPAIN'S STATEMENT ON COSTS

800.   Spain posits that "[p]ursuant to Article 52(4) of the ICSID Convention and Arbitration Rule 53, Article 61(2) and Arbitration Rule 47(1)(j) apply *mutatis mutandis* to

---

[912] Memorial, ¶303.
[913] Reply, ¶284 ("si se analizan de manera imparcial los mismos").
[914] Counter-Memorial, ¶250.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 180 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

annulment proceedings."[915] As a consequence, the Committee has the power to decide on allocation of costs between the Parties.

801. Spain argues that if the Committee annuls the Award, even if only partially, it is entitled to recover the incurred costs.[916]

802. As far as Spain's costs are concerned, they are the following:[917]

(i)  ICSID fees and Advance payments: EUR 590,197.36;
(ii) Legal fees directly incurred by the Kingdom of Spain: EUR 597,769.87
(iii)Expert Reports: EUR 57,656.50
(iv)Translations: EUR 4,216.55
(v) Other expenses: EUR 24,064.93

803. Therefore, Spain requests that the Committee order Infrared to reimburse it a total of EUR 1,273,905.21.

804. Spain also requests that "the Infrared Parties be ordered to pay post-award interest on the foregoing sums, at a compound rate of interest to be determined by the Committee, until the date of full satisfaction of the Committee's decision."[918]

## B.  INFRARED'S STATEMENT ON COSTS

805. InfraRed posits that the Committee has discretion, under Convention Article 61(2) and Arbitration Rule 47(1), to allocate the costs of the proceeding.[919]

806. InfraRed assumes the rejection of Spain's Application and thereby Spain "must: i) bear the full costs and expenses incurred by the *ad hoc* Committee and ICSID, and ii) reimburse InfraRed for its legal costs and expenses."[920]

807. InfraRed admits that "the initial approach when deciding about costs in annulment proceedings was to opt for the equal sharing of costs between the parties," but states that "such rule has been overcome by the well-established arbitral practice of applying

---

[915] Kingdom of Spain Submission on Costs, ¶4.
[916] Kingdom of Spain Submission on Costs, ¶8.
[917] Kingdom of Spain Submission on Costs, ¶21.
[918] Kingdom of Spain Submission on Costs, ¶23.
[919] InfraRed Submission on Costs, ¶10.
[920] InfraRed Submission on Costs, ¶11.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 181 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

the *costs follow the event* rule,"[921] and refers to recent decisions by committees to confirm that trend.[922]

808. Therefore, InfraRed requests the payment of the following:[923]

　　　(i)　　Attorney's fees:  EUR 686,716.25
　　　(ii)　　Other expenses: EUR 8,877.49

809. In conclusion, InfraRed requests that the Committee order Spain to pay an amount of EUR 695,593.74.[924]

### C.  THE COSTS OF THE PROCEEDING

810. The costs of the annulment proceeding, including the Committee's fees and expenses, ICSID's administrative fees and direct expenses, are as follows:

| Committee Members' fees and expenses | |
|---|---|
| Prof. José-Miguel Júdice | USD 172,968.75 |
| Dr. Karim Hafez | USD 104,086.39 |
| Prof. Yuejiao Zhang | USD 111,375.00 |
| ICSID's administrative fees | USD 126,000.00 |
| Direct expenses[925] | USD  83,929.57 |
| **Total**: | **USD 598,359.71** |

### D.  THE COMMITTEE'S DECISION ON COSTS

811. The Parties agree that the Committee is entitled to exercise its discretion under the ICSID Convention and Arbitration Rules when deciding on the issue of costs.

812. Spain's Application for Annulment has been dismissed in its entirety. The Committee has also dismissed Spain's Stay Request.

---

[921] InfraRed Submission on Costs, ¶12.
[922] InfraRed Submission on Costs, ¶¶12-16.
[923] InfraRed Submission on Costs, ¶¶5-9.
[924] InfraRed Submission on Costs, ¶18.
[925] This amount includes virtual meeting-related expenses, court reporting and translation services. But it does not include charges relating to courier services, printing and photocopying.

Case 1:19-cv-01618-TSC    Document 113-35    Filed 03/13/25    Page 182 of 185

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

813.    In the circumstances, the Committee considers that it is appropriate that the costs follow the event, although not in their entirety as the Application for Annulment has not been frivolous and the issues at stake were relevant enough to justify it.

814.    Exercising its discretion, the Committee decides unanimously that:

(a)    Spain shall bear its own legal costs and expenses;

(b)    Spain shall reimburse Infrared 50% of their legal fees in the amount of EUR 343,358.125;

(c)    InfraRed shall bear 50% of its legal fees and all of their other expenses;

(d)    If the payment of EUR 343,358.125 is not made by Spain within 60 days from the notification of the Decision, the amount payable is to be increased by interest on the outstanding amount until full payment at the rate of 2% compounded annually; and

(e)    Spain as the Applicant shall bear all of the costs of the proceeding, including the Committee's fees and expenses and the costs of ICSID.


## IX.    DECISION

815.    For the reasons set out above, the Committee unanimously decides as follows:

(i)    The Application for Annulment of the Award is dismissed in its entirety;

(ii)    Spain shall reimburse InfraRed 50% of their legal fees in the amount of EUR 343,358.125;

(iii)    If the payment of EUR 343,358.125 is not made by Spain within 60 days from the notification of this Decision, the amount payable is to be increased by interest on the outstanding amount until full payment at the rate of 2% compounded annually; and

(iv)    Spain as the Applicant shall bear all of the costs of the proceeding, including the Committee's fees and expenses and the costs of ICSID.

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

[signed]
_____          _____
Dr. Karim Hafez                                      Prof. Yuejiao Zhang
Member                                                    Member
10 June 2022


_____
Prof. José-Miguel Júdice
President

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

[signed]

_____          _____
Dr. Karim Hafez                                   Prof. Yuejiao Zhang
Member                                              Member
                                                    10 June 2022


_____
Prof. José-Miguel Júdice
President

173

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*
(ICSID Case No. ARB/14/12) – Annulment Proceeding

_____          _____
Dr. Karim Hafez                                    Prof. Yuejiao Zhang
Member                                                  Member

[signed]
_____
Prof. José-Miguel Júdice
President
10 June 2022