# Exhibit 32

# A test for European solidarity
## The case of intra-EU Bilateral Investment Treaties

Cecilia Olivet, Transnational Institute
January 2013



# 1  A vast web of intra-EU BITs

During the 1990s, most European Union (EU) Member States (Western European countries) signed Bilateral Investment Treaties (BITs) with many Central and Eastern European and Mediterranean governments. At that time they were simply BITs between EU Member States and third countries. But, with the accession to the EU of 12 new countries (majority from Central and Eastern Europe[1]) in 2004 and 2007, suddenly, a vast web of BITs between EU Member States ("Intra-EU BITs") emerged. Take the case of the Czech Republic. Over a span of two decades (1991-2012), the Czech Republic ratified 71 Bilateral Investment Treaties (BITs)[2]. Out of these, 18 are intra-EU BITs[3]. Until 2004, there were only two BITs between Member States. Currently, there are an estimated 190 intra-EU BITs[4].

These treaties include a set of investment protection clauses, such as national treatment (NT), fair and equitable treatment (FET), compensation in the event of expropriation – direct or indirect, most-favoured nation (MFN), and a ban on transfer of capital, among others. Furthermore, they all include an investor-state dispute settlement mechanism (ISDS), which gives companies the right to directly file lawsuits at international tribunals[5], bypassing the national justice system, when they feel that their profits (or future expectation of profits) have been affected. These clauses tend to be formulated in very vague language, which has enabled investors to sue in a variety of circumstances making it difficult for governments to predict when their actions could be considered in breach of an investment treaty.

# 2  Central and Eastern European Countries: the target of lawsuits based on intra-EU BITs

Central and Eastern European countries have regularly been at the receiving end of lawsuits from investors. Together they have been sued, at least, 77 times. This number is particularly striking if we compare it with the known cases of corporate investors suing Western European states, against whom there are only 7 recorded cases[6].

But an even more remarkable characteristic emerges when we ask the question: who is suing the Central and Eastern European countries? The answer is, mainly companies from fellow European countries. In fact 65% of all disputes against Central and Eastern Europe are based on intra-EU BITs.

| EU Member State from Central/ Eastern Europe | Known investor-state cases* | From total known cases, how many based on intra-EU BIT | EU Member State from Western Europe | Known investor-state cases* | From total known cases, how many based on intra-EU BIT |
|---|---|---|---|---|---|
| Czech Republic | 18 | 14 | Germany | 2 | 0 |
| Poland | 15 | 9 | Spain | 2 | 0 |
| Slovakia | 10 | 7 | Belgium | 1 | 0 |
| Hungary | 10 | 6 | Portugal | 1 | 1 |
| Romania | 8 | 5 | UK | 1 | 0 |
| Lithuania | 5 | 1 | Finland | 0 | 0 |
| Estonia | 3 | 2 | France | 0 | 0 |
| Latvia | 3 | 2 | Ireland | 0 | 0 |
| Bulgaria | 3 | 3 | Italy | 0 | 0 |
| Slovenia | 2 | 1 | Luxembourg | 0 | 0 |
|  |  |  | Netherlands | 0 | 0 |
|  |  |  | Denmark | 0 | 0 |
|  |  |  | Sweden | 0 | 0 |
|  |  |  | Austria | 0 | 0 |
| TOTAL | 77 | 50 | TOTAL | 7 | 1 |

Source: See annex A
* based on bilateral investment treaties (not counting contract cases)

*Czech Republic: a case study*

The case of Czech Republic is emblematic for two reasons. First, the Czech government has been sued by investors at international tribunals at least 18 times (and likely many more since most cases remain unknown), making it the most sued country in Central/Eastern Europe and the fifth highest target of investor disputes worldwide[7].

Second, out of those 18 cases, 13 were based on intra-EU BIT. Two BITs in particular have been favoured by companies: Netherlands-Czech Republic BIT was invoked in 6 cases and the Germany-Czech Republic BIT in 5 cases.

Despite the fact that the Czech Republic has won most of the cases, the financial cost of these cases is significant. Estimations indicate that the government, so far, had to pay approximately US$840 million[8] to investors, either as a result of tribunal decisions or settlement agreements[9]. The awards in the cases CME vs Czech Republic and Saluka vs Czech Republic alone amounted to US$355 million[10] and US$236 million[11] respectively.

Besides the compensation for "damages" to investors, states also have to bear the costs of arbitrators, witnesses and experts as well as their own lawyers. It is known that more than 80% of all legal costs in arbitration are spent on counsel. When the government hires international law firms for its defence, they can be charged up to US$1,000 per hour, per lawyer – with whole teams handling cases. Arbitrators' fees can range from US$375 to US$700 per hour depending on where the arbitration takes place. ICSID arbitrators can charge US$3,000 daily fee plus travel and living allowances[12]. In 2008 the Czech Republic declared it had spent around US$78 million since 1999 in lawyers' fees to defend the country in the different arbitration tribunals, particularly in the cases against Saluka and CME[13].

