# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLASKET RENEWABLE INVESTMENTS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 20-817 (JDB) |
| KINGDOM OF SPAIN, | |
| Defendant. | |

<u>MEMORANDUM OPINION</u>

In 2007, the Kingdom of Spain enhanced its existing financial incentives to promote domestic renewable energy development.  As a result, five United Kingdom-based companies invested in solar power plants there.  But as the global economy faltered due to the Great Recession, so did Spain's ability to make good on its promised subsidies, so it withdrew them. The companies then invoked the arbitration clause of the Energy Charter Treaty ("ECT"), a multilateral investment treaty to which Spain and the United Kingdom were parties.  The arbitration bore fruit: the companies prevailed and won more than €28 million, plus interest.  But years later, European courts applying European Union law declared similar arbitration awards invalid.  So the companies came to the United States and filed this petition to recognize and enforce the award under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention").  <u>See</u> 22 U.S.C. § 1650a.

Spain initially filed a motion to dismiss the companies' petition for lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), arguing that the FSIA's arbitration exception did not apply because, under EU law, there was no valid arbitration agreement.  But the D.C. Circuit has since rejected that argument.  <u>See</u> <u>NextEra Global Holdings B.V. v. Kingdom of</u>

1

Spain, 112 F.4th 1088 (D.C. Cir. 2024).  As a result, the parties have now submitted summary-judgment motions on the merits.  According to Spain, this Court cannot recognize and enforce the arbitration award for two reasons: first, the ICSID Tribunal that handed down the arbitration award lacked jurisdiction under EU law, and second, the foreign sovereign compulsion doctrine bars enforcement of the award.  According to Blasket Renewable Investments LLC—which now owns the five companies' interests in the arbitration award—the matter is far simpler: this Court has jurisdiction and the award is authentic, and hence the Court must recognize and enforce it.

Blasket has the better argument.  The Court will thus deny Spain's motion for summary judgment, grant Blasket's, and recognize and enforce the arbitration award.

## Background

### I.       ECT and ICSID

Signed in 1994, the ECT is a multilateral investment treaty built "to promote international cooperation in the energy sector."  NextEra, 112 F.4th at 1094 (citing ECT art. 2, Dec. 17, 1994, 2080 U.N.T.S. 95).  At its inception, the ECT had fifty-three contracting parties, including Spain, the United Kingdom, the EU, and nations outside of Europe.  See id.[1]  The ECT aims to protect investments made by investors of one contracting party in the territory of another contracting party. Id. (citing ECT art. 10).  It does so in part by requiring contracting parties to give "fair and equitable treatment" to the investors of other contracting parties.  Id. (quoting ECT art. 10(1)).  And if the contracting parties fail to uphold their obligations under the ECT, the treaty provides a mechanism

---

[1] After the events relevant here, the EU, the UK, and Spain withdrew or began the process to withdraw from the ECT.  See Withdrawal of the Union from the Energy Charter Treaty [ECF No. 74-45]; Energy Charter Treaty – Withdrawal by the Kingdom of Spain [ECF No. 74-40]; UK Departs Energy Charter Treaty, gov.uk, https://www.gov.uk/government/news/uk-departs-energy-charter-treaty (last visited July 31, 2025.  Because the EU, the UK, and Spain remained contracting parties to the ECT during the events at issue here, their withdrawals do not affect this Court's analysis.  See ECT art. 47(2) (withdrawal effective one year after announcement); NextEra, 112 F.4th at 1094.

2

for individual investors to seek redress.  Under Article 26, an investor "may choose to submit" to international arbitration any "[d]ispute[ ] between a Contracting Party and an Investor of another Contracting Party relating to" a covered investment.  ECT art. 26(1), (2).  All contracting parties, in turn, give "unconditional consent to the submission of [the] dispute to international arbitration" when an investor elects to do so.  Id. art. 26(3).  Investors may choose from several arbitral tribunals, see id. art. 26(4), and whichever they select "shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law," id. art. 26(6).

One arbitral tribunal available to investors is ICSID, an entity created by the ICSID Convention.  See id. art. 26(4).  "The ICSID Convention is a multilateral treaty aimed at promoting private international investment," Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, 87 F.4th 510, 514 (D.C. Cir. 2023) (citing 17 U.S.T. 1270, 575 U.N.T.S. 159 ("ICSID Convention")), to which the United States and Spain are parties.[2]  ICSID actualizes the treaty's goal by "maintaining a legal framework and a reliable process for the resolution of disputes between private investors and governments."  Id.  More specifically, ICSID "convene[s] arbitration, mediation, and fact-finding panels to address disputes between international investors and Contracting States"—i.e., states that are parties to the ICSID Convention and have ratified it under domestic law.  Id. (citing ICSID Convention arts. 1(2), 7, 25(1), 28).