Other countries in the region also had to foot hefty legal bills. For example, Slovakia spent US$15 million in legal fees and costs for its defence in the UNCITRAL case of Albert Jan Oostergetel and Theodora Laurentius (Dutch textile investors)[14]; and the undisclosed award in the case of Achmea vs Slovakia seems to indicate that another US$15 million was spent on legal fees. Slovakia lost the case against Achmea, and the tribunal ordered the State to also pay €22 million in damages to the investor plus the legal costs of the company which amounted to €3 million[15].

# 3  Compliance with EU law as the source of the lawsuits

Central/Eastern European countries are not only being sued by companies from fellow Member States, but in some cases, are being sued for policies that were implemented at the request of the European Commission in order to comply with EU law.

This is the case with Hungary. In the 1990s, Hungary privatised its energy sector and provided State aid to private electricity companies, such as British AES, Belgium Electrabel and French EDF. After joining the EU in 2004, the Hungarian government, following the recommendation from the EC, terminated the aid programme and put a cap on electricity prices, to comply with EU competition law. These measures led to lawsuits by the three companies, filed between 2007 and 2009, claiming loss of expected future profits.

In the AES and Electrabel cases, the EC intervened with a written statement (*amicus curiae* briefing) arguing that state aid was unlawful and the country was not breaching its treaty obligations since the changes in policy were introduced to comply with EU law[16].

The Tribunals in the cases of AES and Electrabel decided in favour of Hungary, though not on the basis of the argument presented by the EC. The EDF case is still ongoing. The government, nonetheless, had to bare stiff legal and arbitration costs. In the case of AES, for example, Hungary's final bill amounted to US$5.5 million[17].

Another case where the claim arose out of a new member state complying with EU law is the one of Dutch investor Eastern Sugar vs Czech Republic using Netherlands-Czech Republic BIT. The Czech government had passed regulations to comply with EU's Common Agricultural Policy. This led Eastern Sugar to claim breach of fair and equitable treatment.

# 4  The intra-EU BITs debate

The existence of this new category of BITs, has opened up a wide debate that involves the European Commission (EC), the "old" Member States (EU-15) and the "new" Member States (EU-12). At the core of the discussion is the validity of these agreements. Members of the international Investment community, including arbitrators, corporate investors and the investment arbitration industry, have also made their positions heard.

### a) Position of the European Commission

Already during accession of new Member States (MS) in 2004, the EC raised concerns about the bilateral investment treaties that European MS had signed with the newcomers. But it was in 2006, when the position of the EC became clear and explicit. In a letter from Mr Schaub (EC Internal Market and Services) to Czech Deputy Minister of Finance, the Commission Services expressed: "EC law prevails in a Community context as of accession"…"the BIT is not applicable to matters falling under Community competence".. "The commission therefore takes the view that intra-EU BITs should be terminated in so far as the matters under the agreements fall under Community competence"[18]. The same position was reiterated in a note sent to the Economic and Financial Committee (ECOFIN) dated November 2006, where the EC expressed: "there appears no need for agreements of this kind in the single market and their legal character after accession is not entirely clear"[19].

Since then, the EC has repeatedly argued that bilateral investment treaties between EU Member States are in conflict with EU law, are incompatible with the EU single market and, therefore, should be phased out. The EC has maintained that intra-EU BITs discriminate between EU investors from different Member States because it grants some and not others the right to sue Member States at international tribunals. Furthermore, the EC is concerned that investor-to-state arbitration is binding and is not subject to review by the European Court of Justice (ECJ). The EC understands that ECJ is the forum to resolve issues of EU law involving an EU Member State[20].

The EC position on this issue was also heard when, in 2008, it presented an amicus curiae (a brief filed with the court by someone who is not a party to the case) in the case of AES v Hungary at ICSID and in 2010, it presented written observations in the case Achmea (at that time Eureko) vs Slovakia[21]. In the Slovakia case brief, the EC stated: "Intra-EU BITs amount to an anomaly within the EU internal market"… "Eventually, all intra-EU BITs will have to be terminated".

### b) Position of Western European Member States, with a focus on the Dutch government

In general, governments from Western European Members States (MS) have rejected the EC proposal to phase out intra-EU BITs. The position of most MS was made clear in the 2008 annual report of the Economic and Financial Committee (EFC) for the Council of the European Union which stated: "Most Member States did not share the Commission's concern in respect of arbitration risks and discriminatory treatment of investors and a clear majority of Member States preferred to maintain the existing agreements"[22].

The Dutch Government, together with Belgium, Germany, and the United Kingdom, have been among the most outspoken MS against the EC proposal. The Netherlands has presented a series of arguments to support the validity of the BIT between the Netherlands and other EU Member States. For example, in 2010, during the Achmea (previously Eureko) vs Slovakia case, the Dutch Ministry of Economic Affairs provided written observations defending the validity of Netherlands-Slovakia BIT. The government argued that Slovakia can terminate the treaty unilaterally, but the protection for investors as included in the treaty would remain valid for 15 years as stipulated in the so call "survival clause"[23].

When the Dutch government defends its vast web of investment treaties (89 Dutch BITs are currently in force[24]), it is not only protecting its own companies operating abroad. It is also protecting an estimated 20,000 companies availing themselves of the investment protections offered by Dutch BITs. These are the so-called mailbox companies. These are companies registered in the Netherlands, but with no employees on their payroll and no real economic activity in the country[25].