The ICSID Convention lays out rules and procedures for its arbitral tribunals.  Unlike some other arbitral tribunals, ICSID tribunals decide not only the merits of the dispute, but also their own jurisdiction: ICSID tribunals are "the judge[s] of their own competence" and consider any argument "that th[e] dispute is not within the jurisdiction" or otherwise "within the competence"

---

[2] See List of Contracting States & Other Signatories of the Convention, ICSID (July 17, 2025) https://icsid.worldbank.org/sites/default/files/ICSID%2010/2025%20-%20July%2017%20-%20ICSID%203%20-%20ENG.pdf.

of the tribunal.  See ICSID Convention art. 41.  And, whether jurisdictional or on the merits, a

"[t]ribunal's disposition of a case must address every question submitted by the parties and must

state the reasons upon which the arbitration decision and award are based."  Valores, 87 F.4th at

515 (citing ICSID Convention art. 48(3)).  Once an ICSID tribunal has issued an award, "[t]he

only route for setting [it] aside . . . is through the ICSID Convention's annulment process."  Id.;

ICSID Convention art. 50.  If an arbitral award is not annulled, "the award shall be binding on the

parties."  ICSID Convention art. 53; see also von Pezold v. Republic of Zimbabwe, No. 23-7109,

2024 WL 4763943, at *2 (D.C. Cir. 2024) (per curiam).

While ICSID can issue an award, it cannot enforce it.  Rather, the prevailing party must

petition a domestic court within any contracting state to the ICSID Convention to "recognize" and

"enforce" the arbitration award.  See ICSID Convention art. 54.  Recognizing an arbitration award

converts it into a legal judgment.  See id.; NextEra, 112 F.4th at 1097.  And after recognition, the

prevailing party may "seek to execute on the resulting judgment by, for example, attaching the

sovereign's commercial assets in the United States."  NextEra, 112 F.4th at 1097–98 (cleaned up).

Domestic courts within ICSID's contracting parties are required to "recognize an award rendered

pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that

award within its territories as if it were a final judgment of a court in that State."  ICSID

Convention art. 54(1).  Congress codified this obligation in 22 U.S.C. § 1650a(a), which provides

that "[t]he pecuniary obligations imposed by" an ICSID award "shall be enforced and shall be

given the same full faith and credit as if the award were a final judgment of a court of general

jurisdiction of" one of this country's fifty states.  Notably, § 1650a "excludes ICSID awards from

the purview of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.," which provides exceptions to

the enforcement of arbitration awards.  Valores, 87 F.4th at 516, 520; see 22 U.S.C. § 1650a.

## II.     Arbitration Proceedings

In 2011, InfraRed Environmental Infrastructure GP Limited and four other UK-based companies (together, the "InfraRed Investors") invested €31 million in two Concentrated Solar Power plants in Spain.  See ICSID Tribunal Award [ECF No. 3-1 at 3] ("Award") ¶¶ 1–2, 6–7. Spain made the investment enticing: beginning in 1997, the country enacted "a regime of subsidies meant to . . . make renewable energy profitable."  Id. ¶ 5.  The regime culminated in additional subsidies and perks that ensured even more profitable returns on investments in projects like CSPs. See id. ¶¶ 25–28.  But then the effects of the Great Recession hit Spain, and between 2012 and 2014 Spain withdrew those subsidies—and with them, the returns the InfraRed Investors had relied upon.  See id. ¶ 8.

So, in 2014, the InfraRed Investors commenced arbitration before an ICSID tribunal under Article 26 of the ECT.  Id. ¶ 96.  Spain objected to the ICSID Tribunal's jurisdiction.  See id. ¶¶ 212–15.  As relevant here, this objection broke down into two parts.  First, Spain argued that it had no arbitration agreement with the InfraRed Investors because the investors were from the United Kingdom (which was a Member State to the EU at all times relevant to this dispute), and EU law prohibits EU Member States and nationals from other Members States from agreeing to arbitrate disputes that implicate the treaties that created and govern the EU, also known as the EU Treaties.[3]  See id.  As support, Spain pointed to the Court of Justice of the European Union's ("CJEU") recent decision in Slovak Republic v. Achmea BV ("Achmea"), ECLI:EU:C:2018:158 (Mar. 6, 2018).  See Award ¶ 215.  There, the CJEU—the EU's highest court—held that EU courts could not confirm an arbitration award granted to Achmea, a Dutch company, against the Slovak Republic pursuant to a bilateral investment treaty that implicated EU law.  See Achmea, ¶ 60.  The

---

[3] The EU Treaties are The Treaty on the Functioning of the European Union ("TFEU") and the Treaty on European Union ("TEU").  See NextEra, 112 F.4th at 1094.

CJEU explained that, in order to maintain uniform interpretation of EU law, the EU Treaties require that any tribunal "called to interpret or . . . apply EU law," id. ¶ 42, must be able to "make a reference to [the CJEU] for a preliminary ruling," id. ¶ 49.  Because arbitral tribunals cannot make such reference, the Court held that the EU Treaties "preclud[e] a provision in an international agreement concluded between [EU] Member States . . . , under which an investor from one of those Member States may" commence arbitration against another Member State.  See id. ¶ 60.