It is a known fact that many transnational companies choose the jurisdiction of the Netherlands as the base for their global trade and investment operations, because of its favourable tax regime that facilitates corporate tax avoidance strategies.

Nevertheless, a few EU member states have agreed to follow the EC recommendation and terminate some intra-EU BITs (see below). Because the treaties were terminated by consent of both parties, the protection for investors does not live on beyond the termination, as is usually the case when only one party denounces the treaty[26].

### c) Position of Central and Eastern European Member States, with a focus on Czech Republic

Since these new member states are the ones being sued, it is no surprise that they tend to favour the EC's proposal to terminate intra-EU BITs.

The Czech Republic and Slovakia have both argued that, as a result of the accession to the European Union, EU law superseded the investment treaties with other Member States, and therefore, these were de-facto terminated.

5

*Czech Republic's policy towards intra-EU BITs*

Since its accession to the European Union in 2004, the Czech Republic has followed some of the European Commission (EC)'s recommendations to amend its investment protection agreements.

First, the Czech government addressed the concerns that BITs were not in compliance with EU Law. In 2005 it proposed to all its BIT partners a renegotiation of the agreements. The Czech Republic successfully amended 22 BITs by including, among others, an exception that allows the government to restrict movement of capital[27].

A second EC recommendation to phase out all intra-EU BITs, though, was contested by many EU "old" Member States. The Czech government took the decision in 2008 - through Government Resolution 853 and 1529- to terminate by consensus all its intra-EU BITs[28]. So far, only a few Members States have responded positively to Czech Republic's request. Czech Republic has successfully terminated its intra-EU BITs with Italy (May 2009), Denmark (November 2009), Slovenia (August 2010), Malta (September 2010) and Estonia (February 2011). The termination with Ireland is being finalised[29].

The government has also taken the position that, even if intra-EU BITs are still in place, after its accession to the EU, they are not longer applicable. This was the line of defence during the case Eastern Sugar v. Czech Republic (SCC Case No. 088/2004). The government argued that the arbitral tribunal did not have jurisdiction, since their BIT with the Netherlands was no longer valid, had been superseded by EU Law and should ultimately be decided by the European Court of Justice. However, this argumentation was rejected by the arbitration tribunal who ruled in favour of Eastern Sugar and ordered the Czech Republic to pay EUR 25.4 million[30].

Similar arguments were presented by Slovakia in the cases against Ostergetel and Laurentius[31] and against Eureko[32]. Both tribunals dismissed Slovakia's argument and declared the arbitration panel had jurisdiction to decide on the disputes.

In the latest turn of events, the Czech Republic and Slovakia have appealed to national courts to challenge the jurisdictions of the arbitration panels. The Czech Republic initiated a domestic legal process to challenge the decision in the Binder v. Czech Republic case[33]. Slovakia challenged the decision in the Eureko vs Slovakia case at the Frankfurt Higher Regional Court, requesting that the dispute be re-directed to the European Court of Justice (ECJ)[34]. The Frankfurt court has recently declined Slovakia's request. An appeal is still ongoing[35].

## d) Position of investment lawyers, including investment arbitrators

Besides the EC and the Member States, the investment arbitration community and business have also been part of the debate.

*Investment arbitrators*

The investment arbitrators, who sat on the panels of cases such as Eastern Sugar v. Czech Republic, (Robert Volterra, Pierre A. Karrer and Emmanuel Gaillard) and Achmea (previously Eureko) vs Slovakia (Vaughan Lowe, Albert Jan van den Berg and VV Veeder) rejected the Czech Republic and Slovakia's positions against intra-EU BITs. Instead, they maintained that intra-EU BITs remain in force. These panels assumed jurisdiction without taking into consideration the compatibility of investor-state arbitration in intra-EU BITs with EU law.

Particularly, in the Eastern Sugar v Czech Republic case, the arbitrators expressed that "an international arbitral tribunal, independent from the host state is the best guarantee" [36].

Arbitrator Emmanuel Gaillard was so keen to retain these investment treaties that he went beyond rejecting the Czech Republic's position on intra-EU BITs to undertaking active advocacy against the EC proposal to phase out BITs between EU Member States (Intra-EU BITs). Gaillard warned that the "effort to create a level playing field for investment in Europe will have the unintended consequence of driving companies that wish to invest in Europe away from the European Union". Perhaps the fact that Gaillard has himself arbitrated in at least three intra-EU BIT cases provides some explanation as to why he was so concerned to maintain these agreements[37].

*Law firms*

Law firms who are making millions out of investment arbitration are also alerting their clients of the "risks" they face in light of the termination intra-EU BITs.

For example, Czech law firm Smed Jorgensen, referring to the Czech government decision to terminate its BIT with Italy, openly advised its clients that "(I)n some cases there is, luckily, a way out of this situation". Their suggestion to investors was to set up a shell company in another country that has a valid BIT with the Czech Republic, and in that way continue enjoying investment protection[38].

Dutch firm De Brauw, also published a general warning about the dangers of phasing out EU BITs[39]. Given that De Brauw represented the Dutch insurance company Eureko in the case against the Czech Republic, financial considerations can not be ruled out as one of the motives driving their position.