Second, Spain argued that the ICSID Tribunal lacked jurisdiction because if the Tribunal were to issue an award requiring Spain to pay the InfraRed Investors damages, it would be illegal for Spain to comply with it.  See Award ¶ 215.  Under the EU Treaties, EU Member States cannot provide government subsidies (i.e., state aid) that "distort[] or threaten[] to distort competition," see TFEU art. 107(1), without preapproval by the European Commission, id. art. 108(2)–(3).  If a member state provides state aid without preapproval, the Commission may impose a sanction.  Id. art. 258, 260(2).  Thus, in Spain's view, EU law prohibited any award from the ICSID Tribunal unless and until the Commission approved it.

The ICSID Tribunal rejected both jurisdictional arguments, proceeded to the merits, and awarded the InfraRed investors €28.2 million, plus interest and legal costs.  See Award at 166. The Tribunal concluded that its "jurisdiction is grounded in the ECT and no other legal instrument," id. ¶ 257, and the plain language and context of Article 26 of the ECT "do[] not preclude the Tribunal's jurisdiction over disputes between an EU member state and an investor from another EU member state," id. ¶¶ 262–74 (emphasis in original).  And Spain showed no "incompatibility" with the state-aid prohibition and the Tribunal's exercise of jurisdiction.  Id. ¶ 272.  On the merits, the Tribunal concluded that Spain had breached its obligation under the ECT to provide fair and equitable treatment to the InfraRed Investors "by frustrating [their] legitimate

expectation . . . that future regulatory changes would not affect [their] right to receive the" subsidies originally promised.  See id. ¶ 455.

In reaction, Spain asked the ICSID Annulment Committee to annul the award, renewing its jurisdictional objections.  See ICSID Decision of Annulment [ECF No. 52-2 at 6] ("Annulment Decision"); see also ICSID Convention art. 52(1)(b) (explaining that a ground for annulment is "that the Tribunal has manifestly exceeded its powers").  While that application was pending, the CJEU decided Republic of Moldova v. Komstroy LLC ("Komstroy"), ECLI:EU:C:2021:655 (Sept. 2, 2021).  In Komstroy, the CJEU concluded that Article 26 of the ECT was invalid as to intra-EU disputes for the same reason as the bilateral investment treaty's analogous arbitration provision was in Achmea.  See id. ¶¶ 51–52.  So, Spain submitted Komstroy to bolster its argument that the ICSID Tribunal had no jurisdiction over the intra-EU dispute.  See Annulment Decision ¶ 134.  But for the same reasons as the Tribunal had, the ICSID Annulment Committee rejected that argument along with Spain's state-aid argument and dismissed the request for annulment.  See id. ¶¶ 484, 503–05, 520, 535–36.

## III.    Procedural History

On March 25, 2020—before the ICSID Annulment Committee dismissed Spain's request—the InfraRed Investors petitioned this Court to recognize and enforce the arbitration award.  See Compl. [ECF No. 1].  This Court stayed its proceedings pending that decision.  See Order [ECF No. 30].  After the Annulment Committee rendered its decision, Spain then moved to dismiss the petition in this Court.  See Mot. Dismiss Compl. [ECF No. 50].  Spain argued, among other things, that the Court lacked subject-matter jurisdiction because no exception to the FSIA applied.  See Mem. L. Supp. Kingdom of Spain's Mot. Dismiss Compl. [ECF No. 50-1] at 16–25. That led the Court to stay proceedings yet again, because pending before the D.C. Circuit were

three cases—consolidated as <u>NextEra</u>—in which Spain raised that precise argument.  <u>See</u> Second Minute Order of June 12, 2023.  The same day, Blasket was substituted as plaintiff.  <u>See</u> First Minute Order of July 12, 2023.

In August 2024, the D.C. Circuit decided <u>NextEra</u> and held that the FSIA's arbitration exception, <u>see</u> 28 U.S.C. § 1605(a)(6), gives federal courts jurisdiction over EU investors' suits to confirm ECT arbitration awards rendered against Spain (and other EU Member States).  112 F.4th at 1101–02.  The D.C. Circuit explained that Article 26 of the ECT is "an agreement made by . . . foreign state[s] . . . for the benefit of" investors, <u>id.</u> at 1101 (internal quotation marks omitted), which satisfies the arbitration exception, <u>id.</u> at 1102; <u>see</u> 28 U.S.C. § 1605(a)(6).  And the Court concluded that Spain's argument that the ECT was made "for the benefit" of some investors but not those within the European Union was a dispute regarding the <u>scope</u> of that agreement. <u>NextEra</u>, 112 F.4th at 1103.  "Whether the ECT applies to a dispute is not a jurisdictional question under the FSIA," but rather a question of the agreement's scope to be decided on the merits.  <u>See id.</u> (cleaned up); <u>Hulley Enters. Ltd. v. Russian Federation</u>, No. 23-7174, 2025 WL 2216545 (D.C. Cir. Aug. 5, 2025) ("[Q]uestions about whether an arbitration agreement covers a particular investment pertain to the scope of the agreement and are not jurisdictional.")  Put simply, <u>NextEra</u> held only that "district courts have jurisdiction to enforce" intra-EU ECT arbitration awards; it did "not address the merits question whether" the ECT's "arbitration provision extends to EU nationals and thus whether Spain ultimately entered into legally valid agreements with the companies."  <u>Id.</u> at 1104.