Law firm K&L Gates went as far as to promote corporate lobbying against intra-EU BITs: "European businesses should also get in touch with their representative organizations and make their concerns clearly known to the European institutions, so that their concerns are taken into account"[40]

## 5   Imminent next wave of disputes in the solar energy sector

In 2005, the Czech government implemented state subsidies for renewable energy production, which resulted in an energy solar boom. By 2010, fearing strains in state budgets and negative impacts in the energy grid, the Parliament changed the legislation. The new law reduced the amount of subsidies for new companies, but also applied a retroactive 26 per cent tax on revenues generated by solar plants that have benefited from the subsidies[41].

It is expected that this measure will lead to an avalanche of claims under various BITs as well as the Energy Charter Treaty – an international agreement that regulates trans-border investment in the energy sector and includes an investor-state dispute settlement mechanism. A group of foreign energy investors, including Germany's Voltaic Network and Luxembourg's Radiance Energy Holding, which are part of the International PhotoVoltaic Investors' Club, are ready to launch lawsuits that could amount to between US$2.5 billion and US$14.5 billion[42]. The companies have appointed global law firm Freshfields and local firms Glatzová & Co, Sekanina Legal, NH Partners in Prague and CMS Cameron McKenna to represent them[43].

The Czech government has announced it will hire 'a dream team' of international investment lawyers. Among those it named: James Crawford SC and Zachary Douglas of Matrix Chambers in London; Stephen Anway and David Alexander of Squire Sanders & Dempsey in Cleveland and Columbus; and partner Karolína Horáková of Weil Gotshal & Manges in Prague[44].

Many more cases could follow. There is increasing evidence that law firms actively encourage companies to sue states, hoping to gain new clients as a result[45]. This has been the case with law firm Smed Jorgensen. In January 2011, it published client advice encouraging investors to sue the Czech Republic. The law firm offered to defend the interests of the companies "mistreated" by Czech legislation: "as a measure significantly driving down the costs of your investment arbitration, we hereby offer our clients to join a class action arbitration for which we already have several similarly affected photovoltaic investors lined up"[46].

## 6   The rhetoric of solidarity within the European Union

Solidarity among fellow European countries has been presented as a core value underlying the European Union's political and economic integration process. In fact, Article 3 of the Lisbon Treaty explicitly states that the Union "shall promote economic, social and territorial cohesion and solidarity among Member States".

However, it has become increasingly apparent, particularly since the Eurozone debt crisis, that there have been clear winners and losers as a result of the European integration model, particularly due to the architecture of the single market and the economic monetary union.

In the context of the intra-EU BITs debate, Western European Member States have, so far, fervently opposed the argument that BITs signed with other EU Member States before accession are now invalid. Their position signals that defending big business is still the main priority for the "old" EU Member States, rather than building solidarity. This position is particularly shameful when we realise that intra-EU BITs are the main trade instrument used by corporations to sue the "new" Member States. Furthermore, it adds insult to injury the fact that some of the lawsuits originate as a result of change in legislation that was demanded by the EC itself. The notion of European solidarity is already being tested during the Eurozone debt crisis. If countries like Germany, the Netherlands and UK do not change their position and start terminating the extensive web of intra-EU BITs, European solidarity will sound increasingly like empty rhetoric.

## Endnotes

1. Czech Republic, Estonia, Hungary, Latvia, Lithuania, Poland, Slovakia, Slovenia, Romania and Bulgaria.

2. UNCTAD (2012) Total number of Bilateral Investment Agreements concluded by Czech Republic, 1 June. http://archive.unctad.org/sections/dite_pcbb/docs/bits_czech_rep.pdf [4/12/2012]

3. Czech Republic has intra-EU BITs with: Austria, Belgium & Luxembourg, Bulgaria, Cyprus, Finland, France, Germany, Greece, Hungary, Latvia, Lithuania, Netherlands, Poland, Portugal, Romania, Spain, Sweden, United Kingdom.

4. European Commission (2012) Monitoring activities and analysis, Bilateral Investment Treaties between EU Member States (intra-EU BITs). http://ec.europa.eu/internal_market/capital/analysis/monitoring_activities_and_analysis_en.htm [4/12/2012]

5. The majority of known cases are handled by the World Bank's International Center for Settlement of Investment Disputes (ICSID) in Washington. The second most used rules are those of the United Nations Commission on International Trade Law (UNCITRAL). The Permanent Court of Arbitration (PCA) in The Hague, the London Court of International Arbitration (LCIA) as well as the Paris-based International Chamber of Commerce (ICC) and the Stockholm Chamber of Commerce (SCC), both business organisations, also regularly handle disputes.

6. UNCTAD (2012) IIA Issues Note, No 1, April. http://unctad.org/en/PublicationsLibrary/webdiaeia2012d10_en.pdf [23/01/2013]

7. Ibid, UNCTAD (2012)

8. Original figure EUR600 million. Based on an exchange rate of 1EUR = US$1.40 (1 November 2011).

9. Fecák, T (2011) Czech experience with Bilateral Investment Treaties: somewhat bitter taste of investment protection, CYIL 2, p233-267.