With <u>NextEra</u> having put to bed Spain's FSIA argument, the Court ordered summary-judgment briefing, and the parties submitted the instant dueling motions.  <u>See</u> Mem. Supp. Def.'s Mot. Summ. J. [ECF No. 74] ("Spain Mot.); Mem. Opposing Spain's Mot. Summ. J. & In Supp.

Pet'r's Cross-Mot. Summ. J. [ECF No. 78-1] ("Pet'r's Mot."); Reply Supp. Kingdom of Spain's

Mot. Summ. J. & Opp'n Pet'r's Cross-Mot. Summ. J. [ECF No. 80] ("Spain Reply"); Reply Supp.

Pet'r's Cross-Mot. Summ. J. [ECF No. 82] ("Pet'r's Reply").

## Legal Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine

dispute as to any material fact" and that he "is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Here, the parties agree no material facts are in dispute.  So the question is solely

which party is right on the law.

## Discussion

### I.        Full Faith and Credit

Spain and Blasket's dispute boils down to a disagreement about the scope of a district

court's role under 22 U.S.C. § 1650a.  Section 1650a grants district courts jurisdiction over suits

seeking to enforce ICSID awards, id. § 1650a(b), and provides that "[t]he pecuniary obligations

imposed by such an award shall be enforced and shall be given the same full faith and credit as if

the award were a final judgment of a court of general jurisdiction of one of the several States," id.

§ 1650a(a); Medellín v. Texas, 552 U.S. 491, 521 (2008).

Spain envisions the Court's role under the statute as broad, while Blasket envisions it as

narrow.  According to Spain, in order to recognize and enforce the award, the Court must determine

whether the ICSID Tribunal had jurisdiction over the dispute.  See Spain Mot. at 14–22.  And in

arguing that the Tribunal lacked jurisdiction, Spain raises the same arguments that it

unsuccessfully raised to both the Tribunal and the Annulment Committee, namely that Article 26

of the ECT does not apply to intra-EU disputes and the award amounts to illegal state aid.  Id.

Since the Tribunal lacked jurisdiction, says Spain, the Court cannot recognize or enforce its award. Id.

Blasket, in contrast, argues that the Court can inquire into only two things: (1) whether the Court has jurisdiction over this case and (2) whether the award is authentic. See Pet'r's Mot. at 12–14. Because the answer to both questions is yes, Blasket posits that all the Court can do, and indeed what it must do, is recognize and enforce the award—the ICSID Tribunal's jurisdiction and the merits of the award are irrelevant. Id. at 12–24.

Valores resolves this dispute in Blasket's favor. There, Venezuela challenged the district court's confirmation of an ICSID tribunal award under the ECT, contending the Annulment Committee had violated procedural due process when it confirmed the award. See Valores, 87 F.4th at 514. In holding that the award was due full faith and credit, the D.C. Circuit explained the "extremely limited" role of a district court enforcing an ECT award under 22 U.S.C. § 1650a. Id. at 519–20 (internal quotation marks omitted). The root is § "1650a's . . . mandate" that "a federal court give an ICSID award 'the same full faith and credit' it would receive if the award were a 'final judgment' of a state court." Id. at 519 (emphasis in original) (quoting 22 U.S.C. § 1650a(a)).

Under Supreme Court precedent, this is an "exacting" obligation. Id. (quoting Baker by Thomas v. Gen. Motors Corp., 522 U.S. 222, 233 (1998)). A final state court judgment must receive "recognition throughout the land" so long as it was "rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment." Id. (quoting Baker, 522 U.S. at 233). It is of no moment that the second court may disagree with the state court's conclusions. The principle underlying full faith and credit is "[p]reventing relitigation of issues already decided." Id. As such, res judicata binds a second court to the state court's conclusions

10

"when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."  See id. at 520 (quoting Durfee v. Duke, 375 U.S. 106, 111 (1963)); Underwriters Nat'l Assur. Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 706 (1982).  And this is not exclusive to issues on the merits: "res judicata appl[ies] to questions of jurisdiction," too.  Underwriters, 455 U.S. at 706. So, if jurisdictional issues were fully and fairly litigated in the state court, the second court may not decline to give the judgment full faith and credit on that basis.  Id. at 706–07; Valores, 87 F.4th at 519.