10. GAR (2008) Czech Republic counts cost of arbitration, May. http://www.globalarbitrationreview.com/news/article/14511/czech-republic-counts-cost-arbitration [4/12/2012]

11. GAR (2008) Saluka resolved following battle of experts http://www.globalarbitrationreview.com/news/article/14637/saluka-resolved-following-battle-experts [4/12/2012]

12. Eberhardt, P and Olivet, C (2012) Profiting from Injustice, Transnational Institute and Corporate Europe Observatory. http://www.tni.org/briefing/profiting-injustice [4/12/2012]

13. GAR (2008), See endnote 10.

14. Perry, S (2012) Slovak treaty win comes at a price, Global Arbitration Review, 29 May http://www.globalarbitrationreview.com/news/article/30576/slovak-treaty-win-comes-price [4/12/2012]. Original amount €12 million. Based on an exchange rate of 1EUR = US$1.25 (29 May 2012).

15. Karadelis, K (2012) Health insurer wins €22 million against Slovakia – but second case on the cards?, Global Arbitration Review, 11 December. http://www.globalarbitrationreview.com/news/article/31047/health-insurer-wins-22-million-against-slovakia-second-case-cards/ [23/01/2013]

16. Triantafilou, E (2009) A More Expansive Role For Amici Curiae In Investment Arbitration?, Kluwer Arbitration blog, 11 May http://kluwerarbitrationblog.com/blog/2009/05/11/a-more-expansive-role-for-amici-curiae-in-investment-arbitration [23/01/2013]

17. Perry, S (2010) ECT claim against Hungary founders, Global Arbitration Review, 27 September. http://www.globalarbitrationreview.com/news/article/28755/ect-claim-against-hungary-founders/ [23/01/2013]

18. These passages were quotes in the Eastern Sugar B.V. vs The Czech Republic (UNCITRAL ad hoc arbitration in Paris SCC No. 088/2004), Partial Award, 27 March 2007 http://italaw.com/sites/default/files/case-documents/ita0259_0.pdf [4/12/2012]

19. Ibid

20. European Commission (2012) Commission staff working document Capital Movements and Investment in the EU Commission Services Paper on Market Monitoring, SWD(2012)6 final. http://ec.europa.eu/internal_market/capital/docs/20120203_market-monitoring_en.pdf [4/12/2012]

21. Eureko B.V. vs the Slovak Republic (PCA Case No. 2008-13), Award on Jurisdiction, 26 October 2010 http://italaw.com/documents/EurekovSlovakRepublicAwardonJurisdiction.pdf [4/12/2012]

22. Economic and Financial Committee (2008) Annual EFC Report to the Commission and the Council on the Movement of Capital and the Freedom of Payments (ECFIN/CEFCPE(2008)REP/55806) http://register.consilium.europa.eu/pdf/en/08/st17/st17363.en08.pdf [4/12/2012]

23. Eureko B.V. v. Czech Republic, see endnote 21.

24. UNCTAD (2012) Total number of Bilateral Investment Agreements concluded by The Netherlands, 1 June. http://archive.unctad.org/sections/dite_pcbb/docs/bits_netherlands.pdf [4/12/2012]

25. van Os, R. and Knottnerus, R. (2011) Dutch Bilateral Investment Treaties. A gateway to 'treaty shopping' for investment protection by multinational companies, SOMO. http://somo.nl/publications-en/Publication_3708 [4/12/2012]

26. Trapl, V (2011) The current status of protection scope: outlook on the future, Investment Treaty Arbitration Conference 2011 http://www.mfcr.cz/cps/rde/xbcr/mfcr/2011_10_20_BIT_conference_BIT_Vojtech_TRAPL_.pdf [4/12/2012]

27. Fecák, T (2011), see endnote 9.

28. Together with the request for termination, the Czech Republic appeal to exclude the in-built safeguard period. The safeguard mechanism gives investors continue protection for certain period (usually 10 years) after termination of the agreement.

29. Fecák, T (2011), see endnote 9.

30. Eastern Sugar vs Czech Republic, see endnote 18.

31. Hepburn, J (2012) In a newly-unearthed jurisdiction ruling, UNCITRAL Tribunal ruled on compatibility of BITs with EU law and declined to consult ECJ; effective nationality of claimants also studied?, IAReporter, 17 July http://www.iareporter.com/articles/20120717_1 [4/12/2012]

32 Elward, D (2010) Health insurance claim to proceed against Slovakia, Global Arbitration Review, 24 November www.globalarbitrationreview.com/news/article/28934/health-insurance-claim-proceed-against-slovakia [4/12/2012]

33 Peterson, L E (2009) Will ECJ look at intra-EU bilateral investment treaties next?, Kluwer Arbitration blog, 6 March. http://kluwerarbitrationblog.com/blog/2009/03/06/will-ecj-look-at-intra-eu-bilateral-investment-treaties-next [4/12/2012]

34 Ross, A (2012) Slovakia takes intra-EU BIT controversy to Germany's highest court, Global Arbitration Review, 30 May. www.globalarbitrationreview.com/news/article/30580/slovakia-takes-intra-eu-bit-controversy-germanys-highest-court [4/12/2012]

35 Balthasar, S (2012) Investment arbitration under intra-EU BITs: Recent developments in Eureko v. Slovakia, Kluwer Arbitration blog, 28 August http://kluwerarbitrationblog.com/blog/2012/08/28/investment-arbitration-under-intra-eu-bits-recent-developments-in-eureko-v-slovakia [4/12/2012]