As Valores explained, these principles apply as much to petitions under § 1650a as to petitions for recognition of state court judgments.  87 F.4th at 519–20.  A court therefore may not deny an ICSID award full faith and credit simply because "it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits."  Id. (quoting V.L. v. E.L., 577 U.S. 404, 407 (2016) (per curiam)).  This conclusion is bolstered by the fact that Congress expressly excluded ICSID enforcement actions from the FAA, which provides exceptions to enforcement of other arbitral awards where there was "fraud, corruption, or misconduct by the arbitrator."  Id.  (citing 9 U.S.C. § 10(a)); see 22 U.S.C. § 1650a(a).  "By removing ICSID awards from the FAA's purview, Congress rejected the possibility that the FAA's grounds for vacatur could be applied to an ICSID award, thus reducing the scope of judicial review of ICSID awards below even the 'extremely limited' review available under the FAA."  Valores, 87 F.4th at 519 (quoting Kurke v. Oscar Gruss & Son, Inc., 454 F.3d 350, 354 (D.C. Cir. 2006)).

In the end, a district court must ask only three questions when assessing a petition under 22 U.S.C. § 1650a: whether (1) the court has jurisdiction over the petition; (2) the ICSID award is authentic; and (3) "the ICSID tribunal would treat the award as binding," which is assessed by

whether the opposing party fully raised, and the tribunal fully and fairly considered, the argument presented to the district court.  See id. at 520–21; Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 102 (2d Cir. 2017).

Here, the answer to all three questions is yes.  Spain no longer disputes this Court's jurisdiction under the FSIA,[4] and while it challenges the enforceability of the award, it agrees that the award is authentic.  See Statement of Material Facts Supp. Kingdom of Spain's Mot. Summ. J. [ECF No. 74-89] ¶ 1.  And there is no doubt ICSID—which is charged with deciding matters of its own jurisdiction, see ICSID Convention art. 41—would treat the award as binding.  Spain raised its jurisdictional objections to both the Tribunal and the Annulment Committee, which, after full briefing, addressed and rejected them.[5]  See Award ¶¶ 256–74; Annulment Decision ¶¶ 484, 503–05, 520.  In short, Spain's arguments, including on the Tribunal's jurisdiction, were "fully and fairly argued by the parties and finally decided by the" Tribunal and the Annulment Committee. Valores, 87 F.4th at 521 (internal quotation marks omitted).  Spain cannot "re-open the issue in federal court" simply because it disagrees with the judgment rendered.  Id. at 520–21; see also Blasket Renewable Investments, LLC v. Kingdom of Spain, Civ. A. No. 23-2701 (RC), 2024 WL 4298808, at *7–10 (D.D.C. Sept. 26, 2024).  "[T]he judgments of the ICSID Arbitral Tribunal and the Annulment Committee are entitled to full faith and credit."  Valores, 87 F.4th at 521; see id. at

---

[4] Rightly so.  Spain and the InfraRed Investors have an arbitration agreement under Article 26 of the ECT, see NextEra, 112 F.4th at 1101–02, the ICSID Tribunal issued and the Annulment Committee confirmed the award, and the ICSID Convention governs the award enforcement.  See id. at 1100 (explaining the three jurisdictional facts that must be found to have subject-matter jurisdiction under 28 U.S.C. § 1605(a)(6)).  Additionally, the Court has personal jurisdiction over Spain, as the nation was served in accordance with 28 U.S.C. § 1608.  See Summons in Civil Action [ECF No. 6]; CC/Devas (Mauritius) Limited v. Antrix Corp. Ltd., 145 S. Ct. 1572, 1580 (2025) (federal courts have personal jurisdiction over a defendant under the FSIA where "any of the FSIA's immunity exceptions applies" and "'service has been made'" pursuant to "the FSIA's specialized service-of-process rules" (quoting 28 U.S.C. § 1330(b))).

[5] Spain does not argue that either the ICSID Tribunal or the Annulment Committee disregarded "all relevant rules governing ICSID actions."  See Valores, 87 F.4th at 521.

515 ("Member states' courts are . . . not permitted" "to examine an ICSID award's merits, its compliance with international law, <u>or the ICSID tribunal's jurisdiction to render the award</u>; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." (emphasis added)).

Spain unsuccessfully attempts to bat away the D.C. Circuit's decision in <u>Valores</u> by clinging to a handful of sentences read out of context. To start, Spain emphasizes <u>Valores</u>'s statement that "want of jurisdiction [i]s an exceptional instance in which a judgment may be denied full faith and credit." <u>Valores</u>, 87 F.4th at 519 (citing <u>Underwriters</u>, 455 U.S. at 704); Spain Mot. at 15; Spain Reply at 4. But Spain conveniently ignores the rest of the paragraph: "However, even this exception must yield to the prohibition against relitigation. '[A] judgment is entitled to full faith and credit—<u>even as to questions of jurisdiction</u>—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." <u>Id.</u> at 519–20 (alteration in original) (emphasis added) (quoting <u>Durfee v. Duke</u>, 375 U.S. 106, 111 (1963)).