36 Eastern Sugar vs Czech Republic, see endnote 18.

37 Eberhardt, P and Olivet, C (2012), see endnote 12.

38 Smed Jorgensen (2010) Italy-Czech Bilateral Investment Treaty Terminated, 13 July. http://www.smedjorgensen.com/en/italy-czech-bilateral-investment-treaty-terminated  [4/12/2012]

39 van Geuns, E and Jansen, N (2011) The route forward for BITs in Europe, Global Arbitration Review, 26 January www.globalarbitrationreview.com/journal/article/29057/the-route-forward-bits-europe [4/12/2012]

40 K&L Gates (2012) Annual Outlook, January http://bit.ly/11Kmk0l [4/12/2012]

41 Fecák, T (2011), see endnote 9.

42 Elward, D (2011) Czech Republic takes new approach as ECT claims loom, Global Arbitration Review, 28th June. http://www.globalarbitrationreview.com/news/article/29583/czech-republic-takes-new-approach-ect-claims-loom/ [4/12/2012]

43 Ibid. Elward, D (2011)

44 Ibid. Elward, D (2011)

45 Eberhardt, P and Olivet, C (2012), see endnote 12

46 Smed Jorgensen (2011) Arbitration on Photovoltaic against the Czech Republic, Newsletter, January. http://www.smedjorgensen.com/en/newsletter-arbitration-on-photovoltaic-against-the-czech-republic [4/12/2012]

# ANNEX A  KNOWN INVESTMENT TREATY CASES AGAINST EUROPEAN MEMBER STATES

## CENTRAL AND EASTERN EUROPE

### CZECH REPUBLIC

| Case | Tribunal/Rules | Treaty | Result of case |
|---|---|---|---|
| Intra-EU | | | |
| 1. CME v Czech Republic | UNCITRAL | Netherlands-CR BIT | Award in favour of investor |
| 2. Eastern Sugar v. Czech Republic | SCC Case No. 088/2004 | Netherlands-CR BIT | Award in favour of investor |
| 3. Invesmart v. Czech Republic | UNCITRAL | Netherlands-CR BIT | Claim rejected. In favour of State |
| 4. Mittal Steel Company N.V. v. Czech Republic | UNCITRAL | Netherlands-CR BIT | Settled |
| 5. Saluka (Nomura) v. Czech Republic | UNCITRAL | Netherlands-CR BIT | Settled |
| 6. K+Venture Partners v. Czech Republic | UNCITRAL | Netherlands-CR BIT | Settled |
| 7. InterTrade v. Czech Republic | UNCITRAL | Germany-CR BIT | Claim rejected. In favour of State |
| 8. Peter Franz Vöcklinghaus v. Czech Republic | Ad-hoc | Germany-CR BIT | Claim rejected. In favour of State |
| 9. ECE Projecktmanagement v. Czech Republic | UNCITRAL | Germany-CR BIT | pending |
| 10. Binder v. Czech Republic | UNCITRAL | Germany-CR BIT | Claim rejected. In favour of State |
| 11. Nepolsky v. Czech Republic | UNCITRAL | Germany-CR BIT | Claim dropped by investor |
| 12. Nagel v. Czech Republic | SCC Case No. 049/2002 | UK-CR BIT | Tribunal dismissed claim |
| 13. European Media Ventures v. Czech Republic | UNCITRAL | Belgium-CR BIT | Claim rejected. In favour of State |
| Others | | | |
| 14. Konsortium Oeconomismus v. Czech Republic | UNCITRAL | Switzerland-CR BIT | Claim dismissed. In favour of State |
| 15. Nreka v. Czech Republic | UNCITRAL | Croatia-CR BIT | Award in favour of investor |
| 16. Lauder v. Czech Republic | UNCITRAL | United States-CR BIT | Claim rejected. In favour of State |
| 17. Phoenix Action Ltd v. Czech Republic | ICSID Case No. ARB/06/5 | Israel -CR BIT | Tribunal dismissed claim for lack of jurisdiction |
| 18. Frontier Petroleum Services (FPS) v. Czech Republic | UNCITRAL | Canada-CR BIT | Claim rejected. In favour of State |

# POLAND

| Case | Tribunal/case number | Treaty |
|---|---|---|
| **Intra-EU** | | |
| 1. Saar Papier v. Poland I and Saar Papier v. Poland II | UNCITRAL | Germany-Poland BIT |
| 2. France Telecom v. Poland | UNCITRAL | France-Poland BIT |
| 3. Lutz Ingo Schaper v. Poland | UNCITRAL | Germany-Poland BIT |
| 4. Eureko v. Poland | UNCITRAL | Netherlands-Poland BIT |
| 5. Vivendi v. Poland | UNCITRAL | France-Poland BIT |
| 6. Nordzucker v. Poland | UNCITRAL | Germany-Poland BIT |
| 7. Crespo and others v. Poland | ICC | Spain- Poland BIT |
| 8. Servier v. Poland | UNCITRAL | France-Poland BIT |
| 9. TRACO Deutsche Travertin Werke GmbH v. Poland | UNCITRAL | Germany-Poland BIT |
| **Others** | | |
| 10. Mercuria Energy Group Limited (Mercuria) v. Poland | SCC | Energy Charter Treaty |
| 11. Ameritech v. Poland | UNCITRAL | Poland-United States BIT |
| 12. Mr. David Minnotte and Mr. Robert Lewis v. Republic of Poland | ICSID Case No. ARB(AF)/10/1 | Poland- United States BIT |
| 13. Cargill, Incorporated v. Republic of Poland | ICSID Case No. ARB(AF)/04/2) / UNCITRAL (This case was switched from an ICSID case to an UNCITRAL case at the request of the parties) | Poland-United States BIT |
| 14. East Cement for Investment Company v. Poland | ICC | Jordan-Poland BIT |
| 15. Vincent J. Ryan, Schooner Capital LLC, and Atlantic Investment Partners LLC v. Republic of Poland | ICSID Case No. ARB(AF)/11/3 | BIT unknown |