Skimming over that language, Spain cherry-picks other lines from <u>Valores</u> to argue that "the awards at issue in <u>Valores</u> were 'owed full faith and credit' because, among other things, Venezuela did not contest the arbitrator's jurisdiction." Spain Reply at 4 (quoting <u>Valores</u>, 87 F.4th at 520). True, in the course of determining that the district court had rightly recognized and enforced an award against Venezuela, <u>Valores</u> emphasized that "[n]o party contest[ed] the jurisdiction of ICSID." 87 F.4th at 520; <u>see also id.</u> ("Because jurisdiction is satisfied and the award's authenticity is not up for debate, Venezuela seeks to prevent enforcement by rehashing an issue that the Annulment Committee considered and resolved."). Spain takes these two sentences

to mean that a district court cannot confirm an award pursuant to the exacting obligation <u>Valores</u> described when the defendant contests the ICSID's jurisdiction.[6]

But that reading of two sentences of <u>Valores</u> would contradict the rest of the opinion and Supreme Court precedent alike.  Recall that <u>Valores</u> held that a district court with jurisdiction over a claim for the confirmation of an authentic ICSID award cannot deny the award full faith and credit based on an argument presented to and rejected by ICSID.  87 F.4th at 519–20.  This includes "even . . . questions of jurisdiction."  <u>Id.</u> at 519 (quoting <u>Durfee</u>, 375 U.S. at 111).  That is because the Supreme Court has held that a court must give a final state court judgment full faith and credit despite a defendant's argument that the state court lacked jurisdiction so long as the state court fully and finally considered the issue.  <u>See</u> <u>Durfee</u>, 375 U.S. at 111–13; <u>Underwriters</u>, 455 U.S. at 706–07.  And § 1650a and <u>Valores</u> command the same treatment with respect to enforcement of ICSID Awards.  <u>See</u> <u>Valores,</u> 87 F.5th at 519.  Indeed, the D.C. Circuit has recently confirmed that, "when parties delegate questions of arbitrability to an arbitral tribunal, this court is bound by the tribunal's determinations."  <u>Hulley Enters.</u>, 2025 WL 2216545, at *4.  The two sentences from <u>Valores</u> that Spain emphasizes, therefore, could not mean that a district court can relitigate issues of jurisdiction decided by ICSID.  Instead, the two sentences Spain highlights pertain to a situation not present here: where a defendant did not raise, and/or ICSID did not address, issues of jurisdiction during the arbitration proceedings.  That is the "exceptional instance in which a judgment may be denied full faith and credit."  <u>Id.</u> at 519; <u>Underwriters</u>, 455 U.S. at 704–05.  Here,

---

[6] Another judge in this District appears to have read <u>Valores</u> somewhat similarly, explaining that <u>Valores</u> "looked to three facts to determine whether the award was entitled to full faith and credit," the first being that "no party contest[ed] the jurisdiction of ICSID."  <u>See</u> <u>Blasket</u>, 2024 WL 4298808, at *7.  That judge then went on to analyze and confirm ICSID's jurisdiction itself.  <u>Id.</u>  For the reasons soon explained, this Court does not read <u>Valores</u> (or, by extension, § 1650a) to require district courts to wade into issues of ICSID jurisdiction that ICSID itself already determined.  In fact, the Court reads <u>Valores</u> as prohibiting as much.

however, both the ICSID Tribunal and the Annulment Committee fully and fairly considered challenges to their jurisdiction.

For its final argument on this front, Spain puts forward a novel reading of § 1650a. Only "[t]he pecuniary obligations imposed by" an ICSID tribunal, Spain posits, are entitled to full faith and credit. See Spain Mot at 1–2 (emphasis in original) (quoting § 1650a(a)). "[T]he arbitral tribunal's assessment of its own jurisdiction is a non-pecuniary aspect of the award and thus is not afforded any deference." Id. at 2 (emphasis in original). To borrow Blasket's words, this argument "makes no sense[:] A court cannot give an Award's pecuniary obligations full faith and credit while declining to enforce it based on some disagreement with the Tribunal's predicate rulings confirming its own jurisdiction that led to the Award." Pet'r's Mot. at 16. Regardless, Valores and the Supreme Court have made clear that an award—including the tribunal's jurisdiction to have issued that award, the merits underlying the award, and its pecuniary obligations—must be given full faith and credit over jurisdictional objections so long as those objections were fully and fairly litigated.

In sum, the Court cannot question ICSID's jurisdiction. Even if the ICSID Tribunal and Annulment Committee erred in determining they had jurisdiction over this intra-EU ECT dispute, they finally determined the tribunal's jurisdiction and hence this Court cannot relitigate it.[7]

## II.    Foreign Sovereign Compulsion Doctrine and Comity

Regardless of § 1650a's exacting mandate, Spain argues that the foreign sovereign compulsion doctrine, and the principles of international comity that underlie it, "independently bar" this Court from enforcing the award. See Spain Mot. at 23–24.

---

[7] To the extent that Spain's state-aid argument is really one against the merits of the Award rather than ICSID's jurisdiction, the Court also cannot second-guess the Tribunal's conclusion on that fully and fairly litigated issue. See Valores, 87 F.4th at 519–20.