# SLOVAK REPUBLIC

| Case | Tribunal/case number | Treaty |
|---|---|---|
| **Intra-EU** | | |
| 1. Austrian Airlines v. Slovak Republic | UNCITRAL | Austria -Slovakia BIT |
| 2. Ceskoslovenska Obchodni Banka, a.s. v. The Slovak Republic | ICSID Case No. ARB/97/4 | Czech Republic - Slovakia BIT |
| 3. EURAM Bank AG v. Slovak Republic | | Austria-Slovakia BIT |
| 4. Eureko B.V. v. The Slovak Republic | PCA Case No. 2008-13, UNCITRAL | Netherlands- Slovakia BIT |
| 5. EuroGas GmbH v. Slovak Republic | UNCITRAL | Austria-Slovakia BIT |
| 6. HICEE B.V. v. The Slovak Republic | UNCITRAL | Netherlands-Slovakia BIT |
| 7. Jan Oostergetel and Theodora Laurentius v. The Slovak Republic | UNCITRAL | Netherlands-Slovakia BIT |
| **Others** | | |
| 8. Alps Finance and Trade AG v. Slovak Republic | UNCITRAL | Switzerland-Slovakia BIT |
| 9. Branimir Mensik v. Slovak Republic | ICSID (Case No. ARB/06/9 | Switzerland -Slovakia BIT |
| 10. Slovak Gas Holding BV et al v. Slovak Republic | ICSID (case No. ARB/12/7) | Energy Charter Treaty |

HUNGARY

| Case | Tribunal/case number | Treaty |
|---|---|---|
| Intra-EU | | |
| 1. ADC Affiliate Limited and ADC & ADMC Management Limited v. Republic of Hungary | ICSID Case No. ARB/03/16 | Cyprus-Hungary BIT |
| 2. AES Summit Generation Ltd. v. Hungary | ICSID No. ARB/01/04 | United Kingdom-Hungary BIT (and Energy Charter Treaty) |
| 3. Emmis International Holding B.V. and Others v. The Republic of Hungary | ICSID Case No ARB/12/2 | Netherlands-Hungary BIT, UK-Hungary BIT (and Switzerland/Hungary BIT) |
| 4. Vigotop Limited v. Hungary | ICSID Case No. ARB/11/22 | Cyprus-Hungary BIT |
| 5. Accession Mezzanine Capital L.P. and Danubius Kereskedőház Vagyonkezelő Zrt. v. Hungary | ICSID Case No ARB/12/3 | Netherlands-Hungary, the UK-Hungary and Switzerland-Hungary BITs |
| 6. Dan Cake S.A. v. Hungary | ICSID Case No ARB/12/9 | Portugal-Hungary BIT (tbc) |
| Others | | |
| 7. AES Summit Generation Limited and AES-Tisza Erömü Kft v. The Republic of Hungary | ICSID Case No. ARB/07/22 | Energy Charter Treaty |
| 8. Electrabel S.A. v. Republic of Hungary | ICSID Case No. ARB/07/19 | Energy Charter Treaty. |
| 9. Telenor Mobile Communications A.S. v. Republic of Hungary | ICSID Case No. ARB/04/15 | Norway-Hungary BIT |
| 10. EDF v. Hungary | UNCITRAL | Energy Charter Treaty |

ROMANIA

| Case | Tribunal/case number | Treaty |
|---|---|---|
| Intra-EU | | |
| 1. EDF v. Romania | ICSID Case No. ARB/05/13 | UK-Romania BIT |
| 2. Micula v. Romania | ICSID Case No. ARB/05/20 | Sweden-Romania BIT |
| 3. Rompetrol v. Romania | ICSID Case No. ARB/06/3 | Netherlands-Romania BIT |
| 4. Spyridon Roussalis v. Romania | ICSID Case No. ARB/06/1 | Greece-Romania BIT |
| 5. Marco Gavazzi and Stefano Gavazzi v. Romania | ICSID Case No. ARB/12/25 | Italy-Romania BIT |
| Others | | |
| 6. Mr. Hassan Awdi, Enterprise Business Consultants, Inc. and Alfa El Corporation v. Romania | ICSID Case No. ARB/10/13 | US-Romania BIT |
| 7. Noble Ventures v. Romania | ICSID Case No. ARB/01/11 | US-Romania BIT |
| 8. S & T Oil Equipment and Machinery Ltd. v. Romania | ICSID Case No. ARB/07/13 | US-Romania BIT |