"International comity 'is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" Usoyan v. Republic of Turkey, 6 F.4th 31, 48 (D.C. Cir. 2021) (quoting Hilton v. Guyot, 159 U.S. 113, 164 (1895)).  The Restatement (Third) of Foreign Relations Law (1987) extends upon this principle with the so-called foreign sovereign compulsion doctrine, which generally prohibits a state from requiring a person "to do an act in another state that is prohibited by the law of that state or by the law of the state in which he is a national." Id. § 441(1)(a).  While the D.C. Circuit has not explicitly adopted the doctrine, it has expressed in dicta "discomfort" with the notion "that a court of law should order a violation of [another sovereign's law], particularly on the territory of the sovereign whose law is in question."[8] See In re Sealed Case ("In re Sealed Case I"), 825 F.2d 494, 498 (D.C. Cir. 1987).

According to Spain, confirming the award would force Spain to violate EU law because EU law prohibits arbitration of intra-EU ECT disputes and because payment of the award without prior approval from the European Commission would amount to unlawful state aid.  See Spain Mot. at 24.  Blasket responds that there is no "'foreign compulsion' exception" to § 1650a's command; that even if there were, it would not apply because it is unlikely that the Commission would actually sanction Spain for complying with a court order; and that principles of comity favor confirming the award.  See Pet'r's Mot. at 40–43.

The Court agrees with Blasket that comity does not provide a disgruntled party with a runaround of § 1650a.  As relevant here, "'[c]omity' summarizes in a brief word a complex and elusive concept—the degree of deference that a domestic forum must pay to" a foreign judgment

---

[8] Also in dicta, the D.C. Circuit has stated that "[p]rinciples of international comity require that domestic courts not take action that may cause the violation of another nation's laws." See FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1327 n.150 (D.C. Cir. 1980).  But, years later, the Circuit stated that it "d[id] not decide the general issue of whether a court may ever order action in violation of foreign law." In re Sealed Case, 825 F.2d 494, 498 (D.C. Cir. 1987).

"not otherwise binding on the forum." Micula v. Gov't of Romania, 101 F.4th 47, 54 (D.C. Cir. 2024) (emphasis added) (quoting Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 937 (D.C. Cir. 1984)). But when a treaty (and, as relevant here, the domestic law implementing it) requires a court to recognize a foreign judgment, adherence to that mandate is what comity requires.[9] In other words, a court cannot decline to recognize a foreign tribunal's judgment on the basis of comity if the court is legally obligated to recognize that judgment. See Hilton, 159 U.S. at 163 (explaining that a court's "most certain guide" when determining whether to recognize a foreign judgment "is a treaty or a statute of this country"); Laker Airways Ltd., 731 F.2d at 940; Micula, 101 F.4th at 54–55; cf. Tucker v. Alexandroff, 183 U.S. 424, 436 (1902) (explaining that where nations have "themselves fixed the terms" of a treaty, courts "have no right to enlarge those powers upon the principles of comity"). It's no wonder Spain points to no case in which a court disregarded a positive legal obligation to recognize a foreign judgment on the basis of comity, whether because enforcing the judgment may conflict with another nation's law or otherwise.[10]

Accordingly, there is no comity exception to a court's exacting obligations under the ICSID Convention and § 1650a. See 22 U.S.C. § 1650a(a) (stating a district court "shall" give an ICSID award full faith and credit); Smith v. Spizzirri, 601 U. S. 472, 476 (2024) ("[T]he word 'shall' creates an obligation impervious to judicial discretion." (some internal quotation marks omitted)).

---

[9] This is true, of course, only when a treaty indeed so requires. See, e.g., Medellín, 552 U.S. at 512–14; Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522, 543–44 (1987).

[10] The cases Spain cites instead dealt with whether international comity cautioned against ordering foreign individuals to comply with domestic subpoenas orders, see FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1325–27 (D.C. Cir. 1980); In re Sealed Case I, 825 F.2d at 498–99, or whether comity required dismissing an antitrust action against a foreign entity, see In Re Vitamin C Antitrust Litig., 8 F.4th 136, 143–45 (2d Cir. 2021). In none of these cases was there a treaty or statute that clearly mandated the court to issue the discovery order or entertain the lawsuit (nor was there any judgment the movant party was asking the court to recognize).