## LITHUANIA

| Case | Tribunal/case number | Treaty |
|---|---|---|
| **Intra-EU** | | |
| 1. Luigiterzo Bosca v. Lithuania | UNCITRAL/Ad-hoc Stockholm | Italy-Lithuania BIT |
| **Others** | | |
| 2. Gazprom v. Lithuania (1) | UNCITRAL | Russia-Lithuania BIT |
| 3. Gazprom v. Lithuania (2) | ICC | Russia-Lithuania BIT |
| 4. Parkerings-Compagniet AS v. Lithuania | ICSID Case No. ARB/05/8 | Norway-Lithuania BIT |
| 5. Kaliningrad Region v. Lithuania | ICC | Russia-Lithuania BIT |

## BULGARIA

| Case | Tribunal/case number | Treaty |
|---|---|---|
| **Intra-EU** | | |
| 1. Plama Consortium Limited v. Bulgaria | ICSID Case No. ARB/03/24 | Energy Charter Treaty and Bulgaria-Cyprus BIT |
| 2. Novera AD, Novera Properties B.V. and Novera Properties N.V. v. Bulgaria | ICSID Case No. ARB/12/16 | Netherlands - Bulgaria bilateral investment treaty |
| 3. Accession Eastern Europe Capital AB and Mezzanine Management Sweden AB v. Bulgaria | ICSID Case No. ARB/11/3 | Austria-Bulgaria BIT |

## ESTONIA

| Case | Tribunal/case number | Treaty |
|---|---|---|
| **Intra-EU** | | |
| 1. Rail World Estonia LLC, Railroad Development Corporation and EEIF Rail BV v. Republic of Estonia | ICSID Case No. ARB/06/6 | Estonia-Netherlands BIT Estonia-United States BIT |
| 2. Oko Pankki Oyj, VTB Bank (Deutschland) AG and Sampo Bank Plc v. TheRepublic of Estonia | ICSID Case No. ARB/04/6 | Germany-Estonia BIT and Finland-Estonia BIT |
| **Others** | | |
| 3. Alex Genin, Eastern Credit Limited, Inc. & A.S. Baltoil v. The Republic of Estonia | ICSID Case No. ARB/99/2 | US-Estonia BIT |

## LATVIA

| Case | Tribunal/case number | Treaty |
|---|---|---|
| **Intra-EU** | | |
| 1. Swembalt AB, Sweden v. Latvia | UNCITRAL | Latvia-Sweden BIT |
| 2. E-Energija v. Latvia | ICSID Case No. ARB/12/33 | Latvia-Lithuania BIT |
| **Others** | | |
| 3. Nykomb Synergetics Technology Holding AB v. Latvia | SCC | Energy Charter Treaty |

## SLOVENIA

| Case | Tribunal/case number | Treaty |
|---|---|---|
| Intra-EU | | |
| 1. Interbrew Central European Holding B.V. v. Republic of Slovenia | ICSID Case No. ARB/04/17 | Netherlands-Slovenia BIT |
| Others | | |
| 2. Hrvatska Elektroprivreda d.d. (HEP) v. Republic of Slovenia | ICSID Case No. ARB/05/24 | Energy Charter Treaty |

## WESTERN EUROPE

### SPAIN

| Case | Tribunal/case number | Treaty |
|---|---|---|
| 1. Emilio Agustín Maffezini v. The Kingdom of Spain | ICSID Case No. ARB/97/7 | Argentina-Spain BIT |
| 2. Inversión y Gestión de Bienes, IGB, S.L. and IGB18 Las Rozas, S.L. v. Kingdom of Spain | ICSID Case No. ARB/12/17 | Spain-Venezuela BIT |

### UK

| Case | Tribunal/case number | Treaty |
|---|---|---|
| 1. Ashok Sancheti v. United Kingdom | UNCITRAL | UK-India BIT |

### GERMANY

| Case | Tribunal/case number | Treaty |
|---|---|---|
| 1. Vattenfall AB, Vattenfall Europe AG, Vattenfall Europe Generation AG v. Federal Republic of Germany | ICSID Case No. ARB/09/6 | Energy Charter Treaty |
| 2. Vattenfall AB and others v. Federal Republic of Germany | ICSID Case No. ARB/12/12 | Energy Charter Treaty |

### BELGIUM

| Case | Tribunal/case number | Treaty |
|---|---|---|
| 1. Ping An Life Insurance Company of China, Limited and Ping An Insurance(Group) Company of China, Limited v. Kingdom of Belgium | ICSID Case No. ARB/12/29 | China-Belgium BIT |

### PORTUGAL

| Case | Tribunal/case number | Treaty |
|---|---|---|
| 1. German investor v. Portugal | UNCITRAL | Germany-Portugal BIT |







The Transnational Institute was founded in 1974. It is an international network of activist-scholars committed to critical analyses of the global problems of today and tomorrow. TNI seeks to provide intellectual support to those movements concerned to steer the world in a democratic, equitable and environmentally sustainable direction.

January 2013

Published by the Transnational Institute (TNI)

PO Box 14656 1001 LD
Amsterdam
The Netherlands

**Tel:** + 31 20 662 66 08
**Fax:** + 31 20 675 71 76
**email:** tni@tni.org

**www.tni.org**