Those mandates embody what comity requires: Spain and the United States committed themselves to recognizing ICSID awards, and thus recognition "promot[es] predictability and stability through satisfaction of mutual expectations."  See Laker Airways Ltd., 731 F.3d at 937; cf. Mitubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985) ("[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require" enforcing international arbitration agreements.).  The Court cannot employ comity "to ignore that Congress enacted a comprehensive set of legal standards . . . to give effect to the United States' treaty obligations under the ICSID Convention."  See Micula, 101 F.4th at 54 (internal quotation marks omitted).[11]

Even were the Court able to read a comity exception into § 1650a, and even were that exception to embody the foreign sovereign compulsion doctrine, it likely would not apply here. "In probing for bona fide compulsion, courts have required defendants asserting [the foreign sovereign compulsion doctrine] to show that non-compliance with foreign law portends a significant risk of substantial sanctions."  See In Re Vitamin C Antitrust Litig., 8 F.4th 136, 145–46 & n.14 (2d Cir. 2021)).  But it is uncertain that Spain's payment of the award here would place Spain at substantial risk of sanctions.  Assuming without deciding that the award would amount to state aid under the EU Treaties, the European Commission may still approve it, TFEU, art. 108(2)–(3); and even if it didn't approve the aid, the European Commission would not be obligated to impose sanctions, see id., art. 258, 260.  The explanation by Spain's EU-law expert—and the

---

[11] As another judge in this District explained, "declining to enforce [an] Award" would in fact be contrary to the principles of comity, as it would "place both Spain and the United States in conflict with their obligations under the ICSID Convention to 'recognize an award rendered pursuant to th[e] Convention as binding and enforce the pecuniary obligations imposed by that award.'"  Blasket, 2024 WL 4298808, at *13 (emphasis in original) (quoting ICSID Convention art. 54(1)).

European Commission as an <u>amicus curiae</u>—of the sanctions process confirms that the imposition of sanctions is far from certain.  "<u>If</u> Spain . . . is forced to pay[] the Award and the [European] Commission concludes at the end of its investigation that the State aid is incompatible with the internal market, it will <u>typically</u> instruct Spain to recover (or reclaim) the aid"; then, <u>if</u> Spain does not recover the aid, "it <u>could</u> face legal action from the Commission under Article 258 of the TFEU"; and finally, "<u>[i]f</u> Spain, having been found by the CJEU to be in violation of the EU Treaties, does not take up the necessary measures to comply with the infringement judgment, the Commission <u>may</u> again address the CJEU . . . and propose to impose financial sanctions for failing to fulfil obligations under the Treaties."  Suppl. Expert Decl. of Prof. Steffen Hindelang [ECF No. 74-2] ¶ 58 (emphasis added); <u>see also</u> Br. of the European Commission on Behalf of the European Union as <u>Amicus Curiae</u> [ECF No. 77] at 24–25 (similar description of contingencies leading to "possible financial penalties").  Considering this permissive (indeed, speculative) structure, Spain "is in a most advantageous position to plead with [the Commission and the CJEU] for relaxation of penal laws or for adoption of plans which will at the least achieve a significant measure of compliance with" this Court's order.  <u>See</u> <u>Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers</u>, 357 U.S. 197, 205 (1958); <u>Blasket</u>, 2024 WL 4298808, at *14 ("[J]ust because the European Commission 'would be able' to bring Spain before the CJEU does not mean that it would do so in this case, where Spain is compelled to pay an award under the ICSID Convention.").[12]

---

[12] The Court acknowledges that the European Commission recently decided that Spain's 2007 subsidy scheme "constitutes State aid" and thus the execution of an ICSID award granted to Luxembourgish investors based on Spain's denial of those subsidies would constitute state aid.  <u>See</u> Commission Decision, 2025 O.J. (L 1235) ¶ 185, 214 (Mar. 24, 2025).  As a result, the Commission has required Spain "to take all appropriate measures to prevent" the investor "from seeking recognition, enforcement or execution of the award, whether in Member States of the European Union or in third countries" and to "recover any payment of the aid" made to the investor.  <u>Id.</u> ¶¶ 284–85. But two notable elements distinguish that decision.  First, no third country had issued a judgment enforcing the award, so the Commission did not contemplate the possible effects of such a judgment.  Second, the Commission was silent

The Court understands Spain's concern that an order confirming the award may place it between the proverbial rock of a United States judgment and hard place of EU law.  That, however, does not permit the Court "to add in" to § 1650a an exception that "Congress left out."  <u>See</u> <u>CC/Devas (Mauritius) Limited v. Antrix Corp. Ltd.</u>, 145 S. Ct. 1572, 1580 (2025).

## **CONCLUSION**

Spain "has had its opportunity to be heard" on its jurisdictional arguments twice over, and the ICSID Tribunal and the Annulment Committee rejected them "in full accordance with ICSID rules."  <u>Valores</u>, 87 F.4th at 521.  The Court thus must give the award full faith and credit.  <u>Id.</u>; 22 U.S.C. § 1650a(a).  The Court accordingly denies Spain's motion for summary judgment and grants Blasket's.  A separate Order shall issue on this date.[13]

**SO ORDERED.**

_____

as to whether it would impose sanctions on Spain were a third country to enforce the award and were Spain subsequently to pay it.  So, while the Court accords the Commission's decision the utmost respect, the decision does not persuade the Court that a judgment in Blasket's favor would put Spain at substantial risk of severe sanctions.

[13] This Opinion and the accompanying Order do not render the final judgment in this case.  The parties shall submit a proposed final judgment pursuant to the Order's directive.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>August 13, 2025</u>